# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., *Plaintiff*, v. BOLIVARIAN REPUBLIC OF VENEZUELA, *Defendant*. | C.A. No. 17-mc-00151-LPS |

## DECLARATION OF DAVID BAYROCK

DAVID BAYROCK, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1. I am a partner in, and co-chair of, the Finance group of Curtis, Mallet-Prevost, Colt & Mosle LLP (the "Firm"), counsel for Petróleos de Venezuela, S.A. ("PDVSA") in the above-captioned action.

2. As a member of the Firm's Finance group, my principal focus is on international financing transactions, including project finance and debt restructurings. Over the years, the Firm has acted as counsel for PDVSA, CITGO Holding, Inc. ("CITGO Holding") and/or CITGO Petroleum Corporation ("CITGO" and, together with CITGO Holding, the "CITGO Entities"), in connection with a number of financing transactions. I was part of the team at the Firm that advised the CITGO Entities on the issuance of the CITGO Holding Notes and CITGO Notes (defined below).

3. I understand that this Court has authorized a writ of attachment ("Writ of Attachment") in favor of Crystallex International Corporation ("Crystallex") against PDVSA's

shares in PDV Holding, Inc. ("PDVH"), and that PDVH was served with the Writ of Attachment on August 24, 2018.

4. I submit this Declaration in support of PDVSA's motion to continue the stay of execution on the PDVH shares pending final resolution of PDVSA's appeal to the U.S. Court of Appeals for the Third Circuit from this Court's denial of PDVSA's cross-motion to dismiss for lack of jurisdiction under the Foreign Sovereign Immunities Act.

5. The facts set forth in this Declaration are based upon my personal knowledge and/or my review of documents. If called as a witness, I could and would competently testify to the contents of this Declaration.

## I.   EXECUTIVE SUMMARY

6. PDVSA owns 100% of the capital stock of PDVH, and PDVH owns 100% of the capital stock of CITGO Holding, which in turn owns 100% of the capital stock of CITGO.

7. As described in more detail below, enforcement of the Writ of Attachment through a sale of more than 50% of the PDVH shares would trigger a cascade of adverse events that could jeopardize the financial wellbeing of PDVSA and the CITGO Entities and, as a result, have a significant negative impact on the value of the PDVH shares.

8. Specifically, a sale of more than 50% of the PDVH shares could cause the acceleration of PDVSA's obligation to pay outstanding principal of up to US$2.85 billion plus accrued interest and premium under the PDVSA 2020 Notes (defined below) and, since such notes are secured by 50.1% of the shares of capital stock of CITGO Holding, result in foreclosure on 50.1% of the CITGO Holding shares.

9. A sale of more than 50% of the PDVH shares would also constitute a "Change of Control" under the senior notes issued by CITGO Holding and CITGO, which would trigger affirmative covenants requiring the CITGO Entities to offer to repurchase such notes. Lack of

timely compliance with such repurchase obligations may trigger acceleration of the notes. If the CITGO Entities fail to repay the notes once they are accelerated, such failure may trigger foreclosure on substantially all of the assets of: (i) CITGO Holding, including 100% of the shares of capital stock of CITGO, which are pledged to secure the CITGO Holding Notes; and (ii) CITGO, including the three refineries owned by CITGO, which are pledged to secure the CITGO Notes.

10. In addition, the above events may trigger events of default and acceleration of PDVSA's obligation to pay aggregate outstanding principal of up to US$22.49 billion plus accrued interest and premium under the eight Unsecured PDVSA Notes (defined below).

