# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) C.A. No. 17-mc-00151-LPS<br>) |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | )<br>)<br>) |
| Defendant. | ) |

## ROSNEFT TRADING S.A.'S MOTION TO INTERVENE

**DLA PIPER LLP (US)**
Ashley R. Altschuler (DE Bar No. 3803)
Harrison S. Carpenter (DE Bar No. 6018)
1201 North Market Street, Suite 2100
Wilmington, DE  19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
ashley.altschuler@dlapiper.com
harrison.carpenter@dlapiper.com

*Attorneys for Intervenor Rosneft Trading S.A.*

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 2

ARGUMENT .................................................................................................................................... 5

    I.    RTSA Is Entitled to Intervene as of Right ............................................................. 5

           A.    RTSA's Motion Is Timely ........................................................................... 6

           B.    RTSA Has a "Significantly Protectable" Interest in the Proceedings ........ 7

           C.    RTSA's Interests May Be Affected or Impaired, as a Practical Matter, by the Disposition of this Action .................................................. 10

           D.    RTSA's Interests Are Not Adequately Represented by Any Existing Party .............................................................................................. 12

    II.   The Court, in its Discretion, Should Allow RTSA to Intervene Permissively ............................................................................................................ 13

CONCLUSION ............................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Cases**                                                                                                                                              **Page(s)**

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*,
   701 F.3d 938 (3d Cir. 2012) .................................................................................................. 10

*Brody ex rel. Sugzdinis v. Spang*,
   957 F.2d 1108 (3d Cir. 1992) ................................................................................ 7, 11, 12, 13, 14

*In re Chemed Corp. S'holder Derivative Litig.*,
   C.A. No. 13-1854-LPS-CBJ, 2017 WL 1712530 (D. Del. Apr. 25, 2017) .............................. 9

*Del. Vall. Citizens' Council for Clean Air v. Pennsylvania*,
   674 F.2d 970 (3d Cir. 1982) .................................................................................................... 12

*Donaldson v. United States*,
   400 U.S. 517 (1971) .................................................................................................................. 7

*In re Fine Paper Antitrust Litig.*,
   695 F.2d 494 (3d Cir. 1982) ...................................................................................................... 6

*Getty Oil Co. v. Dep't of Energy*,
   117 F.R.D. 540 (D. Del. 1987) ............................................................................................... 13

*Holdborn Oil Trading Ltd. v. Interpetrol Berm. Ltd.*,
   658 F. Supp. 1205 (S.D.N.Y. 1987) ......................................................................................... 9

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
   C.A. No. 12-193-LPS, 2014 WL 4445953 (D. Del. Sept. 8, 2014) ............................... 8, 13, 15

*King v. Governor of the State of N.J.*,
   767 F.3d 216 (3d Cir. 2014) .................................................................................................... 14

*Kleissler v. U.S. Forest Serv.*,
   157 F.3d 964 (3d Cir. 1998) ....................................................................................... 6, 7, 8, 9, 11

*Knoll v. City of Allentown*,
   707 F.3d 406 (3d Cir. 2013) .................................................................................................... 15

*Link v. Wabash R.R. Co.*,
   370 U.S. 626 (1962) ................................................................................................................ 16

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
   72 F.3d 361 (3d Cir. 1995) ......................................................................... 6, 7, 8, 10, 11, 12, 13

*Olympic Chartering, S.A. v. Ministry of Indus. & Trade of Jordan*,
   134 F. Supp. 2d 528 (S.D.N.Y. 2001) ................................................................................. 6, 11

*Pennsylvania v. President of United States of Am.*,
   888 F.3d 52 (3d Cir. 2018) ..................................................... 1, 2, 6, 7, 8, 9, 10, 11, 12, 13, 14


*United States v. Alcan Aluminum, Inc.*,
  25 F.3d 1174 (3d Cir. 1994)..........................................................................................................7

**Rules and Statutes**

Federal Rule of Civil Procedure 24 ................................................................................5, 8, 13

Pursuant to the Court's Memorandum Order dated August 23, 2018 [D.I. 95], Rosneft Trading S.A. ("RTSA") hereby files this motion to intervene.

