## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., <br><br> Plaintiff <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | C.A. No. 17-mc-00151-LPS |

## JOINT STATUS REPORT

In response to the Court's October 4, 2019 Order requiring the parties to file a joint status report on or before October 11, 2019, the parties and non-parties submit this joint status report.

### Crystallex's Position

On July 29, 2019, the Third Circuit issued its order and judgment denying the appeal in *Crystallex International Corporation v. Bolivarian Republic of Venezuela*, No. 18-2797, as well as denying as moot (i) the appeal in *Crystallex International Corporation v. Bolivarian Republic of Venezuela*, No. 18-3124, and (ii) the petition for writ of mandamus filed in *In Re: Petróleos de Venezuela, S. A.*, No. 18-2889. In light of the Third Circuit's affirmance of this Court's decision affirming the issuance of a writ of attachment on the shares of PDV Holding, Inc. ("PDVH"), Crystallex moved the Third Circuit to lift its stay of further proceedings before this Court. On September 30, 2019, the Third Circuit granted Crystallex's motion. Now that the Third Circuit has denied PDVSA's and Venezuela's appeals and lifted its own stay, this Court should lift the separate stay that it previously entered—and which was requested *by Crystallex* pursuant to a settlement agreement that Venezuela breached more than nine months ago. Crystallex also

1

respectfully requests that this Court direct PDV Holding, Inc. ("PDVH") to immediately respond to the writ of attachment, as such answer was due nearly 13 months ago, so that Crystallex may proceed with its motion for the sale of the shares of PDVH in satisfaction of the approximately $1 billion that Venezuela still owes it.

On November 30, 2018, this Court stayed further proceedings until the later of two events: the passage of January 10, 2019, or a decision on Petróleos de Venezuela, S. A.'s ("PDVSA") appeal of the Court's order authorizing the writ of attachment.[1]  But, January 10, 2019 came and went without Venezuela posting any security.  Since January 11, 2019, the only basis for continuing this Court's stay has been the pendency of the Third Circuit proceedings. The Third Circuit has now unanimously affirmed this Court's decision authorizing the writ of attachment and denied the mandamus petition.  *See* Opinion, Nos. 18-2797, 18-3124 (3d Cir. Sept. , 2019), Doc. 3113304271, at 6 n.1; Judgment, Nos. 18-2797, 18-3124 (3d Cir. July 29, 2019), Doc. 3113304291.  Further, the Third Circuit lifted its stay, thereby authorizing this Court to take further action in aid of execution.  *See* Order, Nos. 18-2797, 18-3124 (3d Cir. Sept. 30, 2019), Doc. 3113360907, at 2.  Now that the Third Circuit has lifted its stay of proceedings in the district court, this Court can and should lift the stay of these proceedings as well.[2]

---

[1]   The January 10, 2019 date corresponded with Venezuela's deadline to post collateral under a conditional settlement with Crystallex.

[2]   It does not matter that PDVSA and Venezuela now seek discretionary review, which has served to delay the issuance of the mandate.  As this Court has already found, absent a stay and the "post[ing] of a supersedeas bond, 'the Court remains free to issue further orders as needed to enforce the August 9 order granting the Writ.'"  D.I. 95 at 3 (citation omitted).  In denying PDVSA's petition for mandamus, the Third Circuit agreed that the appeal did not divest this Court of jurisdiction to enforce its order authorizing the writ.  The pendency of Venezuela's and PDVSA's petitions for rehearing or rehearing en banc did not deter the Third Circuit from lifting the stay it imposed.  There is no reason for this Court to give the petitions any more credence than the Third Circuit itself did.

2

RLF1 22186570v.1

Upcoming events threaten the value of the shares attached by the writ.  PDVSA's so-called "2020 bonds"—which are secured by a pledge of 50.1% of PDVH's interest in CITGO Holding, the immediate parent of CITGO Petroleum—are close to default.  PDVSA's next required payment on the 2020 bonds—of approximately $913 million, including $842 million in principal—is due October 27, 2019.  *See Court Ruling Against Venezuela in Crystallex Case Puts Citgo at Risk*, REUTERS (July 29, 2019), https://tinyurl.com/y3k6rwcl.  While Venezuela has made its required payments to the 2020 bondholders thus far, it is widely expected that Venezuela may default on its upcoming payment.  *See Ashmore's Massive Bet on PDVSA's Bond Roiled by Default Concern*, BLOOMBERG (Aug. 8, 2019), https://tinyurl.com/y5k4vkqf.  A default may permit the 2020 bondholders to exercise the option of selling shares of CITGO Holding without any judicial involvement.  To the best of Crystallex's knowledge, the shares of CITGO Holding represent the only material asset of PDVH.  So long as the stay remains in place, Crystallex will be unable to take steps to protect its interest in the shares of PDVH at the same time that other creditors are continuing to advance their separate claims.

