ABRAMS & BAYLISS LLP
20 MONTCHANIN ROAD, SUITE 200
WILMINGTON, DE 19807
MAIN: 302-778-1000
FAX: 302-778-1001

A. THOMPSON BAYLISS

DIRECT DIAL NUMBER
302-778-1033
BAYLISS@ABRAMSBAYLISS.COM

November 22, 2019

**VIA ELECTRONIC FILING**

The Honorable Leonard P. Stark
United States District Court
District of Delaware
844 North King Street
Wilmington, DE 19801-3555

      Re:   *Crystallex International Corp. v. Bolivarian Republic of Venezuela*,
            C.A. No. 17-151-LPS

Dear Chief Judge Stark:

      The Bolivarian Republic of Venezuela and Petróleos de Venezuela, S.A. ("PDVSA") respectfully submit this letter to notify the Court of two developments since this Court's status conference held on November 13, 2019. These developments provide further reason that the Court should maintain its stay until the later of the conclusion of all proceedings in the Supreme Court of the United States, or issuance to Crystallex of a specific license from the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") authorizing the sale of the PDV Holding, Inc. ("PDVH") shares at issue in this case.

      *First*, OFAC today published a final rule that amends 31 C.F.R. Part 591—the set of regulations governing sanctions on the Republic's and PDVSA's property, including the shares of PDVH at issue in this case. *See* Dep't of Treasury, Off. of Foreign Assets Control, *Venezuela Sanctions Regulations*, 84 Fed. Reg. 64,415 (Nov. 22, 2019). The final rule is attached to this letter. The amendments make clear that any alteration of property rights in the PDVH shares—including attachment, execution, or sale—is categorically prohibited unless and until *Crystallex* (not, as Crystallex suggested at the status conference, a "winning bidder") obtains a specific license authorizing it to proceed.

      The new OFAC amendments make two relevant changes to the governing regulations. First, they clarify that the OFAC regulations cover "all transactions prohibited pursuant to Executive Order 13692 of March 8, 2015, *or any further Executive orders issued pursuant to the national emergency declared in Executive Order 13692*." 31 C.F.R. § 591.201 (Nov. 22, 2019) (emphasis added). There are two recent Executive Orders that apply to the PDVH shares—Executive Orders 13850 and 13884—that "relat[e] to the national emergency declared in Executive Order 13692." *Id.*; *see* 83 Fed. Reg. 55,243 (Nov. 1, 2018); 84 Fed. Reg. 38,843 (Aug. 5, 2019). These Executive Orders, which are more comprehensive and

categorical than those in place at the time of this Court's August 2018 decision, together provide that all property controlled by the Republic and PDVSA, including the PDVH shares, is "blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in." Exec. Order No. 13884, § 1(a); *see* 84 Fed. Reg. 3282 (February 11, 2019).

The amendments also add "a new interpretive provision at 31 C.F.R. § 591.407 regarding … enforcement of liens, judgments, arbitral awards, decrees, or other orders through execution, garnishment, or other judicial process." 84 Fed. Reg. at 64,416. That new provision provides:

> **§ 591.407 Settlement agreements and enforcement of certain orders through judicial process.**
>
> Notwithstanding the existence of any general license issued under this part, or issued under any Executive order issued pursuant to the national emergency declared in E.O. 13692, the entry into a settlement agreement or the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 591.201, as referenced in § 591.506(c), is prohibited unless authorized pursuant to a specific license issued by OFAC pursuant to this part.

The cross-referenced provision, § 591.506(c)—in tandem with the recent Executive Orders—prohibits attachment of or execution on the PDVH shares. Section 591.506(c) provides in relevant part that "the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 591.201, is prohibited unless licensed pursuant to this part." 31 C.F.R. § 591.506(c). And the new provision, § 591.407, further clarifies that a "general license" issued by OFAC—for example, the general license authorizing U.S. government officials to engage in "transactions … for the conduct of the official business of the United States Government"[1]—cannot authorize any of the actions prohibited by § 591.506(c). Only a "specific license issued by OFAC" will suffice.

The Venezuela Sanctions Regulations foreclose, as a matter of law, the course of action that Crystallex proposed at the status conference. Crystallex asked the Court to order the completion of a "sales process" for the PDVH shares, including an auction and the selection of a "winning bidder," before Crystallex or the winning bidder would "go to OFAC and ask for permission to execute and complete the sale." Tr. 23:4–25:7. The process that Crystallex contemplated is effectively a conditional sale—*i.e.*, a judicial auction that would encumber the PDVH shares subject only to OFAC approval. *See id.* Such a procedure qualifies as "enforcement" of a "judgment" through "execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property

---

[1] *See* OFAC Gen. License 14 (Jan. 28, 2019), https://www.treasury.gov/resource-center/sanctions/Programs/Documents/venezuela_gl14.pdf

blocked" by the President. 31 C.F.R. § 591.506(c). Without authorization from OFAC in a *specific* license—which Crystallex has not even *applied for*—any sale process is forbidden. *Id.* § 591.407. Indeed, in the context of other virtually identical blocking regimes, OFAC has issued general licenses permitting the negotiation of such conditional sales—contingent on obtaining an OFAC license—indicating that OFAC believes such a license is necessary.[2] But OFAC has not issued such a license here.

