

Travis S. Hunter
302-651-7564
hunter@rlf.com

**VIA ELECTRONIC FILING**

The Honorable Leonard P. Stark
U.S. District Court for the
 District of Delaware
844 North King Street
Wilmington, Delaware 19801

>    Re:   *Crystallex International Corp. v. Bolivarian Republic of Venezuela*,
>          No. 17-151-LPS

Dear Chief Judge Stark:

      Crystallex International Corporation ("Crystallex") respectfully submits this letter in response to the letter of the Bolivarian Republic of Venezuela ("Venezuela") and Petróleos de Venezuela, S.A. ("PDVSA") filed on November 22, 2019 (D.I. 146). Neither the promulgation of new regulations by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") nor the Third Circuit's denial of Venezuela and PDVSA's petitions for panel rehearing or rehearing *en banc* provide any basis for this Court to maintain its existing stay. On the contrary, both developments confirm that this Court should lift its stay so that Crystallex can file its motion to conduct a judicial sale of the attached PDVH shares without further delay.

      The Third Circuit's denial of Venezuela and PDVSA's rehearing petitions is the latest confirmation (if confirmation were needed) that Venezuela and PDVSA's substantive legal positions lack any merit whatsoever. No judge voted for panel rehearing, and no active judge on the Third Circuit registered a vote in favor of rehearing *en banc*. *See* Order Sur Pet'n for Reh'g, Nos. 18-2797, 18-3124 (3d Cir. Nov. 21, 2019). Indeed, over the long course of this litigation and the underlying arbitration, *not one* of the eighteen federal judges and three arbitrators who have considered aspects of this proceeding—including Venezuela's own hand-selected arbitrator—has agreed with Venezuela's and PDVSA's merits arguments. It is therefore erroneous for Venezuela to assert that the Supreme Court is likely to grant certiorari in this case, and, if it does, to reverse the uniform judgment of *every* adjudicator to date.

      The Third Circuit, recognizing the unfairness of holding Crystallex in limbo while Venezuela exhausts its few remaining options for discretionary appellate review, lifted its own stay of enforcement precisely so that the parties could return to this Court and resume the sale process immediately. Lifting this Court's own stay, requiring PDVH to answer the writ, and setting a briefing schedule for a motion to sell the PDVH shares would not "threaten to moot the appeal before the Supreme Court could consider it." D.I. 146 at 4. It is exceedingly unlikely that any sale of the PDVH shares could be consummated before the Supreme Court considers Venezuela's certiorari petition, and Venezuela is free to file its certiorari petition at any time before the 90-day deadline—and may ask for expedited consideration if review is granted. The

The Honorable Leonard P. Stark
November 25, 2019
Page 2

Third Circuit was not persuaded that it should maintain its stay because of the possibility of Supreme Court review. The argument has no more force before this Court.

Lacking any likelihood of success on the merits, Venezuela resorts to mischaracterizing recent OFAC regulations to create the misimpression that they impose a new licensing requirement on Crystallex. The regulations do no such thing.

As a preliminary matter, Crystallex has long acknowledged that before ownership of the PDVH shares can be transferred, the purchaser or purchasers likely will need a specific license from OFAC. *See, e.g.*, D.I. 70 at 10 ("OFAC will likely require the purchaser of PDVH shares at any execution sale to procure a license before the sale can be consummated."); Appellee Br. 71-72 n.8, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, Nos. 18-2797, 18-3124 (3d Cir. Jan. 23, 2019). As this Court has already recognized, that requirement for a specific license was previously established by Executive Order and related OFAC guidance. *See* D.I. 83 at 65-67. The new OFAC guidance does nothing more than publish that requirement as regulations in the Code of Federal Regulations. Venezuela's suggestion that these regulations somehow create new licensing requirements is wrong.

Despite acknowledging that the OFAC regulations require a "specific license" from OFAC before the sale of PDVH shares can be consummated, *see* D.I. 146 at 1, Venezuela evidently does not understand—or seeks to elide—the crucial distinction between a *specific* license and a *general* license. OFAC defines a "specific license" as "a written document issued by OFAC to a particular person or entity, authorizing a particular transaction in response to a written license application."[1] OFAC's regulations concerning specific licenses further provide that in order to apply for such a license, "[t]he applicant . . . must fully disclose the names of *all parties who are concerned with or interested in the proposed transaction*." 31 C.F.R. § 501.801(b)(2)(ii) (emphasis added). Indeed, on the OFAC portal through which applications for licenses are submitted, OFAC requires applicants for specific licenses to clearly identify "all parties involved, directly or tangentially, in the transaction(s) at issue," and "all transactions, and associated money flows, at issue," among other information.[2] To apply for a specific license, "all parties" to the transaction must first be identified. That can happen *only* if the sale process is allowed to proceed sufficiently to qualify and rank bidders so that the winning bidders can be presented to the U.S. Treasury and proceed through the specific-license process in the order that would produce the highest value from the sale. Nothing in the regulations requires that *Crystallex* apply for the specific license covering the transaction, much less that Crystallex do so before all parties have been identified.

