

Travis S. Hunter
302-651-7564
hunter@rlf.com

December 11, 2019

**VIA ELECTRONIC FILING**

The Honorable Leonard P. Stark
U.S. District Court for the
 District of Delaware
844 North King Street
Wilmington, Delaware 19801

      Re:  *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, No. 17-151-LPS

Dear Chief Judge Stark:

I write on behalf of Crystallex International Corporation ("Crystallex") in response to the Court's December 10, 2019 order. D.I. 151.

This Court's order granting Crystallex a writ of attachment on the shares of PDVH has been affirmed and the Third Circuit's stay of proceedings has been lifted. Since the parties last appeared before the Court, Venezuela's and PDVSA's petitions for rehearing have been denied, the Third Circuit's mandate has issued, and this Court's stay of further proceedings pending "the Third Circuit's disposition of the petition for writs of mandamus and the consolidated appeals" has expired by its own terms. D.I. 132; D.I. 147. The question now before the Court is how it should proceed in light of U.S. government sanctions and, more specifically, the guidance provided in FAQ 808 and 809, which were issued by the Office of Foreign Asset Control ("OFAC") on December 9, 2019. Put simply, there is no reason for a new stay of further proceedings in this Court. Regardless of whether a license is now required to conduct an auction of the shares of PDVH, this Court can, and should, continue to resolve the many preliminary issues before it so as to allow Crystallex to prepare a fulsome and accurate application to OFAC.

Contrary to Venezuela's and PDVSA's contentions in their December 9, 2019 letter, the issuance of FAQs 808 and 809 do not justify a stay. OFAC's recent guidance makes it clear that "[a] specific license from OFAC is not ordinarily required to initiate or continue U.S. legal proceedings against a person designated or blocked pursuant to OFAC's Venezuela sanctions program."[1] Nor is a license required "for a U.S. court, or its personnel, to hear such a case."[2] Rather, OFAC draws a line regarding actions "purporting to transfer or otherwise alter or affect property or interests in property blocked [pursuant to sanctions]."[3] In OFAC's view, those actions—including

---

[1] OFAC, Frequently Asked Questions No. 808, https://www.treasury.gov/resource-center/faqs/sanctions/pages/faq_other.aspx (last visited Dec. 11, 2019).
[2] *Id.*
[3] 31 C.F.R. § 591.407.

The Honorable Leonard P. Stark
December 11, 2019
Page 2

"conducting an auction"—need a license.[4] Now that we have the U.S. Government's view, there is no reason not to continue these legal proceedings up to the point where "concrete steps in furtherance of an auction or sale" subject to FAQ 809 are ready to be taken.[5]

Because the new FAQs do not bar further proceedings, there is no reason to allow PDVH to continue to ignore this Court's orders by failing to answer the writ that was served on it more than a year ago. Answering the writ will not "affect blocked property or interests in blocked property."[6] Rather, requiring PDVH to answer the writ will allow Crystallex to make the application for a license that FAQ 809 suggests is needed. In order to complete its application, Crystallex must, among other things, identify with particularity the assets that it seeks to sell.[7] The information that Crystallex needs for its application—the number and nature of the shares of PDVH held in PDVSA's name, along with any other assets of PDVSA in PDVH's possession, such as declared, but unpaid, dividends—is exactly the information that PDVH is obligated to provide in response to this Court's writ. There is no burden in responding to the writ. Yet, PDVH's response to the writ, due nearly 15 months ago, remains outstanding. Nothing in FAQ 809 excuses litigants from responding to Court orders, of which the writ is one.

Similarly, the new FAQs do not preclude this Court from considering the mechanics by which a sale of PDVH might occur. Crystallex submits that the shares should be sold pursuant to Delaware statute. Proposed intervenor CITGO Petroleum, on the other hand, has suggested in its papers that a brokered sale is the correct approach. Deciding which of these paths is legally appropriate will not affect interests in blocked assets. Rather, it will simply help determine the specific transaction that Crystallex is to detail in its application for a license.

In light of the foregoing, Crystallex respectfully requests that the Court (1) formally confirm the expiration of its stay of further proceedings pending the disposition of the Third Circuit appeal; (2) require PDVH to finally respond to the writ; and (3) set a schedule for motion practice to resolve any remaining disputes as to the form and nature of the auction so that Crystallex can prepare its application for a specific license to OFAC.

---

[4] OFAC, Frequently Asked Questions No. 809, https://www.treasury.gov/resource-center/faqs/sanctions/pages/faq_other.aspx (last visited Dec. 11, 2019). Because Crystallex's writ of attachment occurred before the shares of PDVH were blocked, any other reading of FAQ 509 would raise potential separation of powers concerns. In any event, OFAC FAQs are merely advisory. This Court's power to interpret the Venezuela Sanctions Regulations (31 C.F.R. Part 591) is no different than its power to interpret any other federal regulation.

[5] OFAC, Frequently Asked Questions No. 809.

[6] *Id*.

[7] https://licensing.ofac.treas.gov (first screen after accepting Terms of Agreement for transactional applications) (last visited Dec. 11, 2019).

The Honorable Leonard P. Stark
December 11, 2019
Page 3

                                                        Respectfully submitted,

                                                        */s/ Travis S. Hunter*

                                                        Travis S. Hunter (#5350)

cc:  All Counsel of Record (via ECF)