# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

CRYSTALLEX INTERNATIONAL
CORPORATION,

               Plaintiff,

    v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

              Defendant.

C.A. No. 17-mc-00151-LPS

## PLAINTIFF CRYSTALLEX INTERNATIONAL CORPORATION'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO MODIFY THE STAY

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Miguel A. Estrada
Lucas C. Townsend
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
Fax: (202) 467-0539

December 19, 2019

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Tel:  (302) 651-7700
Fax:  (302) 651-7701

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ............................................................................. 1

SUMMARY OF ARGUMENT ................................................................................................ 2

STATEMENT OF FACTS ....................................................................................................... 4

STANDARD ON THIS MOTION ............................................................................................. 6

ARGUMENT ........................................................................................................................ 6

I.      The Stay Should Be Modified To Require PDVH To Answer The Writ Promptly. .......... 6

II.     The Stay Should Be Conditioned On Venezuela And PDVSA Filing Their
        Certiorari Petition On An Expedited Basis—Or, At A Minimum, On Not Seeking
        An Extension Of The Certiorari Deadline. ........................................................................ 9

CONCLUSION ..................................................................................................................... 18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Raines v. Byrd,*
521 U.S. 811 (1997)..................................................................................................16

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
2017 WL 6349729 (D.D.C. June 9, 2017)..................................................................5

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
2018 WL 4026738 (D. Del. Aug. 23, 2018)...............................................................6

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
244 F. Supp. 3d 100 (D.D.C. 2017)...........................................................................5

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
333 F. Supp. 3d 380 (D. Del. 2018)...........................................................................5

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
760 F. App'x 1 (D.C. Cir. 2019)...........................................................................5, 15

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
932 F.3d 126 (3d Cir. 2019).....................................................................1, 5, 12, 15

*Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.,*
879 F.3d 79 (3d Cir. 2018)...................................................................................8, 17

*Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Inv., LLC,*
No. 18-1334 (U.S. argued Oct. 15, 2019)................................................................16

*Hilton v. Braunskill,*
481 U.S. 770 (1987)....................................................................................................6

**Statutes**

28 U.S.C. § 2101(c) ............................................................................................10, 18

**Regulations**

31 C.F.R. § 501.801(b)(2)(ii)..................................................................................8

**Rules**

Fed. R. Civ. P. 62(d) ................................................................................................6

Sup. Ct. R. 13.3........................................................................................................10

**TABLE OF AUTHORITIES**
(*cont.*)

**Page(s)**

Sup. Ct. R. 13.5 ..........................................................................................................10

Sup. Ct. R. 15.3 ..........................................................................................................10

Sup. Ct. R. 30.4 ..........................................................................................................10

Sup. Ct. R. 37.2(a) ......................................................................................................10

**Other Authorities**

Dr. Adam Feldman, *Comparing Cert Stage OSG Efforts Under Obama and
    Trump*, Empirical SCOTUS (June 5, 2019),
    https://empiricalscotus.com/2019/06/05/cert-stage-osg/ ........................................11

Gideon Long, *Setbacks Pile Up For Venezuela Opposition Leader Guaidó*, Fin.
    Times (Dec. 12, 2019) ............................................................................................17

OFAC, Frequently Asked Questions No. 74, https://www.treasury.gov/resource-
    center/faqs/Sanctions/Pages/faq_general.aspx .........................................................6

OFAC, Frequently Asked Questions No. 809, https://www.treasury.gov/resource-
    center/faqs/sanctions/pages/faq_other.aspx ..................................................7, 9, 12

OFAC, Instructions for Applicants, https://licensing.ofac.treas.gov ..............................7

Stephen M. Shapiro et al., Supreme Court Practice (11th ed. 2019) ...........................10

iii

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Crystallex International Corporation ("Crystallex") brought this proceeding to enforce an unpaid judgment of more than $1.2 billion entered by the U.S. District Court for the District of Columbia against the Bolivarian Republic of Venezuela ("Venezuela"). In August 2018, this Court ordered the attachment of Venezuela's property—shares of the Delaware holding company PDVH registered in the name of Venezuela's alter ego, Petróleos de Venezuela S.A. ("PDVSA"). (*See* D.I. 78, 79, 95) A panel of the U.S. Court of Appeals for the Third Circuit unanimously affirmed the attachment, and the full Third Circuit denied rehearing. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019). The panel lifted its stay of enforcement proceedings and issued its mandate. (*See* D.I. 136, 149)

On December 12, 2019, this Court issued a Memorandum Order staying all enforcement proceedings in this case until the conclusion of any proceedings in the Supreme Court or until "further order of this or any other Court lifting the stay." (D.I. 154 at 3) This Court also declined to require PDVH at this time to answer the writ of attachment (*id.* at 10), which was served on August 24, 2018 and has remained unanswered for sixteen months (*see* D.I. 96). Although the Court ruled that its stay was without prejudice to any motion to lift the stay (D.I. 154 at 3, 10), the Court did not otherwise limit the duration of the stay.

