# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|   |   |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | : |
| *Plaintiff*, | : |
| v. | : C.A. No. 17-mc-00151-LPS |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | : |
| *Defendant*. | : |

## OPPOSITION OF THE BOLIVARIAN REPUBLIC OF VENEZUELA AND PETRÓLEOS DE VENEZUELA, S.A., TO CRYSTALLEX'S MOTION TO MODIFY THE STAY

| | |
|---|---|
| OF COUNSEL:<br>Kent A. Yalowitz<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>255 West 55th Street<br>New York, New York 10019<br><br>E. Whitney Debevoise II<br>Stephen K. Wirth<br>Samuel F. Callahan<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>601 Massachusetts Avenue, NW<br>Washington, D.C. 20001 | A. Thompson Bayliss (#4379)<br>ABRAMS BAYLISS LLP<br>20 Montchanin Road, Suite 200<br>Wilmington, Delaware 19807<br>(302) 778-1000<br>bayliss@abramsbayliss.com<br>*Attorney for Defendant*<br>*Bolivarian Republic of Venezuela* |
| OF COUNSEL:<br>Joseph D. Pizzurro<br>Julia B. Mosse<br>Kevin A. Meehan<br>CURTIS, MALLET-PREVOST,<br>COLT & MOSLE LLP<br>101 Park Avenue<br>New York, NY 10178<br>(212) 696-6000 | Samuel T. Hirzel, II (#4415)<br>HEYMAN ENERIO<br>GATTUSO & HIRZEL LLP<br>300 Delaware Avenue, Suite 200<br>Wilmington, DE 19801<br>(302) 472-7300<br>SHirzel@hegh.law<br>*Attorney for Intervenor Petróleos de Venezuela, S.A.* |

{A&B-00643049}

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii
NATURE AND STAGE OF THE PROCEEDINGS ..................................................................... 1
SUMMARY OF ARGUMENT ........................................................................................................ 1
STATEMENT OF FACTS ............................................................................................................... 2
ARGUMENT .................................................................................................................................... 2
I.    Crystallex Provides No Valid Reason to Reconsider the Stay Order .................................... 2
II.   There Is No Reason to Condition the Stay on Truncated Supreme Court Proceedings .......... 8
CONCLUSION ................................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Arrowood Indem. Co. v. Hartford Fire Ins. Co.*,
   802 F. Supp. 2d 536 (D. Del. 2011) ........................................................................... 2, 3

*Aurelius Capital Partners, LP v. Republic of Argentina*,
   584 F.3d 120 (2d Cir. 2009) .......................................................................................... 6

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   932 F.3d 126 (3d Cir. 2019) .......................................................................................... 6

*Export-Import Bank of the Republic of China v. Grenada*,
   768 F.3d 75 (2d Cir. 2014) ............................................................................................ 6

*QVC, Inc. v. Your Vitamins, Inc.*,
   2010 WL 4919061 (D. Del. Nov. 29, 2010) ................................................................. 2

*Schering Corp. v. Amgen, Inc.*,
   25 F. Supp. 2d 293 (D. Del. 1998) ................................................................................ 2

*Waters v. People's Republic of China*,
   672 F. Supp. 2d 573 (S.D.N.Y. 2009) .......................................................................... 6

**Statutes, Regulations, and Court Rules**

28 U.S.C. § 2101(c) ............................................................................................................ 8

Executive Order 13808, 82 Fed. Reg. 41,155, § 1(a)(iv) (Aug. 29, 2017) ........................ 6

Fed. R. Civ. P. 69(a) .......................................................................................................... 6

Del. Super. Ct. Civ. R. 5(aa)(2) ......................................................................................... 7

Del. Super. Ct. Civ. R. 7.1.5(a) ......................................................................................... 2

**Other Authorities**

OFAC, Frequently Asked Questions No. 808, https://bit.ly/2rK3gaE .................... 3, 4, 6

