**UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>              Plaintiff,<br><br>    v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>              Defendant. | C.A. No. 17-151-LPS |

**REPLY BRIEF IN FURTHER SUPPORT OF
PLAINTIFF CRYSTALLEX INTERNATIONAL CORPORATION'S
<u>MOTION TO MODIFY THE STAY</u>**

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Miguel A. Estrada
Lucas C. Townsend
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
Fax: (202) 467-0539

January 17, 2020

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Tel:  (302) 651-7700
Fax:  (302) 651-7701

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I.    Venezuela Offers No Legitimate Reason For Withholding Critical Information About The Attached Shares Needed For Crystallex's Application To OFAC For A Specific License. ............................................................................................... 2

II.    Venezuela's Bid For More Delay In The Supreme Court Should Be Rejected .................. 7

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Clinton v. Jones*,
   520 U.S. 681 (1997)...........................................................................................................1

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   760 F. App'x 1 (D.C. Cir. 2019).......................................................................................8

*Dietz v. Bouldin*,
   136 S. Ct. 1885 (2016).......................................................................................................4

*Hanna v. Plumer*,
   380 U.S. 460 (1965)...........................................................................................................5

*Hilton v. Braunskill*,
   481 U.S. 770 (1987)...........................................................................................................7

*Landis v. N. American Co.*,
   299 U.S. 248 (1936)......................................................................................................1, 5

*Link v. Wabash R. Co.*,
   370 U.S. 626 (1962)......................................................................................................4, 5

**Statutes**

50 U.S.C. § 1702(b)(3) ..............................................................................................................4

**Other Authorities**

OFAC, Frequently Asked Questions No. 808, https://www.treasury.gov/resource-
   center/faqs/sanctions/pages/faq_other.aspx (last visited Jan. 13, 2020)..........................2, 3, 4

OFAC, Frequently Asked Questions No. 809, https://www.treasury.gov/resource-
   center/faqs/sanctions/pages/faq_other.aspx (last visited Jan. 13, 2020)..........................2, 3, 4

*The Supreme Court, 2018 Term—The Statistics*, 133 Harv. L. Rev. 412 (2019) ..........................10

**Rules**

Del. Super. Ct. Civ. R. 5(aa)(2) ....................................................................................................5

Del. Super. Ct. Civ. R. 6(b)...........................................................................................................5

**INTRODUCTION**

Plaintiff Crystallex International Corporation ("Crystallex") filed the instant motion to modify the stay, submitting two proposals for minor modifications that will not undermine the Court's reasons for granting the stay, but could materially expedite the final resolution of this dispute and mitigate the prejudice to Crystallex from additional delay. These proposed modifications would not burden Defendant Bolivarian Republic of Venezuela, or its alter ego Petróleos de Venezuela S.A. ("PDVSA") (collectively, "Venezuela"), whatsoever. But Venezuela objects anyhow—consistent with its obstructionist behavior throughout these proceedings—by throwing out red herrings in the form of made-up conflicts with Executive Branch policy and Delaware law, and by ignoring the realities of the Supreme Court calendar that Crystallex explained in its motion.

Venezuela and PDVSA are not *entitled* to a stay. The power to stay is part of this Court's inherent authority to control its own docket, *see*, *e.g.*, *Landis v. N. American Co.*, 299 U.S. 248, 254 (1936)—a power that must account not only for any purported separation-of-powers considerations, but also for the plaintiff's strong interest in bringing his case to final judgment, *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997). Here, the Court should grant Crystallex's motion and modify the stay by ordering Petróleos de Venezuela Holding, Inc. ("PDVH") to answer the writ of attachment, and by conditioning the stay on Venezuela filing any petition for certiorari in the Supreme Court expeditiously. Venezuela offers no sound reason against implementing these commonsense changes to the stay, which will have the effect of providing the Executive Branch with necessary information for Crystallex's application for a license to auction the attached property, and which could prevent these proceedings from stalling in the Supreme Court for a year or more.

