## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-mc-00151-LPS |
| | ) | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

### MEMORANDUM IN SUPPORT OF PETRÓLEOS DE VENEZUELA, S.A., PDV HOLDING, INC., AND CITGO PETROLEUM CORPORATION'S MOTION TO QUASH THE WRIT OF ATTACHMENT

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Nathan P. Eimer
Lisa S. Meyer
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com

Dated: June 17, 2020

Kenneth J. Nachbar (#2067)
Alexandra M. Cumings (#6146)
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@mnat.com
ACumings@mnat.com

*Attorneys for PDV Holding, Inc., and CITGO Petroleum Corporation*

Additional Counsel listed on signature page

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................1

PROCEDURAL BACKGROUND.......................................................................................4

ARGUMENT .......................................................................................................................7

   I.   The Writ Must Be Quashed Because, Under Delaware Law, Crystallex Cannot Attach
PDVSA's Shares in PDVH to Satisfy a Judgment Against Venezuela Without Showing
Fraud ......................................................................................................................... 7

      A.  Fed. R. Civ. P. 69 authorizes attachment of the PDVH shares only if—and
only to the extent—permitted by state law ................................................. 7

      B.  Delaware does not permit Crystallex to attach PDVH shares owned by PDVSA
without a showing of fraud, and Crystallex has not shown fraud................................. 9

      C.  This Court's alter ego determination under *Bancec* is not sufficient to
satisfy the Delaware standard ...................................................... 13

  II.  The Writ of Attachment Must Be Quashed Because PDVH Does Not Possess
the Physical Certificate Representing the PDVH Shares, or Any Other Attachable
Property, Owned by PDVSA ............................................................ 14

      A.  Delaware law requires physical seizure of stock certificates to effect the
attachment of certificated shares.................................................... 14

      B.  Because PDVH does not possess PDVSA's share certificates, the writ must
be quashed.................................................................... 17

CONCLUSION....................................................................................................................18

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alliance Data Sys. Corp. v. Blackstone Capital Partners V L.P.*,
  963 A.2d 746 (Del. Ch. 2009) .................................................... 11

*Arriba Ltd. v. Petroleos Mexicanos*,
  962 F.2d 528 (5th Cir. 1992) ...................................................... 7

*Avallone v. State/Dep't of Health & Soc. Servs.*,
  *(DHHS)*, 14 A.3d 566 (Del. 2011) ............................................ 16

*Bank of U.S. v. Asia Pulp & Paper Co.*,
  609 F.3d 111 (2d Cir. 2010) ........................................................ 8

*Barnhill v. Johnson*,
  503 U.S. 393 (1992) ..................................................................... 8

*Bd. of Adjustment of Sussex Cty. v. Verleysen*,
  36 A.3d 326 (Del. 2012) ............................................................ 16

*Bramble Transp., Inc. v. Sam Senter Sales, Inc.*,
  294 A.2d 97 (Del. Super. Ct. 1971) .......................................... 17

*Breech v. Hughes Tool Co.*,
  189 A.2d 428 (Del. 1963) .......................................................... 15

*Buechner v. Farbenfabriken Bayer Aktiengesellschaft*,
  151 A.2d 125 (Del. Ch. 1959) ................................................... 12

*Buechner v. Farbenfabriken Bayer Aktiengesellschaft*,
  154 A.2d 684 (Del. 1959) ............................................ 2, 10, 11, 12

*Carper v. New Castle Cty. Bd. of Ed.*,
  432 A.2d 1202 (Del. 1981) ........................................................ 16

*Castro v. ITT Corp.*,
  598 A.2d 674 (Del. Ch. 1991) ................................................... 15

*Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*,
  159 F.3d 412 (9th Cir. 1998) ....................................................... 9

*Crosse v. BCBSD, Inc.*,
  836 A.2d 492 (Del. 2003) .......................................................... 11

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  333 F. Supp. 3d 380 (D. Del. 2018) ................................... passim

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    932 F.3d 126 (3d Cir. 2019) ........................................................................... 3, 6, 7, 13

*Delaware v. New York*,
    507 U.S. 490 (1993) ................................................................................................... 8

*Dexia Credit Local v. Rogan*,
    629 F.3d 612 (7th Cir. 2010) ................................................................................... 9

*Elgart v. Mintz*,
    199 A. 68 (N.J. Cir. Ct. 1938) ................................................................................ 17

*Exp.-Imp. Bank of the* Republic *of China v. Grenada*,
    768 F.3d 75 (2d Cir. 2014) ................................................................................... 8, 9

*Fed. Ins. Co. v. Richard I. Rubin & Co.*,
    12 F.3d 1270 (3d Cir. 1993) ................................................................................... 6

*FG Hemisphere Assocs., LLC v. République du Congo*,
    455 F.3d 575 (5th Cir. 2006) ................................................................................... 1

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983) ............................................................................................ 2, 14

*Fowler v. Dickson*,
    74 A. 601 (Del. Super. Ct. 1909) ............................................................................ 9

*Gotham v. Hallwood Realty Partners, L.P.*, No. CIV. A.,
    15754–NC, 1998 WL 832631 (Del. Ch. Nov. 10, 1998) ...................................... 10

*Harrison v. Soroof Int'l, Inc.*,
    320 F. Supp. 3d 602 (D. Del. 2018) ..................................................................... 11

