# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CRYSTALLEX INTERNATIONAL
CORPORATION,

|        | Plaintiff, |
| ------ | ---------- |

v.

BOLIVARIAN REPUBLIC OF
VENEZUELA,

|        | Defendant. |
| ------ | ---------- |

C.A. No. 17-mc-00151-LPS

## CRYSTALLEX'S CONSOLIDATED OPPOSITION TO
## MOTION FOR RELIEF UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b) AND
## MOTION TO QUASH THE WRIT OF ATTACHMENT

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Miguel A. Estrada
Lucas C. Townsend
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
Fax: (202) 467-0539


Dated: July 7, 2020

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
Fax: (302) 651-7701

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

SUMMARY OF ARGUMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 3

ARGUMENT ............................................................................................................... 6

I.    The Court Should Deny Venezuela's Rule 60(b) Motion ................................... 6

    A.    Venezuela Is Not Entitled To Prospective Equitable Relief From
The Final Legal Remedy Of Attachment Under Rule 60(b)(5) ................ 7

        1.    Rule 60(b)(5) Does Not Apply Because The Writ Of
Attachment Is Not A Prospective Equitable Remedy ................... 7

        2.    Maintaining The Writ Of Attachment Is Equitable ...................... 9

    B.    Venezuela Has Not Identified Any Extraordinary Circumstance
That Justifies Relief Under Rule 60(b)(6). ............................................. 13

        1.    Venezuela's Current Relationship With PDVSA Does Not
Affect The Attachment ............................................................... 13

        2.    The OFAC Sanctions Regime Does Not Affect The
Attachment .................................................................................. 16

        3.    Conditions In Venezuela Do Not Affect The Attachment .......... 19

II.    The Court Should Deny PDVSA, PDVH, And CITGO's Motion To Quash ...... 20

    A.    This Court Is Not Required To Revisit Its Alter-Ego Determination
By Applying Delaware Law ..................................................................... 21

        1.    PDVSA's Theory Is Barred By Collateral Estoppel And
The Third Circuit's Precedential Decision ................................. 21

        2.    Federal Law—Not Delaware Law—Governs PDVSA's
Relationship To Venezuela ......................................................... 24

        3.    Crystallex Has Established That PDVSA Is Venezuela's
Alter Ego Even Under The Applicable Delaware Law
Standard ...................................................................................... 27

    B.    Crystallex's Attachment of the Shares Is Valid and Enforceable ............ 27

        1.    Under Delaware Law, Crystallex Has A Valid Attachment ........ 28

2.      The PDVSA Parties Are Estopped From Challenging The Attachment ................................................................................. 32

3.      This Court Can Prevent Further Mischief by Requiring The PDVH Shares To Be Delivered To The Marshals ...................... 35

C.      PDVSA Cannot Use PDVH And CITGO To Relitigate This Case ......... 37

1.      PDVH And CITGO Lack Standing To Move To Quash The Writ .............................................................................................. 37

2.      PDVH And CITGO Are Bound By This Court's And The Third Circuit's Rulings And PDVSA's Statements, No Less Than PDVSA ............................................................................... 39

CONCLUSION ................................................................................................................. 40

# TABLE OF AUTHORITIES

Page(s)

### Cases

*Alevras v. Tacopina*,
226 F. App'x 222 (3d Cir. 2007) ...........................................................................................23

*Anchor Glass Container Corp. v. Buschmeier*,
426 F.3d 872 (7th Cir. 2005) ................................................................................................40

*Armstrong v. United States*,
364 U.S. 40 (1960)................................................................................................................18

*Arriba Ltd. v. Petroleos Mexicanos*,
962 F.2d 528 (5th Cir. 1992) ................................................................................................25

*Averbach v. Rival Mfg. Co.*,
809 F.2d 1016 (3d Cir. 1987)..................................................................................................8

*Bank of N.Y. v. Yugoimport*,
745 F.3d 599 (2d Cir. 2014)..................................................................................................25

*Bartlett v. Gen. Motors Corp.*,
127 A.2d 470 (Del. Ch. 1956)...............................................................................................36

*Bethune Plaza, Inc. v. Lumpkin*,
863 F.2d 525 (7th Cir. 1988) ................................................................................................40

*Bohus v. Beloff*,
950 F.2d 919 (3d Cir. 1991)....................................................................................................9

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988)..............................................................................................................18

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
447 F.3d 411 (5th Cir. 2006) ..........................................................................................14, 15

*Budget Blinds, Inc. v. White*,
536 F.3d 244 (3d Cir. 2008)..................................................................................................14

*Castro v. ITT Corp.*,
598 A.2d 674 (Del. Ch. 1991)...............................................................................................31

*Coltec Indus. v. Hobgood*,
280 F.3d 262 (3d Cir. 2002)....................................................................................................7

*Comfort v. Lynn Sch. Comm.*,
560 F.3d 22 (1st Cir. 2009)......................................................................................................7

*Crestwood Capital Corp. v. Andes Indus. Inc.*,
   2019 WL 6726293 (D. Ariz. Dec. 11, 2019) ........................................................26

*Crowell v. Benson*,
   285 U.S. 22 (1932) ................................................................................................19

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   244 F. Supp. 3d 100 (D.D.C. 2017) ........................................................................3

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   760 F. App'x 1 (D.C. Cir. 2019) ........................................................................3, 11

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   333 F. Supp. 3d 380 (D. Del. 2018) ...................................4, 8, 9, 16, 21, 22, 23, 26, 28, 39

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   932 F.3d 126 (3d Cir. 2019) ...............................3, 5, 6, 8, 10, 11, 12, 22, 24, 26, 27

*Crystallex Int'l Corp v. PDVSA*,
   879 F.3d 79 (3d Cir. 2018) ...................................................................................10

*Dames & Moore v. Regan*,
   453 U.S. 654 (1981) ........................................................................................18, 19

*Del. River Port Auth. v. Fraternal Order of Police*,
   290 F.3d 567 (3d Cir. 2002) ..................................................................................23

*In re Dex Media*,
   595 B.R. 19 (D. Del. 2018) ....................................................................................35

*Doe v. Holy See*,
   557 F.3d 1066 (9th Cir. 2009) ...............................................................................25

*Doe v. Urohealth Sys., Inc.*,
   216 F.3d 157 (1st Cir. 2000) ...........................................................................39, 40

*EF Operating Corp. v. Am. Bldgs.*,
   993 F.2d 1046 (3d Cir. 1993) ................................................................................32

*Energy Marine Servs., Inc. v. DB Mobility Logistics AG*,
   2016 WL 284432 (D. Del. Jan. 22, 2016) ..............................................................15

*First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda—Permanent Mission*,
   877 F.2d 189 (2d Cir. 1989) ..................................................................................25

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
   462 U.S. 611 (1983) ................................2, 3, 4, 5, 11, 14, 21, 22, 23, 24, 25, 26, 27

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
   905 F.2d 438 (D.C. Cir. 1990) ...................................................................25

*Goldberg v. Tarpey*,
   1979 WL 193426 (Del. Super. Ct. June 13, 1979) ....................................9

*Gonzalez v. Crosby*,
   545 U.S. 524 (2005).................................................................................7, 13

*Greene v. New Dana Perfumes Corp.*,
   287 B.R. 328 (D. Del. 2002) .....................................................................15

*Groden v. N&D Transp. Co.*,
   866 F.3d 22 (1st Cir. 2017).......................................................................15

*Haas v. Haas*,
   119 A.2d 358 (Del. Ch. 1955).....................................................................31

*Handler Constr., Inc. v. CoreStates Bank, N.A.*,
   633 A.2d 356 (Del. 1993) ..........................................................................37

*Harrington v. Hollingsworth*,
   1996 WL 769635 (Del. Super. Ct. Dec. 20, 1996) ....................................37

*Harrison v. Soroof Int'l, Inc.*,
   320 F. Supp. 3d 602 (D. Del. 2018).............................................................27

*Henglein v. Colt Indus. Operating Corp.*,
   260 F.3d 201 (3d Cir. 2001).................................................................21, 22

*Holmes v. Wooley*,
   792 A.2d 1018 (Del. Super. Ct. 2001) .........................................................9

*Horne v. Flores*,
   557 U.S. 433 (2009)......................................................................................8

*IFC Interconsult, AG v. Safeguard Int'l Partners*,
   438 F.3d 298 (3rd Cir. 2006) ..............................................................26, 27

*Janvey v. Libyan Inv. Auth.*,
   840 F.3d 248 (5th Cir. 2016) .....................................................................25

*In re Johnson*,
   518 F.2d 246 (10th Cir. 1975) ...................................................................39

*Kallop v. McAllister*,
   678 A.2d 526 (Del. 1996) ..........................................................................32

*Keepseagle v. Vilsack*,
118 F. Supp. 3d 98 (D.D.C. 2015) ..........................................................................9

*Kock v. Gov't of Virgin Islands*,
811 F.2d 240 (3d Cir. 1987)....................................................................................7

*Maitland v. University of Minnesota*,
43 F.3d 357 (8th Cir. 1994) ..................................................................................39

*Mars Inc. v. Nippon Conlux Kabushiki–Kaisha*,
58 F.3d 616 (Fed. Cir. 1995)................................................................................40

*Marshall v. Bd. of Educ.*,
575 F.2d 417 (3d Cir. 1978)...............................................................................7, 9

*Mayberry v. Maroney*,
558 F.2d 1159 (3d Cir. 1977)...............................................................................14

*McAllister v. Kallop*,
1995 WL 462210 (Del. Ch. July 28, 1995)...........................................................32

*Meadows v. Dominican Republic*,
817 F.2d 517 (9th Cir. 1987) ...............................................................................27

*Mergenthaler v. Triumph Mortg. Corp.*,
2018 WL 6177177 (Del. Sup. Ct. Nov. 26, 2018) ................................................37

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*,
692 F.3d 983 (9th Cir. 2012) ...............................................................................39

*Motorola Credit Corp. v. Uzan*,
561 F.3d 123 (2d Cir. 2009)..................................................................................11

*Murray v. Silberstein*,
882 F.2d 61 (3d Cir. 1989)....................................................................................35

*Nakahara v. NS 1991 American Tr.*,
718 A.2d 518 (Del. Ch. 1998)...............................................................................12

*Nat'l Org. for Women v. Operation Rescue*,
47 F.3d 667 (4th Cir. 1995) .................................................................................10

*New Hampshire v. Maine*,
532 U.S. 742 (2001)........................................................................................32, 33

*NLRB v. Deena Artware, Inc.*,
361 U.S. 398 (1960)..............................................................................................24

*Ortiz v. Pierce*,
    2014 WL 3909138 (D. Del. Aug. 11, 2014) ...................................................13

*Patriot Mfg. LLC v. Hartwig, Inc.*,
    996 F. Supp. 2d 1120 (D. Kan. 2014) .........................................................39

*Patriot Mfg. LLC v. Hartwig, Inc.*,
    613 F. App'x 753 (10th Cir. 2015) .............................................................39

*Peacock v. Thomas*,
    516 U.S. 349 (1996) ....................................................................................19

*Powers v. Ohio*,
    499 U.S. 400 (1991) ....................................................................................38

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
    324 U.S. 806 (1945) ....................................................................................10

*Republic of Argentina v. NML Capital, Ltd.*,
    573 U.S. 134 (2014) ....................................................................................13

*Republic of Iraq v. ABB AG*,
    768 F.3d 145 (2d Cir. 2014) ........................................................................10

*Rubin v. Islamic Republic of Iran*,
    138 S. Ct. 816 (2018) ..............................................................................8, 26

*Rufo v. Inmates of Suffolk Cty. Jail*,
    502 U.S. 367 (1992) ....................................................................................11

*Schreiber v. Kellogg*,
    50 F.3d 264 (3d Cir. 1995) ..........................................................................26

*Sears, Roebuck & Co. v. Sears plc*,
    744 F. Supp. 1297 (D. Del. 1990) ...............................................................15

*Shah v. United States*,
    540 F. App'x 91 (3d Cir. 2013) ...................................................................40

*Sky Cable, LLC v. DIRECTV, Inc.*,
    886 F.3d 375 (4th Cir. 2018) .......................................................................15

*Socialist Republic of Romania v. Wildenstein & Co. Inc.*,
    147 F.R.D. 62 (S.D.N.Y. 1993) ..............................................................10, 14

*Spoturno v. Woods*,
    192 A. 689 (Del. 1937) ..................................................................................8

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ................................................................39, 40

*Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,
    864 F.3d 172 (2d Cir. 2017) ..................................................................7

*Trs. of Nat'l Elevator Indus. Pension, Health Benefit and Educ. Funds v. Lutyk*,
    332 F.3d 188 (3d Cir. 2003) ................................................................15

