## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION, | |
| Plaintiff, | |
| v. | C.A. No. 17-mc-151-LPS |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | |
| Defendant. | |

### NON-PARTIES PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED AND CONOCOPHILLIPS PETROZUATA B.V.'S REPLY BRIEF REGARDING CONDUCT OF PDV HOLDING, INC. SHARE SALE

*Of Counsel*:

Michael S. Kim
Marcus J. Green
Josef M. Klazen
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200
michael.kim@kobrekim.com
marcus.green@kobrekim.com
jef.klazen@kobrekim.com

Richard G. Mason
Amy R. Wolf
Michael H. Cassel
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1000
RGMason@wlrk.com
ARWolf@wlrk.com
MHCassel@wlrk.com

Dated: July 13, 2020

ROSS ARONSTAM & MORITZ LLP

Garrett B. Moritz (Bar No. 5646)
Anne M. Steadman (Bar No. 6221)
100 S. West Street, Suite 400
Wilmington, Delaware 19801
(302) 576-1600
gmoritz@ramllp.com
asteadman@ramllp.com

*Attorneys for Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V.*

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT ................................................................................................. 1

ARGUMENT ..................................................................................................................................... 2

I.      ANY PROCESS SHOULD ACCOUNT FOR CONOCOPHILLIPS' INTERESTS..........2

II.     THE PROCEDURES PROPOSED BY CRYSTALLEX AND VENEZUELA ARE
        INADEQUATE.................................................................................................................................3

III.    THE COURT SHOULD APPOINT A RECEIVER OR SIMILAR OFFICIAL TO
        MANAGE THE SALE...................................................................................................................5

IV.     THE COURT HAS AUTHORITY TO APPOINT A RECEIVER ...................................8

CONCLUSION ......................................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*A.H. & R.S. Coal Corp. v. United States*,
   461 F. Supp. 752 (W.D. Pa. 1978) .................................................................. 8

*Brown v. King*,
   62 F. 529 (5th Cir. 1894) .............................................................................. 6

*Deutsche Bank Nat'l Trust Co. v. Kane*,
   2007 WL 201130 (N.D. Ohio 2007) ........................................................... 6-7

*Leone Indus. v. Associated Packaging, Inc.*,
   795 F. Supp. 117 (D.N.J. 1992) .................................................................... 9

*Maxwell v. Enter. Wall Paper Mfg. Co.*,
   131 F.2d 400 (3d Cir. 1942) .......................................................................... 9

*Mfrs. & Traders Trust Co. v. Minuteman Spill Response, Inc.*,
   999 F. Supp. 2d 805 (W. D. Pa. 2013) ......................................................... 9

*Mintzer v. Arthur L. Wright & Co.*,
   263 F.2d 823 (3d Cir. 1959) .......................................................................... 9

*Netsphere, Inc. v. Baron*,
   703 F.3d 296 (5th Cir. 2012) ........................................................................ 9

*Pope Invs. LLC v. Benda Pharm., Inc.*,
   2010 WL 5233015 (Del. Ch. Dec. 15, 2010) ............................................. 10

*Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.*,
   863 A.2d 772 (Del. Ch. 2004) ...................................................................... 9

*Provident Life & Trust Co. of Pa. v. Camden & T. Ry. Co.*,
   177 F. 854 (3d Cir. 1910) .............................................................................. 6

*Ross Hldg. & Mgmt. Co. v. Advance Realty Grp., LLC*,
   2010 WL 3448227 (Del. Ch. Sept. 2, 2010) ............................................... 9

*Sequoia Fin. Sols., Inc. v. Ill. Dep't of Revenue*,
   2015 WL 13849995 (N.D. Ill. Jan. 13, 2015) ............................................. 7

*United States v. Branch Coal Corp.*,
   390 F.2d 7 (3d Cir. 1968) ........................................................................ 8, 9

*United States v. Capobianco*,
  652 F. Supp. 325 (E.D. Pa. 1987), *aff'd and remanded on other grounds*,
  836 F.2d 808 (3d Cir. 1988) ................................................................................................ 8

