# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., *Plaintiff*, v. BOLIVARIAN REPUBLIC OF VENEZUELA, *Defendant*. | C.A. No. 17-mc-00151-LPS |

**REPLY BRIEF IN SUPPORT OF**
**BOLIVARIAN REPUBLIC OF VENEZUELA'S MOTION FOR RELIEF**
**UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)**

OF COUNSEL:

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
MUNGER, TOLLES & OLSON LLP
1155 F Street NW, 7th Floor
Washington, D.C.  20004
(202) 220-1100

A. Thompson Bayliss (#4379)
Stephen C. Childs (#6711)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware  19807
(302) 778-1000
bayliss@abramsbayliss.com
*Attorneys for Defendant*
*Bolivarian Republic of Venezuela*

## **TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................................................................... 2
I. UNIQUE AND MATERIAL FACTUAL DEVELOPMENTS JUSTIFY RELIEF FROM THE AUGUST 2018 ALTER-EGO DETERMINATION ....................................................... 2
II. THE CURRENT OFAC SANCTIONS REGIME DEMONSTRATES THAT THE WRIT SHOULD NOT BE MAINTAINED ................................................................................... 8
CONCLUSION .............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Bank Markazi v. Peterson*,
  136 S. Ct. 1310 (2016) ......................................................................................................... 9

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
  447 F.3d 411 (5th Cir. 2006) ................................................................................................ 4

*Coltec Indus., Inc. v. Hobgood*,
  280 F.3d 262 (3d Cir. 2002) ................................................................................................. 5

*Cox v. Horn*,
  757 F.3d 113 (3d Cir. 2014) ................................................................................................. 7

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  333 F. Supp. 3d 380 (D. Del. 2018) .............................................................................. passim

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  932 F.3d 126 (3d Cir. 2019) ................................................................................................. 3

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
  462 U.S. 611 (1983) ......................................................................................................... 4, 6

*Groden v. N&D Transp. Co., Inc.*,
  866 F.3d 22 (1st Cir. 2017) .................................................................................................. 4

*Guaranty Trust Co. v. United States*,
  304 U.S. 126 (1938) ............................................................................................................. 4

*Horne v. Flores*,
  557 U.S. 433 (2009) ............................................................................................................. 5

*Janvey v. Libyan Inv. Auth.*,
  840 F.3d 248 (5th Cir. 2016) ................................................................................................ 6

*Marshall v. Bd. of Educ.*,
  575 F.2d 417 (3d Cir. 1978) ................................................................................................. 5

*Tapper v. Hearn*,
  833 F.3d 166 (2d Cir. 2016) ................................................................................................. 5

*Zivotofsky v. Kerry*,
  576 U.S. 1 (2015) ............................................................................................................. 2, 7

## TABLE OF AUTHORITIES
### (Continued)

<b><u>Page(s)</u></b>

**FEDERAL REGULATIONS AND RULES**

31 C.F.R. § 591.202(e) ............................................................................................................. 10

31 C.F.R. § 591.407 ............................................................................................................... 9, 10

31 C.F.R. § 591.506(c) ........................................................................................................... 9, 10

Fed. R. Civ. P 60(b) ............................................................................................................. *passim*

**STATE STATUTES**

10 Del. C. § 3511 ..................................................................................................................... 10

**OTHER AUTHORITIES**

11 Fed. Prac. & Proc. (Wright & Miller) § 2863 (3d ed. 2020) .................................................. 5

*U.K. Court Recognizes Guaido as Venezuela's President in Gold Dispute*, U.S.
  News & World Report (July 2, 2020) ..................................................................................... 4

The Bolivarian Republic of Venezuela has demonstrated its entitlement to relief under Federal Rule of Civil Procedure 60(b) on multiple grounds. First, following U.S. recognition, the new Venezuelan government led by Interim President Guaidó enacted measures to ensure the independence of PDVSA, and those measures—which take an approach diametrically opposed to that taken by the previous regime—eliminated any justification for continuing to treat PDVSA's property as the Republic's property for sovereign-immunity purposes. Crystallex does not seriously dispute that substantive result, but contends that procedural obstacles under Rule 60(b)(5) and 60(b)(6) require the Court to disregard the undeniable fact that circumstances have changed dramatically since this Court ruled that PDVSA's shares could be attached to satisfy Crystallex's judgment against the Republic. Crystallex is wrong. Rule 60(b)(5) authorizes relief from the writ of attachment, which imposes an ongoing encumbrance on PDVSA's property, because the structural changes made by the Guaidó government vitiate any claim that the encumbered property belongs to Venezuela. And Rule 60(b)(6) independently justifies relief because the unique facts here—involving the United States' policy decision to recognize a new foreign government and the new government's efforts to restore the rule of law—qualify as extraordinary circumstances.

