**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | |
| Plaintiff, | |
| v. | Case No. 1:17-mc-00151-LPS |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | |
| Defendant. | |

**REPLY OF THE BOLIVARIAN REPUBLIC OF VENEZUELA,
PETRÓLEOS DE VENEZUELA, S.A., AND PDV HOLDING, INC.
<u>REGARDING POTENTIAL FUTURE PROCEDURES</u>**

OF COUNSEL:
Donald B. Verrilli, Jr.
MUNGER, TOLLES & OLSON LLP
1155 F Street NW, 7th Floor
Washington, D.C.  20004
(202) 220-1100

George M. Garvey
Seth Goldman
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California  90071
(213) 683-9100


Nathan P. Eimer
Lisa S. Meyer
EIMER STAHL LLP
224 S. Michigan Avenue, Suite 1100
Chicago, Illinois  60604
(312) 660-7600

A. Thompson Bayliss (#4379)
Stephen C. Childs (#6711)
ABRAMS BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware  19807
(302) 778-1000
bayliss@abramsbayliss.com
childs@abramsbayliss.com

*Attorneys for Defendant
Bolivarian Republic of Venezuela*


Samuel T. Hirzel, II (# 4415)
Aaron M. Nelson (# 5941)
HEYMAN ENERIO
GATTUSO & HIRZEL LLP
 300 Delaware Avenue, Suite 200
Wilmington, Delaware  19801
(302) 472-7300
shirzel@hegh.law
anelson@hegh.law

*Attorneys for Intervenor
Petróleos de Venezuela, S.A.*

Kenneth J. Nachbar (#2067)
Alexandra M. Cumings (#6146)
MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
1201 N. Market Street, 16th Floor
P. O. Box 1347
Wilmington, Delaware  19899
(302) 658-9200
knachbar@mnat.com
acumings@mnat.com

*Attorneys for Garnishee PDV Holding, Inc.*

## TABLE OF CONTENTS

**Page**

ARGUMENT ....................................................................................................................1

    **I.**    CRYSTALLEX'S SALE PROCESS IS A BLATANT ATTEMPT TO
OBTAIN A WINDFALL, IN EXCESS OF ITS JUDGMENT, AT THE
EXPENSE OF THE REPUBLIC, PDVSA, AND SIMILARLY
SITUATED CREDITORS....................................................................................1

    **II.**    CRYSALLEX'S SALE PROCESS IS NOT PERMITTED, LET ALONE
REQUIRED, BY DELAWARE LAW. ................................................................3

    **III.**    IT WOULD SERVE NO PURPOSE TO ESTABLISH SALE
PROCEDURES BEFORE THE ISSUANCE OF AN OFAC LICENSE
ALLOWING A SALE. ........................................................................................4

    **IV.**    THE CRYSTALLEX RESPONSE SHOWS WHY, IF A SALE MUST
OCCUR, PDVSA SHOULD CONDUCT IT .......................................................6

CONCLUSION.................................................................................................................8

# TABLE OF AUTHORITIES

**Page**

**STATE CASES**

*Burge v. Fidelity Bond & Mortg. Co.*,
   648 A.2d 414 (Del. 1994) ........................................................................4

*Deibler v. Atl. Props. Grp., Inc.*,
   652 A.2d 553 (Del. 1995) ........................................................................3

**STATUTES - OTHER**

8 Del. *C.* § 324 ...........................................................................................3, 6

8 Del. C. § 324(a) ...........................................................................................3

**RULES - OTHER**

Fed. R. Civ. P. 60(b) ......................................................................................4

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Art. III .........................................................................................4

**OTHER AUTHORITIES**

Ingrid Wuerth, *The Due Process and Other Constitutional Rights of Foreign
   Nations*, 88 Fordham L. Rev. 633 (2019) ..................................................4

Law on Protection of Privacy of Communications (Dec. 16, 1991)................6

Statement of the President of the Comisión Permanente de Energía y Petróleo
   (July 1, 2020) ............................................................................................5

