## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-mc-00151-LPS |
| | ) | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## REPLY IN SUPPORT OF PETRÓLEOS DE VENEZUELA, S.A.,
## PDV HOLDING, INC., AND CITGO PETROLEUM CORPORATION'S
## <u>MOTION TO QUASH THE WRIT OF ATTACHMENT</u>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Nathan P. Eimer
Lisa S. Meyer
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com

Dated: July 13, 2020

Kenneth J. Nachbar (#2067)
Alexandra M. Cumings (#6146)
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@mnat.com
ACumings@mnat.com

*Attorneys for PDV Holding, Inc., and*
*CITGO Petroleum Corporation*

Additional Counsel listed on signature page

## <u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT .................................................................................................................... 1

   I.  Delaware Law Does Not Authorize Attachment of the PDVH Shares ............................ 1

      A.  Under Fed. R. Civ. P. 69(a), Delaware law determines whether PDVSA's property
          can be attached to satisfy a judgment against Venezuela. ............................................ 1

      B.  Federal common law does not supersede Rule 69 when a judgment debtor is a foreign
          state .......................................................................................................................... 4

      C.  Delaware law requires a showing of fraud or similar injustice. .................................. 6

   II.  Crystallex's Attempts to Create Procedural Barriers Lack Merit ...................................... 7

      A.  Collateral estoppel does not bar the motion................................................................. 7

      B.  PDVH and CITGO have standing to challenge the attachment.................................... 8

   III. Crystallex Must Seize the Share Certificate to Effect a Valid Attachment ...................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Af-Cap, Inc. v. Republic of Congo,*
  462 F.3d 417 (5th Cir. 2006) .................................................................... 7

*Bancec) First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,*
  462 U.S. 611 (1983) ...................................................................... 4, 5, 7

*Bank of N.Y. v. Yugoimport,*
  745 F.3d 599 (2d Cir. 2014) ...................................................................... 5

*Bartlett v. General Motors,*
  127 A.2d 470 (Del. Ch. 1956) .................................................................. 9

*Bramble Transp., Inc. v. Sam Senter Sales, Inc.,*
  294 A.2d 97 (Del. Super. Ct. 1971) ...................................................... 3, 8

*Buechner v. Farbenfabriken Bayer Aktiengesellschaft,*
  154 A.2d 684 (Del. 1959) ...................................................................... 3, 6

*Burgos-Yantin v. Municipality of Juana Diaz,*
  909 F.3d 1 (1st Cir. 2018) ...................................................................... 1, 2

*Castro v. IIT Corp.,*
  598 A.2d 674 (Del. Ch. 1991) .............................................................. 8, 9

*Christiansen v. Mech. Contractors Bid Depository,*
  404 F.2d 324 (10th Cir. 1968) .................................................................. 4

*Crosse v. BCBSD, Inc.,*
  836 A.2d 492 (Del. 2003) ...................................................................... 6, 7

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
  333 F. Supp. 3d 380 (D. Del. 2018) ................................................ 4, 5, 7, 10

*Custer v. McCutcheon,*
  283 U.S. 514 (1931) .............................................................................. 1

*Dexia Credit Local v. Rogan,*
  629 F.3d 612 (7th Cir. 2010) .................................................................... 3

*Doe v. Holy See,*
  557 F.3d 1066 (9th Cir. 2009) .................................................................. 5

*Exp.-Imp. Bank of China v. Grenada,*
  768 F.3d 75 (2d Cir. 2014) ...................................................................... 4

*FG Hemisphere Assocs., LLC v. Congo,*
  455 F.3d 575 (5th Cir. 2006) ................................................................ 4, 5

*Foremost-McKesson, Inc. v. Islamic Republic of Iran,*
  905 F.2d 438 (D.C. Cir. 1990) .................................................................. 5

*FTC v. Olmstead*,
   528 F.3d 1310 (11th Cir. 2008) ................................................................ 2

