**EXHIBIT 1**



**United States Department of State**

*Bureau of Western Hemisphere Affairs*
*Washington, D.C. 20520-6258*

July 16, 2020

Ethan P. Davis
Assistant Attorney General, Acting
Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Cc: Andrea Gacki, Director, Office of Foreign Assets Control

*Re: Crystallex Int'l Corp. v. Bolivarian Rep. of Venezuela (D. Del. C.A. No. 17-mc-151-LPS)*

Dear Mr. Davis:

I would appreciate your assistance in forwarding this letter to the District Court for the District of Delaware. This letter is in response to the Court's invitation on December 12, 2019 to file a Statement of Interest concerning the United States' views on this matter.

As the Special Representative for Venezuela since January 24, 2019, I, Elliott Abrams, confirm the following:

Facing an illegitimate regime led by Nicolás Maduro and an inner circle of corrupt officials, Venezuela is in the midst of an unprecedented humanitarian, political and economic crisis. This can be directly tied to a two-decade process, which Maduro continues today, in which the government has destroyed democratic institutions, repressed free speech, committed serious human rights abuses, and ruined the prosperity Venezuela once enjoyed.

The regime has become a source of great instability in the entire region because this continuing conduct has resulted in the greatest refugee crisis in Latin American history. More than five million Venezuelans have left their country seeking freedom, sustenance, or both. This wave has created great social and economic problems for the recipient nations: nearly two million individuals in Colombia, roughly 800,000 in Peru, and an estimated 300,000 each in Ecuador and in Chile. Moreover, the Maduro regime has built a close relationship with foreign adversaries of the United States and which but for the regime's existence would have little foothold in South America: Russia, China, and most recently Iran. That these relationships include military and intelligence aspects makes them even more worrying for U.S. national security.

There have been significant developments within Venezuela since 2018 that have precipitated a fundamental shift in U.S. policy. Fraudulent presidential elections in Venezuela in May 2018 failed to produce any winner. On January 23, 2019, the National Assembly, in its role as the only legitimate branch of government duly elected by the Venezuelan people, invoked the Venezuelan constitution to declare the office of the presidency vacant.[1] Consistent with the Venezuelan constitution, the President of the National Assembly, Juan Guaidó, was sworn in as Interim President of the country. On January 23, 2019, President Trump issued a public statement officially recognizing Guaidó as the Interim President of Venezuela.[2] The same day, Secretary of State Pompeo also issued a statement concerning the United States' recognition of the "new Venezuelan government."[3] On January 5, 2020, Secretary Pompeo congratulated Guaidó on his re-election as president of the National Assembly, and confirmed: "The United States and 57 other countries continue to regard him as the legitimate leader of the National Assembly and thus the legitimate interim president of Venezuela."[4]

United States policy toward Venezuela is to support the full restoration of democracy, beginning with free, fair, and transparent presidential elections in which the Venezuelan people choose their leaders. To achieve this, the Secretary of State recently proposed a "Democratic Transition Framework" to resolve Venezuela's crisis that is rooted in a peaceful, democratic transition that calls for Maduro to step aside, and the establishment of a broadly acceptable, transitional government to administer free and fair presidential elections. This framework also sets forth a viable pathway for lifting Venezuela-related U.S. sanctions.[5]

Since recognizing the Guaidó government on January 23, 2019, the U.S. government has taken steps, including through additional economic sanctions, to ensure Maduro is not able to liquidate in fire sales the financial assets of Venezuela that are located in United States jurisdictions (and especially CITGO, the crown jewel of PdVSA). The United States government recognizes the authority of Interim President Guaidó to preserve these assets. To this end, the National Assembly and President Guaidó have taken such steps, including by appointing new ad hoc boards of directors for PdVSA, PDVH, and CITGO. The State Department takes note of the Government of Venezuela's recent statements to this Court regarding the current independence of these boards and has no reason to doubt the veracity of those representations.

Insofar as interim President Guaidó has responsibility over Venezuela's assets, he also has responsibility for its liabilities. Unfortunately, as a result of years of mismanagement through the regimes of former Presidents Chávez and Maduro, Venezuelan financial assets have been imperiled. CITGO, as part of the U.S.-based assets of PDVH and its parent company PdVSA, is one such example of a national resource that has been placed in legal and economic jeopardy as a result of the actions of former Venezuelan governments. Critical to U.S.

---

[1] https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-interim-president-venezuela/

[2] *Id.*

[3] https://www.state.gov/recognition-of-juan-guaido-as-venezuelas-interim-president/

[4] https://ve.usembassy.gov/the-united-states-congratulates-interim-president-juan-guaido-on-his-re-election-as-president-of-the-national-assembly/

[5] https://www.state.gov/democratic-transition-framework-for-venezuela/

foreign policy, the United States assesses that the domestic legitimacy of the interim government under Guaidó would be severely eroded were a forced sale of CITGO to take place while the illegitimate Maduro regime still attempts to cling to de facto power in Caracas. The efforts by creditors to enforce judgments against Venezuela by taking immediate steps toward a conditional sale of PdVSA's U.S.-based assets, including PDVH and CITGO, are detrimental to U.S. policy and the interim government's priorities. Should these assets be advertised for public auction at this time, the Venezuelan people would seriously question the interim government's ability to protect the nation's assets, thereby weakening it and U.S. policy in Venezuela today.

Whatever the eventual settlement of Venezuela's debts or the fate of other accounts or assets, CITGO today is a special case. Every Venezuelan knows of this company and it is viewed, as are Venezuela's oil reserves, as a central piece of the national patrimony. It is clear that its loss through a forced sale in a U.S. court would be a great political victory for the Maduro regime, which has already claimed that the United States and Guaidó are conspiring to 'steal' CITGO. The impact on Guaidó, the interim government, and U.S. foreign policy goals in Venezuela, would be greatly damaging and perhaps beyond recuperation.

Sincerely,

Elliott Abrams

Elliott Abrams
Special Representative for Venezuela
United States Department of State
2201 C Street N.W.,
Washington D.C. 20520