IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>*Plaintiff,*<br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>*Defendant.* | C.A. No. 17-mc-00151-LPS |

### SUPPLEMENTAL BRIEF IN SUPPORT OF THE STATEMENT OF INTEREST OF THE UNITED STATES

OF COUNSEL:

ETHAN P. DAVIS
Acting Assistant Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director
Federal Programs Branch

JOSEPH E. BORSON (Va. Bar No. 85519)
JOSEPH J. DEMOTT (Va. Bar No. 93981)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Phone: (202) 514-1944
Fax: (202) 616-8470
Email: joseph.borson@usdoj.gov

*Attorneys for the United States*

Dated: August 28, 2020

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I. Crystallex Mischaracterizes the United States' Position on Venezuela's Rule 60(b) Motion ................................................................................................................ 2

II. Crystallex Offers No Reason to Proceed Toward a Forced Sale of PDVH Shares While Its License Application Remains Pending Before OFAC ......................................... 4

CONCLUSION ............................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Alperin v. Vatican Bank*,
  410 F.3d 532 (9th Cir. 2005) .................................................................................................. 7

*Am. Ins. Ass'n v. Garamendi*,
  539 U.S. 396 (2003) ................................................................................................................ 7

*Crystallex Int'l Corp. v. Bolivarian Rep. of Venezuela*,
  333 F. Supp. 3d 380 (D. Del. 2018)*, aff'd & remanded*, 932 F.3d 126 (3d Cir. 2019), *cert. denied*, 207 L. Ed. 2d 936 (2020) .......................................................................................... 3

*Doe v. Exxon Mobil Corp.*,
  473 F.3d 345 (D.C. Cir. 2007) ................................................................................................ 7

*Freund v. Rep. of France*,
  592 F. Supp. 2d 540 (S.D.N.Y. 2008), *aff'd sub nom. Freund v. Société Nationale des Chemins de fer Français*, 391 F. App'x 939 (2d Cir. 2010) .................................................. 8

*Gross v. German Found. Indus. Initiative*,
  456 F.3d 363 (3d Cir. 2006) ................................................................................................ 6, 9

*Henglein v. Colt Indus. Operating Corp.*,
  260 F.3d 201 (3d. Cir. 2001) .................................................................................................. 6

*Joo v. Japan*,
  413 F.3d 45 (D.C. Cir. 2005) .................................................................................................. 6

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ................................................................................................................ 5

*Medellín v. Texas*,
  552 U.S. 491 (2008) ................................................................................................................ 7

*Mujica v. AirScan, Inc.*,
  771 F.3d 580 (9th Cir. 2014) .................................................................................................. 6

*Permanent Mission of India to the United Nations v. City of N.Y.*,
  551 U.S. 193 (2007) ................................................................................................................ 7

*Rep. of Argentina v. NML Capital, Ltd*,
  573 U.S. 134 (2014) ................................................................................................................ 7

*Rep. of Austria v. Altmann*,
  541 U.S. 677 (2004) ............................................................................................................ 6, 7

*Sosa v. Alvarez-Machain*,
  542 U.S. 692 (2004) .................................................................................................................. 6

*Ungaro-Benages v. Dresdner Bank AG*,
  379 F.3d 1227 (11th Cir. 2004) ................................................................................................. 7

*Weixum v. Xilai*,
  568 F. Supp. 2d 35 (D.D.C. 2008) ............................................................................................ 9

*Whiteman v. Dorotheum GMbH & Co. KG*,
  431 F.3d 57 (2d Cir. 2005) ........................................................................................................ 6

**Statutes**

5 U.S.C. § 706 ................................................................................................................................ 8

28 U.S.C. § 517 .............................................................................................................................. 9

**INTRODUCTION**

In its Statement of Interest, the United States articulated how the current situation in Venezuela implicates important U.S. foreign policy and national security interests. *See* D.I. 212 at 2-4. It explained how those interests could be imperiled if this Court were to authorize Crystallex to proceed toward a forced sale of PDV Holding, Inc. ("PDVH") at this time. *See id.* at 3-4, 11-13. It explained that there is no reason to take damaging prefatory steps toward a sale while Crystallex's application for a license—which all agree is necessary to execute the sale—remains pending before the Office of Foreign Assets Control ("OFAC"). *See id.* at 1, 9, 13. The United States also noted that circumstances had materially changed in Venezuela since this Court originally issued the writ of attachment, and those changes could justify granting the Bolivarian Republic of Venezuela's Rule 60(b) motion. *See id.* at 8.

