IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CRYSTALLEX INTERNATIONAL
CORPORATION,

                    Plaintiff,

        v.                                        C.A. No. 17-mc-00151-LPS

BOLIVARIAN REPUBLIC OF
VENEZUELA,

                    Defendant.

## CRYSTALLEX'S SUPPLEMENTAL REPLY BRIEF IN OPPOSITION TO MOTION FOR RELIEF UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Miguel A. Estrada
Lucas C. Townsend
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
Fax: (202) 467-0539

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
Fax: (302) 651-7701

*Attorneys for Plaintiff*

Dated: September 4, 2020

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................... 1

ARGUMENT ........................................................................................................... 2

    I.    The Court Should Deny Venezuela's Rule 60(b) Motion ..................................... 2

    II.   The Court Should Allow The Parties To Prepare For A Sale ................................ 8

CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   932 F.3d 126 (3d Cir. 2019)..................................................................................7

*First National City Bank v. Banco Para El Comercio Exterior de Cuba*,
   462 U.S. 611 (1983)..........................................................................................6, 7

*Republic of Austria v. Altmann*,
   541 U.S. 677 (2004)..............................................................................................7

*Rubin v. Islamic Republic of Iran*,
   138 S. Ct. 816 (2018)............................................................................................7

*Socialist Republic of Romania v. Wildenstein & Co.*,
   147 F.R.D. 62 (S.D.N.Y. 1993) ............................................................................3

## Statutes

8 *Del. C.* § 324 .............................................................................................................8

10 *Del. C.* § 5031 .........................................................................................................8

10 *Del. C.* § 5081 .......................................................................................................10

## Rules

Fed. R. Civ. P. 60(b) .....................................................................................1, 2, 3, 6, 8

Fed. R. Civ. P. 60(b)(5).................................................................................................3

Fed. R. Civ. P. 60(b)(6).................................................................................................3

## Other Authorities

Jonathan Swan, *Trump Cold on Guaidó, Would Consider Meeting Maduro*, Axios
   (June 21, 2020), *available at* https://tinyurl.com/y93z9or6...................................4, 9

Karen DeYoung & Anthony Faiola, *Trump Administration to Tap Into Frozen
   Venezuelan Government Funds to Revive Efforts to Oust Maduro*, Wash. Post
   (Aug. 20, 2020), *available at* https://tinyurl.com/yygvcuf7 .................................5, 9

Marisa Fernandez, *Trump Says He Would Only Meet Maduro to Discuss
   "Peaceful Exit from Power,"* Axios (June 22, 2020), *available at*
   https://tinyurl.com/y6rayjc5........................................................................................5

**INTRODUCTION**

On the eve of oral argument on Venezuela's motion for extraordinary postjudgment relief under Federal Rule of Civil Procedure 60(b), the United States filed a Statement of Interest suggesting that "relief under Rule 60(b) may be appropriate" in light of "changed circumstances" in Venezuela. D.I. 212, at 13. Barely a month later, the United States' latest filing now clarifies that the U.S. takes "no firm legal position" on that question, D.I. 220, at 1, and claims no "foreign policy interests" that "'warrant stripping Crystallex's lien on PDVH,'" *id.* at 2 (alteration omitted). Rightly so. As Crystallex explained in its supplemental brief, D.I. 219, the grounds put forward by the United States in its Statement of Interest are not material to this Court's analysis under Rule 60(b) and do not warrant revisiting Crystallex's attachment of Venezuela's shares of PDVH.

The United States' concession undercuts Venezuela's attempt to find support for its motion in the United States' earlier Statement of Interest. While Venezuela claims that "[c]ontinuance of the attachment is . . . contrary to U.S. foreign policy," and that the United States supports its legal contention that "this case turns on 'the current relationship between PDVSA and Venezuela,'" D.I. 221, at 1, 3, the United States has expressly disclaimed those arguments and instead made clear that Venezuela's motion should be decided based on "neutral . . . principles" that the United States abstains from addressing. D.I. 220, at 3-4. Other than reaffirming the immaterial fact—never disputed by Crystallex—that President Trump has recognized Juan Guaidó as President of Venezuela, the United States offers no facts pertinent to the neutral principles governing relief under Rule 60(b). The latest round of briefing thus confirms that this Court should decide—and deny—Venezuela's motion based on the original briefing without any impact from the United States' intervention and without regard to Venezuela's latest rehashing of its meritless arguments.

