

Jeffrey L. Moyer
302-651-7525
moyer@rlf.com

**VIA ELECTRONIC FILING**

The Honorable Leonard P. Stark
U.S. District Court for the
 District of Delaware
844 North King Street
Wilmington, Delaware 19801

      Re:  *Crystallex International Corp. v. Bolivarian Republic of Venezuela*,
            No. 17-151-LPS (the "Crystallex Asset Proceeding")

Dear Chief Judge Stark:

I write on behalf of the parties in the *Crystallex Asset Proceeding*, in response to the Court's direction at the July 17, 2020 Order requiring the parties to file a joint status report on their positions on the effect of 10 *Del. C*. § 5081 on Crystallex's writ of attachment on the shares of PDVH, including "whether the timing [provision] has been tolled" or, if not, if the parties "are agreeable to [the Court] tolling it" and the "implications [of the statute] for anybody's priority status." Sept. 17, 2020 Hr'g Tr. at 121 (D.I. 226). The parties, ConocoPhillips and the United States have conferred and their positions are set forth below.

**Crystallex's Position:**

Without attempting to formally brief the issues, Crystallex respectfully sets forth its positions below.  In short, while Crystallex firmly believes that the stay orders issued by this Court and the Third Circuit have already served to toll the three-year period set forth in 10 *Del. C*. § 5081, and that the Court can issue additional orders expressly tolling the expiration of the three-year priority period, the likelihood that the question of Crystallex's priority will be litigated vigorously and then appealed cautions against allowing the three-year period to elapse without a sale.  To do otherwise, would be a waste of judicial resources and cause unnecessary expense and delay to Crystallex, and its creditors, in enforcing a judgment that all agree Crystallex is owed.  This is particularly true given the refusal of ConocoPhillips—a competing creditor—to state whether they will oppose tolling the three year period during which Crystallex maintains its priority.

Crystallex notes that Section 5081 has no impact on the effectiveness of the writ of attachment *as against the debtor*.  Rather, Section 5081 only limits "the force or effect [of the writ of attachment] as *against a subsequent execution levy*" after more than three years has passed since the attachment was served.  10 *Del. C*. § 5081 (emphasis added).  As Professor Woolley's seminal treatise explains, "the effect of the statute [is] not to limit *levies* but to limit the *priority* of levies" such that "if there be several levies upon the same chattels, the priority of the first will be lost unless sale is made within the three years." 2 Woolley's on Delaware Practice § 1034 (emphases in

The Honorable Leonard P. Stark
September 24, 2020
Page 2

original). Thus, the question is only one of priority among multiple perfected liens, should additional liens be perfected by other creditors in the future.

Turning to the question of priority, this Court's orders staying execution of the writ of attachment have served to stay the running of the three-year priority period under Section 5081. While authority discussing the application of Section 5081's priority provision is sparse, the decision in *State v. Fisher*, 1996 WL 659471 (Del. Super. Ct. Oct. 17, 1996), is instructive. In *Fisher*, a creditor, Volpe, obtained a judgment and levied on various assets of the debtor, Mario's, Inc., including certain trade fixtures. As the court recognized, "the lien gave Volpe a priority over all subsequent liens for a maximum period of three years." *Id.* at *2. Within the three-year period, the IRS filed a tax lien against Mario's property. Before the attached goods were sold, and still within the three-year period, the State condemned the property in which the trade fixtures were located and deposited the value of those fixtures with the court. After three years from Volpe's attachment had elapsed, the IRS contended that Volpe's priority had also lapsed. The court disagreed, finding that because the State's taking occurred prior to the passage of three years, "the only action Volpe could take to protect his lien … was to wait for distribution of the compensation funds." *Id.* at *3. Further, because Volpe was unable to take steps to enforce the lien, "the three-year limit on the effect of Volpe's April 1991 lien was tolled while this Court was required to determine the proper distribution." *Id.* Accordingly, Volpe's lien still "ha[d] first priority" even though more than three years had elapsed. *Id.* Crystallex's predicament is not materially different than that faced by Volpe. Crystallex obtained a timely attachment and priority over subsequent liens, and it has diligently sought to execute upon the shares. Any delay is not of Crystallex's making and thus the three-year period should be deemed to not run while execution has been stayed at Venezuela's request. Nor should the three-year period commence until such time as Crystallex is able to resume enforcement activities pursuant to an order of this Court.

