# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 17-mc-151-LPS |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | : | |
| Defendant. | : | |

Raymond J. DiCamillo, Jeffrey L. Moyer, and Travis S. Hunter, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE

Robert L. Weigel, Jason W. Myatt, and Rahim Moloo, GIBSON, DUNN & CRUTCHER LLP, New York, NY

Miguel A. Estrada and Lucas C. Townsend, GIBSON, DUNN & CRUTCHER LLP, Washington, DC

     Attorneys for Plaintiff Crystallex International Corporation


A. Thompson Bayliss and Stephen C. Childs, ABRAMS & BAYLISS LLP, Wilmington, DE

Donald B. Verrilli, Jr., Elaine J. Goldenberg, and Ginger D. Anders, MUNGER, TOLLES & OLSON LLP, Washington, DC

George M. Garvey and Seth Goldman, MUNGER, TOLLES & OLSON LLP, Los Angeles, CA

     Attorneys for Defendant Bolivarian Republic of Venezuela


Samuel Taylor Hirzel, II and Aaron M. Nelson, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, DE

Nathan P. Eimer and Lisa S. Meyer, EIMER STAHL LLP, Chicago, IL

     Attorneys for Intervenor Petróleos de Venezuela, S.A.

Kenneth J. Nachbar and Alexandra M. Cumings, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Nathan P. Eimer and Lisa S. Meyer, EIMER STAHL LLP, Chicago, IL

> Attorneys for Defendant PDV Holding, Inc., and Intervenor CITGO Petroleum Corporation

Garrett B. Moritz and Anne M. Steadman, ROSS ARONSTAM & MORITZ LLP, Wilmington, DE

Michael S. Kim, Marcus J. Green, Josef M. Klazen, KOBRE & KIM LLP, New York, NY

Richard G. Mason, Amy R. Wolf, Michael H. Cassel, WACHTELL, LIPTON, ROSEN & KATZ, New York, NY

> Attorneys for Non-Parties Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V.

Ethan P. Davis, Acting Assistant Attorney General; David M. Morrell, Deputy Assistant Attorney General; Diane Kelleher, Assistant Branch Director Federal Programs Branch; Joseph E. Borson and Joseph J. Demott, United States Department of Justice, Civil Division, Federal Programs Branch, Washington, DC

> Attorneys for Non-Party United States

---

## OPINION

January 14, 2021
Wilmington, Delaware

STARK, U.S. District Judge:

Crystallex International Corp. ("Crystallex") holds a $1.4 billion judgment against the Bolivarian Republic of Venezuela ("Venezuela" or "Republic"). Crystallex is seeking to collect on its judgment against Venezuela by executing on property nominally owned by the Republic's state-owned oil company, Petróleos de Venezuela, S.A. ("PDVSA"). The specific property Crystallex asks this Court to attach and eventually sell is PDVSA's shares of common stock of its wholly-owned subsidiary, PDV Holding, Inc. ("PDVH").

The extensive litigation that has occurred in this action to date has established (among other things) that PDVSA is the alter ego of Venezuela and that PDVSA's shares of PDVH stock are not immune from attachment or execution. The Court has also issued Crystallex's requested writ of attachment and ordered the United States Marshals Service to serve it on PDVSA. On an interlocutory appeal, the Court of Appeals for the Third Circuit affirmed this Court's findings, conclusions, and actions on these points. The Supreme Court then denied Venezuela's and PDVSA's petition for a writ of certiorari. Hence, the case is now proceeding here on remand from the Third Circuit.

Several motions are pending before the Court. The first is a motion filed by judgment debtor Venezuela pursuant to Federal Rule of Civil Procedure 60(b). (D.I. 183) Venezuela's Rule 60(b) motion seeks relief from the Court's orders of August 9 and 23, 2018, which authorized and directed the Marshal to serve a writ of attachment on PDVSA's shares of PDVH. By a separate motion, PDVSA, PDVH, and PDVH's indirect subsidiary, CITGO Petroleum Corp. ("CITGO" and, together with Venezuela, PDVSA, and PDVH, hereinafter "the Venezuela Parties"), seek to quash that writ of attachment. (D.I. 178)

Crystallex opposes the Venezuela Parties' motions. It has also filed a motion for an order of sale of the attached PDVH shares. (D.I. 181) The Venezuela Parties have submitted their

own proposed procedures for such a sale, in the event their motions to alter the judgment and/or quash the writ are denied. (D.I. 188)  Nonparties Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V. ("ConocoPhillips") – who are also judgment creditors of the Republic and are plaintiffs in their own actions pending in this Court[1] – have also submitted proposed procedures for how the Court should conduct the sale of PDVH shares. (D.I. 180)  Additionally, the United States government filed a Statement of Interest ("Statement") providing its position on aspects of the various motions. (D.I. 212)

The Court received extensive briefing in connection with each of the motions. (*See, e.g.*, D.I. 179, 182, 196, 198-99, 201-02, 204, 206, 219-21, 223, 228-32)  The Court also heard telephonic oral argument on two occasions: July 17 and September 17, 2020 (*see* July 17, 2020 Hrg. Tr. (D.I. 214) ("July Tr."); Sept. 17, 2020 Hrg. Tr. (D.I. 226) ("Sept. Tr.")).

For the reasons stated below, the Court will: (1) deny the Republic's Rule 60(b) motion; (2) deny the motion to quash the writ of attachment; and (3) grant in part Crystallex's motion for an order of sale.  The Court sets out the contours of the process it will follow to conduct the sale of PDVH shares.  While the parties will have an opportunity to provide additional input with respect to details of the sales procedures, the time has come for those procedures to be established and implemented to the greatest extent feasible under current circumstances.

## BACKGROUND

Crystallex's decade-long collection efforts have been detailed in numerous prior opinions of this Court and the Third Circuit. *See, e.g., Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380 (D. Del. 2018) ("*Crystallex Writ Op.*"), *aff'd*, 932 F.3d 126 (3d Cir. 2019) ("*Crystallex App. Op.*").  A brief summary will suffice for present purposes.

---

[1] *See Phillips Petroleum Co. Venezuela Ltd. v. Petróleos de Venezuela, S.A.*, No. 19-mc-342-LPS (D. Del.).

As Judge Ambro wrote for the Third Circuit in July 2019:

> Crystallex International Corp., a Canadian gold mining company, invested hundreds of millions of dollars to develop gold deposits in the Bolivarian Republic of Venezuela. In 2011, Venezuela expropriated those deposits and transferred them to its state-owned oil company, Petróleos de Venezuela, S.A. ("PDVSA"). To seek redress, Crystallex invoked a bilateral investment treaty between Canada and Venezuela to file for arbitration before the International Centre for Settlement of Investment Disputes. The arbitration took place in Washington, D.C., and Crystallex won; the arbitration panel awarded it $1.2 billion plus interest for Venezuela's expropriation of its investment. The United States District Court for the District of Columbia confirmed that award and issued a $1.4 billion federal judgment. Now Crystallex is trying to collect.
>
> Unable to identify Venezuelan-held commercial assets in the United States that it can lawfully seize, Crystallex went after U.S.-based assets of PDVSA. Specifically, it sought to attach PDVSA's shares in Petróleos de Venezuela Holding, Inc. ("PDVH"), its wholly owned U.S. subsidiary. PDVH is the holding company for CITGO Holding, Inc., which in turn owns CITGO Petroleum Corp. ("CITGO"), a Delaware Corporation headquartered in Texas (though best known for the CITGO sign outside Fenway Park in Boston).
>
> This attachment suit is governed by the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602-1611 (the "Sovereign Immunities Act"). Under federal common law first recognized by the Supreme Court in *First National City Bank v. Banco Para El Comercio Exterior de Cuba* ("*Bancec*"), 462 U.S. 611, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983), a judgment creditor of a foreign sovereign may look to the sovereign's instrumentality for satisfaction when it is "so extensively controlled by its owner that a relationship of principal and agent is created." *Id.* at 629, 103 S.Ct. 2591.
>
> Interpreting *Bancec*, the District Court, per Chief Judge Stark, concluded that Venezuela's control over PDVSA was sufficient to allow Crystallex to attach PDVSA's shares of PDVH in satisfaction of its judgment against the country. PDVSA and Venezuela, along with PDVSA's third-party bondholders as *amici* (the "Bondholders"), challenge this ruling.
>
> Venezuela and the Bondholders do not substantially contest

the District Court's finding that it extensively controlled PDVSA. Rather, they raise various jurisdictional and equitable objections to the attachment. Likewise, PDVSA primarily contends that its tangential role in the dispute precludes execution against its assets under *Bancec* irrespective of the control Venezuela exerts over it.

We affirm the District Court's order granting the writ of attachment and remand for further proceedings consistent with this opinion.

