

Travis S. Hunter
302-651-7564
hunter@rlf.com

**VIA ELECTRONIC FILING**

The Honorable Leonard P. Stark
U.S. District Court for the
 District of Delaware
844 North King Street
Wilmington, Delaware 19801

      Re:  *Crystallex International Corp. v. Bolivarian Republic of Venezuela*,
           No. 17-151-LPS (the "Crystallex Asset Proceeding")

Dear Chief Judge Stark:

I write on behalf of the parties in the *Crystallex Asset Proceeding*, in response to the Court's January 14, 2021 Order requiring the parties to file a joint status report "which shall include their proposal(s) for how the Court should proceed with respect to determining the specific details of the sales procedures and identifying a special master to oversee the day-to-day and detailed implementation of the sales procedures." Order ¶ 5 (D.I. 235). The parties, ConocoPhillips, intervenor Blackrock Financial Management and intervenor Contrarian Capital Management have conferred and reached agreement on the process for selecting a special master, which process is summarized below. On all other matters, the parties' and intervenors' respective positions are set forth separately.

**Joint Position of the Parties and Intervenors**

With respect to the appointment of a special master, the parties and intervenors agree on the way forward. The parties jointly propose that on or before February 4, 2021, the parties exchange up to three proposed candidates. This timing will give potential candidates time to assess their availability and any potential conflicts of interest. If the parties identify the same candidate, then the parties would respectfully request that the Court name that candidate as the special master. If there is no overlap in the names proposed by the parties, and no agreement could be reached as to which candidate to propose to the Court, the parties would on or before February 16, 2021, file with the Court a joint submission, identifying the candidates from which they propose the Court select the special master and their reasons for and against each candidate. Those proposals would confirm the various candidates' availability to serve as special master, including confirmation that they are clear of conflicts, and their proposed rates. Taking into account the information provided, including the reasonableness of the proposed fees, the court would then pick from among those candidates, or identify its own candidate, to serve as the special master.

The Honorable Leonard P. Stark
January 21, 2021
Page 2

**Crystallex's Position:**

In light of the guidance provided by the Court in its January 14, 2021 Order, Crystallex believes that a full and fair sales process can be structured and implemented expeditiously. Setting to one side that Crystallex disagrees with the way the Venezuela parties' characterize the position it took during the meet and confer, it sets out its position as follows (which position was, of course, shared with all of the parties prior to this filing).

While it will take time to fully prepare a detailed proposal for the sale process, the fact that many, if not all, parties before the Court have already engaged financial advisors should allow the process to move forward without delay. Crystallex believes that process should begin with the prompt appointment of the special master, preferably an individual with expertise in Delaware procedures, execution sales, and/or judicial sales, and the turnover of the share certificates of PDVH to the appointed special master or the Marshals, which step is a necessary predicate to the successful sale of PDVH. As a first step toward this process, the Court should direct PDVH to promptly reissue the certificates that PDVSA cannot locate and place the same in the custody of the U.S. Marshals pending the sale.

Once the special master is in place the parties should present their detailed sales proposals to the special master for comment and this Court for approval. These proposals will identify the vendor to host and manage the data room, the specific information that the parties believe should be placed in that data room, and a prompt but reasonable deadline for submission of financials and other relevant information to the data room. The proposals should also detail the proposed supplemental advertising procedures, including the selection of relevant periodicals, the number of times the notice of sale should be published, the dates for such publication, and the information to be specifically included in the notice of sale, which Crystallex expects would include contact information for obtaining access to the data room. The notice would also provide the amount of time that the data room would be made accessible to bidders and the schedule for any management meetings or presentations that PDVSA and/or PDVH wishes to make to potential bidders.

The proposals should also address the process for identifying any potential bidders for direct outreach by the parties or the special master, as well as the details of any non-disclosure agreement that might be required of potential bidders before they are permitted access to the materials in the data room. The terms of the non-disclosure agreement would be standardized for all potential bidders, with the parties to negotiate the proposed agreement subject to the review and approval of the special master. Consistent with the Court's Order, the parties' proposals should also address the minimum bid requirement, as well as any conditions on the form of deposit or other security for any bids, such as the acceptable terms of a letter of credit. Finally the proposals should address bidding procedures for determining the number of PDVH shares to be sold, including whether such sale should be by auction or sealed bid or other process.

As described above, and subject to the Court's approval, the parties and non-party movants agree on the process to select the special master. To the extent necessary, and subject to reasonableness

The Honorable Leonard P. Stark
January 21, 2021
Page 3

of fees, Crystallex believes that the special master can be compensated by funds advanced by Crystallex in the first instance, with the understanding that any funds advanced shall be reimbursed from the sale of the PDVH shares before any sale proceeds are applied to reduce its judgment. In Crystallex's view, reasonable fees for the special master should not exceed $1 million.

Crystallex further proposes that, once the special master is determined, the parties would, within one week of the appointment or such other time as proposed by the appointed special master, submit to the special master their respective positions on the process for selling the shares (in accordance with the Court's Order). Within two weeks following that submission, the special master will meet with the parties to discuss their respective proposals and would submit his or her recommendation to the Court as to the process that should be followed within three weeks thereafter. Once the Court has resolved any disputes presented in that proposal, the implementation of the procedures could begin, with the parties and/or the special master providing updates to the Court on a regular basis on the status of the sales process.

