# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:17-mc-00151-LPS |
| | ) | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## OPENING BRIEF IN SUPPORT OF THE BOLIVARIAN REPUBLIC OF VENEZUELA, PETRÓLEOS DE VENEZUELA, S.A., PDV HOLDING, INC., AND CITGO PETROLEUM CORPORATION'S <u>MOTION TO STAY PENDING APPEAL</u>

OF COUNSEL:
Donald B. Verrilli, Jr.
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Suite 500 E
Washington, District of Columbia 20001
(202) 220-1100

George M. Garvey
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100

OF COUNSEL:

Joseph D. Pizzurro
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com

A. Thompson Bayliss (#4379)
Stephen C. Childs (#6711)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807
(302) 778-1000
bayliss@abramsbayliss.com
childs@abramsbayliss.com

*Attorneys for Defendant*
*Bolivarian Republic of Venezuela*

Samuel Taylor Hirzel, II (#4415)
HEYMAN ENERIO GATTUSO & HIRZEL LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law

*Attorneys for Intervenor*
*Petróleos de Venezuela, S.A.*

OF COUNSEL:

Nathan P. Eimer
Lisa S. Meyer
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com

Kenneth J. Nachbar (#2067)
Alexandra M. Cumings (#6146)
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@mnat.com
ACumings@mnat.com

*Attorneys for PDV Holding, Inc., and
CITGO Petroleum Corporation*

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 1

SUMMARY OF ARGUMENTS ............................................................................................... 2

STATEMENT OF FACTS ........................................................................................................ 4

ARGUMENT .............................................................................................................................. 5

    I.    Appellants Are Entitled to a Stay Pending Appeal as a Matter of Right .................... 5

        A.  Appellants are entitled to a stay under FRCP 62(b) ............................................. 5

        B.  Appellants are also entitled to a stay under FRCP 62(f) ....................................... 8

    II.    Alternatively, Appellants Are Entitled to a Discretionary Stay ................................. 10

        A.  Appellants have a reasonable chance of succeeding on appeal ........................... 11

        B.  The remaining factors strongly favor a stay ........................................................ 18

CONCLUSION .......................................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACLU v. Mukasey*,
   534 F.3d 181 (3d Cir. 2008) ..................................................................................... 14

*Ameziane v. Obama*,
   620 F.3d 1 (D.C. Cir. 2010) ......................................................................... 18, 19, 20

*Bennett v. Franklin Res., Inc.*,
   360 F. Supp. 3d 972 (N.D. Cal. 2018) ......................................................................... 8

*Bennett v. Islamic Republic of Iran*,
   778 F. App'x 541 (9th Cir. 2019) ................................................................................ 8

*Bowers v. City of Philadelphia*,
   2008 WL 5234357 (E.D. Pa. Dec. 12, 2008) ............................................................ 11

*Burge v. Fid. Bond & Mortg. Co.*,
   648 A.2d 414 (Del. 1994) .......................................................................................... 18

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   333 F. Supp. 3d 380 (D. Del. 2018) ......................................................... 4, 12, 13, 15

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   932 F.3d 126 (3d Cir. 2019) ..................................................................... 1, 12, 13

*Deibler v. Atl. Props. Grp., Inc.*,
   652 A.2d 553 (Del. 1995) .......................................................................................... 18

*Deutsche Bank Nat'l Trust Co. v. Cornish*,
   759 F. App'x 503 (7th Cir. 2019) ........................................................................... 5, 7

*Fed. Ins. Co. v. Richard I. Rubin & Co.*,
   12 F.3d 1270 (3d Cir. 1993) ...................................................................................... 14

*FG Hemisphere Assocs., LLC v. Congo*,
   455 F.3d 575 (5th Cir. 2006) ..................................................................................... 13

*Guarnieri v. Borough*,
   2009 WL 331546 (M.D. Pa. Feb. 10, 2009) ............................................................... 9

*Henglein v. Colt Indus. Operating Corp.*,
   260 F.3d 201 (3d Cir. 2001) ......................................................................... 11, 12, 13

*In re Bakery & Confectionary Union & Indus. Int'l Pension Fund Pension Plan*,
  2013 WL 12444540 (S.D.N.Y. Jan. 29, 2013) .......................................................... 8

*In re Revel AC, Inc.*,
  802 F.3d 558 (3d Cir. 2015) ........................................................................ 10, 11, 18

*Jesner v. Arab Bank, PLC*,
  138 S. Ct. 1386 (2018) .............................................................................................. 17

*Mergenthaler v. Triumph Mortgage Corp.*,
  2018 WL 7021955 (Del. Super. Ct. Dec. 20, 2018) ................................................ 10

*Mohr v. MLB Sub I, LLC*,
  2020 WL 3803847 (D. Haw. July 7, 2020) ................................................................ 7

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................................................... 10, 11

*Pagliaro, Inc. v. Zimbo*,
  1987 WL 10275 (Del. Super. Ct. Apr. 16, 1987) ...................................................... 9

*Pendleton v. Nepa Comm. Fed. Credit Union*,
  303 F. App'x 89 (3d Cir. 2008) ............................................................................... 14

*Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*,
  2020 WL 6135761 (S.D.N.Y. Oct. 16, 2020) ........................................................... 7

*Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*,
  2020 WL 7711522 (S.D.N.Y. Dec. 29, 2020) ....................................................... 7, 8

*Reilly v. City of Harrisburg*,
  858 F.3d 173 (3d Cir. 2017) ..................................................................................... 11

*Short v. Landes*,
  39 A.2d 17 (Del. Super. Ct. 1944) ............................................................................. 9

*Sosa v. Alvarez-Machain*,
  542 U.S. 692 (2004) .................................................................................................. 17

*Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*,
  713 F.2d 128 (5th Cir. 1983) ............................................................................. 11, 12

*Union Nat. Bank of Wilmington v. Topkis Bros. Co.*,
  2 A.2d 148 (Del. Ch. 1938) ........................................................................................ 9

