

Travis S. Hunter
302-651-7564
hunter@rlf.com

**VIA ELECTRONIC FILING**

The Honorable Leonard P. Stark
U.S. District Court for the
 District of Delaware
844 North King Street
Wilmington, Delaware 19801

      Re:  *Crystallex International Corp. v. Bolivarian Republic of Venezuela*,
            No. 17-151-LPS (the "Crystallex Asset Proceeding")

Dear Chief Judge Stark:

I write on behalf of the parties in the *Crystallex Asset Proceeding*, in response to the Court's January 29, 2021 Order adopting the parties' proposal to exchange names of potential special master candidates and, if no agreement could be reached as to a single candidate, file with this Court a joint submission setting forth the list of candidates from which the parties and ConocoPhillips propose the Court select the special master.

As directed by the Court, the parties and ConocoPhillips exchanged their respective lists of potential candidates on February 4, 2021. Following multiple meet and confer sessions as well as separate conversations with several of the proposed special masters, the parties and ConocoPhillips were unable to reach agreement on a single candidate. They have, however, agreed to limit the number of candidates put forward to this Court to one nominee from Crystallex, Judge Sue L. Robinson (ret.), and two nominees jointly from the Republic of Venezuela, PDVSA, PDVH, CITGO, and ConocoPhillips, Robert Pincus and David Schulte. All three candidates report that they are free from conflicts.

**Crystallex's Position:**

As Crystallex understands the Court's January 14, 2021 Order, the proposed special master is to oversee the judicial sale of shares of PDVH. As that Order recognized, the Court and its selected special master may implement additional measures to increase notice and available information to help facilitate a sale of the shares of PDVH, but the sale still must comport with the provisions of the Delaware code applicable to execution sales, including 8 *Del. C.* § 324. Based on her decades on the bench, Judge Robinson is well acquainted with Delaware state law and how to apply it to complex situations. Judge Robinson has indicated that she will seek guidance from the parties and their respective counsel and financial advisors to reach a recommendation on how to implement a sale of shares of PDVH to satisfy the approximately $1 billion remaining on Crystallex's judgment in accordance with Delaware law and the Court's prior guidance on possible sale procedures. While some agreements may be possible as to certain issues concerning the structure and design of the process, in light of Venezuela's demonstrated disinterest to date in satisfying Crystallex's

judgment and long-standing patterns of delay, it seems inevitable that disputes as to how best to proceed will continue to arise until the sale is finally completed, the transaction has closed and all appeals are exhausted. As a seasoned former judge, Judge Robinson is well prepared to evaluate the parties' competing positions to reach decisions that identify the appropriate number of shares that need to be sold to satisfy Crystallex's judgment in accordance with Delaware's statutory requirements. And, as would seem obvious, Judge Robinson will present her decisions to this Court for approval as necessary and appropriate, knowing full well that any decision or recommendation made to this Court will likely be presented to the Third Circuit for review.

Due to the undeniably contentious nature of this matter, Crystallex believes that the appropriate special master should be a proven decision-maker. By working with the parties and leveraging the expertise of their existing advisors, rather than seeking to appoint a whole new set of advisors, including bankers and lawyers, to design a sale process on her own from scratch, Judge Robinson will be able to move the sale process ahead efficiently. Working with the parties and their existing advisors, rather than retaining a raft of additional professionals, will also serve to keep special master fees reasonable. Judge Robinson's proposed hourly rate of $1,025 is certainly appropriate given her tenure on the bench and experience as a neutral. As previously noted, Crystallex remains prepared to advance up to $1 million of fees and expenses of Judge Robinson. Judge Robinson has also confirmed that she has time for this mandate and is prepared to refuse other opportunities if appointed Special Master in this case to ensure that it deserves the requisite attention.

Crystallex availed itself of the opportunity it was given to interview Messrs. Pincus and Schulte at some length by Zoom videoconference. Although it cannot be disputed that Messrs. Pincus and Schulte are both knowledgeable and experienced in mergers and acquisitions and sales of distressed assets in other contexts, they both seem to envision a process more akin to a traditional M&A sale between a willing buyer and a willing seller, with the appointment of bankers and other expensive advisors to assist the special master in devising a sales process, including identifying potential purchasers and negotiating terms, and which could require heavy involvement of company management. Crystallex does not believe that such a consensual process will prove effective—or is likely even possible—in an environment where every step towards the sale of shares of PDVH has been opposed and every decision of this Court is appealed. Instead, as this Court recognized in its latest order, Venezuela is a "highly-recalcitrant judgment debtor" who has bypassed "every opportunity to pay its legitimate, Court-recognized debt to Crystallex" (DI 234 at 37) and has made an involuntary execution sale necessary. The selection of a Special Master to facilitate *that* sale should not be occasion for a consensual sales process that the Court has already rejected. *Id.*

