IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CRYSTALLEX INTERNATIONAL
CORPORATION,

                    Plaintiff,

    v.

BOLIVARIAN REPUBLIC OF
VENEZUELA,

                    Defendant.

C.A. No. 17-mc-00151-LPS

## CRYSTALLEX'S OPPOSITION TO
## MOTION TO STAY PENDING APPEAL

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Miguel A. Estrada
Lucas C. Townsend
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
Fax: (202) 467-0539

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
Fax: (302) 651-7701

*Attorneys for Plaintiff*

Dated: February 26, 2021

# TABLE OF CONTENTS

<u>Page</u>

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 1

SUMMARY OF ARGUMENT ................................................................................................... 2

STATEMENT OF FACTS .......................................................................................................... 3

ARGUMENT ............................................................................................................................... 6

    I.     Crystallex Lacks Adequate Security To Support A Stay Under Rule 62(b).......... 6

    II.    The Court Should Deny Venezuela's Motion For A Discretionary Stay ............ 10

        A.    Venezuela Has No Likelihood Of Success On The Merits..................... 11

            1.    The Challenged Orders Are Not Appealable ............................... 11

            2.    This Court Correctly Denied The Motion To Quash .................. 13

            3.    The Court Correctly Authorized Preliminary Sales
                 Procedures....................................................................................... 16

        B.    Venezuela Cannot Show Irreparable Injury............................................. 18

        C.    Harm To Crystallex And The Public Interest Weigh Heavily
            Against A Stay ......................................................................................... 19

    III.   Delaware Law Does Not Provide Any Additional Grounds For A Stay ............. 19

CONCLUSION.......................................................................................................................... 20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Adobe Trucking, Inc.*,
   2011 WL 6258233 (Bankr. W.D. Tex. Dec. 15, 2011)............................................18

*Aeronautical Radio, Inc. v. FCC*,
   983 F.2d 275 (D.C. Cir. 1993) ...............................................................................14

*Ameziane v. Obama*,
   620 F.3d 1 (D.C. Cir. 2010).....................................................................................17

*Anchor Glass Container Corp. v. Buschmeier*,
   426 F.3d 872 (7th Cir. 2005) ...................................................................................15

*Bd. of Trs. of Cement Masons & Plasterers Health & Welfare Tr. v.
   GBC Nw., LLC*,
   2007 WL 9775630 (W.D. Wash. Oct. 4, 2007) .........................................................7

*Beauchamp v. Anaheim Union High Sch. Dist.*,
   816 F.3d 1216 (9th Cir. 2016) .................................................................................14

*Blackwell v. Sidwell*,
   126 A.2d 237 (Del. 1956) ........................................................................................20

*In re Boyd*,
   99 A.3d 226 (Del. 2014) ..........................................................................................20

*Boyle v. Zacharie*,
   31 U.S. 648 (1832)...................................................................................................11

*In re Bracket Holding Corp. Litig.*,
   2020 WL 764148 (Del. Super. Ct. Feb. 7, 2020)....................................................20

*Burge v. Fid. Bond & Mortg. Co.*,
   648 A.2d 414 (Del. 1994) ........................................................................................18

*United States ex rel. Cairns v. D.S. Med., LLC*,
   2020 WL 2556991 (E.D. Mo. May 20, 2020) .......................................................7, 9

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   333 F. Supp. 3d 380 (D. Del. 2018)...................................................................13, 14

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   760 F. App'x 1 (D.C. Cir. 2019).................................................................................4

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   932 F.3d 126 (3d Cir. 2019)...............................................................12, 13, 14, 16

*Deibler v. Atl. Props. Grp., Inc.*,
    652 A.2d 553 (Del. 1995) ..................................................................................17

*Deutsche Bank Nat'l Tr. Co. v. Cornish*,
    759 F. App'x 503 (7th Cir. 2019) ......................................................................10

*In re Diet Drugs*,
    582 F.3d 524 (3d Cir. 2009)..................................................................................6

*Doe v. Urohealth Sys., Inc.*,
    216 F.3d 157 (1st Cir. 2000)...............................................................................15

*FEC v. O'Donnell*,
    2017 WL 2200911 (D. Del. May 19, 2017)..........................................................6

*First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*,
    462 U.S. 611 (1983)................................................................................13, 14, 16

*Gates v. Texaco, Inc.*,
    2008 WL 1952162 (Del. Super. Ct. May 2, 2008) ..............................................20

*Harrington v. Hollingsworth*,
    1996 WL 769635 (Del. Super. Ct. Dec. 20, 1996) .............................................15

*Kirpat, Inc. v. Del. Alcoholic Beverage Control Comm'n*,
    741 A.2d 356 (Del. 1998) .............................................................................19, 20

*Kontrol Automation, Inc. v. Chesapeake Hydro, Inc.*,
    1989 WL 124897 (Del. Super. Ct. Sept. 27, 1989)..............................................20

*United States ex rel. Mayes v. Dent*,
    2021 WL 613780 (4th Cir. Feb. 17, 2021) .........................................................12

*McCreary Tire & Rubber Co. v. CEAT S.p.A.*,
    501 F.2d 1032 (3d Cir. 1974)..............................................................................11

*Medellín v. Texas*,
    552 U.S. 491 (2008)............................................................................................17

*Mergenthaler v. Triumph Mortg. Corp.*,
    2018 WL 7021955 (Del. Super. Ct. Dec. 20, 2018) ...........................................20

*Montalvo v. Larchmont Farms, Inc.*,
    2011 WL 6303247 (D.N.J. Dec. 15, 2011)...........................................................6

*Nken v. Holder*,
    556 U.S. 418 (2009)............................................................................................10

*Ortiz v. Dodge*,
126 F.3d 545 (3d Cir. 1997) ......................................................................12

*Owens Corning Fiberglas Corp. v. Carter*,
630 A.2d 647 (Del. 1993) ..........................................................................20

*Owner Operator Indep. Drivers Ass'n v. Pa. Tpk. Comm'n*,
934 F.3d 283 (3d Cir. 2019) ......................................................................16

*Pac. Rim Land Dev., LLC v. Imperial Pacific Int'l (CNMI), LLC*,
2020 WL 4361150 (D.N.M.I. June 4, 2020) ................................................8

*PDVSA v. MUFG Union Bank, N.A.*,
2020 WL 7711522 (S.D.N.Y. Dec. 29, 2020) ......................................7, 10

*Petroleos Mexicanos Refinacion v. M/T KING A*,
377 F.3d 329 (3d Cir. 2004) ......................................................................11

