# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 1:17-mc-00151-LPS |
| | ) |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

## REPLY IN SUPPORT OF THE BOLIVARIAN REPUBLIC OF VENEZUELA, PETRÓLEOS DE VENEZUELA, S.A., PDV HOLDING, INC., AND CITGO PETROLEUM CORPORATION'S <u>MOTION TO STAY PENDING APPEAL</u>

OF COUNSEL:
Donald B. Verrilli, Jr.
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Suite 500 E
Washington, District of Columbia 20001
(202) 220-1100

George M. Garvey
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100


OF COUNSEL:

Joseph D. Pizzurro
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com

A. Thompson Bayliss (#4379)
Stephen C. Childs (#6711)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807
(302) 778-1000
bayliss@abramsbayliss.com
childs@abramsbayliss.com

*Attorneys for Defendant*
*Bolivarian Republic of Venezuela*



Samuel Taylor Hirzel, II (#4415)
HEYMAN ENERIO GATTUSO & HIRZEL LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law

*Attorneys for Intervenor*
*Petróleos de Venezuela, S.A.*

OF COUNSEL:

Nathan P. Eimer
Lisa S. Meyer
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com

Kenneth J. Nachbar (#2067)
Alexandra M. Cumings (#6146)
MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@mnat.com
ACumings@mnat.com

*Attorneys for PDV Holding, Inc., and*
*CITGO Petroleum Corporation*

## <u>TABLE OF CONTENTS</u>

ARGUMENT ................................................................................................................. 1

    I.    The Attachment Provides Adequate Security for a Stay Under Rule 62(b) ................. 1

    II.    Alternatively, Movants Demonstrated that a Discretionary Stay Is Warranted ........... 4

        A.  Movants Have a Reasonable Chance of Success on the Merits ............................. 4

        B.  The January 14 Order Is Fully Appealable ........................................................... 8

        C.  Irreparable Harm and Other Factors Support a Stay Pending Appeal ................... 9

    III.    A Stay is Also Warranted Under Rule 62(f) ............................................................ 10

<u>**TABLE OF AUTHORITIES**</u>

Page(s)

**Cases**

*Buechner v. Farbenfabriken Bayer Aktiengesellschaft*,
    154 A.2d 684 (Del. 1959) ........................................................................................... 4, 5

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
    333 F. Supp. 3d 380 (D. Del. 2018) ........................................................................... 4, 5

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
    932 F.3d 126 (3d Cir. 2019) ....................................................................................... 5, 8

*FG Hemisphere Assocs., LLC v. Republic of Congo*,
    455 F.3d 575 (5th Cir. 2006) ......................................................................................... 4

*First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983) ....................................................................................................... 6

*Forgay v. Conrad*,
    47 U.S. 201 (1848) ......................................................................................................... 9

*Henglein v. Colt Indus. Operating Corp.*,
    260 F.3d 201 (3d Cir. 2001) .......................................................................................... 5

*In re Pressman-Gutman Co., Inc.*,
    459 F.3d 383 (3d Cir. 2006) .......................................................................................... 9

*In re Revel AC, Inc.*,
    802 F.3d 558 (3d Cir. 2015) .......................................................................................... 6

*Isidor Paiewonsky Assocs., Inc. v. Sharp Props., Inc.*,
    998 F.2d 145 (3d Cir. 1993) .......................................................................................... 8

*Jesner v. Arab Bank, PLC*,
    138 S. Ct. 1386 (2018) ................................................................................................... 7

*Kirpat, Inc. v. Del. Alcoholic Beverage Control Comm'n*,
    741 A.2d 356 (Del. 1998) ............................................................................................ 10

*Mergenthaler v. Triumph Mortg. Corp.*,
    2018 WL 7021955 (Del. Super. Ct. Dec. 20, 2018) ................................................... 10

*Parsons v. Robinson*,
    122 U.S. 112 (1887) ....................................................................................................... 9

*Pendleton v. Nepa Cmty. Fed. Credit Union,*
303 F. App'x 89 (3d Cir. 2008) ............................................................................ 5

