IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION, | : |
| Plaintiff, | : |
| v. | : Misc. No. 17-151-LPS |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | : |
| Defendant. | : |

## MEMORANDUM ORDER

At Wilmington, this **19th** day of **March, 2021**:

WHEREAS, on January 14, 2021, the Court issued an opinion and a corresponding order (D.I. 234, 235) denying relief sought by the Bolivarian Republic of Venezuela, Petróleos de Venezuela, S.A. ("PDVSA"), PDV Holding, Inc. ("PDVH"), and CITGO Petroleum Corporation (collectively, the "Venezuela parties");

WHEREAS, the Venezuela parties filed notices of appeal regarding those rulings (D.I. 239, 240, 241) and moved to stay this case pending resolution of proceedings before the U.S. Court of Appeals for the Third Circuit (D.I. 242);

WHEREAS, the Court heard oral argument on the stay motion on March 16, 2021 and has considered the parties' briefs and related filings (D.I. 243, 250, 253);

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Venezuela parties' motion to stay (D.I. 242) is DENIED.

1

The Court's Order is consistent with the following bench ruling[1] announced at the hearing on March 16, 2021 (D.I. 256 at 82-96):

> [H]aving undertaken the necessary analysis and for the reasons I am going to try to explain, my ruling on the motion for a stay pending appeal, which is a motion filed by Venezuela, PDVSA, and PDVH, and CITGO, who I will refer to as "the Venezuela parties," the motion for a stay is denied.
>
> As an initial matter, I think it's important to understand that this is not a traditional motion to stay execution. Execution cannot happen during the pendency of this appeal unless and until a purchaser of the PDVH shares is identified and a special license is obtained from OFAC, unless, of course, the OFAC licensing regime changes materially. So the appeal may well be concluded before any of those things can happen or come close to happening, but in any event, if any of those things do happen, if an OFAC license is granted, if we get very close to being ready to execute this sale, defendants can file a motion for stay at that point, if there is even any opposition at that point. But the motion in front of me today for a stay not really of execution but of all prefatory steps leading to execution, that stay is not warranted and is . . . denied.
>
> The Venezuela parties are not entitled to a stay under Federal Rule of Civil Procedure 62(b) or under Federal Rule of Civil Procedure 62(f). We didn't talk too much today about 62(f). That turns on Delaware law. But I think the parties are in agreement that if, for the reasons as you will see, I don't think the . . . stay, either as a mandatory stay or discretionary stay, is warranted. That same analysis leads to the same conclusion for . . . 62(f), and the motion is denied under 62(f) as well.
>
> Starting on 62(b), I do agree, and I don't think there's any dispute at this point, that under 62(b) a party seeking a stay pending appeal can potentially obtain it with something other than a bond. But that something other than a bond, referred to in the rule as other security, it must be adequate . . . . For instance, the way I put it in the *FEC vs. O'Donnell* case,[2] 2017 WL 2200911 at *2, a decision from this court in 2017: "In order for other security to be appropriate, the Court must be convinced that the judgment is adequately secured."
>
> I recognize the rule changed in 2018, but I think it's been conceded by the Venezuela parties, the moving parties, that the other security has to be adequate in order for a mandatory 62(b) stay to be available.
>
> There is a dispute that at least arose today about whether the other security has to be fully equivalent to a bond. I don't need to resolve that dispute because I think,

---

[1] The Court adopts the full bench ruling. For the sake of clarity and readability, the Court has modified some words and formatting without marking every deviation from the transcript.

[2] *Fed. Election Comm'n v. O'Donnell*, 2017 WL 2200911 (D. Del. May 19, 2017).

again, it's agreed that it must at least be adequate, even if not fully equivalent. And for reasons I'm going to explain, I find that the writ of attachment at this stage in this case [is] not adequate security for Crystallex.

That decision does not turn on the value of the PDVH shares, which I recognize [is] estimated, at least to exceed the amount of the judgment still owed to Crystallex. That's a factor, but that is not a dispositive factor.

In my view, the writ of attachment that the Court has issued [is] not, in the context of this long-litigated dispute, at this point, in this case, sufficient security . . . largely because the Venezuela parties have vigorously litigated the validity of the writ and continue to do so. The same would not be true of a bond, of course. And the ongoing attacks, at least at this point, in my view, render the writ not at all sufficient security for Crystallex being paid what it is owed.

The Venezuela parties . . . analogize Crystallex to a party that [is] a judgment creditor with a lien on real property, but I don't think that is quite right. It seems, instead, that . . . at best, Crystallex is in a position analogous to a judgment creditor with a lien on real property where the judgment debtor has attacked and is still attacking the validity of that very lien. For instance, it may be, in that analogous case, the judgment debtor was disputing if they own the property, the real property to which the lien is attached. I'm not sure that that would be adequate security in that case, but more importantly I don't think that the writ here [is] adequate security.

