

Travis S. Hunter
302-651-7564
hunter@rlf.com

May 19, 2021

**VIA ELECTRONIC FILING**

The Honorable Leonard P. Stark
U.S. District Court for the District of Delaware
844 North King Street
Wilmington, Delaware 19801

    Re:  *Crystallex International Corporation v. Bolivarian Republic of Venezuela et al.*,
           C.A. No. 17-mc-151-LPS

Dear Chief Judge Stark:

Pursuant to this Court's May 11, 2021 order, D.I. 264, Crystallex submits this letter brief to raise three narrow objections of the Proposed Order Regarding Special Master submitted by the Special Master on May 14, 2021, D.I. 265-1 (the "Proposed Order"). As the Special Master acknowledges, the parties largely agree on the terms of the Special Master's appointment, with limited exceptions. *See* D.I. 260, at 1. Crystallex nonetheless submits that three discrete amendments to the Proposed Order will facilitate efficient progress towards fulfillment of the Special Master's mandate.

Objection 1: Standard of Review for Factual Findings

Crystallex objects to the Proposed Order's provision that "[t]he Court reviews factual issues for clear error." Proposed Order at 6. Federal Rule of Civil Procedure 53(f)(3) provides that "[t]he court must decide de novo all objections to findings of fact made or recommended by a master, unless the parties, with the court's approval, stipulate" to a different standard of review. Because Crystallex believes this Court should continue to have final say over all fact findings in this litigation, Crystallex advised the Special Master on May 13, 2021, that Crystallex does not consent to clear error review of the Special Master's factual findings. Absent Crystallex's consent, Rule 53(f)(3)'s plain text requires that this Court review factual findings *de novo*.

Objection 2: OFAC Language

As stated in Crystallex's May 10, 2021 letter, D.I. 262, at 1, the Bolivarian Republic of Venezuela; Petróleos de Venezuela, S.A.; PDV Holding; and CITGO Petroleum (collectively, "Venezuela") have taken the position that in order for the Special Master to carry out his mandate of designing and implementing a process for the sale of PDVH shares, the parties—and perhaps the Special Master—will need to obtain "guidance" or a license from the U.S. Treasury's Office of Foreign Asset Control ("OFAC") at practically every step of the process. In papers filed in the Third Circuit this morning, Venezuela again asserted that "every consequential" step to be taken requires OFAC approval. 3d Cir. No. 21-1276, Doc. 38, at 3. To address these concerns and avoid any

The Honorable Leonard P. Stark
May 19, 2021
Page 2

lingering doubt regarding the need for OFAC approval with respect to the tasks contemplated by this Court's previous Order, Crystallex requested that the Special Master order include the following paragraph confirming that the Special Master is acting as an "arm of the Court":

> **Arm of the Court**. The Court has found that "the most reasonable and appropriate course of action, in light of the totality of the circumstances, is to set up sales procedures and then to follow them to the maximum extent that can be accomplished without a specific license from OFAC." D.I. 234, at 32-33. To assist the Court in this task, the Special Master has been appointed to "to oversee the design and implementation of detailed sales procedures" for shares of PDVH. D.I. 258, at 1-2. The Court finds that the Special Master, in effecting his court-appointed duties, is acting pursuant to Federal Rule of Civil Procedure 53 and thus as an arm of the Court. Accordingly, the Court finds that any payments to the Special Master (and by him to any advisers engaged) pursuant to this Order relate to the official business of the United States Courts, and accordingly to the official business of the U.S. Government, for sanctions purposes. *See* 31 C.F.R. § 591.509 ("All transactions that are for the conduct of the official business of the United States Government by employees, grantees, or contractors thereof are authorized.")

Crystallex objects to the omission of this language, which is correct and would facilitate the efficient exercise of the Special Master's authority by allaying any purported concerns regarding the lawfulness of his activities, including payment of his fees. It would also prevent Venezuela from using OFAC as an excuse to refrain indefinitely from paying the Special Master—under the guise of awaiting OFAC "guidance"—until all funding provided by Crystallex and ConocoPhillips is exhausted, in an attempt to deprive the Special Master of funds necessary to his work.

It is indisputable that the Special Master and his agents are exercising authority delegated by the Court to perform a judicial function. Indeed, if that were not so, it is difficult to see how the Special Master could have judicial immunity. Because the Special Master is an arm of Court, his activities, and those of his agents, qualify as government business under an existing OFAC general license, 31 C.F.R. § 591.509. Just as Venezuela can pay appeal fees and other Court costs without fear of violating the OFAC sanctions, the parties can pay the fees incurred by the Special Master in his performance of a judicial function.

This Court already resolved these issues in ordering the sale process to go forward. For example, at the March 17, 2021 hearing, the Court found as follows:

> Further, my orders, I don't think, violate any OFAC regulations and do not, I believe, require any individual or entities to take any prefatory steps which OFAC would have lawful authority to deem to be a violation of any sanctions. It's unclear at this point to what extent the OFAC sanctions are binding on this Court. And notably, the government previously told the Court that it can do whatever it wants. That was, I think, in a transcript, but you can find it at D.I. 226 at page 105.

The Honorable Leonard P. Stark
May 19, 2021
Page 3

>       D.I. 257, at 5.

The Court's finding mirrored the Government's statements at the September 17, 2020 hearing:

> MR. DeMOTT: Well, your Honor, I think OFAC has tried to draw a distinction in FAQs 808 and 809 between … whether it is imposing limitation on what Your Honor can do and what Crystallex can do. So the United States hasn't taken the position that Your Honor is blocked from moving forward. You know, the Court can do whatever it wants. D.I. 226, at 105:1-7.

Clarifying that the Special Master is functioning as an arm of the Court for purposes of OFAC sanctions would ensure the efficient resolution of the tasks this Court has entrusted to the Special Master. Venezuela has already sought to delay the Special Master's progress by including language in the Proposed Order suggesting that OFAC "guidance" may be required at various junctures. This was simply an attempt by Venezuela to inject into the Special Master process the same objections it unsuccessfully advanced in its effort to forestall the entry of the sale order and the appointment of the Special Master. Although the Special Master rightly rejected Venezuela's proposed language, given Venezuela's well-documented history of using every conceivable procedural maneuver to hinder collection of the judgment, it is likely that Venezuela will attempt similar obstructions unless this Court clarifies that further OFAC guidance is not required.

Objection 3: Intervenor Bondholders Participation

Crystallex objects to the full participation of Intervenors Blackrock Financial Management, its affiliates, and Contrarian Capital Management (the "Bondholders") in the Special Master's development of a Proposed Sales Procedures Order without contributing to the expenses of the Special Master and his Advisors. The Order defines "Parties" to include the Bondholders and grants all "Parties" the same rights to comment on the Proposed Sales Procedures Order and object to any finding, report, recommendation or plan by the Special Master. Although the Special Master describes these rights as "limited," D.I. 265, at 1, the only apparent limitation on the Bondholders' rights concerns proceedings with respect to execution *after* the Court adopts a Final Sales Procedures Order.

The Special Master should be permitted to move the sale process forward as expeditiously as practicable without undue interference by rival creditors who, unlike Crystallex, are not the beneficiaries of that Order. As the proposed order is currently structured, however, the Bondholders have every incentive to complicate the sales process and drive up costs for the other parties without incurring any portion of those costs themselves. If the Bondholders wish to participate on comparable terms as other parties, they should be required to pay a proportionate share.

As the Court is fully aware, Crystallex has spent many years and countless resources

seeking payment on a fully adjudicated debt by Venezuela that the Republic refuses obstinately to pay. This Court entered the sale order to right that wrong alone. If the Bondholders ultimately obtain enforceable rights against the shares of PDVH, they could potentially enforce those rights only from whatever residue remains from the execution *after* Crystallex's judgment and costs have been fully satisfied and paid. *But they have no such rights at present.* Their current litigation against PDVSA relates only to the shares of CITGO Holding. They thus lack any legal right to structure the sale process, or participate in an execution sale being held solely to satisfy Venezuela's debt to Crystallex.

Nor does the Bondholders' status as intervenors entitle them to participate as they may wish in aspects of the litigation that do not directly concern them. The Advisory Notes to Federal Rule of Civil Procedure 24, which governs intervention, make clear that "[a]n intervention of right ... may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of proceedings." Here, the Bondholders' asserted interests have nothing to do with the limited purposes for which they sought intervention in this Court and those interests are adequately protected without any need for them to participate before the Special Master.

The Bondholders moved to intervene in this Court during PDVSA's Third Circuit appeal challenging issuance of the writ of attachment. D.I. 105 (Aug. 31, 2018). Asserting an "interest … in seeking to prevent attachment and execution of the PDVH shares." *id*. at 7, the Bondholders sought to intervene so they could seek to stay any sale of the attached shares pending appeal, *id.* at 1. The motion assured this Court that intervention would not prejudice Crystallex because "the primary issue [the Bondholders were] concerned with [was] stopping a potential sale of PDVH shares" pending appeal, and regardless of a stay, "Crystallex's interest in PDVH [was] secure." *Id.* at 5.

Before this Court could decide the motion to intervene, the Third Circuit stayed district court proceedings pending appeal. D.I. 129 (Nov. 23, 2018). The Bondholders participated in the appeal as *amici*, challenging this Court's rulings. The Third Circuit rejected the Bondholder's arguments and affirmed, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 132-33, 143-44 (3d Cir. 2019), then lifted its stay, D.I. 136 (Oct. 1, 2019). This Court nonetheless continued a stay while PDVSA and Venezuela sought certiorari. D.I. 154 (Dec. 12, 2019).

In the same order continuing the stay, the Court granted the Bondholders' longstanding motion to intervene based solely on their asserted interest in preventing a sale of PDVH. The Court found that the Bondholders' "interest in collecting money" from PDVSA was implicated only in one narrow sense: "[I]f Crystallex collects $1.2 billion from the sale of PDVH shares, those assets will not be available to satisfy debts owed to others." D.I. 154, at 12. Although the Court evidently believed that interest remained active (perhaps because of the pending cert. petition), the Bondholders largely exited the litigation for the next 18 months. Indeed, four days after this Court granted

The Honorable Leonard P. Stark
May 19, 2021
Page 5

the Bondholders' motion to intervene, it granted their counsel's request for leave to withdraw, D.I. 155 (Dec. 16, 2019), because the "limited purpose of the[ir] representation of the Bondholders"—"to intervene and to seek a stay of execution pending appeal"—was "complete[d]," D.I. 152, at 1-2. New counsel eventually appeared in January 2020, D.I. 163, but the Bondholders did not participate in any filing until they challenged the Special Master's initial proposed order more than a year later, D.I. 261 (May 9, 2021).

Now that the Supreme Court has denied certiorari, and this Court has denied Venezuela's postjudgment motions and made clear its intent to proceed towards a judicial sale, D.I. 235 (Jan. 14, 2021), the limited purpose of the Bondholder's intervention—to prevent a sale—has been definitively rejected, and obstructing progress towards a sale is no longer a valid objective. The Bondholders accordingly shift to an entirely new interest in protecting the priority of their interest in CITGO Holdings. They ostensibly seek assurances that any sales procedure will provide for "full disclosure" of "the security interest protecting the 2020 Notes." But the Bondholders' asserted interest in PDVH's subsidiary does not give them a legal right to participate *in the design of the sale of PDVH*. And any security interests are already protected by the terms of the 2020 notes. Further, those terms are already well publicized, and it is hard to conceive of how any sale could proceed without disclosure of PDVH's assets and liabilities. The Bondholders identify no other way in which sale process could conceivably prejudice their interests. Their speculative concerns do not remotely warrant further complicating the proceedings by adding to the sale process a party not directly concerned by it, but with untoward incentives to delay that process and to multiply costs that it will not bear or even share.

The Bondholders have admitted in correspondence with the Special Master that they would prefer "receding from participation … before the Special Master" to paying their fair share of these proceedings. That admission confirms that their interest is not only weak but also fundamentally antagonistic to the purpose of these proceedings. The Parties' willingness to pay a share of the cost of these proceeding is a measure of their interest in this Court-ordered process. Having failed to persuade any court to prevent a sale of the PDVH shares, the Bondholders should not be permitted to continue to participate in the planning process in a disruptive capacity. At the very least, if the Bondholders wish to continue participating in this process and shaping the Special Master's orders and recommendations on equal terms with the other Parties, the Bondholders should be required to pay a proportionate share of the cost of these proceedings. If they are unwilling to do so, then this Court should accept the Bondholders' offer to recede from participating in this process.

Respectfully submitted,

*/s/ Travis S. Hunter*

Travis S. Hunter (#5350)

cc: All Counsel of Record