# EXHIBIT 1

## AMENDED AND RESTATED CONTRACT OF TRANSACTION AND SETTLEMENT

This Amended and Restated Contract of Transaction and Settlement (this "Agreement") is made and entered into as of the 10th day of September 2018 exclusively by and among the Bolivarian Republic of Venezuela ("Venezuela") and Crystallex International Corporation ("Crystallex"). This Agreement constitutes an amendment and restatement of the Contract of Transaction and Settlement, dated as of November 15, 2017, entered into among the parties hereto (the "Original Settlement Agreement").

### RECITALS

WHEREAS, on April 4, 2016, an arbitral tribunal rendered a final award in an arbitration between Crystallex and Venezuela, pursuant to the Arbitration (Additional Facility) Rules of the International Centre for Settlement of Investment Disputes, and the July 1, 1996 Agreement between the Government of Canada and the Government of the Republic of Venezuela for the Promotion and Protection of Investments, ICSID Case No. ARB(AF)/11/2 (the "Award"). The Award provided that Venezuela owed Crystallex U.S. $1.202 billion, plus interest.

WHEREAS, on April 7, 2017, the United States District Court for the District of Columbia issued a judgment confirming the Award in an action styled *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, C.A. No. 16-0661 (RC) (the "DC Judgment").

WHEREAS, the parties hereto have previously entered into the Original Settlement Agreement, which was subsequently modified to clarify the intentions of the parties.

WHEREAS, Venezuela made several payments for a total amount of U.S. $74,638,998.43.

WHEREAS, on August 9, 2018, the United States District Court for the District of Delaware issued an order authorizing the attachment of the shares of PDV Holding Inc. (the "Writ of Attachment") with respect to the enforcement of the DC Judgment in an action styled *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, C.A. No. 17-151-LPS (D. Del.) (the "Delaware Order"), and the Writ of Attachment was served on August 24, 2018.

WHEREAS, the parties hereto consider that it is in their best interest and mutual benefit to amend and restate the Original Settlement Agreement to provide for the terms and conditions of a temporary stay of the Writ of Attachment and the DC Judgment as well as for a potential revised final settlement with respect to the payment of the Award, and to that end are entering into this Agreement.

### AGREEMENT

NOW THEREFORE, in exchange for the mutual promises made herein, and for good and sufficient consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. **Initial Payment.** On the date hereof, as a condition precedent to the effectiveness of the provisions of this Agreement, Venezuela shall deliver (or cause to be delivered) to




Crystallex (or its designee) cash in U.S. dollars in immediately available funds and/or Liquid Securities (as defined below) in an amount, in the case of cash, or with a Market Value (as defined below) in the case of Liquid Securities of at least U.S. $425,000,000 (the "Initial Payment") in accordance with the payment instructions set forth on Annex A hereto or such other payment instructions specified in writing (including electronic communication) from time to time by Crystallex in its sole discretion, which amount shall be applied to the outstanding amount of the Award. With respect to any Liquid Securities delivered as part of such payment, such delivery shall be deemed to be applied to the outstanding amount of the Award in an amount equal to the Market Value of such securities, regardless of whether the ultimate proceeds or realization in respect of such securities is less than or greater than such Market Value; *provided* that (x) with respect to any Liquid Securities sold by Crystallex prior to the date that is six months after the Initial Payment is made, the amount of the Initial Payment shall be deemed to be increased or reduced, as applicable, by an amount equal to the Proceeds Adjustment Factor (as defined below) and (y) any such sale by Crystallex during such six-month period shall be conducted in a commercially reasonable manner and Crystallex shall provide to Venezuela commercially reasonable evidence of the relevant sales and amounts and pricing for the same. As used herein (i) "Liquid Securities" means public debt securities in U.S. dollars freely tradeable in the United States and subject to publicly available pricing quotations; (ii) "Market Value", with respect to any Liquid Securities, means the volume weighted average price of such Liquid Securities over the 30-trading-day period ending immediately prior to the date such Liquid Securities are delivered pursuant to the terms of this Agreement or, if, in the reasonable judgment of Crystallex, such volume weighted average price is not available or sufficient liquidity does not exist for the such volume weighted average price to be a commercially reasonable measure of the current market value of the Liquid Securities, such market value as of such date as is determined in a commercially reasonable manner by Crystallex; and (iii) "Proceeds Adjustment Factor" means the amount by which the aggregate sale proceeds received by Crystallex for any Liquid Securities delivered as part of the Initial Payment (such amount, the "Liquid Securities Proceeds Amount") exceeds or is less than the Market Value of such Liquid Securities determined at the time of such delivery, with any excess to be deemed to increase the amount of the Initial Payment (and decrease the Deferred Settlement Amount (as defined below) accordingly) and any shortfall to be deemed to reduce to the amount of the Initial Payment (and increase the Deferred Settlement Amount accordingly). It is agreed that Crystallex will not apply or liquidate any cash or Liquid Securities delivered in accordance with the Initial Payment, until the Temporary Stay Period, as defined in Section 2 of this Agreement, is commenced. In the event that the Temporary Stay Period is not commenced, Crystallex will return the cash or Liquid Securities delivered in accordance with the Initial Payment.

2. **Temporary Stay of Execution Proceedings.** Subject to receipt of the Initial Payment as provided above, and subject to the terms of Section 5 below, Crystallex shall suspend all affirmative efforts to execute upon the Writ of Attachment, and any other efforts to execute upon or otherwise seek to enforce the DC Judgment, from the date of this Agreement until January 10th, 2019 (the date 120 days after the date hereof) (such period, the "Temporary Stay Period"). Such suspension shall not require Crystallex to take any steps to remove or lift the Writ of Attachment. The parties agree that no party shall take any step to execute upon or disturb the Writ of Attachment during the Temporary Stay Period. For the avoidance of doubt, Venezuela (including PDVSA and its subsidiaries) agrees to take all necessary steps to stay its appeal without prejudice of the Delaware Order during the Temporary Stay Period.



3. **Final Settlement Requirements**. Prior to the end of the Temporary Stay Period, Venezuela shall satisfy the following requirements (the "Final Settlement Requirements"):

    a. Venezuela shall provide to Crystallex first-priority, valid, enforceable and perfected liens on collateral which shall constitute Liquid Securities (unless Crystallex and Venezuela agree otherwise, each in their sole discretion, and in writing) and which shall have a Market Value as of the Final Settlement Effective Date (or, if Crystallex accepts collateral other than Liquid Securities in its sole discretion, the orderly liquidation value thereof as of the Final Settlement Effective Date as determined in a manner acceptable to Crystallex) of 120% of the Deferred Settlement Amount (as defined below) ("Acceptable Collateral"), pursuant to collateral documentation satisfactory to Crystallex in its commercially reasonable discretion that is substantially customary for an international secured indebtedness transaction similar to the transactions contemplated hereby that is secured by such type(s) of collateral, and take all reasonable and appropriate actions to ensure the validity, enforceability, perfection and priority of such collateral interest, including the holding of such Liquid Securities in an account in the name of or otherwise under the control of Crystallex or its designee; and

    b. Venezuela will execute and deliver a note (the "Settlement Note"), together with the related documentation of secured indebtedness (together with the Settlement Note and the related collateral documentation described in clause (a) above, the "Final Settlement Documentation"), which will evidence and govern its obligations and the obligations of its applicable affiliates with respect to the payment of the remaining balance of the Award and related guarantees. The Final Settlement Documentation will contain the terms and conditions described in Annex B hereto and, otherwise, must be in form and substance satisfactory to Crystallex in its commercially reasonable judgment.

Notwithstanding the foregoing, on or prior to the date that is 120 days after the date hereof (the "Interim Deadline"), if the requirements of clauses (a) and (b) of this Section 3 have not been satisfied in full on or prior to such date, Venezuela shall nonetheless execute and deliver all applicable Final Settlement Documentation, which shall identify the Acceptable Collateral to be provided, and which shall be effective and binding, but the Acceptable Collateral to be delivered under the Final Settlement Documentation may be delivered (and the other requirements of clause (a) above may be satisfied) at any time prior to the end of the Temporary Stay Period. Upon the execution and delivery of the Final Settlement Documentation, the remaining amount owing by Venezuela in respect of the Award shall be deemed to be an amount equal to U.S. $814,632,217.00, reduced or increased by any Proceeds Adjustment Factor if applicable as provided above (and less any additional amounts paid by or on behalf of the Republic to Crystallex in respect of the Award after the date of this Agreement other than the Initial Payment) (such amount, as reduced or increased if applicable, the "Deferred Settlement Amount"), and shall be payable in installments as described under the heading "Payment Installments" in Annex B hereto, pursuant to the terms of the Settlement Terms Sheet.

In the event that Venezuela does not make a payment on date it is due, in accordance with the provisions of the Settlement Note, it will have a remediation period of 30 consecutive days to remedy the situation, provided that this remediation period can only be used once per calendar year. Any other delay that occurs within the same period will be considered an Event of Default for all purposes of the Settlement Note.

4. <u>Final Settlement Effective Date</u>. If the Final Settlement Requirements have been satisfied on or prior to the end of the Temporary Stay Period, then it is agreed that, on the date such requirements are satisfied (the "<u>Final Settlement Effective Date</u>"):

    a. Crystallex will request the Court to (i) lift the Writ of Attachment over the shares of PDV Holding, Inc., (ii) seek to suspend any further action to execute upon the Writ of Attachment and will not cause the shares of PDV Holding, Inc. to be sold pursuant to the Writ of Attachment so long as no event of default has occurred, and (iii) all other pending actions that seek to impose the DC Judgment;

    b. Except as otherwise expressly provision herein, all obligations of Venezuela in respect of or relating to the Award shall be as set forth in, and shall be governed by the Final Settlement Documentation.

5. <u>Termination of Temporary Stay</u>. If Venezuela fails to satisfy the Final Settlement Requirements by the end of the Termination Stay Period or fails to execute and deliver the Final Settlement Documentation as provided in the on or prior to the Interim Deadline as required by Section 3, then:

    i. The Temporary Stay Period shall automatically terminate; and

    ii. Crystallex may immediately recommence any actions stayed pursuant to Section 2 above, may seek to execute upon the Writ of Attachment, and may, in the sole, absolute and unfettered discretion of Crystallex, exercise any and all other rights, powers, privileges and remedies granted to or otherwise available to Crystallex at law, in equity, or otherwise, including under the Settlement Note and/or otherwise in respect of the Award (for the avoidance of doubt, not limited to amounts owing pursuant to the Settlement Note).

6. <u>Non-Impairment</u>. Except as expressly provided herein, nothing in this Agreement shall alter, impair, or affect any of Crystallex's rights, powers, privileges or remedies under or otherwise existing in respect of the Award and/or the DC Judgment, and the parties acknowledge that the Award and the DC Judgment shall remain in full force and effect, except if the Final Settlement Requirements have been met, in which case, Crystallex will suspend the enforcement of the Award and/or the DC Judgment in accordance with the terms herein.

7. <u>No Waiver</u>. No failure to exercise, and no delay in exercising, any right, power, or remedy hereunder shall waive or otherwise impair any right, power, or remedy which Crystallex may have. Nor shall any such delay be taken as acquiescence to any breach or default under this Agreement. Nor shall any waiver of any breach or default of Venezuela hereunder be deemed a waiver of any default or breach subsequently occurring. The rights and remedies herein specified are cumulative and not exclusive of any rights or remedies which Crystallex would otherwise have.

8. <u>Taxes</u>. Venezuela acknowledges that the amount of the Award paid pursuant to this Agreement including the Settlement Note is net of all applicable Venezuelan taxes. If such Venezuelan taxes are payable on payments of the Award, the amount of the Award to be paid by Venezuela to Crystallex will be grossed up by the amount of such applicable taxes, and such grossed up amount on account of such taxes shall be deemed to be and have been deducted from



4



such increased amount, and paid by Venezuela to the Venezuelan tax authorities on behalf of Crystallex. At Crystallex's request, and if applicable, Venezuela will promptly deliver evidence of the payment of such Venezuelan taxes as may be requested or required by the Canada Revenue Agency to enable Crystallex to successfully claim a foreign tax credit (or deduction) under the Income Tax Act (Canada) in respect of all such Venezuelan taxes payable and paid.

9. <u>Authority</u>. Subject to the next sentence, each party represents and warrants that it has full power and authority to enter into and deliver this Agreement and to enter into all of the commitments it has made herein, that the person signing this Agreement on its behalf has the authority to do so, and that this Agreement is enforceable in accordance with its terms. Notwithstanding anything to the contrary in this Agreement, Crystallex shall require the prior approval of the Court in Canada for this Agreement to become effective, and it is agreed that if such approval is not obtained within 5 business days after the date of this Agreement, this Agreement shall terminate and be of no further force and effect between the parties hereto, in which case Crystallex must immediately return the cash or Liquid Securities delivered in accordance with the Initial Payment established in section 1 of this document.

10. <u>Confidentiality</u>. Except as expressly permitted or required in this Agreement, the terms of this Agreement and the content of all negotiations in relation to it (except for the fact that the parties hereto have signed this Agreement) shall be kept confidential by each of the parties hereto and their respective advisors, who will not reveal or disclose to any third party, including, without limitation, the arbitral tribunal that issued the Award, the International Centre for Settlement of Investment Disputes, U.S. jurisdictions or other jurisdictions, without the prior written consent of the other party hereto, except for:

   a. Auditors, legal, financial and tax advisors, consultants and banks of each of the parties hereto, under conditions that preserve the confidentiality of the terms of this Agreement and the content of the negotiations in relation to it;

   b. To the extent that such revelation or disclosure is required by applicable laws or regulations, or in any legal proceeding (having previously requested confidential treatment to the extent that it was permitted by the court, authority or the tribunal in question), or in compliance with or in response to an order issued by a competent court, tribunal or governmental authority; or

   c. To the extent that such revelation or disclosure is necessary for the purpose of implementing or executing this Agreement, provided that the best efforts are made to request the application of conditions that preserve the confidentiality of the terms of this Agreement and the content of the negotiations in relation to it.

11. <u>Further Assurances</u>. The parties agree that they shall take such further action and shall execute and deliver such additional documents and instruments as Crystallex may reasonably request in order to implement or otherwise effectuate the terms of this Agreement. To the extent necessary to implement or otherwise effectuate the terms of the Agreement, Venezuela shall cause its applicable affiliated entities to execute documents referenced or required by this Agreement.




5

12. **Service of Process:** The parties hereby agree that notice or service for any purpose under this Agreement, including for purposes of commencing any legal proceeding, shall be made in writing to the following persons

If to Crystallex, to it at:

Fax: +1.416.203.0099
Address: 8 King Street East, Suite 1201, Toronto, Ontario M5C 1B5, Canada
Phone: +1.416.777.7330 (Direct); +1.416.203.2448 (Main)
Email: Rfung@crystallex.com
Attention: Robert Fung, Chairman and CEO

If to Venezuela, to it at:

Address: Av. Los Ilustres con Calle Francisco Lazo Martí Edificio Procuraduría General de la República, Urbanización Santa Mónica, Caracas, República Bolivariana de Venezuela
Phone: +58.212.5975972
Email: rmunoz@pgr.gob.ve
Attention: Reinaldo Muñoz Pedroza, Procurador General de la República (E)

Such notice or legal process may be personally served, electronically mailed or sent by facsimile or courier service and shall be deemed to have been given when delivered in person or by courier service and signed for against receipt thereof or upon receipt of facsimile or electronic mail.

13. **Procedural Agreement.** In case of default of payment or collateral in the terms referred to in the Agreement, Venezuela agrees not to assert any defense or argument under 28 U.S.C. §§ 1602 et seq., by way of motion or other pleading in any suit, action or proceeding (i) in connection with or arising out of this Agreement or (ii) seeking to confirm, enforce or otherwise collect upon the Award, whether through service of notice, attachment prior to judgment, attachment in aid of execution, with respect to itself or its property or from attachment either prior to judgment or in aid of execution.

14. **Governing Law.** This Agreement shall be governed by New York law, without regard to choice of law rules thereof that might apply the laws of any jurisdiction.

15. **Venue.** Each party hereby submits to the exclusive jurisdiction of the federal and state courts sitting in the City and County of New York for any action or proceeding relating to this Agreement, and expressly waives any objection it may have to such jurisdiction or the inconvenience of such forum. Each party hereby expressly waives any immunity from the jurisdiction of such courts over any suit, action or proceeding that may be brought in connection with this Agreement. Each party hereby irrevocably waives, to the fullest extent permitted by the applicable law, any objection that they may now or hereafter have to the laying of the venue of any such proceedings brought in such a court, any claim that any such proceeding brought in such a court has been brought in an inconvenient forum and any right of objection based on place of residence or domicile.

16. **Interpretation of the Agreement.** No party shall be entitled to have any wording of this Agreement construed against any other party in the event of any dispute arising in connection with this Agreement, including, without limitation, on the basis of a party's capacity as principal drafter hereof.

17. **Amendment and Restatement.** This Agreement shall constitute an amendment and restatement of, and not a novation of, the Original Settlement Agreement. All obligations under the parties under the Original Settlement Agreement shall be continued as modified hereby.

18. **Amendment; Assignments.** This Agreement may not be amended, changed, modified, released, or discharged except by a writing signed by duly authorized representatives of each of the parties hereto or their successors or permitted assigns. Neither this Agreement nor any rights or obligations under this Agreement may be assigned, transferred or delegated by either party to any other person, without the prior consent of the other party to this Agreement. Any attempted or purported assignment, transfer or delegation without such prior written consent shall be *ab initio* null and void.

19. **Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the parties with respect to its subject matter and supersedes all prior and contemporaneous oral and written agreements and understandings relating to its subject matter. Each of the parties warrants and represents that it has relied upon its own judgment and that of its legal counsel regarding the consideration for and terms of this Agreement and that no statements or representations, written or oral, made by any other of the parties, their agents, employees, or legal counsel have influenced or induced that party to execute this Agreement.

20. **Counterparts.** This Agreement may be executed in any number of counterparts, including by facsimile or PDF signatures, each of which when executed and delivered will be deemed to be an original and all of which, taken together, will be deemed to be one and the same instrument.

[Signature pages follow.]





7

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their duly authorized representatives, all as of the day and year first above written.

BOLIVARIAN REPUBLIC OF VENEZUELA

Por: _____
Nombre: Víctor Hugo Cano Pacheco
Título: Ministro del Poder Popular de Desarrollo Minero Ecológico
Fecha: 10 de Septiembre de 2018

Por: _____
Nombre: Reinaldo Muñoz Pedroza
Título: Procurador General (E)
Fecha: 10 de Septiembre de 2018

Procuraduría General de la República
Procurador General (E)

CRYSTALLEX INTERNATIONAL CORP.

By: _____
Name: Robert A. Fung
Title: Chairman & CEO
Date: September 10, 2018





8