MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

(302) 658-9200

KENNETH J. NACHBAR
(302) 351-9294
(302) 425-3013 FAX
knachbar@morrisnichols.com

August 20, 2021

PUBLIC VERSION
filed August 27, 2021

**FILED UNDER SEAL VIA ELECTRONIC FILING**

The Honorable Leonard P. Stark
U.S. District Court for the District of Delaware
844 North King Street
Wilmington, Delaware 19801

Re: *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela, et al.*,
C.A. No. 17-mc-151-LPS

Dear Judge Stark:

The Venezuela Parties seek an order maintaining under seal portions of the recently filed Proposed Sales Procedures Order (D.I. 302) and the Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order ("Explanatory Report") (D.I. 303) that contain unverified information, discuss the tentative timing and process of a potential sale, and/or refer to competitive Highly Confidential Information provided to the Special Master pursuant to the July 6, 2021 Confidentiality Order (D.I. 291) (all highlighted in Exhibit 1).[1] Such an order is necessary because two types of serious harm are likely to flow from immediate public disclosure. First, these provisions implicate serious national security concerns and will harm the aligned policy interests of the Republic and the United States if publicly filed.

As the State Department asserted in July 2020, and as remains the case per the attached declaration of Venezuelan Ambassador Carlos Vecchio, taking steps toward a public sale of PDVH shares would cause "the Venezuelan people [to] seriously question the interim government's ability to protect the nation's assets, thereby weakening it and U.S. policy in Venezuela today." D.I. 212-1 at 4. Second,

The strong national security interests of Venezuela and the U.S. as well as the sensitive business interests of the Venezuela Parties outweigh any public interest in the disclosure of the information at issue at this time. The Special Master's unadopted proposal and supporting explanation are merely the first step in the process of establishing procedures to satisfy Crystallex's

---

[1] The Highly Confidential Information sought to be sealed is at Explanatory Report ¶¶ 53, 59, 64, 65, 69, 75, and 76; and the Hiltz Declaration ¶¶ 14, 19, 27, and 28. The remainder of the information highlighted in Exhibit 1 is sale-process related information, the disclosure of which will harm the Venezuela Parties for the reasons discussed herein.

The Honorable Leonard P. Stark
August 20, 2021
Page 2

judgment, which, along with briefing on the parties' objections (which will begin to be submitted on August 25), have yet to be considered by the Court and in any event cannot be implemented until OFAC authorization is obtained. Thus, the portions of the Proposed Sales Procedures Order and Explanatory Report highlighted in Exhibit 1 should be sealed because disclosure would harm protected interests of the Venezuela Parties while providing little, if any, value to the public.

## LEGAL STANDARD

Federal Rule of Civil Procedure 5.2(d) provides that the "[t]he court may order that a filing be made under seal" and can later require that "a redacted version" be filed "for the public record." *See Genentech, Inc. v. Amgen, Inc.*, Civ. No. 17-1407-CFC & 18-924-CFC, 2020 WL 9432700, at *2 (D. Del. Sept. 2, 2020) (applying the same standard to determine whether sealing or redacting a judicial record is justified), adopted in 2020 WL 9432702 (D. Del. Oct. 1, 2020). While there is a "right of access" to public court filings, that right "is not absolute." *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993). This Court may direct the filing of a pleading or other document under seal if, after balancing "countervailing interests," the movant's "interest in secrecy outweighs the presumption" of public access. *Id.* This includes documents authored by special masters. *See* Fed. R. Civ. P. 53 Advisory Comm. Notes (stating that there are "circumstances that justify sealing a report or review record against public access").

## ARGUMENT

### A. Publicly Filing the Proposed Sales Procedures Order and Explanatory Report Without the Proposed Redactions Threatens the Venezuela Parties with Serious Harm.

i. Disclosure threatens the national security and the mutual policy interests of Venezuela and the United States.

Courts routinely seal case records that implicate national security interests. *U.S. v. Hubbard*, 650 F.2d 293, 315–16 (D.C. Cir. 1980) ("The public has in the past been excluded, temporarily or permanently, from court proceedings or the records of court proceedings to … guard against risks to national security interests."); *see, e.g., United States v Washington Post Co.*, 403 U.S. 943 (1971) (sealing parts of the record that the government claimed implicated national security); *N.Y. Times v. United States*, 403 U.S. 942 (1971) (same); *United States v. Ressam*, 221 F. Supp. 2d 1252, 1263–64 (W.D. Wash. 2002) (redacting language from a court order implicating the government's "compelling interest" in "safeguarding the national security").

Since January 2019, the democratic government led by Interim President Juan Guaidó has worked to restore the integrity of Venezuelan institutions and protect the Venezuelan people. ███████████████████████████████████████████████████████████████████████████ The United States' "strong foreign policy and national security interests," D.I. 212 at 3, have long been aligned with the Republic's domestic policy and security interests. The United States has been unwavering in its support for "the interim government's efforts to reconstruct the Venezuelan economy following the departure of Maduro" and has consistently "support[ed] the full restoration of democracy" in Venezuela in accordance with its "strong foreign policy and national security interests." *Id.*; *see also* Ex. 2 ¶ 1.[2] The State Department has also explained that the fact that the

---

[2] The U.S. Government's position has not changed since filing its Statement of Interest (D.I. 212) on July 16, 2020. *See* Ex. 2 ¶ 1 (citing United States Dep't of State, "U.S. Relations with Venezuela Bilateral Relations Fact Sheet (July 6, 2021), https://www.state.gov/u-s-relations-with-venezuela/).

The Honorable Leonard P. Stark
August 20, 2021
Page 3

Maduro regime has built "military and intelligence" relationships with "foreign adversaries of the United States which, but for the regime's existence, would have little foothold in South America" is of significant concern for U.S. national security. D.I. 212 at 2.



Both the Republic and the United States have made it clear that CITGO is not an ordinary asset; "[e]very Venezuelan knows of this company and it is viewed, as are Venezuela's oil reserves, as a central piece of the national patrimony." D.I. 212-1 at 4; *see also* Ex. 2 ¶¶ 3–4. Indeed, the Maduro regime "has already claimed that the United States and Guaidó are conspiring to 'steal' CITGO" as part of its ongoing strategy to wrest power from the Guaidó government. D.I. 212 at 4; *see also* Ex. 2 ¶ 6.

As asserted by the State Department: "[T]he United States assesses that the domestic legitimacy of the interim government under Guaidó would be severely eroded were a forced sale of CITGO to take place while the illegitimate Maduro regime still attempts to cling to de facto power in Caracas" and even "taking immediate steps toward a conditional sale" would be "detrimental to U.S. policy and the interim government's priorities." D.I. 212-1 at 4.

ii. Disclosure threatens CITGO's business.

"[C]ourts have refused to permit their files to serve as sources of business information that might harm a litigant's competitive standing." *Leucadia*, 998 F.2d at 166. If "the dissemination of [ ] information would subject the defendants to a serious risk of competitive injury or … violate some other important privacy interest," these factors may "militate against the disclosure of the[] materials." *Joint Stock Soc'y v. UDV N. Am., Inc.*, 104 F. Supp. 2d 390, 403 (D. Del. 2000). Sensitive business information does not need to "meet the formal definition of 'trade secret'" for a party to "rebut the presumption favoring access." *Genentech*, 2020 WL 9432700, at *4 (special master approving the sealing of sensitive business information). It is appropriate to seal material that "reflects commercial intelligence…[,] competitive assessments, includ[ing] inward-facing judgments on the parties' own capacities as well as outward-facing judgments on the capacities of others[,] … information on the approaches of the parties to interfacing with government regulators," information that could put a party "at a demonstrable disadvantage in navigating and negotiating other litigation contests," and "confidential legal information." *Id*. at *5–6.

The public disclosure of the Special Master's filings without the redactions proposed in Exhibit 1 threatens harm to CITGO's business and "competitive standing," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978), in two ways. **First,**

The Honorable Leonard P. Stark
August 20, 2021
Page 4

[REDACTED]

***Second,*** the filings include certain information that was provided to the Special Master by CITGO in confidence, pursuant to this Court's Confidentiality Order, and that should continue to be protected from disclosure. D.I. 291. Under the Confidentiality Order, "[a]ny Party or ConocoPhillips may designate any documents or information as 'Highly Confidential Information' if such party in good faith believes that disclosure of such ***non-public, confidential, proprietary, or commercially sensitive*** information other than as permitted pursuant to this Order is ***substantially likely to cause injury*** to the producing party." D.I. 291 ¶ 2 (emphasis added).

[REDACTED]

### B. The Threatened Harm from Publicly Filing the Proposed Sales Procedures Order and Explanatory Report At This Time Outweighs the Public Interest in Disclosure.

In this case, there is no public interest in the disclosure at this time of the provisions of the Special Master's Proposed Sales Procedures Order and Explanatory Report highlighted in Exhibit 1. [REDACTED]

[REDACTED] *See Joint Stock Soc'y*, 104 F. Supp. 2d at 407 (affirming the special master's recommendation to seal information "which the defendants had taken reasonable steps to protect and which, if disclosed, would subject the defendants to a competitive harm because other firms in the [ ] industry could use the information to their advantage"). The proposed order and report are not orders of the Court, they do not bind any party, they do not constitute the argument or position of any party, and they are subject to revision—perhaps extensive revisions—before any sale process will be confirmed by Court order, allowed under OFAC licensing, and actually be ready to take place. The U.S. Government itself has stated that "taking action which advances toward a public auction and contingent sale ***would serve no purpose*** if OFAC ultimately denies Crystallex's license application." D.I. 212 at 9 (emphasis added). [REDACTED]

The Honorable Leonard P. Stark
August 20, 2021
Page 5

■■■ In light of the highly preliminary and contingent nature of the Special Master's filings and their lack of any actual impact on any party or non-party (other than the Venezuela Parties and the United States through their disclosure), the usual public interest in access to court filings is not present here.

In contrast, and as described above and in the attached declarations, public disclosure of the Special Master's filings without the Venezuela Parties' proposed redactions threatens serious harm to the Venezuela Parties. ■■■

■■■ As discussed, the public filings would cause "the Venezuelan people to seriously question the interim government's ability to protect the nation's assets," D.I. 212-1, and would further entrench the illegitimate Maduro regime. Such an outcome is in direct contravention to American and Venezuelan foreign policy and national security interests, which recognize that the sale of the PDVH shares, and the appearance of progress toward a sale, "would be greatly damaging and perhaps beyond recuperation." D.I. 212-1 at 4; *see also* Ex. 2 ¶¶ 2, 4, 7. ■■■

CITGO is not a defendant in these proceedings; it intervened solely to prevent undue disruptions to its ongoing business. *See United States v. Criden*, 648 F.2d 814, 829 (3d Cir. 1981) (stating that "courts may appropriately exercise their discretion" to deny access to documents "which may inflict unnecessary and intensified pain on third parties who the court reasonably finds are entitled to such protection"); *accord United States v. Smith*, 776 F.2d 1104, 1110 (3d Cir. 1985) (sealing a bill of particulars that listed individuals the government may consider "unindicted co-conspirators" because the public perception created by the speculative document would cause "irreparable injury" to the reputations of named individuals). ■■■

## REQUEST FOR RELIEF

For the foregoing reasons, the Venezuela Parties respectfully request that the portions of the Proposed Sales Procedures Order and the Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order highlighted in Exhibit 1 be sealed. Should the Court deny any aspect of this motion, the Venezuela Parties request an administrative stay maintaining those documents under seal in their entirety for three business days to give the Venezuela Parties an opportunity to consider whether to seek emergency relief from the Third Circuit.

Respectfully submitted,

/s/ *Kenneth J. Nachbar*

Kenneth J. Nachbar (#2067)

cc: All Counsel of Record (Via E-Filing)