IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 17-151-LPS <br> **UNSEALED ON** <br> 9/10/21 |

# MEMORANDUM ORDER

Crystallex International Corporation ("Crystallex"); Bolivarian Republic of Venezuela (the "Republic"), Petróleos de Venezuela, SA ("PDVSA"), PDV Holding, Inc. ("PDVH"), and CITGO Petroleum Corporation ("CITGO" and, together with the Republic, PDVSA, and PDVH, the "Venezuela Parties"); and nonparties Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V. (together "ConocoPhillips" and, together with Crystallex and the Venezuela Parties, the "Sale Process Parties"), have presented the Court with several issues to resolve in connection with the work of the Court's Special Master, Robert B. Pincus. The Court addresses the latest disputes below.

Special Master's July Fees

Having further considered the Special Master's monthly report for the period ending July 31, 2021 (D.I. 304), including the attached Itemized Statement (D.I. 304-1), and having considered the subsequent letters from the Venezuela Parties (D.I. 308, 315, 329), ConocoPhillips (D.I. 309, 318, 330), Crystallex (D.I. 310, 320), and the Special Master (D.I.

325), **IT IS HEREBY ORDERED** that: (i) the Sale Process Parties' objections are **OVERRULED**, and (ii) the fee cap of $2 million referenced in the Court's May 27 Order (D.I. 277 ¶ 15) is increased by $111,786.85 to a total of $2,111,786.85.

As the Special Master rightly points out, the "plain language" of the May 27 Order made it clear that "the reasonable fees of the Special Master and his Advisors could exceed $2 million," and the Court provided a mechanism for adjusting the cap. (D.I. 325 at 1) Moreover, the Court understands that the Sale Process Parties requested extending the deadline for the Special Master to file the Proposed Sale Procedures Order and his accompanying report, which contributed to the Special Master incurring fees and costs above the $2 million cap. (*Id.* at 2) Additionally, the Special Master's Advisors have now reduced their July fees by $75,000. (*Id.* at 2-3) The Court finds that the fees and expenses in the Itemized Statement are regular and reasonable, and the Itemized Statement is approved, with the $75,000 reduction explained in the Special Master's letter.

The Court finds no basis in the record for the Venezuela Parties' assertions that "the Special Master and his Advisors have not taken care to adhere to the Court's limitations," that they "ran up bills as if no cap existed and with no apparent concern for the fees generated," and that they "carelessly exceeded their limits." (D.I. 315 at 1-3) To the contrary, the Court agrees with the Special Master that the Court has given him "an extraordinarily complex and difficult endeavor on many levels." (D.I. 325 at 1; *see also id.* at 1 n.2 (listing some examples of diligent, understandably-expensive work Special Master has done)) The Special Master well describes the context in which he is operating:

> This decade long dispute has been characterized by steadfast disagreement, and the formulation of the Proposed Sale Procedures

> Order proved to be no different. The complex corporate and capital structure of CITGO, combined with the number of highly litigious interested parties and the other dynamic and internationally sensitive circumstances, pose a number of unique challenges to this process, each of which my Advisors and I have worked to address in an efficient manner.

(*Id.* at 2 n.2) In this environment, the amounts expended to date should not be surprising to any of the Sale Process Parties, all of which are highly sophisticated litigants.

**IT IS FURTHER ORDERED** that each of Crystallex, ConocoPhillips, and the Venezuela Parties shall make a payment of $211,701.65 (for a total of $635,104.95, which is the amount set forth in the Itemized Statement, less $75,000) within 30 days, pursuant to the terms of the May 27 Order.

Nonparty ConocoPhillips indicates that it is unwilling to pay any more. (D.I. 318 at 2 ("ConocoPhillips never agreed to provide open-ended funding of the sale process, particularly prior to explicit approval from OFAC to proceed, without which a truly robust and value-maximizing auction is unlikely to occur."); D.I. 330 at 1 ("ConocoPhillips is not obligated to and will not advance any further funds.")) If, after reviewing the instant Order, that continues to be its position, ConocoPhillips is free to withdraw from further engagement in the Special Master's process, while retaining the opportunity to litigate its objections to the Proposed Sale Procedures Order before the Court. **IT IS HEREBY ORDERED** that ConocoPhillips shall advise the Court by no later than **September 15, 2021**, if it is withdrawing from the Special Master's process.[1]

---

[1] Should ConocoPhillips choose to withdraw from the Special Master's process, it may still be obligated to pay its portion of fees and expenses incurred through the date on which its withdrawal is effective, pending a further order of the Court.

The Court anticipates, as the Sale Process Parties no doubt do as well, that the Special Master and his Advisors have incurred and will incur substantial, additional expenses in continuing to carry out their complex assigned duties. The Special Master and his Advisors must continue to limit their expenditures to what is reasonable and necessary, given the enormous scope and complexity of their task, and with full appreciation that every step that they propose will likely be opposed by one or more of the Sale Process Parties. While the Special Master must continue to act prudently, he is not required to identify an "extraordinary, unforeseen reason" in order to continue his highly valuable work and to be fairly compensated for it. (*See* D.I. 315 at 1)

The Court further **ADOPTS** Crystallex's proposal that the Special Master "share a reasonable budget for future fees and expenses." (D.I. 320 at 1) The Special Master suggested a budget mechanism in the Proposed Sale Procedures Order (*see* D.I. 302 ¶ 48) and agrees that it is now "fair and appropriate to have a budget and report to that budget, as well as provide updates to a budget based on what is really happening in implementing any process." (D.I. 325 at 3) Accordingly, **IT IS HEREBY ORDERED** that: (i) the Sale Process Parties shall meet and confer with the Special Master,[2] and (ii) no later than **September 22, 2021**, the Special Master shall submit a proposed order to implement this paragraph of the instant order (including the establishment of a budget through a process including meeting and conferring, a process for modifying that budget to reflect ongoing actual conditions, and a process for any objections to be quickly and succinctly briefed for the Court).

---

[2] ConocoPhillips' participation in the meet and confer is contingent on it choosing to remain part of the Special Master's process and to continue paying a one-third share of the associated fees and costs.

Redactions to Proposed Sale Procedures Order and Accompanying Report

On August 9, 2021, the Special Master submitted two sealed documents: (1) a Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters (D.I. 302) ("Proposed Order"), and (2) a Report and Recommendation Regarding Proposed Sale Procedures Order (D.I. 303) ("Report").

On August 20, 2021, the Venezuela Parties moved for an order to maintain extensive portions of the Proposed Order and Report under seal. (D.I. 313; *see also* D.I 313-1) The Venezuela Parties assert that if the Court fails to redact their purportedly Highly Confidential Information, "two types of serious harm are likely to flow from immediate public disclosure": (i) national security and policy interests of the United States and Venezuela will be undermined, and (ii) CITGO's business will be damaged and the company's value could be destroyed, ultimately deterring bidders or reducing their potential bids. (D.I. 313 at 1)

Also on August 20, Crystallex filed a letter, indicating that it has no objection to the Venezuela Parties' request to maintain portions of the Proposed Order and Report under seal. (D.I. 312)[3] Crystallex also seeks to redact portions of two paragraphs of the Report (paragraphs 49 and 50), which disclose details of recoveries Crystallex has obtained to date. (*See id.* at 1) On August 26, Crystallex filed a second letter, reiterating it does not object to the sealing proposed by the Venezuela Parties, but urging the Court not to "predicate that relief on the

---

[3] Indeed, Crystallex does not object (for now) to the Court keeping the entirety of those documents under seal, which the Venezuela Parties apparently proposed before seeking the narrower redactions outlined in their motion. (*See* D.I. 312 at 1)

unsupported findings that the Venezuela Parties ask this Court to make as to the supposed national security and foreign policy interests of the United States." (D.I. 321 at 1)

On August 30, 2021, the Venezuela Parties submitted a letter taking no position on Crystallex's request to redact portions of paragraphs 49 and 50 from any public version of the Report. (D.I. 326 at 1) In the same letter, however, the Venezuela Parties "strenuously object to the extraordinary additional limitation Crystallex seeks: to keep secret from the 'parties other than Crystallex' the information Crystallex has submitted to the Special Master to support its contention concerning the amount outstanding on Crystallex's judgment." (*Id.*) (emphasis omitted)

The Court finds all the arguments made by the Venezuela Parties and Crystallex in support of their requested redactions to be unpersuasive.[4] Crystallex well explains the lack of merit in the Venezuela Parties' effort to deprive the public of access to information about the Special Master's recommendations:

> Ensuring compliance with federal judgments is one of the most fundamental duties of the judiciary, and the public has a strong civic interest in seeing that judgments of our courts are enforced. . . . If Venezuela is concerned about the domestic consequences of this enforcement proceeding of its own making, Venezuela has the means to help itself: It can pay Crystallex's judgment. . . .
>
> Both this Court and the Third Circuit have already recognized . . . that the OFAC licensing process adequately protects any national security or foreign policy interest the United States may have in

---

[4] The Court understands that the Venezuela Parties and Crystallex submitted their purported Highly Confidential Information to the Special Master pursuant to the governing Protective Order. (*See* D.I. 291) The Court warned the Sale Process Parties, however, not to rely on that order to presume that their information would necessarily remain under seal. (*See, e.g.*, D.I. 290 at 6 ("Should the Intervenor Bondholders later believe that they have a legitimate interest in the unsealing of a particular filing, they – like any other individual or entity – remain free to raise the issue at the appropriate time."); *see also* D.I. 291 ¶ 9)

> this litigation. . . .
>
> In any event, there is no support for Venezuela's . . . assertion that merely disclosing the terms of a ***proposed*** order regarding sale procedures would weaken the Guaidó regime or undercut the interests of the United States. . . . [T]he United States has never endorsed the Venezuela Parties' extreme proposition that merely ***discussing*** future sale procedures in a judgment enforcement proceeding would undermine Guaidó.

(D.I. 321 at 1-2)

Nor does the Court find merit in the Venezuela Parties' contention that making public how the Special Master proposes to comply with Delaware law and this Court's mandate to sell shares of PDVH to satisfy Crystallex's judgment against the Republic will undermine CITGO's value. Everything the Special Master has done and will do is intended to maximize the value of CITGO when the shares of PDVH are sold. Further, as the Venezuela Parties correctly state: "The proposed order and report are not orders of the Court, they do not bind any party, they do not constitute the argument or position of any party, and they are subject to revision – perhaps extensive revisions – before any sale process will be confirmed by Court order, allowed under OFAC licensing, and actually be ready to take place." (D.I. 313 at 4) The Republic has provided no convincing reason to undermine confidence that the market will understand these realities and will recognize CITGO's value, upon disclosure of the Special Master's work and throughout the ensuing process. Once that process begins, the Court, the Special Master, and his Advisors will deliver a clear and consistent message to possible bidders – just as the Venezuela Parties, appropriately, invite. (*See id.* at 5)

Turning to Crystallex's request, the Court agrees with the Venezuela Parties that information about recoveries Crystallex has already obtained, including from whom and how, is

pertinent to the Special Master's compliance with the Court's directive to determine the amount of Crystallex's outstanding judgment. As the Venezuela Parties write, "[t]he information Crystallex seeks to withhold goes directly to a merits issue that the Court has instructed the Special Master to address: determining the amount that remains owing on Crystallex's judgment." (D.I. 326 at 2) They add, and the Court agrees, that "Crystallex's concern about such a challenge [to its judgment] heightens the urgency of providing the information to the Venezuela Parties so that they can determine whether any of the information justifies an adjustment to the outstanding amount or otherwise requires scrutiny." (*Id.* at 3) The other Sale Process Parties should have this information as they evaluate the Proposed Order and participate in further proceedings.

The Court further believes that the public should have access to all information in the Proposed Order and Report. Crystallex brought its dispute with the Republic in a court of law, which is funded by the public and operates for the public's benefit. Maintaining the Court's integrity in the eyes of the public is of paramount importance. *See, e.g., Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988) ("The public's exercise of its common law access right in civil cases promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court."); *see also Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 161 (3d Cir. 1993) ("[T]he very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness.") (internal quotation marks omitted). Accordingly, the strong presumption is that court filings – especially those necessary to and affecting the Court's exercise of judicial power – will be available to the public. *See, e.g., LEAP Sys., Inc. v.*

*MoneyTrax, Inc.*, 638 F.3d 216, 220 (3d Cir. 2011) ("[A] strong presumption in favor of accessibility attaches to almost all documents created in the course of civil proceedings.") (internal quotation marks omitted).

Crystallex seeks to use the Court's mechanisms to collect a judgment of the U.S. courts. Yet Crystallex attempts to hide relevant information, on the purported bases that disclosure will cause Crystallex competitive harm (vis-à-vis other creditors of the Venezuela Parties), that disclosure may harm certain third parties, and that disclosure will offend "principles of comity and respect for parallel foreign judicial proceedings" (because Canadian bankruptcy courts have sealed the information at issue). (*See* D.I. 312 at 4 & n.4) The Court does not find those countervailing interests to be "compelling" or sufficient to justify the sealing Crystallex seeks. *See In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019). Ultimately, Crystallex has not met its burden to "overcome the presumption of access to show that the interest in secrecy outweighs the presumption." *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986). The public's interest in disclosure of information that directly relates to a component of the Special Master's role far outweighs Crystallex's private interests.

Accordingly, **IT IS HEREBY ORDERED** that: (i) the Venezuela Parties' motion to maintain portions of the Proposed Order and Report under seal (D.I. 313) is **DENIED**, and (ii) Crystallex's request to maintain redactions to paragraphs 49 and 50 of the Report (D.I. 312) is **REJECTED**.

As the Court has denied the Venezuela Parties' motion, the Court must confront their alternative request that the Court enter "an administrative stay maintaining [the Proposed Order

and Report] under seal in their entirety for three business days to give the Venezuela Parties an opportunity to consider whether to seek emergency relief from the Third Circuit." (D.I. 313 at 5) Crystallex does not make the same request, but the Court presumes that none of the Sale Process Parties opposes such limited, temporary relief. Although the Court is not persuaded on the merits by either the Venezuela Parties or Crystallex, the Court will proceed with caution. Accordingly, **IT IS HEREBY ORDERED** that, subject to any subsequent order from this Court or any other court, the Special Master's duty to file unsealed versions of the Proposed Order and Report (without any redactions), as well as the Special Master's duty to unseal paragraphs 49 and 50 of the version of the Report provided to the Sale Process Parties, is **STAYED** until **September 15, 2021**. If no further order is issued, the Special Master shall file on the public docket in this action completely unredacted versions of the Proposed Order and his Report.

Objections to the Proposed Order

The Sale Process Parties are currently briefing their objections to the Proposed Order. (*See* D.I. 299) The instant order does not address those objections.

**IT IS HEREBY ORDERED** that the Court will hear argument on any and all objections to the Proposed Order on **Monday, November 8, 2021**, beginning at **9:30 a.m.** in **courtroom 6B**.

Unsealing the Instant Memorandum Order

The Court does not believe that anything in the instant Memorandum Order should be withheld from the public. In an abundance of caution, however, the Court is issuing this order under seal. Should any of the Sale Process Parties believe that any portion of this order should remain sealed, such party shall, no later than **tomorrow, September 9**, submit a proposed

10

redacted version and accompanying memorandum setting out specific authority to support any requested redactions. Thereafter, the Court will issue a public version.

September 8, 2021  
Wilmington, Delaware

HONORABLE LEONARD P. STARK  
UNITED STATES DISTRICT JUDGE