ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807
Main: 302-778-1000
Fax: 302-778-1001

A. Thompson Bayliss

Direct Dial Number
302-778-1033
Bayliss@AbramsBayliss.com

September 20, 2021

**VIA ELECTRONIC FILING**

The Honorable Leonard P. Stark
U.S. District Court for the District of Delaware
844 North King Street
Wilmington, Delaware 19801

   Re: Crystallex International Corp v. Bolivarian Republic of Venezuela
      No. 17-mc-00151-LPS

Dear Judge Stark:

  I write on behalf of the Bolivarian Republic of Venezuela to correct the distortions in Crystallex's September 15 letter to the Court (D.I. 346) regarding the letter it received from OFAC denying its license application (D.I. 346-1)—distortions apparently aimed at ensuring that the effective owner of Crystallex's judgment, Tenor, can purchase 100% of PDVH's shares at a fire sale price. *See* D.I. 340 at 7-24.[1]

  **1. OFAC's Denial Makes Clear that No Sale Will Occur at this Time**

  Despite the threats to OFAC by Crystallex, as catalogued in OFAC's letter, and the lobbying of OFAC by the Special Master to proceed with a sale of the PDVH shares, OFAC's denial of Crystallex's license application makes crystal clear that, as of now, there can be no sale of the PDVH shares and that there is no assurance Crystallex will ever receive a license to effect a sale. Now that the Executive Branch has unequivocally set forth its position on this foreign policy question and maintained its legal prohibitions on the transaction Crystallex wishes to effect, the Court should suspend all further efforts to proceed toward a hypothetical future sale unless and until Crystallex obtains affirmative authorization from OFAC to do so.

  Contrary to Crystallex's mischaracterizations, OFAC's statement about potentially reevaluating the foreign policy considerations underlying the sanctions regime in 2022 is not news. It has always been the case that the Venezuelan sanctions regime, like any of the Executive Branch's various international sanctions regimes, could change if political circumstances and U.S.

---

[1] Counsel for PDV Holding, Inc., CITGO Petroleum Corporation, and Petróleos de Venezuela, S.A. join in this letter.

The Honorable Leonard P. Stark
September 20, 2021
Page 2

foreign policy priorities evolve.² It also has been known for many months that the Guaidó Government's current authorization to govern under the 2019 "Statute Governing the Transition to Democracy and the Reestablishment of the Constitution" would expire in January 2022. Thus, it has long been obvious that the U.S. Government might re-assess its foreign policy toward Venezuela depending on developments following expiration of that statute and the outcome of ongoing negotiations between the Guaidó Government and the Maduro regime.

What is new is that OFAC has now *denied* Crystallex's request "for a specific license to effect the sale of the PDVH shares" at this time. D.I. 346-1 at 8. Up until this point, it was possible—as Crystallex and the Special Master have repeatedly urged—that OFAC might authorize the sale notwithstanding the current sanctions regime. But OFAC has now acted, and its letter transmitting its decision makes clear that (1) the sale of the PDVH shares cannot go forward under U.S. law because it is against the interests of the United States and the Venezuelan people, and (2) unless and until something changes on the ground in Venezuela *that shifts those interests*, authorization for a sale will not be forthcoming.³ Crystallex's assertion that "OFAC suggests that the appropriate time [for a sale] is likely only a few months away," D.I. 346 at 1, is a gross distortion of the State Department's position.

## 2. OFAC's Letter Does Not Authorize Prefatory Actions Short of a Sale

Crystallex's contention that Director Gacki's letter "suggests that this Court may take all the prefatory actions short of a sale," D.I. 346 at 1, is baseless. OFAC denied Crystallex's "request for a specific license to *effect* the sale of the PDVH shares," D.I. 346-1 at 8 (emphasis added), not merely to close a "final sale," as Crystallex suggests, *see* D.I. 346 at 1. The text of the applicable regulations and published guidance clearly bar not just a sale but all "concrete steps in furtherance of an auction or sale" without a specific license, as explained in the Venezuela Parties' previous

---

² For example, in its July 2020 statement to the Court, the Government explained that OFAC was not then "in a position to issue a license decision to Crystallex," and that OFAC's determination regarding Crystallex's application would depend on "the rapidly evolving situation in Venezuela, developments in the OFAC sanctions regime to address this situation, and the claims of other creditors against Venezuela." D.I. 212 at 10.

³ *See* U.S. State Dep't Press Briefing (Aug. 12, 2021), https://www.state.gov/briefings/department-press-briefing-august-12-2021/ (explaining that the easing of sanctions policy depends on the Maduro regime "allowing Venezuelans to participate in long overdue free and fair presidential, parliamentary, and local elections, creating the necessary conditions to enable free and fair elections [to] take place in Venezuela" and "engag[ing] in sincere discussions with the opposition, led, of course, by Interim President Juan Guaidó, that result in a comprehensive negotiated solution to the Venezuelan crisis.").

The Honorable Leonard P. Stark
September 20, 2021
Page 3

briefing. *See* D.I. 317 at 13–16; D.I. 340 at 9–13.[4] In fact, Crystallex's own license application belies its claim that the Court can and should proceed to implement a sale procedures order despite OFAC's denial of Crystallex's application, since Crystallex itself requested "a Specific License to allow the federal court in the District of Delaware . . . to pursue all activities necessary and ordinarily incident to organizing and conducting a judicial sale of the shares," D.I. 212-2 at 1 (July 16, 2020 letter from Director Gacki quoting Crystallex's license application)—the very things Crystallex and Tenor now encourage this Court (without analysis) to undertake absent an OFAC license. OFAC has denied Crystallex's application, *see* D.I. 346-1 at 8, and there is no question that Crystallex lacks the special license needed to legally organize and conduct, *i.e.*, "effect," a sale. Additionally, Crystallex does not meaningfully dispute that any further steps to effectuate the sale, such as launching the marketing process, would violate OFAC's guidance.

OFAC's letter also makes clear that the United States has used, consistent with this Court's direction, "the OFAC licensing process" as the "mechanism through which the Executive Branch can bring to bear the foreign policy and national security interests on which Crystallex's collection efforts might have an impact." D.I. 346-1 at 5 (quoting *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2021 WL 129803, at *16 (D. Del. Jan. 14, 2021)). OFAC's denial of Crystallex's license application at this critical juncture reflects a direct response to the Court's prior decision and a strong message that the Executive Branch has utilized the mechanism identified by the Court to stop the sale process from moving forward at this time. That OFAC has not foreclosed Crystallex's ability to apply again in 2022 does not alter the effect of the current legal prohibitions against any so-called "prefatory acts," and it does not ensure any particular result or timeframe if Crystallex does reapply.

Moreover, as the State Department has explained, the situation in Venezuela is "particularly sensitive at this time," *id.* at 1, given ongoing negotiations between "the unified democratic opposition led by Interim President Guaidó and the Maduro regime" in Mexico City, which are a central component of the foreign policy considerations noted by OFAC, *id.* at 8. This Court should respect those clear expressions of the Biden Administration's foreign policy and suspend all efforts to sell the PDVH shares at this time.

### 3. Moving Forward Without an OFAC License Would Destroy Value

---

[4] Crystallex points to Director Gacki's acknowledgement of the historical fact that this Court "elected to proceed with prefatory steps toward a judicial sale." D.I. 346-1 at 5. But even setting aside that she *did not approve* of this Court's decision—and, in fact, submitted her July 2020 letter to this Court in support of the U.S. Government's *opposition* to the Court taking such prefatory steps (D.I. 212-2)— OFAC has in no way suggested that the *specific additional* steps contemplated by the proposed sale procedures order—*i.e.*, the launch of the marketing and bidding process—are permissible; to the contrary, those are unambiguously "concrete steps" that require a specific license under OFAC's regulations and guidance.

The Honorable Leonard P. Stark
September 20, 2021
Page 4

OFAC's letter also confirms that it would be impractical and value-destroying to implement sale procedures before Crystallex obtains OFAC authorization to move forward. If mere uncertainty about whether OFAC will authorize a sale would chill bidding—as both the Special Master and his financial advisor have acknowledged, D.I. 348 ¶ 67; D.I. 348-1 ¶ 18—the unequivocal *denial* of authorization that OFAC has just issued risks scuttling bidding entirely. Nor does it make sense to waste time and resources—including millions of dollars in additional fees to the Special Master and his advisors—in taking preliminary steps to prepare for a future hypothetical sale, all of which would have to be redone if Crystallex ever does get a license. *See* D.I. 317-1 ¶ 20 (Mr. Weisenburger explaining that "due diligence is time sensitive" and could become "stale" after a delay).

Crystallex once again distorts the OFAC letter in arguing otherwise. Director Gacki explains that the U.S. Government's July 16, 2020 Statement of Interest (D.I. 212) continues to represent the Government's "current foreign policy and national security view." D.I. 346-1 at 5.[5] While Director Gacki writes that the United States "anticipates" reassessing foreign policy considerations "during the first half of 2022" "*if* the foreign policy considerations change," *id.* at 1 (emphasis added), this by no means suggests that changed circumstances are "inevitable" or "a virtual certainty," as Crystallex contends, D.I. 346 at 2. Nor does OFAC invite Crystallex to renew its application in "early 2022." *See id.* The only thing that OFAC's letter makes clear is that any renewed application from Crystallex will not even be *considered* until after the Government reassesses its foreign policy position sometime in the first half of 2022, if it happens at all. It makes no practical sense for the Special Master's advisors to prepare marketing materials and conduct due diligence—much less solicit bidders—for a process that will not begin, if at all, for half a year or more, when relevant financial circumstances will have changed and marketing and diligence materials will have to be revised or replaced.

### 4. The PDVSA 2020 Bondholders Do Not Threaten Crystallex's Creditor Position

Crystallex also misrepresents both the status of the PDVSA 2020 Bondholders' ability to foreclose on the CITGO Holding shares and the prejudice that Crystallex might suffer if the Court does not move forward in tandem with the Bondholders. General License 5 in its current form does not grant the Bondholders any rights "to enforce against the shares of CITGO Holding." D.I. 346 at 2. Instead, as Director Gacki carefully explained, "like Crystallex, the bondholders are not authorized to take any such actions at this time, consistent with the State Department's assessment that a forced sale of Venezuela's U.S.-based assets (particularly the CITGO assets) at this time would be inconsistent with U.S. foreign policy interests." D.I. 346-1 at 2.

---

[5] Indeed, the Biden Administration believes that "continuing the blocking of these shares is particularly important at this time." D.I. 346-1 at 7. These statements demonstrate the error in the Special Master's suggestion that the Court not "attempt[] to infer the USG's views from the Trump administrations' [sic] August 28, 2020 statement." D.I. 341 at 5.

The Honorable Leonard P. Stark
September 20, 2021
Page 5

Nor is there any merit to Crystallex's contention that it "risks being put at a significant disadvantage" if OFAC were to lift restrictions on the Bondholders in January. *See* D.I. 346 at 2. The United States District Court for the Southern District of New York has stayed the Bondholders' judgment pending appeal. *See* Order at 5–7, *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, No. 19-cv-10023 (S.D.N.Y. Dec. 29, 2020), ECF No. 241. Thus, even if OFAC were to remove its current restrictions, the court-ordered stay would continue to bar the Bondholders from taking any actions to enforce the pledge of the CITGO Holding shares while the appeal remains pending, and the Second Circuit has not yet even scheduled oral argument.[6] Moreover, the Bondholders do not have a lien on the PDVH shares, and nothing they do will affect Crystallex's priority or ability to sell the PDVH shares if such a sale is ever authorized. While the value of the PDVH shares may be affected by the Bondholders' lien on the shares of PDVH's subsidiary, that effect already will be accounted for in any potential bidder's valuation, and Crystallex cannot change that fact by preparing for and conducting an execution sale of the PDVH shares before the Bondholders sell their shares in CITGO Holding.

### 5. The Path Forward

The Republic is aware that this case has consumed considerable judicial resources as a result of its unusual complexity. In all events, the Venezuela Parties represent to the Court that they intend to pursue, in good faith, actionable alternatives to resolve the Crystallex dispute and other claims.

Respectfully submitted,

*/s/ A. Thompson Bayliss*

A. Thompson Baylistt (#4379)

cc:   All Counsel of Record (via electronic mail)

---

[6] The restriction on the Bondholders' ability to foreclose on the shares has been extended in regular intervals since October 2019, *see* D.I. 346-1 at 2, and OFAC has *never* suggested (in its letter or elsewhere) that it will not extend it again in January 2022. Indeed, OFAC expressly stated that it reserves the right to suspend, alter, or revoke an existing license "at any time." *Id.* at 3 (citing 31 CFR §§ 501.801, 501.803).