# EXHIBIT A-1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

---

| | | |
|---|---|---|
| **CRYSTALLEX INTERNATIONAL CORPORATION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Misc. No. 17-151-LPS** |
| | : | |
| **BOLIVARIAN REPUBLIC OF VENEZUELA,** | : | |
| | : | |
| **Defendant.** | : | |

---

### REVISED PROPOSED ORDER (A) ESTABLISHING SALE AND BIDDING PROCEDURES, (B) APPROVING SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING PROPOSED SALE PROCEDURES ORDER, (C) AFFIRMING RETENTION OF EVERCORE AS INVESTMENT BANKER BY SPECIAL MASTER AND (D) REGARDING RELATED MATTERS

On January 14, 2021, the Court issued an opinion and corresponding order (D.I. 234, 235) (the "**January Ruling**") following pleadings filed by Plaintiff Crystallex International Corporation ("**Crystallex**"), Defendant Bolivarian Republic of Venezuela (the "**Republic**"), Intervenor Petróleos de Venezuela, S.A. ("**PDVSA**"), Garnishee PDV Holding, Inc. ("**PDVH**"), Intervenor CITGO Petroleum Corp. ("**CITGO Petroleum**," and together with the Republic, PDVSA, and PDVH, the "**Venezuela Parties**"), non-parties Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V. (together, **ConocoPhillips**," and collectively with Crystallex and the Venezuela Parties, the "**Sale Process Parties**") and the United States, which set out "some contours of the sale procedures that [the Court] will follow in conducting a sale of PDVSA's shares in PDVH," including appointment of a special master to "oversee the day-to-day and detailed implementation of the sales procedures."  (D.I. 234 at 34).

Consistent with the January Ruling, on April 13, 2021, the Court appointed Robert B. Pincus as a special master (the "**Special Master**") to assist the Court with the sale of PDVSA's shares in PDVH (D.I. No. 258).  On May 27, 2021, the Court entered the *Order Regarding Special Master* (D.I. No. 277) (the "**May Order**") directing the Special Master to, among other things, devise a plan (the "**Proposed Sale Procedures Order**") for the sale of shares of PDVH (the "**PDVH Shares**") as necessary to satisfy the outstanding judgment of Crystallex and the judgment of any other judgment creditor added to the sale by the Court and/or devise such other transaction as would satisfy such outstanding judgment(s) while maximizing the sale price of any assets to be sold (collectively, the "**Sale Transaction**").

On August 9, 2021, the Special Master filed the *Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* (D.I. 302) (the "**Initial Proposed Sale Procedures Order**") and the *Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order* (D.I. 303) (the "**Report**").

On August 25, 2021, objections to the Initial Proposed Sale Procedures Order were filed by Crystallex (D.I. 317), the Venezuela Parties (D.I. 318), and ConocoPhillips (D.I. 319) (collectively, the "**August 25 Objections**").

On September 10, 2021, the Special Master filed the *Response of Special Master to Objections to Proposed Sale Procedures Order* (D.I [●]) (the "**Reply**") and the *Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of*

*Evercore as Investment Banker by Special Master and (D) Regarding Related Matters*, attached as <u>Exhibit A.1</u> to the Reply (the "**Proposed Sale Procedures Order**").

The Court, having reviewed and considered the Initial Proposed Sale Procedures Order, the Reply, the Proposed Sale Procedures Order, the Report, and the proposed sale procedures contemplated thereby, and having reviewed the August 25 Objections and all other objections filed with the Court, if any (collectively, with the August 25 Objections, the "**Objections**"); and [the Court having held a hearing to consider the relief contemplated by the Proposed Sale Procedures Order on November 8, 2021 (the "**Hearing**")]; [and upon the record of the Hearing]; and the Court having determined that the legal and factual bases set forth in this Order and the Report establish just cause for the relief contemplated herein; and upon all of the proceedings had before the Court in the above captioned case; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:[1]**

A.  **<u>Jurisdiction and Venue</u>**.  The Court has jurisdiction to grant the relief requested herein pursuant to 28 U.S.C. § 1605(a)(6).  Venue is proper before the Court pursuant to 28 U.S.C. § 1963.

B.  **<u>Statutory and Legal Predicates</u>**.  The statutory and legal predicates for the relief granted herein include (a) Rule 69(a) of the Federal Rules of Civil Procedure (the "**Federal Rules**"), (b) Section 324 of Title 8 of the Delaware Code (the "**Delaware General Corporation Law**"), (c) Rule 53 of the Federal Rules ("**Rule 53**"), (d) the Court's general equitable powers to enforce its orders and judgments (*See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962)) and (e) the All Writs Act (*See United States*

---

[1] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

*v. New York Tel. Co.*, 434 U.S. 159, 172 (1977) ("This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.").

        C.    **Sale Procedures**.  As set out in his Report delivered in accordance with Rule 53 contemporaneously with this Order, the Special Master has articulated good and sufficient reasons for the Court to approve the procedures set forth herein (the "**Sale Procedures**"), including the bidding procedures and accompanying notices, substantially in the form attached hereto as **Exhibit 1** (the "**Bidding Procedures**").[2]  For the reasons outlined in the Report, the Sale Procedures, including the Bidding Procedures, are (a) fair, (b) reasonable, (c) appropriate, (d) designed to promote a competitive and robust bidding process to generate the greatest level of interest in the PDVH Shares and result in the highest offer in connection with any Sale Transaction at least sufficient to satisfy the Attached Judgments (as defined below), and (e) reasonably calculated to balance the many competing interests in a dynamic and internationally sensitive set of circumstances.  The Bidding Procedures are substantively and procedurally fair to all parties and potential bidders and they afford notice and a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the PDVH Shares.  The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting deposits and Qualified Bids, are fair, reasonable, and appropriate.

        D.    **Timeline and Marketing Process**.  Beginning on the Launch Date (as defined below), the Special Master, directly or through the assistance of his Advisors (as defined

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures (as defined herein).

below), shall market the PDVH Shares pursuant to the procedures set forth in the Bidding Procedures (the "**Marketing Process**").  The Special Master has articulated good and sufficient reasons for the Marketing Process and the timeline contemplated by the Bidding Procedures, including the procedures for modifying deadlines or postponing implementation thereof.  The Marketing Process and the timeline for implementation of the Sale Procedures is (a) fair, open, comprehensive, and a public process, (b) adequate, (c) reasonable, (d) appropriate, (e) consistent with applicable law, (f) sufficient to promote a competitive and robust bidding and auction process to generate competitive interest in the PDVH Shares, (g) reasonably calculated to maximize value and result in the highest offer in connection with any Sale Transaction at least sufficient to satisfy the Attached Judgments, and (h) reasonably calculated to balance the many competing interests in a dynamic and internationally sensitive set of circumstances.

E.   **Notice Procedures**.  After the Launch Date, in addition to conducting the Marketing Process, the Special Master shall cause a notice, substantially in the form attached hereto as **Exhibit 2** (the "**Sale Notice**"), to be published (i) following the launch of the sale process, and (ii) prior to any Auction or designation of any Stalking Horse Bidder as the Successful Bidder, in *The News Journal*, the *Delaware State News*, the *Wall Street Journal* (national edition), the *USA Today* (national edition), and, if practicable, a regional or local newspaper published or circulated in Venezuela selected by the Special Master in consultation with the Sale Process Parties, in each case for two successive weeks.  A copy of this Order shall be served by e-mail on counsel to the Venezuela Parties.[3]  If any Sale Process Party believes that further service of this order, the Sale Notice or any additional publication or notice is necessary or appropriate, such Sale Process Party

---

[3] The Court takes notice and accepts that the Venezuela Parties have voluntarily waived any requirement under the Delaware General Corporation Law or otherwise regarding publication of notice in Venezuela.  (*See* D.I. 318 at ¶ 24)  The Special Master and the other Sale Process Parties are entitled to rely on this waiver.

shall, within 10 calendar days of entry of this Order, provide the Special Master with a specific list of specific actions or service that the Sale Process Party believes should be undertaken, subject to order of the Court or with the consent of the Special Master.  The foregoing notice procedures (the "**Notice Procedures**") are appropriate and reasonably calculated to provide interested parties and Potential Bidders with timely and proper notice of the Sale Procedures and any Sale Transaction.

F.     **Sufficient Notice**.   The Marketing Process and Notice Procedures are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Sale Procedures, the opportunity to bid pursuant to the Bidding Procedures, the Auction, the Sale Hearing, and any proposed Sale Transaction, and any and all objection deadlines related thereto, and no other or further notice shall be required for this Order and any Sale Transaction, except as expressly required herein.  The Sale Process Parties have had an adequate opportunity to review and provide input on the Sale Notice and Notice Procedures.

G.     **Public Sale**.  The process contemplated by the Sale Procedures, including the Marketing Process, Bidding Procedures, and Notice Procedures, shall constitute a "public sale to the highest bidder" within the meaning of Section 324 of the Delaware General Corporation Law.

H.     **Designation of Stalking Horse Bid**.  The Special Master has articulated good and sufficient reasons for the Court to authorize the Special Master to seek authority from this Court to designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement with (or without) the Stalking Horse Bid Protections (as defined below), at the Special Master's sole discretion and in accordance with the Bidding Procedures and this Order, if he determines that it would be in furtherance of a value maximizing Sale Transaction.   The Stalking Horse Bid

Protections are (a) fair, (b) appropriate, (c) reasonably calculated to incentivize potential bidders to participate in a competitive bidding process, (d) designed to encourage robust bidding by compensating a bidder whose definitive agreement in connection with a Sale Transaction is terminated for the risks and costs incurred in signing and announcing an agreement for a transaction that may not ultimately be completed, and (e) reasonably calculated so as to not unreasonably deter Qualified Bidders from submitting a Qualified Bid.

I.      **Crystallex's Judgment**.  Subject to paragraph 29 of this Order, Crystallex's outstanding judgment is $969,999,752.93 as of August 9, 2021 ("**Crystallex's Judgment**").[4]  The amount of Crystallex's Judgment for the purpose of any satisfaction of payment shall be finalized pursuant to the procedures set forth in this Order and any further order of the Court.

J.      **ConocoPhillips' Judgment**.  As a preliminary matter, and subject to paragraph 29 of this Order, ConocoPhillips' outstanding judgment against PDVSA is $1,289,365,299.91 as of August 9, 2021 ("**ConocoPhillips' Judgment**").  To the extent that ConocoPhillips' Judgment becomes an Attached Judgment (as defined below), the amount of ConocoPhillips' Judgment for the purpose of any satisfaction of payment shall be finalized pursuant to the procedures set forth in this Order and any further order of the Court.

K.      **Retention of Advisors.**  The Special Master has articulated good and sufficient reasons and has retained, as approved by the May Order and as affirmed by this Order, Weil, Gotshal & Manges LLP, Potter Anderson & Corroon LLP, Jenner & Block LLP, Evercore Group L.L.C. ("**Evercore**"), and any additional advisors engaged by the Special Master pursuant to the May Order (collectively, the "**Advisors**").  The terms of the proposed Engagement Letter

---

[4] In paragraph 50 of the Report, the Special Master identified what appears to be a clerical error in judgment entered by the Clerk for the United States District Court for the District of Columbia.  The figure set forth here is the amount of Crystallex's Judgment if the clerical error is rectified or if the Court otherwise determines that such rectification is unnecessary.

between the Special Master and Evercore, the form of which is annexed to this Order as **Exhibit 3** (the **"Proposed Evercore Engagement Letter"**), are (a) fair, (b) reasonable, and (c) appropriate and are hereby approved in all respects.  All obligations owed to Evercore set forth in the Proposed Evercore Engagement Letter, including the fees and reimbursement of reasonable expenses, are approved, and Evercore shall be compensated and reimbursed in accordance with the terms of the Proposed Evercore Engagement Letter, in each case subject to the procedures set forth herein and any other applicable orders of the Court.  For avoidance of doubt, all obligations owed to Evercore pursuant to the Proposed Evercore Engagement Letter shall constitute and be included within the definition of "Transaction Expenses" (as defined below); *provided* that, as set forth below, any Sale Fee other than the Upfront Amount (each as defined in the Proposed Evercore Engagement Letter) shall be paid by the purchaser directly or from any proceeds from a Sale Transaction.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      All Objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, are hereby overruled and denied on the merits with prejudice.

2.      Following the Launch Date, a hearing to consider approval of any Sale Transaction resulting from implementation of the Sale Procedures shall be scheduled for approximately 270 calendar days after the Launch Date and noticed on the docket of the Crystallex Case (the "**Sale Hearing**"), and may be adjourned or rescheduled by the Court upon notice by the Special Master.  At the Sale Hearing, the Court will consider approval of the Successful Bid(s) (as defined below) and Back-up Bid(s), if applicable.  Unless the Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the applicable Sale Transaction(s) and there will be no further bidding at such hearing.

3.      The Special Master shall launch and conduct the Marketing Process at the earlier of: (i) when (x) the Special Master determines, in his sole discretion but in consultation with the Sale Process Parties, (y) the Special Master and his Advisors have performed sufficient due diligence necessary or desirable to launch a value-maximizing sale process, and (z) the Special Master is satisfied with the authorization, FAQs, or other applicable guidance issued by the United States Department of the Treasury's  Office of Foreign Assets Control ("**OFAC**") regarding the launch and viability of the Marketing Process; and (ii) such other time as ordered by the Court (the date on which the Marketing Process is launched, the "**Launch Date**").

4.      Prior to the Launch Date, the Special Master shall not prepare in a material way for the Marketing Process or take material steps toward implementation of the Sale Procedures until the Special Master is satisfied with the authorization, FAQs, or other applicable guidance issued by OFAC regarding preparation for launch of the Marketing Process or the launch and viability of the Marketing Process, including any lack of Executive Branch objection to a potential future order to show cause as to why the launch and participation of prospective bidders in the Marketing Process is not authorized (the date on which the Special Master is satisfied, the "**Preparation Launch Date**"); *provided* that, notwithstanding the foregoing, the Special Master shall be authorized to (i) proactively engage with representatives from the Executive Branch (as defined below) and to take all steps or actions reasonably in furtherance of the issuance of OFAC guidance and/or authorization, (ii) proactively engage with the Sale Process Parties and their advisors, (iii) prepare for and participate in any discussions with the Court and/or any hearing held by the Court, including the Initial Status Conference (as defined below), (iv) participate in any settlement discussions with parties regarding a global claims waterfall or related issues if so directed by the Court, and (v) direct his Advisors to assist him in all actions contemplated in (i) to

9

(iv) of this paragraph 4 and in furtherance of all actions authorized or contemplated by this Order. On and after the Preparation Launch Date, the Special Master and the Special Master's Advisors are hereby directed to prepare for the Marketing Process and take all such preliminary actions in connection therewith, including conducting or performing appropriate due diligence and related analysis.  Without limiting the foregoing, in preparation for the Marketing Process following the Preparation Launch Date, the Special Master shall prepare a customary "teaser" and a "confidential information memorandum" ("**CIM**") to be shared with Potential Bidders and such other materials that the Special Master reasonably determines to be necessary or appropriate.  Subject to the Protective Order, the Special Master shall share a draft of the "teaser" and CIM with counsel to the Sale Process Parties no later than seven (7) calendar days prior to launch of the Marketing Process and shall consult in good faith with the Sale Process Parties regarding the same.

5.     **Status Conferences**.  Unless otherwise ordered by the Court, the Court shall hold a status conference approximately every thirty days commencing from the date of this Order for the Special Master to provide an update to the Court and other interested parties regarding implementation of the Sale Procedures Order; *provided* that subject to the Court's availability, the Special Master or the Sale Process Parties may request that such status conferences occur more or less frequently or on an as-needed basis; *provided further* that nothing shall impede the Special Master's right to meet in camera or share information with the Court to provide updates on the sale process.  The initial status conference shall be held on _____, **2021 at** _____ **__.m.** (**prevailing Eastern Time**) (the "**Initial Status Conference**").   At the Initial Status Conference, the Special Master shall provide the Court and interested parties with an update on his progress and the Special Master's current estimate, if any, regarding launch of the Marketing

Process.  For the avoidance of doubt, the Special Master shall not launch the Marketing Process until, at the earliest, after the Initial Status Conference.

6.       The Special Master shall deliver a copy of this Order to the United States Attorney for the District of Delaware ("**USAO**").  The Court hereby requests that, upon receipt, the USAO take reasonable efforts to ensure that copies of the Order are received by the pertinent offices within the Executive Branch of the United States Government, including the United States Department of Justice, Department of State, and Department of the Treasury (including OFAC) (collectively, the "**Executive Branch**").  Consistent with the Court's prior orders, the Court invites input from the Executive Branch regarding implementation of this Order and the Bidding Procedures at any time and further requests that the representatives from the USAO voluntarily attend the Initial Status Conference and provide a status update at such conference regarding the Executive Branch's decision-making process related to the Marketing Process and consummation of a Sale Transaction, including, but not limited to, whether, in a sale process overseen and directed by this Court in connection with the enforcement of the judgment(s) of this Court, (i) the Special Master, acting as an arm of this Court, requires an OFAC specific license to launch and conduct the Marketing Process; (ii) potential bidders participating in any or all aspect of the Marketing Process require an OFAC specific license; or (iii) an order of this Court approving the sale, cancellation and reissue, or transfer of property subject of its prior order, requires a specific OFAC license.  If the Special Master determines that it is necessary as a precondition to launching the Marketing Process he may request that the Court issue an order for the Executive Branch to show (i) cause as to why the launch and participation of prospective bidders in the Marketing Process is not authorized and (ii) the facts and circumstances that would be necessary for OFAC to provide

approval for any transfer of the PDVH Shares pursuant to the process contemplated by these Sale Procedures.

## The Bidding Procedures

7.      The Sale Procedures, including the Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are hereby approved.  The Bidding Procedures are incorporated herein by reference, and shall govern the bids and proceedings related to any sale of PDVH Shares in connection with a Sale Transaction.  The failure to specifically include or reference any particular provision of the Bidding Procedures in this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.

8.      The Special Master is authorized and directed to take all reasonable actions necessary or desirable to implement this Order, including the Sale Procedures and the Bidding Procedures.

9.      Subject to the Bidding Procedures and this Order, the Special Master shall be authorized, as he may reasonably determine is necessary or desirable, to carry out the Bidding Procedures, including, without limitation, to:  (a) designate a Stalking Horse Bid, if any, pursuant to the Bidding Procedures; (b) determine which bidders are Qualified Bidders; (c) determine which bids are Qualified Bids; (d) determine which Qualified Bid is the highest purchase price received prior to the Auction; (e) determine which Qualified Bid is the Successful Bid; (f) reject any bid that is (i) inadequate or insufficient, (ii) not a Qualified Bid or otherwise not in conformity with the requirements of the Bidding Procedures, or (iii) not a bid that provides for a value maximizing Sale Transaction; (g) adjourn the Auction and/or the Sale Hearing by filing a notice on the Court's docket without need for further notice; and (h) modify the Bidding Procedures upon notice to and

consultation with the Sale Process Parties in a manner consistent with his duties and applicable law.

10.     The Special Master shall be authorized to, in his reasonable judgment, upon notice to and consultation with the Sale Process Parties, modify the Bidding Procedures, including (a) waive terms and conditions with respect to any Potential Bidder, (b) extend the deadlines set forth in the Bidding Procedures, (c) announce at the Auction modified or additional procedures for conducting the Auction, and (d) provide reasonable accommodations to a Stalking Horse Bidder with respect to such terms, conditions, and deadlines set forth in the Bidding Procedures to promote further bids by bidders, in each case, to the extent not materially inconsistent with the Bidding Procedures and this Order; *provided* that a Sale Process Party may, within five (5) calendar days, file an objection to any modification, upon which time the Court shall set a briefing schedule for any reply and a hearing, if applicable, to adjudicate such objection.

11.     All Potential Bidders submitting bids determined by the Special Master to be "Qualified Bids" in accordance with the Bidding Procedures are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Bidding Procedures, the Auction, and any Sale Transaction.  Except as provided in an executed definitive Stalking Horse Agreement, and then subject to the terms thereof, nothing in this Order or the Bidding Procedures shall obligate the Special Master to pursue any transaction with a Qualified Bidder.

12.     The Special Master may, in the exercise of his judgment, identify the highest Qualified Bid(s) that the Special Master reasonably believes to be capable of being timely consummated after taking into account the factors set forth in the Bidding Procedures as the successful bid(s) (a "**Successful Bid**" and, the bidder(s) submitting such bid(s), a "**Successful Bidder**"); *provided*, that if the Special Master receives multiple competing Qualified Bids that

would satisfy the Attached Judgments in full and which the Special Master reasonably believes to be capable of being timely consummated as set forth above, then the Special Master must designate such Qualified Bid that (i) satisfies the Attached Judgments and (ii) provides for the sale of the fewest PDVH Shares, unless PDVSA consents to the Special Master designating the Qualified Bid for more of the PDVH Shares.  As soon as reasonably practicable following selection of a Successful Bid, the Special Master shall file with the Court a notice containing information about the Successful Bidder with the proposed definitive agreement attached thereto (without exhibits or schedules that the Special Master elects to omit) (the "**Notice of Successful Bidder**").

13.     For the avoidance of doubt, subject to approval of any Sale Transaction by the Court, the Special Master shall have authority to select a Qualified Bid as the Successful Bid that provides for a transfer of PDVH Shares free and clear of any claims, encumbrances, and liabilities, which, for the avoidance of doubt, upon entry of an order by this Court approving any Sale Transaction and upon the consummation of any such Sale Transaction, may constitute a full and complete general assignment, conveyance, and transfer of all of PDVSA's or any other person's right, title, and interest in the PDVH Shares and may provide for the valid transfer under applicable law of good and marketable title to the PDVH Shares to the Successful Bidder free and clear of all claims, encumbrances, and liabilities; *provided* that such transfer shall be without prejudice to any such claims, encumbrances, and liabilities attaching to the proceeds of any Sale Transaction with the same nature, validity, priority, extent, perfection, and force and effect that such claims, encumbrances, and liabilities encumbered the PDVH Shares immediately prior to the consummation of any Sale Transaction.

14.     The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is approved, and no other or further notice of the Sale Transaction, the Auction, the Sale Hearing or

the Sale Objection Deadline shall be required if the Special Master publishes such notice in accordance with the Notice Procedures.  The Sale Notice and publication thereof complies in all respects with and satisfies the requirements of Section 324 of the Delaware General Corporation Law.  The Special Master may file on the Court's docket, publish, or otherwise distribute any supplemental notice that he, in his sole discretion, deems appropriate or desirable; *provided* that no such supplemental notice shall be required.  All expenses and fees related to implementation of the Marketing Process and Notice Procedures shall constitute "Transaction Expenses" and shall be payable by the Sale Process Parties.  The Special Master may request that the Sale Process Parties reimburse the Special Master in advance in an amount equal to the amount of any quote received in connection with publication required by the Notice Procedures and, upon any such request, the Sale Process Parties shall each promptly pay their respective one-third share.

### Objections to Sale Transaction

15.     The deadline to object to any Sale Transaction to be approved at the Sale Hearing will be **4:00 p.m. (prevailing eastern time) on the fourteenth day after the Special Master files the Notice of Successful Bid** (the "**Sale Objection Deadline,**" and any such objection, a "**Sale Objection**"); *provided* that, the Special Master may extend such deadline, as the Special Master deems appropriate in the exercise of his reasonable judgment.  If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the Sale Hearing.  The Notice of Successful Bid shall state the specific date and time of the Sale Objection Deadline.

16.     The Successful Bidder(s) shall appear at the Sale Hearing and be prepared, if necessary, to have a representative(s) testify in support of the Successful Bid and the Successful Bidder's ability to close the Sale Transaction contemplated therein in a timely manner.

17.     Any party who fails to timely file with the Court and serve a Sale Objection (including any Sale Process Party) on the Special Master may be forever barred from asserting any Sale Objection to the applicable sale, or to the consummation of any Sale Transaction.

### Designation of Stalking Horse Bidder

18.     **Selection of Stalking Horse Bidder**.  The Special Master is authorized to, in the exercise of his judgment and at his sole discretion, designate a Stalking Horse Bidder for the PDVH Shares and following such designation, subject to approval by the Court, enter into a Stalking Horse Agreement for the sale of any such PDVH Shares, in accordance with the terms of this Order and the Bidding Procedures.

19.     **Stalking Horse Bid Protections**.  Subject to the Bidding Procedures and approval by this Court, the Special Master may: (a) establish an initial overbid minimum and subsequent bidding increment requirements not to exceed 5.00% of the Stalking Horse Bid Implied Value, subject to adjustment for any Bids for a lesser percentage of the PDVH Shares than the Stalking Horse Bid (the "**Initial Minimum Overbid Amount**"); (b) offer any Stalking Horse Bidder a break-up fee in an amount agreed to by the Special Master in consultation with the Sale Process Parties, but not to exceed 3.00% of the Stalking Horse Bid Implied Value (a "**Termination Payment**") payable either (i) in the event that an overbid is consummated, out of the proceeds from the consummation of such overbid or (ii) by PDVH, CITGO Holding, Inc. ("**CITGO Holding,**" and collectively with CITGO Petroleum, "**CITGO**") and CITGO Petroleum in circumstances where any of PDVH, CITGO Holding, and/or CITGO Petroleum is materially responsible for the events that give rise to termination of the Stalking Horse Agreement; (c) provide that, if the Stalking Horse Bidder bids on PDVH Shares at the Auction, the Stalking Horse Bidder will be entitled to a credit up to the amount of its Termination Payment against the increased purchase price for the PDVH Shares; (d) provide for the reimbursement of reasonable and

documented fees and expenses actually incurred by the Stalking Horse Bidder by PDVH, CITGO Holding and CITGO Petroleum solely under certain circumstances in which the transactions contemplated by the Stalking Horse Agreement are not consummated; (e) provide that any sale order shall seek to transfer the PDVH Shares free and clear of any claims upon them; and (f) in consultation with the Sale Process Parties, provide other appropriate and customary protections to a Stalking Horse Bidder (the Termination Payment and the other bid protections described in this paragraph collectively are referred to as the "**Stalking Horse Bid Protections**").  The Special Master is authorized to offer the Stalking Horse Bid Protections at his sole discretion if he determines that such Stalking Horse Bid Protections would be in furtherance of a value maximizing transaction; *provided* that, (a) absent further order of the Court, the Special Master shall not enter into a Stalking Horse Agreement and (b) any Stalking Horse Bid Protections offered shall not be effective until entry by the Court of an order approving such Stalking Horse Bid Protections and subsequent execution by the Special Master of the Stalking Horse Agreement.

20.     To the extent the Special Master designates a Stalking Horse Bidder with respect to any Sale Transaction, the Special Master shall, as soon as reasonably practicable following the execution of a Stalking Horse Agreement, file with the Court a notice containing information about the Stalking Horse Bidder with the proposed Stalking Horse Agreement attached thereto (without exhibits or schedules that the Special Master elects to omit) (the "**Notice of Stalking Horse Bidder**").  Any Stalking Horse Bid Protections shall be described in reasonable detail, including the amount and calculation of such Stalking Horse Bid Protections and the amount of the Stalking Horse Bid Implied Value, in the Notice of Stalking Horse Bidder. Contemporaneously with the filing of the Notice of Stalking Horse Bidder, the Special Master

shall file a proposed order approving the Special Master's entry into the Stalking Horse Agreement.

21.     Objections to the Special Master's entry into a Stalking Horse Agreement, including any provision of Stalking Horse Bid Protections in connection therewith (each a "**Stalking Horse Objection**"), must be in writing, state with particularity the basis and nature of any objection, and be filed with the Court no later than (10) calendar days after the filing of the Notice of Stalking Horse Bidder (the "**Stalking Horse Objection Deadline**"), upon which time the Court shall set a briefing schedule for any reply and a hearing, if applicable, to adjudicate such objection.

22.     If a timely Stalking Horse Objection is filed and served with respect to a Stalking Horse Agreement, the proposed Stalking Horse Bid Protections provided for under that agreement shall not be approved until the objection is resolved by agreement of the objecting party or by entry of an order by the Court resolving such objection.  If no timely Stalking Horse Objection is filed and served with respect to a particular Stalking Horse Agreement, then the Court may enter an Order approving the Stalking Horse Bid Protections provided for under such agreement upon the expiration of the Stalking Horse Objection Deadline.

23.     For all purposes under the Bidding Procedures, any Stalking Horse Bidder approved as such pursuant to this Order shall be considered a Qualified Bidder, and the Stalking Horse Bid shall be considered a Qualified Bid.  In the event that the Stalking Horse Bid is the only Qualified Bid received by the Special Master by the Bid Deadline, the Stalking Horse Bidder shall be deemed the Successful Bidder with respect to the assets set forth in the Stalking Horse Agreement.

## Credit Bids

24.     Crystallex, and any other holder of an Attached Judgment, may submit a "credit bid" pursuant to the Bidding Procedures (each, a "**Credit Bid**"); *provided* that such Credit Bid shall comply with the Bidding Procedures, including the requirement that any credit bid include a cash component or other funding mechanism sufficient to pay (or otherwise contemplate payment in full in cash in a manner acceptable to the Special Master) (a) any applicable Termination Payment, (b) all Transaction Expenses, and (c) all obligations secured by senior liens on the PDVH Shares (if any).  For the avoidance of doubt, a Credit Bid must be submitted by the deadlines set forth in the Bidding Procedures applicable to all other Bids.

25.     Except as otherwise agreed by the Special Master, in connection with the submission of any Credit Bid (including a Credit Bid by Crystallex), any party seeking to submit a Credit Bid shall cause two of its representatives to each submit a sworn statement and affidavit that unequivocally and unconditionally states (a) the then outstanding and unpaid amount of such party's judgment as of the date the Credit Bid is submitted and (b) that such representative submits to the personal jurisdiction of this Court in connection with making such statement and affidavit. Except as otherwise agreed by the Special Master, in connection with the consummation of any Credit Bid that becomes the Successful Bid, the same two representatives shall each submit a supplemental statement and affidavit stating that all payments or consideration received by the person or entity in connection with or in respect of the applicable judgment that served as the basis for the Credit Bid have been disclosed to the Court and the Special Master.

26.     Any person or entity that submits a Credit Bid shall promptly (but in no event later than within 2 business days) notify the Special Master if such person or entity receives (or otherwise becomes entitled to receive) any payment or consideration in connection with or in respect of the judgment that served as the basis for the Credit Bid.

**Attached Judgments**

27. **Satisfaction of All Attached Judgments.**  Nothing in this Order prohibits or in any way impairs the rights of the Venezuela Parties to satisfy Crystallex's Judgment (or any other Attached Judgment) in full prior to consummation of a Sale Transaction.  If at any time all Attached Judgments become satisfied in full (or otherwise are consensually resolved), then the Special Master shall cease implementation of the Sale Procedures and seek further direction from the Court.  The Sale Process Parties shall remain liable for any Transaction Expenses incurred through the date that is two business days after the Special Master receives notice of satisfaction of all Attached Judgments.  In the event that the Special Master selects a Successful Bid, the value of which implies satisfaction of less than all Attached Judgments, then any holder of an Attached Judgment that receives no proceeds in satisfaction of any part of their Attached Judgment shall be excused from contributing to the payment of any Transaction Expenses incurred after the date thereof.  The Sale Process Parties shall be reimbursed for any paid Transaction Expenses as set forth in the May 2021 Order; *provided* that if the process is terminated due to satisfaction or resolution of all Attached Judgments by the Venezuela Parties, then, solely in such circumstance (and unless otherwise agreed to by Crystallex and ConocoPhillips), the Venezuela Parties shall pay and reimburse Crystallex and ConocoPhillips for the full amount of all Transaction Expenses paid by Crystallex and ConocoPhillips.

28. **Additional Judgment Deadline**.  By no later than _____, 20__ or such later date ordered by the Court in a subsequent order (the "**Additional Judgment Deadline**"), the Court will decide in accordance with applicable law which, if any, additional judgments (the "**Additional Judgments**," and with the Crystallex Judgment, the "**Attached Judgments**") are to be considered by the Special Master for purposes of the Sale Transaction.  Except as otherwise ordered by the Court, following the Additional Judgment Deadline, the Special Master

shall implement the Sale Procedures, based on the Attached Judgments as of the Additional Judgment Deadline.  For purposes of implementing this Order, the Special Master shall only consider judgments that are determined to be Attached Judgments by the Court by the Additional Judgment Deadline.  For the avoidance of doubt, unless otherwise ordered by the Court, (i) the Additional Judgment Deadline does not impair or in any way limit any person's or entity's right to seek attachment to any proceeds following consummation of the Sale Transaction and (ii) no PDVH Shares shall be sold, nor proceeds from any sale thereof distributed, to satisfy any judgments that are not Attached Judgments.

29.     **Final Calculation of Attached Judgments**.  Thirty days prior to the designation of a Stalking Horse Bidder, the Special Master will file under seal a notice or recommendation with the Court seeking final determination of any Attached Judgment, including the rate at which interest continues to accrue and serve such notice or recommendation on the holder of the Attached Judgment and the Sale Process Parties.  No later than seven calendar days after service, the holder of the Attached Judgment and the Sale Process Parties shall file any objection to the Special Master's notice or recommendation.  If no objection is filed, the amount set forth in the Special Master's notice or recommendation shall become the amount of the Attached Judgment for purposes of the Sale Procedures.  If an objection is filed, a hearing will be scheduled and the Court shall determine the amount of the Attached Judgment.

30.     By no later than 21 calendar days following entry of this Order, any holder of an Attached Judgment or holder of a judgment seeking to be an Attached Judgment shall deliver to the Special Master and to counsel for the Venezuela Parties a statement indicating the amount such creditor contends remains outstanding with respect to their Attached Judgment or judgment.  Such creditor shall provide reasonably sufficient supporting documentation regarding any alleged

outstanding balance and all amounts and assets received by reason of the Attached Judgment or judgment and any other information pertinent to understanding the outstanding balance of the applicable Attached Judgment or judgment.

## Amendments & Additional Powers of the Special Master

31.     **Additional Guidance from the Court**.  If the Special Master, in his sole discretion, but after consultation with the Sale Process Parties, determines that (a) a material modification or amendment of this Order or the Sale Procedures (including the Bidding Procedures) that is not otherwise permitted (each a "**Proposed Amendment**") or (b) additional powers or guidance from the Court, is reasonably necessary or desirable for any reason, including to (i) ensure a value maximizing sale process or (ii) effectuate a value maximizing sale process through a Sale Transaction, the Special Master may seek such Proposed Amendment or additional powers or guidance, as applicable, by filing a request or recommendation with the Court with notice to the Sale Process Parties.

32.     **Requests of the Special Master**.  In addition to the cooperation provisions in the May Order, the Sale Process Parties, including CITGO and PDVH, and each of their subsidiaries, including their directors, officers, managers, employees, agents, and advisors, shall promptly cooperate and comply with the requests of the Special Master.  If the Special Master specifically invokes this paragraph 32 in connection with any such request, then the person or entity that is the subject or recipient of such request shall comply no later than five (5) business days after the date upon which the request was made, unless the Special Master sets a different deadline for which a response is due.  If any person objects to a request by the Special Master that specifically invokes this paragraph 32, including objections based on a belief that such request is unreasonable, such person shall file a motion with the Court seeking relief from the Special Master's request.  Absent a motion seeking relief from the Court, the Special Master may (but

shall have no obligation to) explain the basis of his request to the subject or recipient; *provided* that, if requested by the subject or recipient, the Special Master shall meet and confer with such person at least one business day before such person's deadline to file a motion seeking relief from the Special Master's request.  The Special Master may, in his sole discretion, recommend to the Court appropriate sanctions with respect to any person or entity that fails to promptly comply with a request absent a timely request for relief from the Court.  For the avoidance of doubt, the terms of this paragraph are in addition to the terms of the May Order; *provided* that the scope of the May Order shall in no way be read to limit the effect of this paragraph.

33.     **CITGO Management Team**.  Without limiting paragraph 32, if requested by the Special Master, CITGO shall use reasonable efforts to make members of the CITGO management team available for meetings with bidders or potential bidders, which may include, in the Special Master's sole discretion, the most senior members of the CITGO management team. CITGO shall further use reasonable efforts to timely respond to the Special Master's diligence requests or bidder-specific questions, including, if applicable, by providing accurate and complete due diligence materials, documentation, and backup support requested by the Special Master.

34.     **Additional Powers of the Special Master**.  In addition to the duties and powers set forth in this Order, the Special Master shall have all of the powers and duties set forth in prior orders of the Court, including the May Order.  Without limiting the foregoing, the Special Master may issue, without limitation, orders, subpoenas and interrogatories to any person in the course of performing his duties.  Further, the Special Master may, in his sole discretion and consistent with Rule 53 of the Federal Rules, issue orders to compel delivery of information from any person or entity in connection with implementing the Sale Procedures, including to ensure a comprehensive and value-maximizing sale process, to ensure that property that is directly or

indirectly the subject of this Order is not transferred or otherwise encumbered by the Venezuela Parties or to determine the amount of claims against the Venezuela Parties. Following consultation with the Sale Process Parties, the Special Master may by order impose on a party any non-contempt sanction provided by Rule 37 or Rule 45 of the Federal Rules, and may recommend a contempt sanction against a party and sanctions against a nonparty, consistent with Rule 53(c) of the Federal Rules.

### Additional Provisions

35.     **Rosneft Trading S.A.**  On August 31, 2018, Rosneft Trading S.A. (together with any successor in interest, "**RTSA**") submitted to this Court's jurisdiction by filing *Rosneft Trading S.A.'s Motion to Intervene* (D.I. 100), which the Court granted on December 12, 2019 (D.I. 154).  By no later than twenty-one calendar days following entry of this Order and service of this Order by the Special Master on counsel of record for both RTSA and PDVSA, each of RTSA and PDVSA shall each deliver to the Special Master a separate statement (each statement, a "**Disclosure Statement**") on a non-confidential basis indicating the amount of any outstanding balance of obligations, if any, purported to still be secured by a pledge of the equity of CITGO Holding (each, a "**CITGO Holding Pledge**") as well as copies of any documents evidencing any obligations whether now or previously owed.  In addition to the foregoing, each Disclosure Statement shall state, at a minimum:

- whether the disclosing party or any of its affiliates has entered into any (a) export agreement that has not expired or otherwise been terminated (or may not be expired or may not yet have been terminated) and is secured by a CITGO Holding Pledge, including any amendments, modifications, or other changes (each, an "**Export Agreement**"), (b) any loan, prepayment agreement, guarantee agreement, other agreements related to obligations owed under an Export Agreement or any other type of agreement that has outstanding

obligations (or may have obligations in the future) purported to be secured by a CITGO Holding Pledge or (c) any other document or agreement that has outstanding obligations (or may have obligations in the future) purported to be secured by a pledge of shares or other equity interests in CITGO Holding in favor of RTSA, its successor in interest, or any assignee (collectively, the documents in (a), (b), and (c), the "**RTSA Documents**");

- if the RTSA Documents purport to have outstanding obligations (or may have obligations in the future) that remain secured by a pledge on the shares or other equity interests of CITGO Holding, the date under which such obligations will be complete or are anticipated to be complete and any facts relevant to determining the date that such obligations will be complete;

- any information in RTSA's, PDVSA's or any of their affiliates' possession, as applicable, regarding the specific and precise physical location of any shares or interests of CITGO Holding pledged in favor of RTSA, its successor, or any assignee or any other facts relevant for determining the physical location of such shares or interests and the custodian of such shares or interests;

- if RTSA has sold or otherwise assigned its obligations secured by any pledge on the equity of CITGO Holding, RTSA and PDVSA shall submit any documentation evidencing such transfer (and any OFAC license obtained in connection with such transfer) and use all reasonable efforts to detail what amounts were outstanding at the time of such transfer or assignment; and

- any other information reasonably pertinent to the Court's inquiry regarding the RTSA Documents as to which RTSA, PDVSA, or their affiliates have or should have knowledge.

36.     In connection with each Disclosure Statement, the disclosing party shall deliver copies by email to the Special Master of any agreements, amendments, and available support for any outstanding balance or facts regarding such outstanding balance, if any.  RTSA

and PDVSA shall cooperate with and otherwise comply with any reasonable follow-up questions by the Special Master or his Advisors.

37.     If RTSA or PDVSA fail to respond or otherwise provide sufficient documentation of any alleged obligations, the Special Master shall file a report and recommendation with the Court that includes a proposed order to be issued by the Court in response to the failure of either RTSA or PDVSA to comply with this Order, which may include, with respect to RTSA, a permanent injunction enjoining RTSA and any entity or person directly or indirectly controlled by RTSA from enforcing any pledge or claim against the equity of CITGO Holding.  If either RTSA or PDVSA demonstrate to the Special Master that it is acting in good faith and working to provide the requested information within a reasonable period of time, the Special Master may, in his sole discretion, extend the twenty-one calendar day deadline to submit the Disclosure Statement and copies of related documents; *provided* that the Special Master is not obligated to grant such an extension.

38.     **Dispute Resolution**.  All bidders that participate in the sale and bidding process shall be deemed to have (a) consented to the jurisdiction of the Court to enter any order or orders, which shall be binding in all respects, in any way related to the Sale Procedures or Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction, interpretation, and enforcement of any agreement or any other document relating to a Sale Transaction; (b) waived any right to a jury trial in connection with any disputes relating to the Sale Procedures or Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction, interpretation, and enforcement of any agreement or any other document relating to a Sale Transaction; and (c) consented to the entry of a final order or judgment in any way related to the Sale Procedures or Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction,

interpretation, and enforcement of any agreement or any other document relating to a Sale Transaction if it is determined that the Court would lack jurisdiction to enter such a final order or judgment absent the consent of the parties.

39.     **Communications & Negotiations with Third Parties**.    The Special Master is authorized and empowered, in his sole discretion and at any time, to communicate and, as applicable, negotiate with any bidder, potential bidder, or governmental or regulatory body. Further, in consultation with the Sale Process Parties, the Special Master is authorized and empowered, in his sole discretion and at any time, to communicate and, as applicable, negotiate with any other person or entity, including any contract counterparty, any indenture trustee, administrative agent, or collateral agent, any holders of that certain series of bonds issued by PDVSA due in 2020 (the "**PDVSA 2020 Bondholders**") or other person related to PDVH, CITGO, and their affiliates to the extent reasonably necessary or desirable in connection with implementation of the Sale Procedures and any Sale Transaction.  If the Special Master determines it is reasonably necessary or desirable to negotiate a change, modification, or amendment to, or seek a consent or waiver under, any contract of PDVH, CITGO, or any of their subsidiaries in connection with any Bid or Potential Bid or implementation of the Sale Procedures or any Sale Transaction, including with respect to any "change-of-control" provisions in any contract, the Special Master shall work with PDVH and CITGO, as applicable, to negotiate such change, modification, amendment, consent, or waiver.  If either PDVH or CITGO, as applicable, does not cooperate with or otherwise consent to any particular negotiation, change, modification, amendment, consent, or waiver, the Special Master shall seek additional guidance from the Court.

40.     **Communications with Potential Bidders**.  The Sale Process Parties shall not, directly or indirectly, contact or otherwise communicate with any potential bidders regarding

this Order, the Sale Procedures, any bid or potential bid, or any Sale Transaction, other than as expressly permitted in writing by the Special Master.  For the avoidance of doubt, this provision does not prevent or prohibit contact or communications in the ordinary course of business consistent with past practice on matters unrelated to this Order, the Sale Procedures, any bid or potential bid, or any Sale Transaction.

41.    The Sale Process Parties may propose a list of Potential Bidders for the Special Master to solicit Bids from in connection with the Marketing Process and the Special Master shall consider in good faith inclusion of such Potential Bidders.  If the Special Master elects to exclude or declines to solicit a Bid from a Potential Bidder identified by a Sale Process Party, the Special Master shall notify the applicable Sale Process Party of such decision as soon as reasonably practicable thereafter and, if appropriate, explain his rationale for the decision.  If the applicable Sale Process Party reasonably believes that the Special Master inappropriately or unfairly excluded or declined to solicit a Bid from a Potential Bidder identified by such Sale Process Party, then such Sale Process Party shall file a letter that shall not exceed three pages with the Court and serve such letter on the Special Master and the other Sale Process Parties.  The Special Master shall have two business days following service to respond by letter not to exceed three pages.  After considering the parties' submissions, the Court will issue an appropriate order.

42.    **Communications among Sale Process Parties.**  Subject in all cases to the *Special Master Confidentiality Order* (D.I. 291) (the "**Protective Order**"), nothing in this Order prohibits the Sale Process Parties from communicating with each other; *provided* that such communications do not involve or relate to colluding in connection with a Bid that has been submitted or may be submitted by the applicable Sale Process Party or a Bid by any Potential Bidder.  For the avoidance of doubt, this provision is not intended to limit in any way the ability

of some or all of the Sale Process Parties to discuss settlement or satisfaction of any Attached Judgment or to discuss the terms, content, or grounds of any potential objection to be filed with the Court.  The Special Master shall consult with the Sale Process Parties periodically and as appropriate in implementing the Sale Procedures.

   43. **Sharing of Information with Potential Bidders**.  Upon giving notice to the applicable Sale Process Party, the Special Master shall be permitted, in his sole discretion, to share any and all information obtained related to the Sale Process Parties, regardless of whether marked or designated "confidential" or "highly confidential" pursuant to the Protective Order, with any bidder or potential bidder that has entered into a confidentiality arrangement in the form attached hereto as **Exhibit 4** (the "**Confidentiality Agreement**"); *provided* that the Special Master shall be authorized to make reasonable changes to the extent requested by a Potential Bidder.  The Special Master shall file each executed Confidentiality Agreement under seal with the Court and shall provide notice of execution of such Confidentiality Agreement to the Sale Process Parties. The Special Master shall exercise reasonable care in providing confidential information to bidders and Potential Bidders and, if applicable, shall use reasonable efforts to consult any Sale Process Party that marks or designates any information as "confidential" or "highly confidential" prior to its disclosure to any Potential Bidder.  The Special Master shall use reasonable efforts to consult PDVH and CITGO in connection with sharing competitively sensitive information and, if determined to be appropriate by the Special Master, to establish firewall protections or "clean team" protocols with respect to any Potential Bidder that is a competitor, customer or supplier or under such other circumstances as the Special Master determines to be appropriate. Notwithstanding the foregoing, solely with respect to information designated as "highly confidential" by ConocoPhillips, unless the Court orders otherwise, the Special Master shall seek

the reasonable consent of ConocoPhillips, which consent shall not be unreasonably withheld, prior to disclosing any such information to any Potential Bidder.

44.     **Sharing of Information with the United States**.  The Special Master shall be authorized to share with the United States information obtained related to the Sale Process Parties and any bidder or potential bidder that the Special Master determines, in his sole discretion, is reasonably necessary or desirable in connection with the issuance of any regulatory approval or is reasonably necessary or desirable in connection with implementation of the Sale Procedures and any Sale Transaction, including any guidance or license from OFAC, *provided* that the Special Master shall request confidential treatment of information shared with the United States that has been designated as confidential or highly confidential by a Sale Process Party.

45.     **Engagement of Advisors**.  The Special Master has retained, as approved by the May Order and as affirmed by this Order, the Advisors.  The Special Master's engagement of Evercore, pursuant to the Proposed Evercore Engagement Letter, is hereby approved and the terms of the Engagement Letter in all respects shall be binding on the Special Master, including with respect to payment of the Upfront Amount of the Sale Fee by the Sale Process Parties.  Any amounts owed to Evercore under the Proposed Evercore Engagement Letter shall be payable to Evercore pursuant to the terms of the May Order, including the Sale Fee and the Upfront Amount of the Sale Fee; *provided* that in no circumstance absent further order of the Court, shall any Sale Fee (other than the Upfront Amount) be payable directly by the Sale Process Parties and any such amount shall, in each circumstance, be payable out of any proceeds or other cash consideration provided in connection with a Sale Transaction; *provided further* that, notwithstanding anything to the contrary in the May Order, any Sale Fee under the Proposed Evercore Engagement Letter

shall be paid in full in cash before any Sale Process Party is reimbursed for Transaction Expenses paid pursuant to this Order or the May Order.

46.    **Judicial Immunity & Exculpation**.  The Special Master is entitled to judicial immunity in performing his duties pursuant to this Order, including all actions taken to implement the Sale Procedures, and all other orders of the Court. The Special Master's Advisors are entitled to judicial immunity in connection with all actions taken at the direction of, on behalf of, or otherwise in connection with representation of or advising the Special Master. No person or entity shall be permitted to pursue any cause of action or commence or prosecute any suit or proceeding against the Special Master or the Advisors, or their respective employees, officers, directors, attorneys, auditors, representatives, agents, successors or assigns, for any reason whatsoever relating to the Crystallex Case, implementation of the Sale Procedures, or in connection with any Sale Transaction, or the performance of the Special Master's and his Advisors' duties pursuant to this Order or any other orders of the Court, or any act or omission by the Special Master or any Advisor in connection with the foregoing. All interested persons and entities, including but not limited to the Sale Process Parties, any purchaser or prospective purchaser of the PDVH Shares, and all persons acting in concert with them, are hereby enjoined and restrained from pursuing any such cause of action or commencing any such action or proceeding. If any person or entity attempts to pursue any such cause of action or commence any suit or proceeding against the Special Master or any of the Advisors with knowledge of this Order (or continues to pursue or prosecute any cause of action, suit or proceeding after having received notice of this Order), the Court shall issue an order to show cause to such person or entity and a hearing will be scheduled to consider appropriate relief, which may include payment of fees and expenses incurred by the Special Master or any of the Advisors in connection therewith. To the maximum extent

permitted by applicable law, neither the Special Master nor his Advisors nor their respective employees, officers, directors, attorneys, auditors, representatives, agents, successors and assigns will have or incur, and are hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any claim in connection with or arising out of all actions taken to implement the Marketing Process, Sale Procedures, Bidding Procedures, or Sale Transaction, or the performance of the Special Master's and his Advisors' duties pursuant to this Order and all other orders of the Court.

47.   **Payment of Transaction Expenses**.   The Special Master shall be compensated and reimbursed for all expenses (including fees and expenses of his Advisors) on a monthly basis by the Sale Process Parties pursuant to the procedures set forth in the May Order (collectively, such compensation and expenses, the "**Transaction Expenses**"); *provided* that the Special Master shall have the discretion to seek from the Court authorization to reallocate payment of any Transaction Expenses if the circumstances require (*e.g.*, if any single Sale Process Party generates an inordinate number of disputes or if a Sale Process Party's position in a dispute is found to be unreasonable).   The Special Master shall comply with the procedures established pursuant to the Court's *Memorandum Order* (D.I. 338) and any subsequent order of the Court regarding the provision of a budget to the Sale Process Parties.

48.   **Location of PDVH Shares**.   By no later than 30 calendar days after entry of this Order, the Venezuela Parties, including PDVSA, shall inform the Special Master as to the specific and precise physical location of the PDVH Shares held by PDVSA or any other facts relevant for determining the physical location of the PDVH Shares held by PDVSA and the custodian of the shares.   If the applicable Venezuela Party is unaware of the location of the PDVH Shares, such party shall inform the Special Master as such in writing.   If at any point thereafter the

applicable Venezuela Party becomes aware of any change in circumstance regarding the location of the PDVH Shares, then such party shall update the Special Master in writing.

49.     If the location of the PDVH Shares cannot be located with reasonable precision or if the Special Master reasonably determines that the custodian of the PDVH Shares is unlikely to cooperate in connection with an order compelling the person or entity to transfer the PDVH Shares in connection with any Sale Transaction, the Special Master shall file a recommendation with the Court in advance of the Sale Hearing regarding the appropriate steps to be taken to ensure that the Successful Bidder is able to actually purchase the applicable PDVH Shares in connection with the applicable Sale Transaction.  The Special Master's recommendation may include, if appropriate, an order compelling PDVH to issue new certificates or uncertificated shares to the applicable Successful Bidder and cancel the registration of the shares attached to the books of PDVH.

50.     **Other Provisions**.  All provisions of the May Order shall remain in full force and effect, except for any that directly and irreconcilably conflict with an express provision of this Order; *provided* that nothing in the May Order shall in any way be used to limit the scope of the terms and provisions of this Order.

51.     The Special Master is authorized to make non-substantive changes to the Bidding Procedures, the Sale Notice, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors.

52.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

53.     In addition to and without limiting any of the provisions set forth herein, the Special Master is authorized to take all reasonable steps necessary or appropriate to carry out this Order.

54.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated:  _____, 2021
       Wilmington, Delaware

_____
HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

**<u>Exhibit 1</u>**

**Bidding Procedures**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

----------------------------------------------------------------------------------------------------

|                                        |   |                        |
|----------------------------------------|---|------------------------|
| **CRYSTALLEX INTERNATIONAL**           | : |                        |
| **CORPORATION,**                       | : |                        |
|                                        | : |                        |
|                  **Plaintiff,**        | : |                        |
|                                        | : |                        |
|                   v.                   | : | **Misc. No. 17-151-LPS** |
|                                        | : |                        |
| **BOLIVARIAN REPUBLIC**                | : |                        |
| **OF VENEZUELA,**                      | : |                        |
|                                        | : |                        |
|                  **Defendant.**        | : |                        |

----------------------------------------------------------------------------------------------------

## BIDDING PROCEDURES

### Overview

On January 14, 2021, the United States District Court for the District of Delaware (the "**Court**") issued an opinion and corresponding order setting forth certain contours for the sale of the shares of PDV Holding, Inc. ("**PDVH**") owned by Petróleos de Venezuela, S.A. ("**PDVSA**") in connection with the above-captioned proceeding (the "**Crystallex Case**").  In furtherance thereof, the Court appointed Robert B. Pincus as special master (the "**Special Master**") on April 13, 2021 to assist the Court with the sale of PDVSA's shares of PDVH.

On [___], 2021, the Court entered an order (Docket No. __) (the "**Sale Procedures Order**"), which, among other things, authorized the Special Master to solicit bids for the sale of the shares of PDVH and related transactions (collectively, a "**Sale Transaction**") and approved these procedures and accompanying notices (the "**Bidding Procedures**") for the consideration of the highest bid that the Special Master believes to be capable of being timely consummated after taking into account the factors set forth below in connection therewith.[1]

These Bidding Procedures describe, among other things:  (i) the procedures for bidders to submit bids for shares of PDVH; (ii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids, respectively; (iii) the process for negotiating the bids received; (iv) the conduct of any Auction if the Special Master receives Qualified Bids; (v) the procedure for the ultimate selection of any Successful Bidder; and (vi) the process for approval of a Sale Transaction at the Sale Hearing (each, as defined herein).

----------------------------------------

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Procedures Order.

**The Special Master may, subject to the exercise of his reasonable judgment, in a manner consistent with his duties to the Court, and in good faith consultation with the Sale Process Parties (as defined below), modify, delay implementation of, or terminate these Bidding Procedures, waive terms and conditions set forth herein, extend any of the deadlines or other dates set forth herein or adjourn any Auction and/or Sale Hearing, in each case, at any time and without specifying the reasons therefor, to the extent not materially inconsistent with these Bidding Procedures and/or the Sale Procedures Order.  The Special Master may also, in his sole discretion, terminate discussions with any or all prospective bidders at any time and without specifying the reasons therefor.**

### Summary of Important Dates

| Key Event | Deadline |
|---|---|
| Special Master to Launch Marketing Process and Establish Data Room in accordance with terms of the Sale Procedures Order.[2] | Launch ("**L**") |
| Deadline to Submit Non-Binding Indications of Interest | L+ 45 days |
| Deadline to Submit Stalking Horse Bids | L+ 90 days |
| Deadline for Special Master to Designate Stalking Horse Bidder and Enter into Stalking Horse Agreement | L + 150 days |
| Deadline for Special Master to File Notice of Stalking Horse Bidder | As soon as reasonably practicable following designation by the Special Master |
| Deadline to Submit Bids | L + 210 days |
| Deadline for Special Master to Notify Bidders of Status as Qualified Bidders | L + 217 days |
| Auction to be conducted at the offices of Potter Anderson & Corroon LLP (1313 N. Market Street, 6th Floor, Wilmington, DE 19801-6108) or such other location as is mutually agreeable to the Special Master and each of the Sale Process Parties | L + 230 days |
| Deadline to File Notice of Successful Bid | As soon as reasonably practicable following conclusion of the Auction or, if no Auction, selection of the Successful Bid |

---

[2]  Prior to launch of the marketing process, a notice will be filed on the docket of the Crystallex Case setting forth the specific date of each deadline.

| Deadline to File Objections to Sale Transaction | L + 250 days |
|---|---|
| Deadline for Parties to Reply to Objections to Sale Transaction | L + 263 days |
| Sale Hearing | L + 270 days |

**Assets To Be Sold:  Shares of PDVH**

Interested parties may submit bids for the purchase and sale of some or all of the shares of PDVH in accordance with the terms and conditions set forth herein.  To avoid any ambiguity, parties may submit bids for less than 100% of the shares of PDVH so long as such bid satisfies the Attached Judgments.

PDVH is the sole shareholder and direct parent of CITGO Holding, Inc. ("**CITGO Holding**"), which in turn is the sole shareholder and direct parent of CITGO Petroleum Corporation ("**CITGO Petroleum**," and together with CITGO Holding, "**CITGO**").

**Due Diligence**

The Special Master will post copies of certain documents available to the Special Master related to the shares of PDVH and CITGO to the confidential electronic data room (the "**Data Room**") managed by the Special Master.  To access the Data Room, an interested party must submit to the Special Master's Advisors:

      i.      an executed confidentiality agreement substantially in the form attached to the Sale Procedures Order; and

      ii.     sufficient information, as reasonably determined by the Special Master, to allow the Special Master to determine that the interested party intends to access the Data Room for a purpose consistent with these Bidding Procedures.

An interested party that meets the aforementioned requirements to the reasonable satisfaction of the Special Master shall be a "**Potential Bidder**."  As soon as reasonably practicable, the Special Master will provide such Potential Bidder access to the Data Room; provided that, such Data Room access and access to any other due diligence materials and information may be terminated by the Special Master in his sole discretion at any time for any reason whatsoever, including that a Potential Bidder does not become a Qualified Bidder, these Bidding Procedures are terminated, the Potential Bidder breaches any obligations under its confidentiality agreement, the Special Master becomes aware that information submitted by the Potential Bidder is inaccurate or misleading or the Potential Bidder is unable to provide sufficient information to demonstrate that it has the financial wherewithal to consummate a Sale Transaction.  The Special Master may restrict or limit access of any Potential Bidder to the Data Room if the Special Master determines, based on his reasonable judgment, that certain information in the Data Room is sensitive, proprietary or otherwise not appropriate for disclosure to such Potential Bidder.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Special Master and his Advisors regarding the ability of such Potential Bidder to consummate a Sale Transaction.

The Special Master may provide any Potential Bidder with any additional information requested by Potential Bidders (subject to any restrictions pursuant to applicable law, rule or regulation) that the Special Master believes to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be directed to the Special Master's financial advisor, Evercore Group L.L.C. ("**Evercore**") (Attn: Ray Strong (ray.strong@evercore.com); William Hiltz (hiltz@evercore.com); Patrick O'Shea (patrick.oshea@evercore.com); David Ying (ying@evercore.com); and Stephen Goldstein (stephen.goldstein@evercore.com)).

Neither the Special Master nor any of his representatives shall be obligated to furnish any information of any kind whatsoever relating to PDVH or any of its subsidiaries to any person or entity who (i) is not a Potential Bidder, (ii) does not comply with the participation requirements set forth herein, or (iii) in the case of competitively sensitive information, is a competitor of PDVH or any of its direct or indirect subsidiaries.

Each of the Sale Process Parties may recommend to the Special Master documents or additional information to be included in the Data Room.

### Non-Binding Indications of Interest

Parties who are interested in purchasing shares of PDVH are strongly encouraged to submit to the Special Master by **[Launch + 45 days] at 4:00 p.m. (ET)** a written non-binding indication of interest that identifies the percentage of PDVH shares they are seeking to purchase (each a "**Non-Binding Indication of Interest**").  Non-Binding Indications of Interest should be sent to the Special Master's investment banker, Evercore (Attn: Ray Strong (ray.strong@evercore.com); William Hiltz (hiltz@evercore.com); Patrick O'Shea (patrick.oshea@evercore.com); David Ying (ying@evercore.com); and Stephen Goldstein (stephen.goldstein@evercore.com)).

Submitting a Non-Binding Indication of Interest by the deadline listed herein does not obligate the interested party or the Special Master to consummate a transaction and does not obligate the interested party to submit a formal bid or otherwise further participate in the bidding process.  It also does not exempt an interested party from having to submit a Qualified Bid by the applicable Bid Deadline or to comply with these Bidding Procedures to participate in any subsequent Auction for the shares in which such party is indicating an interest, all as described below.  For the avoidance of doubt, a party that does not submit a Non-Binding Indication of Interest is not precluded from submitting a Qualified Bid by the Bid Deadline.

The Special Master requests (and strongly encourages) Potential Bidders to, at a minimum, include the following items in their Non-Binding Indication of Interest:

      i.      the percentage of shares of PDVH to be included in the interested party's bid;

ii.     the cash purchase price in U.S. dollars that the interested party would be prepared to pay, the amount and a detailed description of any non-cash components of the purchase price and a brief description of the methodology used by the interested party to select its proposed value;

iii.     any minority shareholder rights, protections, or other desired terms in connection with any bid for less than 100% of the PDVH Shares;

iv.     expected sources and uses for payment of the purchase price, including either confirmation that no financing would be required to consummate a Sale Transaction, or alternatively, the type and amount of any financing that would be so required and confirmation that such financing would not be a condition to consummation of a Sale Transaction;

v.     identification of the acquiring entity that would be party to a Sale Transaction and details regarding the ownership of such entity;

vi.     a description of any and all shareholder, regulatory or other third-party approvals, consents and notifications and other conditions that the interested party views as being necessary to consummate the Sale Transaction and the interested party's expected timeline for satisfying such conditions or approvals;

vii.     the interested party's consent for the Special Master, in his discretion, to share information with U.S. Government regulators, including the Department of the Treasury's Office of Foreign Assets Control ("**OFAC**"), pertaining to such interested party or the Non-Binding Indication of Interest;

viii.     any material assumptions underlying the Non-Binding Indication of Interest regarding the interested party's determination of a purchase price or the assets to be purchased, including the interested party's proposed treatment of the outstanding indebtedness of PDVH and its subsidiaries and the purported pledge of shares of CITGO Holding (the "**CITGO Holding Pledge**") for the benefit of holders of that certain series of bonds issued by PDVSA due in 2020 (the "**PDVSA 2020 Bondholders**");

ix.     sufficient information to demonstrate that the interested party has the financial wherewithal to timely consummate a Sale Transaction;

x.     a specific and comprehensive list of all due diligence information and meetings with management (including site visits) and others which the interested party would require in order to be able to submit a definitive, binding offer without due diligence conditions and the interested party's specific plans and timeline for completion of such due diligence;

xi.     any internal or other approvals that would be required by the interested party in order to execute definitive documentation in respect of a Sale Transaction and the interested party's expected timeline for obtaining such approvals,

and an indication as to any board, committee or other internal approvals or support the interested party has obtained in connection with submission of the Non-Binding Indication of Interest; and

xii.        any other factors that are relevant to the Non-Binding Indication of Interest.

## **Bid Deadline**

A Potential Bidder that desires to submit a bid for shares of PDVH shall deliver electronic copies of its bid so as to be received by the Special Master no later than **[Launch Date + 210 days] at 4:00 p.m. (ET)** (the "**Bid Deadline**"); provided that, the Special Master may, in consultation with the Sale Process Parties, upon consideration of relevant factors, including any Non-Binding Indications of Interest received by the Special Master, accelerate or extend the Bid Deadline without further order of the Court subject to providing notice to all Potential Bidders and any Stalking Horse Bidder. **The submission of a bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the assets specified in such bid.** The Special Master will have the right in his sole discretion to prohibit any party that does not submit a bid by the Bid Deadline from (i) submitting any offer after the Bid Deadline or (ii) participating in any Auction.

Bids should be submitted by email to the following representatives of the Special Master:

| Weil, Gotshal & Manges LLP | Evercore |
|---|---|
| Ray C. Schrock, P.C. | Ray Strong |
| (Ray.Schrock@weil.com) | (ray.strong@evercore.com) |
| Michael J. Aiello | William Hiltz |
| (Michael.Aiello@weil.com) | (hiltz@evercore.com) |
| Alexander W. Welch | David Ying |
| (Alexander.Welch@weil.com) | (ying@evercore.com) |
| Renee M. Pristas | Stephen Goldstein |
| (Renee.Pristas@weil.com) | (stephen.goldstein@evercore.com) |
| Jason Hufendick | Patrick O'Shea |
| (Jason.Hufendick@weil.com) | (patrick.oshea@evercore.com) |

## **Designation of Stalking Horse Bidder**

Designation of Stalking Horse Bidder. A Potential Bidder that desires to make a stalking horse bid (each a "**Stalking Horse Bidder**," and its bid, a "**Stalking Horse Bid**") shall deliver electronic copies of its Stalking Horse Bid so as to be received by the Special Master no later than **[Launch + 90 days] at 4:00 p.m. (ET)** (the "**Stalking Horse Bid Deadline**"); provided that, the Special Master may, in consultation with the Sale Process Parties, extend the Stalking Horse Bid Deadline without further order of the Court subject to providing notice to all Potential Bidders. A Stalking Horse Bid shall include and be consistent with the form and content of a Bid explained in the following section and may provide for the provision of Stalking Horse Bid Protections (as defined below).

Following the Stalking Horse Bid Deadline, the Special Master may, in consultation with the Sale Process Parties, designate a Stalking Horse Bidder and, following approval from the Court, enter into an agreement (a "**Stalking Horse Agreement**") with such Stalking Horse Bidder.  To the extent the Special Master designates any Stalking Horse Bidder, the Special Master shall promptly and as soon as reasonably practicable file with the Court a notice (the "**Notice of Stalking Horse Bidder**") that identifies the Stalking Horse Bidder, discloses any Stalking Horse Bid Protections, specifies the equity value implied by the total enterprise value of the Stalking Horse Bid as reasonably determined by the Special Master (the "**Implied Value**" and the Implied Value of the Stalking Horse Bid, the "**Stalking Horse Bid Implied Value**"), and attaches the Stalking Horse Agreement.

Good Faith Deposit.  Upon entry into the Stalking Horse Agreement by the Special Master, the Stalking Horse Bidder shall make a cash deposit that is refundable under the circumstances described in these Bidding Procedures in the amount that is the lesser of (i) ten percent (10%) of the Stalking Horse Bid Implied Value or (ii) $50,000,000, unless otherwise agreed to by the Special Master, in consultation with the Sale Process Parties and the Stalking Horse Bidder.

Stalking Horse Bid Protections.  In connection with any Stalking Horse Agreement, the Special Master may, subject to Court approval, agree to:  (i) establish initial overbid minimum and subsequent bidding increment requirements not to exceed 5.0% of the Stalking Horse Bid Implied Value, subject to adjustment for any Bids for a lesser percentage of the PDVH Shares than the Stalking Horse Bid; (ii) a break-up fee in an amount agreed to by the Special Master in consultation with the Sale Process Parties (as defined herein) but not to exceed 3.0% of the Stalking Horse Bid Implied Value (a "**Termination Payment**") payable either (a) in the event that an overbid is consummated, out of the proceeds from the consummation of such overbid or (b) by PDVH, CITGO Holding, and CITGO Petroleum in circumstances where any of PDVH, CITGO Holding, and/or CITGO Petroleum is materially responsible for the events that give rise to termination of the Stalking Horse Agreement; (iii) provide that if the Stalking Horse Bidder bids on shares of PDVH at the Auction, the Stalking Horse Bidder will be entitled to a credit up to the amount of any Termination Payment against the increased purchase price for its subsequent Bid; (iv) provide for the reimbursement of reasonable and documented fees and expenses actually incurred by the Stalking Horse Bidder by PDVH, CITGO Holding and CITGO Petroleum solely under certain circumstances in which the transactions contemplated by the Stalking Horse Agreement are not consummated ("**Expense Reimbursement**"); (v) provide that any sale order shall seek to transfer the PDVH Shares free and clear of any claims upon them; and (vi) provide other reasonable, appropriate or customary protections to a Stalking Horse Bidder (the bid protections described in this paragraph collectively are referred to as the "**Stalking Horse Bid Protections**").  The amount and a description of any Stalking Horse Bid Protections shall be included in the Notice of Stalking Horse Bidder.

Following approval from the Court, the Stalking Horse Bid Protections shall be binding upon the Special Master's entry into the Stalking Horse Agreement.

Designation of Back-Up Bid.  In the event that the Special Master does not receive any Qualified Bids by the Bid Deadline (other than the Stalking Horse Bid), the Stalking Horse Bidder shall be deemed the Successful Bidder with respect to the assets specified in such bidder's Stalking Horse Bid or the Stalking Horse Agreement, as applicable.  If, however, the Special Master identifies a

Bid other than the Stalking Horse Bid as the Successful Bid, then the Stalking Horse Bid may be designated by the Special Master as a back-up bid (the "**Back-Up Bid**" and such bidder, the "**Back-Up Bidder**").  Except as otherwise agreed in a Stalking Horse Agreement, the Back-Up Bid shall remain open and irrevocable until the earliest to occur of:  (i) consummation of a Sale Transaction with the Successful Bidder; (ii) the release of such Back-Up Bid by the Special Master in writing; and (iii) 180 days from the announcement of the Back-Up Bid (unless otherwise agreed to by the Special Master, in consultation with the Sale Process Parties) (such date, the "**Back-Up Bid Expiration Date**").

If a Sale Transaction with a Successful Bidder is terminated prior to the Back-Up Bid Expiration Date, the Back-Up Bidder shall be deemed a Successful Bidder and shall be obligated to consummate the transactions contemplated by the Back-Up Bid as if it were a Successful Bid; *provided* that the Special Master is not required to accept any bid or designate a Successful Bid or Back-Up Bid.

## Form and Content of Bid

A bid is a signed document from a Potential Bidder received by the Special Master by the applicable Bid Deadline that identifies the proposed purchaser by its legal name and any other party that will be participating in connection with the bid (a "**Bid**").  To be considered for selection as a Stalking Horse Bid and/or to constitute a "**Qualified Bid**," a Bid must include, at a minimum, the following:[3]

    i.    <u>Proposed Agreement</u>.  Each Bid must include an agreement executed by the Potential Bidder (the "**Proposed Agreement**") that provides for the acquisition of all or some of the shares of PDVH, together with a redline comparing the Proposed Agreement to the form of agreement distributed by the Special Master to Potential Bidders.

    ii.    <u>Purchase Price; Percentage of Shares of PDVH Purchased; Cash Requirements; Assumed Liabilities; Credit Bid; Assumptions or Related Transactions</u>.  Each Bid must clearly set forth:

        (a)    <u>Purchase Price</u>.  Each Bid must clearly identify the total purchase price to be paid by the Potential Bidder (the "**Purchase Price**"), including the amount to be paid in cash in U.S. dollars and any non-cash components, including, without limitation, a Credit Bid, stock and/or the assumption of liabilities.

        (b)    <u>Percentage of Shares of PDVH Purchased</u>.  Each Bid must, in the Proposed Agreement, clearly identify the percentage

---

[3]  The Special Master, in consultation with the Sale Process Parties, may waive any of the following requirements with respect to any Bid.

of shares of PDVH and any other assets that the Potential Bidder seeks to acquire or exclude.

(c)     <u>Shareholder or Minority Shareholder Rights</u>.  If the Bid is for less than 100% of the PDVH Shares, the Bid should clearly specify any required shareholder or minority shareholder rights or protections contemplated by the Bid.

(d)     <u>Cash Requirements</u>.  Each Bid must provide sufficient cash consideration to pay in full (i) any applicable Termination Payment and (ii) all Transaction Expenses (as defined in the Sale Procedures Order).

(e)     <u>Assumed Liabilities</u>.  Each Bid must clearly identify any additional liabilities the Potential Bidder seeks to assume.

(f)     <u>Credit Bid</u>.  Persons or entities holding a perfected security interest in the shares of PDVH specified in the Bid may seek to submit a credit bid (a "**Credit Bid**") on such shares, to the extent permitted by applicable law.  For the avoidance of doubt, a Credit Bid must (i) comply with the "Cash Requirements" set forth in section (ii)(d) of these Bidding Procedures and (ii) provide sufficient cash to satisfy any obligations secured by a senior lien on the PDVH Shares. Notwithstanding the foregoing, the Special Master may waive the "Cash Requirements" with respect to a Credit Bid if the applicable Credit Bid provides for payment of the applicable obligation in full in cash in a manner acceptable to the Special Master or, to the extent applicable, if such senior creditor consents.  Any Potential Bidder submitting a Credit Bid must certify under oath the amount of its claim as of the date of the Credit Bid and again prior to consummation of any Sale Transaction if the Credit Bid is deemed the Successful Bid, in each case, in accordance with the terms of the Sale Procedures Order.

(g)     <u>Assumptions or Related Transactions</u>.  Each Bid must clearly (i) identify any underlying material assumptions regarding the business of PDVH and CITGO or the Potential Bidder's determination of a Purchase Price or the assets to be purchased, including  the Potential Bidder's proposed treatment of the outstanding indebtedness of PDVH and its subsidiaries and the CITGO Holding Pledge and (ii) disclose any related transactions to be pursued or effectuated by the Potential Bidder in connection with the transactions contemplated by the Bid and the Proposed Agreement.

iii.   <u>Unconditional Offer</u>.  A statement that the Bid is formal, binding, and unconditional, is not subject to any further due diligence or financing contingency, and is irrevocable until the Special Master notifies the Potential Bidder that such Bid is not a Successful Bid or a Back-Up Bid and files the Notice of Successful Bid in the Crystallex Case.

iv.   <u>Proof of Financial Ability to Perform</u>.  Each Bid must contain a description of sources and uses for payment of the Purchase Price and such financial and other information that allows the Special Master, in consultation with the Sale Process Parties, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to timely consummate a Sale Transaction.  Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments if needed to consummate the Sale Transaction (not subject to, in the Special Master's sole discretion, any unreasonable conditions), contact information for verification of such information, including for any financing sources, and any other information reasonably requested by the Special Master to demonstrate that such Potential Bidder has the ability to consummate a Sale Transaction in a timely manner.

v.   <u>Required Approvals</u>.  A statement or evidence (i) that the Potential Bidder has made or will make in a timely manner (a) all filings and disclosures necessary to comply with the regulations of OFAC (or that the Potential Bidder has already received any necessary authorization), (b) all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, and any other antitrust laws, as applicable, and pay the fees associated with such filings and (c) all necessary filings in connection with any applicable review by the Committee on Foreign Investment in the United States (CFIUS); (ii) of the Potential Bidder's plan and ability to obtain or make all requisite shareholder, governmental, regulatory, or other third-party approvals, consents and notifications (including a list of all contemplated third-party approvals, consents and notifications) and the proposed timing for the Potential Bidder to undertake the actions required to obtain or make such approvals, consents and notifications; (iii) that the Bid is reasonably likely, after taking into consideration antitrust and any other regulatory matters, the Potential Bidder's prior experience, and any other relevant considerations, to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Special Master; and (iv) of the Potential Bidder's consent for the Special Master, in his discretion, to share with U.S. Government regulators, including OFAC, information pertaining to the Potential Bidder or the Bid.  A Potential Bidder further agrees that its legal counsel will coordinate in good faith with the Special Master's legal counsel to discuss and explain such Potential Bidder's regulatory and other consent analysis, strategy, and timeline for securing all such approvals and consents as soon as reasonably practicable.

vi.     Disclosure of Identity and Authorization.  Each Bid must (i) fully disclose the identity of the Potential Bidder and each entity that will be bidding or otherwise participating in such bid, including the acquiring entity that would be party to the Sale Transaction and details regarding the ownership of such entity, and the complete terms of any such participation, and (ii) include evidence of corporate or other organizational authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a Bid (including execution of the Potential Bidder's Proposed Agreement), participation in any Auction, and closing of the transactions contemplated by the Potential Bidder's Proposed Agreement in accordance with the terms of such agreement and these Bidding Procedures.

vii.    No Entitlement to Expense Reimbursement or Other Amounts.  With the exception of any Stalking Horse Bid, each Bid must expressly state that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement.

viii.   Special Master's Judicial Immunity.  Each Bid must expressly state that (i) the Potential Bidder agrees that in no circumstance shall the Special Master or his Advisors be personally or otherwise liable for any amounts or obligations owed to the Potential Bidder and (ii) the Special Master and his Advisors are acting as an arm of the Court and are entitled to judicial immunity in the performance of their duties.

ix.     Joint Bids.  The Special Master may approve joint Bids in his sole discretion on a case-by-case basis.

x.      Representations and Warranties.  Each Bid must include the following representations and warranties:

        a.      a statement that the Potential Bidder has had an opportunity to conduct and has completed any and all due diligence regarding the assets to be purchased prior to submitting its Bid;

        b.      a statement that the Potential Bidder recognizes and acknowledges that the Special Master, his Advisors, PDVH, and CITGO make no representations, covenants, or warranties (or any other promise) as to the accuracy or completeness of any information provided in the Data Room or otherwise made available by the Special Master and his Advisors in connection with the bid process;

        c.      a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents regarding the assets to be purchased and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied,

11

by operation of law or otherwise, regarding the assets to be purchased or the completeness of any information made available in connection therewith;

d.       a statement that the Potential Bidder has not engaged in any collusion with respect to the submission of its Bid;

e.       a statement that all proof of financial ability to consummate a Sale Transaction in a timely manner is true and correct; and

f.       a statement that the Potential Bidder agrees to be bound by the terms and conditions of the Bidding Procedures.

A Potential Bidder must also accompany its Bid with:

xi.       the contact information of the specific person(s) whom the Special Master or his Advisors should contact in the event that the Special Master has any questions or wishes to discuss the Bid submitted by the Potential Bidder.

xii.       a covenant to cooperate with the Special Master and the Sale Process Parties to provide pertinent factual information regarding the Potential Bidder's ownership and operations reasonably required to respond to, or otherwise analyze issues arising with respect to, U.S. sanctions laws and regulations, the Committee on Foreign Investment in the United States, any applicable antitrust laws, and other relevant regulatory requirements or requests.

xiii.       if the Purchase Price of a Bid includes non-cash components, a detailed analysis of the value of any such non-cash components, including any assumptions related thereto, and reasonable back-up documentation to support such value.

xiv.       a cash deposit that is refundable under the circumstances described in these Bidding Procedures in the amount that is the lesser of (i) ten percent (10%) of the Implied Value of the Bid or (ii) $50,000,000 (such cash deposit, a "**Good Faith Deposit**"), unless otherwise agreed to by the Special Master, in consultation with the Sale Process Parties, and a Potential Bidder; provided that, a Potential Bidder submitting a Credit Bid shall only be required to provide a Good Faith Deposit in the amount that is the lesser of (i) 10% of the cash component of such Bid or (ii) $50,000,000.

## **Good Faith Deposit**

Except as otherwise provided herein with respect to a Stalking Horse Bidder, a Good Faith Deposit must be deposited by a Potential Bidder on or prior to the Bid Deadline, with an escrow agent selected by the Special Master (the "**Escrow Agent**") pursuant to an escrow agreement to be provided by the Special Master. To the extent a Bid is modified before, during, or after any Auction, the Special Master reserves the right to require that such Potential Bidder adjust its Good Faith Deposit so that it equals the lesser of (i) ten percent (10%) of the Implied Value or

(ii) $50,000,000 (or such other amount as is agreed to by the Special Master in consultation with the Sale Process Parties in accordance with subsection xiv of *Form and Content of Bid*).  If a Qualified Bidder is required to adjust its Good Faith Deposit, its status as a Qualified Bidder shall be suspended pending satisfaction of such adjustment.

## Sale Process Parties

At all times during the bidding process, the Special Master will consult with the Court and the Sale Process Parties and may do so on an *ex parte* basis *in camera*.  In addition, throughout the bidding process, the Special Master and his Advisors will regularly and timely consult with the following parties (through their applicable advisors) (collectively, the "**Sale Process Parties**"):

      i.       The Venezuela Parties, including PDVH and CITGO;

      ii.      Crystallex; and

      iii.     ConocoPhillips.

The Special Master shall use reasonable efforts to timely provide copies of any Non-Binding Indications of Interest, Bids, Stalking Horse Bids, and other relevant documents to the Sale Process Parties, *provided* that the Special Master shall not consult with or provide copies of any Non-Binding Indications of Interest, Bids, or Stalking Horse Bids to any Sale Process Party pursuant to the terms of these Bidding Procedures if such Sale Process Party has a Bid pending, or has expressed any written interest in bidding for the PDVH Shares.  If a Sale Process Party chooses not to submit any Bid, then such party may receive copies of all Bids following expiration of the latest possible Bid Deadline (as such Bid Deadline may be extended by the Special Master pursuant to the terms of these Bidding Procedures); *provided* that (i) such Sale Process Party shall be required to hold any Bids or other documents received in strict confidence in accordance with the terms of the *Special Master Confidentiality Order* [D.I. 291] and (ii) upon a Sale Process Party's receipt of a copy of any Bid, such Sale Process Party shall thereafter be precluded from submitting any bid or other offer for the PDVH Shares.  For the avoidance of doubt, if the only Bid that a Sale Process Party receives a copy of is the Stalking Horse Bid designated by the Special Master, such Sale Process Party may submit a Bid like any other Potential Bidder pursuant to the terms of these Bidding Procedures.

Without the express written consent of the Special Master, no Sale Process Party shall contact or in any way communicate with a Potential Bidder except as permitted by paragraph 40 of the Sale Procedures Order.

For the avoidance of doubt, any consultation rights afforded to the Sale Process Parties by these Bidding Procedures shall not limit the Special Master's discretion in any way and shall not include the right to veto any decision made by the Special Master in the exercise of his judgment in good faith.

In addition, the Special Master may in his sole discretion (but is not obligated to) consult with the United States, the Intervenor PDVSA 2020 Bondholders, other creditors of the Republic and PDVSA and any of its direct and indirect subsidiaries, and any additional person or entity that the Special Master determines it would be appropriate to consult in connection with

implementation of the Sale Procedures Order and these Bidding Procedures.  For the avoidance of doubt, such parties shall not be "Sale Process Parties" as defined herein.

**Review of Bids; Designation of Qualified Bids**

The Special Master, in consultation with the Sale Process Parties following expiration of the latest possible Bid Deadline (as such Bid Deadline may be modified by the Special Master pursuant to the terms of these Bidding Procedures), will evaluate Bids that are timely submitted and may engage in negotiations with Potential Bidders who submitted Bids as the Special Master deems appropriate in the exercise of his judgment, based upon the Special Master's evaluation of the content of each Bid.

A Bid received that is determined by the Special Master, in consultation with the Sale Process Parties, to meet the requirements set forth herein will be considered a "**Qualified Bid**" and any bidder that submits a Qualified Bid (including any Stalking Horse Bid) will be considered a "**Qualified Bidder**."

By no later than **[Launch + 217 days]** (the "**Qualified Bid Deadline**"), the Special Master shall determine, in his reasonable judgment, and in consultation with the Sale Process Parties, which of the Bids received by the Bid Deadline qualifies as a Qualified Bid.  The Special Master shall notify each Potential Bidder who submits a Qualified Bid of its status as a Qualified Bidder by the Qualified Bid Deadline.

Solely if the Court has approved of the Special Master entering into a Stalking Horse Agreement and such Stalking Horse Agreement has been executed, no other Bid shall be considered a Qualified Bid unless such Bid meets the following mandatory requirements (the "**Mandatory Requirements**"):

i.       The Bid must have a greater Implied Value than the Stalking Horse Bid Implied Value or be within a range of such Implied Value which, in the Special Master's judgment, is sufficient to meet the requirements of obtaining a value maximizing transaction, *provided*, that this requirement shall not preclude a Bid for less than 100% of the PDVH Shares from being considered a Qualified Bid so long as such Bid satisfies the Attached Judgments in cash and in full;

ii.      In addition to the minimum amount of consideration necessary to satisfy the foregoing requirement, the Bid must provide for additional consideration sufficient to pay in full in cash all Stalking Horse Bid Protections, including any Termination Payment and Expense Reimbursement amounts payable; and

iii.     The Bid must provide for either (i) sufficient proceeds to pay no less of the Attached Judgments than the Stalking Horse Bid or (ii) proceeds in excess of the proceeds provided for in the Stalking Horse Bid after payment of all Stalking Horse Bid Protections.

14

In evaluating the Bids (and only Bids that meet the Mandatory Requirements, if applicable), the Special Master may take into consideration the following non-binding factors:

i.      the amount of the Purchase Price and Credit Bid, including other non-cash consideration, as applicable, set forth in the Bid and the Implied Value of the Bid (provided that for purposes of evaluating competing bids, every U.S. dollar of a Credit Bid shall be treated the same as a U.S. dollar from a cash or other non-cash Bid, and a Credit Bid shall not be considered inferior to a comparable cash or other non-cash Bid because it is a Credit Bid);

ii.     the percentage of shares of PDVH to be purchased and any other assets included in or excluded from the Bid;

iii.    the value to be provided under the Bid, including the net economic effect taking into account any Stalking Horse Bidder's rights to any Termination Payment and any other Stalking Horse Bid Protections;

iv.    any benefit to PDVH and its subsidiaries from any assumption of liabilities or waiver of liabilities;

v.     the transaction structure and execution risk, including conditions to, and speed, complexity, timing and certainty of, closing of the Sale Transaction, termination provisions, availability of financing and financial wherewithal of the Qualified Bidder to pay the Purchase Price and satisfy all other requirements and commitments, and any required shareholder, governmental, regulatory or other third-party approvals or consents; and

vi.    any other factors the Special Master may deem relevant consistent with his duties to the Court and applicable law.

The Special Master reserves the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid. The Special Master may amend or waive the conditions precedent to being a Qualified Bidder (including any Mandatory Requirements) at any time in his reasonable judgment, in consultation with the Sale Process Parties and in a manner consistent with his duties to the Court and under applicable law (as reasonably determined in good faith by the Special Master in consultation with his legal counsel).

The Special Master may, in his discretion, seek the cooperation of third parties to evaluate a Bid pursuant to the Sale Procedures Order. The Special Master, in consultation with the Sale Process Parties, may accept a single Bid or multiple partial Bids, if taken together, such multiple partial Bids would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction).

Without the written consent of the Special Master, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid during the period that such Qualified

Bid remains binding as specified herein; provided that, any Qualified Bid may be improved at any Auction as set forth in these Bidding Procedures.

### Failure to Receive Qualified Bids Other Than Stalking Horse Bid

If no Qualified Bid other than the Stalking Horse Bid is received by the Qualified Bid Deadline, the Special Master will not conduct an Auction, and shall file a notice with the Court indicating that no Auction will be held. In such circumstance, the Special Master shall also file with the Court a notice designating the Stalking Horse Bid as the Successful Bid and the Stalking Horse Bidder as the Successful Bidder as soon as reasonably practicable after the Qualified Bid Deadline.

### Auction Procedures

If the Special Master receives more than one Qualified Bid (inclusive of any Stalking Horse Bid), the Special Master shall conduct the Auction **beginning at 10:00 a.m. (ET) at the offices of Potter Anderson & Corroon LLP, 1313 N. Market Street, 6th Floor, Wilmington, DE 19801-6108** or such other location mutually agreeable to the Special Master and each of the Sale Process Parties, on **[Launch + 230 days]**, **or such other later date as may be determined by the Special Master in consultation with the Sale Process Parties.** Only a Qualified Bidder will be eligible to participate in the Auction, subject to such other limitations as the Special Master may impose in good faith. In addition, professionals and/or other representatives of the Special Master and the Sale Process Parties shall be permitted to attend and observe the Auction. Each Qualified Bidder shall be required to confirm, both before and after the Auction, that it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction.

The Special Master may, in consultation with the Sale Process Parties, adopt rules for the Auction at any time that the Special Master reasonably determines it to be appropriate to promote a spirited and robust auction. Any rules developed by the Special Master will provide that all bids in the Auction will be made and received on an open basis, and all other bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each bidder placing a bid at the Auction will be fully disclosed to all other bidders participating in the Auction, and that all material terms of a bid submitted in response to any successive bids made at the Auction will be disclosed to all other bidders. Each Qualified Bidder will be permitted to receive what the Special Master, in consultation with the Sale Process Parties, reasonably determines to be an appropriate amount of time to respond to the previous bid at the Auction. The Auction will be conducted openly and shall be transcribed or recorded.

The Special Master may, in consultation with the Sale Process Parties, identify the highest Qualified Bid that the Special Master reasonably believes to be capable of being timely consummated after taking into account the factors set forth above as the successful bid (a "**Successful Bid**" and the bidder submitting such bid, a "**Successful Bidder**"); *provided*, that if the Special Master receives multiple competing Qualified Bids that would satisfy the Attached Judgments in full and which the Special Master reasonably believes to be capable of being timely consummated as set forth above, then the Special Master must designate such Qualified Bid that (i) satisfies the Attached Judgments and (ii) provides for the sale of the fewest PDVH Shares, unless PDVSA consents to the Special Master designating the Qualified Bid for more of the PDVH

16

Shares.  As set forth above, the Special Master may also identify the Stalking Horse Bidder and its Stalking Horse Bid as a Back-Up Bid.  If a Sale Transaction with a Successful Bidder is terminated prior to the Back-Up Bid Expiration Date, the Back-Up Bidder shall be deemed a Successful Bidder and shall be obligated to consummate the transactions contemplated by the Back-Up Bid as if it were a Successful Bid.  For the avoidance of doubt, the Special Master is not required to accept any bid or designate a Successful Bidder or Back-Up Bidder.

Within one (1) business day after the Auction, a Successful Bidder shall submit to the Special Master, for the Special Master's review, approval and coordination of execution, definitive documentation in respect of the Sale Transaction executed by the Successful Bidder and memorializing the terms of a Successful Bid.  A Successful Bid may not be assigned to any party without the written consent of the Special Master.

At any time before entry of an order approving an applicable Sale Transaction envisioned by a Qualified Bid, the Special Master reserves the right to and may reject such Qualified Bid if such Qualified Bid, in the Special Master's sole discretion, is:  (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Federal Rules of Civil Procedure, Delaware or other applicable law, an order of the Court, these Bidding Procedures, or the terms and conditions of the applicable Sale Transaction; or (iii) contrary to the best interests of the Parties and ConocoPhillips in the Crystallex Case.

### Post-Auction Process

If an Auction is held, as soon as reasonably practicable thereafter, the Special Master shall file with the Court a notice of a Successful Bid and Successful Bidder.  Unless otherwise required by applicable law, the Special Master shall not consider any bids submitted after the conclusion of the Auction.

Within seven (7) days after the Auction, the Special Master shall direct the Escrow Agent to return the deposit of any bidder who is not declared a Successful Bidder or a Back-Up Bidder. Upon the authorized return of any such deposit, the bid of such Potential Bidder or Qualified Bidder, as applicable, shall be deemed revoked and no longer enforceable.

A Successful Bidder's deposit shall be applied against the cash portion of the Purchase Price of such bidder's Successful Bid upon the consummation of a Sale Transaction.

In addition to the foregoing, the deposit of a Qualified Bidder will be forfeited to the Special Master if (i) the Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted herein, during the time the Qualified Bid remains binding and irrevocable or (ii) the Qualified Bidder is selected as a Successful Bidder and refuses or fails to enter into the required definitive documentation or to consummate a Sale Transaction in accordance with these Bidding Procedures.  A forfeited deposit shall first be used to pay any unpaid Transaction Expenses and, if any excess remains thereafter, the Special Master shall seek guidance from the Court regarding the distribution thereof.

## Sale Hearing

If the Special Master elects to proceed with a Sale Transaction in accordance with these Bidding Procedures, the Special Master will seek the entry of an order authorizing and approving, among other things, the Sale Transaction with the Successful Bidder, including the definitive documentation in respect of such Sale Transaction, at a hearing before the Court to be held on **[Launch + 270 days]** (the "**Sale Hearing**").  The objection deadline for any Sale Transaction to be approved at the Sale Hearing will be **[Launch + 250 days] at 4:00 p.m. (ET)** (the "**Sale Objection Deadline**"); provided that, the Special Master may extend the Sale Objection Deadline, as the Special Master deems appropriate in the exercise of his reasonable judgment and in consultation with the Sale Process Parties.

Objections to any Sale Transaction, including any objection to the sale of shares of PDVH free and clear of liens, claims, encumbrances, and other interests (each, a "**Sale Objection**"), must: (i) be in writing; (ii) state the name and address of the objecting party and such party's interest(s) in the Crystallex Case, any related proceeding, or PDVH and its affiliates; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Special Master, would obviate such objection (if such objection can be resolved through inclusion of acceptable language); (iv) conform to the applicable rules of the Court; and (v) be filed with the Court in accordance with the customary practices of the Court.  If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the Sale Hearing.

A Successful Bidder shall appear at the Sale Hearing and be prepared to have a representative(s) testify in support of the Successful Bid and such Successful Bidder's ability to close the Sale Transaction in a timely manner.

Any party who fails to file with the Court a Sale Objection by the Sale Objection Deadline may be forever barred from asserting, at the Sale Hearing or thereafter, any Sale Objection with regard to a Successful Bidder, or to the consummation of a Sale Transaction, including with respect to the transfer of shares of PDVH to a Successful Bidder, free and clear of all liens, claims, encumbrances, and other interests.  Failure to object to a Sale Transaction shall be deemed consent to such Sale Transaction.

## Satisfaction of All Attached Judgments

Nothing in these Bidding Procedures (or the Sale Procedures Order) prohibits or in any way impairs the rights of the Venezuela Parties to pay Crystallex's Judgment (or any other Attached Judgment) in full prior to consummation of a Sale Transaction.  If at any time all Attached Judgments become satisfied in full (or otherwise are consensually resolved), then the Special Master shall cease implementation of the Sale Procedures in accordance with the Sale Procedures Order.

## Consent to Jurisdiction and Authority as Condition to Bidding

All bidders that participate in the bidding process shall be deemed to have (i) consented to the core jurisdiction of the Court to enter any order or orders, which shall be binding in all

respects, in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction, interpretation and enforcement of any agreement or any other document relating to a Sale Transaction; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction, interpretation and enforcement of any agreement or any other document relating to a Sale Transaction; and (iii) consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction, interpretation and enforcement of any agreement or any other document relating to a Sale Transaction if it is determined that the Court would lack jurisdiction to enter such a final order or judgment absent the consent of the parties.

## Reservation of Rights

The Special Master may, in his reasonable judgment, in a manner consistent with his duties to the Court and the Sale Procedures Order, and in good faith consultation with the Sale Process Parties, modify, delay implementation of or terminate these Bidding Procedures, waive terms and conditions set forth herein, extend any of the deadlines or other dates set forth herein, adjourn any Auction and/or Sale Hearing, announce at the Auction modified or additional procedures for conducting the Auction, or provide reasonable accommodations to any Potential Bidder with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on any assets, in each case, at any time and without specifying the reasons therefor, to the extent not materially inconsistent with these Bidding Procedures and/or the Sale Procedures Order.  The rights of each Sale Process Party are fully reserved as to any Sale Transaction.  **The Special Master shall not be obligated to recommend to the Court approval of or consummation of any transaction with respect to any asset**.

## Judicial Immunity

The Special Master is entitled to judicial immunity in performing his duties pursuant to the Sale Procedures Order and these Bidding Procedures, including all actions taken to implement these Bidding Procedures.  The Special Master's Advisors are further entitled to judicial immunity in connection with all actions taken at the direction of, on behalf of, or otherwise in connection with representation of or advising the Special Master.  In no circumstance shall the Special Master or any of his Advisors be liable to any party in connection with implementing the Sale Procedures Order or these Bidding Procedures.  To the maximum extent permitted by applicable law, neither the Special Master nor his Advisors will have or incur, and the Special Master and his Advisors are released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability in connection with or arising out of all actions taken to implement the Marketing Process, Sale Procedures, Bidding Procedures, or Sale Transaction, or the performance of the Special Master's and his Advisors' duties pursuant to the Sale Procedures Order and all other orders of the Court.

**<u>Exhibit 2</u>**

**Form of Sale Notice**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    Misc. No. 17-151-LPS |
| | : |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | : |
| | : |
| Defendant. | : |

---

### NOTICE OF SALE, BIDDING
### PROCEDURES, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On January 14, 2021, the United States District Court for the District of Delaware (the "**Court**")[1] issued an opinion and corresponding order setting forth certain contours for the sale of the shares of PDV Holding, Inc. ("**PDVH**") owned by Petróleos de Venezuela, S.A. ("**PDVSA**") in connection with the above-captioned proceeding (the "**Crystallex Case**").  In furtherance thereof, the Court appointed Robert B. Pincus as special master (the "**Special Master**") on April 13, 2021 to assist the Court with the sale of PDVSA's shares of PDVH.  The Special Master is advised by Weil, Gotshal & Manges LLP, as transaction counsel, and Evercore Group L.L.C. as investment banker.

On [_], 2021, the Court entered an order (Docket No. __) (the "**Sale Procedures Order**") (i) approving the bidding procedures, substantially in the form attached to the Sale Procedures Order as **Exhibit 1** (the "**Bidding Procedures**"); (ii) authorizing the Special Master to designate a stalking horse bidder ("**Stalking Horse Bidder**," and such bidder's bid, a "**Stalking Horse Bid**") and offer such bidder the Stalking Horse Bid Protections identified therein; (iii) setting the timeframe for potential bidders to submit a proposal to purchase shares of PDVH, scheduling an auction (the "**Auction**"), and scheduling the hearing with respect to the approval of the sale (the "**Sale Hearing**"); (iv) authorizing and approving the Notice Procedures for the foregoing; and (v) granting related relief.

---

[1]  Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Sale Procedures Order and the Bidding Procedures (each, as defined herein), as applicable.  Any summary of the Sale Procedures Order or the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof.  To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

## Assets to be sold:  Shares of PDVH

Interested parties may submit bids for the purchase and sale of some or all of the shares of PDVH in accordance with the terms and conditions set forth in the Bidding Procedures.  To avoid any ambiguity, parties may submit bids for less than 100% of the shares of PDVH so long as such bid satisfies the Attached Judgments.

PDVH is the sole shareholder and direct parent of CITGO Holding, Inc., which in turn is the sole shareholder and direct parent of CITGO Petroleum Corporation.

## Important Dates and Deadlines

- **Non-Binding Indication of Interest Deadline**. Any person or entity interested in participating in the sale of shares of PDVH is encouraged to submit a Non-Binding Indication of Interest on or before **[Launch Date + 45 days] at 4:00 p.m. (prevailing Eastern Time)**.

- **Stalking Horse Bid Deadline**. Any person or entity interested in being designated as a Stalking Horse Bidder must submit a Stalking Horse Bid on or before **[Launch Date + 90 days] at 4:00 p.m. (prevailing Eastern Time)**.

- **Bid Deadline**. Any person or entity interested in participating in the Auction must submit a Qualified Bid on or before **[Launch Date + 210 days] at 4:00 p.m. (prevailing Eastern Time)**.

- **Auction**. An Auction has been scheduled for **[Launch Date + 230 days] at 10:00 a.m. (prevailing Eastern Time)**.

- **Sale Objection Deadlines**. Objections to the Sale Transaction, including any objection to the sale of shares of PDVH free and clear of liens, claims, encumbrances, and other interests must (i) be in writing; (ii) state the name and address of the objecting party and such party's interests in the PDVH Shares and/or the assets of PDVH and its subsidiaries; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Special Master, would obviate such objection (if such objection can be resolved through inclusion of acceptable language); (iv) conform to the applicable rules; and (v) be filed with the Court in accordance with the customary practices of the Court by no later than **[Launch Date + 250 days] at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**").

- **Sale Hearing**. A hearing to approve the Sale Transaction shall be held before the Court before the Honorable Leonard P. Stark on **[Launch Date + 270 days] at 10:00 a.m. (prevailing Eastern Time) in Courtroom 6B at the United States District Court, 844 North King Street, Wilmington DE 19801**.

## Additional Information

Any party interested in submitting a bid should contact the Special Master's investment banker, Evercore (Attn: Ray Strong (ray.strong@evercore.com); William Hiltz (hiltz@evercore.com); Patrick O'Shea (patrick.oshea@evercore.com); David Ying (ying@evercore.com); and Stephen Goldstein (stephen.goldstein@evercore.com)), as soon as possible.

The Bidding Procedures set forth the requirements for becoming a Qualified Bidder and submitting a Qualified Bid, and any party interested in making an offer to purchase the shares of PDVH must comply with the Bidding Procedures.  Only Qualified Bids will be considered by the Special Master, in accordance with the Bidding Procedures.

Copies of the Sale Procedures Order and the Bidding Procedures may be requested free of charge by email to the Special Master's counsel, Weil, Gotshal & Manges LLP (attn.:  Jason Hufendick at Jason.Hufendick@weil.com).

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE SALE PROCEDURES ORDER, OR ANY OTHER ORDER OF THE COURT MAY RESULT IN THE REJECTION OF YOUR BID.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE A SALE OBJECTION IN ACCORDANCE WITH THE SALE PROCEDURES ORDER BY THE SALE OBJECTION DEADLINE MAY FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING, AT THE SALE HEARING OR THEREAFTER, ANY SALE OBJECTION WITH REGARD TO A SUCCESSFUL BIDDER, OR TO THE CONSUMMATION OF A SALE TRANSACTION, INCLUDING WITH RESPECT TO THE TRANSFER OF SHARES OF PDVH TO A SUCCESSFUL BIDDER, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS.**

Dated _____, 2021

## Exhibit 3

**Proposed Evercore Engagement Letter**

**[Intentionally Omitted.  See Paragraph 37 of the Reply]**

**Exhibit 4**

**Form of Confidentiality Arrangement**

[●], 2021


[●]

DEAR [●]:

In connection with the consideration by [●], a [●] ("you" or "your"), of a possible negotiated transaction (the "Possible Transaction") for the sale of shares of PDV Holding, Inc. ("PDVH" and together with its direct and indirect subsidiaries, the "Company") owned by Petróleos de Venezuela, S.A. in accordance with that certain order of the United States District Court for the District of Delaware (the "Court") authorizing, among other things, the Court-appointed special master, Robert B. Pincus (the "Special Master") to implement certain bidding procedures for the sale of shares of PDVH [(D.I [●])] (the "Sale Procedures Order") (each of you and the Special Master, a "Party," and together, the "Parties"), the Special Master is prepared to make available to you and your Representatives (as defined below) certain information concerning the Company. In consideration for and as a condition to such information being furnished to you and your Representatives (as defined below), you agree that you and your Representatives will treat any information or data concerning or relating to the Company or any of its affiliates (whether prepared by the Special Master or the Company, either of their advisors or other Representatives or otherwise and irrespective of the form of communication) which has been or will be furnished, or otherwise made available, to you or your Representatives by or on behalf of the Special Master or the Company or any of its affiliates, whether before or after the date of this Agreement, including, without limitation, any confidential or proprietary information of the Company or any of its affiliates and any information or data concerning or relating to the business, financial condition, properties, services, products, technology, employees, operations, strategy, actual or potential prospects, assets or liabilities of the Company or any of its affiliates (collectively referred to as, and together with the Transaction Information (as defined below), the "Confidential Information"), in accordance with the provisions of this letter agreement (this "Agreement"), and to take or abstain from taking certain other actions hereinafter set forth.

1.  Confidential Information.  (a) The term "Confidential Information" shall include all notes, memoranda, summaries, analyses, compilations, forecasts, data, models, studies, interpretations or other documents or materials prepared by the Special Master, the Company or any of its affiliates, their Representatives or you or your Representatives, which use, contain, reflect or are based upon or derived from, in whole or in part, information furnished to you or your Representatives by or on behalf of the Special Master.  The term "Confidential Information" shall not include information that you can demonstrate (i) at the time of disclosure by you is generally available to the public other than as a result of a disclosure by you or your Representatives in breach of this Agreement, (ii) was within your possession prior to it being furnished or made available to you or your Representatives hereunder or becomes available to you on a non-confidential basis from a source other than the Special Master or any of his Representatives; *provided* that, in each case, the source of such information was not known by you or your Representatives (after reasonable inquiry) to be bound by a contractual, legal or fiduciary obligation of confidentiality to the Special Master, the Company or any other person with respect to such information, or (iii) has been or is subsequently independently developed by you or your Representatives (on your behalf) without (A) use or benefit of or reference to

any Confidential Information or any information from a source known (after reasonable inquiry) by you or your Representatives to be bound by a contractual, legal or fiduciary obligation of confidentiality to the Special Master or the Company, or (B) breaching this Agreement.

(b) For purposes of this Agreement:

(i) "Representatives" shall mean:

(A) with respect to you: your controlled affiliates and your and such controlled affiliates' directors, officers, employees and professional advisors (including, without limitation, accountants, consultants, attorneys and financial advisors); *provided* that your "Representatives" shall not include, without the prior written consent of the Special Master: (1) any actual or potential bidding partners or equity financing sources, or (2) any actual or potential debt financing sources;

(B) with respect to the Company: the Company's affiliates and each of the Company's and its respective affiliates' directors, officers, employees, professional advisors (including, without limitation, attorneys, accountants, consultants and financial advisors), agents and other representatives;

(C) with respect to the Special Master: the Special Master's professional advisors (including, without limitation, attorneys and financial advisors), agents and other representatives;

(ii) the term "person" shall be broadly interpreted to include the media and any individual, corporation, limited or general partnership, limited liability company, trust, association, joint venture, governmental or self-regulatory agency or body or other entity or group;

(iii) the term "affiliate" means, with respect to any specified person, any other person that, directly or indirectly, controls, is controlled by or is under common control with, such specified person; and

(iv) the term "control" and derivative terms mean, as used in the definition of the term "affiliate" or in relation to the term "affiliate," the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract or otherwise.

2.   Use and Disclosure of Confidential Information.

(a)  You hereby agree that you and your Representatives (i) shall keep the Confidential Information confidential and use the Confidential Information solely for the purpose of evaluating, and participating in discussions with the Special Master regarding, the Possible Transaction and for no other purpose and (ii) shall not disclose any of the Confidential Information in any manner whatsoever; *provided* that you may disclose such information (A) to those of your Representatives who have a need to know such information for the sole purpose of evaluating and, if applicable, negotiating, documenting and consummating the Possible Transaction on your behalf and who are provided with a copy of this Agreement and agree to be bound by the applicable terms hereof to the same extent as if they were parties hereto and (B) subject to Section 2(c), to the extent you are Legally Required (as defined below) to disclose such information.  In any event, you agree, at your sole expense, to (y) undertake reasonable precautions to safeguard and protect the confidentiality of the Confidential Information and to prevent you and your Representatives from making any unauthorized disclosure or unauthorized use of such information (such measures to be no less stringent than the measures taken with respect to your own confidential and proprietary information and in any event shall involve no less than a reasonable degree of care) and (z) be responsible for any breach of, or failure to comply with, this Agreement by any of your Representatives as if such Representatives were parties hereto (it being understood that such responsibility shall be in addition to and does not limit any right or remedy the Special Master or the Company may have against your Representatives with respect to such breach).

(b)   Without the prior written consent of the Special Master, you and your Representatives will not disclose to any person (i) the fact that either of the Parties is considering the Possible Transaction, (ii) the fact that this Agreement exists (or the contents hereof) or that any Confidential Information has been made available to you or your Representatives or (iii) that discussions, negotiations or investigations are taking place or have taken place concerning the Possible Transaction, the Special Master or the Company, or any of the terms, conditions or other facts with respect to the Possible Transaction or such discussions, negotiations or investigations (including, without limitation, the timing or status thereof) (all of the foregoing being referred to as "Transaction Information"). All Transaction Information shall be deemed Confidential Information for all purposes of this Agreement.

(c)   In the event that you or any of your Representatives are (i) required by applicable law or regulation or (ii) legally compelled by deposition, interrogatories, requests for information or documents in legal or administrative proceedings, subpoena, civil investigative demand or other similar legal process) (any of the foregoing in clauses (i) or (ii), "Legally Required") to disclose any of the Confidential Information, you or such Representative, as applicable, shall provide the Special Master with prompt (and in any event prior to any disclosure) written notice, to the extent not legally prohibited, of the existence, terms and circumstances of any such requirement so that the Special Master may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement. If, in the absence of a protective order or other remedy or the receipt of a waiver by the Special Master, you or any of your Representatives are nonetheless, upon advice of outside counsel, Legally Required to disclose Confidential Information, you or your Representatives may disclose only that portion of the Confidential Information which such outside counsel advises is Legally Required to be disclosed; *provided* that (i) you shall exercise (and shall cause your Representatives to exercise) reasonable best efforts to preserve the confidentiality of the Confidential Information, including, without limitation, exercising reasonable best efforts to

obtain an order or other reliable assurance that confidential treatment shall be afforded to such information and (ii) such disclosure was not caused by or resulted from a previous disclosure by you or any of your Representatives in violation of this Agreement. You and your Representatives shall cooperate fully with (and shall not oppose any action by) the Special Master (or the Company, if applicable) to obtain a protective order or other relief to prevent or narrow the disclosure of the Confidential Information or to obtain reliable assurance that confidential treatment will be afforded to the Confidential Information.

(d)    Notwithstanding anything to the contrary in this Agreement, neither you nor any of your Representatives will, without the prior written consent of the Special Master, enter into any agreement, arrangement or understanding with any person (or make any offers or have any discussions which might lead to such agreement, arrangement or understanding) with respect to participating in the Possible Transaction, including, without limitation, an equity or debt participation in the Possible Transaction, a sale of a portion of the equity or assets of the Company simultaneously with or following a transaction involving the Company, or any other form of joint transaction by you or your affiliates and such person or its affiliates involving the Company. Furthermore, you acknowledge and agree that neither you nor your Representatives has, prior to the date hereof, entered into any such agreements, arrangements or understandings with any person or made any such offers or had any such discussions. Neither you nor any of your Representatives shall, without the prior written consent of the Special Master, (i) communicate with any potential bidding partners, financing sources or creditors of the Company regarding the Possible Transaction or (ii) enter into any agreement, arrangement or understanding (or have any discussions which might lead to such agreement, arrangement or understanding), whether written or oral, with any actual or potential bidding partners or financing sources that could reasonably be expected to limit, restrict, restrain or otherwise impair in any manner, directly or indirectly, the ability of such partners or financing sources to provide financing or other assistance to any other person in any other possible transaction involving the Company.

3.    <u>Destruction of Confidential Information</u>.  If you determine you do not wish to proceed with the Possible Transaction, you will promptly notify the Special Master in writing of that decision. In that case or if otherwise requested by the Special Master or one of his Representatives, you will, and will cause your Representatives to, promptly (and in any event within ten (10) days of such event or request) destroy (including by erasure) all Confidential Information (and all copies thereof) in your or your Representatives' possession, as applicable. If requested by the Special Master, you shall deliver to the Special Master a written certification executed by an authorized officer that such destruction has occurred. Notwithstanding the foregoing, you and your Representatives may retain one copy of any Confidential Information to the extent required to comply with applicable legal or regulatory requirements or established bona fide document retention policies for use solely to demonstrate compliance with such requirements, *provided* that any retained information shall solely be accessible by information technology personnel to demonstrate compliance with legal or regulatory requirements and shall be destroyed (including by erasure) in the ordinary course of your business. Notwithstanding the destruction or retention of the Confidential Information, you and your Representatives will continue to be bound by your obligations hereunder and such obligations will survive the termination of this Agreement with respect to any retained Confidential Information.

4.    <u>Inquiries</u>.  You agree that Evercore Group, L.L.C. ("<u>Evercore</u>") has responsibility for arranging appropriate contacts for due diligence in connection with the Possible Transaction

and that (a) all communications regarding the Possible Transaction, (b) requests for additional information and requests for facility tours, management or similar meetings in connection with the Possible Transaction or Confidential Information, and (c) discussions or questions regarding procedures with respect to the Possible Transaction will be submitted or directed only to Evercore or such other person as may be expressly designated by the Special Master in writing, and not to any other Representative of the Special Master. You further agree that, except in the ordinary course of your business unrelated to the Possible Transaction or with the prior written consent of the Special Master, neither you nor any of your Representatives shall, directly or indirectly, initiate, solicit or maintain contact or otherwise engage in any communication with the Company, any director, officer, current or former employee, equityholder, affiliate, creditor, supplier, distributor, vendor, partner, customer, provider, agent or regulator (other than, in the case of a regulator, as permitted in Section 2(c) above) of the Company or other commercial counterparty of the Company regarding the Company, any Confidential Information, the Special Master or the Possible Transaction.

5.     No Representations or Warranties; No Agreement.  You acknowledge and agree that neither of the Special Master nor the Company (nor any of their Representatives) (a) makes any representation or warranty, express or implied, as to the timeliness, accuracy or completeness of the Confidential Information, (b) is under any obligation to provide or make available to you or your Representatives any information that in the Special Master's sole and absolute discretion he determines not to provide or (c) shall have any obligation or liability to you or to any of your Representatives on any basis relating to or resulting from the use of the Confidential Information or any errors therein or omissions therefrom (including, but not limited to, any obligation to update, supplement or correct any Confidential Information). You agree that only those representations, covenants or warranties which are made in a final definitive agreement with you regarding the Possible Transaction (a "Definitive Transaction Agreement"), subject to such limitations and restrictions as may be specified therein, when, as and if executed, will be relied on by you or your Representatives and have any legal effect. You acknowledge and agree that unless and until a Definitive Transaction Agreement between the Special Master and you has been executed and delivered, neither you nor the Special Master will be under any legal obligation with respect to the Possible Transaction by virtue of this Agreement or any other written or oral expression.  You further agree that you and your Representatives shall not have any claims against the Special Master or his Representatives arising out of or relating to (x) the Possible Transaction or your evaluation thereof or (y) the Confidential Information or any action or inaction taken or occurring in reliance on such information, other than claims against the parties to a Definitive Transaction Agreement in accordance with the terms thereof.  You further acknowledge and agree that neither the Special Master nor any of his Representatives shall have any legal, fiduciary or other duty to any prospective or actual purchaser with respect to the manner in which any sale process is conducted and that the Special Master reserves the right, in his sole discretion, to conduct the process leading up to the Possible Transaction, if any, as the Special Master and his Representatives determine, including, without limitation, by negotiating with any third party and entering into a preliminary or definitive agreement with a third party, rejecting any and all proposals made by you or any of your Representatives with regard to the Possible Transaction, terminating discussions and negotiations with you or your Representatives at any time and for no reason and terminating or denying access to the Confidential Information at any time and for no reason.  Furthermore, nothing contained in this Agreement nor the furnishing of Confidential Information shall be construed as granting or conferring any rights by license or otherwise in any intellectual property of the Company, and all right, title and interest in the Confidential Information shall remain with the Company.

6.  <u>No Waiver of Privilege</u>.  To the extent you or your Representatives are provided with any Confidential Information that is subject to a claim of attorney-client privilege, attorney work product or any other applicable privilege, immunity or ground on which production of such information should not be made to a third-party, the provision of such Confidential Information is inadvertent and shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of attorney-client privilege, work product or other applicable privilege or immunity.  If the Special Master identifies any such Confidential Information under this Agreement, you and your Representatives shall: (i) refrain from any further disclosure or examination of such Confidential Information; (ii) if requested, promptly make a good faith effort to return such Confidential Information and all copies thereof; and (iii) not use such Confidential Information for any purpose.

7.  <u>No Solicitation</u>. Except as otherwise agreed in a definitive agreement with the Special Master, for a period of two (2) years from the date hereof, neither you nor any of your controlled affiliates or any person acting on your or their behalf will, without the prior written consent of the Company, directly or indirectly, solicit, hire, employ, engage (including, without limitation, as an independent contractor), or offer to hire, employ or engage, any of the officers, employees or independent contractors of the Company; *provided* that the foregoing shall not prohibit you or such affiliates from (i) making any general solicitation for employment by use of advertisements in the media that is not specifically directed or targeted at any officer, employee or independent contractor of the Company and (ii) hiring any such officer, employee or independent contractor who responds to any such general solicitation. You agree that you and your Representatives will not, without the prior written consent of the Special Master, engage in discussions with management of the Company regarding the terms of their post-transaction employment or equity participation as part of, in connection with or after the Possible Transaction.

8.  <u>Material Non-Public Information</u>.  You acknowledge and agree that you are aware (and that your Representatives are aware or, upon providing any Confidential Information to such Representatives, will be advised by you) that Confidential Information being furnished to you or your Representatives may contain material non-public information regarding the Company and that the United States securities laws generally prohibit any persons who have material, non-public information from purchasing or selling securities of the Company on the basis of such information or from communicating such information to any person under circumstances in which it is reasonably foreseeable that such person is likely to purchase or sell such securities on the basis of such information.

9.  <u>Remedies</u>.  You recognize and acknowledge the competitive value and confidential nature of the Confidential Information and the damage that would result to the Company (and to the process being conducted by the Court through the Special Master) if such information is disclosed in breach of this Agreement.  You hereby agree that any breach of this Agreement by you or any of your Representatives would result in irreparable harm to the Company (and to the process being conducted by the Court through the Special Master) and that money damages would not be a sufficient remedy for any such breach. Accordingly, you agree that the Company and the Special Master shall be entitled to equitable relief, including, without limitation, injunction and specific performance, as a remedy for any breach or threatened breach hereof by you or your Representatives and that neither you nor your Representatives shall oppose the granting of such relief.  Such relief shall be available without the obligation to prove any damages.  You further agree not to raise, as a defense or objection to the request for or granting of such relief, that any breach would be compensable by an award of money

damages. You agree to waive, and to cause your Representatives to waive, any requirement for the securing or posting of any bond in connection with any such remedy.  Such remedies shall not be deemed to be the exclusive remedies for a breach or threatened breach by you or your Representatives of this Agreement but shall be in addition to all other remedies available to the Special Master and the Company at law or equity.  If the Company or the Special Master prevails in any enforcement proceeding in respect of this Agreement, or a court of competent jurisdiction determines that you or any of your Representatives have breached this Agreement (including upon any appeal), then you shall be liable and pay to and reimburse the Company and/or the Special Master and their Representatives, as applicable, for their respective costs of such enforcement and/or litigation, including, without limitation, their reasonable legal fees incurred in connection therewith.

10. <u>Governing Law; Jurisdiction; Waiver of Jury Trial</u>.  This Agreement, and all proceedings, claims or causes of action (whether in contract, tort, statute or otherwise) that may be based upon, arise out of or relate to this Agreement, or the negotiation, execution or performance of this Agreement, shall be governed by, construed and enforced in accordance with the laws of the State of Delaware, without giving effect to any laws, rules or provisions that would cause the application of the laws of any jurisdiction other than the State of Delaware. You hereby irrevocably and unconditionally (a) consent and submit to the exclusive jurisdiction of the Court, for all proceedings, claims or causes of action (whether in contract, tort, statute or otherwise) that may be based upon, arise out of or relate to this Agreement, or the negotiation, execution or performance of this Agreement and (b) waive any objection you may now or may hereafter have to laying of venue in the Court, including, without limitation, based on improper venue or forum non conveniens. You agree not to commence any such proceeding, claim or cause of action, except in the Court. **ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY PROCEEDING, CLAIM OR CAUSE OF ACTION (WHETHER IN CONTRACT, TORT, STATUTE OR OTHERWISE) BASED UPON, ARISING OUT OF OR RELATING TO THIS AGREEMENT IS EXPRESSLY AND IRREVOCABLY WAIVED.**

11. <u>Authority to Enter into Agreement</u>.  You hereby represent and warrant to the Special Master and the Company that this Agreement has been duly authorized by all necessary action, has been duly executed and delivered by one of your duly authorized officers and is enforceable against you in accordance with its terms.

12. <u>Third-Party Beneficiaries</u>.  This Agreement is not intended to, and does not, confer upon any person other than the Parties any rights or remedies hereunder; *provided* that each person included in the definition of the Company is an express third-party beneficiary of, and shall have the right to enforce the terms of, this Agreement; *provided further* that the Company may only seek to enforce this Agreement as a third-party beneficiary in accordance with this Section 12 (a) with the prior written consent of the Special Master or (b) if the Special Master unreasonably declines to prosecute an alleged breach of this Agreement after receiving notice of such alleged breach.

13. <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties regarding the subject matter hereof, and supersedes all prior negotiations, understandings, arrangements, agreements and discussions, whether oral or written, between the Parties or their Representatives related to the subject matter hereof.  In the event of any conflict between this Agreement, on the one hand, and the terms of any confidentiality legend set forth in a confidential information memorandum (or similar document) related to the Possible Transaction or the terms of any "click-through" or other similar agreement with

respect to the access to Confidential Information, including through an electronic data room, now or hereafter applicable to you or any of your Representatives in connection with the Possible Transaction, on the other hand, the terms and conditions of this Agreement shall govern and supersede any such conflicting terms and conditions.

14.   Assignment.   This Agreement and the rights and obligations herein may not be assigned or otherwise transferred, in whole or in part, by you without the written consent of the Special Master.   The benefits of this Agreement shall inure to the respective successors and permitted assigns of the Parties, and the obligations and liabilities of the Parties under this Agreement shall be binding upon their respective successors and permitted assigns. Any attempted assignment not in compliance with this Agreement shall be void ab initio.

15.   No Modification.   No provision of this Agreement can be waived, modified or amended without the prior written consent of the Parties, which consent shall specifically refer to the provision to be waived, modified or amended and shall explicitly make such waiver, modification or amendment.   It is understood and agreed that no failure or delay by the Special Master or the Company in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder.

16.   Counterparts.   This Agreement may be executed in counterparts, which may be delivered and exchanged by electronic means and each of which when executed shall be deemed an original, and all such counterparts shall together constitute one instrument.

17.   Severability.   If any term or provision of this Agreement is found to violate any law, statute, regulation, rule, order or decree of any governmental authority, court or agency, such invalidity shall not be deemed to affect any other term or provision hereof or the validity of the remainder of this Agreement, and there shall be substituted for the invalid term or provision a substitute term or provision that shall as nearly as possible achieve the intent of the invalid term or provision.

18.   Term.   This Agreement shall terminate and cease to have any force and effect on the date that is two (2) years from the last disclosure by the Special Master, the Company or any of their Representatives of any Confidential Information to you or any of your Representatives; *provided* that (a) such termination shall not relieve you of any liability for any breach of this Agreement by you or your Representatives prior to such termination and (b) Section 3 of this Agreement shall survive such termination.

19.   Filing Under Seal.   Upon execution of this Agreement, the Special Master shall file this Agreement under seal with the Court and shall provide notice of execution of this Agreement to the Sale Process Parties (as defined in the Sale Procedures Order).

20.   Notices.   All notices to be given to the Special Master or you, as applicable, shall be in writing and delivered by email or personally to:

        If to the Special Master:      Robert B. Pincus
                                        Email:  Rbpincus@gmail.com

With copies (which shall not constitute notice) to:

> Weil, Gotshal & Manges LLP
> <u>Attention</u>:  Ray C. Schrock, P.C.
>                  Alexander W. Welch
>                  Jason Hufendick
> <u>Email</u>:  Ray.Schrock@weil.com
>            Alexander.Welch@weil.com
>            Jason.Hufendick@weil.com

If to you:                    [●]
                              <u>Attention</u>:  [●]

                              <u>Email</u>:  [●]

                              <u>Address</u>:  [●]


[*Remainder of Page Intentionally Left Blank*]

Please confirm your agreement with the foregoing by signing and returning one copy of this Agreement to the undersigned, whereupon this Agreement shall become a binding agreement between you and the Special Master.

Very truly yours,

Robert B. Pincus

_____
Name:  Robert B. Pincus
Title:  Special Master

Accepted and agreed as of
the date first written above:

[●]

By:   _____
        Name:
        Title: