**ADELSO ADRIANZA**
113 Washington Street – Newton, MA 02458 – U.S.A.
M: (859) 803-2279 | aaadrianza@gmail.com

September 19, 2021

The Honorable
Judge Leonard Stark
U.S. District Court - Delaware
844 N. King Street, Unit 26, Room 6124
Wilmington, DE 19801-3555

Dear Judge Stark,

    This communication is in reference to Crystallex International Corporation (Case 1:17-mc-00151-LPS; the Company) and regarding this Court's order to seal information related to the Special Master's proposal for the CITGO shares auction process implementation (the "Proposal"; D.I. 337); and the Special Master's Report and Recommendation with regards to this process (D.I. 345). I am writing this letter as of U.S. citizen, a beneficial owner of shares in the Company and residual owner of its bankruptcy estate.

## 1.- THE COURT'S ORDER TO SEAL INFORMTION

    As Your Honor indicated in the order to unseal the Proposal, the U.S. Courts are publicly funded and require the upmost transparency for the public to ascertain and maintain their faith in and reliance on the judicial system. The faithful and even-handed application of the law is the backbone of the public's trust in our Courts. In the instant proceeding Crystallex and the Venezuelan Parties are pursuing the protection of parochial interests at the expense of the U.S. public interest and non-represented parties. What follows makes this assertion clear.

### A. THE CRYSTALLEX POSITION

    The Company's position regarding the sealing of its "confidential" information is untenable under U.S. and Canadian law.[1] In fact, it was rejected by the Canadian Bankruptcy Court (the "CCAA Court") and the Ontario Court of Appeals (the "ONCA") for failure to meet the minimum requirements set forth by the Canadian Supreme Court in its *Sierra Club* decision.

**The Canadian Sealing Standard**

    *Sierra Club* requires a two-step test:
*A confidentiality order under [Federal Court] Rule 151 should only be granted when:*

    *(1)    such an order is necessary in order to prevent a serious risk to an important interest, including a commercial interest, in the context of litigation because reasonably*

---

[1] The Company pursued the endorsement by the DE Bankruptcy Court of a temporary CCAA Court sealing order which I opposed because of its failure to meet the Canadian and Third Circuit sealing standards discussed in this communication. *See* Case debke 21-14074, D.I. Nr. 325.

Adelso Adrianza 1 | P a g e

    *alternative measures will not prevent the risk; and,*

(2)    *the salutary effects of the confidentiality order, including the effects on the right of civil litigants to a fair trial, outweigh its deleterious effects, including the effects on the right to free expression, which in this context includes the public interest in open and accessible court proceedings.*

The two parts of the test deal with "necessity" and "proportionality". To succeed in the "necessity" part of the test, two elements must be proven:

First, the potential risk to the interest which the sealing order is sought to protect must be "real and substantial". <u>The applicant must demonstrate that the risk is well grounded in the evidence and poses a serious threat to the interest in question</u>. Second, the applicant must demonstrate that there are no reasonably available alternative measures that can be taken to protect the interest at risk aside from granting a sealing order.

The "necessity" part of the test becomes relevant only if the interest being protected by the sealing order is a bona fide protectable commercial interest. <u>*For this to be the case, the party seeking the order must prove that the commercial interest is an "important commercial interest" in terms of a broader public interest in protecting confidentiality. To qualify as an "important commercial interest"*</u><u>, the interest involved must not only be specific to the party requesting the order but advance the public interest in general</u>.

[Emphasis Added]

The ONCA dismissed the appeal to the CCAA Court's order denying the Company's request to seal confidential information as follows:

> [11] Having reviewed the extensive materials filed on this leave motion, we are not satisfied that the proposed appeal is prima facie meritorious or that the case is of significance to the practice. Crystallex and Tenor seek to challenge a discretionary order of the motion judge, who as the supervising judge is intimately familiar with this CCAA proceeding. The motion judge applied the well-established Sierra Club test in light of the evidence before him. In our view, he did not give improper consideration or weight to the Monitor's views. Nor do we see any other basis on which to interfere with the motion judge's order.

*See* https://documentcentre.ey.com/api/Document/download?docId=32662&language=EN

### The Third Circuit Sealing Standard

The standard set forth by the Third Circuit is even more stringent as articulated *In re: Avandia Marketing Sales Practices & Products Liability Litigation*, No. 18-2259 (3d Cir. 2019) (Avandia). Specifically, the Third Circuit described the three distinct standards governing confidentiality in court proceedings:

1.    The standard governing protective orders (the Protective Order Standard),
2.    The standard for filing court documents under seal (the Common Law Standard), and

3. The First Amendment Right of Access Standard.

Per the Third Circuit, <u>protective orders are meant to ensure the confidentiality of discovery documents that are not filed with the court.</u> Whether a protective order should remain confidential should be analyzed under the Protective Order Standard, which uses the seven-factor balancing test articulated in *Pansy v. Borough of Stroudsburg*, 23 F.2d 772 at 787-788 (3d Cir. 1994):

1. Whether disclosure will violate any privacy interests,
2. Whether the information is being sought for a legitimate purpose (or for an improper purpose),
3. Whether disclosure of the information will cause a party embarrassment,
4. Whether confidentiality is being sought over information important to public health and safety,
5. Whether the sharing of information among litigants will promote fairness and efficiency,
6. Whether a party benefitting from the order of confidentiality is a public entity or official, and
7. Whether the case involves issues important to the public.

When court documents are filed under seal, courts should employ the more rigorous Common Law Standard, which provides that "there is a presumptive right of public access to pretrial motions of a non-discovery nature, whether preliminary or dispositive". <u>The common law presumption is not absolute. To overcome that strong presumption of access, the party seeking to overcome it bears the burden of showing "that the interest in secrecy outweighs the presumption". And the District Court must articulate "the compelling, countervailing interests to be protected," make "specific findings on the record concerning the effects of disclosure," and "provide an opportunity for interested third parties to be heard."</u>

Finally, the First Amendment Right of Access Standard applies to the public right of access to civil proceedings. <u>It "requires a much higher showing than the common law right [of] access before a judicial proceeding can be sealed." If the First Amendment right of access applies, "there is a presumption that proceedings will be open to the public."</u> This can be overcome by demonstrating that there is an overriding interest in excluding the public, provided that maintaining documents under seal is essential to "preserve higher values and is narrowly tailored to serve that interest".

[Emphasis added.]

The Company has yet to demonstrate the countervailing public interest that needs to be protected by sealing its confidential information. The narrow interests it seeks to protect cannot overcome the thresholds set forth by both the U.S. and the Canadian laws and may in fact be harmful to unrepresented stakeholders and the public interest in protecting the integrity of our Bankruptcy Code and the judicial system in general. As such, the undersigned filed a motion in the Company's Chapter 15 proceedings at the Delaware Bankruptcy Court requesting the appointment of an Examiner to investigate a series of allegations of harm against its Estate and the Shareholders as well as actions and omissions contrary the purpose and objectives of the Bankruptcy Code. *See* Case debke 11-14074, D.I. Nr. 328.

### B. THE VENEZUELAN PARTIES POSITION

The Venezuelan Parties position intends to advance a sectarian political agenda and pretends to use the U.S. Courts towards this end. A troubling aspect of the situation is in fact that, in advancing their agenda, the Venezuelan Parties are undoubtedly harming the interests of CITGO, a Delaware corporation, and its rightful beneficial owners: the Venezuelan people. Yet, the Venezuelan Parties have the audacity to ask this Court to order the sealing of information to prevent other undemonstrated harm. It should be fully clear by now that CITGO represents an important asset for the recovery of the Venezuelan economy and the abject misery the Venezuelan people have been subjected to by partisan politics. Yet, despite having the means to meet its Crystallex judgment (*see* D.I. Nr. 193), the Venezuelan Parties continue to use CITGO as a political football. It goes without saying that governments and politicians come and go, but the consequences of their actions to advance their self-interests must be borne by the people they purport to represent long after they are gone.

It is also clear that, as a Delaware Corporation, the CITGO Board of Directors and Officers alone bear the responsibility to protect the viability and future of its business for the benefit of its rightful owners: the Venezuelan people. This is specially the case when that viability and future is threatened by political maneuvering. We need not go far back in time to find proof of the issues that arise when politics gets involved in the decisions of a commercial enterprise. For one, the Venezuelan Parties' game of chicken poses the great risk of putting CITGO "in play" and the crosshairs of creditors pursuing the collection of their judgments.

The political motives advanced by the Venezuelan Parties' have no space in a U.S. Court. They certainly fail to meet the minimum requirements for court document sealing privileges and the mere request of such privilege represents the use and abuse of a U.S. Court for unwarranted purposes. There is no bigger concern in this proceeding than the politization of the U.S. judicial process and the interference against the application of the law. Whatever the interests involved outside of the judicial process are, they must not determine or advance an outcome different from what is prescribed by the law. This Court already made clear what that legal solution of this proceeding must be with the following statement: "Each day that Crystallex does not recover on its judgment is arguably something of an affront to the United States judicial system."

### 2.- THE SPECIAL MASTER'S PROPOSED SALE PROCESS ORDER

The Proposal includes the following assessments regarding the post-award interest due and the value of the Venezuelan securities the Company received as an initial payment on the Amended Settlement:

> ... <u>If Crystallex's Judgment is calculated without including the post-award interest, Crystallex's outstanding judgment as of July 9, 2021, is $936,689,442.92, which is $33,3228,931.32 less than if the post-award interest were to be included.</u> In light of the clear language of the D.C. Order Directing Judgment, I do not believe the D.C. Judgment intentionally omitted the post-award interest; and Second, approximately

$319,579,394 of the disclosed consideration received by Crystallex was paid in the form of securities issued by either PDVSA or the Republic (the "Transferred Securities") pursuant to a settlement agreement between Crystallex and the Republic in 2018 (the "2018 Crystallex Settlement"). <u>The Transferred Securities have a face amount of $1,347,195,942, but, due to the discount at which the Transferred Securities were trading at the time of the 2018 Crystallex Settlement, the parties agreed to a stipulated value of $319,579,394. My Advisors and I have reviewed publicly available information and believe that the stipulated value reasonably reflects the market price of the Transferred Securities at the time of the 2018 Crystallex Settlement.</u>

[Emphasis added.]

These assessments are in error and need to be corrected in the final Proposal. The reasons for this are as follows:

**The Arbitration Award Amount Due**

The Canada – Venezuela Bilateral Investment Treaty sets forth the following expropriations and compensation rules:

**Article VII - Expropriation**
1. <u>Investments or returns of investors of either Contracting Party shall not be nationalized, expropriated or subjected to measures having an effect equivalent to nationalization or expropriation</u> (hereinafter referred to as "expropriation") in the territory of the other Contracting Party, <u>except for a public purpose, under due process of law, in a non-discriminatory manner and against prompt, adequate and effective compensation</u>. <u>Such compensation</u> shall be based on the genuine value of the investment or returns expropriated immediately before the expropriation or at the time the proposed expropriation became public knowledge, whichever is the earlier, <u>shall be payable from the date of expropriation with interest at a normal commercial rate, shall be paid without delay and shall be effectively realizable and freely transferable.</u>

[Emphasis added].

It follows that if the ICSID award payment is not adequate and effective, it remains due. The US$ 320 million payment to the Company with Venezuelan securities was not adequate and effective compensation then, and is much less so today, given that the securities were and remain frozen due to OFAC regulations. Further, these securities are currently worth a fraction of their market value at the time of the transfer to the Company and are highly likely to sell for pennies on a dollar once the U.S. sanctions are lifted and they can be traded.

In addition, from a contractual point of view, the Settlement Agreement is not binding on the Company once Venezuela failed to complete the transaction it had bargained for. Furthermore, the payment made with Venezuelan securities was made ineffective by the terms of the Settlement Agreement. Exhibit A contains an excerpt of the Settlement Agreement with the following entry from its Section 1, which deals with terms and conditions:

1. **Initial Payment**. On the date hereof as a condition precedent to the effectiveness of the provisions of this Agreement, <u>Venezuela shall deliver (or cause to be delivered) to Crystallex (or its designee) cash in U.S. dollars in immediately available funds and /or Liquid Securities (as defined below) in an amount, in the case of cash, or with a Market Value (as defined below) in the case of Liquid Securities of at least U.S. $425,000,000 (the "Initial Payment")</u>...

(i) "<u>Liquid Securities</u>" <u>means public debt securities in U.S. dollar freely tradeable in the United States and subject to publicly available pricing quotations;</u>

Exhibit B shows the post-Award interest due (US$ 184 million) through June 2021, while Exhibit C shows the interest credit amount (US$ 14 million) based on the effective / cash payments the Company received from Venezuela (US$ 180.5 million) based on the terms of the ICSID Arbitration Panel decision.

The Arbitration Panel's Award decision was intended to make the Company whole as required by the Rules of the Additional Facility of the International Centre for Settlement of Investment Disputes and international law (the *Chorzów Factory* standard). Therefore, it is compulsory to pursue the collection of the full amount due to the Company and to return the frozen securities to the Venezuelan government.

Short-changing the Company's bankruptcy estate in the execution of the judgement is impermissible under the Bankruptcy Code and Delaware law; and any adverse outcome is reversible through legal action by a party in interest harmed by the failure to carry out the required due diligence to satisfy the judgement.

The Special Master's report also reflects judgement errors that can only be explained by the lack of an in-depth understanding on the Venezuelan political conundrum and the actors involved. As the Company's officers learned after trying to reach a negotiated agreement with Venezuela over the last ten years, it is not possible while there are two governments pursuing diverging objectives, and the U.S. Government intervenes in support of one of the two political factions to delay a final lawful solution. Hence, the Special Master's recommendation is not only unworkable but also supports the delaying strategy implemented by Venezuela and aided by the U.S. Government to prevent a final solution that is politically inconvenient. Venezuela will not pay its debt to Crystallex unless it has no other choice and anyone expecting a different outcome shall be proven grossly mistaken.

I thank you in advance for your time and consideration.

Sincerely,

Adelso A. Adrianza

cc: The Special Master

**CRYSTALLEX INTERNATIONAL CORP.**  **EXHIBIT A**
**OUTSTANDING ARBITRATION AWARD**

| DATE | DESCRIPTION | INTEREST DAYS | BASE RATE | 6-MONTH USD LIBOR | USD LIBOR + 1% | INTEREST DUE | CUM AWARD + INTEREST | CUM INTEREST |
|---|---|---|---|---|---|---|---|---|
| **POST-AWARD INTEREST DUE** | | | | | | | | |
| From / To | | | | | | | | |
| 3/11/2016  12/31/2016 | | 295 | 1.0000% | 1.3118% | 2.3118% | $ 25.9 | $ 1,411.9 | $ 25.9 |
| 1/1/2017  12/31/2017 | | 364 | 1.0000% | 1.8370% | 2.8370% | $ 39.2 | $ 1,451.1 | $ 65.1 |
| 1/1/2018  12/31/2018 | | 364 | 1.0000% | 2.8760% | 3.8760% | $ 53.6 | $ 1,504.7 | $ 118.7 |
| 1/1/2019  12/31/2019 | | 364 | 1.0000% | 1.9120% | 2.9120% | $ 40.2 | $ 1,544.9 | $ 158.9 |
| 1/1/2020  12/31/2020 | | 365 | 1.0000% | 0.2580% | 1.2580% | $ 17.4 | $ 1,562.4 | $ 176.4 |
| 1/1/2021  6/30/2021 | | 180 | 1.0000% | 0.1480% | 1.1480% | $ 7.8 | $ 1,570.2 | $ 184.2 |

POST-AWARD INTEREST DUE (BEFORE CREDIT FOR PAYMENTS MADE - SEE EXHIBIT B).  $ 184.2

**ICSID-BALANCE DUE**

3/10/2016 (USD Millions)
| | |
|---|---|
| AWARD | $ 1,202.0 |
| PRE-AWARD INTEREST | $ 184.0 |
| **AWARD + PRE-AWARD INTEREST** | **$ 1,386.0** |
| POST-AWARD INTEREST | $ 184.2 |
| EFFECTIVE PAYMENTS + INTEREST CREDIT (SEE EXHIBIT 2) | $ (194.5) |
| **NET AWARD + INTEREST DUE** | **$ 1,375.8** |

**POST-AWARD INTEREST TERMS**

961 f. The Respondent is ordered to pay post-award interest on the amounts specified in subparagraph (d) and (e) above at the rate of the 6-month average U.S. Dollar LIBOR + 1%, compounded annually, calculated from the date of the Award until full payment.

| INTEREST AWARD: | START DATE: | 3/11/2016 |
|---|---|---|
| | RATE: | 6-Month USD LIBOR + 1% |

| Sources: | Post-award interest terms: | ICSID Award - https://www.italaw.com/sites/default/files/case-documents/italaw7194.pdf |
|---|---|---|
| | 6-Month USD LIBOR + 1% - | https://www.global-rates.com/en/interest-rates/libor/american-dollar/american-dollar.aspx |

**CRYSTALLEX INTERNATIONAL CORP.**
**OUTSTANDING ARBITRATION AWARD**

**EXHIBIT B**

| DATE From | DATE To | INTEREST DAYS | BASE RATE | 6-MONTH USD LIBOR | INTEREST RATE % | PMTS. ISSUED | EFECTIVE PMTS. RECEIVED | CUM CASH PMTS. | INTEREST CREDIT | CUM INT. CREDIT | CUM INT. + PMTS. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/16/2018 | 12/31/2018 | 318 | 1.000% | 2.876% | 3.876% | $ 5.2 | $ 5.2 | $ 5.2 | $ 0.2 | $ 0.2 | $ 5.4 |
| 3/5/2018 | 12/31/2018 | 301 | 1.000% | 2.876% | 3.876% | $ 5.0 | $ 5.0 | $ 10.2 | $ 0.2 | $ 0.3 | $ 10.6 |
| 4/10/2018 | 12/31/2018 | 265 | 1.000% | 2.876% | 3.876% | $ 20.8 | $ 20.8 | $ 31.1 | $ 0.6 | $ 0.9 | $ 32.0 |
| 4/13/2018 | 12/31/2018 | 262 | 1.000% | 2.876% | 3.876% | $ 15.1 | $ 15.1 | $ 46.1 | $ 0.4 | $ 1.3 | $ 47.5 |
| 8/31/2018 | 12/31/2018 | 122 | 1.000% | 2.876% | 3.876% | $ 29.7 | $ 29.7 | $ 75.8 | $ 0.4 | $ 1.7 | $ 77.6 |
| 10/2/2018 | 12/31/2018 | 90 | 1.000% | 2.876% | 3.876% | $ 319.6 |  | $ 75.8 | $ 3.1 | $ 4.8 | $ 80.6 |
| 10/15/2018 | 12/31/2018 | 77 | 1.000% | 2.876% | 3.876% | $ 52.9 | $ 52.9 | $ 128.7 | $ 0.4 | $ 5.2 | $ 134.0 |
| 11/23/2018 | 12/31/2018 | 38 | 1.000% | 2.876% | 3.876% | $ 51.8 | $ 51.8 | $ 180.5 | $ 0.2 | $ 5.4 | $ 185.9 |
| 1/1/2019 | 12/31/2019 | 364 | 1.000% | 1.912% | 2.912% |  |  | $ 180.5 | $ 5.2 | $ 10.7 | $ 191.2 |
| 1/1/2020 | 12/31/2020 | 365 | 1.000% | 0.258% | 1.258% |  |  | $ 180.5 | $ 2.3 | $ 12.9 | $ 193.4 |
| 1/1/2021 | 6/30/2021 | 180 | 1.000% | 0.148% | 1.148% |  |  | $ 180.5 | $ 1.0 | $ 14.0 | $ 194.5 |
|  |  |  |  |  |  | $ 500.1 | $ 180.5 |  |  |  |  |

| | |
|---|---|
| **TOTAL EFECTIVE PAYMENTS + INTEREST** | $ 194.5 |
| **TOTAL EFFECTIVE PAYMENTS** | $ 180.5 |
| **TOTAL INTEREST CREDIT** | $ 14.0 |

Sources:
- Venezuelan payments: Delaware District Court Case 1:17-mc-00151-LPS, D.I. 348 p. 25
- Post-award interest terms: ICSID Award - https://www.italaw.com/sites/default/files/case-documents/italaw7194.pdf
- 6-Month USD LIBOR + 1% - https://www.global-rates.com/en/interest-rates/libor/american-dollar/american-dollar.aspx

**EXHIBIT C**

# Crystallex International Corporation

### AMENDED AND RESTATED CONTRACT OF TRANSACTION AND SETTLEMENT
### Dated September 10, 2018

### EXCERPT

**Initial Payment.** On the date hereof as a condition precedent to the effectiveness of the provisions of this Agreement, Venezuela shall deliver (or cause to be delivered) to Crystallex (or its designee) cash in U.S. dollars in immediately available fund s and /or Liquid Securities (as defined below) in an amount, in the case of cash, or with a Market Value (as defined below) in the case of Liquid Securities of at least U.S. $425,000,000 (the "Initial Payment") in accordance with the payment instructions set forth on Annex A hereto or such other payment instructions specified in writing (including electronic, communication) from time to time by Crystallex in its sole discretion, which amount shall be applied to the outstanding amount of the Award. With respect to any Liquid Securities delivered as part of such payment, such delivery shall be deemed to be applied to the outstanding amount of the Award in an amount equal to the Market Value of such securities, regardless of whether the ultimate proceeds or realization in respect of such securities is less than or greater than such Market Value; *provided* that (x) with respect to any Liquid Securities sold by Crystallex prior to the date that is six months after the Initial Payment is made, the amount of the Initial Payment shall be deemed to be increased or reduced, as applicable, by an amount equal to the Proceeds Adjustment Factor (as defined below) and (y) any such sale by Crystallex during such six-month period shall be conducted in a commercially reasonable manner and Crystallex ' s provide to Venezuela commercially reasonable evidence of the relevant sales and amounts and pricing for the same.  It is agreed that Crystallex will not apply or liquidate any cash or Liquid Securities delivered pursuant to the Initial Payment until the Temporary Stay of Execution in Section 2 below is achieved. As used herein (i) "Liquid Securities" means public debt securities in U.S. dollar freely tradeable in the United States and subject to publicly available pricing quotations; "Market Value", with respect to any Liquid Securities,  means the volume weighted average price of such Liquid Securities over the 30-trading-day period ending immediately prior to the date such Liquid Securities are delivered pursuant to the terms of this Agreement or, if, in the reasonable judgment of Crystal lex, such volume weighted average price is not available or sufficient liquidity does not exist for the such volume weighted average price to be a commercially reasonable measure of the current market value of the Liquid Securities, such market value as of such date as is determined in a commercially reasonable manner by Crystallex; and (iii) "Proceeds Adjustment Factor" means the amount by which the aggregate sale proceeds received by Crystallex for any Liquid Securities delivered as part of the Initial Payment (such amount, the "Liquid Securities Proceeds Amount") exceeds or is less than the Market Value of such Liquid Securities determined at the time of such delivery, with any excess to be deemed to increase the amount of the Initial Payment(and decrease the

EXHIBIT C 1 | P a g e

Deferred Settlement Amount (as defined below) accordingly) and any shortfall to be deemed to reduce the amount of the Initial Payment (and increase the Deferred Settlement Amount accordingly). It is agreed that Crystallex will not apply or liquidate any cash or Liquid Securities delivered in accordance with the Initial Payment, until the Temporary Stay Period, as defined in Section 2 of this Agreement is not commenced. In the event that the Temporary Stay Period is not commenced, Crystallex will return the cash or Liquid Securities delivered in accordance with the Initial Payment.

EXHIBIT C 2 | P a g e

The Honorable
Judge L. Stark
Delaware U.S. District Court
844 N. King Street, Unit 26 - Room 6124
Wilmington, DE 19801-3555

ADELSO ADRIANZA
859-803-2279
ADELSO ADRIANZA
113 WASHINGTON ST
NEWTON MA 02458-2249

0.2 LBS LTR    1 OF 1

SHIP TO:
JUDGE L STARK
DELAWARE U.S DISTRICT COURT
UNIT 26
844 N KING ST
WILMINGTON DE 19801-3519

DE 197 9-25

UPS NEXT DAY AIR    1
TRACKING #: 1Z V96 311 01 0364 1878

BILLING: P/P

XOL 21.09.05    NV45 38.0A 09/2021
STAPLES
copy&print

U.S.M.S.
X-RAY

RECEIVED
SEP 27 2021
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

The Honorable
Judge L. Stark
Delaware U.S. District Court
844 N. King Street, Unit 26 - Room 6124
Wilmington, DE 19801-3555