# Exhibit F

| | |
|---|---|
| From: | Hufendick, Jason |
| To: | Eimer, Nate; bayliss@abramsbayliss.com; childs@abramsbayliss.com; donald.verrilli@mto.com; Elaine.goldenberg@mto.com; george.garvey@mto.com; ginger.anders@mto.com; seth.goldman@mto.com; acumings@mnat.com; Meyer, Lisa; Birk, Dan; Schweizer, Greg; shirzel@hegh.law; jpizzurro@curtis.com; jperla@curtis.com; jmosse@curtis.com; kmeehan@curtis.com; Profusek, Robert A. |
| Cc: | Schrock, Ray; Welch, Alexander; Robert Pincus |
| Subject: | CITGO/Crystallex: Evercore Engagement Letter |
| Date: | Monday, July 26, 2021 10:29:10 AM |
| Attachments: | image001.jpg<br>Evercore Engagement Letter (7.20) (Sale Transaction)_WEIL_98016429_7.DOCX |

Counsel,

**Attached** please find the proposed Evercore engagement letter to be submitted with the Sale Procedures Order. As you will see, the terms remain consistent with those shared in early June. Please let us know if you have any questions and/or if you would like to discuss. Thank you.

Best,
Jason



**Jason Hufendick**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Jason.Hufendick@weil.com
+1 212 310 8253 Direct
+1 217 371 2939 Mobile

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

As of [●], 2021

Robert B. Pincus
In his capacity as Special Master
of the United States District Court for the District of Delaware
108 Rockford Grove Lane
Wilmington, DE 19806

Dear Special Master Robert Pincus:

1. **Assignment:**

This engagement letter (this "**Agreement**") is to formalize the arrangement between Evercore Group L.L.C. ("**Evercore**") and Robert B. Pincus, solely in his capacity as special master ("**Special Master**") for the United States District Court for the District of Delaware (the "**Court**") in *Crystallex International Corp. v. Bolivarian Republic of Venezuela* (D. Del. Case. No. 17-151-LPS) (the "**Specified Litigation**") pursuant to that certain order entered by the Court on April 13, 2021 [Docket No. 258], that certain *Order Regarding Special Master* entered by the Court on May 27, 2021 [Docket No. 277] (the "**May Order**") and the *Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* entered by the Court on [●] [Docket No. [●]] (the "**Sale Procedures Order**"). The Special Master, solely in his capacity as special master, hereby retains Evercore as exclusive financial advisor in connection with implementation of the Sale Procedures Order and consummation of the sale of the equity interests of PDV Holding, Inc. ("**PDVH**" and together with its direct and indirect subsidiaries, the "**Company**") held by Petróleos de Venezuela, S.A. ("**PDVSA**") or other transactions and proceedings (collectively, the "**Sale Transaction**").

The parties hereto entered into that certain engagement dated as of June 2, 2021 (the "**Prior Engagement Letter**"). Upon execution of this Agreement, the Prior Engagement Letter shall automatically terminate as of the date this Agreement becomes effective (other than any provision that by its terms expressly survives termination thereof).

It is the parties' intent that services (as described herein) performed hereunder are, in part, for the purpose of assisting Weil, Gotshal & Manges LLP ("**Weil**") in its capacity as counsel to the Special Master so that Weil can render attorney-client advice to the Special Master. Accordingly, certain actions taken by Evercore are intended to be and shall be privileged and protected by the attorney work product privilege, attorney-client privilege, and other applicable privilege doctrines available under applicable law. The Special Master and Evercore each acknowledge and agree that Weil shall not be responsible for any fees, expenses, indemnification rights or other amounts or payments that may be owed to Evercore directly or indirectly under this Agreement.

1

As of [●], 2021
Page 2

## 2. Fees and Expenses:

Evercore will seek payment of its fees and documented expenses from Crystallex International Corp., the Bolivarian Republic of Venezuela, PDVH, PDVSA, CITGO Petroleum Corp. ("**CITGO**") and ConocoPhillips Petrozuata B.V. (collectively, the "**Sale Process Parties**") in accordance with the May Order and the Sale Procedures Order. The Special Master hereby agrees to take all actions required of the Special Master and to otherwise assist Evercore in seeking (and, as applicable, obtaining approval of) payment of the fees and documented expenses incurred pursuant to this Agreement from the Sale Process Parties, including by making any necessary or desirable filings in the Specified Litigation.

Notwithstanding anything to the contrary in this Agreement, Evercore and the Special Master each acknowledge and agree that the Special Master shall not be personally responsible for any fees or expenses, or other amounts or payments that may be due and payable directly or indirectly under this letter. For the avoidance of doubt, notwithstanding anything herein to the contrary, under no circumstances shall the Special Master be liable to any party for any fees, expenses, or amounts due or claimed in connection to or arising from this Agreement.

As compensation for the services rendered by Evercore hereunder, Evercore shall be paid the following fees in cash by the Sale Process Parties as and when set forth below:

a. A monthly fee of $200,000 (a "**Monthly Fee**"), which shall be earned in full and payable on execution of this Agreement, and subsequently on the same day of each month thereafter until the earlier of the consummation of a Sale Transaction or the termination of Evercore's engagement. The first nine (9) Monthly Fees actually paid shall be credited 50% (without duplication) against any Sale Fee that becomes payable hereunder. Notwithstanding the foregoing, if implementation or consummation of the Sale Transaction is stayed or otherwise delayed for any reason (other than a delay caused by a necessary regulatory approval unrelated to a license required from the Office of Foreign Assets Control in the United States Department of the Treasury ("**OFAC**")), the Special Master may send a written notice (including by email) to Evercore that, three business days after it is actually received by Evercore, will have the effect of ending the accrual of Monthly Fees until such time as the Special Master rescinds the notice in writing (including by email). Evercore shall not be required to repay any amount of any Monthly Fee paid prior to the receipt of such a notice. The Special Master may only send such a notice if no material amount of work or services have been requested of Evercore for the applicable period, and Evercore shall have no obligation to perform any work or services during the period in which such Monthly Fees do not accrue until such time as Evercore actually receives the next Monthly Fee, which shall be payable not later than 3 business days following rescission of the Special Master's stay notice and subsequently on the same day of each month thereafter until the earlier of the consummation of a Sale Transaction or the termination of Evercore's engagement; *provided* that the first Monthly Fee payable after such rescission shall be prorated to account for any period for which a Monthly Fee already was paid hereunder.

As of [●], 2021
Page 3

    b. A sale fee (a "**Sale Fee**"), 37.5% of which shall be earned and payable upon the earlier of (i) announcement by the Special Master of any Sale Transaction and (ii) execution of a binding definitive agreement with respect to any Sale Transaction, and the remainder of which shall be earned and payable upon consummation of any Sale Transaction, equal to (a) the amount of the Aggregate Consideration (as defined below) multiplied by (b) 0.35%.

        i. As used in this Agreement, the term "Aggregate Consideration" shall mean the total fair market value (determined at the time of the closing of a Sale) of all consideration paid or payable, or otherwise to be distributed to, or received by, directly or indirectly, the Court (or the Special Master) in connection with the Sale Transaction or the Company, its bankruptcy estate (if any), its creditors and/or the security holders of the Company in connection with a Sale, including all (i) cash, securities and other property, (ii) Company debt assumed, satisfied, or paid by a purchaser or which remains outstanding at closing (including, without limitation, the amount of any indebtedness, securities or other property "credit bid" in any Sale) and any other indebtedness and obligations, including litigation claims and tax claims that will actually be paid, satisfied, or assumed by a purchaser from the Company or the security holders of the Company and (iii) amounts placed in escrow and deferred, contingent and installment payments.

    c. Only if related services are expressly requested by the Special Master in the performance of his duties, a financing fee (a "**Financing Fee**"), to be mutually agreed upon in advance of consummation of any Financing (as defined below), payable upon consummation of such Financing. The parties agree to negotiate in good faith a mutually acceptable Financing Fee, which, subject to the anticipated scope of work, shall be consistent with the compensation customarily paid to investment bankers of similar standing acting in similar situations. Evercore will, prior to performing any services that would give rise to a Financing Fee, inform the Special Master that the requested services, if performed, would give rise to a Financing Fee.

    d. Only if related services are expressly requested by the Special Master in the performance of his duties, a restructuring fee (a "**Restructuring Fee**"), to be mutually agreed upon in advance of consummation of any Restructuring (as defined below), payable upon consummation of such Restructuring (it being understood that, unless otherwise agreed pursuant to this Section 2(e), Evercore shall not be entitled to a Restructuring Fee on account of any Sale that also constitutes a Restructuring). The parties agree to negotiate in good faith a mutually acceptable Restructuring Fee, which, subject to the anticipated scope of work, shall be consistent with the compensation customarily paid to investment bankers of similar standing acting in similar situations. Evercore will, prior to performing any services that would give rise to a Restructuring Fee, inform the Special Master that the requested services, if performed, would give rise to a Restructuring Fee.

    e. In addition to any fees that may be payable to Evercore and, regardless of whether any transaction occurs, Evercore shall promptly be reimbursed on a monthly basis for (a) all reasonable expenses (including travel and lodging, data processing and communications

As of [●], 2021
Page 4

      charges, courier services and other appropriate expenditures) and (b) other documented reasonable fees and expenses, including expenses of counsel, if any.

  f.  If Evercore provides services for which a fee is not provided herein, such services shall, except insofar as they are the subject of a separate agreement, be treated as falling within the scope of this Agreement, and the Special Master and Evercore will agree upon a fee for such services based upon good faith negotiations and the scope of work performed.

  g.  All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

In addition, the Special Master and Evercore acknowledge and agree that more than one fee may be payable to Evercore under subparagraphs 2(a), 2(b), 2(c), 2(d), and/or 2(f) hereof in connection with any single transaction or a series of transactions, it being understood and agreed that if more than one fee becomes so payable to Evercore in connection with a series of transactions, each such fee shall be paid to Evercore.

The Special Master acknowledges that the fee structure herein, including the Monthly Fees, reflects the substantial commitment of professional time and effort that will be required of Evercore and its professionals and in light of the fact that (i) such commitment may foreclose other opportunities for Evercore and (ii) the actual time and commitment required of Evercore and its professionals to perform its services may vary substantially from week to week and month to month, creating "peak load" issues for Evercore.

  3.  **Interpretation of Terms:**

As used in this agreement, the term "**Sale**" shall mean whether or not in one transaction, or a series of related transactions, (a) the disposition to one or more third parties of all or a portion of the issued and outstanding equity securities or any other issued and outstanding securities of the Company by the existing security holders of the Company; or (b) an acquisition, merger, consolidation, or other business combination, of which all or a portion of the business, assets or existing equity or securities of the Company are, directly or indirectly, sold or transferred to, or combined with, another company (other than an ordinary course intra-company transaction); or (c) an acquisition, merger, consolidation, sale, or other business combination pursuant to a successful "credit bid" of any securities by existing securities holders; or (d) the formation of a joint venture, partnership or similar entity; or (e) any transaction similar to any of the transactions described in clauses (a)-(d).

As used in this Agreement, the term "**Financing**" shall mean the issuance, sale or placement of newly issued or treasury equity, equity-linked or debt securities, instruments or obligations of the Company with one or more lenders and/or investors or security holders (each such lender or investor, an "**Investor**"), including any "debtor-in-possession financing" or "exit financing" in connection with any case under the Bankruptcy Code (as defined below) or a refinancing, repricing, rights offering or any loan or other financing or obligation.

As used in this Agreement, the term "**Restructuring**" shall mean, collectively, any restructuring, reorganization and/or recapitalization, however such result is achieved, including, without

As of [●], 2021
Page 5

limitation, through one or more of the following: (a) a plan of reorganization or liquidation (a "**Plan**") confirmed pursuant to 11 U.S.C. §101 *et. seq.*, as from time to time amended, or any other current or future federal statute or regulation that may be applicable to such plan (11 U.S.C. §101 *et. seq.* and those other statutes and regulations are referred to herein generally as the "Bankruptcy Code"), (b) any similar proceeding or mechanism under the laws of any non-U.S. jurisdiction or authority, or (c) a refinancing, cancellation, forgiveness, satisfaction, retirement, purchase, assumption and/or a material modification or amendment to the terms of the Company's outstanding indebtedness (including bank debt, bond debt, preferred stock, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), litigation-related claims and obligations, unfunded pension and retiree medical liabilities, lease obligations, partnership interests and other liabilities, including pursuant to a sale, repurchase or an exchange transaction, a Plan or a solicitation of consents, waivers, acceptances or authorizations. For avoidance of doubt, the term Restructuring shall also mean any claims negotiation process and related negotiations with various creditors and claimants.

**Other:**

4. Evercore's engagement hereunder is premised on the assumption that the Special Master will make available to, or use reasonable efforts to cause the Sale Process Parties to make available to, Evercore all information and data that Evercore reasonably deems appropriate in connection with its activities. The parties recognize and consent to the fact that (a) Evercore will use and rely on the accuracy and completeness of public reports and other information provided by others, including information provided by the Special Master, the Sale Process Parties, other parties and their respective officers, employees, auditors, attorneys or other agents in performing the services contemplated by this Agreement, and (b) Evercore does not assume responsibility for, and may rely without independent verification upon, the accuracy and completeness of any such information. Evercore will, and will cause its controlled affiliates, directors, officers, members, agents, employees and other representatives to, keep confidential all information furnished to it to the extent provided in any protective order entered by the Court and furnished to Evercore by the Special Master or a Sale Process Party. Further, Evercore agrees and acknowledges that it will execute any confidentiality or joinder agreement required by the Court or reasonably requested by the Special Master pursuant to any such protective order, including, without limitation, the *Special Master Confidentiality Order* [D.I. 291].

5. Evercore's engagement hereunder may be terminated by the Special Master or Evercore at any time upon written notice without liability or continuing obligation to the Special Master or Evercore, except that following such termination, Evercore shall remain entitled to payment of any fees accrued pursuant to Section 2 but not yet paid prior to such termination, and to reimbursement of expenses incurred prior to such termination. Solely in the case of termination by the Special Master (and not in the case of termination by Evercore), payment of (i) any Sale Fee in respect of any Sale Transaction announced or consummated on or within 15 months of the date of entry of the Sale Procedures Order, and (ii) any other fees that may become payable to Evercore pursuant to the terms of the Sale Procedures Order or any other Court order entered on or before the date of

As of [●], 2021
Page 6

    such termination on or within 15 months of the date of entry of the Sale Procedures Order or such other order, as applicable; *provided*, *however*, that in the case of both (i) and (ii), any such fees shall only be payable out of the proceeds of any Sale Transaction or Financing (if applicable) that is overseen and/or directed by the Special Master.

6. Evercore acknowledges that it will provide testimony, as reasonably necessary, with respect to matters related to the implementation and consummation of the Sale Transaction.

7. To the extent the provision of services or other transactions contemplated in this Agreement may, in Evercore's sole judgment, require a specific license from OFAC, such services or transactions will not commence unless and until authorized by a license from OFAC. Any applicable laws, executive orders, regulations, directives or licenses administered or issued by OFAC will take precedence over the terms of this letter in the event of a conflict. Evercore may terminate this Agreement at any time if it appears, in Evercore's sole judgment, that OFAC will not grant a license necessary to complete the services or other transactions contemplated in this Agreement within a reasonable amount of time.

8. The Special Master and Evercore each acknowledge that to the extent there is any conflict between this Agreement and the Sale Procedures Order, the Sale Procedures Order shall control. Evercore shall be entitled to any indemnification provided therefore in the Sale Procedures Order.

9. Nothing in this Agreement, expressed or implied, is intended to confer or does confer on any person or entity other than the parties hereto or their respective successors and assigns any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Evercore hereunder. The Special Master acknowledges that Evercore is not acting as an agent of the Special Master or in a fiduciary capacity with respect to the Special Master and that Evercore is not assuming any duties or obligations other than those expressly set forth in this Agreement. Nothing contained herein shall be construed as creating, or be deemed to create, the relationship of employer and employee between the parties, nor any agency, joint venture or partnership. Evercore shall at all times be and be deemed to be an independent contractor. Nothing herein is intended to create or shall be construed as creating a fiduciary relationship between Evercore and the Special Master. No party to this Agreement nor its employees or agents shall have any authority to act for or to bind the other party in any way or to sign the name of the other party or to represent that that the other party is in any way responsible for the acts or omissions of such party.

10. Pursuant to the Sale Procedures Order, Evercore shall be entitled to judicial immunity to the extent provided therein. The provisions of this Section 10 shall survive any termination or completion of Evercore's engagement hereunder.

11. Subject to the Sale Procedures Order, the Special Master agrees that he is solely responsible for any decision regarding the Sale Transaction, regardless of the advice

As of [●], 2021
Page 7

provided by Evercore with respect to the Sale Procedures Order. The Special Master acknowledges that the appointment of Evercore pursuant to this Agreement is not intended to achieve or guarantee, and that Evercore is not in a position to guarantee the achievement of or consummation of, the Sale Transaction.

12. The Special Master recognizes that Evercore has been engaged only by the Special Master and that the Special Master's engagement of Evercore is not deemed to be on behalf of and is not intended to confer rights on any of the Sale Process Parties, any creditor, lender or any other person not a party hereto or any of its affiliates or their respective directors, officers, members, agents, employees or representatives. Unless otherwise expressly agreed, no one other than the Special Master is authorized to rely upon the Special Master's engagement of Evercore or any statements, advice, opinions or conduct by Evercore. Without limiting the foregoing, any advice, written or oral, rendered to the Special Master in the course of the Special Master's engagement of Evercore is solely for the purpose of assisting the Special Master (and assisting Weil in representing the Special Master) in implementing the Sale Transaction and does not constitute a recommendation to any of the Sale Process Parties that such party might or should take in connection with the Sale Procedures Order. Any advice, written or oral, rendered by Evercore may not be disclosed publicly or made available to third parties without the prior written consent of Evercore.

13. In order to coordinate Evercore's efforts on behalf of the Special Master during the period of Evercore's engagement hereunder, the Special Master will promptly inform Evercore of any discussions, negotiations, or inquiries regarding the Sale Transaction, including any such discussions or inquiries that have occurred since the date of the Special Master's appointment (April 13, 2021).

14. This Agreement between Evercore and the Special Master, embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof, including the Prior Engagement Letter. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect this Agreement in any other respect, which will remain in full force and effect. This Agreement may not be amended or modified except in writing signed by each of the parties.

15. In the event that, as a result of or in connection with Evercore's engagement for the Special Master, Evercore becomes involved in any legal proceeding or investigation or is required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, the Special Master will use reasonable efforts to cause the Sale Process Parties to reimburse Evercore for the reasonable fees and expenses of its counsel incurred (i) in responding to such a request and (ii) in asserting Evercore's rights with respect to judicial immunity. The provisions of this Section 15 shall survive any termination or completion of Evercore's engagement hereunder.

As of [●], 2021
Page 8

16. So long as consistent with its duties pursuant to the Sale Procedures Order, and any subsequent order of the Court, Evercore shall have the right to place advertisements in financial and other newspapers and journals at its own expense describing its services hereunder.

17. The Special Master acknowledges that Evercore, in the ordinary course, may have received information and may receive information from third parties which could be relevant to this engagement but is nevertheless subject to a contractual, equitable or statutory obligation of confidentiality, and that Evercore is under no obligation hereby to disclose any such information or include such information in its analysis or advice provided to the Special Master. In addition, Evercore or one or more of its affiliates may in the past have had, and may currently or in the future have, investment banking, investment management, financial advisory or other relationships with the Sale Process Parties and their affiliates, potential parties to any transaction and their affiliates or persons that are competitors, customers or suppliers of (or have other relationships with) the Sale Process Parties or their affiliates or potential parties to any transaction or their affiliates, and from which conflicting interests or duties may arise. Nothing contained herein shall limit or preclude Evercore or any of its affiliates from carrying on (i) any business with or from providing any financial or non-financial services to any party whatsoever, including, without limitation, any competitor, supplier or customer of the Sale Process Parties, or any other party which may have interests different from or adverse to the Sale Process Parties or (ii) its business as currently conducted or as such business may be conducted in the future. The Special Master also acknowledges that Evercore and its affiliates engage in a wide range of activities for their own accounts and the accounts of customers, including corporate finance, mergers and acquisitions, equity sales, trading and research, private equity, asset management and related activities. In the ordinary course of such businesses, Evercore and its affiliates may at any time, directly or indirectly, hold long or short positions and may trade or otherwise effect transactions for their own accounts or the accounts of customers, in debt or equity securities, senior loans and/or derivative products relating to the Sale Process Parties or their affiliates, potential parties to any transaction and their affiliates or persons that are competitors, customers or suppliers of the Sale Process Parties. Without limiting the foregoing, so long as customary information barriers are created and maintained by Evercore, Evercore's engagement hereunder will not limit the ability of Evercore or its affiliates to provide service to any third party, including in relation to a Sale Process Party or any affiliate thereof.

18. The Special Master agrees to provide and use reasonable efforts to procure all corporate, financial, identification and other information regarding the Special Master, as Evercore may require to satisfy its obligations as a U.S. financial institution under the USA PATRIOT Act and Financial Crimes Enforcement Network regulations.

19. Evercore may, in the performance of its services hereunder, delegate the performance of all or certain services as it may select to any of its affiliated entities; *provided* that no such delegation by Evercore shall in any respect affect the terms hereof, and Evercore

As of [●], 2021
Page 9

> shall be responsible for any acts or omissions by any of its affiliated entities in the performance of any services delegated to such entity.

20. For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which shall be an original instrument and all of which taken together shall constitute one and the same Agreement. Delivery of a signed counterpart of this Agreement by facsimile or electronic mail transmission shall constitute valid sufficient delivery thereof.

21. Except as provided herein, the parties hereby irrevocably consent to the exclusive jurisdiction of the Court over any action or proceeding arising out of or relating to this Agreement, and the parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard by the Court. The parties irrevocably agree to waive all rights to trial by jury in any such action or proceeding and irrevocably consent to the service of any and all process in any such action or proceeding by the mailing of copies of such process to each party at its address set forth above. The parties agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. The Agreement and any claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflicts of law principles that would result in the application of any law other than the law of the State of New York). The parties further waive any objection to venue in the Court and any objection to any action or proceeding in such state on the basis of forum non conveniens.

As of [●], 2021
Page 10

If the foregoing correctly sets forth the understanding and agreement between Evercore and the Special Master, please so indicate in the space provided below, whereupon this letter shall constitute a binding agreement as of the date hereof.

Very truly yours,

Evercore Group L.L.C.

By:_____
David Ying
Senior Managing Director

Agreed to and Accepted as of
[●], 2021:

Special Master of the United States District Court for the District of Delaware

By: _____
Robert B. Pincus
In his capacity as Special Master
of the United States District Court for the District of Delaware