# EXHIBIT 1

*Crystallex International Corporation v. Bolivarian Republic of Venezuela*, Case No. 1:17-mc-00151-LPS

**Exhibit 1**

**Summary and Status of Sale Process Parties' Objections to Sale Procedures Order[1]**

| Objecting Party | Objection | Special Master's Perspective |
|---|---|---|
| **ConocoPhillips** [D.I. 319] | 1. The Special Master understands that ConocoPhillips' objection has been resolved following the filing of the revised Proposed Sale Procedures Order (*see* D.I. 391). | |
| **Venezuela Parties** [D.I. 317] | 2. The Special Master's process for developing the proposed sale and bidding procedures was flawed, resulting in a value-destroying recommendation. | • The Special Master respectfully disagrees with the Venezuela Parties' assertions.  The Special Master has conducted an open and transparent process, as outlined his process in his Report and each of his monthly reports filed with the Court.  The alleged flaws should be considered in light of the Venezuela Parties' goals for the Special Master process. |
| | 3. The Special Master did not conduct a valuation of the company. | • The Special Master's full response to this alleged flaw is set forth in the Special Master's reply at ⁋ 26 [D.I. 341]. <br><br> • In summary, although it may be customary for a board of directors to ask its advisors to prepare an informal valuation – customarily referred to as a "desktop valuation" in connection with evaluating the decision to launch a sale process, that decision was already made in the Crystallex Case well before the Special Master was appointed.  See January 2021 Opinion (directing the sale of the PDVH Shares).   In the forced-sale context, the Special Master does not believe that commissioning a formal valuation – which will result in additional cost, |

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Second Revised Proposed Sale Procedures Order (D.I. 391) or the Special Master's Report and Recommendation (D.I. 303).

| Objecting Party | Objection | Special Master's Perspective |
|---|---|---|
| | | timing, and expense – would bring any real value to the process. |
| | 4. The Special Master failed to consider alternative transaction structures. | • The Special Master's full response to this alleged flaw is set forth in the Special Master's reply at ₱ 22-26 [D.I. 341].<br><br>• In summary, nothing in the Proposed Sale Procedures Order today prohibits the Venezuela Parties from evaluating and proposing such alternative structures to Crystallex (or any other holder of an Attached Judgment). Based on each of the parties statements to welcoming a negotiated outcome, the Special Master suspects that Crystallex would welcome a tangible and feasible proposal from the Venezuela Parties that would result in payment of their Attached Judgment.<br><br>• The Special Master continues to believe it would be helpful if the Venezuela Parties would provide more specifics around their proposal and the potential "pockets of value" alluded to in the Weisenburger Declaration |
| | 5. The resulting process is structured to sell 100% of PDVH at a discount due to, among other things, (1) the evaluation of bids based on the implied equity value rather than on which bid offers the most money for the fewest shares and (2) the deposit requirement of 10% of the implied equity value of the bid. | • The Special Master's full response to this alleged flaw is set forth in the Special Master's reply at ₱ 22-23 [D.I. 341].<br><br>• The argument that the Proposed Sale Procedures Order is structured to sell 100% of the PDVH shares falls away upon the examination of the process that the Special Master has recommended. *See e.g.*, Bidding Procedures at ₱ 5 (asking Potential Bidders to identify any minority shareholder rights, protections, or other desired terms in connection with any bid for less than 100% of the PDVH |

| Objecting Party | Objection | Special Master's Perspective |
|---|---|---|
| | | Shares); id. at ¶ 6 (permitting Special Master to designate as a stalking horse bid a bid for less than 100% of the PDVH Shares); Id. at ¶ 8 (permitting bids for less than 100% of the PDVH Shares); id. at ¶ 9 (requiring bidders to specify any minority shareholder rights in connection with their bid); id. at ¶ 14-15 (requiring the Special Master to select the highest bid that pays off the most of the Attached Judgments for the fewest PDVH Shares). Ultimately, these procedures are solely to provide clarity regarding the procedure for the Special Master to select which bid should be submitted to the Court for approval. The Venezuela Parties' rights to object at the Sale Hearing (or any hearing in connection with designation of a Stalking Horse Bidder), if they believe the Special Master did not accept a bid for fewer PDVH Shares that could have satisfied the same amount of the Attached Judgments, are fully preserved. |
| | 6. The Stalking Horse Bid should be the bid for the lowest percentage of shares that is sufficient to satisfy the Attached Judgment(s). | • As set forth more fully in the Special Master's reply at ¶ 13-15 [D.I. 341], the Special Master has not requested approval of a Stalking Horse Bid or any Stalking Horse Bid Protections at this time. All Sale Process Parties' rights are reserved with respect to any Stalking Horse Bid. |
| | 7. The Stalking Horse Bidder should not receive a break-up fee. | • As set forth more fully in the Special Master's reply at ¶ 13-15 [D.I. 341], the Special Master has not requested approval of a Stalking Horse Bid or any Stalking Horse Bid Protections at this time. All Sale Process Parties' rights are reserved with respect to any Stalking Horse Bid. |
| | 8. A credit bidder designated as the Stalking Horse Bidder should not receive a break-up fee. | • As set forth more fully in the Special Master's reply at ¶ 13-15 [D.I. 341], the Special Master has not requested approval of a Stalking Horse Bid or any Stalking Horse |

| Objecting Party | Objection | Special Master's Perspective |
|---|---|---|
| | | Bid Protections at this time.  All Sale Process Parties' rights are reserved with respect to any Stalking Horse Bid. |
| | 9. Any credit bid should be for, at a minimum, the full value of the bidder's judgment. | • The Special Master is not aware of any basis upon which to require the holder of an attached judgment to credit bid the entirety of its judgment. |
| | 10. The Special Master must select as the Successful Bid the bid for the lowest percentage of shares sufficient to satisfy the Attached Judgment(s), unless PDVSA selects a different sufficient bid. | • The Special Master has adopted this construct in the revised Proposed Sale Procedures Order.  *See* Bidding Procedures at ₧ 16 (providing that "the Special Master must designate such Qualified Bid that (i) satisfies the Attached Judgments and (ii) provides for the sale of the fewest PDVH Shares, **unless PDVSA consents** to the Special Master designating the Qualified Bid for more of the PDVH Shares.") |
| | 11. The Court should revisit its prior determination that bidders be required to submit a "substantial good faith deposit." | • Consistent with the Court's January Opinion, the Proposed Sale Procedure Order requires a good faith deposit, which has been reduced in the revised Proposed Sale Procedure Order to in no event be greater than $50 million. |
| | 12. The provisions enjoining the Venezuela Parties from conducting their own marketing and negotiations and limiting their access to information regarding bids and bidder should be stricken and CITGO should respond to bidder's due diligence requests. | • As set forth more fully in the Special Master's reply at ₧ 16-21 [D.I. 341], given the importance of maintaining clear and consistent messaging to Potential Bidders (and because the Venezuela Parties themselves have expressed an interest in maintaining the option to submit a bid after they have received copies of other bids), it is critically important that the Special Master, as an arm of the Court, control the forum and timing of any communications between the CITGO management team and Potential Bidders so that the Special Master can oversee the competitive bidding process. |

| Objecting Party | Objection | Special Master's Perspective |
|---|---|---|
| | | • It is for this reason that the Special Master proposed the limited restriction that the Sale Process Parties should seek the Special Master's consent before sending any communications to a Potential Bidder.  *See* Proposed Sale Procedures Order at 40-41; *see also* Bidding Procedures at ℙ 4 ("Each of the Sale Process Parties may recommend to the Special Master documents or additional information to be included in the Data Room"). |
| | 13. PDVH and CITGO, under the supervision of the Special Master, should prepare the "Teaser" and "Confidential Information Memorandum" with input and additions from the Special Master. | • The Court has determined that the Special Master and his advisors will conduct and implement the sale.  Of course, PDVH's and CITGO's input into the CIM and Teaser will be critically important and the Proposed Sale Procedure Order providers for an opportunity for all Sale Process Parties to provide input.  *See* Proposed Sale Procedures Order at ℙ 4 ("the Special Master shall share a draft of the "teaser" and CIM with counsel to the Sale Process Parties no later than seven (7) calendar days prior to launch of the Marketing Process and shall consult in good faith with the Sale Process Parties regarding the same.").  *See* Special Master's reply at ℙ 16-21 [D.I. 341] |
| | 14. The Venezuela Parties should receive copies of bids as they are submitted. | • The Bidding Procedures provide for robust consultation rights with the Venezuela Parties, including the provision of copies of bids, *provided* that such parties are not themselves a bidder and other customary limitations. *See* Bidding Procedures at ℙ 13. |
| | 15. The Special Master and his Advisors should consult with PDVSA regarding shareholder rights and protections that could facilitate a sale of a minority of shares. | • The Special Master will consult with PDVSA regarding shareholder rights and protections that could facilitate a sale of a minority of shares in preparation for the Marketing Process. |

| Objecting Party | Objection | Special Master's Perspective |
|---|---|---|
| | 16. The Venezuela Parties should work closely with the Special Master to evaluate bids and negotiate with bidders. | • The Bidding Procedures provide for robust consultation rights for the Sale Process Parties, |
| | 17. Implementing the Sale Procedures Order without a specific license from OFAC or change to the sanctions regime is unlawful and would chill bidding. | • The Special Master believes that a written statement, or otherwise publishable or disclosable information, from OFAC, reflecting authorization or its non-objection, with proceeding with the Marketing Process will be necessary before Potential Bidders will be willing to participate in the Marketing Process. For this reason, the Special Master has proposed to make this a requirement in the revised Proposed Sale Procedure Order for the sake of transparency. *See* Revised Proposed Sale Procedure Order at ⁋ 3. |
| | 18. Evercore's retention agreement and contingency fee should not be approved as (a) the fee arrangement creates a conflict of interest that has tainted the Special Master's proposal, (b) the Sale Fee would immediately give Evercore an interest in blocked property contingent upon a sale, which is prohibited by OFAC regulations, (c) the proposed fee is unreasonable and contrary to law, (d) the Sale Process Parties should not have to pay an "Upfront Fee" to Evercore, and (e) Evercore should not be entitled to reimbursement from the sale proceeds before the Sale Process Parties. | • The Special Master has set forth his full response in great detail on this point in his Report at ⁋⁋ 11-30. As noted above, ConocoPhillips' objection with respect to Evercore has been resolved and the issues have been significantly narrowed with respect to Crystallex's objection. <br><br>• In short, it is not credible for the Venezuela Parties to argue that retaining an investment banker that is compensated by a success fee for executing the Court's judgment after merits have been decided creates a conflict of interest in this case. <br><br>• The proposed compensation structure for Evercore is reflective of industry standards for investment bankers serving in similar advisory roles both in and out of court supervised contexts. In addition to being the industry standard, the open and transparent manner of the proposed Court-approved engagement of Evercore pursuant to the Proposed Evercore Engagement Letter that the Sale |

| Objecting Party | Objection | Special Master's Perspective |
|---|---|---|
| | | Process Parties have all had an opportunity to provide input on further disavows the notion of a conflict of interest.<br><br>• Crystallex and ConocoPhillips have each argued that Evercore should not receive any Sale Fee unless the Marketing Process is ultimately successful in generating bona fide Bids.  Tellingly, each Sale Process Party that desires a successful Sale Transaction to occur supports linking Evercore's compensation to the ultimate success of the Marketing Process.  This is in stark contrast to the position of the Venezuela Parties. |
| | 19. There is no need or basis to grant the Special Master the power to compel the assistance of the Venezuela Parties. | • In connection with carrying out his duties, the Special Master will likely need to request information or make other requests upon the Sale Process Parties or their representatives.   Establishing a process to compel compliance with such requests will streamline the process for making any such requests and will mitigate the likelihood that potentially uncooperative parties can jeopardize the process by withholding necessary information (or otherwise). |
| | 20. The proactive measures proposed to be taken by the Special Master with respect to the United States government regarding the OFAC decision-making process are inappropriate.  It also would not be necessary or proper for the Court to prompt governmental action by issuing an order to show cause to the government. | • As set forth more fully in the Special Master's reply at ¶ 8 [D.I. 341], the Special Master has not proposed to, nor has he ever, lobbied on behalf of any particular party in the Crystallex case. |
| | 21. The Proposed Sale Procedure Order permits the Special Master to share Highly Confidential Information with potential bidders and the | • As set forth more fully in the Special Master's reply at ¶ 19-21 [D.I. 341], permitting the Venezuela Parties to control the flow of information to Potential Bidders would |

| Objecting Party | Objection | Special Master's Perspective |
|---|---|---|
| | government should be revised to provide that the Special Master may do so only with the consent of the producing party. | be a back-door to the Venezuela Parties obtaining control over the Special Master's process.<br><br>• The protections in the Proposed Sale Procedures Order afforded to the Venezuela Parties with respect to confidential information are more than sufficient to protect their interests.<br><br>• The Proposed Sale Procedures Order provides that, before the Special Master discloses any confidential information to a Potential Bidder, he or his advisors must first give notice to the applicable Sale Process Party and then, only after notice has been provided, it can be shared only if the Potential Bidder has entered into a market standard confidentiality agreement, a copy of which is attached as Exhibit 4 to the Proposed Sale Procedures Order (the "**Confidentiality Agreement**").<br><br>• Further, all potential bidders that participate in this process must consent to the Court's jurisdiction (see Proposed Sale Procedures Order at ₱ 38) and each party must contractually agree that the Court will be able to enforce any breaches of the Confidentiality Agreement. *See* Confidentiality Agreement ₱ 10.<br><br>• Finally, the Proposed Sale Procedures Order provides that the Special Master will consult with PDVH and CITGO in connection with sharing competitively sensitive information and, if appropriate, will establish firewall protections or "clean team" protocols. *See* Proposed Sale Procedures Order ₱ 44. |
| | 22. The Special Master should be required to agree to an advance limit for his and his Advisors' | • The Revised Proposed Sale Procedures Order incorporates the Court's *Memorandum Order* dated September 8, 2021 |

| Objecting Party | Objection | Special Master's Perspective |
|---|---|---|
| | fees, which should be built into his proposed 13-week budgets, and he should have to seek prior approval from the paying parties and the Court to exceed the budget, and only based on unforeseeable, extraordinary events. | [D.I. 337] and the procedures to be adopted pursuant thereto. |
| | 23. Paragraph 42, which enjoins the Sale Process parties from communicating with one another for certain purposes, should be stricken. | • The Special Master has removed this restriction for the reasons set forth in the Special Master's reply at ¶ 18 [D.I. 341].  *See* also Proposed Sale Procedures Order at ¶ 42 ("For the avoidance of doubt, this provision is not intended to limit in any way the ability of some or all of the Sale Process Parties to discuss . . . the terms, content, or grounds of any potential objection to be filed with the Court."). |
| | 24. The proposed finding regarding Crystallex's outstanding judgment amount was made by the Special Master ex parte without allowing the Republic to review or contest the submissions upon which that recommendation was based. | • The Venezuela Parties' have received a copy of all the information that the Special Master has received regarding Crystallex's claim. |
| | 25. The Proposed Sale Procedure Order should provide that no shares can be sold to satisfy the judgment of any person who has not obtained a valid attachment. | • The Special Master has clarified the Proposed Sale Procedures Order in this respect.  The Revised Proposed Sale Procedures Order provides that "[e]xcept as otherwise ordered by the Court, following the Additional Judgment Deadline, the Special Master shall implement the Sale Procedures, based on the Attached Judgments as of the Additional Judgment Deadline.  For purposes of implementing this Order, the Special Master shall only consider judgments that are determined to be Attached Judgments by the Court by the Additional Judgment |

| Objecting Party | Objection | Special Master's Perspective |
|---|---|---|
| | | Deadline." *See* Revised Proposed Sale Procedure Order at ₱ 29. |
| | 26. The Sale Procedures Order and related documents should clarify that any party's right to appeal the final sale order itself and to seek invalidation of the sale should not be restricted by the transfer of shares "free and clear" of all claims. | • No provision in the proposed sale procedure order prohibits a Sale Process Party's ability to appeal a final sale order of the Court. |
| **Crystallex International Corporation** [D.I. 316] | 27. The Proposed Sales Procedures Order should set the date by which the Marketing Process will begin as no later than 90 days from entry of the order.<br><br>A. The Marketing Process should not be delayed until the receipt of OFAC guidance/approval.<br><br>B. There is no reason to limit the Court's power to conduct a process to enforce its judgment by conditioning the Launch Date on OFAC consent or an indication of permission. | • If we were to proceed with the Marketing Process based on OFAC's public guidance as of today, the Special Master does not believe that Potential Bidders will participate in the process for fear of violating such sanctions. *See* OFAC FAQ 809 (stating that a specific license from OFAC is required "prior to conducting an auction or other sale… or taking other concrete steps in furtherance of a sale" of shares of a Government of Venezuela entity (such as the PDVH Shares). Accordingly, the proposed Sale Procedures Order provides for launch of the Marketing Process to be delayed until the Special Master is satisfied that Potential Bidders will participate in the Marketing Process because of revised guidance or comfort gained from the Court's Order.<br><br>• The Special Master believes that a written statement, or otherwise publishable or disclosable information, from OFAC, reflecting authorization or its non-objection, with proceeding with the Marketing Process will be necessary before Potential Bidders will be willing to participate in the Marketing Process. For this reason, the Special Master has proposed to make this a requirement in the revised |

| Objecting Party | Objection | Special Master's Perspective |
|---|---|---|
| | | Proposed Sale Procedure Order for the sake of transparency. |
| | 28. The proposed Sales Procedures permit the Special Master to delay the sale process so that the Venezuela Parties, Crystallex (and others) can attempt to reach yet another settlement—despite the fact that Venezuela has failed to honor two prior settlement agreements. There is no reason to believe Venezuela will honor any settlement agreement and the proposal will perpetuate the delay. | • The recommended settlement process outlined in the Special Master's report at **Exhibit B** is entirely voluntary and would only be pursued with the consent of the parties (or the Court orders otherwise).<br><br>• The Special Master recommended the process based on his review of the facts, circumstances, and following numerous discussions with the Sale Process Parties and his assessment of the situation is that all interested stakeholders could benefit – and that substantial value could be unlocked – if the Sale Process Parties, in addition to the PDVSA 2020 Bondholders, were able to reach a voluntary negotiated outcome on a claims waterfall |
| | 29. The fee structure in the Proposed Evercore Engagement Letter fails to adequately tie Evercore's Sale Fee compensation to the creation of a robust auction and the closing of a sale.<br><br>A. Evercore's Sale Fee should only be due and payable if there is, in fact, a sale of the PDVH Shares, rather than upon the mere announcement of the winning bidder or execution of a sale agreement.<br><br>B. Any Sale Fee to be paid upon closing should be tied to the price actually obtained for the PDVH Shares. | • The Special Master understands that Crystallex's objection to Evercore's retention has been significantly narrowed upon the filing of the revised Proposed Evercore Engagement Letter attached as **Exhibit 3** to the Revised Proposed Sale Procedures Order. We are optimistic that their objection will be fully resolved prior to the hearing.<br><br>• If unresolved, for the reasons set forth above in response to the Venezuela Parties' objections, the Special Master respectfully submits that the compensation structure for Evercore is reflective of industry standards for investment bankers serving in similar advisory roles both in and out of court supervised contexts. |

| Objecting Party | Objection | Special Master's Perspective |
|---|---|---|
| | C. The crediting provisions for Evercore's Monthly Fee should not be limited for the first 9 months.<br><br>30. A successful credit bid by Crystallex does not warrant a success fee. | |
| | 31. The proposed Sale Procedures go beyond what is mandated of the Special Master in implementing a sale process. In accordance with Delaware law and Federal Rule of Civil Procedure 69(a)(1), the PDVH Shares can and should be sold at a single public auction<br><br>32. The Marketing Process should not have as a principal objective a value maximizing sale. Considerations such as maximizing the value obtained in the sale of the PDVH Shares are important, but they cannot supplant the statutory goal of satisfying Crystallex's judgment. | • The Special Master has designed the Proposed Sale Procedure Order to be fair and value-maximizing. The principal objective is to satisfy Crystallex's judgment and any other Attached Judgment(s).<br><br>• The Court has broad authority to enforce its judgment, particularly to provide for a fair and value maximizing process. The proposed two-phase Marketing Process is intended to solicit the best price for PDVH Shares on a per-share basis and subsequently market test any Stalking Horse Bid selected to ensure that any Sale Transaction will be value maximizing and generate sufficient proceeds to satisfy Attached Judgments.<br><br>• Due to the complex nature of CITGO's corporate and capital structure, the Special Master and his advisors believe that approximately 12 weeks will be necessary for Potential Bidders to conduct diligence to submit a Stalking Horse Bid. The overbid process thereafter is to ensure a final market check for the highest bid prior to a Successful Bid being selected. The Special Master and his advisors believe that conducting a sale on a more expedited would impair the Special Master's ability to obtain a value-maximizing bid. |

| Objecting Party | Objection | Special Master's Perspective |
|---|---|---|
| | 33. Required regulatory approval does not stop potential buyers from bidding into the risk that necessary approvals might not be obtained, nor does it stop potential sellers from accepting offers despite that risk. | • OFAC FAQ 809 states that a specific license from OFAC is required "prior to conducting an auction or other sale… **or taking other concrete steps in furtherance of a sale**" of shares of a Government of Venezuela entity (such as the PDVH Shares). For this reason, and irrespective of the legality of FAQ 809, the uncertainty and risks it poses for Potential Bidders is likely to chill bidding. |
| | 34. The Special Master should not have discretion to turn down bids received.  Under Delaware law, the primary goal of the sale is to satisfy Crystallex's judgment by auctioning so many of the attached PDVH Shares at a "public sale to the highest bid.  There is no provision in Delaware law for calling off an execution sale simply because the auctioneer does not approve of the bids received. Moreover, there is no equitable reason to even consider the notion here. | • The revised Proposed Sale Procedure Order at paragraph ¶ 13 may resolve Crystallex's concern in this regard by requiring the Special Master to file a report and explain the basis and rationale for not selecting a Bid.  If this objection is unresolved, the Special Master's perspective is set forth in ¶ 27 of his response to the objections [D.I. 341]<br><br>• If all goes as planned, the Special Master has every intention of selecting a Successful Bid in accordance with the proposed Bidding Procedures.  However, the Special Master does not believe that it is in the best interest of the Sale Process Parties for the Special Master to be compelled to recommend a Sale Transaction under all circumstances, including if such a Sale Transaction would not comply with applicable law.  *See Burge v. Fidelity Bond & Mortg. Co.*, 648 A.2d 414, 419 (Del. 1994) ("Delaware courts may, in their discretion, set aside a sale where inadequacy of price will result in unfairness or work an injustice on any party having an interest in the outcome of the sale. Fraud, mistake, accident, impropriety, misconduct, surprise or irregularity in the sale process will support judicial invalidation of the sale"). |

| Objecting Party | Objection | Special Master's Perspective |
|---|---|---|
| | 35. The Special Master should not consider non-cash consideration in selecting bids. Crystallex is entitled to a cash payment, and it cannot be forced to accept non-cash consideration simply because such consideration has been deemed by others to be more valuable than cash. | • Restrictions on what bids can or cannot be submitted may deter value-maximizing bids from being submitted. The Special Master does not believe it would be appropriate or value-maximizing to restrict bids in this manner at this stage in the process. |