IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Misc. No. 17-151-LPS |
| : | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, : | |
| : | |
| Defendant. : | |

## MEMORANDUM ORDER

At Wilmington this **27th** day of **July, 2022**, having reviewed the materials submitted by the Sale Process Parties[1] (*see* D.I. 455, 456, 457, 459) and the Special Master (*see* D.I. 458) relating to the remaining objections to the most recently filed version of the Proposed Sale Procedures Order ("PSPO") (D.I. 451-1 Ex. A), and incorporating by reference all of the Court's previous orders and opinions relating to the formulation of the PSPO (*see, e.g.*, D.I. 443),

**IT IS HEREBY ORDERED** that:

1. Crystallex's and ConocoPhillips' objections to the PSPO have been resolved. (*See* D.I. 458 ¶ 1) The Court has considered these parties' positions with respect to the issues addressed by the instant Order, as expressed in the most recent filings as well as earlier filings (*see, e.g.*, D.I. 316, 319, 339, 343, 406, 418, 421) and at the November 8, 2021 hearing (D.I. 409) ("Tr.").

---

[1] All capitalized terms have the same meaning given to them in the Court's March 2, 2022 opinion. (*See* D.I. 443)

2. The Venezuela Parties' objections that the entire process of formulating the PSPO has been deficient and tainted, including their allegations that the Special Master did not consider other options for how to sell the PDVH Shares and their request that the Special Master be ordered to begin again (*see, e.g.*, D.I. 457 at 1-3; T.O. 2-5, 15, 45),[2] are **OVERRULED**. As the Special Master points out, the Venezuela Parties' factual allegations are untrue. (*See* D.I. 341 ¶ 24; *see also* Tr. at 160-61) Also, the Court has already rejected these contentions. (*See, e.g.*, D.I. 443 at 11) Furthermore, as Crystallex puts it, "the Venezuela Parties can point to nothing in Delaware law that requires the Special Master or this Court to jump through hoops created by the judgment debtor;" instead, all Delaware law requires is a "noticed auction of the PDVH shares." (D.I. 459 at 2-3) The PSPO already provides the Venezuela Parties far more than what they are entitled to under Delaware law.

3. The Venezuela Parties' objections that the PSPO is designed to, and will inevitably result in, the sale of 100% of the PDVH Shares (*see* D.I. 457 at 1; T.O. 5), are **OVERRULED**. As the Special Master correctly observes, the sale process has been designed to maximize the value of the PDVH Shares while generating the proceeds to pay the attached judgments. (*See* D.I. 458 ¶ 5) Moreover, the PSPO has a clear "guard post" to ensure that the Special Master cannot "sell more shares than are necessary to satisfy" the attached judgments. (D.I. 458 ¶ 3; *see also* D.I. 459 at 4 (Crystallex agreeing with this limitation)) Additionally, the PSPO provides that all Sale Process Parties will have an opportunity to present objections to the Court from whatever results are generated by the process, including objections to any

---

[2] References to objections listed in D.I. 458-1 are by the number assigned to them in that table (e.g., "Table Objection 1" or "T.O. 1").

recommendation the Special Master makes (e.g., which bid is best and whether that bid should be accepted or rejected). (*See, e.g.*, D.I. 451-1 Ex. A ¶¶ 16-18)

The Court recognizes that one possible outcome of the sale process is that the only bid or bids received are for 100% of the PDVH Shares. Perhaps this will be the result compelled by market and other realities. Time will tell. Regardless, the Court is confident that the design and implementation of the PSPO do not themselves unavoidably foreordain such a conclusion.

Additionally, and importantly, as has been repeatedly noted, the Venezuela Parties are free to cause the Court to terminate the sale process by paying Crystallex the judgment Crystallex has long been owed.[3]

4. The Venezuela Parties make numerous other objections. The Court agrees with the Special Master that they are all directed to the Court's discretion. (*See* D.I. 458 ¶¶ 4-5) ("Despite the quantity of [the] Venezuela Parties' renewed objections, ultimately, they are *all*, in substance, challenges to the Court's discretionary powers.") Unless otherwise expressly noted below, the Court exercises its discretion to **OVERRULE** all of the Venezuela Parties' remaining objections.

5. Specifically, the Court **OVERRULES**:

(a) the Venezuela Parties' objections to the stalking horse bidder process. (*See* D.I. 457 at 4; T.O. 6-8) The Special Master has provided good reasons for why this option should be included as part of the PSPO. (*See, e.g.*, D.I. 303 at 48-51) The Special Master may or may not find it necessary to make use of the stalking-horse provisions. (*See, e.g.*, D.I. 341 ¶¶ 13-15; Tr. at 175) Further, as noted, and as expressly provided in the PSPO, the Venezuela Parties will

---

[3] Unless and until this occurs, the Court has no occasion to determine where such an action by the Venezuela Parties would leave other Sale Process Parties or other judgment creditors.

have the right to object to the final result of the sale process (*see* D.I. 451-1 Ex. A ¶¶ 16-18) and may also object to the stalking horse bidder process, if it is employed (*see id.* ¶¶ 22-23).

(b)     the Venezuela Parties' objection that requiring payment of a good faith deposit might discourage bidding. (*See* D.I. 457 at 5) As the Court has previously stated, such a deposit is an important measure for ensuring that bidders are committed to moving forward with the transaction. (*See* D.I. 234 at 36)

(c)     the Venezuela Parties' objection that credit bidders are not required to make a greater deposit. (*See* D.I. 457 at 5; T.O. 11) If a credit bidder (such as Crystallex) walks away from the transaction, forfeiture of 10% of the credit bid is an appropriately calibrated penalty. (*See, e.g.*, D.I. 459 at 6)

(d)     the Venezuela Parties' objections "to provisions that limit their access to and participation in a sale process." (*See, e.g.*, D.I. 457 at 6; T.O. 12-14, 16) The PSPO affords the Venezuela Parties robust consultation rights throughout the sale process. (*See, e.g.*, D.I. 451-1 Ex. A ¶ 13) However, as the Court explained in a prior opinion (*see* D.I. 234 at 36), the Venezuela Parties will have a seat at the table, but they will not (for good reason) be driving the sale process.

(e)     the Venezuela Parties' objection to the Special Master's ability to compel their assistance or to alter sale procedures after the Sale Procedures Order is signed. (*See* D.I. 457 at 6; T.O. 19, 46) The Special Master, exercising this Court's authority, requires and retains the ability to compel the Venezuela Parties' assistance, which experience has proven is necessary to moving these recalcitrant judgment-debtors toward paying their debts. After many years of litigation, and in light of the unprecedented nature of this sale process, the Court has found it necessary to delegate to the Special Master some of the Court's day-to-day discretion and ability

to react to events and manage this complex process. The Court has concluded that the process requires investing the Special Master with the flexibility set out in the PSPO, subject to review by the Court. The Court will continue, as it has done throughout, to carefully review the Special Master's work. Of course, all actions taken by the Special Master must comply with the PSPO, be within the powers the Court is authorized to exercise (*see, e.g.*, D.I. 277 ¶ 20), and are subject to review by the Court pursuant to the objection procedures set forth in the PSPO (*see, e.g.*, D.I. 451-1 Ex. A ¶ 33).

(f) the Venezuela Parties' objections to the Special Master's ability to communicate with contract counterparties and to renegotiate contracts – provided that the Special Master exercises these powers only to the extent they are delegated by the PSPO and are actually powers possessed by the Court. (*See, e.g.*, D.I. 457 at 6-7; T.O. 38) As already noted, all actions taken by the Special Master must comply with the PSPO, be within the powers the Court is authorized to exercise, and are subject to review by the Court pursuant to the objection procedures set forth in the PSPO.

(g) the Venezuela Parties' objection to the language in the PSPO regarding OFAC. (D.I. 457 at 8) The language proposed by the Special Master is clear, appropriate, and consistent with the Court's ruling in the March 2, 2022 Opinion (*see* D.I. 443 at 17; *see also* D.I. 451-1 Ex. A ¶ 3).[4]

(h) the Venezuela Parties' objection (*see* D.I. 457 at 8) that, because Crystallex has announced its intention to credit bid, Crystallex should not receive information regarding the

---

[4] Due to the passage of time, the Special Master will have to modify the PSPO's references to November 30, 2022 (*see, e.g.*, D.I. 451-1 Ex. A ¶ 3), so that the Six-Month Window Trigger may last, potentially, as long as six months.

Special Master's market inquiries with potential bidders prior to launch (in accordance with D.I. 451-1 Ex. A ¶ 4). The Court agrees with Crystallex that it is only fair for Crystallex, as a litigant, to have access to the information the PSPO contemplates will be provided to it, subject to limitations also imposed by the PSPO. (*See* D.I. 459 at 7-8) Such access ensures that all parties' positions are fully informed, which enables this Court to fulfill its role as neutral decisionmaker. (*See id.*)

(i) the Venezuela Parties' objection to the Court potentially taking action to prompt a response from the United States. (*See* D.I. 457 at 3 n.8; T.O. 20) The Court has directed that the PSPO create the Six-Month Window Trigger, during which (among other things) the Special Master is to attempt to obtain further guidance from OFAC which he might then share with the market. (*See* D.I. 443 at 42-44) As previously explained (*see, e.g., id.* at 41-42), the Court feels this is appropriate and potentially necessary to maximize the likelihood that the bidding process is successful.

6. The following objections and requests are **SUSTAINED** to the extent discussed below:

(a) the Venezuela Parties' objection to the good faith deposit being based on the implied equity value of PDVH. (*See* D.I. 457 at 4; T.O. 5) Crystallex appears to share the Venezuela Parties' view that it is sensible for the deposit to be based on the amount of a cash bid, not the implied equity value of the bid. (*See* D.I. 459 at 5 & n.5) The Court further directs the Special Master to include a provision in the final Sale Procedures Order to permit bidders for a minority stake in PDVH to seek to avoid having to put down a larger deposit than bidders for 100% of the shares (e.g., a provision whereby the Special Master can petition the Court to reduce

the deposit requirement for any particular bidder or type of bid, even in the absence of agreement from all Sale Process Parties). (*See* D.I. 457 at 5; T.O. 37)[5]

(b)   the Venezuela Parties' request that any judgment creditors who are added to the sale process be made to pay their fair share of the expenses. (*See* D.I. 457 at 7; T.O. 41)  The Court agrees that the Special Master's fees should be split among all such parties.

(c)   the Venezuela Parties' request that PDVH and CITGO be permitted to communicate with potential bidders. (*See, e.g.*, D.I. 457 at 8)  Crystallex is "amenable to such communications," subject to certain limitations. (D.I. 459 at 8)  The Court directs the Special Master to work with the Sale Process Parties to include language in the forthcoming version of the Order to accomplish this goal.

(d)   the Venezuela Parties' objection (*see* D.I. 457 at 7; T.O. 43) to the timing of the requirement that other creditors holding judgments against the Republic submit proposed judgment amounts and supporting documentation to the Special Master (i.e., within 21 days after entry of the Sale Procedures Order) (*see* D.I. 451-1 Ex. A ¶ 30).[6]  On this dispute, the Court adopts the "Special Master's Perspective," as set out in the table:

> The procedures require the Special Master to file a recommendation regarding the final amount of all Attached Judgments 30 days prior to the deadline to designate a Stalking Horse Bidder.  The Special Master should be provided with sufficient time to review any such documentation.  However, the Special Master is supportive of delaying such deadline until 21 days after the Preparation Launch Date.

---

[5] The PSPO provides that potential bidders' good faith deposit must be the lesser of 10% of the Implied Value of the Bid or $50 million, "unless otherwise agreed to by the Special Master, in consultation with the Sale Process Parties, and a Potential Bidder." (D.I. 451-1 Ex. 1 at 12)

[6] To be clear, the Court **OVERRULES** this objection to the extent that the Venezuela Parties are arguing that other judgment creditors should never, at any point in the sale process, be allowed to submit proposed judgment amounts.

(D.I. 458-1 at 17) Accordingly, the Court directs the Special Master to revise the PSPO so as to delay the deadline for other judgment creditors to submit proposed judgment amounts until no later than 21 days after the Preparation Launch Date (rather than 21 days after the entry of the Sale Procedures Order).

**IT IS FURTHER ORDERED** that the Court authorizes the Special Master to execute the original Proposed Evercore Engagement Letter. (D.I. 411-1 Ex. 3)

The Venezuela Parties objected to the original Proposed Evercore Engagement Letter because Evercore's compensation was tied to the successful sale of PDVH Shares, which allegedly resulted in a conflict of interest. (*See* D.I. 443 at 2-3) (noting argument that "Evercore will, for [its] own personal gain, encourage" Special Master "to recommend to the Court a process that ensures the sale of 100% of the PDVH Shares") Thereafter, the Court ordered the Special Master to negotiate with Evercore to develop an alternative engagement agreement, whereby Evercore's compensation would not be contingent on the sale of the PDVH Shares. (*See* D.I. 443 at 11) As directed, the Special Master negotiated with Evercore, which agreed to a fixed-fee-type compensation structure (*see* D.I. 451 at 2-3), as embodied in the Revised Proposed Evercore Engagement Letter (*see* D.I. 451-1 Ex. 3.B).

The Revised Proposed Evercore Engagement Letter has given rise to a host of new objections. (*See* D.I. 455, 456, 457, 459) For example, *all* Sale Process Parties object to its "Milestone Fee." (*See* D.I. 455 at 2 (ConocoPhillips); D.I. 456 at 4-6 (Crystallex); D.I. 457 at 9 (Venezuela Parties)) Under the revised agreement, Evercore would receive a $1.5 million Milestone Fee upon the Special Master's receipt of a bona fide indication of interest from a third party financially capable of consummating the sale transaction. (*See* D.I. 451-1 Ex. 3.B at 3)

Crystallex objects because Evercore would be paid regardless of whether the third party participated in the auction or whether the third party's bid was competitive with a Crystallex credit bid. (*See* D.I. 456 at 5) ConocoPhillips objects for similar reasons, emphasizing that Evercore would be paid the Milestone Fee even if the non-binding indication of interest is for a bid that will not be sufficient to reach ConocoPhillips' judgment. (*See* D.I. 455 at 2) The Venezuela Parties also object because they believe Evercore does not have to do enough work to earn the Milestone Fee. (*See* D.I. 457 at 9)

The parties have other objections to the Revised Proposed Evercore Engagement Letter. (*See, e.g.*, D.I. 456 at 6 (Crystallex objecting to Completion Fee); D.I. 455 at 2 (same objection from ConocoPhillips); D.I. 457 at 9-10 (Venezuela Parties also objecting to Completion Fee)) Detailed discussion of each of these objections is not necessary because the Court is persuaded that the best course of action is to proceed with the original Proposed Evercore Engagement Letter. Crystallex and ConocoPhillips both prefer the original engagement agreement to the revised one. (*See* D.I. 458 ¶ 1) The Special Master and Evercore are still willing to move forward with the original proposal. (*See* D.I. 451 at 2-3) While the Venezuela Parties maintain their objections to the original engagement agreement (*see, e.g.*, D.I. 457 at 8-10; T.O. 18(c)-(d), (f), 27, 40, 42), they also object to the revised agreement, and the Court has resolved (or is herein resolving) all of their objections to the original agreement.[7] Thus, on reflection, the Court has

---

[7] The Court **OVERRULES**:

    (a)    the Venezuela Parties' objections to Evercore's compensation structure in the original Proposed Evercore Engagement Letter. (*See* D.I. 457 at 8-9; T.O. 18(c)-(d), (f), 42) The compensation structure proposed is in line with industry standards for investment banks advising in similar transactions and is reasonable and appropriate. (*See, e.g.*, D.I. 458-1 at 10; D.I. 303 ¶ 19)

9

determined that it is more sensible to proceed with the original engagement agreement, which (among its other virtues) is more in line with industry standards. (*See, e.g.*, D.I. 458-1 at 10)

**IT IS FURTHER ORDERED** that the Sale Process Parties and the Special Master shall meet and confer and, no later than **August 5, 2022**, submit a joint status report, advising the Court of their position(s) as to the next steps the Court should take. The Special Master shall attach to the status report a version of the PSPO, consistent with the decisions announced in the instant Order, that the Court may sign and docket; alternatively, the Special Master may propose a date later than August 5 for making this additional submission.[8]

---

(b)     the Venezuela Parties' objection that Evercore should not enjoy judicial immunity. (*See* D.I. 457 at 9; T.O. 27) The Court has already determined that the Special Master, as well as his counsel and advisors, are entitled to judicial immunity. (*See* D.I. 277 ¶ 21) ("The Special Master's Counsel and Advisors are entitled to judicial immunity in performing services at the direction of the Special Master within the scope of this Order or a Court-appointed engagement.") In addition, the Court agrees with the Special Master that judicial immunity, in the unique circumstances presented by this litigation, ensures that the Special Master can retain qualified experts. (*See* D.I. 458-1 at 14)

(c)     the Venezuela Parties' objection that they should not be financially responsible for any fees for Evercore or the Special Master arising from settlement negotiations generally or in connection with the 2020 bonds. (*See* D.I. 457 at 9; T.O. 40) As explained by the Special Master, these fees will only be incurred with the consent of the Sale Process Parties, which includes the Venezuela Parties, or pursuant to a separate order from the Court. (*See* D.I. 458-1 at 16)

[8] The Court further directs the Special Master to ensure that in the final version of the Sale Procedures Order, which will be presented to the Court for signing and docketing, language is included making abundantly clear that the Sale Process Parties will have the opportunity to object to the Special Master's recommendation as to which bid is best and whether the Court should accept or reject such bid. The Special Master shall further ensure that the Sale Procedures Order clearly and unambiguously states that it is the Court which will make the final decision as to whether to accept or reject any bid and that nothing in the order is intended affect any appellate rights of any party. (*See generally* Tr. at 211)

Along with his submission of the final version of the Sale Procedures Order, the Special Master shall point out where revisions were made in accordance with the rulings announced in the instant Order.

July 27, 2022
Wilmington, Delaware

_____
HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT COURT