IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | C.A. No. 17-151-LPS |

**CRYSTALLEX INTERNATIONAL CORPORATION'S OPPOSITION TO
RED TREE'S MOTION TO INTERVENE AND
TO MODIFY THE SALE PROCEDURES ORDER**

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Miguel A. Estrada
Lucas C. Townsend
Adam M. Smith
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Tel: (202) 955-8500
Fax: (202) 467-0539

Dated: November 18, 2022

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Tel:  (302) 651-7700
Fax:  (302) 651-7701

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 3

SUMMARY OF ARGUMENT .............................................................................. 9

ARGUMENT .................................................................................................... 10

    I.     The Court Should Deny Mandatory And Permissive Intervention ..................... 10

    II.    Red Tree Should Not Be Permitted To Participate As A Sale Process Party Unless It Agrees To Pay An Equal Share Of The Special Master's Fees And Costs ..................................................................................................... 15

CONCLUSION ................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amgen Inc. v. Amneal Pharms. LLC,*
2020 WL 6060441 (D. Del. Oct. 14, 2020) ..............................................................11

*Anthony v. Indep. Ins. Advisors, Inc.,*
56 V.I. 516 (2012) ..........................................................................................10

*Harris v. Pernsley,*
820 F.2d 592 (3d Cir. 1987) ...............................................................................10

*Liberty Mut. Ins. Co. v. Pac. Indem. Co.,*
76 F.R.D. 656 (W.D. Pa. 1977) ...........................................................................14

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela,*
2022 WL 611563 (D. Del. Mar. 2, 2022) ................................................................3

*Red Tree Invs., LLC v. Petroleos de Venezuela, S.A.,*
2022 WL 1265516 (D. Del. Apr. 28, 2022)..........................................3, 5, 6, 7, 11

*Stringfellow v. Concerned Neighbors in Action,*
480 U.S. 370 (1987) .........................................................................................15

*United States v. Alcan Aluminum, Inc.,*
25 F.3d 1174 (3d Cir. 1994).................................................................................11

*United States v. Territory of Virgin Islands,*
748 F.3d 514 (3d Cir. 2014)................................................................................14

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.,*
701 F.3d 938 (3d Cir. 2012)..................................................................................8

**Rules**

Fed. R. Civ. P. 24 .............................................................................................14

Fed. R. Civ. P. 53 .............................................................................................17

# INTRODUCTION

On October 7, 2022, this Court entered a Sale Procedures Order to govern the process of selling Venezuela's common stock shares of PDV Holding, Inc. ("PDVH") in satisfaction of the outstanding balance of approximately $1 billion on Venezuela's debt and judgment to Crystallex, which the Republic still refuses to pay.  That order followed more than five years of proceedings before this Court, including eighteen months of proceedings before the Court-appointed Special Master specifically dedicated to designing the sale process.  Non-parties Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V. ("ConocoPhillips") have participated in that process as "Sale Process Parties," D.I. 481 ¶¶ 3-4, based on ConocoPhillips' agreement to pay a one-third share of the Special Master's fees and reimbursable expenses, equal to the share borne by Crystallex and the Venezuela Parties.  By contrast, other creditors—including Red Tree, which holds a $260 million judgment against Venezuela's alter ego, Petróleos de Venezuela ("PDVSA")—have sat on the sidelines.

Red Tree has been aware of Crystallex's judgment and this action's steady progress toward a foreclosure sale of PDVH shares for years, but it has not intervened—not when it became aware of this action, not when it obtained its own final judgment, and not even when this Court conditionally authorized an eventual writ of attachment on its behalf.  Only now, after this Court has approved the *seventh* proposed version of the Sale Procedures Order following eighteen months of careful negotiation, does Red Tree seek "a seat at the table."  D.I. 484, at 1.  But Red Tree has had every opportunity to intervene throughout the process of negotiating (and litigating) the Sale Procedures Order, and its request to intervene now is untimely.  As provided in the Sale Procedures Order, Red Tree may eventually seek to have its *judgment* considered by the Special Master as part of the sale process, D.I. 481 ¶ 30.  But its opportunity to participate as a Sale Process

Party on equal footing with Crystallex has passed.  This Court should therefore deny Red Tree's motion to intervene.

In a telling indication of the weakness of its interest in participating, Red Tree also seeks to participate without paying its equal share, instead offering to cover only a *pro rata* (based on the size of each party's judgment) portion of the Special Master's fees, and only "going forward." D.I. 484, at 5.  Even if this Court were inclined to permit Red Tree to participate in this case on a limited basis as a Sale Process Party, it should condition Red Tree's participation on paying an equal share of *all* the Special Master's fees incurred to date since his appointment.  The Sale Procedures Order imposes that same condition on parties that seek to have their *judgments* considered by the Special Master.  D.I. 481 ¶ 47.  Red Tree does not even attempt to explain why it should be able to avoid that condition when it is seeking an even *greater* role in the sale process than to merely have its judgment considered.  Indeed, had Red Tree timely requested to become a Sale Process Party when it first became aware that this suit implicated its interests, Red Tree would certainly have been forced to pay over that entire time period.  *See* D.I. 275, at 5-6 (requiring as a condition for participation as a Sale Process Party that Intervenor Bondholders pay "the same portion of the Special Master's fees" as others who participated).  This Court should not permit Red Tree to free-ride on the Sale Process Parties' hard work and substantial contributions to date— creating a dangerous precedent for other creditors to do the same.

Accordingly, Red Tree's motion to intervene should be denied.  But if this Court is inclined to permit Red Tree to participate on a limited basis as a Sale Process Party, the Court should condition Red Tree's participation on its agreement to pay an equal share of *all* the Special Master's fees incurred to date and going forward.

## NATURE AND STAGE OF THE PROCEEDINGS

This is a proceeding for a singular purpose:  to secure payment on a fully adjudicated judgment on which Venezuela continues to owe Crystallex approximately $1 billion but still obstinately refuses to pay.  In pursuit of that objective, Crystallex has spent many years and substantial resources to obtain an unconditional writ of attachment against Venezuela's shares of PDVH.  Other creditors of Venezuela and its alter ego PDVSA—including Red Tree and ConocoPhillips—have sought to ride Crystallex's coattails to obtain similar writs against the PDVH shares.  But thus far those creditors have succeeded only in obtaining conditional orders "authorizing the *eventual* issuance of a writ of attachment" in the future, "contingent on grant of [a] license" from the Office of Foreign Assets Control ("OFAC").  *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 2022 WL 611563, at *11 (D. Del. Mar. 2, 2022) (emphasis added) (ConocoPhillips); *see also Red Tree Invs., LLC v. Petroleos de Venezuela, S.A.*, 2022 WL 1265516, at *1 (D. Del. Apr. 28, 2022).  Crystallex thus remains the only party with a present, unconditional writ of attachment—and associated lien—against the PDVH shares.  As this Court has recognized, "the sale" of PDVH shares "for which the Court is preparing involves—at least at present—*only* the satisfaction of the Republic's debt to Crystallex."  D.I. 275, at 4 (emphasis added).

This Court has overseen a process to structure that share sale since May 2020, when the Supreme Court denied Venezuela's certiorari petition seeking further review of Crystallex's writ of attachment, D.I. 167, and this Court lifted its stay of enforcement proceedings, D.I. 174.  Over the past two and a half years, the Court has offered interested parties, intervenors, and non-parties numerous opportunities to assert their views about the contours of a future sale, but Red Tree— despite its full knowledge of the activities on this docket—has sat idly on the sidelines.

1.      The Court has called for input on the sale process on at least six separate occasions since lifting the stay.  *See* D.I. 174, 235, 264, 299, 383, 443.

In the May 22, 2020 order lifting the stay, for example, the Court—in broadly worded language—directed "[t]he parties/intervenors" to file briefs addressing "(a) the mechanics by which the sale of PDVH is to occur, (b) any Rule 60(b) motion or motion to quash or for reconsideration, and (c) *any other issue* that any party reasonably foresees may interfere with the Court expeditiously proceeding to enforce its prior orders."  D.I. 174 ¶ 3 (emphasis added).

Then, on January 14, 2021, the Court denied the Venezuela Parties' motions seeking relief from Crystallex's writ of attachment, and determined that a special master would be appointed to assist the Court in establishing and implementing procedures for a judicial sale.  D.I. 234, at 34-35.  In the accompanying order, the Court again directed the "parties" and "non-parties" to submit their "proposal(s) for how the Court should proceed with respect to determining the specific details of the sales procedures."  D.I. 235 ¶ 5.

On April 13, 2021, after considering the parties' proposals, the Court appointed Robert Pincus as Special Master, and "directed the parties to work with" him to determine, among other issues: (1) how he would "be paid for his time and reimbursed for reasonable expenses"; and (2) "any other details required to effectuate the appointment."  D.I. 258, at 2-3.  The Special Master submitted a proposed order governing his appointment on May 9, 2021, D.I. 260, and following briefing on objections to that proposed order, the Court entered a modified version of that order on May 27, 2021, D.I. 277.

Over the past eighteen months since that order, the Special Master has submitted six successive proposed Sale Procedures Orders to this Court for consideration, *see* D.I. 302, 341-1, 411-1, 451-1, 472-1, 480-1, and the Court has provided multiple calls for objections to those

orders, beginning with objections to the Special Master's initial proposal in August 2021, D.I. 299. On March 2, 2022, after this Court resolved the Venezuela Parties' "'fundamental'" objections, the Court directed the parties and the Special Master to "attempt to resolve *any remaining* ripe objections to the Proposed Order," and called for briefing on any objections that could not be resolved informally.  D.I. 443, at 2 & n.3, 47 (emphasis added).  The Court then entered a schedule for handling any "remain[ing] unresolved" objections, D.I. 447, at 2, and resolved those "remaining objections" on July 27, 2022, D.I. 469, at 1.  The Court thus directed the Special Master to submit the *seventh* ("Sixth Revised") Proposed Sale Procedures Order, *id.* at 10-11, which the Court approved on October 7, 2022, D.I. 481.

2.      Despite these numerous opportunities to participate, aside from Crystallex, only one of Venezuela's many creditors—ConocoPhillips, which holds an approximately $2 billion judgment against Venezuela, D.I. 180, at 3—has participated materially in the process of structuring the sale.  Because ConocoPhillips has never moved to intervene and has no present writ of attachment against the PDVH shares, however, it has been permitted to participate in that process only on the condition that it contribute an equal share of the Special Master's costs, subject to the expectation of potential recovery only after Crystallex's judgment is paid in full and ConocoPhillips' rights are perfected.  D.I. 263, at 1-2; D.I. 266, at 2.  The order governing the appointment of the Special Master thus requires Crystallex, the Venezuela Parties, and ConocoPhillips to each pay an equal, one-third share of the Special Master's fees and reimbursable costs.  D.I. 277 ¶ 14.  And the Sale Procedures Order adopted by the Court in October 2022 in turn provides that only those three parties are "Sale Process Parties," which are entitled to certain consultation rights over the sale process not available to other judgment creditors of Venezuela and PDVSA.  *See* D.I. 481 ¶¶ 3-4, 10, 13, 19, 41.  The Order also provides a mechanism for

"additional judgments" to be considered by the Special Master for purposes of the sale, *id.* ¶ 30—but only if the creditor holding such a judgment both "share[s]" the Special Master's fees and costs with the Sale Process Parties going forward and "reimburse[s] its share" of the fees and costs already incurred by the Special Master "as if [the] Additional Judgment Creditor were a Sale Process Party," *id.* ¶ 47.

By contrast, the Court has denied full participation as a Sale Process Party to other Venezuela creditors that have refused to share equally in the Special Master's fees and costs—in particular, the Intervenor Bondholders, who hold $1.5 billion in face value of bonds issued by PDVSA that matured in 2020. D.I. 105, at 3. Unlike ConocoPhillips, which has never formally intervened, the Intervenor Bondholders were actually granted intervenor status at an earlier stage of these proceedings for the purpose of challenging the issuance of Crystallex's writ of attachment. D.I. 154, at 11. Yet despite that status, this Court denied the Intervenor Bondholders' request in May 2021 to participate before the Special Master on equal footing with Crystallex, ConocoPhillips, and the Venezuela Parties without paying an equal share of the Special Master's fees and costs. *See* D.I. 261, at 1-2 (requesting the same "right to participate in the meet-and-confer process leading to any Sales Procedure Order and the right to file objections before this Court" as those parties).

In its May 25, 2021 order establishing the terms of the Special Master's appointment, therefore, the Court explained that if the Intervenor Bondholders wished to be a "'full participant'" in the proceedings, they would be required to "bea[r] a proportionate share of the expenses incurred by the Special Master." D.I. 275, at 5. To hold otherwise, the Court reasoned, would permit the Intervenor Bondholders to seek out "opportunities to increase expenses for the other parties without sharing in those costs themselves." *Id.* at 4. The Court underscored that "neither

ConocoPhillips nor the Intervenor Bondholders have an interest in the PDVH shares to be sold that is nearly as strong as Crystallex's." *Id.* at 4-5. Given the Intervenor Bondholders' weaker interests and untoward incentives to delay a sale that could satisfy Crystallex's judgment, basic fairness thus required that they "pay a proportionate share of the fees incurred by the Special Master." *Id.* at 5. Rather than do so, the Intervenor Bondholders chose to "withdraw from further discussions with the Special Master." D.I. 276, at 1; *see also* D.I. 479.

3.      Unlike ConocoPhillips and the Intervenor Bondholders, Red Tree never even attempted to participate in the process of structuring a sale—despite numerous opportunities— until *after* this Court considered all objections to the Sale Procedures Order and entered the *seventh* proposed version of that order last month.

For "almost four years," D.I. 484, at 1, Red Tree has also been litigating for recovery on approximately $260 million of debts owed to it by PDVSA. Red Tree first filed suit in New York state court in February 2019 to recover those debts, and its suit was removed to federal court in the Southern District of New York. *Red Tree Invs., LLC*, 2022 WL 1265516, at *1. That court entered final judgment in Red Tree's favor on January 6, 2022, and a little over a month later, on February 8, 2022, Red Tree registered its judgments in this Court. *Id.* The Court granted Red Tree a conditional writ of attachment on April 28, 2022. *Id.*

Red Tree has indisputably been aware of this case and its potential effects on Red Tree's rights for years. In a motion to lift a litigation stay filed in its S.D.N.Y. action in August 2019, for example, Red Tree noted that the Third Circuit had upheld this Court's decision issuing Crystallex's writ, and predicted that "Crystallex will presumably now seek to enforce its attachment order by moving as expeditiously as possible towards a foreclosure sale of the PDVH shares." Red Tree's Mot. to Lift Stay at 3-4, *Red Tree Invs., LLC v. Petroleos de Venezuela, S.A.*,

No. 1:19-cv-2519 (S.D.N.Y. Aug. 5, 2019), Dkt. 37.  Months later, Red Tree again argued that "the continued progress of Crystallex International Corporation in proceeding towards attachment of the assets of PDVSA continues to threaten Red Tree's ability to recover on any judgment in this case."  Red Tree's Opp. to Defs.' Mot. for Additional Stay at 15, *Red Tree Invs., LLC*, No. 1:19-cv-2519 (S.D.N.Y. Oct. 10, 2019), Dkt. 52.  And in its first filings to this Court, Red Tree evinced its awareness that this Court was "moving towards a judicial sale of PDVSA's PDVH shares . . . to satisfy a $1.2 billion judgment held by Crystallex," and that "[a] sale procedures order is currently under consideration by this Court."  Red Tree's Opening Br. for Writ of Attachment at 4, *Red Tree Invs., LLC v. Petroleos de Venezuela, S.A.*, No. 1:22-mc-68 (D. Del. Feb. 8, 2022), Dkt. 3.

Despite its awareness of this proceeding and its asserted impact, however, Red Tree never previously sought to intervene in this action, nor objected to the terms of the order governing the Special Master's appointment or the Sale Procedures Order that gives ConocoPhillips greater input than other unsecured creditors of Venezuela and PDVSA in exchange for ConocoPhillips bearing an equal share of the Special Master's fees and costs.  Even when counsel for other creditors—including ACL1 Investments, ACL2 Investments, LDO (Cayman) XVIII Ltd., Huntington-Ingalls, and OI European Group B.V.—spoke at this Court's November 8, 2021 hearing to briefly address sale procedure issues, Red Tree's counsel did not even appear at the hearing.  Neither has Red Tree contributed a penny to the more than $3.5 million in Special Master fees that have been paid to date by Crystallex, ConocoPhillips, and the Venezuela Parties in equal part (approximately $1.2 million each).  D.I. 292-1, 353-1, 377-1, 410-1, 424-1, 435-1, 448-1, 464-1, 475-1.  Instead, Red Tree has offered only to pay a fraction of these fees and costs on a prospective, *pro rata* basis.  D.I. 484, at 5.

## SUMMARY OF ARGUMENT

1. Red Tree's motion to intervene should be denied as untimely. As Red Tree admits, an intervention motion's timeliness is measured from the time when the intervenor knew, or should have known, of the risk to its rights. D.I. 484, at 6 (citing *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 950 (3d Cir. 2012)). But that principle is fatal to Red Tree's motion. Red Tree has been litigating against Venezuela for years, and as early as August 2019, it was well aware that this Court would be moving toward a sale of PDVH shares. Even if timeliness is measured from the date Red Tree obtained a final judgment in January 2022, Red Tree still waited ten months—until November—to seek to intervene. And permitting Red Tree to intervene now, after months of delay, would only complicate the sale process and create further delay that would actively prejudice Crystallex.

2. Even if this Court were inclined to permit Red Tree to participate on a limited basis as a Sale Process Party, Red Tree should not be allowed to gain the same rights as the other Sale Process Parties while paying only a small fraction of the Special Master's fees and costs—and then only on a prospective, *pro rata* basis, based on the size of its judgment rather than an equal share. The Sale Process Parties' share of the Special Master's fees and costs have never been tied to the size of their respective judgments. The Venezuela Parties owe themselves nothing, and owe ConocoPhillips more than they owe Crystallex, yet the burden of the Special Master's fees and costs have always been shared equally. Red Tree does not even attempt to justify its proposal to fundamentally alter how this Court has structured cost sharing from the beginning to suit Red Tree's own convenience. That result would be manifestly unfair, as this Court recognized in holding the Intervenor Bondholders to an equal-payment condition, and would enable Red Tree simply to free-ride on the other Sale Process Parties' hard work and earlier substantial financial contributions. This Court should thus follow its longstanding approach and condition Red Tree's

participation on its agreement to bear an equal share (i.e., one-quarter) of *all* the Special Master's fees and costs since his appointment.

## ARGUMENT

### I.   The Court Should Deny Mandatory And Permissive Intervention

Both Red Tree's motion to intervene as of right and on a permissive basis should be denied as untimely.  In the Third Circuit, a nonparty-applicant seeking to intervene as of right must demonstrate that "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation."  *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987).  "Although these requirements are intertwined, each must be met to intervene as of right," *id.*, and "[t]he applicant bears the burden of persuading the court that each element is met," *Anthony v. Indep. Ins. Advisors, Inc.*, 56 V.I. 516, 526 (2012) (applying Third Circuit precedent).

The untimeliness of Red Tree's motion is itself dispositive here.  As Red Tree concedes, timeliness is measured from the time when the intervenor knew, or should have known, of the risk to its rights.  D.I. 484, at 6.  When considering the timeliness of a motion to intervene, "the Third Circuit has instructed that three factors must be considered: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay."  *Anthony*, 56 V.I. at 527 (footnote omitted).  All three factors weigh against intervention here.

*First*, as to the stage of the proceeding, Red Tree's motion was filed years after many of the legal questions and logistical issues have been litigated and decided.  "[C]ourts generally find intervention untimely" when sought after "the filing of dispositive motions" "unless there is a compelling reason for delay in filing."  *Anthony*, 56 V.I. at 528.

Here, Red Tree was plainly aware of this case's steady progression, and there is no compelling reason for its delay. In a brief filed in its action in the Southern District of New York in August 2019, Red Tree explicitly noted the threat purportedly posed to its interests by a potential judicial sale in this case. *See supra* at 7. Although Red Tree did not yet have a judgment at that point, it already asserted an "interest under substantive law that belong[ed] to Red Tree and not someone else," D.I. 484, at 7—that is, it "ow[ned] debt issued by [PDVSA] under two note agreements and a credit agreement," *Red Tree Invs., LLC*, 2022 WL 1265516, at *1 (describing the debts Red Tree sought to judicially enforce). If, as Red Tree argues, that is all it takes to create a legal interest sufficient for intervention, Red Tree held that interest long ago. And, by its own admission, Red Tree knew then that this action could impair its interests. Red Tree's Opp. to Defs.' Mot. for Additional Stay at 15, *Red Tree Invs., LLC*, No. 1:19-cv-2519 (S.D.N.Y. Oct. 10, 2019), Dkt. 52 (arguing that sale of PDVH shares in this case "threaten[s] Red Tree's ability to recover on any judgment").

Even if Red Tree's protectable interest arose only when it obtained its judgment against PDVSA (in January 2022), it *still* waited ten months to intervene while the Sale Process Parties made further progress and continued to incur even more necessary expenses. Red Tree suggests that waiting "'a few months,'" D.I. 484, at 6, to intervene is timely, but the cases it cites involved far shorter delays. In *Amgen Inc. v. Amneal Pharmaceuticals LLC*, 2020 WL 6060441, at *4 (D. Del. Oct. 14, 2020), the proposed intervenor moved "within days of learning that its interests were at risk." In noting that a delay of a "few months" will not bar intervention, *Amgen* in turn cited a Third Circuit decision involving a delay of only "43 days." *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1183 (3d Cir. 1994). Those cases undermine—rather than support—the timeliness of Red Tree's intervention.

Perhaps implicitly acknowledging that a ten-month delay would render its motion untimely, Red Tree attempts to frame the point at which it "knew . . . of the risk to its rights" as the date on which the Court approved the *Sixth* Revised Proposed Sale Procedures Order "on October 7, 2022," and contends that it filed its motion to intervene "less than one month" after its interests were implicated.  D.I. 484, at 6.  That argument is unavailing.  Red Tree has been aware of this litigation for years, and evinced awareness that "[a] sale procedures order is currently under consideration by this Court" from its first filings with this Court on February 8, 2022.  *See supra* at 8.  At minimum, Red Tree certainly *should have* known that this case implicates its rights far earlier.  Indeed, many other creditors appeared at the November 8, 2021 hearing.  D.I. 409, at 251-55.  This Court carefully reviewed six iterations of the Sale Procedures Order over eighteen months, and even a cursory glance at the docket would have apprised Red Tree of the potential effect on its asserted interests.

Red Tree's delay stands in contrast to the conduct of ConocoPhillips, which Red Tree holds out as an "identically situated" party, D.I. 484, at 10, and which received its conditional writ of attachment "fewer than two months before Red Tree's attachment," *id.*  Although ConocoPhillips did not intervene, it invoked its interests in this case over two years ago, well before it received a conditional writ of attachment and before this Court even appointed a Special Master.  *See* D.I. 180 (ConocoPhillips brief "regarding conduct of PDV Holding, Inc. share sale").  Red Tree does not explain why it could not have done the same.[1]

---

[1]  It makes little difference that ConocoPhillips received and registered its judgment against Venezuela before Red Tree; Red Tree could have attempted to intervene in anticipation of a potential judgment, or at a minimum as soon as it obtained its final judgment in January 2022, and thus, by its own reasoning, obtained a protectable legal interest as "a PDVSA judgment creditor."  D.I. 484, at 8.

*Second*, Red Tree's intervention now would only complicate the sale process and create serious potential for delay that would prejudice Crystallex—which, unlike Red Tree and every other creditor, has a *perfected* attachment.  *See* D.I. 234, at 33 (recognizing that further indefinite delay "cannot be justified given the decade and resources that Crystallex has already spent trying to collect on its judgment").  As an initial step in advance of the sale process, the Sale Procedure Order provides a six-month period—beginning on the date of the order, October 7—for the Special Master to consult with OFAC regarding the launch of the Marketing Process for the PDVH shares.  D.I. 481 ¶ 3.  That period is already well underway.  The Special Master needs certainty of process to ensure productive discussions with OFAC and then to attract bids to maximize the effectiveness of the sale.  Allowing Red Tree to intervene at this late stage would risk driving up the costs for the existing Sale Process Parties and would inject uncertainty into that process that Venezuela would surely exploit to further delay a sale.  Granting Red Tree's motion would also create incentives for other Venezuela judgment creditors to seek seats at the table too—on Red Tree's view, every time a new PDVSA judgment creditor emerges, the parties to the sale process should expand again.  This Court should not countenance that result.

*Third*, Red Tree offers no legitimate excuse for filing the motion now, only after this Court entered the Sixth Revised Proposed Sale Procedures Order.  Nor does Red Tree explain why it failed to take advantage of the various opportunities this Court has offered for interested parties to lodge any "remaining" objections after ruling on the Venezuela Parties' "'fundamental'" objections in March 2022.  D.I. 443, at 2, 47.  In permitting other parties to intervene for other purposes earlier in this case, this Court deemed intervention timely because the proposed intervenors moved in accordance with this Court's announced schedule.  *See* D.I. 154, at 11-12 (deeming intervention motion "timely" because it was filed "consistent with the timing set out in

the Court's August 23, 2018 Order").  If anything, the opposite is true here.  Despite purportedly being "in consistent contact with counsel to the Special Master for months," D.I. 484, at 1, Red Tree ignored this Court's requests for any remaining objections to the Sale Procedures Order—and only now seeks to lodge a belated objection to the order's definition of "Sale Process Parties" and its provisions governing additional judgment creditors' role in paying the Special Master's fees and costs.  At the latest, the time for Red Tree to press these objections was months ago.

By the same token, Red Tree's delay alone is reason enough to deny its alternative request for permissive intervention.  *See United States v. Territory of Virgin Islands*, 748 F.3d 514, 524 (3d Cir. 2014).  Permissive intervention is also unwarranted for an independent reason: "[A] motion for permissive intervention under Rule 24(b) *must* have grounds in claims for relief which share *questions of fact or law in common with the main action*, and not in the coincidence of financial interests."  *Liberty Mut. Ins. Co. v. Pac. Indem. Co.*, 76 F.R.D. 656, 660 (W.D. Pa. 1977) (emphases added).  All Red Tree argues here is that it "holds judgments against some of the same judgment debtors as the other creditors," D.I. 484, at 9—a mere coincidence of financial interests.  Red Tree has no claim for relief that shares any question of fact or law in common with Crystallex's judgment enforcement action against Venezuela.  For that reason, too, permissive intervention should be denied.

Because no dispositive legal questions remain to be resolved, because intervention would potentially delay Crystallex's ability to collect on its judgment, and because Red Tree has offered no explanation for its substantial delay in seeking to be added as a Sale Process Party, Red Tree's motion to intervene is untimely and should be denied.

## II.     Red Tree Should Not Be Permitted To Participate As A Sale Process Party Unless It Agrees To Pay An Equal Share Of The Special Master's Fees And Costs

If this Court is nonetheless inclined to permit Red Tree to intervene, it should limit Red Tree's intervention to participation as a Sale Process Party, and condition that status on Red Tree's agreement to bear an equal share of *all* the Special Master's fees and costs from the outset of the Special Master's process—on the same basis as every other party and non-party who has contributed to that process to date.  The Advisory Committee Notes to Federal Rule of Civil Procedure 24, which governs intervention, make clear that "[a]n intervention of right . . . may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings."  Here, Red Tree's sole asserted interest in intervention is to ensure its "full input into the PDVH sale as a Sales Process Party."  D.I. 484, at 7.  That limited ground provides no basis for, say, granting Red Tree appellate rights with respect to any of the other issues that were litigated and resolved in this case years ago.  *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 375-76 (1987) ("An intervenor, whether by right or by permission, normally has the right to appeal an adverse final judgment by a trial court.").[2]

Moreover, as this Court has previously held with respect to the Intervenor Bondholders, if Red Tree wishes to participate as a Sale Process Party, it "should be responsible for the same portion of the Special Master's fees as Crystallex, the Venezuela Parties, and ConocoPhillips (i.e., a one-quarter share)," D.I. 275, at 5-6.  Even now, the Sale Procedures Order imposes that same

---

[2]  To the extent Red Tree wishes merely to "consult" with the Special Master, D.I. 484, at 11, the Special Master remains free to consult with any party he chooses to the extent he finds helpful in advancing the sale process.  Indeed, Crystallex welcomes any information Red Tree wishes to provide regarding the shares and that could "maximize value for all stakeholders," *id.* at 10, though so far, it has offered none.  But what Red Tree cannot do is belatedly participate on equal footing to Crystallex and ConocoPhillips without paying an equal share of the Special Master's costs incurred to date and those that may be incurred in the future.

condition on parties that seek merely to have their *judgments* considered by the Special Master. D.I. 481 ¶ 47.  But Red Tree unjustifiably seeks an even *greater* role in the sale process than to merely have its judgment considered, while seeking to pay less:  Red Tree has said it is willing to contribute only "to the Special Master's fees and expenses *going forward*," D.I. 484, at 1 (emphasis added), and only on a "*pro rata*" basis "based on the amount of each party's judgment," D.I. 485 ¶ 4.  Neither limitation is warranted.

*First*, permitting Red Tree to pay only on a prospective basis would effectively allow Red Tree to free ride off the parties' prior work.  The parties have already contributed significantly in hammering out the approved Sale Procedures Order.  Had Red Tree timely moved to intervene in this case, it would have been expected to bear an equal share of all the Special Master's fees and costs far earlier.  Red Tree should not be permitted to profit from its sandbagging.  And limiting Red Tree's contribution to prospective fees would give other creditors a perverse incentive to sit on the sidelines until the last moment—thus avoiding the bulk of the Special Master's fees—only to intervene at the last minute and seek to relitigate long settled issues.

*Second*, there is equally no merit to Red Tree's proposal to pay the Special Master's fees only on a *pro rata* basis.  Red Tree's proposal would needlessly disturb the now settled understanding on which the parties have been operating—payment in equal shares. *E.g.*, D.I. 295, 378, 394, 415, 428, 439, 453, 467, 478 ("each of Crystallex, ConocoPhillips, and the Venezuela Parties shall make payment of one-third of the amounts set forth in the Itemized Statement within 30 days").  The parties have been operating under that arrangement in spite of their varying financial interests.  ConocoPhillips holds a larger judgment than Crystallex, yet each has paid the same fractions toward the Special Master's expenses.  *See* D.I. 180, at 3 (noting that ConocoPhillips holds a $2 billion judgment); D.I. 198, at 1 (noting that Crystallex holds a $1.4

billion judgment).  As this Court has previously reasoned, because each Sale Process Party is a "'full participant'" in the Special Master's process, each bears equal responsibility for the Special Master's expenses—whatever the size of their individual judgments.  D.I. 275, at 5.  That is why this Court also required the Intervenor Bondholders to pay an equal share, *id.*, even though they are owed more than Crystallex and less than ConocoPhillips, D.I. 105, at 3 (bond value of $1.5 billion), and why the Venezuela Parties must pay an equal share though they, of course, hold no judgment at all.  It is thus of no moment that Red Tree's judgment is somewhat smaller than Crystallex's or ConocoPhillips'.  Given the scale of the judgments—with Red Tree holding one worth over $260 million, D.I. 485 ¶ 2—Red Tree assuredly has the means to shoulder an equal share of the fees and costs.  "[T]he nature and amount of the controversy as well as [Red Tree's] means fully support . . . imposing the same obligations on them as all other parties."  D.I. 275, at 5 n.3 (citing Fed. R. Civ. P. 53(g)).

Further, administrability concerns support payment in equal shares.  Red Tree does not explain how its proposed *pro rata* arrangement would even work, given that Venezuela has no judgment to factor into the calculation.  If Red Tree means simply to re-allocate the two-thirds currently shared by Crystallex and ConocoPhillips, that arrangement would lead to arbitrary results:  It would cause Crystallex (with $1 billion outstanding on its $1.4 billion judgment) to pay approximately 20%; ConocoPhillips (with $2 billion outstanding) approximately 40%—even more than its current one-third share; and Red Tree (with $260 million outstanding) only approximately 6%.  It is hard to see why a non-party judgment creditor's payment share (ConocoPhillips, at 40%) should exceed that of the judgment debtor itself (the Venezuela Parties, at 33%).  And on Red Tree's view, fees and costs would constantly need to be recalculated as balances evolve due to interest and successful collection efforts.  At minimum, Red Tree's view

creates perverse incentives for innumerable small judgment creditors to attempt to join the process—given their minute shares—in an effort to drive up costs and delay a sale that would at last satisfy Crystallex's judgment.  Administrability thus counsels strongly against Red Tree's view.

Ultimately, if Red Tree wishes—as it says—to participate with "the same rights and responsibilities" as the other Sale Process Parties, D.I. 484, at 1, it must pay an equal, one-quarter share of *all* the Special Master's fees and costs incurred to date and going forward.

## CONCLUSION

For the reasons set forth above, Crystallex respectfully requests that this Court deny Red Tree's motion to intervene.  In the alternative, if this Court were to permit Red Tree to participate as a Sale Process Party, Crystallex respectfully requests that the Court condition Red Tree's participation on its agreement to pay an equal share of all the Special Master's fees and costs incurred to date since his appointment and going forward.

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166
(212) 351-4000

Miguel A. Estrada
Lucas C. Townsend
Adam M. Smith
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Tel: (202) 955-8500
Fax: (202) 467-0539


Dated:  November 18, 2022

                          */s/ Jeffrey L. Moyer*
Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700
dicamillo@rlf.com
moyer@rlf.com
hunter@rlf.com

*Attorneys for Plaintiff*

19