UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BOLIVARIAN REPUBLIC OF VENEZUELA, )<br>)<br>Defendant. )<br>)<br>_____ ) | Case No. 1:17-mc-00151-LPS |

**VENEZUELA PARTIES' MOTION FOR AN ORDER DIRECTING THE SPECIAL MASTER TO PERMIT COUNSEL'S ATTENDANCE AT MEETINGS WITH THE UNITED STATES GOVERNMENT**

OF COUNSEL:
Nathan P. Eimer
Lisa S. Meyer
Daniel D. Birk
Gregory M. Schweizer
Emily E. Sullivan
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com
DBirk@eimerstahl.com
GSchweizer@eimerstahl.com
ESullivan@eimerstahl.com

Kenneth J. Nachbar (#2067)
Alexandra M. Cumings (#6146)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@mnat.com
ACumings@mnat.com

*Attorneys for PDV Holding, Inc., and CITGO Petroleum Corporation*

OF COUNSEL:
Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

Samuel Taylor Hirzel, II (#4415)
HEYMAN ENERIO GATTUSO & HIRZEL LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law

*Attorney for Petróleos de Venezuela, S.A.*

OF COUNSEL:  
Donald B. Verrilli, Jr.  
Elaine J. Goldenberg  
Ginger D. Anders  
Brendan B. Gants  
Jacobus P. van der Ven  
Munger, Tolles & Olson LLP  
601 Massachusetts Avenue NW  
Suite 500 E  
Washington, D.C. 20001  
(202) 220-1100  
Donald.Verrilli@mto.com  

George M. Garvey  
Munger, Tolles & Olson LLP  
350 South Grand Avenue, 50th Floor  
Los Angeles, CA 90071  
(213) 683-9100  
George.Garvey@mto.com  

A. Thompson Bayliss (#4379)  
Stephen C. Childs (#6711)  
ABRAMS & BAYLISS LLP  
20 Montchanin Road, Suite 200  
Wilmington, DE 19807  
(302) 778-1000  
bayliss@abramsbayliss.com  
childs@abramsbayliss.com  

*Attorneys for Bolivarian Republic of Venezuela*

The Venezuela Parties[1] respectfully move for an order requiring that counsel for all parties be allowed to attend, for purposes of observing but not participating in, any substantive meetings or other communications between Special Master Robert Pincus (and/or his counsel or advisors) and the United States Government related to this matter.

## NATURE AND STAGE OF PROCEEDINGS

This is a post-judgment execution proceeding brought in 2017 by Plaintiff Crystallex, a judgment creditor of the Republic. Crystallex has now attached and is seeking to execute upon shares of stock in PDVH owned by the Republic's state-owned oil company, PDVSA. On October 11, 2022, this Court entered a Sale Procedures Order ("SPO") proposed by Special Master Pincus. *See* D.I. 481. The SPO provides for a period of up to six months after the date of the SPO, during which "the Special Master and his Advisors shall solicit and attempt to gain clarity or guidance from the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") of its support for (or non-opposition to), the launch of the Marketing Process by the Special Master, the viability of the Marketing Process, and any additional feedback or guidance that the Special Master believes will more likely result in a value-maximizing Sale Transaction." *Id*. ¶ 3. The Special Master has rejected the Venezuela Parties' request to allow their counsel to attend the Special Master's meetings with OFAC and now intends to hold an *ex parte* meeting on January 12, 2023, with OFAC and other representatives of the Executive Branch.

## SUMMARY OF ARGUMENT

1. The Court should not allow the Special Master to engage in substantive *ex parte* communications with OFAC or the Executive Branch regarding this matter. Canon 3A(4) of the

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to them in the Court's January 14, 2021 Order, D.I. 234, and the Sale Procedures Order, D.I. 481.

1

Code of Conduct for United States Judges prohibits federal judges and special masters from engaging in *ex parte* communications with third parties regarding the substance of any matter over which they are presiding, both to protect the parties' ability to know and contest what was said and to protect the integrity of the adversarial process. The authorized purpose of the Special Master's outreach to OFAC is to obtain information from OFAC and to provide that information to the Court in order to facilitate the Special Master's recommendation and the Court's decision about whether the sale should launch. *See* D.I. 481 ¶ 3. Under the Code of Conduct and Third Circuit precedent, such communications cannot occur in the absence of the parties.

2. Although it would be natural for Crystallex or the Venezuela Parties to seek an *ex parte* meeting with the Executive Branch as private parties advocating a particular result, that is not the Special Master's role. He is not authorized by this Court to advocate for any particular course of action by the Executive Branch, and it would violate judicial norms of impartiality if this Court were to authorize him to do so. As an arm of the Court and a judicial officer, the Special Master has an obligation to appear and remain impartial (particularly here, where such advocacy would directly implicate U.S. foreign policy). *See* Fed. R. Civ. P. 53(a)(2); 28 U.S.C. § 455(a); Code of Conduct for United States Judges ("Code of Conduct"), Canon 2A, *in* 2 Guide to Judiciary Policy, Ch. 2. Barring a party from what amounts to a judicial fact-gathering proceeding is improper in itself, but that impropriety is heightened to the extent that the meeting may include, or give the appearance of including, advocacy for a position.

## STATEMENT OF FACTS

This Court issued a writ of attachment *fieri facias* to attach PDVSA's shares of stock in PDVH in satisfaction of Crystallex's judgment on August 23, 2018. D.I. 95. On November 1, 2018, the President of the United States issued Executive Order No. 13850, which provides that

interests in property of the Government of Venezuela—defined in such a way as to include the PDVH shares—"may not be transferred, paid, exported, withdrawn, or otherwise dealt in" unless permitted by OFAC. Exec. Order No. 13850 § 1, 83 Fed. Reg. 55243 (Nov. 1, 2018). Regulations promulgated by OFAC pursuant to this order make clear that the executive order prohibits any sale of the PDVH shares, including in an execution sale or pursuant to other judicial process, without a specific license. *See* 31 C.F.R. §§ 591.302, 591.305, 591.310, 591.407. OFAC has also issued official guidance stating that U.S. persons with a writ of attachment in the PDVH shares may not "prepare for and hold an auction or other sale of the shares" without a specific license. OFAC FAQ No. 809. Violation of the regulations may result in criminal penalties. *See* 31 C.F.R. § 501, App'x A. The Executive Branch implemented these prohibitions in part to prevent the PDVH shares and other property of PDVSA from being seized and sold by creditors. *See* D.I. 212-1 at 3. On September 10, 2021, OFAC denied Crystallex's request for "authorization for all activities necessary and ordinarily incident to organizing and conducting a judicial sale of shares" in PDVH, "without prejudice to reconsideration at a later time if [U.S.] foreign policy considerations change." D.I. 346-1 at 1.

On May 27, 2021, the Court appointed Special Master Pincus to "devise a plan for the sale of shares of PDVH as necessary to satisfy the outstanding judgment of Crystallex and the judgment of any other judgment creditor added to the Sale by the Court and/or devise such other transaction as would satisfy such outstanding judgment(s)." D.I. 277 ¶ 2. "[T]o reduce the risk that uncertainty" surrounding OFAC's "sanctions regime [that] will deter value maximizing bids," the Court ordered that the SPO contain a provision giving the Special Master up to six months "to recommend that implementation [of the SPO] begin (or not)" and requiring him to "use his best efforts to obtain guidance from OFAC that may be shared with the market

expressing OFAC's view of the process and the likelihood that it will issue a specific license for a sale to close." D.I. 443 at 17; *see* D.I. 481 ¶ 3. After the Sale Process Parties have an opportunity to object to the Special Master's recommendation, this Court will "make a determination regarding when to trigger the Preparation Launch Date and subsequent Launch Date with or without a license from OFAC." *Id.* The Court has not yet determined whether to direct the start of the sale process.

The Venezuela Parties learned last week that the Special Master has scheduled a meeting with OFAC and other representatives of the Executive Branch on January 12, 2023. The Venezuela Parties requested that their counsel be allowed to attend the meeting, making clear that they intended only to observe and listen and would not participate. The Special Master rejected this request and apparently intends to hold this meeting on an *ex parte* basis.

## ARGUMENT

1. The Court should not allow the Special Master to engage in *ex parte* communications with the U.S. Government. The Code of Conduct for United States Judges provides that judicial officers generally are not permitted to "initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers." Code of Conduct Canon 3A(4); *see also In re Kensington Int'l Ltd.*, 368 F.3d 289, 309 (3d Cir. 2004) ("We have previously described *ex parte* communications as 'anathema in our system of justice.'") (internal citations omitted). As the Code of Conduct's phrasing suggests, the prohibition on *ex parte* communications include not only communications with a party to the litigation, but also communications with third parties "concerning a pending or impending matter that are made outside the presence of the parties or their lawyers." *See In re Kensington Int'l*

4

*Ltd.*, 368 F.3d at 309–10 (treating a judge's communications with non-party advisors as "*ex parte*" communications because they occurred outside the presence of the parties); Code of Conduct Canon 3A(4)(c) (providing a limited exception to the prohibition for a judge to "obtain the written advice of a disinterested expert on the law"). And this prohibition applies to the Special Master, who is acting as a judicial officer and "arm of the Court," D.I. 277 ¶ 20, and pursuant to the Court's direction. *See* Code of Conduct at 2, 19 (stating that the Code of Conduct applies to special masters, with the exceptions of Canons 4A(3), 4B, 4C, 4D(4), or 5); *see also* Code of Conduct Canon 3B(2) ("A judge should not direct court personnel to engage in conduct on the judge's behalf or as the judge's representative when that conduct would contravene the Code if undertaken by the judge.").

The prohibition on *ex parte* communications "is designed to prevent … bias, prejudice, coercion, and exploitation," and also to maintain the integrity of the adversarial system. *See In re Kensington Int'l Ltd.*, 368 F.3d at 310. Specifically, if a judicial officer engages in *ex parte* communications, "there [is] no way for" the parties "to adequately respond to or counter facts presented" about those "unrecorded meetings" because they have "no way of knowing what was said." *Id.* at 310–11; *see also id.* at 310 ("If judges engage in *ex parte* conversations with the parties or outside experts, the adversary process is not allowed to function properly and there is an increased risk of an incorrect result."); *id.* at 311 (explaining that *ex parte* meetings prevent parties from knowing "precisely what was said, when it was said, by whom, and what effect could be drawn from their offerings.").[2]

---

[2] The Code of Conduct contains an exception for *ex parte* communications conducted with the parties' express consent. *See* Code of Conduct Canon 3A(4)(d); *In re Kensington Int'l Ltd.*, 368 F.3d at 311 (holding that such consent cannot be implied through waiver). Here, however, the Venezuela Parties have not consented to the planned *ex parte* conversations.

5

The Court ordered the Special Master to engage with OFAC in order to (1) solicit OFAC's views on such matters as "[OFAC's] support for (or non-opposition to), the launch of the Marketing Process by the Special Master," D.I. 481 ¶ 3, and "the likelihood that [OFAC] will issue a specific license for a sale to close," D.I. 443 at 17, and (2) submit a Supplemental Report that includes "a recommendation … to the Court as to whether (and when) the Court should direct the Special Master" to initiate the sale process, D.I. 481 ¶ 3. The SPO also states that "[t]he Court shall consider the Supplemental Report" and any objections to that recommendation filed by the Sale Process Parties, "after which the Court shall make a determination regarding when to trigger the Preparation Launch Date and subsequent Launch Date with or without a license from OFAC." *Id.*

Whether the Court should direct the Special Master to initiate the sale process is a disputed issue in this case. The Venezuela Parties believe—and have previously asserted—that conducting the sale process without a specific license would chill bidder participation and that a fair, value-maximizing sale cannot occur without OFAC authorization. The Special Master has also voiced such concerns to the Court. *See, e.g.*, D.I. 348 ¶ 3; D.I. 356 ¶ 6. Crystallex disagrees. The authorized purpose of the Special Master's outreach to OFAC is, as directed by the Court, to obtain OFAC's views and intentions regarding "its support for (or non-opposition to), the launch of the Marketing Process by the Special Master" and for the Special Master to provide those views to the Court and potential bidders in order to facilitate the Court's decision. *Id.* Such communications cannot occur in the absence of the parties. *See Cobell v. Norton*, 334 F.3d 1128, 1144 (D.C. Cir. 2003) (holding that a special master could not base his opinion in part on information learned through *ex parte* communications).

6

The SPO authorizes the parties to object to the Special Master's eventual recommendation as to whether the Court should direct the launch of the sale process. D.I. 481 ¶ 3. If the parties or their counsel cannot attend the Special Master's meetings with OFAC, then they will have no contemporaneous record of the discussions and no knowledge of what occurred beyond what may be represented by the Special Master or his advisors. That not only will interfere with their ability to protect their interests and to dispute or supplement any characterizations or information provided by the Special Master in his Supplemental Report, it also will prevent the adversary process from functioning properly. *See In re Kensington Int'l Ltd.*, 368 F.3d at 311 (noting that *ex parte* meetings interfere with the truth-seeking process and with appellate review because "no one could know what had been said or proffered").

Simply put, it would be unthinkable for this Court itself to have an *ex parte* phone call with Executive Branch officials and then base its decision on whether to launch the sale process on facts or representations made outside the presence of the parties. It is no more appropriate for the Court to permit the Special Master to engage in such *ex parte* communications and then base its decision on facts and representations the Special Master provides to the Court about such *ex parte* communications.

2. Although it would be natural for Crystallex or the Venezuela Parties to seek an *ex parte* meeting with the Executive Branch as private parties advocating a particular result, that is not the Special Master's role. The SPO contemplates that the purpose of the Special Master's outreach to OFAC is to solicit information, such as its "view of the process" and "the likelihood that [OFAC] will issue a specific license for a sale to close," D.I. 443 at 17, not to advocate that OFAC take a position on those issues one way or the other. Indeed, it obviously would be improper for the Special Master to contact OFAC unilaterally to urge that the government take

any position one way or the other, particularly on an *ex parte* basis. *See Abdulrahman v. Ashcroft*, 330 F.3d 587, 596 (3d Cir. 2003) (stating that "due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities" and that such persons "must assiduously refrain from becoming advocates for either party" (internal quotation marks omitted)); *Logue v. Dore*, 103 F.3d 1040, 1045 (1st Cir. 1997) ("[T]here are lines which a trial judge should not cross. For example, … he cannot become an advocate or otherwise use his judicial powers to advantage or disadvantage a party unfairly."); *see also* 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."); Code of Conduct Canon 2A ("A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."); Fed. R. Civ. P. 53(a)(2) (applying 28 U.S.C. § 455 to special masters).[3]

Thus, it is difficult to think of any reason that the Court and the Special Master would want to prevent the parties from observing, without participating in, an information gathering meeting with the Executive Branch that will be used to make to judicial decision to launch the sales process. If the Special Master is for any reason uncomfortable communicating with the government in the presence of the parties, then the proper approach would be for him to send a written inquiry to OFAC (with the parties copied) and then file the actual response. Or he could

---

[3] The impropriety of such outreach would be exacerbated in this case, given that OFAC's determinations are rooted in Executive Branch evaluations of U.S. foreign policy interests. *See Hernandez v. Mesa*, 140 S. Ct. 735, 744 (2020) (stating that "matters relating to the conduct of foreign relations ... are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference" (cleaned up)). The United States Government has already stated—in this Court—that "moving forward" with a sale "could imperil U.S. foreign policy and national security interests." D.I. 212 at 5. Additionally, federal law currently prohibits—at the very least—closing on any execution sale of the PDVH shares, and indeed OFAC already denied Crystallex's request for a specific license that would remove that legal prohibition.

recommend that the Court formally request another statement of interest from the United States, as the SPO contemplates. In no circumstance, though, is there any legitimate reason for the Special Master to gather information relevant to a judicial decision in an *ex parte* communication with the Executive Branch, thereby depriving the parties of their right to an opportunity to adequately respond. *See In re Kensington Int'l Ltd.*, 368 F.3d at 310–11.

## CONCLUSION

For the foregoing reasons, the Venezuela Parties respectfully request that the Court issue an order that counsel for all parties be allowed to attend, for purposes of observing but not participating in, any substantive meetings or other communications between Special Master Pincus (and/or his counsel or advisors) and the United States Government related to this matter. The Venezuela Parties reserve all rights if the Special Master proceeds in a manner inconsistent with law.

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | */s/ Kenneth J. Nachbar* |
| OF COUNSEL: | Kenneth J. Nachbar (#2067) |
| Nathan P. Eimer | Alexandra M. Cumings (#6146) |
| Lisa S. Meyer | 1201 North Market Street |
| Daniel D. Birk | Wilmington, DE 19801 |
| Gregory M. Schweizer | (302) 658-9200 |
| Emily E. Sullivan | KNachbar@mnat.com |
| EIMER STAHL LLP | ACumings@mnat.com |
| 224 South Michigan Avenue |  |
| Suite 1100 | *Attorneys for PDV Holding, Inc., and* |
| Chicago, IL 60604 | *CITGO Petroleum Corporation* |
| (312) 660-7600 |  |
| NEimer@eimerstahl.com |  |
| LMeyer@eimerstahl.com |  |
| DBirk@eimerstahl.com |  |
| GSchweizer@eimerstahl.com |  |
| ESullivan@eimerstahl.com | HEYMAN ENERIO GATTUSO & HIRZEL LLP |
|  | */s/ Samuel Taylor Hirzel, II* |
|  | Samuel Taylor Hirzel, II (#4415) |
|  | 300 Delaware Avenue, Suite 200 |
| OF COUNSEL: | Wilmington, DE 19801 |
| Joseph D. Pizzurro | (302) 472-7300 |
| Kevin A. Meehan | shirzel@hegh.law |
| Juan O. Perla |  |
| CURTIS, MALLET-PREVOST, | *Attorney for Petróleos de Venezuela, S.A.* |
| COLT & MOSLE LLP |  |
| 101 Park Avenue |  |
| New York, NY 10178 |  |
| (212) 696-6000 |  |
| jpizzurro@curtis.com |  |
| kmeehan@curtis.com |  |
| jperla@curtis.com |  |

10

|  |  |
|---|---|
|  | ABRAMS & BAYLISS LLP |
|  |  |
|  | */s/ Stephen C. Childs* |
| OF COUNSEL: | A. Thompson Bayliss (#4379) |
| Donald B. Verrilli, Jr. | Stephen C. Childs (#6711) |
| Elaine J. Goldenberg | 20 Montchanin Road, Suite 200 |
| Ginger D. Anders | Wilmington, DE 19807 |
| Brendan B. Gants | (302) 778-1000 |
| Jacobus P. van der Ven | bayliss@abramsbayliss.com |
| Munger, Tolles & Olson LLP | childs@abramsbayliss.com |
| 601 Massachusetts Avenue NW |  |
| Suite 500 E | *Attorneys for Bolivarian Republic of Venezuela* |
| Washington, D.C. 20001 |  |
| (202) 220-1100 |  |
| Donald.Verrilli@mto.com |  |

George M. Garvey
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com

January 9, 2023