# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BOLIVARIAN REPUBLIC OF VENEZUELA, )<br>)<br>Defendant. )<br>)<br>_____ ) | Case No. 1:17-mc-00151-LPS |

**VENEZUELA PARTIES' REPLY IN SUPPORT OF THEIR MOTION FOR AN ORDER DIRECTING THE SPECIAL MASTER TO PERMIT COUNSEL'S ATTENDANCE AT MEETINGS WITH THE UNITED STATES GOVERNMENT**

OF COUNSEL:
Nathan P. Eimer
Lisa S. Meyer
Daniel D. Birk
Gregory M. Schweizer
Emily E. Sullivan
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com
DBirk@eimerstahl.com
GSchweizer@eimerstahl.com
ESullivan@eimerstahl.com

Kenneth J. Nachbar (#2067)
Alexandra M. Cumings (#6146)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@mnat.com
ACumings@mnat.com

*Attorneys for PDV Holding, Inc., and CITGO Petroleum Corporation*

OF COUNSEL:
Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

Samuel Taylor Hirzel, II (#4415)
HEYMAN ENERIO GATTUSO & HIRZEL LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law

*Attorney for Petróleos de Venezuela, S.A.*

1

OF COUNSEL:
Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
Brendan B. Gants
Jacobus P. van der Ven
Munger, Tolles & Olson LLP
601 Massachusetts Avenue NW
Suite 500 E
Washington, D.C. 20001
(202) 220-1100
Donald.Verrilli@mto.com

George M. Garvey
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com

A. Thompson Bayliss (#4379)
Stephen C. Childs (#6711)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807
(302) 778-1000
bayliss@abramsbayliss.com
childs@abramsbayliss.com

*Attorneys for Bolivarian Republic of Venezuela*

## PRELIMINARY STATEMENT

In responding to the Venezuela Parties' request that the Special Master not be allowed to solicit and receive information from the United States Government on an *ex parte* basis, the Special Master makes the extraordinary statement that he believes he not only can hold such a meeting *ex parte* but also that he intends to actually advocate that the Executive Branch take particular positions and actions with respect to sensitive issues of foreign policy and national security that are opposed by parties to this case. *See* D.I. 503 at 3 ("There is no principle of judicial ethics requiring the Court's Special Master to not take actions, or even advocate, to enforce the Court's own judgment and those of other courts, of which the Special Master's engagement with OFAC is a part."), 5 (stating that "the core purpose of the meeting" includes providing OFAC with "the Special Master's perspective on why OFAC cooperation with the Court's order is appropriate and necessary, and ascertain[ing] whether OFAC will issue a license or otherwise authorize the sale of the PDVH shares").

The Special Master's excuse for excluding the parties from his meeting is that the parties' mere presence at such a meeting will "chill" his advocacy efforts, *see id.* at 5, but that only exacerbates the problem with the Special Master's meeting being *ex parte*. It is clear now that every aspect of the meeting the Special Master envisions is a violation of judicial norms under 28 U.S.C. § 455 and the Code of Conduct. It would be unthinkable for a judge to contact the Government on an *ex parte* basis to request that the government provide off-the-record input on contested matters relevant to a pending case, and it would be even more unthinkable for a judge to contact OFAC to argue that it should "cooperate with" or authorize conduct that the government has previously said would cause irreparable harm to U.S. foreign policy and national security interests. Moreover, the Special Master's intentions are not even consistent with the task

given to him by the Court, which was simply "to obtain guidance from OFAC that may be shared with the market expressing OFAC's view of the process and the likelihood that it will issue a specific license for a sale to close." D.I. 443 at 17. At no time did, or could, the Court authorize the Special Master to advocate for any position to the Government.

**ARGUMENT**

1.     Third Circuit precedent is clear that, under Canon 3A(4) and 28 U.S.C. § 455, a judge would be absolutely prohibited from engaging in the sort of *ex parte* communications contemplated by the Special Master here. *See In re Kensington Int'l Ltd.*, 368 F.3d 289, 309–11 (3d Cir. 2004). Judges cannot base their decisions on "'personal' or 'extrajudicial' knowledge" obtained in *ex parte* communications with third parties "that leave[] no trace in the record and cannot be controverted or tested by the tools of the adversary process." *Id.* at 308 n.18 (internal quotation marks omitted); *accord In re Edgar*, 93 F.3d 256, 259 (7th Cir. 1996) (per curiam) (disqualifying district judge who received off-the-record information from fact-gathering panel in chambers under 28 U.S.C. § 455); *Knop v. Johnson*, 977 F.2d 996, 1011 (6th Cir. 1992) (stating that "it is impermissible for a trial judge to deliberately set about gathering facts outside the record" and that this principle was violated where the judge's law clerk made *ex parte* telephone calls to witnesses).

The Special Master and Crystallex are wrong that Rule 53(b)(2)(B) creates an implied exception from Canon 3A(4) for special masters allowing them to engage in *ex parte* communications over the objection of the parties that a judge could not engage in without violating judicial ethics rules if such communications are authorized in the master's appointing order. D.I. 503 at 2–3; D.I. 504 at 2–3. The argument does not work even on its own terms, because the appointing order in this case permits the Special Master to communicate *ex parte*

only with the Court and the Sale Process Parties or their counsel (a provision to which the Sale Process Parties all consented). *See* D.I. 277 at 5, ¶ 8. Likewise, the plain language of Rule 53(b)(2)(B) refers only to "the circumstances, if any, in which the master may communicate ex parte with *the court or a party*." Fed. R. Civ. P. 53(b)(2) (emphasis added).

More fundamentally, Rule 53(b)(2) obviously does not authorize special masters to engage in *prohibited ex parte* communications that the *court itself could not do*, and it certainly does not give the Special Master the authority either to engage in extrajudicial fact-finding discussions with third parties or to advocate that the Government take a particular position in a pending case. As the Venezuela Parties explained in their opening brief, the Special Master is acting as the judge's representative here, in an attempt to solicit information relevant to the Court's decision on whether to launch the sale process. *See* D.I. 499 at 5. Canon 3B(2) provides that "[a] judge should not direct court personnel to engage in conduct on the judge's behalf or as the judge's representative when that conduct would contravene the Code if undertaken by the judge." *See also Price Bros. Co. v. Phila. Gear Corp.*, 629 F.2d 444, 447 (6th Cir. 1980) ("[A] judge may not direct his law clerk to do that which is prohibited to the judge."); D.I. 469 at 5 (the Court stating that "all actions taken by the Special Master must … be within the powers the Court is authorized to exercise").

Crystallex's invocation of Canon 3(A)(4)(c), which permits a judge to "obtain the written advice of a disinterested expert on the law," D.I. 504 at 3, is even less applicable. The United States government is not a disinterested expert on the law, and the Special Master is not seeking *written* advice, but conducting an *in-person* meeting to solicit the government's *in-person* comments (and, apparently, advocating for what those comments should be). In fact, the written

5

advice exception makes all the clearer how improper it would be to allow the Special Master to conduct off-the-record oral discussions with the government without the parties present.

2. The Special Master's argument that "judicial norms of impartiality" are "misplaced" here because this is a post-judgment enforcement proceeding, D.I. 503 at 3, is unsupported and contrary to the plain language of Canon 3A(4) and appellate precedent. *See* Canon 3A(4) (prohibiting *ex parte* communications "concerning a pending or impending *matter*" (emphasis added)); *Cobell v. Norton*, 334 F.3d 1128, 1144 (D.C. Cir. 2003) (disqualifying special master in post-judgment remedial proceeding because his impartiality could reasonably be questioned on the basis of facts he received through *ex parte* communications).

Both the Court and the Special Master have ongoing obligations under applicable ethics rules, including 28 U.S.C. § 455, and the Due Process Clause to remain neutral and impartial in the exercise of their judicial duties. *See, e.g.*, *Guenther v. C.I.R.*, 939 F.2d 758, 760 (9th Cir. 1991) (stating that due process "mandate[s] neutrality in civil proceedings, both in reality and in appearance" and invalidating decision made on the basis of an *ex parte* submission as a violation of the due process neutrality principle). While some of the Special Master's duties involve ministerial actions to implement the mechanics of the sale, with respect to the OFAC outreach, the Special Master is charged by this Court with "finding the facts in the first instance and making a report and recommendation" based on those facts, a "plainly … adjudicative" function. *In re Kempthorne*, 449 F.3d 1265, 1269 (D.C. Cir. 2006) (internal quotation marks omitted); *see also* D.I. 234 at 35 (stating that the Court would "appoint a special master, who will have the time and expertise to fulfill the *Court's* and the U.S. Marshal's duties to prepare for and conduct the sale" (emphasis added)).

Courts frequently make judicial decisions in the post-judgment context, such as the decision here as to whether to launch the sale process. If the Court bases such a decision on a recommendation from the Special Master that in turn is based on information obtained from *ex parte* communications, then the precise harms that the Third Circuit identified in *In re Kensington* will occur—namely, the heightened "risk of an incorrect result" and deprivation of the parties' rights "to adequately respond to or counter facts presented." *See* 368 F.3d at 310–11.[1] A judicial or quasi-judicial officer thus cannot engage in *ex parte* communications—and especially not in *ex parte* advocacy—in judgment-enforcement proceedings any more than in any other setting.

3.  The Special Master does not respond to the Venezuela Parties' authority establishing that it would be a violation of judicial ethics and grounds for disqualification if the Special Master were to advocate for OFAC to take a particular position, other than to compound the problem by admitting that he actually plans to engage in such advocacy, and wrongly claiming that this Court has already authorized him to engage in it. The Special Master claims that the Court has already overruled the Venezuela Parties' objection that the Special Master cannot "advocate to the Government on behalf of particular parties or for particular outcomes," D.I. 503 at 4 (quoting D.I. 354 at 21), but the Court has never held that the Special Master may lobby OFAC and has not directed him to do so. In fact, previously, the Special Master responded to the Venezuela Parties' objections by clarifying that he did "not propose[] to" include a

---

[1] Crystallex's suggestion that any prejudice to the Venezuela Parties can be avoided because they can request their own meeting with OFAC, D.I. 504 at 2, misses the point. In the words of the Third Circuit, which rejected essentially the same argument in a different context, "even if all parties met for the same amount of time with [OFAC], there [would be] no way for them to adequately respond to or counter facts presented by their adversaries because they [would have] no way of knowing what was said during those unrecorded meetings. Thus, the risk of an incorrect result was still present." *In re Kensington*, 368 F.3d at 310–11.

7

provision in the SPO allowing him to "lobb[y] on behalf of any particular party in this case" as part of the sale process. D.I. 356 ¶ 8. The fact that he now claims that the Court has authorized him to "advocate to the Government on behalf of particular parties or for particular outcomes," D.I. 503 at 4 (quoting D.I. 354 at 21), is deeply troubling. *Ex parte* discussions are not necessary to solicit OFAC's views; the Special Master could solicit OFAC's input via a letter on which all parties are copied, as noted in the Venezuela Parties' opening brief. And the SPO is also clear that the Special Master is only supposed to *solicit* OFAC's position, not argue that OFAC should take a particular position or offer his "perspective on why OFAC cooperation with the Court's order is appropriate." D.I. 503 at 5.

4. The Special Master implies that the Venezuela Parties have waived their right to object to his *ex parte* meeting, D.I. 503 at 5–6, but the Third Circuit has expressly held that the requirement for a judicial or quasi-judicial officer not to engage in *ex parte* communications without the consent of the parties requires "affirmative consent" and that such consent cannot be implied through waiver. *See In re Kensington International Ltd.*, 368 F.3d at 311. The Special Master chides the Venezuela Parties for not objecting to certain of the Special Master's previous communications with OFAC prior to entry of the Sale Procedures Order, D.I. 503 at 5–6, but before entry of the SPO, the Court had never ordered the Special Master to engage in any fact-finding outreach to the Government and then, based on that outreach, make a recommendation to the Court as to how to proceed on an issue that will be contested by at least some of the parties. The Venezuela Parties had understood the Special Master's previous communications with OFAC to be an effort (undertaken without a court request or authorization) to keep the government apprised of the proceedings in this case, provide information, and explain the anticipated mechanics of the sale process. By contrast, this meeting is the first in response to the

8

Court's direction in the SPO for the Special Master to gather facts related to a central, substantive issue in this case and will form the basis of the Special Master's recommendation.

Nor did the Venezuela Parties unduly delay in presenting this motion. While the Special Master had indicated in October that he was not inclined to allow the parties to join in his discussions with OFAC, his last statement on the matter before January 3, 2023 was that his position about whether to include the parties in his planned discussions with OFAC "may change in the future." D.I. 480 at 2 n.2. It was only in the Special Master's report to the Court on December 28, 2022, that the Venezuela Parties learned that the Special Master had arranged a meeting with OFAC, but the date was not reported. *See* D.I. 496 at 2. The Special Master first disclosed to the Venezuela Parties the planned meeting date in response to an inquiry from counsel for the Venezuela Parties on December 30, 2022. Counsel for the Venezuela Parties then promptly requested on January 3, 2023 that the parties be allowed to attend, and it was at that time that the Special Master made it clear that he had finally decided to have an *ex parte* meeting at which he intended to argue to OFAC why it should allow the sale process to proceed notwithstanding outstanding OFAC regulations to the contrary.

5.  No legitimate prejudice can result from the parties' attendance, solely for observational purposes, at the Special Master's scheduled meeting with the Government.[2] The Government is well aware that the Special Master has been instructed to report the Government's position to the Court. To the extent the Special Master is suggesting that he will be told something by the Government that it does not want reported to the parties, D.I. 503 at 5, it proves exactly why he cannot be allowed to have an *ex parte* meeting. The parties are entitled to know

---

[2] The Court can overcome Crystallex's apparent concern that attorneys attending the meeting will not have sufficient restraint to contain themselves, D.I. 504 at 1–2, by ordering the parties not to participate in or interrupt the meeting with questions, comments, or argument.

what the Government tells the Special Master at the meeting, if anything, so that they are in a position to respond to the Special Master's recommendation. The Special Master mischaracterizes the letter he received from the Justice Department, which says nothing about affecting the Government's willingness to speak, only that, depending on "clarity provided by the Court on meeting parameters (and attendees), it may be necessary to revise the meeting parameters or participants." D.I. 503-1. It would hardly be surprising, for example, if attendance by counsel for the Republic would prompt additional persons from the State Department to attend the meeting, or that if this Court were to limit the "meeting parameters" the Government would, in response to the Court's order, change the "parameters" of the meeting. Indeed, this skewed interpretation of the Justice Department letter demonstrates precisely why the parties should be permitted to attend the upcoming meeting so they can hear precisely what is said at the meeting and provide the Court with their understanding of the Government's intentions.

Similarly, the fact that the Special Master contends that his own advocacy will be "chill[ed]," D.I. 503 at 5, demonstrates precisely why what he is proposing violates judicial norms of impartiality and why it is crucial that the parties be allowed to attend. Anything that the Special Master or his advisors are not willing to say in the parties' presence is by definition something that should not be said at all.

RESPECTFULLY SUBMITTED,

January 11, 2023

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| OF COUNSEL: | */s/ Kenneth J. Nachbar* |
| Nathan P. Eimer | Kenneth J. Nachbar (#2067) |
| Lisa S. Meyer | Alexandra M. Cumings (#6146) |
| Daniel D. Birk | 1201 North Market Street |
| Gregory M. Schweizer | Wilmington, DE 19801 |
| Emily E. Sullivan | (302) 658-9200 |
| EIMER STAHL LLP | KNachbar@mnat.com |
| 224 South Michigan Avenue | ACumings@mnat.com |
| Suite 1100 |  |
| Chicago, IL 60604 | *Attorneys for PDV Holding, Inc., and* |
| (312) 660-7600 | *CITGO Petroleum Corporation* |
| NEimer@eimerstahl.com |  |
| LMeyer@eimerstahl.com |  |
| DBirk@eimerstahl.com |  |
| GSchweizer@eimerstahl.com |  |
| ESullivan@eimerstahl.com |  |
|  | HEYMAN ENERIO GATTUSO & HIRZEL LLP |
| OF COUNSEL: | */s/ Samuel Taylor Hirzel, II* |
| Joseph D. Pizzurro | Samuel Taylor Hirzel, II (#4415) |
| Kevin A. Meehan | 300 Delaware Avenue, Suite 200 |
| Juan O. Perla | Wilmington, DE 19801 |
| CURTIS, MALLET-PREVOST, | (302) 472-7300 |
| COLT & MOSLE LLP | shirzel@hegh.law |
| 101 Park Avenue |  |
| New York, NY 10178 | *Attorney for Petróleos de Venezuela, S.A.* |
| (212) 696-6000 |  |
| jpizzurro@curtis.com |  |
| kmeehan@curtis.com |  |
| jperla@curtis.com |  |

| | |
|---|---|
| OF COUNSEL:<br>Donald B. Verrilli, Jr.<br>Elaine J. Goldenberg<br>Ginger D. Anders<br>Brendan B. Gants<br>Jacobus P. van der Ven<br>Munger, Tolles & Olson LLP<br>601 Massachusetts Avenue NW<br>Suite 500 E<br>Washington, D.C. 20001<br>(202) 220-1100<br>Donald.Verrilli@mto.com<br><br>George M. Garvey<br>Munger, Tolles & Olson LLP<br>350 South Grand Avenue, 50th Floor<br>Los Angeles, CA 90071<br>(213) 683-9100<br>George.Garvey@mto.com | ABRAMS & BAYLISS LLP<br><br>/s/ Stephen C. Childs<br>A. Thompson Bayliss (#4379)<br>Stephen C. Childs (#6711)<br>20 Montchanin Road, Suite 200<br>Wilmington, DE 19807<br>(302) 778-1000<br>bayliss@abramsbayliss.com<br>childs@abramsbayliss.com<br><br>*Attorneys for Bolivarian Republic of Venezuela* |