### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

---

CRYSTALLEX INTERNATIONAL CORP., )
)
       Plaintiff, )
)
v. )    Misc. No. 17-151-LPS
)
BOLIVARIAN REPUBLIC OF VENEZUELA, )
)
       Defendant. )

---

### SPECIAL MASTER'S OPPOSITION TO
### VENEZUELA PARTIES' MOTION TO DISQUALIFY THE SPECIAL MASTER

The Special Master hereby submits his Opposition to *PDVSA, PDVH, and Citgo's Motion to Disqualify the Special Master* (D.I. 509) (the "***Motion***").[1]

### PRELIMINARY STATEMENT

The Venezuela Parties' Motion to Disqualify the Special Master is just the latest turn in the Venezuela Parties' years-long effort to delay the court-authorized sale of PDVSA's shares in PDVH. The ultimate aim of these efforts, it appears, is to avoid paying the lawful judgments entered against the Republic and its instrumentalities. At bottom, the Venezuela Parties ask the Court to disqualify the Special Master not for engaging in any conduct that could reasonably be characterized as improper, but rather for merely complying with an order of the Court itself.

The Venezuela Parties readily admit that the Court "has already effectively rejected this objection" by denying their Motion for an Order Directing the Special Master to Permit Counsel's Attendance at Meetings with the United States Government (D.I. 499) (the "**January 9 Motion**")

---

[1] Capitalized terms used and not otherwise defined herein shall bear the meanings ascribed to such terms by the Sale Procedures Order (D.I. 481). Because the Bolivarian Republic of Venezuela submitted a Joinder to the Motion (D.I. 511), this Opposition refers to the Motion as the Venezuela Parties' Motion.

and allowing the Special Master's *ex parte* meeting with the U.S. Government to proceed. Motion at 1. Nevertheless, the Venezuela Parties persist with their Motion, knowing full well that the claims raised therein—much like the claims that the Venezuela Parties raised in the January 9 Motion—have already been considered and rejected by the Court. Having already thoroughly considered and resolved these issues in the Special Master's favor, there is no legitimate reason for the Court to have to revisit these issues now.

For this reason and others set forth below, the Venezuela Parties' Motion is wholly unconvincing and should be denied.

*First*, the Court expressly authorized the Special Master to engage in *ex parte* communications with the U.S. Government over the Venezuela Parties' objection. In instances where the engagement with the Sale Process Parties is necessary to protect their rights, the Court has made it clear that the Special Master needs to consult with the Sale Process Parties. *See, e.g.*, Sale Procedures Order ¶ 4 (providing that "the Sale Process Parties and their advisors shall be consulted as to the identity of, and the scope of inquiry to, any such potential bidders"). Yet the Sale Procedures Order is silent about the need to consult the Sale Process Parties regarding the conversations with the U.S. Government, and the Special Master, by meeting with representatives of the U.S. Government *ex parte*, merely complied with the Court's orders. Accordingly, the Motion is nothing more than a retread of the same arguments that the Court considered and rejected in connection with the January 9 Motion.

*Second*, even if the Court had not already considered and rejected the Venezuela Parties' position, it should do so now because the Special Master's *ex parte* communications were entirely proper and lawful. Contrary to the Venezuela Parties' assertion that the Special Master "must be disqualified due to his January 12 meeting with OFAC," Motion at 2, the Federal Rules of Civil

Procedure indisputably authorize courts to permit special masters to engage in *ex parte* communications. The Court's exercise of that lawful authority—and the Special Master's compliance with it—is not a valid basis for disqualification.

*Third*, the Venezuela Parties' arguments, if accepted, would require not only disqualification of the Special Master, but also would bar the Court from appointing any special master to implement the sale process. According to the Venezuela Parties, "[w]hether the Court should direct the Special Master to initiate the sale process is a critical, disputed issue in these proceedings." Motion at 6. To be clear, pursuant to the Sale Procedures Order, the Special Master's engagement with the U.S. Government is expressly *not* an initiation of the sale process— it is an authorized exercise of the Special Master's duties. *See* Sale Procedures Order ¶ 4. Therefore, if the Special Master is not permitted to take steps clearly authorized by the Court, then the Venezuela Parties' complaints of disqualifying partiality would apply not only to the Special Master's *ex parte* meeting with the U.S. Government, but also to *any action* taken by the Special Master (and, for that matter, the Court) in furtherance of the sale process. Such result is contrary to the Court's prior orders authorizing the sale process and directing the Special Master to execute it and, if accepted, would frustrate enforcement of the Court's judgment.

*Fourth*, the Venezuela Parties' apparent belief that Courts (and special masters acting on their behalf) must remain neutral with respect to the enforcement of their own judgments is incorrect as a matter of law. The Court has the inherent power to enforce its own judgments and to issue such orders as are necessary to make its judgments effective. The Court's appointment of the Special Master to conduct the sale process was a valid exercise of that power, and the Special Master's actions in furtherance of the sale process—including his *ex parte* meeting with the U.S. Government —are in no way disqualifying.

*Fifth*, the Venezuela Parties have failed to meet their heavy burden of demonstrating disqualifying partiality under any of the authorities they cite.

*Finally*, the Motion is untimely. The Venezuela Parties have shown substantial and strategic delay with respect to both the instant Motion and the January 9 Motion. The Court should recognize the Venezuela Parties' tactics for what they are and exercise its discretion to deny the Motion as untimely.

## FACTUAL BACKGROUND

In 2016, Crystallex won a foreign arbitration award against the Republic in the amount of $1.202 billion. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 244 F. Supp. 3d 100, 107 (D.D.C. 2017). Crystallex subsequently petitioned the District Court for the District of Columbia to confirm the arbitral award. *Id.* at 108. The district court entered a judgment granting Crystallex's petition and denying the Republic's motion to vacate the award, *id.* at 123, which was affirmed on appeal, 760 F. App'x 1, 2 (D.C. Cir. Feb. 14, 2019) (per curiam).

Crystallex registered the district court's judgment with this Court and moved for a writ of attachment *fieri facias*, seeking to attach shares of PDVH owned by PDVSA to satisfy its judgment. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 386-87 (D. Del. 2018). Finding that PDVSA is an alter ego of the Republic and that PDVSA's shares in PDVH were property of the Republic available to satisfy Crystallex's judgment, the Court entered an order authorizing issuance of the writ, and formally issued the writ on August 23, 2018. Memorandum Order (D.I. 95). That judgment was also affirmed on appeal, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019), and the Supreme Court denied the Republic's petition for certiorari, 140 S. Ct. 2762 (2020).

4

Crystallex moved for an order establishing procedures for the execution sale of PDVSA's shares of PDVH.  (D.I. 181).  The Court granted that motion in part and stated its intention to "appoint a special master to oversee the day-to-day and detailed implementation of the sale procedures."  Opinion at 34 (D.I. 234).  In so doing, the Court noted that "[t]he parties agree that the Court can appoint a special master, who will have the time and expertise to fulfill the Court's and the U.S. Marshal's duties to prepare for and conduct the sale."  *Id.* at 35; *see* Answering Br. of the Venezuela Parties Regarding Potential Future Procedures at 10 (D.I. 196) (recognizing the Court's "discretion to design a process (including who manages the sale) that comports with Delaware law's twin commands").

On April 13, 2021, the Court appointed Robert B. Pincus as special master "to assist with the sale of PDVSA's shares of PDVH to satisfy Crystallex's judgment."  Memorandum Order at 2 (D.I. 258).  The Court later expounded on the Special Master's role, explaining that he "shall devise a plan for the sale of shares of PDVH as necessary to satisfy the outstanding judgment of Crystallex and the judgment of any other judgment creditor added to the Sale by the Court and/or devise such other transaction as would satisfy such outstanding judgment(s) while maximizing the sale price of any assets to be sold."  Order Regarding Special Master at 3 (D.I. 277).

Pursuant to that directive, on August 9, 2021, the Special Master submitted a proposed order establishing procedures for the sale of the PDVH shares.  (D.I. 302).  After several rounds of revision based on input from the parties and the Court, a revised sale procedures order (D.I. 481) (the "**Sale Procedures Order**") was approved by the Court on October 7, 2022.

Pursuant to the Sale Procedures Order, the Court directed the Special Master and his Advisors "[w]ithin the period of six (6) months after the date of this Order . . . [to] solicit and attempt to gain clarity or guidance from [OFAC] of its support for (or non-opposition to), the

5

launch of the Marketing Process by the Special Master, the viability of the Marketing Process, and any additional feedback or guidance that the Special Master believes will more likely result in a value-maximizing Sale Transaction." Sale Procedures Order ¶ 3. Nothing in the Sale Procedures Order provides that the Sale Process Parties would be permitted to attend the Special Master's discussions with the U.S. Government, *see id.*, and in a status update submitted contemporaneously with the proposed sale procedures, the Special Master confirmed that he "does not intend to include the Venezuela Parties at such meeting," Status Update of October 4, 2022 at 2 n.2 (D.I. 480).

The Special Master and his advisors scheduled a meeting with the U.S. Government for January 12, 2023. On December 30, 2022, the Special Master received a phone call directly from counsel to the Venezuela Parties, who was seeking information concerning the upcoming meeting. The Special Master confirmed that the meeting was scheduled for January 12, 2023. When the Venezuela Parties' counsel asked whether he would be permitted to attend the meeting, the Special Master informed him that he would not.

On January 9, 2023—three days before the meeting with the U.S. Government was scheduled to take place and ten days after receiving a definitive answer from the Special Master— the Venezuela Parties filed the January 9 Motion seeking an order from the Court compelling their attendance at the meeting. (D.I. 499). ConocoPhillips, Crystallex and the Special Master submitted responses. (D.I. 502, 503, 504). On January 11, 2023, the Court issued an order denying the January 9 Motion, explaining that, among other things, the motion "was filed far too late" because "the Court has contemplated for many months that the Special Master would pursue an *ex parte* meeting with representatives of the United States Government, for reasons that are well-known to . . . the Venezuela Parties." Memorandum Order at 1 (D.I. 506). Consistent with the

6

Court's order, the Special Master and his Advisors met *ex parte* with U.S. Government on January 12, 2023.

The Venezuela Parties subsequently filed the instant Motion to disqualify the Special Master based on that meeting. (D.I. 509).

## LEGAL STANDARD

"In considering questions of disqualification in situations where a special master's impartiality is called into question, . . . the special master must hold himself to the same high standards applicable to the conduct of judges." *Jenkins v. Sterlacci*, 849 F.2d 627, 632 (D.C. Cir. 1988). Courts presume that "judicial [and] quasi-judicial officers" are "not biased," and accordingly, "it is the moving party's burden to show bias or some other reason for disqualification." *Cates v. Comm'r of Soc. Sec.*, 752 F. App'x 917, 923 (11th Cir. 2018) (citing *Schweiker v. McClure*, 456 U.S. 188, 196 (1982)); *see also Proctor v. Engstrom*, 95 F. App'x 192, 194 (8th Cir. 2004) ("[D]istrict judges are presumed impartial and [the] movant bears [a] substantial burden of proving otherwise."); *In re Hawsawi*, 955 F.3d 152, 158 (D.C. Cir. 2020) ("Disqualification is never taken lightly. In the wrong hands, a disqualification motion is a procedural weapon to . . . delay proceedings.").

## ARGUMENT

The Venezuela Parties have not met their "substantial burden" of proving disqualifying partiality. *Proctor*, 95 F. App'x at 194. For that reason and the others set forth below, the Court should deny the Motion.

7

### A. The Court expressly authorized the Special Master to engage in *ex parte* communications with the U.S. Government over the Venezuela Parties' objection and therefore has already considered—and rejected—the Motion

As the Venezuela Parties themselves acknowledge, the Court has already considered and rejected their position on the merits. The Venezuela Parties openly concede at the outset of their Motion that "the Court has already effectively rejected this objection in denying their Motion for an Order Directing the Special Master to Permit Counsel's Attendance at Meetings with the United States Government and Reply in support of the same." Motion at 1. The Special Master agrees.

The sole basis for disqualification cited by the Venezuela Parties in the Motion is the Special Master's *ex parte* meeting with the U.S. Government.[2] The Motion does not attempt to put forward any other evidence of disqualifying partiality. Accordingly, the Motion is nothing more than a rehashing of the same arguments that the Court considered—and rejected—in ruling on the January 9 Motion. Further, given that the Sale Procedures Order did not require the Special Master to include the Venezuela Parties in discussions with the U.S. Government while requiring consultation with the Venezuela Parties (and other Sale Process Parties) in other contexts, *see* Sale Procedures Order ¶¶ 3-4, the Motion effectively attempts to relitigate not only the January 9 Motion, but the Sale Procedures Order itself. The Court should not countenance the Venezuela Parties' attempt to take a second bite of the apple, which is emblematic of the obstructionist tactics that the Venezuela Parties have deployed throughout this litigation. Having already considered and rejected the Venezuela Parties' position, there is no reason for the Court to revisit it now. *See, e.g.*, *Gordon v. Monoson*, 239 F. App'x 710, 714 (3d Cir. 2007) (holding that "[b]ecause the

---

[2] The Venezuela Parties make passing reference to their contention that the Special Master's retention of Evercore also "creates a disqualifying appearance of partiality," while acknowledging that the Court "previously rejected [this] argument" as well. Motion at 1 n.2.

District Court had already rejected [movant's] arguments," the court "was not required to consider those arguments anew . . . where no new circumstances had arisen").³

### B. The Special Master's *ex parte* meeting with the U.S. Government was entirely proper and lawful

Even if the Court had not already considered and rejected the Venezuela Parties' position, it should do so now because the Special Master's *ex parte* meeting with the U.S. Government was entirely proper and lawful. While the Venezuela Parties assert without qualification that "[e]ngaging in *ex parte* communications is grounds for disqualification under 28 U.S.C. § 455(a) and § 455(b)(1)," it simply is not the case that *ex parte* communications—regardless of the nature, extent, or context of such communications—warrant disqualification. As the Special Master explained in his response to the January 9 Motion, Federal Rule of Civil Procedure 53 expressly authorizes courts to dictate "the circumstances, if any, in which the master may communicate ex parte with the court or a party." Fed. R. Civ. P. 53(b)(2)(B). The Court's authorization of the Special Master's *ex parte* communications with the U.S. Government fell squarely within the scope of that authority.⁴ Although the Venezuela Parties have argued that the authority provided by Rule 53(b)(2)(B) is limited only to "*ex parte* communications with *the court or a party*," January 9 Motion at 4-5, that hyper-literal reading of the Rule defies logic and is inconsistent with

---

³ To the extent that the Venezuela Parties argue that the occurrence of the Special Master's *ex parte* meeting with the U.S. Government provides grounds for the Court to reconsider their previously rejected arguments, *see* Motion at 1, the Court should reject that position. The January 9 Motion objected to the *ex parte* meeting. The occurrence of the very meeting that the Venezuela Parties already unsuccessfully objected to is not a "new circumstance[]" warranting reconsideration of previously raised (and rejected) arguments. *Monoson*, 239 F. App'x at 714.

⁴ It bears repeating here that the Federal Rules of Civil Procedure are law. *See* 28 U.S.C. § 2072(a). The Venezuela Parties' strained interpretation of 28 U.S.C. §§ 455(a) and 455(b)(1) as even prohibiting *ex parte* communications otherwise authorized pursuant to federal law puts those statutes in tension with other provisions of the U.S. Code and provides yet another reason to reject the Venezuela Parties' position.

9

...

how Rule 53 is applied in practice. The power to authorize *ex parte* communications with the court or the parties necessarily includes the lesser power to authorize *ex parte* communications with third parties who are not even parties to the litigation.[5] And when the circumstances of the case are such that *ex parte* communications between the Special Master and third parties are critical to the fulfillment of the Special Master's particular duties, courts have exercised that power by permitting such communications.[6]

### C. The Venezuela Parties' arguments, if accepted, would require not only disqualification of the Special Master, but also would bar the Court from appointing any special master to implement the sale process

The Court should deny the Motion because the Venezuela Parties' arguments, if accepted, would require not only disqualification of the Special Master (and possibly the Court itself), but would also prohibit the appointment of any special master to implement the sale process, thus frustrating the Court's judgment. Although the Venezuela Parties' purport to be concerned by the Special Master's "advocacy," it is clear that the ultimate basis of the Venezuela Parties' complaint is the sale process itself. *See* Motion at 6 ("Whether the Court should direct the Special Master to initiate the sale process is a critical, disputed issue in these proceedings."); *id.* at 9 ("Crystallex's attempt to enforce its judgment by moving forward with the sale process at this time is a hotly

---

[5] *See* Crystallex Response to January 9 Motion (D.I. 504) at 3.

[6] *See, e.g.*, *Thompson v. Enomoto*, 815 F.2d 1323, 1326 n.7 (9th Cir. 1987) (discussing district court's order authorizing special master "[t]o interview, on a confidential basis or otherwise, any person, including any correctional staff member or inmate, affected by the Consent Decree"); *Nat'l Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 539 (9th Cir. 1987) (discussing district court's order authorizing special master to "interview, on a confidential basis or otherwise, any . . . director, supervisor, or team member, or any person assisting in the implementation of the . . . program"); *In re Search Warrant dated Nov. 5, 2021*, 2021 WL 5845146, at *2 (S.D.N.Y. Dec. 8, 2021) (authorizing special master to confer with "additional professionals, support staff, or expert consultants"); *Maine People's All. v. Holtrachem Mfg. Co.*, 2009 WL 1844990, at *4-5 (D. Maine June 25, 2009) (denying motion "to prevent [special masters] from freely gathering relevant information from outside sources not subject to any Court Order on *ex parte* contacts").

disputed issue in this case."). But the satisfaction of Crystallex's judgment through the sale of PDVSA's shares of PDVH is *not* a disputed matter. The Court retained the Special Master to design the process for selling the PDVH shares or to devise a different transaction to satisfy the judgments. *See* Sale Procedures Order ¶ 2; Order Regarding Special Master at 3 (D.I. 277). There may only be a dispute as to the date of the launch. *See* Sale Procedures Order ¶ 3 ("The Court shall consider the Supplemental Report, all Launch Date Objections thereto, and any responses, after which the Court shall make a determination regarding when to trigger the Preparation Launch Date and subsequent Launch Date with or without a license from OFAC.").

If the Special Master cannot take such steps as are needed to inform the court about when to launch the sale process, then the Special Master plainly cannot carry out his mandate. *See* Memorandum Order at 2 (D.I. 258) (appointing the Special Master "to assist with the sale of PDVSA's shares of PDVH to satisfy Crystallex's judgment"); Order Regarding Special Master at 3 (D.I. 277) (directing the Special Master to "devise a plan for the sale of shares of PDVH as necessary to satisfy the outstanding judgment of Crystallex . . . while maximizing the sale price of any assets to be sold"). By the same token, every allegation of partiality that the Venezuela Parties make with regard to the Special Master's *ex parte* meeting with the U.S. Government could just as easily be said of anything done by the Special Master in furtherance of the sale process, as well as the Court's appointment of the Special Master to implement the sale process in the first instance. The consequence of the Venezuela Parties' arguments, if taken seriously, is that the Special Master cannot assist in the execution of the Court's judgment, which clearly must not be the proper outcome.

### D. The Motion's underlying premise that judicial officers may not advocate for the enforcement of judgments is incorrect as a matter of law

The Court should deny the Motion because its foundational premise is incorrect as a matter of law. The Venezuela Parties argue that there is no "exception for the prohibition on judicial advocacy for situations in which a Court is advocating for the enforcement of orders or judgments that it has issued" and accordingly conclude that "the Special Master must be disqualified because he has acted as an advocate." Motion at 9-11 (capitalization altered). But the Special Master's "advocacy" in this context, as the Court has observed, is only "for the enforcement of the Court's orders, consistent with his previous efforts . . . and as the Court expressly contemplated and authorized him to do in aid of allowing the Court to fulfill its judicial duties." Memorandum Order at 2 n.2 (D.I. 506). The Special Master's efforts in this regard are indisputably legitimate, as any actions taken by the Special Master in aid of execution are derivative of the Court's own "inherent power to enforce its judgments." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996). Indeed, it is black-letter law that "[t]he jurisdiction of a court is not exhausted by the rendition of judgment, but continues until that judgment shall be satisfied." *Cent. of Ga. R.R. Co. v. United States*, 410 F. Supp. 354, 357 (D.D.C. 1976) (quoting *Riggs v. Johnson Cnty.*, 73 U.S. (6 Wall.) 166 (1867)). As a consequence, "the court rendering judgment has [the] inherent power to enforce it and to make such orders and issue such process as may be necessary to make it effective." *Abbot Labs. v. Novopharm Ltd.*, 104 F.3d 1305, 1309 (Fed. Cir. 1997). The Special Master's efforts to enforce the Court's judgment—including by meeting *ex parte* with representatives of the U.S. Government—are therefore not disqualifying acts of judicial advocacy, but rather are acts in furtherance of the Court's own inherent powers. The Venezuela Parties' apparent belief that the Special Master must sit on the sidelines while the Court's judgment goes unexecuted for

years on end subverts these well-established principles and the power of the Court to enforce its judgment.

### E. The Venezuela Parties have failed to meet their substantial burden of establishing disqualifying partiality

The Court should deny the Motion because the Venezuela Parties have failed to meet their substantial burden of establishing disqualifying partiality. The Venezuela Parties' arguments for disqualification boil down to three simple points, none of which meet the substantial burden. First, the Venezuela Parties argue that the Special Master's *ex parte* communications themselves are "grounds for disqualification under 28 U.S.C. § 455(a) and § 455(b)(1)."[7] Motion at 6. As noted above, *ex parte* communications do not automatically constitute grounds for disqualification, and cannot provide grounds for disqualification where, as here, the communications were authorized by the Court pursuant to its lawful authority. To hold otherwise would, in effect, disqualify the Special Master merely for complying with an order of the Court. But as the Supreme Court has explained, "judicial rulings"—and, by extension, compliance with judicial rulings—"almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Rather, "[a]lmost invariably, they are proper grounds for appeal, not recusal" and "can only in the rarest circumstances evidence the degree of favoritism or antagonism required" for recusal. *Id.* The Venezuela Parties have not shown that the Special Master's conduct falls within the "rarest circumstances"—or even conduct in its vicinity—required to justify disqualification in this context.

---

[7] 28 U.S.C. § 455(a) provides that a judicial officer "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(b)(1) provides that a judicial officer "shall also disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

The Venezuela Parties next argue that the Special Master's *ex parte* communications require disqualification under 28 U.S.C. § 455(b)(1) because those communications "have given him 'personal knowledge of disputed evidentiary facts concerning the proceeding.'" Motion at 2-3 (quoting 28 U.S.C. § 455(b)(1)). Here, the Venezuela Parties allege that the relevant "disputed evidentiary facts" that the Special Master supposedly obtained "personal knowledge of" are the U.S. Government's position on the launch of the sale process and whether it will issue a license in connection therewith. *See id.* at 7. But the U.S. Government's policy positions towards the sale process are obviously not "disputed evidentiary facts" of the kind captured by § 455(b)(1). The parties have not litigated, and will not litigate, the issue of whether the U.S. Government supports the sale process. Ultimately, the U.S. Government may decide to support the sale of PDVSA's shares in PDVH or not. Moreover, "[k]nowledge gained from [a judicial officer's] discharge of his judicial function is not a ground for disqualification under 28 U.S.C. § 455(b)(1)." *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 447-48 (2d Cir. 2005). Here, to the extent the Special Master obtained any knowledge, it was "solely from his judicial duty" to meet with the U.S. Government pursuant to the Sale Procedures Order. *Id.* Such knowledge, to the extent it exists, therefore cannot support his disqualification as a matter of law. *See Ndoromo v. Barr*, 486 F. Supp. 3d 388, 394 (D.D.C. 2020) ("[F]acts learned by a judge in his judicial capacity cannot be the basis for disqualification.") (quoting *United States v. Patrick*, 542 F.2d 381, 390 (7th Cir. 1976)); *see also Omega*, 432 F.3d at 447-48 (declining to recuse magistrate judge who had personal knowledge of settlement agreement based on judicial duty to oversee settlement conference).

Even if the U.S. Government's position on the sale process were a "disputed evidentiary fact" for the purposes of § 455(b)(1), disqualification on that basis would still be unwarranted because the Special Master will disclose such facts to the parties and the Court in the Supplemental

14

Report, or it may be that the U.S. Government elects to make its own position clear directly, through a public release or filing with this Court. *See* Sale Procedures Order ¶ 3. To the extent that the Venezuela Parties are concerned that the Special Master might misrepresent the U.S. Government's views, that concern is baseless because the U.S. Government is free to clarify its position on the sale process at any time, or to decline to issue a license in connection with the sale. The Venezuela Parties therefore cannot show any prejudice resulting from the Special Master's knowledge of the U.S. Government's position, even if such knowledge fell within the ambit of § 455(b)(1).

Finally, the Venezuela Parties argue that the Special Master must be disqualified pursuant to 28 U.S.C. § 455(a) and the Due Process Clause of the Fifth Amendment to the U.S. Constitution because he advocated in support of a particular position. *See* Motion at 9-12. As explained above, the Special Master's "advocacy"—if carrying out an order amounts to advocacy at all—in this context is only advocacy for enforcement of the Court's judgment, which is entirely legitimate and not a basis for disqualification. Notwithstanding that it has not occurred, any advocacy for or against the pecuniary interest of a Sale Process Party, to the detriment of another, would be moot—the Court has already decided those substantive issues. The Special Master concerns himself only with execution of his duties and enforcement of the Court's judgment, pursuant to the express authority granted to him by the Court in its various orders entered to date.

Accordingly, each of the Venezuela Parties' arguments for disqualification of the Special Master fails, and the Venezuela Parties have failed to meet their substantial burden of demonstrating disqualifying partiality.[8]

---

[8] The Venezuela Parties' arguments under the Canons 2 and 3 of the Code of Conduct for United States Judges are duplicative of their statutory and constitutional arguments and need not be addressed separately.

**F. The Motion is untimely and the Venezuela Parties have shown substantial and strategic delay with respect to both the instant Motion and the January 9 Motion**

Motions for disqualification "must be brought 'at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such claim.'" *Omega*, 432 F.3d at 448. Rather than file the Motion at the "earliest possible moment," the Venezuela Parties have shown substantial and strategic delay. *Id.* The Court should accordingly deny the motion as untimely.

As the Venezuela Parties acknowledge, the Third Circuit has held that courts may consider the timeliness of a disqualification motion in deciding whether to grant it. *See* Motion at 8-9; *In re Kensington Int'l Ltd.*, 368 F.3d 289, 312 (3d Cir. 2004). Considerations of timeliness are important when assessing disqualification motions because, as the Third Circuit explained in *Kensington*, "the judicial process can hardly tolerate the practice of a litigant with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon the court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming." *Kensington*, 368 F.3d at 312. While the Motion devotes considerable space to defending the timeliness of the Venezuela Parties' request for disqualification, the Venezuela Parties' protestations on this front do not withstand even the slightest scrutiny.

It is not disputed that the Sale Procedures Order, for months before it was formally entered in October 2022, contemplated that the Special Master would solicit the U.S. Government's views on the sale process within the six-month period following entry of the Sale Procedures Order. Nothing in the Sale Procedures Order suggested or even implied that any of the Sale Process Parties would be permitted to attend the Special Master's discussions with the U.S. Government, and the Special Master made clear in the status report filed contemporaneously with the final proposed sale procedures that he "does not intend to include the Venezuela Parties at such meeting." Status Report of October 4, 2022 at 2 n.2. (D.I. 480). Thus, when the Special Master filed the Status

16

Report of October 4, 2022 (if not before), the Venezuela Parties knew that the Special Master planned to conduct an *ex parte* meeting with the U.S. Government relating to the sale process within the next six months. At any time from that point forward, the Venezuela Parties could have filed a motion or letter with the Court requesting that the Court mandate their attendance at the meeting. Yet the Venezuela Parties instead waited nearly three months to take such action—a fact that is difficult to square with the Venezuela Parties' professed belief that any such *ex parte* meeting would so severely prejudice their rights as to require disqualification.

By waiting until just three days before the long-planned *ex parte* meeting was scheduled to occur to file the January 9 Motion, and then waiting until after the meeting had already transpired to seek disqualification of the Special Master, the Venezuela Parties have shown inexcusable delay. If the Venezuela Parties truly believed that an *ex parte* meeting between the U.S. Government and the Special Master would be disqualifying, the Venezuela Parties should have said so upon entry of the Sale Procedures Order, if not sooner. Instead, the Venezuela Parties waited until the last minute to object to the U.S. Government meeting and now, having lost, seek to disqualify the Special Master based on nothing more than his attendance at that very meeting. This kind of gamesmanship is exactly what the Third Circuit pointed to in explaining why timeliness is a factor that informs whether to grant a disqualification motion, and provides a sufficient basis for denying the Motion. *See Cirba Inc. v. VMware, Inc.*, No. 19-742-LPS, 2022 WL 606655, at *5 (D. Del. Jan. 7, 2022) (holding that party's "concerns about [a special master's] impartiality" were "waived" because the party "substantially delayed" raising those concerns).

Indeed, one need look no further than the Venezuela Parties' prior stance on (and participation in) *ex parte* meetings to conclude that the Motion is a tactic intended to delay the sale process rather than a bona fide expression of concern. As the Venezuela Parties (and the Court)

are aware, January 12, 2023 was not the first time that the Special Master met *ex parte* with the U.S. Government. The Special Master has had several such meetings—with the knowledge of all of the Sale Process Parties, including the Venezuela Parties. While the Venezuela Parties desperately try to distinguish these prior *ex parte* meetings from the one they now allege is disqualifying, and even claim that they never consented to *ex parte* communications between the Special Master and the U.S. Government, *see* Motion at 7-8 & n.6, nothing should distract from the fact that the Venezuela Parties never once cited those prior meetings as grounds for disqualification. Not only that, but the Venezuela Parties have themselves sought to meet *ex parte* with the Special Master on numerous occasions, far beyond the consultation mandated by the Court's orders and certainly with more frequency than the other Sale Process Parties. Having participated in such extensive *ex parte* communications themselves, the Venezuela Parties should not be heard to disqualify the Special Master on the basis of an *ex parte* meeting with a third party that is not even party to this litigation.

## CONCLUSION

For the reasons set forth above, the Court should deny the Motion.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Ray C. Schrock, P.C. (Admitted *pro hac vice*)<br>Alexander W. Welch (Admitted *pro hac vice*)<br>Chase A. Bentley (Admitted *pro hac vice*)<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>Telephone: (212) 310-8000<br>Facsimile: (212) 310-8007<br>Ray.Schrock@weil.com<br>Alexander.Welch@weil.com<br>Chase.Bentley@weil.com<br><br>Dated: February 3, 2023 | POTTER ANDERSON & CORROON LLP<br><br>*/s/ Myron T. Steele*<br>Myron T. Steele (#00002)<br>Matthew F. Davis (#4696)<br>Bindu A. Palapura (#5370)<br>Abraham Schneider (#6696)<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>P.O. Box 951<br>Wilmington, DE 19801<br>Telephone: (302) 984-6000<br>Facsimile: (302) 658-1192<br>msteele@potteranderson.com<br>mdavis@potteranderson.com<br>bpalapura@potteranderson.com<br>aschneider@potteranderson.com<br><br>*Counsel for Special Master Robert B. Pincus* |