# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BOLIVARIAN REPUBLIC OF VENEZUELA, ) <br> ) <br> Defendant. ) <br> ) <br> _____ ) | Case No. 1:17-mc-00151-LPS |

## VENEZUELA PARTIES' REPLY IN SUPPORT OF THEIR MOTION TO DISQUALIFY THE SPECIAL MASTER

OF COUNSEL:
Nathan P. Eimer
Lisa S. Meyer
Daniel D. Birk
Gregory M. Schweizer
Emily E. Sullivan
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com
DBirk@eimerstahl.com
GSchweizer@eimerstahl.com
ESullivan@eimerstahl.com

OF COUNSEL:
Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

Kenneth J. Nachbar (#2067)
Alexandra M. Cumings (#6146)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@morrisnichols.com
ACumings@morrisnichols.com

*Attorneys for PDV Holding, Inc., and CITGO Petroleum Corporation*

Samuel Taylor Hirzel, II (#4415)
HEYMAN ENERIO GATTUSO & HIRZEL LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law

*Attorney for Petróleos de Venezuela, S.A.*

OF COUNSEL:
Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
Brendan B. Gants
Munger, Tolles & Olson LLP
601 Massachusetts Avenue NW
Suite 500 E
Washington, D.C. 20001
(202) 220-1100
Donald.Verrilli@mto.com

George M. Garvey
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com

A. Thompson Bayliss (#4379)
Stephen C. Childs (#6711)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807
(302) 778-1000
bayliss@abramsbayliss.com
childs@abramsbayliss.com

*Attorneys for Bolivarian Republic of Venezuela*

In the remarkable view proffered by the Special Master and Crystallex, it would be entirely proper for this Court to privately call OFAC and other agencies of the United States Government ("USG"), learn new, non-public information about their current position on the sale process, urge OFAC and the USG to support or authorize the process by changing their established foreign policy position, issue an opinion based on that phone call, and file an amicus brief in the Court of Appeals defending its purportedly "neutral interest" in ensuring that Crystallex is able to enforce its judgment. Such a position is legally baseless and profoundly dangerous. Established precedent on judicial ethics, due process, and the separation of powers make clear that neither the Court nor the judicial officer to whom the Court has delegated certain powers can engage in such conduct.

Because they cannot cite a single case or muster any colorable argument to avoid the consequences of the Special Master's conduct, the Special Master and Crystallex fall back on the untenable defenses that the Venezuela Parties' motion to disqualify is untimely or waived. Neither argument can apply to the Special Master's deeply improper advocacy to the USG at the January 12 Meeting, as his intention to engage in such advocacy had not even arguably been disclosed until less than 10 days before the meeting occurred. Nathan P. Eimer Decl. ¶¶ 9–10. And as to *ex parte* communications, the timeliness and waiver defenses lack any basis in fact or law. Neither the SPO nor any other order entered before January 2023 authorized the Special Master to engage in substantive *ex parte* communications with OFAC, and the Special Master did not finally decide to proceed *ex parte* until four business days before the Venezuela Parties filed their motion requesting to attend. *Id.* ¶ 9. The Venezuela Parties promptly objected when the Special Master finally decided to proceed in that improper way, and they gave the Special Master a simple solution that would have obviated the problem without delaying the meeting—namely, allowing the parties to observe but not participate, while restricting the Special Master to gathering information without

1

advocating in favor of the result desired by Crystallex. He rejected that solution, and the Venezuela Parties promptly moved to disqualify him after he engaged in the improper conduct.

**ARGUMENT**

**I.     The Venezuela Parties' Motion to Disqualify the Special Master Is Timely.**

The Special Master and Crystallex do not respond to the Venezuela Parties' explanation that untimeliness under § 455(a) requires significant and strategic delay, such as when a party "is aware of the grounds supporting recusal, but fails to act until the judge issues an adverse ruling." *In re Kensington Int'l Ltd.*, 368 F.3d 289, 314–15 (3d Cir. 2004). That is not the case here. The Venezuela Parties both timely tried to prevent the disqualifying conduct from occurring and moved to disqualify before the Special Master recommended whether a sale should proceed. And any timeliness requirement under § 455(b)—if there is one—would require a strategic delay of an "unexplained" and "unreasonable" length, neither of which exist here. *See Stone Hedge Props. v. Phoenix Cap. Corp.*, 71 F. App'x 138, 141 (3d Cir. 2003) (five-year delay held unreasonable).

Apart from having no legal support, the Special Master and Crystallex also mischaracterize the underlying facts. Until his January 3, 2023 phone call with counsel for the Venezuela Parties, the Special Master had never stated that he intended to press OFAC and the USG to change their established policy and authorize the sale process in support of Crystallex's position and in opposition to the position of the Venezuela Parties. Eimer Decl. ¶¶ 9–10. In fact, the Special Master explicitly told this Court and the parties before entry of the SPO that he did *not* intend to "lobb[y] on behalf of any particular party in this case." D.I. 356 ¶ 8.

And as to *ex parte* communications, the Venezuela Parties did not learn until January 3, 2023, that the Special Master had finally decided not to hold his substantive meeting *ex parte*. *See* D.I. 509 at 4; Eimer Decl. ¶ 9. The Special Master's Opposition incorrectly states that counsel for

the Venezuela Parties learned that they could not attend the meeting in a December 30, 2022 phone call. D.I. 512 at 6. There was no phone call on December 30, just an afternoon email exchange, and the Special Master did not state in his email that the Venezuela Parties could not attend the meeting. Eimer Decl. ¶¶ 7–8. He stated only (and for the first time) that the meeting was scheduled for January 12, 2023. It was not until the next business day, January 3, 2023, that the Special Master finally and definitively refused to allow the parties to attend the meeting. *Id.* ¶ 9.

Crystallex and the Special Master also incorrectly suggest that the record demonstrates the Venezuela Parties knew the Special Master was committed to excluding them from this meeting before it was scheduled. Crystallex points to the transcript from a November 2021 hearing where the parties discussed the Special Master potentially communicating with OFAC in the future, D.I. 513 at 8, but nowhere in that record do any of the parties, the Special Master, or the Court say that any of these communications would be *ex parte*. It is plainly wrong to say that a reference to a "conversation," D.I. 513 at 8 (citing D.I. 409 at 87:25–90:2), must be interpreted to mean a "conversation from which the parties will be excluded." And in pointing to the October 4, 2022 status report as evidence that the Special Master had concluded the Venezuela Parties would never attend his meetings with the USG, *see* D.I. 512 at 16–17; D.I. 513 at 9, Crystallex and the Special Master misleadingly omit that, while the Special Master stated that it was his present intention to exclude the Venezuela Parties from his meetings with OFAC, in the same sentence, he also stated that his "position may change in the future," D.I. 480 at 2 n.2, as the Venezuela Parties emphasized in their opening brief, D.I. 509 at 8. The Venezuela Parties were under no duty to guess that the Special Master had already resolved to advocate *ex parte* over their objections: "if there is to be a burden of disclosure, that burden is to be placed on the [judicial officer] to disclose possible grounds for disqualification." *Kensington*, 368 F.3d at 313.

3

Moreover, neither the Court's May 27, 2021 order appointing the Special Master nor the SPO itself authorize the Special Master to communicate with the USG *ex parte*, and certainly not for the purpose of advocating in support of the enforcement of Crystallex's judgment. *See* D.I. 277 ¶ 8; D.I. 481. The Special Master concedes as much, admitting that the SPO "is silent about the need to consult the Sale Process Parties regarding the conversations with" the USG. D.I. 512 at 2. The SPO cannot plausibly be read to have implicitly authorized private meetings between the Special Master and the USG over a party's objection, and the Venezuela Parties certainly cannot be faulted for reading it not to do such an obviously improper thing.

Had the Venezuela Parties moved to attend any meeting with OFAC in October 2022, the motion would have been denied as premature. No meeting had yet been scheduled, and the Venezuela Parties had not been definitively excluded from such meetings. The Venezuela Parties' argument under § 455(b) would have been especially unripe, because the Special Master would not have obtained extrajudicial knowledge requiring his disqualification until he met with OFAC on January 12. *See* 28 U.S.C. § 455(b)(1) (requiring disqualification where a judicial officer "*has* … personal knowledge of disputed evidentiary facts concerning the proceeding") (emphasis added).

Crystallex also makes the implausible and unsupported suggestion that, before the Special Master met with the USG on January 12, the Venezuela Parties should have made all arguments relevant to disqualification in its January 9 motion (or earlier), disclosed to Crystallex that they intended to move to disqualify the Special Master, and then sought mandamus relief from the Third Circuit. D.I. 513 at 7, 11. These imagined requirements do not exist, as is clear from Crystallex's failure to cite any authority for them.[1] The January 9 motion put the Special Master and this Court

---

[1] Faulting the Venezuela Parties for not seeking appellate relief is particularly disingenuous. Given that the Court denied the Venezuela Parties' motion on January 11, 2023, D.I. 506, and

4

on clear notice that the Special Master's proposed course of action violated 28 U.S.C. § 455 and judicial ethics—the implication that disqualification would be required if the Special Master followed through with his plan was obvious, and the suggestion that the Special Master or this Court would have done anything differently if the point were even more explicit is nonsensical. D.I. 499 at 1–2; *see also* D.I. 505 at 4, 7–8. Further, that the Venezuela Parties moved to attend the meeting before it occurred puts the lie to the tired refrain that the purpose of this motion is to cause delay: If the parties had been allowed to attend the January 12 Meeting as requested, there would have been no delay to the meeting or these proceedings. Tellingly, Special Master does not respond to the point that there was no prejudice from the timing of the motion to attend, D.I. 509 at 9, and Crystallex's only response is to mischaracterize the motion as one "to scuttle the meeting," when all the Venezuela Parties asked for was to let their counsel attend and observe, D.I. 513 at 2. Especially given that the Third Circuit is "not disposed to have the issue of timeliness trump … the principles of § 455(a)," these baseless arguments should be rejected. *Kensington*, 368 F.3d at 317.

## II. The Venezuela Parties Have Not Waived Their Objections.

The Special Master also offers a meritless waiver defense based on the Venezuela Parties' purportedly implicitly consenting to his prior *ex parte* communications. As an initial matter, this would not cure the Special Master's disqualifying advocacy, as he did not disclose his intention to take sides and advocate in favor of Crystallex enforcing its judgment until January 3, 2023. As to *ex parte* communications, the Third Circuit has held that the requirement for a judicial or quasi-judicial officer not to engage in *ex parte* communications can be dispensed with only upon "affirmative consent," and that such consent cannot be implied through waiver. *Kensington*, 368 F.3d

---

the Special Master's meeting with the USG occurred the next day, there was clearly no time for the Venezuela Parties to seek appellate relief and for the Third Circuit to rule.

5

at 311. The Special Master and Crystallex tellingly do not respond to the motion's showing that the Venezuela Parties never provided such affirmative consent. *See* D.I. 509 at 7. And even if the Venezuela Parties had consented to certain prior substantive *ex parte* communications—which they did not—consenting to any meetings in the *past* does not mean they forever waived their right to oppose any *future* meeting, particularly where they objected to the meeting before it happened.

The Special Master's prior communications with the USG occurred during a different stage of the proceedings, and for a different purpose. Never before had he held an *ex parte* meeting with the USG to gather facts that would form the basis of his recommendation to the Court as to whether or not to direct the launch of the sale process, and never before had he advocated that the USG should support the launch. *See* D.I. 505 at 6, 8. As the Special Master confirmed on December 30, 2022, "All communications [with the USG] thus far have been related to summarizing the status of the case and logistics for the meeting." Eimer Decl. Ex. A. Crystallex also contends the Venezuela Parties waived their objections by purportedly "consent[ing] to the" initial "appointment" of the Special Master, D.I. 513 at 11 & n.2, but that cannot possibly be true. At the time he was appointed in May 2021, the Special Master did not disclose (and, of course, the Venezuela Parties could not have known) that he would engage in *ex parte* advocacy to the USG in January 2023, and the Venezuela Parties did not consent to the appointment notwithstanding such a disclosure. *See* D.I. 278.

### III. The Court Did Not and Could Not Authorize the Special Master to Engage in *Ex Parte* Communications with the USG.

The Special Master and Crystallex argue, without support, that the Court has boundless authority under Fed. R. Civ. P. 53 and its inherent powers to allow *ex parte* communications with third parties in an effort to enforce court-issued judgments. Aside from being contrary to the plain text of Rule 53—as the Special Master and Crystallex concede, D.I. 512 at 9–10; D.I. 513 at 14–

6

15—a judge cannot authorize a Special Master to engage in *ex parte* communications the judge himself could not engage in without being subject to mandatory recusal. *See* Fed. R. Civ. P. 53(a)(2); Code of Conduct for United States Judges ("Code of Conduct"), Canon 3B(2), *in* 2 Guide to Judiciary Policy, Ch. 2. And whatever inherent authority the Court might possess, that authority "cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute," *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016)—such as § 455 and Rule 53.

In arguing that "[i]t is not a violation of judicial ethics or a ground for recusal for a court or an officer of the court to express to another government entity views on legal issues," Crystallex falsely equates the Special Master's off-the-record solicitation of information and affirmative advocacy in favor of one party with federal court opinions "certifying questions of state or territorial law to state or territorial courts" that "often discuss the legal issues." D.I. 513 at 18–19. Surely this Court could not phone the Delaware Supreme Court and urge it to issue an opinion agreeing with Crystallex's view of what the Delaware Code requires. Regardless, the question of OFAC's "support for (or non-opposition to), the launch" of the sale process, D.I. 481 ¶ 3, is not a *legal* matter, but a *factual* question of what OFAC intends to do. *Ex parte* fact-gathering is obviously improper, and trying to influence what those facts will be is even worse. As for Crystallex's invocation of Canon 3(A)(4)(c), the Venezuela Parties have explained why it is inapposite. *See* D.I. 505 at 5–6.

The cases cited by the Special Master, D.I. 512 at 10 n.6, further demonstrate that courts must appropriately limit special masters' ability to communicate with third parties *ex parte*, specifying what topics can be discussed and limiting how any information gathered can be used. *See NORML v. Mullen*, 828 F.2d 536, 539, 544–46 (9th Cir. 1987) (order specifying that the special master "shall not base any findings or legal conclusions in any subsequent [ ] hearing on statements received" from confidential interviews "or on statements received informally from citizens and

7

witnesses"); *In re Search Warrant Dated Nov. 5, 2021*, No. 21-msc-813 *et al.*, 2021 WL 5845146, at *2 (S.D.N.Y. Dec. 8, 2021) (permitting a special master to hire support staff to assist him, but not otherwise authorizing the special master to engage in *ex parte* communications); *Maine People's All. v. Holtrachem Mfg. Co.*, No. CV–00–69–B–W, 2009 WL 1844990, at *4 (D. Me. June 25, 2009) (permitting a panel of court-appointed experts to engage in *ex parte* communications where all parties were to have access to data considered by the panel and where the special master overseeing the panel's activities was to limit her *ex parte* "contacts to necessary logistical matters"); *see also Cobell v. Norton*, 334 F.3d 1128, 1143–44 (D.C. Cir. 2003) (disqualifying special master from carrying out judicial functions where, in the same proceeding, he had previously engaged in *ex parte* communications with USG officials in an administrative role).[2]

### IV. The Special Master Is Subject to Mandatory Disqualification.

The Special Master and Crystallex ignore the key reasons why the Special Master must be disqualified under § 455(a) and (b), the Code of Conduct, and the Due Process Clause. *See* D.I. 509 at 9–12. By advocating that the USG publicly support the launch of the sale process, the Special Master is not "taking a position on a fully litigated issue" to enforce the letter of this Court's order, D.I. 513 at 17, or merely "tak[ing] such steps as are needed to inform the court about when to launch the sale process," D.I. 512 at 11. He is engaging in advocacy regarding issues that are hotly disputed both before this Court and in OFAC's licensing process. With respect to those issues, the Court must remain *neutral* about which side is correct, and it certainly cannot *lobby* the USG to support one of the parties. Put differently, disqualifying *this* Special Master would not "prohibit the appointment of any special master," D.I. 512 at 11; it would just mean this Court

---

[2] The Special Master also cites *Thompson v. Enomoto*, *see* D.I. 512 at 10 n. 6, which does not address a master's authority to communicate *ex parte* at all. 815 F.2d 1323 (9th Cir. 1987).

would need to use one who does not engage in *ex parte* advocacy to the Executive Branch. Moreover, to encourage OFAC to issue new guidance, change its regulations, or issue a license is to encourage the Executive Branch to change its foreign policy. Thus, even if the Court had ordered the sales process to go forward, the Special Master could not advocate that the USG support the process or issue a license. *See United States v. Cooley*, 1 F.3d 985, 995 (10th Cir. 1993) (a judge's out-of-court statements advocating "to see his order … enforced" against protesters "unavoidably created the appearance" of partiality). The Special Master and Crystallex have not, and cannot, cite any authority allowing the Judiciary to urge the Executive Branch to change its policies in favor of one party. Nor do they respond to the authority cited in the opening motion that such conduct violates due process and the separation of powers. Whether or not the USG will in fact have the fortitude to "resist encroachments" of pressure from a judicial officer in this case, D.I. 513 at 19, the law bars such pressure from being brought to bear in the first place.

Though the Special Master admitted he was going to engage in advocacy, Eimer Decl. ¶ 9, which could only have been to obtain a green light to begin the sale process and allow the sale to close so Crystallex could be paid, *see* D.I. 503 at 3, Crystallex chastises the Venezuela Parties for not citing to evidence that the Special Master engaged in advocacy at the January 12 Meeting, D.I. 513 at 17. But, of course, the lack of evidence of what was said and done at the January 12 Meeting is precisely the problem with *ex parte* communications. *See Kensington*, 368 F.3d at 318. Moreover, the Special Master stated that he *would* engage in advocacy at the meeting, and his latest response never claims that he did not. The parties and the Court should take him at his word.

Further, by meeting with the USG *ex parte*, the Special Master has learned new, non-public information that will inform his recommendation as to whether and when the Court should direct the launch of the sale process, in violation of § 455(a) and (b). Despite Crystallex's hopes to the

contrary, D.I. 513 at 17–19, this issue is unresolved. The Court has not yet received evidence regarding whether OFAC will support or at least not oppose the sale process, what information could be shared with the market, or the likelihood that it would allow a sale to close, all of which may inform the judicial decision as to whether to launch the process. D.I. 443 at 17; D.I. 481 ¶ 3. Again, these are *factual* issues—not *legal* issues related to regulatory interpretation. Because the Venezuela Parties have been excluded from the Special Master's communications with the USG, "there [is] no way for them to adequately respond to or counter facts presented" about those "unrecorded meetings" in the Special Master's ultimate recommendation to the Court. *See Kensington*, 368 F.3d at 310–11. This harm to the adversarial process cannot be remedied by "disclos[ing] such facts to the parties and the court in the Supplemental Report" or by the possibility that the USG may, at some point, release a public statement, D.I. 512 at 14–15; D.I. 513 at 16. *See In re Brooks*, 383 F.3d 1036, 1046 (D.C. Cir. 2004) (a special master's impartiality would reasonably be questioned where "information that 'leaves no trace in the record'—such as [the special master's] *ex parte* contacts…— [ ] may reasonably be expected to color … his reports and recommendations to the district court" and cannot "be controverted or tested by the tools of the adversary process").

Finally, the Special Master incorrectly argues that information obtained while working as a judicial officer is not "personal knowledge" under § 455(b). The difference "between 'personal knowledge' and knowledge gained in a judicial capacity is that information from the latter source enters the record and may be controverted or tested by the tools of the adversary process. Knowledge received in other ways, which can be neither accurately stated nor fully tested, is 'extrajudicial.'" *Edgar v. K.L.*, 93 F.3d 256, 259 (7th Cir. 1996); *see also Liteky v. United States*, 510 U.S. 540, 550 (1994) ("interpreting the term 'personal' to create a complete dichotomy between court-acquired and extrinsically-acquired bias produces results so intolerable as to be absurd").

10

RESPECTFULLY SUBMITTED,

February 10, 2023

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| OF COUNSEL: | /s/ Kenneth J. Nachbar |
| Nathan P. Eimer | Kenneth J. Nachbar (#2067) |
| Lisa S. Meyer | Alexandra M. Cumings (#6146) |
| Daniel D. Birk | 1201 North Market Street |
| Gregory M. Schweizer | Wilmington, DE 19801 |
| Emily E. Sullivan | (302) 658-9200 |
| EIMER STAHL LLP | KNachbar@morrisnichols.com |
| 224 South Michigan Avenue | ACumings@morrisnichols.com |
| Suite 1100 |  |
| Chicago, IL 60604 | *Attorneys for PDV Holding, Inc., and* |
| (312) 660-7600 | *CITGO Petroleum Corporation* |
| NEimer@eimerstahl.com |  |
| LMeyer@eimerstahl.com |  |
| DBirk@eimerstahl.com |  |
| GSchweizer@eimerstahl.com |  |
| ESullivan@eimerstahl.com |  |
|  | HEYMAN ENERIO GATTUSO & HIRZEL LLP |
| OF COUNSEL: | /s/ Samuel Taylor Hirzel, II |
| Joseph D. Pizzurro | Samuel Taylor Hirzel, II (#4415) |
| Kevin A. Meehan | 300 Delaware Avenue, Suite 200 |
| Juan O. Perla | Wilmington, DE 19801 |
| CURTIS, MALLET-PREVOST, | (302) 472-7300 |
| COLT & MOSLE LLP | shirzel@hegh.law |
| 101 Park Avenue |  |
| New York, NY 10178 | *Attorney for Petróleos de Venezuela, S.A.* |
| (212) 696-6000 |  |
| jpizzurro@curtis.com |  |
| kmeehan@curtis.com |  |
| jperla@curtis.com |  |

| | |
|---|---|
| OF COUNSEL:<br>Donald B. Verrilli, Jr.<br>Elaine J. Goldenberg<br>Ginger D. Anders<br>Brendan B. Gants<br>Munger, Tolles & Olson LLP<br>601 Massachusetts Avenue NW<br>Suite 500 E<br>Washington, D.C. 20001<br>(202) 220-1100<br>Donald.Verrilli@mto.com<br><br>George M. Garvey<br>Munger, Tolles & Olson LLP<br>350 South Grand Avenue, 50th Floor<br>Los Angeles, CA 90071<br>(213) 683-9100<br>George.Garvey@mto.com | ABRAMS & BAYLISS LLP<br><br>*/s/ Stephen C. Childs*<br>A. Thompson Bayliss (#4379)<br>Stephen C. Childs (#6711)<br>20 Montchanin Road, Suite 200<br>Wilmington, DE 19807<br>(302) 778-1000<br>bayliss@abramsbayliss.com<br>childs@abramsbayliss.com<br><br>*Attorneys for Bolivarian Republic of Venezuela* |