


1313 North Market Street, Suite 1001 • Wilmington, DE 19801
Telephone 302.576.1600 • Facsimile 302.576.1100
www.ramllp.com

Garrett B. Moritz

Direct Dial 302.576.1604
gmoritz@ramllp.com

February 24, 2023

**VIA CM/ECF**

The Honorable Leonard P. Stark
U.S. District Court for the District of Delaware
844 N. King Street
Wilmington, Delaware 19801

Re: ***Crystallex International Corporation v. Bolivarian Republic of Venezuela et al.*, C.A. No. 17-mc-151-LPS**

Dear Judge Stark:

We write on behalf of ConocoPhillips in response to the Court's invitation in its Memorandum Order dated February 17, 2023 (D.I. 517). We begin by responding to the Court's specific questions, and then set out ConocoPhillips' position on the merits of the Disqualification Motion[1] generally.

* * *

*A. If the Venezuela Parties are correct that the Court must disqualify the Special Master, would the same reasoning require Judge Stark to recuse himself as well?*

ConocoPhillips does not believe that either the Court or the Special Master should be disqualified. But even if the Court were to conclude that the Special Master engaged in disqualifying conduct, that is not, without more, a basis for the Court to recuse, as it is not one of the statutory grounds for recusal in 28 U.S.C. § 455(a)-(b). Here, where the Court has overseen this matter for so long and the asserted basis for disqualification is not grounded in the governing statute, we respectfully refer the Court to its admonition in *St. Clair Intellectual Property Consultants Inc. v. Matsushita Electronic Industrial Co., Ltd.,* that "a judge's duty to not recuse

[1] D.I. 509. Capitalized terms not otherwise defined have the same meanings as in the Memorandum Order or the Sale Procedures Order, as applicable.

when he or she need not do so is as strong an imperative as a judge's duty to recuse in those limited circumstances in which recusal is warranted." 2011 WL 2160922, at *5 (D. Del. June 1, 2011) (Stark, J.).

The purpose of the Special Master's appointment was to "devise a plan for the sale of shares of PDVH as necessary to satisfy the outstanding judgment of Crystallex and the judgment of any other judgment creditor added to the Sale by the Court," D.I. 277 ¶ 2, and, in furtherance thereof, the Special Master was expressly authorized to "proactively engage with the Executive Branch." Sale Procedures Order ¶ 4. Accordingly, it is difficult to comprehend how the Special Master's conduct has been improper and would warrant his disqualification, much less that the Court would be tainted with any alleged impropriety. If the Court erred in charging the Special Master with those responsibilities in aid of enforcing the Court's judgment, the Venezuela Parties' complaints "are proper grounds for appeal, not for recusal." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Indeed, the Venezuela Parties have previously sought to appeal the rejection of their prior attempts to force recusal of the Special Master or his Advisors for engaging in purportedly disqualifying conduct. Those appeals have been dismissed for want of an appealable order.[2] The Venezuela Parties are free to appeal again at an appropriate time, but they are not free to collaterally attack the Court's decisions on the propriety of the Special Master's conduct by seeking to disqualify the Court instead.

*B. Are the Venezuela Parties moving to recuse Judge Stark?*

ConocoPhillips can answer only as to itself: It does not believe that the Court must (or should) recuse.

*C. Is any party seeking an evidentiary proceeding to resolve the fact dispute as to when the Venezuela Parties were told that the Special Master would not permit them to attend his meeting with OFAC (*compare *D.I. 515 at 1-3* with *D.I. 512 at 6) and, if not, how do you propose the court resolve this dispute?*

ConocoPhillips believes that the Disqualification Motion can and should be denied as a matter of law, making an evidentiary proceeding unnecessary. To the extent the Court concludes that an evidentiary proceeding is required, Fed. R. Civ. P. 43(c) provides the Court with ample discretion to consider affidavits, rather than take live testimony, on factual matters not already apparent from the record of the case. *See generally* 9A Wright & Miller, Fed. Prac. & Proc. § 2416 (3d ed. Apr. 2022 Update).

* * *

As the Court has made clear, this is an exceptional case. The Executive Branch ordinarily lacks the power to determine whether judgments of the Judicial Branch should be

---

[2] *See* D.I. 470 (copy of Third Circuit order dismissing attempted appeal from denial of conflict-of-interest disqualification objection for lack of appellate jurisdiction); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 24 F.4th 242 (3d Cir. 2022) (dismissing attempted appeal from earlier proposed sale procedures order for lack of appellate jurisdiction).

enforced. *See generally Muskrat v. United States*, 219 U.S. 346, 355 (1911) (unconstitutional for court judgment to be enforceable only upon subsequent administrative decision by executive branch) (citing *Gordon v. United States*, 117 U.S. 697 (1864)). But that rule gives way when the President has declared an emergency and invoked his powers under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1570 *et seq*., to block the property of a foreign sovereign. In such a case, the ability of courts to enforce their judgments is limited by the foreign policy and national security determinations of the Executive Branch, of which OFAC is the responsible department here. *See Bank Markazi v. Peterson*, 578 U.S. 212, 235 (2016) ("In pursuit of foreign policy objectives, the political branches have regulated specific foreign-state assets by, *inter alia*, blocking them or governing their availability for attachment. Such measures have never been rejected as invasions upon the Article III judicial power." (internal citations omitted)); *Dames & Moore v. Regan*, 453 U.S. 654, 672-74 & nn.5-6 (1981). Accordingly, OFAC's guidance on the forthcoming sale is of paramount importance.

Nonetheless, the President's invocation of the IEEPA to control implementation of outstanding and unpaid judgments creates an inherent tension between the Judicial Branch – which by constitutional design seeks enforcement of its judgments – and the Executive Branch, which has the statutory prerogative to advance the foreign policy and national security interests of the United States as it sees fit.

Federal Rule of Civil Procedure 53 provides the Court with a flexible tool to help it navigate those potential inter-branch tensions, including through permitting the appointment of a special master to perform duties outside the ordinary functions of a judicial officer. By way of illustration, the Advisory Committee Notes to Rule 53 state that "[t]he master's role in enforcement [of decrees] may extend to investigation in ways that are quite unlike the traditional role of judicial officers in an adversary system." 2003 Adv. Comm. Note to Fed. R. Civ. P. 53. Courts have accordingly held that post-trial special masters can be validly assigned "a hybrid role, functioning in part like an investigator and in part like a judicial officer." *See, e.g.*, *Ark. Tchr. Ret. Sys. v. State Street Bank & Trust Co.*, 2017 WL 1712516, at *2 (D. Mass. May 2, 2017); *In re Oil Spill by the Oil Rig "Deepwater Horizon"*, 2014 WL 12788985, at *5 (E.D. La. Apr. 29, 2014) ("In the post-trial context, it is not uncommon for special masters to perform functions that are quite unlike the traditional role of judicial officers in an adversary system. The Advisory Committee Note specifically mentions 'investigation' as an appropriate use of a post-trial master." (internal citations and quotations omitted)). Likewise, when the Court authorized the Special Master "to[] proactively engage with representatives from the Executive Branch . . . and to take all steps or actions reasonably in furtherance of the issuance of OFAC guidance and/or authorization," Sale Procedures Order ¶ 4, the Court providently exercised its discretion to assign the Special Master that responsibility, even though proactive engagement with the Executive Branch to seek guidance on judgment enforcement is not a traditional judicial function in an adversary system. Under the unique circumstances presented here, in order to enforce its judgments, the Court is effectively required to coordinate its activities with those of the Executive Branch. Appointing the Special Master to spearhead that coordination appropriately balances the role of the Court as a traditional judicial officer with the special needs of this case.

Courts have also recognized that when a special master is assigned a non-traditional post-trial investigative role, the special master often requires the ability to have *ex parte*

communications with relevant stakeholders. *See Ark. Tchr. Ret. Sys.*, 2017 WL 1712516 at *5 ("The Special Master's investigative role justifies his authority to communicate with the parties ex parte."); *see generally* Federal Judicial Center, *Special Masters' Incidence and Activity: Report to the Judicial Conference's Advisory Committee on Civil Rules and Its Subcommittee on Special Masters* at 8 (2000) ("[P]osttrial masters appointed to monitor compliance with an order almost always were expressly allowed, even instructed, to communicate ex parte with the parties."), *available at* https://www.uscourts.gov/sites/default/files/specmast.pdf. Facts learned in that capacity cannot amount to the type of "personal knowledge of disputed evidentiary facts" that would mandate recusal under 28 U.S.C. § 455(b)(1) – otherwise Rule 53's authorization for courts to appoint special masters to conduct investigative functions, which necessarily includes independent fact-gathering, would be entirely hollow. The same result should obtain for facts learned through the Special Master's proactive engagement with OFAC – those facts should properly be viewed as facts acquired as part of the Special Master's role, hence they are not "extra-judicial" and not a basis for recusal.[3]

None of the foregoing analysis changes because the Venezuela Parties characterize the Special Master's engagement with OFAC as "advocacy" or "lobbying" for the enforcement of the judgments rather than "engagement." In the first instance, it is as yet unknown whether such a characterization of the Special Master's discussions with OFAC is accurate. In any event, the issue of whether the judgments should be enforced is not in dispute, as this Court has long since resolved that issue against the Venezuela Parties. The pertinent issue that may be in actual dispute is whether a Launch Date should be set in light of OFAC's already expressed positions and any subsequent clarifications to OFAC's guidance, and there is no reason to question whether the Special Master – who is an arm of this Court – would distort any oral guidance provided by OFAC, or is otherwise somehow biased or prejudiced against the Venezuela Parties.[4]

As stated, this is an unusual case, and in the unique circumstances here, ConocoPhillips believes the Special Master's *ex parte* communications with OFAC are well within the discretion vested in the Special Master by the Court's orders and the authority granted by Rule 53 to charge the Special Master with fact-gathering functions. ConocoPhillips strongly disagrees with any implication that the Venezuela Parties have been prejudiced by their inability to attend the meeting with OFAC because the Special Master cannot be relied upon to report to the Court fairly and accurately. To the extent any of the Sale Process Parties (including, potentially,

---

[3] In any event, objections to the Special Master being charged with proactively engaging with OFAC needed to be raised before the Sale Procedures Order was entered, not months after.

[4] As noted by the Third Circuit, to date "the special master has recommended *against* commencing the marketing and bidding process until OFAC's position materially changes," *Crystallex*, 24 F.4th at 256 (emphasis in original), negating any inference that the Special Master is inherently biased in favor of setting a Launch Date. Although not an issue for the Disqualification Motion, that is also ConocoPhillips' position on the merits. Particularly in light of recent developments in Venezuela, launching the marketing and bidding process without new, written guidance from OFAC is unlikely to result in achieving meaningful interest from potential bidders or, ultimately, achieving full value at the time of the sale.

ConocoPhillips) disagrees with the Special Master's recommendation as to the Launch Date, the Court will undoubtedly provide those parties with a fair hearing consistent with due process.

We thank the Court for inviting our views in the *Crystallex* matter generally and with respect to the issue of the Disqualification Motion in particular.

Respectfully submitted,

*/s/ Garrett B. Moritz*

Garrett B. Moritz (#5646)

cc: All Counsel of Record
Robert Pincus, Special Master