

Travis S. Hunter
302-651-7564
hunter@rlf.com

February 24, 2023

**VIA ECF**

The Honorable Leonard P. Stark
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

      Re:  *Crystallex International Corporation v. Bolivarian Republic of Venezuela et al.*,
            C.A. No. 17-mc-151-LPS

Dear Judge Stark:

I write on behalf of Crystallex in response to this Court's order (D.I. 517) for additional briefing on certain questions regarding the motion to disqualify the Special Master (D.I. 509) filed by PDVSA, PDVH, and CITGO Petroleum, and joined by the Bolivarian Republic of Venezuela (collectively, "Venezuela").

    **A.  If the Venezuela Parties are correct that the Court must disqualify the Special Master, would the same reasoning require Judge Stark to recuse himself as well?**

No.  Venezuela's disqualification motion should be denied for the reasons previously identified by this Court, Crystallex, and the Special Master.  *See* D.I. 506, 512, 513.  But if the Special Master were to be disqualified, the same reasoning would not require recusal of Judge Stark, for multiple reasons.

*First*, unlike the Special Master, Judge Stark is not alleged to have engaged in "improper *ex parte* communication and advocacy in a January 12, 202[3], meeting with OFAC."  D.I. 509 ("Mot.") at 1.  Because this meeting is the sole "bas[is]" and "grounds" for Venezuela's request to disqualify the Special Master, *id.*, that request has no application to Judge Stark, who undisputedly did not attend the meeting or "advocate" for anyone.

It is well settled, moreover, that disqualification of a Special Master does not require recusal of the appointing judge.  *See Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 404 F. Supp. 3d 486, 516 (D. Mass. 2018) ("there does not appear to be any . . . reported case" in which "a judge's recusal has been required based on his interactions with a Master").  For example, Venezuela has relied heavily on a case in which the D.C. Circuit disqualified a Special Master for "ex parte communications" with parties that "would cause a reasonable person to doubt his ability to remain impartial."  *Cobell v. Norton*, 334 F.3d 1128, 1143-44 (D.C. Cir. 2003); *see* D.I. 515 at 8; D.I. 505 at 6; D.I. 499 at 6 (citing *Cobell*); *see also* D.I. 515 at 10; D.I. 409 at 137:17-23; D.I. 385 at 4 (citing *In re Brooks*, 383 F.3d 1036 (D.C. Cir. 2004), a later decision in the same case).

■ ■ ■

The Honorable Leonard P. Stark
February 24, 2023
Page 2

But despite holding in that case that "the district court abused its discretion in appointing [the] Special Master," *Cobell*, 334 F.3d at 1144, the D.C. Circuit rejected a further request "to recuse [the District] Judge" for interactions with the Special Master, *Brooks*, 383 F.3d at 1038. Unlike the Special Master he appointed, the district court judge in *Cobell* did not acquire "personal knowledge of disputed evidentiary facts," and so no "'reasonable and informed observer would question the judge's impartiality.'" *Id.* at 1043 (citing 28 U.S.C. § 455(a), (b)(1)); *cf.* D.I. 443 at 9 & n.9 (this Court rejecting Venezuela's prior argument based on *Brooks*). Venezuela's own authorities thus underscore the distinction between disqualifying a Special Master and the even more drastic step of recusing the appointing judge.

*Second*, any request to recuse Judge Stark would also be untimely and waived. Venezuela did not timely raise any such objection or suggest that the Special Master's conduct implicated the potential recusal of Judge Stark. Its January 2023 motion for leave to attend the OFAC meeting sought relief only as to the Special Master, and never suggested that allowing the meeting to proceed *ex parte* could be disqualifying for Judge Stark. D.I. 499 at 1, 9; *see also* Mot. 1, 12 (same). Had this objection been timely raised before the meeting, the Court could have made an informed decision whether to delay the meeting to avoid the significant prejudice and miscarriage of justice that could result from potential judicial recusal and reassignment of this complex case.

Moreover, Venezuela has waived any argument to recuse Judge Stark by its longtime acquiescence in his conduct of the sale preparation process. Throughout, Venezuela has raised repeated objections to the Special Master's activities while remaining mum on Judge Stark, all of which suggests that Venezuela is doing the maximum possible to throw sand in the gears of this process. In particular, the Court asked in November 2021 whether Venezuela's original disqualification argument (as to the Special Master's advisor Evercore) extended to Judge Stark: "If I were to sign the proposed sales procedure order that was presented to me, do I have a conflict of interest?" D.I. 409 at 141:3-5. Venezuela's counsel responded, "I have not been looking to disqualify Your Honor. I don't want to do this." *Id.* at 141:6-7. It is now much too late for Venezuela, having "'h[eld] back, while calling upon the court for hopefully favorable rulings,'" to change course and "'see[k] recusal when they are not forthcoming.'" *In re Kensington Int'l Ltd.*, 368 F.3d 289, 312 (3d Cir. 2004). Indeed, given Venezuela's years-long misuse of judicial process to frustrate the enforcement of a fully affirmed federal judgment, the disqualification of Judge Stark at this late date based on Venezuela's asserted grounds would be contrary to the ends of justice and would significantly undermine judicial independence.

      **B. Are the Venezuela Parties moving to recuse Judge Stark?**

Venezuela has not sought to recuse Judge Stark, and any attempt do so now would be unwarranted for the reasons stated in response to Question (A).

The Honorable Leonard P. Stark
February 24, 2023
Page 3

> **C. Is any party seeking an evidentiary proceeding to resolve the fact dispute as to when the Venezuela Parties were told that the Special Master would not permit them to attend his meeting with OFAC (*compare* D.I. 515 at 1-3 *with* D.I. 512 at 6) and, if not, how do you propose the court resolve this dispute?**

Crystallex does not seek, support, or see any need for an evidentiary hearing. To the extent that Venezuela has attempted to create any factual dispute, that dispute is immaterial to the fundamental issues here, and in any event the Court can resolve it without the need for live testimony.

Even if Venezuela were right about the specific date (December 30 or January 3) when the Special Master confirmed yet again that his January 2023 meeting with OFAC, like all the others, would proceed *ex parte*, D.I. 515 at 2-3, its objections would remain untimely because it has known since at least October that the meeting with OFAC would be *ex parte*. See D.I. 513 at 6-13. This Court recently explained that, "since it appointed the Special Master, by order dated May 27, 2021, *ex parte* interactions" with OFAC and others "have been expressly permitted and contemplated, and **consented to**" by Venezuela and other parties. D.I. 506 ¶ 3. The Special Master has never allowed third parties to attend any of his meetings with OFAC, and he confirmed in October 2022 that he "does not intend to include the Venezuela Parties" at future OFAC meetings. D.I. 480 at 2 n.2. The ever-present theoretical possibility that the Special Master's views "may change in the future" did not excuse Venezuela's obligation to timely object to the policy he articulated "at this time" (and has consistently followed since his appointment). *Id.* The Special Master also reported on December 28, 2022, that he would next meet with OFAC "in January," D.I. 496 at 2, and told Venezuela the specific date two days later, *see* D.I. 503 at 6; D.I. 516 ¶ 8. Yet Venezuela failed to object to any of the Special Master's *ex parte* contacts with OFAC until January 9, 2023, just three days before the next meeting. D.I. 499.

Regardless when exactly Venezuela confirmed that they could not attend this specific meeting, they undisputedly knew of and consented to a long string of the Special Master's *ex parte* contacts and communications and, more importantly, had agreed to a process relying on them. When asked specifically about this aspect of the process in November 2021, Venezuela took the position (as had Crystallex) that it would not be useful because it wouldn't "resolve" the formal legality of a sale under OFAC regulations. D.I. 409 at 87:25-90:2. But no one (not Crystallex, not Venezuela) took the position that the *ex parte* nature of the communications—which was glaringly obvious—would be unethical. *See* D.I. 513 at 8-9. In sum, Venezuela's motion "was filed far too late," no matter how the Court resolves any dispute over the four days between December 30 and January 3. D.I. 506 ¶ 1.

The Honorable Leonard P. Stark
February 24, 2023
Page 4

Respectfully submitted,

*/s/ Travis S. Hunter*

Travis S. Hunter (#5350)

CC: All counsel of record