# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
(302) 658-3989 FAX

Kenneth J. Nachbar
(302) 351-9294
(302) 425-3013 FAX
KNachbar@morrisnichols.com

February 24, 2023

**VIA ELECTRONIC FILING**

The Honorable Leonard P. Stark
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, D.C. 20439

      Re:    Crystallex International Corp. v. Bolivarian Republic of Venezuela
                 No. 1:17-mc-00151-LPS

Dear Judge Stark:

      I write on behalf of the Venezuela Parties in response to the Court's Memorandum Order (D.I. 517) requiring the Venezuela Parties, Crystallex, and the Special Master to submit additional briefing addressing certain questions in connection with the Venezuela Parties' motion to disqualify the Special Master (D.I. 509).

**Question A. If the Venezuela Parties are correct that the Court must disqualify the Special Master, would the same reasoning require Judge Stark to recuse himself as well?**

      Not on the facts as the Venezuela Parties currently understand them. In their motion to disqualify, the Venezuela Parties explained that the Special Master must be disqualified under 28 U.S.C. § 455 and the Due Process Clause because he personally engaged in *ex parte* fact gathering and personally advocated against the Venezuela Parties' interests on a disputed issue in the case at a January 12, 2023 meeting with representatives of the Executive Branch (the "January 12 Meeting"). *See* D.I. 509 at 2–3.

      As far as the Venezuela Parties are aware, the Court itself neither has had *ex parte* communications with representatives of the Executive Branch nor has had off-the-record discussions with the Special Master regarding what occurred at the January 12 Meeting. Absent such communications, recusal of the Court is not required under 28 U.S.C. § 455(b)(1), which provides that a justice, judge, or magistrate judge of the United States "shall also disqualify himself … [w]here he has … personal knowledge of disputed evidentiary facts concerning the

The Honorable Leonard P. Stark
February 24, 2023
Page 2

proceeding." *Cf. In re Kensington Int'l, Inc.*, 368 F.3d 289, 308 n.18 (3d Cir. 2004) (stating that "*off-the-record* discussions on substantive issues in chambers constitute 'personal' or 'extrajudicial' knowledge in the sense that the information conveyed to the judge leaves no trace in the record and cannot 'be controverted or tested by the tools of the adversary process'" (quoting *In re Edgar*, 93 F.3d 256, 259 (7th Cir. 1996) (per curiam)) (emphasis added)). Nor would the Court gain such "personal knowledge" if the Special Master were to reference facts purportedly learned in the *ex parte* January 12 Meeting in his forthcoming on-the-record recommendation, pursuant to the Sale Procedure Order, whether to launch the sale process. To be sure, it would be clear legal error for the Court to rely on a tainted recommendation in deciding whether to order the launch of the sale process. But the mere receipt of or reliance on a public filing containing such tainted information would not, by itself, give the Court personal knowledge of disputed evidentiary facts. *See In re Kempthorne*, 449 F.3d 1265, 1268, 1271–72 (D.C. Cir. 2006) (suppressing special master's tainted reports and striking them from the record without disqualifying district judge); *cf. United States v. Wecht*, 484 F.3d 194, 219 (3d Cir. 2007) (review of evidence subject to a suppression motion did not give district judge "'personal'" knowledge because the evidence was "available to all parties at the time the Judge reviewed them"); *Pittsburgh Press Club v. United States*, 579 F.2d 751, 760 (3d Cir. 1978) (remanding to district judge after reversing his reliance on inadmissible hearsay).[1]

      Nor, based on the facts as the Venezuela Parties currently understand them, is recusal of the Court required under 28 U.S.C. § 455(a), which provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," or under the Due Process Clause of the Fifth Amendment to the United States Constitution, which "mandate[s] neutrality in civil proceedings, both in reality and in appearance." *Guenther v. C.I.R.*, 939 F.2d 758, 760, 762 (9th Cir. 1991). On January 11, 2023, the Court authorized—for the first time and, in the Venezuela Parties' view, erroneously, *see* D.I. 509 at 7—the Special Master to engage in *ex parte* communications with the Executive Branch for the purpose of gathering factual information to be used in formulating a recommendation on a substantive issue. D.I. 506. Again, however, as far as the Venezuela Parties are aware, the Court did not personally communicate *ex parte* with the Executive Branch and has not received a private report regarding those communications. The Court thus is differently situated from the Special Master, whose impartiality would reasonably be questioned because the "information" he learned through his "*ex parte* contacts," which "leave[] no trace in the record, … may reasonably be expected to color … his reports and recommendations to the district court" and

---

[1] The Venezuela Parties do not address here whether this Court's disqualification would be required *if* the Special Master were to share information about the *ex parte* January 12 meeting through an *off-the-record* discussion with the Court, because the Venezuela Parties are not aware of any such off-the-record discussions, and the details concerning any such hypothetical discussions may be relevant to the analysis. *See Liteky v. United States*, 510 U.S. 540, 548 (1994) (explaining that § 455 "placed the obligation to identify the existence of … grounds [for recusal] upon the judge himself, rather than requiring recusal only in response to a party affidavit").

The Honorable Leonard P. Stark
February 24, 2023
Page 3

cannot "be controverted or tested by the tools of the adversary process," *In re Brooks*, 383 F.3d 1036, 1046 (D.C. Cir. 2004). *Cf. Wecht*, 484 F.3d at 219 (even if district judge committed appealable error in looking at certain exhibits in connection with a suppression motion, any such error did not, by itself, "create an appearance of bias").[2]

This Court is also unlike the Special Master because the Court did not personally advocate against the interests of the Venezuela Parties at the January 12 Meeting on the disputed issue of whether the Executive Branch should support (or at least not oppose) the sale process. And given the gravity of a contrary inference, the Venezuela Parties are assuming that footnote 2 to the January 11 Order was not intended to order, authorize, or condone the Special Master's advocacy as he actually intended and as it actually occurred, or to convey that the Court wants OFAC to authorize the sale process or to grant (or to state that it will grant) Crystallex a license to close a sale. If the Court did so intend, then the reasoning in the Venezuela Parties' motion would, regrettably, apply to the Court as well, because in such a case, the Court would not be or appear impartial. *See In re Kensington*, 368 F.3d at 301 (explaining that "[t]he test for recusal under § 455(a) is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned"). But the Venezuela Parties believe that, respectfully, the Court may have either misapprehended the Special Master's statements, *see* D.I. 506 at 2 n.2 (stating that "[t]he Venezuela Parties take issue with what *they characterize* as the Special Master's intention to engage in ex parte 'advocacy' before government officials" (emphasis added)), or believed the Special Master intended to engage with the Executive Branch in a manner that was "consistent with his previous efforts," *id*. In those "previous efforts," the Special Master merely "provided" the Executive Branch "with an overview of the … process," invited "input," and "solicited … feedback," D.I. 348 ¶¶ 39–41 (public version of D.I. 303). Indeed, in 2021, the Special Master promised this Court and the parties: "I have not proposed to, nor have I ever, lobbied on behalf of any particular party in this case." D.I. 356 ¶ 8. While the Special Master suddenly abandoned that promise in January 2023, this Court appears to have understandably (albeit wrongly) assumed that he would continue to abide by it.

At this point, however, there is no mistaking the Special Master's statements or conduct. In their motion to disqualify, which was filed after the January 11 Order, the Venezuela Parties explained that "the Special Master's expressed intent to advocate to the United States Government to revise its foreign policy positions and authorize a sale process designed to satisfy Crystallex's judgment has created (at the very least) an appearance of partiality." D.I. 509 at 3. In his response, the Special Master never denied that this was his intent or that he and his advisors did in fact

---

[2] As with their § 455(b)(1) analysis, the Venezuela Parties do not address here whether this Court's disqualification would be required under § 455(a) or due process if the Court received information about the January 12 meeting off the record. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 544 n.10 (3d Cir. 2017) ("[W]henever a judge's impartiality might reasonably be questioned in a proceeding, 28 U.S.C. § 455(a) commands the judge to disqualify himself *sua sponte* in that proceeding." (internal quotation marks omitted)).

The Honorable Leonard P. Stark
February 24, 2023
Page 4

advocate at the January 12 Meeting that OFAC should support, or at least not oppose, the sale process. To the contrary, he made quite clear that he had no patience for "[t]he Venezuela Parties' apparent belief that the Special Master must sit on the sidelines while the Court's judgment goes unexecuted for years on end." D.I. 512 at 12–13. Such language is expected in a filing from Crystallex. It is startling in one from an officer of this Court, who should not be taking sides between Crystallex and the Venezuela Parties on the hotly disputed issue as to whether the Executive Branch should support (or not oppose) the sale process.

**Question B. Are the Venezuela Parties moving to recuse Judge Stark?**

The Venezuela Parties are not currently aware of a basis to move to recuse Your Honor at this time given the factual record and assumptions discussed above. That position may change if, based on future events or further disclosure or clarification, it becomes clear that disqualification is required under applicable law.

**Question C. Is any party seeking an evidentiary proceeding to resolve the fact dispute as to when the Venezuela Parties were told that the Special Master would not permit them to attend his meeting with OFAC (*compare* D.I. 515 at 1-3 *with* D.I. 512 at 6) and, if not, how do you propose the Court resolve this dispute?**

The Special Master's unsubstantiated assertion that he told counsel for the Venezuela Parties on December 30, 2022, that he would not permit them to attend his meeting with OFAC is clearly mistaken. In their reply brief, the Venezuela Parties submitted an affidavit and accompanying evidence showing that the Special Master did not tell counsel for the Venezuela Parties that they could not attend the meeting until the afternoon of January 3, 2023. *See* D.I. 516 ¶ 9 ("On January 3, 2023, the next business day, at 5:26 p.m. EST, I spoke with the Special Master by telephone and requested that the Venezuela Parties' counsel be permitted to attend his January 12 meeting with OFAC."). The Special Master did not support his mistaken assertion with an affidavit or other evidence, nor do the Venezuela Parties believe he can. In further support of their position, the Venezuela Parties submit the attached Supplemental Declaration of Nathan P. Eimer and the Declaration of Thomas Paukovitz in Support of the Venezuela Parties' Supplemental Letter Brief in Support of Their Motion to Disqualify the Special Master. These declarations include Mr. Eimer's office and cell phone records, which further demonstrate that Mr. Eimer did not speak with the Special Master by phone on December 30, 2022, but he did speak with him by phone on January 3, 2023.

In light of the previously submitted evidence, the phone records, and the lack of any contrary evidence submitted by the Special Master, the Venezuela Parties believe that there can be no genuine factual issue on this question. Accordingly, the Court can resolve the dispute without an evidentiary hearing. If the Special Master does submit or point to evidence in the record that he argues creates a material factual issue, however, then the Venezuela Parties respectfully request an evidentiary hearing.

The Honorable Leonard P. Stark
February 24, 2023
Page 5

   To be clear, whether the Special Master refused the request on the afternoon of Friday, December 30, 2022, or the next business day, Tuesday, January 3, 2023, does not materially affect the timeliness analysis. As the Venezuela Parties explained in more detail in their motion to disqualify and reply in support, taking even ten days (rather than six) to prepare, coordinate among multiple parties, and file a challenge to a planned *ex parte* advocacy meeting before it occurred is not a ground for untimeliness under governing precedent. Moreover, some of the grounds for disqualification did not arise until the meeting occurred, and the timing of the Venezuela Parties' request to observe but not participate in the January 12 Meeting would not have disrupted the meeting or caused any other cognizable prejudice. *See* D.I. 509 at 8–9; D.I. 515 at 1–5.

              Respectfully submitted,

              */s/ Kenneth J. Nachbar*
              Kenneth J. Nachbar (#2067)

cc: All Counsel of Record (Via E-Filing)