ROBERT B. PINCUS in his capacity as
Special Master for the United States District Court for the District of Delaware
PO Box 4570
Wilmington, DE 19807

February 24, 2023

**BY HAND DELIVERY & CM/ECF**

The Honorable Leonard P. Stark
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801-3570

Re:   *Crystallex International Corp. v. Bolivarian Republic of Venezuela,*
      D. Del. C.A. No. 1:17-mc-00151-LPS; Memorandum Order [D.I. 517]

Dear Judge Stark:

I hereby submit this letter brief in response to the questions set forth in your Memorandum Order of February 17, 2023 [D.I. 517].[1]

**1.   If the Venezuela Parties are correct that the Court must disqualify the Special Master, would the same reasoning require Judge Stark to recuse himself as well?**

If the Venezuela Parties are correct that the Court must disqualify the Special Master, then presumably the same flawed reasoning would require Judge Stark to recuse himself as well.

The underlying premise of the Venezuela Parties' Motion to Disqualify the Special Master [D.I. 509] (the "**Disqualification Motion**") and Reply in Support of the Disqualification Motion [D.I. 515] (the "**Reply**") is that the Special Master's efforts to enforce Crystallex's judgment through the sale process is disqualifying "advocacy" in favor of one party. The Venezuela Parties fail to consider that the context for this entire proceeding is enforcement of a judgment—the merits have already been decided. The Special Master was appointed to enforce the Court's judgment, and this entire inquiry is misplaced when any reasonable party properly looks at the Court's actions in that context. It is clear that the Venezuela Parties will do anything to delay enforcement, and it is in that vein in which the Venezuela Parties have filed all of these motions—to delay enforcement of a Court-ordered judgment that has already been decided on the merits. If it is disqualifying for the Special Master to take a position on whether a court's judgment should be enforced on its terms, then the Venezuela Parties appear to be arguing that it was disqualifying for the Court to appoint the Special Master for that purpose in the first place. Similarly, if the Special Master's *ex parte* meeting with representatives of the U.S. Government created a disqualifying appearance of partiality in violation of 28 U.S.C. § 455(a), then the Court's express authorization of that meeting created the same appearance of partiality and is therefore likewise disqualifying. For the avoidance

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Procedures Order [D.I. 481].

of doubt, it cannot be overstated that the Special Master vehemently disagrees with the absurd outcome and positions espoused by the Venezuela Parties.

Although the Venezuela Parties putatively seek to disqualify the Special Master based on his *ex parte* meeting with representatives of the U.S. Government, the principal reason why such meeting was objectionable, per the Venezuela Parties, is that the execution of Crystallex's judgment through the sale process remains a contested issue. *See, e.g.*, Disqualification Motion at 6 ("Whether the Court should direct the Special Master to initiate the sale process is a critical, disputed issue in these proceedings."); *id.* at 9 ("Crystallex's attempt to enforce its judgment by moving forward with the sale process at this time is a hotly disputed issue in this case."); Reply at 9 ("By advocating that the USG publicly support the launch of the sale process, the Special Master . . . is engaging in advocacy regarding issues that are hotly disputed before this Court."). The Venezuela Parties thus contend that because the Venezuela Parties oppose the enforcement of Crystallex's judgment through the sale process, the Special Master's alleged actions in furtherance of the sale process are disqualifying. *See* Disqualification Motion at 12 (arguing that "[i]t is simply not proper under our system of government for a federal judicial or quasi-judicial officer to . . . assist a private litigant in executing on its judgment").

That view is simply misguided and factually inaccurate. It also ignores the fact that the Sale Procedures Order was litigated, briefed, and entered—it is no longer a disputed issue. What remains is its due enforcement. The Court appointed the Special Master "to assist with the sale of PDVSA's shares of PDVH to satisfy Crystallex's judgment," Memorandum Order at 2 (D.I. 258), and specifically directed the Special Master to "devise a plan for the sale of shares of PDVH as necessary to satisfy the outstanding judgment of Crystallex," Order Regarding Special Master at 3 (D.I. 277). The Special Master's mandate is therefore—indisputably—to assist the Court with enforcing its judgment. Disqualification Motion at 12.

The Venezuela Parties further argue that the Special Master "must be disqualified" because the Special Master's "ex parte communications with the U.S. Government have created an appearance of partiality in contravention of 28 U.S.C. § 455(a)." Disqualification Motion at 2. First, the Venezuela Parties know that the Special Master has contacted the U.S. Government numerous times throughout these proceedings—the process contemplated by the Sale Procedures Order was designed, with input from the Venezuela Parties, to expressly provide for direct communication to the U.S. Government by the Special Master. To now complain about the same actions it has consented to throughout this process is to come before the Court with unclean hands and is simply inappropriate. Moreover, it is untenable to hold, on the one hand, that the Special Master's *ex parte* communications evidence disqualifying partiality, but on the other, that the Court's express authorization of those very same *ex parte* communications do not even "create[] an appearance of partiality." Disqualification Motion at 3. That is especially so in light of the Venezuela Parties' suggestion that the Court had no authority to permit those communications because "a judge cannot authorize a Special Master to engage in *ex parte* communications the judge himself could not engage in without being subject to mandatory recusal." Reply at 7. The only conclusion that can be drawn from the Venezuela Parties' (mistaken) belief that the Court had no power to authorize the Special Master's *ex parte* communications is that the Court has engaged in some disqualifying conduct.

The Honorable Leonard P. Stark
February 24, 2023
Page 3

2. **Are the Venezuela Parties moving to recuse Judge Stark?**

This question is addressed to the Venezuela Parties and need not be answered by the Special Master.

3. **Is any party seeking an evidentiary proceeding to resolve the fact dispute as to when the Venezuela Parties were told that the Special Master would not permit them to attend his meeting with OFAC (*compare* D.I. 515 at 1-3 *with* D.I. 512 at 6) and, if not, how do you propose the court resolve this dispute?**

The Special Master is not seeking an evidentiary proceeding to resolve any fact dispute. The timeliness of the Venezuela Parties' motion to disqualify the Special Master does not turn on whether the Venezuela Parties learned of their exclusion from the meeting on December 30, 2022, as the Special Master claims, or four days later, on January 3, 2023, as the Venezuela Parties claim. The motion was untimely in any event because the undisputed facts already in the record establish that the Venezuela Parties knew by October 4, 2022—well before December 30, 2022—that the Special Master planned to meet *ex parte* with the U.S. Government. The motion is untimely and the Venezuela Parties come before the Court with unclean hands given their longstanding knowledge of the Special Master's *ex parte* communications with the U.S. Government and participation in the design of the process that contemplated such communications.

It should be uncontroverted that "[a] motion to disqualify must be made at *the earliest possible moment* after obtaining information of possible bias." *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 183 (2d Cir. 1991) (emphasis added). Here, there can be no reasonable dispute as to whether the Venezuela Parties failed to bring their motion to disqualify the Special Master at the "earliest possible moment after obtaining information of possible bias," making the Venezuela Parties' motion untimely. *Id.*

First, the final proposed Sale Procedures Order filed by the Special Master on October 4, 2022 provided that "[w]ithin the period of six (6) months after the date of this Order . . . the Special Master and his Advisors shall solicit and attempt to gain clarity or guidance from [OFAC] of its support for (or non-opposition to), the launch of the Marketing Process by the Special Master, the viability of the Marketing Process, and any additional feedback or guidance that the Special Master believes will more likely result in a value-maximizing Sale Transaction." Sale Procedures Order ¶ 3 [D.I. 481]. By its plain terms, the Sale Procedures Order thus contemplated that the Special Master and his Advisors would engage in direct communications with the U.S. Government— nowhere does the Sale Procedures Order indicate or imply that the Venezuela Parties, or any other Sale Process Party, need be included. And to the extent that there was any doubt about whether those discussions would be *ex parte*, the Special Master dispelled that doubt in the status update filed contemporaneously with the procedures, which stated plainly that the Special Master "does not intend to include the Venezuela Parties at such meeting." Status Update at 2 n.2 [D.I. 480].

The evidence already in the record thus decisively establishes that the Venezuela Parties knew by no later than October 4, 2022 that the Special Master imminently planned to hold an *ex parte* meeting with the U.S. Government. Yet the Venezuela Parties took no action whatsoever with respect to that meeting, notwithstanding their professed belief that if the Special Master were

The Honorable Leonard P. Stark
February 24, 2023
Page 4

to conduct the meeting *ex parte*—as the Special Master publicly declared was his intention—then the Special Master would need to be disqualified. The Court therefore need look no further than the facts already in the record to hold that the motion is untimely.[2]

The Venezuela Parties insist that their motion was timely because the Special Master indicated in the October 4, 2022 status update that his position on whether the meeting would be conducted *ex parte* "may change in the future." *Id.* But it is a truism that the Special Master could change his mind as to whether or not to conduct the meeting *ex parte*. That the Special Master acknowledged the mere possibility that the Venezuela Parties *might* be included at the meeting, while stating unambiguously that the Special Master "does not intend to include the Venezuela Parties at such meeting," does not render the Venezuela Parties' motion timely. If the Venezuela Parties truly believed that it would be disqualifying for the Special Master to follow through on his expressed intention to meet with the U.S. Government *ex parte*, they easily could have filed a letter or objection voicing that concern shortly after the status report was filed. Instead the Venezuela Parties sat back and did nothing for nearly fourteen weeks, knowing full well the entire time that the Special Master planned to imminently engage in conduct that they now allege is disqualifying. Far from filing their motion "at the earliest possible moment after obtaining information of possible bias," *Yonkers*, 946 F.2d at 183, the Venezuela Parties waited until the last possible moment—after the meeting had already occurred—to seek the extreme remedy of disqualification. The Court should not reward such inexcusable and strategic delay. *See In re Kensington Int'l Ltd.*, 368 F.3d 289, 312 (3rd Cir. 2004) ("[T]he judicial process can hardly tolerate the practice of a litigant with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon the court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming.").

The Venezuela Parties' motion to disqualify the Special Master is even more untimely in light of the record of these proceedings, which are replete with instances in which the Special Master communicated *ex parte* with the U.S. Government. *See, e.g.*, Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order ¶¶ 39-40 (D.I. 348) (describing three *ex parte* meetings between the Special Master and the U.S. Government held in the summer of 2021). Until the Venezuela Parties moved to disqualify the Special Master on January 20, 2023, the Venezuela Parties never once suggested that any *ex parte* communications between the Special Master and the U.S. Government were disqualifying. While the Venezuela Parties misleadingly argue that their motion to disqualify is nevertheless timely because the Special Master "did not disclose his intention to take sides and advocate in favor of Crystallex enforcing its judgment until January 3, 2023," Reply at 5, that claim ignores the plain import of the Special Master's prior disclosures concerning his *ex parte* meetings with the U.S. Government, in which the Special

---

[2] It should also be noted that the Venezuela Parties acknowledge that they learned on December 28, 2022 that the Special Master had scheduled a meeting with the U.S. Government to take place in January. *See* Disqualification Motion at 3-4. Given that the Special Master did not involve the Venezuela Parties in the scheduling of that meeting, and given that the Special Master had previously met with the U.S. Government *ex parte*, it should have been obvious to the Venezuela Parties by no later than December 28 that the Special Master's position had not changed since the October 4 status report.

The Honorable Leonard P. Stark
February 24, 2023
Page 5

Master explained that he discussed "the timeline and mechanics *for implementing the Proposed Sale Procedures Order*" with representatives of the U.S. Government, Special Master Report of October 2021 at 3 (D.I. 381) (emphasis added). The implementation of the Sale Procedures Order can only be accomplished through the initiation and consummation of the sale process contemplated thereby. The Venezuela Parties have therefore long known that the Special Master's *ex parte* meetings with the U.S. Government were aimed towards the eventual launch of the sale process, notwithstanding their implausible protest to the contrary. As noted, these proceedings are in the post-judgment enforcement stage, and the Special Master was expressly appointed to for the purpose of enforcing the Court's judgment. It should have long been obvious to the Venezuela Parties that the Special Master's conduct—including his *ex parte* meetings with the U.S. Government—were directed towards this end. That conduct is not disqualifying merely because the Venezuela Parties do not wish for the Court's judgment to be enforced.

In light of the undisputed facts already in the record, the Court does not need to hold an evidentiary hearing to determine precisely when the Venezuela Parties "finally and definitively" learned of their exclusion from the Special Master's meeting with the U.S. Government. Reply at 3. The Venezuela Parties knew that the Special Master planned to meet *ex parte* with the U.S. Government no later than October 4, 2022. And well before even then, the Venezuela Parties knew that the Special Master had met with representatives of the U.S. Government *ex parte* on several occasions regarding the implementation of the sale process that the Venezuela Parties oppose. The Venezuela Parties' motion is therefore untimely and brought with unclean hands, regardless of how the Court resolves the fact dispute between the Special Master and the Venezuela Parties. Accordingly, the Special Master respectfully submits that the Court should deny the Disqualification Motion without conducting an evidentiary hearing.[3]

        Respectfully Yours,

        */s/ Robert B. Pincus*

        Robert B. Pincus, in my capacity as Special Master for the United States District Court for the District of Delaware

cc: All Counsel of Record (via CM/ECF and E-Mail)

---

[3] Of course, if for whatever reason the Court decides that an evidentiary hearing is necessary or appropriate, the Special Master will gladly appear before the Court and submit his testimony before the Court and otherwise submit to any evidentiary proceedings and discovery that the Court deems appropriate.