RICHARDS LAYTON & FINGER

Travis S. Hunter
302-651-7564
hunter@rlf.com

March 3, 2023

**VIA ECF**

The Honorable Leonard P. Stark
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

   Re: *Crystallex International Corporation v. Bolivarian Republic of Venezuela et al.*,
     C.A. No. 17-mc-151-LPS

Dear Judge Stark:

I write on behalf of Crystallex in response to the opening letter briefs (D.I. 522, 524, 526) filed pursuant to this Court's order (D.I. 517) for additional briefing on certain questions regarding the motion to disqualify the Special Master (D.I. 509) filed by PDVSA, PDVH, and CITGO Petroleum, and joined by the Bolivarian Republic of Venezuela (collectively, "Venezuela").

As the letter briefs show, no party seeks to recuse Your Honor.  The Special Master suggests that Venezuela's disqualification arguments "presumably" would also require recusal of Your Honor, but that supposition is based on his reading of what Venezuela "appear[s]" to be arguing, D.I. 526 at 1—which Venezuela has now expressly disavowed.  Venezuela concedes that it is "not currently aware of a basis to move to recuse Your Honor" because Your Honor is "unlike" and "differently situated from the Special Master."  D.I. 524 at 2-4.  On this, Crystallex agrees.

Nevertheless, Venezuela leaves no doubt that it will seize on any opportunity to disqualify Your Honor and send these long-running enforcement proceedings back to square one.  The implicit threat is of a piece with Venezuela's well-documented history of abusing judicial process and obstructing the enforcement of a fully affirmed federal judgment.  It is highly ironic—and inappropriate—that a recalcitrant judgment debtor whose actions continue to be an affront to our courts would use the canons of judicial ethics to advance its campaign to avoid its obligations.

Venezuela asserts that 28 U.S.C. § 455(b)(1) might require recusal if Your Honor "had off-the-record discussions with the Special Master regarding what occurred at the January 12 Meeting," D.I. 524 at 1, but that argument is waived.  Venezuela failed to mention that provision until after the meeting occurred.  *See* D.I. 513 at 5, 7, 11.  Venezuela's argument under § 455(b)(1) is also wrong.  The supposedly "disputed" issue that Your Honor might learn from such conversations is simply the government's *legal position*—and not, as Venezuela now contends, an "evidentiary fact" covered by § 455(b)(1).  *See id.* at 16.

The Honorable Leonard P. Stark
March 3, 2023
Page 2

Nor is there any merit to Venezuela's argument that it would be "clear legal error" for Your Honor to rely on the Special Master's forthcoming *on-the-record* report about his January meeting, D.I. 524 at 2, which the Sale Procedures Order expressly directs him to file with the Court (after which other parties "shall have the opportunity to object"), D.I. 481 ¶ 3. The premise of Venezuela's erroneous view appears to be a baseless concern that the Special Master might somehow misrepresent his conversation with OFAC, and this Court might rely on that misrepresentation in deciding "whether to launch the sale process." D.I. 524 at 1-2. After all, Venezuela made clear in its January 9 motion that it did not object to the Special Master meeting with OFAC to gauge its views on the sale process, so long as Venezuela's counsel could observe the discussion as a percipient witness. D.I. 499 at 7. But the notion that Venezuela's counsel needed to attend the meeting to ensure that this Court will receive an accurate report of what transpired is fanciful. The Executive Branch is following these proceedings and, as Crystallex has explained, "could easily correct the record in the extraordinarily unlikely event that the Special Master were to misrepresent what was said." D.I. 513 at 16. That is a more than adequate prophylactic against Venezuela's speculative fears.

Venezuela pretends to "assum[e]" that the Court did not mean to "order, authorize, or condone" the Special Master's communications with OFAC in footnote 2 of the January 11, 2023 Order. D.I. 524 at 3. But the Court spoke clearly in denying Venezuela's eleventh-hour motion to prevent the Special Master from conducting the January OFAC meeting "as the Court expressly contemplated and authorized him to do in aid of allowing the Court to fulfill its judicial duties." D.I. 506 ¶ 2 n.2. The Special Master "ha[s] not proposed to, nor ha[s] [he] ever, lobbied on behalf of any particular party," D.I. 356 at 5, and the only sense in which Venezuela's misleading word "'advocate'" could conceivably "ha[ve] applicability" is advocacy for the Court's institutional interest in compliance with judgments, D.I. 506 ¶ 2 n.2. This is no different from the Third Circuit's observation that if "Crystallex is not paid," then "Venezuela has avoided its obligations," *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 149 (3d Cir. 2019), or this Court's "well-established" power to impose sanctions "'upon its own initiative' . . . to deter abuse of judicial process," *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 505 (3d Cir. 1991); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 35 (1991) (recognizing "the inherent power of a federal court to sanction a litigant for bad-faith conduct").

Venezuela absurdly argues that at this late date in a *judgment enforcement proceeding* against a recalcitrant judgment debtor (after the attachment and underlying judgment have both been fully affirmed) the Court must continue to "be or appear impartial" as to whether the judgment is enforced, while failing to cite a single case arising in this posture. D.I. 524 at 3 (citing 28 U.S.C. § 455(a)). Venezuela does not come to this Court with clean hands. It is an adjudged expropriator and a recalcitrant judgment debtor. The purpose of this proceeding is to enforce Crystallex's fully final judgment for money that Venezuela indisputably owes. Like the underlying judgment, the attachment issued by this court was affirmed by the Third Circuit, and the Supreme Court bypassed Venezuela's self-serving pleas that enforcement would somehow harm U.S. foreign policy interests. This Court—and the Special Master—may therefore appropriately focus on enforcement of those lawful judgments. Venezuela can stop this process tomorrow if it simply pays its

The Honorable Leonard P. Stark
March 3, 2023
Page 3

judgment to Crystallex, but Venezuela refuses to do so and instead spends millions to create endless procedural roadblocks. The elaborate sale process devised by this Court, and the consultations with OFAC, came about because *Venezuela* demanded extraordinary process and made OFAC the centerpiece of its arguments. Crystallex advocated for a more streamlined process, *see* D.I. 443 at 13-14, and it should not be held hostage while Venezuela conjures up imagined ethical questions as the Special Master faithfully implements the process this Court ordered without relevant objection from Venezuela.

Even if Venezuela were correct that the Court should not have authorized the Special Master's communications with OFAC, that would not call into question Your Honor's impartiality (nor the Special Master's). *Contra* D.I. 524 at 3. At most, it would have formed a basis for Venezuela to ask the Third Circuit to enjoin the conversation, *see* D.I. 513 at 10, or for this Court to discontinue the OFAC meetings (which Crystallex has said all along are not necessary to launch the sale process, *see* D.I. 443 at 13). But Your Honor's impartiality cannot reasonably be questioned merely for authorizing the Special Master's activities in a process that Venezuela requested and to which it acquiesced. *See* D.I. 523 at 1-2 (citing *In re Brooks*, 383 F.3d 1036 (D.C. Cir. 2004)).

Venezuela's arguments also fundamentally misconceive the purpose of the Special Master's meeting with OFAC. The Court has already resolved that it "*will* proceed with the sale process, up to and including selecting a winning bid." D.I. 443 at 36 (emphasis added). The Special Master's consultation is therefore intended primarily to provide "clarity or guidance" *to the market*—not to OFAC or the Court—so as to produce what the Sale Procedures Order describes as "a value-maximizing Sale Transaction" in which bidders are "willin[g] to participate." D.I. 481 ¶¶ 3-4. Venezuela has acknowledged that an "authorized purpose of the Special Master's outreach" is to convey OFAC's views to "potential bidders." D.I. 499 at 6. Gathering OFAC's views and presenting them *to potential bidders* does not implicate § 455(b)(1) because it has nothing to do with the presentation of evidence to the Court. If anything, eliciting OFAC's support for the sale process can only *benefit* Venezuela in this context by eliminating the supposed risk posited by Venezuela that uncertainty about OFAC's position will depress participation in a sale. Nor is there any merit to Venezuela's continual suggestion that the Special Master has tried to convince OFAC to *change* its position on whether to "support" or "oppose" a sale. D.I. 524 at 3-4. OFAC has never said that it will oppose a sale at any time; it has only said in the past (more than a year ago) that it supported a "delay" of the sale "at th[at] time," but would "reassess" later. D.I. 346-1 at 5.

As to the Court's third question, all parties agree that no evidentiary hearing is required to resolve the December 30/January 3 fact dispute, which is not material to the timeliness analysis for Venezuela's disqualification motion. *See* D.I. 524 at 4-5; D.I. 522 at 2; D.I. 523 at 3; D.I. 526 at 3. Venezuela suggests that it would request a hearing if the Special Master were to submit additional evidence, but he has not done so. *See* D.I. 524 at 4. In any event, while the issue is immaterial, Crystallex agrees with ConocoPhillips that the Court can, if it chooses, decide the dispute on the papers under Federal Rule of Civil Procedure 43(c) without any need for a live hearing. D.I. 522 at 2.

The Honorable Leonard P. Stark
March 3, 2023
Page 4

Finally, Crystallex reiterates that recusal under these circumstances would trigger significant institutional concerns over the ability of our federal courts to enforce their judgments. If a recalcitrant judgment debtor can force the recusal of a judge whose special master "advocates" for the enforcement of the judgment, it would significantly undermine judicial independence and deprive the judgment creditor of an effective means to enforce its judgment. Nothing in the canons of judicial ethics requires this outcome.

                          Respectfully submitted,

                          */s/ Travis S. Hunter*

                          Travis S. Hunter (#5350)

CC: All counsel of record