IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BOLIVARIAN REPUBLIC OF VENEZUELA, )<br>)<br>Defendant. )<br>)<br>_____ ) | No. 1:17-mc-00151-LPS |

**THE VENEZUELA PARTIES' REPLY IN SUPPORT OF THEIR MOTION TO STAY PENDING RESOLUTION OF THEIR MANDAMUS PETITION**

The Venezuela Parties filed a good-faith motion to disqualify the Special Master under 28 U.S.C. § 455 on the basis that he lobbied the Executive Branch in an *ex parte* meeting to have OFAC support the initiation of the sale process. The Court denied the Venezuela Parties' motion after extensive briefing and a half-day hearing. The Venezuela Parties sought immediate review of that decision via a petition for a writ of mandamus and have reasonably requested that this Court stay the Special Master's participation in further proceedings until this important and consequential issue has been resolved.

No respondent to the Venezuela Parties' stay motion offers a compelling reason to reject that common-sense proposal. The respondents do not seriously dispute that, if the Third Circuit were to grant the mandamus petition, any work undertaken by the Special Master in the interim would have been a waste of resources; any launch of the sale process by this Court in reliance on such work product would be tainted and need to be halted; and the ongoing harm to the Venezuela Parties and public confidence in the judiciary from a process lacking the appearance of impartiality would be exacerbated. On the other side of the balance, the respondents merely raise illusory

complaints of delay—complaints that ring hollow when one's interest (Crystallex's) is wholly protected by its interest-accruing judgment and attachment, another's (ConocoPhillips's) is based on speculation that OFAC may allow it to receive an attachment in the future, and the third's (the Special Master's) is at worst the need to redo some portion of the work done in preparing his Supplemental Report. Moreover, the Venezuela Parties' reasonable prospect of obtaining mandamus relief is underscored by the fact that Crystallex's primary argument to the contrary is to speculate that the Third Circuit would hold—contrary to prior decisions of the D.C. Circuit, *see, e.g.*, *In re Brooks*, 383 F.3d 1036, 1045–46 (D.C. Cir. 2004); *Cobell v. Norton*, 334 F.3d 1128, 1138–39 (D.C. Cir. 2003), and its own express pronouncements in *In re Kensington International Ltd.*, 368 F.3d 289 (3d Cir. 2004)—that there is a material distinction in the § 455 context between disqualification of a judge and disqualification of a special master. The Venezuela Parties respectfully submit that, in light of the lopsided equities in their favor and their likelihood of success on the merits, the Court should grant their motion to stay the Special Master's activities pending final resolution of the mandamus petition.

## I. The Venezuela Parties Have a Reasonable Chance of Success on the Merits.

The Venezuela Parties have established the necessary likelihood of success on the merits to warrant a stay: a "reasonable chance" or "probability." *In re Citizens Bank, N.A.*, 15 F.4th 607, 615–16 (3d Cir. 2021) (stating that a "reasonable chance" includes one that is "below 50 percent, so long as it is 'significantly better than negligible'"). None of the respondents meaningfully address the *substantive* merits of the Venezuela Parties' arguments in favor of disqualification—which is not surprising, given that the issues were recently and thoroughly briefed in this Court.[1]

---

[1] While Crystallex makes a half-hearted argument that the Venezuela Parties waived all of their arguments by failing to re-brief them in their stay motion, D.I. 549 at 3, even Crystallex acknowledges that "this Court has already considered Venezuela's arguments and rejected them,"

Instead, Crystallex focuses its attention on a misguided *procedural* argument that a mandamus petition is the wrong vehicle for the Venezuela Parties to seek review of the Court's denial of their motion for disqualification. D.I. 549 at 4–6. But Crystallex clearly overreads, if not blatantly mischaracterizes, the case law.

First, Crystallex's recitation of Third Circuit precedent is incorrect. Crystallex cites *Green v. Murphy*, 259 F.2d 591 (3d Cir. 1958) (en banc), as providing a default rule that "mandamus is unavailable to review orders denying disqualification of district judges *for actual bias under 28 U.S.C. § 144*," and characterizes *In re School Asbestos Litigation*, 977 F.2d 764 (3d Cir. 1992), as purportedly providing only a "possible exception" for cases brought under 28 U.S.C. § 455. D.I. 549 at 5 (emphasis added). Although Crystallex is correct that *Green* applied to disqualification claims under *§ 144*, it is misleading to suggest that *School Asbestos* provided some "narrow exception," *id.*, to a rule that otherwise would cover *§ 455 cases*, much less only a "possible" one. *School Asbestos* itself rejected Crystallex's reading and expressly refused to "extend *Green* to the section 455 context." *Sch. Asbestos*, 977 F.2d at 776; *see id.* ("[W]e are satisfied that neither *Green* nor our subsequent cases have decided whether mandamus lies to enforce the broader commands of 28 U.S.C. § 455"). The Third Circuit could not have been more clear: Section 455 cases—which, by virtue of the statute, extend to a broader array of disqualification issues than Section 144, including the *appearance of partiality*—often warrant mandamus review given that violations of § 455 can cause irreparable harm to "the public's confidence in the judiciary … if a case is allowed to proceed before a judge who appears to be tainted." *Id.*; *see also id.* at 775 (adopting "the consensus position of our sister circuits…that

---

*id.* at 4. It would have wasted the time and resources of the parties and the Court for the Venezuela Parties to re-brief the disqualification motion in summary form in their motion to stay, forcing the respondents to re-brief their oppositions. This is not a motion for reconsideration.

mandamus is a proper means of challenging a" refusal to disqualify under § 455). As Crystallex well knows, the Venezuela Parties' motion for disqualification was brought pursuant to § 455(a) (appearance of partiality) and § 455(b)(1) (personal knowledge of disputed facts)—not § 144. *See, e.g.*, D.I. 509 at 2–3, 6, 10. *Green* is thus inapposite—and certainly not the default rule applicable here.

Second, Crystallex seeks to draw an illogical and unsupported distinction in the applicability of § 455—and of mandamus review stemming from a § 455 claim—between judges and special masters. The Federal Rules of Civil Procedure make plain that § 455 applies to special masters. Fed. R. Civ. P. 53(a)(2). Case law from the Third Circuit and the D.C. Circuit also is clear that special masters are judicial officers subject to § 455 and the appellate remedies—*i.e.*, mandamus—that accompany that provision. *Kensington*, 368 F.3d at 312 n.20 (including special masters in the definition of "the judicial family"); *In re Kensington Int'l Ltd.*, 353 F.3d 211, 222 n.11 (3d Cir. 2003) (recognizing Rule 53 extends § 455 to special masters); *In re Brooks*, 383 F.3d at 1045–46 (D.C. Cir. 2004) (holding that a special master should have been disqualified under § 455(a)); *In re Kempthorne*, 449 F.3d 1265, 1269–71 (D.C. Cir. 2006) (same); *Cobell*, 334 F.3d at 1138–40, 1143–45 (issuing a writ of mandamus requiring the disqualification of a special master under § 455). This Court's order confirms that the Special Master is acting as a judicial officer and "arm of the Court." D.I. 277 ¶ 20; *see also* Code of Conduct for United States Judges, *in* 2 Guide to Judiciary Policy, Ch. 2, 2, 19 (stating that the Code of Conduct applies to special masters, with the exceptions of Canons 4A(3), 4B, 4C, 4D(4), or 5, which are not applicable here). Case law likewise rebuffs Crystallex's suggestion, D.I. 549 at 6, that a district judge's oversight inoculates the special master's conflicted decision-making from reproach. *See Brooks*, 383 F.3d at 1045–46 (concluding that *de novo* review by a judge of a special master's work "does not solve the problem

4

of 'unchecked and uncheckable' partiality" and "an observer apprised of all the facts would [still] reasonably question [the special master's] impartiality"). Indeed, Crystallex provides no basis for its bizarre assertion that *de novo* review by a judge would eliminate the harm to "public confidence" in the judiciary posed by a special master who lacks the appearance of impartiality. D.I. 549 at 6.[2]

Third, faced with this authority, Crystallex simply rejects or ignores it. For example, Crystallex casts aside the D.C. Circuit's decisions as rooted in a "mistaken conclusion" and relies instead on other out-of-circuit cases from decades earlier. D.I. 549 at 6 n.5. And Crystallex disregards the Third Circuit's treatment of "special masters" as "judicial" officers in the same class as "federal magistrate judges." *E.g.*, *Kensington*, 368 F.3d at 295–96. Crystallex cannot refute the Venezuela Parties' "reasonable chance" of success on the merits through such cavalier rejection of D.C. Circuit case law and speculation that the Third Circuit would follow suit notwithstanding its earlier pronouncements.

Fourth, contrary to Crystallex's representation, the Federal Circuit has not ruled that special masters' impartiality "must be raised" on appeal. D.I. 549 at 5. The case Crystallex cites instead concluded—in a single sentence in an unpublished opinion—that "the movant had 'not shown that ... whether the special master would be impartial[] could not be raised and addressed on appeal from any final judgment, if appropriate.'" *In re Nissim Corp.*, 428 F. App'x 981, 983 (Fed. Cir. 2011). Such a case-specific failure to make the requisite showing for unelaborated reasons has no

---

[2] Crystallex's suggestion that § 455 applies in a "weakened form" to special masters because parties can "waive" the grounds for recusing a special master, D.I. 549 at 6, is both wrong and irrelevant. Section 455(e) itself permits waiver of § 455(a) conflicts a *judge* may have, yet that has not stopped the Third Circuit from recognizing the "irreparabl[e] harm[]" to the "public's confidence in the judiciary" from allowing a case "to proceed before a judge who appears to be tainted." *Sch. Asbestos*, 977 F.2d at 776. Regardless, any difference between the § 455 waiver rules for judges and those for special masters sheds no light on whether "review after final judgment is an adequate remedy for a section 455 violation" by a special master that has *not* been waived. *Id.*

applicability here, as the Venezuela Parties have at least a reasonable chance of satisfying the necessary showing under *Third Circuit* precedent. *See, e.g.*, *Sch. Asbestos*, 977 F.2d at 776.

## II. The Equities Weigh in the Venezuela Parties' Favor.

<u>Irreparable Harm and Public Interest.</u> Contrary to Crystallex's unsupported assertions, D.I. 549 at 4–5, the Venezuela Parties *have* shown that the factor of irreparable harm—to themselves and to the public's confidence in the judiciary—warrants a stay. The Venezuela Parties face the irreparable harm of being forced to "complete judicial proceedings overseen" by "a disqualified judicial officer," *Cobell*, 334 F.3d at 1139, along with the irreparable harm to the Republic if the injurious sale process is launched based on the tainted recommendation of a special master who lacks the appearance of impartiality. D.I. 540 at 2–3.

Moreover, as explained above, the Third Circuit has concluded the § 455(a) conflicts can cause irreparable harm to the public's confidence in the judiciary. *Sch. Asbestos*, 977 F.2d at 776.[3] Such harm is one of the reasons the Third Circuit entertains mandamus petitions regarding § 455(a) conflicts, *id.*, and it is likewise the primary reason that the public interest weighs strongly in favor of issuing a stay here (where an alleged § 455(a) conflict is squarely at issue). In the context of a court-ordered sale of the crown jewel of a foreign sovereign's state oil company, it is particularly imperative that the people of this country and Venezuela can trust the process. Moreover, a stay will not prevent "'enforcement of Crystallex's judgment,'" D.I. 549 at 8, but will at most pause this particular enforcement proceeding—insofar as this Special Master's participation is necessary—pending resolution of a potentially "irreparable harm" to the public's clear and overriding interest in an impartial judiciary.

---

[3] As "Section 455(b)(1) is embraced within the perception that a reasonable person might entertain that the judge's impartiality might reasonably be questioned," *Kensington*, 368 F.3d at 316, conflicts under § 455(b) also necessarily harm the public's confidence in the judiciary.

<u>The Respondents Face Minimal, If Any, Harm.</u> The respondents' recitation of farfetched injuries that could be caused by a stay is speculative and overcome by the preceding factors that weigh in the Venezuela Parties' favor. Crystallex complains that further delay will cause it "serious harm," D.I. 549 at 7–8, but it (once again) ignores entirely that it already has a judgment that is accruing post-judgment interest. Moreover, as Crystallex itself has emphasized, it is *the only* creditor with an attachment, putting it in a unique position compared to any other creditor who may or may not receive an attachment in the future. D.I. 542 at 88:3–8. And ConocoPhillips (which is not a party to this action) identifies no specific harm it would suffer in light of a stay, especially since it is entirely speculative whether and when it will even receive OFAC authorization to obtain an attachment. Its brief mention of "further delay" caused by a stay provides no detail as to what harm that could actually impose. D.I. 546 at 1.

The alleged injuries identified by the Special Master fare no better. A delay in submission of his report is not a meaningful "harm," D.I. 547 at 2–3, especially where submission of such report—which will contain some undescribed *ex parte* input resulting from his advocacy efforts before the Executive Branch that are the very core of the disqualification dispute—could *further* taint the process. The speculative possibility that, if the Third Circuit denies mandamus relief, the Special Master may need to refresh his analysis, re-contact the U.S. government regarding whether its position has changed, and redraft his report—depending on how long it takes the Third Circuit to act—pales in comparison to the harms identified by the Venezuela Parties.

Indeed, the harms the Special Master identifies would be far worse if a stay is denied and the Third Circuit *grants* mandamus relief. In that scenario, not only would a new report need to be prepared (by a different special master), but any sale process that may have been launched on the basis of that tainted recommendation would need to come to halt. Moreover, by then, the harms to

public confidence in the impartiality of the courts associated with the submission of the tainted recommendation and any tainted launch of the process—both in this country and in Venezuela—could not be fully undone.

## CONCLUSION

For the foregoing reasons, the Venezuela Parties respectfully request that the Court grant their motion for a stay pending final determination of their petition for a writ of mandamus.

|  |  |
|---|---|
| April 21, 2023 | Respectfully submitted, |
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| OF COUNSEL: | */s/ Alexandra M. Cumings* |
| Nathan P. Eimer | Kenneth J. Nachbar (#2067) |
| Lisa S. Meyer | Alexandra M. Cumings (#6146) |
| Daniel D. Birk | 1201 North Market Street |
| Gregory M. Schweizer | Wilmington, DE 19801 |
| Emily E. Sullivan | (302) 658-9200 |
| EIMER STAHL LLP | KNachbar@morrisnichols.com |
| 224 South Michigan Avenue | ACumings@morrisnichols.com |
| Suite 1100 |  |
| Chicago, IL 60604 | *Attorneys for PDV Holding, Inc., and* |
| (312) 660-7600 | *CITGO Petroleum Corporation* |
| NEimer@eimerstahl.com |  |
| LMeyer@eimerstahl.com |  |
| DBirk@eimerstahl.com |  |
| GSchweizer@eimerstahl.com |  |
| ESullivan@eimerstahl.com |  |
|  |  |
| OF COUNSEL: | HEYMAN ENERIO GATTUSO & HIRZEL LLP |
| Joseph D. Pizzurro | */s/ Samuel Taylor Hirzel, II* |
| Kevin A. Meehan | Samuel Taylor Hirzel, II (#4415) |
| Juan O. Perla | 300 Delaware Avenue, Suite 200 |
| CURTIS, MALLET-PREVOST, | Wilmington, DE 19801 |
| COLT & MOSLE LLP | (302) 472-7300 |
| 101 Park Avenue | shirzel@hegh.law |
| New York, NY 10178 |  |
| (212) 696-6000 | *Attorney for Petróleos de Venezuela, S.A.* |
| jpizzurro@curtis.com |  |
| kmeehan@curtis.com |  |
| jperla@curtis.com |  |
|  |  |
| OF COUNSEL: | ABRAMS & BAYLISS LLP |
| Donald B. Verrilli, Jr. | */s/ Stephen C. Childs* |
| Elaine J. Goldenberg | A. Thompson Bayliss (#4379) |
| Ginger D. Anders | Stephen C. Childs (#6711) |
| Brendan B. Gants | 20 Montchanin Road, Suite 200 |
| Munger, Tolles & Olson LLP | Wilmington, DE 19807 |
| 601 Massachusetts Avenue NW | (302) 778-1000 |
| Suite 500 E | bayliss@abramsbayliss.com |
| Washington, D.C. 20001 | childs@abramsbayliss.com |
| (202) 220-1100 |  |
| Donald.Verrilli@mto.com | *Attorneys for Bolivarian Republic of Venezuela* |

George M. Garvey
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com