**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------

CRYSTALLEX INTERNATIONAL CORP.,      )
                                     )
            Plaintiff,               )
                                     )
      v.                             )      Misc. No. 17-151-LPS
                                     )
BOLIVARIAN REPUBLIC OF VENEZUELA,    )
                                     )
            Defendant.               )
---------------------------------------------------------------

**SPECIAL MASTER'S SUPPLEMENTAL REPORT AND RECOMMENDATION**
**PURSUANT TO SALE PROCEDURES ORDER**

OF COUNSEL:

Ray C. Schrock (admitted *pro hac vice*)
Alexander W. Welch (admitted *pro hac vice*)
Chase A. Bentley (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray.Schrock@weil.com
Alexander.Welch@weil.com
Chase.Bentley@weil.com

Myron T. Steele (#000002)
Matthew F. Davis (#4696)
Bindu A. Palapura (#5370)
Abraham Schneider (#6696)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
msteele@potteranderson.com
mdavis@potteranderson.com
bpalapura@potteranderson.com
aschneider@potteranderson.com

*Counsel for Special Master Robert B. Pincus*

Dated:   April 28, 2023

## TABLE OF CONTENTS

**Page**

I.    Preliminary Statement...................................................................................................1

II.   Executive Summary and Recommendation ....................................................................3

III.  Special Master Engagement with the U.S. Government..................................................4

IV.   Preparation Launch Date and Launch Date Factors and Considerations............................7

    A.    U.S. Government Sanctions. ...................................................................................8

    B.    State of the Oil and Gas Refining Industry and the M&A and Financing Markets. ...............................................................................................................11

    C.    Scheduling the Preparation Launch Date and the Launch Date. ...........................14

V.    Conclusion ..................................................................................................................15

## EXHIBITS

EXHIBIT A    April 7 DOJ Letter

Pursuant to the Court's Sale Procedures Order (D.I. 481) (the "**Sale Procedures Order**"), I, Robert B. Pincus, solely in my capacity as special master (the "**Special Master**") for the United States District Court for the District of Delaware (the "**Court**") in *Crystallex International Corp. v. Bolivarian Republic of Venezuela* (D. Del. Case. No. 17-151-LPS) ("the "**Crystallex Case**"), hereby submit this report and recommendation (this "**Supplemental Report**"). [1]

## I.     Preliminary Statement

1.     Pursuant to my mandate as Special Master, my Advisors and I, together with input from the Sale Process Parties, designed a sale and marketing process with the goal of providing the best opportunity of achieving a value-maximizing result, in the best interests of all parties.  The process was initially documented in the *Proposed Sale and Bidding Procedures Order* (D.I. 302), the preparation for and background of which was described in detail in the *Special Master's Report and Recommendation re: Proposed Sale Procedures Order* (D.I. 303) (the "**August 2021 Report**").  Over a year passed between that initial submission and the ultimate Sale Procedures Order entered by the Court on October 11, 2022, during which time I actively engaged with the Sale Process Parties and other parties-in-interest, including the U.S. Government, to design a sale process for the PDVH Shares that reflects the perspectives of each party and provides a path to a comprehensive and efficient enforcement of the Court's judgment.  During the period following entry of the Sale Procedures Order, I engaged with the Sale Process Parties on various issues and my Advisors and I have worked diligently to implement the process approved by the Court.

2.     Among other things, the Sale Procedures Order directs the Special Master to submit this Supplemental Report recommending whether and when the Court should direct me to begin

---

[1] Capitalized terms used but not defined shall have the meaning ascribed to such terms below or, if not defined below, the meaning ascribed to such terms in the Sale Procedures Order.

preparation for the launch of the Marketing Process (the date on which preparation for the Marketing Process begins, the "**Preparation Launch Date**") and when to ultimately launch the Marketing Process (the date on which the Marketing Process is launched, the "**Launch Date**").

3.      Toward that end, the Sale Procedures Order further directed me to engage with the U.S. Government to gain clarity or guidance with respect to its support for (or non-opposition to) the Marketing Process. In the August 2021 Report, I articulated that, given the public guidance from the Department of the Treasury's Office of Foreign Assets Control ("**OFAC**") at the time, which required a specific license "prior to conducting an auction or other sale . . . or taking other concrete steps in furtherance of a sale" of shares of a Government of Venezuela entity such as the PDVH Shares, "barring a change in circumstances, my recommendation [was] to launch the Marketing Process only once I am confident that I am able to provide Potential Bidders with comfort that they can participate in the process without subjecting themselves to the risk of violating U.S. sanctions." August 2021 Report ¶ 3.

4.      In light of this directive, my Advisors and I have engaged with the U.S. Government, including through a meeting with attorneys from the Departments of Justice, State, and the Treasury on January 12, 2023, to discuss the design of the Marketing Process in furtherance of a value-maximizing sale of the PDVSA Shares and the prospective impact of the U.S. Government's official guidance on the Marketing Process.

5.      Following the January 12 meeting, on April 7, 2023, the Department of Justice delivered a letter to me, attached hereto as **Exhibit A** (the "**April 7 DOJ Letter**"), outlining updated guidance on behalf of the U.S. Government.  While I understand that the position of the U.S. Government outlined in the April 7 DOJ Letter is a precursor to formal public guidance to be published by the U.S. Government, the letter is nevertheless clear that "OFAC will not take

enforcement action against individuals or entities for participating in or complying with the Prefatory Steps set out in the [Sale Procedures Order], as well as those who engage in transactions that are ordinarily incident and necessary to participation in and compliance with such steps, e.g., potential or actual credit counterparties." April 7 DOJ Letter at 1.  Further, the United States Government indicated that it does not intend to impede the Sale Transaction by stating, "[t]he United States Government [] wishes to convey that OFAC intends to implement a favorable licensing policy for license applications in connection with the execution of sale…" *Id*. at 2.  With that clarity now available to Potential Bidders, and given the other considerations discussed in more detail herein, I am comfortable recommending the launch of the Marketing Process as outlined below.

6.     Except as otherwise indicated, this Supplemental Report is based on the facts as presented, identified, and determined by me, with the assistance of my Advisors, and the circumstances relating to the Crystallex Case, PDVH, CITGO, my review of relevant pleadings and documents, information provided to me by the Sale Process Parties and the U.S. Government, publicly available information, or my opinion based upon my and my Advisors' respective experience and knowledge.

## II.     Executive Summary and Recommendation

7.     In light of updated guidance from the U.S. Government, and in consideration of the factors outlined in this Supplemental Report, I recommend preparations for the launch of the Marketing Process begin without any further delay beyond the consideration by the Court of this Supplemental Report and any Launch Date Objections.  Therefore, I recommend the Preparation Launch Date be set as soon after June 5, 2023 as the Court is able to consider the Supplemental Report and any Launch Date Objections and responses thereto.  Based on the foregoing, I recommend the Launch Date occur on the earlier of (i) September 5, 2023, and (ii) the date on

which the Special Master, in his sole discretion, believes he and his Advisors are sufficiently prepared to launch the Marketing Process.  Based on the Bidding Procedures approved by the Sale Procedures Order, a September 5, 2023 Launch Date would result in a Sale Hearing milestone of approximately June 1, 2024, as illustrated in the chart below:

| Event | Proposed Date |
|---|---|
| Preparation Launch Date | As soon as practicable after June 5, 2023 |
| Launch Date | September 5, 2023 |
| Illustrative Sale Hearing | June 1, 2024 |

### III.    Special Master Engagement with the U.S. Government

8.      On May 27, 2021, the Court issued the *Order Regarding Special Master* (D.I. 277) (the "**May 27 Order**"), explaining the duty of the Special Master to "devise a plan for the sale of shares of PDVH as necessary to satisfy the outstanding judgment of Crystallex and the judgment of any other judgment creditor added to the Sale by the Court and/or devise such other transaction as would satisfy such outstanding judgment(s) while maximizing the sale price of any assets to be sold."  May 27 Order ¶2.

9.      In accordance with the May 27 Order, concurrently with my consultation with the Sale Process Parties throughout the period during which I was designing and soliciting feedback on the Marketing Process, my Advisors and I also met with representatives from the U.S. Government, including representatives from the Department of Justice, Department of the Treasury, and Department of State.  More specifically, my Advisors and I met with the U.S. Government representatives on three separate occasions in 2021 to describe the proposed sale process and solicit input.  At the first meeting, on June 6, 2021, we provided an overview of the

Special Master process; at the second meeting, on July 12, 2021, we provided a preliminary overview of the proposed design of the Sale Procedures Order; and at the third meeting on July 15, 2021, we answered follow-up questions from the U.S. Government regarding the information presented at the prior meetings and agreed to schedule a follow-up meeting once I had filed the proposed Sale Procedures Order with the Court.  At each meeting, we solicited feedback regarding the U.S. Government's position with respect to the Special Master process and design of the Sale Procedures Order.

10.     At no point did the U.S. Government express any opinion about or objection to the proposed process that my Advisors and I presented; and, at the third meeting, the U.S. Government representatives indicated that they had no further questions and did not require any additional information at that time.

11.     On October 11, 2022, this Court entered the Sale Procedures Order  adopting and authorizing the proposed sale procedures for the sale of the PDVH Shares as necessary to satisfy the outstanding judgment of Crystallex and the judgment of any other judgment creditor added to the sale by the Court.  The entry of the Sales Procedures Order triggered the Six-Month Window, during which period I, as Special Master, was directed to make certain inquiries and issue a recommendation to the Court as to when, and whether the Court should direct me to launch the sale process.  As relevant here, the Sales Procedures Order includes a provision requiring that "the Special Master and his Advisors shall solicit and attempt to gain clarity or guidance from [OFAC] of its support for (or non-opposition to), the launch of the Marketing Process by the Special Master, the viability of the Marketing Process, and any additional feedback or guidance that the Special Master believes will more likely result in a value-maximizing Sale Transaction."  *Id.* ¶ 3.

12.     Pursuant to the Court's direction in the Sale Procedures Order, my Advisors sent a letter to the U.S. Government on November 22, 2022, sharing and summarizing the Sale Procedures Order and seeking guidance from the U.S. Government, in particular from OFAC, to assess "its support for (or non-opposition to)" the Marketing Process and the Bidding Procedures and the likelihood that OFAC would provide authorization to allow for consummation of a potential sale of some or all of the PDVH Shares (the "**Sale Transaction**").  The U.S. Government responded, suggesting a meeting in early January 2023 to allow U.S. Government representatives to seek clarification or context about the proposed sale, and for the Special Master and his team to provide further information as needed.

13.     My Advisors and I met with the U.S. Government representatives on January 12, 2023.  At the January 12 meeting, which included attorneys from the Department of Justice, Department of the Treasury, and Department of State, my advisors and I described the Court-approved Sale Procedures Order and provided the U.S. Government representatives with an opportunity to ask questions about the process.  We also reiterated the importance of receiving clarity as to the U.S. Government's position with respect to issuing necessary licenses and, in particular, the impact such clarity, or lack thereof, would have on the willingness of Potential Bidders to incur substantial costs in formulating a bid and opening themselves to potential sanctions risk for participating in the Marketing Process.

14.     On March 30, 2023, the Court held a hearing on a number of matters in the Crystallex Case.  At the hearing, I indicated, through my Advisors, that I may seek to engage with the Sale Process Parties after expected receipt of any guidance form the U.S. Government in connection with the preparation of this Supplemental Report.  However, subsequently and as a condition to receiving any guidance, the U.S. Government requested that, prior to the issuance of

this Report, I not disclose the contents of the letter to anyone, including the Sale Process Parties, other than to the Court, if necessary.  On April 7, 2023, I received the April 7 DOJ Letter, which conveyed the U.S. Government's determination that, among other things: (i) OFAC would "issue public guidance that, under these circumstances, OFAC will not take enforcement action against individuals or entities for participating in or complying with the Prefatory Steps set out in the [Sale Procedures Order], as well as those who engage in transactions that are ordinarily incident and necessary to participation in and compliance with such steps, e.g., potential or actual credit counterparties", and (ii) "OFAC intends to implement a favorable licensing policy for license applications in connection with the execution of a sale as contemplated in the [Sale Procedures Order] or, as applicable, the negotiation of a settlement agreement among the relevant parties."

15.     Consistent with the U.S. Government's request, I did not distribute the letter to any parties, including the Court, and did not consult the Sale Process Parties, Potential Bidders, or other stakeholders, such as the PDVSA 2020 Bondholders, in formulating my recommendation contained in this Supplemental Report, as doing so would be impossible without also discussing the April 7 DOJ Letter or the positions of the U.S. Government described in that letter. Nevertheless, the Sale Procedures Order provides the Sale Process Parties with an opportunity to object to my recommendation, and I hope to discuss the contents of this Supplemental Report with them during that review and objection period.  Sale Procedures Order ¶ 3.  Furthermore, as indicated in the April 7 DOJ Letter and subsequent discussions, it is my understanding that the U.S. Government will be publicly issuing guidance on the Marketing Process and its policy with respect to the sale of the PDVH Shares shortly after the issuance of this Supplemental Report.

## IV.     **Preparation Launch Date and Launch Date Factors and Considerations**

16.     The following section addresses certain factors and considerations, and the related analysis, that I, with advice from my Advisors, determined are relevant in connection with the

preparation of this Supplemental Report and my recommendation to the Court to direct me to launch the Marketing Process on the timeline described herein.

A.     **U.S. Government Sanctions.**

17.     Over the past decade, the U.S. Government has imposed an extensive sanctions regime with respect to the Republic, including the addition of PDVSA on January 28, 2019 to OFAC's List of Specially Designated Nationals and Blocked Persons under Executive Order ("**E.O.**") 13850, and culminating in the imposition of sanctions on the Government of Venezuela under E.O. 13884 on August 5, 2019.  *See also* E.O. 13692 of March 8, 2015, "Blocking Property and Suspending Entry of Certain Persons Contributing to the Situation in Venezuela"; E.O 13808 of August 24, 2017, "Imposing Additional Sanctions with Respect to the Situation in Venezuela"; and E.O. 13835 of May 21, 2018, "Prohibiting Certain Additional Transactions With Respect to Venezuela".

18.     As has been briefed in numerous pleadings before the Court in the Crystallex Case and other associated cases, as a result of these sanctions actions, the PDVH Shares and other CITGO assets are "blocked property" pursuant to OFAC's Venezuela-related sanctions.  *See, e.g.*, 31 CFR § 591.201, § 591.407, § 591.509.  Because they are blocked, absent authorization from OFAC, these shares and assets "may not be transferred, paid, exported, withdrawn, or otherwise dealt in" within the United States or by U.S. persons.  *See* E.O. 13850 § 1; E.O. 13884 § 1.

19.     Previously, the U.S. Government issued policy statements opposing the sale of PDVH Shares.  In a July 16, 2020, statement to the Court, the U.S. Government explained that "efforts by creditors to enforce judgments against Venezuela by taking immediate steps toward a conditional sale of PDVSA's U.S.-based assets, including PDVH and CITGO, are detrimental to U.S. policy and the interim government's priorities." D.I. 212-1, at 3-4 (Letter from Special Representative for Venezuela Elliot Abrams); *see also* D.I. 212-2, at 2 (Letter from OFAC Director

Andrea Gacki stating that "[a]bsent a change in the above considerations, these factors will weigh heavily in OFAC's license determination and could prove to be dispositive in adjudicating this license application").

20.    On September 10, 2021, Crystallex's counsel notified the Court that Crystallex had received a letter from OFAC denying Crystallex's request for a specific license authorizing "all activities necessary and ordinarily incident to organizing and conducting a judicial sale of shares in CITGO Petroleum Corp.'s (CITGO) indirect parent holding company, PDV Holding, Inc. (PDVH), that are held by Petróleos de Venezuela, S.A. (PdVSA)."  D.I. 346-1 at 2; *see also* D.I. 343 at 14.  The letter further explained "that this determination is made without prejudice to reconsideration of a specific license request to sell the PDVH shares at a later time if the foreign policy considerations change."  D.I. 346-1 at 9.

21.    The Court's Sale Procedures Order directed the Special Master to seek guidance from the U.S. Government, including OFAC, regarding "its support for (or non-opposition to), the launch of the Marketing Process by the Special Master, the viability of the Marketing Process, and any additional feedback or guidance that the Special Master believes will more likely result in a value-maximizing Sale Transaction."  Sale Procedures Order ¶ 3.  My Advisors and I complied with this requirement by sending a letter to the U.S. Government on November 22, 2022, seeking this information and by meeting with the U.S. Government on January 12, 2023.

22.    The U.S. Government has now outlined its position relative to the Marketing Process and Sale Transaction, as reflected in the April 7 DOJ Letter.

23.    The April 7 DOJ Letter confirms that (i) the U.S. Government is "not seeking to contest" the Court's holding "that a specific license is not necessary for, and that the current Venezuela sanctions regime does not prohibit the Prefatory Steps [(as defined in the April 7 DOJ

Letter)] antecedent to the consummation of the Sales Transaction to occur", and (ii) OFAC will not take enforcement action against those participating in the Prefatory Steps and those engaging in transactions that are ordinarily incident and necessary to participation in and compliance with such steps.  These representations regarding the Prefatory Steps provide clarity and assurance to the Court, the Special Master, the Sale Process Parties, and other parties-in-interest, including Potential Bidders and associated service providers, that all parties can participate in the Marketing Process without risk of penalty under the Venezuela sanctions.  This includes actions such as preparing for and launching the Marketing Process, conducting due diligence, submitting, collecting, and designating bids, determining Qualified Bidders and Qualified Bids, conducting and participating in additional rounds of bidding, as needed, determining the Successful Bid and rejecting unsuccessful Bids, conducting and participating in an auction, and filing a Notice of Successful Bidder.

24.    Additionally, the April 7 DOJ Letter memorializes a change in the U.S. Government's licensing policy from its prior submissions to the Court. Specifically, the U.S. Government's confirmation that "OFAC intends to implement a favorable licensing policy for license applications in connection with the execution of the sale" provides clarity and assurance to all parties-in-interest that the U.S. Government does not, as a matter of policy, intend to block the completion of a Sale Transaction or, as applicable, the negotiation of a settlement among the relevant parties.

25.    As described in the April 7 DOJ Letter, OFAC intends to publish guidance reflecting its posture with respect to the Prefatory Steps and to issue a public notification of a favorable licensing policy with respect to the execution of a sale.  While, as of the submission of this Supplemental Report, OFAC has not yet released detailed guidance on its intention with

respect to the Marketing Process or the Sale Transaction, generally, the April 7 DOJ Letter is a material step toward providing Potential Bidders with certainty as to this process, such that the likelihood of "chilled bidding" or lack of participation, as discussed in the August 2021 Report is significantly diminished.

**B.      State of the Oil and Gas Refining Industry and the M&A and Financing Markets.**

26.      In connection with the preparation of this Supplemental Report and my evaluation of whether and when to prepare for and launch the Marketing Process, Evercore L.L.C. ("**Evercore**") as financial advisors to the Special Master, reviewed the recent financial and operational performance of CITGO and its refiner competitors, as well as the current state of the financing capital markets and recent merger and acquisition activity in CITGO's industry.

27.      Evercore informed me that, in 2021, still in the midst of the COVID-19 global pandemic and uncertain as to the timing and speed of any economic recovery, U.S. oil and gas refining companies projected conservative financial performance forecasts for 2021 through 2023. Actual results for 2021 and 2022 ultimately materially outperformed those forecasts, as U.S. refiners benefitted from a surge in economic activity as the world opened after COVID restrictions were lifted.  Performance of the U.S. refiners was also boosted as a result of growth in exports due to elevated European natural gas prices in the same time period.  Those global trends created favorable refining margins, high product yields, strong asset reliability, and an increase in exports to foreign markets, all of which lead to stronger-than-predicted financial performance for U.S. refiners, including CITGO, which extended its year-over-year growth through fiscal year 2022.

28.      Evercore indicated that, while there currently exists a real risk of economic recession that could create headwinds for growth among U.S. refiners, industry experts are

nevertheless forecasting above 90% refinery utilization rates for the next two years,[2] which mirrors pre-pandemic levels and implies demand is forecasted to remain high.  Further, national energy security is becoming an important investment thesis as persistent underinvestment creates volatility and supply shortages across the hydrocarbon value chain.  The heightened focus on energy security is amplified by trends such as post-COVID consumer travel, increased demand from Asian markets, and the ongoing Russia-Ukraine conflict.  Factors such as slowing economic activity as a result of a recession, and higher inventories resulting from recent production increases, may create short-term margin contraction for some refiners, but the current three-year outlook for refining companies is forecasted to significantly exceed the three-year outlook that was in place as of the August 2021 Report.

29.     Based on the foregoing industry developments, among other things, and my discussions with Evercore, I believe that a proposed sale of the PDVH Shares in the near term may be more positively received by the market and could draw more Potential Bidders, as compared to the circumstances in place in prior years.

30.     Evercore also informed me that, in the last five years, there have been approximately 11 notable acquisition transactions among oil and gas refiners.  Further, in the past 18 months, there has been more deal activity within the refining sector as compared to the 18-month period leading up to the August 2021 Report.  Although past performance does not mean future M&A activity will continue to be elevated, the trend highlights a positive change in the market cycle that did not seem to exist during the early phases of this sale process.

---

[2] Kevin Hack, *EIA Forecasts U.S. Refinery Utilization to Average More than 90% in 2023 and 2024*, U.S. ENERGY INFO. ADMIN. (Feb. 12, 2023), eia.gov/todayinenergy/.

31.     Based on Evercore's evaluation of recent refining acquisition transactions, certain factors that Potential Bidders may consider in assessing opportunities in the current environment include:

a.   <u>Scale</u>. Increased scale and exposure to the highest-margin U.S. refineries provides the best hedge against risks related to the global energy sector's transition away from fossil-based systems of energy production and consumption. The size of CITGO's refining operations could provide a buyer with immediate scale.

b.   <u>Cash Flow Enhancing Transactions</u>. Immediate cash returns allow for reinvestment or capital return by a buyer and also help to hedge energy transition risks described above. A Potential Bidder may seek to use the reliable cash flows from CITGO's assets to balance business growth and pursue less certain opportunities such as investment in renewable energy business segments.

c.   <u>Exposure to Upside</u>. Exposure to refineries can provide upside when paired with complementary businesses including chemicals and crude oil marketing. A Potential Bidder may be seeking to vertically or horizontally integrate portions of their existing downstream value chain with CITGO's assets, which would create additional synergistic value.

32.     Evercore indicated that, while M&A activity among refining companies has accelerated since the August 2021 Report, the U.S. debt capital market environment has weakened. Elevated interest rates and uncertainty relating to future rates has dampened the availability of capital, however, today's capital markets are still more than adequate to accommodate a transaction of CITGO's scale, especially since the Bidding Procedures provide for the ability for Potential Bidders to submit bids for all or a portion of the PDVH Shares.

33.     Evercore's review of recent U.S. capital markets activity shows that since October 1, 2022, at least (i) eight U.S.-domiciled leverage buyout transactions with over $1 billion of debt each have been funded or committed, and (ii) forty-one loan deals and eighteen bond deals over $1 billion have been priced for U.S. issuers with corporate family ratings of B, BB, or split B/BB ratings. As of April 28, 2023, CITGO Petroleum and CITGO Holdings were rated by Moody's

and S&P Ratings at B3/B- and Caa1/B- with stable outlooks.  However, both Moody's and S&P Ratings have explicitly cited the current ownership of CITGO by PDVSA as a key credit consideration and indicated that a sale of the PDVH Shares to a company with a credit profile stronger than PDVSA could result in a higher rating.[3]

34.     In light of the foregoing, based on my review and understanding of the facts and circumstances, I believe it is in the best interests of the Sale Process Parties in pursuit of a value-maximizing Sale Transaction to launch the Marketing Process as soon as practicable in order to take advantage of CITGO's recent financial and operational performance and the current state of the refining industry, as well as the financing and M&A markets.

**C.     Scheduling the Preparation Launch Date and the Launch Date.**

35.     <u>Preparation Launch Date</u>.  Pursuant to the Sale Procedures Order, the Sale Process Parties have the ability to file Launch Date Objections within 15 business days of the filing of this Supplemental Report, which makes such objections due on May 19, 2023.  Any responses to the Launch Date Objections are due 10 business days later, on June 5, 2023.  My Advisors and I are ready to begin preparations for the Marketing Process as soon as the Court enters an order in response to any Launch Date Objections and without any further delay.  Therefore, I propose that the Preparation Launch Date is set as soon after June 5, 2023 as the Court is able to consider the Supplemental Report and any Launch Date Objections and responses thereto.

36.     <u>Launch Date</u>.  As previewed in the August 2021 Report, I anticipate that my Advisors and I will need approximately 45 to 90 days to complete the diligence and analysis

---

[3] *See* Kimeberly E. Yarborough, *Citgo Petroleum Corp., CITGO Holding Inc. 'B-' Issuer Credit Rating Affirmed; Outlook Stable*, S&P (2022); Roxana Munoz & Marcos Schmidt, *Credit Opinion: CITGO Holding, Inc.*, Moody's (2023); Roxana Munoz & Marcos Schmidt, *Credit Opinion: CITGO Petroleum Corporation*, Moody's (2023).

necessary to launch the Marketing Process.  August 2021 Report ¶ 44.  Our diligence conducted to date has been limited to that necessary to design the Marketing Process and prepare the proposed Sale Procedures Order; however, we will need to conduct thorough business diligence to prepare a "teaser", confidential information memorandum, and other marketing materials to send to Potential Bidders. We intend beginning this work in earnest upon the Preparation Launch Date and believe that we will be in a position to launch the Marketing Process on September 5, 2023, but reserve the right to extend that date in consultation with the Sale Process Parties or to accelerate the date in the event I believe, in my sole discretion, that my Advisors and I have sufficiently conducted our diligence and analysis and have prepared the necessary marketing materials for distribution to Potential Bidders.  The ultimate timing of the Launch Date will depend in large part upon the cooperation of the CITGO management team, though I note that they have engaged with me and my Advisors constructively in the past and I have no reason to believe they will not do so in the future.

37.     For the avoidance of doubt, during the period between the Preparation Launch Date and the Launch Date, my Advisors and I will engage in the various other tasks described in the Sale Procedures Order.

## V.     Conclusion

38.     For the reasons articulated above, I recommend the Marketing Process begin without any further delay beyond the consideration by the Court of this Supplemental Report and any Launch Date Objections.

/s/ Robert B. Pincus
Robert B. Pincus
Special Master for the United States District Court
for the District of Delaware

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**<u>CERTIFICATE OF SERVICE</u>**

I, Myron T. Steele, hereby certify that on April 28, 2023, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed.

I further certify that on April 28, 2023, the attached document was Electronically Mailed to the following person(s):

**<u>Crystallex International Corporation</u>**

Jeffrey L. Moyer
Raymond J. DiCamillo
Travis S. Hunter
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
moyer@rlf.com
dicamillo@rlf.com
hunter@rlf.com

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
rweigel@gibsondunn.com
jmyatt@gibsondunn.com
rmoloo@gibsondunn.com

Miguel A. Estrada
Lucas C. Townsend
Adam M. Smith
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
MEstrada@gibsondunn.com
ltownsend@gibsondunn.com
asmith@gibsondunn.com

**Bolivarian Republic of Venezuela**

A. Thompson Bayliss
Stephen C. Childs
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807
bayliss@abramsbayliss.com
childs@abramsbayliss.com

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
Brendan  B. Gants
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW,
Suite 500 E
Washington, D.C.  20004
donald.verrilli@mto.com
elaine.goldenberg@mto.com
ginger.anders@mto.com
Brendan.Gants@mto.com

George M. Garvey
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071-3426
George.Garvey@mto.com

**CITGO Petroleum Corporation
and PDV Holding, Inc.**

Kenneth J. Nachbar
Alexandra M. Cumings
MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
KNachbar@mnat.com
acumings@morrisnichols.com

**Phillips Petroleum Company Venezuela
Limited and ConocoPhillips Petrozuata B.V.**

Garrett B. Moritz
Anne M. Steadman
Elizabeth M. Taylor
ROSS ARONSTAM & MORITZ LLP
1313 North Market Street
Suite 1001
Wilmington, DE  19801
gmoritz@ramllp.com
asteadman@ramllp.com
etaylor@ramllp.com

Michael S. Kim
Marcus J. Green
Josef M. Klazen
Lydia L. Halpern
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
michael.kim@kobrekim.com
marcus.green@kobrekim.com
jef.klazen@kobrekim.com
lydia.halpern@kobrekim.com

 Richard G. Mason
Amy R. Wolf
Michael H. Cassel
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
RGMason@wlrk.com
ARWolf@wlrk.com
MHCassel@wlrk.com

Nathan P. Eimer
Lisa S. Meyer
Greg Schweizer
Daniel D. Birk
Emily Sullivan
EIMER STAHL LLP
224 S. Michigan Avenue Suite 1100
Chicago, IL 60604
NEimer@eimerstahl.com
LMeyer@eimerstahl.com
gschweizer@eimerstahl.com
dbirk@eimerstahl.com
esullivan@eimerstahl.com

**Petróleos de Venezuela, S.A.**

Samuel T. Hirzel, II
HEYMAN ENERIO
GATTUSO & HIRZEL LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
SHirzel@hegh.law

Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

**Blackrock Financial Management, Inc.**

Daniel Alan Mason
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
500 Delaware Avenue, Suite 200
P.O. Box 32
Wilmington, DE 19899-0032
dmason@paulweiss.com

Walter Rieman
Jonathan Hurwitz
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
wrieman@paulweiss.com
jhurwitz@paulweiss.com

**Rosneft Trading S.A.**

Amy Elizabeth Evans
Robert Craig Martin
DLA PIPER LLP
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Amy.Evans@us.dlapiper.com
craig.martin@dlapiper.com

Steve Dollar
Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, New York  10019-6022
steve.dollar@nortonrosefulbright.com

Mark Oakes
98 San Jacinto Boulevard
Suite 1100
Austin, Texas  78701-4255
mark.oakes@nortonrosefulbright.com

By: /s/ Myron T. Steele
Myron T. Steele (#000002)
Matthew F. Davis (#4696)
Bindu A. Palapura (#5370)
Abraham Schneider (#6696)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile : (302) 658-1192
msteele@potteranderson.com
mdavis@potteranderson.com
bpalapura@potteranderson.com
aschneider@potteranderson.com