IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CRYSTALLEX INTERNATIONAL
CORPORATION,

        Plaintiff,

  v.

BOLIVARIAN REPUBLIC
OF VENEZUELA,

        Defendant.

C.A. No. 17-151-LPS

**CRYSTALLEX INTERNATIONAL CORPORATION'S RESPONSE TO THE
SPECIAL MASTER'S SUPPLEMENTAL REPORT AND RECOMMENDATION**

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166
Tel: (212) 351-4000

Miguel A. Estrada
Lucas C. Townsend
Adam M. Smith
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Tel: (202) 955-8500

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Tel: (302) 651-7700

*Attorneys for Plaintiff*

Dated: May 23, 2023

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

SUMMARY OF POSITION ................................................................................................... 1

CRYSTALLEX'S RESPONSE ............................................................................................... 2

    I.      The Sale Process May Proceed Without Sanctions Risk ........................................ 2

    II.     Arguments Regarding Economic Condition, While Legally Irrelevant, Further Undercut Any Attempt To Further Delay The Sale Process ..................... 4

CONCLUSION ........................................................................................................................ 6

i

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*In re Adobe Trucking, Inc.*,
  2011 WL 6258233 (Bankr. W.D. Tex. Dec. 15, 2011), *aff'd*, 551 F. App'x 167
  (5th Cir. 2014)......................................................................................................................5

*Bankers Trust Co. v. J.V. Dowler & Co.*,
  47 N.Y.2d 128 (1979) ..........................................................................................................5

*BFP v. Resolution Trust Corp.*,
  511 U.S. 531 (1994).............................................................................................................6

*Deibler v. Atl. Props. Grp., Inc.*,
  652 A.2d 553 (Del. 1995) ....................................................................................................5

Pursuant to this Court's May 10, 2023 Order, D.I. 559, Plaintiff and Judgment Creditor Crystallex International Corporation ("**Crystallex**") submits this response to the Special Master's Supplemental Report and Recommendation (the "**Supplemental Report**"), D.I. 553, recommending that the Court order the Special Master to begin the process of selling the attached PDVH Shares pursuant to the Court's October 11, 2022 Sale Procedures Order, D.I. 481.[1]

## SUMMARY OF POSITION

**I.** There are no impediments to commencing the Sale Process. That is the core takeaway from the Special Master's Supplemental Report, based on representations of the United States Government in an April 7, 2023 letter to the Special Master (the "**April 7 DOJ Letter**") and months of discussions with all Sale Process Parties, the Special Master's independent advisors, and representatives of the United States Government. The Special Master recommends that preparations for the Marketing Process begin "without any further delay" and that the "Preparation Launch Date be set as soon after June 5, 2023 as the Court is able to consider" the Supplemental Report and any responses thereto. D.I. 553 at 3. Crystallex agrees.

Indeed, subsequent events demonstrate that the case for setting the Preparation Launch Date for as soon after June 5, 2023 as practicable is even stronger than the Special Master's Supplemental Report suggests. In the days after the Supplemental Report was filed, the United States Government published guidance expanding upon its statements in the April 7 DOJ Letter. Through this guidance, OFAC has made clear that sanctions do not limit the ability of the Court and Special Master to conduct the Sale Process, and that interested parties may participate in it, including with the assistance of any necessary advisors, banks, lenders or other individuals or entities necessary

---

[1] Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Court's Sale Procedures Order, D.I. 481, entered October 11, 2022. Crystallex refers to the process for selling the PDVH Shares outlined in the Sale Procedures Order as the "**Sale Process**."

1

to facilitate such participation. Thus, there can be no valid concern that third parties would be unwilling to participate in the Sale Process because of OFAC sanctions.

**II.** The Special Master's and his advisors' view that the current economic environment is favorable for the contemplated sale further rebuts any potential objection of the Venezuela Parties, or anyone else, to initiating the Sale Process now. Although the statutory requirements are simply to publicize the sale and obtain a reasonable price in the context of a forced sale—a standard the Sale Procedures unquestionably meet—a sale now, after consistent growth and improvement at PDVH's operating companies and in a positive business environment, will benefit all involved.

## CRYSTALLEX'S RESPONSE

**I.      The Sale Process May Proceed Without Sanctions Risk**

United States sanctions do not limit the Court's or the Special Master's authority to conduct the Sale Process, nor the ability of the Sale Process Parties or other third parties to take steps in connection with the Sale Procedures. *See, e.g.*, D.I. 443 at 18 ("The Court has not been pointed to any legal authority or any other aspect of the sanctions regime that bars the Court from proceeding with a sale process, up to and including the selection of a winning bidder, provided that legal title to the PDVH Shares is not transferred until after the winning bidder obtains a specific license."); *id.* at 36 ("In light of OFAC's discretionary authority, and the absence of any indication from any U.S. governmental entity (including OFAC) that this Court cannot proceed, the Court will proceed with the sale process, up to and including selecting a winning bid."). The only material limitation on the Sale Process that the Venezuela-related sanctions regime imposes is the requirement that OFAC approve any final buyer of the PDVH Shares before any transfer.

To the extent that the Venezuela Parties and others have previously attempted to argue to the contrary, the Supplemental Report and the April 7 DOJ Letter confirm that OFAC will not contest the Court's prior ruling that a license is not required to conduct the Sale Process, nor will

2

OFAC "take enforcement action against those participating in the Prefatory Steps and those engaging in transactions that are ordinarily incident and necessary to participation in and compliance with such steps." D.I. 553 at 10 (citing D.I. 553-1).[2] Additionally, the Special Master informed the Court that "OFAC intends to implement a favorable licensing policy for license applications in connection with the execution of the sale." *Id.* (quoting D.I. 553-1 at 2).

In the April 7 DOJ Letter, OFAC indicated that it would make its positions public, which it did by publishing FAQ 1123 on May 1, 2023. *See* OFAC, Frequently Asked Questions No. 1123, https://ofac.treasury.gov/faqs/1123 (last visited May 23, 2023). There, OFAC confirmed the Department of Justice's April 7 representation that OFAC will not challenge the Court's construction of the Venezuela-related sanctions regime to permit all Sale Procedure transactions short of executing the sale, nor will OFAC "take enforcement action against any individuals or entities for participating in, facilitating, or complying with the prefatory steps set out in the court's Sale Procedures Order, or for engaging in transactions that are ordinarily incident and necessary to participating in, facilitating, or complying with such steps." *Id*. OFAC also publicly confirmed that it "intends to implement a favorable licensing policy toward such license applications in connection with the execution of a sale as contemplated in the Sale Procedures Order." *Id.*

Expanding on the guidance provided in the April 7 DOJ Letter, OFAC also confirmed it will not take enforcement action against individuals or entities "facilitating" the Prefatory Steps or "engaging in transactions that are ordinarily incident and necessary" to "facilitating" such steps. *Id.* OFAC thus made clear its position that individuals or entities "such as" "potential or actual

---

[2] In the April 7 DOJ Letter, the United States Government defined "Prefatory Steps" as "necessary steps prefatory and antecedent to the consummation of the Sales Transaction, including but not limited to the Marketing and Bidding Processes established in the Sales Order." D.I. 553-1 at 1.

3

credit counterparties" who "facilitat[e]" actions in connection with the Sale Process can confidently provide their services to participants in the Sale Process with no sanctions risk. *Id.*

The Executive Branch has thus made clear that sanctions do not limit the full and unfettered participation of interested parties in all Prefatory Steps contemplated by the Sale Procedures Order. These developments dispense with any previously expressed concern that the sanctions would chill bidding, "and that no sale process should commence absent further guidance from OFAC." D.I. 408 at 12 (Venezuela Parties arguing that "[p]otential bidders and third-parties necessary to facilitate the process face uncertainty as to the legality of *participation* in the Sale Process and the durability of any non-licensed transaction") (emphasis in original). Having issued public guidance confirming that all steps prefatory to a final sale may be taken with zero sanctions risk, OFAC has eliminated any "uncertainty" that the Venezuela Parties previously claimed "would discourage bidders." D.I. 457 at 8.

Moreover, OFAC's public guidance that it will take a favorable view of license applications to close the Sale Transaction undercuts any attempt by the Venezuela Parties to rehash their arguments that current sanctions might dissuade bidders from committing substantial resources to the Sale Process.

**II.     Arguments Regarding Economic Condition, While Legally Irrelevant, Further Undercut Any Attempt To Further Delay The Sale Process**

The Supplemental Report also advises the Court that the current economic conditions and CITGO's recent financial performance create a favorable environment for the proposed sale of the PDVH Shares. *See* D.I. 553 at 11–14. The current state of the oil and gas markets, credit markets, and CITGO (PDVH's primary asset) are irrelevant to the question of whether judgments of United States courts should be enforced in accordance with the law. Nevertheless, these findings are

4

evidence that further delay will prejudice Crystallex, the only creditor of Venezuela (or PDVSA for that matter), with a served and affirmed writ of attachment against the PDVH Shares.[3]

This Court has already held that "all Delaware law requires is a noticed auction of the PDVH shares." D.I. 469 at 2 (internal quotations omitted). The timing of this Court's carefully considered process should not depend on the whims of the market. "[T]he sale process has been designed to maximize the value of the PDVH Shares while generating the proceeds to pay the attached judgments." *Id*. That is more than the law requires. *Id.*

These rulings comport with the decisions of courts in similar circumstances, which have made clear that "a secured party is under no obligation to delay a[n asset] sale to indulge the debtor's 'hope that the [ ] market might recover in time' when . . . faced with 'highly unsteady market conditions.'" *In re Adobe Trucking, Inc.*, 2011 WL 6258233, at *13 (Bankr. W.D. Tex. Dec. 15, 2011) (quoting *Bankers Trust Co. v. J.V. Dowler & Co.*, 47 N.Y.2d 128, 136 (1979) (applying New York law to asset sale triggered by downturn in oil markets)), *aff'd*, 551 F. App'x 167, 167 (5th Cir. 2014). To hold otherwise would be to ignore the nature of a forced sale. It is "forced" because the judgment debtor has refused all prior opportunities to satisfy its judgment creditor, whether facilitated by the voluntary sale of assets or otherwise. That is why a judicial sale is valid under Delaware law so long as a "reasonable process [is] employed to give notice to the public of the sale so that a reasonable price, *considering the forced sale nature of the transaction*, might be obtained." *Deibler v. Atl. Props. Grp., Inc.*, 652 A.2d 553, 557 (Del. 1995) (emphasis added); *accord BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 545 (1994) (holding that "a fair and proper price" for property subject to a forced sale is "the price

---

[3] Crystallex will address in its submission to be filed on May 24, 2023 the status of any additional creditors who may in the future serve Court-approved writs of attachment against the PDVH Shares. But Delaware law allows Crystallex to enforce its judgment and there is no reason for further delay, particularly in light of the Special Master's Supplemental Report and the facts outlined herein.

in fact received at the [judicial] sale, so long as all the requirements of the State's . . . law have been complied with").

The Venezuela Parties have had more than a decade to compensate Crystallex for its expropriated gold mine, and more than six years to pay Crystallex's judgment. Even today, the Venezuela Parties can satisfy Crystallex's judgment and stop the Sale Process. They refuse to do so. While there is no legal basis to delay an execution sale based on market conditions, the conclusions of the Special Master and his advisors that now is an advantageous time to begin the Sale Process further weigh in favor of setting the Preparation Launch Date as soon after June 5, 2023 as is practical.

## CONCLUSION

For the foregoing reasons, Crystallex agrees with the recommendations in the Special Master's Supplemental Report and respectfully submits that the Court should direct the Special Master to begin the Marketing Process "without any further delay" and that the Preparation Launch Date should be set "as soon after June 5, 2023 as the Court is able to consider" the Supplemental Report and any responses thereto.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Robert L. Weigel<br>Jason W. Myatt<br>Rahim Moloo<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York  10166<br>(212) 351-4000<br><br>Miguel A. Estrada<br>Lucas C. Townsend<br>Adam M. Smith<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C.  20036<br>Tel: (202) 955-8500<br>Fax: (202) 467-0539<br><br><br>Dated:  May 23, 2023 | */s/ Jeffrey L. Moyer*<br>Raymond J. DiCamillo (#3188)<br>Jeffrey L. Moyer (#3309)<br>Travis S. Hunter (#5350)<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware  19801<br>(302) 651-7700<br>dicamillo@rlf.com<br>moyer@rlf.com<br>hunter@rlf.com<br><br>*Attorneys for Plaintiff* |