# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-mc-00151-LPS |
| | ) | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## BRIEF OF THE VENEZUELA PARTIES REGARDING THE INCLUSION OF ADDITIONAL JUDGMENTS IN THE SALE PROCESS AND THE ISSUANCE OF UNCONDITIONAL ORDERS OF ATTACHMENT

OF COUNSEL:
Nathan P. Eimer
Lisa S. Meyer
Daniel D. Birk
Gregory M. Schweizer
Emily E. Sullivan
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com
DBirk@eimerstahl.com
GSchweizer@eimerstahl.com
ESullivan@eimerstahl.com

Kenneth J. Nachbar (#2067)
Alexandra M. Cumings (#6146)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@morrisnichols.com
ACumings@morrisnichols.com

*Attorneys for PDV Holding, Inc., and
CITGO Petroleum Corporation*

OF COUNSEL:
Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

Samuel Taylor Hirzel, II (#4415)
HEYMAN ENERIO GATTUSO & HIRZEL LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law

*Attorney for Petróleos de Venezuela, S.A.*

OF COUNSEL:
Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
Brendan B. Gants
Jacobus P. van der Ven
Munger, Tolles & Olson LLP
601 Massachusetts Avenue NW
Suite 500 E
Washington, D.C. 20001
(202) 220-1100
Donald.Verrilli@mto.com

George M. Garvey
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com

A. Thompson Bayliss (#4379)
Stephen C. Childs (#6711)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807
(302) 778-1000
bayliss@abramsbayliss.com
childs@abramsbayliss.com

*Attorneys for Bolivarian Republic of Venezuela*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

NATURE AND STAGE OF PROCEEDINGS ........................................................................... 1

SUMMARY OF ARGUMENT ................................................................................................... 2

STATEMENT OF FACTS .......................................................................................................... 3

ARGUMENT ............................................................................................................................... 5

I.     Under Delaware Law, This Court May Not At This Time Include Any Other
Creditors' Judgments As Additional Judgments In The *Crystallex* Sale Process ................. 5

     A.    Only The Judgments Of Creditors With Valid Attachments May Be
Included In The Sale Process ........................................................................... 5

     B.    No Other Creditors Can Obtain A Valid Attachment On The PDVH Shares
Because The Physical Share Certificate Cannot Be Seized ............................ 7

II.    Under OFAC's Regulations And License Restrictions, This Court May Not At
This Time Issue Unconditional Writs Of Attachment To Any Other Creditors .................. 13

III.   With Respect To The Alter-Ego Creditors, The Third Circuit's Stay
Independently Bars This Court At This Time From Issuing Unconditional Writs
Of Attachment Or Adding Their Judgments To The Sale Process In *Crystallex* ............... 14

IV.   There Is No Need To Reach The Priority Of Additional Judgments At This Time ............ 15

CONCLUSION .......................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aetna Ins. Co. v. Hallock*,
   73 U.S. 556 (1867) ........................................................................................................6

*Audio Technica U.S., Inc. v. United States*,
   963 F.3d 569 (6th Cir. 2020) .....................................................................................12

*Blossom v. Milwaukee & C.R. Co.*,
   70 U.S. 196 (1865) ......................................................................................................14

*Castro v. ITT Corp.*,
   598 A.2d 674 (Del. Ch. 1991) ......................................................................................8

*Comcast Corp. v. FCC*,
   600 F.3d 642 (D.C. Cir. 2010) ...................................................................................11

*Cont'l Illinois Nat. Bank & Tr. Co. v. Chicago, R.I. & P. Ry. Co.*,
   294 U.S. 648 (1935) ....................................................................................................14

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   24 F.4th 242 (3d Cir. 2022) ..........................................................................................4

*Dam Things from Denmark v. Russ Berrie & Co., Inc.*,
   290 F.3d 548 (3d Cir. 2002) .......................................................................................11

*Deng v. HK Xu Ding Co.*,
   No. N21J-04630-AML, 2023 WL 3318322 (Del. Super. Ct. May 8, 2023) .................8, 9, 10

*Ezekiel v. Michel*,
   66 F.3d 894 (7th Cir. 1995) .......................................................................................11

*Hegna v. Islamic Republic of Iran*,
   376 F.3d 226 (4th Cir. 2004) ........................................................................................6

*In re Kane*,
   628 F.3d 631 (3d Cir. 2010) .......................................................................................10

*John Julian Constr. Co. v. Monarch Builders, Inc.*,
   306 A.2d 29 (Del. Super. Ct. 1973) .............................................................................7

*Malloy v. Behrens*,
   971 N.W.2d 392 (N.D. 2022) .......................................................................................7

*Mills v. State*,
   201 A.3d 1163 (Del. 2019) ...........................................................................................9

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*,
   243 F.3d 773 (3d Cir. 2001) .......................................................................................12

*Moreland v. Alpert*,
   124 P.3d 896 (Colo. App. 2005) ...................................................................................8

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)....................................................................................................12

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
    No. 19-mc-290, 2022 WL 611563 (D. Del. Mar. 2, 2022)....................................4, 7

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
    No. 19-mc-290, 2023 WL 2609248 (D. Del. Mar. 23, 2023)............................5, 14

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
    81 F.3d 355 (3d Cir. 1996).......................................................................11, 12

STATUTES

6 Del. C. § 8-102.......................................................................................6, 9

6 Del. C. § 8-112....................................................................................6, 8, 9

8 Del. C. § 168.............................................................................................10

8 Del. C. § 324.......................................................................................*passim*

Ch. 339, Laws of 1998, § 68........................................................................9

OTHER AUTHORITIES

31 C.F.R. § 591.202.................................................................................4, 13

31 C.F.R. § 591.310.....................................................................................10

31 C.F.R. § 591.407.......................................................................................4

33 C.J.S. Executions § 345............................................................................6

Fed. R. Civ. P. 69............................................................................................5

Pursuant to this Court's May 10, 2023 order, D.I. 559, the Venezuela Parties[1] respectfully submit this brief regarding the inclusion of additional judgments in the sale process and the issuance of unconditional orders of attachment. The Venezuela Parties contend that no other creditor at this time can satisfy the legal requirements to be included as an additional judgment in the sale process or to obtain an unconditional writ of attachment.

## NATURE AND STAGE OF PROCEEDINGS

As this Court is well aware, this is a post-judgment execution proceeding by Plaintiff Crystallex International Corporation (Crystallex), a judgment creditor of the Bolivarian Republic of Venezuela (the Republic). Pursuant to 8 Del. C. § 324, Crystallex obtained and served a writ of attachment to execute upon shares of stock in PDV Holding, Inc. (PDVH) owned by Petróleos de Venezuela, S.A. (PDVSA), a Venezuelan corporation that is wholly owned by the Republic. D.I. 95. In October 2022, this Court entered a Sale Procedures Order (SPO) setting forth a process to sell as many PDVH shares "as necessary to satisfy the outstanding judgment of Crystallex." D.I. 481 at 2. The SPO also provides a mechanism for this Court to include "additional judgments" in the sale process "in accordance with applicable law." *Id.* ¶ 30. On May 10, 2023, the Court directed the Sale Process Parties to brief (1) whether any other "judgments should be regarded as 'Additional Judgments' under" the SPO; (2) whether "the Court should issue full, unconditional orders of attachment … to any creditors" (and if so, whether it should "direct service" of those attachment orders); and (3) how the Court should "determine the priority of any … Additional Judgments." D.I. 559 ¶ 3.

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to them in the Court's January 14, 2022 Order, D.I. 234, and the Sale Procedures Order, D.I. 481.

## SUMMARY OF ARGUMENT

1.      This Court may not at this time lawfully include any other creditors' judgments as "additional judgments" for purposes of the sale process. Under Delaware law, a judgment creditor cannot obtain a court-ordered sale of shares unless it first obtains a valid attachment against the shares. And here, no other creditor can obtain a valid attachment against the PDVH shares merely through issuance of a writ of attachment served upon PDVH. As a Delaware court confirmed just this month, Delaware law provides that the attachment is not laid until the officer executing the writ actually seizes the physical share certificate, which neither PDVH nor any other of the Venezuela Parties possesses. Instead, that certificate presumably is in the hands of the illegitimate and independent Maduro regime. Although this Court previously held that PDVSA was judicially estopped from contending that Crystallex's writ of attachment must be quashed on this ground in light of certain representations made in connection with the validity of Crystallex's attachment back in 2018, that ruling does not preclude the Venezuela Parties from making this argument against any other creditors. Regardless of this Court's prior estoppel ruling as to Crystallex, the Venezuela Parties have never made any inconsistent representations about whether additional creditors can obtain new attachments that are valid despite the absence of the physical certificate. And because no creditor has attempted to invoke any process under Delaware law for cancelling and reissuing the physical certificate, which at a minimum would require a specific license from OFAC, no attachments issued for these creditors would be effective and no shares can be sold to satisfy their judgments. Accordingly, their judgments cannot qualify as "additional judgments."

2.      This Court likewise may not at this time lawfully issue unconditional writs of attachment to any other creditors. OFAC's regulations unambiguously require a specific license before writs of attachment may be issued—as this Court previously has recognized—and OFAC's

non-enforcement policy concerning participation in the sale process does not extend to issuance of unconditional writs of attachment. Although OFAC has licensed this Court to issue writs of attachment to certain creditors, that license is expressly limited to a creditor who is "named an 'Additional Judgment Creditor' by the Court pursuant to the Sale Procedures Order." D.I. 555 at 8. Thus, because none of the creditors may lawfully be included as "Additional Judgment Creditor[s]" at this time, they also may not be issued unconditional writs of attachment now.

3.    The alter-ego creditors face a further impediment, because their attachment proceedings have been stayed by the Third Circuit. That is an independent reason why this Court cannot issue writs of attachment to them, and thus cannot include them as Additional Judgment Creditors in the *Crystallex* case. Moreover, it would be imprudent to include them in the *Crystallex* sale process when the pending appeal could eliminate the basis for their inclusion.

4.    Because this Court should neither include any additional judgments nor issue any unconditional writs of attachments, there is no need for it to resolve the relative priority of any additional creditors now, especially when the status of the alter-ego creditors may be reversed on appeal. If this Court nevertheless disagrees, the Venezuela Parties take no position here on this novel and complicated issue, as it is primarily relevant to the relationship among the creditors.

## STATEMENT OF FACTS

In August 2018, this Court issued a writ of attachment *fieri facias* to attach PDVSA's shares of stock in PDVH in satisfaction of Crystallex's judgment. D.I. 95. The writ was served on PDVH, as garnishee of PDVSA, D.I. 96, and it directed PDVH to file an answer that would "specify what shares of stock and other assets or rights incident to that stock ownership belonging to or owing to PDVSA … you currently possess," D.I. 95 at 7. The writ further directed PDVH, as the garnishee, "to retain the items stated by you in your answer" pending further order of the

court. *Id.* PDVH's answer explained that PDVSA owned all "1,000 shares of PDVH stock, which are certificated in a single instrument," but that "PDVH does not possess any certificated shares of PDVH stock" because it did not hold the physical certificate. D.I. 177 ¶ 7.

In 2019, the President of the United States "blocked any transfer or dealing in PDVSA's property," and the U.S. Treasury Department's Office of Foreign Assets Control (OFAC) prohibited "'the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect [blocked] property or interests in [blocked] property,'" absent "'a specific license issued by OFAC.'" *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 24 F.4th 242, 247 (3d Cir. 2022) (quoting 31 C.F.R. § 591.407); *see* 31 C.F.R. § 591.202(e) (prohibiting "any attachment" against the blocked property absent a "license[]"). Crystallex was issued a writ of attachment in 2017 "because Venezuelan property in the United States had not yet been blocked," and it remains the only entity to have been issued an unconditional writ of attachment on the PDVH shares. *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, No. 19-mc-290, 2022 WL 611563, at *3 n.5 (D. Del. Mar. 2, 2022) (*OIEG I*).

In October 2022, this Court entered the SPO, which set forth a process to sell as many PDVH shares "as necessary to satisfy the outstanding judgment of Crystallex." D.I. 481 at 2. The SPO also contains a mechanism for this Court to include "additional judgments" in the sale process "in accordance with applicable law." *Id.* ¶ 30.

On May 1, 2023, OFAC issued a license authorizing "the issuance and service of a writ of attachment *fieri facias* for any party named an 'Additional Judgment Creditor' by the Court pursuant to the Sale Procedures Order." D.I. 555 at 8. Two sets of creditors are now asking this Court to designate their judgments "additional judgments" under the SPO and to issue them writs

of attachment against the PDVH shares. *See* D.I. 558. One set consists of two creditors of *PDVSA*—namely, ConocoPhillips and Red Tree Investments. The other set consists of six creditors of *the Republic* (the alter-ego creditors) that have obtained a ruling that PDVSA is the Republic's alter ego. *See OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, No. 19-mc-290, 2023 WL 2609248 (D. Del. Mar. 23, 2023) (*OIEG II*). That ruling is currently on appeal to the Third Circuit, which has stayed proceedings in all the alter-ego cases. *See* D.I. 559 ¶ 2. This Court has ordered briefing on whether it should grant both sets of creditors their requests and how it should determine the priority of any additional judgments it includes in the sale process. *Id.* ¶ 3.

## ARGUMENT

I.  **Under Delaware Law, This Court May Not At This Time Include Any Other Creditors' Judgments As Additional Judgments In The *Crystallex* Sale Process.**

The SPO recognizes that this Court may include "additional judgments" in the sale process only "in accordance with applicable law." D.I. 481 ¶ 30. Under Delaware law, which applies here, Fed. R. Civ. P. 69(a), only the judgments of creditors with valid attachments may be included. And no other creditors can currently obtain valid attachments against the PDVH shares, because the physical certificate is not in PDVH's possession and thus cannot be seized by the marshal through service of the writ on PDVH. Instead, it presumably is in the hands of the Maduro regime. As the Delaware Superior Court recently held, the certificate-seizure requirement was expressly added by the General Assembly to prevent an attachment sale in precisely these circumstances.

### A.  Only The Judgments Of Creditors With Valid Attachments May Be Included In The Sale Process.

As this Court has recognized, Delaware law—specifically, Section 324 of the Delaware General Corporation Law, 8 Del. C. § 324—governs the process to sell the PDVH shares to execute on creditors' judgments against PDVSA or the Republic. D.I. 481 at 5-6, 8, 19; *see* Fed. R. Civ. P. 69(a). Section 324 provides, in relevant part:

> The shares of any person in any corporation … may be attached … if such person appears on the books of the corporation to hold or own such shares …. So many of the shares … may be sold at public sale to the highest bidder, as shall be sufficient to satisfy the debt … upon an order issued therefor by the court from which the attachment process issued, and after such notice as is required for sales upon execution process. Except as to an uncertificated security as defined in § 8-102 of Title 6, *the attachment is not laid and no order of sale shall issue unless* § 8-112 of Title 6 has been satisfied.

8 Del. C. § 324(a) (emphasis added). Section 324(a) thus requires a sequential process in which "the attachment is … laid" and only then may a sale be held "upon an order issued therefor by the court from which the attachment process issued." *Id.* Moreover, only "[s]o many of the shares … may be sold … as shall be sufficient to satisfy the debt" of the attachment holder. *Id.* By linking the attachment and sale prerequisites, and by limiting the sale to the number of shares necessary to the attachment-holder's judgment, Section 324 requires that any sale be limited to judgment creditors holding valid attachments. In other words, because this Court currently may sell only as many of the PDVH shares as necessary to satisfy Crystallex's judgment, it cannot hold an auction to sell additional shares except to the extent necessary to satisfy the judgments of the holders of additional valid attachments. Accordingly, this Court may not proceed with a sale to satisfy any creditor's judgment unless and until that creditor has an effective attachment on the PDVH shares.

Bedrock legal principles reinforce Section 324's unambiguous text. The issuance of a valid writ of attachment is "a critical step in the eventual execution of the property." *Hegna v. Islamic Republic of Iran*, 376 F.3d 226, 233 (4th Cir. 2004); *see* 33 C.J.S. Executions § 345 ("An execution sale must be made by an officer having the proper authority to do so by statute, judgment, *and* writ of execution." (emphasis added)). Without a valid writ, a purported execution sale generally is deemed void. *See, e.g.*, *Aetna Ins. Co. v. Hallock*, 73 U.S. 556, 559 (1867); 33 C.J.S. Executions § 345. Indeed, the North Dakota Supreme Court applied these principles just last year in particularly stringent fashion, invalidating an execution sale on a home because a necessary

appraisal that was required to occur *before* the writ of execution had issued instead took place *after* the writ's issuance. *See Malloy v. Behrens*, 971 N.W.2d 392, 397 (N.D. 2022). Moreover, because "attachment is a summary process in derogation of the common law," attachment statutes must be "strictly construed in favor of the party against whom the proceeding is employed," including as to "the method of enforcing the remedy." *John Julian Constr. Co. v. Monarch Builders, Inc.*, 306 A.2d 29, 33 (Del. Super. Ct. 1973). Thus, any doubt as to whether Section 324 requires a valid attachment to participate in a sale process must be resolved in favor of the Venezuela Parties.

Consistent with these strict requirements, this Court has always understood that a valid attachment is necessary for a creditor to have its judgment added to the sale process. The SPO itself describes the combination of "the Crystallex Judgment" and the "Additional Judgments" as the "*Attached* Judgments," and provides that "no PDVH Shares shall be sold, nor proceeds from any sale thereof distributed, to satisfy any judgments that are not *Attached* Judgments." D.I. 481 ¶ 30 (emphases added). And last year, this Court ruled that it would not "add ConocoPhillips' judgment to the sale process ... unless ConocoPhillips establishes a concrete interest in the PDVH Shares," which would occur only when "a lien on" the PDVH shares "is created under Delaware law." *OIEG I*, 2022 WL 611563, at *8-9 & n.17.

**B.     No Other Creditors Can Obtain A Valid Attachment On The PDVH Shares Because The Physical Share Certificate Cannot Be Seized.**

None of the other creditors here can obtain a valid attachment against the PDVH shares because the physical share certificate cannot be seized, as Delaware law requires, merely through service on PDVH. Although this Court held in 2021 that PDVSA was judicially estopped from making this argument in seeking to quash *Crystallex's* 2018 writ of attachment, the Venezuela Parties have never taken even arguably inconsistent positions, let alone clearly inconsistent positions, about the ability of *additional creditors* to obtain valid attachments now.

1.      As noted, Section 324 provides that "[e]xcept as to an uncertificated security"—an exception that does not apply here—an "attachment *is not laid and no order of sale shall issue unless* § 8-112 of Title 6 has been satisfied." 8 Del. C. § 324(a) (emphasis added); *see* D.I. 177 ¶ 7 (explaining that the PDVH shares are "certificated"). Section 8-112 in turn provides that "the interest of a debtor in a certificated security" such as the PDVH shares "may be reached by a creditor only by *actual seizure of the security certificate* by the officer making the attachment or levy." 6 Del. C. § 8-112(a) (emphasis added).

Notably, the Delaware Superior Court just this month confirmed that these statutes mean what they say: "Delaware law requires physical seizure of a stock certificate before certificated shares may be attached and sold." *Deng v. HK Xu Ding Co.*, No. N21J-04630-AML, 2023 WL 3318322, at *1 (Del. Super. Ct. May 8, 2023). Section 324 and Section 8-112 are "unambiguous" in establishing that "to attach certificated shares of a corporation and obtain an order to sell the security to satisfy a judgment, the officer making the attachment must actually seize the certificate" through "physical seizure." *Id.* at *3. Thus, where the "physical seizure" of certificated shares "has not been accomplished," any request "to sell the shares" must be "denied" and any "order granting" such a request "must be vacated." *Id.* at *1.

The "history" of "Sections 324 and 8-112" confirms what the text already makes clear. *Id.* at *4. Before 1998, "Section 324(a) expressly permitted an officer to auction and sell certificated stock without physically seizing the certificate." *Id.*; *see also Castro v. ITT Corp.*, 598 A.2d 674, 682 (Del. Ch. 1991). The prior framework made Delaware an outlier among the states, as it departed from the default requirement in the Uniform Commercial Code (UCC) that attachment of certificated shares requires physical seizure of the actual certificates. *See Castro*, 589 A.2d at 680-82; *see, e.g.*, *Moreland v. Alpert*, 124 P.3d 896, 899 (Colo. App. 2005) (confirming that

8

Colorado's adoption of this UCC requirement meant that there "must be … physical possession[]
of a stock certificate before a creditor can acquire a debtor's interest in the certificate").

In 1998, however, the Delaware General Assembly brought itself into conformity with the
majority position and the UCC by amending Section 324(a) to provide that "[e]xcept as to an
uncertified security as defined in § 8-102 of Title 6, the attachment is not laid and no order of
sale shall issue unless § 8-112 of Title 6 has been satisfied." 8 Del. C. § 324(a), Ch. 339, Laws of
1998, § 68. In the amendment's synopsis, the General Assembly explained it had altered Section
324 to establish that "the execution process it provides is available" for "certificated securities[]
only upon satisfaction of the requirements of Section 8-112 of Title 6, including presentation of
the stock certificates." *Id.*, Synopsis of Section 324; *accord* D.I. 179-1 at 14. The "synopsis to the
1998 amendments to Section 324 removes any question that the General Assembly expressly
intended" that "the officer making the attachment must actually seize the certificate" in order "to
sell the security to satisfy a judgment." *Deng*, 2023 WL 3318322, at *3; *see Mills v. State*, 201
A.3d 1163, 1177 (Del. 2019) (noting that a legislative "synopsis … is about as clear a statement
of legislative intent as one could ask for, other than a statement to that effect in the statutory text").

As PDVH has informed this Court previously, it "does not possess any certificated shares
of PDVH stock." D.I. 177 ¶ 7. Instead, the certificate—"a single instrument" for all "1,000 shares
of PDVH stock"—presumably is in the hands of the illegitimate and independent Maduro regime.
*Id.*; *see* D.I. 215-1 at 43. Without the physical certificate, Delaware law prohibits any other
creditors from attaching the PDVH shares and being included in the *Crystallex* sale process. In
*Deng*, for instance, the court vacated an order granting a motion to auction a debtor's stock under
Section 324 to satisfy a creditor's judgment because the "stock certificate [was] in the custody of
Chinese police." 2023 WL 3318322, at *1. Because the sheriff had "not seized" the "certificate"

and "cannot seize it while it remains in Chinese custody," the court observed, the "motion to sell the shares should have been denied, and the order granting that motion must be vacated." *Id.* at *1-2. Because PDVH similarly lacks the physical certificate for the shares, no other creditor can obtain a valid attachment and thus have its judgment added to the *Crystallex* sale process.[2]

2.     Although this Court refused to consider the certificate-seizure issue with respect to Crystallex's attachment, its rationale is inapplicable to other creditors.  In 2021, this Court held that PDVSA was judicially estopped from arguing that Crystallex's writ of attachment must be quashed because PDVH lacked a physical certificate for the shares. D.I. 234 at 23-26. According to the Court, PDVSA had "persuaded the Court not to impose a bond requirement when it stayed proceedings pending PDVSA's interlocutory appeal" by representing that Crystallex's writ of attachment "was valid" and hence provided "sufficient security in lieu of a bond." *Id.* at 24. Based on that understanding, this Court concluded that "PDVSA's new contention that the writ is not valid under Delaware law because PDVH does not possess the physical certificate—and, thus, the writ has no value to Crystallex—is inconsistent with PDVSA's prior assurances that the writ secured Crystallex." *Id.* at 25. "To permit PDVSA to avoid attachment and execution based on" this change in positions, this Court concluded, "would be grossly unfair to Crystallex." *Id.* at 26.

In the current context, by contrast, there is no "irreconcilable inconsistency" that would justify "dismiss[ing]" the Venezuela Parties' argument "without considering the merits." *In re*

---

[2] Although Delaware law may provide a mechanism to secure an order compelling PDVSA, the owner of the PDVH shares, to request that PDVH cancel and reissue the certificate—at least in those cases where PDVSA is the "debtor"—no creditor has purported to invoke this process, let alone posted the requisite bond. *See* 8 Del. C. § 168(b). In all events, cancelling and reissuing the shares would, at minimum, require an additional license from OFAC. A prohibited "transfer" under OFAC's regulations includes "the making … of any … certificate," "the purpose, intent, or effect of which is to create … or alter, directly or indirectly any right, remedy, power, privilege, or interest with respect to" the PDVH shares. 31 C.F.R. § 591.310. Thus, as ConcocoPhillips has observed, "reissuance" of the shares "could be deemed a transfer of an interest in blocked property," D.I. 418 at 4, and the May 3, 2023 license does not cover that act, *see* D.I. 555 at 8.

*Kane*, 628 F.3d 631, 638-39 (3d Cir. 2010); *see Comcast Corp. v. FCC*, 600 F.3d 642, 647 (D.C. Cir. 2010) (observing that any "[d]oubts about inconsistency often should be resolved by assuming there is no disabling inconsistency"). In assuming the validity of Crystallex's attachment, PDVSA did not say anything about the seizure requirement, and the Venezuela Parties have never suggested, much less asserted, that any new writ of attachment granted to a creditor other than Crystallex would be effective notwithstanding the inability of the marshal to seize the physical certificate. *See, e.g.*, *Dam Things from Denmark v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 559 (3d Cir. 2002) (noting that "the threshold requirement of inconsistency is not satisfied because the representations made regarding" one version of a doll in an intellectual-property dispute "do not pertain to" another version). Even if a statement that an attachment protects one creditor from loss pending appeal impliedly represents that the attachment is somehow "valid," such a statement would not necessarily imply anything about the legal requirements for obtaining a valid attachment, rather than simply an assumption that the requirements had been met in that case; and that would not necessarily imply the same is true for additional creditors. Accordingly, it "is not 'irreconcilably inconsistent,'" *id.*, for the Venezuela Parties to argue that the marshal *cannot currently seize* the physical certificate and thereby effectuate a valid attachment for additional creditors, regardless of the validity of the marshal's actions in executing Crystallex's writ of attachment *in 2018*. In short, because the additional creditors who are seeking writs of attachment are not in "the *same*" situation as Crystallex with respect to Venezuela Parties' representations, "judicial estoppel is inapplicable." *Ezekiel v. Michel*, 66 F.3d 894, 905 (7th Cir. 1995).

In any event, "the 'strong medicine' of judicial estoppel" is not warranted here. *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 364 (3d Cir. 1996). "Judicial estoppel is an extraordinary remedy to be invoked when a party's inconsistent behavior will

otherwise result in a miscarriage of justice," not "a technical defense for litigants seeking to derail potentially meritorious claims." *Id.* at 365 (cleaned up); *see also Audio Technica U.S., Inc. v. United States*, 963 F.3d 569, 575 (6th Cir. 2020) ("Judicial estoppel must be 'applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement.'"). Given that "judicial estoppel is often the harshest remedy that a court can impose," this Court "may not invoke the doctrine" where that sanction is not "tailored to address the harm identified." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 784 (3d Cir. 2001) (cleaned up).

In 2021, this Court concluded that judicial estoppel was an appropriate remedy on the theory that allowing "PDVSA to avoid attachment and execution" after securing a stay without posting a bond "would be grossly unfair to Crystallex." D.I. 234 at 26. Having *already* addressed that harm, however, there would be nothing equitable about *further* sanctioning the Venezuela Parties by precluding them from advancing a meritorious defense against other creditors who have never relied on any implicit representation about whether the physical certificate must be seized for an attachment to be valid (and who are well aware of the certificate requirement, having devoted assiduous attention to the *Crystallex* proceedings). *See New Hampshire v. Maine*, 532 U.S. 742, 751 (2001) (indicating that courts should consider "whether the party seeking to assert an inconsistent position would … impose an unfair detriment on the opposing party if not estopped"). Extending the estoppel would simply grant the additional creditors *a windfall*, obviating their need to satisfy a requirement under Delaware law that the General Assembly specifically adopted to bring Delaware into conformity with other jurisdictions. *See supra* at 8-9.

**II.     Under OFAC's Regulations And License Restrictions, This Court May Not At This Time Issue Unconditional Writs Of Attachment To Any Other Creditors.**

OFAC regulations unambiguously provide that the issuance of "any attachment … is null and void with respect to" the PDVH shares "[u]nless licensed," 31 C.F.R. § 591.202(e), as this Court has previously recognized. *See* D.I. 234 at 17 (observing that "the current sanctions regime does appear to block issuance of new writs of attachment on Venezuelan assets in the United States without an OFAC license"). Accordingly, this Court's conditional orders concerning attachments authorize the clerk to sign and seal the writs of attachments only upon evidence that OFAC "has either (i) authorized the issuance and service of a writ of attachment or (ii) removed the sanctions under which the PDVH shares are currently blocked property." *E.g.*, 19-mc-432 D.I. 43.

OFAC, of course, has yet to lift the applicable sanctions. At most, it has adopted a "nonenforcement policy … limited to the facts and circumstances of" the *Crystallex* litigation stating that it will "not take enforcement action against individuals or entities for participating in or complying with the Prefatory Steps set out in the Sales Order." D.I. 553-1 at 2-3. That nonenforcement policy, however, does not and cannot alter the sanctions set forth in executive orders and binding regulations, let alone with respect to the distinct act of issuing "any attachment." 31 C.F.R. § 591.202(e).

And while OFAC has granted a specific license to this Court to issue writs of attachment to certain creditors, that license is expressly limited to those creditors who are properly "named as an 'Additional Judgment Creditor' by the Court pursuant to the Sale Procedures Order." D.I. 555 at 8. Accordingly, because no other creditors can be added to the sale process "in accordance with applicable law" at this time, D.I. 481 ¶ 30; *see supra* Pt. I, they cannot lawfully be issued unconditional writs of attachment either.

13

**III.    With Respect To The Alter-Ego Creditors, The Third Circuit's Stay Independently Bars This Court At This Time From Issuing Unconditional Writs Of Attachment Or Adding Their Judgments To The Sale Process In *Crystallex*.**

Wholly apart from everything above, the alter-ego creditors are not entitled to any further relief at this time because their own attachment cases have been stayed by the Third Circuit. *See* D.I. 559 ¶ 2. Although this Court has "read the Third Circuit's stay order" to allow the alter-ego creditors to present arguments in the *Crystallex* litigation regarding issues that may impact their rights—an interpretation with which the Venezuela Parties respectfully disagree—such "participation" cannot extend to issuance of unconditional writs of attachment or adding their judgments to the *Crystallex* sale process. *Id.*

To begin, the Court obviously cannot grant the alter-ego creditors a writ of attachment in the *Crystallex* case. Such relief is being sought and can be entered only in their own individual cases. *See OIEG II*, 2023 WL 2609248, at *1. So issuing unconditional writs of attachment would be a clear violation of the Third Circuit's stay. And if the alter-ego creditors do not even have an unconditional writ of attachment, they necessarily do not have an effective attachment (wholly apart from the certificate-seizure requirement), so they also cannot be added to the *Crystallex* sale process under Delaware law. *See supra* Pt. I.A.

Nor would it even be prudent to include the alter-ego creditors in the *Crystallex* sale process given the current uncertainty about their status. The prospect that the alter-ego determinations underlying their claims could soon be reversed counsels strongly in favor of waiting to see how the pending appeals are resolved. *See Cont'l Illinois Nat. Bank & Tr. Co. v. Chicago, R.I. & P. Ry. Co.*, 294 U.S. 648, 685 (1935) (delay in preparing and consummating reorganization plan justified by "the many doubts and uncertainties arising from the present litigation"); *Blossom v. Milwaukee & C.R. Co.*, 70 U.S. 196, 209 (1865) (explaining that the official carrying out a judicial sale may always "postpone the sale" when "the time selected, or other attending circumstances, will be

14

likely to produce great sacrifice of the property"). It would make no sense for the parties, the Special Master, and any bidders to proceed with a sale process where the amount of judgments at issue—and thus the number of shares that need to be sold—could drastically decrease mid-auction. Indeed, that presumably is why the Special Master and this Court provided that any additional judgments must be identified within 10 days of the launch of the sale process. D.I. 481 ¶ 30.

## IV.   There Is No Need To Reach The Priority Of Additional Judgments At This Time.

For all these reasons, this Court should neither include any additional judgments in the sale process nor issue any unconditional writs of attachments to additional creditors. Accordingly, there is no need for this Court to resolve the relative priority of any (nonexistent) additional judgments now. If this Court nevertheless disagrees, the Venezuela Parties take no position on this novel and complicated issue—where creditors sought writs of attachment at different times, were granted orders contingently authorizing issuance of the writs at different times, and may be issued writs to serve at the same or different times—as the question is one that is primarily of relevance to the creditors. In all events, it would be particularly premature to resolve the relative priority of additional judgments when the status of the alter-ego creditors is the subject of the pending appeal. *See supra* Pt. III.

CONCLUSION

The Venezuela Parties respectfully submit that, at this time, this Court may not lawfully include any additional judgments in the sale process or issue any unconditional writs of attachment to additional creditors. If this Court nevertheless does so, the Venezuela Parties take no position on the priority of additional judgments.

RESPECTFULLY SUBMITTED,

May 24, 2023

OF COUNSEL:                            MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Nathan P. Eimer
Lisa S. Meyer                          */s/ Kenneth J. Nachbar*
Daniel D. Birk                         Kenneth J. Nachbar (#2067)
Gregory M. Schweizer                   Alexandra M. Cumings (#6146)
Emily E. Sullivan                      1201 North Market Street
EIMER STAHL LLP                        Wilmington, DE 19801
224 South Michigan Avenue              (302) 658-9200
Suite 1100                             KNachbar@morrisnichols.com
Chicago, IL 60604                      ACumings@morrisnichols.com
(312) 660-7600
NEimer@eimerstahl.com                  *Attorneys for PDV Holding, Inc., and*
LMeyer@eimerstahl.com                  *CITGO Petroleum Corporation*
DBirk@eimerstahl.com
GSchweizer@eimerstahl.com
ESullivan@eimerstahl.com


OF COUNSEL:                            HEYMAN ENERIO GATTUSO & HIRZEL LLP
Joseph D. Pizzurro
Kevin A. Meehan                        */s/ Samuel Taylor Hirzel, II*
Juan O. Perla                          Samuel Taylor Hirzel, II (#4415)
CURTIS, MALLET-PREVOST,                300 Delaware Avenue, Suite 200
COLT & MOSLE LLP                       Wilmington, DE 19801
101 Park Avenue                        (302) 472-7300
New York, NY 10178                     shirzel@hegh.law
(212) 696-6000
jpizzurro@curtis.com                   *Attorney for Petróleos de Venezuela, S.A.*
kmeehan@curtis.com
jperla@curtis.com

OF COUNSEL:
Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
Brendan B. Gants
Jacobus P. van der Ven
Munger, Tolles & Olson LLP
601 Massachusetts Avenue NW
Suite 500 E
Washington, D.C. 20001
(202) 220-1100
Donald.Verrilli@mto.com

George M. Garvey
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com

ABRAMS & BAYLISS LLP

*/s/ Stephen C. Childs*
A. Thompson Bayliss (#4379)
Stephen C. Childs (#6711)
20 Montchanin Road, Suite 200
Wilmington, DE 19807
(302) 778-1000
bayliss@abramsbayliss.com
childs@abramsbayliss.com

*Attorneys for Bolivarian Republic of Venezuela*

17