IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 17-151-LPS |

## GOLD RESERVE INC.'S OPENING BRIEF ADDRESSING ISSUES RAISED IN THE COURT'S MAY 10, 2023, MEMORANDUM ORDER

*OF COUNSEL*:

Matthew H. Kirtland
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, DC 20001
Tel: (202) 662-0200
matthew.kirtland@nortonrosefulbright.com

Katherine G. Connolly
NORTON ROSE FULBRIGHT US LLP
555 California Street, Suite 3300
San Francisco, CA  94104
Fax: (628) 231-6799
katie.connolly@nortonrosefulbright.com

Dated: May 24, 2023

.

Kevin J. Mangan (Del. Bar No. 3810)
Matthew P. Ward (Del. Bar No. 4471)
Stephanie S. Riley (Del. Bar No. 5803)
WOMBLE BOND DICKINSON (US) LLP
1313 N. Market St., Suite 1200
Wilmington, DE 19801
Telephone: 302-252-4320
kevin.mangan@wbd-us.com
matthew.ward@wbd-us.com
stephanie.riley@wbd-us.com

*Attorneys for Gold Reserve Inc*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................iii

INTRODUCTION .............................................................................................................................. 1

RESPONSES TO THE COURT'S QUESTIONS ........................................................................... 2

    A. Which, If Any, Judgments Should Be Regarded as "Additional Judgments" Under the Sale Procedures Order Entered in the Crystallex Action? ................................................. 2

    B. Should the Court Issue Full, Unconditional Orders of Attachment (Including by Converting Conditional Grants) to Any Creditors?  If Yes, Should the Court Direct Service of Any Such Orders of Attachment? .................................................................... 2

    C. How Should the Court Determine the Priority of Any Judgments That Are Made Additional Judgments? ........................................................................................................... 3

        1. The Normal Process to Execute on Delaware Corporate Shares ........................... 3

        2. The Crystallex Writ and the Special Master ............................................................ 5

        3. The Sale Procedures Order ........................................................................................ 5

        4. The OFAC Sanctions and the License ..................................................................... 7

        5. Analysis and Position on Priority ............................................................................. 8

CONCLUSION ................................................................................................................................. 11

## **TABLE OF AUTHORITIES**

**Cases**

*Bank of Bos. v. Haufler*,
 482 N.E.2d 542 (Mass. App. Ct. 1985) ....................................................................... 11

*Deutsche Bank Nat. Tr. Co. v. Ball*,
 No. 10-CV-0872-MJR, 2012 WL 1574694 (S.D. Ill. May 3, 2012) ........................... 6

*Exch. Comm'n v. Callahan*,
 193 F. Supp. 3d 177 (E.D.N.Y. 2016) ....................................................................... 10

*Hulbert v. Hulbert*,
 111 N.E. 70 (N.Y. 1916) ............................................................................................ 11

*Martin v. Cadle Co.*,
 133 S.W.3d 897 (Tex. Ct. App. 2004) ....................................................................... 11

*Midwest Bank v. Goldsmith*,
 467 F. Supp. 3d 242 (M.D. Pa. 2020) ........................................................................ 10

*S. Rock, Inc. v. B & B Auto Supply*,
 711 F.2d 683 (5th Cir. 1983) ..................................................................................... 11

*S. Ry. Co. v. United States*,
 306 F.2d 119 (5th Cir. 1962) ..................................................................................... 11

*Stearns Bank Nat. Ass'n v. Marrick Properties, LLC*,
 No. 8:11-CV-2305-T-30AEP, 2012 WL 1155657 (M.D. Fla. Apr. 5, 2012) ............. 6

*United States v. Branch Coal Corp.*,
 390 F.2d 7 (3d Cir. 1968) ........................................................................................... 6

*United States v. Sinclair*,
 347 F. Supp. 1129 (D. Del. 1972) .............................................................................. 8

**Statutes**

6 Del.C. § 8-112(a) .............................................................................................................. 3, 4

6 Del.C. § 8-112(b) ................................................................................................................. 4

6 Del.C. § 8-112(e) ................................................................................................................. 8

8 Del.C. § 324(a) ................................................................................................................ 3, 4

10 Del.C. § 5031 ................................................................................................................. 3, 4

10 Del.C. § 5081 ..................................................................................................................... 4

10 Del.C. § 5082 ..................................................................................................................... 4

10 Del.C. § 5083 ..................................................................................................................... 3

10 Del.C. § 5084 ................................................................................................................. 3, 4

28 U.S.C. § 1651 ................................................................................................................. 5, 8

28 U.S.C. § 2004 ..................................................................................................................... 6

iii
WBD (US) 62152160v1

**Rules**

Fed. R. Civ. P. 53 .................................................................................................................... 10

Fed. R. Civ. P. 69(a)(1) ............................................................................................................ 3

WBD (US) 62152160v1

## INTRODUCTION

Gold Reserve Inc. ("Gold Reserve") respectfully submits this Opening Brief to address the three questions posed by the Court in its May 10, 2023 Order.

The May 4, 2023 publication of the License issued on May 1, 2023 by the Office of Foreign Asset Control of the United States Department of the Treasury ("OFAC") makes each of the writs of attachment issued prior to the date of the License – whether conditional or otherwise – ripe for enforcement. As such, all judgments for which such writs have been issued, including the judgment held by Gold Reserve, should be considered Additional Judgments under the Sale Procedures Order. Consistent with Delaware law and in exercise of the Court's discretion, each of these Additional Judgments should be given priority over all other judgments for which a writ of attachment has not yet been issued.

As for priority among the existing writs, the Court, through the appointment of the Special Master and the entry of the Sale Procedures Order, has exercised jurisdiction over PDVSA's interest in the PDV Holding, Inc. shares (the "PDVH Shares"). Prior to the issuance of the License, Crystallex procured a writ of attachment and Gold Reserve and others obtained writs conditioned on the issuance of the License. As such, those creditors who obtained pre-License conditional writs (including Gold Reserve) are each in the same position in establishing priority and this Court should order that they are *pari passu* and receive a pro-rata distribution from the prospective sale of the PDVH Shares. If any other judgments are subsequently deemed Additional Judgments, they should be afforded priority and satisfied (a) after the judgments for which writs (including conditional writs) have already issued and (b) in the order that any such subsequent writs are delivered to the U.S. Marshals or served by the U.S. Marshals.

## RESPONSES TO THE COURT'S QUESTIONS

**A. Which, If Any, Judgments Should Be Regarded as "Additional Judgments" Under the Sale Procedures Order Entered in the Crystallex Action?**

The Additional Judgments should include the judgments for which this Court authorized a conditional writ of attachment prior to May 4, 2023, when the Court docketed OFAC License No. Venezuela-EO13884-2023-1057131-1 ("License") allowing the issuance and service of writs of attachment. *See* No. 1:17-mc-00151, D.I. 555 at 7–8. With this License issued, Gold Reserve and the other judgment creditors holding conditional writs should be permitted to enforce their judgments against the PDVH Shares through the Sale Procedures adopted by this Court if and when the Third Circuit lifts the temporary administrative stay. *See* 3d Cir. No. 23-1652, D.I. 22. In the meantime, this Court can and should grant Additional Judgment status to Gold Reserve and the other judgment creditors who obtained orders issuing conditional writs of attachment prior to May 4, 2023.[1]

**B. Should the Court Issue Full, Unconditional Orders of Attachment (Including by Converting Conditional Grants) to Any Creditors? If Yes, Should the Court Direct Service of Any Such Orders of Attachment?**

Now that OFAC has issued the License, the Clerk of Court is (and should be) "authorized to affix its original signature and seal on [Gold Reserve's] writ of attachment *fieri facia*" and the U.S. Marshals Service is (and should be) "authorized to serve [Gold Reserve's] writ of attachment *fieri facias*, as signed, sealed, and issued by the Clerk of the Court, on PDVH" but only if and when the Third Circuit lifts the temporary administrative stay. No. 1:22-mc-00453, D.I. 27 at 2–3. And any such order should recognize the priority discussed below.

---

[1] Arguably, the cut-off date should be May 1, 2023, the date the License was issued by OFAC but, since no conditional writs were issued by the Court during the period from May 1 to May 4, 2023, this distinction likely is irrelevant for practical purposes.

### C. How Should the Court Determine the Priority of Any Judgments That Are Made Additional Judgments?

The Additional Judgments for which a conditional writ of attachment issued before May 4, 2023, should all receive a pro-rata distribution from the sale at the same level of priority. Any other Additional Judgments should be given lower priority in descending levels according to when their writs were delivered to or served by the U.S. Marshals.

#### 1. The Normal Process to Execute on Delaware Corporate Shares

All the judgments in question are money judgments. Rule 69(a) provides that a money judgment is enforced by a writ of execution, unless the court directs otherwise. Fed. R. Civ. P. 69(a)(1). The procedure on execution and in proceedings supplementary to and in aid of judgment or execution must accord with the procedure of the state where the court is located; here, Delaware. *Id*.

PDVH has stated in a June 4, 2020 affidavit filed in this case that there are 1,000 shares of PDVH stock, represented by one certificate, which was not in PDVH's possession. No. 17-mc-00151, D.I. 177-1. Delaware corporate shares may be attached for the satisfaction of debt and sold at a public sale. 8 Del.C. § 324(a). However, with respect to certificated securities, such satisfaction requires seizure of the certificates. *See* 8 Del.C. § 324(a) ("Except as to an uncertificated security . . . , the attachment is not laid and no order of sale shall issue unless § 8-112 of Title 6 has been satisfied."); 6 Del.C. § 8-112(a) ( "[T]he interest of a debtor in a certificated security may be reached by a creditor only by actual seizure of the security certificate . . . .").

The Delaware code provides that once a judgment is obtained a judgment creditor may acquire a writ of attachment *fieri facias* for the stock. 10 Del.C. § 5031. The prothonotary (chief clerk) issues the writ, endorsing thereon the date of its issue. 10 Del.C. § 5083. The writ is then delivered to the sheriff (or other officer), who marks the date and time of receipt. 10 Del.C.

3

§ 5084. If several executions are delivered on the same day, the docket shall show the order in which they are received. 10 Del.C. § 5084.

Section 5082 of 10 Del. Code deals with the priority among creditors with writs of execution, not among creditors generally. Section 5082 does not appear to be limited to execution on goods and chattels. 10 Del.C. § 5082; *cf.* 10 Del.C. § 5081 ("An execution shall not bind *goods and chattels* until it [the execution] is delivered to the sheriff or other proper officer to be executed."). Section 5082 is a first-in-time priority rule. If several executions against the same defendant are delivered on the same day, the first delivered shall have priority. 10 Del.C. § 5082. Historically, if several executions against the same defendant are delivered together, they shall have priority according to their "respective numbers." 10 Del.C. § 5082. However, "respective numbers" is presumably a reference to a number that historically was issued by the prothonotary (chief clerk) to a writ. That practice that no longer occurs in Delaware, and in any event does not apply in federal court.

It is thus unclear whether priority under Delaware law when executing writs on shares is determined by the *first writ to be delivered* to the sheriff (or other officer) or the *first writ that is levied* (and subsequent writs delivered or levied in order thereafter). Section 5082 indicates that the first writ to be delivered to the officer has priority. 10 Del.C. § 5082. In contrast, the Delaware Uniform Commercial Code provides, "[e]xcept to the extent otherwise provided or permitted by 8 Del.C. § 324(a) and 10 Del.C. § 5031–82]," the interest of a debtor in a *certificated* security may be reached by a creditor *only by actual seizure* by the officer making the attachment or levy. 6 Del.C. § 8-112(a).[2] The UCC provisions thus indicate that lien priority

---

[2] In contrast, the interest of a debtor in an *uncertificated* security may be reached by a creditor only by legal process upon the issuer at its chief executive office in the United States. 6 Del.C. § 8-112(b). It appears here that the PDVH Shares are certificated.

on shares is achieved upon seizure of the shares (or service of process with respect to uncertificated shares) rather than upon delivery of the writ to the officer.

Gold Reserve submits that the distinction between service of the writ on the judgment debtor and delivery of the writ to the officer is irrelevant here, since no judgment creditor (other than Crystallex) has been able to deliver a writ to the officer, because of the presence of the OFAC sanctions and the Third Circuit stay, all of which are events outside the control of the judgment creditors. Now, with the License issued and (the hopefully forthcoming) dissolution of the Third Circuit stay, Gold Reserve and the other holders of proposed Additional Judgments with conditional writs already issued who were delayed by matters outside their control, should be placed in a position of equal priority, as set forth in greater detail below.

## 2. The Crystallex Writ and the Special Master

In August 2018, this Court granted a writ of attachment on the PDVH Shares in favor of Crystallex. No. 17-mc-00151, D.I. 78 & 95. The Marshals' Return was filed on August 27, 2018. No. 17-mc-00151, D.I. 96. On May 22, 2020, the Court entered an order seeking to set the procedures for a sale of the PDVH Shares. No 17-mc-00151, D.I. 174. On June 17, 2020, Crystallex moved for an order to establish a sales process for the PDVH Shares to be conducted by the U.S. Marshals Service. No. 17-mc-00151, D.I. 181 & 182. On January 14, 2021, the Court entered an order requiring proposals for a sales procedure and identifying a proposed special master. No. 17-mc-00151, D.I. 234 & 235. On April 13, 2021, the Court entered an Order appointing a Special Master "to assist with the sale of PDVSA's shares of PDVH to satisfy Crystallex's judgment." No. 17-mc-00151, D.I. 258.

## 3. The Sale Procedures Order

On October 11, 2022, the Court entered the Sale Procedures Order, relying in part on the All Writs Acts, 28 U.S.C. § 1651, which provides that federal courts "may issue all writs

5

WBD (US) 62152160v1

necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."[3]  No. 17-mc-00151, D.I. 481.  The Court-approved Sale Procedures was "designed to promote a competitive and robust bidding process to generate the greatest level of interest in the PDVH Shares and result in the highest offer in connection with any Sale Transaction at least sufficient to satisfy the Attached Judgments."  No. 1:17-mc-00151, D.I. 481 at 6 ¶ C.

The "Attached Judgments" are defined as the Crystallex Judgment and any Additional Judgments.  *Id*. at 25 ¶ 30.  The Sale Procedures Order provides that "no PDVH Shares shall be sold, nor proceeds from any sale thereof distributed, to satisfy any judgments that are not Attached Judgments."  *Id*. at 25–26 ¶ 30.  The class of judgment creditors that are Additional Judgments Creditors was left undetermined.  *See id*.  An Additional Judgment Deadline of no later than ten days after the sale Launch Date was established.  *Id*.

The Sale Procedures Order also required the Venezuela Parties to disclose the location of the PDVH Shares.  *Id*. at 36 ¶ 48.  On information and belief, the Venezuela Parties have not done so.  *Cf*. No. 1:17-mc-00151, D.I. 558 at 6–7 (Venezuela Parties stating that "PDVH does not have the physical share certificate in its possession").

---

[3] Judicial sales of stock are also allowed under the Court's discretion pursuant to 28 U.S.C. § 2004.  *See, e.g.*, *United States v. Branch Coal Corp.*, 390 F.2d 7, 9–10 (3d Cir. 1968); *Deutsche Bank Nat. Tr. Co. v. Ball*, No. 10-CV-0872-MJR, 2012 WL 1574694, at *1 (S.D. Ill. May 3, 2012); *see also Stearns Bank Nat. Ass'n v. Marrick Properties, LLC*, No. 8:11-CV-2305-T-30AEP, 2012 WL 1155657, at *3 (M.D. Fla. Apr. 5, 2012) (special masters are authorized by Rule 53(a)(1)(C) to conduct sales and are routinely appointed by courts to do so).

### 4. The OFAC Sanctions and the License

As the Court is aware, due to the OFAC sanctions, writs of attachment on the PDVH Shares were not issued (except for Crystallex,[4] which obtained its writ prior to the prohibition). Some judgment creditors (including Gold Reserve) have moved for and obtained orders allowing conditional writs of attachment that would authorize the writs to be issued, delivered to the Marshals, and served after the government prohibitions are lifted. On October 20, 2022, Gold Reserve filed its motion for conditional writ of attachment *fieri facias* with the district court, which was granted by Order signed March 30 and entered March 31, 2023. No. 22-mc-00453, D.I. 2 & 27. The next week, Intervenor-Defendant PDVSA filed a notice of appeal of that Order (and similar orders applicable to other judgment creditors) to the Third Circuit and sought a stay in this Court. No. 22-mc-00453, D.I. 29 & 30. The Court denied that stay motion on April 28, 2023, for multiple overlapping reasons. No. 22-mc-00453, D.I. 35 at 5–6.

On May 1, 2023, OFAC issued the License authorizing the District Court Clerk, and any Additional Judgment Creditors named by the Court, to "engage in transactions and activities ordinarily incident and necessary to the issuance and service of a writ of attachment *fieri facias* for any party that has been designated an 'Additional Judgment Creditor'" under the Sale Procedures Order. No. 1:17-mc-00151, D.I. 555 at 8. By a Memorandum Order, the Court docketed and made public the License on May 4, 2023. No. 17-mc-00151, D.I. 555.

The next day, May 5, 2023, the Third Circuit entered "a temporary administrative stay." 3d Cir. No. 23-1652, D.I. 22. The Third Circuit also ordered that this appeal and its companions would "proceed to a merits panel for disposition promptly after all briefs have been filed," *id*., and oral argument has been set for June 1, 2023, 3d Cir. No. 23-1652, D.I. 36.

---

[4] Gold Reserve reserves all rights with respect to challenging or otherwise disputing the claims and the validity, perfection, or priority of liens of Crystallex, any potential Additional Judgment Creditors, or other creditors of the Venezuela Parties.

### 5. Analysis and Position on Priority

This case is far from the normal statutory process of "racing to the courthouse" where creditors competing to establish priority in a debtor's property are ranked first-to-last based on the times their judgments are entered, writs issued, writs delivered to the sheriff or other officer, and the writs levied on the subject property. In this case, as noted, due to government sanctions and court stays, certain diligent judgment creditors, including Gold Reserve, have been prohibited to-date from competing for priority under the applicable statute. Moreover, because of the Venezuela Parties' refusal or inability to produce the PDVH Shares for seizure by the Marshals under the Crystallex writ, this Court has fashioned procedures for monetizing the shares through appointment of a Special Master and entry of the Sale Procedures Order.

Under the Sale Procedures Order, the Court has taken jurisdiction over the PDVH Shares and their ultimate sales proceeds. *See United States v. Sinclair*, 347 F. Supp. 1129, 1134 (D. Del. 1972) (stock in Delaware company is deemed to have its situs in the United States and subject to the U.S. Court's jurisdiction). And, up until May 4, 2023 (when notice of the OFAC License was given), the judgment creditors' writs of attachment could not be issued.

Rule 69(a) allows the court to enforce money judgments by means other than a writ of execution. The All Writs Acts, 28 U.S.C. § 1651, provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." And, specifically with respect to seizure of corporate shares, the Delaware UCC provides that a creditor whose debtor owns shares "is entitled to aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the [shares] or in satisfying the claim by means allowed at law or in equity in regard to property that cannot readily be reached by other legal process." 6 Del.C. § 8-112(e). These provisions allow the Court discretion in

8

fashioning a fair and equitable result for the judgment creditors stymied by the unusual and complex circumstances of this case.

Since certain judgment creditors have not been able to have their writs of attachment issued due to government sanctions or are currently stayed by the Third Circuit administrative stay, the Court should use its inherent powers to fashion a procedure to avoid a chaotic race among those judgment creditors to establish priority. Gold Reserve respectively suggests that the order of priority for judgment creditors be established similar to the state court scheme, with adjustments for those judgment creditors who have been restrained by the government sanctions and court stays.

The non-Crystallex creditors who might become Additional Judgment Creditors in these cases can be divided into two categories: (1) the judgment creditors who obtained conditional writs prior to the May 4, 2023 notice of the OFAC License ("Pre-May 4 Group"), and (2) any judgment creditors who obtain writs after the May 4, 2023 notice of the OFAC License ("Post-May 4 Group").

Had there been no sanctions, each of the Pre-May 4 Group would have already delivered their writs of attachment to the Marshals for issuance. Gold Reserve therefore submits that an order should be entered allowing each of the Pre-May 4 Group equal priority in the PDVH Shares sales proceeds and that such order be served upon the Marshals along with each Pre-May 4 Group member's writ of attachment, as a pro forma matter.[5] Then, among any creditors in the Post-May 4 Group, such members can be ranked in priority after the Pre-May 4 Group priority in the order that each Post-May 4 Group judgment creditor obtains an order allowing its writ and delivers such writ to the Marshals in accordance with applicable Delaware law. This result

---

[5] The PDVH Shares are believed to be physically in an unknown place, but legally in the Court's custody, so it is unlikely that the Marshals will have success in actually seizing the PDVH Shares.

9

avoids any speculation on which of the Pre-May 4 Group would have established its priority in the PDVH Shares. It also avoids a chaotic free-for-all among the Pre-May 4 Group. This procedure also preserves the state court scheme, which rewards the winner of a race that none of the Pre-May 4 Group could have won during the period from when the OFAC sanctions were instituted to when the License was issued.

This Court has appointed a Special Master pursuant Fed. R. Civ. P. 53 to take control of the PDVH Shares and has ordered a judicial sale of the PDVH Shares with the interests of the claimants to attach to the sales proceeds. In this case, the Special Master's role is similar to a receiver in a federal equity receivership. *Sec. & Exch. Comm'n v. Callahan*, 193 F. Supp. 3d 177, 188–89 (E.D.N.Y. 2016) (receiver's role is analogous to the role of a court-appointed master). Appointment of a receiver is an equitable remedy. *Midwest Bank v. Goldsmith*, 467 F. Supp. 3d 242, 248 (M.D. Pa. 2020). Gold Reserve's proposed priority scheme placing the Pre-May 4 creditors on equal footing is consistent with the equitable maxims that (1) equity aids the vigilant (those who sought writs and conditional writs early), (2) equity regards that as done which ought to be done (absent sanctions and stays, the writs would have been served), and (3) that equity is equality.

In effect, when the sanctions and stay lift, the previously sought writs will arise simultaneously. *Accord* No. 1:19-mc-00290, D.I. 109 at 21 ("From the perspective of judicial administration, it makes sense that ConocoPhillips and the other judgment creditors will all have access to the same form of relief at the same point in their judgment enforcement efforts."). And because none of these simultaneously arising writs will have first-in-time priority over each other, the proper course is to satisfy all of them on a pro rata basis. This approach tracks the general rule that when liens attach at the same time, "none of the liens has priority over the others (with respect to such property) on the basis of its earlier creation" and thus "payment of

the amount allowed . . . is to be applied to the judgments of the [lienholders] in proportion to the amounts of their respective liens." *Bank of Bos. v. Haufler*, 482 N.E.2d 542, 547 (Mass. App. Ct. 1985) (discussing after-acquired property and collecting cases); *accord Martin v. Cadle Co.*, 133 S.W.3d 897, 906 (Tex. Ct. App. 2004) (holding that "judgment holders are entitled to a pro rata portion of the proceeds from the sale of the after-acquired property" when "judgment liens of different dates attach simultaneously to property acquired after the liens were recorded"); *Hulbert v. Hulbert*, 111 N.E. 70, 73 (N.Y. 1916) (holding that three liens that "attached simultaneously to the property . . . were at that time equal liens entitled to share pro rata in the proceeds of the debtor's property"). For example, in *Southern Rock, Inc. v. B & B Auto Supply*, the Fifth Circuit considered priority in the case of a "simultaneous" perfection and thus had to "decide who wins when the race to the recording office ends in a tie." 711 F.2d 683, 688 (5th Cir. 1983).

The appellant argued that "the common law rule ought to be applied and the fund should be divided in proportion to the claims," and the Fifth Circuit agreed, holding that the two creditors should "share in the fund in proportion to their claims." *Id.* at 689. This same common law rule should apply here, where Gold Reserve and the rest of the Pre-May 4 Group have all been waiting for a change in the OFAC sanctions regime such that issuance of a writ of attachment was possible. Now that this License has issued, the Court should as a matter of equity "allow a pro rata participation" by the Pre-May 4 Group in the PDVH Shares sales proceeds. *S. Ry. Co. v. United States*, 306 F.2d 119, 130 (5th Cir. 1962).

## **CONCLUSION**

In sum, Gold Reserve requests that the Court enter an Order:

(a) that Additional Judgments should include the Pre-May 4 Group.

(b) that each conditional writ of attachment issued to the Pre-May 4 Group be made unconditional and issued by the Clerk and be allowed to be served by the U.S. Marshals if and when the Third Circuit lifts the temporary administrative stay.

(c) that each of the Pre-May 4 Group have equal priority in the PDVH Shares sales proceeds; and

(d) that the Post-May 4 Group be ranked in priority after the Pre-May 4 Group priority in the order that each Post-May 4 Group judgment creditor obtains an order allowing its writ and delivers such writ to the Marshals.

Dated: May 24, 2023                                                                 Respectfully Submitted,

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/ Matthew P. Ward*
Kevin J. Mangan (Del. Bar No. 3810)
*OF COUNSEL*:                                                             Matthew P. Ward (Del. Bar No. 4471)
Stephanie S. Riley (Del. Bar No. 5803)
Matthew H. Kirtland                                                       1313 N. Market St., Suite 1200
NORTON ROSE FULBRIGHT US LLP                            Wilmington, DE 19801
799 9th Street NW, Suite 1000                                       Telephone: 302-252-4320
Washington, DC 20001                                                    kevin.mangan@wbd-us.com
Tel: (202) 662-0200                                                          matthew.ward@wbd-us.com
matthew.kirtland@nortonrosefulbright.com            stephanie.riley@wbd-us.com

Katherine G. Connolly
NORTON ROSE FULBRIGHT US LLP
555 California Street, Suite 3300                                *Attorneys for Gold Reserve Inc.*
San Francisco, CA  94104
Fax: (628) 231-6799
katie.connolly@nortonrosefulbright.com