IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>              Plaintiff,<br><br>   v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>              Defendant. | C.A. No. 17-151-LPS |

**CRYSTALLEX INTERNATIONAL CORPORATION'S OPENING BRIEF
PURSUANT TO MAY 10, 2023 SCHEDULING ORDER**

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Miguel A. Estrada
Lucas C. Townsend
Adam M. Smith
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
Fax: (202) 467-0539

Dated: May 24, 2023

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
Fax: (302) 651-7701

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................. ii

NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

SUMMARY OF ARGUMENT ............................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 3

ARGUMENT ......................................................................................................................... 6

    I.    Only Judgments For Which An Attachment Of The PDVH Shares Has Been Obtained Should Be Regarded As "Additional Judgments" Under The Sale Procedures Order ............................................................................ 6

    II.    Crystallex Takes No Position On Which Creditors May Obtain Attachments, But Any Attachment Proceedings Should Not Delay The Sale Process ................................................................................................... 12

    III.    Crystallex's Judgment Is First In Priority ............................................................. 13

CONCLUSION ................................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Bolivarian Republic of Venezuela v. Crystallex Int'l Corp.*,
   140 S. Ct. 2762 (2020) .................................................................................................. 8

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   2021 WL 129803 (D. Del. Jan. 14, 2021) ..................................................................... 8

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   932 F.3d 126 (3d Cir. 2019) ..................................................................................... 8, 15

*CTS Corp. v. Waldburger*,
   573 U.S. 1 (2014) ........................................................................................................ 15

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
   2022 WL 611563 (D. Del. Mar. 2, 2022) .................................................................. 5, 9

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
   2023 WL 2609248 (D. Del. Mar. 23, 2023) ................................................................. 5

*Red Tree Invs., LLC v. Petroleos de Venezuela, S.A.*,
   2022 WL 1265516 (D. Del. Apr. 28, 2022) .................................................................. 5

*State v. Fisher*,
   1996 WL 659471 (Del. Super. Ct. Oct. 17, 1996) ...................................................... 15

### Statutes

28 U.S.C. § 1608(e) .......................................................................................................... 4

28 U.S.C. § 1610(c) .......................................................................................................... 4

8 *Del. C.* § 324(a) ................................................................................................. 6, 10, 11

10 *Del. C.* § 5031 ............................................................................................................. 6

10 *Del. C.* § 5072 ........................................................................................................... 15

10 *Del. C.* § 5081 ............................................................................................... 3, 14, 15

### Rules

Fed. R. Civ. P. 69(a) .................................................................................................... 6, 10

Fed. R. Civ. P. 69(a)(1) ..................................................................................................... 6

## NATURE AND STAGE OF THE PROCEEDINGS

After more than five years of post-judgment proceedings, this Court entered a Sale Procedures Order last October outlining the process through which Crystallex will finally be paid for Venezuela's expropriation of Crystallex's investments in the Las Cristinas gold mine more than a decade ago (the "Sale Process"). Last month, the Department of Justice informed the Special Master that OFAC will not take any enforcement action against individuals or entities that participate in the proceedings described in the Sale Procedures Order and that OFAC intends to implement a favorable licensing policy for the successful bidder. Thus, the path is now clear to begin the Sale Process necessary for the satisfaction of Crystallex's judgment against Venezuela.

Crystallex remains the only holder of an attached judgment, but the Sale Procedures Order anticipates the possibility that the Court may include "Additional Judgments"—after Crystallex's—in the Sale Process, and sets a timeline for the Court to consider whether to add any such judgments. The Court has ordered briefing to address three aspects of that question.

## SUMMARY OF ARGUMENT

I. The only judgments that should be considered for inclusion as "Additional Judgments" under the Sale Procedures Order are those for which the judgment creditor has perfected a true, unconditional attachment of the PDVH Shares. Delaware law and the Court's Sale Procedures Order both support limiting Additional Judgments to that category, which at present includes no other judgments, because judgment creditors with actual attachments are the only creditors legally entitled to compel the sale of, or receive a distribution of proceeds from the sale of, the shares of PDVH. Other judgment creditors of Venezuela and its alter ego PDVSA have obtained conditional orders authorizing attachments in the event that they can obtain OFAC approval. If those judgment creditors obtain unconditional attachments within the time frame set forth in the Sale Procedures Order, they may be considered Attached Judgments. However, the Third Circuit

1

has stayed proceedings before this Court in the cases of six creditors pending further review of the Court's alter-ego ruling as to them.  Thus, other judgment creditors must clear several hurdles before they would have any right to participate in the Sale Process:  As for the alter-ego creditors, the Third Circuit also must at least lift the stay.  Three creditors whose proceedings are not currently stayed—ConocoPhillips, Red Tree and Siemens—potentially can be added to the process if the Court issues them unconditional attachments and permits those attachments to be served.

II. On May 1, 2023, OFAC issued a license to the Clerk of this Court authorizing the issuance and service of writs "granted by the Court to judgment creditors against shares of PDV Holding, Inc., owned by Petroleos de Venezuela."  D.I. 555 at 6.  The license provides that the Court may issue and serve such writs "for any party named as an 'Additional Judgment Creditor' by the Court pursuant to the Sales Procedure Order."  Given the primacy of its lien, Crystallex takes no position on which, if any, other creditors may obtain orders of attachment pursuant to this license if the appropriate legal standards are otherwise met.  But, Crystallex agrees with the Special Master's recommendation that the Court begin the initial phases of the Sale Process without further delay and submits that the Court should not prolong or alter the timing of that process to account for any proceedings that may be needed to issue or perfect additional attachments, which (to the extent necessary) should proceed in parallel to the Sale Process deadlines.  Crystallex respectfully submits it has waited more than long enough to be paid, and the Sale Process designed to satisfy Crystallex's judgment should not be further delayed simply because other judgment creditors who currently have no right to participate in that process *might*—at some point in the future—become entitled to do so.

III. Crystallex is first in priority as the first (and so far only) judgment creditor with an actual attachment and an "Attached Judgment," as this Court has repeatedly recognized and other

parties have not disputed. Crystallex takes no position on the separate question of priority among any judgments that may be made Additional Judgments, all of which will necessarily be junior to Crystallex's judgment.

## STATEMENT OF FACTS

In the years since Crystallex brought this action and obtained a fully affirmed writ of attachment against Venezuela's shares of PDVH, the Court has consistently made clear that the purpose of these proceedings is, and always has been, to "satisfy the outstanding judgment of Crystallex" first and foremost. D.I. 481 at 2. To preserve Crystallex's priority while Venezuela delayed progress toward a sale, the Court has ruled that 10 *Del. C.* § 5081 has been "tolled"—and Crystallex's three-year priority period on the attachment "has not yet begun" running—because "Crystallex has not been permitted to execute on its writ, and no writ of execution has been issued." D.I. 234 at 31-32. The Court noted that no party had objected to such tolling, but expressly ordered it nonetheless to leave no "doubt." *Id.* The Sales Procedure Order confirmed this conclusion without relevant objection from any creditor or other party. D.I. 481 ¶ 50; *see also* D.I. 443 at 47; D.I. 444 at 1.

The Sale Procedures Order specified the procedures and timelines for a sale, including a "Preparation Launch Date" on which the Special Master will formally begin preparations for the pre-sale marketing process, a subsequent "Launch Date" for the marketing process itself, and then a "Sale Hearing" on the auction. D.I. 481 ¶¶ 2-3; *see also* D.I. 480-1, Ex. 1 at 2-3. Crystallex is the first and, to date, only holder of an "Attached Judgment" that necessarily will be included at every stage of the Sale Process. *See* D.I. 481 ¶¶ 26, 29, 30.[1] But the Court has also left open the

---

[1] Hours prior to this filing, a new creditor, Curaçao oil company Refineria di Korsou N.V., appeared for the first time and filed a motion seeking to be added as an Additional Judgment, based on a purported New York state court default judgment and a purported writ of attachment issued

3

possibility that other judgment creditors may, under appropriate circumstances, participate in the Sale Process as part of Crystallex's case. Specifically, the Sale Procedures Order provides for parties seeking to be included as holders of "Additional Judgments" to make certain submissions as to their claimed judgments to the Special Master by no later than 21 calendar days following the Preparation Launch Date. *Id.* ¶ 32. It also provides for this Court, by no later than ten calendar days after the subsequent Launch Date, to "decide in accordance with applicable law which, if any, additional judgments ... are to be considered by the Special Master for purposes of the Sale Transaction." *Id.* ¶ 30. That directive includes ConocoPhillips. *Id.*

On April 28, 2023, the Special Master filed his Supplemental Report reflecting the outcome of his consultation with U.S. government officials and other efforts pursuant to the Sale Procedures Order. D.I. 553. The Report attaches and discusses a Department of Justice letter stating that the U.S. government intends to implement a favorable licensing policy in connection with the execution of a sale to satisfy Crystallex's judgment, and further conveys that "[a]t no point" during the consultation process "did the U.S. Government express any opinion about or objection to the proposed process" for a sale to satisfy Crystallex's judgment. *Id.* ¶ 10; *see* D.I. 553-1. The Special Master's Report also discusses the views of his financial advisor, Evercore, that "a proposed sale of the PDVH Shares in the near term may be more positively received by the market and could draw more Potential Bidders, as compared to the circumstances in place in prior years," based on

---

in an *ex parte* Delaware state court proceeding. *See* D.I. 564. It is not apparent that the purported writ was properly obtained or served under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1608(e), 1610(c), and OFAC sanctions, *see* D.I. 555 at 6 (OFAC license issued only to the Clerk of this Court). The motion illustrates why any delay in the Sale Process will only invite additional claims, including claims of questionable merit like this one, creating more issues for this Court to resolve while delaying justice for Crystallex.

"industry developments" and other global events. D.I. 553 ¶ 29. In light of these and other developments, the Special Master concludes that "it is in the best interests of the Sale Process Parties in pursuit of a value-maximizing Sale Transaction to launch the Marketing Process as soon as practicable." *Id.* ¶ 34. Specifically, the Special Master "recommend[s] preparations for the launch of the Marketing Process begin without any further delay," with a Preparation Launch Date "set as soon after June 5, 2023 as the Court is able to consider the Supplemental Report and any Launch Date Objections and responses thereto"; a Launch Date set "on the earlier of (i) September 5, 2023, and (ii) the date on which the Special Master, in his sole discretion, believes he and his Advisors are sufficiently prepared to launch the Marketing Process"; and a Sale Hearing on or about June 1, 2024. *Id.* ¶ 7; *see id.* ¶¶ 35-38.

Meanwhile, in related cases brought by other creditors, the Court issued conditional orders "authorizing the *eventual* issuance of a writ of attachment" in the future, "contingent on grant of [a] license" from OFAC. *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 2022 WL 611563, at *11 (D. Del. Mar. 2, 2022) (emphasis added) (ConocoPhillips); *see also Red Tree Invs., LLC v. Petroleos de Venezuela, S.A.*, 2022 WL 1265516, at *1 (D. Del. Apr. 28, 2022); *Siemens Energy, Inc. v. Petróleos de Venezuela, S.A.*, No. 22-mc-347 (D. Del.), ECF Nos. 14, 18; *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 2023 WL 2609248, at *1 (D. Del. Mar. 23, 2023) (OI European Group B.V., Huntington Ingalls Inc., ACL Investments, and Rusoro Mining Ltd.); Dkt. 21, *Koch Minerals Sarl v. Bolivarian Republic of Venezuela*, No. 1:22-mc-156 (D. Del. Mar. 31, 2023); Dkt. 27, *Gold Reserve Inc. v. Bolivarian Republic of Venezuela*, No. 1:22-mc-453 (D. Del. Mar. 31, 2023). On May 5, 2023, the Third Circuit ordered an administrative stay of proceedings in the cases of six of these creditors—OIEG, Huntington, ACL, Rusoro, Koch, and Gold

5

Reserve, who hold judgments against Venezuela entities other than PDVSA—pending further appellate proceedings in PDVSA's appeal of this Court's ruling that these creditors may attach PDVSA's assets under an alter-ego theory.  Order, Dkt. 24, *OI European Group B.V. v. Bolivarian Republic of Venezuela*, No. 23-1647 (3d Cir. May 5, 2023).  Briefing on those appeals is currently scheduled to be completed by May 30 with oral argument on June 1.  Dkts. 26 & 39, *OIEG*, No. 23-1647 (3d Cir. May 10 & 17, 2023).

## ARGUMENT

**I. Only Judgments For Which An Attachment Of The PDVH Shares Has Been Obtained Should Be Regarded As "Additional Judgments" Under The Sale Procedures Order**

This Court has ordered Crystallex to brief the issue of which, if any, judgments should be regarded as "Additional Judgments" entitled to share in the proceeds of the sale of the PDVH Shares contemplated by the Sale Procedures Order.  D.I. 559 ¶ 3(a); *see* D.I. 481 ¶ 30.  Both Delaware law (as incorporated by Federal Rule of Civil Procedure 69(a)(1)) and the Sale Procedures Order indicate that only judgments for which the judgment creditor has attached the shares of PDVH should be regarded as "Additional Judgments."

Federal Rule of Civil Procedure 69(a) provides that "[t]he procedure on execution" on a money judgment generally "must accord with the procedure of the state where the court is located"—in this case, Delaware.  Delaware law permits judgment creditors to attach a judgment debtor's shares in a Delaware corporation to satisfy the judgment.  8 *Del. C.* § 324(a); 10 *Del. C.* § 5031.  After the judgment creditor has attached the shares, "[s]o many of the shares … may be sold at public sale to the highest bidder, as shall be sufficient to satisfy the debt, or other demand, interest and costs."  8 *Del. C.* § 324(a).  Section 324(a) limits the sale to only "[s]o many of the shares … as shall be sufficient to satisfy the debt" giving rise to the attachment and sale.  *Id.*

6

This Court's Sale Procedures Order accords with Delaware's rule that a judgment creditor must first obtain an attachment of shares in a Delaware corporation before compelling the sale of those shares at public auction. The Sale Procedures Order provides that the shares of PDVH may be sold only to satisfy "Attached Judgments," stating that "no PDVH Shares shall be sold, nor proceeds from any sale thereof distributed, to satisfy any judgments that are not Attached Judgments." D.I. 481 ¶ 30; *id.* ("For purposes of implementing this Order, the Special Master shall only consider judgments that are determined to be Attached Judgments by the Court by the Additional Judgment Deadline."); *id.* at 6 (noting that the Special Master's Sale Procedures are designed to result in an offer "sufficient to satisfy the Attached Judgments").

The Sale Procedures Order indicates—consistent with Delaware law—that the only judgments entitled to be considered in the Sale Process and to share in the proceeds of the sale are those for which a judgment creditor has attached the PDVH Shares by the "Additional Judgment Deadline," which must be no later than 10 calendar days after the "Launch Date." D.I. 481 ¶ 30. The Sale Procedures Order clarifies that, while judgments that are not determined to be "Attached Judgments" by the "Additional Judgment Deadline" may not be considered for the purposes of the sale and may not receive a direct distribution of proceeds from the sale, "the Additional Judgment Deadline does not impair or in any way limit any person's or entity's right *to seek attachment* to any proceeds following consummation of the Sale Transaction." *Id.* (emphasis added). Any judgment creditor who has not attached the shares of PDVH and thus has not been deemed an "Attached Judgment" holder by the "Additional Judgment Deadline" may still seek to attach any surplus proceeds from the sale that exceed the amounts necessary to satisfy the "Attached Judgments," or any shares not sold in the auction if fewer than all shares have been sold. Crystallex agrees that if

7

a judgment creditor has already attached the PDVH Shares by the "Additional Judgment Deadline," it would make little sense to exclude that judgment creditor from a sale of shares it has attached and force it to seek a separate, additional attachment of proceeds from shares it had previously attached. Conversely, if a creditor has not secured and served an attachment before that deadline, nothing in the Sale Procedures Order prejudices its rights to seek relief later, against any shares not sold in the auction or against any proceeds in excess of what is needed to satisfy Crystallex's claims and the claims of any additional Attached Judgments.

Treating as "Attached Judgments" only those judgments whose holders have in fact attached the PDVH Shares by the "Additional Judgment Deadline" is also consistent with the Sale Procedures Order's differential treatment of Crystallex and other judgment creditors, such as ConocoPhillips. In August 2018, Crystallex obtained a writ of attachment on the PDVH Shares, which was then served on PDVH by the U.S. Marshals. D.I. 95, 96. The Third Circuit subsequently "affirm[ed] the District Court's order granting the writ of attachment." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 133 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 2762 (2020). Accordingly, as this Court later explained in rejecting PDVSA's belated challenge to the validity of Crystallex's attachment, "the validity of the writ has been actually, necessarily, and finally resolved" and "no more challenge to the writ is contemplated." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2021 WL 129803, at *10 (D. Del. Jan. 14, 2021). Because Crystallex has held an attachment on the shares of PDVH since 2018, every proposed version of the Sale Procedures Order (as well as the one this Court entered last year) has deemed Crystallex's judgment to be an "Attached Judgment" entitled to satisfaction in the anticipated sale. D.I. 302 at 20; D.I. 341-1 at 20; D.I. 391-1 at 22; D.I. 411-1 at 23; D.I. 451-1 at 24; D.I. 472-1 at 25; D.I. 481 ¶ 30.

The Venezuela Parties' other creditors, including ConocoPhillips, have not attached the PDVH Shares because intervening executive orders and sanctions imposed by OFAC require that "any writ of attachment for the PDVH Shares should not be served until either OFAC grants it a specific license to obtain an interest in the PDVH Shares or the sanctions regime changes and the PDVH Shares are no longer blocked." *OIEG*, 2022 WL 611563, at *1. Accordingly, this Court has emphasized that "[t]he Clerk of Court is directed ***not*** to issue or serve the writ of attachment" until the Court finds that OFAC has either authorized the attachment or removed the sanctions blocking PDVSA's shares in PDVH. Dkt. 43 at 2, *Phillips Petroleum Co. Venezuela Ltd. v. Petróleos de Venezuela, S.A.*, No. 1:19-mc-342 (D. Del. Mar. 2, 2022). Because, unlike Crystallex, ConocoPhillips has not yet attached the PDVH Shares (although its motion to convert its conditional writ to an unconditional writ is currently pending before the Court), the Sale Procedures Order does not automatically deem its judgment to be an "Attached Judgment" entitled to be satisfied in the sale. Instead, the Sale Procedures Order recognizes that the ConocoPhillips judgment might at some point in the future "become[] an Attached Judgment" and excuses ConocoPhillips "from contributing to the payment of any Transaction Expenses incurred" after the Additional Judgment Deadline or the Launch Date if its judgment "is not made an Attached Judgment" after those dates. D.I. 481 at 9; *id.* ¶ 30. The clear implication of the Sale Procedures Order's disparate treatment of Crystallex and ConocoPhillips (and other unsecured judgment creditors) is that Crystallex's judgment is entitled to be satisfied by proceeds of the sale because it has attached the shares of PDVH, whereas other judgments would be entitled to satisfaction only if the judgment creditor attaches the PDVH Shares by the "Additional Judgment Deadline."

It would not be unfair to exclude from the sale any judgment creditors that might obtain attachments after the consummation of the sale. Under Delaware law, a judgment creditor must

9

first attach shares before it can compel a sale of those shares or share in the proceeds of any judicial sale. 8 *Del. C.* § 324(a). So it would be inappropriate to add judgments to the Sale Process—and require a sale of sufficient shares to satisfy those judgments, D.I. 481 at 6—if those judgment creditors are not legally entitled to a distribution of proceeds from a judicial sale because they have not yet satisfied the threshold requirement of attachment under Delaware law (and therefore Rule 69(a)).

Nor would it be unfair to exclude any judgment creditors who might obtain attachments after the "Additional Judgments Deadline" but before the consummation of the sale. As the Sale Procedures Order notes, this Court has directed the Special Master to prepare a plan for the sale of the PDVH Shares "as necessary to satisfy the outstanding judgment of Crystallex and the judgment of any other judgment creditor added to the sale by the Court." D.I. 481 at 2; *see* D.I. 277 at 4. And the Special Master has confirmed that "we're only going to sell as much stock as is necessary to satisfy the attached judgments, and … if that's less than a hundred percent, that's great." D.I. 409 at 18:14-17. For the Special Master to determine the total sum of "Attached Judgments" that the sale must satisfy at minimum and implement an orderly Sale Process, *see* D.I. 481 at 6; *id.* ¶¶ 30-32, there must be some point at which the music stops and the judgments required to be satisfied by the sale are conclusively determined. As the Special Master explained in a November 8, 2021 hearing on the sale procedures, there must be a date "when the writ[s] of attachments … would have to occur to be involved in the process," D.I. 409 at 19:4-7, confirming that only those judgment creditors who have attached the PDVH Shares by the "Additional Judgment Deadline"

should be recognized as "Additional Judgments."[2] Because such creditors can attach any unsold shares of PDVH or any excess sale proceeds, they will not remain without recourse should the value of PDVH exceed the amount of the Additional Judgments.

There is an additional reason to treat only judgment creditors who have attached PDVSA's shares in PDVH as "Additional Judgments." Recognizing as "Additional Judgments" any judgment for which a judgment creditor has not obtained an attachment of the PDVH Shares would give Venezuela ammunition that it would use in an attempt to undermine the sale. Venezuela has taken the positions that shares should be sold only to satisfy judgments of persons who have attached the PDVH Shares and that only the minimum number of shares necessary to satisfy such judgments should be sold. D.I. 317 at 24; D.I. 457 at 1-3, 7. Venezuela is certain to challenge any requirement that the sale satisfy judgments that are not yet entitled to a judicial sale of the shares of PDVH under Delaware law because they have not attached those shares. Specifically, Venezuela would argue that the sale procedures provide for the sale of more shares than necessary to satisfy judgments that hold a present right of execution on the shares. Venezuela could contend that the sale should be stopped on that basis, potentially jeopardizing relief for other judgment creditors and unnecessarily delaying relief to which Crystallex is unquestionably entitled.

Respectfully, this Court should avoid giving Venezuela the opportunity to make such an argument. The hallmarks of Venezuela's entire litigation strategy have been obstruction and delay,

---

[2] Although Delaware law contemplates the sale of only "[s]o many of the shares ... as shall be sufficient to satisfy the debt," 8 *Del. C.* § 324(a)—making it necessary for the Court and the Special Master to determine which judgments are to be included in the Sale Process—it could very well be that 100% of the PDVH Shares must be sold to satisfy even Crystallex's judgment alone. As a practical matter, the Special Master has explained that marketing a "minority interest" in PDVH "where the majority owner is the Venezuela Parties would be very difficult," "wouldn't be value maximizing for anyone," and "has the highest probability of frankly not getting much interest at all." D.I. 409 at 18:21-19:1. Accordingly, the Sale Process is "designed to sell up to 100 percent of the shares that are at issue" if necessary. *Id.* at 18:13-19:19.

11

and at this juncture, the Court should expect that Venezuela will use every conceivable means (irrespective of merit) to attempt to derail the sale contemplated by this Court's Sale Procedures Order: It has filed serial objections to the Special Master's proposed sale procedures and implementation of this Court's orders. D.I. 267, 269, 270, 271, 283, 308, 317, 327, 336, 338, 350, 354, 355, 371, 376, 380, 385, 408, 413, 419, 423, 427, 437, 450, 457, 466, 477, 498, 528. It has also twice unsuccessfully attempted to disqualify the Special Master in both this Court and the Third Circuit. D.I. 443 at 2-12 (denying first motion to disqualify the Special Master); Dkt. 45-1, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 22-1606 (3d Cir. Aug. 3, 2022) (dismissing appeal from denial of first disqualification motion); Dkt. 28, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 22-8024 (3d Cir. July 26, 2022) (denying request for permissive appeal from denial of first disqualification motion); D.I. 544 (denying second motion to disqualify Special Master); Dkt. 33, *In re Bolivarian Republic of Venezuela*, No. 23-1687 (3d Cir. May 4, 2023) (denying petition for a writ of mandamus seeking disqualification of the Special Master). This Court should not unnecessarily provide Venezuela fodder to attack the Sale Process by recognizing as "Additional Judgments" judgments that have no present right to compel a judicial sale of the PDVH Shares under Delaware law, which could jeopardize or further delay the Sale Process and create uncertainty that may depress bid prices.

For the foregoing reasons, this Court should consider as "Additional Judgments" only judgments for which the judgment creditor has attached the PDVH Shares by the "Additional Judgment Deadline."

## II. Crystallex Takes No Position On Which Creditors May Obtain Attachments, But Any Attachment Proceedings Should Not Delay The Sale Process

While the recent OFAC guidance suggests the Court may now consider issuing additional writs of attachment, Crystallex takes no position as to whether the Court should in fact issue full,

unconditional orders of attachment (including by converting conditional grants) to any creditors, and if so whether to direct service of any such orders of attachment. Crystallex therefore takes no position on the merits of the second question in the Court's briefing order. D.I. 559 ¶ 3(b).

What is important to Crystallex is that the next stage of the Sale Process "begin without any further delay," as the Special Master has strongly recommended. D.I. 553 ¶¶ 7, 35, 38; *see also id.* ¶ 7 ("[a]s soon as practicable"); *id.* ¶ 34 (same). Therefore, any further briefing or additional proceedings regarding other orders of attachment should proceed in parallel to the expeditious Sale Process timeline contemplated in the Court's Sale Procedures Order and the Special Master's recommendations in his Supplemental Report, which this Court should endorse. That timeline leaves ample time for other creditors to pursue attachments, if the Court so allows, before the Additional Judgment Deadline of ten calendar days after the Launch Date. D.I. 481 ¶ 30; *see* D.I. 553 ¶ 7 (Special Master recommending a Launch Date of September 5, 2023, or earlier if practicable). The Court should adhere to that timeline notwithstanding any collateral issues that junior creditors may assert in the face of an upcoming deadline for initiating the Sale Process.

This Court recognized more than two years ago that "[e]ach day that Crystallex does not recover on its judgment is arguably something of an affront to the United States judicial system," and "[t]hose days must soon come to an end." D.I. 234 at 38. Crystallex respectfully submits that in light of the extraordinary delay and expense that have attended to its years-long effort to enforce its rights, under no circumstances should the Court delay the launch of the Sale Process, or any other deadlines under the Sale Procedures Order, pending proceedings for any other creditors.

**III.     Crystallex's Judgment Is First In Priority**

This Court has long recognized that Crystallex is first in priority as the first (and so far only) judgment creditor to have successfully attached the PDVH Shares. *See supra* at 3. Crystallex

13

remains the only party to have obtained and served a writ of attachment, D.I. 78, 83, 95-96, and if the auction were held today, Crystallex would be the only party with a judgment eligible to participate under Delaware law and this Court's Sale Procedures Order, *see supra* at 3-4, 6-9. As the Court has previously recognized, "the sale for which the Court is preparing involves—at least at present—only the satisfaction of the Republic's debt to Crystallex." D.I. 275 at 4. Any proceeds from the sale will thus go first toward "Crystallex's Judgment for the purpose of [] satisfaction of payment." D.I. 481 at 9. It is only fair and proper that Crystallex has first priority. It was the first creditor to attach the PDVH Shares and *all* progress to date has been because of Crystallex's tireless efforts. Other creditors merely rode Crystallex's coattails.

No party has asked the Court to reconsider Crystallex's priority, and Crystallex does not understand the Court to have reopened the issue in its recent Order requesting briefing on "the priority of any judgments that are made Additional Judgments," as specifically defined *not* to include Crystallex's judgment. D.I. 559 ¶ 3(c); *see id.* ¶ 1 n.1 (incorporating the Sale Procedures Order's definitions of capitalized terms); D.I. 481 ¶ 30 (expressly defining "Additional Judgments" not to include "the Crystallex Judgment"). Any party's attempt to relitigate the question of Crystallex's priority at this late date would be untimely and waived.

Nevertheless, out of an abundance of caution, Crystallex emphasizes that this Court has already addressed relevant potential questions of Delaware law and definitively resolved them in a manner that preserves Crystallex's priority. Specifically, the Court expressly ordered that Crystallex's three-year priority period under 10 *Del. C.* § 5081 has not yet begun and is tolled pending this proceeding, in addition to recognizing that it had already been tolled by prior orders of this Court and the Third Circuit. D.I. 234 at 31-32; *see supra* at 3. The Court also expressly noted that neither Venezuela nor ConocoPhillips objected to such a tolling order. *Id.* at 31. That

14

undisputed ruling was correct because, as Crystallex explained and the Court "agree[d]," *id.*, case law interpreting Section 5081 specifically, and applying equitable tolling more generally, confirms that "[a]ny delay [that] is not of Crystallex's making" should yield tolling "until such time as Crystallex is able to resume enforcement activities pursuant to an order of this Court," D.I. 228 at 2 (citing *State v. Fisher*, 1996 WL 659471 (Del. Super. Ct. Oct. 17, 1996); *CTS Corp. v. Waldburger*, 573 U.S. 1, 10 (2014)). Likewise, the Court expressly provided in the Sale Procedures Order that the five-year period for execution upon a judgment under 10 *Del. C.* § 5072 is similarly satisfied or tolled with respect to the PDVH Shares, D.I. 481 ¶ 50, without objection from any party. As the Court's orders make clear, Crystallex's priority is secure under Delaware law.

As to the relative priority among other, junior creditors, D.I. 559 ¶ 3(c), Crystallex takes no position, except to reiterate that any proceedings on such issues should not be permitted to delay the Sale Process timeline pursuant to the Sale Procedures Order and the Special Master's recommendation. *See supra* at 12-13. The Court can consider these issues in parallel because what matters for the Special Master now is the total amount of Attached Judgments—not the payment priority, which can be determined anytime until or even after sale. As the Third Circuit held nearly four years ago, "[a]ny outcome where Crystallex is not paid means that Venezuela has avoided its obligations." *Crystallex*, 932 F.3d at 149. Priority issues provide no grounds for further delay.

## CONCLUSION

For the reasons set forth above, Crystallex respectfully requests that the Court adhere to the Sale Procedures Order and endorse the Special Master's recommendation to commence the Sale Process without delay. Crystallex further requests that the Court not delay that process to account for any attachment proceedings as to other creditors' judgments, which should only be considered for inclusion as Additional Judgments if they obtain actual, unconditional attachments in advance of the Additional Judgment Deadline.

| | |
|---|---|
| OF COUNSEL:<br><br>Robert L. Weigel<br>Jason W. Myatt<br>Rahim Moloo<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York  10166<br>(212) 351-4000<br><br>Miguel A. Estrada<br>Lucas C. Townsend<br>Adam M. Smith<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C.  20036<br>Tel: (202) 955-8500<br>Fax: (202) 467-0539<br><br><br>Dated:  May 24, 2023 | */s/ Jeffrey L. Moyer*<br>Raymond J. DiCamillo (#3188)<br>Jeffrey L. Moyer (#3309)<br>Travis S. Hunter (#5350)<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware  19801<br>(302) 651-7700<br>dicamillo@rlf.com<br>moyer@rlf.com<br>hunter@rlf.com<br><br>*Attorneys for Plaintiff* |