IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>      Plaintiff,<br><br>  v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>      Defendant. | Case No. 1:17-mc-00151-LPS |

**SALE PROCESS PARTIES' PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED, CONOCOPHILLIPS PETROZUATA B.V., AND CONOCOPHILLIPS GULF OF PARIA B.V.'S BRIEF IN RESPONSE TO THE COURT'S MAY 10 ORDER**

*Of Counsel*:

Michael S. Kim
Marcus J. Green
Josef M. Klazen
Lydia L. Halpern
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200
michael.kim@kobrekim.com
marcus.green@kobrekim.com
jef.klazen@kobrekim.com
lydia.halpern@kobrekim.com

Richard G. Mason
Amy R. Wolf
Michael H. Cassel
WACHTELL, LIPTON,
 ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1000
RGMason@wlrk.com
ARWolf@wlrk.com
MHCassel@wlrk.com

Dated: May 24, 2023

ROSS ARONSTAM & MORITZ LLP

Garrett B. Moritz (Bar No. 5646)
Elizabeth M. Taylor (Bar No. 6468)
1313 North Market Street, Suite 1001
Wilmington, Delaware 19801
(302) 576-1600
gmoritz@ramllp.com
etaylor@ramllp.com

*Attorneys for Phillips Petroleum Company Venezuela Limited, ConocoPhillips Petrozuata B.V., and ConocoPhillips Gulf of Paria B.V.*

**TABLE OF CONTENTS**

                                                                                                                                 **Page**

BACKGROUND ..................................................................................................................1

    I.     Terms of the Sale Procedures Order ...................................................................... 4

    II.    The Special Master's Supplemental Report and New OFAC Guidance ................ 5

ARGUMENT ......................................................................................................................6

    I.     Which, if Any, Judgments Should be Regarded as "Additional Judgments" Under the Sale Procedures Order Entered in the Crystallex Action? ..................... 6

    II.    Should the Court Issue Full, Unconditional Orders of Attachment (Including by Converting Conditional Grants) to Any Creditors?  If Yes, Should the Court Direct Service of Any Such Orders of Attachment? .................. 7

    III.   How Should the Court Determine the Priority of Any Judgments That are Made Additional Judgments? ................................................................................. 8

        A.    Principles of Federal Preemption Require Giving the Greatest Possible Effect to Delaware Law Consistent with Federal Law ............................... 8

        B.    The Court's Equitable Discretion Should be Exercised to Vindicate Delaware's Statutory First-in-Time Policy .................................................. 9

        C.    Practical Considerations Weigh in Favor of the Exercise of Discretion to Issue Unconditional Writs in the Same Order as the Conditional Writs ................................................................................... 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Healthcare Admin. Servs., Inc.* v. *Aizen*,
   285 A.3d 461 (Del. Ch. 2022) ............................................................................................... 9

*Cedar Inn, Inc.* v. *King's Inn, Inc.*,
   269 A.2d 781 (Del. Super. Ct. 1970) ..................................................................................... 7

*Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*,
   2021 WL 129803 (D. Del. Jan. 14, 2021) ...................................................................... 12, 13

*Del. Trust Co.* v. *Partial*,
   517 A.2d 259 (Del. Ch. 1986) ............................................................................................. 10

*Deng* v. *HK Xu Ding Co., Ltd.*,
   2023 WL 3318322 (Del. Super. Ct. May 8, 2023) .......................................................... 12, 13

*Eastern Sav. Bank, FSB* v. *CACH, LLC*,
   55 A.3d 344 (Del. Sup. Ct. 2012) .......................................................................................... 8

*Ford Motor Co.* v. *Ins. Comm'r of Pa.*,
   874 F.2d 926 (3d Cir. 1989) .................................................................................................. 9

*Handler Constr., Inc.* v. *CoreStates Bank, N.A.*,
   633 A.2d 356 (Del. Sup. Ct. 1993) …………………………………………………………...10

*Hi Tech Trans, LLC* v. *New Jersey*,
   382 F.3d 295 (3d Cir. 2004) .................................................................................................. 9

*In re Coca-Cola Ents., Inc.*,
   2007 WL 3122370 (Del. Ch. Oct. 17, 2007) ......................................................................... 9

*In re Millennium Lab Holdings II, LLC*,
   945 F.3d 126 (3d Cir. 2019) .......................................................................................... 10, 11

*Merrill, Lynch, Pierce, Fenner & Smith, Inc.* v. *Ware*,
   414 U.S. 117 (1973) .............................................................................................................. 9

*Newell* v. *Morgan*,
   2 Del. 225 (Del. Ct. Err. & App. 1837) .............................................................................. 11

*Pace* v. *DiGuglielmo*,
   544 U.S. 408 (2005) ....................................................................................................... 9, 10

*Stockley* v. *Horsey*,
   4 Houst. 603 (Del. Ct. Err. & App. 1874) .................................................................. 11

*Stream TV Networks, Inc.* v. *SeeCubic, Inc.*,
   250 A.3d 1016 (Del. Ch. 2020) ...................................................................................10

*Thompson* v. *Lynch*,
   990 A.2d 432 (Del. 2010) ........................................................................................... 10

*Wylain, Inc.* v. *TRE Corp.*,
   412 A.2d 338 (Del. Ch. 1979) ...................................................................................... 9

**Statutes**

6 *Del. C.* § 8-112 ................................................................................................ 2, 12, 14, 15

8 *Del. C.* § 168 ...................................................................................................................14

8 *Del. C.* § 169 ...................................................................................................................13

8 *Del. C.* § 324 ............................................................................................................. 2, 12

10 *Del. C.* § 4705 ................................................................................................................. 8

10 *Del. C.* § 5082 ................................................................................................................. 8

10 *Del. C.* § 5084 ................................................................................................................. 8

**Rules**

Del. R. Ch. Ct. 70 ............................................................................................................... 15

Fed. R. Civ. P. 69 ............................................................................................................. 8, 9

Fed. R. Civ. P. 70 ........................................................................................................ 14, 15

**Regulations**

31 CFR § 591 ................................................................................................................. 5, 6

Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V., Plaintiffs in Case No. 19-mc-00342-LPS, and ConocoPhillips Gulf of Paria B.V., Plaintiff in Case No. 22-mc-00264-LPS (collectively, "ConocoPhillips"), pursuant to the Court's order of May 10, 2023 (D.I. 559) (the "May 10 Order"), respectfully submits this brief addressing the questions set out in paragraph 3 of the May 10 Order.

## BACKGROUND

On November 26, 2019, Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V. (the "Petrozuata / Hamaca creditors") registered a judgment against Petróleos de Venezuela, S.A. ("PDVSA") and moved the Court to issue a writ of *fieri facias* against the shares of PDV Holding, Inc. ("PDVH") owned by PDVSA. *See* Case No. 1:19-mc-00342-LPS, D.I. 1 and 2.

On March 2, 2022, the Court entered an order authorizing issuance of a conditional writ of *fieri facias* against the PDVH shares in favor of the Petrozuata / Hamaca creditors: "upon the Court's receipt of evidence that the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") has either (i) authorized the issuance and service of a writ of attachment or (ii) removed the sanctions under which the PDVH Shares are currently blocked property, then the Clerk of this Court is authorized to affix its original signature and seal on ConocoPhillips' writ of attachment fieri facias." D.I. 43.

Thereafter, the Court granted relief similar to that granted to ConocoPhillips to several other direct creditors of PDVSA, including ConocoPhillips Gulf of Paria B.V. (the "Corocoro creditor") and Red Tree Investments and Siemens Energy, Inc. (formerly Dresser Rand Company). In March 2023, the Court granted similar relief to several judgment creditors of the Bolivarian

Republic of Venezuela ("Venezuela") based on the Court's determination that PDVSA was the *alter ego* of Venezuela (collectively "the alter ego cases").

Previously, on August 9, 2018, Crystallex International Corporation ("Crystallex") had obtained a writ of attachment, which was served on the PDVH shares (the "Crystallex attachment"). *See* D.I. 78. PDVSA subsequently challenged the validity of the Crystallex attachment because the share certificates for the PDVH shares had not been seized in accordance with 8 *Del. C.* § 324 and 6 *Del. C.* § 8-112. The Court declined to consider this challenge, holding that PDVSA was estopped by its prior representations to the Court. D.I. 234 at 23-26. On June 5, 2020, PDVSA submitted an affidavit stating that "PDVH does not possess any certificated shares of PDVH stock." D.I. 177-1 at 2.

The following table sets out the writ-holders' cases and chronology:

| Case Caption and Case Number | Date of Registration of Judgement | Date of Issuance of Writ/Conditional Writ |
|---|---|---|
| *Crystallex International Corporation* v. *Bolivarian Republic of Venezuela* (Case No. 1:17-mc-00151-LPS) | 19 June 2017 | 9 August 2018 |
| *Phillips Petroleum Company Venezuela Limited et al.* v. *Petroleos de Venezuela, S.A. et al.* (Case No. 1:19-mc-00342-LPS) | 26 November 2019 | 2 March 2022 |
| *Red Tree Investments, LLC* v. *Petroleos de Venezuela, S.A. et al.* (Case No. 1:22-mc-00068-LPS) | 8 February 2022 | 28 April 2022 |
| *Red Tree Investments, LLC* v. *Petroleos de Venezuela, S.A. et al.* (Case No. 1:22-mc-00069-LPS) | 8 February 2022 | 28 April 2022 |

| Case Caption and Case Number | Date of Registration of Judgement | Date of Issuance of Writ/Conditional Writ |
|---|---|---|
| *ConocoPhillips Gulf of Paria B.V.* v. *Coporacion Venezolana Del Petroleo, S.A. et al.* (Case No. 1:22-mc-00264-LPS) | 15 June 2022 | 24 October 2022 |
| *Siemens Energy, Inc.* v. *Petroleos de Venezuela, S.A.* (Case No. 1:22-mc-00347-LPS) | 16 August 2022 | 12 December 2022 |
| *OI European Group B.V.* v. *Bolivarian Republic of Venezuela* (Case No. 1:19-mc-00290-LPS) | 4 November 2019 | 23 March 2023 |
| *Northrop Grumman Ship Systems, Inc.* v. *The Ministry of Defense of the Republic of Venezuela* (Case No. 1:20-mc-00257-LPS) | 31 July 2020 | 23 March 2023 |
| *ACL1 Investments Ltd. et al* v. *Bolivarian Republic of Venezuela* (Case No. 1:21-mc-00046-LPS) | 5 February 2021 | 23 March 2023 |
| *Rusoro Mining Limited* v. *Bolivarian Republic of Venezuela* (Case No. 1:21-mc-00481-LPS) | 4 November 2021 | 23 March 2023 |
| *Koch Minerals Sarl et al.* v. *Bolivarian Republic of Venezuela* (Case No. 1:22-mc-00156-LPS) | 31 March 2022 | 31 March 2023 |
| *Gold Reserve Inc.* v. *Bolivarian Republic of Venezuela* (Case No. 1:22-mc-00453-LPS) | 5 October 2022 | 31 March 2023 |

On December 9, 2019, OFAC regulations came into force, with the effect of prohibiting the perfection of further judgment liens against the PDVH shares. D.I. 150 at 2. On July 16, 2020,

3

the United States filed a statement of interest with this Court, stating that "prefatory steps that Crystallex proposes implicate significant U.S. foreign policy and national security interests that are rightly before the Executive Branch in the Crystallex license application, and taking action which advances toward a public auction and contingent sale would serve no purpose if OFAC ultimately denies Crystallex's license application." D.I. 212 at 13.

As described further below, on May 1, 2023, OFAC issued specific new guidance and licensing that authorizes the perfection of additional judgment liens against the shares of PDVH, on judgments that are added to the sale process in this action pursuant to the Sixth Revised Proposed Order Establishing Sale and Bidding Procedures, entered by the Court on October 11, 2022 (the "Sale Procedures Order"). *See* D.I. 481. Among other things, the Sale Procedures Order required that "by no later than 30 calendar days after entry of this Order, the Venezuela Parties, including PDVSA, shall inform the Special Master as to the specific and precise physical location of the PDVH shares held by PDVSA or any other facts relevant for determining the physical location of the PDVH Shares held by PDVSA and the custodian of the shares." *Id.* at 36.

According to the Venezuela Parties, as of May 8, 2023, PDVH continues to "not have the physical share certificate in its possession" and so "service of a writ of attachment on PDVH would not affect [sic] a valid attachment of the shares or allow for a sale order." D.I. 558 at 7.

On May 5, 2023, the Third Circuit entered an order administratively staying the alter ego cases pending a Third Circuit panel that "will decide the merits of these appeals." *See* Case No. 23-1649, D.I. 24.

## I. Terms of the Sale Procedures Order

The Sale Procedures Order specifically contemplates the addition of judgments other than Crystallex's existing judgment to the sale process to permit them to be satisfied from proceeds of the sale of the PDVH shares: "the Court will decide in accordance with applicable law which, if

4

any, additional judgments (the 'Additional Judgments,' and with the Crystallex Judgment, the 'Attached Judgments') are to be considered by the Special Master for purposes of the Sale Transaction." D.I. 481 at 25. The Sale Procedures Order also addresses the issue of the location of the PDVH share certificates and authorizes the Special Master to file a recommendation with the Court which "may include, if appropriate, an order compelling PDVH to issue new certificates or uncertificated shares." *Id.* at 37.

## II. The Special Master's Supplemental Report and New OFAC Guidance

On April 28, 2023, the Special Master submitted a Supplemental Report and Recommendation Pursuant to the Sale Procedures Order (the "Supplemental Report"). D.I. 553. The Supplemental Report states that the Special Master engaged with the U.S. Government and received assurances that OFAC will not take enforcement action against parties participating in the prefatory steps set out in the Sale Procedures Order. *Id.* at 2-3. The Special Master recommended that the sale process contemplated in the Sale Procedures Order proceed without delay. *Id.* at 3. The Supplemental Report attached a letter from the U.S. Department of Justice to the Special Master ("the DOJ Letter") that states in relevant part:

> The United States Government will accordingly issue public guidance that, under the circumstances, OFAC will not take enforcement action against individuals or entities for participating in or complying with such Prefatory Steps set out in the Sales [Procedures] Order, as well as those who engage in transactions that are ordinarily incident and necessary to participation in and compliance with such steps, e.g., potential or actual credit counterparties. The United States Government anticipates publishing guidance affirming this posture at a later date.

*Id.* at 2.

On May 1, 2023, OFAC issued a new General License 42 ("GL 42"), three new FAQs (FAQ 1123, FAQ 1124, and FAQ 1125), and amended the existing FAQ 808, pursuant to the Venezuela Sanctions Regulations (31 CFR § 591). With GL 42, OFAC authorized all transactions that are:

5

ordinarily incident and necessary to the negotiation of settlement agreements with the IV Venezuelan National Assembly seated on January 5, 2016 ("IV National Assembly"), its Delegated Commission, any entity established by, or under the direction of, the IV National Assembly to exercise its mandate ("IV National Assembly Entity"), or any person appointed or designated by, or whose appointment or designation is retained by, an IV National Assembly Entity, relating to any debt of the Government of Venezuela, Petróleos de Venezuela, S.A. (PdVSA), or any entity in which PdVSA owns, directly or indirectly, a 50 percent or greater interest are authorized. General License No. 42, 31 CFR § 591 (2023).

New FAQs 1124 and 1125 slightly expanded the scope of OFAC's promise that it would not take any enforcement action against "any individuals or entities for participating in, facilitating, or complying with the prefatory steps set out in the court's Sale Procedures Order." OFAC further clarified that "an additional license will be required before any sale is executed," which will ultimately be subject to a "favorable licensing policy." FAQ No. 1124-25, 31 CFR § 591 (2023).

On May 4, 2023, the Court published correspondence stating that OFAC had issued a license to the Clerk of the Court "authorizing the issuance and service of writs of attachment *fieri facias* granted by the Court to judgment creditors against shares of PDV Holding, Inc., owned by Petroleos de Venezuela, S.A." In further correspondence, the Special Master clarified to the Court that "essentially, the license is intended to allow the Court to have full control over who is/isn't added as an Additional Judgment Creditor. Such Additional Judgment Creditors will be authorized to participate in the sale process under OFAC's non enforcement policy, up to the point of sale. At that point, an additional license will be required under OFAC's 'favorable' licensing process." D.I. 555 at 4-5.

## ARGUMENT

### I. Which, if Any, Judgments Should be Regarded as "Additional Judgments" Under the Sale Procedures Order Entered in the Crystallex Action?

ConocoPhillips' judgments should now be added as Additional Judgments under the Sale Procedures Order. The only objection that has ever been raised to ConocoPhillips' inclusion as an

Additional Judgment creditor was its then-inability to perfect its lien due to OFAC sanctions. As noted above, OFAC has now authorized this Court to permit Additional Judgment creditors to obtain writs of attachment against the PDVH shares, removing this roadblock. Beyond that, Delaware courts have a long tradition of conducting execution sales for the benefit of multiple creditors, and that tradition should be followed here. *See Cedar Inn, Inc.* v. *King's Inn, Inc.*, 269 A.2d 781, 786 (Del. Super. Ct. 1970) (execution sale conducted for benefit of multiple creditors).

It is also crucial to the sale process that Additional Judgments be added promptly so that the Special Master knows the total amount of proceeds that that he is trying to raise from the sale. The Venezuela Parties have repeatedly argued that only as many shares as are necessary to satisfy the judgments may be sold, and that the Special Master's marketing process should be designed accordingly. *See, e.g.* D.I. 561 at 11-12. Whether the sale of fewer than 100% of the shares could satisfy the judgments depends on the total amount of the judgments that need to be satisfied.[1]

## II. Should the Court Issue Full, Unconditional Orders of Attachment (Including by Converting Conditional Grants) to Any Creditors? If Yes, Should the Court Direct Service of Any Such Orders of Attachment?

The Court's order granting ConocoPhillips a conditional writ of attachment provided that "[u]pon the Court's receipt of evidence that [OFAC] has [] authorized the issuance and service of a writ of attachment," the Clerk of the Court would be "authorized to affix its original signature and seal on ConocoPhillips' writ of attachment fieri facias," but "not to issue or serve the writ of attachment until further order of the Court." Case No. 19-mc-342, D.I. 43 at 2. The Court now has such evidence in the form of OFAC's grant of a specific license for the issuance and service

---

[1] ConocoPhillips believes that the judgments of Red Tree and Siemens Energy, which are similarly unstayed direct judgments against PDVSA, should also be added at this point. ConocoPhillips will respond to any requests from other creditors for Additional Judgment status in the responsive briefing.

7

of writs of attachment for Additional Judgments. *See* D.I. 555. Therefore, under the terms of the conditional writ order, the Clerk is authorized to sign and seal the writ immediately upon inclusion as an Additional Judgment.

The Court should then enter an order directing the Clerk of Court to issue and the U.S. Marshals Service to serve an unconditional writ of attachment. As we note below in response to the Court's third question, ConocoPhillips believes that the mechanics of service in these circumstances will likely require reissuance of the PDVH shares, and so actual service may need to await the completion of the reissuance process. Beyond that, however, ConocoPhillips is not aware of any reason for further delay.

## III. How Should the Court Determine the Priority of Any Judgments That are Made Additional Judgments?

Delaware law's basic policy on enforcement of judgments is that first-in-time is first-in-right. *See, e.g.*, 10 *Del. C.* § 5082, 10 *Del. C.* § 5084, 10 *Del. C.* § 4705; *see generally Eastern Sav. Bank, FSB* v. *CACH, LLC*, 55 A.3d 344, 350 (Del. 2012). The question now before the Court is how to give effect to that policy when the normal operation of Delaware law has been suspended since 2019 due to OFAC sanctions. Principles of federal preemption, Delaware's equitable tradition, and practical considerations all point in the same direction: The Court should exercise its discretion to fix the relative priority of Additional Judgments based on the dates of issuance of the conditional writs.

### A. Principles of Federal Preemption Require Giving the Greatest Possible Effect to Delaware Law Consistent with Federal Law

Federal Rule of Civil Procedure 69(a) provides that "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a). Accordingly, Delaware law applies except to the extent that a

8

federal statute supervenes.  For some time, OFAC regulations issued pursuant to a federal statute, the IEEPA, have in fact preempted some aspects of Delaware law.  But in giving effect to federal preemption, the scope is narrow:  "the proper approach is to reconcile the operation of both statutory schemes with one another rather than holding one completely ousted.'"  *Hi Tech Trans, LLC* v. *New Jersey*, 382 F.3d 295, 302 (3d Cir. 2004) (quoting *Ford Motor Co.* v. *Ins. Comm'r of Pa.*, 874 F.2d 926, 936 (3d Cir. 1989)); *accord Wylain, Inc.* v. *TRE Corp.*, 412 A.2d 338, 346 (Del. Ch. 1979) (citing *Merrill, Lynch, Pierce, Fenner & Smith, Inc.* v. *Ware*, 414 U.S. 117, 127 (1973)).

Delaware's first-in-time, first-in-right policy should be reconciled with the OFAC sanctions by seeking to approximate what Delaware law would have done absent federal intervention.  The closest approximation here is to set priority based on the date a creditor reached the furthest point possible in Delaware's execution process before federal law blocked further progress, which is the date on which the creditor's conditional writ was issued.

### B. The Court's Equitable Discretion Should be Exercised to Vindicate Delaware's Statutory First-in-Time Policy

Delaware courts have long recognized that "one of the traditional roles of equity has been to deploy fact-specific equitable doctrines to mitigate the sometimes harsh outcomes that a brightline rule of law can produce."  *Am. Healthcare Admin. Servs., Inc.* v. *Aizen*, 285 A.3d 461, 491 (Del. Ch. 2022); *accord In re Coca-Cola Enterprises, Inc.*, 2007 WL 3122370, at *4 (Del. Ch. Oct. 17, 2007) ("Courts of Equity came into being because universally applicable legal rules are bound to work injustice in certain individual cases.").  The purpose of these equitable doctrines is not to frustrate the legislature's goals, but to vindicate them in exceptional cases.

For example, while statutes of limitation are generally written inflexibly, barring an action that is not brought within a fixed period of time, equitable principles can override an otherwise strict limitations period where the plaintiff "has been pursuing his rights diligently" but "some

9

extraordinary circumstance stood in his way." *Pace* v. *DiGuglielmo*, 544 U.S. 408, 418 (2005). Equitable tolling is therefore viewed as consistent with legislative intent, not a frustration of it, because the legislature is thought to have not wanted the limitations statute to bar an action in such circumstances.

Delaware's first-in-time, first-in-right rule of judgment priority is equally a bright line rule of law, for which equitable principles can be used to vindicate the legislative policy. The application of equitable discretion to issue writs in the order they would have been issued but for the OFAC sanctions is ultimately more faithful to the legislature's goal than to permit a race to the courthouse once the sanctions have been lifted.

At least three equitable maxims counsel in favor of fixing priority based on the date of issuance of conditional writs. *First*, "equity will follow the law, by which it is meant both that courts of equity will recognize and give effect to all legal rules in their proper sphere (when applied to legal estates) and that, beyond that, the policies reflected in rules of law will be extended to equitable estates by analogy where appropriate." *Delaware Tr. Co.* v. *Partial*, 517 A.2d 259, 242 (Del. Ch. 1986). As noted, Delaware policy in this area is that first-in-time is first-in-right, and equitable principles should be employed to achieve that policy. *Second*, Delaware law recognizes that "equity regards that as done which in good conscience ought to be done." *Thompson* v. *Lynch*, 990 A.2d 432, 435 (Del. Sup. Ct. 2010) (internal quotation omitted). Delaware courts have applied that principle to restore parties to the positions that they should have been in but for a supervening obstacle or frustration. *See Id*. at 435; *Handler Constr., Inc.* v. *CoreStates Bank, N.A.*, 633 A.2d 356, 363 (Del. Sup. Ct. 1993); *Stream TV Networks, Inc.* v. *SeeCubic, Inc.*, 250 A.3d 1016, 1030 (Del. Ch. 2020). And third, "[e]quity abhors a windfall." *In re Millennium Lab Holdings II, LLC*, 945 F.3d 126, 143 (3d Cir. 2019) (internal quotation omitted). A windfall is precisely what would

occur if a later-in-time creditor obtains priority over an earlier-in-time creditor because the earlier-in-time creditor's ability to obtain its writ and perfect its attachment was suspended through no fault of its own.

Delaware courts have in fact had occasion to apply equitable principles to protect earlier-in-time creditors where ordinary process failed to accord them a valid priority. In *Stockley* v. *Horsey*, Delaware's then-high court stated that Delaware law creates a "policy of giving to a creditor the benefit of his diligence as against other creditors." *Stockley* v. *Horsey*, 4 Houst. 603, 608 (Del. Ct. Err. & App. 1874). It then described a previous case, *Newell* v. *Morgan*, as "show[ing] how far under our law, the policy of diligence prevails." *Id.* at 609 (citing 2 Del. 225 (Del. Ct. Err. & App. 1837)). *Newell* involved a situation where the earliest judgment creditor should have been entitled to a senior lien on the debtor's lands. But as it turned out, that "complainant's judgment had no legal priority against the lands" because "the legal title to [those lands] was never in the debtor." *Stockley*, 4 Houst. at 609-610. The lands had been titled in the debtor's children instead, and therefore were not subject to the judgment lien. *Id.* Nonetheless, the court recognized that "the principle of diligence should prevail and that the proceeds of the land should be distributed, not as equitable assets [pro rata], but according to the legal priority which the judgments would have held against the land itself." *Id.* at 610. Even though strict application of Delaware statutes would not have accorded priority, the court employed equitable principles to vindicate the first-in-time policy where it had been frustrated by the debtor's fraud. Analogous logic should apply to ConocoPhillips, which has been diligent in pursuit of its rights.

### C. Practical Considerations Weigh in Favor of the Exercise of Discretion to Issue Unconditional Writs in the Same Order as the Conditional Writs

There are also practical reasons why the Court should exercise its discretion in the order of issuance of the writs. Footnotes 3 and 4 in the Court's May 10 Order raise a question that has been

11

lurking in these cases for some time:[2] Is there an impediment under Delaware law to the attachment of the PDVH shares in the absence of a share certificate?

After the remand from the Third Circuit's affirmation of this Court's determination that PDVSA was the alter ego of Venezuela, the Venezuela Parties raised the argument that Crystallex's attachment of the PDVH shares was defective and should be quashed for failure to obtain an actual physical seizure of the share certificate for the PDVH shares. The Court never resolved the issue on its merits. Instead, it ruled that the Venezuela Parties were collaterally and judicially estopped from challenging the validity of Crystallex's attachment. *See Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*, 2021 WL 129803, at *9-12 (D. Del. Jan. 14, 2021). But the implication of the Venezuela Parties' argument, if it were correct, is that Crystallex's attachment and resulting lien were never validly created under Delaware law. *See* 8 *Del. C.* § 324(a) ("*the attachment is not laid* and no order of sale shall issue unless § 8-112 of Title 6 has been satisfied") (emphasis added); 6 *Del. C.* § 8-112 ("the interest of a debtor in a certificated security may be reached by a creditor *only by actual seizure of the security* certificate by the officer making the attachment or levy") (emphasis added).

A recent case from the Delaware Superior Court sheds light on this issue and suggests that the Venezuela Parties may have been correct on the merits. In *Deng* v. *HK Xu Ding Co., Ltd.*, a judgment creditor sought to satisfy its claim by forcing the sale of its judgment debtor's shares in a Delaware company. 2023 WL 3318322 (Del. Super. Ct. May 8, 2023). The actual share certificate was in the custody of the Chinese police and not available to be seized. *Id.* at *1. So,

---

[2] ConocoPhillips noted the existence of this issue at D.I. 418. *See also* Transcript of March 16, 2021 Oral Argument at 52-53, D.I. 256 (Statements of Crystallex counsel asking the Court to consider reissue of the PDVH shares to resolve questions over the validity of its attachment).

the creditor did what Crystallex did: it served the writ on the Delaware corporation and argued that actual physical seizure of the certificate was not required. *Id.* at *2.

The Superior Court held that this does not work to create a valid attachment. After extensively analyzing the statutory history, in particular the 1998 amendments to Delaware's General Corporation Law, the court concluded that "the statutory language requires that, to attach certificated shares of a corporation and obtain an order to sell the security to satisfy a judgment, the officer making the attachment must actually seize the certificate." *Id.* at *3. It rejected the same arguments Crystallex has made regarding the Delaware situs statute (8 *Del. C.* § 169) as conclusively resolved by the 1998 amendments. *See id.* at *4 ("After the 1998 amendments to Section 324, Delaware courts retained the jurisdiction under Section 169 to attach and sell shares, but no longer had the power to do so without requiring physical seizure of the share certificate."). And it distinguished this Court's decision in *Crystallex* as resting entirely on waiver and estoppel rather than the merits argument. *Id.* at *5 (citing *Crystallex*). The attachment in *Deng* was therefore rendered invalid and the order of sale vacated.

This Court's determination that the Venezuela Parties were estopped from making this challenge will not insulate Crystallex from defending its attachment from challenge as defective for lack of physical seizure of the shares. Other creditors are not subject to the waiver and estoppel disabilities affecting the Venezuela Parties. Those creditors are now in a position to obtain attachments, and they will have an incentive to argue that Crystallex's attachment is defective in order to dislodge Crystallex from its asserted priority position. Moreover, other creditors will now be seeking attachments, and the Venezuela Parties will doubtless contend that they are not estopped from challenging the validity of any newly created attachments (and undoubtedly will try to appeal any adverse determination).

The Court has the discretion to make these proceedings reflect the reasonable expectations of the parties, and to ensure that all of the work that has gone into the Sale Procedures Order will not be wasted. Given the very real prospect of Crystallex's attachment being found defective, Crystallex is ultimately in need of some intervention by this Court just as much as those other creditors, like ConocoPhillips, that were unable to serve their writs due to the OFAC sanctions.

Delaware's Uniform Commercial Code, Delaware Corporate Law, and the Rules of Civil Procedure provide a path forward. Section 8-112(e) of Delaware's UCC provides a substantive source of authority for the Court to act in these circumstances: "A creditor whose debtor is the owner of a certificated security is entitled to aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the certificated security . . . or in satisfying the claim by means allowed at law or in equity in regard to property that cannot readily be reached by other legal process." 6 *Del. C.* § 8-112(e). Share certificates in Delaware companies are subject to reissue in case of loss, theft, or destruction—in such a case, "the owner of the lost, stolen or destroyed certificate or such owner's legal representatives may apply to the Court of Chancery for an order requiring the corporation to show cause why it should not issue new uncertificated shares or a new certificate of stock in place of the certificate so lost, stolen or destroyed." 8 *Del. C.* § 168(a). Finally, Federal Rule of Civil Procedure 70 provides that "[i]f a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done—at the disobedient party's expense—by another person appointed by the court. When done, the act has the same effect as if done by the party." Fed. R. Civ. P. 70(a).[3]

---

[3] Court of Chancery rules have a substantially equivalent version of Rule 70. *See* Del. Ch. Ct. R. 70.

14

The Court should proceed by requiring PDVSA either to produce the certificate or state that it is lost, stolen, or destroyed. Assuming the certificate is not available, PDVSA should be ordered to request the reissuance of the certificate from PDVH. If PDVSA refuses to make that request, Rule 70 and § 8-112(e) provide ample authority for the Court to appoint a substitute—likely the Special Master—to make the application with the same legal effect as if PDVSA itself had made that application. Once a new certificate is issued, that certificate should then be seized by the U.S. Marshals Service, at which point the writs should be served in the order directed by the Court.

There is little doubt that this process or a similar one will be required at some point. No bidder is going to close without assurance that they are actually buying ownership of PDVH through valid share certificates. The most prudent course is to get the reissuance process underway now, and once the reissued shares are available for seizure, to require that the U.S. Marshals Service serve the writs of attachment in the order that the actual writ and conditional writs were issued. That will ultimately limit further delaying tactics by the Venezuela Parties as well as support a value-maximizing auction by ensuring that there is an unquestionably valid share certificate that can be sold, unquestionably valid attachments on that certificate, and an unquestionably valid order of priority. And it will best uphold the reasonable expectations of ConocoPhillips and the other creditors in a procedure that hews as closely as possible to Delaware law.

|  |  |
|---|---|
| *Of Counsel*:<br><br>Michael S. Kim<br>Marcus J. Green<br>Josef M. Klazen<br>Lydia L. Halpern<br>KOBRE & KIM LLP<br>800 Third Avenue<br>New York, New York 10022<br>(212) 488-1200<br>michael.kim@kobrekim.com<br>marcus.green@kobrekim.com<br>jef.klazen@kobrekim.com<br>lydia.halpern@kobrekim.com<br><br>Richard G. Mason<br>Amy R. Wolf<br>Michael H. Cassel<br>WACHTELL, LIPTON, ROSEN<br> & KATZ<br>51 West 52nd Street<br>New York, New York 10019<br>(212) 403-1000<br>RGMason@wlrk.com<br>ARWolf@wlrk.com<br>MHCassel@wlrk.com<br><br>Dated: May 24, 2023 | Respectfully submitted,<br><br>ROSS ARONSTAM & MORITZ LLP<br><br>*/s/ Garrett B. Moritz*<br>Garrett B. Moritz (Bar No. 5646)<br>Elizabeth M. Taylor (Bar No. 6468)<br>1313 North Market Street, Suite 1001<br>Wilmington, Delaware 19801<br>(302) 576-1600<br>gmoritz@ramllp.com<br>etaylor@ramllp.com<br><br>*Attorneys for Phillips Petroleum Company Venezuela Limited, ConocoPhillips Petrozuata B.V., and ConocoPhillips Gulf of Paria B.V.* |