IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>              Plaintiff,<br><br>    v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>              Defendant. | C.A. No. 17-151-LPS |

**CRYSTALLEX INTERNATIONAL CORPORATION'S REPLY
TO THE VENEZUELA PARTIES' OBJECTIONS TO THE
<u>SPECIAL MASTER'S SUPPLEMENTAL REPORT AND RECOMMENDATION</u>**

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Miguel A. Estrada
Lucas C. Townsend
Adam M. Smith
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
Fax: (202) 467-0539

Dated: June 5, 2023

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
Fax: (302) 651-7701

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES……………………………………………………………..ii

INTRODUCTION ................................................................................................................... 1

SUMMARY OF POSITION .................................................................................................. 2

ARGUMENT ........................................................................................................................... 3

    I.      OFAC's Statements Confirm The Sale Process Should Proceed .......................... 3

    II.     The Sale Process Should Not Be Delayed Due To Appeals In Other Cases ......... 5

CONCLUSION........................................................................................................................ 7

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baltimore & O. Ry. Co. v. Jackson*,
　353 U.S. 325 (1957)..................................................................................................................4

*Berry v. Commissioner of Internal Revenue*,
　19 T.C.M. (CCH) 829 (T.C. 1960) ...........................................................................................4

*Exxon Mobil Corp. v. Mnuchin*,
　430 F. Supp. 3d 220 (N.D. Tex. 2019) ......................................................................................3

*PHH Corp. v. Consumer Fin. Prot. Bureau*,
　839 F.3d 1 (D.C. Cir. 2016).......................................................................................................5

*United States v. Grinnell Corp.*,
　30 F.R.D. 358 (D.R.I. 1962) .....................................................................................................4

*United States v. Ward*,
　2001 WL 1160168 (E.D. Pa. Sept. 5, 2001) .............................................................................5

Crystallex International Corporation ("**Crystallex**") respectfully submits this Reply to the Venezuela Parties' Objections to the Special Master's Supplemental Report (the Venezuela Parties' "**Objections**"), D.I. 561, filed May 23, 2023.[1] The Court should reject the Objections and begin the Sale Process as early as practicable, consistent with the Special Master's Supplemental Report and Crystallex's Response thereto, D.I. 562, filed May 23, 2023 (Crystallex's "**Response**").

**INTRODUCTION**

Consistent with their longstanding pattern of obstruction and delay, the Venezuela Parties insist the Sale Process must remain on hold, asking this Court, again, for a stay in everything but name. And yet, the Venezuela Parties cite no facts or law that actually supports their position. Instead, they rely on manufactured concerns about risks that do not exist, and which the Court has already rejected. Their arguments are as meritless as they are audacious.

In the first paragraph of their Objections, the Venezuela Parties hitch their case to OFAC's years-old statement in FAQ 809 to claim that the Venezuela sanctions regime currently prohibits conducting the Court-ordered Sale Process. But that argument does not hold water—this Court has already rejected the Venezuela Parties' interpretation of the relevant sanctions laws and OFAC has now deleted that prior statement, as the Venezuela Parties are forced to admit. D.I. 561 at 5. Their arguments only go downhill from there.

The Venezuela Parties next assert that the "Government conspicuously declined to agree with this Court's view" regarding the legality of the Sale Procedures, as though the United States intends to sneak its defunct interpretation past the Court through clever drafting. In the same vein,

---

[1] Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Court's Sale Procedures Order, D.I. 481, entered October 11, 2022 and in Crystallex's Response to the Special Master's Supplemental Report and Recommendation, D.I. 562, filed May 23, 2023.

1

the Venezuela Parties paint as ominous OFAC's decision that it was unnecessary to issue a "specific license" to the Court to conduct the Sale Process, but that is hardly surprising. The Court already found its Sale Process lawful, and **the Government confirmed it "considers the Court to have resolved this issue as to the parties' claims.**" D.I. 553-1 at 1 (emphasis added). Moreover, as the Venezuela Parties admit, OFAC *did* issue a license for additional creditors to participate in the Sale Process, thereby inviting the Court and others to do *more* of what the Venezuela Parties wish the U.S. Government viewed as illegal.

Delaware law requires the sale of the PDVH Shares and the Venezuela Parties' imagined obstacles to the Sale Process are inconsistent with the recent actions of the U.S. Government. No amount of table pounding can change the fact that this Court and Sale Process participants can and should take the United States at its word. This Court should reject the Venezuela Parties' objections and set the Launch Date no later than September 5, 2023, as proposed by the Special Master.

## SUMMARY OF POSITION

**I.** The Venezuela Parties' arguments minimizing the import of OFAC's statements are not credible. OFAC's statements were clear and unqualified, and the public is entitled to rely on them. And this Court already ruled that the Sale Process should proceed even if OFAC had remained silent in response to the Special Master's requests. The Venezuela Parties' strained efforts to sow doubt should be rejected.

**II.** The Venezuela Parties' arguments for delaying the sale until the resolution of pending appeals in unrelated cases should likewise be rejected. Whether to add judgments to the Sale Process is a procedural question. Once there is a cut-off date for determining Additional Judgments, and any Court-authorized attachments are served, the market will have the certainty it needs. And as to the ongoing appeals concerning the 2020 Bondholders' lien against assets of

PDVH, those claims represent the sort of risk that is priced into any sale, Court-ordered or otherwise. There is no reason to delay the sale for the outcome of other appeals, involving other parties.

## ARGUMENT

### I. OFAC's Statements Confirm The Sale Process Should Proceed

*First*, the Venezuela Parties mischaracterize OFAC's affirmative statements of regulatory policy. Just as "a regulated party would be entirely justified to rely in good faith upon public, released statements from the White House and the Treasury," *Exxon Mobil Corp. v. Mnuchin*, 430 F. Supp. 3d 220, 241 (N.D. Tex. 2019) (internal quotations omitted), this Court and the public are entitled to rely on OFAC's pronouncements on its own regulations. OFAC provided specific assurances that it "will not take enforcement action against any individuals or entities" participating in the Sale Process or engaging in transactions necessary and incident thereto. OFAC, Frequently Asked Questions No. 1123, https://ofac.treasury.gov/faqs/1123 (last visited June 5, 2023) (hereinafter "**FAQ 1123**"). This guidance is consistent with the Court's previous holding that no law prohibits the Sale Process from proceeding and the Department of Justice's representation to the Special Master (and thus the Court) that "the United States Government is not seeking to contest [the Court's] construction in this case **and considers the Court to have resolved this issue as to the parties' claims**." D.I. 553-1 at 1 (emphasis added). OFAC specifically advises the public to rely on these statements. OFAC, Framework for OFAC Compliance Commitments at 5, https://ofac.treasury.gov/media/16331/download?inline (last visited June 5, 2023) (recommending that sanctions compliance programs adapt to "published OFAC guidance or other OFAC actions").

The public is entitled to rely on this confirmation of OFAC's "non-enforcement posture." FAQ 1123. Thus, Sale Process participants would not be blindly trusting in OFAC's "'failure to enforce the law' for a time," as Venezuela suggests, *see* D.I. 561 at 9 (citation omitted), but justifiably acting in accordance with OFAC's articulation of its regulations. None of Venezuela's cited

3

cases is to the contrary.  *Baltimore & O. Ry. Co. v. Jackson* involved a situation where there was evidence of inaction only, but "no expressed administrative determination of the problem."  353 U.S. 325, 330 (1957).  In *Berry v. Commissioner of Internal Revenue*, the Tax Court unremarkably found there was no justifiable reliance on the collector of internal revenue allegedly saying "[w]ell, Joe, there hasn't been any penalty imposed on anyone that I know of for failure to file a declaration of estimate in a case of this kind."  19 T.C.M. (CCH) 829 (T.C. 1960).  These cases are a far cry from OFAC's clear, affirmative pronouncement.  Nor is OFAC's policy in any way analogous to the representations of "present" agency views or descriptions of prior agency approaches to the law in the decisions the Venezuela Parties cite.  *See United States v. Grinnell Corp.*, 30 F.R.D. 358, 363 (D.R.I. 1962) (DOJ antitrust stated it did not "presently intend to take action to the proposed acquisition" but reserved its rights if "other evidence or subsequent developments should warrant it"); *Berry*, 19 T.C.M. (CCH) at 829  (discussing statement that tax collector was unaware of prior prosecutions in similar circumstances).  By contrast, OFAC's public statements confirm its prospective position with respect to future conduct:  "OFAC **will not** take enforcement action . . ." in connection with the Court's Sale Process.  FAQ 1123 (emphasis added).

*Second*, the Venezuela Parties are wrong to argue, because OFAC could change its sanctions guidance in the future, that any such new interpretation could be imposed on Sale Process participants for conduct undertaken in accordance with this Court's orders and OFAC's public guidance.  "Retroactivity—in particular, a new agency interpretation that is retroactively applied to proscribe past conduct—contravenes the bedrock due process principle that the people should have fair notice of what conduct is prohibited."  *PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1, 46 (D.C. Cir. 2016) (Kavanaugh, J.).  "A person may not be prosecuted for violation of a

4

regulation if the administering agency affirmatively misled the person into believing his conduct was not a violation." *United States v. Ward*, 2001 WL 1160168, at *17 (E.D. Pa. Sept. 5, 2001).

*Third*, the Venezuela Parties' suggestion that proceeding with the Sale Process "is illegal," D.I. 561 at 2, cannot be taken seriously. This Court and now OFAC have confirmed the legality of the Sale Process. *See* D.I. 553-1 ("[T]he United States Government is not seeking to contest [the Court's] construction in this case and considers the Court to have resolved this issue as to the parties' claims."); *see also, e.g.*, D.I. 443 at 18 ("The Court has not been pointed to any legal authority or any other aspect of the sanctions regime that bars the Court from proceeding with a sale process, up to and including the selection of a winning bidder, provided that legal title to the PDVH Shares is not transferred until after the winning bidder obtains a specific license."); *id.* at 34 ("OFAC lodged no policy or legal objections to any steps the Court is currently taking or considering to prepare for a sale once a license is granted.") (internal quotations omitted); *id.* at 36 ("In light of . . . the absence of any indication from any U.S. governmental entity (including OFAC) that this Court cannot proceed, the Court will proceed with the sale process, up to and including selecting a winning bid."). Indeed, the Court may "proceed with initiating the sale process" even if OFAC had not "provide[d] an indication of non-objection to the sale procedures." *Id.* at 43.

For these reasons, the Venezuela Parties' efforts to sow doubt about OFAC's remarkably clear statement do not provide any reason to delay the long-anticipated sale any further.

## II. The Sale Process Should Not Be Delayed Due To Appeals In Other Cases

Without using the word "stay," the Venezuela Parties essentially ask once again to stay this case (their *seventeenth* such request)[2] until other proceedings involving other creditors, in other courts, reach their conclusions. The frivolous argument should be rejected. There will *always* be

---

[2] *See* D.I. 549 at 1 n.3 (identifying fifteen requests to delay this litigation); Doc. 20, *OI European Group B.V. v. Bolivarian Republic of Venezuela*, No. 23-1647 (3d Cir. May 1, 2023).

other proceedings wending their way through the courts as long as Venezuela continues its obstructionist tactics. Only scheduling the sale will end the delay.

The pending appeals in the Third Circuit and New York Court of Appeals are not reason for further delay. The Venezuela Parties and their paid declarant speculate that the Third Circuit's resolution of the Appealed Cases might impact the Sale Process. *See* D.I. 561 at 11–12; D.I. 561-1 at 9–13.[3] But those theoretical concerns are already accounted for in the Sale Procedures Order and can be summarized as follows: additional creditors participating in the Appealed Cases may hold valid judgments and attachments junior to Crystallex's by the Additional Judgment Deadline, or they may not. For those that do, the Court will determine which, if any, judgments should be regarded as Additional Judgments. That is not a reason to delay the sale.

Proceeding with the Sale Process is the best way to address the uncertainty the Venezuela Parties allegedly wish to resolve. If the Launch Date were to be set at September 5, 2023 as the Special Master proposes, D.I. 553 at 4, then the Additional Judgment Deadline would fall on September 15, 2023. *See* D.I. 481 ¶ 30. Given that the Third Circuit has already heard argument on June 1, 2023 in the Appealed Cases, it is unlikely that any delay would be necessary to allow the Court to consider the Third Circuit's ruling before the Additional Judgment Deadline. But it does not matter. There is no need to delay the Sale Process to consider the addition of new judgments indefinitely into the future. Given the Venezuela Parties' debts and history of non-payment, purported creditors will continue coming out of the woodwork for years to come. The Venezuela

---

[3] Notably, despite his complaints that the Special Master purportedly did not reach out to potential market participants and instead relied on the experience and expertise of his advisors, Mr. Weisenburger offers up nothing more than his purported experience as evidence that some market participants might be discouraged from participating in the Sale Process.

6

Parties would have this Court delay until this inevitable stream of creditors runs its course. But there is no legal basis for denying Crystallex its right to execute on the PDVH Shares.

In the 2020 Bondholder Case, the New York Court of Appeals is expected to determine the validity of a lien on 50.1% of the shares of CITGO Holding, PDVH's sole asset. If that issue is not resolved before the auction, then bidders will simply price in their view of the risk associated with currently pending litigation when formulating their bids. That is standard in major transactions and it is irrelevant to Crystallex's right to enforce its judgment by selling the PDVH Shares. D.I. 469 at 2 ("[A]ll Delaware law requires is a noticed auction of the PDVH shares.") (internal quotations omitted). The market will determine the value of those shares at the time of the sale. And the Sale Procedures are more than sufficient to allow bidders to make informed bids to purchase the PDVH Shares—or a portion thereof—at the highest price supported by then-prevailing market realities. *See* D.I. 481 at 6 ("The Bidding Procedures . . . afford notice and a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the PDVH Shares.").

The Venezuela Parties will always find a reason to claim the market is not ideal for a sale, or that any minor event or appearance of a new creditor justifies further delay. Crystallex holds a perfected attachment of the PDVH Shares now, and has been waiting six years (and more) for justice. There is no reason to delay the sale any further.

## CONCLUSION

The Venezuela Parties' Objections to the Special Master's Supplemental Report should be rejected and the Court should direct the Special Master to begin the Marketing Process "without any further delay," and the Preparation Launch Date should be set "as soon after June 5, 2023 as the Court is able to consider" the Supplemental Report and the responses thereto.

| | |
|---|---|
| OF COUNSEL:<br><br>Robert L. Weigel<br>Jason W. Myatt<br>Rahim Moloo<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York  10166<br>(212) 351-4000<br><br>Miguel A. Estrada<br>Lucas C. Townsend<br>Adam M. Smith<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C.  20036<br>Tel: (202) 955-8500<br>Fax: (202) 467-0539<br><br>Dated:  June 5, 2023 | /s/ *Jeffrey L. Moyer*<br>Raymond J. DiCamillo (#3188)<br>Jeffrey L. Moyer (#3309)<br>Travis S. Hunter (#5350)<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware  19801<br>(302) 651-7700<br>dicamillo@rlf.com<br>moyer@rlf.com<br>hunter@rlf.com<br><br>*Attorneys for Plaintiff* |