# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| **CRYSTALLEX INTERNATIONAL CORPORATION,** : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Misc. No. 17-151-LPS |
| : | |
| **BOLIVARIAN REPUBLIC OF VENEZUELA,** : | |
| : | |
| Defendant. : | |
| : | |
| : | |

---

## SPECIAL MASTER'S REPLY TO
## VENEZUELA PARTIES' OBJECTIONS TO SUPPLEMENTAL REPORT

OF COUNSEL:

| | |
|---|---|
| Ray C. Schrock (admitted *pro hac vice*) | Myron T. Steele (#000002) |
| Alexander W. Welch (admitted *pro hac vice*) | Matthew F. Davis (#4696) |
| Chase A. Bentley (admitted *pro hac vice*) | Bindu A. Palapura (#5370) |
| WEIL, GOTSHAL & MANGES LLP | Abraham Schneider (#6696) |
| 767 Fifth Avenue | POTTER ANDERSON & CORROON LLP |
| New York, New York 10153 | Hercules Plaza, 6th Floor |
| Telephone: (212) 310-8000 | 1313 North Market Street |
| Facsimile: (212) 310-8007 | P.O. Box 951 |
| Ray.Schrock@weil.com | Wilmington, DE 19801 |
| Alexander.Welch@weil.com | Telephone: (302) 984-6000 |
| Chase.Bentley@weil.com | Facsimile: (302) 658-1192 |
| | msteele@potteranderson.com |
| | mdavis@potteranderson.com |
| | asilverstein@potteranderson.com |
| | aschneider@potteranderson.com |

*Counsel for Special Master Robert B. Pincus*

Dated: June 5, 2023
10853359

Pursuant to this Court's May 10, 2023 Order (D.I. 559), I, Robert B. Pincus, solely in my capacity as special master (the "**Special Master**") for the United States District Court for the District of Delaware (the "**Court**") in Crystallex International Corp. v. Bolivarian Republic of Venezuela (D. Del. Case. No. 17-151-LPS) (the "**Crystallex Case**"), hereby submit this reply to responses to the Special Master's Supplemental Report and Recommendation Pursuant to Sale Procedures Order ("**Supplemental Report**") (D.I. 553).[1]

## Preliminary Statement

1. Pursuant to the Sale Procedures Order (D.I. 481), the Special Master submitted the Supplemental Report on April 28, 2023. On, May 23, 2023, the Venezuela Parties filed an objection (D.I. 561) (the "**Venezuela Objection**") and Crystallex filed a response (D.I. 562) to the Supplemental Report.

2. Crystallex interpreted the April 7 DOJ Letter and the renewed circumstances surrounding this Marketing Process in the same manner as the Special Master—potential participants in the process should now have sufficient clarity as to OFAC's position and there remains no legitimate impediment to commencing the Marketing Process and setting the Preparation Launch Date and Launch Date as soon as practicable. Therefore, this reply only addresses the objections raised by the Venezuela Parties.

3. Nothing in the Venezuela Objection changes my recommendation as the Special Master that, based on advice from my independent advisors, the Court should permit the Marketing Process to proceed without further delay. Arguments by the Venezuela Parties about lack of a specific OFAC license, uncertainty as to OFAC's position, and other reasons for delaying the launch of the Marketing Process, are all recycled and have long been addressed by the Court. The

---

[1] Capitalized terms used and not otherwise defined herein shall bear the meanings ascribed to such terms by the Sale Procedures Order (D.I. 481).

circumstances of this case, in which substantial judgments remain unpaid for years, point clearly in the direction of declining any further delay by the Venezuela Parties and moving forward with the execution of a sale of the PDVH Shares.

4. The Sale Procedures Order contemplates processes for addressing the purported issues raised in the Venezuela Objection. All of those processes, including determination of the inclusion and amount of Additional Judgments, and engagement with the PDVSA 2020 Bondholders, come after the Preparation Launch Date and will be completed by the Special Master in due course, in the sequence already approved by the Court. Therefore, I reiterate my recommendation that the Marketing Process move forward in earnest. Taking into consideration the hearing scheduled for June 26, 2023, I recommend that the Court set (i) the Preparation Launch Date as soon as practicable after the June 26 hearing, and (ii) the Launch Date on September 26, 2023 (*i.e.*, approximately three months after the Preparation Launch Date) or the date on which the Special Master, in his sole discretion, believes he and his Advisors are sufficiently prepared to launch the Marketing Process.

## Argument

**A.   U.S. Government's Guidance Provides Sufficient Clarity for Potential Participants in the Marketing Process.**

5. The Venezuela Parties attempt to read controversy into what they suggest is OFAC's conscious decision to issue a specific license to holders of Additional Judgments, but not to the sale process. *See* Venezuela Objection at 1. This manufactured controversy, however, is inconsistent with the clear regulatory and policy statements that the U.S. Government has made in the April 7 DOJ Letter and subsequent FAQs. In particular, the April 7 DOJ Letter makes clear that the issue of whether a specific license is needed to conduct all of the sale process steps short of actually closing the sale has already been settled—the answer is "no", a specific license is not

needed (the U.S. Government is "not seeking to contest" the Court's holding "that a specific license is not necessary for, and the current Venezuela sanctions regime does not prohibit the Prefatory steps antecedent to the consummation of the Sales Transaction to occur"). *See* April 7 DOJ Letter.  Additionally, the April 7 DOJ Letter contained: an unequivocal pronouncement that,

> OFAC *will not take enforcement action* against individuals or entities for participating in or complying with the Prefatory Steps set out in the [Sales Procedures Order], as well as those who engage in transactions that are ordinarily incident and necessary to participation in and compliance with such steps, e.g., potential or actual credit counterparties.

> *Id.* (emphasis added).

6. This clear statement, in conjunction with the broad and unequivocal public guidance that OFAC subsequently issued in FAQ 1123, should give sophisticated actors comfort and confidence to engage in the prefatory steps set out in the Court's Sale Procedures Order. *See* OFAC, Frequently Asked Questions No. 1123 (Venezuela Sanctions), https://ofac.treasury.gov/faqs/1123 (last visited June 5, 2023).  Moreover, the approach OFAC took here is not out of the ordinary.  OFAC often issues interpretative guidance and statements about its specific enforcement and licensing priorities through FAQs, public statements, and other guidance documents.  *See, e.g.*, OFAC, Frequently Asked Questions No. 867 (Syria Sanctions), https://ofac.treasury.gov/faqs/867 (last visited June 5, 2023); OFAC, Frequently Asked Questions No. 1079 (Cyber-Related Sanctions), https://ofac.treasury.gov/faqs/1079 (last visited June 5, 2023); *Fact Sheet: Provision of Humanitarian Assistance and Trade to Combat COVID-19*, OFAC (June 16, 2022), https://ofac.treasury.gov/media/35851/download?inline.  Sophisticated actors will understand that OFAC's practice is not to deviate from these pronouncements without an explicit change in policy and accompanying public announcement.

7. Finally, the Venezuela Parties' claim that OFAC's non-enforcement policy could change at any point is similarly unpersuasive. *See* Venezuela Objection at 8-11.  The possibility

that OFAC could change its guidance or policies with respect to this case is no different than the possibility that U.S. government policy positions and administrative rules in general (including the Executive Orders and regulations applying sanctions to Venezuela) are subject to change. OFAC can, and often does, issue new sanctions and guidance quickly, creating new regulatory and compliance requirements where they did not exist before. This is a calculated risk that market actors account for in their business dealings wholly unrelated to this case and the sale of PDVH Shares. The same is true for Potential Bidders here as well. No regulatory agency—particularly OFAC, which deals in foreign policy and national security—would foreclose its ability to change policy in response to developing circumstances. Even the issuance of a general license by OFAC would not remove the risk that the Executive Branch changes its authorizations, regulations, or enforcement of existing regulations, in the middle of the Marketing Process. That is a possibility that sophisticated market participants understand and are equipped with which to deal. OFAC has given the Court much needed clarity regarding how to move this process forward. Allowing the Venezuela Parties to forestall execution of judgments by simply pointing to potential changes in policy now that the Court has guidance is a transparent reach for any potential reason for delay.

**B.      Pending Alter-Ego and PDVSA 2020 Bondholder Appeals Will Not Affect Special Master's Preparation for and Launch of the Marketing Process.**

8.     Any insistence by the Venezuela Parties that the Marketing Process should wait for resolution of ancillary appeals processes should be disregarded. The Court has already considered these objections and overruled them. More specifically, the Sale Procedures Order contains processes for (i) determining which, if any, Additional Judgments are to be considered for the Sale Transaction, Sale Procedures Order ¶ 30, (ii) calculating the amount of Attached Judgments, *see id.* ¶ 31, and (iii) engaging with the PDVSA 2020 Bondholders, *see id.* ¶ 39. Notably, all of those processes are contemplated to occur *after* the Launch Date (other than engagement with the

PDVSA 2020 Bondholders, which the Special Master has been authorized to previously). Said differently, the Court already has decided that determining the claim pool to which proceeds of the Sale Transaction will be distributed is not an impediment to launching the Marketing Process. The fact that the Venezuela Parties continue to pursue appeals of targeted issues in the cases of non-Crystallex judgment holders, absent a stay of this case pending resolution of those appeals, is of no consequence to the Court's decision as to whether to continue moving forward with this sale in satisfaction of Crystallex's judgment.

9. The Venezuela Parties also suggest that moving forward now, without resolution of the Alter-Ego and PDVSA 2020 Bondholder appeals, will impede the Court's goal of maximizing the value of the PDVH Shares and that the Special Master cannot possibly prepare marketing documents without knowing how many shares will be sold. This argument, again, is unpersuasive. First, the claim pool speaks to only one side of the calculation relevant to determining how many shares must be sold. The other side—the available proceeds—can only be known after the Launch Date, when the Special Master receives bids. To insinuate that the Special Master and his advisors need to know the outcome of the bidding process before they even start to prepare for that process is entirely inapposite and illogical.

10. The Venezuela Parties further contend that the Special Master cannot meaningfully consult with PDVSA regarding minority shareholder rights without knowing the amount of the Additional Judgment claim pool. As before, the Sale Procedures Order already contemplates this consultation process occurring *after* the Preparation Launch Date, and rightfully so. *See id.* ¶ 4. The Special Master and his Advisors are fully capable of conducting diligence and preparing marketing materials regarding the financial performance, operations, forecasts, organizational structure, and management of CITGO, without waiting for the Court to decide (after the Launch

6

Date) which claims will be satisfied by the Sale Transaction. Assuming the Venezuela Parties cooperate in good faith, I see no reason why my Advisors and I cannot provide guidance in the CIM to Potential Bidders that lays out available minority shareholder and governance rights at various levels of ownership with input from the Venezuela Parties as contemplated by the Sale Procedures Order, without first knowing the clearing price for the Sale Transaction and the ultimate value that those Potential Bidders assign to the PDVH Shares. Moreover, Evercore has advised me that it believes Potential Bidders will be fully capable of valuing the PDVH Shares and the CITGO operations agnostic to capital structure, including whether claims held by the PDVSA 2020 Bondholders or other judgment creditors will need to be satisfied by the Sale Transaction proceeds.

C. **Engagement with Potential Bidders was Rendered Unnecessary by OFAC Guidance and Would Have Been Inappropriate in Light of OFAC Discussions.**

11. The Venezuela Parties attempt to undercut my recommendation to proceed with the Marketing Process on the basis that my Advisors and I did not directly engage with Potential Bidders during the Six-Month Window. To be clear, the Special Master was *authorized*, not directed, to engage with Potential Bidders to solicit feedback on their willingness to participate in the Marketing Process given OFAC's then-published position. *See id.* ¶ 4. After engaging with the U.S. Government, including at the January 12, 2023 meeting and in follow-up discussions, I decided, with the advice of my Advisors, that conversations with Potential Bidders were unnecessary given the initial informal guidance from the U.S. Government and the positive developments from OFAC. Moreover, the U.S. Government requested that I keep our discussions confidential prior to issuance of the Supplemental Report, so any interaction with Potential Bidders would have been of limited use as my Advisors and I would have been restricted in our ability to engage in constructive dialogue. As described above, the guidance that the U.S. Government

7

ultimately delivered in the April 7 DOJ Letter and the subsequent OFAC FAQs was as clear an indication as potential Marketing Process participants could have possibly hoped for. Therefore, I saw no benefit in engaging with Potential Bidders in this regard.[2]

## Conclusion

12. For the reasons set forth above, I respectfully request that the Court set (i) the Preparation Launch Date as soon as practicable after the June 26 hearing, and (ii) the Launch Date on September 26, 2023 (*i.e.*, approximately three months after the Preparation Launch Date) or the date on which I, in my sole discretion, believe my Advisors and I are sufficiently prepared to launch the Marketing Process.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Ray C. Schrock, P.C. (Admitted *pro hac vice*)
Alexander W. Welch (Admitted *pro hac vice*)
Chase A. Bentley (Admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray.Schrock@weil.com
Alexander.Welch@weil.com
Chase.Bentley@weil.com


Dated: June 5, 2023
10853359

/s/ Myron T. Steele
Myron T. Steele (#00002)
Matthew F. Davis (#4696)
Bindu A. Palapura (#5370)
Abraham Schneider (#6696)
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
msteele@potteranderson.com
mdavis@potteranderson.com
bpalapura@potteranderson.com
aschneider@potteranderson.com

*Counsel for Special Master Robert B. Pincus*

---

[2] Notably, nowhere in the Fourth Supplemental Declaration of Randall J. Weisenburger does it say that his opinion is based on anything other than his own experience.

8