# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACL1 INVESTMENTS LTD., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Misc. No. 21-46-LPS |
| CRYSTALLEX INTERNATIONAL CORP.,<br><br>    Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Misc. No. 17-151-LPS |

**ANSWERING BRIEF OF ACL1 INVESTMENTS LTD., ACL2 INVESTMENTS LTD., AND LDO (CAYMAN) XVIII LTD. PURSUANT TO MAY 10 SCHEDULING ORDER**

*Of counsel*:

Joshua S. Bolian (*pro hac vice*)
Jared A. Hagler (*pro hac vice*)
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee 37203
(615) 320-3700
jbolian@rjfirm.com
jhagler@rjfirm.com

ASHBY & GEDDES
Marie M. Degnan (#5602)
Randall J. Teti (#6334)
500 Delaware Ave., 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
mdegnan@ashbygeddes.com

*Attorneys for ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd.*

Dated: June 7, 2023

{01913475;v1 }

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

NATURE AND STAGE OF PROCEEDINGS .................................................................................... 1

SUMMARY OF ARGUMENT ............................................................................................................ 2

ARGUMENT ........................................................................................................................................ 3

I.  ACL'S JUDGMENT SHOULD BE REGARDED AS AN "ADDITIONAL JUDGMENT" NOTWITHSTANDING THE THIRD CIRCUIT APPEAL AND TEMPORARY STAY ............................................................................................................. 3

II. CREDITORS WITHOUT VALID ORDERS OF ATTACHMENT SHOULD NOT HAVE THEIR JUDGMENTS REGARDED AS "ADDITIONAL JUDGMENTS" .......... 3

III. PRIORITY SHOULD BE DETERMINED BY THE ORDER IN WHICH CREDITORS FILED THEIR MOTIONS FOR WRITS OF ATTACHMENT ................. 4

IV. RDK'S ATTACHMENT IS FACIALLY INVALID AND SHOULD BE NEITHER REGARDED AS AN "ADDITIONAL JUDGMENT" NOR GIVEN PRIORITY ........................................................................................................................ 6

CONCLUSION ..................................................................................................................................... 8

# **TABLE OF AUTHORITIES**

**Cases**

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
　333 F. Supp. 3d 380 (D. Del. 2018) ............................................................................................ 7

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
　2022 WL 611563 (D. Del. Mar. 2, 2022) .................................................................................... 5

*Stockley v. Horsey*,
　9 Del. (4 Houst.) 603 (Del. 1874) ............................................................................................... 4

*Walters v. Indus. & Com. Bank of China, Ltd.*,
　651 F.3d 280 (2d Cir. 2011) ........................................................................................................ 7

**Statutes**

28 U.S.C. § 1602 ............................................................................................................................. 7

28 U.S.C. § 1610(c) ........................................................................................................................ 6

**Regulations**

31 C.F.R. § 591.202(a) ................................................................................................................... 7

31 C.F.R. § 591.407 ....................................................................................................................... 7

**Other Authorities**

11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2787, Westlaw (database
　updated Apr. 2023) ...................................................................................................................... 6

## **NATURE AND STAGE OF PROCEEDINGS**

On May 10, 2023, the Court entered an order in these related actions inviting the parties' views on three issues. (Misc. No. 17-151 D.I. 559) Pursuant to that order, on May 24, 2023, the plaintiffs in Misc. No. 21-46 (ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd.; together, "ACL") filed a letter endorsing the positions advanced by Northrop Grumman Ship Systems, Inc., now known as Huntington Ingalls Inc. (Misc. No. 21-46 D.I. 72) To summarize, the three issues, and ACL's positions on each, are as follows:

1. Which, if any, judgments should be regarded as "Additional Judgments" under the Sale Procedures Order entered in the *Crystallex* Action? — *The Court should regard as "Additional Judgments" valid judgments held by creditors, such as ACL, that have been granted final or conditional writs of attachment against PDVSA's shares of PDVH.*

2. Should the Court issue full, unconditional orders of attachment (including by converting conditional grants) to any creditors? If yes, should the Court direct service of any such orders of attachment? — *Upon termination of the Third Circuit's stay, the Court should issue unconditional orders of attachment to all creditors with "Additional Judgments." The Court should direct service in order of the priority of judgments.*

3. How should the Court determine the priority of any judgments that are made Additional Judgments? — *The Court should determine priority in accordance with the order in which creditors filed their respective motions for writs of attachment.*

ACL's letter reserved ACL's rights to submit an answering brief, a reply brief, or both.

ACL now respectfully submits this answering brief to address certain arguments in the briefs filed on May 24 by the Venezuela parties (Misc. No. 17-151 D.I. 571, "Venezuela Br."), the ConocoPhillips parties (Misc. No. 17-151 D.I. 574, "ConocoPhillips Br."), Rusoro Mining Limited (Misc. No. 21-481 D.I. 60, "Rusoro Br."), Gold Reserve Inc. (Misc. No. 17-151 D.I. 572, "Gold Reserve Br."), Siemens Energy, Inc. (Misc. No. 17-151 D.I. 569, "SEI Br."), the Tidewater parties (Misc. No. 19-79 D.I. 35, "Tidewater Br."), Banco San Juan Internacional (Misc. No. 17-151 D.I. 575, "BSJI Br."), Valores Mundiales, S.L. and Consorcio Andino, S.L. (Misc. No. 17-151 D.I. 576, "Valores Br."), and Refineria Di Korsou N.V. (Misc. No. 17-151 D.I. 564, "RDK Br.").

{01913475;v1 }

## SUMMARY OF ARGUMENT

1. Neither the pendency of appeals before the U.S. Court of Appeals for the Third Circuit nor that court's temporary stay of ACL's case and related cases in this Court should affect this Court's determination of which judgments to regard as "Additional Judgments," as explained by OI European Group B.V. ("OIEG") in its answering brief filed contemporaneously herewith.

2. Judgments in favor of creditors without any order of attachment from this Court (conditional or otherwise) should not be regarded as "Additional Judgments." There may be valid arguments against execution based on those judgments, as illustrated in the cases of some creditors seeking to have their judgments added. Moreover, allowing creditors without orders of attachment from this Court to have their judgments regarded as "Additional Judgments" could make the sale process unmanageable.

3. Priority should be determined by the order in which creditors filed their motions for writs of attachment. This approach to priority is consistent with two principles on which the parties broadly agree, namely, that priority should not be established by a "race to the courthouse" and that the order of priority should honor Delaware's policy of first in time, first in right. Other proposed approaches to priority are less consistent with these principles. In particular, determining priority by the dates on which creditors received their conditional writs of attachment affords undue influence to the presence of OFAC's sanctions.

4. The writ of attachment issued to Refineria Di Korsou N.V. ("RDK") in the Superior Court of Delaware is facially invalid. Therefore, the RDK judgment should be neither regarded as an "Additional Judgment" nor given priority.

## ARGUMENT

**I.   ACL'S JUDGMENT SHOULD BE REGARDED AS AN "ADDITIONAL JUDGMENT" NOTWITHSTANDING THE THIRD CIRCUIT APPEAL AND TEMPORARY STAY**

ACL's case and five others have been temporarily stayed by the U.S. Court of Appeals for the Third Circuit. (Memorandum Order, Misc. No. 17-151 D.I. 559, ¶ 2) Due to that stay and the related appeals, certain parties argue that the judgments subject to the appeal should not be regarded as "Additional Judgments." *E.g.*, Venezuela Br. 14-15; SEI Br. 8. That argument is not persuasive for the reasons given by OIEG in its answering brief filed contemporaneously herewith. ACL adopts and endorses the argument of OIEG with respect to the bearing of the pending appeals and the temporary stay on which judgments should be regarded as "Additional Judgments."

**II.   CREDITORS WITHOUT VALID ORDERS OF ATTACHMENT SHOULD NOT HAVE THEIR JUDGMENTS REGARDED AS "ADDITIONAL JUDGMENTS"**

Certain creditors without any order of attachment from this Court (conditional or otherwise) have requested that their judgments be regarded as "Additional Judgments." *E.g.*, BSJI Br. 2. Granting those requests would be inadvisable for at least two reasons. *First*, there may be valid arguments against execution based on those judgments. For example, one creditor has no U.S. judgment; it is seeking recognition of English judgments. BSJI Br. 1. Another creditor appears not to have satisfied the procedural requirements for execution. *Infra* pp. 6-8. *Second*, were the Court to grant the pending requests from creditors without valid orders of attachment, there would be little reason not to grant other, similar requests in the future. And granting similar requests could make the sale process unmanageable, as PDVSA and the Republic have numerous judgment creditors that are not yet before this Court. *E.g.*, *Pharo Gaia Fund, Ltd. v. Bolivarian Republic of Venezuela*, No. 19-cv-3123 (S.D.N.Y.) (judgment entered Oct. 16, 2020); *Chickpen, S.A. v. Bolivarian Republic of Venezuela*, No. 21-cv-597 (S.D.N.Y.) (judgment entered June 13, 2022).

### III. PRIORITY SHOULD BE DETERMINED BY THE ORDER IN WHICH CREDITORS FILED THEIR MOTIONS FOR WRITS OF ATTACHMENT

With respect to priority, the parties broadly agree on two principles. The first principle is that priority need not and should not be established by a "race to the courthouse." *E.g.*, Rusoro Br. 7 ("[P]ermitting each remaining judgment creditor simply to serve its writ . . . will likely set off a frenzied race to the U.S. Marshal's office."). Rather, the Court should issue orders of attachment in a way that establishes an orderly approach to priority. The second principle is that the orderly approach should honor Delaware's policy of first in time, first in right. *E.g.*, ConocoPhillips Br. 9 ("The Court's Equitable Discretion Should be Exercised to Vindicate Delaware's Statutory First-in-Time Policy.").

These two principles favor ordering attachment by the dates on which creditors filed their respective motions for writs of attachment. Consistent with the first principle, prioritizing judgments in the order that motions were filed would give no effect to the speed of issuance and service. Consistent with the second principle, prioritizing judgments in this way would reward creditors for their diligence. Creditors demonstrated their "diligence as against other creditors" (*see Stockley v. Horsey*, 9 Del. (4 Houst.) 603, 608 (Del. 1874)) by filing their motions earlier. Furthermore, prioritizing judgments in this way would approximate the priority that would have obtained under ordinary circumstances. Comparable motions typically require comparable time to adjudicate, so that the order of issuance and service typically would follow from the order of the motions.

It would be less faithful to Delaware's first-in-time policy to determine priority by the dates on which creditors received their conditional writs of attachment. Supporters of that approach recognize that priority should follow "the order [writs] would have been issued but for the OFAC sanctions." ConocoPhillips Br. 10; *accord* SEI Br. 13 ("should determine priority in a manner that best approximates what would have happened but for the [sanctions]"); Rusoro Br. 8 ("but for the

OFAC sanctions, each of the creditors . . . would likely have been issued an unconditional writ"). However, the order of the conditional writs was affected by the OFAC sanctions. The Court "declin[ed] to" reach its alter-ego holding earlier than it did "because it ha[d] concluded that it should first" definitively resolve the sanctions issue. *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 2022 WL 611563, at *11 n.20 (D. Del. Mar. 2, 2022). Therefore, it appears likely that, but for the OFAC sanctions, the order of the conditional writs of attachment would have been different. In particular, but for the OFAC sanctions, creditors that had sought an alter-ego finding before the Court rendered its opinion of March 2, 2022 (i.e., OIEG, Huntington Ingalls, ACL, and Rusoro) likely would have received conditional writs of attachment earlier than they did.

Three other approaches to priority were advocated by one creditor each. None is more consistent with the two principles explained above (p. 4) than the order-of-motions approach is.

The first proposed approach is for all creditors that received conditional writs of attachment before May 4, 2023, to "be placed in a position of equal priority." Gold Reserve Br. 5. This approach strays from Delaware's first-in-time policy. It would treat as equal creditors that sought attachments more than three years apart, with later creditors benefitting from decisions in favor of earlier creditors. Moreover, it would create a discontinuity—creditors that received writs just before May 4 would do far, far better than creditors that received writs just after May 4—due only to when OFAC granted a license to the Clerk of this Court. According such significance to the timing of OFAC's license is justified neither by policy nor by equity.

The second proposed approach is to order priority "according to the date [each] creditor registered its judgment with the Court." Tidewater Br. 3. Registration is flawed as a measure of a creditor's diligence. "Registration is a 'ministerial act' in terms of the actual mechanical process

of registering." 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2787, Westlaw (database updated Apr. 2023) (footnote omitted).

The third proposed approach is for "judgments directly against PDVSA [to] be prioritized over judgments against Venezuela which rely on the alter ego theory." BSJI Br. 2. Among other problems, this approach would result in Crystallex, which relies on the alter ego theory, losing its top priority.

**IV.  RDK'S ATTACHMENT IS FACIALLY INVALID AND SHOULD BE NEITHER REGARDED AS AN "ADDITIONAL JUDGMENT" NOR GIVEN PRIORITY**

RDK argues that its judgment should be regarded as an "Additional Judgment" and that priority should be determined by Delaware law. RDK Br. 2. RDK's writ of attachment was issued pursuant to RDK's Praecipe filed in the Superior Court of Delaware on May 4, 2023, and served upon PDVH by the Sheriff of New Castle County on May 10, 2023. RDK Br. 5-6. However, RDK's attachment is facially invalid for at least two reasons. First, it was issued without judicial authorization, which is required by the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-1611. Second, it appears to contravene the sanctions regime of OFAC. Because RDK lacks a valid attachment, RDK's judgment should be neither regarded as an "Additional Judgment" nor given priority.

A writ of attachment cannot be issued absent judicial authorization if the FSIA would otherwise prohibit it. Under the FSIA, property of a sovereign instrumentality is immune from attachment unless an exception in 28 U.S.C. § 1610(a) or (b) is met. Attachment under the exceptions of section 1610 is conditioned on "the court [] order[ing] such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e)." 28 U.S.C. § 1610(c).

"[Section] 1610(c) not only ensures that no execution upon sovereign property can take place without notice to the sovereign, but it also *requires a prior judicial determination that the execution is warranted* under one of the § 1610(a) or (b) exceptions and with respect to specifically identified property." *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 291 (2d Cir. 2011) (emphasis added). These FSIA requirements apply in state courts as in federal courts. 28 U.S.C. § 1602. And, as this Court has acknowledged, these steps are required to attach PDVSA assets. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 390 n.7 (D. Del. 2018).

RDK's writ appears to have been issued by the Superior Court of Delaware without either of these two required steps having been accomplished. There is no record of a court's determination that the FSIA exceptions are applicable and that an attachment is appropriate.

Additionally, the OFAC sanctions regime appears to invalidate RDK's attachment, even if it was validly issued. The OFAC regulations block transfers of property of PDVSA and PDVH, including through garnishment and execution, "unless authorized pursuant to a specific license issued by OFAC." 31 C.F.R. § 591.407. OFAC has issued a specific license to the Clerk of this Court, but (to ACL's knowledge) OFAC has not issued such a license to the Prothonotary of the Superior Court or to RDK. The OFAC regulations therefore appear to invalidate any attachment effected by service of RDK's writ. *See* 31 C.F.R. § 591.202(a) ("Any transfer . . . that is in violation of any provision of this part . . . is null and void."). PDVH has brought this issue to the attention of RDK's counsel through a letter filed in the Superior Court case (and attached hereto as Exhibit A) requesting that RDK withdraw its writ. Because RDK has no valid attachment, RDK cannot be given any priority for payment from the sale of PDVH shares.

RDK presumably argues for priority according to Delaware's first-in-time principle because RDK presumes that it has an effective attachment, but no such attachment exists, so RDK does not have priority over other creditors.

## CONCLUSION

For the foregoing reasons, (a) ACL's judgment should be regarded as an "Additional Judgment" under the Sale Procedures Order in the *Crystallex* action; (b) upon termination of the Third Circuit's stay, the Court should issue unconditional orders of attachment to all creditors with "Additional Judgments" and direct service in order of the priority of judgments; and (c) priority should be determined in accordance with the order in which creditors filed their respective motions for writs of attachment.

Dated: June 7, 2023                                                Respectfully submitted.

*Of counsel*:                                                             ASHBY & GEDDES

Joshua S. Bolian (*pro hac vice*)                     /s/ Marie M. Degnan
Jared A. Hagler (*pro hac vice*)                     _____
Riley & Jacobson, PLC                                    Marie M. Degnan (#5602)
1906 West End Avenue                                   Randall J. Teti (#6334)
Nashville, Tennessee 37203                          500 Delaware Ave., 8th Floor
(615) 320-3700                                                  P.O. Box 1150
jbolian@rjfirm.com                                          Wilmington, DE  19899
jhagler@rjfirm.com                                          (302) 654-1888
                                                                          mdegnan@ashbygeddes.com

                                                                          *Attorneys for ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd.*