IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>Defendant. | Case No. 17-mc-151 (LPS) |
| OI EUROPEAN GROUP B.V.,<br><br>Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>Defendant. | Case No. 19-mc-290 (LPS) |

**OI EUROPEAN GROUP B.V.'S RESPONSE REGARDING ADDITIONAL
JUDGMENTS AND SALE PROCEDURES ORDER**

Dated: June 7, 2023

MORGAN, LEWIS & BOCKIUS LLP
Jody C. Barillare, Bar No. 5107
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: 302-574-3000
Facsimile: 302-574-3001
jody.barillare@morganlewis.com

- and -

Jonathan M. Albano
Christopher L. Carter
One Federal Street
Boston MA 02110

SEQUOR LAW, P.A.
Edward H. Davis, Jr.
Fernando J. Menendez
1111 Brickell Avenue, Suite 1250

Telephone: 617-341-7700  
Facsimile: 617-341-7701  
jonathan.albano@morganlewis.com  
christopher.carter@morganlewis.com  

Miami, FL 33131  
Telephone: 305-372-8282  
Facsimile: 305-372-8202  
edavis@sequorlaw.com  
fmenendez@sequorlaw.com  

*Attorneys for Plaintiff, OI European Group B.V.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i
TABLE OF AUTHORITIES ......................................................................................................... ii
PRELIMINARY STATEMENT .................................................................................................... 1
ARGUMENT .................................................................................................................................. 2

    I.    OIEG's judgment should be regarded as an "Additional Judgment" under the Sale Procedures Order entered in the *Crystallex* action and the Court should approve unconditional writs of attachment following the lifting of the Temporary Stay. ............................................. 2

    II.    Following the lifting of the Temporary Stay, the Court should implement a procedure (by Court order) to establish the priority of any judgments that are made Additional Judgments based on (a) the timing of a judgment creditor's motion for attachment or, alternatively, (b) the date the Court approved each conditional (or unconditional) writ of attachment. ..................... 6

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
   333 F. Supp. 3d 380 (D. Del. 2018)......................................................................................3

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
   932 F.3d 126 (3d Cir. 2019)...................................................................................................3

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
   2021 WL 129803 (D. Del. Jan. 14, 2021)..............................................................................4

*McAllister v. Kallop*,
   1995 WL 462210 (Del. Ch. July 28, 1995)...........................................................................6

*Newell v. Morgan*,
   2 Del. 225 (Del. 1837) ...........................................................................................................6

*OI European Group B.V. v. Bolivarian Republic of Venezuela*,
   2022 WL 611563 (D. Del. Mar. 2, 2022) .............................................................................9

*Stockley v. Horsey*,
   9 Del. 603 (Del. 1874) ...........................................................................................................7

*U.S. v. Branch Coal Corp.*,
   390 F.2d 7 (3d Cir. 1968) ......................................................................................................6

**Federal Statutes**

28 U.S.C. § 1610(c) .....................................................................................................................4

**State Statutes**

6 *Del. C.* § 8-112(e) ....................................................................................................................4

8 *Del. C.* § 168 ............................................................................................................................4

8 *Del. C.* § 324(c)........................................................................................................................4

Plaintiff, judgment creditor and conditional writ holder OI European Group B.V. ("OIEG"), submits this response in connection with the Memorandum Order[1] (the "May 10 Scheduling Order") inviting briefing regarding the designation of "Additional Judgments" and related service and priority issues in connection with the Sale Procedures Order.

## PRELIMINARY STATEMENT

As OIEG asserted in its opening brief, Petróleos de Venezuela S.A.'s ("PDVSA") shares of PDV Holding, Inc. (the "PDVH Shares") are soon to be part of a marketing process and sold to the highest and best bidder – once that sale has occurred, the Bolivarian Republic of Venezuela ("Venezuela") will likely have minimal remaining assets in the United States. Thus, ensuring that the current sale process goes forward as originally contemplated – *i.e.*, to satisfy not only Crystallex's judgment – is of utmost importance to avoid wasted efforts by this Court and the judgment creditors, as well as to prevent the need for multiple sale processes.

As is clear from the numerous opening briefs filed in response to the Court's May 10 Scheduling Order, a number of judgment creditors are vying for the opportunity to be included in a sale process that expressly contemplated inclusion of "Additional Judgments." For the reasons set forth below and in the OIEG Opening Brief, this Court should include "Additional Judgments" (including OIEG and other alter ego conditional writs of attachment subject to appeal), and should implement a procedure to ensure the inclusion of such Additional Judgments (as well as to establish orderly service, priority and perfection procedures) to enable the sale process to move forward consistent with public policy, judicial administration and the express terms of the OFAC License and Sale Procedures Order itself.

---

[1] Capitalized terms used herein without definition shall have the meaning ascribed to them in OIEG's opening brief. *See OI European Group, B.V. v. Bolivarian Republic of Venezuela*, Case No. 19-mc-290 ("OIEG") D.I. 154 ("OIEG Opening Brief").

1

Starting the sale process *before* the Temporary Stay[2] is lifted (and/or otherwise excluding the alter ego conditional writs from the process, as some have suggested) would be contrary to OFAC policy and this Court's prior orders. Missing from other parties' submissions to this Court is the acknowledgment that the recent OFAC License (which permits issuance and service of writs of attachment for Additional Judgment Creditors) was expressly granted as a result of "the Order issued by the Court on March 23, 2023 [*in favor of OIEG*, and other alter ego creditors], authorizing the issuance and service of writs of attachment *fieri facias* [against the PDVH Shares]." *OIEG*, D.I. 147 at p. 6. This Court's extensive findings of fact and conclusions of law in favor of OIEG have ensured that OIEG (and others) are finally able to be in position to *potentially* recover for damages caused over a decade ago – excluding OIEG at this point, after years of litigation and judicial attention, would ensure nothing but continued litigation and wasted resources.

## ARGUMENT

**I.   OIEG's judgment should be regarded as an "Additional Judgment" under the Sale Procedures Order entered in the *Crystallex* action and the Court should approve unconditional writs of attachment following the lifting of the Temporary Stay.**

The Sale Procedures Order provides that the determination of Additional Judgments is a matter *left to the discretion of the Court*, and there is nothing in the Sale Procedures Order that prohibits the inclusion of judgments that are currently subject to *conditional* writs of attachment (or even subject to appeal) – especially in light of the recent OFAC License. *See* Sale Procedures Order at ¶ 30 ("the Court will decide in accordance with applicable law which, if any, *additional judgments* . . . are to be considered by the Special Master for purposes of the Sale Transaction . . . .") (emphasis added).

---

[2] The alter ego appeals, including the appeals of the conditional writ of attachment, have been fully briefed and oral argument took place on June 1 with the Third Circuit Court of Appeals.

The Venezuela Parties (as defined in the Sale Procedures Order) argue that "only the judgments of creditors with valid [unconditional] attachments" of PDVSA shares may be included as additional judgments under the Sale Procedures Order, and that OFAC has only granted the license to proceed with respect to such additional judgment creditors. *See Crystallex*, D.I. 571 at p. 5, 13. The Venezuela Parties ignore the pertinent facts – the Sale Procedures Order does not require that Additional Judgments be limited to "attached" judgments or "unconditional" attachments, and, nonetheless, it is now within this Court's discretion to not only determine which judgments should be "Additional Judgments," but also to determine which judgments are to benefit from the OFAC License's authorization of the issuance and service of those writs of attachment as unconditional writs. The OFAC License expressly authorized the Clerk of the Court and any Additional Judgment Creditor to "engage in transactions and activities ordinarily incident and necessary to the issuance and service of a writ of attachment *fieri facias* for any party that has been designated an 'Additional Judgment Creditor'" under the Sale Procedures Order. D.I. 147 at p. 8. This Court has the power to designate conditional writ holders as Additional Judgment Creditors, and, following the lifting of the Temporary Stay should do so while also implementing an orderly process that includes service of OIEG's writ of attachment (and others) on the PDVH Shares. *See Crystallex III*; OFAC License.

The Venezuela Parties' separate contention that attachment is not possible because the physical PDVH Shares cannot be seized is a red herring – this issue has been previously addressed and dealt with by this Court, and the Venezuela Parties should be collaterally and judicially estopped from raising this argument. As this Court previously explained, "Delaware law permits a judgment creditor to obtain a writ of attachment," and "the types of property a judgment creditor may attach include a debtor's shares in a Delaware corporation." *Crystallex I*, 333 F. Supp. 3d at

3

387-88. As this Court determined in 2021, the PDVH Shares "were attached; that is, they were (and remain) restricted from alienation by operation of the Court's order." *Crystallex IV*, 2021 WL 129803, at *6.³

>   Here, the Court has already entered an order, which is not subject to any appeal, providing:

>> If the location of the PDVH Shares cannot be located with reasonable precision or if the Special Master reasonably determines that the custodian of the PDVH Shares is unlikely to cooperate in connection with an order compelling the person or entity to transfer the PDVH Shares in connection with any Sale Transaction, the Special Master shall file a recommendation with the Court in advance of the Sale Hearing regarding the appropriate steps to be taken to ensure that the Successful Bidder is able to actually purchase the applicable PDVH Shares in connection with the applicable Sale Transaction. The Special Master's recommendation may include, if appropriate, an order compelling PDVH to issue new certificates or uncertificated shares to the applicable Successful Bidder and cancel the registration of the shares attached to the books of PDVH.

Sale Procedures Order ¶ 49. The Court is thus well within its discretion to approve a process by which service and perfection (and priority) is established as of a date certain in accordance with an orderly procedure. Additionally, Delaware law provides this Court with numerous options to compel the surrender of the PDVH Shares for safekeeping and to assist in service and priority determinations. *See* 8 *Del. C.* § 324(c); 8 *Del. C.* § 168; 6 *Del. C.* § 8-112(e) ("A creditor whose debtor is the owner of a certificated security [or] uncertificated security . . . is entitled to aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the certificated security,

---

³ Just as in *Crystallex*, the Venezuela Parties are collaterally estopped from asserting that the PDVH Shares cannot be (once again) attached: "the validity of the writ of attachment . . . was previously adjudicated, was actually litigated, and was necessarily decided in the court of this Court deciding to grant Crystallex's motion for a writ of attachment, issue a writ, and have it served." *Id*. at *9. So too here: "[OIEG's] renewed motion (Misc. No. 19-290 D.I. 48) for an order authorizing the issuance of a writ of attachment *fieri facias* [on the PDVH Shares], pursuant to 28 U.S.C. § 1610(c), is conditionally GRANTED." D.I. 132. This Court has already determined that the PDVH Shares have been attached and levied upon in Delaware, and it would be inequitable to now hold otherwise. *See also Red Tree Investments, LLC v. Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A.*, Case No. 22-mc-68, D.I. 34 at 3-5.

uncertificated security, or security entitlement or in satisfying the claim by means allowed at law or in equity in regard to property that cannot readily be reached by other legal process.").

The assertion by Crystallex and Siemens Energy, Inc. ("SEI") that in no event should the sale be delayed to accommodate the Temporary Stay and the judgment creditors affected by it, is, unsurprisingly, self-serving and ignores the reality of the situation – the Sale Procedures Order (of which Crystallex was a primary contributor) expressly contemplates the addition of other judgments, and such an acknowledgment cannot be ignored now simply because it *could* result in a delay of the sale process. The Third Circuit's Temporary Stay is just that – *temporary* – and all indications are that the Third Circuit will rule on the merits expeditiously (or at least lift the stay in short order), thereby rendering Crystallex's delay concerns as purely speculative at this point. This Court is well within its discretion to set the "Additional Judgment Deadline" for a time that takes into account the Temporary Stay, and is similarly within its authority to establish a date by which it will implement orderly procedures to establish priority and perfection steps for other judgment creditors to be considered in the sale process.[4] Furthermore, for other creditors to assert that OIEG (and the other similarly situated appellee creditors) should not benefit from the OFAC License is contrary to OFAC's express acknowledgment that the license was granted as a result of this Court's March 23, 2023 opinion granting conditional writs of attachment to OIEG and the other appellee creditors.

---

[4] There is no restriction on this Court's ability to add OIEG's judgment as a "Additional Judgment" even in light of the Temporary Stay – such a designation is only appliable in the *Crystallex* proceeding, and such designation as an "Additional Judgment" does not confer any greater rights than OIEG already has as a result of its conditional writ of attachment. The designation as an Additional Judgment Creditor merely *preserves* the ability of the Special Master to solicit bids that would account for OIEG's (and others') judgment, but unless and until a sale order is entered (and the judgment properly attached), no proceeds would flow to any Additional Judgment. Thus, the Temporary Stay has no impact on this Court's ability to implement a procedure to designate Additional Judgments, and this Court should not entertain suggestions that parties subject to the Temporary Stay should somehow be treated differently (or ignored) at this point in time.

Since 2016, OIEG has diligently sought to enforce its ICSID award in the United States – just as with Crystallex, OIEG is entitled to all the benefits of Delaware law and post-judgment devices that are not prohibited by OFAC sanctions – this includes being named an "Additional Judgment Creditor" and having its judgment regarded as an "Additional Judgment," and the Preparation Launch Date should be set to ensure that OIEG is included in the sale process.

II. **Following the lifting of the Temporary Stay, the Court should implement a procedure (by Court order) to establish the priority of any judgments that are made Additional Judgments based on (a) the timing of a judgment creditor's motion for attachment or, alternatively, (b) the date the Court approved each conditional (or unconditional) writ of attachment.**

The closing of the sale is not set to occur until June 2024 at the earliest – when the sale closes, this Court will be well-positioned to enter an order "for the sale of [PDVH Shares] as necessary to satisfy the outstanding judgment of Crystallex and the judgment of any other judgment creditor added to the sale by the Court . . . ." Sale Procedures Order at p. 2. Until that time, there is no reason to exclude *court-approved* writs of attachment (conditional or otherwise) from the sale procedures and marketing process. In addition, there is no reason to establish procedures that take into account the Temporary Stay and establish priority and perfection procedures (for all eligible parties) to be implemented following the lifting of the Temporary Stay.

As OIEG addressed in its opening brief, *see* OIEG Opening Brief at pp. 10-14, the Court has broad discretion to determine how to conduct the sale and the judgments benefitting from that sale, *see U.S. v. Branch Coal Corp.*, 390 F.2d 7, 10 (3d Cir. 1968) ("There can be no doubt that Congress has authorized the federal judiciary to use sound discretion in setting the terms and conditions for judicial sales."), and long-standing Delaware practice supports court discretion in implementing perfection procedures and acknowledging equitable considerations in doing the same. *See*, *e.g.*, *McAllister v. Kallop*, 1995 WL 462210, at *16 (Del. Ch. July 28, 1995), *aff'd sub nom. Kallop v. McCallister*, 678 A.2d 526 (Del. 1996); *Newell v. Morgan*, 2 Del. 225, 227 (Del.

6

1837) ("[A] judgment creditor who . . . is unable to reach [the judgment debtor's property] . . . gains, by his execution and legal diligence, a legal preference to the assistance of this court . . . when such a judicial preference has been established by the superior legal diligence of any creditor, that preference will be observed in the distribution of assets"); *see also Stockley v. Horsey*, 9 Del. 603, 610 (Del. 1874) ("proceeds [] should be distributed, not as equitable assets, but according to the legal priority which the judgments would have held against the land itself.").

As has been made clear by the numerous opening briefs of interested parties, there are a number of considerations that this Court could take into account in establishing priority and perfection procedures. However, only two appear to have some form of consensus:[5] (1) the timing of a judgment creditor's initial request for an attachment,[6] or, alternatively, (2) the date the Court approved the conditional (or unconditional) writ of attachment for a judgment creditor.[7] As previously articulated, for OIEG, those dates would be established as (1) November 4, 2019 or February 19, 2021,[8] or, alternatively, (2) March 23, 2023.[9]

---

[5] The assertion that creditors holding direct judgments against PDVSA should be given priority over those holding judgments against Venezuela (even those that hold alter ego conditional writs of attachment) ignores legal realities – Crystallex itself holds a judgment against Venezuela, and its alter ego writ of attachment is the reason a sale process is underway at all. Thus, a creditor (such as OIEG) holding a judgment against Venezuela *and an alter ego conditional writ of attachment on the PDVH Shares* should not, by itself, result in subordinate treatment to any other creditor seeking to realize proceeds from the PDVH Shares.

[6] *See Northrop Grumman Ship Systems, Inc. v. The Ministry of Defense of the Republic of Venezuela*, Case No. 20-mc-257, D.I. 95 at p. 8; *Koch Minerals Sarl, et. al. v. Bolivarian Republic of Venezuela*, Case No. 22-mc-156, D.I. 34 at p. 8; *ACL1 Investments Ltd. v. Bolivarian Republic of Venezuela*, Case No. 21-mc-46, D.I. 72.

[7] *See Rusoro Mining Limited v. Bolivarian Republic of Venezuela*, Case No. 21-mc-481, D.I. 60 at pp. 9-10; *Crystallex*, D.I. 574 at pp. 2-3, 9; *Crystallex*, D.I. 569 at p. 13.

[8] OIEG's initial motion was filed on November 4, 2019 – its renewed motion was subsequently filed on February 19, 2021.

[9] OIEG continues to assert that another potential date to be considered is when, but for OFAC sanctions, a judgment creditor was positioned to receive its conditional writ of attachment – such date for OIEG would have been March 2, 2022, which is when this Court approved the first *conditional* writs of attachment but declined to do so for OIEG given its preference to permit interlocutory appeals on the OFAC implications (which interlocutory appeals were subsequently rejected by the Third Circuit).

In implementing these procedures, the Court is well within its discretion to enter an order that sequences the issuance and ultimate service and levy by the U.S. Marshal on the PDVH Shares, once the Temporary Stay is lifted, to recognize (and solidify) one of the priority proposal(s) above and to ensure an orderly process for those with existing writs of attachment.  Just as it would be within this Court's discretion to set the "Additional Judgment Deadline" for a time later this year, it is similarly within its authority to establish a date (even after the Additional Judgment Deadline) by which it will implement orderly procedures to establish priority and perfection steps for other judgment creditors to be considered in the sale process.

Once that time comes, OIEG submits that permitting other later-moving judgment creditors to have equal (or senior) priority to it would be inequitable – by no fault of OIEG, other creditors have obtained conditional writs of attachment before OIEG,[10] while others have been able to reach OIEG's current procedural status (i.e., a conditional writ of attachment based on alter ego principles), even though their attachment motions were filed long after OIEG's original[11] and renewed motions were briefed *and* subjected to a lengthy evidentiary hearing.[12]  The suggestion from other parties (such as SEI) that the Court should only grant unconditional writs of attachment to a few select judgment creditors, particularly those who have direct claims against PDVSA instead of the "alter ego creditors," merely seeks an inequitable result with respect to the priority of the judgments.  *First*, Crystallex itself is a judgment creditor of Venezuela – not PDVSA.

---

[10] *See, e.g., Phillips Petroleum Company Venezuela, et. al. v. Petroleos de Venezuela, S.A., et. al.*, Case No. 19-mc-342 (LPS); *Red Tree Investments, LLC v. Petroleos de Venezuela, et. al.*, Case Nos. 22-mc-68 (LPS), 22-mc-69 (LPS); *ConocoPhillips Gulf of Paria B.V. v. Petroleos de Venezuela, S.A., et. al.*, Case No. 22-264; *Siemens Energy, Inc. v. Petroleos de Venezuela, S.A.*, Case No. 22-mc-347 (LPS).

[11] *See, e.g., Northrop Grumman Ship Systems, Inc. v. The Ministry of Defense of the Republic of Venezuela*, Case No. 20-mc-257 (LPS).

[12] *See, e.g., ACL1 Investments Ltd., et. al. v. Bolivarian Republic of Venezuela*, Case No. 21-mc-46 (LPS); *Rusoro Mining Limited v. Bolivarian Republic of Venezuela*, Case No. 21-mc-481 (LPS); *Koch Minerals Sarl, et. al. v. Bolivarian Republic of Venezuela*, Case No. 22-mc-156 (LPS); *Gold Reserve Inc. v. Bolivarian Republic of Venezuela*, Case No. 22-mc-453 (LPS).

*Second*, but for OFAC guidance implemented post-*Crystallex I* and after OIEG's original motion, *see* D.I. 25, OIEG would have been eligible to obtain its alter ego findings and writ of attachment in (or shortly after) November 2019, *almost three years before SEI sought an order authorizing a writ of attachment before this Court*. Furthermore, even taking into account the OFAC sanctions and this Court's determination that collateral estoppel principles did not apply in 2019, OIEG was, on March 2, 2022, eligible to obtain its requested relief based on its renewed motion filed in February 2021.[13] As the Court noted in 2022, its decision *not* to issue findings of fact and conclusions of law on the alter ego issue was a result of its reluctance to do so in light of existing OFAC sanctions[14] – however, those OFAC sanctions existing in March 2022 *did not* prevent the grant of a conditional writ of attachment, and OIEG should not now be subordinated to any creditor that was able to obtain its conditional writ of attachment on or after March 2, 2022.[15] It would be inequitable to permit certain creditors to obtain priority over OIEG when OIEG had already made a full case of (at minimum) legal parity as of March 2022 – and, but for OFAC sanctions, equitable priority. The Temporary Stay does not change that analysis, especially since the potential realization of sale proceeds is *at least* a year away (whereas the deadline for Additional Judgments to even be considered in the marketing process is currently contemplated to occur in a matter of no more than a couple months from now).

---

[13] Note, as well, that SEI did not receive its conditional writ of attachment until December 12, 2022, just three months before OIEG received its conditional writ.

[14] "The Court is declining to make [alter ego] findings of fact, notwithstanding certain of the judgment creditors' efforts to make a record on which such findings could be based, because it has concluded that it should first issue its legal conclusions about the impact of the [OFAC] sanctions and determine whether to certify an interlocutory appeal of those conclusions." *OI European Group B.V. v. Bolivarian Republic of Venezuela*, 2022 WL 611563, at *9 (D. Del. Mar. 2, 2022).

[15] "From the perspective of judicial administration, it makes sense that ConocoPhillips and the other judgment creditors will all have access to the same form of relief at the same point in their judgment enforcement efforts." *OI European Group B.V.*, 2022 WL 611563, at *9. The "other judgment creditors" with attachment motions pending at that time were OIEG, Huntington and ACL.

However this Court determines to solidify priority positions, this Court should ensure that the process accounts for the Temporary Stay and does not further harm creditors – such as OIEG – that have been delayed by circumstances out of their control as they have diligently sought enforcement remedies.

## CONCLUSION

For the reasons set forth above and in the OIEG Opening Brief, the Court should (1) deem OIEG's judgment to be an "Additional Judgment" under the Sale Procedures Order (and deem OIEG to be an "Additional Judgment Creditor"), and (2) following the lifting of the Temporary Stay, implement procedures to establish the timing of issuance, service, perfection, and priority of existing writs of attachment based on equitable and legal considerations discussed herein.

Dated: June 7, 2023

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Jody C. Barillare*
Jody C. Barillare, Bar No. 5107
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: 302-574-3000
Facsimile: 302-574-3001
jody.barillare@morganlewis.com

- and -

| | |
|---|---|
| Jonathan M. Albano (*pro hac vice*) | **SEQUOR LAW, P.A.** |
| Christopher L. Carter (*pro hac vice*) | Edward H. Davis, Jr. (*pro hac vice*) |
| One Federal Street | Fernando J. Menendez (*pro hac vice*) |
| Boston MA 02110 | 1111 Brickell Avenue, Suite 1250 |
| Telephone: 617-341-7700 | Miami, FL 33131 |
| Facsimile: 617-341-7701 | Telephone: 305-372-8282 |
| jonathan.albano@morganlewis.com | Facsimile: 305-372-8202 |
| christopher.carter@morganlewis.com | edavis@sequorlaw.com |
| | fmenendez@sequorlaw.com |

*Attorneys for Plaintiff, OI European Group B.V.*