## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:17-mc-00151-LPS |
| | ) |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

**ANSWERING BRIEF OF THE VENEZUELA PARTIES REGARDING
THE INCLUSION OF ADDITIONAL JUDGMENTS IN THE SALE PROCESS AND
THE ISSUANCE OF UNCONDITIONAL ORDERS OF ATTACHMENT**

OF COUNSEL:
Nathan P. Eimer
Lisa S. Meyer
Daniel D. Birk
Gregory M. Schweizer
Emily E. Sullivan
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com
DBirk@eimerstahl.com
GSchweizer@eimerstahl.com
ESullivan@eimerstahl.com

Kenneth J. Nachbar (#2067)
Alexandra M. Cumings (#6146)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@morrisnichols.com
ACumings@morrisnichols.com

*Attorneys for PDV Holding, Inc., and
CITGO Petroleum Corporation*

OF COUNSEL:
Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

Samuel Taylor Hirzel, II (#4415)
HEYMAN ENERIO GATTUSO & HIRZEL LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law

*Attorney for Petróleos de Venezuela, S.A.*

| | |
|---|---|
| OF COUNSEL:<br>Donald B. Verrilli, Jr.<br>Elaine J. Goldenberg<br>Ginger D. Anders<br>Brendan B. Gants<br>Jacobus P. van der Ven<br>Munger, Tolles & Olson LLP<br>601 Massachusetts Avenue NW<br>Suite 500 E<br>Washington, D.C. 20001<br>(202) 220-1100<br>Donald.Verrilli@mto.com<br><br>George M. Garvey<br>Munger, Tolles & Olson LLP<br>350 South Grand Avenue, 50th Floor<br>Los Angeles, CA 90071<br>(213) 683-9100<br>George.Garvey@mto.com | A. Thompson Bayliss (#4379)<br>Stephen C. Childs (#6711)<br>ABRAMS & BAYLISS LLP<br>20 Montchanin Road, Suite 200<br>Wilmington, DE 19807<br>(302) 778-1000<br>bayliss@abramsbayliss.com<br>childs@abramsbayliss.com<br><br>*Attorneys for Bolivarian Republic of Venezuela* |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT...............................................................................................................................2

I. Under Delaware Law, This Court May Not At This Time Include Any Other Creditors' Judgments As Additional Judgments In The *Crystallex* Sale Process ...................2

    A. Only The Judgments Of Creditors With Valid Attachments May Be Included In The Sale Process ...........................................................................2

    B. No Other Creditors Can Obtain A Valid Attachment On The PDVH Shares Because The Physical Share Certificate Cannot Be Seized ...............3

II. Under OFAC's Regulations And License Restrictions, This Court May Not At This Time Issue Unconditional Writs Of Attachment To Any Other Creditors.....................9

III. With Respect To The Alter-Ego Creditors, The Third Circuit's Stay Independently Bars This Court At This Time From Issuing Unconditional Writs Of Attachment Or Adding Their Judgments To The Sale Process In *Crystallex* .................10

CONCLUSION.........................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Banco San Juan Int'l Inc. v. Petroleos de Venezuela, S.A.*,
   No. 1:22-cv-01315 [D.I. 31] (D. Del. Apr. 4, 2023)..................................................10

*Boyle v. Zacharie*,
   31 U.S. 635 (1832)........................................................................................................6

*Cory v. Tampax Inc.*,
   No. CIV.A. 3791, 1976 WL 1707 (Del. Ch. Apr. 30, 1976) .......................................8

*Deng v. HK Xu Ding Co.*,
   No. N21J-04630-AML, 2023 WL 3318322 (Del. Super. Ct. May 8, 2023)..................1, 3, 4, 6

*Graham v. Com. Credit Co.*,
   A.2d 863 (Del. Ch. 1963)..............................................................................................8

*Jolls v. Keegan*,
   55 A. 340 (Del. Super. 1901).........................................................................................6

*Knowlton v. Shaw*,
   704 F.3d 1 (1st Cir. 2013).............................................................................................5

*Mastellone v. Argo Oil Corp.*,
   46 82 A.2d 379 (Del. 1951)...........................................................................................8

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*,
   863 F.3d 96 (2d Cir. 2017)............................................................................................8

*Richards v. Jefferson Cnty.*,
   517 U.S. 793 (1996)......................................................................................................5

**STATUTES**

28 U.S.C. § 1609...............................................................................................................10

28 U.S.C. § 1610...............................................................................................................10

28 U.S.C. § 1963.................................................................................................................8

8 Del. C. § 167 ...................................................................................................................8

8 Del. C. § 168 ...............................................................................................................7, 8

8 Del. C. § 324 ........................................................................................................... *passim*

**OTHER AUTHORITIES**

31 C.F.R. § 591.202............................................................................................................5

31 C.F.R. § 591.407............................................................................................................5

Fed. R. Civ. P. 69................................................................................................................2

Pursuant to this Court's May 10, 2023 order, D.I. 559, the Venezuela Parties[1] respectfully submit this answering brief regarding the inclusion of additional judgments in the sale process and the issuance of unconditional orders of attachment.

## PRELIMINARY STATEMENT

For four reasons, the various opening briefs confirm that no other creditor at this time can satisfy the legal requirements to be included as an additional judgment in the sale process or to obtain an unconditional writ of attachment. *First*, Crystallex agrees with the Venezuela Parties that other creditors' judgments cannot be added to the sale process unless they have a *valid* attachment against the PDVH shares, both because 8 Del. C. § 324 requires it and because doing otherwise would jeopardize an orderly sale process. The other creditors ignore this fundamental requirement and merely assume that they will be able to secure a valid attachment. *Second*, ConocoPhillips agrees with the Venezuela Parties that this assumption is wrong because Delaware law requires the seizure of the physical share certificate, as then-Judge (now Justice) LeGrow explained in her thorough opinion in *Deng v. HK Xu Ding Co.*, No. N21J-04630-AML, 2023 WL 3318322 (Del. Super. Ct. May 8, 2023). No creditor other than Red Tree disputes this unambiguous requirement, and Red Tree fails to engage with, much less refute, the analysis in *Deng*. *Third*, only Siemens and Red Tree make passing attempts to argue that the Venezuela Parties are precluded from raising the non-seizure of the physical share certificate, and their arguments do not hold up to scrutiny. Siemens does not engage with the reasons why this Court's 2021 judicial-estoppel ruling in *Crystallex* does not extend to other creditors, and Red Tree's new preclusion arguments are meritless. *Fourth*, no creditor denies that if its judgment cannot be added to the sale process, then it cannot get an attachment under the plain terms of the license issued by OFAC.

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to them in the Court's January 14, 2022 Order, D.I. 234, and the Sale Procedures Order, D.I. 481.

1

# ARGUMENT

I. **Under Delaware Law, This Court May Not At This Time Include Any Other Creditors' Judgments As Additional Judgments In The *Crystallex* Sale Process.**

    A. **Only The Judgments Of Creditors With Valid Attachments May Be Included In The Sale Process.**

As the Venezuela Parties explained, a judgment creditor cannot obtain a court-ordered sale of shares under 8 Del. C. § 324 unless it first obtains a *valid* attachment against the shares. D.I. 571 at 10-12. No creditor disputes this. In fact, Crystallex agrees, observing that "judgment creditors with actual attachments are the only creditors legally entitled to compel the sale of, or receive a distribution of proceeds from the sale of, the shares of PDVH" under "Delaware law." D.I. 573 at 4; *see id.* at 9-15. As Crystallex explains, "Section 324(a) limits the sale to only 'so many of the shares as shall be sufficient to satisfy the debt' giving rise to the attachment and sale," which means that "a judgment creditor must first obtain an attachment of shares in a Delaware corporation before compelling the sale of those shares at public auction." *Id.* at 9-10 (cleaned up). Thus, as Crystallex concludes, "it would be inappropriate to add judgments to the Sale Process—and require a sale of sufficient shares to satisfy those judgments—if those judgment creditors are not legally entitled to a distribution of proceeds from a judicial sale because they have not yet satisfied the threshold requirement of attachment under Delaware law (and therefore Rule 69(a))." *Id.* at 13 (internal citation omitted).

Crystallex further recognizes that this framework is not only legally compelled, but also practically necessary for "an orderly Sale Process." *Id.* As it observes, because the Special Master should only "sell as much stock as is necessary to satisfy the attached judgments," he has emphasized that there "must be a date 'when the writs of attachments would have to occur to be involved in the process'" in order for him "to determine the total sum of 'Attached Judgments' that the sale must satisfy." *Id.* (cleaned up). Moreover, Crystallex correctly anticipates that the

Venezuela Parties will "challenge any requirement that the sale satisfy judgments that are not yet entitled to a judicial sale of the shares of PDVH under Delaware law because they have not attached those shares," *id.* at 14—a requirement that Crystallex agrees would violate Delaware law, *id.* at 9-13. Accordingly, as Crystallex explains, "recogniz[ing] as 'Additional Judgments' judgments that have no present right to compel a judicial sale of the PDVH Shares under Delaware law … could jeopardize or further delay the Sale Process and create uncertainty that may depress bid prices." *Id.* at 15.

No other creditor engages with, much less, disputes this analysis. Instead, they assume that any attachments against the PDVH shares will be effective in light of OFAC's May 1, 2023 license. *See, e.g.*, D.I. 569 at 17. But that assumption is false for the reasons discussed next.

**B.    No Other Creditors Can Obtain A Valid Attachment On The PDVH Shares Because The Physical Share Certificate Cannot Be Seized.**

**1.**    As the Venezuela Parties explained, none of the other creditors can obtain a valid attachment against the PDVH shares because mere service on PDVH does not seize the physical share certificate, as Delaware law requires. D.I. 571 at 12-15. ConocoPhillips agrees, explaining that the recent decision in *Deng* confirms that merely "serv[ing] the writ on" PDVH—as "Crystallex did"—"does not work to create a valid attachment." D.I. 574 at 17. Rather, "[a]fter extensively analyzing the statutory history," then-Judge LeGrow adopted the very interpretation that the Venezuela Parties have consistently urged—namely, "'the statutory language requires that, to attach certificated shares of a corporation and obtain an order to sell the security to satisfy a judgment, the officer making the attachment must actually seize the certificate.'" *Id.* The absence of a physical certificate for the PDVH shares therefore not only precludes the "validity of any newly created attachments," but creates a "very real prospect of Crystallex's attachment being found defective" as well "for lack of physical seizure of the shares." *Id.* at 17-18.

3

No other creditor seriously disagrees. At most, Red Tree breezily asserts that (1) "Delaware law preserves courts' historical powers to attach shares in Delaware corporations via service of a writ (rather than by seizure of shares)," D.I. 566 at 9 n.5, and (2) this Court "may waive … the physical-seizure requirement where 'there is no innocent purchaser to protect,'" *id.* at 10-11. Each of those arguments is foreclosed by *Deng*, the only Delaware decision to have addressed the issue. *See* 2023 WL 3318322, at *5. As *Deng* explained, any historical power to attach shares through service of the writ was eliminated by "the 1998 amendments to Section 324," which require that "the officer making the attachment must actually seize the certificate." *Id.* at *3. Indeed, the debtor in *Deng* "was served with the Writ of Attachment," but that did not stop the court from vacating an order to sell the shares on the ground that "Delaware law requires physical seizure of a stock certificate before certificated shares may be attached and sold." *Id.* at *1. And the court enforced the certificate-seizure requirement even though there was no risk that the shares there had been purchased by an innocent party, as "the certificate for those shares [was] in Chinese police custody." *Id.* Red Tree does not even mention *Deng*, let alone try to grapple with its analysis. Nor does it cite any other Delaware decision supporting its theory.

**2.**  The Venezuela Parties also demonstrated that this Court's prior judicial-estoppel ruling as to Crystallex does not preclude them from raising the non-seizure of the certificate against other creditors, both because there is no irreconcilable inconsistency in positions vis-à-vis additional creditors and because applying judicial estoppel in these circumstances would inequitably confer a windfall on other creditors. D.I. 571 at 15-17. In any event, the estoppel issue is now moot because *ConocoPhillips* has also raised this objection. D.I 574 at 15-18. As ConocoPhillips explains, "[o]ther creditors are not subject to [any] waiver and estoppel disabilities affecting the Venezuela Parties" and can "argue that Crystallex's attachment is defective in order

4

to dislodge Crystallex from its asserted priority position." *Id.* at 17. Indeed, to preclude other creditors from advancing this argument based on PDVSA's statements would be a clear due-process violation. *See Richards v. Jefferson Cnty.*, 517 U.S. 793, 797-98 (1996) ("due process" requires that "a judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings") (brackets omitted); *see also, e.g.*, *Knowlton v. Shaw*, 704 F.3d 1, 10 (1st Cir. 2013) (refusing to apply judicial estoppel where "the party asserting the alleged 'position' [previously] and the parties here are not the same").

No other creditor seriously engages with this issue. Only Siemens invokes the Crystallex judicial-estoppel ruling, but it overlooks why that ruling cannot be extended here. *See* D.I. 569 at 17-18. And while Red Tree offers two *new* preclusion arguments, D.I. 566 at 7-9, they lack merit.

*First*, Red Tree contends that PDVSA should be judicially estopped from advancing the certificate-seizure argument for a different reason. According to Red Tree, PDVSA's prior argument that "OFAC sanctions prohibit attaching the PDVH shares" was purportedly premised on the view that the attachment *was valid despite* the non-seizure of the certificate. *Id.* But PDVSA's OFAC objection neither expressly nor implicitly asserted that any such writ of attachment would be *valid*. Rather, as PDVSA explained, OFAC regulations provide that "[u]nless licensed pursuant to this part, *any attachment*" against the PDVH shares "is null and void," *regardless* of its state-law validity. 22-mc-68 D.I. 10 at 13 (quoting 31 C.F.R. § 591.202(e)); *see id.* at 12-13 (explaining that "the regulations bar the unlicensed … 'enforcement of any … judicial process *purporting to* transfer" the shares (quoting 31 C.F.R. § 591.407) (emphasis altered)).

*Second*, moving beyond judicial estoppel, Red Tree claims PDVSA should be precluded from advancing the certificate-seizure argument on the twin grounds of waiver and collateral estoppel. D.I. 566 at 7-8. Analogizing to this Court's ruling that PDVSA was barred from moving

5

to quash Crystallex's writ on the basis of Delaware alter-ego law, Red Tree contends that "[t]he identical issue—Red Tree's entitlement to the writ—was actually litigated in Red Tree's motion for a conditional attachment" and that PDVSA did not notify the Court at that time that it would later "seek to attack the validity of the writ on state law grounds." *Id.* at 6-7; *see* D.I. 234 at 18-23, 28-33. But this objection disregards a critical distinction between the procedural posture here and in the earlier *Crystallex* ruling.

In *Crystallex*, the Delaware alter-ego issue called into question whether the writ of attachment should have been *issued in the first place*—because the shares are not the Republic's property under Delaware law—and this Court held that it had definitively resolved that question when ordering that the writ should be issued and served, even though PDVSA had objected to issuance of the writ only on FSIA immunity grounds, not yet on the merits. D.I. 234 at 20. By contrast, the certificate-seizure issue was not a basis for PDVSA to object to *mere issuance* of the writ of attachment, as it pertains instead to whether the attachment has been validly "laid" pursuant to the writ, thereby allowing an "order of sale [to] issue." 8 Del. C. § 324(a). In *Deng*, for example, then-Judge LeGrow did not hold that the "issu[ance]" and "service" of "the Writ of Attachment" were themselves invalid acts, but rather that "Delaware law requires physical seizure of a stock certificate before certificated shares may be attached and sold." 2023 WL 3318322, at *1. Accordingly, a certificate-seizure objection is raised not "when the Court was evaluating [a] motion to issue and serve the writ of attachment," D.I. 234 at 28, but *after* the writ has been served, *see, e.g.*, *Boyle v. Zacharie*, 31 U.S. 635, 647 (1832) (observing that a debtor can challenge the effectiveness of a writ of attachment after the writ has been laid upon a garnishee and the garnishee pleads that it has no property that can be attached); *Jolls v. Keegan*, 55 A. 340 (Del. Super. 1901) (explaining that the central issue was whether an attachment was properly laid where, after

receiving the writ of attachment, the garnishee pled that he did not possess any property of the debtor). Resolving the certificate-seizure argument therefore was not "necessary to the decision" to grant Red Tree's conditional writ of attachment—which this Court did not even permit the clerk to sign—nor was that "the proper time to have made these arguments." D.I. 234 at 19, 28. Accordingly, neither collateral estoppel nor waiver are applicable here.

3.  With no tenable argument on the merits or under preclusion principles, a few creditors ask this Court to order PDVSA "to request the reissuance of the certificate from PDVH." *E.g.*, D.I 574 at 19. But as the Venezuela Parties have explained, reissuing the certificate would require an additional license from OFAC. D.I. 571 at 15 n.2. No creditor even addresses that issue, much less denies the existing license is insufficient. *First*, the existing license permits only those steps "ordinarily incident and necessary to the issuance and service of a writ of attachment *fieri facias*." D.I. 555 at 8. Again, though, the existence of a certificate has nothing to do with whether a writ of attachment can be *issued and served*, but rather bears on whether the *resulting attachment is itself effective*. *See supra* at 6. At a minimum, the unusual step of reissuing a certificate is not an "ordinar[y]" part of the service process. D.I. 555 at 8. *Second*, the process for reissuing the shares would require the participation of entities that are not covered by the existing license. As ConocoPhillips recognizes, the reissuance process would "requir[e] PDVSA" to "'apply to the Court of Chancery for an order requiring'" "the reissuance of the certificate from PDVH." D.I. 574 at 18-19 (quoting 8 Del. C. § 168(a)). OFAC's existing license, however, does not cover the actions of PDVSA, PDVH, or the Delaware Court of Chancery. Rather, it extends only to "the Clerk of the Court for the United States District Court, District of Delaware (the 'Court'), agents and/or contractors of the Court, and Additional Judgment Creditors." D.I. 555 at 8. Accordingly,

absent an OFAC license, participating in the process to reissue the certificate would require the Venezuela Parties *and* state judicial officers to violate federal law.

In all events, even setting aside OFAC's regulatory regime, any creditor seeking to take advantage of the certificate-reissuance process still would have to post the requisite bond, as the Venezuela Parties have explained. *See* 8 Del. C. § 168(b); D.I. 571 at 15 n.2. Every creditor overlooks this requirement except for Red Tree, which erroneously contends that this Court may excuse the bond requirement "because the only proper owner of the PDVH shares is PDVSA." D.I. 566 at 9 n.6. Red Tree offers no authority for dispensing with the bond requirement on that basis. "[U]nder § 168, the Court is *required* to order a bond in a sum sufficient to indemnify" PDVH "against any claim made against it 'on account of the alleged loss, theft or destruction' of the missing certificates." *Cory v. Tampax Inc.*, No. CIV.A. 3791, 1976 WL 1707, at *5 (Del. Ch. Apr. 30, 1976) (emphasis added). And in the related context of 8 Del. C. § 167, Delaware law is clear that while corporate "[m]anagement may or may not require the posting of a bond … the courts lack the power to dispense with that requirement against the corporation's will." *Mastellone v. Argo Oil Corp.*, 46 82 A.2d 379, 383 (Del. 1951); *accord Cory*, 1976 WL 1707, at *5; *Graham v. Com. Credit Co.*, A.2d 863, 866 (Del. Ch. 1963), *aff'd*, 200 A.2d 828 (Del. 1964). In any event, waiving the bond requirement here would be unwarranted. PDVH should not compelled to cancel the physical certificate without the protection of a bond, given the uncertainty about what the rogue Maduro regime may have purported to do with the shares and the risk of future claims that could be raised by a putative purchaser of those shares in possession of the physical certificate.[2]

---

[2] Given the lack of a physical certificate, the purported writ of attachment that Refineria Di Korsou N.V. ("RDK") recently obtained in Delaware state court to enforce a New York state judgment, D.I. 564 at 7-8, is not a valid basis to add RDK to the sale process. Moreover, there are multiple other flaws with RDK's request to be added. Most fundamentally, this Court's jurisdiction is limited to enforcing *federal* judgments, and 28 U.S.C. § 1963 does not authorize registering *state* judgments. *See Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*, 863 F.3d 96, 122-23

## II. Under OFAC's Regulations And License Restrictions, This Court May Not At This Time Issue Unconditional Writs Of Attachment To Any Other Creditors.

As the Venezuela Parties explained, under the OFAC license, a condition on the clerk's issuance of an unconditional writ of attachment to a creditor is the creditor being included as an "Additional Judgment Creditor" under the SPO. D.I. 571 at 18. No creditor disagrees with that. Rather, the creditors merely assume that this Court can lawfully include them as "Additional Judgment Creditor[s]" at this time. Because that assumption is false, *see supra* Pt. I, it is effectively undisputed that no unconditional writs of attachments can be issued.

All of that is true notwithstanding the assertion by Siemens that this Court can dispense with the service of any additional writs of attachment. D.I. 569 at 18-20. Because the writs of attachment cannot even be *issued* under the existing license, whether the writs can be *served* is immaterial. In any event, Siemens provides no authority for its position that this Court can waive service of the writ, which is a transparent attempt to avoid priority issues. Indeed, to do so would deprive the Venezuela Parties of their right to answer the writs under Delaware law. *See* 8 Del. C. § 324. While the Venezuela Parties take no position at this time on the priority of additional judgments, this Court cannot deprive them of their statutory rights in order to avoid some of the difficulties associated with the novel and complicated priority issues here. *See* D.I. 571 at 20.

---

(2d Cir. 2017). In addition, PDVSA will soon be moving in New York to vacate RDK's underlying default judgment as void, including for ineffective service of process and lack of subject-matter and personal jurisdiction under the FSIA. Finally, PDVSA is also preparing to file a motion to quash RDK's Delaware state-court writ, including because it is based on a void judgment, is itself void due to lack of an applicable OFAC license, and also violates numerous Delaware-law requirements. *See* PDVH's Verified Ans. & Ltr. to Margaret F. England, No. N23J-01330 (Del. Super. Ct. May 30 & 31, 2023).

### III. With Respect To The Alter-Ego Creditors, The Third Circuit's Stay Independently Bars This Court At This Time From Issuing Unconditional Writs Of Attachment Or Adding Their Judgments To The Sale Process In *Crystallex*.

As the Venezuela Parties explained, the alter-ego creditors are not entitled to any further relief at this time for the independent reason that their own attachment cases have been stayed by the Third Circuit. D.I. 571 at 19-20. Both Crystallex and Siemens agree. D.I. 569 at 10-11, 15-16; D.I. 573 at 4-5. As Siemens explains, "[u]ntil the stay is lifted, the Court is prohibited from authorizing the issuance and service of writs of attachment in favor of the Alter Ego Creditors," and in any event, "the Court should not recognize the Alter Ego Creditors' judgments as Additional Judgments" in light of "the uncertainty as to if/when the stay will be lifted and how the appeals will be resolved." D.I. 569 at 16. It would make no sense, Siemens observes, to allow the alter-ego creditors to participate in the sale process when they "may ultimately not be permitted in the sale." *Id.* And it would be even more improper to allow the four creditors who do not have a conditional-attachment order (Contrarian, Tidewater, Valores, and Banco San Juan) to participate.[3]

The alter-ego creditors say nothing to the contrary. They simply assume that the stay will be lifted and they will prevail on appeal. *See, e.g.*, 19-mc-290 D.I. 154 at 6. This Court, however, cannot make judicial decisions based on such rank speculation.

### CONCLUSION

The Venezuela Parties respectfully submit that, at this time, this Court may not lawfully include any additional judgments in the sale process or issue any unconditional writs of attachment to additional creditors.

---

[3] Banco San Juan ("BSJ") does not even have a U.S. judgment. This Court recently granted PDVSA's motion to dismiss BSJ's complaint on venue grounds and transferred that case to the D.C. District Court for adjudication of PDVSA's dispositive defenses. *See* Order, *Banco San Juan Int'l Inc. v. Petroleos de Venezuela, S.A.*, No. 1:22-cv-01315 [D.I. 31] (D. Del. Apr. 4, 2023). Unless and until BSJ obtains a federal-court judgment, it cannot seek any attachment or execution of PDVSA's property. *See* 28 U.S.C. §§ 1609, 1610(c)-(d).

RESPECTFULLY SUBMITTED,

June 7, 2023

| | |
|---|---|
| OF COUNSEL:<br>Nathan P. Eimer<br>Lisa S. Meyer<br>Daniel D. Birk<br>Gregory M. Schweizer<br>Emily E. Sullivan<br>EIMER STAHL LLP<br>224 South Michigan Avenue<br>Suite 1100<br>Chicago, IL 60604<br>(312) 660-7600<br>NEimer@eimerstahl.com<br>LMeyer@eimerstahl.com<br>DBirk@eimerstahl.com<br>GSchweizer@eimerstahl.com<br>ESullivan@eimerstahl.com | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Kenneth J. Nachbar*<br>Kenneth J. Nachbar (#2067)<br>Alexandra M. Cumings (#6146)<br>1201 North Market Street<br>Wilmington, DE 19801<br>(302) 658-9200<br>KNachbar@morrisnichols.com<br>ACumings@morrisnichols.com<br><br>*Attorneys for PDV Holding, Inc., and CITGO Petroleum Corporation* |

| | |
|---|---|
| OF COUNSEL:<br>Joseph D. Pizzurro<br>Kevin A. Meehan<br>Juan O. Perla<br>CURTIS, MALLET-PREVOST,<br>COLT & MOSLE LLP<br>101 Park Avenue<br>New York, NY 10178<br>(212) 696-6000<br>jpizzurro@curtis.com<br>kmeehan@curtis.com<br>jperla@curtis.com | HEYMAN ENERIO GATTUSO & HIRZEL LLP<br><br>*/s/ Samuel Taylor Hirzel, II*<br>Samuel Taylor Hirzel, II (#4415)<br>300 Delaware Avenue, Suite 200<br>Wilmington, DE 19801<br>(302) 472-7300<br>shirzel@hegh.law<br><br>*Attorney for Petróleos de Venezuela, S.A.* |

| | |
|---|---|
| OF COUNSEL:<br>Donald B. Verrilli, Jr.<br>Elaine J. Goldenberg<br>Ginger D. Anders<br>Brendan B. Gants<br>Jacobus P. van der Ven<br>Munger, Tolles & Olson LLP<br>601 Massachusetts Avenue NW<br>Suite 500 E<br>Washington, D.C. 20001<br>(202) 220-1100<br>Donald.Verrilli@mto.com<br><br>George M. Garvey<br>Munger, Tolles & Olson LLP<br>350 South Grand Avenue, 50th Floor<br>Los Angeles, CA 90071<br>(213) 683-9100<br>George.Garvey@mto.com | ABRAMS & BAYLISS LLP<br><br>*/s/ Stephen C. Childs*<br>A. Thompson Bayliss (#4379)<br>Stephen C. Childs (#6711)<br>20 Montchanin Road, Suite 200<br>Wilmington, DE 19807<br>(302) 778-1000<br>bayliss@abramsbayliss.com<br>childs@abramsbayliss.com<br><br>*Attorneys for Bolivarian Republic of Venezuela* |

12