IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>　　　　　　Defendant. | C.A. No. 17-151-LPS |

**CRYSTALLEX INTERNATIONAL CORPORATION'S ANSWERING BRIEF
PURSUANT TO MAY 10, 2023 SCHEDULING ORDER**

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Miguel A. Estrada
Lucas C. Townsend
Adam M. Smith
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Tel: (202) 955-8500
Fax: (202) 467-0539

Dated: June 7, 2023

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Tel:  (302) 651-7700
Fax:  (302) 651-7701

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

ARGUMENT ......................................................................................................................... 3

    I.     Only Judgments For Which There Is An Attachment Of The PDVH Shares Should Be Regarded As "Additional Judgments" Under The Sale Procedures Order ................................................................................................ 3

    II.    Crystallex Takes No Position On Which Creditors May Obtain Attachments, But Any Attachment Proceedings Should Not Delay Crystallex's Sale Process ..................................................................................... 5

    III.   Crystallex's Judgment Is First In Priority, And The Court Should Reissue The Share Certificate To Facilitate An Efficient And Timely Sale Preserving That Priority ............................................................................................ 5

CONCLUSION ...................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agudas Chasidei Chabad of U.S. v. Russian Federation*,
  798 F. Supp. 2d 260 (D.D.C. 2011) ............................................................................................5

*Castro v. ITT Corp.*,
  598 A.2d 674 (Del. Ch. 1991) ................................................................................................6, 7

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  2021 WL 129803 (D. Del. Jan. 14, 2021) ...............................................................................6, 8

*Deng v. HK Xu Ding Co.*,
  2023 WL 3318322 (Del. Super. Ct. May 8, 2023) ....................................................1, 2, 5, 7, 8

*Eash v. Riggins Trucking Inc.*,
  757 F.2d 557 (3d Cir. 1985) (en banc) ......................................................................................10

*Houbigant, Inc. v. Fed. Ins. Co.*,
  374 F.3d 192 (3d Cir. 2004) .......................................................................................................8

*Huntington Nat'l Bank v. Entecap Corp.*,
  2006 WL 3519346 (S.D. Miss. Dec. 6, 2006) ............................................................................7

*Joseph E. Seagram & Sons, Inc. v. Conoco, Inc.*,
  519 F. Supp. 506 (D. Del. 1981) ...............................................................................................10

*Walters v. Indus. & Com. Bank of China, Ltd.*,
  651 F.3d 280 (2d Cir. 2011) .......................................................................................................4

**Statutes**

6 *Del. C.* § 8-112 .............................................................................................................................1, 6

6 *Del. C.* § 8-112(a) ...........................................................................................................................6, 8

6 *Del. C.* § 8-112(d) ...........................................................................................................................8, 9

6 *Del. C.* § 8-112(e) ..............................................................................................................................9

6 *Del. C.* § 8-112 cmt. 1 .......................................................................................................................7

8 *Del. C.* § 167 .....................................................................................................................................9

8 *Del. C.* § 168 .................................................................................................................................9

8 *Del. C.* § 168(b) ...........................................................................................................................10

8 *Del. C.* § 169 ....................................................................................................................1, 2, 6, 7

8 *Del. C.* § 324 .......................................................................................................................1, 2, 6

8 *Del. C.* § 324(a) ............................................................................................................................6

28 U.S.C. § 1608(e) ......................................................................................................................4

28 U.S.C. § 1610(a)(6) ..................................................................................................................5

28 U.S.C. § 1610(c) ......................................................................................................................4

UCC § 8-112 ..............................................................................................................................6, 8

UCC § 8-112(a) .............................................................................................................................2

UCC § 8-112(d) .............................................................................................................................2

UCC § 8-317 cmt. (Am. L. Inst. & Unif. L. Comm'n 1977) ........................................................7

**Rules**

Fed. R. Civ. P. 69(a) ..................................................................................................................3, 4

Fed. R. Civ. P. 70(a) ......................................................................................................................9

**Regulations**

31 C.F.R. § 591.201 .....................................................................................................................10

31 C.F.R. § 591.310 .....................................................................................................................10

**Constitutional Provisions**

U.S. Const. art. III .......................................................................................................................10

**Other Authorities**

Andreina Itriago Acosta, *Venezuela Opposition Party Demands Limited Access to State Funds*, Bloomberg (May 30, 2023) ..............................................................................3

Executive Order 13808 § 1(a)(ii) .................................................................................................10

Executive Order 13808 § 1(a)(iv) ................................................................................................10

Executive Order 13835 § 1(a)(iii) ................................................................................................10

## NATURE AND STAGE OF THE PROCEEDINGS

The many creditors' briefs filed on May 24 make clear why the Sale Process should proceed expeditiously, without jeopardizing the sale by providing unlawful relief to the ever-expanding crowd of creditors without attachments, and without waiting for them to obtain attachments beyond the time already provided by the design of the Sale Procedures Order.

Venezuela's brief, meanwhile, renews the long-rejected argument from its motion to quash that Delaware law requires actual seizure of the lost or stolen PDVH share certificate. Venezuela claims a recent unpublished trial-court decision, *Deng v. HK Xu Ding Co.*, 2023 WL 3318322 (Del. Super. Ct. May 8, 2023), vindicates its view that the Delaware Uniform Commercial Code ("UCC"), which provides for attachment by seizing the certificate, 6 *Del. C.* § 8-112, trumps Delaware's corporate code, 8 *Del. C.* §§ 169, 324, which permits attachment without physical seizure.

ConocoPhillips joins Venezuela in citing *Deng* to suggest that "the Venezuela Parties may have been correct on the merits." Conoco Br. 12. While recognizing that Venezuela is estopped from challenging Crystallex's attachment, Conoco emphasizes that "[o]ther creditors" who may not be able to invoke "waiver and estoppel" against Venezuela may "have an incentive to argue that Crystallex's attachment is defective" to "dislodge Crystallex from its . . . priority position." *Id.* at 13. Conoco's solution is to invoke the Court's equitable authority to order issuance of a new certificate and then issue the writs to "reflect the reasonable expectations of the parties." *Id.* at 14.

Conoco is wrong that Venezuela's certificate argument ever had any merit, but its concerns and predictions about strategic behavior are well taken, as is the gist of its proposed solution: The Court should order the certificate reissued before confirming any additional attachments. Crystallex remains the only creditor that has attached the PDVH shares, so there is no question of priority to be decided or opportunity for anyone else to even attempt to "dislodge" its first-in-line

position unless and until the Court confirms other attachments. As Crystallex explained in opposing the Venezuela Parties' motion to quash, D.I. 199 at 28-32, and during argument on the motion, Venezuela's Delaware-law arguments are baseless because Delaware's version of UCC § 8-112(a) expressly carves out attachments issued pursuant to Delaware's corporate code, 8 *Del C.* §§ 169, 324, and because Venezuela has claimed for years that no one knows where the certificate is—in other words, it is either lost or stolen. Even if Delaware had adopted the version of the UCC that Venezuela claims, the law would not require seizure of a certificate that does not exist. *Deng* does not speak to that question, since the certificate in that case was known to be in the possession of a third party—the Chinese police—not lost or stolen. And regardless, now that Crystallex has attached the shares, the U.S. Marshals have constructive possession, and other creditors must attach them through writs served on Crystallex, not by seizing the certificate. *See* UCC § 8-112(d).

Conoco is correct, however, that the Court has now been licensed to issue other attachments, and that other creditors, once they obtain any such attachments, will have every incentive to manufacture additional litigation about these issues in an attempt to better their respective positions. Venezuela's "certificate" arguments remain meritless for the reasons Crystallex argued in opposing the motion to quash (which the Court did not reach then). But as Crystallex urged three years ago—and Conoco agrees now—this Court can foreclose these unnecessary fights and preserve the parties' "reasonable expectations" that Crystallex has first priority, Conoco Br. 14, by exercising its ample statutory authority to cause PDVH to reissue the share certificate and deliver it to the U.S. Marshals Service, subject to Crystallex's existing lien, before any further attachments are issued. The Court may then issue and permit service of any additional attachments in the order it believes appropriate after considering the priority arguments urged by the additional creditors.

## ARGUMENT

### I. Only Judgments For Which There Is An Attachment Of The PDVH Shares Should Be Regarded As "Additional Judgments" Under The Sale Procedures Order

This is a proceeding to "satisfy the outstanding judgment of Crystallex." D.I. 481 at 2. The Sale Procedures Order contemplates that other judgment creditors *might* be entitled to participate in Crystallex's sale. *Id.* at 25 ("[T]he Court will decide in accordance with applicable law which, *if any*, additional judgments . . . are to be considered." (emphasis added)). But participation is not assured if contrary to "applicable law." *Id.*

Crystallex acknowledges that creditors that successfully attach PDVH's shares by the "Additional Judgment Deadline" may be recognized as "Additional Judgment" holders. D.I. 573 at 6-12. But judgment creditors holding only an expectation of obtaining an attachment are wrong that they can be added as "Additional Judgment" creditors entitled to satisfaction in the anticipated sale *before* they actually attach the PDVH shares. *Id.*; *see* Red Tree Br. 2; Siemens Br. 6-7; Gold Reserve Br. 2; Conoco Br. 6-7; OIEG Br. 4-6; Huntington Br. 4-5; Rusoro Br. 4-5; Koch Br. 4-5. Similarly, this Court should not treat Contrarian, Tidewater, Valores, Banco San Juan Internacional, or RDK as Additional Judgment creditors because they lack any valid attachments and are nowhere close to obtaining them. This Court should not jeopardize or delay Crystallex's present right to execution in order to advance unripe claims of other judgment creditors.[1]

None of the nine creditors holding conditional orders that anticipate future writs of attachment denies that Delaware law—and thus Rule 69(a)—affords them no present right to participate in Crystallex's sale. D.I. 573 at 6-7. Although OFAC has authorized the issuance and service of

---

[1] The Venezuelan opposition Unitary Platform continues to lobby the U.S. Government for protection of CITGO. *See* Andreina Itriago Acosta, *Venezuela Opposition Party Demands Limited Access to State Funds*, Bloomberg (May 30, 2023), bloom.bg/45QGFY7. As the Special Master stated, the Court should conduct the sale expeditiously so that the guidance from OFAC remains fresh and does not become stale due to further strategic delays by Venezuela. *See* D.I. 553 ¶ 7.

3

writs on behalf of any party that this Court designates as an "Additional Judgment Creditor," the Third Circuit's stay in the six alter-ego creditors' cases prevents them from obtaining the attachments that are essential for eligibility at this time. Siemens Br. 7-8. It is irrelevant whether *OFAC* may believe "conditional writs of attachment can and should qualify as Additional Judgments under the terms of the Sale Procedures Order," Huntington Br. 5, because OFAC's views do not control the application of Rule 69(a), Delaware law, or the Sale Procedures Order. To be clear, Crystallex has no objection to these creditors being named "Additional Judgment" holders *after* they attach the PDVH Shares. But the "Additional Judgment Deadline" should not be delayed.

Other creditors' attempts to be named "Additional Judgment" creditors are even more premature. Contrarian, Tidewater, Valores, and Banco San Juan Internacional do not hold even conditional rights to attach, let alone actual attachments. Indeed, Banco San Juan has not even converted its U.K. judgment into an enforceable U.S. judgment, and Valores is still awaiting permission to register its judgment in this district.

RDK's purported *ex parte* attachment—from a Delaware state court based on RDK's default judgment against PDVSA, RDK Br. 5-6—is facially invalid. "No attachment" of a foreign state's property is "permitted until the court has ordered such attachment . . . after having determined that a reasonable period of time has elapsed following the entry of judgment" and service pursuant to 28 U.S.C. § 1608(e), if the judgment is a default judgment. *Id.* § 1610(c). Yet it appears RDK's writ was issued by a *clerk*, not a "court," without: (1) any evidence that RDK ever served its default judgment; (2) any "determin[ation] that a reasonable period . . . elapsed" after such service, *id.*; (3) any finding of an exception to PDVSA's immunity from attachment, *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 291 (2d Cir. 2011); or (4) the required oppor-

4

tunity for PDVSA to appear and contest the attachment, *Agudas Chasidei Chabad of U.S. v. Russian Federation*, 798 F. Supp. 2d 260, 271 (D.D.C. 2011).[2]

## II. Crystallex Takes No Position On Which Creditors May Obtain Attachments, But Any Attachment Proceedings Should Not Delay Crystallex's Sale Process

As to issuing additional attachments, Crystallex continues to take no position, D.I. 573 at 12-13, except to reiterate that any such attachment should not be permitted to "further delay" the sale process, D.I. 553 ¶¶ 7, 34-35, 38. Waiting for the Third Circuit to lift its stay of other creditors' proceedings, Huntington Br. 5-7; OIEG Br. 6-10, for example, would not be warranted.

## III. Crystallex's Judgment Is First In Priority, And The Court Should Reissue The Share Certificate To Facilitate An Efficient And Timely Sale Preserving That Priority

There is no question of priority for this Court to decide at present because Crystallex is the only creditor that has actually attached the PDVH shares, and would remain first-in-right (because it was first-in-time) if any other creditors were to attach the shares. But Venezuela has now seized on the unpublished Delaware Superior Court decision in *Deng* to renew its argument that the shares cannot be attached without seizing the share certificate, and Conoco has rightly warned that other creditors who obtain attachments may raise similar arguments. To put the issue at rest, while respecting Crystallex's priority, this Court should follow Conoco's suggestion to order reissuance of the share certificate in service of Crystallex's attachment before issuing any further attachment.

**A.** No creditor currently disputes that the first-in-time priority rule applies or that Crystallex has a fully perfected first-priority lien on the PDVH shares.[3] Conoco speculates (at 8)

---

[2] Unlike Crystallex, RDK's judgment was not based on an arbitral award, so the arbitration exception relied on by Crystallex, 28 U.S.C. § 1610(a)(6); D.I. 82 at 56-58, does not apply.

[3] *See* Siemens Br. 13-14 & n.12 (Siemens "does not dispute that Crystallex has already attached its judgment . . . and is first in line"); Rusoro Br. 1 ("Rusoro acknowledges that Crystallex, therefore, has first priority."); OIEG Br. 10-11 & n.6, 14 (endorsing first-in-time rule for other creditors "after Crystallex"); Conoco Br. 8-11; Koch Br. 6-7; RDK Br. 6-7; Gold Reserve Br. 3-7; Tidewater Br. 3-5; OIEG Br. 10-11; Huntington Br. 6-9; ACL Br. (endorsing Huntington Br.).

5

that Crystallex's lien and priority might be attacked by other creditors in the future, and Gold Reserve purports to reserve (at 7 n.4) its rights to challenge Crystallex's lien and priority, but neither creditor actually raises such a challenge. Banco San Juan suggests in passing (at 2) that judgments against PDVSA should precede judgments against Venezuela, but that position evidently pertains only to the relative priority among Additional Judgments (on which Crystallex takes no position). To the extent Banco San Juan's argument could be taken as a challenge to Crystallex's priority, it is unsupported and therefore waived, and conflicts with the governing first-in-time rule. And it is now too late for any other creditor to question Crystallex's priority even if it were to attempt to do so because any such objections should have been raised at the very latest in the creditors' May 24 opening briefs.

Were the issue litigated, Crystallex's lien should be secure, not only because Venezuela is estopped from challenging it, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2021 WL 129803, at *11 (D. Del. Jan. 14, 2021), but also because the Delaware-law arguments for quashing the writ that Venezuela now seeks to revive have always been, and remain, incorrect on the merits. As Crystallex explained in opposing Venezuela's motion to quash, D.I. 199 at 28-32, and at oral argument on that motion in July 2020, D.I. 214 at 86:2-90:8, Delaware's UCC § 8-112 expressly carves out attachments pursuant to Delaware's corporate code, 8 *Del. C.* §§ 169, 324, by stating that it applies "[e]xcept to the extent otherwise provided or permitted by §§ 169 and 324." 6 *Del. C.* § 8-112(a). Section 324(a), in turn, refers back to the requirements of UCC § 8-112, creating an endless feedback loop that must be resolved somehow. The most sensible way of escaping from this circular loop remains Chancellor Allen's recognition in *Castro v. ITT Corp.* that Delaware's adoption of the UCC's actual-seizure requirement did not "modify the effect or operation of the situs statute (Section 169) or the attachment mechanisms employed to bring stock into

6

court." 598 A.2d 674, 682 (Del. Ch. 1991); *see* D.I. 199 at 28-32.

Regardless of whether the UCC or the corporate code controls, moreover, the UCC does not require seizure of a certificate that has been undisputedly lost, stolen, or destroyed. The "chief justification for the seizure rule" is "the protection of purchasers from the debtor," so "the rule is entirely appropriate when the security is within the debtor's control," but "'[w]hen the debtor does not have such control, the rule has no function.'" *Huntington Nat'l Bank v. Entecap Corp.*, 2006 WL 3519346, at *7-8 (S.D. Miss. Dec. 6, 2006) (quoting UCC § 8-317 cmt. (Am. L. Inst. & Unif. L. Comm'n 1977)). The requirement that "the security certificate itself must be reached to constitute a proper levy" thus applies "*whenever the debtor has possession*," 6 *Del. C.* § 8-112 cmt. 1 (emphasis added), not when the certificate is lost, stolen, or destroyed.

That is the case here. To avoid posting a bond, PDVSA assured this Court on August 31, 2018, that the PDVH shares were "located in Delaware" and were "not going anywhere," D.I. 98 at 6, 15, thus providing sufficient security in lieu of a bond, *see*, *e.g.*, *id.* at 6; D.I. 118 at 10. But this assurance was either a false factual statement or merely a declaration of what § 169 says (and Venezuela's motion to quash and current pleadings dispute). Regardless, Venezuela has never produced a certificate, and in the intervening five years, Venezuela has repeatedly maintained that it "does not possess the certificate" and that it does not know where it is, D.I. 206 at 10—which is another way of saying that the certificate is lost or destroyed. At times, Venezuela has also speculated that the certificate "*may* be in the possession of the Maduro regime, which illegally occupies PDVSA's offices in Caracas." *Id.* (emphasis added). Venezuela now doubles down on that speculation, asserting that the certificate "presumably is in the hands of the illegitimate and independent Maduro regime." Venezuela Br. 9. This "presum[ed]" fact apparently is meant to bolster Venezuela's argument that *Deng* requires seizure of a share certificate where its location ("in Chinese

7

police custody") is known. 2023 WL 3318322, at *1. But Venezuela cannot have it both ways. If the Maduro regime is illegitimate and not recognized, it is not at all analogous to the police force of a recognized foreign government. It is a thief. Even if the Maduro regime had the certificate, that would just mean that the certificate is stolen.

Either way, therefore, the certificate is lost, destroyed, or stolen, so neither the UCC nor Delaware's corporate code requires physical seizure, and this case is entirely unlike *Deng*. And *Deng* expressly did not question the validity of Crystallex's attachment, distinguishing *Crystallex* on the grounds that it involved a company that "was owned and controlled by [a] foreign country" and that challenges to the validity of Crystallex's attachment were estopped and untimely. 2023 WL 3318322, at *5. *Deng* thus changes nothing.[4]

Venezuela's purported seizure requirement also provides no basis to question any future attachments this Court might issue, which must be perfected by service *on Crystallex*. Because this Court has already held that "the validity of [Crystallex's] writ has been actually, necessarily, and finally resolved," *Crystallex*, 2021 WL 129803, at *10, by operation of law the U.S. Marshals necessarily hold constructive possession of the certificate for Crystallex's benefit. Delaware law contemplates that a certificate shall be seized only once, exempting "subsection (d)" of UCC § 8-112 from the physical-seizure requirement. 6 *Del. C.* § 8-112(a). Subsection (d) in turn provides that when "the certificate is in the possession of a secured party," the debtors' interest in that security may be attached not by physical seizure of the certificate but "by legal process upon the secured party" (here, Crystallex). *Id.* § 8-112(d). There is thus no basis for Venezuela's contention

---

[4] Further, *Deng* is not "entitled to . . . deference" because it is an unpublished state "trial court decision," and such decisions are considered in construing state law only "to the extent that the quality of its analysis convinces [this Court] that the [state] Supreme Court would decide the issue similarly." *Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 199 n.9 (3d Cir. 2004).

8

(at 10-12) that other creditors must seize the certificate. Because Crystallex, through the U.S. Marshals, is a "secured party" under § 8-112(d), other creditors can obtain valid attachments *only* by serving any future writs of attachment on Crystallex.

**B.** Although Venezuela's stale physical-seizure argument remains meritless and is irrelevant to future attachments, multiple parties have now raised the issue as a potential obstacle and source of further delay in the upcoming Sale Process, with ConocoPhillips predicting that junior creditors that obtain attachments may raise it in an attempt to jump ahead of Crystallex in priority. *See* Venezuela Br. 7-12; Conoco Br. 4, 8, 11-15; Red Tree Br. 3-6; OIEG Br. 9-10. To avoid any uncertainty that could delay a sale, Crystallex respectfully submits that the time has come for the Court to order the PDVH share certificate to be reissued and delivered to the U.S. Marshals Service for Crystallex's benefit as the Sale Procedures Order contemplates, *see* D.I. 481 at 36-37, and as Crystallex has previously urged, *see* D.I. 256 at 52:19-53:7; D.I. 406 at 11-12; D.I. 199 at 36; D.I. 201 at 9-10.

Crystallex takes no issue with Conoco's reliance on equitable principles as a basis for doing so, Conoco Br. 9-15, but this Court has ample statutory authority to compel the reissuance of the share certificate and ensure that "the reasonable expectatio[n] of the parties" that Crystallex holds first priority is preserved, *id.* at 14. Delaware law allows reissuance where the shares are lost or stolen. 8 *Del. C.* § 167. Here, the PDVH certificate is undisputedly lost or stolen, as Venezuela has maintained for years that its location is unknown. *See* D.I. 558 at 6-7; Venezuela Br. 2, 7-10. The Court thus can and should order PDVSA to request reissuance of the certificate, and can order PDVH to comply. 8 *Del. C.* § 168; *see also* 6 *Del. C.* § 8-112(e). Pursuant to Federal Rule 70(a), if PDVSA refuses to act, the Court can appoint someone to act for PDVSA.

9

Reissuing the certificate would not risk violating any sanctions because it would not "transfer" any interest in property. 31 C.F.R. § 591.310. The issuance of a new certificate would not create any *new* interest in blocked property, nor would it create "new equity" under § 1(a)(ii) of Executive Order 13808, or "transfer" any "equity interest" under § 1(a)(iii) of Executive Order 13835. It would merely create new "evidence" of equity that already exists. *Joseph E. Seagram & Sons, Inc. v. Conoco, Inc.*, 519 F. Supp. 506, 513 (D. Del. 1981). Crystallex has already attached all "rights incident" to the shares, D.I. 95 at 7, including rights in any new certificate. Any bond that PDVSA might be required to provide PDVH under 8 *Del. C.* § 168(b) would also be consistent with sanctions, since it would not be a distribution of "profits" prohibited by § 1(a)(iv) of Executive Order 13808 as incorporated by OFAC regulations, 31 C.F.R. § 591.201. In any event, these activities would be authorized by OFAC's May 1, 2023 license for "transactions and activities ordinarily incident and necessary to the issuance and service of a writ of attachment *fieri facias*." D.I. 555 at 8. OFAC clearly intended to allow all steps necessary for that to happen. Moreover, any interpretation of OFAC's regulations and licenses to limit the inherent judicial power to enforce federal judgments in this respect would raise serious constitutional concerns under Article III, and should also be rejected on that ground. *See* D.I. 406 at 11-12 (citing *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 562-63 (3d Cir. 1985) (en banc)).

Given the disputes on this subject, the Court should reissue the certificate *before* granting any other writs, so as to leave no doubt that Crystallex retains its first priority. *See supra* at 5-9.

## CONCLUSION

Crystallex respectfully requests that the Court launch the Sale Process as soon as practicable and order the reissuance of the PDVH share certificate.

| | |
|---|---|
| OF COUNSEL:<br><br>Robert L. Weigel<br>Jason W. Myatt<br>Rahim Moloo<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York  10166<br>(212) 351-4000<br><br>Miguel A. Estrada<br>Lucas C. Townsend<br>Adam M. Smith<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C.  20036<br>Tel: (202) 955-8500<br>Fax: (202) 467-0539<br><br>Dated:  June 7, 2023 | */s/ Jeffrey L. Moyer*<br>Raymond J. DiCamillo (#3188)<br>Jeffrey L. Moyer (#3309)<br>Travis S. Hunter (#5350)<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware  19801<br>(302) 651-7700<br>dicamillo@rlf.com<br>moyer@rlf.com<br>hunter@rlf.com<br><br>*Attorneys for Plaintiff* |