**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 17-151-LPS |
| TIDEWATER INVESTMENT SRL and TIDEWATER CARIBE, S.A., <br><br> Plaintiffs, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 19-79-LPS |
| OI EUROPEAN GROUP B.V., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 19-290-LPS |
| PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED and CONOCOPHILLIPS PETROZUATA B.v., <br><br> Plaintiffs, <br><br> v. <br><br> PETRÓLEOS DE VENEZUELA, S.A., CORPOGUANIPA, S.A., and PDVSA PETRÓLEO, S.A., <br><br> Defendants. | Misc. No. 19-342-LPS |

| | |
|---|---|
| NORTHROP GRUMMAN SHIP SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 20-257-LPS |
| CONTRARIAN CAPITAL MANAGEMENT, L.L.C., CONTRARIAN CAPITAL FUND I, L.P., CONTRARIAN CAPITAL FUND I, L.P., CONTRARIAN CAPITAL SENIOR SECURED, L.P., CONTRARIAN EM II, LP, CONTRARIAN EMERGING MARKETS, L.P., POLONIUS HOLDINGS, LLC, CONTRARIAN FUNDS, L.L.C., and CONTRARIAN DOME DU GOUTER MASTER FUND, LP, <br><br> Plaintiffs, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 21-18-LPS |
| ACL I INVESTMENTS LTD., ACL2 INVESTMENTS LTD., and LOO (CAYMAN) XVIII LTD., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 21-46-LPS |
| RUSORO MINING LIMITED, <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 21-481-LPS |

| | |
|---|---|
| RED TREE INVESTMENTS, LLC,<br><br>  Plaintiff,<br><br> v.<br><br>PETRÓLEOS DE VENEZUELA, S.A. and PDVSA PETRÓLEO, S.A.,<br><br>  Defendants. | Misc. No. 22-68-LPS |
| RED TREE INVESTMENTS, LLC,<br><br>  Plaintiff,<br><br> v.<br><br>PETRÓLEOS DE VENEZUELA, S.A. and PDVSA PETRÓLEO, S.A.,<br><br>  Defendants. | Misc. No. 22-69-LPS |
| CONTRARIAN CAPITAL MANAGEMENT, L.L.C., CONTRARIAN CAPITAL FUND I, L.P., CONTRARIAN CAPITAL FUND I, L.P., CONTRARIAN DOME DU GOUTER MASTER FUND, LP, CONTRARIAN CAPITAL SENIOR SECURED, L.P., CONTRARIAN EM II, LP, CONTRARIAN EMERGING MARKETS, L.P., POLONIUS HOLDINGS, LLC, CONTRARIAN FUNDS, L.L.C., and EMMA 1 MASTER FUND, L.P.,<br><br>  Plaintiffs,<br><br> v.<br><br>BOLJVARIAN REPUBLIC OF VENEZUELA,<br><br>  Defendant. | Misc. No. 22-131-LPS |
| KOCH MINERALS SÀRL, KOCH NITROGEN INTERNATIONAL SÀRL,<br><br>  Plaintiffs,<br><br> v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>  Defendant. | Misc. No. 22-156-LPS |

| | |
|---|---|
| CONTRARIAN CAPITAL MANAGEMENT,. L.L.C., CONTRARIAN CAPITAL FUND I, L.P., CONTRARIAN CAPITAL FUND I, L.P., CONTRARIAN DOME DU GOUTER MASTER FUND, LP, CONTRARIAN CAPITAL SENIOR SECURED, L.P., CONTRARIAN EM II, LP, CONTRARIAN EMERGING MARKETS, L.P., BOSTON PATRIOT SUMMER ST LLC,  POLONIUS  HOLDINGS, LLC, CONTRARIAN FUNDS, L.L.C., EMMA I MASTER FUND, L.P., and E1 SP, A SEGREGATED ACCOUNT OF EMAP SPC,<br><br>      Plaintiffs,<br><br>  v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>      Defendant. | Misc. No. 22-263-LPS |
| CONOCOPHILLIPS GULF OF PARIA B.V.,<br><br>      Plaintiff,<br><br>  v.<br><br>CORPORACIÓN VENEZOLANA DEL PETRÓLEO, S.A., and PETRÓLEOS DE VENEZUELA, S.A.,<br><br>      Defendants. | Misc. No. 22-264-LPS |
| SIEMENS ENERGY, INC.,<br><br>      Plaintiff,<br><br>  v.<br><br>PETRÓLEOS DE VENEZUELA, S.A.,<br><br>      Defendant. | Misc. No. 22-347-LPS |
| GOLD RESERVE INC.,<br><br>      Plaintiff,<br><br>  v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>      Defendant. | Misc. No. 22-453-LPS |

**ANSWERING BRIEF OF SIEMENS ENERGY INC. IN RESPONSE TO
MEMORANDUM ORDER DATED MAY 10, 2023**

Dated: June 7, 2023

| | |
|---|---|
| OF COUNSEL: | Brian M. Rostocki (No. 4599) |
| | REED SMITH LLP |
| Nicole Lech | 1201 Market Street, Suite 1500 |
| (*pro hac vice* admission pending) | Wilmington, DE 19801 |
| REED SMITH LLP | (302) 778-7500 |
| 599 Lexington Avenue | brostocki@reedsmith.com |
| New York, NY 10022 | |
| (212) 521-5400 | |
| nlech@reedsmith.com | *Counsel for Siemens Energy, Inc.* |

**TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|

SUMMARY OF ARGUMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I. There is No Basis for the Venezuela Parties' Argument that the Court May Not Recognize Additional Judgments ................................................................................. 2

    A. Delaware Law Does Not Prohibit the Court From Recognizing Additional Judgments of Creditors With Conditional Attachments ....................... 2

    B. The Venezuela Parties May Not Rely on the Unavailability of the PDVH Shares Certificate to Thwart the Sale Process ........................................... 4

        1. PDVSA Has Waived the Argument that Unconditional Attachment of the PDVH Shares Cannot be Obtained Without Physical Seizure ......... 4

        2. The Venezuela Parties are Judicially Estopped From Raising its Physical Seizure Argument as to SEI ........................................................ 5

        3. The UCC Does Not Require Seizure of the PDVH Share Certificate and Permits the Court to Fashion an Appropriate Remedy ............................................................................................................ 6

        4. If Physical Seizure is Deemed Necessary, the Court Can and Should Order PDVH to Reissue a New Certificate ................................... 9

II. The Venezuela Parties' Argument that the Court May Not Issue Unconditional Writs of Attachment Rests on Circular Reasoning and Should be Rejected ................... 10

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Point Fin. v. Tk Hospitality Group*,
  2021 Ga. Super. LEXIS 3581 (Super. Ct. Ga. July 16, 2021) ...................................................9

*Family Inada Co. v. FIUS Distribs. LLC*,
  No. 19-925-CFC, 2019 U.S. Dist. LEXIS 180265 (D. Del. Oct. 18, 2019) .............................5

*Huntington Nat'l Bank v. Entecap Corp.*,
  No. 05 Civ. 11, 2006 U.S. Dist. LEXIS 88352 (S.D. Miss. Dec. 6, 2006) ...............................8

*K Mart Corp. v. Cartier, Inc.*,
  486 U.S. 281 (1988) .................................................................................................................7

*Kohr v. Roswell Station, Inc.*,
  2017 Ga. Super. LEXIS 1354 (Ga. Super. Ct. Mar. 20, 2017) ..................................................9

*Lewis v. Carroll*,
  No. 06-778-GMS, 2011 U.S. Dist. LEXIS 5348 (D. Del. Jan. 20, 2011) .................................5

*Long Deng v. HK Xu Ding Co.*,
  2023 Del. Super. LEXIS 231 (Del. Super. Ct. May 8, 2023) .........................................2, 7, 8

*Lou Levy & Sons Fashions, Inc. v. Romano*,
  988 F.2d 311 (2d Cir. 1992) ....................................................................................................6

*McNemar v. Disney Store*,
  91 F.3d 610 (3d Cir. 1996) ......................................................................................................6

*OI European Grp. B.V. v. Bolivarian Republic of Venez.*,
  No. 19-290-LPS, 2022 U.S. Dist. LEXIS 36631 (D. Del. Mar. 2, 2022) .................................6

*In re Renfro*,
  368 B.R. 540 (Bankr. N.D. Tex. 2007) ....................................................................................9

*Schanck v. Gayhart*,
  245 So. 3d 970 (Fla. Dist. Ct. App. 2018) ...............................................................................9

*Thompson v. Real Estate Mortg. Network*,
  822 F. App'x. 136 (3d Cir. Sep. 22, 2020) ...............................................................................5

*United States v. Morton*,
  467 U.S. 822 (1984) .................................................................................................................7

**Statutes**

6 Del. C. § 8-101 ..........................................................................................................................6

6 Del. C. § 8-112 ..........................................................................................................................9

6 Del. C. § 8-112(a) ............................................................................................................8, 9, 10

6 Del. C. § 8-112(e) ......................................................................................................................8

8 Del. C. § 8-405 ..........................................................................................................................9

8 Del. C. § 168 ..............................................................................................................................9

8 Del. C. § 324(a) ..................................................................................................................2, 3, 4

1B Anderson U.C.C. § 1-103:4 [Rev.] .........................................................................................7

N.J. Stat. Ann. § 12A:1–102 (West 1992) (U.C.C. Comments) ...............................................6, 7

O.C.G.A. § 11-8-112(e) ...............................................................................................................9

Siemens Energy, Inc. ("SEI") submits this Answering Brief in response to the Court's Memorandum Order dated May 10, 2023.[1]

## SUMMARY OF ARGUMENT

1. The Venezuela Parties incorrectly contend that Delaware law prohibits the Court from recognizing a creditor as an Additional Judgment Creditor until attachment is laid, but that attachment may not be laid until the Court recognizes the creditor as an Additional Judgment Creditor. This "Catch-22" has no legal basis and defies common sense in light of the OFAC License. Assuming Delaware requires that attachment be laid before a sale, this has no bearing on whether the Court may take *prefatory steps* in advance of the sale, such as recognizing Additional Judgments. To hold that Delaware law prohibits the Court from recognizing Additional Judgments would be to conclude that the License is meaningless because the Court would never be able to exercise the authority explicitly granted to it—*i.e.*, to engage in activities "incident and necessary to the issuance and service of a writ of attachment . . . for any party named an 'Additional Judgment Creditor' by the Court." No. 17-mc-151, D.I. 555, at 8. The permitted activities necessarily follow the Court's naming of "Additional Judgment Creditor[s]."

2. The Venezuela Parties' argument that the inability to physically seize the PDVH Shares certificate prevents the Sales Process from moving forward is wrong for at least four reasons. *First*, that argument is waived as to SEI because PDVSA never raised it connection with SEI's motion to obtain its conditional writ. *Second*, the Venezuela Parties are judicially estopped from making that argument as to SEI for the same reasons they are estopped from making that argument as to Red Tree, *see* No. 17-mc-151, D.I. 566, at 4—because the argument is incompatible

---

[1] All capitalized terms that are not expressly defined herein have the meanings given to them in the Sale Procedures Order and the Opening Brief of Siemens Energy Inc. in Response to Memorandum Order Dated May 10, 2023, No. 17-mc-151, D.I. 569 ("SEI's Opening Brief").

with the theory the Venezuela Parties relied upon to oppose unconditional writs of attachment. *Third*, the underlying purpose and policies of the Uniform Commercial Code (the "UCC") do not support the physical seizure requirement in this context; nor does *Long Deng v. HK Xu Ding Co.*, 2023 Del. Super. LEXIS 231 (Del. Super. Ct. May 8, 2023) ("*Deng*")—which is distinguishable for multiple reasons. *Fourth*, should this Court deem physical seizure necessary, the Court can and should order PDVH to reissue a new certificate, rather than allow the Venezuela Parties to avoid repaying their debt on the basis that the certificate supposedly cannot be located.

3. As to the Court's ability to issue or convert unconditional writs of attachment, the lone argument the Venezuela Parties could muster as to why the Court may not do so is that the Court cannot recognize Additional Judgments and, therefore, cannot satisfy the License's condition that the Court may only issue unconditional writs to parties "named an 'Additional Judgment Creditor' by the Court." This circular argument fails for the same reasons that their arguments as to the recognition of Additional Judgments fail.

## ARGUMENT

### I. There is No Basis for the Venezuela Parties' Argument that the Court May Not Recognize Additional Judgments

#### A. Delaware Law Does Not Prohibit the Court From Recognizing Additional Judgments of Creditors With Conditional Attachments

The Venezuela Parties' leading argument as to why the Court supposedly may not recognize Additional Judgments is that "only the judgments of creditors with valid attachments may be included in the Sale Process." No. 17-mc-151, D.I. 571, at 5. Specifically, the Venezuela Parties argue that Section 324(a) of the Delaware General Corporation Law ("Section 324"), 8 *Del. C.* § 324(a), requires that attachment be laid before any sale is held. *Id.* at 6.

This argument misses the point. *Id.* The Court's recognition of Additional Judgments is not akin to holding a sale; it is simply a prefatory step. OFAC appreciates this. OFAC issued

FAQ 1123 on May 1, 2023, in which it made clear that it would

> not take enforcement action against any individuals or entities for participating in, facilitating, or complying with the *prefatory steps* set out in the court's Sale Procedures Order or for engaging in transactions that are ordinarily incident and necessary to participating in, facilitating, or complying with such steps.

*See* No. 17-mc-151, D.I. 554-1 (emphasis added). The Court's recognition of Additional Judgments is merely a prefatory step toward an eventual sale, and there is nothing within Section 324(a) to suggest that the Court is prohibited from taking such a step.

Indeed, the Venezuela Parties have "refuted" a strawman when they argue that the Court "may not proceed with any sale to satisfy any creditor's judgment unless and until that creditor has an effective attachment on the PDVH shares." No. 17-mc-151, D.I. 571, at 6. No would-be Additional Judgment Creditor has taken the position that the sale of the PDVH Shares should take place simultaneously with the recognition of "Additional Judgments," nor could they; there are other prefatory steps under the Sale Procedures Order that must occur before an actual sale, and the License makes clear that any Additional Judgment Creditor would need to obtain a separate license from OFAC before it could execute any writ issued pursuant to the License. *See* No. 17-mc-151, D.I. 555, at 8.

Moreover, the Venezuela Parties' argument leads to the absurd conclusion that the License is effectively meaningless. The Venezuela Parties concede, as they must, that the License authorizes the Court to issue unconditional writs of attachment, but *only* to Additional Judgment Creditors named by the Court. *See* No. 17-mc-151, D.I. 571, at 4. If, however, Delaware law prohibits the Court from naming Additional Judgment Creditors unless and until the creditor holds an unconditional writ of attachment, then the precondition for the Court to exercise the authority granted to it through the License can never materialize. That is, the Court can never "engage in transactions and activities ordinarily incident and necessary to the issuance of a writ of attachment

*fieri facias*." No. 17-mc-151, D.I. 555, at 8.  It strains credulity to suggest that OFAC would, after months of engagement with the Special Master regarding the circumstances under which the Sale Process could proceed, issue a hollow license with no practical application.

### B. The Venezuela Parties May Not Rely on the Unavailability of the PDVH Shares Certificate to Thwart the Sale Process

Putting aside that the Venezuela Parties' argument would render the License meaningless, and assuming arguendo that Section 324(a) applies to the question of whether the Court may grant such recognition, the unavailability of the PDVH Shares certificate for physical seizure is not an impediment to the recognition of Additional Judgments.  As set forth below, PDVSA has waived, and the Venezuela Parties are judicially estopped from making, that argument as to SEI, and, in any event, UCC Article 8 allows the Court to fashion an appropriate remedy in these unique circumstances.

#### 1. PDVSA Has Waived the Argument that Unconditional Attachment of the PDVH Shares Cannot be Obtained Without Physical Seizure

PDVSA did not contest SEI's October 2022 motion for an order authorizing a conditional writ of attachment against the PDVH Shares.  Instead, on December 9, 2022, PDVSA and SEI submitted a proposed stipulated order (entered on December 12, 2022) granting SEI's motion "subject to [PDVSA's] rights of appeal and the preservation of its objections as set forth in PDVSA's briefs in [the "ConocoPhillips/Red Tree Briefing"] and which are incorporated herein by reference."  No. 22-mc-347, D.I. 13, at 4, n.1 (incorporating No. 19-mc-342, D.I. 11, 33, 36; No. 22-mc-264, D.I. 12; No. 22-mc-68 and 22-mc-69 D.I. 10, 14).

Although PDVSA raised numerous arguments in the ConocoPhillips/Red Tree Briefing, it did not contend that attachment was unavailable because the PDVH Shares certificate could not be physically seized, as the Venezuela Parties now argue.  By failing to raise and preserve the physical seizure argument, PDVSA has waived it.  Waiver is even more evident as to SEI than

ConocoPhillips or Red Tree because SEI's motion represented a "second chance" for PDVSA to add any new arguments that it did not raise in the ConocoPhillips/Red Tree Briefing. Having failed to avail itself of that opportunity, PDVSA cannot raise the issue now. *Family Inada Co. v. FIUS Distribs. LLC*, No. 19-925-CFC, 2019 U.S. Dist. LEXIS 180265, at \*20 (D. Del. Oct. 18, 2019) (finding that repeated failure to address public interest considerations in connection with preliminary injunction application amounted to waiver); *Lewis v. Carroll*, No. 06-778-GMS, 2011 U.S. Dist. LEXIS 5348, at \*13 n.5 (D. Del. Jan. 20, 2011) ("Failure to raise an issue in the district court constitutes a waiver of the argument.").

### 2. The Venezuela Parties are Judicially Estopped From Raising its Physical Seizure Argument as to SEI

As argued in Red Tree's opening brief, *see* No. 17-mc-151, D.I. 566, at 4, which SEI now joins on this issue, the Venezuela Parties are judicially estopped from arguing that full attachment is not possible because the PDVH Shares certificate cannot be physically seized.

Judicial estoppel is designed to prevent a litigant from "playing fast and loose with the courts" and "gain[ing] an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing and incompatible theory." *Thompson v. Real Estate Mortg. Network*, 822 F. App'x. 136, 137 (3d Cir. Sep. 22, 2020). In determining whether to apply the doctrine, courts consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.*

Here, in an attempt to frustrate creditors' attempts to enforce their judgments, the Venezuela Parties have repeatedly argued that the Court may not issue an order attaching the PDVH Shares because such an order would amount to a transfer of blocked property in violation of OFAC sanctions. *See* No. 17-mc-151, D.I. 566, at 4, n.4. The Venezuela Parties argument was partially successful insofar as the Court determined that it could only issue *conditional* writs of

attachment pending the receipt of a license from OFAC or the modification or lifting of the sanctions. *See OI European Grp. B.V. v. Bolivarian Republic of Venez.*, No. 19-290-LPS, 2022 U.S. Dist. LEXIS 36631, at *18–19 (D. Del. Mar. 2, 2022). Under the Venezuela Parties' new and contradictory theory, an unconditional attachment would not have violated OFAC sanctions—as they previously maintained and the Court partially accepted—because the attachment would not have been valid due to the inability to physically seize the PDVH Shares certificate, meaning no prohibited transfer of blocked property would have taken place. *See* No. 17-mc-151, D.I. 571, at 7–10.

This situation presents precisely the type of gamesmanship that the doctrine of judicial estoppel was designed to prevent. *McNemar v. Disney Store*, 91 F.3d 610, 618–20 (3d Cir. 1996) ("[W]ell-reasoned decisions have judicially estopped plaintiffs . . . from speaking out of both sides of [their] mouth with equal vigor and credibility before [the] court.") As a result of the Venezuela Parties' arguments against granting full attachment, SEI and the remaining creditors have been stuck in limbo with conditional attachments. Now that the conditions on which those attachments were based have finally been satisfied, it would be unfair to grant the Venezuela Parties another chance to frustrate the legal process based upon an incompatible new theory.

### 3. The UCC Does Not Require Seizure of the PDVH Share Certificate and Permits the Court to Fashion an Appropriate Remedy

Not only is the Venezuela Parties' argument that a creditor must seize the PDVH Shares certificate before being considered an "Additional Judgment Creditor" barred, it is also unsupported by Article 8 of the UCC (as codified in 6 *Del*. C. § 8-101 *et seq.*).

To begin, no provision of the UCC exists in a vacuum; all provisions must be read together so as to give full effect to all of the language of the statute. *See Lou Levy & Sons Fashions, Inc. v. Romano*, 988 F.2d 311, 314 (2d Cir. 1992) (citing N.J. Stat. Ann. § 12A:1–102 (West 1992)

(U.C.C. Comments) ("The interdependence of each section of the U.C.C. is made clear in the official Comments to the U.C.C.  The Comments state that "[t]he text of each section should be read in the light of the purpose and policy of the rule or principle in question, as also of the Act as a whole . . . ."); *see also* 1B Anderson U.C.C. § 1-103:4 [Rev.] ("The UCC is to be read as a whole in order to obtain its full meaning.").[2]

Here, the Venezuela Parties focus exclusively on Section 8-112(a) and rely heavily on the recent decision from the Delaware Superior Court in *Deng v. HK Xu Ding Company*, in which the court found that Section 8-112(a) of the Delaware General Corporation Law requires the physical seizure of a stock certificate before certificated securities may be attached and sold.  Yet, the *Deng* decision is distinguishable for numerous legal and factual reasons.

*First*, the Superior Court in *Deng* explicitly recognized that this Court's decision in *Crystallex* presented a "unique procedural posture" based upon this Court's judicial estoppel and waiver findings, which made *Crystallex* "inapposite" to the issues before the Superior Court.  *Deng*, 2023 Del. Super. LEXIS 231, at *11–12.  As discussed *supra* Sections I.B.1 and I.B.2, PDVSA has similarly waived, and the Venezuela Parties are estopped from making, the argument that physical seizure is required.  The Venezuela Parties do not provide any reason, let alone a compelling one, why the unique circumstances here, like the circumstances in *Crystallex*, are not "inapposite" to the separate issues raised before the Superior Court in *Deng*.

*Second*, another distinction between *Deng* and the present case is that, in *Deng*, the parties knew the location of the stock certificate at issue; it was in the custody of the Chinese police.

---

[2] Courts "do not . . . construe statutory phrases in isolation; [they] read statutes as a whole." *United States v. Morton*, 467 U.S. 822, 828 (1984).  *See, e.g.*, *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.").

*Deng*, 2023 Del. Super. LEXIS 231, at *2.  Here, the Venezuela Parties contend that the location of the PDVH Shares certificate is supposedly unknown.  *See* 17-mc-00151, D.I. 571 at 9 (the certificated stock "presumably is in the hands of the illegitimate and independent Maduro regime").  This factual difference is particularly important because applying the physical seizure requirement of 6 *Del. C.* § 8-112(a) when the location of the certificate is supposedly unknown undermines a judgment creditor's ability to collect on a valid judgment and, more directly, may incentivize a judgment debtor to hide assets that should be attached to satisfy a judgment.

A more analogous situation is where the share certificates "have in fact been lost or destroyed" in which case "the physical seizure requirement may be moot."  *See Huntington Nat'l Bank v. Entecap Corp.*, No. 05 Civ. 11, 2006 U.S. Dist. LEXIS 88352 at *21 (S.D. Miss. Dec. 6, 2006).  In fact, "[i]n the Official Comment to the 1977 revisions to the Uniform Commercial Code, which required actual seizure of the certificates under Creditor's Rights Section 8-317, it was noted that ***the chief justification for the seizure rule was the protection of purchasers from the debtor***:  The rule is entirely appropriate when the security is within the debtor's control. ***When the debtor does not have such control, the rule has no function.***"  *Id.* (emphasis added).  The Official Comment "and a logical reading of the [Section 8-112(e)] supports the position that seizure should not be required" if the debtor is without control.  *Id.*  That is the situation here.

*Third*, the Superior Court in *Deng* did not address 6 *Del. C.* § 8-112(e).  Section 8-112(e) provides:  "A creditor whose debtor is the owner of a certificated security, uncertificated security, or security entitlement is entitled to aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the certificated security, uncertificated security, or security entitlement or in satisfying the claim by means allowed at law or in equity in regard to property that cannot readily be reached by other legal process."  6 *Del. C.* § 8-112(e).  Courts in multiple jurisdictions

- 8 -

interpreting the respective state codification of UCC Article 8-112(e) have routinely held that a court can fashion an appropriate remedy to reach a certificated security pursuant to 8-112(e). *See In re Renfro*, 368 B.R. 540 (Bankr. N.D. Tex. 2007) (finding that a judgment creditor could have availed herself of section 8.112(e) to obtain "possession of and perfected an interest in the Renfro Stock"); *Access Point Fin. v. Tk Hospitality Group*, 2021 Ga. Super. LEXIS 3581, *3–4 (Super. Ct. Ga. July 16, 2021) (finding that defendants' certificates "constitute 'property that cannot readily be reached by other legal process' and that Plaintiff is entitled to aid from the Court in reaching the Defendants' Certificates pursuant to [section 8-112(e)]"). This Court should similarly fashion an appropriate remedy in favor of the Additional Judgment Creditors because the certificated security cannot readily be reached by other legal process.

### 4. If Physical Seizure is Deemed Necessary, the Court Can and Should Order PDVH to Reissue a New Certificate

The Venezuela Parties' reliance on 6 *Del. C.* § 8-112(a) also fails because the Court can, in fact, order the reissuance of a new share certificate. *See* 8 *Del. C.* §§ 168 and 8-405. The Venezuela Parties claim that the location of the certificated security is unknown thereby making physical seizure impossible, but a judgment debtor cannot simply thwart the law by misplacing a certificated security such that it can never by attached because the location is unknown. Under such a reading of 6 *Del. C.* § 8-112, debtors could easily undermine a creditor's attachment and collection efforts.

In circumstances under which a certificated security cannot be located, the court is within its power to order the reissuance of a new certificated security that can be attached. *See Kohr v. Roswell Station, Inc.*, 2017 Ga. Super. LEXIS 1354 (Ga. Super. Ct. Mar. 20, 2017) (ordering, pursuant to O.C.G.A. § 11-8-112(e), to reissue stock shares in the name of judgment creditor in partial satisfaction of judgment creditor's judgment); *Schanck v. Gayhart*, 245 So. 3d 970, 975

(Fla. Dist. Ct. App. 2018) ("We hold that section 678.1121(5) [(modeled after Section 8-112(e) of the Uniform Commercial Code)] authorizes a court to aid the creditor 'in reaching the security or in satisfying the claim by means allowed by law or in equity,' including by ordering their reissuance, regardless of whether securities cannot be seized because their location is unknown or because the debtor has attempted to move them outside the court's reach.").[3]

In sum, the Venezuela Parties cannot be permitted to use 6 *Del. C.* § 8-112(a) to prevent Additional Judgment Creditors from achieving valid attachment of the certificated security.

**II.     The Venezuela Parties' Argument that the Court May Not Issue Unconditional Writs of Attachment Rests on Circular Reasoning and Should be Rejected**

By the time the Venezuela Parties address whether the Court may issue unconditional writs of attachment, they have nothing new to offer. The Venezuela Parties' sole argument is that, although the License authorized the Court to issue writs of attachment to creditors "named as an 'Additional Judgment Creditor' by the Court," because Delaware law supposedly prohibits the Court from naming Additional Judgment Creditors, no creditor is entitled to an unconditional writ. *Id.* at 13. This circular reasoning means that, under the Venezuela Parties' distorted view of the world, the License is meaningless. *See supra* § I. A. For the reasons discussed above, the Venezuela Parties' argument fails—*i.e.*, once the Court rejects the argument that it may not recognize Additional Judgment Creditors, it necessarily must reject this argument as well.

## CONCLUSION

For the foregoing reasons, SEI requests that the Court enter an order as set forth in SEI's Opening Brief.

---

[3] Here, the Court could order the reissuance of a new certificated security while the Special Master is concurrently pursuing the sale process outlined in the Sale Order.

| | |
|---|---|
| Dated: June 7, 2023 | Respectfully submitted, |
| OF COUNSEL: | REED SMITH LLP |
| Nicole Lech<br>(*pro hac vice* admission pending)<br>REED SMITH LLP<br>599 Lexington Avenue<br>New York, NY 10022<br>(212) 521-5400<br>nlech@reedsmith.com | */s/ Brian M. Rostocki*_____<br>Brian M. Rostocki (No. 4599)<br>1201 Market Street, Suite 1500<br>Wilmington, DE 19801<br>(302) 778-7500<br>brostocki@reedsmith.com<br><br>*Counsel for Siemens Energy, Inc.* |