# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Case No. 1:17-mc-00151-LPS |

### SALE PROCESS PARTIES PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED, CONOCOPHILLIPS PETROZUATA B.V., AND CONOCOPHILLIPS GULF OF PARIA B.V.'S ANSWERING BRIEF IN RESPONSE TO THE COURT'S MAY 10 ORDER

*Of Counsel*:

Michael S. Kim
Marcus J. Green
Josef M. Klazen
Lydia L. Halpern
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200
michael.kim@kobrekim.com
marcus.green@kobrekim.com
jef.klazen@kobrekim.com
lydia.halpern@kobrekim.com

Richard G. Mason
Amy R. Wolf
Michael H. Cassel
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1000
RGMason@wlrk.com
ARWolf@wlrk.com
MHCassel@wlrk.com

Dated: June 7, 2023

ROSS ARONSTAM & MORITZ LLP
Garrett B. Moritz (Bar No. 5646)
Elizabeth M. Taylor (Bar No. 6468)
1313 North Market Street, Suite 1001
Wilmington, Delaware 19801
(302) 576-1600
gmoritz@ramllp.com
etaylor@ramllp.com

*Attorneys for Phillips Petroleum Company Venezuela Limited, ConocoPhillips Petrozuata B.V., and ConocoPhillips Gulf of Paria B.V.*

**TABLE OF CONTENTS**

Page

ARGUMENT ..................................................................................................................................1

    A.    The Court Should Add ConocoPhillips as an Additional Judgment Creditor, and Then Issue Unconditional Writs of Attachment ............................... 1

        1.    Delaware Law Does Not Require Perfected Attachments as a Condition to Being Added to the Process Leading to a Prospective Sale........................ 1

        2.    The Sale Procedures Order Contemplates the Addition of Judgments Without Perfected Attachments ................................................................... 3

        3.    Once the Court Determines ConocoPhillips to Hold Additional Judgments, the Clerk is Licensed to Perfect Attachments ............................................. 3

    B.    OFAC Does Not Present an Obstacle to Reissuing the PDVH Share Certificate ................................................................................................................ 4

    C.    Reissuance of the Certificate Better Protects the Integrity and Finality of the Sale Process Than Relying on Attachment-by-Estoppel ................................. 5

    D.    Priority Should be Determined by the Date of Conditional Writ .......................... 7

    E.    Equality of Treatment is Not the Rule ................................................................... 8

    F.    RdK Does Not Have a Valid Writ of Attachment ................................................. 9

    G.    The Alter Ego Creditors' Requests Should Remain Stayed Until the Third Circuit Rules ........................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aetna Ins. Co.* v. *Hallock*,
  73 U.S. 556 (1867) .................................................................................................... 2

*Cory* v. *Tampax Inc.*,
  1976 WL 1707 (Del. Ch. Apr. 30, 1976) ................................................................... 7

*Deng* v. *HK Xu Ding Co., Ltd.*,
  2023 WL 3318322 (Del. Super. Ct. May 8, 2023) ................................................ 6, 9

*Haim* v. *Islamic Republic of Iran*,
  902 F. Supp. 2d 71 (D.D.C. 2012) .......................................................................... 10

*Hegna* v. *Islamic Republic of Iran*,
  376 F.3d 226 (4th Cir. 2004) ..................................................................................... 2

*Midwest Bank* v. *Goldsmith*,
  467 F. Supp. 3d 242 (M.D. Pa. 2020) ........................................................................ 8

*OI European Grp. B.V.* v. *Bolivarian Republic of Venez.*,
  2022 WL 611563 (D. Del. Mar. 2, 2022) .................................................................. 7

*Refineria Di Korsou N.V.* v. *Petroleos De Venezuela S.A.*,
  Case No. 654058/2020 (N.Y. Sup. Ct. Aug. 26, 2020) ........................................ 9, 10

*Sec. & Exch. Comm'n* v. *Callahan*,
  193 F. Supp. 3d 177 (E.D.N.Y. 2016) ....................................................................... 8

*Smith* v. *Bayer Corp.*,
  564 U.S. 299 (2011) ................................................................................................... 6

*Stockley* v. *Horsey*,
  4 Houst. 603 (Del. Ct. Err. & App 1874) .................................................................. 8

**Regulations**

31 C.F.R. § 591.310 ........................................................................................................... 4

31 C.F.R. § 591.407 ........................................................................................................... 9

31 C.F.R. § 591.202 ........................................................................................................... 9

**Statutes**

28 U.S.C. § 1608 .................................................................................................................. 10

8 *Del. C.* § 168 ...................................................................................................................... 6

8 *Del. C.* § 324 ...................................................................................................................... 2

Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V., Plaintiffs in Case No. 19-mc-00342-LPS, and ConocoPhillips Gulf of Paria B.V., Plaintiff in Case No. 22-mc-00264-LPS (collectively, "ConocoPhillips"), pursuant to the Court's order of May 10, 2023 (D.I. 559) respectfully submits this answering brief.

## ARGUMENT

**A. The Court Should Add ConocoPhillips as an Additional Judgment Creditor, and Then Issue Unconditional Writs of Attachment**

The Venezuela Parties argue in circular fashion that ConocoPhillips' judgments cannot be added as Additional Judgments: they contend the Court cannot issue unconditional writs to ConocoPhillips because OFAC has only licensed writs for Additional Judgment creditors; and ConocoPhillips cannot become an Additional Judgment creditor because it does not hold an unconditional writ. *See* D.I. 571 at 5-7. Crystallex similarly argues that ConocoPhillips and other creditors must first have perfected attachments to become Additional Judgment creditors. *See* D.I. 573 at 6. They are mistaken.

The Venezuela Parties and Crystallex seek to place ConocoPhillips and others in what is effectively a *Catch 22*. But this Court is not so constrained; it is free to determine "Additional Judgments" and then, with the license OFAC granted to the Clerk, the writs can be issued to creditors with "Additional Judgments." Nothing in Delaware law or the OFAC guidance prohibits the Court from designating ConocoPhillips' judgments as "Additional Judgments," making ConocoPhillips eligible to perfect attachments as a prefatory step to a sale. That sequencing is consistent with Delaware law and gives purpose to OFAC's specific license and the terms of the Sales Procedures Order.

    1. <u>Delaware Law Does Not Require Perfected Attachments as a Condition to Being Added to the Process Leading to a Prospective Sale</u>

The Venezuela Parties and Crystallex assert that only attached judgments may be added to

1

the PDVH sale process. *See* D.I. 571 at 5-7; D.I. 573 at 6-12. But Delaware law only plausibly prohibits *consummating an order of sale* for the satisfaction of unattached judgments. The Venezuela Parties' cases merely hold that a writ of attachment is required to participate in proceeds from the eventual sale. *See, e.g., Hegna* v. *Islamic Republic of Iran,* 376 F.3d 226, 233 (4th Cir. 2004) (levy pursuant to a writ "is a critical step in the *eventual* execution of the property") (emphasis added); *Aetna Ins. Co.* v. *Hallock*, 73 U.S. 556, 559 (1867) (writ is "essential to the authority of the sheriff *to make the sale*") (emphasis added). ConocoPhillips is not asking the Court to order the PDVH share sale upon its (currently) unperfected writs of attachment.

An Additional Judgment, as expressly contemplated by the Sale Procedures Order, must be considered by the Special Master in his administration of the prefatory steps antecedent to the sale. The Sale Procedures Order is clear that a sale sufficient to meet the requirements of 8 *Del. C.* § 324 can only occur once the entire process contemplated by the Sale Procedures Order has been carried out. D.I. 481 at 8. The terms of the Sale Procedures Order ensure that there is sufficient time between the addition of judgments and the final order of sale, during which time holders of Additional Judgments may perfect attachments. The Sale Procedures Order requires that any creditor wishing to participate in the share sale must hold an Additional Judgment by the Additional Judgment Deadline, which is no later than ten days after the Launch Date. D.I. 481 ¶ 30. The Special Master has recommended September 5, 2023 for the Launch Date. D.I. 553 at 4. The earliest possible time that an order approving the sale may issue is the date of the Sale Hearing (recommended for June 1, 2024), when the Court will consider the proposed sale of the shares. *Id.* Accordingly, the Court should designate ConocoPhillips' judgments as Additional Judgments now, prior to the Additional Judgment Deadline, and allow ConocoPhillips to perfect its attachments pursuant to the license issued to the Clerk.

2. <u>The Sale Procedures Order Contemplates the Addition of Judgments Without Perfected Attachments</u>

A perfected attachment is not a condition for adding Additional Judgments under the terms of the Sale Procedures Order. The Order provides that "the Court will decide in accordance with applicable law," D.I. 481 at 25, leaving the determination of Additional Judgments to the discretion of the Court. There is no requirement in the Sale Procedures Order for a perfected lien or attachment in order for a judgment to be added as an Additional Judgment.

Indeed, ConocoPhillips (as a Sale Process Party) specifically bargained for language in the Sale Procedures Order which did not limit an Additional Judgment to only those judgments associated with perfected attachments, a position accepted in the final version of the order. Earlier drafts of the Sale Procedures Order described Additional Judgment creditors as "persons or entities holding a perfected security interest in the shares of PDVH." *See, e.g.*, Third Revised Proposed Sale Procedures Order, D.I. 411-1 at 46 (defined in the context of credit bidding procedures). ConocoPhillips requested and the Special Master agreed to remove that language from the Sale Procedures Order. The final version of the Sale Procedures Order entered by this Court defines "Attached Judgments" as the Crystallex Judgment together with any other judgments the Court considers "Additional Judgments." *See* D.I. 481 at 25. The language regarding "perfected security interest" no longer appears in the Sale Procedures Order. *See id.* at 23-25 (same provision as above). Neither the Sale Process Parties, the Special Master, nor the Court intended for perfected attachments to be a condition to designation as an Additional Judgment.

3. <u>Once the Court Determines ConocoPhillips to Hold Additional Judgments, the Clerk is Licensed to Perfect Attachments</u>

After adding ConocoPhillips' judgments as Additional Judgments, the Clerk is then authorized by the license to issue ConocoPhillips' unconditional writs of attachment. *See* D.I. 555 at 6. The order of operations for which Crystallex and the Venezuela Parties advocate would mean

3

that no conditional writ holder could ever become an Additional Judgment creditor, and that the license issued by OFAC therefore applies to zero creditors, now or any time in the future. This result would render meaningless OFAC's license, as well as the Additional Judgment procedure of the Sale Procedures Order. This is not the result either OFAC or the Special Master intended. *See* D.I. 555 at 4 (correspondence from Special Master explaining OFAC position that "the license is intended to allow the Court to have full control over who is/isn't added as an Additional Judgment Creditor").

**B. OFAC Does Not Present an Obstacle to Reissuing the PDVH Share Certificate**

As discussed in ConocoPhillips' Opening Brief, and particularly in light of recent Delaware case law, physical seizure of the PDVH share certificate is required for the perfection of attachments. *See* D.I. 574 at 12. Because PDVSA maintains that the certificates are lost, *see* D.I. 571 at 9, ConocoPhillips has requested the Court to order the reissuance of the certificate, as it is empowered to do under Delaware and federal law. *See* D.I. 574 at 14. The Venezuela Parties now argue, in the context of ConocoPhillips' two pending *fi fa* motions, that the Court may not take this action absent another specific license from OFAC. *See* Case No. 19-mc-342, D.I. 57 at 12. This argument ignores OFAC's revised guidance.

Prior to April 2023, the "making" of a certificate could have implicated enforcement of sanctions under 31 C.F.R. § 591.310. However, the April 7, 2023 DOJ Letter published with the Special Master's April 28 Supplemental Report declared that the United States Government would issue public guidance confirming that OFAC "will not take enforcement action against individuals or entities for participating in or complying with such Prefatory Steps set out in the Sales [Procedures] Order, as well as those who engage in transactions that are ordinarily incident and necessary to participation in and compliance with such steps." D.I. 553-1 at 1-2. This position was

4

reinforced by OFAC's FAQ 1123, issued on May 1, which states the same policy with respect to prefatory steps under the Sale Procedures Order.

"Prefatory Steps" is defined by OFAC as those "steps prefatory and antecedent to the consummation of the Sales Transaction" as specified in the Sale Procedures Order. D.I. 553-1 at 1. The reissuance of the share certificate is described in the Sale Procedures Order as a step that may be necessary for the consummation of the Sale Transaction (if it cannot be located "with reasonable precision"). D.I. 481 ¶ 49 ("The Special Master's recommendation may include, if appropriate, an order compelling PDVH to issue new certificates"). There can be no doubt that both the Court and the Special Master contemplated that the reissuance of the certificate, if necessary, was a prefatory step towards the consummation of the sale. OFAC, having now taken a position of non-enforcement towards such prefatory steps, expressly elected not to require a specific license to carry out such steps, including reissuance of the certificate.[1]

### C. Reissuance of the Certificate Better Protects the Integrity and Finality of the Sale Process Than Relying on Attachment-by-Estoppel

The Special Master was entrusted with the responsibility "to design a process that will result in a sale transaction that is fair, open, and maximizes the value of the PDVH Shares to be sold." D.I. 443 at 10. If the process is going to achieve that goal, the purchaser must be assured that it is actually obtaining ownership of the PDVH shares. Purchasers will discount their bids (or decline to participate at all) if they perceive a realistic possibility that the sale could later be ruled to have been defective. ConocoPhillips believes that the best way to ensure maximization of value from the sale process is to resolve any uncertainty with respect to the shares now, in order to

---

[1] To the extent that there is any question as to OFAC's position regarding the re-issuance of a share certificate, and ConocoPhillips believes there is not, we respectfully submit that the Court could order the Special Master to seek further guidance from OFAC regarding this narrow issue, which ConocoPhillips believes would readily confirm the authority for the re-issuance.

5

provide potential bidders with the assurance that they will be able to obtain clear title.

In light of *Deng*, moving forward with selling the PDVH shares based solely on an attachment-by-estoppel, or on arguments regarding the effect of service of writs in the absence of a certificate, creates an unnecessary and easily avoided risk to the integrity and finality of the sale process. *See Deng* v. *HK Xu Ding Co., Ltd.*, 2023 WL 3318322 (Del. Super. Ct. May 8, 2023). One of the core principles of both collateral and judicial estoppel is that neither one, absent highly unusual circumstances, binds persons who were not parties to the prior proceeding.[2] The Venezuela Parties are collaterally and judicially estopped. But the validity and priority of a writ of attachment is not merely a two-party issue. The entire purpose of having a valid and perfected writ is that it creates priority *as against other creditors*. Without reissuance, other creditors could have a credible argument that Crystallex's claimed first priority is invalid as to them. And any holding that Crystallex's attachment is defective could make purchasers wary. As stated in ConocoPhillips' Opening Brief, the prudent approach is to fix the problem now, in a way that prevents anyone from challenging it later. While the Sale Procedures Order required this issue to be dealt with prior to closing, *Deng* altered the calculus, making it paramount that the process of reissuing the share certificate begin immediately. ConocoPhillips proposes a method that would result in the perfection of attachments in an unquestionably valid manner. D.I. 574 at 12.

The Venezuela Parties argue that a person seeking reissuance of shares must provide a bond to protect the corporation reissuing the certificate. This is a matter reserved for the Court's discretion. *See* 8 *Del. C.* § 168(b). The purpose of that provision is to protect PDVH against the prospect that there may be a good-faith purchaser of the original (purportedly lost or destroyed) certificate that could later make claims against PDVH. *See Cory* v. *Tampax Inc.*, 1976 WL 1707,

---

[2] *See Smith* v. *Bayer Corp.*, 564 U.S. 299, 312 (2011).

at *6 (Del. Ch. Apr. 30, 1976). Given the extensive public record in these proceedings, there is no realistic prospect that there could ever be a good-faith purchaser of the original certificate who could in the future make claims against PDVH, because a good-faith purchaser must both lack notice of adverse claims and pay value reasonably commensurate with the value of the shares. Accordingly, there is no need for a bond here; or a bond in a nominal amount will suffice.

### D. Priority Should be Determined by the Date of Conditional Writ

The alter ego creditors suggest that the Court should set priority based on the date of filing of motions for writs of attachment or the date of registration of judgment. They cite no precedent for these proposals and they should be rejected. Determining priority based on the date of registration of judgments is contrary to Delaware law and makes no sense as to the alter ego creditors, since at the time of registration, by definition, they held judgments against the Republic only. Indeed, the alter ego creditors were not in a position even to properly request a writ of attachment on the shares until March 2023. To the extent they argue otherwise, their arguments largely mirror the arguments that the Court already rejected. *See OI European Grp. B.V.* v. *Bolivarian Republic of Venez.*, 2022 WL 611563, *6 (D. Del. Mar. 2, 2022) ("Notably, the judgment creditors admit that the requested relief will not establish priority in the PDVH Shares").

The alter ego creditors also provide no authority for the proposition that making a motion for a writ of attachment (much less a motion that is subsequently denied, in the case of OIEG), accords priority as of that date. As ConocoPhillips explained in its Opening Brief, priority should be determined in a manner that comes closest to the results that would have occurred absent the OFAC sanctions. Given Delaware's first-in-time-rule, a creditor having reached the furthest point possible in the process before being precluded by an obstacle entirely outside Delaware law should be respected. A speculative motion for writ of attachment that would have been subject to delay even without any such extraordinary obstacle should not.

7

### E. Equality of Treatment is Not the Rule

Gold Reserve argues that all creditors with conditional writs of attachment should be treated *pro rata,* on the theory that their liens will arise simultaneously "when the sanctions and stay lift." D.I. 572 at 10. Of course, it is impossible to predict when the stay will lift, placing the alter ego creditors in a far different position than the direct PDVSA creditors. Even if the stay were to be lifted, however, Gold Reserve's only justification for equal treatment is the equitable maxim that "equity is equality." But Delaware statutes create a policy that first-in-time is first-in-right. Delaware courts have employed equity to vindicate that policy, not to provide a windfall to later-in-time creditors. *See* D.I. 574 at 11 (citing *Stockley* v. *Horsey*, 4 Houst. 603, 608 (Del. Ct. Err. & App. 1874)). Gold Reserve has cited no Delaware authority to the contrary.

Gold Reserve also cites authority for *pro rata* treatment from federal equity receivership cases. Equity receivership precedent is not applicable, as the Court chose not to appoint a receiver. Instead, the Court is conducting an execution sale under Delaware law. *See* D.I. 572 at 9-10 (citing *Sec. & Exch. Comm'n* v. *Callahan*, 193 F. Supp. 3d 177 (E.D.N.Y. 2016) (SEC receivership); *Midwest Bank* v. *Goldsmith*, 467 F. Supp. 3d 242, 248 (M.D. Pa. 2020) (prejudgment receivership)). Nor is out-of-state precedent addressing unrelated situations persuasive. *See id.* at 10.[3] It may make sense to treat *alter ego* creditors (other than Crystallex) *pro rata* among them, but there is simply no basis to argue for *pro rata* treatment with prior, direct PDVSA judgment creditors.

---

[3] Siemens, which is a direct-PDVSA creditor, similarly seeks *pro rata* treatment in the event that the proceeds are insufficient to pay all of the direct PDVSA creditors in full after payment of Crystallex. Siemens' request, like Gold Reserve's, fails to recognize that ConocoPhillips took all necessary actions that it lawfully could earlier than Siemens, and it thus runs counter to Delaware's first-in-time first-in-right policy.

### F. RdK Does Not Have a Valid Writ of Attachment

Refineria di Korsou N.V. ("RdK") claims it possesses a perfected writ of *fieri facias* issued by the Delaware Superior Court against the PDVH shares, which it represents has been successfully executed on the shares. *See* D.I. 564 at 5. RdK's claim is deficient in a number of ways and it is not entitled to priority.

*First*, the issuance and service of RdK's writ appears to have been in violation of OFAC sanctions, since RdK has provided no evidence that either it or the Delaware Superior Court first obtained a license from OFAC. *See* 31 C.F.R. § 591.407 and § 591.202. This Court has long held that the issuance and service of an unconditional writ of attachment is prohibited under the current sanctions regime absent a license. *See e.g.,* Case No. 19-mc-342, D.I. 42 at 12-13. While OFAC issued a license on March 23, 2023 (publicly docketed on May 4, 2023), OFAC granted that license *solely* to the Clerk of the United States District Court for the District of Delaware, and authorized only "the issuance and service of a writ of attachment *fieri facias* for any party named an 'Additional Judgment Creditor'" under the Sale Procedures Order. D.I. 555 at 6. This license plainly does not apply to the issuance and service of a writ by the Delaware Superior Court, nor to the issuance of a writ in favor of RdK, which has not been named an Additional Judgment creditor. As this Court has also held, any purported liens on blocked property without the requisite license will be deemed null and void. *See* Case No. 19-mc-342, D.I. 42 at 7; *see also* 31 C.F.R. § 591.202. Consequently, RdK's writ should be disregarded for purposes of determining priority.

*Second*, RdK presumably failed to physically seize the PDVH stock certificate, as required under Delaware law. *See* D.I. 574 at 13; *Deng*, 2023 WL 3318322, at *1. As discussed above, the Venezuela Parties have represented that the certificate is lost. It thus appears impossible for RdK to have seized the share certificate, rendering the attachment it purports to have invalid.

*Third*, there may be serious deficiencies with RdK's judgment under the FSIA. For

9

example, there are questions about subject matter jurisdiction in the rendering court, RdK may have failed to comply with the FSIA in effecting service on PDVSA, and RdK may have been required, but failed to obtain a prerequisite order under 28 U.S.C. § 1610(c). *See Refineria Di Korsou N.V.* v. *Petroleos De Venezuela S.A.*, No. 654058/2020 (NY. Sup. Ct. Aug. 26, 2020), D.I. 2 (underlying agreement providing for jurisdiction in federal courts); *Haim* v. *Islamic Republic of Iran*, 902 F. Supp. 2d 71, 73 (FSIA requires service of default judgment on foreign instrumentality by specific means provided by 28 U.S.C. § 1608); *Refineria Di Korsou*, No. 654058/2020 (N.Y. Sup. Ct. Dec. 22, 2020) (service was by email).[4]

### G. The Alter Ego Creditors' Requests Should Remain Stayed Until the Third Circuit Rules

As of the date of this filing, the alter ego creditors' cases remain administratively stayed by the Third Circuit. Contrary to the alter ego creditors' assertions, it is impossible to predict when, if ever, the administrative stay will be lifted or when or how the Third Circuit will rule on the merits of the appeals. The Third Circuit gave no indication with respect to either of these issues during oral argument on June 1. It is therefore not possible for the alter ego creditors' judgments to be added now as Additional Judgments. The only way for those judgments get on the same track as the direct PDVSA judgments is to hold up the Launch on their behalf, but there is no reason why earlier–in-time creditors should be prejudiced by such an indefinite delay. Only unstayed, final judgments against PDVSA should be added as Additional Judgments at this time.

---

[4] ConocoPhillips respectfully reserves the right to further brief these issues as necessary given the unanticipated appearance of RdK in these proceedings and the lack of a complete record relating to RdK's contentions.

*Of Counsel*:

Michael S. Kim
Marcus J. Green
Josef M. Klazen
Lydia L. Halpern
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200
michael.kim@kobrekim.com
marcus.green@kobrekim.com
jef.klazen@kobrekim.com
lydia.halpern@kobrekim.com

Richard G. Mason
Amy R. Wolf
Michael H. Cassel
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1000
RGMason@wlrk.com
ARWolf@wlrk.com
MHCassel@wlrk.com

Dated: June 7, 2023

Respectfully submitted,

ROSS ARONSTAM & MORITZ LLP

*/s/ Garrett B. Moritz*
Garrett B. Moritz (Bar No. 5646)
Elizabeth M. Taylor (Bar No. 6468)
1313 North Market Street, Suite 1001
Wilmington, Delaware 19801
(302) 576-1600
gmoritz@ramllp.com
etaylor@ramllp.com

*Attorneys for Phillips Petroleum Company Venezuela Limited, ConocoPhillips Petrozuata B.V., and ConocoPhillips Gulf of Paria B.V.*