# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACL1 INVESTMENTS LTD., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Misc. No. 21-46-LPS |
| CRYSTALLEX INTERNATIONAL CORP.,<br><br>    Plaintiff,<br><br>    v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Misc. No. 17-151-LPS |

**REPLY BRIEF OF ACL1 INVESTMENTS LTD., ACL2 INVESTMENTS LTD., AND LDO (CAYMAN) XVIII LTD. PURSUANT TO MAY 10 SCHEDULING ORDER**

*Of counsel*:

Joshua S. Bolian (*pro hac vice*)
Jared A. Hagler (*pro hac vice*)
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee 37203
(615) 320-3700
jbolian@rjfirm.com
jhagler@rjfirm.com

Dated: June 14, 2023

ASHBY & GEDDES
Marie M. Degnan (#5602)
Randall J. Teti (#6334)
500 Delaware Ave., 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
mdegnan@ashbygeddes.com
rteti@ashbygeddes.com

*Attorneys for ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd.*

In its order of May 10, 2023,[1] the Court invited the parties' views on *which* judgments to regard as "Additional Judgments" and *whether* to direct issuance and service of orders of attachment. The answers to those questions depend on *when* the Court would take those actions. To address more fully when the Court should take those actions, and to respond to the Special Master's position regarding Transaction Expenses, the plaintiffs in Misc. No. 21-46 (ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd.; together, "ACL") respectfully submit this reply brief.

## Timing of Issuance and Service of Orders of Attachment

The Court should direct the issuance and service of unconditional orders of attachment only after the Court of Appeals lifts its temporary stay of the six "alter ego" actions (the "Temporary Stay"). Lifting of the Temporary Stay will ensure that the orders can be issued and served in a manner consistent with the priority of the judgments. Were the Temporary Stay not lifted first, issuance and service would be available to unstayed creditors before they would be available to stayed creditors, even if that differs from the order of priority that the Court selects.

Some parties respond that issuance and service should occur before the Temporary Stay is lifted in order to avoid delay. *E.g.*, Crystallex Answering Br. (D.I. 590) at 5; Red Tree Answering Br. (D.I. 597) at 2. This objection is not persuasive. Directing issuance and service only after lifting of the Temporary Stay is very unlikely to delay the sale process.

Directing issuance and service only after lifting of the Temporary Stay would not delay the Preparation Launch Date or the Launch Date. The orders of attachment need not be issued or served before those Dates. Rather, as ConocoPhillips explains, "[t]he terms of the Sale Procedures Order

---

[1] D.I. 559. Unless otherwise noted, "D.I." refers to docket item numbers in *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, Misc. No. 17-151 (D. Del.). Capitalized terms not defined herein have the meanings ascribed to them in the Sale Procedures Order (D.I. 481).

ensure that there is sufficient time between the addition of judgments"—which may occur after the Launch Date (D.I. 481 ¶ 30)—"and the final order of sale, during which time holders of Additional Judgments may perfect attachments." ConocoPhillips Answering Br. (D.I. 595) at 2. Similarly, Crystallex recognizes that "proceedings regarding other orders of attachment should proceed in parallel to the expeditious Sale Process timeline contemplated in the Court's Sale Procedures Order and the Special Master's recommendations." Crystallex Opening Br. (D.I. 573) at 13. In short, the sale process may begin according to the Special Master's proposed schedule even if issuance and service of orders of attachment await the lifting of the Temporary Stay.

Indeed, it may be necessary to direct issuance and service of the attachment orders after the Preparation Launch Date and the Launch Date. Crystallex and ConocoPhillips both seek reissuance of the PDVH share certificate. And it is not clear that reissuance could be completed before the Preparation Launch Date and Launch Date that the Special Master has requested. *See* ConocoPhillips Answering Br. (D.I. 595) at 5 n.1 (noting that reissuance could entail "further guidance from OFAC"). Yet, as both Crystallex and ConocoPhillips recognize, the certificate must be "reissued *before* confirming any additional attachments." Crystallex Answering Br. (D.I. 590) at 1 (emphasis added); *accord* ConocoPhillips Opening Br. (D.I. 574) at 8.

After the Launch Date, at least 270 days are likely to pass before the sale process is completed. Sale Procedures Order (D.I. 481) ¶ 2. This period provides ample time for the Temporary Stay to be lifted, as administrative stays like the Temporary Stay typically last no more than a month or two. *See* Rachel Bayefsky, *Administrative Stays: Power and Procedure*, 97 Notre Dame L. Rev. 1941, 1945, 1952-53, 1982 (2022). Orders of attachment could then be issued and served.

**Timing of Determining Which Judgments To Regard as Additional Judgments**

As to when the Court should determine which judgments to regard as Additional Judgments, the Court may make that determination now.

It is possible to determine that judgments qualify as Additional Judgments even if they are subject to the Temporary Stay. Crystallex suggests otherwise due to its contention that attachment must be perfected before a judgment may be regarded as an Additional Judgment. Crystallex Answering Br. (D.I. 590) at 4. That contention is not sound, as explained elsewhere. *E.g.*, ConocoPhillips Answering Br. (D.I. 595) at 1-4. ConocoPhillips asserts that it is "not possible for the alter ego creditors' judgments to be added now as Additional Judgments" and that adding such judgments would "hold up the Launch." *Id.* at 11. No basis is given for that assertion.

While the Court *can* determine that judgments subject to the Temporary Stay qualify as Additional Judgments, the Venezuela Parties and Siemens Energy contend that the Court *should not* do so, on prudential grounds. *E.g.*, Venezuela Answering Br. (D.I. 589) at 10. That prudential argument should not deter the Court from acting, for at least three reasons.

First, it appears likely that the Court of Appeals will resolve the "alter ego" appeals in the near future. *See* Gold Reserve Answering Br. (D.I. 594) at 5-6. A motions panel expedited the appeals sua sponte and specifically requested briefing on "the pertinent deadlines under the Sale Procedures Order." Order, *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, No. 23-1647 (3d Cir. May 10, 2023). The judges on the motions panel were also on the merits panel,[2] which heard argument on June 1. Due to the Court of Appeals' promptness, Crystallex agrees that "it is unlikely that any delay would be necessary to allow th[is] Court to consider the Third Circuit's ruling before

---

[2] Judges Matey and Freeman comprised the motions panel. Order, *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, No. 23-1647 (3d Cir. May 5, 2023). Judges Bibas, Matey, and Freeman comprised the merits panel.

3

the Additional Judgment Deadline." Crystallex Reply to Objections (D.I. 582) at 6.

Second, regarding "alter ego" creditors' judgments as Additional Judgments causes no party any harm. Designation as an Additional Judgment would not entitle a creditor to receive proceeds from the sale. Rather, "recognition of Additional Judgments is merely a prefatory step toward an eventual sale." Siemens Answering Br. (D.I. 591) at 3; *accord* ConocoPhillips Answering Br. (D.I. 595) at 2. The designation would merely preserve the ability of the Special Master to solicit bids that would account for the Additional Judgments. Perhaps for this reason, the Special Master states that determining which judgments are Additional Judgments "do[es] not become relevant until well after the Launch Date." Special Master Resp. (D.I. 593) ¶ 6.

Third, the modest risk that the marketing process could require adjustment if the Court of Appeals reverses this Court's "alter ego" decision (*see* Venezuela Answering Br. (D.I. 589) at 10) is the lesser evil. The greater evil would be to exclude the "alter ego" creditors from the pending sale process, only to prompt yet another resource-intensive sale process after (and if) those creditors prevail on appeal. As the Special Master observes, "in the name of judicial economy, the Court and the Special Master should endeavor to include in a Sale Transaction as many judgments against the Venezuela Parties as possible in a manner that does not cause any further delay." Special Master Resp. (D.I. 593) ¶ 2.

### Additional Judgment Creditors' Shares of Transaction Expenses

The Special Master suggests that, to have a judgment regarded as an Additional Judgment, a creditor must agree to share in Transaction Expenses "on a per capita basis (*i.e.*, an equal share, not a pro rata share)." Special Master Resp. (D.I. 593) ¶ 8. This requirement does not appear in the Sale Procedures Order, and ACL respectfully submits that it would be inequitable.

The Sale Procedures Order does not prescribe the shares of Transaction Expenses to be

4

paid by holders of Additional Judgments. Rather, it requires any such holder "to reimburse its share of the Transaction Expenses pursuant to the May Order (as if such Additional Judgment Creditor were a Sale Process Party) and *this Order (for purposes of determining such Additional Judgment Creditor's share of the reimbursement obligation)*." D.I. 481 ¶ 47 (emphasis added). The determination of creditors' shares is to be made only after their judgments are added: "in the event any Additional Judgment Creditor becomes obligated to pay a portion of the Transaction Expenses pursuant to this Order, the Special Master shall meet and confer with the Sale Process Parties to determine such Additional Judgment Creditor's share of the reimbursement obligation." *Id.* ¶ 15.[3]

      Under the circumstances, ACL submits that Additional Judgment Creditors' shares of the Transaction Expenses should be pro rata (in proportion to judgment amount) rather than per capita (equal regardless of judgment amount). The Special Master's contrary view appears to be based on the Court's order denying Red Tree's motion to become a Sale Process Party. *See* Memorandum Order (D.I. 507) at 5-6. That order does not apply directly to holders of Additional Judgments. A Sale Process Party has rights in the sale process and a relationship to the Special Master that a holder of an Additional Judgment would lack. *E.g.*, Sale Procedures Order (D.I. 481) ¶¶ E, 3, 4, 10, 41; *see also* Memorandum Order (D.I. 275) at 5 (Intervenor Bondholders would owe a per capita share if they "wish to be included in the discussions with the Special Master"). Holders of Additional Judgments would merely "obtain the benefit of [the] lawsuit"; therefore, the more equitable approach is to "spread[] fees proportionately among those benefited by the suit." *Cf. Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

---

[3] The passages quoted from paragraphs 15 and 47 were added to the Sale Procedures Order at the same time. D.I. 472-1 Ex. B at 19, 37. While the Special Master may propose how to allocate shares, the ultimate allocation is subject to the Court's discretion. *E.g.*, *Jarzyna v. Home Props., L.P.*, 783 F. App'x 223, 227 (3d Cir. 2019) (citing Fed. R. Civ. P. 53(g)(3)).

5

Dated: June 14, 2023

*Of counsel*:

Joshua S. Bolian (*pro hac vice*)
Jared A. Hagler (*pro hac vice*)
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee 37203
(615) 320-3700
jbolian@rjfirm.com
jhagler@rjfirm.com

Respectfully submitted.

ASHBY & GEDDES

/s/ Marie M. Degnan
_____
Marie M. Degnan (#5602)
Randall J. Teti (#6334)
500 Delaware Ave., 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
mdegnan@ashbygeddes.com
rteti@ashbygeddes.com

*Attorneys for ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd.*