IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 17-151-LPS |

**GOLD RESERVE INC.'S REPLY BRIEF ADDRESSING
ISSUES RAISED IN THE COURT'S MAY 10, 2023 MEMORANDUM ORDER**

| | |
|---|---|
| *OF COUNSEL:* <br><br> Matthew H. Kirtland (*pro hac vice*) <br> NORTON ROSE FULBRIGHT US LLP <br> 799 9th Street NW, Suite 1000 <br> Washington, DC 20001 <br> Telephone: 202-662-0200 <br> matthew.kirtland@nortonrosefulbright.com <br><br> Katherine G. Connolly (*pro hac vice*) <br> NORTON ROSE FULBRIGHT US LLP <br> 555 California Street, Suite 3300 <br> San Francisco, CA 94101 <br> Telephone: 628-231-6816 <br> katie.connolly@nortonrosefulbright.com <br><br><br> Dated: June 14, 2023 | Kevin J. Mangan (#3810) <br> Matthew P. Ward (#4471) <br> Stephanie S. Riley (#5803) <br> WOMBLE BOND DICKINSON (US) LLP <br> 1313 N. Market St., Suite 1200 <br> Wilmington, DE 19801 <br> Telephone: 302-252-4320 <br> kevin.mangan@wbd-us.com <br> matthew.ward@wbd-us.com <br> stephanie.riley@wbd-us.com <br><br> *Attorneys for Gold Reserve Inc.* |

# **TABLE OF CONTENTS**

A. There Is No Basis for Treating the Alter Ego Creditors Differently Because of the Third Circuit's Temporary Stay ..................................................................................1

B. Gold Reserve Does Not Seek to Exclude Any Creditors from the Sale Process .................2

C. Priority Amongst the Pre-May 4 Group Should Be Established Consistent with the Terms of the Conditional Writ Orders Issued by the Court ..........................................2

D. The Alternative Priority Arguments Made by Other Creditors Are Inconsistent with Delaware Law and/or Less Equitable ..........................................................................3

E. It Is Not Necessary to Reissue the PDVH Shares ................................................................4

F. Payment of Transactional Expenses ....................................................................................5

Conclusion ........................................................................................................................................5

# TABLE OF AUTHORITIES

**Cases**

*Crystallex v. Bolivarian Republic of Venezuela,*
  Case No. 17-mc-151 (D. Del.) .................................................................................................. 1

**Statutes**

10 Del. C. § 5081 ........................................................................................................................... 3

10 Del. C. § 5082 ........................................................................................................................... 3

28 U.S.C. § 1963 ............................................................................................................................ 3

6 Del. C. § 8-112(a) ....................................................................................................................... 4

6 Del. C. § 8-112(e) ....................................................................................................................... 4

8 Del. C. § 168(a) ........................................................................................................................... 4

**Rules**

Fed. R. Civ. P. 70(a) ...................................................................................................................... 4

Gold Reserve Inc. ("Gold Reserve") respectfully submits this Reply Brief in respect of the three questions posed by the Court in its May 10, 2023 Order and in reply to the Answering Briefs filed by the other interested parties.[1]

### A. There Is No Basis for Treating the Alter Ego Creditors Differently Because of the Third Circuit's Temporary Stay

Some creditors argue that the Third Circuit's temporary stay, insofar as it delays issuance, delivery and service of the writs of the alter ego creditors, permits non-stayed creditors to jump ahead in priority above Gold Reserve and the other creditors whose actions are stayed.[2] But, as the Special Master correctly notes, "The answers to the Court's current questions do not become relevant until well after the [proposed September 5] Launch Date."[3] As such, and given that the Third Circuit has granted expedited consideration of the subject appeal, see Appeal No. 23-1652 at D.I. 24, every indication is that the temporary stay will dissolve well before there is any possibility of delay in the sale proceedings or distribution of sale proceeds to creditors. In addition, there is no impediment to this Court ruling now (a) that Gold Reserve be added to the sales process as an Additional Judgment creditor (see Gold Reserve Answering Br., D.I. 594 at 2), (b) that the pre-May 4 Group creditors' writs are of equal priority and superior to the post-May 4 creditors' writs, and, (c) subject to termination of the stay, (i) directing the clerk to issue unconditional writs, (ii) directing the parties to deliver the writs to the U.S. Marshals, and (iii) directing the U.S. Marshals to serve the writs, such that their priority is maintained. Thus, there is no valid basis for the argument that the existence of the temporary stay should impact the Court's priority determinations.

---

[1] Due to page limitations on this Reply Brief, Gold Reserve does not address all arguments in all Answering Briefs, which should not be interpreted as Gold Reserve's agreement with such arguments. Unless otherwise indicated, docket references herein are to *Crystallex v. Bolivarian Republic of Venezuela*, Case No. 17-mc-151 (D. Del.). Abbreviations are those referenced in Gold Reserve's Opening and Answering briefs.
[2] *See, e.g.*, Red Tree Answering Brief, D.I. 597 at 2.
[3] *Id.* ¶ 6.

B. **Gold Reserve Does Not Seek to Exclude Any Creditors from the Sale Process**

Gold Reserve contemplates that each Additional Judgment creditor should be included in the sale process according to their priority as determined by applicable law. Certain creditors argue that Gold Reserve's distinction between Pre-May 4 Group creditors and Post-May 4 Group creditors should be rejected because it seeks to exclude certain creditors from the sale. *See, e.g.*, Contrarian Answering Br., D.I. 588 at 2. But this fundamentally misunderstands Gold Reserve's position, which is as follows: (1) the Pre-May 4 Group creditors should have equal priority because their pre-existing writs become effective simultaneously; and (2) any other Additional Judgment Creditors who obtain writs after May 4, 2023 should, consistent with Delaware law, establish priority among themselves in the order that each obtains a writ and delivers such writ to the U.S. Marshals. *See* Gold Reserve Opening Brief at 8-11.

C. **Priority Amongst the Pre-May 4 Group Should Be Established Consistent with the Terms of the Conditional Writ Orders Issued by the Court**

Per Gold Reserve's Opening and Answering Briefs, there are essentially two types of creditors who potentially can qualify as Additional Judgment Creditors: those with writs prior to the OFAC License (issued May 1 and docketed May 4, 2023)[4] and those without writs as of that date.[5] Each of the Pre-May 4 Group procured orders with identical language that made their writs conditioned on the same, simultaneous event: the Court's receipt of the OFAC License. *See* Gold Reserve Answering Brief at D.I. 594 at 7. The result of this is that all of the Pre-May 4 Group, as expected, have simultaneous writs. As such, each of the Pre-May 4 Group creditors should receive

---

[4] The creditors with conditional writs prior to the OFAC License are Gold Reserve, 22-453; Phillips, 19-342; Red Tree, 22-68 and 22-69; ConocoPhillips, 22-264; SEI, 22-347; OIEG, 19-290; Huntington Ingalls, 20-257; ACL, 21-46; Rusoro, 21-481; and Koch, 22-156.

[5] Tidewater, 19-79; Contrarian, 21-18, 22-131, and 22-263; Valores Mundiales, 23-298; Banco San Juan, Case No. 1:23-cv-01263 (D.D.C.); and Refineria Di Korsou N.V. ("RDK"), Case No. N23J-01330 (Del. Sup.). Gold Reserve joins the arguments of ACL and Red Tree that RDK does not have a valid attachment and is not entitled to priority. ACL Answering Br., D.I. 585 at 6-8; Red Tree Answering Br., D.I. 597 at 7-8.

equal treatment.

### D. The Alternative Priority Arguments Made by Other Creditors Are Inconsistent with Delaware Law and/or Less Equitable

The alternative "first-in-time" arguments made by certain of the other judgment creditors are either not supported by Delaware law or are less equitable than Gold Reserve's position.[6] *First*, the "first-in-time" priority rules under Delaware law are triggered by the delivery of a writ to the officer. *See* 10 Del. C. §§ 5081. This has not occurred, and all agree that there should be no race to deliver writs to the Marshals. Since all the Pre-May 4 Group conditional writs were made effective at the same time (May 1 or May 4 – the distinction is immaterial) and would have been delivered simultaneously to the U.S. Marshals but for the Third Circuit's temporary stay, it would be most equitable (and consistent with the Court's orders and the parties' expectations) for each holder of a conditional writ in the Pre-May 4 Group to receive equal priority with pro rata treatment. *Second*, the argument that the Court should grant priority based on the date of registration of judgment has no basis in the law.[7] Simply ***registering*** a judgment with the Court under 28 U.S.C. § 1963 does not create priority; delivery of the writ creates priority. *Third*, and similarly, merely filing a ***motion*** for a writ of attachment does not effect any kind of attachment[8] and has therefore no basis for establishing priority in Delaware law. *Fourth*, the argument that the Court should grant priority based on the date that a conditional writ was ordered,[9] ignores that all of the creditors in the Pre-May 4 Group agreed in their proposed orders that the issuance of such writs – which is the operative date for priority – would occur simultaneously, on the date on which an OFAC license was received. As such, once the Third Circuit stay lifts, all of the conditional

---

[6] ACL Answering Br., D.I. 585 at 5; Phillips Answering Br., D.I. 595 at 8.
[7] Tidewater Answering Br., Case No. 19-mc-00079-LPS, D.I. 38 at 6-7.
[8] ACL Answering Br., D.I. 585 at 4; Koch Answering Br., D.I. 592 at 9; *see also* HI Answering Br., D.I. 596 at 9.
[9] *See, e.g.*, Phillips Answering Br., D.I. 595 at 7.

writs held by the Pre-May 4 Group creditors should be deemed effective and delivered at the same time, and each holder of those conditional writs should therefore receive equal priority and pro rata treatment.

Applying similar principles, there is no question that any creditor who may be granted a writ of attachment after the issuance of the OFAC License should be subordinate in priority to the Pre-May 4 Group creditors, because their writs will be issued, if at all, subsequent to the existing conditional writs.[10] With no sanctions in place, these creditors can follow the normal path of seeking, obtaining and issuing writs on an unconditional basis, and they can establish priority in the normal course under Delaware law.

E. **It Is Not Necessary to Reissue the PDVH Shares**

Some parties have argued that the Court should order reissuance of the PDVH Shares pursuant to 6 Del. C. § 8-112(e) under the theory that the PDVH shares are lost, stolen or destroyed. *See, e.g.*, Phillips Answering Br., D.I. 595 at 5-7. This is to counter the argument of the Venezuela Parties that actual seizure of certificated shares is required under 6 Del. C. § 8-112(a). Venezuela Parties Answering Br., D.I. 589 at 3-8. While Gold Reserve agrees that this Court ***can*** order reissuance of the shares, this remedy is unnecessary because the Court has constructively seized the shares already and holds them in *custodia legis* and made them subject to the Sale Procedures Order. Gold Reserve Answering Br., D.I. 594 at 2-4.[11]

---

[10] Crystallex recognizes this subordination, while making a slightly different argument: "Similarly, this Court should not treat Contrarian, Tidewater, Valores, Banco San Juan Internacional, or RDK as Additional Judgment Creditors because they lack any valid attachments and are nowhere close to obtaining them. This Court should not jeopardize or delay Crystallex's present right to execution in order to advance unripe claims of other judgment creditors." Crystallex Answering Br., D.I. 590 at 3.

[11] The Special Master has expressed no concern regarding the physical share certificate (or lack thereof).

### F.     <u>Payment of Transactional Expenses</u>

The Special Master, in his Answering Brief, addressed an issue on which the Court did not invite briefing, i.e., whether and on what terms any Additional Judgment Creditor should be required to pay a share of the Transaction Expenses.[12] Gold Reserve submits that this issue is premature until (a) the Third Circuit rules on the pending PDVSA/Venezuela appeal of the alter ego ruling; (b) the Court determines whether and when any judgments will be added as Additional Judgments, and (c) the Court rules on priority. In the interim, and because Gold Reserve understands that its present briefing must be limited to only the three issues on which the Court has invited submissions, Gold Reserve reserves its rights in respect of the argument volunteered by the Special Master.

## CONCLUSION

For these reasons, and as set forth in its Opening and Answering Briefs, Gold Reserve respectfully requests that the Court enter an Order that:

(a) Additional Judgments should include the Pre-May 4 Group;

(b) each conditional writ of attachment issued to the Pre-May 4 Group be made unconditional and issued by the Clerk and be allowed to be served by the U.S. Marshals if and when the Third Circuit lifts the temporary administrative stay;

(c) each of the Pre-May 4 Group have equal priority in the PDVH Shares sales proceeds; and

(d) the Post-May 4 Group be ranked in priority after the Pre-May 4 Group priority in the order that each Post-May 4 Group judgment creditor obtains an order allowing its writ and delivers such writ to the Marshals.

---

[12] Special Master Answering Br., D.I. 593 ¶ 3.

| | |
|---|---|
| *OF COUNSEL:*<br><br>Matthew H. Kirtland (*pro hac vice*)<br>NORTON ROSE FULBRIGHT US LLP<br>799 9th Street NW, Suite 1000<br>Washington, DC 20001<br>Telephone: 202-662-0200<br>matthew.kirtland@nortonrosefulbright.com<br><br>Katherine G. Connolly (*pro hac vice*)<br>NORTON ROSE FULBRIGHT US LLP<br>555 California Street, Suite 3300<br>San Francisco, CA 94101<br>Telephone: 628-231-6816<br>katie.connolly@nortonrosefulbright.com<br><br><br>Dated: June 14, 2023 | **WOMBLE BOND DICKINSON (US) LLP**<br><br>By: */s/ Kevin J. Mangan*<br>Kevin J. Mangan (#3810)<br>Matthew P. Ward (#4471)<br>Stephanie S. Riley (#5803)<br>1313 N. Market St., Suite 1200<br>Wilmington, DE 19801<br>Telephone: 302-252-4320<br>kevin.mangan@wbd-us.com<br>matthew.ward@wbd-us.com<br>stephanie.riley@wbd-us.com<br><br><br>*Attorneys for Gold Reserve Inc.* |

6