IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>            Plaintiff,<br><br>   v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>            Defendant. | C.A. No. 17-151-LPS |

**CRYSTALLEX INTERNATIONAL CORPORATION'S REPLY BRIEF
PURSUANT TO MAY 10, 2023 SCHEDULING ORDER**

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Miguel A. Estrada
Lucas C. Townsend
Adam M. Smith
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Tel: (202) 955-8500
Fax: (202) 467-0539

Dated: June 14, 2023

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Tel:  (302) 651-7700
Fax:  (302) 651-7701

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ...................................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 1

ARGUMENT .................................................................................................................................. 1

    I.    Only Judgments For Which There Is An Attachment Of The PDVH Shares Should Be Regarded As "Additional Judgments" Under The Sale Procedures Order ................................................................................................. 1

    II.   Any Attachment Proceedings Should Not Delay Crystallex's Sale Process ......... 3

    III.  The Court Should Order Reissuance Of The Share Certificate ............................ 4

CONCLUSION ............................................................................................................................... 5

## TABLE OF AUTHORITIES

Page(s)

### Cases

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
   2022 WL 611563 (D. Del. Mar. 2, 2022) ...................................................................................2

### Statutes

6 *Del. C.* § 8-112(d) ......................................................................................................................4

6 *Del. C.* § 8-112(e) ......................................................................................................................5

8 *Del. C.* § 168(b) .........................................................................................................................5

8 *Del. C.* § 324(a) .........................................................................................................................1

### Rules

Federal Rule of Civil Procedure 69(a) ...........................................................................................1

Federal Rule of Civil Procedure 70(a) ...........................................................................................5

### Regulations

31 C.F.R. § 591.310 .......................................................................................................................5

**NATURE AND STAGE OF THE PROCEEDINGS**

The many creditors' briefs submitted on May 24 and June 7 largely support Crystallex's arguments. To the extent they disagree, they fail to justify granting "Additional Judgment" status to creditors who do not perfect their attachments before the Additional Judgment Deadline, or delaying that deadline (or the launch) to permit additional attachments. Meanwhile, there is no merit to Venezuela's continued effort to rehash its argument that Delaware law requires seizure of the PDVH share certificate. But rather than engage, this Court should simply order reissuance of the certificate. Venezuela's argument that this Court's OFAC license does not authorize reissuance misses the point. Reissuance does not transfer property rights, so no license is required.

**ARGUMENT**

**I. Only Judgments For Which There Is An Attachment Of The PDVH Shares Should Be Regarded As "Additional Judgments" Under The Sale Procedures Order**

No creditor denies that Delaware law—and therefore Rule 69(a)—requires a creditor to attach the PDVH shares before it can compel the sale of any shares or receive a distribution of proceeds. D.I. 573 at 6-7 (citing 8 *Del. C.* § 324(a)). Indeed, several creditors recognize that "Delaware law ***requires*** a party to perfect its attachment before participating in an asset sale." Red Tree Answer 2; *accord* Siemens Answer 2; Conoco Answer 2. Yet many creditors suggest they need not obtain attachments by the "Additional Judgment Deadline" so long as they attach the PDVH shares before the sale closes. Conoco Answer 2; Siemens Answer 3; Valores Answer 3-4.

These creditors are mistaken. The point of the "Additional Judgment Deadline" is for the Special Master to know with certainty which judgments are entitled to satisfaction in the sale and therefore the amount of proceeds that he should strive to raise. D.I. 573 at 10-11; *cf.* Koch Answer 6 (conceding that "[t]he Special Master would benefit from knowing the total amount of proceeds that he is trying to raise from the sale as early as possible"). Given Venezuela's plan to challenge

any involvement by creditors without attachments, Venezuela Answer 2-3, allowing such involvement would introduce needless uncertainty—which is why the Special Master has emphasized that "attachments would have to occur" by the "Additional Judgment Deadline," D.I. 409 at 19:4-13.[1]

The same need for certainty applies equally to creditors who obtained conditional orders. Some of those creditors concede that "a judgment alone" is not enough to become an "Additional Judgment" creditor. Koch Answer 7; Huntington Answer 7. But that is all they have. The Court did not "gran[t] conditional writs of attachment." OIEG Answer 5. It entered conditional orders "authorizing the *eventual* issuance of a writ of attachment," "contingent on grant of [a] license" from OFAC. *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 2022 WL 611563, at *11 (D. Del. Mar. 2, 2022) (emphasis added). A conditional expectation that a writ may "eventual[ly]" issue is not a "property interest," as those creditors conceded to avoid OFAC sanctions. *Id.* at *5-7. These creditors may be better positioned than others to obtain attachments before the "Additional Judgment Deadline," as some predict, *e.g.*, Gold Reserve Answer 5. But if they do not, there is no basis for treating them any differently from creditors holding a judgment with no attachment.

Nor does Crystallex "seek" to put other creditors in a "*Catch 22*" based on the wording of the OFAC license. Conoco Answer 1. OFAC was not necessarily attentive to the internal workings of the Sale Procedures Order, or the requirements of state law, when it issued a license providing that the Court may issue an attachment to those it has designated as an "Additional Judgment Creditor," D.I. 555 at 8, because from the perspective of both state law and the Sale Procedures

---

[1] Requiring attachment by the Additional Judgment Deadline does not leave other creditors without recourse. If, as Venezuela suggests (at 2)—and Koch (at 7) and Huntington (at 6-7) fear—only some of the PDVH Shares will need to be sold, then any unattached creditors will have additional shares of PDVH to attach and sell. Alternatively, if, as Crystallex believes likely, there is little interest in acquiring a minority interest in PDVH but substantial interest in acquiring the entire company, those creditors not added to the sale order can seek to collect against any proceeds that exceed Crystallex's judgment (and any Additional Judgments).

2

Order, that is backwards. OFAC may have meant that the Court may grant attachments to those it anticipates so designating before the cutoff date. Regardless, the Court can comply with both the license and Delaware law by concurrently issuing a writ of attachment to those it names Additional Judgment Creditors on the condition that those creditors perfect by serving those attachments—in whatever order this Court rules appropriate—prior to the Additional Judgment Deadline.[2]

Finally, Crystallex agrees with the Special Master that any creditor seeking Additional Judgment status must first agree to "pa[y] their fair share of the [Special Master's] Transaction Expenses on both a retroactive and going-forward basis as contemplated by the Sale Procedures Order." Special Master Answer 2. As Crystallex has explained, D.I. 487 at 5-6, that order requires an Additional Judgment Creditor to both "shar[e]" the Special Master's fees and costs with the Sale Process Parties going forward and "reimburse its share" of the fees and costs already incurred "as if [the] Additional Judgment Creditor were a Sale Process Party," D.I. 481 ¶ 47; *see* D.I. 507 at 5 (Sale Process Parties must "pay an equal, per capita share" of those fees and costs, "includ[ing] those incurred to date"). The Sale Procedures Order does not permit Additional Judgment Creditors to free ride off the Special Master's work at the Sale Process Parties' expense.

## II.   Any Attachment Proceedings Should Not Delay Crystallex's Sale Process

Contrary to the requests of multiple creditors, OIEG Answer 5-6; Koch Answer 10, Crystallex emphatically agrees with the Special Master (at 5) that the sale process should proceed "without any delay to accommodate ancillary attachment proceedings." Doing so would not "be

---

[2] Conoco notes that an earlier version of the Special Master's bidding procedures permitting any person holding a perfected security interest to submit a credit bid, Conoco Answer 3 (quoting D.I. 411-1 at 46), was amended to permit only an "Attached Judgment" holder to do so, D.I. 480-1 at 49. But the obvious reason for this change was to *narrow* who could credit bid to those recognized by the Court as "Attached Judgment" creditors—not to *expand* Attached Judgments to include creditors with no security interest. The requirement that "Attached Judgment" creditors "provide sufficient cash to satisfy any obligations secured by a *senior lien* on the PDVH Shares," makes clear that any "Attached Judgment" creditors must themselves hold liens. *Id.* (emphasis added).

3

contrary to OFAC policy," OIEG Answer 2, since OFAC's license merely *permits* additional attachments—it does not *require* them at the expense of keeping the sale process on track. The Special Master's bidding procedures set the Launch Date and Additional Judgment Deadline more than six months before the Deadline to Submit Bids, D.I. 480-1 at 42, to ensure time for bidding once the amount to be raised by the sale is known. That the sale may not close for many months, OIEG Answer 2, is thus no excuse to delay the launch, pushing the sale back even further.

### III.     The Court Should Order Reissuance Of The Share Certificate

Venezuela (at 3-4) continues to rehash its argument that Delaware law requires seizure of the share certificate, and Conoco (at 6) again suggests that upon attaining an attachment, it (or Venezuela's other creditors) might rely on Venezuela's argument to challenge Crystallex's priority. Crystallex has already explained why these arguments lack merit. Crystallex Answer 5-7. Indeed, Venezuela's Answering Brief ignores that the certificate here is lost, stolen, or destroyed, that Venezuela is judicially estopped from challenging Crystallex's attachment, and that now that Crystallex has attached, § 8-112(d) requires future attachments to be perfected by service on Crystallex, not seizure of the certificate, Crystallex Answer 5-9; Siemens Answer 6-9; Gold Reserve Answer 3-4; Koch Answer 3-4. Further, other creditors who rely on Crystallex's attachment, or the same arguments as Crystallex, to obtain liens cannot challenge Crystallex's attachment without undercutting their own attachments.

As Crystallex explained (at 9-10), however, the Court can avoid unnecessary litigation on these issues by compelling reissuance of the PDVH share certificate before issuing any new attachment. Venezuela's argument (at 7) that OFAC's license to this Court does not authorize reissuance misses the point: No license is required because reissuing certificates does not transfer rights in the underlying shares; it merely gives PDVSA additional evidence of ownership and gives the U.S. Marshal actual possession of a certificate it already possesses constructively, given that

4

Crystallex's attachment has been repeatedly affirmed. Crystallex Answer 8, 10. OFAC's definition of "transfer" is not to the contrary, *see* Venezuela Opening Br. 10 n.2; Conoco Answer 4, because it includes "making" a "certificate" only when doing so "alter[s]" a "right, remedy, power, privilege, or interest" in blocked property, 31 C.F.R. § 591.310, which is not the case here.[3]

Finally, Venezuela is wrong (at 8) that the *requesting creditors* must post a bond. Instead, § 168(b) requires the shares' "owner"—here, PDVSA, as Venezuela's alter ego—to provide any required bond. Further, any bond need only be in an amount "sufficient to indemnify the corporation against any claim that may be made against it." 8 *Del. C.* § 168(b). Given the widespread publicity of these proceedings (and the existence of OFAC sanctions), it is virtually impossible that any good-faith purchaser would have expended the massive sums necessary to purchase the PDVH shares. Venezuela speculates that the Maduro regime may have the certificate, but the Maduro regime repeatedly assured this Court that the shares are in Delaware and properly attached, D.I. 98 at 6, 15, so they could not have been sold or pledged. And Venezuela has conceded that it "is not going to transfer stock given the current situation" and "any pledge that was done after the change in Government would be unauthorized and be void." D.I. 214 at 77:12-19. Any bond should thus be minimal. *See* Conoco Answer 6-7; Red Tree Answer 4-5.

## CONCLUSION

Crystallex respectfully requests that the Court launch the Sale Process as soon as practicable and order the reissuance of the PDVH share certificate.

---

[3] Even if a license were required, reissuing shares to "aid" creditors "in reaching the certificated security," 6 *Del. C.* § 8-112(e), would qualify as an "activit[y] ordinarily incident and necessary to the issuance" of writs of attachment, which the license covers, D.I. 555 at 8; Siemens Answer 9-10; Red Tree Answer 5. Further, the license extends to the Court's "agents," D.I. 555 at 8, so it covers anyone acting at the Court's direction. But even if PDVSA and PDVH's actions were not "covered" by the license, Venezuela Answer 7, the Court can cause the certificates to be reissued pursuant to Federal Rule of Civil Procedure 70(a), *cf.* Rusoro Answer 3-4.

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166
(212) 351-4000

Miguel A. Estrada
Lucas C. Townsend
Adam M. Smith
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Tel: (202) 955-8500
Fax: (202) 467-0539


Dated:  June 14, 2023

/s/ Jeffrey L. Moyer
Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700
dicamillo@rlf.com
moyer@rlf.com
hunter@rlf.com

*Attorneys for Plaintiff*