# LANDIS RATH & COBB LLP
### A LIMITED LIABILITY PARTNERSHIP
### ATTORNEYS AT LAW

919 MARKET STREET, SUITE 1800
P.O. BOX 2087
WILMINGTON, DELAWARE 19899
www.lrclaw.com

Rebecca L. Butcher
Direct Dial: (302) 467-4415
Email: butcher@lrclaw.com

Telephone: (302) 467-4400
Facsimile: (302) 467-4450

June 23, 2023

VIA CM/ECF

The Honorable Leonard P. Stark
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, D.C. 20439

Re: *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17 Misc. 151 (LPS): Red Tree Investments, LLC's Response to the Court's June 21, 2023 Order

Dear Judge Stark:

We represent Red Tree. We write pursuant to the Court's June 21, 2023 Order. No. 17 Misc. 151, D.I. 615. We submit the following responses to questions 3 and 6 of the Court's order.

**3. Should the Court certify to the Delaware Supreme Court the question of whether, notwithstanding the 1998 amendments of 8 *Del. C.* § 324 to add reference to 6 *Del. C.* § 8-112, the Court retains authority under the circumstances presented here to order PDVH to reissue the share certificate or, alternatively, to waive the physical seizure requirement?**

First, certification is unnecessary. The Court's authority to reissue shares is not affected by the 1998 amendments to 8 *Del. C.* § 324; rather, it is clearly established by 8 *Del. C.* § 168, 6 *Del. C.* § 8-112(e), and Paragraph 49 of the Sale Procedures Order. And because the Court can order reissuance of the PDVH shares, waiver of Section 324's seizure requirement is unnecessary. Second, certification is inappropriate because there are neither any "original" or "unsettled" questions, nor any conflicting decisions. Third, any doubt should be resolved against certifying a question to the Delaware Supreme Court to avoid further delay.

First, certifying a question relating to the Court's authority to reissue the PDVH share certificate is unnecessary because the applicable statutory provisions are in harmony. 8 *Del. C.* § 168 provides for reissuance of lost or stolen certificates. It is undisputed that PDVSA is the rightful owner of the PDVH certificate, that PDVSA does not know where the certificate is, and that Section 168 empowers the Court to order PDVSA to request reissuance of the PDVH

Hon. Leonard P. Stark
June 23, 2023
Page 2

certificate.[1]  No party has claimed that the Court's power to order reissuance of shares is affected by the separate statutory provisions requiring seizure of security certificates for attachment, 8 *Del. C.* § 324 and 6 *Del. C.* § 8-112, or vice versa.

Moreover, the propriety of ordering reissuance of the PDVH shares is confirmed by 6 *Del. C.* § 8-112(e) and Paragraph 49 of the Sale Procedures Order.  Section 8-112(e) empowers courts to "aid," "by means allowed at law or in equity," creditors seeking to seize securities.  Read with Section 168's grant of authority to order reissuance of lost or stolen shares, Section 8-112(e) contemplates the relief appropriate here:  an order compelling PDVSA to request reissuance of the shares and to deliver the shares to the marshal.  Separately, Paragraph 49 contemplates "an order compelling PDVH to issue new certificates."  Based on the documents Red Tree has been able to review, there was never *any* objection to the language contained in Paragraph 49, and that language appeared in each draft of the Sale Procedures Order since the Special Master's original August 9, 2021 Report and Recommendation.  *See* No. 17 Misc. 151, D.I. 348 at 69-79.[2]

Certifying a question relating to the Court's authority to waive the actual-seizure requirement is unnecessary.  Instead of waiving the requirement, the Court can simply order reissuance of the PDVH shares, and those shares can be seized.  If the Court is nonetheless inclined to certify the question to determine whether waiver is an alternative basis to perfect the attachments in this case, it should order reissuance of the PDVH shares while certification proceeds on a parallel track to avoid further delay.

Second, certification is inappropriate here.  The Delaware Supreme Court's rules provide three examples of circumstances where certification is appropriate: when there is an original question of law, conflicting decisions, or an unsettled question.  Del. Sup. Ct. R. 41(b)(i)-(iii).  None of those apply here.  It is well established that 8 *Del. C*. § 168 empowers a court to order reissuance of certificates, so there is no unsettled or original question of law.  *See, e.g.*, *Scott v. Ametek, Inc.*, 277 A.2d 714, 715 (Del. Ch. 1971) ("It has been **traditional Delaware law** that when a stock certificate has been lost, destroyed or stolen the remedy is an order to issue a new certificate.") (emphasis added).  No party has cited conflicting decisions.  And the unusually fact-bound nature of this proceeding – including the existence of Paragraph 49 of the Sale Procedures Order – renders these questions unsuitable for certification.  *See Mondzelewski v. Pathmark Stores, Inc.*, No. 96 Civ. 359, 2000 WL 654137, at *17 n.17 (D. Del. Mar. 20, 2000) ("[C]ertification of a question of law is inappropriate . . . where such question of law is not likely to recur.").

Third, the Court should avoid the delay that certifying a question to the Delaware Supreme Court will cause by resolving any doubts against certification.  The actual-seizure issue does not impact the Court's ability to name Red Tree, or any other party, an Additional Judgment

---

[1] The Venezuela Parties concede all of these facts.  Their only arguments against reissuing the PDVH shares are (1) that such reissuance would require a new OFAC license, and (2) that a bond is required.  *See* No. 17 Misc. 151, D.I. 589 at 7-8, D.I. 610 at 3-5.

[2] Much of the early briefing relating to the Sale Procedures Order is sealed, and Red Tree is unable to review these materials.

Creditor.  As the Special Master noted, the answer to questions pending before the court "do not become relevant until well after the Launch Date," and there is no reason for "further delay in the preparation for or launch of the Marketing Process."  No. 17 Misc. 151, D.I. 593 at 3.

**6. Does any party dispute RDK's representation that it has a license from OFAC that authorized it to engage in activities incident and necessary to the settlement of claims by RDK against PDVSA and to obtain the writ of attachment *fieri facias* it received from the Superior Court of Delaware?  Does any party dispute that the Venezuela Parties waived any sovereign immunity argument they might have been able to raise against RDK?**

RDK's OFAC license does not permit attachment on the PDVH shares.  That license only covers "transactions and activities ordinarily incident and necessary to the settlement of claims."  No 17 Misc. 151, D.I. 609-1 at 3, 5, 7, 9.  RDK's motion for a writ of attachment exceeds that scope in at least two ways.  First, RDK's default judgment does not relate to a "settlement of claims" against PDVSA.  That phrase refers to a mutually agreed upon resolution, not a court order granting RDK a right to PDVSA's property.  *See Settle*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000) ("To decide (a lawsuit) by mutual agreement of the involved parties without court action."; "To come to an agreement, especially to resolve a lawsuit out of court.").  Second, even if RDK's default judgment could be considered a "settlement," its motion for a writ of attachment is not "ordinarily incident and necessary" to settlement.  Rather, a writ of attachment – which involves seizure and sale of property – is a means of encumbering the property of uncooperative debtors.[3]

RDK's application fails for another reason:  It has not demonstrated compliance with 28 U.S.C. § 1610(c), which requires, as a prerequisite to "attachment or execution," **both** (1) a court order finding that "a reasonable period of time has elapsed following the entry of judgment," **and** (2) "notice required under section 1608(e) of this chapter."  RDK flunks both requirements.  First, it has failed to demonstrate that either the New York Supreme Court, which issued the default judgment, or the Delaware Superior Court, which issued the purported attachment, found that a reasonable period of time elapsed before RDK moved for attachment.  Second, RDK has failed to demonstrate that it effected service pursuant to 28 U.S.C. § 1608(e), which requires a default judgment be served in the manner prescribed for service of an originating complaint and summons.  Each of these failures independently prohibits RDK from obtaining "attachment or execution" based on its default judgment.  28 U.S.C. § 1610(c).

        Respectfully submitted,

        /s/ *Rebecca L. Butcher*

        Rebecca L. Butcher (No. 3816)

Cc:  All counsel of record via CM/ECF

---

[3] Nor does the phrase "ordinarily incident and necessary" extend the OFAC license to cover attachment proceedings for RDK's default judgment.  If it did, then OFAC General License 9(g), which covers acts "ordinarily incident and necessary to dealings in any debt," would cover attachment proceedings relating to PDVSA's unpaid debt to Red Tree.