**ASHBY & GEDDES**

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE
P. O. BOX 1150
WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

June 23, 2023

The Honorable Leonard P. Stark  
U.S. Court of Appeals for the Federal Circuit  
717 Madison Place, NW  
Washington, D.C. 20439

VIA ELECTRONIC FILING

Re: *ACL1 Investments Ltd. v. Bolivarian Republic of Venezuela*,  
Misc. No. 21-46-LPS (D. Del.);  
*Crystallex International Corp. v. Bolivarian Republic of Venezuela*,  
Misc. No. 17-151-LPS (D. Del.)

Dear Judge Stark:

We represent ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd. (together, "ACL"), plaintiffs in Misc. No. 21-46. We write to address two questions that the Court invited interested parties to answer in its order of June 21 (D.I. 615).[1]

> Question 5: Do paragraphs 15 and/or 47 and/or any other part of the Sale Procedures Order resolve whether a party whose judgment is added as an Additional Judgment must pay (i) pro rata (i.e., a percentage equal to the ratio of its judgment to the total judgments at issue in the sale) or per capita (i.e., each party with a judgment pays a percentage equal to 1 divided by the number of parties with a judgment that is at issue in the sale), and (ii) fees and expenses retroactive to the beginning of the Special Master's work or only fees and expenses incurred beginning on the date the party's judgment is made an Additional Judgment? If these matters are not viewed as already resolved by the Sale Procedures Order, what should the Court's answers to them be?

The Sale Procedures Order does not resolve matters (i) and (ii); it contemplates that the Court would resolve them at a later time. Were the Court to resolve them now, (i) ACL submits that the Court should order Additional Judgment Creditors to pay Transaction Expenses pro rata, and (ii) ACL takes no position on whether the payment obligation should be retroactive.

---

[1] "D.I." refers to docket item numbers in *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, Misc. No. 17-151 (D. Del.). Capitalized terms not defined herein have the meanings ascribed to them in the Sale Procedures Order (D.I. 481).

## Sale Procedures Order

The Sale Procedures Order does not resolve matters (i) and (ii). The applicable provisions are paragraphs 15 and 47. Paragraph 47 provides that "Transaction Expenses shall be shared by the Sale Process Parties and any Additional Judgment Creditors." As for how Additional Judgment Creditors should share, the paragraph provides that

> any Additional Judgment Creditor shall be obligated to reimburse its share of the Transaction Expenses pursuant to the May Order (as if such Additional Judgment Creditor were a Sale Process Party) and this Order (for purposes of determining such Additional Judgment Creditor's share of the reimbursement obligation).

Matters (i) and (ii) are aspects of "such Additional Judgment Creditor's share of the reimbursement obligation." Therefore, paragraph 47 provides that matters (i) and (ii) are governed by the Sale Procedures Order. The specific reference to "determining such Additional Judgment Creditor's share" is not affected by the more general requirement to pay "pursuant to the May Order (as if such Additional Judgment Creditor were a Sale Process Party)." *See NLRB v. SW Gen., Inc.*, 580 U.S. 288, 305 (2017) ("[T]he specific governs the general." (quotation marks omitted)). The May Order addresses matters such as which expenses are to be reimbursed and under what procedures. May Order (D.I. 277) ¶¶ 14, 18.

Thus, paragraph 47 provides that the Sale Procedures Order (not the May Order) governs matters (i) and (ii)—and the part of the Sale Procedures Order that governs is paragraph 15.[2] Under paragraph 15,

> in the event any Additional Judgment Creditor becomes obligated to pay a portion of the Transaction Expenses pursuant to this Order, the Special Master shall meet and confer with the Sale Process Parties to determine such Additional Judgment Creditor's share of the reimbursement obligation.

Paragraph 15 does not resolve matters (i) and (ii). Instead, it directs the Special Master to meet and confer regarding those matters (i.e., "such Additional Judgment Creditor's share") and to "determine" the answers. The Special Master's obligation to do those things has not arisen yet. The obligation arises "in the event any Additional Judgment Creditor becomes obligated to pay." To date, no party has been determined to be an Additional Judgment Creditor.

The Sale Procedures Order, in sum, governs matters (i) and (ii) but does not resolve them. It specifies a process for the Special Master to resolve them. Once the Special Master has resolved those matters, his resolution would be subject to this Court's plenary review. *See* May

---

[2] The applicable language in paragraph 15 is framed as a proviso to a requirement about the costs of providing notice. However, the applicable language itself concerns all "Transaction Expenses," a term expressly defined in paragraph 47 to include "all expenses" of the Special Master. It therefore is not limited to the costs of providing notice. Moreover, the applicable provisions of paragraphs 15 and 47 were drafted together. D.I. 472-1 Ex. B at 19, 37. They were drafted in response to the Court's order that "any judgment creditors who are added to the sale process be made to pay their fair share of the expenses." Memorandum Order (D.I. 469) ¶ 6(b).

Order (D.I. 277) ¶¶ 11-12 (process for review of any "finding, report, recommendation, or plan" of the Special Master); *Jarzyna v. Home Props., L.P.*, 783 F. App'x 223, 227 (3d Cir. 2019) (district court has discretion regarding the Special Master's recommendation about allocation of Special Master's expenses and ultimate resolution of the matter).

<u>Pro Rata vs. Per Capita</u>

ACL has no objection to the procedures specified in the Sale Procedures Order, which do not contemplate resolving matters (i) and (ii) at this time. However, were the Court to resolve those matters at this time, ACL respectfully submits that the Court should order Additional Judgment Creditors to pay Transaction Expenses pro rata rather than per capita.

The rule governing a Special Master's compensation provides that "[t]he court must allocate payment among the parties after considering the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master." Fed. R. Civ. P. 53(g)(3). The latter two considerations offer little guidance here. All of the creditors have demonstrated the means to finance years of litigation and stand to recover on nine- or ten-figure judgments. None of the creditors was responsible for the reference to the Special Master.

The remaining consideration, the "nature and amount of the controversy," favors allocating the Transaction Expenses pro rata. The present controversy is unlike many others that involve masters, such as taking evidence, resolving discovery disputes, patent construction, and overseeing settlement. *See* 9C Charles Alan Wright et al., *Federal Practice and Procedure* § 2602.1, Westlaw (database updated Apr. 2023) (listing typical functions). In such controversies, the master facilitates resolution of the case and so benefits the parties more or less equally.

The present controversy—as between Additional Judgment Creditors—is more akin in nature and amount to marshaling assets for the benefit of a group of creditors. In such proceedings, professionals often are compensated with a first claim for their fees and expenses on any amounts recovered. The amount available for creditors is reduced accordingly, with the effect that creditors compensate the professionals pro rata (rather than per capita).

Three comparable contexts illustrate the use of an expense allocation that is effectively pro rata. First, in Securities Investor Protection Act liquidations (like Bernie Madoff's), a trustee overseen by SIPC marshals assets. Such trustees are compensated out of the debtor's estate, thus reducing the amount available for creditors ratably. 15 U.S.C. § 78eee(b)(5). Second, the assets of a bankruptcy debtor may be sold to satisfy creditors' claims under 11 U.S.C. § 363. The sale is conducted by the bankruptcy trustee, *id.* § 363(b), whose fees and expenses are paid with a top-priority claim on estate assets, *id.* §§ 330(a), 503(b)(2), 507(a)(2). This, too, reduces the amount available for creditors in proportion to the size of their claims. Third, under the common-fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The doctrine arises in class actions, for example. *Id.* at 480-81. Under it, the court "assess[es] attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.* at 478.

To avoid any doubt, ACL is prepared to pay a per capita share of Transaction Expenses

were ACL to be designated an Additional Judgment Creditor and were the Court to allocate all Transaction Expenses per capita.

> Question 6: Does any party dispute RDK's representation that it has a license from OFAC that authorized it to engage in activities incident and necessary to the settlement of claims by RDK against PDVSA and to obtain the writ of attachment *fieri facias* it received from the Superior Court of Delaware? Does any party dispute that the Venezuela Parties waived any sovereign immunity argument they might otherwise have been able to raise against RDK?

ACL does not dispute that what RDK represents to be OFAC licenses are authentic. ACL does dispute that those licenses authorized RDK to obtain a writ of attachment. ACL doubts that PDVSA has waived its sovereign immunity, but even had PDVSA done so, that would not cure the invalidity of RDK's writ under the Foreign Sovereign Immunities Act ("FSIA").

### OFAC License

RDK's writ of attachment is void unless it had an OFAC license. ACL Answering Br. (D.I. 585) at 7. RDK does not argue otherwise. Instead, RDK argues that it "had a valid OFAC license at all relevant times." RDK Reply Br. (D.I. 609) at 2; *see id.* Ex. A (claimed licenses).

RDK's claimed OFAC licenses do not authorize RDK to obtain a writ of attachment. By their terms, RDK's licenses are limited (in their section I) to "authoriz[ation] to engage in all transactions and activities ordinarily incident and necessary to the settlement of [specified] claims." Whatever actions may fall within the scope of that authorization, they are limited to actions incident and necessary to settlement. The licenses expressly disclaim (in their section III) authorization of "the transfer of any blocked property, . . . the entry of any judgment or order that effects a transfer of blocked property, or the execution of any judgment against [such] property."

The claimed licenses' authorization of "settlement" activities does not encompass attachment. The licenses bear no indication that "settlement" has any meaning besides its usual one: "a meeting of minds of parties to a transaction or controversy; an adjustment of differences or accounts; a coming to an agreement." *See Vargo v. Mangus*, 94 F. App'x 941, 943 (3d Cir. 2004) (cleaned up). Such a "settlement" does not entail attaching assets. Indeed, OFAC's Venezuela regulations distinguish "entry into a settlement agreement" from "enforcement . . . through execution, garnishment, or other judicial process." 31 C.F.R. § 591.407. And, in General License 42, OFAC authorized transactions "that are ordinarily incident and necessary to the negotiation of settlement agreements with" entities controlled by the recognized Venezuelan government, yet reserved entry into settlement agreements and their enforcement subject to the issuance of specific licenses. https://ofac.treasury.gov/media/931696/download.

### Sovereign Immunity and FSIA

Its violation of OFAC sanctions aside, RDK's writ of attachment is invalid for the independent reason that it was issued in violation of the FSIA.

Under the FSIA, there are three legal hurdles that a litigant must clear before enforcing a judgment against a foreign state (or its instrumentality) by attachment and execution of the foreign state's U.S. assets. First, to obtain a judgment, the litigant must obtain jurisdiction over the

foreign state consistent with one of the exceptions to immunity in 28 U.S.C. § 1605(a) and (b). Second, the litigant must prove that the U.S. assets are subject to execution consistent with one of the exceptions to immunity in 28 U.S.C. § 1610(a) and (b). These two forms of immunity, from jurisdiction and from execution, are independent, so that waiver of one does not imply waiver of the other. *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 288 (2d Cir. 2011). Third, before attaching and executing upon the U.S. assets, the litigant must obtain a court order determining that a reasonable period of time has elapsed following entry of the judgment and the giving of notice required under section 1608(e). 28 U.S.C. § 1610(c).

There is reason to doubt that RDK has cleared the first two of these three hurdles. As to the first, PDVSA has moved in the Southern District of New York to vacate RDK's default judgment, arguing in part that PDVSA was immune under 28 U.S.C. § 1605 despite RDK's assertion that immunity was waived.[3] As to the second, PDVSA has moved in the Superior Court of Delaware to quash RDK's writ of attachment, arguing in part that RDK has not established an exception to immunity under 28 U.S.C. § 1610(a) or (b).[4]

Whether or not RDK has cleared the first two hurdles, it has not cleared the third. Waiver of immunity cannot clear the third hurdle. Waiver "in no way obviates any procedural protection to which [PDVSA is] entitled under" section 1610(c). *Gadsby & Hannah v. Socialist Republic of Romania*, 698 F. Supp. 483, 485 (S.D.N.Y. 1988). Every court that has addressed the issue, to ACL's knowledge, has so held. *See id.*; *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 2002 WL 32107928, at *1 (S.D. Tex. Mar. 7, 2002) ("[W]aiver of immunity does not waive the procedural safeguards of § 1610(c)."); *Ferrostaal Metals Corp. v. S.S. Lash Pacifico*, 652 F. Supp. 420, 423 (S.D.N.Y. 1987) (despite waiver, "the [FSIA] requires that attachment can occur only by court order" under § 1610(c)).

RDK does not claim to have satisfied section 1610(c), and it cannot. Neither the New York court that issued the default judgment nor the Superior Court of Delaware made the determinations required under section 1610(c), including that a reasonable period of time has elapsed since judgment and that notice was given under section 1608(e). In fact, there is no evidence that RDK gave the notice required by section 1608(e). RDK states that it attempted to notify PDVSA of the default judgment by sending copies to lawyers who had not appeared for PDVSA.[5] That is not "the manner prescribed for service." 28 U.S.C. § 1608(e); *see id.* § 1608(b). RDK's failure to satisfy section 1610(c) deprives the Court of power to enforce RDK's judgment. *See LeDonne v. Gulf Air, Inc.*, 700 F. Supp. 1400, 1414 (E.D. Va. 1988). Permitting attachment without proof of sufficient notice would undermine important procedural protections for foreign instrumentalities. *See Agudas Chasidei Chabad of United States v. Russian Fed'n*, 2023 WL 2239257, at *11 (D.D.C. Feb. 27, 2023).

---

[3] Memorandum of Law in Support of Petróleos de Venezuela S.A.'s Motion to Vacate Default Judgment and Dismiss with Prejudice at 16-19, *Refineria Di Korsou N.V. v. Petróleos de Venezuela S.A.*, No. 23-cv-4974 (S.D.N.Y June 13, 2023).

[4] Petróleos de Venezuela S.A.'s Motion to Quash Writ of Attachment Fieri Facias and Stay Action at 4, *Refineria Di Korsou N.V. v. Petróleos de Venezuela S.A*, C.A. No. N23J-01330 (Del. Super. Ct., June 20, 2023).

[5] https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=eO820JJEGlj6tLDreQqS1g==

The Honorable Leonard P. Stark
June 23, 2023
Page 6

                                                   Respectfully,

                                                   */s/ Marie M. Degnan*

                                                   Marie M. Degnan (#5602)

cc:       All Counsel of Record (via e-filing)