# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
(302) 658-3989 FAX

Kenneth J. Nachbar
(302) 351-9294
(302) 425-3013 FAX
KNachbar@morrisnichols.com

June 23, 2023

**VIA ELECTRONIC FILING**

The Honorable Leonard P. Stark
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, D.C. 20439

      Re:    *Crystallex International Corp. v. Bolivarian Republic of Venezuela*,
               No. 1:17-mc-00151-LPS

Dear Judge Stark:

      I write on behalf of the Venezuela Parties (the VPs) in response to the Court's Order (D.I. 615) calling for letter briefs from any interested entities on the questions below.

***1. What is the Special Master's view of whether, pursuant to paragraph 49 of the Sale Procedures Order, the Court should order proceedings that would result in the issuance of a replacement certificate of the PDVH shares owned by PDVSA? Would the failure to have a replacement certificate issued tend to make it more difficult to achieve a value-maximizing sale transaction?***

      As a threshold matter, Paragraph 49 does not apply here. That paragraph contemplates the commencement of a process to "issue [a] new certificate[] … to the applicable Successful Bidder" in order "to ensure that the Successful Bidder is able to actually purchase the applicable PDVH Shares in connection with the applicable Sale Transaction." D.I. 481 ¶ 49. It does not address using the reissuance process to facilitate the inclusion of Additional Judgments in the sale process.

      That said, the VPs agree with ConocoPhillips and Crystallex that the absence of a certificate will impede "a value-maximizing auction." D.I. 574 at 19; *see* D.I. 590 at 5-6; D.I. 595 at 9-10. And as explained, a new certificate must be issued before any Additional Judgments can be added. D.I. 571 at 12-17; D.I. 589 at 7-12; D.I. 610 at 6-9. Before the reissuance process under 8 Del. C. § 168 can begin, however, a creditor seeking to compel PDVSA to invoke the process must post an adequate bond under § 168 and OFAC must provide an additional license. D.I. 571 at 15 n.2; D.I. 589 at 11-12; D.I. 610 at 7-9 & n.2.

***2. What is the Venezuela Parties' view as to whether the share certificate is already effectively in the possession of the U.S. Marshals as a result of the writ of attachment issued to Crystallex***

The Honorable Leonard P. Stark
June 23, 2023
Page 2

**and served on PDVSA in 2018? Do the Venezuela Parties agree that any additional writs would need to be served on Crystallex?**

As the VPs have explained, neither the U.S. Marshals nor Crystallex have "possession" of the physical certificate, whether "effective[]" or otherwise. *See* D.I. 610 at 9. After all, if a good-faith holder of the certificate (whether a purchaser or a pledgee) were to appear and assert rights against PDVH, that actual possession would belie any so-called "effective" possession by the U.S. Marshals. Thus, any additional writs would need to be served on PDVH—not Crystallex—and there would have to be an "actual seizure of the security certificate" for the attachment to be valid. 6 Del. C. § 8-112(a); *see* 8 Del. C. § 324(a); D.I. 571 at 13-15. None of the creditors' formulations of constructive possession can overcome the fact that the U.S. Marshals lack control over the certificate. *E.g.*, D.I. 590 at 8 ("constructive possession"); D.I. 592 at 3 ("shares cannot be in Delaware for Crystallex but missing for [others]"); D.I. 594 at 3-4 (*custodia legis*).

This Court's 2021 judicial-estoppel ruling for Crystallex does not alter the analysis. While estoppel may preclude a party from raising the truth as a defense if it previously said otherwise, the doctrine does not resolve "'the truth of either statement.'" *Audio Technica U.S., Inc. v. United States*, 963 F.3d 569, 575 (6th Cir. 2020); *see* D.I. 571 at 16-17; D.I. 610 at 9; *cf. Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 782 (3d Cir. 2001) (judicial estoppel "protect[s] the integrity of the courts" by preventing the appearance that "'at least one court has probably been misled'"). Estoppel thus cannot serve as a basis for deeming a falsehood to be true *for third parties in a different posture*. *See* D.I. 571 at 15-17; D.I. 589 at 8-9; D.I. 610 at 9; *see also Fahie v. Virgin Islands*, 858 F.3d 162, 170-71 (3d Cir. 2017) (declining to have one defendant's "plea agreement … confine[] the government's proof at [another defendant's] trial," and noting that "judicial estoppel … does not mean that the government is required to treat all aspects of that plea as binding in future prosecutions," as that could "yield unfair windfalls").

Judicial estoppel therefore cannot be used to prevent the VPs from raising the non-seizure of the certificate against creditors other than Crystallex. *A fortiori*, the doctrine cannot be used to *prevent other creditors* from raising the non-seizure of the certificate even against Crystallex. D.I. 589 at 8-9. As ConocoPhillips notes, "[o]ne of the core principles of both collateral and judicial estoppel is that neither one, absent highly unusual circumstances, binds persons who were not parties to the prior proceeding." D.I. 595 at 10. Indeed, to preclude other creditors from raising this defect now would be a clear due-process violation. D.I. 589 at 9.

**3. Should the Court certify to the Delaware Supreme Court the question of whether, notwithstanding the 1998 amendment of 8 Del. C. § 324 to add reference to Del. C. § 8-112, the Court retains authority under the circumstances presented here to order PDVH to reissue the share certificate or, alternatively, to waive the physical seizure requirement?**

There is no need to certify this question to the Delaware Supreme Court because it is already clear that this Court lacks authority to issue either of the contemplated orders. If this Court were to have doubts, however, certification would be warranted before issuing either order.

The Honorable Leonard P. Stark
June 23, 2023
Page 3

*First*, Delaware law plainly does not permit waiving the seizure requirement. No creditor has identified any Delaware case that would somehow allow a court to simply set aside "statutory language" that, as this Court's question appears to acknowledge, unambiguously "requires that, to attach certificated shares of a corporation … , the officer making the attachment must actually seize the certificate." *Deng v. HK Xu Ding Co.*, 2023 WL 3318322, at *3 (Del. Super. Ct. May 8, 2023); *see* D.I. 589 at 8; D.I. 610 at 7.

*Second*, this Court also plainly lacks the power to itself order PDVH to reissue the certificate; at most, it can order PDVSA to seek reissuance in the Delaware Court of Chancery pursuant to 8 Del. C. § 168. Contrary to ConocoPhillips' suggestion (D.I. 574 at 18-19), Rule 70 does not authorize this Court to order reissuance itself. That rule provides only that "[i]f a *judgment* requires a party … to perform *any other specific act* and the party fails to comply within the time specified, the court may order the act to be done … by another person appointed by the court." Fed. R. Civ. P. 70(a) (emphasis added). None of the creditors' money *judgments* direct any of the VPs to initiate the reissuance process. *See, e.g.*, *Braunstein v. Pickens*, 274 F.R.D. 568, 570 (D.S.C. 2011) (holding that Rule 70 could not be used to order the defendant "to perform the specific act of turning over the stock certificates" when the only "specific act ordered" in the money judgment "was the payment of $250,000 plus allowable interest"); *see also Analytical Eng'g, Inc. v. Baldwin Filters, Inc.*, 425 F.3d 443, 451 (7th Cir. 2005) (explaining that Rule 70 permits a court to "direct a party to complete a specific act" if the court "previously directed the same party to perform the same act in its final judgment"). Where, as here, a final money judgment does not contain a directive to take a specific action, it is Rule 69, not Rule 70, that dictates the available relief, by directing the federal court to follow the applicable state law on "[t]he procedure on execution." Fed. R. Civ. P. 69(a); *see, e.g.*, *Bd. of Comm'rs of Stark Cnty. v. Cape Stone Works, Inc.*, 206 F. Supp. 2d 100, 102 (D. Mass. 2002) ("The judgment contains no equitable relief whatever, and, therefore, must be deemed to be 'a judgment for the payment of money' which is governed by Rule 69(a), rather than a judgment … governed by Rule 70."). And, as ConocoPhillips and Red Tree recognize, Delaware procedure at most authorizes this Court to "requir[e] PDVSA" to "'apply to the Court of Chancery for an order requiring'" "the reissuance of the certificate from PDVH," as would occur in an enforcement proceeding in Delaware Superior Court. D.I. 574 at 18-19 (quoting 8 Del. C. § 168(a)); *see* D.I. 571 at 15 n.2; D.I. 589 at 11; D.I. 599 at 5; D.I. 610 at 8-9.

ConocoPhillips fares no better in suggesting that this Court can order PDVH to reissue the certificate under 6 Del. C. § 8-112(e), which permits a creditor to seek "aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the certificated security … by means allowed at law or in equity in regard to property that cannot readily be reached by other legal process." D.I. 574 at 18. Under Delaware law, the "means allowed" to reach the certificate in these circumstances is to follow the procedures in 8 Del. C § 168 for reissuance. Courts have recognized that § 8-112(e) cannot be used to circumvent applicable requirements for obtaining and seizing the certificate under § 8-112(a). *See, e.g.*, *Huntington Nat'l Bank v. Bywood, Inc.*, 2017 WL 2241537, at *4-6 (Ohio Ct. App. May 16, 2017); *Wolverine Flagship Fund Trading Ltd. v. Am. Oriental Bioengineering, Inc.*, 134 A.3d 992, 995 (N.J. App. Div. 2016); D.I. 196 at 13-14.

The Honorable Leonard P. Stark
June 23, 2023
Page 4

Because the Delaware Supreme Court is unlikely to accept certification when the question is already "settled" under Delaware law, Del. Sup. Ct. R. 41(b)(iii), this Court should not engage in a futile enterprise. That said, if this Court is unsure about the analysis above, the VPs agree that certifying the question would be preferable to having this Court (erroneously) predict that the Delaware Supreme Court would reach a different conclusion. "[M]oving forward with selling the PDVH shares based solely on" such speculation would, in ConocoPhillips' words, "create[] an unnecessary and easily avoided risk to the integrity and finality of the sale." D.I. 595 at 10 (addressing "arguments regarding the effect of service of writs in the absence of a certificate").

**4. What is the Special Master's view as to the latest possible date in the process (e.g., Launch Date, Date of Sale, some other date) he can know with certainty which judgments are Additional Judgments being added to the sale process – and which judgments or Additional Judgments have perfected attachments – without the uncertainty prior to that date adversely affecting his ability to obtain a value-maximizing transaction?**

Although the Sale Procedures Order (SPO) requires making these determinations no later than 10 days after the Launch Date, D.I. 481 ¶ 30, they must be resolved far earlier for there to be a value-maximizing process. D.I. 561 at 15-21. As Mr. Weisenburger explained in his latest uncontroverted declaration, if a Preparation Launch Date is set "before pending uncertainty regarding the Attached Judgments is resolved, the Special Master cannot satisfactorily complete important tasks contemplated for the prefatory period, such as fully developing a Confidential Information Memorandum and teaser." D.I. 561-1 ¶ 20. Likewise, "[w]ithout knowing the magnitude of the attached judgments, PDVSA will be unable to seriously engage on discussions about minority protections," which the SPO directs should occur *just 10 days after the Preparation Launch Date*. *Id.* ¶ 21. Thus, this Court should resolve "whether and when additional creditors may be issued unconditional writs," and wait for "the conclusion of appellate proceedings for the six currently-appealed judgments," before initiating even the process's "prefatory phase." *Id.* ¶ 26.

**5. Do paragraphs 15 and/or 47 and/or any other part of the Sale Procedures Order resolve whether a party whose judgment is added as an Additional Judgment must pay (i) pro rata (i.e., a percentage equal to the ratio of its judgment to the total judgments at issue in the sale) or per capita (i.e., each party with a judgment pays a percentage equal to 1 divided by the number of parties with a judgment that is at issue in the sale), and (ii) fees and expenses retroactive to the beginning of the Special Master's work or only fees and expenses incurred beginning on the date the party's judgment is made an Additional Judgment? If these matters are not viewed as already resolved by the Sale Procedures Order, what should the Court's answers to them be?**

The SPO requires holders of Additional Judgments to pay a per capita share of all of the Special Master's fees and expenses. Paragraph 47 states "that any Additional Judgment Creditor shall be obligated to reimburse its share of the Transaction Expenses pursuant to the May Order (as if such Additional Judgment Creditor were a Sale Process Party)." D.I. 481 ¶ 47. The May Order in turn requires the Sale Process Parties to pay fees and expenses on a per capita basis. D.I. 277 ¶ 14 (requiring the Sale Process Parties to each pay one-third of the Special Master's fees and expenses); *see* D.I. 275 at 5-6 (in an opinion immediately preceding the May Order, stating

The Honorable Leonard P. Stark
June 23, 2023
Page 5

that Sale Process Parties must pay a per capita share in order to participate). Indeed, determining the *VPs' relative share* of the fees and expenses *would be impossible* under a "pro rata" approach, as they are not judgment creditors. Moreover, a pro rata approach would make little sense because if the creditors had been required to proceed separately, their enforcement costs would not vary depending on the size of their judgments. It is also "equitable" to require any Additional Judgment Creditor to pay a per capita share of the Special Master's fees and expenses "incurred to date," as latecomers should not get to free-ride on the work that went into the SPO's development. D.I. 507 at 5; *cf. id.* at 5-6 (noting that Red Tree's request to "pay a pro rata share … and only going forward … is entirely inconsistent with the approach the Court has taken to date").

**6. Does any party dispute RDK's representation that it has a license from OFAC that authorized it to engage in activities incident and necessary to the settlement of claims by RDK against PDVSA and to obtain the writ of attachment fieri facias it received from the Superior Court of Delaware? Does any party dispute that the Venezuela Parties waived any sovereign immunity argument they might otherwise have been able to raise against RDK?**

The VPs dispute that the OFAC license filed by RDK (D.I. 609-1) authorized the issuance of the writ of attachment *fieri facias*. *See* Mot. to Quash Writ ¶ 2, *Refineria di Korsou N.V. v. PDVSA*, No. N23J-1330 (Del. Super. Ct. Jun. 20, 2023). By its terms, the license does not authorize RDK's enforcement of its (void) default judgment against PDVSA's blocked property. Rather, the license authorizes only "transactions and activities ordinarily incident and necessary to the settlement of claims … arising from" the "operation" and "wind-down" of the Isla refinery complex in Curaçao. D.I. 609-1 at 9. Nothing in the license "explicitly authorize[s]" attachments of blocked property, and it makes no sense to conclude that OFAC intended to authorize RDK to attach shares in PDVH starting on November 22, 2019 (the date OFAC first issued the operative RDK license), while at the same time withholding such authorizations for all other creditors. 31 C.F.R. § 591.404(a)-(b) (providing that ordinarily incident transactions with blocked persons and/or involving a transfer of blocked property must be "explicitly authorized"). The VPs also dispute that PDVSA has waived its sovereign immunity in relation to RDK's default judgment. Indeed, PDVSA has moved to vacate that judgment as void for ineffective service of process and lack of subject-matter and personal jurisdiction under the Foreign Sovereign Immunities Act, among other reasons. *See* D.I. 4, *Refineria di Korsou N.V. v. PDVSA*, No. 1:23-cv-4974 (S.D.N.Y. Jun. 13, 2023). The alleged guaranty containing the purported waiver of immunity is not applicable to RDK's claims against PDVSA—which arise from alleged breaches of a different agreement not covered by the guaranty—and, even if it were, the purported waiver is ineffective for the reasons detailed in PDVSA's motion. *See id.* at 5-7, 12-13, 17-19, 22-23.

Respectfully submitted,

*/s/ Kenneth J. Nachbar*

Kenneth J. Nachbar (#2067)

cc: All Counsel of Record (Via E-Filing)