womblebonddickinson.com



June 23, 2023

The Honorable Leonard P. Stark
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801

Womble Bond Dickinson (US) LLP

1313 North Market Street
Suite 1200
Wilmington, DE 19801

t:   302.252.4320
f:   302.252.4330

Kevin J. Mangan
Partner
Direct Dial: 302-252-4361
Direct Fax: 302-661-7729
E-mail: Kevin.Mangan@wbd-us.com

**Re:**   ***Crystallex International Corp. v. Bolivarian Republic of Venezuela***
**Case No. 17-mc-151**

Dear Judge Stark :

Gold Reserve Inc. ("Gold Reserve") respectfully provides the following responses to Question Nos. 3, 5, and 6 in the Court's Memorandum Order entered on June 21, 2023.

**Question 3**:

*Should the Court certify to the Delaware Supreme Court the question of whether, notwithstanding the 1998 amendment of 8 Del. C. § 324 to add reference to Del. C. § 8-112, the Court retains authority under the circumstances presented here to order PDVH to reissue the share certificate or, alternatively, to waive the physical seizure requirement?*

**Response to Question 3**:

Gold Reserve contends that the Court should not certify this question to the Delaware Supreme Court. Certification is governed by Del. S.Ct. R. 41. This question of law does not meet the stated reasons for certification under that rule.

First, the question of law is not of "first instance in this State" under Del. S.Ct. R. 41(b)(i) because there is an unambiguous statute that applies. The Court has the authority to reissue (or order reissuance of) the share certificate pursuant to the unambiguous language in 6 Del. Code 8-112(e) (creditor entitled to aid from the court "in reaching the certificated security") and 8 Del. Code 168 (regarding judicial orders compelling reissuance of lost, stolen, or destroyed shares). Courts are granted wide latitude that even certificated shares can be reached if they "cannot readily be reached by other legal process." 6 Del. Code 8-112(e). While we have found no Delaware cases applying 6 Del. Code 8-112(e) to reissue (or deny reissuance) of shares, since this is a Uniform Commercial Code statute, several other states have interpreted UCC 8-112 as allowing such reissuance. *See* Red Tree Opening Brief at D.I. 566, n.7 (collecting cases).

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.



June 23, 2023
Page 2

Second, there are no conflicting decisions in the Delaware case law on this question.  Del. S.Ct. R. 41(b)(ii).

Third, no party has challenged the constitutionality, construction, or application of 6 Del. Code 8-112(e).  Del. S.Ct. R. 41(b)(iii).  The Venezuela Parties arguments against reissuance are not based on Delaware law, and they do not discuss 8-112(e).  *See* Venezuela Parties' Opening Brief (D.I. 571), Answering Brief (D.I. 589), and Reply Brief (D.I. 610).  They allege that reissuing the certificate would require an additional license from OFAC based on their interpretation of the May 1, 2023 OFAC License.  See Venezuela Parties' Opening Brief (D.I. 571, ¶1, n.2), Answering Brief (D.I. 589, ¶3), and Reply Brief (D.I. 610 at p. 4).

Fourth, as a practical matter, certification could cause delay and uncertainty in the sale process. The Special Master, who is running the sale and will be negotiating with buyers, has not raised a concern about reissuance of shares or requested certification.  No other parties have requested certification.

**Question 5**:

*Do paragraphs 15 and/or 47 and/or any other part of the Sale Procedures Order resolve whether a party whose judgment is added as an Additional Judgment must pay (i) pro rata (i.e., a percentage equal to the ratio of its judgment to the total judgments at issue in the sale) or per capita (i.e., each party with a judgment pays a percentage equal to 1 divided by the number of parties with a judgment that is at issue in the sale), and (ii) fees and expenses retroactive to the beginning of the Special Master's work or only fees and expenses incurred beginning on the date the party's judgment is made an Additional Judgment? If these matters are not viewed as already resolved by the Sale Procedures Order, what should the Court's answers to them be?*

**Response to Question 5**:

Gold Reserve maintains its previously-stated position that this issue is premature until (a) the Third Circuit rules on the pending PDVSA/Venezuela appeal of the alter ego ruling; (b) the Court determines whether and when any judgments are to be added as Additional Judgments, and (c) the Court rules on priority.  *See* Gold Reserve Reply Brief at D. I. 607, p. 5, ¶F.  However, if the Court were to make rulings on these issues at present, Gold Reserve's position is as follows.

Paragraphs 15 and/or 47 of the Sale Procedures Order ("SPO") are ambiguous on the questions asked by the Court.  In light of the Court's ruling on Red Tree's application to be added as a Sales Process Party, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 17-mc-151-LPS (Jan. 11, 2023), D.I. 507 at 5 (emphasis supplied), Gold Reserve submits that the Court *should* answer the questions as follows:

If an Additional Judgment Creditor ("AJC") is required to make the same advancement of Transactional Expenses as a Sale Process Party, i.e., on a per capita, retroactive basis, then such AJC should have equal rights under the SPO as a Sale Process Party.

2

June 23, 2023
Page 3

Under the SPO, the Sale Process Parties are given numerous rights that AJCs do not have, such as rights of information, consultation and/or objection with respect to: (a) notice procedures [SPO ¶E], (b) identity of bidders [SPO ¶4], (c) content of the sale materials such as the teaser and the CIM [SPO ¶4], (d) modification of the bidding procedures [SPO ¶10], (e) the launch date [SPO ¶3], (f) bid information [SPO ¶13], (g) break-up fees and stalking horse protections [SPO ¶21], (h) reimbursement issues [SPO ¶26; 29], (i) amount of Attached Judgments [SPO ¶33], (j) sanctions issues regarding discovery [SPO ¶39], (k) identity and communications with bidders [SPO ¶40-41], and (l) budget for expenses [SPO ¶47].

In addition, the Court's ruling on Red Tree's motion to intervene made clear that per capita, retroactive expense reimbursement was the quid pro quo for a party being added as Sales Process Party. *See* Memorandum Order at D.I. 507 at ¶4(b) ("Second, the Court agrees with Crystallex (D.I. 487 at 15-18) and the Venezuela Parties (D.I. 492 at 11-12) that if Red Tree were to be added as a new Sale Process Party, it would be equitable for the Court to require Red Tree to pay an equal, per capita share of the Special Master's fees and expenses, to include those incurred to date and all those going forward.").

Given the foregoing, if an AJC is required to bear the same expense as a Sales Process Party, then it should have equality of rights under the SPO.

Alternatively, if an AJC is not to be afforded such rights, then expense reimbursement should still be per capita, but on a prospective rather than retroactive basis. This result would be faithful to Court's stated rationale for denying Red Tree's motion and, as a matter of fairness, recognize that retroactive payment of expense would not necessarily be equitable in the circumstances where an AJC was not given equality of rights under the SPO going forward, and had no part in the development of the existing sales process.

Finally, and as a separate matter, Gold Reserve respectfully requests clarification from the Court that an AJC shall, under whichever method of expense reimbursement is adopted, be entitled to reimbursement of advanced Transactional Expenses out of the first proceeds of any sale of shares of PDVH, notwithstanding any claim or attachment by any creditor of any of the Venezuela Parties. *See* Order Regarding Special Master, D.I. 277 ¶16.

**Question 6**:

*Does any party dispute RDK's representation that it has a license from OFAC that authorized it to engage in activities incident and necessary to the settlement of claims by RDK against PDVSA and to obtain the writ of attachment fieri facias it received from the Superior Court of Delaware? Does any party dispute that the Venezuela Parties waived any sovereign immunity argument they might otherwise have been able to raise against RDK?*



June 23, 2023
Page 4

## Response to Question 6:

This issue was raised for the first time in RDK's Reply Brief, D.I. 609, and at present the operative facts are not clear. However, Gold Reserve makes the following preliminary observations:

RDK's 2019 OFAC License from 2019 is vague and ambiguous. In point of fact, RDK obtained its judgment in New York State Court on August 27, 2022, but did not register it in Delaware state court until April 12, 2023. RDK took no action to seek a writ of attachment in Delaware state court until after the May 1, 2023 OFAC License. As such, RDK's own actions suggest that it believed it was prohibited from seeking a writ until after the May 1, 2023 OFAC License.

In contrast, the May 1, 2023 OFAC License is specific for writs of attachment issued by this Court, not the Delaware state court. As such, any party seeking a writ of attachment against the PDVH shares must obtain one from this Court. Otherwise, there would be a chaotic process where creditors in various courts could seek writs of attachment without notice to this Court or other creditors. *See* Gold Reserve Answering Brief, D.I. 594 at pp. 2-4; *Starboard Venture Shipping, Inc. v. Casinomar Transp., Inc.*, No. 93cv644, 1993 WL 464686, at *4 (S.D.N.Y. Nov. 9, 1993) (custodia legis doctrine bars any attachment of funds in a court's registry and is most applicable when it prevents one court from interfering with the authority of another).

Respectfully submitted,

**Womble Bond Dickinson (US) LLP**

*/s/ Kevin J. Mangan*
Kevin J. Mangan (Del. Bar No. 3810)

KJM/csg
cc:  All Counsel of Record (via CM/ECF)