ROBERT B. PINCUS in his capacity as
Special Master for the United States District Court for the District of Delaware
PO Box 4570
Wilmington, DE 19807

June 23, 2023

**BY HAND DELIVERY & CM/ECF**

The Honorable Leonard P. Stark
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801-3570

Re: *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, D. Del. C.A. No. 17-mc-00151-LPS; Memorandum Order [D.I. 615]

Dear Judge Stark:

I hereby submit this letter brief in response to the questions set forth in your Memorandum Order of June 21, 2023 [D.I. 615] (the "Additional Briefing Order").[1]

1. **What is the Special Master's view of whether, pursuant to paragraph 49 of the Sale Procedures Order, the Court should order proceedings that would result in the issuance of a replacement certificate of the PDVH shares owned by PDVSA? Would the failure to have a replacement certificate issued tend to make it more difficult to achieve a value-maximizing sale transaction?**

To date, all indications in this case point to the extreme likelihood that "the location of the PDVH Shares cannot be located with reasonable precision [and] the custodian of the PDVH Shares is unlikely to cooperate" in the transfer of the share certificate. Sale Procedures Order ¶ 49. In June 2020, the Venezuela Parties submitted an affidavit representing that PDVH did not possess the share certificate in question. D.I. 177-1. Then, pursuant to paragraph 48 of the Sale Procedures Order, counsel to the Venezuela Parties confirmed to the Special Master they were not aware of any information regarding the location of the PDVH Shares certificate beyond what was stated in that affidavit. Further, in their briefing on this matter, the Venezuela Parties presume that the share certificate is held by the Maduro regime. D.I. 571 at 9.

The reasonable conclusion is that the now-existing certificate evidencing the PDVH Shares, wherever it resides, will not materialize in time to be conveyed to a Successful Bidder.

---

[1] Capitalized terms used but not otherwise defined herein shall bear the meanings ascribed to such terms by the *Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* (the "Sale Procedures Order") entered in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, C.A. No. 17-mc-151-LPS (D. Del. Oct. 11, 2022) (D.I. 481).

Therefore, as the Special Master, I recommend that the Court promptly order proceedings that would result in the issuance of a replacement certificate of the PDVH Shares owned by PDVSA.

I was appointed as Special Master for the purpose of selling the PDVH Shares and I believe that Potential Bidders will not participate in the sale process unless they are certain that the share certificates that they are committed to purchase will be delivered at the closing of the sale. Since the process required to compel issuance of a new share certificate is likely to take a significant amount of time, my view is that those proceedings should begin now in earnest.

4. **What is the Special Master's view as to the latest possible date in the process (e.g., Launch Date, Date of Sale, some other date) he can know with certainty which judgments are Additional Judgments being added to the sale process—and which judgments or Additional Judgments have perfected attachments—without the uncertainty prior to that date adversely affecting his ability to obtain a value-maximizing transaction?**

In my capacity as Special Master, I continue to believe that the optimal deadline for the Court to identify Additional Judgments under the Sale Procedures Order is ten calendar days after the Launch Date. As I indicated in my briefing related to the Supplemental Report, my Advisors and I will be able to conduct diligence and prepare and distribute marketing materials to Potential Bidders on the Launch Date without knowing the full claims pool. See D.I. 583 ¶ 10. However, shortly after distribution of those materials, my Advisors and I will need to actively engage with Potential Bidders, as part of their own diligence process. For those discussions to be productive and provide Potential Bidders with information that will lay the foundation for value-maximizing bids, my Advisors and I will need to be in a position to discuss the universe of judgments to be satisfied by the Sale Transaction and the required amount of net proceeds to be provided therefrom.

That being said, I do believe the Additional Judgment Deadline has some flexibility. So long as I know which judgments are Additional Judgments at least a reasonable period of time prior to the deadline for submission of non-binding indications of interest (i.e., 45 calendar days after the Launch Date), my Advisors and I should still have sufficient time to engage with Potential Bidders such that any Stalking Horse Bids will be adequately informed and will set a good base for the remainder of the Marketing Process.

Importantly, I also remain committed to the current Bidding Procedures timeline. I believe that the Bidding Procedures timeline, developed after significant thought, consideration, and consultation with the Sale Process Parties, provides the Court the best path forward to a value-maximizing sale. Therefore, extension of the Additional Judgment Deadline beyond the timeline laid out above, will inevitably necessitate adjusting other milestones, which is not in the best interests of the Sale Process Parties and execution of this sale process.

5. **Do paragraphs 15 and/or 47 and/or any other part of the Sale Procedures Order resolve whether a party whose judgment is added as an Additional Judgment must pay (i) pro rata (i.e., a percentage equal to the ratio of its judgment to the total judgments at issue in the sale) or per capita (i.e., each party with a judgment pays a percentage equal to 1 divided by the number of parties with a judgment that is at issue in the sale), and (ii) fees and expenses retroactive to the beginning of the Special Master's works or only fees and**

**expenses incurred beginning on the date the party's judgments is made an Additional Judgment? If these matters are not viewed as already resolved by the Sale Procedures Order, what should the Court's answers to them be?**

While I do not believe that paragraphs 15 or 47 of the Sale Procedures Order alone provide sufficient detail to answer the questions posed by the Court in the Additional Briefing Order, as stated in my answering brief at D.I. 593, the Court's earlier rulings in this matter require each Additional Judgment Creditor to pay its per capita share of the Transaction Fees on a retroactive and going-forward basis. D.I. 593, ¶¶ 6–8. Such an approach to allocation of payment obligations makes sense—Additional Judgment Creditors will benefit from all of the work contributed by and on behalf of the Special Master. Further, the Court saw no reason to allocate pro rata among Crystallex and ConocoPhillips, notwithstanding that their respective claim amounts and priority are not matching.

Ultimately, however, exactly how the Transaction Expenses are allocated among the Sale Process Parties and any Additional Judgment Creditors is of no import to me, so long as they are paid in-full and on a timely basis.

Respectfully Yours,

*/s/ Robert B. Pincus*

Robert B. Pincus, in my capacity as Special Master for the United States District Court for the District of Delaware

cc: Counsel of Record (via CM/ECF and E-Mail)

10888612