

Jeffrey L. Moyer
302-651-7525
moyer@rlf.com

June 23, 2023

**VIA ECF**

The Honorable Leonard P. Stark
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

> Re:  *Crystallex International Corporation v. Bolivarian Republic of Venezuela et al.*,
> C.A. No. 17-mc-151-LPS

Dear Judge Stark:

I write on behalf of Crystallex to address selected questions posed by this Court's order (D.I. 615):

> **2. What is the Venezuela Parties' view as to whether the share certificate is already effectively in the possession of the U.S. Marshals as a result of the writ of attachment issued to Crystallex and served on PDVSA in 2018?  Do the Venezuela Parties agree that any additional writs would need to be served on Crystallex?**

Venezuela has asserted in its reply brief that the share certificate is not in the constructive possession of the U.S. Marshals on Crystallex's behalf, D.I. 610 at 5, but that argument is contrary to the scheme of the Delaware statute under Venezuela's own view.  Even if Venezuela were correct that certificated shares can only be attached by physical seizure, *see id.* at 2-3, the UCC makes clear that this requirement applies (at most) only to the *first* attachment of a certificated security, after which all subsequent attachments are perfected by service on the first creditor, § 8-112(d).  But since the Court has already ruled that Crystallex has obtained an attachment that Venezuela cannot dispute, *see* D.I. 234 at 21, as to everyone else the statute must be taken to deem the Marshals in constructive possession of the certificate, *see* D.I. 590 at 2.  Venezuela now claims the certificate is "out somewhere in the world," D.I. 610 at 5, but it has no factual basis for that proposition (and its lack of knowledge simply indicates the certificate is lost or destroyed, justifying reissuance of the certificate in the interest of clarity, *see infra* & D.I. 590 at 9-10).  In any event, it is clear that the certificate has not been transferred to anyone else, because as Venezuela's counsel previously represented to this Court, "[t]he only transfer" of the certificate "that can be effective . . . would require a transfer on the books and records of PDV Holding" in Delaware.  D.I. 214 at 73:8-11.

The Honorable Leonard P. Stark
June 23, 2023
Page 2

**3. Should the Court certify to the Delaware Supreme Court the question of whether, notwithstanding the 1998 amendment of 8 Del. C. § 324 to add reference to Del. C. § 8-112, the Court retains authority under the circumstances presented here to order PDVH to reissue the share certificate or, alternatively, to waive the physical seizure requirement?**

The Court should not certify this question because there is no dispute that Delaware law allows the Court to order PDVH to reissue the share certificate. Although there is a separate dispute whether physical seizure is the default rule in Delaware post-1998, there is no dispute (and Venezuela acknowledges, D.I. 610 at 3) that "the statutory procedures for reissuance" are available where, as here, a certificate is lost, stolen, or destroyed. And while there are subsidiary disputes about what those requirements entail, *e.g.*, D.I. 611 at 5 (the statute requires PDVSA to post a bond, *contra* Venezuela who claims that creditors must do so because PDVSA "has no other available assets," D.I. 610 at 4), none of these issues meets the high threshold for review by Delaware's highest court: They would neither help advance termination of this case (which can proceed to judicial sale for Crystallex's benefit with or without reissuance, in light of the Court's estoppel ruling), nor contribute to the development of Delaware law (given these issues' peculiarity). Certification could also substantially delay these already long-delayed proceedings to satisfy Crystallex's judgment. That would be manifestly unfair given that any remaining questions about the effect of the 1998 amendment *at most* affect only other creditors seeking to hop on to Crystallex's process (and then only if the Court concludes that those creditors cannot perfect their downstream attachments by serving Crystallex under UCC § 8-112(d))—and, those questions would be mooted by reissuance of the certificate. Under any view, the Court's clear authority to order reissuance means there is no need to decide the "alternativ[e]" question whether Delaware law permits "waiv[ing] the physical seizure requirement."

**a.** Delaware law (as applicable under Federal Rule 69(a)) undisputedly authorizes the Court to order reissuance of the share certificate. Specifically, the Delaware General Corporation Law provides that "[i]f a corporation refuses to issue new uncertificated shares or a new certificate of stock in place of a certificate theretofore issued by it, or by any corporation of which it is the lawful successor, alleged to have been lost, stolen or destroyed," then a court, upon hearing, "shall make an order requiring the corporation to issue and deliver to the plaintiff new uncertificated shares or a new certificate for such shares." 8 *Del. C.* § 168; *see id.* § 167 (generally authorizing reissuance). And Delaware's UCC further provides that "[a] creditor whose debtor is the owner of a certificated security, uncertificated security, or security entitlement is entitled to aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the certificated security, uncertificated security, or security entitlement or in satisfying the claim by means allowed at law or in equity in regard to property that cannot readily be reached by other legal process." 6 *Del. C.* § 8-112(e).

No party disputes that Delaware law furnishes this authority, which is not affected by the separate dispute over the "alternativ[e]" question whether any underlying requirement to seize the physical certificate even applies (or could be "waive[d]")—the second part of the Court's question, discussed *infra*, and the only issue that even arguably implicates the 1998 amendment. *See*, *e.g.*, D.I. 590 at 9; D.I. 566 at 5-6; D.I. 574 at 14 (Crystallex and others explaining reissuance authority).

The Honorable Leonard P. Stark
June 23, 2023
Page 3

Venezuela, too, does not dispute that state law allows "the certificate-reissuance process," and, apart from attempting to foist PDVSA's statutory bond obligation on others on the basis of its asserted poverty, objects only that "reissuing the certificate would require an additional license from OFAC." D.I. 589 at 7-8.  That objection is wrong, as Crystallex and others have explained, D.I. 590 at 10; D.I. 611 at 4-5—but more fundamentally, it exclusively concerns the OFAC sanctions regime, a matter of *federal law*.  There is thus no live question whether state law permits reissuance of the share certificate.[1]

If any party attempted to dispute the Court's reissuance authority under Delaware law now despite not raising the issue in three prior briefs on these issues, that argument would be waived and untimely.  But it would also not meet the high standards for certification to a state's highest court, which Delaware law permits "only where there exist important and urgent reasons for an immediate determination by [the Delaware Supreme] Court of the questions certified." Del. Sup. Ct. R. 41(b); *accord id.* 41(a)(ii).  Delaware and other states make this procedure available only "in rare instances." *Martinez v. Metzger*, 192 A.3d 556 (Del. 2018) (table).  Good reasons support the limited use of this "deviati[on] from the ordinary" process of litigation, *Charbonneau v. State*, 906 A.2d 806 (Del. 2006) (table): "In addition to the costs to the litigants, the burden of judicial review imposed on a state's highest court militates against liberal recourse to certification." *Fiat Motors of N. Am., Inc. v. Mayor & Council of City of Wilmington*, 619 F. Supp. 29, 34 (D. Del. 1985).  In certain circumstances, certification may "save time, energy, and resources," but the procedure is not "obligatory" and should be used only where "appropriate" in light of the overarching purposes of efficient, "cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974); *see also, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Dann*, 783 A.2d 124 (Del. 2001) (table) (declining to accept certification without a "strong showing of judicial economy" justifying the procedure).

Here, even if the Court's reissuance authority were disputed, certification would still be inappropriate for two reasons.  *First*, "the delay in this case's resolution and the inherent costs of the procedure counsel against certification" with particular force in this case.  *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 796 F. Supp. 117, 120 (D. Del. 1992); *see also Harleysville Mut. Ins. Co. v. Sussex Cnty.*, 831 F. Supp. 1111, 1130 (D. Del. 1993) (denying certification because it "would require postponing the trial" unduly), *aff'd*, 46 F.3d 1116 (3d Cir. 1994) (table).  The certification process necessarily entails delay while this Court prepares the requisite "certificate," and then while the Delaware Supreme Court considers whether to exercise its "discretion" to accept certification, Del. Sup. Ct. R. 41(b), potentially including "revis[ing] the questions," *e.g., Powell v. State*, 153 A.3d 69, 71 (Del. 2016).  If it accepts certification, a further round of "brief[ing]" follows, Del. Sup. Ct. R. 41(c)(v), which may take months, *see id.* 15(a) (default 75-day briefing schedule), possibly followed by oral argument, *id.* 16(a).  The court would then take an indefinite time to draft and issue its decision—which could amount, all told, to a delay of months or more. *See, e.g., Lavastone Cap. LLC v. Est. of Berland*, 266 A.3d 964, 966 (Del. 2021) (decision in

---

[1] The factual predicates for reissuance are also undisputedly met, *see* D.I. 590 at 9, but in any event, Delaware law does not permit certification of factual disputes, Del. Sup. Ct. R. 41(b).

The Honorable Leonard P. Stark
June 23, 2023
Page 4

November 2021, eight months after March certification); *United States v. Sanofi-Aventis U.S. LLC*, 226 A.3d 1117, 1122 (Del. 2020) (similar delay).

This Court needs no reminder that "[e]ach day that Crystallex does not recover on its judgment is arguably something of an affront to the United States judicial system," D.I. 234 at 38, and, based on current OFAC guidance and "CITGO's recent financial and operational performance and the current state of the refining industry," D.I. 553 ¶ 34, the Special Master has strongly recommended proceeding "without any further delay" with the Sale Process (designed for Crystallex's benefit) per the Sale Procedures Order, *id.* ¶ 7.[2] Now that Crystallex is finally on the cusp of receiving satisfaction, it would be manifestly unfair to delay the Sale Process pending certification on this side issue—which arises only because of the prospect of additional litigation tactics by Venezuela in response to other parties seeking to be added as Additional Judgment Creditors to benefit from Crystallex's hard work. And beyond just time and cost, delay from certification could also threaten severe harm to Crystallex by raising the danger that OFAC's currently clear and favorable guidance could become stale, *see* D.I. 590 at 3 n.1 (citing D.I. 553 ¶ 7), as well as a general risk of further complicating this already complex case as more and more creditors emerge from the woodwork to capitalize on Crystallex's success. Should Venezuela seize on this option as a delay tactic, the Court should reject its arguments just like Venezuela's other "strategic" arguments. D.I. 544 at 7. Even if certification were theoretically available, then, this Court should exercise its "sound discretion" not to order it here. *Lehman*, 416 U.S. at 391.

*Second*, the share-certificate issue is also unworthy of certification because it is not "dispositive" of this case. *Remington Arms*, 796 F. Supp. at 120; *see also Walker v. State Farm Mut. Auto. Ins. Co.*, 661 F. Supp. 930, 935 (D. Del. 1987) (declining to "certify a question to the Delaware Supreme Court which is not absolutely essential to the resolution of the motions" before the court), *aff'd*, 845 F.2d 1019 (3d Cir. 1988) (table). This Court held years ago that Venezuela, having asserted unequivocally that the PDVH Shares were located in Delaware and Crystallex's attachment was secure, is estopped from raising the physical-certificate issue as a defense against Crystallex, D.I. 234 at 21, so it poses no obstacle to this Court's proceeding with the Sale Process as to Crystallex. While Crystallex agrees that it would be *helpful* for this Court to narrow the issues as to other parties by ordering reissuance, that is only true insofar as reissuance could help prevent Venezuela from "manufactur[ing] additional litigation about these issues." D.I. 590 at 2. But certification would have the exact opposite effect, further multiplying litigation instead of simplifying these long-running proceedings.

**b.** The Court also should not certify the "alternativ[e]" question whether Delaware law authorizes "waiv[ing] the physical seizure requirement." Reissuing the share certificate would moot this question. A "moot" question "will not materially affect or advance this case" and so cannot

---

[2] Notably, CITGO went from a $160 million loss for the year ending December 31, 2021 to a record $2,814 million in net income for the year ending December 31, 2022. https://tinyurl.com/56kcw495.

The Honorable Leonard P. Stark
June 23, 2023
Page 5

merit certification. *In re Hechinger Inv. Co.*, 280 B.R. 90, 93-94 (D. Del. 2002). Additionally, all the same problems of delay discussed above also militate strongly against certification of this issue.

On the merits, this question does not meet the requirement to show "important and urgent reasons for an immediate determination by [the Delaware Supreme] Court." Del. Sup. Ct. R. 41(b). "[C]ertification of a question of law is inappropriate in cases, such as this one, where such question of law is not likely to recur." *Mondzelewski v. Pathmark Stores, Inc.*, No. 96-cv-359, 2000 WL 654137, at *17 n.17 (D. Del. Mar. 20, 2000). Here, the physical-seizure issue's global unimportance is evinced by the dearth of case law addressing these matters since 1998—or, indeed, since *Castro v. ITT Corp.*, 598 A.2d 674, 682 (Del. Ch. 1991); *see* D.I. 590 at 6-9. As experience shows, this issue arises only in unusual circumstances (such as the regime change at issue here), making its resolution unworthy of the Delaware Supreme Court's time and limited resources. Moreover, the sole case addressing related issues in recent memory—*Deng v. HK Xu Ding Co.*, 2023 WL 3318322 (Del. Super. Ct. May 8, 2023), which in fact changes nothing in this case as Crystallex explained, D.I. 590 at 7-8—is now on appeal to the Delaware Supreme Court, *see* D.I. 609 at 4 n.4, which can therefore consider the issues it raises without any need for certification. *See, e.g., Underwood v. State*, 77 A.3d 273 (Del. 2013) (table) (refusing certification because the issue "sought to be certified is currently before this Court for consideration in an appeal").

In sum, while the seizure issue may be "interesting," "it would be incorrect to represent to the Delaware Supreme Court" that there exists "any important and urgent reason for certification" on this "moot," idiosyncratic question. *Hechinger*, 280 B.R. at 93-94.

> **6. Does any party dispute RDK's representation that it has a license from OFAC that authorized it to engage in activities incident and necessary to the settlement of claims by RDK against PDVSA and to obtain the writ of attachment *fieri facias* it received from the Superior Court of Delaware? Does any party dispute that the Venezuela Parties waived any sovereign immunity argument they might otherwise have been able to raise against RDK?**

RDK's license appears to be limited to authorizing the settlement of existing claims and payments pursuant to such a settlement—not any new claims or coercive litigation, including attachments and liens. On its face, the license authorizes transactions and activities "ordinarily incident and necessary to the *settlement* of claims" by RDK against PDVSA (§ I), but it expressly "does *not* authorize . . . the entry of any judgment or order that effects a transfer of blocked property" (§ III). D.I. 609-1 at 17 (emphases added). The license therefore does not authorize RDK's purported default judgment and *ex parte* attachment.

Respectfully submitted,

*/s/ Jeffrey L. Moyer*

Jeffrey L. Moyer (#3309)

CC: All counsel of record