

1313 North Market Street, Suite 1001 • Wilmington, DE 19801
Telephone 302.576.1600 • Facsimile 302.576.1100
www.ramllp.com

Garrett B. Moritz

Direct Dial 302.576.1604
gmoritz@ramllp.com

June 23, 2023

**VIA E-FILING**

The Honorable Leonard P. Stark
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

      Re:    *Crystallex International Corp.* v. *Bolivarian Republic of Venezuela,*
              CA No. 1:17-mc-00151-LPS

Dear Judge Stark:

     Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata B.V., Plaintiffs in Case No. 19-mc-00342-LPS, and ConocoPhillips Gulf of Paria B.V., Plaintiff in Case No. 22-mc-00264-LPS (collectively, "ConocoPhillips") respectfully submit this letter brief in response to questions 2, 3, 5 and 6 in the Court's Order of June 21, 2023 (D.I. 615) (the "June 21 Order").

**Question 2:  What is the Venezuela Parties' view as to whether the share certificate is already effectively in possession of the U.S. Marshals as a result of the writ of attachment issued to Crystallex and served on PDVSA in 2018?  Do the Venezuela Parties agree that any additional writs would need to be served on Crystallex?**

     ConocoPhillips' view is that there is no basis in Delaware law for the argument that the share certificate is effectively in the possession of the U.S. Marshals or that additional writs can be effectively served on Crystallex.  Crystallex's lien-by-estoppel is personal to it and specific to its relationship with the Venezuela Parties.  It therefore does not obviate the need for the share certificate to be reissued by PDVH and seized by the U.S. Marshals as contemplated by Delaware law.  The Court should issue an order establishing an orderly process for perfection of attachments by Additional Judgment Creditors, for example, by having the U.S. Marshals deliver the share certificate to the Special Master to administer the perfection of the liens in the priority determined by the Court.  *See* D.I. 574 at 15; D.I. 595 at 4-6.

**Question 3:  Should the Court certify to the Delaware Supreme Court the question of whether, notwithstanding the 1998 amendment of 8 Del. C. § 324 to add reference to Del. C. § 8-112, the Court retains authority under the circumstances presented here to order PDVH to reissue the share certificate or, alternatively, to waive the physical seizure requirement?**

The Honorable Leonard P. Stark
June 23, 2023
Page 2

ConocoPhillips does not believe that certification is warranted. The Venezuela Parties have not disputed that the Court has the power to order PDVH to reissue the share certificate. The only arguments they have made in opposition are that it would require an OFAC license and a bond. *See* D.I. 571 at 15 n.2; D.I. 589 at 7-8; D.I. 610 at 3-5. Both the Delaware General Corporation Law (8 *Del. C.* § 169) and Article 8 of Delaware's UCC (6 *Del. C.* § 8-405) contemplate reissuance when a share certificate cannot be found. For those reasons, ConocoPhillips believes that the Court can proceed to order reissuance without further guidance from the Delaware Supreme Court. *See* D.I. 574 at 13-15.

It is therefore unnecessary to address whether the physical seizure requirement is waivable because the Court can order reissuance, which is preferable. Certification would inherently cause substantial delay, and there is no certainty that the Delaware Supreme Court would hold that the physical seizure requirement is waivable – there is a split in authority among courts construing Article 8. If the requirement is ruled not to be waivable, reissuance would still be available and the appropriate course. Because there is no substantial dispute over the viability of reissuance, ConocoPhillips believes the Court should pursue that course in the first instance.

**Question 5: Do paragraphs 15 and/or 47 and/or any other part of the Sale Procedures Order resolve whether a party whose judgment is added as an Additional Judgment must pay (i) pro rata (i.e., a percentage equal to the ratio of its judgment to the total judgments at issue in the sale) or per capita (i.e., each party with a judgment pays a percentage equal to 1 divided by the number of parties with a judgment that is at issue in the sale), and (ii) fees and expenses retroactive to the beginning of the Special Master's work or only fees and expenses incurred beginning on the date the party's judgment is made an Additional Judgment? If these matters are not viewed as already resolved by the Sale Procedures Order, what should the Court's answers to them be?**

Three orders of this Court are relevant to this question:

- The initial provisions governing payment are in the Order Regarding Special Master, dated May 27, 2021 (the "May 2021 Order") (D.I. 277). Paragraph 14 of the May 2021 Order requires the Sale Process Parties to bear the Special Master's costs equally, with each contributing one-third.

- The Sale Procedures Order, dated October 11, 2022 (D.I. 481), at paragraph 47, provides that "any Additional Judgment Creditor shall be obligated to reimburse its share of the Transaction Expenses pursuant to the May Order (as if such Additional Judgment Creditor were a Sale Process Party) and this Order (for purposes of determining such Additional Judgment Creditor's share of the reimbursement obligation)."

- The Memorandum Order, dated January 11, 2023, denying Red Tree's motion to intervene (the "Red Tree Order") (D.I. 507), states that "if Red Tree were to be added as a new Sale Process Party, it would be equitable for the Court to require Red Tree to pay an equal, per capita share of the Special Master's fees and expenses, to include those incurred to date and all those going forward. That is, if Red Tree's motion were granted, the Court would require Red Tree to pay one-

The Honorable Leonard P. Stark
June 23, 2023
Page 3

> quarter of the amounts already paid to the Special Master, and one-quarter of all such expenditures going forward." D.I. 507 at 5. The Court rejected Red Tree's request to pay only its pro rata share and only going forward, ruling that "[s]uch an approach is entirely inconsistent with the approach the Court has taken to date and appears to have nothing to recommend it." *Id.* at 6.

These three orders resolve the Court's questions. The only mechanism for allocating costs that has been approved is the per capita approach taken in the May 2021 Order. The Sale Procedures Order continues the approach taken in the May 2021 Order by providing that an Additional Judgment Creditor's reimbursement would be as if it were a Sale Process Party, whose reimbursements are per capita. And in the Red Tree Order, the Court ruled that a new participant would be required to pay per capita and on a retroactive basis. While the Court there was specifically addressing Red Tree's request to become a Sale Process Party, the Sale Procedures Order directs that Additional Judgment Creditors must share the expenses as if they were Sale Process Parties. That directive in the Sale Procedures Order also answers the question about retroactivity, as the Court ruled in the Red Tree Order that an added Sale Process Party would be required to cover the expenses from the outset.

There are practical reasons as well for requiring per capita and retroactive reimbursement. Moving to pro rata reimbursement would raise many administrative issues as judgments are added or potentially reduced over time, with resulting reallocations in the relevant percentages. Further, the amount of the Venezuela Parties' share in a pro rata system based on judgment amounts is unknowable. And as to retroactivity, this entire process has been for the benefit of all Additional Judgment Creditors. There is no difference between the work that has taken place to date and the work which is to come in terms of the benefits to creditors, and thus no reason why ConocoPhillips and Crystallex should not be reimbursed for having funded the process to this point.

**Question 6: Does any party dispute RDK's representation that it has a license from OFAC that authorized it to engage in activities incident and necessary to the settlement of claims by RDK against PDVSA and to obtain the writ of attachment fieri facias it received from the Superior Court of Delaware? Does any party dispute that the Venezuela Parties waived any sovereign immunity argument they might otherwise have been able to raise against RDK?**

First, ConocoPhillips disputes RdK's representation that it has a license authorizing it to execute on blocked property pursuant to a writ of attachment. RdK's OFAC license does *not* authorize it to obtain or perfect the writ of *fieri facias* ("*fi fa* writ") it received from the Superior Court of the State of Delaware. The plain language of the license RdK attached to its Reply submission makes clear that it does not allow RdK to obtain a *fi fa* writ, serve that writ on Venezuelan property such as the PDVH shares, or create an attachment on such property. D.I. 609 at 2; D.I. 609-1 at 2. The license instead expressly prohibits it.

RdK relies on Section 1 of its license authorizing RdK to engage in all "activities incident and necessary to the settlement of claims by" RdK against PDVSA, but that language is not sufficient to authorize the issuance and perfection of a writ of attachment in aid of execution on its judgment. D.I. 609 at 2. Authorization for the "settlement of claims" is not sufficient to allow RdK to execute a writ and create an attachment. Indeed, ConocoPhillips possesses a license with substantially similar language regarding the settlement of claims which it has previously exhibited

The Honorable Leonard P. Stark
June 23, 2023
Page 4

to the Court, *see* Case No. 19-mc-342, D.I. 14-1.  This license is solely for the execution and performance of ConocoPhillips' 2018 settlement agreement with PDVSA.  ConocoPhillips acknowledged, at the time, that this license did not allow it to create an attachment on the PDVH shares, and the Court has concurred in this view.[1]  *See* Case No. 19-mc-342, D.I. 43; Case No. 1:22-mc-264, D.I. 2 and 3.

Further, RdK omits from its submission Section 3 of its OFAC license, which states:

> WARNINGS: (a) Except as authorized in SECTION 1, above, this License does not authorize the transfer of any blocked property, the debiting of any blocked account, the entry of any judgment or order that effects a transfer of blocked property, **or the execution of any judgment against property blocked pursuant to any Executive order or Chapter V of Title 31 of the C.F.R.**  (Emphasis added).

This language makes clear that the license does *not* authorize RdK to execute its judgment against the PDVH shares.  Because RdK's purported execution of its writ violated OFAC regulations, it can have no legal effect and is null and void.  *See* C.F.R. § 591.203(e) ("Unless licensed pursuant to this part, any attachment, judgment, decree, lien, execution, garnishment, or other judicial process is null and void with respect to any property and interests in property blocked pursuant to § 591.201").

Second, ConocoPhillips disputes RdK's contention that the Venezuela Parties have necessarily waived any and all potential sovereign immunity arguments.  The Guarantee Agreement RdK exhibits in its Opening submission, D.I. 564-1, contains waivers of immunity by PDVSA with respect to its performance as a "private and commercial" party to the contract.  *Id.* at 5.  It is not clear that this language operated to waive, or could waive, all of the FSIA protections available to PDVSA and/or the Republic.  For example, these waivers would not excuse RdK from the requirements of Section 1610(c) of the FSIA, which requires a court order determining that a reasonable period of time has elapsed following entry of judgment such that a party may proceed with execution.

As always, we appreciate the Court's consideration of this matter.

    Respectfully submitted,

    */s/ Garrett B. Moritz*

    Garrett B. Moritz (Bar No. 5646)

Cc:    All Counsel of Record

---

[1] ConocoPhillips' position as to its legal ability to create an attachment on the PDVH shares is now materially different following OFAC's issuance of a specific license to the Clerk of Court allowing it to issue and order execution of *fi fa* writs in favor of Additional Judgment Creditors.  *See* D.I. 555.