**ReedSmith**
Driving progress through partnership

**Brian M. Rostocki**
Direct Phone: +1 302 778 7561
Email: brostocki@reedsmith.com

Reed Smith LLP
1201 North Market Street
Suite 1500
Wilmington, DE 19801-1163
+1 302 778 7500
Fax +1 302 778 7575
reedsmith.com

June 23, 2023

**BY CM/ECF**

The Honorable Leonard P. Stark
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801-3570

   Re: *Crystallex International Corp. v. Bolivarian Republic of Venezuela*
      D. Del. C.A. No. 1:17-mc-00151-LPS

Dear Judge Stark:

We write on behalf of Siemens Energy, Inc. ("SEI") in response to the Court's Memorandum Order dated June 21, 2023 (D.I. 615) (the "Order"). The Order poses six questions, requires the party noted therein to answer each question, and invites any other interested party (like SEI) to answer any question. To that end, SEI respectfully submits the following answers in response to Question Nos. 2 and 6.

  **Question No. 2** – What is the Venezuela Parties' view as to whether the share certificate is already effectively in the possession of the U.S. Marshals as a result of the writ of attachment issued to Crystallex and served on PDVSA in 2018? Do the Venezuela Parties agree that any additional writs would need to be served on Crystallex?

It is undisputed that Crystallex obtained and served a writ of attachment to execute on the PDVH Shares and that the sale process set forth in the Sale Procedures Order will proceed even if no Additional Judgment Creditors are recognized.[1] Crystallex's entitlement to a writ was based in

---

[1] All capitalized terms that are not expressly defined herein have the meanings given to them in the Sale Procedures Order and the Opening Brief of Siemens Energy Inc. in Response to Memorandum Order Dated May 10, 2023, No. 17-mc-151, D.I. 569 ("SEI's Opening Brief").

ReedSmith

The Honorable Leonard P. Stark
June 23, 2023
Page 2

part on PDVSA's representation that "the PDVH shares are located in Delaware, and they are not going anywhere." D.I. 98 at 6, 15. Indeed, when the Court permitted PDVSA to pursue an interlocutory appeal of the Court's issuance of a writ to Crystallex without posting a bond, it did so in reliance on this statement. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 17-mc-151-LPS, 2021 U.S. Dist. LEXIS 7793, at *37 (D. Del. Jan. 14, 2021). PDVSA then attempted to walk back that statement when the Venezuela Parties moved to quash Crystallex's writ by arguing it was "merely making a representation about a legal fiction, not a statement of fact." *Id.* The Court rightly rejected this revisionist history and held it would be "inequitable for PDVSA to prevail based on its present position, which is incompatible with its prior position." *Id.* Ultimately, the Court refused to quash Crystallex's writ because of PDVSA's prior representations and in order to avoid the inequities that would flow from demanding strict compliance with Section 8-112(a)'s requirement of physical possession. That is, in order to reach a fair outcome, the Court deemed Crystallex to have effectively complied with Section 8-112(a). The Court applied the same holding to PDVH and CITGO and denied the motion quash. *Id.* at *38–41.

Against this backdrop, no party can reasonably deny that the share certificate should be considered as already effectively in the possession of the U.S. Marshals. *See id.* at *30 ("the validity of [Crystallex's] writ has been actually, necessarily, and finally resolved"). Indeed, the sale process that is soon to be underway is necessarily premised on the validity of Crystallex's writ, which is dependent on compliance with Section 8-112(a) and Crystallex's constructive possession of the PDVH share certificate. The most natural and equitable step would be for the Court to adhere the premise underlying the validity of Crystallex's writ—that Crystallex has effectively complied with Section 8-112(a) and is in constructive possession of the shares—with

respect to the remaining creditors as well.

With Crystallex's compliance with Section 8-112(a) established, the implication for the remaining creditors is clear: any additional writs may be served on Crystallex, pursuant to Section 8-112(d), which provides:

> ***The interest of a debtor in a certificated security for which the certificate is in the possession of a secured party***, or in an uncertificated security registered in the name of a secured party, or a security entitlement maintained in the name of a secured party, ***may be reached by a creditor by legal process upon the secured party***.

6 *Del. C.* § 8-112(d) (emphasis added).  Here, the secured party in possession of the certificate is, effectively, Crystallex.  Accordingly, another creditor, like SEI, "may reach[]" the PDVH Shares "by legal process upon the secured party"—Crystallex—and there is thus no merit to the Venezuela Parties' contention that other creditors must seize the share certificate.

Holding that the shares are already effectively in the possession of the U.S. Marshals and that any additional writs may be served on Crystallex is also the most equitable outcome.  To hold otherwise would be to impose a heavier burden on all of the other creditors than that imposed on Crystallex—an outcome that can only work to the Venezuela Parties' benefit.  If the shares are *not* deemed in the effective possession of the U.S. Marshall, then the Venezuela Parties' other creditors must either physically seize the shares—which is not possible because the location of the shares is unknown—or demonstrate why the unavailability of the shares does not foreclose their participation in the sales process.  As noted in SEI's Answering Brief, there are numerous reasons why there is no such foreclosure.  *See* D.I. 608 at 4–10.  But in any event, Crystallex was not required to physically seize the shares as a result of PDVSA's "lack of candor with the Court." *Crystallex*, 2021 U.S. Dist. LEXIS 7793, at *38.  Thus, if other creditors are held to such a

The Honorable Leonard P. Stark  
June 23, 2023  
Page 4

ReedSmith

condition, then the Venezuela Parties will be rewarded for PDVSA's lack of candor through the prospect of a sale involving only *one* creditor—Crystallex—leaving billions of dollars' worth of judgments unsatisfied. Such an inequitable result is not what is contemplated by Delaware law. *See* 6 Del. § 8-112(e) (contemplating that a creditor "is entitled to aid from a court of competent jurisdiction . . . in reaching [shares] or in satisfying the claim by means allowed at law or in equity in regard to property that cannot readily be reached by other legal process"); *see also Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 491 (Del. Ch. 2022) ("[O]ne of the traditional roles of equity has been to deploy fact-specific doctrines to mitigate the sometimes harsh outcomes that a bright line rule of law can produce.").

> **Question No. 6** – Does any party dispute RDK's representation that it has a license from OFAC that authorized it to engage in activities incident and necessary to the settlement of claims by RDK against PDVSA and to obtain the writ of attachment *fieri facias* it received from the Superior Court of Delaware? Does any party dispute that the Venezuela Parties waived any sovereign immunity argument they might otherwise have been able to raise against RDK?

SEI does not dispute that RDK has a license to "engage in all transactions and activities ordinarily incident and necessary to the settlement of claims" by RDK against PDVSA and its subsidiary, Refineria Isla (Curazao) S.A. ("Isla"), arising from the operation by PDVSA and Isla of an oil refinery and terminal in Curaçao. SEI does, however, dispute that such license authorized RDK to obtain the writ of attachment it received from the Superior Court of Delaware.

As this Court has previously recognized, OFAC regulations prohibit judicial process "purporting to ***transfer*** or otherwise alter or affect ***property or interests blocked*** pursuant to [31 C.F.R. § 591.201]" without a specific license. *OI European Grp. B.V. v. Bolivarian Republic of Venez.*, No. 19-290-LPS, 2022 U.S. Dist. LEXIS 36631, at *9 (D. Del. Mar. 2, 2022) (quoting 31

The Honorable Leonard P. Stark
June 23, 2023
Page 5

ReedSmith

C.F.R. § 591.407) (emphasis added).  The PDVH Shares are, undeniably, blocked property.  *Id.* at *3.  Moreover, a "'***transfer*** *may include*, among other things, '***the issuance, docketing, or filing of***, any judgment, decree, [or] ***attachment*** ….'" *Id.* at *10 (quoting 31 C.F.R. § 591.310) (emphasis added).  Thus, OFAC regulations prohibit the issuance of any attachment against the PDVH Shares absent a specific license.

Here, while RDK's license authorizes transactions and activities that are "ordinarily incident and necessary to the settlement of claims," Section III(a) makes clear that the license does ***not*** authorize, among other things, "the transfer of any blocked property."  D.I. 609-1 at 8.  Accordingly, the license did not authorize RDK's writ against the PDVH Shares, which amounts to a prohibited transfer of blocked property, rendering the attachment "null and void."  *OI European Grp. B.V.*, 2022 U.S. Dist. LEXIS 36631, at *11 ("Unless licensed pursuant to this part, any attachment judgment, decree, lien, execution, garnishment, or other judicial process is null and void with respect to any property and interests in property blocked pursuant to § 591.201." (quoting 31 C.F.R. § 591.202(e)).

Respectfully submitted,

*/s/ Brian M. Rostocki*
Brian M. Rostocki
Reed Smith LLP

BMR:dw

*Counsel for Siemens Energy, Inc.*

The Honorable Leonard P. Stark
June 23, 2023
Page 6

ReedSmith

cc:     All Counsel of Record (*via CM/ECF*)