

Travis S. Hunter
302-651-7564
hunter@rlf.com

June 30, 2023

**VIA ECF**

The Honorable Leonard P. Stark
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

      Re:  *Crystallex International Corporation v. Bolivarian Republic of Venezuela et al.*, C.A. No. 17-mc-151-LPS

Dear Judge Stark:

I write on behalf of Crystallex in response to Venezuela's post-hearing letter to the Court on June 27, 2023.  D.I. 639.  As it relates to Crystallex, Venezuela's letter presents only belated and unmeritorious arguments for the proposition that 8 *Del. C.* § 167 does not authorize reissuance of the share certificate, and that Fed. R. Civ. P. 69 instead requires this Court to follow the "state procedure" set forth in Section 168 by directing that PDVSA "'apply to the Court of Chancery for an order.'"  D.I. 639 at 1-2.  According to Venezuela, because "the Delaware Superior Court plainly would not have" the power to "bypass the Delaware Court of Chancery and directly order PDVH to issue the share certificate," neither can this Court.  *Id.* at 2 (emphasis omitted).  Every step of this argument is wrong.

To begin with, none of these arguments addresses any "authorit[y]" that Crystallex "cited for the first time" at the hearing.  *Contra* D.I. 639 at 1.  Crystallex cited 8 *Del. C.* §§ 167 and 168 in its briefing, and relied as well on Section 8-112(e) of the UCC, the provisions discussed in Venezuela's letter.  D.I. 590 at 9; D.I. 611 at 5 & n.3; D.I. 634 at 2.  Other creditors did as well.  D.I. 566 at 5-6 & n.6; D.I. 574 at 14-15; D.I. 586 at 4-5; D.I. 591 at 9-10; D.I. 592 at 5; D.I. 595 at 6-7; D.I. 596 at 5; D.I. 597 at 4-5; D.I. 598 at 2-3; D.I. 603 at 3; D.I. 605 at 3; D.I. 607 at 4; D.I. 630 at 2; D.I. 632 at 1-2; D.I. 635 at 2.  Venezuela had every opportunity to respond to Crystallex at the hearing.  That it failed to think of anything persuasive to say then does not justify a post-hearing letter to attempt, for the first time, to rebut Crystallex's arguments.

Venezuela's belated argument is baseless in any event.  Sections 167 and 168 are adjacent provisions of the Delaware Code that both address the replacement of "lost, stolen[,] or destroyed" share certificates.  Section 167 authorizes a corporation *voluntarily* to issue a new certificate upon request if the owner alleges its loss or destruction, and the corporation presumably is satisfied that the certificate was indeed lost or destroyed.  *Cory v. Tampax Inc.*, 1976 WL 1707, at *5 (Del. Ch. Apr. 30, 1976) (explaining that Section 167 generally provides a corporation "discretion" to issue a new certificate "[i]f it decides to do so").  The corporation "may"—*but need not*—"require the owner . . . to give the corporation a bond sufficient to indemnify it against any claim that may be

The Honorable Leonard P. Stark
June 30, 2023
Page 2

made against it." 8 *Del. C.* § 167. Section 168, by contrast, applies when "a corporation *refuses* to issue . . . a new certificate of stock in place of a certificate theretofore issued by it," presumably because it is not satisfied of the veracity of the allegations of loss or destruction. *Id.* § 168(a) (emphasis added). In that event, the owner must institute a proceeding in Chancery Court in which he must demonstrate both "that [he] is the lawful owner of the number of shares of capital stock, . . . and that the certificate therefor has been lost, stolen[,] or destroyed." *Id.* § 168(b). If the court finds for the owner, its order "shall direct that . . . the plaintiff give the corporation a bond . . . with such security as to the court appears sufficient to indemnify the corporation against any claim that may be made against it." *Id.*

It is readily apparent from the structure of the Code that these provisions address two distinct factual scenarios: (1) under Section 167 a corporation may reissue share certificates if there is no dispute on the question of loss, subject to its *discretionary* right to demand a bond if it apprehends any significant risk from reissuance, and (2) under Section 168 the owner may pursue litigation because the parties dispute a factual predicate for reissuance, and if the court orders shares reissued it may order a bond based on its own assessment of any risk from that reissuance. Venezuela is therefore wrong to contend that the question of "adversity" is legally irrelevant under Delaware's statutory scheme. D.I. 639 at 2. In one scenario there is a dispute, and in the other there is not. Where, as here, both the corporation (PDVH) and the shareholder (PDVSA) *agree* as to loss or destruction and ownership there is no basis under Section 168 for any litigation in Chancery Court (or in *any* court) between them. They have both admitted they have been unable to find the share certificate for years, and they can only speculate that the rogue Maduro regime (the legal equivalent of a thief under Venezuela's own "recognition" and "Act of State" arguments) may have it. *See* D.I. 571 at 2, 5 (admitting that "the physical certificate is not in PDVH's possession" and "presumably is in the hands of the illegitimate and independent Maduro regime"); D.I. 206 at 10 ("To the best of the PDVSA ad hoc board's knowledge, PDVSA does not possess the certificate."). There is likewise no dispute as to ownership; everyone agrees that PDVSA owns 100% of PDVH. Indeed, that is how PDVSA replaced PDVH's board in 2019 and continues to control it and its subsidiaries to this day. *See Jiménez v. Palacios*, 250 A.3d 814, 825 (Del. Ch. 2019) ("the Guaidó-appointed Managing Board, acting for PDVSA as the sole stockholder of PDV Holding took action by a written consent . . . to elect a new board of PDV Holding"), *aff'd*, 237 A.3d 68 (Del. 2020) (table).

It is thus evident that Section 167 provides the clearest statutory authority for this Court to order reissuance of the lost or destroyed share certificate. Indeed, Venezuela has no argument that it does *not* apply. It says only that the provision is not mandatory, and that therefore it is up to Venezuela to invoke it "if it chooses to." D.I. 639 at 2-3. And like Bartleby the Scrivener, Venezuela would very much prefer not to. Section 168, Venezuela says, provides the only available "procedure" under Rule 69 to "compe[l]" reissuance of a certificate, and it requires a new proceeding in Chancery Court and a bond. *Id.* at 3.

These contentions conflate two entirely different questions: (1) whether the share reissuance is authorized under Delaware corporate law if certain factual predicates (loss or destruction and ownership) are met, and (2) whether this Court can compel reissuance. The question of corporate authority is settled by Section 167. But even if Section 167 did not exist, this Court could accept that Section 168 *also* provides authority to order PDVH to reissue the shares (if the factual predicates of loss or destruction and ownership are met) without accepting that this Court must order a parallel proceeding in state court. Indeed, any contention that Rule 69 requires federal courts to follow state "procedures" by sending the case down the street to a state court would appear to be self-refuting. The point of Rule 69 is to follow the state procedures, so far as it is practicable, *in federal court.* See Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts"); *see also, e.g.*, *Duchek v. Jacobi*, 646 F.2d 415, 417 (9th Cir. 1981) ("Nothing in this recitation of the purpose behind rule 69(a) remotely suggests that a federal district court must cede jurisdiction to a state tribunal when a literal reading of the applicable state law indicates that enforcement proceedings must be held in a certain state court."). Moreover, this Court's own authority to compel Venezuela to do something that Delaware law affirmatively authorizes cannot be doubted. Apart from this Court's inherent authority over the management of this case and the parties before it, the UCC expressly permits this Court to reach the certificated security at the instance of a creditor "by injunction or otherwise." 6 *Del. C.* § 8-112(e).

Indeed, as Crystallex noted at the hearing, the Delaware Court of Chancery has made clear—in a case that Crystallex cited at the hearing but that Venezuela could not rebut in its letter—that even statutes that allocate *exclusive* jurisdiction to the Court of Chancery cannot oust federal court jurisdiction over the same subject matter. Such statutes merely "allocat[e] jurisdiction among the Delaware courts." *IMO Daniel Kloiber Dynasty Tr.*, 98 A.3d 924, 939 (Del. Ch. 2014); *accord Vicentini v. Tillster, Inc.*, 2023 WL 3573886, at *4 (S.D. Cal. May 19, 2023) (reaching the same conclusion as to Delaware's books and records law, which similarly vests the Chancery Court with "exclusive jurisdiction" to determine a shareholder's rights to inspect books and records). It thus is indisputable that this Court has the authority—"in th[is] underlying action," *Mitchell v. Lyons Pro. Servs., Inc.*, 727 F. Supp. 2d 120, 123 (E.D.N.Y. 2010)—to *require* PDVH to do what the law *authorizes* PDVH to do, *see* 6 *Del. C.* § 8-112(e); Fed. R. Civ. P. 69.[1] As part of that power, a court "possesses the authority to order a corporation to issue a new stock certificate to replace a lost stock certificate," as other courts have persuasively concluded in analyzing the UCC and other authorities. *Huntington Nat'l Bank v. Bywood, Inc.*, 2017 WL 2241537, at *5 (Ohio Ct. App. May 16, 2017); *see also, e.g.*, *Chevron Corp. v. Donziger*, 2020 WL 3643043, at *6 (S.D. Fla. July 6, 2020) ("In sum, the Court has the authority to order the reissuance of stock certificates").[2] Indeed,

---

[1] Venezuela's letter cites *Mitchell* (at 1) but does not discuss, much less rebut, any of its reasoning.

[2] Venezuela also incorporates by reference its previous suggestion that "other courts" have read different states' versions of Section 8-112(e) to preclude ordering reissuance in like circumstances. D.I. 639 at 3; *see* D.I. 631 at 3 (citing *Huntington*, 2017 WL 2241537, at *4-6; *Wolverine Flagship*

were PDVH to fail to obey an order of this Court, the Court could appoint a receiver to carry out the act. 8 *Del. C.* § 322.

Venezuela suggests that Sections 167 and 168 both require a bond, D.I. 639 at 2-3, but Section 167 states only that a corporation "may" obtain a bond from its shareholder. Whether Section 167 or 168 provides the underlying authority for reissuance, the question of how much of a bond is needed is indisputably judicial, and here Venezuela's own conduct since 2018 establishes that any risk that might be secured by a bond is between negligible and nonexistent. Venezuela speculates about what the Maduro regime might have done with the share certificate, but there is no need to speculate: Before its derecognition, the Maduro government told this Court and the Third Circuit in 2018 that the shares were in Delaware and "not going anywhere." D.I. 98 at 15; *see also* PDVSA Br. 66, Doc. 003113105847, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2797 (3d Cir. Dec. 10, 2018) (the shares "are frozen"); PDVSA Opp. to Mot. to Expedite 18, Doc. 003113121203, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2797 (3d Cir. Dec. 28, 2018) (the shares are not "at risk of being devalued" because "sanctions and Crystallex's writ of attachment also preclude any transactions"). And counsel for the Guaidó government told this Court in 2020 that "the stock cannot be transferred except on the books and records of the company" in Delaware and so "any pledge" by Maduro after our country's derecognition of that regime "would be unauthorized" and "void." D.I. 214 at 77:10-19, *see also id.* at 73:8-11. Thus, no "good faith transferee or pledgee," D.I. 639 at 2, would enter a transaction with the Maduro government on the certificate, and none has come forward in the many years of this internationally publicized litigation. If the Venezuela Parties actually believed there was a risk from the missing certificate, PDVH would have reissued it long ago under Section 167, at the same time it and the other Venezuela Parties expeditiously replaced the Maduro-appointed boards of PDVSA, PDVH, and CITGO. *See Jiménez*, 250 A.3d at 819. That PDVH did not do so shows that it rightly assesses the "risk" as nonexistent, and its sole reason for not reissuing the certificate now is to foil creditors. Thus, no bond (or at most a nominal bond that PDVSA can easily afford to post with its litigation funds) is needed "because there is no risk that a third party may have superior title to the shares." D.I. 597 at 4 (quotation marks omitted) (quoting *Cory*, 1976 WL 1707, at *6).

Crystallex trusts that these points, already aired at the June 26 hearing, thoroughly answer Venezuela's new arguments and Venezuela will not file any new post-hearing arguments on these issues. Eight hundred ninety-seven days have passed since this Court observed that "[e]ach day that

---

*Fund Trading Ltd. v. Am. Oriental Bioengineering, Inc.*, 134 A.3d 992, 995 (N.J. App. Div. 2016)). But these non-Delaware cases have not grown any more helpful to Venezuela since the last time it attempted to rely on them, D.I. 196 at 7, when Crystallex thoroughly rebutted this argument and distinguished the relevant cases, D.I. 201 at 9-10 & n.6 (including by showing that *Huntington* actually says the opposite of what Venezuela claims, as quoted *supra*). Venezuela's belated effort to resurrect this argument by unelaborated citation fails to engage with any of the reasons why "Venezuela's out-of-state authorities fail to carry the weight asked of them," as Crystallex explained years ago, D.I. 201 at 10 n.6.

Crystallex does not recover on its judgment is arguably something of an affront to the United States judicial system.  Those days must soon come to an end."  D.I. 234 at 38.  Crystallex respectfully requests that the Court order PDVH to reissue the lost, stolen, or destroyed share certificate and set a sale Launch Date.

Respectfully submitted,

*/s/ Travis S. Hunter*

Travis S. Hunter (#5350)

CC: All counsel of record