IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | : |
| Plaintiff, | : |
| v. | : Misc. No. 17-151-LPS |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | : |
| Defendant. | : |

## MEMORANDUM ORDER

At Wilmington this **17th** day of **July 2023**, having reviewed the materials submitted by the Sale Process Parties[1] (D.I. 561, 562, 582, 584) and the Special Master (D.I. 583) relating to objections to the Special Master's Supplemental Report and Recommendation (hereinafter, "Recommendation") (D.I. 553), **IT IS HEREBY ORDERED** that the Venezuela Parties' objections to the Recommendation are **OVERRULED**.

1. On April 28, 2023, the Special Master recommended "preparations for the launch of the Marketing Process begin without any further delay beyond the consideration by the Court of this Supplemental Report and any Launch Date Objections." (D.I. 553 ¶ 7) The Special Master further recommended that the Preparation Launch Date be set as soon as practicable after the Court resolves any objections to his Recommendation, a position he reiterated later in responding to the Venezuela Parties' objections. (*Id.*; *see also* D.I. 583 ¶ 12) After considering

---

[1] All capitalized terms have the same meaning given to them in the Sale Procedures Order. (*See* D.I. 481)

two rounds of briefing and hearing argument on the objections (*e.g.*, D.I. 640 at 13-14), the Court **ACCEPTS** the Recommendation, as modified by this Order, and will proceed accordingly.

2. The Venezuela Parties first object to the Recommendation because, in their view, OFAC's recently announced non-enforcement policy does not provide potential bidders and others sufficient certainty to ensure a value-maximizing sale transaction. (*See* D.I. 561 at 4-11) Specifically, the Venezuela Parties express concern as to OFAC's failure to issue a license affirmatively authorizing "holding or participating in a contingent auction," emphasizing that OFAC, instead, provided potential bidders "a mere non-enforcement statement." (*Id.* at 7) The Venezuela Parties point out that OFAC's position can change at any time. (*Id.* at 8-9) They also fault the Special Master for not speaking to potential bidders or service providers about their willingness to participate in the sale process (*id.* at 10-11) despite the Sale Procedures Order ("SPO") (D.I. 481 ¶ 4) authorizing him to "mak[e] market inquiries into potential bidders with respect to the impact of OFAC's position (or their lack thereof) on their willingness to participate in a sale process that is conditioned on OFAC's final approval of any sale transaction."[2]

The Venezuela Parties' objection is utterly unpersuasive, particularly in view of the lengthy history of this case.

---

[2] The Court agrees with the Special Master that neither the SPO nor anything else compelled him to make such market inquiries (*see* D.I. 583 ¶ 11) and he had good reason not to do so, given the government's request that he not disclose its position before filing his Recommendation with the Court. (*See* D.I. 553 ¶ 14 ("[A]s a condition to receiving any guidance, the U.S. Government requested that, prior to the issuance of this Report, I not disclose the contents of the letter to anyone, including the Sale Process Parties, other than to the Court, if necessary."); *id.* ¶ 15 ("Consistent with the U.S. Government's request, I did not distribute the letter to any parties, including the Court, and did not consult the Sale Process Parties, Potential Bidders, or other stakeholders, such as the PDVSA 2020 Bondholders, in formulating my recommendation contained in this Supplemental Report, ***as doing so would be impossible without also discussing the April 7 DOJ Letter or the positions of the U.S. Government described in that letter.***") (emphasis added))

2

In July 2020, the Court received a Statement of Interest from the United States. (*See* D.I. 212) At that time, the United States took the view that "this Court should not authorize Crystallex to take further steps toward a forced sale of PDVH in light of the risk that such steps would harm U.S. foreign policy and national security interests in Venezuela." (*Id.* at 12) The United States urged the Court to "forego further action until after OFAC has issued a decision on Crystallex's pending license application." (*Id.* at 13) More than a year later, in September 2021, OFAC denied Crystallex's application (*see* D.I. 346 Ex. 1) – which sought a license "for not only the execution of a final sale, but also the initiation and undertaking of the sale process." *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 2022 WL 611586, at *14 (D. Del. Mar. 2, 2022); *see also* D.I. 212 Ex. 2 at 1 (application asking OFAC "to provide Crystallex a Specific License to allow the federal court in the District of Delaware . . . to pursue all activities necessary and ordinarily incident to organizing and conducting a judicial sale of the shares [of PDVH owned by PDVSA] as provided for by U.S. federal and Delaware law, regulations, and precedents").

During the ensuing year of litigation over the SPO, much uncertainty surrounded whether a value-maximizing sale transaction could be achieved without guidance from OFAC. *See, e.g.*, *Crystallex*, 2022 WL 611586, at *6-8 (discussing Sale Process Parties' positions on lack of OFAC guidance regarding entry of SPO and possible sale); *see also id.* at *8 ("ConocoPhillips supports the Special Master's thoughtful compromise, which would defer launch of the sale process until OFAC issues additional guidance (if it ever chooses to do so)" (internal quotation marks and citation omitted)). It was hotly disputed whether the Court could even enter the SPO and take prefatory steps toward a sale. *See, e.g., id.* at *6 ("The parties vehemently disagree with one another as to when the Court may, or should, adopt a Sale Procedures Order and begin

implementing it."). As recently as at the March 30, 2023 hearing, the Court acknowledged the then-existing uncertainty surrounding OFAC's position. (D.I. 542 at 121 ("OFAC will tell us its position or it won't tell us its position . . . ."))

Then, very recently, the United States provided a new, clear statement regarding its position toward these proceedings. In a letter to the Special Master dated April 7, 2023,[3] the United States "convey[ed] that OFAC intends to implement a favorable licensing policy for license applications in connection with the execution of a sale as contemplated in the Sales Order or, as applicable, the negotiation of a settlement agreement among the relevant parties." (D.I. 553 Ex. 1 at 2) In that same letter, the U.S. made clear that it is "not seeking to contest" this Court's conclusion that "the existing OFAC 'sanctions regime does not require a specific license from OFAC before the Court may adopt a Sales Procedure Order'" and that "a specific license is not necessary for, and that the current Venezuela sanctions regime does not prohibit, the Prefatory Steps antecedent to the consummation of the Sales Transaction." (*Id.* at 1) (quoting *Crystallex*, 2022 WL 611586, at *12) Moreover, consistent with its new guidance, the United States "considers the Court to have resolved this issue [i.e., the impact of the sanctions regime on the Court's sales process] as to the parties' claims." (*Id.*)[4]

---

[3] The Court became aware of the letter's existence and the contents of this letter only in the Recommendation filed on April 28, 2023.

[4] On May 4, 2022, pursuant to 28 U.S.C. § 1292(b), the Court certified an interlocutory appeal to the Third Circuit regarding its interpretation of the sanctions regime. (*See, e.g.*, D.I. 463 ¶ 12) (asking Third Circuit to address "Whether Executive Orders and regulations issued by the U.S. Treasury Department's Office of Foreign Assets Control, under which the PDVH Shares are blocked property, bar the Court from proceeding with steps toward an auction of the PDVH Shares to satisfy Crystallex's judgment, provided that no sale of the PDVH Shares will be permitted to close unless relevant parties obtain specific licenses from OFAC or the Venezuelan sanctions regime changes so that the PDVH Shares are no longer blocked property") On July 26, 2022, the Third Circuit denied the petitions for leave to appeal. *See* Order, *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 22-8024 (3d Cir. July 26, 2022), ECF No. 28.

4

On May 1, 2023, OFAC published Frequently Asked Question ("FAQ") 1123, amended existing FAQ 808, deleted FAQ 809, and issued a license to this Court's Clerk of Court, authorizing the issuance of writs of attachment to any judgment creditor the Court decides to add as an Additional Judgment Creditor pursuant to the SPO. (*See* D.I. 555 at 6 ("authorizing the issuance and service of a writ of attachment *fieri facias* for any party named an 'Additional Judgment Creditor' by the Court pursuant to the Sale Procedures Order"); D.I. 554 at 1; D.I. 582 at 1) Newly issued FAQ 1123 addresses whether "persons [may] participate in or comply with steps relating to a judicial sale" of "certain shares in PDV Holding" in the *Crystallex* Action. (D.I. 554 Ex. 1) OFAC answered that it "***will not take enforcement action*** against any individuals or entities for participating in, facilitating, or complying with the prefatory steps set out in the court's Sale Procedures Order, or for engaging in transactions that are ordinarily incident and necessary to participating in, facilitating, or complying with such steps (such as serving as potential or actual credit counterparties)." (*Id.*) (emphasis added) FAQ 808 was amended to remove language that a specific license was required for taking possession by, among other methods, attaching property under the sanctions regime or the "creation or perfection of any legal or equitable interests (including contingent or inchoate interests) in blocked property" and to add language that, instead, "creditors may file for writs of attachment without the need for OFAC authorization for matters involving" blocked property. (*Id.* Ex. 2) These all represent profound shifts in the posture of the United States toward the Court's proceedings toward a sale.

Nevertheless, the Venezuela Parties assert that there remain such substantial lingering "uncertainties" that the Court should refrain from moving forward. In taking this position, the Venezuela Parties rely heavily on what they characterize as their expert's "unrebutted"

testimony. (D.I. 640 at 34-35) This expert, Randall Weisenburger, claims that OFAC may change its enforcement position, and the U.S. Department of Justice may civilly or criminally charge individuals and institutions who participate in the Court's sale process, adding that these uncertainties will "significantly chill bidding, resulting in an artificially low sale price." (D.I. 561 at 2) The Venezuela Parties urge the Court to credit Mr. Weisenburger based on his "knowledge of and extensive experience with the behavior of private and public companies contemplating a strategic acquisition." (*Id.* at 10)

The Court does not view Mr. Weisenburger's opinion as unrebutted and is not persuaded by it. The Special Master, who is assisted by expert advisors, disagrees with Mr. Weisenburger – and in the context of these proceedings, the Special Master's input is entitled to at least as much weight as (and comes with greater credibility than) that of an expert for a long-time recalcitrant judgment debtor. Mr. Weisenburger's opinion is based on his experience (*see* D.I. 561 at 10; *see also* D.I. 582 at 6 n.3; D.I. 583 at 8 n.2) – but the Special Master likewise brings a "wealth of experience" to the table, as the Venezuela Parties themselves advised the Court when they recommended him as their preferred candidate to assist the Court. (*See, e.g.*, D.I. 256 at 76-77 (counsel for PDVH, CITGO Holding, Inc., and CITGO Petroleum Corp. stating: "I'll discuss Mr. Pincus because we did bring him to the table initially. Because he really had the experience of doing exactly what the Court wants the Special Master to do here . . . . [H]e has done this. And he does it with a wealth of experience in how to do a transaction that is complex."); *see also* D.I. 244 at 1 (identifying Mr. Pincus as one of "two nominees jointly from the Republic of Venezuela, PDVSA, PDVH, CITGO, and ConocoPhillips"); *id.* at 5-6 (identifying Mr. Pincus as "uniquely qualified," "hav[ing] the expertise necessary to . . . oversee[] a value-maximizing sale," "well-versed in large, commercial transactions that involve complicated corporate

structures and financing," and having "experience crafting and running multi-million dollar corporate auctions," while also emphasizing his "work[] with the petroleum industry")) The Court finds, therefore, that Mr. Weisenburger's testimony is rebutted, and thoroughly and credibly contradicted, by the views expressed by the Special Master.

Alternatively, even if the Court were not, as it is, (far) more persuaded by the evidence in favor of the Special Master's Recommendation (which is also supported by Crystallex and ConocoPhillips) than it is by the contrary evidence submitted by the Venezuela Parties, the Court would still overrule the Venezuela Parties' objections and allow preparation for the Marketing Process to proceed anyway. As Crystallex pointed out at the June 26, 2023 hearing, a judgment debtor has no right to demand, or expect, that a Court will delay a sale needed to effectuate its judgment until market conditions are most favorable to the debtor. (*See* D.I. 640 at 54) The Court is completely convinced that the current moment is an auspicious one in which to initiate the sale process, for all the reasons set out by the Special Master and his advisors, including the market realities identified by the Special Master. (*See* D.I. 553 ¶ 28 ("[T]he current three-year outlook for refining companies is forecasted to significantly exceed the three-year outlook that was in place as of the August 2021 Report . . . ."); *see also id.* ¶ 32 ("[T]oday's capital markets are . . . more than adequate to accommodate a transaction of CITGO's scale."); *see also id.* ¶¶ 28-32) That said, the Court's decision would be the same – to proceed with the sale process – even if that were not the case.

Therefore, while there remains uncertainty as to whether OFAC will authorize the eventual sale of the PDVH shares, and there is always the chance that events will cause the United States to change its policy, the Court is persuaded that the Special Master should proceed promptly with the sale process. OFAC currently "intends to implement a favorable licensing

7

policy" (D.I. 553 Ex. 1 at 2) and the Court agrees with the Special Master that OFAC, by its April 7 letter, FAQs, and license issued to this Court, has provided "*as clear an indication as potential Marketing Process participants could have possibly hoped for*" (D.I. 583 ¶ 11) (emphasis added). The Court is also persuaded by the Special Master's view that "[s]ophisticated actors will understand that OFAC's practice is not to deviate from [its public] pronouncements without an explicit change in policy and accompanying public announcement." (*Id.* ¶ 6) Moreover, as Crystallex explains, those actors understand that "OFAC can, and often does, issue new sanctions and guidance quickly" and are accustomed to accounting for these risks. (*Id.* ¶ 7; *see also* D.I. 582 at 3 (Crystallex explaining that OFAC encourages companies to rely on published OFAC guidance))

In sum, there is far greater certainty now that this process may proceed than there has been at any prior point in this lengthy litigation. The sale process will proceed.

3. The Venezuela Parties' second objection also seeks to delay the launch of the sale process. They assert that, at minimum, the Court should wait to set the Preparation Launch Date until after other litigation is concluded. (*See* D.I. 561 at 11-15) Specifically, they ask that the Court refrain from launching the process until after resolution of (i) six other creditors' appeals to the Third Circuit and (ii) litigation relating to 2020 Bonds issued by the Republic of Venezuela, which is pending in the Second Circuit. (*See id.*) The Venezuela Parties reason that "[t]he Special Master and his Advisors cannot properly prepare for the sale process – much less launch it – without knowing which judgments will be part of the process [as Additional Judgments] and without knowing whether the purported pledge of a majority of the shares of PDVH's most valuable subsidiary, CITGO Holding, Inc., will be upheld." (*Id.* at 2-3) In making their arguments, the Venezuela Parties once again rely on the opinion of Mr.

8

Weisenburger, particularly his statements that "the Special Master cannot . . . without a clear resolution of which judgments are included, . . . meaningfully consult" with PDVSA regarding minority shareholder rights or protections that could minimize the number of shares that must be sold. (*Id.* at 12; *see also id.* at 12-15)

Once more, the Court is not persuaded by the Venezuela Parties. As an initial matter, the six creditor appeals to the Third Circuit have now been resolved. By opinion dated July 7, 2023, the Third Circuit affirmed this Court's determination that PDVSA remained the alter ego of Venezuela at least up until March 2023. *See OI European Grp. B.V. v. Bolivarian Republic of Venez.*, -- F.4th --, 2023 WL 4385930, at *1 (3d Cir. July 7, 2023). This portion of the Venezuela Parties' objection is now moot.

While the 2020 Bondholders litigation is ongoing – the Court's understanding is that the Second Circuit has certified certain questions of New York law to the New York State Court of Appeals (*see, e.g.*, D.I. 640 at 32-33; *Petróleos de Venez. S.A. v. MUFG Union Bank, N.A.*, No. 20-3858, 51 F.4th 456 (2d Cir. Oct. 13, 2022)) – and its resolution could impact the sale process, the Court will not await its outcome before moving forward. As the Special Master (D.I. 583 ¶ 8), Crystallex (*see* D.I. 582 at 6), and ConocoPhillips (*see* D.I. 584 at 1-2) all point out, the SPO provides a timeline that ensures the Special Master has certainty about which judgments will be a part of the sale process by the time he needs to have that information. Specifically, the SPO provides the Court ten calendar days after the Launch Date to designate Additional Judgments. (D.I. 481 ¶ 30) The SPO also contains deadlines for judgment holders to provide the Special Master with their outstanding judgment amounts (*id.* ¶ 32) and a deadline for the Special Master to calculate the final amount of the Attached Judgments (*id.* ¶ 31). The SPO

9

further authorizes the Special Master to consult with the 2020 Bondholders throughout the sale process. (*Id.* ¶ 39)

The Special Master continues to express confidence that the schedule set out in the SPO will give him the best opportunity to conduct a value-maximizing transaction, selling only as many shares of PDVH as are necessary. (*See* D.I. 553 ¶ 34) He is advised by Evercore, which has told him that "Potential Bidders will be fully capable of valuing the PDVH Shares and the CITGO operations agnostic to capital structure, including whether claims held by the PDVSA 2020 Bondholders or other judgment creditors will need to be satisfied by the Sale Transaction proceeds." (D.I. 583 ¶ 10) And as Crystallex credibly explains, "bidders will simply price their view of the risk associated with currently pending litigation when formulating their bids." (D.I. 582 at 7)

In short, the SPO anticipated, and adequately addresses, all of the concerns now raised by the Venezuela Parties. The SPO provides an additional protection for all Sale Process Parties, including the Venezuela Parties (and for Additional Judgment Creditors, if there are any[5]): if the Venezuela Parties' speculation that bids will be chilled actually materializes, the Special Master has discretion to reject "inadequate or insufficient" bids as well as bids that do not "provide[] for a value maximizing sale transaction." (D.I. 481 ¶ 9) The Special Master can also "adjourn the Auction and/or the Sale Hearing." (*Id.*) The Special Master can even choose not to select a Successful Bid (although in that event the Sale Process Parties may move the Court to select a Successful Bid anyway). (*Id.* ¶ 13) The Court will also hear and resolve any objections to the Sale Transaction, including any objection to "the Special Master's recommendation as to which

---

[5] The Court received extensive briefing and has heard lengthy argument on issues including and relating to whether it should add Additional Judgments to the sale process. The Court intends to address these issues in a separate order to be issued in due course.

10

bid is best and whether the Court should accept or reject such bid." (*Id.* ¶¶ 16-19) In the end, the Court "will make the final decision as to whether to accept or reject any bid" (*id.* ¶ 19) and, in doing so, will consider any argument that the process has, for whatever reasons, yielded an unfair result. The Venezuela Parties' fears, then, do not provide cause to delay the Court's launch of the sale process.

Accordingly, the Court is persuaded by the Special Master that he and his advisors can adequately prepare for the sale without knowing, just yet, the total claim pool. (D.I. 561 ¶¶ 8-10) The Court is further persuaded by the Special Master's insistence that the ongoing 2020 Bondholders' litigation will be no impediment to his efforts. (*See* 583 ¶ 10) Hence, at this time, there is simply no reason to further delay starting the sale process.

**IT IS FURTHER ORDERED** that the Court directs the sale to proceed on the following schedule:

| Event | Date |
|---|---|
| Preparation Launch Date | Monday, July 24, 2023 |
| Launch Date | Monday, October 23, 2023 |
| Additional Judgment Deadline | Thursday, November 2, 2023 |
| Tentative Sale Hearing Date | Monday, July 15, 2024 |

The Court will hold the first of its regular *ex parte* meetings with the Special Master sometime before the end of July 2023, at a time and location to be determined. Consistent with the Court's May 10 Order (D.I. 559 ¶ 8), the parties will be advised that the meeting has occurred no later than seven days after its occurrence, by a notice on the *Crystallex* docket (Misc.

11

No. 17-151), which will report on the date and location of the meeting and anything else the Court directs the Special Master to include. A sealed transcript of this meeting will be prepared and will remain sealed until further order of the Court.

```
_____
HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT COURT
```