**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>                Plaintiff,<br><br>    v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>                Defendant. | C.A. No. 17-151-LPS |

**OPENING BRIEF IN SUPPORT OF CRYSTALLEX INTERNATIONAL
CORPORATION'S MOTION FOR AN ORDER COMPELLING PDVH
TO IMMEDIATELY REISSUE THE SHARE CERTIFICATE**

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Miguel A. Estrada
Lucas C. Townsend
Adam M. Smith
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Tel: (202) 955-8500
Fax: (202) 467-0539

Dated: September 7, 2023

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Tel:  (302) 651-7700
Fax:  (302) 651-7701

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................. ii

NATURE AND STAGE OF THE PROCEEDINGS ................................................................. 1

SUMMARY OF ARGUMENT ............................................................................................. 2

STATEMENT OF FACTS ................................................................................................. 3

ARGUMENT ................................................................................................................... 7

      I.     PDVH Omits Key Facts From Its Chancery Court Briefing in Hopes of Obtaining an Order Requiring PDVSA To Post a Bond It Would Be Unable To Pay ....................................................................................... 7

      II.    This Court Has the Power To Order Reissuance of the Certificate .................... 11

CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Castro v. ITT Corp.*,
  598 A.2d 674 ............................................................................................................9

*Cory v. Tampax Inc.*,
  No. CIV.A. 3791, 1976 WL 1707 (Del. Ch. Apr. 30, 1976) ....................................6

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  No. 18-2797 (3d Cir. Dec. 28, 2018) .......................................................................8

*IMO Daniel Kloiber Dynasty Tr.*,
  98 A.3d 924 (Del. Ch. 2014) ...................................................................................12

*Jimenez v. Palacios*,
  250 A.3d 814 (Del. Ch. 2019) ..............................................................................2, 9

## Statutes

6 *Del. C.* § 8-112(e) ......................................................................................................12

6 *Del. C.* § 8-405 ...........................................................................................................6

8 *Del. C.* § 167 .............................................................................................................9

8 *Del. C.* § 168 ............................................................................................................12

8 *Del. C.* § 324(c) ........................................................................................................10

## Rules

Fed. R. Civ. P. 69(a)(1) ...............................................................................................12

## Regulations

E.O. 13808 § 1(b) ...........................................................................................................8

E.O. 13808 § 1(c) ...........................................................................................................8

E.O. 13835 § 1(a)(iii) .....................................................................................................8

E.O. 13835 § 1(b) ...........................................................................................................8

## NATURE AND STAGE OF THE PROCEEDINGS

On July 17, 2023, this Court accorded to "PDVSA, as the owner of the PDVH shares," the "opportunity (for a very limited time) to determine how to proceed" by commencing "an action in the Delaware Court of Chancery seeking an expedited order that PDVH immediately reissue a replacement share certificate."  D.I. 644 at 2 (the "July 17 Order").  The Court made clear that it proceeded in this manner "in an abundance of caution, recognizing the respect owed to a foreign sovereign and its instrumentalities, and in the interest of comity between federal and state courts." Given PDVSA's (and the Venezuelan government's) complete domination of PDVH, and the absence of any true adversity between PDVSA and PDVH, the state court proceedings should be perfunctory and quickly concluded.  With that in mind, the Court invited reconsideration of its Order as early as August 7, 2023 if PDVSA's "actions to comply with this order and produce the share certificate are not proceeding with the necessary speed, or are otherwise unsatisfactory."  *Id*.

PDVSA and PDVH responded to this Court's effort to accord deference to PDVSA's status as a foreign instrumentality with state-court filings that misrepresent and conceal this Court's prior controlling rulings.  Feigning an adversity with PDVSA that could not possibly exist given that PDVSA is its 100% owner with power to appoint PDVH's board of directors, and purporting to fear that the "rogue" and "illegitimate" Maduro regime might have pledged the missing certificate to some "good-faith" creditor who has never emerged despite these long-publicized proceedings, PDVH has asked the Chancery Court to set a bond *between $32 billion and $40 billion.*  To Crystallex's knowledge, such a bond would be the largest in history.  It is doubtful any surety would or could underwrite such a bond, and PDVSA will disclaim any ability to pay it—indeed, counsel has claimed in this Court that PDVSA cannot meet practically any bond requirement.  June 26, 2023 Hr'g Preliminary Tr. ("June 26 Preliminary Transcript") at 103:21 ("PDVSA can't post the bond").  It is obvious that PDVH and PDVSA's goal is to procure from the Chancery Court

1

rulings that will obstruct the sale this Court has ordered—all in a proceeding between two fully aligned entities with no adverse party that can set the record straight.

The insincerity of these arguments appears in high relief when compared to PDVSA's and PDVH's actions in earlier Chancery Court litigation, involving the appointments of new boards of directors for PDVSA's U.S. subsidiaries, including PDVH, following the United States recognition of the Guaido regime. *See Jimenez v. Palacios*, 250 A.3d 814, 825 (Del. Ch. 2019). There, "the Guaido-appointed Managing Board, acting for PDVSA as the sole stockholder of PDV Holding took action by a written consent . . . to elect a new board of PDV Holding," and "the new PDV Holding board executed a unanimous written consent . . . electing a new officer of PDV Holding," and on down the line, with directors for PDVH, CITGO Holding, and CITGO Petroleum all appointed on the same day. *Id.* Everything was done with the minimum formality permitted by Delaware law—as could have occurred here if PDVSA had similarly directed PDVH by written consent to reissue the share certificate under 8 *Del. C.* § 167 without litigation or a bond.

PDVSA's and PDVH's actions and filings in Chancery Court lay bare the fact that they never intended the expeditious reissuance of the lost certificate. They are instead trying to use the Chancery proceeding to stop the sale. As this Court explained, the July 17 Order in no way implied that this Court believed it lacks the authority to "order[] reissuance of the PDVH share certificate" itself. Crystallex submits that PDVSA's and PDVH's actions and arguments establish that this Court should reconsider its July 17 Order, and it respectfully requests that the Court order PDVH to reissue the share certificate without further delay.

## SUMMARY OF ARGUMENT

I.      Despite being 100% owned and controlled by PDVSA (and the Venezuelan government), PDVH has asked the Chancery Court to require PDVSA to post an indemnity bond between $32 billion and $40 billion, a bond the Venezuela Parties already argued to this Court that

PDVSA would be unable to pay.  PDVH's request is based on its self-serving valuation of the company, using a self-selected 8–10 times EBITDA multiple.  No amount of analysis, of which there is none, could justify PDVH's impossible demand.  The absence of good faith is clear.  Any argument that PDVH is entitled to anything more than a nominal bond is baseless.  PDVSA cannot have sold or pledged the PDVH shares in light of OFAC sanctions, and both the Maduro and opposition regimes have long represented to this Court that they have not engaged in any such transactions, which they accepted would be void in any event.  Moreover, this action has been so widely publicized that it is inconceivable that the PDVH shares could have been pledged or sold to any bona fide purchaser or pledgee without notice of these proceedings, U.S. Sanctions, and Crystallex's attachment.  This Court should not allow PDVSA and PDVH to re-litigate their frivolous arguments in Chancery Court, nor to continue in their efforts to surreptitiously derail the sale process ordered by this Court.

II.     Under the Federal Rules of Civil Procedure, this Court has all the tools provided under Delaware law to enforce Crystallex's judgment, including the power to compel reissuance of the lost, stolen, or destroyed share certificate.  It has exclusive jurisdiction to enforce Crystallex's judgment, and OFAC has expressly permitted it to take all steps necessary to do so prior to final consummation of the sale.  Because the Venezuela Parties are attempting to use the Chancery Court action to stall the sale process, this Court should reconsider its July 17 Order and directly exercise its authority to compel PDVH to reissue the share certificate.

## STATEMENT OF FACTS

In order to facilitate the sale of the PDVH shares, this Court ordered PDVSA to either provide the PDVH share certificate to the special master or, if the certificate is lost, stolen, or destroyed, to take steps to promptly obtain a reissued certificate. D.I. 644 at 1–2. "[R]ecognizing the respect owed to a foreign sovereign nation and its instrumentalities, and in the interests of

comity," with respect to reissuance, the July 17 Order gave PDVSA the option of either (1) asking this Court to order PDVH to immediately reissue the share certificate; or (2) initiating a new proceeding in Delaware Chancery Court to compel reissuance of the certificate. *Id*. at 2.

Consistent with its track record of attempting to obstruct and delay the sale process, *see, e.g.*, D.I. 643 (overruling Venezuela's objections to the special master's recommendations that sought "to delay the launch of the sale process"); D.I. 443 at 2–12 (denying Venezuela's first motion to disqualify the special master); D.I. 544 (denying Venezuela's second motion to disqualify the Special Master), PDVSA declined to ask this Court to order PDVH to immediately reissue the certificate. Instead, it opted for a purported "adversarial" proceeding against PDVH in Chancery Court. But the July 17 Order also required that PDVSA seek an expedited order from the Chancery Court, and provided that Crystallex (and other creditors) could seek reconsideration and "ask[] this Court to order reissuance of the share certificate" if PDVSA is not "proceeding with the necessary speed," or its actions are "otherwise unsatisfactory." D.I. 644 at 3.

The conduct of PDVSA and its wholly-owned subsidiary has been anything but satisfactory. Rather, PDVSA and PDVH are using the Delaware Chancery proceeding to obstruct and delay the sale of the PDVH shares ordered by this Court. By letter dated July 26, 2023, PDVSA asked PDVH to issue a replacement share certificate. Ex. A. Two days later, PDVH responded that it would comply on two conditions, both of which were lifted from the Venezuela Parties' prior briefing in this Court. *See* D.I. 589 at 7–8; D.I. 610 at 3–5. *First*, PDVH demanded a bond "sufficient to indemnify [PDVH] against any claim that may be made against it on account of the alleged loss, theft or destruction" of the share certificate. Ex. B at 1 (alteration in original). *Second*, PDVH stated that "cancelling the current certificate, issuing a new share certificate, and/or accepting a bond may require specific authorization from OFAC." *Id.* at 1–2.

PDVSA filed its complaint in Chancery Court on July 31, 2023, Ex. C, formally served the complaint (PDVH evidently did not waive service), Ex. D, and filed an unopposed motion to expedite that falsely represented to the Chancery Court that "[u]ntil this Court issues an order for the issuance of the new share certificate, the District Court proceedings will be halted." Ex. E at 3.

PDVH filed its Answer on August 22, 2023. Ex. F. PDVH generally admitted PDVSA's allegations, but, in blatant contradiction of its public position that it is 100% owned by PDVSA, took no position with respect to PDVSA's allegation that it is the "lawful owner of all 1,000 shares of PDVH Stock." *Id.* ¶ 5; *cf.* CITGO Petroleum, *Our Corporate Structure*, https://www.citgo.com/about/fueling-venezuelas-future (accessed Sept. 7, 2023) ("Petróleos de Venezuela (PDVSA), the Venezuelan state oil company, owns 100% of the stock of PDV Holding"). PDVH also took no position with respect to PDVSA's suggestion that the certificate could be lost or destroyed, and averred that it is "unknown to PDVH if Certificate No. 2 is in the possession of . . . some other person or entity, [or if the certificate] has been transferred or pledged . . . ." *Id.* ¶ 13. In its Answer, PDVH asserted an affirmative defense requesting that it be ordered to issue a replacement certificate only on the conditions that (i) the Chancery Court first find that the certificate is lost, stolen, or destroyed and (ii) "that the Court expressly condition that obligation on PDVSA filing with PDVH an indemnity bond in an amount to be determined as sufficient by the Court." *Id.* at 6–7.

PDVSA and PDVH then entered a joint Briefing Stipulation on August 24, 2023. Under that schedule, which provides PDVH, the non-movant, with two briefs to PDVSA's one, PDVH's Opening Brief was due on August 25, 2023, PDVSA's Answering Brief is due on September 12, 2023, PDVH's Reply Brief is due on September 20, 2023, and a hearing on PDVSA's Order to Show Cause is scheduled to take place on September 22, 2023 at 1:30 p.m. Ex. G ¶¶ 2–3.

PDVH's Opening Brief abandoned its argument that it could only issue a replacement certificate with permission from OFAC because "OFAC ha[d] advised PDVH that formal approval is not required under present circumstances."  Ex. H at 8, n.4.  Otherwise, PDVH expanded on its argument that it did not object to issuing a new share certificate to PDVSA, so long as:

> the Court is satisfied that (a) plaintiff is the lawful owner of the shares at issue; (b) the certificate for those shares has been lost, stolen or destroyed, and (c) the plaintiff gives the corporation a bond sufficient to indemnify the corporation against any claim that may be made against it on account of the alleged loss, theft or destruction of the original certificate.

*Id.* at 9.

With respect to the first prong of its argument, PDVH—a company (i) that has never challenged PDVSA's ownership, (ii) whose share register reflects PDVSA as an owner, and (iii) that allows PDVSA to exercise all rights incident to ownership without regard to the location or holding of the physical share certificate—"t[ook] no position on whether PDVSA ha[d] met its burden of proving" it is the lawful owner of the PDVH shares.  *Id.*  PDVH also "t[ook] no position on whether PDVSA ha[d] met its burden of proving" the certificate had been lost, stolen, or destroyed, but nevertheless asserted that "there may be ambiguity for the Court to resolve regarding whether the certificate is truly lost, stolen or destroyed."  *Id.* at 9–10.

PDVH dedicated the remainder of its Opening Brief to arguments that an unprecedented bond is required due to the supposed risk that reissuance of the certificate could subject PDVH to unlimited liability for claims brought by a "bona fide purchaser or pledgee" of the original certificate pursuant to the UCC, as enacted at 6 *Del. C*. § 8-405, despite the protections afforded by Section 168.  Ex. H at 11.  That argument, however, is completely at odds with PDVH's assertion before this Court that any bond required pursuant to Section 168 would "'establish the outside limits of PDVH's liability' going forward."  D.I. 610 at 4 (quoting *Cory v. Tampax Inc.*, No.

6

CIV.A. 3791, 1976 WL 1707, at *5 (Del. Ch. Apr. 30, 1976)) (internal correction omitted).  PDVH

omits any mention of its prior inconsistent position in its Opening Brief to the Chancery Court.

## ARGUMENT

As explained in Crystallex's prior briefing and at the June 26, 2023 hearing, *see* D.I. 590

at 10; D.I. 611 at 4–5; June 26 Preliminary Tr. at 81:8–92:24, 193:2–195:4, none of the procedural

obstacles cited in PDVH's letter or its August 25 opening brief is necessary or appropriate, and

none is reason to delay the immediate reissuance of the PDVH share certificate.  This Court should

foreclose the Venezuela Parties' threat to the sale process through attempted re-litigation of these

issues in Chancery Court, and order PDVSA to cause PDVH to immediately reissue the certificate

without further objection.

### I.    PDVH Omits Key Facts From Its Chancery Court Briefing in Hopes of Ob-taining an Order Requiring PDVSA To Post a Bond It Would Be Unable To Pay

The Venezuela Parties evidently hope to delay reissuance of the certificate by persuading

the Chancery Court, in a contrived proceeding with no actual adverse party, to require PDVSA to

post a **$32 billion to $40 billion indemnity bond**—an amount equal to 8 to 10 times PDVH's

most recent (record) earnings, or to deny PDVSA's request for an order that PDVH reissue the

certificate on the grounds that PDVSA is unable to post such a bond.  *See* Ex. H at 12, 14.  But

PDVH's suggestion that there could be any "*bona fide* purchaser or pledgee" of the PDVH shares,

Ex. H at 13, is beyond fanciful.  PDVSA could not have sold or pledged its PDVH shares to a bona

fide purchaser or pledgee in light of OFAC sanctions and its representations to this Court in these

well-publicized proceedings.  As PDVH's counsel told this Court in 2020, "the stock cannot be

transferred except on the books and records of the company," "[t]he company is not going to trans-

fer stock given the current situation," "I don't believe there's any risk of it being transferred," and

"any pledge that was done after the change in Government would be unauthorized and be void."
D.I. 214 at 77:10–19.

And before the change in Venezuela's government, counsel representing PDVSA under
the control of the Maduro regime represented to this Court in 2018 that the attached shares "are
located in Delaware, and they are not going anywhere."  D.I. 98 at 6, 15.  PDVSA further con-
firmed that "[t]he Writ prohibits [the shares'] disposition, and the Executive Orders operate as a
restraint by prohibiting PDVSA from receiving dividends **or transferring the shares**."  *Id.* at 15
(emphasis added).  In PDVSA's own words, "a sale of the PDVH shares [could] not occur" under
the Executive Order in place at the time this Court issued the writ attaching the PDVH shares.  *Id.*
(citing E.O. 13808 § 1(b)–(c); E.O. 13835 § 1(a)(iii), (b); OFAC FAQ No. 596.).

PDVSA continued to argue that no third party could possibly assert a right in the PDVH
shares throughout 2018.  Just weeks before the change in Venezuela's government, PDVSA rep-
resented to the Third Circuit that OFAC "sanctions and Crystallex's writ of attachment ***also pre-
clude any transactions in the PDVH shares.***"  Petróleos de Venezuela, S.A.'s Opp'n to Mot. to
Expedite Oral Argument at 18, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-
2797 (3d Cir. Dec. 28, 2018).

Unsurprisingly, PDVH failed to apprise the Chancery Court of any these facts.  Had PDVH
done so, it would have revealed the lack of merit in its argument that a lost, stolen, or destroyed
certificate poses a risk to PDVH, or that any third party could legitimately sue PDVH for damages
based on the reissuance of the share certificate.  If any other owner or pledgee existed, they would
have long ago appeared in these proceedings to assert their rights, and would have appeared in
previous Chancery Court actions that decided whether the Maduro or Guaidó regime could appoint

the PDVH board, because, if there were some secret third-party owner of the PDVH shares, it would be they, not either Venezuelan government, that controlled PDVH.

If PDVH had any legitimate concern about potential liability from the missing share certificate, it should have sought reissuance and a bond years ago, when it asked the Delaware Chancery Court to recognize the new Guaidó-backed slate of directors. *See Jimenez v. Palacios*, 250 A.3d 814 (Del. Ch. 2019). Instead, PDVH took no action then. This failure to act is particularly telling given that PDVH speculates that the share certificate "presumably is in the hands of the illegitimate and independent Maduro regime," D.I. 571 at 9—which, as the equivalent of a thief with no lawful claim to the share certificate or any other state property, could not have validly pledged the certificate to anyone. Neither PDVSA nor PDVH saw any risk to themselves in 2019 from the fact that the certificate was supposedly missing and there is no risk to PDVH now.

PDVH kept these facts from the Chancery Court in order to derail the sale process.[1] PDVH now argues that PDVSA's request for a reissued certificate should be denied if it is unable to post a bond between $32 billion and $40 billion. *See* Ex. H at 12. PDVH relied on *Castro v. ITT Corp.*, 598 A.2d 674, arguing that "a bond [i]s statutorily required, notwithstanding the commercial difficulty of obtaining such a bond." *Id.* Of course, a bond is only required if the issuer requests it, 8 *Del. C.* § 167, and PDVH's request is not made in good faith. PDVH has already represented to this Court that PDVSA cannot post such a bond because, apart from its interest in PDVH, "PDVSA has no other available assets," D.I. 610 at 4, except "perhaps some small amounts of money that [PDVSA] uses for its attorney's fees." June 26 Preliminary Tr. at 104:12–15. In other words, the

---

[1] Given the Venezuela Parties' conduct to date, including their dilatory and collusive tactics in the Chancery Court action and joint insistence before this Court that a significant bond must be posted before the share certificate can be reissued, D.I. 589 at 8; D.I. 610 at 4, PDVSA cannot be expected to disclose these facts in supposed opposition to PDVH's submission.

Venezuela Parties are hoping to engineer a situation where reissuance is conditioned on an impossibility while withholding critical facts from the Chancery Court.

PDVH's arguments also ignore the limited nature of the bond required here. Even if a bond were appropriate under these circumstances—it is not—the bond would need to run only until the sale is completed. Any bond issued pursuant to Section 167 or Section 168 of the Delaware Corporate Code would be in place only so long as PDVSA remains the nominal owner of the PDVH shares. Section 324, pursuant to which the sale process will be conducted, provides that:

> The court which issued the levy and confirmed the sale shall have the power to make an order compelling the corporation, the shares of which were sold, to issue new certificates or uncertificated shares to the purchaser at the sale and to cancel the registration of the shares attached on the books of the corporation upon the giving of an open end bond by such purchaser adequate to protect such corporation.

8 *Del. C.* § 324(c). Thus, it is the purchaser, not PDVSA, that will be responsible for any long-term bond. Given the magnitude of the judgments that are likely to be included in any final sale order, it seems impossible that any sale will be for less than 100 percent of the PDVH shares. And, if that is the case, no new owner of PDVH would force itself to post a bond.[2] Of course, none of this is mentioned anywhere in the Venezuela Parties' Chancery Court filings to date.

Moreover, PDVH is acting in bad faith by inviting the Chancery Court to reconsider several issues already briefed and decided by this Court. For example, PDVH claims it has "no position" on whether PDVSA is the lawful owner of the PDVH shares. Ex. H at 9. That issue was finally decided by this Court, which ruled in 2018 that PDVSA was the nominal owner of the PDVH shares, but was the alter ego of Venezuela. *See, e.g.*, D.I. 83 at 60 ("The PDVH shares are used for a commercial purpose because, through them, PDVSA manages its ownership of PDVH and,

---

[2] Given the proposal that the newly issued share certificate will be placed in the custody of the Special Master until the PDVH shares are sold, there is no reason for this Court to require PDVSA to post a bond at this time, as PDVH cannot be injured by the Special Master holding the certificate.

consequently, CITGO, in the United States.").  PDVH also says it has "no position" on whether the share certificate is lost, stolen or destroyed, and suggests there "may be ambiguity for the Court to resolve" on this issue.  Ex. H at 9.  But PDVH cannot relitigate in Chancery Court PDVSA's admission that "the share certificate has been lost, stolen, or destroyed pursuant to 8 *Del. C.* §§ 16768," D.I. 645 at 1, nor this Court's acknowledgement of that fact in issuing the July 17 Order, D.I. 646 at 2.  Finally, PDVH argues gratuitously that, "under Delaware law, the effective attachment and court-ordered sale of PDVSA's shares of PDVH requires physical seizure of the share certificate." Ex. H. at 6.  Again, that issue has been decided as to Crystallex and fully briefed and argued in federal court as to other creditors.  It also cannot be relitigated in Chancery Court.

By using a non-adversarial proceeding between PDVH and its 100% owner to pretend that an impossible bond must be posted, and to question PDVSA's ownership and whether the certificate is lost, PDVH is acting in bad faith.  PDVH's recent actions and the long history of this litigation show that the Venezuela Parties cannot be trusted to collusively "litigate" share reissuance in their preferred state court forum.  This Court should put an end to the Venezuela Parties' attempt to delay or even block the reissuance of the share certificate by arguing that a bond—let alone the impossible bond suggested by PDVH—is necessary to protect PDVH.

## II.     This Court Has the Power To Order Reissuance of the Certificate

This Court noted in its July 17 Order that its decision to give PDVSA "the first opportunity (for a very limited time) to determine how to proceed should not be construed as an indication that this Court believes . . . Delaware law poses an impediment to this Court ordering reissuance of the PDVH share certificate." D.I. 644 at 2.  Indeed, this Court has the power to conduct all "proceedings supplementary to and in aid of judgment or execution" in "accord with the procedure of the

state where the court is located," Fed. R. Civ. P. 69(a)(1), which includes the power to "aid" cred-itors "by injunction or otherwise, in reaching [a] certificated security." 6 *Del. C.* § 8-112(e). Thus, this Court can cause PDVSA to direct the reissuance of the share certificate and to direct PDVH to do so without a bond, which PDVSA could do itself pursuant to 8 *Del. C.* § 167 and its powers as sole owner of PDVH. And this Court has the power to cause PDVSA to request the reissuance of the share certificate and to direct PDVH not to oppose that request or to seek a bond, pursuant to 8 *Del. C.* § 168.

This Court also has all the powers of the Chancery Court to order the reissuance of a lost, stolen, or destroyed share certificate under 8 *Del. C.* § 168. It has exclusive jurisdiction to enforce Crystallex's judgment in this district, and a license from OFAC to do just that. "When a Delaware state statute assigns exclusive jurisdiction to a particular Delaware court, the statute is allocating jurisdiction among the Delaware courts. The state is *not* making a claim against the world that no court outside of Delaware can exercise jurisdiction over that type of case." *IMO Daniel Kloiber Dynasty Tr.*, 98 A.3d 924, 939 (Del. Ch. 2014). The adversarial reissuance statute, 8 *Del. C.* § 168, merely allocates jurisdiction among the Delaware courts. Neither it nor 8 *Del. C.* § 167 imposes any limit on this Court's jurisdiction—which has been fully affirmed—to enforce Crystallex's federal judgment and carry out the sale. No principle of comity between state and federal courts requires this Court to entertain the Venezuela Parties' continuing delay, nor their disregard for the spirit of the Court's July 17 Order.

Crystallex therefore respectfully requests that this Court order PDVH to immediately reis-sue the share certificate.

## CONCLUSION

For these reasons, Crystallex respectfully requests that this Court order PDVH to immediately reissue PDVSA's share certificate and provide and deposit the reissued certificate with the Special Master.

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166
(212) 351-4000

Miguel A. Estrada
Lucas C. Townsend
Adam M. Smith
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Tel: (202) 955-8500
Fax: (202) 467-0539

Dated: September 7, 2023

/s/ Jeffrey L. Moyer
Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700
dicamillo@rlf.com
moyer@rlf.com
hunter@rlf.com

*Attorneys for Plaintiff*

13