## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-mc-00151-LPS |
| | ) | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

### PDV HOLDING, INC.'S RESPONSE IN OPPOSITION TO CRYSTALLEX, CONOCOPHILLIPS', AND THE SPECIAL MASTER'S MOTIONS FOR AN ORDER COMPELLING PDVH TO IMMEDIATELY REISSUE THE SHARE CERTIFICATE

OF COUNSEL:
Nathan P. Eimer
Lisa S. Meyer
Daniel D. Birk
Gregory M. Schweizer
Emily E. Sullivan
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com
DBirk@eimerstahl.com
GSchweizer@eimerstahl.com
ESullivan@eimerstahl.com

Kenneth J. Nachbar (#2067)
Susan W. Waesco (#4476)
Alexandra M. Cumings (#6146)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@morrisnichols.com
SWaesco@morrisnichols.com
ACumings@morrisnichols.com

*Attorneys for PDV Holding, Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ............................................................................................................... 5

    I.      There Is No Reason to Reconsider the Court's Prior Order. .................................. 5

          A.      The Chancery Proceedings Are Progressing Expeditiously. ...................... 5

          B.      The Chancery Proceedings Are Not "Otherwise Unsatisfactory." ............. 7

    II.     This Court Does Not Have the Power to Order Reissuance in This Posture. ........ 13

CONCLUSION ........................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Castro v. ITT Corp.*,
    598 A.2d 674 (Del. Ch. 1991) ............................................................... 11

*First Nat'l Bank in Dallas v. Dyes*,
    638 S.W.2d 957 (Tex. Ct. App. 1982) .................................................... 13

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) ................................................................................ 15

*Mastellone v. Argo Oil Corp.*,
    82 A.2d 379 (Del. 1951) ......................................................................... 16

*Merrill Lynch Pierce Fenner & Smith, Inc. v. North European Oil Royalty Trust*,
    490 A.2d 558 (Del. 1985) ........................................................ 4, 11, 14, 15

*Pennsylvania v. Williams*,
    294 U.S. 176 (1935) ................................................................................ 15

*Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*,
    495 F. Supp. 3d 257 (S.D.N.Y. 2020) .................................................... 3

*Wolverine Flagship Fund Trading Ltd. v. Am. Oriental Bioengineering, Inc.*,
    134 A.3d 992 (N.J. App. Div. 2016) ...................................................... 13

**Statutes**

6 *Del. C.* § 8-405 ........................................................................... passim

8 *Del. C.* § 167 ............................................................................... 13, 14

8 *Del. C.* § 168 ............................................................................... passim

8 *Del. C.* § 324 ............................................................................... passim

**Rules**

Federal Rule of Civil Procedure 69(a) ............................................. 4, 13

**Other Authorities**

Alexandra Ulmer & Marianna Parraga, "Russian oil firm shuffles Venezuela assets as
sanctions bite," Reuters (Mar. 28, 2022). .................................................................. 9

Andrew Hayley, Vivian Sequera, et. al., "Venezuela's Maduro seeks to renew Beijing ties
amid China-West tensions," Reuters (Sept. 8, 2023) ................................................. 9

Deisy Buitrageo & Vivian Sequera, "Iran, Venezuela eye trade increase, sign petrochemical
deal," Reuters (June 12, 2023) .................................................................................... 9

## PRELIMINARY STATEMENT

In full compliance with this Court's July 17, 2023 Order (D.I. 644), PDVSA promptly commenced an action in the Delaware Court of Chancery to compel PDVH to reissue the share certificate pursuant to the procedures set out in 8 *Del. C.* § 168, moved to expedite the action, and filed a motion for an order to show cause why the certificate should not be ordered reissued. PDVH consented to PDVSA's motion to expedite and—jointly with PDVSA—asked the Court of Chancery for the earliest available date on which PDVSA's motion to show cause could be heard. As a result, Vice Chancellor Fioravanti will hear PDVSA's application on September 22, 2023. This Court should not step in and circumvent an ongoing state-court proceeding that the Court itself ordered. To do so would require accepting the creditors' unfounded attacks, would interfere with state court proceedings, and would be entirely premature. The Court should allow the Court of Chancery proceeding it invited to run its (expedited) course.

In its August 25 brief responding to PDVSA's motion to show cause, PDVH stated that it would not oppose reissuance but noted—as it always has noted in this Court—that Delaware law conditions reissuance of the certificate on the posting of a bond sufficient to indemnify PDVH against any claims brought by the current holder or *bona fide* purchaser, transferee, or pledgee of the certificate. Such a bond is required by Delaware law and is necessary to protect PDVH and its directors and officers from liability on future claims, which are far from certain but are undeniably a plausible risk, and against which PDVH's officers and directors have a fiduciary duty to protect the company. Contrary to the overwrought accusations of Crystallex and ConocoPhillips (together, "Movants")[1] and the Special Master, PDVH did not ask for a $32–$40 billion bond and has no

---

[1] ConocoPhillips appears to join Crystallex's motion (D.I. 710) in full (*see* D.I. 718). Accordingly, PDVH attributes each of Crystallex's arguments to ConocoPhillips, as well. The Special Master filed a "limited joinder" (D.I. 720), and PDVH thus addresses his brief separately.

intention of asking for a bond in such an amount at the September 22 hearing. PDVH is filing this opposition brief early to clear up the considerable confusion about that figure. PDVH's August 25 brief did not ask for a specific bond amount or express a position on the current value of PDVH. The brief instead hypothesized that, if a purported transferee or pledgee of the certificate were to sue PDVH for reissuing the share certificate, that claimant may argue that PDVH is valued at as much as 8–10x CITGO's EBITDA—resulting in a $32–40 billion damages claim. That figure does not represent PDVH's expectation for a bond or current assessment of its own value. To the extent that Crystallex and others have misread its brief, PDVH will make clear to the Court of Chancery that PDVH has no intention of asking for a bond anywhere near the amount suggested by Crystallex. Ultimately, the Court of Chancery will determine—presumably on an expedited basis—what bond amount is sufficient after hearing from both parties and any other interested party that may intervene, based on the facts and evidence presented to it. PDVH expects that the Court of Chancery's experience and expertise will result in a reasonable bond that accounts for— and protects PDVH from—the risks associated with reissuance of the certificate, as required by Delaware law.

On September 12, 2023, this Court rightly rejected Movants' request for expedited resolution of their motion. Moreover, despite unsatisfactory answers from Movants about why they failed to seek leave to intervene in the Court of Chancery proceedings to raise concerns about PDVH's filing, the Court resolved Movants' purported concerns by ordering Crystallex to provide PDVH with the judicial orders that Crystallex believes should be before the Court of Chancery when it decides PDVSA's application. The Court of Chancery is fully capable of resolving the issue of Delaware law presented to it by PDVSA's expedited action, which comports with this

Court's orders in all respects. Accordingly, the Court should deny Movants' and the Special Master's motion altogether.

First, "PDVSA's actions to comply with [the Court's] Order and produce the share certificate are … proceeding with the necessary speed." D.I. 644 at 3. A hearing in the expedited Chancery proceeding is set for a week from Friday—September 22—and there is no reason to think the Court of Chancery's timeline poses a risk to the sale process here. All parties agree that the Step 7 deadline for creditors to perfect their attachments (the point in time when seizure of the certificate would be consequential for would-be Additional Judgment Creditors) should be set for a date well into 2024 (*see* D.I. 693 at 3–4). Indeed, in waiting to seek emergency relief until sixteen days after PDVH's Answer and thirteen days after PDVH's opening brief, Movants have forfeited any credible argument that time is of the essence.

Second, "PDVSA's actions … are [not] otherwise unsatisfactory." D.I. 644 at 3. Movants have mischaracterized the filings in the Court of Chancery and misunderstood the basic reason why a bond is necessary. While PDVH does not believe that the illegitimate Maduro regime can lawfully sell or pledge the shares, that does not prevent a third-party purchaser or pledgee from arguing otherwise, and a court may well agree, as the litigation over the pledge to the PDVSA 2020 Bondholders well illustrates. *E.g.*, *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 495 F. Supp. 3d 257 (S.D.N.Y. 2020). Not only are Movants' complaints mistaken, but they are also misdirected: If they believe that PDVH's estimation of the need for a bond is incorrect, then instead of asking this Court to push aside the Court of Chancery proceedings, they should have sought leave to intervene in those proceedings to present their views in that court. They advised this Court on September 12 that they have no intention of doing so, demonstrating that their real goal is to have this Court substitute its own judgment for that of the Court of Chancery, relitigate

settled issues, and dispense with Delaware law's clear indemnity protections for issuers. This Court should decline that invitation.

Third, this Court lacks the authority under Delaware law (applicable here by virtue of Federal Rule of Civil Procedure 69(a)) to order PDVH to reissue the share certificate at this time. Delaware law does not authorize a court in a judgment enforcement proceeding to order a garnishee corporation to reissue a lost, stolen, or destroyed share certificate prior to the sale—it may do so only *after* the sale is confirmed. *See* 8 *Del. C.* § 324(c). Otherwise, Delaware law authorizes an order compelling reissuance only upon an action filed by the owner of the shares against the issuer. *See* 8 *Del. C.* § 168; 6 *Del. C.* § 8-405(a); *Merrill Lynch Pierce Fenner & Smith, Inc. v. North European Oil Royalty Trust*, 490 A.2d 558 (Del. 1985). PDVSA has filed that action (pursuant to this Court's order) in the Court of Chancery. And Movants' unsupported contention that Section 8-112(e) of the UCC allows a court to order reissuance in a judgment enforcement proceeding has been rejected by every court to have considered it.

Moreover, even if this Court were to conclude that it could order reissuance, Delaware law clearly entitles PDVH to a sufficient bond before it can be compelled to provide PDVSA with a replacement certificate.[2] Any decision by this Court to compel reissuance here thus would require consideration of evidence and argument regarding the appropriate bond amount. That would only result in *more* delay as compared to the ongoing Court of Chancery proceeding, not less.

---

[2] To the extent Movants suggest some impropriety or novelty in PDVH insisting on its statutory right to condition reissuance of the certificate on the posting of a bond (D.I. 710 at 4), Crystallex's own motion acknowledges that this has been PDVH's consistent position in this Court as well. D.I. 710 at 4 (citing briefing in which PDVH made the same point). There is nothing dilatory or obstructive about making such a demand—it is consistent with PDVH's past arguments and intended to protect it from liability, as contemplated by Delaware law. 8 *Del. C.* § 168(b); D.I. 571 at 10 n.2; D.I. 589 at 8; D.I. 610 at 3–4.

## ARGUMENT

**I.   There Is No Reason to Reconsider the Court's Prior Order.**

**A.  The Chancery Proceedings Are Progressing Expeditiously.**

There is no reason for the Court to reconsider its July 17 Order because every action taken in the Delaware Court of Chancery complies with the directive in that order that PDVSA move swiftly to resolve the certificate issue. The Court gave PDVSA a choice: request that this Court order PDVH to immediately reissue a replacement share certificate or initiate expedited proceedings in the Delaware Court of Chancery seeking the same. D.I. 644 at 2. The Court concluded that these options "will not materially impact the launch or progress of the *Crystallex* sale process," but that, if a creditor or the Special Master concluded otherwise, it could ask the Court to reconsider its order. *Id.* at 3 (authorizing a request for reconsideration if "PDVSA's actions to comply with this Order…are not proceeding with the necessary speed, or are otherwise unsatisfactory"). PDVSA, in compliance with Delaware law, elected to initiate an action in the Court of Chancery; PDVSA requested expedited review (to which PDVH consented); PDVSA and PDVH jointly requested and agreed to the earliest available hearing date; and PDVSA and PDVH agreed to a briefing schedule that would allow the hearing to proceed expeditiously. Briefing is well underway, and the hearing is set for September 22, the earliest date on which the assigned Vice Chancellor was available.

This schedule poses no threat to the "launch or progress of the *Crystallex* sale process." *Id.* For creditors other than Crystallex, reissuance of the share certificate is pertinent to the "Step 7" deadline the Court has identified for potential Additional Judgment Creditors to perfect their attachments (*see* D.I. 646), which has not yet been set, but which *all* interested parties agree should be sometime *next year* (*see* D.I. 693 at 3–4). In light of these facts, no creditor has any basis for

seeking reconsideration, much less the immediate reissuance of the PDVH share certificate. PDVSA is moving with the "necessary speed" this Court ordered (as is PDVH). D.I. 644 at 3.

For its part, Crystallex's feigned urgency is all the more vacuous. Crystallex maintains a privileged position in the sale process, as its attachment is—as it repeats *ad nauseam*—secure *without* physical seizure of the share certificate because of this Court's estoppel finding. And, if a final sale is confirmed, the Court can order reissuance of the share certificate under the terms of 8 *Del. C.* § 324(c). Crystallex acknowledges this in its filing, D.I. 710 at 10, and does not point to any valid reason why it might be prejudiced by the expedited Chancery proceedings.

The creditors' call for immediate action by this Court[3] is all the more unseemly given that they had access to PDVH's substantive arguments for months (since briefing in *this* Court), PDVH's Answer in the Court of Chancery was filed on August 22, 2023, and PDVH's opening brief in the Court of Chancery was filed on August 25, 2023—yet they waited until days before this Court was set to hold a status conference to lob in a demand that this Court immediately shove aside the Court of Chancery and order reissuance. Crystallex's timing smacks of gamesmanship— not a real emergency, which would have prompted quicker action. *E.g.*, D.I. 544 at 6 (suggesting that a true emergency motion would be noticed within three days). ConocoPhillips' afterthought joinder a day later further betrays the lack of urgency—the creditors who actually require seizure of the certificate did not think to complain about the progress of the Chancery proceedings on their own, but instead latched onto a potential opportunity to leverage manufactured outrage to their advantage. The Special Master's joinder thereafter fares no better.

---

[3] While the Court has denied Movants' request that it step in before the September 22 hearing, PDVH assumes that—should the Court of Chancery not rule on September 22—Movants still want this Court to push aside the Court of Chancery before it renders a decision.

**B.  The Chancery Proceedings Are Not "Otherwise Unsatisfactory."**

The creditors' protestations about the *merits* of the Chancery proceeding do not demonstrate that those proceedings are "unsatisfactory." *See* D.I. 644 at 3. At the outset, if Movants are truly concerned that PDVH or PDVSA has not presented necessary information to the Court of Chancery, Court of Chancery Rule 24 permits them to seek to intervene in those proceedings to present additional information. *E.g.*, D.I. 710 at 2 (complaining that "no adverse party…can set the record straight" in the Chancery proceeding). They declined to do so. Asking this Court to take the extraordinary step of bypassing the pending action in the Court of Chancery is not the proper means to course-correct the alleged "unsatisfactory" nature of those proceedings.

In any event, Movants are wrong about nearly everything they suggest or aver about the Chancery proceeding, and their typical and tiresome refrain of "bad faith" rings hollow.

***First***, Movants and the Special Master are incorrect that PDVH has requested a $32–$40 billion bond from the Court of Chancery. *E.g.*, D.I. 710 at 1, 2, 7, 9; D.I. 718 ¶ 3. PDVH has *not* requested a specific bond amount at this point in the Chancery proceedings and does not intend to ask for a $32–$40 billion bond or to argue that a bond of that amount would be necessary to provide sufficient protection. Moreover, PDVH has not claimed and does not intend to argue that it should be valued at $32–40 billion. As a way to demonstrate the importance of the statutory bond requirement, PDVH merely pointed out in its brief in the Court of Chancery that CITGO's 12-month EBITDA exceeded $4 billion and that if a purported transferee or pledgee of the PDVH shares sued PDVH for reissuing the share certificate, it may argue that PDVH is valued at as much as 8–10x of CITGO's EBITDA, which would allow such a plaintiff to claim damages of as much as $40 billion. This example—a conservative hypothetical that does *not* represent PDVH's own view of its value—was illustrative only. PDVH's brief stated that the Court of Chancery "has

discretion to set the amount of the bond"—so long as the bond "is sufficient" to protect PDVH if the original stock certificate is presented post-sale. PDVH understands that the appropriate bond amount will be the subject of the upcoming hearing.

Moreover, Movants' anxiety over a large bond is all the more misplaced given that the *cost* of a bond and the amount of the bond are not synonymous. Assuming the Court of Chancery orders a bond for the full value of PDVH, the *cost* of such bond would not be the full value of the company; an underwriter would issue a bond for the amount of the bond multiplied by the risk of a valid transferee or pledgee coming forward and successfully arguing that it has been damaged by the reissuance of the certificate. If underwriters agree with Movants that the risk is near zero, then the cost should be very low.

**Second**, Movants' insistence that PDVH has no reason for concern about potential liability caused by the missing certificate—and thus no legitimate basis to demand a bond before reissuing the shares (D.I. 710 at 2; D.I. 718 ¶ 3)—is wrong. While they insist that the share certificate never could have been transferred because of OFAC sanctions (D.I. 710 at 3, 7), that argument assumes that a court will later agree with that conclusion if a putative purchaser or pledgee sues PDVH for cancelling the certificate such purchaser or pledgee possesses. This Court knows well that courts may not agree with a party's reading of OFAC regulations. *E.g.*, D.I. 234 (rejecting Venezuela Parties' OFAC-related arguments); D.I. 443 (same). Nothing will stop a purchaser or pledgee of the share certificate from arguing that such transfer or pledge is valid, nor eliminate the risk that a court may agree with such claimant. Nor, of course, do U.S. sanctions generally apply to non-U.S. persons who may claim that the PDVH share *certificate* was transferred or pledged entirely outside

the protections afforded by U.S. law.[4] While PDVH would try to oppose such an argument, there is a substantial risk that such an argument could be made or even succeed, regardless of PDVH's view.

Further, Movants essentially ignore the real possibility that the shares were transferred or—more concerningly—pledged *before* OFAC sanctions went into place—a point *expressly* made by PDVH's counsel in the quote *Crystallex* includes in its own filing to suggest PDVH was changing its position. D.I. 710 at 8 (citing statement by PDVH's counsel that "any pledge that was done **after the change in Government** would be unauthorized and be void" (emphasis added)). The risk of a pledge is especially concerning, as a pledgee may have no reason to have come forward (yet) because the obligations secured by its pledge have not come due; but that could change at any time during or after the sale process, causing havoc and exposing PDVH to significant liability. As this Court knows, the Maduro regime has previously pledged shares of stock in PDVSA's indirect subsidiary—CITGO Holding—to suit its needs, *e.g.*, D.I. 396, and it has had substantial transactions with Russia, China, and Iran, none of which are particularly concerned about U.S. law.[5] Maduro may have pledged shares of PDVH, and may have done so when he was recognized by the United States as the leader of the Republic and/or before sanctions were instituted.

---

[4] *See* OFAC FAQ No. 11 ("Who must comply with OFAC regulations? U.S. persons must comply with OFAC regulations, including all U.S. citizens and permanent resident aliens regardless of where they are located, all persons and entities within the United States, all U.S. incorporated entities and their foreign branches.").

[5] *See, e.g.*, Deisy Buitrageo & Vivian Sequera, "Iran, Venezuela eye trade increase, sign petrochemical deal," Reuters (June 12, 2023), https://www.reuters.com/world/iranian-president-caracas-kicking-off-regional-tour-2023-06-12/; Andrew Hayley, Vivian Sequera, et. al., "Venezuela's Maduro seeks to renew Beijing ties amid China-West tensions," Reuters (Sept. 8, 2023), https://www.reuters.com/world/americas/venezuelas-maduro-visit-china-re-engage-amid-china-west-tensions-2023-09-08/; Alexandra Ulmer & Marianna Parraga, "Russian oil firm shuffles Venezuela assets as sanctions bite," Reuters (Mar. 28, 2022), https://www.reuters.com/business/energy/exclusive-russian-oil-firm-shuffles-venezuela-assets-sanctions-bite-2022-03-29/.

PDVH needs a bond in an amount adequate to protect against these risks.[6] Regardless of the likelihood that a future alleged transferee or pledgee would *succeed* in any effort to assert a right to the shares,[7] PDVH's directors have a fiduciary duty to protect the company from litigation and exposure. They are entitled—and bound—to exercise that duty by insisting on PDVH's statutory right to a bond before reissuance of the share certificate. No officer or director of PDVH is going to authorize the issuance of a new share certificate without exercising that duty to the fullest extent allowed by law. There is nothing collusive about that.

***Third***, the creditors are incorrect that PDVH has taken inconsistent positions about which statute governs the issuance and effect of a bond—the Delaware code (8 *Del. C.* § 168) or the UCC (6 *Del. C.* § 8-405). D.I. 710 at 6–7. Before this Court and the Court of Chancery, PDVH has argued that Section 168 properly governs. In the Court of Chancery, PDVH has simply noted that

---

[6] Movants dredge up countless statements made on behalf of PDVH regarding the share certificates as though they have some relevance to the proceeding in the Court of Chancery. In fact, they are irrelevant. The issue is not what PDVH intends to do, understands operative law to be, or even has represented to this Court. The issue is whether third parties may exist that could come forward and argue—unbound by PDVH's prior representations—that they are the rightful owners of the PDVH shares. Delaware law protects against this by requiring the person seeking a replacement certificate to provide a bond, which PDVH has asserted all along. PDVH is not reneging on statements it has made to this Court or withholding from the Court of Chancery information relevant to its resolution of PDVSA's action. In any event, the Court resolved this on September 12 by offering Crystallex the opportunity to provide PDVH with a list of orders from *this* Court necessary to—in Crystallex's estimation—apprise the Court of Chancery of relevant facts.

Moreover, statements made by PDVSA's counsel about the location of the shares (not the certificate) pre-Guaidó are cold comfort to PDVH, which is the entity that would be liable if a transferee or pledgee from the pre-Guaidó era present itself and demanded payment. D.I. 710 at 8. And statements about PDVSA being the 100% owner of PDVH are entirely consistent with the possibility that a yet-invoked pledge of the shares by Maduro may nonetheless be lurking and would not bind a purchaser or transferee, whatever effect they might have on PDVSA. *Id.* at 5.

[7] As noted above, if Movants are correct that any purported pledgee or transferee would face a very low likelihood of success, it will not be difficult to get an underwriter to issue a bond for a relatively low cost. Their insistence that PDVH faces no risk from a potential good faith transferee or pledgee is at odds with its panic about whether a bond can or will ever issue.

there is ambiguity on that issue in Delaware law[8] and that, if that ambiguity is resolved contrary to PDVH's position, Section 8-405 could govern. That ambiguity was irrelevant to the issue before this Court, as *both* statutes require a bond before reissuance may be ordered,[9] but it is quite relevant to the issue before the Court of Chancery, which concerns the *amount* of the bond. The Chancery proceedings are the first place in which PDVH has needed to weigh in on the details of the bond requirement.

Moreover, because the Court of Chancery will set the amount of the bond, understanding precisely what the bond protects *against* is key to setting a reasonable bond.[10] A nominal bond would be of no protection to PDVH if a court concludes that the UCC controls and that the bond therefore is not preclusive of any further liability on PDVH's part. It is imperative for the protection of PDVH and its officers and directors that this issue be presented and resolved.[11]

---

[8] The Court of Chancery itself has recognized the apparent inconsistency—or, at least, ambiguity—between the effect and reach of a bond under the UCC (no limit on liability) and 8 *Del. C.* § 168 (liability limited to the amount of the bond). *See Castro v. ITT Corp.*, 598 A.2d 674, 682–83, n.14 (Del. Ch. 1991).

[9] *See* 8 *Del. C.* § 168(b); 6 *Del. C.* § 8-405(a); *Merrill Lynch*, 490 A.2d at 562–63.

[10] Movants argue that a 100% sale of the PDVH shares is likely, and thus the purchaser—not PDVH—is the only one at risk if a transferee or pledgee shows up with the original certificate. D.I. 710 at 10. No one yet knows if 100% of PDVH's equity will be sold, but even if Movants are correct, any buyer would be running the risk of potentially billions of dollars of liability, which would chill bids and the availability of financing for such bids. Such a buyer would want the bond in place *now* to protect itself post-sale; and such a bond will thus reduce chilling effects on bidding.

[11] Movants also express surprise that PDVH took no position on—and stated that there may be some ambiguity regarding—whether the certificate is lost, stolen, or destroyed within the meaning of Section 168. D.I. 710 at 5, 6, 11. But PDVH made this point before this Court, as well. June 26, 2023 Hr'g Tr. at 101:23–103:15 (D.I. 640). Nor has PDVSA truly "admi[tted]," or the Court "acknowledge[d]," that the share certificate is lost, stolen or destroyed. D.I. 710 at 11. The Court *ordered* PDVSA to produce the certificate or file a letter on the docket "indicating [] PDVSA has determined that the share certificate is 'lost, stolen, or destroyed…'" D.I. 644 at 2. The Court did not give PDVSA the option to question whether the certificate was lost, stolen, or destroyed. The Court has also undertaken no factual analysis to determine whether the shares are lost, stolen, or destroyed or any legal analysis of the meaning of those terms under Delaware law.

*Fourth*, the Special Master's concerns are unwarranted. PDVH anticipates that the Chancery proceedings will be resolved at or shortly after the September 22 hearing. There is thus no reason to anticipate delay caused by "intervention by other interested parties" or otherwise "protracted litigation." D.I. 720 at 2. Indeed, on September 12, 2023, Movants expressly rejected this Court's suggestion of intervention. And any other creditors who may intervene have only a few days to do so. Any extension of the Chancery proceedings would be caused not by PDVH or PDVSA, but by the creditors themselves—for whom the sale process is designed. Lastly, the Special Master does not explain why PDVSA's 100% ownership of PDVH means that a sufficient bond would compromise his ability to maximize value at the sale process. *Id.* Instead, as explained in footnote 10, *supra*, a bond is necessary to protect the ultimate purchaser of the shares—the *absence* of a bond is likely to chill participate and depress value, not the presence of one.

*Fifth,* Movants complain that PDVH has argued that PDVSA may not be able to pay a bond. D.I. 710 at 1, 3, 9. The Court heard that point and still ordered PDVSA to take action in the Court of Chancery, knowing that PDVH would argue that it needs a bond before reissuing the shares. D.I. 571 at 10 n.2; D.I. 589 at 8; D.I. 610 at 3–4. How the bond will be obtained is a question for *after* the statutorily required bond has been ordered.

*Finally*, Movants' allegations of bad faith and collusion between PDVH and PDVSA were based on *predictions* about what PDVSA may say in its response brief. D.I. 710 at 9 n.1. PDVSA's response brief was filed on September 12, and the Court need look no further than its contents to dispense with Movant's concerns. PDVSA opposed PDVH's request for a bond—establishing the adversity Movants claim is lacking and belying any suggestion of collusion.[12]

---

[12] The Court should not allow Crystallex to re-argue (with no support) that a proceeding under Delaware law cannot proceed in the absence of "adversity" between PDVH and PDVSA. June 26, 2023 Hr'g Tr., 90:10–92:15; D.I. 710 at 1, 11. The Court already impliedly rejected that

## II.      This Court Does Not Have the Power to Order Reissuance in This Posture.

Movants (and the Special Master) do not cite a single case to support their assertion that Delaware law—applicable here under Rule 69(a)—authorizes a court to order a garnishee to reissue a share certificate on the motion of a creditor while bypassing statutorily prescribed mechanisms for reissuance (and without requiring a bond). As PDVH has explained (*e.g.*, D.I. 589 at 7–8, 610 at 4–5, 631 at 2–4, 639 at 1–3), Movants' position contravenes Delaware law.

Movants point to Section 8-112 of the Delaware UCC, which provides that "[a] creditor whose debtor is the owner of a certificated security … is entitled to aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the certificated security." 6 *Del. C.* § 8-112(e). But that statute means only that, where "the officer making the attachment or levy" cannot "seiz[e] … the security certificate," the creditor may ask the court to take other steps to "reach" it, such as by enjoining the *debtor* to produce the certificate or to initiate an action under 8 *Del. C.* § 168 against the issuer to compel reissuance (just as this Court has done). As PDVH has previously explained (*see* D.I. 631), courts have recognized that Section 8-112(e) cannot be used to order a non-debtor garnishee to cancel and reissue the certificate.[13]

_____

argument by offering PDVSA the option to initiate a proceeding in the Court of Chancery against PDVH. And for good reason: Sections 167 and 168 have no carveout for companies whose stock is owned by its corporate parent. In any event, there is adversity between PDVH and PDVSA here, as reflected in PDVSA's September 12 response brief in the Court of Chancery. PDVH and PDVSA are not similarly situated on this issue, as it is PDVH—not PDVSA—that is at risk of liability if a bond does not issue. Moreover, if Movants believe that there is insufficient adversity between PDVH and PDVSA, Court of Chancery Rule 24 allows them to seek leave to intervene to present their arguments. Crystallex acknowledged as much to this Court on September 12.

[13] *See, e.g.*, *Wolverine Flagship Fund Trading Ltd. v. Am. Oriental Bioengineering, Inc.*, 134 A.3d 992, 995–96 (N.J. App. Div. 2016) (affirming that the New Jersey equivalent of UCC § 8-112(e) did not permit the court to order cancelation and reissuance of a share certificate); D.I. 196 at 6–7; *First Nat'l Bank in Dallas v. Dyes*, 638 S.W.2d 957, 959–60 (Tex. Ct. App. 1982) (holding that "the trial court erred in ordering [an issuer] to issue a new stock certificate … and to cancel [the existing] certificate … without it being in their possession" and stating that the Texas equivalent of UCC § 8-112(e) "affords a creditor a means of gaining control of a certificate or

Delaware law provides three specific means to cancel and reissue a stock certificate. First, the owner of a lost, stolen, or destroyed certificate "may apply to the Court of Chancery for an order requiring the corporation to show cause why it should not issue new uncertificated shares or a new certificate of stock in place of the certificate so lost, stolen or destroyed." 8 *Del. C.* § 168(a). The court in which such an application has been made then "shall" order reissuance if certain conditions are met, including that the plaintiff give the issuer a bond sufficient to indemnify it against future claims. *Id.* § 168(b).[14] Second, as noted above, *after* confirmation of an execution sale, "[t]he court which issued the levy and confirmed the sale shall have the power to make an order compelling the corporation, the shares of which were sold, to issue new certificates or uncertificated shares to the purchaser at the sale and to cancel the registration of the shares attached on the books of the corporation" once the purchaser posts a bond. 8 *Del. C.* § 324(c). Third, the "owner of a certificated security … claim[ing] that the certificate has been lost, destroyed, or wrongfully taken" is entitled to have the issuer issue a new certificate if certain requirements are met, and to bring an action to compel reissuance if the issuer refuses. *See* 6 *Del. C.* § 8-405(a).

None of those statutes authorizes this Court to order reissuance at this time. Movants argue that this Court would have jurisdiction over a Section 168 action, but even if that were true (PDVH has previously argued that the statute is clear that such an action is exclusive in the Delaware Court of Chancery), PDVSA has not filed a Section 168 action against PDVH in this Court; it filed it against PDVH in the Court of Chancery, pursuant to this Court's own order. The execution sale

---

other security from the owner or holder thereof, not the issuer," and "provides no right to the issuance of a new certificate when the old one cannot be reached").

[14] Contrary to Movants' suggestion, 8 *Del. C.* § 167 does not allow PDVSA to order PDVH to reissue the certificate. It allows a shareholder to *request* reissuance, but the decision of whether to do so is discretionary, and the issuer may *require* the shareholder to post a bond. 8 *Del. C.* § 167; *see also Merrill Lynch*, 490 A.2d at 561 ("Clearly, 8 *Del. C.* § 167 is permissive; the corporation may choose to issue replacement certificates to a record owner, but it need not do so.").

has not yet been conducted or confirmed, so ordering reissuance under 8 *Del. C.* § 324(c) clearly is premature. Nor has PDVSA filed an action against PDVH to compel reissuance under 6 *Del. C.* § 8-405(a), *see Merrill Lynch*, 490 A.2d 558, and even if it had, it would not be entitled to reissuance under that statute, because it has not filed a sufficient indemnity bond, which is one of the UCC's requirements for compelling reissuance. *See* 6 *Del. C.* § 8-405(a)(2); *see also id.*, cmt. 2 ("This section enables the owner to obtain a replacement of a lost, destroyed or stolen certificate, provided that reasonable requirements are satisfied and a sufficient indemnity bond supplied.").

In short, this Court cannot ignore the procedures expressly provided by Delaware law simply because they may inconvenience Movants. Nor would it be prudent or consistent with principles of equity, comity, and federalism to pioneer such a previously unrecognized power when the Delaware Court of Chancery currently is adjudicating PDVSA's request for reissuance under Delaware corporate law. "[F]ederal and state courts are complementary systems for administering justice in our Nation. Cooperation and comity, not competition and conflict, are essential to the federal design." *Kowalski v. Tesmer*, 543 U.S. 125, 133 (2004); *cf. Pennsylvania v. Williams*, 294 U.S. 176, 185 (1935) ("It is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy. It has long been accepted practice for the federal courts to relinquish their jurisdiction in favor of the state courts, where its exercise would involve control of or interference with the internal affairs of a domestic corporation of the state.") (internal citations omitted).

Moreover, a decision by this Court to effectively terminate the Chancery proceedings because Movants are dissatisfied with their progress and believe the Vice Chancellor incapable of managing the competing interests at play not only would needlessly interfere in state court

proceedings, but also would cause more—rather than less—delay. For example, even if the Court were to decide that it could and should take upon itself the authority to order PDVH to reissue the share certificate, Delaware law is clear that the Court can do so *only* if PDVH is given a sufficient bond.[15] As such, the Court would have to conduct proceedings (duplicative of those currently underway in the Court of Chancery) to determine the appropriate bond amount.

## CONCLUSION

For the foregoing reasons, the Court should deny Movants and the Special Master's motion.

---

[15] *See Mastellone v. Argo Oil Corp.*, 82 A.2d 379, 383 (Del. 1951) ("[T]he courts lack the power to dispense with [the bond] requirement against the corporation's will."); *see also* 8 *Del. C.* § 168(b) (providing that, "[i]n its order the court *shall* direct that, prior to the issuance and delivery to the plaintiff of such new uncertificated shares or a new certificate, *the plaintiff give the corporation a bond in such form and with such security as to the court appears sufficient to indemnify the corporation against any claim that may be made against it* on account of the alleged loss, theft or destruction of any such certificate or the issuance of such new uncertificated shares or new certificate" (emphasis added)); 8 *Del. C.* § 324(c) (stating that "[t]he court which issued the levy and confirmed the sale" may compel the issuer to cancel and reissue the share certificate "*upon the giving of an open end bond by such purchaser adequate to protect such corporation*" (emphasis added)); 6 *Del. C.* § 8-405(a) ("If an owner of a certificated security … claims that the certificate has been lost, destroyed, or wrongfully taken, the issuer shall issue a new certificate if the owner … (2) *files with the issuer a sufficient indemnity bond*." (emphasis added)).

September 14, 2023

                                        MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:                             */s/ Kenneth J. Nachbar*
Nathan P. Eimer                         Kenneth J. Nachbar (#2067)
Lisa S. Meyer                           Susan W. Waesco (#4476)
Daniel D. Birk                          Alexandra M. Cumings (#6146)
Gregory M. Schweizer                    1201 North Market Street
Emily E. Sullivan                       Wilmington, DE 19801
EIMER STAHL LLP                         (302) 658-9200
224 South Michigan Avenue               KNachbar@morrisnichols.com
Suite 1100                              SWaesco@morrisnichols.com
Chicago, IL 60604                       ACumings@morrisnichols.com
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com                   *Attorneys for PDV Holding, Inc.*
DBirk@eimerstahl.com
GSchweizer@eimerstahl.com
ESullivan@eimerstahl.com