IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CRYSTALLEX INTERNATIONAL
CORPORATION,

                Plaintiff,

     v.                              C.A. No. 17-151-LPS

BOLIVARIAN REPUBLIC
OF VENEZUELA,

                Defendant.

**REPLY BRIEF IN SUPPORT OF CRYSTALLEX INTERNATIONAL
CORPORATION'S MOTION FOR AN ORDER COMPELLING PDVH
TO IMMEDIATELY REISSUE THE SHARE CERTIFICATE**

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Miguel A. Estrada
Lucas C. Townsend
Adam M. Smith
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Tel: (202) 955-8500
Fax: (202) 467-0539

Dated: September 25, 2023

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Tel:  (302) 651-7700
Fax:  (302) 651-7701

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

Page(s)

NATURE AND STAGE OF THE PROCEEDINGS .................................................................. 1

ARGUMENT ............................................................................................................................ 3

      I.     PDVH's Response Confirms That Venezuela's Actions To Comply With
              The July 17 Order Are Unsatisfactory .................................................................. 3

      II.    This Court Has The Power To Compel Reissuance Of The Certificate ................ 9

CONCLUSION ...................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

### Cases

*First Nat'l Bank in Dallas v. Dyes*,
    638 S.W.2d 957 (Tex. Ct. App. 1982) ...................................................................9

*Gould v. Control Laser Corp.*,
    866 F.2d 1391 (Fed. Cir. 1989)............................................................................9

*IMO Daniel Kloiber Dynasty Tr.*,
    98 A.3d 924 (Del. Ch. 2014)...............................................................................10

*Jimenez v. Palacios*,
    250 A.3d 814 (Del. Ch. 2019)...............................................................................5

*Resol. Tr. Corp. v. Ruggiero*,
    994 F.2d 1221 (7th Cir. 1993) .............................................................................10

*S. Spring Hill Gold-Mining Co. v. Amador Medean Gold-Mining Co.*,
    145 U.S. 300 (1892)...........................................................................................1, 9

*Skeen v. Jo-Ann Stores, Inc.*,
    750 A.2d 1170 (Del. 2000) ...................................................................................6

*Tyson Foods, Inc. v. Aetos Corp.*,
    809 A.2d 575 (Del. 2002) .....................................................................................9

*Wolverine Flagship Fund Trading Ltd. v. Am. Oriental Bioengineering, Inc.*,
    134 A.3d 992 (N.J. Super. Ct. App. Div. 2016).....................................................9

### Statutes

6 *Del. C.* § 8-112(e) ...................................................................................................2, 9, 10

6 *Del. C.* § 8-405...........................................................................................................6, 7

8 *Del. C.* § 167 ............................................................................................................2, 10

8 *Del. C.* § 168 ....................................................................................................2, 6, 7, 10

8 *Del. C.* § 168(b) ..........................................................................................................6

8 *Del. C.* § 201 ...............................................................................................................7

8 *Del. C.* § 324(c)............................................................................................................8

ii

**Rules**

Fed. R. Civ. P. 69(a)(1) ...................................................................................................9

**Regulations**

31 C.F.R. § 591.201 ........................................................................................................4

31 C.F.R. § 591.202(a) ....................................................................................................4

Exec. Order 13,884, § 1(a), 84 Fed. Reg. 38,843 (Aug. 5, 2019) ...................................4

**NATURE AND STAGE OF THE PROCEEDINGS**

In the supposedly "adversarial" Chancery Court proceeding, PDVH has told the court that the PDVH share certificate might not be lost, stolen, or destroyed after all.  It has told the court that it faces a potential liability risk of $32-$40 billion from a hypothetical good-faith pledgee if PDVH is ordered to reissue the certificate.  It also has told the court that it needs an indemnity bond from its 100% owner, PDVSA, to guard against that hypothetical liability risk.  Right on cue, PDVSA responded by telling the Chancery Court that federal sanctions prevent it from posting a bond in *any* amount.  Feigning an adversity they cannot legally have—since the plaintiff owns 100% of the defendant and can control its actions at will, *see, e.g.*, *S. Spring Hill Gold-Mining Co. v. Amador Medean Gold-Mining Co.*, 145 U.S. 300, 301 (1892) (if "the control of both the corporations" is in "the hands of the same persons," the "controversy is not a real one")—PDVH and PDVSA are collusively endeavoring to obtain from the Chancery Court an order that will halt or obstruct this Court's auction:  either an outlandish "bond" in the billions of dollars or, if Chancery Court sees through their game, an order that they can use to set off new appeals in the state courts designed to hinder and delay this Court's primary jurisdiction over this matter.  These collusive and dilatory tactics warrant this Court ordering PDVH to reissue the certificate now.

Having been caught with its hand in the proverbial cookie jar, PDVH claims everyone misunderstood the $32-$40 billion figure, and its intent was never really to "ask[] for a bond anywhere near [that] amount."  D.I. 724, at 2.  At the September 22, 2023 hearing in Chancery Court, PDVH asked for a supposedly modest $1.5 billion bond to protect against the imagined "risk" that someone might materialize to claim the outlandish figure PDVH previously fronted in its brief.

None of this changes the collusive nature of the Chancery proceedings or the fact that PDVH's still-exorbitant bond demand is transparently designed to obstruct this Court's work.

1

PDVSA could have ordered its wholly owned subsidiary to reissue the share certificate summarily, and without judicial involvement or a bond under 8 *Del. C.* § 167. Had PDVH's directors refused, despite their fiduciary duty to PDVSA as PDVH's sole shareholder, PDVSA could have replaced them by unanimous consent, just as it replaced the PDVH board four years ago when the Guaidó government assumed control. And if PDVSA's and PDVH's real interest in seeking Chancery Court intervention were to secure the liability limits provided by 8 *Del. C.* § 168, PDVH should have asked that court to set a de minimis bond and rule that PDVH's liability is limited to that amount, rather than argue (contrary to the text of Section 168) that the statutory limit on liability might not apply *at all* in an effort to drive the bond amount sky high. Indeed, while PDVH cannot deny that the Venezuela Parties' prior representations, the current bar on transfers under OFAC sanctions, and this Court's own highly publicized attachment of the PDVH Shares make the existence of a good-faith transferee well-nigh impossible, PDVH nonetheless maintains there is a "risk" the Maduro regime might have secretly pledged the shares "before sanctions" or to hostile regimes not "particularly concerned about U.S. law," such as Iran and Russia. D.I. 724, at 9. How these fanciful hypotheticals might give rise to any real risk of eluding U.S. sanctions or any other U.S. laws—given that PDVH *is a U.S. company* and its shares can only be transferred in the company's books *in Delaware*, as Venezuela previously represented—is left unexplained.

Finally, PDVH asserts again that this Court has no authority to order reissuance. This assertion was frivolous when first advanced earlier this year, and it has not improved with age. For the Venezuela Parties now concede that under 8 *Del. C.* § 167 PDVH can reissue the certificate without a bond "if it chooses to do so," D.I. 639, at 2-3, and they cannot deny that their creditors are "entitled to aid" from this Court, "by injunction or otherwise," to "reach[]" the shares, 6 *Del. C.* § 8-112(e). Their claim thus reduces to the absurd proposition that this Court's express statutory

2

authority to "reach[]" the security, by injunction if need be, somehow does not extend to actions the debtor could legally undertake *voluntarily*.  Crystallex respectfully submits that this Court should at last bring the curtain down on this obstructionist farce, and order PDVH to reissue the share certificate now with (at most) a nominal bond.

ARGUMENT

### I. PDVH's Response Confirms That Venezuela's Actions To Comply With The July 17 Order Are Unsatisfactory

As Crystallex explained in its opening brief (at 7-11), it is obvious that Venezuela and PDVH hope to undermine the sale process by procuring an order from Chancery Court either declining to order reissuance or conditioning reissuance on an impossible bond.  And they are attempting to hide facts from the long history of this litigation that destroy any plausible claim that there could be a good-faith pledgee from the Maduro regime, or that PDVSA faces any realistic sanctions risk from posting a bond.  PDVH's response brief does not assuage these concerns.

PDVH neglected to inform the Chancery Court that no bona fide purchaser or pledgee of the PDVH shares can exist in light of OFAC sanctions prohibiting the sale or pledge of the shares and these well-publicized execution proceedings, as both PDVH and Venezuela have long maintained.  D.I. 710, at 7-8; *see* D.I. 214, at 77:10-19.  Instead, PDVH told the Chancery Court that "there is a very real possibility" the certificate "could have found its way into the hands of a third party," that it "is no hypothetical threat" that the Maduro regime "may have transferred or pledged the certificate," that the "potential liability and expenses of PDVH are substantial," and that "the potential liability would be between $32 billion and $40 billion." Ex. H, at 14.

PDVH attempts to reconcile its statements to the Chancery Court with its prior rejection of any risk that PDVSA's shares have been sold or pledged by stating that "regardless of PDVH's view" that such a transaction would violate OFAC sanctions, the hypothetical purported purchaser

3

or pledgee *might* be able to convince a court otherwise.  D.I. 724, at 8-9.  PDVH also notes that

the shares *might* have been sold or pledged by the Maduro regime prior to the imposition of OFAC

sanctions, *id.* at 9, notwithstanding the Maduro regime's repeated statements to the contrary, D.I.

710, at 8 (citing examples).  But PDVH selectively did not inform the Chancery Court that it be-

lieves that any sale or pledge of PDVSA's shares has been barred by OFAC sanctions since August

2018, D.I. 98, at 15—well before the Maduro regime's derecognition in January 2019—and that

it would oppose any argument to the contrary, *see* D.I. 724, at 8-9.  It also did not inform the

Chancery Court that any pledge by the Maduro regime after the change in government would be

void, *see* D.I. 214, at 77:10-19; or that PDVH and PDVSA (both before and after the change in

government) have consistently denied that the shares have been transferred or pledged and dis-

claimed any intent to do so, *see* D.I. 710, at 7-8.  All of this information indicates that PDVH's

real risk of any liability is infinitesimal and is "information relevant to [the Chancery Court's]

resolution of PDVSA's action" that PDVH is "withholding."  D.I. 724, at 10 n.6.

       Moreover, PDVH cannot support its speculation that a court might conclude that OFAC

sanctions, which provide that "[a]ll property and interests in property of the Government of

Venezuela that are in the United States … are blocked and may not be transferred, paid, exported,

withdrawn, or otherwise dealt in," does not prohibit foreign persons from purchasing blocked

shares in PDVH, a U.S. corporation.  Exec. Order 13,884, § 1(a), 84 Fed. Reg. 38,843, 38,843

(Aug. 5, 2019).  Absent a license, any sale or pledge of the PDVH shares is prohibited pursuant to

OFAC regulations, 31 C.F.R. § 591.201, so any purported transfer "is null and void and shall not

be the basis for the assertion or recognition of any interest in or right, remedy, power, or privilege

with respect to" them, *id.* § 591.202(a).  Even if OFAC sanctions permitted foreign persons to

purchase blocked shares in a U.S. corporation (and they do not), PDVH's surmise that someone

would have purchased (or accepted as collateral) shares in a U.S. corporation "entirely outside the protections afforded by U.S. law" is fanciful.  D.I. 724, at 8-9. [1]

As for PDVH's supposed concern that the Maduro regime might have sold or pledged PDVSA's shares before imposition of OFAC sanctions (which that regime has denied, D.I. 710, at 8), the Venezuela Parties could have eliminated that supposed risk years ago by reissuing the share certificate when they ousted the Maduro-backed directors of PDVH and its subsidiaries via unanimous written consents.  D.I. 710, at 9; *see Jimenez v. Palacios*, 250 A.3d 814, 825 (Del. Ch. 2019).  That they did not do so shows that they viewed the missing certificate as presenting a negligible risk and a useful means for thwarting creditors.  Furthermore, PDVH has acknowledged that "[a]ccording to the certificate copy that we did find, the stock cannot be transferred except on the books and records of the company," representing that PDVSA remains the "registered owner" in its books.  D.I. 214, at 77:9-11; Ex. H, at 3.  PDVH cannot manufacture uncertainty by speculating about what the Maduro regime might have done with the certificate in some illegal, clandestine, and unrecorded transaction.

PDVH now claims that it does not seek a bond of $32-$40 billion, D.I. 724, at 2, despite having told the Chancery Court that "the potential liability would be between $32 billion and $40 billion" and that the court was "compelled by statute to require a bond that is sufficient" to protect it against that outlandish possibility, Ex. H, at 14-15.  The implication of these statements was unmistakable, as the Special Master, Crystallex, and ConocoPhillips have all recognized.  D.I. 720, at 2; D.I. 710, at 1; D.I. 718, at 2.  PDVH did not describe its $40 billion figure to the Chancery

---

[1] Indeed, while PDVH is almost driven to acknowledge as much, it still maintains that courts might erroneously interpret OFAC regulations, because *this Court* (and OFAC itself) rejected Venezuela's efforts to invoke those sanctions to evade its legal obligations.  In PDVH's telling, the "risk" it touts reduces to the contention that because this Court *rejected* Venezuela's frivolous OFAC arguments, courts might someday *accept* baseless readings of the law.  D.I. 724, at 8.

Court as an overinflated valuation that a hypothetical purported purchaser might offer but as a realistic prediction of its potential liability. PDVH's attempt to recharacterize its request, which is designed to impede the reissuance of the certificate and therefore the sale, is both disingenuous and unpersuasive. At all events, the supposedly more modest bond PDVH claims to be seeking now—$1.5 billion—remains astronomical in relation to the extremely remote "risk" that a good-faith transferee will someday appear, and it is equally designed to impede this Court's auction.

PDVH's claim that its directors have a "fiduciary duty to protect the company from litigation and exposure," D.I. 724, at 10, only underscores the collusiveness of this dispute. Such duties are owed "to the company and its stockholders," *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1172 (Del. 2000), and here the company's sole owner and stockholder—PDVSA—is seeking reissuance *without bond*, D.I. 724, at 12. If anything, PDVH's feigned adversity with its sole stockholder would be a *breach* of its fiduciary duty if the two companies were not completely aligned.

If PDVH truly did not wish to block reissuance of the certificate and only sought to protect itself from liability, it should have asked the Chancery Court to rule that PDVH shall not be "liable in an amount in excess of the amount specified in [the] bond." 8 *Del. C.* § 168(b). But even though PDVH agrees that § 168's limitation on liability "properly governs," D.I. 724, at 10, it did not ask the Chancery Court to limit liability to the amount of the bond. Instead, it invited that court to set an astronomical bond in the event that § 168's limitation of liability does not apply and the reissuance is instead governed by 6 *Del. C.* § 8-405, which does not similarly limit liability. Ex. H, at 10-11. PDVH claims that it raised the issue to ensure that ambiguity over which statute applies is "presented and resolved." D.I. 724, at 11. But PDVH was not seeking to resolve but to *create* ambiguity in an effort to drive up the amount of the bond and thereby make reissuance of the certificate less likely. In fact, there is no ambiguity. "To the extent that any provision of" the

6

General Corporation Law—such as § 168—"is inconsistent with any provision of" the UCC—such as § 8-405—the General Corporation Law "shall be controlling." 8 *Del. C.* § 201.

PDVH contends that the Chancery action is not being conducted in bad faith because "PDVSA opposed PDVH's request for a bond." D.I. 724, at 12. In fact, PDVSA's response to PDVH's opening brief *confirms* the collusive nature of the Chancery proceedings. In response to PDVH's argument that a sufficient bond is a statutory prerequisite to reissuance, PDVSA argues that OFAC sanctions prohibit it from posting the supposedly required bond. Ex. I, at 3-4. PDVSA argues this even though OFAC has specifically communicated to PDVH that it will not enforce any sanctions "in connection with the reissuance of the share certificate," including "the receipt of a bond from PDVSA." Ex. J, at 1. The Venezuela Parties are working together to obtain an order they will exploit for tactical delay. If the Chancery Court does not order reissuance, the Venezuela Parties will argue that the issue is settled for this Court. If it orders PDVSA to post a bond, PDVSA will claim OFAC sanctions make that impossible and appeal. And if it orders reissuance without a bond or a de minimis bond, PDVH will argue that that is insufficient and appeal. In any scenario, the Venezuela Parties will exploit the Chancery Court's ruling to further delay the sale process. [2]

PDVH complains that Crystallex somehow delayed filing this motion, while maintaining that the issue is not pressing, that the certificate need not be reissued until 2024, and even that

---

[2] While Venezuela's principal strategy to sabotage reissuance of the certificate is to insist on an impossible bond, PDVH has cast doubt on whether other statutory prerequisites for reissuance are met, noting that there "may be ambiguity for the Court to resolve" concerning whether the certificate is lost, stolen, or destroyed. Ex. H, at 9-10. PDVH repeats this argument here, complaining that this Court "did not give PDVSA the option to question whether the certificate was lost, stolen, or destroyed" but required it to produce the certificate or state that it has been lost, stolen, or destroyed. D.I. 724, at 11 n.11. This frivolous argument is plainly designed to give the Chancery Court another potential reason not to order reissuance. Given that both PDVH and PDVSA have maintained for years that they cannot locate the certificate, D.I. 206, at 10; D.I. 571, at 2, this Court should put an end to any suggestion that this issue needs to be relitigated in state court.

nothing need happen until the purchaser in the forthcoming sale obtains a new share certificate (and posts any necessary bond) under 8 *Del. C.* § 324(c).  But Crystallex cannot be faulted for waiting until a state judge was assigned and PDVSA and PDVH filed their pleadings; had Crystallex sought relief earlier, PDVH would have claimed the motion was premature.  The share certificate should be reissued soon to facilitate the next steps in the marketing process and give confidence to potential bidders.  Indeed, although this Court allowed the Venezuela Parties, in the interest of "comity," to procure reissuance themselves in Chancery Court on July 17, it also noted that any party could seek reconsideration three weeks later, on August 7, if reissuance was not proceeding expeditiously enough.  D.I. 644, at 2-3.  Ironically, PDVH claims to worry that bidding (in the sale it wants to foil) might be "chill[ed]."  D.I. 724, at 12.  The greater risk—as stated by the Special Master, who has joined Crystallex's request for this Court to "order PDVH to reissue the share certificate without further delay"—is "the risk that any more than a *de minimis* amount is ordered in the Chancery Action could compromise the Special Master's ability to maximize value through the sale process."  D.I. 720, at 2.[3]

PDVH also claims that, if Crystallex finds proceedings in Chancery Court unsatisfactory, it should have intervened in them.  D.I. 724, at 2-3, 5-7.  But Crystallex and the Venezuela Parties have been for many years already before a court with jurisdiction and authority to give the relief Crystallex seeks here—*this Court*.  Crystallex has submitted to the Chancery Court a short amicus letter to apprise that court of the collusive nature of the dispute, and the likelihood that this lack of

---

[3] PDVH (at 6) criticizes Crystallex's request for reissuance because the Venezuela Parties are estopped from challenging Crystallex's attachment on the ground that Crystallex has not seized the certificate.  But as the Special Master noted, and this Court's July 17 Order implicitly recognized, "Potential Bidders will not participate in the sale process unless they are certain that the share certificates that they are committed to purchase will be delivered at the closing of the sale."  D.I. 633, at 2.  If there is lingering state-court litigation over the certificate, that too would chill bidding and delay the sale.  Crystallex thus has strong interests in prompt reissuance of the certificate.

adversity defeats its jurisdiction. But it has no obligation to join a parallel proceeding—and provide the requisite adversity that proceeding inherently lacks, *S. Spring Hill Gold-Mining Co.*, 145 U.S. at 301; *Gould v. Control Laser Corp.*, 866 F.2d 1391, 1393 (Fed. Cir. 1989); *Tyson Foods, Inc. v. Aetos Corp.*, 809 A.2d 575, 582 (Del. 2002)—to secure the relief to which the law entitles it here. Indeed, this Court invited Crystallex to "move for reconsideration of this Order, including by asking this Court to order reissuance of the share certificate" if Venezuela's actions to comply with it are "unsatisfactory," D.I. 644, at 3, as indeed they have proven to be. It did not direct Crystallex to take its quest for long overdue justice elsewhere.

## II.     This Court Has The Power To Compel Reissuance Of The Certificate

PDVH contends that this Court has no choice but to let the proceedings in Chancery Court run their course, denying that this Court has any power to order reissuance of the certificate. D.I. 724, at 13-16. PDVH is mistaken. This Court has authority to conduct all "proceedings supplementary to and in aid of judgment or execution" in "accord with the procedure of the state where the court is located," Fed. R. Civ. P. 69(a)(1), which includes the power to "aid" a judgment creditor, "by injunction or otherwise, in reaching the certificated security," 6 *Del. C.* § 8-112(e). PDVH claims that § 8-112(e) confers no power to order the reissuance of a stock certificate that has been lost, stolen, or destroyed, citing two non-Delaware cases for that proposition. D.I. 724, at 13 & n.13. But the certificate in those cases was not lost, stolen, or destroyed. *First Nat'l Bank in Dallas v. Dyes*, 638 S.W.2d 957, 958 (Tex. Ct. App. 1982) ("Mrs. Dyes does not contend that the security has been lost, destroyed or stolen."); *Wolverine Flagship Fund Trading Ltd. v. Am. Oriental Bioengineering, Inc.*, 134 A.3d 992, 995 (N.J. Super. Ct. App. Div. 2016) (holding that the New Jersey equivalent of § 8-112(e) cannot be used to compel the reissuance of a certificate that has not been lost, stolen, or destroyed). Section 8-112(e) remains available to compel reissuance of a lost, stolen, or destroyed share certificate, and PDVH cites no authority to the contrary.

9

Indeed, since it is indisputable that 8 *Del. C.* § 167 authorizes PDVH to reissue the certificate *voluntarily* and without a lawsuit or any bond, this Court's injunctive authority necessarily extends to compelling PDVSA and PDVH to undertake this lawful act.  PDVH argues otherwise, contending that § 167 "does not allow PDVSA to order PDVH to reissue the certificate" because a corporation's decision to do so is discretionary.  D.I. 724, at 14 n.14.  But the fact that a corporation's decision whether to reissue a certificate under § 167 is *ordinarily* discretionary poses no problem here, where there is no "discretion" to avoid or evade any court order under § 8-112(e) that is otherwise authorized by Delaware corporate law.

Finally, this Court also has the power to compel PDVH to reissue the share certificate under 6 *Del. C.* § 168.  PDVH argues that only the Chancery Court has jurisdiction to do so and that § 168 is unavailable because PDVSA has not filed a separate § 168 action in this Court.  D.I. 724, at 14.  But, as Crystallex has already explained, D.I. 710, at 12, the fact that § 168 provides for jurisdiction in Chancery Court does not mean that this Court lacks jurisdiction to exercise the powers granted by that section.  *See IMO Daniel Kloiber Dynasty Tr.*, 98 A.3d 924, 939 (Del. Ch. 2014).  Nor is PDVSA required to file an entirely separate § 168 action in this Court.  The drafters of Rule 69 did not mean "to put the judge into a procedural straitjacket, whether of state or federal origin."  *Resol. Tr. Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993).  This Court has ample authority under the federal rules and Delaware law to compel reissuance of the PDVH share certificate.  Comity and federalism pose no bar to doing so.  This Court has the exclusive power to enforce Crystallex's judgment, and the Court need not abstain in deference to state-court proceedings, D.I. 724, at 15, that are occurring only because of this Court's July 17 Order, *id.* at 1.

## CONCLUSION

Crystallex respectfully requests that this Court order PDVH to immediately reissue PDVSA's share certificate and provide and deposit the reissued certificate with the Special Master.

<table>
<tr><td>

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166
(212) 351-4000

Miguel A. Estrada
Lucas C. Townsend
Adam M. Smith
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Tel: (202) 955-8500
Fax: (202) 467-0539


Dated:  September 25, 2023

</td><td>

*/s/ Jeffrey L. Moyer*
Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700
dicamillo@rlf.com
moyer@rlf.com
hunter@rlf.com

*Attorneys for Plaintiff*

</td></tr>
</table>