# Exhibit A

EFiled: Sep 19 2023 05:03PM EDT
Transaction ID 70901945
Case No. 2023-0778-PAF



Travis S. Hunter
302-651-7564
hunter@rlf.com

September 19, 2023

**Via File&Serve*Xpress* and Hand Delivery**

The Honorable Paul A. Fioravanti, Jr.
Delaware Court of Chancery
New Castle County Courthouse
500 North King Street
Wilmington, DE 19801

> Re: ***Petróleos de Venezuela, S.A. v. PDV Holding, Inc.***,
> **C.A. No. 2023-0778-PAF**

Dear Vice Chancellor Fioravanti:

I respectfully submit this letter on behalf of Crystallex International Corp. ("Crystallex") as a non-party *amicus curiae* to apprise this Court of pertinent background from pending federal litigation omitted from PDVSA and PDVH's filings here.

Crystallex holds a perfected and fully affirmed attachment of the PDVH shares to satisfy a $1 billion debt owned by Venezuela. The United States District Court for the District of Delaware (Stark, J.) is proceeding with a judicial sale of those shares to satisfy Crystallex's judgment and other judgments against Venezuela and PDVSA. That court previously entered a sale procedures order to govern the

The Honorable Paul A. Fioravanti, Jr.
September 19, 2023
Page 2

auction; it specifically provides that the court may order "PDVH to issue new cer-

tificates" if the original certificates cannot be found. *Crystallex Int'l Corp. v. Boli-*

*varian Republic of Venezuela* ("*Crystallex*"), Case No. 17-mc-151 (D. Del. July 17,

2023), D.I. 481, ¶ 49. As a matter of "comity," however, the court allowed PDVSA

and PDVH a limited time to produce a new certificate themselves by invoking their

rights under Delaware law. *See generally Crystallex*, D.I. 644. In allowing this

opportunity, the district court expressed no opinion on whether this Court would

have subject-matter jurisdiction over any share-reissuance proceeding.

Although PDVSA responded to this invitation with this action, this Court

lacks jurisdiction due to the lack of adversity between PDVSA and PDVH. PDVSA

owns 100% of PDVH; it can remove its directors and control its business direction

as it sees fit. *Jimenez v. Palacios*, 250 A.3d 814 (Del. Ch. 2019); *Crystallex Int'l*

*Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 151 (3d Cir. 2019).

PDVSA therefore could have used its control of PDVH to accomplish the reissuance

of the certificate voluntarily under 8 *Del. C.* § 167, and without any bond. *See*

*Crystallex*, June 26 Hr'g Tr. 114:2-6 (counsel for PDVSA and PDVH confirming

that issuance under Section 167 would be "voluntary on [PDVH's] part"); 

*Crystallex*, D.I. 639, pp. 2-3 (acknowledging statutory authority for PDVH to reissue

lost certificate "if it chooses to do so"). PDVSA (the sole shareholder) and PDVH

The Honorable Paul A. Fioravanti, Jr.
September 19, 2023
Page 3

(the wholly owned corporation) are completely aligned here, and both have conceded that the certificate is lost, stolen, or destroyed. *See* PDVSA Br. 1. That means there is no basis for an adversarial proceeding under Section 168 because Delaware courts, like federal courts, "decline to exercise jurisdiction over cases" that lack an "actual controversy" between "parties whose interests are real and adverse." *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 479-80 (Del. 1989) (internal quotations omitted).

The parties' purported dispute over the amount of a bond is insufficient to manufacture jurisdiction because it is contrived. Section 167 does not require a bond, PDVSA can meet any unreasonable demand for one by replacing the board of its wholly-owned subsidiary by unanimous consent—as it did in *Jimenez*—and thus eliminating the demand altogether. It is obvious the argument is presented to this Court by PDVSA and PDVH collusively in an effort to obtain from this Court a ruling that the parties can use to obstruct the federal proceedings.

If this Court decides the bond issue is justiciable, it should order at most only a nominal bond, because the risk secured by a bond here is derisory—between negligible and nonexistent. There is no need for PDVH's speculation (at 14) about what the Maduro regime might have done with the share certificate: Before its derecognition, the Maduro government told multiple federal courts in 2018 that the shares

The Honorable Paul A. Fioravanti, Jr.
September 19, 2023
Page 4

were in Delaware and "not going anywhere." *Crystallex*, D.I. 98 at 15; *see also* PDVSA Opp. to Mot. to Expedite 18, Doc. 003113121203, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-2797 (3d Cir. Dec. 28, 2018) (the shares are not "at risk of being devalued" because "sanctions and Crystallex's writ of attachment also preclude any transactions"). After its derecognition, the Maduro regime, if it had the certificate, became the legal equivalent of a thief; no one could have validly obtained rights from it in good faith. Indeed, counsel for the Guaidó government told the district court in 2020 that "the stock cannot be transferred except on the books and records of the company" and so "any pledge" by Maduro after the United States' derecognition of that regime "would be unauthorized" and "void." *Crystallex*, D.I. 214 at 77:10-19. And since 2019 and until OFAC recently decided to permit the sale of PDVH's shares in the upcoming district court auction, U.S. sanctions have precluded (and continue to preclude) any (other) transactions in the shares.

In sum, since Crystallex obtained its attachment in 2017, successive Venezuela governments either represented that the certificate would go nowhere, they were precluded by sanctions from alienating it, or both. No "*bona fide* purchaser or pledgee," PDVH Br. 11, could possibly exist, and none has come forward in the

The Honorable Paul A. Fioravanti, Jr.
September 19, 2023
Page 5

many years of this internationally publicized litigation—so it is particularly disin-

genuous for PDVH now to argue that it needs unprecedented security against risk.

PDVH's sole reason for not reissuing the certificate voluntarily to its 100% owner—

and from whom all of its current directors derive their authority—and seeking an

exorbitant bond from this Court is to foil the federal auction process.

For these reasons, Crystallex respectfully submits that the Court should dis-

miss this collusive litigation for lack of jurisdiction, or in the alternative order reis-

suance of the share certificate expeditiously with at most a nominal bond of $10.

If, upon dismissal, PDVSA and PDVH choose not to produce a new certificate

voluntarily under Section 167, the federal court remains a forum with jurisdiction to

issue any order that creditors may seek "ordering reissuance of the PDVH share cer-

tificate." *Crystallex*, D.I. 644 at 2; *IMO Daniel Kloiber Dynasty Tr.*, 98 A.3d 924,

939 (Del. Ch. 2014). OFAC has already represented that transactions necessary and

incident to the *Crystallex* sale process may be ordered by that court without sanctions

risk.

Respectfully submitted,

*/s/ Travis S. Hunter*

Travis S. Hunter (#5350)

WORDS: 977

The Honorable Paul A. Fioravanti, Jr.
September 19, 2023
Page 6

cc:   Samuel T. Hirzel, II, Esq.
      Jamie L. Brown, Esq.
      Aaron M. Nelson, Esq.
      Gillian L. Andrews, Esq.
      Brendan Patrick McDonnell, Esq.
      Kenneth J. Nachbar, Esq.
      Susan W. Waesco, Esq.
      Alexandra Cumings, Esq.

EFiled: Sep 21 2023 12:56PM EDT
Transaction ID 70918553
Case No. 2023-0778-PAF

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

PETRÓLEOS DE VENEZUELA, S.A., )
)
Plaintiff, )
)
v. ) C.A. No. 2023-0778-PAF
)
PDV HOLDING, INC., )
)
Defendant. )
)

## BRIEF FOR *AMICI CURIAE* CREDITORS OF PDVSA AND VENEZUELA IN SUPPORT OF REISSUANCE OF <u>PDVH STOCK CERTIFICATE</u>

## **<u>TABLE OF CONTENTS</u>**

**Page**

INTEREST OF *AMICI CURIAE* ...............................................................................1

INTRODUCTION ....................................................................................................2

ARGUMENT ...........................................................................................................3

I.      PDVH and PDVSA Have a History of Dilatory Conduct..............................3

II.     There Is No Ambiguity:  The PDVH Share Certificate Is Lost,
Stolen, or Destroyed......................................................................................4

III.    The Court Should Order No Bond or a Bond in a Nominal Amount .............5

       A.     PDVH Does Not Face Liability from Reissuance ................................6

            1.     PDVSA Is the Only Rightful Owner of the PDVH Shares ........6

            2.     The PDVH Shares Have Not Been Pledged or Transferred......7

            3.     PDVH's Liability Is Capped at the Amount of the Bond.........10

       B.     Equity Supports Ordering No Bond or Only a Nominal Bond..........12

CONCLUSION .....................................................................................................13

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Castro v. ITT Corp.*,
    598 A.2d 674 (Del. Ch. 1991) ...........................................................11

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    333 F. Supp. 3d 380 (D. Del. 2018) ...................................................7

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    932 F.3d 126 (3d Cir. 2019) ...............................................................7

*Jiménez v. Palacios*,
    237 A.3d 68 (Del. 2020) .......................................................................7

*Jiménez v. Palacios*,
    250 A.3d 814 (Del. Ch. 2019) ......................................................7, 11

*Princess Lida of Thurn & Taxis v. Thompson*,
    305 U.S. 456 (1939) ...........................................................................13

## Statutes & Rules

6 *Del. C.* § 8-405 ...............................................................................10, 11

8 *Del. C.* § 168...................................................................................*passim*

8 *Del. C.* § 168(b) ...........................................................................10, 12

*Amici Curiae* Red Tree Investments, LLC, Rusoro Mining Limited, ACL1 Investments Ltd., ACL2 Investments Ltd., LDO (Cayman) XVIII Ltd., OI European Group B.V., Northrop Grumman Ship Systems, Inc., f/k/a Ingalls Shipbuilding, Inc., and now known as Huntington Ingalls Incorporated, Koch Minerals Sàrl, Koch Nitrogen International Sàrl, and Gold Reserve Inc. respectfully submit this brief in support of an order to reissue the PDV Holding, Inc. ("PDVH") stock certificate pursuant to 8 *Del. C.* § 168.[1]

## **INTEREST OF *AMICI CURIAE***

*Amici Curiae* hold judgments against PDVSA and the Bolivarian Republic of Venezuela ("Venezuela") totaling more than $1 billion and conditional attachments on shares of PDVH owned by Petróleos de Venezuela, S.A. ("PDVSA").  *Amici* are seeking to attach and auction shares of PDVH, PDVSA's wholly owned subsidiary, in execution proceedings in the U.S. District Court for the District of Delaware.  *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, Case No. 17 Misc. 151 (D. Del.) ("*Crystallex*").

The defendants in *Crystallex* have argued that Delaware law requires physically seizing the share certificate to attach the PDVH shares.  While reserving judgment on whether "the PDVH share certificate must necessarily be physically

---

[1] No party's counsel authored any part of this brief, and no person other than *Amici* and their counsel made a monetary contribution to fund its preparation or submission.

seized in order for the sale to be completed," Order at 15, *Crystallex* (D. Del. July 27, 2023) D.I. 646, the Delaware district court ordered PDVSA to produce the share certificate or either (1) request the district court to order PDVH to reissue the certificate or (2) file an action in the Delaware Court of Chancery seeking an expedited order to reissue the certificate, Order at 1-2, *Crystallex* (D. Del. July 17, 2023), D.I. 644.  PDVSA chose the latter option and initiated this proceeding.

Time is of the essence because the *Crystallex* court has already established a schedule for auction of the PDVH shares.  The Preparation Launch Date for the auction was July 24, 2023, and the Launch Date is October 23, 2023.  Order at 11, *Crystallex* (D. Del. July 17, 2023), D.I. 643.  Delaying reissuance of the certificate risks derailing the launch of the auction and reducing the price offered for the shares by injecting uncertainty into the sale.

Accordingly, *Amici* have an interest in this proceeding because its outcome and timing could impact their ability to satisfy their judgments against PDVSA and Venezuela.

## **INTRODUCTION**

The Delaware district court has ordered that the physical PDVH share certificate be produced as part of the execution proceedings.  Thus, by delaying or preventing the reissuance of the certificate, PDVH and PDVSA can attempt to delay or prevent the execution proceedings from moving forward.

2

Not surprisingly, PDVH has requested an astronomical bond that the cash-strapped PDVSA could not possibly procure.  The Court should reject PDVH's and PDVSA's attempt to throw a wrench in the execution proceedings and order reissuance of the PDVH share certificate with either no bond or a bond of a nominal amount.  A bond is meant to protect a party reissuing share certificates from liability to an unknown *bona fide* owner of the shares.  But there is no risk of liability here.  As several courts have concluded, PDVSA is the only owner of the PDVH shares, so there is no possibility of an unknown *bona fide* owner appearing and suing PDVH.  Moreover, Delaware law caps PDVH's liability at the amount of the bond, so any risk of liability is easily managed.

## ARGUMENT

### I.   PDVH AND PDVSA HAVE A HISTORY OF DILATORY CONDUCT

For years, PDVH, PDVSA, and Venezuela have fought at every turn to avoid paying debts they acknowledge are owed.  As the Delaware district court has noted on multiple occasions, Venezuela is a "highly-recalcitrant judgment debtor" who, "through PDVSA and otherwise," has refused to pay its creditors and instead forced them to "undertake a decade's worth of extensive and expensive efforts" to collect on their judgments.  Order at 37, *Crystallex* (D. Del. Jan. 14, 2021), D.I. 234.  The district court recognized that PDVH's, PDVSA's, and Venezuela's efforts to stall or frustrate their creditors include filing "utterly unpersuasive" motions that seek only

3

"to delay the launch of the sales process."  Order at 2, 8, *Crystallex* (D. Del. July 17, 2023), D.I. 643.   The court has stated bluntly that these tactics are "arguably something of an affront to the United States judicial system."  Order at 38, *Crystallex* (D. Del. Jan. 14, 2021), D.I. 234.

## II.   THERE IS NO AMBIGUITY:   THE PDVH SHARE CERTIFICATE IS LOST, STOLEN, OR DESTROYED

PDVSA and PDVH attempt to manufacture ambiguity about whether the PDVH certificate is "lost, stolen, or destroyed" pursuant to 8 *Del. C.* § 168.   In its Complaint, PDVSA stated that it is "unknown" whether the certificate is lost, stolen, or destroyed.  Complaint ¶ 13.  But, in its Answering Brief, PDVSA acknowledged that "[t]here is no serious dispute" that the share certificate is lost, stolen, or destroyed.  PDVSA Br. at 2.  PDVH took "no position" on whether the certificate is lost, stolen, or destroyed, but claimed there "may be ambiguity" for the Court to resolve.  PDVH Br. at 9.  Presumably, PDVH would have the parties engage in time-consuming discovery and a hearing to resolve this "ambiguity."

It is unclear why PDVSA changed its position on whether the PDVH share certificate is lost, stolen, or destroyed.[2]  What is clear is that PDVSA admitted in

_____

[2] After PDVH filed its Opening Brief and before PDVSA filed its Answering Brief, several parties, including the Special Master appointed by the district court in *Crystallex*, submitted briefs in the *Crystallex* proceeding to highlight various omissions in PDVH's and PDVSA's submissions to this Court.  *See Crystallex* D.I. 710, 718, 720.  Those submissions may explain the change in PDVSA's argument.

4

*Crystallex* that it has "concluded the share certificate has been lost, stolen, or destroyed pursuant to 8 Del. Ch. §§ 167-68."  Letter, *Crystallex* (D. Del. July 21, 2023), D.I. 645; *see also id.* D.I. 646 at 2 (court noting that "PDVSA notified the Court that the share certificate is lost, stolen or destroyed"); D.I. 571 at 2 (certificate "presumably is in the hands of the illegitimate and independent Maduro regime"); D.I. 610 at 5 ("[T]he certificate is out somewhere in the world.").  The *Crystallex* court accepted these representations.  Order at 2, *Crystallex* (D. Del. July 27, 2023), D.I. 646; *see also id.* D.I. 644 at 2 & n.2.  In any event, PDVSA's statement in its Complaint that it is "unknown" whether the certificate is lost is just another way of saying that it is lost.

For its part, PDVH represented in *Crystallex* that it presumes the share certificate is "in the hands of the illegitimate and independent Maduro regime," which would mean it has been stolen.  Brief at 2, *Crystallex* (D. Del. May 24, 2023), D.I. 571.

There is no ambiguity.  Neither PDVH nor PDVSA know where the certificate is.  It has been lost, stolen, or destroyed.

## III.   THE COURT SHOULD ORDER NO BOND OR A BOND IN A NOMINAL AMOUNT

PDVH's request for an unprecedented bond sufficient to cover purported liability of "between $32 billion and $40 billion" is calculated to throw a wrench in the *Crystallex* proceeding by asking for something PDVH knows PDVSA cannot

provide.  PDVH knows that PDVSA cannot afford a large bond – it represented in *Crystallex* that, apart from the PDVH shares, "PDVSA has no other available assets."  Mem. of Law at 4, *Crystallex* (D. Del. June 14, 2023), D.I. 610.

A bond is unnecessary because reissuance of the PDVH share certificate will not create any risk of liability.  PDVSA is PDVH's sole shareholder – there is no other party with a *bona fide* claim to own the PDVH shares.  Even if there were a risk of liability, Delaware law limits any liability to the amount of the bond.  Moreover, equity demands rejecting the request for a significant bond given the rights of innocent third-party creditors at stake.

### A.    PDVH Does Not Face Liability from Reissuance

#### 1.    *PDVSA Is the Only Rightful Owner of the PDVH Shares*

PDVH has admitted that PDVSA is the "lawful owner of all 1,000 shares of PDVH Stock" and that PDVSA "owns 100% of the stock of PDV Holding."  PDVH Answer ¶ 5; CITGO Petroleum, Our Corporate Structure, https://www.citgo.com/about/fueling-venezuelas-future; *see also* PDVH Br. at 1.  PDVH has also admitted that its books list only PDVSA as owner of its shares and its shares are "transferrable only on the books of the Corporation."  Answer at 2, *Crystallex* (D. Del. June 5, 2020), D.I. 177.

PDVSA's ownership of PDVH has been conclusively determined by multiple courts.  *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d

126, 132 (3d Cir. 2019) (noting PDVH is PDVSA's "wholly owned U.S. subsidiary"); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 418 n.36 (D. Del. 2018) ("PDVSA owns 100% of the shares of PDVH") (quotation marks omitted).  Most importantly, *this* court recognized that PDVSA is "the sole stockholder of PDV Holding" and confirmed that the PDVSA board appointed by the National Assembly has the authority "to exercise PDVSA's rights as a shareholder of PDV Holding."  *Jiménez v. Palacios*, 250 A.3d 814, 825 (Del. Ch. 2019), *aff'd* 237 A.3d 68 (Del. 2020).

PDVH gestures to the shift in control over PDVSA in 2019 from the Maduro regime to the Guaido regime.  That's of no moment.  This court held that the PDVSA board appointed by the U.S.-recognized Guaido regime – the board of the petitioner in this case – and not the board appointed by the Maduro regime is the valid board of PDVSA in the United States.  *Jiménez*, 250 A.3d at 825.  Indeed, a Guaido-appointed PDVSA managing board chose the entire board of PDVH.  Positing that the stock certificate may be in the hands of the Maduro regime therefore proves nothing.

### 2.     *The PDVH Shares Have Not Been Pledged or Transferred*

PDVH argues that its stock could have been pledged or transferred by the Maduro regime without PDVH's knowledge.  PDVH Br. at 14.  PDVH provides no

evidence for that argument, which contradicts PDVH's representations in *Crystallex* and ignores the practical realities of this case.

***First***, since January 28, 2019, any disposition of the shares has been blocked by sanctions implemented by the Department of the Treasury's Office of Foreign Assets Control ("OFAC"). PDVH's counsel admitted this in 2020 when it represented that "[t]he company is not going to transfer stock given" OFAC sanctions, that "any pledge that was done after the [National Assembly took power] would be unauthorized and be void," and that it did not see "any risk of [the shares] being transferred." July 17, 2020 Tr. at 77:10-19, *Crystallex* (D. Del. July 20, 2020), D.I. 214.

Nor were the shares transferred or pledged prior to OFAC sanctions. The Maduro-appointed directors of PDVSA repeatedly confirmed in 2019 that "PDVSA is the sole stockholder of PDV Holding." Complaint ¶1, *Jiménez v. Palacios*, C.A. No. 2019-0490-KSJM (Del. Ch. June 25, 2019); *see* Opening Br. at 5, *Jiménez*, C.A. No. 2019-0490-KSJM (Del. Ch. July 11, 2019) (same language); *see also* Opening Br. at 2, *Jiménez v. Palacios*, No. 399, 2019 (Del. Nov. 5, 2019) ("PDV Holding is a wholly-owned subsidiary of PDVSA."). And in 2018, before the change in government, counsel for the Maduro-controlled PDVSA confirmed that the PDVH shares "are located in Delaware," "are not going anywhere," and their "disposition,"

"transfer[]," or "sale" "cannot occur" and is "prohibit[ed]." Mem. of Law at 15, *Crystallex* (D. Del. Aug. 31, 2018), D.I. 98.

***Second***, regardless of OFAC sanctions, the PDVH stock can ***only*** be transferred on the books and records of the company, and PDVH's books show that, as of June 2020, PDVSA is the only owner of its shares. Answer at 2, *Crystallex* (D. Del. June 5, 2020), D.I. 177; *see also* July 17, 2020 Tr. at 77:10-12, *Crystallex* (D. Del. July 20, 2020), D.I. 214 ("[T]he stock cannot be transferred except on the books and records of the company."). Any transfer would be invalid because it is not reflected on PDVH's books.

***Third***, it is inconceivable that the PDVH shares, which are worth billions of dollars, would be pledged or transferred in secret. PDVH cites two examples of pledges of shares in a different entity, CITGO Holding, as proof that a pledge of the PDVH shares is not "hypothetical." PDVH Br. at 14. But as PDVH pointed out in another case, those pledges were publicly debated by the Venezuelan National Assembly and extensively reported by media and market-research sources. Mem. of Law at 10-14, *Petróleos de Venezuela S.A., et al. v. MUFG Union Bank, N.A., et al.*, Case No. 19 Civ. 10023 (S.D.N.Y. June 15, 2020), D.I. 117. They did not occur, and could not have occurred, secretly. It is fantasy to think that a multi-billion-dollar pledge of a hotly contested sovereign asset that is the subject of highly publicized

legal proceedings has remained secret for years.[3]  Any owner or pledgee of the PDVH shares would have appeared long ago in the *Crystallex* proceeding, which has been the subject of extensive public reporting for over six years.

3.     *PDVH's Liability Is Capped at the Amount of the Bond*

Even if one of PDVH's fantastical scenarios for liability became reality, that liability will be capped at the amount of the bond ordered by the Court.  8 *Del. C.* § 168(b).

PDVH argues that Section 168's liability cap would be frustrated because it would be unclear whether 6 *Del. C.* § 8-405 governs rather than Section 168.  That makes no sense.  Section 168 clearly states that if the Court orders reissuance under that statute, the liability cap contained in that provision will apply:

> No corporation which has issued uncertificated shares or a certificate **pursuant to an order of the court entered hereunder** shall be liable in an amount in excess of the amount specified in such bond.

8 *Del. C.* § 168(b) (emphasis added).

Section 8-405 does not apply.  It states that an issuer shall reissue a stock certificate under certain conditions and does not provide for a court order compelling

---

[3] No entity besides PDVSA could claim in good faith that it holds PDVH stock. Litigation over PDVH's ownership in this Court and in the District of Delaware has been ongoing for years.  The records in those cases are public and have been widely reported.  There is no realistic possibility that any party could have acquired a significant interest in PDVH's stock without at least constructive knowledge that such interest was not offered by PDVH's true shareholder.

10

reissuance.  Section 168, on the other hand, provides that when an issuer *refuses* to reissue a stock certificate, the court may order it.  Unlike Section 8-405, Section 168 requires that (1) the issuing corporation refuse to reissue the certificate, (2) the petitioner file a complaint, and (3) the court find that (i) the original certificate was lost, stolen, or destroyed, (ii) the petitioner is the rightful owner of the stock, and (iii) there is no cause why a new certificate should not be issued.  8 *Del. C.* § 168.  The additional requirements of Section 168 come with additional protections.  Because the shares are adjudicated lost, stolen, or destroyed, and the petitioner is adjudicated the rightful owner, liability is capped.

The case cited by PDVH, *Castro v. ITT Corp.*, 598 A.2d 674 (Del. Ch. 1991), is unavailing.  *Castro* observes that a corporation which reissues a share certificate under Section 168 and is later sued by the shares' rightful owner may raise the bond ordered in the Section 168 proceeding as a "defense." *Id.* at 682.  PDVH seizes upon an extended hypothetical involving a foreign-state court refusing to recognize a Delaware-court order reissuing share certificates to a party with a *bona fide* claim under Section 168.  *Id.* at 682-83 & n.14.  But ownership of the PDVH shares has already been conclusively litigated.  *See Jiménez*, 250 A.3d at 825.  And the hypothetical in *Castro* assumed the foreign-court litigant challenging the Delaware order had no notice of the reissuance.  Certainly, any possible challenger here is on notice of these long-running and highly publicized proceedings.

11

## B.    Equity Supports Ordering No Bond or Only a Nominal Bond

Section 168 confers discretion to set a bond "in such form and with such security *as to the court appears sufficient*."  8 *Del. C.* § 168(b) (emphasis added).  Here, PDVSA's rightful ownership of the shares has been established.  PDVSA cannot afford a substantial bond.  And PDVH is using the bond requirement to try to impede execution proceedings.  In these circumstances, equity compels reissuing the share certificate and requiring no bond or only a nominal bond.

Other courts have considered similar circumstances when assessing the necessity and conditions of a bond under Section 168(b).  In *In re Issuance of Replacement Certificates of Shares of Panera Bread Company Class B Common Stock* ("*Panera Bread*"), the petitioner sought reissuance of lost share certificates and argued that no bond was necessary because, in the two years since the certificates were lost, no party had appeared to claim the shares and the risk of liability was therefore minimal.  Petition at 6-7, *Panera Bread*, No. 5372-CC (Del. Ch. Mar. 25, 2010).  The court ordered reissuance, did not require a bond, and ordered that the reissuing corporation and its agents "shall not be liable on any claim in connection with the shares."  Order, *Panera Bread*, No. 5372-CC (Del. Ch. Oct. 7, 2010).

Similarly, in *In re Issuance of a Replacement Certificate of Shares of STR Holdings, Inc. Common Stock* ("*STR Holdings*"), the petitioner's only asset was its shares in the reissuing company, and it was unable to obtain a bond.  Petition at 5,

12

*STR Holdings*, No. 11607-VCP (Del. Ch. Oct. 14, 2015).  Just as in *Panera Bread*, the court ordered reissuance of the certificate, did not require a bond, and ordered that the reissuing company "shall not be liable on any claim in connection with the shares."  Order, *STR Holdings*, No. 11607-VCP (Del. Ch. Oct. 27, 2015).

The complete picture here shows no bond – or at most, a bond in a nominal amount – is what equity requires.  PDVH's request for a large bond is yet another tactic in a long-running strategy of delay.  There is no risk of liability because PDVSA is the only owner of PDVH shares.  Aside from the PDVH shares, "PDVSA has no other available assets" to pay a bond.  Mem. of Law at 4, *Crystallex* (D. Del. June 14, 2023), D.I. 610.  And a large bond could derail the ongoing execution proceedings in which third-party creditors are collecting long-overdue debts.

## CONCLUSION

The Court should order reissuance of the PDVH share certificate and require no bond or a bond of only a nominal amount.[4]

---

[4] By filing this brief, *Amici* do not waive any arguments they may have regarding jurisdiction or other matters.  *See, e.g.*, *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456 (1939).

Dated: September 21, 2023

|  | /s/ Rebecca L. Butcher |
|---|---|

Of Counsel:

Steven F. Molo

Justin M. Ellis

Joshua D. Bloom

Mark W. Kelley

Lois S. Ahn

MOLOLAMKEN LLP

430 Park Avenue

New York, NY  10022

Tel.: (212) 607-8160

Rebecca Butcher (#3816)

Jennifer L. Cree (#5919)

LANDIS RATH & COBB LLP

919 Market Street, Suite 1800

Wilmington, DE  19801

Tel.: (302) 467-4400

butcher@lrclaw.com

cree@lrclaw.com

*Counsel for Red Tree Investments, LLC*

|  | /s/ Marie M. Degnan |
|---|---|

Marie M. Degnan (#5602)

ASHBY & GEDDES

500 Delaware Ave., 8th Floor

P.O. Box 1150

Wilmington, DE  19899

Tel.: (302) 654-1888

mdegnan@ashbygeddes.com

*Counsel for ACL1 Investments Ltd., ACL2 Investments Ltd.,*
*and LDO (Cayman) XVIII Ltd.*

|  | /s/ Craig Martin |
|---|---|

Of Counsel:

James E. Berger

DLA PIPER LLP (US)

1251 Avenue of the Americas

New York, NY  10020

Tel.: (212) 335-4715

Fax: (212) 884-8715

Craig Martin (#5032)

DLA PIPER LLP (US)

1201 North Market Street,

Suite 2100

Wilmington, DE  19801

Tel.: (302) 468-5655

Fax: (302) 778-7834

Craig.Martin@us.dlapiper.com

*Counsel for Rusoro Mining Limited*

14

/s/ Jody C. Barillare

Of Counsel:                          Jody C. Barillare (#5107)
Jonathan M. Albano                   MORGAN, LEWIS & BOCKIUS LLP
Christopher L. Carter                1201 N. Market Street, Suite
MORGAN, LEWIS & BOCKIUS LLP          2201
One Federal Street                   Wilmington, DE  19801
Boston, MA  02110                    Tel.: (302) 574-3000
Tel.: (617) 341-7700                 jody.barillare@morganlewis.com

*Counsel for OI European Group B.V.*

/s/ Laura Davis Jones

Of Counsel:                          Laura Davis Jones (#2436)
Alexander A. Yanos                   Peter J. Keane (#5503)
Apoorva Patel                        PACHULSKI STANG ZIEHL &
ALSTON & BIRD, LLP                   JONES LLP
90 Park Avenue, 15th Floor           919 North Market Street, Suite
New York, NY  10016                  1700
Tel.: (212) 210-9400                 P.O. Box 8705
                                     Wilmington, DE  19899
Robert Poole                         Tel.: (302) 652-4100
ALSTON & BIRD, LLP                   ljones@pszjlaw.com
1201 W. Peachtree St. NE, Suite 4900 pkeane@pszjlaw.com
Atlanta, GA  30309
Tel.: (404) 881-4547

*Counsel for Northrop Grumman Ship Systems, Inc., f/k/a Ingalls Shipbuilding, Inc.,
and now known as Huntington Ingalls Incorporated and also Koch Minerals Sàrl
and Koch Nitrogen International Sàrl*

15

|  | /s/ Kevin J. Mangan |
|---|---|
| Of Counsel: | Kevin J. Mangan (#3810) |
| Matthew H. Kirtland | Matthew P. Ward (#4471) |
| NORTON ROSE FULBRIGHT US LP | WOMBLE BOND DICKINSON |
| 799 9th Street NW, Suite 1000 | (US) LLP |
| Washington, DC  20001 | 1313 N. Market Street, Suite |
| Tel.: (202) 662-0200 | 1200 |
|  | Wilmington, DE  19801 |
| Katherine G. Connolly | Tel.: (302) 252-4320 |
| NORTON ROSE FULBRIGHT US LLP | kevin.mangan@wbd-us.com |
| 555 California Street, Suite 3300 | matthew.ward@wbd-us.com |
| San Francisco, CA  94101 |  |
| Tel.: (628) 231-6816 |  |

*Counsel for Gold Reserve Inc.*

Words: 3,127

16