## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Case No. 17-mc-151-LPS |
| OI EUROPEAN GROUP B.V.,<br><br>    Plaintiff,<br><br>  v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Case No. 19-mc-290-LPS |
| NORTHROP GRUMMAN SHIP SYSTEMS, INC.,<br><br>    Plaintiff.,<br><br>  v.<br><br>THE MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Case No. 1:20-mc-257-LPS |

| | |
|---|---|
| ACL1 INVESTMENTS LTD., et. al, | |
| Plaintiffs, | Case No. 21-mc-46-LPS |
| v. | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | |
| Defendant. | |
| RUSORO MINING LIMITED, | |
| Plaintiff, | |
| v. | Case No. 21-mc-481-LPS |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | |
| Defendant. | |
| KOCH MINERALS SÀRL, KOCH NITROGEN INTERNATIONAL SÀRL, | |
| Plaintiffs, | Case No. 22-mc-156-LPS |
| v. | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | |
| Defendant. | |
| GOLD RESERVE INC., | |
| Plaintiff, | |
| v. | Case No. 22-mc-453-LPS |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | |
| Defendant. | |

| | |
|---|---|
| RED TREE INVESTMENTS, LLC,<br><br>       Plaintiff,<br><br>    v.<br><br>PETRÓLEOS DE VENEZUELA, S.A. and<br>PDVSA PETRÓLEO, S.A.,<br><br>       Defendants. | Case Nos. 22-mc-68-LPS & 22-mc-69-LPS |
| CONTRARIAN CAPITAL<br>MANAGEMENT, L.L.C., CONTRARIAN<br>CAPITAL FUND I, L.P., CONTRARIAN<br>DOME DU GOUTER MASTER FUND, LP,<br>CONTRARIAN CAPITAL SENIOR<br>SECURED, L.P., CONTRARIAN EM II, LP,<br>CONTRARIAN EMERGING MARKETS,<br>L.P., BOSTON PATRIOT SUMMER ST<br>LLC, POLONIUS HOLDINGS, LLC,<br>EMMA 1 MASTER FUND, L.P.,<br>CONTRARIAN FUNDS, L.L.C., and E1 SP,<br>A SEGREGATED ACCOUNT OF EMAP<br>SPC,<br><br>       Plaintiffs,<br><br>    v.<br><br>BOLIVARIAN REPUBLIC OF<br>VENEZUELA,<br><br>       Defendant. | Case Nos. 21-mc-18-LPS,<br>22-131-LPS & 22-mc-263-LPS |
| SIEMENS ENERGY, INC.<br><br>       Plaintiff,<br><br>    v.<br><br>PETRÓLEOS DE VENEZUELA, S.A.,<br><br>       Defendant. | Case No. 22-mc-347-LPS |

| | |
|---|---|
| PHARO GAIA FUND, LTD., and PHARO MACRO FUND, LTD., | |
| Plaintiffs, | Case No. 23-mc-360-LPS |
| v. | |
| THE BOLIVARIAN REPUBLIC OF VENEZUELA, | |
| Defendant. | |
| PHARO GAIA FUND, LTD., PHARO MACRO FUND, LTD., and PHARO TRADING FUND, LTD., | |
| Plaintiffs, | Case No. 23-mc-361-LPS |
| v. | |
| THE BOLIVARIAN REPUBLIC OF VENEZUELA, | |
| Defendant. | |

**PDVSA, PDVH, AND CITGO'S OPPOSITION TO MOTIONS FOR MISCELLANEOUS RELIEF IN CONNECTION WITH THE SALE PROCEDURES ORDER**

The Court should deny the motions filed by the Six Creditors[1] (D.I. 801),[2] Red Tree (D.I. 802), Contrarian (D.I. 802), Siemens Energy (D.I. 808), and the Pharo entities (D.I. 809) (together, "Movants") because the relief they request is unnecessary to protect the creditors' interests, is premature in light of the need to settle questions of priority before writs of attachment are issued, and would serve only to clutter the docket and create unforeseen complications, rather than provide clarity or additional efficiency.  First, Movants' unsupported speculation that "there

---

[1] PDVSA, PDVH, and CITGO adopt the definition of "Six Creditors" from D.I. 801 at 1.

[2] In this brief, all docket citations are to the docket in *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-151-LPS, unless otherwise indicated.

is a meaningful risk that the Venezuela Parties could attempt to thwart the sale process" by "satisfying or otherwise consensually resolving the judgments owed to the current Sale Process Parties" (D.I. 801 at 2), is unwarranted.  Even if the Venezuela Parties[3] were to satisfy or consensually resolve the current Sale Process Parties' judgments, they would not do so without first notifying the Special Master and the Court and providing creditors with notice and an opportunity to be heard before any resolution is implemented.  Any questions about how such a resolution would impact the pending sale process and procedures can be addressed at that time, with the specific and concrete circumstances—rather than hypothetical speculation—available to assess.  Second, Movants' request that the Court issue and serve writs of attachment "immediately" (*id*. at 5) or "now" (D.I. 802 at 2) should be denied as unnecessary and premature.  The Special Master has established an orderly process for implementing this Court's instructions, and he intends to present any unresolved disputes regarding priority to the Court sometime after January 12, after which the Court will resolve any such disagreements, presumably after receiving briefing from interested parties.  That briefing should be completed, and any disputes resolved, before writs of attachment are issued, served, and perfected.  Indeed, the claimed priority position that Movant Contrarian submitted to the Special Master conflicts with this Court's prior order regarding priority, as explained in more detail below.  The Court should not perfect Contrarian's attachment until its correct place in line has been determined.  Nevertheless, PDVSA, PDVH, and CITGO do not object to the Court recognizing that qualified creditors have reached Step 5 and are thus

---

[3] Capitalized terms used but not defined herein have the meaning ascribed to them in the Court's January 14, 2022 Order, D.I. 234, and the Sale Procedures Order, D.I. 481.

provisionally entitled to "Additional Judgment Creditor" status under the Court's relevant orders, assuming the Special Master consents.[4]

## ARGUMENT

*First*, the Six Creditors' concerns that the sale process might be mooted overnight are baseless. The Special Master is in possession of the reissued certificate representing the shares of PDVH (D.I. 810), and PDVSA will not request its return while conditional attachments are outstanding, even if Crystallex's judgment were satisfied or consensually resolved. As such, Movants' ability to seize the physical share certificate would not be affected by a settlement. Moreover, as explained above, PDVSA, PDVH, and CITGO will notify the Special Master and the Court of any intention to satisfy or consensually resolve the current Sale Process Parties' judgments before any such resolution is implemented. Accordingly, interested creditors (and the Venezuela Parties) will have an opportunity to be heard about how the proposed resolution might affect these proceedings at that time.

*Second*, "making the SPO applicable to all creditors' actions" (D.I. 801 at 5) or designating any Movant as a Sale Process Party (*id.* at 4-5) would likely cause more procedural and docketing headaches than it would resolve. The SPO provides a mechanism for Movants to participate in the sale process; that is sufficient. *Cf.* D.I. 507 ¶¶ 2(c), 3, 4(a) (denying Red Tree's motion to intervene in part because Red Tree will able to participate in the sale as an Additional Judgment Creditor if its judgment is added to the sale process and allowing creditors with conditional attachments to become Sale Process Parties would "make an already challenging process even more unwieldy and impracticable"). Movants do not even attempt to explain or grapple with the

---

[4] For the avoidance of doubt, PDVSA, PDVH, and CITGO maintain and reserve all of their previously made objections to the issuance of conditional and actual writs of attachment and to the process itself.

implications of entering the SPO in other creditors' cases, which provides yet another reason to defer how to respond to a hypothetical future situation unless and until that situation actually presents itself and the Court and the Special Master can fully consider how to manage the situation after informed briefing from interested parties.

*Third*, it would be imprudent to set in motion the issuance, service, and perfection of writs of attachment before disputes over the priority order of creditors have been raised and resolved. Under the current schedule, the Special Master has until January 12 to resolve any such disputes, after which he will present any remaining issues to the Court for resolution. D.I. 693 at 4; D.I. 771 at 2. Next—and presumably after briefing by any interested creditors regarding disputes over priority—the Court will issue an order setting forth the creditors' priority for purposes of perfecting their writs of attachment. D.I. 693 at 4-5; D.I. 646 at 26 (explaining that the Court will "announce the priority" in a "separate Order"). There is no sound reason to short circuit that process; doing so threatens confusion and motion practice that may well become unnecessary if the existing schedule is followed.

Indeed, the Pharo entities acknowledge that certain steps (*i.e.*, service of the writs) should not occur until the "priority list is finalized and any outstanding objections are resolved." D.I. 809 at 4. Red Tree and Contrarian acknowledge that "[c]ertain creditors, including Red Tree and others, have raised questions or concerns with the Special Master about the Special Master's priority calculations," which (presumably) remain unresolved. D.I. 802 at 3 n.1. One obvious concern is that the Special Master's Steps Chart indicates (based on Contrarian's own submission) that Contrarian reached Step 4 on April 26, 2023 (D.I. 803-1), but Contrarian reached Step 4 on July 21, 2023. Contrarian's initial April 26 attachment petition was denied without prejudice. *See Contrarian Cap. Mgmt. LLC v. Bolivarian Republic of Venezuela*, No. 1:21-mc-00018, D.I. 34.

Contrarian filed a second attachment petition on July 21, 2023, (*Contrarian*, No. 1:21-mc-00018, D.I. 47), which was eventually granted (*Contrarian*, No. 1:21-mc-00018, D.I. 74).  This Court previously considered and rejected an argument from a different creditor that priority dates should be determined based on the date on which a creditor first filed even an unsuccessful motion for a writ of attachment.  D.I. 646 at 21, 23.  Instead, this Court held, priority will be based on the date on which a creditor filed a motion for a writ of attachment that eventually was granted.  *Id*. at 23 n.15 (explaining that OIEG's first, unsuccessful motion for a writ of attachment "is irrelevant to determining priority"; OIEG's later-filed renewed motion, which was ultimately successful, sets its priority).  It appears that creditor Valores Mundiales would supplant Contrarian in priority after correcting for this error.  *See* D.I. 803-1.

*       *       *

PDVSA, PDVH, and CITGO assure the Court and Movants that all creditors will have the opportunity to be heard on the implications of any consensual resolution of the Sale Process Parties' judgments (should one materialize at all) before any such resolution is implemented. Movants' request to speed up the current schedule based on unfounded speculation is unnecessary to protect their interests and is likely to only complicate matters.  The Court should deny their motions.

5

RESPECTFULLY SUBMITTED,

December 29, 2023

|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|

OF COUNSEL:
Nathan P. Eimer
Lisa S. Meyer
Daniel D. Birk
Gregory M. Schweizer
Emily E. Sullivan
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com
DBirk@eimerstahl.com
GSchweizer@eimerstahl.com
ESullivan@eimerstahl.com

*/s/ Kenneth J. Nachbar*
Kenneth J. Nachbar (#2067)
Susan W. Waesco (#4476)
Alexandra M. Cumings (#6146)
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@morrisnichols.com
SWaesco@morrisnichols.com
ACumings@morrisnichols.com

*Attorneys for PDV Holding, Inc., and*
*CITGO Petroleum Corporation*


HEYMAN ENERIO GATTUSO & HIRZEL LLP

OF COUNSEL:
Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

*/s/ Samuel T. Hirzel*
Samuel T. Hirzel (#4415)
Brendan Patrick McDonnell (#7086)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law

*Attorney for Petróleos de Venezuela, S.A.*

6