# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GRAMERCY DISTRESSED OPPORTUNITY FUND LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> *Defendant*. | Nos. 23 Misc. 378 & 23 Misc. 379 (LPS) |
| RUDI LOVATI AND ALLESSANDRO LUCIBELLO PIANI, <br><br> *Plaintiffs*, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> *Defendant*. | No. 23 Misc. 340 (LPS) |
| CRYSTALLEX INTERNATIONAL CORPORATION, <br><br> *Plaintiff*, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> *Defendant*. | No. 17 Misc. 151 (LPS) |

**MOTION FOR MISCELLANEOUS RELIEF**
**IN CONNECTION WITH THE SALE PROCEDURES ORDER**

Gramercy Distressed Opportunity Fund, LLC ("**Gramercy**"), along with Rudi Lovati and Alessandro Lucibello Piani (together with Gramercy, "**Movants**"), respectfully move for an order affording equal priority status to all creditors who filed and obtained motions for a writ of attachment *fieri facias* against the PDVH shares owned by PDVSA during the 2023 calendar

1

year (the "**2023 Additional Judgment Creditors**").[1]  If, as anticipated, the sale proceeds are insufficient to satisfy all attached judgments held by the 2023 Additional Judgment Creditors in full, these creditors should have their attached judgments paid on a *pro rata* basis.  At the time the Court set the current priority scheme, it could not have known the total number of 2023 Additional Judgment Creditors, the amounts of their judgments, or that they would all file their motions for attachment within a short nine-week period.  In light of those new facts, and the range of proceeds reasonably likely to be generated by the sale of the PDVH shares, assigning this last cohort of creditors equal priority would achieve a more equitable distribution of proceeds while conforming with Delaware's first in time principle.

Gramercy informed the Special Master of its intention to file this Motion.

## BACKGROUND

On July 27, 2023, the Court issued an order establishing, among other points related to the sale of PDVSA's shares in PDVH, the relative priority of judgment creditors based on the date on which they filed successful motions for a writ of attachment (*i.e.*, "**Step 4**").  17 Misc. 151 D.I. 646 ("**July 2023 Order**").  At that time, these enforcement proceedings were already well advanced.  The Court had received authorization from the U.S. Department of the

---

[1] The 2023 Additional Judgment Creditors group includes the following creditors that filed successful motions for a writ of attachment in 2023: Consorcio Andino, S.L., Valores Mundiales, S.L. ("**Valores**"); Contrarian Capital Management, L.L.C. (October 2020 Judgment), Contrarian Capital Management, L.L.C. (May 2021 Judgment), and Contrarian Capital Management, L.L.C. (October 2021 Judgment) ("collectively, **Contrarian**"); ConocoPhillips (ICSID) (19-cv-00464) ("**ConocoPhillips III**"); Pharo Gaia Fund Ltd., Pharo Macro Fund Ltd., Pharo Gaia Fund, Ltd., Pharo Macro Fund, Ltd., Pharo Trading Fund, Ltd. (20-cv-8497 (S.D.N.Y.)) ("**Pharo Gaia I**"); Pharo Gaia Fund Ltd., Pharo Macro Fund Ltd., Pharo Gaia Fund, Ltd., Pharo Macro Fund, Ltd., Pharo Trading Fund, Ltd. (19-cv-3123 (S.D.N.Y.)) ("**Pharo Gaia II**"); Rudi Lovati and Alessandro Lucibello Piani ("**Lovati & Piani**"); Gramercy Distressed Opportunity Fund LLC (18-1371-CRC) ("**Gramercy I**"); Gramercy Distressed Opportunity Fund LLC (18-1373-CJN) ("**Gramercy II**"); and Saint-Gobain Performance Plastics Europe ("**Saint-Gobain**").  *See* 17 Misc. 151 D.I. 870 Ex. A ("**Steps Chart**").  Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Sale Procedures Order, 17 Misc. 151 D.I. 481.

Treasury's Office of Foreign Assets Control ("**OFAC**") to issue and serve writs of attachment in favor of Additional Judgment Creditors on May 1, 2023, 17 Misc. 151 D.I. 555, and had already granted writs of attachment based on motions filed between August 2017 and October 2022 to the following eleven groups of judgment creditors (together with Tidewater Caribe S.A. and Tidewater Investment SRL., the "**2017–2022 Judgment Creditors**"):[2]

| Creditor Group | Step 4 Date | Asserted Judgment Amount (millions)[3] |
|---|---|---|
| Crystallex | August 14, 2017 | $990 |
| ConocoPhillips I | November 26, 2019 | $1,331 |
| OIEG | February 19, 2021 | $643 |
| Northrop/Huntington | February 19, 2021 | $138 |
| ACL | November 22, 2021 | $118 |
| Red Tree | February 8, 2022 | $284 |
| Rusoro | February 9, 2022 | $1,480 |
| ConocoPhillips II | June 15, 2022 | $48 |
| Koch | October 7, 2022 | $456 |
| Gold Reserve | October 20, 2022 | $1,024 |
| Siemens | October 31, 2022 | $193 |

Further, the Special Master had begun preparing for the Marketing Process to sell PDVSA's shares in PDVH.  *See* 17 Misc. 151 D.I. 643, at 11 (setting the Preparation Launch Date for July 24, 2023).

---

[2] The 2017–2022 Judgment Creditors are: Crystallex Corporation ("**Crystallex**"); Tidewater Caribe S.A., Tidewater Investment SRL. ("**Tidewater**"); ConocoPhillips (Petrozuata/Hamaca) (19-mc-00342) ("**ConocoPhillips I**"); OI European Group B.V. ("**OIEG**"); Northrop Grumman Ship Systems, Inc. ("**Northrop/Huntington**"); ACL1 Investments Ltd., ACL2 Investments Ltd., LDO (Cayman) XVIII Ltd. ("**ACL**"); Red Tree Investments, LLC (19-cv-2519), Red Tree Investments, LLC (19-cv-2523), and Red Tree Fee Judgment (collectively, "**Red Tree**"); Rusoro Mining Limited ("**Rusoro**"); ConocoPhillips (Corocoro) (22-mc-00264) ("**ConocoPhillips II**"); Koch Minerals Sarl and Koch Nitrogen International ("**Koch**"); Gold Reserve Inc. ("**Gold Reserve**"); and Siemens Energy Inc. ("**Siemens**").  *See* Steps Chart.

[3] *See id.*  As noted by the Special Master, these Asserted Judgment Amounts "are based solely on dollar values provided in the applicable Attached Judgment Statement and any accompanying documentation, and does not necessarily include all amounts owed, including accrued or accruing interest."

As stated in the July 2023 Order, the Court's priority scheme attempted to strike an equitable balance that would reward creditors who diligently enforced their judgments and contributed to the overall enforcement effort, while also avoiding unjust windfalls attributable to fortuitous events beyond a creditor's control, such as the Court's management of its own docket. *See* July 2023 Order at 19–25.  Immediately before and after entry of the July 2023 Order, seven groups of creditors filed motions for writs of attachment.  *See* Summary Timeline attached as Exhibit 1.  These motions were all filed within a span of nine weeks:

| Creditor Group | Step 4 Date | Asserted Judgment Amount (millions)[4] |
|---|---|---|
| Valores | June 29, 2023 | $626 |
| Contrarian | July 21, 2023 | $395 |
| ConocoPhillips III | August 1, 2023 | $10,473 |
| Pharo Gaia | August 2, 2023 | $1,786 |
| Lovati & Piani | August 2, 2023 | $161 |
| Gramercy | August 17, 2023 | $537 |
| Saint-Gobain | September 5, 2023 | $49 |

All of the 2023 Additional Judgment Creditors, who filed their motions during this short window in the summer of 2023, secured writs of attachment before the end of the year.  *See* 23 Misc. 378 D.I. 29; 22 Misc. 464 D.I. 40.  On January 8, 2024, the Court designated Gramercy, Lovati & Piani, and all other creditors who had obtained a conditional or unconditional writ of attachment as Additional Judgment Creditors.  *See* 17 Misc. 151 D.I. 838.

Collectively, the 2023 Additional Judgment Creditors hold attached judgments in asserted amounts of approximately $14 billion.  *See* Steps Chart.  Based on the respective size of the attached judgments and the dates on which the creditors filed their motions for attachment, however, and despite having filed their motions for attachment within weeks (and, in some cases, days) of each other, each 2023 Additional Judgment Creditor faces radically different prospects

---

[4] *See id.*; *id.* n.2.

of recovery. The largest attached judgment of *all* of the creditors, by far, belongs to ConocoPhillips (the ConocoPhillips III attached judgment, so designated because it is junior to two other attached judgments held by ConocoPhillips), which amounts to approximately $10.5 billion. Based on the aggregate attached judgments with final or conditional attachments, in the current priority scheme, the sale of the PDVH shares would have to generate net proceeds in excess of $7.8 billion for ConocoPhillips to recover anything on the ConocoPhillips III attached judgment. The sale would have to generate proceeds in excess of $18.2 billion for the creditors immediately after ConocoPhillips—Pharo Gaia, and Lovati & Piani—to recover anything on their attached judgments, despite having filed their motions for a writ of attachment just one day later, and having obtained their writs more than a month before ConocoPhillips.

## **RELIEF REQUESTED**

If the sale proceeds are insufficient to satisfy all attached judgments held by the 2023 Additional Judgment Creditors in full, Movants request that the Court assign an equal priority date to the 2023 Additional Judgment Creditors, ensuring their *pro rata* participation in any sale proceeds. In accordance with the Court's order, "[i]f it turns out that the sale proceeds are insufficient to satisfy all judgments in full, creditors with identical priority dates will be treated equally (e.g., by having their judgments paid at the same pro rata percentage as one another)." July 2023 Order at 25.

Good cause exists to modify the July 2023 Order because, as a result of subsequent developments, applying the current prioritization scheme to the 2023 Additional Judgment Creditors would not achieve an equitable distribution of proceeds among similarly situated (and similarly diligent) creditors. Unlike the twelve 2017–2022 Judgment Creditors that filed their motions over the course of five years, meaningful distinctions cannot be drawn among the 2023 Additional Judgment Creditors based on their relative diligence, and none of them (save

5

ConocoPhillips, which made early efforts on behalf of its two senior attached judgments) contributed significantly more than others to the enforcement effort. And yet, depending on the net proceeds generated by the sale, under the current order, a few of the 2023 Additional Judgment Creditors will likely reap windfalls while most of the others will recover nothing due to the vagaries of judicial and bureaucratic processes entirely beyond their control. This is precisely the outcome that the Court sought to avoid.

Granting equal priority to the 2023 Additional Judgment Creditors would comport with Delaware law and equity practice as well as the July 2023 Order by (i) rewarding diligence and honoring the first in time, first in line principle for the senior 2017–2022 Judgment Creditors, who would be unaffected by any priority scheme modification proposed by the Movants hereunder, while (ii) achieving a more equitable distribution among the similarly-situated 2023 Additional Judgment Creditors who successfully filed for writs of attachment in the summer of 2023. The proposed approach would not create an undue burden for the Special Master or disrupt the efforts taken to date to implement the Sale Process. For the avoidance of doubt, Movants propose no change to the July 2023 Order with respect to the relative priority of the 2017–2022 Judgment Creditors.

## ARGUMENT

### I. THE COURT MAY EXERCISE ITS DISCRETION TO GRANT MOVANTS' TIMELY MOTION AND MODIFY THE PRIORITY SCHEME

It is well within the Court's discretion to modify the planned priority scheme. *U.S. v. Branch Coal Corp.*, 390 F.2d 7, 10 (3d Cir. 1968) ("There can be no doubt that Congress has authorized the federal judiciary to use sound discretion in setting the terms and conditions for judicial sales."). Indeed, the Court has already exercised its discretion to adjust the Sale Procedures Order to achieve equity in other circumstances. *See* 23 Misc. 378 D.I. 28 at 21–22

(extending creditor's deadline to file attached judgment statement). On January 24, 2024, the Court granted another creditor's motion for an extension of the Step 5 deadline and amended the Sale Procedures Order to allow other creditors who filed motions for writs of attachment "meaningfully in advance of the Step 5 deadline" to be added as Additional Judgment Creditors to the Sale Process. 17 Misc. 151 D.I. 887. In doing so, the Court assessed whether the moving creditor had acted with reasonable diligence and shown good cause for the relief sought, and whether the relief sought would cause harm to the Sale Process, the Court, the Special Master, or other creditors.

This motion is timely for the Court's consideration because no Additional Judgment Creditor (other than Crystallex, which will not be impacted by the proposed relief) holds a perfected writ, and therefore adjustments to the priority order will not interfere with any existing property rights. The Court will not make a final determination of priority until it issues the Priority Order, and the creditors' relative priority will not be finalized (subject to any appeal) until the writs are served. *See* 17 Misc. 151 D.I. 738, D.I. 693.

Further, granting the relief requested would not upset the Court's determination of an issue previously litigated by the 2023 Additional Judgment Creditors because none of them meaningfully participated in the discussion about criteria to determine a priority scheme leading up to the July 2023 Order. Prior to issuing the July 2023 Order, the Court invited any interested creditors to submit briefing on how it should determine priority among Additional Judgments. 17 Misc. 151 D.I. 559. No 2023 Additional Judgment Creditor other than ConocoPhillips (on account of its senior judgments) meaningfully briefed the Court on the priority issue. Valores and Contrarian filed briefs dealing with the separate questions of which judgments should be regarded as Additional Judgments and the Court's authority to issue unconditional writs of

7

attachment.  *See* 17 Misc. 151 D.I. 567, 576, 587, 602.  Contrarian only made a passing reference to priority in its reply brief, arguing that "[t]he Court should not adopt a method of prioritizing judgments that distinguishes between writs of attachment awarded before and after OFAC issued the specific license on May 4."  17 Misc. 151 D.I. 601 at 2.

While the planned priority scheme is not immutable, this motion is proper even if the Court chooses to construe this request as a motion for relief from a final order pursuant to Federal Rule of Civil Procedure 60(b).  The motion is based on "newly discovered evidence" as well as "other reason[s] that justif[y] relief" and is "made within a reasonable time."  Fed. R. Civ. P. 60; *see Miller v. Dep't of Veterans Affs.*, No. CIV.A. 09-159-GMS, 2012 WL 560067, at *1 (D. Del. Feb. 16, 2012) ("A motion filed pursuant to Rule 60(b) is addressed to the sound discretion of the trial court guided by accepted legal principles applied in light of all relevant circumstances.").  Only as of this week did the Court identify those creditors who might potentially be granted writs of attachment, denying requests to further extend the timelines to accommodate less diligent parties, *see* 17 Misc. 151 D.I. 887, such that the Court and the parties now know "the maximum universe of all judgments that could *potentially* be made part of the Sale" if the creditors' writs are perfected.  July 2023 Order at 13.[5]  Thus, it is now appropriate to consider whether the priority scheme is equitable and otherwise accords with Delaware law.

---

[5] Altana Credit Opportunities Fund SPC, Altana Credit Opportunities Fund 1 SP Altana Funds Ltd. Cayman ("**Altana**"), who was granted a writ of attachment on January 24, 2024, only moved for a writ of attachment on December 21, 2023 and is not in a position similar to the 2023 Additional Judgment Creditors, who filed their motions in the span of nine weeks in the summer of 2023.  However, Movants would not oppose a request by Altana to be considered a 2023 Additional Judgment Creditor so that the relief requested herein would also apply to it.

## II. UNLESS AMENDED, THE EXISTING PRIORITY SCHEME WILL PRODUCE INEQUITABLE RESULTS

Now that the Step 5 deadline has passed and the universe of attached judgments is known, it is apparent that the current priority order will likely produce drastic inequities that are not based on how diligently the creditors have sought to enforce their claims. Under the current priority scheme, Valores and Contrarian would receive the full amount of their attached judgments if the sale of shares in PDVH yields proceeds of at least $7.8 billion, but ConocoPhillips III, which has by far the largest claim of *all* of the creditors, and pursued enforcement no less diligently, would receive nothing. Worse still, the four remaining 2023 Additional Judgment Creditors—Pharo Gaia, Lovati & Piani, Gramercy, and Saint-Gobain—would recover *nothing* if the sale yields $18.2 billion or less, even though they filed their motions to attach within nine weeks of Valores and within days of ConocoPhillips III. A reasonable projection of likely net sale proceeds would fall within the range of $6.8 to $18.2 billion, Declaration of Thomas Norgaard, ¶ 17 ("**Norgaard Decl.**"), meaning that the current priority scheme is likely to produce dramatically different outcomes for similarly situated creditors.

## III. THE REQUESTED RELIEF WILL PREVENT WINDFALLS WHILE COMPORTING WITH THE COURT'S SALE PROCEDURES

The requested relief best advances the principles set out in the July 2023 Order in light of the now-known full universe of creditors. By retaining the senior position of the 2017–2022 Judgment Creditors, who moved early in the process, the requested relief is consistent with Delaware's first in time, first in line principle. In addition, the requested relief better rewards the diligent efforts of the 2023 Additional Judgment Creditors and mitigates the influence of factors beyond their control affecting the date on which enforceable judgments were obtained and the

duration of other processes. Further, the requested relief will not require other significant changes to the Court's July 2023 Order, the sale process, or the Special Master's work.

*First*, the requested relief remains consistent with Delaware law in light of the unique circumstances of this case. Under Delaware law, the "first in time, first in line" principle applies. *See* July 2023 Order at 19 ("Delaware law concerning the enforcement of money judgments generally requires that the sale proceeds 'be distributed according to a first in time, first in line priority of recording.'") (quoting *Eastern Sav. Bank, FSB. v. CACH, LLC*, 55 A.3d 344, 350 (Del. 2012)). However, the Court recognized that "Delaware law provides principles the Court is factoring into its decision, but it does not decide the issues the Court is confronting." July 2023 Order at 19. Accordingly, the Court "construct[ed] a priority scheme that rewards diligence and attempts to recreate a 'first in time, first in line' scheme, with appreciation for the perhaps unique factors that have arisen in connection with efforts to collect on Venezuela's debts." *Id.* at 20. The timing and amounts of the motions for writs of attachment, filed just before and after the July 2023 Order, qualify as additional "unique factors" that should be considered by the Court to achieve equity in this case. "[E]quity will follow the law, by which it is meant both that courts of equity will recognize and give effect to all legal rules in their proper sphere . . . and that, beyond that, the policies reflected in rules of law will be extended . . . by analogy where appropriate." *Delaware Tr. Co. v. Partial*, 517 A.2d 259, 242 (Del. Ch. 1986); *see also In re Nortel Networks, Inc.*, 532 B.R. 494, 532 (Bankr. D. Del. 2015) (it is "incumbent" on courts to determine an "allocation approach which leads to an equitable result in the absence of some guiding law or agreement").

Distinguishing between the 2017–2022 Judgment Creditors and the 2023 Additional Judgment Creditors respects the first in time, first in line approach to the maximum extent

possible while avoiding unwarranted disparities among the 2023 Additional Judgment Creditors. Specifically, the 2017–2022 Judgment Creditors' enforcement efforts and outcomes will not be impacted by a change in the priority scheme that allows the 2023 Additional Judgment Creditors to share the remaining sale proceeds on a *pro rata* basis. Among the 2023 Additional Judgment Creditors, all except one (ConocoPhillips III) were granted writs of attachment on the same day, November 1, 2023. Treating these judgment creditors equally would be consistent with Delaware's first in time, first in line approach, as they reached the furthest point permitted under the July 2023 Order (*i.e.*, Step 5) on the same date.

Further, "equity regards that as done which in good conscience ought to be done," empowering the Court to place parties to the positions that they should have been in but for a supervening obstacle or frustration. *Thompson v. Lynch*, 990 A.2d 432, 435 (Del. 2010) (citation omitted); *see also Handler Constr., Inc. v. CoreStates Bank, N.A.*, 633 A.2d 356, 363 (Del. 1993) (disregarding a technical defect in a mortgage to enforce the priority of mortgages according to the time of recording). As the July 2023 Order held, *pro rata* distribution to creditors meriting equal priority is consistent with the principles of Delaware law given the "unique factors" of this case that render it infeasible to rely on the dates of delivery or service of the writs. July 2023 Order at 20. In other contexts, Delaware "courts will grant *pro rata* recoveries where the equities demand it." *Goldstein v. Denner*, No. CV 2020-1061-JTL, 2022 WL 1797224, at *15 (Del. Ch. June 2, 2022); *see also In re Kiwi Int'l Air Lines, Inc.*, 344 F.3d 311, 318 (3d Cir. 2003) (general unsecured creditors are entitled to receive a *pro rata* distribution of the debtor's unencumbered assets that remain after priority claims and others are paid); *Camden Tr. Co. v. Doubloon's Ltd.*, No. 4261 CIV. A. 1974, 1977 WL 182279, at *1 (Del. Mar. 31, 1977) ("Most jurisdictions recognize the *pro rata* rule" in the mortgage context where such distribution is

11

"more equitable."). As the record now shows, those "unique factors" are applicable to the 2023 Additional Judgment Creditors.

*Second*, consistent with the Court's original purpose in devising the July 2023 Order, the requested relief mitigates the vagaries of court administration and fortuitous aspects of litigation and administrative bureaucracy beyond the creditors' control. The Court devised the existing priority scheme to reward diligent creditors based on their efforts, without benefitting or punishing any of them for factors beyond their control. *See* July 2023 Order at 13 (citing *Stockley v. Horsey*, 9 Del. (4 Houst.) 603, 608 (1874) ("Our law recognizes . . . the policy of giving to a creditor the benefit of his diligence as against other creditors.")). Accordingly, the Court refused to set priority based on the date the Court granted a creditor's writ of attachment (*i.e.*, "Step 5") because "[d]oing so would place too much weight on the vagaries of the Court's docket and the undersigned Judge's other activities, which no litigant had the ability to impact, no matter how diligently it acted." *Id.* at 24.

The Court's concerns about its own docket management were appropriate at the time, but no longer pertain now that the full universe of eligible creditors has been established. The Court now has greater freedom to craft a priority scheme that accounts for the unavoidable delays and hindrance each creditor encountered that impacted the timing of their motions for writs of attachment through no fault of their own.

The timing of every creditor's attachment motion was, necessarily, and to different extents, subject to judicial and administrative timetables beyond that creditor's control. For example, the awards underlying Gramercy's two attached judgments were issued after arbitration proceedings that lasted over four years. Norgaard Decl. ¶ 4. After issuance of the awards, they were the subject of rectification and annulment proceedings that lasted over two years, followed

12

by contested judgment enforcement proceedings in the U.S. District Court for the District of Columbia that lasted two and three years, respectively. *Id.* ¶¶ 4–7. To acquire its interest in those awards, Gramercy required OFAC approval, which Gramercy applied for on February 9, 2023, and received on August 1, 2023, nearly six months after it applied for a license. *Id.* ¶ 9. The District Court for the District of Columbia then needed to certify the judgments, which it did on August 16, but sent to Gramercy on August 17. *Id.* ¶ 14. Hours later, Gramercy registered its judgments in the District of Delaware and moved for writs of attachment. 23 Misc. 378 D.I. 1–5; 23 Misc. 379 D.I. 1–5. Some of the 2023 Additional Judgment Creditors followed different paths to Step 4, and progressed more or less quickly, but none could reasonably be said to have controlled the timing. Rather, the date on which a final enforceable judgment issued, and the writ for attachment in this Court filed, was the result of myriad factors beyond any one person's or creditor's control. It would be inequitable, and inconsistent with the principles motivating the Court's priority scheme, to apply a premature rule of priority that deprives Movants of any recovery notwithstanding their diligent efforts.

*Third*, the proposed relief would not "allow[] creditors who moved later in time [to] receiv[e] a windfall based on prior creditors' efforts." July 2023 Order at 24 (citing *In re Millennium Lab Holdings II, LLC*, 945 F.3d 126, 143 (3d Cir. 2019)). The earlier-moving parties within the 2017–2022 Judgment Creditors—such as Crystallex and OIEG—that developed a helpful record for later creditors would remain ahead in priority. *See id.* at 24–25. The 2023 Additional Judgement Creditors would only share any remaining net proceeds *pro rata* among themselves.

*Finally*, the requested relief would not precipitate "an unseemly, actual run on the U.S. Marshals office." *Id.* at 26. The Court's Order already foresaw the possibility for several

13

creditors to have the same priority.  *See id.* at 25 (outlining the *pro rata* distribution procedure). Hence, the mechanism for serving the writs, which the Court will orchestrate in its separate Priority Order and Writ Order, can accommodate having all 2023 Additional Judgment Creditors share *pro rata* in the net proceeds from the sale of the PDVH shares.  *See* 17 Misc. 151 D.I. 738, D.I. 693.

## IV.  THE REQUESTED RELIEF CREATES NO ADDITIONAL BURDEN ON THE COURT OR THE SPECIAL MASTER

Grating equal priority to the 2023 Additional Judgment Creditors, while preserving the priority of the 2017–2022 Judgment Creditors, in no way impedes the Sale Process or creates additional burdens on the Court or the Special Master.  The Special Master recently indicated his "commitment to a timely, orderly, and efficient sale process," advocating for adherence to the Court's set deadlines and certainty as to the universe of attached judgments to be satisfied.  17 Misc. 151 D.I. 873 at 1.  *First*, the requested relief would require only a minor alteration of the Special Master's Steps Chart, and the priority scheme has yet to be confirmed in the Court's Priority Order.  *Second*, the requested relief would not undermine certainty regarding the universe of judgments to be satisfied, the amounts of the attached judgments, or the Sale Process deadlines.  *Finally*, the Special Master will not be required to do any additional calculations to implement either of the requested changes in the priority scheme, other than to calculate any *pro rata* allotment of proceeds for creditors with equal priority in the event that the sale amount cannot fully satisfy the 2023 Additional Judgment Creditors' attached judgments.  In all other respects, the Court's existing procedures may remain in place.

## **CONCLUSION**

For the reasons stated above, Movants request that the Court order that all Additional Judgment Creditors who filed motions for a writ of attachment and obtained those writs in 2023

share equal priority status, and will have their attached judgments satisfied on a *pro rata* basis in the event that the sale proceeds are insufficient to satisfy all attached judgments in full.

Dated:   January 26, 2024                                   Respectfully submitted,

                                                            */s/ Theodore A. Kittila*
                                                            Theodore A. Kittila (Bar No. 3963)
Mark W. Friedman (admitted *pro hac vice*)                  HALLORAN FARKAS + KITTILA LLP
William H. Taft V (admitted *pro hac vice*)                 5801 Kennett Pike, Suite C/D
Sarah Lee (admitted *pro hac vice*)                         Wilmington, Delaware 19807
Juan Fandiño (admitted *pro hac vice*)                      Tel.: (302) 257 2025
Debevoise & Plimpton LLP                                    tk@hfk.law
66 Hudson Boulevard
New York, New York, 10001
Tel.: (212) 909 6000
mwfriedman@debevoise.com
whtaft@debevoise.com
slee1@debevoise.com
jfandino@debevoise.com

*Counsel for Gramercy Distressed Opportunity Fund LLC*


                                                            DUANE MORRIS LLP

                                                            */s/ Mackenzie M. Wrobel*
**OF COUNSEL:**                                             Christopher M. Winter (DE No. 4163)
                                                            James C. Carignan (DE No. 4230)
Anthony J. Costantini, Esq.                                 Mackenzie M. Wrobel (DE No. 6088)
Stephanie Lamerce, Esq.                                     Tracey E. Timlin (DE No. 6469)
**DUANE MORRIS LLP**                                        1201 N. Market Street, No. 501
1540 Broadway                                               Wilmington, DE 19801
New York, NY  10036-4086                                    Phone: (302) 657-4900
Telephone:  (212) 692-1006                                  cmwinter@duanemorris.com
Facsimile:  (212) 202-4486                                  jccarignan@duanemorris.com
AJCostantini@duanemorris.com                                mmwrobel@duanemorris.com
SLamerce@duanemorris.com                                    ttimlin@duanemorris.com
(admitted *pro hac vice*)
                                                            *Counsel for Rudi Lovati and*
                                                            *Alessandro Lucibello Piani*

15

# Exhibit 1 – Step 4 Summary Timeline

