# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP.,<br><br>Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>Defendant. | Misc. No. 17-151-LPS |
| ALTANA CREDIT OPPORTUNITIES FUND SPC, ALTANA CREDIT OPPORTUNITIES FUND 1 SP, and ALTANA FUNDS LTD. CAYMAN,<br><br>Plaintiffs,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>Defendant. | Misc. No. 23-608-LPS |
| RICARDO DEVENGOECHEA,<br><br>Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>Defendant. | Misc. No. 23-609-LPS |

## MEMORANDUM

At Wilmington this **29th** day of **January 2024**:

**WHEREAS**, on December 21, 2023, the plaintiffs in Misc. No. 23-608 (the "*Altana*

1

Action"), Altana Credit Opportunities Fund SPC, Altana Credit Opportunities Fund 1 SP, and Altana Funds Ltd. Cayman (collectively, "Altana"), filed a motion pursuant to Federal Rule of Civil Procedure 69, 10 *Del. C.* § 5031, 8 *Del. C.* § 324, and 28 U.S.C. § 1610(c), seeking an order authorizing the issuance of a writ of attachment *fieri facias* on the shares of PDV Holding, Inc. ("PDVH") owned by Petróleos de Venezuela, S.A. ("PDVSA") (Misc. No. 23-608 D.I. 3);

**WHEREAS**, on December 21, 2023, Altana also filed a motion for extension of the deadlines for the submission of its Attached Judgment Statement and Status Summary[1] to December 21, 2023 (Misc. No. 17-151 D.I. 814; Misc. No. 23-608 D.I. 10);

**WHEREAS**, on December 29, 2023, the plaintiff in Misc. No. 23-609 (the "*Devengoechea* Action"), Ricardo Devengoechea ("Devengoechea"), filed a motion pursuant to Rule 69(a)(1), 8 *Del. C.* § 324, and 10 *Del. C.* § 5031, seeking an order authorizing the issuance of a writ of attachment *fieri facias* on the shares of PDVH owned by PDVSA (Misc. No. 23-609 D.I. 4);

**WHEREAS**, on December 29, 2023, Devengoechea also filed a motion for leave to file its "Statement of Judgment," effectively seeking an extension of the deadlines for the submission of its Attached Judgment Statement and Status Summary to the filing date of the motion (Misc. No. 17-151 D.I. 818; Misc. No. 23-609 D.I. 2);

**WHEREAS**, on January 2, 2023, Devengoechea filed an amended motion for leave to file its Statement of Judgment, which is "identical in substance" to the December 29, 2023

---

[1] *See* Misc. No. 17-151 D.I. 654 (oral order adopting Special Master's proposed procedures regarding filing of Attached Judgment Statements and supporting documentation); D.I. 738 (memorandum order setting Step 5 deadline and adopting Special Master's proposed procedures to implement priority arrangement, including filing of summary of dates of all completed Steps ("Status Summary") with supporting documentation). All capitalized terms in the Memorandum not otherwise defined have the meaning ascribed to them in the Sale Procedures Order. (Misc. No. 17-151 D.I. 481)

motion for leave "except that the exhibits have been correctly inserted" (Misc. No. 17-151 D.I. 826; Misc. No. 23-609 D.I. 6);

**WHEREAS**, on January 3, 2023, Devengoechea filed a motion to expedite, seeking expedited consideration of his motion for a writ of attachment and motion for leave to file Statement of Judgment (Misc. No. 17-151 D.I. 828; Misc. No. 23-609 D.I. 9);

**WHEREAS**, Bolivarian Republic of Venezuela ("Venezuela")[2] opposed the motions for a writ of attachment and for extension of time filed by both Altana and Devengoechea (Misc. No. 17-151 D.I. 840, 858; Misc. No. 23-608 D.I. 19; Misc. No. 23-609 D.I. 15);

**WHEREAS**, the Special Master appointed in Misc. No. 17-151 (the "*Crystallex* Action") opposed the motions for extension of time filed by both Altana and Devengoechea (Misc. No. 17-151 D.I. 830, 853);

**WHEREAS**, the Court considered the briefs and related materials filed in connection with the above-mentioned motions and heard argument via teleconference on January 22, 2024;

**WHEREAS,** on January 24, 2024, the Court provided its rulings on the pending motions during a teleconference, specifically that: (1) Altana's motion for a writ of attachment (Misc. No. 23-608 D.I. 3) is **GRANTED**; (2) Altana's motion for extension of deadlines for submission of Attached Judgment Statement and Status Summary (Misc. No. 17-151 D.I. 814; Misc. No. 23-608 D.I. 10) is **GRANTED**; (3) Devengoechea's motion for a writ of attachment (Misc. No. 23-609 D.I. 4) is **DENIED WITHOUT PREJUDICE**; (4) Devengoechea's amended motion for leave to file Statement of Judgment (Misc. No. 17-151 D.I. 826; Misc. No. 23-609 D.I. 6) is **GRANTED**; (5) Devengoechea's superseded motion for leave to file Statement of Judgment

---

[2] Unless otherwise stated, the Court uses "Venezuela Parties" to refer to one or more of Venezuela, PDVSA, PDVH, and CITGO Petroleum Corporation.

(Misc. No. 17-151 D.I. 818; Misc. No. 23-609 D.I. 2) is **DENIED AS MOOT**; and (6) Devengoechea's motion to expedite (Misc. No. 17-151 D.I. 828; Misc. No. 23-609 D.I. 9) is **DENIED AS MOOT**; *see also* Misc. No. 17-151 D.I. 886; Misc. No. 23-608 D.I. 31; Misc. No. 23-609 D.I. 24.

The Court's reasoning for these orders was provided in the bench ruling announced during the teleconference of January 24, 2024, selected excerpts of which are reproduced below:

> We all met . . . on Monday for argument on the pending motions. I ordered supplemental briefing, which I received and reviewed yesterday.[3]
>
> . . .
>
> [A]ll of what I'm going to say is applicable to both cases, except for when I'm addressing the one specific issue raised in [the] *Altana* [Action], which relates to service, and the one specific issue raised in the *Devengoechea* [A]ction, which relates to execution immunity.
>
> . . .
>
> [In addition to ruling on the pending motions,] I am amending the [S]ale [P]rocedures [O]rder[4] and the other pertinent orders[5] that I have entered principally in the *Crystallex* [A]ction, . . . to and only to the following extent:
>
> A party may be added as an [A]dditional [J]udgment [C]reditor[6] provided that, one, it has filed a motion for a writ of attachment meaningfully in advance of the Step 5 deadline[7] of January 12, 2024, and, two, it has shown good cause and/or excusable neglect for meeting any earlier deadlines the Court has established in

---

[3] *See, e.g.*, Misc. No. 17-151 D.I. 883, 884; Misc. No. 23-609 D.I. 22, 23.

[4] Misc. No. 17-151 D.I. 481.

[5] *See, e.g.*, Misc. No. 17-151 D.I. 646, 654, 738.

[6] *See* Sale Procedures Order (Misc. No. 17-151 D.I. 481) ¶ 15.

[7] *See* Misc. No. 17-151 D.I. 646 at 5-6.

4

connection with the sale process.

. . . I'll begin with the timing issues and explain the reasons for the limited modifications I'm making to the timing requirements previously set out by the Court.

The Court has broad ["]inherent power . . . to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.["][8]  That's largely a quote from *Link [v.] Wabash Railroad Company* . . . from the Supreme Court.

There is no dispute that my broad discretion includes the authority to modify my prior orders, including the [S]ale[] [P]rocedure[s] [O]rder and other orders setting out the [A]ttached [J]udgment [S]tatement, [S]tatus [S]ummary, and Step 5 deadlines.

In my view, this discretion also allows me to consider the relative prejudice to the parties who are before me that might arise from granting or denying the requested relief and also gives me the authority to consider the impact, if any, of my rulings on the ongoing sale process.

During oral argument . . ., for the first time, the Venezuela [P]arties cited Federal Rule of Civil Procedure 6(b)(1) as supposedly governing the exercise of my discretion.

This was the Venezuela [P]arties' first reference to the Rule 6 standard.  I think it came too late and I find the argument waived.

But in any event, I also find that the requirements of Rule 6 are met.  Both creditors before me, that is Altana and Devengoechea, have shown good cause for modifying the deadlines they missed and have demonstrated excusable neglect.

They have also shown that they would be seriously prejudiced if I did not include them and give them an opportunity to be included in the ongoing sale process.

At the same time, I am not persuaded by either the Venezuela [P]arties or the [S]pecial [M]aster that making the modifications I am making today will prejudice the Venezuela [P]arties or negatively impact the sale process.

---

[8] *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962) (internal quotation marks omitted).

Again, both Altana and Devengoechea exercised reasonable diligence and good cause for the extensions they are seeking.

. . . [T]he deadline for filing an [A]ttached [J]udgement [S]tatement was August 14th of 2023.[9] The deadline for filing a [S]tatus [S]ummary was October [16], 2023.[10] And the Step 5 deadline was January 12, 2024.[11] Both creditors missed all three of those deadlines.

I should note that while the motions expressly seek modification or relief from the first two of those deadlines, [and] they don't specifically ask for a modification of the Step 5 deadline, . . . I f[i]nd that that request was at least implicit in the motions that they filed, given . . . the time that it took for the expedite[d] briefing and for me to review and decide the motions, although filed . . . meaningfully in advance of January 12th and briefed largely in advance of January 12th[.]  [I]t did take me until now, . . . 12 days past the Step 5 deadline[,] to actually resolve the motions.

Specifically, Altana seeks to extend the [A]ttached [J]udgement [S]tatement [and] [S]tatus [S]ummary deadlines to December 21, 2023.[12]

This is because shortly after receiving its default judgment against Venezuela in the Southern District of New York in July 2023, it moved to serve the judgment on Venezuela in accordance with the Foreign Sovereign Immunities Act [("FSIA")] [and] shortly after the judgment was served in October [2023] [it] moved for a finding from the New York Court that a reasonable period had passed allowing it to . . . seek execution of the judgment.

Two days after Altana obtained a certified judgement on December 19th of last year, it filed its action and the pending motions in this [C]ourt.

I find that Altana acted with reasonable diligence and the time necessary to obtain relief from the New York Court establishes good

---

[9] *See* Misc. No. 17-151 D.I. 652, 654.

[10] *See* Misc. No. 17-151 D.I. 693, 738.

[11] *See* Misc. No. 17-151 D.I. 738.

[12] *See* Misc. No. 17-151 D.I. 814 at 1; Misc. No. 23-608 D.I. 10 at 1.

cause for modifying my deadlines [and] excusable neglect for failure to meet them.

Mr. Devengoechea seeks to extend the two deadlines to January 2nd of 2024.[13] Devengoechea did not obtain his judgment against Venezuela until December 4th of 2023 and did not obtain an order determining that a reasonable period had passed until December 22, 2023.

He filed his case and his motions here in Delaware just seven days later.

Notably, Devengoechea's delay in obtaining the judgment that he brings here was caused in large part, if not entirely, by the [Bolivarian R]epublic [of Venezuela]'s litigation tactics in the Southern District of Florida, as the District Judge presiding over the case in Florida expressly found.

In particular, Venezuela was found to have backed out of [a] settlement agreement in that action after Mr. Devengoechea went to the trouble of obtaining an OFAC[14] license.

The Court down there expressly found that Venezuela's refusal to consummate the settlement agreement "[d]elayed this action for several years and . . . forced [Devengoechea] to proceed to trial on the merits after several years['] delay."[15]

I find that Devengoechea acted with reasonable diligence, and the delay he suffered in Florida caused by Venezuela's tactics there establishes good cause for modifying my deadlines and excusable neglect for his failure to meet them.

Granting the extensions I am, will not, in my view, significantly prejudice the [S]ale [P]rocess [P]arties, the [S]pecial [M]aster, or other interested parties.

The Court recognizes, of course, the importance of the [S]pecial [M]aster understanding the universe of judgments to be satisfied by

---

[13] *See* Misc. No. 17-151 D.I. 826 at 3; Misc. No. 23-609 D.I. 6 at 3.

[14] Office of Foreign Assets Control.

[15] *Devengoechea v. Bolivarian Republic of Venezuela*, C.A. No. 12-23743 (S.D. Fla.) D.I. 299 at 2.

the sale process, and my ruling will allow this to happen imminently, not long after the Step 5 deadline that I had set. Again, today is just 12 days past it.

And of course, the sale process has and need[s] to have some built-in flexibility.

Also, I think, importantly, there's time left in the process for the limited extensions that were sought and I am granting. The deadline for the nonbinding first round of bidding was this past Monday, the 22nd [of January 2024].

And the [S]pecial [M]aster has previously said and confirmed during oral argument just this week that the Step 5 deadline won't have a substantial impact on bids.

The next steps in the process are at least weeks away, and the sale is not scheduled to occur until July [of 2024].

On the other hand, if I were to deny the modifications requested today, I would significantly prejudice the two creditors before me.

I agree with them that participating in the sale process ["]may be the only realistic opportunity for the foreseeable future["][16] for them to enforce their judgment against Venezuela.

Let me emphasize just a few additional points about my ruling relating to timing.

First, the lack of formal notice of my proceedings and the deadlines I have set for participation in the sales procedures is not a persuasive basis for seeking modification of the deadlines.

My findings today of good cause and excusable neglect by the two creditors before me are not based on the lack of actual notice due to the fact that these creditors did not happen to be parties.

It's undisputed that Altana knew about my proceedings, even without receiving formal notice, and I infer that Mr. Devengoechea similarly had notice[], as evidenced by his registration of his judgment in Delaware barely seven days after he received permission from the Southern District of Florida to proceed and his reference to the *Crystallex* [A]ction in the Southern District of

---

[16] Misc. No. 17-151 D.I. 865 at 5; Misc. No. 23-608 D.I. 26 at 5.

8

Florida litigation.

We all know that these proceedings have received a great deal of attention, and I have reason to believe that they are known to anyone with an interest in collecting on a judgement against the Venezuela [P]arti[es].

Moreover, Altana, as I understand it, specializes in seeking ["]asymmetric return opportunities in the distressed sovereign debt of Venezuela.["][17]

Mr. Devengoechea has, as I understand it, spent approximately a decade fighting against the theft of his family inheritance by the [Bolivarian] Republic of Venezuela. I believe under the circumstances both creditors were on at least inquiry notice of the deadlines they missed.

Second, and relatedly, it would have been much the better course for these two creditors before me today to have filed the [A]ttached [J]udgement [S]tatement and [S]tatus [S]ummary much earlier than they did, just like other creditors did who had not yet obtained judgments.[18]

At a minimum, it would have been preferable had these two creditors made some effort to reach out to the [S]pecial [M]aster, even just to provide an informal heads up that they were out there, they were aware of our process, and that they intended eventually to try to participate in our process.

It was a mistake for these creditors to know of our process, to know of their intent, to try to be part of it, but not have any contact with us, but – and it's a crucial "but" – that mistake is far from dispositive under the totality of the circumstances, particularly given my finding that there is no negative impact on any [S]ale [P]rocess [P]arty, the [S]pecial [M]aster, or most importantly, on my sale process.

No such negative impacts have been shown to flow empirically, or I would say logically from those mistakes.

To the contrary, precluding the two creditors from having the chance to participate in our process would be a disproportionately punitive

---

[17] Misc. No. 17-151 D.I. 841 Ex. A at 4; Misc. No. 23-608 D.I. 20 Ex. A at 4.

[18] *See, e.g.*, Misc. No. 17-151 D.I. 660, 672, 675, 687.

response to these mistakes.

Third, relating to timing, my rulings today are drawing a line. As I announced at the start of my rulings, a judgment creditor seeking to be added to the sale process must have filed a motion for a writ of attachment meaningfully in advance of the Step 5 deadline.

That this deadline passed sometime before January 12, 2024, means, I believe, that today's decision is not creating a slippery slope and is not inviting other creditors to emerge and try to become part of the sale process[.] [T]hat this deadline has passed reduces and, I think, probably more likely eliminates any risk that my decision will materially impact [the] sales process.

I have[,] in sum[,] balanced[,] as best I can[,] all of the competing interests on both or multiple sides of the issues before me.[19]

And having done so, I simply find no persuasive reason to deny the two creditors before me the opportunity to attempt to enforce their judgments through this [C]ourt's sale process, subject to compliance with all applicable laws and other legal requirements, including this [C]ourt's orders.

That's all I have to say on timing.

Let me turn now to the writs of attachment. First[,] I will address why I am granting Altana's [motion], and second, why I'm denying without prejudice to renewal Devengoechea's.

Altana's writ of attachment is granted.

In doing so – and this applies to both writ motions – I'm applying the legal standards and adopting the rulings I've made in prior cases as modified by the [Third] Circuit on the same issues involved in this case.

That includes my *Crystallex* 2018 decision[20] and the affirmance by the [Third] Circuit in 2019,[21] my 2023 decision in the *OI*

---

[19] *See, e.g.*, Misc. No. 17-151 D.I. 738 at 5.

[20] *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380 (D. Del. 2018).

[21] *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019).

> *European Group* action,[22] which was affirmed by the [Third] Circuit in 2023,[23] and the November 1, 2023, *Tidewater Investment* decision of mine.[24]
>
> Applying those legal standards, I am persuaded by and adopt the factual analysis provided in Plaintiff Altana's opening brief[25] . . . which persuades me that PDVSA has continued to be Venezuela's alter ego through at least December 21, 2023, whether viewed from the perspective of the US recognized National Assembly[-led] government or from the perspective of the Maduro regime.
>
> Venezuela does not challenge this evidence at this time, and in fact acknowledges that the [Third] Circuit's recent ruling in the *OIEG* case is broad enough to allow me to find, as I do, that PDVSA remains today the alter ego of the [Bolivarian] Republic of Venezuela.
>
> The Venezuela [P]arties . . . argue that I should not grant the writ motions either for Altana or Devengoechea, because the two creditors before me are not entitled to become [A]dditional [J]udgment [C]reditors covered under the OFAC license granted to this [C]ourt,[26] because they have not met certain deadlines.
>
> Of course, I have now modified those deadlines, mooting the issue, but even if that were not the case, I could still grant conditional [writs] of attachment conditioned on the creditors obtaining their own OFAC licenses.
>
> Specific just to Altana, the Venezuela [P]arties also opposed the motion on the grounds that Altana failed to comply with the FSIA's requirement for service of a default judgment as required under 28 [U.S.C. § 1608(a)(4)].
>
> I reject this contention. To the contrary, Altana has provided, along

---

[22] *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 663 F. Supp. 3d 406 (D. Del. 2023).

[23] *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157 (3d Cir. 2023).

[24] *Tidewater Investment SRL v. Bolivarian Republic of Venezuela*, 2023 WL 7182179 (D. Del. Nov. 1, 2023).

[25] Misc. No. 23-608 D.I. 7 at 5-15.

[26] *See* Misc. No. 17-151 D.I. 555 at 6-8.

with the filing of its reply brief, a letter, which can be found in our docket . . . .[27]

It's a letter from the Department of State to the clerk's office of the Southern District of New York with a certified copy of a diplomatic note enclosed.

I find that this is satisfactory evidence of compliance with the service requirement and that Venezuela's arguments to the contrary lack merit.

Because I am granting Altana's motion for a writ of attachment, I am also designating Altana as an [A]dditional [J]udgment [C]reditor.

That takes me finally to Mr. Devengoechea's writ of attachment. As I noted, this motion is denied, but the denial is without prejudice to him having an opportunity to file a renewed motion in the near future.

Specific to Mr. Devengoechea, the Venezuela [P]arties argued that he has failed to identify an exception to execution immunity that would allow him to attach the shares of PDVH owned by PDVSA.

In order for the Court to issue the writ of attachment, Mr. Devengoechea must show that the specific property on which he seeks to execute, that is PDVSA's shares of stock in the Delaware [c]orporation PDVH, ["]are not immune from attachment and execution under the FSIA.["28]

That's a statement that I made in the *Crystallex* 2018 [d]ecision . . . .

In his opening [and] reply brief, Devengoechea argued that all the issues pertinent to his motion for [a] writ of attachment have been adjudicated by this [C]ourt in previous cases and that my rulings have binding effect in this case by virtue of collateral estoppel.[29]

However, the execution immunity addressed in both *Crystallex* and then later in the *OIEG* case concerns 28 [U.S.C. § 1610(a)(6)], the

---

[27] Misc. No. 17-151 D.I. 866-1.

[28] *Crystallex*, 333 F. Supp. 3d at 395.

[29] *See, e.g.*, Misc. No. 23-609 D.I. 4 at 3; D.I. 18 at 6.

arbitration exception.[30]

Mr. Devengoechea has not, to this point, contended that the arbitration exception of [Section] 1610[(a)(6)] would apply to his case.

Thus, the execution immunity issue in his case is not actually identical to the execution immunity issues that have been adjudicated in previous cases, so he cannot rely on collateral estoppel.

Devengoechea must show in his case that PDVSA's shares of PDVH are not immune from execution under the FSIA, and it seems that he needs to find some basis other than the arbitration exception.

In the supplemental briefing I ordered to be filed yesterday, Mr. Devengoechea asserted three different exceptions to the FSIA execution immunity as being applicable here: [Section] 1610[(a)(1)] and/or [(b)(1)], which is the waiver exception, [Section] 1610[(a)(3)], the expropriation exception, and [Section] 1610[(b)(2)], the commercial [activity] exception.[31]

The Venezuela [P]arties argue in their supplemental brief[] that all three grounds are untimely and should be treated as waived, because they were not identified prior to the supplemental briefing.[32]

I have discretion to excuse the untimeliness of these contentions and I do so here.

I ordered the supplemental briefing, in part, because I had received very little briefing on the very complicated question of execution immunity.

And candidly, I went into the argument on Monday not having given the issue a great deal of thought, as I assumed it was an issue I had decided many times over, which is a circumstance I have encountered somewhat frequently in these actions.

As it turned out, I needed the assistance of the supplemental briefing,

---

[30] *See, e.g., Crystallex*, 333 F. Supp. 3d at 415; *OI Eur. Grp.*, 663 F. Supp. 3d at 429.

[31] *See* Misc. No. 17-151 D.I. 883; Misc. No. 23-609 D.I. 22.

[32] *See* Misc. No. 17-151 D.I. 884 at 1; Misc. No. 23-609 D.I. 23 at 1.

and I think that it is most important, particularly considering the equities here, which overwhelmingly favor Mr. Devengoechea, given his success in the Florida litigation, and Venezuela's tactics in that case, and the fact that his judgment of approximately $17 [million] is not nearly material to the process we're engaged in, which is attempting to satisfy judgments of over $20 [billion].

Given those equities and the totality of the circumstances, I will not treat the asserted grounds raised for the first time yesterday by Mr. Devengoechea as waived.

Nevertheless, on the very limited record I have, I am unable to find today that Mr. Devengoechea has met his burden to show that the specific property on which he seeks to execute [–] PDVSA's shares of PDVH [–] are [not] immune from execution.

Let me run through the three bases he identified and tell you my thoughts at the moment.

First, with respect to Venezuela's purported implied waiver, Mr. Devengoechea points to Venezuela's agreement to pay for or return his collection to his home in Florida. He also points to Venezuela's involvement in the litigation in Florida.[33]

Under [Third] Circuit law, implied waivers are typically found ["]only in three scenarios: [w]hen the foreign state has entered into a contract with [a] choice of law clause mandating the use of U.S. law, when [the foreign state] has responded to a complaint without asserting immunity, or when [the foreign state] has agreed to arbitrate disputes in the United States.["][34]

That's the legal standards set out in the [Third] Circuit's opinion of [*Aldossari*] . . . .

Mr. Devengoechea has not shown that any of these three conditions are satisfied.

Thus, at this time he has not met his burden to show that the exception of [Section] 1610[(a)(1)] and/or [(b)(1)] apply.

Next, Mr. Devengoechea contends that the exception of [Section]

---

[33] *See* Misc. No. 17-151 D.I. 883 at 1; Misc. No. 23-609 D.I. 22 at 1.

[34] *Aldossari on Behalf of Aldossari v. Ripp*, 49 F.4th 236, 251 n.23 (3d Cir. 2022).

1610[(a)(3)] applies. This is a provision that applies where the execution ["]relates to a judgment establishing rights [in] property[] which has been taken in violation of international law.["]

He contends that international law prohibits a foreign sovereign taking the property of a foreign national, like him.[35]

Even assuming that the property which has been taken in violation of international law does not need to be the same property that is subject to execution, an issue that I'm not deciding, I find that the exception under [Section] 1610[(a)(3)] has not been shown at this point to apply to Mr. Devengoechea.

In the underlying Florida litigation, it appears that Mr. Devengoechea expressly denied that his case involved expropriation.

He sa[id], based on my review of the limited portions of the record in front of me, that ["e]xpropriation for FSIA purposes involves actions by a sovereign of the type that only a sovereign can perform.["36]

But it appears that he conceded that ["w]here the actions involve market activities[] which[,] by their nature[,] could have been performed by a private entity,["] that the exception does not apply.[37]

The [Eleventh] Circuit seems to have held similarly that in Mr. Devengoechea's case, Venezuela's actions did not qualify as FSIA expropriation, because Venezuela ["]did not invoke any of its sovereign powers["] to engage in the actions that gave rise to his cause of action.[ 38 ]  That's from the [Eleventh] Circuit['s] *Devengoechea* decision . . . .

Although it may be possible for the ["]same set of facts["] to satisfy the commercial activity exception to jurisdictional immunity and also the expropriation exception to execution immunity, as Mr.

---

[35] *See* Misc. No. 17-151 D.I. 883 at 2; Misc. No. 23-609 D.I. 22 at 2.

[36] *Devengoechea*, C.A. No. 12-23743 (S.D. Fla.) D.I. 118 at 4.

[37] *Id.*

[38] *Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1228 (11th Cir. 2018).

Devengoechea seems to be arguing,[39] he has not, to this point, shown here any set of facts that would accomplish this goal.

Finally, Devengoechea contends that the exception under [Section] 1610[(b)(2)] should apply. Again, I'm not at the moment persuaded of that.

Devengoechea's motion for [a] writ of attachment relies on the alter ego relationship between Venezuela and PDVSA.[40]

Thus, I am, at Mr. Devengoechea's request, treating PDVSA as Venezuela and therefore treating the property of PDVSA as the property of Venezuela.

Under my holding in *Crystallex* . . ., it follows that Devengoechea "[m]ust satisfy the narrower exception to execution immunity applicable to property of foreign states,"[41] and not the exception applicable to property of foreign instrumentalities, which is what Devengoechea now seeks to do.

The [Third] Circuit seems to have held the same as me on that point when affirming me in the 2019 *Crystallex* decision . . ., where the Court of Appeals wrote, "Section [1610(b)] governs execution of a foreign instrumentalit[y's] property, but only section 1610[(a)] is relevant[] because the jurisdictional immunity is overcome for Venezuela, not PDVSA, who only enters the picture as Venezuela's alter ego."[42]

Thus, contrary to Mr. Devengoechea's contentions, I have not decided the identical issue of execution immunity that he now seeks to put before the Court.

And at this point, as I said, it does not appear that the exception under [Section] 1610[(b)] can apply to Mr. Devengoechea.

So for these reasons, I must deny Mr. Devengoechea's motion for a writ of attachment, but I am doing so without prejudice and will

---

[39] *See* Misc. No. 17-151 D.I. 883 at 2; Misc. No. 23-609 D.I. 22 at 2.

[40] *See, e.g.*, Misc. No. 23-609 D.I. 4 at 3-4.

[41] *Crystallex*, 333 F. Supp. 3d at 395.

[42] *Crystallex*, 932 F.3d at 150 n.14.

permit him an opportunity to file a renewed motion in the very near future if he wishes, and I'm providing that opportunity for the following reasons:

First, my decision today is based on the current record before me, which is not complete, given how recently the case was filed and how quickly it has been litigated.

Second, and relatedly, I've based my decision largely on representations as to what occurred in the underlying Florida action. Some of these representations and arguments were offered for the first time just yesterday. That case went on for approximately a decade.

It may be that my conclusions would be different if I had the full record of the Florida litigation and more time to hear the parties' considered arguments with respect to it and more time for me to analyze everything.

Based on my still limited familiarity with what happened in Florida and Venezuela's lack of challenge to Devengoechea's contention that Venezuela acted in bad faith for years in that case, including by breaching a settlement agreement, and given, again, the comparatively minuscule amount of Devengoechea's judgment as compared to the judgments that are associated with the sale process, I find it to be an appropriate use of my discretion to give this creditor another chance to evaluate if he can prove the applicability of an exception to execution immunity.

But he's going to need to determine very quickly, if he can, and if he seeks the opportunity, he's going to have to move very quickly to attempt to persuade me that my analysis today is either incomplete or incorrect.

Therefore, I order that the parties in the *Devengoechea* [A]ction meet and confer and, no later than this Friday, submit a joint status report providing me with their position or positions on how this case should now proceed, if in fact it should proceed.

_____
HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT COURT