# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

RICARDO DEVENGOECHEA,

    Plaintiff,

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,
a foreign state,

    Defendant.

Case No. 12-cv-23743-PCH/Otazo-Reyes

---

## REPLY MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

Dated:      September 24, 2015

**BILZIN SUMBERG BAENA
PRICE & AXELROD LLP**
**Mitchell E. Widom**
mwidom@bilzin.com
**Lori P. Lustrin**
llustrin@bilzin.com
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Telephone:  (305) 374-7580
Facsimile:  (305) 374-7593

– and –

**Joseph D. Pizzurro** (*pro hac vice*)
jpizzurro@curtis.com
**Robert B. Garcia** (*pro hac vice*)
robert.garcia@curtis.com
**CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559

*Attorneys for Defendant Bolivarian
Republic of Venezuela*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.    The Amended Complaint Must Be Dismissed for Lack of Subject Matter Jurisdiction under the FSIA ................................................................................................................... 2

    A.    The First Clause of the Commercial Activity Exception Does Not Apply .................. 3

        1.    The Allegations in the Amended Complaint Are Insufficient to Satisfy the Substantial Contact Requirement ........................................................................................... 3

        2.    Plaintiff's Claims Are Not "Based Upon" Any    Alleged Commercial Activity in the United States ............................................................................................................... 4

    B.    The Second Clause of the Commercial Activity Exception Does Not Apply .............. 6

    C.    The Third Clause of the Commercial Activity Exception Does Not Apply ................ 7

II.    The Amended Complaint Must Be Dismissed for Lack of Personal Jurisdiction ............. 8

III.    The Amended Complaint Must Be Dismissed for Failure to State a Claim .................... 9

    A.    The FSIA's Commercial Activity Exception to Immunity Does Not Provide a Substantive Cause of Action ................................................................................................ 9

    B.    Plaintiff's Claims Are Time Barred .......................................................................... 9

CONCLUSION ..................................................................................................................... 10

# Table of Authorities

## Cases

*Araya-Solorzano v. Gov't of Republic of Nicaragua,*
    562 F. App'x 901 (11th Cir. 2014) ................................................................ 7

*Crenshaw v. Lister,*
    556 F.3d 1283 (11th Cir. 2009) ................................................................ 6

*Dominican Energy Ltd. v. Dominican Republic,*
    903 F. Supp. 1507 (M.D. Fla. 1995) ................................................................ 2

*Fly Brazil Grp., Inc. v. Gov't of Gabon, Africa,*
    709 F. Supp. 2d 1274 (S.D. Fla. 2010) ................................................................ 8

*General Elec. Capital Corp. v. Grossman,*
    991 F.2d 1376 (8th Cir. 1993) ................................................................ 3, 6

*Global Index, Inc. v. Mkapa,*
    290 F. Supp. 2d 108 (D.D.C. 2003) ................................................................ 7

*Guevara v. Republic of Cuba,*
    608 F.3d 1297 (11th Cir. 2010) ................................................................ 7

*Ham v. La Cienega Music Co.,*
    4 F.3d 413 (5th Cir. 1993) ................................................................ 3

*Kaye v. Ingenio, Filiale de Loto-Quebec, Inc.,*
    No. 13-61687, 2014 WL 2215770 (S.D. Fla. May 29, 2014) ................................................................ 9

*Kensington Int'l, Ltd. v. Itoua,*
    505 F.3d 147 (2d Cir. 2007) ................................................................ 6

*Magness v. Russian Federation,*
    247 F.3d 609 (5th Cir. 2001) ................................................................ 8

*Maritime Int'l Nominees Establishment v. Republic of Guinea,*
    693 F.2d 1094 (D.C. Cir. 1982) ................................................................ 4

*Moran v. Kingdom of Saudi Arabia,*
    27 F.3d 169 (5th Cir. 1994) ................................................................ 2

*Odhiambo v. Republic of Kenya,*
    764 F.3d 31 (D.C. Cir. 2014) ................................................................ 3, 4, 6

*Reiss v. Societe Centrale Du Groupe Des Assurances Nationales,*
    235 F.3d 738 (2d Cir. 2000) ................................................................ 3

*Republic of Austria v. Altmann,*
    541 U.S. 677 (2004) ................................................................ 9

*Samco Global Arms, Inc. v. Arita,*
    395 F.3d 1212 (11th Cir. 2005) ................................................................ 7

*Santos v. State Farm Fire & Cas. Co.,*
    902 F.2d 1092 (2d Cir. 1990) ................................................................ 8

*Saudi Arabia v. Nelson,*
    507 U.S. 349 (1993) ........................................................................................... 4, 5

*Schoeps v. Bayern,*
    27 F. Supp. 3d 540 (S.D.N.Y. 2014) ..................................................................... 4

*Schoeps v. Bayern,*
    611 F. App'x 32 (2d Cir. 2015) ........................................................................ 3, 4

*Terenkian v. Republic of Iraq,*
    694 F.3d 1122 (9th Cir. 2012) ............................................................................. 3

*Voest-Alpine Trading USA Corp. v. Bank of China,*
    142 F.3d 887 (5th Cir. 1998) ............................................................................... 6

*Zedan v. Kingdom of Saudi Arabia,*
    849 F.2d 1511 (D.C. Cir. 1988) ....................................................................... 3, 6

**Federal Statutes**

28 U.S.C. § 1330(b) ................................................................................................... 8

28 U.S.C. § 1603(e) ................................................................................................... 3

28 U.S.C. § 1604 ....................................................................................................... 2

28 U.S.C. § 1605(a)(2) ................................................................................... 1, 3, 6, 7

28 U.S.C. § 1605(a)(3) ............................................................................................... 2

28 U.S.C. § 1608(a) ................................................................................................... 8

28 U.S.C. § 1608(c)(1) ............................................................................................... 8

**State Statutes**

Fla. Stat. § 672.201 .................................................................................................... 9

Fla. Stat. § 95.11(3)(k) ............................................................................................... 9

**Legislative History**

H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 ......................... 6

Defendant Bolivarian Republic of Venezuela (the "Republic") submits this reply memorandum in support of its motion to dismiss the Amended Complaint.

## PRELIMINARY STATEMENT

The issues of subject matter and personal jurisdiction in this case are governed by the Foreign Sovereign Immunities Act (the "FSIA"). While Plaintiff relies upon the commercial activity exception to immunity, 28 U.S.C. § 1605(a)(2), the allegations in the Amended Complaint make clear that the exceptions to immunity in that section do not apply.

Plaintiff has now stated for the first time in his opposition brief that his claims are for unjust enrichment and breach of an implied oral agreement to return his collection of artifacts (the "Collection"). Those claims are based upon acts that occurred entirely outside of the United States. Plaintiff alleges that he brought the Collection to Venezuela, spent nearly a month in Venezuela pursuing negotiations for the sale of the Collection and then, prior to leaving Venezuela, left the Collection in Venezuela in the possession of the Republic on the unwritten understanding that it would be returned to him if no agreement for its purchase could be reached.

Any alleged activity of the Republic in the United States is irrelevant to Plaintiff's claims. Plaintiff relies heavily on the fact that the Republic allegedly sent him a letter on October 15, 2007 (the "Letter") which concerns a documentary to be filmed in Venezuela. The Letter does not even mention the Collection. Plaintiff also relies on an alleged preliminary meeting relating to the possible purchase of the Collection, which occurred on the tarmac of an airport in Florida. Not only does that activity fall well short of satisfying the "substantial contact" requirement of the first clause of the commercial activity exception, it has nothing to do with the alleged implied contract entered into in Venezuela which is the basis of Plaintiff's claims. The second clause is inapplicable because the Amended Complaint does not identify a single non-commercial act performed by the Republic in the United States that, in and of itself, is sufficient to form the basis of his claims. And the third clause is inapplicable because the Plaintiff has failed to identify any obligation that the Republic was required to perform in the United States, and any injury sustained by Plaintiff in the United States cannot constitute a direct effect as a matter of law.

Plaintiff does not cite a single case in support of his assertion that his allegations satisfy the commercial activity exception. Nor does Plaintiff distinguish the overwhelming case law that demonstrates the insufficiency of his jurisdictional allegations. Instead, Plaintiff attempts to

devise his own test for jurisdiction and argues that this Court should ignore well-established case law, including Supreme Court precedent. This Court should reject Plaintiff's proposed standards and dismiss this case.

## ARGUMENT

I. **The Amended Complaint Must Be Dismissed for**
   **Lack of Subject Matter Jurisdiction under the FSIA**

The Republic is indisputably a foreign state under the FSIA and is therefore presumptively immune from the jurisdiction of this Court. *See* 28 U.S.C. § 1604. Plaintiff "bears the initial burden to rebut the presumption of immunity by offering evidence that an [FSIA] exception applies." *See Dominican Energy Ltd. v. Dominican Republic*, 903 F. Supp. 1507, 1512 (M.D. Fla. 1995); *see also Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) ("once a *prima facie* showing of immunity has been made, the plaintiff seeking to litigate in the district court bears the burden of coming forward with facts showing that an [FSIA] exception applies").

Plaintiff has now made clear that he has abandoned any claim that the Republic wrongfully took the Collection, disavowing any reliance on, or the applicability of, the takings exception to immunity in 28 U.S.C. § 1605(a)(3). (Pl. Br. at 4.) Instead, Plaintiff now explains that the Amended Complaint sets out a claim for breach of an implied oral contract or unjust enrichment. (*Id.* at 8.) The allegations supporting such claims are found entirely in paragraphs 22 and 23 of the Amended Complaint. Specifically, Plaintiff alleges that he entrusted the Collection to the Republic in Venezuela on the understanding that, if the parties could not agree on the terms of a purchase, the Collection would be returned to him. (D.E. 106 ¶ 22.) Plaintiff further alleges that when no sales agreement was reached, the Republic purportedly declined to return the Collection. (*Id.* ¶ 23.) Thus, the supposed agreement upon which Plaintiff seeks to rely was made, if at all, entirely in Venezuela, and, under Plaintiff's theory, was to be performed in Venezuela, the place at which the Collection was allegedly entrusted to the Republic. (Pl. Br. at 13.) That alleged agreement, or the Republic's alleged unjust enrichment resulting from its retention of the Collection, occurred entirely in Venezuela and has no connection whatsoever to the United States other than Plaintiff's citizenship, which is jurisdictionally irrelevant.

**A.** **The First Clause of the Commercial Activity Exception Does Not Apply**

The first clause of the commercial activity exception, 28 U.S.C. § 1605(a)(2), requires factual allegations showing: (1) that the defendant carried on commercial activity in the United States, which is defined in the FSIA as activity "having substantial contact with the United States," and (2) that the plaintiff's claims are "based upon" such commercial activity. 28 U.S.C. §§ 1603(e) and 1605(a)(2). The Amended Complaint is deficient in both regards.

1.       The Allegations in the Amended Complaint Are Insufficient
to Satisfy the Substantial Contact Requirement

In order to satisfy the "substantial contact" requirement, Plaintiff is required to allege facts establishing a significant nexus between the commercial activity alleged to have occurred in the United States and his cause of action. *See Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 235 F.3d 738, 747 (2d Cir. 2000). Here, the only activity of the Republic in the United States identified in the Amended Complaint consists of a single alleged meeting on the tarmac of a Florida airport and the sending of the Letter and a telephone call from Venezuela to the Plaintiff in Florida.

Plaintiff argues that sending the Letter by itself satisfies the minimum contacts requirement of due process and is thus somehow sufficient to meet the substantial contact requirement. (Pl. Br. at 7.) Plaintiff's is wrong in at least two respects. First, the FSIA's substantial contact standard requires a significantly greater jurisdictional nexus than the due process minimum contacts inquiry. *See Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511, 1513 (D.C. Cir. 1988). Second, neither the supposed telephone call nor Plaintiff's alleged receipt of the Letter, which doesn't even mention the Collection, would satisfy the far less exacting minimum contacts test. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 416 (5th Cir. 1993).

Moreover, courts have routinely held that preliminary meetings in the United States and related correspondence do not constitute a substantial contact with the United States under the commercial activity exception. *See Schoeps v. Bayern*, 611 F. App'x 32, 34 (2d Cir. 2015); *Odhiambo v. Republic of Kenya*, 764 F.3d 31, 36 (D.C. Cir. 2014); *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1133 (9th Cir. 2012); *General Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1383-84 (8th Cir. 1993); *see also Maritime Int'l Nominees Establishment v. Republic of*

*Guinea*, 693 F.2d 1094, 1109 (D.C. Cir. 1982) ("We cannot conclude that these two isolated meetings amounted to more than 'transitory' and 'insubstantial' contact for purposes of the [FSIA], especially given their uncertain scope and importance.") (internal citations omitted).

*Schoeps* is on point. In that case, the plaintiff alleged that the sovereign defendant sent communications to the United States inquiring about a valuable painting, travelled to the United States to view the painting and to discuss a potential sale of the painting, and then later on negotiated the purchase of the painting outside the United States. *Schoeps v. Bayern*, 27 F. Supp. 3d 540, 542-43 (S.D.N.Y. 2014). The Second Circuit affirmed dismissal of the complaint on the grounds that the defendant's actions in the United States, including the preliminary meeting in New York, did not constitute substantial contact with the United States. *Schoeps*, 611 F. App'x at 34. Plaintiff does not, and cannot, distinguish *Schoeps* or any of the other Circuit Court decisions that likewise hold that preliminary meetings and related correspondence, such as those alleged in the Amended Complaint, are insufficient as a matter of law to satisfy the substantial contact requirement. Nor does Plaintiff cite a single case to support his conclusory assertion that his allegations are sufficient to establish the substantial contact requirement.

> ### 2. Plaintiff's Claims Are Not "Based Upon" Any Alleged Commercial Activity in the United States

In order to satisfy the "based upon" requirement, a plaintiff must show that the sovereign defendant's alleged commercial acts, if proven, would establish an element of the cause of action. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 357 (1993). The Supreme Court has held that it is insufficient merely to allege that the sovereign defendant's alleged commercial activity eventually led to the conduct that ultimately injured the plaintiff. *See id.* at 357-58. Rather, the defendant's acts in the United States must constitute a fact without which the plaintiff will lose. *See Odhiambo*, 764 F.3d at 36.

None of the Republic's alleged commercial acts in the United States identified in the Amended Complaint, such as the telephone call, the sending of the Letter, or the single meeting at the airport, if proven, would establish any of the elements of Plaintiff's claims for breach of an implied contract or unjust enrichment. Those activities are alleged to relate to a potential contract for the sale of the Collection, a contract that Plaintiff admits was never made. (D.E. 106 ¶ 23.) Plaintiff's claims are instead based on an alleged agreement and acts that occurred entirely in Venezuela. The Amended Complaint states that "plaintiff entrusted the

Devengoechea Collection to [the Republic] and left the collection in Venezuela upon plaintiff's return to the United States." (*Id.* ¶ 22.) In other words, Plaintiff's delivery of the Collection to the Republic, the agreement to return it if no agreement for its purchase was reached, and the purported refusal to return it all occurred in Venezuela, not the United States. Thus, the Republic's alleged acts in the United States are simply irrelevant.

Plaintiff does not argue that any of the Republic's alleged acts in the United States constitute an element of its claims as required under *Nelson*. Rather, Plaintiff urges this Court to disregard *Nelson* and instead apply a new standard pursuant to which a claim is "based upon" a commercial activity where such activity is "an integral part of the package of facts upon which plaintiff's claims are based." (Pl. Br. 9.) Plaintiff cites no authority for this novel standard. None exists.

Plaintiff argues that absent the Republic's alleged commercial activities in the United States he would never have gone to Venezuela and subsequently entrusted the Collection to the Republic while in Venezuela. (Pl. Br. at 9.) However, the Supreme Court in *Nelson* rejected a nearly identical argument. *See* 507 U.S. at 358. In that case, the sovereign defendant recruited the plaintiff in the United States, entered into an employment agreement with the plaintiff in the United States and held an orientation program for the plaintiff and others in the United States. *See id.* at 352. The plaintiff thereafter went to work for the defendant in Saudi Arabia and was allegedly arrested and beaten by Saudi authorities after reporting safety defects to his superiors. *See id.* at 352-53. The Supreme Court rejected the argument that the plaintiff's tort claims were "based upon" the defendant's activities in the United States, holding that "[w]hile these activities led to the conduct that eventually injured the [plaintiff], they are not the basis for [plaintiff's] suit." *Id.* at 358. Thus, Plaintiff's argument that the Republic's alleged commercial acts in the United States led to the conduct in Venezuela that eventually injured him cannot withstand scrutiny under *Nelson*.

Moreover, Plaintiff's assertion that his claims are based upon the allegation that the Letter was used as an entrée to gain access to the Collection is meritless. (Pl. Br. at 3.) There is no such allegation in the Amended Complaint and, contrary to Plaintiff's assertions, the Letter does not mention the Collection or any property owned by Plaintiff or any actual or prospective negotiations of any sort. Instead, the Letter recognizes Plaintiff's accomplishments as a film director and invites him to Venezuela to observe the making of a documentary film about his

ancestor, Don Joaquin de Mier. (D.E. 106 ¶ 16.) The Letter is simply irrelevant to Plaintiff's claims. *See Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009).

### B. The Second Clause of the Commercial Activity Exception Does Not Apply

The second clause of the commercial activity exception applies where the claim is based on an act by the foreign state in the United States in connection with the foreign state's commercial activity elsewhere. 28 U.S.C. § 1605(a)(2). Under this clause, the predicate act performed in the United States must be both "non-commercial" in nature and sufficient in and of itself to form the basis of the plaintiff's cause of action. *See, e.g. Kensington Int'l, Ltd. v. Itoua*, 505 F.3d 147, 155 (2d Cir. 2007); *Zedan,* 849 F.2d at 1514. Plaintiff has not satisfied either requirement. The Amended Complaint characterizes all of the predicate acts identified for purposes of the second clause as "commercial" acts. (D.E. 106 ¶¶ 28, 33.) And, as demonstrated above, none of these acts, if proven, would establish any element of Plaintiff's claims and therefore cannot be in and of themselves sufficient to form the basis of such claims. *See supra* at pp. 4-6.

Plaintiff argues that the second clause of the commercial activity exception does not contain any requirement that the predicate act in the United States be non-commercial or sufficient in and of itself to form the basis of Plaintiff's claims. Plaintiff cites no authority for this argument. And to accept Plaintiff's contention would require this Court to ignore the well-reasoned decisions of the Second, Fifth, Eighth and D.C. Circuits. *See Kensington Int'l*, 505 F.3d at 157 (act must be non-commercial); *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 892 n.5 (5th Cir. 1998) (same); *Grossman*, 991 F.2d at 1383-84 (act must in and of itself form the basis of the claim); *Zedan,* 849 F.2d at 1514 (same). In addition, the legislative history of the FSIA is explicit on this point. *See* H.R. Rep. No. 94-1487, at 19 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617-18. As the D.C. Circuit recently stated: "[T]o the degree that the text leaves any ambiguity, the legislative history is 'crystal clear' that clause two's reference to acts 'performed in the United States …' is 'limited to those' acts 'which in and of themselves are sufficient to form the basis of a cause of action.'" *Odhiambo*, 764 F.3d at 37-38 (quoting H.R. Rep. No. 94-1487, at 19 (1976)). Plaintiff does not provide any compelling reason for this Court to diverge from this overwhelming authority.

Plaintiff's contention that there is some sort of inconsistency between requiring the predicate act to be both non-commercial and sufficient in and of itself to form the basis of the

plaintiff's claim is unfounded. These are distinct requirements. The former concerns the nature of the predicate act and the latter concerns the nexus between the act and the plaintiff's claim.

### C. The Third Clause of the Commercial Activity Exception Does Not Apply

The third clause of the commercial activity exception applies where the claim is based upon an act outside of the United States related to the sovereign defendant's commercial activity abroad which has a "direct effect" in the United States. 28 U.S.C. § 1605(a)(2). Under the Eleventh Circuit's "negative activity" test, a foreign state's failure to perform an act does not constitute a direct effect where the foreign state had no obligation to perform that act in the United States. *See Araya-Solorzano v. Gov't of Republic of Nicaragua*, 562 F. App'x 901, 904 (11th Cir. 2014) (citing *Guevara v. Republic of Cuba*, 608 F.3d 1297, 1310 (11th Cir. 2010)).

Here, the question is whether the Republic's supposed failure to return the Collection can constitute a direct effect in the United States. Under Eleventh Circuit precedent, the answer is unequivocally no. Indeed, the Eleventh Circuit in *Samco Global Arms, Inc. v. Arita*, 395 F.3d 1212, 1216-17 (11th Cir. 2005) held that failure to return property to a U.S. plaintiff does not constitute a direct effect in the United States absent an explicit legal obligation to ship the property to the United States. *See also Araya-Solorzano*, 562 F. App'x at 905 (direct effects cannot be speculative); *Global Index, Inc. v. Mkapa*, 290 F. Supp. 2d 108, 114-15 (D.D.C. 2003) ("[T]his court is not tempted to be the first to find direct effects based on an implied or constructive agreement to pay in the U.S."). Plaintiff does not allege any agreement to ship the Collection to the United States. And, under Plaintiff's own theory, the obligation to return the Collection was to be performed at the place where the Collection was transferred to the Republic. (Pl. Br. at 13.) According to the Amended Complaint, that transfer occurred in Venezuela. (D.E. 106 ¶ 22.) Thus, any obligation to return the Collection was to be performed in Venezuela – not the United States.

Furthermore, the fact that Plaintiff may have suffered some financial injury in the United States is insufficient as a matter of law to constitute a "direct effect" in the United States under Section 1605(a)(2). *See Araya-Solorzano*, 562 F. App'x at 904 ("Mere financial loss by a person – individual or corporate – in the U.S. is not, in itself, sufficient to constitute a 'direct effect.'").

## II.     The Amended Complaint Must Be Dismissed for Lack of Personal Jurisdiction

Plaintiff's failure to establish an exception to sovereign immunity under the FSIA alone mandates dismissal of this case for lack of personal jurisdiction.  *See* 28 U.S.C. § 1330(b). Furthermore, Plaintiff never served the Republic in accordance with 28 U.S.C. § 1608(a), which "sets forth the *exclusive procedures* for service on a foreign state."  *Magness v. Russian Federation*, 247 F.3d 609, 615 (5th Cir. 2001) (emphasis in original).  Section 1608(a) requires strict compliance.  *See id.*; *Fly Brazil Grp., Inc. v. Gov't of Gabon, Africa*, 709 F. Supp. 2d 1274, 1281 (S.D. Fla. 2010).

While Plaintiff attempted to serve the original complaint under the Hague Convention as provided in Section 1608(a)(2), such service is not complete until receipt of the certificate issued by the designated central authority under Article 6 of the Hague Convention.  *See* 28 U.S.C. § 1608(c)(1).  Contrary to Plaintiff's assertions, the affidavit of service that Plaintiff submitted did not complete service under the FSIA.[1]  In fact, that affidavit expressly states that no Article 6 certificate was received and thus makes clear that service was never completed.  (D.E. 10-4.)

Plaintiff's assertion that the Republic waived ineffective service of process is without merit.  The Republic's two prior motions to dismiss expressly sought dismissal under 28 U.S.C. § 1330(b), which explicitly requires effective service of process as a prerequisite for establishing personal jurisdiction over a foreign state.  Because the FSIA expressly predicates personal jurisdiction on service of process, the two issues are inextricably intertwined.  Failure to properly serve results in a lack of personal jurisdiction.[2]

---

[1] Plaintiff cites to affidavits of service of the Writ of Garnishment and a subpoena upon Bank of America.  (Pl. Br. at 16 citing D.E. 53-54.)  Such affidavits clearly do not satisfy the FSIA's service requirements.

[2] Plaintiff's reliance on *Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1094 (2d Cir. 1990) is misplaced because that decision was predicated on the distinction between personal jurisdiction and insufficient service of process in the context of litigation between private parties.  However, the analysis in *Santos* does not hold up in the FSIA context because that statute explicitly states that effective service of process is a prerequisite to establishing personal jurisdiction over a foreign state.  *See* 28 U.S.C. § 1330(b).

### III. The Amended Complaint Must Be Dismissed for Failure to State a Claim

#### A. The FSIA's Commercial Activity Exception to Immunity Does Not Provide a Substantive Cause of Action

The FSIA is purely jurisdictional and does not provide any substantive causes of action against a foreign state.  *See Republic of Austria v. Altmann*, 541 U.S. 677, 695 & n.15 (2004).  Plaintiff's argument to the contrary is frivolous, and Plaintiff's reliance on *Altmann* is unfounded.  In that case the Supreme Court specifically held that the FSIA "does not create or modify any causes of action."  *Id.*

#### B. Plaintiff's Claims Are Time Barred

Plaintiff argues that the Amended Complaint asserts claims for unjust enrichment and breach of an implied oral contract.  Both such claims are barred under the applicable four-year statute of limitations.  Fla. Stat. § 95.11(3)(k).[3]

A claim for unjust enrichment accrues on the date that the benefit was conferred on the defendant.  *Kaye v. Ingenio, Filiale de Loto-Quebec, Inc.*, No. 13-61687, 2014 WL 2215770, at *9 (S.D. Fla. May 29, 2014).  Here, Plaintiff alleges that he transferred the Collection to the Republic on or before November 6, 2007 – nearly five years prior to filing the original complaint on October 12, 2012.  (D.E. 106 ¶ 22.)  Thus, Plaintiff's unjust enrichment claim is time-barred.

Similarly, the Amended Complaint makes clear that any supposed implied contract between the parties was entered into in Venezuela on or before November 6, 2007.  While Plaintiff does not specify the date of the Republic's alleged refusal to return the Collection, all of the events alleged in the Amended Complaint supposedly occurred in 2007 – more than four years prior to the filing of the original complaint.  (D.E. 106 ¶ 22.)  If Plaintiff were to rely on a breach of that agreement that occurred over a year after the oral contract was entered into in an attempt to avoid dismissal on limitations grounds, the oral contract would itself be unenforceable as violating the statute of frauds.  *See* Fla. Stat. § 672.201.

---

[3] The Amended Complaint unequivocally denies the existence of an express agreement between the parties.  (D.E. 106 ¶ 23.)  Therefore, Plaintiff cannot rely on the five-year statute applicable to claims for breach of a written contract.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint with prejudice.

Dated:      Miami, Florida                Respectfully submitted,
               September 24, 2015

                                            BILZIN SUMBERG BAENA
                                              PRICE & AXELROD LLP

                                          By:  /s/  Mitchell E. Widom
                                              Mitchell E. Widom
                                              Lori P. Lustrin
                                      1450 Brickell Avenue, Suite 2300
                                      Miami, Florida 33131-3456
                                      Telephone:  (212) 696-6000
                                      Facsimile:  (212) 697-1559
                                      mwidom@ bilzin.com
                                      llustrin@bilzin.com

                                      – and –

                                      Joseph D. Pizzurro (*pro hac vice*)
                                      Robert B. Garcia (*pro hac vice*)
                                      CURTIS, MALLET-PREVOST,
                                        COLT & MOSLE LLP
                                      101 Park Avenue
                                      New York, New York  10178
                                      Telephone:  (212) 696-6000
                                      Facsimile:  (212) 697-1559
                                      jpizzurro@curtis.com
                                      robert.garcia@curtis.com

                                      *Attorneys for Defendant Bolivarian*
                                      *Republic of Venezuela*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Court and served via CM/ECF electronic mail service on all counsel of record on the date hereof.

Dated: September 24, 2015.

By: */s/ Mitchell E. Widom*
        Mitchell E. Widom

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

RICARDO DEVENGOECHEA,

    Plaintiff,

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,
A Foreign State,

    Defendant.

Case No. 12-cv-23743-PCH/Otazo-Reyes

**DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF
IN OPPOSITION TO MOTION TO DISMISS THE AMENDED COMPLAINT**

Dated:  December 18, 2015

**BILZIN SUMBERG BAENA
PRICE & AXELROD LLP**
Mitchell E. Widom
mwidom@bilzin.com
Lori P. Lustrin
llustrin@bilzin.com
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Telephone:  (305)374-7580
Facsimile:  (305)374-7593

– and –

Joseph D. Pizzurro (*pro hac vice*)
Robert B. Garcia (*pro hac vice*)
Kevin A. Meehan (*pro hac vice*)
**CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
jpizzurro@curtis.com
robert.garcia@curtis.com
kmeehan@curtis.com

*Attorneys for Defendant Bolivarian Republic
of Venezuela*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND .................................................................................................... 2

    A.    Procedural History ................................................................................. 2

    B.    Plaintiff's Proposed Supplemental Allegations .................................... 4

ARGUMENT ......................................................................................................... 7

I.    Plaintiff's Proposed Amendments Would Be Futile Because His New Allegations Are Insufficient to Establish Subject Matter Jurisdiction under the FSIA ............................... 7

    A.    The First Clause of the Commercial Activity Exception Still Does Not Apply ..... 8

        1.    Plaintiff's Claims Are Not "Based Upon" Any Alleged Commercial Activity in the United States .......................................................... 10

        2.    Plaintiff's Proposed Allegations Are Still Insufficient to Satisfy the Substantial Contact Requirement .................................................. 11

    B.    Plaintiff's Proposed Allegations Cannot Establish the Applicability of the Second Clause of the Commercial Activity Exception ................................... 12

    C.    Plaintiff's Proposed Allegations Do Not Alter the Conclusion that the Third Clause of the Commercial Activity Exception Does Not Apply ......................... 13

II.    The Amended Complaint Must Be Dismissed for Lack of Personal Jurisdiction ........... 13

III.    Plaintiff's Proposed Amendments Would Still Fail to State a Claim .......................... 15

    A.    Plaintiff's Unjust Enrichment Claims Are Time Barred ...................................... 15

    B.    Plaintiff's Claims for Breach of an Implied Oral Agreement Are Unenforceable as Violating the Statute of Frauds .......................................................... 16

CONCLUSION ..................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Burger King Corp. v. Weaver*,
169 F.3d 1310 (11th Cir. 1999) ........................................................... 7

*Fly Brazil Grp., Inc. v. Gov't of Gabon, Africa*,
709 F. Supp. 2d 1274 (S.D. Fla. 2010) .................................................. 14

*Foman v. Davis*,
371 U.S. 178 (1962)................................................................................ 7

*General Elec. Capital Corp. v. Grossman*,
991 F.2d 1376 (8th Cir. 1993) ......................................................... 9, 12

*Harris Corp. v. Nat'l Iranian Radio & Television*,
691 F.2d 1344 (11th Cir. 1982) ........................................................... 14

*Kaye v. Ingenio, Filiale de Loto-Quebec, Inc.*,
No. 13-61687, 2014 WL 2215770 (S.D. Fla. May 29, 2014)................. 15

*Kensington Int'l, Ltd. v. Itoua*,
505 F.3d 147 (2d Cir. 2007)................................................................. 13

*Magness v. Russian Federation*,
247 F.3d 609 (5th Cir. 2001) ............................................................... 14

*Maritime Int'l Nominees Establishment v. Republic of Guinea*,
693 F.2d 1094 (D.C. Cir. 1982)........................................................... 12

*Merle Wood & Assoc. v. Trinity Yachts LLC*,
2011 WL 845825 (S.D. Fla. 2011) ................................................. 15, 16

*Merle Wood & Associates, Inc. v. Trinity Yachts, LLC*,
714 F.3d 1234 (11th Cir. 2013) ........................................................... 16

*OBB Personenverkehr AG v. Sachs*,
No. 13-1067, 577 U.S. __, 2015 U.S. LEXIS 7670 (Dec. 1, 2015)............... 9, 10, 11

*Odhiambo v. Republic of Kenya*,
764 F.3d 31 (D.C. Cir. 2014)......................................................... 11, 12

*Potts v. Atlantic S.E. Airlines, Inc.*,
158 F.R.D. 693 (N.D. Ga. 1994).......................................................... 14

*Saudi Arabia v. Nelson*,
507 U.S. 349 (1993)....................................................................... 9, 10, 11

*Schoeps v. Bayern*,
611 F. App'x 32 (2d Cir. 2015) ........................................................... 11

*Sun v. Gov't Authorities on Taiwan*, No.
94-cv-2769, 2001 WL 114443 (N.D. Cal. Jan. 24, 2001)....................... 7

*Terenkian v. Republic of Iraq*,
   694 F.3d 1122 (9th Cir. 2012) ................................................ 12

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
   30 F.3d 148 (D.C. Cir. 1994) ................................................ 14

*Voest-Alpine Trading USA Corp. v. Bank of China*,
   142 F.3d 887 (5th Cir. 1998) ................................................ 13

**Federal Statutes**

28 U.S.C. § 1330(b) ................................................................ 13

28 U.S.C. § 1603(e) ................................................................. 8

28 U.S.C. § 1605(a)(2) ............................................. 3, 8, 12, 13

28 U.S.C. § 1608(a) ........................................................ 2, 3, 14

28 U.S.C. § 1608(b) .......................................................... 2, 14

**State Statutes**

Fla. Stat. § 672.201 ............................................................... 16

Fla. Stat. § 95.11(3)(k) .......................................................... 15

**Legislative History**

H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 ................................. 12, 14

Pursuant to the Court's order on supplemental briefing entered December 3, 2015 (D.E. 131) (the "Order"), Defendant Bolivarian Republic of Venezuela (the "Republic") submits this memorandum in response to Plaintiff's Supplemental Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Amended Complaint (D.E. 134) (the "Supplemental Brief").

## PRELIMINARY STATEMENT

It is clear that the Amended Complaint fails to allege a basis for jurisdiction under the Foreign Sovereign Immunities Act (the "FSIA"). Now Plaintiff argues that this Court should grant him leave to further amend his pleadings to add new allegations concerning his alleged negotiations with the Republic in the United States. Such an amendment would be futile.

By his own admission, Plaintiff's proposed allegations add nothing of substance to his jurisdictional allegations. Rather, the proposed allegations in Plaintiff's declaration merely add color to his existing allegation that Plaintiff and the Republic engaged in preliminary negotiations in the United States for the sale of the Plaintiff's collection of historical artifacts (the "Collection") to the Republic. These allegations are insufficient to establish jurisdiction under the FSIA's commercial activity exception to immunity. Nothing in these proposed allegations change the gravamen of the Plaintiff's case and therefore do not change the fact that Plaintiff's claims are not "based upon" the alleged preliminary negotiations in the United States as required under the commercial activity exception. Nor does Plaintiff's additional allegations concerning the details of the alleged preliminary negotiations change the fact that preliminary negotiations are insufficient, as a matter of law, to constitute a "substantial contact" with the United States as required under the first clause of the commercial activity exception. Moreover, none of Plaintiff's proposed allegations are in and of themselves sufficient to form the basis of Plaintiff's cause of action and therefore cannot satisfy the second clause of the commercial

activity exception. And none of the Plaintiff's proposed allegations, which all concern alleged commercial activities in the United States, even implicate the third clause of the commercial activity exception. Thus, Plaintiff's proposed amendments cannot save this case from dismissal for lack of subject matter jurisdiction under the FSIA.

Plaintiff also concedes that the Republic was never properly served in accordance with the FSIA. Plaintiff now argues that proper service under the FSIA was waived by the Republic and that actual notice is sufficient. In support of this argument, Plaintiff relies exclusively on cases interpreting 28 U.S.C. § 1608(b), which provides the procedures for serving agencies and instrumentalities of a foreign state. However, that provision of the FSIA is inapplicable because Plaintiff is suing the foreign state itself. And where, as here, the defendant is the foreign state itself, the plaintiff must strictly comply with the procedures and requirements of 28 U.S.C. § 1608(a), which provides the exclusive procedures for serving foreign states. Actual notice is not sufficient under Section 1608(a).

Furthermore, Plaintiff has not proposed any allegations that would cure his failure to adequately state a claim for relief. Nor has Plaintiff cited any valid case law that would save his claims from dismissal under the statute of limitations or the statute of frauds. Therefore, this Court should deny leave to amend and dismiss this case with prejudice.

## BACKGROUND

### A.    Procedural History

The Republic first moved to dismiss this case for lack of jurisdiction under the FSIA over 10 months ago on February 15, 2015. (D.E. 76.) Plaintiff never responded to that motion, and, as a result of Plaintiff's litigation tactics, the Republic was forced to submit an "amended" motion to dismiss. (D.E. 102.) Plaintiff never responded to that motion either. Instead, without

seeking leave of the Court, Plaintiff filed its Amended Complaint on July 16, 2015 – more than five months after the Republic filed its original motion to dismiss. (D.E. 106.)

On August 14, 2015, the Republic filed its third motion to dismiss this case for lack of jurisdiction under the FSIA (the "Motion to Dismiss"). (D.E. 112.) The Republic argued, among other things, that the allegations of the Amended Complaint, even if accepted as true, cannot, as a matter of law, establish any of the three clauses of the FSIA's commercial activity exception to immunity, 28 U.S.C. § 1605(a)(2). The Motion to Dismiss also asserted that the Court lacks personal jurisdiction over the Republic under the FSIA, in part, because service of process was never completed in accordance with the mandatory requirements of FSIA's exclusive service procedures under 28 U.S.C. § 1608(a). In addition, the Motion to Dismiss asserted that the Amended Complaint failed to state a claim because the FSIA does not create a substantive cause of action and any unidentified contractual, quasi-contractual or tort claims would be barred under the applicable statute of limitations and/or statute of frauds.

Plaintiff finally addressed the dispositive FSIA issues in this case for the first time in its opposition, which was filed on September 14, 2015.

On December 3, 2015, this Court held oral argument on the Motion to Dismiss (the "Hearing"). During the Hearing, counsel for Plaintiff argued that Plaintiff should be permitted to file yet another amended complaint in an attempt to include additional allegations concerning the Republic's commercial activities in the United States. (Hrg. Tr. at 32:18-33:14.) Counsel for Plaintiff stated that any such amendment would not include any additional jurisdictional allegations beyond the Amended Complaint's allegations of negotiations in the United States. (*Id.* at 32:10-12.) Indeed, counsel explicitly stated: "It's not that there's more. It's just that it would be a clarification of what is meant by 'extensive negotiations.'" (*Id.*) Counsel for Plaintiff

also argued that he had legal authority supporting his positions on the Republic's statute of limitations and service of process arguments, which he failed to cite in his opposition or bring to the Hearing.

At the conclusion of the Hearing, the Court ordered supplemental briefing from the parties. Specifically, the Court directed Plaintiff to provide the citations to the supplemental authority on the statute of limitations and service of process issues and to provide an affidavit containing any additional facts that would be included in a further amendment to his complaint. (Hrg. Tr. at 50:10-51:6.) The Court provided the Republic the opportunity to respond the Plaintiff's supplemental brief and affidavit. (D.E. 131.)

### B. Plaintiff's Proposed Supplemental Allegations

On December 11, 2015, Plaintiff filed his Supplemental Brief and a declaration providing additional allegations that he would include in yet another amended complaint.[1] Plaintiff states that these additional allegations "show the particulars of the defendant's 'extensive commercial activities' in the United States as alleged in my Amended Complaint." (Devengoechea Decl. ¶ 2.)[2] Thus, Plaintiff's declaration makes clear that his proposed allegations only relate to the Republic's alleged commercial activities in the United States. (D.E. 134-1 at p. 1; Devengoechea Declaration ¶ 2.) In addition, Plaintiff is merely proposing to provide additional details to his existing allegation that the parties engaged in preliminary negotiations for the purchase of the Collection in the United States. (D.E. 134-1 at p. 1.) Taken together, the Amended Complaint and the Plaintiff's declaration allege as follows:

---

[1] Plaintiff originally filed an unsigned and therefore unsworn affidavit on December 11, 2015. (D.E. 134-1.) Three days later, the plaintiff filed a signed affidavit. (D.E. 135).

[2] "Devengoechea Decl." as used herein refers to the Declaration of Ricardo Devengoechea, dated December 11, 2015 (D.E. 135).

According to the Amended Complaint, Plaintiff received a telephone call from a Venezuelan official in 2007 who supposedly expressed an interest in viewing and purchasing the Collection as part of an investigation in Venezuela concerning General Simon Bolivar. (Am. Compl. ¶ 15.) However, Plaintiff now clarifies that, in October of 2007, he received phone calls from one of his own family members, Jorge Mier Hoffman, who supposedly contacted Plaintiff on behalf of the Republic. (Devengoechea Decl. ¶¶ 6-7.) Plaintiff's declaration further states that, at some point after the telephone calls with Mr. Hoffman, Plaintiff was somehow "contacted" by some unidentified "officials" of the Republic in an attempt to arrange a meeting in Florida to negotiate a sale of the Collection to the Republic. (*Id.* at ¶ 9.)

The Amended Complaint alleges that Plaintiff engaged in "extensive commercial negotiations" with the Republic in Florida. (Am. Compl. ¶ 18.) Plaintiff now clarifies that he allegedly first met with Venezuelan officials at 3-hour dinner meeting at a restaurant in Orlando on October 14, 2007. (Devengoechea Decl. ¶ 10.) During this meeting, Plaintiff allegedly discussed the Collection and a potential purchase of the Collection by the Republic. (*Id.*) Plaintiff also alleges for the first time in his declaration that he met with these same Venezuelan officials at a Marriott hotel in Orlando on the following day, October 15, 2007, for a 5-hour meeting to discuss a potential purchase of the Collection by the Republic. (*Id.* at ¶ 12.) During this meeting, the Venezuelan officials supposedly asked Plaintiff to travel back to Venezuela with them and to bring his Collection with him. (*Id.* at ¶ 13.)

The Amended Complaint states that Plaintiff allegedly received a letter, written in Spanish, from the Republic, dated October 15, 2007 (the "Letter") relating to the Republic's interest in purchasing the Collection. (Am. Compl. ¶ 15.) However, the English translation of the Letter, which is provided in full at paragraph 16 of the Amended Complaint, never mentions

the Collection. (*Id.* at ¶ 16.) Instead, the Letter acknowledges Plaintiff's "qualifications and experience as a filmmaker and film producer" and invited Plaintiff to come to Venezuela for the purpose of accompanying a group of Venezuelans who were making a documentary film. (*Id.*) Plaintiff now clarifies that, after the alleged negotiations at the Marriott, the Republic provided him with the Letter in order to help the Plaintiff expedite his procurement of a United States passport.[3] (Devengoechea Decl. ¶ 16.) While Plaintiff now concedes in his declaration that the Letter does not mention the Collection, he contends that the Letter was somehow an entrée to pursue possible future meetings with the Republic in Venezuela to discuss the Collection. (*Id.*)

According to the Amended Complaint, the parties' negotiations for the purchase of the Collection continued at the airport in Florida before Plaintiff and the Venezuelan officials left the United States and flew to Venezuela on October 17, 2007. (Am. Compl. ¶¶ 3, 15-17.) Plaintiff now clarifies that these airport negotiations lasted for about an hour before Plaintiff and the Venezuelan officials left for Venezuela at approximately 12:15 a.m. on October 17, 2007. (Devengoechea Decl. ¶ 22.)

Both the Amended Complaint and the Devengoechea Declaration allege that the Plaintiff spent approximately three weeks in Venezuela where the alleged negotiations for the purchase of the Collection continued. (Am. Compl. ¶¶ 18-20; Devengoechea Decl. ¶¶ 26-28.) And both the Amended Complaint and the Devengoechea Declaration allege that, prior to leaving Venezuela, Plaintiff left the Collection in the possession of the Republic upon an implied agreement that, if the parties could not reach an agreement on the sale of the Collection, it would be returned to Plaintiff. (Am. Compl. ¶ 22; Devengoechea Decl. ¶ 28.) The Amended Complaint states that the parties never reached an agreement on the purchase of the Collection. (Am. Compl. ¶ 23.)

---

[3] The Amended Complaint explicitly states that Plaintiff is a United States citizen and not a citizen or national of Venezuela. (Am. Compl. ¶ 7.)

While the Amended Complaint is silent with respect to the date that Plaintiff allegedly requested the return of the Collection, Plaintiff now suggests that he demanded return of the Collection sometime after July 2010 – more than two and a half years after he left the Collection in Venezuela. (Devengoechea Decl. ¶ 31.)

## ARGUMENT

Plaintiff requests leave to file yet another amended complaint in order to include the new allegations stated in the Devengoechea Declaration. Plaintiff contends that fairness requires an additional amendment to the Amended Complaint in order to address the concerns expressed by the Court at the Hearing. However, it is well established that leave to amend should be denied if such amendment would be futile. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999). And an amendment is futile if the complaint as amended would still need to be dismissed. *See id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Allowing Plaintiff to further amend his Amended Complaint to add his proposed allegations would unquestionably be futile because, even crediting those new allegations, the Plaintiff still could not establish jurisdiction under the FSIA's commercial activities exception.[4] Nor would Plaintiff's proposed amendments cure the Plaintiff's defective service of process or his failure state a claim for which relief can be granted.

I.      **Plaintiff's Proposed Amendments Would Be Futile Because His New Allegations Are Insufficient to Establish Subject Matter Jurisdiction under the FSIA**

Even if Plaintiff were allowed to amend and add his proposed allegations, such an amended complaint would still be insufficient as a matter of law to establish any of the three

---

[4] While Plaintiff asserts that leave to amend should be granted liberally in FSIA cases, none of the cases by Plaintiff even involved a motion to amend jurisdictional allegations under the FSIA. (Pl. Supp. Br. at p.2.) In fact, one of the cases cited by Plaintiff explicitly dismissed the case with prejudice. *See Sun v. Gov't Authorities on Taiwan*, No. 94-cv-2769, 2001 WL 114443, at *12 (N.D. Cal. Jan. 24, 2001).

clauses of the commercial activity exception. Nothing in Plaintiff's proposed amendments changes the fact that his claims are not "based upon" any commercial activity carried on in the United States by the Republic as required under the first clause of the commercial activity exception. And Plaintiff still has not alleged anything more than preliminary negotiations in the United States for the purchase of the Collection, which as a matter of law, do not constitute a substantial contact with the United States as required under the first clause of the commercial activity exception. In addition, Plaintiff's proposed allegations do not include any non-commercial act in the United States by the Republic that is in-and-of-itself the basis of the Plaintiff's cause of action as required to establish the second clause of the commercial activity exception. Finally, the Plaintiff's proposed amendments do not include any allegations of a "direct effect" in the United States that was caused by the Republic's commercial activities elsewhere as required to establish the third clause of the commercial activity exception. Accordingly, the Amended Complaint must be dismissed with prejudice.

### A. The First Clause of the Commercial Activity Exception Still Does Not Apply

The first clause of the commercial activity exception, 28 U.S.C. § 1605(a)(2), requires factual allegations showing: (1) that the defendant carried on commercial activity in the United States, which is defined in the FSIA as activity "having substantial contact with the United States," and (2) that the plaintiff's claims are "based upon" such commercial activity. 28 U.S.C. §§ 1603(e) and 1605(a)(2). The "substantial contact" and "based upon" requirements are separate and distinct. The "substantial contact" requirement concerns the requisite nexus between the foreign sovereign defendant's alleged commercial activities and the United States. By contrast, the "based upon" requirement concerns the requisite nexus between the plaintiff's claims and the foreign sovereign's alleged commercial activities carried on in the United States.

Both the "substantial contact" requirement and the "based upon" requirement must be satisfied in order for the first clause of the commercial activity exception to apply. *See General Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1383 (8th Cir. 1993). Thus, no matter how many or substantial a foreign sovereign defendant's contacts with the United States, the plaintiff must still satisfy the "based upon" test as set forth in the Supreme Court's decisions in *OBB Personenverkehr AG v. Sachs ("OBB")*, No. 13-1067, 577 U.S. __, 2015 U.S. LEXIS 7670 (Dec. 1, 2015) and *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).

*Grossman* is illustrative. In that case, the plaintiff sued Air Canada for allegedly misrepresenting the financial status of a subsidiary that Air Canada sold to the plaintiff. *See Grossman*, 991 F.2d at 1379. The plaintiff argued that jurisdiction existed under the first clause of the commercial activity exception because both Air Canada and its subsidiary operated commercial airlines in the United States. *See id.* at 1382-83. While operating a commercial airline is undoubtedly a substantial contact, the Eighth Circuit concluded that the airlines' operations in the United States were irrelevant to the jurisdictional analysis because the plaintiff's claims were not "based upon" those operations. *See id.* at 1383. In other words, even operating a huge commercial enterprise, such as a commercial airline, in the United States is not enough to establish jurisdiction under the first clause of the commercial activity exception unless the plaintiff's claims are "based upon" those operations.

With this distinction in mind, the futility of Plaintiff's proposed amendments is obvious because none of his proposed amendments even remotely addresses his failure to satisfy the "based upon" requirement of the commercial activity exception. And, in any event, Plaintiff's proposed allegations concerning preliminary negotiations in the United States are still insufficient as a matter of law to constitute a substantial contact with the United States.

1.     Plaintiff's Claims Are Not "Based Upon" Any
Alleged Commercial Activity in the United States

The Supreme Court's recent decision in *OBB* reaffirmed its strict interpretation of the

commercial activity exception's "based upon" requirement.  *See OBB*, 2015 U.S. LEXIS 7670, at

*13.  The Court held that the "based upon" requirement is only satisfied where the foreign

sovereign's alleged conduct in the United States constitutes the "gravamen" of the plaintiff's

action *i.e.* the acts that actually injured the plaintiff.  *See id.* at *13.  Where the plaintiff is

harmed by acts that occurred outside of the United States, the plaintiff's cause of action cannot

be "based upon" commercial activities carried on in the United States as required under the first

clause of the commercial activity exception.  *See id.*  And, even prior to *OBB*, the Supreme Court

in *Nelson* held that a claim is not "based upon" a commercial activity merely because that

commercial activity led to conduct that eventually caused harm to the plaintiff.  *See Nelson*, 507

U.S. at 358 ("[w]hile these activities led to the conduct that eventually injured the [plaintiff],

they are not the basis for [plaintiff's] suit.").

Here, Plaintiff's proposed amendments would not change the gravamen of the Amended

Complaint, which is that Plaintiff traveled to *Venezuela* and allegedly left the Collection in the

Republic's possession *in Venezuela* upon an alleged implied agreement made *in Venezuela* that

the Republic would purchase or return the Collection *in Venezuela* and that the Republic

supposedly did not return it to him *in Venezuela*.  Thus, Plaintiff's action, like the suit in *OBB*, is

"based upon" alleged acts that occurred outside the United States.  And, at most, Plaintiff's

proposed allegations would merely add that the preliminary meetings and communications in the

United States were an entrée to further negotiations for the sale of the Collection in Venezuela –

negotiations which never culminated in a contract for the sale of the Collection.[5]  However, such allegations would be insufficient under *Nelson*.  *See Nelson*, 507 U.S. at 358.  Accordingly, under *OBB* and *Nelson*, Plaintiff cannot satisfy the "based upon" requirement of the commercial activity exception and therefore this case must be dismissed with prejudice for lack of jurisdiction under the FSIA.

2.      Plaintiff's Proposed Allegations Are Still Insufficient
<u>to Satisfy the Substantial Contact Requirement</u>

Here, Plaintiff's supplemental allegations do not identify any new commercial activities in the United States by the Republic.  Rather, Plaintiff's supplemental allegations merely add new details to clarify the allegations in the Amended Complaint that the parties supposedly engaged in preliminary negotiations in Florida and exchanged communications in the course of those preliminary negotiations.  Plaintiff's supplemental allegations also make clear that after three days (and nine total hours) of preliminary negotiations, Plaintiff and the Venezuelan officials traveled to Venezuela and allegedly continued negotiating a sale of the Collection to the Republic for an additional three weeks.

However, as explained in the Republic's Motion to Dismiss (D.E. 112 at pp. 9-10; D.E.119 at pp. 3-4.), it is well established that preliminary meetings in the United States and related correspondence do not constitute a "substantial contact" with the United States under the FSIA.  *See Schoeps v. Bayern*, 611 F. App'x 32, 34 (2d Cir. 2015) (preliminary meeting in New York between a German official and an art dealer and related correspondence concerning a potential sale of a painting did not satisfy the substantial contact requirement); *Odhiambo v. Republic of Kenya*, 764 F.3d 31, 36 (D.C. Cir. 2014) ("our cases have held that mere business

---

[5] Plaintiff acknowledges, that despite these negotiations, the parties never actually reached an agreement for the sale of the Collection.  (Am. Compl. ¶ 23.)

meetings in the United States do not suffice to create substantial contact with the United States"); *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1133 (9th Cir. 2012) ("a foreign nation's contract negotiations, including a meeting, and telephone and wire communications … are insufficiently significant" to constitute substantial contact); *Grossman*, 991 F.2d at 1383-84 (negotiations, including a meeting in Minnesota, delivery of a letter of intent, and the sending of telephone and wire communications into the United States, did not constitute substantial contact); *see also Maritime Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094, 1109 (D.C. Cir. 1982) ("We cannot conclude that these two isolated meetings amounted to more than 'transitory' and 'insubstantial' contact for purposes of the [FSIA], especially given their uncertain scope and importance.") (internal citations omitted).

**B.    Plaintiff's Proposed Allegations Cannot Establish the Applicability of the Second Clause of the Commercial Activity Exception**

The second clause of the commercial activity exception provides an exception to immunity where the plaintiff's claims are "based … upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." 28 U.S.C. § 1605(a)(2). The second clause only applies where the act performed in the United States is in and of itself sufficient to form the basis of the plaintiff's cause of action. *See Odhiambo*, 764 F.3d at 37-38; *Grossman*, 991 F.2d at 1384. The legislative history of the FSIA is explicit on this point. *See* H.R. Rep. No. 94-1487, at 19 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617-18. However, none of the Plaintiff's new allegations are in and of themselves sufficient to form the basis of the Plaintiff's cause of action. Indeed, Plaintiff cannot argue that his claim is predicated solely on the newly alleged meeting at the Marriott or the dinner in Orlando.

In addition, courts have interpreted the second clause as applying to *non-commercial* acts performed by the foreign state in the United States. *See Kensington Int'l, Ltd. v. Itoua*, 505 F.3d

147, 155 (2d Cir. 2007); *see also Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d

887, 892 n.5 (5th Cir. 1998). However, Plaintiff himself characterizes his new allegations as

"show[ing] the particulars of the defendant's 'extensive *commercial* activities' in the United

States." Because Plaintiff's proposed allegations concern allegedly commercial acts, they do not

alter the inescapable conclusion that the second clause of the commercial activity exception does

not apply.

      C.    **Plaintiff's Proposed Allegations Do Not Alter the Conclusion that the Third Clause of the Commercial Activity Exception Does Not Apply**

The third clause of the commercial activity exception applies where the claim is based

upon an act outside of the United States related to the sovereign defendant's commercial activity

abroad which has a "direct effect" in the United States. 28 U.S.C. § 1605(a)(2). Plaintiff's

proposed allegations concern the Republic's supposed preliminary negotiations *in the United

States*. They do not identify any new commercial activities abroad let alone any direct effects in

the United States that were caused by such activities. Thus, Plaintiff's proposed allegations have

no bearing on the analysis of the third clause of the commercial activity exception. And for all

the reasons stated in the Republic's Motion to Dismiss, the third clause of the commercial

activity exception does not apply.[6]

## II.    <u>The Amended Complaint Must Be Dismissed for Lack of Personal Jurisdiction</u>

Plaintiff's failure to establish an exception to sovereign immunity under the FSIA alone

mandates dismissal of this case for lack of personal jurisdiction. *See* 28 U.S.C. § 1330(b). In

addition, effective service of process is an explicit component of personal jurisdiction under the

---

[6] In his opposition to the Motion to Dismiss, Plaintiff argued that the Republic's alleged failure to return the Collection caused a direct effect in the United States. While this argument is wrong for all the reasons stated in the Republic's reply in support of the Motion to Dismiss, Plaintiff's new allegations make clear that any alleged implied oral obligation to return the Collection is unenforceable as violating the statute of frauds. *See infra* Section III.C. Plaintiff cannot predicate jurisdiction on an unenforceable implied oral agreement.

FSIA.  *See id.*  Here, Plaintiff concedes that the Republic was not properly served in accordance

with the FSIA.  (D.E. 130; Hrg. Tr. 37:1-4.)  Instead, Plaintiff argues that the Republic waived

sufficiency of process and that actual notice of the suit is sufficient under the FSIA.  (Pl. Supp.

Br. at pp. 5-6.)  In support of this argument, Plaintiff relies on *Harris Corp. v. Nat'l Iranian

Radio & Television*, 691 F.2d 1344 (11th Cir. 1982) and *Potts v. Atlantic S.E. Airlines, Inc.*, 158

F.R.D. 693 (N.D. Ga. 1994).  Both of these cases held that actual notice is sufficient to satisfy

the service requirements of 28 U.S.C. § 1608(b), which applies only to agencies and

instrumentalities of foreign states.  *See Harris*, 691 F.2d at 1352 and n.16; *Potts*, 158 F.R.D. at

697-98.  However, Section 1608(b) does not apply where, as here, the foreign sovereign

defendant is the foreign state itself.

      Where, as here, the plaintiff sues the foreign state itself, service of process must be made

in accordance with 28 U.S.C. § 1608(a), which "sets forth the *exclusive procedures* for service

on a foreign state."  *Magness v. Russian Federation*, 247 F.3d 609, 615 (5th Cir. 2001)

(emphasis in original).  Unlike service upon agencies and instrumentalities under Section

1608(b), Section 1608(a) requires strict compliance and actual notice is not sufficient.  *See Fly

Brazil Grp., Inc. v. Gov't of Gabon, Africa*, 709 F. Supp. 2d 1274, 1281 (S.D. Fla. 2010).  As this

Court has previously acknowledged, the distinction between service of foreign states under

Section 1608(a), which requires strict compliance, and service of agencies and instrumentalities

under Section 1608(b), pursuant to which actual notice is sufficient, is rooted in the legislative

history of the FSIA and is supported by well-reasoned policy considerations.  *See id.* (citing H.R.

Rep. No. 1487 at 24, *reprinted in* 1976 U.S.C.C.A.N. at 6623 and *Transaero, Inc. v. La Fuerza

Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994)).  Therefore, *Harris* and *Potts* do not apply,

and Plaintiff is simply wrong on the law in arguing that the Republic, a foreign state, waived service of process and that actual notice is sufficient.[7]

### III.  Plaintiff's Proposed Amendments Would Still Fail to State a Claim

#### A.  Plaintiff's Unjust Enrichment Claims Are Time Barred

In response to the Republic's Motion to Dismiss, Plaintiff argued that the Amended Complaint asserts claims for unjust enrichment and breach of an implied oral agreement.  Any unjust enrichment claim is time-barred under the applicable four-year statute of limitations.  Fla. Stat. § 95.11(3)(k).  Plaintiff's own Supplemental Brief acknowledges that a claim for unjust enrichment accrues on the date that the benefit was conferred on the defendant.  (Pl. Supp. Br. at 2 (citing *Merle Wood & Assoc. v. Trinity Yachts LLC*, 2011 WL 845825, at *6 (S.D. Fla. 2011)).  However, Plaintiff inexplicably argues that a benefit was not conferred to the Republic when the Plaintiff allegedly left the Collection in the Republic's possession on November 6, 2007.  (Pl. Supp. Br. at 2.)  Rather, Plaintiff argues that some unidentified benefit from possessing the Collection was not realized until many years later.  (*Id.*)

Plaintiff's argument is wrong on the law.  A claim for unjust enrichment accrues when the benefit is actually conferred and not when the defendant availed himself of the benefit.  *See Kaye v. Ingenio, Filiale de Loto-Quebec, Inc.*, No. 13-61687, 2014 WL 2215770, at *9 (S.D. Fla. May 29, 2014) (benefit was conferred when the property was assigned to the defendant).

In support of this argument, Plaintiff cites the district court's decision in *Merle Wood* which is neither good law nor applicable to the facts in this case.  In *Merle Wood*, the plaintiffs were yacht brokers who alleged that they were entitled to commissions for introducing third parties buyers to the defendant yacht manufacturer.  *Merle Wood*, 2011 WL 845825, at *1.  The

---

[7] Section 1608(a) provides for four separate procedures for serving a foreign state.  Here, Plaintiff only attempted service pursuant to the Hague Convention under Section 1608(a)(2).

district court found that, for purposes of the statute of limitations, the plaintiffs' unjust

enrichment claims accrued when the manufacturer received payment for the yachts and not when

the plaintiffs made their introductions.  *See id.* at \*6.  However, the Eleventh Circuit disagreed

and concluded that the plaintiff's claims accrued when the introductions were made – *i.e.* when

the plaintiffs conferred a benefit on the defendant.  *See Merle Wood & Associates, Inc. v. Trinity*

*Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013).  The Eleventh Circuit therefore held that the

plaintiffs' claims were time-barred.  *See id.*  Thus, the Eleventh Circuit rejected the principle

relied on here by Plaintiff.

Moreover, the facts of *Merle Wood*, in which the plaintiff conferred an intangible benefit

upon the defendant, are readily distinguishable from the facts of this case where Plaintiff

allegedly conferred physical tangible property to the Republic.  In this case, there is simply no

room for debate as to when the alleged benefit was supposedly conferred upon the Republic.

According to the Amended Complaint, Plaintiff allegedly conferred the supposed benefit on the

Republic when it transferred possession of the Collection on or before November 6, 2007 –

nearly five years prior to filing the original complaint on October 12, 2012.  Thus, Plaintiff's

unjust enrichment claim is time-barred under the applicable four-year statute of limitations.

### B. Plaintiff's Claims for Breach of an Implied Oral Agreement Are Unenforceable as Violating the Statute of Frauds

Plaintiff's proposed amendments suggest that any implied oral agreement to return the

Collection to Plaintiff ran from at least November 6, 2007, when the Plaintiff left the Collection

in the Republic's possession, until after July 2010, when the Plaintiff sought the return of the

Collection.  In other words, any alleged oral agreement would have had a term of greater than

one-year.  Thus, Plaintiff's proposed allegations now confirm that any such agreement is

unenforceable as violating the statute of frauds.  *See* Fla. Stat. § 672.201.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint with prejudice.

Dated: December 18, 2015

Respectfully submitted,

**BILZIN SUMBERG BAENA
PRICE & AXELROD LLP**

By:  _/s/  Mitchell E. Widom_
Mitchell E. Widom
mwidom@bilzin.com
Lori P. Lustrin
llustrin@bilzin.com
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Telephone:  (305) 374-7580
Facsimile:  (305) 374-7593

– and –

Joseph D. Pizzurro (_pro hac vice_)
Robert B. Garcia (_pro hac vice_)
**CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
jpizzurro@curtis.com
robert.garcia@curtis.com

_Attorneys for Defendant Bolivarian
Republic of Venezuela_

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the

Court and served via CM/ECF electronic mail service on all counsel of record on the date hereof.


By: <u>*/s/ Mitchell E. Widom*</u>
Mitchell E. Widom

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

RICARDO DEVENGOECHEA,

    Plaintiff,                                Case No. 12-cv-23743-PCH/Otazo-Reyes

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,
A Foreign State,

    Defendant.

_____

**DEFENDANT'S OBJECTION TO REPORT AND RECOMMENDATION**

Dated: February 3, 2016                  **BILZIN SUMBERG BAENA**
                                      **PRICE & AXELROD LLP**
                                      Mitchell E. Widom
                                      Lori P. Lustrin
                                      1450 Brickell Avenue, Suite 2300
                                      Miami, Florida 33131-3456
                                      Telephone: (212) 696-6000
                                      Facsimile: (212) 697-1559
                                      mwidom@bilzin.com
                                      llustrin@bilzin.com

                                      – and –

                                      Joseph D. Pizzurro (*pro hac vice*)
                                      Robert B. Garcia (*pro hac vice*)
                                      Kevin A. Meehan (*pro hac vice*)
                                      **CURTIS, MALLET-PREVOST,**
                                      **COLT & MOSLE LLP**
                                      101 Park Avenue
                                      New York, New York 10178
                                      Telephone: (212) 696-6000
                                      Facsimile: (212) 697-1559
                                      jpizzurro@curtis.com
                                      robert.garcia@curtis.com
                                      kmeehan@curtis.com

                                      *Attorneys for Defendant Bolivarian Republic*
                                      *of Venezuela*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ..................................................................................................... 2

    A.  Procedural History ...................................................................................... 2

    B.  Plaintiff's Proposed Supplemental Allegations .......................................... 4

    C.  The Report Effectively Denies the Republic's Sovereign Immunity .......... 6

ARGUMENT ......................................................................................................... 7

I.  Plaintiff's Proposed Allegations Are Insufficient to Establish Subject  Matter Jurisdiction under the FSIA's Commercial Activity Exception ................................................ 7

    A.  The First Clause of the Commercial Activity Exception Does Not Apply ................ 7

        1.  Plaintiff's Proposed Allegations Are Still Insufficient to Satisfy the Substantial Contact Requirement ................................................ 7

        2.  Plaintiff's Claims Are Not "Based Upon" Any  Alleged Commercial Activity in the United States ..................................................................... 11

    B.  The Second Clause of the Commercial Activity Exception Does Not Apply ........... 13

II.  Plaintiff Fails to State a Claim ....................................................................... 14

    A.  Plaintiff's Unjust Enrichment Claim Is Time Barred ............................... 14

    B.  Plaintiff's Claim for Breach of an Implied Oral Agreement  Is Unenforceable as Violating the Statute of Frauds ..................................................................... 15

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Butler v. Sukhoi Co.,*
  579 F.3d 1307 (11th Cir. 2009) ....................................................................... 7

*General Elec. Capital Corp. v. Grossman,*
  991 F.2d 1376 (8th Cir. 1993) ............................................................... 8, 10, 13

*Gerding v. Republic of France,*
  943 F.2d 521 (4th Cir. 1991) .......................................................................... 8

*Kaye v. Ingenio, Filiale de Loto-Quebec, Inc.,*
  No. 13-61687, 2014 WL 2215770 (S.D. Fla. May 29, 2014) ................................. 14

*Kensington Int'l, Ltd. v. Itoua,*
  505 F.3d 147 (2d Cir. 2007) ........................................................................... 13

*Maritime Int'l Nominees Establishment v. Republic of Guinea,*
  693 F.2d 1094 (D.C. Cir. 1982) ........................................................................ 8

*Morgan Equip. Co. v. Novokrivorogsky State Ore Mining & Processing Enterprise,*
  57 F. Supp. 2d 863 (N.D. Cal. 1998) ................................................................. 8

*OBB Personenverkehr AG v. Sachs ("OBB"),*
  136 S. Ct. 390 (2015) ............................................................................... 2, 11

*Odhiambo v. Republic of Kenya,*
  764 F.3d 31 (D.C. Cir. 2014) ............................................................. 8, 10, 11, 13

*Saudi Arabia v. Nelson,*
  507 U.S. 349 (1993) ................................................................................ 12, 13

*Schoeps v. Bayern,*
  27 F. Supp. 3d 540 (S.D.N.Y. 2014) ................................................................ 10

*Schoeps v. Bayern,*
  611 F. App'x 32 (2d Cir. 2015) .............................................................. 8, 9, 10

*Soudavar v. Islamic Republic of Iran,*
  186 F.3d 671 (5th Cir. 1999) ........................................................................... 8

*Terenkian v. Republic of Iraq,*
  694 F.3d 1122 (9th Cir. 2012) ................................................................ 8, 10, 11

*Zedan v. Kingdom of Saudi Arabia,*
  849 F.2d 1511 (D.C. Cir. 1988) .................................................................. 8, 13

**Statutes**

28 U.S.C. § 1603 ............................................................................... 6, 7, 10

28 U.S.C. § 1605 ................................................................................. passim

**Federal Rules**

Fed. R. Civ. P. 15 ........................................................................................................... 3

**State Statutes**

Fla. Stat. § 672.201 ...................................................................................................... 15

Fla. Stat. § 725.01 ........................................................................................................ 15

Fla. Stat. § 95.11(3)(k) ................................................................................................ 14

Pursuant to Local Rule 4(b), Defendant Bolivarian Republic of Venezuela (the "<u>Republic</u>") submits this objection to the Report and Recommendation, entered on January 20, 2016 (D.E. 137) (the "<u>Report</u>").

## PRELIMINARY STATEMENT

The Report concludes that the Plaintiff's proposed amendments to its Amended Complaint are sufficient to establish jurisdiction in this action against the Republic under the Foreign Sovereign Immunity Act (the "<u>FSIA</u>") pursuant to the FSIA's commercial activity exception, 28 U.S.C. § 1605(a)(2).  Adopting the Report would require this Court to disregard well established law on several aspects of the FSIA and to set new law on each of these issues.

The Report concludes that Plaintiff has met his burden of establishing subject matter jurisdiction under the first clause of the FSIA's commercial activity exception.  This conclusion is contrary to the law in at least two critical respects.  First, the Report concludes that the Plaintiff's three alleged meetings with Venezuelan officials in Florida to discuss a potential sale of the Plaintiff's collection of historical artifacts (the "<u>Collection</u>") constitute substantial contact with the United States.  The Report disregards that fact that the vast majority of the alleged negotiations occurred in Venezuela, not the United States, and that every Court of Appeals to consider the issue has concluded that preliminary negotiations, including meetings, in the United States do not constitute substantial contact under the first clause of the commercial activity exception.  The Report cites no authority to the contrary.  In fact, all of the cases cited by the Report hold that preliminary negotiations do not constitute substantial contact.

Second, the Report concludes that the Plaintiff's suit is "based upon" the three preliminary meetings in Florida because those meetings led to the Plaintiff's agreement to travel to *Venezuela* to pursue further negotiations with the Republic in *Venezuela*.  However, the

Supreme Court's recent decision in *OBB Personenverkehr AG v. Sachs ("OBB")*, 136 S. Ct. 390 (2015) holds that a plaintiff's claim is "based upon" a commercial activity where that activity constitutes the gravamen of the plaintiff's suit.  Here, the Plaintiff does not allege that any actionable conduct occurred in the United States.  Rather, he claims that the Republic allegedly breached an implied oral agreement that was made *in Venezuela* and that the Republic was unjustly enriched when possession of the Collection was allegedly conferred upon the Republic *in Venezuela*.  Thus, the gravamen of the Plaintiff's suit lies in Venezuela, not the United States.

The Report also concludes that the rarely invoked second clause of the commercial activity exception applies because the Republic asked the Plaintiff to replace his expired United States passport.  However, the second clause only applies where the foreign sovereign's alleged act in the United States is in-and-of-itself sufficient to form the basis of the plaintiff's cause of action.  The Report does not even mention this requirement.  The Republic's alleged request that the Plaintiff obtain a passport is completely irrelevant to the Plaintiff's claims for breach of an implied oral agreement and unjust enrichment and it certainly does not in-and-of-itself form the basis of either of those claims.

Finally, the Report improperly concludes that the Plaintiff's claims are not time-barred or barred by the statute of frauds because it finds the record on these issues unclear.

## BACKGROUND

### A.     Procedural History

Plaintiff filed his original complaint on October 15, 2012 alleging that the Republic had wrongfully taken his Collection in violation of international law.  (Compl. 1 ¶ 4.)  Plaintiff now concedes that he never completed service of the summons and complaint in accordance with the FSIA.  Nevertheless, the Plaintiff obtained a default judgment against the Republic, again without complying with the strict requirements of the FSIA.  (D.E. 26.)  Plaintiff thereafter

sought to execute upon the default judgment by attempting to attach the Republic's diplomatic assets in violation of the FSIA and the Vienna Convention on Diplomatic Relations, 23 U.S.T. 3227, T.I.A.S. 7502 (April 18, 1961).  (D.E. 30 and 31.)  After its diplomatic accounts were improperly frozen, the Republic appeared in this case and successfully moved to dissolve the writ of garnishment.[1]  (D.E. 50.)

On February 12, 2015, the Republic moved to vacate the default judgment and dismiss this case for lack of jurisdiction under the FSIA.  (D.E. 76.)  Plaintiff never responded to that motion.  Instead, Plaintiff sought and received five extensions of the deadline for responding.  Plaintiff then sought a *de facto* sixth extension on June 11, 2015 by unilaterally filing a Stipulation and Order (the "Stipulation") that requested the Court to vacate the default judgment entered against the Republic, deny the Republic's motion as moot and direct the Republic to file another motion to dismiss the Complaint.  (D.E. 99-100.)  Plaintiff failed to apprise the Court that Plaintiff had not informed the Republic of, or obtained its consent to, the Stipulation.  In fact, counsel for the Republic previously rejected a similar stipulation proposed by Plaintiff's counsel.

As a result of Plaintiff's antics, the Republic was forced to submit an "amended" motion to dismiss.  (D.E. 102.)  Plaintiff never responded to that motion either.  Instead, without seeking leave of this Court as required under Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiff filed its Amended Complaint on July 16, 2015 – more than five months after the Republic filed its original motion to dismiss.  (D.E. 106.)  Plaintiff's Amended Complaint completely altered his theory of the case.  Plaintiff abandoned his assertion of jurisdiction under the FSIA's expropriation exception and relied solely on the commercial activity exception.  Plaintiff also

---

[1] The United States government also appeared in this case and filed a Statement of Interest in support of the Republic's motion to dissolve the writ of garnishment.  (D.E. 57.)

recast his takings claims as a breach of an implied oral agreement to return the Collection.  On

August 14, 2015, the Republic filed a third motion to dismiss this case for lack of jurisdiction

under the FSIA.  (D.E. 112.)  Thereafter, the Court referred this case to Magistrate Judge Otazo-

Reyes.  (D.E. 114.)

On December 3, 2015, Magistrate Judge Otazo-Reyes held oral argument on the motion

to dismiss (the "Hearing").  During the Hearing, counsel for Plaintiff argued that Plaintiff should

be permitted to file yet another amended complaint.  (Hrg. Tr. at 32:18-33:14.)  At the

conclusion of the Hearing, Magistrate Judge Otazo-Reyes directed Plaintiff to submit an affidavit

containing any additional facts that would be included in a further amendment to his complaint

and ordered supplemental briefing from the parties.  (*Id.* at 50:10-51:6.)

### B.    Plaintiff's Proposed Supplemental Allegations

On December 11, 2015, Plaintiff filed a Declaration providing additional allegations that

he would include in third complaint against the Republic.[2]  Taken together, the Amended

Complaint and the Plaintiff's Declaration allege as follows:

The Amended Complaint alleges that Plaintiff engaged in "extensive commercial

negotiations" with the Republic in Florida over the potential purchase of his Collection.  (Am.

Compl. ¶ 18.)  The Declaration alleges that these negotiations entailed nine hours of discussions

over the course of three days.  (Declaration ¶¶ 11-13, 22-23.)  Thereafter, Plaintiff allegedly

engaged in *three weeks* of negotiations in Venezuela.  (*Id.* ¶¶ 23, 28.)  No purchase agreement

was ever reached.  (Am. Compl. ¶ 23.)

At the conclusion of his preliminary meetings in Florida, Plaintiff alleges that a

Venezuelan official supposedly asked him to travel back to Venezuela with them and to bring his

---

[2] "Declaration" as used herein refers to the Declaration of Ricardo Devengoechea, dated December 11, 2015 (D.E. 135).

Collection with him.  (Declaration ¶ 13.)  Plaintiff informed the Venezuelan official that his United States passport had expired, and they then requested that he procure a new one on an expedited basis. (*Id.* at ¶ 14; Am. Compl. ¶ 7.)

At this point, Plaintiff's story takes another bizarre twist that is completely at odds with his prior allegations.  The Amended Complaint had alleged that Plaintiff received a letter from the Republic, dated October 15, 2007 (the "Letter") relating to the Republic's interest in purchasing the Collection.  (Am. Compl. ¶ 15.)  Plaintiff originally contended that he received the Letter prior to any meetings with Venezuelan officials, and that the Letter sought to initiate a meeting to negotiate a purchase of the Collection.  (*Id.* at ¶ 15-17.)  However, the English translation of the Letter, which is provided in full at paragraph 16 of the Amended Complaint, never mentions the Collection.  (*Id.* at ¶ 16.)  Plaintiff's Declaration now concedes that the Letter has nothing to do with the Collection.  (Declaration ¶ 16.)  Plaintiff instead now contends that he received the Letter *after* his alleged meetings and that the Republic provided him with the Letter in order to help the Plaintiff expedite the replacement of his expired United States passport.  (*Id.*)

The day after obtaining his new passport, Plaintiff alleges that he met with Venezuelan officials at the airport where negotiations for the purchase of the Collection continued for about an hour before Plaintiff and the Venezuelan officials left for Venezuela at approximately 12:15 a.m. on October 17, 2007.  (Declaration ¶¶ 22-23.)  Plaintiff alleges for the first time in his Declaration that he traveled to Venezuela with the Collection with an understanding and agreement that the parties would either reach an agreement on the purchase of the Collection or the Collection would be returned to him.  (Declaration ¶ 18.)  Significantly, however, Plaintiff does not allege that he ever relinquished possession of the Collection until three weeks later in Venezuela.  (Am. Compl. ¶ 22.)

As set forth above, Plaintiff concedes that the parties never reached an agreement for the purchase of the Collection. (*Id.* ¶ 23.) Instead, Plaintiff has maintained throughout this case that, prior to his departure from Venezuela on November 6, 2007, Plaintiff entrusted the Collection to the Republic and left it in Venezuela upon an implied oral agreement that, if the parties could not reach an agreement on the sale of the Collection, it would be returned to him. (Am. Compl. ¶ 22; Declaration ¶ 28; Compl. ¶ 20.) Plaintiff alleges that the Collection has not been returned to him in violation of that understanding. (Declaration ¶ 31.)

### C. The Report Effectively Denies the Republic's Sovereign Immunity

The Report concludes that, while the Amended Complaint must be dismissed for lack of subject matter jurisdiction under the FSIA, the Plaintiff should be permitted to file a third complaint because his proposed allegations are sufficient to establish jurisdiction under the first and second clauses of the FSIA's commercial activity exception.[3] (Report at pp. 1-2.)

With respect to the first clause, the Report states that the three alleged meetings between Plaintiff and a Venezuelan official in Florida satisfied the "substantial contact" requirement of 28 U.S.C. §§ 1603(e) and 1605(a)(2). (*Id.* at p. 12.) The Report also concludes that the Plaintiff's proposed allegations satisfied the "based upon" requirement of the first clause of the commercial activity exception. (*Id.* at p. 13.) Specifically, it found that the Plaintiff's claims are based upon the alleged meetings in Florida because those meetings led the Plaintiff to agree to travel to Venezuela to continue negotiations for an agreement on the purchase of the Collection. The Report does not cite any authority that supports its conclusions. (*Id.*)

The Report also concluded that subject matter jurisdiction exists under the second clause of the commercial activity exception because the Republic allegedly asked the Plaintiff to get a

---

[3] The Report concludes that Plaintiff's proposed additional allegations cannot satisfy the third clause of the commercial activity exception because Plaintiff cannot plead a "direct effect" in the United States under the Eleventh Circuit's negative activity test. (Report at pp. 14-15.)

United States Passport in order to travel to Venezuela. (*Id.* at p. 14.) The Report does not even mention, let alone analyze, the fact that Plaintiff's claims are not "based upon" this activity, as required by the second clause of Section 1605(a)(2). (*Id.*)

The Report further concludes that there is personal jurisdiction over the Republic despite the fact that it is undisputed that the Republic was never actually served in accordance with the FSIA. (Report at p. 16.) Finally, the Report concludes that the Plaintiff's claims are not barred by the statute of limitations or the statute of frauds. (*Id.* at pp. 17-18.)

## ARGUMENT

This Court must review the Report *de novo*. *See* Local Magistrate Rule 4(b); *see also Butler v. Sukhoi Co.*, 579 F.3d 1307, 1311-13 (11th Cir. 2009) (denial of a motion to dismiss under the FSIA is immediately appealable and reviewed *de novo* by the Court of Appeals).

**I.** **Plaintiff's Proposed Allegations Are Insufficient to Establish Subject Matter Jurisdiction under the FSIA's Commercial Activity Exception**

**A.** **The First Clause of the Commercial Activity Exception Does Not Apply**

The first clause of the commercial activity exception, 28 U.S.C. § 1605(a)(2), requires factual allegations showing: (1) that the defendant carried on commercial activity in the United States, which is defined in the FSIA as activity "having substantial contact with the United States," and (2) that the plaintiff's claims are actually "based upon" such commercial activity. 28 U.S.C. §§ 1603(e) and 1605(a)(2). Here, the Plaintiff's allegations cannot satisfy either requirement.

1. Plaintiff's Proposed Allegations Are Still Insufficient to Satisfy the Substantial Contact Requirement

It is well established that negotiations in the United States, including meetings in the United States, do not constitute "commercial activity carried on in the United States" as defeined

by the FSIA where, as here, the bulk of the negotiations occurred outside the United States. *See Schoeps v. Bayern*, 611 F. App'x 32, 34 (2d Cir. 2015); *Odhiambo v. Republic of Kenya*, 764 F.3d 31, 36 (D.C. Cir. 2014) ("our cases have held that mere business meetings in the United States do not suffice to create substantial contact with the United States"); *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1133 (9th Cir. 2012) (execution of a contract in the United States did not constitute substantial contact with the United States); *Soudavar v. Islamic Republic of Iran*, 186 F.3d 671, 673-74 (5th Cir. 1999) (organizing a meeting in New York to persuade businessmen to travel to Iran did not constitute substantial contact with the United States); *General Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1383-84 (8th Cir. 1993) (preliminary meeting in Minnesota was not a substantial contact); *Gerding v. Republic of France*, 943 F.2d 521, 527 (4th Cir. 1991) (defendant's attendance at a meeting in New Jersey was not a substantial contact with the United States); *Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511, 1513 (D.C. Cir. 1988) ("Nothing in the legislative history suggests, however, that Congress intended jurisdiction under the first clause to be based upon acts that are not themselves commercial transactions, but that are merely precursors to commercial transactions."); *Maritime Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094, 1109 (D.C. Cir. 1982) ("We cannot conclude that these two isolated meetings amounted to more than 'transitory' and 'insubstantial' contact for purposes of the [FSIA], especially given their uncertain scope and importance.") (internal citations omitted); *see also Morgan Equip. Co. v. Novokrivorogsky State Ore Mining & Processing Enterprise*, 57 F. Supp. 2d 863, 872 (N.D. Cal. 1998) (alleged negotiations and formal execution of a contract in San Francisco did not constitute substantial contact with the United States where the "core of negotiations took place abroad").

Plaintiff alleges that nine hours of talks occurred in Florida, but they merely preceded *three weeks* of negotiations in Venezuela.  Therefore, the alleged *nine hours* of preliminary meetings in the United States cannot, as a matter of well-established law, constitute substantial contact with the United States as required under the first clause of the FSIA's commercial activity exception.  Neither the Report nor Plaintiff cites any case law to the contrary.  In fact, all of the cases cited by the Report in its analysis of the substantial contact requirement held that preliminary meetings in the United States do not constitute substantial contact.  Nevertheless, the Report attempts to distinguish the overwhelming contrary authority based on inaccurate and narrow readings of these cases.

The Report's analysis of the substantial contact requirement rests largely on its attempt to distinguish the Second Circuit's recent holding in *Schoeps* that a meeting in New York between an art dealer and a government official did not constitute substantial contact where the agreement to purchase the painting at issue was reached in Europe.  (Report at p. 12.)  The Report concludes that *Schoeps* is distinguishable because the Second Circuit found that the government official "lacked even apparent authority to make a binding offer" and that the meeting "did not result in any kind of agreement for the purchase of *Madame Soler*, except perhaps a commitment to talk further."  (*See id.* quoting *Schoeps*, 611 F. App'x at 34.)  Of course, that is precisely the case here.  As in *Schoeps*, the meetings in Florida never resulted in a contract for the sale of the Collection and, in fact, resulted in no agreement at all "except perhaps a commitment to talk further."  *Schoeps*, 611 F. App'x at 34.

Furthermore, the Second Circuit's holding in *Schoeps* is not limited to cases in which the government official lacks authority to bind the foreign sovereign.  In fact, the language quoted by the Report is the Second Circuit's description the *district court's* of the factual findings.  And

the district court's decision in *Schoeps* makes clear that the issue of apparent authority was not critical to its holding. *See Schoeps v. Bayern*, 27 F. Supp. 3d 540, 545 (S.D.N.Y. 2014) ("And even if, contrary to the evidence, a bargain for *Madame Soler* had been vetted at the initial New York meeting, an individual preliminary meeting cannot and does not by itself constitute a commercial activity 'having substantial contact with the United States' under FSIA §§ 1605(a)(2) and 1603(e)."). Even if *Schoeps* could be so narrowly read, there are no allegations in this case that any Venezuelan official who met with the Plaintiff in Florida had any authority to extend a binding offer on behalf of the Republic. Far from distinguishing *Schoeps*, the Report actually makes clear that it stands on all fours with this case.

The Report also attempts to distinguish *Grossman*, *Terenkian* and *Odhiambo* on the grounds that these cases involved "mere business meetings," whereas Plaintiff alleges meetings that involved the examination of the Collection by Venezuelan officials and an invitation to bring the Collection to Venezuela for further examination and negotiation. (Report at p. 12 n.14.) If anything, the "mere business meetings" in those cases were more significant than the meetings alleged in the present case. For example, in *Terenkian*, the Ninth Circuit reversed the denial of the defendant's motion to dismiss under the FSIA, in part, because the defendant's execution of the contract at issue during a closing in New York did not constitute substantial contact with the United States where the bulk of the contract negotiations occurred abroad. *Terenkian,* 694 F.3d at 1136-37. In *Grossman*, the Eighth Circuit held that the alleged negotiation of the sale in the United States, including a meeting in Minnesota, the delivery of a letter of intent in Minnesota, telephone and wire communications in the United States and the delivery of some of the allegedly misleading financial statements in the United States, did not constitute substantial contact with the United States because most of the meetings occurred abroad. *See Grossman*,

991 F.2d at 1383-84.  In *Odhiambo*, the D.C. Circuit rejected the plaintiff's arguments that his meetings with Kenyan officials in the United States constituted substantial contact where the contract he was suing upon was made abroad.  *Odhiambo*, 764 F.3d at 36.

As in *Grossman*, *Terenkian* and *Odhiambo*,  Plaintiff is asserting a breach of contract claim and is attempting to establish jurisdiction under the FSIA by alleging meetings in the United States relating to the parties' negotiations.  And just like those cases, the bulk of the parties' negotiations allegedly occurred abroad.  Furthermore, in the present case the discussions in the United States did not lead to any agreement, much less one which forms that basis of Plaintiff's claims.  As a matter of law the nine hours of discussions in Florida do not constitute "commercial activity carried on in the United States" and therefore Plaintiff's case must be dismissed.

> 2.      Plaintiff's Claims Are Not "Based Upon" Any
> Alleged Commercial Activity in the United States

The Supreme Court's recent decision in *OBB* reaffirmed its strict interpretation of the commercial activity exception's "based upon" requirement.  *See OBB*, 136 S. Ct. at 395-96.  The Court held that the "based upon" requirement is only satisfied where the foreign sovereign's alleged conduct in the United States constitutes the "gravamen" of the plaintiff's lawsuit.  *See id.* at 396.  The Court explained that courts should not focus on the specific cause of action asserted in the complaint because such an "approach would allow plaintiffs to evade the [FSIA's] restrictions through artful pleading."  *Id.*  Instead, courts must "zero[] in on the core of [the plaintiff's] suit: the [ ] sovereign [defendant's] acts that actually injured [the plaintiff]."  *Id.*

Here, the gravamen of the Plaintiff's lawsuit is, and has always been, that the Plaintiff traveled to *Venezuela* and, while *in Venezuela*, entrusted the Collection to the Republic upon an alleged implied agreement made *in Venezuela* that the Republic would purchase or return the

Collection *in Venezuela*. The language of paragraphs 21 and 22 of the Amended Complaint make this clear:

> 21. After returning to Venezuela, plaintiff remained in Venezuela until November 6, 2007 when he permanently returned to Florida by private jet, again provided by defendant.
>
> 22. At the request of defendant VENEZUELA, plaintiff entrusted the Devengoechea Collection to it and left the collection in Venezuela upon plaintiff's return to the United States, hoping to conclude negotiations for defendant's purchase of the collection, subject to its agreed return to plaintiff upon his request absent a consummated purchase agreement and completion of defendant's examination.

(Am. Compl. ¶¶ 21-22.) There is no allegation that the Plaintiff agreed to transfer possession of the Collection to the Republic in the United States. To the contrary, the Plaintiff's allegations make clear that he entrusted the Collection to the Republic *in Venezuela* upon an alleged implied oral agreement made *in Venezuela* that the Republic would either purchase the Collection or return it to the Plaintiff. Thus, contrary to the conclusion in the Report, Plaintiff's allegations make clear that the gravamen of the Plaintiff's suit lies in Venezuela, not the United States.

Nevertheless, the Report concludes that:

> [T]he gravamen of the suit is Venezuela's negotiations with Devengoechea in the United States to purchase the Bolivar Collection, as a result of which Devengoechea agreed to travel to Venezuela and bring the collection there for examination, testing and cataloging, after which either an agreement would be reached on the purchase amount or the collection would be returned to Devengoechea.

(Report at 13.) The Report's conclusion that Plaintiff's suit is "based upon" the alleged preliminary meetings in Florida because they led the Plaintiff to take his Collection to Venezuela is in direct conflict with the Supreme Court's holding in *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993). In *Nelson*, the plaintiff alleged that: the foreign sovereign defendant allegedly solicited the employment of the plaintiff in the United States; the plaintiff's employment agreement was

executed in the United States; and the plaintiff participated in the foreign sovereign's orientation and training programs in the United States. *See id.* at 352. The Court held that: "[w]hile these activities led to the conduct that eventually injured the [plaintiff], *they are not the basis* for the [plaintiff's] suit." *Id.* at 358 (emphasis added). Here, the Report concludes that the preliminary meetings in Florida resulted in the Plaintiff's traveling to Venezuela with the Collection. This, in turn, allegedly resulted in the parties reaching an agreement in Venezuela that the Republic supposedly breached years later in Venezuela. Thus, like the activities in *Nelson*, the alleged preliminary meetings in Florida merely led to conduct in Venezuela that led to further conduct in Venezuela that resulted in the purported breach of the alleged implied oral agreement made in Venezuela. Such conduct is far too attenuated to be the basis of Plaintiff's claims as required by Section 1605(a)(2).

### B.   The Second Clause of the Commercial Activity Exception Does Not Apply

It is well established that the second clause of the commercial activity exception applies where the foreign sovereign defendant's alleged non-commercial act in the United States is in-and-of-itself sufficient to form the basis of the plaintiff's cause of action. *See Odhiambo*, 764 F.3d at 37-38; *Grossman*, 991 F.2d at 1384; *Zedan,* 849 F.2d at 1514; *see also Kensington Int'l, Ltd. v. Itoua*, 505 F.3d 147, 157 (2d Cir. 2007) (holding that the "act" under the second clause must be non-commercial). The legislative history of the FSIA is explicit on this point. *See* H.R. Rep. No. 94-1487, at 19 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617-18. As the D.C. Circuit recently stated: "[T]o the degree that the text leaves any ambiguity, the legislative history is 'crystal clear' that clause two's reference to acts 'performed in the United States …' is 'limited to those' acts 'which in and of themselves are sufficient to form the basis of a cause of action.'" *Odhiambo*, 764 F.3d at 37-38 (quoting H.R. Rep. No. 94-1487, at 19). Here, the

Report never even mentions, let alone analyzes, this requirement. This failure alone is fatal to the Report's analysis of the second clause of the commercial activity exception.

The Report concludes that the second clause of the commercial activity exception applies because the Republic allegedly performed the "non-commercial" act of asking the Plaintiff to get a United States Passport in order to travel to Venezuela. (Report at p. 14.) However, the Republic's alleged assistance in helping the Plaintiff obtain an expedited United States passport has nothing to do with, much less sufficient in-and-of-itself to form the basis of, the Plaintiff's claims for breach of an implied oral agreement and unjust enrichment.

## II.     **Plaintiff Fails to State a Claim**

### A.     **Plaintiff's Unjust Enrichment Claim Is Time Barred**

A claim for unjust enrichment is subject to a four-year statute of limitations. *See* Fla. Stat. § 95.11(3)(k). Here, Plaintiff allegedly left the Collection in the Republic's possession on November 6, 2007 – more than four years prior to the filing of the original complaint on October 15, 2012. Nevertheless, the Report concluded that Plaintiff's claim for unjust enrichment is not time-barred because it is unclear when the Republic retained the benefit of the Collection. However, a claim for unjust enrichment accrues when the benefit is actually conferred and not when the defendant availed himself of the benefit. *See Kaye v. Ingenio, Filiale de Loto-Quebec, Inc.*, No. 13-61687, 2014 WL 2215770, at *9 (S.D. Fla. May 29, 2014). Thus, Plaintiff's claim accrued when he entrusted the Collection to the Republic on November 6, 2007 – more than four years prior to the filing of the original complaint. Plaintiff's claim for unjust enrichment is therefore time-barred and must be dismissed with prejudice.

**B.** **Plaintiff's Claim for Breach of an Implied Oral Agreement**
   **Is Unenforceable as Violating the Statute of Frauds**

The Republic moved to dismiss the Plaintiff's claim for breach of an implied oral

agreement as barred by the statute of frauds.  The Report found a lack of clarity in the parties'

legal arguments and therefore concluded that statute of fraud should not be applied.  However, it

is perfectly clear that the statute of frauds prohibits claims to enforce oral contracts having a term

greater than one year. *See* Fla. Stat. §§ 672.201 and 725.01.  And the Declaration alleges that the

supposed implied oral agreement to return the Collection to Plaintiff ran from at least

November 6, 2007 until after July 2010, when the Plaintiff sought the return of the Collection.

In other words, any alleged oral agreement would have had a term of greater than one-year and is

therefore unenforceable under the statute of frauds.

## CONCLUSION

For the foregoing reasons, the Court should decline to adopt the Report and should

instead dismiss the Plaintiff's case with prejudice.

Dated:      February 3, 2016

Respectfully submitted,

**BILZIN SUMBERG BAENA
PRICE & AXELROD LLP**

By:  _/s/ Mitchell E. Widom_
Mitchell E. Widom
Lori P. Lustrin
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
mwidom@bilzin.com
llustrin@bilzin.com

– and –

Joseph D. Pizzurro (_pro hac vice_)
Robert B. Garcia (_pro hac vice_)
Kevin A. Meehan (_pro hac vice_)
**CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
jpizzurro@curtis.com
robert.garcia@curtis.com
kmeehan@curtis.com

_Attorneys for Defendant Bolivarian
Republic of Venezuela_

# EXHIBIT 4

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

RICARDO DEVENGOECHEA,

     Plaintiff,

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,
A Foreign State,

   Defendant.

Case No. 12-cv-23743-PCH/Otazo-Reyes

---

**DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

Dated:  March 25, 2016

**BILZIN SUMBERG BAENA
PRICE & AXELROD LLP**

Mitchell E. Widom
mwidom@bilzin.com
Lori P. Lustrin
llustrin@bilzin.com
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559

– and –

Joseph D. Pizzurro (*pro hac vice*)
jpizzurro@curtis.com
Kevin A. Meehan (*pro hac vice*)
kmeehan@curtis.com
**CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559

*Attorneys for Defendant Bolivarian Republic
of Venezuela*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 3

    A.    Procedural History ................................................................................ 3

    B.    Allegations in the Second Amended Complaint ........................................ 5

ARGUMENT ...................................................................................................... 7

    I.    The Second Amended Complaint Must Be Dismissed for  Lack of Subject Matter Jurisdiction under the FSIA ................................................................. 7

    A.    The First Clause of the Commercial Activity Exception Does Not Apply ................ 8

        1.    Plaintiff's Claims Are Not "Based Upon" Any  Alleged Commercial Activity in the United States ................................................. 8

        2.    The Allegations in the SAC Are Insufficient to Satisfy the Substantial Contact Requirement ............................................................... 12

    B.    The Second Clause of the Commercial Activity Exception Does Not Apply ........... 15

    C.    The Third Clause of the Commercial Activity Exception Does Not Apply .............. 16

    II.    Plaintiff Impermissibly Attempts to Plead Around the Requirements of the FSIA's Expropriation Exception ................................................................ 17

    III.    The Amended Complaint Must Be Dismissed for Lack of Personal Jurisdiction ......... 19

    IV.    Plaintiff's Claims Must Be Dismissed as Time-Barred ................................. 19

    CONCLUSION ................................................................................... 21

# Table of Authorities

**Page**

**Cases**

*Araya-Solorzano v. Gov't of Republic of Nicaragua*,
   562 F. App'x 901 (11th Cir. 2014) ................................................................. 16, 17

*Argentine Republic v. Amerada Hess Shipping Corp.*,
   488 U.S. 428 (1989) ......................................................................................... 7

*Beg v. Islamic Republic of Pakistan*,
   353 F.3d 1323 (11th Cir. 2003) .................................................................... 18

*Bradley v. Chiron Corp.*,
   136 F.3d 1317 (Fed. Cir. 1998) ................................................................... 10

*Colliton v. Cravath, Swaine & Moore LLP*,
   No. 08 CIV 0400 (NRB), 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008) ............... 11

*De Sanchez v. Banco Central de Nicaragua*,
   770 F.2d 1385 (5th Cir. 1985) ..................................................................... 18

*Dominican Energy Ltd. v. Dominican Republic*,
   903 F. Supp. 1507 (M.D. Fla. 1995) ............................................................ 17

*Forzley v. AVCO Corp. Elecs. Div.*,
   826 F.2d 974 (11th Cir. 1987) ..................................................................... 19

*Fostano v. Pioneer Credit Recovery, Inc.*,
   No. 13-80511, 2013 WL 6002218 (S.D. Fla. Nov. 12, 2013) ...................................... 4

*Garb v. Republic of Poland*,
   440 F.3d 579 (2d Cir. 2006) ........................................................................ 18

*General Elec. Capital Corp. v. Grossman*,
   991 F.2d 1376 (8th Cir. 1993) ............................................................... 13, 15

*Gerding v. Republic of France*,
   943 F.2d 521 (4th Cir. 1991) ...................................................................... 13

*Guevara v. Republic of Cuba*,
   608 F.3d 1297 (11th Cir. 2010) .................................................................... 17

*Hayes v. District of Columbia*,
   275 F.R.D. 343 (D.D.C. 2011) ....................................................................... 4

*Kaye v. Ingenio, Filiale de Loto-Quebec, Inc.*,
   No. 13-61687, 2014 WL 2215770 (S.D. Fla. May 29, 2014) .................................. 20

*Kensington Int'l, Ltd. v. Itoua*,
   505 F.3d 147 (2d Cir. 2007) .................................................................. 15, 16

*Maritime Int'l Nominees Establishment v. Republic of Guinea*,
   693 F.2d 1094 (D.C. Cir. 1982) ................................................................... 13

*Mickel Drilling Partners ex rel. Mickel v. Cabot Oil & Gas Corp.*,
    No. 3:CV-11-0061, 2012 WL 4953081 (M.D. Pa. Oct. 16, 2012) .......................................... 10

*Morgan Distrib. Co. v. Unidynamic Corp.*,
    868 F.2d 992 (8th Cir. 1989) ................................................................................................. 19

*Morgan Equip. Co. v. Novokrivorogsky State Ore Mining & Processing Enterprise*,
    57 F. Supp. 2d 863 (N.D. Cal. 1998) ............................................................................. 14, 15

*OBB Personenverkehr AG v. Sachs ("OBB")*,
    136 S. Ct. 390 (2015) .................................................................................................. passim

*Odhiambo v. Republic of Kenya*,
    764 F.3d 31 (D.C. Cir. 2014) ................................................................................. 11, 12, 15

*Palm Beach Strategic Income, LP v. Salzman*,
    No. 10–CV–261, 2011 WL 1655575 (E.D.N.Y. May 2, 2011) ............................................ 10

*Republic of Argentina v. Weltover, Inc.*,
    504 U.S. 607 (1992) ............................................................................................................. 16

*Samco Global Arms, Inc. v. Arita*,
    395 F.3d 1212 (11th Cir. 2005) ........................................................................................... 17

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993) ........................................................................................... 8, 11, 15, 18

*Schoeps v. Bayern*,
    27 F. Supp. 3d 540 (S.D.N.Y. 2014) ................................................................................... 13

*Schoeps v. Bayern*,
    611 F. App'x 32 (2d Cir. 2015) ..................................................................................... 12, 13

*Soudavar v. Islamic Republic of Iran*,
    186 F.3d 671 (5th Cir. 1999) ............................................................................................... 13

*Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1132-33 (9th Cir. 2012)................... 8, 12, 14, 15

*Zedan v. Kingdom of Saudi Arabia*,
    849 F.2d 1511 (D.C. Cir. 1988) .......................................................................................... 12

**Statutes**

28 U.S.C. § 1330 ............................................................................................................. 1, 8, 19

28 U.S.C. § 1602 ....................................................................................................................... 1

28 U.S.C. § 1603(e) ................................................................................................................. 8

28 U.S.C. § 1604 ....................................................................................................................... 8

28 U.S.C. § 1605(a)(2) ................................................................................................. 5, 8, 15, 16

28 U.S.C. § 1605(a)(3) ................................................................................................... 10, 18

28 U.S.C. § 1610 ....................................................................................................................... 3

**Federal Rules**

FED. R. CIV. P. 12(b)(1) ................................................................. 1

FED. R. CIV. P. 12(b)(2) ............................................................ 1, 19

FED. R. CIV. P. 12(b)(6) ................................................................. 1

FED. R. CIV. P. 15(a)(1)(B) ............................................................ 4

FED. R. CIV. P. 15(c) ............................................................... 19, 20

**State Statutes**

Fla. Stat. § 672.201 ..................................................................... 20

Fla. Stat. § 95.11(3)(k) ................................................................ 19

**Legislative History**

H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 ....................................... 16

Defendant Bolivarian Republic of Venezuela (the "Republic") submits this motion to dismiss the Second Amended Complaint (the "SAC") pursuant to Rules 12(b)(1), (2) and (6) of the Federal Rules of Civil Procedure for lack of subject matter and personal jurisdiction under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330 and 1602, *et seq*. (the "FSIA") and for failure to state a claim upon which relief may be granted. The Republic respectfully requests oral argument on this motion.

## PRELIMINARY STATEMENT

The Republic is indisputably a foreign state under the FSIA and is therefore presumptively immune from the jurisdiction of this Court. Plaintiff has the burden of showing the applicability of an exception to immunity in order to establish subject matter jurisdiction. Plaintiff is now on his third attempt to establish an exception to FSIA immunity and, like his prior complaints, the SAC is woefully deficient to establish the applicability of any of the three clauses of the FSIA's commercial activity exception to immunity. This Court must therefore dismiss this case with prejudice.

The first clause of the commercial activity exception is inapplicable because Plaintiff's action is not "based upon" any "commercial activity carried on in the United States" by the Republic. The Supreme Court's recent decision in *OBB Personenverkehr AG v. Sachs ("OBB")*, 136 S. Ct. 390 (2015) holds that a plaintiff's claim is "based upon" a commercial activity where that activity constitutes the gravamen of the plaintiff's suit. Here, the gravamen of the Plaintiff's lawsuit is that he entrusted his collection of historical artifacts (the "Collection") to the Republic *in Venezuela* and that the Republic subsequently refused to return the Collection or pay for it – acts that allegedly occurred in *Venezuela* not the United States. Because Plaintiff's action is

based upon acts that occurred abroad, the first clause of the commercial activity exception does not apply.

Moreover, the Republic's alleged commercial activities in the United States consist of a total of nine hours of preliminary meetings in Florida that were followed by a month of negotiations in *Venezuela.* It is well established that preliminary meetings in the United States do not constitute the substantial contact with the United States required under the first clause of the commercial activity exception where the bulk of negotiations occurred abroad. Indeed, every single court to consider this issue has held that preliminary negotiations in the United States are insufficient to constitute substantial contact with the United States. This Court should follow the well-reasoned decisions of the Second Circuit, Fourth Circuit, Fifth Circuit, Eighth Circuit, Ninth Circuit and D.C. Circuit that have all held that preliminary negotiations in the United States, such as the meetings alleged in the SAC, do not satisfy the substantial contact requirement of the first clause of the commercial activity exception.

Plaintiff tries to avoid this overwhelming authority by alleging for the first time in this case that he reached an agreement and understanding with the Republic in Florida whereby he would travel to Venezuela for further negotiations. This new allegation is completely contradictory to the allegations in his two prior complaints and his sworn declaration that the parties reached their agreement in Venezuela. This Court should therefore disregard this contradictory allegation. But even if this allegation were accepted, this oral agreement reached in Florida does not constitute substantial contact with the United States because the bulk of the parties' dealings occurred abroad.

The second clause of the commercial activity exception is also inapplicable. That exception applies only where the plaintiff's claim is based on a non-commercial act in the United

States in connection with the foreign state's commercial activities elsewhere and that non-commercial act is in-and-of-itself sufficient to form the basis of the plaintiff's cause of action. Here, the SAC does not identify any non-commercial acts by the Republic. To the contrary, Plaintiff asserts that all of the Republic's alleged acts were commercial in nature. Moreover, none of the Republic's alleged acts in the United States are in-and-of-themselves sufficient to form the basis of the Plaintiff's claims. Rather, Plaintiff's claims allegedly arise out of the Republic's supposed actions in Venezuela.

The SAC offers nothing more than a vague and conclusory assertion of the third clause of the commercial activity exception. However, this exception is inapplicable because the SAC does not allege that the Republic's extraterritorial acts had any direct effects in the United States.

Plaintiff also continues his improper attempt to recast what he originally styled as an expropriation claim as claims for breach of contract and unjust enrichment in order to avoid the requirements of the FSIA's expropriation exception. However, the case law is legion that a plaintiff cannot evade the expropriation exception through artful pleading.

Finally, Plaintiff's claims must be dismissed as time-barred.

## STATEMENT OF FACTS

### A.      Procedural History

Plaintiff filed the Original Complaint on October 12, 2012 alleging that the Republic had expropriated the Collection. (O.C. ¶ 4.) Plaintiff admits that he never completed service of the Original Complaint. Nevertheless, Plaintiff obtained a default judgment against the Republic without adhering to or even apprising this Court of the FSIA's exclusive procedures and requirements for obtaining a default judgment against a foreign state. (D.E. 10, 26 and 27.) Plaintiff then obtained a writ of garnishment without complying with 28 U.S.C. § 1610, which sets forth the FSIA's exclusive procedures and requirements for attaching and executing against

property of a foreign state.  (D.E. 31.)  As a result of the writ, the Republic's diplomatic bank accounts containing millions of dollars were frozen, paralyzing the Republic's diplomatic operations in the United States.  (D.E. 33 at ¶¶ 2-5.)  After counsel for the Republic filed a Notice of Appearance (D.E.  43), the Republic moved to dissolve the writ of garnishment (D.E. 52.)  The Republic's motion was supported by the United States government.  (D.E.  57.)  This Court dissolved the writ because it violated the sovereign immunity of the Republic's diplomatic assets as provided by the FSIA.  (D.E.  63 and 69.)

On February 12, 2015, the Republic filed a motion to vacate the Default Judgment as void under the FSIA and to dismiss the Original Complaint for lack of subject matter jurisdiction and personal jurisdiction under the FSIA.  (D.E. 76.)  Plaintiff never responded to that motion. Instead, after receiving numerous extensions of the deadline to respond, Plaintiff filed a purported "stipulation" requesting that the Court deny the Republic's motion as moot.  (D.E. 99-1.)  Plaintiff never apprised the Court that Plaintiff had not obtained the Republic's consent to, or even advised it of, the so-called stipulation.

On June 22, 2015, the Republic file a new motion to dismiss the case.  (D.E. 102.) Plaintiff never responded to this motion either.  Instead, after further extensions and more than five months after the Republic moved to dismiss this case, Plaintiff filed his First Amended Complaint (D.E. 106) (the "FAC") without seeking leave of this Court as required under Rule 15(a) of the Federal Rules of Civil Procedure.[1]  The FAC completely altered Plaintiff's story and theory of the case.  Plaintiff no longer asserted expropriation claims and instead made

---

[1] Plaintiff's numerous requests for extensions to respond to the motion to dismiss did not extend the 21-day period for filing an amended complaint as a matter of right under FED. R. CIV. P. 15(a)(1)(B).  *See Fostano v. Pioneer Credit Recovery, Inc.*, No. 13-80511, 2013 WL 6002218, at *1 (S.D. Fla. Nov. 12, 2013); *Hayes v. District of Columbia*, 275 F.R.D. 343, 345 (D.D.C. 2011).

frivolous claims for damages pursuant to the FSIA's commercial activity exception 28 U.S.C. § 1605(a)(2) , which is a purely jurisdictional statute.

On December 3, 2015, this Court held oral argument on the motion to dismiss the FAC. During the hearing, counsel for Plaintiff argued that Plaintiff should be permitted to file yet another amended complaint in an attempt to include additional allegations concerning the parties' supposed negotiations in the United States.  (Hrg. Tr. at 32:18-33:14.)  The Court then directed the Plaintiff to submit an affidavit setting forth his proposed additional allegations. (Hrg. Tr. at 50:10-51:6.)  After supplemental briefing, the Magistrate Judge recommended granting the Republic's motion to dismiss and allowing Plaintiff to replead.  The District Court then adopted the Magistrate's Report and Recommendation, granted the Republic's motion to dismiss and granted leave to replead because it found Plaintiff's proposed additional allegations would not be futile.  (D.E. 139.)  On March 8, 2016, Plaintiff filed his SAC, which sets forth yet another new story and new theory of the case.

### B.      Allegations in the Second Amended Complaint

Plaintiff is a United States citizen and allegedly a descendent of a leading Colombian family which acquired the Collection in Colombia.  (SAC ¶¶ 2, 4-5.)  Plaintiff claims that he inherited the Collection from his family.  (*Id.* ¶ 2.)

According to the SAC, Plaintiff was first contacted about the Collection by his own relative, Jorge Mier Hoffman.  (*Id.* ¶ 19.)  Plaintiff allegedly sent copies of select pieces of the Collection to Hoffman who then sent them to the Republic in Venezuela.  (*Id.* ¶ 20.)  Shortly thereafter, Plaintiff was allegedly contacted by unidentified Venezuelan officials to arrange a meeting in the United States to examine the Collection and negotiate for its sale.  (*Id.* ¶ 21.) Plaintiff then alleges three meetings in Florida with Venezuelan officials and Alberto Arvelo

over the course of three days and totaling nine hours.  (*Id.* ¶¶ 23-24, 36.)  The first meeting

allegedly occurred over dinner at a sushi restaurant in Orlando on October 14, 2007.  (*Id.* ¶ 23.)

The next day, Plaintiff allegedly met with Venezuelan officials at a Marriot hotel in Orlando.

(*Id.* ¶ 24.)  During this meeting, the Venezuelan officials allegedly asked Plaintiff to travel to

Venezuela.  (*Id.* ¶ 25.)  Plaintiff responded that his passport had expired, and the Venezuelan

officials allegedly asked him to obtain a new passport on an expedited basis.  (*Id.* ¶ 26.)  Plaintiff

claims that he reached an agreement and understanding with a Venezuelan official whereby

Plaintiff would travel to Venezuela for further negotiations and that the Republic would either

purchase the Collection or return it to the Plaintiff after examining the Collection in Venezuela.

(*Id.* ¶ 32.)

On October 15, 2007, the Republic allegedly emailed Plaintiff a letter (the "Letter") that,

according to the SAC, was intended to facilitate Plaintiff's acquisition of a new United States

passport and to serve as an entrée to further negotiations in Venezuela.  (*Id.* ¶¶ 27-28.)  However,

the Letter, which is translated into English in paragraph 30 of the SAC, makes no reference to

the Collection or any past or prospective negotiations between Plaintiff and anyone.  (*Id.* ¶ 30.)

Instead, the Letter acknowledges Plaintiff's "qualifications and experience as a filmmaker and

film producer" and invited Plaintiff to come to Venezuela for the purpose of accompanying a

group of Venezuelans who were making a documentary film on the life of Don Joaquin de Mier

– Plaintiff's great, great grandfather.  (*Id.*)  In other words, the Letter is irrelevant.

Following the meeting at the Marriot, Plaintiff telephoned the United States passport

office in Miami and made an appointment to obtain a replacement passport on an emergency

basis.  (*Id.* ¶ 31.)  He then traveled by himself to the United States passport office and obtained a

new passport.  (*Id.* ¶¶ 34-35.)  Plaintiff then met with Venezuelan officials at the airport in

Orlando at 11 p.m. on October 16, 2007 for a one-hour meeting immediately prior to their

departure for Venezuela around midnight.  (*Id.* ¶¶ 35-37.)  Plaintiff then spent approximately a

month in Venezuela negotiating a sale of the Collection to the Republic.  (*Id.* ¶¶ 37-45.)  In the

middle of these negotiations, Plaintiff allegedly flew back to Orlando to spend a couple of days

searching for additional artifacts to bring back to Venezuela.  (*Id.* ¶¶ 39-41.)  While the SAC

alleges that the Republic paid for Plaintiff's round trip airfare on American Airlines, there is no

allegation that the Republic purchased these tickets in the United States.  (*Id.* ¶ 42.)

 On November 6, 2007, Plaintiff left Venezuela permanently.  (*Id.* ¶ 43.)  It was at this

point that Plaintiff allegedly left the Collection in the custody of the Republic in Venezuela with

an agreement and understanding that after the Republic completed its examination of the

Collection in Venezuela the Republic would either purchase the Collection or return it to

Plaintiff.  (*Id.* ¶ 45; SAC, Ex. 6 ¶ 28.)  Plaintiff alleges that he periodically contacted the

Republic over the following 2-3 years and was told that the Republic had not yet completed its

examination.  (SAC ¶¶ 47-48.)  Plaintiff alleges that his subsequent inquiries regarding the

Collection went unanswered.  (*Id.* ¶ 50.)[2]

## ARGUMENT

**I.      The Second Amended Complaint Must Be Dismissed for
         Lack of Subject Matter Jurisdiction under the FSIA**

The FSIA provides the sole basis for obtaining subject matter jurisdiction in any action

involving a foreign state.  *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S.

428, 443 (1989).  Under the FSIA, a foreign state is immune from the jurisdiction of United

---

[2] Plaintiff alleges that in July 2010 newspapers reported that Hugo Chavez, the President of
Venezuela at the time, ordered the exhumation of the remains of General Bolivar in order to
conduct DNA testing against the remains of General Bolivar's sister.  (SAC ¶ 49; SAC, Ex. 5 at
ECF p. 7.)  These articles, which are appended as Exhibit 5 to the SAC, do not mention Plaintiff
or his Collection.  They are irrelevant to this case.

States courts, and this Court thus lacks subject matter jurisdiction unless a statutory exception to immunity applies. *See* 28 U.S.C. §§ 1330(a), 1604; *see also Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Here, the SAC asserts jurisdiction under the commercial activity exception. None of the three clauses of that exception apply.

### A. The First Clause of the Commercial Activity Exception Does Not Apply

The first clause of the commercial activity exception, 28 U.S.C. § 1605(a)(2), requires factual allegations showing: (1) that the defendant carried on commercial activity in the United States, which is defined in the FSIA as commercial activity "having substantial contact with the United States," and (2) that the plaintiff's claims are "based upon" such commercial activity. 28 U.S.C. §§ 1603(e), 1605(a)(2) . The "based upon" and "substantial contact" requirements are separate and distinct and both must be satisfied in order for the first clause of the commercial activity exception to apply. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1132-33 (9th Cir. 2012). Here, Plaintiff has not satisfied either requirement.

### 1. Plaintiff's Claims Are Not "Based Upon" Any Alleged Commercial Activity in the United States

The Supreme Court's recent decision in *OBB* reaffirmed its strict interpretation of the commercial activity exception's "based upon" requirement. *See OBB*, 136 S. Ct. at 395-96 (discussing *Nelson*, 507 U.S. at 357). The Supreme Court held that the "based upon" requirement is only satisfied where the foreign sovereign's alleged conduct in the United States constitutes the "gravamen" of the plaintiff's lawsuit. *See id.* at 396. To determine the gravamen of the case, courts must "zero[] in on the core of [the plaintiff's] suit: the [ ] sovereign [defendant's] acts that actually injured [the plaintiff]." *Id.* Where the plaintiff is harmed by acts that occurred outside of the United States, the plaintiff's cause of action cannot be "based upon" commercial activities carried on in the United States as required under the first clause of the

commercial activity exception.  *See id.*  And, even prior to *OBB*, the Supreme Court in *Nelson*

held that a claim is not "based upon" a commercial activity merely because that activity led to

conduct that eventually caused harm to the plaintiff.  *See Nelson*, 507 U.S. at 358 ("While these

activities led to the conduct that eventually injured the [plaintiff], they are not the basis for

[plaintiff's] suit.").

     Here, the gravamen of Plaintiff's case is that the Republic allegedly refused to return the

Collection or pay for it.  However, the SAC makes clear that the Republic's refusal to return or

pay for the Collection, as well as Plaintiff's decision to leave the Collection in the Republic's

possession, occurred in *Venezuela* – not the United States.  (SAC ¶¶ 7-10, 45.)  Thus, Plaintiff's

action, like the suit in *OBB*, is "based upon" alleged acts that occurred outside the United States.

Accordingly, the first clause of the commercial activity exception does not apply.

     Plaintiff has consistently alleged that the parties reached an agreement and understanding

in Venezuela that either there would be a contract for the purchase of the Collection or, if no

agreement could be reached, the Collection would be returned to Plaintiff.  (O.C. ¶ 20; FAC ¶

22; SAC, Ex. 6 at ¶ 28.)  Plaintiff now has a new story and attempts to disavow that supposed

Venezuelan agreement by alleging for the first time that an understanding and agreement was

reached in Florida whereby Plaintiff agreed to travel to Venezuela with the Collection to

continue negotiations with the Republic and that the Republic would either purchase the

Collection or return it to Plaintiff.  (SAC ¶ 32.)  Plaintiff further alleges that he left the Collection

with the Republic in Venezuela pursuant to this newly alleged oral agreement and understanding

reached in Florida.  (*Id.* ¶ 45.)  These new allegations are entirely inconsistent with the

allegations in Plaintiff's two prior complaints and sworn declaration that, while *in Venezuela*, he

entrusted the Collection to the Republic upon an alleged agreement made *in Venezuela* that the

Republic would purchase or return the Collection *in Venezuela*.  (O.C. ¶ 20; FAC ¶ 22; SAC, Ex. 6 ¶ 28.)

The purpose of this new pleading is clear.  Once the Republic brought the recently decided *OBB* decision to the attention of the Court, Plaintiff realized that his claim, as pleaded, was based upon an agreement made in Venezuela and, thus, no matter how much more he could pad his complaint with allegations of negotiations in the United States, he still faced dismissal.[3] Thus, three and a half years into this case he concocted a new oral agreement, one he claims was reached in Florida before he left for Venezuela.  His allegations in this regard need not, and should not, be taken as true for purposes of this motion to dismiss.  *See Palm Beach Strategic Income, LP v. Salzman*, No. 10–CV–261, 2011 WL 1655575, at *2 (E.D.N.Y. May 2, 2011) (refusing to accept as true allegations in amended complaint that were "nothing more than a transparent attempt … to manufacture subject matter jurisdiction").

Where, as here, the plaintiff consistently relies on one agreement in his prior pleadings, the plaintiff cannot amend his pleadings to assert a different contract in order to avoid dismissal. *See Mickel Drilling Partners ex rel. Mickel v. Cabot Oil & Gas Corp.*, No. 3:CV-11-0061, 2012 WL 4953081, at *6 (M.D. Pa. Oct. 16, 2012); *Palm Beach Strategic Income,* 2011 WL 1655575, at *6-7; *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1325-26 (Fed. Cir. 1998) (affirming district court's decision to strike factual allegations in amended complaint that contradicted allegations in the original complaint); *Colliton v. Cravath, Swaine & Moore LLP*, No. 08 CIV

---

[3] This tactic is the same one Plaintiff employed when he filed his FAC.  His Original Complaint asserted expropriation claims.  (O.C. ¶ 4.)  However, when confronted with the Republic's motion to dismiss which made clear that the expropriation exception to immunity, 28 U.S.C. § 1605(a)(3), could not apply because the property was not in the United States, he changed course and alleged contract and unjust enrichment claims.  Interestingly however his allegations regarding where (Venezuela) and when (November 2007) his agreement with the Republic was made remained consistent.  (O.C. ¶ 20; FAC ¶ 22; SAC, Ex. 6 at ¶ 28.)

0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d

Cir. 2009) (court need not accept as true allegation in an amended complaint where the "plaintiff

blatantly changes his statement of the facts in order to respond to the defendants' motion to

dismiss … [and] directly contradicts the facts set forth in his original complaint") (alterations in

original).  This Court should therefore disregard the newly minted allegation that the parties

reached an agreement in Florida – particularly in light of the Supreme Court's recent admonition

against "allow[ing] plaintiffs to evade the [FSIA's] restrictions through artful pleading."  *OBB*,

136 S. Ct. at 396.[4]

      Similarly, Plaintiff's claims are not "based upon" the preliminary meetings and

communications in the United States.  At most, Plaintiff merely alleges that these preliminary

negotiations were an entrée to further negotiations for the sale of the Collection in Venezuela –

negotiations which never culminated in a contract for that sale.  However, such allegations are

insufficient under the Supreme Court's holding in *Nelson* that a claim is not "based upon"

conduct that merely led to the conduct that harmed the plaintiff.  *See Nelson*, 507 U.S. at 357-58;

*see also Odhiambo v. Republic of Kenya*, 764 F.3d 31, 36 (D.C. Cir. 2014) (plaintiff's contract

claim arising out of Kenya's failure to pay whistleblower award was not based upon plaintiff's

meeting with Kenyan officials in the United States to discuss the disputed award where the

contract was formed in Kenya).

---

[4] Plaintiff's assertion that an agreement and understanding was reached in Florida should also be
disregarded because it is directly contradicted by the Plaintiff's sworn declaration, which is
appended as Exhibit 6 to the SAC (D.E. 140-6 ¶ 28) (the "Declaration") and states, under the
penalty of perjury, that prior to returning to the United States Plaintiff left the Collection with the
Republic in Venezuela pursuant to an alleged agreement made in Venezuela.  *See Griffin Indus.,
Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (allegations that are contradicted by facts
disclosed in documents appended to the complaint may be disregarded); *Gersten v. Rundle*, 833
F. Supp. 906, 910 (S.D. Fla. 1993) (same).

The remaining commercial activities that Plaintiff alleges to have occurred in the United States are wholly irrelevant to this case. For instance, Plaintiff asserts that the Letter constitutes a commercial activity in the United States. (SAC ¶ 56.) While Plaintiff's explanation of the significance of the Letter is constantly changing, the content of the Letter refutes any relevance to this case. Plaintiff even admits that the Letter does not mention the Collection. (*Id.* ¶ 28.) Furthermore, the Letter does not mention any agreements or negotiations between Plaintiff and the Republic. (*Id.*) Thus, the Letter speaks for itself and it says nothing relevant to this case.

2. The Allegations in the SAC Are Insufficient
to Satisfy the Substantial Contact Requirement

"Commercial activity carried on in the United States" is a defined term under the FSIA and is limited to "commercial activity carried on by such state and having *substantial contact* with the United States." 28 U.S.C. § 1603(e) (emphasis added). The "substantial contact" standard requires a far higher level of contact between the foreign state and the United States than a "minimum contacts" due process inquiry. *See Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511, 1513 (D.C. Cir. 1988). If a foreign state engages only in isolated or transitory contacts within the United States, it will not be subject to jurisdiction under the commercial activity exception. *See id.*

Moreover, it is well established that preliminary negotiations, including meetings, in the United States do not as a matter of law constitute substantial contact with the United States where, as here, the bulk of negotiations occurred abroad. *See Schoeps v. Bayern,* 611 F. App'x 32, 34 (2d Cir. 2015); *Odhiambo*, 764 F.3d at 36 ("our cases have held that mere business meetings in the United States do not suffice to create substantial contact with the United States"); *Terenkian*, 694 F.3d at 1133 ("while a foreign nation's contract negotiations, including a meeting, and telephone and wire communications, are commercial activity in the United States,

- 12 -

they are insufficiently significant" to constitute substantial contact); *Soudavar v. Islamic Republic of Iran*, 186 F.3d 671, 673-74 (5th Cir. 1999) (organizing a meeting in New York to persuade businessmen to travel to Iran did not constitute substantial contact with the United States); *General Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1383-84 (8th Cir. 1993) (preliminary meeting in Minnesota was not a substantial contact); *Gerding v. Republic of France*, 943 F.2d 521, 527 (4th Cir. 1991) (defendant's attendance at a meeting in New Jersey was not a substantial contact with the United States); *Maritime Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094, 1109 (D.C. Cir. 1982) ("We cannot conclude that these two isolated meetings amounted to more than 'transitory' and 'insubstantial' contact for purposes of the [FSIA], especially given their uncertain scope and importance.") (internal citations omitted).

*Schoeps* is directly on point. In that case, a government official travelled to the United States with the explicit approval of his government. 27 F. Supp. 3d 540, 542 (S.D.N.Y. 2014). During his trip, the official visited an art dealer in New York and allegedly discussed a potential purchase of a valuable painting for display in a state-owned museum. *Id.* at 543. Upon his return to Germany, the official sent letters to the art dealer in New York inviting the art dealer to resume negotiations for the purchase of the painting. *Id.* Thereafter, the official and the art dealer met in Europe and entered into an agreement to sell the painting. *Id.* The Second Circuit affirmed dismissal of the case and held that the meeting in New York did not constitute a substantial contact with the United States because it "did not result in any kind of agreement for the purchase of [the painting], except perhaps a commitment to talk further." 611 F. App'x at 34 (internal quotations omitted). As in *Schoeps*, Plaintiff alleges that the bulk of the parties' negotiations occurred in Venezuela. Indeed, the SAC alleged a total of *nine hours* of preliminary negotiations in Florida followed by nearly *one month* of negotiations in Venezuela. And, like

- 13 -

*Schoeps*, Plaintiff alleges that the parties' meetings in Florida resulted in, at most, a "commitment to talk further" in Venezuela.

In a transparent attempt to avoid another dismissal, Plaintiff now alleges that the parties reached an oral agreement and understanding in Florida in October 2007 despite the fact that he has consistently asserted for nearly three and a half years that the parties' agreement was reached a month later in Venezuela. For the reasons discussed above, this Court should disregard the new contradictory allegation. *See supra* pp. 10-11. But even accepting this allegation, the supposed formation of an agreement in Florida does not constitute a substantial contact with the United States. Indeed, the formation of a contract in the United States does not constitute a substantial contact with the United States where, as here, the bulk of the parties' negotiations occurred abroad or the contract does not call for performance in the United States. *See Terenkian*, 694 F.3d at 1136-37 ("execution of a contract in the United States alone, without more, is not sufficient to satisfy the first clause of [the commercial activity exception]"); *Morgan Equip. Co. v. Novokrivorogsky State Ore Mining & Processing Enter.*, 57 F. Supp. 2d 863, 872 (N.D. Cal. 1998) (alleged negotiations and formal execution of a contract in San Francisco did not constitute substantial contact with the United States where the "core of negotiations took place abroad").

For example, the court in *Morgan Equip.* rejected the plaintiff's argument that the first clause of the commercial activity exception applied because some negotiations and the formal signing of the contract took place in San Francisco. *See Morgan Equip. Co.*, 57 F. Supp. 2d at 872. The court instead held that these activities did not constitute substantial contact with the United States because the "core" negotiations occurred abroad and the contract did not call for performance in the United States. *See id.* Similarly, the Ninth Circuit in *Terenkian* held that the

execution of contract in New York did not constitute substantial contact with the United States because the contract was not substantially negotiated in the United States and it did not require the foreign state to undertake any activities in the United States. *Terenkian*, 694 F.3d at 1136-37.[5] Here, the agreement that was allegedly reached in Florida called for performance exclusively in Venezuela and the vast majority of the parties' negotiations occurred in Venezuela. Thus, like the execution of the contracts in *Morgan Equip.* and *Terenkian*, the alleged formation of an oral agreement and understanding in Florida would not constitute substantial contact with the United States.

### B. The Second Clause of the Commercial Activity Exception Does Not Apply

The second clause of the commercial activity exception applies where the claim is based on an act by the foreign state in the United States in connection with the foreign state's commercial activity elsewhere. 28 U.S.C. § 1605(a)(2). Courts have interpreted the second clause as applying to *non-commercial* acts performed by the foreign state in the United States. *See Kensington Int'l, Ltd. v. Itoua*, 505 F.3d 147, 157 (2d Cir. 2007); *see also Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 892 n.5 (5th Cir. 1998) (citing *Nelson*, 507 U.S. at 358). Moreover, the second clause only applies where the act performed in the United States is in and of itself sufficient to form the basis of the plaintiff's cause of action. *See Odhiambo*, 764 F.3d at 37-38; *Grossman*, 991 F.2d at 1384. The legislative history of the FSIA is explicit on this point. *See Odhiambo*, 764 F.3d at 37-38 ("[T]o the degree that the text leaves any ambiguity, the legislative history is 'crystal clear' that clause two's reference to acts 'performed in the United States …' is 'limited to those' acts 'which in and of themselves are sufficient to form the basis of a cause of action.'" (quoting H.R. Rep. No. 94-1487, at 19 (1976),

---

[5] The court in *Terenkian* also held that the plaintiffs' claims were "based upon" the breach of the contract abroad and not the execution of the contract in New York. *See Terenkian*, 694 F.3d at 1137 n.7.

*reprinted in* 1976 U.S.C.C.A.N. 6604, 6617-18)).  Thus, while the second clause requires only a single "act" in the United States, it requires a stronger nexus between the "act" and the plaintiff's claim.

Here, the SAC does not identify a single act in the United States that forms the basis of his claims.  Instead, the SAC asserts that the same *commercial activities* identified with respect to clause one of the commercial activity exception are each an "*act* performed in the United States" under clause two.  (*Compare* SAC ¶¶ 56 and 59.)  However, these allegedly *commercial* activities cannot provide jurisdiction under the second clause of the commercial activity exception because that clause only applies to *non-commercial* acts performed in the United States.  *See Kensington Int'l*, 505 F.3d at 157.  Moreover, as discussed above, Plaintiff's suit is not "based upon" any of these alleged commercial activities and, therefore, none of them are in-and-of-themselves sufficient to form the basis of any of Plaintiff's cause of action.

## C.    The Third Clause of the Commercial Activity Exception Does Not Apply

The third clause of the commercial activity exception provides an exception to immunity where the plaintiff's claims are "based … upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2).  A "direct effect" is one that follows as an immediate consequence of the foreign state's extraterritorial act.  *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992).  It is well established that "[m]ere financial loss by a person – individual or corporate – in the U.S. is not, in itself, sufficient to constitute a 'direct effect.'"  *Araya-Solorzano v. Gov't of Republic of Nicaragua*, 562 F. App'x 901, 904 (11th Cir. 2014).  Furthermore, the Eleventh Circuit has adopted a "negative activity" test pursuant to which a foreign state's failure to perform an act does not constitute a direct effect where the

foreign state had no obligation to perform that act in the United States.  *See id.*  (citing *Guevara v. Republic of Cuba*, 608 F.3d 1297, 1310 (11th Cir. 2010)).

Paragraph 11 of the SAC states that "the parties' commercial dealings in both Florida and Venezuela … are based upon defendant VENEZUELA's … commercial activities carried on elsewhere with a direct impact in the United States."  To the extent Plaintiff is asserting jurisdiction under the third clause of the commercial activity exception, the SAC fails to identify any alleged "direct effects" in the United States.  Any alleged damages suffered by Plaintiff do not constitute a "direct effect" in the United States simply because he is a U.S. citizen.  *Araya-Solorzano*, 562 F. App'x at 904.  The Republic's alleged failure to pay for the Collection is also insufficient to constitute a direct effect in the United States because there is no allegation that the Republic had a contractual obligation to make any payments for the Collection anywhere, let alone an obligation to make a payment in the United States.  *See id.* at 905; *Dominican Energy Ltd. v. Dominican Republic*, 903 F. Supp. 1507, 1514 (M.D. Fla. 1995).  Similarly, the Republic's alleged retention of the Collection did not have a direct effect in the United States.  *See Samco Global Arms, Inc. v. Arita*, 395 F.3d 1212, 1217 (11th Cir. 2005).  Indeed, the Eleventh Circuit in *Samco* held that a foreign state's refusal to release a plaintiff's property does not constitute a direct effect in the United States absent an explicit legal obligation to ship the property to the United States.  *See id.*  Here, as in *Samco*, there is no allegation that the Republic was legally obligated to ship the Collection to the United States.  Therefore, the third clause of the commercial activity exception does not apply

## II.    Plaintiff Impermissibly Attempts to Plead Around the Requirements of the FSIA's Expropriation Exception

The Supreme Court's recent decision in *OBB* reaffirms the long-standing principle that courts cannot "allow plaintiffs to evade the [FSIA's] restrictions through artful pleading."  *OBB*,

136 S. Ct. at 396 (discussing *Nelson*, 507 U.S. at 363).  Applying this principle, courts have repeatedly rejected attempts to avoid the requirements of the FSIA's expropriation exception, 28 U.S.C. § 1605(a)(3), by artfully pleading an expropriation claim as some other cause of action.  *See De Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385, 1398 (5th Cir. 1985); *see also Garb v. Republic of Poland*, 440 F.3d 579, 588 (2d Cir. 2006) ("[C]ourts have repeatedly rejected litigants' attempts to establish subject matter jurisdiction pursuant to other FSIA exceptions when their claims are in essence based on disputed takings of property.").  In particular, a plaintiff cannot rely on the commercial activity exception where the claims are based on a taking of property.  *See Beg v. Islamic Republic of Pakistan*, 353 F.3d 1323, 1326 (11th Cir. 2003).  Yet, that is exactly what Plaintiff attempts to do in this case.

Plaintiff's Original Complaint alleged that the Collection was expropriated by the Republic and sought to establish jurisdiction under the FSIA's expropriation exception.  (O.C. ¶ 4.)  No doubt realizing that he cannot satisfy the expropriation exception,[6] Plaintiff has completely altered his theory of this case.  Plaintiff now relies exclusively on the FSIA's commercial activity exception.  In doing so, Plaintiff recasts his earlier expropriation and conversion claims as claims for breach of an implied oral agreement and unjust enrichment. However, Plaintiff cannot avoid the requirements of the expropriation exception through such artful pleading.  *See Beg*, 353 F.3d at 1326; *Garb*, 440 F.3d at 588.  Thus, this Court should

---

[6] In order to satisfy the FSIA's expropriation exception to immunity, Plaintiff must demonstrate, among other things, a jurisdictional nexus to the United States by showing that the property at issue, or any property exchanged for such property, (i) is "present in the United States in connection with a commercial activity carried on in the United States by the foreign state" or (ii) is "owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States."  28 U.S.C. § 1605(a)(3).  Plaintiff cannot establish either prong because the SAC states that the Collection is in Venezuela, not the United States, and in the possession of the Republic, not an agency or instrumentality thereof.  (SAC ¶ 10.)

dismiss the Plaintiff's thinly veiled expropriation claims for lack of subject matter jurisdiction because the expropriation exception does not apply.

### III.    The Amended Complaint Must Be Dismissed for Lack of Personal Jurisdiction

Under the FSIA, a court can only acquire personal jurisdiction over a foreign sovereign if subject matter jurisdiction has been established through the applicability of a statutory exception to sovereign immunity and there is effective service of process.  28 U.S.C. § 1330(b).  Thus, Plaintiff's failure to establish an exception to sovereign immunity also mandates dismissal of this case for lack of personal jurisdiction under FED. R. CIV. P. 12(b)(2).

### IV.    Plaintiff's Claims Must Be Dismissed as Time-Barred

Claims for breach of an oral agreement and unjust enrichment are governed by the same four year statute of limitations.  *See* Fla. Stat. § 95.11(3)(k).  Under Rule 15(c) of the Federal Rules of Civil Procedure, a claim raised for the first time in an amended complaint relates back to the filing date of the original complaint for statute of limitations purposes only if the original complaint gives notice of the facts giving rise to the new claim.  *See Forzley v. AVCO Corp. Elecs. Div.*, 826 F.2d 974, 981 (11th Cir. 1987).  For example, a newly asserted claim for breach of contract does not relate back to the filing of the original complaint if the plaintiff consistently relied upon a different contract in the original complaint.  *See Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992 (8th Cir. 1989).

Here, the SAC alleges that the Republic's retention of the Collection is a breach of an agreement and understanding reached by the parties in Florida.  Plaintiff never alleged the existence of such contract in his prior complaints.  For three and a half years prior to filing the SAC, Plaintiff had consistently relied on another separate agreement that was allegedly reached between the parties in Venezuela.  As explained above, this Court should disregard Plaintiff's new contradictory allegation that the parties reached an agreement and understanding in Florida.

*See supra* pp. 10-11. However, if this Court does accept that allegation, Plaintiff's claim for breach of the supposed Florida agreement does not relate back to the filing of the original complaint and therefore must be dismissed as time-barred because Plaintiff alleges that the Republic breached that supposed agreement in July 2010 – well more than four years prior to the filing of the SAC on March 8, 2016.

In any event, Plaintiff's claims for breach of contract are barred by the statute of frauds. Regardless of whether the supposed agreement was reached in Florida on October 15, 2007 or in Venezuela on November 6, 2007, Plaintiff contends that the oral agreement and understanding was breached after July 2010 – nearly three years after the supposed formation of the oral agreement. Accordingly, such an oral agreement and understanding would violate the statute of frauds' prohibition on the enforcement of oral contracts requiring performance beyond one year. *See* Fla. Stat. § 672.201.

Plaintiff claims that the Republic's alleged retention of the Collection constitutes unjust enrichment. A claim for unjust enrichment accrues when the benefit is actually conferred and not when the defendant availed himself of the benefit. *See Kaye v. Ingenio, Filiale de Loto-Quebec, Inc.*, No. 13-61687, 2014 WL 2215770, at *9 (S.D. Fla. May 29, 2014). Thus, Plaintiff's unjust enrichment claims accrued when he allegedly left the Collection in the Republic's possession on November 6, 2007. Even assuming that Plaintiff's newly added unjust enrichment claims related back under Rule 15(c), his claims accrued more than four years prior to the filing of the original complaint on October 15, 2012. These claims are therefore time-barred and must be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the SAC with prejudice.


Dated:             March 25, 2016                    Respectfully submitted,

                                                     **BILZIN SUMBERG BAENA**
                                                     **PRICE & AXELROD LLP**

                                                     By:  */s/  Mitchell E. Widom*
                                                     Mitchell E. Widom
                                                     mwidom@bilzin.com
                                                     Lori P. Lustrin
                                                     llustrin@bilzin.com
                                                     1450 Brickell Avenue, Suite 2300
                                                     Miami, Florida 33131-3456
                                                     Telephone:  (212) 696-6000
                                                     Facsimile:  (212) 697-1559

                                                     – and –

                                                     Joseph D. Pizzurro (*pro hac vice*)
                                                     jpizzurro@curtis.com
                                                     Kevin A. Meehan (*pro hac vice*)
                                                     kmeehan@curtis.com
                                                     **CURTIS, MALLET-PREVOST,**
                                                     **COLT & MOSLE LLP**
                                                     101 Park Avenue
                                                     New York, New York  10178
                                                     Telephone:  (212) 696-6000
                                                     Facsimile:  (212) 697-1559


                                                     *Attorneys for Defendant Bolivarian*
                                                     *Republic of Venezuela*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Court

and served via CM/ECF electronic mail service on all counsel of record on the date hereof.

By: */s/ Mitchell E. Widom*
Mitchell E. Widom

# EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

RICARDO DEVENGOECHEA,

    Plaintiff,

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,
A Foreign State,

    Defendant.

Case No. 12-cv-23743-PCH/Otazo-Reyes

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Dated:  May 16, 2016

**BILZIN SUMBERG BAENA
PRICE & AXELROD LLP**
Mitchell E. Widom
Lori P. Lustrin
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
mwidom@bilzin.com
llustrin@bilzin.com

– and –

Joseph D. Pizzurro (*pro hac vice*)
Kevin A. Meehan (*pro hac vice*)
**CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
jpizzurro@curtis.com
kmeehan@curtis.com

*Attorneys for Defendant Bolivarian
Republic of Venezuela*

Defendant Bolivarian Republic of Venezuela (the "Republic") submits this reply memorandum in support of its motion to dismiss the Second Amended Complaint (the "SAC").

## PRELIMINARY STATEMENT

Plaintiff's response to the motion to dismiss focuses on approximately nine hours of discussions alleged to have occurred in Florida relating to an agreement which was never reached, *i.e.* an agreement to purchase the Collection. Plaintiff argues that these nine hours constitute sufficient contact with the United States to satisfy the first clause of the commercial activity exception to immunity of the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. §§ 1605(a)(2). Plaintiff cites no law in support of his assertion – and there is none. Furthermore, Plaintiff simply ignores the fact that his claims are not "based upon" these alleged discussions, and thus, under recent Supreme Court precedent, those discussions cannot be a predicate for asserting jurisdiction over the Republic.

Plaintiff also points to new, and inconsistent, allegations that the "agreement" upon which his claims are based was reached in Florida, not in Venezuela as previous alleged. But the law is clear that this new and inconsistent allegation of a different agreement is not to be credited. This allegation is also irrelevant. Plaintiff's claims are not "based upon" the supposed formation of an agreement in Florida. Rather, the gravamen of Plaintiff's action remains the Plaintiff's transfer of possession and control of the Collection to the Republic and the Republic's alleged refuse to return it. Both of these acts occurred *in Venezuela* and not the United States. Thus, Plaintiff's claims are "based upon" acts that occurred abroad. Furthermore, the mere formation of an agreement in the United States does not, in itself, constitute substantial contact with the United States as required to invoke the first clause of the commercial activity exception.

Finally, Plaintiff offers no convincing argument as to why his claims are not time-barred and precluded by the Statute of Frauds. The SAC should be dismissed.

## ARGUMENT

I. **The Second Amended Complaint Must Be Dismissed for Lack of Subject Matter Jurisdiction under the FSIA**

A. **The First Clause of the Commercial Activity Exception Does Not Apply**

Plaintiff's factual allegations are insufficient, as a matter of law, to satisfy the "substantial contact" and "based upon" requirements of the first clause of the commercial activity exception, 28 U.S.C. § 1605(a)(2).

1.      Plaintiff's Claims Are Not "Based Upon" Any
        Alleged Commercial Activity in the United States

The Supreme Court's recent decision in *OBB* held that the "based upon" requirement is only satisfied where the foreign sovereign's alleged conduct in the United States constitutes the "gravamen" of the plaintiff's lawsuit.  *See OBB Personenverkehr AG v. Sachs ("OBB")*, 136 S. Ct. 390 (2015).  The gravamen of the case refers to the "core" of the suit – *i.e.* the acts that actually injured the plaintiff.  *See id.*  Here, the gravamen of Plaintiff's case is that the Republic allegedly refused to return the Collection or pay for it, and the SAC makes clear that the Republic's refusal to return or pay for the Collection, as well as Plaintiff's decision to leave the Collection in the Republic's possession, occurred in *Venezuela* – not the United States.  (SAC ¶¶ 7-10, 45.)  Thus, Plaintiff's action, like the suit in *OBB*, is "based upon" alleged acts that occurred outside the United States and therefore the first clause of the commercial activity exception does not apply.  *See OBB*, 136 S. Ct. at 396.

Plaintiff does not even mention, let alone address, the gravamen test set forth in *OBB*. Instead, Plaintiff makes the frivolous argument that *OBB* is distinguishable on the grounds that the SAC alleges more substantial commercial activity in the United States than the plaintiff in *OBB*.  (Pl. Br. at 14.)  Plaintiff's argument completely misses the mark and conflates the "substantial contact" and "based upon" requirements, which are separate and distinct and both of which must be satisfied in order for the first clause of the commercial activity exception to apply. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1132-33 (9th Cir. 2012); *General Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1383 (8th Cir. 1993).  Thus, no matter how many or how substantial a foreign sovereign defendant's contacts with the United States, Plaintiff must still satisfy the gravamen test as set forth in *OBB*.

While Plaintiff makes a facile argument that his claims are "based upon" the commercial activities that the Republic allegedly performed in the United States, those activities, at most, amount to preliminary negotiations.  Those preliminary negotiations are not the acts that allegedly harmed the Plaintiff and are therefore not the gravamen of his claims.  *See OBB*, 136 S. Ct. at 396.  The acts that allegedly harmed the Plaintiff all occurred in Venezuela.   Indeed, Plaintiff alleges that, following the three days of preliminary negotiations in Florida, he spent nearly a month negotiating with the Republic *in Venezuela* and allegedly left the Collection in the Republic's possession *in Venezuela* upon an alleged oral agreement made *in Venezuela* that

the Republic would purchase or return the Collection *in Venezuela* – an agreement that the Republic supposedly breached *in Venezuela*. As the United States government explained in its *amicus* brief in *OBB*, the gravamen requirement is meant to "prevent[] U.S. courts from assuming jurisdiction over cases [such as this one] in which all or virtually all of the acts or omissions that are the subject of the parties' dispute took place abroad – a considerable expansion of the FSIA's limited exceptions to foreign-sovereign immunity." *See* Brief for the United States as Amicus Curiae 8, *OBB Personenverkehr AG v. Sachs*, No. 13-1067 (U.S. April 2015).

Plaintiff attempts to shift the gravamen of his action to the United States by alleging for the first time that the parties reached an agreement in Florida. (SAC ¶ 32.) This new allegation is completely inconsistent with the allegations in Plaintiff's two prior complaints and his sworn declaration that the parties' supposed agreement was reached in Venezuela.[1] (O.C. ¶ 20; FAC ¶ 22; SAC, Ex. 6 ¶ 28.) However, it is well established that a plaintiff cannot consistently rely on one agreement in his initial pleadings and then amend his pleadings to assert a different contract in order to avoid dismissal. *See Mickel Drilling Partners ex rel. Mickel v. Cabot Oil & Gas Corp.*, No. 3:CV-11-0061, 2012 WL 4953081, at *6 (M.D. Pa. Oct. 16, 2012); *Palm Beach Strategic Income, LP v. Salzman*, No. 10–CV–261, 2011 WL 1655575, at *6-7 (E.D.N.Y. May 2, 2011). Plaintiff's new, inconsistent allegation that an agreement was reached in Florida is "nothing more than a transparent attempt … to manufacture subject matter jurisdiction" and therefore should not be accepted a true for purposes of this motion to dismiss. *See Palm Beach Strategic Income,* 2011 WL 1655575, at *2. In fact, some courts have gone even further and "held that 'dubious and contradictory factual allegations' in an amended complaint can subject a party to Rule 11 sanctions." *Id.* at *5 (citing *Colliton v. Cravath, Swaine & Moore LLP*, No. 08 CIV 0400 (NRB), 2008 WL 4386764, at *13-14 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009)).

Plaintiff contends that his new allegation is consistent with the allegations in his prior pleadings and merely provides detail to clarify his prior allegations of "extensive negotiations in the United States." However, Plaintiff was not clarifying the "detail" of where the parties' alleged agreement was made – he was outright changing that "detail" in an attempt to improperly

---

[1] Whatever Plaintiff now claims he was told in Florida, he provided no required consideration other than boarding a plane. There was no "contract" to breach.

manufacture subject matter jurisdiction. Plaintiff's prior pleadings and his sworn declaration all provided the "detail" of where the parties formed their alleged agreement, and they consistently and unequivocally stated that this occurred *in Venezuela*. (O.C. ¶ 20; FAC ¶ 22; SAC, Ex. 6 at ¶ 28.) This Court should therefore ignore the Plaintiff's allegation that the parties reached an agreement in Florida.[2]

In any event, Plaintiff's new allegations cannot save his complaint because Plaintiff's claims are not "based upon" the new allegation that the parties reached an agreement in Florida. The gravamen of a breach of contract claim is the breach of the contract, not the formation of the contract. *See Terenkian*, 694 F.3d at 1137 n.7. To conclude otherwise would violate the Supreme Court's admonition in *OBB* that a claim is not "based upon" commercial activity in the United States simply because such activity constitutes an element of the plaintiff's cause of action. *See OBB*, 136 S. Ct. at 396. Here, Plaintiff alleges that the transfer of possession and control of the Collection to the Republic and the Republic's alleged refusal to return it both occurred *in Venezuela*. Thus, even accepting Plaintiff's new and inconsistent allegations, the gravamen of his action is comprised of actions that occurred abroad. The first clause of the commercial activity exception therefore does not apply.

2.  **The Allegations in the SAC Are Insufficient to Satisfy the Substantial Contact Requirement**

Plaintiff argues that his new and inconsistent allegation that the parties reached an agreement in Florida satisfies that "substantial contact" requirement. However, for all the reasons stated above, this Court should disregard that new contradictory allegation. *See supra* pp. 4-5. But even if this Court did credit this allegation, the formation of a contract in the United States does not constitute a substantial contact with the United States where, as here, the bulk of the parties' negotiations occurred abroad or the contract does not call for performance in the United States. *See Terenkian*, 694 F.3d at 1136-37; *Morgan Equip. Co. v. Novokrivorogsky State Ore Mining & Processing Enter.*, 57 F. Supp. 2d 863, 872 (N.D. Cal. 1998).

---

[2] Plaintiff also argues that his new contradictory allegations should be accepted as true because the SAC supersedes any inconsistent allegations in his prior complaints. (Pls. Br. at 16 n.4.) While an amended complaint generally supersedes a prior pleading, that general rule does not apply where, as here, the allegations in the amended complaint are inconsistent with the plaintiff's prior allegations. *See, e.g., Bradley v. Chiron Corp.*, 136 F.3d 1317, 1325-26 (Fed. Cir. 1998). In any event, the SAC does not supersede the Plaintiff's sworn declaration, which is appended to the SAC and states that the parties' agreement was reached in Venezuela. Where, as here, the sworn statement is inconsistent with the the allegations of the complaint, the declaration governs. *See, e.g., Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

Plaintiff's remaining allegations show, at most, nine hours of preliminary negotiations in Florida followed by nearly a month of negotiations in Venezuela. It is well established that preliminary negotiations, including meetings, in the United States do not as a matter of law constitute substantial contact with the United States where, as here, the bulk of negotiations occurred abroad. *See, e.g., Schoeps v. Bayern,* 611 F. App'x 32, 34 (2d Cir. 2015). Indeed, every single court to consider the issue, including the Courts of Appeals for the Second, Fourth, Fifth, Eighth, Ninth and D.C. Circuits, has held that allegations of preliminary negotiations, such as meetings and correspondence, in the United States are insufficient to satisfy the substantial contact requirement. *See id.*; *Odhiambo v. Republic of Kenya,* 764 F.3d 31, 36 (D.C. Cir. 2014); *Terenkian*, 694 F.3d at 1133; *Soudavar v. Islamic Republic of Iran,* 186 F.3d 671, 673-74 (5th Cir. 1999); *General Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1383-84 (8th Cir. 1993); *Gerding v. Republic of France*, 943 F.2d 521, 527 (4th Cir. 1991); *Maritime Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094, 1109 (D.C. Cir. 1982). Plaintiff makes no attempt to distinguish this overwhelming case law. Nor does he cite any authority to support his conclusory assertion that his allegations of supposed commercial activities in the United States satisfy the substantial contact requirement.

**B.      The Second Clause of the Commercial Activity Exception Does Not Apply**

The second clause of the commercial activity exception applies where the claim is based upon an act by the foreign state in the United States in connection with the foreign state's commercial activity elsewhere. 28 U.S.C. § 1605(a)(2). Plaintiff argues that the newly alleged Florida agreement is the act in the United States upon which his claims are based. (Pl. Br. at 17.) As discussed above, Plaintiff's new contradictory allegation that an agreement was reached in Florida should be disregarded. *See supra* pp. 4-5. But even if this Court were inclined to credit this inconsistent allegation, Plaintiff's claims are not "based upon" the newly alleged Florida agreement for all the reasons stated above.

Plaintiff also recharacterizes the alleged Florida agreement as a mere "statement" by Ms. Delcy Rodriguez in an attempt to fit his claim within an example in the legislative history that states that the second clause "might" include the situation where "a representation in the United States by an agent of a foreign state that leads to an action for restitution on unjust enrichment." H.R. Rep. No. 94-1487, at 19 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6618. The legislative history cautions, however, that "the acts (or omissions) encompassed [by the second

clause] are limited to those which in and of themselves are sufficient to form the basis of a cause of action." *Id.* Courts have rigorously applied this limitation in analyzing claims under the second clause. *See Odhiambo*, 764 F.3d at 37-38; *Grossman*, 991 F.2d at 1384. Ms. Delcy Rodriguez's alleged "statement" in Florida is not in and of itself actionable.[3] The essential acts that give rise to Plaintiff's unjust enrichment claim are the alleged transfer of the Collection into the possession of the Republic (*i.e.* the conferral of the benefit) and the Republic's refusal to return the Collection (*i.e.* the improper retention of the benefit). Both of these essential acts that form the basis of Plaintiff's claims allegedly occurred in Venezuela – not the United States.[4]

Plaintiff also argues that the requirement that the "act" under the second clause be "non-commercial" is contradicted by the legislative history. (Pl. Br. at 17.) However, courts have interpreted the second clause as applying only to *non-commercial* acts performed by the foreign state in the United States. *See, e.g., Kensington Int'l, Ltd. v. Itoua*, 505 F.3d 147, 157 (2d Cir. 2007); *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 892 n.5 (5th Cir. 1998). Plaintiff does not cite any case law to support his interpretation of the statute. And he does not identify any non-commercial acts on the part of the Republic.[5]

### C. This Court's Grant of Leave to Replead Does Not Is Not a Finding of Subject Matter Jurisdiction under the FSIA

Plaintiff argues the Magistrate's Report and Recommendation is a binding decision that Plaintiff's allegations are sufficient to abrogate the Republic's sovereign immunity under the FSIA's commercial activity exception. (Pl. Br. at 10, 17.) This Court had not held that subject matter jurisdiction exists over the Republic under the FSIA. To the contrary, the Magistrate's Report recommended that the Republic's motion to dismiss be granted without prejudice to

---

[3] Plaintiff appears to be changing his theory of the case yet again by suggesting that Ms. Delcy Rodriguez's "statement" was fraudulent. There are no allegations in the SAC to support such a theory, much less particularized allegations required to withstand the heightened pleading standards of Rule 9. *See Dixon v. Allergan USA, Inc.,* No. 15-13222, 2016 U.S. App. LEXIS 4659, at *3-4 (11th Cir. Mar. 14, 2016). If Plaintiff had a good faith basis under Rule 11 to assert a claim for fraud, he should have included such a claim in his amended pleadings. Having failed to do so, Plaintiff cannot amend the SAC by arguing fraud in his brief.

[4] Plaintiff's argument that his claims are "based upon" Ms. Delcy Rodriguez's supposed "statement" in Florida is also at odds with the Supreme Court's holding in OBB held that a plaintiff's cause of action is not "based upon" an act merely because that act relates to the claim or constitutes an element of the claim. In arguing against the so-called "single element" rule in its amicus brief, the United States government took the position that the "phrase 'based upon' refers to what is fundamental to a claim, amounting to its most important part" and not activities that are "at the periphery of the wrong alleged." *See* Brief for the United States as Amicus Curiae 8, *OBB Personenverkehr AG v. Sachs*, No. 13-1067 (U.S. April 2015).

[5] Plaintiff has asserted no claim that is remotely based upon his obtaining a United States passport.

replead. The District Court agreed and dismissed the FAC for lack of subject matter jurisdiction under the FSIA. The District Court also granted Plaintiff leave to replead based on the Magistrate's findings that Plaintiff's proposed allegations were not futile. Granting a motion to amend based on a finding that the amendment would not be futile, *i.e.*, that the amended complaint would survive a motion to dismiss, does not constitute law of the case or prohibit the court from revisiting its assessment of the allegations. *See, e.g., Georgian v. Zodiac Grp., Inc.*, Case No. 10-CIV-60037-COHN/SELTZER, 2010 U.S. Dist. LEXIS 97556, at *4 n.1 (S.D. Fla. Aug. 27, 2010); *Hypertherm, Inc. v. Am. Torch Tip. Co.*, Civil No. 05-cv-373-JD, 2007 U.S. Dist. LEXIS 67579, at *8 (D.N.H. Sept. 11, 2007); *Care Environ. Corp. v. M2 Techs., Inc.*, No. CV-05-1600 (CPS), 2006 WL 148913, at *8 n.9 (E.D.N.Y. Jan. 18, 2006). In short, the Republic was the prevailing party on the prior motion to dismiss and the burden remains on Plaintiff to demonstrate the applicability of an exception to immunity under the FSIA.

## II. Plaintiff Impermissibly Attempts to Plead Around the Requirements of the FSIA's Expropriation Exception

Plaintiff argues that, after filing his Original Complaint, he "came to recognize that this case was exclusively a commercial-activity case." (Pl. Br. at 19.) This epiphany was no doubt prompted by the realization that he cannot possibly satisfy the FSIA's expropriation exception, which requires, among other things, that the property at issue be present in the United States. *See Garb v. Republic of Poland,* 440 F.3d 579, 588 (2d Cir. 2006). And Plaintiff did not simply abandon his jurisdictional argument under the expropriation exception. He completely altered his entire theory of the case. Plaintiff withdrew all of his substantive causes of action because each of those claims were predicated on an alleged taking of property. Plaintiff then replaced those takings claims with entirely new claims for breach of contract and unjust enrichment. The law is clear that Plaintiff cannot artfully plead his way around the requirements of the FSIA's expropriation exception. *See id.*; *De Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385, 1398 (5th Cir. 1985); *see also OBB*, 136 S. Ct. at 396 (stating that courts cannot "allow plaintiffs to evade the [FSIA's] restrictions through artful pleading").

## III. The Amended Complaint Must Be Dismissed for Lack of Personal Jurisdiction

Plaintiff's failure to establish an exception to sovereign immunity also mandates dismissal of this case for lack of personal jurisdiction under FED. R. CIV. P. 12(b)(2).

## IV.     Plaintiff's Claims Must Be Dismissed as Time-Barred

The SAC alleges entirely new causes of action and relies on the newly alleged Florida agreement despite the fact that the Plaintiff's prior pleadings consistently relied on a different agreement that was allegedly reached weeks later in Venezuela.  Plaintiff's newly asserted claims therefore do not relate back to the filing of his Original Complaint.  *See Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992 (8th Cir. 1989) (holding a newly asserted claim for breach of contract does not relate back to the filing of the original complaint if the plaintiff consistently relied upon a different contract in the original complaint).  Plaintiff failed to address this argument in his opposition brief.  His attempt to raise this issue several days later in a supplemental filing should be disregarded.  But even if this Court were to consider his belated arguments, they are without merit.  Plaintiff merely relies on the general rule that amended claims typically relate back to the filing of the original complaint if they arise out of the same core of facts alleged in the original pleading.  That rule does not apply where, as here, the plaintiff relies on an agreement that was not alleged in the original pleading.  *See Morgan Distrib.*, 868 F.2d at 992; *see also Forzley v. AVCO Corp. Elecs. Div.*, 826 F.2d 974, 981 (11th Cir. 1987) (amended claims relate back only if the original pleading gives notice of the facts giving rise to the new claim).  This Court should not allow Plaintiff to rely on one agreement for purposes of satisfying the statute of limitations and then disavow that agreement and rely on a different, newly-alleged agreement for purposes of establishing subject matter jurisdiction under the FSIA.

Plaintiff also argues that the statute of limitations should be tolled on the grounds that the Republic fraudulently concealed its breach of the alleged agreement.  There are no allegations of fraud in the SAC, much less particularized factual allegations that would satisfy the heightened pleading standards of Rule 9.  But even if there were allegations of fraud, Plaintiff explicitly alleges that, by July 2010, he was aware that the Republic intended to retain the Collection in breach of the Florida agreement.  (SAC ¶ 49.)  That was well more than four-years prior to the filing of the SAC and the first assertion of an agreement made in Florida.  Accordingly, Plaintiff's claims are time-barred.

In addition, Plaintiff's unjust enrichment claims accrued when he allegedly left the Collection in the Republic's possession on November 6, 2007.  *See Kaye v. Ingenio, Filiale de Loto-Quebec, Inc.*, No. 13-61687, 2014 WL 2215770, at *9 (S.D. Fla. May 29, 2014).  Thus,

even assuming that Plaintiff's newly added unjust enrichment claims relates back under Rule 15(c), his claims accrued more than four years prior to the filing of the original complaint on October 15, 2012.

## V. Plaintiff's Contract Claim Is Barred by the Statute of Frauds

Plaintiff falsely asserts that he has submitted documentary evidence of the parties' alleged agreement and argues that the statute of frauds therefore does not apply. The only document that Plaintiff has submitted is the Letter, which is completely irrelevant to his claims. The Letter does not mention the Collection or any negotiations between the parties, let alone reflect an agreement between them. The fact that the Letter is silent on these matters speaks volumes with respect to Plaintiff's allegations of extensive negotiations in the United States.

Regardless of whether the supposed agreement was reached in Florida on October 15, 2007 or in Venezuela on November 6, 2007, Plaintiff contends that the oral agreement and understanding was breached after July 2010 – nearly three years after the supposed formation of the oral agreement. Accordingly, such an oral agreement and understanding would violate the statute of frauds' prohibition on the enforcement of oral contracts requiring performance beyond one year. *See* Fla. Stat. § 672.201.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the SAC with prejudice. The Republic respectfully request oral argument on its motion to dismiss.

Dated:     Miami, Florida                      Respectfully submitted,
           May 16, 2016

                                               **BILZIN SUMBERG BAENA**
                                               **PRICE & AXELROD LLP**

                                               By:  /s/  Mitchell E. Widom
                                               Mitchell E. Widom
                                               Lori P. Lustrin
                                               1450 Brickell Avenue, Suite 2300
                                               Miami, Florida 33131-3456
                                               Telephone:  (212) 696-6000
                                               Facsimile:  (212) 697-1559
                                               mwidom@bilzin.com
                                               llustrin@bilzin.com

                                               – and –

Joseph D. Pizzurro (*pro hac vice*)
Kevin A. Meehan (*pro hac vice*)
CURTIS, MALLET-PREVOST,
   COLT & MOSLE LLP
101 Park Avenue
New York, New York  10178
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
jpizzurro@curtis.com
kmeehan@curtis.com

*Attorneys for Defendant Bolivarian*
*Republic of Venezuela*

# EXHIBIT 6

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

RICARDO DEVENGOECHEA,

                                    Plaintiff,     Case No. 12-cv-23743-PCH/Otazo-Reyes

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,
A Foreign State,

                                    Defendant.

## DEFENDANT'S OBJECTION TO REPORT AND RECOMMENDATION

Dated:  July 22, 2016

BILZIN SUMBERG BAENA
   PRICE & AXELROD LLP
Mitchell E. Widom
Lori P. Lustrin
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
mwidom@ bilzin.com
llustrin@bilzin.com

– and –

Joseph D. Pizzurro (*pro hac vice*)
Kevin A. Meehan (*pro hac vice*)
Robert B. Garcia (*pro hac vice*)
CURTIS, MALLET-PREVOST,
   COLT & MOSLE LLP
101 Park Avenue
New York, New York  10178
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
jpizzurro@curtis.com
kmeehan@curtis.com
robert.garcia@curtis.com

*Attorneys for Defendant Bolivarian Republic
of Venezuela*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................... 1

STATEMENT OF FACTS ............................................................................... 3

    A.  Background of the Case .................................................................. 3

    B.  The Report Recommends Denying the Republic's Motion to Dismiss ..................... 7

ARGUMENT ................................................................................................. 8

I.  The Allegations in the SAC Are Insufficient to Establish
Subject Matter Jurisdiction under the FSIA's Commercial Activity Exception..................... 8

    A.  The First Clause of the Commercial Activity Exception Does Not Apply ................ 8

        1.  Plaintiff's Allegations Are Still Insufficient to Satisfy
the "Substantial Contact" Requirement ........................................... 9

        2.  Plaintiff's Claims Are Not "Based Upon" Any Alleged
Commercial Activity in the United States ...................................... 13

    B.  The Second Clause of the Commercial Activity
Exception Does Not Apply......................................................... 16

    C.  The Commercial Activity Exception Does Not Apply Because Plaintiff's
Claims Are Nothing More Than Retreads of Its Original Takings Claims............... 17

II.  Plaintiff's Claims Are Barred by the Statute of Limitations................................... 19

III.  The Amended Complaint Must Be Dismissed for Lack of Personal Jurisdiction ............... 20

CONCLUSION............................................................................................ 21

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Beg v. Islamic Republic of Pakistan,*
   353 F.3d 1323 (11th Cir. 2003) ......................................................... 18

*Bradley v. Chiron Corp.,*
   136 F.3d 1317 (Fed. Cir. 1998) ......................................................... 11

*Colliton v. Cravath, Swaine & Moore LLP,*
   No. 08 CIV 0400 (NRB), 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008) .......................... 11, 12

*De Sanchez v. Banco Central de Nicaragua,*
   770 F.2d 1385 (5th Cir. 1985) ......................................................... 18

*Forzley v. AVCO Corp. Elecs. Div.,*
   826 F.2d 974 (11th Cir. 1987) ......................................................... 19

*Garb v. Republic of Poland,*
   440 F.3d 579 (2d Cir. 2006) ......................................................... 18

*General Elec. Capital Corp. v. Grossman,*
   991 F.2d 1376 (8th Cir. 1993) ......................................................... 9, 16

*Gerding v. Republic of France,*
   943 F.2d 521 (4th Cir. 1991) ......................................................... 9

*Gersten v. Rundle,*
   833 F. Supp. 906 (S.D. Fla. 1993) ......................................................... 12

*Griffin Indus., Inc. v. Irvin,*
   496 F.3d 1189 (11th Cir. 2007) ......................................................... 12

*Kaye v. Ingenio, Filiale de Loto-Quebec, Inc.,*
   No. 13-61687, 2014 WL 2215770 (S.D. Fla. May 29, 2014) ......................................................... 20

*Kensington Int'l, Ltd. v. Itoua,*
   505 F.3d 147 (2d Cir. 2007) ......................................................... 16

*Mickel Drilling Partners ex rel. Mickel v. Cabot Oil & Gas Corp.,*
   No. 3:CV-11-0061, 2012 WL 4953081, at (M.D. Pa. Oct. 16, 2012) ......................................................... 11

*Morgan Distrib. Co. v. Unidynamic Corp.,*
   868 F.2d 992 (8th Cir. 1989) ......................................................... 19

*Morgan Equip. Co. v. Novokrivorogsky State Ore Mining & Processing Enterprise,*
   57 F. Supp. 2d 863 (N.D. Cal. 1998) ......................................................... 12

*OBB Personenverkehr AG v. Sachs ("OBB"),*
   136 S. Ct. 390 (2015) ......................................................... passim

*Odhiambo v. Republic of Kenya,*
   764 F.3d 31 (D.C. Cir. 2014) ......................................................... 9, 16

*Packsys, S.A. v. Exportadora de Sal, S.A.*,
   No. 15-cv-9704, 2016 WL 3563504 (C.D. Cal. Mar. 9, 2016) .......................... 12, 16

*Palm Beach Strategic Income, LP v. Salzman*,
   No. 10–CV–261, 2011 WL 1655575 (E.D.N.Y. May 2, 2011) ......................... 11, 12

*Phaneuf v. Republic of Indonesia*,
   106 F.3d 302 (9th Cir. 1997) ................................................................ 13

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993) ........................................................................ 2, 15

*Schoeps v. Bayern*,
   27 F. Supp. 3d 540 (S.D.N.Y. 2014) ................................................... 10

*Schoeps v. Bayern*,
   611 F. App'x 32 (2d Cir. 2015) ..................................................... 9, 10, 13

*Simon v. Republic of Hungary*,
   812 F.3d 127 (D.C. Cir. 2016) .......................................................... 17

*Soudavar v. Islamic Republic of Iran*,
   186 F.3d 671 (5th Cir. 1999) ............................................................ 9

*Terenkian v. Republic of Iraq*,
   694 F.3d 1122 (9th Cir. 2012) ..................................................... 9, 12, 16

*Velasco v. Gov't of Indonesia*,
   370 F.3d 392 (4th Cir. 2004) ............................................................ 13

*Zedan v. Kingdom of Saudi Arabia*,
   849 F.2d 1511 (D.C. Cir. 1988) ......................................................... 15

**Federal Statutes**

28 U.S.C. § 1330(b) .......................................................................... 20

28 U.S.C. § 1603(e) ....................................................................... 8, 10

28 U.S.C. § 1605(a)(2) ............................................................. 1, 4, 8, 10

28 U.S.C. § 1605(a)(3) ............................................................. 4, 17, 18

**Federal Rules**

FED. R. CIV. P. 12(b)(2) ..................................................................... 20

Fed. R. Civ. P. 15(c) ......................................................................... 19

FED. R. CIV. P. 6(d) ............................................................................ 1

**State Statutes**

Fla. Stat. § 95.11(3)(k) .................................................................. 19, 20

**Legislative History**

H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 ....................................... 16

**Other Authorities**

Brief for the United States as Amicus Curiae,
   *OBB Personenverkehr AG v. Sachs*, No. 13-1067 (U.S. April 2015) ....................................... 15

Brief for the United States as Amicus Curiae,
   *Odhiambo v. Republic of Kenya*, No. 14-1206 (U.S. May 2016) ............................................. 9

Pursuant to Local Rule 4(b) and Rule 6(d) of the Federal Rules of Civil Procedure, Defendant Bolivarian Republic of Venezuela (the "Republic") submits this objection to the Report and Recommendation, entered on July 5, 2016 (D.E. 150) (the "Report") and respectfully reiterates its request for oral argument.

## PRELIMINARY STATEMENT

The Report concludes that the allegations in the Plaintiff's Second Amended Complaint ("SAC") cure the deficiencies in his prior pleadings and are sufficient to establish jurisdiction in this action against the Republic under the Foreign Sovereign Immunity Act (the "FSIA") pursuant to the FSIA's commercial activity exception, 28 U.S.C. § 1605(a)(2). Adopting the Report would require this Court to disregard well established law on several aspects of the FSIA.

The Report does not actually analyze the jurisdictional allegations in the SAC. Instead, it incorporates the conclusions in the prior Report and Recommendation, dated January 20, 2016 (D.E. 137) (the "Prior Report"), that the proposed allegations in the Plaintiff's Declaration[1] would satisfy the first and second clauses of the commercial activity exception.

The conclusion that Plaintiff has met his burden of pleading subject matter jurisdiction under the first clause of the FSIA's commercial activity exception is contrary to the law in at least two critical respects. First, the Prior Report concludes that the Plaintiff's three alleged meetings with Venezuelan officials in Florida to discuss a potential sale of the Plaintiff's collection of historical artifacts (the "Collection") constitute "substantial contact with the United States" as required under the first clause of the commercial activity exception. The Prior Report disregards that fact that the vast majority of the alleged negotiations occurred in Venezuela, not the United States, and that every Court of Appeals to consider the issue has concluded that

---

[1] "Declaration" refers to the Declaration of Ricardo Devengoechea, dated December 11, 2015, which is appended as Exhibit 6 to the SAC (D.E. 135; D.E. 140-6).

preliminary negotiations, including meetings, in the United States do not constitute "substantial contact with the United States." The Prior Report cites no authority to the contrary.

Second, the Prior Report concludes that the Plaintiff's suit is "based upon" the three preliminary meetings in Florida because those meetings resulted in Plaintiff traveling to *Venezuela* to pursue further negotiations with the Republic in *Venezuela*. However, the Supreme Court in *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) explicitly held that an action is not "based upon" an activity merely because that activity led to conduct that eventually caused harm to the plaintiff. Moreover, the Supreme Court's recent decision in *OBB Personenverkehr AG v. Sachs ("OBB")*, 136 S. Ct. 390 (2015) holds that a plaintiff's claim is "based upon" a commercial activity where that activity constitutes the gravamen of the plaintiff's suit – *i.e.* those acts that actually injured the plaintiff. Here, Plaintiff was not "actually injured" by the alleged negotiations in Florida. Rather, Plaintiff claims that he was injured when the Republic allegedly refused to return the Collection or pay for it, and the SAC makes clear that the Republic's refusal to return or pay for the Collection, as well as Plaintiff's decision to leave the Collection in the Republic's possession, occurred in *Venezuela* – not the United States. Thus, the gravamen of the Plaintiff's suit lies in *Venezuela*.

The Prior Report also concludes that the rarely invoked second clause of the commercial activity exception applies because the Republic's alleged request that the Plaintiff obtain a replacement passport was a "non-commercial" act in the United States. This conclusion rests on the extraordinary inference that *Venezuelan* officials used their positions with the *Venezuelan* government to obtain an emergency appointment for Plaintiff, a *United States* citizen, to obtain a new *United States* passport from the *United States* government. However, the SAC explicitly states that Plaintiff himself arranged his passport appointment. Moreover, the second clause only

applies where the foreign sovereign's alleged act in the United States is in-and-of-itself sufficient to form the basis of the plaintiff's cause of action. The Prior Report does not even mention this critical requirement. And any alleged involvement by the Republic in the Plaintiff's acquisition of a United States passport is completely irrelevant to the Plaintiff's claims. It certainly does not in-and-of-itself form the basis of either of them.

The Report concludes that Plaintiff was free to abandon his prior expropriation theory of jurisdiction and recast his takings claims as claims for breach of contract and unjust enrichment in order to assert jurisdiction under the FSIA's commercial activity exception. The Report does not address, much less distinguish, the overwhelming case law prohibiting a plaintiff from artfully pleading around the requirements of the FSIA's takings exception by recasting claims that are in essence based on a disputed taking of property in an attempt to establish jurisdiction under some other FSIA exception to immunity. Nor does it cite any authority to the contrary. Because Plaintiff can neither satisfy, nor artfully plead his way around, the requirements of the FSIA's expropriation exception, this case must be dismissed with prejudice.

The Report also relies on its erroneous conclusion in the Prior Report that there is personal jurisdiction over the Republic under the FSIA. And, finally, the Report wrongly concludes that the Plaintiff's claims are timely.

## STATEMENT OF FACTS

### A. Background of the Case

On October 15, 2012, Plaintiff, a United States citizen, filed his original complaint. (D.E. 1.) According to the original complaint, an unidentified Venezuelan official contacted Plaintiff about the Collection in October 2007 and invited him to travel to Venezuela. (*Id.* ¶ 15.) The original complaint does not allege any meetings or negotiations, much less any agreement, in the United States. Instead, Plaintiff alleged that he traveled to Venezuela and spent a month

participating in an investigation in Venezuela concerning Gen. Bolivar.[2]  (*Id.* ¶¶ 17-18.)  Plaintiff allegedly reached an "understanding" with the Republic in Venezuela pursuant to which he left the Collection in Venezuela and entrusted it to the Republic subject to its return upon completion of the investigation.  (*Id.* ¶ 20.)  The original complaint states that the Republic's "refusal to return the Devengoechea Collection is a clear act of expropriation of Devengoechea's personal property in violation of international law."  (*Id.* ¶¶ 26-27.)  The original complaint asserted takings claims and sought to establish jurisdiction under the FSIA's expropriation exception, 28 U.S.C. § 1605(a)(3).[3]

More than five months after the Republic moved to dismiss the original complaint, Plaintiff filed his first amended complaint (the "FAC").  (D.E. 106.)  The FAC alleged a completely different set of facts and asserted an entirely new theory of the case.  Plaintiff withdrew all of the claims in his original complaint and abandoned his expropriation theory of jurisdiction.  Instead, the FAC relied solely on the FSIA's commercial activity exception, 28 U.S.C. § 1605(a)(2), to establish jurisdiction and asserted frivolous claims for damages pursuant to that jurisdictional statute.  (D.E. 106 ¶¶ 6, 27-40.)  And, whereas the original complaint alleged an expropriation and did not mention any negotiations between the parties, the FAC told a story about "extensive negotiations" for the sale of the Collection.  (*Id.* ¶ 18.)

The FAC alleged that the parties' negotiations began after the Republic sent him a letter expressing an interest in the Collection.  (*Id.* ¶ 15.)  However, the letter, which is translated in

---

[2] Plaintiff alleged that the Collection was used to conduct DNA testing against the exhumed remains of Gen. Bolivar.  However, that assertion is belied by exhibits that Plaintiff appended to his later pleadings which demonstrate that Collection had nothing to do with these tests and that Gen. Bolivar's remains were tested against the remains of his sister.  (D.E. 140-5 at 7.)

[3] The original complaint alternatively asserted jurisdiction under the FSIA's commercial activity exception on the speculative theory that the Republic might in the future display the Collection in museums in Venezuela and that these hypothetical exhibitions might be advertised and that such advertising might reach U.S. persons.  (*Id.* ¶¶ 30-31.)

full in paragraph 16 of the FAC, does not mention the Collection and is irrelevant to this case. (*Id.* ¶ 16.)[4]  The FAC stated that, after receiving the letter, Plaintiff met with Venezuelan officials and briefly discussed the Collection on a plane at an airport in Florida immediately prior to departing for Venezuela.  (*Id.* ¶ 18.)  The FAC alleged that Plaintiff spent the following month in Venezuela negotiating the sale of the Collection to the Republic.[5]  (*Id.* ¶ 21.)  The FAC alleged that Plaintiff reached an agreement in Venezuela pursuant to which "plaintiff entrusted the Devengoechea Collection to [the Republic] and left the collection in Venezuela" and that the Republic would return the Collection or pay for it.  (*Id.* ¶ 22.)  The FAC stated that no purchase agreement was ever reached and that the Republic refused to return the Collection.  (*Id.* ¶ 23.)

Two days prior to oral argument on the Republic's motion to dismiss the FAC, the Supreme Court rendered its decision in *OBB* that an action is not "based upon a commercial activity carried on in the United States  by the foreign state" under 28 U.S.C. § 1605(a)(2) where the wrongful conduct that allegedly harmed the plaintiff occurred abroad.  Confronted with the *OBB* decision during oral argument, counsel for Plaintiff sought leave to file yet another amended complaint in order to clarify his conclusory allegation of "extensive negotiations in the United States."  (Hrg. Tr. at 32:18-33:14.)

Plaintiff then filed his sworn Declaration containing his proposed allegations.  (D.E. 135.)  While the FAC only alleged a single meeting on a plane in the United States, the Declaration alleges three meetings in Florida with Venezuelan officials totaling nine hours over the course of

---

[4] Instead, the letter acknowledges Plaintiff's "qualifications and experience as a filmmaker and film producer" and invited him to come to Venezuela for the purpose of accompanying a group of Venezuelans who were making a documentary film on the life of Don Joaquin de Mier – Plaintiff's great, great grandfather.  (*Id.*)

[5] During that month of negotiations, Plaintiff allegedly briefly returned to Florida to search for additional artifacts to bring back to Venezuela.  (*Id.* ¶ 20.)  While the FAC alleges that the Republic paid for Plaintiff's airfare for this interim trip, there is no allegation that the Republic purchased these tickets in the United States.  (*Id.*)

three days.  (*Id.* ¶¶ 11-12, 22.)  The first meeting allegedly occurred over dinner at a restaurant in Orlando on October 14, 2007.  (*Id.* ¶ 11.)  The second meeting allegedly occurred at a Marriot hotel in Orlando on October 15, 2007.  (*Id.* ¶ 12.)  During this meeting, the Venezuelan officials allegedly asked Plaintiff to travel to Venezuela.  (*Id.* ¶ 13.)  Plaintiff responded that his passport had expired, and the Venezuelan officials allegedly asked him to obtain a new one.  (*Id.* ¶ 14.) Plaintiff then telephoned the Miami passport office and made an appointment to obtain a replacement U.S. passport.  (*Id.* ¶ 17.)  Plaintiff alleges that he agreed to obtain his passport on the understanding that he would travel with Venezuelan officials on a private jet to Venezuela and that the Republic would examine the Collection in Venezuela and either return it to him or pay for it.[6]  (*Id.* ¶ 18.)  On October 16, 2007, Plaintiff alleges that he obtained his passport and then met with Venezuelan officials for one hour immediately prior to their midnight flight to Venezuela.  (*Id.* ¶¶ 20-22.)

Following the nine hours of alleged negotiations in Florida, Plaintiff spent approximately a month in Venezuela attempting to negotiate a sale of the Collection to the Republic.  (*Id.* ¶ 24.) On November 6, 2007, Plaintiff left Venezuela permanently.  (*Id.* ¶ 27.)  Consistent with his two prior complaints, the Declaration states that, prior to returning to the United States, Plaintiff reached an agreement in Venezuela pursuant to which he would leave the Collection with the Republic in Venezuela and the Republic would either return it or pay for it.  (*Id.*)  The Declaration states that this agreement was breached in July 2010.  (*Id.* ¶ 31.)

The Republic argued that these proposed allegations still failed to satisfy *OBB* because the Declaration, like Plaintiff's prior complaints, alleged that the parties reached an agreement *in Venezuela* that called for performance exclusively *in Venezuela* and that the Republic allegedly

---

[6] Whatever "understanding" Plaintiff had following the meeting at the Marriot hotel, he provided no consideration other than obtaining his own passport.  Thus, there was no contract.

breached this agreement *in Venezuela* and therefore the gravamen of the case lies *in Venezuela*. (D.E. 136 at 10-11.)  Nevertheless, the Magistrate entered the Prior Report recommending that the Republic's motion to dismiss be granted and that Plaintiff be granted leave to replead.  (D.E. 137.)  This Court agreed and adopted the recommendation.  (D.E. 139.)

On March 8, 2016, Plaintiff filed his SAC which, although largely incorporating the allegations in the Declaration, makes yet another dubious revision to his story:  It alleges for the first time in this case that the parties reached an agreement in Florida during the meeting at the Orlando Marriot.  (D.E. 140 ¶¶ 32, 45.)  Despite the fact that Plaintiff's two prior complaints and his sworn Declaration, which is appended as Exhibit 6 to the SAC, consistently state that he entrusted the Collection to the Republic in Venezuela pursuant to an agreement reached in Venezuela, the SAC now claims that he left the Collection with the Republic and returned to the United States pursuant to the newly concocted agreement reached in Florida.  (*Id.* ¶ 45.)

**B.     The Report Recommends Denying the Republic's Motion to Dismiss**

The Report, which was issued without the benefit of oral argument, concludes that the Republic's motion to dismiss the SAC should be denied.  The Report does not analyze whether the allegations in the SAC are sufficient to establish subject matter and personal jurisdiction under the FSIA.  Instead, the Report incorporates by reference the jurisdictional analysis in the Prior Report.  (D.E. 150 at 6.)

The Prior Report found the proposed allegations in Plaintiff's Declaration sufficient to establish subject matter jurisdiction under the first and second clauses of the FSIA's commercial activity exception.  (D.E. 137 at 13-14.)  With respect to the first clause, the Prior Report found that the Plaintiff's claims are "based upon" the alleged meetings in Florida because those meetings led the Plaintiff to travel to Venezuela to continue negotiations for an agreement on the

purchase of the Collection.  (*Id.* at 13.)  The Prior Report also states that the three alleged

meetings between Plaintiff and a Venezuelan official in Florida satisfied the "substantial contact"

requirement of the first clause of the commercial activity exception.  (*Id.* at 12.)  The Prior

Report also concluded that the second clause of the commercial activity exception applies

because the Republic's request that Plaintiff obtain a new United States passport was a non-

commercial act in the United States.  (*Id.* at 14.)  However, the Prior Report does not even

mention, let alone analyze, the "based upon" requirement of the second clause.

 The Report rejects the Republic's argument that the FSIA's commercial activity

exception is inapplicable where, as here, the plaintiff's claims are in essence based on a disputed

taking of property, and concludes that Plaintiff was free to abandon his expropriation theory of

jurisdiction and recast his takings claims in order to attempt to establish jurisdiction under the

commercial activity exception.  (D.E. 150 at 6.)  The Report also concludes that there is personal

jurisdiction over the Republic and that the Plaintiff's claims are timely.  (*Id.* at 6-7.)

**ARGUMENT**

 This Court must review the Report *de novo*.  *See* Local Magistrate Rule 4(b).

**I.** **The Allegations in the SAC Are Insufficient to Establish Subject
Matter Jurisdiction under the FSIA's Commercial Activity Exception**

 **A.** **The First Clause of the Commercial Activity Exception Does Not Apply**

 The first clause of the commercial activity exception requires factual allegations

showing: (1) that the defendant carried on commercial activity in the United States, which is

defined in the FSIA as activity "having substantial contact with the United States," and (2) that

the plaintiff's claims are actually "based upon" such commercial activity.  28 U.S.C. §§ 1603(e)

and 1605(a)(2).  Here, Plaintiff cannot satisfy either requirement.

1.      Plaintiff's Allegations Are Still Insufficient
to Satisfy the "Substantial Contact" Requirement

The Report relies solely on the conclusion in the Prior Report that the alleged *nine hours* of preliminary meetings in the United States constitute "substantial contact with the United States." However, those nine hours of preliminary meetings in Florida preceded a *month* of alleged negotiations in *Venezuela*. And it is well established that negotiations in the United States, including meetings in the United States, do not constitute "substantial contact with the United States" where, as here, the bulk of the negotiations occurred abroad. *See, e.g., Schoeps v. Bayern,* 611 F. App'x 32, 34 (2d Cir. 2015). Indeed, every single court to consider the issue, including the Courts of Appeals for the Second, Fourth, Fifth, Eighth, Ninth and D.C. Circuits, has held that preliminary negotiations, such as meetings and correspondence, do not satisfy the "substantial contact" requirement. *See id.*; *see also Odhiambo v. Republic of Kenya*, 764 F.3d 31, 36 (D.C. Cir. 2014) ("our cases have held that mere business meetings in the United States do not suffice to create substantial contact with the United States"); *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1133 (9th Cir. 2012) (execution of a contract in the United States did not constitute substantial contact with the United States); *Soudavar v. Islamic Republic of Iran*, 186 F.3d 671, 673-74 (5th Cir. 1999) (organizing a meeting in New York to persuade businessmen to travel to Iran did not constitute substantial contact with the United States); *General Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1383-84 (8th Cir. 1993) (preliminary meeting in Minnesota was not a substantial contact); *Gerding v. Republic of France*, 943 F.2d 521, 527 (4th Cir. 1991) (defendant's attendance at a meeting in New Jersey was not a substantial contact with the United States).[7]

---

[7] The United States government recently took the position that "isolated meetings in the United States … do not give an activity otherwise conducted overseas the requisite 'substantial contact' with this country." *See* Brief for the United States as Amicus Curiae, *Odhiambo v. Republic of Kenya*, No. 14-1206 (U.S. May 2016), at 14.

The Prior Report does not cite any case law to the contrary.  Instead, it attempts to distinguish this overwhelming authority based on inaccurate and narrow readings of these cases. For example, the Prior Report asserts that the Second Circuit's holding in *Schoeps* that a meeting in New York between an art dealer and a government official did not constitute "substantial contact with the United States" is distinguishable because the government official supposedly "lacked even apparent authority to make a binding offer" and that the meeting "did not result in any kind of agreement … except perhaps a commitment to talk further."  (D.E. 137 at 12, quoting *Schoeps*, 611 F. App'x at 34.)  However, the Second Circuit's holding in *Schoeps* is not limited to cases in which the government official lacks authority to bind the foreign sovereign. In fact, the language quoted by the Prior Report is the Second Circuit's description of the *district court's* factual findings.  And the district court's decision in *Schoeps* makes clear that the issue of apparent authority was not critical to its holding.  *See Schoeps v. Bayern*, 27 F. Supp. 3d 540, 545 (S.D.N.Y. 2014) ("And even if, contrary to the evidence, a bargain for *Madame Soler* had been vetted at the initial New York meeting, an individual preliminary meeting cannot and does not by itself constitute a commercial activity 'having substantial contact with the United States' under FSIA §§ 1605 (a)(2) and 1603(e).").  Even if *Schoeps* could be so narrowly read, the SAC does not allege that any Venezuelan official who met with the Plaintiff in Florida had any authority to bind the Republic.  And, as in *Schoeps*, the meetings in Florida never resulted in a contract for the sale of the Collection and, in fact, resulted in no agreement at all "except perhaps a commitment to talk further."  *Schoeps*, 611 F. App'x at 34.  Thus, far from distinguishing *Schoeps*, the Prior Report actually makes clear that it stands on all fours with this case.

No doubt realizing that the preliminary negotiations alleged in his Declaration cannot, as a matter of law, satisfy the substantial contact requirement, Plaintiff seeks to avoid another

dismissal by alleging for the first time in his SAC that an understanding and agreement was reached in Florida whereby Plaintiff would travel to Venezuela with the Collection to continue negotiations for a possible sale of the Collection and the Republic would either purchase the Collection or return it. (D.E. 140 ¶¶ 32, 45.) The Report does not address this newly contrived allegation. And this Court should not consider it either. It is entirely inconsistent with the allegations in Plaintiff's two prior complaints and his sworn Declaration that, while *in Venezuela*, he entrusted the Collection to the Republic upon an alleged agreement made *in Venezuela* that the Republic would purchase or return the Collection *in Venezuela*. (D.E. 1 ¶ 20; D.E. 106 ¶ 22; D.E. 140-6 ¶ 28.)

It is well established that a plaintiff cannot consistently rely on one agreement in his initial pleadings and then amend his pleadings to assert a different one in order to avoid dismissal. *See Mickel Drilling Partners ex rel. Mickel v. Cabot Oil & Gas Corp.*, No. 3:CV-11-0061, 2012 WL 4953081, at *6 (M.D. Pa. Oct. 16, 2012); *Palm Beach Strategic Income, LP v. Salzman*, No. 10–CV–261, 2011 WL 1655575, at *6-7 (E.D.N.Y. May 2, 2011). Plaintiff's new allegation that an agreement was reached in Florida is "nothing more than a transparent attempt … to manufacture subject matter jurisdiction" and therefore should not be accepted as true for purposes of this motion to dismiss. *See Palm Beach Strategic Income,* 2011 WL 1655575, at *2; *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1325-26 (Fed. Cir. 1998) (affirming district court's decision to strike factual allegations in amended complaint that contradicted allegations in the original complaint); *Colliton v. Cravath, Swaine & Moore LLP*, No. 08 CIV 0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009) (court need not accept as true allegation in an amended complaint where the "plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss …

[and] directly contradicts the facts set forth in his original complaint") (alterations in original).
In fact, some courts have gone even further and "held that 'dubious and contradictory factual
allegations' in an amended complaint can subject a party to Rule 11 sanctions." *Palm Beach*
*Strategic Income,* 2011 WL 1655575, at *5 (citing *Colliton,* 2008 WL 4386764, at *13-14).
Accordingly, this Court should disregard the newly minted allegation that the parties reached an
agreement in Florida – particularly in light of the Supreme Court's recent admonition against
"allow[ing] plaintiffs to evade the [FSIA's] restrictions through artful pleading." *OBB*, 136 S.
Ct. at 396.[8]

But even accepting this dubious allegation, the supposed formation of an agreement in
Florida does not constitute "substantial contact with the United States" because the bulk of the
parties' negotiations occurred in *Venezuela* and the newly concocted agreement does not call for
performance in the United States by the Republic.[9] *See Terenkian*, 694 F.3d at 1136-37
("execution of a contract in the United States alone, without more, is not sufficient to satisfy the
first clause of [the commercial activity exception]"); *Morgan Equip. Co. v. Novokrivorogsky*
*State Ore Mining & Processing Enter.*, 57 F. Supp. 2d 863, 872 (N.D. Cal. 1998) (alleged
execution of a contract in San Francisco did not constitute substantial contact with the United
States where the "core of negotiations took place abroad"); *see also Packsys, S.A. v. Exportadora*
*de Sal, S.A.*, No. 15-cv-9704, 2016 WL 3563504, at *5 (C.D. Cal. Mar. 9, 2016) ("even if the
Contract was conceived, negotiated, and signed almost exclusively in the United States, those

---

[8] Plaintiff's assertion that an agreement was reached in Florida should also be disregarded
because it is directly contradicted by the Plaintiff's sworn Declaration, which is appended as
Exhibit 6 to the SAC (D.E. 140-6 ¶ 28). *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206
(11th Cir. 2007); *Gersten v. Rundle*, 833 F. Supp. 906, 910 (S.D. Fla. 1993).

[9] Plaintiff contends that he "fully performed under the agreement by leaving the collection with
defendant" (D.E. 147 at 20), and the SAC makes clear that this occurred in *Venezuela*. (D.E. 140
¶ 45; D.E. 140-6 ¶ 28.)

acts are 'insufficiently significant' to meet the commercial activity exception").  In addition,

Plaintiff's newly contrived agreement is nothing more than "a commitment to talk further" in

*Venezuela*, which is not sufficient to satisfy the "substantial contact" requirement.  *See Schoeps*,

611 F. App'x at 34.

Finally, Plaintiff cannot predicate jurisdiction over the Republic under Section 1605(a)(2)

on the newly concocted agreement alleged in the SAC because there is no allegation that the

Venezuelan officials who negotiated and entered into this supposed agreement had actual

authority to bind the Republic.  Indeed, it is well established that, where, as here, there is no

allegation that the foreign state has empowered its official with actual authority, the acts of the

official cannot be attributed to the foreign state for purposes of the commercial activity

exception.  *See Velasco v. Gov't of Indonesia,* 370 F.3d 392, 400 (4th Cir. 2004) ("the

commercial activity exception may be invoked against a foreign state only when its officials

have actual authority"); *Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 308 (9th Cir. 1997) ("If

the foreign state has not empowered its agent to act, the agent's unauthorized act cannot be

attributed to the foreign state; there is no activity of the foreign state.").  Thus, Plaintiff's failure

to allege that the Republic empowered these Venezuelan officials with actual authority to engage

in any of the activities alleged in the SAC mandates dismissal of this case.

> 2.  Plaintiff's Claims Are Not "Based Upon" Any
> Alleged Commercial Activity in the United States

The Supreme Court's recent decision in *OBB* reaffirmed its strict interpretation of the

commercial activity exception's "based upon" requirement.  *See OBB*, 136 S. Ct. at 395-96.  The

Court held that the "based upon" requirement is only satisfied where the foreign sovereign's

alleged conduct in the United States constitutes the "gravamen" of the plaintiff's lawsuit.  *See id.*

at 396.  The Court explained that to determine the gravamen of an action courts must "zero[] in

on the core of [the plaintiff's] suit: the [ ] sovereign [defendant's] acts that actually injured [the plaintiff]." *Id.* Where, as here, the wrongful conduct that allegedly injured the plaintiff occurred abroad, the first clause of the commercial activity exception does not apply. *See id.* at 398.

The Report relies entirely on the conclusion in the Prior Report that:

> [T]he gravamen of the suit is Venezuela's negotiations with Devengoechea in the United States to purchase the Bolivar Collection, as a result of which Devengoechea agreed to travel to Venezuela and bring the collection there for examination, testing and cataloging, after which either an agreement would be reached on the purchase amount or the collection would be returned to Devengoechea. Thus, … there was no "disconnect" between the activities of its officials in the United States and Devengoechea's recast claims for breach of implied contract in fact and/or unjust enrichment.

(D.E. 137 at 13.) This conclusion is completely at odds with the Supreme Court's holding in *OBB* that the "gravamen" of the suit is determined by looking at the "acts that actually injured" the plaintiff. *OBB*, 136 S. Ct. at 396. The preliminary negotiations in Florida did not "actually injure[]" the Plaintiff. Plaintiff alleges that, following the three days of preliminary negotiations in Florida, he spent nearly a month negotiating with the Republic *in Venezuela* and allegedly left the Collection in the Republic's possession *in Venezuela* upon an alleged oral agreement made *in Venezuela* that the Republic would purchase or return the Collection *in Venezuela* – an agreement that the Republic supposedly breached *in Venezuela*. (D.E. 140-6 ¶ 28.) Thus, the gravamen of Plaintiff's case is the Republic's alleged refusal to return the Collection or pay for it *in Venezuela* and therefore the first clause of the commercial activity exception does not apply.

Moreover, the Prior Report's conclusion that the preliminary meetings in Florida are the gravamen of Plaintiff's suit because those meetings led to further conduct in Venezuela that ultimately led to Plaintiff's injuries directly conflicts with the Supreme Court's holding in *Nelson* that an action is not "based upon" activities merely because those "activities led to the conduct

that eventually injured the [plaintiff]." *Nelson*, 507 U.S. at 358. Thus, the alleged preliminary negotiations in Florida are far too attenuated to be the basis of Plaintiff's claims. *See id.*; *see also Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511, 1513 (D.C. Cir. 1988) (Congress did not intend for "jurisdiction under the first clause to be based upon acts that are not themselves commercial transactions, but that are merely precursors to commercial transactions.").

The Prior Report also erroneously concluded that the Plaintiff's claims are "based upon" the preliminary meetings in Florida because "there was no 'disconnect' between th[os]e activities" and his claims. (D.E. 137 at 13.) The phrase "based upon" in Section 1605(a)(2) must be read to "call[] for something *more than a mere connection* with, or relation to, commercial activity." *Nelson*, 507 U.S. at 358 (emphasis added). As the United States government explained in its *amicus* brief in *OBB* the "phrase 'based upon' refers to what is fundamental to a claim, amounting to its most important part" and not activities that are "at the periphery of the wrong alleged." *See* Brief for the United States as Amicus Curiae, *OBB Personenverkehr AG v. Sachs*, No. 13-1067 (U.S. April 2015), at 8. Here, the preliminary negotiations alleged in the SAC have no legal significance to Plaintiff's claims and are, at most, peripheral to this case.

Once the Republic brought the recently decided *OBB* decision to the attention of the Court, Plaintiff realized that his claim, as pleaded, was based upon an agreement made in Venezuela and, thus, no matter how much more he could pad his complaint with allegations of negotiations in the United States, he still faced dismissal. Thus, three and a half years into this case he concocted a new oral agreement, one he claims was reached in Florida before he left for Venezuela. (D.E. 140 ¶¶ 32, 45.) The Report does not address this newly contrived allegation. And, for the reasons discussed above, this Court should disregard this new contradictory

allegation as a transparent attempt to avoid another dismissal. *See supra* pp. 10-12. But even accepting this allegation, Plaintiff's claims are not "based upon" this newly concocted agreement. The gravamen of a breach of contract claim is the breach of the contract, not the formation of the contract. *See Terenkian*, 694 F.3d at 1137 n.7 (holding that the plaintiffs' claims were "based upon" the breach of the contract abroad and not the execution of the contract in New York"); *Packsys,* 2016 WL 3563504, at *5 (breach of contract claim was "based upon" the alleged breach in Mexico and not the negotiation and execution of the contract in the United States). Here, the SAC alleges that the transfer of possession and control of the Collection to the Republic and the Republic's alleged refusal to return it both occurred *in Venezuela*. Thus, even accepting Plaintiff's new and inconsistent allegations, the gravamen of his action still lies in *Venezuela*.

### B. The Second Clause of the Commercial Activity Exception Does Not Apply

The second clause of the commercial activity exception applies where the claim is based on an act by the foreign state in the United States in connection with the foreign state's commercial activity elsewhere. 28 U.S.C. § 1605(a)(2). Courts have interpreted the second clause as applying to "non-commercial acts" performed by the foreign state in the United States. *See, e.g., Kensington Int'l, Ltd. v. Itoua*, 505 F.3d 147, 157 (2d Cir. 2007). Moreover, the second clause only applies where the act performed in the United States is in and of itself sufficient to form the basis of the plaintiff's cause of action. *See Odhiambo*, 764 F.3d at 37-38; *Grossman*, 991 F.2d at 1384. Indeed, "the legislative history is 'crystal clear' that clause two's reference to acts 'performed in the United States …' is 'limited to those' acts 'which in and of themselves are sufficient to form the basis of a cause of action.'" *Odhiambo*, 764 F.3d at 37-38 (quoting H.R. Rep. No. 94-1487, at 19 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617-18)).

- 16 -

The Report relies exclusively on the conclusion in the Prior Report that the second clause

the commercial activity exception applies because Venezuelan officials allegedly asked Plaintiff

to obtain a U.S. passport during the meeting at the Orlando Marriot.  (D.E. 137 at 14.)  However,

the Prior Report never even mentions, let alone analyzes, the "based upon" requirement of the

second clause of the commercial activity exception.  The Republic's alleged request that Plaintiff

obtain a passport is not the gravamen of Plaintiff's case.  Nor is it sufficient in-and-of-itself to

form the basis of the Plaintiff's claims for breach of contract and unjust enrichment.  It is utterly

irrelevant to this case.  Accordingly, this Court should not adopt the Report's conclusion with

respect the second clause of the FSIA's commercial activity exception.[10]

### C.    The Commercial Activity Exception Does Not Apply Because Plaintiff's Claims Are Nothing More Than Retreads of Its Original Takings Claims

Plaintiff originally alleged that his property had been expropriated by the Republic and

sought to establish jurisdiction under the FSIA's takings exception.  (D.E. 1 ¶ 4.)  Thereafter,

Plaintiff supposedly "came to recognize that this case was exclusively a commercial-activity

case" and recast his takings claims as claims for breach of contract and unjust enrichment.  (D.E.

147 at 19.)[11]  The Report concludes, without citing any authority, that Plaintiff was free to

abandon his expropriation theory of jurisdiction and to recast his original takings claims as

claims for breach of contract and unjust enrichment in an attempt to establish jurisdiction under

---

[10] The Prior Report's conclusion rests solely on its finding that the Republic's request was "non-commercial" because "it can be inferred that the Venezuelan officials utilized their positions with the Venezuelan government to obtain the emergency [passport] appointment."  (D.E. 137 at 14.)  However, that inference is directly contradicted by the SAC, which explicitly states that Plaintiff, a U.S. citizen, arranged his passport appointment himself.  (D.E. 140 ¶ 31.)

[11] Plaintiff's epiphany was no doubt prompted by the realization that he cannot possibly satisfy the FSIA's takings exception because he alleges that the Collection remains in Venezuela in the possession of the Republic.  (D.E. 140 ¶ 10.)  Indeed, the takings exception would apply only if the Collection, or any property exchanged for it, was "present in the United States in connection with a commercial activity carried on in the United States by the [Republic]."  S*ee, e.g., Simon v. Republic of Hungary*, 812 F.3d 127, 146 (D.C. Cir. 2016) (quoting 28 U.S.C. § 1605(a)(3)).

the FSIA's commercial activity exception. (D.E. 150 at 6.) This conclusion is contrary to overwhelming case law and therefore this Court should not adopt it.

It is well established that where, as here, a plaintiff's claim is based on a disputed taking of property by a foreign sovereign, subject matter jurisdiction can only be established under the FSIA's takings exception, 28 U.S.C. § 1605(a)(3). *See, e.g., Beg v. Islamic Republic of Pakistan*, 353 F.3d 1323, 1326 (11th Cir. 2003). "Federal courts have repeatedly rejected litigants' attempts to establish subject matter jurisdiction pursuant to other FSIA exceptions when their claims are in essence based on disputed takings of property." *Garb v. Republic of Poland,* 440 F.3d 579, 588 (2d Cir. 2006). Thus, a plaintiff cannot avoid the requirements of the FSIA's takings exception by artfully pleading a claim for an unjust taking as some other cause of action. *See id.* ("[W]hen a claim is based on what is in substance a taking of property … it should be considered *only* under the takings exception of Section 1605(a)(3). To hold otherwise would be to allow plaintiffs to escape the requirements of Section 1605(a)(3) through artful recharacterization of their takings claims." (emphasis original)); *De Sanchez v. Banco Central de Nicaragua,* 770 F.2d 1385, 1398 (5th Cir. 1985) ("[plaintiff's conversion claim] although sounding in tort, is essentially a claim for an unjust taking of property. … We do not believe that Congress intended plaintiffs to be able to rephrase their takings in terms of conversion and thereby bring the claims even where the takings [do not satisfy Section 1605(a)(3)]").

The Report does not address, much less distinguish, this overwhelming authority. Nor does it cite any authority to the contrary. This Court should therefore decline to adopt the Report and, instead, dismiss this case in its entirety for want of subject matter jurisdiction under the FSIA's takings exception.

## II.    Plaintiff's Claims Are Barred by the Statute of Limitations

The Report concludes that Plaintiff's breach of contract claim relates back to the filing of the original complaint because "there was no breach of contract claim in the original pleading." (D.E. 150 at 6-7.)  However, under Rule 15(c) of the Federal Rules of Civil Procedure, a claim raised for the first time in an amended complaint relates back to the filing date of the original complaint for statute of limitations purposes only if the original complaint gives notice of the facts giving rise to the new claim.  *See Forzley v. AVCO Corp. Elecs. Div.*, 826 F.2d 974, 981 (11th Cir. 1987).  While Plaintiff's newly minted contract claims are based on an agreement allegedly reached during a meeting at the Marriot hotel in Orlando, this meeting and the supposed agreement are absent from the original complaint.  In fact, the original complaint does not allege any meetings or negotiations for the sale of the Collection.  It claims that the Collection was expropriated.  (D.E. 1 ¶ 27.)  Thus, the original complaint does not give notice of Plaintiff's new claims.  Moreover, as explained above, Plaintiff now relies on a newly contrived agreement that is different from the agreement alleged in his prior complaints and his sworn Declaration.  And, where, as here, a plaintiff asserts a breach of contract claim for the first time in an amended complaint, that claim does not relate back to the filing of the original complaint if the plaintiff consistently relied upon a different contract in the original complaint.  *See Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992 (8th Cir. 1989).  Accordingly, Plaintiff's breach of contract claim does not relate back to the original complaint and is time-barred under the applicable four-year statute of limitations because the alleged breach in July 2010 occurred well more than four years prior to the filing of the SAC on March 8, 2016.  *See* Fla. Stat. § 95.11(3)(k).

The Report also incorporates the conclusion in the Prior Report that Plaintiff's claim for unjust enrichment is not time-barred because it is unclear when the Republic retained the benefit

of the Collection.  (D.E. 150 at 7; D.E. 137 at 18).  However, a claim for unjust enrichment

accrues when the benefit is actually conferred and not when the defendant availed himself of the

benefit.  *See Kaye v. Ingenio, Filiale de Loto-Quebec, Inc.*, No. 13-61687, 2014 WL 2215770, at

*9 (S.D. Fla. May 29, 2014).  Thus, Plaintiff's claim is time-barred under the applicable four-

year statute of limitations because he entrusted the Collection to the Republic on November 6,

2007 – more than four years prior to the filing of the original complaint.  *See* Fla. Stat. §

95.11(3)(k).

## III.     The Amended Complaint Must Be Dismissed for Lack of Personal Jurisdiction

Plaintiff's failure to establish a FSIA exception mandates dismissal of this case for lack

of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and 28 U.S.C. § 1330(b).

# CONCLUSION

For the foregoing reasons, the Court should decline to adopt the Report and should

instead dismiss the Plaintiff's case with prejudice.

Dated:      Miami, Florida                Respectfully submitted,
               July 22, 2016

BILZIN SUMBERG BAENA
   PRICE & AXELROD LLP

By:  /s/  Mitchell E. Widom
          Mitchell E. Widom
          Lori P. Lustrin
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
mwidom@ bilzin.com
llustrin@bilzin.com

– and –

Joseph D. Pizzurro (*pro hac vice*)
Kevin A. Meehan (*pro hac vice*)
Robert B. Garcia (*pro hac vice*)
CURTIS, MALLET-PREVOST,
   COLT & MOSLE LLP
101 Park Avenue
New York, New York  10178
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
jpizzurro@curtis.com
kmeehan@curtis.com
robert.garcia@curtis.com

*Attorneys for Defendant Bolivarian*
*Republic of Venezuela*

26005730v6

# EXHIBIT 7

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 12-cv-23743 HUCK/MCALILEY

RICARDO DEVENGOECHEA,

      Plaintiff,

v.

                                         <u>**ORAL ARGUMENT REQUESTED**</u>

BOLIVARIAN REPUBLIC OF VENEZUELA,
A Foreign State,

      Defendant.

_____/

<u>**DEFENDANT'S MOTION TO DISMISS FOR WANT OF SUBJECT MATTER
JURISDICTION UNDER THE FSIA AND FOR SUMMARY JUDGMENT**</u>

**BILZIN SUMBERG BAENA
PRICE & AXELROD LLP**

Mitchell E. Widom, Esq.
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Telephone: (305) 375-6127
Facsimile: (305) 351-2265
mwidom@bilzin.com
eservice@bilzin.com

– and –

Joseph D. Pizzurro (*pro hac vice*)
Kevin A. Meehan (*pro hac vice*)
**CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178
Telephone: (212) 696-6000
Facsimile: (212) 697-1559
jpizzurro@curtis.com
kmeehan@curtis.com
*Attorneys for Defendant Bolivarian Republic
of Venezuela*

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ............................................................................ 1

**BACKGROUND** ................................................................................................. 3

    A.    Statement of Facts ............................................................................ 3

    B.    Procedural History ............................................................................ 7

**ARGUMENT** ...................................................................................................... 8

    I.    This Case Must Be Dismissed for Lack of
        Subject Matter Jurisdiction under the FSIA .................................... 8

    A.    The Republic's Motion Presents a Factual Challenge to Subject Matter
        Jurisdiction and therefore Plaintiff Has the Burden of Proving Jurisdiction ............... 8

    B.    Plaintiff Cannot Establish Subject Matter Jurisdiction
        under the FSIA's Commercial Activity Exception .......................... 9

    II.    The Republic's Motion for Summary Judgment Should Be
        Granted Because Plaintiff Cannot Establish His Claims on the Merits ........................ 14

    A.    The Collection Was Returned to Plaintiff Over Six Years Ago and
        Thus He Cannot Establish a Breach of Contract or Unjust Enrichment ...................... 14

    B.    Plaintiff Cannot Recover Damages for Unidentified Items ........................................ 16

**CONCLUSION** .................................................................................................. 18

## Table of Authorities

**Cases**

*Araya-Solorzano v. Gov't of Republic of Nicaragua,*
   562 F. App'x 901 (11th Cir. 2014) ....................................................... 10

*Argentine Republic v. Amerada Hess Shipping Corp.,*
   488 U.S. 428 (1989) ............................................................................. 8

*Arguropoulos v. City of Alton,*
   539 F.3d 724 (7th Cir. 2008) ............................................................. 15

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.,*
   137 S. Ct. 1312 (2017) ........................................................................ 8

*Can-Am Int'l, LLC v. Republic of Trinidad & Tobago,*
   169 F. App'x 396 (5th Cir. 2006) ....................................................... 10

*Carmichael v. Kellogg, Brown & Root Services, Inc.,*
   572 F.3d 1271 (11th Cir. 2009) ....................................................... 8, 9

*Celotex v. Myrtle Nell Catrett,*
   477 U.S. 317 (1986) ........................................................................... 14

*Cordoba v. Dillard's, Inc.,*
   419 F.3d 1169 (11th Cir. 2005) .............................................. 15, 16, 17

*Cycles, Ltd. v. W.J. Digby, Inc.,*
   889 F.2d 612 (5th Cir. 1989) ............................................................. 12

*De Csepel v. Republic of Hungary,*
   169 F. Supp. 3d 143 (D.D.C. 2016) ......................................... 9, 12, 13

*De Csepel v. Republic of Hungary,*
   714 F.3d 591 (D.C. Cir. 2013) ................................................. 9, 12, 13

*Devengoechea v. Bolivarian Republic of Venezuela,*
   889 F.3d 1213 (11th Cir. 2018) ................................................. passim

*Dunham v. State,*
   140 Fla. 754 (1939) ........................................................................... 12

*Ellis v. England,*
   432 F.3d 1321 (11th Cir. 2005) ......................................................... 16

*Fitzpatrick v. City of Atlanta,*
   2 F.3d 1112 (11th Cir. 1993) ............................................................. 14

*Global Index, Inc. v. Mkapa,*
   290 F. Supp. 2d 108 (D.D.C. 2003) ................................................... 10

*Goodman Holdings v. Rafidain Bank,*
   26 F.3d 1143 (D.C. Cir. 1994) ........................................................... 10

*Gordon v. Beary*,
    No. 08-CV-0073-ORL, 2010 U.S. Dist. LEXIS 149607 (M. D. Fla. Apr. 12, 2010) ............... 17

*Guevara v. Republic of Peru*,
    608 F.3d 1297 (11th Cir. 2010) ........................................................................... 9

*Hawk v. Atlanta Peach Movers*,
    469 F. App'x 783 (11th Cir. 2012) ....................................................................... 15

*Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*,
    784 F.3d 804 (D.C. Cir. 2015) ................................................................. 10, 12, 13

*In re Janmar, Inc.*,
    4 B.R. 4 (Bankr. N.D. Ga. 1979) ......................................................................... 12

*Macuba v. DeBoer*,
    193 F.3d 1316 (11th Cir. 1999) .......................................................................... 15

*Nebraska v. Wyoming*,
    507 U.S. 584 (1993) ....................................................................................... 14

*Odhiambo v. Republic of Kenya*,
    764 F.3d 31 (D.C. Cir. 2014) ............................................................................. 10

*OSI, Inc. v. United States*,
    285 F.3d 947 (11th Cir. 2002) ............................................................................ 9

*Papi Express, Inc. v. Dosal Tobacco Corp.*,
    677 So.2d 1314 (Fla. 3d Dist. Ct. App. 1996) ......................................................... 12

*Peterson v. Royal Kingdom of Saudi Arabia*,
    416 F.3d 83 (D.C. Cir. 2005) ............................................................................. 10

*Phoenix Consulting Inc. v. Republic of Angola*,
    216 F.3d 36 (D.C. Cir. 2000) .............................................................................. 8

*Republic of Argentina v. Weltover, Inc.*,
    504 U.S. 607 (1992) ....................................................................................... 10

*Rogers v. Petroleo Brasileiro, S.A.*,
    673 F.3d 131 (2d Cir. 2012) .............................................................................. 10

*Rosner v. United States*,
    231 F. Supp. 2d 1202 (S.D. Fla. 2002) ............................................................. 16, 17

*Samco Global Arms, Inc. v. Arita*,
    395 F.3d 1212 (11th Cir. 2005) .......................................................................... 10

*Samco Global Arms, Inc. v. Republic of Honduras*,
    No. 10-20196, 2012 WL 1372197 (S.D. Fla. Mar. 29, 2012),
    *aff'd* 511 F. App'x 828 (11th Cir. 2013) ............................................................ 13

*Thomson v. Gaskill*,
    315 U.S. 442 (1942) ........................................................................................ 9

*Verlinden B.V. v. Cent. Bank of Nigeria*,
    461 U.S. 480 (1983) ........................................................................................ 8

*Westfield v. Federal Republic of Germany*,
    633 F.3d 409 (6th Cir. 2011) ............................................................................... 13

*Zimmerman v. Roche*,
    No. 09-CV-0605-JEC, 2010 U.S. Dist. LEXIS 153141 (N.D. Ga. Sept. 20, 2010) ................. 17

**Statutes**

28 U.S.C. § 1605(a)(2) ........................................................................................ 1, 10

**Federal Rules**

Fed. R. Civ. P. 12(b)(1) ..................................................................................... 1, 2, 18

Fed. R. Civ. P. 56 ........................................................................................... 1, 14, 18

FRE 801(d)(2) ...................................................................................................... 4

**Other Authorities**

8 C.J.S. Bailments § 1 ........................................................................................... 12

8 C.J.S. Bailments § 105 ........................................................................................ 12

8A Am. Jur. 2d Bailments § 135 ............................................................................... 12

8A Am. Jur. 2d Bailments § 70 ................................................................................ 17

Restatement (Second) of Torts § 237 (1965) ................................................................ 17

Defendant Bolivarian Republic of Venezuela (the "<u>Republic</u>") submits this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act (the "<u>FSIA</u>") and for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1]

## PRELIMINARY STATEMENT

Plaintiff's entire case is predicated on the allegation that the Republic took his collection of family heirlooms (the "<u>Collection</u>") and refused to either return or pay for it.  However, discovery has proven that Plaintiff has been in possession of the Collection since at least 2012.  Indeed, Plaintiff entered into a written contract with his cousin, Jorge Mier Hoffman (the "<u>Hoffman Contract</u>"), designating Mr. Hoffman to act as Plaintiff's agent in Venezuela to either sell the Collection or recover it.  The evidence shows that the Collection was, in fact, returned to Mr. Hoffman in Venezuela in 2012.  Despite filing three complaints and three sworn affidavits in this case, Plaintiff failed to mention the fact that he retained Mr. Hoffman to act as his agent in Venezuela pursuant to the Hoffman Contract.  Nor did Plaintiff mention the fact that Mr. Hoffman has been in possession of the Collection since 2012.  Rather, Plaintiff has prosecuted this action against the Republic for six years claiming that the Republic is in possession of his Collection when, in fact, Plaintiff and his attorneys have known that Plaintiff, through his Venezuelan agent, Mr. Hoffman, has been in possession of the Collection the whole time.  This fact and others preclude the exercise of subject matter jurisdiction under the FSIA and demonstrate that Plaintiff cannot establish his claims on the merits.

The Eleventh Circuit held that Plaintiff's allegations, when accepted as true and construed liberally and when drawing all inferences in favor of the Plaintiff, were sufficient to withstand a facial challenge to subject matter jurisdiction under the FSIA.  It found that Plaintiff had alleged a breach of a bailment agreement and that it was possible to infer that the Republic was obligated to deliver the Collection to the Plaintiff in Florida.  Breach of such an obligation to perform in the United States would result in a "direct effect in the United States" and thereby confer jurisdiction under the third clause of the FSIA's commercial activity exception, 28 U.S.C. § 1605(a)(2).  The Eleventh Circuit's decision did not, however, conclusively resolve the issue of

---

[1] Earlier today, the Republic filed an Agreed Motion to Stay Proceedings Pending Settlement. (D.E. 220.)  The Republic files this motion out of an abundance of caution to comply with the December 14, 2018 deadline for filing dispositive motions set in this Court's order, entered on November 2, 2018.  (D.E. 207.)

subject matter jurisdiction. Rather, it left open the question of whether the Republic, as a matter of fact, had a contractual obligation to deliver the Collection to the Plaintiff in Florida. The evidence establishes that the answer is no.

Plaintiff has now testified that he did not agree (and never would have agreed) to have the Republic ship the Collection to him in Florida. And there is not a shred of evidence that the Republic agreed to undertake such an obligation. To the contrary, the uncontroverted evidence establishes that Plaintiff was obligated to travel to Venezuela to reclaim the Collection. Indeed, Plaintiff asserts that the terms of his alleged agreement with the Republic are referenced in his emails with his agent, Mr. Hoffman. Those emails state that Plaintiff would need to travel to Venezuela to either accept a payment for the Collection or reclaim it. In addition, Mr. Hoffman sent numerous emails to Plaintiff claiming that he demanded, on behalf of Plaintiff, that the Collection be delivered to Mr. Hoffman in Venezuela. The very fact that Plaintiff designated Mr. Hoffman to act as his agent in Venezuela reflects Plaintiff's understanding that the Republic could return the Collection at the same place it allegedly took possession of the Collection – *Venezuela*. Because the Republic had no obligation to perform in the United States, this Court lacks subject matter jurisdiction under the FSIA. Therefore, this case must be dismissed with prejudice pursuant to Rule 12(b)(1).

Plaintiff also cannot establish the merits of his claims and therefore this Court should, alternatively, enter summary judgment in favor of the Republic. The uncontroverted evidence shows that the Collection was returned to Plaintiff's agent in Venezuela, Mr. Hoffman. Thus, Plaintiff cannot establish that the Republic breached any alleged bailment agreement or was otherwise unjustly enriched.

Finally, even if Plaintiff could establish jurisdiction under the FSIA as well as prove the merits and timeliness of his claims, the Republic would still be entitled to partial summary judgment because it is undisputed that Plaintiff cannot identify the items in the Collection – let alone prove that such items even exist. As a matter of law, a bailment claim must be dismissed where, as here, the plaintiff fails to identify with particularity the property that is the subject of the bailment. While Plaintiff speculates that the Collection may have contained thousands of documents, including potentially hundreds of documents signed by Simon Bolivar, Plaintiff never had an inventory of the Collection and himself only laid eyes on 50 to 70 documents. Plaintiff has produced photographs of only one document that purports to be signed by Bolivar

and that document is a commercial license with no apparent historical significance. At best, Plaintiff has produced photographs of about ten documents, a medal, a pair of tassels and a lock of hair. There is no evidence of any other documents or objects. Plaintiff cannot inflate his claim for damages by speculating that there were thousands of other items that nobody – including Plaintiff – has ever seen. Such a speculative claim cannot, as a matter of law, withstand summary judgment.

## BACKGROUND

### A.    Statement of Facts

The Republic is a foreign state under the FSIA. Plaintiff is a U.S. citizen residing in Orlando, Florida. (Defendant's Rule 56.1 Statement of Undisputed Facts in Support of Motion for Summary Judgment ("SOF") ¶ 1.) Plaintiff claims that the Collection was passed down through his father's family and that he eventually inherited it from his mother following her passing in July 2005. (*Id*.) However, his father's will does not mention the Collection. (*Id*.) Plaintiff has no inventory of the Collection and admits that he cannot identify any of the items in the Collection save for about a dozen documents and objects. (SOF ¶ 2.) Plaintiff has produced photographs of ten documents that he claims were part of the Collection. (*Id*.) One of the photographs purports to show a commercial license signed by Simon Bolivar permitting Plaintiff's ancestor, Joaquin de Mier, to operate a merchant ship in Colombian waters. (*Id*.) Another photograph purports to show a military promotion form elevating Joaquin de Mier to the rank of Acting Colonel. (*Id*.) This document is not signed by Bolivar. (*Id*.) In fact, aside from the commercial license, none of the other documents photographed by Plaintiff are signed by Bolivar, and there is no evidence that any other alleged documents ever existed. (*Id*.) Plaintiff also produced photographs of a vial of hair (which Plaintiff contends without any evidence is Bolivar's hair), a medal (which Plaintiff contends without any evidence is a "Liberation Medal of Peru") and a pair of tassels (which Plaintiff contends without any evidence were epaulets once belonging to Napoleon Bonaparte). (SOF ¶ 2.)

Plaintiff "had no idea how to even get these historic documents verified and to determine their historical significance." (SOF ¶ 3.) Plaintiff was considering discarding the Collection as junk. (*Id*.) Instead, Plaintiff emailed his cousin, Jorge Mier Hoffman, a historian and author of several books about Simon Bolivar. (SOF ¶¶ 3-4.) Mr. Hoffman was not a Venezuelan official. (SOF ¶ 4.) Mr. Hoffman allegedly responded by telling Plaintiff that he would meet with him

during a trip to Florida.[2]  (SOF ¶ 5.)  Mr. Hoffman has stated that his trip to Florida was not part of a government investigation.  (*Id.*)  Plaintiff alleges that he first met with Mr. Hoffman at a sushi restaurant in Orlando on October 14, 2007.  (*Id.*)  Plaintiff claims that Alberto Arvelo, Mr. Arvelo's wife, Delcy Rodriguez and Mr. Hoffman's wife were also present at this dinner.  (*Id.*)  Mr. Arvelo is a famous film director who was in the process of making a movie about Simon Bolivar called "The Liberator," which was released in 2013.  (*Id.*)  Mr. Arvelo was not a Venezuelan official.  (*Id.*)  Ms. Rodriguez was, at the time, the sister of Venezuela's Vice President, Jorge Rodriguez, and worked in her brother's office.[3]

Plaintiff alleges that he met with Mr. Hoffman, Ms. Rodriguez and Mr. Arvelo the following day at a hotel in Orlando and that they engaged in a "cursory examination" of the Collection.  (SOF ¶ 6.)  Plaintiff claims that he was invited to return to Venezuela with Mr. Hoffman.  (*Id.*)  On October 16, 2007, Plaintiff arrived at the airport in Orlando to travel to Venezuela.  (SOF ¶ 7.)  Plaintiff claims that he reached an agreement with Delcy Rodriguez at the airport whereby he agreed to travel to Venezuela to negotiate a sale of the Collection and that, if no agreement was reached, he would return to Florida with his Collection.  (*Id.*)

Plaintiff then spent several weeks in Venezuela allegedly examining the Collection in his hotel room with Mr. Hoffman, Mr. Arvelo, Nelly Quintero and Jorge Chasin.  (SOF ¶ 8.)  None of these individuals were Venezuelan officials.  (SOF ¶¶ 4, 5, 8.)  Plaintiff claims that Ms. Quintero was "a white witch" who was tasked with managing the "spiritual mojo" of the situation.  (SOF ¶ 8.)  Mr. Chasin was a university professor who worked as a historical consultant for Mr. Arvelo's film, The Liberator.  (*Id.*)  Plaintiff does not claim that Jorge or Delcy Rodriguez ever visited his hotel room in Venezuela or otherwise participated in the alleged examination of the Collection.[4]  (*Id.*)

---

[2] Mr. Hoffman was Plaintiff's designated Venezuelan agent under the Hoffman Contract.  (SOF ¶ 13.)  Thus, the Republic is entitled to rely on Mr. Hoffman's statements as statements of an opposing party's agent, which do not constitute hearsay under FRE 801(d)(2).

[3] Ms. Rodriguez has subsequently held several positions in the Venezuelan government and is currently the Vice President of Venezuela.

[4] Plaintiff claims that Jorge Rodriguez played in a softball game in Venezuela attended by Plaintiff and that he attended a party at Mr. Rodriguez's home following the game.  (SOF ¶ 9.)  Plaintiff did not bring his Collection to these events and his pictures of these events do not show him interacting with any Venezuelan officials.  (*Id.*)  Rather, during this party, Plaintiff spoke

Plaintiff claims that he was summoned to bring the Collection to President Hugo Chavez's home. (SOF ¶ 10.) Plaintiff claims that he and Mr. Arvelo brought the Collection to Hugo Chavez's home where Plaintiff agreed to leave his Collection with the Republic in Venezuela. (*Id.*) Plaintiff claims that he transferred possession of the Collection to an unidentified person at Hugo Chavez's home. (*Id.*) Plaintiff does not know the name of this person and did not get any contact information from them. (*Id.*) Plaintiff nevertheless claims that this unidentified person was an "assistant" to Hugo Chavez. (*Id.*) Plaintiff claims that the only person who witnessed the transfer of the Collection was Mr. Arvelo. (*Id.*) However, Mr. Arvelo says that this never happened. (*Id.*) Mr. Arvelo says that he has never been to Hugo Chavez's home. (*Id.*)

Plaintiff also claims that he transferred possession of the Collection to this unidentified person pursuant to an agreement in which the Republic would either purchase the Collection or return it. (SOF ¶ 11.) This alleged agreement was never reduced to writing. (*Id.*) Plaintiff admits that he never got a receipt or any documentation of the transfer. (*Id.*) In fact, Plaintiff has no documentation or correspondence from the Republic at all. (*Id.*) Plaintiff further admits that he did not have any telephone numbers, emails or other contact information for any Venezuelan officials and thus was never in communication with any such officials. (*Id.*)

Plaintiff did, however, enter into a written contract with his cousin, Jorge Mier Hoffman (the "Hoffman Contract"). (SOF ¶ 13.) The Hoffman Contract explicitly authorized Mr. Hoffman to act as Plaintiff's agent in Venezuela and "to do whatever is required" to further the Plaintiff's "interest in recovering the documents and objects … or, failing that, in reaching an economic agreement" with respect to the Collection. (*Id.*) Between at least 2008 and 2012,[5] Mr. Hoffman sent numerous emails to Plaintiff explaining his efforts to sell or recover the Collection. (*Id.*) Mr. Hoffman states that he was in communication with Venezuelan officials, auction houses and third party collectors. (*Id.*) However, Mr. Hoffman never copied Plaintiff on any of these supposed communications. (*Id.*)

---

with an attorney about a dispute between Plaintiff and his Colombian half-siblings regarding their inheritance of their father's farm in Colombia. (*Id.*)

[5] Plaintiff did not produce any emails or documents predating 2008 because such documents were destroyed. (D.E. 208 at ECF 4.)

Nevertheless, Plaintiff asserts that the emails between Plaintiff and Mr. Hoffman reflect the terms of Plaintiff's alleged bailment agreement with the Republic. (SOF ¶ 14.) Those emails demonstrate that Plaintiff and Mr. Hoffman understood that the Collection would be returned *in Venezuela*. (*Id.*) Indeed, Mr. Hoffman tells Plaintiff that he is going to meet with an unnamed Minister and that afterwards "I [Hoffman] will call you [Plaintiff] to come to Caracas next week for one of two things: 1) THE FINANCIAL OFFER THE GOVERNMENT WANTS TO MAKE [or] 2) to collect all of the material you gave to President Chavez." (*Id.*) Mr. Hoffman also claims to have written a demand letter to the Venezuelan Vice President "to request an interview, in order to arrange the delivery, through this Office [*i.e.* Hoffman's office in Venezuela], of the Liberator's documents and objects …" that were part of the Collection. (*Id.*) Mr. Hoffman also claims that he repeatedly demanded that the Collection be returned to Plaintiff via delivery to Mr. Hoffman in Venezuela. (*Id.*) These emails are consistent with Plaintiff's deposition testimony that he never agreed (and never would have agreed) to have the Republic ship the Collection to him in Florida. (SOF ¶ 12.) In fact, such a shipment would have been impossible because the Republic did not have Plaintiff's address, which changed several times after he relinquished the Collection in 2007. (SOF ¶ 15.)

In 2011, the relationship between Plaintiff and Mr. Hoffman began to deteriorate. (SOF ¶ 16.) In July 2011, Plaintiff sent emails to Mr. Hoffman demanding the names and contact information of the Venezuelan officials with whom Mr. Hoffman claimed to have been communicating, stating "I have nothing." (*Id.*) Plaintiff and his attorneys were concerned that four years had passed since Plaintiff left the Collection in Venezuela. (*Id.*)

Thereafter, Mr. Hoffman recovered and took possession of the Collection in Venezuela. (SOF ¶ 19.) In October 2012, Mr. Hoffman told Plaintiff that he had already recovered the Collection and telling Plaintiff to come to Venezuela to get it.[6] (*Id.*) Mr. Hoffman requested a 5% increase in his commission, explaining that the 20% commission on future sales that Plaintiff originally agreed to pay him was not commensurate with the amount of effort and expenses that he incurred while acting as Plaintiff's agent. (*Id.*) Mr. Hoffman negotiated with Plaintiff and his attorneys in the United States (Marco Ferri) and Venezuela (Pedro Itriago) but they were unable

---

[6] There is a large unexplained gap in Plaintiff's document production in which there is not a single communication between Plaintiff and Mr. Hoffman in the 15 month span between July 2011 and October 2012. (D.E. 200-1.)

to resolve the dispute over Mr. Hoffman's commission – a dispute that had nothing to do with the Republic. (*Id.*)

On November 20, 2012, Plaintiff's litigation counsel, Max Price, sent an email to Mr. Hoffman stating that he had reviewed the "prior written agreement" between Plaintiff and Mr. Hoffman (i.e. the Hoffman Contract) and gave notice of termination of the Hoffman Contract based on Mr. Hoffman's "failure to obtain a legitimate written offer from the Venezuelan government." (SOF ¶ 18.) Mr. Price instructed Mr. Hoffman to contact Mr. Ferri, who would "make immediate arrangements to secure possession of the entire collection [in Venezuela] and return it safely to our client in the United States." (*Id.*) Mr. Ferri testified that these "arrangements" included Mr. Hoffman delivering the Collection to the Plaintiff in Panama or transferring possession of the Collection to Plaintiff's Venezuelan attorney, Pedro Itriago, in Venezuela. (*Id.*) Mr. Price offered Mr. Hoffman a 10% commission on any future sale of the Collection if he fully cooperated. (*Id.*) Mr. Price warned Mr. Hoffman that if he did not cooperate, Plaintiff would report his theft of the Collection to law enforcement. (*Id.*) Mr. Price told Mr. Hoffman that he had a choice – cooperate with Plaintiff and "receive a considerable payment for your efforts or refuse and place yourself at risk" with the authorities. (*Id.*)

Mr. Hoffman declined Mr. Price's offer. (SOF ¶ 19.) Mr. Hoffman stated that Mr. Price's email was nothing more than a tactic to reduce his agency commission from the agreed upon 20% of future sales to 10%. (*Id.*) Mr. Hoffman reiterated his request for Plaintiff to come to Venezuela and retrieve his Collection. (*Id.*) However, Plaintiff never went to Venezuela to retrieve the Collection. (*Id.*) Nor did any of Plaintiff's attorneys ever meet with Mr. Hoffman. The last known location of the Collection was a safe in Mr. Hoffman's home. (*Id.*) Mr. Hoffman is now deceased. (SOF ¶ 20.)

## B. Procedural History

Plaintiff initiated this action by filing his original complaint on October 12, 2012, which asserts claims predicated on conversion and expropriation. (D.E. 1.) On March 8, 2016, Plaintiff filed his Second Amended Complaint ("SAC"), which alleges previously unasserted claims for breach of contract and unjust enrichment. (D.E. 140.) On March 25, 2016, the Republic moved to dismiss the SAC, asserting a facial challenge to subject matter jurisdiction under the FSIA. (D.E. 141). On September 29, 2016, this Court denied the motion to dismiss. (D.E. 165.) The Republic appealed. (D.E. 169.) The Eleventh Circuit affirmed, holding that

Plaintiff's allegations, when accepted as true and making all inferences in favor of the Plaintiff, were sufficient to withstand a facial challenge to subject matter jurisdiction under the FSIA. *Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1218, 1225 (11th Cir. 2018).

On remand, this Court granted the Republic's motion for jurisdictional discovery to support a factual challenge to jurisdiction under the FSIA. (D.E. 195.) The Republic now renews its motion to dismiss pursuant to Rule 12(b)(1) to raise a factual challenge to subject matter jurisdiction under the FSIA based on the factual record developed through discovery and, alternatively, moves for summary judgment on the merits pursuant to Rule 56.

## ARGUMENT

I.  **This Case Must Be Dismissed for Lack of**
    **Subject Matter Jurisdiction under the FSIA**

### A.  **The Republic's Motion Presents a Factual Challenge to Subject Matter**
    **Jurisdiction and therefore Plaintiff Has the Burden of Proving Jurisdiction**

The FSIA provides the sole basis for obtaining subject matter jurisdiction in any action against a foreign state. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). Foreign states are presumptively immune from the jurisdiction of U.S. courts. 28 U.S.C. § 1604. That presumption can be overcome only where the plaintiff establishes the substantive requirements for abrogating foreign sovereign immunity set forth in 28 U.S.C. §§ 1605-1607. Satisfying those substantive requirements is a prerequisite to the exercise of subject matter jurisdiction under 28 U.S.C. § 1330(a). Subject matter jurisdiction under the FSIA is a threshold issue that must be decided prior to reaching the merits. *See Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co. ("H&P")*, 137 S. Ct. 1312, 1317 (2017); *Verlinden B.V. v. Cent. Bank of Nigeria,* 461 U.S. 480, 493-94 (1983).

There are two ways to attack subject matter jurisdiction: (i) a facial challenge to the legal sufficiency of the jurisdictional allegations in the complaint and (ii) a factual challenge to jurisdiction based on the evidentiary record. *See Carmichael v. Kellogg, Brown & Root Services, Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009); *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000). On a factual challenge, a plaintiff's jurisdictional allegations are not accepted as true and are not liberally construed in favor of the plaintiff. *See Carmichael*, 572 F.3d at 1279. Rather, courts must go beyond the pleadings and consider extrinsic evidence. *See id.* In evaluating the evidence, courts are "free to weigh the facts and [are] not constrained to view them in the light most favorable to [the plaintiff]." *Id.* And on "a factual challenge to

subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)).

Following the denial of a facial challenge to subject matter jurisdiction, a defendant may bring a factual challenge where the evidence shows that the plaintiff cannot prove a basis for subject matter jurisdiction. *See, e.g., Guevara v. Republic of Peru*, 608 F.3d 1297, 1310 (11th Cir. 2010); *Carmichael*, 572 F.3d at 1279; *De Csepel v. Republic of Hungary*, 169 F. Supp. 3d 143 (D.D.C. 2016). Here, the Eleventh Circuit relied on the D.C. Circuit's decision in *De Csepel v. Republic of Hungary*, 714 F.3d 591 (D.C. Cir. 2013), in concluding that Plaintiff's allegations, when accepted as true and liberally construed, were sufficient to withstand a facial challenge to subject matter jurisdiction under the FSIA. *Devengoechea*, 889 F.3d at 1225-26. In *De Csepel*, the D.C. Circuit held that the plaintiffs' allegations could be read to infer that Hungary had an obligation under a bailment contract to deliver the bailed property to the plaintiffs in the United States. *De Csepel*, 714 F.3d at 601. It held that the alleged breach of that obligation caused a direct effect in the United States under the third clause of the FSIA's commercial activity exception. *Id.* However, on remand, the district court granted Hungary's renewed motion to dismiss the bailment claims for want of subject matter jurisdiction under the FSIA because the evidence showed that the plaintiffs could not, in fact, establish that Hungary had an obligation to deliver the property to the United States. *De Csepel*, 169 F. Supp. 3d at 162-63. As demonstrated below, the evidence shows that Plaintiff likewise cannot establish that the Republic had an obligation to perform in the United States and thus cannot establish subject matter jurisdiction under the FSIA.

**B.    Plaintiff Cannot Establish Subject Matter Jurisdiction under the FSIA's Commercial Activity Exception**

Plaintiff asserts jurisdiction under the FSIA's commercial activity exception, which provides that a foreign state is not immune from the jurisdiction of U.S. courts where:

> [T]he action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). The Eleventh Circuit held that Plaintiff's suit is "based upon" an act that occurred outside of the United States – the Republic's alleged breach of a supposed bailment agreement. *Devengoechea*, 889 F.3d at 1223-24. This case must therefore be analyzed under the third clause (or so-called "direct effect" clause) of the FSIA's commercial activity, which is the only clause that applies to actions "based upon" an act occurring outside of the United States. *Id.*

The direct effect clause applies in a breach of contract case where the foreign state breaches an obligation that was required to be performed in the United States. *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 619 (1992). It is not sufficient to show that the foreign state knew that the plaintiff was a U.S. citizen and would prefer performance in the United States. *See Can-Am Int'l, LLC v. Republic of Trinidad & Tobago*, 169 F. App'x 396, 407-08 (5th Cir. 2006); *Peterson v. Royal Kingdom of Saudi Arabia*, 416 F.3d 83, 90-91 (D.C. Cir. 2005). Nor does the direct effect clause apply where the foreign sovereign could have performed the obligation outside of the United States. *See Araya-Solorzano v. Gov't of Republic of Nicaragua,* 562 F. App'x 901, 904 (11th Cir. 2014); *see also Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela ("H&P"),* 784 F.3d 804, 818 (D.C. Cir. 2015) (no direct effect where the place of performance "depends solely on a foreign government's discretion"). Rather, the plaintiff must demonstrate that the contract establishes the United States as the place of performance. *See Samco Global Arms, Inc. v. Arita,* 395 F.3d 1212, 1217 (11th Cir. 2005); *see also Odhiambo v. Republic of Kenya,* 764 F.3d 31, 38-39 (D.C. Cir. 2014) (no direct effect where there is a "contract that establishes a [foreign] or unspecified place of performance"); *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 139-40 (2d Cir. 2012) ("Here, as in *Kensington*, *Rafidain Bank*, and *Filetech*, there was no requirement that payment be made in the United States nor any provision permitting the holder to designate a place of performance."); *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1146-47 (D.C. Cir. 1994) (no direct effect where "[n]either New York nor any other United States location was designated as the 'place of performance'"); *Global Index, Inc. v. Mkapa*, 290 F. Supp. 2d 108, 114 (D.D.C. 2003) ("[W]ithout an express designation of the United States as the place of performance, courts have refused to find a direct effect.").

Here, the Eleventh Circuit found that the allegations in the SAC, when accepted as true and read in the light most favorable to Plaintiff, were sufficient to support the inference that the Republic had an obligation to deliver the Collection to the Plaintiff in the United States and that

the Republic's alleged breach of this obligation resulted in a direct effect in the United States. *Devengoechea*, 889 F.3d at 1225.  The question presented on this motion is whether Plaintiff has established that the Republic was, in fact, contractually obligated to deliver the Collection to the Plaintiff in the United States.  The evidence establishes the answer is no.

Plaintiff testified that he never agreed to have the Republic ship the Collection to him in the United States.  (SOF ¶ 12.)  That testimony is consistent with the uncontroverted evidence demonstrating that Plaintiff had an obligation to reclaim the Collection in Venezuela.  (SOF ¶ 14.)  Plaintiff's sworn interrogatory responses state that the terms of his alleged agreement with the Republic are referenced in his emails with his Venezuelan agent, Mr. Hoffman.[7]  (*Id.*)  Those emails explicitly state that Plaintiff would need to travel *to Venezuela* to reclaim the Collection *in Venezuela*.  (*Id.*)  The very fact that Plaintiff retained Mr. Hoffman to act as his agent *in Venezuela* to sell or recover the Collection reflects Plaintiff's understanding that the Collection would be returned *in Venezuela*.  (*Id.*)  Mr. Hoffman consistently stated that the return of the Collection would be accomplished through the delivery of the Collection to Mr. Hoffman *in Venezuela* – and, in fact, the Collection was returned to Mr. Hoffman *in Venezuela*.  (SOF ¶¶ 14, 17.)  In any event, it would have been impossible for the Republic to deliver the Collection to the Plaintiff in Florida because the Republic did not have Plaintiff's address, which he changed several times following his relinquishment of the Collection in Venezuela in 2007.  (SOF ¶ 15.)  And Plaintiff had no contact information for any Venezuelan official to arrange any delivery of the Collection.  (SOF ¶ 11.)  Thus, the evidence conclusively shows that any redelivery of the Collection was to occur in Venezuela – not the United States.

---

[7] Plaintiff also makes the absurd assertion that his emails with Mr. Hoffman are themselves a contract with the Republic on the grounds that Mr. Hoffman was a Venezuelan official.  These emails cannot constitute an agreement between Plaintiff and the Republic because Mr. Hoffman was not an agent, employee or official of the Republic.  (SOF ¶ 4.)  Plaintiff's claims to the contrary are frivolous.  *See infra* at p. 15 .  But even if Mr. Hoffman was a Venezuelan official, his emails would still demonstrate that the return of the Collection was to occur in Venezuela.  (SOF ¶¶ 12, 14, 15, 17, 19.)  Furthermore, after Mr. Hoffman recovered the Collection, Plaintiff retained yet another Venezuelan agent, Pedro Itriago, to take possession of the Collection from Mr. Hoffman in Venezuela.  (SOF ¶ 18.)  Plaintiff's attorney, Marco Ferri, testified that Plaintiff also considered taking possession of the Collection from Mr. Hoffman in Panama.  (*Id.*)  Accordingly, even if Mr. Hoffman was a Venezuelan official, which he was not, the evidence would still establish that the Republic was under no obligation to deliver the Collection to the Plaintiff in Florida.

Even if the evidence did not establish Venezuela as the place of performance, the evidence refutes any inference that the Republic was required to deliver the Collection to Plaintiff in Florida.  Where, as here, there is no explicit agreement to the contrary, SOF ¶ 11, a bailee can satisfy its obligation to return the property by keeping it until the bailor reclaims it.  *See Dunham v. State*, 140 Fla. 754, 759 (1939) (quoting 8 C.J.S. Bailments § 1); *Papi Express, Inc. v. Dosal Tobacco Corp.*, 677 So. 2d 1314, 1315 (Fla. 3d Dist. Ct. App. 1996).  Indeed, a bailee's obligation to return the property ordinarily entails "only a duty to tender possession of the item at the premises of the bailee."  *See In re Janmar, Inc.*, 4 B.R. 4, 11 (Bankr. N.D. Ga. 1979) (quoting 8 C.J.S. Bailments § 105).  At most, "the bailee has the implied duty to return the bailment to the bailor at the place the property was received."  *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 617 (5th Cir. 1989); 8A Am. Jur. 2d Bailments § 135.

Here, there is not a scintilla of evidence even suggesting that the Republic expressly agreed to deliver the Collection to the Plaintiff in the United States.  There is no written agreement between Plaintiff and the Republic.  (SOF ¶ 11.)  Plaintiff did not obtain any deposit or receipt when he allegedly transferred possession of the Collection.  (*Id.*)  In fact, he has no documentation or correspondence from the Republic whatsoever.  (*Id.*)  Furthermore, Plaintiff has consistently alleged that he transferred possession of the Collection in Venezuela, *id.*, and therefore, as a matter of law, the Republic had the option to simply retain the Collection until Plaintiff or his agent reclaimed it.  *See, e.g., Dunham*, 140 Fla. at 759; *Papi Express*, 677 So. 2d at 1315.  Because the Republic had the discretion to return the Collection in Venezuela, any purported breach of the alleged bailment could not have had a direct effect in the United States.  *See De Csepel*, 169 F. Supp. 3d at 162 (discussing *H&P*, 784 F.3d at 818).

As the Eleventh Circuit observed, the *De Csepel* case is "materially indistinguishable" from the present case.  *Devengoechea*, 889 F.3d at 1225.  The plaintiffs in *De Csepel* sued Hungary, claiming it breached a bailment agreement by refusing to return a collection of artwork.  *De Csepel*, 714 F.3d at 594.  The D.C. Circuit held that the plaintiffs' complaint was sufficient to withstand a facial challenge to jurisdiction under the FSIA, stating: "drawing all reasonable inferences from the complaint in the [plaintiffs'] favor, as we must at this stage of the proceedings, we find that the [plaintiffs have] alleged facts that, if true, would satisfy the commercial activity exception's requirement of a 'direct effect' in the United States."  *Id.*  at 601

- 12 -

(internal citation omitted). That decision was predicated on the inference that Hungary had an obligation to return the collection to the plaintiffs in the United States. *Id.*

On remand, the district court found "the evidence soundly refutes that inference" and granted Hungary's "Renewed Motion to Dismiss" the bailment claims for want of jurisdiction under the FSIA. *De Csepel*, 169 F. Supp. 3d at 162-63. The evidence showed that ten paintings in the collection were governed by a written contract between Hungary and the American owner of the artwork. *Id.* at 160. While the contract was silent on the place of performance, Hungary had relinquished possession of four other paintings to the plaintiffs' agent in Hungary. *Id.* at 160-61. With respect to the remaining artwork, the court found that, while there was circumstantial evidence of a bailment, the mere fact that Hungary was in possession of plaintiffs' artwork pursuant to a bailment "is simply not enough to infer a direct effect on the United States." *Id.* at 160. Rather, the critical question was whether the contract established "the U.S. as the place of performance at the time of contract formation, not whether the performance is possible after the fact." *Id.* at 162. The court explained: "Where 'the alleged effect depends solely on a foreign government's discretion' in performing upon an agreement, breach of that agreement can have no direct effect on the United States." *Id.* (quoting *H&P*, 784 F.3d at 818). Thus, the fact that Hungary had entered into a bailment agreement with a U.S. resident was "not enough for the commercial activity exception to apply" because there was "no evidence that the bailment agreements placed any restriction on the mode of Hungary's performance at the time of execution." *Id.*; *see also Westfield v. Federal Republic of Germany*, 633 F.3d 409, 415 (6th Cir. 2011) ("[Plaintiffs] have not alleged that Germany ever promised to deliver Westfield's art collection to the United States. Because Germany had not obligated itself to do anything in the United States, we cannot say that its actions caused a direct effect in the United States."); *Samco Global Arms, Inc. v. Republic of Honduras*, No. 10-20196, 2012 WL 1372197, at *3 (S.D. Fla. Mar. 29, 2012), *aff'd* 511 F. App'x 828 (11th Cir. 2013) (Honduras's breach of a bailment agreement did not have a direct effect in the United States because, although Honduras delivered some of the property to plaintiff in Florida, the agreement did not require it to do so).

The grounds for dismissal here are far more compelling than in *De Csepel*. Unlike Hungary, the Republic did not merely have discretion to perform outside of the United States – the evidence establishes that the parties understood that the Collection was to be returned to Plaintiff in *Venezuela*. (SOF ¶¶ 12, 14, 15, 17.) In short, Venezuela, not the United States, was

the place of performance.  Furthermore, the Collection was, in fact, returned to Plaintiff's agent *in Venezuela*.  (SOF ¶¶ 13, 17.)  Similar to the plaintiffs in *De Csepel*, Plaintiff designated not one but two agents to act on his behalf in Venezuela to recover the Collection in Venezuela: Messrs. Hoffman and Itriago.  (SOF ¶¶ 13, 17.)  Mr. Hoffman consistently requested that the Collection be returned to Plaintiff via delivery to Mr. Hoffman in Venezuela and Mr. Hoffman repeatedly told Plaintiff that he would need to come to Venezuela to pick it up.  (SOF ¶¶ 14, 17, 19.)  And the evidence shows that the Collection was, in fact, returned to Plaintiff's Venezuelan agent, Mr. Hoffman, in Venezuela.  (SOF ¶ 17.)  Because the evidence establishes that any bailment between Plaintiff and the Republic was to be performed in Venezuela, an alleged breach of that agreement could not have a direct effect in the United States.  Thus, this case must be dismissed because Plaintiff cannot establish subject matter jurisdiction under the FSIA.

## II.     The Republic's Motion for Summary Judgment Should Be Granted Because Plaintiff Cannot Establish His Claims on the Merits

Summary judgment is warranted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  Where, as here, "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case."  *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted)).  In that context, the moving party need only "point out to the district court [] that there is an absence of evidence to support the non-moving party's case."  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993).  Thus, a defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case.  *See id.*  Here, even if Plaintiff could establish subject matter jurisdiction under the FSIA, the uncontroverted evidence shows that Plaintiff cannot establish his claims on the merits.

### A.     The Collection Was Returned to Plaintiff Over Six Years Ago and Thus He Cannot Establish a Breach of Contract or Unjust Enrichment

Plaintiff's own documents show that the Collection was, in fact, returned to him in Venezuela.  Pursuant to the Hoffman Contract, Plaintiff designated Mr. Hoffman to act as Plaintiff's agent in Venezuela to recover the Collection.  (SOF ¶ 13.)  Plaintiff's documents show

that Mr. Hoffman repeatedly demanded that the Republic deliver the Collection to him in Venezuela. (SOF ¶ 14.) Those documents also show that Mr. Hoffman was successful in recovering the Collection. (SOF ¶ 17.) Indeed, in October 2012, Mr. Hoffman informed Plaintiff that the Republic returned the Collection to him in Venezuela and instructed Plaintiff to travel to Venezuela to pick it up. (*Id.*) Thus, even if Plaintiff could establish a bailment agreement with the Republic, Plaintiff cannot establish any breach of that agreement because the evidence shows that the Collection was returned to Plaintiff's designated Venezuelan agent, Mr. Hoffman, in Venezuela. The fact that the Collection was returned to Plaintiff is also fatal to his unjust enrichment claim. Accordingly, this Court should grant the Republic's motion for summary judgment because Plaintiff cannot establish any of his claims on the merits.

Plaintiff claims that Mr. Hoffman was a Venezuelan official, suggesting that the Collection was still effectively in the Republic's possession after being returned to Mr. Hoffman. (Declaration of Kevin A. Meehan, dated December 14, 2018 ("Meehan Decl."), Ex. 7 at pp. 1, 3.) Plaintiff is relying on his own self-serving testimony that Mr. Hoffman told Plaintiff that he was a Venezuelan official. (Meehan Decl., Ex. 1 at 31:6-21.) That hearsay statement is inadmissible and therefore cannot create a triable issue of material fact. *See Macuba v. DeBoer*, 193 F.3d 1316, 1322-1325 (11th Cir. 1999). Furthermore, Mr. Hoffman was Plaintiff's agent – not the Republic's. (SOF ¶¶ 4, 13.) Indeed, the Hoffman Contract explicitly authorizes Mr. Hoffman to act as Plaintiff's agent in Venezuela "to do whatever is required" to further the Plaintiff's "interest in recovering the documents and objects … or, failing that, in reaching an economic agreement" with the Republic. (*Id.*) It is ridiculous for Plaintiff to claim that he retained a member of the Venezuelan government as his agent to deal with the Venezuelan government. Mr. Hoffman was Plaintiff's cousin and agent. (SOF ¶¶ 3, 13.) He was private citizen. (SOF ¶ 4.) He was a historian who wrote books about Simon Bolivar. (*Id.*) But Mr. Hoffman was never an employee, agent or official of the Venezuelan government. (SOF ¶ 4.)

Next, Plaintiff testified that he does not believe that Mr. Hoffman recovered the Collection. (Meehan Decl., Ex. 1 at 73:6-23.) Plaintiff cannot create a *genuine* issue of material fact by claiming not to believe a fact established by the evidence. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181-82 (11th Cir. 2005) (speculation that a person was lying cannot defeat summary judgment); *Argyropoulos v. City of Alton*, 539 F.3d 724, 737 (7th Cir. 2008) (same); *see also Hawk v. Atlanta Peach Movers*, 469 F. App'x 783, 785 (11th Cir. 2012) ("[T]he non-

moving party cannot create a genuine issue of material fact through speculation or evidence that is 'merely colorable'…") (internal citations omitted); *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (non-movant's testimony that was "based, in part, upon information and belief, cannot raise genuine issues of fact, and thus also cannot defeat a motion for summary judgment"). Indeed, the entire purpose of summary judgment would be undermined if a party could defeat summary judgment by simply claiming to disbelieve a fact established in the record. *See Cordoba*, 419 F.3d at 1181 ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (emphasis in original).

Furthermore, the evidence establishes that Mr. Hoffman was, in fact, in possession of the Collection. Mr. Hoffman repeatedly told the Plaintiff that he was in possession of the Collection. (SOF ¶¶ 17-19.) Mr. Hoffman told Plaintiff to come and pick up the Collection in Venezuela. (*Id.*) Indeed, even after Plaintiff reneged on his agreement to pay Mr. Hoffman a 20% commission on any future sale of the Collection, Mr. Hoffman still told Plaintiff to come to Venezuelan and get the Collection. (*Id.*) However, Plaintiff never went to Venezuela to get it. (*Id.*) Plaintiff's Venezuelan attorney, Pedro Itriago, never met with Mr. Hoffman to get the Collection. (*Id.*) In fact, nobody ever met with Mr. Hoffman on Plaintiff's behalf. There is no evidence supporting Plaintiff's theory that Mr. Hoffman failed to recover the Collection on Plaintiff's behalf. Thus, there is no *genuine* issue of fact that the Collection was recovered by Mr. Hoffman.

### B. Plaintiff Cannot Recover Damages for Unidentified Items

Even if Plaintiff could establish subject matter jurisdiction and establish that the Republic improperly retained possession of the Collection, the Republic would still be entitled to partial summary judgment because Plaintiff cannot establish liability and recover damages for items that Plaintiff cannot identify. Indeed, a plaintiff cannot establish a breach of bailment claim by vaguely alleging that the defendant refused to return their collection of heirlooms without specifically identifying the property at issue. *See Rosner v. United States*, 231 F. Supp. 2d 1202, 1217 (S.D. Fla. 2002). "Because a threshold fact for a bailment claim is the identification of the specific property that is the subject of the bailment," a plaintiff must "identify those specific items … that form the basis of a contract for bailment." *Id.* "Failure to identify such specific

items will subject a Plaintiff to dismissal of their implied-in-fact contract of bailment claim." *Id.* at 1215 n.23.[8]

Here, Plaintiff has no idea – much less evidence – of what was in the Collection. Plaintiff never had an inventory of the Collection. (SOF ¶ 2.) Plaintiff has produced photographs purporting to show approximately ten documents, a medal, a pair of tassels and a lock of hair (the "Photographed Items"). (SOF ¶ 2.) Only one of the documents photographed by the Plaintiff purports to show the signature of Simon Bolivar – a commercial shipping license with no apparent historical value. (*Id.*) None of the other documents photographed by Plaintiff purport to show Bolivar's signature. (*Id.*) Aside from the Photographed Items, Plaintiff admits that he cannot identify any other items that he claims were part of the Collection. (*Id.*)

Nevertheless, Plaintiff speculates that there were thousands of documents in the Collection and that, with a few exceptions, all of the supposed thousands of documents were antique originals. (D.E. 21-5.) But Plaintiff has not produced a shred of evidence to prove that there were, in fact, thousands of documents – let alone that each of these thousands of documents were antique originals. Plaintiff admits that he only reviewed 50 to 70 documents in total. (SOF ¶ 2.) Yet, he speculates that 405 documents in the Collection were signed by Simon Bolivar. (D.E. 21-5.) Plaintiff's speculation that there were hundreds of documents signed by Bolivar is supported by the record. Plaintiff has only produced evidence of a single document that was allegedly signed by Bolivar. (SOF ¶ 2.) In addition, Mr. Hoffman stated that there were "very few Bolivar" documents in the Collection. (SOF ¶ 3.) While it is unclear whether he meant documents signed by Bolivar or documents that simply mention Bolivar, Mr. Hoffman's assessment is inconsistent with the existence of hundreds of documents signed by Simon Bolivar.

Ultimately, Plaintiff cannot, as a matter of law, establish any claim to hold the Republic liable for retaining property where there is no evidence that such property even existed. *See Rosner*, 231 F. Supp. 2d at 1217; *see also Cordoba*, 419 F.3d at 1181 (holding that the purpose of summary judgment is to eliminate speculative claims). Accordingly, the Court should grant

---

[8] Breach of a bailment agreement constitutes conversion. *See, e.g.,* RESTATEMENT (SECOND) OF TORTS § 237 (1965); 8A Am. Jur. 2d Bailments § 70. And "a claim for conversion requires specificity and an identification of converted property that is precise enough to enable a complainant to request the return of that property." *Zimmerman v. Roche*, No. 09-CV-0605-JEC, 2010 U.S. Dist. LEXIS 153141, *19 (N.D. Ga. Sept. 20, 2010). *See also Gordon v. Beary*, No. 08-CV-0073-ORL, 2010 U.S. Dist. LEXIS 149607, *39 (M. D. Fla. Apr. 12, 2010).

partial summary judgment dismissing Plaintiff's claims with respect to any property other than the Photographed Items.

**CONCLUSION**

For the foregoing reasons, the Republic is entitled to foreign sovereign immunity and therefore this case must be dismissed for want of subject matter jurisdiction under Rule 12(b)(1). Alternatively, the evidence demonstrates that Plaintiff cannot establish his claims and therefore the Court should grant the Republic's motion for summary judgment pursuant to Rule 56.

Dated:          December 14, 2018                    Respectfully submitted,

BILZIN SUMBERG BAENA
PRICE & AXELROD LLP

By:  */s/  Mitchell E. Widom*
Mitchell E. Widom, Esq.
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Telephone:  (305) 375-6127
Facsimile:  (305) 351-2265
mwidom@bilzin.com
eservice@bilzin.com

– and –

Joseph D. Pizzurro (*pro hac vice*)
Kevin A. Meehan (*pro hac vice*)
**CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
jpizzurro@curtis.com
kmeehan@curtis.com

*Attorneys for Defendant Bolivarian
Republic of Venezuela*

# EXHIBIT 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 12-CV-23743-HUCK/OTAZO-REYES

RICARDO DEVENGOECHEA,              )
                                   )
        Plaintiff,                 )
                                   )
vs.                                )
                                   )
BOLIVARIAN REPUBLIC OF             )
VENEZUELA, a foreign State,        )
                                   )
        Defendant.                 )
_____    )

## **STIPULATED MOTION FOR EXTENSION OF TIME**

Pursuant to local civil rule 7.1(a)(1)(J) Plaintiff, RICARDO DEVENGOECHEA, hereby moves for an extension of time until March 23, 2015 to file his opposition to Defendant's Motion to Vacate the Judgment and to Dismiss the Complaint. Defendant's counsel has consented to the granting of this motion.

This is an action under the Foreign Sovereign Immunities Act in which the defendant defaulted in appearing after being served with the complaint, resulting in a six million, six hundred and sixty six thousand, eight hundred and eight dollars and forty eight cents ($6,666,808.48) default judgment after an evidentiary hearing before the Honorable Judge Paul C. Huck United States District Judge.

Plaintiff has not previously requested an extension of time to respond to Defendant's vacatur motion. Plaintiff needs the additional time both to address the many grounds asserted in the vacatur motion and because of the numerous litigation obligations which Plaintiff's counsel has in several cases.

*Devengochea v. Bolivarian Republic of Venezuela*
Case No.: 12-CV-23743-HUCK/OTAZO-REYES

There is no prejudice to Defendant who has consented to the granting of this motion. This motion is made solely for the reasons stated and not for purposes of delay, obstruction, or any other improper purpose.

For the reasons stated, and with the consent of Defendant, Plaintiff RICARDO DEVENGOECHEA respectfully submits that this court should grant this motion and should extend until March 23, 2015 the date by which Plaintiff may file his response to Defendant's motion to vacate the default judgment and dismiss the complaint.

Respectfully Submitted,

LAW OFFICES OF MAX R. PRICE, P.A.
6701 Sunset Drive, Suite 104
Miami, Florida 33143
Tel.: (305) 662-2272
Fax: (305) 667-3975
Primary: mprice@pricelegal.com
Secondary: nadia@pricelegal.com

BY: /s/ *Max R Price*
_____
MAX R. PRICE, ESQ.
FBN: 651494

*Devengochea v. Bolivarian Republic of Venezuela*
Case No.: 12-CV-23743-HUCK/OTAZO-REYES

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served by electronic mail on March 2, 2015, on all counsel or parties of record on the Service List below.

*/s/ Max R. Price*

## SERVICE LIST

Joseph D. Pizzurro
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
Email: jpizzurro@curtis.com
*Counsel for Defendant Bolivarian Republic of Venezuela*

Mitchell Edward Widom, Esq.
Bilzin Sumberg Baena Price & Axelrod L L P
1450 Brickell Ave Ste 2300 Miami, FL 33131-3456
Email: mwidom@bilzin.com
*Co-Counsel for Defendant Bolivarian Republic of Venezuela*

Martha M. Mora, Esq.
Avila Rodriguez Hernandez Mena & Ferri LLP
2525 Ponce de Leon Blvd., Penthouse 1225
Miami, FL 33134
Email: mmora@arhmf.com
*Co-Counsel for Plaintiff Ricardo Devengoechea*

Miguel M. Cordano, Esq.
Jeremy Roth, Esq.
Liebler, Gonzalez & Portuondo
Courthouse Tower – 25th Floor
44 W. Flagler Street
Miami, FL 33130
Email: mc@lgplaw.com; jroth@lgplaw.com
*Counsel for Garnishee Bank of America*

3

# EXHIBIT 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 12-CV-23743-HUCK/OTAZO-REYES

RICARDO DEVENGOECHEA,            )
                                 )
          Plaintiff,             )
                                 )
vs.                              )
                                 )
BOLIVARIAN REPUBLIC OF           )
VENEZUELA, a foreign State,      )
                                 )
          Defendant.             )
_____  )

## **STIPULATED MOTION FOR EXTENSION OF TIME**

Pursuant to local civil rule 7.1(a)(1)(J) Plaintiff, RICARDO DEVENGOECHEA, hereby moves for an extension of time until April 13, 2015 to file his opposition to Defendant's Motion to Vacate the Judgment and to Dismiss the Complaint. Defendant's counsel has consented to the granting of this motion.

This is an action under the Foreign Sovereign Immunities Act in which the defendant defaulted in appearing after being served with the complaint, resulting in a six million, six hundred and sixty six thousand, eight hundred and eight dollars and forty eight cents ($6,666,808.48) default judgment after an evidentiary hearing before the Honorable Judge Paul C. Huck United States District Judge.

Plaintiff has previously requested one extension of time to respond to Defendant's vacatur motion. Plaintiff needs the additional time both to address the many grounds asserted in the vacatur motion and because of the numerous litigation obligations which Plaintiff's counsel has in several cases.

In addition, Plaintiff needs the additional time to file his opposition to Defendant's vacatur motion because he has not yet received the transcript from the Court. On March 2, 2015, the plaintiff first reached out to Mrs. Gilda Pastor-Hernandez the Courts official court reporter in order to obtain the April 18, 2014 hearing transcript with no success. Unfortunately, although an inquiry was later made as to ordering the transcript on an expedited bases, Mrs. Gilda Pastor-Hernandez informed our office that she would not be able to get the transcript on any expedited basis because she was obligated to prepare several long transcripts for an appeal before she could begin working on this transcript. Because of her prior obligations Mrs. Gilda Pastor-Hernandez has still not been able to produce the transcript and has confirmed that she will provide it to us at the latest Friday, March 20, 2015.

The transcript is necessary to address the arguments made by the defendant as to what transpired during the hearing. There is no prejudice to Defendant who has consented to the granting of this motion. This motion is made solely for the reasons stated and not for purposes of delay, obstruction, or any other improper purpose.

For the reasons stated, and with the consent of Defendant, Plaintiff RICARDO DEVENGOECHEA respectfully submits that this court should grant this motion and should extend until April 13, 2015 the date by which Plaintiff may file his response to Defendant's motion to vacate the default judgment and dismiss the complaint.

Respectfully Submitted,

LAW OFFICES OF MAX R. PRICE, P.A.
6701 Sunset Drive, Suite 104
Miami, Florida 33143
Tel.: (305) 662-2272
Fax: (305) 667-3975
Primary:  mprice@pricelegal.com
Secondary: nadia@pricelegal.com

BY: /s/ *Max R Price*
MAX R. PRICE, ESQ.
FBN: 651494

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served by electronic mail on March 23, 2015, on all counsel or parties of record on the Service List below.

/s/ *Max R. Price*

## SERVICE LIST

Joseph D. Pizzurro
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
Email: jpizzurro@curtis.com
*Counsel for Defendant Bolivarian Republic of Venezuela*

Mitchell Edward Widom, Esq.
Bilzin Sumberg Baena Price & Axelrod L L P
1450 Brickell Ave Ste 2300 Miami, FL 33131-3456
Email: mwidom@bilzin.com
*Co-Counsel for Defendant Bolivarian Republic of Venezuela*

Martha M. Mora, Esq.
Avila Rodriguez Hernandez Mena & Ferri LLP
2525 Ponce de Leon Blvd., Penthouse 1225
Miami, FL 33134
Email: mmora@arhmf.com
*Co-Counsel for Plaintiff Ricardo Devengoechea*

Miguel M. Cordano, Esq.
Jeremy Roth, Esq.
Liebler, Gonzalez & Portuondo
Courthouse Tower – 25th Floor
44 W. Flagler Street
Miami, FL  33130
Email: mc@lgplaw.com; jroth@lgplaw.com
*Counsel for Garnishee Bank of America*

# EXHIBIT 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 12-CV-23743-HUCK/OTAZO-REYES

RICARDO DEVENGOECHEA,     )
                      )
     Plaintiff,          )
                      )
vs.                     )
                      )
BOLIVARIAN REPUBLIC OF     )
VENEZUELA, a foreign State,     )
                      )
     Defendant.        )
_____   )

## <u>STIPULATED MOTION FOR EXTENSION OF TIME</u>

Pursuant to local civil rule 7.1(a)(1)(J) Plaintiff, RICARDO DEVENGOECHEA, hereby moves for an extension of time until April 27, 2015 to file his opposition to Defendant's Motion to Vacate the Judgment and to Dismiss the Complaint. Defendant's counsel has consented to the granting of this motion.

This is an action under the Foreign Sovereign Immunities Act in which the defendant defaulted in appearing after being served with the complaint, resulting in a six million, six hundred and sixty six thousand, eight hundred and eight dollars and forty eight cents ($6,666,808.48) default judgment after an evidentiary hearing before the Honorable Judge Paul C. Huck United States District Judge.

Plaintiff has previously requested two extensions of time to respond to Defendant's vacatur motion. Plaintiff needs the additional time both to address the many grounds asserted in the vacatur motion and because of the unexpectedly long time required for preparation and delivery of the official transcript which, when delivered, came at an inopportune time when

plaintiff's counsel was preparing for an imminent trial, while also attending to numerous other litigation obligations in several cases.

The transcript was finally delivered on or about March 23, 2015. Despite our prior request for its preparation on an expedited basis, the reporter Mrs. Gilda Pastor-Hernandez informed our office that she would not be able to get the transcript on any expedited basis because she was obligated to prepare several long transcripts for an appeal before she could begin working on this transcript. Because of her prior obligations Mrs. Gilda Pastor-Hernandez was not able to prepare and deliver the official transcript until on or about March 23, 2015.

As mentioned, this came at a highly inopportune time when our office was preparing for an unrelated trial set to begin shortly thereafter and which later in fact commenced.

The transcript is necessary to address the arguments made by the defendant as to what transpired during the hearing. There is no prejudice to Defendant who has consented to the granting of this motion. This motion is made solely for the reasons stated and not for purposes of delay, obstruction, or any other improper purpose.

For the reasons stated, and with the consent of Defendant, Plaintiff RICARDO DEVENGOECHEA respectfully submits that this court should grant this motion and should extend until April 27, 2015 the date by which Plaintiff may file his response to Defendant's motion to vacate the default judgment and dismiss the complaint.

Respectfully Submitted,

LAW OFFICES OF MAX R. PRICE, P.A.
6701 Sunset Drive, Suite 104
Miami, Florida 33143
Tel.: (305) 662-2272
Fax: (305) 667-3975
Primary: mprice@pricelegal.com
Secondary:nadia@pricelegal.com

BY: /s/ *Max R Price*
      MAX R. PRICE, ESQ.
      FBN: 651494

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served by electronic mail on April 13, 2015, on all counsel or parties of record on the Service List below.

/s/*Max R. Price*

## SERVICE LIST

Joseph D. Pizzurro
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
Email: jpizzurro@curtis.com
*Counsel for Defendant Bolivarian Republic of Venezuela*

Martha M. Mora, Esq.
Avila Rodriguez Hernandez Mena & Ferri LLP
2525 Ponce de Leon Blvd., Penthouse 1225
Miami, FL 33134
Email: mmora@arhmf.com
*Co-Counsel for Plaintiff Ricardo Devengoechea*

Mitchell Edward Widom, Esq.
Bilzin Sumberg Baena Price & Axelrod L L P
1450 Brickell Ave Ste 2300 Miami, FL 33131-3456
Email: mwidom@bilzin.com
*Co-Counsel for Defendant Bolivarian Republic of Venezuela*

Miguel M. Cordano, Esq.
Jeremy Roth, Esq.
Liebler, Gonzalez & Portuondo
Courthouse Tower – 25th Floor
44 W. Flagler Street
Miami, FL  33130
Email: mc@lgplaw.com; jroth@lgplaw.com
*Counsel for Garnishee Bank of America*

# EXHIBIT 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 12-CV-23743-HUCK/OTAZO-REYES

RICARDO DEVENGOECHEA,      )
                                        )
        Plaintiff,            )
                                          )
vs.                                       )
                                         )
BOLIVARIAN REPUBLIC OF      )
VENEZUELA, a foreign State,      )
                                         )
        Defendant.        )
_____  )

## <u>STIPULATED MOTION FOR EXTENSION OF TIME</u>

Pursuant to local civil rule 7.1(a)(1)(J) Plaintiff, RICARDO DEVENGOECHEA, hereby moves for an extension of time until May 11, 2015 to file his opposition to Defendant's Motion to Vacate the Judgment and to Dismiss the Complaint. Defendant's counsel has consented to the granting of this motion.

This is an action under the Foreign Sovereign Immunities Act in which the defendant defaulted in appearing after being served with the complaint, resulting in a six million, six hundred and sixty six thousand, eight hundred and eight dollars and forty eight cents ($6,666,808.48) default judgment after an evidentiary hearing before the Honorable Judge Paul C. Huck United States District Judge.

Plaintiff has previously requested three extensions of time to respond to Defendant's vacatur motion. Plaintiff needs the additional time both to address the many grounds asserted in the vacatur motion and because of the inopportune time in which Plaintiff received the official transcript. The transcript was finally delivered on or about March 23, 2015. During this time,

Plaintiff's counsel was preparing for an imminent trial, while also attending to numerous other litigation obligations in several cases.

The unrelated trial in which Plaintiff's counsel has been involved in, unexpectedly required substantial additional legal filings and effort, which could not reasonably have been expected when Plaintiff brought the last motion for extension of time. Additionally, undersigned counsel has initiated discussions concerning a possible amicable resolution to Defendants motion. Lastly, there is no prejudice to Defendant who has consented to the granting of this motion.

This motion is made solely for the reasons stated and not for purposes of delay, obstruction, or any other improper purpose. For the reasons stated, and with the consent of Defendant, Plaintiff RICARDO DEVENGOECHEA respectfully submits that this court should grant this motion and should extend until May 11, 2015 the date by which Plaintiff may file his response to Defendant's motion to vacate the default judgment and dismiss the complaint.

Respectfully Submitted,

LAW OFFICES OF MAX R. PRICE, P.A.
6701 Sunset Drive, Suite 104
Miami, Florida 33143
Tel.: (305) 662-2272
Fax: (305) 667-3975
Primary: mprice@pricelegal.com
Secondary: nadia@pricelegal.com

BY: /s/ *Max R Price*
_____
MAX R. PRICE, ESQ.
FBN: 651494

## <u>CERTIFICATE OF SERVICE</u>

**I hereby certify** that a true and correct copy of the foregoing was served by electronic

mail on April 27, 2015 on all counsel or parties of record on the Service List below.

/s/ *Max R. Price*_____

## <u>SERVICE LIST</u>

Joseph D. Pizzurro
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
Email: jpizzurro@curtis.com
*Counsel for Defendant Bolivarian Republic of Venezuela*

Mitchell Edward Widom, Esq.
Bilzin Sumberg Baena Price & Axelrod L L P
1450 Brickell Ave Ste 2300 Miami, FL 33131-3456
Email: mwidom@bilzin.com
*Co-Counsel for Defendant Bolivarian Republic of Venezuela*

Martha M. Mora, Esq.
Avila Rodriguez Hernandez Mena & Ferri LLP
2525 Ponce de Leon Blvd., Penthouse 1225
Miami, FL 33134
Email: mmora@arhmf.com
*Co-Counsel for Plaintiff Ricardo Devengoechea*

Miguel M. Cordano, Esq.
Jeremy Roth, Esq.
Liebler, Gonzalez & Portuondo
Courthouse Tower – 25th Floor
44 W. Flagler Street
Miami, FL 33130
Email: mc@lgplaw.com; jroth@lgplaw.com
*Counsel for Garnishee Bank of America*

# EXHIBIT 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 12-CV-23743-HUCK/OTAZO-REYES

RICARDO DEVENGOECHEA,     )
                       )
         Plaintiff,              )
                       )
vs.                            )
                       )
BOLIVARIAN REPUBLIC OF     )
VENEZUELA, a foreign State,     )
                       )
         Defendant.        )
_____ )

## STIPULATED MOTION FOR EXTENSION OF TIME

Pursuant to local civil rule 7.1(a)(1)(J) Plaintiff, RICARDO DEVENGOECHEA, hereby moves for an extension of time *sine die* to file his opposition to Defendant's Motion to Vacate the Judgment and to Dismiss the Complaint. Plaintiff hereby moves with the consent of Defendant's counsel for an extension of time *sine die* to file a response to defendant's Motion to Vacate the Default Judgment and to Dismiss the Complaint in this action. A little over one week ago, Plaintiff's lead counsel Max Price Esquire suffered a heart attack and was rushed to the hospital on an emergency basis. He has since undergone two operations, has been discharged, and is recuperating. By reason of this medical emergency, the exact date of Mr. Price's return to work is yet unknown.

Plaintiff's counsel recognizes that the response date cannot remain open forever and will advise this Court within a reasonable period of time concerning his ability to return to work and to address defendant's pending motion.

There have been prior requests for extensions of time for other reasons, which have been granted, but this present request arising out of the above mentioned medical emergency is necessary and could not be foreseen.

This motion is being filed by the office of Plaintiff's counsel with the express authorization of Plaintiff's counsel Max Price Esquire.

For the above reasons, and with the consent of Defendant's counsel, Plaintiff respectfully requests that this Court grant this motion and extend *sine die* the time within which Plaintiff shall respond to Defendant's Motion to Vacate the Default Judgment and to Dismiss the Complaint in this action.

Respectfully Submitted,

LAW OFFICES OF MAX R. PRICE, P.A.
6701 Sunset Drive, Suite 104
Miami, Florida 33143
Tel.: (305) 662-2272
Fax: (305) 667-3975
Primary:    mprice@pricelegal.com
Secondary: nadia@pricelegal.com

BY: /s/ *Max R Price*
       MAX R. PRICE, ESQ.
       FBN: 651494

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served by electronic mail on May 11, 2015 on all counsel or parties of record on the Service List below.

/s/ *Max R. Price*

## SERVICE LIST

Joseph D. Pizzurro
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
Email: jpizzurro@curtis.com
*Counsel for Defendant Bolivarian Republic of Venezuela*

Martha M. Mora, Esq.
Avila Rodriguez Hernandez Mena & Ferri LLP
2525 Ponce de Leon Blvd., Penthouse 1225
Miami, FL 33134
Email: mmora@arhmf.com
*Co-Counsel for Plaintiff Ricardo Devengoechea*

Mitchell Edward Widom, Esq.
Bilzin Sumberg Baena Price & Axelrod L L P
1450 Brickell Ave Ste 2300 Miami, FL 33131-3456
Email: mwidom@bilzin.com
*Co-Counsel for Defendant Bolivarian Republic of Venezuela*

Miguel M. Cordano, Esq.
Jeremy Roth, Esq.
Liebler, Gonzalez & Portuondo
Courthouse Tower – 25th Floor
44 W. Flagler Street
Miami, FL  33130
Email: mc@lgplaw.com; jroth@lgplaw.com
*Counsel for Garnishee Bank of America*

# EXHIBIT 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 12-CV-23743-HUCK/OTAZO-REYES

RICARDO DEVENGOECHEA,                 )
                                      )
          Plaintiff,                  )
                                      )
vs.                                   )
                                      )
BOLIVARIAN REPUBLIC OF                )
VENEZUELA, a foreign State,           )
                                      )
          Defendant.                  )
_____     )

**PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE RESPONSE TO
DEFENDANT'S AMENDED MOTION TO DISMISS THE COMPLAINT**

Plaintiff, RICARDO DEVENGOECHEA, hereby moves for a single extension of thirty (30) days, from July 9 to August 8, 2015, to file his opposition to Defendant's Amended Motion to Dismiss the Complaint in this action (DE 102). Plaintiff has not sought any previous extension of time to respond to Defendant's Amended Motion to Dismiss the Complaint.

This is an action under the Foreign Sovereign Immunities Act ("FSIA") to recover damages from Defendant's expropriation of valuable documents, artifacts and memorabilia, and from Defendant's wrongful actions in its commercial dealings with Plaintiff.

Defendant defaulted in response to service of the summons and complaint and refused to respond despite numerous entreaties to gain its appearance. Finally, this Court held an evidentiary hearing (where Defendant refused to appear) and awarded $7,464,953.12 to Plaintiff (DE 26).

After Plaintiff sought to collect the judgment Defendant finally appeared and moved to vacate the Default Judgment and to Dismiss the Complaint (DE 76). Plaintiff recognized the

strong public policy against Default Judgments in FSIA cases and proposed a stipulation vacating the Default Judgment and permitting the Defendant to respond to the Complaint (DE 99). This court vacated the Default Judgment and authorized Defendant to respond to the Complaint (DE 101) which Defendant now has done (DE 102). It is Defendant's pending Motion to Dismiss against which Plaintiff now seeks an extension of time to respond.

Plaintiff's attorney Max Price is recovering from a recent heart attack, is in therapy, and is working part time. The requested extension is necessary and will enable Plaintiff to fully respond to the motion.

Defendant has announced that it opposes an extension because its Motion to Dismiss allegedly resembles its earlier motion for vacature and dismissal. This cannot be. The procedural settings are different, and there are differences in Defendant's presentations in its early and present motions.

Nor can Defendant show any prejudice from the requested extension of time. The Default Judgment has been vacated (DE 101), and a short extension of time for Plaintiff to respond will prejudice no one.

Plaintiff has extended the courtesy of voluntarily vacating the Default Judgment to permit Defendant to defend (DE 99). It is not too much to ask for a short extension of time to respond to Defendant's motion which resulted from that vacature.

Plaintiff makes this motion for the reasons stated and not for purposes of delay, or any other improper purpose.

For these reasons, Plaintiff respectfully submits that this Court should grant this motion and should extend the deadline to August 8, 2015 the date by which Plaintiff may respond to Defendant's pending Amended Motion to Dismiss the Complaint (DE 102).

*Devengoechea v. Bolivarian Republic of Venezuela*
Case No.: 12-CV-23743-HUCK/OTAZO-REYES

Respectfully Submitted,

LAW OFFICES OF MAX R. PRICE, P.A.
6701 Sunset Drive, Suite 104
Miami, Florida 33143
Tel.: (305) 662-2272
Fax: (305) 667-3975
Primary: mprice@pricelegal.com
Secondary: nadia@pricelegal.com

BY: /s/ *Max R Price*
         MAX R. PRICE, ESQ.
         FBN: 651494

## CERTIFICATE OF SERVICE

     **I hereby certify** that a true and correct copy of the foregoing was served by electronic

mail on July 6, 2015, on all counsel or parties of record on the Service List below.

                                 /s/ *Max R. Price*

## SERVICE LIST

Joseph D. Pizzurro
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
Email: jpizzurro@curtis.com
*Counsel for Defendant Bolivarian Republic of Venezuela*

Martha M. Mora, Esq.
Avila Rodriguez Hernandez Mena & Ferri LLP
2525 Ponce de Leon Blvd., Penthouse 1225
Miami, FL 33134
Email: mmora@arhmf.com
*Co-Counsel for Plaintiff Ricardo Devengoechea*

Mitchell Edward Widom, Esq.
Bilzin Sumberg Baena Price & Axelrod L L P
1450 Brickell Ave Ste 2300 Miami, FL 33131-3456
Email: mwidom@bilzin.com
*Co-Counsel for Defendant Bolivarian Republic of Venezuela*

Miguel M. Cordano, Esq.
Jeremy Roth, Esq.
Liebler, Gonzalez & Portuondo
Courthouse Tower – 25th Floor
44 W. Flagler Street
Miami, FL 33130
Email: mc@lgplaw.com; jroth@lgplaw.com
*Counsel for Garnishee Bank of America*

3

*Devengoechea v. Bolivarian Republic of Venezuela*
Case No.: 12-CV-23743-HUCK/OTAZO-REYES

# EXHIBIT 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

Case No.: 12-CV-23743-PCH/OTAZO-REYES

RICARDO DEVENGOECHEA,           )
                                )
          Plaintiff,            )
vs.                             )
                                )
BOLIVARIAN REPUBLIC OF          )
VENEZUELA, a foreign state,     )
                                )
          Defendant.            )
_____ )

**PLAINTIFF'S AGREED MOTION FOR EXTENSION OF TIME FOR (1) PLAINTIFF
TO FILE OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED
COMPLAINT AND FOR (2) DEFENDANT TO FILE REPLY
IN SUPPORT OF ITS DISMISSAL MOTION**

In this action under the Foreign Sovereign Immunities Act, 28 USC 1330 & 1603 et seq., plaintiff files this Agreed Motion for an extension of time for (1) plaintiff to file an opposition to defendant's motion to dismiss the amended complaint (DE 106), and for (2) defendant to file a reply in support of its dismissal motion. As mentioned, defendant consents to the granting of this motion.[1]

On July 16, 2015 plaintiff filed an amended complaint as a matter of course pursuant to Fed.R.Civ.P. 15(a)(1)(B) (DE 106). On July 27, 2015, defendant filed an agreed motion for an extension of time to Aug. 14, 2015 to file its motion to dismiss the amended complaint (DE 110). This Court granted the agreed motion and allowed defendant until August.14, 2015 to file its dismissal motion (DE 111) which defendant did (DE 112).

---

[1] Apart from this footnote, plaintiff today submitted this motion and attached proposed order to defendant's counsel for his approval per his request. Plaintiff has not heard back from defendant's counsel. The parties have agreed on the deadline dates set forth in this motion, and plaintiff believes that defendant's counsel would not object to the form of this motion or attached proposed order.

Plaintiff's opposition to the dismissal motion is due today, and defendant has consented to an extension of time to Sept. 11, 2015 for plaintiff to file his opposition, with Sept. 24, 2015 as the agreed deadline for defendant to file a reply in support of its dismissal motion.

This single extension which plaintiff requests is necessary because of the work load in the office of plaintiff's counsel, the summer schedule, and the issues which defendant has raised in its dismissal motion. Both sides have extended the courtesy of agreed extensions in connection with defendant's dismissal motion (*supra*), and there is obviously no prejudice to either party in the requested extension.

Plaintiff makes this motion for the stated reasons and not for the purpose of delay or any other improper purpose.

For the foregoing reasons, plaintiff respectfully requests that this Court grant this motion and (1) extend to Sept. 11, 2015 the date by which plaintiff shall file his opposition to defendant's motion to dismiss the amended complaint, and (2) extend to Sept. 24, 2015 the date by which defendant may file a reply in support of its dismissal motion.

## CERTIFICATE OF SERVICE

This agreed motion is being served on defendant's counsel this 31st day of August 2015 through this Court's ECF system.

Dated this 31st day of August 2015

LAW OFFICES OF MAX R. PRICE, P.A.
Attorneys for Plaintiff
6701 Sunset Drive, Suite104
Miami, Florida 33143
Tel.: (305) 662-2272
Fax: (305) 667-3975
mprice@pricelegal.com

by:___/s/ Max R. Price_____
        Max R. Price.
        FBN 651494

# EXHIBIT 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 12-CV-23743-HUCK/OTAZO-REYES

RICARDO DEVENGOECHEA,                )
                                     )
         Plaintiff,                  )
                                     )
vs.                                  )
                                     )
BOLIVARIAN REPUBLIC OF               )
VENEZUELA, a foreign State,          )
                                     )
         Defendant.                  )
_____        )

## PLAINTIFF'S AGREED MOTION FOR EXTENSION OF TIME TO FILE RESPONSE TO DEFENDANT'S AMENDED MOTION TO DISMISS THE COMPLAINT

Plaintiff, RICARDO DEVENGOECHEA, hereby moves with the consent of defense counsel for a one (1) business day extension of the time to Monday, September 14, 2015 to file his opposition to Defendant's motion to dismiss the amended complaint. Plaintiff's counsel is diligently working on his opposition, but because of an extraordinary and substantial appellate filing due today in the Fourth District Court of Appeal, which has required an extraordinary effort, Plaintiff needs the additional time until Monday September 14, 2015 to complete his opposition to Defendant's pending motion.

Plaintiff makes this motion for the stated reason and not for purposes of delay or any other improper purpose.

There has been one prior extension through Friday September 11, 2015 which Plaintiff now needs to be extended by one further business day for the reasons stated.

For the foregoing reasons, and with the consent of the Defendant's counsel, Plaintiff respectfully requests that this Court extend his time to file his opposition to Defendant's pending motion to dismiss by one business day to Monday September 14, 2015.

Respectfully Submitted,

LAW OFFICES OF MAX R. PRICE, P.A.
6701 Sunset Drive, Suite 104
Miami, Florida 33143
Tel.:  (305) 662-2272
Fax:  (305) 667-3975
Primary:   mprice@pricelegal.com
Secondary: nadia@pricelegal.com

BY: /s/  Max R Price _____
          MAX R. PRICE, ESQ.
          FBN: 651494

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served by electronic mail on September 10, 2015, on all counsel or parties of record on the Service List below.

/s/  Max R. Price _____

## SERVICE LIST

Joseph D. Pizzurro
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
Email: jpizzurro@curtis.com
*Counsel for Defendant Bolivarian Republic of Venezuela*

Mitchell Edward Widom, Esq.
Bilzin Sumberg Baena Price & Axelrod L L P
1450 Brickell Ave Ste 2300 Miami, FL 33131-3456
Email: mwidom@bilzin.com
*Co-Counsel for Defendant Bolivarian Republic of Venezuela*

Martha M. Mora, Esq.
Avila Rodriguez Hernandez Mena & Ferri LLP
2525 Ponce de Leon Blvd., Penthouse 1225
Miami, FL 33134
Email: mmora@arhmf.com
*Co-Counsel for Plaintiff Ricardo Devengoechea*

Miguel M. Cordano, Esq.
Jeremy Roth, Esq.
Liebler, Gonzalez & Portuondo
Courthouse Tower – 25th Floor
44 W. Flagler Street
Miami, FL  33130
Email: mc@lgplaw.com; jroth@lgplaw.com
*Counsel for Garnishee Bank of America*

# EXHIBIT 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO:  12-CV-23743-PCH/Otazo-Reyes

RICARDO DEVENGOECHEA,                    )
                                         )
                Plaintiff,               )
                                         )
        v.                               )
                                         )
BOLIVARIAN REPUBLIC OF VENEZUELA,        )
a foreign state,                         )
                                         )
                Defendant.               )
_____ )

**PLAINTIFF'S OBJECTION TO SHORT-NOTICE EVIDENTIARY HEARING
ON IMPORTANT MERITS ISSUES IN PLAINTIFF'S CLAIM WITHOUT
REASONABLE OPPORTUNITY FOR RETAINING EXPERT WITNESS
OR CONDUCTING MERITS DISCOVERY**

**WITH**

**PLAINTIFF'S EMERGENCY MOTION FOR:**

**(1) ADJOURNMENT OF EVIDENTIARY HEARING ON IMPORTANT
MERITS ISSUES IN PLAINTIFF'S CLAIM (CONDITIONAL)
AND FOR:
(2) REASONABLE OPPORTUNITY FOR DISCOVERY ON IMPORTANT
MERITS ISSUES IN PLAINTIFF'S CLAIM (CONDITIONAL)**

LAW OFFICE OF MAX R. PRICE, P.A.
Attorneys for Plaintiff
 RICARDO DEVENGOECHEA
6701 Sunset Drive,  Suite 104
Miami, Florida 33143
Tel: (305) 662-2272
Fax: (305) 667-3975
mprice@pricelegal.com
FBN 651494

Plaintiff Ricardo Devengoechea hereby submits (1) his objection to being compelled to proceed on what amounts to trial on part of the merits of his claim on only 2 weeks' notice without a reasonable opportunity to retain a necessary expert witness or take discovery, and (2) his emergency motion to adjourn the evidentiary hearing which amounts to trial on part of the merits of his claim and for a reasonable opportunity to take discovery, unless the following occur which eliminate the need for an adjournment and discovery:

First, plaintiff needs a reasonable period of time to retain an expert concerning the commercial nature of the facts alleged in the Amended Complaint **unless** there is a stipulation or judicial notice that these facts constitute commercial activity within the meaning of the FSIA. As shown below, this is a critical issue which goes to both the merits and subject matter jurisdiction under the FSIA. Without an adjournment of the evidentiary hearing, plaintiff would be deprived of a reasonable opportunity to obtain and present expert testimony on what amounts to a trial on part of the merits of his claim. A mere 2 weeks' notice of an evidentiary hearing (which will also be the trial of important merits issues without any prior notice that an evidentiary hearing would be held) is not reasonable.

Second, plaintiff needs a reasonable period of time to conduct pretrial discovery *if* defendant will be presenting evidence at the evidentiary hearing. This includes any kind of evidence by defendant, whether as documents, witness testimony, or otherwise. To confront plaintiff with defendant's evidence, at what will include a trial of certain merits issues without reasonable opportunity for discovery, would be unfair, unreasonable, and a violation of plaintiff's rights.

Defendant opposes this motion. Plaintiff respectfully submits that defendant seeks to deprive plaintiff of a reasonable opportunity to present evidence or take discovery concerning an important substantive issue going to the merits of plaintiff's claim. Plaintiff has not sought any prior adjournment or extension concerning the evidentiary hearing.

-1-

# DISCUSSION

Under the FSIA, issues of subject matter jurisdiction merge with issues on the merits. The issue of sovereign immunity is an issue which controls not only subject matter jurisdiction but also the merits of plaintiff's claim. Plaintiff's ability to avoid sovereign immunity not only avails plaintiff of the subject matter jurisdiction of this Court but also defeats an important substantive-law defense that foreign sovereigns may assert. Thus the scheduling and nature of a "jurisdictional" hearing must take into consideration the fact that it will also be a trial of merits issues which are potentially dispositive. *Republic of Austria v. Altmann,* 541 U.S. 677, 695 (2004) (FSIA address both jurisdiction and the merits - "the FSIA is not simply a jurisdictional statute concerning access to the federal courts but a codification of the standards governing foreign sovereign immunity as an aspect of *substantive* federal law. [citations].... [The FSIA] speaks not just to the power of a particular court but to the *substantive rights* of the parties as well") (first emp.in orig., second emp.added); *Robinson v. Government of Malaysia,* 269 F.3d 133, 143-44 (2d Cir, 2001) ("a dismissal for lack of subject matter jurisdiction in an FSIA case, because it may involve an examination of substantive law, can look like a decision on the merits", citing numerous other cases); *Eaglet Corp. Ltd. v. Banco Central de Nicaragua,* 839 F.Supp. 232, 233 (S.D.N.Y. 1993) ("this Court does not have ... subject matter jurisdiction ... and this [FSIA] action is dismissed *with prejudice*"; emp.added).

For this reason, this Court's giving plaintiff only 2 weeks' notice of an evidentiary hearing on subject matter jurisdiction in effect gives plaintiff only 2 weeks' notice of a trial on the merits of important substantive issues and deprives plaintiff of important rights in 2 respects:

First, it deprives plaintiff of a reasonable opportunity to retain an expert witness to address merits issues. A controlling FSIA issue is whether the facts alleged by plaintiff in his Amended Complaint are "commercial" rather than "sovereign" in nature, *i.e.,* whether they are the types of actions which private parties perform in the relevant marketplace. Because this

issue controls sovereign immunity under the FSIA, it is an issue on both the merits and jurisdiction. *Altmann, Robinson, Eaglet, supra.* Plaintiff needs to schedule and retain an expert witness to testify that the facts alleged by plaintiff, if assumed to be true, constitute the type of actions in which a private person/entity would engage in the marketplace for collectibles concerning important public persons such as Simon Bolivar.

This is the controlling standard for sovereign immunity. The Supreme Court and Eleventh Circuit have made this clear:

> "[W]hen a foreign government acts, not as a regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are "commercial" within the meaning of the FSIA.... [T]he question is not whether the foreign government is acting with a specific profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in trade or traffic and commerce."

*Republic of Argentina v. Weltover,* 504 U.S. 607, 614 (1992) (emp.added); *see also Guevara v. Republic of Peru,* 468 F.3d 1289, 1296, 1298 (11th Cir. 2006) (same - "a state not acting in its unique role as sovereign is akin to a private citizen or merchant" - "when a foreign government acts not as a regulator of a market but in the manner of a private player within it, the foreign sovereign's actions are commercial within the meaning of the FSIA" - "a foreign state loses its immunity if it engages in commercial activity because then it is exercising the same powers that a private citizen might be exercising"); *Beg v. Islamic Republic of Pakistan,* 353 F.3d 1323, 1325 (11th Cir. 2003) ("A government's act is thus commercial [and not sovereign] if it is the type of transaction that private actors could complete").

To show plaintiff's compliance with this standard, the expert would testify, as mentioned, that the facts alleged by plaintiff are regularly performed by private parties in the marketplace for collectibles relating to important public figures such as Simon Bolivar. This would establish

the "commercial" nature of defendant's actions and, therefore, defendant's lack of sovereign immunity. *Weltover, Guevara, Beg, supra.*

It is virtually impossible to line up an expert to travel to Florida and testify to this on only 2 weeks' notice, especially with the intervening Thanksgiving holiday weekend. Without the requested adjournment, plaintiff unreasonably would be deprived of an ability to present his case ***on the merits*** which, under the FSIA, coincides with jurisdiction at the forthcoming evidentiary hearing.[1]

Thus this Court should adjourn the Dec. 3, 2015 evidentiary hearing to permit plaintiff a reasonable opportunity to retain expert testimony ***unless*** there is a stipulation or judicial notice that the actions alleged by plaintiff in his Amended Complaint are the types of actions that private parties perform in the marketplace for collectibles relating to important public figures such as Simon Bolivar.[2]

Second, plaintiff also needs a reasonable opportunity for discovery ***if*** defendant intends to present documentary evidence or call witnesses at the evidentiary hearing. Plaintiff himself will testify to the facts alleged in the Amended Complaint which show jurisdiction (and the merits) on its face. Plaintiff obviously does not need discovery concerning his own prospective

---

[1]Plaintiff presented the expert testimony of John Reznikoff at the default hearing before Judge Huck on April 18, 2014. Defendant was not present. Subsequent to that hearing, plaintiff filed his Amended Complaint (DE 106) which the expert did not have an opportunity to address at the hearing. Plaintiff will need to call an expert to address the allegations of the Amended Complaint.

[2]At the ultimate trial on the merits, plaintiff again would need expert testimony on the value of plaintiff's collection. However, the monetary value of the collection is an issue going only to the merits, not jurisdiction. Plaintiff reserves this right. But for present purposes, for the evidentiary hearing on jurisdiction scheduled by the Court for Dec. 3, 2015, the "jurisdictional" issue of sovereign immunity goes to both jurisdiction and merits which requires a reasonable adjournment so plaintiff can retain the necessary expert. Otherwise, plaintiff would be forced to proceed to what amounts to trial on part of the merits of his claim on only 2 weeks' notice without a reasonable opportunity to retain expert testimony.

-4-

testimony. But if defendant intends to present evidence -- documentary, witness testimony, or otherwise -- plaintiff needs discovery concerning it. Otherwise, plaintiff would be blindsided at what amounts to a merits trial on these critical immunity issues without reasonable opportunity for merits discovery. *Eaton v. Dorchester Dev. Inc.,* 692 F.2d 727, 734 (11th Cir. 1982) (right to jurisdictional discovery where jurisdiction merges with the merits - "Since a determination of whether the court has subject matter jurisdiction will hinge on [the merits], that determination will, at the same time, effectively decide the merits of plaintiff's claim. Jurisdiction is thus inextricably intertwined with the merits of plaintiff's case"); *see also Altmann, Robinson, Eaglet, supra* (sovereign immunity issue under FSIA controls both the merits and jurisdiction); Fed.R.Civ.P. 26(b)(1) (on the merits "[p]arties *may obtain discovery* regarding any nonprivileged matter....") (emp.added); Fed.R.Civ.P. 16(b)(1) & 16(b)(3)(A) (prior to trial on the merits, "the District Judge or a Magistrate Judge ... *must* issue a scheduling order ... [concerning] the time to ... complete discovery"; emp.added).[3]

## CONCLUSION

This Court should grant this emergency motion and should:

(1) adjourn the Dec. 3, 2015 evidentiary hearing to permit plaintiff a reasonable opportunity to line up expert testimony for what amounts to a trial on the merits of the sovereign immunity issue *unless* there is a stipulation or judicial notice that the facts alleged by plaintiff in his Amended Complaint are the types of actions performed by a private player in the marketplace for collectibles concerning important public figures such as Simon Bolivar; and should

---

[3]If defendant commits not to present evidence at the evidentiary hearing, plaintiff will have no need for discovery. Defendant, of course, may cross-examine plaintiff and plaintiff's other witnesses, for which plaintiff does not need discovery. But if defendant reserves the right to present its own evidence (documents, witness testimony, or otherwise), plaintiff needs a reasonable opportunity for discovery concerning defendant's evidence, which is plaintiff's right on what amounts to a trial on important merits issues.

(2) permit plaintiff to take reasonable discovery of defendant *if* defendant intends to present any evidence (documentary, witness testimony, or otherwise) at the evidentiary hearing which will amount to trial on the merits of the critical sovereign immunity issue; and should

(3) award to plaintiff all other relief which is just and reasonable.


Dated:  November 24, 2015          LAW OFFICE OF MAX R. PRICE, P.A.
                                   Attorneys for Plaintiff

                                     /s/   Max R. Price
                                   _____
                                   by:     Max R. Price
                                   6701 Sunset Drive  (#104)
                                   Miami, Florida 33143
                                   (305) 662-2272 (tel)
                                   (305) 667-3975 (fax)
                                   mprice@pricelegal.com
                                   Florida Bar No. 651494

# EXHIBIT 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

Case No.: 12-CV-23743-PCH/OTAZO-REYES

RICARDO DEVENGOECHEA,                )
                                     )
            Plaintiff,               )
vs.                                  )
                                     )
BOLIVARIAN REPUBLIC OF               )
VENEZUELA, a foreign state,          )
                                     )
            Defendant.               )
_____ )

## PLAINTIFF'S AGREED MOTION FOR EXTENSION OF TIME TO FILE OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

In this action under the Foreign Sovereign Immunities Act, 28 USC 1330 & 1603 et seq., plaintiff files this Agreed Motion for an extension of time to file his opposition to defendant's motion to dismiss the Second Amended Complaint (DE 141).

On Feb. 18, 2016 this Court authorized plaintiff to file a Second Amended Complaint (DE 139 p.2) which plaintiff timely filed on March 8, 2016 (DE 140). On March 25, 2016 defendant moved to dismiss it (DE 141). Plaintiff's response to defendant's dismissal motion is due today, and defendant has consented to a 14-day extension to April 25, 2016 for plaintiff to file his opposition to defendant's dismissal motion.

Plaintiff requests this extension because of counsel's caseload on other cases and because of a medical issue in counsel's family. There is no prejudice to defendant (who has consented) nor to this Court's schedule. There has been no prior request for an extension of time to file an opposition to defendant's motion to dismiss the Second Amended Complaint.

Plaintiff makes this motion for the stated reasons and not for the purpose of delay nor for any other improper purpose.

With the consent of defendant's counsel, plaintiff respectfully requests that this Court grant this motion and extend to April 25, 2016 the date by which plaintiff may file his opposition to defendant's motion to dismiss the Second Amended Complaint. A proposed order is attached.

## CERTIFICATE OF SERVICE

This agreed motion is being served on defendant's counsel this 11th day of April 2016 through this Court's ECF system.

Dated this 11th day of April 2016

LAW OFFICES OF MAX R. PRICE, P.A.
Attorneys for Plaintiff
6701 Sunset Drive, Suite104
Miami, Florida 33143
Tel.: (305) 662-2272
Fax: (305) 667-3975
mprice@pricelegal.com

by:___ /s/ Max R. Price_____
Max R. Price.
FBN 651494

# EXHIBIT 18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

Case No.: 12-CV-23743-PCH/OTAZO-REYES

RICARDO DEVENGOECHEA,                )
                                     )
        Plaintiff,                   )
vs.                                  )
                                     )
BOLIVARIAN REPUBLIC OF               )
VENEZUELA, a foreign state,          )
                                     )
        Defendant.                   )
_____  )

**PLAINTIFF'S AGREED MOTION FOR SECOND AND FINAL EXTENSION OF TIME
TO FILE OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

In this action under the Foreign Sovereign Immunities Act, 28 USC 1330 & 1603 et seq., plaintiff files this Agreed Motion for a second and final extension of time to file his opposition to defendant's motion to dismiss the Second Amended Complaint (DE 141).

On Feb. 18, 2016 this Court authorized plaintiff to file a Second Amended Complaint (DE 139 p.2) which plaintiff timely filed on March 8, 2016 (DE 140). On March 25, 2016 defendant moved to dismiss it (DE 141). Plaintiff's response was due April 11, 2016 which this Court extended to today April 25, 2016 with defendant's consent pursuant to plaintiff's agreed motion (DE 143). Plaintiff now seeks a second and final extension of time (an additional 10 days) to May 5, 2016 to file his opposition to defendant's motion to dismiss plaintiff's Second Amended Complaint. Defendant's counsel has consented to the granting of this motion.

Plaintiff requests this extension because of counsel's caseload in other cases and because a serious medical issue in counsel's family has required much more time and devotion than counsel previously expected. Also, co-counsel has confronted a crushing series of filing deadlines in other

cases including the preparation and filing of a substantial brief and dispositive memorandum of law in the New York State Appellate Division followed by a substantial brief due tomorrow in the Florida Third District Court of Appeal.

With these imposing deadlines, combined with the serious medical issues in counsel's family, it has been impossible to prepare an opposition to defendant's dismissal motion in the present action. Plaintiff's counsel respectfully requests an additional and final ten (10) days, to May 5, 2016, to file plaintiff's opposition to defendant's motion to dismiss the Second Amended Complaint.

Plaintiff makes this motion for the stated reasons and not for the purpose of delay nor for any other improper purpose.

With the consent of defendant's counsel, plaintiff respectfully requests that this Court grant this motion and extend to May 5, 2016 the date by which plaintiff may file his opposition to defendant's motion to dismiss the Second Amended Complaint. A proposed order is attached.

## CERTIFICATE OF SERVICE

This agreed motion is being served on defendant's counsel this 25th day of April 2016 through this Court's ECF system.

Dated this 25th day of April 2016

LAW OFFICES OF MAX R. PRICE, P.A.
Attorneys for Plaintiff
6701 Sunset Drive, Suite104
Miami, Florida 33143
Tel.: (305) 662-2272
Fax: (305) 667-3975
mprice@pricelegal.com

by:____/s/ Max R. Price_____
        Max R. Price.
        FBN 651494

# EXHIBIT 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

Case No.: 12-CV-23743-PCH/OTAZO-REYES

RICARDO DEVENGOECHEA,                    )
                                         )
        Plaintiff,                       )
vs.                                      )
                                         )
BOLIVARIAN REPUBLIC OF                   )
VENEZUELA, a foreign state,              )
                                         )
        Defendant.                       )
_____  )

**PLAINTIFF'S AGREED MOTION FOR EXTENSION OF TIME
TO FILE OPPOSITION TO DEFENDANT'S OBJECTIONS
TO REPORT AND RECOMMENDATION**

In this action under the Foreign Sovereign Immunities Act, 28 USC 1330 & 1603 et seq., plaintiff files this Agreed Motion for an extension of time to file his opposition to defendant's objections (DE 151) to Magistrate Judge Otazo-Reyes' Report and Recommendation (DE 150) to deny defendant's motion to dismiss (DE 141) plaintiff's Second Amended Complaint (DE 140).

On Feb. 18, 2016 this Court authorized plaintiff to file a Second Amended Complaint (DE 139 p.2) which plaintiff timely filed on March 8, 2016 (DE 140). On March 25, 2016 defendant moved to dismiss it (DE 141) which plaintiff timely opposed (DE 147-148). On May 16, 2016 defendant filed a reply in support of its dismissal motion (DE 149).

On July 5, 2016 Magistrate Judge Otazo-Reyes filed a Report and Recommendation that this Court deny defendant's dismissal motion (DE 150) incorporating Her Honor's earlier detailed 19-page Report and Recommendation to allow the filing of the Second Amended Complaint (DE 137). On July 22, 2016 defendant filed objections to the Report and Recommendation (DE 151).

Plaintiff's opposition to defendant's objections is currently due August 8, 2016 and, with defendant's consent, respectfully requests a 10-day extension of time to August 18, 2016 to file his opposition to defendant's objections.

There has been no prior extension of time for plaintiff to file his opposition.

Plaintiff makes this motion because of the summer schedule of his counsel and because of counsel's other litigation commitments in unrelated cases.

Plaintiff makes this motion for the stated reasons and not for the purpose of delay nor for any other improper purpose.

With the consent of defendant's counsel, plaintiff respectfully requests that this Court grant this motion and extend to August 18, 2016 the date by which plaintiff may file his opposition to defendant's objections to Magistrate Judge Otazo-Reyes' Report and Recommendation to deny defendant's motion to dismiss the Second Amended Complaint. A proposed order is attached.

## CERTIFICATE OF SERVICE

This agreed motion is being served on defendant's counsel this 7th day of August 2016 through this Court's ECF system.

Dated this 7th day of August 2016      LAW OFFICES OF MAX R. PRICE, P.A.
                                       Attorneys for Plaintiff
                                       6701 Sunset Drive, Suite104
                                       Miami, Florida 33143
                                       Tel.:  (305) 662-2272
                                       Fax:  (305) 667-3975
                                       mprice@pricelegal.com

                                       by:___/s/ Max R. Price_____
                                              Max R. Price.
                                              FBN 651494

# EXHIBIT 20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

| | | |
|---|---|---|
| RICARDO DEVENGOECHEA, | ) | Case No.: 12-23743-CIV-HUCK/McALILEY |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| BOLIVARIAN REPUBLIC OF | ) | |
| VENEZUELA, a foreign state, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF'S ONE-TIME MOTION FOR ONE-WEEK EXTENSION OF TIME TO
DESIGNATE HIS EXPERT WITNESS ON VENEZUELAN LAW, IN LIGHT
OF EXTENDED DISCOVERY DISCUSSIONS BETWEEN THE PARTIES**

Plaintiff hereby moves for a one-time extension of one week, from today Oct. 12, 2018 to

Oct. 19, 2018, to designate his expert witness on Venezuelan law, in light of the continuing

discovery discussions between the parties. There is no prejudice to any party in the requested

short extension of time nor any effect on any other deadline set by this Court. Defendant

contends that today's deadline does not apply. As a protective measure, and without prejudice,

plaintiff seeks this one-week extension of time. Plaintiff has not sought this relief previously.

The requested one-week extension applies only to an expert witness on Venezuelan law and to

no other expert witness.

\* \* \*

In this action under the Foreign Sovereign Immunities Act ("FSIA"), this Court has

scheduled a trial for January 2019 (DE 182 p.1) with expedited jurisdictional discovery

to coincide with merits discovery (DE 195: "for the most part, discovery on the merits and

jurisdiction will proceed together"). The discovery cutoff is Nov. 12, 2018. *Id.*

-1-

Under this Court's trial schedule, plaintiff is to designate his expert witnesses by today (DE 182 p.2 ¶ 8). Plaintiff has already informed defendant of his damages-expert[1] but needs a one-time extension of one-week to designate his jurisdictional expert on Venezuelan law in light of continuing discovery discussions between the parties.

Pursuant to this Court's order (DE 195), both sides timely served written discovery requests on Sept. 17, 2018 and timely written responses 14 days later, on Oct. 1, 2018. Both sides' responses included, in part, objections.

In an attempt to resolve the discovery objections without Court intervention, both parties served detailed letters explaining their positions concerning the discovery objections, followed by an extensive telephone conference between counsel today beginning at 11:00 AM. As a result of these letters and today's telephonic conference, both parties' counsel agreed to reconsider several of their positions and to revisit several of their objections on or about the middle of next week, after conferring with their respective clients. A substantial agreement on these discovery objections, of course, would lessen the workload of this Court.

In connection with this reconsideration, plaintiff needs a one-time extension of one week to designate, if necessary, an expert witness on Venezuelan law. One of plaintiff's interrogatories to which defendant objected (and did not answer) concerned defendant's expert witnesses which would include expert witnesses and opinions on Venezuelan law pursuant to Fed.R.Civ.P. 44.1. The discussions between counsel addressed this issue with some apparent flexibility and highlighted the need for a short one-time extension of today's deadline for plaintiff to designate an expert witness on Venezuelan law.

---

[1] Plaintiff has informed defendant, and now confirms, that his damages expert is John Reznikoff. Defendant is aware of Mr. Reznikoff. Mr. Reznikoff already testified at the April 18, 2014 trial (DE 85) and produced an expert report, on file with this Court. Defendant is aware of both Mr. Reznikoff's trial testimony and expert report.

The decision of the Eleventh Circuit is consistent with this approach. Although the Eleventh Circuit indicated that an expert on Venezuelan law may not be necessary, it simultaneously highlighted the wisdom of retaining an expert as a protective measure. The Eleventh Circuit held that apparent authority (as opposed to actual authority) of a governmental official suffices to bind the foreign sovereign to a contract under the FSIA, but then took the precaution in the present case of finding allegations of both apparent and actual authority in light of the division among the Circuits on this issue. *Devengoechea v. Bolivarian Republic of Venezuela,* 889 F.3d 1213, 1226-28 (11th Cir. 2018) (adhering to apparent-authority standard while finding allegations of both apparent and actual authority in light of division among the Circuits). This precautionary approach taken by the Eleventh Circuit highlights the wisdom of retaining a Venezuelan-law expert on which a final decision may be influenced by the forthcoming discussions between counsel next week in an effort to resolve some of the parties' discovery disputes. Plaintiff thus seeks a short one-week extension of time, to Oct. 19, 2018, to designate an expert on Venezuelan law.

Defendant would not be prejudiced by this short extension of time, for 3 reasons: First, defendant takes the position that today's deadline for plaintiff to designate an expert is no longer operative. Although plaintiff disagrees, defendant certainly cannot be prejudiced by a short extension of a deadline whose very existence defendant disputes. Second, the short extension of time (only one week) does not affect nor conflict with any other deadlines ordered by this Court. Third, the short extension of time would not prejudice defendant's ability to prepare. It still leaves plenty of time for defendant to investigate and depose whatever expert witness plaintiff may designate on Venezuelan law. The Court-ordered discovery cutoff is not until Nov. 12, 2018 (DE 195) and trial not until January 2019 (DE 182 p.1). Plaintiff's counsel will cooperate

fully in setting a deposition date, consistent with both Court-ordered dates and with this Court's

order that "for the most part, discovery on the merits and jurisdiction will proceed together"

(DE 195).

Plaintiff has not made any prior application for the relief sought in this motion.

## **CONCLUSION**

For the foregoing reasons, this Court should grant this one-time motion and should

extend by one week, from today Oct. 12, 2018 to Oct. 19, 2018, the deadline for plaintiff to

designate an expert on Venezuelan law.

## **CONSULTATION BETWEEN COUNSEL**

In compliance with Fed.R.Civ.P. 37 and S.D.Fla. Civil Rule 7.1(a)(3), plaintiff's counsel

Dennis Grossman and Max Price consulted with defendant's counsel Kevin Meehan by

telephone today beginning at 11:00 AM in a good faith effort to resolve the issues raised by this

motion and have been unable to do so.  Counsel had an extensive discussion of the parties'

discovery objections including possible extension of today's deadline for plaintiff to designate an

expert witness on Venezuelan law.  Defendant's counsel stated he could not consent to an

extension because defendant no longer considers the deadline to be operative and thus cannot

consent to extend a deadline whose existence defendant questions.  Defendant's counsel could

not point to any prejudice in a short one-week extension.  Plaintiff believes the deadline is

operative and seeks this one-time extension of one week which still leaves plenty of time prior to

the Nov. 12, 2018 discovery cutoff (DE 195) and January 2019 trial (DE 182 p.1), as well as for

compliance with this Court's order that "for the most part, discovery on the merits and

jurisdiction will proceed together" (DE 195).  Counsel will continue to confer next week on their

discovery objections.

Dated:  October 12, 2018              LAW OFFICE OF DENNIS GROSSMAN
                                     Dennis Grossman

                                     by:  /s/ Dennis Grossman
                                          Dennis Grossman
                                     Attorney for Plaintiff
                                     6701 Sunset Drive (Suite 104)
                                     Miami, Florida 33143
                                     (516) 466-6690
                                     dagrossmanlaw@aol.com
                                     FBN 0841811

                                   LAW OFFICE OF MAX R. PRICE, P.A.
                                   Max R. Price
                                   Attorneys for Plaintiff
                                   6701 Sunset Drive (Suite 104)
                                   Miami, Florida 33143
                                   (305) 662-2272
                                   mprice@pricelegal.com
                                   FBN 651494

## CERTIFICATE OF SERVICE

I certify that copies of this motion are being served on counsel for defendant this Oct. 12, 2018 by email addressed to their email addresses as follows:  Joseph Pizzurro, jpizzurro@curtis.com, Kevin Meehan, kmeehan@curtis.com, Mitchell Widom, mwidom@bilzin.com, and through this Court's ECF system by filing this motion with this Court.

 /s/ Dennis Grossman
  Dennis Grossman
Attorney for Plaintiff
6701 Sunset Drive (Suite 104)
Miami, Florida 33143
(516) 466-6690
dagrossmanlaw@aol.com
FBN 0841811

# EXHIBIT 21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

RICARDO DEVENGOECHEA,  )       Case No.: 12-23743-CIV-HUCK/McALILEY
     Plaintiff,  )
vs.  )
  )
BOLIVARIAN REPUBLIC OF  )
VENEZUELA, a foreign state,  )
     Defendant.  )
_____  )

## PLAINTIFF'S AGREED MOTION FOR 4-DAY EXTENSION OF FACT DISCOVERY CUTOFF

With the agreement of defendant's counsel (stipulation and proposed order attached), plaintiff moves to extend by 4 days, from Nov. 26, 2018 to Nov. 30, 2018, the Court-ordered deadline for completion of fact discovery (Court order at DE 207). The existing deadline, Mon. Nov. 26, 2018, immediately follows the Thanksgiving Holiday weekend, and the parties need the additional 4 days to Fri. Nov. 30, 2018 to complete fact discovery. The proposed extension would not affect any other Court-ordered deadline. Plaintiff respectfully requests this Court's approval of the proposed 4-day extension of time. See attached stipulation.

Dated: November 8, 2018        LAW OFFICE OF DENNIS GROSSMAN
                        Dennis Grossman

                        by: /s/ Dennis Grossman
                            Dennis Grossman
                        Attorney for Plaintiff
                        6701 Sunset Drive (Suite 104)
                        Miami, Florida 33143
                        (516) 466-6690
                        dagrossmanlaw@aol.com
                        FBN 0841811

                        LAW OFFICE OF MAX R. PRICE, P.A.
                        Max R. Price
                        Attorneys for Plaintiff
                        6701 Sunset Drive (Suite 104)
                        Miami, Florida 33143
                        (305) 662-2272
                        mprice@pricelegal.com
                        FBN 651494

## <u>CERTIFICATE OF SERVICE</u>

I certify that copies of this motion are being served on counsel for defendant this Nov. 8, 2018 through this Court's ECF system by filing this motion with this Court.

<u>/s/ Dennis Grossman</u>
Dennis Grossman
Attorney for Plaintiff
6701 Sunset Drive (Suite 104)
Miami, Florida 33143
(516) 466-6690
dagrossmanlaw@aol.com
FBN 0841811

# EXHIBIT 22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

RICARDO DEVENGOECHEA,       )    Case No.: 12-23743-CIV-HUCK/McALILEY
      Plaintiff,           )
vs.                    )
                       )
BOLIVARIAN REPUBLIC OF      )
VENEZUELA, a foreign state,    )
      Defendant.        )
_____ )

## PLAINTIFF'S AGREED MOTION FOR EXTENSION OF FACT DISCOVERY CUTOFF FOR 2 LIMITED INQUIRIES BY PLAINTIFF

With the agreement of defendant's counsel, plaintiff moves to extend his own deadline to complete fact discovery for 2 limited inquiries by plaintiff which became necessary only 3 days ago, Nov. 27, 2018. The existing Court-ordered discovery cutoff is today, Nov. 30, 2018 (DE 214). Plaintiff became aware of the need for an extension of the fact-discovery deadline only 3 days ago. The 2 limited inquiries plaintiff needs to pursue are as follows:

**1. Taking the deposition of defendant's Rule 30(b)(6) witness**: In compliance with this Court's order for a Nov. 30, 2018 deadline to complete fact discovery, defendant agreed to produce its Rule 30(b)(6) witness for deposition on Nov. 30, 2018. The deposition was set to occur today Nov. 30, 2018 at 9:30 AM at the office of plaintiff's counsel in Miami. However, on Nov. 27, 2018 at 7:06 PM (only 3 days ago), defendant's counsel informed plaintiff's counsel by email that defendant's Rule 30(b)(6) witness – an official of the Venezuelan government – could not get an entry visa to travel to the United States for his deposition. Because of the problems in holding the deposition in Venezuela itself, defendant's counsel suggested an alternative deposition venue in either Aruba or the Dominican Republic. The parties currently are trying to arrange a mutually convenient date and venue for the deposition in the Dominican Republic. To no fault of his own, plaintiff needs a reasonable period of time to take the deposition of the

-1-

defendant's Rule 30(b)(6) witness in the Dominican Republic. Plaintiff is pursuing this matter with dispatch and promptness.

**2. Taking the deposition of non-party witness Alberto Arvelo**: On Nov. 27, 2018 at 7:06 PM (only 3 days ago), defendant's counsel disclosed to plaintiff by email that defendant had located and was in communication with non-party Alberto Arvelo and had discoverable correspondence with him. The correspondence was dated Oct. 5, 2018 and Oct. 12, 2018. Defendant produced the correspondence 3 days ago on Nov. 27, 2018.

Albert Arvelo is a potentially important witness. Mr. Arvelo was on the private jet (with defendant's official Delcy Rodriguez[1]) which traveled to the United States with defendant's officials to meet with plaintiff and examine his (plaintiff's) Bolivar collection. This same private jet brought plaintiff, his Bolivar collection, and these same people from Venezuela – including Mr. Arvelo – back to Venezuela. A picture of Mr. Arvelo (standing next to Delcy Rodriguez in front of this private jet at the Orlando, Florida airport) appears on the first page of exh.3 to the Second Amended Complaint (DE 140-3 p.1). Mr. Arvelo also met with plaintiff extensively in Venezuela and was part of the team in Venezuela which examined plaintiff's Bolivar collection. Mr. Arvelo also accompanied plaintiff elsewhere in Venezuela.

Defendant apparently located Mr. Arvelo at an address in California, sent a letter and email to him on Oct. 5, 2018, and received a response from Mr. Arvelo on Oct. 12, 2018. Defendant disclosed these communications to plaintiff only 3 days ago on Nov. 27, 2018 at 7:06 PM. These communications are misleading and askew as well as inadmissible. In fairness, plaintiff should have a reasonable period of time to depose Mr. Arvelo now that defendant has disclosed 3 days ago his apparent location and the communications between them.

---

[1] Delcy Rodriguez is the current Vice President of Venezuela.

* * *

Plaintiff will pursue both matters with promptness and dispatch.  Plaintiff does not anticipate that the requested extension for plaintiff's pursuit of these 2 limited inquiries will affect any other Court-ordered deadline.  As already shown, the need for the requested extension was not plaintiff's fault, as plaintiff timely set the deposition of defendant's Rule 30(b)(6) witness for today (by agreement) in compliance with the existing discovery deadline, was not informed of the inability of defendant's Rule 30(b)(6) witness to appear at deposition until 3 days ago, and was not informed of defendant's communications with and apparent location of Mr. Arvelo also until 3 days ago.

Defendant's counsel Kevin Meehan consented to the granting of this motion during undersigned counsel's telephone conversation with him this afternoon.

This Court previously granted a 4-day extension of the discovery cutoff, from Nov. 26, 2018 to Nov. 30, 2018, by reason of the scheduling difficulties encountered surrounding the Thanksgiving Holiday weekend (DE 214).  It was in compliance with this 4-day extension that plaintiff set (by agreement) the deposition of defendant's Rule 30(b)(6) witness timely for today Nov. 30, 2018 which now requires the requested extension in the 2 limited areas mentioned above for the above-stated reasons that were not plaintiff's fault.

## Conclusion

This Court should grant this motion and should extend the discovery deadline for plaintiff's pursuit of 2 limited inquiries consisting of the deposition of defendant's Rule 30(b)(6) witness and the deposition of non-party witness Alberto Arvelo – both of which are necessary for

(continued next page)

reasons that are not plaintiff's fault.  A proposed order is attached.


Dated:  November 30, 2018                LAW OFFICE OF DENNIS GROSSMAN
                                         Dennis Grossman

                                         by: /s/ Dennis Grossman
                                                Dennis Grossman
                                         Attorney for Plaintiff
                                         6701 Sunset Drive (Suite 104)
                                         Miami, Florida 33143
                                         (516) 466-6690
                                         dagrossmanlaw@aol.com
                                         FBN 0841811

                                         LAW OFFICE OF MAX R. PRICE, P.A.
                                         Max R. Price
                                         Attorneys for Plaintiff
                                         6701 Sunset Drive (Suite 104)
                                         Miami, Florida 33143
                                         (305) 662-2272
                                         mprice@pricelegal.com
                                         FBN 651494

## <u>CERTIFICATE OF SERVICE</u>

I certify that copies of this motion are being served on counsel for defendant this Nov. 30, 2018 through this Court's ECF system by filing this motion with this Court.

          <u>/s/ Dennis Grossman</u>
            Dennis Grossman
Attorney for Plaintiff
6701 Sunset Drive (Suite 104)
Miami, Florida 33143
(516) 466-6690
dagrossmanlaw@aol.com
FBN 0841811

# EXHIBIT 23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

| | | |
|---|---|---|
| RICARDO DEVENGOECHEA, | ) | Case No.: 12-CV-23743-HUCK/McALILEY |
|     Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| BOLIVARIAN REPUBLIC OF | ) | |
| VENEZUELA, a foreign state, | ) | |
|     Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN ORDER TO
GIVE FORMAL NOTICE TO THE GUAIDO REGIME OF DEFENDANT**

Plaintiff Ricardo Devengoechea hereby moves for an extension of time to respond to

defendant's motion for summary judgment, in order to give formal notice to the Guaido regime

of defendant Venezuela which the United States now recognizes as the official government of

Venezuela. Defendant's motion for summary judgment was made in Dec. 2018 by the Maduro

regime at a time when the United States recognized the Maduro regime (DE 221-224). After the

summary-judgment motion was filed, the parties settled this action. This action was then stayed

for approximately 3 years while plaintiff successfully obtained an OFAC license from the U.S.

Treasury Dept. authorizing plaintiff to receive the agreed settlement sum from Venezuela (DE

228).[1] When defendant Venezuela refused to honor the settlement agreement even after plaintiff

obtained the OFAC license, plaintiff moved to restore this action to active status which was

plaintiff's only remedy under the settlement agreement (DE 229). This Court granted plaintiff's

motion and restored this action to active status (DE 231).

Plaintiff now needs to respond to defendant Venezuela's motion for summary judgment,

but first plaintiff must give notice to the Guaido regime of defendant Venezuela which the

---

[1] The Office of Foreign Assets Control ("OFAC") of the U.S. Treasury Dept. is authorized to
issue licenses permitting receipt of moneys involving sanctioned countries/entities.

United States now formally recognizes. Even though it was the Maduro regime which filed the motion for summary judgment (when the United States still recognized the Maduro regime), still formal notice to the Guaido regime is now necessary. This will eliminate any "notice" problems or "notice" issues going forward, so that both the Maduro and Guaido regimes will have undisputed formal notice of all aspects of this case as it proceeds. This will enable plaintiff to obtain a clean judgment in this action, free of "notice" issues.

Plaintiff does not propose to serve initial process anew on the Guaido regime. That is not necessary. Defendant Venezuela was already formally served with process as party defendant years ago and is present before this Court which has full in personam jurisdiction over it. The present request simply involves the provision of formal notice of this case to the Guaido regime, so that there is no issue going forward as to whether the Guaido regime has the requisite notice to participate in this action if it wishes to do so.

Plaintiff is informed that such formal notice may be effected through the U.S. State Department. Plaintiff intends to pursue this method of giving notice. Plaintiff respectfully submits that a reasonable period for plaintiff to respond to defendant's summary-judgment motion is 45 days after plaintiff gives formal notice of this action to the Guaido regime. This will provide reasonable notice to the Guaido regime prior to any hearing on the summary-judgment motion while also affording reasonable notice to plaintiff after the Guaido regime takes action if it wishes to do so.

In compliance with S.D.Fla. Civil Rule 7.1(a)(3), plaintiff contacted defendant Venezuela's counsel of record prior to making this motion, to seek his consent. In response, defendant Venezuela's counsel neither opposed nor consented to this motion and stated only that he could not further represent the Maduro regime and had received no instructions from the Guaido regime.

## PLAINTIFF'S UNDERLYING CLAIM AND GENERAL SIMON BOLIVAR [2]

Plaintiff is the great-great-grandson of Joaquin de Mier, a leading figure in the founding of the nation of Colombia. De Mier was a close friend and business associate of General Simon Bolivar, the famous Military General and revolutionary leader who led six South American countries to independence in successful revolutions against Spanish colonial rule in the nineteenth century. General Bolivar is known as "The Liberator" and is probably the foremost person in South American history. He has been called the George Washington of South America. Bolivar also travelled widely and maintained a friendship with French leader Napoleon Bonaparte.

Shortly before his death, Bolivar gifted a treasure trove of documents and artifacts to his close friend Joaquin de Mier. These included thousands of historical documents, some signed by Bolivar himself (examples in DE 140-1, Second Amended Complaint exh.1), along with the official Liberation Medal of the nation of Peru (*id.,* DE 140-1), epaulets of Napoleon Bonaparte, and a locket of Bolivar's hair.

These documents and artifacts were handed down from generation-to-generation in the de Mier family and ultimately came into possession of plaintiff Ricardo Devengoechea upon the death of his mother in 2007. The de Mier family tree showing the lineage from Joaquin de Mier to plaintiff Ricardo Devengoechea appears in the book "La Carta" ("The Letter") about General Bolivar (DE 229-7).

In 2007 representatives of the government of Venezuela learned of plaintiff's collection and reached out to him about possibly purchasing it. These agents of the Venezuelan government flew in a private jet to Orlando, Florida (where plaintiff resided) to meet plaintiff

---

[2] The facts are taken from the Second Amended Complaint (DE 140), plaintiff's verification of these facts (DE 140-6), and from the Eleventh Circuit's affirmance of FSIA jurisdiction. *Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213 (11th Cir. 2018).

and examine his collection.  After several meetings and their detailed examination of the collection, they reached an agreement with plaintiff in Florida as follows:  Plaintiff would return to Venezuela with them in their private jet and would bring his collection with him, and that in Venezuela, its experts would examine the collection, after which Venezuela would either purchase the collection for a price to be agreed-upon or would return the collection to him in Florida.  The Venezuelan agent with whom plaintiff reached this agreement in Florida was Ms. Delcy Rodriguez, who was then Coordinator General of the Office of Vice-President of Venezuela.  Ms. Rodriguez is now Vice-President of Venezuela.  A picture of Ms. Rodríguez, standing next to the private jet on the airport runway in Orlando, Florida in 2007, is attached to the Second Amended Complaint as exh.3 (DE 140-3).

After spending 3 weeks in Venezuela as guest of the Venezuelan government (with a short side-trip back to Florida at the government's request and expense), plaintiff was told its experts needed more time to examine his large collection and its thousands of documents. Plaintiff was told he should return to the United States and that he would be informed when the examination was complete.

Back in the United States, plaintiff made repeated inquiries about his collection over the next 2-3 years and repeatedly was told that more time was needed.

In July 2010 articles appeared in various newspapers that Venezuelan President Hugo Chavez had ordered the exhumation of General Bolivar's body (DE 140-5, Second Amended Complaint exh.5).  Although not mentioned in the news articles, it became clear to plaintiff that one reason for the exhumation was to test Bolivar's remains for a DNA match with the locket of hair in plaintiff's collection.

Plaintiff's further inquiries went unanswered.  Plaintiff then commented this action.

Plaintiff verified the above facts in his Declaration under 28 USC § 1746 (DE 140-6, Second Amended Complaint exh.6).

## THE PRESENT ACTION AND DECISION OF THE ELEVENTH CIRCUIT

Defendant Venezuela failed to respond to the Summons and Complaint.  After an evidentiary hearing, this Court awarded plaintiff a default judgment in the amount $7,464,953.12 (DE 26).  Defendant Venezuela moved to vacate it.  Plaintiff consented to its vacatur as a courtesy, to permit defendant to defend on the merits (DE 101).

Defendant Venezuela then moved to dismiss this action for alleged lack of jurisdiction under the Foreign Sovereign Immunities Act ("FSIA") and other grounds (DE 141).  This Court denied defendant's motion in full (DE 165 adopting and supplementing DE 150).  On immediate appeal of the jurisdictional/sovereign-immunity issue, the Eleventh Circuit affirmed, upholding FSIA jurisdiction.  *Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213 (11th Cir. 2018).

## THE PARTIES' SETTLEMENT; THE OFAC LICENSE WHICH AUTHORIZED PLAINTIFF TO RECEIVE IT; AND DEFENDANT'S REFUSAL TO PAY IT

The Eleventh Circuit remanded to this Court for proceedings on the merits.  After extensive discovery except deposition(s) of defendant Venezuela which were not yet taken, the parties settled this action on Dec. 14, 2018 for a sum certain.  Defendant Venezuela's counsel confirmed the settlement by email that same date (DE 229-2).

Plaintiff informed this Court of the settlement and of his intent to seek a license from the U.S Treasury Dept.'s Office of Foreign Assets Control ("OFAC license") to permit his receipt of the settlement sum (DE 226).  This Court administratively closed this action pending receipt of the OFAC license, permitting "[a]ny party [to] move to re-open this case should it become appropriate" (DE 228).

Plaintiff appropriately moved to restore this case to active status (DE 229) which this Court granted (DE 231).

It now is appropriate to give the Guaido regime reasonable formal notice of this action so that it may participate in it, and to afford plaintiff a reasonable time to respond to defendant Venezuela's motion for summary judgment contemporaneously with reasonable notice to the Guaido regime. Plaintiff respectfully submits he should have 45 days to respond to defendant Venezuela's motion for summary judgment after formal notice to the Guaido regime.

## **CONCLUSION**

For the foregoing reasons, this Court should grant this motion and should extend the time for plaintiff to respond to defendant Venezuela's motion for summary judgment until 45 days after the provision of formal notice of this action to the Guaido regime.

## **CERTIFICATION PURSUANT TO S.D.FLA. CIVIL RULE 7.1(a)(3)**

Pursuant to S.D.Fla. Civil Rule 7.1(a)(3), undersigned counsel for plaintiff conferred with defendant Venezuela's counsel by email exchange on Jan. 14 & 18, 2022, seeking consent to the granting of this motion, in which defendant Venezuela's counsel neither opposed nor consented to the granting of this motion and stated he could not appear further in this action on behalf of the Maduro regime and had not received instructions from the Guaido regime.

(continued next page)

## <u>CERTIFICATE OF SERVICE</u>

I certify that copies of this motion are being served on counsel for defendant Venezuela this January 18, 2022 through this Court's ECF system by filing this motion with this Court.

Dated:  January 18, 2022                Respectfully submitted,

LAW OFFICE OF DENNIS GROSSMAN

by:  /s/ Dennis Grossman
        Dennis Grossman
Attorney for Plaintiff
6701 Sunset Drive (Suite 104)
Miami, Florida 33143
(516) 466-6690
dagrossmanlaw@aol.com
FBN 0841811

LAW OFFICE OF MAX R. PRICE, P.A.
Max R. Price
Attorneys for Plaintiff
6701 Sunset Drive (Suite 104)
Miami, Florida 33143
(305) 662-2272
mprice@pricelegal.com
FBN 651494

# EXHIBIT 24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

RICARDO DEVENGOECHEA,   )  Case No.: 12-CV-23743-HUCK/McALILEY
   Plaintiff,      )
vs.           )
BOLIVARIAN REPUBLIC OF   )
VENEZUELA, a foreign state,   )
   Defendant.      )
_____ )

## PLAINTIFF'S MOTION TO EXTEND TIME TO RESPOND TO MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

  Plaintiff Ricardo Devengoechea hereby moves to extend to May 1, 2023 the time to file his response to defendant's motion to dismiss or for summary judgment (ECF 221-224), by reason of current trial obligations of plaintiff's counsel actually engaged in trial at this time. The entire office of plaintiff's counsel is now engaged in a lengthy jury trial in Miami-Dade Circuit Court which began this week, and for which there was extensive necessary preparation in prior weeks, and which is scheduled to last through the end of next week. The case in Miami-Dade Circuit Court is *Israeli v. Stevenson*, case no. 2018-037602-CA-01, now being tried before the Hon. Charlie Wilson, Judge of the Circuit Court in Miami-Dade County.

  The preparations for this lengthy jury trial have been extensive and monopolizing on the time and resources of our office. The actual jury trial, now in progress, similarly is monopolizing our time. During and prior to this jury trial, we have earnestly tried to complete preparation of present plaintiff's opposition to defendant's motion, but the trial demands in the above-mentioned Circuit Court case have made this impossible, despite our sincere best efforts.

  Accordingly, plaintiff Devengoechea respectfully seeks an extension of time, from tomorrow April 20, 2023 to May 1, 2023, to file his opposition to defendant's motion to dismiss or for summary judgment. A proposed order is attached.

-1-

Following this Court's order reopening this action (ECF 259), there have been no prior motions to extend this deadline. There is no conceivable prejudice to defendant in this short extension of time to the beginning of the following month. The interests of justice would be served by granting this short extension of time

## CONCLUSION

This Court should grant this motion and should extend, from tomorrow April 20, 2023 to May 1, 2023, the date by which plaintiff may respond to defendant's motion to dismiss or for summary judgment.

## CERTIFICATION PURSUANT TO S.D.FLA. CIVIL RULE 7.1(a)(3)

In light of the withdrawal of defendant's attorneys (ECF 253 & 255) and the futility of trying to communicate with defendant directly and its lack of response to plaintiff's prior notices after counsel's withdrawal, there has been no attempt to gain defendant's consent to this motion. Plaintiff respectfully submits that this is appropriate in this situation, especially in light of the non-substantive aspect of this motion for a mere short extension of time.

## CERTIFICATE OF SERVICE

True copies of this Motion have been served upon defendant on this April 19, 2023 in the following manners:

by Federal Express addressed to defendant Venezuela as follows:

Venezuelan Mission
335 East 46 Street
New York, New York 10017; and

(continued next page)

-2-

by email to defendant Venezuela addressed to:

> ministeriopublico@mp.gob.ve, bfincheltub@us.embajadavenezuela.org,
> serviciosconsulares@us.embajadavenezuela.org,
> misionvenezuelaonu@gmail.com, despacho.embveus@mppre.gob.ve; and

> 2 further email addresses of defendant Venezuela supplied by defendant's former
> attorneys.  These 2 further email addresses are required to be kept confidential by
> Court order filed February 2, 2023 (ECF 253 ¶ 4).

Dated:  April 19, 2023                     Respectfully submitted,

                                           LAW OFFICE OF MAX R. PRICE, P.A.
                                           Max R. Price

                                           by:  /s/ Max R. Price
                                                   Max R. Price
                                           Attorney for Plaintiff
                                           6701 Sunset Drive (Suite 104)
                                           Miami, Florida 33143
                                           (305) 662-2272
                                           mprice@pricelegal.com
                                           FBN 651494

# EXHIBIT 25

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

RICARDO DEVENGOECHEA,

    Plaintiff,

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,
a foreign state,

    Defendant.

CASE NO.: 12-cv-23743-PCH/Otazo-Reyes

## RESPONSE TO PLAINTIFF'S MOTION FOR EXTENSION OF TIME

Defendant Bolivarian Republic of Venezuela (the "Republic") hereby submits this response in opposition to Plaintiff's Motion for Extension of Time to File Response to Defendant's Amended Motion to Dismiss the Complaint, filed July 6, 2015 [Dkt. No. 103] (the "Motion for Extension").

Plaintiff's Motion for Extension effectively requests a seventh extension of the deadline to respond to the Republic's motion to dismiss the complaint. The Republic originally moved to dismiss the complaint for lack of subject matter jurisdiction and personal jurisdiction under the Foreign Sovereign Immunity Act of 1976, 28 U.S.C. §§ 1330 and 1602, *et seq.* (the "FSIA") on February 15, 2015 (the "Original Motion"). (Dkt. No. 76.) Plaintiff never responded to the Original Motion. Instead, Plaintiff sought and received five extensions of the deadline for responding. The Republic consented to each of these five extensions. Plaintiff then sought a *de facto* sixth extension on June 11, 2015 by unilaterally filing a Stipulation and Order (the "Stipulation") that requested the Court to vacate the default judgment entered against the Republic, deny the Original Motion as moot and direct the Republic to file another motion to

dismiss the Complaint. Plaintiff failed to apprise the Court that Plaintiff had not informed the Republic of, or obtained its consent to, the Stipulation. While the Republic opposed the Stipulation, the Republic agreed with Plaintiff's counsel, in the interest of avoiding protracted litigation on the issue, to file a new motion to dismiss. The Republic advised Plaintiff's counsel that due to the prior extensions the Republic would not agree to any further extensions of Plaintiff's deadline for responding to that motion to dismiss. Accordingly, the Republic filed its Amended Motion to Dismiss the Complaint on June 22, 2015 (the "Amended Motion").

By filing the Motion for Extension, Plaintiff again asks this Court to delay the resolution of the critical threshold jurisdictional issues in this case. Plaintiff's request for a seventh extension is unreasonable. And such an extension would contravene the FSIA's policy against imposing unnecessary burdens on foreign state defendants. *See NML Capital, Ltd v. Banco Central de la Republica Argentina*, 652 F.3d 172, 198 (2d Cir. 2011) ("FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation."); *In re Papandreou*, 139 F.3d 247, 252-53 (D.C. Cir. 1998) ("Immunity should reduce the expenses, in time and inconvenience, imposed on foreign sovereigns by litigation in U.S. courts.").

Moreover, Plaintiff has not offered any persuasive justification for the requested delay. Contrary to the Plaintiff's assertions, the Republic's Amended Motion does not significantly differ from the Original Motion. Indeed, the Amended Motion asserts the same arguments for dismissal under the FSIA that were raised in the Original Motion, which was filed nearly five months ago. Five months is more than enough time to respond to the Republic's arguments.

Ordinarily, we would not object to opposing counsel's request for more time. However, their request is unreasonable based on the history of this case. Plaintiffs have already had an

exorbitant amount of time to respond to the arguments made in the motion to dismiss. Additionally, their submission to the Court of a demand styled as a "Stipulation" which had not been agreed to resulted in further delay and unnecessary costs. Finally, we advised Plaintiff's counsel when we stated we would agree to file an amended motion that we would not agree to any further extensions.

In sum, this Court should deny Plaintiff's unreasonable request for a seventh extension.

By submitting this response, the Republic specifically reserves all of its rights and does not waive sovereign immunity or any of its defenses.

Dated: July 7, 2015

Respectfully submitted,

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**

By:  _/s/ Mitchell E. Widom_
Mitchell E. Widom
mwidom@bilzin.com
Lori P. Lustrin
llustrin@bilzin.com
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559

– and –

Joseph D. Pizzurro (_pro hac vice_)
jpizzurro@curtis.com
Robert B. Garcia (_pro hac vice_)
robert.garcia@curtis.com
**CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559

_**Attorneys for Defendant Bolivarian Republic of Venezuela**_

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Court

and served via CM/ECF electronic mail service on all counsel of record on the date hereof.

Dated: July 7, 2015.

By: */s/ Mitchell E. Widom*
Mitchell E. Widom

# EXHIBIT 26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

RICARDO DEVENGOECHEA,     )     Case No.: 12-23743-CIV-HUCK/McALILEY
     Plaintiff,     )
vs.     )
     )
BOLIVARIAN REPUBLIC OF     )
VENEZUELA, a foreign state,     )
     Defendant.     )
_____     )

## PLAINTIFF'S UNOPPOSED MOTION FOR STAY OF ACTION NUNC PRO TUNC TO PRESENT DATE FEB. 27, 2019 IN LIGHT OF PRESIDENTIAL SANCTIONS

In light of President Trump's recent Executive Order 13850 (Nov. 1, 2018) ("EO 13850") concerning the situation in Venezuela which is the defendant in this action, plaintiff moves to stay this action *nunc pro tunc* to the present date Feb. 27, 2019. The requested stay, if granted, will stay this action effective as of the present date. EO 13850 may be found at 83 FR 55243.

This stay is necessary to enable plaintiff to apply for a special "OFAC license" from the U.S. Dept. of Treasury to consummate the settlement of this action, as authorized by EO 13850. The specifics are as follows:

### Overview Of Action and Litigation History

Plaintiff brought this action against Venezuela under the Foreign Sovereign Immunities Act, 28 USC 1330 & 1602 *et seq.* ("FSIA"), to recover the value of his collection of memorabilia and artifacts concerning South American liberation leader Simon Bolivar. Bolivar is heralded as the George Washington of South America, having successfully led six South American countries to independence from Spanish colonial rule. The collection once belonged to Bolivar and includes thousands of documents of Bolivar's, as well as a certified locket of Bolivar's hair, epaulets gifted to Bolivar by Napoleon Bonaparte, and the unique Peru Liberation Medal awarded to Bolivar for leading Peru to independence from Spanish colonial rule.

Plaintiff gained the collection through inheritance.  Plaintiff, an American citizen living in Orlando, Florida, was born and raised in the nation of Colombia where his great great grandfather Joaquin de Mier was a close friend and associate of Bolivar.  Bolivar gifted the collection to plaintiff's great great grandfather.  It was handed down from generation to generation in plaintiff's family, and finally to plaintiff upon the death of his mother in 2005.

At the instance of Venezuelan officials who traveled to Orlando, Florida to meet plaintiff in 2007, plaintiff brought his collection to Venezuela with these officials pursuant to an agreement under which Venezuela's experts would examine the collection in Venezuela, after which Venezuela either would pay plaintiff an agreed price for the collection or return it to him in Florida.  Neither happened, leading plaintiff to bring this action against Venezuela under the Foreign Sovereign Immunities Act.

The details are in plaintiff's Second Amended Complaint (DE 140) including plaintiff's detailed declaration attached to it (DE 140-6).

This Court denied Venezuela's motion to dismiss plaintiff's Second Amended Complaint, and the Eleventh Circuit affirmed.  The Eleventh Circuit held plaintiff's Second Amended Complaint to warrant jurisdiction under the FSIA.  *Devengoechea v Bolivarian Republic of Venezuela,* 889 F.3d 1213 (11th Cir. 2018).

On remand, the parties engaged in extensive discovery which included the deposition of plaintiff.  The parties then settled the action, and this Court postponed its discovery-related and trial-related deadlines to permit the parties to consummate the settlement (DE 225).  As of the present date, the settlement payment has not been received.

### Executive Order 13850 and the Need for an OFAC License

Because of the unfortunate situation in Venezuela, President Trump issued EO 13850 on Nov. 1, 2018.  EO 13850 prohibits sending to the United States or to any United States persons

assets relating to designated officials of the Venezuelan government whom the U.S. Treasury Dept. has found to have engaged in corrupt or other illegal activities. The Executive Order also prohibits a broad array of "directly or indirectly" related transactions whose full scope is impossible to determine with any reasonable certainty. Although plaintiff's claim is innocent and legitimate – which the Eleventh Circuit's decision supports – the payment of the settlement is now caught in the snare of the extremely broad and uncertain reach of EO 13850.

There is a safe harbor under EO 13850, but it takes time to invoke. Plaintiff needs a stay of this action to obtain permission from the U.S. Treasury Dept. which must review and approve the settlement. Other similar cases have granted stays in this situation. *See, e.g.,* attached.

The breadth of EO 13850 is extraordinary and uncertain in its scope. EO 13850 prohibits not only financial dealings with officials of the Venezuelan government specifically named by the Treasury Dept. ("specially designated nationals" or "SDNs"), but also financial dealings directly or indirectly "by, to or for the benefit of" SDNs, financial dealings directly or indirectly involving payment "from" SDNs, transactions which "evade[ ] or avoid[ ]" the restrictions, and acts deemed to be a "conspiracy" (undefined) to violate the restrictions (EO 13850 §§ 4(a), 4(b), 5(a), 5(b); 83 FR at 55244). The full reach of these restrictions is impossible to define.

Although the government of Venezuela itself as an entity is not an SDN, many of its officials are. It is virtually impossible to predict whether a particular transaction with the Venezuelan government somehow might "directly or indirectly" relate in some way to an SDN and thereby violate EO 13850.

EO 13850 offers a safe harbor. It expressly authorizes the Treasury Dept. to examine particular transactions with Venezuela on a case-by-case basis for their bona fide nature and to issue "licenses … pursuant to this order" to consummate the transaction if found to be legitimate

(EO 13850 § 1(b); 83 FR at 55243). These licenses are issued by the Treasury Dept.'s Office of Foreign Assets Control ("OFAC") and are called "OFAC licenses".

The broad and uncertain reach of EO 13850 makes an OFAC license imperative. It is the only safe approach. The law firm Skadden Arps (not involved in this case), after mentioning that "OFAC will have the ability to issue general or specific licenses", used typically veiled language to counsel anyone dealing with the Venezuelan government to seek an OFAC license:

> "In light of the sanctions that may be issued under E.O. 13850, companies with business dealings … involving the Government of Venezuela or its projects or programs should consider potential corruption risks in their assessment of the overall sanctions risk of a particular transaction."

Skadden, New Executive Order Authorizes the Imposition of Sanctions to Counter Corruption in Venezuela, https:www.skadden.com/insights/publications/2018/11/New Executive Order Authorizes the Imposition of Sanctions to Counter Corruption in Venezuela (Nov. 8, 2019).

Plaintiff intends to seek an OFAC license to receive his settlement. Although other political issues involving Venezuela may complicate the situation, the only feasible approach for plaintiff at this time appears to be pursuit of an OFAC license. Plaintiff is informed this process may take several months.

### The Need for Nunc Pro Tunc Relief

This Court's Order postponing the discovery-related and trial-related deadlines to consummate the settlement (DE 225), when read with this Court's General Scheduling Order, imposes imminent discovery-related deadlines and trial-related deadlines. In compliance with this Court's deadlines, plaintiff has timely noticed – without prejudice to settlement and as a protective measure – depositions for tomorrow Feb. 28, 2019 and March 4, 2019. The additional complications involving Venezuela, where President Trump has recognized Guaido as President

but Maduro continues in power, make it impossible to proceed with depositions, given the untoward situation confronting opposing counsel who was retained by the Maduro government.

To preserve the timeliness of plaintiff's actions (which are in fact timely) and not run afoul of this Court's deadlines, while simultaneously enabling plaintiff in good faith to pursue official U.S. government approval to receive his settlement through an OFAC license as authorized by EO 13850, plaintiff respectfully requests that this Court stay this action, subject to further Order of this Court, either *sua sponte* or at the request of any party, and that the stay when issued be effective *nunc pro tunc* to today Feb. 27, 2019.

### Consultation with Opposing Counsel

In compliance with this Court's rules, undersigned counsel for plaintiff has consulted with opposing counsel concerning this motion. Opposing counsel states it cannot speak for defendant Venezuela itself in light of President Trump's recognition of the Guaido government, but that opposing counsel, speaking for itself, has no opposition to this motion.

(continued next page)

## Conclusion

This Court should grant this motion and should stay this action *nunc pro tunc* to today

Feb. 27, 2019, allowing either party to seek relief from the stay at any time for good cause.

A proposed order is attached.

Dated:  February 27, 2019    LAW OFFICE OF DENNIS GROSSMAN
               Dennis Grossman

               by:  /s/ Dennis Grossman
                  Dennis Grossman
               Attorney for Plaintiff
               6701 Sunset Drive (Suite 104)
               Miami, Florida 33143
               (516) 466-6690
               dagrossmanlaw@aol.com
               FBN 0841811

               LAW OFFICE OF MAX R. PRICE, P.A.
               Max R. Price
               Attorneys for Plaintiff
               6701 Sunset Drive (Suite 104)
               Miami, Florida 33143
               (305) 662-2272
               mprice@pricelegal.com
               FBN 651494

## CERTIFICATE OF SERVICE

      I certify that copies of this motion are being served on counsel for defendant this Feb. 27, 2019 through this Court's ECF system by filing this motion with this Court.

                /s/ Dennis Grossman
                  Dennis Grossman
           Attorney for Plaintiff
           6701 Sunset Drive (Suite 104)
           Miami, Florida 33143
           (516) 466-6690
           dagrossmanlaw@aol.com
           FBN 0841811

# C | T | S | W

## COHEN TAUBER SPIEVACK & WAGNER P.C.

Sari E. Kolatch

Direct: 212-381-8729
Email: skolatch@ctswlaw.com

February 6, 2019

**Via ECF and Facsimile**

Honorable Paul G. Gardephe
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, NY 10007

MEMO ENDORSED *This action is stayed in light of Executive Order 13850. Either side may seek relief from this stay order at any time. The February 7, 2019 conference is adjourned sine die.*

SO ORDERED:

*[signature]*

Paul G. Gardephe, U.S.D.J.

Feb. 6, 2019

Re: *White Beech SNC, LLC v. Petroleos de Venezuela, S.A. and PDVSA Petroleo, S.A.*
Case No. 1:18-cv-4148 (PGG)(HBP)

Dear Judge Gardephe:

This firm represents plaintiff White Beech SNC, LLC ("White Beech") in the above referenced action. On February 1, 2019, Your Honor ordered White Beech to submit a letter explaining why this case should be not be stayed in light of Executive Order 13850 (November 1, 2018).

White Beech is in the processes of seeking guidance from the U.S. Department of the Treasury's Office of Foreign Asset Control ("OFAC") to determine whether any existing general license authorizes the continuation of this litigation and issuance of a final judgment against Petroleos de Venezuela, S.A. ("PDVSA") and PDVSA Petroleo, S.A. ("PPSA").

White Beech does not object to a stay of this action until either (i) White Beech receives such confirmation from OFAC (directly or by means of a published guidance); (ii) OFAC issues a general license or regulation which authorizes litigation such as this one to proceed to judgment; (iii) White Beech obtains a specific license to proceed to judgment in this litigation; or (iv) the sanctions against PDVSA and PPSA are otherwise amended in relevant manner or rescinded.

C | T | S | W

Honorable Paul G. Gardephe
February 6, 2019
Page 2 of 2

We will promptly notify the Court as soon as we become aware that one of these events
have occurred.

Respectfully submitted,

*Sari E. Kolatch*

Sari E. Kolatch

cc:  All counsel of record (via ecf)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

RICARDO DEVENGOECHEA,     )     Case No.: 12-23743-CIV-HUCK/McALILEY
     Plaintiff,     )
vs.     )
     )
BOLIVARIAN REPUBLIC OF     )
VENEZUELA, a foreign state,     )
     Defendant.     )
_____ )

## ORDER

This cause is before the Court on plaintiff's unopposed motion for a stay of this action

*nunc pro tunc* to Feb. 27, 2019 to enable plaintiff to consummate the settlement of this action in

light of the situation between the United States and Venezuela, together with the issuance of

Executive Order 13850. Having reviewed the motion and being otherwise duly advised, it is

hereby

ORDERED AND ADJUDGED that the motion is granted. This action is stayed *nunc pro*

*tunc* to Feb. 27, 2019, subject to the further Order of this Court. Either party may seek relief

from the stay at any time for good cause.

DONE AND ORDERED in Chambers in Miami, Florida on February ____, 2019.

_____
Paul C. Huck
United States District Judge

Copies provided to:
All counsel of record

-1-

# EXHIBIT 27

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

RICARDO DEVENGOECHEA,              )        Case No.: 12-CV-23743-HUCK/McALILEY
     Plaintiff,                            )
vs.                                               )
                                               )
BOLIVARIAN REPUBLIC OF             )
VENEZUELA, a foreign state,         )
     Defendant.                           )
_____ )

**PLAINTIFF'S MOTION TO VACATE ADMINISTRATIVE CLOSURE OF ACTION
AND TO RESTORE ACTION TO ACTIVE STATUS BY REASON OF
DEFENDANT VENEZUELA'S REFUSAL TO CONSUMMATE SETTLEMENT**

Plaintiff Ricardo Devengoechea hereby moves to vacate the Administrative Closure of

this action (DE 228) and to restore this action to active status by reason of defendant Venezuela's

refusal to pay the parties' agreed settlement.  Plaintiff prefers to consummate the settlement but,

as shown below, has no remedy other than to proceed to trial following defendant Venezuela's

refusal to honor the settlement agreement.  A proposed order is attached (exh.1).

**OVERVIEW**

This is an action for damages under the Foreign Sovereign Immunities Act (28 U.S.C. §§

1602 *et seq*)("FSIA").  The parties settled this action on the eve of trial in Dec. 2018 (exh.2) after

discovery following this Court's denial of defendant Venezuela's motion to dismiss which the

Eleventh Circuit affirmed.  Plaintiff informed this Court that, because of Presidential sanctions

involving defendant Venezuela, he intended to seek an OFAC license from the U.S. Treasury

Dept. to permit his receipt of the settlement sum (DE 226).[1]  On April 16, 2019 this Court issued

an Order administratively closing this action pending receipt of the OFAC license, allowing

"[a]ny party [to] move to re-open this case should it become appropriate" (DE 228).

---

[1] The Office of Foreign Assets Control ("OFAC") of the U.S. Treasury Dept. is authorized to
issue licenses permitting receipt of moneys involving sanctioned countries/entities.

Plaintiff applied for the OFAC license in 2019 and received it 2 years later on April 29, 2021 (exh.3). Plaintiff immediately sent a copy to defendant's counsel requesting the settlement payment (exh.4). Despite numerous emails to defendant's counsel – and despite the statement by defendant Venezuela's counsel as late as Oct. 14, 2021 that he would "confer" with his client (exh.5) – defendant Venezuela still refuses to pay the settlement.

Under the formal settlement agreement, plaintiff's only remedy for non-payment is to proceed to trial (exh.6, excerpt). Plaintiff prefers to consummate the settlement and to close this action but has no remedy other than proceeding to trial following defendant Venezuela's refusal to pay the settlement sum. *Id.*

Plaintiff now moves to vacate the Administrative Closure of this action, which this Court's Order expressly authorizes (DE 228), and to restore this action to active status to permit plaintiff to proceed to trial.

As shown below, all discovery is complete except the deposition(s) of defendant Venezuela. As also shown below, the change of diplomatic recognition by the United States – from the Maduro government in Venezuela to the Guaido government – does not impair the recognition of the parties' settlement nor this Court's power to proceed.

### PLAINTIFF'S UNDERLYING CLAIM AND GENERAL SIMON BOLIVAR [2]

Plaintiff is the great-great-grandson of Joaquin de Mier, a leading figure in the founding of the nation of Colombia. De Mier was a close friend and business associate of General Simon Bolivar, the famous Military General and revolutionary leader who led six South American countries to independence in successful revolutions against Spanish colonial rule in the nineteenth century. General Bolivar is known as "The Liberator" and is probably the foremost

---

[2] The facts are taken from the Second Amended Complaint (DE 140), plaintiff's verification of these facts (DE 140-6), and from the Eleventh Circuit's affirmance of FSIA jurisdiction. *Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213 (11th Cir. 2018).

person in South American history.  He has been called the George Washington of South America.  Bolivar also travelled widely and maintained a friendship with French leader Napoleon Bonaparte.

Shortly before his death, Bolivar gifted a treasure trove of documents and artifacts to his close friend Joaquin de Mier.  These included thousands of historical documents, some signed by Bolivar himself (examples in DE 140-1, Second Amended Complaint exh.1), along with the official Liberation Medal of the nation of Peru (*id.,* DE 140-1), epaulets of Napoleon Bonaparte, and a locket of Bolivar's hair.

These documents and artifacts were handed down from generation-to-generation in the de Mier family and ultimately came into possession of plaintiff Ricardo Devengoechea upon the death of his mother in 2007.  The de Mier family tree showing the lineage from Joaquin de Mier to plaintiff Ricardo Devengoechea appears in the book "La Carta" ("The Letter") about General Bolivar and is attached as exh.7.

In 2007 representatives of the government of Venezuela learned of plaintiff's collection and reached out to him about possibly purchasing it.  These agents of the Venezuelan government flew in a private jet to Orlando, Florida (where plaintiff resided) to meet plaintiff and examine his collection.  After several meetings and their detailed examination of the collection, they reached an agreement with plaintiff in Florida as follows:  Plaintiff would return to Venezuela with them in their private jet and would bring his collection with him, and that in Venezuela, its experts would examine the collection, after which Venezuela would either purchase the collection for a price to be agreed-upon or would return the collection to him in Florida.  The Venezuelan agent with whom plaintiff reached this agreement in Florida was Ms. Delcy Rodriguez, who was then Coordinator General of the Office of Vice-President of Venezuela.  Ms. Rodriguez is now Vice-President of Venezuela.  A picture of Ms. Rodríguez,

standing next to the private jet on the airport runway in Orlando, Florida in 2007, is attached to the Second Amended Complaint as exh.3 (DE 140-3) and is attached to this motion as exh.8.

After spending 3 weeks in Venezuela as guest of the Venezuelan government (with a short side-trip back to Florida at the government's request and expense), plaintiff was told its experts needed more time to examine his large collection and its thousands of documents. Plaintiff was told he should return to the United States and that he would be informed when the examination was complete.

Back in the United States, plaintiff made repeated inquiries about his collection over the next 2-3 years and repeatedly was told that more time was needed.

In July 2010 articles appeared in various newspapers that Venezuelan President Hugo Chavez had ordered the exhumation of General Bolivar's body (DE 140-5, Second Amended Complaint exh.5). Although not mentioned in the news articles, it became clear to plaintiff that one reason for the exhumation was to test Bolivar's remains for a DNA match with the locket of hair in plaintiff's collection.

Plaintiff's further inquiries went unanswered. Plaintiff then commented this action.

Plaintiff verified the above facts in his Declaration under 28 USC § 1746 (DE 140-6, Second Amended Complaint exh.6).

## THE PRESENT ACTION AND DECISION OF THE ELEVENTH CIRCUIT

Defendant Venezuela failed to respond to the Summons and Complaint. After an evidentiary hearing, this Court awarded plaintiff a default judgment in the amount $7,464,953.12 (DE 26). Defendant Venezuela moved to vacate it. Plaintiff consented to its vacatur as a courtesy, to permit defendant to defend on the merits (DE 101).

Defendant Venezuela then moved to dismiss this action for alleged lack of jurisdiction under the Foreign Sovereign Immunities Act ("FSIA") and other grounds (DE 141). This Court

denied defendant's motion in full (DE 165 adopting and supplementing DE 150). On immediate appeal of the jurisdictional/sovereign-immunity issue, the Eleventh Circuit affirmed, upholding FSIA jurisdiction. *Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213 (11th Cir. 2018).

**THE PARTIES' SETTLEMENT; THE OFAC LICENSE WHICH AUTHORIZED
PLAINTIFF TO RECEIVE IT; AND DEFENDANT'S REFUSAL TO PAY IT**

The Eleventh Circuit remanded to this Court for proceedings on the merits. After extensive discovery except deposition(s) of defendant Venezuela which were not yet taken, the parties settled this action on Dec. 14, 2018 for a sum certain. Defendant Venezuela's counsel confirmed the settlement by email that same date (exh.2).

Plaintiff informed this Court of the settlement and of his intent to seek a license from the U.S Treasury Dept.'s Office of Foreign Assets Control ("OFAC license") to permit his receipt of the settlement sum (DE 226). This Court's administratively closed this action pending receipt of the OFAC license, permitting "[a]ny party [to] move to re-open this case should it become appropriate" (DE 228).

It now is appropriate and necessary to re-open this action. Defendant Venezuela refuses to pay the settlement notwithstanding plaintiff's receipt of the OFAC license. After applying for the OFAC license in 2019, plaintiff received it on April 29, 2021 (exh.3). The next day, April 30, 2021, plaintiff informed defendant Venezuela's counsel of the OFAC license and sent a copy seeking payment of the settlement (exh.4) – followed by many further emails seeking payment of the settlement sum. Plaintiff even enlisted the noted law firm Steptoe & Johnson LLP of Washington D.C. to try to gain the agreed settlement payment (exh.9), all to no avail.

As late as Oct. 14, 2021 defendant Venezuela's counsel stated he would "confer" with defendant Venezuela about payment and about plaintiff's then-proposed motion (now this present motion) to restore this action (exh.5) in response to plaintiff's email. *Id.* Still no payment.

**THE CHANGE OF DIPLOMATIC RECOGNITION BY THE UNITED STATES –
FROM THE MADURO GOVERNMENT TO THE GUAIDO GOVERNMENT IN
VENEZUELA – NEITHER AFFECTED THE RECOGNITION OF THE SETTLEMENT
AGREEMENT'S VALIDITY NOR IMPAIRED THIS COURT'S AUTHORITY
<u>TO PROCEED IN THE EVENT OF DEFENDANT'S BREACH</u>**

In the event of possible opposition or resistance by defendant Venezuela to this motion, and solely as a protective measure, plaintiff states the following: The change of diplomatic recognition by the United States – from the Maduro government in Venezuela to the Guaido government – neither affected the recognition of the settlement agreement's validity nor impaired this Court's authority to proceed.

The Dec. 14, 2018 settlement agreement (exh.2) was reached with the Maduro government in Venezuela. At that time, the United States recognized the Maduro government as the official government of Venezuela.

One month later, in Jan. 2019, the United States changed diplomatic recognition from the Maduro government in Venezuela to the Guaido government, thereby recognizing the Guaido government as the official government of Venezuela from that point forward. This did not affect the recognition of the validity of the settlement agreement reached one month earlier with the Maduro government on Dec. 14, 2018 (exh.2). This is so for two reasons:

First, as mentioned above, the U.S. Treasury Dept.'s Office of Foreign Assets Control has expressly approved the present settlement and the payment thereof by virtue of its issuance of the OFAC license (exh.3).

Second, the Supreme Court has underscored the continuing viability of previously incurred obligations after a change in diplomatic recognition. The Maduro government was the

officially recognized government of Venezuela when the Dec. 14, 2018 settlement was reached.

Legal obligations incurred by a foreign government, which the United States recognized as the

official government at the time of the obligation, remain valid and binding on the foreign country

under a successor government after a change in diplomatic recognition. This protects reliance

and continuity in commercial and legal relations. As the Supreme Court held:

> "[I]t does not follow that [the U.S. President's change of] recognition renders of no effect transactions here with a prior recognized government in conformity to the declared policy of our government…. If those transactions, valid when entered into, were to be disregarded after the later recognition of a successor government, recognition would be but an idle ceremony, yielding none of the advantages of established diplomatic relations in enabling business transactions to proceed."

*Guarantee Trust Co. of New York v. U.S.,* 304 U.S. 126, 140-41 (1938) – still valid today.

Nor did the later signing of a formal settlement agreement affect or impair recognition of

the Dec. 14, 2018 settlement. After the Dec. 14, 2018 settlement, the U.S. changed its

recognition to the Guaido government, and the parties signed a formal settlement agreement

(exh.6, excerpt). However, under Florida law this subsequent formal settlement agreement was a

"mere formality" or "procedural formality" which did not affect or change the parties'

substantive settlement obligations under the earlier Dec. 14, 2018 email (exh.2). Under Florida

law, it was the email confirmation of the settlement on Dec. 14, 2018 (exh.2) that rendered the

settlement valid and binding on that date. The later signing (or non-signing) of a formal

settlement agreement was a "mere formality" or "procedural formality" which did not affect or

impair the earlier email-confirmed settlement. *Calderon v. Springs Landscape and Maintenance,*

*Inc.,* 2018 WL 5098976 at *2 (S.D.Fla. 2018) ("a binding settlement agreement can be reached

by email" - "a settlement agreement is not a condition precedent ... but rather a ***procedural***

***formality***"; emp.added - "settlements may exist under Florida law and be enforced without being

signed by the parties or even when there is no writing at all"); *Jarvis v. BMW of North America*

*LLC,* 2016 WL 1162324 at *2 (M.D.Fla. 2016) ("Florida law is clear that a settlement may be reached through a series of email exchanges" - "the physical act of signing a [settlement] document is a **_mere formality_**"; emp.added); *Miles v. Northwestern Mutual Life Insurance Co.,* 677 F.Supp.2d 1312, 1315-16 (M.D.Fla. 2009) ("the Sept. 18, 2009 email constitutes a complete, binding and enforceable settlement agreement" - "That the confidentiality and non-disparagement terms of the agreement were not fully expounded [in the email] is immaterial. Rather than being essential, these provisions go toward how the agreement will be implemented going forward.").

This Court has the power to proceed. Defendant Venezuela has formally appeared in this action, regardless of whether the Maduro or Guaido government is now recognized. The above-mentioned change of diplomatic recognition, from the Maduro government to the Guaido government, does not change defendant Venezuela's formal appearance in this action as defendant, validly made at the time of such appearance. *Guarantee Trust Co. of New York, supra,* 304 U.S. at 140-41 (1938) (quoted at p.7 *supra*).

In addition, present counsel for defendant Venezuela, who was retained by the Maduro government, has confirmed his ongoing communications with the Guaido government which he represents in other matters, and with whom he would confer concerning this action (exh.5).

## CONCLUSION

For the foregoing reasons, this Court should grant this motion, should vacate the administrative closure of this action as expressly authorized by this Court's order of administrative closure (DE 228), and should restore this action to active status, permitting plaintiff to proceed to trial.

## CERTIFICATION PURSUANT TO S.D.FLA. CIVIL RULE 7.1(a)(3)

Pursuant to S.D.Fla. Civil Rule 7.1(a)(3), and after many attempts to gain payment of the agreed settlement, undersigned counsel for plaintiff conferred with defendant Venezuela's counsel by email exchange on Oct. 14, 2021, seeking consent to the granting of this motion, in which defendant Venezuela's counsel stated he would confer with defendant Venezuela (exh.5), following which undersigned counsel for plaintiff received no further communication from defendant Venezuela's counsel.

## CERTIFICATE OF SERVICE

I certify that copies of this motion are being served on counsel for defendant Venezuela this November 30, 2021 through this Court's ECF system by filing this motion with this Court.


Dated:  November 30, 2021                    Respectfully submitted,

                                             LAW OFFICE OF DENNIS GROSSMAN

                                             by:  /s/ Dennis Grossman
                                                    Dennis Grossman
                                             Attorney for Plaintiff
                                             6701 Sunset Drive (Suite 104)
                                             Miami, Florida 33143
                                             (516) 466-6690
                                             dagrossmanlaw@aol.com
                                             FBN 0841811

                                             LAW OFFICE OF MAX R. PRICE, P.A.
                                             Max R. Price
                                             Attorneys for Plaintiff
                                             6701 Sunset Drive (Suite 104)
                                             Miami, Florida 33143
                                             (305) 662-2272
                                             mprice@pricelegal.com
                                             FBN 651494

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

RICARDO DEVENGOECHEA,          )     Case No.: 12-CV-23743-HUCK/McALILEY
      Plaintiff,                   )
vs.                            )
                                   )
BOLIVARIAN REPUBLIC OF         )
VENEZUELA, a foreign state,    )
      Defendant.                   )
_____ )

**ORDER VACATING ADMINISTRATIVE CLOSURE OF ACTION
AND RESTORING ACTION TO ACTIVE STATUS**

This cause came before this Court on plaintiff's motion to vacate the Administrative
Closure of this action (DE 228) and to restore this action to active status by reason of defendant
Venezuela's refusal to pay the parties' agreed settlement.  This Court's order, which
administratively closed this action pending plaintiff's receipt of an OFAC license and settlement
payment from defendant, provided that "Any party may move to re-open this case should it
become appropriate."

The Court finds that it is appropriate to vacate the Administrative Closure of this action
and to restore this action to active status by reason of the failure of the settlement
notwithstanding plaintiff's receipt of the OFAC license and notwithstanding plaintiff's attempts
to gain the settlement payment.  Accordingly, it is ORDERED

That plaintiff's motion, to vacate the Administrative Closure of this action and to restore
this action to active status, is hereby granted, and this action is hereby restored to active status.

DONE AND ORDERED IN CHAMBERS IN MIAMI, FLORIDA this _____ day of
_____ 2021.


_____
Hon. Paul C. Huck
United States District Judge

Cc: mprice@pricelegal.com <mprice@pricelegal.com>; Pizzurro, Joseph D. <jpizzurro@curtis.com>; 'Mitchell Widom' <mwidom@bilzin.com>
Subject: Devengoechea (FRE 408)
Date: Fri, Dec 14, 2018 3:05 pm
Attachments: Proposed Order Agreed Motion Stay.doc (49K), Motion to Stay.doc (53K)

## FRE 408: Confidential Settlement Discussion

Dennis,

Per our telephone conversion earlier today, I write to confirm that the parties have reached an agreement in principle that plaintiff will settle, release and dismiss all claims against the Republic with prejudice upon payment of ▮▮▮▮▮▮▮ Attached please find drafts of the Republic's motion and proposed order to stay the proceedings pending settlement. Please let us know if you have any comments. We would like to get this on file as soon as possible.

I also write to confirm that the parties have agreed to cancel the depositions that had been scheduled for next week in light of the anticipated settlement.

Best regards,

**Kevin A. Meehan**
Associate

Curtis, Mallet-Prevost, Colt & Mosle LLP

101 Park Avenue

New York, New York 10178-0061

Direct Dial: +1 212 696 6197

8/23/2019, 4:46 PM



www.curtis.com



Please consider the
environment before
printing this email.

---

This e-mail, including any attachments, may contain information that is protected by law as privileged and confidential, and is transmitted for the sole use of the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying or retention of this e-mail or the information contained herein is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by telephone or reply e-mail, and permanently delete this e-mail from your computer system. Your privacy is very important to our firm. Therefore, if this message contains unsolicited commercial content, you may forward this e-mail to unsubscribe@curtis.com or click here (www.curtis.com/unsubscribe.htm) if you do not want to receive further messages of this nature. Thank you.

Curtis, Mallet-Prevost, Colt & Mosle LLP (101 Park Avenue, New York, NY 10178)

---

8/23/2019, 4:46 PM



# DEPARTMENT OF THE TREASURY
## WASHINGTON, D.C. 20220

### LICENSE No. VENEZUELA-EO13884-2019-███

## VENEZUELA SANCTIONS REGULATIONS

## LICENSE

**Issued under the authority of one or more of 50 U.S.C. §§ 1601-51, 1701-06, Pub. L. 113-278, Executive Orders 13692, 13808, 13827, 13835, 13850, 13857, and 13884, and 31 C.F.R. Parts 501 and 591.**

**To:**   Law Offices of Max Price, P.A.
c/o Law Offices of Poblete Tamargo
510 King Street - Suite 350
Alexandria, VA 22314
**Attn:**   Arthur M. Freyre

**1.** Based upon your request dated December 13, 2019, supplemental correspondence dated September 18, 2020, and additional information available to the Office of Foreign Assets Control (the "Application"), the transactions described herein are hereby authorized.

**2.** This License is subject to the condition, among others, that the Licensee(s) comply with its terms and with all regulations, rulings, orders, and instructions issued under any of the authorities cited above.

**3.** This License **expires on April 30, 2023** and is not transferable. The transactions described in this License are subject to the authorities cited above and any regulations and rulings issued pursuant thereto. This License may be revoked or modified at any time.  If this License was issued as a result of willful misrepresentation it may be declared void from the date of its issuance or from any other date.

**4.** This License does not authorize transactions prohibited by any law or regulation administered by the Office of Foreign Assets Control other than those listed above.

**5.** This License does not excuse the Licensee(s) from the need to comply with any law or regulation (including reporting requirements) administered by any other agency or the need to obtain any required authorization(s) from any other agency.

Issued on behalf of the Secretary of the Treasury:

### OFFICE OF FOREIGN ASSETS CONTROL

**By**  _____        April 29, 2021
  **Nikole Thomas**                                            **Date**
  **Assistant Director for Licensing**

**Attention is directed to,** _inter alia_, **18 U.S.C. § 1001, 50 U.S.C. § 1705, and Pub. L. 113-278, § 5(b)(2) for provisions relating to penalties.**

**SECTION I – AUTHORIZATION:** Subject to the conditions and limitations stated herein, The Law Offices of Max Price, P.A. and Ricardo Devengoechea (collectively the "Licensees") are authorized to engage in all transactions that are ordinarily incident and necessary for the implementation of Ricardo Devengoechea's settlement agreement with the Government of Venezuela (GOV) and for Ricardo Devengoechea to receive ███████ from the GOV pursuant to the settlement agreement, as described in the Application.

**SECTION II – WARNINGS:** **(a)** Except as authorized in **SECTION I**, above, this License does not authorize the transfer of any blocked property, the debiting of any blocked account, the entry of any judgment or order that effects a transfer of blocked property, or the execution of any judgment against property blocked pursuant to any Executive order or Chapter V of Title 31 of the C.F.R.

**(b)** Except as authorized in **SECTION I**, above this License does not authorize the transfer to or receipt of funds or other property, directly or indirectly, from any entity or individual whose property or interests in property are blocked pursuant to any Executive order or Chapter V of Title 31 of the C.F.R.

**(c)** Any transfer of funds through the U.S. financial system pursuant to the authorization set forth above should reference the number of this License to avoid the blocking or rejection of the transfer.

**SECTION III – RECORDKEEPING & REPORTING REQUIREMENTS:** The Licensee is subject to the recordkeeping and reporting requirements of, *inter alia*, 31 C.F.R. §§ 501.601 and 501.602, including the requirement to maintain full and accurate records concerning the transactions undertaken pursuant to this License for a period of five years from the date of each transaction.

**SECTION IV – PRECEDENTIAL EFFECT:** The authorization contained in this License is limited to the facts and circumstances specific to the Application.
*********************************************************************************

**From:** dagrossmanlaw@aol.com <dagrossmanlaw@aol.com>
**Sent:** Friday, April 30, 2021 3:26 PM
**To:** Meehan, Kevin A. <kmeehan@curtis.com>
**Cc:** mprice@pricelegal.com
**Subject:** Devengoechea v Venezuela

**Kevin -**

**I hope this email finds you well after some years.**

**Good news - Yesterday we finally received the OFAC license permitting our receipt of the ███████ settlement. Our application for the license had been pending with OFAC for almost one-and-a-half years. I attach a copy.**

**This permission for our receipt of the settlement sum takes into account all developments and changes - political, diplomatic, and legal - through the present.**

**Hopefully, consummation of the settlement will be another step in normalizing relations between the U.S. and Venezuela.**

**Kindly have the defendant wire the settlement sum to the bank account of plaintiff's counsel - Law Office of Max R. Price, P.A. - per the wiring instructions given at the time of the settlement.**

**We have informed the recipient bank to the issuance of the OFAC license and of its prospective receipt of the settlement sum.**

**Promptly upon receipt of the settlement sum, I will file with the Court the attached motion for voluntary dismissal of the action with prejudice, and proposed order, pursuant to Fed.R.Civ.P. 41(a)(2). Your firm will not need to make any further filing with the Court.**

**After these many years, we look forward to finally concluding this action amicably.**

**If you have any questions, please do not hesitate to contact me.**

**Thanks,**
**Dennis Grossman**
**cc: Max Price**

RE: Devengoechea v. Republic of Venezuela
Thu, Oct 14, 2021 7:06 pm
Meehan, Kevin A. (kmeehan@curtis.com)To:you + 5 more Details

Dear Dennis,

As you are aware, the Maduro regime was the government of Venezuela recognized by the
United States when the parties reached a settlement in December 2018.  Thereafter, the U.S.
government recognized the Guaido Government as the sole government of Venezuela.  As a
result of that determination by the U.S. government, we no longer accepted instructions from the
Maduro regime.  While we have not received instructions from the Guaido Government in this
case, we are representing the Guaido Government in other matters.  We will confer with our
client regarding your proposal below.

However, as a procedural matter, we would remind you that the Republic filed a motion to
dismiss this case asserting a factual challenge to jurisdiction under the FSIA based on evidence
that was produced during discovery.  If the stay is lifted, that motion will need to be adjudicated
before the court can reach the merits.  And, if the district court denies the Republic's motion, that
decision would be immediately appealable.

Best regards,

**Kevin A. Meehan**
Partner


Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue

New York, New York 10178-0061


Direct Dial: +1 212 696 6197

Fax: +1 917 368 8835

Cell: +1 917 565 4473
kmeehan@curtis.com




www.curtis.com


 Please consider the
environment before
printing this email.

**From:** dagrossmanlaw@aol.com <dagrossmanlaw@aol.com>
**Sent:** Thursday, October 14, 2021 3:45 PM
**To:** Pizzurro, Joseph D. <jpizzurro@curtis.com>; Meehan, Kevin A. <kmeehan@curtis.com>; kent.yalowitz@arnoldporter.com; neuhausj@sullcrom.com
**Cc:** mprice@pricelegal.com; mia@pricelegal.com
**Subject:** Devengoechea v. Republic of Venezuela

**To: Joseph Pizzurro, Esq., Kevin Meehan, Esq., Kent Yalowitz, Esq., and Joseph Neuhaus, Esq.**

**From: Dennis Grossman, Florida Bar No. 0841811**

**Re: Devengoechea v. Republic of Venezuela (12-CV-23743-PCH, S.D.Fla.)**

**Counsel -**

**I am co-counsel for plaintiff Ricardo Devengoechea in this FSIA action in the United States District Court for the Southern District of Florida.**

**As required by S.D.Fla. Local Civil Rule 7.1(a)(3), I write to request defendant Venezuela's consent to plaintiff's prospective motion to vacate the stay and administrative closure of this action, and to restore this action to active status to proceed to trial on the merits, by reason of defendant Venezuela's failure to pay the agreed settlement sum, despite plaintiff's repeated requests for payment for 5+ months.**

**I write to all of you as defendant Venezuela's counsel. Messrs. Pizzurro and Meehan have been counsel of record for defendant Venezuela in this action, with ties to the Maduro authorities. I am informed that Messrs. Yalowitz and Neuhaus have represented Venezuela in other litigation or matters, with ties to the Guiado authorities.**

**This email, therefore, provides notice to both the Maduro and Guiado authorities in the Venezuelan government, and satisfies the requirement under S.D.Fla. Local Civil Rule 7.1(a)(3) that plaintiff seek the consent of defendant to plaintiff's prospective motion.**

For the benefit of Messrs. Yalowitz and Neuhaus who have not appeared in this action, I provide a brief background of which record-counsel Messrs. Pizzurro and Meehan have been aware:

Plaintiff commenced this FSIA action in 2012.  Defendant Venezuela failed to respond to the summons and complaint.  In 2014 plaintiff obtained a default judgment against Venezuela in the amount $7,464,953.12 following a default-trial before Judge Huck (ECF 26).   After certain judgment-enforcement proceedings, plaintiff extended the courtesy of agreeing to vacate the default judgment to permit Venezuela to interpose whatever defense it believed it had (ECF 101).

I came into the case at that point.  Plaintiff amended the complaint twice.  The Second Amended Complaint details plaintiff's claim (ECF 140).  I attach a copy for the convenience of Messrs. Yalowitz and Neuhaus.

Defendant Venezuela moved to dismiss the Second Amended Complaint for alleged lack of FSIA jurisdiction.  The District Court denied Venezuela's motion (ECF 150 & 165).  The Eleventh Circuit also rejected Venezuela's jurisdictional arguments and affirmed the District Court's decision, with a remand for trial on the merits.  Devengoechea v. Republic of Venezuela, 889 F.3d 1219 (11th Cir. 2018).

After some merits discovery but before the deposition of defendant Venezuela, the parties settled this action for a sum-certain, confirmed by defendant's email of Dec. 14, 2018.

Although the parties formalized the settlement in a later written document, it was defendant's sum-certain email confirmation on Dec. 14, 2018 - not the later formal agreement - which effectuated the settlement under Florida law.  Calderon v. Springs Landscape and Maintenance, Inc., 2018 WL 5098976 at *2 (S.D.Fla. 2018) ("a binding settlement agreement can be reached by email" - "a settlement agreement is not a condition precedent ... but rather a procedural formality" - "settlements may exist under Florida law and be enforced without being signed by the parties or even when there is no writing at all"); Jarvis v. BMW of North America LLC, 2016 WL 1162324 at *2 (M.D.Fla. 2016) ("Florida law is clear that a settlement may be reached through a series of email exchanges" - "the physical act of signing a [settlement] document is a mere formality"); Miles v. Northwestern Mutual Life Insurance Co., 677 F.Supp.2d 1312, 1315-16 (M.D.Fla. 2009) ("the Sept. 18, 2009 email

constitutes a complete, binding and enforceable settlement agreement" - "That the confidentiality and non-disparagement terms of the agreement were not fully expounded [in the email] is immaterial. Rather than being essential, these provisions go toward how the agreement will be implemented going forward.").

To consummate the settlement, plaintiff obtained a stay of the action in order to seek an OFAC license to permit receipt of the settlement sum under the Venezuela sanctions program of the U.S. Treasury Dept. (ECF 228). With the assistance of two law firms which specialize in OFAC matters - Poblete Tomargo and ultimately Steptoe & Johnson - plaintiff finally obtained the necessary OFAC license on April 29, 2021. The OFAC license takes into consideration the diplomatic changes and permits receipt of the settlement sum. I promptly provided a complete copy of the OFAC license to defendant's counsel of record in this action, Messrs. Pizzurro and Meehan (counsel with ties to the Maduro authorities).

For the convenience of Messrs. Yalowitz and Neuhaus (counsel with apparent ties to the Guaido authorities), I attach a redacted copy of the OFAC license, excluding only the settlement sum as a protective measure relating to the representative status of these counsel. In light of the confidential nature of the settlement amount, I will provide an unredacted copy of the OFAC license upon receipt of written confirmation of counsel's representative status.

For the past 5+ months since April 30, 2021 (the day after issuance of the OFAC license), first my office and then Steptoe & Johnson have sent repeated emails to Messrs. Pizzurro and Meehan requesting remittance of the agreed settlement sum.

On May 20, 2021 counsel Pizzurro confirmed he had forwarded to his client, defendant Venezuela, the request for payment of the settlement sum.

Still, no settlement payment has been forthcoming.

In addition, my office provided to Messrs. Pizzurro and Meehan a copy of a prospective motion by plaintiff to voluntarily dismiss this action with prejudice under Fed.R.Civ.P. 41(a)(2), to be held in escrow pending plaintiff's receipt of the settlement payment (copy attached). Still, defendant Venezuela has declined to honor the settlement.

In light of the failure of defendant Venezuela to abide by the settlement for the past 5+ months, plaintiff now seeks consent pursuant to S.D.Fla. Local Civil Rule 7.1(a)(3) to plaintiff's prospective motion to vacate the stay and administrative closure of this action, and to restore this action to active status to proceed to a Bench Trial on the merits, by reason of defendant Venezuela's failure to pay the agreed settlement sum, despite plaintiff's repeated requests for payment for 5+ months since issuance of the OFAC license.

Plaintiff anticipates using the same expert witness(es) who previously testified at the default-trial and/or who rendered expert reports.

This is without prejudice to all rights and remedies of plaintiff Ricardo Devengoechea.

Sincerely,

Dennis Grossman

Attorney for Plaintiff Ricardo Devengoechea

(516) 466-6690

cc:  Max Price, Esq.

## SETTLEMENT AGREEMENT

This Settlement Agreement (hereinafter the "Agreement") is executed between the BOLIVARIAN REPUBLIC OF VENEZUELA (hereinafter the "Republic") and Ricardo Devengoechea (hereinafter "Devengoechea"). Hereinafter the Republic and Devengoechea shall be referred to individually as a "Party" and collectively as the "Parties".

WHEREAS, on October 15, 2012, Devengoechea initiated an action docketed as *Devengoechea v. Bolivarian Republic of Venezuela*, Civ. No. 1:12-cv-23743-PCH in the United States District Court for the Southern District of Florida (hereinafter the "Action") asserting claims against the Republic in respect of Devengoechea's collection of documents, artifacts, objects and heirlooms (hereinafter the "Collection"); and

WHEREAS, the Parties are willing to enter into this Agreement in order to settle all claims that Devengoechea may have against the Republic.

NOW, THEREFORE, the Parties agree as follows:

### ARTICLE 1
### SETTLEMENT, RELEASE AND DISMISSAL

In order to avoid incurring in higher litigation costs and expenses, in consideration for Devengoechea's complete and irrevocable release and dismissal of all claims, and without admitting to any allegations whatsoever made by Devengoechea in the Action, the Republic agrees to pay Devengoechea ▮▮▮▮▮ (hereinafter the "Settlement Amount"). Effective as of the date of receipt of the Settlement Amount, (i) Devengoechea and Devengoechea's agents, employees, assigns, relatives, heirs, legal representatives, and insurers shall fully, unconditionally, irrevocably and finally waive, renounce and release, to the fullest extent permitted, all claims that have arisen or that may arise with respect to the Action and the Collection against the Republic and any agency, instrumentality, organ, subdivision, ministry, employee, official, legal representative or agent of the Republic (hereinafter the "Released Claims"), and (ii) within five (5) days after receipt of the Settlement Amount, Devengoechea shall file the Stipulation of Dismissal appended hereto as "Schedule A." For the avoidance of doubt, if the Settlement Amount is not paid within thirty (30) days of the execution of this Agreement, then this Agreement shall become null and void in its entirety and Devengoechea shall have the right to resume prosecution of the Action as if this Agreement never existed.

### ARTICLE 2
### CONFIDENTIALITY

The terms of this Agreement and the negotiations that preceded it are strictly confidential and shall not be disclosed to third parties without the prior written consent of the other Party, except (i) to the auditors and legal advisers of the Parties, provided that the information is revealed

Contiene DVD
"La Carta" y Pergamino

# La Carta

## QUE CAMBIARÁ LA HISTORIA

### Jorge Mier Hoffman

Libro 2

Cómo
Cuándo
Quién lo mató
Dónde está Bolívar

REP0000540

*La Carta* que cambiará la historia

favorecer a la trasnacional United Fruit Company. Igualmente recogió el rumor de trenes cargados de muertos que fueron arrojados al mar en cifras que sobrepasaban las mil víctimas... Como pueden ver, Ciénaga es una región de conflicto que protege a los grupos subversivos.

MANUEL: Aquí tengo la cronología de los "Mier" desde el siglo XVIII cuando llegó a Cartagena de Indias Manuel Faustino de Mier.



308

REP0000847



Jorge Mier

Delcy Rodriguez

Location: Orlando Florida Executive Airport
October 17, 2007 12:16am





41

**From:** Krauland, Edward
**Sent:** Tuesday, May 11, 2021 4:01 PM
**To:** 'kmeehan@curtis.com' <kmeehan@curtis.com>; 'jpizzurro@curtis.com'
<jpizzurro@curtis.com>
**Subject:** Settlement Agreement Between Mr. Ricardo Devengoechea and Government o
Venezuela

Dear Mr. Meehan and Mr. Pizzurro:

I am writing to you on behalf of Messrs. Dennis Grossman and Max
Price, and their client, Ricardo Devengoechea, to seek your assistance in
effectuating the agreed settlement of a lawsuit originally filed by Mr.
Devengoechea against the Government of Venezuela (GOV) in U.S.
Federal District Court in 2012.  I understand that you were representing
the GOV in connection with this matter.  I've attached a copy of the
signed settlement agreement, which I understand you were involved in
negotiating.

I became involved in this matter recently to assist in securing a license
from the US Department of the Treasury, Office of Foreign Assets
Control (OFAC), to allow all parties to implement the settlement so that
Mr. Devengoechea may receive the settlement amount ███████████
despite the existing economic sanctions.  See attached OFAC
license.  With that license now in hand, the agreed compensation for Mr.
Devengoechea can be transferred to him.

In recent email correspondence exchanged between yourselves and
Messrs. Grossman and Price, you stated that you are not in a position to
assist because the US courts no longer recognize the Maduro regime as
the legitimate government of Venezuela.  Notwithstanding the US
government's recognition of the Guaido government, we are aware of no
reason that would preclude you from assisting to close out this matter,
and that is the reason for my email.

The recently-issued OFAC license authorizes the transfer and receipt of
the ██████████ involving US persons (such as a US bank), as well as the
US person attorneys who would be involved in facilitating this

transfer.  Therefore, there is no regulatory obstacle to the attorneys assisting to secure the payment of the agreed settlement amount.  I also understand that the effort to secure the payment of the ████████ will not involve yourselves in any appearance or action before a US court.  After payment has been effected, Messrs. Grossman and Price would make a unilateral submission to the court on behalf of Mr. Devengoechea to dismiss the lawsuit with prejudice.  And while the Trump Administration's decision in early 2019 to recognize the Guaido regime and subsequently to block the property of the GOV clearly impacted US relations with Venezuela, it did not affect the ability of the Maduro regime to otherwise engage counsel for litigation services.  See 31 CFR § 591.506(a)(2).  Particularly in a case like this, which was litigated by the Maduro regime for many years, settled in principle before the US government recognized the Guaido government, and where OFAC and other relevant US government agencies have reviewed the settlement instrument and authorized payment, we believe that US law and policy clearly supports finalizing this matter by implementing the settlement agreement.

For these reasons, I am writing to ask - through your good offices, and particularly in light of your past efforts to resolve the dispute and in order to secure final justice in this matter – that you reach out to the Attorney General or other representative of the Maduro regime to assist in effectuating payment of the agreed ████████ settlement amount.  In addition or in the alternative, you may have contacts with Guaido government representatives (understandably not in this matter, but perhaps in other representations) which could be used to achieve this final payment.

I appreciate your consideration of this request.  As you can understand, Mr. Devengoechea has long sought a resolution of his claim, and the parties have thankfully reached a settlement.  To complete this agreed resolution, we respectfully request your assistance which we believe can be provided in a practicable manner, consistent with US law and supportive of US policy.

Sincerely,
Ed Krauland
Steptoe & Johnson LLP
Washington, D.C.
(working remotely)