IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 17-151-LPS |
| RICARDO DEVENGOECHEA, <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 23-609-LPS |

**MEMORANDUM ORDER**

**WHEREAS**, on December 29, 2023, the plaintiff in Misc. No. 23-609 (the "*Devengoechea* Action"), Ricardo Devengoechea ("Devengoechea"), filed a motion pursuant to Federal Rule of Civil Procedure 69(a)(1), 8 *Del. C.* § 324, and 10 *Del. C.* § 5031, seeking an order authorizing the issuance of a writ of attachment *fieri facias* on the shares of PDV Holding, Inc. ("PDVH") owned by Petróleos de Venezuela, S.A. ("PDVSA") (Misc. No. 23-609 D.I. 4);[1]

**WHEREAS**, the Court heard argument on the motion on January 22, 2024 and ordered supplemental briefing (*see* Misc. No. 23-609 D.I. 28 at 13);

---

[1] For simplicity, unless otherwise indicated, the Court cites only to the filings in Misc. No. 23-609, even though parallel filings were also made in Misc. No. 17-151.

1

**WHEREAS**, the Court received supplemental briefing on January 23, 2024 (Misc. No. 23-609 D.I. 22, 23);

**WHEREAS**, on January 24, 2024, during a teleconference, the Court denied the motion without prejudice to Devengoechea filing a renewed motion (Misc. No. 23-609 D.I. 24, 28);

**WHEREAS**, on February 2, 2024, Devengoechea filed a renewed motion for a writ of attachment (Misc. No. 23-609 D.I. 38);

**WHEREAS**, the Court has reviewed the materials filed by Devengoechea and the Bolivarian Republic of Venezuela ("Venezuela") in connection with the renewed motion[2] (*see, e.g.*, Misc. No. 23-609 D.I. 39-41, 44);

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Devengoechea's renewed motion for a writ of attachment (Misc. No. 23-609 D.I. 38; *see also* Misc. No. 17-151 D.I. 922) is **DENIED**.

## BACKGROUND

Devengoechea's allegations about "abuse and deception by Venezuela – perpetrated by its officials on American soil after traveling here to meet Plaintiff – form the backdrop of Venezuela's implied waiver of execution immunity . . . ." (Misc. No. 23-609 D.I. 44 at 2)  More particularly, he describes the context for his renewed motion as follows:

> Plaintiff Ricardo Devengoechea inherited a large and valuable collection of documents, artifacts, and memorabilia once belonging to the famous South American General Simon Bolivar.  Plaintiff's great-great grandfather Joaquin deMier was a close personal friend

---

[2] The Court had scheduled oral argument on Devengoechea's renewed motion for a writ of attachment in Wilmington, Delaware on February 14, 2024.  (*See* Misc. No. 23-609 D.I. 33) Due to inclement weather, on February 13 the Court canceled the February 14 argument (and other related proceedings) and rescheduled it for February 27.  During preparation for the February 14 and anticipated February 27 proceedings, the Court determined that it could resolve Devengoechea's renewed motion without oral argument.

and business associate of Bolivar.  Bolivar had gifted the items in the collection to deMier.  The collection passed down from generation[ ]to[ ]generation in Plaintiff's family.  Plaintiff acquired the collection as an inheritance upon the passing of his mother in 2005.

Plaintiff's collection was extremely valuable because of Bolivar's role in South American history.  In the early 1800's, Bolivar led six South American countries in successful revolutions against Spanish colonial rule.  Bolivar often is referred to as the George Washington of South America.

In 2007 Defendant Venezuela became aware of Plaintiff's collection and sent several officials in a private jet to examine it in Orlando, Florida (where Plaintiff resided) with an eye to possibly purchasing the collection.  These officials were led by Ms. Delcy Rodriguez, then Coordinator General of the Office of Vice President of Venezuela.  In Orlando, Venezuela's officials met with Plaintiff and examined many parts of his large collection.  During this examination, Venezuela's official Delcy Rodriguez reached the following agreement with Plaintiff: that he would return to Venezuela with its officials in their private jet and bring his collection, and that in Venezuela Plaintiff would permit Venezuela's experts to examine and evaluate the collection, after which Venezuela would either purchase the collection for an agreed price to be paid to Plaintiff at his home in Orlando, Florida or would return the collection to him at his home.  Defendant Venezuela breached the agreement.  Defendant Venezuela neither returned the collection nor paid for it.

After numerous attempts to retrieve his collection, Plaintiff retained counsel who also were unsuccessful in gaining the return of his collection.  In 2012 Plaintiff commenced an action against Venezuela under the Foreign Sovereign Immunities Act in the Southern District of Florida (S.D. Fla. case no. 12-CV-23743) ("Florida action").

The Florida action dragged on for many years. . . .

In December 2018 the parties settled the action which required that Plaintiff obtain an OFAC [Office of Foreign Assets Control] license to receive the settlement sum, in light of the sanctions program against Venezuela.  The Florida action was stayed pending receipt of the OFAC license.  Plaintiff finally received the OFAC license 3 years later, sent a copy to Defendant's counsel, but Defendant reneged and refused to pay the settlement sum.  In 2023

> the OFAC license expired, and the Florida action was reopened and scheduled for trial. The settlement agreement, of course, is no longer operative.
>
> As trial approached, Defendant's counsel withdrew, leaving Defendant Venezuela as defendant pro se. . . .
>
> Defendant declined to appear at trial despite receiving notice of it. The Florida Court . . . held a full trial on the merits on December 4, 2023 – more than 11 years after Plaintiff sued Venezuela in 2012 and more than 16 years after Plaintiff delivered his collection to Venezuela in 2007. On December 4, 2023 the Florida Court entered judgment for Plaintiff in the amount $17,128,630.10 which included $9,500,000.00 principal and $7,628,630.10 mandatory pre-judgment interest under Florida law.
>
> Plaintiff registered his judgment in this Court (D.I. 1 in Misc. 23-609) and pursuant to this Court's leave, now renews his motion for a Writ of Attachment. Plaintiff seeks to collect his judgment from the prospective sale of shares of stock in PDVH owned by Defendant Venezuela's alter ego PDVSA . . . .

(Misc. No. 23-609 D.I. 39 at 1-4)

## DISCUSSION

In order to obtain a writ of attachment, Devengoechea is required to show, among other things,[3] "that the specific property on which [he] seeks to execute – PDVSA's shares of stock in Delaware corporation PDVH – are not immune from attachment and execution under" the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq. Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 395 (D. Del. 2018). In connection with his renewed motion for a writ of attachment, the only issue the Court must decide is whether Devengoechea has established an exception to execution immunity under the FSIA, specifically under 28 U.S.C. § 1610, allowing him to attach the shares of PDVH owned by PDVSA (which

---

[3] The Court incorporates by reference its reasoning for denying Devengoechea's original motion for a writ of attachment. (*See* Misc. No. 23-609 D.I. 28; *see also* Misc. No. 17-151 D.I. 902)

4

Devengoechea contends is the alter ego of Defendant Venezuela). Devengoechea relies on § 1610(a)(1) and/or (b)(1). Only § 1610(a) is relevant here.[4] Thus, the Court addresses only Devengoechea's arguments under § 1610(a)(1).

The exception to execution immunity provided for by § 1610(a)(1) applies when "the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication." 28 U.S.C. § 1610(a)(1). Devengoechea does not contend that Venezuela has explicitly waived execution immunity; his contention, instead, is that Venezuela "has impliedly waived its execution/attachment immunity." (Misc. No. 23-609 D.I. 39 at 1) The Third Circuit has observed that "courts have typically found [implied] waivers only in three scenarios: when the foreign state has entered into a contract with a choice-of-law clause mandating the use of U.S. law, when it has responded to a complaint without asserting immunity, or when it has agreed to arbitrate disputes in the United States." *Aldossari on Behalf of Aldossari v. Ripp*, 49 F.4th 236, 251 n.23 (3d Cir. 2022).[5] Devengoechea acknowledges that none of these three scenarios is literally present: he has no contract with Venezuela containing a choice-of-law provision, Venezuela steadfastly maintained its immunity when contesting

---

[4] Because Devengoechea's motion for a writ of attachment relies on the alter ego relationship between Venezuela and PDVSA, he "must satisfy the narrower exception to execution immunity applicable to property of foreign states," and not the exception applicable to property of foreign instrumentalities under § 1610(b). *Crystallex*, 333 F. Supp. 3d at 395; *see also Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 150 n.14 (3d Cir. 2019) ("[O]nly section 1610(a) is relevant because the jurisdictional immunity is overcome for Venezuela, not PDVSA, who only enters the picture as Venezuela's alter ego.").

[5] The Court rejects Venezuela's effort to limit *Aldossari* to issues of jurisdictional immunity, as set out in § 1605(a). (*See* Misc. No. 23-609 D.I. 40 at 5) While that is the context in which *Aldossari* came to the Third Circuit, the principles set out by *Aldossari* – and particularly the high burden for showing a waiver of foreign sovereign immunity – apply at least as much to issues of execution immunity governed by § 1610(a)(1). Decisions from outside the Third Circuit, as well as the legislative history, support this conclusion. *See Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 296 (2d Cir. 2011) (citing H.R. Rep. 94-1487, at 28).

5

Devengoechea's allegations in the Florida federal litigation giving rise to Devengoechea's judgment, and the parties did not agree to arbitrate their disputes in this country. Instead, Devengoechea emphasizes that the list of three "typical" scenarios is not exhaustive of all the circumstances which may give rise to an implied waiver. (*See* Misc. No. 23-609 D.I. 44 at 5) He then advances three theories for why Venezuela has impliedly waived execution immunity in a manner he characterizes as even more clear than would be the case with a contract containing a choice-of-law provision. Assuming without deciding that more than the three "typical scenarios" identified in *Aldossari* are available in the Third Circuit, Devengoechea has, nevertheless, failed to show that Venezuela impliedly waived its immunity to execution.

The Third Circuit "construes the waiver exception strictly and requires strong evidence – in the form of clear and unambiguous language or conduct – that the foreign state intended to waive its sovereign immunity." *Aldossari*, 49 F.4th at 250 (internal quotation marks omitted). It further "require[s] that a waiver be unequivocally expressed." *Id.* (internal quotation marks omitted). Devengoechea does not meet these high burdens under any of his three theories.

First, Devengoechea argues that Venezuela made "a binding commitment to apply Florida law to the parties' dispute (and thus waived immunity) by entering into a Florida-focused contract through its officials who travelled to Florida to negotiate and consummate in Florida an agreement with Plaintiff, a Florida citizen, which provided for performance in Florida." (Misc. No. 23-609 D.I. 39 at 4; *see also id.* at 7 ("[E]verything about the parties' agreement involved Florida law.")) While acknowledging that the verbal agreement between himself and Venezuelan government officials did not contain a choice-of-law provision, Devengoechea contends that his agreement with Venezuela was "Florida-focused," and hence was "functionally the same as a commitment in a contractual choice-of-law clause." (*Id.* at 5) The alleged Florida

6

"focuses" included: (1) Venezuela sending its officials to Florida to negotiate the agreement; (2) with Devengoechea, a Florida citizen; and (3) the agreement's provision that performance (i.e., return of Devengoechea's inherited collectibles or payment for them) would occur in Florida. (*See id.* at 4)  As Venezuela correctly observes, however, "Devengoechea cites no authority to suggest that any court has ever found a sovereign to implicitly waive its attachment immunity merely by entering into a contract with a United States person, or by negotiating or executing that contract within the United States, or by entering into a contract to be performed in the United States."  (Misc. No. 23-609 D.I. 40 at 7)  The only cases Devengoechea cites to support his theory (in his reply brief, *see* Misc. No. 23-609 D.I. 44 at 5) are readily distinguishable as they require that foreign sovereigns proactively avail themselves of the privileges of U.S. courts, a fact that is absent here.  *See Barapind v. Gov't of Republic of India*, 844 F.3d 824, 830 (9th Cir. 2016) (declining to find implied waiver where pertinent documents did not "specify that the law of a particular country should govern that contract, nor [did] they otherwise contemplate adjudication of a dispute by the United States courts") (alteration and internal quotation marks omitted); *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 722 (9th Cir. 1992) (finding implied waiver where foreign sovereign filed letter rogatory in U.S. court, thereby creating "direct connection between the sovereign's activities in our courts and the plaintiff's claims for relief").  In short, the Florida "focus" does not amount to "strong evidence" unambiguously demonstrating that Venezuela unequivocally expressed an intent to relinquish its sovereign immunity.

Second, Devengoechea argues that Venezuela impliedly waived immunity "by repeatedly invoking Florida law in seven Memoranda of Law as the sole basis for its motions seeking a final judgment of dismissal on the merits" in the Southern District of Florida litigation initiated by

Devengoechea. (Misc. No. 23-609 D.I. 39 at 8; *id.* at 11 (describing "Venezuela's seven-fold invocation of Florida law")) As Devengoechea concedes, however, Venezuela's briefs "also included arguments asserting sovereign immunity." (*Id.* at 12) Courts have found that a sovereign defendant's filing of a motion to dismiss does not constitute an implied waiver even when the motion failed to expressly preserve an immunity defense under FSIA. *See, e.g., Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*, 727 F.2d 274, 277 (2d Cir. 1984) (refusing to find filing of motion to dismiss automatically waives immunity defense). It would strain credulity to find that Venezuela clearly and unambiguously waived its immunity defenses in the very briefs in which it expressly reserved the right to assert such immunity.[6] To the contrary, the Court agrees with Venezuela that "[m]erely litigating the dispute under applicable law is not consent to a contractual choice-of-law clause, much less an implied waiver of attachment immunity. Otherwise, a sovereign could never defend itself in a dispute as to which it is subject to jurisdiction without automatically waiving attachment immunity." (Misc. No. 23-609 D.I. 40 at 8-9)

Finally, Devengoechea argues that Venezuela impliedly waived immunity "by using the U.S. judicial process to gain for itself affirmative relief that delayed Plaintiff's recovery for many years, after which Venezuela failed to appear at trial." (Misc. No. 23-609 D.I. 39 at 4-5) Venezuela counters Devengoechea's description of the Florida litigation, contending that "[t]he record reveals that Devengoechea, not [Venezuela], is responsible for the delay that followed the

---

[6] Devengoechea points out that Venezuela asserted only jurisdictional immunity, and not execution immunity, in its various filings in the Florida litigation. This does not alter the Court's view. Given that issues of execution of judgment were utterly unripe at the time – as Devengoechea had not yet established either Venezuela's liability or its refusal to pay a judgment – the Court will not construe Venezuela's "silence" on execution immunity as waiver of an immunity that was not yet nearly implicated.

settlement agreement."  (Misc. No. 23-609 D.I. 40 at 10-11; *see also id.* D.I. 41 Exs. 26, 27)  The judge presiding over the Florida litigation expressly found that Venezuela's refusal to consummate the settlement agreement "delayed this action for several years and . . . forced [Devengoechea] to proceed to trial on the merits after several years' delay." *Devengoechea v. Bolivarian Republic of Venezuela*, C.A. No. 12-23743 (S.D. Fla.) D.I. 299 at 2.  Still, even crediting Devengoechea's contention that Venezuela is responsible for the delay in Florida, Venezuela's conduct does not amount to "strong evidence" that clearly and unambiguously shows that Venezuela unequivocally intended to waive its sovereign immunity.  Venezuela did not initiate the litigation in the Southern District of Florida, and it affirmatively asserted sovereign immunity throughout that litigation.  Devengoechea cites no authority for the proposition that "postpon[ing] its day of reckoning by many years" (Misc. No. 23-609 D.I. 39 at 14) through litigation delay tactics is the type of "invocation of U.S. judicial processes" (*id.* at 15) that could be found to impliedly waive an immunity defense that, at the same time, Venezuela was expressly reserving.

      The Court is sympathetic to Devengoechea and his family for the theft of their inheritance.  (*See* Misc. No. 23-609 D.I. 44 at 7) ("Venezuela dispatched its officers onto U.S. soil for the specific purpose of targeting a specific uncounseled U.S. citizen and his property with a commercial deal which it finalized in the U.S. and which provided for performance in the U.S. – on which Venezuela later reneged after inducing Plaintiff to depart from the U.S. with his valuable property.")  The Court is also mindful of Devengoechea's concern that today's ruling illustrates that foreign nations may "too easily . . . abuse United States' citizens by sending [their] officials to the United States to meet with and consummate agreements here with United States citizens and then hide behind immunity if called upon to honor the agreements they

made." (Misc. No. 23-609 D.I. 39 at 8; *see also id.* D.I. 44 at 6 (warning that denial of motion "would permit extreme abuse")) Still, this Court is obligated to follow the law and, in the Court's view, the law compels denial of his motion.

Thus, Devengoechea has failed to show that the specific property he seeks to attach and execute, PDVSA's shares of stock in PDVH, are not immune from attachment and execution by him under the FSIA. Accordingly, his renewed motion for a writ of attachment is **DENIED**.

**IT IS FURTHER ORDERED** that the oral argument scheduled for February 27 is **CANCELED**.

February 15, 2024  
Wilmington, Delaware

_____  
HONORABLE LEONARD P. STARK  
UNITED STATES DISTRICT COURT