UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:17-mc-00151-LPS |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | ) ) ) |
| Defendant. | ) ) |

**THE VENEZUELA PARTIES' RENEWED MOTION
TO DISQUALIFY THE SPECIAL MASTER**

The Venezuela Parties[1] ("Movants") respectfully renew their motion to disqualify Special Master Robert B. Pincus, *see* D.I. 509; D.I. 511, based on his improper advocacy to the United States Government in a January 12, 2023 meeting (the "January 12 Meeting") with members of the United States Department of Justice (the "DOJ"), the United States Department of State (the "Department of State"), and the United States Department of Treasury (the "Department of Treasury") (collectively, the "Government"). The Special Master advised counsel for PDVH in advance of the January 12 Meeting that the meeting would involve advocacy by the Special Master to OFAC. D.I. 516 ¶ 9. The Special Master confirmed his view that advocacy would be appropriate at such a meeting in briefing on the Venezuela Parties' motion to attend the January 12 Meeting (*see* D.I. 503 ¶¶ 3, 5). D.I. 506. Based on the Special Master's verbal and written statements, Movants sought to disqualify him after the January 12 Meeting. D.I. 509; D.I. 511. The Special Master denied that any advocacy had occurred, and this Court denied that motion primarily on the ground that there was "no evidence, in particular, that [the Special Master]

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to them in the Court's January 14, 2021 Order, D.I. 234, and the Sales Procedure Order, D.I. 481.

1

advocated for a change in U.S. foreign policy or advocated for Crystallex to be granted a license," as well as on the ground that Movants' objection to the *ex parte* nature of the meetings was untimely and waived. Ex. A (March 30, 2023 Transcript of Proceedings) at 104:4–9, 105:10–107:17, 118:18–119:4.

Now, however, Movants have obtained direct evidence of such advocacy through previously unavailable documents generated by the Special Master for that meeting and produced by the Government pursuant to Freedom of Information Act litigation. Specifically, in a presentation sent to the Government in connection with the January 12 Meeting, the Special Master argued that "[t]o the extent OFAC believes that a license is needed, ***the Special Master requests*** that OFAC provide authorization of the Special Master sale process ***in the form of a General License or broad specific license***." Ex. B (the "Presentation") at 10. Moreover, the Special Master set forth his view as to why such a license was desirable: "public or private statements that OFAC would favorably review licensing requests needed to effectuate such a settlement[] may prove instrumental in bringing the Venezuela Parties to the table." *Id.* at 11. This newly discovered evidence of advocacy, to which neither the Movants nor the Court had access at the prior hearing, warrants disqualification under 28 U.S.C. § 455, Federal Rule of Civil Procedure 52(a)(2) ("Rule 52(a)(2)"), and the Due Process Clause of the Fifth Amendment. Notably, this Court expressly declined to address that legal question, Ex. A at 110:24–111:11, relying instead upon factual and procedural grounds that have all been undermined by this newly discovered evidence.

## BACKGROUND

### A. The Motion to Disqualify

On January 3, 2023, counsel for PDVH and CITGO requested permission from the Special Master for the Venezuela Parties to attend the January 12 Meeting. D.I. 516 ¶ 9. On that same

day, the Special Master declined this request, indicating that the meeting would involve advocacy by the Special Master contrary to the Venezuela Parties' litigation position. *Id.* On January 9, 2023, Movants filed a motion requesting that the Court issue an order directing the Special Master to permit Movants' counsels' attendance at the January 12 Meeting. D.I. 499. On January 10, 2023, the Special Master opposed that motion, indicating his belief that it was within his authority to "advocate" to OFAC "to enforce the Court's own judgment" and that he needed the ability to share his perspective "on why OFAC *cooperation* with the Court's order is appropriate and necessary." D.I. 503 ¶¶ 3, 5 (emphasis added). On January 11, 2023, the Court denied the Venezuela Parties' request to attend the January 12 Meeting. D.I. 506. On January 20, 2023—after the January 12 Meeting was held—Movants filed a motion to disqualify the Special Master based on, among other things, his improper advocacy in the January 12 Meeting (the "Disqualification Motion"). D.I. 509. Having been deprived access to the January 12 Meeting, Movants filed the Disqualification Motion in reliance on the Special Master's verbal and written indications of his intent to advocate.

At a hearing held on March 30, 2023, this Court denied the Disqualification Motion, relying chiefly on the lack of any evidence that the Special Master had engaged in advocacy. Earlier in the hearing, the Special Master's counsel had stated that its communications with the Government to date, including in the January 12 Meeting, had not involved any advocacy: "We were not arguing that the U.S. government change its position. What we were trying to impress upon the U.S. government is that we needed guidance, and we think that the guidance would be helpful in order to allow the sale process to move forward." Ex. A at 43:5–12. In its oral decision, the Court concluded that Movants presented "no evidence before the Court that the special master engaged in advocacy in the [January 12 Meeting]," and "no evidence, in particular, that he advocated for

3

change in U.S. foreign policy or advocated for Crystallex to be granted a license." Ex. A at 104:4–9. As a result, the Court held that Movants had "not met" their "substantial burden" to "show bias or some other reason for disqualification." *Id.* at 103:23–104:3. And because there was "no evidence that the special master engaged in the type of advocacy" that Movants "contend[ed] would be inappropriate," the Court decided it "need not resolve today the dispute . . . as to whether it would [be] inappropriate for the special master to have engaged in the kinds of advocacy alleged." *Id.* at 110:24–111:11.

In addition, the Court found that the Disqualification Motion was "untimely because the grounds for it were known to the moving parties at least many months prior to the filing of their motion"—that is, it had been contemplated in prior Orders "that the special master had engaged OFAC counsel in ex parte communications" and was "directed to use his best efforts *to obtain guidance from OFAC*." *Id.* at 105:10–107:17 (emphasis added). The Court found that because Movants "ha[d] not proven that" the Special Master's conduct in the January 12 Meeting "was materially different than the types of things the special master did at the earlier ex parte meetings," the Disqualification Motion was untimely. *Id.* at 107:17–109:21. The Court also applied the same logic to conclude Movants had "waive[d]" the argument through "acquiescence" in the special master's prior ex parte efforts to obtain guidance from OFAC. *Id.* at 118:18–119:4.

B. The FOIA Litigation

Movants have for more than a year sought, via multiple channels, to obtain and review the presentation given by the Special Master to the Government in the January 12 Meeting. Movants requested to be included on correspondence and meetings (if any) involving the Special Master and the Government, including prior to the January 12 Meeting, but the Special Master refused. D.I. 516 (Decl. of N. Eimer describing pre-January 12 correspondence with Special Master); D.I.

525 (Supp. Decl. of N. Eimer describing same).  Following the January 12 Meeting, Movants met with the Government and requested the written materials, and also followed up with correspondence requesting the same.  Hall Decl. ¶ 3.[2]  Having still not received the materials, PDVH and its counsel filed four Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") requests.[3]  Those requests were not honored, and PDVH and its counsel therefore filed suit in the District Court for the District of Columbia.  Hall Decl. ¶ 4.

Over the next ten months, PDVH engaged in an extensive meet and confer process with the Government, substantially narrowing its requests in an attempt to receive, at minimum, the Presentation that the Special Master sent to the Government in advance of the January 12 Meeting.  Throughout the litigation, the Special Master delayed PDVH's efforts to obtain documents related to the January 12 Meeting.  For example, the Government asked the Special Master to provide objections, if any, to the production of a limited subset of documents relating to the January 12 Meeting by no later than October 13, 2023, but the Special Master failed to meet that deadline; and when the Special Master again failed to respond by February 16, 2024, the Government again delayed its promised production of the materials.  ECF No. 20 at 3, 11, FOIA Litigation, No. 23-cv-1591.  On February 28, 2024, given the Special Master's failure to complete its response,

---

[2] Cites to "Hall Decl." refer to the Declaration of Samuel Hall filed herewith.
[3] On February 1, 2023, PDVH submitted two FOIA requests to the Department of Treasury, and on April 19, 2023, PDVH's counsel submitted a FOIA request to the DOJ and another to the Department of State. Notably, the Special Master delayed production of the Presentation by improperly labeling it as "FOIA exempt" under 5 U.S.C. §552(b) when it was transmitted to the Government.  As demonstrated by the ultimate production of the document, there was no colorable basis for that assertion—it was a communication between an Article III judicial agent and the Executive Branch on the topic of the applicability of U.S. sanctions to the sale process. Materials submitted to the Government are subject (if applicable) only to Exemption 4 of FOIA, 28 C.F.R. § 16.7, which applies only to confidential "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential," 5 U.S.C. § 552(b)(4), none of which was implicated by the Special Master's Presentation.

PDVH was forced to move to compel the production of these documents. *Id*. On March 26, 2024, PDVH filed yet another motion to compel when the Special Master further delayed production by again failing to respond to a submitter notice within the 14-day response period requested by the Government. ECF No. 23, FOIA Litigation, No. 23-cv-1591. As a result, it was not until April 4, 2024—over a year after Movants initially requested the relevant materials—that PDVH finally received the Presentation. Hall Decl. ¶ 5.

### C. The Presentation

The Presentation produced to Movants in the FOIA Litigation plainly demonstrates that the Special Master did not just seek "guidance" form the Government, but instead actively advocated for the Government to change its sanctions policy from one that protected the assets of Venezuela and PDVSA from creditors by prohibiting any "transfer" of the blocked shares of PDVH to one that would officially authorize that transfer to take place to the benefit of Crystallex and other judgment creditors (and to the detriment of Venezuela and PDVSA). The Presentation noted that "US sanctions against PDVSA have stalled *efforts by Crystallex and other creditors to pursue their rights* in satisfaction of their claims." Ex. B at 17 (emphasis added). To remedy those "stalled efforts," the Special Master requested that OFAC "[i]ssue a general license authorizing all aspects of the sale," and

- Broadly requested that "[t]o the extent OFAC believes that a license is needed, *the Special Master requests* that OFAC provide authorization of the Special Master sale process *in the form of a General License or broad specific license*";

- Stated that "*[e]xplicit broad authorization for the full sale* would provide the greatest reassurance and clarity to prospective participants";

- And, in discussing the "benefits of a negotiated settlement," urged that "[e]xplicit US Government statements of support for the Sale Process and support for a negotiated settlement, including public or private statements that OFAC would

favorably review licensing requests needed to effectuate such a settlement, may prove instrumental in bringing the Venezuela Parties to the table."

Ex. B at 10–11 (emphasis added).  Alternatively, the Special Master asked the Government to adopt a "phased approach," in which OFAC would "specify which activities it is authorizing in the form of General or Specific Licenses as promptly as practical" and then, "[f]or any remaining activities, **the Special Master requests** . . . **assurances of a positive OFAC licensing policy for the consummation of the sale**." *Id.* at 11 (emphasis added).

## ARGUMENT

This Court should revisit and grant Movants' Disqualification Motion, because newly obtained evidence confirms that the Special Master did, in fact, engage in advocacy in the January 12 Meeting.  *Jaroslawicz v. M&T Bank Corp.*, 2023 WL 7182117, at *1 (D. Del. Nov. 1, 2023) ("The Court 'has the inherent power to reconsider prior interlocutory orders' where the Court 'retain[s] jurisdiction over the case.'") (quoting *State Nat'l Ins. Co. v. Cnty. of Camden*, 824 F.3d 399, 406 (3d Cir. 2016)).  The linchpin of the Court's ruling denying the Disqualification Motion was the conclusion that there was "no evidence" that the Special Master "advocated for change in U.S. foreign policy or advocated for Crystallex to be granted a license."  Ex. A at 104:4–9.  For that reason, this Court held that Movants could not demonstrate that the Special Master had engaged in improper advocacy going beyond the permissible requests for guidance he had previously sought, *id.* at 103:24–104:3, and that Movants' objection was likewise untimely and waived, *id.* at 105:10–109:21, 118:18–119:4.

Regardless of whether this Court's prior holdings were correct on the evidence then before it—and Movants preserve the contention that they were not—none of those grounds for refusing to disqualify the Special Master remains viable in light of the newly discovered evidence that

7

Movants have finally obtained through the FOIA Litigation.  The Special Master's Presentation to the Government provides clear evidence that the Special Master *did* advocate for the Government to change its sanctions policy with respect to the blocked shares of PDVH to the detriment of both Venezuela and PDVSA through the issuance of an express license authorizing the Sale Process or informal assurances that a post-sale license would be forthcoming.  Indeed, the Special Master expressly argued that the Government *should* grant a license for the sale of PDVH, and even acknowledged that doing so would effectively reverse the Government's blocking sanctions that thus far had thwarted Crystallex's efforts to enforce its judgment.  Ex. B at 17.

The Presentation thus went well beyond "seeking clarity" from the Government "as to whether it will or will not or may exercise its sole authority at the end of the process to grant a specific license."  *See* Ex. A at 108:3–109:4.  The Special Master did not, for example, merely request that the Government clarify whether third parties would require a license (or not) in order to participate in the Sales Process; nor did he limit himself to a narrow request for interpretive guidance from OFAC as to the meaning of existing sanctions regulations, as opposed to a license authorizing parties to engage in transaction that those regulations otherwise prohibit.  In the OFAC context, requests for "guidance" are materially different than requests for a license.  The former describes an inquiry to OFAC that articulates or clarifies ambiguities regarding the Government's position on the then-current state of the sanctions regime; by contrast, the latter requests an exception or change to, or a departure from, the then-current sanctions regime in order to provide relief to the applying party.  *Compare* OFAC FAQ No. 340, *available at* https://ofac.treasury.gov/faqs/340 (noting that assistance in interpreting the existing U.S. sanctions regime can be requested through "a request for interpretive guidance") *with* OFAC License Application Page, *available at* https://ofac.treasury.gov/ofac-license-application-page ("A license

is an authorization from OFAC to engage in a transaction that otherwise would be prohibited."). In other words, a request for a license is a request that OFAC change U.S. sanctions policy—that is, change the *law* governing a particular transaction.

The Special Master thus advocated for a change in U.S. sanctions policy. Specifically, the Special Master "***request[ed]*** that OFAC provide authorization of the Special Master sale process," Ex. B at 10, requested the issuance of new general or specific licenses if needed, and advocated for a "broad authorization ***for the full sale*** [to] provide the greatest reassurance and clarity to prospective participants" or, absent that, "assurances of a positive OFAC licensing policy for the consummation of the sale." *Id.* at 10–11. Moreover, the Special Master advocated his view of why that change was desirable, stating that if OFAC were to do as "request[ed]" and give "statements of support to the Sales Process," it may "prove instrumental ***in bringing the Venezuela Parties to the table***" for settlement discussions, further highlighting the Special Master's belief that the changes for which he was advocating would harm Venezuela and PDVSA by increasing the probability that Crystallex and other judgment creditors would collect on their judgments. *Id.* at 10–11; *see also id.* at 11 (arguing to the Government that "the Venezuela Parties [have] rebuff[ed] engaging in settlement discussions").

The Special Master himself has acknowledged, in filings to this Court, that OFAC *changes* U.S. policy when OFAC issues a new license, or new guidance that departs from previously-issued guidance. *See* D.I. 583 ¶ 7 ("Sophisticated actors will understand the OFAC's practice is not to deviate from these pronouncements ***without an explicit change in policy*** and accompanying public announcement.") (emphasis added). Indeed, the Special Master has admitted that the U.S. Government did just that—it ***changed the Government's licensing policy***—when OFAC issued

9

new licenses, a policy of non-enforcement of OFAC's sanctions, and additional guidance[4] that the Special Master himself had requested in the Presentation associated with the January 12 Meeting. D.I. 553 ¶ 24 ("[T]he April 7 DOJ Letter memorializes a change in the U.S. Government's licensing policy . . . confim[ing] that 'OFAC intends to implement a favorable licensing policy . . . in connection with execution of the sale.'") (emphasis added).  Thus, it can no longer be disputed that the Special Master both sought and received a change in Executive Branch policy and its sanctions regime regarding the blocking sanctions that had previously "stalled efforts by Crystallex and other creditors to pursue their rights in satisfaction of their claims." Ex. B at 17.

The newly discovered evidence of the Special Master's advocacy to the Government at the least gives rise to appearance-of-partiality and separation-of-powers concerns that require his disqualification under 28 U.S.C. § 455, Rule 52(a)(2), and/or the Due Process Clause of the Fifth Amendment, as discussed at length in Movants' filings in support of the Disqualifying Motion, which they re-incorporate here. *See* D.I. 509, D.I. 515, D.I. 524, D.I. 533.  In brief, the Special Master cannot be viewed as acting as an impartial judicial officer when he was expressly advocating for the Executive Branch to exercise its discretion under its licensing authorities to authorize a "full" Sales Process that benefits Crystallex and other creditors with full knowledge that it would be to the detriment of Venezuela and PDVSA.  Indeed, it is inconceivable that this Court could have (or would have) made the statements to the Executive Branch that the Special

---

[4] In FAQ 1123, OFAC described its adoption of a new "licensing policy" vis-à-vis "the Crystallex case," in which OFAC announced (for the first time) a policy of non-enforcement of the existing sanctions regime for individuals or entities participating in the Sales Process, as well as OFAC's intent to "implement a favorable licensing policy toward such license applications in connection with the execution of a sale. . . ." subject, as "with all OFAC licenses and statements of licensing policy . . . to reconsideration if U.S. foreign policy and national security interests materially change." OFAC FAQ No. 1123, *available at* https://ofac.treasury.gov/faqs/1123.

Master did, and the Special Master has no greater power to make those statements as a judicial officer acting on this Court's behalf. D.I. 509 at 5, 6 n.3. In light of this new evidence, the Court should now consider whether the Special Master's advocacy is grounds for disqualification—a question that this Court expressly declined to reach based on its finding that no evidence of improper advocacy existed. *See* Ex. A. at 110:24–111:11.

For similar reasons, Movants' arguments in this renewed Disqualification Motion are timely and not waived. The Motion is timely as Movants only received access to the Presentation on April 4, 2024, over a year after it was initially requested due, in part, to delays by the Special Master. For the time prior to that, this Court itself found that there was "no evidence" that the Special Master had engaged in the type of advocacy at the January 12 Meeting that the Presentation now reveals he did, so Movants cannot fairly be faulted for not providing this newly produced evidence until now. After finally obtaining the Presentation, PDVH had to confer with both PDVSA and the Republic to determine the best course of action, including whether it was prudent to continue to wait for the Government to complete its productions in the FOIA Litigation before seeking relief from this Court. Moreover, at the same time that PDVH received the presentation, PDVH and CITGO were (and have remained) engaged in almost daily meetings (and, indeed, sometimes day-long meetings) with bidders, Evercore, and the Special Master pursuant to the Sales Process. In light of the above, Movants filed this renewal Motion expeditiously. Likewise, Movants never acquiesced to the kind of advocacy revealed in the Presentation, which was neither disclosed to Movants nor contemplated by this Court's prior Orders. In finding Movants' disqualification arguments waived, this Court assumed (based on the lack of any contrary evidence) that the January 12 Meeting was "materially similar to what he had done repeatedly before" vis-à-vis the Executive Branch. Ex. A at 118:18–119:4. But the presentation proves that

assumption was incorrect—indeed, the January 12 Meeting was materially *dissimilar* to all prior Special Master engagements with the Government because it, unlike at any time prior to the January 12 Meeting, clearly did involve advocacy before the Executive Branch to change its sanctions policies. *Id.* at 37:13–38:8. Accordingly, the Venezuela Parties never offered to waive, much less received the "full disclosure on the record" that would have been necessary to waive the Special Master's disqualification for engaging in improper advocacy under 28 U.S.C. § 455(a). *See* 28 U.S.C. § 455(e) (permitting waiver by affected party to be "accepted" only upon "a full disclosure on the record of the basis for disqualification").

## **CONCLUSION**

Accordingly, the Special Master's conduct violates 28 U.S.C. § 455, Rule 52(a)(2), and/or the Due Process Clause of the Fifth Amendment, and Movants respectfully move the Court to disqualify the Special Master.

RESPECTFULLY SUBMITTED,

April 26, 2024

OF COUNSEL:
Nathan P. Eimer
Lisa S. Meyer
Daniel D. Birk
Gregory M. Schweizer
EIMER STAHL LLP
224 South Michigan Avenue Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com
DBirk@eimerstahl.com
GSchweizer@eimerstahl.com

OF COUNSEL:
Michael J. Gottlieb
Samuel L. Hall
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
mgottlieb@willkie.com
shall@willkie.com

OF COUNSEL:
Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Kenneth J. Nachbar*
Kenneth J. Nachbar (#2067)
Alexandra M. Cumings (#6146)
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
KNachbar@morrisnichols.com
ACumings@morrisnichols.com

*Attorneys for PDV Holding, Inc., and CITGO Petroleum Corporation*

HEYMAN ENERIO GATTUSO & HIRZEL LLP

*/s/ Samuel Taylor Hirzel, II*
Samuel Taylor Hirzel, II (#4415)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300

|  |  |
|---|---|
| OF COUNSEL:<br>Donald B. Verrilli, Jr.<br>Ginger D. Anders<br>MUNGER, TOLLES & OLSON LLP<br>601 Massachusetts Avenue NW<br>Suite 500 E<br>Washington, D.C. 20001<br>(202) 220-1100<br>Donald.Verrilli@mto.com<br>Ginger.Anders@mto.com<br><br>George M. Garvey<br>MUNGER, TOLLES & OLSON LLP<br>350 South Grand Avenue, 50th Floor<br>Los Angeles, CA 90071<br>(213) 683-9100<br>George.Garvey@mto.com | ABRAMS & BAYLISS LLP<br><br>/s/ *A. Thompson Bayliss*<br>A. Thompson Bayliss (#4379)<br>Christopher Fitzpatrick Cannataro (#6621)<br>20 Montchanin Road, Suite 200<br>Wilmington, DE 19807<br>(302) 778-1000<br>bayliss@abramsbayliss.com<br>cannataro@abramsbayliss.com<br><br>*Attorneys for Bolivarian Republic of Venezuela* |