# EXHIBIT A

**1**

```
 1            IN THE UNITED STATES DISTRICT COURT
 2            IN AND FOR THE DISTRICT OF DELAWARE
 3
 4   CRYSTALLEX INTERNATIONAL CORP..)
     -------------------Plaintiff, )
 5                                  )Case No.
            vs.                     )17-151-LPS
 6                                  )
     BOLIVARIAN REPUBLIC OF         )
 7   VENEZUELA,                     )
                                    )
 8   -------------------Defendant.  )
 9
10       TRANSCRIPT OF MOTION TO DISQUALIFY
11       MOTION TO DISQUALIFY had before the
12   Honorable Leonard P. Stark, U.S.C.A.J., in
13   Courtroom 4A on the 30th of March, 2023.
14
15                 APPEARANCES
16       POTTER ANDERSON & CORROON LLP
          BY:  MYRON STEELE, ESQ.
17             ABRAHAM SCHNEIDER, ESQ.
18               -and-
19       WEIL GOTSHAL & MANGES LLP
          BY:  RAY SCHROCK, ESQ.
20             ALEX WELCH, ESQ.
               CHASE BENTLEY, ESQ.
21
                        Counsel for the
22                      Special Master
23
24
25
```

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna DE 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

**3**

```
 1   (Appearances continued.)
 2       ROSS ARONSTAM & MORITZ LLP
          BY:  GARRET MORITZ,ESQ.
 3
           -and-
 4
         WACHTELL LIPTON ROSEN & KATZ
 5        BY:  RICHARD MASON, ESQ.
               AMY WOLF, ESQ.
 6             MICHAEL CASSEL, ESQ.
 7           -and-
 8       KOBRE & KIM
          BY:  MARCUS GREEN, ESQ.
 9
                   Counsel for
10                 ConocoPhillips
11       LANDIS RATH & COBB
          BY:  JENNIFER CREE, ESQ.
12
           -and-
13
         MOLOLAMKEN LLP
14        BY:  STEVEN MOLO, ESQ.
               JUSTIN ELLIS, ESQ.
15
                   Counsel for Red Tree
16
         WOMBLE BOND DICKINSON LLP
17        BY:  KEVIN MANGAN, ESQ.
18                 Counsel for Gold
                   Reserve, Inc.
19
         WILLKIE FARR & GALLAGHER LLP
20        BY:  SAM HALL, ESQ.
21                 Counsel for Citgo/PDVH
22
23
24
25
```

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

**2**

```
 1   (Appearances continued.)
 2
         RICHARDS, LAYTON & FINGER, P.A.
 3        BY:  JEFF MOYER, ESQ.
 4           -and-
 5       GIBSON DUNN & CRUTCHER
          BY:  MIGUEL ESTRADA, ESQ.
 6             LUCAS TOWNSEND, ESQ.
               MAX SCHULMAN, ESQ.
 7
 8                 Counsel for Crystallex
 9       ABRAMS & BAYLISS LLP
          BY:  STEPHEN CHILDS, ESQ.
10
           -and-
11       MUNGER TOLLES & OLSON LLP
          BY:  DONALD VERRILLI, ESQ.
12             GINGER ANDERS, ESQ.
13                 Counsel for the
                   Republic of Venezuela
14
         HEYMAN ENERIO GATTUSO & HIRZEL LLP
15        BY:  SAM HIRZEL, ESQ.
16           -and-
17       CURTIS MALLET-PREVOST COLT & MOSLE LLP
          BY:  JUAN PERLA, ESQ.
18             KEVIN MEEHAN, ESQ.
               AUBRE DEAN
19
                   Counsel for PDVSA
20
         MORRIS NICHOLS ARSHT & TUNELL
21        BY:  ALEXANDRA CUMINGS, ESQ.
22           -and-
23       EIMER STAHL LLP
          BY:  NATHAN EIMER, ESQ.
24             DANIEL BIRK, ESQ
25                 Counsel for Citgo
                   and PDVH
```

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

**4**

```
 1            THE COURT:  It's nice to see you all
 2   and be in court again with you.  It's been some
 3   time, I believe, since we've been in court
 4   together.  I do want to start by having you all
10:10AM  5   put your appearances on the record for us, and
 6   there are so many of you, so please be careful
 7   as we go through the proceedings today to
 8   identify yourselves for the court reporter.
 9       Right side of the room.  We'll start
10:10AM 10   there.
11            MR. MOYER:  Good morning, Your Honor.
12   Jeff Moyer of Richards, Layton, and Finger on
13   behalf of Crystallex.  Your Honor, I'm joined
14   this morning by Miguel Estrada and Lucas
10:11AM 15   Townsend of the Gibson Dunn firm.
16            THE COURT:  Good morning.
17            MR. STEELE:  Good morning, Your
18   Honor.  May it please the Court.  I'm Myron
19   Steele from Potter Anderson.  I have the
10:11AM 20   privilege of representing the special master,
21   Robert Pincus, who is here.  Also appearing,
22   from Weil Gotshal, Ray Schrock, who will
23   address the Court; Alex Welch; and Chase
24   Bentley.  Thank you, Your Honor.
10:11AM 25            THE COURT:  That's everyone on that
```

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

5

1  side of the room, so we'll turn to the other
2  side of the room, please.
3       MR. CHILDS:  Good morning, Your
4  Honor.  Stephen Childs of Abrams and Bayliss on
10:11AM 5  behalf of the Republic.  I'm joined this
6  morning by my co-counsel from Munger, Tolles,
7  and Olson Mr. Donald Verrilli and Ms. Ginger
8  Anders, and with Your Honor's permission,
9  Mr. Verrilli will address the Court.
10:11AM 10      THE COURT:  Permission is granted.
11  Good morning to you both.
12       MS. CUMINGS:  Good morning, Your
13  Honor.  Ali Cummings of Morris, Nichols, Arsht,
14  and Tunnell on behalf of PDV Holding and Citgo
10:12AM 15  Petroleum, and with me at counsel table is
16  Nathan Eimer of Eimer Stahl, and he'll be
17  presenting this morning.
18       THE COURT:  Thank you for that.
19       MR. HIRZEL:  Good morning, Your
10:12AM 20  Honor.  Sam Hirzel from Heyman Enerio on behalf
21  of PDVSA.  With me in the back I have Juan
22  Perla, Kevin Meehan, and Aubre Dean from the
23  Curtis Mallet firm.
24       THE COURT:  Welcome to you all.  Good
10:12AM 25  morning.

6

1       MR. MORITZ:  Good morning, Your
2  Honor.  Garrett Moritz from Ross Aronstam on
3  behalf of ConocoPhillips.  I'm joined today by
4  co-counsel from Wachtell Lipton Richard Mason,
10:12AM 5  Amy Wolf, and Michael Cassel, and also, from
6  Kobre and Kim, Marcus Green.  And our
7  expectation is Ms. Wolf will be speaking today,
8  although if some issue comes up that may
9  requires someone else, we may have one of the
10:13AM 10  others.  Thank you.
11       THE COURT:  Anybody else here this
12  morning that wants to enter an appearance?
13  Thank you.
14       There is one more.  Good morning.
10:13AM 15      MS. CREE:  Good morning, Your Honor.
16  Jennifer Cree from Landis, Rath, and Cobb on
17  behalf of the creditor Red Tree.  With me today
18  I have co-counsel Steven Molo and Justin Ellis
19  of MoloLamken.
10:13AM 20      THE COURT:  Thank you very much.
21       Again, good morning to all of you.
22       So I want to start by telling you my
23  agenda for the morning and then give you all a
24  chance to tell me if you have any questions
10:13AM 25  about that agenda or any objections or any

7

1  suggestions as to another way to proceed.
2       We're principally here on the
3  still-pending motion to disqualify the special
4  master.  I do not need to conduct an
10:14AM 5  evidentiary hearing after the extensive
6  briefing.  That was the position of all
7  parties, and I do not believe that there is any
8  material factual dispute in the record.
9       But here's how I plan to proceed:  I'd
10:14AM 10  like to start by hearing from the special
11  master, particularly to see if there's anything
12  he wants to put on the record to supplement the
13  record.  One of the issues that particularly
14  became apparent in the letters that I ordered
10:14AM 15  you all to submit is the Venezuela parties'
16  position that they are not seeking my
17  disqualification on the assumption that there
18  has been no ex parte communication of anything
19  substantive that happened in the January 12th
10:14AM 20  meeting and any discussion between me and the
21  special master, there has not been.  But I do
22  want to see if the special master wants to make
23  a record on that point and also if he's
24  prepared to make any record as to what happened
10:15AM 25  at the January 12th meeting in case that became

8

1  pertinent to the Venezuela parties' position,
2  so my thought is I would start with the special
3  master, not necessarily hear argument or ask
4  him a lot of questions, but just see if he
10:15AM 5  wants to supplement the record then turn to the
6  moving parties and hear their argument, and
7  I'll certainly have some questions, and then go
8  back to the special master, and if he wants to
9  make argument at that point, I may have some
10:15AM 10  questions related to motion.  I would turn to
11  him after hearing from the moving parties, and
12  then I would give Crystallex a chance to weigh
13  in, ConocoPhillips if they wish, and ultimately
14  give rebuttal to the moving parties.  That was
10:15AM 15  my thought.
16       Would there be any objection,
17  Mr. Verrilli, or any suggestion as to another
18  way to proceed?
19       MR. VERRILLI:  No, that sounds ideal.
10:15AM 20      THE COURT:  Mr. Schrock, any thoughts
21  about that?  Any objection?
22       MR. SCHROCK:  No objection, Your
23  Honor.
24       THE COURT:  Anybody else object to
10:16AM 25  Mr. Schrock beginning?

9

1        Let me tell you about the rest of the
2   day.  After that -- you can have a seat for a
3   minute.  After we go through all of that on the
4   motion to disqualify, I do want to talk to you
10:16AM 5   about whether I should be ordering the billing
6   records of the special master to be unsealed.
7   I do want to give the Venezuela parties any
8   chance to talk about their possible objections
9   to the expenditures of the special master, and
10:16AM 10   I do want to, before we leave our time together
11   today, see what you all think about where this
12   case is and how we should proceed and anything
13   else that you might wish to raise.
14        So I'll just pause briefly.  Any
10:16AM 15   questions about that from anybody?
16        No.  Okay.
17        All right.  Mr. Schrock, we'll have you
18   come back and get us started in the manner that
19   I've indicated.
10:16AM 20        MR. SCHROCK:  Thank you very much,
21   Your Honor.  Again.  Ray Schrock, Weil, Gotshal
22   and Manges, for the special master.  May it
23   please the Court.
24        In terms of supplementing the record, we
10:17AM 25   can note for the Court and the parties that

10

1   since we were last before the Court, we have
2   reached out through counsel to the DOJ to
3   solicit guidance and feedback from the U.S.
4   government, including OFAC, pursuant to the
10:17AM 5   sale procedures order.  We did arrange for the
6   January 12th meeting, as the Court is aware,
7   and we did -- we did attend that meeting.
8        I would note that present at the meeting
9   was only the DOJ at that meeting.  The U.S.
10:17AM 10   government -- in light of the motion, OFAC
11   decided not to attend, just, I believe, out of
12   an abundance of caution.
13        At the January 12th meeting, the special
14   master and his advisors presented materials
10:18AM 15   distributed via the DOJ out of the meeting.
16   The materials outline the sale process to date
17   and the intended timeline of the process going
18   forward as well as the benefits of the orderly
19   process designed by the special master and
10:18AM 20   approved by this Court.  The materials also set
21   out for the DOJ the elements of the proposed
22   sale process, which may need specific U.S.
23   government approval, and the importance of
24   receiving guidance and clarity on the U.S.
10:18AM 25   government's position with respect to the sale

11

1   process generally.  This is so that prospective
2   sale process participants, including potential
3   bidders, could make preparations.  And,
4   frankly, as we always make clear to the Court,
10:18AM 5   we need this guidance from OFAC and from the
6   U.S. government, in our view, to maximize
7   value.
8        We have not yet received the U.S.
9   government's position, but we expect to receive
10:19AM 10   it on or prior to April 7th.  So what's been
11   discussed are merely process issues, so we
12   don't know what the U.S. government's position
13   is.
14        THE COURT:  Let me just interrupt
10:19AM 15   you.  I think April 7th would be the end of the
16   six-month window; is that correct?
17        MR. SCHROCK:  That's right, Your
18   Honor.  When we solicited feedback from the
19   U.S. government, we said, listen, we'd like to
10:19AM 20   hear from you by April 7th.  We outlined for
21   you the process, all the specifics in the sale
22   process order, but we simply don't know what
23   their position is at this point.
24        I would note that to the extent we're
10:20AM 25   expected to submit the supplemental report by

12

1   April 7th, I think in light of the fact that we
2   expect to receive some feedback from the U.S.
3   government on or prior to that date, it would
4   make sense to push out the supplemental report
10:20AM 5   date.  The back-end date was May 3rd, I
6   believe, in the sale procedure order.  If we
7   could have until the end of the month,
8   April 30th, I think that would give us time to,
9   one, consider whatever the U.S. government's
10:20AM 10   position has been or is with respect to moving
11   forward, and I think it will make for a better
12   supplemental report for the Court and the
13   parties.  I think, also, we can interact with
14   the sale process parties and, you know, frankly
10:20AM 15   solicit some limited feedback as to, you know,
16   our thoughts on moving forward before we
17   present that to the Court.
18        THE COURT:  Is the request to extend
19   the deadline to April 30th, is that something
10:21AM 20   you've had a chance to talk to the sale
21   process --
22        MR. SCHROCK:  It's not, Your Honor,
23   generally, but we wanted to mention that.
24        THE COURT:  I'm sure over the course
10:21AM 25   of the morning, we'll find out.

13

1  MR. SCHROCK:  In terms of
2  supplementing the record, Your Honor, I think
3  that's really -- for purposes of the instant
4  motion, that's all we wanted to note.
10:21AM 5  THE COURT:  Of course, as you know,
6  we had a very brief conversation.  I'm prepared
7  to make a quick record on that unless you
8  wanted to do it.
9  MR. SCHROCK:  No, please go ahead.
10:21AM 10  THE COURT:  Let me put this in record
11  and you tell me if your recollection was any
12  different.  You were on that call; correct?
13  MR. SCHROCK:  I was.
14  THE COURT:  According to my notes and
10:21AM 15  recollection, on March 8th, we had a brief
16  conversation at the special master's request.
17  It was by phone.  The special master attended
18  and some -- his advisors, including
19  Mr. Schrock, myself, and several of my law
10:21AM 20  clerks.
21  After introductions, because it had been
22  some time since we'd all been in touch, I asked
23  the special master to tell me what the agenda
24  was, since I had no idea what he was going to
10:22AM 25  want to talk about.  He said about one

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

14

1  sentence, something to the effect of he
2  expected some kind of follow-up with OFAC maybe
3  in late February and maybe expected a letter
4  but had not yet seen it.
10:22AM 5  At that point, I interrupted and reminded
6  everybody on the call that the disqualification
7  motion was still pending, that the Venezuela
8  parties had noted that they were not seeking my
9  disqualification, and that that was in part
10:22AM 10  because they had no reason to believe that I
11  had any ex parte communication with the special
12  master about what had occurred at the January
13  12th meeting.  And after reminding everyone of
14  that, the discussion turned, pretty much, to
10:22AM 15  whether we should continue the call, and a
16  question was asked whether this hearing on
17  March 30, which had already been scheduled,
18  whether I intended to go forward with it, and I
19  indicated I did.  And we ended the call, and
10:23AM 20  later, I think, that day I got an e-mail from
21  the special master indicating that in light of
22  all that, he would wait to further communicate
23  anything until this hearing.
24  Anything you want to add to that or
10:23AM 25  anything I got wrong?

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

15

1  MR. SCHROCK:  No, I think that sounds
2  like an accurate summary.
3  THE COURT:  All right.  I will give
4  you a chance for argument on the motion, but is
10:23AM 5  there anything else in the nature of
6  supplementing the record you wanted to say at
7  this point?
8  MR. SCHROCK:  No, Your Honor.
9  THE COURT:  Thanks very much.
10:23AM 10  We will turn to the moving parties, and I
11  believe Mr. Verrilli is to make argument.
12  Would you start by indicating, do you
13  have an objection to an April 30th deadline for
14  the supplemental report?
10:23AM 15  MR. VERRILLI:  I do not on behalf of
16  the Republic.  We do not, Venezuela.
17  THE COURT:  Thank you very much.  You
18  may proceed.
19  MR. VERRILLI:  Good morning.  May it
10:23AM 20  please the Court.  I'm Don Verrilli for the
21  Venezuela parties.  I'll focus on the
22  disqualification issue and later in the day,
23  Mr. Eimer will handle the rest of the issues.
24  On the disqualification issue, we're
10:24AM 25  cognizant of what the Court said in its prior

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

16

1  ruling about the special master's ex parte
2  meeting with OFAC, which we now learned was
3  with DOJ.  And I'll address the timeliness and
4  waiver questions that came up in this Court's
10:24AM 5  order on and that the my friends on the other
6  side have raised.
7  I do want to start, though, with what we
8  perceive as the core problem here.  It does
9  relate to, but I don't think was answered by,
10:24AM 10  what we just heard from counsel for the special
11  master.  And I think if I may, Your Honor, just
12  to sort of preface what our understanding of
13  the purpose of that meeting and our inference
14  about what occurred at that meeting, in
10:24AM 15  addition to what was just described by counsel
16  for the special master.
17  Our understanding of the purpose of that
18  meeting was, in addition to the providing
19  information that counsel just described, that
10:25AM 20  the special master would advocate that OFAC
21  change its position and give a green light to
22  the sale process going forward.  In fact, the
23  reason for that was an exchange between --
24  between the special master and counsel for our
10:25AM 25  side in which our understanding was that the

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

17

1   reason the special master gave for not being
2   comfortable with the Venezuela parties
3   observing the meeting was that the special
4   master was going to engage in advocacy and that
10:25AM 5   that advocacy would be chilled.
6        We raised that in our papers.  The
7   special master, counsel for special master,
8   said what he said this morning, said what he
9   said in his papers.  As we read the papers, the
10:26AM 10  special master hasn't disagreed that that was
11  the purpose of the meeting, and from that,
12  we're inferring that that happened at the
13  meeting.
14       If that's wrong, then that would change
10:26AM 15  the complexion of this motion, certainly, but
16  we're proceeding on the assumption that that
17  did occur at the meeting, given that it was --
18  that we were informed that was the reason that
19  we were -- that the special master did not want
10:26AM 20  us to observe the meeting and wanted it to be
21  ex parte.
22       With that in mind, I think that gets to
23  our -- that is, really, our core concern here,
24  the idea that the special master would engage
10:26AM 25  in advocacy with the executive branch to try to

18

1   get it to change its position.  In that
2   situation, what you have is the special master
3   acting in a judicial capacity, engaging in
4   activity that we consider to be advocacy that
10:27AM 5   is not consistent with the impartial portion of
6   the law.
7        THE COURT:  So you clearly consider
8   it advocacy, but I think that's sort of loading
9   the situation.  Where is the line between
10:27AM 10  advocacy and the Court, through its special
11  master, just taking reasonable steps to enforce
12  its judgment and execute its judicial duty?
13  After all, I mean, you well know I'm acting
14  under a mandate from the Third Circuit that I
10:27AM 15  need to proceed by.  So where is the line
16  between advocacy and simply doing my job?
17       MR. VERRILLI:  I think that gets to
18  the heart of it, Your Honor, and it's precisely
19  what I want to address, that very question.
10:27AM 20       Now, we understand that the Court has an
21  interest, an important interest, in executing
22  its judgment consistent with the requirements
23  of the law.  But I think the key point here is
24  that the OFAC sanctions regime is part of the
10:28AM 25  law that applies here, and that law gives the

19

1   executive the authority to prioritize foreign
2   policy considerations over the enforcement of
3   judicial judgments, and we know that the
4   executive has done that through a lawful
10:28AM 5   exercise of its authority.  And we know that,
6   as of now, the position of the United States
7   expressed to this Court by the Justice
8   Department is that, considering that proceeding
9   with the sale process could jeopardize the
10:28AM 10  foreign policy, of the United States -- maybe
11  they'll say something different on April 7th,
12  but as of now, that's the position.
13       The other thing we know with respect to
14  that exercise is that Crystallex applied to
10:28AM 15  OFAC for a license and OFAC denied that
16  license.  It did it without prejudice so they
17  could come back in the future, but those are
18  the two things we know, and we know right now
19  what the foreign policy of the United States
10:28AM 20  is.  And so our understanding of the situation
21  is when the special master goes to OFAC and
22  says, "We want you to approve the sale
23  process," if indeed that's what happened, "We
24  want you to give Crystallex a license to close
10:29AM 25  the sale," if indeed that's what happened, then

20

1   what the special master is doing is advocating
2   that the executive branch change its foreign
3   policy calculus to prioritize enforcement of
4   the Court's judgment over the foreign policy
10:29AM 5   considerations that would subordinate that.
6   And I think it's fine for a party to do that.
7   It's fine for Crystallex to do it.  We
8   understand that, of course.
9        THE COURT:  What about for me?  Let's
10:29AM 10  say, I don't know, on or about April 30th, I
11  make a determination that it's time to go
12  forward and I say something in effect of it
13  would be really nice to know we're not wasting
14  our time and it would be nice to know that the
10:30AM 15  executive branch is going to let this
16  transaction go forward, if in fact we
17  ultimately come up with a bidder and I approve
18  the bid.
19       As you well know, I've already said my
10:30AM 20  interpretation of the sanctions, which is
21  governing for now because the Third Circuit
22  decided not to look at it, is I can go forward
23  up until the last step of sort of consummating
24  the transaction.
10:30AM 25       So I if I decide in April or May it's

21

1  time to go forward and it would be really nice
2  if the executive branch gave some indication
3  that it's a fair process and a reasonable
4  bidder that they're going to allow that to
10:30AM 5  happen, am I advocating or doing something
6  consistent with my judicial role at that point?
7        MR. VERRILLI:  I think it would
8  depend, Your Honor, on how far that statement
9  went.  If the statement was it would be helpful
10:31AM 10  for the Court to know what DOJ's view is, that
11  seems to me on the side of the line that
12  doesn't raise an issue.  But if the statement
13  is we think you've got your priorities wrong
14  and we want you to subordinate the foreign
10:31AM 15  policy, I do think that's over the line, and
16  that's where we think the line is.  That's
17  trying to address Your Honor's question
18  earlier, that that's where we think the line is
19  because in that situation, this is a judgment
10:31AM 20  that Congress has given to the executive branch
21  via OFAC to decide whether foreign policy
22  considerations should predominate or
23  enforcement of the judgment should predominate.
24  And what we understand the special master to
10:31AM 25  have done in subject clarification is to have

22

1  advocated DOJ that OFAC and the executive
2  branch, that it change its priorities.
3        To us, that is not impartial
4  administrations or enforcement of the law.
10:31AM 5  That is advocacy of a change in executive
6  branch policy.  That seems, to us, to be
7  inconsistent with the judicial function and to
8  raise the question of does it provide a
9  reasonable grounds to question impartiality.
10:32AM 10        THE COURT:  Is the key, then, whether
11  the special master or me -- I don't think you
12  make a distinction on this point.  If it's
13  advocacy, the line is the same for him and me?
14        MR. VERRILLI:  Yes.
10:32AM 15        THE COURT:  Okay.  So if he or I ask
16  for the executive branch to change foreign
17  policy, you would say that crosses the line;
18  right?
19        MR. VERRILLI:  Yes, and I think
10:32AM 20  asking for issuance of a license in particular
21  and then asking for DOJ to -- for the executive
22  branch, expressed through DOJ, to change its
23  view about whether continuation of the sale
24  process would jeopardize foreign policy and
10:33AM 25  national security interests, that the request

23

1  to change either of those things is, for us,
2  over the line.  That's where we think the line
3  is.
4        THE COURT:  What if the ask is merely
10:33AM 5  please tell us what your position is?  Your
6  position now -- this is hypothetical.  If their
7  position now is we're not going to tell you
8  what our position is and he or I ask in one
9  form or another would you please change that
10:33AM 10  position and at least tell us what your
11  position is, is that -- that's asking for a
12  change.  Is that crossing the line?
13        MR. VERRILLI:  Putting aside the
14  question of whether it's ex parte or on the
10:33AM 15  record --
16        THE COURT:  It's separate.  I
17  understand.
18        MR. VERRILLI:  -- but the substance
19  of that, that does not seem, to me, on the
10:33AM 20  wrong side of the line.  That seems to be no
21  different in substance than what the Court did
22  previously when is asked DOJ to enter a
23  statement of interest.  That's effectively
24  doing the same thing, and that gets to the
10:33AM 25  point.  I think that's the appropriate way to

24

1  do it.  The Court can ask the DOJ for a
2  statement of interest.  That seems like an
3  appropriate way to do it.  That's a recognized,
4  on-the-record process to ascertain the views of
10:34AM 5  the United States with respect to the questions
6  that Your Honor has posed.  The other way to do
7  it, of course, is for Crystallex to apply for a
8  license and have OFAC make a judgment.  Those
9  are appropriate.  They're governed by
10:34AM 10  regulations.  They're on the record.  They're
11  transparent.  Those are the ways this process
12  should unfold.
13        THE COURT:  How much of this is due
14  to the sanctions?  And by that I mean, the fact
10:34AM 15  that we're in a post-judgment, we're not
16  dealing with merits in the normal sense of how
17  we think of it, and Courts always have an
18  interest, I think, in effectuating judgments,
19  especially ones that have affirmed already.
10:34AM 20  How much -- is that a problem?  Is your
21  argument that simply -- I'll take your word --
22  advocating for enforcement of a judgment is
23  itself a problem, or is the problem that it
24  implicates foreign policy here and matters left
10:35AM 25  to the executive branch?

25

1   MR. VERRILLI:  We're making a point
2  that's specific to the circumstances before the
3  Court here, which is you've got OFAC having
4  exercised the authority conferred by Congress
10:35AM 5  on behalf of the executive branch to block the
6  transfer of the assets for foreign policy
7  reasons, so it's -- given that step by the
8  executive branch, it's -- if the judiciary
9  itself, as opposed to a party, were to go to
10:35AM 10  the executive branch and say we want you to
11  change your position on that, that seems not
12  consistent with the judicial role to us.  That
13  seems like not impartial enforcement and
14  administration of the law as entrusted to the
10:36AM 15  judicial branch but advocacy that the executive
16  branch change the enforcement of the law
17  entrusted to it.  That seems like a key
18  difference to us, and that's our concern.
19   Again, given what we heard this morning,
10:36AM 20  I want to be careful.  We don't know actually
21  exactly what the facts are, but if the facts
22  are what we're inferring they are, we think
23  that is over the line.
24   THE COURT:  I think we'll move on to
10:36AM 25  something in a moment.  Let me try once more

27

1  executed.
2   THE COURT:  Of course, here, I've
3  already decided for purposes of this case how
4  those sanctions interact with this case.  Some
10:37AM 5  other Court may ultimately disagree with that,
6  but that's where we are.  Does that have any
7  implications for whether this is advocacy or
8  not?
9   MR. VERRILLI:  I don't think so, Your
10:37AM 10  Honor.  The Court has decided, in the exercise
11  of the judicial power, that you read the
12  regulations in a certain way and that -- while
13  we don't agree with them, you read the
14  regulations that way.  We're not here to
10:38AM 15  contest that today -- to allow the sale process
16  to go forward up to the point of consummation
17  when a license is needed.  You exercised your
18  judicial power to come to that view, and that
19  view can be implemented in the exercise of your
10:38AM 20  judicial power.
21   But that seems to me to be categorically
22  different from going to the executive branch
23  and saying we want you to exercise your
24  executive power differently to remove any
10:38AM 25  impediments to our exercise of judicial power.

26

1  asking you the way Crystallex wrote it in one
2  of their briefs at page 17.  What they say is
3  taking a position on a fully litigated issue
4  cannot create the appearance of partiality
10:36AM 5  because that is precisely the role of the
6  judiciary.  I can read it again if you like.
7   MR. VERRILLI:  No, I understand that.
8   THE COURT:  What's your response to
9  that?
10:36AM 10   MR. VERRILLI:  My response to that is
11  that the -- try to -- apologize.  I may repeat
12  something I said a few minutes ago.
13   THE COURT:  I've probably done that
14  already.
10:37AM 15   MR. VERRILLI:  Seems to me that the
16  right way to think about -- respectfully, the
17  way to think about what the interest of
18  judiciary here is, that is has an interest in
19  enforcing its judgments in a matter that is
10:37AM 20  consistent with applicable law.  And I think
21  what that statement by Crystallex leaves out of
22  the equation is that the OFAC sanctions regime,
23  the power that Congress gave the executive
24  branch, there is applicable law that applies to
10:37AM 25  the process by which this judgment will be

28

1  That's what we are concerned happened here, and
2  that's what we think can't happen, consistent
3  with the law as we understand it.
4   THE COURT:  Unless you have more to
10:38AM 5  say on this, I would like to hear your position
6  position on timeliness.  I know your position
7  on the timeliness of the motion, but why would
8  it be wrong for me to say it was untimely?
9   MR. VERRILLI:  A couple of reasons.
10:39AM 10  And I don't want to -- we've made a second
11  argument, which I have, on the merits, which I
12  haven't spent any time on so far about the ex
13  parte fact gathering.
14   THE COURT:  And I don't mean to stop
10:39AM 15  you from that.
16   MR. VERRILLI:  I'll go to timeliness
17  now, but for purposes of timeliness, I think
18  it's important to separate the two.  We can
19  have a discussion about the process that led to
10:39AM 20  the interchange in January with respect to ex
21  parte fact gathering and the timeliness of it.
22   With respect to the advocacy point, I
23  think, really, the salient facts are these:
24  When the sale process order was being
10:39AM 25  contemplated, we raised an objection to the

29

1 possibility that the special master's authority
2 to interact with OFAC would include advocacy on
3 behalf of any party or advocacy for change in
4 the applicable legal requirements.  The special
5 master responded by saying he had no intention
6 to engage in advocacy on behalf of any parties.
7     Now, those facts occurred, and any
8 reasonable observer, I would think, seeing that
9 response to our objection would come to the
10 conclusion that the special master had
11 foresworn advocacy, and so that was what we
12 were operating on, that understanding.
13     Then when this Court issued the sale
14 process order, it does have language in it.
15 The special master referred to that language,
16 but looking at that language, Your Honor, I'm
17 going to -- you know well, but I'll quote it if
18 I could.  This is -- the March 22nd order says
19 that the special master shall use best efforts
20 to obtain guidance from OFAC expressing OFAC's
21 view of the process and the likelihood it will
22 issue a specific license for the sale to close.
23     In our judgment, going back to what I
24 said earlier, we think there's a categorical
25 difference between seeking guidance from OFAC

30

1 and engaging in advocacy to OFAC to change its
2 position.  So we don't think that that language
3 from the March order resolved the objection or
4 put us on notice that the special master was
5 going to engage in advocacy to change OFAC's
6 position.  We don't think it would be
7 reasonable to read it that way or to hold us to
8 an understanding of that based on that.  With
9 respect to the subsequent actions of the
10 special master interacting with OFAC, they were
11 reported as just providing OFAC with updates
12 and status updates, essentially.
13     Then we get to December 30, 2022, and we
14 learn for the first time that the special
15 master is planning to have a meeting with OFAC.
16 That meeting was planned for January 12th.  On
17 January 3rd, we learn for the first time that
18 it is the intention, as we said earlier, as we
19 understand it, of the special master to engage
20 in advocacy that OFAC change its position.  And
21 that is why the presence of the Venezuela
22 parties as observers would chill the
23 discussion.  So the first time we think that we
24 are in a position to know that the special
25 master is planning to do something that we

31

1 understood the special master had foresworn
2 earlier was January 3rd.
3     Now, we then moved for an order allowing
4 us to observe the meeting on January 9th.  This
5 Court ruled that that motion was untimely, but
6 whether that motion was untimely because the
7 meeting was just a few days hence is a
8 different question from the question of whether
9 we made an untimely objection to the -- to what
10 we believe would be improper advocacy.  Our
11 moving papers on that, in that proceeding, made
12 very clear that we thought it would violate the
13 operable requirements of Section 455 of the
14 special master to engage in that advocacy.
15     And given that, I just don't think
16 there's a basis for saying that we acted in a
17 dilatory way, and certainly no basis for
18 thinking that we did anything like what the
19 Third Circuit, as we understand it, has said is
20 the basis for an untimeliness objection, namely
21 engage in strategic behavior.  We moved as soon
22 as we knew that there was a problem with the
23 special master engaging in advocacy.  We don't
24 think there's a timeliness problem there.
25     And we also said in our papers we don't

32

1 think that we can waive -- that an objection to
2 that kind of lack of impartiality is not
3 something we can waive.  We can consent in
4 advance to that kind of discussion occurring,
5 but we don't think we can engage in waiver by
6 inaction, even if we hadn't taken the actions
7 we took, which we think should definitely be
8 sufficient to preserve that objection.
9     THE COURT:  So in the recitation, you
10 say we moved as soon as we could, meaning
11 January 9th.  But you admit you knew
12 everything, including to the extent it's fair
13 to distinguish between advocacy and ex parte
14 meetings, you knew by January 3rd.
15     Now, I understand it's not a lot of time
16 between January 3rd and January 9th.  My
17 problem is the time between January 9th and
18 January 11th is even shorter.  I give full
19 credit to my staff and my law clerk.  We moved
20 heaven and earth in 48 hours to get briefing on
21 your motion and get you a decision on it before
22 January 12th, but I think the timeliness
23 analysis has to be -- has to factor in how much
24 notice you gave to the Court.
25     It's unclear to me, and I guess this is

33

1 my question, what a litigant can reasonably
2 expect a Court to do with a motion on
3 January 9th about a meeting that's been in the
4 works for a long time that's 48 to 72 hours
10:45AM 5 later when it's a motion that, if credited,
6 threatens a process that's been laboriously
7 litigated and expensively litigated for five or
8 six years. Seems to me, by all rights, I may
9 not have even noticed your motion, much less
10:45AM 10 entered a briefing schedule and resolved it in
11 that limited time frame. So taking six of the
12 eight or nine available days seems to me too
13 much under these extraordinary circumstances.
14 Could you respond to that.
10:46AM 15        MR. VERRILLI: Well, again,
16 respectfully, we would disagree, even with
17 respect to question of the motion itself, which
18 was a motion that the meeting not occur ex
19 parte, that we be able to observe. That was
10:46AM 20 the motion before the Court, and we very much
21 appreciated the Court's effort to resolve that
22 motion. We have tried to explain in the papers
23 why it was four business days, why it took us
24 four business days, given the coordination that
10:46AM 25 needed to occur on our side. The Court can

34

1 find that problematic if it wants with respect
2 to the timeliness of the motion to participate
3 in the meeting. But that is a different thing
4 than whether the conduct that occurred at the
10:46AM 5 meeting is disqualifying. If our surmise is
6 correct and our position on the law is correct,
7 which we think it is, it's disqualifying.
8        THE COURT: If so, it seems logical
9 to me that your January 23rd motion to
10:47AM 10 disqualify is even more untimely because it was
11 not clear to me -- there was one citation, I
12 think, to 455 in the papers relating to the
13 meeting, but it was not clear to me that by
14 denying your motion relating to the meeting
10:47AM 15 that what I was going to end up with was, you
16 know, the contention by your side that now I
17 have to disqualify the special master and
18 potentially myself. So to the extent that was
19 not clear -- you may think -- you said it's
10:47AM 20 clear. I don't know that it's clear in your
21 initial motion. Hypothetically, if you accept
22 the assumption that it was not clear in your
23 January 9th motion, isn't the January 23rd
24 motion even more untimely?
10:47AM 25        MR. VERRILLI: No. Respectfully,

35

1 it's not, and a couple of things, if I could,
2 going back to the sequence of the briefing.
3        The way the briefing unfolded in that
4 compressed period of time there is we filed an
10:48AM 5 opening brief, an opening motion, and we were
6 trying to be circumspect about what the
7 intentions of the special master were with
8 respect to advocacy. We mentioned it in the
9 opening papers. We were trying to be
10:48AM 10 circumspect about it because we didn't want to
11 be accusatory in a situation that we thought
12 remained somewhat ambiguous, despite the
13 conversation that occurred earlier.
14        The response of the special master left
10:48AM 15 us with a high degree of concern that, in fact,
16 the special master planned to engage in the
17 kind of advocacy that we thought was
18 inappropriate. And I think our reply papers
19 were quite clear that we thought it was not
10:48AM 20 something that could happen at all, much less
21 ex parte, so that's why things unfolded the way
22 they did then.
23        And I do not -- and, again, Your Honor,
24 if this was conduct in which the special master
10:49AM 25 should not have engaged, we never consented to

36

1 it. And given that we didn't consent to it, we
2 can't have waived our objection to it, and I
3 just think that's the law of the circuit.
4 That's the law generally, that if this is
10:49AM 5 disqualifying conduct, then it is something
6 that we are entitled to object to on
7 January 23rd, so that is our position on waiver
8 and timeliness.
9        THE COURT: Okay. Anything else you
10:49AM 10 want to --
11        MR. VERRILLI: I'd be happy to wait
12 for rebuttal and clarify more then. Thank you.
13        THE COURT: We'll get you back on
14 rebuttal. Thank you very much.
10:49AM 15        While it's on my mind, Mr. Eimer, any
16 objection to April 30th for the report?
17        MR. EIMER: No, Your Honor, no
18 objections for Citgo or PDV Holdings.
19        THE COURT: Anybody else? Anybody
10:50AM 20 have objections to April 30th?
21        I'll note for the record no objections,
22 so the April 30th granted.
23        Lets get Mr. Schrock on what you just
24 heard for the motion to disqualify.
10:50AM 25        MR. SCHROCK: Good morning again,

37

1    Your Honor.  Again, Ray Schrock, Weil Gotshal
2    on behalf of the special master.
3         So I tried to listen very carefully to
4    counsel's argument around disqualification, and
5    I think what I heard was that if the special
6    master were arguing for a change in position,
7    that that would be disqualifying conduct.  Or
8    change in policy.  And I can certainly confirm
9    for the Court and the parties we're not
10   arguing, certainly, for a change in policy or
11   to subordinate foreign policy to the Court's
12   judgment.
13        At our meeting, in the more than
14   23 months since the special master was
15   appointed in these cases, we have dutifully
16   tried to carry out the direction by this Court,
17   which included carrying out the specific
18   process that, you know, the Court -- we've
19   litigated and now the Court has actually
20   approved.  And pursuant to the sale process to
21   the sale procedures order, we solicited OFAC
22   guidance and clarity in a manner that's
23   consistent with all of our arguments at -- you
24   know, in support of the sale process sale
25   procedures order that we needed clarity about

39

1    asking even for a change in position as well
2    with the U.S. government.  We were seeking
3    clarity and guidance about what their position
4    is.  We certainly have a view that the sale
5    process would be maximized for the benefit of
6    all of the creditors, as well as the Venezuela
7    parties, if we had guidance from OFAC and we
8    have clarity, as we outlined, for purposes of
9    enforcing the Court's order, but I don't
10   understand.  I don't think there's been any
11   record made how that would even be
12   inappropriate.
13        We won't -- I won't go through chapter
14   and verse how many times we've been authorized
15   to communicate ex parte with parties.  I don't
16   think that is seriously in dispute.  But, Your
17   Honor, you know, having been involved in this
18   matter now for a couple of years, it's clear
19   that as we get closer to the possibility of the
20   sale process potentially being implemented,
21   there's going to be more objection to, you
22   know, it moving forward.  That has been --
23   that's certainly -- you know, we would expect
24   that because that's -- you know, I think the
25   Venezuela parties would admit they don't want

38

1    what the U.S. government's position would be.
2    That is in no way disqualifying conduct.  It is
3    completely consistent with everything that
4    we've been doing since Mr. Pincus was appointed
5    in this matter, and it certainly is not
6    inappropriate, and there's no disputed fact
7    before the Court on which to disqualify the
8    special master.
9         Your Honor, I do think it's relevant that
10   you've already -- the Court's shown somewhat
11   addressed this issue.  In the January order, I
12   believe in the footnote, you noted that if the
13   Court -- to the extent this could even be
14   framed as advocacy, and, frankly, I regret that
15   we even used that word -- that in trying to
16   enforce the Court's order, that is not
17   inappropriate conduct.  There's been nothing
18   new that has been raised here.  We don't even
19   know the position of the U.S. government.  We
20   are specifically authorized to have ex parte
21   communications, and, frankly, I don't think any
22   party could reasonably argue that having those
23   ex parte communications does not help further
24   the enforcement of the Court's order.
25        I don't think that, you know, we are

40

1    the process to move forward.
2         So we don't begrudge them for making any
3    arguments today.  We don't call balls and
4    strikes.  We are trying hard to implement the
5    Court's order, but I do think it's noteworthy
6    that it's already been decided by the Court.
7    There's no disputed factual issue here for the
8    Court that would call for the disqualification
9    of the special master, and I think that it's --
10   I don't really understand this line that
11   counsel is trying to draw around advocacy
12   versus trying to enforce the Court's order.
13        In order to get this guidance, we were
14   directed to go get guidance from OFAC.  We have
15   a view that the process will be enhanced if we
16   get clarity and guidance from OFAC.  OFAC
17   hadn't refused to give guidance in the past,
18   but they simply will speak for themselves about
19   what their position is.  Our job was to get
20   that clarity and guidance so we could make an
21   informed decision for purposes of the
22   supplemental report, decide whether or not to
23   recommend to the Court and the parties to
24   prepare for the preparation launch date, and
25   launch date of the marketing process, and

41

1  otherwise move these proceedings forward.  We
2  have billions of dollars in judgments that are
3  unsatisfied and that have been unsatisfied for
4  years.  There are new judgments that have been
5  recently -- conditional writ of attachments,
6  writs of attachment, that have been considered
7  by the Court, and we simply want to move this
8  process forward in a fair and expeditious
9  manner.
10      On the waiver issue, Your Honor, I do
11  think that we make the point in our papers,
12  listen, we believe there was some strategic
13  delay around this and bringing this up a mere
14  three days before the meeting before the Court,
15  we think, is simply too late, and especially
16  given that I know personally that these
17  meetings with the U.S. government have been
18  taking place for, you know, since 2021, and,
19  you know, that is that -- since that summer, we
20  have always met with the U.S. government on an
21  ex parte basis, consistent with the directions
22  from this Court.
23      I think the Venezuela parties clearly
24  have failed to meet their substantial burden of
25  a disqualifying basis.  I think that the motion

42

1  is untimely.  I think the Court's already ruled
2  on this issue, and given there's no disputed
3  evidentiary fact, I think the motion should be
4  denied.
5      THE COURT:  Thank you.  I've got a
6  few questions for you.
7      MR. SCHROCK:  Sure.
8      THE COURT:  I don't know if I'm going
9  to have to draw with clarity the line between
10  advocacy and non-advocacy, but I wanted to go
11  over some of that a little bit with you as I
12  did with Mr. Verrilli.
13      The Venezuela parties write in one of
14  their briefs at page ten, they say, "Advocacy
15  by a judge to the U.S. government can create
16  undue influence and cause separation of powers
17  concerns."  Of course, they're not suggesting
18  that I've done that, but I think they're saying
19  perhaps Mr. Pincus has done it, and they want
20  to illustrate that I couldn't do that.
21      "Advocacy by a judge to the U.S.
22  government can create undue influence and cause
23  separation of powers concerns."  Do you agree
24  with that as a principle but say it's not
25  applicable here, or do you disagree with that

43

1  as a principle?
2      MR. SCHROCK:  I just don't think it's
3  applicable here, Your Honor, for purposes of
4  this case.  Again, we were not arguing for a
5  change in foreign policy.  We were not arguing
6  for a change in priorities.  We were not
7  arguing that the U.S. government change its
8  position.  What we were trying to impress upon
9  the U.S. government is that we needed guidance,
10  and we think that the guidance would be helpful
11  in order to allow the sale process to move
12  forward.  And I don't see how, especially under
13  these facts, where the Court's already entered
14  an order, we're in the remedy enforcement phase
15  of these proceedings, and seeking this guidance
16  when you've got these particular facts, I don't
17  understand how that would be implicating
18  separation of powers issues, but in any event,
19  I don't think those are the facts before the
20  Court.
21      THE COURT:  Here's how the Venezuela
22  parties put, I think, the same issue, so it's
23  probably the same response.  It's in the reply,
24  and I recognize you have a former chief justice
25  of our Supreme Court on your litigation team,

44

1  but they write, "Surely this Court could not
2  walk into Delaware Supreme Court and urge them
3  to issue an opinion agreeing with Crystallex's
4  view of what the Delaware code requires."
5      Again, do you agree with that as a
6  principle and say it's not applicable?
7      MR. SCHROCK:  I would say it's not
8  applicable here, Your Honor.  And, again, we --
9  I don't think that those are the facts,
10  certainly, before the Court, Your Honor, but
11  when a Court is -- I think we've made the case
12  pretty persuasively the Court has an inherent
13  power to enforce its own judgments.  We've laid
14  out a process to do that.  We believe that
15  input from the executive branch is necessary in
16  order to maximize value.  The Court can either
17  decide that that is necessary or that isn't
18  necessary, but that certainly wasn't -- that
19  aren't the facts before the Court.
20      THE COURT:  Are the Venezuela parties
21  telling on January 3rd something new was
22  disclosed to them, this advocacy point?  I'm
23  now understanding your position seems to be
24  whatever word we used, it was not any change in
25  the special master's approach.

45

1    MR. SCHROCK:  It was not at all.
2    And we weren't advocating on behalf of
3    any party, and we won't.  We were simply
4    advocating -- or we were simply -- I'll restate
5    this.  We were simply making the point that in
6    order to have the Court's order enforced, for
7    the sale process to move forward, that we
8    believed further guidance from the executive
9    branch was absolutely critical to do that.
10    THE COURT:  I think there was a
11    suggestion that we should read into your
12    opposition to having the Venezuela parties and
13    perhaps other sales parties in the room at the
14    meeting on January 12th should indicate that,
15    perhaps before the motion but who knows, that
16    you did have some sort of intent at some point
17    to advocate or do something different than
18    you've done in earlier meetings.  Otherwise,
19    why would you oppose them observing?  Could you
20    respond to that suggestion.
21    MR. SCHROCK:  I think we haven't
22    wanted them present at, certainly, at other
23    meetings.  We thought that particularly here,
24    when we're dealing with sensitive issues like,
25    you know, getting clarity and guidance from the

46

1    executive branch about the proposed sale
2    procedure, that it's important that that
3    dialogue be allowed to be conducted
4    confidentially without having the litigants
5    from either side present and kind of weigh in
6    because I don't think we get a full and frank
7    dialogue around it.
8    Certainly, Your Honor, I won't be
9    disclosing anything confidential to say we
10    don't know.  We do not know what the U.S.
11    government's position is at this point.  We
12    know that they're going to issue guidance, and,
13    you know, we'll await when that comes.
14    THE COURT:  Okay.  Anything else?
15    MR. SCHROCK:  That's it, Your Honor.
16    THE COURT:  Thank you very much.
17    We'll hear now from Crystallex.
18    Good morning.
19    MR. ESTRADA:  Good morning, Your
20    Honor.  Miguel Estrada -- for the benefit of
21    the court reporter, E-s-t-r-a-d-a -- with
22    Gibson, Dunn, and Crutcher in Washington on
23    behalf of Crystallex.
24    I will start by saying that someone once
25    said that Mark Twain supposedly said that

47

1    Wagner's music is not as bad as it sounds, and
2    I think we have the flip side here, in that I
3    have the greatest admiration for Mr. Verrilli,
4    counsel for the Republic, and his extremely
5    gifted advocacy, but his mellifluous tone
6    cannot hide the unreasonable of his client's
7    position on these motions.
8    Let me start with timing.  And there's
9    this question about what this issue is that the
10    Republic and its advocating entities are really
11    complaining about, and they shift back and
12    forth depending on the convenience of the
13    situation, but let's keep firmly in mind that
14    the recusal motion is supposedly based on
15    Section 455(b)(1) and the assertion that by
16    meeting ex parte with OFAC, the special master
17    has supposedly acquired knowledge of disputed
18    evidentiary facts, and that is the key to the
19    recusal motion.  And the position of OFAC is a
20    disputed evidentiary fact in the action.
21    Now, there are problems on the merits of
22    that that I'll get to presently, but for
23    purposes of waiver, I think it bears noting two
24    things:  That the notion that the special
25    master was meeting ex parte with OFAC has been

48

1    clear for years.  It was clear when the draft
2    sales order was in front of the Court.  It was
3    clear when we had an all-day hearing on
4    November 8, 2021.  It was the subject of
5    colloquy.  It was told to the Court.  The Court
6    had a colloquy with Mr. Covney (phonetic)
7    which we put in the papers about whether going
8    to OFAC was going to be a problem, and the
9    response was -- I will emphasize again -- it
10    will not give clarity to the market.  It's not
11    a license.  If it's not a license, it's
12    worthless.  It's a license or bust.  But it was
13    never it would be unethical for the special
14    master to go speak to OFAC or have a
15    conversation with OFAC.
16    And in the ensuing years, we have the
17    special master submitting reports and bills to
18    the Court which we know for a fact Venezuela
19    has fly-specked to the last penny in which
20    there was disclosed to the Court there had been
21    meetings between the special master and OFAC,
22    and there was never a peep out of the Republic
23    or its satellites saying isn't that unethical,
24    isn't that a basis for disqualification.
25    We get to the fire drill earlier this

49

1 year, January 9th, on one of the most
2 astounding facts about the case on timeliness.
3 And I think the smoking gun on how this is just
4 tactical behavior on the behalf of the Republic
5 is the fact that the Republican satellites came
6 to you on an emergency basis to be permitted to
7 attend the meeting. Never once did they say to
8 Your Honor, "And if the meeting happens without
9 our attendance, there will be a basis for
10 mandatory disqualification."
11 455(b)(1) is not mentioned at all. You
12 can look word by word in their pleadings. Not
13 mentioned at all.
14 Now, it is not the case that the
15 Republican satellites are in a lack of, like, a
16 squadron of talented lawyers. If they cited at
17 some level 455(a) for a general proposition of
18 due process, it's inconceivable that they have
19 not thought of the fact that weeks later they
20 would be coming to the Court saying, "A-ha, got
21 you now." That is clear evidence of tactical
22 behavior on the part of the Republic.
23 And the fact that they could not think of
24 mentioning this, their grounds for mandatory
25 disqualification that formed the centerpiece of

50

1 this motion could not be mentioned then and
2 only be sprung on the Court a couple of weeks
3 later as if it had never occurred to anybody or
4 they just found the statute, it's just
5 incredible on its face.
6 THE COURT: There was -- I think
7 Mr. Verrilli sort of pre-rebutted that by
8 saying they were trying to be circumspect in
9 their papers. Any response to that?
10 MR. ESTRADA: Yes, of course. That's
11 called forfeiture and waiver. If I'm
12 circumspect by not speaking out reasonably,
13 that's called forfeiture and waiver. I can be
14 as circumspect and respectful as I like, but I
15 think you are -- if you are going to stand on
16 your rights and say to a Court this is what
17 will happen as a consequence of the actions if
18 you don't rule in my favor, you are required to
19 assert that reasonably and not later when you
20 have seen what technical advantage you can get
21 out of the first try. That's not how legal
22 rulings work.
23 But I think more fundamentally, on the
24 merits, the fundamental problem with this
25 motion is, first, is that it is based on the

51

1 notion that the position of OFAC is a "disputed
2 evidentiary fact concerning the proceeding," to
3 use the language of 455(b)(1), and that's just
4 not so. This Court is not going to rule on
5 what the position of OFAC is. The position of
6 OFAC is an input, and a legal one, in the
7 decision-making by this Honor, by Your Honor.
8 I mean, it's not like, you know, was the light
9 red or was it green when I ran through it and
10 Your Honor was picking up his cleaning across
11 the street and is in possession of disputed
12 evidentiary facts as to whether the light was
13 green or red, or it's not as if OFAC, if it
14 were to come through its own attorneys to the
15 Court saying this is our position, would be
16 subjected to you saying no, I find that's not
17 your position. That's not a disputed
18 evidentiary fact in the proceeding. It's not
19 like you're going to find the opposite of what
20 the decision really is. It's a legal input in
21 the decision-making. And so the whole
22 applicability of 455 and 455(b)(1) and the
23 whole notion that the special master is going
24 to acquire knowledge over disputed facts is a
25 false premise for the entire recusal motion.

52

1 Having said that, there's a next fallacy
2 in the position, which is that to the extent
3 this was an input that had a factual component
4 to it, the ship has sailed. DI 453, March 2nd,
5 last year, you issued a very lengthy order
6 taking into account what every party was saying
7 about how the OFAC regime applies to this case,
8 and you made clear -- and as we saw it, OFAC
9 agreed with you on this -- that the sale
10 process would go forward short of a sale, and
11 that for prudential reasons, you might delay
12 the start of the sales process and seek the
13 views of OFAC just to see how the market would
14 react. That, again, is not a disputed
15 evidentiary fact on anything you found. You
16 already made all the findings.
17 And in fact, you say at page 29 of DI 443
18 in footnote 22, "OFAC appears to recognize that
19 it can make this request. That is to say, they
20 do not go forward with the prefatory sales
21 process short of a sale, but cannot compel the
22 Court to grant it." So these issues have been
23 fully adjudicated. They're no longer open.
24 If OFAC were to express the view "I
25 rather you wouldn't," it would still be open to

53

1 you to say I've already ruled that. I'll go
2 forward anyway. I was just trying to get their
3 views to see if it would help the market
4 process as the special master said it might.
5 Again, their legal position is a legal input in
6 your decision-making, and in the
7 decision-making that you've already ruled on.
8 That's point one.
9       The next point is that there is this
10 sleight of hand about how anything that the
11 special master is doing or anything that may be
12 happening is lobbying the executive branch for
13 a change in the foreign policy position of the
14 United States. That is false, and there's no
15 evidence for that.
16      We have two data points on this. We have
17 a statement of interest that was admitted to
18 Your Honor in the Trump Administration -- I
19 think it was July 2020 -- in which the
20 administration was very careful to say, "At
21 this time we have the following view" while
22 telling Your Honor that they did not see a
23 legal impediment to you going forward with the
24 prefatory steps as you later did.
25      And the second input we have on that is

54

1 the denial without prejudice of our license
2 application in 2021 where, again, OFAC said,
3 and you can go look at the document, again and
4 again, "Now, at this time, at this present
5 moment, this is our view right now." In fact,
6 it went so far as to say "If you come back to
7 us in early 2022, we may have a different view
8 of these things because we're basing this on
9 the fact that there are ongoing talks in Mexico
10 City, that it's an especially sensitive time,
11 and we're not saying how we're going to rule in
12 the future."
13      Significantly, in that same letter, OFAC
14 recognizes and reauthorized the prefatory steps
15 and expressed no disagreement with it and also
16 said the Court has recognized that the ultimate
17 blocking of the transaction is something that
18 is up to the executive and may require a small
19 delay in the sale. Now, this is years later
20 now. So the notion that there is some lobbying
21 for a change in some established foreign policy
22 position, when at present we don't actually
23 know who our government actually recognizes as
24 the government of Venezuela or if there is a
25 government of Venezuela other than the de facto

55

1 government of the dictatorship, is sort of
2 fallacious on its own terms. There is no
3 advocacy for a change. There is, at most, a
4 question being asked as to what your current
5 position is.
6       THE COURT: I want to make sure I
7 understand your position. I recognize that
8 it's at least in part that there's no evidence
9 that the special master has asked for a change
10 in foreign policy or a change in how to handle
11 a license request. Should I assume you agree
12 that if the special master or I did ask OFAC to
13 change foreign policy or please grant a
14 license, something to that effect, that you
15 agree that would be improper?
16      MR. ESTRADA: No, I don't agree with
17 that at all.
18      THE COURT: Help me on that.
19      MR. ESTRADA: I think there are two
20 points to that. I think Your Honor has agreed
21 that OFAC has the legal authority to issue or
22 not to issue a license. And OFAC, for its own
23 internal consideration, may take foreign policy
24 into consideration as to whether the answer on
25 the license would be yea or nay. I think for a

56

1 Court to say I have a preference for my
2 judgments to be executed and, therefore, you
3 should, having made the execution of the
4 judgment, wait this long, you should weigh your
5 policy preferences differently, it's not
6 inappropriate at all because I think it's
7 appropriate for the Court always to advocate
8 for their own institutional interest and the
9 importance of their own judgments.
10      Now, it's not the case, as was intimated
11 by counsel for the Republic, that it is
12 categorically improper for a Court to take a
13 view of foreign policy interests that are
14 different from those of the executive. I'll
15 give you one example. The executive is a
16 litigant in the courts of the United States
17 every day, and every day or every other day the
18 executive will come to the Courts of the United
19 States and make some argument based on some
20 foreign policy interest, say, for example, to
21 take a notable example, *Trump versus Hawaii*,
22 when Trump had the so-called Muslim ban. There
23 was some question about whether he had some --
24 he, the president, had his own foreign policy
25 judgment that will delay that. And the Courts

57

1  are always there to say, okay, that may be
2  correct, but I weigh that in executing my job
3  for the value that it is worth.  I will not
4  defer blindly to it in all circumstances.
5        You have to apply the licensing law,
6  which recognizes that the ultimate sale will
7  not take place absent the license, but the
8  considerations expressed by the executive one
9  way or the other are those of a kind the U.S.
10  courts see every day in a number of contexts
11  and sometimes are weighty and sometimes are not
12  weighty.  And it's not categorically the case
13  that U.S. district judges or appeals judges or
14  the U.S. Supreme Court are meant by separation
15  of powers to fall to the ground prostrate every
16  time there is an executive claim that foreign
17  policy would be served by X, Y, or Z.  That's
18  not the case.  So I don't agree with that
19  proposition.
20        If the Court is saying there is an
21  institutional interest in the enforcement of
22  foreign judgments, and you therefore consider
23  whether you have -- there would be nothing
24  inappropriate with that, I disagree with the
25  Republic on that.  I don't think they're

59

1  were to have a conversation with OFAC or DOJ or
2  whoever the case may be in which -- which
3  caused the special master to make a
4  recommendation to the Court that the executive
5  felt was not in accord with what happened,
6  everybody can be assured that there would be a
7  filing with the Court saying that's not our
8  position.  The executive has whatever position
9  it will have.  And as I said, it's not a fact
10  to be adjudicated.  It is what it is, and the
11  Court will give it whatever legal weight it has
12  in the legal analysis.
13        But it's not up for grabs for
14  adjudication.  It's not a disputed fact.  To
15  the extent disputed facts were relevant, they
16  were long ago adjudicated, and all that
17  remains, as the Third Circuit, said is
18  executing the judgment.
19        Under the theory of this motion, if you
20  were to go to the U.S. government and you said,
21  quoting the Third Circuit, that every day
22  Crystallex is not paid is an affront to the
23  justice system, that doesn't mean that you
24  should be recused and the Third Circuit be
25  recused because God forbid they're expressing a

58

1  correct.
2        More fundamentally, though, I think that
3  what we have now here is enforcement of a
4  judgment that has already been adjudicated by
5  this Court, and, you know, the irony of this
6  situation is that we have an attachment, which
7  is a species of a property right, and the
8  Republic is acting as if they have a property
9  right in the continuance in the foreign policy
10  views that were expressed years ago, and if --
11  property right in blocking everybody from
12  finding out whether that same view subsists
13  today.
14        And to be in the room like the cousin
15  from *The Godfather* who was brought from Italy.
16  He glared down the civil servants who have to
17  meet with the special master who say two years
18  ago your foreign policy said that, the U.S.
19  government is perfectly capable of speaking
20  through its own mouth.  It doesn't need tin-pot
21  dictators in other countries, it doesn't need
22  foreign countries to say what the foreign
23  policy of the United States is.  The executive
24  branch speaks as to what its interest are every
25  day in federal courts.  If the special master

60

1  view that's somehow hectoring the executive
2  branch into the notion that the judgments of
3  our courts are not optional and that they
4  should be obeyed.  And that is not the law, has
5  never been the law, and it is, frankly, an
6  absurd conception of how 455, the canons, work
7  and how the enforcement of the judgment work.
8        And I think I pretty much covered the
9  subject of the motion, but I'm open to
10  questions.
11        THE COURT:  Just one last.  On the
12  waiver, to the extent you see it as you do, as
13  a separate ground from timing, per se, help me
14  out on how I can say their right to seek
15  disqualification is waived since their argument
16  seems to be, basically, you can never waive
17  that.  A judge or a special master might do
18  something that mandates their disqualification.
19        MR. ESTRADA:  That are two aspects to
20  that, and one of them is the waiver.  They
21  affirmatively agreed to that process in the
22  context of the adoption and then the execution
23  of the sales order up until January, so that's
24  waiver in the old common law sense, the
25  affirmative embracement of that course of

61

1    conduct.

2        I think the point they're making, and

3    this is why I started with 455(b)(1), is that

4    the acquisition of knowledge of disputed

5    evidentiary facts is a non-waivable basis for

6    disqualification. As we pointed out in our

7    papers, that doesn't mean the timing of the

8    motion and the fact that it is revealed to be

9    tactical is not relevant on whether you have

10   asserted your rights on a timely basis. Now, I

11   covered already why this is not a disputed fact

12   and it fails on the merits, but on the timing

13   it seems to me it would be impossible to

14   conclude, based on the conduct of the Republic

15   since this was in draft form, through the

16   submission of the master of all the bills, and

17   then the fact that they filed a motion in early

18   January in which they could not be bothered to

19   cite the same statute which they were going to

20   cite two weeks later, that this is not tactical

21   conduct. And I think tactical conduct does

22   bear on the timeliness question that is

23   separate from waiver.

24        They may not have agreed, in fact, they

25   might have the affirmative intention of not

62

1    agreeing and using this as a tactical weapon,

2    but the Courts are not -- are not required

3    merely -- merely because they have no

4    subjective intention in January to agree to

5    this to accept that they didn't have a tactical

6    reason in playing this sort of game with the

7    Court and in holding the motion untimely on

8    that basis.

9        The lack of timeliness, seems to me, has

10   nothing to do whether they consciously agreed

11   to this course of action, which I think they

12   did earlier and throughout, but if they were

13   saving this as a weapon in reserve. They had

14   it in the back pocket, which seems to me

15   clearly tactical behavior that is relevant to

16   the timing of the motion because it is beggars

17   comprehension how a fleet of the most expensive

18   lawyers in the United States other than me

19   could have failed to think that this subsection

20   of the statute would be useful to cite in

21   January 9th as something the Court should

22   consider. And the conclusion is unavoidable

23   that it was purely tactical behavior on the

24   part of the Republic, as Venezuela has always

25   tried to do to throw sand in the gears of the

63

1    enforcement process.

2        THE COURT: Does ConocoPhillips wish

3    to be heard?

4        MS. WOLF: Very briefly, Your Honor.

5        THE COURT: Good morning.

6        MS. WOLF: Good morning. Amy Wolf

7    from Wachtell, Lipton, Rosen, and Katz on

8    behalf of ConocoPhillips.

9        Your Honor, we submitted a letter. We

10   think that the motion merely -- no disrespect

11   intended -- has no merit. The special master

12   was charged with the mandate of devising a plan

13   to sell the shares, to sell the PDVH shares.

14   That's his job, and he was also given

15   permission and the mandate to collectively

16   engage with the executive branch. That's all

17   that's happened here. Framing this as somehow

18   the special master thinking that he could

19   convince the federal government to change its

20   foreign policy it seems to me to be rather a

21   stretch to try to frame what he has done as

22   trying to get the United States to change its

23   foreign policy. His job is to try to get the

24   sale to happen, and he's allowed to talk to the

25   executive branch to do that.

64

1        And I similarly can't understand how he

2    could be disqualified for doing his job.

3        THE COURT: Okay. Thank you very

4    much.

5        Mr. Verrilli.

6        MR. VERRILLI: Thank you, Your Honor.

7    There are four points I'd like to make. The

8    first one goes to the question that you and

9    Mr. Estrada were discussing about timeliness,

10   waiver, sandbagging, et cetera. Mr. Estrada is

11   a superb lawyer, and he's a good friend.

12        THE COURT: Apparently expensive too.

13        MR. VERRILLI: And more expensive

14   than me. And he's often right, but he just has

15   the basic facts wrong with regard to what

16   happened in the briefing of the timeliness

17   motion, and with Your Honor's indulgence, I'm

18   going to read the sentences from the motion --

19   from the response to the special master and

20   from our reply.

21        In our opening motion on page seven,

22   after we first discussed what would be

23   455(b)(1), as Mr. Estrada says, we then said --

24   this is where we were trying to be circumspect.

25   We were circumspect but not unclear. We said,

65

1  "Indeed, it obviously would be improper for the
2  special master to contact OFAC unilaterally to
3  urge that the government take any position on
4  way or the other, particularly on an ex parte
11:26AM 5  basis."  We cite a number of authorities, and
6  then we cite 28 U.S.C. 455(a) and we quote it.
7      Then in response, the special master
8  said -- and this is what gave us particular
9  cause for concern -- and this is at page five
11:26AM 10 of the special master's response, that "It is
11 undeniable that the mere presence of the
12 Venezuela parties would influence the
13 discussions and would undermine the core
14 purpose of the meeting, namely, to solicit
11:27AM 15 OFAC's unencumbered views on the sales process,
16 hear the special master's perspective on why
17 OFAC cooperation with the Court's order is
18 appropriate and necessary."  And then it goes
19 on.
11:27AM 20     That's what the special master said he
21 was doing and it's why he said we needed to be
22 excluded from the meeting, because we would, in
23 the words of the special master this morning,
24 it would discourage full and frank conversation
11:27AM 25 between the special master and the executive

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

66

1  branch on the question of why OFAC cooperation
2  with the Court's order is appropriate and
3  necessary.
4      Then in our reply, and this is on page
11:27AM 5  seven of the reply, we say that the special
6  master does not respond to the Venezuela
7  parties' authority, establishing that it would
8  be a violation of judicial ethics and grounds
9  for disqualification if the special master were
11:28AM 10 to advocate for OFAC to take a particular
11 position, other than to compound the problem by
12 admitting an advocacy plan and engaging in such
13 advocacy and wrongly claiming that this Court
14 has already authorized him to engage.
11:28AM 15     We specifically raised 455(a).  We
16 specifically said that the conduct about which
17 we were complaining is a ground for
18 disqualification in that motion.  It's
19 something we held in reserve.
11:28AM 20     THE COURT:  Any reference to 455(b)?
21     MR. VERRILLI:  Yes.  We also
22 discussed 455(b)(1) because we made two
23 arguments.  455(b)(1) is about the extra-record
24 fact gathering.  455(a) is about the items.
11:28AM 25     THE COURT:  But there is a citation

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

67

1  to 455(b), you're saying?
2      MR. VERRILLI:  Yes, but here 455(a)
3  is what we're saying.
4      THE COURT:  I got that.  And you said
11:28AM 5  you quoted (a) if I got you correctly in your
6  initial motion.  I'm asking where's the
7  citation to (b).
8      MR. VERRILLI:  We also cited (b) in
9  the motion multiple times, and we cited (a)
11:29AM 10 multiple times in reply.
11     With respect to the specifics here, the
12 idea that we were holding something in our
13 pockets is completely wrong.  We said it would
14 be grounds for disqualification in the papers
11:29AM 15 we filed once it was clear to us that the
16 special master was indeed asserting he was
17 going to advocate in the matter that we thought
18 was inappropriate.  We did that.  It's clear
19 and unambiguous.  It's right there on the page.
11:29AM 20     That gets to a broader problem here,
21 which is we're having the discussions we're
22 having because these things occurred ex parte,
23 and that's what we objected to, of course, was
24 them occurring ex parte.  We understood that
11:29AM 25 the special master was going to engage with

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

68

1  OFAC.  Of course we understood that.  But we
2  didn't understand that the special master was
3  going to engage in OFAC ex parte at all, and
4  that's when we tried to document that in our
11:30AM 5  papers until we got definitive word December
6  30th that was going to happen.
7      That's the difference.  The special
8  master's papers themselves acknowledge that the
9  sales process order doesn't authorize ex parte
11:30AM 10 communication.  It authorizes communication.
11 The question of whether that would be ex parte
12 was not discussed or described, and the things
13 that we supposedly consented to were in the
14 special master's reports where he says he's
11:30AM 15 providing updates to OFAC about the status of
16 the development of the sale process.  That's
17 it.
18     And I do think, if I may just step back,
19 again, there's unclarity about the facts here,
11:30AM 20 and I recognize that, so I'm trying to be
21 careful.  But the idea that a judicial officer
22 could go into the executive branch and have a
23 secret meeting -- that's what an ex parte
24 communication is, a secret meeting -- and urge
11:30AM 25 the executive branch to change its position on

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna, Delaware 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

69

1  OFAC sanctions and then that could be perceived
2  as something that is consistent with the
3  judicial role just seems completely wrong.
4  It's a secret meeting.
5  11:31AM     And I guess the problem we're having here
6  is we don't know -- precisely because this was
7  ex parte, we don't know what was said at that
8  meeting.  The -- of course, I take counsel for
9  the special master at his word here, but what
10 11:31AM  he said, if you'll bear with me -- at one
11 point, he said that they wanted to give
12 guidance that would allow the process to move
13 forward.  If you marry that up with what --
14 with the quote I read from their papers filed
15 11:31AM  in January, there's reason to think that what
16 they did is going to say you need to prioritize
17 enforcement of this judgment, and that -- to do
18 that at all, as I said, we think is on the
19 wrong side of the line.  To do it ex parte --
20 11:32AM  and the discussion we're having here today
21 demonstrates why that's such a problem because
22 we don't know what happened in that meeting.
23      And my friend Mr. Estrada says it's
24 perfectly fine for the judicial branch to
25 11:32AM  advocate in that way.  I'll say a couple of

70

1  things about that if I could.
2      The first is that they don't cite any
3  example ever of anyone doing it with respect to
4  asking the federal government to lift sanctions
5  11:32AM  to allow a judicial order to be enforced, any
6  judicial officer ever doing it.  They don't
7  cite a single example, and they certainly don't
8  cite any case providing any support for the
9  proposition that that would be appropriate
10 11:32AM  exercise of judicial power.
11      Instead, what Mr. Estrada said was Courts
12 all the time hear about foreign policy and they
13 don't have to assume a prostrate position with
14 respect to the executive, and that's true, of
15 11:33AM  course, in the exercise of the judicial power.
16 But we're not talking about that here.  What
17 we're talking about is an effort to influence
18 the exercise of the executive power.  Congress
19 gave this power to the executive, and it's just
20 11:33AM  undeniably advocacy to the executive that it
21 change its position.  That's what it was.  If
22 we're indeed correct in our assumption, that's
23 what it was.
24      And the last point I'd make in terms of
25 11:33AM  all the discussion we've had about frustration

71

1  over delay, the delay is because of the
2  executive branch at this point.  They -- it's
3  the executive branch that's not given its okay
4  for this process to go forward.  It certainly
5  11:33AM  hasn't given license to Crystallex to allow the
6  deal to be consummated.  Maybe they'll change
7  their position on April 7th, and if they do,
8  the parties can adjust to that.  But that's the
9  essence of the problem here.
10 11:34AM     I do want to say we did not -- just to
11 conclude, a step like the one we've taken in
12 this motion is not one that we would take
13 lightly, but we really genuinely and deeply
14 believe that if indeed that type of advocacy
15 11:34AM  occurred, it's not right.  It's just not right.
16 It's not what a Court should be doing, and
17 that's why we filed the motion, and that's why
18 we made the arguments we have made.
19      THE COURT:  I certainly take you at
20 11:34AM  your word as well, and I know you didn't file
21 it lightly and you think it's a serious issue.
22 It does seem to be clear on the record, though,
23 and I don't think your side has been shy about
24 it, that you have a position that you do not
25 11:34AM  want this to go forward.  You want the

72

1  position -- the statement of interest from 2020
2  to be maintained.  You want the licenses to
3  continue being denied.  Those things are clear
4  on the record.  I'm asking as a question for
5  11:35AM  you to confirm that.  And seems to me I can't
6  ignore that and it's for me to decide if that
7  has any impact on how to resolve the motion.
8  Your response.
9      MR. VERRILLI:  Of course, that's
10 11:35AM  true, Your Honor.  As I think Your Honor knows,
11 we believe there's still unresolved legal
12 questions with respect to the underlying order
13 that the Third Circuit presumably has to
14 resolve at some point.  Our interests are in
15 11:35AM  alignment with the foreign policy judgments of
16 the United States, but that's because, as we
17 see it, the United States understands, as we
18 do, the damage that could be done to the
19 prospect of the government in Venezuela if
20 11:35AM  Citgo and its shares are cannibalized.  Yes,
21 that's our position, of course.
22      We would hope that the fact that the
23 United States, through two administrations now
24 so far, is agreeing with the legitimacy of that
25 11:36AM  view, that that should have some effect on Your

73

1 Honor's thinking about the position we've
2 taken.
3 THE COURT: I will give the other
4 parties a brief chance to add anything they
11:36AM 5 like and then you'll the last word if they have
6 anything to say.
7 MR. VERRILLI: Thank you.
8 THE COURT: Mr. Schrock, anything you
9 want to add on this motion?
11:36AM 10 MR. SCHROCK: Just very briefly.
11 Again, Ray Schrock from Weil, Gotshal, and
12 Manges for the special master.
13 Your Honor, just one correction. I was
14 notified by special master's OFAC counsel that
11:36AM 15 present at that meeting were not just the DOJ
16 attorneys but also Treasury and State were also
17 present but not OFAC, so I wasn't aware of
18 that. I wanted to clarify that.
19 And, Your Honor, I do want to make sure
11:36AM 20 we're clear to distinguish for -- we're using
21 this word of "advocacy." The special master
22 does have a view on what we need from OFAC in
23 order to have a value-maximizing process. We
24 need, you know, FAQs, as we said on the record.
11:37AM 25 We need the ability to give guidance of when

74

1 the executive branch would consider granting
2 licenses, and those are views that we have.
3 And it's perfectly appropriate for -- and
4 consistent with the mandate that we've had.
11:37AM 5 We've always had those views with OFAC. Did we
6 make those clear in the January 12th meeting?
7 Yes. Did we make them clear in prior meetings?
8 Yes. Did we tell parties previously that, of
9 course, we have views around how this process
11:37AM 10 should proceed? Yes. Have we put that on the
11 record? Yes.
12 But we weren't advocating for a policy
13 change. As far as I recall, the executive
14 branch hasn't said anything in response to the
11:38AM 15 Court's orders around the sale of anything of
16 substance. That's what we really needed, was
17 some guidance from them to take a position so
18 at least we know and can move forward on an
19 informed basis, and we think that's perfectly
11:38AM 20 appropriate and consistent with the inherent
21 power of the Court to enforce its own orders.
22 Your Honor, we haven't done anything
23 different than we have done previously. We are
24 being fair, open, and we're always attempting
11:38AM 25 to be fair to all parties. We're not

75

1 advocating on behalf of any party, but we
2 certainly have a position about what we think
3 is necessary from the U.S. government in order
4 to allow the Court's order to be implemented,
11:38AM 5 and we think that's consistent with our mandate
6 as well as see any separation of powers issues
7 or any other problems with doing that. And we
8 certainly don't think that knowledge gained
9 during that is a disputed evidentiary fact, in
11:39AM 10 just performing the role of a judicial officer.
11 That's all we have.
12 THE COURT: Mr. Estrada, anything
13 you'd like to add?
14 MR. ESTRADA: A couple of things,
11:39AM 15 Your Honor.
16 Just to clarify, our position is, and we
17 are correct, that before the meeting occurred,
18 the Venezuela parties did not file any request
19 for relief from this Court that was based on
11:39AM 20 455(b)(1). And you can search all day their
21 motion to this Court to be permitted to attend
22 the meeting for citation to 455(b)(1) and I
23 don't believe you'll find it. So I believe
24 when counsel was referring to the citation of
11:39AM 25 that provision, he was actually referring to

76

1 the current motion that he says he was raising
2 with circumspection, not to the point I made
3 about the tactical behavior that this would be
4 dawning on them a couple of weeks later after
11:40AM 5 filing the motion.
6 The second point I'll make is there's
7 amoeba-like nature to the arguments here. When
8 you talk about timeliness, we keep point out
9 that the the ex parte contacts with the
11:40AM 10 government by the special master have been
11 plain on the record for a very long time, and
12 that therefore, to the extent the motion is
13 based as it is on the fact that the special
14 master has acquired knowledge ex parte of
11:40AM 15 disputed evidentiary facts, that's waived and
16 untimely.
17 Every time the issue gets asked
18 point-blank, they shift to this question of
19 advocacy and when they learned that and whether
11:40AM 20 that's the issue, but that's not really any of
21 the statutory provisions that they're citing.
22 The statutory provisions they're citing are
23 based on the acquisition of disputed
24 evidentiary facts by the ex parte nature of the
11:41AM 25 hearing, so let's not confuse what their

77

1    complaint actually is.
2         On the advocacy point, I think we have
3    said what we have said, which is that the Court
4    has institutional interest.  The Court
5    ultimately recognizes that OFAC will rule yea
6    or nay on the sale and whatever consideration
7    OFAC may take into consideration on that, which
8    may include foreign policy, are not beyond the
9    ken of the Court to address as it does in other
10   cases.
11        THE COURT:  Thank you very much.
12   Special master, anything?
13        MR. SCHROCK:  No, Your Honor.  Thank
14   you.
15        THE COURT:  Mr. Verrilli, you can
16   have the last word on this motion.
17        MR. VERRILLI:  Just to make sure
18   we're clear about the citations to 455, I think
19   it's not open to dispute, if one reads our
20   opening and reply papers, that they make two
21   points.  The first one is that the special
22   master is engaged in ex parte gathering of
23   extra-record information, and the second is the
24   advocacy point, and they're separate.  They're
25   made in both the opening and in the reply.

78

1         I take it that in terms of the idea and
2    thought that this is strategic behavior on our
3    part, that my friends on the other side are
4    suggesting that we held something back.  Both
5    arguments are right there in the papers both
6    times, and I had thought my friend in the
7    opening argument was saying that thing we held
8    back was the advocacy argument, but I hope I've
9    demonstrated to Your Honor that that's clearly
10   not the case from what I read before.
11        And then with respect to holding back the
12   argument about extra-record judicial facts,
13   again, the papers will speak for themselves.
14   Your Honor can make a judgment about that, but
15   it's right there in black and white.
16        THE COURT:  Thank you very much.  So
17   I will have something more to say about the
18   disqualification motion sometime today, but
19   right now I've got nothing else to say on it.
20   I've heard the arguments.  They're very
21   helpful, very thorough.  I'm taking it under
22   advisement, maybe just a little while, but I'm
23   taking under advisement a little while.
24        But I do want to come to the other issues
25   I asked you to be prepared to address.  I'll

79

1    just run through these in the order that I
2    think I had listed them.
3         First, whether to unseal the billing
4    records of the special master.  We'll hear if
5    the special master has any objection to that.
6         MR. SCHROCK:  Your Honor, Ray
7    Schrock, Weil Gotshal, for the special master.
8         Fundamentally, we don't have any issue
9    unsealing the fee records.  We'll always -- we
10   may have to redact them for privilege in
11   certain circumstances, but we're fine if the
12   billing records are public.  No issues.
13        THE COURT:  Okay.  Anybody on
14   Mr. Schrock's side of the room have any
15   objection to that?
16        THE ATTORNEY:  No, Your Honor.
17        THE COURT:  Okay.  Any objection from
18   the other side of the room?
19        MR. EIMER:  Nate Eimer for the
20   Venezuela parties on this one.  We have no
21   objection to the unsealing of the records.
22        THE COURT:  This was, as you may have
23   gathered, a further inquiry from a media
24   representative.  I think after we found out
25   there was no objection to the first request, we

80

1    then got a second request, so now that I
2    understand there's no objection, I'm going to
3    order you in a timely fashion to go ahead and
4    unseal the billing records.  You may make
5    proper redactions.  And going forward, to the
6    extent there are additional bills, do the same
7    thing in terms of making public at least a
8    redacted version.  Understood?
9         MR. SCHROCK:  Will do Your Honor.
10        THE COURT:  We'll turn to probably
11   Mr. Eimer, but the next issue is the objections
12   to the ongoing expenditures.  I recognize
13   there's still a motion to quash, but on the
14   assumption that he's going to continue to spend
15   money, I know we've gotten into this pattern of
16   you write the letter and you don't seek further
17   briefing, but is there something else you would
18   like me to do?  Do you have any requests for
19   relief at this point?
20        MR. EIMER:  No.  I think Your Honor
21   denied, I think, our objections initially to
22   exceeding the $2 million cap, and we've just
23   continued the objection just to preserve it.
24   That's why we didn't ask for any further
25   briefing, so I think we're just trying to

81

1 preserve, and we can stop trying to preserve it
2 if Your Honor acknowledges that, that we're
3 just continuing the objection to exceeding the
4 $2 million cap at that point. Your Honor is
5 approving that as we go forward, if we have
6 specific objections to new petitions, we will
7 make those, and we did with respect to the
8 January 12th meeting, but that will rise or
9 fall with Your Honor's ruling on
10 disqualification. I think that's where we are
11 on the fees.
12      THE COURT: I don't want to do
13 anything that makes you think you're incurring
14 any greater risk of being found to have waived
15 an objection. In my new life, I hear a lot of
16 arguments now about whether things are
17 preserved or not. I'm content if you want to
18 continue to do what you've done. If there's a
19 way to short-circuit that, I'm also prepared to
20 say for the record that you have a standing
21 objection to every bill that comes in from this
22 point forward and you'll only write me a letter
23 if you see something that's really new, but so
24 doing is not a problem for me. So any response
25 to that?

82

1      MR. EIMER: I think I'm fine with a
2 standing objection going forward. If there's
3 something specific we need to object to, we
4 will and raise that with Your Honor, as we did
5 with respect to the fees regarding the
6 January 12th meeting. I think that's fine as
7 long as the other parties are content with our
8 standing objection being preserved to the fees.
9      THE COURT: We're going to find out
10 now. Thank you.
11      Mr. Schrock.
12      MR. SCHROCK: Your Honor, if
13 Mr. Eimer wants to have a standing objection, I
14 suppose that's fine. I would like to note for
15 the record, of course, that, consistent with
16 the Court's order, the $2 million cap only
17 applied to getting to the initial work for the
18 special master. If there are other objections
19 that they have, certainly, we'd like to hear
20 them, you know, if there are other substantive
21 issues that they have, and they can certainly
22 make those at that time. With regard to that
23 if it's the standing $2 million
24 exceeding-the-cap issue, that sounds fine to
25 me.

83

1      THE COURT: That's fine. Let me be
2 clear and talk with the other process parties.
3      Mr. Estrada, any position on that?
4      MR. ESTRADA: We don't have any
5 position on the objections that the Venezuela
6 parties have. You will not be surprised to
7 learn that my client, like any client, doesn't
8 like to pay large bills if they're unnecessary,
9 though I will note that the bills might be
10 lower if the Venezuela parties would cease
11 filing all these motions that have no merit.
12      THE COURT: Thank you.
13      And Ms. Wolf for Conoco?
14      MS. WOLF: I second Mr. Estrada's
15 point that we're all spending a lot of money
16 because of a lot of motions being made by the
17 Venezuela parties. With that said, in terms of
18 their having a standing objection on the $2
19 million cap, we, of course, have no problem
20 with that.
21      THE COURT: Mr. Elmer, anything you
22 want to add in light of all of that?
23      MR. EIMER: No, Your Honor. We're
24 fine.
25      THE COURT: All right. The next on

84

1 my list is a status report and how to proceed.
2      Mr. Schrock, I know you're at the podium.
3 I know we've covered a lot, but if there are
4 other things you think we have to cover or any
5 requests for what I should be doing or anything
6 else, now would be the time to put that out
7 there.
8      THE ATTORNEY: Thanks, Your Honor. I
9 think that we have covered, I think, ad nauseam
10 the meeting from January 12th, and that was
11 certainly part of the update. We are in the
12 process of doing the initial steps to prepare
13 the supplemental report consistent with the
14 sale procedures order, and to do that, we've
15 activated Evercore because some of the issues
16 that bear on the supplemental report and
17 whether or not to move forward are things that,
18 frankly, we couldn't do as just between
19 Mr. Pincus and his legal advisors, and we
20 needed their input to do that.
21      We are mindful not to take material steps
22 to move forward with, as that term the used in
23 the sale procedures order, without getting
24 further guidance from the Court, but simply
25 preparing the supplemental report, being

85

1  informed, thinking about all of the issues that
2  would go along with whether or not to move
3  forward with the preparation launch date and
4  the launch date itself is something that we
11:50AM 5  felt we very much needed Evercore's guidance on
6  so we have done that.
7        You know, again, the key piece for us, I
8  think, is really the U.S. government guidance
9  on -- and, you know, we're looking forward,
11:50AM 10  certainly, to learning what that is.  I think
11  having this additional time to look at that
12  guidance, weigh in on -- with our thoughts and,
13  frankly, also have some dialogue with the sale
14  process parties, it's going to be in
11:51AM 15  everybody's interest so that we're best
16  informed about putting recommendations in front
17  of the Court.  It's really all about, for us at
18  this point, the preparation of the supplemental
19  report, and we'll continue to work with the
11:51AM 20  parties.
21        THE COURT:  Okay.  I'll just put this
22  out there.  As you may know, I'm having a
23  status conference later today with several
24  other creditors, and, of course, all of you are
11:51AM 25  welcome to be there if you like.  And I don't

86

1  want to get into any real substantive
2  discussion because they're at least not here
3  officially at the moment, but one issue that is
4  front and center in their status report is the
11:51AM 5  question of whether additional judgments will
6  be added.  Is that an issue that you would
7  expect to address in your supplemental report,
8  or have you started thinking about when and how
9  the special master may like that issue
11:52AM 10  addressed, or is this just completely
11  premature, from your perspective?
12        MR. SCHROCK:  Your Honor, I do
13  believe we have that process laid out in the
14  sales procedures order, that we would have to
11:52AM 15  designate what those additional judgments are
16  not later than close to the launch date.  I
17  think, certainly, understanding how much is at
18  issue, it does bear on how much in judgments.
19  It could bear on some of the recommendations
11:52AM 20  that we make.  For instance, if there's a
21  dollar of judgments versus 6 or 8 billion, it's
22  going to weigh in on the types of
23  recommendations that we would make moving
24  forward.  So knowing -- getting clarity on
11:52AM 25  that, I think, is helpful for all parties.  And

87

1  I do know Your Honor has issued additional
2  writs of attachment on a number of additional
3  judgments, and we've been keeping track.  I
4  think that whenever Your Honor is prepared to
11:53AM 5  act on that, we'll be ready, but we do have
6  this outlined as kind of a drop-dead date in
7  the Court's process.
8        THE COURT:  Is there anything else
9  you wanted to raise at this time?
11:53AM 10        MR. SCHROCK:  Nothing else, Your
11  Honor.
12        THE COURT:  Okay.  All right.
13        Mr. Estrada, why don't you come up next
14  in the nature of a status report, if there is
11:53AM 15  anything you want to report or raise with the
16  Court.
17        MR. ESTRADA:  I don't think we have
18  anything, Your Honor, in substance about this.
19  I think we're looking forward to what the
11:53AM 20  report will be now in late April, and as was
21  our position all along, we have always thought
22  that we should get going with it.  We have a
23  position with respect to the sales parties and
24  all of that, which I think is based on my
11:54AM 25  understanding as to what the purpose of that

88

1  provision is, which I'm happy to give you now
2  or later if you like.
3        But it seems to me that for purposes of a
4  judicial execution sale, if one were to go
11:54AM 5  forward, people who have a claim to participate
6  in the process should be those that have an
7  attachment.  We have an attachment.  Nobody
8  else does.  Your Honor has issued a number of
9  orders that are labeled conditional attachment
11:54AM 10  I think are legally, in fact, issuing tickets
11  for people for a place in line should
12  attachments ever be permitted again.  And at
13  least as I see it, if there is a judicial sale
14  and there is more than is needed to pay our
11:54AM 15  judgment, there will be a leftover.  And in
16  ordinary circumstances, people may seek to
17  attach that or it would go to the debtor.
18        It would not ordinarily be the case that
19  people who have no attachments are, in effect,
11:55AM 20  general creditors of the debtor of whom, for
21  all we know, there might be millions around the
22  world.  All get to share on whatever is
23  leftover.  It's not really a fight, but it does
24  seem to me in terms of keeping the process
11:55AM 25  manageable and whether you're going to add the

89

1    sales process parties, I think it is mindful
2    that it is a judicial sale of attached assets
3    and that people who might have a claim to the
4    remainder, as it were, should be those who have
11:55AM 5    a property right that is secondary to ours and
6    rather than simply being a general creditor who
7    may some time get an attachment I can give
8    someone.
9           And I say that not because, necessarily,
11:55AM 10   it bears on the pecuniary interest of my client
11   because we're first in place but merely because
12   it may bear on the manageability of the process
13   if people get added who actually have no
14   attachment and no property right but who want
11:56AM 15   to have a voice in process.  And we saw that
16   and we have some of our objections when we
17   dealt with recent motions to intervene, and
18   that has been part of our concern, that we keep
19   the process manageable for the execution of
11:56AM 20   judgment that we've been fighting all these
21   years.  That's my view on that.
22          THE COURT:  Okay.  Thank you.
23          I'm going to let any other creditors
24   speaks and then we'll turn to the Venezuela
11:56AM 25   parties.

90

1           MS. WOLF:  Amy Wolf on behalf of
2    ConocoPhillips.
3           Your Honor, I think the likelihood that
4    Mr. Estrada's client will see this asset sold
11:56AM 5    and proceeds to go to Crystallex before OFAC
6    has addressed ConocoPhillips' longstanding
7    request to be able to attach -- ConocoPhillips
8    is the only creditor here which is actually a
9    creditor of PDVSA.  We are a general creditor,
11:57AM 10   and we've been in this process.  We're paying
11   for this process.  We would like to be added
12   sooner rather than later just for clarity.
13          If the Court the going to consider adding
14   other additional judgments, I do think
11:57AM 15   ConocoPhillips stands in a somewhat different
16   position.  It received the first conditional
17   writ and is a PDVSA creditor directly.  But if
18   other parties who are receiving alter ego
19   judgments are going to be added as additional
11:57AM 20   judgment creditors, we might need to think
21   about how the Court is going to rank what is
22   now becoming a very significant number of very
23   substantial claims.  So that's our one
24   suggestion, first of all, to deal with who is
11:58AM 25   going to be in the judicial judgment and

91

1    ConocoPhillips thinks it should be the first of
2    those and then how it would deal be priority
3    ranking termed among those creditors.
4           THE COURT:  Thank you.
11:58AM 5           MR. ELLIS:  Thank you.  Justin Ellis,
6    MoloLamken for Red Tree Investments.
7           I'm mindful, of course, that Your Honor
8    has denied our request to intervene.  We, of
9    course, respectfully disagree with that and
11:59AM 10   have taken appeal to the Third Circuit.  We
11   will see what the court of appeals says, but we
12   also understand in your order denying
13   intervention you still reiterated that we would
14   be free to offer input in your suggestions, and
11:59AM 15   we're offering a few points in that spirit.
16          First, I do understand from Mr. Schrock
17   that the United States will provide its views
18   as to the applicability of sanctions here and
19   provide that guidance by the 7th of April and
11:59AM 20   that he will then provide his supplemental
21   report, if possible, by the 30th.  We would
22   just ask if possible that we would have access
23   to that letter and have some opportunity to
24   participate in that discussion with the special
11:59AM 25   master and the sale process parties if we

92

1    could.
2           THE COURT:  To the extent you're
3    asking for -- let me ask Mr. Schrock.
4           I suppose I just assumed that the
11:59AM 5    supplemental report would be filed on the
6    docket.  Is that what you would anticipate?
7           MR. SCHROCK:  Yes, Your Honor.
8           THE COURT:  Thank you.
9           So you're going to have access to the
12:00PM 10   supplemental report just as everyone will.  To
11   the extent you're asking for something further,
12   and it sounds like the intervention that I
13   denied, you're free to call up Mr. Schrock any
14   time you want, but I'm certainly not here to
12:00PM 15   grant the motion with all the rights that would
16   attach to it that I've already denied.
17          MR. ELLIS:  Understood, Your Honor,
18   and we have been in consultation with the
19   special master and will continue to do so.
12:00PM 20          I'd also like to make a point about the
21   launch process.  We generally agree that the
22   launch that the sales process should move
23   forward as far as it can in accordance with
24   applicable sanctions.  We think there are steps
12:00PM 25   that the Court and special master could take

93

1  that are not going to be a transfer of property
2  in a meaningful sense and would be broadly
3  supportive of that.
4      In that vein, we do think it would be
5  appropriate to try to sort out when we can
6  which judgments are going to be additional
7  judgments.  I know briefly Mr. Estrada
8  suggested that what judgments should be
9  additional judgments is a matter of property
10  law.  We don't think that's correct.  We note
11  that the sales procedure order simply says it
12  will be decided in accordance with applicable
13  law, and we look forward to briefing that
14  issue.
15     Finally, I note on the priority issue,
16  because Ms. Wolf raised it, certainly that will
17  be an important issue.  Given the number of
18  creditors that are going to come in the door
19  and already have on an alter ego basis, I would
20  be concerned at this point.  It may be in the
21  nature of an advisory opinion to try to sort
22  out priority which people have objected
23  strenuously on the precise number of judgments
24  we may have and which judgments may be
25  enforceable is still an open question, but,

94

1  again, we can address that at an appropriate
2  time.
3      THE COURT:  Anybody other than the
4  Venezuela parties in the room that wants to be
5  heard in the nature of status?
6      Okay.  I don't see anybody.  So we'll
7  hear now from Mr. Eimer.
8      MR. EIMER:  Nate Eimer for the
9  Venezuela parties.
10     I'm not sure, Your Honor, who's going to
11  be more surprised, Your Honor or Mr. Estrada,
12  when I say that I pretty much agree with
13  Mr. Estrada's view on these conditional
14  attachments.  This is a judicial sale.  We're
15  inevitably going to need briefing on these
16  issues, I think.  This is a judicial sale under
17  324.  There's only one attachment that's
18  recognized by law.  The Court has authority
19  only to sell property to satisfies the judgment
20  that resulted in the attachment.  And it makes
21  a huge difference.  According to Bloomberg,
22  Citgo was valued last week at $13-some billion
23  dollars.  Section 324 only allows the Court to
24  sell sufficient assets to satisfy their
25  $1 billion, $900 million attachment.  That's

95

1  it.  You can't sell the whole company to
2  satisfy 10 percent or 8 percent of the value of
3  the company.  That would be a significant
4  discussion.  I assume we're going to need
5  briefing on this issue, and it will probably
6  come up this afternoon in the same way, but
7  that's our argument on that.
8      I did want to comment on one other thing,
9  unless Your Honor has a question to me about
10  that.
11     THE COURT:  No.  My only question is
12  going to be do you have other things you want
13  to talk about.
14     MR. EIMER:  Just one other.  I think
15  there's a gap in the authorization papers, and
16  I mentioned this to Mr. Schrock.  When he said
17  that the special master was activating
18  Evercore, the Evercore agreement only allows
19  them to be paid once the sales process was
20  launched and they get a monthly allowance.
21  There is no provision to pay them now because
22  the sales process is not launched, at least
23  that's the way we understand it.  So I'm fine
24  to have Evercore working without compensation.
25  I doubt if they want to.  They're probably more

96

1  expensive than Mr. Estrada, but I think there
2  needs to be some provision if they expect to
3  get paid because there is none now.  I don't
4  think it's appropriate, given the fee
5  arrangement that the Court approved, which
6  doesn't allow the monthly compensation they're
7  entitled to once the launch happens to start
8  before that point.  So I just wanted to clarify
9  that.
10     THE COURT:  Thank you for flagging
11  that.
12     Mr. Schrock, I don't know if you had a
13  chance to think about that or represent whether
14  they're willing to work for free or where we
15  are.
16     MR. SCHROCK:  Thanks, Your Honor.
17  So, yes, we did see Mr. Eimer's latest
18  correspondence to us in another objection to
19  fees relating to Evercore.  I believe that the
20  Evercore letter -- certainly, whatever
21  objections he has to Evercore being paid, we'll
22  deal with.  I don't think there is a gap in the
23  engagement letter or the Court's order.  Once
24  we notify parties that we're making
25  preparations -- and certainly we are -- for the

97

1  supplemental report, the sales procedures order
2  contemplates that we may weigh in on certain
3  issues relating to whether or not to launch the
4  process, how -- we're certainly interested to
12:05PM 5  know, for instance, about the market, you know,
6  thoughts that, you know, would be within the
7  purview of an investment banking professional
8  related to that process.  We're not taking
9  material steps, but we certainly are taking
12:05PM 10  preparations.  We think we are complying with
11  the letter of Evercore's engagement, if they
12  have an objection on that.
13        I don't think Evercore is planning on
14  incurring monthly fees.  I think they were
12:06PM 15  planning on being paid monthly fees, and that's
16  certainly our expectation that while they're
17  activated and working, they're going to get
18  paid a monthly fee.  Of course, to remind
19  everybody, we can certainly deactivate Evercore
12:06PM 20  as well, and there's a process for doing that
21  if we're not moving forward with the process,
22  but we saw this, as for the moment, making the
23  supplemental report.
24        THE COURT:  If I understand
12:06PM 25  correctly, your view is that you're already

98

1  authorized to have them incur the monthly
2  expenses.
3        MR. SCHROCK:  Once we give notice,
4  yes, Your Honor.
12:06PM 5        THE COURT:  You've given notice, I
6  think you've told us.
7        MR. SCHROCK:  Yes.
8        THE COURT:  They're expecting to get
9  paid on that monthly rate.
12:06PM 10        MR. SCHROCK:  Correct.
11        THE COURT:  But presumably, and I
12  guess confirm this, if your recommendation is
13  not to go forward and/or I decide not to go
14  forward, you will deactivate them and then they
12:07PM 15  stop incurring any fees.
16        MR. SCHROCK:  That's correct, Your
17  Honor.
18        THE COURT:  Thank you for making
19  clear that position.  Sounds like you had a
12:07PM 20  different position.  I'm not going to be
21  prepared to probably resolve it now if you want
22  to say any more you can.
23        MR. EIMER:  I think our understanding
24  of the fee agreement is different.  I'm not
12:07PM 25  saying they shouldn't get paid.  I don't think

99

1  there's an authorization to pay them.  I don't
2  think their monthly fees should start at this
3  point.  I don't think we want to pay for that.
4  If they're working for a few hours, they should
12:07PM 5  get paid.  I agree with that.
6        THE COURT:  I suggest you all
7  continue to confer on this and, obviously,
8  include Evercore.  If you don't, I anticipate I
9  may get one of the materially different
12:07PM 10  objections the next time I see a bill.
11        MR. SCHROCK:  Ray Schrock for the
12  special master.
13        We're happy to confer on it.
14  Respectfully, my experience on trying to
12:08PM 15  resolve fee issues with the Venezuela parties
16  doesn't result in an agreement, but we need
17  Evercore for the supplemental report.  We've
18  activated them.  We want them to be paid.  If
19  Venezuela -- if the Venezuela parties have an
12:08PM 20  objection to that or we need to clarify it,
21  we'll certainly do that.
22        THE COURT:  Okay.  Thank you.  I will
23  tell you what my plan is and give you all a
24  chance to weigh in with anything further if you
12:08PM 25  want to.  I have another hearing at 1:00 and

100

1  then the status conference at 2:30.  I may be
2  able to rule on the motion to disqualify later
3  today, but I'm going to need time to think
4  about what I heard and to gather my thoughts,
12:08PM 5  so I'm going to reconvene this Crystallex sales
6  process parties proceeding at 3:30 today.  If
7  folks can't stay, that's fine, just to have at
8  least one of you for each party, please, to be
9  here.  I don't anticipate anymore argument or
12:09PM 10  questions.  I anticipate giving you a ruling or
11  telling you I don't have a ruling, but that
12  will be at 3:30 today.
13        In light of that, anything else?  I'll
14  run through you all one more time.
12:09PM 15        Mr. Schrock, anything further?
16        MR. SCHROCK:  Nothing further.  Thank
17  you.
18        THE COURT:  Mr. Estrada?
19        MR. ESTRADA:  Nothing further at this
12:09PM 20  time, Your Honor.
21        THE COURT:  Ms. Wolf?
22        MS. WOLF:  No, Your Honor, thank you.
23        THE COURT:  Anybody else over here?
24  Mr. Eimer?
12:09PM 25        MR. EIMER:  No, Your Honor.

101

1    THE COURT: Mr. Verrilli, anything
2    else?
3        MR. VERRILLI: No, Your Honor.
4        THE COURT: Thank you all very much.
12:09PM 5    (A recess was taken, after which the
6    following proceedings were had:)
7        THE COURT: We're back here in the
8    Crystallex action, and in an abundance of
9    caution, I want to make sure you put your
03:35PM 10   appearances on the record to make sure you're
11   all present.
12       MR. MOYER: Good afternoon, Your
13   Honor. Jeff Moyer from Richards, Layton, and
14   Finger on behalf of Crystallex, and I'm joined
03:35PM 15   this afternoon by Miguel Estrada from Gibson
16   Dunn.
17       THE COURT: Thank you.
18       MR. SCHNEIDER: Good afternoon, Your
19   Honor. Abraham Schneider from Potter,
03:35PM 20   Anderson, and Caroon on behalf of Special
21   Master Pincus. With us again is Ray Schrock
22   and Chase Bentley from Weil Gotshal.
23       THE COURT: Okay.
24       MR. SCHROCK: Good afternoon.
03:35PM 25       MS. CUMINGS: Hello again, Your

102

1    Honor. Ali Cumings of Morris Nichols on behalf
2    of PDV Holdings and Citgo, and with me is Nate
3    Eimer from Eimer Stahl.
4        THE COURT: Good afternoon.
03:36PM 5        MR. HIRZEL: Good late afternoon,
6    Your Honor. Sam Hirzel from Heyman Enerio.
7    With me in the courtroom are Juan Perla, Kevin
8    Meehan, and Aubre Dean from the Curtis Mallet
9    firm.
03:36PM 10       MR. MORITZ: Good afternoon, Your
11   Honor. Garrett Moritz from Ross Aronstam on
12   behalf of ConocoPhillips, and I'm joined in the
13   courtroom by from Wachtell Lipton Amy Wolf,
14   Ricky Mason, and Michael Cassell and also from
03:36PM 15   Kobre and Kim, Marcus Green.
16       THE COURT: All right. Good
17   afternoon again to all of you. Thank you all
18   for sticking around and returning. It's late
19   afternoon. I am going to give you my ruling on
03:36PM 20   the pending motion to disqualify, and it will
21   be somewhat later in the afternoon by the time
22   I'm done telling you my reasoning. I have a
23   little bit to say to explain, but let me get to
24   it.
03:37PM 25       I will add, as I think I did this

103

1    morning, the argument was extremely helpful and
2    I was very pleased to have it. I had a lot of
3    questions that were all very thoroughly
4    answered, which has helped me get to this point
03:37PM 5    where I can rule on the motion.
6        The motion, again, is the Venezuela
7    parties' motion to disqualify the special
8    master. For the reasons I will explain at some
9    length, the motion is denied.
03:37PM 10       First, as all parties recognize in their
11   extensive briefing, the motion is largely a
12   rehash of the Venezuela parties' motion to be
13   included in the special master's January 12th
14   meeting with OFAC, a motion I denied, and I
03:37PM 15   should say I will refer to that as the OFAC
16   meeting or January 12th meeting, even though we
17   learned today that OFAC was apparently not
18   present at the meeting.
19       My denial of the motion for
03:37PM 20   disqualification today is based on,
21   essentially, the same reasoning that I gave in
22   denying the meeting-related motion, but I do
23   want to expound on that reasoning. The first
24   basis for denying the motion is that the burden
03:38PM 25   to prevail on it is on the moving party to show

104

1    bias or some other reason for disqualification,
2    and it is a substantial burden, and the
3    Venezuela parties simply have not met it.
4    There is no evidence before the Court that the
03:38PM 5    special master engaged in advocacy in the OFAC
6    meeting. There's no evidence, in particular,
7    that he advocated for a change in U.S. foreign
8    policy or advocated for Crystallex to be
9    granted a license.
03:38PM 10       So one, but not the sole, ground on which
11   I'm denying the motion is the failure of proof
12   by the Venezuela parties. In my mind, that is
13   a denial on the merits, and I will have a
14   little more to say on the merits, but I now
03:38PM 15   want to say something about some of the
16   procedural bases on which I'm denying the
17   motion as well.
18       The first one is that to motion to
19   disqualify, in my view, is untimely. This is a
03:39PM 20   basis to deny the motion on all the grounds on
21   which it is asserted; that is, section 455(a),
22   Section 455(b), Canons 2 and 3 of the Code of
23   Judicial Conduct, and the due process clause of
24   the Fifth Amendment.
03:39PM 25       I don't think it's disputed that there is

105

1    a timeliness requirement for filing such a
2    motion.  The Third Circuit said as much in
3    common *Kensington*.  Parties seeking
4    disqualification in Section 455(a) should do so
5    in a timely manner.  And then in a case called
6    *Stonehenge Properties*, the Third Circuit also
7    noted that there is a timeliness requirement
8    for a disqualification motion under section
9    455(b).
10       Here the motion is untimely because the
11   grounds for it were known to the moving parties
12   for at least many months prior to the filing of
13   their motion.  A good summary of the relevant
14   timeline showing that all the parties have
15   known since approximately May of 2021 that the
16   special master had engaged OFAC counsel and was
17   in ex parte communication with OFAC is set out
18   in Crystallex's response to the motion, DI 513
19   at pages 3 to 5.  The ex parte meetings,
20   including what the Venezuela parties now refer
21   to as advocacy, to the extent those are two
22   different grounds for the motion, ex parte
23   meetings and advocacy, both of these things, as
24   properly understood, were contemplated
25   throughout the process of negotiating and

106

1    litigating the sales procedures order, which
2    was adopted in October 2022.  And this gave
3    rise to the notice, actual notice, to the
4    moving parties that the concerns they belatedly
5    raised could and should have been raised much
6    sooner.
7        So for example, the special master met
8    with OFAC ex parte three times in the summer of
9    2021.  There's support for that at DI 348
10   paragraphs 39 and 40.  On November 8, 2021, we
11   had, I think, a hearing that was longer than
12   today's hearing, and among other things we
13   discussed that the special master would
14   communicate with OFAC ex parte, as he
15   previously had done.  There was no reference to
16   potential disqualification of the special
17   master or grounds for seeking his
18   disqualification, even though also on the
19   agenda that day was a motion to disqualify one
20   of the advisors to the special master.  The
21   transcript of that ruling -- or I'm sorry that
22   whole proceeding, I think, is at DI 409.
23       In my March 2022 opinion, DI 443
24   particularly at page 17, I noted that the sale
25   procedure order I would adopt would include a

107

1    six-month window and during the six-month
2    window, the special master will be directed to
3    use his best efforts to obtain guidance from
4    OFAC, making no mention that such meetings
5    would be anything other than ex parte, as all
6    such meetings up to that point had been.
7        I then entered the sale procedure order
8    on October 2022 and expressly contemplated the
9    special master proactively engaging with OFAC
10   and included that six-month window.  "Within
11   six months" -- I'm adding some words to the
12   quote -- "he shall solicit and attempt to gain
13   clarity and guidance from OFAC in support for
14   or not -- of its support for or not opposition
15   to the launch of the marketing process."  You
16   can see these provisions at DI 481, Exhibit 1,
17   paragraphs 3 and 4.
18       In the status report of October 4, 2022,
19   the special master confirmed he does not intend
20   to include the Venezuela parties at such a
21   meeting.  That's DI 480 at two, note two.
22   There's no indication anywhere in the sale
23   procedure order that the special master's
24   communications with OFAC needed to include any
25   other parties, and there was no reason for any

108

1    sales process party to believe that they would
2    be involved or invited to attend the meeting.
3        Let me say something about advocacy.  I
4    think when the special master used this word in
5    this context, I think he meant, as his counsel
6    explained today, that he conveyed to OFAC his
7    view that in order to conduct a
8    value-maximizing transaction, which in his view
9    is in the interest of all parties, he, the
10   special master, and ultimately the Court needs
11   clarity from the U.S. government as to whether
12   it will or will not or may exercise its sole
13   authority at the end of the process to grant a
14   specific license, a license which will be
15   required under the current sanctions regime
16   before a sale transaction can be consummated.
17   That's what I think he meant by "advocacy."
18       I don't think "advocacy" is really the
19   right word for that, but whatever word he used,
20   the moving parties have not proven that it was
21   materially different than the types of things
22   the special master did at the earlier ex parte
23   meetings with OFAC, nor have the moving parties
24   persuaded me that there's anything wrong with
25   what the special master did, whether we call it

109

1    advocacy or something else.  Which, by the way,
2    everything he did, he did at my express
3    direction.  I think it's important to keep in
4    mind the context here.
03:45PM  5          As Crystallex emphasized in argument
6    today, while we do have certain views of the
7    United States government on what's going on in
8    this process, they're somewhat outdated, and
9    they're expressly time bound.  So in July 2020,
03:45PM 10    we received the statement of interest on behalf
11    of the United States government stating a
12    preference that the Court halt the prefatory
13    steps it was taking towards the sale.  As is
14    entirely understandable and reasonable, that
03:45PM 15    position was the position of the United States
16    government, quote, at that time.  It may well
17    still be the position of the United States
18    government, but in my view, there's absolutely
19    nothing improper about inquiring as to whether
03:46PM 20    it's still their view.  It's not advocacy.
21    There's nothing improper about it.
22          Similarly, the denial without prejudice
23    that Crystallex requests for a specific license
24    was based on, as it had to be, circumstances at
03:46PM 25    that time, and I believe the letter expressly

110

1    notes that it's a denial without prejudice to
2    ask again and a denial at this time or at that
3    time.
4          The government's position could change at
03:46PM  5    any time, and, very importantly, this is
6    another important part of the context I think I
7    made repeatedly clear, I entirely respect and
8    understand that unless the current sanctions
9    regime is changed, it will be for the executive
03:46PM 10    branch and only the executive branch to
11    ultimately decide whether to grant the license
12    or licenses necessary for a sales transaction
13    to be completed and for the Court's judgment to
14    eventually be enforced.  That is up to them.
03:47PM 15    Nothing a special master says or anything I say
16    or do will change that.  And I think everything
17    that the special master does or says or has
18    done or said has to be understood in that
19    context.
03:47PM 20          We well understand and respect that the
21    last call, ultimately, will be for the
22    executive branch and so, of course, nothing he
23    says and nothing I say will be intended to try
24    to suggest anything to the contrary.  There is
03:47PM 25    no evidence that the special master engaged in

111

1    the type of advocacy the moving parties contend
2    would be inappropriate, and because of that, I
3    need not resolve today the dispute which -- I
4    think there is a dispute in the room as to
03:47PM  5    whether it would be inappropriate for the
6    special master to have engaged in the kinds of
7    advocacy that were alleged.  At least
8    Crystallex, I think, argues that it would not
9    be.  I don't need to decide that dispute today.
03:48PM 10    There's no evidence that he did anything that
11    would be improper.
12          So that was a lengthy side note on what
13    are we talking about when we say "advocacy,"
14    but I still am trying to articulate why I think
03:48PM 15    the motion to disqualify the special master was
16    untimely.  And the first point for that is I do
17    think everything that occurred since at least
18    May of 2021 is relevant to understanding the
19    timing.
03:48PM 20          But I now want to say in the alternative,
21    if you wipe all of that away and only look at
22    what happened from December 28, 2022, to the
23    filing of the motion in front of me today on
24    January 23, 2023, if you only look at that time
03:48PM 25    frame, I still think the motion, as an

112

1    alternative basis for my ruling, is untimely
2    and sufficiently untimely that it is denied on
3    that basis as well.  I do view the facts of
4    what happened in late December and early
03:49PM  5    January of this year as, essentially,
6    undisputed at this point.  By December 28th of
7    last year, the Venezuela parties knew that the
8    special master would meet with OFAC sometime in
9    January and knew that the special master had
03:49PM 10    not coordinated with them, asked about their
11    schedule, to figure out what day in January
12    they should meet.
13          As best as the record can tell, you
14    didn't even contact them about setting up the
03:49PM 15    meeting with OFAC, and so by December 28th,
16    particularly given the pattern of the special
17    master's meetings with OFAC being ex parte and
18    the sale procedures order not doing anything to
19    change that, I think by December 28th, the
03:50PM 20    Venezuela parties had actual knowledge that
21    there would be a meeting in January and it
22    would be ex parte between the special master
23    and the Venezuela parties.  If the Venezuela
24    parties really believed that that was going to
03:50PM 25    be grounds, ultimately, for disqualification of

113

1   the special master, a special master on whom,
2   as we've heard today, they spent a lot of money
3   on and I, of course, spent a lot of time giving
4   assignments to and having vested my authority
03:50PM 5   in, if they really thought that was going to be
6   meritorious grounds for disqualifying the
7   special master, I think that's an emergency
8   that requires contacting the Court or doing
9   your level best to contact the Court within a
03:50PM 10   day, two days maybe, three days at most.
11       I'm not saying that you necessarily have
12   to have fully coordinated amongst all
13   yourselves and have written a nice brief, but
14   if you think you're in good faith sitting on an
03:51PM 15   issue that could mandatorily require me to
16   disqualify the special master, I don't think
17   you can wait from December 28th until
18   January 9th without even contacting the Court
19   and giving it a hint that there is this kind of
03:51PM 20   emergency.
21       Of course, at that point, January was
22   undefined.  There was no specific date, or at
23   least the parties had no knowledge at that
24   point as to January and January 12th, so could
03:51PM 25   have meant presumably not January 1st but maybe

114

1   January 3rd.  I just don't think you can sit on
2   that kind of an issue for that many days
3   without even contacting the Court.
4       Time went on.  On December 30th, the
03:52PM 5   special master let the Venezuela parties know a
6   meeting was scheduled for January 12th
7   specifically.  Again, they knew or absolutely
8   should have known, based on the pattern and
9   practice and sale procedures order, that that
03:52PM 10   meeting would be ex parte, and that was
11   expressly confirmed on January 3rd, and it was
12   also on January 3rd, evidently, that the first
13   use of the word "advocate" came up, although I
14   think that should have been understood from at
03:52PM 15   least December 28th, if not well before that.
16       Anyway, even if -- and I don't think this
17   is the best way to see it -- even if the clock
18   started ticking only on January 3rd, you can't
19   wait from January 3rd until January 9th to
03:52PM 20   contact the Court if you want to seek relief
21   that becomes moot on January 11th or the
22   morning of January 12th, particularly when the
23   stakes are this high and this much money has
24   been spent on the special master, this much
03:53PM 25   litigation has gone into directing the special

115

1   master what to do.
2       At best for the Venezuela parties, they
3   knew a meeting was scheduled to occur 13 --
4   they knew for 13 days and they let 10 of those
03:53PM 5   days lapse before contacting the Court or
6   seeking any relief.  They took up 10 of
7   13 days, which by my calculation is 77 percent
8   of the potential time I had to hear about the
9   dispute, get briefing on it, review the
03:53PM 10   briefing, analyze the issue, make a decision,
11   and articulate the decision.
12       I recognize there's not a lot of case
13   law, if any, that says waiting a matter of days
14   makes a motion to disqualify untimely, but I do
03:54PM 15   think the circumstances here are, perhaps,
16   unique and extreme enough that the pace at
17   which the Venezuela parties moved, even if I
18   don't start the clock until December 28th, was
19   simply too slow, and I would say substantially
03:54PM 20   too slow.  I certainly don't believe that the
21   Venezuela parties moved as swiftly as was
22   reasonably practical.  And I do think in this
23   context, the delay was substantial, as the
24   Third Circuit cases require for all the reasons
03:54PM 25   I've just explained.

116

1       And I also have reluctantly concluded
2   that the delay was strategic; that is, I think
3   the way the Venezuela parties have handled the
4   issues relating to the OFAC meeting, the relief
03:54PM 5   that they've sought, first with respect to the
6   meeting itself and now to disqualify the
7   special master, I do believe it has a -- at
8   least a substantial element of being tactical
9   and designed with at least a partial goal of
03:55PM 10   further delaying these proceedings.
11       As Mr. Estrada observed this morning --
12   and I've had occasion to go back, of course,
13   and review the briefing again on the original
14   motion directed to the January 12th meeting --
03:55PM 15   the argument that after the meeting the special
16   master must mandatorily be disqualified because
17   he is in possession of some otherwise
18   undisclosed information, factual information on
19   a disputed issue, is at best -- and being
03:55PM 20   generous to the Venezuela parties -- at best
21   hinted at in the briefing on the first motion.
22   There's no explicit reference to Section
23   455(b)(1), which is one of the significant
24   bases for the disqualification motion.
03:56PM 25       And I think no persuasive basis has been

117

1  given for why the moving parties did not make a
2  455(b)(1) argument in their efforts to modify
3  the meeting parameters, which leads me, again,
4  reluctantly, to the conclusion that at least
03:56PM 5  part of their motivation was to hold an
6  argument in reserve to throw at the Court weeks
7  after the meeting as a potential basis to
8  compel the Court to disqualify his special
9  master.
03:56PM 10  And it probably goes without saying, but
11  if I disqualify the special master, it will set
12  back and further delay these already delayed
13  proceedings, perhaps by quite a lot, and so it
14  may also lead and it may also have led, had I
03:56PM 15  been persuaded to do that, to an argument that
16  I should be disqualified.  And while I'm
17  confident other judges could effectively, of
18  course, preside over these actions, I have the
19  years of experience invested in it now, and it
03:57PM 20  would no doubt delay things substantially if we
21  needed to resign this matter to another judge.
22  So I think that all of that, that
23  potential to really substantially slow down
24  these proceedings even further by going after
03:57PM 25  the special master, potentially asking to

118

1  remove me, was at least part of what was going
2  on in the timing, the very, in my mind, unduly
3  delayed timing of these motions.
4  All of the reasons that the motion
03:57PM 5  directed to the meeting was untimely apply
6  equally, if not more so, to the motion to
7  disqualify, which, of course, was not filed
8  until January 23rd after the meeting.  It is,
9  at least, as I say, as untimely as the motions
03:58PM 10  meeting itself.  That's all I had to say about
11  timeliness.
12  As a further reason for denying -- for
13  granting -- as a further ground for denying the
14  motion to disqualify, I do believe that the
03:58PM 15  bases on which the Venezuela parties seek
16  disqualification of the special master are
17  waived.  Really, the same analysis as to the
18  timeliness.  Because the moving parties have no
19  evidence that the ex parte meeting on
03:58PM 20  January 12th was materially different than all
21  of the prior meetings given the course of how
22  we got to January 12th, I conclude that the
23  Venezuela parties' long-time acquiescence in
24  the special master's ex parte engagement with
03:58PM 25  OFAC, which was materially similar to what he

119

1  had done repeatedly before, I find that that
2  also constitutes a waiver of their right to
3  seek disqualification of the special master
4  based on that meeting.
03:59PM 5  Further, just a little bit more on why
6  the motion fails on the merits.  If the timing
7  argument and the waiver are not enough, I find
8  that as, I've already said, there's no
9  sufficient evidence to grant the motion.  Let
03:59PM 10  me add to that.  Specifically under 455(a), I
11  find the special master's and my impartiality
12  cannot be reasonably questioned.  A reasonable
13  person with knowledge of all the facts would
14  not conclude that his or my impartiality might
03:59PM 15  be reasonably questioned.  The Court has
16  authorized the ex parte meetings which the law
17  permits me to do.  The special master's opening
18  brief opposing this motion at pages 9 to 11 and
19  the letter filed by ConocoPhillips, DI 522 at
04:00PM 20  pages 3 to 4, set out how Federal Rule of Civil
21  Procedure 53 and various cases applying that
22  rule approve of judges authorizing ex parte
23  communications by a special master with the
24  Court or a party.  That's the express language
04:00PM 25  of Rule 53, and that language has been -- as

120

1  explained in those filings and in the cases
2  cited, that language has been interpreted to
3  include the Court's ability to authorize ex
4  parte communications with third parties.
04:00PM 5  I am persuaded that these authorities
6  make my order lawful and that the challenging
7  facts and circumstances I am confronting in
8  this case make my order reasonable and
9  necessary.  There is nothing improper or
04:00PM 10  anything a reasonable person would think
11  improper in the special master assisting the
12  Court in its efforts to enforce judgments that
13  have been entered and affirmed, and no
14  reasonable person would think that there is
04:01PM 15  anything improper or giving rise to a
16  reasonable basis to question impartiality in
17  using the special master in this way and in him
18  following my direction to do so.
19  In addition to Rule 53, the Court does
04:01PM 20  have an inherent power to enforce its own
21  judgment and to issue orders as necessary to
22  make its judgments effective.  That proposition
23  is supported in many places, but among others,
24  in the *Peacock* decision of the Supreme Court
04:01PM 25  516 U.S. at 356.

121

1       As for the 455(b) grounds, the special
2   master does not, nor do I, have any personal
3   knowledge of disputed evidentiary facts
4   concerning the proceeding, which is what must
04:02PM 5   be shown and has not been shown for
6   disqualification under 455(b).
7       There is not and will not be any dispute
8   as to what OFAC's position is. We're not going
9   to litigate that. OFAC will tell us its
04:02PM 10  position or it won't tell us its position, and
11  we will all accept that is their position or
12  they're not going to tell us what their
13  position is. That's not the kind of issue.
14  It's not a factual dispute over an evidentiary
04:02PM 15  fact concerning this proceeding that the rule
16  is concerned with.
17      So for all of those reasons, my decision
18  is to deny the motion to disqualify. I will
19  give you a chance to tell me if you have any
04:02PM 20  questions about my rulings, but I want to say
21  one further thing before you do. I would like
22  to set up, though I do want to get your views
23  on this, I would like to set up a regular
24  meeting with the special master, ex parte
04:03PM 25  meeting for myself, perhaps on a monthly or

122

1   every-two-month basis. I don't want them to be
2   secret meetings. I don't think there have been
3   any secret meetings, but I don't want there to
4   be any doubts that, you know, every month,
04:03PM 5   every two months, whatever it is, on a schedule
6   that I would propose be shared with the
7   parties, he and I and potentially his advisors
8   are going to meet.
9       I am open to suggestions that perhaps I
04:03PM 10  need to have a court reporter there to take
11  down a confidential record that would be sealed
12  until some further order, presumably from an
13  appellate court, saying this needs to be
14  unsealed. I would consider doing that. I
04:04PM 15  would consider doing either alternatively or in
16  addition that the special master gives you all
17  an agenda of what he plans to talk to me about
18  and maybe writes a short summary of what was
19  discussed, but I do think -- and this is not
04:04PM 20  meant to suggest that I already know we're
21  going forward. I don't know we're going
22  forward. I don't know what OFAC is going to
23  say. I don't know what the special master is
24  going to say. I don't know what positions
04:04PM 25  you're all going to take.

123

1       But I can say it's challenging not
2   knowing when this case or these cases are going
3   to need my attention, and I know that's
4   inherent in litigation. You all don't probably
04:04PM 5   know either, but it will be helpful to me to
6   know that I have a sort of regular opportunity
7   to check in with the special master and
8   hopefully not be surprised by emergency motions
9   and things that really require my attention
04:05PM 10  when it may not be the most opportune time.
11      I'm going to give you all time to talk
12  amongst yourselves on that and get back to me
13  with your views on it, but that is something
14  I'm interested in setting up.
04:05PM 15      With that -- and I don't want anymore
16  argument. We had a lot of argument today. If
17  you have any questions about anything I said
18  and particularly my ruling, I'm happy to hear
19  it. Let me start with Mr. Schrock.
04:05PM 20      MR. SCHROCK: Thanks very much, Your
21  Honor. No questions.
22      THE COURT: Mr. Estrada?
23      MR. ESTRADA: No questions on your
24  ruling, Your Honor.
04:05PM 25      THE COURT: Ms. Wolf back there?

124

1       MS. WOLF: None thank you.
2       THE COURT: Mr. Eimer?
3       MR. EIMER: None for us, Your Honor.
4       THE COURT: Anybody else?
04:05PM 5   So let's do this. Let me have the sales
6   process parties meet-and-confer and get me a
7   status report. Let's make it April 6th. It's
8   a week from today, I think. Perhaps a day
9   before, maybe we'll hear from OFAC, but the
04:06PM 10  only thing I for sure need you to put in the
11  status report is have you had a chance to talk
12  about my idea of a regular, recurring meeting
13  with the special master ex parte and do you
14  want any limitations or precautions on that.
04:06PM 15  Of course, you can add anything else you want,
16  but that's what I will be looking for.
17      Thank you. It's been an enjoyable day.
18  I appreciate all the help, and I will be in
19  recess.
20
21
22
23
24
25

1       C E R T I F I C A T E

2    STATE OF DELAWARE        )
                              ) ss:
3    COUNTY OF NEW CASTLE     )

4          I, Deanna L. Warner, a Certified
5    Shorthand Reporter, do hereby certify that as
6    such Certified Shorthand Reporter, I was
7    present at and reported in Stenotype shorthand
8    the above and foregoing proceedings in Case
9    Number 17-151-LPS, *CRYSTALLEX INTERNATIONAL*
10   *CORP. Vs. BOLIVARIAN REPUBLIC OF VENEZUELA*,
11   heard on March 30, 2023.
12         I further certify that a transcript of
13   my shorthand notes was typed and that the
14   foregoing transcript, consisting of 125
15   typewritten pages, is a true copy of said
16   MOTION TO DISQUALIFY.
17         SIGNED, OFFICIALLY SEALED, and FILED
18   with the Clerk of the District Court, NEW
19   CASTLE County, Delaware, this 31st day of
20   March, 2023.

21
22   _____
         Deanna L. Warner, CSR, #1687
23       Speedbudget Enterprises, LLC

24
25

                **DEANNA WARNER, CSR**
           **202 Ashfield Court, Smyrna, DE 19977**
     **Phone: (302) 893-1158  E-mail: deanna@speedbudget.biz**

# #

**#1687** [1] - 125:22

# $

**$900** [1] - 94:25

# 1

**1** [2] - 94:25, 107:16
**10** [3] - 95:2, 115:4, 115:6
**11** [1] - 119:18
**11th** [2] - 32:18, 114:21
**125** [1] - 125:14
**12th** [20] - 7:19, 7:25, 10:6, 10:13, 14:13, 30:16, 32:22, 45:14, 74:6, 81:8, 82:6, 84:10, 103:13, 103:16, 113:24, 114:6, 114:22, 116:14, 118:20, 118:22
**13** [3] - 115:3, 115:4, 115:7
**13-some** [1] - 94:22
**17** [2] - 26:2, 106:24
**17-151-LPS** [2] - 1:5, 125:9
**1:00** [1] - 99:25
**1st** [1] - 113:25

# 2

**2** [6] - 80:22, 81:4, 82:16, 82:23, 83:18, 104:22
**2020** [3] - 53:19, 72:1, 109:9
**2021** [7] - 41:18, 48:4, 54:2, 105:15, 106:9, 106:10, 111:18
**2022** [7] - 30:13, 54:7, 106:2, 106:23, 107:8, 107:18, 111:22
**2023** [4] - 1:13, 111:24, 125:11, 125:20
**22** [1] - 52:18
**22nd** [1] - 29:18
**23** [2] - 37:14, 111:24
**23rd** [4] - 34:9, 34:23, 36:7, 118:8

**28** [2] - 65:6, 111:22
**28th** [6] - 112:6, 112:15, 112:19, 113:17, 114:15, 115:18
**29** [1] - 52:17
**2:30** [1] - 100:1
**2nd** [1] - 52:4

# 3

**3** [4] - 104:22, 105:19, 107:17, 119:20
**30** [3] - 14:17, 30:13, 125:11
**30th** [11] - 1:13, 12:8, 12:19, 15:13, 20:10, 36:16, 36:20, 36:22, 68:6, 91:21, 114:4
**31st** [1] - 125:19
**324** [2] - 94:17, 94:23
**348** [1] - 106:9
**356** [1] - 120:25
**39** [1] - 106:10
**3:30** [2] - 100:6, 100:12
**3rd** [11] - 12:5, 30:17, 31:2, 32:14, 32:16, 44:21, 114:1, 114:11, 114:12, 114:18, 114:19

# 4

**4** [3] - 107:17, 107:18, 119:20
**40** [1] - 106:10
**409** [1] - 106:22
**443** [2] - 52:17, 106:23
**453** [1] - 52:4
**455** [5] - 31:13, 34:12, 51:22, 60:6, 77:18
**455(a** [7] - 49:17, 65:6, 66:24, 67:2, 104:21, 105:4, 119:10
**455(a)** [1] - 66:15
**455(b** [4] - 66:20, 67:1, 104:22, 121:1
**455(b)** [2] - 105:9, 121:6
**455(b)(1** [11] - 47:15, 49:11, 51:3, 51:22, 61:3, 64:23, 66:22, 66:23, 75:22, 116:23, 117:2
**455(b)(1)** [1] - 75:20
**48** [2] - 32:20, 33:4
**480** [1] - 107:21

**481** [1] - 107:16
**4A** [1] - 1:13

# 5

**5** [1] - 105:19
**513** [1] - 105:18
**516** [1] - 120:25
**522** [1] - 119:19
**53** [2] - 119:21, 119:25, 120:19

# 6

**6** [1] - 86:21
**6th** [1] - 124:7

# 7

**72** [1] - 33:4
**77** [1] - 115:7
**7th** [7] - 11:10, 11:15, 11:20, 12:1, 19:11, 71:7, 91:19

# 8

**8** [4] - 48:4, 86:21, 95:2, 106:10
**8th** [1] - 13:15

# 9

**9** [1] - 119:18
**9th** [10] - 31:4, 32:11, 32:16, 32:17, 33:3, 34:23, 49:1, 62:21, 113:18, 114:19

# A

**a-ha** [1] - 49:20
**ability** [2] - 73:25, 120:3
**able** [3] - 33:19, 90:7, 100:2
**Abraham** [1] - 101:19
**ABRAHAM** [1] - 1:17
**Abrams** [1] - 5:4
**ABRAMS** [1] - 2:8
**absent** [1] - 57:7
**absolutely** [3] - 45:9, 109:18, 114:7
**absurd** [1] - 60:6
**abundance** [2] - 10:12, 101:8

**accept** [3] - 34:21, 62:5, 121:11
**access** [2] - 91:22, 92:9
**accord** [1] - 59:5
**accordance** [2] - 92:23, 93:12
**according** [2] - 13:14, 94:21
**account** [1] - 52:6
**accurate** [1] - 15:2
**accusatory** [1] - 35:11
**acknowledge** [1] - 68:8
**acknowledges** [1] - 81:2
**acquiescence** [1] - 118:23
**acquire** [1] - 51:24
**acquired** [2] - 47:17, 76:14
**acquisition** [2] - 61:4, 76:23
**act** [1] - 87:5
**acted** [1] - 31:16
**acting** [3] - 18:3, 18:13, 58:8
**action** [3] - 47:20, 62:11, 101:8
**actions** [4] - 30:9, 32:6, 50:17, 117:18
**activated** [3] - 84:15, 97:17, 99:18
**activating** [1] - 95:17
**activity** [1] - 18:4
**actual** [2] - 106:3, 112:20
**ad** [1] - 84:9
**add** [9] - 14:24, 73:4, 73:9, 75:13, 83:22, 88:25, 102:25, 119:10, 124:15
**added** [4] - 86:6, 89:13, 90:11, 90:19
**adding** [2] - 90:13, 107:11
**addition** [4] - 16:15, 16:18, 120:19, 122:16
**additional** [10] - 80:6, 85:11, 86:5, 86:15, 87:1, 87:2, 90:14, 90:19, 93:6, 93:9
**address** [9] - 4:23, 5:9, 16:3, 18:19, 21:17, 77:9, 78:25, 86:7, 94:1
**addressed** [3] - 38:11, 86:10, 90:6
**adjudicated** [4] -

52:23, 58:4, 59:10, 59:16
**adjudication** [1] - 59:14
**adjust** [1] - 71:8
**administration** [3] - 25:14, 53:18, 53:20
**administrations** [2] - 22:4, 72:23
**admiration** [1] - 47:3
**admit** [2] - 32:11, 39:25
**admitted** [1] - 53:17
**admitting** [1] - 66:12
**adopt** [1] - 106:25
**adopted** [1] - 106:2
**adoption** [1] - 60:22
**advance** [1] - 32:4
**advantage** [1] - 50:20
**advisement** [2] - 78:22, 78:23
**advisors** [5] - 10:14, 13:18, 84:19, 106:20, 122:7
**advisory** [1] - 93:21
**advocacy** [54] - 17:4, 17:5, 17:25, 18:4, 18:8, 18:10, 18:16, 22:5, 22:13, 25:15, 27:7, 28:22, 29:2, 29:3, 29:6, 29:11, 30:1, 30:5, 30:20, 31:10, 31:14, 31:23, 32:13, 35:8, 35:17, 38:14, 40:11, 42:10, 42:14, 42:21, 44:22, 47:5, 55:3, 66:12, 66:13, 70:20, 71:14, 73:21, 76:19, 77:2, 77:24, 78:8, 104:5, 105:21, 105:23, 108:3, 108:17, 108:18, 109:1, 109:20, 111:1, 111:7, 111:13
**advocate** [7] - 16:20, 45:17, 56:7, 66:10, 67:17, 69:25, 114:13
**advocated** [3] - 22:1, 104:7, 104:8
**advocating** [6] - 20:1, 21:5, 24:22, 45:2, 45:4, 47:10, 74:12, 75:1
**affirmatively** [1] - 60:21
**affirmed** [2] - 24:19, 120:13
**affront** [1] - 59:22
**afternoon** [11] - 95:6,

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna DE 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

03/31/2023 10:14:49 AM

101:12, 101:15, 101:18, 101:24, 102:4, 102:5, 102:10, 102:17, 102:19, 102:21
**agenda** [5] - 6:23, 6:25, 13:23, 106:19, 122:17
**ago** [4] - 26:12, 58:10, 58:18, 59:16
**agree** [11] - 27:13, 42:23, 44:5, 55:11, 55:15, 55:16, 57:18, 62:4, 92:21, 94:12, 99:5
**agreed** [2] - 52:9, 55:20, 60:21, 61:24, 62:10
**agreeing** [3] - 44:3, 62:1, 72:24
**agreement** [3] - 95:18, 98:24, 99:16
**ahead** [2] - 13:9, 80:3
**ALEX** [1] - 1:20
**Alex** [1] - 4:23
**ALEXANDRA** [1] - 2:21
**Ali** [1] - 5:13
**ali** [1] - 102:1
**alignment** [1] - 72:15
**all-day** [1] - 48:3
**alleged** [1] - 111:7
**allow** [8] - 21:4, 27:15, 43:11, 69:12, 70:5, 71:5, 75:4, 96:6
**allowance** [1] - 95:20
**allowed** [2] - 46:3, 63:24
**allowing** [1] - 31:3
**allows** [2] - 94:23, 95:18
**alter** [2] - 90:18, 93:19
**alternative** [2] - 111:20, 112:1
**alternatively** [1] - 122:15
**ambiguous** [1] - 35:12
**amendment** [1] - 104:24
**amoeba** [1] - 76:7
**amoeba-like** [1] - 76:7
**amy** [3] - 6:5, 63:6, 90:1
**Amy** [1] - 102:13
**AMY** [1] - 3:5
**analysis** [3] - 32:23, 59:12, 118:17
**analyze** [1] - 115:10
**AND** [1] - 1:2
**ANDERS** [1] - 2:12

**Anders** [1] - 5:8
**ANDERSON** [1] - 1:16
**anderson** [2] - 4:19, 101:20
**answer** [1] - 55:24
**answered** [2] - 16:9, 103:4
**anticipate** [4] - 92:6, 99:8, 100:9, 100:10
**anyway** [2] - 53:2, 114:16
**apologize** [1] - 26:11
**apparent** [1] - 7:14
**appeal** [1] - 91:10
**appeals** [2] - 57:13, 91:11
**appearance** [2] - 6:12, 26:4
**appearances** [2] - 4:5, 101:10
**APPEARANCES** [1] - 1:15
**Appearances** [2] - 2:1, 3:1
**appearing** [1] - 4:21
**appellate** [1] - 122:13
**applicability** [2] - 51:22, 91:18
**applicable** [9] - 26:20, 26:24, 29:4, 42:25, 43:3, 44:6, 44:8, 92:24, 93:12
**application** [1] - 54:2
**applied** [2] - 19:14, 82:17
**applies** [3] - 18:25, 26:24, 52:7
**apply** [3] - 24:7, 57:5, 118:5
**applying** [1] - 119:21
**appointed** [2] - 37:15, 38:4
**appreciate** [1] - 124:18
**appreciated** [1] - 33:21
**approach** [1] - 44:25
**appropriate** [12] - 23:25, 24:3, 24:9, 56:7, 65:18, 66:2, 70:9, 74:3, 74:20, 93:5, 94:1, 96:4
**approval** [1] - 10:23
**approve** [3] - 19:22, 20:17, 119:22
**approved** [3] - 10:20, 37:20, 96:5
**approving** [1] - 81:5
**April** [17] - 11:10, 11:15, 11:20, 12:1,

12:8, 12:19, 15:13, 19:11, 20:10, 20:25, 36:16, 36:20, 36:22, 71:7, 87:20, 91:19, 124:7
**argue** [1] - 38:22
**argues** [1] - 111:8
**arguing** [5] - 37:6, 37:10, 43:4, 43:5, 43:7
**argument** [24] - 8:3, 8:6, 8:9, 15:4, 15:11, 24:21, 28:11, 37:4, 56:19, 60:15, 78:7, 78:8, 78:12, 95:7, 100:9, 103:1, 109:5, 116:15, 117:2, 117:6, 117:15, 119:7, 123:16
**arguments** [8] - 37:23, 40:3, 66:23, 71:18, 76:7, 78:5, 78:20, 81:16
**Aronstam** [2] - 6:2, 102:11
**ARONSTAM** [1] - 3:2
**arrange** [1] - 10:5
**arrangement** [1] - 96:5
**Arsht** [1] - 5:13
**ARSHT** [1] - 2:20
**articulate** [1] - 111:14, 115:11
**ascertain** [1] - 24:4
**aside** [1] - 23:13
**aspects** [1] - 60:19
**assert** [1] - 50:19
**asserted** [2] - 61:10, 104:21
**asserting** [1] - 67:16
**assertion** [1] - 47:15
**asset** [1] - 90:4
**assets** [3] - 25:6, 89:2, 94:24
**assignments** [1] - 113:4
**assisting** [1] - 120:11
**assume** [3] - 55:11, 70:13, 95:4
**assumed** [1] - 92:4
**assumption** [5] - 7:17, 17:16, 34:22, 70:22, 80:14
**assured** [1] - 59:6
**astounding** [1] - 49:2
**attach** [3] - 88:17, 90:7, 92:16
**attached** [1] - 89:2
**attachment** [17] - 41:6, 58:6, 87:2,

88:7, 88:9, 89:7, 89:14, 94:17, 94:20, 94:25
**attachments** [4] - 41:5, 88:12, 88:19, 94:14
**attempt** [1] - 107:12
**attempting** [1] - 74:24
**attend** [5] - 10:7, 10:11, 49:7, 75:21, 108:2
**attendance** [1] - 49:9
**attended** [1] - 13:17
**attention** [1] - 123:3, 123:9
**ATTORNEY** [2] - 79:16, 84:8
**attorneys** [2] - 51:14, 73:16
**AUBRE** [1] - 2:18
**Aubre** [2] - 5:22, 102:8
**authorities** [2] - 65:5, 120:5
**authority** [9] - 19:1, 19:5, 25:4, 29:1, 55:21, 66:7, 94:18, 108:13, 113:4
**authorization** [2] - 95:15, 99:1
**authorize** [2] - 68:9, 120:3
**authorized** [5] - 38:20, 39:14, 66:14, 98:1, 119:16
**authorizes** [1] - 68:10
**authorizing** [1] - 119:22
**available** [1] - 33:12
**await** [1] - 46:13
**aware** [2] - 10:6, 73:17

## B

**b)** [1] - 67:7
**back-end** [1] - 12:5
**bad** [1] - 47:1
**balls** [1] - 40:3
**ban** [1] - 56:22
**banking** [1] - 97:7
**based** [13] - 30:8, 47:14, 50:25, 56:19, 61:14, 75:19, 76:13, 76:23, 87:24, 103:20, 109:24, 114:8, 119:4
**bases** [3] - 104:16, 116:24, 118:15
**basic** [1] - 64:15
**basing** [1] - 54:8

**basis** [22] - 31:16, 31:17, 31:20, 41:21, 41:25, 48:24, 49:6, 49:9, 61:5, 61:10, 62:8, 65:5, 74:19, 93:19, 103:24, 104:20, 112:1, 112:3, 116:25, 117:7, 120:16, 122:1
**Bayliss** [1] - 5:4
**BAYLISS** [1] - 2:8
**bear** [6] - 61:22, 69:10, 84:16, 86:18, 86:19, 89:12
**bears** [2] - 47:23, 89:10
**became** [2] - 7:14, 7:25
**becomes** [1] - 114:21
**becoming** [1] - 90:22
**beggars** [1] - 62:16
**beginning** [1] - 8:25
**begrudge** [1] - 40:2
**behalf** [22] - 4:13, 5:5, 5:14, 5:20, 6:3, 6:17, 15:15, 25:5, 29:3, 29:6, 37:2, 45:2, 46:23, 49:4, 63:8, 75:1, 90:1, 101:14, 101:20, 102:1, 102:12, 109:10
**behavior** [7] - 31:21, 49:4, 49:22, 62:15, 62:23, 76:3, 78:2
**belatedly** [1] - 106:4
**benefit** [2] - 39:5, 46:20
**benefits** [1] - 10:18
**BENTLEY** [1] - 1:20
**Bentley** [2] - 4:24, 101:22
**best** [9] - 29:19, 85:15, 107:3, 112:13, 113:9, 114:17, 115:2, 116:19, 116:20
**better** [1] - 12:11
**between** [14] - 7:20, 16:23, 16:24, 18:9, 18:16, 29:25, 32:13, 32:16, 32:17, 42:9, 48:21, 65:25, 84:18, 112:22
**beyond** [1] - 77:8
**bias** [1] - 104:1
**bid** [1] - 20:18
**bidder** [2] - 20:17, 21:4
**bidders** [1] - 11:3
**bill** [2] - 81:21, 99:10

**billing** [4] - 9:5, 79:3, 79:12, 80:4
**billion** [3] - 86:21, 94:22, 94:25
**billions** [1] - 41:2
**bills** [5] - 48:17, 61:16, 80:6, 83:8, 83:9
**BIRK** [1] - 2:24
**bit** [3] - 42:11, 102:23, 119:5
**black** [1] - 78:15
**blank** [1] - 76:18
**blindly** [1] - 57:4
**block** [1] - 25:5
**blocking** [2] - 54:17, 58:11
**Bloomberg** [1] - 94:21
**BOLIVARIAN** [2] - 1:6, 125:10
**BOND** [1] - 3:16
**bothered** [1] - 61:18
**bound** [1] - 109:9
**branch** [36] - 17:25, 20:2, 20:15, 21:2, 21:20, 22:2, 22:6, 22:16, 22:22, 24:25, 25:5, 25:8, 25:10, 25:15, 25:16, 26:24, 27:22, 44:15, 45:9, 46:1, 53:12, 58:24, 60:2, 63:16, 63:25, 66:1, 68:22, 68:25, 69:24, 71:2, 71:3, 74:1, 74:14, 110:10, 110:22
**brief** [6] - 13:6, 13:15, 35:5, 73:4, 113:13, 119:18
**briefing** [16] - 7:6, 32:20, 33:10, 35:2, 35:3, 64:16, 80:17, 80:25, 93:13, 94:15, 95:5, 103:11, 115:9, 115:10, 116:13, 116:21
**briefly** [4] - 9:14, 63:4, 73:10, 93:7
**briefs** [2] - 26:2, 42:14
**bringing** [1] - 41:13
**broader** [1] - 67:20
**broadly** [1] - 93:2
**brought** [1] - 58:15
**burden** [3] - 41:24, 103:24, 104:2
**business** [2] - 33:23, 33:24
**bust** [1] - 48:12
**BY** [14] - 1:16, 2:9, 2:11, 2:15, 2:17, 2:21, 2:23, 3:2, 3:5,

3:8, 3:11, 3:14, 3:17, 3:20

## C

**calculation** [1] - 115:7
**calculus** [1] - 20:3
**cannibalized** [1] - 72:20
**cannot** [4] - 26:4, 47:6, 52:21, 119:12
**canons** [2] - 60:6, 104:22
**cap** [5] - 80:22, 81:4, 82:16, 82:24, 83:19
**capable** [1] - 58:19
**capacity** [1] - 18:3
**careful** [4] - 4:6, 25:20, 53:20, 68:21
**carefully** [1] - 37:3
**Caroon** [1] - 101:20
**carry** [1] - 37:16
**carrying** [1] - 37:17
**Case** [2] - 1:5, 125:8
**case** [20] - 7:25, 9:12, 27:3, 27:4, 43:4, 44:11, 49:2, 49:14, 52:7, 56:10, 57:12, 57:18, 59:2, 70:8, 78:10, 88:18, 105:5, 115:12, 120:8, 123:2
**cases** [6] - 37:15, 77:10, 115:24, 119:21, 120:1, 123:2
**CASSEL** [1] - 3:6
**Cassel** [1] - 6:5
**Cassell** [1] - 102:14
**CASTLE** [2] - 125:3, 125:19
**categorical** [1] - 29:24
**categorically** [3] - 27:21, 56:12, 57:12
**caused** [1] - 59:3
**caution** [2] - 10:12, 101:9
**cease** [1] - 83:10
**center** [1] - 86:4
**centerpiece** [1] - 49:25
**certain** [4] - 27:12, 79:11, 97:2, 109:6
**certainly** [32] - 8:7, 17:15, 31:17, 37:8, 37:10, 38:5, 39:4, 39:23, 44:10, 44:18, 45:22, 46:8, 70:7, 71:4, 71:19, 75:2, 75:8, 82:19, 82:21, 84:11, 85:10, 86:17,

92:14, 93:16, 96:20, 96:25, 97:4, 97:9, 97:16, 97:19, 99:21, 115:20
**Certified** [2] - 125:4, 125:6
**certify** [2] - 125:5, 125:12
**cetera** [1] - 64:10
**challenging** [2] - 120:6, 123:1
**chance** [10] - 6:24, 8:12, 9:8, 12:20, 15:4, 73:4, 96:13, 99:24, 121:19, 124:11
**change** [41] - 16:21, 17:14, 18:1, 20:2, 22:2, 22:5, 22:16, 22:22, 23:1, 23:9, 23:12, 25:11, 25:16, 29:3, 30:1, 30:5, 30:20, 37:6, 37:8, 37:10, 39:1, 43:5, 43:6, 43:7, 44:24, 53:13, 54:21, 55:3, 55:9, 55:10, 55:13, 63:19, 63:22, 68:25, 70:21, 71:6, 74:13, 104:7, 110:4, 110:16, 112:19
**changed** [1] - 110:9
**chapter** [1] - 39:13
**charged** [1] - 63:12
**chase** [1] - 101:22
**CHASE** [1] - 1:20
**Chase** [1] - 4:23
**check** [1] - 123:7
**chief** [1] - 43:24
**CHILDS** [2] - 2:9, 5:3
**Childs** [1] - 5:4
**chill** [1] - 30:22
**chilled** [1] - 17:5
**Circuit** [1] - 59:17
**circuit** [12] - 18:14, 20:21, 31:19, 36:3, 59:21, 59:24, 72:13, 81:19, 91:10, 105:2, 105:6, 115:24
**circumspect** [7] - 35:6, 35:10, 50:8, 50:12, 50:14, 64:24, 64:25
**circumspection** [1] - 76:2
**circumstances** [8] - 25:2, 33:13, 57:4, 79:11, 88:16, 109:24, 115:15, 120:7

**citation** [5] - 34:11, 66:25, 67:7, 75:22, 75:24
**citations** [1] - 77:18
**cite** [8] - 61:19, 61:20, 62:20, 65:5, 65:6, 70:2, 70:7, 70:8
**cited** [4] - 49:16, 67:8, 67:9, 120:2
**Citgo** [6] - 2:25, 5:14, 36:18, 72:20, 94:22, 102:2
**Citgo/PDVH** [1] - 3:21
**citing** [2] - 76:21, 76:22
**city** [1] - 54:10
**civil** [2] - 58:16, 119:20
**claim** [4] - 57:16, 88:5, 89:3
**claiming** [1] - 66:13
**claims** [1] - 90:23
**clarification** [1] - 21:25
**clarify** [5] - 36:12, 73:18, 75:16, 96:8, 99:20
**clarity** [14] - 10:24, 37:22, 37:25, 39:3, 39:8, 40:16, 40:20, 42:9, 45:25, 48:10, 86:24, 90:12, 107:13, 108:11
**clause** [1] - 104:23
**cleaning** [1] - 51:10
**clear** [26] - 11:4, 31:12, 34:11, 34:13, 34:19, 34:20, 34:22, 35:19, 39:18, 48:1, 48:3, 49:21, 52:8, 67:15, 67:18, 71:22, 72:3, 73:20, 74:6, 74:7, 77:18, 83:2, 98:19, 110:7
**clearly** [4] - 18:7, 41:23, 62:15, 78:9
**clerk** [1] - 32:19
**Clerk** [1] - 125:18
**clerks** [1] - 31:24
**client** [4] - 83:7, 89:10, 90:4
**client's** [1] - 47:6
**clock** [2] - 114:17, 115:18
**close** [3] - 19:24, 29:22, 86:16
**closer** [1] - 39:19
**co** [3] - 5:6, 6:4, 6:18
**co-counsel** [3] - 5:6, 6:4, 6:18

**Cobb** [1] - 6:16
**COBB** [1] - 3:11
**code** [2] - 44:4, 104:22
**cognizant** [1] - 15:25
**collectively** [1] - 63:15
**colloquy** [2] - 48:5, 48:6
**COLT** [1] - 2:17
**comfortable** [1] - 17:2
**coming** [1] - 49:20
**comment** [1] - 95:8
**common** [2] - 60:24, 105:3
**communicate** [3] - 14:22, 39:15, 106:14
**communication** [6] - 7:18, 14:11, 68:10, 68:24, 105:17
**communications** [5] - 38:21, 38:23, 107:24, 119:23, 120:4
**company** [2] - 95:1, 95:3
**compel** [2] - 52:21, 117:8
**compensation** [2] - 95:24, 96:6
**complaining** [2] - 47:11, 66:17
**complaint** [1] - 77:1
**completed** [1] - 110:13
**completely** [4] - 38:3, 67:13, 69:3, 86:10
**complexion** [1] - 17:15
**complying** [1] - 97:10
**component** [1] - 52:3
**compound** [1] - 66:11
**comprehension** [1] - 62:17
**compressed** [1] - 35:4
**conception** [1] - 60:6
**concern** [5] - 17:23, 25:18, 35:15, 65:9, 89:18
**concerned** [3] - 28:1, 93:20, 121:16
**concerning** [1] - 51:2, 121:4, 121:15
**concerns** [3] - 42:17, 42:23, 106:4
**conclude** [4] - 61:14, 71:11, 118:22, 119:14
**concluded** [1] - 116:1
**conclusion** [3] - 29:10, 62:22, 117:4
**conditional** [4] - 41:5,

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna DE 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

88:9, 90:16, 94:13
**conduct** [14] - 7:4, 34:4, 35:24, 36:5, 37:7, 38:2, 38:17, 61:1, 61:14, 61:21, 66:16, 104:23, 108:7
**conducted** [1] - 46:3
**confer** [3] - 99:7, 99:13, 124:6
**conference** [2] - 85:23, 100:1
**conferred** [1] - 25:4
**confident** [1] - 117:17
**confidential** [2] - 46:9, 122:11
**confidentially** [1] - 46:4
**confirm** [3] - 37:8, 72:5, 98:12
**confirmed** [2] - 107:19, 114:11
**confronting** [1] - 120:7
**confuse** [1] - 76:25
**Congress** [4] - 21:20, 25:4, 26:23, 70:18
**Conoco** [1] - 83:13
**ConocoPhillips** [11] - 3:10, 6:3, 8:13, 63:2, 63:8, 90:2, 90:7, 90:15, 91:1, 102:12, 119:19
**ConocoPhillips'** [1] - 90:6
**consciously** [1] - 62:10
**consent** [2] - 32:3, 36:1
**consented** [2] - 35:25, 68:13
**consequence** [1] - 50:17
**consider** [9] - 12:9, 18:4, 18:7, 57:22, 62:22, 74:1, 90:13, 122:14, 122:15
**consideration** [4] - 55:23, 55:24, 77:6, 77:7
**considerations** [4] - 19:2, 20:5, 21:22, 57:8
**considered** [1] - 41:6
**considering** [1] - 19:8
**consistent** [15] - 18:5, 18:22, 21:6, 25:12, 26:20, 28:2, 37:23, 38:3, 41:21, 69:2, 74:4, 74:20, 75:5, 82:15, 84:13

**consisting** [1] - 125:14
**constitutes** [1] - 119:2
**consultation** [1] - 92:18
**consummated** [2] - 71:6, 108:16
**consummating** [1] - 20:23
**consummation** [1] - 27:16
**contact** [4] - 65:2, 112:14, 113:9, 114:20
**contacting** [4] - 113:8, 113:18, 114:3, 115:5
**contacts** [1] - 76:9
**contemplated** [3] - 28:25, 105:24, 107:8
**contemplates** [1] - 97:2
**contend** [1] - 111:1
**content** [2] - 81:17, 82:7
**contention** [1] - 34:16
**contest** [1] - 27:15
**context** [6] - 60:22, 108:5, 109:4, 110:6, 110:19, 115:23
**contexts** [1] - 57:10
**continuance** [1] - 58:9
**continuation** [1] - 22:23
**continue** [7] - 14:15, 72:3, 80:14, 81:18, 85:19, 92:19, 99:7
**continued** [3] - 2:1, 3:1, 80:23
**continuing** [1] - 81:3
**contrary** [1] - 110:24
**convenience** [1] - 47:12
**conversation** [6] - 13:6, 13:16, 35:13, 48:15, 59:1, 65:24
**conveyed** [1] - 108:6
**convince** [1] - 63:19
**cooperation** [2] - 65:17, 66:1
**coordinated** [2] - 112:10, 113:12
**coordination** [1] - 33:24
**copy** [1] - 125:15
**core** [3] - 16:8, 17:23, 65:13
**CORP** [2] - 1:3, 125:10
**correct** [11] - 11:16, 13:12, 34:6, 57:2, 58:1, 70:22, 75:17,

93:10, 98:10, 98:16
**correction** [1] - 73:13
**correctly** [2] - 67:5, 97:25
**correspondence** [1] - 96:18
**CORROON** [1] - 1:16
**Counsel** [8] - 2:7, 2:13, 2:19, 2:25, 3:9, 3:15, 3:18, 3:21
**counsel** [19] - 1:21, 5:6, 5:15, 6:4, 6:18, 10:2, 16:10, 16:15, 16:19, 16:24, 17:7, 40:11, 47:4, 56:11, 69:8, 73:14, 75:24, 105:16, 108:5
**counsel's** [1] - 37:4
**countries** [2] - 58:21, 58:22
**COUNTY** [1] - 125:3
**County** [1] - 125:19
**couple** [7] - 28:9, 35:1, 39:18, 50:2, 69:25, 75:14, 76:4
**course** [30] - 12:24, 13:5, 20:8, 24:7, 27:2, 42:17, 50:10, 60:25, 62:11, 67:23, 68:1, 69:8, 70:15, 72:9, 72:21, 74:9, 82:15, 83:19, 85:24, 91:7, 91:9, 97:18, 110:22, 113:3, 113:21, 116:12, 117:18, 118:7, 118:21, 124:15
**COURT** [104] - 1:1, 4:1, 4:16, 4:25, 5:10, 5:18, 5:24, 6:11, 6:20, 8:20, 8:24, 11:14, 12:18, 12:24, 13:5, 13:10, 13:14, 15:3, 15:9, 15:17, 18:7, 20:9, 22:10, 22:15, 23:4, 23:16, 24:13, 25:24, 26:8, 26:13, 27:2, 28:4, 28:14, 32:9, 34:8, 36:9, 36:13, 36:19, 42:5, 42:8, 43:21, 44:20, 45:10, 46:14, 46:16, 50:6, 55:6, 55:18, 60:11, 63:2, 63:5, 64:3, 64:12, 66:20, 66:25, 67:4, 71:19, 73:3, 73:8, 75:12, 77:11, 77:15, 78:16, 79:13, 79:17, 79:22, 80:10, 81:12,

82:9, 83:1, 83:12, 83:21, 83:25, 85:21, 87:8, 87:12, 89:22, 91:4, 92:2, 92:8, 94:3, 95:11, 96:10, 97:24, 98:5, 98:8, 98:11, 98:18, 99:6, 99:22, 100:18, 100:21, 100:23, 101:1, 101:4, 101:7, 101:17, 101:23, 102:4, 102:16, 123:22, 123:25, 124:2, 124:4
**court** [14] - 4:2, 4:3, 4:8, 46:21, 50:2, 51:4, 71:16, 74:21, 77:4, 77:9, 91:11, 113:8, 122:10, 122:13
**Court** [99] - 4:18, 4:23, 5:9, 9:23, 9:25, 10:1, 10:6, 10:20, 11:4, 12:12, 12:17, 15:20, 15:25, 18:10, 18:20, 19:7, 21:10, 23:21, 24:1, 25:3, 27:5, 27:10, 29:13, 31:5, 32:24, 33:2, 33:20, 33:25, 37:9, 37:16, 37:18, 37:19, 38:7, 38:13, 40:6, 40:8, 40:23, 41:7, 41:14, 41:22, 43:20, 43:25, 44:1, 44:2, 44:10, 44:11, 44:12, 44:16, 44:19, 48:2, 48:5, 48:18, 48:20, 49:20, 50:16, 51:15, 52:22, 54:16, 56:1, 56:7, 56:12, 57:14, 57:20, 58:5, 59:4, 59:7, 59:11, 62:7, 62:21, 66:13, 75:19, 75:21, 77:3, 84:24, 85:17, 87:16, 90:13, 90:21, 92:25, 94:18, 94:23, 96:5, 104:4, 108:10, 109:12, 113:9, 113:18, 114:3, 114:20, 115:5, 117:6, 117:8, 119:15, 119:24, 120:12, 120:19, 120:24, 125:18
**Court's** [21] - 16:4, 20:4, 33:21, 37:11, 38:10, 38:16, 38:24, 39:9, 40:5, 40:12, 42:1, 43:13, 45:6, 46:2, 74:15, 75:4,

82:16, 87:7, 96:23, 110:13, 120:3
**court's** [1] - 65:17
**courtroom** [2] - 102:7, 102:13
**Courtroom** [1] - 1:13
**courts** [4] - 56:16, 57:10, 58:25, 60:3
**Courts** [5] - 24:17, 56:18, 56:25, 62:2, 70:11
**cousin** [1] - 58:14
**cover** [1] - 84:4
**covered** [4] - 60:8, 61:11, 84:3, 84:9
**Covney** [1] - 48:6
**create** [3] - 26:4, 42:15, 42:22
**credit** [1] - 32:19
**credited** [1] - 33:5
**creditor** [6] - 6:17, 89:6, 90:8, 90:9, 90:17
**creditors** [7] - 39:6, 85:24, 88:20, 89:23, 90:20, 91:3, 93:18
**CREE** [2] - 3:11, 6:15
**Cree** [1] - 6:16
**critical** [1] - 45:9
**crosses** [1] - 22:17
**crossing** [1] - 23:12
**CRUTCHER** [1] - 2:5
**crutcher** [1] - 46:22
**CRYSTALLEX** [2] - 1:3, 125:9
**Crystallex** [21] - 2:7, 4:13, 8:12, 19:14, 19:24, 20:7, 24:7, 26:1, 26:21, 46:17, 46:23, 59:22, 71:5, 90:5, 100:5, 101:8, 101:14, 104:8, 109:5, 109:23, 111:8
**Crystallex's** [2] - 44:3, 105:18
**CSR** [1] - 125:22
**Cumings** [1] - 102:1
**CUMINGS** [3] - 2:21, 5:12, 101:25
**Cummings** [1] - 5:13
**current** [4] - 55:4, 76:1, 108:15, 110:8
**Curtis** [1] - 5:23
**CURTIS** [1] - 2:17
**curtis** [1] - 102:8

**D**

**damage** [1] - 72:18

**DANIEL** [1] - 2:24
**data** [1] - 53:16
**date** [11] - 10:16, 12:3, 12:5, 40:24, 40:25, 85:3, 85:4, 86:16, 87:6, 113:22
**dawning** [1] - 76:4
**days** [12] - 31:7, 33:12, 33:23, 33:24, 41:14, 113:10, 114:2, 115:4, 115:5, 115:7, 115:13
**de** [1] - 54:25
**deactivate** [2] - 97:19, 98:14
**dead** [1] - 87:6
**deadline** [2] - 12:19, 15:13
**deal** [4] - 71:6, 90:24, 91:2, 96:22
**dealing** [2] - 24:16, 45:24
**dealt** [1] - 89:17
**Dean** [2] - 5:22, 102:8
**DEAN** [1] - 2:18
**Deanna** [2] - 125:4, 125:22
**debtor** [2] - 88:17, 88:20
**December** [11] - 30:13, 68:5, 111:22, 112:4, 112:6, 112:15, 112:19, 113:17, 114:4, 114:15, 115:18
**decide** [8] - 20:25, 21:21, 40:22, 44:17, 72:6, 98:13, 110:11, 111:9
**decided** [6] - 10:11, 20:22, 27:3, 27:10, 40:6, 93:12
**decision** [11] - 32:21, 40:21, 51:7, 51:20, 51:21, 53:6, 53:7, 115:10, 115:11, 120:24, 121:17
**decision-making** [4] - 51:7, 51:21, 53:6, 53:7
**deeply** [1] - 71:13
**Defendant** [1] - 1:8
**defer** [1] - 57:4
**definitely** [1] - 32:7
**definitive** [1] - 68:5
**degree** [1] - 35:15
**Delaware** [3] - 44:2, 44:4, 125:19
**DELAWARE** [2] - 1:2, 125:2

**delay** [10] - 41:13, 52:11, 54:19, 56:25, 71:1, 115:23, 116:2, 117:12, 117:20
**delayed** [2] - 117:12, 118:3
**delaying** [1] - 116:10
**demonstrated** [1] - 78:9
**demonstrates** [1] - 69:21
**denial** [6] - 54:1, 103:19, 104:13, 109:22, 110:1, 110:2
**denied** [10] - 19:15, 42:4, 72:3, 80:21, 91:8, 92:13, 92:16, 103:9, 103:14, 112:2
**deny** [2] - 104:20, 121:18
**denying** [8] - 34:14, 91:12, 103:22, 103:24, 104:11, 104:16, 118:12, 118:13
**Department** [1] - 19:8
**described** [3] - 16:15, 16:19, 68:12
**designate** [1] - 86:15
**designed** [2] - 10:19, 116:9
**despite** [1] - 35:12
**determination** [1] - 20:11
**development** [1] - 68:16
**devising** [1] - 63:12
**DI** [9] - 52:4, 52:17, 105:18, 106:9, 106:22, 106:23, 107:16, 107:21, 119:19
**dialogue** [3] - 46:3, 46:7, 85:13
**DICKINSON** [1] - 3:16
**dictators** [1] - 58:21
**dictatorship** [1] - 55:1
**difference** [4] - 25:18, 29:25, 68:7, 94:21
**different** [17] - 13:12, 19:11, 23:21, 27:22, 31:8, 34:3, 45:17, 54:7, 56:14, 74:23, 90:15, 98:20, 98:24, 99:9, 105:22, 108:21, 118:20
**differently** [2] - 27:24, 56:5
**dilatory** [1] - 31:17
**directed** [4] - 40:14,

107:2, 116:14, 118:5
**directing** [1] - 114:25
**direction** [3] - 37:16, 109:3, 120:18
**directions** [1] - 41:21
**directly** [1] - 90:17
**disagree** [5] - 27:5, 33:16, 42:25, 57:24, 91:9
**disagreed** [1] - 17:10
**disagreement** [1] - 54:15
**disclosed** [2] - 44:22, 48:20
**disclosing** [1] - 46:9
**discourage** [1] - 65:24
**discussed** [6] - 11:11, 64:22, 66:22, 68:12, 106:13, 122:19
**discussing** [1] - 64:9
**discussion** [10] - 7:20, 14:14, 28:19, 30:23, 32:4, 69:20, 70:25, 86:2, 91:24, 95:4
**discussions** [2] - 65:13, 67:21
**dispute** [9] - 7:8, 39:16, 77:19, 111:3, 111:4, 111:9, 115:9, 121:7, 121:14
**disputed** [20] - 38:6, 40:7, 42:2, 47:17, 47:20, 51:1, 51:11, 51:17, 51:24, 52:14, 59:14, 59:15, 61:4, 61:11, 75:9, 76:15, 76:23, 104:25, 116:19, 121:3
**disqualification** [29] - 7:17, 14:6, 14:9, 15:22, 15:24, 37:4, 40:8, 48:24, 49:10, 49:25, 60:15, 60:18, 61:6, 66:9, 66:18, 67:14, 78:18, 81:10, 103:20, 104:1, 105:4, 105:8, 106:16, 106:18, 112:25, 116:24, 118:16, 119:3, 121:6
**disqualified** [3] - 64:2, 116:16, 117:16
**disqualify** [20] - 7:3, 9:4, 34:10, 34:17, 36:24, 38:7, 100:2, 102:20, 103:7, 104:19, 106:19, 111:15, 113:16, 115:14, 116:6, 117:8, 117:11,

118:7, 118:14, 121:18
**DISQUALIFY** [3] - 1:9, 1:11, 125:16
**disqualifying** [7] - 34:5, 34:7, 36:5, 37:7, 38:2, 41:25, 113:6
**disrespect** [1] - 63:10
**distinction** [1] - 22:12
**distinguish** [2] - 32:13, 73:20
**distributed** [1] - 10:15
**district** [1] - 57:13
**District** [1] - 125:18
**DISTRICT** [2] - 1:1, 1:2
**docket** [1] - 92:6
**document** [2] - 54:3, 68:4
**DOJ** [12] - 10:2, 10:9, 10:15, 10:21, 16:3, 22:1, 22:21, 22:22, 23:22, 24:1, 59:1, 73:15
**DOJ's** [1] - 21:10
**dollar** [1] - 86:21
**dollars** [2] - 41:2, 94:23
**Don** [1] - 15:20
**Donald** [1] - 5:7
**DONALD** [2] - 2:11
**done** [19] - 19:4, 21:25, 26:13, 42:18, 42:19, 45:18, 63:21, 72:18, 74:22, 74:23, 81:18, 85:6, 102:22, 106:15, 110:18, 119:1
**door** [1] - 93:18
**doubt** [2] - 95:25, 117:20
**doubts** [1] - 122:4
**down** [1] - 58:16, 117:23, 122:11
**draft** [2] - 48:1, 61:15
**draw** [2] - 40:11, 42:9
**drill** [1] - 48:25
**drop** [1] - 87:6
**drop-dead** [1] - 87:6
**due** [4] - 24:13, 49:18, 104:23
**DUNN** [1] - 2:5
**Dunn** [3] - 4:15, 46:22, 101:16
**during** [2] - 75:9, 107:1
**dutifully** [1] - 37:15
**duty** [1] - 18:12

**E**

**e-mail** [1] - 14:20
**early** [3] - 54:7, 61:17, 112:4
**earth** [1] - 32:20
**effect** [5] - 14:1, 20:12, 55:14, 72:25, 88:19
**effective** [1] - 120:22
**effectively** [2] - 23:23, 117:17
**effectuating** [1] - 24:18
**effort** [2] - 33:21, 70:17
**efforts** [4] - 29:19, 107:3, 117:2, 120:12
**ego** [2] - 90:18, 93:19
**eight** [1] - 33:12
**eimer** [1] - 100:24
**Eimer** [12] - 5:16, 15:23, 36:15, 79:19, 80:11, 82:13, 94:7, 94:8, 102:3, 124:2
**EIMER** [12] - 2:23, 2:23, 36:17, 79:19, 80:20, 82:1, 83:23, 94:8, 95:14, 98:23, 100:25, 124:3
**Eimer's** [1] - 96:17
**either** [5] - 23:1, 44:16, 46:5, 122:15, 123:5
**element** [1] - 116:8
**elements** [1] - 10:21
**ELLIS** [3] - 3:14, 91:5, 92:17
**Ellis** [2] - 6:18, 91:5
**Elmer** [1] - 83:21
**embracement** [1] - 60:25
**emergency** [4] - 49:6, 113:7, 113:20, 123:8
**emphasize** [1] - 48:9
**emphasized** [1] - 109:5
**end** [5] - 11:15, 12:5, 12:7, 34:15, 108:13
**ended** [1] - 14:19
**ENERIO** [1] - 2:14
**Enerio** [2] - 5:20, 102:6
**enforce** [7] - 18:11, 38:16, 40:12, 44:13, 74:21, 120:12, 120:20
**enforceable** [1] - 93:25

**enforced** [3] - 45:6, 70:5, 110:14
**enforcement** [14] - 19:2, 20:3, 21:23, 22:4, 24:22, 25:13, 25:16, 38:24, 43:14, 57:21, 58:3, 60:7, 63:1, 69:17
**enforcing** [2] - 26:19, 39:9
**engage** [13] - 17:4, 17:24, 29:6, 30:5, 30:19, 31:14, 31:21, 32:5, 35:16, 63:16, 66:14, 67:25, 68:3
**engaged** [6] - 35:25, 77:22, 104:5, 105:16, 110:25, 111:6
**engagement** [3] - 96:23, 97:11, 118:24
**engaging** [5] - 18:3, 30:1, 31:23, 66:12, 107:9
**enhanced** [1] - 40:15
**enjoyable** [1] - 124:17
**ensuing** [1] - 48:16
**enter** [2] - 6:12, 23:22
**entered** [4] - 33:10, 43:13, 107:7, 120:13
**Enterprises** [1] - 125:23
**entire** [1] - 51:25
**entirely** [2] - 109:14, 110:7
**entities** [1] - 47:10
**entitled** [2] - 36:6, 96:7
**entrusted** [2] - 25:14, 25:17
**equally** [1] - 118:6
**equation** [1] - 26:22
**especially** [4] - 24:19, 41:15, 43:12, 54:10
**ESQ** [27] - 1:16, 1:17, 1:19, 1:20, 1:20, 2:3, 2:5, 2:6, 2:6, 2:9, 2:11, 2:12, 2:15, 2:17, 2:18, 2:21, 2:23, 2:24, 3:5, 3:5, 3:6, 3:8, 3:11, 3:14, 3:14, 3:17, 3:20
**essence** [1] - 71:9
**essentially** [3] - 30:12, 103:21, 112:5
**established** [1] - 54:21
**establishing** [1] - 66:7
**estrada** [1] - 93:7
**ESTRADA** [12] - 2:5,

46:19, 46:21, 50:10, 55:16, 55:19, 60:19, 75:14, 83:4, 87:17, 100:19, 123:23
**Estrada** [16] - 4:14, 46:20, 64:9, 64:10, 64:23, 69:23, 70:11, 75:12, 83:3, 87:13, 94:11, 96:1, 100:18, 101:15, 116:11, 123:22
**Estrada's** [3] - 83:14, 90:4, 94:13
**et** [1] - 64:10
**ethics** [1] - 66:8
**event** [1] - 43:18
**eventually** [1] - 110:14
**Evercore** [9] - 84:15, 95:24, 96:19, 96:20, 96:21, 97:13, 97:19, 99:8, 99:17
**evercore** [1] - 95:18
**Evercore's** [1] - 85:5
**evercore's** [1] - 97:11
**every-two-month** [1] - 122:1
**evidence** [9] - 49:21, 53:15, 55:8, 104:4, 104:6, 110:25, 111:10, 118:19, 119:9
**evidentiary** [14] - 7:5, 42:3, 47:18, 47:20, 51:2, 51:12, 51:18, 52:15, 61:5, 75:9, 76:15, 76:24, 121:3, 121:14
**evidently** [1] - 114:12
**ex** [46] - 7:18, 14:11, 16:1, 17:21, 23:14, 28:12, 28:20, 32:13, 33:18, 35:21, 38:20, 38:23, 39:15, 41:21, 47:16, 47:25, 65:4, 67:22, 67:24, 68:3, 68:9, 68:11, 68:23, 69:7, 69:19, 76:9, 76:14, 76:24, 77:22, 105:17, 105:19, 105:22, 106:8, 106:14, 107:5, 108:22, 112:17, 112:22, 114:10, 118:19, 118:24, 119:16, 119:22, 120:3, 121:24, 124:13
**exactly** [1] - 25:21
**example** [6] - 56:15, 56:20, 56:21, 70:3,

70:7, 106:7
**exceeding** [3] - 80:22, 81:3, 82:24
**exceeding-the-cap** [1] - 82:24
**exchange** [1] - 16:23
**excluded** [1] - 65:22
**execute** [1] - 18:12
**executed** [2] - 27:1, 56:2
**executing** [3] - 18:21, 57:2, 59:18
**execution** [4] - 56:3, 60:22, 88:4, 89:19
**executive** [49] - 17:25, 19:1, 19:4, 20:2, 20:15, 21:2, 21:20, 22:1, 22:5, 22:16, 22:21, 24:25, 25:5, 25:8, 25:10, 25:15, 26:23, 27:22, 27:24, 44:15, 45:8, 46:1, 53:12, 54:18, 56:14, 56:15, 56:18, 57:8, 57:16, 58:23, 59:4, 59:8, 60:1, 63:16, 63:25, 65:25, 68:22, 68:25, 70:14, 70:18, 70:19, 70:20, 71:2, 71:3, 74:1, 74:13, 110:9, 110:10, 110:22
**exercise** [10] - 19:5, 19:14, 27:10, 27:19, 27:23, 27:25, 70:10, 70:15, 70:18, 108:12
**exercised** [2] - 25:4, 27:17
**Exhibit** [1] - 107:16
**expect** [6] - 11:9, 12:2, 33:2, 39:23, 86:7, 96:2
**expectation** [2] - 6:7, 97:16
**expected** [3] - 11:25, 14:2, 14:3
**expecting** [1] - 98:8
**expeditious** [1] - 41:8
**expenditures** [2] - 9:9, 80:12
**expenses** [1] - 98:2
**expensive** [4] - 62:17, 64:12, 64:13, 96:1
**expensively** [1] - 33:7
**experience** [2] - 99:14, 117:19
**explain** [3] - 33:22, 102:23, 103:8
**explained** [3] - 108:6, 115:25, 120:1

**explicit** [1] - 116:22
**expound** [1] - 103:23
**express** [3] - 52:24, 109:2, 119:24
**expressed** [5] - 19:7, 22:22, 54:15, 57:8, 58:10
**expressing** [2] - 29:20, 59:25
**expressly** [4] - 107:8, 109:9, 109:25, 114:11
**extend** [1] - 12:18
**extensive** [2] - 7:5, 103:11
**extent** [12] - 11:24, 32:12, 34:18, 38:13, 52:2, 59:15, 60:12, 76:12, 80:6, 92:2, 92:11, 105:21
**extra** [3] - 66:23, 77:23, 78:12
**extra-record** [3] - 66:23, 77:23, 78:12
**extraordinary** [1] - 33:13
**extreme** [1] - 115:16
**extremely** [2] - 47:4, 103:1

### F

**face** [1] - 50:5
**fact** [32] - 12:1, 16:22, 20:16, 24:14, 28:13, 28:21, 35:15, 38:6, 42:3, 47:20, 48:18, 49:5, 49:19, 49:23, 51:2, 51:18, 52:15, 52:17, 54:5, 54:9, 59:9, 59:14, 61:8, 61:11, 61:17, 61:24, 66:24, 72:22, 75:9, 76:13, 88:10, 121:15
**facto** [1] - 54:25
**factor** [1] - 32:23
**facts** [24] - 25:21, 28:23, 29:7, 43:13, 43:16, 43:19, 44:9, 44:19, 47:18, 49:2, 51:12, 51:24, 59:15, 61:5, 64:15, 68:19, 76:15, 76:24, 78:12, 112:3, 119:13, 120:7, 121:3
**factual** [5] - 7:8, 40:7, 52:3, 116:18, 121:14
**failed** [3] - 41:24, 62:19

**fails** [2] - 61:12, 119:6
**failure** [1] - 104:11
**fair** [5] - 21:3, 32:12, 41:8, 74:24, 74:25
**faith** [1] - 113:14
**fall** [2] - 57:15, 81:9
**fallacious** [1] - 55:2
**fallacy** [1] - 52:1
**false** [2] - 51:25, 53:14
**FAQs** [1] - 73:24
**far** [6] - 21:8, 28:12, 54:6, 72:24, 74:13, 92:23
**FARR** [1] - 3:19
**fashion** [1] - 80:3
**favor** [1] - 50:18
**February** [1] - 14:3
**federal** [4] - 58:25, 63:19, 70:4, 119:20
**fee** [5] - 79:9, 96:4, 97:18, 98:24, 99:15
**feedback** [4] - 10:3, 11:18, 12:2, 12:15
**fees** [8] - 81:11, 82:5, 82:8, 96:19, 97:14, 97:15, 98:15, 99:2
**felt** [2] - 59:5, 85:5
**few** [5] - 26:12, 31:7, 42:6, 91:15, 99:4
**fifth** [1] - 104:24
**fight** [1] - 88:23
**fighting** [1] - 89:20
**figure** [1] - 112:11
**file** [2] - 71:20, 75:18
**FILED** [1] - 125:17
**filed** [8] - 35:4, 61:17, 67:15, 69:14, 71:17, 92:5, 118:7, 119:19
**filing** [6] - 59:7, 76:5, 83:11, 105:1, 105:12, 111:23
**filings** [1] - 120:1
**finally** [1] - 93:15
**findings** [1] - 52:16
**fine** [12] - 20:6, 20:7, 69:24, 79:11, 82:1, 82:6, 82:14, 82:24, 83:1, 83:24, 95:23, 100:7
**finger** [1] - 101:14
**FINGER** [1] - 2:2
**Finger** [1] - 4:12
**fire** [1] - 48:25
**firm** [3] - 4:15, 5:23, 102:9
**firmly** [1] - 47:13
**first** [22] - 30:14, 30:17, 30:23, 50:21, 50:25, 64:8, 64:22, 70:2, 77:21, 79:3,

79:25, 89:11, 90:16, 90:24, 91:1, 91:16, 103:23, 104:18, 111:16, 114:12, 116:5, 116:21
**First** [1] - 103:10
**five** [2] - 33:7, 65:9
**flagging** [1] - 96:10
**fleet** [1] - 62:17
**flip** [1] - 47:2
**fly** [1] - 48:19
**fly-specked** [1] - 48:19
**focus** [1] - 15:21
**folks** [1] - 100:7
**follow** [1] - 14:2
**follow-up** [1] - 14:2
**following** [3] - 53:21, 101:6, 120:18
**footnote** [2] - 38:12, 52:18
**FOR** [1] - 1:2
**forbid** [1] - 59:25
**foregoing** [2] - 125:8, 125:14
**foreign** [33] - 19:1, 19:10, 19:19, 20:2, 20:4, 21:14, 21:21, 22:16, 22:24, 24:24, 25:6, 37:11, 43:5, 53:13, 54:21, 55:10, 55:13, 55:23, 56:13, 56:20, 56:24, 57:16, 57:22, 58:9, 58:18, 58:22, 63:20, 63:23, 70:12, 72:15, 77:8, 104:7
**foresworn** [2] - 29:11, 31:1
**forfeiture** [2] - 50:11, 50:13
**form** [2] - 23:9, 61:15
**formed** [1] - 49:25
**former** [1] - 43:24
**forth** [1] - 47:12
**forward** [42] - 10:18, 12:11, 12:16, 14:18, 16:22, 20:12, 20:16, 20:22, 21:1, 27:16, 39:22, 40:1, 41:1, 41:8, 43:12, 45:7, 52:10, 52:20, 53:2, 53:23, 69:13, 71:4, 71:25, 74:18, 80:5, 81:5, 81:22, 82:2, 84:17, 84:22, 85:3, 85:9, 86:24, 87:19, 88:5, 92:23, 93:13, 97:21, 98:13, 98:14, 122:21, 122:22

**four** [3] - 33:23, 33:24, 64:7
**frame** [3] - 33:11, 63:21, 111:25
**framed** [1] - 38:14
**framing** [1] - 63:17
**frank** [2] - 46:6, 65:24
**frankly** [7] - 11:4, 12:14, 38:14, 38:21, 60:5, 84:18, 85:13
**free** [3] - 91:14, 92:13, 96:14
**friend** [3] - 64:11, 69:23, 78:6
**friends** [2] - 16:5, 78:3
**front** [4] - 48:2, 85:16, 86:4, 111:23
**frustration** [1] - 70:25
**full** [3] - 32:18, 46:6, 65:24
**fully** [3] - 26:3, 52:23, 113:12
**function** [1] - 22:7
**fundamental** [1] - 50:24
**fundamentally** [3] - 50:23, 58:2, 79:8
**future** [2] - 19:17, 54:12

## G

**gain** [1] - 107:12
**gained** [1] - 75:8
**GALLAGHER** [1] - 3:19
**game** [1] - 62:6
**gap** [2] - 95:15, 96:22
**GARRET** [1] - 3:2
**Garrett** [2] - 6:2, 102:11
**gather** [1] - 100:4
**gathered** [1] - 79:23
**gathering** [4] - 28:13, 28:21, 66:24, 77:22
**GATTUSO** [1] - 2:14
**gears** [1] - 62:25
**general** [4] - 49:17, 88:20, 89:6, 90:9
**generally** [4] - 11:1, 12:23, 36:4, 92:21
**generous** [1] - 116:20
**genuinely** [1] - 71:13
**GIBSON** [1] - 2:5
**Gibson** [3] - 4:15, 46:22, 101:15
**gifted** [1] - 47:5
**Ginger** [1] - 5:7
**GINGER** [1] - 2:12

**given** [18] - 17:17, 21:20, 25:7, 25:19, 31:15, 33:24, 36:1, 41:16, 42:2, 63:14, 71:3, 71:5, 93:17, 96:4, 98:5, 112:16, 117:1, 118:21
**glared** [1] - 58:16
**goal** [1] - 116:9
**god** [1] - 59:25
**godfather** [1] - 58:15
**Gold** [1] - 3:18
**Gotshal** [6] - 4:22, 9:21, 37:1, 73:11, 79:7, 101:22
**GOTSHAL** [1] - 1:19
**governed** [1] - 24:9
**governing** [1] - 20:21
**government** [32] - 10:4, 10:10, 10:23, 11:6, 11:19, 12:3, 38:19, 39:2, 41:17, 41:20, 42:15, 42:22, 43:7, 43:9, 54:23, 54:24, 54:25, 55:1, 58:19, 59:20, 63:19, 65:3, 70:4, 72:19, 75:3, 76:10, 85:8, 108:11, 109:7, 109:11, 109:16, 109:18
**government's** [7] - 10:25, 11:9, 11:12, 12:9, 38:1, 46:11, 110:4
**grabs** [1] - 59:13
**grant** [6] - 52:22, 55:13, 92:15, 108:13, 110:11, 119:9
**granted** [3] - 5:10, 36:22, 104:9
**granting** [2] - 74:1, 118:13
**greater** [1] - 81:14
**greatest** [1] - 47:3
**green** [4] - 6:6, 16:21, 51:9, 51:13
**Green** [1] - 102:15
**GREEN** [1] - 3:8
**ground** [5] - 57:15, 60:13, 66:17, 104:10, 118:13
**grounds** [11] - 22:9, 49:24, 66:8, 67:14, 104:20, 105:11, 105:22, 106:17, 112:25, 113:6, 121:1
**guess** [3] - 32:25, 69:5, 98:12

**guidance** [29] - 10:3, 10:24, 11:5, 29:20, 29:25, 37:22, 39:3, 39:7, 40:13, 40:14, 40:16, 40:17, 40:20, 43:9, 43:10, 43:15, 45:8, 45:25, 46:12, 69:12, 73:25, 74:17, 84:24, 85:5, 85:8, 85:12, 91:19, 107:3, 107:13
**gun** [1] - 49:3

## H

**HALL** [1] - 3:20
**halt** [1] - 109:12
**hand** [1] - 53:10
**handle** [2] - 15:23, 55:10
**handled** [1] - 116:3
**happy** [4] - 36:11, 88:1, 99:13, 123:18
**hard** [1] - 40:4
**Hawaii** [1] - 56:21
**hear** [14] - 8:3, 8:6, 11:20, 28:5, 46:17, 65:16, 70:12, 79:4, 81:15, 82:19, 94:7, 115:8, 123:18, 124:9
**heard** [10] - 16:10, 25:19, 36:24, 37:5, 63:3, 78:20, 94:5, 100:4, 113:2, 125:11
**hearing** [10] - 7:5, 7:10, 8:11, 14:16, 14:23, 48:3, 76:25, 99:25, 106:11, 106:12
**heart** [1] - 18:18
**heaven** [1] - 32:20
**hectoring** [1] - 60:1
**held** [3] - 66:19, 78:4, 78:7
**hello** [1] - 101:25
**help** [5] - 38:23, 53:3, 55:18, 60:13, 124:18
**helped** [1] - 103:4
**helpful** [6] - 21:9, 43:10, 78:21, 86:25, 103:1, 123:5
**hence** [1] - 31:7
**hereby** [1] - 125:5
**HEYMAN** [1] - 2:14
**Heyman** [2] - 5:20, 102:6
**hide** [1] - 47:6
**high** [2] - 35:15, 114:23

**hint** [1] - 113:19
**hinted** [1] - 116:21
**HIRZEL** [4] - 2:14, 2:15, 5:19, 102:5
**Hirzel** [2] - 5:20, 102:6
**hold** [2] - 30:7, 117:5
**holding** [4] - 5:14, 62:7, 67:12, 78:11
**holdings** [1] - 102:2
**Holdings** [1] - 36:18
**honor** [1] - 51:7
**Honor** [89] - 4:11, 4:13, 4:18, 4:24, 5:4, 5:13, 5:20, 6:2, 6:15, 8:23, 9:21, 11:18, 12:22, 13:2, 15:8, 16:11, 18:18, 21:8, 24:6, 27:10, 29:16, 35:23, 36:17, 37:1, 38:9, 39:17, 41:10, 43:3, 44:8, 44:10, 46:8, 46:15, 46:20, 49:8, 51:7, 51:10, 53:18, 53:22, 55:20, 63:4, 63:9, 64:6, 72:10, 73:13, 73:19, 74:22, 75:15, 77:13, 78:9, 78:14, 79:6, 79:16, 80:9, 80:20, 81:2, 81:4, 82:4, 82:12, 83:23, 84:8, 86:12, 87:1, 87:4, 87:11, 87:18, 88:8, 90:3, 91:7, 92:7, 92:17, 94:10, 94:11, 95:9, 96:16, 98:4, 98:17, 100:20, 100:22, 100:25, 101:3, 101:13, 101:19, 102:1, 102:6, 102:11, 123:21, 123:24, 124:3
**Honor's** [5] - 5:8, 21:17, 64:17, 73:1, 81:9
**Honorable** [1] - 1:12
**hope** [2] - 72:22, 78:8
**hopefully** [1] - 123:8
**hours** [3] - 32:20, 33:4, 99:4
**huge** [1] - 94:21
**hypothetical** [1] - 23:6
**hypothetically** [1] - 34:21

## I

**idea** [6] - 13:24, 17:24,

DEANNA WARNER, CSR
202 Ashfield Court, Smyrna DE 19977
Phone: (302) 893-1158  E-mail: warnerdeanna@gmail.com

03/31/2023 10:14:49 AM

67:12, 68:21, 78:1, 124:12
**ideal** [1] - 8:19
**identify** [1] - 4:8
**ignore** [1] - 72:6
**illustrate** [1] - 42:20
**impact** [1] - 72:7
**impartial** [3] - 18:5, 22:3, 25:13
**impartiality** [5] - 22:9, 32:2, 119:11, 119:14, 120:16
**impediment** [1] - 53:23
**impediments** [1] - 27:25
**implement** [1] - 40:4
**implemented** [3] - 27:19, 39:20, 75:4
**implicates** [1] - 24:24
**implicating** [1] - 43:17
**implications** [1] - 27:7
**importance** [2] - 10:23, 56:9
**important** [6] - 18:21, 28:18, 46:2, 93:17, 109:3, 110:6
**importantly** [1] - 110:5
**impossible** [1] - 61:13
**impress** [1] - 43:8
**improper** [10] - 31:10, 55:15, 56:12, 65:1, 109:19, 109:21, 111:11, 120:9, 120:11, 120:15
**IN** [2] - 1:1, 1:2
**inaction** [1] - 32:6
**inappropriate** [9] - 35:18, 38:6, 38:17, 39:12, 56:6, 57:24, 67:18, 111:2, 111:5
**Inc** [1] - 3:18
**include** [7] - 29:2, 77:8, 99:8, 106:25, 107:20, 107:24, 120:3
**included** [3] - 37:17, 103:13, 107:10
**including** [5] - 10:4, 11:2, 13:18, 32:12, 105:20
**inconceivable** [1] - 49:18
**inconsistent** [1] - 22:7
**incredible** [1] - 50:5
**incur** [1] - 98:1
**incurring** [3] - 81:13, 97:14, 98:15
**indeed** [6] - 19:23, 19:25, 65:1, 67:16,

70:22, 71:14
**indicate** [1] - 45:14
**indicated** [2] - 9:19, 14:19
**indicating** [2] - 14:21, 15:12
**indication** [1] - 21:2, 107:22
**indulgence** [1] - 64:17
**inevitably** [1] - 94:15
**inference** [1] - 16:13
**inferring** [2] - 17:12, 25:22
**influence** [4] - 42:16, 42:22, 65:12, 70:17
**information** [4] - 16:19, 77:23, 116:18
**informed** [5] - 17:18, 40:21, 74:19, 85:1, 85:16
**inherent** [4] - 44:12, 74:20, 120:20, 123:4
**initial** [4] - 34:21, 67:6, 82:17, 84:12
**input** [8] - 44:15, 51:6, 51:20, 52:3, 53:5, 53:25, 84:20, 91:14
**inquiring** [1] - 109:19
**inquiry** [1] - 79:23
**instance** [2] - 86:20, 97:5
**instant** [1] - 13:3
**instead** [1] - 70:11
**institutional** [3] - 56:8, 57:21, 77:4
**intend** [1] - 107:19
**intended** [4] - 10:17, 14:18, 63:11, 110:23
**intent** [1] - 45:16
**intention** [4] - 29:5, 30:18, 61:25, 62:4
**intentions** [1] - 35:7
**interact** [3] - 12:13, 27:4, 29:2
**interacting** [1] - 30:10
**interchange** [1] - 28:20
**interest** [18] - 18:21, 23:23, 24:2, 24:18, 26:17, 26:18, 53:17, 56:8, 56:20, 57:21, 58:24, 72:1, 77:4, 85:15, 89:10, 108:9, 109:10
**interested** [2] - 97:4, 123:14
**interests** [3] - 22:25, 56:13, 72:14
**internal** [1] - 55:23
**INTERNATIONAL** [2] -

1:3, 125:9
**interpretation** [1] - 20:20
**interpreted** [1] - 120:2
**interrupt** [1] - 11:14
**interrupted** [1] - 14:5
**intervene** [2] - 89:17, 91:8
**intervention** [2] - 91:13, 92:12
**intimated** [1] - 56:10
**introductions** [1] - 13:21
**invested** [1] - 117:19
**investment** [1] - 97:7
**Investments** [1] - 91:6
**invited** [1] - 108:2
**involved** [2] - 39:17, 108:2
**irony** [1] - 58:5
**issuance** [1] - 22:20
**issue** [36] - 6:8, 15:22, 15:24, 21:12, 26:3, 29:22, 38:11, 40:7, 41:10, 42:2, 43:22, 44:3, 46:12, 47:9, 55:21, 55:22, 71:21, 76:17, 76:20, 79:8, 80:11, 82:24, 86:3, 86:6, 86:9, 86:18, 93:14, 93:15, 93:17, 95:5, 113:15, 114:2, 115:10, 116:19, 120:21, 121:13
**issued** [4] - 29:13, 52:5, 87:1, 88:8
**issues** [16] - 7:13, 11:11, 15:23, 43:18, 45:24, 52:22, 75:6, 78:24, 79:12, 82:21, 84:15, 85:1, 94:16, 97:3, 99:15, 116:4
**issuing** [1] - 88:10
**Italy** [1] - 58:15
**items** [1] - 66:24
**itself** [6] - 24:23, 25:9, 33:17, 85:4, 116:6, 118:10

**J**

**January** [60] - 7:19, 7:25, 10:6, 10:13, 14:12, 28:20, 30:16, 30:17, 31:2, 31:4, 32:11, 32:14, 32:16, 32:17, 32:18, 32:22, 33:3, 34:9, 34:23, 36:7, 38:11, 44:21,

45:14, 49:1, 60:23, 61:18, 62:4, 62:21, 69:15, 74:6, 81:8, 82:6, 84:10, 103:13, 103:16, 111:24, 112:5, 112:9, 112:11, 112:21, 113:18, 113:21, 113:24, 113:25, 114:1, 114:6, 114:11, 114:12, 114:18, 114:19, 114:21, 114:22, 116:14, 118:8, 118:20, 118:22
**JEFF** [1] - 2:3
**Jeff** [2] - 4:12, 101:13
**Jennifer** [1] - 6:16
**JENNIFER** [1] - 3:11
**jeopardize** [2] - 19:9, 22:24
**job** [6] - 18:16, 40:19, 57:2, 63:14, 63:23, 64:2
**joined** [5] - 4:13, 5:5, 6:3, 101:14, 102:12
**Juan** [2] - 5:21, 102:7
**JUAN** [1] - 2:17
**judge** [4] - 42:15, 42:21, 60:17, 117:21
**judges** [4] - 57:13, 117:17, 119:22
**judgment** [25] - 18:12, 18:22, 20:4, 21:19, 21:23, 24:8, 24:15, 24:22, 26:25, 29:23, 37:12, 56:4, 56:25, 58:4, 59:18, 60:7, 69:17, 78:14, 88:15, 89:20, 90:20, 90:25, 94:19, 110:13, 120:21
**judgments** [26] - 19:3, 24:18, 26:19, 41:2, 41:4, 44:13, 56:2, 56:9, 57:22, 60:2, 72:15, 86:5, 86:15, 86:18, 86:21, 87:3, 90:14, 90:19, 93:6, 93:7, 93:8, 93:9, 93:23, 93:24, 120:12, 120:22
**judicial** [28] - 18:3, 18:12, 19:3, 21:6, 22:7, 25:12, 25:15, 27:11, 27:18, 27:20, 27:25, 66:8, 68:21, 69:3, 69:24, 70:5, 70:6, 70:10, 70:15, 75:10, 78:12, 88:4,

88:13, 89:2, 90:25, 94:14, 94:16, 104:23
**judiciary** [3] - 25:8, 26:6, 26:18
**July** [2] - 53:19, 109:9
**justice** [2] - 43:24, 59:23
**Justice** [1] - 19:7
**JUSTIN** [1] - 3:14
**Justin** [2] - 6:18, 91:5

**K**

**Katz** [1] - 63:7
**KATZ** [1] - 3:4
**keep** [4] - 47:13, 76:8, 89:18, 109:3
**keeping** [2] - 87:3, 88:24
**ken** [1] - 77:9
**Kensington** [1] - 105:3
**Kevin** [2] - 5:22, 102:7
**KEVIN** [2] - 2:18, 3:17
**key** [5] - 18:23, 22:10, 25:17, 47:18, 85:7
**KIM** [1] - 3:8
**Kim** [2] - 6:6, 102:15
**kind** [10] - 14:2, 32:2, 32:4, 35:17, 46:5, 57:9, 87:6, 113:19, 114:2, 121:13
**kinds** [1] - 111:6
**knowing** [2] - 86:24, 123:2
**knowledge** [9] - 47:17, 51:24, 61:4, 75:8, 76:14, 112:20, 113:23, 119:13, 121:3
**known** [3] - 105:11, 105:15, 114:8
**knows** [2] - 45:15, 72:10
**Kobre** [2] - 6:6, 102:15
**KOBRE** [1] - 3:8

**L**

**labeled** [1] - 88:9
**laboriously** [1] - 33:6
**lack** [3] - 32:2, 49:15, 62:9
**laid** [2] - 44:13, 86:13
**LANDIS** [1] - 3:11
**Landis** [1] - 6:16
**language** [8] - 29:14, 29:15, 29:16, 30:2,

51:3, 119:24, 119:25, 120:2
**lapse** [1] - 115:5
**large** [1] - 83:8
**largely** [1] - 103:11
**last** [11] - 10:1, 20:23, 48:19, 52:5, 60:11, 70:24, 73:5, 77:16, 94:22, 110:21, 112:7
**late** [6] - 14:3, 41:15, 87:20, 102:5, 102:18, 112:4
**latest** [1] - 96:17
**launch** [10] - 40:24, 40:25, 85:3, 85:4, 86:16, 92:21, 92:22, 96:7, 97:3, 107:15
**launched** [2] - 95:20, 95:22
**law** [24] - 13:19, 18:6, 18:23, 18:25, 22:4, 25:14, 25:16, 26:20, 26:24, 28:3, 32:19, 34:6, 36:3, 36:4, 57:5, 60:4, 60:5, 60:24, 93:10, 93:13, 94:18, 115:13, 119:16
**lawful** [2] - 19:4, 120:6
**lawyer** [1] - 64:11
**lawyers** [2] - 49:16, 62:18
**layton** [1] - 101:13
**Layton** [1] - 4:12
**LAYTON** [1] - 2:2
**lead** [1] - 117:14
**leads** [1] - 117:3
**learn** [3] - 30:14, 30:17, 83:7
**learned** [3] - 16:2, 76:19, 103:17
**learning** [1] - 85:10
**least** [18] - 23:10, 55:8, 74:18, 80:7, 86:2, 88:13, 95:22, 100:8, 105:12, 111:7, 111:17, 113:23, 114:15, 116:8, 116:9, 117:4, 118:1, 118:9
**leave** [1] - 9:10
**leaves** [1] - 26:21
**led** [2] - 28:19, 117:14
**left** [2] - 24:24, 35:14
**leftover** [2] - 88:15, 88:23
**legal** [12] - 29:4, 50:21, 51:6, 51:20, 53:5, 53:23, 55:21, 59:11, 59:12, 72:11,

84:19
**legally** [1] - 88:10
**legitimacy** [1] - 72:24
**length** [1] - 103:9
**lengthy** [2] - 52:5, 111:12
**Leonard** [1] - 1:12
**less** [2] - 33:9, 35:20
**letter** [11] - 14:3, 54:13, 63:9, 80:16, 81:22, 91:23, 96:20, 96:23, 97:11, 109:25, 119:19
**letters** [1] - 7:14
**level** [2] - 49:17, 113:9
**license** [22] - 19:15, 19:16, 19:24, 22:20, 24:8, 27:17, 29:22, 48:11, 48:12, 54:1, 55:11, 55:14, 55:22, 55:25, 57:7, 71:5, 104:9, 108:14, 109:23, 110:11
**licenses** [3] - 72:2, 74:2, 110:12
**licensing** [1] - 57:5
**life** [1] - 81:15
**lift** [1] - 70:4
**light** [8] - 10:10, 12:1, 14:21, 16:21, 51:8, 51:12, 83:22, 100:13
**lightly** [2] - 71:13, 71:21
**likelihood** [2] - 29:21, 90:3
**limitations** [1] - 124:14
**limited** [2] - 12:15, 33:11
**line** [17] - 18:9, 18:15, 21:11, 21:15, 21:16, 21:18, 22:13, 22:17, 23:2, 23:12, 23:20, 25:23, 40:10, 42:9, 69:19, 88:11
**LIPTON** [1] - 3:4
**Lipton** [3] - 6:4, 63:7, 102:13
**list** [1] - 84:1
**listed** [1] - 79:2
**listen** [3] - 11:19, 37:3, 41:12
**litigant** [2] - 33:1, 56:16
**litigants** [1] - 46:4
**litigate** [1] - 121:9
**litigated** [2] - 26:3, 33:7, 37:19
**litigating** [1] - 106:1
**litigation** [3] - 43:25,

114:25, 123:4
**LLC** [1] - 125:23
**LLP** [11] - 1:16, 1:19, 2:8, 2:11, 2:14, 2:17, 2:23, 3:2, 3:13, 3:16, 3:19
**loading** [1] - 18:8
**lobbying** [2] - 53:12, 54:20
**logical** [1] - 34:8
**long-time** [1] - 118:23
**longstanding** [1] - 90:6
**look** [7] - 20:22, 49:12, 54:3, 85:11, 93:13, 111:21, 111:24
**looking** [4] - 29:16, 85:9, 87:19, 124:16
**lower** [1] - 83:10
**Lucas** [1] - 4:14
**LUCAS** [1] - 2:6

## M

**mail** [1] - 14:20
**maintained** [1] - 72:2
**MALLET** [1] - 2:17
**Mallet** [2] - 5:23, 102:8
**MALLET-PREVOST** [1] - 2:17
**manageability** [1] - 89:12
**manageable** [2] - 88:25, 89:19
**mandate** [5] - 18:14, 63:12, 63:15, 74:4, 75:5
**mandates** [1] - 60:18
**mandatorily** [2] - 113:15, 116:16
**mandatory** [2] - 49:10, 49:24
**MANGAN** [1] - 3:17
**MANGES** [1] - 1:19
**Manges** [2] - 9:22, 73:12
**manner** [4] - 9:18, 37:22, 41:9, 105:5
**March** [9] - 1:13, 13:15, 14:17, 29:18, 30:3, 52:4, 106:23, 125:11, 125:20
**Marcus** [2] - 6:6, 102:15
**MARCUS** [1] - 3:8
**Mark** [1] - 46:25
**market** [4] - 48:10, 52:13, 53:3, 97:5
**marketing** [2] - 40:25,

107:15
**marry** [1] - 69:13
**mason** [1] - 6:4
**MASON** [1] - 3:5
**Mason** [1] - 102:14
**Master** [1] - 1:22
**master** [146] - 4:20, 7:4, 7:11, 7:21, 7:22, 8:3, 8:8, 9:6, 9:9, 9:22, 10:14, 10:19, 13:17, 13:23, 14:12, 14:21, 16:11, 16:16, 16:20, 16:24, 17:1, 17:4, 17:7, 17:10, 17:19, 17:24, 18:2, 18:11, 19:21, 20:1, 21:24, 22:11, 29:5, 29:10, 29:15, 29:19, 30:4, 30:10, 30:15, 30:19, 30:25, 31:1, 31:14, 31:23, 34:17, 35:7, 35:14, 35:16, 35:24, 37:2, 37:6, 37:14, 38:8, 40:9, 47:16, 47:25, 48:14, 48:17, 48:21, 51:23, 53:4, 53:11, 55:9, 55:12, 58:17, 58:25, 59:3, 60:17, 61:16, 63:11, 63:18, 64:19, 65:2, 65:7, 65:20, 65:23, 65:25, 66:6, 66:9, 67:16, 67:25, 68:2, 69:9, 73:12, 73:21, 76:10, 76:14, 77:12, 77:22, 79:4, 79:5, 79:7, 82:18, 86:9, 91:25, 92:19, 92:25, 95:17, 99:12, 101:21, 103:8, 104:5, 105:16, 106:7, 106:13, 106:17, 106:20, 107:2, 107:9, 107:19, 108:4, 108:10, 108:22, 108:25, 110:15, 110:17, 110:25, 111:6, 111:15, 112:8, 112:9, 112:22, 113:1, 113:7, 113:16, 114:5, 114:24, 115:1, 116:7, 116:16, 117:9, 117:11, 117:25, 118:16, 119:3, 119:23, 120:11, 120:17, 121:2, 121:24, 122:16,

122:23, 123:7, 124:13
**master's** [15] - 13:16, 16:1, 29:1, 44:25, 65:10, 65:16, 68:8, 68:14, 73:14, 103:13, 107:23, 112:17, 118:24, 119:11, 119:17
**material** [3] - 7:8, 84:21, 97:9
**materially** [4] - 99:9, 108:21, 118:20, 118:25
**materials** [3] - 10:14, 10:16, 10:20
**matter** [7] - 26:19, 38:5, 39:18, 67:17, 93:9, 115:13, 117:21
**matters** [1] - 24:24
**MAX** [1] - 2:6
**maximize** [1] - 11:6, 44:16
**maximized** [1] - 39:5
**maximizing** [2] - 73:23, 108:8
**mean** [6] - 18:13, 24:14, 28:14, 51:8, 59:23, 61:7
**meaning** [1] - 32:10
**meaningful** [1] - 93:2
**meant** [5] - 57:14, 108:5, 108:17, 113:25, 122:20
**media** [1] - 79:23
**MEEHAN** [1] - 2:18
**Meehan** [2] - 5:22, 102:8
**meet** [6] - 41:24, 58:17, 112:8, 112:12, 122:8, 124:6
**meet-and-confer** [1] - 124:6
**meeting** [76] - 7:20, 7:25, 10:6, 10:7, 10:8, 10:9, 10:13, 10:15, 14:13, 16:2, 16:13, 16:14, 16:18, 17:3, 17:11, 17:13, 17:17, 17:20, 30:15, 30:16, 31:4, 31:7, 33:3, 33:18, 34:3, 34:5, 34:13, 34:14, 37:13, 41:14, 45:14, 47:16, 47:25, 49:7, 49:8, 65:14, 65:22, 68:23, 68:24, 69:4, 69:8, 69:22, 73:15, 74:6, 75:17, 75:22, 81:8, 82:6, 84:10,

103:14, 103:16,
103:18, 103:22,
104:6, 107:21,
108:2, 112:15,
112:21, 114:6,
114:10, 115:3,
116:4, 116:6,
116:14, 116:15,
117:3, 117:7, 118:5,
118:8, 118:10,
118:19, 119:4,
121:24, 121:25,
124:12
**meeting-related** [1] -
103:22
**meetings** [16] - 32:14,
41:17, 45:18, 45:23,
48:21, 74:7, 105:19,
105:23, 107:4,
107:6, 108:23,
112:17, 118:21,
119:16, 122:2, 122:3
**mellifluous** [1] - 47:5
**mention** [2] - 12:23,
107:4
**mentioned** [5] - 35:8,
49:11, 49:13, 50:1,
95:16
**mentioning** [1] - 49:24
**mere** [2] - 41:13, 65:11
**merely** [6] - 11:11,
23:4, 62:3, 63:10,
89:11
**merit** [2] - 63:11,
83:11
**meritorious** [1] -
113:6
**merits** [8] - 24:16,
28:11, 47:21, 50:24,
61:12, 104:13,
104:14, 119:6
**met** [3] - 41:20, 104:3,
106:7
**Mexico** [1] - 54:9
**Michael** [2] - 6:5,
102:14
**MICHAEL** [1] - 3:6
**might** [10] - 9:13,
52:11, 53:4, 60:17,
61:25, 83:9, 88:21,
89:3, 90:20, 119:14
**Miguel** [3] - 4:14,
46:20, 101:15
**MIGUEL** [1] - 2:5
**million** [6] - 80:22,
81:4, 82:16, 82:23,
83:19, 94:25
**millions** [1] - 88:21
**mind** [6] - 17:22,
36:15, 47:13,

104:12, 109:4, 118:2
**mindful** [3] - 84:21,
89:1, 91:7
**minute** [1] - 9:3
**minutes** [1] - 26:12
**modify** [1] - 117:2
**Molo** [1] - 6:18
**MOLO** [1] - 3:14
**MoloLamken** [2] -
6:19, 91:6
**MOLOLAMKEN** [1] -
3:13
**moment** [4] - 25:25,
54:5, 86:3, 97:22
**money** [4] - 80:15,
83:15, 113:2, 114:23
**month** [7] - 11:16,
12:7, 107:1, 107:10,
122:1, 122:4
**monthly** [9] - 95:20,
96:6, 97:14, 97:15,
97:18, 98:1, 98:9,
99:2, 121:25
**months** [4] - 37:14,
105:12, 107:11,
122:5
**moot** [1] - 114:21
**MORITZ** [3] - 3:2, 6:1,
102:10
**Moritz** [2] - 6:2,
102:11
**MORITZ,ESQ** [1] - 3:2
**morning** [30] - 4:11,
4:14, 4:16, 4:17, 5:3,
5:6, 5:11, 5:12, 5:17,
5:19, 5:25, 6:1, 6:12,
6:14, 6:15, 6:21,
6:23, 12:25, 15:19,
17:8, 25:19, 36:25,
46:18, 46:19, 63:5,
63:6, 65:23, 103:1,
114:22, 116:11
**Morris** [2] - 5:13,
102:1
**MORRIS** [1] - 2:20
**MOSLE** [1] - 2:17
**most** [5] - 49:1, 55:3,
62:17, 113:10,
123:10
**motion** [97] - 7:3,
8:10, 9:4, 10:10,
13:4, 14:7, 15:4,
17:15, 28:7, 31:5,
31:6, 32:21, 33:2,
33:5, 33:9, 33:17,
33:18, 33:20, 33:22,
34:2, 34:9, 34:14,
34:21, 34:23, 34:24,
35:5, 36:24, 41:25,
42:3, 45:15, 47:14,

47:19, 50:1, 50:25,
51:25, 59:19, 60:9,
61:8, 61:17, 62:7,
62:16, 63:10, 64:17,
64:18, 64:21, 66:18,
67:6, 67:9, 71:12,
71:17, 72:7, 73:9,
75:21, 76:1, 76:5,
76:12, 77:16, 78:18,
80:13, 92:15, 100:2,
102:20, 103:5,
103:6, 103:7, 103:9,
103:11, 103:12,
103:14, 103:19,
103:22, 103:24,
104:11, 104:17,
104:18, 104:20,
105:2, 105:8,
105:10, 105:13,
105:18, 105:22,
106:19, 111:15,
111:23, 111:25,
115:14, 116:14,
116:21, 116:24,
118:4, 118:6,
118:14, 119:6,
119:9, 119:18,
121:18
**MOTION** [3] - 1:9,
1:11, 125:16
**motions** [7] - 47:7,
83:11, 83:16, 89:17,
118:3, 118:9, 123:8
**motivation** [1] - 117:5
**mouth** [1] - 58:20
**move** [12] - 25:24,
40:1, 41:1, 41:7,
43:11, 45:7, 69:12,
74:18, 84:17, 84:22,
85:2, 92:22
**moved** [6] - 31:3,
31:21, 32:10, 32:19,
115:17, 115:21
**moving** [18] - 8:6,
8:11, 8:14, 12:10,
12:16, 15:10, 31:11,
39:22, 86:23, 97:21,
103:25, 105:11,
106:4, 108:20,
108:23, 111:1,
117:1, 118:18
**MOYER** [3] - 2:3, 4:11,
101:12
**Moyer** [2] - 4:12,
101:13
**MR** [92] - 4:11, 4:17,
5:3, 5:19, 6:1, 8:19,
8:22, 9:20, 11:17,
12:22, 13:1, 13:9,
13:13, 15:1, 15:8,

15:15, 15:19, 18:17,
21:7, 22:14, 22:19,
23:13, 23:18, 25:1,
26:7, 26:10, 26:15,
27:9, 28:9, 28:16,
33:15, 34:25, 36:11,
36:17, 36:25, 42:7,
43:2, 44:7, 45:1,
45:21, 46:15, 46:19,
50:10, 55:16, 55:19,
60:19, 64:6, 64:13,
66:21, 67:2, 67:8,
72:9, 73:7, 73:10,
75:14, 77:13, 77:17,
79:6, 79:19, 80:9,
80:20, 82:1, 82:12,
83:4, 83:23, 86:12,
87:10, 87:17, 91:5,
92:7, 92:17, 94:8,
95:14, 96:16, 98:3,
98:7, 98:10, 98:16,
98:23, 99:11,
100:16, 100:19,
100:25, 101:3,
101:12, 101:18,
101:24, 102:5,
102:10, 123:20,
123:23, 124:3
**MS** [9] - 5:12, 6:15,
63:4, 63:6, 83:14,
90:1, 100:22,
101:25, 124:1
**multiple** [2] - 67:9,
67:10
**Munger** [1] - 5:6
**MUNGER** [1] - 2:11
**music** [1] - 47:1
**Muslim** [1] - 56:22
**must** [2] - 116:16,
121:4
**MYRON** [1] - 1:16
**Myron** [1] - 4:18

## N

**namely** [2] - 31:20,
65:14
**Nate** [3] - 79:19, 94:8,
102:2
**Nathan** [1] - 5:16
**NATHAN** [1] - 2:23
**national** [1] - 22:25
**nature** [6] - 15:5, 76:7,
76:24, 87:14, 93:21,
94:5
**nauseam** [1] - 84:9
**nay** [2] - 55:25, 77:6
**necessarily** [2] - 8:3,
89:9, 113:11

**necessary** [9] - 44:15,
44:17, 44:18, 65:18,
66:3, 75:3, 110:12,
120:9, 120:21
**need** [22] - 7:4, 10:22,
11:5, 18:15, 58:20,
58:21, 69:16, 73:22,
73:24, 73:25, 82:3,
90:20, 94:15, 95:4,
99:16, 99:20, 100:3,
111:3, 111:9,
122:10, 123:3,
124:10
**needed** [11] - 27:17,
33:25, 37:25, 43:9,
65:21, 74:16, 84:20,
85:5, 88:14, 107:24,
117:21
**needs** [3] - 96:2,
108:10, 122:13
**negotiating** [1] -
105:25
**never** [7] - 35:25,
48:13, 48:22, 49:7,
50:3, 60:5, 60:16
**NEW** [2] - 125:3,
125:18
**new** [6] - 38:18, 41:4,
44:21, 81:6, 81:15,
81:23
**next** [6] - 52:1, 53:9,
80:11, 83:25, 87:13,
99:10
**nice** [5] - 4:1, 20:13,
20:14, 21:1, 113:13
**NICHOLS** [1] - 2:20
**Nichols** [2] - 5:13,
102:1
**nine** [1] - 33:12
**nobody** [1] - 88:7
**non** [2] - 42:10, 61:5
**non-advocacy** [1] -
42:10
**non-waivable** [1] -
61:5
**none** [3] - 96:3, 124:1,
124:3
**normal** [1] - 24:16
**notable** [1] - 56:21
**note** [11] - 9:25, 10:8,
11:24, 13:4, 36:21,
82:14, 83:9, 93:10,
93:15, 107:21,
111:12
**noted** [4] - 14:8,
38:12, 105:7, 106:24
**notes** [3] - 13:14,
110:1, 125:13
**noteworthy** [1] - 40:5
**nothing** [13] - 38:17,

57:23, 62:10, 78:19,
87:10, 100:16,
100:19, 109:19,
109:21, 110:15,
110:22, 110:23,
120:9
**notice** [6] - 30:4,
32:24, 98:3, 98:5,
106:3
**noticed** [1] - 33:9
**notified** [1] - 73:14
**notify** [1] - 96:24
**noting** [1] - 47:23
**notion** [5] - 47:24,
51:1, 51:23, 54:20,
60:2
**November** [2] - 48:4,
106:10
**number** [7] - 57:10,
65:5, 87:2, 88:8,
90:22, 93:17, 93:23
**Number** [1] - 125:9

## O

**obeyed** [1] - 60:4
**object** [3] - 8:24, 36:6,
82:3
**objected** [2] - 67:23,
93:22
**objection** [31] - 8:16,
8:21, 8:22, 15:13,
28:25, 29:9, 30:3,
31:9, 31:20, 32:1,
32:8, 36:2, 36:16,
39:21, 79:5, 79:15,
79:17, 79:21, 79:25,
80:2, 80:23, 81:3,
81:15, 81:21, 82:2,
82:8, 82:13, 83:18,
96:18, 97:12, 99:20
**objections** [3] - 6:25,
9:8, 36:18, 36:20,
36:21, 80:11, 80:21,
81:6, 82:18, 83:5,
89:16, 96:21, 99:10
**observe** [3] - 17:20,
31:4, 33:19
**observed** [1] - 116:11
**observer** [1] - 29:8
**observers** [1] - 30:22
**observing** [2] - 17:3,
45:19
**obtain** [2] - 29:20,
107:3
**obviously** [2] - 65:1,
99:7
**occasion** [1] - 116:12
**occur** [4] - 17:17,

33:18, 33:25, 115:3
**occurred** [10] - 14:12,
16:14, 29:7, 34:4,
35:13, 50:3, 67:22,
71:15, 75:17, 111:17
**occurring** [2] - 32:4,
67:24
**October** [3] - 106:2,
107:8, 107:18
**OF** [6] - 1:2, 1:6, 1:9,
125:2, 125:3, 125:10
**OFAC** [87] - 10:4,
10:10, 11:5, 14:2,
16:2, 16:20, 18:24,
19:15, 19:21, 21:21,
22:1, 24:8, 25:3,
26:22, 29:2, 29:20,
29:25, 30:1, 30:10,
30:11, 30:15, 30:20,
37:21, 39:7, 40:14,
40:16, 47:16, 47:19,
47:25, 48:8, 48:14,
48:15, 48:21, 51:1,
51:5, 51:6, 51:13,
52:7, 52:8, 52:13,
52:18, 52:24, 54:2,
54:13, 55:12, 55:21,
55:22, 59:1, 65:2,
65:17, 66:1, 66:10,
68:1, 68:3, 68:15,
69:1, 73:14, 73:17,
73:22, 74:5, 77:5,
77:7, 90:5, 103:14,
103:15, 103:17,
104:5, 105:16,
105:17, 106:8,
106:14, 107:4,
107:9, 107:13,
107:24, 108:6,
108:23, 112:8,
112:15, 112:17,
116:4, 118:25,
121:9, 122:22, 124:9
**OFAC's** [4] - 29:20,
30:5, 65:15, 121:8
**offer** [1] - 91:14
**offering** [1] - 91:15
**officer** [3] - 68:21,
70:6, 75:10
**OFFICIALLY** [1] -
125:17
**officially** [1] - 86:3
**often** [1] - 64:14
**old** [1] - 60:24
**Olson** [1] - 5:7
**OLSON** [1] - 2:11
**on-the-record** [1] -
24:4
**once** [8] - 25:25,
46:24, 49:7, 67:15,

95:19, 96:7, 96:23,
98:3
**one** [38] - 6:9, 6:14,
7:13, 12:9, 13:25,
23:8, 26:1, 34:11,
42:13, 49:1, 51:6,
53:8, 56:15, 57:8,
60:11, 60:20, 64:8,
69:10, 71:11, 71:12,
73:13, 77:19, 77:21,
79:20, 86:3, 88:4,
90:23, 94:17, 95:8,
95:14, 99:9, 100:8,
100:14, 104:10,
104:18, 106:19,
116:23, 121:21
**ones** [1] - 24:19
**ongoing** [2] - 54:9,
80:12
**open** [7] - 52:23,
52:25, 60:9, 74:24,
77:19, 93:25, 122:9
**opening** [8] - 35:5,
35:9, 64:21, 77:20,
77:25, 78:7, 119:17
**operable** [1] - 31:13
**operating** [1] - 29:12
**opinion** [3] - 44:3,
93:21, 106:23
**opportune** [1] -
123:10
**opportunity** [2] -
91:23, 123:6
**oppose** [1] - 45:19
**opposed** [1] - 25:9
**opposing** [1] - 119:18
**opposite** [1] - 51:19
**opposition** [2] - 45:12,
107:14
**optional** [1] - 60:3
**order** [54] - 10:5,
11:22, 12:6, 16:5,
28:24, 29:14, 29:18,
30:3, 31:3, 37:21,
37:25, 38:11, 38:16,
38:24, 39:9, 40:5,
40:12, 40:13, 43:11,
43:14, 44:16, 45:6,
48:2, 52:5, 60:23,
65:17, 66:2, 68:9,
70:5, 72:12, 73:23,
75:3, 75:4, 79:1,
80:3, 82:16, 84:14,
84:23, 86:14, 91:12,
93:11, 96:23, 97:1,
106:1, 106:25,
107:7, 107:23,
108:7, 112:18,
114:9, 120:6, 120:8,
122:12

**ordered** [1] - 7:14
**ordering** [1] - 9:5
**orderly** [1] - 10:18
**orders** [4] - 74:15,
74:21, 88:9, 120:21
**ordinarily** [1] - 88:18
**ordinary** [1] - 88:16
**original** [1] - 116:13
**otherwise** [3] - 41:1,
45:18, 116:17
**outdated** [1] - 109:8
**outline** [1] - 10:16
**outlined** [3] - 11:20,
39:8, 87:6
**own** [10] - 44:13,
51:14, 55:2, 55:22,
56:8, 56:9, 56:24,
58:20, 74:21, 120:20

## P

**P.A** [1] - 2:2
**pace** [1] - 115:16
**page** [8] - 26:2, 42:14,
52:17, 64:21, 65:9,
66:4, 67:19, 106:24
**pages** [4] - 105:19,
119:18, 119:20,
125:15
**paid** [10] - 59:22,
95:19, 96:3, 96:21,
97:15, 97:18, 98:9,
98:25, 99:5, 99:18
**papers** [21] - 17:6,
17:9, 31:11, 31:25,
33:22, 34:12, 35:9,
35:18, 41:11, 48:7,
50:9, 61:7, 67:14,
68:5, 68:8, 69:14,
77:20, 78:5, 78:13,
95:15
**paragraphs** [2] -
106:10, 107:17
**parameters** [1] - 117:3
**part** [11] - 14:9, 18:24,
49:22, 55:8, 62:24,
78:3, 84:11, 89:18,
110:6, 117:5, 118:1
**parte** [46] - 7:18,
14:11, 16:1, 17:21,
23:14, 28:13, 28:21,
32:13, 33:19, 35:21,
38:20, 38:23, 39:15,
41:21, 47:16, 47:25,
65:4, 67:22, 67:24,
68:3, 68:9, 68:11,
68:23, 69:7, 69:19,
76:9, 76:14, 76:24,
77:22, 105:17,

105:19, 105:22,
106:8, 106:14,
107:5, 108:22,
112:17, 112:22,
114:10, 118:19,
118:24, 119:16,
119:22, 120:4,
121:24, 124:13
**partial** [1] - 116:9
**partiality** [1] - 26:4
**participants** [1] - 11:2
**participate** [3] - 34:2,
88:5, 91:24
**particular** [5] - 22:20,
43:16, 65:8, 66:10,
104:6
**particularly** [8] - 7:11,
7:13, 45:23, 65:4,
106:24, 112:16,
114:22, 123:18
**parties** [82] - 7:7, 8:6,
8:11, 8:14, 9:7, 9:25,
12:13, 12:14, 14:8,
15:10, 15:21, 17:2,
29:6, 30:22, 37:9,
39:7, 39:15, 39:25,
40:23, 41:23, 42:13,
43:22, 44:20, 45:12,
45:13, 65:12, 71:8,
73:4, 74:8, 74:25,
75:18, 79:20, 82:7,
83:2, 83:6, 83:10,
83:17, 85:14, 85:20,
86:25, 87:23, 89:1,
89:25, 90:18, 91:25,
94:4, 94:9, 96:24,
99:15, 99:19, 100:6,
103:10, 104:3,
104:12, 105:3,
105:11, 105:14,
105:20, 106:4,
107:20, 107:25,
108:9, 108:20,
108:23, 111:1,
112:7, 112:20,
112:23, 112:24,
113:23, 114:5,
115:2, 115:17,
115:21, 116:3,
116:20, 117:1,
118:15, 118:18,
120:4, 122:7, 124:6
**parties'** [6] - 7:15, 8:1,
66:7, 103:7, 103:12,
118:23
**party** [11] - 20:6, 25:9,
29:3, 38:22, 45:3,
52:6, 75:1, 100:8,
103:25, 108:1,
119:24

**past** [1] - 40:17
**pattern** [3] - 80:15, 112:16, 114:8
**pause** [1] - 9:14
**pay** [5] - 83:8, 88:14, 95:21, 99:1, 99:3
**paying** [1] - 90:10
**PDV** [3] - 5:14, 36:18, 102:2
**PDVH** [2] - 2:25, 63:13
**PDVSA** [4] - 2:19, 5:21, 90:9, 90:17
**peacock** [1] - 120:24
**pecuniary** [1] - 89:10
**peep** [1] - 48:22
**pending** [3] - 7:3, 14:7, 102:20
**penny** [1] - 48:19
**people** [7] - 88:5, 88:11, 88:16, 88:19, 89:3, 89:13, 93:22
**per** [1] - 60:13
**perceive** [1] - 16:8
**perceived** [1] - 69:1
**percent** [3] - 95:2, 115:7
**perfectly** [4] - 58:19, 69:24, 74:3, 74:19
**performing** [1] - 75:10
**perhaps** [8] - 42:19, 45:13, 45:15, 115:15, 117:13, 121:25, 122:9, 124:8
**period** [1] - 35:4
**Perla** [2] - 5:22, 102:7
**PERLA** [1] - 2:17
**permission** [3] - 5:8, 5:10, 63:15
**permits** [1] - 119:17
**permitted** [3] - 49:6, 75:21, 88:12
**person** [3] - 119:13, 120:10, 120:14
**personal** [1] - 121:2
**personally** [1] - 41:16
**perspective** [2] - 65:16, 86:11
**persuaded** [3] - 108:24, 117:15, 120:5
**persuasive** [1] - 116:25
**persuasively** [1] - 44:12
**pertinent** [1] - 8:1
**petitions** [1] - 81:6
**Petroleum** [1] - 5:15
**phase** [1] - 43:14
**phone** [1] - 13:17
**phonetic** [1] - 48:6

**picking** [1] - 51:10
**piece** [1] - 85:7
**Pincus** [5] - 4:21, 38:4, 42:19, 84:19, 101:21
**place** [4] - 41:18, 57:7, 88:11, 89:11
**places** [1] - 120:23
**plain** [1] - 76:11
**Plaintiff** [1] - 1:4
**plan** [3] - 7:9, 63:12, 66:12, 99:23
**planned** [2] - 30:16, 35:16
**planning** [4] - 30:15, 30:25, 97:13, 97:15
**plans** [1] - 122:17
**playing** [1] - 62:6
**pleadings** [1] - 49:12
**pleased** [1] - 103:2
**pocket** [1] - 62:14
**pockets** [1] - 67:13
**podium** [1] - 84:2
**point** [45] - 7:23, 8:9, 11:23, 14:5, 15:7, 18:23, 21:6, 22:12, 23:25, 25:1, 27:16, 28:22, 41:11, 44:22, 45:5, 45:16, 46:11, 53:8, 53:9, 61:2, 69:11, 70:24, 71:2, 72:14, 76:2, 76:6, 76:8, 76:18, 77:2, 77:24, 80:19, 81:4, 81:22, 83:15, 85:18, 92:20, 93:20, 96:8, 99:3, 103:4, 107:6, 111:16, 112:6, 113:21, 113:24
**point-blank** [1] - 76:18
**pointed** [1] - 61:6
**points** [5] - 53:16, 55:20, 64:7, 77:21, 91:15
**policy** [36] - 19:2, 19:10, 19:19, 20:3, 20:4, 21:15, 21:21, 22:6, 22:17, 22:24, 24:24, 25:6, 37:8, 37:10, 37:11, 43:5, 53:13, 54:21, 55:10, 55:13, 55:23, 56:5, 56:13, 56:20, 56:24, 57:17, 58:9, 58:18, 58:23, 63:20, 63:23, 70:12, 72:15, 74:12, 77:8, 104:8
**portion** [1] - 18:5
**posed** [1] - 24:6
**position** [81] - 7:6,

7:16, 8:1, 10:25, 11:9, 11:12, 11:23, 12:10, 16:21, 18:1, 19:6, 19:12, 23:5, 23:6, 23:7, 23:8, 23:10, 23:11, 25:11, 26:3, 28:6, 30:2, 30:6, 30:20, 30:24, 34:6, 36:7, 37:6, 38:1, 38:19, 39:1, 39:3, 40:19, 43:8, 44:23, 46:11, 47:7, 47:19, 51:1, 51:5, 51:15, 51:17, 52:2, 53:5, 53:13, 54:22, 55:5, 55:7, 59:8, 65:3, 66:11, 68:25, 70:13, 70:21, 71:7, 71:24, 72:1, 72:21, 73:1, 74:17, 75:2, 75:16, 83:3, 83:5, 87:21, 87:23, 90:16, 98:19, 98:20, 109:15, 109:17, 110:4, 121:8, 121:10, 121:11, 121:13
**positions** [1] - 122:24
**possession** [2] - 51:11, 116:17
**possibility** [2] - 29:1, 39:19
**possible** [3] - 9:8, 91:21, 91:22
**post** [1] - 24:15
**post-judgment** [1] - 24:15
**pot** [1] - 58:20
**potential** [5] - 11:2, 106:16, 115:8, 117:7, 117:23
**potentially** [4] - 34:18, 39:20, 117:25, 122:7
**POTTER** [1] - 1:16
**potter** [1] - 4:19
**Potter** [1] - 101:19
**power** [13] - 26:23, 27:11, 27:18, 27:20, 27:24, 27:25, 44:13, 70:10, 70:15, 70:18, 70:19, 74:21, 120:20
**powers** [5] - 42:16, 42:23, 43:18, 57:15, 75:6
**practical** [1] - 115:22
**practice** [1] - 114:9
**pre** [1] - 50:7
**pre-rebutted** [1] - 50:7
**precautions** [1] - 124:14

**precise** [1] - 93:23
**precisely** [3] - 18:18, 26:5, 69:6
**predominate** [2] - 21:22, 21:23
**preface** [1] - 16:12
**prefatory** [4] - 52:20, 53:24, 54:14, 109:12
**preference** [2] - 56:1, 109:12
**preferences** [1] - 56:5
**prejudice** [4] - 19:16, 54:1, 109:22, 110:1
**premature** [1] - 86:11
**premise** [1] - 51:25
**preparation** [3] - 40:24, 85:3, 85:18
**preparations** [3] - 11:3, 96:25, 97:10
**prepare** [2] - 40:24, 84:12
**prepared** [6] - 7:24, 13:6, 78:25, 81:19, 87:4, 98:21
**preparing** [1] - 84:25
**presence** [2] - 30:21, 65:11
**present** [11] - 10:8, 12:17, 45:22, 46:5, 54:4, 54:22, 73:15, 73:17, 101:11, 103:18, 125:7
**presented** [1] - 10:14
**presenting** [1] - 5:17
**presently** [1] - 47:22
**preserve** [4] - 32:8, 80:23, 81:1
**preserved** [2] - 81:17, 82:8
**preside** [1] - 117:18
**president** [1] - 56:24
**presumably** [4] - 72:13, 98:11, 113:25, 122:12
**pretty** [4] - 14:14, 44:12, 60:8, 94:12
**prevail** [1] - 103:25
**previously** [4] - 23:22, 74:8, 74:23, 106:15
**PREVOST** [1] - 2:17
**principally** [1] - 7:2
**principle** [3] - 42:24, 43:1, 44:6
**priorities** [3] - 21:13, 22:2, 43:6
**prioritize** [3] - 19:1, 20:3, 69:16
**priority** [3] - 91:2, 93:15, 93:22
**privilege** [2] - 4:20,

79:10
**proactively** [1] - 107:9
**problem** [16] - 16:8, 24:20, 24:23, 31:22, 31:24, 32:17, 48:8, 50:24, 66:11, 67:20, 69:5, 69:21, 71:9, 81:24, 83:19
**problematic** [1] - 34:1
**problems** [2] - 47:21, 75:7
**procedural** [1] - 104:16
**procedure** [7] - 12:6, 46:2, 93:11, 106:25, 107:7, 107:23, 119:21
**procedures** [10] - 10:5, 37:21, 37:25, 84:14, 84:23, 86:14, 97:1, 106:1, 112:18, 114:9
**proceed** [8] - 7:1, 7:9, 8:18, 9:12, 15:18, 18:15, 74:10, 84:1
**proceeding** [9] - 17:16, 19:8, 31:11, 51:2, 51:18, 100:6, 106:22, 121:4, 121:15
**proceedings** [8] - 4:7, 41:1, 43:15, 101:6, 116:10, 117:13, 117:24, 125:8
**proceeds** [1] - 90:5
**process** [81] - 10:16, 10:17, 10:19, 10:22, 11:1, 11:2, 11:11, 11:21, 11:22, 12:14, 12:21, 16:22, 19:9, 19:23, 21:3, 22:24, 24:4, 24:11, 26:25, 27:15, 28:19, 28:24, 29:14, 29:21, 33:6, 37:18, 37:20, 37:24, 39:5, 39:20, 40:1, 40:15, 40:25, 41:8, 43:11, 44:14, 45:7, 49:18, 52:10, 52:12, 52:21, 53:4, 60:21, 63:1, 65:15, 68:9, 68:16, 69:12, 71:4, 73:23, 74:9, 83:2, 84:12, 85:14, 86:13, 87:7, 88:6, 88:24, 89:1, 89:12, 89:15, 89:19, 90:10, 90:11, 91:25, 92:21, 92:22, 95:19, 95:22, 97:4, 97:8, 97:20, 97:21,

100:6, 104:23, 105:25, 107:15, 108:1, 108:13, 109:8, 124:6
**professional** [1] - 97:7
**proof** [1] - 104:11
**proper** [1] - 80:5
**properly** [1] - 105:24
**properties** [1] - 105:6
**property** [8] - 58:7, 58:8, 58:11, 89:5, 89:14, 93:1, 93:9, 94:19
**propose** [1] - 122:6
**proposed** [2] - 10:21, 46:1
**proposition** [4] - 49:17, 57:19, 70:9, 120:22
**prospect** [1] - 72:19
**prospective** [1] - 11:1
**prostrate** [2] - 57:15, 70:13
**proven** [1] - 108:20
**provide** [4] - 22:8, 91:17, 91:19, 91:20
**providing** [4] - 16:18, 30:11, 68:15, 70:8
**provision** [4] - 75:25, 88:1, 95:21, 96:2
**provisions** [3] - 76:21, 76:22, 107:16
**prudential** [1] - 52:11
**public** [2] - 79:12, 80:7
**purely** [1] - 62:23
**purpose** [5] - 16:13, 16:17, 17:11, 65:14, 87:25
**purposes** [8] - 13:3, 27:3, 28:17, 39:8, 40:21, 43:3, 47:23, 88:3
**pursuant** [2] - 10:4, 37:20
**purview** [1] - 97:7
**push** [1] - 12:4
**put** [11] - 4:5, 7:12, 13:10, 30:4, 43:22, 48:7, 74:10, 84:6, 85:21, 101:9, 124:10
**putting** [2] - 23:13, 85:16

## Q

**quash** [1] - 80:13
**questioned** [2] - 119:12, 119:15

**questions** [16] - 6:24, 8:4, 8:7, 8:10, 9:15, 16:4, 24:5, 42:6, 60:10, 72:12, 100:10, 103:3, 121:20, 123:17, 123:21, 123:23
**quick** [1] - 13:7
**quite** [2] - 35:19, 117:13
**quote** [5] - 29:17, 65:6, 69:14, 107:12, 109:16
**quoted** [1] - 67:5
**quoting** [1] - 59:21

## R

**raise** [6] - 9:13, 21:12, 22:8, 82:4, 87:9, 87:15
**raised** [8] - 16:6, 17:6, 28:25, 38:18, 66:15, 93:16, 106:5
**raising** [1] - 76:1
**ran** [1] - 51:9
**rank** [1] - 90:21
**ranking** [1] - 91:3
**rate** [1] - 98:9
**RATH** [1] - 3:11
**Rath** [1] - 6:16
**rather** [4] - 52:25, 63:20, 89:6, 90:12
**Ray** [5] - 4:22, 9:21, 37:1, 73:11, 79:6
**ray** [2] - 99:11, 101:21
**RAY** [1] - 1:19
**reached** [1] - 10:2
**react** [1] - 52:14
**read** [6] - 17:9, 26:6, 27:11, 27:13, 30:7, 45:11, 64:18, 69:14, 78:10
**reads** [1] - 77:19
**ready** [1] - 87:5
**real** [1] - 86:1
**really** [21] - 13:3, 17:23, 20:13, 21:1, 28:23, 40:10, 47:10, 51:20, 71:13, 74:16, 76:20, 81:23, 85:8, 85:17, 88:23, 108:18, 112:24, 113:5, 117:23, 118:17, 123:9
**reason** [9] - 14:10, 16:23, 17:1, 17:18, 62:6, 69:15, 104:1, 107:25, 118:12

**reasonable** [11] - 18:11, 21:3, 22:9, 29:8, 30:7, 109:14, 119:12, 120:8, 120:10, 120:14, 120:16
**reasonably** [7] - 33:1, 38:22, 50:12, 50:19, 115:22, 119:12, 119:15
**reasoning** [3] - 102:22, 103:21, 103:23
**reasons** [7] - 25:7, 28:9, 52:11, 103:8, 115:24, 118:4, 121:17
**reauthorized** [1] - 54:14
**rebuttal** [3] - 8:14, 36:12, 36:14
**rebutted** [1] - 50:7
**receive** [2] - 11:9, 12:2
**received** [3] - 11:8, 90:16, 109:10
**receiving** [2] - 10:24, 90:18
**recent** [1] - 89:17
**recently** [1] - 41:5
**recess** [2] - 101:5, 124:19
**recitation** [1] - 32:9
**recognize** [7] - 43:24, 52:18, 55:7, 68:20, 80:12, 103:10, 115:12
**recognized** [3] - 24:3, 54:16, 94:18
**recognizes** [4] - 54:14, 54:23, 57:6, 77:5
**recollection** [2] - 13:11, 13:15
**recommend** [1] - 40:23
**recommendation** [2] - 59:4, 98:12
**recommendations** [3] - 85:16, 86:19, 86:23
**reconvene** [1] - 100:5
**record** [30] - 4:5, 7:8, 7:12, 7:13, 7:23, 7:24, 8:5, 9:24, 13:2, 13:7, 13:10, 15:6, 23:15, 24:4, 24:10, 36:21, 39:11, 66:23, 71:22, 72:4, 73:24, 74:11, 76:11, 77:23, 78:12, 81:20, 82:15, 101:10, 112:13,

122:11
**records** [6] - 9:6, 79:4, 79:9, 79:12, 79:21, 80:4
**recurring** [1] - 124:12
**recusal** [2] - 47:14, 47:19, 51:25
**recused** [2] - 59:24, 59:25
**red** [2] - 51:9, 51:13
**Red** [3] - 3:15, 6:17, 91:6
**redact** [1] - 79:10
**redacted** [1] - 80:8
**redactions** [1] - 80:5
**refer** [2] - 103:15, 105:20
**reference** [3] - 66:20, 106:15, 116:22
**referred** [1] - 29:15
**referring** [2] - 75:24, 75:25
**refused** [1] - 40:17
**regard** [2] - 64:15, 82:22
**regarding** [1] - 82:5
**regime** [5] - 18:24, 26:22, 52:7, 108:15, 110:9
**regret** [1] - 38:14
**regular** [3] - 121:23, 123:6, 124:12
**regulations** [3] - 24:10, 27:12, 27:14
**rehash** [1] - 103:12
**reiterated** [1] - 91:13
**relate** [1] - 16:9
**related** [3] - 8:10, 97:8, 103:22
**relating** [5] - 34:12, 34:14, 96:19, 97:3, 116:4
**relevant** [6] - 38:9, 59:15, 61:9, 62:15, 105:13, 111:18
**relief** [5] - 75:19, 80:19, 114:20, 115:6, 116:4
**reluctantly** [2] - 116:1, 117:4
**remainder** [1] - 89:4
**remained** [1] - 35:12
**remains** [1] - 59:17
**remedy** [1] - 43:14
**remind** [1] - 97:18
**reminded** [1] - 14:5
**reminding** [1] - 14:13
**remove** [2] - 27:24, 118:1
**repeat** [1] - 26:11

**repeatedly** [2] - 110:7, 119:1
**reply** [8] - 35:18, 43:23, 64:20, 66:4, 66:5, 67:10, 77:20, 77:25
**report** [25] - 11:25, 12:4, 12:12, 15:14, 36:16, 40:22, 84:1, 84:13, 84:16, 84:25, 85:19, 86:4, 86:7, 87:14, 87:15, 87:20, 91:21, 92:5, 92:10, 97:1, 97:23, 99:17, 107:18, 124:7, 124:11
**reported** [2] - 30:11, 125:7
**Reporter** [2] - 125:5, 125:6
**reporter** [3] - 4:8, 46:21, 122:10
**reports** [2] - 48:17, 68:14
**represent** [1] - 96:13
**representative** [1] - 79:24
**representing** [1] - 4:20
**REPUBLIC** [2] - 1:6, 125:10
**Republic** [7] - 2:13, 5:5, 47:10, 49:4, 49:22, 57:25, 58:8
**republic** [6] - 15:16, 47:4, 48:22, 56:11, 61:14, 62:24
**Republican** [2] - 49:5, 49:15
**request** [10] - 12:18, 13:16, 22:25, 52:19, 55:11, 75:18, 79:25, 80:1, 90:7, 91:8
**requests** [3] - 80:18, 84:5, 109:23
**require** [4] - 54:18, 113:15, 115:24, 123:9
**required** [3] - 50:18, 62:2, 108:15
**requirement** [2] - 105:1, 105:7
**requirements** [3] - 18:22, 29:4, 31:13
**requires** [3] - 6:9, 44:4, 113:8
**reserve** [3] - 62:13, 66:19, 117:6
**Reserve** [1] - 3:18
**resign** [1] - 117:21

**resolve** [6] - 33:21, 72:7, 72:14, 98:21, 99:15, 111:3
**resolved** [2] - 30:3, 33:10
**respect** [21] - 10:25, 12:10, 19:13, 24:5, 28:20, 28:22, 30:9, 33:17, 34:1, 35:8, 67:11, 70:3, 70:14, 72:12, 78:11, 81:7, 82:5, 87:23, 110:7, 110:20, 116:5
**respectful** [1] - 50:14
**respectfully** [5] - 26:16, 33:16, 34:25, 91:9, 99:14
**respond** [3] - 33:14, 45:20, 66:6
**responded** [1] - 29:5
**response** [14] - 26:8, 26:10, 29:9, 35:14, 43:23, 48:9, 50:9, 64:19, 65:7, 65:10, 72:8, 74:14, 81:24, 105:18
**rest** [2] - 9:1, 15:23
**restate** [1] - 45:4
**result** [1] - 99:16
**resulted** [1] - 94:20
**returning** [1] - 102:18
**revealed** [1] - 61:8
**review** [2] - 115:9, 116:13
**Richard** [1] - 6:4
**RICHARD** [1] - 3:5
**RICHARDS** [1] - 2:2
**Richards** [2] - 4:12, 101:13
**Ricky** [1] - 102:14
**rights** [4] - 33:8, 50:16, 61:10, 92:15
**rise** [3] - 81:8, 106:3, 120:15
**risk** [1] - 81:14
**Robert** [1] - 4:21
**role** [5] - 21:6, 25:12, 26:5, 69:3, 75:10
**room** [9] - 4:9, 5:1, 5:2, 45:13, 58:14, 79:14, 79:18, 94:4, 111:4
**rosen** [1] - 63:7
**ROSEN** [1] - 3:4
**Ross** [2] - 6:2, 102:11
**ROSS** [1] - 3:2
**Rule** [1] - 120:19
**rule** [10] - 50:18, 51:4, 54:11, 77:5, 100:2, 103:5, 119:20,

119:22, 119:25, 121:15
**ruled** [4] - 31:5, 42:1, 53:1, 53:7
**ruling** [9] - 16:1, 81:9, 100:10, 100:11, 102:19, 106:21, 112:1, 123:18, 123:24
**rulings** [2] - 50:22, 121:20
**run** [2] - 79:1, 100:14

## S

**sailed** [1] - 52:4
**sale** [52] - 10:5, 10:16, 10:22, 10:25, 11:2, 11:21, 12:6, 12:14, 12:20, 16:22, 19:9, 19:22, 19:25, 22:23, 27:15, 28:24, 29:13, 29:22, 37:20, 37:21, 37:24, 39:4, 39:20, 43:11, 45:7, 46:1, 52:9, 52:10, 52:21, 54:19, 57:6, 63:24, 68:16, 74:15, 77:6, 84:14, 84:23, 85:13, 88:4, 88:13, 89:2, 91:25, 94:14, 94:16, 106:24, 107:7, 107:22, 108:16, 109:13, 112:18, 114:9
**sales** [20] - 45:13, 48:2, 52:12, 52:20, 60:23, 65:15, 68:9, 86:14, 87:23, 89:1, 92:22, 93:11, 95:19, 95:22, 97:1, 100:5, 106:1, 108:1, 110:12, 124:5
**salient** [1] - 28:23
**Sam** [2] - 5:20, 102:6
**SAM** [2] - 2:15, 3:20
**sanctions** [11] - 18:24, 20:20, 24:14, 26:22, 27:4, 69:1, 70:4, 91:18, 92:24, 108:15, 110:8
**sand** [1] - 62:25
**sandbagging** [1] - 64:10
**satellites** [3] - 48:23, 49:5, 49:15
**satisfies** [1] - 94:19
**satisfy** [2] - 94:24, 95:2

**saving** [1] - 62:13
**saw** [3] - 52:8, 89:15, 97:22
**schedule** [3] - 33:10, 112:11, 122:5
**scheduled** [3] - 14:17, 114:6, 115:3
**SCHNEIDER** [2] - 1:17, 101:18
**Schneider** [1] - 101:19
**Schrock** [22] - 4:22, 8:20, 8:25, 9:17, 9:21, 13:19, 36:23, 37:1, 73:8, 73:11, 79:7, 82:11, 84:2, 91:16, 92:3, 92:13, 95:16, 96:12, 99:11, 100:15, 101:21, 123:19
**SCHROCK** [34] - 1:19, 8:22, 9:20, 11:17, 12:22, 13:1, 13:9, 13:13, 15:1, 15:8, 36:25, 42:7, 43:2, 44:7, 45:1, 45:21, 46:15, 73:10, 77:13, 79:6, 80:9, 82:12, 86:12, 87:10, 92:7, 96:16, 98:3, 98:7, 98:10, 98:16, 99:11, 100:16, 101:24, 123:20
**Schrock's** [1] - 79:14
**SCHULMAN** [1] - 2:6
**se** [1] - 60:13
**SEALED** [1] - 125:17
**sealed** [1] - 122:11
**search** [1] - 75:20
**seat** [1] - 9:2
**second** [6] - 28:10, 53:25, 76:6, 77:23, 80:1, 83:14
**secondary** [1] - 89:5
**secret** [5] - 68:23, 68:24, 69:4, 122:2, 122:3
**section** [8] - 31:13, 47:15, 94:23, 104:21, 104:22, 105:4, 105:8, 116:22
**security** [1] - 22:25
**see** [22] - 4:1, 7:11, 7:22, 8:4, 9:11, 43:12, 52:13, 53:3, 53:22, 57:10, 60:12, 72:17, 75:6, 81:23, 88:13, 90:4, 91:11, 94:6, 96:17, 99:10, 107:16, 114:17
**seeing** [1] - 29:8

**seek** [7] - 52:12, 60:14, 80:16, 88:16, 114:20, 118:15, 119:3
**seeking** [8] - 7:16, 14:8, 29:25, 39:2, 43:15, 105:3, 106:17, 115:6
**seem** [3] - 23:19, 71:22, 88:24
**sell** [5] - 63:13, 94:19, 94:24, 95:1
**sense** [4] - 12:4, 24:16, 60:24, 93:2
**sensitive** [2] - 45:24, 54:10
**sentence** [1] - 14:1
**sentences** [1] - 64:18
**separate** [5] - 23:16, 28:18, 60:13, 61:23, 77:24
**separation** [5] - 42:16, 42:23, 43:18, 57:14, 75:6
**sequence** [1] - 35:2
**serious** [1] - 71:21
**seriously** [1] - 39:16
**servants** [1] - 58:16
**served** [1] - 57:17
**set** [6] - 10:20, 105:17, 117:11, 119:20, 121:22, 121:23
**setting** [2] - 112:14, 123:14
**seven** [2] - 64:21, 66:5
**several** [2] - 13:19, 85:23
**shall** [2] - 29:19, 107:12
**share** [1] - 88:22
**shared** [1] - 122:6
**shares** [2] - 63:13, 72:20
**shift** [2] - 47:11, 76:18
**ship** [1] - 52:4
**short** [4] - 52:10, 52:21, 81:19, 122:18
**short-circuit** [1] - 81:19
**shorter** [1] - 32:18
**Shorthand** [2] - 125:5, 125:6
**shorthand** [2] - 125:7, 125:13
**show** [1] - 103:25
**showing** [1] - 105:14
**shown** [2] - 121:5
**shy** [1] - 71:23
**side** [17] - 4:9, 5:1, 5:2, 16:6, 16:25,

21:11, 23:20, 33:25, 34:16, 46:5, 47:2, 69:19, 71:23, 78:3, 79:14, 79:18, 111:12
**SIGNED** [1] - 125:17
**significant** [3] - 90:22, 95:3, 116:23
**significantly** [1] - 54:13
**similar** [1] - 118:25
**similarly** [2] - 64:1, 109:22
**simply** [14] - 11:22, 18:16, 24:21, 40:18, 41:7, 41:15, 45:3, 45:4, 45:5, 84:24, 89:6, 93:11, 104:3, 115:19
**single** [1] - 70:7
**sit** [1] - 114:1
**sitting** [1] - 113:14
**situation** [9] - 18:2, 18:9, 19:20, 21:19, 35:11, 47:13, 58:6
**six** [7] - 11:16, 33:8, 33:11, 107:1, 107:10, 107:11
**six-month** [4] - 11:16, 107:1, 107:10
**sleight** [1] - 53:10
**slow** [3] - 115:19, 115:20, 117:23
**small** [1] - 54:18
**smoking** [1] - 49:3
**so-called** [1] - 56:22
**sold** [1] - 90:4
**sole** [2] - 104:10, 108:12
**solicit** [4] - 10:3, 12:15, 65:14, 107:12
**solicited** [2] - 11:18, 37:21
**someone** [3] - 6:9, 46:24, 89:8
**sometime** [2] - 78:18, 112:8
**sometimes** [2] - 57:11
**somewhat** [5] - 35:12, 38:10, 90:15, 102:21, 109:8
**soon** [2] - 31:21, 32:10
**sooner** [2] - 90:12, 106:6
**sorry** [1] - 106:21
**sort** [10] - 16:12, 18:8, 20:23, 45:16, 50:7, 55:1, 62:6, 93:5, 93:21, 123:6
**sought** [1] - 116:5

**sounds** [6] - 8:19, 15:1, 47:1, 82:24, 92:12, 98:19
**speaking** [3] - 6:7, 50:12, 58:19
**speaks** [2] - 58:24, 89:24
**Special** [1] - 1:22
**special** [160] - 4:20, 7:3, 7:10, 7:21, 7:22, 8:2, 8:8, 9:6, 9:9, 9:22, 10:13, 10:19, 13:16, 13:17, 13:23, 14:11, 14:21, 16:1, 16:10, 16:16, 16:20, 16:24, 17:1, 17:3, 17:7, 17:10, 17:19, 17:24, 18:2, 18:10, 19:21, 20:1, 21:24, 22:11, 29:1, 29:4, 29:10, 29:15, 29:19, 30:4, 30:10, 30:14, 30:19, 30:24, 31:1, 31:14, 31:23, 34:17, 35:7, 35:14, 35:16, 35:24, 37:2, 37:5, 37:14, 38:8, 40:9, 44:25, 47:16, 47:24, 48:13, 48:17, 48:21, 51:23, 53:4, 53:11, 55:9, 55:12, 58:17, 58:25, 59:3, 60:17, 63:11, 63:18, 64:19, 65:2, 65:7, 65:10, 65:16, 65:20, 65:23, 65:25, 66:5, 66:9, 67:16, 67:25, 68:2, 68:7, 68:14, 69:9, 73:12, 73:14, 73:21, 76:10, 76:13, 77:12, 77:21, 79:4, 79:5, 79:7, 82:18, 86:9, 91:24, 92:19, 92:25, 95:17, 99:12, 101:20, 103:7, 103:13, 104:5, 105:16, 106:7, 106:13, 106:16, 106:20, 107:2, 107:9, 107:19, 107:23, 108:4, 108:10, 108:22, 108:25, 110:15, 110:17, 110:25, 111:6, 111:15, 112:8, 112:9, 112:16, 112:22, 113:1, 113:7, 113:16, 114:5, 114:24, 114:25,

116:7, 116:15, 117:8, 117:11, 117:25, 118:16, 118:24, 119:3, 119:11, 119:17, 119:23, 120:11, 120:17, 121:1, 121:24, 122:16, 122:23, 123:7, 124:13
**species** [1] - 58:7
**specific** [9] - 10:22, 25:2, 29:22, 37:17, 81:6, 82:3, 108:14, 109:23, 113:22
**specifically** [5] - 38:20, 66:15, 66:16, 114:7, 119:10
**specifics** [2] - 11:21, 67:11
**specked** [1] - 48:19
**Speedbudget** [1] - 125:23
**spend** [1] - 80:14
**spending** [1] - 83:15
**spent** [4] - 28:12, 113:2, 113:3, 114:24
**spirit** [1] - 91:15
**sprung** [1] - 50:2
**squadron** [1] - 49:16
**ss** [1] - 125:2
**staff** [1] - 32:19
**Stahl** [2] - 5:16, 102:3
**STAHL** [1] - 2:23
**stakes** [1] - 114:23
**stand** [1] - 50:15
**standing** [1] - 81:20, 82:2, 82:8, 82:13, 82:23, 83:18
**stands** [1] - 90:15
**Stark** [1] - 1:12
**start** [14] - 4:4, 4:9, 6:22, 7:10, 8:2, 15:12, 16:7, 46:24, 47:8, 52:12, 96:7, 99:2, 115:18, 123:19
**started** [4] - 9:18, 61:3, 86:8, 114:18
**STATE** [1] - 125:2
**state** [1] - 73:16
**statement** [9] - 21:8, 21:9, 21:12, 23:23, 24:2, 26:21, 53:17, 72:1, 109:10
**States** [18] - 19:6, 19:10, 19:19, 24:5, 53:14, 56:16, 56:19, 58:23, 62:18, 63:22, 72:16, 72:17, 72:23, 91:17, 109:7,

109:11, 109:15, 109:17
**STATES** [1] - 1:1
**stating** [1] - 109:11
**status** [11] - 30:12, 68:15, 84:1, 85:23, 86:4, 87:14, 94:5, 100:1, 107:18, 124:7, 124:11
**statute** [3] - 50:4, 61:19, 62:20
**statutory** [2] - 76:21, 76:22
**stay** [1] - 100:7
**STEELE** [2] - 1:16, 4:17
**Steele** [1] - 4:19
**Stenotype** [1] - 125:7
**step** [4] - 20:23, 25:7, 68:18, 71:11
**STEPHEN** [1] - 2:9
**Stephen** [1] - 5:4
**steps** [8] - 18:11, 53:24, 54:14, 84:12, 84:21, 92:24, 97:9, 109:13
**STEVEN** [1] - 3:14
**Steven** [1] - 6:18
**sticking** [1] - 102:18
**still** [11] - 7:3, 14:7, 52:25, 72:11, 80:13, 91:13, 93:25, 109:17, 109:20, 111:14, 111:25
**still-pending** [1] - 7:3
**Stonehenge** [1] - 105:6
**stop** [3] - 28:14, 81:1, 98:15
**strategic** [4] - 31:21, 41:12, 78:2, 116:2
**street** [1] - 51:11
**strenuously** [1] - 93:23
**stretch** [1] - 63:21
**strikes** [1] - 40:4
**subject** [3] - 21:25, 48:4, 60:9
**subjected** [1] - 51:16
**subjective** [1] - 62:4
**submission** [1] - 61:16
**submit** [2] - 7:15, 11:25
**submitted** [1] - 63:9
**submitting** [1] - 48:17
**subordinate** [3] - 20:5, 21:14, 37:11
**subsection** [1] - 62:19
**subsequent** [1] - 30:9

**subsists** [1] - 58:12
**substance** [4] - 23:18, 23:21, 74:16, 87:18
**substantial** [5] - 41:24, 90:23, 104:2, 115:23, 116:8
**substantially** [3] - 115:19, 117:20, 117:23
**substantive** [3] - 7:19, 82:20, 86:1
**sufficient** [3] - 32:8, 94:24, 119:9
**sufficiently** [1] - 112:2
**suggest** [3] - 99:6, 110:24, 122:20
**suggested** [1] - 93:8
**suggesting** [2] - 42:17, 78:4
**suggestion** [4] - 8:17, 45:11, 45:20, 90:24
**suggestions** [3] - 7:1, 91:14, 122:9
**summary** [3] - 15:2, 105:13, 122:18
**summer** [2] - 41:19, 106:8
**superb** [1] - 64:11
**supplement** [2] - 7:12, 8:5
**supplemental** [16] - 11:25, 12:4, 12:12, 15:14, 40:22, 84:13, 84:16, 84:25, 85:18, 86:7, 91:20, 92:5, 92:10, 97:1, 97:23, 99:17
**supplementing** [3] - 9:24, 13:2, 15:6
**support** [5] - 37:24, 70:8, 106:9, 107:13, 107:14
**supported** [1] - 120:23
**supportive** [1] - 93:3
**suppose** [2] - 82:14, 92:4
**supposedly** [4] - 46:25, 47:14, 47:17, 68:13
**Supreme** [4] - 43:25, 44:2, 57:14, 120:24
**surely** [1] - 44:1
**surmise** [1] - 34:5
**surprised** [3] - 83:6, 94:11, 123:8
**swiftly** [1] - 115:21
**system** [1] - 59:23

**T**

**table** [1] - 5:15
**tactical** [11] - 49:4, 49:21, 61:9, 61:20, 61:21, 62:1, 62:5, 62:15, 62:23, 76:3, 116:8
**talented** [1] - 49:16
**talks** [1] - 54:9
**team** [1] - 43:25
**technical** [1] - 50:20
**ten** [1] - 42:14
**term** [1] - 84:22
**termed** [1] - 91:3
**terms** [8] - 9:24, 13:1, 55:2, 70:24, 78:1, 80:7, 83:17, 88:24
**THE** [107] - 1:1, 1:2, 4:1, 4:16, 4:25, 5:10, 5:18, 5:24, 6:11, 6:20, 8:20, 8:24, 11:14, 12:18, 12:24, 13:5, 13:10, 13:14, 15:3, 15:9, 15:17, 18:7, 20:9, 22:10, 22:15, 23:4, 23:16, 24:13, 25:24, 26:8, 26:13, 27:2, 28:4, 28:14, 32:9, 34:8, 36:9, 36:13, 36:19, 42:5, 42:8, 43:21, 44:20, 45:10, 46:14, 46:16, 50:6, 55:6, 55:18, 60:11, 63:2, 63:5, 64:3, 64:12, 66:20, 66:25, 67:4, 71:19, 73:3, 73:8, 75:12, 77:11, 77:15, 78:16, 79:13, 79:16, 79:17, 79:22, 80:10, 81:12, 82:9, 83:1, 83:12, 83:21, 83:25, 84:8, 85:21, 87:8, 87:12, 89:22, 91:4, 92:2, 92:8, 94:3, 95:11, 96:10, 97:24, 98:5, 98:8, 98:11, 98:18, 99:6, 99:22, 100:18, 100:21, 100:23, 101:1, 101:4, 101:7, 101:17, 101:23, 102:4, 102:16, 123:22, 123:25, 124:2, 124:4
**themselves** [3] - 40:18, 68:8, 78:13
**theory** [1] - 59:19

**therefore** [3] - 56:2, 57:22, 76:12
**they've** [1] - 116:5
**thinking** [5] - 31:18, 63:18, 73:1, 85:1, 86:8
**thinks** [1] - 91:1
**third** [12] - 18:14, 20:21, 31:19, 59:17, 59:21, 59:24, 72:13, 91:10, 105:2, 105:6, 115:24, 120:4
**thorough** [1] - 78:21
**thoroughly** [1] - 103:3
**thoughts** [5] - 8:20, 12:16, 85:12, 97:6, 100:4
**threatens** [1] - 33:6
**three** [3] - 41:14, 106:8, 113:10
**throughout** [2] - 62:12, 105:25
**throw** [2] - 62:25, 117:6
**tickets** [1] - 88:10
**ticking** [1] - 114:18
**timeline** [2] - 10:17, 105:14
**timeliness** [20] - 16:3, 28:6, 28:7, 28:16, 28:17, 28:21, 31:24, 32:22, 34:2, 36:8, 49:2, 61:22, 62:9, 64:9, 64:16, 76:8, 105:1, 105:7, 118:11, 118:18
**timely** [3] - 61:10, 80:3, 105:5
**timing** [9] - 47:8, 60:13, 61:7, 61:12, 62:16, 111:19, 118:2, 118:3, 119:6
**tin** [1] - 58:20
**tin-pot** [1] - 58:20
**TO** [3] - 1:9, 1:11, 125:16
**today** [24] - 4:7, 6:3, 6:7, 6:17, 9:11, 27:15, 40:3, 58:13, 69:20, 78:18, 85:23, 100:3, 100:6, 100:12, 103:17, 103:20, 108:6, 109:6, 111:3, 111:9, 111:23, 113:2, 123:16, 124:8
**today's** [1] - 106:12
**together** [2] - 4:4, 9:10
**Tolles** [1] - 5:6
**TOLLES** [1] - 2:11

**tone** [1] - 47:5
**took** [3] - 32:7, 33:23, 115:6
**touch** [1] - 13:22
**towards** [1] - 109:13
**TOWNSEND** [1] - 2:6
**Townsend** [1] - 4:15
**track** [1] - 87:3
**transaction** [6] - 20:16, 20:24, 54:17, 108:8, 108:16, 110:12
**transcript** [3] - 106:21, 125:12, 125:14
**TRANSCRIPT** [1] - 1:9
**transfer** [2] - 25:6, 93:1
**transparent** [1] - 24:11
**treasury** [1] - 73:16
**Tree** [3] - 3:15, 6:17, 91:6
**tried** [5] - 33:22, 37:3, 37:16, 62:25, 68:4
**true** [3] - 70:14, 72:10, 125:15
**trump** [3] - 53:18, 56:21, 56:22
**try** [9] - 17:25, 25:25, 26:11, 50:21, 63:21, 63:23, 93:5, 93:21, 110:23
**trying** [17] - 21:17, 35:6, 35:9, 38:15, 40:4, 40:11, 40:12, 43:8, 50:8, 53:2, 63:22, 64:24, 68:20, 80:25, 81:1, 99:14, 111:14
**TUNELL** [1] - 2:20
**Tunell** [1] - 5:14
**turn** [6] - 5:1, 8:5, 8:10, 15:10, 80:10, 89:24
**turned** [1] - 14:14
**twain** [1] - 46:25
**two** [17] - 19:18, 28:18, 47:23, 53:16, 55:19, 58:17, 60:19, 61:20, 66:22, 72:23, 77:20, 105:21, 107:21, 113:10, 122:1, 122:5
**type** [2] - 71:14, 111:1
**typed** [1] - 125:13
**types** [2] - 86:22, 108:21
**typewritten** [1] - 125:15

# U

**U.S** [30] - 10:3, 10:9, 10:22, 10:24, 11:6, 11:8, 11:12, 11:19, 12:2, 12:9, 38:1, 38:19, 39:2, 41:17, 41:20, 42:15, 42:21, 43:7, 43:9, 46:10, 57:9, 57:13, 57:14, 58:18, 59:20, 75:3, 85:8, 104:7, 108:11, 120:25
**U.S.C** [1] - 65:6
**U.S.C.A.J** [1] - 1:12
**ultimate** [2] - 54:16, 57:6
**ultimately** [8] - 8:13, 20:17, 27:5, 77:5, 108:10, 110:11, 110:21, 112:25
**unambiguous** [1] - 67:19
**unavoidable** [1] - 62:22
**unclarity** [1] - 68:19
**unclear** [2] - 32:25, 64:25
**undefined** [1] - 113:22
**undeniable** [1] - 65:11
**undeniably** [1] - 70:20
**under** [11] - 18:14, 33:13, 43:12, 59:19, 78:21, 78:23, 94:16, 105:8, 108:15, 119:10, 121:6
**underlying** [1] - 72:12
**undermine** [1] - 65:13
**understandable** [1] - 109:14
**understood** [8] - 31:1, 67:24, 68:1, 80:8, 92:17, 105:24, 110:18, 114:14
**undisclosed** [1] - 116:18
**undisputed** [1] - 112:6
**undue** [2] - 42:16, 42:22
**unduly** [1] - 118:2
**unencumbered** [1] - 65:15
**unethical** [2] - 48:13, 48:23
**unfold** [1] - 24:12
**unfolded** [2] - 35:3, 35:21
**unilaterally** [1] - 65:2
**unique** [1] - 115:16

**UNITED** [1] - 1:1
**United** [18] - 19:6, 19:10, 19:19, 24:5, 53:14, 56:16, 56:18, 58:23, 62:18, 63:22, 72:16, 72:17, 72:23, 91:17, 109:7, 109:11, 109:15, 109:17
**unless** [4] - 13:7, 28:4, 95:9, 110:8
**unnecessary** [1] - 83:8
**unreasonable** [1] - 47:6
**unresolved** [1] - 72:11
**unsatisfied** [2] - 41:3
**unseal** [2] - 79:3, 80:4
**unsealed** [2] - 9:6, 122:14
**unsealing** [2] - 79:9, 79:21
**untimeliness** [1] - 31:20
**untimely** [17] - 28:8, 31:5, 31:6, 31:9, 34:10, 34:24, 42:1, 62:7, 76:16, 104:19, 105:10, 111:16, 112:1, 112:2, 115:14, 118:5, 119:9
**up** [24] - 6:8, 14:2, 16:4, 20:17, 20:23, 27:16, 34:15, 41:13, 51:10, 54:18, 59:13, 60:23, 69:13, 87:13, 92:13, 95:6, 107:6, 110:14, 112:14, 114:13, 115:6, 121:22, 121:23, 123:14
**update** [1] - 84:11
**updates** [3] - 30:11, 30:12, 68:15
**urge** [3] - 44:2, 65:3, 68:24
**useful** [1] - 62:20

# V

**value** [6] - 11:7, 44:16, 57:3, 73:23, 95:2, 108:8
**value-maximizing** [2] - 73:23, 108:8
**valued** [1] - 94:22
**various** [1] - 119:21
**vein** [1] - 93:4
**VENEZUELA** [2] - 1:7,

125:10
**Venezuela** [52] - 2:13, 7:15, 8:1, 9:7, 14:7, 15:16, 15:21, 17:2, 30:21, 39:6, 39:25, 41:23, 42:13, 43:21, 44:20, 45:12, 48:18, 54:24, 54:25, 62:24, 65:12, 66:6, 72:19, 75:18, 79:20, 83:5, 83:10, 83:17, 89:24, 94:4, 94:9, 99:15, 99:19, 103:6, 103:12, 104:3, 104:12, 105:20, 107:20, 112:7, 112:20, 112:23, 114:5, 115:2, 115:17, 115:21, 116:3, 116:20, 118:15, 118:23
**Verrilli** [11] - 5:7, 5:9, 8:17, 15:11, 15:20, 42:12, 47:3, 50:7, 64:5, 77:15, 101:1
**VERRILLI** [29] - 2:11, 8:19, 15:15, 15:19, 18:17, 21:7, 22:14, 22:19, 23:13, 23:18, 25:1, 26:7, 26:10, 26:15, 27:9, 28:9, 28:16, 33:15, 34:25, 36:11, 64:6, 64:13, 66:21, 67:2, 67:8, 72:9, 73:7, 77:17, 101:3
**verse** [1] - 39:14
**version** [1] - 80:8
**versus** [3] - 40:12, 56:21, 86:21
**vested** [1] - 113:4
**via** [2] - 10:15, 21:21
**view** [27] - 11:6, 21:10, 22:23, 27:18, 27:19, 29:21, 39:4, 40:15, 44:4, 52:24, 53:21, 54:5, 54:7, 56:13, 58:12, 60:1, 72:25, 73:22, 89:21, 94:13, 97:25, 104:19, 108:7, 108:8, 109:18, 109:20, 112:3
**views** [12] - 24:4, 52:13, 53:3, 58:10, 65:15, 74:2, 74:5, 74:9, 91:17, 109:6, 121:22, 123:13
**violate** [1] - 31:12
**violation** [1] - 66:8

voice [1] - 89:15
vs [2] - 1:5, 125:10

## W

WACHTELL [1] - 3:4
Wachtell [3] - 6:4,
  63:7, 102:13
Wagner's [1] - 47:1
wait [5] - 14:22, 36:11,
  56:4, 113:17, 114:19
waiting [1] - 115:13
waivable [1] - 61:5
waive [3] - 32:1, 32:3,
  60:16
waived [5] - 36:2,
  60:15, 76:15, 81:14,
  118:17
waiver [14] - 16:4,
  32:5, 36:7, 41:10,
  47:23, 50:11, 50:13,
  60:12, 60:20, 60:24,
  61:23, 64:10, 119:2,
  119:7
walk [1] - 44:2
wants [8] - 6:12, 7:12,
  7:22, 8:5, 8:8, 34:1,
  82:13, 94:4
Warner [1] - 125:22
warner [1] - 125:4
Washington [1] -
  46:22
wasting [1] - 20:13
ways [1] - 24:11
weapon [2] - 62:1,
  62:13
week [2] - 94:22,
  124:8
weeks [5] - 49:19,
  50:2, 61:20, 76:4,
  117:6
weigh [8] - 8:12, 46:5,
  56:4, 57:2, 85:12,
  86:22, 97:2, 99:24
weight [1] - 59:11
weighty [2] - 57:11,
  57:12
WEIL [1] - 1:19
Weil [6] - 4:22, 9:21,
  37:1, 73:11, 79:7,
  101:22
WELCH [1] - 1:20
Welch [1] - 4:23
welcome [2] - 5:24,
  85:25
white [1] - 78:15
whole [4] - 51:21,
  51:23, 95:1, 106:22
willing [1] - 96:14

WILLKIE [1] - 3:19
window [4] - 11:16,
  107:1, 107:2, 107:10
wipe [1] - 111:21
wish [3] - 8:13, 9:13,
  63:2
WOLF [7] - 3:5, 63:4,
  63:6, 83:14, 90:1,
  100:22, 124:1
wolf [5] - 6:5, 6:7,
  63:6, 90:1, 123:25
Wolf [4] - 83:13,
  93:16, 100:21,
  102:13
WOMBLE [1] - 3:16
word [15] - 24:21,
  38:15, 44:24, 49:12,
  68:5, 69:9, 71:20,
  73:5, 73:21, 77:16,
  108:4, 108:19,
  114:13
words [2] - 65:23,
  107:11
works [1] - 33:4
world [1] - 88:22
worth [1] - 57:3
worthless [1] - 48:12
writ [2] - 41:5, 90:17
write [4] - 42:13, 44:1,
  80:16, 81:22
writes [1] - 122:18
writs [2] - 41:6, 87:2
written [1] - 113:13
wrongly [1] - 66:13
wrote [1] - 26:1

## Y

year [4] - 49:1, 52:5,
  112:5, 112:7
years [10] - 33:8,
  39:18, 41:4, 48:1,
  48:16, 54:19, 58:10,
  58:17, 89:21, 117:19
yourselves [3] - 4:8,
  113:13, 123:12