# EXHIBIT B

Withhold under 5 U.S.C. § 552(b)
Highly Confidential Communication
For Discussion Purposes Only
Considerations Discussed are Preliminary & Subject to Diligence

# Crystallex v. Venezuela
# Special Master
# Discussion Materials

## January 12, 2023




2023-FOIA-00220 000473

Case 1:17-mc-00151-LPS   Document 1138-3   Filed 04/26/24   Page 3 of 20 PageID #: 28697

Withhold under 5 U.S.C. § 552(b)
Highly Confidential Communication
For Discussion Purposes Only
Considerations Discussed are Preliminary & Subject to Diligence

# Agenda[1]

- Introductions
- Sale Procedures Order, Purpose of Meeting, & Timeline of Process Moving Forward
- Benefits of the Special Master Sale Process
- Claims Summary Chart
- OFAC Guidance to Ensure a Successful Sale Process
- Potential Paths Forward
- Impacts of Inaction
- Next Steps & Discussion
- Appendix

(1) The oral presentation accompanying these written materials is integral to the presentation discussed herein

*Withhold under 5 U.S.C. § 552(b)*
*Highly Confidential Communication*
*For Discussion Purposes Only*
*Considerations Discussed are Preliminary & Subject to Diligence*

## Introductions

### Special Master Team



| ROBERT B. PINCUS | RACHEL K. ALPERT | RAY C. SCHROCK, P.C. | ALEXANDER W. WELCH | DAVID Y. YING |
|---|---|---|---|---|
| Special Master for the U.S. District Court of Delaware | Partner | Co-Head, Restructuring | Partner, Restructuring | Senior Managing Director |
| | Jenner & Block LLP | Weil, Gotshal & Manges LLP | Weil, Gotshal & Manges LLP | Evercore |
| Wilmington, DE | Washington, DC | New York | New York | New York |
| +1 (302) 562-5232 | (b) (6) | +1 (212) 310-8210 | +1 (212) 310-8127 | (b) (6) |
| rbpincus@gmail.com | ralpert@jenner.com | ray.schrock@weil.com | alexander.welch@weil.com | |

Withhold under 5 U.S.C. § 552(b)
Highly Confidential Communication
For Discussion Purposes Only
Considerations Discussed are Preliminary & Subject to Diligence

## Sale Procedures Order

*Background on the Crystallex case and the Special Master's process to date is included in the Appendix hereto.*

- **The Court has authorized the proposed sale procedures for the sale of PDVSA's shares in PDVH.**

    ▸ On October 7, 2022, Judge Stark issued an order (the "October 7 Order") adopting and authorizing the proposed sale procedures for the sale of PDVSA's shares in PDVH to satisfy the outstanding judgment of Crystallex and the judgment of any other judgment creditor added to the sale by the Court (the "Marketing Process").

- **The Special Master must submit a Supplemental Report by April 7, 2023, recommending whether (and when) the Court should direct the Special Master to begin preparations to launch the Marketing Process.**

- **The October 7 Order directs the Special Master to engage with the US Government to gain clarity or guidance with respect to US sanctions before submitting the Supplemental Report.**

    ▸ The Court concluded that current sanctions do not prohibit the Special Master, acting as an arm of the Court, from taking preparatory steps toward launching the Sale Process.

    ▸ Nonetheless, the October 7 Order requires the Special Master to engage with the US Government, particularly OFAC, regarding "its support for (or non-opposition to)" the launch of the Marketing Process and the likelihood that OFAC ultimately will authorize the consummation of the eventual sale (the "Sale Transaction").

    ▸ Accordingly, prior to delivering the Supplemental Report, the Special Master will provide updates to the Court on status and progress, including with respect to the position, engagement and cooperation of the US Government.

- **To meet the Court's deadline, the Special Master needs meaningful ongoing engagement with the US Government to provide insight into the decision-making process per paragraph 6 of the October 7 Order.**

    ▸ If the Special Master does not receive sufficient clarity or guidance from the Executive Branch, the October 7 Order allows the Special Master to seek an order for the Executive Branch to show (i) cause as to why the launch and participation of prospective bidders in the Marketing Process is not authorized and (ii) the facts and circumstances that would be necessary for OFAC to provide approval for a transfer of the PDVH shares.

Case 1:17-mc-00151-LPS   Document 1138-3   Filed 04/26/24   Page 6 of 20 PageID #: 28700

Withhold under 5 U.S.C. § 552(b)
Highly Confidential Communication
For Discussion Purposes Only
Considerations Discussed are Preliminary & Subject to Diligence

# Timeline of the Sale Process Going Forward

- **April 7, 2023: Deadline for Special Master to submit Supplemental Report to the Court**

  ▸ The Court has directed the Special Master to "solicit and attempt to gain clarity or guidance from" OFAC indicating "its support for (or non-opposition to), the launch of the Marketing Process by the Special Master, the viability of the Marketing Process, and any additional feedback or guidance." [Doc. No. 481 at 11]

  ▸ After obtaining guidance from OFAC, the Special Master must submit a Supplemental Report advising the Court whether to begin preparations for the launch of the Marketing Process.

- **TBD: Special Master to launch Marketing Process**

  ▸ If the Court orders the Special Master to move forward, the Sale Process will take <u>at least 9 months</u> from the Launch Date to the Sale Hearing.

| Key Event | Deadline |
|---|---|
| Special Master to Launch Marketing Process and Establish Data Room in accordance with terms of the Sale Procedures Order. | Launch ("L") |
| Deadline to Submit Non-Binding Indications of Interest | L+ 45 days |
| Deadline to Submit Stalking Horse Bids | L+ 90 days |
| Deadline for Special Master to Designate Stalking Horse Bidder and Enter into Stalking Horse Agreement | L + 150 days |
| Deadline for Special Master to File Notice of Stalking Horse Bidder | As soon as reasonably practicable following designation by the Special Master |
| Deadline to Submit Bids | L + 210 days |
| Deadline for Special Master to Notify Bidders of Status as Qualified Bidders | L + 217 days |
| Auction to be conducted at the offices of Potter Anderson & Corroon LLP (1313 N. Market Street, 6th Floor, Wilmington, DE 19801-6108) or such other location as is mutually agreeable to the Special Master and each of the Sale Process Parties | L + 230 days |
| Deadline to File Notice of Successful Bid | As soon as reasonably practicable following conclusion of the Auction or, if no Auction, selection of the Successful Bid |
| Deadline to File Objections to Sale Transaction | L + 250 days |
| Deadline for Parties to Reply to Objections to Sale Transaction | L + 263 days |
| Sale Hearing | L + 270 days |

Case 1:17-mc-00151-LPS   Document 1138-3   Filed 04/26/24   Page 7 of 20 PageID #: 28701

Withhold under 5 U.S.C. § 552(b)
Highly Confidential Communication
For Discussion Purposes Only
Considerations Discussed are Preliminary & Subject to Diligence

## Benefits of the Special Master Sale Process

- **The lack of explicit US Government authorization has resulted in a stalemate.**

- **This stalemate prevents:**
    - parties from pursuing their rights and recovering their loss;
    - meaningful engagement that could result in a consensual and compromise outcome.

- **An <u>organized</u> and <u>credible</u> sale process as outlined in the Sale Procedures Order:**
    - open to additional judgment creditors who wish to participate;
    - wide and suited marketing process for the asset;
    - open to legitimate potential purchasers;
    - provides certainty that bids will be honored and not result in adverse consequences or sanction;
    - includes "checkpoints" and status conferences along the way;
    - requires real and credible engagement from the Venezuela Parties including opportunity to be heard and consulted on steps, status, and outcome;
    - results in a sale to the highest or best bidder or a consensual compromise outcome; and
    - incentivizes Venezuela to engage in constructive settlement negotiations.



2023-FOIA-00220 000479

Withhold under 5 U.S.C. § 552(b)
Highly Confidential Communication
For Discussion Purposes Only
Considerations Discussed are Preliminary & Subject to Diligence

## Illustrative Waterfall Structure



1. Reflects judgment principal; excludes i) pre- and post-award interest, ii) pre- and post-judgment interest, iii) reimbursable legal costs, and iv) payments received on claims to date

*Withhold under 5 U.S.C. § 552(b)*
*Highly Confidential Communication*
*For Discussion Purposes Only*
*Considerations Discussed are Preliminary & Subject to Diligence*

## Judgments Summary

| # | Plaintiff / Judgment Creditor | Judgment Principal[1] | With U.S. Judgment? | Writ of Attachment Granted? |
|---|---|---|---|---|
| 1 | Crystallex International Corp. | $1,202,000,000 | ✓ | ✓ |
| 2 | Philips Petroleum Co. Venezuela Ltd. & ConocoPhilips Petrozuata B.V. | $1,933,514,765 | ✓ | *Conditional* |
| 3 | PDVSA 2020 Bondholders[2] | $1,683,764,500 | ✓ | *Not Applicable* |
| 4 | Rusoro Mining Limited | $967,777,002 | ✓ | *Conditional* |
| 5 | Gold Reserve Inc. | $713,032,000 | ✓ | ✗ |
| 6 | OI European Group B.V. | $372,461,982 | ✓ | ✗ |
| 7 | Koch Minerals Sàrl & Koch Nitrogen International Sàrl | $306,950,000 | ✓ | ✗ |
| 8 | Red Tree Investments, LLC | $181,859,515 | ✓ | *Conditional* |
| 9 | Dresser-Rand Company | $166,082,240 | ✓ | *Conditional* |
| 10 | Northrup Grumman Ship Systems, Inc. | $137,977,646 | ✓ | ✗ |
| 11 | ACL1 Investments Ltd. | $118,186,251 | ✓ | ✗ |
| 12 | Banco San Juan Internacional Inc. | $101,450,711 | ✗ | ✗ |
| 13 | Saint-Gobain Performance Plastics Europe | $29,600,600 | ✓ | ✗ |
| | **Total** | **$7,914,657,212** | | |

JENNER&BLOCK LLP    Weil    EVERCORE

8

2023-FOIA-00220 000481

Source: Court filings
Note: Organized in descending order by judgment principal other than Crystallex
1. Excludes i) pre- and post-award interest, ii) pre- and post-judgment interest, iii) reimbursable legal costs, and iv) payments received on claims to date
2. PDVSA 2020 Bondholders have a structurally senior claim, though are not an official part of the Marketing Process as of the date hereof

*Withhold under 5 U.S.C. § 552(b)*
*Highly Confidential Communication*
*For Discussion Purposes Only*
*Considerations Discussed are Preliminary & Subject to Diligence*

## OFAC Guidance to Ensure a Successful Sale Process

- **Given the uncertainties and risks, potential bidders will require guidance and assurances from OFAC regarding participation in (1) the Marketing Process and (2) the Sale Transaction.**

    - In a sale of assets this size, credible potential bidders will invest thousands of hours and millions of dollars just to submit a bid. It is unlikely that any serious bidders will invest such substantial time and resources unless they receive a clear message that participation is authorized, and OFAC will permit a sale to occur.

    - Accordingly, it is imperative that potential bidders <u>receive early and clear messaging</u> regarding the sale process generally, and OFAC authorization specifically.

- **Specifically, the Special Master anticipates bidders will seek to discover:**

    - The need for and OFAC's willingness to issue any necessary authorization for transactions in furtherance of and ordinarily incident and necessary to the Court-supervised sales process in accordance with the Sale Procedures Order.

    - If there are any limitations on what OFAC would be willing to authorize with respect to the Sale Transaction, so that the Special Master can factor such considerations into the proposed plan of sale.

- **By clarifying these questions prior to initiation of the Sale Transaction, OFAC will help to ensure a robust sale process that results in the greatest number of competitive bids, the highest value for PDVSA's shares in PDVH, and the greatest potential to satisfy the most judgments via this process and associated discussions.**

*Withhold under 5 U.S.C. § 552(b)*
*Highly Confidential Communication*
*For Discussion Purposes Only*
*Considerations Discussed are Preliminary & Subject to Diligence*

## Potential Paths Forward

- **Provide clarity regarding the Executive Branch position and OFAC authorization as soon as possible so that prospective sale process participants can begin preparations.**

  ▶ Explicitly confirming that parties are authorized to participate in the Marketing Process, Bidding Process, and Sale Transaction.

- **Options**

  ▶ **Issue a general license authorizing all aspects of the sale.**

    - To the extent OFAC believes that a license is needed, the Special Master requests that OFAC provide authorization of the Special Master sale process in the form of a General License or broad specific license as promptly as practical but in no event later than April 7, 2023, to encourage broad participation by interested parties to ensure a value-maximizing sale process.

    - Explicit broad authorization for the full sale would provide the greatest reassurance and clarity to prospective participants, which may increase potential transaction value.

  ▶ **Phased Approach to Guidance and Authorization.**

    - Should the US Government adopt this approach, the Special Master requests that OFAC specify which activities it is authorizing in the form of General or Specific Licenses as promptly as practical but in no event later than April 7, 2023.

    - For any remaining activities, the Special Master requests that the US Government, including OFAC, provide written guidance, FAQs, or other public statements of support (or non-opposition), noting where OFAC authorization is not required, and providing assurances of a positive OFAC licensing policy for the consummation of the sale.

*Withhold under 5 U.S.C. § 552(b)*
*Highly Confidential Communication*
*For Discussion Purposes Only*
*Considerations Discussed are Preliminary & Subject to Diligence*

## Potential Paths Forward (Cont'd)

- **Encourage a negotiated settlement.**

  - US Government action or inaction at this juncture impacts whether parties are willing to participate in any settlement discussion.

  - The potential benefits of a negotiated settlement include full resolution of the dispute between all the parties; termination of the impending sale of the PDVH shares, allowing Venezuela an opportunity to retain an economic interest in Citgo; and yielding a payment schedule that fits the financial realities that Citgo and Venezuela face.

  - As a disinterested party, the Special Master believes he is uniquely placed to facilitate and broker a collective and consensual settlement; however he is hindered in this respect by limitations regarding his mandate.

  - Absent an explicit statement or guidance from the US Government regarding authorization for the Marketing Process and Sale Transaction, Special Master believes the Venezuela Parties will continue to rebuff engaging in settlement discussions.

  - Explicit US Government statements of support for the Sale Process and support for a negotiated settlement, including public or private statements that OFAC would favorably review licensing requests needed to effectuate such a settlement, may prove instrumental in bringing the Venezuela Parties to the table.

Case 1:17-mc-00151-LPS   Document 1138-3   Filed 04/26/24   Page 14 of 20 PageID #: 28708

*Withhold under 5 U.S.C. § 552(b)*
*Highly Confidential Communication*
*For Discussion Purposes Only*
*Considerations Discussed are Preliminary & Subject to Diligence*

## Impacts of Inaction

- **Inaction during the Sale Process will dampen participation, competition, and value.**

  - Lack of US Government action during the sale process will dampen participation in the process, minimizing the chances for a value-maximizing transaction. Fewer bidders will participate if they lack confidence or clarity—leading to less competition and lower value for the sale.

  - Many potential bidders could abstain altogether because they are unwilling to risk sanctions liability or to commit capital to a costly bid process for a sale that may never materialize. If they do participate, bidders likely would discount their offers to account for the uncertainty.

- **Inaction may prevent the Sale from being effectuated.**

  - Ultimately, the winning bidder and the other participants in the sale require OFAC authorization in order to effectuate the sale transaction.

- **Inaction could lead to an order to show cause.**

  - The October 7 Order provides that, if the Special Master does not receive clarity and guidance from the US Government, he "may request that the Court issue an order for the Executive Branch to show (i) cause as to why the launch and participation of prospective bidders in the Marketing Process is not authorized and (ii) the facts and circumstances that would be necessary for OFAC to provide approval for any transfer of the PDVH shares pursuant to the process contemplated by these Sales Procedures."

    - The Special Master's present goal is to seek to avoid the time and cost that would be incurred by such litigation and related discovery.

    - To effectively facilitate negotiations and prepare the Supplemental Report, the Special Master needs meaningful ongoing insight into the status and substance of the US Government's position.

*Withhold under 5 U.S.C. § 552(b)*
*Highly Confidential Communication*
*For Discussion Purposes Only*
*Considerations Discussed are Preliminary & Subject to Diligence*

## Impacts of Inaction (Cont'd)

- **Inaction results in negative outcomes for all parties including the Venezuela Parties.**

    ▶ The Crystallex Case and similar litigation has stagnated as a result of the status quo. Parties hold valid judgments but no way to satisfy them.

    ▶ If the Special Master pursues and concludes his mandate, the Sale may be completed and approved by the Court even without OFAC authorization, leaving the PDVH shares and the parties in a state of permanent limbo; however, the conclusion may be that fulfilling the Special Master's mandate in this fashion may be appropriate and ultimately preferable to taking no action at all.

2023-FOIA-00220 000486

*Withhold under 5 U.S.C. § 552(b)*
*Highly Confidential Communication*
*For Discussion Purposes Only*
*Considerations Discussed are Preliminary & Subject to Diligence*

# Next Steps & Discussion

- **The Special Master would like to continue working cooperatively with the US Government in implementing the Sale Procedures Order.**

- **We would like to schedule a follow-up meeting in early February, in advance of the Special Master's next update to the Court, at which time the Special Master hopes the US Government can provide additional information with respect to the items discussed at this meeting.**

Withhold under 5 U.S.C. § 552(b)
Highly Confidential Communication
For Discussion Purposes Only
Considerations Discussed are Preliminary & Subject to Diligence

# Appendix




2023-FOIA-00220 000488

Withhold under 5 U.S.C. § 552(b)
Highly Confidential Communication
For Discussion Purposes Only
Considerations Discussed are Preliminary & Subject to Diligence

## Background

- **The Special Master**[1] **is a disinterested and independent entity acting as an arm of the Court in the Crystallex Case to design and implement sale procedures for the Sale Transaction of the equity interests of PDV Holding, Inc. ("PDVH") held by Petróleos de Venezuela, S.A. ("PDVSA").**

- **The Crystallex Case and the contemplated Sale Transaction is the culmination of litigation that began in 2008 when the Bolivarian Republic of Venezuela ("Venezuela") expropriated a gold mine in Venezuela in which Crystallex International Corp. ("Crystallex"), a Canadian gold miner, had made a substantial investment.**

    - In 2016, an arbitral panel awarded Crystallex $1.2 billion plus interest[1] for damages Crystallex suffered as a result of Venezuela's seizure of the gold mine.

    - After the United States District Court for the District of Columbia and the United States Court of Appeals for the D.C. Circuit confirmed the award, Crystallex registered the judgment with the United States District Court for the District of Delaware.

    - In August 2018, the Delaware District Court ruled that PDVSA was an "alter ego" of Venezuela and that Crystallex was entitled to satisfy its judgment against PDVSA's shares in PDVH. The Court therefore granted Crystallex's motion for a "writ of attachment" seeking to attach the shares (the "Writ of Attachment Order").

    - Venezuela and PDVSA unsuccessfully appealed the Writ of Attachment Order to the United States Court of Appeals for the Third Circuit and the Supreme Court of the United States. With the appeals process finished, the Writ of Attachment Order is now final.

    - Following the Supreme Court's denial of the petition, the Crystallex Case remanded back to the District Court with "nothing left to do but execute" the Sale Transaction.[2]

---

(1) Crystallex's claim increased from $1.2 billion to $1.4 billion including accrued interest as of 2018; $425 million was collected the same year, leaving $975 million remaining
(2) *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 136 (3d Cir. 2019), cert. denied, 140 S. Ct. 2762, 206 L. Ed. 2d 936 (2020)

*Withhold under 5 U.S.C. § 552(b)*
*Highly Confidential Communication*
*For Discussion Purposes Only*
*Considerations Discussed are Preliminary & Subject to Diligence*

## Background (Cont'd)

- Other creditors intervened in the Crystallex case to prevent the sale and protect their own interests in the PDVH shares.

- ConocoPhillips, an American corporation headquartered in Houston, intervened in the Crystallex Case to protect its own claims against Venezuela (which stem from a separate expropriation of American assets by Venezuela).

    - In April 2018, ConocoPhillips initiated an arbitration proceeding and ultimately obtained a $1.2 billion judgement for Venezuela's unlawful expropriation of three crude oil projects located in Venezuela.

    - ConocoPhillips registered its award with the Delaware District Court in November 2019. But its attempts to attach its claims to PDVSA's shares in PDVH have stalled due to the sanctions the United States imposed against PDVSA in January 2019.

    - Because its claims, if successful, also must be satisfied in connection with the Sale Transaction, ConocoPhillips intervened in the Crystallex Case.

- Holders of PDVSA bonds that came due in 2020 (the "2020 Bondholders"), which have a claim of approximately $1.7 billion (excluding pre- and post-judgment interest), also intervened in the Crystallex Case to prevent the sale of the PDVH shares.

- Rosneft Trading S.A., which purports to hold a perfected, first-priority security interest in 49.9% of the shares of CITGO Holding, Inc. (the core asset of PDVH), and Red Tree Investments, LLC, which holds two judgments against Venezuela totaling approximately $182 million, moved to intervene to have input on the sale process.

- As a result of current US sanctions preventing the other creditors from attaching their judgments to PDVSA, Crystallex is the only entity with a perfected interest in the PDVH shares.

- US sanctions against PDVSA have stalled efforts by Crystallex and the other creditors to pursue their rights in satisfaction of their claims.

    - Crystallex's original judgment principal was $1,202,000,000, as granted in March 2017.

    - The Venezuela Parties[1] previously made payments to Crystallex under a settlement agreement, which brought the outstanding judgement down to $969,999,752.93 as of August 9, 2021. But the payments stopped after OFAC denied Crystallex's request for a specific license on September 10, 2021.

---

(1) Robert B. Pincus as Special Master for the United States District Court for the District of Delaware (the "Court") in *Crystallex International Corp. v. Bolivarian Republic of Venezuela* (D. Del. Case No. 17-151-LPS) (the "Crystallex Case")

JENNER&BLOCK   Weil   EVERCORE

17

2023-FOIA-00220 000490

Withhold under 5 U.S.C. § 552(b)
Highly Confidential Communication
For Discussion Purposes Only
Considerations Discussed are Preliminary & Subject to Diligence

## Timeline of the Special Master's Process to Date

- **April 13, 2021:** Special Master appointed
- **May 27, 2021:** Court ordered Special Master to design Sale Procedures Order
- **June 10, 2021, to September 17, 2021:** Special Master meetings with US Government (including DOJ, Treasury, and State representatives) regarding proposed Sale Process
- **August 9, 2021:** Special Master filed proposed Sale Procedures Order and Report related thereto.
- **November 8, 2021:** Hearing held on objections to Sale Procedures Order
- **October 7, 2022:** Court adopted Sixth Revised Proposed Sale Procedures Order
- **April 7, 2023:** Deadline for Special Master Recommendations