# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>    Plaintiff,<br><br> v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Case No. 1:17-mc-00151-LPS |

**CONOCOPHILLIPS' OPPOSITION TO THE VENEZUELA PARTIES'**
**RENEWED MOTION TO DISQUALIFY THE SPECIAL MASTER**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .............................................................................................................................1

ARGUMENT ...................................................................................................................................2

    A.    The Renewed DQ Motion Provides No Basis For The Court To Reconsider Its Denial Of The Initial DQ Motion. ................................................. 2

        1.    The Special Master is not required to be impartial with respect to the success of the sale process. ........................................................................... 3

        2.    The Special Master's actions in fulfilling his duties to the Court do not require disqualification. ......................................................................... 4

CONCLUSION ................................................................................................................................8

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abdulrahman* v. *Ashcroft*,
    330 F.3d 587 (3d Cir. 2003) ..................................................................................................6

*Am. Council of the Blind of N.Y, Inc.* v. *City of N.Y.*,
    579 F. Supp. 3d 539 (S.D.N.Y. 2021) ....................................................................................5

*Broadman* v. *Com'n on Judicial Performance*,
    18 Cal. 4th 1079 (Cal. 1998) .................................................................................................6

*In re Boston Children's First*,
    244 F.3d 164 (1st Cir. 2001) ..................................................................................................6

*In re Cooley*,
    1 F.3d 985 (10th Cir. 1993) ...................................................................................................6

*Local 28, Sheet Metal Workers' Int'l Assn.* v. *EEOC*,
    478 U.S. 421 (1986) ...............................................................................................................5

*Logue* v. *Dore*,
    103 F. 3d 1040 (1st Cir. 1997) ...............................................................................................6

*City of N.Y.* v. *Mickalis Pawn Shop, LLC*,
    645 F.3d 114 (2d Cir. 2011) ..................................................................................................5

*Monroe* v. *Meeks*,
    2021 WL 5882129 (S.D. Ill. Dec. 13, 2021) .........................................................................5

*United States* v. *Yonkers Bd. of Educ.*,
    29 F.3d 40 (2d Cir. 1994) ......................................................................................................5

**Statutes and Rules**

28 U.S.C. § 455(b) ........................................................................................................................2

Fed. R. Civ. P. 53 ....................................................................................................................4, 5

Sale Process Parties Phillips Petroleum Company Venezuela Limited, ConocoPhillips Petrozuata B.V., ConocoPhillips Gulf of Paria B.V., and ConocoPhillips Hamaca B.V. (Plaintiffs in Cases No. 19-mc-00342-LPS, No. 22-mc-00264-LPS, and No. 22-mc-00464-LPS) ("ConocoPhillips") respectfully submit this opposition to the *Venezuela Parties' Renewed Motion to Disqualify the Special Master* [D.I. 1138] (the "Renewed DQ Motion").

## PRELIMINARY STATEMENT

The Renewed DQ Motion is yet one more attempt in a long line of litigation gambits with which the Venezuela Parties have sought to frustrate the legitimate efforts of creditors to get paid on their judgments. The remarkable premise of the Venezuela Parties' attacks on the Special Master is that his efforts in furtherance of getting creditors paid is "to the detriment of Venezuela and PDVSA," proving that he is not impartial and must be disqualified. This position is absurd. Of course the Special Master is trying to get creditors with final judgments and writs of attachment paid. The Venezuela Parties have no legally cognizable right to continue to evade their creditors; hence they have no reasonable expectation that either the Court or the Special Master would be "impartial" with respect to whether or not judgments are paid. These are, after all, judgment enforcement proceedings, and the Special Master's job is to assist the Court in enforcing the judgments. The Renewed DQ Motion has no more merit than the prior Motion to Disqualify Special Master (the "Initial DQ Motion"), D.I. 509, and should be denied.

## BACKGROUND

On January 20, 2023, the Venezuela Parties filed their Initial DQ Motion. That motion was denied from the bench on March 30, 2023. The Venezuela Parties sought a writ of mandamus to overturn that decision on April 11, 2023, which was summarily denied on May 4, 2023. *See In re Bolivarian Republic Of Venezuela*, No. 23-1687, D.I. 33-1 (3d Cir. May 4, 2023).

On April 26, 2024, the Venezuela Parties filed their Renewed Motion to Disqualify the Special Master. The Renewed DQ Motion purports to be based on "new evidence" — a PowerPoint that was provided to U.S. government representatives in advance of a meeting with the Special Master on January 12, 2023.

## ARGUMENT

### A. The Renewed DQ Motion Provides No Basis For The Court To Reconsider Its Denial Of The Initial DQ Motion.

The Initial DQ Motion sought to disqualify the Special Master on two bases. First, the Venezuela Parties claimed the Special Master's *ex parte* communications with the U.S. government would provide him with "personal knowledge of substantive information relevant to the proceedings that cannot effectively be tested or controverted," requiring his disqualification under 28 U.S.C. § 455(b). Initial DQ Motion at 7. The Court rejected this argument, concluding that the Special Master would not gain knowledge of any relevant evidentiary fact because "[t]here is not and will not be any dispute as to what OFAC's position is." Mar. 11, 2023 Hr'g Tr. at 121:7-121:8. The Venezuela Parties appear to have abandoned this prong of their argument in their renewed motion.

The Initial DQ Motion further attacked the Special Master for "advocating" to OFAC to issue a license to authorize the sale process. Initial DQ Motion at 10. This, the Venezuela Parties argued, would benefit Crystallex and other creditors and be detrimental to Venezuela and PDVSA, rendering the Special Master not impartial and therefore subject to disqualification. The Court rejected this argument as well, finding there was "no evidence before the Court that the Special Master . . . advocated for a change in U.S. foreign policy or advocated for Crystallex to be granted a license." *Id.* at 104:4-9. The Court further noted that "[t]here is nothing

improper or anything a reasonable person would think improper in the special master assisting the Court in its efforts to enforce judgments that have been entered and affirmed." *Id.* at 120:9-14.

The Renewed DQ Motion is based on purported "newly discovered evidence" in the form of a PowerPoint presentation the Special Master provided to the government representatives at the January 12, 2023 meeting. The Venezuela Parties characterize this PowerPoint as "advocating for a change in U.S. sanctions policy" by requesting that OFAC issue a license. Renewed DQ Mot. at 9. This, the Venezuela Parties assert, "would harm Venezuela and PDVSA by increasing the probability that Crystallex and other judgment creditors would collect on their judgments." *Id.* 9. As a result, the Venezuela Parties conclude, the Special Master is not impartial and must be disqualified. But the Court's prior statement that there is nothing improper about the Special Master assisting the Court in its effort to enforce entered judgments remains true today.

    1.    *The Special Master is not required to be impartial with respect to the success of the sale process.*

The Special Master was appointed for the purpose of assisting the Court in enforcing Crystallex's and other creditors' judgments against PDVSA. The Special Master should not be agnostic to achieving that purpose – it is his job. *See* Order Regarding Special Master, D.I. 277:

> Special Master's Duties. The Special Master shall devise a plan for the sale of shares of PDVH as necessary to satisfy the outstanding judgment of Crystallex and the judgment of any other judgment creditor added to the Sale by the Court and/or devise such other transaction as would satisfy such outstanding judgment(s) while maximizing the sale price of any assets to be sold (the "Proposed Sales Procedures Order").

The Court expressly directed the Special Master to "solicit and attempt to gain clarity or guidance from the United States Department of the Treasury's Office of Foreign Assets Control

3

('OFAC') of its support for (or non-opposition to), the launch of the Marketing Process by the Special Master, the viability of the Marketing Process, and any additional feedback or guidance that the Special Master believes will more likely result in a value-maximizing Sale Transaction." D.I. 480 ("SPO") ¶ 3.  The Court further authorized the Special Master to "proactively engage with representatives of the Executive Branch . . . and to *take all steps or actions reasonably in furtherance of the issuance of OFAC* guidance and/or *authorization*."  SPO ¶ 4 (emphasis added).  The Special Master's meeting with government representatives and his presentation of the PowerPoint in furtherance of obtaining OFAC authorization was thus permitted, and indeed mandated, by the Sale Procedures Order.

> 2. *The Special Master's actions in fulfilling his duties to the Court do not require disqualification.*

The Venezuela Parties presume that the Court itself could not make the statements to the government that were included in the Special Master's PowerPoint.  Revised DQ Motion at 10.  Whether that is true or not, it is irrelevant.  The Special Master, while deriving his authority from the Court, is not limited to only those actions the Court would or could perform itself.  The Court's appointment of the Special Master to devise and carry out a value-maximizing plan for the sale of the PDVH shares was authorized by Fed. R. Civ. P. 53(a)(1)(C).  Rule 53 was amended in 2003 to provide explicit authorization for the appointment of special masters to "address pretrial and posttrial matters that *cannot be effectively* and timely *addressed by an available district judge*."  Rule 53(a)(1)(C) (emphasis added).  The Advisory Committee notes make clear that the new provision would allow for the use of special masters in varying and unusual ways, depending on the vagaries of the particular case:

> **Pretrial and Post-Trial Masters.**  Subparagraph (a)(1)(C) authorizes appointment of a master to address pretrial or post-trial matters. . . .  *A master's pretrial or post-trial duties may include . . . duties that might not be suitable for a judge*.  Some forms of settlement

4

> negotiations, investigations, or administration of an organization are familiar examples of duties that a judge might not feel free to undertake.
>
> *Post-Trial Masters.* Courts have come to rely on masters to assist in framing and enforcing complex decrees. . . . Amended Rule 53 authorizes appointment of post-trial masters for these and similar purposes. . . . *Reliance on a master is appropriate when a complex decree requires complex policing,* **particularly when a party has proved resistant or intransigent.** This practice has been recognized by the Supreme Court, see *Local 28, Sheet Metal Workers' Internat. Assn.* v. *EEOC*, 478 U.S. 421, 481–482 (1986). *The master's role in enforcement may extend to investigation in* **ways that are quite unlike the traditional role of judicial officers** *in an adversary system.*

Advisory Committee Notes to 2003 Amendment (emphasis added).

Consistent with this, special masters have been appointed in various situations to address the special requirements of a case with which the court would not involve itself. *See, e.g., Am. Council of the Blind of N.Y, Inc.* v. *City of N.Y.*, 579 F. Supp. 3d 539, 593 (S.D.N.Y. 2021) (appointing special master to monitor compliance with 10-year remedial plan to address accessibility issues for blind persons at 9,000 street crossings, stating: "[t]he power of the federal courts to appoint special masters to monitor compliance with their remedial orders is well established."); *City of N.Y.* v. *Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011) ("'The power of the federal courts to appoint special masters to monitor compliance with their remedial orders is well established.'" (*quoting United States* v. *Yonkers Bd. of Educ.*, 29 F.3d 40, 44 (2d Cir. 1994)); *Monroe* v. *Meeks,* 2021 WL 5882129 at *3 (S.D. Ill. Dec. 13, 2021) (appointing monitor to oversee compliance with specific court directives and develop remedial plans consistent with court orders for the protection of federal prisoners with gender dysphoria); *see generally* Wright & Miller § 2602.1 Practice under Rule 53, and cases cited in footnotes 21 & 22.

The cases cited by the Venezuela Parties (Initial DQ Motion at 10) have no bearing on the relevant issue – whether a special master charged with assisting the Court in enforcing a final

judgment may take reasonable steps, including meeting with a government agency, to facilitate such enforcement. *Abdulrahman* v. *Ashcroft,* 330 F.3d 587, 596 (3d Cir. 2003), and *Logue* v. *Dore,* 103 F. 3d 1040, 1045 (1st Cir. 1997), stand for the obvious proposition that judges must be impartial arbiters and not advocates for a particular party or position.  These cases do not address the question posed here, which relates solely to advocacy (or purported advocacy) by the *Special Master*, not the Court, in a context where there remains no merits issue for an impartial arbiter to decide.

The Venezuela Parties also invoke cases allegedly in support of the proposition that a judge cannot advocate for the enforcement of its own judgments.  Initial DQ Motion at 11.  These citations are misleading at best.  *In re Boston Children's First*, 244 F.3d 164, 168, 170 (1st Cir. 2001), and *In re Cooley*, 1 F.3d 985, 995 (10th Cir. 1993), concerned judges who made on-the-record comments to the press regarding matters pending before the court.  Even further afield, *Broadman* v. *Com'n on Judicial Performance,* 18 Cal. 4th 1079 (Cal. 1998), affirmed the public censure of a judge for a litany of unethical actions, including using deception to lure a criminal defendant into waiving certain rights and making public comments about matters still pending before him or on appeal.  Here, there are no public comments about pending issues; indeed, there are no pending merits issues.  Contrary to the Venezuela Parties' assertion, there is no "hotly disputed issue" regarding the creditors' attempt to enforce their judgments by moving forward with the sale process.  There is, on the one hand, final judgments and writs of attachment, and on the other, a recalcitrant judgment debtor that is making every effort to avoid satisfying those judgments.  No issues remain to be resolved concerning the validity of the judgments or of the attachments, which were obtained pursuant to an OFAC license.  All that

remains is for those judgments to be enforced against the attached asset.  The Special Master's efforts in pursuit of that enforcement does not evidence a lack of impartiality.

The Venezuela Parties' concerns about the separation of powers are equally spurious. *See* Renewed DQ Motion at 10.  This case presents the highly unusual situation where the Executive Branch, pursuant to the International Emergency Economic Powers Act, has interrupted the normal operations of the judiciary by blocking the property of a foreign sovereign.  In considering the extent to which the imposition of the Venezuela sanctions regime impacts its ability to enforce judgments, the Court determined that the sanctions did not preclude the Special Master from engaging in preparatory steps toward launching the sale process.

The Court thus charged the Special Master with providing the Court with a recommendation as to whether the sale process should be launched, and engaging in discussions with the government to determine its position regarding a launch and the likelihood that any sale transaction would ultimately be consummated.   SPO, D.I. 481, ¶ 3.  To the extent the PowerPoint could be interpreted as expressing a view, it simply stated the obvious – that the success of the sale process would be substantially enhanced by guidance from OFAC that a sale would be allowed to close.  The PowerPoint also made the similarly obvious point that a recalcitrant debtor is more likely to seek a resolution with its creditors if faced with a credible possibility of losing its principal asset in an execution sale.  The Venezuela Parties' attempt to spin the Special Master's communications as an improper effort to try to persuade the government to alter its foreign policy toward Venezuela is merely a smokescreen to attempt to relitigate their opposition to the appointment and designated powers of the Special Master to assist the Court in the enforcement of the judgments.  Whatever disagreement the Venezuela Parties may have with the correctness of the Court's orders may be properly the subject of an

appeal, but the Special Master's compliance with the Court's orders provides no basis for his disqualification.

## CONCLUSION

The Renewed DQ Motion should be denied.

*Of Counsel*:

Michael S. Kim
Marcus J. Green
Josef M. Klazen
Lydia L. Halpern
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200
michael.kim@kobrekim.com
marcus.green@kobrekim.com
jef.klazen@kobrekim.com
lydia.halpern@kobrekim.com

Richard G. Mason
Amy R. Wolf
Michael H. Cassel
WACHTELL, LIPTON, ROSEN
 & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1000
RGMason@wlrk.com
ARWolf@wlrk.com
MHCassel@wlrk.com

Dated: May 10, 2024

Respectfully submitted,

ROSS ARONSTAM & MORITZ LLP

*/s/ Garrett B. Moritz*
Garrett B. Moritz (Bar No. 5646)
Elizabeth M. Taylor (Bar No. 6468)
1313 North Market Street, Suite 1001
Wilmington, Delaware 19801
(302) 576-1600
gmoritz@ramllp.com
etaylor@ramllp.com

*Attorneys for Phillips Petroleum Company Venezuela Limited, ConocoPhillips Petrozuata B.V., ConocoPhillips Gulf of Paria B.V., and ConocoPhillips Hamaca B.V.*

8