IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------
CRYSTALLEX INTERNATIONAL CORP.,   )
                                  )
          Plaintiff,              )
                                  )
     v.                           )     Misc. No. 17-151-LPS
                                  )
BOLIVARIAN REPUBLIC OF VENEZUELA, )
                                  )
          Defendant.              )
---------------------------------------------------------------

**SPECIAL MASTER'S OPPOSITION TO THE VENEZUELA PARTIES' RENEWED MOTION TO DISQUALIFY THE SPECIAL MASTER**

Robert B. Pincus, in his capacity as Special Master[1] for the United States District Court for the District of Delaware, respectfully responds to *The Venezuela Parties' Renewed Motion to Disqualify the Special Master* (the "Motion"). *See* D.I. 1138.

**PRELIMINARY STATEMENT**

This Court has ordered the Special Master to oversee and implement the court-ordered sale of PDVSA's shares of PDVH in a manner that will seek to maximize value—A mandate necessary only because the Venezuela Parties owe more than $20 billion in attached judgments as part of this process on account of valid and enforceable judgments. This is a forced, court-ordered sale on account of those judgments. Having been involved in this matter for more than three years, it is clear to the Special Master that the Venezuela Parties have attempted and will attempt to delay, hinder, and prevent their creditors from receiving payment on their judgments at every possible

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the *Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures Order, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* [D.I. 481] (the "Sale Procedures Order").

turn. As the Third Circuit Court of Appeals similarly recognized, these parties are recalcitrant debtors. *See Crystallex Int'l Corp. v. Petroleos De Venezuela, S.A.*, 879 F.3d 79, 82 (3d Cir. 2018).

Now, for the second time in fifteen months, the Venezuela Parties question—without any basis—the integrity of the Special Master, a court-appointed official, by moving to have the Special Master disqualified from this litigation for what they claim as improper advocacy by the Special Master at a meeting with OFAC on January 12, 2023. The Court readily rejected their first attempt, finding "no evidence . . . that [the special master] advocated for a change in U.S. foreign policy or advocated for Crystallex to be granted a license." D.I. 544. Indeed, there is "nothing improper or anything a reasonable person would think improper in the special master assisting the Court in its efforts to enforce judgments that have been entered and affirmed." *Id.* The Venezuela Parties now claim that new "evidence" supposedly shows that the Special Master advocated to OFAC for a change in United States' sanctions. Specifically, the Venezuelan Parties point to a presentation made by the Special Master at the OFAC meeting, but the Venezuela Parties take the presentation completely out of context and ignore the purpose and intent of the slides, as well as the slides that do not support their narrative. In short, the Venezuela Parties both misrepresent the evidence and fail to demonstrate that the Special Master engaged in any improper advocacy at the meeting with OFAC. If anything, this new "evidence" only supports the Court's prior conclusion that the Special Master was not engaging in advocacy, but instead carrying out the Court's mandate in his meeting with OFAC. *See* D.I. 544. at 2, 4.

The Special Master asks this Court to see the Motion for what it is: part and parcel with Venezuela's efforts to delay, deter, and avoid paying off their debts to numerous creditors, many of whom have been waiting for years to recover funds that were lost at the Venezuela Parties'

hands. The Court already rejected the Venezuela Parties' first attempt to "further delay these already delayed proceedings." *See* D.I. 544. It should do so again.

## FACTUAL BACKGROUND

The Special Master hereby incorporates by reference all facts and arguments that were included in the Special Master's Opposition to the Venezuela Parties' Motion to Disqualify the Special Master. *See* D.I. 513. The Special Master will summarize the relevant facts, as well as those that have occurred in the mere thirteen months since the Court decided this issue for the first time.

The Special Master's role is "to assist with the sale of PDVSA's shares of PDVH." *See* D.I. 277. Pursuant to the Sale Procedures Order, the Court directed the Special Master and his Advisors "[w]ithin the period of six (6) months after the date of this Order . . . [to] solicit and attempt to gain clarity or guidance from [OFAC] of its support for (or non-opposition to), the launch of the Marketing Process by the Special Master, the viability of the Marketing Process, and any additional feedback or guidance that the Special Master believes will more likely result in a value-maximizing Sale Transaction." D.I. 481 ¶ 3.

In compliance with this mandate, the Special Master met with OFAC on January 12, 2023. *See* Ex. A (Presentation). At this meeting, the Special Master and his advisors provided OFAC with materials for discussion in a PowerPoint titled "Crystallex v. Venezuela, Special Master Discussion Materials" and dated January 12, 2023 (the "Presentation"). During the ensuing discussion, the Special Master provided background on the Sale Transaction, including the anticipated timeline, the Sale Procedures Order, and a summary of the judgments that the Sale Transaction would satisfy. *See* Ex. A (Presentation) at 3, 4, 8.

The Special Master also requested that OFAC "[p]rovide clarity regarding Executive Branch position and OFAC authorization as soon as possible so that prospective sale process participants can begin preparations." *See id.* at 10. The Special Master provided three "Potential Paths Forward" for OFAC, *see id.* at 10-11, and described how OFAC's inaction could impact all parties involved in the Sale Transaction. *See id.* at 12-13.

Based on this January 12, 2023 meeting, PDVSA, PDVH, and CITGO filed its first Motion to Disqualify the Special Master, *see* D.I. 509, which Venezuela later joined (the "First Disqualification Motion"). *See* D.I. 511. The Venezuela Parties argued that the Special Master's *ex parte* meeting with OFAC "expressed intent to advocate" that the United States government "revise its foreign policy positions and authorize a sale process designed to satisfy Crystallex's judgment," which created an appearance of partiality in contravention of 28 U.S.C. § 455(a), Canon 2 and Canon 3 of the Code of Conduct for United States Judges, and the Due Process Clause of the Fifth Amendment. *See* D.I. 509. The Special Master opposed this motion, arguing that the Special Master was authorized by the Court to engage in ex parte communications with the U.S. Government, that the Venezuela Parties did not meet their burden of showing disqualifying partiality, and that the motion was untimely. *See* D.I. 512. Crystallex also opposed the motion. *See* D.I. 513.

The Court requested supplemental briefing, *see* D.I. 517, which the Venezuela Parties, Crystallex, ConocoPhillips, and the Special Master submitted, *see* D.I. 522, 523, 524, 526. The Court heard oral argument on March 30, 2023 and denied the motion from the bench, which the Court later memorialized in an April 11, 2023 Memorandum Order. *See* D.I. 544.

The Court concluded: "There is no evidence before the Court that the special master engaged in advocacy in the OFAC meeting. There's no evidence, in particular, that he advocated

4

for a change in U.S. foreign policy or advocated for Crystallex to be granted a license." *Id*. The Court further explained that "[t]here is nothing improper or anything a reasonable person would think improper in the special master assisting the Court in its efforts to enforce judgments that have been entered and affirmed, and no reasonable person would think that there is anything improper or giving rise to a reasonable basis to question impartiality in using the special master in this way and in him following my direction to do so." *Id.*

In addition to denying the Venezuela Parties' motion on the merits, the Court also found that the motion was untimely and had "at least a substantial element of being tactical and designed with at least a partial goal of further delaying these proceedings." *Id.* at 2, 7.

In or around September 2023, the DOJ contacted the Special Master's advisors regarding certain materials responsive to a FOIA request that the Venezuela Parties had initiated. The DOJ requested the Special Master's advisors review the documents to ensure that the documents requested did not meet any FOIA exemptions. In the ensuing months, the Special Master's advisors reviewed the documents and advised the DOJ that it took no issue with the document productions, including the Presentation, for which the DOJ did not ask the Special Master's advisors to review until March. *See* Ex. C (Emails between C. Bentley and DOJ). On April 4, 2024, the DOJ produced the documents, including the Presentation, to the Venezuela Parties.

The Venezuela Parties filed this Motion on April 26, 2024. *See* D.I. 1138.

## LEGAL STANDARD

Disqualification is required only where "a judge's impartiality 'might reasonably be questioned'" and where "a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Int'l Ltd.*, 353 F.3d 211, 220 (3d Cir. 2003). "In considering questions of disqualification in situations where a special

5

master's impartiality is called into question, . . . the special master must hold himself to the same high standards applicable to the conduct of judges." *Jenkins v. Sterlacci*, 849 F.2d 627, 632 (D.C. Cir. 1988). Courts presume that "judicial [and] quasi-judicial officers" are "not biased," and accordingly "it is the moving party's burden to show bias or some other reason for disqualification." *Cates v. Comm'r of Soc. Sec.*, 752 F. App'x 917, 923 (11th Cir. 2018) (citing *Schweiker v. McClure*, 456 U.S. 188, 196 (1982)); *see also Proctor v. Engstrom*, 95 F. App'x 192, 194 (8th Cir. 2004) ("[D]istrict judges are presumed impartial and [the] movant bears [a] substantial burden of proving otherwise.").

A Special Master is authorized to "take all appropriate measures to perform the assigned duties fairly and efficiently." Fed. R. Civ. P. 53(c)(1)(B). In addition, the special master may "impose on a party any noncontempt sanction provided by Rule 37 or 45, and may recommend a contempt sanction against a party and sanctions against a nonparty." Fed. R. Civ. P. 43(c)(1)(2).

## ARGUMENT

The Venezuela Parties still fail to carry their "substantial burden" of proving disqualifying partiality. *See Proctor*, 95 F. App'x at 194. The Venezuela Parties make much ado about new "evidence," but the new "evidence" merely reflects that the Special Master's requests for guidance from OFAC were authorized by Court order.

Indeed, the Special Master is implementing a court-ordered sale pursuant to the Sale Procedures Order that prescribes the Special Master with certain acts and provides the Special Master with discretion as to others. For these reasons and the others set forth below, the Court should deny the Motion.

I. **The "New Evidence" Does Not Change That the Special Master Acted Pursuant to Court Order and Did Not Engage in Any Advocacy**

   A. **The Special Master Was Following the Court's Order in the Meeting with OFAC**

The Special Master was appointed in this case "to assist with the sale of PDVSA's shares of PDVH." *See* D.I. 258 at 2; D.I. 277 at 1. Specifically, the Court ordered that "[t]he Special Master shall devise a plan for the sale of shares of PDVH as necessary to satisfy the outstanding judgment of Crystallex and the judgment of any other judgment creditor added to the Sale by the Court and/or devise such other transaction as would satisfy such outstanding judgment(s) while maximizing the sale price of any assets to be sold." D.I. 277 at 3. Pursuant to the Sale Procedures Order, the Court explicitly ordered that "the Special Master and his Advisors shall solicit and attempt to gain clarity or guidance from [OFAC] of its support for (or non-opposition to), the launch of the Marketing Process by the Special Master, the viability of the Marketing Process, and any additional feedback or guidance that the Special Master believes will more likely result in a value maximizing Sale Transaction." D.I. 481 ¶ 3. The Court similarly ordered that "the Special Master shall be authorized to (i) proactively engage with representatives from the Executive Branch . . . and to take all steps or actions reasonably in furtherance of the issuance of OFAC guidance and/or authorization." *Id.* ¶ 4.

The Special Master carried out his mandated responsibilities by meeting with OFAC on January 12, 2023 to "solicit and attempt to gain clarity or guidance" of OFAC's "support for (or non-opposition to), the launch of the Marketing Process," as explicitly prescribed by this Court's order. *See* D.I. 481 ¶ 3. As the Court recognized in its earlier decision on this issue, the Special Master's meeting with OFAC was at the Court's "express direction." *See* D.I. 544 at 4. Such conduct, at the direction of the court, provides no evidence of bias or impartiality to merit disqualification.

7

### B. The Special Master Engaged in Impartial Advocacy Directed By the Court

The Special Master's communications with OFAC were unbiased and taken pursuant to the directions received by the Court. Indeed, in determining that there was no evidence of advocacy by the Special Master just a year ago, the Court concluded that the Special Master "conveyed to OFAC his view that in order to conduct a value-maximizing transaction . . . the special master and ultimately the Court[,] needs clarity from the U.S. government as to whether it will or will not or may exercise its sole authority at the end of the process to grant a specific license, a license which will be required under the current sanctions regime before a sale transaction can be consummated." *See* D.I. 544 at 4. The Venezuela Parties' "new evidence" does not change the Court's conclusion.

The sole "evidence" the Venezuela Parties point to is a Presentation the Special Master made to OFAC, which they claim represents the Special Master's advocacy for the United States government to change its sanctions policy against Venezuela. *See* D.I. 1138 at 8. Yet the best the Venezuela Parties can do is point to cherry-picked sentences and phrases from the Presentation. *See* D.I. 1138 at 8-9. For instance, the Venezuela Parties assert that "the Special Master '*request[ed]* that OFAC provide authorization of the Special Master sale process.'" *See id.* at 9. However, read in full, it is clear the Special Master was asking for guidance and would defer to OFAC as to whether and what type of license is needed: "To the extent OFAC believes a license is needed, the Special Master requests that OFAC provide authorization of the Special Master sale process in the form of a General License or broad specific license as promptly as practical." *See* Ex. A (Presentation) at 10. Moreover, the Venezuela Parties ignore that this cherry-picked statement appears in a list of three options offered to OFAC.

The Special Master outlined three different paths OFAC could take: (i) "issue a general license authorizing all aspects of the sale;" (ii) "Phased Approach to Guidance and Authorization;" and (iii) "Encourage a negotiated settlement," on two "Potential Paths Forward" slides. *See id.* at

8

10-11. The Special Master specifically requested OFAC "[p]rovide clarity regarding the Executive Branch position and OFAC authorization as soon as possible so that prospective sale process participants can begin preparations." *See id.* at 10. The Special Master did not advocate for OFAC to choose a specific option, but rather provided OFAC with different options and explanations of what each path forward would entail and how it may potentially impact a sale process seeking to maximize value. Read in context, which the Venezuela Parties conspicuously fail to do, the Presentation reveals that rather than encourage OFAC to take a certain position, the Special Master provided detailed options for OFAC, which is well within this Court's mandate of seeking guidance. *See id.*; D.I. 481 ¶ 3.

Similarly, the Venezuela Parties make a disingenuous attempt to knit together two entirely distinct propositions from the Presentation, which also fails. The Venezuela Parties boldly claim:

> The "Presentation noted that 'US sanctions against PDVSA have stalled efforts by Crystallex and other creditors to pursue their rights in satisfaction of their claims.' To remedy those 'stalled efforts,' the Special Master requested that OFAC '[i]ssue a general license authorizing all aspects of the sale.

D. I. 1138 at 6 (citation omitted). As explained above, the Special Master outlined different potential options for OFAC, one of which was "issue a general license authorizing all aspects of the sale." *See* Ex. A (Presentation) at 10. Seven slides later, in the "Appendix" section and on a "Background" slide, the Presentation states, "As a result of current US sanctions preventing the other creditors from attaching their judgments to PDVSA, Crystallex is the only entity with a perfected interest in PDVH shares." *See* Ex. A (Presentation) at 17. This was a factual statement— not advocacy—as, at that time, no other creditors could attach their judgments to PDVSA due to the United States' sanction regime. Nowhere in the Presentation does the Special Master indicate that OFAC needed to remedy this situation; that contention is a fabrication of the Venezuela Parties. Rather, the Special Master acknowledged the existing factual situation, and identified

options that OFAC could take regarding the Sale Transaction, which was his court-ordered mandate.

These attempts to misconstrue the Presentation into supporting a false narrative should be rejected. *See* D.I. 544. Properly read in whole, the Presentation makes clear that the Special Master was seeking *guidance* on OFAC's position, as mandated by the Court. *See* D.I. 481 ¶ 3.

### C. For a Second Time, the Venezuela Parties Have Failed to Meet Their Substantial Burden to Show Disqualifying Partiality

The Motion is notably devoid of any legal analysis as to why the Presentation demonstrates that the Special Master's meeting with OFAC is worthy of disqualification. While the Motion incorporates the Venezuela Parties' prior briefing by reference, *see* D.I. 1138 at 10, they make no effort to argue why, based on the Presentation, a reasonable person would "conclude that the [Special Master's] impartiality might reasonably be questioned." *Kensington*, 353 F.3d at 220. And, simply put, nothing in the Presentation would lead a reasonable person to conclude that the Special Master was doing anything other than discharging his mandate.

The Court previously held that "[t]here is nothing improper or anything a reasonable person would think improper in the special master assisting the Court in its efforts to enforce judgments that have been entered and affirmed, and no reasonable person would think that there is anything improper or giving rise to a reasonable basis to question impartiality in using the special master in this way and in him following my direction to do so." *See* D.I. 544 at 8. Nothing in the Presentation changes this conclusion.

### D. The Special Master Has an Inherent Power to Take Necessary Steps to Enforce the Judgments Against the Venezuela Parties

While the Special Master disputes the Venezuela Parties' assertion that the Special Master improperly advocated for a change in foreign policy, in the alternative, the Special Master, as the arm of the Court, has inherent authority to enforce the judgments against the Venezuela Parties,

10

which this Court characterized as a "[h]ighly-recalcitrant" debtor. *See Crystallex Int'l Corp. v. Bolivarian Rep. of Venezuela*, C.A. No. 17-mc-151-LPS, 2021 WL 129803, at *18 (D. Del. Jan. 14, 2021). There are billions of dollars of valid, enforceable judgments against the Republic and its instrumentalities, who have time and again sought to delay the sale process. The Venezuela Parties' most recent attempt to disqualify the Special Master represents another maneuver in their ongoing campaign to stall the court-approved sale of PDVSA's shares in PDVH. Tellingly, the Venezuela Parties once again made it clear throughout their Motion that the ultimate basis of their objection is the sale process itself. For instance, the Venezuela Parties argue that the Special Master's request to the Government to provide clarity to effectuate a sale process that is "detriment[al] [to] Venezuela and PDVSA" is a basis for disqualification. D.I. 1138 at 10. Such "detriment," however, derives from the substantial amount of enforceable and valid judgments against them. There is nothing "[]partial" about a judicial officer's duty to carry out "a 'full' Sales Process that benefits Crystallex and other creditors" against a judgment debtor. *Id.*

Any actions undertaken by the Special Master to facilitate the execution of the Court's judgment are derivative of the Court's own "inherent power to enforce its judgments." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996). It is firmly established that a court's jurisdiction "is not exhausted by rendition of judgment, but continues until that judgment shall be satisfied." *Cent. of Ga. R.R. Co. v. United States*, 410 F. Supp. 354, 357 (D.D.C. 1976) (quoting *Riggs v. Johnson County*, 73 U.S. (6 Wall.) 166 (1867)), *aff'd sub nom Interstate Com. Comm'n v. Cent. of Ga. R.R. Co.*, 429 U.S. 968 (1976) (mem.). It is incumbent on the Special Master to navigate the intricacies of the sale process, ensuring compliance with the law while concurrently striving for a value-maximizing sale. In doing so, the Sale Procedures Order "authorized and directed [the Special Master] to take all reasonable actions necessary or desirable to implement" the sale process devised

and ordered by the Court. *See* D.I. 481 at 15. The Special Master engaged OFAC, among other things, to seek guidance regarding "its support for (or non-opposition to) the launch of the Marketing Process." Such guidance from OFAC was crucial to launch the sale process. By asserting that the Special Master—acting as an arm of the Court—cannot take steps to enforce the Court's judgment, the Venezuela Parties effectively contest the Court's enforcement power. If accepted, the Venezuela Parties' arguments would require not only the disqualification of the Special Master but would bar the Court from appointing any special master to implement the sale process.

As the Court has highlighted, "[e]ach day that Crystallex does not recover on its judgment is arguably something of an affront to the United States judicial system [and] [t]hose days must soon come to an end." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2021 WL 129803, at *18 (D. Del. Jan. 14. 2021). The Court should reject the Venezuela Parties' boundless affronts to this Court's authority.

## II. The Special Master Did Not Delay the Venezuela Parties' Receipt of Materials Responsive to Their FOIA Request

The Venezuela Parties also lob uninformed and incorrect accusations that the Special Master delayed production of the January 12, 2023 presentation to PDVH. *See* D.I. 1138 at 4-5. The Special Master's advisors cooperated with the DOJ, including answering questions regarding certain documents, in a timely and responsive manner.

As an initial matter, it is not the Special Master's responsibility to produce documents in response to a FOIA request; it is the obligation of the government agency to furnish the requested documents upon receiving a FOIA request. *See* 5 U.S.C. § 552. The Special Master is not privy to PDVH's FOIA litigation and has not appeared or participated in that suit in any manner.

The Venezuela Parties claim that the Special Master failed to meet certain deadlines set by the DOJ, which caused the DOJ to delay its production of materials responsive to the FOIA request. *See* D.I. 1138 at 5. This is false. Since first hearing from the DOJ in October 2023, the Special Master's advisors have made every effort to respond to the DOJ in a timely and cooperative manner. The Venezuela Parties contend that the Special Master failed to meet certain deadlines set by the DOJ, but their only support for this baseless accusation is their *own* motion to compel in the FOIA litigation. Tellingly, the motion does not mention delay or missed deadlines by the Special Master at all. Instead, it blames the DOJ for the failure to provide the documents. *See* C.A. No. 23-cv-1591 (D.D.C. Feb. 28, 2024), D.I. 20.

To the contrary, the Special Master's advisors worked with the DOJ and met the DOJ's requested deadlines. When the DOJ requested the Special Master's perspective on certain documents by October 13, 2023, the Special Master's advisors responded with their support for disclosure prior to the deadline. *See* Ex. B (Emails between C. Bentley and DOJ). Throughout the subsequent months, the DOJ continued asking the Special Master's advisors questions regarding exemptions under FOIA for certain documents and the advisors responded in a timely fashion, after completing any necessary review and research. *See id.*; Ex. C (Emails between C. Bentley and DOJ). When the DOJ first contacted the Special Master's advisors about the Presentation in March, the Special Master's advisors responded promptly. *See id.* The Venezuela Parties received the Presentation on April 4, 2024. *See* D.I. 1138 at 6.

At every turn, the Special Master's advisors cooperated with DOJ in a timely fashion in order to address the DOJ's questions regarding the materials responsive to the FOIA request. Contrary to the Venezuela Parties' baseless accusations, the Special Master played no role in any

delay of the Venezuela Parties receipt of documents pursuant to their FOIA request. If anything, the Court should consider whether sanctions are appropriate. *See* Fed. R. Civ. P. 53(c)(1)(2).

### III.  The Motion is Untimely and the Venezuela Parties Seek Only to Continually Frustrate and Tactically Delay the Enforcement of Validly Obtained Federal Judgments

Motions for disqualification "must be brought 'at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.'" *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 448 (2d Cir. 2005). Courts may consider the timeliness of a disqualification motion in deciding whether to grant it. *In re Kensington Int'l Ltd.*, 368 F.3d 289, 312 (3d Cir. 2004).

The first motion to disqualify was untimely. D.I. 544 at 2-3. Not only were the facts never in dispute, the Court found that the Venezuela parties sat on the issue of disqualification from December 28 until January 9 of 2023. *Id.* at 5-6. The timing of this motion is even more egregious. The Venezuela Parties sat on the presentation—their supposed "new evidence"—during the month of April, apparently having to "confer with both PDVSA and the Republic to determine the best course of action, including whether it was prudent to continue to wait . . . ." D.I. 1138 at 11. In other words, PDVH conferred with the "highly-recalcitrant judgment debtor" to determine how best to delay the sale process further. *See Crystallex*, 2021 WL 129803, at *18. This is precisely the gamesmanship the Third Circuit pointed to in explaining why timeliness is a factor for considering whether to grant a disqualification motion. *See Cirba Inc. v. VMware, Inc.*, C.A. No. 19-742-LPS, 2022 WL 606655, at *5 (D. Del. Jan. 7, 2022) (holding that party's "concerns about [a special master's] impartiality" were "waived" because the party "substantially delayed" raising those concerns).

## CONCLUSION

For the reasons set forth above, the Court should deny the Motion. The Venezuela Parties have again attempted to delay these proceedings by renewing their claims that the Special Master improperly advocated in his meeting with OFAC on January 12, 2023. The Venezuela Parties, however, again fail to show that the Special Master engaged in any advocacy or acted in any way that was contrary to Court order. The Special Master was mandated with assisting in the Sale Transaction and, in carrying out those duties, met with OFAC to seek guidance. No reasonable person would find that the Special Master acted improperly by assisting the Court in its efforts to enforce judgments that have been entered and affirmed.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Ray C. Schrock, P.C. (Admitted *pro hac vice*)
Alexander W. Welch (Admitted *pro hac vice*)
Chase A. Bentley (Admitted *pro hac vice*)
Luna Ngan Barrington (Admitted *pro hac vice*)
Sarah M. Sternlieb (Admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray.Schrock@weil.com
Alexander.Welch@weil.com
Chase.Bentley@weil.com
Luna.Barrington@weil.com
Sarah.Sternlieb@weil.com

Dated: May 10, 2024
11501654 / 21202.00001

*/s/ Myron T. Steele*
Myron T. Steele (#00002)
Matthew F. Davis (#4696)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
msteele@potteranderson.com
mdavis@potteranderson.com
bpalapura@potteranderson.com

*Counsel for Special Master Robert B. Pincus*