IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>Defendant. | Case No. 17-mc-151-LPS |

**SIX CREDITORS' RESPONSE IN OPPOSITION, AND JOINDER IN CONOCOPHILLIPS' AND CRYSTALLEX'S RESPONSES IN OPPOSITION, TO THE VENEZUELA PARTIES' RENEWED MOTION TO DISQUALIFY THE SPECIAL MASTER**

OI European Group B.V. ("OIEG"); Northrop Grumman Ship Systems, Inc., f/k/a Ingalls Shipbuilding, Inc., and now known as Huntington Ingalls Incorporated ("Huntington Ingalls"); ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd. (together, "ACL"); Rusoro Mining Limited; Koch Minerals Sàrl ("KOMSA") and Koch Nitrogen International Sàrl ("KNI," and, together with KOMSA, the "Koch Parties"); and Gold Reserve Inc. (collectively, the "Six Creditors") hereby submit this response in opposition, and join ConocoPhillips' and Crystallex's responses in opposition,[1] to *The Venezuela Parties' Renewed Motion to Disqualify the Special Master* (D.I. 1138) (the "Motion").[2]

---

[1] *See ConocoPhillips' Opposition to the Venezuela Parties' Renewed Motion to Disqualify the Special Master* and *Crystallex International Corporation's Response to the Venezuela Parties' Renewed Motion to Disqualify the Special Master*, each filed on the date hereof.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Sales Procedure Order, D.I. 481, as applicable.

1

**RESPONSE**

The Motion is simply another attempt by the Venezuela Parties to delay the satisfaction of outstanding judgments entered against Venezuela. In January 2023, when the Venezuela Parties last sought disqualification of the Special Master, Crystallex was the only judgment creditor with an attached judgment on the PDVH Shares. Today, there are a number of similarly situated creditors – including each of the Six Creditors – that have obtained attached judgments and have been declared Additional Judgment Creditors under the Sale Procedures Order. With the sale process in full swing, and with OFAC guidance softening the sanctions currently in place, *see* D.I. 555, it comes as no surprise that the Venezuela Parties are once again attempting to derail the process. However, because the Motion brings forward no new substantive arguments or facts, it should be denied for the very same reasons as in the past: (1) the Motion is untimely and (2) the arguments raised in the Motion were previously waived (and nonetheless fail on the merits).

*First*, over one year ago this Court determined that the Venezuela Parties' nearly identical motion to disqualify the Special Master failed because it was untimely. *See* D.I. 544. Then, as now, the parties were all aware of the Special Master's ex parte meetings with the U.S. Government. *See id*. at p.3. As this Court noted, "everything [] since at least May of 2021 is relevant" to the timeliness issue, and even if only focusing on the events of December 2022 and January 2023, the prior disqualification attempt was denied as untimely. *Id*. at p.5. Here, the timeliness analysis is no different – the only "new" fact is a Presentation from the very same meeting in January 2023 that formed the basis of the Venezuela Parties' disqualification attempts last year.[3] As recognized by the Court in its 2023 decision, not only was the appointment and

---

[3] It is also noteworthy that the Venezuela Parties received the "evidence" at issue here on April 4, 2024. *See* Motion at p.6. The Venezuela Parties then waited *more than three (3) weeks* before

2

conduct of the Special Master clear to all parties regarding his interactions with OFAC, but the Sale Procedures Order (entered in 2022) itself contemplated exactly what the Special Master was to seek in his meetings with OFAC:

> Within the period of six (6)months after the date of this Order (the "Six-Month Window"), the Special Master and his Advisors shall ***solicit and attempt to gain clarity or guidance from the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") of its support for (or non-opposition to***), the launch of the Marketing Process by the Special Master, the viability of the Marketing Process, and any additional feedback or guidance that the Special Master believes will more likely result in a value-maximizing Sale Transaction.

Sale Procedures Order [D.I. 481] at ¶ 3 (emphasis added).  The Sale Procedures Order *requires* the Special Master to seek clarity and guidance from OFAC of "its support for (or non-opposition to)" the sale process – nowhere does the Sale Procedures Order indicate that the Special Master should seek clarity of the "opposition" by OFAC.  Consistent with the Court's inherent power to enforce its own orders, the Sale Procedures Order directed the Special Master to seek guidance to *enforce* the Sale Procedures Order and the Presentation does no more than that.  It is of no moment that the Venezuela Parties *now* believe that this provision in the Sale Procedures Order could be used to disqualify the Special Master, as such an argument *should* have been raised years ago when the Sale Procedures Order was first proposed (or at least no later than when the Court held argument on final objections to the Sale Procedures Order *in 2022*).

*Second*, even if the Motion were timely, the Venezuela Parties have waived the ability to seek disqualification of the Special Master.  Special masters are generally governed by the same recusal standards as judges under 28 U.S.C. § 455.  *See* Fed. R. Civ. P. 53(a)(2).  However, the

---

filing the Motion, which, as this Court is aware, is a longer period than they waited in their prior disqualification attempts.

scope of disqualification of a special master can be modified by the parties: "*Disqualification.  A master must not have a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. § 455, unless the parties, with the court's approval, consent to the appointment after the master discloses any potential grounds for disqualification.*" *Id.* (emphasis added).

The Special Master was appointed on April 13, 2021.  *See* D.I. 258.  The Special Master was selected from a list of three individuals proposed to this Court – notably, Mr. Pincus, the selected Special Master, was proposed by the Venezuela Parties.  *See* D.I. 244.  Since the Special Master's appointment, it has been the consistent view of the parties that the sale process contemplated by the Sale Procedures Order would benefit from express guidance or authorization from OFAC.  For example, in 2021 the Special Master noted:

> Uncertainty surrounding what, if any, transaction OFAC will ultimately license creates an overhang that I believe will materially chill bidding.  Accordingly, my Advisors and I have worked extensively to coordinate with the USG, including OFAC, in developing the Sale Procedures Order.  While the USG's policy process and consideration of a potential Sale Transaction remains ongoing, I will continue to proactively engage with the USG's representatives following entry of the Sale Procedures Order and will seek explicit guidance or authorization from OFAC with respect to a potential Sale Transaction that is public or can be shared with Potential Bidders.

*Special Master's Report and Recommendation Regarding Proposed Sale Procedure Order* [D.I. 348], at ¶ 67; *see also Response of Special Master to Objections to Proposed Sale Procedures Order* [D.I. 356], at ¶ 5 ("I continue to recommend that the Court adopt a more nuanced proposal: the Marketing Process should be launched when I am satisfied with the authorization, FAQs, or other applicable guidance issued by OFAC regarding the launch and viability of the Marketing Process or such other time as ordered by the Court.").

Far from rejecting the Special Master's assertions that concrete guidance and authorization from OFAC would be preferred (and sought) prior to launching the sale process, the Venezuela Parties echoed that sentiment. "[P]roceeding without unequivocal OFAC approval will depress bidding." *Venezuela Parties' Objections to the Special Master's Proposed Order (A) Establishing Sale and Bidding Procedures (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters*, [D.I. 354], p.13. Indeed, the Venezuela Parties went even further than the Special Master on this point, expressly stating that the sale "***should not launch***" until after OFAC provides this concrete guidance and authorization:

> [I]t now should be unquestionable that the sale process should not launch except upon order of the Court after receipt of affirmative, *written* authorization from OFAC, not merely when the Special Master unilaterally decides that he is "satisfied" with OFAC's assurances, a provision inconsistent with the Special Master's own acknowledgments. . . . Only unequivocal authorization of a sale from OFAC itself will provide potential bidders with enough certainty to ensure that any auction of the PDVH shares is a meaningful process, and therefore only such authorization will elicit full-value bids.

*Venezuela Parties' Supplemental Response to the Special Master's Revised Proposed Sale Procedures Order* [D.I. 385], p. 8. Recognizing the importance of OFAC's position in connection with the sale process moving forward, the Venezuela Parties advocated for the process to be contingent on obtaining clear and express language (including by way of a specific license) from OFAC:

> [I]n order to accomplish this Court's goal of achieving a reasonable sale process, any OFAC authorization must be expressed clearly in the form of a specific license, the amendment of existing regulations and guidance, or the repeal of existing sanctions. For several reasons, the launch of the Sale Process cannot be based solely on the Special Master's "satisfaction with the authorization, FAQs, or other applicable guidance."

5

*Venezuela Parties' Supplemental Opening Brief Regarding Sanctions Issues Raised by the Special Master's Proposed Order* [D.I. 408] at pp. 13-14.  After multiple years of arguing that the *lack of* concrete language (in the form of a license or policy changes) from OFAC was reason to stall the sale process, it is disingenuous – but not surprising – that the Venezuela Parties now argue that the January 2023 request for precisely the same guidance was inappropriate.  It was Venezuela's own counsel who, in 2023, outlined "the line" between what the Venezuela Parties believe would be acceptable "advocacy" by the Special Master:

> If the statement was it would be helpful for the Court to know what the DOJ's view is, that seems to be me on the safe side of the line that doesn't raise an issue.  But if the statement is we think you've got your priorities wrong and we want you to subordinate the foreign policy, I do think that's over the line, and that's where we think the line is.

March 30, 2023 Hr. Tr. [D.I, 542] at 21:9-16.  The Venezuela Parties' filings and actions indicate that the Special Master's actions and instructions were done with their consent.  In January 2023, it was not known what the OFAC position was – but the Special Master was tasked with obtaining guidance that would support this Court's order, and he therefore provided suggested paths forward should OFAC be inclined to demonstrate its support for (or non-opposition to) the sale process.  To the extent there was any confusion or lack of clarity of how the Special Master intended to obtain the necessary guidance, counsel for the Special Master in January 2023 once again put all on notice of his understanding of his mandate:

> The special master does have a view on what we need from OFAC in order to have a value- maximizing process.  We need, you know, FAQs, as we said on the record.  We need the ability to give guidance of when the executive branch would consider granting licenses, and those are views that we have. . . .  We've always had those views with OFAC.  Did we make those clear in the January 12th meeting?  Yes.  Did we make them clear in prior meetings?  Yes.  Did we tell parties previously that, of course, we have views around how this process should proceed?  Yes.  Have we put that on the record?  Yes. . . .

> Your Honor, we haven't done anything different than we have done previously. We are being fair, open, and we're always attempting to be fair to all parties. We're not advocating on behalf of any party, but we certainly have a position about what we think is necessary from the U.S. government in order to allow the Court's order to be implemented, and we think that's consistent with our mandate . . . .

*Id*. at 73:21 – 74-11; 74:22 – 75:5. Since 2021, the Special Master has consistently been clear and direct with his intentions in how and when he will seek (and has sought) clarity and guidance from the U.S. Government for its support for (or non-opposition to) the sale process – and those intentions have been expressly delineated in the Sale Procedures Order and in the Special Master's status reports. As in 2023, the Venezuela Parties' Motion is thus untimely and the arguments thereunder waived.[4]

## CONCLUSION

For the reasons stated above, and those raised by Crystallex and ConocoPhillips, the Motion should be denied.

---

[4] With respect to the merits of the Motion, the Six Creditors join in the responses filed today by Crystallex and ConocoPhillips. Furthermore, the Court's same analysis of the merits of the disqualification motion from 2023 apply here as well.

7

Dated: May 10, 2024

| | |
|---|---|
| **MORGAN, LEWIS & BOCKIUS LLP**<br><br>By: /s/ Jody C. Barillare<br>Jody C. Barillare (#5107)<br>1201 N. Market St., Suite 2201<br>Wilmington, DE 19801<br>Telephone: 302-574-3000<br>Facsimile: 302-574-3001<br>jody.barillare@morganlewis.com<br><br> - and -<br><br>Jonathan Albano (*pro hac vice*)<br>Christopher L. Carter (*pro hac vice*)<br>One Federal Street<br>Boston MA 02110<br>Telephone: 617-341-7700<br>Facsimile: 617-341-7701<br>jonathan.albano@morganlewis.com<br>christopher.carter@morganlewis.com<br><br>**SEQUOR LAW, P.A.**<br>Edward H. Davis, Jr. (*pro hac vice*)<br>Fernando J. Menendez (*pro hac vice*)<br>1111 Brickell Ave., Suite 1250<br>Miami, FL 33131<br>Telephone: 305-372-8282<br>Facsimile: 305-372-8202<br>edavis@sequorlaw.com<br>fmenendez@sequorlaw.com<br><br>*Attorneys for OI European Group B.V.* | **PACHULSKI STANG ZIEHL & JONES, LLP**<br><br>By: /s/ Peter J. Keane<br>Laura Davis Jones (#2436)<br>Peter J. Keane (#5503)<br>919 North Market Street, Suite 1600<br>P.O. Box 8705<br>Wilmington, DE 19899-8705<br>Telephone: 302-652-4100<br>ljones@pszjlaw.com<br>pkeane@pszjlaw.com<br><br>**ALSTON & BIRD LLP**<br>Alexander A. Yanos (*pro hac vice*)<br>Robert Poole (*pro hac vice*)<br>90 Park Avenue, 15th Floor<br>New York, NY 10016-1387<br>Telephone: 212-210-9400<br>alex.yanos@alston.com<br>robert.poole@alston.com<br><br>*Attorneys for: (i) Northrop Grumman Ship Systems, Inc., f/k/a Ingalls Shipbuilding, Inc. and now known as Huntington Ingalls Incorporated, and (ii) Koch Minerals Sàrl and Koch Nitrogen International Sàrl* |
| **ASHBY & GEDDES**<br><br>By: /s/ Marie M. Degnan<br>Marie M. Degnan (#5602)<br>Randall J. Teti (#6334)<br>500 Delaware Ave., 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>Telephone: 302-654-1888<br>mdegnan@ashbygeddes.com<br>rteti@ashbygeddes.com | **DLA Piper LLP (US)**<br><br>By: /s/ Craig Martin<br>R. Craig Martin (#005032)<br>1201 North Market Street<br>Suite 2100<br>Wilmington, DE 19801<br>Telephone: 302-468-5655<br>Fax: 302-778-7834<br>craig.martin@us.dlapiper.com |

| | |
|---|---|
| **RILEY & JACOBSON, PLC**<br>Joshua S. Bolian (*pro hac vice*)<br>Jared A. Hagler (*pro hac vice*)<br>1906 West End Avenue<br>Nashville, Tennessee 37203<br>Telephone: 615-320-3700<br>jbolian@rjfirm.com<br>jhagler@rjfirm.com<br><br>*Attorneys for ACL1 Investments Ltd., ACL2 Investments Ltd. and LDO (Cayman) XVIII Ltd.* | - and -<br><br>James E. Berger (*pro hac vice*)<br>Charlene C. Sun (*pro hac vice*)<br>Joshua S. Wan (*pro hac vice*)<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Telephone: 212-335-4715<br>Fax: 212-884-8715<br>James.berger@us.dlapiper.com<br>Charlene.sun@us.dlapiper.com<br>Joshua.wan@us.dlapiper.com<br><br>*Attorneys for Rusoro Mining Limited* |
| **WOMBLE BOND DICKINSON (US) LLP**<br><br>By: */s/ Matthew P. Ward*<br>Kevin J. Mangan (#3810)<br>Matthew P. Ward (#4471)<br>Stephanie S. Riley (#5803)<br>1313 N. Market St., Suite 1200<br>Wilmington, DE 19801<br>Telephone: 302-252-4320<br>Kevin.mangan@wbd-us.com<br>Matthew.ward@wbd-us.com<br>Stephanie.riley@wbd-us.com<br><br>**NORTON ROSE FULBRIGHT US LLP**<br>Matthew H. Kirtland (*pro hac vice*)<br>799 9th Street NW, Suite 1000<br>Washington, DC 20001<br>Telephone: 202-662-0200<br>Matthew.kirtland@nortonrosefulbright.com<br><br>- and -<br><br>Katherine G. Connolly (*pro hac vice*)<br>555 California Street, Suite 3300<br>San Francisco, CA 94101<br>Telephone: 628-231-6816<br>Katie.connolly@nortonrosefulbright.com<br><br>*Attorneys for Gold Reserve Inc.* | |