IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---

CRYSTALLEX INTERNATIONAL CORP., )
)
    Plaintiff, )
)
v. )    Misc. No. 17-151-LPS
)
BOLIVARIAN REPUBLIC OF VENEZUELA, )
)
    Defendant. )

---

### SPECIAL MASTER'S RESPONSE TO THE VENEZUELA PARTIES' OBJECTION TO THE SPECIAL MASTER'S MODIFICATION OF BIDDING PROCEDURES

Robert B. Pincus, in his capacity as Special Master[1] for the United States District Court for the District of Delaware, respectfully responds to *The Venezuela Parties' Objection to the Special Master's Modification of Bidding Procedures* (the "Objection"). *See* D.I. 1144.

### PRELIMINARY STATEMENT

The Venezuela Parties' *Objection to the Special Master's Modification of Bidding Procedures* is a procedurally improper, calculated attempt to delay and deter the Marketing Process, a process designed to compensate creditors whose judgments the Venezuela Parties have been avoiding for years. Having acquired a confidential draft bid letter—a draft not yet provided to any Sale Process Parties, aside from CITGO—the Republic and PDVSA have weaponized the draft by characterizing it as a modification to the Bidding Procedures as reason for the Court to forestall the Sale Process. It is not.

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the *Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures Order, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* [D.I. 481] (the "Sale Procedures Order").

There is nothing for the Court to address because the Special Master has not moved to modify the Bidding Procedures, and the language of the confidential draft bid letter does not constitute modification of the Bidding Procedures. And in any event, the Special Master already has authority to negotiate with the PDVSA 2020 Bondholders under the Sales Procedures Order. *See* Sales Procedures Order at ¶ 39. The Venezuela Parties' Objection is therefore entirely without merit, and there is no ripe controversy before this Court.

Not only is the Venezuela Parties' Objection procedurally improper, by failing to file the bid letter under seal, the Venezuela Parties have disclosed a confidential Marketing Process document and violated their confidentiality obligations under the Sales Procedures Order.

The Court should deny this procedurally improper motion because any controversy is not ripe. Rather, the Court should see this Objection for what it is: a blatant attempt by the Venezuela Parties to further disrupt and delay the court-ordered Sales Process using confidential information they improperly obtained.

**FACTUAL BACKGROUND**

The Special Master is tasked with "assist[ing] the Court with the sale of PDVSA's shares in PDVH." Sale Procedures Order, at 2. He is responsible for "devis[ing] a plan for the sale of shares of PDVH as necessary to satisfy the outstanding judgment of Crystallex and the judgment of any other judgment creditor added to the sale," as well as to "devis[e] such other transaction as would satisfy such outstanding judgment(s) while maximizing the sale price of any assets to be sold." *See id.* (memorializing the Special Master's Court-approved plan as the Sales Procedures Order, filed October 11, 2022). In furtherance of his judicial mandate to maximize the value obtained from the Sale Transaction, the Special Master is currently engaged in confidential negotiations and dialogue with parties interested in purchasing the PDVH Shares.

The Sale Procedures Order contemplates negotiation by the Special Master regarding a 2016 CITGO equity pledge (the "CITGO Equity Pledge"), in which PDVSA issued 8.5% senior secured notes in exchange for certain equity in CITGO (the "PDVSA 2020 Bonds"). The PDVSA 2020 Bonds are the subject of ongoing litigation. *See Petróleos de Venezuela, S.A. v. MUFG Union Bank N.A.*, C.A. No. 19-cv-10023 (S.D.N.Y.). In the litigation, the Venezuela Parties argue that the PDVSA 2020 Bonds were unconstitutionally pledged and the holders of the PDVSA 2020 Bonds merely hold an unsecured claim. In contrast, the PDVSA 2020 Bondholders argue that the bonds were legitimately issued and that they are entitled to repayment or equity in CITGO. *See Petróleos de Venezuela, S.A. v. MUFG Union Bank N.A.*, 51 F.4th 456, 464 (2d Cir. 2022). Yet it is undisputed that if the PDVSA 2020 Bonds are found to be either valid or otherwise secured, the CITGO Equity Pledge held by the PDVSA 2020 Bondholders would encumber the controlling stake in the CITGO business. Although the CITGO Equity Pledge is not a direct lien on the PDVH Shares, if it is found to be valid, it would undoubtedly have implications for the governance of PDVH and its subsidiaries. It therefore operates identically to a senior lien, even if potential bidders discount the value of that senior lien due to pending litigation.

The Special Master and his advisors have been working diligently to identify and develop appropriate alternative solutions[2] within the existing authority granted to the Special Master under the Sale Procedures Order.[3]

---

[2] For example, one option may be to deposit all net proceeds of the sale into escrow and request that this Court issue the buyer an order certifying that the sale of the PDVH shares was free and clear of any lien, and that proceeds of such escrow would be released to their respective recipients pending resolution of the PDVSA 2020 bondholder litigation. If such an agreement (or any other agreement) in principle was reached with the PDVSA 2020 Bondholders, then at that time the Special Master would seek to amend the Bidding Procedures pursuant to the Sale Procedures Order.

[3] "[I]n consultation with the Sale Process Parties, the Special Master is authorized and empowered, in his sole discretion and at any time, to communicate and, as applicable, negotiate

In parallel, the Special Master has been working closely with CITGO, potential bidders of PDVH Shares ("Potential Bidders"), and other stakeholders on the bidding process itself, which involves the exchange of large amounts of sensitive and highly confidential information between CITGO and the Potential Bidders.

As is standard procedure for any bidding process of this scale, the Special Master planned to send a bid process letter (the "Confidential Bid Letter") to Potential Bidders providing certain information that they should be aware of while formulating their bids. With input from CITGO, the Special Master worked to draft its language. Because the Special Master has received numerous queries from Potential Bidders about the PDVSA 2020 Bonds, the Special Master included language in the proposed Confidential Bid Letter disclosing the litigation and the ongoing plans to address the issue.

On April 8, 2024, the Special Master sent the draft Confidential Bid Letter to Jones Day, transactional counsel for CITGO, for comment.[4] Neither PDVSA or the Republic, nor Crystallex or any Additional Judgment Creditors, were included on this communication. Indeed, no parties other than CITGO Counsel, the Special Master, and its advisors received this draft, which was marked confidential in bold at the top of the document. The Special Master then worked diligently with CITGO Counsel to incorporate its comments to the draft Confidential Bid Letter.

On April 10, 2024, the Special Master's financial advisors sent the Confidential Bid Letter to a list of Potential Bidders. Neither PDVSA, the Republic, Crystallex, nor any Additional

---

with any other person or entity, including… any holders of that certain series of bonds issued by PDVSA due in 2020 (the "PDVSA 2020 Bondholders")." Sale Procedures Order, ¶ 39.

[4] Eimer Stahl and Jones Day represent CITGO in this process (together, "CITGO Counsel").

Judgment Creditors received this communication or any communication containing the Confidential Bid Letter up until this point.

On April 16, 2024, Special Master received an email from CITGO Counsel, this time from Eimer Stahl LLP, CITGO's litigation counsel.  *See* D.I. 1145-1, Ex. F.  CITGO Counsel copied the Republic and PDVSA on this communication and attached a draft of the Confidential Bid Letter that was sent to potential bidders on April 10, 2024 to this correspondence.  *Id.*

Shortly thereafter, on April 23, 2024, the Special Master received communications directly from counsel for *PDVSA and the Republic*, objecting to certain language in the Confidential Bid Letter.  *See* D.I. 1145-1, Ex. H; *see also* Venezuela Parties' Objection at 8 n.13 (admitting counsel for PDVH and CITGO shared the contents of the letter and proposed revisions).  However, neither the Special Master nor his advisors had sent the April 8 Confidential Bid Letter draft to any Sale Process Parties other than CITGO, including PDVSA or the Republic.  Nevertheless, the Special Master diligently worked to address the concerns related to the asserted objectionable language.

On May 8, 2024, the Venezuela Parties—that is, CITGO, PDVH, PDVSA, and the Republic—filed this Objection to the Special Master's Modification of the Bidding Procedures. D.I. 1144.  With its Objection, the Venezuela Parties filed multiple drafts of this confidential and highly sensitive document on the docket, unredacted and unsealed.  *See* 1145-1, Exs. A, F, G, & H.  The Special Master did not receive communications from any of these parties informing him that they intended to publicize this confidential document, nor did he receive any communication seeking clarification as to whether the Confidential Bid Letter was confidential, or any other inquiry indicating a good faith misunderstanding of the confidential nature of these documents.

**ARGUMENT**

The Venezuela Parties attempt to cast the information provided to the Potential Bidders regarding the 2020 PDVSA Bonds as a modification of the Bidding Procedures. It is not. The information in the Confidential Bid Letter has no substantive effect, and was provided to Potential Bidders for informational purposes only. This Objection is thus entirely premature, and must be denied. Instead, the only relevant issue in front of the Court is that the Venezuela Parties flagrantly violated their confidentiality obligations by filing their Objection and the Confidential Bid Letter on the public docket.

I. **The Venezuela Parties' Objection Is Premature**

Because *no* modification has occurred and there is *no* request for the Court to enter a modification to the Bidding Procedures, the Venezuela Parties' Objection is premature, and any substantive decision would constitute an advisory opinion. *See Rhone-Poulenc Surfactants & Specialties, L.P. v. Comm'r*, 249 F.3d 175, 183 (3d Cir. 2001) ("questions presented [] based on hypothetical scenarios calling for an advisory opinion [are] at odds with Article III's case or controversy requirement"). The Bidding Procedures proscribe the requirements and timeline for the submission of bids in the Marketing Process. *See* Sale Procedures Order; D.I. 480-1. Should the Special Master need to modify the Bidding Procedures, they provide that, following consultation with the Sale Process Parties, any proposed modification be filed on the docket illustrating the revisions to the Bidding Procedures sought. *See* Sale Procedures Order, ¶ 27. All interested parties would then be invited to submit an objection within five (5) days, pursuant to Paragraph 10 of the SPO. *See id.*, ¶ 10. The Special Master has not filed any modification on the docket. For that reason alone, the Court must deny this objection as premature.

Furthermore, the Venezuela Parties' attempt to characterize language in the Confidential Bid Letter as a "proposed modification" of the Bidding Procedures is bizarre, evidencing a clear misunderstanding of the character and purpose of the Confidential Bid Letter. The Confidential Bid Letter is an ordinary bid process letter. A bid process letter is a standard letter used in auction processes: It provides certain information to ensure that all bidders are privy to the same information and are operating on an even playing field and with the same factual context. As such, the informational language provided in the Confidential Bid Letter does not have any substantive effect.

Additionally, the Venezuela Parties' concerns regarding the PDVSA 2020 Bonds are unfounded. The Special Master is engaged in discussions to ameliorate any concerns that Potential Bidders may have regarding the PDVSA 2020 Bonds, including discussions with the bondholders (as authorized in the Sales Procedures Order). It is unsurprising that Potential Bidders may have questions regarding how to value shares that may be encumbered by the 2020 CITGO Equity Pledge. The Special Master welcomes Potential Bidders to propose alternative solutions.

The Confidential Bid Letter does not grant the Special Master power to implement a release of the 2020 CITGO Equity Pledge, nor does it entail the imposition or initiation of an agreement with the PDVSA 2020 Bondholders. It does not even modify the SPO, the Bidding Procedures, or the assumptions underlying them in any other way. Thus, any decision regarding an alleged "modification" would be entirely premature. If and when the Special Master determines that a modification to the Bidding Procedures is necessary, he will file his proposed modification on the docket and all interested parties will be given the opportunity to express their views, and the Court can decide if the proposed modifications are in the best interests of a value-maximizing Marketing Process.

## II.     CITGO and PDVH Are in Breach of Their Confidentiality Obligations

This premature and unwarranted Objection also breached CITGO's and PDVH's confidentiality obligations. Parties with an interest in the Marketing Process, including CITGO and PDVH, are beholden to numerous confidentiality obligations. These include the Sales Procedure Order itself, which requires that a Sales Process Party hold any "documents received [pursuant to certain consultation rights] in strict confidence and in accordance with the terms of the Special Master Confidentiality Order [D.I. 291]." D.I. 480 at 53. Further, CITGO and each of its employees are bound by the Confidentiality Order. *See* D.I. 291. The Confidentiality Order provides that "no person or entity shall reveal any Confidential Information, Confidential Information Filings, or any information contained therein to anyone not entitled to receive Confidential Information under the terms of this Confidentiality Order." D.I. 291 ¶ 18.

Abiding by confidentiality obligations is critical to the complex and delicate process the Special Master is tasked with designing and implementing. The confidentiality obligations are also critical to the fundamental respect and decency the numerous entities involved in the Marketing Process owe to each other and to the Court. And they are *essential* to maximizing the value obtained by the Marketing Process. If potential bidders feel that their information or other confidential information associated with the Marketing Process may be compromised, they will be less likely to submit a bid, diminishing competition.

CITGO and PDVH expressly breached their confidentiality obligations by filing a draft of the Confidential Bid Letter publicly on the docket, unsealed and unredacted. Had they any confusion about the breadth of their confidentiality obligations with respect to this document, the proper procedure would have been to either inquire with the Special Master about the appropriateness of sharing this document on the public docket, or otherwise provide notice of their

intent to share confidential information with outside parties. The Venezuela Parties failed to do so.

It is hard to accept that these actions were honest mistakes made in good faith. In addition to being a sophisticated party that should be well-aware of its confidentiality obligations, CITGO was reminded of these exact obligations just weeks ago: Following numerous leaks about the Marketing Process from an involved party, on April 25, 2024, the Special Master sent CITGO Counsel an explicit reminder of its confidentiality obligations, and the consequences of violating them. Like all judicial officers, the Special Master does not take his authority to impose sanctions lightly. *See* Fed. R. Civ. P. 53(c)(2). However, the egregious conduct by the Venezuela Parties in their steadfast attempts to delay and deter the Marketing Process provide the Special Master considerable basis to do so.

## **CONCLUSION**

For the reasons set forth above, the Court should deny the Objection as premature and procedurally improper.

| | |
|---|---|
| | POTTER ANDERSON & CORROON LLP |
| OF COUNSEL: | */s/ Myron T. Steele* |
| | Myron T. Steele (#00002) |
| Ray C. Schrock, P.C. (Admitted *pro hac vice*) | Matthew F. Davis (#4696) |
| Alexander W. Welch (Admitted *pro hac vice*) | Bindu A. Palapura (#5370) |
| Chase A. Bentley (Admitted *pro hac vice*) | Hercules Plaza, 6th Floor |
| Luna N. Barrington (Admitted *pro hac vice*) | 1313 North Market Street |
| Sarah M. Sternlieb (Admitted *pro hac vice*) | P.O. Box 951 |
| WEIL, GOTSHAL & MANGES LLP | Wilmington, DE 19801 |
| 767 Fifth Avenue | Telephone: (302) 984-6000 |
| New York, New York 10153 | Facsimile: (302) 658-1192 |
| Telephone: (212) 310-8000 | msteele@potteranderson.com |
| Facsimile: (212) 310-8007 | mdavis@potteranderson.com |
| Ray.Schrock@weil.com | bpalapura@potteranderson.com |
| Alexander.Welch@weil.com | aschneider@potteranderson.com |
| Chase.Bentley@weil.com | |
| Luna.Barrington@weil.com | *Counsel for Special Master Robert B. Pincus* |
| Sarah.Sternlieb@weil.com | |

Dated: May 13, 2024
11503570/21202.00001