IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 17-151-LPS |

# MEMORANDUM ORDER

Pending before the Court is the Venezuela Parties'[1] renewed motion to disqualify the Special Master (D.I. 1138) ("Motion" or "Mot."). For all of the many reasons stated below, the Motion is denied.

## The Motion Is Untimely

Motions for disqualification "must be brought at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Omega Eng'g, Inc. v. Omega S.A.*, 432 F.3d 437, 448 (2d Cir. 2005) (internal quotation marks omitted); *see also In re Kensington Int'l Ltd.*, 368 F.3d 289, 312 (3d Cir. 2004) ("[T]he Courts of Appeals cases that have addressed the issue have concluded that parties seeking disqualification under [28 U.S.C.] § 455(a) should do so in a timely manner."). The timeliness requirement serves two purposes: "a prompt application affords the district judge an opportunity to assess the merits of the application before taking any further steps that may be inappropriate for the judge to take" and "avoids the

---

[1] Capitalized terms, unless otherwise defined, have the same meaning as in the Sale Procedures Order ("SPO"). (D.I. 481)

1

risk that a party is holding back a recusal application as a fall-back position in the event of adverse rulings on pending matters." *In re Int'l Bus. Machs. Corp.*, 45 F.3d 641, 643 (2d Cir. 1995).

In March 2023, the Court denied the Venezuela Parties' initial motion to disqualify the Special Master (*see* D.I. 538; D.I. 542 at 103-21; D.I. 544), a motion that had been filed on January 20, 2023 (*see* D.I. 509; D.I. 511), a week after the January 12, 2023 meeting ("January 2023 meeting") between the Special Master and the U.S. government that is also the focus of this pending Motion. Among the multiple bases for denying the initial motion to disqualify was that it was untimely. (*See* D.I. 544 at 2-5) As the pending "renewed" Motion to disqualify is based on objections to the same January 2023 meeting as the initial motion (Mot. at 11), and the initial motion was denied as untimely, it follows as a matter of logic that the renewed Motion – which was filed 15 months *after* the untimely initial motion – is also untimely.

The time for the Venezuela Parties to object to the Special Master's *ex parte* communications with the U.S. government – which are expressly contemplated by the SPO as a crucial component of the Court's long-running efforts to maximize value **for the Venezuela Parties** – had come and gone well before January 2023. (*See, e.g.*, D.I. 544 at 3) ("Here the motion is untimely because the grounds for it were known to the moving parties for at least many months prior to the filing of their motion. . . . [A]ll the parties have known since approximately May of 2021 that the special master had engaged OFAC counsel and was in ex parte communication with OFAC.") No amount of "new" evidence showing in further detail how the Special Master complied with his obligations at the January 2023 meeting can "turn back time" and make an effort to disqualify him based on these actions anything other than untimely. (*See, e.g.*, D.I. 1149 at 2) (Crystallex arguing "the discovery of new evidence that supposedly supports

an argument that was untimely a year ago does not make the same argument timely today.")

The Motion Is Predicated On Waived Grounds

In connection with denying the initial motion to disqualify, the Court found that "the Venezuela [P]arties' long-time acquiescence in the special master's ex parte engagement with OFAC, which was materially similar to what he had done repeatedly before, . . . also constitutes a waiver of their right to seek disqualification of the special master based on [the January 2023] meeting."  (D.I. 544 at 8)  The Court continues to find that the essentially identical bases for the Venezuela Parties' renewed Motion are waived, even in light of the purported "new" evidence of the Special Master's actual "Presentation" (*see* D.I. 1138 Ex. B) at the January 2023 meeting.

The Venezuela Parties contend that they "never acquiesced to the kind of advocacy revealed in the Presentation, which was neither disclosed to [them] nor contemplated by this Court's prior Orders."  (Mot. at 11)  The Court disagrees.  Instead, as Crystallex observes:

> In May 2021 the Special Master informed the parties that he began engaging in *ex parte* communications and meetings with OFAC. D.I. 285, at 2.  Then, in August 2021, the Special Master informed the parties that he had met with U.S. government representatives multiple times during the summer of 2021, had "consistently, unambiguously, and proactively solicited their input," and would "continue to take a proactive approach with respect to engagement with the United States Government regarding the OFAC decision-making process and obtaining assurances for Potential Bidders that they can participate in the sale process," including "explicit guidance **or authorization** from OFAC with respect to a potential Sale Transaction."  D.I. 348, ¶¶ 4, 39-41, 67 (emphasis added). The Special Master also stated in a chart summarizing his proposed sale procedures that he intended to share information with the Executive Branch that "is reasonably necessary or desirable in connection with the issuance of any regulatory approval or is reasonably necessary or desirable in connection with implementation of the Sale Procedures and any Sale Transaction, including any guidance **or license** from OFAC."  *Id.* at 67 (emphasis added).

(D.I. 1149 at 4-5)

3

In the Sale Procedures Order, the Court expressly required that the Special Master "solicit and attempt to gain clarity or guidance" on OFAC's "support for (or non-opposition to)" the marketing process, and "authorized" the Special Master to "proactively engage with representatives from the Executive Branch . . . and to take all steps or actions reasonably in furtherance of the issuance of OFAC guidance *and/or authorization*." (D.I. 481 at ¶¶ 3, 4) (emphasis added)  The Court is not at all persuaded by the Venezuela Parties' assertion (*see* Mot. at 12) that one can see in the Presentation something "materially dissimilar" in the Special Master's January 2023 interactions with the Executive Branch as compared to his earlier such interactions.

While the Venezuela Parties had objected in August 2021 to the Special Master's *ex parte* engagement with OFAC, stating that "federal courts do not advocate to the Government on behalf of particular parties or for particular outcomes in regulatory determinations affecting those parties" (D.I. 354 at 21), they did not at any time prior to the January 12, 2023 meeting contend that the Special Master's engagement with the U.S. government or his purported "advoca[cy]" created a basis for his disqualification (*see id.* at 16-18).  Thus, just as the Court found in denying the initial motion to disqualify (*see* D.I. 544 at 8), the Court again concludes that the Venezuela Parties have waived their right to seek disqualification of the Special Master on the grounds asserted in the renewed Motion.

The Motion Does Not Meet Requirements For Reconsideration

As the Venezuela Parties do and must acknowledge, they already moved once before to disqualify the Special Master based on his participation in the January 2023 meeting.  (*See, e.g.*, Mot. at 1; *see also* D.I. 509)  That motion was unsuccessful.  (*See* D.I. 538; D.I. 542 at 103-21; D.I. 544)  Their renewed Motion may fairly be viewed as a motion for reconsideration of the

Court's earlier denial. But it is not a meritorious motion for reconsideration.

The only conceivable grounds on which the Venezuela Parties could be asking the Court to reconsider its denial of the initial motion for disqualification is the purported discovery of "new" evidence, i.e., the Presentation. *See Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) ("The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence.") (internal quotation marks omitted). Merely "advanc[ing] the same arguments" previously made "is not a proper basis for reconsideration." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).

The Venezuela Parties characterize the Presentation as "direct evidence" of improper advocacy by the Special Master in the form of "previously unavailable documents generated by the Special Master for that [January 2023] meeting and produced by the Government pursuant to Freedom of Information Act ['FOIA'] litigation." (Mot. at 2) Because the Court does not see anything "new" in the Presentation, compared to what the Special Master had already described as having occurred at the January 2023 Meeting, and because (again) there is nothing "materially dissimilar" between the Special Master's January 2023 interaction with the Executive Branch and his earlier such interactions, the Presentation is not truly "new" in the sense required for a meritorious motion for reconsideration.

<u>The Motion Improperly Incorporates By Reference</u>

In asserting the bases for their Motion, the Venezuela Parties vaguely refer the Court to unspecified discussions "at length" in their earlier filings, "which they re-incorporate here." (Mot. at 10) They go on to cite no fewer than four full-length briefs. (*Id.* ("*See* D.I. 509, D.I. 515, D.I. 524, D.I. 533"); *see also* D.I. 1175 at 6 n.5 (Venezuela Parties suggesting Court need only review "portions" of its earlier filings, which evidently total "eight pages," though failing

5

even to identify those pages for the Court))  This is a violation of this Court's Local Rules, *see* D. Del. LR 7.1.3(a)(4), including rules governing page limits for briefs.  *See, e.g.*, *Wise v. Biowish Techs., Inc*, 2019 WL 4344273, at *6 (D. Del. Sept. 12, 2019) ("Defendants cannot evade the page limits set forth in Del. Local Rule 7.1.3[(a)](4) by incorporating by reference arguments made in prior briefs."); *Idenix Pharms. LLC v. Gilead Scis., Inc.*, 2018 WL 922125, at *1 n.2 (D. Del. Feb. 16, 2018).  It is improper for the Venezuela Parties to expect the Court to track down the earlier filings, figure out for itself the supposedly relevant pages in four earlier briefs – which were written at an earlier time, based on a different record, with no awareness of or accounting for the Court's subsequent rulings – and somehow divine what the Venezuela Parties might now be arguing.

<u>The Venezuela Parties' Motivations For Pressing The Motion Are Suspect</u>

The Court is not unmindful of the fact that the Venezuela Parties' latest effort to disqualify the Special Master was filed at a moment of particular sensitivity in the sale process.  Final binding bids for the PDVH Shares to be sold are due on June 11, 2024 – less than two weeks from today – and the sale hearing is scheduled for July 15, 2024.  (*See* D.I. 1134)  These dates were just seven and twelve weeks away when the Venezuela Parties filed their Motion.  As the Venezuela Parties undoubtedly know, this would be a most inopportune time for the Court, and the sale process, to lose the individual overseeing the entire, complex sale process (an individual who, it should not be forgotten, was the nominee of the Venezuela Parties themselves).

The Court shares the suspicions expressed by the Special Master and several creditors as to the Venezuela Parties' motivations for filing such a meritless motion at such a precarious time.  (*See, e.g.*, D.I. 1150 at 1-2 (Special Master: "Having been involved in this matter for more than three years, it is clear to the Special Master that the Venezuela Parties have attempted and will

attempt to delay, hinder, and prevent their creditors from receiving payment on their judgments at every possible turn."); D.I. 1149 at 13 (Crystallex: "Their attempt to resurrect an argument that was untimely and waived a year ago is a transparent, last-ditch ploy to scuttle the sale process just before the close of bidding."); D.I. 1148 at 1 (ConocoPhillips: "The Renewed DQ Motion is yet one more attempt in a long line of litigation gambits with which the Venezuela Parties have sought to frustrate the legitimate efforts of creditors to get paid on their judgments."); D.I. 1152 at 2 (Six Creditors: "The Motion is simply another attempt by the Venezuela Parties to delay the satisfaction of outstanding judgments entered against Venezuela."))

The Venezuela Parties appear to defend the last-minute nature of their filing on delays they encountered in FOIA litigation. (*See, e.g.*, Mot. at 4-6)  This explanation is somewhat confounding. To the Court's recollection, the Venezuela Parties did not ever ask ***this Court*** whether it would order the Special Master to provide them with the materials prepared for the January 2023 meeting, including the Presentation.[2]  Nor does the Court recall ever receiving a complaint from the Venezuela Parties about the Special Master's non-production. Had the Venezuela Parties genuinely wanted to obtain the materials shortly after the January 2023 meeting, it is difficult to fathom why they would not have at least asked this Court to order this Court's Special Master to produce them.[3]

---

[2] Neither the declarations filed in connection with the initial motion to disqualify (*see, e.g.*, D.I. 516, 525) nor those filed in connection with the renewed Motion (*see, e.g.*, D.I. 1139, 1176) mention any request by the Venezuela Parties to this Court for production of the materials prepared by the Special Master for the January 2023 meeting.

[3] As best as the undersigned Judge can recall, the first time he ever heard of the existence of the FOIA requests and related litigation was in one of the regular, *ex parte* (and known-to-the-parties) update calls with the Special Master, held on March 29, 2024. (*See also* D.I. 1150 Ex. C at 31) (March 20, 2024 email from counsel for Special Master to undisclosed recipient stating he intends to raise FOIA requests with Judge Stark in upcoming meeting)

The Court found that the initial disqualification motion had "at least a substantial element of being tactical and designed with at least a partial goal of further delaying these proceedings." (D.I. 544 at 7)  In the Court's view, the renewed Motion, filed 15 months later, suffers from the same defects.  *See generally United States v. Microsoft Corp.*, 253 F.3d 34, 108 (D.C. Cir. 2001) ("Disqualification is never taken lightly.  In the wrong hands, a disqualification motion is a procedural weapon to harass opponents and delay proceedings.").

<u>The Motion Lacks Merit</u>

Although the Motion could be denied on one or more of the grounds already noted, the Court will now address the merits, which are also lacking.

*Legal Standards*

Disqualification under 28 U.S.C. § 455 is required when "a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned."  *In re Kensington Int'l Ltd.*, 353 F.3d 211, 220 (3d Cir. 2003) (internal quotation marks omitted).  The requirements of § 455 also apply to special masters.  *See, e.g., Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1208 (10th Cir. 2014); *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 525 F.3d 554, 556 (7th Cir. 2008); *see also* Fed. R. Civ. P. 53(a)(2) ("A master must not have a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. § 455, unless the parties, with the court's approval, consent to the appointment after the master discloses any potential grounds for disqualification.").  But disqualification is not easy to obtain: a movant must overcome "a presumption of honesty and integrity in those serving as adjudicators."  *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  "Because a judge is presumed to be impartial, a party seeking recusal bears the substantial burden of proving otherwise."  *United States v. Roads*, 97 F.4th 1133, 1136 (8th

Cir. 2024); *see also Yosd v. Mukasey*, 514 F.3d 74, 78 (1st Cir. 2008).

*The Venezuela Parties Fail To Show The Special Master Engaged In "Advocacy"*

The Venezuela Parties renew their Motion to disqualify the Special Master "based on his improper advocacy to the United States Government in a January 12, 2023 meeting." (Mot. at 1) They complain that the Special Master advised the U.S. government that "US sanctions against PDVSA have stalled efforts by Crystallex and other creditors to pursue their rights" and that he requested that "OFAC provide authorization of the Special Master sale process in the form of a General License or broad specific license." (Mot. at 6 (internal quotation marks omitted); *see also id.* at 9) They contend that "[t]he newly discovered evidence of the Special Master's advocacy to the Government at the least gives rise to appearance-of-partiality and separation-of-powers concerns that require his disqualification under 28 U.S.C. § 455, Rule 52(a)(2), and/or the Due Process Clause of the Fifth Amendment." (Mot. at 10)

The Special Master's Presentation at the January 2023 meeting contains no improper advocacy. The Court agrees with the Special Master's description of the Presentation as demonstrating he "acknowledged the existing factual situation, and identified options that OFAC could take regarding the Sale Transaction, which was his court-ordered mandate." (D.I. 1150 at 9-10) The Court does not find in the Presentation the link the Venezuela Parties purport to see in it (*see* Mot. at 6) between the Special Master's factual observation that "US sanctions against PDVSA have stalled efforts by Crystallex and other creditors to pursue their rights in satisfaction of their claims" (D.I. 1138 Ex. B at 17) and his request that OFAC "[i]ssue a general license authorizing all aspects of the sale" (*id.* at 10), which are separated by seven pages in the Presentation. The Special Master was pointing out to the Executive Branch several options available to those policymakers that would aid the Special Master in fulfilling his Court-ordered

9

responsibilities, should the Executive Branch itself decide it wished to do so. This is not improper advocacy. Instead, as ConocoPhillips observes, "[t]o the extent the [Special Master's] PowerPoint could be interpreted as expressing a view, it simply stated the obvious – that the success of the sale process would be substantially enhanced by guidance from OFAC that a sale would be allowed to close." (D.I. 1148 at 7)

The Venezuela Parties have failed to articulate any cognizable separation of powers claim or identify any violation of their due process rights. As Crystallex correctly states, "Venezuela has no 'right' to defy the final and binding judgments of our federal courts." (D.I. 1149 at 15) It follows, as Crystallex adds, that "[t]here was absolutely nothing improper in the Special Master's request that the Executive Branch authorize a sale process that this Court ordered to enforce a final and binding federal-court judgment." (*Id.*) Additionally, as ConocoPhillips puts it, since "[t]he Venezuela Parties have no legally cognizable right to continue to evade their creditors," they have "no reasonable expectation that either the Court or the Special Master would be 'impartial' with respect to whether or not judgments are paid." (D.I. 1148 at 1) Thus, as the Court stated in denying the initial motion to disqualify, there is "nothing improper or anything a reasonable person would think improper in the special master assisting the Court in its efforts to enforce judgments that have been entered and affirmed." (D.I. 544 at 8)

*The Venezuela Parties Fail To Show The Special Master Created An Appearance Of Partiality*

In a post-judgment context, acting under the directive given to him by this Court, there is nothing wrong with the Special Master working to enable the sale process. His assigned task – the entire *raison d'être* for his participation in this litigation – is to assist the Court in enforcing Crystallex's judgment. Just as "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not

10

constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible," *Liteky v. United States*, 510 U.S. 540, 555 (1994), the Special Master is not required to be neutral between the options of effectuating the task given to him – enforcing an affirmed judgment of the federal courts – and failing in those duties.  (*See also* D.I. 1150 at 11) (Special Master: "There is nothing '[]partial about a judicial officer's duty to carry out 'a "full" Sales Process that benefits Crystallex and other creditors' against a judgment debtor.")

As Crystallex accurately points out: "The essence of the Venezuela Parties' objection is that the Special Master asked the Executive Branch to authorize the sale process.  But the Special Master's pursuit of such authorization has been open, transparent, and authorized by this Court for years."  (D.I. 1149 at 10)  "By asking the Executive Branch to permit the sale process to go forward, the Special Master was 'advocating' only for this Court's process in fulfilling the Third Circuit's mandate to enforce Crystallex's judgment."  (*Id.* at 3)  In short, the Special Master's conduct is entirely consistent with his role in carrying out the sale process to effectuate the judgment against the Venezuela Parties.  *See generally United States v. Ciavarella*, 716 F.3d 705, 719 (3d Cir. 2013) ("[A]ssessments relevant to the case, whether they are correct or not, . . . do not demonstrate bias.").

*The Venezuela Parties Fail To Show The Special Master Deviated From His Mandate*

The Sale Procedures Order expressly authorizes *ex parte* meetings between the Special Master and the federal government.  (*See* D.I. 481 at ¶ 3 (SPO directing Special Master to "[w]ithin a period of six (6) months . . . solicit and attempt to gain clarity or guidance from [OFAC] of its support for (or non-opposition to), the launch of the Marketing Process by the Special Master, the validity of the Marketing Process, and ***any additional feedback or guidance***

11

*that the Special Master believes will more likely result in a value-maximizing Sale Transaction*") (emphasis added); *id.* ¶ 4 ("authoriz[ing]" Special Master to "proactively engage with representatives from the Executive Branch . . . and to take **all steps or actions reasonably in furtherance of** the issuance of OFAC guidance and/or authorization") (emphasis added); D.I. 544 at 4 (Court noting it gave "express direction" that such meetings occur))  Moreover, as the Court stated in denying the Venezuela Parties' last-minute request to attend the January 2023 meeting, the Court understood the Special Master would, at that meeting, "'advocate' . . . for the enforcement of the Court's orders, consistent with his previous efforts, and as the Court expressly contemplated and authorized him to do in aid of allowing the Court to fulfill its judicial duties."  (D.I. 506 at 2 n.2)  The Special Master's participation in the January 2023 meeting, including his Presentation, is well within the confines of the Court's mandate to him.

It is worth emphasizing that the entire complex endeavor of creating and implementing the Sale Procedures Order, drafted by the Special Master (with extensive input and objections from the Sale Process Parties) and carried out on a day-to-day basis by him, is the result of the Court's extensive and strenuous efforts to conduct a process that is most likely to maximize the value of the PDVH Shares *to the benefit of the Venezuela Parties*.  As noted by Crystallex, "this Court ordered that bidding could proceed even *without* express [OFAC] authorization, and the purpose of engaging with the Executive Branch was to obtain assurances that would comfort bidders and increase sale value – a purpose that benefits Venezuela as much as it benefits creditors."  (D.I. 1149 at 3)  While Delaware law directs that the Court pursue a value-maximizing transaction, there is more than one way to do so, and undoubtedly there were options available to the Court that were far, far less solicitous of the interests of the Venezuela Parties.  The Court has needed, and will continue to need, the experience and efforts of the Special Master

12

(and his advisors) to carry out the elaborate process it has adopted.

### "Any Outcome Where Crystallex Is Not Paid Means That Venezuela Has Avoided Its Obligations"

This litigation has now stretched to nearly seven years. It was preceded by over five years of arbitration. The Venezuela Parties have had innumerable opportunities to litigate every conceivable challenge to this Court's approach – and they have often done so. Additional chances to object, in particular to the Court's evaluation of the ultimate recommendation of the Special Master as to whether to approve a sales transaction, lie immediately ahead. The Venezuela Parties additionally may avail themselves of access to OFAC, and perhaps other policymakers, in their ongoing efforts to prevent the Court from carrying out its judicial responsibilities.

In the meantime, however, the Court will proceed with implementing the Sale Procedures Order. In doing so, this Court is acting under a directive from the United States Court of Appeals for the Third Circuit. As far back as 2019, the Third Circuit told the world – and, from a more parochial perspective, instructed this Court – that "***[a]ny outcome where Crystallex is not paid means that Venezuela has avoided its obligations.***" *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 149 (3d Cir. 2019) (emphasis added). This Court, then, is compelled, by its role in the judicial hierarchy, to take all reasonable and lawful steps to avoid an outcome in which Venezuela succeeds in not living up to its obligations to pay its debts. The appointment and actions of the Special Master are indispensable components of this Court's efforts. The Venezuela Parties will not upend them with frivolous motions.

13

Accordingly, **IT IS HEREBY ORDERED** that the Venezuela Parties' Motion (D.I. 1138) is **DENIED**.

**IT IS FURTHER ORDERED** that PDVH and CITGO's motion for leave to extend page limits and file a separate reply (D.I. 1177) is **GRANTED**.

May 31, 2024  
Wilmington, Delaware

HONORABLE LEONARD P. STARK  
UNITED STATES DISTRICT COURT