IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE



------------------------------------------------------- x
:
CRYSTALLEX INTERNATIONAL CORP.,      :
:
Plaintiff,          :
:
v.                :     Case No.:  17-mc-151-LPS
:
BOLIVARIAN REPUBLIC OF VENEZUELA,  :
:
Defendant.          :     Ref. D.I. Nos. 1188 and 1178.
------------------------------------------------------- x

FILED

JUN 1 7 2024

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

### ADELSO ADRIANZA'S REPLY TO CRYSTALLEX INTERNATIONAL CORPORATION'S OPPOSITION TO THE MOTION FOR RECONSIDERATION

Adelso Adrianza (the "Movant'), a shareholder of the Plaintiff, pro se, hereby respectfully submits this reply (the "Reply") to Crystallex International Corporation's opposition (the "Opposition") to the Motion For Reconsideration.

### PRELIMINARY STATEMENT

From its bankruptcy filings (the CCAA in Canada and the Chapter 15 in Delaware) in December 2011 to date, the Company has remained true to form in the execution of a legal strategy predicated on form over substance and deflection. There is no shortage of documented evidence of such instances on the Company's court case records. The approach is quite simple and, thus far, surprisingly effective; given that we are in the presence of a company in bankruptcy proceedings that is controlled, de jure and de facto, by a manifestly self-interested BOD/DIP that:

A. Granted the DIP Lender a payoff of over US$ one billion, equivalent to 90% of the net arbitration award (the "NAP"), which represents the arbitration award less approved charges, debt principal and service at 100%) for a US$ 76 million DIP loan;

B. Is composed of five BOD/DIP members:

i. Two shareholder-elected directors that will get a US$ 100 million payoff from the DIP Lender as compensation for the dilution of their share of a MIP fund tied to the residual

- 1 -

value of the Company's share of the NAP. The MIP fund amount was set at the lesser of 25% of the residual NAP and US$ 80 million to align the interests of a select number of company executives and BOD members with the Shareholders' interests. The reduction of the Estate's share of the NAP from 65% to 10% through the increase of the DIP loan from US$ 36 million to US$ 76 million reduced the MIP fund value to a de minimis amount and the Shareholders' interest to zero. This is the case because the Estate is required to use its 10% share of the NAP to cover the arbitration, bankruptcy, award collection and the Company's liquidation costs and expenses;

ii.  Two DIP Lender nominee directors (its CEO / founding partner and its COO) who have high personal stakes in the outcome of the DIP financing transaction;

iii. One "independent" director that is appointed by the four self-interested directors.

And...

C. Self-avowedly professes to adequately represent the Shareholders.

The Company's Opposition (D.I. 1188) is, in golf terms, par for the course and follows the same old modus operandi. To wit:

1. Purports to meet duties and responsibilities through sweeping generalizations devoid of factual predicate evidence (e.g., adequate representation of the Shareholders' interests; D.I. 414, 1073 and 1188);

2. Does not seriously acknowledge or deny fault and responsibility (e.g., abandoning property and rights at the expense of the Estate and the Shareholders; D.I. 1073 and 1188);

3. Shuns review and discussion of any substantive matter (e.g., evidence for adequate representation of the Shareholders' interest; D.I. 414, 1073 and 1188);

4. Hides behind procedure to deflect attention from substantive matters; even those that it reluctantly has had to acknowledge as true (e.g., the US$ 320 million valueless bonds received from Venezuela; D.I. 1178, 1073 and 1188);

- 2 -

5. Relies on the court taking their word for granted and obviating fact finding (e.g., abandoning Estate property and rights to protect the BOD/DIP's self-interests; D.I. 1178, 1188);

6. Skews the law and the facts as convenient (e.g., distribution of Crystallex's assets is irrelevant to judgement collection proceeding; D.I. 1073 and 1188).

No matter how often repeated, self-exonerating statements of law and fact devoid of substantive review and a modicum of evidence cannot be conflated with due process of law and justice. This is the case regardless of how much generalized and tangential judicial precedent is cited that stands for sweeping propositions such as 1) the Movant has no interest in the action because owning stock in a company "is insufficient to imbue [shareholders] with the degree of 'interest' required for Rule 24(a) intervention", and 2) "he has failed once more to show that Crystallex inadequately represents Adrianza's interests in this action, as both are interested in maximizing Crystallex's recovery", without the benefit of procedural and substantive due process.

## BACKGROUND

In the Memorandum Order dated April 25, 2024 (D.I. 1137), the Court denied the Movant's Motion To Intervene And For An Order To Assign Property Rights Abandoned By Crystallex International Corporation To Its Estate And Shareholders (D.I. 1041) grounded on four main contentions:

- The BOD/DIP adequately represents the Shareholders as both are interested in maximizing recovery;

- Distribution of the Debtor's Estate property is irrelevant to the judgement collection proceeding;

- Movant has not shown he has sufficient interest in this action to the level required for Rule 24(a) intervention;

- The Movant has not made evident the irreparable harm the Shareholders will suffer absent a stay.

In the Motion For Leave To File Instanter A Motion For Reconsideration (the

"Reconsideration Motion," D.I. 1178), the Movant asserted that the Court's decision:

    i. Obviated facts and substantive matters and in so doing elevated form over substance;

    ii. Overlooked controlling precedent regarding intervention, Shareholders' rights, and constitutional standing that allowed the Court to approve the relief requested;

    iii. Disregarded evidentiary facts that point to the Company not adequately representing the Shareholders because of the BOD/DIP's conflicting interests;

    iv. Resulted in irreparable harm to the Estate and the Shareholders by operation of Delaware state judgement collection law and rules.

In the Opposition, the Company predicated its objection to the Motion for Reconsideration on the usual free-standing argument:

1. The Company represents adequately the Shareholders' interests and their interest in maximizing recovery for Crystallex on its judgment are perfectly aligned.

And deflecting arguments that are subjective, beside the point and/or with little, if any, basis at law and in fact:

2. Authority to distribute the Estate's property lies solely with the Chapter 15 Court;

3. There is no indication the Court based its prior decisions on any incorrect legal standard; the Court did not overlook controlling precedent;

4. The Motion is an improper substitute for an appeal.

## ARGUMENT

The Company's arguments are ineffectual and a rehash of its circular defense arguments. Before anything else, it is expedient to set the record straight about relevant law and facts that underlie the Reconsideration Motion:

First, the Motion is predicated on FRCP 60(b) and, in relevant part, provides:

> <u>Grounds for Relief from a Final Judgment, Order, or Proceeding.</u>
> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) <u>mistake, inadvertence, surprise, or excusable neglect;</u>

(3) <u>fraud (whether previously called intrinsic or extrinsic),</u>
<u>misrepresentation, or misconduct by an opposing party;</u>
(6) any other reason that justifies relief.

[Emphasis added.][1]

Second, per the Third Circuit Court of Appeals (the "Third Circuit"):

<u>The purpose of a motion for reconsideration," we have held, "is to correct manifest</u>
<u>errors of law or fact or to present newly discovered evidence."</u> *Harsco Corp. v.*
*Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Accordingly, a judgment may be altered
or amended if the party seeking reconsideration shows at least one of the following
grounds: (1) an intervening change in the controlling law; (2) the availability of
new evidence that was not available when the court granted the motion for summary
judgment; <u>or (3) the need to correct a clear error of law or fact or to prevent manifest</u>
<u>injustice.</u> *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 678 1218
(3d Cir. 1995).[2]

<u>The general purpose of Rule 60(b) . . . is to strike a proper balance between the</u>
<u>conflicting principles that litigation must be brought to an end and that justice must be</u>
<u>done.</u>[3]

It is self-evident that the Motion For Reconsideration points to the need to correct error of law and
fact that otherwise shall result in irreparable harm to the Estate and the Shareholders. The execution
of the judgement collection action without affording the Shareholders their day in court to pursue
redress represents manifest injustice in and of itself. The considerations discussed here below
underscore the inherent injustice.

Third, per the SCOTUS and the Third Circuit:

(a) <u>As a matter of text, structure, and history, a "mistake" under Rule 60(b)(1) includes a</u>
<u>judge's errors of law.</u> When the Rule was adopted in 1938 and revised in 1946, <u>the word</u>
<u>"mistake" applied to any "misconception," "misunderstanding," or "fault in opinion or</u>
<u>judgment."</u> Webster's New International Dictionary 1383. Likewise, <u>in its legal usage,</u>
<u>"mistake" included errors "of law or fact."</u> Black's Law Dictionary 1195.

*Kemp v. United States*, 596 U.S. ___ (2022).

<u>In light of these general principles, we have adopted a flexible, pragmatic approach to</u>
<u>finality in the bankruptcy context.</u> *Century Glove, Inc. v. First Am. Bank of N.Y.* , 860
F.2d 94, 97 (3d Cir. 1988). <u>Among the factors relevant to this approach are "(1) 'the</u>
<u>impact of the matter on the assets of the bankruptcy estate,' (2) 'the preclusive effect of</u>
<u>a decision on the merits,' and (3) 'whether the interests of judicial economy will be</u>

---

[1] Underlining hereinafter indicates emphasis added to the original source.
[2] *Max's Seafood Cafe, ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669 (3d Cir. 1999).
[3] *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 271 (3d Cir. 2002).

furthered' " by an immediate appeal. *In re Marcal Paper Mills, Inc.* , 650 F.3d 311, 314 (3d Cir. 2011) (quoting *F/S Airlease II, Inc. v. Simon* , 844 F.2d 99, 104 (3d Cir. 1988)). The ultimate question, however, is whether the order "fully and finally resolved a discrete set of issues, leaving no related issues for later determination." *In re Taylor* , 913 F.2d 102, 104 (3d Cir. 1990) ; see also *Bullard*, 135 S.Ct. at 1692.

  *In re Energy Future Holdings Corp.* 904 F.3d 298 (3d Cir. 2018), at 308-309.

Questions of "error of law or fact" abound. This is the paramount reason for appellate review. Whether these arise as a result of misapprehension, misconception, misunderstanding, etc., the effect is the same: the decision is subject to review, be it final or interlocutory, and federal courts have inherent authority to review their own decisions. (*see Law v. Siegel*, 571 U.S. 415, 420–21, 134 S.Ct. 1188, 188 L.Ed.2d) 146 (2014)). Preventing manifest injustice and advancing judicial economy and efficiency warrant such reviews.

  Fourth, the Company would have everyone believe that the applicability of the substance over form doctrine is limited to tax law; as if contrivance, artifice, error and the like are tax deficiencies; not human conduct and shortcomings. In fact, it is well-settled that the SCOTUS prioritizes substance over form and proof of this is at hand: The SCOTUS issues the FRCP and the Federal Rules of Evidence (FRE), both of which prioritize substance over form. FRCP 15 stands for this proposition. And FRE 103 (Rulings on Evidence) makes it self-evident. To wit:

  (a) Preserving a Claim of Error. A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and:
      (1) if the ruling admits evidence, a party, on the record:
      (A) timely objects or moves to strike; and
      (B) states the specific ground, unless it was apparent from the context; or
      (2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.
  (b) Not Needing to Renew an Objection or Offer of Proof. Once the court rules definitively on the record — either before or at trial — a party need not renew an objection or offer of proof to preserve a claim of error for appeal.
  (c) Court's Statement About the Ruling; Directing an Offer of Proof. The court may make any statement about the character or form of the evidence, the objection made, and the ruling. The court may direct that an offer of proof be made in question-and-answer form.
  (d) Preventing the Jury from Hearing Inadmissible Evidence. To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means.
  (e) Taking Notice of Plain Error. A court may take notice of a plain error affecting a

- 6 -

<u>substantial right, even if the claim of error was not properly preserved.</u>

In fact, the substance over form doctrine has been applied with respect to, trust law ("we look to the substance rather than to the form of the relief sought" when making a determination);[4] antitrust law (ruling that the Court looks to the substance of transactions, not their form)'";[5] retirement laws (holding in issue of preemption under ERISA that form, not substance, controls")[6]; tax laws ("[t]he substance over form doctrine applies when the transaction on its face lies outside the plain intent of the statute and respecting the transaction would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose")[7]; securities laws ("in searching for the meaning and scope of the word "security" in the Act, form should be disregarded for substance and the emphasis should be on economic reality").[8] A judiciary system where justice is determined by one's skill to skew the law and the facts is self-defeating.

Finally, the Movant's purpose in the instant case is, first and foremost, to protect the interests of the Estate and thereby his own interests; not to parcel out its property. It should go without saying (but must be said here) that whatever property and interests in the U.S. that belong to the Estate must be gathered and delivered to the Chapter 15 Court to decide its distribution and advance justice on the merits. In fact, the Chapter 15 Court issued an order to that effect. (D.I. 372-373) that is bound to be made ineffectual by this Court's errors of fact and law through reliance on free-standing, self-exonerating assertions that do not meet the minimum predicate evidence required by law and equity and the interest of justice.

Turning to the free-standing and deflecting arguments,  putting forward and giving deference to a legal argument devoid of substantive proof and review is tantamount to covering the sun with a finger. To wit:

1.  **The Company Represents Adequately The Shareholders' Interests And Their Interest In**

---

[4] *See, e.g., Papasan v. Allain,* 478 U.S. 265 (1986).
[5] *See, e.g., Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 191 (2010).
[6] *See, e.g., Aetna Health Inc. v. Davila*, 542 U.S. 200, 214- 15 (2004).
[7] *See, e.g., Gregory v. Helvering*, 293 U.S. 465, 469-470 (1935).
[8] *See, e.g., Frank Lyon Co. v. United States*, 435 U.S. 561,572-73 (1978).

**Maximizing Recovery For Crystallex On Its Judgment Are Perfectly Aligned.**

These statements beg questions such as: a) Says who? b) where and what is the substantive evidence that supports this conclusion? c) Whose findings of fact and reasons makes this conclusion true? There is no shortage of free-standing conclusions like this in the case at hand. Thus, we have:

- "Crystallex adequately represents Mr. Adrianza's interests."

- "Mr. Adrianza still lacks a sufficient interest in this litigation."

- "Crystallex's dogged pursuit of Venezuela's assets in this case and other actions speaks for … itself."

- "Crystallex continues to make every effort to satisfy its judgment against Venezuela for the benefit of its estate and its shareholders."

In the Opposition, the Company cited "[t]he most important factor in determining adequacy of representation is how the interest of the absentee compares with the interest of the present parties." One cannot help but wonder what yardstick is being used to compare the interests of the self-interested BOD/DIP, who control the Company de facto and de jure, and the Shareholders; and if it exists at all. Nothing in the case records validates the premise the citation is supposed to prove. The Company has yet to produce its own, let alone independent, evidence in support of its much heralded adequate representation contention. In fact, the evidence in the case records point to the contrary conclusion in each instance of the Company's self-vindication. The lack of probative evidence on the Company's behalf is not for lack of efforts by the Movant. Exhibit I hereto is but the latest example. And this is the case notwithstanding that the FRE "should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination." (FRE 102).

**2. The District Court Has No Authority Over The Estate; Authority To Allocate Crystallex's Assets Lies Solely With The Bankruptcy Court.**

These assertions epitomize the cart before the horse adage. As the case record indicates (D.I.

- 8 -

556), the Chapter 15 Court issued a decision (D.I. 372-373) that granted the Movant and the Shareholders relief under 11 U.S. Code § 1522 (Protection Of Creditors And Other Interested Persons). In the order, the Court set limitations on the use and disposition of the Company's NAP, as follows:

> 5. The proceeds of the sale of the PDVH Stock recovered by Crystallex in *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, Case No. 17-151-LPS pending in the United States District Court for the District of Delaware shall not be transferred out of the United States without permission from this Court.
> 6. <u>No further transfer/ disposition of Net Arbitration Proceeds can be made without the permission of this Court.</u>
> 8. The Foreign Representative shall serve a copy of the Memorandum and this Order on the Monitor in the CCAA Proceedings and Robert B. Pincus, Esquire, Special Master in the Delaware District Court case and file a certificate of service on the docket of this case evidencing the same.

With its decision, the Court pursued to maintain the status quo until it has in *rem* jurisdiction.

Standing under Article III of the Constitution has a case or controversy requirement, which has yet to be met in the Chapter 15 proceeding. Per Rule C of the FRCP:

> (5) **Ancillary Process.** In any action in rem in which process has been served as provided by this rule, if any part of the property that is the subject of the action has not been brought within the control of the court because it has been removed or sold, or because it is intangible property in the hands of a person who has not been served with process, the court may, on motion, order any person having possession or control of such property or its proceeds to show cause why it should not be delivered into the custody of the marshal or other person or organization having a warrant for the arrest of the property, or paid into court to abide the judgment; and, after hearing, the court may enter such judgment as law and justice may require.

In summary, the Chapter 15 Court:

i. Has no in *rem* jurisdiction over the property, <u>yet</u>;

ii. Has issued a stay order that prohibits "further transfer/ disposition of Net Arbitration Proceeds;"

iii. Shall have the authority and has already determined that "at least two issues may be appropriate to address once proceeds from the sale of the PDVH Stock are available." (D.I. 372-373).

The foregoing has important implications:

a) Any disposition of the arbitration proceeds without the Chapter 15 Court's approval is a

violation of the bankruptcy stay. The abandonment of Estate property such as post-award interest at the arbitration award and/or the Amended Settlement agreement, restitution for cost, expenses, and damages (e.g., the US$ 320 million valueless Venezuelan bonds) represent violation of the bankruptcy stay.

      b) The judgement collection proceeding case is a non-core, related-to parallel proceeding to the Chapter 15 proceeding, given that "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and [if the outcome] in any way impacts upon the handling and administration of the bankrupt estate."[9]

      Ergo, the execution of the judgement collection action without protecting the Estate property undermines the Bankruptcy Code. And not affording the Shareholders their day in court or otherwise preserving the right to seek redress to irreparable harm represents in and of itself manifest injustice. This gives the Shareholders the "irreducible constitutional minimum" standing under *Lujan v. Defenders of Wildlife* (90-1424), 504, U.S. 555 (1992) and *Czyzewski v. Jevic Holding Corp.* 137 S. Ct. 973, 978 (2017). In addition, foreclosing the Shareholders' right to seek redress requires, at a minimum, substantive grounds. Form alone does not meet the FRE requirements.

### 3. The Court Did Not Base Its Decision On Incorrect Legal Standard And Overlook Controlling Precedent.

      In the Motion, the Movant asserted and elaborated the reasons for reconsideration: the Court (i) obviated facts and substantive matters and in so doing elevated form over substance, (ii) overlooked controlling precedent regarding intervention, Shareholders' rights and standing that allowed the Court to approve the relief requested and (iii) disregarded evidentiary facts that point to the Company not adequately representing the Shareholders because of the BOD/DIP's conflicting interests. Free-standing and self-vindicating statements per se do not represent facts or substantiate a claim or decision. The preponderance of evidence standard requires, alas, evidence; and the "worst" evidence

---

[9] *Vertiv, Inc. v. Wayne Burt PTE Ltd.*, Civil Action 20-363 (FLW) (D.N.J. Jul. 23, 2021). Citing *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 294 (3d Cir. 2012).

is somebody's own testimony. Thus, fact-finding is not a menial endeavor; and judging, by definition, is not an exact science. Presumption is no substitute for substantive evidence at hand. Evidence and fact-finding do not exist in a vacuum. Whether or not evidence is relevant is governed by rules such as Rule 401 of the FRE, which states that evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. The consequences here are irreparable harm to the Estate and the Shareholders and manifest injustice.

**4. The Motion Is An Improper Substitute For An Appeal.**

Federal courts have inherent authority to review their own decisions (*Law v. Siegel*, 571 U.S. 415, 420–21, 134 S.Ct. 1188, 188 L.Ed.2d) 146 (2014). The overarching goal of the FRCP is "to secure the just, speedy, and inexpensive determination of every action and proceeding" (FRCP 1). There is an element of unfairness about seeking to reverse a judgment on a point not called to the attention of the court, and on which the court was not given an opportunity to rule or correct the asserted error. In addition, the preservation requirement affords the opposing party an opportunity to make a necessary factual showing or take available legal counter steps. The Court has the power to review questions of law and fact (FRCP 26), as well as questions involving the exercise of judicial discretion. It has inherent power to consider a point raised on appeal in the interest of justice. FRCP 33 and 36 permit discovery calling for opinions, contentions, and admissions relating not only to fact but also to the application of law to fact. And FRCP 52 is there for a reason: it plays a crucial role in the adjudication process by detailing how judges should articulate the basis for their decisions. In contrast, the Court of Appeals has no equivalent interest of justice jurisdiction. The scope of its review is limited to questions of law only. Ergo, "[w]hen reviewing discretionary determinations affecting substantive rights of a party, we should argue that the former standard is correct; the latter view of the court's role in reviewing "discretionary" decisions is appropriate only in merely procedural decisions. Review of substantive decisions requires that appellate courts apply "not a rule of perfunctory appellate review

but one of careful scrutiny. the standard of appellate review must not be reduced to the largely meaningless ritual of the typical abuse of discretion standard."[10]

## CONCLUSION

All told, the Court's decision to deny the relief requested fell short of the mark required by procedural and substantive due process and thereby inflicted irreparable harm on the Estate and the Shareholders through errors of law and fact. The irreparable harm visited upon the Estate and the Shareholders represents manifest injustice. Further, that the Company has bent over backwards to avoid substantive review at all costs should not surprise anyone, given the attendant dire consequences to the self-interested BOD/DIP. By implication,  the Company has conceded for years on end that it does not represent the Shareholders' interest adequately by avoiding all and any substantive proof and yardsticks. As aptly put by justice Sotomayor in a recent SCOTUS ruling, "[w]hen I see a bird that walks like a duck, swims like a duck, and quacks like a duck, I call that bird a duck."[11] A party's reliance on form over substance in a court of law is arguably permissible within the limits set forth by the duty of candor to the court and legal counsel's professional conduct rules. But form over substance is anathema to the pursuit of justice: the active process of remedying or preventing...injustice.

For the reasons set forth above, the Court should deny the Opposition.

June 17, 2024
Watertown, Massachusetts.

*Adelso Adrianza*

Adelso A. Adrianza
4 Repton Cir. Unit 4210
Watertown, MA. 02472
aaadrianza@gmail.com
(859) 803-2279

---

[10] *See, Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802 (4th Cir. 1991),
[11] *Garland v. Cargill,* 602 U.S. ___ (2024),

- 12 -

## CERTIFICATE OF SERVICE

I, Adelso Adrianza, hereby certify that on this 17th day of June 2024 I caused copies of the Reply To Crystallex International Corporation's Opposition To The Motion For Reconsideration to be served on the parties listed below by courier or otherwise indicated:

| | |
|---|---|
| Mr. Travis S. Hunter, Esq.<br>Richards, Layton & Finger, PA<br>920 N King Street<br>Wilmington, DE 19801<br><br>*Attorneys for Plaintiff*<br>*Crystallex International Corporation* | Mr. Myron T. Steele<br>Potter Anderson & Corroon, LLP<br>Hercules Plaza<br>1313 North Market Street, 6th Floor<br>Wilmington, Delaware 19801<br><br>*Attorneys for the Special Master*<br>*Robert B. Pincus, Esq.* |

*Adelso Adrianza*
Adelso A. Adrianza

- 13 -

## EXHIBIT I

**Adelso Adrianza's Letter to Legal Counsel Dated May 25th, 2024.**

**ADELSO A. ADRIANZA**

4 Repton Cir. Unit 4210 – Watertown, MA 02472 – U.S.A.
M: (859) 803-2279 | aaadrianza@gmail.com

May 25, 2024

**VIA EMAIL**

Mr. Raymond J. DiCamillo, Esq.
Richards, Layton & Finger, PA
(dicamillo@rlf.com).

Dear Counsel,

In your opposition to a recent motion in Judge Stark's court by the undersigned requesting protection for the shareholders' rights and interests, you represented for a second time that Crystallex (the Company) is pursuing maximum value of the recovery against Venezuela and, therefore, has the same goal as the shareholders. (D.I. 414 and 1073). You are well-aware of my concerns that the execution of the collection judgment being considered by Judge Stark in favor of the Company fails to take into consideration the following issues:

    A.  The collection of the proper post-judgment interest due;
    B.  The recovery of the legal expenses and costs under the breached Amended Settlement Agreement;
    C.  The recovery of mining data value;
    D.  The illiquid $320 million bond valuation and collection.

Besides the matters in front of Judge Stark's Court, you are or should be well-aware of other issues raised at the Delaware Bankruptcy Court that contradict the adequate representation contention. Namely, to name a few:

    A.  The distribution of the estate property by means of a structured dismissal / sub-rosa plan, which is a well-settled infringement of the Bankruptcy Code;
    B.  The distribution of 90% the tax loss carryforward benefits to the DIP Lender in contravention of the applicable U.S. and Canadian laws and tax treaty,
    C.  The 20% p.a. post-filing interest payment to the unsecured lenders in breach of the applicable U.S. and Canadian laws;
    D.  The unreported estate property such as the tax loss carryforward benefits and the mining data, which is a crime under the Bankruptcy Code;
    E.  The waste and misuse of property to benefit the creditors at the expense of the estate and the shareholders as residual owners of the estate; which represents a fraudulent transfer under the insolvency statutes,
    F.  The abandonment of the restraining order on the Nomura notes, whereby the DIP/BOD passed up the opportunity to collect $700 million (more than enough to exit bankruptcy as a solvent debtor with the means to pursue the collection of the remaining $700 million), which represents a breach of the DIP/BOD's fiduciary duties;

In regard to the matters listed above pertinent to the case in front of judge Stark, I am writing to you to ask whether:

1. The issues in connection with the award collection were presented to the Special Master and how were these disposed?
2. The Special Master made any determinations in writing that you can provide to the undersigned and/or the District Court and the Bankruptcy Court?
3. All of these issues were presented and accepted by the Special Master?

and:

4. What was / is Crystallex's position on these issues?

Your contention on behalf of your client that it adequately represents the shareholders' rights and interests, and that the maximization of recovery is a shared objective begs the aforementioned questions. The relevance of these questions will be front and center in the disposition of, at least, the Bankruptcy Court case.

Thank you for your prompt attention to this inquiry.

Respectfully,

Adelso A. Adrianza

cc: Mr. Matthew B. Lunn, Richards, Layton & Finger, P.A. (mlunn@ycst.com).
    Mr. Brian Denega, CCAA Court Monitor, E&Y Canada. (brian.denega@parthenon.ey.com).
    Ms. Natalie Renner, Davies Ward Phillips & Vineberg LLP. (nrenner@dwpv.com).
    Mr. Myron T. Steele, Potter Anderson & Corroon, LLP (msteele@potteranderson.com)