**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      Misc. No. 17-151-LPS |
| | ) |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | ) |
| | ) |
| Defendant. | ) |

-------------------------------------------------------------

**SPECIAL MASTER'S OPENING BRIEF IN SUPPORT OF HIS MOTION TO ENJOIN
THE ALTER EGO CLAIMANTS FROM ENFORCING CLAIMS AGAINST THE
REPUBLIC OR PDVSA BY RECOVERING FROM PDVH OR ITS SUBSIDIARIES IN
<u>OTHER FORUMS</u>**

OF COUNSEL:

Ray C. Schrock (Admitted *pro hac vice*)
David Lender (Admitted *pro hac vice*)
Alexander W. Welch (Admitted *pro hac vice*)
Chase A. Bentley (Admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray.Schrock@weil.com
David.Lender@weil.com
Alexander.Welch@weil.com
Chase.Bentley@weil.com

Dated: September 9, 2024
11714822 / 21202.00001

Myron T. Steele (#00002)
Matthew F. Davis (#4696)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
msteele@potteranderson.com
mdavis@potteranderson.com
bpalapura@potteranderson.com

*Counsel for Special Master Robert B. Pincus*

## <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND ..................................................................................................4

      A.    Girard Street ................................................................................. 7

      B.    G&A Strategic ................................................................................. 7

      C.    Gramercy ....................................................................................... 8

ARGUMENT ..........................................................................................................................10

II.    The Alter Ego Claimants' Efforts to Collect from PDVH and Its Subsidiaries Should Be Enjoined Pursuant to the All Writs Act........................................................... 11

III.   An Injunction Is Additionally Authorized Under the First-Filed Rule............................. 15

IV.   The Princess Lida Doctrine Provides Further Support for an Injunction. ........................ 18

CONCLUSION.......................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Berger v. Zeghibe*,
 666 F. App'x 119 (3d Cir. 2016) .....................................................................12, 14

*Catalytic, Inc. v. Monmouth & Ocean Cnty. Bldg. Trades Council*,
 829 F.2d 430 (3d Cir. 1987)...................................................................................12

*Chapman v. Deutsche Bank Nat'l Tr. Co.*,
 651 F.3d 1039 (9th Cir. 2011) ...............................................................................19

*In re Checking Acct. Overdraft Litig.*,
 859 F. Supp. 2d 1313 (S.D. Fla. 2012) ..................................................................16

*Cottingham v. Tutor Perini Bldg. Corp.*,
 2016 WL 54916 (E.D. Pa. Jan. 5, 2016) ................................................................14

*Dailey v. Nat'l Hockey League*,
 987 F.2d 172 (3d Cir. 1993)................................................................................3, 19

*DM Trans, LLC v. Scott*,
 38 F.4th 608 (7th Cir. 2022) ..................................................................................15

*Dyno v. Dyno*,
 2021 WL 3508252 (3d Cir. Aug. 10, 2021)...........................................................19

*EEOC v. Univ. of Pa.*,
 850 F.2d 969 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990) .............................3, 16, 18

*Futurewei Techs., Inc. v. Acacia RSCH. Corp.*,
 737 F.3d 704 (Fed. Cir. 2013)................................................................................16

*G&A Strategic Invs. I LLC v. PDV Holding, Inc.*,
 2024-36664 (D. Ct. Tex. June 10, 2024) .................................................................8

*G&A Strategic Invs. I LLC v. PDV Holding, Inc.*,
 Civ. Action No. 4:24-cv-02774 (S.D. Tex.) .............................................................8

*Girard St. Inv. Holdings LLC v. PDV Holding, Inc.*,
 No. 24-cv-4448 (S.D.N.Y. June 10, 2024), D.I. 1 .............................................7, 20

*Glenmede Tr. Co. v. Dow Chem. Co.*,
 384 F. Supp. 423 (E.D. Pa. 1974) ..........................................................................19

*Golden v. Stein*,
  2020 WL 6483876 (S.D. Iowa Aug. 7, 2020) ..................................................................17

*Gramercy Distressed Opportunity Fund, LLC v. PDV Holding, Inc.*,
  2024-47814 (D. Ct. Tex. July 29, 2024) .........................................................................9

*Gramercy Distressed Opportunity Fund, LLC v. PDV Holding, Inc.*,
  No. 4:24-cv-02981 (S.D. Tex.) .........................................................................................9

*Klay v. United Healthgroup, Inc.*,
  376 F.3d 1092 (11th Cir. 2004) .....................................................................................14

*Estate of Levin v. Wells Fargo Bank, N.A.*,
  2023 WL 3750577 (D.D.C. June 1, 2023), *appeal filed*, No. 23-7080 (D.C.
  Cir. June 23, 2023) ..........................................................................................................19

*Marxe v. Jackson*,
  833 F.2d 1121 (3d Cir. 1987) .........................................................................................14

*N. Cal. Power Agency v. Grace Geothermal Corp.*,
  469 U.S. 1306 (1984) .......................................................................................................15

*Pagliaro, Inc. v. Zimbo*,
  1987 WL 10275 (Del. Super. Ct. Apr. 16, 1987) ...........................................................19

*Phillips Beverage Co. v. Belvedere, S.A.*,
  204 F.3d 805 (8th Cir. 2000) ......................................................................................3, 13

*Princess Lida of Thurn & Taxis v. Thompson*,
  305 U.S. 456 (1939) ................................................................................................ *passim*

*SEC v. Alpine Sec. Corp.*,
  2018 WL 3377152 (S.D.N.Y. July 11, 2018), *aff'd*, 768 F. App'x 93 (2d Cir.
  2019) .................................................................................................................................16

*SEC v. Alpine Sec. Corp.*,
  768 F. App'x 93 (2d Cir. 2019) ......................................................................................16

*State Farm Mut. Auto. Ins. Co. v. Am. Rehab & Physical Therapy, Inc.*,
  376 F. App'x 182 (3rd Cir. 2010) ..................................................................................15

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) .........................................................................................................16

*Therapy Stores, Inc. v. JGV Apparel Grp., LLC*,
  2016 WL 4492583 (N.D. Cal. Aug. 26, 2016) ...............................................................16

*Time Warner Cable, Inc. v. GPNE Corp.*,
    497 F. Supp. 2d 584 (D. Del. 2007)........................................................................16

*United States v. Int'l Bhd. of Teamsters*,
    728 F. Supp. 1032 (S.D.N.Y.), *aff'd*, 907 F.2d 277 (2d Cir. 1990) ..........................12

*United States v. N.Y. Tel. Co.*,
    434 U.S. 159 (1977)..............................................................................................3, 12, 13

*United States v. Van Cauwenberghe*,
    934 F.2d 1048 (9th Cir. 1991) ...............................................................................19

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)....................................................................................................14

**Statutes**

28 U.S.C. § 1651............................................................................................................3

28 U.S.C. § 1651(a) ......................................................................................................12

All Writs Act................................................................................................... *passim*

**Other Authorities**

Local Rule 7.1.1..............................................................................................................9

Robert B. Pincus, in his capacity as special master (the "**Special Master**") in the above-captioned case, respectfully submits this brief in support of his motion to enjoin Gramercy Distressed Opportunity Fund LLC ("**Gramercy**"), G&A Strategic,[1] and Girard Street Investment Holdings, LLC ("**Girard Street**") (together, the "**Alter Ego Claimants**") from seeking to enforce judgments against PDVSA or the Republic by recovering from PDVH, its subsidiaries, or their assets in lawsuits in New York and Texas (the "**Alter Ego Actions**"), and granting any other relief the Court deems appropriate to prevent further attempts to circumvent this Court's proceedings.[2]

## PRELIMINARY STATEMENT

Certain judgment creditors are seeking to circumvent this Court's sale process—notwithstanding their previous participation in that process—by bringing last-minute lawsuits in other forums designed to assert control over the asset in the Court's control and jump the line set by this Court's priority scheme. These lawsuits seek to take possession of PDVH's assets and secure a different recovery on claims against PDVSA or the Republic than these creditors would be entitled to through the Court's sale process and priority scheme. The lawsuits are a blatant effort to reach the res that is within the Court's jurisdiction and circumvent this Court's sale process, risking substantial harm to the creditors of the Republic or PDVSA that have respected this Court's orders. These efforts must be stopped.

Specifically, the Alter Ego Claimants seek to hold PDVH liable for judgments against PDVSA or the Republic on an alter ego theory in order to seek recovery directly from PDVH's

---

[1] G&A Strategic Investments I LLC, G&A Strategic Investments II LLC, G&A Strategic Investments III LLC, G&A Strategic Investments IV LLC, G&A Strategic Investments V LLC, G&A Strategic Investments VI LLC, and G&A Strategic Investments VII LLC (collectively, "**G&A Strategic**").

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Procedures Order, D.I. 481 (the "**Sale Procedures Order**") or the July 27 Order, D.I. 646.

primary asset—the shares of CITGO Holding, which are the assets bidders are ultimately seeking to acquire by bidding on the PDVH Shares. This threatens to undermine the sale process to the detriment of creditors who followed the Court's process and shows a blatant disregard for the orders of this Court. If successful, the Alter Ego Claimants will dramatically reduce the value of the PDVH Shares available to other creditors for their sole benefit. The lawsuits thus create a cloud of uncertainty over the PDVH Shares and thereby threaten to inhibit the Special Master's ability to close a value-maximizing sale transaction and fulfill his mandate, since bidders are reasonably concerned about the risk that creditors will later lay claim to the assets the bidders are seeking to purchase. Indeed, if the Alter Ego Claimants are successful, there is nothing stopping any other creditor from bringing similar claims and potentially rendering this Court's sale process meaningless by seizing PDVH's primary asset and rendering the PDVH Shares valueless.

Since his appointment, the Special Master has engaged in a years' long process to secure a value-maximizing sale of PDVSA's shares of PDVH, the parent company of CITGO, for the benefit of the holders of Attached Judgments. This Court-ordered sale process is designed to find the best or highest offer to satisfy as many of the claims of the judgment creditors against PDVSA and the Republic as the value obtained from the sale of the PDVH Shares allows, in accordance with the Court's carefully designed priority scheme—*a process that included participation by the offending creditors themselves*. Allowing unhappy creditors to go elsewhere to try to jump the line by raising collateral challenges to this Court's priority scheme at the eleventh hour, like the Alter Ego Claimants are seeking to do, undermines this process. The Court should enjoin the Alter Ego Claimants from pursuing recoveries from PDVH or its assets in those actions to protect this Court's sale process from these creditors' improper interference.

The All Writs Act empowers this Court to issue "all writs necessary or appropriate in aid of [its] jurisdiction[]."  28 U.S.C. § 1651.  The Supreme Court has "repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained."  *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977). Courts have accordingly applied the Act in situations like this one, to enjoin a party who first appears and unsuccessfully seeks relief in one court only to later attempt to circumvent that ruling elsewhere.  *See, e.g.*, *Phillips Beverage Co. v. Belvedere, S.A.*, 204 F.3d 805, 806 (8th Cir. 2000). An injunction here is thus necessary to avoid irreparable harm to creditors and bidders who followed this Court's sale process, and the equities and public interest overwhelmingly favor protecting that process from interference by the Alter Ego Claimants.

The first-filed rule and "*Princess Lida*" doctrine further support an injunction.  The first-filed rule reflects the fundamental principle that "the court which first has possession of [a] subject must decide it," and gives the Court power to enjoin subsequent duplicative actions involving the same subject matter.  *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (citation omitted), *aff'd*, 493 U.S. 182 (1990).  Here, this Court—and only this Court—should determine how the value of PDVH and its subsidiaries is distributed to PDVSA's and the Republic's creditors, free from collateral challenges to this Court's priority scheme.  Moreover, under the *Princess Lida* doctrine (also known as the doctrine of prior exclusive jurisdiction), other courts lack jurisdiction and authority to issue orders impacting the property already under this Court's jurisdiction and custody.  *See Dailey v. Nat'l Hockey League*, 987 F.2d 172, 175 (3d Cir. 1993).  If the Alter Ego Claimants are correct on the merits, then PDVH's assets are the same as PDVSA's assets, meaning that all of PDVH's assets (including the CITGO Holding shares) are already under this Court's

jurisdiction. Allowing the Alter Ego Claimants to disregard the separate existence of PDVH and collect from PDVH's assets would undermine this Court's jurisdiction over the PDVH Shares, effectively hollowing out the PDVH Shares and rendering this Court's sale process meaningless.

The Special Master thus requests that the Court enjoin Gramercy, G&A Strategic, and Girard Street from seeking to enforce judgments against PDVSA or the Republic by collecting from PDVH and its subsidiaries.  To be clear, the Special Master is not seeking to enjoin the Alter Ego Claimants or any other parties from attempting to collect from assets of the Republic or PDVSA other than PDVH and its subsidiaries.  *See, e.g.*, D.I. 963 at 6 n.7 ("If [creditors] fail to collect on their judgments as part of the ongoing sale process, they will remain free to pursue other collection efforts.").

## FACTUAL BACKGROUND

The Special Master is tasked with designing and running a process to sell the PDVH Shares—assets of PDVSA—to satisfy the judgments of dozens of creditors.  The Special Master is selling the shares of PDVH, the U.S.-based, wholly-owned subsidiary of PDVSA.  PDVH itself is a holding company that in turn owns 100% of the shares of CITGO Holding, which in turn owns 100% of the shares of CITGO Petroleum (collectively with CITGO Holding, "**CITGO**").  Declaration of Raymond B. Strong III ¶ 4 ("**Strong Decl.**").  Thus, while the Special Master is selling the PDVH Shares, it is PDVH's ultimate interest in CITGO's operations that represents the value bidders are interested in acquiring as part of this Court's sale process.  *Id.*  Bidders are expecting to purchase those shares free and clear of claims or encumbrances from judgment creditors of PDVSA, and the prices they are willing to pay for the PDVH Shares rely on that understanding.  *Id.* ¶¶ 4-5.  The Alter Ego Actions have created doubt about that critical premise and thus threaten the Special Master's ability to achieve a value-maximizing price. *Id.* ¶ 6.

4

The Special Master, under the supervision of this Court, has worked with judgment creditors, the Venezuela Parties, and other interested entities for years to design and effectuate a sale process and priority scheme to compensate judgment creditors for debts owed by PDVSA and the Republic.  In doing so, the Court has established detailed Sale Procedures, outlined in the Sale Procedures Order, and put in place a series of steps judgment creditors must complete to participate in the sale process.  *See*, *e.g.*, D.I. 646; D.I. 738.  The Court has also put in place a detailed priority scheme among judgment creditors that "rewards diligence and attempts to recreate a 'first in time, first in line' scheme, with appreciation for the perhaps unique factors that have arisen in connection with efforts to collect on Venezuela's debts."  D.I. 646 at 20; *see* D.I. 1102 (setting final order of priority among judgment creditors).

In tandem, the Special Master has engaged in robust discussions with potential bidders and with CITGO for months.  Strong Decl. ¶ 5.  As part of that process, potential bidders signed non-disclosure agreements with CITGO and the Special Master, were granted access to CITGO's virtual data room, and examined detailed financial information belonging to CITGO.  *Id.*  They made bids to the Special Master in reliance on their assessment of PDVH's and CITGO's value and the understanding that the successful bidder will obtain the PDVH Shares free and clear of claims and encumbrances from PDVSA's and the Republic's judgment creditors.  *Id.*

Creditors who were displeased about any aspect of the Court's sale process or its orders pertaining to priority or status as Additional Judgment Creditors have had every opportunity to object in this Court and, if necessary, on appeal to the Third Circuit.  Indeed, the docket contains numerous filings containing input from interested parties, a testament to the many opportunities judgment creditors had to make their interests heard.  *E.g.*, D.I.s 264; 293; 559; 646; 693; 1000.  And numerous creditors and parties to these proceedings have pursued appeals seeking to alter

orders this Court issued as part of this process. *See*, *e.g.*, D.I. 1235 (notice of appeal of Ivan Freites); D.I. 980 (motion for stay pending appeal by Devengoechea); D.I. 540 (Venezuela Parties' motion to stay pending resolution of mandamus petition); D.I. 508 (appeal by Red Tree). Gramercy itself unsuccessfully sought reconsideration of the Court's order setting forth the priority scheme for Attached Judgments—another failed attempt at reshuffling the deck.  Gramercy filed a motion requesting an order "affording equal priority status to all creditors who filed and obtained motions for a writ of attachment . . . during the 2023 calendar year." D.I. 893 at 1-2.  The Court denied Gramercy's motion, *see* D.I. 963, and Gramercy declined to pursue an appeal or further pursue its objection in this Court.  Instead, Gramercy filed a new lawsuit to attempt to improve the priority of its claims against PDVH's assets elsewhere.

The Alter Ego Claimants are all creditors of PDVSA or the Republic who appeared in this Court to assert their claims.  Despite their participation in this Court's process, the Alter Ego Claimants have now filed actions in other forums seeking to circumvent the Court's process and jump the line ahead of the other creditors who participated in the sale process.  Their actions seek a declaration that PDVH is the alter ego of PDVSA, and ultimately seek to attach the shares of CITGO Holding to enforce their judgments.  As a result, potential bidders are now faced with the risk that the underlying assets they are purchasing would be encumbered by the Alter Ego Claimants' claims, which is contrary to the entire sale process and bidders' expectations.  Strong Decl. ¶ 6.  Since the recent filing of the Alter Ego Actions, bidders have expressed concern about the risk of the Alter Ego Claimants and other creditors circumventing this Court's process by seeking relief in other courts.  *Id.*  These concerns pose a threat to the Special Master's ability to advance the Sale Transaction with a willing bidder and maximize the price of the PDVH Shares. *Id.*

### A.    Girard Street

On August 14, 2023, Girard Street submitted an Attached Judgment Statement describing the failure of Venezuela to make payments on a Note Agreement dating to June 2016.  *See* D.I. 672.  On March 8, 2024, Girard Street informed the Court that it had completed Step 2 by obtaining an order granting a default judgment in its favor.  *See* D.I. 1038.  Girard Street made no allegations, in its Attached Judgment Statement or in the underlying action, of alter ego liability on the part of PDVH.

Despite its participation in this Court's process, Girard Street filed a complaint against PDVH in the Southern District of New York on June 10, 2024.  *See* Compl., *Girard St. Inv. Holdings LLC v. PDV Holding*, *Inc.*, No. 24-cv-4448 (S.D.N.Y. June 10, 2024), D.I. 1 ("**Girard St. Compl.**").  The complaint concerns the same default judgment against PDVSA that Girard Street earlier sought to have satisfied in this Court's sale process.  *See* D.I.s 672; 760; 1038.  Girard Street seeks a declaratory judgment that PDVH is the alter ego of PDVSA and a turnover order that would bring the CITGO Holding shares within the jurisdiction of the Southern District of New York.  Girard Street asserts that it "is entitled to possession of PDVH's shares of Citgo Holding, to the extent of the money damages awarded in the Default Judgment, plus interest thereon."  Girard St. Compl. ¶ 149.  Girard Street thus seeks to bypass this Court's sale process and priority order, D.I. 1102, and recover directly from PDVH's underlying assets on account of its claim against PDVSA, rather than abide by this Court's priority waterfall.

### B.    G&A Strategic

On August 14, 2023, G&A Strategic, an entity related to Girard Street, submitted an Attached Judgment Statement, asserting breach of a Note Agreement dating to May 2017.  D.I. 675.  On March 8, 2024, G&A Strategic filed a statement informing the Court that it had completed

Step 2.  *See* D.I. 1039.  G&A Strategic made no allegations, in its Attached Judgment Statement or in the underlying action, of alter ego liability on the part of PDVH.

On June 10, 2024, G&A Strategic filed an action in a state district court in Harris County, Texas seeking similar relief to the relief sought by Girard Street in the Southern District of New York.  *See* Original Petition, *G&A Strategic Invs. I LLC v. PDV Holding, Inc.,* 2024-36664 (D. Ct. Tex. June 10, 2024), D.I. 1 ("**G&A Strategic Pet.**").  The G&A Strategic action concerns the same default judgment that G&A Strategic earlier sought to have satisfied in this Court's sale process. *See* D.I.s 675; 759; 1039.  G&A Strategic seeks a declaratory judgment that PDVH is the alter ego of PDVSA and is jointly and severally liable for the judgment entered against PDVSA, and an order entering judgment against PDVH and enforcing the default judgment against PDVH.  G&A Strategic Pet. at 28-29.  If G&A Strategic's attempt to enforce the default judgment against PDVH succeeds, G&A Strategic could then seek to attach the shares of CITGO Holding to satisfy this judgment—again, the same underlying asset that the bidders are seeking to purchase in this sale process.  Just like Girard Street, G&A Strategic thus seeks to circumvent this Court's process and secure an alternative recovery directly from the assets underlying PDVH that would deplete the very assets at the heart of this Court's sale process.  On July 25, 2024, PDVH and intervening defendant PDVSA removed the action from state court to the Southern District of Texas.  *See G&A Strategic Invs. I LLC v. PDV Holding, Inc.*, Civ. Action No. 4:24-cv-02774 (S.D. Tex.).

## C.    Gramercy

On August 14, 2023, Gramercy, the parent entity of both Girard Street and G&A Strategic, submitted an Attached Judgment Statement in these proceedings, describing two judgments issued in its favor against Venezuela by the U.S. District Court for the District of Columbia.  *See* D.I. 656.  On November 6, 2023, Gramercy submitted a statement asserting that it had completed Step

5, after being granted a writ of attachment on November 1, 2023.  *See* D.I. 783.  Gramercy was subsequently named an Additional Judgment Creditor.  *See* D.I. 969-1.  Gramercy then had its writ delivered by the U.S. Marshal and is sixteenth in priority.  *See* D.I.s 1055; 1090; 1102; 1118.  Gramercy made no allegations, in its Attached Judgment Statement or in the underlying action, with respect to its claim that PDVH is the alter ego of PDVSA.

On July 29, 2024—more than eight months after completing all steps to become an Additional Judgment Creditor—Gramercy filed a third near-identical suit, also in state district court in Harris County, Texas.  *See* Original Petition, *Gramercy Distressed Opportunity Fund, LLC v. PDV Holding, Inc.*, 2024-47814 (D. Ct. Tex. July 29, 2024), D.I. 1 ("**Gramercy Pet.**").  Gramercy seeks a declaratory judgment that PDVH is the alter ego of PDVSA and that, as an alter ego of PDVSA, PDVH is liable to Gramercy for the full amount of the judgments.  Gramercy Pet. ¶¶ 94-101.  Gramercy also seeks to enforce judgments against PDVH and a corresponding money judgment against PDVH in the amount of the judgments plus interest.  *Id.* ¶¶ 102-06.  If Gramercy's efforts in that action succeed, Gramercy could then seek to attach the shares of CITGO Holding—similarly circumventing this Court's orders—to secure a recovery from PDVH for its claims against PDVSA that is different from the recovery Gramercy would receive in this Court's sale process, and that would diminish the value of the assets the Special Master is selling.  On August 9, 2024, PDVH removed the case to the Southern District of Texas.  *See Gramercy Distressed Opportunity Fund, LLC v. PDV Holding, Inc*., No. 4:24-cv-02981 (S.D. Tex.).

All three Alter Ego Claimants are thus pursuing actions in other district courts designed to secure a greater recovery from PDVH and its assets than they would receive through this Court's sale process and priority scheme.  Pursuant to Local Rule 7.1.1, the Special Master has conferred

with the Venezuela Parties and the Alter Ego Claimants.  The Venezuela Parties take no position on the motion and the Alter Ego Claimants oppose the motion.

## ARGUMENT

The Alter Ego Claimants' efforts to enforce judgments against PDVSA or the Republic by collecting from PDVH and its subsidiaries in foreign forums are a blatant attempt to circumvent this Court's Priority Order and interfere with the sale process at the expense of all other interested parties.  The Alter Ego Claimants first appeared and sought to have their judgments satisfied in this Court.  Yet these creditors, apparently dissatisfied with their place in line, now seek recovery against PDVH's assets in other forums.  If the Alter Ego Claimants are successful, then the PDVH Shares, which represent the equity in a company that the Alter Ego Claimants now argue has no independent existence, are effectively a nullity, and the auction the Special Master is conducting on behalf of this Court would become a sham.  The practical result of the Alter Ego Actions has been to create grave uncertainty for bidders as to whether the assets underlying the entity they seek to acquire, whose shares are currently under this Court's jurisdiction and custody, could be diminished by the Alter Ego Claimants' judgments, totaling over $2.4 billion, as well as any copycat actions that may be filed by other creditors who are low in the Court's priority order or who did not register their judgments in time to be a part of the priority order.  *See* Strong. Decl. ¶ 6.  That possibility is already interfering with the sale process and the Special Master's ability to effectively execute a sale transaction.  *See id.*

Indeed, there is no conceivable purpose for these creditors to seek recovery from PDVH and its subsidiaries in other courts other than to circumvent this Court's orders, specifically its determination as to priority.  Like all other judgment creditors, the Alter Ego Claimants, if dissatisfied with this Court's orders, had every opportunity to object in this Court (as Gramercy

did) and, if necessary, on appeal to the Third Circuit.  If they had any legitimate reason to hold PDVH liable through an alter ego finding, they could have raised that issue before this Court. Instead, they are trying to play a game of "heads I win, tails you lose."  After participating in this proceeding, they then filed actions in other courts on the eve of the Sale Hearing in which they are seeking relief from PDVH and its subsidiaries that undermines the foundation of the sale process and is deeply unfair to other creditors who have diligently completed the necessary steps in this Court with the expectation that they will receive sale proceeds in their turn.  *See* D.I. 646 at 20 (adopting "a priority scheme that rewards diligence and attempts to recreate a 'first in time, first in line' scheme . . . .").  Their efforts should be stopped.

This Court has the authority to enjoin parties who are attempting to circumvent and undermine its process by filing competing suits seeking conflicting relief from other courts.  This authority is available under the All Writs Act, pursuant to which courts can and do enjoin efforts to interfere with their proceedings in other forums.  This authority is buttressed by the first-filed rule—which reflects fundamental principles of comity and preclusion and empowers this Court to enjoin efforts by parties to assert their claims elsewhere after first appearing in this Court—and the *Princess Lida* doctrine—which prohibits interference with the property already under this Court's jurisdiction.  An injunction is essential to protect the integrity of this Court's sale process, protect creditors who followed the Court's Sale Procedures Order and have priority over the Alter Ego Claimants, and ensure that the bidders for and the eventual purchaser of the PDVH Shares are protected from collateral attacks on the assets they are seeking to purchase.

**I.    The Alter Ego Claimants' Efforts to Collect from PDVH and Its Subsidiaries Should Be Enjoined Pursuant to the All Writs Act.**

The All Writs Act provides the Court with authority to enjoin parties and non-parties from engaging in actions that interfere with its orders.  The Act states that federal courts "may issue all

writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  It gives this Court the "power . . . to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained."  *N.Y. Tel. Co.*, 434 U.S. at 172.  The expansive power under the All Writs Act extends to any individuals or entities who "are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice."  *Berger v. Zeghibe*, 666 F. App'x 119, 123 (3d Cir. 2016) (quoting *N.Y. Tel. Co.*, 434 U.S. at 174); *see also Catalytic, Inc. v. Monmouth & Ocean Cnty. Bldg. Trades Council*, 829 F.2d 430, 434 (3d Cir. 1987) (holding that the All Writs Act empowers federal courts to enjoin nonparties to enforce orders in civil cases); *United States v. Int'l Bhd. of Teamsters*, 728 F. Supp. 1032, 1043-44 (S.D.N.Y.), *aff'd*, 907 F.2d 277 (2d Cir. 1990) (using All Writs Act to enjoin both federal and state lawsuits that would challenge the court's consent decree).  In situations like this one, courts have thus enjoined collateral efforts to interfere with or devalue property that is subject to execution to satisfy a judgment creditor.  *See, e.g.*, *Berger*, 666 F. App'x at 123 (affirming an injunction under the All Writs Act enjoining judgment debtor's wife from "receiving income from . . . businesses in which [the judgment debtor] may have an interest" because it would "frustrate Judgment Creditors' attempts to collect on their judgment").

Here, the Alter Ego Claimants' efforts to collect from PDVH and its subsidiaries in the Alter Ego Actions "frustrat[e] [the] orders [this Court] has previously issued" by seeking an alternative priority scheme and a different recovery for the Alter Ego Claimants than they would have received had they fully participated in this Court's action.  *N.Y. Tel. Co.*, 434 U.S. at 172. This is precisely the situation where an injunction is justified under the All Writs Act.

12

In *Phillips Beverage Co. v. Belvedere, S.A.*, the Eighth Circuit affirmed the grant of an injunction under the All Writs Act in very similar circumstances.  204 F.3d 805, 806 (8th Cir. 2000).  There, a party sought an injunction from a district court to prevent the import of counterfeit products, and the district court denied the motion.  *Id.* at 805-06.  Undeterred, the party "turned to the United States Customs Service . . . for a Customs order" providing the same relief the district court had already denied.  *Id.*  The district court then issued an injunction under the All Writs Act "ordering [the party] to withdraw its pending application before Customs," finding that "the injunction was necessary to 'prevent the undermining of [the district court's] jurisdiction.'"  *Id.* at 806.  As the Eighth Circuit explained in affirming the injunction, "the district court acted properly under the authority granted it by the All Writs Act" because the party "attempted to make an end run around the district court's refusal to grant the . . . relief [the party] sought in a case over which the district court continued to have jurisdiction."  *Id.*  In these circumstances, "the district court could order [the party] to withdraw its pending Customs application to 'prevent the frustration of [the] order it ha[d] previously issued in its exercise of jurisdiction otherwise obtained.'"  *Id.* (quoting *N.Y. Tel. Co.*, 434 U.S. at 172).

The same is true here.  The Alter Ego Claimants, who all appeared in this Court, are now asking other courts to provide them with relief that this Court would not: priority over other creditors in recovering from PDVH and its subsidiaries on account of their claims against PDVSA or the Republic.  And they are doing so at the very last minute.  After sitting on their supposed alter ego claims for years, the Alter Ego Claimants are raising them only now, as this Court's sale process is reaching its end, maximizing the risk that the claims may disrupt and undermine the Court's process.  This is nothing more than an end run around this Court's process, and this Court should enjoin the Alter Ego Claimants from seeking such recovery in order to prevent frustration

of this Court's orders.  Otherwise, there is nothing preventing them or other creditors from also attempting similar end runs to obtain priority recovery from PDVH and its subsidiaries— effectively recreating exactly the race to collect that this Court's process is designed to avoid— further undermining the entire purpose of this sale process and this Court's authority.

An injunction pursuant to the All Writs Act is particularly critical here because the Alter Ego Claimants' gamesmanship poses a threat to the Special Master's ability to fulfill his mandate to maximize the sale price of the PDVH Shares and close the Sale Transaction in a timely manner. The Alter Ego Actions have created a cloud of uncertainty around the PDVH Shares by asserting claims that, if successful, would harm the value to a successful bidder of PDVH's wholly-owned subsidiary, CITGO Holding.  Potential bidders are thus faced with a situation in which the assets they are interested in acquiring may be encumbered by significant judgments or become the subject of conflicting court rulings.  In short, potential bidders are on the brink of expending enormous resources for assets that are at risk of being snatched from underneath them.

Finally, the traditional injunction factors (to the extent they even apply under the All Writs Act[3]) likewise confirm that an injunction is justified.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  First, the parties are likely to suffer irreparable harm in the absence of an injunction—the Alter Ego Actions will continue to undermine the Special Master's ability to maximize recoveries for the judgment creditors who have complied with this Court's orders.  The

---

[3] The text of the All Writs Act nowhere incorporates the traditional injunction factors and courts have held that they do not apply.  *See Cottingham v. Tutor Perini Bldg. Corp.*, 2016 WL 54916, at *5 n.6 (E.D. Pa. Jan. 5, 2016) ("'[T]he requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns.'") (quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004)); *see also Marxe v. Jackson*, 833 F.2d 1121, 1128 n.4 (3d Cir. 1987) ("Courts need not find irreparable harm when acting to protect their jurisdiction."); *but see Berger*, 666 F. App'x at 123-24 (applying the traditional injunction factors).

Special Master has no adequate remedy at law because damages are unavailable from the Alter Ego Claimants for the harm they are causing to the sale process. *See N. Cal. Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306, 1306 (1984) (stating that a party seeking an injunction "must invariably show that it does not have an adequate remedy at law"); *DM Trans, LLC v. Scott*, 38 F.4th 608, 618 (7th Cir. 2022) ("Harm is irreparable if legal remedies available to the movant are inadequate, meaning they are seriously deficient as compared to the harm suffered."). Second, the balance of equities strongly favors an injunction because the Alter Ego Claimants had every opportunity to participate in the sale process, but instead seek to circumvent this Court's orders by seeking relief in other forums, to the detriment of the parties who participated in the sale process. Third, enabling the Special Master to secure the greatest value for the PDVH Shares will serve the public interest in enforcing judgments and enforcing this Court's prior orders. *See State Farm Mut. Auto. Ins. Co. v. Am. Rehab & Physical Therapy, Inc.*, 376 F. App'x 182, 184 (3rd Cir. 2010) ("The public has an interest in the enforcement of judgments."). Fourth, on the merits, the Special Master can maximize the value of the PDVH Shares only if the Alter Ego Claimants are enjoined from recovering from PDVH or its subsidiaries.

The Alter Ego Claimants must therefore be enjoined to the extent they seek recovery from PDVH and its subsidiaries in the Alter Ego Actions on account of the same claims they have asserted in this Court to ensure that the Special Master can satisfy this Court's mandate to maximize the value of the PDVH Shares and ensure the greatest recovery for creditors in the order of priority set by this Court.

## II.   An Injunction Is Additionally Authorized Under the First-Filed Rule.

The first-filed rule provides further authority to enjoin the Alter Ego Claimants from recovering from PDVH and its subsidiaries in foreign forums. The first-filed rule is a longstanding principle of comity that permits courts "to exercise their discretion by enjoining the subsequent

prosecution of similar cases . . . in different federal district courts." *Univ. of Pa.*, 850 F.2d at 971 (citation omitted). The rule also reflects fundamental principles of preclusion that prevent parties from securing and enforcing conflicting rulings on the same subject. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("By preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," preclusion "doctrines protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" (citation omitted)).

The first-filed rule counsels that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *Univ. of Pa.*, 850 F.2d at 971 (citation omitted). Thus, a district court may "enjoin the prosecution of a suit that is duplicative of an extant federal court suit as part of its general power to administer its docket." *SEC v. Alpine Sec. Corp.*, 768 F. App'x 93, 94 (2d Cir. 2019) (citation omitted). "Historically, the Third Circuit has applied the first-to-file rule for cases involving the same issues." *Time Warner Cable, Inc. v. GPNE Corp.*, 497 F. Supp. 2d 584, 589 (D. Del. 2007) (citing *Univ. of Pa.*, 850 F.2d at 971); *see id.* at 589-90 (dismissing action in favor of first-filed suit where "the two cases both involve the same facts"). The first-filed rule is often applied in conjunction with the All Writs Act. *See*, *e.g.*, *SEC v. Alpine Sec. Corp.*, 2018 WL 3377152, at *3-4 (S.D.N.Y. July 11, 2018), *aff'd*, 768 F. App'x 93 (2d Cir. 2019); *In re Checking Acct. Overdraft Litig.*, 859 F. Supp. 2d 1313, 1322-26 (S.D. Fla. 2012).

Courts have applied the first-filed rule to later-filed cases involving alter ego claims—which create particular risks of duplicative litigation—in situations analogous to this one. *See, e.g.*, *Futurewei Techs., Inc. v. Acacia RSCH. Corp.*, 737 F.3d 704, 710 (Fed. Cir. 2013); *Therapy Stores, Inc. v. JGV Apparel Grp., LLC*, 2016 WL 4492583, at *3-4 (N.D. Cal. Aug. 26, 2016). As one court explained, "refusing to recognize the substantial overlap between parties where the first-

filed action is against a corporation and the second-filed action is against an individual alleged for whom the corporation is an alter ego is contrary to the rejection of the rigid, mechanical or inflexible application of the first-filed rule.  It also flies in the face of the comity, judicial economy, and best interests of justice principles on which the first-filed rule is based." *Golden v. Stein*, 2020 WL 6483876, at *5 (S.D. Iowa Aug. 7, 2020) (cleaned up).

The first-filed rule applies here to justify enjoining the Alter Ego Claimants.  The Alter Ego Actions and this Court's sale process involve efforts to enforce the same judgments, against the same entities, brought by the same claimants, with the goal of collecting against the same assets (PDVH and its subsidiaries).  The Alter Ego Claimants all participated in this Court's process to satisfy the same judgments they are now attempting to enforce elsewhere.  In fact, Gramercy is already an Additional Judgment Creditor and had its writ against PDVSA levied upon the PDVH Shares by the U.S. Marshal.  Thus, if Gramercy is successful, it will secure two conflicting court orders dictating different recoveries from the same pool of assets based on the exact same claim. Girard Street and G&A Strategic are not in the same category only because they failed to progress their respective attachment actions quickly enough.  If the Alter Ego Claimants believed they were entitled to a recovery that differed from this Court's priority scheme—whether on alter ego grounds or otherwise—they could and should have raised it in this Court.  For its part, Gramercy *did* object to this Court's priority scheme, but did not raise its alter ego claim.  *See* D.I. 893.

All three Alter Ego Claimants have now initiated claims seeking recovery from PDVH and its subsidiaries in other courts under the guise of an alter ego theory in an attempt to end run this Court's orders and seek a different recovery on account of their same judgments than they would receive by participating in this Court's proceedings.  The Alter Ego Claimants' efforts to secure recovery from PDVH and its subsidiaries are thus entirely duplicative of the proceedings in this

Court, which are already providing the value of PDVSA's ownership of the PDVH Shares to judgment creditors of PDVSA (including the Alter Ego Claimants) in a fair, organized, and consolidated manner. This Court's sale process offers a fair distribution of the value of the PDVH Shares and the underlying assets based on a "first in time, first in line" scheme consistent with applicable law, which also afforded potential Additional Judgment Creditors (including all three of the Alter Ego Claimants) an opportunity to be heard. The Alter Ego Actions attempt to seek a different priority scheme and to benefit these creditors alone at the expense of the other creditors who participated in this Court's process.

Granting an injunction would thus advance both "[t]he letter and spirit of the first-filed rule," which "are grounded on equitable principles" and guided by considerations of "fundamental fairness," including preventing forum shopping and bad-faith litigation conduct. *Univ. of Pa.*, 850 F.2d at 977. The Alter Ego Claimants are doing more than just forum shopping: They are engaged in a blatant attempt to interfere with the sale process at the expense of all other interested parties, to circumvent this Court's priority scheme to advance their own interests, and raise issues in other courts that they could have and should have raised in this one. The Alter Ego Claimants could have no conceivable purpose for seeking to enforce claims against PDVSA or the Republic by recovering from PDVH and its subsidiaries in other courts other than to circumvent the Court's priority scheme and interfere with the ongoing sale process. Their efforts constitute gamesmanship and judicial manipulation that pose a threat to the Special Master's ability to fulfill his mandate and should be enjoined.

### III.    The *Princess Lida* Doctrine Provides Further Support for an Injunction.

An injunction is further justified to ensure that the Alter Ego Actions do not interfere with property under this Court's exclusive jurisdiction and custody, in violation of the *Princess Lida* doctrine. The *Princess Lida* doctrine, also known as the doctrine of prior exclusive jurisdiction,

18

"prevents a court in which an action is filed from exercising jurisdiction when a court in a previously filed action is exercising control over the property at issue and the second court must exercise control over the same property in order to grant the relief sought." *Dailey*, 987 F.2d at 175; *see generally Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456 (1939). This rule applies when: (1) the litigation in both the first and second fora are *in rem* or *quasi in rem* in nature, and (2) the relief sought requires that the second court exercise control over the property in dispute and such property is already under the control of the first court. *See Dailey*, 987 F.2d at 176; *Dyno v. Dyno*, 2021 WL 3508252, at \*2 (3d Cir. Aug. 10, 2021). When applying the doctrine, courts should not "exalt form over necessity," but instead should "look behind the form of the action to the gravamen of a complaint and the nature of the right sued on." *Chapman v. Deutsche Bank Nat'l Tr. Co.,* 651 F.3d 1039, 1044 (9th Cir. 2011) (citation omitted).

This Court's proceeding is *in rem* or *quasi in rem* in nature and involves this Court's exercise of jurisdiction over the PDVH Shares to satisfy judgments against PDVSA or the Republic.[4] *See Glenmede Tr. Co. v. Dow Chem. Co.*, 384 F. Supp. 423, 433-34 (E.D. Pa. 1974) (a judicial sale is "necessarily quasi in rem" because it requires the court to "assume control of the . . . res"); *see also Estate of Levin v. Wells Fargo Bank, N.A.*, 2023 WL 3750577, at \*8-9 (D.D.C. June 1, 2023) (similar), *appeal filed*, No. 23-7080 (D.C. Cir. June 23, 2023). The Alter Ego Actions, to the extent they seek recovery from PDVH and its subsidiaries, necessarily interfere

---

[4] Indeed, the PDVH share certificate, representing the res that is subject of the sale, has been levied upon by the U.S. Marshal and is currently in the custody of the Special Master. As such, the Court's control over the PDVH Shares is *in custodia legis*, further strengthening the basis for enjoining actions that "prevent the court from allocating the property in accord for the purpose for which it was deposited." *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1062 (9th Cir. 1991); *see also Pagliaro, Inc. v. Zimbo,* 1987 WL 10275, at \*3 (Del. Super. Ct. Apr. 16, 1987) ("[T]he garnishment being served, establishes a lien on the property held by the garnishee. The property is then at that time *in custodia legis*.").

with this Court's control over that property.  Simply put, the Alter Ego Claimants seek a finding that PDVH is the alter ego of PDVSA, rendering PDVH—the entity under this Court's jurisdiction—essentially a nullity.  And Girard Street expressly seeks a turnover order with the explicit purpose of levying a writ of execution on PDVH's assets and bringing them within the jurisdiction of a different court, the Southern District of New York.  Girard St. Compl. ¶¶ 5, 149. If the Alter Ego Claimants are correct on the merits, then PDVH's assets are the same as PDVSA's assets, meaning that all of PDVH's assets (including the CITGO Holding shares) are already under this Court's jurisdiction. Allowing the Alter Ego Claimants to disregard the separate existence of PDVH and collect from PDVH's assets would directly undermine this Court's jurisdiction over the PDVH Shares, effectively hollowing out the PDVH Shares and rendering this Court's sale process meaningless.  Such a result would violate the letter and the spirit of the *Princess Lida* doctrine and is one more reason for this Court to enjoin the Alter Ego Claimants from seeking to enforce claims against PDVSA or the Republic by collecting from PDVH or its subsidiaries in other forums.  *See Princess Lida*, 305 U.S. at 466.

## CONCLUSION

For these reasons, the Special Master requests that the Court enter an order enjoining Gramercy, G&A Strategic, and Girard Street from seeking to enforce judgments against PDVSA or the Republic by recovering from PDVH, its subsidiaries, or their assets in the Alter Ego Actions, and granting any related relief the Court deems appropriate to prevent further attempts to circumvent this Court's proceedings.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Ray C. Schrock (Admitted *pro hac vice*)
David Lender (Admitted *pro hac vice*)
Alexander W. Welch (Admitted *pro hac vice*)
Chase A. Bentley (Admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray.Schrock@weil.com
David.Lender@weil.com
Alexander.Welch@weil.com
Chase.Bentley@weil.com

*/s/ Myron T. Steele*
Myron T. Steele (#00002)
Matthew F. Davis (#4696)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
msteele@potteranderson.com
mdavis@potteranderson.com
bpalapura@potteranderson.com

*Counsel for Special Master Robert B. Pincus*

Dated: September 9, 2024
11714822 / 21202.00001