# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Case No. 1:17-mc-00151-LPS |

## THE BOLIVARIAN REPUBLIC OF VENEZUELA AND PDVSA'S
## OPENING BRIEF IN SUPPORT OF THEIR
## <u>MOTION FOR A SHORT PAUSE IN THE SALE PROCESS</u>

OF COUNSEL:

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Suite 500 E
Washington, D.C. 20001
(202) 220-1100
Donald.Verrilli@mto.com
Elaine.Goldenberg@mto.com
Ginger.Anders@mto.com

George M. Garvey
Adeel Mohammadi
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com
Adeel.Mohammadi@mto.com

A. Thompson Bayliss (#4379)
Christopher Fitzpatrick Cannataro (#6621)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE  19807
(302) 778-1000
bayliss@abramsbayliss.com
cannataro@abramsbayliss.com

*Attorneys for the Bolivarian Republic of Venezuela*

| | |
|---|---|
| OF COUNSEL:<br><br>Joseph D. Pizzurro<br>Kevin A. Meehan<br>Juan O. Perla<br>CURTIS, MALLET-PREVOST,<br>COLT & MOSLE LLP<br>101 Park Avenue New York, NY 10178<br>(212) 696-6000<br>jpizzurro@curtis.com<br>kmeehan@curtis.com<br>jperla@curtis.com | Samuel Taylor Hirzel, II (#4415)<br>HEYMAN ENERIO GATTUSO & HIRZEL LLP<br>300 Delaware Avenue, Suite 200<br>Wilmington, DE 19801<br>(302) 472-7300<br>shirzel@hegh.law<br><br>*Attorneys for Petróleos de Venezuela, S.A.* |

## **TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ...........................................................................................................1

STATEMENT OF FACTS ...................................................................................................................3

ARGUMENT ........................................................................................................................................6

      I.      The Court Has Broad Discretion to Amend the Sale Process Deadlines .................6

      II.     A Modest Pause of the Sale Process Will Provide the Republic and PDVSA a Chance to Propose an Equitable Resolution of the Claims of All Its Creditors ...........................................................................................................6

      III.    A Pause is Also Prudent Given Serious Issues with the Ongoing Sale Process. .................................................................................................................9

             A.     Alter Ego Actions ........................................................................................9

             B.     2020 Bondholders .....................................................................................11

CONCLUSION ..................................................................................................................................12

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  No. MC 17-151-LPS, 2024 WL 325133 (D. Del. Jan. 29, 2024) .........................................6, 10

*G&A Strategic Invs. I LLC v. PDV Holding, Inc.*,
  Civ. Action No. 4:24-cv-02774 (S.D. Tex.) ...............................................................................9

*Girard St. Inv. Holdings LLC v. PDV Holding, Inc.*,
  No. 24-cv-4448 (S.D.N.Y.) .........................................................................................................9

*Gramercy Distressed Opportunity Fund, LLC v. PDV Holding, Inc.*,
  No. 4:24-cv-02981 (S.D. Tex.) ...................................................................................................9

*Hamilton Rsrv. Bank Ltd. v. Democratic Socialist Republic of Sri Lanka*,
  No. 22-CV-5199 (DLC), 2023 WL 7180683 (S.D.N.Y. Nov. 1, 2023) .....................................8

*Hamilton Rsrv. Bank Ltd. v. Democratic Socialist Republic of Sri Lanka*,
  No. 22-CV-5199 (DLC), 2024 WL 1739908 (S.D.N.Y. Apr. 23, 2024) ....................................8

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) .................................................................................................................6, 7

*Link v. Wabash R.R. Co.*,
  370 U.S. 626 (1962) .....................................................................................................................6

*Petróleos de Venezuela, S.A. v. MFUG Union Bank, N.A.*,
  Case Nos. 20-3858-cv & 20-4127-cv, 2021 WL 1118137 (2d Cir. Mar. 22,
  2021) .........................................................................................................................................11

*Petroleos De Venezuela S.A. v. MUFG Union Bank, N.A.*,
  106 F.4th 263 (2d Cir. 2024) ....................................................................................................11

*Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A.*,
  51 F.4th 456 (2d Cir. 2022) ......................................................................................................11

*Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A.*,
  Case No. 19-cv-10023 (KPF) (S.D.N.Y.) ................................................................................11

*Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*,
  109 F.3d 850 (2d Cir. 1997) .......................................................................................................8

**STATE CASES**

*Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*,
    41 N.Y.3d 462 (2024) ............................................................................................................11

## PRELIMINARY STATEMENT

The Bolivarian Republic of Venezuela (the "Republic") and Petróleos de Venezuela, S.A. ("PDVSA") submit this motion for a few months' pause in the sale process — a process that is encountering serious problems — to enable recent events inside and outside the courtroom to unfold that could produce a superior result for Attached Judgment creditors in these proceedings, as well as for Venezuela, PDVSA, and all their other creditors.

Complications in the sale process make it clear that there is much to gain and little, if anything, to lose from a short pause. As the Special Master himself has indicated, recent developments — namely the filing of certain claims against PDVH on an alter ego theory, and the Special Master's recent motion to enjoin those claims — have complicated the sales process and threaten to undercut the Special Master's legal mandate to maximize value for the benefit of Attached Judgment creditors, as well as the Republic and PDVSA. That is on top of the recent rulings favorable to the Venezuela Parties in litigation involving the 2020 PDVSA bondholders, which have cast a darker cloud over the validity of the purported CITGO Holding Pledge and thus risk unnecessarily diverting sale proceeds away from Attachment Judgment creditors to bondholders that do not even hold a judgment against PDVSA. These developments alone militate in favor of a modest pause in the sale process schedule, lest a rushed process result in a sale of the PDVH shares for less than the value required by law.

Meanwhile, ongoing global developments give reason for hope that a more productive process may soon be available for the Venezuela Parties and their creditors. On July 28, 2024, the Venezuelan people went to the polls and rejected the authoritarian rule of Nicolás Maduro, instead electing opposition candidate Edmundo González Urrutia to the presidency. The Maduro regime has so far refused to acknowledge Mr. González as the winner of that election, though it faces mounting pressure from the Venezuelan people and the international community to respect the

democratic process and engage in a peaceful exchange of power.  According to Venezuelan law, the new presidential term commences on January 10, 2025.  This political moment presents the Venezuelan people with what may be their best opportunity to end the authoritarian rule of Mr. Maduro, embrace the restitution of democracy, and normalize relations with the international community and foreign creditors.

Venezuela is endowed with enormously valuable natural resources, most notably the world's largest reserves of crude oil.[1]  As the Court and parties are well aware, the usurpations of the Maduro regime have deprived the Republic's legitimate government[2] of access to those resources, leaving the Republic unable to pay its debts.  Hence the proceedings in this Court, including the efforts of the Special Master to sell the most significant asset available to the Republic's legitimate government — its indirect ownership of CITGO — in a process that promises, at most, to satisfy a small portion of the judgments that have been entered against the Republic and PDVSA.

The next four months present a window of opportunity for a far better approach to the resolution of Venezuela's debts. If and when Mr. González assumes the presidency, his government intends to renegotiate Venezuela's debt, through the mechanisms commonly used by sovereign States to restructure their debt, an opportunity that has so far been blocked by Maduro's usurpation of power.  In light of the existing complications in the sale process, and the political

---

[1]  U.S. Central Intelligence Agency, The World Factbook, Field Listing—Petroleum (retrieved Sept. 12, 2024), https://www.cia.gov/the-world-factbook/field/petroleum/ (estimated reserves in 2021: 303.806 billion barrels).

[2]  While Mr. Maduro continues to usurp the office of President, the United States "continues to recognize the democratically elected 2015 National Assembly as the last remaining democratic institution in Venezuela. . . ."  Press Statement, Ned Price, Dep't Spokesperson, U.S. Dep't of State, Venezuela's Interim Government and the 2015 National Assembly (Jan. 3, 2023), https://www.state.gov/venezuelas-interim-government-and-the-2015-national-assembly/.

situation in Venezuela, the Republic and PDVSA respectfully request that the Court grant a modest, four-month pause in the sales process to allow for the possibility that a new Venezuelan government will at last be in a position to propose a global resolution of Venezuela's debts. In particular, the Republic and PDVSA request that the deadline for the Special Master to submit a final recommendation and the date for a sale hearing be extended through January 2025, when the new presidential term in Venezuela is scheduled to commence. In the meantime, there may be further developments in this Court and related litigation that make it easier for the Special Master to achieve a value maximizing sale for the benefit of the greatest number of Attached Judgment creditors, as well as the Republic and PDVSA. The parties and the Court can then assess, based upon these developments, whether the prospects for a global debt restructuring are sufficient to justify a further suspension of the sale process.

## STATEMENT OF FACTS

The Venezuelan presidential election held on July 28, 2024, presented an opportunity for the Venezuelan people to express their frustration with the rule of Nicolás Maduro, whose administration has been widely characterized as authoritarian and anti-democratic.[3] The election was a product of diligent diplomacy, with the Maduro regime and the Venezuelan opposition Unitary Platform signing an electoral roadmap and the temporary suspension by the United States of selected sanctions.[4] More than 12 million Venezuelans voted, and overwhelmingly voted in favor of opposition candidate Edmundo González Urrutia. The Maduro-controlled National

---

[3] Press Statement, Ned Price, Dep't Spokesperson, U.S. Dep't of State, Venezuela's Interim Government and the 2015 National Assembly (Jan. 3, 2023), https://www.state.gov/venezuelas-interim-government-and-the-2015-national-assembly/.

[4] Press Statement, Antony J. Blinken, Sec'y of State, Signing of Electoral Roadmap Between the Unitary Platform and Representatives of Maduro (Oct. 18, 2023), https://www.state.gov/signing-of-electoral-roadmap-between-the-unitary-platform-and-representatives-of-maduro/.

3

Electoral Council ("CNE") has claimed that Maduro won the July 28 election, but it has refused to produce original tally sheets to substantiate its conclusion.[5] "Meanwhile, the democratic opposition has published more than 80 percent of the tally sheets received directly from polling stations throughout Venezuela. Those tally sheets indicate that Edmundo González Urrutia received the most votes in this election by an insurmountable margin."[6] "Given the overwhelming evidence, it is clear to the United States and, most importantly, to the Venezuelan people that Edmundo González Urrutia won the most votes in Venezuela's July 28 presidential election."[7]

Since the July 28 election, protests against the Maduro regime have been ongoing throughout Venezuela and around the world.[8] Pressure on Mr. Maduro to step down is also mounting, including from the United States. The U.S. Government has denounced the CNE's "deeply flawed" actions, which announced an "outcome that does not represent the will of the Venezuelan people."[9] In light of the "overwhelming evidence" that Mr. González was elected, the U.S. Government has recognized Mr. González as the president-elect and called for "the Venezuelan parties to begin discussions on a respectful, peaceful transition in accordance with

---

[5] Press Statement, Matthew Miller, Dep't Spokesperson, U.S. Dep't of State, Marking One Month Since Venezuela's Presidential Election (Aug. 29, 2024), https://www.state.gov/marking-one-month-since-venezuelas-presidential-election/.

[6] Press Statement, Antony J. Blinken, Sec'y of State, Assessing the Results of Venezuela's Presidential Election (Aug. 1, 2024), https://www.state.gov/assessing-the-results-of-venezuelas-presidential-election/.

[7] *Id.*

[8] Genevieve Glatsky, *Venezuelan and Proxy Forces Linked to at Least 6 Protester Deaths, Rights Group Says*, N.Y. Times (Sept. 4, 2024), https://www.nytimes.com/2024/09/04/world/americas/venezuelan-government-violence-human-rights.html; Gianluca Avagnina, *Protests across Venezuela as election dispute goes on*, BBC (Aug. 7, 2024), https://www.bbc.com/news/articles/cgedgqqy7x9o.

[9] Press Statement, Antony J. Blinken, Sec'y of State, Assessing the Results of Venezuela's Presidential Election (Aug. 1, 2024), https://www.state.gov/assessing-the-results-of-venezuelas-presidential-election/.

Venezuelan electoral law and the wishes of the Venezuelan people."[10]  The U.S. Government has repeated its intention "to continue to support the winners of the July 28th presidential election and collaborate closely with our international partners to achieve the goal of peaceful restoration of democracy[] in Venezuela."[11]

Additionally, Mr. Maduro faces increasing pressure from the broader international community to cede power to the democratically elected Mr. González.  The governments of 29 countries as well as the European Union have called for "respect for the will of the Venezuelan people as expressed at the polls."[12]  The Organization of American States has also adopted a resolution by consensus calling for transparency, impartial review, and protection of electoral integrity.[13]

Under Venezuelan law, the new presidential term in Venezuela commences on January 10, 2025, at which point the question of whether Mr. Maduro will cede power will likely be substantially settled.  If and when Mr. González assumes office, his government intends to negotiate a restructuring of Venezuela's debt, as has been the consistent policy of the legitimate representatives of the Republic.[14]

---

[10]  *Id.*

[11]  Vedant Patel, Principal Deputy Spokesperson, Dep't of State, Department Press Briefing (Sept. 9, 2024), https://www.state.gov/briefings/department-press-briefing-september-9-2024/; *see also* Secretary Antony J. Blinken And Dominican President Luis Abinader At a Joint Press Availability (Sept. 6, 2024), https://www.state.gov/secretary-antony-j-blinken-and-dominican-president-luis-abinader-at-a-joint-press-availability/ (Secretary Blinken: "Getting Venezuela on a clear democratic trajectory is vital . . . .").

[12]  Office of the Spokesperson, Joint Statement on Venezuela Election (Aug. 16, 2024), https://www.state.gov/joint-statement-on-venezuela-election/.

[13]  Press Statement, Matthew Miller, Dep't Spokesperson, U.S. Dep't of State, Marking One Month Since Venezuela's Presidential Election (Aug. 29, 2024), https://www.state.gov/marking-one-month-since-venezuelas-presidential-election/.

[14]  Darrin Gibbs, *La agenda de Edmundo González Urrutia*, El Nacional (May 23, 2024), https://www.elnacional.com/opinion/la-agenda-de-edmundo-gonzalez-urrutia/ (describing Mr. González's agenda); *see also* Office of the Special Attorney, Guidelines for the Renegotiation of

5

## ARGUMENT

**I.        The Court Has Broad Discretion to Amend the Sale Process Deadlines.**

This Court has "broad inherent power to manage its own affairs so as to achieve the orderly and expeditious disposition of cases." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. MC 17-151-LPS, 2024 WL 325133, at *2 (D. Del. Jan. 29, 2024) (cleaned up) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). "[T]his discretion also allows [the Court] to consider the relative prejudice to the parties who are before [the Court] that might arise from granting or denying the requested relief and also gives [the Court] the authority to consider the impact, if any, of [its] rulings on the ongoing sale process." *Id.* at *3. As relevant here, the Court's broad discretion "includes the authority to modify [its] prior orders," including existing sale process deadlines. *Id.* at *2.

In exercising that discretion, this Court may look to equitable and policy-based considerations. As the Supreme Court has explained,

> We must be on our guard against depriving the processes of justice of their suppleness of adaptation to varying conditions. *Especially in cases of extraordinary public moment*, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted.

*Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936) (emphasis added).

**II.       A Modest Pause of the Sale Process Will Provide the Republic and PDVSA a Chance to Propose an Equitable Resolution of the Claims of All Its Creditors.**

While it is too early to tell if Mr. Maduro will cede power to the democratically-elected Mr. González, he faces increasing pressure from the U.S. Government and other members of the

---

the Chávez/Maduro Era Legacy Public External Debt (July 1, 2019) (attached herein as Cannataro Decl., Ex. A) (statement of the Interim Government and the National Assembly led by Juan Guaidó affirming that "it shall be the policy of the Authorities to proceed with an orderly and consensual renegotiation of legacy private claims as soon as practicable thereafter, in accordance with the Special Law to be passed by the National Assembly").

6

international community to do so.  Given the intention of a González administration to negotiate a restructuring of Venezuela's debt, this Court should allow a modest pause of the sale process deadlines through January 2025 — the date which, under Venezuelan law, the new presidential term commences — to see whether the new government takes power and is in a position to negotiate an equitable resolution of claims made by all the Republic's creditors.

The transition of power in Venezuela is undoubtedly a matter of "extraordinary public moment."  *See Landis*, 229 U.S. at 256.  As the U.S. Government recognized in its July 1, 2024 letter to the Special Master, "[e]ncouraging inclusive and competitive elections in Venezuela is a top U.S. foreign policy priority."  Cannataro Decl., Ex. B.[15]  The pending sale process has a direct impact on the political situation in Venezuela.  In this juncture, CITGO is not just a disposable asset.  Instead, it could be part of the solution since its operational, financial and corporate governance recovery represents the future for a new Venezuela.  As the Venezuela Parties have previously pointed out to the Court, *see, e.g.*, D.I. 87, Case No. 19-mc-79-LPS, at 18, the Maduro regime has relied on the sales process to attack political opponents.[16]  Following the July 28 election, Mr. Maduro has continued pointing to the sale process to attack the opposition and bolster his own illegitimate claim to the presidency.[17]  Indeed, as then-U.S. Special Representative for

---

[15]     At the July 2, 2024 hearing, counsel for the Republic provided a copy of the letter to the Court and read its contents into the record.  July 2, 2024 Tr., at 23-24.

[16]     *See, e.g.*, *Ministerio Público emitió una orden de captura contra Juan Guaidó y solicitará alerta roja de Interpol*, El Nacional (Oct. 5, 2023), https://www.elnacional.com/venezuela/politica/ministerio-publico-emitio-una-orden-de-captura-a-juan-guaido/ (Maduro administration relying on this Court's prior order to justify issuing an arrest warrant against Juan Guaidó).

[17]     *See, e.g.*, Kleybergel Gonzalez, *Maduro: TSJ en el exilio ayudó a robar los activos en el extranjero*, Últimas Noticias (Sept. 2, 2024), https://ultimasnoticias.com.ve/noticias/politica/maduro-tsj-en-el-exilio-ayudo-a-robar-los-activos-en-el-extranjero/; Werther Sandoval, *Citgo y el triunfo de Maduro*, Últimas Noticias (Aug. 4, 2024), https://ultimasnoticias.com.ve/noticias/pais-petroleo/citgo-y-el-triunfo-de-maduro/.

Venezuela Elliott Abrams stated back in 2020, the forced sale of CITGO would represent "a great political victory for the Maduro regime." D.I. 212-1, at 4.

In this fraught moment, as the U.S. government suggested earlier this summer, "[m]oving the sale hearing would help avoid the possibility that this proceeding increases tension during this critical and sensitive juncture." Cannataro Decl., Ex. B. In ordering a limited, four-month pause, this Court would not be alone in granting a sovereign under political crisis modest time relief so that it can engage in debt restructuring negotiations. In proceedings against Sri Lanka before the Southern District of New York, the court there recognized the "ongoing economic, political, and humanitarian crisis" in that country. *Hamilton Rsrv. Bank Ltd. v. Democratic Socialist Republic of Sri Lanka*, No. 22-CV-5199 (DLC), 2023 WL 7180683, at *1 (S.D.N.Y. Nov. 1, 2023). The court granted first a six-month stay, and then another five-month stay, in order for Sri Lanka to "conduct[] sovereign debt restructuring negotiations." *Id.* at *4; *Hamilton Rsrv. Bank Ltd. v. Democratic Socialist Republic of Sri Lanka*, No. 22-CV-5199 (DLC), 2024 WL 1739908, at *2 (S.D.N.Y. Apr. 23, 2024).

International comity also favors deference to a sovereign making efforts to negotiate unpaid debt to creditors. *See, e.g.*, *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997) ("Peru's efforts to negotiate a settlement of its unpaid debt to foreign creditors are acts by a foreign government that have extraterritorial effect in the United States. . . [T]he grant of summary judgment must be evaluated in the light of principles of international comity."). Until now, the Maduro regime's usurpations have prevented the Republic and PDVSA from commencing the restructuring efforts. The opposition's victory in the presidential election provides new hope that those usurpations will end by January, and the Republic and PDVSA will

8

be in a position to negotiate a restructuring — to satisfy more of the Attached Judgments in these proceedings, and also more of the judgments of other creditors.

### III. A Pause is Also Prudent Given Serious Issues with the Ongoing Sale Process.

In addition to giving the Republic and PDVSA a chance to propose an equitable resolution of the claims of all is creditors, a modest pause would benefit the sale process in light of serious issues affecting the Special Master's ability to fulfill his mandate to maximize value under Delaware law. Without waiving their ability to object to the sale process and the Special Master's eventual recommendation, the Republic and PDVSA believe that a pause would allow for greater clarity (and perhaps resolution) of two separate issues that now stand in the way of a value-maximizing sale: the Alter Ego Actions filed by creditors against PDVH, and the litigation with the 2020 PDVSA bondholders.

#### A. Alter Ego Actions

In June and July 2024, creditors holding judgments against PDVSA or the Republic (the "Alter Ego Claimants"[18]) filed three actions in New York and Texas seeking to recover from PDVH on an alter ego theory (the "Alter Ego Actions"). *See Girard St. Inv. Holdings LLC v. PDV Holding, Inc.*, No. 24-cv-4448 (S.D.N.Y.); *G&A Strategic Invs. I LLC v. PDV Holding, Inc.*, Civ. Action No. 4:24-cv-02774 (S.D. Tex.); *Gramercy Distressed Opportunity Fund, LLC v. PDV Holding, Inc.*, No. 4:24-cv-02981 (S.D. Tex.).[19] According to the Special Master, the recently

---

[18] The creditors are Gramercy Distressed Opportunity Fund LLC; G&A Strategic Investments I LLC; G&A Strategic Investments II LLC; G&A Strategic Investments III LLC; G&A Strategic Investments IV LLC; G&A Strategic Investments V LLC; G&A Strategic Investments VI LLC; G&A Strategic Investments VII LLC; and Girard Street Investment Holdings, LLC.

[19] Both the *G&A Strategic* and *Gramercy* actions were initially filed in state court and subsequently removed to the Southern District of Texas. On September 10, 2024, the default judgment underlying the enforcement action in *G&A Strategic* was vacated. *See* Case No. 24-cv-2774, ECF No. 46 (S.D. Tex., Sept. 11, 2024). PDVSA and PDVH have notified the Southern

filed Alter Ego Actions "create a cloud of uncertainty over the PDVH Shares" and fundamentally threaten "the Special Master's ability to close a value-maximizing sale transaction" because bidders will be "concerned about the risk that creditors will later lay claim to the assets the bidders are seeking to purchase." D.I. 1249, at 2, 14; *see also* D.I. 1251, at 1-2 (Special Master stating that "the Alter Ego Actions are interfering with the ability of the Special Master to negotiate with bidders . . ."). The Special Master has recently filed a motion asking this Court to enjoin the Alter Ego Claimants from pursuing those claims against PDVH. D.I. 1248.

The Republic and PDVSA take no position on the Special Master's motion to enjoin the Alter Ego Actions. *See* D.I. 1255. But, according to the Special Master's assessment, the Alter Ego Actions — and any similar action brought by any other creditor, including creditors that may not have Attached Judgments in the present *Crystallex* action — have the potential to upend the entire sales process and render it "meaningless." D.I. 1249, at 2. As the Court is aware, the Alter Ego Claimants have announced their intention to oppose the Special Master's motion, which they state "implicates fundamental limitations on the Court's jurisdiction." D.I. 1254, at 3. An appeal is foreseeable no matter which way the Court rules on the Special Master's motion.

The complications raised by the Alter Ego Actions (and the risk of similar future actions) provide the Court with another independent reason to grant a modest pause to the upcoming sale process deadlines.[20] In addition to the complications raised by that motion, any appeal may also further push back the previously anticipated sale process deadlines. By granting the Republic's request for a modest four-month pause, the Court would allow time for the Special Master to

---

District of Texas of this vacatur and "intend to file a pleading requesting appropriate relief [from the Southern District of Texas] arising from this development." *Id.*

[20] For the avoidance of any doubt, the Republic and PDVSA are not requesting the Court to delay its adjudication of the Special Master's pending motion to enjoin the Alter Ego Actions.

10

address the recent impediments to a value-maximizing sale while giving an opportunity for the democratically elected Venezuelan opposition to transition to power and negotiate an equitable restructuring of Venezuela's debt.

### B.     2020 Bondholders

As this Court is aware, a separate action concerning holders of debt instruments issued by PDVSA (the "2020 Bondholders") remains pending before the Southern District of New York. *Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, Case No. 19-cv-10023 (KPF) (S.D.N.Y.).  The 2020 Bondholders are a minority in interest of noteholders who, with notice that the Maduro regime was purporting to pledge the stock of CITGO in defiance of the Republic's Constitution and National Assembly, willingly elected to accept Mr. Maduro's illegal offer.  *See* Republic's Brief as Amicus Curiae in *Petróleos de Venezuela, S.A. v. MFUG Union Bank, N.A.*, Case Nos. 20-3858-cv & 20-4127-cv, 2021 WL 1118137, at *10 (2d Cir. Mar. 22, 2021).  The Second Circuit recently vacated the Southern District of New York's entry of judgment against PDVSA and related entities, holding that Venezuelan law governs the validity of the instruments at issue. *Petroleos De Venezuela S.A. v. MUFG Union Bank, N.A.*, 106 F.4th 263, 265 (2d Cir. 2024).[21]  This was the result of a five-year litigation that confirmed PDVSA's position from the outset that Venezuelan law governed the issuance of the transaction.

Yet notwithstanding the significant possibility that, upon remand, the Southern District of New York will declare Mr. Maduro's illegal pledge invalid, the Special Master seems intent on

---

[21]     The Second Circuit did so after certifying the question of whether New York or Venezuela law governed the validity of the instruments to the New York Court of Appeals, *Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 51 F.4th 456, 475-76 (2d Cir. 2022), and the New York Court of Appeals held that Venezuelan law governed, *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 41 N.Y.3d 462, 473 (2024).  The 2020 bondholder litigation continues to advance, with a briefing schedule that reflects the seriousness of the Venezuelan law issues and the court's intent to avoid undue delays.  Memo Endorsed at 11, *Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, Case No. 19-cv-10023 (KPF), ECF No. 320 (S.D.N.Y. Aug. 20, 2024).

11

resolving the pledge through a sale, *see, e.g.*, D.I. 348 at 36-37; May 17, 2024 Hearing Tr., at 22-25, potentially diverting or reducing sale proceeds to the 2020 Bondholders, even though they are not Attached Judgment creditors and do not even have a judgment against PDVSA.[22] Especially at this juncture, following recent developments favorable to the Venezuela Parties in the 2020 Bondholders litigation, it would be particularly inappropriate to divert sale proceeds to resolve a pledge that another U.S. court may determine not to be valid.

To be clear, the Republic and PDVSA are not asking the Court to decide the propriety of the Special Master's potential treatment of the 2020 Bondholders through this motion, and the Republic and PDVSA reserve their full rights to object to any purported resolution of the pledge, including at a future sale hearing. But the status of the 2020 Bondholders litigation creates an additional reason why a modest pause in the sale process — as pressure on Mr. Maduro to cede power to the democratically elected Mr. González mounts, and the possibility of a González administration's negotiation of an equitable restructuring of the Republic's debt — would be prudent and maximize all parties' interests.

## CONCLUSION

For the foregoing reasons, the Republic and PDVSA respectfully request that the Court exercise its discretion to grant a prudential four-month pause to the sale process deadlines, through January 2025, when the new presidential term in Venezuela will commence.

---

[22] The Special Master has not provided the Republic with copies of the actual bids he has received.

12


| | |
|---|---|
| Dated:  September 17, 2024 | Respectfully submitted, |
| | |
| | /s/ Christopher Fitzpatrick Cannataro |
| OF COUNSEL: | A. Thompson Bayliss (#4379) |
| | Christopher Fitzpatrick Cannataro (#6621) |
| Donald B. Verrilli, Jr. | ABRAMS & BAYLISS LLP |
| Elaine J. Goldenberg | 20 Montchanin Road, Suite 200 |
| Ginger D. Anders | Wilmington, DE  19807 |
| MUNGER, TOLLES & OLSON LLP | (302) 778-1000 |
| 601 Massachusetts Avenue NW | bayliss@abramsbayliss.com |
| Suite 500 E | cannataro@abramsbayliss.com |
| Washington, D.C. 20001 | |
| (202) 220-1100 | *Attorneys for Bolivarian Republic* |
| Donald.Verrilli@mto.com | *of Venezuela* |
| Elaine.Goldenberg@mto.com | |
| Ginger.Anders@mto.com | |
| | |
| George M. Garvey | |
| Adeel Mohammadi | |
| MUNGER, TOLLES & OLSON LLP | |
| 350 South Grand Avenue, 50th Floor | |
| Los Angeles, CA 90071 | |
| (213) 683-9100 | |
| George.Garvey@mto.com | |
| Adeel.Mohammadi@mto.com | |
| | |
| | |
| OF COUNSEL: | |
| | /s/ Samuel Taylor Hirzel |
| Joseph D. Pizzurro | Samuel Taylor Hirzel, II (#4415) |
| Kevin A. Meehan | HEYMAN ENERIO GATTUSO & HIRZEL LLP |
| Juan O. Perla | 300 Delaware Avenue, Suite 200 |
| CURTIS, MALLET-PREVOST, COLT | Wilmington, DE 19801 |
| & MOSLE LLP | (302) 472-7300 |
| 101 Park Avenue New York, | shirzel@hegh.law |
| NY 10178 | |
| (212) 696-6000 | *Attorneys for Petróleos de Venezuela, S.A.* |
| jpizzurro@curtis.com | |
| kmeehan@curtis.com | |
| jperla@curtis.com | |

13