IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CRYSTALLEX INTERNATIONAL
CORPORATION,

                        Plaintiff,

        v.                                              C.A. No. 17-151-LPS

BOLIVARIAN REPUBLIC
OF VENEZUELA,

                        Defendant.

**CRYSTALLEX INTERNATIONAL CORPORATION'S BRIEF IN SUPPORT OF THE
SPECIAL MASTER'S MOTION TO ENJOIN THE ALTER EGO CLAIMANTS FROM
ENFORCING CLAIMS AGAINST THE REPUBLIC OR PDVSA BY RECOVERING
FROM PDVH OR ITS SUBSIDIARIES IN OTHER FORUMS**

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166
Tel:  (212) 351-4000
Fax:  (212) 351-4035


Miguel A. Estrada
Lucas C. Townsend
Adam M. Smith
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
Tel:  (202) 955-8500
Fax:  (202) 467-0539

Dated:  September 17, 2024

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Tel:  (302) 651-7700
Fax:  (302) 651-7701

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

Page(s)

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 1

ARGUMENT .......................................................................................................................... 2

    I.      The Alter Ego Actions Are Fundamentally Flawed ............................................... 2

    II.     Crystallex's Responses to the Court's Questions .................................................. 3

    a.     Why isn't the relief sought by the Injunction Motion more appropriately
obtained from the New York and Texas courts where the Alter Ego
Claimants' suits are pending? ................................................................................. 4

    b.     What efforts, if any, has the Special Master and/or any Sale Process Party
made, or intended to make, to advise the New York and Texas courts of
this Court's proceedings and the impact those proceedings may have on
these? ..................................................................................................................... 7

    c.     On what basis did bidders for the PDVH Shares come to "expect to
purchase those shares free and clear of claims or encumbrances from
judgment creditors of PDVSA?" (D.I. 1249 at 4).................................................. 7

    d.     The Injunction Motion seems to request of the Court something akin to an
"automatic stay" that might be issued from a Bankruptcy Court.  Is this
what the Special Master is seeking and, if so, are there any precedents for
a nonbankruptcy court to grant such relief?.......................................................... 8

    e.     If the Court determines that the Sale Process is an *in rem* or *quasi in rem*
action, is the application of the Princess Lida doctrine "compulsory?"  *See
Dailey v. Nat'l Hockey League*, 987 F.2d 172, 176 (3d Cir. 1993). ..................... 9

    f.     In evaluating the Injunction Motion, to what extent should the Court
consider, and what weight should the Court give to, the fact that the Alter
Ego Claimants previously participated in this Court's process and failed to
obtain the relief they sought?............................................................................... 11

CONCLUSION..................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

## Cases

*In re Am. Honda Motor Co. Dealerships Rels. Litig.*,
315 F.3d 417 (4th Cir. 2003) ................................................................6

*Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*,
398 U.S. 281 (1970) ...........................................................................6

*Barbiero v. Kaufman*,
2013 WL 3939526 (E.D. Pa. July 30, 2013) .......................................11

*Butt v. United Brotherhood of Carpenters & Joiners of Am.*,
999 F.3d 882 (3d Cir. 2021) ...............................................................6

*Chapman v. Deutsche Bank Nat'l Tr. Co.*,
651 F.3d 1039 (9th Cir. 2011) ...........................................................11

*Crawford v. Courtney*,
451 F.2d 489 (4th Cir. 1971) .............................................................11

*Dailey v. Nat'l Hockey League*,
987 F.2d 172 (3d Cir. 1993) .........................................................9, 11

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab.
Litig.*,
369 F.3d 293 (3d Cir. 2004)......................................................6, 11, 12

*Est. of Levin v. Wells Fargo Bank, N.A.*,
2023 WL 3750577 (D.D.C. June 1, 2023) ..........................................11

*Glenmede Tr. Co. v. Dow Chem. Co.*,
384 F. Supp. 423 (E.D. Pa. 1974) ......................................................10

*Julian v. Cent. Tr. Co.*,
193 U.S. 93 (1904)..........................................................................5, 6

*Noble Prestige Ltd. v. Galle*,
83 F.4th 1366 (11th Cir. 2023) ...........................................................11

*In re Orthopedic "Bone Screw" Prods. Liab. Litig.*,
132 F.3d 152 (3d Cir. 1997)...............................................................12

*Princess Lida of Thurn & Taxis v. Thompson*,
305 U.S. 456 (1939)........................................................................9, 10

*Toucey v. N.Y. Life Ins. Co.*,
314 U.S. 118 (1941)............................................................................5

## Statutes

28 U.S.C. § 2283 .................................................................................6

## TABLE OF AUTHORITIES

Page(s)

**Other Authorities**

Wright & Miller, 13F Fed. Prac. & Proc. Juris. § 3631 (3d ed. Oct. 2023)...................................10

## NATURE AND STAGE OF THE PROCEEDINGS

Crystallex submits this brief in support of the Special Master's Motion to Enjoin the Alter Ego Claimants[1] from pursuing in other courts claims that PDVH is an alter ego of PDVSA or of the Republic of Venezuela in an attempt to undermine this Court's exclusive control of the PDVH Shares that this Court seized years ago to satisfy Crystallex's judgment and the judgments of other creditors of Venezuela and PDVSA.

The crux of this dispute is simple. The Alter Ego Claimants do not expect a significant recovery from the sale process ordered by this Court because they arrived too late in the process. D.I. 893. So now the Alter Ego Claimants have asked courts in Texas and New York to declare that PDVH and PDVSA are one and the same in an effort to cut the line established by this Court's orderly process. The complaints are based on stale allegations and rhetoric that predate this Court's 2018 attachment and plainly are not designed to succeed, but to disrupt the sale of the PDVH Shares and to create for the Alter Ego Claimants leverage over the sale proceeds that their low priority status does not afford them. The Alter Ego Actions are an affront to this Court's orders directing that the PDVH Shares be sold in an orderly process to satisfy the outstanding judgments held by Crystallex and others in the order designated by this Court.

But the Alter Ego Claimants cannot so easily evade this Court's sale process. The Alter Ego Claimants hold judgments only against Venezuela and PDVSA, not PDVH. Yet the central allegation in their Texas and New York cases is that those courts should declare that PDVH has no distinct, separate existence from PDVSA—so that the res in *this* Court's exclusive possession— the entirety of the capital stock of PDVH—evidences nothing. But PDVH's corporate existence—

---

[1] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the Special Master's Motion to Enjoin the Alter Ego Claimants From Enforcing Claims Against the Republic of PDVSA by Recovering From PDVH Or Its Subsidiaries In Other Forums. D.I. 1249 ("Mot.").

as a Delaware company whose shares are subject to execution in Delaware—is at the heart of this action and this Court's exercise of jurisdiction. Piercing PDVH's corporate veil and treating the company like it does not exist is thus a challenge to this Court's control over those shares and its orders directing that the shares be sold to satisfy Venezuela and PDVSA's debts. The Court has authority to enjoin such actions under basic *in rem* jurisdiction principles, the *Princess Lida* doctrine, the All Writs Act, and the Court's inherent powers.

## ARGUMENT

### I.    The Alter Ego Actions Are Fundamentally Flawed

The Special Master is correct that the Alter Ego Claimants "are trying to play a game of 'heads I win, tails you lose.'" Mot. at 11. Each of the Alter Ego Claimants attempted to participate in this Court's sale process by filing Attached Judgment Statements in accordance with this Court's Sale Procedures Order and subsequent orders implementing it. D.I. 656, 672, 675. Two of the Alter Ego Claimants—G&A Strategic and Girard Street—obtained their judgments too late to participate as Additional Judgment Creditors. The third—Gramercy—apparently is not satisfied with its position as the sixteenth creditor in the Court's priority waterfall. *See* Mot. at 7-9.

The Alter Ego Claimants' actions in New York and Texas are thinly veiled attempts to disrupt the sale process and gain leverage to force a nuisance payment out of the sale proceeds to which they are not entitled. Their stale alter ego allegations rely almost entirely on PDVSA's alleged control of PDVH long before this Court's 2018 attachment of the PDVH Shares, which they do not mention at all. *See* Compl., *Girard St. Inv. Holdings LLC v. PDV Holding, Inc.*, No. 24-cv-4448 (S.D.N.Y. June 10, 2024), D.I. 1 ("Girard St. Compl."). For example, Girard Street alleges that, in 2022, the President of the PDVSA Ad Hoc Board "noted that PDVH does not have assets for dividends, and will not have them until obligations to creditors have been paid off." *Id.* ¶ 125. Girard Street never mentions that this Court seized the PDVH Shares before this statement

was made, and that PDVH's inability to pay dividends until PDVSA's creditors are satisfied could scarcely be evidence of an alter ego relationship given this Court's writ of attachment against the PDVH Shares, to say nothing of the various sanctions restrictions that operated against Venezuela and its state-owned companies during that time.  G&A Strategic and Gramercy likewise do not mention this Court's attachment of the PDVH Shares.  *See* Original Petition, *G&A Strategic Invs. I LLC v. PDV Holding, Inc.*, 2024-36664 (D. Ct. Tex. June 10, 2024), D.I. 1 ("G&A Strategic Pet."); Original Petition, *Gramercy Distressed Opportunity Fund, LLC v. PDV Holding, Inc.*, 2024-47814 (D. Ct. Tex. July 29, 2024), D.I. 1 ("Gramercy Pet.").

The Alter Ego Claimants' alter ego arguments are so stale and thinly supported that there can be no other conclusion but that their true purpose is to disrupt this Court's sale process.  They would not be the first creditors to attempt to do so, nor will they be the last if the sale process is delayed much longer.  The fact that their meritless actions may not be dismissed for some time is no reason to give the Alter Ego Claimants' claims any more credit than they are due—none.

Crystallex respectfully submits that this Court should not condone attempts to disrupt the sale process—particularly by parties that either attempted to or are currently participating in it.  As discussed below, the Court's inherent power over its docket and the parties appearing before it permits the Court to issue the injunction requested in the Special Master's Motion to prevent the Alter Ego Claimants from disturbing the sale process.

## II.   Crystallex's Responses to the Court's Questions

Crystallex respectfully submits that the Special Master's Motion to Enjoin the Alter Ego Claimants from pursuing the Alter Ego Actions should be granted.  Crystallex also addresses below each of the questions the Court posed in its September 11 Order, each of which supports issuing an injunction here.

**a. Why isn't the relief sought by the Injunction Motion more appropriately obtained from the New York and Texas courts where the Alter Ego Claimants' suits are pending?**

The relief that the Alter Ego Claimants are seeking in other jurisdictions would interfere with property already in this Court's custody. This Court issued a writ attaching the PDVH Shares to satisfy Crystallex's judgment in August 2018. D.I. 95, 96. And pursuant to this Court's July 17, 2023 order, D.I. 644, PDVH delivered to the Special Master a certificate representing all 1,000 shares of PDVH owned by PDVSA, D.I. 810. The property in this Court's custody, therefore, is the sole evidence of PDVH's corporate existence. That corporate existence is central to this Court's Sale Procedures Order informing bidders that the order approving the ultimate sale transaction "may provide for the valid transfer under applicable law of good and marketable title to the PDVH Shares to the Successful Bidder free and clear of all claims, encumbrances, and liabilities." D.I. 481, at 18.

Now, on the eve of the sale, the Alter Ego Claimants are asking courts in Texas and New York to declare PDVH a legal nullity. They are seeking declarations that PDVH has no separate corporate existence from PDVSA, and that the property of PDVH is no different than the property of PDVSA (and by extension Venezuela). Should the Alter Ego Claimants succeed in this regard, the effect of these declarations could be to render the res in this Court's custody nonexistent, a nullity. They would pierce PDVH's corporate veil and treat the company—represented by its shares and certificate of ownership that are currently in the Court's possession—as if it does not exist. That is an affront to this Court's jurisdiction over the PDVH Shares, its attachment and seizure of those shares, and its orders directing that the shares be sold for value to satisfy the judgments held by creditors of Venezuela and PDVSA (which includes the Alter Ego Claimants, none of whom is a creditor of PDVH).

If the Alter Ego Claimants wish to pursue their alter ego claims, they must do so *in this Court*—and nowhere else.  All relevant parties are present in this Court, and this Court has for years been exercising jurisdiction over the property at the heart of the Alter Ego Claimants' eleventh-hour claims.  This Court has issued countless rulings about the status, custody, and ownership of the shares that evidence PDVH's corporate existence, and the Court is now engaged in a process to sell that res for the benefit of Venezuela's creditors.  Only this Court can ensure that there is no risk of inconsistent rulings on the res in the Court's custody.

Accordingly, it is appropriate for this Court—and only this Court—to rule on the Special Master's injunction motion.  This Court is authorized to issue injunctions to protect the property in its custody and ensure that its orders are effective.  Other jurisdictions do not share this Court's interests in vindicating its authority or enforcing its orders, and they may be not familiar with these ongoing proceedings.  Courts have consistently recognized that "a federal court's exclusive control over the res may require use of the injunction to effectuate its decrees in rem." *Toucey v. N.Y. Life Ins. Co.*, 314 U.S. 118, 135 n.6 (1941).  For example, in *Julian v. Central Trust Co.*, 193 U.S. 93 (1904), the Supreme Court affirmed an injunction prohibiting a state-court foreclosure sale to satisfy judgments against the Western North Carolina Railroad Company where the property had already been sold in a federal-court foreclosure sale.  In that case it was "obvious" from the federal judicial sale that "it was the intention and purpose of the Federal court to retain jurisdiction over the cause so far as was necessary … for the purpose of *itself* settling and determining all liens and demands which the purchaser should pay as a condition of security in the title which the court had decreed to be conveyed."  *Id.* at 111-12 (emphasis added).  If the state sheriff were "allowed to sell the very property conveyed by the Federal decree, such action has the effect to annul and set it aside, because, in the view of the state court, it was ineffectual to pass the title to the purchaser."

*Id.* at 112.  In such a case, a request for injunctive relief "may be filed *in the original suit* with a view to protecting the prior jurisdiction of the Federal court and to render effectual its decree." *Id.* (emphasis added).  The power to issue such an injunction derives from a federal court's inherent power to "act[] in aid of its own jurisdiction and to render its decree[s] effectual." *Id.*; *see also Butt v. United Brotherhood of Carpenters & Joiners of Am.*, 999 F.3d 882, 887 (3d Cir. 2021) (recognizing that a federal court's "ancillary enforcement jurisdiction exists 'to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees'").

Additionally, the All Writs Act "authorize[s] a federal court to issue such commands ... as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *In re Am. Honda Motor Co. Dealerships Rels. Litig.*, 315 F.3d 417, 437 (4th Cir. 2003) (quotation marks omitted).  The interaction between the All Writs Act, which provides the positive authority to issue injunctions, and the Anti-Injunction Act, which limits that authority with respect to injunctions of state court proceedings, *see In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 369 F.3d 293, 305 (3d Cir. 2004), confirms the Court's authority to issue injunctions necessary "to protect or effectuate [the court's] judgments," 28 U.S.C. § 2283.  That Act provides in relevant part that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as … necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  Those exemptions "imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970).

6

Accordingly, this Court can and should enjoin the Alter Ego Claimants from pursuing rival actions that are interfering with this Court's exclusive control over the res—and indeed are designed to defeat that control.

> **b. What efforts, if any, has the Special Master and/or any Sale Process Party made, or intended to make, to advise the New York and Texas courts of this Court's proceedings and the impact those proceedings may have on these?**

Crystallex has not appeared before or filed any submissions with the New York or Texas courts to advise them of this Court's proceedings. Unlike the Alter Ego Claimants, each of which is a party to both this action and their respective actions before the New York and Texas courts, Crystallex is only a party to this case. All relevant parties are already before this Court, whereas only a small subset of the parties is present in Texas and New York. It would be impractical, if not impossible, for all relevant stakeholders to decamp to Texas and New York to litigate the issues presented in the Special Master's motion.

Crystallex understands that the Special Master has advised the New York and Texas courts of this case and his pending motion to enjoin the Alter Ego Claimants.

> **c. On what basis did bidders for the PDVH Shares come to "expect to purchase those shares free and clear of claims or encumbrances from judgment creditors of PDVSA?" (D.I. 1249 at 4)**

Although Crystallex cannot speak to the universe of potential bases for the Special Master's statement, it is entirely reasonable that bidders would expect to acquire the PDVH Shares "free and clear of any claims or encumbrances from judgment creditors of PDVSA" because that is what the Sale Procedures Order provides.

This Court's Sale Procedures Order states that the sale will conclude with "the valid transfer under applicable law of good and marketable title to the PDVH Shares to the Successful Bidder free and clear of all claims, encumbrances, and liabilities." D.I. 480-1 at 18. The only caveat to that free and clear transfer of the PDVH Shares concerns claims to the proceeds of the sale, which

remain subject to any claims that encumbered the PDVH Shares immediately prior to the consummation of the sale.  *Id.*  There is no provision for continuing claims against the PDVH Shares by creditors of PDVSA.  Indeed, the opposite is true: the shares are to be transferred free and clear of all such claims, thus resulting in a "full and complete general assignment, conveyance, and transfer of all of PDVSA's or any other person's right, title, and interest in the PDVH Shares."  *Id.*

> **d. The Injunction Motion seems to request of the Court something akin to an "automatic stay" that might be issued from a Bankruptcy Court.  Is this what the Special Master is seeking and, if so, are there any precedents for a nonbankruptcy court to grant such relief?**

Crystallex does not understand the Special Master's Motion to seek an order akin to an "automatic stay."  The Special Master is not seeking to enjoin all actions against PDVH, or even all actions by creditors of Venezuela and PDVSA.  Rather, the Special Master's Motion is targeted only at creditors of Venezuela and PDVSA seeking, in a rival alter ego proceeding in another court, a determination that PDVH has no distinct, separate existence and that the res in this Court's possession evidences nothing.  In Crystallex's view, any creditor who wishes to challenge the res that is already in this Court's custody in that manner must bring such a challenge before this Court or not at all.  Thus, the arguments in support of the Special Master's Motion likely would not apply to ordinary-course business liabilities and debts at the CITGO Petroleum level.  For example, contractors providing services to CITGO Petroleum are not precluded from suing that company and collecting any outstanding debts.  Similarly, Venezuela and PDVSA's creditors can continue to enforce their rights against any assets they are able to locate in the United States or around the world, so long as those enforcement actions do not require trespassing on the PDVH Shares that are in *custodia legis* with this Court.

> **e.  If the Court determines that the Sale Process is an *in rem* or *quasi in rem* action, is the application of the Princess Lida doctrine "compulsory?"  *See Dailey v. Nat'l Hockey League*, 987 F.2d 172, 176 (3d Cir. 1993).**

If the Court determines that this action is an *in rem* or *quasi in rem* action (it is), then the Court should issue an order enjoining the Alter Ego Claimants from advancing the rival actions in New York and Texas.  That result is amply supported by the Supreme Court's decision in *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456 (1939), and subsequent decisions of the Third Circuit.

In *Princess Lida* the Supreme Court examined "whether the exercise of jurisdiction by a state court over the administration of a trust deprives a federal court of jurisdiction of a later suit involving the same subject matter."  305 U.S. at 457.  The question was important—and unusual—in that the state and federal courts had each enjoined the parties from proceeding in the other forum with regard to the trust at issue.  *See id.* at 461.  The Supreme Court upheld the state court decision to enjoin the petitioners from proceeding further in the federal court, explaining that "if the two suits are in rem, or quasi in rem, … the jurisdiction of the one court must yield to that of the other." *Id.* at 466.  The court "without jurisdiction," the Supreme Court explained, is the one in which "the suit [was] subsequently brought."  *Id.* at 468.

The Third Circuit has held that "*Princess Lida* applies when: (1) the litigation in both the first and second fora are *in rem* or *quasi in rem* in nature, and (2) the relief sought requires that the second court exercise control over the property in dispute and such property is already under the control of the first court."  *Dailey v. Nat'l Hockey League*, 987 F.2d 172, 176 (3d Cir. 1993).  Both factors are satisfied here.

As to the first *Princess Lida* factor, the Sale Proceeding is an *in rem* or *quasi in rem* action because this proceeding involves this Court's exercise of jurisdiction over the PDVH Shares to

satisfy judgment against PDVSA or the Republic.  Crystallex registered its judgment against Venezuela in this District not because Venezuela is located here, but because Delaware is where the res is located.  *See Glenmede Tr. Co. v. Dow Chem. Co.*, 384 F. Supp. 423, 433-34 (E.D. Pa. 1974) (applying *Princess Lida* doctrine after concluding that "in order to effectuate a judicial sale the [other] Court must assume control of the trust res and such a proceeding is necessarily quasi in rem").

The Alter Ego Actions are also functionally *quasi in rem*.  That is because, in seeking a declaration that PDVH has no distinct legal existence from PDVSA, the Alter Ego Claimants effectively would establish that the res in this Court's possession evidences nothing.  Girard Street's action filed in the Southern District of New York makes this explicit, and asks the Court to issue a turnover order attaching the shares of CITGO Holding, PDVH's sole asset.  *See* Girard St. Compl.  G&A Strategic and Gramercy's actions in the Southern District of Texas are less explicit, but nevertheless seek to hold PDVH liable for PDVSA's debts as its alter ego—an outcome that is the functional equivalent of an action to attach PDVH's assets.  *See* G&A Strategic Pet.; Gramercy Pet.  Those actions are therefore equivalent to actions *in rem* and should be treated accordingly.

The second *Princess Lida* factor is also satisfied.  As explained above, the Alter Ego Claimants seek to interfere with this Court's exclusive control of the res—and indeed are designed to defeat that control.  The CITGO Holding shares cannot be subject to another action if this Court is to "effectively exercise the jurisdiction vested in it."  *Princess Lida*, 305 U.S. at 467.[2]

---

[2] *See* Wright & Miller, 13F Fed. Prac. & Proc. Juris. § 3631 (3d ed., Oct. 2023) ("[W]hen a state or federal court of competent jurisdiction has obtained possession, custody, or control of particular property, that authority and power over the property may not be disturbed by any other court." (collecting cases)).

Because both factors are satisfied, application of the *Princess Lida* doctrine is mandatory. "*Princess Lida* is a mechanical rule which requires that the court in which the second suit is brought yield its jurisdiction." *Dailey*, 987 F.2d at 176 (internal quotation marks omitted); *see also Barbiero v. Kaufman*, 2013 WL 3939526, at *6 (E.D. Pa. July 30, 2013) (similar), *aff'd*, 580 F. App'x 107 (3d Cir. 2014). The Third Circuit's understanding of *Princess Lida* as compulsory aligns with the holdings of courts across the country.[3]

> **f. In evaluating the Injunction Motion, to what extent should the Court consider, and what weight should the Court give to, the fact that the Alter Ego Claimants previously participated in this Court's process and failed to obtain the relief they sought?**

The Alter Ego Claimants' prior participation in this Court's process makes the request for an injunction especially compelling here, although an injunction would be warranted even had they not previously participated. Under the All Writs Act, a federal court has authority to enjoin "a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *In re Diet Drugs*, 369 F.3d at 306 (internal quotation marks omitted). "One instance" where such injunctive relief is especially warranted "is when a federal court is entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases

---

[3] *See, e.g.*, *Noble Prestige Ltd. v. Galle*, 83 F.4th 1366, 1377 (11th Cir. 2023) (noting that the *Princess Lida* doctrine "is a principle of right and of law, and therefore of necessity" and "leaves nothing to discretion or mere convenience"); *Chapman v. Deutsche Bank Nat'l Tr. Co.*, 651 F.3d 1039, 1044 (9th Cir. 2011) ("Whether the [*Princess Lida*] doctrine is described as a rule of comity or subject matter jurisdiction, courts in this circuit are bound to treat the doctrine as a mandatory rule, not a matter of judicial discretion." (citations omitted)); *Crawford v. Courtney*, 451 F.2d 489, 492 (4th Cir. 1971) (stating that *Princess Lida* abstention is "compulsory," not discretionary); *Est. of Levin v. Wells Fargo Bank, N.A.*, 2023 WL 3750577, at *8 (D.D.C. June 1, 2023) (explaining that the *Princess Lida* doctrine is "a mandatory jurisdictional limitation") (quotation marks omitted).

from multiple districts." *Id.* (quotation marks omitted).  That well describes the present proceedings, which involve dozens of creditors from around the world, including the Alter Ego Claimants.

Although this Court has the inherent authority to issue all necessary orders to effectuate its decrees and protect the property in its custody, its power to enjoin the Alter Ego Claimants is further supported by the fact that the Alter Ego Claimants invoked the jurisdiction of this Court when they filed Attached Judgment Statements with the hope of receiving a distribution of proceeds from this Court's sale of the PDVH Shares.  D.I. 656, 672, 675.  After asserting their interests, the Alter Ego Claimants' position in this Court's priority waterfall ended up being less advantageous than they evidently hoped.  *See* D.I. 1249, at 7-9.  Now, in collateral lawsuits, they seek to interfere with this Court's exclusive control of the res they unsuccessfully vied for in this Court.  Because this Court has "inherent authority both over its docket and over the persons appearing before it," it has the power to put a stop to the Alter Ego Claimants' attempt to obtain from other jurisdictions relief that this Court denied them.  *In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 156 (3d Cir. 1997).

## CONCLUSION

Crystallex respectfully submits that this Court is authorized to, and should, grant the Special Master's Motion to Enjoin the Alter Ego Claimants from pursuing the Alter Ego Actions.

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

Miguel A. Estrada
Lucas C. Townsend
Adam M. Smith
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
Tel: (202) 955-8500
Fax: (202) 467-0539

Dated:  September 17, 2024

*/s/ Travis S. Hunter*
Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
dicamillo@rlf.com
moyer@rlf.com
hunter@rlf.com

*Attorneys for Plaintiff*

13