IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Case No. 17-mc-151-LPS |

**SIX CREDITORS' RESPONSE TO THE BOLIVARIAN REPUBLIC OF VENEZUELA AND PDVSA'S MOTION FOR A SHORT PAUSE IN THE SALE PROCESS**

  OI European Group B.V. ("OIEG"); Northrop Grumman Ship Systems, Inc., f/k/a Ingalls Shipbuilding, Inc., and now known as Huntington Ingalls Incorporated ("Huntington Ingalls"); ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd. (together, "ACL"); Rusoro Mining Limited; Koch Minerals Sàrl ("KOMSA") and Koch Nitrogen International Sàrl ("KNI," and, together with KOMSA, the "Koch Parties"); and Gold Reserve Inc. (collectively, the "Six Creditors")[1] hereby submit this response in opposition to *The Bolivarian Republic of Venezuela and PDVSA's Motion for a Short Pause in the Sale Process* (D.I. 1272) (the "Motion").[2]

---

[1] Each of the Six Creditors holds a writ of attachment on the PDVH Shares and each has been declared an Additional Judgment Creditor by this Court and holds an Attached Judgment (in accordance with, and each term as defined in, the *Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* (D.I. 481) (the "Sale Procedures Order")).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or *The Bolivarian Republic of Venezuela and PDVSA's Opening Brief in*

1

**RESPONSE**

Once again, the Republic and PDVSA have sought to delay the sale process and satisfaction of outstanding *attached* judgments through a meritless motion. *See*, *e.g.*, D.I. 1180 at 6 ("The Court shares the suspicions expressed by the Special Master and several creditors as to the Venezuela Parties' motivations for filing such a meritless motion at such a precarious time."). It is well settled law that "[t]he right to proceed in court should not be denied except under the most extreme circumstances." *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 193 (D.D.C. 2003) (internal quotations omitted). Furthermore, as this Court has previously acknowledged, "a judgment debtor has no right to demand, or expect, that a Court will delay a sale needed to effectuate its judgment until market conditions are most favorable to the debtor." D.I. 643 at 7.

Here, the Republic and PDVSA (1) have no express authority under the Sale Procedures Order to adjourn the sale process dates and deadlines without the Special Master's consent,[3] and (2) have not met their burden of proving that a stay is necessary and/or that the balance of harm weighs in favor of a stay.[4] *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) ("[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if . . . the stay for which he prays will work damage to someone else."); *see also Clinton v. Jones*, 520 U.S. 681, 708 (1997) ("The proponent of a stay bears the burden of establishing its need."). The

---

*Support of Their Motion for a Short Pause in the Sale Process* (D.I. 1273) (the "Venezuela Br."), as applicable.

[3] The Special Master's lack of consent is clear – the Special Master has stated that he intends to object to the Motion, *see* D.I. 1279, and the Special Master deadline for the filing of his final recommendation is now "on or about September 26, 2024." *See Oral Order Granting in Part and Denying in Part Special Master's Motion Requesting (I) Extension of Deadline to File the Notice of Final Recommendation and (II) Adjournment of Sale Hearing* (D.I. 1283).

[4] While the Republic and PDVSA style the Motion as a request for a "short pause," only the Special Master has the ability to adjourn (with Court permission) the sale process timelines and thus the burden and applicable standard to be applied here is that of obtaining a stay.

Republic and PDVSA seek a stay that provides no foreseeable benefit and only harms other parties – the Additional Judgment Creditors are harmed by every additional day that passes without their judgments being satisfied.  A four month "pause" here will do nothing more than incur additional costs and expenses for the Additional Judgment Creditors and, worse, incentivize other creditors to continue to file meritless motions in this and other courts that could – if each attempt leads to further delay in this process – create significant collection costs and risks for the Additional Judgment Creditors holding Attached Judgments, including by injecting uncertainty into the sale process and creating a chilling effect that could depress the value of the shares to be sold.  In addition to the harm caused to the Additional Judgment Creditors (and the corresponding lack of any harm to the Republic and PDVSA if a stay is denied), the alleged justifications for the Motion fail as they have in the past.

There has not been any material change in circumstances that justifies a stay at this time.  *First*, the ongoing litigation efforts of other creditors including the 2020 PDVSA bondholders have been present for years.  When previously confronted with these efforts (including with respect to the 2020 Bondholder litigation) and a request from the Republic and PDVSA to delay the launch of the sale process, this Court was "persuaded by the Special Master's insistence that the ongoing 2020 Bondholders' litigation will be no impediment to his efforts." *See* D.I. 643, at 11.  This Court reasoned that "the [Sale Procedures Order] anticipated, and adequately addresses, all of the concerns [ ] raised by the Venezuela Parties. . . .  if the Venezuela Parties' speculation that bids will be chilled actually materializes, the Special Master [(1)] has discretion to reject 'inadequate or insufficient' bids as well as bids that do not 'provide for a value maximizing sale transaction[,]' [or (2)] can also 'adjourn the Auction and/or the Sale Hearing.'" *Id*. at 10.  The same analysis holds true today.  While the Special Master has said that the CITGO Holding Pledge has had an

impact on the sale of the PDVH Shares, *see generally Special Master Motion to Enjoin the Alter Ego Claimants from Enforcing Claims Against the Republic or PDVSA by Recovering from PDVH or Its Subsidiaries in Other Forums* (D.I. 1248), the Sale Procedures Order expressly accounts for that impact. *See* Sale Procedures Order at ¶ 39. Furthermore, PDVSA's recent success in the Second Circuit in connection with the CITGO Holding Pledge is, if anything, reason to push forward with the sale process –any treatment, or lack of treatment, of the CITGO Holding Pledge will be an issue for this Court to determine in connection with the Special Master's recommendation at the sale hearing. A four-month pause will not change that.

*Second*, the recent Alter Ego Claimant actions in Texas and New York reason against delay as well. As the Republic and PDVSA acknowledge, (1) those actions were commenced in June and July 2024, *see* Venezuela Br. at 9, which raises questions as to why *now* is the time to request (or approve) a stay, and (2) the majority of the underlying judgments of the Alter Ego Claimants have been vacated and parties are seeking to enjoin and/or otherwise obtain appropriate limitations in any enforcement attempts. *See* Venezuela Br. at 9-10. As this Court is well aware, there have been, and will continue to be, creditors in this proceeding (and outside of this proceeding) that will take efforts to undermine or delay the sale process. If this Court were to stay this proceeding and/or adjourn sale deadlines every time a creditor took such an action, the sale process would never come to a close. Given the recent *success* of PDVSA in vacating the underlying judgments and the active measures that the Special Master is taking to address and prevent sale process interference, there is no reason for this Court to reward other creditors (or the Republic and PDVSA, for that matter) for those meritless efforts. A four-month stay will only embolden further collateral attacks.

*Finally*, the Republic and PDVSA point to recent elections in Venezuela as reason for a stay. There is no indication that the recent elections *will result* in a change of circumstances in Venezuela's treatment of claims against it and its instrumentalities, but even if there were, such changes are just as irrelevant today as they were *five years ago*. In 2019, when ruling on a four-month stay request from the Republic due to a change in government and potential change in how creditors would be treated, one Court ruled as follows:

> [T]he Guaido government moves for a 120-day stay of the proceedings, arguing that a stay is necessary to allow the newly installed government of President Guaido to conduct an orderly transition to democracy. But, as the Court stated during the May 2, 2019 status conference, a stay in this case would not lead to a different result and would only serve to delay plaintiff's entitlement to judgment in a case that has been pending for three years and has already been stayed once before. Therefore, the Court finds that a stay is unnecessary and unwarranted.

*OI European Group B.V. v. Bolivarian Republic of Venezuela*, 2019 WL 2185040, at *5 n.6 (D.D.C. May 21, 2019) (internal citation omitted). As in 2019, it remains true today that "the obligations of a foreign state are unimpaired by a change in that state's government." *Republic of Iraq v. ABB AG*, 768 F.3d 145, 164 (2d Cir. 2014). Thus, there is no change that *could* take place that would justify postponing enforcement efforts of the Additional Judgment Creditors. Regardless, the Venezuela Parties' years-long "hope" (Venezuela Br. at 1, 8) for a consensual global restructuring remains as speculative as ever. And even if it were to become a reality, it would be an issue for the parties and this Court to assess at that time, rather than today. The sale process should, and must, continue in accordance with the Court's prior orders.

## CONCLUSION

For the reasons stated above, the Motion should be denied.

Dated: September 24, 2024

| **MORGAN, LEWIS & BOCKIUS LLP**<br><br>By: /s/ *Jody C. Barillare*<br>Jody C. Barillare (#5107)<br>1201 N. Market St., Suite 2201<br>Wilmington, DE 19801<br>Telephone: 302-574-3000<br>Facsimile: 302-574-3001<br>jody.barillare@morganlewis.com<br><br> - and -<br><br>Jonathan Albano (*pro hac vice*)<br>Christopher L. Carter (*pro hac vice*)<br>One Federal Street<br>Boston MA 02110<br>Telephone: 617-341-7700<br>Facsimile: 617-341-7701<br>jonathan.albano@morganlewis.com<br>christopher.carter@morganlewis.com<br><br>**SEQUOR LAW, P.A.**<br>Edward H. Davis, Jr. (*pro hac vice*)<br>Fernando J. Menendez (*pro hac vice*)<br>1111 Brickell Ave., Suite 1250<br>Miami, FL 33131<br>Telephone: 305-372-8282<br>Facsimile: 305-372-8202<br>edavis@sequorlaw.com<br>fmenendez@sequorlaw.com<br><br>*Attorneys for OI European Group B.V.* | **PACHULSKI STANG ZIEHL & JONES, LLP**<br><br>By: /s/ *Peter J. Keane*<br>Laura Davis Jones (#2436)<br>Peter J. Keane (#5503)<br>919 North Market Street, Suite 1600<br>P.O. Box 8705<br>Wilmington, DE 19899-8705<br>Telephone: 302-652-4100<br>ljones@pszjlaw.com<br>pkeane@pszjlaw.com<br><br>**ALSTON & BIRD LLP**<br>Alexander A. Yanos (*pro hac vice*)<br>Robert Poole (*pro hac vice*)<br>90 Park Avenue, 15th Floor<br>New York, NY 10016-1387<br>Telephone: 212-210-9400<br>alex.yanos@alston.com<br>robert.poole@alston.com<br><br>*Attorneys for: (i) Northrop Grumman Ship Systems, Inc., f/k/a Ingalls Shipbuilding, Inc. and now known as Huntington Ingalls Incorporated, and (ii) Koch Minerals Sàrl and Koch Nitrogen International Sàrl* |
| **ASHBY & GEDDES**<br><br>By: /s/ *F. Troupe Mickler IV*<br>F. Troupe Mickler IV (#5361)<br>Marie M. Degnan (#5602)<br>Randall J. Teti (#6334)<br>500 Delaware Ave., 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>Telephone: 302-654-1888<br>tmickler@ashbygeddes.com | **DLA Piper LLP (US)**<br><br>By: /s/ *Craig Martin*<br>R. Craig Martin (#005032)<br>1201 North Market Street<br>Suite 2100<br>Wilmington, DE 19801<br>Telephone: 302-468-5655<br>Fax: 302-778-7834<br>craig.martin@us.dlapiper.com |

| | |
|---|---|
| mdegnan@ashbygeddes.com<br>rteti@ashbygeddes.com<br><br>**RILEY & JACOBSON, PLC**<br>Joshua S. Bolian (*pro hac vice*)<br>Jared A. Hagler (*pro hac vice*)<br>1906 West End Avenue<br>Nashville, Tennessee 37203<br>Telephone: 615-320-3700<br>jbolian@rjfirm.com<br>jhagler@rjfirm.com<br><br>*Attorneys for ACL1 Investments Ltd., ACL2 Investments Ltd. and LDO (Cayman) XVIII Ltd.* | - and -<br><br>James E. Berger (*pro hac vice*)<br>Charlene C. Sun (*pro hac vice*)<br>Joshua S. Wan (*pro hac vice*)<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Telephone: 212-335-4715<br>Fax: 212-884-8715<br>James.berger@us.dlapiper.com<br>Charlene.sun@us.dlapiper.com<br>Joshua.wan@us.dlapiper.com<br><br>*Attorneys for Rusoro Mining Limited* |
| **WOMBLE BOND DICKINSON (US) LLP**<br><br>By: */s/ Matthew P. Ward*<br>Kevin J. Mangan (#3810)<br>Matthew P. Ward (#4471)<br>Stephanie S. Riley (#5803)<br>1313 N. Market St., Suite 1200<br>Wilmington, DE 19801<br>Telephone: 302-252-4320<br>Kevin.mangan@wbd-us.com<br>Matthew.ward@wbd-us.com<br>Stephanie.riley@wbd-us.com<br><br>**NORTON ROSE FULBRIGHT US LLP**<br>Matthew H. Kirtland (*pro hac vice*)<br>799 9th Street NW, Suite 1000<br>Washington, DC 20001<br>Telephone: 202-662-0200<br>Matthew.kirtland@nortonrosefulbright.com<br><br>- and -<br><br>Katherine G. Connolly (*pro hac vice*)<br>555 California Street, Suite 3300<br>San Francisco, CA 94101<br>Telephone: 628-231-6816<br>Katie.connolly@nortonrosefulbright.com<br><br>*Attorneys for Gold Reserve Inc.* | |