# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | |
| *Plaintiff*, | |
| v. | No. 1:17-mc-151-LPS |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | |
| *Defendant*. | |

## OPPOSITION OF GRAMERCY, G&A, AND GIRARD STREET TO SPECIAL MASTER'S MOTION FOR AN INJUNCTION

Andrew H. Sauder (Bar No. 5560)
**DAILEY LLP**
1201 N. Orange St., Ste. 7300
Wilmington, DE 19801
(302) 415-3560
asauder@DaileyLLP.com

Michael Baratz*
Emma Marshak*
**STEPTOE LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
mbaratz@steptoe.com
emarshak@steptoe.com

*Counsel to G&A Strategic Investments I LLC,*
*G&A Strategic Investments II LLC,*
*G&A Strategic Investments III LLC,*
*G&A Strategic Investments IV LLC,*
*G&A Strategic Investments V LLC,*
*G&A Strategic Investments VI LLC,*
*G&A Strategic Investments VII LLC, and*
*Girard Street Investment Holdings LLC*

Theodore A. Kittila (Bar No. 3963)
**HALLORAN FARKAS + KITTILA LLP**
5722 Kennett Pike
Wilmington, DE 19807
(302) 257-2025
tk@hfk.law

Mark W. Friedman*
William H. Taft V*
Carl Micarelli*
Juan Fandiño*
Caroline Wallace*
**DEBEVOISE & PLIMPTON LLP**
66 Hudson Boulevard
New York, NY 10001
(212) 909-6000
mwfriedman@debevoise.com
whtaft@debevoise.com
cmicarelli@debevoise.com
jfandino@debevoise.com
chwallace@debevoise.com

*Counsel to Gramercy Distressed*
*Opportunity Fund LLC*

*Additional counsel listed on following page*

\* Admitted *pro hac vice*

Robert Drain*
Lisa Laukitis*
**SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP**
One Manhattan West
New York, NY 10001
(212) 735-3000
robert.drain@skadden.com
lisa.laukitis@skadden.com

*Counsel to Gramercy Distressed Opportunity
Fund LLC, G&A Strategic Investments I LLC,
G&A Strategic Investments II LLC, G&A
Strategic Investments III LLC, G&A Strategic
Investments IV LLC, G&A Strategic
Investments V LLC, G&A Strategic
Investments VI LLC, G&A Strategic
Investments VII LLC, and Girard Street
Investment Holdings LLC*

* Admitted *pro hac vice*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ....................................................................................... 4

I.  Crystallex Obtains an Attachment and Order of Sale of PDVSA's PDVH Shares, Which Does Not Affect Any Other Property of PDVSA or PDVH. ................................. 4

II.  The Court Appoints a Special Master to Facilitate the Sale. ............................... 5

III.  The Court Adopts a Sale Procedures Order That Preserves Creditors' Ability to Pursue Other Assets of PDVSA or PDVH. ..................... 5

IV.  The Opposing Creditors Seek to Establish PDVH's Direct Liability............... 9

V.  The Special Master Moves to Permanently Enjoin the Opposing Creditors' Actions. ...................................................................... 12

ARGUMENT ............................................................................................................ 13

I.  The Special Master Lacks Standing to Assert a Claim for Injunctive Relief Against the Opposing Creditors........................................... 13

II.  The All Writs Act Does Not Empower the Court to Grant the Injunction. ...................... 15

A.  The Opposing Creditors' Actions do not interfere with this Court's *in rem* or *quasi in rem* jurisdiction over the PDVH Shares. ............................. 16

B.  The Requested Injunction Is Not Necessary or Appropriate to Prevent Frustration of the Court's Priority Order........................ 19

C.  The Court Never Undertook to Sell PDVSA's Assets "Free and Clear" of All Encumbrances, and the Law Does Not Permit Such an Order................ 21

D.  The Actions Are Not Duplicative as Required by the First-Filed Rule. ...................... 26

III.  The Special Master's Proposed Injunction Is Inappropriate........................... 27

A.  The Court Lacks Personal Jurisdiction Over Girard Street ........................ 27

B.  The Special Master Has Not Met His Burden of Establishing the Required Elements for a Permanent Injunction. ........................ 29

C.  The Proposed Injunction Is Impermissibly Vague. ........................ 34

IV.  If the Court Finds That the Injunction Is Not Precluded as a Matter of Law, It Should Order Limited Discovery........................ 34

CONCLUSION ...................................................................................................... 35

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abdulrahman v. Ashcroft*, 330 F.3d 587 (3d Cir. 2003) ...................................................14

*Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531 (1987)..........................29, 30

*Atl. Prop. Grp. v. Deibler*, 1994 WL 45433 (Del. Super. Jan. 6, 1994), *aff'd* 652
    A.2d 553 (Del. 1995) ...................................................................................................23

*Bank of Augusta v. Earle*, 38 U.S. 519 (1839)...............................................................33

*Berger v. Zeghibe*, 666 Fed. App'x 119 (3d Cir. 2016).............................................20, 29

*Briehler v. Poseidon Venture, Inc.*, 502 A.2d 821 (R.I. 1986), *cert. denied*, 476
    U.S. 1166 (1986)..........................................................................................................23

*Carlough v. Amchem Prods., Inc.*, 10 F.3d 189 (3d Cir. 1993) ....................................27

*Chavez v. Dole Food Co., Inc.*, 836 F.3d 205 (3d Cir. 2016) ...........................27, 28, 31

*Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140 (1988) ................................................27

*Clinton v. Goldsmith*, 526 U.S. 529 (1999) ..............................................................29, 31

*Commissariat a L'Energie Atomique v. Dell Computer Corp.*, 2004 WL 406351
    (D. Del. Mar. 3, 2004)..................................................................................................35

*Cottingham v. Tutor Perini Bldg. Corp.*, 2016 WL 54916 (E.D. Pa. Jan. 5, 2016).....................29

*Dailey v. Nat'l Hockey League*, 987 F.2d 172 (3d Cir. 1993) ......................................17

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ..............................................................28

*Deibler v. Atl. Properties Grp., Inc.*, 652 A.2d 553 (Del. 1995) ...................................23

*Donovan v. City of Dallas*, 377 U.S. 408 (1964)..........................................................32

*E. Sav. Bank, FSB* v. *CACH, LLC*, 55 A.3d 344 (Del. 2012) .......................................23

*E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969 (3d Cir. 1988)................................26

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)................................29, 31, 33

*Fischer v. American United Life Ins. Co.*, 314 U.S. 549 (1942)...................................16

*Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322 (3d Cir. 2007) ........15, 26, 29

*Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071 (2024).........................................25

*Honeywell Int'l Inc. v. Int'l Union, UAW*, 502 F. App'x 201 (3d Cir. 2012)...............27

*IFC Interconsult AG v. Safeguard Int'l Partners LLC*, 438 F.3d 298 (3d Cir. 2006) ....................................................................................................................18, 19

*In re Ampal-American Isr. Corp.*, 2015 WL 5176395 (Bankr. S.D.N.Y. Sept. 2, 2015) ...........................................................................................................................24

*In re Asbestos Prod. Liab. Litig. (No. VI)*, 921 F.3d 98 (3d Cir. 2019)........................28

*In re Coast to Coast, LLC*, 661 B.R. 621 (Bankr. N.D. Ill. 2024).................................25

*In re Cred Inc*, 2021 Bankr. LEXIS 518 (Bankr. D. Del. Feb. 26, 2021)......................25

*In re Diet Drugs*, 282 F.3d 220 (3d Cir. 2002) .......................................................28, 34

*In re Insilco Tech, Inc.*, 351 B.R. 313 (Bankr. D. Del. 2006)........................................24

*In re Melasecca*, 2019 WL 6045476 (Bankr. E.D. Pa. Nov. 14, 2019).........................25

*In re Mobile Telecomm. Techs., LLC*, 243 F. Supp. 3d 478 (D. Del. 2017)............26, 27

*In re Mordini*, 491 B.R. 567 (Bankr. D. Colo. 2013) ...................................................25

*In re Parlement Techs., Inc.*, 661 B.R. 722 (Bankr. D. Del. 2024) ...............................25

*In re Telebrands Corp.*, 824 F.3d 982 (Fed. Cir. 2016)................................................26

*In re Tower Automotive, Inc.*, 356 B.R. 598 (Bankr. S.D.N.Y. 2006)..........................24

*In re Wilson*, 2013 WL 3880053 (Bankr. D.D.C. July 24, 2013).................................25

*In re Winstar Commc'ns Inc.*, 284 B.R. 40 (Bankr. D. Del. 2002)...............................24

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)......................................................28

*ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351 (5th Cir. 1978)..................................15

*Julian v. Central Trust Co.*, 193 U.S. 93 (1904)...........................................................17

*Kline v. Burke Const. Co.*, 260 U.S. 226 (1922)......................................................16, 32

*Koehler v. Bank of Bermuda Ltd.*, 911 N.E.2d 825 (N.Y. 2009)..................................16

*Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694 (Del. Ch. 2021) .......18, 22

*Marxe v. Jackson*, 833 F.2d 1121 (3d Cir. 1987) .........................................................29

*Nexans Inc. v. Belden Inc.*, 966 F. Supp. 2d 396 (D. Del. 2013)...................................................26

*Noble Prestige Ltd. v. Galle*, 83 F.4th 1366 (11th Cir. 2023) .......................................................17

*O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312 (3d Cir. 2007)........................................28

*Peacock v. Thomas*, 516 U.S. 349 (1996)....................................................................................19

*Philadelphia Newspapers v. Gannett Satellite Info. Network, Inc.*, 1998 WL
    404820 (E.D. Pa. July 15, 1998)...........................................................................................35

*Phillips Beverage Co. v. Belvedere, S.A.*, 204 F.3d 805 (8th Cir. 2000).....................................21

*Polius v. Clark Equip. Co.*, 802 F.2d 75 (3d Cir. 1986) ...............................................................22

*Praxair, Inc. v. ATMI, Inc.*, 479 F. Supp. 2d 440 (D. Del. 2007).................................................31

*Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456 (1939).........................................17

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) ...............................................................32

*Riehle v. Margolies*, 279 U.S. 218 (1929) ...................................................................................16

*Samsung Elecs. Co. v. Imperium Holdings (Cayman), Ltd.*, 764 F. App'x 199 (3d
    Cir. 2019) ...............................................................................................................................31

*Schweiker v. McClure*, 456 U.S. 188 (1982) ...............................................................................14

*Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375 (4th Cir. 2018)...............................................18

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ...............................................................................13

*Taylor v. Dover Downs, Inc.*, 543 F. Supp. 3d 39 (D. Del. 2021) ................................................22

*Texaco Refining and Mktg, Inc. v. Del. River Basin Com'n*, 824 F. Supp. 500 (D.
    Del. 1993) ...............................................................................................................................22

*U.S. Army Corps of Eng'rs*, 424 F.3d 1117 (11th Cir. 2005) ......................................................29

*United States v. Int'l Bhd. of Teamsters*, 728 F. Supp. 1032 (S.D.N.Y. 1990) ...........................20

*United States v. N.Y. Tel. Co.*, 434 U.S. 159 (1977)....................................................................20

*United States v. Nordic Village, Inc.*, 503 U.S. 30 (1992)...........................................................16

*Warth v. Seldin*, 422 U.S. 490 (1975) ..........................................................................................14

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ...........................................................30

*Zenith Radio Corp. v. Hazeltine Rsch, Inc.*, 395 U.S. 100 (1969)..................................................27

**Statutes**

11 U.S.C. § 105(a) ....................................................................................................25

11 U.S.C. § 362(a) ....................................................................................................25

11 U.S.C. § 363(f) .....................................................................................................24

28 U.S.C. § 1334(b) ..................................................................................................24

28 U.S.C. § 1651 .............................................................................................. *passim*

28 U.S.C. § 2004 .......................................................................................................23

**Other Authorities**

Fed. R. Civ. P. 26(d) .................................................................................................34

Fed. R. Civ. P. 69 .........................................................................................2, 18, 19

## INTRODUCTION

There are currently over one-hundred actions pending in state and federal courts against PDVH and its subsidiaries, any of which, if successful, could indirectly reduce the value of PDVSA's shares in PDVH.[1]  In addition to the PDVSA 2020 Bondholders' claim against PDVH, these actions include stayed claims by Crystallex and ConocoPhillips alleging fraudulent conveyance that, while presently stayed, would be revived if their judgments are not fully satisfied by the sale of the PDVH Shares.[2]  In furtherance of their own judgment enforcement efforts, the Opposing Creditors filed three actions, currently pending in courts in New York and Texas, seeking to impose *in personam* liability on PDVH for the obligations of PDVSA on the basis of reverse veil-piercing.  The Special Master does not contest the merits of the Opposing Creditors' veil-piercing claims.  To the contrary, precisely because the claims should succeed, he is concerned that they diminish the ***value*** of the PDVH Shares, and thus seeks an extraordinary remedy to deny the Opposing Creditors an adjudication on the merits by means of injunction.  D.I. 1249 ("**Br.**") at 4.  Because no action pending before this Court has addressed, or will address, the Opposing Creditors' alter ego claims; and because those claims, which seek no relief against the PDVH

---

[1]   Excluding the Opposing Creditors' Actions, there are at least 122 open cases against Citgo Petroleum Corp., Citgo Holding, and PDVH, seeking billions of dollars in the aggregate.  *See* Declaration of William H. Taft V ("**Taft Decl.**") ¶ 5 filed herewith.  Capitalized terms have the meanings specified in the Sale Procedures Order, D.I. 481 ("**SPO**") and the Opposing Creditors' Opposition to the Special Master's Motion for Expedited Briefing of His Injunction Motion, D.I. 1254, unless otherwise noted.  All docket citations are to the *Crystallex* docket, No. 1:17-mc-00151-LPS, unless otherwise noted.

[2]   *Crystallex International Corp. v. Petróleos de Venezuela, S.A.*, No. 15-cv-1082-LPS (D. Del.) ("***Crystallex I***"); *Crystallex International Corp. v. PDV Holding, Inc., et al.*, No. 16-cv-1007-LPS (D. Del.) ("***Crystallex II***"); *ConocoPhillips Petrozuata B.V. v. Petróleos de Venezuela S.A.*, No. 16-cv-904 (D. Del.) ("***ConocoPhillips I***"); *ConocoPhillips Petrozuata B.V., et al. v. Petroleos de Venezuela S.A., et al.*, No. 17-cv-00028 (D. Del.) ("***ConocoPhillips II***").

Shares, do not interfere with the Court's jurisdiction over those shares; the Court lacks authority to enjoin the Opposing Creditors from pursuing judgments against PDVH in other courts.

The Special Master's apparent capitulation to unnamed bidders' demand for a release of claims against PDVH and its subsidiaries marks a radical and unwarranted departure from the seven-year history of this enforcement action. The Court, the Sale Process Parties, and the Special Master have consistently recognized that this Fed. R. Civ. P. 69 action is limited to the sale of a specific asset—the PDVH Shares—over which the Court exercises *in rem* or *quasi in rem* enforcement jurisdiction. The Opposing Creditors do not seek to "jump the line" to participate in the proceeds from those shares' sale or otherwise affect the priority of attachments. Rather, the Actions seek legally and factually distinct relief: an *in personam* declaration of liability against PDVH. The Court has already ruled, following Supreme Court and Third Circuit precedent, that its limited ancillary jurisdiction in this action does not extend to claims seeking to establish primary liability for the obligations of Venezuela like the Opposing Creditors' claims against PDVH. Because the Opposing Creditors' Actions seek a different kind of relief against a different party, the purported overlap with this case does not exist and cannot support an injunction.

Nor do the Opposing Creditors' Actions create the risk of conflicting judgments affecting the disposition of the PDVH Shares. Arguments that the Opposing Creditors' Actions, if successful, would render the PDVH Shares a legal "nullity," thereby undermining this Court's jurisdiction, mischaracterize the nature of the Opposing Creditors' claims seeking *in personam* judgments against PDVH. Br. at 20; *See* D.I. 1277 ("**Crystallex Br.**") at 4; D.I. 1278 ("**ConocoPhillips Br.**") at 1. If successful, the Opposing Creditors' Actions would not cause PDVH to cease to exist as a legal entity. In the same manner, PDVSA did not cease to exist when

Crystallex established that it was the alter ego of Venezuela; rather, the Court required each subsequent creditor to independently establish grounds to pierce PDVSA's corporate veil.[3]

There is nothing surprising or unfair about creditors seeking judgments directly against PDVH.  Consistent with the Court's limited jurisdiction over the PDVH Shares and the judicial sale precedents cited by this Court, the SPO does not purport to restrict future enforcement actions against assets other than the shares themselves or provide for a release of claims against PDVH. The Court, the Special Master, ConocoPhillips and Crystallex have each recognized that claims against PDVH would not be released upon the sale of the PDVH Shares, and that sophisticated bidders can assess the risks associated with such contingent liabilities, belying the claim that the Opposing Creditors' Actions pose an existential threat to the Sale Process.  *See* D.I. 583 at 7 ("Potential Bidders will be fully capable of valuing the PDVH Shares and the CITGO operations agnostic to capital structure."); D.I. 582 at 7 ("[B]idders will simply price in their view of the risk associated with currently pending litigation when formulating their bids"); D.I. 1153 at 4 (same). Indeed, the first suggestion that the Sale Process might include additional "free and clear" relief from claims against assets other than the PDVH Shares was in the September 9, 2024 declaration of Raymond B. Strong III in support of the Motion ("**Strong Declaration**"), which describes the alleged concerns of unnamed bidders about purchasing the shares of a company that itself is subject to unliquidated claims.  Tellingly, that declaration never reveals Mr. Strong's own expectations, based on his experience with stock sales, regarding the treatment of claims against PDVH, or

---

[3]    *See OI European Group B.V. v. Bolivarian Republic of Venezuela*, No. 19-mc-0290-LPS, D.I. 26 at 16 (D. Del., Dec. 12, 2019) ("Since collateral estoppel does not apply, any creditor seeking to place itself in a situation similar to Crystallex will have to prove that PDVSA is and/or was the Republic's alter ego on whatever pertinent and applicable date.").

whether the bidders' professed expectations had any basis in fact or are merely a last-minute gambit to sweeten the deal terms at the Opposing Creditors' expense.

Because the Opposing Creditors' Actions are not parallel actions involving the same claims or the same *res* that are before this Court, neither the All Writs Act, the first-filed doctrine, nor the *Princess Lida* doctrine permit an injunction. The requested relief is unwarranted because: (1) the Special Master lacks standing; (2) the All Writs Act does not empower the Court to enjoin the Opposing Creditors Actions; (3) the Court lacks *in personam* jurisdiction over Girard Street; (4) the Special Master has not carried his burden to prove each of the traditional requirements for a permanent injunction, including irreparable harm; (5) the proposed injunction is impermissibly vague, as the Opposing Creditors are not in a position to know what conduct, if any, might actually interfere with what remains a confidential sale process; and (6) the Strong Declaration rests on inadmissible hearsay, such that the Motion should be denied or discovery would be needed if the Court were to permit the Special Master more time to carry his factual burden on the merits.

## FACTUAL BACKGROUND

I.      **Crystallex Obtains an Attachment and Order of Sale of PDVSA's PDVH Shares, Which Does Not Affect Any Other Property of PDVSA or PDVH.**

The proceeding before this Court is for enforcement of judgments against one specific asset: PDVSA's shares in PDVH. On June 19, 2017, Crystallex registered in this District a judgment on an arbitral award against Venezuela. D.I. 1. On August 14, 2017, Crystallex moved for a writ of *fieri facias* against the PDVH Shares on the theory that PDVSA is an alter ego of Venezuela. D.I. 2. On August 9, 2018, the Court granted Crystallex's attachment motion. D.I. 79.

In its order granting Crystallex's motion, the Court emphasized that its jurisdiction in this case extended only to specified property, the PDVH Shares. D.I. 83 at 17. The Court explained that it "views the present case as involving garnishment, seeking only to establish secondary

liability (by attaching certain specified property), rather than an action seeking to impose primary liability on PDVSA." *Id.*; D.I. 234 at 9 ("As Crystallex asked, the Court held only that specified PDVSA property (the shares of PDVH) could be used to satisfy Venezuela's debt to Crystallex."). Other judgment creditors, including Gramercy, also obtained writs attaching the PDVH Shares, which the Court ruled are junior to Crystallex's attachment.  D.I. 646 at 20–22, 26.

## II.    The Court Appoints a Special Master to Facilitate the Sale.

The Court appointed the Special Master to facilitate the sale, but the Special Master is neither a receiver nor a trustee for creditors.  *See* D.I. 234 at 36–37 (appointing "a special master to oversee the day-to-day and detailed implementation of the sales procedures," and "fulfill ***the Court's and the U.S. Marshal's duties*** to prepare for and conduct the sale.") (emphasis added); D.I. 277 ¶ 22 ("The Special Master, as an appointee of the Court . . . owes duties to the Court and ***does not owe fiduciary or other duties to any of the Parties, or to creditors of any Parties.***") (emphasis added).  The Special Master's judicial role reflects discussions with the parties, where the Court asked if it "would have the discretion to, for instance, appoint a receiver or a Special Master or some sort of expert to help me and help the marshals."  D.I. 226 at 80:3–6.  Crystallex responded that the appointment of a ***special master*** could be helpful, *id.* at 80:14–16, 80:22–24, but insisted that appointment of a ***receiver***, who ordinarily would "take[] control of the company" would be inappropriate.  *Id.* at 80:19, 80:22 (emphasis added).  Crystallex's counsel emphasized that "this [is] an execution sale" and not "a bankruptcy-type situation, which . . . is completely different."  *Id.* at 81:12–14.

## III.   The Court Adopts a Sale Procedures Order That Preserves Creditors' Ability to Pursue Other Assets of PDVSA or PDVH.

The Court issued the SPO detailing the procedure for the sale of the PDVH Shares and approving the bidding procedures.  D.I. 481.  While the SPO provides for a transfer of "good and

marketable title to *the PDVH Shares* to the Successful Bidder free and clear of all claims, encumbrances and liabilities," *id.* ¶ 14 (emphasis added), it does not promise to extinguish any of PDVH's liabilities.

The Court has further recognized that creditors of Venezuela and PDVSA remain free to pursue collection efforts against assets other than the PDVH Shares.  Most recently, on February 15, 2024, the Court denied Gramercy's and two other judgment creditors' motion for an order requiring creditors who obtained writs of attachment in 2023 to be paid in equal priority from the sale proceeds (D.I. 893), stating that:

> It bears emphasis that nothing the Court is doing eliminates or even reduces the value of the moving creditors' claims.  If they fail to collect on their judgments as part of the ongoing sale process, *they will remain free to pursue other collection efforts*.

D.I. 963, ¶ 4 n.7 (emphasis added).

In initiating actions directly against PDVH, the Opposing Creditors join multiple other judgment holders against Venezuela and PDVSA pursuing recovery in other courts, including the PDVSA 2020 Bondholders' litigation concerning certain notes issued by PDVSA allegedly secured with a pledge of 50.1% of PDVH's equity in CITGO Holding.  *Petróleos de Venezuela, S.A. v. MUFG Union Bank N.A.*, No. 19-cv-10023-KPF (S.D.N.Y. filed Oct. 29, 2019).  On September 29, 2022, the Court made clear that the PDVSA 2020 Bondholders are not Sales Process Parties and that nothing in the Court's orders "authorizes the Special Master to take any role in disposing of the PDVSA 2020 Bondholders' claim."  D.I. 479.  Instead, the Court authorized the Special Master to take "limited steps" to engage in discussion with the PDVSA 2020 Bondholders to "help further a value-maximizing transaction."  *Id.*; SPO ¶ 39.  In recognition that the sale of the PDVH Shares will not dispose of claims against PDVH itself, bidders were

instructed to disclose their "proposed treatment of the outstanding indebtedness of PDVH and its subsidiaries and the purported pledge of shares of CITGO Holding."  D.I. 480-1 at 45.

Consistent with the understanding that claims against PDVH did not jeopardize the Court's jurisdiction over the sales process, in June 2023, the Special Master recommended that "the Court should permit the Marketing Process to proceed without further delay" despite the ongoing PDVSA 2020 Bondholders litigation, D.I. 583 ¶ 3, because bidders could price the risk of litigation against PDVH into their bids.  The Special Master advised the Court:

> Evercore has advised me that it believes Potential Bidders will be fully capable of valuing the PDVH Shares and the CITGO operations agnostic to capital structure, including whether claims held by the PDVSA 2020 Bondholders *or other judgment creditors* will need to be satisfied by the Sale Transaction proceeds.

*Id.* ¶ 10 (emphasis added).  Crystallex echoed the Special Master's understanding that "bidders will simply price in their view of the risk associated with currently pending litigation when formulating their bids."  D.I. 582 at 7.  At a June 26, 2023 hearing, counsel for Crystallex reaffirmed:

> A bidder who bids on a company always has to consider what the litigation is that is attendant [on] that company.  There may be subsidiaries that are involv[ed in] litigation.  Nobody says let's wait until the fullness of time to see how it all turns out and then we can have a transaction.  All of those risks are appr[a]ised by the market.  Sophisticated parties know how to deal with those.

D.I. 640 at 47:10–21.

On July 17, 2023, the Court concluded that uncertainties regarding the total claim pool, the PDVSA 2020 Bondholders' litigation, and other events that may impact the bids' pricing should not delay the Sale Process.  If bids "will be chilled" by uncertainties, the Court explained, the Special Master could still fulfill his duty to effectuate the SPO in three alternative ways: (1) "reject 'inadequate or insufficient' bids as well as bids that do not 'provide[] for a value maximizing sale transaction,'" (2) adjourn the Sale Hearing, or (3) "choose not to select a Successful Bid."  D.I.

643 at 10.  Thus the Court made clear that the Special Master's mandate did not include completing

the sale of the PDVH Shares at all costs (such as by blocking creditors' rights to pursue other

assets) and could be satisfied by recommending not to proceed with the sale, presumably including

to permit further negotiations.

Even as recently as a few months ago, the Special Master and ConocoPhillips reaffirmed

that the Sale Process does not require disposition of claims against PDVH.  The Special Master

had proposed a bid letter that called on bidders to "assume that the CITGO Equity Pledge will be

released in advance of, or in connection with, implementation of the Proposed Transaction"—or,

"[i]n the event you propose to address the CITGO Equity Pledge in a manner other than a release

negotiated and implemented by the Special Master, please so indicate in your Proposal."  D.I.

1145-1, Ex. A, at 2.  The Venezuela Parties objected to addressing the PDVSA 2020 Bondholders'

claims, noting that the "Court has not empowered the Special Master to serve as a global mediator

or bankruptcy judge to resolve all claims adjacent to PDVH."  D.I. 1144 ¶ 13.

The Special Master did not dispute his limited role with respect to claims against PDVH's

assets.  On the contrary, he assured the Court that "[t]he Confidential Bid Letter ***does not grant***

***the Special Master power to implement a release of the 2020 CITGO Equity Pledge***, nor does it

entail the imposition or initiation of an agreement with the PDVSA 2020 Bondholders."  D.I. 1155

at 7 (emphasis added).  Rather, the Special Master indicated that he was simply inviting proposed

resolutions from the bidders.  *Id.*  ConocoPhillips, in opposing Venezuela's efforts to adjourn the

Sale Process until disposition of the PDVSA 2020 Bondholders' claims, acknowledged that if the

pledge were declared valid "it would affect the value of the PDVH shares being sold in this

process," but saw no reason for that to hold up the Sale Process because the "Court previously

found 'credible' the argument made by counsel to Crystallex that 'bidders will simply price their

view of the risk associated with currently pending litigation when formulating their bids.'"  D.I. 1153 at 2–4 (citations omitted).  Before overruling Venezuela's objections, D.I. 1174, the Court confirmed that "any sophisticated entity contemplating participating in our sale process knows it's going to have to 'address the bondholders,' ***it's buying that potential liability*** . . . ."  Ex. 16 at 13:20–23; 14:3–7 (emphasis added).[4]

Since the Launch Date, the Special Master has conducted a confidential bidding process, including the distribution of marketing materials to Potential Bidders as well as "confidential negotiations and dialogue."  D.I. 1155 at 2.  The Motion does not identify any basis on which the bidders could form an understanding, contrary to the extensive record discussed above, that PDVH's liabilities would be extinguished upon the sale of the PDVH Shares.

## IV.    The Opposing Creditors Seek to Establish PDVH's Direct Liability.

Gramercy is the assignee of two judgments of the United States District Court for the District of Columbia on arbitration awards against Venezuela (the "**Tenaris Judgments**").[5]

The G&A parties are holders of promissory notes originally issued by PDVSA to Schlumberger Venezuela, S.A. (the "**SLB Promissory Notes**").  Girard Street, a Cayman Islands limited liability company headquartered in Connecticut, holds a promissory note originally issued by PDVSA to Servicios Halliburton de Venezuela, S.A. (the "**HAL Promissory Note**" and, with the SLB Promissory Notes, the "**Promissory Notes**").  All the Promissory Notes were guaranteed by PDVSA's subsidiary PDVSA Petróleo, S.A. ("**Petróleo**").  In December 2023, G&A and Girard Street sued PDVSA and Petróleo on the Promissory Notes in the United States District

---

[4]    "Ex." refers to exhibits to the Taft Decl.

[5]    *See* No. 23-mc-378-LPS, D.I. 1; No. 23-mc-379-LPS, D.I. 1.

Court for the Southern District of New York ("**SDNY**").  On March 8, 2024, Judge Rakoff entered default judgments against PDVSA and Petróleo on the Promissory Notes. Ex. 2; Ex. 7.[6]

G&A and Girard Street have not registered their judgments in Delaware, moved for a writ of attachment, or sought relief from this Court.  Indeed, they had not even obtained judgments against PDVSA by the Additional Judgment Deadline set by the Court, and so had nothing to enforce.  Consistent with the SPO's requirements for pursuing a claim against the PDVH shares, on February 20, 2024, Gramercy became an Additional Judgment Creditor on the Tenaris Judgments.  *See* D.I. 969-1.  It obtained a writ of attachment over the PDVH Shares and served it on April 5, 2024.  *See* No. 1:23-mc-378, D.I. 69 & 70; No. 1:23-mc-379, D.I. 67 & 68.

In accordance with their rights "to pursue other collection efforts" outside the Sale Process, D.I. 963, ¶ 4 n.7, the Opposing Creditors filed actions in June and July 2024 seeking to find PDVH liable for their judgments against PDVSA and Venezuela.  On June 10, 2024, Girard Street filed suit in the SDNY to enforce the default judgment for the HAL Promissory Note (the "**Girard Street Action**"), and G&A filed suit to enforce the default judgment for the SLB Promissory Notes in Texas District Court for Harris County (the "**G&A Action**").  *See* Ex. 4 ("**Girard Street Compl.**"); Ex. 9 ("**G&A Compl.**").  On July 30, 2024, Gramercy filed suit against PDVH in Texas District Court for Harris County, seeking to enforce the Tenaris Judgments (the "**Gramercy**

---

[6]    Both judgments against PDVSA were recently vacated on grounds to be set forth in a forthcoming memorandum.  *See* Ex. 3; Ex. 8.  The default judgments against Petróleo have not been vacated, and no counsel has appeared for Petróleo in either matter.

**Action**").[7]  *See* Ex. 13 ("**Gramercy Compl.**").  These actions seek to hold PDVH liable for claims against PDVSA or Venezuela on the ground that PDVH is an alter ego of PDVSA.[8]

There is nothing unique about the Opposing Creditors' Actions, as they are just three of over one-hundred pending actions in state and federal courts that seek monetary relief from PDVH and its subsidiaries, including on an alter ego basis.  Ex. 1, Taft Decl. ¶¶ 5-6.  Indeed, many of the Additional Judgment Creditors before this Court filed such actions themselves:  in particular, Crystallex, ConocoPhillips, Rusoro, and OIEG all filed actions against PDVH before the Opposing Creditors filed their actions.[9]  Those creditors agreed to stay (or in Rusoro's case, dismiss without prejudice) the actions because they "may become moot depending on what occurs" in the Sale Process.  D.I. 154 at 13.  But each has retained the right to continue to pursue its action if it does not achieve a full recovery through the Sale Process.  D.I. 80.  The creditors thus recognized that, in addition to the Sale Process, they have the right to pursue enforcement of their judgments through alternative proceedings against PDVH, and have not waived those rights, even as they seek satisfaction through the sale of the PDVH Shares.

---

[7]   The G&A Action and Gramercy Action have since been removed to the U.S. District Court for the Southern District of Texas ("**S.D. Tex.**").  Ex. 10 and Ex. 14.  Motions to remand remain pending.  Ex. 12 and Ex. 15.

[8]   In response to Question "b" in the Court's briefing order of September 11, 2024 (D.I. 1259) (the "**Briefing Order**"), the Gramercy Action identifies and discusses the *Crystallex* proceeding.  Gramercy Compl. ¶¶ 19-26.  In the Girard Street Action, both the Special Master and Red Tree Investments notified the SDNY of this Court's proceedings.  *See* Ex. 6; Ex. 5.  PDVH informed the S.D. Tex of the *Crystallex* case in its motion to dismiss.  Ex. 11 at 19.  *See also* D.I. 1302.

[9]   *See Crystallex I*; *Crystallex II*; *ConocoPhillips I*; *ConocoPhillips II*; *Rusoro Mining Limited v. Bolivarian Republic of Venezuela, et al.*, No. 18-cv-01458, D.I. 19 (S.D. Tex. dismissed without prejudice August 4, 2023); *OI European Group B.V. v. Bolivarian Republic of Venezuela, et al.*, No. 19-cv-00290 (D. Del.) ("**OIEG I**").

**V.      The Special Master Moves to Permanently Enjoin the Opposing Creditors' Actions.**

In an August 29, 2024 *ex parte* meeting with the Court, the Special Master advocated for an order enjoining the Opposing Creditors "from attempting to collect against PDVH or its subsidiaries to protect the sale process." D.I. 1284–1 at 4. In his presentation, he inaccurately described G&A and Girard Street as having previously "appeared before this Court seeking recovery for these same judgments," but supposedly "did not meet the Step 5 deadline," when in fact they never registered the judgments in Delaware or sought an attachment. *Id.*; *see supra* at 10. The Special Master's counsel went on to mischaracterize the Opposing Creditors' Actions as "asking … to attach the assets of PDVH which are the CITGO shares, the same assets that we're trying to sell before Your Honor." D.I. 1284–2 at 11:17–20; *cf. supra* at 10–11. The Opposing Creditors' Actions do not, however, seek to attach any assets, but rather seek *in personam* judgments against PDVH, and the asset being sold in this proceeding are PDVSA's PDVH Shares, not PDVH's shares in CITGO Holding. *See supra* at 10–11.

The Special Master filed his Motion on September 9, 2024, nearly three months after the filing of the G&A and Girard Street Actions. D.I. 1248. The Motion asks the Court to enjoin the Opposing Creditors "from seeking to enforce judgments against PDVSA or the Republic by recovering from PDVH, its subsidiaries, or their assets in lawsuits in New York and Texas . . . and grant[] any other relief the Court deems appropriate to prevent further attempts to circumvent this Court's proceedings." D.I. 1249 at 6. While the Motion is not explicit on this point, it appears to ask the Court not only to stay the Opposing Creditors' Actions during the pendency of the Sale Process, but to permanently enjoin those claims from ever being adjudicated on the merits.

The sole purported factual support for the Motion is the Strong Declaration, which asserts that unidentified "[b]idders" have "expressed that they are expecting to purchase the PDVH Shares free and clear of claims or encumbrances from judgment creditors of PDVSA," Strong Decl. ¶ 4,

and that the Opposing Creditors' Actions have "created uncertainty . . . as to whether the assets underlying the entity they seek could be diminished," *id.* ¶ 6.

In his reply brief on the Briefing Motion, the Special Master appeared to modify the requested relief, stating that he "seeks only to enjoin these claimants and only to the extent that the specific relief they seek . . . is irreconcilable with this Court's sale process."  D.I. 1258 at 4.  However, the Special Master did not provide any additional information about the Sales Process that would enable the Court or the Opposing Creditors to determine how or why the relief sought in the Opposing Creditors' Actions would be "irreconcilable with this Court's sale process," or how those claims differed from the more than one-hundred other actions pending against PDVH that could indirectly reduce the value of the PDVH Shares.

On September 17, 2024, Crystallex and ConocoPhillips filed briefs in support of the Motion.  Although they did not join the Motion or bring their own motions, Crystallex and ConocoPhillips characterized the requested relief as only requiring the Opposing Creditors to pursue their alter ego claims "***in this Court***."  Crystallex Br. at 5 (emphasis added); *see also* ConocoPhillips Br. at 3.  Their briefs, however, do not explain why this is consistent with the relief sought in the Motion or why adjudicating the Opposing Creditors' Actions in this Court would not harm the Sale Process but pursuing them in New York and Texas would.

## ARGUMENT

### I.    The Special Master Lacks Standing to Assert a Claim for Injunctive Relief Against the Opposing Creditors.

The Special Master is not a receiver of PDVSA's property, much less of PDVH's, nor is he a fiduciary for PDVSA's creditors.  *See supra* at 5; D.I. 277 ¶ 20, 22.  As a judicial officer "fulfill[ing] the Court's and the U.S. Marshal's duties," D.I. 234, at 35, the Special Master has no "legally protected interest" in the outcome of the sale process.  *Spokeo, Inc. v. Robins*, 578 U.S.

330, 339 (2016).  Nor can the Special Master establish standing by "rest[ing] his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  Thus, the Special Master's assertions that the Opposing Creditors' Actions are "deeply unfair to other creditors," D.I. 1249 at 11, cannot establish standing, because the Special Master is not a fiduciary for any of the creditors.  Nor can the Special Master assert standing to "ensure that the bidders . . . are protected from collateral attacks."  *Id*.  He has a duty to maximize the sale value of the PDVH Shares, but that duty does not extend to eliminating claims against PDVH or its subsidiaries.

As the Court has made clear, the Special Master has discretion to reject bids for the PDVH Shares that are below fair value, postpone the sale, or even "choose not to select a Successful Bid" at all, including in light of the Opposing Creditors' Actions or any other contingency indirectly affecting bidding.  D.I. 643 at 10.  But the Special Master's mandate does ***not*** include protecting the interests of certain judgment creditors at all costs—including blocking other creditors' rights to seek adjudication of their claims to other assets—nor providing bidders a windfall by seeking to enjoin claims that are not against the PDVH Shares.  *See Schweiker v. McClure*, 456 U.S. 188, 195 (1982) (concerning administrative hearing officer) (collecting cases); *Abdulrahman v. Ashcroft*, 330 F.3d 587, 596 (3d Cir. 2003) (requiring judicial officers to "assiduously refrain from becoming advocates for either party").  Accordingly, any risk that claims against PDVH will chill bidders' interest in buying the PDVH Shares does not interfere with the Special Master's mandate, and he therefore lacks standing to seek to enjoin them.

Until now, the Special Master properly declined to take a position on controversies among creditors, or to dispose of contingent claims that affect the value of the PDVH Shares.  *See, e.g.*, D.I. 593 ¶ 11 ("The Special Master takes no position as to the determination of priority among any

Additional Judgements."); *supra* at 5–9.  He does not have standing to adopt a more assertive role by creating value for bidders and some creditors at the expense of other creditors.

## II.     The All Writs Act Does Not Empower the Court to Grant the Injunction.

The All Writs Act, 28 U.S.C. § 1651, authorizes federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  This power is "firmly circumscribed," and injunctions against litigation are available in only "narrow circumstances." *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 328–29 (3d Cir. 2007) (vacating injunction because overlapping cases were not identical).  "[C]onduct not shown to be detrimental to the court's jurisdiction or exercise thereof [cannot be] enjoined under the Act." *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978).  The Motion fails to meet this standard, because it is not necessary to preserve the Court's jurisdiction.

The Motion rests on mischaracterizations of (1) the Opposing Creditors' Actions, which merely seek to establish a liability of PDVH and not exercise control over any property that is before this Court; (2) the Court's jurisdiction here, which is limited to an execution sale of PDVSA's shares in PDVH and does not extend to PDVH's assets and operations generally; and (3) the Priority Order, which is limited to priorities of attachments over the PDVH Shares and does not affect creditors' rights to pursue other remedies available at law or in equity.  While any contingent liability of PDVH could impact the value of its shares, litigants seeking to establish liability against PDVH are not, by pursuing their claims, threatening the Court's jurisdiction over those shares or obstructing their sale "free and clear."  If such claims threatened the Court's jurisdiction, then there is an irreconcilable conundrum as to why the Special Master did not seek a similar injunction with regard to other claims against PDVH, including the 2020 PDVSA Bondholders' claims.

A.     **The Opposing Creditors' Actions do not interfere with this Court's *in rem* or *quasi in rem* jurisdiction over the PDVH Shares.**

The Special Master's characterization of the Opposing Creditors' Actions as "effort[s] to reach the res that is within the Court's jurisdiction," Br. at 1, is incorrect.

***First*, the Special Master's argument mischaracterizes the Opposing Creditors' Actions.**  The Opposing Creditors' Actions are *in personam* actions seeking to establish PDVH's direct liability, not *in rem* or *quasi in rem* actions seeking to attach assets.  In particular, the actions seek:  (1) a declaratory judgment against PDVH as to its liability for certain debts; (2) a money judgment against PDVH; and (3) in the Girard Street Action, a turnover order of PDVH's property (which, under New York law, is an *in personam* order).  Actions of that nature, which ask a court to determine the defendant's liability rather than take possession of a particular asset, are *in personam.  See, e.g., United States v. Nordic Village, Inc.*, 503 U.S. 30, 38 (1992) (action for a money judgment, even if asserted in bankruptcy court, was not *in rem*); *Riehle v. Margolies*, 279 U.S. 218, 224 (1929) ("In so far as [a court] determines, or recognizes a prior determination of, the existence and amount of the indebtedness of the defendant. . . .  [that] is strictly a proceeding in personam."); *Koehler v. Bank of Bermuda Ltd.*, 911 N.E.2d 825, 829–30 (N.Y. 2009) (citations omitted) (turnover order "involves a proceeding against a person.  . . . 'As long as the debtor is subject to the court's personal jurisdiction, a [turnover] order can be effective even when the property sought is outside the state.'").

It is long settled that an *in personam* action, such as the Opposing Creditors' Actions, does not interfere with a court's *in rem* or *quasi in rem* jurisdiction over an asset.  *Fischer v. American United Life Ins. Co.*, 314 U.S. 549, 553–54 (1942).  *See also Kline v. Burke Const. Co.*, 260 U.S. 226, 230 (1922) ("[A] controversy is not a thing, and a controversy over a mere question of personal liability does not involve the possession or control of a thing, and an action brought to

enforce such a liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending."). Accordingly, there is no "*res*" before this Court to which the SDNY's or S.D. Tex.'s jurisdiction could attach. Br. at 1.

Because the Opposing Creditors' Actions are not asserting *in rem* or *quasi in rem* jurisdiction over **any** asset, much less the PDVH Shares, the *Princess Lida* doctrine—which bars two courts from concurrently exercising jurisdiction *in rem* or *quasi in rem* over the same asset— also does not apply. *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456 (1939). As the Special Master recognizes, *see* Br. at 19, the doctrine applies only when (1) both cases are *in rem* or *quasi in rem*, and (2) "the relief sought requires that the second court exercise control over the property in dispute and such property is already under the control of the first court." *Dailey v. Nat'l Hockey League*, 987 F.2d 172, 176 (3d Cir. 1993). Because that is not the case here, the Court's question "e" (whether application of the *Princess Lida* doctrine is "compulsory" if the Court determines that the Sale Process is an *in rem* or *quasi in rem* action) must be answered in the negative.[10] *See Noble Prestige Ltd. v. Galle*, 83 F.4th 1366, 1377, 1384 (11th Cir. 2023) (declining to apply *Princess Lida* doctrine to *in personam* claims) (cited in Crystallex Br. at 15). The cases cited in support of the Motion, involving two courts asserting control over the same *res*, are inapposite. *Cf. Julian v. Central Trust Co.*, 193 U.S. 93 (1904) (involving two foreclosure sales of the same property) (cited in Crystallex Br. at 5–6).

The Special Master, Crystallex, and ConocoPhillips also argue, without citation to any authority, that the Opposing Creditors' alter ego claims against PDVH, if successful, would

---

[10]  Even if the *Princess Lida* standard was met here, an **injunction** would remain discretionary. That doctrine requires only that the "second court" must "yield its jurisdiction" in those circumstances. *Dailey*, 987 F.2d at 176-77. Ordinarily, that remedy should be sought by a motion to dismiss in the second court (here, the SDNY and S.D. Tex.), just as it was in *Dailey*.

"nullify" the PDVH Shares.  *See* Br. at 10–11; Crystallex Br. at 4; ConocoPhillips Br. at 1.

However, a finding of alter ego liability will not erase either PDVH or its shares from existence.

*See IFC Interconsult AG v. Safeguard Int'l Partners LLC*, 438 F.3d 298, 312 (3d Cir. 2006)

("[V]eil piercing is an equitable procedure that involves the creation of liability in spite of the

contractual and statutory separateness of corporate entities.") (internal citations omitted).  Rather,

an alter ego finding would merely impose "liability on [PDVH] for the liabilities of its owner[]."

*Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 710 (Del. Ch. 2021); *accord, e.g., Sky

Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 385 (4th Cir. 2018) ("Reverse veil piercing attaches

liability to the entity for a judgment against the individuals who hold an ownership interest in that

entity.").  Again, that is a classic *in personam* claim, not an effort to exercise jurisdiction over a

particular asset.  Indeed, this Court's alter ego findings against PDVSA did not nullify PDVSA's

existence.  If they had, then each of Venezuela's creditors seeking to attach the PDVH Shares

would not have first needed to adduce evidence to establish alter ego.  *See* D.I. 646 at 12.

   ***Second*, the Motion misstates the scope of this Court's jurisdiction.**  This case is not a

bankruptcy or receivership.  Rather, it is an action under Fed. R. Civ. P. 69 seeking to enforce

judgments against one particular asset of PDVSA:  the PDVH Shares.  Accordingly, as the Special

Master, Crystallex, and ConocoPhillips have all conceded, the Court's *in rem* or *quasi in rem*

jurisdiction extends **only** to the PDVH Shares.  Br. at 19; Crystallex Br. at 9; ConocoPhillips Br.

at 3; D.I. 74 (statement by Crystallex's counsel that "[w]hat we're asking here . . . is [for] . . . an

order [that] applies only to [a] particular asset.").  PDVSA's PDVH Shares are the only asset that

Crystallex moved to attach.  D.I. 2; *see also* D.I. 95 at 1.  They are the only asset that the Court

ordered sold.  D.I. 234.  And they are the only asset that other creditors of Venezuela or PDVSA

could have moved to attach to become Additional Judgment Creditors.  D.I. 481 ¶ 30; D.I. 646; No. 1:23-mc-361-LPS, D.I. 32, at 2–4.

By its nature, a Fed. R. Civ. P. 69 proceeding is ancillary to enforcing judgments underlying the creditors' motions for writs of attachment.  *IFC Interconsult*, 438 F.3d at 314 ("A Rule 69 action, by its very nature, piggybacks on an action establishing liability and has a derivative status."); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 137 (3d Cir. 2019) ("[T]he jurisdictional basis from the action resulting in the judgment carries over to the post-judgment enforcement proceeding in a manner akin to the ordinary operation of a district court's enforcement jurisdiction over post-judgment proceedings.") (citations omitted).  As a result, this Court has never assumed plenary jurisdiction over the underlying claims against Venezuela or PDVSA, let alone PDVH.  D.I. 83 at 17 ("[T]he Court views the present case as involving garnishment, seeking only to establish secondary liability (by attaching certain specified property), rather than an action seeking to impose primary liability on PDVSA.").  This Court's conclusion about the limited nature of its jurisdiction was the basis for distinguishing the *Crystallex* enforcement action from the facts in *Peacock v. Thomas*, 516 U.S. 349, 358 (1996), in which the Supreme Court found that the exercise of ancillary jurisdiction did not extend to establishing independent alter ego liability against a third party.  *Id.* at 11–17.  Thus, the Opposing Creditors' Actions in other Courts, which only seek to impose primary liability against PDVH, do not interfere with this Court's self-described limited jurisdiction.

### B.  The Requested Injunction Is Not Necessary or Appropriate to Prevent Frustration of the Court's Priority Order.

The Special Master's assertion that the Opposing Creditors' Actions are an "attempt to circumvent this Court's Priority Order," Br. at 10, is incorrect and affords no basis for an injunction.  The Opposing Creditors are ***not*** "asking other courts to provide them with relief that

this court would not:  priority over other creditors [with respect to the PDVH Shares]."  Br. at 13.
The Priority Order will govern the distribution of proceeds from any sale of the PDVH Shares
regardless of the outcome of the Opposing Creditors' Actions.  Like any of the over one-hundred
claims against PDVH or CITGO, the Opposing Creditors' Actions could indirectly affect the
perceived *value* of the PDVH Shares, but not how the proceeds from their sale are distributed.
Accordingly, unlike the cases cited by the Special Master, an injunction is not necessary to carry
into effect any order of the Court.  *See United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172, 176
(1977) (holding that All Writs Act authorized court order to compel telephone company to comply
with pen register order); *Berger v. Zeghibe*, 666 Fed. App'x 119 (3d Cir. 2016) (not precedential)
(upholding preliminary injunction enjoining dissipation of assets to preserve status quo pending
determination of whether assets are properly in the Court's jurisdiction); *United States v. Int'l Bhd.
of Teamsters*, 728 F. Supp. 1032, 1047–48, 1058 (S.D.N.Y. 1990) (enforcing a consent decree
vesting the court with jurisdiction over all related litigation in order to avoid inconsistent
interpretations of decree and duplicative litigation of the same claim in multiple forums).  Contrary
to the Special Master's claim that the Opposing Creditors are somehow subverting the Court's
judgments, the Court has expressly affirmed that creditors of PDVSA and Venezuela may pursue
other collection efforts and are ***not*** limited to pursuing attachments against the PDVH Shares.  D.I.
963 ¶ 4 n.7 (emphasizing that the Priority Order did not diminish the value of Gramercy's judgment
as it "will remain free to pursue other collection efforts").

Nor is an injunction necessary to protect any prior judgment concerning the liability of
PDVH because the Court has never decided whether PDVH is PDVSA's alter ego.  *See Ostrider
Limited v. PDVSA Petroleo S.A.*, No. 23-CV-1405-LPS, Hearing Transcript (May 17, 2024),
49:15–17 ("I have not made a finding regarding the alter ego status of Petroleo or indeed any

subsidiaries of PDVSA.").  Accordingly, the Special Master's reliance on *Phillips Beverage Co. v. Belvedere, S.A.*, 204 F.3d 805 (8th Cir. 2000), is misplaced.  Br. at 13.  There, the Eighth Circuit upheld an injunction against plaintiff's attempt to obtain from the United States Customs Service the exact same relief it had failed to obtain from the district court.  That is not the case here.

This Court has asked "to what extent should the Court consider, and what weight should the Court give to, the fact that the Alter Ego Claimants previously participated in this Court's process and failed to obtain the relief they sought?"  Briefing Order, Question "f".  Because neither G&A nor Girard Street has sought (or qualified for) affirmative relief in these proceedings, the question pertains only to Gramercy.  The Court's denial of Gramercy's Priority Order motion is not relevant, however, because the Gramercy Action does not relate to the Priority Order, let alone seek to modify it.  Accordingly, the Court should give no weight to Gramercy's previous participation in this proceeding.

### C.   The Court Never Undertook to Sell PDVSA's Assets "Free and Clear" of All Encumbrances, and the Law Does Not Permit Such an Order.

The Special Master seeks to enjoin the Opposing Creditors' Actions in order to fulfill the bidders' purported expectation that they would acquire the PDVH Shares "free and clear of claims or encumbrances from judgment creditors of PDVSA" to PDVH's assets.  Br. at 4; Strong Decl. ¶ 4.  The Special Master has not explained the basis for such an expectation, and there could be none, because the requested relief exceeds the Court's power and conflicts with the SPO.

The SPO provides for the sale of the ***PDVH Shares*** free and clear of claims, encumbrances, and liabilities, but that protection, on its face, does not extend to claims against ***PDVH itself***.  SPO ¶ 14.  The Sale Process Parties', PDVH's, and CITGO's prior statements confirm this

understanding. [11]   The Opposing Creditors' Actions do not fall under the "free and clear" protections of the SPO because they are alter ego claims against **PDVH**, not against PDVSA; they do not seek to encumber the shares owned by PDVSA; and they seek to impose liability solely on PDVH.  *See Manichaean Cap.*, 251 A.3d at 710 ("[R]everse veil-piercing involves the imposition of liability on a business organization for the liabilities of its owners.").

The Special Master's assertion that the bidders expect to acquire the PDVH Shares free and clear from the Opposing Creditors' claims against PDVH lacks any evidentiary support.  The Strong Declaration offers nothing but inadmissible hearsay from unidentified bidders.   Strong Decl. ¶ 6 ("[B]idders have expressed concerns to me.").

In any event, such an expectation lacks any basis in Delaware law, which reflects the basic tenet of corporate law that changes in ownership of a corporation's shares "do[] not affect the corporation's liability for its past actions."  *Polius v. Clark Equip. Co.*, 802 F.2d 75, 77 (3d Cir. 1986); *Texaco Refining and Mktg, Inc. v. Del. River Basin Com'n*, 824 F. Supp. 500, 507 (D. Del. 1993) ("[A] sale of all of the stock of a corporation, or of a controlling interest, is not a sale of the physical properties or assets of the corporation.") (citation omitted); *Taylor v. Dover Downs, Inc.*, 543 F. Supp. 3d 39, 44 (D. Del. 2021) (same).

Delaware authority on non-bankruptcy judicial sales of stock, on which the Court relied for the SPO, confirms that a sale of stock does not eliminate any liabilities of the company whose stock is being sold; rather, bidders must consider the corporation's liabilities in pricing their bids.

---

[11]   *See, e.g.,* D.I. 640 at 183:4–19 (counsel for PDVH and CITGO describing the sale as extinguishing only the "rights, remedies, powers, privileges, or interests that another party might have *in the shares*") (emphasis added); D.I. 1278 at 9 ("ConocoPhillips does not believe that bidders were led to understand that the purchase would be free and clear of claims or encumbrances to which PDVH or its subsidiaries are independently subject (that is, not on a basis deriving solely from their ownership by the Republic or PDVSA). Those liabilities will be effectively assumed by the buyer in the ordinary course.").

*Atl. Prop. Grp. v. Deibler,* 1994 WL 45433, *5–6 (Del. Super. Jan. 6, 1994), *aff'd* 652 A.2d 553, 553 (Del. 1995).  While *Deibler* addressed the analogous situation in which the court sold shares of a company that owned encumbered property, ConocoPhillips relies on inapposite Delaware law on sales of real property standing for the unsurprising proposition that all junior judgment liens on such property will be discharged by the sale.  *Cf. E. Sav. Bank, FSB* v. *CACH, LLC*, 55 A.3d 344 (Del. 2012); ConocoPhillips Br. at 8–9.  Again, the Opposing Creditors' claims are not directed at the property being sold by this Court.  And, in any event, Crystallex and ConocoPhillips cite no authority for their attempted distinction between "ordinary course" liabilities and alter ego liabilities, because no such distinction exists.  Crystallex Br. at 8; ConocoPhillips Br. at 9.  As the Court recently observed, the buyer of the PDVH Shares is buying the potential liabilities of PDVH, as well.  Ex. 16 at 25.  Accordingly, in answer to Question "c" in the Briefing Order, bidders for the PDVH Shares had no basis in law or fact to expect to purchase those shares free and clear of claims or encumbrances from judgment creditors of PDVSA and/or Venezuela.

Courts do not have the authority to extinguish claims against the underlying business or its assets even when selling stock in the corporation under 28 U.S.C. § 2004.  Section 2004 provides courts with discretion to set the terms of court-ordered sales of stock and other personal property, but that is not the same as altering the liabilities of the underlying business.  It is also well-established Delaware law that in judicial stock sales, "encumbrances on property should be considered when assessing adequacy of price."  *Deibler v. Atl. Properties Grp., Inc.*, 652 A.2d 553, 559 (Del. 1995) (citing to *Briehler v. Poseidon Venture, Inc.*, 502 A.2d 821, 822 (R.I. 1986), *cert. denied*, 476 U.S. 1166 (1986)).  On the other hand, the Opposing Creditors are not aware of any authority for wiping out veil-piercing or successor liability of the underlying business in

23

connection with a court-ordered sale of stock, and neither the Special Master nor Crystallex or ConocoPhillips cite any such authority.

Indeed, even in a hypothetical bankruptcy of PDVSA, where the court's jurisdiction would extend, unlike here, to all property of PDVSA's bankruptcy estate, the bankruptcy court could not wipe out claims against PDVH in a "free and clear" sale of the PDVH Shares. While bankruptcy orders may relieve a buyer of successor liability under 11 U.S.C. § 363(f), such power does not extend to eliminating liabilities of a non-debtor entity that issued the stock being sold. *See In re Insilco Tech, Inc.*, 351 B.R. 313, 321 (Bankr. D. Del. 2006) ("Even assuming that the Sale Order language releases all of the Debtor's claims against [purchaser] related to the purchase and ownership of the [subsidiary's] stock, the Sale Order does not similarly release [subsidiary]—a distinct, separate legal entity from [purchaser]—from liability.").

Even though the value of the non-debtor subsidiary may affect the value of its corporate parent's shares, bankruptcy courts lack jurisdiction even under the broad reach of 28 U.S.C. § 1334(b) over the subsidiary's assets absent an established alter ego relationship (which this Court has not found).[12] *In re Ampal-American Isr. Corp.*, 2015 WL 5176395, at *9 (Bankr. S.D.N.Y. Sept. 2, 2015) ("[A] bankruptcy court lacks 'related to' jurisdiction over disputes between a non-debtor subsidiary and a third party that may affect the value of the subsidiary's stock but not the debtor's title to that stock."); *In re Tower Automotive, Inc.*, 356 B.R. 598, 601 (Bankr. S.D.N.Y. 2006) (same) (citing *In re Winstar Commc'ns Inc.*, 284 B.R. 40, 51 (Bankr. D. Del. 2002) ("[T]he ownership of all of the outstanding stock of [a subsidiary] by the Trustee does not confer

---

[12]   For the avoidance of doubt, while the Opposing Creditors' Actions allege that PDVH is an alter ego of PDVSA for certain purposes, this Court has never made such a finding. Because the Court has not asserted jurisdiction over PDVH's assets, and the Special Master has made no showing as to whether PDVH is an alter ego of PDVSA for any purpose, the Opposing Creditors have not addressed the underlying merits of their alter ego claims in this brief.

jurisdiction on the Bankruptcy Court to decide disputes involving [the subsidiary's] assets.")). Accordingly, even in a bankruptcy case with broad jurisdiction, a bankruptcy court may not permanently enjoin litigation against a non-debtor subsidiary, no matter how dire the effect of such litigation on the parent debtor would be.  *In re Melasecca*, 2019 WL 6045476, at *7 (Bankr. E.D. Pa. Nov. 14. 2019); *In re Wilson*, 2013 WL 3880053, at *1–2 (Bankr. D.D.C. July 24, 2013); *In re Mordini*, 491 B.R. 567, 571 (Bankr. D. Colo. 2013).

The automatic stay under 11 U.S.C. § 362(a) does not apply to actions against non-debtors. *In re Cred Inc.*, 2021 Bankr. LEXIS 518, at * (Bankr. D. Del. Feb. 26, 2021).  ConocoPhillips thus notes that bankruptcy courts have jurisdiction to enjoin third-party claims against non-debtors under Bankruptcy Code § 105(a) in extraordinary circumstances.  Conoco Br. at 10–11.  However, the Supreme Court's recent decision in *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071, 2081, 2087 (2024), has limited such power to only the issuance of temporary or preliminary stays to enable parties to negotiate the consensual resolution of such claims, and ***not*** the effectively permanent preclusion of such claims on the merits, which the Motion seeks.  *See In re Parlement Techs., Inc.*, 661 B.R. 722, 724 (Bankr. D. Del. 2024); *see also In re Coast to Coast, LLC*, 661 B.R. 621, 624 (Bankr. N.D. Ill. 2024) (explaining that *Purdue* bars releases and injunctions in favor of non-debtors, but a "temporary restraining order" is permitted).

Therefore, to answer the Court's Question "d" asking whether the requested relief is akin to an automatic stay under the Bankruptcy Code, the requested relief would exceed even the power of a bankruptcy court to enjoin actions against non-debtor subsidiaries, unless the bankruptcy court were to consolidate PDVH's estate into PDVSA's on the ground that PDVH is an alter ego of PDVSA, which is a finding that the Special Master has neither requested nor proved.

**D.      The Actions Are Not Duplicative as Required by the First-Filed Rule.**

The Special Master's reliance on the first-filed rule is also misplaced.  The Opposing

Creditors' Actions involve different parties, different legal questions, and different sources of

relief than these proceedings.  The first-filed rule invests judges with discretion to enjoin or dismiss

"mirror-image litigation" to avoid conflicting judgments "in favor of the first-filed action."

*Nexans Inc. v. Belden Inc.*, 966 F. Supp. 2d 396, 403 (D. Del. 2013) (internal quotations omitted);

*see also E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) ("It gives a court the

power to enjoin the subsequent prosecution of proceedings involving the ***same parties*** and the

***same issues*** already before another district court.") (emphasis added).  The first-filed rule therefore

applies only "if the relevant actions are identical or nearly identical."  *In re Mobile Telecomm.*

*Techs., LLC*, 243 F. Supp. 3d 478, 483 (D. Del. 2017) (citing *In re Telebrands Corp.*, 824 F.3d

982, 985 (Fed. Cir. 2016)).  Vacating an injunction, the Third Circuit has held that parallel cases

"must have such an identity that a determination in one action leaves little or nothing to be

determined in the other."  *Grider*, 500 F.3d at 330 (citations and quotations omitted).  That is not

the case here.

***First***, the Opposing Creditors' Actions and *Crystallex* involve different parties.  Girard

Street and G&A are not parties before this Court.  PDVH, which is the defendant in the Opposing

Creditors' Actions, is a garnishee of the PDVH Shares, not a party here.  *In re Mobile Telecomms.*

*Techs.*, 243 F. Supp. 3d at 485 (declining to apply the first-filed rule absent identity of parties).

***Second***, the Opposing Creditors' Actions are different in scope from the cases before this

Court.  Here, the Court is concerned solely with using the PDVH Shares to pay the Attached

Judgments.  *See supra* at 4–9.  The Opposing Creditors' Actions, on the other hand, concern

whether PDVH is the alter ego of PDVSA, so that PDVH is personally liable for the Opposing

Creditors' judgments, a question that is not before this Court in this case. *See supra* at 9–11.  "This

26

reality supports a conclusion that the first-filed rule does not apply." *In re Mobile Telecomms. Techs.*, 243 F. Supp. 3d at 485.

*Third*, even if the suits were sufficiently similar for the first-filed rule to apply, which they are not, application of the first-filed rule is discretionary, not obligatory. The rule does not override a district court's discretionary authority to determine whether to entertain a suit based on the equities of a given case. *See, e.g.*, *Honeywell Int'l Inc. v. Int'l Union, UAW*, 502 F. App'x 201, 206 (3d Cir. 2012). "[A] court exercising its discretion under the first-filed rule should be careful not to cause unanticipated prejudice to the litigants before it." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 219 (3d Cir. 2016).

## III.    The Special Master's Proposed Injunction Is Inappropriate.

Even if the All Writs Act authorized the Court to issue the injunction, the Motion fails because the Special Master has not carried his burden of establishing that the extraordinary remedy of injunctive relief is necessary and appropriate. *Cf. Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 151 (1988) ("[T]hat an injunction *may* issue under the Anti-Injunction Act does not mean that it *must* issue.") (emphasis in original). *First*, with respect to Girard Street, the Court lacks personal jurisdiction. Girard Street, a Cayman Island limited liability company, has no presence in Delaware. *Second*, the Special Master also has failed to establish the traditional four factors justifying injunctive relief: success on the merits, irreparable harm, the absence of other remedies at law, and that the equities favor issuing the injunction. And *third*, the proposed injunction is impermissibly vague and incapable of administration and would have the impermissible effect of permanently preventing *any* court from adjudicating the merits of the Opposing Creditors' claims.

### A.    The Court Lacks Personal Jurisdiction Over Girard Street

The Court cannot enjoin Girard Street without personal jurisdiction. *Zenith Radio Corp. v. Hazeltine Rsch, Inc.*, 395 U.S. 100, 110–12 (1969); *Carlough v. Amchem Prods., Inc.*, 10 F.3d

189, 198 (3d Cir. 1993) (noting that neither the Anti-Injunction Act nor All Writs Act "dispels the federal court's jurisdictional requisite[s]").   As a Cayman limited liability company with its principal place of business in Connecticut, Girard Street is not "at home" in Delaware.  Thus, the Court lacks general personal jurisdiction over it.   *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Chavez v. Dole*, 836 F.3d 205, 223 (3d Cir. 2016).

Likewise, Girard Street does not have "sufficient minimum contacts with the forum," so an exercise of specific jurisdiction over Girard Street would "offend traditional notions of fair play and substantial justice."  *In re Diet Drugs*, 282 F.3d 220, 230 (3d Cir. 2002) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).   Specifically, Girard Street has not "purposefully directed [its] activities" toward this forum to permit the exercise of specific jurisdiction.  *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007).

The Special Master does not point to Girard Street's ties to Delaware (there are none) or that it conducts business in Delaware (it does not).  The sole basis on which the Special Master might allege specific jurisdiction is Girard Street's submission of a letter in the *Crystallex* proceeding, D.I. 672; *see also* D.I. 1249 at 12, which provided the Court with information as to Girard Street's claims against PDVSA without seeking relief from this Court.  However, since Girard Street did not move for a writ of attachment, the Court lacks jurisdiction here.   *In re Asbestos Prod. Liab. Litig. (No. VI)*, 921 F.3d 98, 105 (3d Cir. 2019) (citations omitted) ("[A] party is deemed to have consented to personal jurisdiction if the party actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum … [or] where a party seeks affirmative relief from a court[.]").

28

**B.    The Special Master Has Not Met His Burden of Establishing the Required Elements for a Permanent Injunction.**

The Special Master fails to allege, much less prove, the requisite elements for an injunction. In this Circuit, traditional equitable elements apply to the issuance of an injunction under the All Writs Act. *Grider*, 500 F.3d at 332 ("An injunction under the All Writs Act invokes the equitable power of the court; thus, … a court may not issue an injunction under the All Writs Act if adequate remedies at law are available.") (citing *U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1132 (11th Cir. 2005)); *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987) ("[T]he bases for injunctive relief are irreparable injury and inadequacy of legal remedies.  In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."); *Clinton v. Goldsmith*, 526 U.S. 529, 538 (1999) ("The All Writs Act invests a court with a power essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law."); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006) ("Ordinarily, a federal court considering whether to award permanent injunctive relief to a prevailing plaintiff applies the four-factor test historically employed by courts of equity."); *see, e.g.*, *Berger*, 666 F. App'x at *123–24 (applying traditional preliminary injunction factors to All Writs Act injunction).  The cases the Special Master cites in support of not applying the injunctive relief factors, Br. at 12, are a district court case relying on out-of-circuit precedent and a 1987 Third Circuit case that has nothing to do with the All Writs Act and in fact applied an irreparable harm analysis to the injunction at issue.  *See* Br. at 14 n.3 (citing *Cottingham v. Tutor Perini Bldg. Corp.*, 2016 WL 54916 (E.D. Pa. Jan. 5, 2016); *Marxe v. Jackson*, 833 F.2d 1121 (3d Cir. 1987)).

*First*, the Special Master has not made the requisite showing of success on the merits.  The Special Master's Motion is unclear as to whether he is seeking a preliminary or permanent

injunction, but based on the context, it appears that he seeks permanent relief because a preliminary injunction would presumably dissolve after completion of the sale, allowing even the Opposing Creditors' claims against PDVH to resume, and thus not mitigating the purported concerns that prompted the Motion.  While a preliminary injunction requires a showing of likelihood of success on the merits of eventual entitlement to a permanent injunction, a permanent injunction requires a showing of actual success.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.") (quoting *Amoco Prod. Co.*, 480 U.S. at 546 n.12).  For all the reasons discussed above, the Special Master has not established that he is entitled to a permanent injunction, because he has not proved by competent evidence that allowing the Opposing Creditors' Actions to go forward would interfere with this Court's jurisdiction, and he has not even attempted to prove that the Opposing Creditors' Actions lack substantive merit.

*Second*, the Special Master has not shown any irreparable harm that will result from allowing the Opposing Creditors their day in court.  As a threshold matter, the Special Master has not shown irreparable harm to himself in his role as Special Master.  *See supra* Argument, Section I.  But even if the Court could issue the injunction based on harm to certain creditors or to bidders' expectations, the Special Master has also failed to establish the necessity of enjoining these particular actions among all others.  *See supra* Argument, Section II.  Further, Crystallex and ConocoPhillips assert that the Opposing Creditors' Actions "threaten[] to destroy" the Sale Process, but they simultaneously argue that the Opposing Creditors' alter ego claims should be heard by this Court and will fail on the merits.  ConocoPhillips Br. at 2; Crystallex Br. at 3–4. These positions cannot be squared:  if the Opposing Creditors' Actions in fact lack merit, they

cannot harm the Sale Process because any reasonable bidder would assign them no value.  For his part, the Special Master filed a motion on September 19, 2024 indicating that he expected to be capable of selecting a bidder and making a recommendation to the Court on or about September 26, 2024, a day before briefing on the Motion will be completed, indicating that the Opposing Creditors' Actions are not preventing him from fulfilling his mandate. D.I. 1282.

*Third*, and relatedly, adequate remedies are available at law.  *See, e.g.*, *Clinton*, 526 U.S. at 537–40 (finding an injunction under the All Writs Act inappropriate, *inter alia*, because adjudication was available by a review board and federal courts).  Allowing the Opposing Creditors' Actions to continue to judgment is one such remedy.  If ConocoPhillips and Crystallex wish to be heard in those actions—including to request a stay or whatever other relief they consider appropriate—they can seek to intervene there.  Other creditors have already sought to intervene in the Girard Street Action, demonstrating the viability of an alternative remedy.  *See* Ex. 5.  Moreover, creditors have other remedies available to collect against PDVSA or Venezuela, including by resuming their own suits against PDVH or bringing new ones.

*Fourth*, the "balance of hardships between the plaintiff and defendant" weighs against granting an injunction.  *Praxair, Inc. v. ATMI, Inc.*, 479 F. Supp. 2d 440, 442 (D. Del. 2007) (quoting *eBay Inc.*, 547 U.S. at 391).  Granting the requested injunction effectively dismisses potentially meritorious claims pending before other courts, such that they would never be considered in any court, a result the Third Circuit has specifically instructed courts to avoid.  *See, e.g.*, *Chavez*, 836 F.3d at 210 (holding a "decision effectively terminat[ing] the plaintiffs' cases" rather than transferring them constituted an abuse of discretion); *Samsung Elecs. Co. v. Imperium Holdings (Cayman), Ltd.*, 764 F. App'x 199, 200–01 (3d Cir. 2019) (holding the district court decision was essentially a dismissal with prejudice, which "will almost always be an abuse of

discretion"); *see also Donovan v. City of Dallas*, 377 U.S. 408, 413 (1964) ("Petitioners being properly in the federal court had a right granted by Congress to have the court decide the issues they presented[.]").  Enjoining the Opposing Creditors' Actions from ever being resolved on the merits would deprive the Opposing Creditors of their due process rights to be heard and amount to a non-consensual release that this Court does not have the authority to impose.  *See supra* Argument, Section II.  Permanently enjoining any adjudication of the merits also would be inconsistent with the federal courts' "strict duty to exercise the jurisdiction that is conferred upon them by Congress" under Article III of the Constitution.  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).

Perhaps recognizing this issue, Crystallex and ConocoPhillips suggest that the Motion really asks the Court to require the Opposing Creditors to pursue their actions here.  Crystallex Br. at 5 ("If the Alter Ego Claimants wish to pursue their alter ego claims, they must do so *in this Court*—and nowhere else."); ConocoPhillips Br. at 3 ("The Gramercy Parties, or any other litigant, should be free to pursue a reverse veil-piercing theory, but they should have to do so in this Court.").  However, Crystallex and ConocoPhillips's version of the injunction would not redress the alleged problem that the Motion itself claims to identify and ignores that there is no proceeding in this Court for determining the Opposing Creditors' Actions.  In the absence of a case pending in this Court that will address the Opposing Creditors' alter ego claims, there is no jurisdictional conflict and "[e]ach court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court."  *See Kline*, 260 U.S. at 230.

The Motion also improperly singles out the Opposing Creditors' Actions from among many others.  As stated before, PDVH and Citgo are exposed to over one-hundred other actions, including actions by Crystallex, ConocoPhillips, OIEG, and the PDVSA 2020 Bondholders, all of

which could presumably impact the value of the PDVH Shares. There very likely will be additional cases against PDVH and its subsidiaries even after the sale. Enjoining only the Opposing Creditors would not resolve the Special Master's concerns. The Court would be required to draw arbitrary distinctions among those creditors and actions to determine which should be enjoined. Crystallex and ConocoPhillips attempt to draw an arbitrary line between "ordinary-course business liabilities and debts at the CITGO Petroleum level" and enforcement actions that "require trespassing on the PDVH Shares" without any supporting case law. Crystallex Br. at 8; *see also* ConocoPhillips Br. at 9 (attempting to distinguish "ordinary course" liabilities from those "deriving from liabilities of the Republic of PDVSA"). They also tellingly fail to address other actions—such as the PDVSA 2020 Bondholders' action or OIEG's alter ego action—that also indirectly impact the value of the PDVH Shares by seeking to hold PDVH liable for PDVSA's liabilities. There is no justification for treating a liability based on an alleged guaranty of PDVSA's liabilities, such as the long-running PDVSA 2020 Bondholders' action, any differently from a liability based on an alter ego claim. *See* D.I. 646 at 22 (treating alter ego and other claims the same for purposes of priority).

**Finally**, "the public interest would … be disserved by a permanent injunction." *eBay Inc.*, 547 U.S. at 391. The public is served by upholding principles of comity and by allowing all creditors to enforce their judgments in the forums that Congress and the states have made available for that purpose. *See Bank of Augusta v. Earle*, 38 U.S. 519, 525 (1839) (comity "is an obligation of the highest influence"); D.I. 646 at 12 (noting the "federal judiciary's strong interest in enforcement of the judgments of federal courts"). The public interest should be agnostic as to which creditor's judgment is enforced.

### C.    The Proposed Injunction Is Impermissibly Vague.

Under the All Writs Act, courts must "carefully tailor . . . injunctions to meet the needs of the case." *In re Diet Drugs*, 282 F.3d at 238.  The Special Master's proposed injunction is not carefully tailored, nor is it even clear what conduct would be prohibited.  While the Motion asked the Court to enjoin the Opposing Creditors "from seeking to enforce judgments against PDVSA or the Republic by recovering from PDVH, its subsidiaries, or their assets in lawsuits in New York and Texas . . . and granting any other relief the Court deems appropriate to prevent further attempts to circumvent this Court's proceedings[,]" Br. at 1, the Special Master's Reply in Support of his Motion to Expedite Briefing seeks only to enjoin conduct "to the extent . . . [it] is irreconcilable" with the Sale Process.  D.I. 1258 at 4.  Because the Opposing Creditors are not involved in the confidential Sale Process, however, they lack sufficient information to determine what actions would cause "irreconcilable interference."  Also, given the unknown, and potentially protracted, duration of the Sale Process, appropriately tailoring an injunction may prove impossible.  Finally, although an injunction prohibiting actions interfering with the Sale Process should obviously dissolve upon completion of the Sale Process, the Special Master apparently seeks to permanently enjoin the Opposing Creditors' Actions.

### IV.    If the Court Finds That the Injunction Is Not Precluded as a Matter of Law, It Should Order Limited Discovery.

If the Court does not deny the Motion as a matter of law and also determines that, notwithstanding having sought the expedited schedule for the Motion and his stipulations related thereto, the Special Master is entitled to more time to carry his burden of proof on the facts, the Court should order limited discovery under Fed. R. Civ. P. 26(d) on the factual assumptions underlying the Motion.  Courts routinely order expedited discovery when "it would 'better enable the court to judge the parties' interests and respective chances for success on the merits' at a

preliminary injunction hearing." *Commissariat a L'Energie Atomique v. Dell Computer Corp.*, 2004 WL 406351, at *1 (D. Del. Mar. 3, 2004) (quoting *Philadelphia Newspapers v. Gannett Satellite Info. Network, Inc.*, 1998 WL 404820, at *2 (E.D. Pa. July 15, 1998)).

As discussed above, *see supra* Argument, Section II.C, the Motion rests on bald assertions in the Special Master's brief and hearsay statements from unidentified bidders referenced in the Strong Declaration.   These are not admissible evidence that can support the Motion.   At a minimum, the Opposing Creditors have a right to investigate and rebut them through limited discovery.

## CONCLUSION

For the foregoing reasons, the Court should deny the Special Master's Motion to enjoin the Opposing Creditors' Actions against PDVH from proceeding in other forums.

Dated:  September 24, 2024

Respectfully submitted,

*/s/ Theodore A. Kittila*
Theodore A. Kittila (Bar No. 3963)
**HALLORAN FARKAS + KITTILA LLP**
5722 Kennett Pike
Wilmington, DE 19807
(302) 257-2025
tk@hfk.law

Mark W. Friedman*
William H. Taft V*
Carl Micarelli*
Juan Fandiño*
Caroline Wallace*
**DEBEVOISE & PLIMPTON LLP**
66 Hudson Boulevard
New York, NY 10001
(212) 909-6000
mwfriedman@debevoise.com
whtaft@debevoise.com
jfandino@debevoise.com
chwallace@debevoise.com

Robert Drain*
Lisa Laukitis*
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
One Manhattan West
New York, NY 10001
(212) 735-3000
robert.drain@skadden.com
lisa.laukitis@skadden.com

*Counsel to Gramercy Distressed Opportunity Fund LLC*

*/s/ Andrew H. Sauder*
Andrew H. Sauder (Bar No. 5560)
**DAILEY LLP**
1201 N. Orange St., Ste. 7300
Wilmington, DE 19801
(302) 415-3560
asauder@DaileyLLP.com

Michael Baratz*
Emma Marshak*
**STEPTOE LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
mbaratz@steptoe.com
emarshak@steptoe.com

Robert Drain*
Lisa Laukitis*
**SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP**
One Manhattan West
New York, NY 10001
(212) 735-3000
robert.drain@skadden.com
lisa.laukitis@skadden.com

*Counsel to G&A Strategic Investments I LLC,
G&A Strategic Investments II LLC,
G&A Strategic Investments III LLC,
G&A Strategic Investments IV LLC,
G&A Strategic Investments V LLC,
G&A Strategic Investments VI LLC,
G&A Strategic Investments VII LLC, and
Girard Street Investment Holdings LLC*

* Admitted *pro hac vice*