11. In sum, and as described in detail below, the direct and indirect potential consequences of a sale of more than 50% of the shares of capital stock of PDVH include:

   a. acceleration of payment obligations of PDVSA of more than US$25 billion under the PDVSA 2020 Notes and the Unsecured PDVSA Notes;

   b. foreclosure on 50.1% of the shares of capital stock of CITGO Holding pledged as collateral to the holders of the PDVSA 2020 Notes;

   c. acceleration of payment obligations of CITGO Holding and CITGO of more than US$2 billion under the senior notes issued by those entities; and

   d. foreclosure on substantially all the assets of CITGO Holding and CITGO, including the three refineries owned by CITGO in Texas, Louisiana and Illinois.[1]

12. Ultimately, because PDVH's only significant asset is its shares of capital stock of CITGO Holding, the acceleration of the obligations of the CITGO Entities to repay their financing facilities and the foreclosure on substantially all the assets of the CITGO Entities would result in a significant negative impact on the value of the PDVH shares.

---

[1] To my knowledge, the CITGO Entities do not own any other refineries. I am not aware of any other substantial asset owned by the CITGO Entities that has not been pledged to secure the CITGO Holding Notes or the CITGO Notes.

## II.     AVAILABLE FINANCING FACILITIES REVIEWED

13.     I have reviewed and am familiar with the financing facilities of PDVSA and the CITGO Entities that are currently outstanding and for which operative documents are publicly available or have been made available to debt holders and potential purchasers in the secondary market (the "Available Financing Facilities").  The following are the Available Financing Facilities that include default provisions or covenants that would be directly or indirectly triggered by a sale of more than 50% of the PDVH shares and for which the Firm has sufficient documentation to enable me to perform the corresponding analysis:

    a.    the 8.50% senior notes due 2020 issued by PDVSA with an outstanding principal amount as of December 31, 2016 of US$2.85 billion and secured by a pledge of 50.1% of the shares of capital stock of CITGO Holding (the "PDVSA 2020 Notes");[2]

    b.    the eight series of unsecured senior notes issued by PDVSA with an aggregate outstanding principal amount as of December 31, 2016 of US$22.49 billion (the "Unsecured PDVSA Notes");[3]

    c.    the 10.75% senior notes due 2020 issued by CITGO Holding with an outstanding principal amount as of December 31, 2016 of US$1.44 billion (the "CITGO Holding Notes") and secured by a pledge of certain terminal

---

[2] Excerpts of true and correct copies of the Indenture, dated as of October 27, 2016 (the "PDVSA 2020 Notes Indenture"), and the Pledge and Security Agreement, dated as of October 28, 2016 (the "PDVSA 2020 Notes Pledge Agreement"), in connection with the PDVSA 2020 Notes are attached hereto as Exhibits 1-2.

[3] The eight series of Unsecured PDVSA Notes consist of:  (i) the PDVSA 12.75% notes due 2022; (ii) the PDVSA 6% notes due 2026; (iii) the PDVSA 5.375% notes due 2027; (iv) the PDVSA 5.50% notes due 2037; (v) the PDVSA 9% notes due 2021; (vi) the PDVSA 9.75% notes due 2035; (vii) the PDVSA 6% notes due 2022; and (viii) the PDVSA 6% notes due 2024. The Firm only has certain documents in relation to the first four series of Unsecured PDVSA Notes, but the non-commercial provisions are uniform across that documentation.  Thus, it is reasonable to assume that the Unsecured PDVSA Notes for which the Firm does not have documentation include the same covenants, events of default and remedies as the documentation available to the Firm.  Excerpts of true and correct copies of the Indenture, dated as of February 17, 2011, in connection with the PDVSA 12.75% notes due 2022 (the "PDVSA 2022 Notes Indenture"), the Offering Memorandum, dated as of April 4, 2014, in connection with the PDVSA 6% notes due 2026 (the "PDVSA 2026 Notes Offering Memorandum"), and the Indenture, dated as of April 12, 2007, in connection with the PDVSA 5.375% notes due 2027 and the PDVSA 5.50% notes due 2037 (the "PDVSA 2027 Notes and PDVSA 2037 Notes Indenture") are attached hereto as Exhibits 3-5.

facilities, 100% of the shares of capital stock of CITGO, and other assets of CITGO Holding (the "<u>CITGO Holding Assets</u>");[4] and

d. the 6.25% senior notes due 2022 issued by CITGO with an outstanding principal amount as of December 31, 2016 of US$0.64 billion (the "<u>CITGO Notes</u>") and secured by a pledge of substantially all assets of CITGO, including the three refineries located at Lake Charles, Louisiana, Corpus Christi, Texas, and Lemont, Illinois (the "<u>CITGO Assets</u>").[5]

## III. DIRECT CONSEQUENCES OF SALE OF PDVH SHARES

### A. PDVSA 2020 Notes

14. A sale of more than 50% of the PDVH shares would constitute a breach of a covenant under the PDVSA 2020 Notes and may result in an event of default if such breach is not cured after sixty days' notice.

15. Section 4.01(b) of the PDVSA 2020 Notes Indenture prohibits PDVSA or any "Subsidiary" – defined to include any corporation of which PDVSA owns a majority of the

---

[4] In 2015, CITGO Holding entered into a term loan facility, which was secured by a pledge of the CITGO Holding Assets. The rights and obligations of the holders of the CITGO Holding Notes in relation to the lenders under the term loan facility of CITGO Holding were governed by an intercreditor agreement. It is my understanding that CITGO Holding refinanced such term loan facility through the issuance of additional notes. The Firm does not have the documentation for these notes. It is reasonable to assume that such notes are secured by a pledge of the CITGO Holding Assets. Excerpts of true and correct copies of the Indenture, dated as of February 12, 2015 (the "<u>CITGO Holding Notes Indenture</u>"), the Security Agreement, dated as of February 12, 2015 (the "<u>CITGO Holding Security Agreement</u>"), and the Intercreditor and Collateral Agency Agreement, dated as of February 12, 2015 (the "<u>CITGO Holding Intercreditor Agreement</u>"), in connection with the CITGO Holding Notes are attached hereto as Exhibits 6-8.

[5] In 2014, CITGO entered into a term loan facility, which is currently outstanding but is not publicly available. Such term loan was secured by a pledge of the CITGO Assets. The rights and obligations of the holders of the CITGO Notes in relation to the lenders under the term loan facility of CITGO are governed by an intercreditor agreement. Excerpts of true and correct copies of the Indenture, dated as of July 29, 2014 (the "<u>CITGO Notes Indenture</u>"), the Security Agreement, dated as of July 29, 2014 (the "<u>CITGO Security Agreement</u>"), and the Intercreditor and Collateral Agency Agreement, dated as of July 29, 2014 (the "<u>CITGO Intercreditor Agreement</u>"), in connection with the CITGO Notes are attached hereto as Exhibits 9-11. As related to Exhibits 6-11, capitalized terms used therein but not defined therein have the meanings specified in the Uniform Commercial Code of the State of New York or the credit agreements entered into in 2015 and 2014 by CITGO Holding and CITGO, respectively. Such terms may be read as having their ordinary and usual meaning.

voting interest, such as PDVH – from "caus[ing], mak[ing] or suffer[ing] to exist a Collateral Disposition . . . ."[6] The definition of "Collateral Disposition" provides: "[t]he sale . . . of Capital Stock in a Subsidiary that owns Collateral such that it thereafter is no longer a Subsidiary shall be deemed to be a Collateral Disposition of the Collateral owned by such Subsidiary."[7]

16. The "Collateral" securing the PDVSA 2020 Notes is 50.1% of the shares of capital stock of CITGO Holding.[8] Therefore, because PDVH owns all the shares of capital stock of CITGO Holding, PDVH is a "Subsidiary that owns Collateral," and a sale of more than 50% of the shares of capital stock of PDVH would render PDVH no longer a "Subsidiary" (*i.e.*, PDVSA would no longer own a majority of the voting interest of PDVH). Accordingly, a sale of more than 50% of the capital stock of PDVH would constitute a "Collateral Disposition" and would cause PDVSA to be in breach of its covenant obligations by virtue of suffering a Collateral Disposition.

17. Under Section 5.01(a)(3) of the PDVSA 2020 Notes Indenture, PDVSA's breach of this covenant could ripen into an "Event of Default" if PDVSA receives written notice of the breach from holders of at least 25% of outstanding principal of the PDVSA 2020 Notes and PDVSA does not cure the breach within sixty days (even if the "Collateral Disposition" is effectuated pursuant to a court order). In particular, Section 5.01 provides:

> (a) *Events of Default*. "Event of Default", wherever used herein with respect to the Notes, means any one of the following events (which will constitute Events of Default whatever the reason for any such Event of Default and whether it is voluntary or involuntary or is effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):
>
> . . .

---

[6] Exhibit 1, PDVSA 2020 Notes Indenture at §§ 1.01, 4.01(b)(1).

[7] *Id*. at § 1.01.

[8] Exhibit 2, PDVSA 2020 Notes Pledge Agreement at § 2.01 and Annex I.

>(3) a default in the observance or performance of any other covenant or agreement contained in this Indenture . . . which default continues for a period of 60 days after [PDVSA] receives written notice specifying the default (and demanding that such default be remedied) from Holders of at least 25% of the Outstanding principal amount of the Notes . . . .[9]

18. Once an Event of Default occurs, holders of at least 25% in principal amount of the outstanding PDVSA 2020 Notes may declare principal, accrued interest and premium to be due and payable by notice in writing to PDVSA and the trustee.[10] If the holders are not paid and the Event of Default is not waived, or the acceleration is not rescinded by the holders, the trustee may, "at the written direction of Holders of at least 25% in aggregate principal amount of the then Outstanding [PDVSA 2020] Notes voting as a single class[,]" direct the collateral agent to foreclose on the 50.1% of the shares of capital stock of CITGO Holding pledged as collateral, and apply any resulting funds in satisfaction of PDVSA's obligations under the PDVSA 2020 Notes.[11]

19. The statement of consolidated financial debt of PDVSA and its subsidiaries as of December 31, 2016 (the "PDVSA 2016 Statement of Debt") states that the outstanding principal of the PDVSA 2020 Notes as of that date was US$2.85 billion.[12] Thus, a sale of more than 50% of the shares of capital stock of PDVH could have the direct consequence of: (i) accelerating PDVSA's obligation to pay outstanding principal of up to US$2.85 billion, depending on the

---

[9] Exhibit 1, PDVSA 2020 Notes Indenture at § 5.01(a).

[10] *Id.* at § 5.01(b). The trustee is MUFG Union Bank, N.A.

[11] *See id.* at § 5.01(e).

[12] *See* PDVSA 2016 Statement of Debt, p. 7, of which excerpts of true and correct copies are attached as Exhibit 12, accompanied by a certified English translation. This document is available at the website of PDVSA. The Firm does not have the statement of consolidated financial debt of PDVSA and its subsidiaries as of December 31, 2017. The PDVSA 2020 Notes Indenture provides that principal is payable in four equal installments, on each anniversary of the date on which such notes were issued. Exhibit 1, PDVSA 2020 Notes Indenture at § 2.08(b). I do not have knowledge regarding principal repayments made under such notes after December 31, 2016.

principal repayments made after December 31, 2016, plus accrued interest and premium under the PDVSA 2020 Notes; and, absent such payment, (ii) causing the foreclosure on the 50.1% of the shares of capital stock of CITGO Holding pledged as collateral for the PDVSA 2020 Notes.

### B. CITGO Holding Notes and CITGO Notes

20. Under the CITGO Holding Notes and the CITGO Notes, a "Change of Control" occurs if voting stock of a direct or indirect parent of the respective issuer (CITGO Holding or CITGO) is acquired by an individual or company enabling such individual or company to elect a majority of the board of directors of such parent.[13] Thus, a sale of more than 50% of the shares of capital stock of PDVH would constitute a "Change of Control" under the CITGO Holding Notes – because PDVH is the direct parent of CITGO Holding – and under the CITGO Notes – because PDVH is an indirect parent of CITGO.

21. If a "Change of Control" occurs, both financing facilities include affirmative covenants that require CITGO Holding and CITGO to offer to repurchase their respective notes at a price in cash equal to 101% of the aggregate principal amount of the notes plus accrued interest.[14]

22. Under each of the two financings, an "Event of Default" would occur if, following a "Change of Control": (i) any holders of CITGO Holding Notes or CITGO Notes tender their notes for repurchase; (ii) CITGO Holding or CITGO fails to repurchase their respective tendered notes within the required timeframes; (iii) the trustee or holders of at least 25% in principal amount of each financing send written notice to CITGO Holding or CITGO of such failure; and (iv) CITGO Holding or CITGO fails to repurchase their respective notes that have

---

[13] *See* Exhibit 6, CITGO Holding Notes Indenture at § 1.01; Exhibit 9, CITGO Notes Indenture at § 1.01.

[14] *See* Exhibit 6, CITGO Holding Notes Indenture at § 4.14; Exhibit 9, CITGO Notes Indenture at § 4.14.

been tendered after thirty days of receipt of such compliance notice.[15]

23. If the "Event of Default" is continuing, the trustee or the holders of at least 25% in principal amount of the then outstanding CITGO Holding Notes or CITGO Notes may send a notice to CITGO Holding or CITGO setting forth the "Event of Default" and deeming such notice to be a "notice of acceleration," pursuant to which the holders declare principal, interest and premium due and payable.[16]

24. As stated above, the CITGO Holding Notes are secured by a pledge of certain terminal facilities, 100% of the shares of the capital stock of CITGO, and other assets of CITGO Holding.[17] The CITGO Notes are secured by a pledge of substantially all assets of CITGO, including the three refineries owned by CITGO.[18] If the acceleration of the CITGO Holding Notes and CITGO Notes occurs, and the CITGO Entities do not pay their obligations, or acceleration is not rescinded by the note holders, certain holders of notes issued by CITGO Holding and certain lenders under the CITGO term loan may direct the corresponding collateral agent to foreclose on the CITGO Holding Assets and the CITGO Assets, respectively.[19] This

---

[15] *See* Exhibit 6, CITGO Holding Notes Indenture at §§ 4.14, 6.01; Exhibit 9, CITGO Notes Indenture at §§ 4.14, 6.01. As with the PDVSA 2020 Notes, an "Event of Default" under the CITGO Holding Notes and CITGO Notes includes voluntary or involuntary "Events of Default" such as those "effected by operation of law or pursuant to any judgment, decree or order of any court . . . ." *See* Exhibit 6, CITGO Holding Notes Indenture at § 6.01; Exhibit 9, CITGO Notes Indenture at § 6.01.

[16] *See* Exhibit 6, CITGO Holding Notes Indenture at § 6.02; Exhibit 9, CITGO Notes Indenture at § 6.02.

[17] *See* Exhibit 6, CITGO Holding Notes Indenture at §§ 1.01 (definition of "Collateral"), 12.01; Exhibit 7, CITGO Holding Security Agreement at §§ 1.3, 2.1 and Schedule 1.

[18] *See* Exhibit 9, CITGO Notes Indenture at §§ 1.01 (definition of "Collateral"), 12.01; Exhibit 10, CITGO Security Agreement at §§ 1.3, 2.1 and Schedule 2.

[19] *See* Exhibit 6, CITGO Holding Notes Indenture at § 6.03; Exhibit 9, CITGO Notes Indenture at § 6.03; Exhibit 7, CITGO Holding Security Agreement at §§ 1.3, 5; Exhibit 10, CITGO Security Agreement at §§ 1.3, 6; Exhibit 8, CITGO Holding Intercreditor Agreement at §§ 1.1, 2.1, 5.3; Exhibit 11, CITGO Intercreditor Agreement at §§ 1.1, 2.1, 5.3.

would include all of the shares of capital stock of CITGO and the three refineries owned by CITGO.

25. The PDVSA 2016 Statement of Debt states that the outstanding principal under the CITGO Holding Notes and the CITGO Notes as of December 31, 2016 was US$1.44 billion and US$0.64 billion, respectively.[20] Therefore, the potential direct consequences of a sale of more than 50% of the PDVH shares include: (i) acceleration of the obligations of the CITGO Entities to pay approximately US$2 billion plus accrued interest and premium; and, absent such payment, (ii) foreclosure on substantially all the assets of the CITGO Entities, including the shares of CITGO and the three refineries.

26. Given that PDVH's only significant asset is its shares of capital stock of CITGO Holding, the acceleration of the obligations of the CITGO Entities to repay their financing facilities and the foreclosure on substantially all the assets of the CITGO Entities would result in a significant negative impact on the value of the PDVH shares.

## IV. INDIRECT CONSEQUENCES OF SALE OF PDVH SHARES

27. Under each series of the Unsecured PDVSA Notes, acceleration of the PDVSA 2020 Notes would constitute an "Event of Default" if the amount accelerated equals or exceeds US$100 million.[21] As noted above, the outstanding principal under the PDVSA 2020 Notes as

---

[20] *See* Exhibit 12, PDVSA 2016 Statement of Debt, pp. 8, 15. The CITGO Holding Notes and the CITGO Notes will mature on February 15, 2020 and August 15, 2022, respectively. The corresponding indentures provide for optional redemptions under certain conditions. *See* Exhibit 6, CITGO Holding Notes Indenture at § 3.07; Exhibit 9, CITGO Notes Indenture at §3.07. The principal amount on the date of issuance of the CITGO Holding Notes and the CITGO Notes was US$1.50 billion and US$0.65 billion, respectively. *See* Exhibit 6, CITGO Holding Notes Indenture, Recitals; Exhibit 9, CITGO Notes Indenture, Recitals. I do not have knowledge regarding any optional redemptions of CITGO Holding Notes or CITGO Notes made after December 31, 2016.

[21] *See* Exhibit 3, PDVSA 2022 Notes Indenture at § 5.01(a)(4); Exhibit 4, PDVSA 2026 Notes Offering Memorandum, p. 114; Exhibit 5, PDVSA 2027 Notes and PDVSA 2037 Notes Indenture at § 5.1(a)(4).

of December 31, 2016 was US$2.85 billion.[22] Thus, it is likely that an acceleration of the PDVSA 2020 Notes in the near future would be in an amount exceeding US$100 million. In that case, the holders of at least 25% of the principal amount of each series of the Unsecured PDVSA Notes would have the right to accelerate such series by providing a notice of acceleration to PDVSA and the respective trustee.[23]

28. The PDVSA 2016 Statement of Debt shows that the aggregate outstanding principal of the Unsecured PDVSA Notes as of December 31, 2016 was US$22.49 billion.[24] Thus, a sale of more than 50% of the shares of capital stock of PDVH that triggers the acceleration of the PDVSA 2020 Notes could cause the acceleration of PDVSA's obligation to pay aggregate outstanding principal of up to US$22.49 billion, depending on the principal repayments made after December 31, 2016, plus accrued interest and premium under the Unsecured PDVSA Notes.

29. In sum, a sale of more than 50% of the outstanding capital stock of PDVH may trigger a number of serious consequences that could ultimately have a significant negative impact on the value of the PDVH shares and accelerate payment obligations of PDVSA in excess of US$25 billion.

---

[22] *See* Exhibit 12, PDVSA 2016 Statement of Debt, p. 7.

[23] *See* Exhibit 3, PDVSA 2022 Notes Indenture at § 5.01(b); Exhibit 4, PDVSA 2026 Notes Offering Memorandum, p. 115; Exhibit 5, PDVSA 2027 Notes and PDVSA 2037 Notes Indenture at § 5.1(b).

[24] *See* Exhibit 12, PDVSA 2016 Statement of Debt, p. 7. I do not have knowledge regarding principal repayments made under any of the Unsecured PDVSA Notes after December 31, 2016.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed: August 30, 2018
Rome, Italy

_____
David Bayrock