## INTRODUCTION

RTSA respectfully moves this Court for an order permitting RTSA to intervene in this action and to be heard regarding the appropriate procedure for effecting any sale of the common stock in PDV Holding, Inc. ("PDVH") owned by Petróleos de Venezuela, S.A. ("PDVSA") and any matters ancillary to such a sale to the extent necessary. RTSA possesses a perfected, first-priority security interest in 49.9% of the shares of CITGO Holding, Inc. ("CITGO Holding"), the core asset of PDVH, and will be entitled to exercise a suite of rights and remedies with respect to those shares as a result of the attachment and/or execution on the PDVH stock. As such, RTSA possesses the requisite interest in this action to support intervention as of right, and to justify the Court's exercise of its vast discretion to allow permissive intervention. Moreover, permitting RTSA to intervene at this stage of the proceedings will serve judicial economy and will benefit all parties by ensuring that the entity with a security interest in half of the assets at the core of this action has a say in the manner of any disposition of those assets, rather than spurring litigation after a sale.

As the Third Circuit emphasized earlier this year, intervention is driven by pragmatic considerations, and motions to intervene must be resolved "with an eye toward the 'elasticity' and 'flexibility' that [Federal] Rule [of Civil Procedure] 24 contemplates." *Pennsylvania v. President of United States of Am.*, 888 F.3d 52, 59, 62 (3d Cir. 2018). Such a pragmatic approach is particularly appropriate here, where RTSA seeks to intervene not for the purpose of asserting a claim or defense, but rather simply to ensure that the parties and the Court do not proceed without the input of a key security interest holder and to enable RTSA to protect a security interest that predates this action. Applying this framework, and recognizing both "the 'practical consequences' of the litigation" for

RTSA and "the highly fact-bound nature of requests to intervene," *id.*, the Court should grant this motion and allow RTSA to intervene on the terms described herein.

In particular, RTSA respectfully asks that the Court treat it as a party to this action and accord it all accompanying rights, so as to enable RTSA to monitor, provide meaningful input on, and ultimately participate in any appraisal and sale proceedings. Those proceedings, after all, will have a direct effect on RTSA's rights and interests, and fundamental fairness mandates that RTSA be apprised of potential buyers and receive adequate assurance that the buyers understand RTSA's superior rights in PDVH's chief asset. Accordingly, RTSA's rights as an intervenor should include, at the very least: (1) the right to be notified of, and to participate in, future proceedings in this matter (including valuation and appraisal proceedings); (2) the right to present an expert opinion on the valuation of the PDVH common stock; (3) the right to submit briefing on the appropriate appraisal and sale processes; (4) the right to comment on any proposed offering documents; and (5) the right to appeal from any adverse decisions.

## BACKGROUND

For years, RTSA and PDVSA have maintained a commercial relationship centered on the supply of oil and oil products. In November 2016, to secure certain obligations owed by PDVSA and its affiliates, PDVH, PDVSA's wholly owned subsidiary, pledged to RTSA 49.9% of the stock of CITGO Holding. The remaining 50.1% of CITGO Holding stock was encumbered by a perfected, first-priority security interest in favor of the holders of PDVSA bonds maturing in 2020 (the "2020 Bondholders"). PDVH owns 100% of CITGO Holding, and CITGO Holding, in turn, owns 100% of CITGO Petroleum Corp. ("CITGO Petroleum"). The common stock of CITGO Holding is PDVH's core asset, and its value is derived entirely from the value of CITGO Petroleum.

The pledge agreement between RTSA and PDVSA empowers RTSA to avail itself of a host of remedies upon the occurrence of certain listed events.[1] Among these triggering events are bankruptcy and insolvency events in relation to PDVSA or PDVH, a change in the ownership chain including PDVH and the CITGO entities, and the occurrence of any event that has or is reasonably likely to have a material adverse effect on PDVSA's ability to perform under its commercial agreements. RTSA's remedies include, but are not limited to: (1) proceeding by suit to foreclose the agreement and sell the pledged CITGO Holding stock; (2) triggering the sale of the pledged CITGO Holding stock at a public or private sale; (3) exercising all rights and remedies under the Uniform Commercial Code; (4) acting as PDVH's attorney-in-fact to carry out the agreement, preserve the validity and priority of the liens, and exercise RTSA's rights and remedies under the agreement; (5) collecting all profits on the pledged CITGO Holding stock; and (6) imposing a constructive trust on any profits PDVH receives from the pledged CITGO Holding stock. Those remedies bear directly on the disposition of the CITGO Holding stock and on the governance of PDVH—and, by extension, on the value of the PDVH stock.

Plaintiff Crystallex International Corporation ("Crystallex") instituted this action in an effort to collect on a $1.2 billion judgment it holds against the Bolivarian Republic of Venezuela. [D.I. 1] While RTSA is not presently a party to this action, Crystallex has sued RTSA separately in this Court, alleging that PDVH's pledge of PDVH common stock to RTSA violated the Delaware Uniform Fraudulent Transfer Act ("DUFTA"). *See* First Am. Compl. ¶¶ 67–70, *Crystallex Int'l Corp. v. PDV Holding, Inc.* (*Crystallex II*), C.A. No. 16-1007-LPS (D. Del. filed

---

[1] RTSA has not attached this agreement as an exhibit to this motion because the agreement contains confidential and sensitive commercial information. To the extent the Court wishes to examine this agreement to evaluate RTSA's application for intervention, RTSA would be amenable to presenting the agreement to the Court for an *in camera* inspection or filing it under seal, at the Court's election.

Jan. 4, 2017), ECF No. 18.  The proceedings in *Crystallex II* have been stayed pending the Court's ruling on Crystallex's motion for writ of attachment and currently remain stayed.

On August 9, 2018, this Court issued an Opinion and Order finding that PDVSA's shares of PDVH are subject to attachment and execution in order to satisfy Crystallex's judgment because PDVSA is the alter ego of Venezuela.  [D.I. 78, 79]  On August 10, 2018, PDVSA—which had successfully intervened in the case nearly a year earlier [D.I. 17]—filed a Notice of Appeal to the United States Court of Appeals for the Third Circuit [D.I. 80].  On August 20, 2018, nonparties CITGO Holding and CITGO Petroleum filed a joint letter to the Court describing their interest in any sale of PDVH common stock, detailing the unprecedented practical challenges attendant to the appraisal and sale of PDVH securities, and expressing their intention to intervene in the proceedings.  [D.I. 91]  On August 22, 2018, RTSA filed its own letter to the Court to draw the Court's attention to certain material facts bearing on the sale of PDVH common stock and to join in the CITGO entities' request for a hearing before any sale process commences.  [D.I. 92]

By a Memorandum Order dated August 23, 2018, the Court directed the Clerk of Court to issue the writ of attachment *fieri facias*, and instructed the U.S. Marshals Service to serve the writ.  [D.I. 95][2]  The Court, however, expressly stayed execution on the attached property until further order of the Court, and invited nonparties such as RTSA to file a "motion to intervene, or any other motion or input they wish to provide" in advance of that order.  [D.I. 95]  It is in this context that RTSA has moved to intervene in these proceedings.

On August 24, 2018, PDVSA filed a petition for a writ of mandamus in the Third Circuit. PDVSA contends that this Court's August 9 Order denying PDVSA's sovereign immunity is an immediately appealable collateral order and that PDVSA's filing of a notice of appeal divested

---

[2] PDVH was served with the writ of attachment on August 24, 2018.  [D.I. 96]

this Court of jurisdiction, such that its August 23 Order issuing the writ of attachment exceeded the Court's jurisdiction. RTSA is filing this motion to intervene in order to protect its own interests. However, RTSA's strong view is that the most prudent course of action in this case, particularly given the scale of the potential sale, would be to stay all further proceedings pending final resolution of PDVSA's petition and appeal. Absent a stay, the Third Circuit will be unable to grant meaningful relief—and undo the harm to PDVSA's creditors, including RTSA and the 2020 Bondholders—following a sale of the PDVH stock.

## ARGUMENT

RTSA's security interest in CITGO Holding, PDVH's core asset and the source of essentially all value in PDVH common stock, as well as the practical effect of RTSA's contractual remedies on PDVH and on the appraisal and sale processes, entitle RTSA to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). These same interests, coupled with the public interests in preserving judicial resources and in ensuring that an asset sale that appears to be without precedent in this country comports with the law, militate strongly in favor of permissive intervention under Federal Rule of Civil Procedure 24(b), as well. If the Court is disinclined to grant RTSA intervenor status, then, at the very least, the Court should notify RTSA of all proceedings relating to its August 9 and August 23 Orders, allow it to be heard at any hearings, and permit it to participate in the appraisal and sale processes.

### I. RTSA Is Entitled to Intervene as of Right

Rule 24(a)(2) affords a non-party the right to intervene in litigation upon proof of four elements: (1) "a timely application for leave to intervene"; (2) "a sufficient interest in the litigation"; (3) "a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action"; and (4) "inadequate representation of the prospective intervenor's interest by existing parties to the litigation." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d

Cir. 1998). Far from prescribing a rigid test, the Third Circuit recognizes that "pragmatism is a substantial factor that must be considered"; "Rule 24 demands flexibility when dealing with the myriad situations in which claims for intervention arise." *Id.* at 970, 972. And, in light of these standards, "it is not surprising that '[t]he facts assume overwhelming importance in each decision.'" *Pennsylvania*, 888 F.3d at 58 (quoting *Kleissler*, 157 F.3d at 972). The same analysis applies in motions to intervene in proceedings to attach and execute on property pursuant to Federal Rule of Civil Procedure 69. *See, e.g.*, *Olympic Chartering, S.A. v. Ministry of Indus. & Trade of Jordan*, 134 F. Supp. 2d 528, 529, 532–33 (S.D.N.Y. 2001) (granting bank's motion to intervene in judgment-execution proceedings). Each of the requisites of mandatory intervention is amply satisfied here.

### A. RTSA's Motion Is Timely

There can be no genuine dispute that RTSA's motion is timely. "The timeliness of a motion to intervene is 'determined from all the circumstances and, in the first instance, by the [trial] court in the exercise of its sound discretion.'" *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995) (quoting *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982)). Here, the Court already has used its discretion to invite RTSA to file a motion to intervene or otherwise to participate in these proceedings before the Court issues any further orders to effect the execution on the attached property. And RTSA has fully complied with the Court's invitation: RTSA moved to intervene within seven days of the service of the Court's writ of attachment on PDVH, just as the Court directed in its August 23, 2018 Order. [D.I. 95]

Moreover, the key timeliness factors identified by the Third Circuit weigh in favor of intervention. No party can claim prejudice from any delay, as the writ of attachment only recently issued, and the Court has indicated that it will welcome "input" [D.I. 95] from interested third parties before proceeding with any appraisal or sale proceedings. *See Mountain Top*, 72 F.3d at

370 (holding that intervention four years into suit would not prejudice the current parties where, *inter alia*, no decrees had been entered, and noting that "intervention has been allowed even after the entry of a judgment"). Likewise, RTSA promptly intervened upon learning that its interests were imperiled—just one week after attachment. *See United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1183 (3d Cir. 1994) ("To the extent the length of time an applicant waits before applying for intervention is a factor in determining timeliness, it should be measured from the point at which the applicant knew, or should have known, of the risk to its rights.").

    **B.  RTSA Has a "Significantly Protectable" Interest in the Proceedings**

Due regard for the principles of pragmatism and flexibility underlying Rule 24(a)(2) compels the conclusion that RTSA possesses an interest in this action that gives rise to mandatory intervention. "To justify intervention as of right, the applicant must have an interest 'relating to the *property or transaction* which is the subject of the action' that is 'significantly protectable.'" *Kleissler*, 157 F.3d at 969 (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971) (emphasis added)). The Third Circuit "ha[s] interpreted this to mean 'a cognizable legal interest, and not simply an interest of a general and indefinite character.'" *Pennsylvania*, 888 F.3d at 59 (quoting *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1116 (3d Cir. 1992)). An intervenor "must therefore demonstrate that its interest is 'specific to [it], is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought.'" *Id.* (quoting *Kleissler*, 157 F.3d at 972). This is a flexible and fact-intensive inquiry. *See Kleissler*, 157 F.3d at 972. Nevertheless, the "polestar" for assessing an application for intervention "is always whether the proposed intervenor's interest is direct or remote." *Id.*

While a "mere economic interest in the outcome of the litigation" may not support the right to intervene, "an intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund." *Mountain Top*, 72 F.3d at 366. The same is true of an intervenor's interest

- 7 -

in a specific contract or in specific property, *see Kleissler*, 157 F.3d at 972–73, or even in a specific legal right or policy outcome, *see Pennsylvania*, 888 F.3d at 58.  Where those interests may be jeopardized by the litigation, Third Circuit law sensibly affords a right of intervention.  *See Pennsylvania*, 888 F.3d at 58 (religious nonprofit had a significantly protectable interest in preserving an interim final rule that conferred an exemption from a contraceptive notice requirement that burdened its religious beliefs); *Kleissler*, 157 F.3d at 973 (logging companies, including those with existing timber contracts, those who had submitted successful contract bids, *and* those who lacked contracts but depended on them for economic viability, had an interest in litigation challenging timber harvesting plan); *Mountain Top*, 72 F.3d at 368 (condominium owners had an adequate interest to intervene in litigation between condominium association and builder, based on insurance proceeds deposited in court registry to which owners had a potential claim); *Intellectual Ventures I LLC v. AT&T Mobility LLC*, C.A. No. 12-193-LPS, 2014 WL 4445953, at *3 (D. Del. Sept. 8, 2014) (manufacturer of allegedly infringing devices had an interest in patent-infringement litigation).

RTSA plainly has a qualifying interest in these proceedings.  Whether framed in terms of the "property" or the "transaction" that is the "subject of this action," Fed. R. Civ. P. 24(a)(2), RTSA's security interest in CITGO Holdings and its varied remedies under the pledge agreement bear the necessary direct relationship to this proceeding.  The "property" that is "the subject of this action" is the PDVH common stock owned by PDVSA, and the corresponding "transaction" is the execution on the writ of attachment.  As the holder of a perfected, first-priority lien on 49.9% of CITGO Holding, RTSA has a significant security interest in the principal asset of PDVH.  The common stock of PDVH owes virtually all of its value to CITGO Holding and its wholly owned subsidiary, CITGO Petroleum.  The execution on the writ of attachment on PDVSA's common

stock in PDVH, and the disposition of those securities, *necessarily* implicates RTSA's interests. Accordingly, RTSA possesses an interest in a specific fund or specific property that will be directly affected by the proceeding, and that interest is at least as strong as those economic and policy interests endorsed by the Third Circuit. *See Pennsylvania*, 888 F.3d at 58; *Kleissler*, 157 F.3d at 972–73. To conclude otherwise would require the Court to blind itself to commercial reality, and to adopt a restrictive view of the type of interest required for intervention, contrary to the Third Circuit's express policy of "flexibility." *Kleissler*, 157 F.3d at 972; *see also Holdborn Oil Trading Ltd. v. Interpetrol Berm. Ltd.*, 658 F. Supp. 1205, 1208–09 (S.D.N.Y. 1987) (granting intervention to a judgment creditor of the subsidiary of a party to the action). Indeed, any sale of the PDVH common stock would affect RTSA's interests in a manner similar to a change in control transaction, which undoubtedly would give rise to a protectable interest. *See In re Chemed Corp. S'holder Derivative Litig.*, C.A. No. 13-1854-LPS-CBJ, 2017 WL 1712530, at *10 (D. Del. Apr. 25, 2017) (granting shareholder's motion for mandatory intervention in derivative suit for breach of fiduciary duties). Moreover, as a practical matter, it is in the interests of all parties to this proceeding—including Crystallex, which insists its overriding goal is to maximize the price obtained—and the Court to involve RTSA in any potential sale of the shares of PDVH.

Further, RTSA will be entitled to exercise a suite of rights and remedies with respect to those CITGO Holding shares as a result of the attachment and/or execution on the PDVH stock, and those remedies not only *will affect* these proceedings but also *will be affected by* these proceedings. *See Kleissler*, 157 F.3d at 969 ("Often the determination of whether an interest is significantly protectable is 'colored to some extent' by the 'practical impairment' inquiry."). For example, RTSA has, among other rights, the right to trigger the sale of the CITGO Holding shares. If RTSA avails itself of this or any similar remedy, this will have a direct and material effect on the appraisal and sale of the

PDVH shares, as PDVH has no independent value absent the CITGO entities, and any buyer of the PDVH stock would receive significantly encumbered assets. Equally, the attachment and sale of PDVSA's holdings in PDVH would interfere with RTSA's ownership and voting rights in the pledged CITGO Holding stock, insofar as that stock is essentially PDVH's only property. In short, RTSA's interests are "specific to [it]," are "capable of definition," and "will be directly affected in a substantially concrete fashion by the relief sought" in this action. *Pennsylvania*, 888 F.3d at 59.

Lastly, it merits note that RTSA seeks intervention only in the appraisal and sale processes—that is, in what amounts to the "remedies" phase of this action. "[P]roposed intervenors need not possess an interest in each and every aspect of the litigation," but "are entitled to intervene as to specific issues so long as their interest in those issues is significantly protectable." *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 951 (3d Cir. 2012) (quoting *Mountain Top*, 72 F.3d at 368) (internal quotation marks omitted). Where, as here, a party possesses the requisite interest in "the remedy stage of the litigation"—namely, where its "'interest[s] may be affected or impaired as a practical matter' by the disposition of this distinct stage of the litigation"—intervention is proper. *Id.* at 952.

### C. RTSA's Interests May Be Affected or Impaired, as a Practical Matter, by the Disposition of this Action

For largely the same reasons, the record is clear that the conduct of these proceedings may imperil RTSA's interests. This is not an onerous showing in the Third Circuit; RTSA need only "demonstrate that [its] interest *might* become affected or impaired, as a practical matter, by the disposition of the action in [its] absence." *Mountain Top*, 72 F.3d at 368. Again, pragmatism is the touchstone of this inquiry. "Because [the Court's] focus is on the '*practical consequences*' of the litigation, [the Court] 'may consider any significant legal effect on the applicant's interest,' including a decision's stare decisis effect or a proposed remedy's impact on the applicant for intervention."

*Pennsylvania*, 888 F.3d at 59 (quoting *Brody*, 957 F.2d at 1122 (emphasis added)). It is not necessary that "intervention constitute[] the only possible avenue of relief." *Brody*, 957 F.2d at 1123. Indeed, a contrary holding "would reverse [the Third Circuit's] policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks." *Id.*

As detailed above, RTSA's perfected, first-priority security interest in the CITGO Holding stock, and its contractual rights and remedies under the pledge agreement, are *sure* to be affected by the attachment and execution on PDVSA's holdings of PDVH common stock. This is especially true in light of the pragmatic focus of Rule 24(a)(2); it is beyond serious dispute that execution on the PDVH shares, which derive virtually all value from the CITGO entities, will have "practical consequences" for RTSA. *See Pennsylvania*, 888 F.3d at 59. Further, both the immediacy of RTSA's interests and the certainty of their impairment suffice to justify intervention under settled law. *See id.* at 59–60 (litigation with "the potential" to result in an adverse legal holding, which "could affect how the government proceeds in future rulemakings," which itself "could affect whether [intervenors] will remain exempt" from the challenged regulation, constituted sufficient evidence of possible impairment); *Kleissler*, 157 F.3d at 973 (prospect that a successful legal challenge to a logging plan would deprive municipalities and timber companies of revenue was adequate showing of impairment); *Mountain Top*, 72 F.3d at 322 (possibility of settlement or disbursement of insurance proceeds following mediation, and attendant mooting of certain claims, made out potential impairment); *Olympic Chartering*, 134 F. Supp. 2d at 533 (execution against assets purportedly belonging to bank "*will* . . . 'directly and immediately' affect[]" bank's interest so as to justify intervention (emphasis added)).

### D. RTSA's Interests Are Not Adequately Represented by Any Existing Party

The course of these and related proceedings dispel any possible doubt that RTSA's interests are not adequately represented by any party to this action. "This burden is generally 'treated as

minimal' and requires the applicant to show 'that representation of his interest "*may be*" inadequate.'" *Pennsylvania*, 888 F.3d at 60 (quoting *Mountain Top*, 72 F.3d at 368). Even when the applicant's interests "are similar to those of a party," the applicant is not adequately represented when those interests "diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests." *Brody*, 957 F.2d at 1123.

Neither Crystallex nor Venezuela nor PDVSA will adequately represent RTSA's interests. Crystallex has sued RTSA for fraudulent transfer in a related action, based on the same pledge agreement implicated here, *see* First Am. Compl. ¶¶ 67–70, *Crystallex II*, and Crystallex has resisted even RTSA's efforts to bring material information to the Court's attention [D.I. 94]. To that end, Crystallex has adopted a position *directly contrary* to RTSA's interests: That RTSA "has no interest in the shares of PDVH" and "presents no reason as to why any rights that it may have with respect to CITGO Holding . . . would be affected by the sale of PDVH" [D.I. 94]. *See Mountain Top*, 72 F.3d at 323 (condominium owners' interests were inadequately represented by condominium association where "it [was] apparent from the prior conduct of [the association] that it w[ould] not represent [the owners'] point of view in th[e] proceeding"); *see also Del. Vall. Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 974 (3d Cir. 1982) (recognizing that a "divergence between [the parties'] position[s] . . . on the primary issue involved in the litigation" may demonstrate inadequate representation). Moreover, to the extent that Crystallex asserts a shared interest in "maximiz[ing] the value of the PDVH shares" [D.I. 94], this is no reason to presume adequate representation, much less to deny RTSA any involvement in this critically important process. Crystallex has an overriding interest in recovering on its judgment, free of any claims and/or liens. As a simple matter of valuation, then, Crystallex's interests necessarily will diverge from RTSA's interests. In addition, given the scope of the judgment and the potentially

far-reaching effects of the sale, the Court cannot reasonably entrust the judgment creditor *alone* with helming the appraisal and sale processes. As for Venezuela and PDVSA, those parties self-evidently harbor interests different from RTSA's, as PDVSA is the counterparty on the pledge agreement, and Venezuela's interests are aligned with those of PDVSA. Under these circumstances, RTSA has carried its "minimal" burden to show inadequate representation, and the motion should be granted. *See Mountain Top*, 72 F.3d at 323.

## II.     The Court, in its Discretion, Should Allow RTSA to Intervene Permissively

The foregoing analysis equally justifies a favorable exercise of the Court's discretion in granting RTSA's request for permissive intervention. Under Rule 24(b)(1)(B), the Court "may permit anyone to intervene who 'has a claim or defense that shares with the main action a common question of law or fact.'" *Intellectual Ventures*, 2014 WL 4445953, at *2 (quoting Fed. R. Civ. P. 24(b)(1)(B)). The decision to grant permissive intervention, "as the doctrine's name suggests, is within the discretion of the district court." *Brody*, 957 F.2d at 1124. And that discretion is considerable. *See Pennsylvania*, 888 F.3d at 57 (orders on permissive intervention are "'highly discretionary' decisions" into which appellate courts "are more reluctant to intrude" (quoting *Brody*, 957 F.2d at 1115)). "The central consideration for the exercise of discretion is whether allowing intervention will cause 'delay or prejudice.'" *Getty Oil Co. v. Dep't of Energy*, 117 F.R.D. 540, 549 (D. Del. 1987).

As detailed above, RTSA has a significantly protectable interest in these proceedings, asserts a claim to assets bearing directly on the property or transaction that is the subject of this action, and seeks involvement in the remedy phase alone. And, as that phase is barely under way, intervention will cause no delay or cognizable prejudice. *See King v. Governor of the State of N.J.*, 767 F.3d 216, 246 (3d Cir. 2014) (affirming permissive intervention and rejecting as "not convincing" the plaintiffs' argument that "they are unduly prejudiced by having to respond to

'superfluous arguments'"), *abrogated on other grounds by Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018). To the contrary, allowing RTSA to intervene at this stage will only serve the interests of the parties and the public.

Again, bearing in mind the "'elasticity' and 'flexibility' that Rule 24 contemplates," *Pennsylvania*, 888 F.3d at 59, 62, a host of practical considerations weigh in favor of intervention. First and foremost, RTSA's interest in CITGO Holding and its remedies under the pledge agreement give it a significant stake in these proceedings and ensure that any buyer of PDVH common stock will take subject to RTSA's rights. It would defy common sense and basic fairness to hold an appraisal and sale in the absence of the entity—or, as is the case here, the two entities—encumbering the primary asset of the company whose securities are to be sold. As a practical matter, proceeding in RTSA's absence would only invite *post hoc* litigation and needlessly waste judicial resources. *See Brody*, 957 F.2d at 1123 (invoking the Third Circuit's "policy preference . . . favor[ing] intervention over subsequent collateral attacks"). Second, there is no agreed means of valuing the PDVH common stock, as PDVH is wholly owned by PDVSA. Surely it would benefit the parties, the Court, and the public to hear a range of views on the appropriate valuation of PDVH. If nothing else, it would avoid any appearance of unfairness that otherwise would result from handing the reins to the judgment creditor. Third, and relatedly, the sale process contemplated by Delaware law has seldom been exercised, and certainly not with respect to a judgment and an asset as significant as those at issue in this proceeding. The Court unquestionably has an interest in ensuring that any appraisal and sale of shares in a Delaware corporation potentially valued in the billions of dollars complies with all relevant legal standards. Finally, any sale proceedings will take place against a complicated political backdrop, including the prospect that sanctions on Venezuela will come into play upon any transaction or any exercise of any creditors' remedies. Allowing RTSA to participate

in these proceedings will aid the Court and the public in navigating these potentially treacherous waters. For all of these reasons, the Court should avail itself of its broad discretion to grant permissive intervention to RTSA. *See Intellectual Ventures*, 2014 WL 4445953, at *3 (finding both mandatory and permissive intervention appropriate and granting motion to intervene).

## CONCLUSION

For the foregoing reasons, RTSA respectfully requests that the Court grant this motion and permit it to intervene as of right and/or permissively in the appraisal and sale processes for the shares of PDVH common stock held by PDVSA. As set out in the attached proposed order, RTSA requests that it be granted all of the rights attendant to party status, including but not limited to: (1) the right to be notified of, and to participate in, future proceedings in this case (including, without limitation, the right to participate in any appraisal or valuation processes); (2) the right to present an expert opinion on the valuation of the PDVH common stock; (3) the right to submit briefing on the appropriate appraisal and sale processes; (4) the right to comment on any offering documents; and (5) the right to appeal from any adverse decisions.

Strictly in the alternative, in the event that the Court deems intervention inappropriate, RTSA respectfully asks that the Court nevertheless exercise its inherent authority to control its own docket and enter an order providing that RTSA shall receive notice of all proceedings and shall be permitted to participate in the appraisal and sale processes in a manner akin to a party (including filing briefs and being heard at any hearings). *See Knoll v. City of Allentown*, 707 F.3d 406, 410 (3d Cir. 2013) (acknowledging the Court's "inherent authority . . . 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases'" (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30 (1962))).

Dated: August 31, 2018

**OF COUNSEL**:

**DLA PIPER LLP (US)**
John Vukelj (*pro hac vice* motion forthcoming)
1251 Avenue of the Americas
New York, New York 10020
212-335-4500
john.vukelj@dlapiper.com

-and-

**NORTON ROSE FULBRIGHT US LLP**
Steve Dollar (*pro hac vice* motion forthcoming)
1301 Avenue of the Americas
New York, NY 10019-6022
Telephone: (212) 318-3400
steve.dollar@nortonrosefulbright.com

Mark Oakes (*pro hac vice* motion forthcoming)
William Patrick Courtney (*pro hac vice* motion forthcoming)
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701-4255
Telephone: (512) 474-5201
mark.oakes@ nortonrosefulbright.com
patrick.courtney@ nortonrosefulbright.com

Respectfully submitted,

**DLA PIPER LLP (US)**

By: */s/ Ashley R. Altschuler*
Ashley R. Altschuler (DE Bar No. 3803)
Harrison S. Carpenter (DE Bar No. 6018)
1201 North Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
ashley.altschuler@dlapiper.com
harrison.carpenter@dlapiper.com

*Attorneys for Intervenor Rosneft Trading S.A.*