The uncertainty surrounding the ultimate ownership of PDVH makes it difficult for PDVH, its subsidiaries and its creditors to determine how best to proceed.  Unless Venezuela pays the more than $1 billion it still owes on Crystallex's judgment, the Third Circuit ruling makes it clear that at some point the shares of PDVH will be sold and new owners will take Venezuela's place.[3]  The sooner the uncertainty is over and a new owner is in place, the better off PDVH, its subsidiaries and their creditors will be.  As Fitch Ratings explained in July of this

---

[3]    To the extent that Venezuela claims it will be prejudiced by a sale, there is no question that Venezuela and PDVSA have the necessary funds to satisfy Crystallex's outstanding judgment or post a supersedeas bond:  A recent Citgo Holdings prospectus reveals that as of March 31, 2019, Citgo Holdings had $1.843 billion in cash or cash equivalents on hand.  *See* CITGO Holding, Inc., Preliminary Offering Memorandum at 21 (July 18, 2019) (prospectus for $1.37 billion Senior Secured Notes, due 2024).

RLF1 22186570v.1

year, CITGO's "credit profile would be expected to improve under nearly any other owner besides PDVSA." *See Fitch Assigns 'B+'/'RR1' Expected Rating to CITGO Holdco Issuances; Upgrades Holdco IDR to 'CCC+'*, (July 16, 2019), https://tinyurl.com/y33qy7vu.  Allowing a sale to go forward now is necessary to maximize the value of PDVH and its subsidiaries.

Crystallex also respectfully requests that this Court direct PDVH to answer the writ. Under Delaware law, which applies to this garnishment action pursuant to Federal Rule of Civil Procedure 69, a defendant has twenty days from the service of the writ to answer or plead.  Del. Super. Ct. Civ. R. 4(c)(2) ("[T]he writ of attachment . . . summon[s] defendant's garnishees to appear within 20 days after service of the writ to answer or plead."); *see also* Del. Super. Ct. Civ. R. 5(aa)(2) (Del. Superior Court Civil Rule 5(aa)(2) ("Any garnishee duly summoned . . . shall serve upon plaintiff a verified answer within 20 days after service of process.").  Twenty days has long since passed, and PDVH has no excuse for its knowing refusal to comply.  The answer merely requires identifying the extent of PDVSA's shareholdings and other assets the garnishee has in its possession or custody—information that should be readily available to PDVH.  PDVH has known of its obligation to provide this information for over a year, and cannot reasonably argue that it now needs additional time to respond to the writ.[4]  There is no basis for further delay by PDVH.  PDVH's refusal to answer the writ is little more than a transparent effort to postpone enforcement of this Court's order.

Once this Court's stay has been formally lifted and the writ has been answered, Crystallex intends to move this Court for an order authorizing the sale of shares of PDVH. Before a judicial sale of PDVH's shares pursuant to this Court's judgment can proceed, this

---

[4]    Given PDVH's failure to respond, the Court would be well within is power to enter a default judgment against PDVH for the full amount of the judgment in this action.  *See* Del. Superior Court Civil Rule 4(c)(2); D.I. 95 at 7.  Crystallex, however, is not seeking entry of a default at this time against PDVH for the full amount of the judgment.

4

Court will need to determine the appropriate "procedure by which to effectuate the sale of the PDVH shares," D.I. 86, at 3—while accounting for any requirement to obtain a "license to cover the . . . sale" from the Treasury Department's Office of Foreign Asset Control ("OFAC"), Op. at 43-44—and to "issu[e] an order of sale," D.I. 95, at 5. As Crystallex has previously explained, there is clear statutory guidance as to how a sale of the shares should proceed. The Delaware General Corporation Law, as incorporated by Rule 69 of the Federal Rules of Civil Procedure, requires that the shares be sold by the Marshals "to the highest bidder" upon an order of this Court. *See* 8 Del. C. § 324(a). Delaware law provides for notice and advertising, but sets no other formal requirements. *Id.*; *cf. Shipley v. New Castle Cty.*, 975 A.2d 764, 768 (Del. 2009) ("The purpose of the notice of [a sheriff's] sale and the advertising is to apprise the public and potential bidders of the sale and promote bidding."). Here, there is no question that the sale will be well publicized. These proceedings have generated significant attention from the press. *See Venezuela Creditor Cleared to Resume Citgo Seizure Efforts*, THE WALL STREET JOURNAL (Sept. 30, 2019), https://tinyurl.com/y4cjk2rh; *Court may resume Citgo sale preparations*, ARGUS MEDIA (Sept. 30 2019), https://tinyurl.com/y34wtwr6. Further, Crystallex is prepared to supplement the Marshals' statutory efforts to advertise the sale, specifically by identifying and notifying potential bidders. *See Deibler v. Atl. Props. Grp., Inc.*, 652 A.2d 553, 554, 557 (Del. 1995) (finding party to an execution sale was "free to engage in wider or different advertisement of [a] forthcoming [execution] sale," beyond "such notice as the sheriff may disseminate," "if they thought it beneficial" because it is in their "economic interest . . . to encourage wide knowledge of and participation in any execution sale"). Crystallex understands that recent debt offerings of PDVH's subsidiaries have been over-subscribed, and that several strategic buyers that reportedly obtained relevant information in connection with Venezuela's marketing of

RLF1 22186570v.1

CITGO in 2014 remain interested in the PDVH shares.  These prospective buyers already are aware of the impending auction and presumably will participate should they so choose. Crystallex is also prepared, with the assistance of an internationally recognized investment bank, to create a data room and make available any and all information that it can obtain with respect to PDVH, its assets and its obligations, including financial information of its downstream subsidiaries.   Crystallex will include in that data room any additional information that Venezuela, PDVSA or PDVH is willing to provide so that potential bidders will be able to evaluate its financial condition.

Accordingly, Crystallex respectfully requests that the Court lift the stay of these proceedings and direct PDVH to answer the writ within seven days.  Crystallex further requests that the Court set an expedited timetable, at the Count's earliest convenience, for the briefing of Crystallex's motion to sell the shares of PDVH.

## The Position of the Republic and PDVSA

**Background**

In August 2018, this Court ordered service of a writ of attachment on shares of PDV Holding, Inc. ("PDVH") owned by Petróleos de Venezuela, S.A. ("PDVSA") as a means to enforce a $1.2 billion judgment confirming Crystallex's international arbitration award against the Republic of Venezuela (the "Republic").

PDVSA appealed and sought a writ of mandamus.  On August 31, 2018, PDVSA moved to stay this Court's order pending appeal.  D.I. 97.  A number of non-parties, including CITGO Petroleum Corporation, filed motions to intervene, which remain pending.  *E.g.*, D.I. 101.

On November 23, 2018, the Third Circuit stayed proceedings in this Court, and, on November 30, 2018, this Court entered its own stay "pending the Third Circuit's disposition of PDVSA's consolidated appeals and writ of mandamus."  D.I. 132.

The Republic did not appear during this Court's proceedings but, after the appeal was briefed, the Republic moved to intervene and participated in the appeal.  The Third Circuit affirmed this Court's rulings on July 29, 2019.  On September 26, 2019, the Republic and PDVSA filed petitions for rehearing or rehearing en banc.  On October 1, 2019, the Third Circuit requested that Crystallex file a response to those petitions by October 15, 2019.  The day before that request, the merits panel had granted Crystallex's motion to lift the court of appeals' stay of the proceedings in this Court, but made no comment on this Court's own stay.  On October 10, 2019, the Republic entered an appearance in this Court.

**Discussion**

This Court granted a stay to facilitate an orderly appellate review process.  That process is still ongoing, as the Third Circuit has signaled that it is actively considering whether to grant rehearing or rehearing en banc.  Whatever the outcome of the rehearing petitions, and whatever the result if they are granted, it is a virtual certainty that one of the parties will seek review from the Supreme Court.  And, given the significance of the foreign policy and legal issues, there is a substantial likelihood that the Supreme Court will grant such review.  While that review is underway, this Court should not disrupt the status quo, particularly where Crystallex has not obtained the OFAC license necessary to authorize the sale it requests.  Moreover, lifting the stay would undermine a foreign ally, worsen a grave humanitarian crisis, and tread on diplomatic sensitivities.  As the panel decision of the court of appeals acknowledged, circumstances have changed materially since this Court entered its stay.  The Maduro regime has been displaced by

7

the government of Interim President Juan Guaidó, which the United States has officially

recognized as the sole legitimate government of Venezuela.  At a minimum, this Court should

not take further action until it has received briefing from the parties about whether to proceed,

and until it has solicited and considered the views of the U.S. Executive Branch, which is best

positioned to assess the impact of these proceedings on the United States' foreign relations

interests.  Crystallex can articulate no equivalent harm from continuing the stay.

       1.      After this Court stayed these proceedings to await the disposition of PDVSA's

consolidated appeals and writ of mandamus, the Republic of Venezuela underwent a change in

government.  On January 23, 2019, the President of the United States recognized Juan Guaidó as

the interim president of Venezuela.  As a result, Interim President Guaidó is the sole legitimate

leader of Venezuela and must be so recognized in all U.S. court proceedings.  *See, e.g.*, Third

Circuit Opinion ("Op.") at 11 & n.2 (July 29, 2019); *Jiménez v. Palacios*, 2019 WL 3526479, at

*1 (Del. Ch. Aug. 2, 2019).  At the direction of Interim President Guaidó, the Republic—the

named defendant in this matter—appeared for the first time in this litigation by moving to

intervene in the Third Circuit proceedings.  The Third Circuit granted the motion, and the

Republic participated in the appeal as a party.

       This Court's stay currently remains in effect because the Third Circuit has not yet

disposed of the appeals.  The pending rehearing petitions explain that the panel decision—which

had divided with those of other courts of appeals—creates unprecedented foreign-sovereign

exceptions to the standard rules governing equitable veil-piercing and subject-matter jurisdiction;

that these exceptions treat foreign sovereigns worse than private corporations; and that the

decision's consequences would adversely affect U.S. foreign policy.  The Third Circuit has

requested a response from Crystallex, signaling that members of that court have expressed

interest in revisiting the panel decision and that the court has not yet reached a final disposition. Crystallex's response is due on October 15, 2019.  In the ordinary course, the Third Circuit's procedures require a decision whether to grant rehearing within ten days of Crystallex's response.  3d Cir. I.O.P. 9.5.6.

Leaving the stay in place is necessary to facilitate orderly appellate review.  If the full court ultimately grants review and reverses the panel, it is likely that this Court will be required to dismiss this case.  Crystallex would likely seek review of that decision in the U.S. Supreme Court.  Conversely, if the Third Circuit ultimately denies the en banc petitions or grants en banc rehearing and adopts the panel's rulings, the Republic and PDVSA would likely seek review in the Supreme Court.  If the Third Circuit does not vacate the panel decision, the Supreme Court is likely to grant certiorari in light of the exceptionally important legal and foreign policy issues presented, there is a reasonable prospect that the Supreme Court will reverse, and (as explained below) the Republic and PDVSA will suffer irreparable harm in the absence of a stay.  The Republic and PDVSA therefore urge this Court to continue its stay of all further proceedings pending resolution of the petitions for rehearing en banc in the Third Circuit, the anticipated petition for certiorari, and, if the petition is granted, the Supreme Court's disposition of the case.

2.      In the absence of a stay, the Republic and PDVSA will suffer a particularly stark form of irreparable harm: if this Court permits the auction of strategic assets (PDVSA's shares in PDVH) to proceed, no subsequent review by the en banc Third Circuit or the Supreme Court will be able to unwind the sale or undo the damage.  Moreover, permitting an auction now, when the Republic and PDVSA are still seeking further review of the important foreign sovereign immunity and veil-piercing issues presented in this case, would destroy the very immunity they seek to assert.  *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 865 (2008); *Fed. Ins. Co.*

*v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1281-82 (3d Cir. 1993) (explaining that the "legal and practical value" of sovereign immunity would be "destroy[ed]" if a case were allowed to proceed in the district court pending a foreign state's appeal from the denial of its immunity).

Allowing this case to proceed would also undermine the Republic's sovereign efforts to resolve legacy claims against the Venezuelan government and to address the unprecedented humanitarian crisis within Venezuela.  Venezuela currently faces a catastrophic economic collapse.  Notwithstanding the Maduro regime's continued efforts to usurp the operations of the Venezuelan government, Interim President Guaidó is taking significant steps within his control to further the interests of the Venezuelan people and to address legacy claims, including protecting and preserving the Venezuelan oil industry for the benefit of the Venezuelan people. A judicial auction of the shares of PDVH would severely disrupt those sovereign efforts.

Moving forward at this time could also impede the foreign-relations interests of the United States, which has continued to impose sanctions for the purposes of (1) "support[ing] Interim President Juan Guaidó, the National Assembly, and the Venezuelan people's efforts to restore their democracy," and (2) ensuring that the Republic's assets are preserved for the "people of Venezuela."  Dep't of Treasury, *Treasury Sanctions Venezuela's State-Owned Oil Company Petroleos de Venezuela, S.A.* (Jan. 28, 2019), https://home.treasury.gov/news/press-releases/sm594.  Proceeding in the face of such sanctions would undermine important foreign policy determinations of the Executive Branch.

The United States has "a significant interest in the orderly and cooperative resolution of sovereign debt defaults."[5]  Permitting these proceedings to move forward would impede that

---

5  *See* Brief of the United States, *Aurelius Capital Master, Ltd., et al. v. Republic of Argentina*, 2016 WL 1267524, at *4 (2d Cir Mar. 23, 2016).  In that case, the United States expressed a "significant policy interest in supporting Argentina's new administration's efforts to reverse

RLF1 22186570v.1

interest.  Encouraged by the pendency of this case, a growing number of claimants are bringing piecemeal litigation against the Republic and PDVSA, attempting to seize their limited external assets or, at a minimum, outpace other similarly situated claimants.[6]  The success of these claimants would effectively result in either the seizure of strategic assets or a division of creditors into senior and subordinated classes.  Both outcomes would be contrary to U.S. policy.  The former would undermine the Interim Government's ability to put the Republic on the path to economic recovery, and the latter would add complexity to the debt structures of the Republic and PDVSA, making it significantly more difficult to establish an orderly and consensual restructuring process.  Leaving the stay in place would therefore further U.S. policy by discouraging efforts by aggressive claimants to disturb the equal ranking of similarly situated creditors through litigation, collection actions, attachments, or other means.

3.      A continued stay would cause no equivalent harm to Crystallex, which is in bankruptcy in Canada and has effectively assigned nearly all of its interest in this litigation to a litigation funder called Tenor Capital Management Company.  Tenor Capital in turn has assigned its interest in this litigation to another (apparently related) company called Luxembourg Investment Company 31 S.a.r. L., which is owned by Tenor KRY (Barbados) SRL.  Crystallex therefore will not be harmed if the stay is left in place and execution is delayed—and certainly cannot demonstrate the type of injury that would outweigh the drastic and irreversible harm that

---

prior economic policies, to normalize Argentina's relations with its creditors, and to strengthen the Argentine economy." *Id.*

[6]  For example, on September 27, 2019, certain bondholders filed a complaint against Venezuela and noted that the "ongoing economic and political instability in Venezuela . . . has not prevented other creditors from pursuing remedies" and that "[t]hese regrettable circumstances . . . constrain [them] to bring the present action to preserve their rights."  *ACL1 Investments Ltd., et al. v. Bolivarian Republic of Venezuela*, No. 19-cv-09014, ECF No. 1 ¶ 31 (S.D.N.Y. Sept. 27, 2019).

RLF1 22186570v.1

would ensue if the stay were lifted.  Notably, numerous courts have entered or are considering entering stays of litigation against the Republic and PDVSA.  *See, e.g., Dresser-Rand Co.* v. *Petróleos de Venezuela, S.A., et al.,* No. 19-cv-2689, ECF No. 32 (S.D.N.Y. July 3, 2019) (granting stay); *Red Tree Investments, LLC* v. *Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A.,* No. 19-cv-2519, ECF No. 33 (S.D.N.Y. May 6, 2019) (same); *Comparelli* v. *Republica Bolivariana de Venezuela,* No. 14-cv-24414, ECF No. 168 (S.D. Fla. May 9, 2019) (same); *Helmerich & Payne Int'l Drilling Co.* v. *Bolivarian Republic of Venezuela, S.A.,* No. 11-CV-01735, ECF No. 133 (D.D.C. Feb. 15, 2019) (same); *Rusoro Mining Ltd.* v. *Bolivarian Republic of Venezuela,* No. 18-7044, Dkt. No. 1773506 (D.C. Cir. Feb. 14, 2019) (same); *see also Casa Express Corp. v. Bolivarian Republic of Venezuela*, No. 1:18-cv-11940-AT, ECF No. 46 (S.D.N.Y. July 8, 2019) (setting a briefing schedule to consider the Republic's anticipated motion for a stay).[7]

Nor can Crystallex reasonably object to continuing the stay when it has not taken the steps necessary to enable execution.  As the Third Circuit and Crystallex itself have acknowledged, execution against PDVSA's assets cannot proceed unless and until Crystallex obtains a license from the Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury.  Op. at 44 (noting that "short- or long-term U.S. foreign policy interests may be

---

[7]  In addition, U.S. courts in other sovereign debt restructurings have also stayed proceedings pending a negotiated outcome between a sovereign and its creditors.  *See, e.g., Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 109 F.3d 850, 585-56 (2d Cir. 1997) (noting that the circumstances of sovereign restructurings may justify "a stay of the proceedings or, in the alternative, a stay of the execution of . . . judgment[s] because either stay might allow the completion of . . . negotiations with its creditors without unduly threatening the ultimate enforceability of the debt"); *Pravin Banker Associates, Ltd*. v. Banco *Popular del Peru*, 165 B.R. 379, 387 (S.D.N.Y. 1994) (staying litigation against Banco Popular, a state-owned Peruvian bank, and noting that "Congress has determined that it is in the United States policy interest to require a debtor country to engage in the IMF's debt resolution procedure and to negotiate debt terms with creditors in accordance with a country's ability to pay").

RLF1 22186570v.1

affected by attachment and execution of PDVSA's assets" and that "Treasury sanctions provide an explicit mechanism to account for these," and observing that it is unclear "[w]hether the Treasury Department permits execution in this case").  Specifically, Executive Order 13835 prohibits "[a]ll transactions related to . . . and other dealings in . . . the sale [or] transfer . . . of any equity interest in any entity in which the Government of Venezuela has a 50 percent or greater ownership interest" unless such transactions are authorized by OFAC.  E.O.13835, §1(a). OFAC has explained that under this Executive Order, a license should be obtained prior to attachment and execution.  *See* OFAC, FAQ 596, https://www.treasury.gov/resource-center/faqs/sanctions/pages/faq_other.aspx.[8]  To the Republic's knowledge, Crystallex has not received or even applied for such a license.  Continuation of the stay thus prevents a significant waste of judicial resources in furtherance of an unlawful sale.

4.     The Republic's change in leadership presents critical changed circumstances that the Court will have to consider if it determines to move forward.  This Court invited the Republic to "appear and seek to supplement the factual record already developed in this litigation and . . . attempt to . . . argue that additional evidence materially alters the Court's findings, and thereby seek to quash the writ."  D.I. 83 at 74.  Before granting equitable relief based on the conduct of Venezuelan actors whom the United States considers illegitimate, the Court must "recognize the need for special sensitivity" and act with caution, lest its pronouncements "conflict with the Executive's and embarrass this country's conduct of its foreign policy."  *Eain v. Wilkes*, 641 F.2d 504, 515 (7th Cir. 1981); *see World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1165–66 (D.C. Cir. 2002).

---

[8] Although this Court has concluded that Executive Order 13835, § 1(a)(iii) and associated guidance did not prohibit issuing the writ of attachment, the Republic respectfully disagrees, and believes that the writ of attachment should be quashed on this basis.  But in all events, it is clear that Crystallex must obtain a license prior to execution.

5.      At a minimum, if the Court is considering lifting the stay, it should first permit the
Republic and PDVSA the opportunity, before further proceedings occur, to file a motion to
quash or a Rule 60(b) motion to alter this Court's judgment.  At oral argument before the Third
Circuit, some of the panel members suggested that the Republic's legal arguments could be
addressed in just that way.  Oral Arg. Tr. at 201:2–11 (Judge Greenaway:  "Why isn't the way to
deal with [the Republic's arguments] you making a rule 60 when you go back [on remand]?"
Judge Ambro: "Hear hear.").  If the Court decides not to continue the stay, it should set a
briefing schedule for a motion to quash or a Rule 60(b) motion, with the Republic's opening
brief due 45 days from the Court's scheduling order to allow sufficient time for the Republic to
collect the necessary materials and prepare the submission.  It should also invite the views of the
United States so that the Executive Branch has an opportunity to inform this Court of the effect
that the relief Crystallex seeks would have on the United States' foreign-relations interests.  That
course is particularly appropriate in light of the United States' recognition of the new
government in Venezuela.

* * *

In sum, the Court should not move forward with execution until the appellate process has
fully concluded.  To do otherwise would require the Court to consider and decide numerous
complex issues, including, among other things, the effect of changed circumstances; Crystallex's
lack of an OFAC license; the foreign policy implications of the attachment, execution, and sale
of PDVH shares; and how to structure a sale procedure to maximize the value of the PDVH
shares.  The Court would also have to consider the motions to intervene by CITGO and others.
All of those matters would be complicated, time-consuming, and expensive.  And given the
uncertainty of the remaining appellate process, addressing them may well prove unnecessary.

14

## CITGO's Position

CITGO Petroleum Corporation moved to intervene in this matter on August 31, 2018. D.I. 101.  Its motion is fully briefed and remains pending.  CITGO respectfully requests that the Court grant that motion so that CITGO may fully participate in the proceedings going forward.  As described in CITGO's motion, it has an interest in this matter, as the sale of the PDVH Shares will impact not just PDVH, but its indirect subsidiary CITGO Petroleum Corporation—an American company with thousands of American employees.[9]  Assuming the Court grants CITGO's motion to intervene, CITGO presents the following position on the litigation:

CITGO agrees with the positions of the Republic and PDVSA regarding the propriety of (1) a continuation of the existing stay pending final disposition by the Third Circuit and any subsequent petition for a writ of certiorari, along with Crystallex's compliance with its OFAC obligations and (2) consideration of any Rule 60(b) motions before execution proceeds.

Should the Court move forward with execution, CITGO agrees with Crystallex that briefing regarding a sale process should occur first.  A process must be put in place that will maximize the value of the PDVH shares, minimize harm caused to PDVSA and/or CITGO, and ensure that any execution abides by Delaware law's requirement that only "[s]o many of the shares as shall be sufficient to satisfy [the Republic's $1.2 billion] debt" be sold.  8 Del. C. § 324(a).  A sale of privately-held stock of the magnitude at issue in this case is unprecedented, and the officials that would be tasked with carrying it out under Crystallex's approach have no experience in handling such a transaction.  Indeed, as noted in its filings in support of its motion

---

[9] CITGO has refinanced its credit agreements since filing its motion to intervene.  Now, CITGO's loans will become immediately due and payable if a majority of PDVH is sold and certain ratings agencies do not reaffirm CITGO's debt rating within 90 days.

RLF1 22186570v.1

to intervene, CITGO's counsel has spoken with representatives of the U.S. Marshal's Office and the New Castle County Sheriff's Office, both of which expressed a lack of familiarity or experience with large stock sales under Section 324. Because CITGO could be significantly harmed by a perfunctory sale of the PDVH Shares, it reserves the right to participate in any proceedings to seek a reasonable sale process that will protect its interests.

### PDVH's Position

PDVH writes to address Crystallex's discussion of the verified answer PDVH is obligated to submit if execution proceeds. This Court's writ of attachment directed PDVH to file—within 20 days of being served with the writ—a "verified answer" identifying "shares of stock and other assets or rights incident to that stock ownership belonging to or owing to PDVSA, as alter ego of Defendant and Judgment Debtor Venezuela, you currently possess." D.I. 95 at 7. PDVH was served with the writ on August 24, 2018, meaning its deadline under the Court's order was September 13, 2018. On August 31, 2018, the Court received myriad motions it had invited from non-parties advising it on whether and how to proceed toward execution on the PDVH Shares. On September 12, 2018—before the September 13 deadline—PDVH moved to extend its obligation to file a verified answer until the Court addressed the August 31 motions. D.I. 109. Crystallex filed an opposition to PDVH's motion on September 19, 2019, D.I. 115, and PDVH's motion remains pending. Thus, Crystallex's suggestion that PDVH simply ignored its obligation is erroneous and belied by the record. Moreover, Crystallex's statement that "PDVH's refusal to answer the writ is little more than a transparent effort to postpone enforcement of this Court's order" is false given that this Court's order cannot be enforced unless and until Crystallex obtains an OFAC license (see statement of PDVSA and the Republic). In short, PDVH's verified answer is unnecessary at this

16

juncture, and PDVH therefore renews its motion to extend its obligation until such time as Crystallex obtains a license from OFAC and the Court has determined whether or how to proceed with execution.

### Rosneft's Position

Proposed Intervenor Rosneft Trading, S.A. ("RTSA") respectfully requests that the Court grant its Motion to Intervene before holding any further proceedings in this matter. RTSA's Motion to Intervene is fully briefed and ripe for decision, and the Third Circuit's opinion in Crystallex International Corp. v. Bolivarian Republic of Venezuela, No. 18-2797 (3d Cir. July 29, 2019), has no effect on the merits of RTSA's motion. As explained in RTSA's briefing, RTSA is entitled to intervene as of right in this case due to its first-priority perfected security interest in the core asset of PDVH, and that interest equally supports a favorable exercise of the Court's considerable discretion to grant RTSA permissive intervention. The Court should not permit a public sale of the PDVH shares without first authorizing RTSA, a key stakeholder, to participate in any associated valuation and sale proceedings. RTSA further notes that both the Republic of Venezuela and PDVSA have moved the Third Circuit for panel or en banc rehearing, and while RTSA takes no position on those motions, the sale of the PDVH shares cannot be undone if either this Court's decision or the Third Circuit's panel decision is later reversed.

RLF1 22186570v.1

|                                   | /s/ Travis S. Hunter                        |
|-----------------------------------|---------------------------------------------|

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
dicamillo@rlf.com
moyer@rlf.com
hunter@rlf.com

*Attorneys for Crystallex International Corp.*

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

|                                   | /s/ Samuel T. Hirzel, II                    |
|-----------------------------------|---------------------------------------------|

OF COUNSEL:

Joseph D. Pizzurro
Julia B. Mosse
Kevin A. Meehan
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
jmosse@curtis.com
kmeehan@curtis.com

Samuel T. Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
SHirzel@hegh.law
*Attorney for Intervenor Petróleos de Venezuela, S.A.*

/s/ A. Thompson Bayliss
A. Thompson Bayliss (#4379)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807
(302) 778-1000
bayliss@abramsbayliss.com

*Attorneys for Defendant Bolivarian Republic of Venezuela*

18

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Nathan P. Eimer
Lisa S. Meyer
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com

/s/ *Kenneth J. Nachbar*
Kenneth J. Nachbar (#2067)
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@mnat.com

*Attorneys for PDV Holding, Inc. and CITGO Petroleum Corporation*

OF COUNSEL:

Stephen Mark Dollar (*pro hac vice*)
Norton Rose Fulbright
1301 Avenue of the Americas
New York, NY 10019-6022
(212) 318-3211
steve.dollar@nortonrosefulbright.com

Mark Thomas Oakes (*pro hac vice*)
Norton Rose Fulbright
98 San Jacinto Boulevard
Suite 1100, Austin, TX 78701-4255
(512) 536-5221
mark.oakes@nortonrosefulbright.com

/s/ *Amy Evans*
Craig Martin (DE Bar No. 5032)
Amy Evans (DE Bar No. 3829)
1201 North Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5655
Facsimile: (302) 778-7834
craig.martin@us.dlapiper.com
amy.evans@us.dlapiper.com

*Attorneys for Defendant Rosneft Trading, S.A.*