Even if proceeding in the absence of a license were lawful—and the new regulations confirm that it is not—the resulting uncertainties will unfairly depress the value of the PDVH shares at any judicially directed auction lacking clear OFAC pre-approval. Such devaluation in an auction for corporate control would be contrary to Delaware law and would risk harming not only PDVH, but the millions of people in Venezuela facing a dire humanitarian crisis. It would also be contrary to U.S. foreign policy for the reasons discussed at the hearing. Indeed, even Crystallex has represented to this Court that it is dedicated to maximizing the value of the PDVH shares. This Court can avoid causing irreparable harm by maintaining its stay.

At minimum, taking "acts" for "the purpose" of preparing for a sale would create a significant legal risk that any party involved in the sale—including bidders, investment banks, and experts—could be engaged in a violation of the sanctions, thus exposing them to civil and criminal penalties. *See* 31 C.F.R. Part 501 Appendix A, §§ II.E and F; 50 U.S.C. § 1705(c). Serious buyers and industry professionals are likely to be deterred from participating in view of that risk. Indeed, a bona fide sale process will almost certainly require the participation of blocked persons, such as PDVSA, and OFAC in guidance regarding the sanctions regime has explained that "sanctions generally prohibit transactions involving, directly or indirectly, a blocked person, absent authorization from OFAC, even if the blocked person is acting on behalf of a non-blocked entity. Therefore, U.S. persons should be careful when conducting business with non-blocked entities in which blocked individuals are involved; U.S. persons may not, for example, enter into contracts that are signed by a blocked individual."[3]

In the face of the new regulations and OFAC's guidance, proceeding with an unlicensed sale will cause irreparable harm to the Republic and PDVSA. Proceeding with a sale process before Crystallex obtains a license would not maximize value; a sale clouded in uncertainty about its legality under U.S. sanctions law will attract fewer buyers, and they will likely demand steep discounts to reflect not only the legal risk but the *political* risk that they could be forced to wait months, or even years, for a license. (For example, if anyone applied for a license to buy Cuban assets in the 1960s, they might still be waiting today for OFAC approval.)

---

[2] Iran General License I (issued March, 2016; revoked June 27, 2018) (permitting contingent sales of commercial passenger aircraft and related parts and services to Iran), https://www.treasury.gov/resource-center/sanctions/Programs/Documents/iran_gli.pdf; 31 CFR § 515.534(a) (permitting contingent contracts for transactions prohibited by OFAC's Cuban Assets Control Regulations).

[3] *See* OFAC, FAQ 400 (Aug. 13, 2014), https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx.

The Honorable Leonard P. Stark
November 22, 2019
Page 4

Crystallex, on the other hand, would suffer no irreparable harm by extension of the stay, given that the new OFAC amendments equally prohibit all creditors from moving forward in any unlicensed attempts to attach or execute on Venezuela's or PDVSA's assets through any judgment enforcement process. If Crystallex believes it will be harmed, it should seek a license from OFAC, as required by law.[4]

*Second*, the Third Circuit yesterday denied the petitions for rehearing filed by the Republic and PDVSA. *See* Order Sur Pet'n for Reh'g, No. 18-2797 (3d Cir. Nov. 21, 2019). Unless the Third Circuit's mandate is stayed, the mandate will issue on November 29, 2019. Fed. R. App. 41(b). As Donald B. Verrilli, Jr., Supreme Court counsel for the Republic, explained in this Court's status conference, the Republic and PDVSA intend to seek review of the Third Circuit's decision in the Supreme Court. And as explained in the Joint Status Report filed October 11, 2019, "the Supreme Court is likely to grant certiorari in light of the exceptionally important legal and foreign policy issues presented, there is a reasonable prospect that the Supreme Court will reverse, and … the Republic and PDVSA will suffer irreparable harm in the absence of a stay." D.I. 139 at 9. This Court should therefore maintain its stay pending "the anticipated petition for certiorari, and, if the petition is granted, the Supreme Court's disposition of the case." *Id.* To do otherwise would threaten to moot the appeal before the Supreme Court could consider it.

\*   \*   \*

In light of these developments, this Court should maintain its stay until the later of (1) the conclusion of any proceedings in the Supreme Court of the United States, or (2) the issuance of a specific OFAC license to Crystallex, as 31 C.F.R. §§ 591.407 and 591.506(c) make clear is required. If the Court has any doubt about the Government's views or the effect of the current sanctions regime, or other foreign policy implications of the proceedings it now faces, it should ask the Executive Branch to submit its views under 28 U.S.C. § 517.

Respectfully Submitted,

*/s/ A. Thompson Bayliss*

A. Thompson Bayliss (#4379)
*Counsel for the Bolivarian Republic of Venezuela*

---

[4] Crystallex's refusal to seek a license based on its purported belief that OFAC will not grant one until it knows the identity of the buyer of the PDVH shares is untenable. Past practice confirms that OFAC does not require the identity of the buyer as a precondition to issuing a license. *See, e.g.*, General License 9F, https://www.treasury.gov/resource-center/sanctions/Programs/Documents/venezuela_gl9f.pdf (allowing for the divestment of Government of Venezuela debt to non-U.S. persons); General License 10A, https://www.treasury.gov/resource-center/sanctions/Programs/Documents/venezuela_gl10a.pdf (authorizing certain purchases from PDVSA).

The Honorable Leonard P. Stark
November 22, 2019
Page 5

                                                    */s/ Samuel T. Hirzel*
                                                    Samuel T. Hirzel (#4415)
                                                    *Counsel for Petróleos de Venezuela, S.A.*

ATB/scc
Attachment
  cc:     All Counsel of Record (via CM/ECF)