---

[1] OFAC, Frequently Asked Questions No. 74, https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx (last visited Nov. 25, 2019).
[2] https://licensing.ofac.treas.gov (first screen after accepting Terms of Agreement for transactional applications) (last visited Nov. 25, 2019).

The Honorable Leonard P. Stark
November 25, 2019
Page 3

A general license, in contrast, "authorizes a particular *type* of transaction for a *class* of persons."[3] Each of the licensing examples that Venezuela cites in its letter involves only a general license, not a specific license. *See* D.I. 146 at 3 & n.2, 4 n.4. That OFAC would require persons operating under a general license to obtain a specific license before execution in no way implies that a specific license could be obtained before all parties to the proposed transaction are known.

The new OFAC regulations therefore confirm that this Court can allow the sale process to continue precisely so that OFAC can have the information it needs to consider the qualifications of specific bidders and applications for a specific license. Nothing in OFAC regulations prohibits this Court from conducting a sale process to identify and rank bidders, provided the process does not actually "transfer or otherwise alter or affect property or interests in property blocked" before OFAC has granted a specific license. Such pre-sale activities are broadly covered by the newly promulgated regulation exempting the "official business of the United States Government" from the sanctions. 31 C.F.R. § 591.509 & n.1.[4] There will be no "transfer" or other impact on the PDVH shares until after an auction is conducted by the U.S. Marshals to determine the successful bidders and the price, and then those bidders apply to obtain a specific license.

For the same reasons, no legal "uncertainty" would cloud a sale process aimed at identifying the information needed for a specific license from OFAC. D.I. 146 at 3. Any sale of PDVH shares by the U.S. Marshals could not be finalized until the buyer obtains a specific license from OFAC, so it is simply incorrect to suggest that the buyer would bear any significant economic risk from the sanctions regime that might materially depress share value. In any event, all that is required for Venezuela to receive fair value in a judicial sale is that the sale is carried out in accordance with Delaware law. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545 (1994) ("We deem, as the law has always deemed, that a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with.").[5]

Crystallex has been forced to pursue Venezuela through the courts for years, at great expense, to collect on its fully-affirmed D.C. court judgment. The strong policy of voluntary

---

[3] OFAC, Frequently Asked Questions No. 74, https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx (last visited Nov. 25, 2019) (emphases added).

[4] On November 22, 2019, OFAC revoked the prior general license exempting activities of the federal government and simultaneously promulgated the identical exemption as a regulation. *See* https://www.treasury.gov/resource-center/sanctions/Programs/Documents/venezuela_gl14.pdf (last visited Nov. 25, 2019).

[5] Venezuela's speculation that "a bona fide sale process" would "require the participation of blocked persons," D.I. 146 at 3, is irrelevant because it assumes this Court will order a brokered sale process similar to that requested by CITGO. Such a process, however, would be contrary to Delaware law. *See* D.I. 106; D.I. 139 at 4-5.

compliance with U.S. court judgments, coupled with the need for effective mechanisms to address noncompliance, militates in favor of allowing the sale process to proceed. As the Third Circuit held, "[a]ny outcome where Crystallex is not paid means that Venezuela has avoided its obligations." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 149 (3d Cir. 2019).

Finally, the Third Circuit rejected Venezuela's repeated pleas to call for the views of the United States, and this Court should do so as well. As the Third Circuit correctly recognized, the federal government has an "explicit mechanism" to account for "short- or long-term U.S. foreign policy interests": the OFAC licensing process. *Crystallex*, 932 F.3d at 151. Presumably, that is why the United States chose not to appear at this Court's recent status conference, despite the Court's order that "[a]ll parties, all proposed parties, and all potential intervenors are expected to attend." D.I. 141. Similarly, the Court can issue an order directing any interested parties who wish to oppose Crystallex's sale motion—including the United States—to intervene and file an opposition to that motion within the ordinary briefing schedule. The United States is well aware of the proceedings in this case and can seek to intervene if and when it sees fit.

\*   \*   \*

The Third Circuit has now fully affirmed this Court's attachment order and rehearing has been denied without dissent. Crystallex prevailed in full. Accordingly, Crystallex respectfully requests that this Court lift its stay of enforcement, direct PDVH to answer the writ of attachment forthwith, and set a schedule for briefing Crystallex's motion to conduct a judicial sale. In the alternative, if the stay is not lifted, Crystallex respectfully renews its request that Venezuela be required to post a bond for the full amount of the unpaid judgment, as required under Delaware law.

Respectfully submitted,

*/s/ Travis S. Hunter*

Travis S. Hunter (#5350)

cc: All Counsel of Record (by email)