In accordance with this Court's Memorandum Order, Crystallex respectfully moves for a modification of the stay in two limited respects, each of which is necessary to prevent undue prejudice to Crystallex and remove incentives for Venezuela and PDVSA to engage in additional procedural gamesmanship. First, Crystallex respectfully requests that PDVH be directed promptly to answer the writ of attachment—a simple and ministerial act—so that Crystallex can obtain information important to support an application for a specific license from the Office of

Foreign Assets Control ("OFAC").  Second, in light of Venezuela's long history of seeking to introduce tactical delay into these proceedings, Crystallex respectfully urges this Court to condition its stay on Venezuela and PDVSA filing any petition for a writ of certiorari with the Supreme Court on a reasonably expedited basis of no more than 61 days from the Third Circuit's denial of rehearing (i.e., by January 21, 2020)—more than ample time to prepare and file a certiorari petition, a document that experienced counsel in expedited cases have been known to file in much shorter time frames.  At the very least, the stay should not remain in place if Venezuela or PDVSA seek to *extend* their deadline for filing a certiorari petition—an action that in itself could add many months of delay in the Supreme Court proceedings.  If Crystallex, as the prevailing party, must endure more prejudicial delay while Venezuela and PDVSA exhaust their remaining appellate option, then basic fairness dictates that Venezuela and PDVSA should be required to proceed to the Supreme Court expeditiously.

## SUMMARY OF ARGUMENT

1.       PDVH should be required to answer the writ of attachment now, and not after the conclusion of any Supreme Court proceedings.  The writ that the U.S. Marshals served on PDVH in August 2018 directs PDVH to furnish, within 20 days after service, a simple description of the attached shares in its possession.  Recent guidance from the Executive Branch plainly invites Crystallex, as the holder of an attachment on Venezuela's property, to apply to OFAC for a specific license before taking concrete steps in furtherance of a judicial sale or auction.  The description of the shares that PDVH is required to furnish will be an important piece of any application for a specific license that Crystallex files with OFAC.  Similarly, the attachment extends to any assets or rights that PDVSA may have that are incident to those shares—such as declared shareholder dividends—and Crystallex needs PDVH's answer to the writ in order to

2

describe any such assets or rights with precision.  Such information unquestionably would be important in supporting Crystallex's application to OFAC for a specific license.

Merely requiring PDVH to answer the writ, which is now more than sixteen months overdue, would in no way burden Venezuela or alter its property rights.  On the contrary, OFAC's most recent guidance in FAQs suggests that a party in Crystallex's position should submit a specific license application before proceeding with an auction, which necessarily contemplates that applicants will describe the proposed transaction with clarity, using the best available information.  Requiring PDVH to answer the writ now would aid U.S. government decisionmakers in their review of Crystallex's application of a specific license.

2.      In addition, the stay should be made conditional on Venezuela filing its petition for a writ of certiorari within 61 days of the Third Circuit's denial of rehearing—or, at the very least, on Venezuela not seeking an extension of its 90-day deadline to file a certiorari petition. Because the Court's current stay runs until the conclusion of any Supreme Court proceedings (however long they may last), Venezuela and PDVSA have every incentive to prolong those proceedings to the maximum extent.  For example, if Venezuela obtains a 60-day extension of its certiorari deadline, and Crystallex files its opposition after any *amicus* briefs supporting the petition are due, as is customary, the petition likely will not be considered by the Supreme Court Justices until September 2020.  And if Venezuela persuades the Justices to call for the views of the Solicitor General, the Solicitor General's response (which is not subject to any deadline) likely will not be filed before May 2021 at the earliest.  Nothing in this case suggests that the views of the Solicitor General would be especially helpful—indeed, the Executive Branch has known about this case all along, and has never appeared to express an interest despite repeated entreaties from Venezuela, choosing instead (as the Third Circuit predicted in its opinion) to

3

assert its licensing authority and invite the parties to come to it without judicial involvement. But the Supreme Court does call for the views of the Solicitor General in a number of cases each year, and though most such invitations are answered with a recommendation that certiorari be denied, and the Supreme Court does deny review in most such cases, the process has the effect of freezing the litigation for the better part of a year—which is of course the main goal that Venezuela and PDVSA pursue here.  Indeed, in the unlikely event the Supreme Court grants certiorari, the Supreme Court may not issue its decision until June 2022—leaving this Court's stay in place for up to thirty months, even if the Supreme Court agrees with the unanimous judgment of every adjudicator who has ever considered this case in any tribunal and rejects Venezuela's arguments on their merits.

Such delay is neither reasonable nor necessary.  Venezuela is represented by experienced Supreme Court counsel who know how to litigate cases in the Supreme Court on an expedited basis.  Venezuela has had the Third Circuit's decision since July 2019, and it may not raise new issues in its certiorari petition.  There is no reason why Venezuela and its army of lawyers cannot file a certiorari petition by January 21, 2020, a date which would permit the Justices to consider the petition before their 2020 summer recess.  At a minimum, there is no reason why Venezuela needs to *extend* its certiorari deadline.  This Court should modify its stay to remove the incentive for procedural gamesmanship; the stay should be made conditional on Venezuela filing its certiorari petition within 61 days or, at least, on Venezuela not seeking an extension of the certiorari deadline.

## STATEMENT OF FACTS

In April 2016, an arbitration panel unanimously awarded Crystallex $1.2 billion plus interest for Venezuela's unlawful expropriation of Crystallex's mining interests in 2011.  *See*

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 244 F. Supp. 3d 100, 105 (D.D.C. 2017).  In March 2017, the United States District Court for the District of Columbia entered a judgment confirming Crystallex's arbitration award and denying Venezuela's motion to vacate that award.  *Id.* at 123.  A panel of the United States Court of Appeals for the District of Columbia Circuit unanimously affirmed.  *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 760 F. App'x 1, 1-2 (D.C. Cir. 2019) (per curiam).

The D.C. district court granted Crystallex's motion to register its judgment in other judicial districts.  *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2017 WL 6349729, at *2-3 (D.D.C. June 9, 2017).  In June 2017, Crystallex registered its judgment in this Court and later moved for a writ of attachment on Delaware shares of PDVH owned by Venezuela and registered in the name of Venezuela's alter ego, PDVSA.  (*See* D.I. 1, 2)  In August 2018, this Court found that Venezuela and PDVSA were alter egos and granted the writ of attachment.  *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 386 (D. Del. 2018) (*See* D.I. 78, 79, 95)  On July 29, 2019, a panel of the Third Circuit unanimously affirmed.  *Crystallex Int'l Corp.*, 932 F.3d at 133.  The full Third Circuit denied rehearing without a registered dissent.  *See* Order Sur Petition for Rehearing, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, Nos. 18-2797 & 18-3124 (3d Cir. Nov. 21, 2019).

Venezuela's newly retained Supreme Court counsel has represented that his client intends to file a petition for a writ of certiorari with the Supreme Court.  (11/13/19 Tr. 25)  Venezuela and PDVSA have not yet filed their certiorari petition.  On December 12, 2019, this Court stayed these proceedings until the conclusion of proceedings in the Supreme Court without prejudice to Crystallex's opportunity to file a motion to lift the stay.  (D.I. 154 at 3)  The Court did not find

that Venezuela and PDVSA had made a strong showing that they are likely to succeed in the Supreme Court.  (*Id.* at 4)

## STANDARD ON THIS MOTION

A stay pending appeal is governed by Federal Rule of Civil Procedure 62(d), which requires a court to consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *cf. Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2018 WL 4026738, at *1 (D. Del. Aug. 23, 2018) ("Unless PDVSA files a Rule 62(d) motion for a stay and posts a supersedeas bond, 'the Court remains free to issue further orders as needed to enforce the August 9 Order.'").

## ARGUMENT

### I.      The Stay Should Be Modified To Require PDVH To Answer The Writ Promptly.

Regardless of whether other aspects of these proceedings should be stayed, this Court should not stay PDVH's obligation to answer the writ of attachment.  The negligible burden of requiring PDVH to answer the writ is clearly outweighed by the potential prejudice from depriving Crystallex of information that would best allow OFAC to determine whether to grant a specific license to conduct a judicial sale.[1]

---

[1]  OFAC defines a "specific license" as "a written document issued by OFAC to a particular person or entity, authorizing a particular transaction in response to a written license application." OFAC, Frequently Asked Questions No. 74, https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx (last visited Dec. 18, 2019).  As its name implies, a specific license defines the authorized transaction with specificity.

The writ of attachment directed PDVH to serve a verified answer within 20 days describing "what shares of stock and other assets or rights incident to that stock ownership belonging to or owing to PDVSA, as alter ego of Defendant and Judgment Debtor Venezuela, you currently possess."  (D.I. 95 at 7)  The writ does not call for information outside of PDVH's possession, and it does not affect or otherwise alter any property rights.  It simply directs PDVH, as a garnishee, to provide truthful and accurate information of a purely ministerial nature that will be used in *future* proceedings.  Although PDVH easily could have provided the required information in a day, PDVH instead has chosen to ignore the writ for sixteen months.

It is imperative that PDVH answer the writ now because PDVH's description of the attached shares—e.g., the number of shares and the form in which they are held—and any assets or rights incident to those shares, such as declared shareholder dividends, will be the *best* description of the property that Crystallex can provide in its application for a specific license to OFAC.  In recent guidance, OFAC has made clear that any parties in Crystallex's position as the holder of a writ of attachment on shares of a Government of Venezuela entity whose property is blocked under Executive Branch sanctions "must obtain a specific license from OFAC prior to conducting an auction or other sale."[2]  Crystallex therefore will seek OFAC approval for a judicial sale or auction of a sufficient number of PDVH shares to satisfy Venezuela's judgment to Crystallex, and OFAC's instructions regarding how to apply for a specific license explicitly direct applicants to "*clearly identif*[*y*] all transactions, and associated money flows, at issue."[3]  In order to clearly identify the proposed transaction, Crystallex must have a clear description of the

[2]  OFAC, Frequently Asked Questions No. 809, https://www.treasury.gov/resource-center/faqs/sanctions/pages/faq_other.aspx (last visited Dec. 18, 2019).

[3]  OFAC, Instructions for Applicants, https://licensing.ofac.treas.gov (first screen after accepting Terms of Agreement for transactional applications) (emphasis added) (last visited Dec. 18, 2019).

property to be sold—and that is precisely the information that the writ of attachment directs

PDVH to provide.  Similarly, OFAC's regulations concerning specific licenses state that in order

to apply for such a license, the applicant must provide "all information specified by relevant

instructions."  31 C.F.R. § 501.801(b)(2)(ii).  That information necessarily includes a precise

description of the property that is the subject of the transaction.

This Court ordered an attachment not only of the PDVH shares themselves, but also of

any other "assets or rights incident to that stock ownership belonging to or owing to PDVSA."

(D.I. 95 at 7)  Such assets or rights may include, for example, any declared dividends to the

holder of those shares.  Indeed, during Crystallex's arbitration with Venezuela, PDVH declared a

dividend of $2.8 billion to PDVSA in order to remove the funds from the United States and

"hinder creditors."  *Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*, 879 F.3d 79, 89 (3d

Cir. 2018); *see also id.* at 82 (describing PDVH's dividend to PDVSA).  A detailed description

of any such assets or rights unquestionably would support Crystallex's application to OFAC for a

specific license to conduct a judicial sale.  Without PDVH's answer to the writ, however,

Crystallex would lack important information needed to support its application.

Accordingly, the information in PDVH's verified answer to the writ will aid OFAC in

determining whether to grant Crystallex's application for a specific license.  But if Crystallex

cannot include that information in its application to OFAC—because PDVH has not furnished

the information—Crystallex's application to OFAC for a specific license may be deemed unripe

or deficient.  Crystallex, as the *prevailing* party, should not have its legal rights prejudiced by the

inaction of the *losing* party.  And Crystallex should not be forced to wait potentially for years

(*see* Part II *infra*) before receiving the information it needs to submit a sufficient license

application to OFAC.

To be sure, OFAC has "urge[d] caution" in proceeding against blocked assets of Venezuela, but OFAC simultaneously made clear that it "would consider [specific] license applications seeking to authorize such activities on a case-by-case basis."[4] By inviting Crystallex to submit an application for a specific license to conduct a judicial sale, OFAC necessarily contemplated that Crystallex would submit a *sufficient* application. The information contained in PDVH's answer to the writ will be helpful to the OFAC decision makers who will evaluate Crystallex's application for a specific license. Crystallex respectfully requests that the Court modify the stay to require PDVH to answer the writ promptly so that Crystallex can have the information it needs to submit a complete specific license application to OFAC before the end of any Supreme Court proceedings.

## II. The Stay Should Be Conditioned On Venezuela And PDVSA Filing Their Certiorari Petition On An Expedited Basis—Or, At A Minimum, On Not Seeking An Extension Of The Certiorari Deadline.

In addition to requiring PDVH to answer the writ of attachment, this Court should modify its stay to require that Venezuela and PDVSA file their certiorari petition by January 21, 2020. That date is 61 days after the Third Circuit denied rehearing and a full *176 days* after the Third Circuit panel issued its decision—more than ample time for experienced Supreme Court counsel to file a certiorari petition. At the very least, the Court should condition the stay on Venezuela and PDVSA not seeking any extension of their certiorari deadline. The stay should be modified in this way so as to remove the incentive for Venezuela and PDVSA to drag out the Supreme Court proceedings while Crystallex and its creditors go unpaid.

---

[4] OFAC, Frequently Asked Questions No. 809, https://www.treasury.gov/resource-center/faqs/sanctions/pages/faq_other.aspx (last visited Dec. 18, 2019).

Although this Court noted that Venezuela had asked for a "longer stay" that would run until the time OFAC grants a specific license (*see* D.I. 154 at 8), it is far from clear that such a stay would in fact be longer than the stay that the Court has ordered.  It is entirely possible that even if the Supreme Court ultimately denies Venezuela's petition for a writ of certiorari (as is likely), the proceedings in the Supreme Court can drag out for eighteen months or more.  To understand why that is so, it is necessary to consider the procedures that govern Supreme Court practice in the light of Venezuela's long history of seeking tactical litigation delay.

Venezuela and PDVSA have 90 days from the Third Circuit's denial of rehearing on November 21 in which file a petition for a writ of certiorari.  28 U.S.C. § 2101(c); Sup. Ct. R. 13.3.  But that deadline can be extended by up to 60 additional days upon application to Justice Alito, the Circuit Justice for the Third Circuit.  *See* 28 U.S.C. § 2101(c); Sup. Ct. R. 13.5.  In practice, such applications are frequently granted based on "the slightest cause shown."  Stephen M. Shapiro et al., Supreme Court Practice 6-35 (11th ed. 2019).  If Venezuela and PDVSA obtain a 60-day extension, their certiorari petition will be due on April 20.  Crystallex ordinarily would have 30 days to file a brief in opposition, *see* Sup. Ct. R. 15.3, the same period of time in which *amici curiae* supporting certiorari would have to file their own briefs, *see* Sup. Ct. R. 37.2(a).  It is likely that Venezuela and its able counsel will aggressively recruit *amici* to support their certiorari petition.  Respondents desiring an opportunity to address the arguments raised by *amici* supporting certiorari typically—and quite reasonably—seek an extension of their deadline for filing a brief in opposition.  *See* Sup. Ct. R. 30.4 (permitting such extensions upon request to the Clerk of the Supreme Court).  If Crystallex were to avail itself of that option, the certiorari petition would not be considered by the Justices until the so-called "long conference" in September 2020, i.e., the conference at which the Justices meet to consider all of the petitions

that the Clerk's office distributed to them over the summer months.  Thus, by obtaining a routine

60-day extension of the deadline for filing a certiorari petition, Venezuela and PDVSA could

very likely gain an *additional* three months of delay before the Justices consider the petition in

September 2020.

But the risk of delay does not stop there.  In every court in which Venezuela has appeared

in this enforcement proceeding, Venezuela has urged the court to invite the United States

government into the proceeding.  It is certain that Venezuela will continue that practice by urging

the Supreme Court to call for the views of the Solicitor General, because, as Venezuela's counsel

knows, the Solicitor General has no deadline whatsoever by which to file its invitation brief.

According to published statistics, the Office of the Solicitor General under the Trump

Administration has taken, on average, *167 days* to file a brief in response to a call by the

Supreme Court for the Solicitor General's views.[5]  The Solicitor General files all such invitation

briefs only at two times each year:  in December, when the Justices are considering the final

petitions to grant for argument that Term; and in mid-May, when the Justices are considering the

petitions to grant for argument during the next Term after the Court's summer recess.

Accordingly, if the Justices were to call for the Solicitor General's views in September 2020, it is

likely that the Solicitor General would not file its invitation brief until mid-May 2021 at the

earliest—some eighteen months from now.

There is no reason to suppose that if the Supreme Court calls for the Solicitor General's

views, the Solicitor General's response would be particularly helpful.  The Third Circuit

acknowledged that the OFAC licensing process "provide[s] an explicit mechanism" to account

---

[5]  Dr. Adam Feldman, *Comparing Cert Stage OSG Efforts Under Obama and Trump*,
Empirical SCOTUS (June 5, 2019), https://empiricalscotus.com/2019/06/05/cert-stage-osg/.

for the Executive Branch's views prior to any sale of the PDVH shares.  *Crystallex Int'l Corp.*, 932 F.3d at 151.  Recent informal guidance from OFAC confirms the Third Circuit's prediction. By requiring parties in Crystallex's position to "obtain a specific license from OFAC prior to conducting an auction or other sale," the Executive Branch has made clear that it is aware of these proceedings and expects the parties to come to it without judicial involvement.[6]  The Executive Branch has never sought to intervene in this case or argued that Crystallex is not entitled to prevail.  That silence presumably reflects a recognition on the part of United States authorities that Venezuela stole Crystallex's property and drove the company into insolvency, and therefore deserves to pay for the stolen property that Venezuela now possesses.  But whatever the government's motives, it is clear that the Executive Branch intends to participate in the judicial process through the licensing decision, not by arguing in court that the judicial process should come out in a particular way.

Nor is a decision by the Supreme Court to call for the views of the Solicitor General an indication that the certiorari petition is meritorious.  Far from it.  In the past three Supreme Court Terms, the Court has decided certiorari petitions after calling for the Solicitor General's views approximately 64 times,[7] yet the Solicitor General has recommended granting certiorari in only

---

[6]  OFAC, Frequently Asked Questions No. 809, https://www.treasury.gov/resource-center/faqs/sanctions/pages/faq_other.aspx (last visited Dec. 18, 2019).

[7]  The following are cases in which the Supreme Court decided the certiorari petitions in the 2016, 2017, and 2018 Terms after calling for the views of the Solicitor General, as well as the time between the Court's request and the filing of the Solicitor General's brief:  *Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am.*, No. 18-600 (134 days); *YPF S.A. v. Petersen Energia Inversora S.A.U.*, No. 18-575 (134 days); *Toshiba Corp. v. Auto. Indus. Pension Tr. Fund*, No. 18-486 (126 days); *Ala. Dep't of Revenue v. CSX Transp., Inc.*, No. 18-447 (127 days); *Cty. of Maui v. Haw. Wildlife Fund*, No. 18-260 (31 days); *First Solar, Inc. v. Mineworkers' Pension Scheme*, No. 18-164 (218 days); *Ariosa Diagnostics, Inc. v. Illumina, Inc.*, No. 18-109 (204 days); *Thole v. U.S. Bank, N.A.*, No. 17-1712 (232 days); *RPX Corp. v. ChanBond LLC*, No. 17-1686 (220 days); *Hernandez v. Mesa*, No. 17-1678 (192 days); *Atl. Richfield Co. v. Christian*, No. 17-1498 (211 days); *Harvey v. Ute Indian Tribe*, No. 17-1301

(162 days); *Ass'n Des Eleveurs v. Becerra*, No. 17-1285 (169 days); *Opati v. Republic of Sudan*, No. 17-1268 (344 days); *Osage Wind, LLC v. Osage Minerals Council*, No. 17-1237 (204 days); *Airline Serv. Providers Ass'n v. L.A. World Airports*, No. 17-1183 (351 days); *Poarch Band of Creek Indians v. Wilkes*, No. 17-1175 (232 days); *de Csepel v. Republic of Hungary*, No. 17-1165 (162 days); *United States ex rel. Carter v. Halliburton Co.*, No. 17-1060 (78 days); *City of Cibolo v. Green Valley Special Util. Dist.*, No. 17-938 (197 days); *Gilead Scis., Inc. v. United States ex rel. Campie*, No. 17-936 (228 days); *Kansas v. Garcia*, No. 17-834 (232 days); *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, No. 17-571 (128 days); *Herrera v. Wyoming*, No. 17-532 (134 days); *Strang v. Ford Motor Co.*, No. 17-528 (120 days); *Sterba v. PNC Bank*, No. 17-423 (115 days); *Dawson v. Steager*, No. 17-419 (127 days); *Merck Sharp & Dohme Corp. v. Albrecht*, No. 17-290 (169 days); *Apple Inc. v. Pepper*, No. 17-204 (210 days); *Loomis v. Wisconsin*, No. 16-6387 (78 days); *Wash. State Dep't of Licensing v. Cougar Den, Inc.*, No. 16-1498 (225 days); *Va. Uranium, Inc. v. Warren*, No. 16-1275 (189 days); *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, No. 16-1220 (141 days); *Lamar, Archer & Cofrin, LLP v. Appling*, No. 16-1215 (143 days); *Brewer v. Ariz. Dream Act Coal.*, No. 16-1180 (233 days); *Samsung Elecs. Co. v. Apple Inc.*, No. 16-1102 (100 days); *Republic of Sudan v. Harrison*, No. 16-1094 (232 days); *Sokolow v. Palestine Liberation Org.*, No. 16-1071 (241 days); *Clark v. Va. Dep't of State Police*, No. 16-1043 (150 days); *Westerngeco LLC v. Ion Geophysical Corp.*, No. 16-1011 (190 days); *Rinehart v. California*, No. 16-970 (205 days); *Snyder v. Doe*, No. 16-768 (102 days); *Magee v. Coca-Cola Refreshments USA, Inc.*, No. 16-668 (142 days); *Rubin v. Islamic Republic of Iran*, No. 16-534 (134 days); *Christie v. NCAA*, No. 16-476 (126 days); *Bank Melli v. Bennett*, No. 16-334 (134 days); *Bulk Juliana v. World Fuel Servs.*, No. 16-26 (134 days); *Lenz v. Universal Music Corp.*, No. 16-217 (185 days); *United States ex rel. Advocates for Basic Legal Equality, Inc. v. U.S. Bank, N.A.*, No. 16-130 (193 days); *Belize v. Belize Social Dev. Ltd.*, No. 15-830 (254 days); *Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, No. 15-1439 (232 days); *Ali v. Warfaa*, No. 15-1345 (232 days); *BeavEx, Inc. v. Costello*, No. 15-1305 (232 days); *Sw. Sec., FSB v. Segner*, No. 15-1223 (203 days); *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, No. 15-1189 (114 days); *Hernandez v. Mesa*, No. 15-118 (91 days); *SmithKline Beecham Corp. v. King Drug Co. of Florence, Inc.*, No. 15-1055 (119 days); *Pa. Higher Educ. Assistance Agency v. Pele*, No. 15-1044 (204 days); *Sandoz Inc. v. Amgen Inc.*, No. 15-1039 (170 days); *Howell v. Howell*, No. 15-1031 (176 days); *U.S. Bank, N.A. v. Vill. at Lakeridge, LLC*, No. 15-509 (133 days); *Indiana v. Massachusetts*, No. 22O149 (227 days); *Missouri v. California*, No. 22O148 (227 days); *New Mexico v. Colorado*, No. 22O147 (176 days).

20 of those cases,[8] and the Court actually granted certiorari in those cases only 25 times.[9]  These statistics show that the vast majority of petitions for which the Court calls for the views of the Solicitor General ultimately are denied.  But even when the Solicitor General recommends denying certiorari, the time that the Solicitor General takes to make that recommendation typically extends the duration of the Supreme Court proceedings by many months—and often much longer.[10]

 This delay is precisely what Venezuela and PDVSA are counting on.  Even without a meritorious issue for their certiorari petition, they still stand an excellent chance of dragging out

---

[8]  *Cty. of Maui v. Haw. Wildlife Fund*, No. 18-260; *Thole v. U.S. Bank, N.A.*, No. 17-1712; *Hernandez v. Mesa*, No. 17-1678; *Opati v. Republic of Sudan*, No. 17-1268; *Kansas v. Garcia*, No. 17-834; *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, No. 17-571; *Herrera v. Wyoming*, No. 17-532; *Dawson v. Steager*, No. 17-419; *Merck Sharp & Dohme Corp. v. Albrecht*, No. 17-290; *Apple Inc. v. Pepper*, No. 17-204; *Rubin v. Islamic Republic of Iran*, No. 16-534; *Wash. State Dep't of Licensing v. Cougar Den, Inc.*, No. 16-1498; *Va. Uranium, Inc. v. Warren*, No. 16-1275; *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, No. 16-1220; *Lamar, Archer & Cofrin, LLP v. Appling*, No. 16-1215; *Westerngeco LLC v. Ion Geophysical Corp.*, No. 16-1011; *United States ex rel. Advocates for Basic Legal Equality, Inc. v. U.S. Bank, N.A.*, No. 16-130; *Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, No. 15-1439; *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, No. 15-1189; *Sandoz Inc. v. Amgen Inc.*, No. 15-1039; *Howell v. Howell*, No. 15-1031.

[9]  *Cty. of Maui v. Haw. Wildlife Fund*, No. 18-260; *Thole v. U.S. Bank, N.A.*, No. 17-1712; *Hernandez v. Mesa*, No. 17-1678; *Atl. Richfield Co. v. Christian*, No. 17-1498; *Opati v. Republic of Sudan*, No. 17-1268; *Kansas v. Garcia*, No. 17-834; *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, No. 17-571; *Herrera v. Wyoming*, No. 17-532; *Dawson v. Steager*, No. 17-419; *Merck Sharp & Dohme Corp. v. Albrecht*, No. 17-290; *Apple Inc. v. Pepper*, No. 17-204; *Wash. State Dep't of Licensing v. Cougar Den, Inc.*, No. 16-1498; *Va. Uranium, Inc. v. Warren*, No. 16-1275; *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, No. 16-1220; *Lamar, Archer & Cofrin, LLP v. Appling*, No. 16-1215; *Republic of Sudan v. Harrison*, No. 16-1094; *Westerngeco LLC v. Ion Geophysical Corp.*, No. 16-1011; *Rubin v. Islamic Republic of Iran*, No. 16-534; *Christie v. NCAA*, No. 16-476; *United States ex rel. Advocates for Basic Legal Equality, Inc. v. U.S. Bank, N.A.*, No. 16-130; *Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, No. 15-1439; *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, No. 15-1189; *Sandoz Inc. v. Amgen Inc.*, No. 15-1039; *Howell v. Howell*, No. 15-1031; *U.S. Bank, N.A. v. Vill. at Lakeridge, LLC*, No. 15-509; *Hernandez v. Mesa*, No. 15-118.

[10]  *See, e.g.*, *Airline Serv. Providers Ass'n v. L.A. World Airports*, No. 17-1183 (351 days).

14

the proceedings in the Supreme Court—and extending this Court's stay—for eighteen months or longer.[11]  Venezuela has a well-documented history of using tactical delay as a means of frustrating its creditors in court proceedings.  Crystallex knows this all too well.

- On two separate occasions, Venezuela entered into settlement agreements with Crystallex in exchange for Crystallex agreeing to stay its litigation—and both times, Venezuela breached its obligations or failed to perform under the agreements as soon as it obtained its desired stay of litigation.  *See, e.g.*, Crystallex's Opposition to Motion for Leave to Intervene and Stay Proceedings 7-8, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, Nos. 18-2797, 18-3124 (3d Cir. Mar. 11, 2019) (describing failed settlements).

- In the D.C. Circuit, on the eve of the scheduled oral argument in Venezuela's appeal from the district court judgment confirming Crystallex's arbitration award, Venezuela filed a highly misleading "emergency" motion to hold the case in abeyance, only to be sanctioned by the D.C. Circuit panel for filing a "misleading and meritless" motion.  *Crystallex Int'l Corp.*, 760 F. App'x at 3.

- In the Third Circuit, PDVSA filed a mandamus petition that resulted in a stay lasting nine months, even though the Third Circuit ultimately denied the petition.  *Crystallex Int'l Corp.*, 932 F.3d at 133 n.1; Order Sur Petition for Panel Rehearing, *In re Petroleos de Venezuela, S.A.*, No. 18-2889 (3d Cir. Nov. 23, 2018).

- Venezuela and PDVSA also obtained a 45-day extension of their time to file petitions for rehearing, even though those petitions were later denied without dissent.  *See*

---

[11]  In the unlikely event the Supreme Court *does* grant certiorari, the proceedings in the Supreme Court would extend even longer.  If the Court were to grant certiorari in June 2021, it is possible that the case would not be decided until June 2022—some thirty months from now.

Order Sur Petition for Rehearing, Nos. 18-2797 & 18-3124 (3d Cir. Nov. 21, 2019);

Order, Nos. 18-2797 & 18-3124 (3d. Cir. Aug. 1, 2019).

Time and again, Venezuela has demonstrated that even with no meritorious arguments whatsoever, it will take every opportunity to stay or drag out these proceedings. Meanwhile, Crystallex has been frustrated in its ability to enforce its judgment. If Venezuela and PDVSA are to enjoy a complete stay while they exhaust their Supreme Court option, then it is eminently reasonable to condition that stay on Venezuela and PDVSA seeking Supreme Court review on an expedited basis, with no further extensions.

Indeed, Venezuela's Supreme Court counsel is a former United States Solicitor General who knows how to litigate cases in the Supreme Court on an expedited basis; indeed, he recently did so in a case involving Crystallex's counsel. *See Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Inv., LLC*, No. 18-1334 et al. (U.S. argued Oct. 15, 2019). The Supreme Court also is no stranger to expedited proceedings. *E.g.*, *Raines v. Byrd*, 521 U.S. 811, 817-18 (1997) (noting probable jurisdiction on April 23 and deciding case on June 26). Here, Venezuela and PDVSA have had the Third Circuit's decision since July 29, 2019. They are not permitted to raise new arguments and theories in their certiorari petition, but are instead limited to the arguments litigated and decided below. It would impose no burden on Venezuela and PDVSA for this Court to condition the stay on their filing their certiorari petition by January 21, 2020—a date that is 61 days after the Third Circuit's denial of rehearing and 176 days after the panel issued its decision.

Conditioning the stay in this manner would help to mitigate the ongoing prejudice to Crystallex and its creditors. For nearly three years, Venezuela has refused to pay its federal judgment to Crystallex while Crystallex and its creditors remain stuck in an insolvency

16

proceeding pending in a Canadian court.  And while the Guaidó government recently has

suggested a willingness to "engage in a voluntary restructuring" of Venezuela's debts (11/13/19

Tr. 31), that was not the position of the Maduro regime.  *See Crystallex Int'l Corp.*, 879 F.3d at

82 ("On numerous occasions, Venezuelan government officials stated publicly that Venezuela

would refuse to pay any anticipated arbitral award against it and would proactively thwart efforts

to enforce such awards." (internal quotation marks omitted)).  The Maduro regime retains

significant power in Venezuela, and there is no assurance that Interim President Guaidó will be

able to maintain his claim to power into 2020.[12]  In any event, Venezuela's idea of a "voluntary

restructuring" apparently involves asking the Supreme Court first to eliminate legal remedies for

Venezuela's creditors and then offering those creditors deeply discounted repayment terms.

There is nothing "voluntary" or "consensual" (Tr. 31) about the cramdown that Venezuela

envisions.

That is why it is critically important for Crystallex to have some protection against a stay

that drags on for years while Venezuela and PDVSA slow-walk their petition in the Supreme

Court.  Conditioning the stay on Venezuela and PDVSA filing their certiorari petition on an

expedited basis would ensure that the Supreme Court Justices would consider the petition in the

spring of 2020, before the Supreme Court's summer recess, thus potentially avoiding six months

of delay.  Likewise, if the Justices were to call for the views of the Solicitor General, they would

do so in the spring, and the Office of the Solicitor General reasonably could file its invitation

brief by December 2020.  In this manner, the stay could perhaps be limited to a little more than a

year.

---

[12]  Gideon Long, *Setbacks Pile Up For Venezuela Opposition Leader Guaidó*, Fin. Times (Dec. 12, 2019), https://www.ft.com/content/09f3f16a-164f-11ea-9ee4-11f260415385.

Finally, at the very least, this Court should condition its stay on Venezuela and PDVSA committing not to seek an extension of their certiorari deadline.  Absent an extension, the statutory 90-day deadline for filing a certiorari petition is February 19, 2020, which would give Venezuela and PDVSA *205 days*—more than half a year—to prepare their petition.  *See* 28 U.S.C. § 2101(c).  That is more than sufficient time to file a certiorari petition, and any request for additional time in these circumstances must be viewed with deep suspicion.  Venezuela and PDVSA did not prevail on appeal, and they have not made a "strong showing" that they are likely to succeed in the Supreme Court.  (D.I. 154 at 4)  Nor can they show that subjecting Crystallex to more delay for delay's sake is in the public interest.  Requiring Venezuela and PDVSA to forego any extension of their certiorari deadline would still allow the Supreme Court process to play out, and, equally important, it would help to protect Crystallex and its creditors against unnecessary and prejudicial delay.

## CONCLUSION

For the foregoing reasons, Crystallex respectfully requests that the Court modify the stay (i) to require PDVH to answer the writ of attachment promptly, and (ii) to condition the stay on Venezuela and PDVSA filing their certiorari petition on an expedited basis or, at a minimum, on not seeking an extension of the certiorari deadline.

18

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Miguel A. Estrada
Lucas C. Townsend
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
Fax: (202) 467-0539

Dated: December 19, 2019

*/s/ Travis S. Hunter*
Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Tel:  (302) 651-7700
Fax:   (302) 651-7701

*Attorneys for Plaintiff*