OFAC, Frequently Asked Questions No. 809, https://bit.ly/2rK3gaE ....................... 4, 5

Supreme Court of the United States, *Case Distribution Schedule—October Term 2019*,
   https://www.supremecourt.gov/casedistribution/casedistributionschedule2019.pdf ................. 8

# NATURE AND STAGE OF THE PROCEEDINGS

In its Memorandum Order dated December 12, 2019, this Court determined that all further proceedings in this case should be stayed until the conclusion of Supreme Court review. The Court's detailed decision reflected the need "to carefully balance the many competing interests in a dynamic and internationally sensitive set of circumstances." D.I. 154 ("Order") at 8. The Court also specifically considered Crystallex's argument that PDVH should be required to answer the writ of attachment, and rejected that argument in the "reasonable and appropriate exercise of its discretion." *Id.* at 9 n.13.

# SUMMARY OF ARGUMENT

1. Crystallex asks the Court to revisit a decision that it issued less than a month ago. Yet Crystallex ignores nearly all of the Court's careful analysis, and identifies no new factual development or legal argument not previously considered. Rather, Crystallex merely reasserts—without any support—that it will be unable to apply for an OFAC license until PDVH answers the writ. Crystallex's request is wrong as a matter of OFAC practice; contradicts OFAC's recent guidance; and would set this Court on a collision-course with Delaware law. The request should be rejected again.

2. Crystallex also seeks to impose on the Republic and PDVSA a compressed schedule for seeking Supreme Court review. Asserting an interest in avoiding delay, Crystallex effectively asks this Court to shorten the deadline for petitions for certiorari from the 90 days provided by statute to 61 days—a number that appears to have been plucked from thin air. But truncating the timeline for submission of the petition for Supreme Court review would serve no legitimate purpose in light of the Supreme Court's annual decisional calendar; no unreasonable delay will arise from the standard timeline; and, the Republic and PDVSA assure this Court that they do not intend to seek any extension that would push distribution of the petition for

consideration by the Supreme Court into the next Term. In any event, as this Court has already held, Crystallex will suffer no ongoing prejudice, having obtained service of a writ of attachment. The motion should be denied.

## STATEMENT OF FACTS

On August 9, 2018, this Court issued a writ of attachment. D.I. 78. Proceedings in this Court were stayed pending review by the Third Circuit. D.I. 132. Following completion of Third Circuit proceedings, in which the Third Circuit affirmed and remanded, this Court decided to continue to stay proceedings in this case until the conclusion of Supreme Court review. *See* Order.

## ARGUMENT

Motions for reconsideration (also known as motions for reargument) "shall be sparingly granted." Loc. Civ. R. 7.1.5(a); *see Arrowood Indem. Co. v. Hartford Fire Ins. Co.*, 802 F. Supp. 2d 536, 538 (D. Del. 2011) (Stark, J.). "These types of motions are granted only if the court has patently misunderstood a party, made a decision outside the adversarial issues presented by the parties, or made an error not of reasoning but of apprehension." *Id.* Requests for reconsideration "should be denied where the proponent simply rehashes materials and theories already briefed, argued and decided." *Schering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998); *see QVC, Inc. v. Your Vitamins, Inc.*, 2010 WL 4919061, at *1 (D. Del. Nov. 29, 2010) ("A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made.").

### I. Crystallex Provides No Valid Reason to Reconsider the Stay Order

This Court, in its December 12 order, ruled that "now is not the appropriate time to require the Republic to answer the writ." Order at 10. The Court rested that conclusion on a number of factors, including "Crystallex's lack of a license from the Office of Foreign Assets Control," the lack of prejudice to Crystallex and other creditors, and "the public's interest in furthering the

expressed foreign policy of the United States, as determined by the Executive Branch." *Id.* at 4. Crystallex offers no reason for this Court to reconsider those conclusions—it fails even to mention them—but instead "simply rehashes materials and theories already briefed, argued and decided." *Schering Corp.*, 25 F. Supp. 2d at 295. Indeed, Crystallex repeats almost verbatim the arguments it raised in the October 11 joint status report (*see* D.I. 139 at 4) and in its opposition to PDVH's motion for an extension of time to answer the writ (*see* D.I. 115 at 2-3). This Court summarily denies motions for reconsideration that merely seek second bites at the apple, *see, e.g.*, *Arrowood*, 802 F. Supp. 2d at 538, and should do the same here. In any event, Crystallex's arguments for reconsideration fail on the merits.

A. Requiring PDVH to answer the writ of attachment would be inconsistent with OFAC's sanctions regime, and in particular with new guidance published December 9, 2019.[1]

FAQ 808 explains that while "a specific license from OFAC is not ordinarily required to *initiate or continue* U.S. legal proceedings against" a blocked entity, "a specific license from OFAC *is required* for . . . the enforcement of any lien, judgment, or other order through execution, garnishment, *or other judicial process purporting to transfer or otherwise alter or affect [blocked] property or interests in [such] property*." The term "other judicial process" is defined to include "the purported creation or perfection of any legal or equitable interests (including contingent or inchoate interests) in blocked property." FAQ 808 also provides a non-exhaustive list of "measures" for which "a specific license from OFAC would be required," which include "seizing," "levying upon," "attaching," or "encumbering" the property. Requiring an answer to a writ of attachment would surely be a step toward the purported creation or perfection of an interest in the PDVH shares, and thus within the ambit of "attaching" property. While Crystallex may argue that

---

[1] Available at https://bit.ly/2rK3gaE. All emphases are added.

an answer to a writ of attachment *fi. fa.* is neither the first nor the last step necessary to create or perfect a lien, it surely is a necessary step in the enforcement process, which OFAC Guidance deems forbidden by applicable Executive Orders and Regulations promulgated thereunder, absent a specific license.

FAQ 809 addresses the question whether the holder of a writ of attachment may, absent a specific license, "prepare for and hold an auction or other sale of the shares" of a blocked entity. OFAC's unequivocal answer: "No." A specific license is required "prior to conducting an auction or other sale, including a contingent auction or other sale, *or taking other concrete steps in furtherance of an auction or sale*." Requiring an answer to a writ of attachment appears to be a "concrete step in furtherance of an auction or sale." In addition, FAQ 809 "urges caution in proceeding with any step in furtherance of measures which might alter or affect blocked property or interests in blocked property."

Crystallex does not attempt to square its proposal with OFAC's recent guidance, offering no explanation of why the answer would not be a "concrete[ ] step[ ] in furtherance of an auction or sale," contrary to FAQ 809. Indeed, *why else* would Crystallex call for PDVH to answer the writ, if not to take a "concrete step" toward its ultimate goal—the sale of shares?

Moreover, the relief requested by Crystallex would be contrary to the purposes that OFAC's guidance is designed to serve. As this Court recognized in its stay order, U.S. policy towards Venezuela is based on an intricate balance of diplomatic, political, economic, and humanitarian considerations. *See* Order at 4-7. The Executive Branch, charged by our Constitution with balancing those interests, has made clear its desire to freeze the status quo with respect to *all* blocked assets unless and until it gives specific permission for further action. FAQ 809 thus "urges

{A&B-00643049}

4

caution" before any continued proceedings that "*might* alter or affect blocked property." That would include further proceedings on the writ of attachment.

Crystallex's request for modification of the stay also ignores the important changes that *led to* FAQs 808 and 809. Crystallex obtained service of the writ of attachment before the President and the Treasury imposed comprehensive, protective sanctions on the Republic and PDVSA by issuing new Executive Orders, Regulations, and Designations. FAQs 808 and 809 must be read in light of these important changes. They reflect the Executive Branch's view that creditors such as Crystallex should not be permitted to take *further* steps such as eliciting an answer to the writ absent permission from the Executive Branch.

B. Crystallex's reasons to defy OFAC's guidance are unsound. Crystallex surmises that an answer would furnish "detail[s]" that are necessary to avoid OFAC deeming its license application "unripe or deficient." D.I. 157 at 7-8. Crystallex offers nothing to substantiate such speculation. To the contrary, OFAC grants specific licenses based on generalized descriptions of proposed transactions. For example, a U.S. person has been able to obtain a specific license to provide scholarships to a *category* of persons that includes all scholars or students from a particular nation, without identifying the recipients by name. There is no reason to expect that OFAC would find an application deficient here merely because it fails to specify shareholder dividend information.

Crystallex's argument also relies on the false premise that OFAC approval is all or nothing—that the only license Crystallex can seek is one approving "a judicial sale or auction." D.I. 157 at 7. Crystallex could just as easily seek a license to engage in intermediate steps leading up to sale, including an order directing PDVH to answer the writ. Indeed, OFAC in FAQ 809 expressly anticipates applications to take intermediate steps: it urges caution regarding "any step

in furtherance of measures which might alter or affect" blocked property and then explains that OFAC will "consider license applications *seeking to authorize such activities* on a case-by-case basis." If Crystallex believes that it can obtain a license for the ultimate sale only after PDVH answers the writ, Crystallex may seek OFAC's permission to solicit an answer.

Finally, the Court may dismiss out of hand Crystallex's assertion that it needs information about "declared shareholder dividends," D.I. 157 at 8. PDVH has been forbidden to pay dividends since August 2017, when Executive Order 13808 prohibited "[a]ll transactions related to … (iv) dividend payments or other distributions of profits to the Government of Venezuela from any entity owned or controlled, directly or indirectly, by the Government of Venezuela." Executive Order 13808, 82 Fed. Reg. 41,155, § 1(a)(iv) (Aug. 29, 2017); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 151 (3d Cir. 2019) ("Section 1(a)(iv) of E.O. 13808 bars PDVH from paying dividends or other distribution of profits to the Government of Venezuela . . . ."). And Crystallex has no right to attempt to attach dividends paid prior to service of the writ and transferred out of the United States, because "the property that is subject to attachment and execution must be 'property in the United States.'" *Aurelius Capital Partners, LP v. Republic of Argentina,* 584 F.3d 120, 130 (2d Cir. 2009); *see Export-Import Bank of the Republic of China v. Grenada*, 768 F.3d 75, 86 (2d Cir. 2014) (attachment and execution attempt moot where there was "no evidence that the … Funds remain in [the foreign sovereign's] possession in the United States"); *Waters v. People's Republic of China*, 672 F. Supp. 2d 573, 574 (S.D.N.Y. 2009).

C. Complying with Crystallex's request to modify the stay would also set up a collision with Delaware law. Crystallex asserts that answering the writ is a "purely ministerial" act (D.I. 157 at 7), but ignores the steps that necessarily *follow from* the answer. The applicable Delaware rules, which govern here pursuant to Federal Rule of Civil Procedure 69(a), provide that

"[w]ithin 10 days after service of [an] answer," a plaintiff "may serve exceptions thereto, and the proceedings on the issues thus raised shall be had as in actions commenced by summons." Del. Super. Ct. Civ. R. 5(aa)(2). Next, "[u]nless the garnishee delivers [the] property to the sheriff within 5 days after the expiration of the 10 day period for plaintiff's exceptions, if any, *the sheriff shall on the order of the court physically seize any property subject to seizure*." *Id.* (emphasis added). In addition, for any property "not seized or delivered to the sheriff, the plaintiff on motion may have *personal judgment entered against garnishee* in favor of plaintiff in an amount equal to the value of the property of defendant in garnishee's custody or possession, or the amount of the plaintiff's judgment, whichever is less, with interest and costs." *Id.* (emphasis added).

Under Delaware law, therefore, answering the writ triggers a sequence of events culminating in the seizure of property or the entry of judgment against the garnishee—actions which the Executive Branch has forbidden without a specific license. The Court should not set that clock in motion and create a series of state-law obligations that cannot be carried out without running afoul of federal law.

D. Finally, Crystallex's proposal to modify the stay simply ignores most of the considerations that underlay the Court's order. Among other things, the Court relied on: the lack of prejudice to Crystallex or other creditors; "change[s] in the Board of Directors" of PDVSA, PDVH, and CITGO, as well as "possible consequent changes in the relationship of PDVSA to the Republic"; "[t]he change in the U.S.-recognized government of Venezuela"; "[i]ssues of international affairs and United States foreign policy"; the need to avoid "a 'run on the bank'" that could interfere with "an orderly transition of power in the Republic and a coordinated restructuring of its debts"; and a desire not to worsen a "humanitarian crisis in Venezuela." Order at 5-7. Lifting the stay is unwarranted for precisely the same reasons. Especially given Crystallex's failure "even

to seek" guidance from OFAC about the most prudent way to proceed, *id.* at 5, this Court need not take the extraordinary step of reconsidering its recent order.

## II. There Is No Reason to Condition the Stay on Truncated Supreme Court Proceedings

Crystallex asks this Court to require the Republic and PDVSA to seek Supreme Court review no later than January 21—which is 61 days after the Third Circuit's order denying rehearing. Under 28 U.S.C. § 2101(c), the Republic and PDVSA's deadline for petitioning for a writ of certiorari is February 19, 2020—which is 90 days from the Third Circuit's denial of rehearing. *See* D.I. 157 at 14. That deadline can be extended up to 60 days.

Crystallex offers no particular reason for its choice of a 61-day deadline, a number that seems to have been plucked from nowhere. Crystallex states that its goal is to "ensure that the Supreme Court Justices would consider the petition in the spring of 2020, before the Supreme Court's summer recess." D.I. 157 at 17. Yet Crystallex never connects that goal to its request for a judicial order excising 29 days (and permitted extensions, if any) from the certiorari deadline.

The Supreme Court's calendar shows that Crystallex's request is baseless. Under the standard 90-day deadline, any certiorari petition would be due February 19; Crystallex's brief in opposition will be due March 20; and the Supreme Court will consider whether to grant certiorari at its April 24 Conference. That is several months before the Court's final Conference of this Term on June 25, and indeed long before the Court's penultimate Conference on June 18.[2] In addition, the Republic and PDVSA do not intend to seek an extension of more than 30 days by which to file their petition, which would make Crystallex's brief in opposition due no later than April 20—still ample time for the Court to act on the petition before its summer recess. Indeed, even if Crystallex

---

[2] *Case Distribution Schedule—October Term 2019*, https://www.supremecourt.gov/casedistribution/casedistributionschedule2019.pdf

{A&B-00643049}

8

were to *also* obtain its own 30-day extension, Crystallex's brief would be due May 19, which would *still* leave the Supreme Court ample time to consider the petition before its summer recess.

In sum, Crystallex's proposal to compress the certiorari deadline from 90 to 61 days would make no difference with respect to its stated goal of avoiding the summer recess. It would instead needlessly force a more rushed preparation of the petition, to the prejudice of the Republic and PDVSA and ultimately to the prejudice of the judicial process. The Supreme Court benefits from independent, careful preparation of the petition and opposition papers, particularly when one of the petitioners is a sovereign nation embroiled in political and humanitarian crises with critical sovereign assets at stake. *See* Order at 7.

Crystallex's other reasons for shortening the timeline are similarly meritless. Crystallex notes that participation by the U.S. Solicitor General could add further delay, but the reality is that such delay is inherent in the interagency process triggered every time the Supreme Court invites the Solicitor General to file a brief expressing the views of the United States. The Supreme Court traditionally imposes no deadline on the Solicitor General, reflecting interbranch comity—but Crystallex is free to request that the United States file its brief expeditiously, and the Solicitor General's office historically has attempted to honor such requests. Crystallex's feared delay to May 2021 is not only speculative, but dependent on the assumption that the Court would request "the Solicitor General's views *in September 2020*." D.I. 157 at 11 (emphasis added). But as explained, the standard timeline for seeking certiorari will allow the Justices to act on the petition—and call for the views of the Solicitor General—well before the current Term ends. Crystallex's own statistics show that if the Court called for the views of the Solicitor General by June, the Solicitor General would more likely file a brief by December 2020—no different than if the petition had been filed under Crystallex's proposed timeline. *See id.* Crystallex's extended

commentary (*id.* at 11-14) about the "[un]helpful[ness]" of the Solicitor General's views, and about whether the Supreme Court is likely to call for those views, is simply irrelevant. It is also wrong: This Court, in granting the stay, correctly noted that the sensitive issues of foreign relations and sovereign immunity implicated here mean that "there is a greater-than-usual likelihood that [a] petition will be granted." Order at 4.

In claiming that "ongoing prejudice" warrants a compressed timeline (D.I. 157 at 16), Crystallex again fails to mention this Court's express finding to the contrary: Because Crystallex has already obtained service of a writ of attachment *fi. fa.*, "a stay will not substantially injure . . . Crystallex and other creditors." Order at 4; *see id.* n.4 (rejecting Crystallex's argument that it "will be prejudiced severely if this case stalls").

Finally, Crystallex asks the Court to order the Republic and PDVSA not to seek any extension to the certiorari deadline. D.I. 157 at 18. The Republic and PDVSA have no interest in "delay for delay's sake," *id.*, and represent to the Court that they do not intend to seek any extension that would push consideration by the Supreme Court into the next Term. But committing to *no* extension is simply unnecessary. A 30-day extension of time by which to file the petition for certiorari would allow ample time for the Supreme Court to consider the petition during the current Term; even if Crystallex took a 30-day extension of its own, its opposition would be due May 19, which is well before the Court's final two Conferences.

# CONCLUSION

The Court should deny Crystallex's motion.

| | |
|---|---|
| Dated: January 10, 2020 | Respectfully submitted, |
| | ABRAMS BAYLISS LLP |
| O<small>F</small> C<small>OUNSEL</small>: | */s/ A. Thompson Bayliss* |
| Kent A. Yalowitz | A. Thompson Bayliss (#4379) |
| ARNOLD & PORTER | 20 Montchanin Road, Suite 200 |
| KAYE SCHOLER LLP | Wilmington, Delaware 19807 |
| 255 West 55th Street | (302) 778-1000 |
| New York, New York 10019 | bayliss@abramsbayliss.com |
| | |
| E. Whitney Debevoise II | *Attorney for Defendant Bolivarian* |
| Stephen K. Wirth | *Republic of Venezuela* |
| Samuel F. Callahan | |
| ARNOLD & PORTER | |
| KAYE SCHOLER LLP | |
| 601 Massachusetts Avenue, NW | |
| Washington, D.C. 20001 | |
| | |
| | HEYMAN ENERIO |
| | GATTUSO & HIRZEL LLP |
| O<small>F</small> C<small>OUNSEL</small>: | */s/ Samuel T. Hirzel, II* |
| Joseph D. Pizzurro | Samuel T. Hirzel, II (#4415) |
| Julia B. Mosse | 300 Delaware Avenue, Suite 200 |
| Kevin A. Meehan | Wilmington, DE 19801 |
| CURTIS, MALLET-PREVOST, | (302) 472-7300 |
| COLT & MOSLE LLP | SHirzel@hegh.law |
| 101 Park Avenue | |
| New York, NY 10178 | *Attorney for Intervenor Petróleos de* |
| (212) 696-6000 | *Venezuela, S.A.* |