# ARGUMENT

**I.   Venezuela Offers No Legitimate Reason For Withholding Critical Information About The Attached Shares Needed For Crystallex's Application To OFAC For A Specific License.**

Venezuela's arguments for why PDVH should not have to answer the writ misunderstand the Office of Foreign Assets Control ("OFAC") licensing process and the relationship between this Court and the Executive Branch. OFAC's recent guidance on the creation or perfection of a judicial lien or the sale of attached property has no bearing on Crystallex's already perfected lien, and does not constrain this Court's inherent authority to order a judgment debtor to take the ministerial step of answering a writ of attachment that was served well over a year ago, long before the current sanctions regime went into effect. Nor does it require Crystallex to submit its application for a specific license before even obtaining from PDVH a basic description of the shares that would be covered by the license. Answering the writ would not burden PDVH, the government of Venezuela, or the people of Venezuela. Rather than forestall the OFAC licensing process (and reward Venezuela for ignoring the writ for 17 months), therefore, the Court should order PDVH to answer the writ so that Crystallex can provide the Executive Branch the information it would need to consider Crystallex's application for a specific license.

**A.**   This Court has already "recogniz[ed] that it has discretion to move forward in the manner Crystallex requests." (D.I. 154 at 9 n.13)  Venezuela nonetheless relies on two recent OFAC FAQs to claim that that "[r]equiring PDVH to answer the writ of attachment would be inconsistent with OFAC's sanctions regime." (D.I. 160 at 3)[1]  Neither FAQ applies here.

---

[1] *Cf.* OFAC, Frequently Asked Questions Nos. 808, 809, https://www.treasury.gov/resource-center/faqs/sanctions/pages/faq_other.aspx (last visited Jan. 13, 2020) (hereafter "OFAC FAQs").

FAQ 808 addresses the requirements "to file a suit" against Venezuela. (OFAC FAQ 808) It advises that a specific license is required to "*enforce*[e] . . . any lien, judgment, or other order" through "execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests," including the "creation or perfection of any legal or equitable interes[t]." (*Id.* (emphasis added)) But as Venezuela has conceded and this Court has recognized, Crystallex already holds a perfected lien on the PDVH shares that "'fully secure[s]'" its legal interest in that property. (D.I. 154 at 4 n.4 (citing *Crystallex Int'l Corp v. PDV Holding Inc.*, No. 1:15-cv-1082, D.I. 118 at 37 (D. Del. Nov. 17, 2019))) Answering the writ of attachment would not "alter" that lien, "affect" Crystallex's legal interest in the shares in any way, or "enforce" anything yet. Rather, it would merely communicate information about those shares so that Crystallex can submit a sufficient license application to OFAC. Indeed, OFAC's express invitation that any party who holds a writ of attachment against blocked property may apply for a license to execute on the property (*see* OFAC FAQ 809) necessarily forecloses Venezuela's argument by presupposing that such parties have the ability to prepare and submit legally sufficient applications that adequately describe the property at issue.

FAQ 809, meanwhile, merely advises that a specific license is required to "conduc[t] an auction or other sale," or take "other *concrete* steps in furtherance of an auction or sale." (OFAC FAQ 809) (emphasis added). Venezuela would read this guidance so broadly as to sweep in steps taken to aid an application to for an OFAC license, since obtaining a license advances the "ultimate goal" of the "sale of shares." (*See* D.I. 160 at 4) By that logic Crystallex could never obtain a license because even *applying* for the license advances the "ultimate goal" of a sale. At a minimum, requiring an OFAC license to obtain information needed for another license request would paralyze judgment creditors by requiring them to repeatedly go to OFAC with a never-

ending series of license requests—which is no doubt exactly Venezuela's goal here. Contrary to Venezuela's expansive and obstructionist interpretation, the FAQ is clear that OFAC had in mind activities typically involved in a *sale* of property—*e.g.*, negotiating terms with potential buyers—not any action, taken for unrelated purposes, that has an indirect effect on the Court's legal authority to conduct a sale once authorized to do so by OFAC. Any other reading would turn the qualifier "concrete" into mere surplusage.

Venezuela's interpretation of FAQ 809 would stretch OFAC's guidance beyond the scope of its authority. Irrespective of any order from the Executive Branch, this Court has "inherent powers . . . 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). That includes the power to order litigants to file briefs or responses in furtherance of such litigation, such as an answer to a writ of attachment. OFAC's recent guidance carefully guards this line between Executive and Judicial authority by making clear that no license is needed to "continue U.S. legal proceedings." OFAC FAQ 808. Enforcing the express directions of this Court's valid writ, which PDVH has been ignoring for 17 months, is exactly the kind of continuation of legal proceedings that OFAC expressly permits.

Further, OFAC lacks authority to prohibit the transfer of *information* in the first place. Under the Berman Amendment to the International Emergency Economic Powers Act, "[t]he authority granted to the President by this section does not include the authority to regulate or prohibit, directly or indirectly . . . the importation from any country, or the exportation to any country, whether commercial or otherwise, regardless of format or medium of transmission, of any information or informational materials." 50 U.S.C. § 1702(b)(3). In other words, OFAC has

4

no statutory authority to restrict the transfer of information about the PDVH shares to Crystallex. Such information is simply not a good or service covered by OFAC's restrictions.

Venezuela counters that answering the writ would "set up a collision with Delaware law" by triggering a supposedly unstoppable cascade of subsequent state-law deadlines. (D.I. 160 at 6 (citing Del. Super. Ct. Civ. R. 5(aa)(2))) But Delaware law already required PDVH to answer the writ of attachment 20 days after it was served—a requirement Venezuela has been ignoring for 17 months. And there is nothing stopping this Court from ordering PDVH to take the next incremental step of responding to the writ while staying any subsequent steps that conflict with OFAC's guidance. In fact, the next state-court Rule after the one cited by Venezuela expressly allows a court to "enlarg[e]" the time for claiming where appropriate. Del. Super. Ct. Civ. R. 6(b). And, of course, aside from this Court's authority under *Landis* and *Wabash*, the Federal Rules of Civil Procedure govern procedural matters in federal court. *See Hanna v. Plumer*, 380 U.S. 460, 473-74 (1965).

**B.** Far from "interfering" with OFAC's requirements, requiring PDVH to answer the writ would advance OFAC's regime by supplying Crystallex and OFAC with the information needed to prepare and consider an application for a specific license—without which, OFAC's ability to carry out its policy goals by granting specific licenses would be considerably frustrated.

Venezuela says it is "speculati[ve]" that OFAC would deny Crystallex's license application if Crystallex cannot provide complete information. (D.I. 160 at 5) Venezuela would therefore have Crystallex submit an incomplete application and hope for the best—while Venezuela enjoys the resulting delay—instead of securing information that PDVH is already required by law to provide and that at a minimum would strengthen Crystallex's application. While that approach would surely advance Venezuela's goal of stretching the application process

5

out as long as possible, the better course is to give Crystallex the information it needs to get its application right the first time.

Venezuela's sole support for its own speculation that Crystallex could obtain a license without more information comes from a single case (without citation) in which OFAC allegedly granted a specific license to allow scholarships for a category of persons without identifying the individual recipients by name. (D.I. 160 at 5) But even in Venezuela's unsubstantiated example—which is obviously inapposite—OFAC would have needed information about the scholarships, such as the amount(s) of money potentially available, the geographic, institutional, or subject-matter limitations or purposes for the scholarships, and a sufficient description of the category of potential beneficiaries. Similarly here, Crystallex needs complete information about the nature of the PDVSA property in PDVH's possession in order for Crystallex to accurately describe to OFAC what would be sold at any auction. What matters for present purposes is not the "identit[y]" of the ultimate recipient of the property—the names of the scholars in Venezuela's example, or the final purchaser at auction here—but whether the OFAC-applicant and OFAC itself have a full and accurate description of the *property* that is the subject of the license application. Crystallex lacks that information; PDVH has it and can easily provide it; and including it will advance Crystallex's application.

Venezuela dismisses the need for information about declared dividends—part of the property interests that may be part of Crystallex's application—because the *payment* of dividends has been blocked property since August 2017. (D.I. 160 at 6) But that restriction gives no assurance that Venezuela did not *declare* dividends during that time—nor does Venezuela deny having done so. (*See id.*) It is possible that dividends had been declared but unpaid at the time the writ of attachment was served. Indeed, there may have been technical

6

reasons for the Maduro regime to have PDVH declare dividends even if the money could not immediately be exported from the United States at the time such dividends were declared.  Either way, any restrictions on PDVH paying dividends have absolutely no bearing on whether PDVH can and should be ordered to provide information about such dividends.  And if no such declared dividends exist, it will be no trouble for PDVH to say so in answer to the writ.

        **C.**      Beyond seeking to delay the licensing process, Venezuela never articulates any legitimate interest in stopping PDVH from answering the writ.  Most critically, Venezuela does not dispute that PDVH could easily answer the writ if ordered to do.  (*See* D.I. 160 at 2-8)  Indeed, any burden on PDVH from furnishing information regarding its shares would be negligible:  It may provide a simple description of its shares based on information already in its possession.  The ministerial act of providing this information has no bearing on the international "considerations" that Venezuela puts forth as a straw-man defense.  (*Cf.* D.I. 160 at 7)  Venezuela never explains, for example, how answering the writ could conceivably "worsen a 'humanitarian crisis in Venezuela.'"  (*See id.*)  What Venezuela really means is that it should be protected from paying the undisputedly valid judgment against it—an argument the Third Circuit already rejected.  In any event, merely requiring PDVH to answer the writ will not move one penny from Venezuela or in any way impede the current use of its assets.  Venezuela accordingly cannot remotely show the sort of "irreparabl[e] injur[y]" needed to justify this aspect of the stay.  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

**II.**    **Venezuela's Bid For More Delay In The Supreme Court Should Be Rejected.**

        Venezuela has a documented history of seeking litigation delay at every turn, and any suggestion that it might mend its ways in the Supreme Court must be viewed with skepticism.  It routinely seeks to extend virtually every court deadline, including its deadline to respond to the instant motion.  Its lawyers were even sanctioned by the D.C. Circuit for filing a "misleading and

7

meritless" motion to delay the oral argument in the arbitration appeal. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 760 F. App'x 1, 3 (D.C. Cir. 2019). Venezuela resorts to these procedural tactics because its substantive legal position is untenable, as every judge and arbitrator to date has agreed. An unconditional stay would only invite more delay tactics of this sort in the Supreme Court. While Venezuela's extended briefing schedule for this motion may now make it impractical to hold Venezuela to the expedited timeline for filing its petition for certiorari that Crystallex originally proposed in its motion, this Court should at least condition the ongoing stay on Venezuela not seeking an extension of the certiorari deadline.[2]

In claiming Crystallex has failed to justify this request, Venezuela gets the analysis backwards. Venezuela is the proponent of the stay, in addition to being the losing party, and it is therefore Venezuela's burden to show that it is entitled to an unconditional stay. Because Venezuela has no *right* to this relief, this Court, of course, has ample discretion to place conditions on that stay.[3] Crystallex has shown that an eminently reasonable condition is to require that Venezuela must proceed with dispatch in the Supreme Court, and Venezuela can meet that condition easily.

Venezuela does not deny that if the briefing scenario described in Crystallex's motion materializes, it is quite likely that Venezuela's certiorari petition will not be considered by the Justices until the Fall of 2020. Instead, Venezuela offers only dubious assurances that it will not

---

[2] While no longer relevant in light of Venezuela's extended briefing schedule, Venezuela is wrong that the 61-day period Crystallex originally proposed was "plucked from thin air." (D.I. 160 at 1) That period is two-thirds of the normal 90-day period within which to seek certiorari, plus an extra day to avoid ending on a Monday holiday (Martin Luther King, Jr. Day).

[3] Other courts have recently rejected Venezuela and PDVSA's impassioned pleas for litigation stays. *See, e.g.*, *Red Tree Invs., LLC v. Petróleos de Venezuela S.A.*, No. 1:19-cv-2523, Dkt. No. 58 at 6 (S.D.N.Y. Jan. 14, 2020); *OI European Grp. B.V. v. Bolivarian Republic of Venezuela*, 1:16-cv-1533, Dkt. No. 101 at 8 (D.D.C. Nov. 1, 2019).

seek *too much* delay.  For example, it artfully states that Venezuela and PDVSA "do not intend to seek an extension of more than 30 days by which to file their petition."  (D.I. 160 at 8)  But—as is typical of Venezuela's dilatory practices and constantly changing positions opportunistically—that is already a significant departure from Venezuela's position several weeks ago, during the parties' meet-and-confer on this motion, when Venezuela's counsel flatly represented that "[w]e do not anticipate seeking an extension of the certiorari deadline." (Declaration of Travis S. Hunter, Ex. 1)  If Crystallex's motion is not granted, Venezuela's intentions assuredly will change again, and it is likely that Venezuela and PDVSA will seek a full 60-day extension of their certiorari deadline.

*Any* extension of Venezuela's certiorari deadline would be unreasonable, and it is telling that Venezuela offers no justification for the 30-day extension that it currently anticipates seeking.  Venezuela has had since July 29, 2019, when the Third Circuit panel issued its opinion, to prepare its arguments for a certiorari petition.  It cannot raise new issues before the Supreme Court, and every issue that it could raise has now been thoroughly briefed and argued before multiple courts.  Filing the petition on the current deadline of February 19, 2020 would give Venezuela 205 days—more than half a year—from the panel decision to prepare and file a certiorari petition.  That certainly is not "rushed preparation" (D.I. 160 at 9), especially for Venezuela's able Supreme Court counsel.

Venezuela does not deny (and thus tacitly admits) that it will implore the Supreme Court to call for the views of the Solicitor General, an event that could trigger a protracted period of waiting with "no deadline." (D.I. 160 at 9)  Nor does Venezuela deny that this could easily prolong the proceedings on the certiorari petition for more than a year.  (D.E. 157 at 11) Venezuela insists that the Solicitor General's views will be helpful to the Supreme Court in light

of this Court's observation that there may be some "greater-than-usual likelihood" of the Supreme Court granting review. (D.I. 160 at 10) But considering that approximately 1% of petitions for certiorari are granted (or less than 5% for paid cases),[4] that there may be some "greater-than-usual likelihood" of a grant in this case says nothing about the helpfulness of the Solicitor General's views—especially on arguments advanced by Venezuela that have been rejected by every judge or arbitrator to date.

Finally, Venezuela attempts to minimize the ongoing prejudice faced by Crystallex and its creditors, who have been mired in insolvency proceedings for nearly a decade while trying to recover the assets that Venezuela blatantly stole from them. Any further delay in Crystallex's ability to recover on its affirmed judgment against Venezuela exacerbates this prejudice. By contrast, Venezuela is an adjudged expropriator and an adjudged judgment-evader. Venezuela does not have a record of acting in good faith in this case or in others, and its empty assurances of benign intentions should be viewed with skepticism.

## CONCLUSION

Crystallex respectfully requests that the Court modify the stay (i) to require PDVH to answer the writ of attachment promptly, and (ii) to condition the stay on Venezuela and PDVSA filing their certiorari petition on an expedited basis or, at a minimum, on not seeking an extension of the certiorari deadline.

---

[4] *The Supreme Court, 2018 Term—The Statistics*, 133 Harv. L. Rev. 412, 420 Table II(B) (2019).

|  |  |
|---|---|
| OF COUNSEL:<br><br>Robert L. Weigel<br>Jason W. Myatt<br>Rahim Moloo<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York 10166<br>Tel: (212) 351-4000<br>Fax: (212) 351-4035<br><br>Miguel A. Estrada<br>Lucas C. Townsend<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C. 20036<br>Tel: (202) 955-8500<br>Fax: (202) 467-0539<br><br>Dated: January 17, 2020 | */s/Travis S. Hunter*<br>Raymond J. DiCamillo (#3188)<br>Jeffrey L. Moyer (#3309)<br>Travis S. Hunter (#5350)<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware  19801<br>Tel:  (302) 651-7700<br>Fax:   (302) 651-7701<br><br>*Attorneys for Plaintiff* |