*Hendricks & Lewis PLLC v. Clinton*,
    766 F.3d 991 (9th Cir. 2014) ................................................................................ 14

*Kingsland Holding, Inc. v. Bracco*, CIV. A.,
    No. 14817, 1996 WL 104257 (Del. Ch. Mar. 5, 1996) ................................. 9, 12, 13

*Mills v. State*,
    201 A.3d 1163 (Del. 2019) .................................................................................... 16

*Moreland v. Alpert*,
    124 P.3d 896 (Colo. App. 2005) ........................................................................... 17

*Pescatore v. Pan Am. World Airways, Inc.*,
    97 F.3d 1 (2d Cir. 1996) ...................................................................................... 7, 8

*Peterson v. Islamic Republic of Iran*,
    627 F.3d 1117 (9th Cir. 2010) ............................................................... 7, 8

*Peterson v. Islamic Republic of Iran*,
    876 F.3d 63 (2d Cir. 2017) ...................................................................... 8

*Republic of Argentina v. NML Capital, Ltd.*,
    573 U.S. 134 (2014) ..................................................................... 8, 9, 14

*Schreiber v. Kellogg*,
    50 F.3d 264 (3d Cir. 1995) ....................................................................... 8

*Sears, Roebuck & Co. v. Sears plc*,
    744 F. Supp. 1297 (D. Del. 1990) ........................................................... 11

*Spoturno v. Woods*,
    192 A. 689 (Del. 1937) ..................................................................... 9, 10

*Stasch v. Underwater Works, Inc.*,
    158 A.2d 809 (Del. Super. 1960) ............................................................ 17

*Walker Int'l Holdings, Ltd. v. Republic of Congo*,
    415 F.3d 413 (5th Cir. 2005) ................................................................ 7, 8

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*,
    752 A.2d 1175 (Del. Ch. 1999) ..................................................... passim

**Statutes**

6 *Del. C.* § 8-112 ...................................................................... 14, 15, 16

6 *Del. C.* § 8-112(a) ........................................................... 4, 14, 15, 17

8 *Del. C.* § 324 ................................................................................ passim

28 U.S.C. § 1606 ................................................................................ 3, 7

28 U.S.C. § 1608(d) ................................................................................ 9

28 U.S.C. §§ 1602-11 ............................................................................. 1

28 U.S.C. §§ 1609-1610 .......................................................................... 7

**Rules**

Fed. R. Civ. P. 69 .......................................................................... passim

Federal Rule of Civil Procedure 69(a) .................................................. 1, 8

iv

Rule 69(a)(1) ................................................................................................................. 9

**Other Authorities**

S.B. 311 ............................................................................................................... 15, 16

**MEMORANDUM IN SUPPORT OF PETRÓLEOS DE VENEZUELA, S.A.,
PDV HOLDING, INC., AND CITGO PETROLEUM CORPORATION'S
MOTION TO QUASH THE WRIT OF ATTACHMENT**

Petróleos de Venezuela, S.A. (PDVSA), PDV Holding, Inc. (PDVH), and CITGO

Petroleum Corporation (CITGO),[1] respectfully submit this memorandum of law in support of

their to quash the writ of attachment issued to PDVH on August 24, 2018 pursuant to Federal

Rule of Civil Procedure 69(a) and section 324 of title 8 of the Delaware Code.

## INTRODUCTION

This Court has found (and the Third Circuit affirmed) that it possesses jurisdiction over

PDVSA in this action and that the property Crystallex seeks to attach is not immune from

attachment under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-11. But a "finding

that an exception to executional immunity applies is a finding that the court has jurisdiction over

the garnishment action. This is not the same as concluding that execution is appropriate or that

writs of garnishment should issue." *FG Hemisphere Assocs., LLC v. République du Congo*, 455

F.3d 575, 595 (5th Cir. 2006). As this Court previously recognized, now that the sovereign

immunity issues have been decided, the question becomes whether Crystallex is entitled to a writ

of attachment under Delaware law. *See Crystallex Int'l Corp. v. Bolivarian Republic of*

*Venezuela*, 333 F. Supp. 3d 380, 425 (D. Del. 2018) (quoting Crystallex's statement that

"PDVSA may, of course, seek to challenge the writ on non-jurisdictional grounds by a motion to

quash brought after the writ has issued and before the Court allows the execution process to

---

[1] CITGO moved to intervene in these proceedings shortly after the Court's August 23, 2018 order, because a sale of the PDVH shares owned by PDVSA threatened to harm CITGO's interests. On December 12, 2018, the Court granted CITGO's motion to intervene, recognizing CITGO's interest as an indirect subsidiary of PDVH. D.I. 154 at 12. As the Court observed, CITGO is party "to various agreements that are secured by assets that could be impacted by the outcome" of this case, and "[c]ertain CITGO assets could be harmed by these proceedings." *Id.* PDVH is the garnishee in these proceedings, and also possesses assets and interests that could be harmed by these proceedings for similar reasons as those explained by CITGO.

commence"). For two reasons, Delaware law does not permit attachment of the shares on the record before the Court. The writ must, accordingly, be quashed.

**First,** as this Court has stated, under Federal Rule of Civil Procedure 69, "a district court has the authority to enforce a judgment by attaching property in accordance with the law of the state in which the district court sits." *Crystallex Int'l Corp.*, 333 F. Supp. 3d at 387.[2] Crystallex concedes that the Court may attach the PDVH shares in satisfaction of Crystallex's judgment against Venezuela only if Delaware law permits attachment of the shares. *See* D.I. 3-1, at 32. But, as this Court specifically held, Crystallex's judgment is against Venezuela, not PDVSA. And Delaware law does not permit a judgment creditor to attach shares of stock held by a judgment debtor's subsidiary without a showing of fraud. Indeed, the Delaware Supreme Court has squarely held in analogous circumstances that a debtor does not hold an attachable property interest in shares of stock owned by its subsidiary, and that "[a] creditor of the parent corporation may not, *in the absence of fraud*, disregard the separate existence of a subsidiary corporation and look directly to specific assets of a subsidiary for satisfaction of his claim against the parent." *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 687 (Del. 1959) (emphasis added). This Court's holding that Crystallex has not alleged or shown such fraud, *see Crystallex Int'l Corp.*, 333 F. Supp. 3d at 403-04, forecloses the availability of that remedy here.

This Court's determination that PDVSA is Venezuela's alter ego under the *Bancec* doctrine[3] for purposes of the FSIA does not obviate the need to determine whether the shares are attachable under Delaware law. The FSIA "is a specialized jurisdictional statute designed to

---

[2] Internal citations and quotation marks have been omitted from this and other quotations in the brief for the sake of readability.

[3] *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba ("Bancec")*, 462 U.S. 611 (1983).

address a specific problem—the extent to which foreign sovereigns and their instrumentalities are *immune* from suit and attachment in our courts," and the *Bancec* doctrine "is a federal common-law outgrowth of that specialized statute." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 139 (3d Cir. 2019) (emphasis added). The *Bancec* doctrine "exists specifically to enable federal courts, in certain circumstances, to disregard the corporate separateness of foreign sovereigns to avoid the unfair results from a rote application of *the immunity provisions* provided by the Sovereign Immunities Act." *Id.* (emphasis added).

But clearing the bar of immunity merely places PDVSA's property in the same position—vis à vis Crystallex—as any other property located in the United States. Crystallex still must show, pursuant to Rule 69, that state law authorizes seizure of that property to satisfy its judgment. *See* 28 U.S.C. § 1606 (providing that, when a foreign state is not protected by sovereign immunity, "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances").[4] And Delaware law permits attachment of the property of a judgment debtor's alleged alter ego (here, PDVSA) only if the judgment debtor (here, Venezuela) used the alter ego to perpetrate "fraud or similar injustice," *see Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183-84 (Del. Ch. 1999), which is not the case here.

***Second,*** even if Crystallex could attach PDVSA's shares in PDVH to satisfy its judgment against Venezuela, the attachment has failed of its purpose, because PDVH does not possess the certificate representing the PDVH shares. The writ of attachment issued to PDVH attached "all shares of stock and any other assets or rights incident to that stock ownership belonging or owing

---

[4] As Crystallex itself argued, and as this Court held, the Court's *Bancec* analysis applied only to the issues of jurisdiction and immunity, and did not shift liability on the judgment to PDVSA. *See Crystallex Int'l Corp.*, 333 F. Supp. 3d at 392.

to Petróleos de Venezuela, S.A" pursuant to 8 *Del. C.* § 324. D.I. 95, at 7. Section 324, however, requires actual physical seizure of stock certificates to effect attachment and implement a sale of certified securities, *see* 8 *Del. C.* § 324(a); 6 *Del. C.* § 8-112(a). PDVH's verified answer stated that PDVSA's shares are certificated and that PDVH does not possess the physical stock certificate.[5] D.I. 177, at 2 ¶ 7. PDVH also stated in its verified answer that it does not possess any other assets or rights incident to the shares of its stock owned by PDVSA. *Id.* Because PDVH holds no attachable property belonging to PDVSA, the writ of attachment is inoperable under Delaware law. Thus, it must be quashed.

Crystallex has sought a remedy limited to property located in Delaware available through—and subject to—the laws of that State. Its failure to satisfy those laws requires that the writ be quashed.

## PROCEDURAL BACKGROUND

This case is here on remand from the Third Circuit. On August 9, 2018, this Court denied PDVSA's motion to dismiss for lack of subject matter jurisdiction on the ground that Venezuela's lack of sovereign immunity under the FSIA could be imputed to PDVSA. *See Crystallex Int'l Corp.*, 333 F. Supp. 3d at 394 ("[I]f Crystallex meets its burden to show that the Court has subject matter jurisdiction with respect to Venezuela under Section 1605(a)(6) [of the FSIA], and if Crystallex further demonstrates that PDVSA is the alter ego of Venezuela, then Crystallex will also necessarily have established that the Court may exercise subject matter jurisdiction with respect to PDVSA as well."); *id.* at 414 ("[T]he Court finds that Crystallex has rebutted the presumption of separateness and has shown that PDVSA may be deemed the alter ego of Venezuela pursuant to the exclusive control prong of *Bancec* and its progeny. Therefore,

---

[5] As explained in PDVH's verified answer, all 1,000 shares of PDVH stock are represented by a single, physical certificate, rather than 1,000 separate certificates. D.I. 177, at 2 ¶ 7.

Crystallex has proven the applicability of an exception to PDVSA's sovereign immunity."); *id.* at 394-95 ("In addition to showing that Venezuela and PDVSA are not immune from exercise of this Court's subject matter jurisdiction, . . . , the Court must be satisfied that the specific property on which Crystallex seeks to execute—PDVSA's shares of stock in Delaware corporation PDVH—are not immune from attachment and execution under the FSIA."). While the Court found a basis to disregard the separateness of PDVSA for immunity purposes under *Bancec*'s "extensive control" prong, it rejected Crystallex's argument that it had sufficiently alleged or shown "fraud or injustice" as an alternative basis for rebutting the presumption of separateness afforded under *Bancec*. *Id.* at 403-04. The Court determined that Crystallex did "not sufficiently allege that Venezuela used PDVSA as an instrument to defraud Crystallex." *Id.* at 403. However, the Court held that the "extensive control" and "fraud or injustice" prongs were disjunctive, not conjunctive, and that satisfying one of them was enough to rebut the presumption of separateness for purposes of the FSIA. *Id.* at 397.

Based on that opinion, the Court denied PDVSA's motion to dismiss and granted Crystallex's motion for a writ of attachment. *See* D.I. 78, at 1. Two weeks later, on August 23, 2018, this Court issued a follow-on order for the issuance of the writ of attachment. D.I. 95. The writ was served on PDVH, as garnishee of PDVSA, on August 24, 2018. The writ directed PDVH to identify in a verified answer "what shares of stock and other assets or rights incident to that stock ownership belonging to or owing to PDVSA, as alter ego of Defendant and Judgment Debtor Venezuela, you currently possess." *Id.* at 7.

Because "sovereign immunity is an immunity from trial and the attendant burdens of litigation" on the merits, "and not just a defense to liability on the merits," PDVSA was entitled to an immediate appeal of this Court's denial of its immunity under the collateral order doctrine.

*Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1281 (3d Cir. 1993). Accordingly, on

August 10, 2018, PDVSA filed a notice of appeal from the district court's denial of its cross-

motion to dismiss for lack of subject matter jurisdiction under the FSIA. In an abundance of

caution, on September 24, PDVSA also filed a separate notice of appeal from this Court's

subsequent August 23, 2018 order "finally deciding that PDVSA's property . . . is not immune

from attachment and execution under the [FSIA]." *See* D.I. 80, 117.

In its opinion affirming this Court's orders and remanding for further proceedings, the

Third Circuit held that "[t]he District Court acted within its jurisdiction when it issued a writ of

attachment on PDVSA's shares of PDVH to satisfy Crystallex's judgment against Venezuela,"

and that "the PDVH shares are not immune from attachment." *Crystallex Int'l Corp.*, 932 F.3d at

152. While the court affirmed this Court's finding that PDVSA was Venezuela's alter ego under

*Bancec*, it did so only for purposes of the FSIA, holding that the *Bancec* inquiry "determine[s]

the District Court's *jurisdiction* to attach PDVSA's assets." *Id.* at 136 (emphasis added); *see also

id.* at 149 (deciding whether "the particular property at issue in the attachment action—the

PDVH stock—is . . . *immune* from attachment *under the Sovereign Immunities Act*." (emphasis

added)).[6]

The writ of attachment was served on PDVH on August 24, 2018, but this Court stayed

the case pending the conclusion of proceedings in the Third Circuit and before the Supreme

Court. After lifting the stay, this Court ordered PDVH to answer the writ, which it did on

---

[6] *See also id.* at 151-52 ("*Under the Foreign Sovereign Immunities Act*, there is a strong
presumption that a foreign sovereign and its instrumentalities are separate legal entities. But the
Supreme Court made clear in *Bancec* and *Rubin* that in extraordinary circumstances—including
where a foreign sovereign exerts dominion over the instrumentality so extensive as to be beyond
normal supervisory control—equity requires that we ignore the formal separateness of the two
entities." (emphasis added)).

June 5, 2020. PDVH's verified answer stated that there are 1,000 shares of PDVH stock, all of which are listed in the records of the corporation as owned by PDVSA. D.I. 177, at 2 ¶ 7. The answer further stated that PDVH does not possess any certificated shares of PDVH stock, there exist no declared, but unpaid dividends by PDVH to PDVSA, and PDVH does not possess any other assets or rights incident to the shares of its stock owned by PDVSA. *Id.*

## ARGUMENT

I. **The Writ Must Be Quashed Because, Under Delaware Law, Crystallex Cannot Attach PDVSA's Shares in PDVH to Satisfy a Judgment Against Venezuela Without Showing Fraud**

A.  *Fed. R. Civ. P. 69 authorizes attachment of the PDVH shares only if—and only to the extent—permitted by state law*

The Foreign Sovereign Immunities Act "sets forth the sole and exclusive standards to be used to resolve all sovereign immunity issues raised in federal and state courts." *See Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 532 (5th Cir. 1992). But it "does not create an independent cause of action," *Walker Int'l Holdings, Ltd. v. Republic of Congo*, 415 F.3d 413, 416 (5th Cir. 2005), and it "does not provide methods for the enforcement of judgments against foreign states, only that those judgments may not be enforced by resort to immune property." *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1130 (9th Cir. 2010) (citing 28 U.S.C. §§ 1609-1610). Instead, the FSIA "simply provides a defense to claims raised against a sovereign and a federal forum for the resolution of such claims." *Walker Int'l Holdings, Ltd.*, 415 F.3d at 416; *see also* 28 U.S.C. § 1606 (providing that, when a foreign state is not protected by sovereign immunity, "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances"); *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 12 (2d Cir. 1996) (explaining that the FSIA "operates as a 'pass-through' to state law principles").

Thus, as this Court has recognized, *see Crystallex Int'l Corp.*, 333 F. Supp. 3d at 387-88, in attachment actions involving foreign states, federal courts apply Federal Rule of Civil Procedure 69(a), which authorizes execution upon "property in accordance with the law of the state in which the district court sits," to the extent a federal statute does not apply. *Crystallex Int'l Corp.*, 333 F. Supp. 3d at 387 (quoting *Peterson v. Islamic Republic of Iran*, 876 F.3d 63, 89 (2d Cir. 2017)); *see also Schreiber v. Kellogg*, 50 F.3d 264, 267 (3d Cir. 1995) ("Under Rule 69(a) of the Federal Rules of Civil Procedure, a federal court must follow relevant state law in a proceeding to execute on a judgment, unless a federal statute dictates otherwise. Because no applicable federal statute exists here, we look to Pennsylvania law to determine whether Schreiber may execute on Kellogg's interest in the Wanamaker trust.").[7]

And the statutory immunity provisions of the FSIA do not displace Rule 69(a)'s command to apply state law. Indeed, as the Supreme Court explained in applying Rule 69(a)'s discovery provisions in a post-judgment proceeding against Argentina, the FSIA does not "specif[y] a different rule when the judgment debtor is a foreign state." *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 140 (2014); *see also Walker Int'l Holdings, Ltd.*, 415 F.3d at 416 (explaining that state law applies to "the underlying garnishment proceeding" against foreign state property); *Peterson*, 627 F.3d at 1130 (applying California law in an enforcement proceeding against a foreign state); *Exp.-Imp. Bank of the Republic of China v. Grenada*, 768

---

[7] This rule accords with the longstanding principle, central to our federal system, that ownership interests in property are traditionally created under, and defined by, state law. *See, e.g.*, *Delaware v. New York*, 507 U.S. 490, 502 (1993); *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, 609 F.3d 111, 117 (2d Cir. 2010) ("In the absence of a superseding federal statute or regulation, state law generally governs the nature of any interests in or rights to property that an entity may have." (citing *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992))).

F.3d 75, 87 (2d Cir. 2014) ("look[ing] to New York law to determine what property might be attachable in execution of" a judgment against a foreign state under Rule 69).[8]

As Crystallex recognizes, therefore, its ability to satisfy its judgment against Venezuela by executing upon PDVSA's shares in PDVH depends on a showing that the execution is authorized under Delaware law. *See* D.I. 3-1, at 34 (quoting *Kingsland Holding, Inc. v. Bracco*, CIV. A. No. 14817, 1996 WL 104257, at *7 (Del. Ch. Mar. 5, 1996)); *see also, e.g.*, *Dexia Credit Local v. Rogan*, 629 F.3d 612, 622-23 (7th Cir. 2010) (looking to whether the law of the forum state permitted a judgment creditor to reach assets of a debtor that are in the hands of third parties under an alter ego veil-piercing theory); *Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 421 (9th Cir. 1998) (applying forum-state law in Rule 69 proceeding against alleged alter-ego judgment debtor). Crystallex has not made—and cannot make—that showing.

> **B.**     *Delaware does not permit Crystallex to attach PDVH shares owned by PDVSA without a showing of fraud, and Crystallex has not shown fraud*

At common law, shares of stock in a corporation were not subject to attachment or execution. *See Spoturno v. Woods*, 192 A. 689, 694 (Del. 1937); *Fowler v. Dickson*, 74 A. 601, 604 (Del. Super. Ct. 1909). To provide for the attachment of corporate stock, Delaware enacted what is now section 324 of title 8. *See Spoturno*, 192 A. at 694. "The statute, as amended, broadens the scope of the writ of attachment by enlarging the classes of property upon which the

---

[8] In *Republic of Argentina v. NML Capital, Ltd.*, the Supreme Court rejected the argument that the FSIA "trumps the federal rules, since Rule 69(a)(1) states that 'a federal statute governs to the extent it applies.'" 573 U.S. 134, 143 n.3 (2014). According to the Court, "since the Act does not contain implicit discovery-immunity protections, it does not 'apply' (in the relevant sense) at all." *Id.* Likewise, the FSIA does not contain any explicit or implicit provisions precluding application of Rule 69(a)(1)'s command governing execution. *See id.* at 143 ("Elsewhere, it is clear when the Act's provisions specifically applicable to suits against sovereigns displace their general federal-rule counterparts." (citing 28 U.S.C. § 1608(d)).

purely legal remedy of attachment may operate." *Id.* at 692. Thus, attachment of the PDVH shares is authorized only pursuant to—and only to the extent permitted by—this statute.

Section 324 provides, "The shares of any person in any corporation with all the rights thereto belonging, . . . or such person's right or interest in the shares, may be attached . . . *if such person appears on the books of the corporation to hold or own such shares, option, right or interest.*" 8 *Del. C.* § 324(a) (emphasis added). Crystallex possesses a judgment against the Bolivarian Republic of Venezuela. *See* D.I. 1. But Venezuela does not appear on PDVH's books to hold or own any shares, rights, or interests in any PDVH shares. The record owner of 100% of PDVH's shares, as listed on the books of the corporation, is PDVSA. And Crystallex does not hold a judgment against PDVSA.

To be sure, Venezuela is the sole shareholder of PDVSA. D.I. 28-1, at 22. But, as the Supreme Court of Delaware has explained, a stockholder in a corporation—even the sole stockholder—does not own the corporation's property and possesses no direct interest in that property. *Buechner*, 154 A.2d at 686-87. "The shareholder's essential right is to share in the profits and in the distribution of assets on liquidation. He has no interest of any specific assets of the corporation. The corporation is an entity, distinct from its stockholders even if the subsidiary's stock is wholly owned by one person or corporation." *Id.*

In attempting to nevertheless execute on PDVSA's property, Crystallex alleges that PDVSA is Venezuela's alter ego. *See* D.I. 2, at 1. Delaware, however, has an "established policy of respecting the legal fiction of the business entity," *Gotham v. Hallwood Realty Partners, L.P.*, No. CIV. A. 15754–NC, 1998 WL 832631, at *5 (Del. Ch. Nov. 10, 1998), and "[p]ersuading a Delaware court to disregard the corporate entity is a difficult task." *Wallace*, 752 A.2d at 1183. Indeed, Delaware "respects corporate formalities, absent a basis for veil-piercing, recognizing

that the wealth-generating potential of corporate and other limited liability entities would be stymied if it did otherwise." *Alliance Data Sys. Corp. v. Blackstone Capital Partners V L.P.*, 963 A.2d 746, 769 (Del. Ch. 2009) ("This allows parents to engage in risky endeavors precisely because the parents can cabin the amount of risk they are undertaking by using distinct entities to carry out certain activities.").

Because of this policy, "[i]n addition to the requirement that the two companies operate as a single entity," to pierce the corporate veil under an alter ego theory, "Delaware law also requires that the corporate structure cause fraud or similar injustice." *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 614 (D. Del. 2018); *see also Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003) ("To state a 'veil-piercing claim,' the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created *a sham entity designed to defraud investors and creditors*." (emphasis added)); *Wallace*, 752 A.2d at 1184 ("Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud."). Moreover, "the alleged fraud or inequity must be distinct from the . . . underlying cause of action," as "[t]o hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping." *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990).

Thus, under Delaware law, "[a] creditor of the parent corporation may not, in the absence of *fraud*, disregard the separate existence of a subsidiary corporation and look directly to specific assets of a subsidiary for satisfaction of his claim against the parent." *Buechner*, 154 A.2d at 687 (emphasis added). As this Court has already found, *see Crystallex Int'l Corp.*, 333 F. Supp. 3d at 403-04, Crystallex cannot meet that standard.

In *Buechner*, the plaintiff attempted to compel the appearance of Bayer, a German corporation, by seizing the shares of a Delaware corporation owned by Bayer's Canadian subsidiary. *Buechner*, 154 A.2d at 686. The Court of Chancery vacated the seizure. *See id.* at 687. According to the Court of Chancery, selling the stock "to satisfy plaintiff's demand against defendant" would "utter[ly] disregard . . . the existence of distinct corporate entities, each with its own obligations, pecuniary and otherwise." *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 151 A.2d 125, 126 (Del. Ch. 1959), *aff'd*, 154 A.2d 684 (Del. 1959). Explaining the rationale for Delaware's insistence on a showing of fraud, the Vice Chancellor stated: "[C]reditors of [the] subsidiary, may look to such corporation's assets for the payment of their claims assured that in the absence of fraud no part of such assets will be applied to payment of claims asserted against the parent corporation." *Id.* The Supreme Court of Delaware affirmed, holding that the plaintiff's failure to show fraud doomed its attempt to seek satisfaction on its claim against the parent out of Delaware stock owned by the subsidiary. *See Buechner*, 154 A.2d at 687.

*Kingsland Holdings, Inc. v. Bracco*, the case relied on by Crystallex in its motion for a writ of attachment, D.I. 3-1 at 34-35, is also instructive. In *Kingsland*, a Panamanian corporation sought to enforce a foreign judgment against an Italian corporation by seizing the shares of three Delaware corporations owned by the judgment debtor's Netherlands subsidiary. Civ. A. No. 14817, 1996 WL 104257, at *1, 4 (Del. Ch. Mar. 5, 1996). Recognizing that, under *Buechner*, it could not "decide to disregard the existence of a subsidiary corporation and look directly to the specific assets of a subsidiary for the satisfaction of [a] claim against the parent" absent "fraud, or the like," the Court of Chancery nevertheless permitted the claim to survive past the pleadings stage. *Id.* at *7. The court did so, however, only because it found that the

12

plaintiff had "supported its allegation of fraud, or the like, with sufficient particularity to establish a prima facie case that statutory seizure is proper in this instance." *Id*.

Here, unlike in *Kingsland*, Crystallex did not allege fraud with particularity and has presented no evidence that could support a claim of fraud at any relevant time period. *Crystallex Int'l Corp.*, 333 F. Supp. 3d at 403 (holding that "Crystallex's allegations fail because they do not sufficiently allege that Venezuela used PDVSA as an instrument to defraud Crystallex" and that Crystallex "has not 'show[n] that the Republic abused PDVSA's corporate form to perpetrate a fraud or injustice resulting in harm to Crystallex'"). Accordingly, neither the plain language of 8 *Del. C.* § 324 nor the fraud exception to the *Buechner* principle permit Crystallex to attach PDVSA's shares in PDVH. The writ must be quashed.

C.    *This Court's alter ego determination under* Bancec *is not sufficient to satisfy the Delaware standard*

Nor can Crystallex rely on this Court's finding that Crystallex "has rebutted the presumption of separateness" between Venezuela and PDVSA for jurisdictional and sovereign immunity purposes. In making that determination, this Court held that PDVSA could be considered Venezuela's "alter ego" under the "extensive control" prong of *Bancec*. *See Crystallex Int'l Corp.*, 333 F. Supp. 3d at 414. But, as this Court and the Third Circuit have held, jurisdiction under the FSIA can be established on an extensive control theory without any showing of fraud or similar injustice. *Crystallex Int'l Corp.*, 932 F.3d at 140, 142; *Crystallex Int'l Corp.*, 333 F. Supp. 3d at 397.

Under Delaware law, by contrast, PDVSA's property cannot be attached to satisfy its owner's debts merely because PDVSA was found to be Venezuela's alter ego under the FSIA by virtue of the extensive control Venezuela exercised over it. Instead, as explained above,

13

Crystallex must *also* show that "the corporate structure cause[d] fraud or similar injustice." *Wallace*, 752 A.2d at 1183-84.[9]

This Court already found that Crystallex cannot show "fraud or similar injustice." *See Crystallex Int'l Corp.*, 333 F. Supp. 3d at 403-04 ("Everything Crystallex alleges that Venezuela did to harm Crystallex could have been done—and, indeed, was alleged to have been done—by Venezuela itself, regardless of whether PDVSA even existed. . . . Nor does Crystallex allege in anything other than an insufficient, conclusory manner that PDVSA was created and/or is being maintained by Venezuela for the purpose of defrauding Crystallex and other creditors."). That finding is dispositive here.

**II.    The Writ Must Be Quashed Because PDVH Does Not Possess the Physical Certificate Representing the PDVH Shares, or Any Other Attachable Property, Owned by PDVSA**

   *A.  Delaware law requires physical seizure of stock certificates to effect the attachment of certificated shares*

Even if Delaware law did permit Crystallex to attach PDVSA's property to satisfy its judgment against Venezuela, PDVH's verified answer demonstrates that it does not possess any property belonging to PDVSA attachable under Delaware law. Crystallex sought to attach PDVSA's shares in PDVH pursuant to 8 Del C. § 324. Section 324(a) permits attachment of shares of stock in a Delaware corporation, but the statute provides that, "except as to an uncertificated security," an "attachment is not laid and no order of sale shall issue" unless 6 *Del. C.* § 8-112 has been satisfied. Section 8-112(a), in turn, dictates that "the interest of a debtor in a

---

[9] This attachment proceeding is governed by Rule 69, which requires the application of state law unless a contrary federal *statute* applies. *NML Capital, Ltd.*, 573 U.S. at 140. *Bancec*, which applied federal common law, *see* 462 U.S. at 622-23, is not a statute. *See Hendricks & Lewis PLLC v. Clinton*, 766 F.3d 991, 996 (9th Cir. 2014) ("Rule 69 requires that state law controls execution proceedings absent express statutory authority, not federal common law.").

certificated security," such as those at issue here, "may be reached by a creditor only by *actual seizure of the security certificate by the officer making the attachment or levy*." (emphasis added). Delaware law therefore requires physical seizure of certificated shares of stock to give effect to a writ of attachment issued under section 324.

This was not always the case under Delaware law. Historically, Delaware operated as an outlier among the states, departing from the Uniform Commercial Code's default requirement that attachment of shares of certificated stock requires seizure of the actual certificates. *See Breech v. Hughes Tool Co.*, 189 A.2d 428, 431 (Del. 1963); *Castro v. ITT Corp.*, 598 A.2d 674, 682 (Del. Ch. 1991).

But that changed in 1998, when section 324(a) was amended to expressly require that a writ of attachment comply with the physical-seizure requirement found in section 8-112(a). Specifically, section 324(a) was amended to add a cross-reference to section 8-112 in the case of attempts (like the one here) to attach shares of a certificated security:

> Except as to an uncertificated security as defined in § 8-102 of Title 6, the attachment is not laid and no order of sale shall issue *unless § 8-112 of Title 6 has been satisfied*.

*Compare* 1998 Del. Laws Ch. 339 (S.B. 311) (emphasis added) (attached hereto as Exhibit A), *with* 8 *Del. C.* § 324 (1991 Delaware Code Archive) (attached hereto as Exhibit B).

As explained above, section 8-112(a) states that "the interest of a debtor in a certificated security may be reached by a creditor only by actual seizure of the security certificate by the officer making the attachment or levy." The 1998 amendment therefore makes clear that attachment of certificated shares of Delaware stock now requires physical seizure of the certificates. *See* 2 Del. Corp. Law & Prac. § 41.02[3] (attached hereto as Exhibit C) ("Only in the

situation of non-certificated stock does the prior procedure of attachment by notice to the issuing corporation still apply.").

The purpose of the 1998 amendment is confirmed by the contemporaneous "bill synopsis" accompanying it. The Delaware Supreme Court has explained that "the synopsis accompanying an amendment is instructive in determining the General Assembly's intent." *Avallone v. State/Dep't of Health & Soc. Servs. (DHHS)*, 14 A.3d 566, 572 (Del. 2011); *accord Bd. of Adjustment of Sussex Cty. v. Verleysen*, 36 A.3d 326, 332 (Del. 2012); *Carper v. New Castle Cty. Bd. of Ed.*, 432 A.2d 1202, 1205 (Del. 1981). Indeed, as recently as last year, the Delaware Supreme Court observed that a bill synopsis was "about as clear a statement of legislative intent as one could ask for, other than a statement to that effect in the statutory text itself." *Mills v. State*, 201 A.3d 1163, 1177 (Del. 2019).

According to the bill synopsis accompanying the 1998 amendment, "The amendments to Section 324 establish that the execution process it provides is available, . . . as to certificated securities, only upon satisfaction of the requirements of Section 8-112 of Title 6, *including presentation of the stock certificate(s)*." 1998 Del. Laws Ch. 339 (S.B. 311), Ex. A. at 13 (emphasis added). The synopsis further explains that the Legislature's goal in bringing Delaware law into conformance with the laws of other states was to "enhance the utility of a stock of a Delaware corporation as collateral," including their ability to be pledged. *See id.*[10]

---

[10] As a secondary source widely viewed as providing authoritative interpretations of Delaware law explains, if a good faith purchaser or pledgee to whom certificated shares have been transferred or pledged would be at risk of losing those shares due to an attachment and auction of the certificated shares without physical seizure, certificated securities from Delaware corporations would be insecure collateral, discouraging their use in financial transactions to the detriment of Delaware corporations and to Delaware's effort to provide a reliable and attractive forum for incorporation. *See* 2 Del. Corp. Law & Prac. § 41.02[3], Ex. C.

B.  *Because PDVH does not possess PDVSA's share certificates, the writ must be quashed*

Under Delaware law, the absence of attachable property warrants quashing a writ of attachment. *See Bramble Transp., Inc. v. Sam Senter Sales, Inc.*, 294 A.2d 97, 100 (Del. Super. Ct. 1971), *aff'd*, 294 A.2d 104 (Del. 1972) (quashing writ of foreign attachment because "defendant corporation has no attachable interest in the subject of the attachment as of the date of attachment"); *Stasch v. Underwater Works, Inc.*, 158 A.2d 809, 814 (Del. Super. 1960) (quashing writ of attachment where defendant possessed "no attachable interest . . . as of the date of attachment"); *see also, e.g.*, *Moreland v. Alpert*, 124 P.3d 896, 899-902 (Colo. App. 2005) (affirming order quashing writ of attachment for failure to physically seize certificates of stock under Colorado's analogue to 6 *Del. C.* § 8-112(a)); *Elgart v. Mintz*, 199 A. 68, 69 (N.J. Cir. Ct. 1938) ("[A]s no seizure or surrender of the certificate was made, there was nothing on which the writ could rest by way of attachment or levy. In such a circumstance, it would appear to follow that it should be quashed.").

Under the 1998 amendment to section 324(a), to effect an attachment of certificated shares of stock in a Delaware corporation, the physical certificates must be seized. Yet, as set forth in PDVH's verified answer, PDVH's shares are certificated, and PDVH is not in possession of the physical certificate representing the shares. D.I. 177 at 2 ¶ 7. As a result, this Court's attachment "is not laid." 8 *Del. C.* § 324(a). Nor does PDVH possess any other assets or rights incident to PDVSA's ownership of PDVH stock. D.I. 177 at 2 ¶ 7. The Court's writ of attachment has been answered, but it is unable to attach any assets (much less serve as the basis for a sale). Therefore, it must be quashed.

**CONCLUSION**

For the foregoing reasons, PDVSA, PDVH, and CITGO respectfully request that the

Court grant their motion and quash the writ of attachment.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Nathan P. Eimer
Lisa S. Meyer
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com

/s/ Kenneth J. Nachbar
Kenneth J. Nachbar (#2067)
Alexandra M. Cumings (#6146)
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@mnat.com
ACumings@mnat.com

*Attorneys for PDV Holding, Inc., and
CITGO Petroleum Corporation*

HEYMAN ENERIO GATTUSO & HIRZEL LLP

/s/ Samuel Taylor Hirzel, II
Samuel Taylor Hirzel, II  (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law

*Attorney for Petróleos de Venezuela, S.A.*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2020, the foregoing was electronically filed with the

Clerk of the Court, via the ECF system. Service of that filing was made by operation of the

United States District Court for the District of Delaware's electronic filing system to ECF-

registered counsel.

*/s/ Kenneth J. Nachbar*
Kenneth J. Nachbar (#2067)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@mnat.com

1