*Twelve John Does v. Dist. of Columbia*,
    841 F.2d 1133 (D.C. Cir. 1988) ............................................................9

*Union Ins. Soc'y of Canton, Ltd. v. William Gluckin & Co.*,
    353 F.2d 946 (2d Cir. 1965) ................................................................40

*Walker Int'l Holdings, Ltd. v. Republic of Congo*,
    415 F.3d 413 (5th Cir. 2005) ..............................................................26

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................................38

*Weinstein v. Islamic Republic of Iran*,
    831 F.3d 470 (D.C. Cir. 2016) ............................................................26

*Whitman v. Am. Trucking Ass'ns*,
    531 U.S. 457 (2001) ............................................................................17

*Womack v. De Witt*,
    10 A.2d 504 (Del. Super. Ct. 1939) ....................................................37

**Statutes**

6 *Del. C.* § 8-112 ................................................................29, 30, 31, 36

6 *Del. C.* § 8-112(a) ....................................................................29, 30, 31

6 *Del. C.* § 8-112(c) ..................................................................................31

6 *Del. C.* § 8-112(d) ................................................................................31

6 *Del. C.* § 8-112(e) ................................................................................36

8 *Del. C.* § 168 ........................................................................................36

8 *Del. C.* § 169 ..........................................................28, 30, 31, 32

8 *Del. C.* § 201 ................................................................................30, 31

8 *Del. C.* § 324 ..........................................8, 9, 29, 30, 31, 36

8 *Del. C.* § 324(a)................................................................28, 29, 30, 31

8 *Del. C.* § 324(b) ........................................................................28, 29

8 *Del. C.* § 324(c) ..............................................................................36

10 *Del. C.* § 365 ................................................................................30

10 *Del. C.* § 366 ................................................................................30

10 *Del C.* § 366(a) ............................................................................30

10 *Del. C.* § 3507 ..............................................................................30

10 *Del. C.* § 5031 ...........................................................8, 9, 28, 30

28 U.S.C. § 1602 ..............................................................................13

28 U.S.C. § 1606 ..............................................................................24

28 U.S.C. § 2072(b) ............................................................................8

## Rules

Fed. R. Civ. P. 60 ................................................................................8

Fed. R. Civ. P. 60(b) ................................................1, 2, 6, 7, 8, 12, 16, 40

Fed. R. Civ. P. 60(b)(5).....................................1, 2, 7, 8, 9, 10, 11, 14

Fed. R. Civ. P. 60(b)(6)...........................................1, 2, 13, 14, 19, 20

Fed. R. Civ. P. 69 ..........................................................................3, 26

Fed. R. Civ. P. 69(a) ......................................................................26, 27

Fed. R. Civ. P. 69(a)(1)..................................................................26, 37

## Regulations and Executive Actions

31 C.F.R. § 591.201 ......................................................................16, 17

31 C.F.R. § 591.202 ............................................................................18

31 C.F.R. § 591.202(a).........................................................................18

31 C.F.R. § 591.202(b) ........................................................................18

31 C.F.R. § 591.202(c)..........................................................................16

31 C.F.R. § 591.202(d) .................................................................................................18

31 C.F.R. § 591.202(e).....................................................................................17, 18, 19

31 C.F.R. § 591.302(b) .................................................................................................18

31 C.F.R. § 591.306(b) .................................................................................................19

31 C.F.R. § 591.309 ......................................................................................................19

31 C.F.R. § 591.310 ................................................................................................16, 18

31 C.F.R. § 591.407 ................................................................................................17, 19

31 C.F.R. § 591.501 ......................................................................................................19

31 C.F.R. § 591.503 ......................................................................................................19

31 C.F.R. § 591.504 ......................................................................................................19

31 C.F.R. § 591.505 ......................................................................................................19

31 C.F.R. § 591.506 ......................................................................................................19

31 C.F.R. § 591.506(c).............................................................................................17, 18

31 C.F.R. § 591.507 ......................................................................................................19

31 C.F.R. § 591.508 ......................................................................................................19

31 C.F.R. § 591.509 ......................................................................................................19

E.O. 13692 (Mar. 11, 2015)....................................................................................16, 17

E.O. 13835 (May 21, 2018) ....................................................................................16, 17

E.O. 13850 (Nov. 1, 2018).......................................................................................16, 17

E.O. 13884 (Aug. 5, 2019).......................................................................................16, 17

E.O. 13884 § 1(a) (Aug. 5, 2019) ..................................................................................17

E.O. 13884 § 1(c) (Aug. 5, 2019) ..................................................................................17

E.O. 13884 § 6(d) (Aug. 5, 2019) ..................................................................................17

Venezuela Sanctions Regulations, 84 Fed. Reg. 64,411 (Nov. 22, 2019) .....................17

**Other Authorities**

CITGO Petroleum June 2, 2020 Offering Memo ............................................................................33

H.R. Rep. No. 94-1487 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6604 ....................................13

Folk on Delaware General Corporation Law § 169.01 (6th ed. 2019) ....................................30, 31

Folk on Delaware General Corporation Law § 201.01 (6th ed. 2019) ..........................................31

Folk on Delaware General Corporation Law § 169.03 (6th ed. 2019) ..........................................36

Restatement (Second) of Judgments § 27 cmt. c (1982) ..............................................................23

Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011)........................................27

Plaintiff Crystallex International Corp. ("Crystallex") respectfully submits this memorandum of law in opposition to the Motion for Relief under Federal Rule of Civil Procedure 60(b) filed by Defendant Bolivarian Republic of Venezuela ("Venezuela"), D.I. 183, and the Motion to Quash the Writ of Attachment, filed by Intervenors Petróleos de Venezuela, S.A. ("PDVSA") and CITGO Petroleum Corp. ("CITGO"), and Garnishee PDV Holding, Inc. ("PDVH"), D.I. 178.

## NATURE AND STAGE OF THE PROCEEDINGS

In August 2018, this Court held that Venezuela so extensively controls its state-owned oil company PDVSA that PDVSA is Venezuela's alter ego, and PDVSA's common stock shares in the Delaware corporation PDVH are assets of Venezuela and subject to attachment and sale in execution of Crystallex's nearly $1 billion remaining judgment against Venezuela. The Court thus issued a writ of attachment and had it served on PDVH as required to attach the shares. PDVSA and Venezuela repeatedly assured the Court that the shares were attached, and that Crystallex 's interests were amply secured by the attachment. On the basis of those assurances, proceedings were stayed without any bond while Venezuela and PDVSA pursued appeals.

Nearly two years later, the Third Circuit has affirmed the order issuing the writ, and the Supreme Court has denied review, yet Venezuela and PDVSA still labor under the illusion that Crystallex's rights are an open question. Venezuela seeks relief under Federal Rule of Civil Procedure 60(b)(5) and (b)(6), and PDVSA, joined by its subsidiaries PDVH and CITGO, moves to quash the writ. Having long delayed PDVH's response to the writ, and only after losing in every court to which they have presented their arguments, Venezuela and PDVSA now contend that the attachment was never effective, and that the same recent events that failed to persuade the Third Circuit and the Supreme Court warrant relief now. Both motions are meritless.

## SUMMARY OF ARGUMENT

1.      Rule 60(b)(5) permits relief from a judgment where "applying it prospectively is

no longer equitable." Fed. R. Civ. P. 60(b)(5). The rule is directed to prospective equitable relief, such as consent decrees in institutional reform litigation, governing conduct that requires ongoing judicial supervision. The relief here, by contrast, is a final legal remedy that creates a lien—a property interest—in the PDVH shares. The Court already determined that the PDVH shares are subject to execution. The long delay between attachment and the eventual ordering of a sale does not make the judgment here prospective or subject to modification on equitable grounds. The alter-ego test this Court applied under *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"), did not involve an *ad hoc* equitable inquiry, and the outcome of that test cannot be altered under Rule 60—a rule of *procedure*—based on purportedly "equitable" considerations that are not relevant under the applicable federal law.

2.      Nor have any pertinent equities changed. That Juan Guaidó's interim government-in-exile claims to have normalized its relations with the limited portion of PDVSA it controls does not make it inequitable to continue an attachment based on decades of Venezuela's complete disregard of PDVSA's separate personality. Whoever speaks for Venezuela for now, Venezuela still owes Crystallex nearly $1 billion. Given Venezuela's refusal to pay a final judgment of our courts, and its history of hiding assets and dilatory tactics to evade payment, it has no equities to invoke.

3.      Venezuela's motion also fails under Rule 60(b)'s catch-all provision, 60(b)(6). Courts grant relief under that rule only where there are "extraordinary circumstances" and relief is justified under the underlying substantive law. Most malefactors claim to have seen the light and to have reformed their ways once caught; there is nothing extraordinary about a judgment debtor claiming that it is *now* behaving appropriately, *after* a court has imposed consequences for past alter-ego conduct. The claims here are even less persuasive than most, because whatever claims the Guaidó government-in-exile might make about the small part of PDVSA it controls, nothing

before the Court suggests conditions in Venezuela have actually changed in any relevant way. Treasury Department sanctions, meanwhile, did not retroactively nullify the writ of attachment, which this Court already found was authorized under the sanctions regime when issued.  And socioeconomic circumstances in Venezuela resulting from Venezuela's maladministration are not relevant to the legal standard for alter ego or issuance of the writ.

4.      PDVSA's motion to quash, meanwhile, is barred by collateral and judicial estoppel. This Court has already rejected PDVSA's argument that Delaware law supplies the relevant alter ego test and requires a showing of fraud.  And given PDVSA's repeated assurance that the shares of PDVH were attached and secure, PDVH cannot now deny that service on PDVH is adequate to attach those shares.  Nor can PDVSA avoid estoppel by enlisting its subsidiaries to join its motion. Since PDVH and CITGO's asserted interests in this litigation are entirely derived from PDVSA's, they lack standing to challenge the writ, and are bound by PDVSA's conduct for estoppel purposes.

5.      In any event, *Bancec* is clear that federal, not state, *substantive* law governs alter-ego allegations involving foreign states, notwithstanding that Federal Rule of Procedure 69 makes state law *procedures* applicable in enforcement proceedings.  This very argument was made to the Third Circuit and rejected.  And Delaware law is clear that shares of a Delaware corporation are located in Delaware and attachable by service on the corporation.

## STATEMENT OF FACTS

Twelve years after Venezuela unlawfully expropriated Crystallex's investment, four years after an arbitral tribunal awarded relief, and three years after the D.C. district court converted the award to a judgment worth more than $1.4 billion, Crystallex is still awaiting relief.  *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 132 (3d Cir. 2019).  Venezuela opposed confirmation and lost.  *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 244 F. Supp. 3d 100, 109 (D.D.C. 2017), *aff'd*, 760 F. App'x 1 (D.C. Cir. 2019) (per curiam).  Yet nearly

$1 billion of the judgment remains unsatisfied.  Crystallex's recourse, therefore, is to pursue Venezuela's assets in execution of the judgment, including the Delaware shares of PDVH.

Venezuela chose not to appear for nearly two years and instead dispatched its state-owned oil company and alter ego, PDVSA, to dispute Crystallex's right to attach the PDVH shares.  PDVSA claimed its 100% ownership interest in PDVH was not attachable to satisfy Crystallex's judgment because Venezuela and PDVSA were "presumptively . . . separate" under the federal common law test set forth in *Bancec*.  D.I. 26, at 3.  That separate legal status, PDVSA claimed, both prevented Crystallex from "establish[ing] its alter ego claim" on the merits, and defeated "subject matter jurisdiction" under the Foreign Sovereign Immunities Act ("FSIA").  *Id*. at 2.

Before this Court, the parties hotly contested both the legal standard for showing that PDVSA and Venezuela were alter egos and the application of that standard to this case.  PDVSA conceded that "federal common law" governs the alter-ego inquiry, but claimed that Delaware law "heavily influenced" the federal standard, D.I. 49, at 67:10-20, and that under Delaware law, "alter ego liability applies only . . . where the corporate form is abused to perpetrate a fraud," D.I. 26, at 16-17.  This Court disagreed, adopting Crystallex's position that under *Bancec*, Venezuela so "extensively control[led] PDVSA" that "PDVSA is Venezuela's alter ego," without the need to show "fraud or injustice."  *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 397, 399 (D. Del. 2018).  The Court based its finding on decades of Venezuela's disregard for PDVSA's separate personality under the Chávez and Maduro regimes.  *Id.* at 406-14.  The Court thus held that "PDVSA's shares in PDVH" are "property of Venezuela" and "subject to execution for payment of Venezuela's debt."  *Id*. at 385, 415.  In successive orders in August 2018, the Court denied PDVSA's motion to dismiss and ordered the writ issued against the PDVH shares.  *Id*. at 426; D.I. 95, at 2.  A U.S. Marshal served the writ on PDVH on August 24, 2018.  D.I. 96.

The appeal process stretched out for nearly two years.  Throughout that period, PDVH refused to answer the writ of attachment, and PDVSA and Venezuela sought and obtained multiple stays without any bond to prevent this Court from proceeding towards selling the PDVH shares. To justify dispensing with the bond that is ordinarily required, PDVSA and Venezuela repeatedly assured this Court and the Third Circuit that Crystallex's interests were fully secured by the attachment, so that intervening events could not prejudice Crystallex.  One week after the writ was served, for example, PDVSA advised this Court that the attachment "prohibits th[e] disposition" of the shares and "provides the same functional security as a supersedeas bond," and therefore "a bond is not necessary."  D.I. 98, at 15, 17.  More recently, PDVSA told the Court that there was "no equity" in support of lifting the stay because by virtue of the attachment Crystallex is "fully secured for whatever the value is of those assets."  D.I. 145, at 37:5-8.  This Court cited and relied on PDVSA's assurances, most recently in its December 12, 2019 order continuing the stay pending Venezuela's certiorari petition.  D.I. 154, at 4 n.4.

In March 2019, after President Trump recognized Juan Guaidó as Venezuela's interim President, Venezuela sought and obtained leave to participate in the then-pending appeal.  Venezuela claimed PDVSA was no longer its alter ego because Guaidó's newly recognized regime-in-exile had normalized its relations with PDVSA's board.  *Crystallex*, 932 F.3d at 144.  The Third Circuit rejected this argument, finding "no authority" requiring a renewed *Bancec* analysis, but acknowledged Venezuela's right, like any litigant's, to present "credible arguments"—if any existed—for "expand[ing] the record with later events."  *Id.*  The panel then affirmed this Court's alter-ego finding.  It held that "[u]nder federal common law," a "judgment creditor of a foreign sovereign may look to the sovereign's instrumentality for satisfaction when it is 'so extensively controlled by its owner that a relationship of principal and agent is created,'" and Crystallex had

made this showing here.  *Id.* at 132-33.  The panel explained that while Crystallex was not required to show "fraud," it had nonetheless shown that "'some element of unfairness would result'" from treating PDVSA as a distinct entity.  *Id.* at 145-46.  This was both because Venezuela had used PDVSA as a sham to access U.S. credit markets while feigning separateness to shield PDVSA's assets, and because PDVSA "profited directly" from Venezuela's expropriation of Crystallex's mining rights when Venezuela transferred the mine to PDVSA "for no consideration."  *Id.* at 149.

After the Supreme Court denied certiorari on May 18, 2020, this Court lifted the stay, ordered PDVH to answer the writ of attachment, and set a schedule for any motions seeking relief from the writ.  D.I. 174, at 1-2.  The Court's order echoed the Third Circuit's statement that "Venezuela owes Crystallex from a judgment that has been affirmed in our courts" and that "[a]ny outcome where Crystallex is not paid means that Venezuela has avoided its obligations."  *Id.* at 3.

## ARGUMENT

Venezuela's motion for relief under Federal Rule of Civil Procedure 60(b) and PDVSA's motion to quash the writ of attachment each seek to relitigate issues already settled by this Court, affirmed on appeal, and passed over by the Supreme Court.  But the long delay that Venezuela and PDVSA manufactured between the issuance of the writ and an execution sale is not reason to reargue the governing legal standards or to reopen the record based on purportedly changed circumstances—which are, in any event, essentially the same that Venezuela unsuccessfully urged on appeal.   PDVSA's contention that the shares were never properly attached—after repeatedly assuring this Court of the contrary—is especially audacious.  This Court should deny both motions.

## I.    The Court Should Deny Venezuela's Rule 60(b) Motion

Venezuela presents its Rule 60(b) motion as an occasion to broadly reconsider arguments it already lost and for entertaining freewheeling, *ad hoc* "equitable" arguments that it believes should prevent a sale in accordance with this Court's previous judgment.  It is neither.  Rule 60(b)

provides only "limited" grounds for relief from a final judgment. *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). None applies here, and none of the circumstances that Venezuela cites is even material to the writ or sale. Relief under Rule 60(b) is therefore unwarranted.

> **A.  Venezuela Is Not Entitled To Prospective Equitable Relief From The Final Legal Remedy Of Attachment Under Rule 60(b)(5)**

Venezuela's principal claim is that relief is warranted under Rule 60(b)(5) because "maintaining the existing writ of attachment would be inequitable." D.I. 184, at 10. But Rule 60(b)(5) does not permit this Court to revise a final *legal* judgment based on *ad hoc* equitable grounds. And even if it did, there is nothing inequitable about maintaining the writ.

> **1.  Rule 60(b)(5) Does Not Apply Because The Writ Of Attachment Is Not A Prospective Equitable Remedy**

Rule 60(b)(5) permits relief from a judgment where "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).[1] The rule addresses "the prospective effect of decrees of a court of equity," *Kock v. Gov't of Virgin Islands*, 811 F.2d 240, 244 (3d Cir. 1987), based on "the time-honored rule that a 'court of equity (may) modify an injunction in adaptation to changed conditions,'" *Marshall v. Bd. of Educ.*, 575 F.2d 417, 425 (3d Cir. 1978). A court may "modify a judgment" on equitable grounds, therefore, "only if it is 'prospective,' or executory." *Id.* "[T]he class of judgments" implicated is thus "restricted to forward-looking judgments, such as injunctions and consent decrees"—and "[e]ven then," relief is "limited . . . to injunctions and consent decrees that involve 'long-term supervision of changing conduct or conditions.'" *Comfort v. Lynn Sch. Comm.*, 560 F.3d 22, 28 (1st Cir. 2009); *see also Coltec Indus. v. Hobgood*, 280 F.3d 262, 272 (3d Cir. 2002) (distinguishing cases "involv[ing] injunctions or consent decrees regulating

---

[1] Rule 60(b)(5) also permits relief where "the judgment has been satisfied, released, or discharged" or "it is based on an earlier judgment that has been reversed or vacated." Fed. R. Civ. P. 60(b)(5). Venezuela does not rely on either of these grounds, so its citation to *Thai-Lao Lignite (Thailand) Co. v. Government of Lao People's Democratic Republic*, 864 F.3d 172 (2d Cir. 2017), which involved the second of these grounds, is inapposite. *Id.* at 175.

7

ongoing behavior"). The paradigmatic example—and the *only* case Venezuela cites granting relief on this basis—is an injunction issued in "'institutional reform litigation'" to redress ongoing constitutional violations. *Horne v. Flores*, 557 U.S. 433, 447 (2009).

Nothing about this Court's attachment order remotely meets this description. The relief here—issuance of a writ of attachment—is a "purely legal remedy," *Spoturno v. Woods*, 192 A. 689, 692 (Del. 1937), that creates a property interest (a lien) in the PDVH shares, 10 *Del. C.* § 5031; 8 *Del. C.* § 324. Venezuela cites no precedent for granting post-judgment equitable relief to eliminate a legal property interest.

Nor does Rule 60(b)(5) permit Venezuela to use general considerations of "equity" to escape a judgment awarded on grounds not applicable when the judgment was entered. Rule 60 is an exception to finality, not the rule of law. Under the Rules Enabling Act, it cannot be interpreted to "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). The Rules Advisory Committee thus made clear that "Rule 60(b) does not assume to define substantive law as to the grounds for vacating judgments." Notes of Advisory Committee on Rules, 1946 Amendment to Fed. R. Civ. P. 60. It "merely prescribes the *practice* in proceedings to obtain relief." *Id.* (emphasis added); *see also Averbach v. Rival Mfg. Co.*, 809 F.2d 1016, 1021 (3d Cir. 1987) (Rule 60 does not "affect rights claimed under the substantive law"). Here, this Court based its alter-ego finding on Venezuela's "extensive control" of PDVSA, *Crystallex*, 333 F. Supp. 3d at 399, and the Third Circuit affirmed based on five factors from *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018), *see Crystallex*, 932 F.3d at 141. Neither court relied on *ad hoc* equitable considerations. Rule 60(b)(5) cannot change the relevant legal standard.

Finally, the legal remedy of attachment is not "prospective" and subject to equitable modification simply because Venezuela casts it as a "step" towards the final legal remedy of "a

judicial sale." D.I. 184, at 11. "A 'prospective' injunction" subject to Rule 60(b)(5) is one that "envisions a restraint of future conduct, not an order to remedy past wrongs" that is merely suspended "until some subsequent date." *Marshall*, 575 F.2d at 425 n.27. "Virtually every court order causes at least some reverberations into the future, and has, in that literal sense, some prospective effect." *Twelve John Does v. Dist. of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988). "[E]ven a money judgment has continuing consequences . . . until it is satisfied." *Id.* The mere fact that a judgment "leav[es] some administrative responsibilities to be executed" therefore "does not render [it] prospective." *Keepseagle v. Vilsack*, 118 F. Supp. 3d 98, 125 (D.D.C. 2015). Here, the court has already determined that the PDVH shares are "subject to execution for payment of Venezuela's debt." *Crystallex*, 333 F. Supp. 3d at 385. The very purpose of the writ is to ensure that intervening events do *not* defeat Crystallex's established right to a sale. *See* 10 *Del. C.* § 5031; 8 *Del. C.* § 324. That the sale is yet to occur is not an occasion to reopen Crystallex's rights.[2]

### 2. Maintaining The Writ Of Attachment Is Equitable

Even if Rule 60(b)(5) applied, Venezuela has not met its "'heavy burden'" to justify relief, *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991), by showing that maintaining the writ of attachment is "no longer equitable." Fed. R. Civ. P. 60(b)(5). The equities have not changed.

Twelve years after Venezuela's brazen theft of Crystallex's mining interests, Crystallex's

---

[2] Venezuela also suggests in a footnote that "Delaware law," through a motion to quash, provides for the open-ended equitable inquiry into the "'the interests of justice'" that Venezuela now seeks. D.I. 184, at 9 n.7. But the Delaware procedure for quashing a writ of attachment is merely a mechanism to challenge "whether the writ was properly issued" in the first place. *Goldberg v. Tarpey*, 1979 WL 193426, at *1 (Del. Super. Ct. June 13, 1979). This Court has already made that determination in a binding judgment affirmed on appeal. Nor does the trial-court decision Venezuela quotes for its "interests of justice" test—*Holmes v. Wooley*, 792 A.2d 1018 (Del. Super. Ct. 2001)—support consideration of Venezuela's equitable arguments. *Holmes* cited no authority for that test, and did not apply it outside of the traditional grounds for a motion to quash. Instead, the court quashed a writ of attachment issued against a father's child support payments that was unlawful at the time it issued. *Id.* at 1024. No other reported decision or other decision available on Westlaw has cited *Holmes* for the standard for a motion to quash.

damages remain uncompensated.  Venezuela still owes Crystallex nearly $1 billion on a three-year-old judgment that has been final and unappealable for more than a year.  *See* D.I. 182, at 3 n.1.  "[T]he obligations of a foreign state are unimpaired by a change in that state's government," *Republic of Iraq v. ABB AG*, 768 F.3d 145, 164 (2d Cir. 2014), and Venezuela does not suggest otherwise.  Venezuela is "not relieved of responsibility" for its conduct "merely because it is a nation-state whose government has changed."  *Socialist Republic of Romania v. Wildenstein & Co. Inc.*, 147 F.R.D. 62, 65 (S.D.N.Y. 1993).  Whether Guaidó or Maduro is President, the Republic, like all parties, must honor our courts' judgments.  "Any outcome where Crystallex is not paid means that Venezuela has avoided its obligations."  *Crystallex*, 932 F.3d at 149.

Venezuela's continued defiance of Crystallex's judgment bars it from seeking equitable relief.  "'[H]e who comes into equity must come with clean hands,'" *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945), and Venezuela's hands are decidedly unclean.  Its "dilatory tactics" in "refusing . . . to pay . . . the money judgment" make it "undeserving . . . of equitable relief" under "Rule 60(b)(5)."  *Nat'l Org. for Women v. Operation Rescue*, 47 F.3d 667, 669 (4th Cir. 1995).  Venezuela also acted with "intent . . . to hinder creditors" in "remov[ing] assets from the United States to Venezuela where they would not be subject to execution by Venezuela's creditors"—specifically "to shield CITGO . . . from potential arbitration judgments."  *Crystallex Int'l Corp v. PDVSA*, 879 F.3d 79, 89 (3d Cir. 2018).  In this litigation, Venezuela and PDVSA have employed a well-documented array of tactics designed to evade their debt obligations and to buy time to shield assets.[3]  Indeed, they secured multiple stays by repeatedly

---

[3]  Those motions include:  (1) Venezuela's unsuccessful motion to stay execution of Crystallex's judgment pending appeal, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 1:16-cv-661 (D.D.C. June 12, 2017), ECF No. 40; (2) PDVSA's motion to continue this Court's temporary stay pending appeal, D.I. 98, which was pretermitted by the Third Circuit's stay order; (3) Venezuela's "misleading and meritless" emergency motion to stay the D.C. Circuit argument,

assuring this Court and the Third Circuit—contrary to Venezuela's current position—that Crystallex need not fear any intervening developments because Crystallex "has already obtained service of a writ of attachment." D.I. 160, at 10. Having "time and again deployed [its] lawyers to raise legal roadblocks to the enforcement of the judgment against [it]," Venezuela "now ha[s] the chutzpah to seek post-judgment, equitable relief from complying with th[at] orde[r]." *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 127-28 (2d Cir. 2009). Its "utter disregard" for Crystallex's judgment "weighs heavily against . . . relief" under "'Rule 60(b)(5).'" *Id.* at 127-29.

Venezuela's main response is not even equitable, but legal. Its claim—that Venezuela has "taken steps to ensure PDVSA's separateness from the government," D.I. 184, at 9—rests on the *legal* principle that a state-owned entity is presumed to have "separate legal status" from its parent state, *Bancec*, 462 U.S. at 628. But even if Venezuela could prove that it is *now* respecting PDVSA's separate personality, that would not make it *inequitable* to enforce an attachment based on decades of Venezuela's abuse of PDVSA's corporate form. Nothing Venezuela claims to have done to rectify its relationship with PDVSA "make[s] compliance with the [writ] substantially more onerous." *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992). Nor does it make the attachment "unworkable" or "detrimental to the public interest," or implicate any other recognized ground for modifying a prospective remedy under Rule 60(b)(5). *Id.*

To the contrary, it would defy equity and the public interest to allow Venezuela to "avoid all consequences of [its] inequitable actions" in disregarding PDVSA's corporate form by

which led to Venezuela's counsel being sanctioned, *Crystallex*, 760 F. App'x at 3; and (4) Venezuela's motion to delay oral argument in the Third Circuit, which Venezuela later abandoned, *see Crystallex*, 932 F.3d at 134-35. Other previous delay tactics have included entering into an initial settlement agreement in November 2017 that never became enforceable because Venezuela failed to make the required payments, *see* Opp. to Mot. to Intervene, at 7, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2797, Doc. 3113181878 (3d Cir. Mar. 11, 2019), and entering into a subsequent settlement agreement that Venezuela promptly breached after the Third Circuit's November 23, 2018 stay order stayed execution, *id.* at 7-8.

"attempting to undo that conduct after an adverse verdict." *Nakahara v. NS 1991 American Tr.*, 718 A.2d 518, 519, 521 (Del. Ch. 1998) (applying Delaware equivalent of Rule 60(b)). "Any acts done by [Venezuela] after judgment do not change the fact that [its] conduct was inequitable . . . at the time this case was originally under consideration." *Id*. at 521. Venezuela's purported current treatment of PDVSA cannot erase its years-long use of PDVSA as a sham to access U.S. credit markets while feigning separateness to shield assets from Venezuela's creditors. *Crystallex*, 932 F.3d at 149. Nor can it change the fact that PDVSA "profited directly" from Venezuela's expropriation of Crystallex's mining rights when Venezuela transferred the mine to PDVSA "for no consideration." *Id.* Irrespective of current circumstances, treating PDVSA as distinct from Venezuela remains "unfai[r]" for the same reasons the Third Circuit already recognized. *Id.* at 146.

Even if it were appropriate for this Court to consider Venezuela's current treatment of PDVSA (and it is not), mere speculation about PDVSA's future under the Guaidó regime—if it ever fully comes to power—cannot undo two decades of illegality. President Trump's recognition of Guaidó as Interim President of Venezuela does not ensure that Guaidó will consolidate power, much less that if he does he will be any more faithful to the rule of law than the regime he hopes to replace. Venezuela's own authorities describe the Guaidó regime's appointment of PDVSA's new "ad hoc" board as nothing more than a "transitory" arrangement, put in place "'while [Maduro's *de facto* control over Venezuela] persists,'" D.I. 187 ¶ 31, to pave the way for a supposedly "imminent process of political change," D.I. 185-1, at 1, that may never arrive. In the meantime, by Venezuela's own admission, the Maduro regime continues to dominate PDVSA within Venezuela. D.I. 184, at 4, 14. Regardless of who may *speak* for Venezuela in our courts, the supposed changes in Venezuela's behavior are much less significant than advertised.

Nor are the equities affected by the U.S. Treasury Department's statements, quoted by

Venezuela, D.I. 184, at 7, that our government seeks to "prevent further diverting of Venezuela's assets by Maduro and preserve these assets for the people of Venezuela." D.I. 190-5, at 1. Even if those statements were expressly directed at this controversy—they are not, as paying a lawfully owed judgment cannot possibly be considered "diverting . . . assets," *id.*—the FSIA abandoned the "executive-driven, factor-intensive" approach to litigation against foreign states. *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 141 (2014). Immunity is "decided by courts," 28 U.S.C. § 1602, not the "executive branch," H.R. Rep. No. 94-1487, at 7 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6604, 6606. More relevantly, this is not a debate about whether this Court should return the attached asset to the Maduro regime. The question is whether a judgment debtor can invoke "equity" generally to shield its assets from enforcement of the lawful judgments of our own courts. Venezuela—not the Maduro regime, but Venezuela—continues to owe Crystallex nearly $1 billion, and applying its assets to satisfy that undisputed debt is consistent with equity and with the Treasury Department's statements.

### B. Venezuela Has Not Identified Any Extraordinary Circumstance That Justifies Relief Under Rule 60(b)(6).

Venezuela fares no better under Rule 60(b)(6). The rule permits relief from a judgment for "any . . . reason that justifies relief." Fed. R. Civ. P. 60(b)(6). But relief is available only in "'extraordinary circumstances,'" *Gonzalez*, 545 U.S. at 535, and even then, Venezuela must still "justify relief" under the applicable *substantive law*. *See supra*, at 8. Venezuela fails to cite a single case granting relief under that standard, and the one Rule 60(b)(6) case it cites confirms that relief under that rule is "rare." *Ortiz v. Pierce*, 2014 WL 3909138, at *2 (D. Del. Aug. 11, 2014). Venezuela has identified no extraordinary circumstance that justifies that "rare relief" here. *Id.*

### 1. Venezuela's Current Relationship With PDVSA Does Not Affect The Attachment

Venezuela's after-the-fact changes to PDVSA's board no more justify relief under Rule

60(b)(6) than under 60(b)(5).  There is nothing "extraordinary"—or even legally relevant—about a judgment debtor claiming to clean up its act under new leadership *after* it has been found to have abused the corporate form of one of its most valuable assets.  Neither a "change in government" nor "a change in management" is an "extraordinary event"—both "chang[e] regularly, and to allow such an event to support a Rule 60(b)(6) motion would wholly negate the finality of judgments." *Socialist Republic of Romania*, 147 F.R.D. at 65-66.

This Court's alter-ego finding arose from Venezuela's deliberate misuse of PDVSA.  Its current motion asserts a deliberate change of course.  But "extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from [its] deliberate choices."  *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008).  If they did, no alter-ego finding would be safe from an eleventh or even twelfth hour decision to reinstate corporate formalities.  Venezuela can no more "relieve itself from [its] free, calculated and deliberate choice[s]" by "artificially creat[ing] its own 'changed circumstance,'" than a private company can escape alter-ego liability by installing new management.  *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977).

In any event, Venezuela is simply wrong in claiming—notably without citing support—that "the *present* status of the relationship between PDVSA and the government of Venezuela is what determines the continuing validity of Crystallex's right to encumber PDVSA's property." D.I. 184, at 11.  To the contrary, courts regularly look at past conduct—often years or decades past—to determine whether an alter-ego relationship exists.  In *Bancec* itself, the alter-ego determination was made in 1980, three years after a 1977 bench trial, based largely on evidence from the early 1960s; indeed, the entity "Bancec" was dissolved in 1961.  462 U.S. at 615-17.  It is therefore commonplace for an alter-ego finding to be made years after the conduct at issue, both in FSIA cases, *e.g.*, *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 414-15, 419-20 (5th

14

Cir. 2006) (finding in 2006 based on conduct and evidence from 1995 to 1997), and in other contexts, *e.g.*, *Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 390 (4th Cir. 2018) (finding in 2016, affirmed in 2018, based on evidence from 2014 and earlier); *Trs. of Nat'l Elevator Indus. Pension, Health Benefit and Educ. Funds v. Lutyk*, 332 F.3d 188, 195-99 (3d Cir. 2003) (finding in 2001, affirmed in 2003, based on evidence from 1996 to 1999, when corporation was dissolved).

Indeed, in *Groden v. N&D Transportation Co.*, the First Circuit held that a plaintiff could state a claim for alter-ego liability under ERISA by "claiming that [one company] was [another's] alter ego *when the withdrawal liability arose*," *i.e.*, "*at the pertinent times*."  866 F.3d 22, 30 (1st Cir. 2017) (emphases added).  It was "legal error" for the district court to conclude that "federal jurisdiction would be lacking even if the complaint contained the temporal allegation concerning [the employer's] alter ego status."  *Id.* at 31.  Several cases from this District are in accord.  *E.g.*, *Energy Marine Servs., Inc. v. DB Mobility Logistics AG*, 2016 WL 284432, at *3 (D. Del. Jan. 22, 2016) (whether parties were alter egos "[d]uring the relevant time frame," 2008 to 2010); *Greene v. New Dana Perfumes Corp.*, 287 B.R. 328, 343 (D. Del. 2002) (analyzing the parties' "separate corporate existence at the time in question," *i.e.*, in 1998); *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1300 (D. Del. 1990) (considering "the relevant time period" over the four years prior to the alter-ego determination).

The relevant time has passed.  PDVSA was Venezuela's alter ego when it received Crystallex's expropriated assets for no consideration, when it paid Venezuela's fees in the underlying arbitration with Crystallex, when Venezuela used it to access U.S. credit markets, when Crystallex filed its attachment motion, and when this Court ruled on that motion.   No federal or state authority provides any precedent for Venezuela and PDVSA avoiding accountability for that past conduct by changing course *after* this Court has made its dispositive alter-ego finding.

### 2.     The OFAC Sanctions Regime Does Not Affect The Attachment

There is likewise nothing extraordinary or material about any changes to the Treasury De-
partment's sanction regime since this Court issued the writ of attachment. *See* D.I. 184, at 15-19.

Since 2015, OFAC has administered sanctions against Venezuela put in place by Executive
Orders 13692 (Mar. 11, 2015), 13835 (May 21, 2018), 13850 (Nov. 1, 2018), 13884 (Aug. 5, 2019)
and others. The regulations implementing these sanctions impose licensing requirements for cer-
tain transactions with Venezuela by first "prohibit[ing]" those transactions, 31 C.F.R. § 591.201,
and then allowing OFAC to issue licenses "validat[ing]" any "transfer"—including "issuance" of
an "attachment"—at *any time*, including "after" the transfer has occurred, *id.* §§ 591.202(c), .310.

At the threshold, therefore, whatever the Court thinks of the scope of OFAC's sanctions,
they bear only on whether Crystallex needs to obtain a license from OFAC for the attachment
already issued by the Court. Even if such license were necessary, and it is not, that would not
justify undoing years of litigation before this Court, the Third Circuit, and the Supreme Court by
granting relief under Rule 60(b) or quashing the writ. Indeed, this Court has already rejected an
attempt to conflate OFAC's *licensing* requirements with an outright "'*prohibit[ion]*'" against "'the
attachment and execution of the [PDVH] shares.'" *Crystallex*, 333 F. Supp. 3d at 421. Crystallex's
ability to obtain any OFAC approvals that might be needed, the Court explained, has "'no impact'"
on whether the Court "'c[ould] or should authorize the relief sought . . . in the first instance.'" *Id.*

In any event, nothing pertinent has changed. This Court already assured itself before issu-
ing the writ of attachment that the sanction regime then in place "d[id] not pose a bar to granting"
that relief. *Crystallex*, 333 F. Supp. 3d at 421. Even Venezuela now apparently concedes that the
current writ of attachment was consistent with "the then-governing sanctions regime." D.I. 184,
at 15. Venezuela is simply wrong that any change to the sanctions regime has any "retrospectiv[e]"
effect—or any bearing whatsoever—on the validity of the current writ. *Id.* at 19.

16

The main change since August 2018 is that the scope of property blocked by the sanctions regime was expanded.  President Trump issued new Executive Orders targeting additional assets. Executive Order 13884, for example, provides that property of Venezuela, including PDVSA, is "blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in" without a license.  E.O. 13884 §§ 1(a), (c), 6(d); *see also* E.O. 13850.  But those orders say nothing about *past* transactions.  Neither did OFAC when it amended its regulations in late 2019 to include property blocked by those Executive Orders and others (*e.g.*, E.O. 13835) that were already in place but not yet subject to the regulations in August 2018.  The amendment merely added the following underlined language: "All transactions prohibited pursuant to Executive Order 13692 of March 8, 2015, or any further Executive orders issued pursuant to the national emergency declared in Executive Order 13692, are prohibited pursuant to this part."  31 C.F.R. § 591.201.  *Cf. id.* (2018).  The provision only speaks of "prohibiting" "transactions," not invalidating judicial acts that were undeniably lawful when taken.  OFAC, like Congress, would not hide such an "elephan[t]" in the "mousehole" of § .201.  *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).[4]

Nor does daisy-chaining § .201 to §§ .407, .506(c), and .202(e) change the conclusion. None addresses past transactions.  Sections .407 and .506(c) merely "prohibi[t]" certain unlicensed transactions that "alter or affect" a property interest.  31 C.F.R. §§ 591.407, .506(c).  Like § .201,

---

[4]  The only other change Venezuela cites is the addition to the regulations of § 591.407, which mainly "clarifies" that certain transactions already prohibited by § 591.506(c) require a "specific license," as opposed to a "general license."  Venezuela Sanctions Regulations, 84 Fed. Reg. 64,411, 64,416 (Nov. 22, 2019).  Section 591.506(c), which was already in place in August 2018, prohibited "enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked" by the regulations.  31 C.F.R. § 591.506(c).  Section 591.407 prohibits exactly the same transactions, verbatim, but adds that the prohibition applies "[n]otwithstanding . . . any general license."  *Id.* § 591.407.  Because this Court's August 2018 order issuing the writ was not based on any general license—and indeed, the only potentially relevant general license postdates August 2018, *see infra*, at 19—the addition of § .407 cannot conceivably be understood to nullify that order.

they do not mention past transactions or prevent *holding* blocked assets.  If anything, these provisions would *prohibit* quashing the writ, as that action would "alter or affect" Crystallex's lien on the PDVH shares, unencumbering Venezuela's property to the benefit of Venezuela.

Section .202(e) merely addresses the effect of an unauthorized transfer.  It is part of a provision that addresses, per its title, "[e]ffect of transfers violating" the regulations.  31 C.F.R. § 591.202.  It provides: "Unless licensed pursuant to this part, any attachment, judgment, decree, lien, execution, garnishment, or other judicial process is null and void with respect to any property and interests in property" blocked by the regulations.  *Id.* § 591.202(e).  This language does not purport to expand *which* transactions are prohibited; it merely specifies the consequence of violating the prohibition.  Since attaching the PDVH shares was not "blocked" under the regulation when the "judicial process" here issued, § .202(e) does not apply by its terms.  Any other reading would violate the presumption against giving "administrative rules . . . retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).[5]

A contrary reading of § .202(e) would raise serious constitutional questions and risk violating the treaty obligations of the United States.  Crystallex's "lie[n]" in the PDVH shares "constitute[s] compensable property" under the Takings Clause.  *Armstrong v. United States*, 364 U.S. 40, 44, 48 (1960).  Unlike in *Dames & Moore v. Regan*, 453 U.S. 654 (1981)—where the

---

[5]  Other provisions of § .202 confirm that subsection (e) cannot be read to apply retroactively. Subsections (a) and (b) distinguish between transfers (including attachments) that occur before and after property is blocked. 31 C.F.R. § 591.202(a)-(b); *see id.* §§ 591.302(b), .310 (defining "effective date" and "transfer").  While the latter is unenforceable without a license, the former is enforceable if the property holder can show "written notice" of the transfer.  *Id.* § 591.202(a)-(b). Subsection (d), meanwhile, offers a safe harbor for unauthorized but good-faith transactions that were based on a reasonable belief that a license was not required.  *See id.* § 591.202(d).  It would make little sense to exempt unlawful transactions that are reported upon discovery of unlawfulness, while providing no safe harbor for transactions that were lawful at the outset.  OFAC itself has acknowledged that it is possible for a person to "have attached shares of an entity whose property and interests in property are blocked pursuant to the Venezuela Sanctions Regulations."  OFAC, Frequently Asked Questions No. 809 (Dec. 9, 2019).

President blocked property *before* it was attached, then granted a "'revocable,' 'contingent,'" license for the attachment that he later revoked, *id.* at 662-63, 673-74 n.6—Venezuela acknowledges that the attachment here "was not predicated on a revocable license." D.I. 184, at 18 n.11. Nullifying that noncontingent lien without compensation would thus risk violating the Takings Clause. It would also put the United States in violation of its obligations under Article 1110 of NAFTA, which prohibits NAFTA parties from expropriating an investment of an investor absent payment of compensation, among other requirements. The Court should avoid a reading of the regulations that would render them unconstitutional and put the United States in violation of its treaty obligations. *See Crowell v. Benson*, 285 U.S. 22, 62 (1932). Principles of avoidance thus preclude a reading of § .202(e) that would vacate Crystallex's existing attachment.

Finally, even if § .202(e) could be read to operate retrospectively—and it cannot—it does not apply if the attachment was "licensed." 31 C.F.R. § 591.202(e). Here, any judicial process issued by the Clerk of this Court, and any attachment effected by service of that process by a U.S. Marshal, is protected by the general license adopted in 2019 for "official business of the United States Government" by government "employees." *Id.* § 591.509; *cf. id.* § 591.306(b) (defining "license" to include authorization under §§ 591.501-.509).[6]

### 3.   Conditions In Venezuela Do Not Affect The Attachment

Finally, Venezuela does not even attempt to argue that conditions in Venezuela "justif[y] relief" under the substantive legal standard applicable to the attachment of the PDVH shares. Fed.

---

[6] To the extent that further process is needed to complete the attachment of the PDVH shares, *but see infra*, at 27-32, §§ 591.202(e), .407, and .506 do not purport to prevent this Court from taking any steps necessary to ensure that the writ that it has already issued is effective and results in the intended attachment of the shares. A contrary holding would unduly interfere with the Court's "inherent power to enforce its judgment," including through the use of "attachment." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996). Moreover, quashing the writ on this basis would violate the sanctions regime because the writ itself meets OFAC's broad definition of property to include "future" or "contingent" interests in blocked assets. 31 C.F.R. §§ 591.309.

R. Civ. P. 60(b)(6); *see supra*, at 8.  Instead, Venezuela's invocation of a "humanitarian crisis" sparked by its own maladministration of the country's economy, D.I. 184, at 20, is a naked appeal to equities that have no bearing on the legal remedy of attachment.  No law immunizes failed or failing states from paying lawful judgments based on their dictators' misdeeds.

Venezuela's tired refrain has earned no traction in any court.  It did not persuade the Third Circuit to reverse this Court's orders, to maintain a stay of district court proceedings while rehearing petitions were pending, or to grant rehearing en banc.  *See* Venezuela Br., at 24-25, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2797, Doc. No. 3113202359 (3d Cir. Apr. 3, 2019); Response to Mot. to Lift Stay, at 6-10, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2797, Doc. No. 3113334281 (3d Cir. Aug. 29, 2019); Pet. for Panel Reh'g or Reh'g En Banc, at 16-17, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2797, Doc. No. 3113359593 (3d Cir. Sept. 26, 2019).  It failed to persuade the Supreme Court to grant certiorari.  *See* Pet'n for Certiorari, at 31-32, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 19-1049 (U.S. Feb. 19, 2020); *see also* D.I. 168, at 2-3.  Venezuela's current last-ditch effort to "'avoi[d] its obligations,'" D.I. 174, at 3, should meet the same fate as all its predecessors.

## II.     The Court Should Deny PDVSA, PDVH, And CITGO's Motion To Quash

This Court should likewise deny PDVSA and its subsidiaries' motion to quash the writ of attachment.  PDVSA argues that Delaware law required this Court to make an additional finding of fraud before treating PDVSA as Venezuela's alter ego.  But this Court already rejected that argument, holding that federal law controls and does not require fraud.  PDVSA also argues that the shares of PDVH were not successfully attached by serving PDVH.  But Venezuela and PDVSA repeatedly told this Court and the Third Circuit the opposite and secured multiple stays on that basis.  PDVSA cannot avoid the course of this litigation by enlisting its subsidiaries as proxies to join its motion to dismiss.  And in any event, its arguments fail on the merits.

## A.   This Court Is Not Required To Revisit Its Alter-Ego Determination By Applying Delaware Law

This Court already held that federal law—set forth in *Bancec*—governs alter-ego allega-

tions against foreign states and does not require a showing of fraud.  Applying *Bancec*, this Court

held that PDVSA is Venezuela's alter ego and therefore "PDVSA's shares in PDVH" are "property

of Venezuela." *Crystallex*, 333 F. Supp. 3d at 415.  These holdings, and the Third Circuit decision

affirming them, preclude PDVSA's argument that the alter-ego inquiry is governed by "Delaware

law" and required a "showing of fraud."  D.I. 179, at 2-3.  That argument also fails on the merits:

*Bancec* alone governs the alter-ego inquiry, and in any event, Crystallex already satisfied the Del-

aware standard.

### 1.   PDVSA's Theory Is Barred By Collateral Estoppel And The Third Circuit's Precedential Decision

A federal judgment precludes relitigation of an issue if:  "'(1) the identical issue was pre-

viously adjudicated; (2) the issue was actually litigated; (3) the previous determination was neces-

sary to the decision; and (4) the party being precluded from relitigating the issue was fully repre-

sented in the prior action.'" *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir.

2001).  Under this test, this Court's holdings and the decision affirming them on appeal bar PDVSA

from invoking a fraud requirement under Delaware law to deny that it is Venezuela's alter ego.

**a.**   PDVSA has invoked "Delaware corporate law" throughout this litigation to argue

that "alter ego liability applies only . . . where the corporate form is abused to perpetrate a fraud."

D.I. 26, at 16-17.  Though PDVSA conceded to this Court at oral argument that "federal common

law" governs the alter-ego inquiry, it claimed that "Delaware corporate law" "heavily influenced"

the federal standard, D.I. 49, at 67:10-20, and Crystallex could not show "the sort of fraud" re-

quired by Delaware law, D.I. 26, at 24.  According to PDVSA, two consequences followed:  (1) on

the *merits*, "Crystallex fail[ed] to establish its alter ego claim"; and (2) the "alter ego allegations

. . . likewise fail[ed]" as a "basis for the Court's subject matter jurisdiction." *Id.* at 2.

This Court rejected these arguments. It held that "federal law, not state law" governs the alter ego inquiry. *Crystallex*, 333 F. Supp. 3d at 396 n.13. The Court found PDVSA's "state-law alter ego standards," including "Delaware state law," to be "unhelpful" and "unpersuasive" because "the pertinent relationship is that between Venezuela and PDVSA, neither of which is a Delaware corporation." *Id.* at 396 n.13, 405. Instead, applying *Bancec*, the Court held that "alter ego may be shown by either extensive control 'or fraud or injustice.'" *Id.* at 397 (emphasis added, alteration omitted). Because Crystallex showed "extensive control," *id.* at 399, it was not required to show fraud. Instead, for purposes of both "[s]ubject matter jurisdiction [and] the merits," *id.* at 394 n.10, the Court held that: (1) "PDVSA is the alter ego of Venezuela," *id.* at 406; (2) "PDVSA's shares in PDVH" are "property of Venezuela," *id.* at 415; and (3) the shares are thus "subject to attachment and execution in order to satisfy Venezuela's debt to Crystallex," D.I. 95, at 1. The Third Circuit affirmed, stating that "[u]nder federal common law," a "judgment creditor of a foreign sovereign may look to the sovereign's instrumentality for satisfaction when it is 'so extensively controlled by its owner that a relationship of principal and agent is created,'" even without "satisfy[ing] an element of fraud." *Crystallex*, 932 F.3d at 132, 145.

**b.** These rulings preclude PDVSA from relitigating its claim that "Delaware law" required a "showing of fraud" to attach the PDVH shares. D.I. 179, at 2-3. PDVSA already raised that issue and lost. On that basis, the Court denied PDVSA's motion to dismiss for lack of subject-matter jurisdiction, granted Crystallex's motion for a writ of attachment, *Crystallex*, 333 F. Supp. 3d at 426, and ordered the writ to issue, D.I. 95, at 1. There is no question that PDVSA was "'fully represented'" in litigating these issues. *Henglein*, 260 F.3d at 209.

PDVSA cannot avoid preclusion by raising "new arguments . . . to obtain a different

22

determination" of "issue[s]" already decided.  *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 578 n.22 (3d Cir. 2002) (quoting Restatement (Second) of Judgments § 27 cmt. c (1982)).  "'Once an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case.'"  *Alevras v. Tacopina*, 226 F. App'x 222, 231 (3d Cir. 2007) (emphases in original, alteration omitted).  Whatever theory PDVSA now offers for applying Delaware law and requiring fraud, the bottom line—that "PDVSA is the alter ego of Venezuela," and therefore the PDVH shares are "property of Venezuela," *Crystallex*, 333 F. Supp. 3d at 406, 415, and "subject to attachment and execution," D.I. 95, at 1— is not subject to attack.  Since "Venezuela and PDVSA are not, in practice, separate entities," *Crystallex*, 333 F. Supp. 3d at 413, it cannot matter under Delaware law which name "appear[s] on PDVH's books," D.I. 179, at 10, any more than it would matter if the books listed a sole proprietorship by its owner's name.

Nor can PDVSA limit preclusion by cabining these rulings "only to the issues of jurisdiction and immunity."  D.I. 179, at 3 n.4.  PDVSA has already conceded that *Bancec* "applies equally for purposes of liability and for purposes of establishing an exception to jurisdictional immunity under the FSIA," D.I. 55, at 2, and this Court recognized no distinction between the standards applicable to "[s]ubject matter jurisdiction" and "the merits of the alter ego issue," *Crystallex*, 333 F. Supp. 3d at 394 n.10.  Instead, the Court found both issues "intertwined," *id.*, and it decided them both.  The Court not only denied PDVSA's motion to dismiss for lack of subject-matter jurisdiction; it granted Crystallex's request for the writ.  *Id*. at 426.  The Court necessarily resolved the fundamental question that PDVSA now purports to raise—"whether Crystallex is entitled to a writ of attachment," D.I. 179, at 1—because it *ordered* the issuance of that writ, D.I. 95, at 1, over PDVSA's merits argument that "Crystallex fail[ed] to establish its alter ego claim against

PDVSA," D.I. 26, at 2.  PDVSA therefore cannot relitigate the relevant issues here.

     **c.**     Independent of any preclusive effect, the Third Circuit's mandate in this case defeats PDVSA's attempt to add a fraud requirement under Delaware law.  The decision is clear that upon satisfying *Bancec*'s "'extensiv[e] contro[l]'" test, a judgment creditor "may look to [PDVSA] for satisfaction."  *Crystallex*, 932 F.3d at 132.  The court explained that "*Bancec* can . . . be used to reach the assets of a foreign sovereign's extensively controlled instrumentality through post-judgment attachment proceedings."  *Id.* at 139.  *Bancec* thus "determine[s] 'whether the [instrumentality's] assets . . . are subject to execution'" and whether "the District Court ha[s] the power to issue a writ of attachment"—not just the scope of this Court's jurisdiction.  *Id.*

     **2.**     **Federal Law—Not Delaware Law—Governs PDVSA's Relationship To Venezuela**

     Even on a blank slate, there would be no basis to invoke Delaware law.  *Bancec* held that the corporate relationship between a foreign state and its instrumentalities is governed by "principles . . . common to both international law and federal common law," not "the law of the forum State."  462 U.S. at 622 n.11, 623.  The "presumption" that courts treat foreign states and their instrumentalities as "independent"—the basis for PDVSA's claim that it is *not* Venezuela—comes from federal law, including the "legislative history of the [FSIA]."  *Id.* at 627-28.  *Bancec* likewise looked to federal law—*e.g.*, *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 399 (1960) (applying the National Labor Relations Act)—to define the grounds for overcoming that presumption.

     Indeed, *Bancec* expressly rejected the argument PDVSA makes here.  Like PDVSA, D.I. 179, at 3, 7, Cuba's subsidiary bank pointed to the FSIA's command that a "foreign state shall be liable in the same manner and to the same extent as a private individual," 28 U.S.C. § 1606.  The bank argued that this statute "require[d] application of the law of the forum State" to determine its liability for Cuba's conduct.  *Bancec*, 462 U.S. 622 n.11.  The Supreme Court disagreed.  It

held that "'the importance of developing a uniform body of law'"—so that "matters bearing on the Nation's foreign relations" are "'not . . . left to divergent and perhaps parochial state interpretations'"—"preclude[d] the application of New York law." *Id.*

Courts in multiple circuits have therefore recognized that under *Bancec*, "international law and federal common law determine when instrumentalities should not be treated as distinct from the sovereign." *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 448 (D.C. Cir. 1990). A claim to "overcom[e] the presumption that [a foreign state] instrumentality . . . is separate from the foreign state" is analyzed "with reference to federal law, not foreign law or state law," *Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 264 (5th Cir. 2016). Courts decide whether this presumption "can be overcome . . . under federal common law." *Bank of N.Y. v. Yugoimport*, 745 F.3d 599, 613 (2d Cir. 2014); *see also, e.g.*, *Doe v. Holy See*, 557 F.3d 1066, 1077 (9th Cir. 2009) (per curiam) (applying "principles 'common to both international law and federal common law'").

By contrast, PDVSA fails to cite a single case from *any court* that has analyzed the corporate relationship between a foreign state and its instrumentality under state law for *any purpose*. That failure undercuts PDVSA's attempt to distinguish the standard applicable "for jurisdictional and sovereign immunity purposes" from the standard applicable to the merits. D.I. 179, at 13. *Bancec* itself applied alter-ego principles to "substantive liability," not jurisdiction. *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 533 (5th Cir. 1992). The question was whether Citibank could bring a counterclaim against Cuba's subsidiary for Cuba's unlawful expropriation of Citibank's assets. *Bancec*, 462 U.S. at 632-33. Courts have also applied *Bancec* to "jurisdictional issues," *Arriba*, 962 F.3d at 533, but "juridical separateness" under *Bancec* "is a question of substantive law, not of subject matter jurisdiction," *First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda— Permanent Mission*, 877 F.2d 189, 194 (2d Cir. 1989). Thus even assuming *arguendo* that this

Court's prior analysis was limited to jurisdiction, there would be no reason to apply a different standard to the merits and force Crystallex to meet two separate alter-ego tests at different stages.

PDVSA claims that a different standard applies to "attachment actions" under Federal Rule of Civil Procedure 69(a).  D.I. 179, at 8.  But the Third Circuit has already rejected PDVSA's attempt "to restrain the application of *Bancec* in post-judgment proceedings." *Crystallex*, 932 F.3d at 139.  Rather than addressing the substantive standard for finding an alter-ego relationship, Rule 69(a) merely states that the law of the forum state governs that "*procedure*" in "proceedings . . . in aid of . . . execution."  Fed. R. Civ. P. 69(a)(1) (emphasis added).  By its terms, Rule 69 "incorporates only local *procedure*."  *Weinstein v. Islamic Republic of Iran*, 831 F.3d 470, 480 n.18 (D.C. Cir. 2016), *abrogated on other grounds by Rubin*, 138 S. Ct. 816.  State law thus governs procedural questions in enforcement proceedings, like which writ should be used, *see Crystallex*, 333 F. Supp. 3d at 387, the "types of property a judgment creditor may attach," *id.* at 388, the "contexts" in which alter-ego allegations may be raised, *id.* at 394, and the sale process, *id.* at 425 n.48. PDVSA's cases, for example, applied state law to determine whether creditors could reach a specific type of asset (a spendthrift trust), *Schreiber v. Kellogg*, 50 F.3d 264, 267 (3d Cir. 1995), and whether the parties should bear their own fees in garnishment proceeding, *Walker Int'l Holdings, Ltd. v. Republic of Congo*, 415 F.3d 413, 416 (5th Cir. 2005).

By contrast, Rule 69 does not address questions of "*substantive* law," which are governed by ordinary "choice of law" rules—"not . . . Rule 69."  *Crestwood Capital Corp. v. Andes Indus. Inc.*, 2019 WL 6726293, at *1 (D. Ariz. Dec. 11, 2019) (emphasis added).  While sometimes those rules may point to the forum state, they can also point elsewhere.  *IFC Interconsult, AG v. Safeguard International Partners*, 438 F.3d 298 (3rd Cir. 2006), for example, applied Delaware law to a Rule 69 garnishment proceeding in the Eastern District of Pennsylvania.  Pennsylvania

law determined whether the "garnishee" could "raise the judgment debtor's defenses as against the judgment creditor," but Delaware law governed the garnishee's "liability" to the debtor.  *Id.* at 318-20.  Like the liability question in *IFC*, the "identity . . . of a foreign state" under *Bancec* "is a matter of substantive law[,] . . . 'as opposed to procedural law,'" *Meadows v. Dominican Republic*, 817 F.2d 517, 524 (9th Cir. 1987), so Rule 69(a) does not control that inquiry.  There is thus no colorable basis to apply a different alter-ego test than the federal test Crystallex already satisfied.

### 3. Crystallex Has Established That PDVSA Is Venezuela's Alter Ego Even Under The Applicable Delaware Law Standard

Finally, even if Crystallex were required to make an alter-ego showing under Delaware law, the relevant standard would be satisfied.  While PDVSA claims Delaware's alter ego test requires a "showing of fraud," D.I. 179, at 12, its own cases are broader, extending the test at least to circumstances where "there was an element of fraud, *injustice*, or *unfairness* at play" in addition to the type of extensive control that PDVSA no longer disputes.  *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 619 (D. Del. 2018) (emphases added).  The Third Circuit already found such "unfairness" here, *Crystallex*, 932 F.3d at 146, for two independent reasons: (1) the inequity of letting Venezuela use PDVSA to access U.S. credit markets without exposing its assets to U.S. courts; and (2) because PDVSA "profited directly" from Venezuela's expropriation of Crystallex's mining rights when Venezuela transferred the mine to PDVSA "for no consideration," *id*. at 149. Such unjust enrichment is a well-recognized basis for equitable relief.  Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011).  Even under Delaware law, therefore, Crystallex has already shown that PDVSA and Venezuela are alter egos.

### B. Crystallex's Attachment of the Shares Is Valid and Enforceable

It is likewise too late to revisit this Court's power to attach the PDVH shares by service on PDVH.  PDVSA now claims the shares are not subject to attachment in Delaware.  But shares of

27

a Delaware corporation are always located in Delaware for attachment purposes.  PDVSA recognized as much in August 2018, telling the Court that "[t]he PDVH shares are located in Delaware, and they are not going anywhere" because "[t]he Writ acts as additional security for Crystallex." D.I. 98, at 6, 15.  Based on its prior representations, enforcement proceedings were stayed for more than 21 months.  PDVSA cannot change it position now.  In any event, it was right the first time.

### 1.    Under Delaware Law, Crystallex Has A Valid Attachment

The law in Delaware is that "[f]or all purposes of title, action, attachment, garnishment and jurisdiction," the "situs of the ownership of the capital stock of all corporations existing under the laws of this State . . . shall be regarded as in this State."  8 *Del. C.* § 169.  Section 169 gives Delaware courts, including this Court, jurisdiction to issue attachments and consider issues of ownership of shares in Delaware companies.  Those courts also have the power to attach shares by directing service of a writ of attachment on the issuer.  8 *Del. C.* §§ 169, 324(b).  This has long been the law of Delaware, and, contrary to PDVSA's current assertions, remains the law today.

As this Court previously explained, "Delaware law permits a judgment creditor to obtain a writ of attachment," as "set out in 10 *Del. C.* § 5031," and "the types of property a judgment creditor may attach include a debtor's shares in a Delaware corporation."  *Crystallex*, 333 F. Supp. 3d at 387-88.  Pursuant to § 5031, "[t]he plaintiff in any judgment . . . may cause an attachment, as well as any other execution," on the judgment, "containing an order for the summoning of garnishees, to be proceeded upon and returned as in cases of foreign attachment."  10 *Del. C.* § 5031. The process is straightforward.  First, Delaware Corporation Code § 324(a) provides that "[t]he shares of any person in any corporation with all the rights thereto belonging . . . may be attached under this section . . . if such person appears on the books of the corporation to hold or own such shares."  8 *Del. C.* § 324(a).  It is undisputed that PDVSA appears on the books and records of PDVH as PDVH's sole stockholder.  D.I. 177 ¶ 7.  Second, as provided by § 324(b):

28

> When attachment process issues for shares of stock . . . a certified copy of the process shall be left in this State . . . with the registered agent of the corporation. Within 20 days after service of the process, the corporation shall serve upon the plaintiff a certificate of the number of shares held or owned by the debtor . . .

8 *Del. C.* § 324(b).  Once the certificates have been delivered, a public sale may commence.  *Id.* § 324(a).  Here, however, PDVH did not deliver any certificates.  Instead, on June 5, 2020, more than 21 months after it was first served with the writ, PDVH served an answer claiming that it had no shares to deliver because the shares owned by PDVSA are purportedly held in certificated form and are not in PDVH's possession.  D.I. 177.  Coyly, the brief filed by both PDVSA and PDVH does not say where the certificates that PDVSA told the court were "located in Delaware" and "not going anywhere," D.I. 98, at 6, 15, supposedly are now located.

Contrary to its prior representations to this Court, PDVSA now argues that the writ failed to attach the shares.  PDVSA's new-found position that the shares are not subject to attachment because they are not physically held by the issuer (PDVH) is without precedent.  Rather than offer any such case, PDVSA admits that "[h]istorically," Delaware has allowed attachment by service of process on the corporation that issues the shares.  D.I. 179, at 15.  Yet, according to PDVSA, attachments—at least with respect to certificated stock—are no longer valid because Delaware purportedly changed its historical practice when it amended § 324(a) in 1998.  PDVSA's narrow interpretation of the statute is wrong.

Although it bases its argument on language added to § 324 cross-referencing § 8-112, PDVSA fails to mention, much less engage with, the Delaware legislature's decision to enact a version of the UCC that modified the model text of § 8-112 to preserve Delaware's historical power over Delaware corporations and ownership interests in those corporations.  Unlike the model code, Delaware provides a number of exceptions to § 8-112(a)'s language that "the interest of a debtor in a certificated security may be reached by a creditor only by actual seizure of the

29

security certificate by the officer making the attachment or levy."  6 *Del. C.* § 8-112(a).  Specifically, § 8-112(a) applies "[e]xcept to the extent otherwise provided or permitted by [8 *Del. C.*] §§ 169 and 324," and [10 *Del C.*] §§ 365, 366 and Chapter 35."  *Id.*

These exceptions preserve the authority to attach shares in a Delaware corporation by service upon the issuer.  Sections 169 and 324, respectively, are the statutes that make Delaware the situs of shares of a Delaware corporation for attachment purposes and provides a mechanism for attaching and executing against those shares.  *See supra*, at 28.  Sections 365 and 366, in turn, permit a Court to compel the appearance of a non-resident defendant that owns shares in a Delaware corporation by attaching those shares by service on the Delaware corporation.  10 *Del. C.* §§ 365, 366.  If the defendant fails to appear, the attached shares may be sold at auction.  *Id.* § 366(a).  The right to conduct such a sale does not depend on whether the shares are certificated. *Id.*  Similarly, Chapter 35, titled "Attachments," addresses domestic and "foreign attachment[s]" without any distinction between certificated and uncertificated shares.  *See, e.g.*, 10 *Del. C.* § 3507 (providing a writ may be issued against any non-Delaware Corporation).[7]

This complete lack of distinction between certificated and uncertificated shares undermines PDVSA's argument that the amendment to § 324(a) served to terminate constructive attachments of certificated shares.  The UCC was not intended to displace existing Delaware law.  The "traditional statutory position [of § 169] is not disturbed by the Delaware version of the Uniform Commercial Code" as demonstrated by, among other things, § 201 of the Delaware Corporation law, which provides that "'[t]o the extent that any provision of this chapter is inconsistent with any provision of [Article 8 of Delaware's version of the UCC], this chapter shall be controlling.'"  Folk

---

[7]  The execution process set forth in 10 *Del. C.* § 5031, which the Court cited in granting the writ, likewise "proceed[s]" "as in cases of foreign attachment"—*i.e.*, the provisions of Title 10 that are carved out from the scope of Section 8-112—without distinguishing between certificated or uncertificated shares.  10 *Del. C.* § 5031.

on Delaware General Corporate Law § 169.01 (6th ed. 2019) (quoting 8 *Del. C.* § 201); *see also id.* § 201.01 ("Delaware's version of section 8-112 specifically provides that the UCC applies, '[e]xcept to the extent otherwise provided for [or] permitted by' the attachment and sequestration laws."). Chancellor Allen reached a similar conclusion in *Castro v. ITT Corp.*, 598 A.2d 674 (Del. Ch. 1991), holding that "[w]hen it enacted Article 8 of the Uniform Commercial Code, Delaware did not repeal its situs statute, § 169. Rather it preserved it." *Id.* at 681. The adoption of a modified version of Article 8 "was not intended to modify the effect or operation of the situs statute (Section 169) or the attachment mechanisms employed to bring stock into court." *Id.* at 682.[8] This view is buttressed by the fact that § 169 has never been amended to restrict the Delaware courts' attachment powers or otherwise reduce its reach.

If amending § 324 to include language stating that "the attachment is not laid and no order of sale shall issue unless §  8-112 of Title 6 has been satisfied," 8 Del. C. § 324(a), was truly meant to bar attachment of certificated shares in all circumstances, the exclusions in § 8-112 that allow attachment without seizure—which are superfluous under PDVSA's reading of the statute—would have been removed. They were not. That is not to say that the amendment had no effect. Interests in certificated shares held by financial intermediaries or secured parties are not subject to the same exceptions as certificated shares more generally, and following the amendment to § 324 conflict between those provisions and that attachment statute have been removed. *Compare* 6 *Del. C.* § 8-112(a), *with id.* § 8-112(c), (d). Thus, the amendment served to protect innocent third parties, not shield debtors. As the two-sentence synopsis appended to the Senate bill that amended § 324 notes, the amendment was "intended to enhance the utility of stock of a Delaware corporation as

---

[8]  Delaware took a similar approach when it opted not to enact a modified version of the model Uniform Stock Transfer Act. *See Haas v. Haas*, 119 A.2d 358, 362 (Del. Ch. 1955) (holding that a Delaware court "still has the right to determine the ownership of stock of Delaware corporations without physical seizure of the certificate").

collateral." D.I. 179, Ex. A, at 13. But clarifying that a lien may be perfected by physical possession, does not mean that seizure is required in all circumstances. This is consistent with long-standing Delaware practice that when delivery was required to transfer stock either "'actual or constructive'" delivery could suffice. *See, e.g.*, *McAllister v. Kallop*, 1995 WL 462210, at *16 (Del. Ch. July 28, 1995), *aff'd sub nom. Kallop v. McAllister*, 678 A.2d 526 (Del. 1996).

Here, PDVSA does not argue that some third-party creditor properly acquired physical possession of the certificates. All it says is that PDVH does not have them. Given the clear language of § 169—"ownership of capital . . . stock . . . shall be regarded as in [Delaware]" for "all purposes of . . . attachment"—a shareholder cannot avoid attachment of its shares in a Delaware corporation by a Delaware court through the simple expedient of holding the share certificates in another state or country. 8 *Del. C.* § 169. Crystallex's attachment remains valid and enforceable.

### 2. The PDVSA Parties Are Estopped From Challenging The Attachment

Given Delaware law, it is unsurprising that, for nearly three years, from the filing of Crystallex's motion for the writ in August 2017 until last month, no one suggested that the relief that Crystallex sought was unavailable under the Delaware Corporate Code. Instead, PDVSA repeatedly told this Court and the Third Circuit that Crystallex had a valid attachment of the PDVH shares. Based on this argument, PDVSA received stays from this Court, avoided the posting of a bond pending appeal, defeated attempts to expedite appellate proceedings, and delayed service of the very document that is the purported basis of its current argument—PDVH's answer to the writ.

"It goes without saying that one cannot casually cast aside representations, oral or written, in the course of litigation simply because it is convenient to do so." *EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046, 1050 (3d Cir. 1993). Under the doctrine of judicial estoppel, PDVSA cannot walk away from its prior representations. "[S]everal factors typically inform the decision whether to apply the doctrine in a particular case." *New Hampshire v. Maine*, 532 U.S. 742, 750

(2001).  Two of the most common factors consider whether (1) a litigant's current position is "'clearly inconsistent'" with its earlier position, and (2) acceptance of an inconsistent position in a later proceeding would create "the perception that . . . [the] court was misled." *Id*. at 750-751. Both of these factors are present here.

On August 31, 2018, PDVSA filed a motion to stay further proceedings in this Court.  D.I. 98.  Among other things, in that motion PDVSA argued that no bond should be required for a stay pending appeal because the shares of PDVH "provid[e] the same functional security as a super-sedeas bond and a bond is not necessary" and that because "[t]he Writ prohibits th[e] disposition" of the shares, the "Writ acts as additional security for Crystallex" and "is more than enough secu-rity in lieu of a bond" such that "[r]equiring a bond in addition to the writ 'would be a waste of money.'"  *Id.* at 6, 17, 19; *see also id.* at 20 (arguing that "the Writ provides more than enough security").  PDVSA reiterated its position that the writ provided adequate security in its reply, noting that "the current restraint on the PDVH shares by virtue of the Writ . . . could constitute sufficient security in lieu of a bond."  D.I. 118, at 10.[9]  If PDVSA's current argument were to be accepted, each of these representations must be found false.

---

[9]  CITGO seconded PDVSA's representations in support of the motion for a stay, stating, among other things, that "Crystallex is protected by . . . this Court's attachment of the PDVH Shares." D.I. 125, at 3; *see also id.* (citing "the attachment order" to argue that claims that a stay would prejudice Crystallex were "farfetched"); D.I. 102-1, at 9 (calling the shares "doubly-secured" in light of the attachment and U.S. sanctions).  CITGO also stated in offering materials circulated last month, which successfully raised in excess of $1 billion, that "Crystallex has attached the shares of PDV Holding."  CITGO Petroleum June 2, 2020 Offering Memo, at 36, *available at* http://tiny.cc/3d2yrz.  PDVH recently argued that "Crystallex's statement that 'PDVH's refusal to answer the writ is little more than a transparent effort to postpone enforcement of this Court's order' is false" and that the answer to the writ as "unnecessary . . . until the Court has determined whether or how to proceed with execution."  D.I. 139, at 16-17.  Now that PDVH has been forced to answer the writ, it asks this Court to find that its long-delayed answer means that this Court cannot "proceed with execution" at all.  Even if all three movants had not separately represented that Crystallex was secured in light of the writ, PDVSA's representations are binding on its sub-sidiaries here.  *See infra*, at 39-40.

These statements to this Court were by no means unique.  In its December 2018 opposition to Crystallex's motion to expedite following PDVSA's failure to withdraw the appeal as required under the parties' settlement agreement, PDVSA told the Third Circuit that there was no reason to expedite the appeal because "there is nothing that PDVSA can do to 'prejudice' or 'disturb' the writ of attachment."  Opp. to Mot. to Expedite, at 16, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2797, Doc. No. 3113121203 (3d Cir. Dec. 28, 2018).  That same filing represented that "Crystallex's writ of attachment also preclude[s] any transactions in the PDVH shares."  *Id.* at 18.  The Third Circuit accepted these arguments and denied the motion to expedite.[10]

Once this Court's order authorizing the writ was affirmed and the Third Circuit stay was lifted, PDVSA continued to make similar arguments to this Court.  At the November 2019 hearing, PDVSA repeatedly stated that there was no urgency in moving forward on a sale of the PDVH shares because the writ ameliorated any potential harm to Crystallex from the delay.  First, Counsel told the Court that Crystallex was not entitled to a bond because "they are fully secured for whatever they're entitled to by the attachment on the PD[V]H shares."  D.I. 145, at 34:22-35:5.  Later, PDVSA went on to state clearly and unconditionally that "they're secured.  They're suffering no irreparable injury."  *Id.* at 38:14-15.  Counsel also argued that "[i]f Your Honor is considering lifting a stay, you should look at what the equities are.  They have no equity on their side.  They're fully secured for whatever the value is of those assets."  *Id.* at 37:5-8.  In its December 2019 order continuing the stay, this Court not only cited, but quoted, PDVSA's assurance, made in open court, that Crystallex was secured and thus could not be prejudiced by a continuation of the stay in support of its decision to grant PDVSA its requested relief.  D.I. 154, at 4 n.4.

---

[10]   After this Court's order authorizing the writ was affirmed, PDVSA (now led by Guaidó) similarly told the Third Circuit that the stay should continue because Crystallex "already has sufficient security in the form of the Writ."  Response to Mot. to Lift Stay, at 10, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2797, Doc. No. 3113334559 (3d Cir. Aug. 29, 2019).

Two months later, PDVSA—in a joint brief with Venezuela—doubled down on the effec-

tiveness of the writ in opposing Crystallex's motion to modify the stay, stating:

> In claiming that "ongoing prejudice" warrants a compressed timeline [for Vene-
> zuela to file its petition for certiorari] (D.I. 157 at 16), Crystallex again fails to
> mention this Court's express finding to the contrary: Because Crystallex has already
> obtained service of a writ of attachment *fi. fa.*, "a stay will not substantially injure
> . . . Crystallex and other creditors." Order at 4; *see id.* n.4 (rejecting Crystallex's
> argument that it "'will be prejudiced severely if this case stalls'").

D.I. 160 at 10 (modification in original). Again, the Court accepted PDVSA's argument.

Only after PDVSA was told that the Court intended to move "expeditiously . . . to enforce

its prior orders," D.I. 174, at 1, did it change its position on Crystallex's attachment. Having

successfully stayed proceedings in this case for nearly two years and defeated Crystallex's motions

to expedite without posting additional security based on its argument that Crystallex's interests

were already secure, PDVSA cannot now claim that Crystallex lacks an attachment. This is exactly

the sort of conduct that judicial estoppel is intended to prevent. *See Murray v. Silberstein*, 882

F.2d 61, 66 (3d Cir. 1989) (finding judicial estoppel "particularly appropriate" where plaintiff took

one position to obtain a preliminary injunction and then reversed itself once an injunction was no

longer available in an attempt to recover money damages); *see also In re Dex Media*, 595 B.R. 19,

38 (D. Del. 2018) (affirming bankruptcy court's judicial estoppel finding where litigant "play[ed]

fast and loose with the court" and reversed position to "'obtai[n] unfair advantage'").

Put simply, Crystallex's attachment is not subject to procedural challenge by those who

have used the existence of the attachment for their own benefit.

### 3.    This Court Can Prevent Further Mischief by Requiring The PDVH Shares To Be Delivered To The Marshals

While Crystallex has a valid lien regardless of the nature or location of the shares of PDVH

or any alleged technical flaw in the service of the writ on PDVH because PDVSA has an indisput-

able interest in the shares, PDVSA's motion calls into question what acts PDVSA might take to

further interfere with the attachment and ultimate sale of PDVH.  Accordingly, Crystallex respect-

fully requests that this Court, in anticipation of a future sale, direct PDVSA to deliver the share

certificate to the Marshals now.  Failing that, Crystallex believes that the Court can and should

direct PDVH to reissue the shares—still in PDVSA's name—to the Marshals for safekeeping.

The statutes upon which PDVSA relies to argue that no attachment has been effectuated

allow this Court to compel the surrender of the shares for safekeeping.  Section 324 of the Dela-

ware Corporate Code provides that this Court has "the power to make an order compelling the

corporation, the shares of which were sold, to issue new certificates or uncertificated shares to the

purchaser at the sale and to cancel the registration of the shares attached on the books of the cor-

poration."  8 *Del. C.* § 324(c).  Similarly, § 8-112 provides that:

> [a] creditor whose debtor is the owner of a certificated security, uncertificated secu-
> rity, or security entitlement is entitled to aid from a court of competent jurisdiction,
> by injunction or otherwise, in reaching the certificated security, uncertificated secu-
> rity, or security entitlement or in satisfying the claim by means allowed at law or in
> equity in regard to property that cannot readily be reached by other legal process.

6 *Del. C.* § 8-112(e).  And corporate shares may be reissued by Court order.  *See* 8 *Del. C.* § 168.

*Bartlett v. General Motors Corp.*, 127 A.2d 470 (Del. Ch. 1956), granted a similar request,

directing a Delaware corporation to (1) cancel the registration of shares in the name of a nonresi-

dent judgment debtor and (2) issue new shares.  *Id.* at 135.  In so doing, the court noted that absent

the power to issue such an order, the attachment provisions of Delaware law would be essentially

nullified.  *Id.* at 134-35.  Although Crystallex has not identified a case applying § 8-112(e) under

Delaware law, commentators have recognized that this same policy is available under Article 8 of

the Delaware's UCC.  *See* Folk on Delaware General Corporation Law § 169.03 (6th ed. 2019).

Ordering the turnover or reissuance of the shares will prevent PDVSA, PDVH or their

affiliates from playing games with the shares prior to the final sale.  Had PDVH disclosed that the

shares are certificated in September 2018—rather than argue that there was no reason to answer

36

the writ until the Court decided "whether or how to proceed," D.I. 139, at 16-17—this issue could have been resolved long ago.  That PDVSA and PDVH were less than candid about the status of the PDVH shares does not alter this Court's August 2018 Order or prevent the Court from ensuring that Crystallex remains as secure as PDVSA and its affiliates have claimed for the past two years.[11]

### C.  PDVSA Cannot Use PDVH And CITGO To Relitigate This Case

Given the Third Circuit's mandate, PDVSA should not be filing any motions in this case independent of its alter ego, Venezuela.  Nor can PDVSA use its subsidiaries to relitigate this Court's alter-ego finding.  PDVH and CITGO lack standing to seek relief.  And they are in privity with PDVSA, so they are bound by the course of this litigation to the same extent as PDVSA.

### 1.  PDVH And CITGO Lack Standing To Move To Quash The Writ

Standing is governed by both Delaware law and Article III.  While PDVSA and its subsidiaries overstate Delaware law's relevance, *see supra*, at 24-27, the parties agree that the "procedure" in attachment proceedings must accord with the law of the forum state.  Fed. R. Civ. P. 69(a)(1); D.I. 179, at 2.  Under that standard and Article III, PDVH and CITGO lack standing.

Under Delaware law, a "corporation . . . 'has no interest in the seizure of [its] stock as the property of the shareholder,'" and thus "no standing to attack the attachment by a motion to quash." *Harrington v. Hollingsworth*, 1996 WL 769635, at *3-4 (Del. Super. Ct. Dec. 20, 1996).  In both *Harrington* and *Womack v. De Witt*, 10 A.2d 504 (Del. Super. Ct. 1939), Delaware courts held that a garnishee corporation "was not entitled to 'resist any claim of plaintiff'" to garnishment of its shares.  *Harrington*, 1996 WL 769635, at *3 (quoting *Womack*, 10 A.2d at 507).  For the same

---

[11]  In light of PDVSA's prior representations, even if there were some perceived procedural flaw in the service of the original attachment, the Court still could amend its prior writ retroactively (*nunc pro tunc*).  *See, e.g.*, *Mergenthaler v. Triumph Mortg. Corp.*, 2018 WL 6177177, at *9 (Del. Sup. Ct. Nov. 26, 2018) (citing *Handler Constr., Inc. v. CoreStates Bank, N.A.*, 633 A.2d 356, 359 n.2 (Del. 1993)) (entering writ nunc pro tunc and denying motion to quash writ as untimely).

reason, PDVH lacks standing to challenge the garnishment of its shares.  CITGO—PDVH's sub-sidiary—is even further removed from any basis to oppose garnishment under Delaware law.

Likewise, under Article III, a party "must assert his own legal rights and interests"—not those of "third parties," *Warth v. Seldin*, 422 U.S. 490, 499 (1975), at least when the third party can "protect [its] own interests," *Powers v. Ohio*, 499 U.S. 400, 411 (1991).  The rights at issue here—"ownership interests" in what movants call "PDVSA's property"—are nominally PDVSA's (and in reality Venezuela's).  D.I. 179, at 3, 8 n.7.  PDVSA, as the alter ego through which Venezuela owns the shares, is capable of protecting those interests, as it has done throughout this litigation.  PDVH and CITGO thus lack standing to reopen issues already litigated against PDVSA.

PDVH makes no attempt to demonstrate its standing.  Its status as "garnishee" is insuffi-cient under Delaware law, and it offers no evidence for claiming—in a footnote—that its unspec-ified "assets and interests . . . could be harmed by these proceedings."  D.I. 179, at 1 n.1.  Indeed, it admits that it "does not possess. . . rights incident to the shares of its stock."  *Id.* at 4.

CITGO, for its part, relies on this Court's decision allowing it to intervene.  D.I. 179, at 1 n.1.  But CITGO moved to intervene based on its asserted interest "in the manner in which the PDVH Shares are sold," D.I. 102, at 2—not in the attachment of PDVH's shares.  *See* D.I. 125, at 5 (claiming "[t]he sale of all, or a majority, of PDVH's stock will trigger change-of-control provi-sions in CITGO's and CITGO Holding, Inc.'s credit agreements, resulting in a default").  CITGO conceded that it had "no legal stake in contesting the writ of attachment on alter ego grounds." D.I. 102, at 3.  Its interest is thus limited to the sale of PDVH's shares.  Further, this Court allowed CITGO to intervene only after finding "no prejudice to Crystallex in granting the intervention motio[n]."  D.I. 154, at 12.  By contrast, allowing CITGO to relitigate the attachment of the PDVH shares more than a year after the writ was issued—and raise arguments that PDVSA is estopped

from raising, *see supra*, at 21-24, 32-35—would severely prejudice Crystallex.

> **2.    PDVH And CITGO Are Bound By This Court's And The Third Circuit's Rulings And PDVSA's Statements, No Less Than PDVSA**

Even if PDVH and CITGO had standing to challenge the writ, they are in privity with PDVSA and thus bound to the same extent as PDVSA by the rulings of this Court and the Third Circuit and PDVSA's statements.

Both "collateral estoppel" and "other estoppel doctrines" such as "judicial estoppel" apply "'not only against actual parties to prior litigation, but also [those] in privity to a party.'" *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 996 (9th Cir. 2012). Collateral estoppel (*i.e.*, "issue preclusion") "may be justified" against a "nonparty" based on "a variety of pre-existing 'substantive legal relationship[s]'" to the party bound, "referred to as 'privity.'" *Taylor v. Sturgell*, 553 U.S. 880, 894 & n.8 (2008). And "a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy." *Id.* at 895. "[P]reclusion is appropriate," therefore, "when a nonparty later brings suit as an agent" for the party bound. *Id.* Multiple circuits have similarly "concluded that judicial estoppel may be invoked against a party that is in privity with a party involved in an earlier litigation." *Patriot Mfg. LLC v. Hartwig, Inc.*, 996 F. Supp. 2d 1120, 1127 & n.38 (D. Kan. 2014) (citing, *e.g.*, *In re Johnson*, 518 F.2d 246, 252 (10th Cir. 1975), *Milton H. Greene*, 692 F.3d at 996, *Maitland v. University of Minnesota*, 43 F.3d 357, 364 (8th Cir. 1994), and multiple district court cases), *aff'd*, 613 F. App'x 753 (10th Cir. 2015).

Here, PDVH and CITGO are in privity with PDVSA—and thus subject to estoppel to the same extent as PDVSA—for two main reasons.

*First*, PDVH and CITGO are wholly owned subsidiaries of PDVSA. *Crystallex*, 333 F. Supp. 3d at 418 n.36. A corporate subsidiary and its parent are in privity when they share sufficient "commonality of . . . interest in [a] matter." *Doe v. Urohealth Sys., Inc.*, 216 F.3d 157, 162 (1st

Cir. 2000); *see also Shah v. United States*, 540 F. App'x 91, 93 (3d Cir. 2013) (finding privity where company was "wholly owned" and parties were "preceding and succeeding owners of the property at issue"); *Mars Inc. v. Nippon Conlux Kabushiki–Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995) (finding "wholly owned subsidiary" in privity with parent under Third Circuit law).  Here, both subsidiaries are only in this case because of their corporate relationship with PDVSA—*i.e.*, because PDVSA nominally owns the PDVH shares, and CITGO issued debt with change-of-control provisions.  D.I. 125, at 5.  And all three movants are aligned in seeking to preserve PDVSA's nominal ownership.  Given that PDVSA brought this motion to quash jointly with its subsidiaries and co-signed the brief, D.I. 179, at 1, 19, it would "strain credulity to find that the interests of [the subsidiary] and [the parent] were so distinct that they are not aligned" for purposes of preclusion. *Anchor Glass Container Corp. v. Buschmeier*, 426 F.3d 872, 880 (7th Cir. 2005).

*Second*, PDVH is here as the custodian of PDVSA's putative property (the PDVH shares).  This sort of "bailee and bailor" relationship is broadly recognized as a "[q]ualifying relationshi[p]" that establishes privity.  *Taylor*, 553 U.S. at 894.  Preclusion applies where, as here, a "bailee seeks to relitigate" the "bailor's right of recovery."  *Union Ins. Soc'y of Canton, Ltd. v. William Gluckin & Co.*, 353 F.2d 946, 953 (2d Cir. 1965).

Finally, regardless of privity, a "decision of an appellate court is binding (not just persuasive) on those lower in the hierarchy even if not binding on the parties under principles of preclusion." *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 532 (7th Cir. 1988) (Easterbrook, J.).  Whoever brings this motion, this Court is bound by the Third Circuit's published, precedential decision.

## CONCLUSION

For the foregoing reasons, Crystallex respectfully requests that the Court deny Venezuela's Rule 60(b) motion and PDVSA, PDVH, and CITGO's motion to quash the writ of attachment.

*/s/ Jeffrey L. Moyer*

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)

OF COUNSEL:

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Wilmington, Delaware 19801
Tel: (302) 651-7700
dicamillo@rlf.com
moyer@rlf.com
hunter@rlf.com

*Attorneys for Plaintiff*

Miguel A. Estrada
Lucas C. Townsend
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
Fax: (202) 467-0539

Dated:  July 7, 2020