## STATUTES

8 *Del. C.* § 291 .................................................................................................................. 10

8 *Del. C.* § 324 .................................................................................................................... 8

28 U.S.C. § 2001 .............................................................................................................. 7, 9

28 U.S.C. § 2002 ................................................................................................................. 7

28 U.S.C. § 2004 .............................................................................................................. 8, 9

## RULES

Fed. R. Evid. 706 ................................................................................................................ 5

## OTHER AUTHORITIES

Charles A. Wright, et al., 12 *Federal Practice and Procedure* § 2983 (2020) .......................... 7, 9

Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V. ("ConocoPhillips") respectfully submit this reply to the submissions by the Bolivarian Republic of Venezuela ("Venezuela") and Crystallex International Corp. ("Crystallex") on the process for selling PDV Holding, Inc. ("PDVH") stock held by Petróleos de Venezuela S.A. ("PDVSA").

## SUMMARY OF ARGUMENT

1.      Crystallex asks the Court to ignore ConocoPhillips.  Both parties want to limit the sale to only enough shares to satisfy the unpaid portion of Crystallex's judgment.  But any process should account for ConocoPhillips' interests because ConocoPhillips will inevitably hold a judgment lien for more than US $1.3 billion against the PDVH shares by the time any sale is authorized by the Office of Foreign Assets Control ("OFAC").

2.      The procedures proposed by the parties are inadequate and will not maximize the proceeds, which should be the goal of any sale.

3.      Venezuela volunteers PDVSA to manage the sale itself.  Crystallex wants a fire sale auction, overseen by Crystallex's counsel, and warns against allowing Venezuela to drag out the process or influence the sale to advance its political objectives.  But neither party should manage the process.  The appointment of an independent receiver or other similar official, with the advice of experts, will better serve the Court and the legitimate interests of all stakeholders.

4.      The Court has the discretion to adopt procedures for an appropriate sale process, including for the appointment of a receiver.

## ARGUMENT

### I.     ANY PROCESS SHOULD ACCOUNT FOR CONOCOPHILLIPS' INTERESTS

Crystallex complains that ConocoPhillips seeks "to displace Crystallex's priority" and is somehow improperly asking "this Court [to] elevate the interests of unsecured creditors such as itself over those of Crystallex."  D.I. 198 at 5, 16.[1]  Crystallex is incorrect.

ConocoPhillips is merely suggesting appropriate procedures for the Court to consider for the sale process.  Because ConocoPhillips will also necessarily benefit from the proceeds of any reasonably conducted sale, ConocoPhillips' interests should be taken into account when designing the mechanics.

ConocoPhillips holds a judgment of this Court against PDVSA for approximately US $2 billion (with more than US $1.3 billion unsatisfied).  In November 2019, ConocoPhillips sought a writ of *fieri facias* against the PDVH shares (C.A. No. 19-mc-342-LPS, the "Fi Fa Action").  None of the then-pending appellate issues on alter ego, *etc.*, from the Court's decisions in *Crystallex* pertained to the Fi Fa Action, and so that case was never stayed.  Under normal circumstances, the Court would likely have issued the writ in favor of ConocoPhillips by now as a ministerial matter.

However, although ConocoPhillips' motion for the writ has been fully briefed, the Court has not yet acted on it.  As ConocoPhillips explained in its brief on the motion, OFAC sanctions are no impediment to merely *issuing* the writ.  C.A. No. 19-mc-342-LPS, D.I. 3 at 3.  For that reason, the Court should be able to order the writ issued at any time.  Indeed, the Court should grant ConocoPhillips' motion now in order to confirm its place in line.

---

[1] The separate, unsupported accusation by Crystallex that ConocoPhillips is somehow colluding with Venezuela is false and reckless.  *See* D.I. 198 at 6, 16 (referring to bits of internecine Venezuelan intrigue and propaganda).

Separately and in any event, there can be no question that, so long as the sanctions continue, any actual sale of PDVH shares—in favor of Crystallex and/or any other creditor—will require authorization from OFAC. And, if OFAC authorizes any sale process in *Crystallex*, it is reasonable to assume that OFAC will also issue a license to ConocoPhillips and to other creditors to exercise any property-law rights they may then have against the shares, including to benefit from any available sale proceeds, if applicable.

For that reason, if a sale is going to take place at all, ConocoPhillips should have its writ beforehand. That means that the debt to be satisfied from the sale will include both Crystallex's claim (subject to the Rule 60 litigation in that case) as well as the more than US $1.3 billion owed on the ConocoPhillips judgment.

Although the Court may confirm that Crystallex ultimately has priority, any sale will necessarily be conducted in an environment where ConocoPhillips also has a perfected judgment lien against the shares. Therefore, and contrary to Venezuela's contention that "[t]he process need sell only enough shares to satisfy the unpaid portion of Crystallex's judgment" (D.I. 196 at 19), the sale should be designed to realize proceeds sufficient to satisfy both the Crystallex and ConocoPhillips judgments.

## II.    THE PROCEDURES PROPOSED BY CRYSTALLEX AND VENEZUELA ARE INADEQUATE

The procedures requested by the parties are inadequate to maximize the value of the shares and protect the legitimate interests of all stakeholders, including prospective bidders, PDVSA as shareholder, Venezuela as sovereign, and PDVSA's mature judgment creditors, including ConocoPhillips.

Both Crystallex and Venezuela propose to sell only as many shares as are needed to satisfy the Crystallex judgment, leaving the remainder of the PDVH shares to PDVSA. But, as described

above, the Court should assume ConocoPhillips will also have a perfected judgment lien against the shares by the time any sale can take place.  The parties are thus effectively recommending the Court conduct multiple sales *ad seriatim*:  first a sale of only enough shares to satisfy the Crystallex judgment, and then a further sale with proceeds towards the ConocoPhillips judgment. ConocoPhillips submits that the Court should instead adopt a single efficient and streamlined process to maximize the value of the PDVH shares.

Crystallex's other suggestions to augment a simple Marshals' auction are insufficient.  For example, Crystallex does not provide for an adequate means of populating a data room with documents, suggesting only that PDVSA, Venezuela and CITGO may voluntarily agree to provide documents and information to potential bidders.  D.I. 182 at 11-12.  But Crystallex's assumption that "Venezuela has every incentive to maximize the price of the shares of PDVH as any excess value belongs to Venezuela" (*id.* at 11), may not be well-founded.  Excess value after satisfaction of Crystallex's judgment will belong to ConocoPhillips and then possibly to other mature creditors.

Given the uncertainty about valuation and the claims of other creditors, Venezuela may even end up out of the money.  And PDVSA's assumptions about retaining control through a majority of the stock, post-sale, may prove aspirational.  Further, Venezuela has consistently advocated for the Court to delay this entire process.  *See, e.g.*, D.I. 188 at 5.

For those reasons, Venezuela may not have the proper incentives to timely and voluntarily provide potential bidders with complete and accurate information, and Crystallex provides for no means by which to otherwise obtain it.  By contrast, ConocoPhillips proposes a data room populated with information both provided voluntarily as well as through compelled discovery. D.I. 180 at 11.

Crystallex's proposal for marketing the shares is also inadequate and inappropriate for the sale of this complex and potentially highly valuable asset.  Crystallex proposes to provide notice in the Delaware News Journal, the Wall Street Journal, and Oil & Gas Investor, plus to 36 potential bidders Crystallex selected unilaterally and without any real explanation of its methodology.  D.I. 182 at 13.  This is simply not how assets of this sort are marketed.

Rather, as suggested by ConocoPhillips, investment bankers should be engaged to study potentially constructive combinations, prepare pitch decks and generate leads on prospective purchasers.  The process should be guided by experienced professionals appropriate for the complexity and value of the asset, rather than an *ad hoc* process directed by lawyers for Crystallex.

ConocoPhillips shares Venezuela's concern that Crystallex's proposed opening credit bid of US $300 million and auction of the shares in incremental amounts will have the effect of chilling bidding and depressing the price ultimately obtained for the shares.  *See* D.I. 196 at 13-14.  The appointment of appropriate professionals charged with running a value-maximizing sale process will mitigate this risk.  For example, a valuation expert could assess the value of the PDVH shares and assist the Court in setting a minimum bid or other guardrails for the auction, rather than allowing Crystallex to select a number that suits its purposes.  Even without appointing a receiver, the Court has wide discretion to appoint expert witnesses to fulfill this function.  *See* Fed. R. Evid. 706.  The Court's appointment of an appropriate receiver or other professionals would help prevent the disposal of shares for an inadequate credit bid as Crystallex's proposed process threatens.

## III.   THE COURT SHOULD APPOINT A RECEIVER OR SIMILAR OFFICIAL TO MANAGE THE SALE

The submissions make clear that neither party is adequately suited to lead the sale process. By its own admission, Crystallex has no interest in maximizing the value of the shares beyond

what is necessary to satisfy its own judgment.  D.I. 182 at 17 ("the auction can be easily structured so that *only those shares necessary to satisfy Crystallex's judgment* are sold.") (emphasis added).

For its part, Venezuela requests that PDVSA be allowed to manage the process.  D.I. 188 at 17.  But this is an *involuntary* sale.  PDVSA has no genuine interest in selling any portion of the PDVH shares it holds, and it has generally resisted paying its creditors at every turn.  And as mentioned above, Venezuela may be out of money depending on valuations and if other mature creditors obtain attachments against the shares.  Further, Venezuela believes that now is not the right time to sell the PDVH shares.  D.I. 188 at 4-8.  Taken altogether, there is no reason to believe that PDVSA and Venezuela are incentivized to conduct an efficient and appropriate process for what they regard as "the forced sale of the Republic's most strategic foreign asset."  D.I. 196 at 4.

Unlike either of the parties, a receiver or other appropriate official would be independent and have no agenda other than the maximization of value and the creation of a fair, transparent and efficient process.  Given the interests at stake, the appointment of a receiver or other officer, over whom the Court would have ultimate supervisory authority, is particularly appropriate.

As a practical matter, if the Court concludes that it should not entrust either party or the United States Marshals with the management of the sale process, it would be very difficult to actually sell this asset absent appointment of an officer of the Court to conduct the sale.  While ConocoPhillips has suggested a "receiver," the label of the official is irrelevant—the point is that the Court can vest meaningful responsibility for the sale proceedings in an appropriate party.  There is a long history in the federal courts of doing just that.  *See Brown v. King*, 62 F. 529 (5th Cir. 1894) (appointing master commissioners to sell property); *Provident Life & Trust Co. of Pa. v. Camden & T. Ry. Co.*, 177 F. 854 (3d Cir. 1910) (sale by court appointee); *Deutsche Bank Nat'l Trust Co. v. Kane*, 2007 WL 201130 (N.D. Ohio 2007) (appointing master commissioners pursuant

to 28 U.S.C. §§ 2001 and 2002); *Sequoia Fin. Sols., Inc. v. Ill. Dep't of Revenue*, 2015 WL 13849995 (N.D. Ill. Jan. 13, 2015) (appointing special master or commissioner to conduct sale of realty).

Most of Venezuela's and Crystallex's arguments focus on the *label*, rather than what ConocoPhillips actually proposes the Court to authorize the appointee to *do*.  A receiver need not displace management or exercise control, for example, except to the limited extent needed to run a responsible sale process.[2]

Crystallex's opposition to the appointment of a receiver is fundamentally rooted in its desire to have a sale proceed as quickly as possible, without much regard for the price obtained, and Crystallex's repeated assertion that ConocoPhillips is just an unsecured creditor with no rights in this matter.  That is neither appropriate nor correct.

First, while Crystallex relies on Wright & Miller for the proposition that receivers are meant to protect the "plaintiff's" interest, Crystallex ignores the relevant section which states that "[t]he appointment of a receiver by a federal court may be sought by any person or class having an interest in property that a statute or one of the general principles of equity authorizes the court to protect by this remedy."  Wright & Miller § 2983.

Second, the appointment of a receiver would not subordinate any lawful priority Crystallex may have.  If Crystallex in fact has priority, it will remain first in line for any proceeds.  Taking the time and effort to conduct a value-maximizing sale of these assets does not harm any legitimate

---

[2] Venezuela's concerns about the need for a receiver to secure a license from OFAC are unfounded or at least premature.  Even assuming Venezuela's statement of OFAC regulations is correct, the receiver or other appropriate official may never need to take possession or control of property. The purpose of the receiver or other appropriate official is not to manage or exercise control over PDVH pending its sale, but to conduct the process to actually sell it.  In any event, *planning* for the sale process by appointing someone implicates no sanctions or licensing issues.

objectives.  Crystallex may be entitled to a sale, but it is not entitled to a fire sale that would harm ConocoPhillips.

## IV.    THE COURT HAS AUTHORITY TO APPOINT A RECEIVER

Whether Delaware law calls for a judicial sale or an execution sale could potentially impact the governing source of law.  Because Crystallex cannot unilaterally conduct a sale based on its "mere *praecipe*," but instead must have Court orders, the sale in this case would be a judicial, rather than an execution, sale.[3]  Accordingly, the Court may readily look to applicable federal law for guidance as to how to structure and conduct the sale of the PDVH shares, including law governing receiverships.

It is, in any event, unnecessary to decide the issue because the Court is not confined *solely* to state law procedures in either case, and because the Court would be authorized to appoint a receiver under either Delaware or federal law.

In its opening brief, Crystallex admitted the Court could apply federal law:  "Rule 69 allows this Court to enforce a money judgment by a writ of execution 'unless the Court directs otherwise,'" and therefore that "[a]s an alternative to an order under Section 324 of the Delaware

---

[3] Contrary to Crystallex's argument, the court order needed to sell the shares is not a consequence solely of the Foreign Sovereign Immunities Act, but one required by 8 *Del. C.* § 324 itself because the asset in question is shares of stock in a Delaware corporation.  *See* 8 *Del. C.* § 324(a) ("upon an order issued therefor by the court from which the attachment process issued").  The cases are quite clear that when a court order is required to sell particular property, the proceeding is generally a judicial sale rather than an execution sale.  *See United States v. Capobianco*, 652 F. Supp. 325, 328 (E.D. Pa. 1987) ("Certain characteristics have been held to distinguish a judicial sale from a non-judicial sale.  These include an order by a court directing sale and confirmation by the court for validity."), *aff'd and remanded on other grounds*, 836 F.2d 808 (3d Cir. 1988); *A.H. & R.S. Coal Corp. v. United States*, 461 F. Supp. 752, 755 (W.D. Pa. 1978) ("To be classified as a judicial sale, the sale must be based on an order, decree, or judgment directing sale." (internal quotation omitted)); *United States v. Branch Coal Corp.*, 390 F.2d 7, 9 n.2 (3d Cir. 1968) (where U.S. Attorney "applied for and received an order from the district court directing the Marshal to expose at public sale the real and personal property of Branch Coal," sale held to be a judicial sale).

Corporate Code, the Court could authorize a judicial sale pursuant to 28 U.S.C. § 2004, which incorporates the sale provisions of 28 U.S.C. § 2001 and provides for the public sale of personal property on notice and subject to court supervision." D.I. 182 at 20 n.15.[4]

Venezuela admits that "little turns on" whether this is a judicial or execution sale, but argues that "neither Delaware law nor federal law authorize appointment of a receiver." D.I. 196 at 15. But Venezuela is wrong about that conclusion, under these circumstances.

Venezuela cites cases involving *pre-judgment* receivers[5] and receivership cases where the purpose is to wind up the affairs of a company.[6] In those contexts, where a receiver displaces management, it makes sense that the standard would be difficult to meet. Those situations are distinct from this one, where the purpose of the receiver is merely to assist the Court in managing the sale of an asset under the Court's auspices. *See, e.g., Netsphere, Inc. v. Baron*, 703 F.3d 296, 306 (5th Cir. 2012) (describing use of receivers in judgment enforcement cases); *Wright & Miller* § 2983 (describing use of receivers in judgment enforcement as "well-established").[7]

---

[4] In its opposition, Crystallex suggests that ConocoPhillips has admitted that Rule 69(a) precludes the application of federal procedures to execution sales, per the Third Circuit's holding in *United States v. Branch Coal*, 390 F.2d 7, 9 (3d Cir. 1968). But that holding states that "the first sentence of . . . Rule [69] specifically provides for alternate means of enforcement when the 'court directs otherwise.'"). ConocoPhillips's position is not that the procedures of 28 U.S.C. §§ 2001 and 2004 are especially necessary, but rather that this Court has ample discretion to set appropriate procedures to conduct the sale.

[5] *See, e.g., Mintzer v. Arthur L. Wright & Co.,* 263 F.2d 823, 824 (3d Cir. 1959) (pre-judgment receiver); *Mfrs. & Traders Trust Co. v. Minuteman Spill Response, Inc.*, 999 F. Supp. 2d 805, 816 (W. D. Pa. 2013) (same); *Leone Indus. v. Associated Packaging, Inc.*, 795 F. Supp. 117, 120 (D.N.J. 1992) (receiver to enforce compliance with preliminary injunction); *Maxwell v. Enter. Wall Paper Mfg. Co.*, 131 F.2d 400, 403 (3d Cir. 1942) (receiver as preliminary remedy); *Ross Hldg. & Mgmt. Co. v. Advance Realty Grp., LLC*, 2010 WL 3448227, at *6 (Del. Ch. Sept. 2, 2010) (same).

[6] *See, e.g., Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.,* 863 A.2d 772, 785 (Del. Ch. 2004) (statutory winding-up remedy).

[7] Further, executions on judgments that have been returned unsatisfied are sufficient to show an inadequate remedy at law. *See, e.g., Netsphere*, 703 F.3d at 306.

ConocoPhillips is not suggesting the Court appoint a receiver over PDVSA or PDVH or even necessarily to take possession of the PDVH shares.  Again, labels aside, ConocoPhillips recommends the Court to appoint an official under its supervision to help design and implement a transparent and commercially reasonable process for selling the shares.  There can be no serious doubt about the Court's authority to do that.

Further, Delaware law relied upon by Crystallex does not conflict with the procedures requested by ConocoPhillips.  Indeed, Delaware law affirmatively provides for the appointment of receivers in similar circumstances.  8 *Del. C.* § 291 provides for the appointment of a post-judgment receiver on the application of a creditor where the debtor is insolvent.  A company that is unable to pay its debts as they come due is considered to be insolvent for purposes of 8 *Del. C.* § 291.  *Pope Invs. LLC v. Benda Pharm., Inc*., 2010 WL 5233015, at *8 (Del. Ch. Dec. 15, 2010). There can be no dispute that PDVSA has categorically defaulted across its entire credit structure, and would be deemed insolvent for the purposes of 8 *Del. C.* § 291, authorizing the Court to appoint a receiver with respect to a piece of its property.

## CONCLUSION

For the foregoing reasons, ConocoPhillips respectfully reasserts its request that the Court exercise its discretion to appoint an appropriate official in order to facilitate an appropriate and value-maximizing sale process for the PDVH shares.

ROSS ARONSTAM & MORITZ LLP

*Of Counsel*:

Michael S. Kim
Marcus J. Green
Josef M. Klazen
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200
michael.kim@kobrekim.com
marcus.green@kobrekim.com
jef.klazen@kobrekim.com

Richard G. Mason
Amy R. Wolf
Michael H. Cassel
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1000
RGMason@wlrk.com
ARWolf@wlrk.com
MHCassel@wlrk.com

Dated:  July 13, 2020

*/s/ Garrett B. Moritz*
Garrett B. Moritz (Bar No. 5646)
Anne M. Steadman (Bar No. 6221)
100 S. West Street, Suite 400
Wilmington, Delaware 19801
(302) 576-1600
gmoritz@ramllp.com
asteadman@ramllp.com

*Attorneys for Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V.*