Second, the current OFAC sanctions regime demonstrates that maintaining the writ is not in the public interest. With its recognition of the Guaidó administration, the United States reoriented its sanctions policy toward preserving Venezuelan assets for the people of Venezuela, tightening the restrictions on any transfer or encumbrance of PDVSA property. The governing law now makes prospective maintenance of a writ of attachment unlawful without a specific license. Until OFAC decides that such an encumbrance is consistent with the policy objectives of the United States, the writ cannot continue in force.

**ARGUMENT**

I. **UNIQUE AND MATERIAL FACTUAL DEVELOPMENTS JUSTIFY RELIEF FROM THE AUGUST 2018 ALTER-EGO DETERMINATION**

1. Circumstances are radically different than they were when this Court made its sovereign immunity alter-ego determination in August 2018. In January 2019, the United States formally recognized the Guaidó government and declared the Maduro government illegitimate. Interim President Guaidó and the elected National Assembly—the recognized representatives of the new government—promptly put in place critical safeguards that establish PDVSA's independence from Venezuela. *See* D.I. 185 (Pacheco Decl.); D.I. 186 (Vecchio Decl.); D.I. 187 (Brewer-Carías Decl.). Those changes negate any claim that PDVSA's property can continue to be treated as the property of Venezuela. Crystallex does not seriously dispute that the facts as they exist today cannot support an alter-ego finding.[1]

Crystallex argues that those changed circumstances do not matter because the FSIA alter-ego analysis should be frozen in amber as of August 2018. But that argument is irreconcilable with Crystallex's whole theory of this case. Indeed, it contradicts the premise on which Crystallex induced this Court to issue the writ of attachment in the first place. What Crystallex set out to establish for FSIA purposes, and what this Court accepted in 2018, was that the PDVH shares held by PDVSA are really Venezuela's property, such that by executing on those shares Crystallex would obtain satisfaction of the judgment that it holds against Venezuela. *Crystallex Int'l Corp.*

---

[1] At best, Crystallex halfheartedly asserts that "the Maduro regime continues to dominate PDVSA within Venezuela" and argues against "mere speculation about PDVSA's future under the Guaidó regime." D.I. 199 at 12. Those points are irrelevant. Only the acts of the legitimate Guaidó government—and not the acts of the illegitimate Maduro regime—matter for purposes of assessing *Venezuela*'s relationship with other entities. *Zivotofsky v. Kerry*, 576 U.S. 1, 18 (2015) ("'[W]hen the executive branch of the government' assumes 'a fact in regard to the sovereignty of any island or country, it is conclusive upon the judicial department.'" (citation omitted)). And there is no basis for Crystallex's own unsupported speculation about a future change in course.

*v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 394 (D. Del. 2018). Crystallex has made quite clear at every stage of these proceedings that it has never sought to impose *liability* on PDVSA for Venezuela's past acts. D.I. 70 at 8 ("Crystallex does not seek to hold PDVSA liable for its judgment[.]"); Crystallex C.A. Br. 29-30; Br. in Opp. at 14-19 (distinguishing between actions for garnishment and actions to impose liability).

For that reason, this case has always proceeded on the understanding that it is the *present* relationship between Venezuela and PDVSA that matters for immunity purposes. This Court explained that it "view[ed] the present case as involving" only the argument that the PDVH shares are, "*at this time*, really the property of [Venezuela]." *Crystallex*, 333 F. Supp. 3d at 394 (emphasis added) (quoting D.I. 70 at 7-8). And both this Court and the Third Circuit expressly contemplated that this Court may revisit the attachment in light of changed circumstances. *Id.* at 425; *see Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 144 (3d Cir. 2019).[2]

Because Crystallex finds the change in factual circumstances inconvenient, it now tries a bait-and-switch, insisting that past conduct alone dictates the result. But Crystallex never makes any attempt to explain why that should be so. After all, if the PDVH shares cannot, in fact, be treated as Venezuela's property under the FSIA "at [the] time" when Crystallex seeks to obtain them, *Crystallex*, 333 F. Supp. 3d at 394, then no basis exists for overcoming immunity and forcing a sale of those shares to satisfy Venezuela's obligation to Crystallex based on prior acts of expropriation. That things might have been different at some moment in the past makes not a whit of difference. In this case, the shares are no more appropriate to attach (or execute on) now than any other property that previously passed through Venezuela's hands and into someone else's.

---

[2] This Court also declined to give collateral estoppel effect to its August 2018 orders on the ground that circumstances have changed and "even the *Crystallex Asset Proceeding* record may possibly be expanded." D.I. 154 at 15.

3

Crystallex relies on cases that looked to past conduct in making an alter-ego determination, but those cases are inapposite. In *every one* of those cases—including *Bancec*—courts relied on actions that occurred years before the decision because the underlying alter-ego theory sought to directly *impose liability* on the alter ego for those past actions. *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983) (alter-ego theory allows foreign instrumentality to be "held liable" for sovereign's actions); *Groden v. N&D Transp. Co., Inc.*, 866 F.3d 22, 30 (1st Cir. 2017) (alter-ego theory based on "when the withdrawal liability arose"); *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (review of alter-ego decision "holding the Government liable"). Such a theory has no relevance here. PDVSA is not being *punished* for Venezuela's past failure to observe corporate separateness, and the Court found that PDVSA had not been used to defraud or otherwise injure Crystallex. *See Crystallex*, 333 F. Supp. 3d at 403-04. And none of Crystallex's cases involved a property-attachment alter-ego theory. *See id.* at 394 (distinguishing between theories).

If anything, the imperative to update the analysis with pertinent factual developments is especially crucial in this unique case because the changed circumstances come as a result of formal recognition by the United States of a new foreign government.[3] That recognition carries significant legal consequences—most notably, that courts must accept that the recognized government speaks on behalf of the sovereign and that its acts are valid acts of state. *See, e.g.*, *Guaranty Trust Co. v. United States*, 304 U.S. 126, 137 (1938) ("What government is to be regarded here as representative of a foreign sovereign state is a political rather than a judicial question, and is to be determined by the political department of the government."). Giving effect to the recognized

---

[3] Many other countries have likewise formally recognized the Guaidó government, and the list continues to grow. *See, e.g.*, D.I. 184 at 4; *U.K. Court Recognizes Guaido as Venezuela's President in Gold Dispute*, U.S. News & World Report (July 2, 2020).

government's institution of juridical separateness between Venezuela and PDVSA also gives due respect to U.S. recognition of the Guaidó government and to that government's sovereign acts.

    2. Contrary to Crystallex's arguments, Venezuela has satisfied the procedural requirements for relief under both Rule 60(b)(5) and 60(b)(6).

    a. Crystallex's argument that Venezuela is not entitled to invoke Rule 60(b)(5) lacks merit. Rule 60(b)(5) permits the Court to vacate the writ of attachment if "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). Contrary to Crystallex's suggestion (D.I. 199 at 7-8), Rule 60(b)(5) "is not strictly limited to injunctions or even equitable remedies." *Tapper v. Hearn*, 833 F.3d 166, 170 (2d Cir. 2016); *see* 11 *Fed. Prac. & Proc.* (Wright & Miller) § 2863 (3d ed. 2020) (Rule 60(b)(5) not limited to "relief that historically would have been granted in courts of equity"). Rather, Rule 60(b)(5) applies so long as the judgment is "prospective" or "executory," in that it regulates ongoing conduct. *See Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 272-73 (3d Cir. 2002); *Marshall v. Bd. of Educ.*, 575 F.2d 417, 425 (3d Cir. 1978).

    This Court's orders issuing the writ of attachment are prospective in exactly that sense. The writ is inherently forward-looking, as it prevents PDVSA from disposing of its shares until the Court may take action with respect to execution. D.I. 95 at 7. Crystallex itself has recognized the prospective nature of the writ in describing attachment as a mechanism to "preserve the status quo pending execution." Crystallex C.A. Supp. Br. 22; D.I. 199 at 9. And this Court has done the same, recognizing that the writ is subject to revision if the record is supplemented with "additional evidence [that] materially alters [its] findings." *Crystallex*, 333 F. Supp. 3d at 425.

    Rule 60(b)(5) therefore permits this Court to vacate the writ of attachment if "a significant change either in factual conditions or in law" renders continued enforcement "detrimental to the public interest." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (citation omitted). That standard is

5

easily satisfied here for the reasons stated above. Maintaining the ongoing encumbrance on PDVSA's shares is clearly detrimental to the public interest. This Court has acknowledged that PDVSA is a foreign sovereign instrumentality, presumptively entitled to immunity in U.S. courts. *Crystallex*, 333 F. Supp. 3d at 396. Yet the sole basis for exercising jurisdiction over PDVSA and issuing the writ of attachment—that PDVSA's shares can be treated as Venezuela's property because the two are alter egos—no longer holds true. Maintaining the writ despite that significant change in law and fact would be detrimental to the public interest, not least because it would raise significant comity and foreign-relations concerns. Moreover, *Bancec*'s alter-ego doctrine is grounded in "equity." 462 U.S. at 613; *see Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 260 (5th Cir. 2016). Because PDVSA is now juridically independent from Venezuela for immunity purposes, it is hardly equitable to continue to treat them as if they were still alter egos.

Crystallex contends (D.I. 199 at 9-12) that Venezuela is not entitled to relief under Rule 60(b)(5) because the Chávez and Maduro regimes expropriated Crystallex's property and resisted paying the judgment, leaving Venezuela with unclean hands. That argument is misconceived: Venezuela acknowledges its *retrospective* liability to Crystallex and does not contend that the recognition of the Guaidó government alters that liability. But the question here is whether, as a prospective matter, it is in the public interest to attach *PDVSA*'s property to satisfy the judgment against Venezuela. That question turns on the actions taken by the U.S.-recognized Guaidó government to protect PDVSA's juridical independence. Crystallex's argument therefore boils down to the assertion that this Court should disregard the effect of the Guaidó government's actions on the prospective equities solely because of wrongs committed by previous regimes. But that would be impossible to square with the United States' recognition of the Guaidó government and the consequent principle that the Guaidó government's official acts must be treated as valid

6

acts of state in U.S. courts. *Zivotofsky*, 576 U.S. at 11. This Court must consider the propriety of the writ in light of the official actions of the currently recognized Venezuelan government. Those actions make vacatur appropriate.

  b. Crystallex's argument that relief under Rule 60(b)(6) is unwarranted also lacks merit. The United States' recognition of the Guaidó government is a significant intervening change in law that gives rise to extraordinary circumstances justifying relief. *See Cox v. Horn*, 757 F.3d 113, 122 (3d Cir. 2014). The Guaidó government, working with the National Assembly, has adopted bona fide measures to rectify the actions of predecessor regimes, including by instituting important changes to remove PDVSA from governmental control. And those acts represent part of the newly recognized government's efforts to address an unprecedented humanitarian and economic crisis in Venezuela. Those events have vitiated the legal and factual basis for the writ of attachment, and rendered the writ likely to inflict extreme hardship on the Venezuelan people and the U.S.-recognized government in Venezuela. The writ therefore both lacks a valid basis and contravenes the United States' foreign-relations interests. Those exceptional circumstances set this case apart and warrant relief under Rule 60(b)(6).

  In arguing otherwise, Crystallex suggests that the Guaidó government's institution of measures to ensure juridical separateness between Venezuela and PDVSA should be viewed as an "eleventh . . . hour" litigation tactic that should be disregarded as the actions of a "judgment debtor claiming to clean up its act under new leadership *after* it has been found to have abused the corporate form." D.I. 199 at 14. Not so. Although a court might disregard the changed position of a private litigant as unconvincing or ephemeral in light of its past actions, there is no justification for disregarding the official actions of the Guaidó government in that manner. The newly recognized government's actions—which take the form of statutes enacted by the National

Assembly and decrees issued by President Guaidó—are not directed to, and do not simply have consequences for, this litigation. Rather, those validly enacted laws establish the new Venezuelan legal framework governing the relationship between Venezuela and PDVSA for all purposes and for the benefit of the Venezuelan people. *See* D.I. 184 at 5-6 (citing enactments); Pacheco Decl. ¶¶ 8-13; Vecchio Decl. ¶¶ 6-8; Brewer-Carías Decl. ¶¶ 16-19. To dismiss the Guaidó government's actions as litigation tactics would be effectively to disregard the valid acts of state by the currently recognized government—which this Court may not do. *See* pp. 4–5, *supra*. And in all events, the ultimate source of the changed circumstances here is the action of the *United States* (a non-party) in recognizing the Guaidó government; that highly consequential action by the Executive Branch establishes the controlling law in this case and may hardly be characterized as a litigation tactic. The extraordinary circumstances presented here warrant Rule 60(b)(6) relief.

## II. THE CURRENT OFAC SANCTIONS REGIME DEMONSTRATES THAT THE WRIT SHOULD NOT BE MAINTAINED

The sanctions regulations that now apply to PDVSA's property establish that maintaining the writ of attachment without a license is contrary to current U.S. foreign policy judgments and the public interest. Crystallex attempts to downplay the significance of the intervening changes in the sanctions regime as simply an expansion of the blocked categories of Venezuelan assets. To the contrary, those changes represent a pivotal shift in U.S. foreign policy: upon recognizing the Guaidó government, the United States reoriented the objective of the sanctions regime from seeking to prevent the Maduro government from exploiting Venezuelan assets, to "preserve [Venezuela's] assets for the people of Venezuela." D.I. 184 at 17. That fundamental alteration in the very purpose of the sanctions regime, and the Executive's consequent application of the OFAC blocking regulations to the assets at issue here, warrant vacating the writ.

    1. The Executive Branch's 2019 expansion of the sanctions regime compels the conclusion

that maintaining the attachment is contrary to the United States' current foreign-policy judgments. Crystallex does not meaningfully dispute *any* of the premises underlying that conclusion.

While Crystallex argues at length that no pre-issuance license was required when this Court issued the writ of attachment, Crystallex does not dispute that the sanctions regulations *now* prohibit any creditor from obtaining an unlicensed writ of attachment to enforce an existing judgment against Venezuela. 31 C.F.R. § 591.506(c); *id.* § 591.407. Nor does Crystallex dispute that if it sought the writ of attachment today, it would first need to obtain a license. *Id.* § 202(e); *see* D.I. 199 at 18. The continued existence of the writ is therefore irreconcilable with the Executive Branch's current judgment that before such a writ issues, the Executive must have the opportunity to consider the effects of the writ on U.S. and Venezuelan interests. The Executive did not have that opportunity here. It does not matter that Crystallex obtained the writ before U.S. policy towards Venezuela changed; the writ is a prospective order and is therefore subject to reevaluation in light of changed law and circumstances, including current U.S. foreign policy.

Nor does Crystallex have any response to the point that maintaining the writ is inconsistent with the Executive Branch's stated purpose of preserving Venezuela's assets for use by the *people of Venezuela* and the Guaidó government. Although Crystallex protests that permitting it to execute against PDVSA's assets will not result in the property's transfer to the Maduro regime, that is not the point; whether the assets ends up in the hands of the Maduro regime or those of a creditor, the result is contrary to the U.S. policy of preserving the assets for the Venezuelan people.

In sum, the Executive Branch, in the exercise of its constitutional authority over foreign affairs, has concluded that supporting the Guaidó Government and the Venezuelan people is of paramount importance. Reassessing the writ is necessary in view of "the controlling role of the political branches" in foreign relations. *Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1328 (2016).

9

2. Vacatur is particularly appropriate because the now-applicable sanctions regime does not simply reflect U.S. foreign policy judgments; it is also best understood to render prospective maintenance of the writ unlawful. D.I. 184 at 17-19. The governing rules now prohibit the "enforcement of any . . . judgment" by means of a "judicial process" that purports to "*alter or affect*" PDVSA's property, unless that judicial process is authorized by a specific license from OFAC. 31 C.F.R. § 591.506(c) (emphasis added); *id.* § 591.407 (interpreting OFAC regulations). The continued application of a writ of attachment *fieri facias* is precisely such an action. It "affects" PDVSA's "blocked" property by encumbering it in furtherance of execution. *See* 10 Del. C. § 3511. Crystallex acknowledges as much, observing that quashing the writ would remove an encumbrance on Venezuela's property.[4] D.I. 199 at 18. The creation and continued application of such encumbrances is just what OFAC sought to control by blocking all PDVSA property.[5]

## CONCLUSION

The Court should grant relief under Rule 60(b) and dissolve the writ of attachment.

| | |
|---|---|
| Dated: July 13, 2020 | Respectfully submitted, |
| | |
| OF COUNSEL: | /s/ Stephen C. Childs |
| Donald B. Verrilli, Jr. | A. Thompson Bayliss (#4379) |
| Elaine J. Goldenberg | Stephen C. Childs (#6711) |
| Ginger D. Anders | ADAMS & BAYLESS LLP |
| MUNGER, TOLLES & OLSON LLP | 20 Montchanin Road, Suite 200 |
| 1155 F Street NW, 7th Floor | Wilmington, Delaware 19807 |
| Washington, D.C. 20004 | (302) 778-1000 |
| (202) 220-1100 | bayliss@abramsbayliss.com |
| | childs@abramsbayliss.com |

---

[4] Crystallex argues that quashing the writ of attachment would also require a license. But the regulations state that a license is required for "the enforcement of any . . . judgment" through "judicial process," without mentioning the vacatur of such process. 31 C.F.R. § 591.506(c).

[5] Crystallex argues that construing 31 C.F.R. § 591.202(e) to render the writ null and void would raise takings concerns. Crystallex is wrong: as this Court has made clear, the continued maintenance of the writ has always been subject to changes in circumstances, including with respect to the sanctions regime. *See Crystallex*, 333 F. Supp. 3d at 425.