United States Dep't of the Treasury, *Treasury Targets Venezuelan President
   Maduro's Inner Circle and Proceeds of Corruption in the United States* at 2
   (Sept. 25, 2018).........................................................................................5

Defendant Bolivarian Republic of Venezuela (the "Republic" or "Venezuela"), Intervenor Petróleos de Venezuela, S.A. ("PDVSA"), and Garnishee PDV Holding, Inc. ("PDVH") submit this reply brief to the Answering Brief (D.I. 198) ("Crystallex Response") of Plaintiff Crystallex International Corp. ("Crystallex") in opposition to the Opening Brief of the Republic, PDVSA and PDVH Regarding Potential Future Proceedings and the Opening Brief of Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V. (together, "ConocoPhillips") Regarding Conduct of PDV Holding, Inc. Share Sale.

In their Answering Brief Regarding Future Sale Procedures (D.I. 196) (the "Answering Brief"), the Republic, PDVSA and PDVH refuted most of the points that Crystallex has argued in the Crystallex Response.  The Republic, PDVSA and PDVH will not repeat their refutation here. This reply will limit itself to aspects of the Crystallex Response not previously addressed.

## ARGUMENT

## I.   CRYSTALLEX'S SALE PROCESS IS A BLATANT ATTEMPT TO OBTAIN A WINDFALL, IN EXCESS OF ITS JUDGMENT, AT THE EXPENSE OF THE REPUBLIC, PDVSA, AND SIMILARLY SITUATED CREDITORS.

Crystallex's proposed sale procedure—a one-and-done auction, with no opportunity for meaningful due diligence, negotiations, or regulatory approvals, conducted in the shadow of an OFAC-approval requirement, and with Crystallex itself having a $962 million head start in the bidding—is not engineered to produce a fair price for the stock of PDVH. Instead, it is transparently designed to help Crystallex obtain a massive windfall, well in excess of its judgment, by taking control of multibillion-dollar U.S. CITGO Petroleum Corporation through a sale process that discourages serious bidders and clears a path for Crystallex to win the auction with a credit bid of as little as $300 million. D.I. 182 at 19. Allowing Crystallex to proceed as it proposes also would severely prejudice not just the Republic and PDVSA, who would be deprived of potentially

billions of dollars in value, but also (1) PDVH, CITGO, and the bondholders who depend on the value of PDVH being preserved, and (2) other creditors of the Republic and PDVSA, whose ability to recover against these assets (assuming they obtain the right to do so) would be seriously diminished

In its response, Crystallex derides the Republic's commitment to a global restructuring of Venezuela's debts, claiming the Republic is motivated by "disinterest in paying its debts" or "[t]he fact that paying its debts is unpopular in Venezuela." D.I. 198 at 2. This completely ignores the current reality, which is that the Republic is now represented in these proceedings by a different government than the one that illegally seized Crystallex's assets in Venezuela and that represented the Republic at the time of the Court's alter ego ruling. The government of interim President Juan Guaido—unlike Crystallex—is publicly committed to a global restructuring of Venezuela's debts that treats all legitimate creditors fairly. D.I. 191-2. What the Republic opposes is piecemeal collection proceedings in which the first creditor to obtain an order of execution obtains a windfall (or, as Crystallex put it, a "prize"[1]) at the expense of the Republic and its other creditors.

The question presented here is not, "should Crystallex get paid or not?" It is, "should Crystallex get paid sooner rather than later, even if that means giving Crystallex a windfall in excess of its judgment at the expense of the Republic, PDVSA, and other creditors?" The answer must be no, for reasons that include the OFAC sanctions that a sale would violate, the important policy considerations that underlie those sanctions, and the flaws in Crystallex's attachment that are the subject of the pending motions under Rules 60(b) and 69. Of course, because even Crystallex acknowledges that no sale can happen without an OFAC license, the more immediate

---

[1] Crystallex's counsel told the *Wall Street Journal*, "The prize here is Citgo and we are getting closer to it."  D.I. 125-1, Ex. A.

question is, "should the Court order a sale process for a sale that is unlikely to happen anytime soon and may never happen?" The answer to that, too, should be no.

## II.    CRYSALLEX'S SALE PROCESS IS NOT PERMITTED, LET ALONE RE-QUIRED, BY DELAWARE LAW.

As explained in prior briefs, there is no precedent—in Delaware or elsewhere—for an execution sale of the stock of a business as large and complex as PDVH. Crystallex does not dispute that Section 324 never contemplated the sale of hundreds of millions of dollars of stock in a privately held, multibillion-dollar oil refining and distribution company. Therefore, there is no "simple and straightforward statutory process," as Crystallex would have the Court believe. D.I. 198 at 4.

In fact, Crystallex's proposal contravenes Section 324, which requires a sale of only "[s]o many of the shares" of attached stock "as shall be sufficient to satisfy the debt." (8 Del. C. § 324(a)). Crystallex does not—and cannot—assert that its proposed sale process would produce a fair price. Nor does Crystallex deny that its proposed sale process would reduce the value of PDVH, requiring the sale of more shares than in a proper process and, perhaps, clearing the way for Crystallex to take control of PDVH through its conscience-shockingly low credit bid. If there must be a sale process, then it must be a professional sale process led by PDVSA that promotes price competition among a large group of serious bidders by providing for pre-sale marketing, due diligence, negotiations, and regulatory approvals. Any other process would destroy value and require the sale of more shares than would otherwise have to be sold to satisfy Crystallex's judgment.

It would also violate the due process rights of the judgment debtor, which Delaware law requires the Court to safeguard throughout the execution process. *See Deibler v. Atl. Props. Grp., Inc.*, 652 A.2d 553, 557 (Del. 1995) ("[A] person's right to due process of law continues throughout the execution process and that right impresses certain limitations upon that process.").

3

Crystallex responds that the Republic and PDVSA have "no due process rights to violate." D.I. 198 at 13, n. 10. That is wrong. Crystallex cites no Supreme Court authority for this proposition, and recent scholarship concludes that the question is not only unsettled, but that lessons from the founding and from Article III of the Constitution support the application of litigation-related constitutional protections—*i.e.*, due process—to foreign states. Ingrid Wuerth, *The Due Process and Other Constitutional Rights of Foreign Nations*, 88 Fordham L. Rev. 633 (2019). In any event, the American companies PDVH and CITGO indisputably have due process rights, to say nothing of American creditors of the Republic and PDVSA who might look to PDVH for a recovery.

Finally, regardless of the due process question, Delaware law provides for any "party with an interest in the property sold" or who has "suffered detriment" by a sale to challenge the propriety and outcome of the sale before it is confirmed by the Court. *Burge v. Fid. Bond & Mortg. Co.*, 648 A.2d 414, 418 (Del. 1994). That includes the Republic, PDVSA, the American subsidiaries, bondholders, and other creditors. Therefore, even if the Court accepts Crystallex's argument that the Republic and PDVSA lack due process rights, it cannot order the value-destroying sale process Crystallex wants without exposing the outcome of the sale to a challenge.

## III.   IT WOULD SERVE NO PURPOSE TO ESTABLISH SALE PROCEDURES BE-FORE THE ISSUANCE OF AN OFAC LICENSE ALLOWING A SALE.

The relief Crystallex is asking for at this point—for the Court to order a sale process when it is unclear when, if ever, OFAC will allow a sale—is entirely hypothetical. Even Crystallex admits it is not asking the Court to permit "an auction process" to proceed "without further OFAC licensing." D.I. 198 at 11 & n. 8. Thus, even assuming the Court were to decide the attachment is valid and enforceable in the face of the pending Rule 60(b) motion and the motion to quash, for the Court to rule now on how a potential sale of PDVH shares might go forward would be premature and would serve no useful purpose. On the contrary, such a ruling could result in serious harm.

4

In their opening brief, the Republic, PDVSA and PDVH challenged Crystallex to identify "any real-world harm" Crystallex would suffer if the Court were to await OFAC's decision on Crystallex's pending application before attempting to design a sale process. D.I. 188 at 8. The Crystallex Response does not identify any such harm, because there is none. Crystallex is a defunct company controlled by financial investors who have made a bet on a litigation recovery against the Republic. Their judgment is accruing interest and, at most, they may suffer a brief delay in obtaining a recovery if the Court orders a sale process *after* an OFAC license is granted (if one is ever granted) instead of *before* an OFAC license is granted.

With respect to the harm that a premature decision to design a sale process could inflict on Venezuela and on United States foreign policy, Crystallex says in essence: tough luck.  While arguing that Crystallex is not responsible for any use the Maduro regime might make of this litigation, Crystallex itself eagerly exploits misleading Maduro propaganda.  Crystallex cites a blog article that in turn reports on a propaganda video posted by Maduro surrogate Delcy Rodriguez. (D.I. 198 at 6-7.) Rodriguez is an OFAC-sanctioned member of Maduro's "inner circle," whom Maduro appointed "to help him maintain power and solidify his authoritarian rule."[2]  Rodriguez's propaganda video included misleading and incomplete excerpts from an surreptitiously recorded confidential briefing by the Republic's former Special Attorney General to the Standing Commission on Energy and Petroleum of the National Assembly.[3]  The recording violated Venezuelan

---

[2] *See* United States Dep't of the Treasury, *Treasury Targets Venezuelan President Maduro's Inner Circle and Proceeds of Corruption in the United States* at 2 (Sept. 25, 2018), Ex. 1 to the Decl. of Stephen C. Childs filed herewith.

[3] *See* Statement of the President of the Comisión Permanente de Energía y Petróleo (July 1, 2020), with certified translation thereof, Childs Decl., Ex. 2.

law,  which makes it a crime to "clandestinely . . . record[] a communication between other peo-ple," and provides that such a recording "shall not have any Evidentiary Effect."[4]

Rodriguez's video made over-the-top allegations of conspiracy against officials of the Re-public, the United States, the World Bank and various companies.  Crystallex cites a blog post , D.I. 198 at 6, n. 2, whose headline alluded to Rodriguez' claims of conspiracy between the Repub-lic and ConocoPhillips (among many others). The Republic, PDVSA and PDVH object to the matter offered by Crystallex as unauthenticated double (at least) hearsay based on Maduro propa-ganda and purported quotations from an illegal recording.  Without waiving that objection, the quotes themselves stand for nothing more than an acknowledgment that if Crystallex succeeds in forcing a quick sale, it could thwart the Republic's effort to work out its legacy indebtedness in an orderly manner that treats similar creditors similarly.  That danger is no secret. The possibility of such a "run on the bank" is discussed in the Court's Memorandum Order, D.I. 154 at 6, and that is precisely what the Republic is trying to avoid.

In summary, no sale can happen without an OFAC license. Even Crystallex acknowledges that. Therefore, to order a sale process at this point would serve no purpose except to hand the Maduro regime a propaganda victory at the expense of the legitimate interim government.

## IV.    THE CRYSTALLEX RESPONSE SHOWS WHY, IF A SALE MUST OCCUR, PDVSA SHOULD CONDUCT IT

Crystallex agrees with the Republic, PDVSA and PDVH that a forced sale in this case would be an execution sale under 8 *Del. C.* § 324, not a judicial sale, and that no ground exists to appoint a receiver.  Where it differs is that Crystallex contends that only a sheriff or a Marshal can

---

[4] Law on Protection of Privacy of Communications (Dec. 16, 1991), Art. 2, Art. 7, Childs Decl., Ex. 3.

conduct such a sale.  For this proposition it cites section 324 itself, but section 324 does not mention the sheriff (or the Marshal), and is utterly silent on the question of who may conduct a public sale. Nor do any of the cases cited by Crystallex address the question. And Crystallex has cited no precedent for a sheriff's or Marshal's that looks anything like what it proposes here. Crystallex's effort to bootstrap the writ of attachment into an order for a sheriff's sale, D.I. 198 at 12-13, is no better.  The writ commands the Marshals Service "to attach" the shares, but it does not command or authorize the Marshals Service "to sell." D.I. 95, page 7 of 8. The order for the issuance of the writ provided that a sale "would not begin until the Court separately issues an order of sale." *Id.,* page 5 of 8. Thus, even if a writ *fieri facias* could determine who should conduct the sale, the writ issued in this case did not do so.

The Crystallex Response demonstrates why, if a sale is to occur, it should be conducted by PDVSA, which has access to the information buyers will need, the ability to negotiate the complex ancillary issues a sale process would necessarily involve, and every incentive to preserve as much of its ownership interest in the company as possible. Crystallex has no incentive to minimize the number of shares sold or respect the due process rights of others, including PDVSA. Quite the opposite. Crystallex's incentive is to minimize the valuation of PDVH so that Crystallex can buy the entire company by credit bidding its judgment (or perhaps as little as $300 million of its judgment), claiming the "prize" it has long sought in these proceedings, *i.e.*, the full value of PDVH, which is far in excess of the $962 million Crystallex claims to be owed and even farther in excess of the $62.5 million that Tenor Special Situation I, L.P. paid for a first-priority lien on Crystallex's recovery. D.I. 196 at 14. And not even Crystallex seriously contends that the Marshals Service has the tools to manage a sale of this complexity; to the contrary, Crystallex tacitly concedes that "due

diligence and negotiations" between potential buyers and PDVSA and its affiliates would be nec-

essary. D.I. 188 at 10.

## **CONCLUSION**

For the foregoing reasons, and those set forth in the opening and response briefs of the

Republic, PDVSA, PDVH, and CITGO, the Court should not order any sale process at this point,

but if it does, the process should be as set forth in the opening brief and led by PDVSA.

Dated: July 13, 2020

OF COUNSEL:
Donald B. Verrilli, Jr.
MUNGER, TOLLES & OLSON LLP
1155 F Street NW, 7th Floor
Washington, D.C. 20004
(202) 220-1100

George M. Garvey
Seth Goldman
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California  90071
(213) 683-9100

OF COUNSEL:
Nathan P. Eimer
Lisa S. Meyer
EIMER STAHL LLP
224 S. Michigan Avenue, Suite 1100
Chicago, Illinois  60604
(312) 660-7600

Respectfully submitted,

ABRAMS BAYLISS LLP

*/s/ A. Thompson Bayliss*
A. Thompson Bayliss (#4379)
Stephen C. Childs (#6711)
20 Montchanin Road, Suite 200
Wilmington, Delaware  19807
(302) 778-1000
bayliss@abramsbayliss.com
childs@abramsbayliss.com

*Attorneys for Defendant Bolivarian*
*Republic of Venezuela*

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

*/s/ Samuel T. Hirzel*
Samuel T. Hirzel, II (# 4415)
Aaron M. Nelson (# 5941)
300 Delaware Avenue, Suite 200
Wilmington, Delaware  19801
(302) 472-7300
shirzel@hegh.law
anelson@hegh.law

*Attorneys for Intervenor*
*Petróleos de Venezuela, S.A.*

MORRIS, NICHOLS, ARSHT & TUNNELL
LLP

*/s/ Kenneth Nachbar*
Kenneth J. Nachbar (#2067)
Alexandra M. Cumings (#6146)
1201 N. Market Street, 16th Floor
P. O. Box 1347
Wilmington, Delaware  19899
(302) 658-9200
knachbar@mnat.com
acumings@mnat.com

*Attorneys for Garnishee PDV Holding, Inc.*