*Gabovitch v. Lundy*,
   584 F.2d 559 (1st Cir. 1978) .................................................................... 1

*Harrington v. Hollingsworth*,
   1996 WL 769635 (Del. Super. Ct. Dec. 20, 1996) ................................... 8

*Hendricks & Lewis PLLC v. Clinton*,
   766 F.3d, 991 (9th Cir. 2014) .................................................................. 5

*Huron Holding Corp. v. Lincoln Mine Operating Co.*,
   312 U.S. 183 (1941) .................................................................................. 3

*IFC Interconsult, AG v. Safeguard International Partners, LLC*,
   438 F.3d 298 (3d Cir. 2006) ..................................................................... 3

*Janvey v. Libyan Inv. Auth.*,
   840 F.3d 248 (5th Cir. 2016) .................................................................... 5

*Kingsland Holding, Inc. v. Bracco*,
   1996 WL 104257 (Del. Ch. Mar. 5, 1996) ............................................... 3

*Leroy v. City of Houston*,
   906 F.2d 1068 (5th Cir. 1990) .................................................................. 2

*Montrose Med. Grp. v. Bulgar*,
   243 F.3d 773 (3d Cir. 2001) ..................................................................... 9

*Pac. Reinsurance Mgmt. Corp. v. Fabe*,
   929 F.2d 1215 (7th Cir. 1991) .................................................................. 2

*Peacock v. Thomas*,
   516 U.S. 349 (1996) .................................................................................. 5

*Peterson v. Islamic Republic of Iran*,
   627 F.3d 1117 (9th Cir. 2010) .................................................................. 4

*Republic of Argentina v. NML Capital, Ltd.*,
   573 U.S. 134 (2014) .................................................................................. 5

*Schreiber v. Kellogg*,
   50 F.3d 264 (3d Cir. 1995) ................................................................... 1, 2

*Smith v. Bayer Corp.*,
   564 U.S. 299 (2011) .................................................................................. 7

*Star Ins. Co. v. Risk Mktg. Grp. Inc.*,
   561 F.3d 656 (7th Cir. 2009) .................................................................... 2

*Supporters to Oppose Pollution, Inc. v. Heritage Grp.*,
   973 F.2d 1320 (7th Cir. 1992) .................................................................. 4

*United States v. Miller*,
   229 F.2d 839 (3d Cir. 1956) ................................................................. 1, 2

*United States v. Reyes-Romero,*
    959 F.3d 80 (3d Cir. 2020) ............................................................. 7

*United States v. Yazell,*
    382 U.S. 341 (1966) ....................................................................... 2

*Wallace ex. rel. Cencom Cable Income Partners II v. Wood,*
    752 A.2d 1175 (Del. Ch. 1999) ...................................................... 6

*Winston & Strawn, LLP v. McLean,*
    843 F.3d 503 (D.C. Cir. 2016) ....................................................... 5

*Womack v. De Witt,*
    10 A.2d 504 (Del. Super. 1939) ..................................................... 8

*Wye Oak Tech., Inc. v. Republic of Iraq,*
    666 F.3d 205 (4th Cir. 2011) ......................................................... 8

**Statutes**

6 *Del. C.* § 8-112 .................................................................... 8, 9, 11

8 *Del. C.* § 159 ................................................................................ 3

8 *Del. C.* § 168 .............................................................................. 10

8 *Del. C.* § 169 ................................................................................ 9

8 *Del. C.* § 324 ................................................................... 2, 3, 8, 9

8 *Del. C.* § 365 ................................................................................ 9

8 *Del. C.* § 366 ................................................................................ 9

10 *Del. C.* ch. 35 ............................................................................ 9

25 *Del. C.* § 306 ............................................................................. 3

28 U.S.C. § 727 ............................................................................. 1

28 U.S.C. § 1610 ........................................................................ 5, 6

**Rules**

Fed. R. Civ. P. 24(a) ..................................................................... 9

Fed. R. Civ. P. 69 ......................................................... i, 1, 2, 4, 5, 6

Del. R. Super. Ct. 24(a) ................................................................ 8

## ARGUMENT

### I.   Delaware Law Does Not Authorize Attachment of the PDVH Shares

   *A.   Under Fed. R. Civ. P. 69(a), Delaware law determines whether PDVSA's property can be attached to satisfy a judgment against Venezuela.*

Movants' opening brief demonstrated that the question at this stage of the proceedings is whether Delaware law, applicable by virtue of Federal Rule of Civil Procedure 69(a), permits the attachment of PDVSA's shares in PDVH. Crystallex proposes a novel reading of Rule 69 that would limit application of state law to the narrow mechanics of execution while leaving courts free to apply federal common law to any purported "substantive" issues bearing on the execution. This proposal conflicts with Third Circuit holdings that "a federal court must follow relevant state law in a proceeding to execute on a judgment, unless a federal statute dictates otherwise," *Schreiber v. Kellogg*, 50 F.3d 264, 267 (3d Cir. 1995), and that "matters of attachment, execution and the like are to be determined by the law of the forum and not the law of the place where judgment was rendered or a debt contracted." *United States v. Miller*, 229 F.2d 839, 840-41 (3d Cir. 1956); *see also* Fed. R. Civ. P. 69(a) (state law applies to the procedure both "on execution" and "in proceedings supplementary to and in aid of judgment or execution"); *Burgos-Yantin v. Municipality of Juana Diaz*, 909 F.3d 1, 9 (1st Cir. 2018) (under Rule 69, "state law governs not only the parties' substantive rights [concerning execution of a judgment] but also the procedure to be followed").[1]

---

[1] "Rule 69(a) represents the drafters' adoption of prior practice under former 28 U.S.C. § 727, Rev. Stat. § 916," *Gabovitch v. Lundy*, 584 F.2d 559, 561 (1st Cir. 1978), which provided that "[t]he party recovering a judgment in any common-law cause in any district court, shall be entitled to similar remedies upon the same, by execution or otherwise, to reach the property of the judgment debtor, as are provided . . . by the laws of the State in which such court is held." *Custer v. McCutcheon*, 283 U.S. 514, 415-16 (1931); *accord* Fed. R. Civ. P. 69 advisory committee's note (1937). Rule 69(a) was amended in 2007 "as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules." Fed. R. Civ. P. 69 advisory committee's note (2007). The changes were "intended to be stylistic only." *Id.*

Crystallex further contends that while "the 'types of property a judgment creditor may attach'" is a "procedural" question governed by state law, whether it can attach PDVSA's shares in PDVH to satisfy a judgment against Venezuela is a question of "substantive" law. D.I.199:38. Crystallex does not explain why the latter question is any less "procedural" than the former one. In any event, the Supreme Court, the Third Circuit, and every court of appeals to have considered the question has held that, under Rule 69, state law governs not just the types of property that can be attached, but also what remedies are available, restrictions on those remedies, exceptions to those restrictions, the parties against whom a creditor may proceed, whether a third party is holding property of the judgment debtor, whether a party has an ownership interest in particular property, and whether an interest is subject to attachment.[2]

As explained in Movants' opening brief, 8 *Del. C.* § 324(a) does not permit Crystallex to attach the PDVH shares to satisfy its judgment against Venezuela, because Venezuela does not "appear[] on the books of the corporation to hold or own [those] shares." D.I.179:16. PDVH's

---

[2] *See, e.g.*, *United States v. Yazell*, 382 U.S. 341, 355 (1966) (noting that state-law homestead exemptions apply to executions under Rule 69); *Burgos-Yantin*, 909 F.3d at 9 (under Puerto Rico law, "direct attachment of the funds of a [municipal] public agency [is] impermissible"); *Star Ins. Co. v. Risk Mktg. Grp. Inc.*, 561 F.3d 656, 662 (7th Cir. 2009) ("whether third parties held assets of the defendants, the judgment debtors, in the supplementary proceeding" under a fraudulent transfer theory); *FTC v. Olmstead*, 528 F.3d 1310, 1313-14 (11th Cir. 2008) (whether "a court may order a judgment-debtor to surrender all 'right, title, and interest' in the debtor's single-member limited liability company to satisfy an outstanding judgment"); *Schreiber*, 50 F.3d at 267-72 (3d Cir.) (whether plaintiff could "execute on [defendant's] interest in [a] trust" under exception to state's prohibition on executions against spendthrift trusts *and* whether the defendant had an interest in the trust); *Pac. Reinsurance Mgmt. Corp. v. Fabe*, 929 F.2d 1215, 1219 (7th Cir. 1991) (stating that "once a judgment has been registered, state law determines which assets may be reached" and holding that "a judgment creditor in Illinois has no greater rights in an asset than does the judgment debtor"); *Leroy v. City of Houston*, 906 F.2d 1068, 1085 (5th Cir. 1990) (state law prohibited execution on property belonging to city in its governmental or municipal capacity); *Miller*, 229 F.2d at 841 (3d Cir.) (state law recognized an exception to a statute prohibiting attachment of laborer's wages where attachment was sought by government); *see also* cases from the Second, Ninth, and Tenth Circuits cited below.

books correctly list PDVSA as the shares' owner. D.I.177:2.[3] Thus, Crystallex invokes a supplemental proceeding under Delaware law on the theory that Venezuela, PDVSA's sole shareholder, has an equitable interest in the PDVH shares. Crystallex acknowledged this in its motion for a writ of attachment, expressly relying on a Delaware case for the proposition that "'[i]ncident to its power to enforce [a] judgment through the seizure and sale of property located in Delaware, the Court … may determine the nature of [a defendant's] interest in … stock' and 'in its discretion may decide to disregard the existence of a subsidiary corporation and look directly to the specific assets of a subsidiary for the satisfaction of [a] claim against the parent.'" D.I.3.1:34 (quoting *Kingsland Holding, Inc. v. Bracco*, 1996 WL 104257, at *7 (Del. Ch. Mar. 5, 1996)); *see also Bramble Transp., Inc. v. Sam Senter Sales, Inc.*, 294 A.2d 97, 100 (Del. Super. Ct. 1971) ("An attachment creditor reaches only the interest which a debtor had at the time of attachment . . . ."). The availability of this equitable remedy and whether Venezuela has such an equitable interest are just as much questions of state law as is the availability of the stock attachment remedy under 8 *Del. C.* § 324 in the first place. *See Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 193 (1941) ("[A]ttachment is wholly the creature of, and controlled by, the law of the state.").[4]

Indeed, federal courts regularly apply state law to determine whether property may be attached on an alter ego theory as part of such supplementary proceedings. *See, e.g., Dexia Credit*

---

[3] As a foreign corporation, *see* D.I.28.1:21-22, PDVSA is authorized to own property—including shares of stock—in Delaware. *See* 8 *Del. C.* § 159; *id.* § 371(a); 25 *Del. C.* § 306.

[4] Crystallex points to *IFC Interconsult, AG v. Safeguard International Partners, LLC*, 438 F.3d 298, 320 (3d Cir. 2006), but that case concerned whether the garnishee owed an indemnification obligation under the terms of its agreement with the debtor, which contained a choice-of-law provision. *See id.* at 303 n.1, 320; *IFC Interconsult, AG v. Safeguard International Partners, LLC*, No. 2:04-mc-00107, ECF No. 64-1 at 5 (E.D. Pa. Dec. 23, 2004). Even if there were a choice of law issue here, Delaware courts apply Delaware law to decide ownership interests in the stock of a Delaware corporation. *See Buechner v. Farbenfabriken Bayer Aktiengesellschaft,* 154 A.2d 684, 687 (Del. 1959); *Kingsland Holding, Inc.*, 1996 WL 104257, at *7.

*Local v. Rogan*, 629 F.3d 612, 622-23 (7th Cir. 2010) (state law allowed judgment creditor to reach

assets in the hands of third parties under an alter ego theory); *Supporters to Oppose Pollution, Inc.*

*v. Heritage Grp.*, 973 F.2d 1320, 1327 (7th Cir. 1992) (refusing to attach property held by alleged

alter ego where state law "allow[ed] collection only against named judgment debtors and those the

debtors themselves could have pursued"); *Christiansen v. Mech. Contractors Bid Depository*, 404

F.2d 324, 325 (10th Cir. 1968) (state law permitted judgment creditor to attach successor corpora-

tion's property to satisfy a judgment against old corporation).[5]

### B. Federal common law does not supersede Rule 69 when a judgment debtor is a foreign state

Crystallex mistakenly contends that. where the judgment debtor is a foreign state, federal

common law displaces Rule 69(a)'s command that state law determines whether property is sub-

ject to attachment. But, as explained in Movants' opening brief, D.I.179:14-15, courts hold that

Rule 69(a)'s command applies in foreign state execution proceedings to the same extent as it would

in private party execution proceedings.[6]

Nor does *Bancec* (*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462

U.S. 611 (1983)), require a different result. *Bancec* may supply the standard for determining the

substantive liability of an instrumentality for the actions of a foreign state. But that is not the rele-

vant question. As this Court has recognized, Crystallex is not seeking to hold PDVSA liable on its

---

[5] This Court also previously recognized that whether PDVSA's property can be attached to sat-
isfy Crystallex's judgment could vary depending on where the property is located, based on "mate-
rial" differences between state laws. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
333 F. Supp. 3d 380, 425 (D. Del. 2018).

[6] *See, e.g.*, *Exp.-Imp. Bank of China v. Grenada*, 768 F.3d 75, 87 (2d Cir. 2014) (under New
York law, property that once belonged to foreign state "now lawfully belong[ed] to a third party");
*Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1130-31 (9th Cir. 2010) (California law de-
termined location of "intangible right to payment" owned by foreign state); *FG Hemisphere As-
socs., LLC v. Congo*, 455 F.3d 575, 595-96 n.4 (5th Cir. 2006) (Texas law determined whether
Congo and its national oil company possessed attachable interests in mineral royalties).

judgment against Venezuela, and cannot do so because of the rule of *Peacock v. Thomas*, 516 U.S. 349, 357 (1996), that a court may not use ancillary jurisdiction to "impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *See Crystallex*, 333 F. Supp. 3d at 391. Also, the counterclaim in *Bancec* was brought under international law, not Rule 69, and the Court invoked federal common law only after determining that no statute speci-fied the law to apply. 462 U.S. at 622-23. Rule 69, which has the force of a statute, *Winston & Strawn v. McLean*, 843 F.3d 503, 506 (D.C. Cir. 2016), "requires that state law controls execution proceedings absent express statutory authority, not federal common law." *Hendricks & Lewis v. Clinton*, 766 F.3d 991, 996 (9th Cir. 2014). And Rule 69(a) is not displaced when the judgment debtor is a foreign state. *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 140 (2014).[7]

Relying on snippets of quotations taken out of context, *see* D.I.199:16, 36, Crystallex as-serts that this Court and the Third Circuit held that *Bancec* displaces Delaware law on whether a judgment creditor of Venezuela can look to PDVSA's assets for satisfaction, and that clearing the FSIA hurdle renders PDVSA's property "subject to" execution. But the FSIA does not determine whether assets are "subject to" attachment or execution in the sense now relevant; it merely deter-mines whether they are immune from attachment or execution otherwise authorized by law. *See* 28 U.S.C. § 1610(a); *see also FG Hemisphere Assocs., LLC*, 455 F.3d at 595 ("A finding that an exception to executional immunity applies . . . is not the same as concluding that execution is appropriate or that writs of garnishment should issue."). That is in marked contrast to the Terrorism

---

[7] *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 448 (D.C. Cir. 1990), *Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 264 (5th Cir. 2016), and *Doe v. Holy See*, 557 F.3d 1066, 1077 (9th Cir. 2009), to which Crystallex points, all involved alter-ego attribution for pur-poses of *jurisdiction* under the FSIA. In fact, *Foremost-McKesson* recognized that attribution "for purposes of jurisdiction" can be a separate question from attribution under a different standard or at a different stage of proceedings. *See* 905 F.2d at 445-46. And in *Bank of N.Y. v. Yugoimport*, 745 F.3d 599, 613-15 (2d Cir. 2014), the defendant invoked *Bancec* as a defense to *liability*.

Risk Insurance Act, which provides that "the property of a foreign state against which a judgment is entered under section 1605A, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, *is subject to* attachment in aid of execution, and execution, upon that judgment." 28 U.S.C. § 1610(g)(1).

Congress has not established a general standard for attaching the property of foreign-state owned corporations located within the United States to satisfy a judgment against the state itself. Nor did Congress deputize the federal courts to legislate such a standard. Quite the contrary: Rule 69(a) tells the courts to apply state standards. Crystallex does not explain why this question, alone among all the questions that can arise in a judgment collection proceeding against a foreign state, must be made under federal law. The interests of a unified foreign policy are entirely vindicated by the protections offered by the FSIA, which prevent any "parochial" state law from permitting an attachment of the property of a foreign state under more permissive terms than set forth under the FSIA. It could only damage the interests of United States foreign policy for federal courts to ignore applicable law where foreign-state owned corporations are involved.

   *C.  Delaware law requires a showing of fraud or similar injustice.*

Crystallex's contention that Delaware law permits reverse veil-piercing because of purported "unfairness," D.I.199:39, is unsupportable. *Buechner v. Farbenfabriken Bayer Aktiengesellschaft,* 154 A.2d 684, 687 (Del. 1959), holds that only fraud can justify attachment in these circumstances, and the Delaware Supreme Court more recently explained that "[t]o state a 'veil-piercing claim,' the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003). To the extent that the Court of Chancery has recognized veil piercing where "the corporate structure cause[d] fraud or *similar* injustice," *Wallace ex. rel. Cencom Cable Income Partners II v. Wood*, 752 A.2d 1175, 1183-84 (Del. Ch. 1999), that

court is clear that the injustice must be caused by some misuse of the corporate form itself. This Court already held that Crystallex cannot satisfy that standard. *Crystallex*, 333 F. Supp. 3d at 403.[8]

## II. Crystallex's Attempts to Create Procedural Barriers Lack Merit

### A. *Collateral estoppel does not bar the motion.*

Crystallex's contention that this motion is barred by collateral estoppel is meritless. Collateral estoppel applies only where a previously decided issue arises "in a subsequent action," not in a later stage of the same case. *United States v. Reyes-Romero*, 959 F.3d 80, 93 (3d Cir. 2020). Moreover, the first element of the doctrine, that the issues are identical, is not satisfied here. The issue previously decided was whether PDVSA and its property were immune under the FSIA. The issue now is whether Delaware law permits a judgment creditor to attach shares of corporate stock belonging to a non-debtor corporation to satisfy a judgment against the corporation's shareholder. *See Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 429 & n.11 (5th Cir. 2006). Even where two issues are given the same "worn epithet," *see Bancec*, 462 U.S. at 623, (for example, "alter ego"), they are not identical if the standards for deciding them are different, *see Smith v. Bayer Corp.*, 564 U.S. 299, 308-12 (2011), which is the case here. *See* D.I.179:19-20.

Crystallex's contention that this Court already decided that Delaware law permits attachment is equally misguided. After holding that the PDVH shares were not immune from attachment under the FSIA, the Court determined that issuance of the writ was appropriate based on Crystallex's representations, but it clearly left for later whether Crystallex's representations can withstand a motion to quash. *See Crystallex*, 333 F. Supp. 3d at 425. That is the standard procedure on writs of attachment, as Crystallex itself has recognized. *See* D.I.3.1:9. The Court's concern at

---

[8] Crystallex's baseless allegation that Venezuela "used PDVSA as a sham to access U.S. credit markets," D.I.199:18, is insufficient. Delaware requires the corporation to have been *created* as a sham to *defraud* creditors. *See Crosse*, 836 A.2d at 497.

the first stage of the proceedings was not whether the PDVH shares can be attached to satisfy Crystallex's judgment against Venezuela, "but rather whether [Crystallex] is entitled to the opportunity to make such an argument at all." *Wye Oak Tech., Inc. v. Republic of Iraq*, 666 F.3d 205, 212 n.9 (4th Cir. 2011). Having cleared away the shares' attachment immunity, Crystallex is entitled to make the argument. But it is not entitled to win on it.

> B. *PDVH and CITGO have standing to challenge the attachment.*

Crystallex's assertion that PDVH and CITGO lack standing can also be easily dispensed with. CITGO and PDVH are no "mere intermeddlers," *Harrington v. Hollingsworth*, 1996 WL 769635, at *2 (Del. Super. Ct. Dec. 20, 1996), but parties entitled to intervene (as this Court has recognized with respect to CITGO, D.I.154:12) under Fed. R. Civ. P. 24(a) and Del. R. Super. Ct. 24(a). As Crystallex asserts, *see* D.I.182:7, a majority of the shares of PDVH could be sold on execution, which could trigger the change of control provisions in CITGO's indenture agreements, to the detriment of CITGO, CITGO Holding, Inc., and PDVH, *see* D.I.101; D.I.139:15. Moreover, Crystallex asks the Court to order PDVH to reissue the certificate representing PDVSA's shares, D.I. 199:48, which would require PDVH to expend money to comply and could subject PDVH to liability to a party that possesses or comes into possession of the certificate. *See Castro v. IIT Corp.*, 598 A.2d 674, 682-84 (Del. Ch. 1991). CITGO and PDVH's independent interests in preventing such injuries by quashing the writ distinguish *Harrington* and *Womack v. De Witt*, 10 A.2d 504, 507 (Del. Super. Ct. 1939), which held that attachment would not affect any right or interest of the garnishee corporation. *See Bramble Transp., Inc.*, 294 A.2d at 99-100 (allowing garnishee corporation to move to quash based on its "interest relating to the attached property").

## III.   Crystallex Must Seize the Share Certificate to Effect a Valid Attachment

Attempting to evade the fact that a valid attachment of certificated shares of stock under Delaware law requires physical seizure of the underlying certificates, D.I.179:20-22, Crystallex

argues that 8 *Del. C.* § 324(a)'s requirement is ineffective because 6 *Del. C.* § 8-112(a) states that § 324 *itself* is an exception to the physical seizure requirement. That is not how statutes work. The inclusion of 324 as an exception cannot swallow up 324(a) itself. The Delaware legislature specifically explained that the 1998 amendment was intended to "establish that the execution process it provides is available, . . . as to certificated securities, only upon satisfaction of the requirements of section 8-112 of Title 6, including presentation of the stock certificate(s)." D.I.179.1:14.[9] To read the amendment differently would render it a nullity. (Crystallex's argument that the legislature was trying to give effect only to §§ 8-112(c) and (d) makes no sense. If that had been the intention, then the amendment would have said "unless §§ 8-112(c) and (d) . . . have been satisfied.")

Crystallex observes that § 8-112(a) lists 8 *Del. C.* §§ 169, 365, and 366 as potentially providing exemptions from the physical seizure rule. But these sections work together to permit the Court of Chancery to exercise jurisdiction through sequestration. Sections 365 and 366 permit Chancery to sequester in-state property, and § 169 provides that "the situs of the ownership of the capital stock" of a Delaware corporation is in Delaware. D.I.179.1:21-22. And no provision of Chapter 35 of title 10 permits the attachment of stock by service on the issuer.

Crystallex's invocation of the "extraordinary remedy" of judicial estoppel, which applies only where a party has taken two "irreconcilably inconsistent" positions in a bad faith attempt to mislead the court, *Montrose Med. Grp. v. Bulgar*, 243 F.3d 773, 777, 784 (3d Cir. 2001), is meritless. Movants did not concede the perpetual validity of the writ of attachment by seeking a stay or by opposing Crystallex's demand that PDVSA post a bond in the full amount of a judgment for which PDVSA is not liable. On appeal, PDVSA argued that the writ was "a nullity" and was void

---

[9] Thus, Crystallex's pre-amendment case law, such as *Castro*, 598 A.2d 674, and *Bartlett v. General Motors*, 127 A.2d 470 (Del. Ch. 1956), *see* D.I.199:43, 48, is irrelevant on this point.

*ab initio* for want of jurisdiction, D.I.98:18; PDVSA Br. at 69-73, No. 18-2797 (3d Cir. Dec. 10, 2018), and all parties and the Court anticipated subsequent proceedings to challenge the writ's validity. *See Crystallex*, 333 F. Supp. 3d at 425; D.I.154:12; Hr'g Tr. 21:11-13, 23:7-23, Nov. 13, 2019; D.I.70:2 n.4. Crystallex presents no basis for its suggestion that PDVH deliberately withheld that it did not possess the certificate or that Movants knew of the legal consequences of Crystallex's own chosen method for seeking to attach the property when they sought the stay.

Crystallex opposed a stay and requested a bond based on fears that other judgment creditors might obtain priority over Crystallex or that PDVSA might loot CITGO. Movants responded that OFAC sanctions precluded such actions and that, in any event, service of the writ prohibited disposition of the PDVH shares unless and until the writ was quashed by this or another court. D.I.98:11, 20, 22. But they never suggested the writ would be immune from subsequent challenge as invalid under Delaware law. Nor was Crystallex prejudiced by the stay. The writ was never disturbed, and no other creditor obtained an attachment, as their claims were stayed too.

In its brief, Crystallex asks the Court to order PDVSA to deliver the certificate to the Marshals. To the best of the PDVSA ad hoc board's knowledge, PDVSA does not possess the certificate. It may be in the possession of the Maduro regime, which illegally occupies PDVSA's offices in Caracas. Crystallex will have to seek an order directing PDVSA to initiate the process for cancellation and reissuance of the certificate under 8 *Del. C.* § 168 (which contains a bond requirement) before it can be attached, a step that, like a turnover order, would require Crystallex to obtain an OFAC license and establish the propriety of such an order under the FSIA. D.I.196:13 n.5.[10]

---

[10] Crystallex claims 6 *Del. C.* § 8-112(e) and 8 *Del. C.* §§ 168 and 324(c) authorize the Court to order PDVH to cancel and reissue the certificate. The Answering Brief of Venezuela et al. Regarding Potential Future Procedures explains why these statutes do not obviate the threshold seizure requirement or permit the Court to order PDVH to cancel and reissue the certificate. *See* D.I.196:12-15.

Respectfully submitted,

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Nathan P. Eimer
Lisa S. Meyer
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com

/s/ Kenneth J. Nachbar
Kenneth J. Nachbar (#2067)
Alexandra M. Cumings (#6146)
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@mnat.com
ACumings@mnat.com

*Attorneys for PDV Holding, Inc., and
CITGO Petroleum Corporation*

HEYMAN ENERIO GATTUSO & HIRZEL LLP

s/ Samuel Taylor Hirzel, II
Samuel Taylor Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302)472-7300
Email: shirzel@hegh.law

*Attorney for Petroleos de Venezuela, S.A.*

11

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2020, the foregoing was electronically filed with the

Clerk of the Court, via the ECF system. Service of that filing was made by operation of the

United States District Court for the District of Delaware's electronic filing system to ECF-regis-

tered counsel.

*/s/ Kenneth J. Nachbar*
Kenneth J. Nachbar (#2067)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@mnat.com