Crystallex fails to meaningfully engage with the United States' Statement of Interest. It spends the bulk of its brief mischaracterizing the United States' position on Venezuela's Rule 60(b) motion, largely echoing its earlier arguments that such a motion is legally unjustified and that foreign policy concerns do not necessitate such relief. *See generally* D.I. 219. But the United States' Statement focused on the *factual* changes in circumstances that warrant this Court's review; it expressed no firm legal position on whether such circumstances require Rule 60(b) relief. Changed circumstances are relevant to whether the original analysis should be reconsidered. Accordingly, Crystallex's argument that foreign policy concerns do not merit Rule 60(b) relief is largely irrelevant, as the United States has not advanced such an argument.

But Crystallex is largely silent on the core United States position: that U.S. foreign policy and national security interests would be needlessly imperiled if this Court were to allow Crystallex to take steps toward a public auction of PDVH shares at this time. This Court has considerable

discretion in determining how and when to structure a sale; the United States has reasonably explained why its foreign policy interests would be imperiled by a sale at this time; and courts routinely defer to the United States' articulations of foreign policy harm when considering pending litigation. Crystallex provides no reason to call any of those points into question. Indeed, Crystallex expressly admits that OFAC licensing is an appropriate way of addressing foreign policy considerations, and the United States respectfully submits that this Court should not authorize steps toward a sale absent an OFAC license, as such a decision could imperil U.S. foreign policy interests while bringing Crystallex no closer to satisfying its judgment.

## ARGUMENT

### I. Crystallex Mischaracterizes the United States' Position on Venezuela's Rule 60(b) Motion.

Much of Crystallex's response to the United States' Statement of Interest is directed at a straw man. Crystallex argues, at length, that the United States' foreign policy concerns do not justify granting Venezuela's pending motion for relief under Federal Rule of Procedure 60(b). *See* D.I. 219 at 7-14. But the United States has not argued that its foreign policy interests "warrant[] stripping Crystallex's lien on PDVH," *id.* at 7, or otherwise requested deference regarding the legal questions surrounding the Rule 60(b) motion. *See* D.I. 212 at 4-8. Instead, the United States requests that the Court give weight to U.S. foreign policy concerns when considering whether to take further steps toward a forced sale at this time. *See id.* at 8-13. Crystallex fails to engage seriously with the Government's actual argument. *See infra* pp. 4-5.

With respect to the Rule 60(b) motion, the Statement of Interest simply pointed out the existence of changed circumstances that could justify granting Venezuela's Rule 60(b) motion. *See* D.I. 212 at 4-8. The United States is not advancing a primarily legal argument (and it seeks no deference with respect to the legal standards governing Rule 60(b) relief), but rather making

2

(largely undisputed) factual observations.  Since the Court's original ruling, the United States has conclusively recognized the Guaidó government as the legitimate government of Venezuela (in lieu of the illegitimate Maduro regime), a fact that is certainly relevant given this Court's detailed analysis of the "close political control" of PDVSA by then-President *Maduro* and his corrupt regime.  *Crystallex Int'l Corp. v. Bolivarian Rep. of Venezuela*, 333 F. Supp. 3d 380, 407-08, 411 (D. Del. 2018)*, aff'd & remanded*, 932 F.3d 126 (3d Cir. 2019), *cert denied*, 207 L. Ed. 2d 936 (2020).  The United States, via the State Department, has further recognized that it has no reason to doubt the veracity of representations by Venezuela concerning the independence of the PDVSA, PDVH, and CITGO boards.  *See* D.I. 212 at 8.  This, too, is relevant to the Court's analysis.  *See, e.g.*, *Crystallex*, 333 F. Supp. 3d at 407-09.

To be sure, the U.S. government has strong foreign policy and national security interests in supporting the interim government's efforts to reconstruct the Venezuelan economy following the departure of Maduro, and recognizes the severe consequences that would be wrought by permitting steps towards a forced sale of Venezuelan assets.  *E.g.*, D.I. 212 at 2-4.  That is the reason why the United States is filing this Statement of Interest in the first place.  And, of course, those harmful consequences would be avoided if the Court grants Venezuela's Rule 60(b) motion.  But those policy reasons are independent of the legal grounds that this Court must consider (though they do implicate the factual predicates for Venezuela's motion).

There is one final point.  Crystallex claims that the United States is seeking to "expropriate its property for the supposed interests of the Venezuelan people," and is "try[ing] to enlist the judiciary to do its dirty work."  D.I. 219 at 14.  Such hyperbolic statements are completely unfounded.  Should this Court grant Venezuela's motion, its order would be based on the neutral

application of long-established principles of federal law. Crystallex's concerns would be with the Supreme Court that established Rule 60, not this Court or the Government of the United States.[1]

## II. Crystallex Offers No Reason to Proceed Toward a Forced Sale of PDVH Shares While Its License Application Remains Pending Before OFAC.

The United States' main contention is that the Court should not proceed toward a forced sale of PDHV shares "until after OFAC has issued a decision on Crystallex's pending license application." D.I. 212 at 13; *see id.* at 9-13. As the United States has explained, "[t]he prefatory steps that Crystallex proposes implicate significant U.S. foreign policy and national security interests that are rightly before the Executive Branch in the Crystallex license application, and taking action which advances toward a public auction and contingent sale would serve no purpose if OFAC ultimately denies Crystallex's license application." *Id.* at 9. This is true "[r]egardless of the [Court's] disposition of the pending motions to eliminate the attachment." *Id.*

Crystallex offers no meaningful response to this contention. Its supplemental brief largely ignores the issue, focusing instead on the separate question whether the Court should deny Venezuela's Rule 60(b) motion. *See generally* D.I. 219. Crystallex also mischaracterizes the United States' position, suggesting that the Government has expressed "irrelevant concerns regarding the ultimate sale." *Id.* at 13; *see also id.* at 12 (suggesting that the Government's foreign policy concerns "relate only to the 'sale' of the property"). *But see* Letter from Elliott Abrams to Ethan Davis at 3 (July 16, 2020), D.I. 212-1 (explaining that "*taking immediate steps toward a conditional sale*" would be "detrimental to U.S. policy" (emphasis added)). The closest Crystallex comes to acknowledging the United States' actual, expressed position is to offer a conclusory

---

[1] While Crystallex also criticizes the United States for waiting until now to file a Statement of Interest, *see* D.I. 219 at 13, the United States reasonably waited until (1) the Supreme Court had denied the petition for a writ of certiorari, and (2) the relevant legal and factual disputes were crystalized for the parties and the Court in the form of the pending motions.

assertion that the Government has "given this Court no good reason" to "put[] off indefinitely any decision on sales procedures." D.I. 219 at 12.

This assertion is doubly wrong. First, the United States does not request to postpone the contemplated sale "indefinitely," but rather respectfully submits that this Court should not proceed toward a sale unless and until Crystallex obtains the OFAC license necessary to effectuate any such sale. *See* D.I. 212 at 9-11, 13. OFAC will adjudicate Crystallex's pending license application within a reasonable timeframe, giving careful consideration to the complicated legal and policy questions at issue. D.I. 212-2 at 2. Second, the United States has offered a "good reason" for this request—namely that if the PDHV shares were to be "advertised for public auction at this time, the Venezuelan people would seriously question the interim government's ability to protect the nation's assets, thereby weakening it and U.S. policy in Venezuela today." *Id.* at 11 (quoting D.I. 212-1 at 3); *see also infra* p. 8.

Crystallex also errs to the extent it suggests that the Court may not consider U.S. foreign policy interests in deciding whether, when, and in what manner to move forward toward an unprecedented judicial sale of a multi-billion-dollar Venezuelan asset. The Court has already recognized that it has significant discretion in this area. *See* D.I. 154 at 3–4, 7, 9 n.13; *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (recognizing the "power inherent in every court to control the disposition of the causes on its docket"). Crystallex cites no authority to the contrary. *See* D.I. 219 at 8 (asserting, without citation, that foreign policy concerns "are not a factor in the inherently judicial act of enforcing the final and unappealable judgment of a federal court").

Rather, courts routinely and appropriately give deference to the Executive Branch's expressed view that a contemplated exercise of judicial discretion would harm U.S. foreign policy interests. "The Supreme Court instructs 'case-specific deference' to the expressed foreign policy

5

interests of the United States." *Gross v. German Found. Indus. Initiative*, 456 F.3d 363, 384 (3d Cir. 2006) (quoting *Whiteman v. Dorotheum GMbH & Co. KG*, 431 F.3d 57, 59 (2d Cir. 2005)); *see also Sosa v. Alvarez-Machain*, 542 U.S. 692, 733 n.21 (2004) ("[F]ederal courts should give serious weight to the Executive Branch's view of the case's impact on foreign policy."); *Rep. of Austria v. Altmann*, 541 U.S. 677, 702 (2004) ("[S]hould the State Department choose to express its opinion on the implications of exercising jurisdiction over *particular* petitioners in connection with *their* alleged conduct, that opinion might well be entitled to deference as the considered judgment of the Executive on a particular question of foreign policy."); *Mujica v. AirScan, Inc.*, 771 F.3d 580, 606 (9th Cir. 2014) ("Courts have found that U.S. interest weigh against hearing cases where doing so would be harmful to U.S. foreign policy. . . . This deference is rooted, in part, in separation of powers concerns.").[2] Courts regularly conclude that such deference counsels in favor of outright *dismissal* of the action (something the United States does not seek here); it certainly supports the lesser remedy of postponing judicial action toward a sale until after OFAC adjudicates the pending license application. *See, e.g.*, *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 210-11 (3d. Cir. 2001) (discussing "maxim that the greater includes the lesser").

---

[2] Indeed, Courts are more disposed to defer where—as here—the Executive files a statement of interest articulating the foreign policy consequences of judicial action. *See, e.g.*, *Gross*, 456 F.3d at 389-90 (noting that "[h]ad the United States Executive filed a statutory statement of interest under 28 U.S.C. § 517 . . . we might conclude judicial intervention would contradict and show a lack of respect for a statement or pronouncement of the United States Executive," but concluding to intervene in this instance because the United States had not submitted "an Executive expression of interest to which we should defer."); *see also Joo v. Japan*, 413 F.3d 45, 48 (D.C. Cir. 2005) ("[W]e defer to the judgment of the Executive Branch of the United States Government, which represents, in a thorough and persuasive Statement of Interest, that judicial intrusion into the relations between Japan and other foreign governments would impinge upon the ability of the President to conduct the foreign relations of the United States."); *Altmann*, 541 U.S. at 702.

The cases Crystallex cites are not to the contrary. *See* D.I. 219 at 8. *Republic of Argentina v. NML Capital, Ltd*, 573 U.S. 134, 145-46 (2014), concerned a question of statutory interpretation involving the Foreign Sovereign Immunities Act. So did *Permanent Mission of India to the United Nations v. City of N.Y.*, 551 U.S. 193 (2007). *Medellín v. Texas*, 552 U.S. 491, 524 (2008), involved a constitutional question regarding the President's power to preempt state law. None of these decisions involved "case-specific" questions of the sort at issue here; rather, they considered generalized questions of legal interpretation. *See, e.g.*, *Alperin v. Vatican Bank*, 410 F.3d 532, 549 (9th Cir. 2005) ("Here we are not faced with analyzing a specific clause of the Constitution but rather proceed from the understanding that the management of foreign affairs predominately falls within the sphere of the political branches and the courts consistently defer to those branches.") (citing *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 422 n.12 (2003)). Indeed, *Altmann*, which Crystallex relies upon, illustrates that distinction: there, the Court held that the United States' views "on the interpretation of the FISA" were not entitled to special deference, 541 U.S. at 701, *but*, that if the United States expresses its views regarding the application of the law in a *particular instance*, that view might be entitled to deference, *id.* at 702.

Crystallex also cites case for the proposition that such deference is not absolute. *See* D.I. 219 at 9-10. But the government does not claim otherwise: "[j]udicial deference to the Executive Branch regarding the foreign policy implications of a civil lawsuit does not mean judicial abdication . . . "rather, the harm must be explained—and explained reasonably." *Doe v. Exxon Mobil Corp.*, 473 F.3d 345, 362 (D.C. Cir. 2007) (Kavanaugh, J., dissenting); *see also Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1236 (11th Cir. 2004) (holding that the "statement of interest from the executive is entitled to deference and we give the executive statement's such deference in our international comity analysis").

7

Here, the United States' foreign policy views are clearly entitled to deference, as the United States has reasonably explained the harm of proceeding toward a sale of CITGO:

> [T]he United States assesses that the domestic legitimacy of the interim government under Guaidó would be severely eroded were a forced sale of CITGO to take place while the illegitimate Maduro regime still attempts to cling to de facto power in Caracas. The efforts by creditors to enforce judgments against Venezuela by taking immediate steps toward a conditional sale of PdVSA's U.S.-based assets, including PDVH and CITGO, are detrimental to U.S. policy and the interim government's priorities. Should these assets be advertised for public auction at this time, the Venezuelan people would seriously question the interim government's ability to protect the nation's assets, thereby weakening it and U.S. policy in Venezuela today.

D.I. 212-1 at 3.

Moreover, the potential harm to U.S. foreign policy interests is easily preventable. As Crystallex concedes, "the OFAC licensing process allows the Executive Branch to consider whether transactions involving foreign property implicate the interests of the United States Government." D.I. 219 at 11. It would be pointless and counterproductive to harm U.S. foreign policy interests by immediately moving forward with a public auction of PDVH, only for OFAC to deny Crystallex a license to effectuate the sale (a license all parties recognize is required). And if Crystallex disagrees with OFAC's decision, Crystallex can seek all appropriate legal remedies. *See* 5 U.S.C. § 706.

Crystallex also invites the Court to second-guess the State Department's foreign policy judgment, suggesting that the foreign policy concerns set forth in the Statement of Interest are not "persuasive." D.I. 219 at 12. But Crystallex's self-serving speculation that the Guaidó regime "could collapse at any time" and "the Executive's policy views could change at any minute," D.I. 219 at 12, is no basis for disregarding the Executive's expressed foreign policy views. *See Freund v. Rep. of France*, 592 F. Supp. 2d 540, 570 (S.D.N.Y. 2008) ("To disregard the Executive's position, which it expresses as part of its power to conduct foreign affairs, would express a lack of

8

respect due to a coordinate branch of the government."), *aff'd sub nom Société Nationale des Chemins de fer Français,*, 391 F. App'x 939 (2d Cir. 2010).

Crystallex's remaining objection is to quibble with the procedure by which the United States has asserted its foreign policy views, noting that these views were articulated in an "unsworn letter" by the State Department's Special Representative for Venezuela (as opposed to a statement from the Secretary of State or the President).  D.I. 219 at 1, 12.  This is irrelevant.  The Statement of Interest was filed on behalf of the United States pursuant to 28 U.S.C. § 517, a procedure that this Circuit has expressly blessed.  *See Gross*, 456 F.3d at 389-90.  Courts routinely accept Statements of Interest with attached unsworn letters written by senior State Department officials. *See, e.g.*, *Weixum v. Xilai*, 568 F. Supp. 2d 35, 36 (D.D.C. 2008) (considering letter from State Department Legal Adviser attached to Statement of Interest).  There is no requirement that the Secretary or the President submit such a letter.

## CONCLUSION

The United States is not trying to "effectively seize Crystallex's" property interest in a writ of attachment, D.I. 219 at 1; to the contrary, the United States recognizes that "Venezuela owes Crystallex from a judgment that has been affirmed in our courts," D.I. 212 at 13 (quoting D.I. 174 at 3).  It submits, however, that proceeding toward a forced sale of Venezuela's largest and most important foreign asset at this time could render significant foreign policy harm to the United States.  This Court should consider the foreign policy consequences of authorizing steps toward such a sale, and should defer to the U.S. Government's articulation of its foreign policy and assessment of the likely consequences of proceeding toward a sale at this time.  Accordingly, the United States respectfully asks the Court to refrain from authorizing an auction and sale of PDVH shares unless and until OFAC approves Crystallex's license application.  It furthermore notes that

9

the parties still dispute the validity of Crystallex's writ, and that changed factual circumstances may bear on the Court's evaluation of Venezuela's motion.

Dated: August 28, 2020

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director
Federal Programs Branch

/s/ *Joseph E. Borson*
JOSEPH E. BORSON (Va. Bar No. 85519)
JOSEPH J. DEMOTT (Va. Bar No. 93981)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Phone: (202) 514-1944
Fax: (202) 616-8470
Email: joseph.borson@usdoj.gov

*Attorneys for the United States*