The one issue on which the United States asserts any foreign policy interest is postponing the *sale* of PDVH. D.I. 220, at 4-9. But Crystallex has asked this Court to make only limited

rulings, short of advertising a sale, that preserve the Executive Branch's opportunity to express any foreign policy interests it may have in supporting Guaidó through the OFAC sanctions and licensing process, consistent with the government's constitutional and treaty obligations.  The United States does not contend that the specific rulings that Crystallex seeks would violate the sanctions, and none of them seek to change the property interests currently blocked.  Nor does Special Representative Abrams's letter offer any policy basis to postpone them.  At best, the government's position amounts to the contention that the Guaidó regime would appear stronger if the judiciary halted enforcement of Crystallex's binding judgment.  But building up the prestige of Potemkin foreign rulers is not the role of U.S. courts, and removing such purported diplomatic considerations from foreign sovereign litigation was precisely the point of the Foreign Sovereign Immunities Act.  Crystallex and its creditors have waited long enough—indeed, too long—for relief from Venezuela's expropriation of Crystallex's mining interests.  There is no just reason not to advance this litigation to the furthest point that OFAC's sanctions regime permits.

## ARGUMENT

### I.     The Court Should Deny Venezuela's Rule 60(b) Motion

Venezuela's supplemental brief boldly proclaims that "[t]he United States agrees with Venezuela" that "this Court should . . . revisit its alter-ego determination."  D.I. 221, at 3.  But the United States' supplemental brief makes clear that it "expresse[s] no firm legal position on whether [the] circumstances require Rule 60(b) relief."  D.I. 220, at 1.  The United States explains that it "has not advanced . . . an argument" "that foreign policy concerns . . . merit Rule 60(b) relief," *id.*, and it "seeks no deference with respect to the legal standards governing Rule 60(b) relief," *id.* at 2.  Indeed, it "is not advancing a primarily legal argument" at all.  *Id.*

Far from backing Venezuela, the United States agrees with Crystallex that Venezuela's Rule 60(b) motion should be decided "based on the neutral application of long-established

2

principles of federal law," regardless of foreign policy or the government's view of the law.  D.I. 220, at 3-4.  Those neutral principles support denial of Venezuela's motion, for the reasons stated in Crystallex's opposition to that motion:  The supposed changed circumstances cited by Venezuela are neither legally relevant to the Court's underlying alter-ego determination nor sufficient to satisfy the demanding requirements for relief under Rules 60(b)(5) and (6).  D.I. 199, at 7-20.

Nothing in the United States' latest filing remotely questions any of these conclusions. Instead, the filing explains that the U.S.'s sole interest in Venezuela's Rule 60(b) motion is to "mak[e] (largely undisputed) factual observations."  D.I. 220, at 2-3.  But the only "fact" the United States offers is the now well-repeated observation that "the United States has conclusively recognized the Guaidó government as the legitimate government of Venezuela."  *Id.* at 3.  Venezuela has now echoed that fact to no avail in virtually every filing it has made in the Third Circuit, the Supreme Court, and this Court since President Trump first recognized Guaidó 18 months ago in January 2019.[1]  Crystallex has never disputed that fact, and has been clear that it "has no quarrel with the proposition that the recognition power is vested in the Executive Branch."  Crystallex Response Br., at 1, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2797, Doc. No. 3113208533 (3d Cir. Apr. 10, 2019).  Instead, Crystallex has explained that legal recognition of Guaidó is immaterial because, *inter alia*:  (1) Venezuela is still liable on Crystallex's judgments and accountable for the acts—including alter-ego conduct—of the prior regime, D.I. 199, at 11-13; (2) regime changes are commonplace and do not establish "extraordinary circumstances" warranting Rule 60(b) relief, *id.* at 10, 14 (citing *Socialist Republic of Romania v. Wildenstein & Co.*, 147 F.R.D. 62, 65 (S.D.N.Y. 1993)); (3) Guaidó's *legal* status as President does not alter the *facts*

---

[1]  *See, e.g.*, Venezuela Br., at 1, 7, 24-25, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2797, Doc. No. 3113202359 (3d Cir. Apr. 3, 2019); Pet'n for Certiorari, at 8, 10, 31-32, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 19-1049 (U.S. Feb. 19, 2020); *see also* D.I. 168, at 2.

on the ground in Venezuela, much less ensure that Guaidó will consolidate power or respect the corporate separateness of PDVSA and its subsidiaries, *id.* at 12; *see also* D.I. 219, at 12; and (4) arguments about Venezuela's current relationship with PDVSA under Guaidó focus on the wrong timeframe, D.I. 199, at 13-15; D.I. 219, at 5-7.  The United States disputes none of this.

The United States adds that it "has no reason to doubt the veracity of representations by Venezuela concerning the independence of the PDVSA, PDVH, and CITGO boards."  D.I. 220, at 3 (citing D.I. 212, at 8).  But the government notably stops short of *agreeing* with the Guaidó regime's representations—let alone offering any facts or evidence to confirm them.  Further, in claiming the United States' support on this issue, D.I. 221, at 14, Venezuela misses a critical point: The United States does not dispute that the legislative enactments purportedly establishing the independence of those boards are merely "'transitory'" and temporary, and therefore insufficient to modify PDVSA's status as Venezuela's alter ego even if Venezuela's *current* relationship with PDVSA were legally relevant, D.I. 199, at 12 (quoting D.I. 187, at ¶ 31)—which it is not.  The *entire point* of the attachment granted by this Court was to restrain the property for Crystallex's benefit so that Crystallex's rights to that property could *not* be affected by later events.

The government thus contributes nothing that advances Venezuela's motion.  If anything, the government's refusal to reaffirm President Trump's continuing support for Guaidó raises serious doubts about the future of the OFAC sanctions regime.  Indeed, Crystallex previously cited reports that President Trump's support for Guaidó is waning following the departure of National Security Advisor Bolton.  D.I. 219, at 12-13 (citing Jonathan Swan, *Trump Cold on Guaidó, Would Consider Meeting Maduro*, Axios (June 21, 2020), *available at* https://tinyurl.com/y93z9or6).  Venezuela counters that President Trump subsequently "clarified that his administration is committed to pursuing the oppressive Maduro regime's 'exit from power.'"  D.I. 221, at 8 n.3

4

(quoting Marisa Fernandez, *Trump Says He Would Only Meet Maduro to Discuss "Peaceful Exit from Power*," Axios (June 22, 2020), *available at* https://tinyurl.com/y6rayjc5).  But this "clarification" does not help Venezuela at all:  The cited article conspicuously fails to mention supporting *Guaidó*—much less protecting CITGO for Guaidó's benefit—as the way to remove Maduro from power.  And in fact, recent reports continue to reflect Guaidó's loss of support in both Venezuela and the White House, particularly because "Guaidó's popularity in national polls has fallen to below 30 percent"—"its lowest level since he claimed the presidency"—leaving Guaidó at serious risk of losing whatever little power he retains in Venezuela's upcoming elections later this year. *See, e.g.*, Karen DeYoung & Anthony Faiola, *Trump Administration to Tap Into Frozen Venezuelan Government Funds to Revive Efforts to Oust Maduro*, Wash. Post (Aug. 20, 2020), *available at* https://tinyurl.com/yygvcuf7.  President Trump has accordingly "dismiss[ed] Guaidó as a weakling," stating that Guaidó "'seems to be losing a certain power,'" whereas, in contrast, "'[w]e want someone who has the support of the people.'" *Id.*

In other words, the Trump Administration's *current* support for Guaidó could evaporate at any moment due to ongoing changes either in Venezuela or in the White House.  *See* D.I. 219, at 12-13.  Those changes could augur a shift in the current OFAC sanctions regime (again) at any time.  And the government has yet to take a position on Crystallex's application for a license for a sale of the shares of PDVH, which it admits could be granted any day, D.I. 220, at 5.  The United States' request that this Court respect "the Executive's expressed foreign policy views" at this time, *id*. at 8-9, does not require the Court to blind itself to the possibility of future changes that could eliminate any present barrier to the sale of PDVH.  Given that the government does not oppose maintaining the writ of attachment, *id.* at 2, its brief offers no basis for vacating Crystallex's hard-earned lien after years of litigation, forcing Crystallex to start from scratch when inevitably

5

the sanctions regime changes or OFAC is ready to grant a license.

Nor is this the first time that Venezuela has overstated the United States' support for its position.  For example, Venezuela argued in its Third Circuit rehearing petition that Crystallex's view of *Bancec*'s alter-ego standard—shared by this Court and the Third Circuit panel—was "not a mere affront," but would affirmatively "impede U.S. foreign policy."  Pet. for Reh'g, at 15, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2797, Doc. No. 3113359593 (3d Cir. Sept. 26, 2019).  But as Crystallex explained, the United States' Supreme Court brief in *Bancec* itself adopted the same alter-ego test as Crystallex advocated.  Response to Pet. for Reh'g, at 16-17, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2797, Doc. No. 3113375837 (3d Cir. Oct. 15, 2019) (quoting U.S. *Amicus* Br., at 1-2, *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, No. 81-984 (U.S. Dec. 1982)).  Venezuela likewise told this Court that the Treasury Department viewed merely maintaining the writ of attachment as a threat to the United States' foreign-policy interests, D.I. 184, at 7, 17, but the United States has never expressed support for that position and has now explicitly disclaimed any foreign-policy interest with respect to the attachment, D.I. 220, at 2.  Similarly, Venezuela argued in its Rule 60(b) motion that maintaining the writ would violate the current OFAC sanctions regime, D.I. 184, at 15-19, but the United States rejected that position and reaffirmed its authority to evaluate Crystallex's license application under the current sanctions regime, D.I. 212, at 8-13, causing Venezuela to withdraw that argument at the July 17 hearing, D.I. 214, at 21:19-25.[2]

The current, latest example of the United States failing to back up Venezuela simply reaffirms that the United States has no legal or foreign policy interest in Crystallex's lien on the

[2]  The United States has likewise declined to support PDVSA, PDVH, and CITGO in their motion to quash the writ of attachment, *see generally* D.I. 220; D.I. 212, and in fact stated at the July 17 hearing that that motion did not "implicat[e] the issues [the government] addressed in [its] statement of interests," D.I. 214, at 97:20-21.

6

PDVH shares—which is precisely why it does not consider "relevant" to its interests the "legal and factual disputes" that this Court, the Third Circuit, and the Supreme Court have confronted in connection with Crystallex's attachment of the shares.  D.I. 220, at 4 n.1.  By its own admission, that is why the United States waited so long to take a position on *anything* in this case.  *Id.*

Besides invoking legal and foreign policy positions that the United States now disclaims, Venezuela largely rehashes the same tired arguments that Crystallex has already rebutted.

For example, Venezuela argues that, because the Supreme Court in *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"), mentioned "'principles of comity between nations,'" "the *Bancec* analysis is driven by equitable principles based on comity concerns," so this Court should now engage in an open-ended consideration of equities and international relations in deciding whether to maintain the writ of attachment.  D.I. 221, at 4, 7.  But *Bancec* does not call for such a freewheeling inquiry.  Instead, it sets forth specific factors to determine whether a foreign instrumentality is the alter ego of a foreign sovereign, none of which is the United States' current, post-judgment relationship with the foreign government at issue.  *See Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 823 (2018); *Bancec*, 462 U.S. at 629, 633; *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 140-41 (3d Cir. 2019).  As noted above, the United States took the position in *Bancec* that alter-ego principles should apply when a foreign sovereign exercises control over its instrumentality.  U.S. *Amicus* Br., *supra*, at 1-2.  Venezuela's invocation of *Republic of Austria v. Altmann*, 541 U.S. 677 (2004)—for the principle that "international comity concerns necessarily take account of current realities," D.I. 221, at 4 n.2—is thus irrelevant, because comity is not part of the relevant test.

Venezuela also wrongly claims that Crystallex is "reneg[ing]" on its prior argument regarding the timeframe for the alter-ego analysis.  D.I. 221, at 5.  Not so.  When Crystallex argued

in August of 2018 that relief was warranted because PDVSA was Venezuela's alter ego—and therefore the PDVH shares were Venezuela's property—"*at this time*," D.I. 70, at 8 (emphasis added), it did not mean that the Court should continue to speculate about PDVSA and Venezuela's alter-ego relationship *after* granting Crystallex relief.  The "time" Crystallex was referring to was the time of its motion (August 2018), not two years down the line after that motion was granted in a final, reviewable judgment and affirmed on appeal.  Once the attachment motion was granted, the ownership of the property was fixed until execution—indeed, that is the very purpose of the writ of attachment.  *See* D.I. 219, at 7 (citing 10 *Del. C.* § 5031; 8 *Del. C.* § 324).

In any event, the purpose of this supplemental briefing was not so that Venezuela could try to rehabilitate failed theories independent of the United States' position.  Since the United States does not back Venezuela's legal views, or the purported relevance of its foreign policy views to the already-decided legal issues in the case, or indeed offer any facts relevant to Venezuela's Rule 60(b) motion, this Court need not look beyond the original briefing to deny that motion.

## II.     The Court Should Allow The Parties To Prepare For A Sale

Rather than support Venezuela's Rule 60(b) motion, the government's "main contention" is "that the Court should not proceed toward a forced sale of PDHV shares 'until after OFAC has issued a decision on Crystallex's pending license application.'"  D.I. 220, at 4 (quoting D.I. 212, at 13).  The government's stated reason is that it does not want to do anything which might jeopardize Guaidó's fragile claim as Venezuela's legitimate leader.  *See id.* at 5, 8.  But the Executive Branch's argument yet again misconceives the relationship between it and the judiciary, and even on its own misguided terms fails to account for the many steps the parties could take—with this Court's blessing—which, on the government's own theory, would not undermine Guaidó at all.

The Executive Branch improperly interferes with the judiciary by requesting that this Court now prevent Crystallex—a litigant with an affirmed judgment from the Washington, D.C. federal

court establishing Venezuela's liability, and an affirmed judgment of this Court in aid of execution—from taking any further action to enforce its judgment. The government pays lip service to the fact "that 'Venezuela owes Crystallex from a judgment that has been affirmed in our courts.'" D.I. 220, at 9 (quoting D.I. 174, at 3). Yet the government asks this Court to halt enforcement of that affirmed judgment, because it thinks inaction here in Delaware could help improve Guaidó's *image* in Venezuela. *Id.* at 8. Even if such considerations were ever appropriately considered by our independent judiciary, there is an air of absurdity to the government's plea that the Court should stop a private litigant from collecting on what it is owed in order to make a foreign leader look better or appear stronger, while at the same time President Trump himself publicly opines that he "wasn't necessarily in favor of Guaidó," Swan, *supra*, that Guaidó's election was not "very meaningful one way or the other," *id.*, that Guaidó "seems to be losing a certain power," DeYoung & Faiola, *supra*, and that "We want someone who has the support of the people," *id.* More fundamentally, the government nowhere accounts for the damage that staying enforcement of an affirmed judgment would do to the public's confidence in a functioning judiciary. *Compare* D.I. 220, at 4-10, *with* D.I. 219, at 14-15. The Court should not undermine that confidence by further postponing Crystallex's ability to collect what it is owed.

Indeed, the only specific "prefatory step" the United States identifies as potentially problematic is the advertisement of a public auction "at this time." D.I. 220, at 5. But there is much that the parties and the Court can do to prepare for a sale besides publicly advertising it. For example, as Crystallex explained in its sale motion, the parties could, with the Court's blessing, set up a virtual data room to collect information relevant to the value of PDVH, such as documents regarding the CITGO entities' recent debt offerings. D.I. 182, at 2, 8, 12. And, as other parties

have suggested, the sale process could be improved by authorizing "professionals, including attorneys, investment bankers, and industry-specific advisors," to analyze the CITGO entities' value and make recommendations for the sale. ConocoPhillips' Sale Procedures Br., D.I. 180 at 2, 10-11. If nothing else, the parties and the public would benefit greatly from the Court's order establishing the process for the sale, because knowledge of the process will allow all involved to prepare for it in earnest. That is true even if the advertising and auction itself are postponed until OFAC's decision on Crystallex's license application.

The Court should not delay in authorizing these next steps to allow the parties to prepare for the sale. Delay has been Venezuela's strategy since day one, and it has been rewarded in that strategy by avoiding repayment of the vast majority of its more-than-one-billion-dollar debt to Crystallex. By contrast, Crystallex has been in insolvency proceedings in Canada for nearly a decade, and its inability to collect on its years-old judgment against Venezuela continues to put off Crystallex's own payments to its investors, including pension funds and individuals. Moreover, if Venezuela succeeds in delaying the sale for three years following issuance of the writ on August 24, 2018, Crystallex anticipates that Venezuela and others will attempt to argue that Crystallex's writ loses its priority relative to other liens on the shares of PDVH. *See* 10 *Del. C.* § 5081. While any such argument would be meritless given Crystallex's undeniable diligence in pursuing a sale, and the fact that the delay has been solely due to Venezuela's repeated stay requests, Venezuela should not be allowed to prejudice Crystallex and burden this Court with even more motion practice and delay before Crystallex can collect the payment on its judgment that the Third Circuit made clear is owed and that even the U.S. government concedes is just.

## CONCLUSION

The Court should deny Venezuela's request for extraordinary post-judgment relief, and grant Crystallex's request to authorize the next steps in the process of executing on the judgment.

|  | */s/ Jeffrey L. Moyer* |
|---|---|

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Miguel A. Estrada
Lucas C. Townsend
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
Fax: (202) 467-0539

Dated:  September 4, 2020

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
dicamillo@rlf.com
moyer@rlf.com
hunter@rlf.com

*Attorneys for Plaintiff*