Tolling the running of the three-year period under Section 5081 is also consistent with principles of equitable tolling. Limitation periods, whether in the form of a statute of limitations or the three-year priority period at issue here, exist "to encourage the plaintiff to 'pursu[e] his rights diligently,' and when an 'extraordinary circumstance prevents him from bringing a timely action' the restriction imposed by the statute of limitations does not further the statute's purpose." *CTS Corp. v. Waldburger*, 573 U.S. 1, 10 (2014) (citation omitted) (modification in original). Court-imposed stays are just such a circumstance. *See, e.g., Calderon v. U.S. Dist. Court for Cent. Dist. of Cal.*, 163 F.3d 530, 541 (9th Cir. 1998), *abrogated on other grounds by Woodford v. Garceau*, 538 U.S. 202 (2003) (the "only reasonable reading" of the District Court's order that "all other aspects of th[e] case" be stayed pending a mental evaluation was that it prevented the filing of a habeas petition in the interim, thus the "stay of the proceedings prevented Kelly's counsel from filing a habeas petition and, in itself, justifies equitable tolling"); *Starling v. R.J. Reynolds Tobacco Co.*, 845 F. Supp. 2d 1215, 1240–41 (M.D. Fla. 2011), *adhered to on denial of reconsideration* (Dec. 22, 2011) ("clarify[ing] that the equitable tolling portion of [the Court's order] is specific to the particularly unique factual and procedural history of the Starling action, to wit, a court imposed stay of the proceedings").

Crystallex welcomes an order from this Court making clear to all interested parties that under the circumstances presented in this case—in which execution has been stayed since the day the writ

The Honorable Leonard P. Stark
September 24, 2020
Page 3

of attachment was served—the three-year period has not yet begun to run. Even with such an order, whether brought by the Parties currently before the Court or future creditors asserting claims against Venezuela and PDVSA, substantial litigation before this Court and in the Third Circuit over Crystallex's priority seems inevitable. The most efficient way to avoid extensive motion practice in the future is to complete the sale of the shares of PDVH as soon as possible. And the best way to accomplish that goal is to begin to lay the ground work for a future sale now.

### The Republic, PDVSA, PDVH and CITGO's Position:

Section 5081 of title 10 of the Delaware Code provides that, once "delivered to the sheriff or other proper officer to be executed," an execution binds "all the goods and chattels of the defendant within the bailiwick, which shall be actually levied upon within 60 days thereafter," but that "[n]o levy upon goods and chattels, made by virtue of execution process, shall be of any force or effect as against a subsequent execution levied upon the same goods and chattels for a longer period than 3 years from the making of such first mentioned levy." 10 *Del. C.* § 5081.

The Court asked the parties to address the three-year limitation in this statute and whether they would stipulate to tolling. The Court did not invite the parties to submit further argument on the issue of whether the Court should defer a decision on future sale procedures. We understand the three-year period specified by 10 *Del. C.* § 5081 to address not the validity of any lien Crystallex has but the priority of any such lien vis-à-vis creditors that may subsequently obtain a lien. We take no position as to whether stays entered by the Court or by the Third Circuit, or OFAC sanctions, automatically toll the three-year period, but we would not object to a ruling by the Court that the running of the 3-year period specified in 10 *Del. C.* § 5081 is tolled during the pendency of any stay order.

### The United States' Position:

The United States takes no position on the proper interpretation of 10 *Del. C.* § 5081. To the extent the provision's three-year limitations period applies to Crystallex's writ of attachment, the United States believes tolling of that period is appropriate under the circumstances here.

### ConocoPhillips' Position:

ConocoPhillips takes no position at this moment on the proper interpretation of 10 *Del. C.* § 5081.

*   *   *

Counsel are available if the Court has any questions.

Respectfully submitted,

*/s/ Jeffrey L. Moyer*

Jeffrey L. Moyer (#3309)

cc: All Counsel of Record (via ECF)