*Crystallex App. Op.* at 132.

On October 1, 2019, the Third Circuit lifted its stay of this Court's proceedings. (D.I. 136) Thereafter, in November 2019, the Court held a status conference, with all parties to the instant action as well as the parties in other pending actions brought by judgment creditors of the Venezuela Parties. (*See* D.I. 141; *see also* D.I. 139 (joint status report)) On December 12, 2019, the Court issued a memorandum order that, among other things, stayed Crystallex's enforcement efforts until the conclusion of the Venezuela Parties' attempt to obtain Supreme Court review of the Third Circuit's decision. (*See* D.I. 154; *see also* D.I. 166 (modifying stay order)) On May 18, 2020, the Supreme Court denied the petition for a writ of certiorari that the Republic and PDVSA had filed. (*See, e.g.*, D.I. 167) The parties' subsequent disputes about how the Court should proceed culminated in the pending motions.

## DISCUSSION

## I.     The Venezuela Parties' Attempts To Eliminate The Writ of Attachment

The Republic's Rule 60(b) motion asks the Court to vacate the writ of attachment that has been served on PDVSA, which holds shares of PDVH to be sold to satisfy Crystallex's judgment against Venezuela. At the same time, PDVSA, PDVH, and CITGO (the "PDVSA Parties") move for the Court to quash the writ of attachment. Together, the Venezuela Parties' attempts to eliminate the writ of attachment are predicated on new facts and circumstances, which

purportedly render the writ inequitable to maintain, and on new legal arguments that were not presented to the Court before it issued the writ. As the Court explains below, both motions lack merit and will be denied.

### A.   Venezuela's Rule 60(b) Motion

#### 1.   Legal Standards

Federal Rule of Civil Procedure 60(b) provides that a party may file a motion for relief from a final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

A Rule 60(b) motion must be filed within a reasonable time, which for subsections (1), (2), and (3) is one year after the judgment being challenged. *See* Fed. R. Civ. P. 60(c)(1). A motion filed pursuant to Rule 60(b) is committed to the sound discretion of the district court guided by accepted legal principles as applied in light of all relevant circumstances. *See Pierce Assocs., Inc. v. Nemours Found.*, 865 F.2d 530, 548 (3d Cir. 1988). The burden to obtain relief under Rule 60(b) rests on the moving party, and it is a difficult standard to meet. *See generally Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991). This reality stems from the judicial system's "overriding interest in the finality and repose of judgments," which only "extraordinary" and "exceptional" circumstances can "overcome." *Mayberry v. Maroney*, 558 F.2d 1159, 1163-1164 (3d Cir. 1977).

### 2.    The Parties' Contentions

The Republic moves for relief from the Court's August 9 and 23, 2018 orders – which authorized the writ of attachment and then ordered it to be issued and served – pursuant to Rule 60(b)(5) and 60(b)(6).  In moving for relief, the Republic principally contends that changed circumstances relating to the relationship between Venezuela and PDVSA vitiate the Court's alter ego determination.  According to the Republic, since August 2018, it has "resurrected and reinforced PDVSA's independence" as a company.  (D.I. 184 at 5)  Further, the Republic argues that one of the crucial predicates underpinning the Court's August 2018 orders – namely, that the government of President Nicolás Maduro exerts control over PDVSA – no longer remains true, for reasons including that the United States now recognizes Juan Guaidó as Interim President. According to Venezuela, Guaidó and the National Assembly have taken concrete steps to confirm PDVSA's independence from the Republic.  (*Id.* at 9, 13)  Relatedly, the Republic points to the U.S. government's 2019 amendment of sanctions it has imposed on Venezuela as rendering the prospective application of the writ issued by this Court no longer equitable.  (*Id.* at 15-16)  Finally, the Republic contends that continuing the attachment of its U.S.-based assets undermines U.S. efforts to help Venezuela mitigate its humanitarian crisis, restore democracy, and pay all of its many creditors in a fair and just manner.  (*Id.* at 19-20)

Crystallex has multiple responses.  With respect to Rule 60(b)(5), Crystallex contends that relief is not available to the Republic because the writ is a final legal remedy and not a prospective equitable remedy.  (D.I. 199 at 1-2)  In any event, according to Crystallex, maintaining the writ of attachment continues to be equitable under the circumstances.  (*Id.* at 2) With respect to Rule 60(b)(6), Crystallex argues that the Republic has failed to identify any "exceptional circumstances" to justify relief.  (*Id.* at 2-3)  In Crystallex's view, a debtor

reforming practices after a court has imposed consequences for past bad behavior cannot be "exceptional" in this context. (*See id.*)

### 3.    Rule 60(b)(5)

The Court agrees with Crystallex that the Republic has failed to show it is entitled to relief under Rule 60(b)(5).  Venezuela has not demonstrated that prospective application of the writ is no longer equitable.

Rule 60(b)(5) authorizes relief from a "final judgment, order, or proceeding" where "applying it prospectively is no longer equitable."  The rule "provides a means by which a party can ask a court to modify or vacate a judgment or order if a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (internal quotation marks omitted).  Rule 60(b)(5) permits modification of a judgment on equitable grounds, however, "only if it is 'prospective,' or executory." *Marshall v. Bd. of Educ.*, 575 F.2d 417, 425 (3d Cir. 1978).  "[T]he class of judgments having prospective application" is "restricted to forward-looking judgments, such as injunctions and consent decrees." *Comfort v. Lynn Sch. Comm.*, 560 F.3d 22, 28 (1st Cir. 2009). Even then, relief is "limited . . . to injunctions and consent decrees that involve 'long-term supervision of changing conduct or conditions.'" *Id.* (quoting *Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1, 7 (1st Cir. 2001)); *see also Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 272-273 (3d Cir. 2002) (distinguishing cases "involv[ing] injunctions or consent decrees regulating ongoing behavior" from cases in which party failed to make promised payments and "attempt[ed] to use its failure . . . to its own advantage").

The Republic's motion for relief under Rule 60(b)(5) fails, first, because the writ of attachment that the Court issued and had served on PDVSA is not the type of prospective or

executory order to which this Rule applies.  Under Delaware law, the issuance of a writ of

attachment is a "purely legal remedy" that represents a legal property interest.  *Spoturno v.*

*Woods*, 192 A. 689, 692 (Del. 1937).  The attachment is not "prospective" in the sense in which

that term is used in Rule 60(b)(5), even though it is a necessary precursor to a sale of shares that

has not yet occurred and, plainly, will have some future effect.  *See Marshall*, 575 F.2d at 425

n.27 ("A 'prospective' injunction envisions a restraint of future conduct, not an order to remedy

past wrongs when the compensation payment is withheld from the beneficiaries until some

subsequent date."); *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1139 (D.C. Cir.

1988) ("[T]he standard we apply in determining whether an order or judgment has prospective

application within the meaning of Rule 60(b)(5) is whether it is 'executory' or involves 'the

supervision of changing conduct or conditions.'").  While the Court will need to be involved in

the sale of PDVSA's shares of PDVH, the Court's continuing role is merely to remedy the past

wrong committed by the Republic by ensuring compensation for Crystallex; it is not the type of

ongoing judicial oversight of future conduct to which Rule 60(b)(5) applies.  *See, e.g., Twelve*

*John Does*, 841 F.2d at 1138 ("Virtually every court order causes at least some reverberations

into the future, and has, in that literal sense, some prospective effect; even a money judgment has

continuing consequences, most obviously until it is satisfied . . . ."); *see also Keepseagle v.*

*Vilsack*, 118 F. Supp. 3d 98, 125 (D.D.C. 2015) (finding *cy pres* provision of agreement

analogous to unpaid damages but not "prospective" merely because it "le[ft] some administrative

responsibilities to be executed").

      The Court is denying Venezuela relief under Rule 60(b)(5) for the further reason that

Venezuela has failed to show that continued application of the writ of attachment is no longer

equitable.  Instead, it would be inequitable to permit the Republic – an adjudicated judgment

debtor, which has acknowledged that it must pay Crystallex what it owes[2] and evidently has the means to do so (at least through sale of PDVSA's shares of PDVH) – to evade its obligation and, thereby, undermine the authority of the U.S. judicial system. As Crystallex observes, and as other courts have recognized, a party that is inequitably refusing to pay a final judgment of the U.S. courts will rarely (if ever) be able to obtain equitable relief for itself from those same courts. (*See, e.g.*, Sept. Tr. at 54 ("They simply do not want to pay, and they want our courts to aid them in evading our judgments."); *see also Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 128 (2d Cir. 2009) (faulting foreign defendants for refusing to comply with court orders and then having "the chutzpah to seek post-judgment, equitable relief from complying with those orders"))

In reaching these conclusions about the equities, the Court is not holding that real-world facts or legal consequences are (to borrow the Republic's terminology) "frozen in amber." (*See, e.g.*, July Tr. at 14; Sept. Tr. at 28-29) Instead, the Court is giving the necessary and proper weight to a final judgment whose validity has been repeatedly recognized in our courts, including the Courts of Appeals for the D.C. Circuit and Third Circuit as well as the District Courts for D.C. and Delaware.

Relatedly, with respect to the equitable analysis, the Court does not see any relevance to the fact that PDVSA has not been held liable for the debts of Venezuela. As Crystallex asked, the Court held only that specified PDVSA property (the shares of PDVH) could be used to satisfy Venezuela's debt to Crystallex. That Crystallex did not seek or receive even more substantial judicial relief does nothing to undermine the equitable importance of enforcing the relief that Crystallex did obtain and ensuring that the final judgment against Venezuela is fully

---

[2] *See, e.g.*, July Tr. at 18 ("We've tried to be very clear that the Guaidó government recognizes that Venezuela does have to pay this claim . . . ."); *id.* at 52 ("We have said over and over again we acknowledge our responsibility for these debts."); Sept. Tr. at 58-59.

effectuated.

Finally, the Court is also unpersuaded by the Republic's refrain that "it would be inequitable" for Crystallex to collect on its judgment when "all of those other judgment creditors" who have been injured by the Republic are not (yet) about to be paid. (July Tr. at 22-23) Crystallex has done nothing inequitable in litigating against the Republic for more than a decade and prevailing in every forum that has considered the parties' disputes.[3]  While the Court joins Crystallex – and, evidently, the United States and the Republic – in hoping that, someday soon, Venezuela will find a way to pay all its debts and also alleviate the terrible suffering in Venezuela, the possibility that this outcome may not be achieved before Crystallex receives what it is owed does not absolve this Court of its duty to comply with the Third Circuit's orders on remand.  As the Third Circuit plainly stated, "Venezuela owes Crystallex from a judgment that has been affirmed in our courts.  Any outcome where Crystallex is not paid means that Venezuela has avoided its obligations." *Crystallex App. Op.* at 149.

### 4.    Rule 60(b)(6)

Rule 60(b)(6) is a "catch-all" provision, permitting a party to seek reconsideration for "any other reason that justifies relief," i.e., reasons not expressly identified in subsections (b)(1) through (b)(5).  The Third Circuit has consistently held that Rule 60(b)(6) provides "extraordinary relief" that is available only in "exceptional circumstances" to address an extreme or unexpected hardship. *Coltec Indus.*, 280 F.3d at 273; *see also Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008).  Here, the Court agrees with Crystallex that the Republic has

---

[3] *See generally* July  Tr. at 27 (Crystallex's counsel: "[Crystallex] has had to spend money chasing assets of the Republic because Venezuela refuses to comply voluntarily with a full and final judgment of the D.C. [District Court] that was affirmed with the D.C. Circuit, and it's final and uncontestable.  We're having to search for assets of Venezuela everywhere and to seek attachment because Venezuela does not want to comply with a final judgment of the D.C. Circuit.").

failed to demonstrate the existence of exceptional circumstances that would justify the extraordinary relief that it seeks.

The Republic argues that exceptional circumstances are present because Venezuela has a new government and the new government no longer exercises extensive control over PDVSA. (*See generally* July Tr. at 12, 14-15) Thus, to the Republic, PDVSA is no longer Venezuela's alter ego, so there is no "continuing validity of Crystallex's right to encumber PDVSA's property" based on a debt owed solely by Venezuela. (D.I. 184 at 11) A finding of exceptional circumstances is further supported, according to the Republic, by the fact that the U.S. government recognizes the new Venezuelan government and has imposed stringent sanctions on the Maduro regime in aid of the new Guaidó-led government.

The Court disagrees. Venezuela's motion under Rule 60(b)(6) fails because it is predicated on the Court giving weight (indeed, controlling weight) to events that post-date the situation as it existed at the pertinent time, i.e., the period between the filing of the motion seeking a writ of attachment and the subsequent issuance and service of that writ. Venezuela's arguments are entirely inconsistent with the very purpose of a writ of attachment, which is to hold property of a judgment debtor in the custody of the Court so it can be used for the benefit of the judgment creditor *no matter what happens in the future*. Hence, crediting Venezuela's position could render this entire litigation a nullity – which would be a highly unusual outcome, particularly given that Crystallex has prevailed in every court that has considered any aspect of this case.

The Court agrees with Crystallex that the important dates are the dates on which it filed its motion for a writ of attachment, on which the writ of attachment was issued, and on which the

writ was served. (*See, e.g.*, July Tr. at 32; Sept. Tr. at 19-20)[4] Before the Court granted

Crystallex's motion for a writ, PDVSA was free to alienate its shares of PDVH. After that date,

however, the shares were attached; that is, they were (and remain) restricted from alienation by

operation of the Court's order. To conclude that the pertinent date of analysis is any date after

service of the writ would undermine the entire logic of issuing the writ in the first place.

No party has presented the Court with legal authority, and the Court is aware of none,

that requires the Court to reconsider its alter ego determination, a determination that was made

based on the record that the parties chose to make, and which was upheld on appeal. As

Crystallex persuasively explains:

> PDVSA was Venezuela's alter ego when it received Crystallex's
> expropriated assets for no consideration, when it paid Venezuela's
> fees in the underlying arbitration with Crystallex, when Venezuela
> used it to access U.S. credit markets, when Crystallex filed its
> attachment motion, and when this Court ruled on that motion. No
> federal or state authority provides any precedent for Venezuela and
> PDVSA avoiding accountability for that past conduct by changing
> course ***after*** this Court has made its dispositive alter-ego finding.

(D.I. 199 at 15) Thus, any change in the status of the relationship between PDVSA and the

Republic after the Court's August 2018 rulings does not constitute an exceptional circumstance

justifying relief under Rule 60(b)(6). Because all the events on which Venezuela relies –

including the Guaidó administration's changes with respect to the PDVSA board, the National

Assembly's adoption of new laws, the U.S. government's January 2019 recognition of the

Guaidó government, and amendment of U.S. sanctions on Venezuela – post-date August 2018,

they do not provide a valid basis for relief. (*See, e.g.*, D.I. 219 at 7; D.I. 224 at 4)

---

[4] In so holding, the Court is not suggesting that historical events preceding the filing of the
motion for a writ are irrelevant. Historical facts could have an impact, even a substantial or
perhaps dispositive impact, on assessing (for example) whether an alter ego relationship exists in
the pertinent period.

Venezuela's contrary view is based on little more than suggestions from the Third Circuit and this Court that the record might be expanded with evidence arising after August 2018 (*see* D.I. 184 at 12 (citing *Crystallex App. Op.* at 144; *Crystallex Writ Op.* at 425)), and a citation to *Bancec*'s statement that the pertinent inquiry must take account of current circumstances, in light of its design to safeguard international comity. These are, at best, weak support for requiring the Court to reevaluate in 2020 or 2021 an alter ego finding that it made on a record created in 2018, which was the basis for findings that were affirmed in 2019. Adopting Venezuela's position would invite abuse; it would permit a judgment debtor whose alter ego's property has been attached to "fix" whatever facts supported the adverse alter ego determination and then delay, appeal, and ultimately escape having to pay its judgments.

Moreover, courts have held that a change in government is not the type of extraordinary event sufficient to be the basis for relief under Rule 60(b)(6). *See Socialist Republic of Romania v. Widenstein & Co.*, 147 F.R.D. 62, 66 (S.D.N.Y. 1993). To the contrary, such changes occur "regularly, and to allow such . . . event[s] to support a Rule 60(b)(6) motion would wholly negate the finality of judgments." *Id.* at 65-66.

The Court finds further confirmation for its conclusion (that events post-dating the August 2018 issuance and service of the writ of attachment do not constitute exceptional circumstances warranting extraordinary relief under Rule 60(b)(6)) in the reality that Venezuela and PDVSA brought these same "new" facts to the attention of the Third Circuit, which nonetheless affirmed this Court's alter ego finding. Additionally, Venezuela finds itself in its present situation because of its own "deliberate choices" as a litigant, i.e., its refusal to pay judgments that it recognizes that it will eventually have to pay. (July Tr. at 38-39; *see also* Sept. Tr. at 11) Troubling incentives would be created if a party's own inequitable conduct were later

found to create the type of exceptional circumstances justifying relief for that party from a final judgment.

Thus, again, Venezuela's motion for relief under Rule 60(b)(6) will be denied.

### 5.    Interests of the United States

In deciding to deny the Republic's motion, the Court has carefully considered the statement of interest and arguments made by the United States (as the Court has also done in connection with the sales procedures, as discussed below). The U.S. government, like Venezuela, takes the position that "fundamental premises underlying the alter ego ruling no longer hold," which the U.S. says could justify granting the Republic's motion, although it "express[es] no firm legal position on whether [the changed] circumstances require Rule 60(b) relief." (D.I. 212 at 8; *see also* D.I. 220 at 1)  For the reasons already explained above, the Court has determined that the changed circumstances post-dating the August 2018 alter ego finding do not justify the relief sought by Venezuela.[5]

Understandably, the government (like the parties) has devoted much attention to the sanctions regime, which is implemented by the United States Department of Treasury's Office of Foreign Assets Control ("OFAC"). In the Court's view, the 2019 changes to the OFAC sanctions do not amount to exceptional circumstances warranting Rule 60(b) relief.[6]  The sanctions are established by Executive Orders and through regulations imposing licensing

---

[5] The Court is grateful to the United States Department of Justice for filing a Statement of Interest and a supplemental brief (*see* D.I. 212, 220) and for participating in the oral arguments in July and September 2020. Although the Court has not been persuaded to act in accordance with the government's request, it has been helped by the government's input – which the Court has long sought (*see, e.g.*, D.I. 154 at 9 n.14, 23 n.25) and hopes to continue to receive as this case proceeds.

[6] Nor does the government contend that they do. (*See* D.I. 220 at 1) (declining to take "firm legal position" on whether Rule 60(b) relief is warranted)

requirements for certain transactions with the Republic. *See, e.g.*, 31 C.F.R. §§ 591.201, 591.202(c), 591.310; *see also* Exec. Order Nos. 13,692 (Mar. 8, 2015), 13,835 (May 21, 2018), 13,850 (Nov. 1, 2018), 13,884 (Aug. 5, 2019). The Court previously held that Executive Order 13,835, which governed the sanctions regime in August 2018, "does not pose a bar to granting relief." *Crystallex Writ Op.* at 421. Likewise now, the modified sanctions regime does not require a retroactive change in the order granting the writ. While the current sanctions regime does appear to block issuance of new writs of attachment on Venezuelan assets in the United States without an OFAC license – as Crystallex and the Republic agree (*see, e.g.*, July Tr. at 41; D.I. 203 at 9) – neither the Executive Orders nor the regulations require invalidating preexisting judicial orders. *See* Exec. Order No. 13,884 §§ 1(a), 1(c), 6(d); Exec. Order No. 13,850; 31 C.F.R. §§ 591.201, 591.202(e), 591.407, 591.506(c).

The OFAC licensing process is important for another reason: it provides a mechanism by which the interests the government has expressed to the Court can be taken into account by the Executive Branch itself. All involved in this litigation, including Crystallex, recognize that (under current law and policy) a specific license will be required from OFAC before a sale of PDVSA's shares of PDVH can close. The Court understands that the process by which OFAC reviews an application for such a license includes consideration of the foreign policy and national security interests the government has asked the Court to consider in this litigation. *See Crystallex App. Op.* at 151 ("[I]t is . . . conceivable that short- or long-term U.S. foreign policy interests may be affected by attachment and execution of PDVSA's assets. The Treasury sanctions provide an explicit mechanism to account for these.").

Thus, again, the Court will deny Venezuela's Rule 60(b) motion.

### B.     PDVSA Parties' Motion To Quash

PDVSA, PDVH, and CITGO (collectively, the "PDVSA Parties") move to quash the writ of attachment that has been served on PDVSA relating to its shares of PDVH. The PDVSA Parties' motion to quash rests on two contentions: (i) under Delaware law, Crystallex cannot attach PDVSA's shares of PDVH to satisfy a judgment against Venezuela without showing fraud, which Crystallex has failed to do; and (ii) even if Crystallex could attach PDVSA's shares of PDVH to satisfy its judgment against Venezuela, the writ is "inoperable" because PDVH does not possess the physical certificates representing the shares owned by PDVSA. (D.I. 179 at 2-4) The Court concludes that PDVSA is collaterally estopped from arguing that the writ of attachment is invalid under Delaware law, as the validity of the writ was already litigated and determined by this Court in 2018 and upheld by the Third Circuit in 2019. The Court also concludes that PDVSA is judicially estopped from pressing its new contention based on lack of physical possession of shares certificating PDVSA's holdings because it contradicts numerous representations PDVSA made to this Court and the Court of Appeals to obtain relief (such as stays and not having to post a bond). PDVSA's wholly-owned subsidiary, PDVH, and PDVH's indirect subsidiary, CITGO, are bound to the same extent as PDVSA. Finally, the Court concludes that the PDVSA Parties' Delaware law challenges are also untimely.

#### 1.     Collateral Estoppel Precludes PDVSA from Challenging the Validity of the Writ Under Delaware Law

The PDVSA Parties argue that Federal Rule of Civil Procedure 69(a), which authorizes execution on property in accordance with "the procedure of the state where the court is located," applies to attachment actions involving foreign states, notwithstanding the statutory immunity provisions of the Foreign Sovereign Immunities Act ("FSIA") of 1976, Pub. L. No. 94-583, 90 Stat. 2891 (codified as amended in 28 U.S.C.). (D.I. 179 at 7-8) Thus, according to the PDVSA

Parties, Crystallex's ability to satisfy its judgment against the Republic by executing on

PDVSA's shares of PDVH depends on application of Delaware law. (*Id.* at 9)  Under Delaware

law, the PDVSA Parties continue, (i) Crystallex may not pierce the corporate veil under an alter

ego theory and thereby attach PDVSA's shares of PDVH without a showing of fraud; and

(ii) Crystallex failed to allege or prove fraud with particularity during any relevant period. (*Id.* at

9-13)  Moreover, according to the PDVSA Parties, to this point in the litigation this Court has

"only decided that PDVSA was Venezuela's alter ego for purposes of resolving sovereign

immunity under the FSIA.  It never decided the question of whether Venezuela has an attachable

interest in the shares of" PDVH under Delaware law.  (July  Tr. at 55)

The Court agrees with Crystallex that collateral estoppel precludes the PDVSA Parties

from now challenging the validity of the writ under Delaware law.  (*See generally* D.I. 199 at 20-

24)  While the litigation to date has focused on the FSIA, *Bancec*, and federal law, this Court's

findings were not limited to issues of federal law.  In addition to denying PDVSA's motion to

dismiss – which was predicated principally on federal-law issues of jurisdiction and immunities

with respect to Venezuela, PDVSA, and the shares of PDVH – the Court also granted

Crystallex's motion to issue the writ.  The Court rejected whatever challenges PDVSA made to

the validity of that writ and ordered the writ to be served.  The Court's orders resulting in service

of the writ were affirmed on appeal.  At this point, then, the PDVSA Parties are collaterally

estopped from challenging the validity of the writ under Delaware law.

Collateral estoppel (also known as issue preclusion) applies where "(1) the identical issue

was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination

was necessary to the decision; and (4) the party being precluded from relitigating the issue was

fully represented in the prior action." *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201,

209 (3d Cir. 2001) (internal quotation marks omitted).  Each of these requirements is satisfied

here.  (*See generally* D.I. 229 at 1) (Crystallex: "PDVSA and its affiliates are estopped from

relitigating these issues because PDVSA actually litigated the merits of the writ of attachment of

its own accord and this Court and the Third Circuit actually decided them adversely to PDVSA's

arguments.")  The identical issue that the PDVSA Parties now wish to have adjudicated – the

validity of the writ of attachment served on PDVSA to attach its shares of PDVH  – was

previously adjudicated, was actually litigated, and was necessarily decided in the course of this

Court deciding to grant Crystallex's motion for a writ of attachment, issue that writ, and have it

served.  Further, it is undisputed that PDVSA has been fully represented at all stages of this

litigation ever since it chose to intervene.

    That PDVSA now raises *new* arguments in support of its *old* position does not defeat

application of collateral estoppel.  As the Third Circuit has stated, "Once an *issue* is raised and

determined, it is the entire *issue* that is precluded, not just the particular arguments raised in

support of it in the first case." *Alevras v. Tacopina*, 226 F. App'x 222, 231 (3d Cir. 2007)

(internal alteration omitted).  The issue that PDVSA wants to litigate in its motion to quash – the

validity of the writ – is the very issue that this Court already decided.  That the earlier part of the

litigation focused on federal-law arguments against the validity of the writ and PDVSA now

wants to make arguments based on Delaware law does not change the reality that the validity of

the writ has already been litigated.[7]

---

[7] Although collateral estoppel would apply even if this Court had decided the validity of the writ
without any express reference to Delaware law, in fact both parties and the Court did allude to
Delaware law in the earlier part of this litigation.  For instance, PDVSA argued in opposition to
Crystallex's motion for a writ of attachment that *Bancec* should be applied in accordance with
Delaware corporate law, that "Delaware law is crystal-clear that alter ego liability applies only in
the rare circumstance where the corporate form is abused to perpetrate a fraud against the
plaintiff," and that a clear-and-convincing-evidence standard applies.  (D.I. 26 at 16-17 (citing
cases applying Delaware law that require showing of fraud or similar injustice); *see also* D.I. 179

In resolving PDVSA's appeal, the Third Circuit explicitly stated that it was reviewing both "the District Court's denial of PDVSA's motion to dismiss as an immune sovereign *and* the grant of Crystallex's motion for a writ of attachment under Federal Rule of Civil Procedure 69." *Crystallex App. Op.* at 136 (emphasis added).  It further observed that its jurisdiction to review the denial of the motion to dismiss arose "under the collateral order doctrine" and that it had appellate jurisdiction over the grant of the writ because that order "amounted to a *final judgment* under 28 U.S.C. § 1291 by leaving the District Court *nothing left to do but execute*." *Crystallex App. Op.* at 136 (emphasis added; internal quotation marks omitted).  The Third Circuit could not have characterized this Court's decision to grant the motion for a writ of attachment as a final order, and as one leaving this Court with "nothing . . . to do but execute," had the Third Circuit required or intended for this Court to permit additional challenges to the validity of the very writ it was describing as "final."[8]

Other statements in the Third Circuit's opinion further confirm that the validity of the writ has been actually, necessarily, and finally resolved.  The Court of Appeals held that "so long as PDVSA is Venezuela's alter ego under *Bancec*, the District Court had the power to issue a writ of attachment on that entity's non-immune assets to satisfy the judgment against the country." *Crystallex App. Op.* at 139.  This means that if the *Bancec* standard is met – as it has been here – then PDVSA's shares of PDVH are validly attached and can be executed on; no

---

at 2-3)  In rejecting these arguments, the Court considered "cases applying state-law alter ego standards" but found them "unpersuasive" and "unhelpful." *Crystallex Writ Op.* at 396 n.13, 405; *see also id.* at 387-388 (legal standards section quoting 10 Del. C. § 5031; 8 Del. C. § 324(a)); *id.* at 425 n.48 (noting parties' agreement that Delaware law requires execution of writ to take place through public sale of attached shares).

[8] Crystallex also observes that implicit in Venezuela's filing of a motion pursuant to Rule 60(b) – which, after all, authorizes relief "from a *final judgment*" (emphasis added) – is Venezuela's recognition that everything about the validity of the writ has already been litigated. (*See, e.g.,* July Tr. at 81)

more challenge to the writ is contemplated. Similarly, the Third Circuit said that "[t]he District Court acted within its jurisdiction *when it issued a writ of attachment* on PDVSA's shares of PDVH to satisfy Crystallex's judgment against Venezuela." *Id.* at 152 (emphasis added). This means, again, that the writ is valid – under federal law and, to the extent anyone had a basis to challenge its validity under state law, under state law as well.

Following the September oral argument, PDVSA submitted supplemental authority relating to an issue about which the Court had inquired: whether PDVSA was required to raise merits defenses to Crystallex's motion for a writ of attachment at the same time PDVSA was briefing its purported entitlement to immunity under the FSIA. (*See* D.I. 227; *see also* D.I. 229-32; Sept. Tr. at 40) The case on which PDVSA relies, *Process & Industrial Development Ltd. v. Federal Republic of Nigeria*, 962 F.3d 576, 580 (D.C. Cir. 2020), addresses a situation in which the foreign sovereign, Nigeria, was forced, over its objection, to present all its jurisdictional and merits arguments in a single response to a petition for confirmation of an arbitration award. The Court of Appeals for the D.C. Circuit held that the district court had erred in requiring Nigeria to "brief the merits before resolving a colorable assertion of immunity." *Id.* at 579. *Process* does not help PDVSA evade the application of collateral estoppel here because the situation is fundamentally different from the one addressed by the D.C. Circuit.

As an initial matter, the analogy between the *Process* scenario and the situation here is imperfect, as it is not entirely clear that what *Process* meant by "merits" is truly analogous to the Delaware law issues PDVSA now seeks to press as a basis for quashing the writ. In any event, even accepting that PDVSA is now raising "merits" defenses, PDVSA is collaterally estopped because PDVSA (unlike Nigeria in *Process*) voluntarily intervened in the earlier stages of this litigation and voluntarily interjected those "merits" defenses into this case at that time. As

already explained, PDVSA opposed Crystallex's motion for a writ of attachment on both jurisdictional and "merits" grounds, under both federal and Delaware law.  (*See, e.g.*, D.I. 26 at 2, 20-23, 25, 27) (examples of PDVSA arguing merits of Crystallex's motion for attachment)  As *Process* confirms, PDVSA was "free to oppose" the motion in that manner.  *See* 962 F.3d at 585. PDVSA was not forced, over its objection, to argue its merits positions simultaneously with its jurisdictional positions; it chose to do so.  But that choice has consequently led to the application of collateral estoppel.

Because PDVSA's Delaware law challenges to the validity of the writ are barred by the doctrine of collateral estoppel, the Court will not substantively address them.

### 2. Judicial Estoppel Bars PDVSA from Prevailing on its Lack of Physical Certificates Argument

As an additional basis to quash the writ of attachment, the PDVSA Parties argue that Delaware law requires physical seizure of stock certificates for an effective attachment of shares of a Delaware corporation, but PDVH does not possess physical certificates representing any property belonging to PDVSA, so this Court's attachment is "not laid."  (D.I. 179 at 14-16; *see also* 8 Del. C. § 324(a) (stating that, "[e]xcept as to an uncertificated security . . . attachment is not laid and no order of sale shall issue" unless 6 Del. C. § 8-112 has been satisfied); 6 Del. C. § 8-112(a) ("[T]he interest of a debtor in a certificated security may be reached by a creditor only by actual seizure of the security certificate by the officer making the attachment or levy."))  The Court agrees with Crystallex that PDVSA is judicially estopped from prevailing on this argument.  (D.I. 199 at 27-37)

"The doctrine of judicial estoppel prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 221-22 (3d Cir. 2015); *see also*

*New Hampshire v. Maine*, 532 U.S. 742, 750-751 (2001) (identifying factors commonly considered in assessing whether to apply judicial estoppel, including (1) whether party's current position is "clearly inconsistent" with its earlier position, (2) whether acceptance of later inconsistent position would create "perception" that court had been "misled," and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped"). Thus, "'absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.'" *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996) (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4477 (1981)).

Judicial estoppel applies here. In August 2018, PDVSA persuaded the Court not to impose a bond requirement when it stayed proceedings pending PDVSA's interlocutory appeal. (*See* D.I. 98) PDVSA obtained this relief by assuring the Court that "a bond . . . is unnecessary because the Writ itself is sufficient security in lieu of a bond," adding that "[g]ranting an unconditional stay does not make Crystallex any worse off than it is today" because "a writ of attachment . . . provides the same functional security as a supersedeas bond." (D.I. 98 at 6, 17) PDVSA further assured the Court that it would be "a waste of money" to require a bond because the writ is "more than enough security in lieu of a bond." (*Id.* at 19; *see also* D.I. 118 at 10 (stating on reply that "the current restraint on the PDVH shares by virtue of the Writ . . . could constitute sufficient security in lieu of a bond"))[9]

In making these representations to the Court, PDVSA was stating that the writ was valid

---

[9] Likewise, in December 2019, the Court again denied Crystallex's request for a bond, when it stayed these proceedings while the petition for a writ of certiorari was proceeding in the Supreme Court. (D.I. 154) The Court did so based on the Republic's representation that Crystallex was "fully secured for whatever the value is of those assets." (*Id.* at 4 n.4)

and that, unless PDVSA were to prevail on appeal, Crystallex would execute on the writ and collect its judgment. (*See, e.g.*, Sept. Tr. at 55) (Crystallex explaining that PDVSA "affirmatively, factually represented, in order to dispense with the bond, that the writ was effectual to give [Crystallex] security, and that [Crystallex] would have recourse to the shares to sell") PDVSA's new contention that the writ is not valid under Delaware law because PDVH does not possess the physical certificate – and, thus, the writ has no value to Crystallex – is inconsistent with PDVSA's prior assurances that the writ secured Crystallex. There is no good explanation for PDVSA's change of positions. Instead, allowing PDVSA to prevail based on its new argument would show that the Court was previously misled by PDVSA into believing that the validity of the writ would not be subject to any further post-appeal challenge. It would be inequitable for PDVSA to prevail based on its present position, which is incompatible with its prior position.

Similarly, in opposing Crystallex's motion to expedite the appellate proceedings, PDVSA told the Third Circuit that "there is nothing that PDVSA can do to 'prejudice' or 'disturb' the writ of attachment," and that "Crystallex's writ of attachment also preclude[s] any transactions in the PDVH shares." (*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2797, Doc. No. 3113121203 (3d Cir. Dec. 28, 2018), Opp. to Mot. to Expedite at 16, 18) At various points, PDVSA likewise made representations to this Court that Crystallex would not be harmed by these proceedings moving slowly because the writ protected Crystallex's interests. (*See* D.I. 199 at 34-35 (listing representations PDVSA made in November 2019, December 2019, and February 2020, all seeking to slow down proceedings); *see also* Sept. Tr. at 69-73)) It would be inequitable to permit the PDVSA Parties to quash the writ based on PDVH's lack of physical possession of the share certificates when PDVSA repeatedly relied on the protection of the writ

to persuade this Court not to expedite this litigation.

Relatedly, in August 2018, PDVSA told the Court that "[t]he PDVH shares are located in Delaware, and they are not going anywhere." (D.I. 98 at 6, 15)  PDVSA now asserts that it was merely making a representation about a legal fiction, not a statement of fact.  According to PDVSA, all it was saying was that under 8 Del. C. § 169, "for ownership purposes, the location of the shares [is] in Delaware." (July  Tr. at 100)  The Court, however, understood PDVSA to be making a factual statement: that the shares were in Delaware, so the Court need not be concerned about prejudice to Crystallex, as Crystallex's rights were protected by the attached shares that would remain available in Delaware to sell and satisfy Crystallex's judgment.  PDVSA's current explanation is not credible and, even if it were, it does not render application of judicial estoppel inequitable.  PDVSA persuaded the Court not to require a bond by telling the Court that the shares were in Delaware, then later admitted that the shares are not in Delaware (and cannot even be located).  To permit PDVSA to avoid attachment and execution based on this lack of candor with the Court would be grossly unfair to Crystallex and would undermine the integrity of these proceedings.

Accordingly, the Court will not quash the writ based on PDVH's lack of physical possession of a share certificate.

### 3.     PDVH and CITGO Are Estopped To The Same Extent As PDVSA

The PDVSA Parties seeking to quash the writ of attachment include PDVH and CITGO.  Even though much of what the Court has said in connection with the motion to quash focuses on PDVSA, the Court's collateral estoppel and judicial estoppel conclusions also estop PDVH and CITGO from prevailing on this motion.

Estoppel doctrines, including collateral and judicial estoppel, can apply "not only against

24

actual parties to prior litigation, but also against [those] in privity to a party." *Milton H. Green Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 986 (9th Cir. 2012); *see also Board of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 505 (3d Cir. 1992) (noting that one requirement for collateral estoppel is that "the party against whom the bar is asserted was a party *or in privity* with a party to the prior adjudication") (emphasis added); *Maitland v. University of Minnesota*, 43 F.3d 357, 364 (8th Cir. 1994); *In re Johnson*, 518 F.2d 246, 252 (10th Cir. 1975). This is because "a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy." *Taylor v. Sturgell*, 553 U.S. 880, 895 (2008).

PDVH and CITGO are in privity with PDVSA, at least for purposes of this litigation. PDVH and CITGO are wholly-owned subsidiaries of PDVSA. *See Crystallex Writ Op.* at 418 n.36. All three entities share a "commonality of . . . interest in [this] matter" in that all three prefer that Crystallex collect on its judgment against Venezuela without involving PDVSA, PDVH, or CITGO. *See generally Doe v. Urohealth Sys., Inc.*, 216 F.3d 157, 162 (1st Cir. 2000). As Crystallex correctly observes, "both subsidiaries are only in this case because of their corporate relationship with PDVSA – *i.e.*, because PDVSA nominally owns the PDVH shares, and CITGO issued debt with change-of-control provisions." (D.I. 199 at 40) Further, "[g]iven that PDVSA brought this motion to quash jointly with its subsidiaries and co-signed the brief, D.I. 179 at 1, 19, it would 'strain credulity to find that the interests of [the subsidiary] and [the parent] were so distinct that they are not aligned' for purposes of preclusion." (*Id.*) (quoting *Anchor Glass Container Corp. v. Buschmeier*, 426 F.3d 872, 880 (7th Cir. 2005)) Additionally, PDVH is here as the custodian of PDVSA's nominal property (the PDVH shares), and preclusion applies where a "bailee seeks to relitigate" the "bailor's right of recovery." *Union Ins. Soc'y of Canton, Ltd. v. William Gluckin & Co.*, 353 F.2d 946, 953 (2d Cir. 1965); *see also McLaughlin*

*v. Board of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 686 F. App'x 118, 122-123 (3d Cir. 2017) (citing *Taylor*, 553 U.S. at 894) (noting that bailor-bailee relationship falls within "substantive legal relationship" exception to same-party-or-privity requirement for res judicata).[10]

Moreover, it would be inequitable for PDVH or CITGO to succeed in quashing the writ on a basis on which PDVSA is estopped. This case has been heavily litigated for years, in multiple courts, and Crystallex has prevailed at every step. It has done so by defeating every material argument raised in opposition to the relief that it has obtained. When the Court permitted PDVH and CITGO to intervene as parties, it did not do so in contemplation of these parties potentially undoing all the work that Crystallex, PDVSA, the Republic, this Court, and other courts have done in this case.

Finally, as Crystallex also contends, "[w]hoever brings this motion, this Court is bound by the Third Circuit's published, precedential decision," which held that the writ is valid. (D.I. 199 at 40) Hence, even if PDVH and CITGO were not in privity with PDVSA (which they are) and were not estopped to the same extent as PDVSA (which they are), the Court's obligation to comply with the appellate mandate would still require the Court to deny the motion to quash.

### 4.      The PDVSA Parties' Delaware Law Challenges Are Untimely

A related reason for denying the motion to quash, in addition to those already given above, is that all the PDVSA Parties' Delaware law challenges to the validity of the writ are untimely. Given how this case has proceeded, the proper time to have made these arguments was when the Court was evaluating Crystallex's motion to issue and serve the writ of attachment.

---

[10] Because PDVH and CITGO are in privity with PDVSA, and are therefore estopped to the same extent as PDVSA, the Court need not decide whether PDVH and CITGO have standing. Even assuming PDVH and CITGO have standing, they cannot prevail on the motion.

Failing that, at minimum PDVSA needed to have put the Court on notice that, after the Court granted Crystallex's motion, PDVSA would still seek an opportunity to attack the validity of the writ on state law grounds.  PDVSA did not do so, notwithstanding this Court's express inquiry.

The last section of the Court's August 9, 2018 opinion (which denied PDVSA's motion to dismiss and granted Crystallex's motion for the writ) identified four aspects of the parties' dispute that, as of that date, "remain[ed] unsettled." *Crystallex Writ Op.* at 425.  None of the questions that the Court posed expressly referenced Delaware law or the validity of the writ, reflecting the Court's belief that these issues had been settled (an impression that PDVSA never tried to correct).  The last of the Court's questions did reference the possibility of a motion to quash, but only with respect to whether the alter ego finding might be subject to further evidentiary proceedings.  The Court asked: "will Venezuela, PDVSA, and/or any other entity appear and seek to supplement the factual record already developed in this litigation and, if so, will such an entity attempt to (and, if so, be permitted to) argue that additional evidence materially alters the Court's findings, and thereby seek to quash the writ?" *Id.*

After asking that question, the Court cited a Delaware case and then referenced three occasions on which Crystallex had stated or suggested that the validity of the writ might be subject to challenge *after* it was issued.[11]  These statements appear to have been made by

---

[11] The full citation sentence is as follows:

> *See generally Hibou, Inc. v. Ramsing*, 324 A.2d 777, 783 (Del. Super. Ct. 1974) ("[O]n a motion to quash the order the Court as required by 10 Del. C. § 3506 must look at the Prima facie case presented to ascertain whether the plaintiff has 'a good cause of action' against all the defendants whose property has been attached."); D.I. 3-1 at 2 (Crystallex noting, "if any party has a claim to the shares at issue, that party can raise the issue with the Court after the writ is served"); Tr. at 21, 23 (Crystallex recognizing PDVSA, as well as perhaps PDVH and Venezuela, *may* have right to "come back in and challenge the writ"); D.I. 70

Crystallex in contemplation of ordinary proceedings under Delaware law, where the imperative
is to get the writ in place, thereby attaching the property (and protecting the creditor) while
deferring litigation over the validity of the attachment as much as possible until after the writ is
served.  Over time, as this case advanced – including as PDVSA intervened, moved to dismiss,
and vigorously litigated all issues, including by opposing Crystallex's motion for a writ –
Crystallex appeared to come to the view that, in the circumstances here, all litigation about the
validity of the writ had occurred.  (*See, e.g.*, D.I. 49 at 23 (Crystallex arguing: "The standard
procedure in Delaware as I understand it is that when we are dealing with a foreign sovereign,
we would go to the Clerk's Office, we would get a writ issued, we would serve it, and anyone
who had an objection would come in and move to quash the writ.  And that is essentially . . .
what we're doing here."); D.I. 70 at 3 n.5 (Crystallex stating that PDVSA should have moved to
quash writ after issuance, "as is the ordinary course," rather than "preemptively" moving to
dismiss, as PDVSA chose to do))

     Thus, in August 2018, it seemed that, as this case had evolved, the litigation over the
validity of the writ had already occurred in connection with the Court's decisions on the motion
for a writ and the motion to dismiss.  For this reason (among others), the Court ordered the
parties to submit a joint status report before deciding whether and when to order service of the
writ.  *See Crystallex Writ Op.* at 425.  In the status report that the Court subsequently received,
PDVSA did not address the Court's questions.  (*See* D.I. 86 at 6-8)  PDVSA provided no

---

          at 2 n.4 (Crystallex noting, "PDVSA may, of course, seek to
challenge the writ on non-jurisdictional grounds by a motion to
quash brought after the writ has issued and before the Court allows
the execution process to commence").

*Crystallex Writ Op.* at 425 (emphasis added).

indication that it, or any other entity, would seek to quash the writ based on Delaware law or on any other basis. Nor did PDVSA challenge Crystallex's statement in its portion of the status report (in response to the Court's question about supplementing the record) that "Venezuela has no new legal or factual basis on which to attempt to quash the writ at this stage of the litigation." (*Id.* at 5 n.7) The Court then proceeded to issue the writ and to have it served on PDVSA.[12]

The Court cannot find any indication, either in the record of this Court or that of the Third Circuit, that the PDVSA Parties were purporting to reserve their rights to press Delaware-law objections to the validity of the writ.[13] For example, neither PDVSA's mandamus petition (in No. 18-2889) nor opening brief for the consolidated appeals (in Nos. 18-2797 & 18-3124) stated or suggested that there were potentially unresolved issues of state law that this Court would have to consider on remand. PDVSA's reply in support of its mandamus petition suggested that this Court might ultimately need to order additional briefing and hear additional argument concerning how the sale of the attached shares should proceed, *but not* as to whether the writ of attachment was even valid in the first place. (*See In re Petróleos de Venezuela, S.A.*, No. 18-2889, Doc. No. 3113093035 (3d Cir. Nov. 23, 2018) PDVSA Mandamus Reply Br. at 5-6)[14]

---

[12] Even the way in which the PDVSA Parties now characterize their position in the August 2018 status report supports the Court's conclusion that these parties acted as if the writ was valid, subject only to their appellate rights. In an October 2020 letter to the Court, the PDVSA Parties state that "PDVSA took the position that 'until the Third Circuit finally resolves PDVSA's appeal from this Court's denial of its sovereign immunity, this Court can take no further action with respect to issuance or enforcement of the Writ.'" (D.I. 230 at 4) (quoting D.I. 86 at 8)

[13] As previously noted, both the parties and the Court did allude to Delaware law issues during the portion of the litigation leading to the grant of Crystallex's motion for issuance of the writ and denial of PDVSA's motion to dismiss. *See supra* p. 18 n.7.

[14] Crystallex, in its mandamus brief, reiterated to the Third Circuit the view that it had taken in

The PDVSA Parties now insist that "PDVSA made clear" that "the question of the propriety of the attachment was something that should be litigated later, and that the only issue the Court should decide was the FSIA question" (Sept. Tr. at 38), but they fail to cite to where they purportedly made this clear. Likewise, they assert that "from the beginning, everyone . . . knew there was going to be an attack on the attachment" after the writ was granted (July Tr. at 67), yet they identify no basis from which the Court (or Crystallex) should have "known" to expect a post-grant attack. When the Court directly asked counsel whether they could have raised their Delaware law challenges to the writ in the earlier phase of the litigation, counsel simply stated that "it wasn't raised, and PDVSA had every right not to raise it . . . nor was it required to be part of the litigation before this Court." (Sept. Tr. at 40)

In the Court's view, the PDVSA Parties' challenges to the validity of the writ are untimely. The Court agrees instead with Crystallex, which stated that the PDVSA Parties "were supposed to raise all of these arguments when they were fighting . . . the issuance of the writ." (Sept. Tr. at 54) As Crystallex accurately put it, if "PDVSA thought that there were questions of Delaware law that were additional questions that should have been adjudicated," then "the time

---

this Court, explaining that challenges to the writ typically come after the writ has been served, but PDVSA intervened and "preemptively oppose[d] attachment." (*See In re Petróleos de Venezuela, S.A.*, No. 18-2889, Doc. No. 3113055847 (3d Cir. Oct. 9, 2018) Crystallex Mandamus Br. at 8) Crystallex added that this Court had never limited the briefing on either Crystallex's or PDVSA's motions to jurisdiction issues and that PDVSA never asked for the briefing be so limited. (*Id.* at 9) Likewise, in its brief on the consolidated appeals, Crystallex explained that PDVSA had intervened to oppose the writ both on jurisdictional grounds and on the merits. (*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2797, Doc. No. 3113141891 (3d Cir. Jan. 23, 2019) Crystallex Appeal Br. at 18) In its reply briefs in support of its mandamus petition and appeal, PDVSA did not challenge these contentions or indicate that there were any state law or validity issues remaining to be litigated in this Court. (*See generally* PDVSA Mandamus Reply Br.; *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2797, Doc. No. 3113154696 (3d Cir. Feb. 6, 2019) PDVSA Appeal Reply Br.)

to raise them" was when the Court was adjudicating Crystallex's motion for a writ and PDVSA's

motion to dismiss. (July Tr. at 80)  It is now too late to raise these issues.

Thus, again, the PDVSA Parties' motion to quash will be denied.

## II.  Crystallex's Time To Execute The Writ Has Been And Remains Tolled

An issue that arose in the September 2020 argument was whether the writ of attachment

issued by the Court in August 2018 would expire after three years, pursuant to Delaware law, 10

Del. C. § 5081.  (*See, e.g.*, Sept. Tr. at 71-72)  Having reviewed the parties' subsequently-filed

letter briefs on this topic, the Court agrees with Crystallex that the stay orders issued by this

Court and the Third Circuit have tolled the three-year priority period of Section 5081.  (*See* D.I.

228 at 1)  The Court further agrees with Crystallex that the Court has discretion to issue

additional orders tolling the expiration of the three-year priority period should that become

necessary – depending on future events and their pace – where any delay is not of Crystallex's

making.  (*See id.* at 1-2)  Such tolling is consistent with the principles of equitable tolling.  *See*

*CTS Corp. v. Waldburger*, 573 U.S. 1, 10 (2014) (explaining that statutes of limitations exist to

encourage plaintiff to pursue his rights diligently, and when extraordinary circumstance prevents

him from bringing timely action, restriction imposed by statute of limitations does not further its

purpose).  The Venezuela Parties – the Republic, PDVSA, PDVH, and CITGO – do "not object

to a ruling by the Court that the running of the 3-year period specified in 10 *Del. C.* § 5081 is

tolled during the pendency of any stay order." (D.I. 228 at 3)  ConocoPhillips and the United

States take no position on the proper interpretation of the Delaware statute.  (*See id.*)

The Court deems it the most appropriate exercise of its discretion to expressly order that

the three-year priority period has not yet begun, as Crystallex has not been permitted to execute

on its writ, and no writ of execution has been issued.  Given the pace of these proceedings to

date, and the large amount of litigation that likely lays ahead, it is not in the interests of any parties, any other creditors, or the Court to leave doubt as to whether the priority period is running.

### III.    Crafting The Contours Of The Sales Process

The Court stated in December 2019: "If the Supreme Court proceedings do not alter the Third Circuit's instructions to this Court, the Court intends to proceed to selling" PDVSA's shares of PDVH that are attached. (D.I. 154 at 4 n.4) Consistent with this pronouncement, Crystallex has been pushing the Court – ever since the Supreme Court denied the Republic's petition for certiorari in May 2020 – to move expeditiously toward a sale.[15] By contrast, the Venezuela Parties (in addition to pressing their Rule 60(b) motion and motion to quash) have asked the Court to refrain from taking any steps toward a sale unless and until OFAC provides a specific license. Additionally, on July 16 – the eve of the Court's hearing on the pending motions – the United States appeared, urging the Court to follow the Republic's preferred path and not to proceed toward a sale absent an OFAC license.

The Court directed that the disputes relating to sales procedures be briefed in parallel with the briefing on the motions for relief from the writ of attachment. (D.I. 213, 218) In addition to hearing from the parties and the government, the Court also received briefing from non-party ConocoPhillips, which requests that its judgment against Venezuela be handled according to the same process that the Court implements for Crystallex. (D.I. 180, 202)

The Court has decided that the most reasonable and appropriate course of action, in light of the totality of the circumstances, is to set up the sales procedures and then to follow them to

---

[15] At the September 17 oral argument, Crystallex asked the Court to set a target sale date during the week of January 11, 2021. (*See* Sept. Tr. at 73) As is evident from the timing of today's Opinion, the Court has not granted this request.

the maximum extent that can be accomplished without a specific license from OFAC. All parties agree that, under current law and policy, a sale of PDVH shares cannot be completed without a specific OFAC license. (*See, e.g.*, Sept. Tr. at 86) But all the preparatory steps that can be taken without such a license can, and should, be taken. The alternative would be to make Crystallex wait for an indefinite additional period, which cannot be justified given the decade and resources that Crystallex has already spent trying to collect on its judgment and given its uninterrupted string of litigation victories. At this point, the Court agrees with Crystallex that "[t]here is no just reason not to advance this litigation to the furthest point that OFAC's sanctions regime permits." (D.I. 223 at 2)

Two principal arguments have been made against moving forward at this time, but neither of them has persuaded the Court. First, the Venezuela Parties point out that OFAC may never issue a specific license allowing the sale and, in that event, all the Court's efforts toward conducting the sale (and all the litigation accompanying those efforts) will have been wasteful. The Court recognizes this risk. It does not deter the Court from progressing toward the sale because the Court has been provided no indication as to the timing of an OFAC decision and it seems possible that OFAC is waiting to make a decision until after this Court makes further progress.

Second, the government expresses substantial concern that even "prefatory steps" toward a sale will be "potentially damaging" to the Guaidó regime and, thereby, undermine U.S. foreign policy and potentially raise national security issues. (Sept. Tr. at 47; *see also id.* at 31 (counsel for Republic echoing U.S. concerns: "When the United States tell[s] you that the step like establishing a sales process could have national security implications, that really needs to be taken seriously.")) As the Court has already noted, it does not, of course, take these serious

concerns lightly. As the Court has also already stated, however, the OFAC licensing process provides the better mechanism through which the Executive Branch can bring to bear the foreign policy and national security interests on which Crystallex's collection efforts might have an impact. (*See generally* Sept. Tr. at 47 (government counsel acknowledging that "the OFAC process is certainly the backstop for protecting U.S. interest[s]"); *id.* at 88; *see also* D.I. 212-2 at 2 ("[A]ny auction or sale of PDVH's shares at this time would undermine current U.S. foreign policy on Venezuela. Absent a change in the above considerations, these factors will weigh heavily in OFAC's license determination and could prove to be dispositive in adjudicating this license application.")) The government has not taken the position that the Court is "blocked from moving forward" (Sept. Tr. at 105) and, in the Court's view, the time has arrived for the sales process to proceed. *See also generally Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, No. 19-cv-10023, 2020 WL 6135761, at *19 (S.D.N.Y. Oct. 16, 2020) (rejecting government's request for delay despite government's position that "[a]ny . . . loss of PdVSA's U.S.-based assets . . . would be detrimental to U.S. policy and the interim government's priorities").

Having decided that the Court should proceed with the sale to whatever extent is possible in the absence of a specific OFAC license, the Court will now set out some of the contours of the sales procedures that it will follow. The parties will be required to meet and confer and then submit more specific proposals in the very near future.

- *Consistent with all parties' recognition of the Court's broad discretion, the Court will appoint a special master to oversee the day-to-day and detailed implementation of the sales procedures, which will comply with the "twin*

commands" of (i) selling the shares at a public sale to the highest bidder and (ii) meeting the notice requirements.  Delaware statutory provisions and Supreme Court decisions set out the Court's broad discretion.  *See* 8 Del. C. § 324; *Deibler v. Atlantic Properties Group, Inc.*, 652 A.2d 553, 558 (Del. 1995).  The parties agree that the Court can appoint a special master, who will have the time and expertise to fulfill the Court's and the U.S. Marshal's duties to prepare for and conduct the sale.  (*See, e.g.*, D.I. 180 at 1-2, 4-6 (ConocoPhillips); D.I. 196 at 10 (Venezuela Parties); D.I. 198 at 18 (Crystallex); *see also* Sept. Tr. at 80, 97-98, 108, 112)

- *With the assistance of the special master, the Court will set minimum requirements – for example, for advertising and other notices to reach potential bidders, for the materials that will be deposited in a data room to be accessed by potential bidders – which any interested entity may supplement or exceed.* (*See generally* Sept. Tr. at 75, 79-80, 95; *see also Deibler*, 652 A.2d at 557-58 ("[J]udgment debtors are free to supplement such notice as the sheriff may disseminate.  As the owner of the property, they not only have the economic interest rationally to expend the appropriate level of resources on notices, but also have the fullest (and cheapest) access to relevant information."))

- *Crystallex will be permitted to credit bid.*

- *Crystallex's priority status shall not be affected by the sales procedures that are ultimately implemented.*

- *To ensure that only serious bidders participate, and that only a bidder seriously interested in completing the transaction wins at the auction, bidders will be required to make a substantial good faith deposit, which will be refundable to all but the winning bidder. The winning bidder may be required to make an additional non-refundable deposit to provide adequate incentive to close the deal.*

- *The winning bidder will be given a reasonable amount of time to pursue any necessary and desirable regulatory approvals, with the potential for a Court-ordered extension upon a showing of good cause.*

- *The process will result in the sale of as many, but only as many, shares of PDVH as are necessary to satisfy the judgment of Crystallex (and of any other judgment creditor whose judgment may be added to the sale).* The parties (including, if they wish, ConcocoPhillips and the United States) shall work with the special master to consider implementing procedures to permit any other judgment creditor of Venezuela to request to participate in the Court's process.

- *The Venezuela Parties will have a fair and reasonable opportunity to be involved in the prefatory procedures, the sale, and any negotiations, but the Court will retain control over the sale.*[16] *The Venezuela Parties will have a seat at the table, but they will not be running the process.*

---

[16] The Court expects that the Venezuela Parties are likely right that an aspect of finalizing a sale will be the necessity for "rather complex negotiations of minority rights in any stock that is sold." (Sept. Tr. at 96)

A bit more needs to be said about this last point.  The Court rejects the Venezuela Parties' contention that only PDVSA should be permitted to conduct the sales process, purportedly because only PDVSA has the incentive and knowledge to conduct a fair process.  (*See* D.I. 188 at 3, 17)  While Crystallex's incentives, as creditor, may extend only so far as to ensure that the result of the sales process is sufficient to recover what it is owed, and not necessarily to maximize the value of the PDVH shares to be sold, the whole point of the public, noticed, full and fair competitive sales process required under Delaware law is to maximize the sales price obtained, regardless of the creditor's incentive.  The Court is confident that the procedures it follows will result in the appropriate incentives.  As for knowledge, the Court's procedures will include a data room, into which PDVSA may (and will be expected to and, if need be, ordered to) deposit information that will be material to potential bidders' understanding of the full and fair value of the shares being sold.  In other words, any unique knowledge held by PDVSA can – and will – be obtained and utilized irrespective of whether PDVSA is permitted to conduct the sale itself.

Importantly, it would be inequitable to permit PDVSA to conduct the sale at this point.  Venezuela, through PDVSA and otherwise, has had every opportunity to pay its legitimate, Court-recognized debt to Crystallex, including before, during, and after the arbitration, and throughout the extensive litigation in this Court, the Court of Appeals, and the Supreme Court.  Even today, the Republic could pay Crystallex what it owes and avoid the sales process altogether.  But, having made Crystallex undertake a decade's worth of extensive and expensive efforts to collect on its judgment, the Court is not going to permit a highly-recalcitrant judgment debtor to conduct its own sales process over the objection of its repeatedly-victorious judgment creditor.

Each day that Crystallex does not recover on its judgment is arguably something of an affront to the United States judicial system. Those days must soon come to an end.

## CONCLUSION

For the reasons discussed above, Venezuela's motion for relief under Federal Rule of Civil Procedure 60(b) will be denied, as will the motion to quash the writ of attachment filed by PDVSA, PDVH, and CITGO. Crystallex's motion to set the sales procedures will be granted in part and denied in part. The parties will be ordered to meet and confer and then provide further input on the specific manner in which the Court should proceed toward conducting the sale of PDVSA's shares of PDVH in an amount sufficient to satisfy the judgment that Venezuela owes Crystallex. An appropriate Order follows.