**Position of the Republic, PDVSA, PDVH, and CITGO**

While the Republic, PDVSA, PDVH and CITGO maintain and reserve their objections to moving forward with any preparatory steps in furtherance of the sales process, including their objection to the appointment of special master in the absence of an OFAC license (*see* D.I. 188 and 196), the Republic, PDVSA, PDVH and CITGO are in agreement with the proposal for the process of identifying and selecting candidates to serve as a special master set forth above in the Joint Position of the Parties and Non-Party Movants. However, in violation of the Court's order directing the parties to meet and confer to discuss their proposals for the sale process, many of the proposals set forth in Crystallex's position above were never even raised by Crystallex in the parties' meet and confer. In fact, the parties expressly agreed to defer consideration of sale procedures until a later date and not make them part of the current filing. As a result, the Republic, PDVSA, PDVH, and CITGO request that the Court not consider those at this time. Moreover, all parties appeared to have agreed in the meet and confer that the special master will need its own financial and legal advisors to adequately structure and conduct the sales process. Crystallex's proposed timeline, which was not mentioned in the meet and confer, does not provide adequate time for the special master to retain experts and for them to adequately do their work. The Republic, PDVSA, PDVH, and CITGO suggest that the special master be permitted to set his or her own procedures for obtaining advice and consulting the parties on the appropriate next steps in developing a sale process.

Furthermore, Crystallex's proposal—also not discussed during the meet and confer—for a court order directing PDVH to reissue new share certificates and transfer them to the special master or the U.S. Marshal raises serious concerns about the propriety of such a transfer under both the OFAC sanctions regulations and Delaware law. *See* D.I. 196 at 13-15. Among other things, Delaware law provides for a bond to protect PDVH against third party claims, such as parties to which the Maduro regime may have transferred or pledged the outstanding PDVH share certificates. *See* 8 Del. C. § 167. In addition, OFAC regulations prohibit, among other things, "the

The Honorable Leonard P. Stark
January 21, 2021
Page 4

making, execution, or delivery of any . . . certificate" absent a specific license.  31 C.F.R. § 591.310.  The FAQs issued by OFAC further make clear that "[t]aking [p]ossession" or "[a]ssuming . . . [c]ustody" of blocked property, such as the PDVH shares, is prohibited in the absence of a specific license.  *See* Dep't of Treasury, OFAC, Frequently Asked Questions 808, Dec. 9, 2019, https://home.treasury.gov/policy-issues/financial-sanctions/faqs/topic/1581.

In addition, some of Crystallex's proposals above raise new concerns that have not been previously addressed by the parties.  For example, Crystallex's proposal to advance the special master's fees would seem to violate the OFAC sanctions regulations.  By "advancing" payments to the special master to be repaid out of blocked property, Crystallex would be obtaining an "interest" in that property, which is explicitly prohibited by OFAC regulations.  *See* 31 C.F.R. § 591.310.  In any event, we note that, should Crystallex advance the special master's fees, it will assume the risk with respect to those fees should this Court's order be overturned or should Crystallex fail to obtain a license from OFAC.  Moreover, while mentioned on the call by Crystallex, the Republic, PDVSA, PDVH and CITGO were not prepared to discuss who will be responsible for payment of the special master and its advisors because it was not a matter contemplated in the Court's order; payment of those fees is something that the Republic, PDVSA, PDVH, or CITGO may want to shoulder to assure an adequate process without imposing the artificial limit on cost suggested by Crystallex.

To the extent the Court is inclined to consider Crystallex's new proposals at this time, the Republic, PDVSA, PDVH and CITGO respectfully request an opportunity to investigate the OFAC issues regarding the payment of the special master's fees, and to submit a response to Crystallex's new proposals, by February 4, 2021.

**ConocoPhillips' Position**

Consistent with the joint position set forth at the outset of this letter, ConocoPhillips agrees it makes sense to get the special master appointed first, and then, with the participation of the special master, to address the specific details of the sales procedures.  ConocoPhillips agrees with the proposal for the parties and for ConocoPhillips to exchange 3 names each of proposed candidates for special master on February 4, 2021.  If the parties and ConocoPhillips cannot agree on a special master after meeting and conferring on the names exchanged, they should make a joint submission on February 16, 2021 identifying the candidates and reasons advocated for and/or against.  Once the special master is appointed, submissions should be accepted by the special master regarding the details for the process for selling the shares.  Thereafter, within a reasonable time following those submissions, the special master should meet with the parties and ConocoPhillips to discuss their respective proposals and should thereafter supply his or her recommendations to the Court.  ConocoPhillips reserves with respect to anything otherwise as may appear in this joint submission.

*     *     *

Counsel are available if the Court has any questions

The Honorable Leonard P. Stark
January 21, 2021
Page 5

                              Respectfully submitted,

                              */s/ Travis S. Hunter*

                              Travis S. Hunter (#5350)

cc: All Counsel of Record (via ECF)