*United States v. Birdsong*,
  2019 WL 1026277 (D. Mont. Mar. 4, 2019) ......................................................... 5, 7

*VICI Racing, LLC v. T-Mobile USA, Inc.*,
   921 F. Supp. 2d 317 (D. Del. 2013) ...................................................................... 6

*Walker Int'l Holdings, Ltd. v. Congo*,
   415 F.3d 413 (5th Cir. 2005) .............................................................................. 14

*Womack v. De Witt*,
   10 A.2d 504 (Del. Super. Ct. 1939) ...................................................................... 9

*Wye Oak Tech., Inc. v. Iraq*,
   666 F.3d 205 (4th Cir. 2011) .............................................................................. 14

*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017) ...................................................................................... 17

**Statutes**

28 U.S.C. § 517 .............................................................................................. 5

50 U.S.C. § 1705(b) ........................................................................................ 18

8 Del. C. § 324(a) ........................................................................................... 18

Article IV, Section 24 of the Delaware Constitution ................................................. 9

**Rules**

Fed. R. Civ. P. 62 .................................................................................... passim

Del. Super. Ct. Civ. R. 62 ................................................................................ 9

**Regulations**

31 C.F.R. § 591.202 ...................................................................................... 20

31 C.F.R. § 591.309 ...................................................................................... 16

31 C.F.R. § 591.407 ................................................................................. 16, 18

31 C.F.R. § 591.310 ............................................................................ 16, 18, 20

**Other Authorities**

6 Am. Jur. 2d Attachment and Garnishment § 1 ..................................................... 6

Executive Order No. 13850 ......................................................................... passim

The Bolivarian Republic of Venezuela ("the Republic"), Petróleos de Venezuela, S.A. ("PDVSA"), PDV Holding, Inc. ("PDVH"), and CITGO Petroleum Corporation ("CITGO") (collectively, "Appellants"), respectfully submit this opening brief in support of their motion to stay any further steps toward execution on the PDVH shares pending appeal.

## NATURE AND STAGE OF THE PROCEEDINGS

This judgment enforcement proceeding is here on remand from the Third Circuit's decision holding that this Court has jurisdiction over PDVSA and that PDVSA's shares of PDVH are not immune from attachment under the Foreign Sovereign Immunities Act ("FSIA"). *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 152 (3d Cir. 2019). On January 14, 2021, this Court denied a motion to quash the writ of attachment under Rule 69 filed by PDVSA, PDVH, and CITGO, denied the Republic's motion for relief under Rule 60(b), and granted, in part, a motion by Plaintiff Crystallex International Corp. ("Crystallex") for an order approving the process of a sale of the shares of PDVH over the objection of Appellants and the United States (the "January 14 Order"). The January 14 Order initiates the process for Crystallex to execute on PDVSA's shares of PDVH. Pursuant to that Order, the parties are involved in selecting a special master to oversee that process. The Court and all parties recognize that no sale can close absent a license from the United States Department of Treasury's Office of Foreign Assets Control ("OFAC").

Appellants filed notices of appeal from the January 14 Order on February 12, 2021. D.I. 239, D.I. 240, D.I. 241. They intend to challenge this Court's denial of the Rule 69 motion and the portion of the order directing the sale process to proceed. Appellants now seek a stay of execution pending appeal.

## SUMMARY OF ARGUMENTS

**I.A.** Appellants are entitled to a stay as a matter of right under amended Federal Rule of Civil Procedure 62(b), which provides that, "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or *other security*." Fed. R. Civ. P. 62(b) (emphasis added). Under the amended rule, no bond is required where some other form of security is sufficient to maintain the status quo and to protect the appellee from the possibility of loss during appeal. The Court's writ of *fieri facias* attaching PDVSA's shares in PDVH constitutes just such a security because it prevents PDVSA from selling or transferring the shares during the appeal.

**I.B.** A stay is also warranted under Rule 62(f), which provides that "[i]f a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution the state court would give." A writ of *fieri facias* is considered a lien under Delaware law, and the writ would be "sufficient security" to justify a stay under the Delaware Constitution and Delaware Supreme Court Rule 32.

**II.** Alternatively, this Court should exercise its inherent discretion to grant a stay. The factors that a court considers in deciding whether to grant a discretionary stay pending appeal weigh heavily in favor of halting proceedings.

**II.A.** Appellants have a reasonable chance of success on the merits of their challenge to the Court's denial of the Rule 69 motion and the order initiating the sale process. Although this Court held that PDVSA, PDVH, and CITGO were collaterally estopped from seeking to quash the writ of attachment as invalid under governing Delaware law, collateral estoppel applies to rulings in other proceedings, not the same proceeding, and only where the identical issue was previously litigated and adjudicated. Neither this Court nor the Third Circuit decided the validity of the writ under Delaware law. Nor did PDVSA litigate that issue—its opposition to Crystallex's motion for a writ of attachment was limited to the jurisdictional barriers to attachment imposed by the FSIA.

2

And because PDVSA was not required to litigate the merits before the jurisdictional issues were resolved—and PDVH and CITGO were not proper parties until after the writ issued—Appellants' motion to quash was timely.

Appellants also have a reasonable chance of success on the merits of their challenge to the sale process order. The PDVH shares cannot be sold or transferred without a specific license from OFAC, and OFAC's regulations preclude *any* concrete steps in preparation for or in furtherance of an unauthorized sale, including preparing for and holding a contingent sale or auction. The sale process ordered by the Court therefore violates the OFAC regulations. In addition, the Court erred by declining to defer to an explicit request from the United States to refrain from initiating the sale process because "moving forward in the manner Crystallex suggests could imperil U.S. foreign policy and national security interests," D.I. 212 at 1, and instead conducting its own assessment of the foreign policy and national security consequences of proceeding.

**II.B.** Granting a stay would prevent irreparable harm to the Appellants and is in the public interest. As the United States has told this Court, "tak[ing] further steps toward a forced sale of PDVH" risks "harm[ing] U.S. foreign policy and national security interests in Venezuela" and causing "the Venezuelan people [to] seriously question the interim government's ability to protect [CITGO], thereby weakening it and U.S. policy in Venezuela today." *Id.* at 11–12. In the view of the United States, the "prefatory steps" authorized by this Court "would needlessly imperil U.S. interests" related to sensitive matters of foreign policy and national security. *Id.* at 13. The Executive Branch's assessment of the national public interest should be given significant weight here. Further, Crystallex is unlikely to suffer any offsetting irreparable harm given that its interests are solely monetary in nature and are adequately protected by the writ of attachment. And any delay will not prejudice Crystallex because it cannot execute upon the shares without an OFAC license anyway.

## STATEMENT OF FACTS

Crystallex seeks to satisfy its judgment against the Republic by executing on shares of corporate stock in PDVH owned by PDVSA, the Venezuelan state-owned oil company. *See* D.I. 2 at 1. On August 9, 2018, this Court denied PDVSA's motion to dismiss for lack of subject matter jurisdiction, holding that Venezuela's lack of sovereign immunity under the FSIA could be imputed to PDVSA. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 399 (D. Del. 2018) (the "2018 Order"). The Court also held that the specific property that Crystallex sought to attach—PDVSA's shares of PDVH—was not immune from attachment under the FSIA. *Id.* at 414. The Court granted Crystallex's motion for a writ of attachment, D.I. 78 at 1, and issued an order directing service of the writ, D.I. 95.

On August 10, 2018, PDVSA took an immediate appeal from this Court's denial of its cross-motion to dismiss for lack of subject matter jurisdiction under the FSIA. D.I. 80. On August 23, 2018, this Court issued a subsequent order "finally deciding that PDVSA's property . . . is not immune from attachment and execution under the [FSIA]." D.I. 95. The writ was served on PDVH, as garnishee of PDVSA, on August 24, 2018. On September 24, 2018, PDVSA filed a separate notice of appeal from the August 23 order. D.I. 117. The Third Circuit consolidated the two appeals, affirmed this Court's orders, and remanded for further proceedings.

Proceedings in this Court were stayed pending the conclusion of appellate proceedings. After lifting the stay, this Court ordered PDVH to answer the writ, which it did on June 5, 2020. On June 17, 2020, the Republic filed a motion for relief under Rule 60(b), D.I. 183; PDVSA, PDVH, and CITGO filed a motion under Rule 69 to quash the writ of attachment for failure to comply with Delaware law, D.I. 178; Crystallex filed a motion for an order approving the process of sale of shares of PDVH, D.I. 181; and the Republic, PDVSA, and PDVH filed a brief requesting that the determination of any sale procedures and the beginning of any sale process be deferred unless and

4

until Crystallex obtains a specific authorizing license from OFAC, D.I. 188. Non-parties Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V. (together, "ConocoPhillips") also filed a brief regarding the conduct of a sale. D.I. 180.

On July 16, 2020, the United States filed a statement of interest pursuant to 28 U.S.C. § 517. D.I. 212. In addition to supporting aspects of the Republic's Rule 60(b) motion, the United States requested that the Court not take any further steps toward a sale of the PDVH shares at this time, as such a sale "is dependent on a license from [OFAC], and moving forward in the manner Crystallex suggests could imperil U.S. foreign policy and national security interests." *Id.* at 1.

On January 14, 2021, this Court denied the Republic's Rule 60(b) motion and Appellants' Rule 69 motion. The Court granted, in part, Crystallex's motion to approve the sale process. The Republic, PDVSA, PDVH, and CITGO filed notices of appeal on February 12, 2021. D.I. 239, D.I. 240, D.I. 241.

## ARGUMENT

### I.     Appellants Are Entitled to a Stay Pending Appeal as a Matter of Right

#### A.     Appellants are entitled to a stay under FRCP 62(b)

As amended in 2018, Federal Rule of Civil Procedure 62(b) provides that, "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security." *See United States v. Birdsong*, 2019 WL 1026277, at *1 (D. Mont. Mar. 4, 2019) (rule entitles party to stay "as a matter of right"). "'The new rule's text makes explicit the opportunity to post security in a form other than a bond.'" *Deutsche Bank Nat'l Trust Co. v. Cornish*, 759 F. App'x 503, 509 (7th Cir. 2019) (per curiam) (quoting Fed. R. Civ. P. 62 advisory committee notes). The purpose of the bond or other security "under Rule 62[b] is to preserve the status quo during the pendency of an appeal and protect the winning party from the possibility of loss resulting from the delay in

execution." *VICI Racing, LLC v. T-Mobile USA, Inc.*, 921 F. Supp. 2d 317, 335 (D. Del. 2013), *affirmed in part, vacated in part on other grounds, and remanded*, 763 F.3d 273 (3d Cir. 2014).

Crystallex's writ of attachment serves that exact purpose here. As this Court is aware, Crystallex does not hold a judgment against PDVSA. Nor has it sought to add PDVSA as a judgment debtor. Instead, Crystallex has sought to execute on PDVSA's shares of PDVH to satisfy the judgment Crystallex holds against the Republic. Consequently, Crystallex has an interest only in the *res—i.e.*, in the shares of PDVH owned by PDVSA. Given this Court's decision that Crystallex is entitled to auction as many shares of PDVH as necessary to satisfy the Republic's outstanding judgment (plus any interest that has accrued), Crystallex needs protection against the risk that the shares will be sold or transferred before the appeal is concluded. That is precisely what the writ prevents. *See* 6 Am. Jur. 2d Attachment and Garnishment § 1 ("'Attachment' is a legal process . . . designed to secure a debt by preliminary levy upon the property of the debtor to conserve it for eventual execution, and it authorizes the seizure of the real and personal property of the defendant to be held as security for any judgment the plaintiff may recover in the action." (footnote omitted)). While the attachment is in place, PDVSA may not sell the shares to a third party—even if it could otherwise do so without an OFAC license, which it cannot. *See* 2 Wooley, *Practice in Civil Actions*, *supra*, § 1189 (after a writ of attachment *fieri facias* is served, "[t]he defendant's rights in the property in the garnishee's hands are so far extinguished as to prevent the defendant making any disposition of it which would interfere with its subjection to the payment of the plaintiff's demand when that shall have been legally perfected").

Crystallex is thus in the same position as a judgment creditor with a lien on real property. The lien protects the judgment creditor during an appeal because the property cannot be sold while the lien is in place. For this reason, courts applying the amended Rule 62(b) routinely treat the

underlying properties in mortgage or tax foreclosure actions as sufficient security on appeal. *See, e.g.*, *Deutsche Bank*, 759 F. App'x at 509 ("Under the new version of Rule 62, the newly expressed flexibility for the form of security to protect the appellee gives more explicit support for treating the property in a mortgage foreclosure appeal as sufficient security, at least as long as the property is occupied and cared for."); *Mohr v. MLB Sub I, LLC*, 2020 WL 3803847, at *5 (D. Haw. July 7, 2020) ("[A] stay pending appeal is generally appropriate in a foreclosure case where the party who prevailed in district court has an existing interest in the property."); *Birdsong*, 2019 WL 1026277, at *2 (because "the proceeds from the sale of the properties are the United States' only hope for collecting on the judgment[,] [t]reating the properties as security for the judgment . . . maintains the status quo"). The attached shares here should likewise be considered "an alternate form of security pursuant to Rule 62(b) . . . sufficient to minimize the potential harm to [Crystallex] during the pendency of the appeal." *Mohr v. MLB Sub I, LLC*, 2020 WL 3803847, at *Mohr*, 2020 WL 3803847, at *4 (D. Haw. July 7, 2020); *see also* 2 Wooley, *Practice in Civil Actions*, *supra*, § 1189 ("From the time of the garnishment, the effects in the garnishee's possession are considered as *in custodia legis*, and the garnishee is bound to keep them in safety and is not at liberty to change them, to convert them into money or to exercise any act of ownership over them.").

The recent decision in *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 2020 WL 7711522 (S.D.N.Y. Dec. 29, 2020), confirms that the attached shares provide sufficient security. There, PDVSA defaulted on certain debt obligations secured by PDVH's pledge of 50.1% of its shares in CITGO Holding Inc., and the creditor sought to sell or purchase the collateral. *See Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 2020 WL 6135761, at *1 (S.D.N.Y. Oct. 16, 2020). The court held that the creditor was entitled to sell the collateral, *id.* at *28, but it granted a stay of execution pending appeal without a bond. *MUFG Union Bank, N.A.*, 2020 WL 7711522,

at *3. The court held that the "Pledge Agreement suffices to satisfy the 'other security' requirement of Rule 62(b), as it assures that the Pledged Shares will be maintained in their current form for the duration of the appeal" and that "no additional security [was] necessary." *Id.* at *2.

Like the Pledge Agreement in *MUFG*, the writ of attachment here ensures that if the Third Circuit affirms this Court's January 14 Order, Crystallex will be in no worse position than it is today because the shares will still be available for sale (assuming that Crystallex is able to obtain an OFAC license). The attached shares thus provide adequate security to protect Crystallex from loss. *See id.*; *Bennett v. Franklin Res., Inc.*, 360 F. Supp. 3d 972, 983 (N.D. Cal. 2018), *aff'd sub nom. Bennett v. Islamic Republic of Iran*, 778 F. App'x 541 (9th Cir. 2019) (holding, in an FSIA execution action, that funds previously deposited in the court's registry and "sufficient to protect Plaintiffs from loss while the execution is stayed" satisfied Rule 62(b)); *In re Bakery & Confectionary Union & Indus. Int'l Pension Fund Pension Plan*, 2013 WL 12444540, at *2 (S.D.N.Y. Jan. 29, 2013) (bond was unnecessary where the movant's assets were held in trust).[1]

### B.     Appellants are also entitled to a stay under FRCP 62(f)

Federal Rule of Civil Procedure 62(f) provides that "[i]f a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution the state court would give." Rule 62(f) "embodies two prerequisites to its operation: (1) under the applicable law, the judgment must result in a lien

---

[1] For the avoidance of doubt, Appellants are not conceding that the writ of attachment was properly issued; Appellants have moved to quash and will ask the Third Circuit to reverse this Court's order denying that motion. But if the Third Circuit decides that the writ is invalid and reverses this Court's order, Crystallex will not have been injured by a stay because in that event it would not be entitled to execute upon the shares of PDVH anyways. *See MUFG Union Bank, N.A.,* 2020 WL 7711522, at *2 (holding that the pledge of shares in underlying bond agreements were adequate security for a stay pending an appeal seeking to invalidate the pledge); *Bennett*, 360 F. Supp. 3d at 983 (explaining that, although "there remains [a] possibility" that "some future operation of law will retroactively undo" the mechanism freezing the funds offered as a security, in that event "Plaintiffs would not be entitled to the funds" in the first place).

on the judgment debtor's property, and (2) state law must provide for a stay." *Guarnieri v. Borough*, 2009 WL 331546, at *1 (M.D. Pa. Feb. 10, 2009).

Under Delaware law, an attachment of stock is "a legal right in the nature of a lien." *Union Nat. Bank of Wilmington v. Topkis Bros. Co.*, 2 A.2d 148, 151 (Del. Ch. 1938). Accordingly, this Court should stay execution if a stay would be appropriate under Delaware law. Stays pending appeal in Delaware are governed by Article IV, Section 24 of the Delaware Constitution and Delaware Supreme Court Rule 32. *See* Del. Super. Ct. Civ. R. 62(d) ("Supersedeas, and stay pending appeal, and supersedeas, stay and cost bonds shall be governed by Article IV, Section 24 of the Constitution of the State of Delaware and by Supreme Court Rule 32."). The Delaware Constitution provides that a stay pending appeal may be granted only if the appellant gives "sufficient security" to ensure that it will "pay the condemnation money and all costs" if it loses the appeal. Del. Const. art. 4, § 24. Delaware Supreme Court Rule 32 specifies that "[a] stay or injunction pending appeal *shall be* granted upon filing and approval of sufficient security." Del. R. S. Ct. 32(c) (emphasis added). "The trial court shall have the discretion to set a type of security other than a supersedeas bond, with the party seeking such other type of security having the burden to demonstrate the sufficiency of such other type of security." *Id.* 32(c)(i).

A stay is warranted here because the writ of attachment *fieri facias* is "sufficient security" for a stay under Delaware law. Crystallex's only interest is in PDVSA's shares of PDVH, and those shares are now "considered as *in custodia legis*" and thus may not be transferred or sold to any third party. *Pagliaro, Inc. v. Zimbo*, 1987 WL 10275, at *3 (Del. Super. Ct. Apr. 16, 1987) (quoting 2 Wooley, *Practice in Civil Actions* § 1189 (1985 ed.)); *see also Womack v. De Witt*, 10 A.2d 504, 509 (Del. Super. Ct. 1939) (attached stock certificates are placed "in custodia legis"); *Short v. Landes*, 39 A.2d 17, 20–21 (Del. Super. Ct. 1944) (goods "seized by virtue of the

attachment" are "in the custody of the law"). Thus, the writ giving the court legal custody is sufficient security for Crystallex's judgment.

The recent decision in *Mergenthaler v. Triumph Mortgage Corp.*, 2018 WL 7021955 (Del. Super. Ct. Dec. 20, 2018), is instructive. There, the court issued a writ of attachment against the judgment debtor, and the parties agreed to place the disputed funds with the Prothonotary pending resolution of motions challenging the writ. After the court upheld the writ, defendant sought a stay of execution pending appeal. *Id.* at *3. The court granted the stay, explaining that the funds on deposit "represent complete security as they constitute the entirety of the monies to which either side will be entitled under the Challenged Writ." *Id.* The court thus did not require Defendant to "post any additional security." *Id.* Here, the shares of PDVH are likewise the entirety of the property to which either side will be entitled under the challenged writ. They thus represent "sufficient security" under Delaware law. Accordingly, a stay is warranted under Rule 62(f).

## II.     Alternatively, Appellants Are Entitled to a Discretionary Stay

Even if Appellants were not entitled to a stay as a matter of right, this Court also has the inherent discretion to stay its ruling pending appeal "as part of its traditional equipment for the administration of justice." *Nken v. Holder*, 556 U.S. 418, 421 (2009). Courts consider four factors in deciding whether to grant a discretionary stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 426.

In weighing these factors, the Third Circuit employs a "sliding-scale" approach, under which "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors." *In re Revel AC, Inc.*, 802 F.3d 558, 569 (3d Cir. 2015). "[W]here the balance of harms and public interest strongly favor[] a stay, a court may enter

it even if the applicant didn't demonstrate as strong a likelihood of ultimate success as would generally be required." *Id.* at 570. The burden of "showing that the circumstances justify an exercise of … discretion" lies on the party requesting the stay. *Nken*, 556 U.S. at 433–34.

A.     *Appellants have a reasonable chance of succeeding on appeal*

The first factor does not require the movant to show that it is "more likely than not" to win. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 & n.3 (3d Cir. 2017). Instead, "a sufficient degree of success for a strong showing exists if there is a reasonable chance, or probability, of winning." *In re Revel AC*, 802 F.3d at 568 (internal quotation marks omitted).

1.     PDVSA, PDVH, and CITGO have a reasonable chance of succeeding on their appeal of the Court's denial of the motion to quash.

The Rule 69 motion filed by PDVSA, PDVH, and CITGO asked the Court to quash the writ on two separate grounds: (1) Crystallex cannot show fraud as required under Delaware law; and (2) the writ is inoperable because PDVH does not possess the physical certificates representing the shares owned by PDVSA. The Court rejected both arguments. D.I. 234 at 16. On appeal, PDVSA, PDVH, and CITGO intend to challenge the Court's ruling on the first issue.

In the January 14 Order, this Court held that PDVSA, PDVH, and CITGO were collaterally estopped from challenging the validity of the writ under Delaware law. D.I. 234 at 16–21. However, collateral estoppel cannot bar the motion to quash because that legal doctrine applies only to rulings issued "in [a] prior action," not to earlier rulings issued in the *same* action. *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001); *see also Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 131 (5th Cir. 1983) ("issue preclusion is applicable only in subsequent actions, not within the same action"); *Bowers v. City of Philadelphia*, 2008 WL 5234357, at *2 (E.D. Pa. Dec. 12, 2008) ("Issue preclusion, or collateral estoppel, requires separate actions.").

11

In all events, PDVSA, PDVH, and CITGO are not collaterally estopped from seeking to quash the writ as invalid under Delaware law because the validity of the writ under Delaware law was neither previously litigated by the parties nor "previously adjudicated" by this Court or the Third Circuit. *See Henglein*, 260 F.3d at 209. The only two issues litigated by PDVSA in 2018 and decided by this Court were (1) whether PDVSA was entitled to sovereign immunity and thus immune from the Court's subject matter jurisdiction; and (2) whether the shares of PDVH were immune from attachment and execution. *See Crystallex*, 333 F. Supp. 3d at 426. With respect to the first issue, the Court held that "Crystallex has proven the applicability of an exception to PDVSA's sovereign immunity." *Id.* at 414. On the second issue, the Court held that Crystallex had also proven an exception to attachment and execution immunity under the FSIA and that the OFAC sanctions regime did not alter that conclusion. *See id.* at 414–21.

The Third Circuit's decision is equally silent on issues of Delaware law. In affirming the 2018 Order, the Third Circuit held only that the "District Court acted within its jurisdiction when it issued a writ of attachment on PDVSA's shares of PDVH to satisfy Crystallex's judgment against Venezuela, and the PDVH shares are not immune from attachment." *Crystallex*, 932 F.3d at 152. The court did not address whether Crystallex had satisfied its burden under Delaware law of showing that the judgment debtor used its alter-ego to defraud the judgment creditor. On the contrary, the court specifically stated that Crystallex did "not attempt, nor need, to satisfy an element of fraud" because it was not relying on a fraud theory for its alter ego argument under the FSIA. *Id.* at 145 (noting that Crystallex was "seek[ing] to survive a factual challenge [to jurisdiction] under Rule 12(b)(1)"). Although the court noted that it had jurisdiction to review "the grant of Crystallex's motion for a writ of attachment under [Rule] 69," *id.* at 136, the only issue this Court adjudicated with respect to that motion, and the only issue presented by PDVSA in this

Court or on appeal, was whether the PDVH shares were immune from attachment under the FSIA. *See Crystallex*, 333 F. Supp. 3d at 214–21. "A finding that an exception to executional immunity applies" is "not the same as concluding that execution is appropriate or that writs of garnishment should issue." *FG Hemisphere Assocs., LLC v. Congo*, 455 F.3d 575, 595 (5th Cir. 2006).

The Third Circuit's conclusion that this Court "had *the power* to issue a writ of attachment on [PDVSA's] non-immune assets to satisfy the judgment against the country," *Crystallex Int'l Corp.*, 932 F.3d at 139 (emphasis added), is a statement about this Court's jurisdiction, not about the propriety of the writ under Delaware law. The same is true of the Third Circuit's conclusion that this Court "acted *within its jurisdiction* when it issued a writ of attachment on PDVSA's shares of PDVH to satisfy Crystallex's judgment against Venezuela." *Id.* at 152 (emphasis added).

Collateral estoppel is also unwarranted because PDVSA did not "actually litigate[]" the validity of the writ of attachment under Delaware law. *Henglein*, 260 F.3d at 209; *see* D.I. 234 at 18. On the contrary, PDVSA's arguments were laser-focused on *jurisdictional* barriers to the writ under the FSIA. To be sure, PDVSA cited several Delaware cases in support of its argument that other courts "have relied on principles of Delaware corporate law in applying the *Bancec* presumption." D.I. 26 at 16–17. But PDVSA did not invoke those cases to argue that the writ would be invalid under Delaware law. Indeed, if PDVSA *had* argued that the writ should be denied because Crystallex could not satisfy Delaware law, this Court's failure to address that issue *at all* in its 2018 Order would itself be grounds for reconsideration. But the 2018 Order's silence on the state-law issue is understandable given that PDVSA did not in fact raise any state-law arguments

in opposing Crystallex's motion for the writ of attachment. Accordingly, the PDVSA, PDVH, and CITGO are not collaterally estopped from challenging the validity of the writ under state law.[2]

The Court also denied the motion to quash on the ground that it was untimely because PDVSA *could have* raised its state-law arguments when opposing Crystallex's motion for a writ of attachment but declined to do so. *See* D.I. 234 at 26–31. This theory, adopted by the Court *sua sponte*, is difficult to square with the collateral estoppel ruling, which is based on the premise that PDVSA *did* raise these issues in its opposition. Perhaps that is why Crystallex did not advance the timeliness argument. In any event, PDVSA was not obligated to raise state-law issues before obtaining a definitive ruling on its jurisdictional challenge under the FSIA. Indeed, requiring parties to raise their state-law defenses simultaneous with a claim of FSIA immunity would defeat the entire point of the statute because "sovereign immunity is an immunity *from trial and the attendant burdens of litigation.*" *Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1281 (3d Cir. 1993) (emphasis added); *see also Walker Int'l Holdings, Ltd. v. Congo*, 415 F.3d 413, 416 (5th Cir. 2005) (FSIA "simply provides a defense to claims raised against a sovereign and a federal forum for the resolution of such claims").

Because PDVSA neither raised, nor was required to raise, the validity of the attachment under state law when it asserted its FSIA defenses, the only question before the Court in 2018 was whether Crystallex was "entitled to the opportunity" to establish the validity of the writ under state law. *Wye Oak Tech., Inc. v. Iraq*, 666 F.3d 205, 212 n.9 (4th Cir. 2011). PDVSA was thus within its rights to move to quash the writ on state law grounds after the Third Circuit affirmed this Court's

---

[2] The result would be the same under the law-of-the-case doctrine, which Crystallex did not assert, because neither court "actually decided" the validity of the writ under Delaware law, "either expressly or by implication." *Pendleton v. Nepa Comm. Fed. Credit Union*, 303 F. App'x 89, 90 (3d Cir. 2008); *cf. ACLU v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008) (describing the law-of-the-case doctrine).

jurisdictional ruling. And PDVH and CITGO had no other opportunity to raise the argument, as a motion to quash under Delaware law is properly brought *after* the writ issues, and this case was stayed from the time of service until the time that PDVH and CITGO filed the motion.

Indeed, the 2018 Order specifically contemplated such future proceedings when it recognized that "[s]ome aspects of the parties' dispute . . . remain unsettled," including whether "Venezuela, PDVSA, and/or any other entity [would] appear" and seek to quash the writ. *Crystallex*, 333 F. Supp. 3d at 425. The Court cited Crystallex's own concession that "PDVSA may, of course, seek to challenge the writ on non-jurisdictional grounds by a motion to quash brought after the writ has issued and before the Court allows the execution process to commence." *Id.* (quoting D.I. 70 at 2 n.4). Given these concessions, Appellants have at least a reasonable chance of showing that the motion to quash was timely.

> 2.   Appellants have a reasonable chance of prevailing on their challenge to the sale process order.

Appellants also have a reasonable likelihood of success on their challenge to this Court's decision to initiate the sale process because the order violates the OFAC regulations, which preclude *any* concrete steps in preparation for or in furtherance of a sale of the shares, and because the Court should have deferred to the United States' statement that moving forward now would jeopardize national security and foreign policy interests.

On January 28, 2019—after the issuance of the writ of attachment but well prior to this Court's decision to move forward with the sales process—the Treasury Secretary designated PDVSA as a Specially Designated National ("SDN") under Executive Order No. 13850, 83 Fed. Reg. 55,243 (Nov. 1, 2018) ("E.O. 13850"); *see* https://home.treasury.gov/policy-issues/financial-sanctions/recent-actions/20190128. As a result, all of PDVSA's property in the United States, including the PDVH shares, are blocked property under E.O. 13850 and cannot "be transferred,

paid, exported, withdrawn or otherwise dealt in" without a specific license from OFAC. E.O. 13850, § 1(a); *see also id.* § 4(a) (prohibiting "any contribution or provision of funds, goods or services by, to, or for the benefit of" PDVSA without a license); *id.* § 5(a) (prohibiting any transaction "that evades or avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate" the prohibitions in that blocking order). The OFAC regulations implementing E.O. 13850 define "property and property interest" to include "any future[] or *contingent*" interest in property, 31 C.F.R. § 591.309 (emphasis added), and they define the term "transfer" to mean "any actual or purported act or transaction … the purpose, intent, or effect of which is to create … any right … or interest with respect to any property," *id.* § 591.310. OFAC regulations also expressly prohibit "the enforcement of any lien, judgment … or other order through . . . judicial process purporting to transfer or otherwise alter or affect property or interests in [blocked] property" without a specific license from OFAC. 31 C.F.R. § 591.407.

OFAC's broadly written definitions and prohibitions clearly proscribe the sales process authorized by this Court. Crystallex cannot enforce its judgment through judicial process that has the purpose, intent, or effect of creating a contingent interest in blocked property. The contingent auction that the Court's order contemplates would create a contingent interest in the PDVH shares and thus is subject to the sanctions regime. *See* Black's Law Dictionary ("contingent interest" is an "interest that the holder may enjoy only upon the occurrence of a condition precedent"). The Court's decision to move forward is also a "judicial . . . order" having the "effect of … surrender[ing], releas[ing], … or alter[ing], directly or indirectly, [PDVSA's] right, remedy, power, privilege, or interest" in the PDVH shares because the Court's order strips PDVSA of its right to control the sale of the PDVH shares from PDVSA. 31 C.F.R. §§ 591.310, 591.407.

Indeed, OFAC's interpretive guidance on the sanctions regulations addresses this very

situation: That guidance states that the holder of a writ of attachment covering blocked property, such as Crystallex, may not "*prepare for* and hold an auction or other sale of the shares, *contingent upon* the winning bidder obtaining a license from OFAC." FAQ 809 (emphasis added).[3] Instead, the attachment holder "must obtain a specific license from OFAC prior to conducting an auction or other sale, *including a contingent auction or other sale*, or *taking other concrete steps in furtherance of an auction or sale*." *Id.* (emphasis added). Any "concrete steps" taken to further a contingent sale of the PDVH shares thus violate the OFAC regulations.

**b.** Appellants also have a reasonable argument for reversal on the ground that the Court abused its discretion by refusing to defer to the United States' request to postpone the sale proceedings. In a detailed Statement of Interest accompanied by letters from the U.S. Department of State's Special Representative to Venezuela and the U.S. Department of Treasury's Director of OFAC, the United States asserted that authorizing Crystallex to proceed toward a sale at this time would damage U.S. foreign policy and national security interests. D.I. 212 at 8–9. Instead of deferring to that position, this Court asserted that the "OFAC licensing process provides the better mechanism through which the Executive Branch can bring to bear the foreign policy and national security interests on which Crystallex's collection efforts might have an impact." D.I. 234 at 34.

The Supreme Court has stated that "courts should give serious weight to the Executive Branch's view of [a] case's impact on foreign policy" and national security, particularly as expressed in a formal statement of interest. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 733 n.21 (2004); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1861 (2017) (courts owe "deference to what the Executive Branch has determined . . . is essential to national security"); *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1403 (2018) ("The political branches, not the Judiciary, have the responsibility

---

[3] Available at https://home.treasury.gov/policy-issues/financial-sanctions/faqs/topic/1581.

and institutional capacity to weigh foreign-policy concerns."). Because "the failure to give deference" to the government's assessment of harm "when it is due is error," *Ameziane v. Obama*, 620 F.3d 1, 7 (D.C. Cir. 2010), Appellants have a strong argument on appeal that the sale process order was an abuse of discretion.

Finally, the sale process order violates Delaware law, which requires a sale process to maximize the value of the asset sold. *See* 8 Del. C. § 324(a); *Deibler v. Atl. Props. Grp., Inc.* 652 A.2d 553, 557 (Del. 1995). Proceeding with the sale before an OFAC license issues will depress bidding, and the Court has stated that it may require the winning bidder to make a non-refundable deposit, D.I. 234 at 36, meaning the winner could *lose* money if OFAC does not issue a license. That risk, and the fact that bidders themselves will need to obtain OFAC licenses to avoid violating the sanctions will dampen interest in the auction. *See* E.O. 13850, §§ 1(a), 4-5; 31 C.F.R. §§ 591.310, 591.407; *see also* 50 U.S.C. § 1705(b)(2) (maximum civil penalty for violating OFAC regulations is "twice the amount of the transaction that is the basis of the violation"). In short, the immediate sale process ordered by the Court will likely result in a sale price that is "grossly inadequate." *Burge v. Fid. Bond & Mortg. Co.*, 648 A.2d 414, 419 (Del. 1994).

### B.   The remaining factors strongly favor a stay

The factors of irreparable harm, the public interest, and the balance of the equities weigh heavily in favor of a stay. To establish irreparable harm, a stay movant "must demonstrate an injury that is neither remote nor speculative, but actual and imminent." *In re Revel AC*, 802 F.3d at 571. The Third Circuit has described irreparable harm as "harm that cannot be prevented or fully rectified by a successful appeal." *Id.* at 568. In considering whether the public interest favors a stay, the Court evaluates the "consequences beyond the immediate parties." *Id.* at 569.

Here, failing to grant a stay is likely to cause actual and imminent harm to the Republic that cannot be prevented or fully rectified by a successful appeal. As the United States has

explained, "authoriz[ing] Crystallex to take further steps toward a forced sale" of the shares, such as "advertising [them] for public auction at this time," would undermine the Guaidó administration, interfere with "current U.S. policy efforts," and help to bolster the Maduro regime, which is destabilizing Latin America and providing a military and intelligence foothold in South America for adversaries of the United States. D.I. 212 at 6-8. Both the United States and the Republic have presented evidence showing that moving forward would provide a "political victory for the Maduro regime" in Caracas, "which has already claimed that the United States and Guaidó are conspiring to 'steal' CITGO," and cause the Venezuelan people to "seriously question the interim government's ability to protect the nation's assets." *Id.* at 15-16 (quoting Abrams Ltr., D.I. 212-1, at 3); *see also* D.I. 187 at 8 ¶ 20 (Expert Decl. of Brewer-Carías) ("The Maduro regime has demonstrated that it is monitoring this litigation closely, and it is attempting to misuse and distort developments in this litigation to undermine the authority of the Interim Government. For example, . . . following the entry of this Court's Memorandum Order of May 22, 2020, Carlos Ron—the Maduro regime's Vice-Minister for North America—inaccurately asserted on national television that, after the United States 'gave control of Citgo to the phantom government that they recognize headed by Guaidó,' the Court decided to 'give the go-ahead to begin the process of selling Citgo.'"). And the United States has asserted that the effect of such a political victory on the interim government "would be greatly damaging and perhaps beyond recuperation." D.I. 212 at 4.

Moreover, the consequences beyond the immediate parties are severe. In the view of the United States, taking steps to prepare for a sale "could imperil U.S. foreign policy and national security interests." D.I. 212 at 1; *see also id.* at 11 ("Proceeding in the manner Crystallex proposes would imperil the United States' important foreign policy interest in supporting the Guaidó government."); *id.* at 12 ("The United States respectfully submits that this Court should not authorize . . . further steps toward a forced sale of PDVH in light of the risk that such steps would harm U.S.

foreign policy and national security interests."). And that is true even though the sale cannot close without an OFAC license. *See id.* at 8–9 (asserting that "[t]he *prefatory steps* that Crystallex proposes implicate significant U.S. foreign policy and national security interests") (emphasis added). Thus, a stay would be in the national public interest.

Appellants acknowledge that there is always an interest in seeing judgments enforced, D.I. 234 at 37, but that interest is already accommodated by the other factors for issuing stays pending appeal and is outweighed here by the United States' overriding foreign policy and national security concerns. The balance of equities clearly favors Appellants, especially given the fact that "taking action which advances toward a public auction and contingent sale would serve no purpose if OFAC ultimately denies Crystallex's license application." D.I. 212 at 9.

Finally, Crystallex is not in danger of suffering any irreparable harm from a stay. The attachment fully secures Crystallex against any potential loss, *see supra* I.A, and Crystallex is free to seek post-judgment interest accruing during the pendency of the appeal. Moreover, Crystallex will not be harmed by a stay pending appeal because the OFAC regulations currently prevent any execution sale from going forward without a specific license anyway. *See* E.O. 13850; 31 C.F.R. § 591.202(a), (e). Thus, Crystallex will be in the same position with a stay as without one.[4]

## CONCLUSION

For the foregoing reasons, the Republic, PDVSA, PDVH, and CITGO respectfully request that the Court stay further proceedings pending appeal.

---

[4] The January 14 Order directs the parties to follow the sales procedures set forth in it order only to the "extent that can be accomplished without a specific license from OFAC," D.I. 234 at 22–23, and OFAC regulations explicitly prohibit "the appointment of any agent, trustee, or fiduciary" without an OFAC license, 31 C.F.R. § 591.310.

February 12, 2021

Respectfully submitted,

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Nathan P. Eimer
Lisa S. Meyer
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com

*/s/ Kenneth J. Nachbar*
Kenneth J. Nachbar (#2067)
Alexandra M. Cumings (#6146)
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@mnat.com
ACumings@mnat.com

*Attorneys for PDV Holding, Inc., and
CITGO Petroleum Corporation*

OF COUNSEL:

Joseph D. Pizzurro
Julia B. Mosse
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
jmosse@curtis.com
kmeehan@curtis.com
jperla@curtis.com

HEYMAN ENERIO GATTUSO & HIRZEL LLP

*/s/ Samuel Taylor Hirzel, II*
Samuel Taylor Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law

*Attorney for Petróleos de Venezuela, S.A.*

OF COUNSEL:

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
Brendan B. Gants
Jacobus P. van der Ven
Munger, Tolles & Olson LLP
601 Massachusetts Avenue NW
Suite 500 E
Washington, D.C. 20001
(202) 220-1100
Donald.Verrilli@mto.com

ABRAMS & BAYLISS LLP

*/s/ A. Thompson Bayliss*
A. Thompson Bayliss (#4379)
Stephen C. Childs (#6711)
20 Montchanin Road, Suite 200
Wilmington, DE 19807
(302) 778-1000
bayliss@abramsbayliss.com
childs@abramsbayliss.com

*Attorneys for Bolivarian Republic of Venezuela*

George M. Garvey
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2021, the foregoing was electronically filed with the Clerk of the Court, via the ECF system. Service of that filing was made by operation of the United States District Court for the District of Delaware's electronic filing system to ECF-registered counsel.

*/s/ Kenneth J. Nachbar*
Kenneth J. Nachbar (#2067)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@mnat.com