Moreover, the expansive role of the special master and their advisors under either of these approaches would come with significant expense, far beyond the hourly rate of Judge Robinson. Indeed, both Mr. Pincus and Mr. Schulte expected that the total cost would be several million dollars—amounts that increase the odds of disputes over the reasonableness of the special master's fees. Other than vague assertions that Venezuela or its subsidiaries may contribute some funds to the process, it is unclear how Venezuela or ConocoPhillips propose to pay for the increased

expenses of their proposals as compared to the more traditional special master role envisioned by Crystallex and Judge Robinson.  It certainly would be improper to burden Crystallex with costs associated with running a process beyond that reasonably required for a judicial sale for its benefit as a judgement creditor and secured lien holder.

Because Crystallex believes that, as a special master, Judge Robinson would oversee the sale process most aligned with the Court's January 14, 2021 Order and do so while charging the most reasonable fees, it respectfully requests this Court appoint Judge Robinson as special master.  A copy of Judge Robinson's resume is attached as Exhibit A.  Crystallex has no objection to the Court interviewing any of the special master candidates (with or without Counsel, as the Court may deem advisable) if the Court deems such interviews appropriate.

**Joint Position of the Republic, PDVSA, PDVH, CITGO, and ConocoPhillips**

On January 14, 2021, this Court ordered that certain prefatory procedures for the eventual sale of the shares of PDVH may begin and ordered the retention of a special master to "oversee the day-to-day and detailed implementation of the sales procedures." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. CV 17-MC-151-LPS, 2021 WL 129803, at *17 (D. Del. Jan. 14, 2021).  The Court expressed its intent to "appoint a special master, who will have the time *and expertise* to fulfill the Court's and the U.S. Marshal's duties to prepare for and conduct the sale." *Id.* (emphasis added).  The Court made clear that the goal is to "maximize the sales price obtained," *id.* at *18, and a sale that maximizes the value of the PDVH shares will require all the hallmarks of a large, commercial transaction or M&A deal.

Crystallex's implicit view that all that will be required of the special master is to supervise an immediate auction of shares until enough is raised to pay its claim is inconsistent with the Court's ruling.  As the Court stated, although "Crystallex's incentives, as creditor, may extend only so far as to ensure that the result of the sales process is sufficient to recover what it is owed, and not necessarily to maximize the value of the PDVH shares to be sold, *the whole point of the public, noticed, full and fair competitive sales process required under Delaware law is to maximize the sales price obtained, regardless of the creditor's incentive.*" *Id.* at *18 (emphasis added).  And, to that end, the Court contemplated that "the parties will have an opportunity to provide additional input with respect to the details of the sales procedure." *Id*. at *2.  Presumably, the special master's first charge will be to work on developing a full and fair competitive sales process, with input from each of the parties and non-parties who have appeared in this action, as well as and from the special master's own advisors.

Accordingly, any special master chosen to develop and ultimately conduct a future contingent auction of a likely minority-stake of the privately held PDVH shares should bring a wealth of experience in large-scale corporate transactions.  The special master selected should be able to supplement the Court's judicial oversight with specific expertise about how to efficiently and fairly develop a structure to sell the shares, using "detailed implementation of [] sales procedures," *id.* at *17, that will maximize the value of the shares and sell only "[s]o many of the shares . . . as shall

The Honorable Leonard P. Stark
February 16, 2021
Page 4

be sufficient to satisfy the debt," 8 Del. C. § 324(a).  As the Court knows, this is not a normal sale of collateral, such as materials or inventory, but instead is the sale of shares of the holding company of a large, complex operating company, so any special master selected should have significant experience in sales of similar types of companies.  Deep expertise in large corporate transactions is especially important in the environment posed by this contingent sale, where the uncertainty caused by the absence of an OFAC license (and the uncertainty, based on OFAC FAQs, about what, if any, prefatory steps are even permissible without such a license) will likely affect bidders' incentives and behavior.

The Republic, PDVSA, PDVH, and CITGO initially proposed Robert Pincus and two other candidates.  ConocoPhillips initially proposed David Schulte and one other candidate.  After meeting and conferring and interviewing each other's lead candidates (as well as Crystallex's proposed candidate), the Republic, PDVSA, PDVH, CITGO, and ConocoPhillips have agreed that both Mr. Pincus and Mr. Schulte possess the experience needed in this situation and thus are uniquely suited to the present task.  We respectfully urge the Court to speak with each of them over a Zoom videoconference.

### David Schulte

David Schulte is uniquely qualified for the role of special master in this case.  Mr. Schulte has impressive academic credentials – he graduated *summa cum laude* from Williams College, followed by a year at Exeter College, Oxford where he pursued a D.Phil.  He then attended the Yale Law School, where he was Editor-in-Chief of the Yale Law Journal.  After graduation, Mr. Schulte clerked for Justice Potter Stewart on the Supreme Court.  Mr. Schulte was admitted to the Bar of the District of Columbia in 1973, where he remains a member in good standing, although he does not actively practice law.

After completing his clerkship, Mr. Schulte joined Northwest Industries, a diversified holding company, where he was responsible for long range planning, acquisitions and the turnaround of several operations.  He next joined Salomon Brothers, where he served in various positions, culminating in his role as head of the Corporate Reorganization Group.

In 1984, Mr. Schulte founded Chilmark Partners, a boutique financial advisory firm that specializes in corporate restructurings and distressed situations.  Mr. Schulte has assisted thousands of companies, banks, bondholders, and investors through all aspects of the financial restructuring process, including debt and equity financings, mergers and acquisitions, asset divestitures, and creditor negotiations.  A few of his advisory assignments have included Chrysler Corporation, International Harvester and USG Corporation.  Mr. Schulte has also served as an expert witness and as an independent director in distressed situations.  He has had experience in the energy industry, including serving on the board of directors of Santa Fe Energy Resources, Inc., and advisory roles in distressed situations including Clark Oil and Refining, Gulfport Energy Corporation, and Apex Oil Company.

In brief, Mr. Schulte has sat in every seat at the table—owner, director, investor, advisor and investment banker. He has been seller and also buyer, and he has invested billions of dollars on behalf of investors in businesses he controlled. Along the way, he has initiated several procedures now taken as common in the bankruptcy world, including offering a choice of outcomes to creditors (such as equity vs. cash) as well as the use of rights offerings and stand-by purchasers in plans of reorganization. He presided over a $1.8 billion rights offering, then the largest ever, in the USG chapter 11 case. He has repeatedly invented his way around obstacles.

In addition to Mr. Schulte, Chilmark Partners has six professionals who have varied backgrounds and more than 60 years of experience in finance, investment banking, executive and operations management, business consulting, and accounting. Mr. Schulte would call upon those professionals for assistance if necessary, but would be personally responsible for all aspects of this engagement.

Mr. Schulte is uniquely qualified to devise value-maximizing approaches to the task at hand, and to negotiate the complicated interrelationships between Venezuela, PDVSA, PDVH, CITGO and their associated creditors and debt structure, the interests of the United States and the many other foreign relations and foreign policy issues, and the numerous judgment creditors with an interest in, or who will seeking an interest in, the proceeds of any sale. While many investment professionals are capable of selling a company, Mr. Schulte is capable of thinking outside the box and devising a transaction structure that may best address the highly unusual circumstances of this case.

Mr. Schulte would propose to be compensated on an hourly basis for his services at this stage of the proceeding. His current rate is $1,195 per hour. The hourly rates of Chilmark's other professionals range between $425 and $1,050 per hour. His resume is attached as Exhibit B to this letter.

<u>Robert Pincus</u>

Robert Pincus, a well-respected member of the Delaware bar, is also uniquely qualified and has the expertise necessary to serve as special master in overseeing a value-maximizing sale of shares of a large, complex privately held company. Mr. Pincus is well-versed in large, commercial transactions that involve complicated corporate structures and financing, and has directly relevant experience crafting and running multi-million dollar corporate auctions, serving as a court-appointed officer, and working with the petroleum industry. During his thirty-five years as an M&A lawyer—thirty of which were spent as a partner at Skadden, Arps, Slate, Meagher & Flom LLP—Mr. Pincus represented numerous companies in a variety of industries, and completed hundreds of deals, including many with a value in excess of a billion dollars. As part of working on large-scale transactions, he routinely worked with senior management and reported to boards of directors. Throughout his career, Mr. Pincus has counseled clients on mergers and acquisitions, private equity investment, and Delaware-law aspects of transactions, fiduciary duties, and corporate governance matters. This breadth and depth of experience makes him the type of expert

The Honorable Leonard P. Stark
February 16, 2021
Page 6

who will add value to the Court's proceedings and ensure that any sale of the PDVH shares is conducted consistent with industry standards and Delaware law.

Mr. Pincus would bring experience with petroleum-industry clients to the sale of assets whose value will be based in part on the unique economics and other characteristics of the oil and gas industry. For example, in the 1990s, Mr. Pincus defended Texaco—then in bankruptcy—in a proxy contest with Carl Icahn and ultimately helped to develop a solution to Icahn's objections. In the 2000s, he represented USX—an amalgamation of U.S. Steel and Marathon Oil—through the issuance of tracking stock for the two entities and their ultimate separation from one another. Having some familiarity with issues that affect petroleum companies will allow Mr. Pincus to quickly get up to speed and digest the complexities involved with a sale of the shares of PDVH.

In addition, any sale of the PDVH shares for the amount of Crystallex's outstanding judgment may be for a minority stake. Mr. Pincus has notable experience with acquisitions of minority interests in large companies (*e.g.*, his representation of DPx Holdings, Inc. in its acquisition of a minority interest in Patheon Inc., and many other situations), which will enable him to successfully navigate the complexities of valuing and selling a minority stake of PDVH. Understanding how to structure a sale of a minority interest will assist the Court in ensuring that, consistent with Delaware law, the value of the PDVH shares is maximized at any future sale.

Finally, as the Court is aware, selling shares of stock under 8 Del. C. § 324 to satisfy what is left of a $1.2 billion judgment—a substantial share of which has already been paid—is unprecedented. D.I. 101.1 at 12 (collecting precedent on Section 324 sales). Mr. Pincus recently served as a court-appointed custodian overseeing a similarly unprecedented and challenging sale under Delaware law when he ran the $770 million sale of TransPerfect Global, Inc. In the TransPerfect litigation, the Delaware Court of Chancery ordered the sale of the company in such a way that it could remain a going concern and appointed Mr. Pincus to run the sale. Mr. Pincus managed the sale from start to finish, including hiring professionals to assist with the process, running an auction consistent with Delaware law, and negotiating the sale order. Beyond the TransPerfect case, Mr. Pincus has counseled companies through auctions throughout his career in private practice. For example, in representing JLL Partners, Mr. Pincus has facilitated multiple auctions at the same time as part of larger deals that combined smaller companies sold at auction into a single package for subsequent acquisition.

Mr. Pincus is available to serve as a special master in this case and has a rate of $950/hour. This rate is reasonable given Mr. Pincus's experience and the size and complexity of the contemplated transaction. We are not aware of any conflicts with the parties, intervenors, and non-parties who have appeared in this action. Mr. Pincus's resume is attached as Exhibit C to this letter.

**Supplemental Position of the Republic, PDVSA, PDVH, and CITGO**

On February 12, 2021, the Republic, PDVSA, PDVH, and CITGO filed Notices of Appeal of the Court's January 14 Order, D.I. 239, 240, 241, and jointly filed a motion to stay the sale proceedings

The Honorable Leonard P. Stark
February 16, 2021
Page 7

in the District Court pending the appeal, D.I. 242, 243.  Thus, the special master proposals in this letter are made subject to the appeal and the motion to stay.  Assuming the sale process goes forward, as Crystallex has been repeatedly advised, the Republic, PDVSA, PDVH, and CITGO will do everything they can to support the special master and a reasonable sale process.  Indeed, it is in their best interest to do so.  Although rates for Messrs. Pincus and Schulte have been proposed, payment for financial and legal advisors to the special master must still be determined.  During the meet and confer process, PDVH and CITGO raised with Crystallex that its $1 million advancement offer would likely be insufficient, that PDVH and CITGO were discussing how and to what extent they would contribute, and that the parties should meet and confer to further address payment of the special master.  PDVH and CITGO are willing to consider advancing at least a portion of these fees in order to ensure the most professional sales process and to maximize the value of the sale of PDVH shares, and request that the parties continue to meet and confer, on a schedule ordered by the Court, over payment of the special master and the special master's advisors, including allocation of the advancements amongst the interested parties.

*   *   *

Counsel are available if the Court has any questions.

Respectfully submitted,

/s/ Travis S. Hunter

Travis S. Hunter (#5350)

cc:  All Counsel of Record (via ECF)