*Powers v. Ohio*,
499 U.S. 400 (1991) ...................................................................................15

*Richardson v. Prisoner Transp. Servs. of Am.*,
2019 WL 1003624 (M.D. Pa. Feb. 27, 2019) ..............................................9

*SEC v. Presto Telecomms., Inc.*,
153 F. App'x 428 (9th Cir. 2005) ..............................................................12

*Shah v. United States*,
540 F. App'x 91 (3d Cir. 2013) ..................................................................15

*Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*,
339 U.S. 684 (1950) ...................................................................................11

*Twin Falls NSC, LLC v. S. Idaho Ambulatory Surgery Ctr., LLC*,
2020 WL 7265839 (D. Idaho Dec. 10, 2020) ..........................................7, 9

*United States v. Chelsea Towers, Inc.*,
404 F.2d 329 (3d Cir. 1968) ......................................................................12

*United States v. Fiumara*,
605 F.2d 116 (3d Cir. 1979) ......................................................................11

*Warth v. Seldin*,
422 U.S. 490 (1975) ...................................................................................15

*Womack v. De Witt*,
10 A.2d 504 (Del. Super. Ct. 1939) ...........................................................15

**Statutes and Constitutional Provisions**

10 *Del. C.* § 5081 ...........................................................................................................8

28 U.S.C. § 1292(a)(2)....................................................................................................12

28 U.S.C. § 1610(c) ..........................................................................................................3

28 U.S.C. § 1963 ...............................................................................................................3

Del. Const. art. IV, § 24 ..................................................................................................19

**Rules and Regulations**

31 C.F.R. § 591.310 ........................................................................................................18

Del. Sup. Ct. R. 32(a).....................................................................................................19

Del. Sup. Ct. R. 32(c)................................................................................................19, 20

Fed. R. Civ. P. 60(b) ...................................................................................................5, 11

Fed. R. Civ. P. 62(b) ............................................................................2, 6, 7, 9, 10, 20

Fed. R. Civ. P. 62(f)...........................................................................................3, 19, 20

**Other Authorities**

*CITGO Reports Third Quarter 2020 Results* (Nov. 13, 2020), bit.ly/2NVo21P ...........................8

*Fitch Assigns 'B+'/'RR1' Expected Rating to CITGO Holdco Issuances;
   Upgrades Holdco IDR to 'CCC+'* (July 16, 2019), bit.ly/2ZPNHf1 .......................8

*Fitch Rates CITGO Petroleum's Secured 2026 Notes 'BB'/'RR1'* (Feb. 3, 2021),
   bit.ly/3aSp9s4.........................................................................................................8

Robin Emmott, *EU No Longer Acknowledges Venezuela's Guaido As Interim
   President*, Reuters (Jan. 6, 2021), bit.ly/3duu58k...................................................17

Anatoly Kurmanaev and Lara Jakes, *To Fight or Adapt? Venezuela's Fading
   Opposition Struggles to Keep Going*, N.Y. Times (Feb. 16, 2021),
   nyti.ms/2NGecki ...................................................................................................17

Arpan Varghese, *U.S. oil wells, refineries shut as winter storm hits energy sector*,
   Reuters (Feb. 15, 2021), reut.rs/3dMNtgQ ..............................................................8

*Venezuela's Citgo Issues $1.125 Billion of New 5 Year Bonds*,
   Latin Am. Herald Tribune (June 3, 2020), bit.ly/2MsvukI........................................8

Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4418 ..................................................................14

Plaintiff Crystallex International Corp. ("Crystallex") respectfully submits this memorandum of law in opposition to the Motion for Stay Pending Appeal filed by the Bolivarian Republic of Venezuela, Petróleos de Venezuela, S.A. ("PDVSA"), CITGO Petroleum Corp. ("CITGO"), and Garnishee PDV Holding, Inc. ("PDVH") (collectively, "Venezuela").  D.I. 242.

## NATURE AND STAGE OF THE PROCEEDINGS

Nearly thirteen years after Venezuela unlawfully expropriated Crystallex's investment, Crystallex is still awaiting the compensation that it is rightfully due.  As Crystallex nears year five of litigation to collect on its arbitral award and $1.4 billion judgment, Venezuela—together with its alter ego PDVSA and two subsidiaries—has filed its *thirteenth* request to delay this litigation.

Venezuela seeks to "stay any further steps toward execution" on PDVH's shares, D.I. 243 ("Mot."), at 1—the same relief it has sought for two and a half years since this Court recognized Crystallex's right to execute on those shares.  Execution was stayed pending appeal and, again, pending a petition for certiorari that Venezuela assured this Court would present extremely important questions unusually likely to interest the Supreme Court.  Now that this Court has resumed proceedings and committed to proceed toward a judicial sale, Venezuela wants to halt that progress and stop Crystallex from enforcing its final, unappealable judgment by reinstating yet another stay.

The occasion for this transparent delay tactic is familiar:  yet another appeal challenging this Court's previously affirmed alter-ego findings, attachment, and its latest decision to proceed toward an execution sale to the fullest extent allowed by OFAC's sanctions against Venezuela. This latest iteration of Venezuela's arguments has virtually no chance of succeeding where the prior iteration failed.  The arguments are meritless, the Third Circuit has already rejected them, and each remedy sought is either disfavored, barred by estoppel, or not appealable.

The stay motion should be denied. If any stay is granted Venezuela should be required to post a full bond.

## SUMMARY OF ARGUMENT

1.      Venezuela is not entitled to a stay under Federal Rule of Civil Procedure 62(b) because it has not posted a supersedeas bond, and—contrary to its assertions—the attachment of its shares does not provide adequate security equivalent to a bond.  Indeed, it takes an extraordinary degree of audacity for Venezuela to claim that Crystallex's interests are fully secured by its attachment—the argument it successfully used to obtain previous stays—when it returned to this Court to claim that the attachment was never effective, because the shares are certificated and supposedly cannot be found.  Venezuela now purports to appeal this Court's refusal to quash that very attachment while remaining coy on what arguments it will raise on appeal.  Venezuela's unseemly maneuvering should cause this Court to direct Venezuela to immediately re-issue the missing share certificate so it can be kept in the registry of the Court or delivered to the U.S. Marshals for safekeeping.  But regardless, the fact that other creditors of Venezuela and PDVSA continue to jockey to better their position at the expense of Crystallex should cause this Court to reject this argument in any event.  And it should be obvious that Venezuela does not in fact accept the purported security of the attachment itself, as it continues to appeal and seize on supposed intervening political changes and changes to OFAC sanctions to relitigate the attachment at every conceivable opportunity.  There is literally no procedural maneuver, no matter how meritless, that Venezuela will not try to challenge the attachment or delay these proceedings or the ultimate payment on its lawful debt.  The supposed security of the attachment manifestly does not protect Crystallex from Venezuela's efforts to drag out the sale process indefinitely and to avoid paying its debt.

2.      Venezuela also fails to satisfy the standard four-factor test for a discretionary stay.  Over the past decade, Venezuela has failed to persuade *any* adjudicator of *any* of its merits arguments in this litigation.  Its latest appeals likewise lack any prospect of success.  The Court's ruling on the motion to quash the attachment is not appealable.  The motion to quash is also barred by

collateral estoppel, and its central premise—that *state* law governs PDVSA's status as Venezuela's alter-ego—flouts settled Supreme Court precedent.  The order setting a process for a potential sale in the future is also unappealable, and is consistent with both OFAC sanctions and the government's foreign-policy concerns, which in any event do not bind this Court.

Further, neither PDVSA, PDVH, nor CITGO claim irreparable harm, nor could they, so any likelihood of success on their motion to quash is irrelevant.  Venezuela, meanwhile, cannot prove irreparable harm while arguing that OFAC sanctions protect it from an ultimate sale of the shares of PDVH.  And its speculation about the political consequences of advertising a sale is a public relations argument that presupposes that our laws take a back seat to a foreign government's image concerns—and in any event ignores present political realities.  Further delay risks further obstacles to execution, hurts the public interest in prompt enforcement of judgments, and will only encourage similar delay tactics from Venezuela and other likeminded foreign state debtors.

3.      Venezuela falls back on Delaware law, made applicable by Federal Rule of Civil Procedure 62(f).  But Delaware's stay standard requires *both* satisfaction of the discretionary factors (tracking the federal test), *and* sufficient security, defined in terms at least as strict as under federal law.  Venezuela fails to meet these requirements for the same reasons as under federal law.

## STATEMENT OF FACTS

In the ten years since Crystallex commenced arbitration against Venezuela, three arbitrators, eighteen judges, and nine Supreme Court Justices have considered Venezuela's arguments.  Not one has ever expressed agreement with Venezuela's positions.  Yet Venezuela's constant delay tactics have dragged this litigation out for nearly five years.  This stay motion marks Venezuela's *thirteenth* filing seeking to stay or suspend further proceedings:

After the D.C. district court entered judgment in 2017, Venezuela unsuccessfully: (1) opposed entry of an order under 28 U.S.C. §§ 1963 and 1610(c) allowing Crystallex to register

its judgment in other districts and begin seeking attachment and execution, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 1:16-cv-661 (D.D.C. May 9, 2017), D.I. 37; and (2) moved to stay execution of the judgment pending appeal, *id.*, D.I. 40.  In the appeal from that judgment, Venezuela also filed: (3) a "misleading and meritless" emergency motion to stay the D.C. Circuit oral argument, which led to Venezuela's then-counsel being sanctioned.  *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 760 F. App'x 1, 3 (D.C. Cir. 2019).

In August 2018, after this Court held that PDVSA was Venezuela's alter ego and granted Crystallex's motion for a writ of attachment against PDVH's shares, Venezuela, through its alter ego, PDVSA: (4) appealed this Court's order granting the attachment motion, and unsuccessfully sought to postpone issuance of the writ by arguing that this Court lacked jurisdiction, D.I. 80, D.I. 86, at 6-8.  Venezuela then: (5) moved to continue this Court's temporary stay, D.I. 98; and (6) filed a mandamus petition seeking vacatur of the writ until after the appeal, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2889 (3d Cir. Aug. 27, 2018), Doc. 3113018517, resulting in the Third Circuit entering a stay pending appeal, *id.*, Doc. 3113093030.

Venezuela took every possible opportunity to extend the stay by: (7) moving to delay oral argument in the Third Circuit, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2797 (3d Cir. Mar. 1, 2019), Doc. 3113174932; (8) unsuccessfully opposing Crystallex's motion to lift the Third Circuit stay after that court affirmed in July 2019, *id.*, Docs. 3113334559, 3113334281; and (9) on remand, successfully opposing the lifting of this Court's stay while Venezuela sought Supreme Court review, which Venezuela assured this Court would present weighty issues very likely to interest the Supreme Court, D.I. 139, at 14.  Seeking to further extend that review process, Venezuela unsuccessfully: (10) opposed efforts to condition a continued stay on prompt filing of a petition for certiorari.  D.I. 160.  It also unsuccessfully urged the Supreme Court

4

to call for the views of the Solicitor General, which could have kept Venezuela's petition pending for perhaps another year while the stay remained in place. D.I. 157, at 3.

After the Supreme Court unceremoniously and quickly denied certiorari and this Court lifted the stay in May 2020, Venezuela continued to oppose a ruling on the sale procedures for executing on PDVH's shares. Venezuela unsuccessfully: (11) proposed that the Court postpone briefing on sale procedures until *after* briefing and decision on a Rule 60(b) motion and motion to quash, D.I. 168, at 1-2; and (12) argued that this Court should defer any sale process—or even any *consideration* of sale procedures—until OFAC grants a license for the sale of PDVH, D.I. 188.

In January 2021, this Court issued a number of rulings, some of which Venezuela now seeks to appeal. D.I. 234. The Court denied Venezuela's Rule 60(b) motion, D.I. 234, at 7-15, which argued (again) that changed circumstances in Venezuela warranted relief from attachment of the PDVH shares, D.I. 183. So far as it appears from Venezuela's papers, this ruling is not the subject of its current appeal. The Court also denied the motion, filed through PDVSA, PDVH, and CITGO, to quash the writ of attachment. D.I. 178. The Court held that the movants were collaterally estopped and time-barred from arguing that this Court was required to make a separate alter-ego finding under Delaware law on top of its alter-ego finding under federal law. D.I. 234, at 16-21, 26-31. The Court also held that the movants were judicially estopped from denying that service of the writ on PDVH was adequate to attach PDVH's shares, given their repeated assurances that the shares were attached and secure. *Id.* at 21-24.

The order further announced the Court's intention to set up "sales procedures" and "follow them to the maximum extent [allowed] without a specific license from OFAC." D.I. 234, at 32-33. The Court "set out some of the contours of the sales procedures that it will follow," directed the parties to submit proposals on how to proceed, and contemplated that a Special Master will be

appointed to advance the process to the extent consistent with OFAC regulations. *Id.* at 34. The Court emphasized that "[e]ach day that Crystallex does not recover on its judgment" is "an affront to the United States judicial system," and "[t]hose days must soon come to an end." *Id.* at 38.

Venezuela has now appealed the January 2021 orders in its own name and through PDVSA, PDVH, and CITGO. Predictably, Venezuela now seeks: (13) yet another stay pending appeal.

## ARGUMENT

Parties appealing district court decisions may stay enforcement as of right by posting a supersedeas bond. *See* Fed. R. Civ. P. 62(b). A district court may forgo the bond requirement only under "exceptional circumstances," *Montalvo v. Larchmont Farms, Inc.*, 2011 WL 6303247, at *2 (D.N.J. Dec. 15, 2011), "when there are other means to secure the judgment creditor's interests," *In re Diet Drugs*, 582 F.3d 524, 552 (3d Cir. 2009), such that the court is "convinced that the judgment is adequately secured." *FEC v. O'Donnell*, 2017 WL 2200911, at *2 (D. Del. May 19, 2017). Because Crystallex still lacks adequate security for its judgment, and Venezuela offers no authority or justification for staying execution without such security, Venezuela's motion should be denied, and this Court should require Venezuela to post a bond.

## I.   Crystallex Lacks Adequate Security To Support A Stay Under Rule 62(b)

Venezuela's lead argument—that under Rule 62(b), the attachment alone entitles it to a stay "'as a matter of right,'" Mot. 5, without *anything* in exchange from Venezuela or any consideration of the ordinary, four-factor standard that Venezuela concedes is the "Third Circuit's … test for granting a stay," D.I. 98, at 4—is extraordinary in its audacity. Venezuela is vigorously attacking that very attachment. Venezuela's motion to quash argued that Crystallex's writ of attachment is invalid because PDVH did not have physical possession of the share certificate. *E.g.*, D.I. 179, at 14-17. Venezuela now says it will raise different arguments on appeal, but it studiously avoids stating that it will *not* appeal *this* issue. Mot. 11. As Venezuela is resting its argument for

a stay on the purported security of the attachment, the Court should, at the very least, eliminate any doubt by requiring Venezuela to disclose whether it intends to challenge the attachment on this basis.  Regardless, given Venezuela's less than candid conduct in these proceedings with respect to the location of the certificate and the security it provides, and Venezuela's repeated tactical misrepresentations to this Court, this Court should direct the immediate reissuance of the certificate that Venezuela now asserts cannot be found so that the new certificate can be delivered to the Court's registry or to the U.S. Marshals for safekeeping.  *See* D.I. 237, at 2.

In any event, Venezuela's argument fails on its own terms.  "An alternative security proposal should '*furnish equal protection* ...' as would a full supersedeas bond."  *Twin Falls NSC, LLC v. S. Idaho Ambulatory Surgery Ctr., LLC*, 2020 WL 7265839, at *6 (D. Idaho Dec. 10, 2020).  A bond is the preferred form of security under Rule 62(b) because it "provides the greatest possible assurance" that "the judgment will be promptly executed" if affirmed.  *Bd. of Trs. of Cement Masons & Plasterers Health & Welfare Tr. v. GBC Nw., LLC*, 2007 WL 9775630, at *2 (W.D. Wash. Oct. 4, 2007).  "[C]ollection" is "simple" and "certain to provide … 'full and fast relief.'"  *United States ex rel. Cairns v. D.S. Med., LLC*, 2020 WL 2556991, at *2 (E.D. Mo. May 20, 2020).

The attachment of PDVH's shares, by contrast, provides no assurance of prompt execution.  If it did, this case would have been over and the judgment satisfied last year when the Supreme Court denied certiorari.  Rather, as the five-year course of this litigation makes clear, collecting on those shares is neither simple, nor fast, nor certain to provide full relief, for at least three reasons.

*First*, the attachment is not adequate security.  PDVH's main asset, CITGO's parent (CITGO Holding), is currently the subject of litigation between PDVSA and its bondholders, who were pledged 50.1% of CITGO Holding's shares to induce them to restructure PDVSA's debt.  *PDVSA v. MUFG Union Bank, N.A.*, 2020 WL 7711522 (S.D.N.Y. Dec. 29, 2020).  Venezuela

defaulted on the bonds.  If the Second Circuit affirms the bondholders' right to foreclose on the shares as the result of that default, much of PDVH's share value could be lost forever.  Further, despite Crystallex's priority lien, other creditors are lining up to lay their own claims to the shares. *E.g.*, *Phillips Petrol. Co. Venezuela Ltd. v. PDVSA*, 1:19-mc-342 (D. Del.).  While Crystallex firmly believes that its priority is preserved by this Court's order tolling the three-year period set forth in 10 *Del. C.* § 5081, the possibility that the question of Crystallex's priority will be litigated and then appealed cautions against allowing the three-year period to lapse without a sale.

Nor is litigation the only risk to the value of the shares.  PDVH's subsidiaries have issued billions of dollars of new secured debt since the writ of attachment was issued, leaving the companies more burdened today than they were two-and-a-half years ago.[1]  And CITGO is now operating at a loss due to the current pandemic's impact on oil consumption, and recent weather conditions in Texas have hampered its refineries' output.[2]  Venezuela's involvement limits CITGO's flexibility in responding to these challenges.[3]  The uncertain value of the attachment precludes it from being adequate security for Crystallex's billion-dollar plus judgment.  *See, e.g.*, *Pac. Rim Land Dev., LLC v. Imperial Pacific Int'l (CNMI), LLC*, 2020 WL 4361150, at *3 (D.N.M.I. June 4, 2020) (denying "mortgage interests" as alternative security, where their value was uncertain and "one of the properties offered is not free and clear of encumbrances").

---

[1]  *See Fitch Assigns 'B+'/'RR1' Expected Rating to CITGO Holdco Issuances; Upgrades Holdco IDR to 'CCC+'* (July 16, 2019), bit.ly/2ZPNHf1 (noting "recent debt increases").

[2]  *CITGO Reports Third Quarter 2020 Results* (Nov. 13, 2020), bit.ly/2NVo21P; Arpan Varghese, *U.S. oil wells, refineries shut as winter storm hits energy sector*, Reuters (Feb. 15, 2021), reut.rs/3dMNtgQ.

[3]  *Fitch Rates CITGO Petroleum's Secured 2026 Notes 'BB'/'RR1'* (Feb. 3, 2021), bit.ly/3aSp9s4 (noting "legacy PDVSA ownership issues"); *see also Venezuela's Citgo Issues $1.125 Billion of New 5 Year Bonds*, Latin Am. Herald Tribune (June 3, 2020), bit.ly/2MsvukI (attaching debt offering documents in which CITGO acknowledges that "[n]o assurance can be given that the Venezuelan Government, as PDVSA's shareholder, will not adopt policies or exercise its control of PDVSA in a manner that might adversely affect [creditor] interests").

*Second*, OFAC still must approve any sale before it can close and, as this Court has noted, OFAC may be waiting for this Court to act before considering Crystallex's request for a license. *See* D.I. 234, at 33.  The history of this case has seen shifts in Venezuela's political situation and OFAC's sanctions regime, *id.* at 11, 14-15, that Venezuela has at every turn exploited to seek endless delays and relief from judgment, *e.g.*, D.I. 184, at 10-20.  Further delay risks further opportunities for Venezuela to try to impede a sale.  With execution not "certain," *Cairns*, 2020 WL 2556991, at *2, and "payment in full" not "assure[d]," *Richardson v. Prisoner Transp. Servs. of Am.*, 2019 WL 1003624, at *3 (M.D. Pa. Feb. 27, 2019), the attachment is insufficient security.

*Third*, at minimum, the sale process will take time.  As this Court recognized, a "large amount of litigation … likely lays ahead."  D.I. 234, at 32.  While Crystallex proposes that the Special Master conduct a straightforward sale process in accord with Delaware law, Venezuela envisions a prolonged process for a sale, requiring "time for the special master to retain experts and for them to adequately do their work."  *See, e.g.*, D.I. 237, at 3.  If its past conduct is any indication, the Special Master's process will be further drawn out by a never-ending series of challenges by Venezuela.  Unless Venezuela posts a supersedeas bond guaranteeing *immediate* payment upon affirmance of this Court's orders, Rule 62(b) gives it no right to delay progress toward an eventual sale to enforce the judgment.  *See Twin Falls*, 2020 WL 7265839, at *5 (denying stay because "it may take … substantial time to obtain payment if the judgment is affirmed on appeal.").

Venezuela cannot obscure the need for security by arguing that "Crystallex has an interest only in the *res*—*i.e.*, in the shares of PDVH owned by PDVSA," Mot. 6—as if Crystallex did not hold an affirmed and unsatisfied *judgment* against Venezuela.  Crystallex registered its judgment in this Court for the purpose of collecting it in full.  As this Court noted, "[e]ach day that Crystallex does not recover on its judgment is arguably something of an affront to the United States judicial

system." D.I. 234, at 38.  Crystallex should not be made to watch years of enforcement turn to dust as Venezuela or other creditors diminish the value of Crystallex's writ of attachment.

Nor is Venezuela aided by citing home foreclosure cases, *see* Mot. 7, which sensibly treat a home as an appropriate security pending appeal, because otherwise the homeowner "would likely [be] evicted in a matter of days without any meaningful opportunity to present her arguments" to the appellate court.  *Deutsche Bank Nat'l Tr. Co. v. Cornish*, 759 F. App'x 503, 508 (7th Cir. 2019).  That is nothing like this case, where the judgment has already been affirmed and Venezuela has already lost every argument in every conceivable forum.  Even in foreclosure cases, Rule 62(b) allows courts to demand additional security, such as a bond, "to protect a lender-appellee who needs protection from risks that would dissipate the property or otherwise undermine the security it provides."  *Id.* at 510.  That is the situation here:  Crystallex's writ of attachment is not an adequate security, and so a further security in the form of a bond would be required for any stay.

Similarly, the *MUFG* decision—which stayed the sale of PDVH's shares of CITGO—does not help Venezuela here, because the parties there had not yet had their disputes heard on appeal. It is one thing to preserve the parties' bargained-for collateral *in the judgment creditor's possession* during a single appeal, one year into the litigation, as in *MUFG*.  It is quite another thing to stay these decades-long proceedings as Venezuela tries its third Hail Mary appeal.

## II.    The Court Should Deny Venezuela's Motion For A Discretionary Stay

In addition to its failure to post security, Venezuela cannot satisfy the requirements for a discretionary stay.  To obtain a stay without bond, Venezuela must (1) make a "'strong showing that [it] is likely to succeed on the merits'"; (2) show that it "'will be irreparably injured absent a stay'"; (3) show that "'issuance of the stay will [not] substantially injure the other parties interested in the proceeding'"; and (4) show that "'the public interest'" favors a stay.  *Nken v. Holder*, 556 U.S. 418, 426 (2009).  Venezuela cannot meet that standard because its appeal has no chance of

success, it cannot show irreparable harm, and the remaining equitable factors weigh against a stay.

### A.  Venezuela Has No Likelihood Of Success On The Merits

So far, all 30 of the arbitrators, judges, and Justices to consider Venezuela's arguments on the underlying judgment and its enforcement have rejected them without registered dissent.  Venezuela's position is even weaker now because it has already lost on the very arguments it seeks to raise on appeal.  Venezuela's repeated losses illustrate the futility of its arguments on the merits.

Venezuela does not claim a likelihood of success in challenging the Court's denial of its Rule 60(b) motion.  *See* Mot. 1, 11-18.  Instead, it relies on the denial of the motion to quash and the Court's order authorizing the parties to start taking preliminary steps toward preparing for a sale.  *Ibid.*  For reasons both procedural and substantive, these appeals are doomed to fail.

### 1.  The Challenged Orders Are Not Appealable

Venezuela's arguments fail at the threshold because they cannot "satisfy the threshold requirements of jurisdiction," defeating any "likelihood of success on the merits."  *United States v. Fiumara*, 605 F.2d 116, 117 (3d Cir. 1979).  The challenged rulings on the motion to quash and sales procedures are not final orders and cannot be appealed until a sale order issues.

Denial of the motion to quash is unappealable because settled precedent precludes appeal from "orders upholding attachments."  *Petroleos Mexicanos Refinacion v. M/T KING A*, 377 F.3d 329, 336 (3d Cir. 2004).  An "order refusing to vacate an attachment is interlocutory and unappealable."  *McCreary Tire & Rubber Co. v. CEAT S.p.A.*, 501 F.2d 1032, 1037 (3d Cir. 1974).  Where "an attachment is upheld" pending further proceedings, "the parties can be adequately protected while the litigation on the main claim proceeds," *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 689 (1950), and any appeal must lie from the "final" disposition of the property rather than a "mere interlocutory order" on a "motion to set aside process," *Boyle v. Zacharie*, 31 U.S. 648, 657 (1832) (Story, J.).  These principles apply equally

11

post-judgment.  *United States ex rel. Mayes v. Dent*, 2021 WL 613780, at *2 (4th Cir. Feb. 17, 2021) (dismissing post-judgment appeal for the "same reasons" as appeal challenging prejudgment attachment).  Venezuela has already had and lost one appeal challenging the writ, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019), and further process that is a mere "precursor to a sale," D.I. 234, at 8, cannot be appealed until after a final sale order.

The Court's ruling anticipating potential sale procedures yet to be proposed by a Special Master yet to be appointed is also non-final.  That ruling merely expresses the Court's intention to set up "sales procedures" in the future and "follow them."  D.I. 234, at 32-33.  While the Court "set out some of the contours of the sales procedures that it will follow" eventually, *id.* at 34, the Court has not actually *done* anything besides direct parties to submit proposals, D.I. 235, at 1-2, and reserve "opportunit[ies]" for "additional input" after a Special Master is appointed.  D.I. 234, at 2.  If that were enough to justify immediate appeal, every single order on the long route to a sale would be appealable, and given Venezuela's penchant for seeking stays pending appeals, the possibility of a sale would recede into the infinite horizon of the future.  That is not the law.

As proceedings remain "ongoing," and a sale "not yet been conclusively determined," this preliminary ruling "cannot … be described as a 'final decision."  *Ortiz v. Dodge*, 126 F.3d 545, 548 (3d Cir. 1997).  Indeed, 28 U.S.C. § 1292(a)(2) specifically allows appeal of only certain categories of interlocutory orders in the sale context—such as "orders appointing receivers" or "refusing" to "direc[t] sales"—so other sale-related orders not "within any [express] category" are not appealable.  *United States v. Chelsea Towers, Inc.*, 404 F.2d 329, 330 (3d Cir. 1968) (pre-sale "order requiring the delivery of certain deposits to the receiver").  "Because the order appealed from approves only sale procedures for, rather than the actual sale of, the [property], the order is not a final judgment."  *SEC v. Presto Telecomms., Inc.*, 153 F. App'x 428, 430 (9th Cir. 2005).

### 2.      This Court Correctly Denied The Motion To Quash

**a.**  Venezuela's central argument in the motion to quash is that it should get another chance to argue the merits of attachment, because this Court resolved the federal question of jurisdiction, and not the state-law merits.  But Venezuela already raised most of these issues and lost.

Throughout this case, PDVSA invoked "Delaware corporate law" to argue that "alter ego liability applies only … where the corporate form is abused to perpetrate a fraud."  D.I. 26, at 16-17.  Though PDVSA conceded that "federal common law" governs the alter-ego inquiry, it claimed that "Delaware corporate law" "heavily influenced" that standard, D.I. 49, at 67:10-20, and required a showing of fraud for both merits and jurisdictional purposes.  D.I. 26, at 2, 24.

This Court rejected these arguments in granting Crystallex's motion for a writ of attachment.  It held that "federal law, not state law," governs, and found PDVSA's "state-law alter ego standards" "unpersuasive" because "neither [Venezuela nor PDVSA] is a Delaware corporation." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 396 n.13, 405 (D. Del. 2018).  Instead, applying *First National City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"), the Court held that "alter ego may be shown by either extensive control" *or* 'fraud or injustice,'" and Crystallex established the former, *Crystallex*, 333 F. Supp. 3d 397, 399.  The Court thus held for purposes of both merits and jurisdiction, *id.* at 394 n.10, that: (1) "PDVSA is the alter ego of Venezuela," *id.* at 406; (2) "PDVSA's shares in PDVH" are "property of Venezuela," *id.* at 415; and (3) the shares are thus "subject to attachment and execution in order to satisfy Venezuela's debt to Crystallex," D.I. 95, at 1.

The Third Circuit affirmed, stating that "federal common law" allows alter-ego liability based solely on "extensive control" even without "fraud."  *Crystallex*, 932 F.3d at 132, 145.  The court explained that "*Bancec* can … be used to reach the assets of a foreign sovereign's extensively controlled   instrumentality   through   post-judgment   attachment   proceedings,"   and   thus

"determine[s] 'whether the [instrumentality's] assets … are subject to execution'" and whether this Court has "power to issue a writ"—not just the scope of this Court's jurisdiction. *Id*. at 139.

As this Court correctly found, D.I. 234, at 16-21, Venezuela cannot rewrite history and cabin these rulings to questions of "jurisdiction" and "immunity." Mot. 12-15. PDVSA has already conceded that *Bancec* "applies equally for purposes of liability and for purposes of establishing an exception to jurisdictional immunity," D.I. 55, at 2, and this Court recognized no distinction between the standards for "merits" and "jurisdiction," *Crystallex*, 333 F. Supp. 3d at 394 n.10. The Court decided both these "intertwined" issues, *id.*, and did not just deny PDVSA's motion to dismiss. The Court necessarily resolved the question that PDVSA now purports to raise—"whether Crystallex is entitled to a writ," D.I. 179, at 1—because it *ordered* the issuance of that writ, D.I. 95, at 1, over PDVSA's objection that "Crystallex fail[ed] to establish its alter ego claim against PDVSA," D.I. 26, at 2. Venezuela and PDVSA cannot relitigate these issues.

**b.** Venezuela's other challenges are makeweight. It quibbles over whether collateral estoppel or law of the case applies here. Mot. 11. But courts routinely apply collateral estoppel to subsequent proceedings in the same litigation. *E.g.*, *Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1225 (9th Cir. 2016); *Aeronautical Radio, Inc. v. FCC*, 983 F.2d 275, 280-81 (D.C. Cir. 1993). In any event, the label of the doctrine does not matter, as Venezuela concedes. Mot. 14 n.2. "Affirmance on an appeal actually taken … concludes a common issue that otherwise would arise in continuing proceedings, whether the theory be issue preclusion or law of the case." Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4418.

Nor does it matter that PDVH and CITGO are now trying to advance Venezuela's flawed arguments. As this Court recognized, PDVH and CITGO are in privity with PDVSA and thus are bound by the same rulings. D.I. 234, at 25. All three share a "commonality of … interest in [a]

matter." *Doe v. Urohealth Sys., Inc.*, 216 F.3d 157, 162 (1st Cir. 2000); *see also Shah v. United States*, 540 F. App'x 91, 93 (3d Cir. 2013) (finding privity where company was "wholly owned" and parties were "preceding and succeeding owners of the property at issue"). Here, both subsidiaries are only in this proceeding because of their corporate relationship with PDVSA—*i.e.*, because PDVSA nominally owns the PDVH shares, and CITGO issued debt with change-of-control provisions, most of which has since been restructured. D.I. 125, at 5. And all three are aligned in seeking to preserve PDVSA's nominal ownership—indeed, they co-signed the motion to quash, D.I. 179, at 1, 19, and the motion to stay, Mot. 21-22. It would "strain credulity to find that the interests of [the subsidiary] and [the parent] were so distinct that they are not aligned" for purposes of preclusion. *Anchor Glass Container Corp. v. Buschmeier*, 426 F.3d 872, 880 (7th Cir. 2005).

Regardless, PDVH and CITGO lack standing. Under Delaware law, a "corporation … '*has no interest in the seizure of [its] stock as the property of the shareholder*,'" as PDVH seeks to do here, and thus "no standing to attack the attachment by a motion to quash." *Harrington v. Hollingsworth*, 1996 WL 769635, at *3-4 (Del. Super. Ct. Dec. 20, 1996); *see also Womack v. De Witt*, 10 A.2d 504 (Del. Super. Ct. 1939) (garnishee corporation "was not entitled to 'resist any claim'" to garnishment of its shares). CITGO—PDVH's subsidiary—is even further removed from any basis to oppose garnishment under Delaware law. Likewise, under Article III, a party "must assert his own legal rights and interests"—not those of "third parties," *Warth v. Seldin*, 422 U.S. 490, 499 (1975), at least when the third party can "protect [its] own interests," *Powers v. Ohio*, 499 U.S. 400, 411 (1991). The rights at issue here—"ownership interests" in what movants call "PDVSA's property"—are nominally PDVSA's (really Venezuela's). D.I. 179, at 3, 8 n.7. Venezuela and PDVSA can protect those interests, as they have done throughout this litigation. PDVH and CITGO thus lack standing to reopen issues already litigated against PDVSA.

**c.** Even if Venezuela could overcome estoppel, its underlying argument for applying Delaware law fails on the merits. Although the Third Circuit can affirm this Court's order on any ground in the record, *Owner Operator Indep. Drivers Ass'n v. Pa. Tpk. Comm'n*, 934 F.3d 283, 294 n.13 (3d Cir. 2019), Venezuela says not a whit about its likelihood of success on that argument. Mot. 11-15. But as to that underlying issue, *Bancec* is clear that federal *substantive* law governs alter-ego allegations involving foreign states, notwithstanding that Federal Rule 69 applies state law *procedures*. *See* D.I. 199, at 24-27. *Bancec* held that the corporate relationship between a foreign state and its instrumentalities is governed by "principles … common to both international law and federal common law," not "the law of the forum State." 462 U.S. at 622 n.11, 623. And the Third Circuit already rejected PDVSA's attempt "to restrain the application of *Bancec* in post-judgment proceedings." *Crystallex*, 932 F.3d at 139. Thus, again, even if the Third Circuit were to somehow overlook the multiple procedural problems with Venezuela's appeals and reach the merits argument it attempts to make, Venezuela still has no chance of success.

### 3.    The Court Correctly Authorized Preliminary Sales Procedures

There is likewise no merit to Venezuela's rehashed arguments to reconsider the sales process ruling based on the government's "foreign policy interests." Mot. 15. Venezuela's "broa[d]" reading of the OFAC regulations to "preclude *any* concrete steps" toward sale, *id.* at 15-16, was not supported by the government, which did "not tak[e] the position that the Court is 'blocked from moving forward,'" D.I. 234 at 34. The government did not dispute that OFAC regulations leave much for the parties and the Court to do to prepare for a sale. D.I. 223, at 9-10. The Court considered these arguments and reasonably concluded that "'[t]here is no just reason not to advance this litigation to the furthest point that OFAC's sanctions regime permits,'" including "all the preparatory steps that can be taken without [a] license." D.I. 234, at 33. Until this Court infringes a duly promulgated regulation, which not even Venezuela alleges has occurred,

claiming that it will go too far is speculation.

Venezuela is also wrong to assert that this Court "abused its discretion by refusing to defer to the United States' request to postpone the sale proceedings." Mot. 17. The Court "long sought" the government's input and then "carefully considered" its later than eleventh-hour submission on the eve of argument, D.I. 234 at 14 & n.5, before rejecting its "foreign policy" objections on well-considered legal grounds and explaining (like the Third Circuit had done before) that "the OFAC licensing process provides the better mechanism" to address any bearing they may have here, *id.* at 34.[4]  Although courts need "not question" the government's assertions of foreign-policy expertise, "[s]uch considerations" do "not allow [the Court] to set aside first principles" of law. *Medellín v. Texas*, 552 U.S. 491, 524 (2008); D.I. 219, at 8-10 (collecting citations).[5]

Venezuela's new argument that this Court's order violates Delaware law is also flawed. Delaware law does not require that a sale process "maximize the value" of the property to be sold. Mot. 18.  Rather, as Venezuela's own authority makes clear, Delaware sale procedures are designed "so that a *reasonable price*, considering the forced sale nature of the transaction, might be obtained." *Deibler v. Atl. Props. Grp., Inc.*, 652 A.2d 553, 557 (Del. 1995) (emphasis added). Venezuela's belief that a better price might be obtained if the (still unscheduled) auction is conducted at some other, indeterminate time—such as after the issuance of a potential OFAC

---

[4]  By contrast, the district court in *Ameziane v. Obama* gave no "clear" explanation for "substitut[ing its] own policy judgments for those of the executive … merely because it disagreed." 620 F.3d 1, 8 (D.C. Cir. 2010).  That is not what happened here.  D.I. 234, at 14.

[5]  Recent political events, moreover, undercut any interest our nation might have had in not "'imperil[ing]'" the Guaidó regime.  Mot. 19.  Guaidó already lost his position as head of parliament in December 2020 legislative elections and his term expired in January.  The European Union no longer recognizes him as president and his prospects for leading Venezuela have all but vanished.  Anatoly Kurmanaev and Lara Jakes, *To Fight or Adapt?  Venezuela's Fading Opposition Struggles to Keep Going*, N.Y. Times (Feb. 16, 2021), nyti.ms/2NGecki; Robin Emmott, *EU No Longer Acknowledges Venezuela's Guaido As Interim President*, Reuters (Jan. 6, 2021), bit.ly/3duu58k.  Concerns about not "damaging" the "Guaidó regime" were unavailing before, D.I. 234, at 33, and as a practical matter they are less persuasive than ever now.

license—is irrelevant.  Just as a creditor "is under no obligation to delay a[n asset] sale to indulge the debtor's 'hope that the … market might recover,'" *In re Adobe Trucking, Inc.*, 2011 WL 6258233, at *13 (Bankr. W.D. Tex. Dec. 15, 2011), a creditor is under no obligation to delay a sale simply because there may be a more favorable regulatory environment in the future.

Venezuela speculates that absent an OFAC license specifically authorizing the auction process, bidder interest in shares of PDVH would be depressed.  But there is no requirement that a potential bidder obtain a license to evaluate the opportunity presented by a sale of shares of PDVH, or to make a conditional offer to purchase shares subject to OFAC approval.  Rather a license is only required to close the sale—the event that actually transfers Venezuela's property to a third party.  *See* 31 C.F.R. § 591.310.  Even if the OFAC regulations might impact the price paid for shares of PDVH at auction, "[i]t is a well-established rule in Delaware that mere inadequacy of price … is an insufficient ground for setting aside a judicial sale."  *Burge v. Fid. Bond & Mortg. Co.*, 648 A.2d 414, 419 (Del. 1994).  Ultimately, the issue is premature:  The only way to know whether the auction will generate adequate proceeds is to conduct the auction.

### B.     Venezuela Cannot Show Irreparable Injury

Venezuela also independently fails the irreparable harm requirement.  Although Venezuela relies mainly on PDVSA, PDVH, and CITGO's motion to quash to establish a likelihood of success on the merits, none of those parties claims irreparable harm.  Even if the Republic could establish a likelihood of success on its sale arguments, it fails to show any irreparable injury.

Because OFAC sanctions currently prevent a sale, Venezuela focuses on speculation that "'advertising'" a sale will harm the Guaidó regime.  Mot. 19.  But as already explained, *supra*, at 16, the U.S. government acknowledged that there are many steps the Court can take that would *not* have that effect.  The Court has not yet authorized any advertisement, and political realities in Venezuela continue to evolve.  Venezuela therefore cannot show any risk of harm at this stage.

### C.     Harm To Crystallex And The Public Interest Weigh Heavily Against A Stay

Any possible harm to Venezuela is outweighed by the remaining equitable factors. Crystallex has diligently enforced its rights against Venezuela for a decade while ever more creditors have sought and obtained arbitration awards and judgments against Venezuela and PDVSA. While Crystallex believes its priority is secure, allowing the three-year lien period to lapse without a sale or bond risks more litigation with competing creditors, and delay risks further opportunities for Venezuela to seize on intervening events to challenge the attachment. *See supra*, at 6-10.

This Court has already recognized the strong public interest in enforcing Crystallex's judgment. "Each day that Crystallex does not recover on its judgment" is "an affront to the United States judicial system." D.I. 234, at 38. It is time for "[t]hose days" to "come to an end." *Id.*

### III.    Delaware Law Does Not Provide Any Additional Grounds For A Stay

With no basis for a stay under federal law, Venezuela falls back on Rule 62(f), which allows Venezuela to seek "the same stay of execution" that it would be entitled to in "the state where the court is located," *i.e.*, Delaware. But Delaware does not provide any additional grounds for staying execution on the PDVH shares. If anything, the standard is stricter than under federal law.

Like federal law, Delaware provides a four-factor test for a stay pending appeal under Supreme Court Rule 32(a). The factors track federal law:  (1) "likelihood of success on the merits"; (2) "irreparable injury" to the appellant; (3) "substantial harm" to "any other interested party"; and (4) "the public interest." *Kirpat, Inc. v. Del. Alcoholic Beverage Control Comm'n*, 741 A.2d 356, 357 (Del. 1998). Delaware's constitution also requires an "appellant" to "give sufficient security," Del. Const. art. IV, § 24, and Supreme Court Rule 32(c) accordingly provides "[a] stay or injunction pending appeal shall be granted upon filing and approval of sufficient security."

What Venezuela misses is that *Kirpat*'s four-factor test and Rule 32(c)'s security requirement are not independent *grounds* for a stay pending appeal. They are separate *requirements*.

*Kirpat* applies even where the appellant is "willin[g] to post a bond." *In re Bracket Holding Corp. Litig.*, 2020 WL 764148, at *10 (Del. Super. Ct. Feb. 7, 2020).  Even where *Kirpat* is satisfied, Delaware courts require adequate security.  *In re Boyd*, 99 A.3d 226 n.17 (Del. 2014); *Mergenthaler v. Triumph Mortg. Corp.*, 2018 WL 7021955, at *3 (Del. Super. Ct. Dec. 20, 2018).

Venezuela's recourse to Delaware law under Federal Rule 62(f) thus fails for two independent reasons:  Venezuela cannot satisfy the *Kirpat* test for the same reason it fails the identical, four-factor federal test.  *See supra*, at 10-19.  And the attachment no more suffices as security under Delaware Rule 32(c) than under Federal Rule 62(b).  *See supra*, at 6-10.

Indeed, the "sufficient security" requirement in Delaware state court is just as strict as the federal courts.  The Delaware Supreme Court has held that under the state constitution, "no supersedeas in an appeal from a money judgment may be had unless a bond in the full amount of the money judgment is offered as security." *Blackwell v. Sidwell*, 126 A.2d 237, 238 (Del. 1956). This requirement is "of such rigidity as to preclude the exercise by this court of any discretion in the premises." *Id.*[6]  As in federal court, therefore, alternative security will be found insufficient where it is uncertain, encumbered, or otherwise of lesser value than a full supersedeas bond.  *See Owens Corning Fiberglas Corp. v. Carter*, 630 A.2d 647, 648 (Del. 1993) (affirming trial court's decision that nothing short of payment of the full judgment to the Court would be sufficient to protect the plaintiff's interest).  Venezuela fails this standard, just as it fails the federal standard.

## CONCLUSION

Crystallex respectfully requests that the Court deny the motion for stay pending appeal.

---

[6] Although the Supreme Court Rules were revised in 1987, courts continue to cite *Blackwell* for the security test.  *See Gates v. Texaco, Inc.*, 2008 WL 1952162, at *1 (Del. Super. Ct. May 2, 2008); *Kontrol Automation, Inc. v. Chesapeake Hydro, Inc.*, 1989 WL 124897, at *2-3 (Del. Super. Ct. Sept. 27, 1989) ("Clearly, a lien on property whose value is of an indeterminate amount would severely vary the standard set forth by the [*Blackwell*] court.").

*/s/ Jeffrey L. Moyer*

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
dicamillo@rlf.com
moyer@rlf.com
hunter@rlf.com

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Miguel A. Estrada
Lucas C. Townsend
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
Fax: (202) 467-0539

Dated:  February 26, 2021

*Attorneys for Plaintiff*