*Petróleos de Venez., S.A. v. MUFG Union Bank, N.A.,*
2020 WL 7711522 (S.D.N.Y. Dec. 29, 2020) .............................................. 1, 2, 3

*SEC v. Presto Telecomms., Inc.,*
153 F. App'x 428 (9th Cir. 2005) ........................................................................ 9

*Sriram v. Preferred Income Fund III Ltd. P'ship,*
22 F.3d 498 (2d Cir. 1994) .................................................................................. 9

*United States ex rel. Mayes v. Dent,*
2021 WL 613780 (4th Cir. Feb. 17, 2021) ........................................................ 8

*United States v. "A" Mfg. Co.,*
541 F.2d 504 (5th Cir. 1976) .............................................................................. 8

*United States v. Birdsong,*
2019 WL 1026277 (D. Mont. Mar. 4, 2019) ...................................................... 1

*United States v. Bogart,*
715 F. App'x 161 (3d Cir. 2017) ........................................................................ 8

*Walker Int'l Holdings, Ltd. v. Republic of Congo,*
415 F.3d 413 (5th Cir. 2005) .............................................................................. 6

*Ziglar v. Abbasi,*
137 S. Ct. 1843 (2017) ........................................................................................ 7

*Zivotofsky ex rel. Zivotofsky v. Kerry,*
135 S. Ct. 2076 (2015) ........................................................................................ 7

**Statutes**

8 Del. C. § 324 ............................................................................................................ 7

10 Del. C. § 5081 ........................................................................................................ 2

28 U.S.C. § 1292 ........................................................................................................ 9

**Rules**

Fed. R. Civ. P. 62 ................................................................................................ 1, 3, 4

Fed. R. Civ. P. 69 ........................................................................................................ 5

**Regulations**

31 C.F.R. § 591.309 ........................................................................................................... 6

31 C.F.R. § 591.310 ........................................................................................................... 6

31 C.F.R. § 591.407 ........................................................................................................... 6

## ARGUMENT

**I.      The Attachment Provides Adequate Security for a Stay Under Rule 62(b).**

Under Federal Rule of Civil Procedure 62(b), Movants are entitled to a stay of the Court's January 14, 2021 Order (the "Order") pending appeal. As Movants explained in their opening brief, Rule 62(b) was amended in 2018 to "explicit[ly]" allow a party "to post security in a form other than a bond" to stay the enforcement of a judgment pending appeal. Fed. R. Civ. P. 62 Advisory Comm. Notes to 2018 Amends. Crystallex's Opposition simply ignores this change to the rule. *See* Opp'n 6 (citing three cases published prior to 2018 to describe bond requirements under the previous version of Rule 62). Under the current Rule, a stay applicant must provide sufficient security to ensure that the relief granted remains available should the appealed order be affirmed. *See United States v. Birdsong*, 2019 WL 1026277, *2 (D. Mont. Mar. 4, 2019) ("New Rule 62(b) permits flexibility in the type of security required to obtain a stay.").

Here, the writ of attachment placing the PDVH shares in *custodia legis* provides sufficient security because it "assures that the [PDVH] Shares"—the only relief Crystallex has been granted here—"will be maintained in their current form for the duration of the appeal." *Petróleos de Venez., S.A. v. MUFG Union Bank, N.A.*, 2020 WL 7711522, *2 (S.D.N.Y. Dec. 29, 2020). The legend on the stock certificate itself states that it "is transferrable only on the books of [PDVH] . . . upon surrender of [the] Certificate," D.I. 177-1 at 2, and given the existence of the Court's writ of attachment, PDVH would not consent to record any attempted transfer. If the Third Circuit affirms the Order, Crystallex will be able to sell as many shares as necessary to satisfy its judgment and any accrued interest, assuming it obtains an OFAC license. Finally, to "eliminate any doubt" about whether the writ is currently effective, Opp'n 7, Movants hereby restate, *see*

1

Mot. 11, that they are *not* appealing this Court's decision holding them judicially estopped from arguing that the writ was not properly laid.[1]

Crystallex nevertheless contends that the Court should require a bond because the attachment does not provide the same protection as would a "full supersedeas bond." Opp'n 7. That argument does not withstand scrutiny. First, as Crystallex has not disputed, the PDVH shares are worth *far more* than the amount of Crystallex's judgment, which is now somewhere under $1 billion given the Republic's substantial partial repayments. D.I. 244 at 1. Crystallex speculates that the value of the shares may fluctuate, but it provides no evidence that PDVH is likely to be valued at less than $1 billion after the appeal is concluded. Although the energy sector reached cyclical lows in 2020 due to COVID-19 slowdowns, Opp'n 8, a strong rebound is underway and is expected to continue.[2] Crystallex asserts that a Second Circuit decision affirming the judgment in *MUFG* would diminish the value of PDVH's shares, but the risk of an affirmance in that case is already baked into the value of PDVH. Any purchaser *today* would be aware of the ongoing bondholder litigation and secured debt on PDVH's assets and would factor that into its valuation of the shares. Finally, Crystallex provides no plausible reason to doubt the efficacy of this Court's order tolling the three-year period set forth in 10 Del. C. § 5081. Opp'n 8. If the Third Circuit affirms the Order, Crystallex will be at the front of the line. Thus, although the precise value of the attachment may be "uncertain," Opp'n 8, that uncertainty has little relevance to Crystallex.

Crystallex complains that it will take time to execute on the shares, Opp'n 9, but Crystallex does not yet have an OFAC license, and there is no guarantee that a license will issue by the time

---

[1] Crystallex's request for reissuance of the shares would need to comply with Delaware law. *See* D.I. 196 at 6–8; D.I. 237 at 3–4.

[2] *E.g.*, Andres Guerra Luz, *Oil Surges After Record U.S. Fuel Supply Drop From Deep Freeze*, Bloomberg (Mar. 2, 2021), https://tinyurl.com/4mkc839m.

the Third Circuit rules, so the appeal alone is not responsible for the delay. And contrary to Crystallex's suggestion that OFAC may be waiting for this Court to act, Opp'n 9, OFAC has advised this Court that "taking the steps Crystallex proposes toward an auction and sale of PDVH's shares would not in any way facilitate OFAC's license adjudication process with respect to Crystallex's instant license application." D.I. 212-2 at 2.

More fundamentally, Crystallex does *not* have a "billion-dollar plus judgment" against PDVSA. Opp'n 8. It has a money judgment only against the Republic, and Movants are not asking the Court to stay all efforts to execute on that judgment. Crystallex thus remains free to pursue the Republic's other non-immune assets, as permitted by OFAC.[3] The proposed stay here would merely delay Crystallex's ability to execute on a particular *asset*—the shares of PDVH—and the writ perfectly protects Crystallex's ability to do so. The post-amendment cases Crystallex cites as rejecting an alternative form of security, *see* Opp'n 7, involved attempts to stay execution on the underlying judgment pending direct appeal. None involved an appeal related to the attachment proceeding where the property offered as security was the only thing the creditor was entitled to if it prevailed on appeal. A stay should thus be granted here for the same reasons as in *MUFG*, where the court held that the creditor's interest in shares of CITGO Holding, Inc. was an adequate substitute for a supersedeas bond under Rule 62(b).[4]

---

[3] Indeed, Crystallex has been seeking to enforce that judgment elsewhere for years. *See Crystallex Int'l Corp. v Bank of N.Y. Mellon*, No. 17-cv-7024 (S.D.N.Y. May 8, 2018), D.I. 33 (concluding a turnover proceeding with the Bank's payment to Crystallex of $43,246,941.75 in funds of the Republic); *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 17-mc-00205 (S.D.N.Y. July 12, 2017), D.I. 4 (authorizing restraining notice on Haitong International Securities (USA) Inc. and Haitong Securities USA LLC.).

[4] Crystallex's effort to distinguish *MUFG* fails because, as in that case, Movants here have "not yet had their dispute[]" on whether the writ complies with Delaware law "heard on appeal." Opp'n 10. Although Crystallex insists that the Third Circuit has already addressed this issue, *id.*, the previous appeal exclusively addressed PDVSA's and the Republic's *jurisdictional* challenges. *See infra*, II.A; Mot. 12–14. In any event, the relevant inquiry under Rule 62(b) is whether the applicant

## II.     Alternatively, Movants Demonstrated that a Discretionary Stay Is Warranted.

Movants also demonstrated in their opening brief that, even if they were not entitled to a stay as a matter of right under Rule 62(b), they have satisfied the standard for a discretionary stay as well. Crystallex's arguments to the contrary are meritless.

### A.     *Movants Have a Reasonable Chance of Success on the Merits.*

**1.**     Crystallex contends that Movants cannot prevail on their motion to quash because PDVSA supposedly litigated, and lost, all issues related to the validity of the attachment. Opp'n 13. But though the snippets of this Court's 2018 decision Crystallex splices together give the appearance of a ruling on the merits, the gravamen of that order—as well as the Third Circuit's opinion—was squarely jurisdictional. Indeed, the excerpts Crystallex cites are from a section titled "Foreign Sovereign Immunity." *See id.*; *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 333 F. Supp. 3d 380, 389 (D. Del. 2018). And in its subsequent order issuing the writ, this Court described the "issues on appeal" in 2018 as "being the Court's conclusions that PDVSA's sovereign immunities under the Foreign Sovereign Immunities Act ("FSIA") do not preclude the attachment and execution sought by Crystallex." D.I. 95 at 3. That description was accurate.

The footnote in the 2018 decision indicating that "it is federal law, not state law, that applies," merely clarified the substantive law used to determine "whether Crystallex has rebutted the strong presumption of separateness between PDVSA and Venezuela" imposed by the FSIA. *Crystallex*, 333 F. Supp. 3d at 396 & n.13. But "[a] finding that an exception to executional immunity applies" is "not the same as concluding that execution is appropriate or that writs of garnishment should issue." *FG Hemisphere Assocs., LLC v. Republic of Congo*, 455 F.3d 575, 595 (5th Cir. 2006). And even if PDVSA is the Republic's alter ego for purposes of the FSIA, the

---

for a stay has provided sufficient security to ensure that the relief granted remains available should the appealed order be affirmed. In this case, as in *MUFG*, the answer is yes.

shares of a Delaware corporation—such as PDVH—may not be attached without a showing that the debtor *used* its alter ego to commit fraud. *See Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 687 (Del. 1959). The Court never addressed, much less rejected, that argument.

Again misreading footnotes from the 2018 decision, Crystallex contends that this Court "recognized no distinction between the standards for 'merits' and 'jurisdiction.'" Opp'n 14 (quoting *Crystallex*, 333 F. Supp. 3d at 394 n.10). But that statement merely clarified that if Crystallex could demonstrate that "PDVSA [was] the alter ego of Venezuela" there was no need to establish an independent basis for jurisdiction over PDVSA. *Crystallex*, 333 F. Supp. 3d at 394. In other words, the alter ego finding would satisfy the jurisdictional inquiry because neither party disputed the Court's jurisdiction over the Republic. But the Court expressed no view, in footnote 10 or elsewhere, as to whether PDVH's shares could be attached as a matter of Delaware law.

Nor did the Third Circuit address whether Delaware law permits the attachment, as required by Fed. R. Civ. P. 69. The court held that *Bancec* could be "used to extend [the district court's] jurisdiction [over Venezuela] to reach the assets of PDVSA," but it did not decide that the shares of a Delaware corporation can be attached without satisfying the standards provided by Delaware law. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 138 (3d Cir. 2019). Accordingly, Movants were not collaterally estopped from moving to quash the writ on that ground.[5]

---

[5] The Third Circuit could also reverse the collateral estoppel ruling on the ground that collateral estoppel does not apply to previous rulings in the *same action*. *See Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 210 (3d Cir. 2001). Crystallex contends that the validity of the writ is now law of the case, but the propriety of the writ under Delaware law was not "actually decided," by this Court or by the Third Circuit. *Pendleton v. Nepa Cmty. Fed. Credit Union*, 303 F. App'x 89, 90 (3d Cir. 2008).

Crystallex contends that the Third Circuit could nevertheless affirm on the ground that Delaware law does *not* govern the attachment of shares of a Delaware corporation. Opp'n 16. But the only case Crystallex cites for that proposition is *Bancec*, which held that federal common law governs the alter ego inquiry. *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 623 (1983). That holding is irrelevant because the motion to quash did not contest this Court's prior finding that PDVSA was the Republic's alter ego. Instead, it argued that Delaware law governed the attachment of shares of a Delaware corporation, and that under Delaware law the shares could only be attached if the Republic *used* its alter ego to commit fraud. Numerous courts agree that state law governs "the underlying garnishment proceeding." *Walker Int'l Holdings, Ltd. v. Republic of Congo*, 415 F.3d 413, 416 (5th Cir. 2005); *see* D.I. 179 at 8–9; D.I. 206 at 1–2 & nn.1–2. At minimum, Movants have demonstrated a "reasonable chance" of success on the merits of their motion to quash. *In re Revel AC*, 802 F.3d 558, 568 (3d Cir. 2015).

**2.**   Crystallex has also failed to rebut Movants' showing of a reasonable likelihood of success in challenging this Court's sale process order. First, the order authorizing appointment of a special master and directing the parties to prepare for, advertise, and even hold a contingent auction is inconsistent with operative OFAC regulations, which squarely foreclose any "preparation for" or "concrete steps in furtherance of" an auction—including a contingent one— absent an OFAC license. FAQ 809;[6] 31 C.F.R. §§ 591.309, 591.310, 591.407.[7]

Second, the Court's decision to move forward despite the United States' request to delay

---

[6] Available at https://home.treasury.gov/policy-issues/financial-sanctions/faqs/topic/1581.

[7] Crystallex asserts, incorrectly, that the U.S. government "did not dispute that OFAC regulations leave much for the parties and the Court to do to prepare for a sale." Opp'n 16 (citing D.I. 223 at 9-10). Tellingly, Crystallex's citation for this point is its *own* prior briefing. At oral argument, the United States made clear that even if the Court could *issue* an order setting out a future sale process, without a license Crystallex would likely be in violation of U.S. law if it "takes" the "proposed steps" outlined in such an order. Sept. 17, 2020 H'rg Tr., D.I. 226 at 105.

the sale process is vulnerable on appeal given the Supreme Court's repeated admonition that courts owe "deference to what the Executive Branch 'has determined is essential to national security.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1861 (2017); *see also Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1403 (2018); Mot. 17–18. Crystallex contends that "first principles of law" supposedly support the Court's decision. Opp'n 17. But the Order cites no such principles, and Movants are unaware of any legal principle that would require the Court to override the United States' express request not to "authorize steps toward a sale absent an OFAC license, as such a decision could imperil U.S. foreign policy interests[.]" D.I. 220 at 2; D.I. 212 at 9.[8]

Third, as the Court has observed, Delaware law indisputably requires maximizing the value of the PDVH shares. D.I. 234 at 39 ("the whole point of the public, noticed, full and fair competitive sales process required under Delaware law is to maximize the sales price obtained"); 8 Del. C. § 324(a) (requiring that only "[s]o many of the shares" be sold as "as shall be sufficient to satisfy the debt").[9] Crystallex's suggestion that the lack of OFAC authorization will not depress bidding because "a license is only required to close the sale," Opp'n 18, conflicts with OFAC's regulations and guidance. Mot. 18. The uncertainty about whether a license will ever issue will

---

[8] It would be inappropriate for this Court to speculate about potential changes in the position of the United States vis-a-vis the Guaidó regime, Opp'n 17 n.5, because it is the exclusive province of the Executive Branch to recognize a foreign government. *See, e.g.*, *Zivotofsky ex rel. Zivotofsky v. Kerry,* 135 S. Ct. 2076, 2090 (2015). And in all events, "Secretary of State Antony J. Blinken spoke with Venezuelan Interim President Juan Guaidó" just this week to discuss the United States' "efforts to work with likeminded allies, including the European Union …, to … press for a peaceful, democratic transition" and "committed to continued U.S. support." Off. of the Spokesperson, United States Dep't of State, *Secretary Blinken's Call with Venezuelan Interim President Guaido* (Mar. 2, 2021), https://tinyurl.com/y27jbe2. Crystallex's efforts to use publicly filed briefing in proceedings it knows the Maduro regime is monitoring closely to cast doubt on Interim President Guaidó's authority in fact underscores the harm this Court's rulings can have on the Republic and U.S. foreign policy and national security interests.

[9] Crystallex has previously assured this Court that it "shares the goal of maximizing the value of all of PDVH's assets in order to achieve the maximum possible price when selling the PDVH shares to execute on its judgment." D.I. 112 at 38 n.34.

discourage bidders from investing the time and expense necessary to make a meaningful bid. And the idea that bidders can "make a conditional offer to purchase shares" despite OFAC statements to the contrary without facing substantial legal risk defies common sense. *See* Opp'n 18.

> **B.**     ***The January 14 Order Is Fully Appealable.***

Although Crystallex does not dispute that the denial of a Rule 60(b) motion is immediately appealable, it incorrectly contends that the portions of the Order denying the motion to quash and initiating a sale process are not appealable, thus dooming Movants' appeal at the outset. Crystallex's reliance on cases rejecting jurisdiction over interlocutory *pre-judgment* orders denying motions to quash attachments, *see* Opp'n 11, is misplaced. The order on appeal here is a *post*-judgment order. *See Crystallex*, 932 F.3d at 136 (concluding that the 2018 decision was a "final judgment" appealable under § 1291). With respect to post-judgment orders, "the appropriate inquiry is whether the order is more than simply administrative in that it affects rights or creates liabilities not previously resolved by the adjudication on the merits." *Isidor Paiewonsky Assocs., Inc. v. Sharp Props., Inc.*, 998 F.2d 145, 150 (3d Cir. 1993). Here, denial of the motion to quash plainly affects Movants' rights.[10]

The portion of the Order granting Crystallex's motion to initiate a sale process is also appealable because it was "more than merely ministerial." *Id.* It decided an issue so hotly contested that the United States participated—namely, *whether* a sale should proceed at all. Because the Court answered that question in the affirmative, the order is best construed as an "order of sale," which the Third Circuit has held is a "final, appealable order." *United States v. Bogart*, 715 F.

---

[10] *United States ex rel. Mayes v. Dent*, 2021 WL 613780 (4th Cir. Feb. 17, 2021), *see* Opp'n 11–12, is not to the contrary. There, the government could not execute on the assets underlying the supersedeas bond until the court had resolved an ownership dispute involving those assets. *Id.* There are no such lingering issues here.

App'x 161, 165 n.3 (3d Cir. 2017).[11] As the Supreme Court has explained, "when the decree decides the right to the property in contest, and … *directs it to be sold*, … and the complainant is entitled to have such decree carried immediately into execution, the decree must be regarded as a final one to that extent, and authorizes an appeal." *Forgay v. Conrad*, 47 U.S. 201, 204 (1848); *see also Parsons v. Robinson*, 122 U.S. 112, 114 (1887) ("[A] decree of sale in a foreclosure suit which settles all the rights of the parties, and leaves nothing to be done but to make the sale and pay out the proceeds, is a final decree for the purposes of an appeal.").[12]

The sale process portion of the order is also appealable under 28 U.S.C. § 1292(a)(2), which authorizes appeals of orders appointing receivers. The title used for a receiver is irrelevant because "a receiver by any other name, or by no name, is still a receiver." *In re Pressman-Gutman Co., Inc.*, 459 F.3d 383, 393 (3d Cir. 2006); *id.* at 394 (discussing case holding that a "special master was, in reality, a receiver for certain purposes"). Here, the special master's role is to dispose of the debtor's property—a task often performed by receivers. Although the Court has not yet named the special master, the order is appealable because the Court has "decided to appoint a receiver and [is] only waiting to perform the ministerial task of naming the individual subject to the submissions of the parties." *Sriram v. Preferred Income Fund III Ltd. P'ship*, 22 F.3d 498, 501 (2d Cir. 1994).

### C.  *Irreparable Harm and Other Factors Support a Stay Pending Appeal.*

Crystallex barely contests Movants' showing of irreparable harm, other than to make the unsupported assertion that the presence of OFAC sanctions will prevent any harm from occurring. Movants, however, presented uncontroverted evidence that taking the further steps towards a

---

[11] *See also United States v. "A" Mfg. Co.*, 541 F.2d 504, 506 (5th Cir. 1976) (noting that Supreme Court cases "clearly establish the rule that an interlocutory order commanding a sale, and one confirming a sale are appealable").

[12] Unlike *SEC v. Presto Telecommunications, Inc.*, the Order did more than "confirm [a] receiver's authority to sell [a property] in order to pay the fees, costs, and expenses of the receiver." 153 F. App'x 428, 430 (9th Cir. 2005). It *directed that the shares be sold*.

forced sale would cause irreparable harm to the Republic. Crystallex's hair-splitting argument that only the Republic claims irreparable harm is meritless. Movants have identified irreparable harm that the Republic will face if the Order is not stayed pending appeal, and the balance of the factors, including the public interest, weigh heavily in favor of a stay. That is sufficient.

Given that OFAC regulations bar any sale at this time, Crystallex cannot show it will be harmed by a stay. Crystallex also fails to show that a stay is not in the public interest, given the national security and foreign policy interests of the United States. The only public interest argument that Crystallex raises—the public's interest in seeing judgments enforced—does not outweigh the specific national security and foreign policy interests the United States has asserted.

## III.    A Stay is Also Warranted Under Rule 62(f).

Although an appellant seeking a stay under Delaware law must provide sufficient security and meet the four-factor test in *Kirpat, Inc. v. Del. Alcoholic Beverage Control Comm'n*, 741 A.2d 356, 357 (Del. 1998), that test is quite flexible. Under *Kirpat*, the court should "balance all of the equities involved in the case together," and where, as here, the equitable "factors strongly favor interim relief," a court "may exercise its discretion to reach an equitable resolution by granting a stay if the petitioner has presented a serious legal question." *Id.* at 358. There is no question that Movants have raised serious legal questions here. Crystallex contends that the attachment does not suffice under Delaware law, but it does not even attempt to explain why the result in *Mergenthaler v. Triumph Mortgage Corp.*, 2018 WL 7021955 (Del. Super. Ct. Dec. 20, 2018), would not apply here. Because the PDVH shares "constitute the entirety of the [assets] to which either side will be entitled under the Challenged Writ," the writ itself is sufficient security. *Id.* at *3. Crystallex cites cases in which the plaintiff had a "money judgment" against the appellant, Opp'n 20, but Crystallex has no such judgment against PDVSA, PDVH, or CITGO. Nor are the shares of PDVH "uncertain, encumbered, or otherwise of lesser value than a full supersedeas bond." Opp'n 20.

Instead, the attached shares are perfect security for Crystallex's interest in the attached shares.

March 5, 2021

Respectfully submitted,

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Nathan P. Eimer
Lisa S. Meyer
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com

*/s/ Kenneth J. Nachbar*
Kenneth J. Nachbar (#2067)
Alexandra M. Cumings (#6146)
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@mnat.com
ACumings@mnat.com

*Attorneys for PDV Holding, Inc., and
CITGO Petroleum Corporation*

OF COUNSEL:

Joseph D. Pizzurro
Julia B. Mosse
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
jmosse@curtis.com
kmeehan@curtis.com
jperla@curtis.com

HEYMAN ENERIO GATTUSO & HIRZEL LLP

*/s/ Samuel Taylor Hirzel, II*
Samuel Taylor Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law

*Attorney for Petróleos de Venezuela, S.A.*

OF COUNSEL:

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
Brendan B. Gants
Jacobus P. van der Ven
Munger, Tolles & Olson LLP
601 Massachusetts Avenue NW
Suite 500 E

ABRAMS & BAYLISS LLP

*/s/ A. Thompson Bayliss*
A. Thompson Bayliss (#4379)
Stephen C. Childs (#6711)
20 Montchanin Road, Suite 200
Wilmington, DE 19807
(302) 778-1000
bayliss@abramsbayliss.com
childs@abramsbayliss.com

11

Washington, D.C. 20001
(202) 220-1100                                    *Attorneys for Bolivarian Republic of Venezuela*
Donald.Verrilli@mto.com

George M. Garvey
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com