Also, contrary to the Venezuela parties' argument, . . . Crystallex does not need protection only against the risk that the shares will be sold or transferred before the appeal is concluded. If all progress in this case is going to be stopped, Crystallex is entitled to security against the risk that its judgment against Venezuela will not be paid. A judgment that, as we all know, multiple federal courts have repeatedly ordered Venezuela to pay.

So because the writ [is] not adequate other security to protect Crystallex during the time of the stay sought, I am denying the motion under 62(b).

I further deny the request for a discretionary stay because Venezuela has not shown that the four factors the Court must look to in assessing a request for discretionary stay favor that stay.

The [articulation of the] four factors . . . [is] not disputed.[3]

The first factor: The Venezuela parties, in my view, have not shown a reasonable chance of success on the merits of the issues they intend to appeal in the current Third Circuit appeal.

---

[3] *See Nken v. Holder*, 556 U.S. 418 (2009).

... [I]n saying that, I only need to consider the motion to quash issues as the moving parties agreed today [because] they are the only ones pertinent to the analysis here for purposes of the discretionary stay request.

The first reason that the Venezuela parties have not met their burden is that they have not shown that the Third Circuit is even going to hear this appeal. That is, they have not shown that appellate jurisdiction exists at this time to appeal the orders that they are in the process of attempting to appeal. It seems to me that my denial of the Venezuela parties' motion to quash is not appealable at this stage. Instead, consistent with the *Petroleos Mexicanos*[4] decision that I mentioned during the argument, 377 F.3d, at 329, a Third Circuit decision from 2004, and then the earlier *McCreary Tire* decision[5] from the Third Circuit, in 1974: "An order refusing to vacate an attachment is interlocutory and unappealable."

The Venezuela parties attempt to distinguish between prejudgment and postjudgment cases, but I do not find that distinction persuasive. The lack of persuasiveness of that distinction, I think, is recognized and supported by the *Dent* decision[6] of the Fourth Circuit, which was mentioned during the argument, a decision from February 17th of this year.

And, ultimately, I think, as Crystallex has explained, what matters is, do further acts need to be taken? And here, yes, I think indisputably lots of further acts need to be taken. And so I don't believe that there is a final order from which an appeal can be taken.

I have looked at the *Sharp Properties* decision[7] from the Third Circuit that the moving parties rely on for the contrary proposition, and I don't think that it changes the analysis that I have given at all. Notably, I did not see any single case that the Venezuela parties point to in which the denial of a motion to quash a writ of attachment was held to be final and appealable.

Looking at the interim sales procedures order that I also issued in January, I believe that order is not final and also not appealable under Section 1291, 28 U.S.C., 1291. As support, I would cite the *Ortiz vs. Dodge* case[8] of the Third Circuit in 1997. . . . We are starting, but not nearly completing, the sales process.

---

[4] *Petroleos Mexicanos Refinacion v. M/T King A*, 377 F.3d 329 (3d Cir. 2004).

[5] *McCreary Tire & Rubber Co. v. CEAT S.p.A.*, 501 F.2d 1032 (3d Cir. 1974).

[6] *United States v. Dent*, 2021 WL 613780 (4th Cir. Feb. 17, 2021).

[7] *Isidor Paiewonsky Assocs., Inc. v. Sharp Props., Inc.*, 998 F.2d 145 (3d Cir. 1993).

[8] *Ortiz v. Dodge*, 126 F.3d 545 (3d Cir. 1997); *see also SEC v. Presto Telecomms., Inc.*, 153 F. App'x 428 (9th Cir. 2005).

There is a substantial amount work to be done . . . . I think we only began to even touch on how much there is to be done between now and the entry of a final sales procedure order. Because there is so much work to do, that is a key reason why I am not staying the case and also why I do still intend to appoint the Special Master, who I haven't even selected yet; yet another illustration of how nonfinal the order regarding the sales procedure is.

I don't believe that the sales procedure order can be fairly characterized as an order appointing a receiver which is at least an argument suggested in the briefing. That would be a hook for appellate jurisdiction under 28 U.S.C., Section 1292(a)(2), but receivers typically take possession of the property and manage it. That is not at all the role of the contemplated Special Master that I am appointing. . . . He or she will have a narrower role to help me devise the sales procedures and comply with Delaware law to make our best reasonable effort to maximize the value of the shares of PDVH that will be sold.

And so I do contemplate entering . . . a final sales procedure order, after and in consultation with the Special Master. The timing and, of course, the content of that order remain to be determined. . . .

The issue for today is, I am not persuaded that this appeal is even going to be heard by the Third Circuit, and so the defendants have not met their burden to show a reasonable chance of success on the merits.

In addition to that, I continue to think I got the decisions right in the January opinion. And on the merits, I don't think the Venezuela parties have shown a reasonable . . . chance of persuading the Court of Appeals otherwise. I don't suggest that it's a frivolous appeal on the merits. . . .

But . . . I just am not persuaded myself that there is a reasonable chance that the Venezuela parties will prevail on appeal. That is, of course, a decision that the Court of Appeals and the Court of Appeals alone can make if [it] reach[es] the merits.

But, for example, whether you characterize it as collateral estoppel or law of the case or simply a timing bar in effect, given the way this case is litigated, the writ cannot be quashed at this point based on Delaware law arguments.

Further, my orders, I don't think, violate any OFAC regulations and do not, I believe, require any individual or entities to take any prefatory steps which OFAC would have lawful authority to deem to be a violation of any sanctions. It's unclear at this point to what extent the OFAC sanctions are binding on this Court. And notably, the government previously told the Court that it can do whatever it wants. That was, I think, in a transcript, but you can find it at D.I. 226 at page 105.

Further, I believe I accorded proper weight and deference to the U.S. statement of interest. I certainly did my very best to do so. I carefully considered what the U.S.

5

told me about the impact my decision might have on foreign policy and national security interests, and I included all of those concerns, [in] the balance that I had to undertake, leading to the January opinion. And I concluded ... that the OFAC license process itself provided a sufficient and proper venue for those interests to be further taken into account. Not to say I didn't take them into account. I did myself. And they, as I think the U.S. also explained to me, those interests will very much presumably factor into OFAC's own process.

Nor, in my view, does the order from January violate Delaware law's directive to conduct a sale process with the aim of maximizing the value of the asset being sold. Delaware law does not guarantee that the maximum price be the result. It does require us to take reasonable steps to try to get the maximum price under the circumstances under which the sale is being conducted, and we will do that. Delaware law also does not afford the judgment creditor the power to dictate the timing and method of the sale.

The Venezuela parties were free to pay the debt at any time and completely avoid a sale at an earlier stage, or they were free to conduct the sale themselves; or at a minimum, they were free to ask OFAC for a license to conduct the sale themselves. But they have no right under Delaware or federal law to tell the U.S. court system what it can do with the attached property. And my analysis on all these issues I think is fully consistent with what Delaware law and the Delaware Supreme Court set out, for instance, in the *Deibler* decision,[9] 652 A.2d 557, a Delaware Supreme Court decision in 1995.

On top of all that, as Crystallex correctly observes, and I'm sure this is not disputed, the Court of Appeals can affirm this Court's January orders on any ground in the record.

So for all of these reasons, in my view the Venezuela parties have failed to meet their burden on the likelihood of success or a reasonable chance of success prong ... for a discretionary stay pending appeal.

Turning to the other factors more quickly.

The second factor. In my view, the Venezuela parties have also failed to show that they will be irreparably harmed by this case moving forward towards the sale that the Third Circuit remanded this case to me back in 2019 to proceed toward. The Third Circuit lifted its stay in October 2019, which I think is more than 16 months ago, and, again, they remanded to me to conduct this sale.

Again, it's worth noting in the context of irreparable harm, and the Venezuela parties' deficient showing on this prong, that no sale of the property will close unless and until there is an OFAC license. So any harm from actual execution does

---

[9] *Deibler v. Atl. Props. Grp., Inc.*, 652 A.2d 553 (Del. 1995).

not weigh into the calculation. Execution is effectively stayed as of today. So we're only talking about whether there is irreparable harm from the prefatory steps towards execution that will proceed in parallel with the Third Circuit appeal. There is lots of work left to do, and I believe we need to get to work doing it.

But fundamentally, the Venezuela parties have not persuaded me that the steps we will be taking will have irreparably harmed the Venezuela parties. Or, for that matter, and I have considered [this] both at prong 2 and prong 4, again, the interest of the United States . . . . None of that adds up to irreparable harm, in my view, as a result of the steps we're going to take during the pendency of the Third Circuit appeal.

On the third prong, the harm to Crystallex from effectively freezing this case where it is while we wait to see the outcome of the Venezuela parties' latest appeal does outweigh the harm, if any, that the Venezuela parties will suffer from moving forward as I have ordered to be done. We all know Crystallex was injured, I think it's now 13 years ago, and [it] has spent the ensuing years in multiple courts, and no doubt spent millions of dollars trying to recover what was wrongfully taken from it.

I believe this sale will have to be held someday, and I believe a lot of work has to be done between now and that day. If we don't get moving on doing that work now, while the Venezuela parties are pressing their appeal, the result is likely to be nothing more than more delay and more unwarranted harm to Crystallex.

And finally, the fourth factor, the public interest. In my view, in this case at this stage, [it] continues to favor enforcement of Crystallex's judgment which requires that the work of proceeding toward a sale of the PDVH shares be completed without further unnecessary delay.

I, of course, recognize other interests are implicated; and here, again, I have considered the statement of interest still in the record from the United States. But I continue to believe that, as I explained in further detail in the January opinion, I think the interest[s] stated by the United States are protected in the OFAC process. I have given them appropriate weight here. But the public also has an interest at this time in this case that the judicial system do its job and enforce the judgment that has been recognized and confirmed repeatedly. And so this factor, too, weighs against the stay.

So the stay motion is denied.

_____
HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE