# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------

CRYSTALLEX INTERNATIONAL CORP.,   )
                               )

          Plaintiff,             )
                               )

        v.                  )      Misc. No. 17-151-LPS
                               )

BOLIVARIAN REPUBLIC OF VENEZUELA,  )
                               )

         Defendant.        )

------------------------------------------------------------

## SPECIAL MASTER'S REPLY IN SUPPORT OF HIS MOTION TO ENJOIN THE ALTER EGO CLAIMANTS FROM ENFORCING CLAIMS AGAINST THE REPUBLIC OR PDVSA BY RECOVERING FROM PDVH OR ITS SUBSIDIARIES IN OTHER FORUMS

OF COUNSEL:

Ray C. Schrock (Admitted *pro hac vice*)
David Lender (Admitted *pro hac vice*)
Alexander W. Welch (Admitted *pro hac vice*)
Chase A. Bentley (Admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray.Schrock@weil.com
David.Lender@weil.com
Alexander.Welch@weil.com
Chase.Bentley@weil.com

Myron T. Steele (#00002)
Matthew F. Davis (#4696)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
msteele@potteranderson.com
mdavis@potteranderson.com
bpalapura@potteranderson.com

*Counsel for Special Master Robert B. Pincus*

Dated: September 27, 2024
11766933

## TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.      The Court's questions confirm that an injunction is within the Court's authority and should be granted. .................................................................................................. 2

      A.      Why isn't the relief sought by the Injunction Motion more appropriately obtained from the New York and Texas courts where the Alter Ego Claimants' suits are pending? ..................................................................... 2

      B.      What efforts, if any, has the Special Master and/or any Sale Process Party made, or intended to make, to advise the New York and Texas courts of this Court's proceedings and the impact those proceedings may have on these? .................................................................................................................. 4

      C.      On what basis did bidders for the PDVH Shares come to "expect[] to purchase those shares free and clear of claims or encumbrances from judgment creditors of PDVSA?" (D.I. 1249 at 4) ................................................ 4

      D.      The Injunction Motion seems to request of the Court something akin to an "automatic stay" that might be issued from a Bankruptcy Court. Is this what the Special Master is seeking and, if so, are there any precedents for a non-bankruptcy court to grant such relief? ......................................... 6

      E.      If the Court determines that the Sale Process is an *in rem* or *quasi in rem* action, is the application of the *Princess Lida* doctrine "compulsory?" *See Dailey v. Nat'l Hockey League,* 987 F.2d 172, 176 (3d Cir. 1993). ...................... 7

      F.      In evaluating the Injunction Motion, to what extent should the Court consider, and what weight should the Court give to, the fact that the Alter Ego Claimants previously participated in this Court's process and failed to obtain the relief they sought? ............................................................... 9

II.     The Alter Ego Claimants' other arguments are also meritless. ....................................... 11

      A.     Standing is not an issue. ..................................................................................... 11

      B.     This Court can enforce an injunction against Girard Street. ................................ 12

      C.     The traditional injunction factors (if relevant) support an injunction. .................. 12

      D.     No discovery is necessary. .................................................................................. 14

      E.     Other unrelated suits provide no basis to deny the Injunction Motion. ................ 14

CONCLUSION ........................................................................................................................ 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Admin. Comm. of Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan v. Varco*,
   2002 WL 47159 (N.D. Ill. Jan. 14, 2002) ...................................................................8

*In re Baldwin-United Corp.*,
   770 F.2d 328 (2d Cir. 1985)........................................................................................13

*Bel-Ray Co. v. Chemrite (Pty) Ltd.*,
   181 F.3d 435 (3d Cir. 1999)........................................................................................12

*Broadway Tr. Co. v. Dill*,
   17 F.2d 486 (3d Cir. 1927)............................................................................................5

*Chapman v. Deutsche Bank Nat'l Tr. Co.*,
   651 F.3d 1039 (9th Cir. 2011) ......................................................................................8

*In re Checking Acct. Overdraft Litig.*,
   859 F. Supp. 2d 1313 (S.D. Fla. 2012) .........................................................................3

*Dailey v. Nat'l Hockey League*,
   987 F.2d 172 (3d Cir. 1993).......................................................................................7, 8

*In re Denby-Peterson*,
   941 F.3d 115 (3d Cir. 2019)..........................................................................................7

*In re Diet Drugs Prods. Liab. Litig.*,
   369 F.3d 293 (3d Cir. 2004)..................................................................................2, 3, 6

*EEOC v. Univ. of Pa.*,
   850 F.2d 969 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990) ...............................9, 10, 11

*Isaacs v. Hobbs Tie & Timber Co.*,
   282 U.S. 734 (1931).......................................................................................................7

*Looney v. Eastern T. R. Co.*,
   247 U.S. 214 (1918).......................................................................................................4

*Miners' Bank of Wilkes-Barre v. Acker*,
   66 F.2d 850 (3d Cir. 1933)............................................................................................5

*Murphy v. John Hofman Co.*,
   211 U.S. 562 (1909).......................................................................................................7

*Phillips Beverage Co. v. Belvedere, S.A.*,
    204 F.3d 805 (8th Cir. 2000) ............................................................................................9

*Princess Lida of Thurn & Taxis v. Thompson*,
    305 U.S. 456 (1939).................................................................................................4, 8

*SEC v. Homa*,
    514 F.3d 661 (7th Cir. 2008) ..........................................................................................12

*In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*,
    15 F.3d 1230 (3d Cir. 1994)............................................................................................12

*Time Warner Cable, Inc. v. GPNE Corp.*,
    497 F. Supp. 2d 584 (D. Del. 2007).................................................................................10

*Town of Chester v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017).........................................................................................................11

*U.S. v. Int'l Bhd. of Teamsters*,
    728 F. Supp. 1032 (S.D.N.Y.), *aff'd*, 907 F.2d 277 (2d Cir. 1990) ..........................................4

*U.S. v. Int'l Bhd. of Teamsters*,
    907 F.2d 277 (2d Cir. 1990).............................................................................................4

*U.S. v. N.Y. Tel. Co.*,
    434 U.S. 159 (1977).........................................................................................................13

*Waffenschmidt v. MacKay*,
    763 F.2d 711 (5th Cir. 1985) ..........................................................................................12

**Other Authorities**

    Fed. R. Civ. P. 65(d)(2)(C) .............................................................................................12

The Special Master respectfully submits this reply in further support of the Injunction Motion, D.I. 1248 and D.I. 1249 ("**Inj. Mot.**").[1]

## PRELIMINARY STATEMENT

The Alter Ego Claimants' Opposition ignores reality. The Alter Ego Claimants argue that "the purported overlap with this case does not exist" because they seek "a different kind of relief against a different party" independent from this Court's sale process. D.I. 1306 at 2 ("**Opp'n**"). But the reality is this: This Court is presiding over a process to compensate judgment creditors of the Republic and PDVSA by selling the PDVH Shares, the value of which is necessarily derived solely from the value of PDVH's assets. Over the past several years, the Court has designed a priority scheme to determine creditor recoveries, the Special Master has diligently endeavored to secure a value-maximizing bid, and numerous creditors have participated in the Court's process (including the Alter Ego Claimants). Now, the Alter Ego Claimants seek to enforce their claims against the Republic and PDVSA (the same claims they asserted before this Court) by seeking to recover directly from PDVH, to the detriment of creditors who are above the Alter Ego Claimants in this Court's priority waterfall.

The Alter Ego Claimants seek relief that is fundamentally different from any of the other actions they identify. Unlike liabilities that buyers expect to assume when purchasing a business, the Alter Ego Claimants seek to hold PDVH—and by extension, its future owner—responsible for *PDVSA's and the Republic's* liabilities, which total over $20 billion. In other words, if the Alter Ego Claimants are allowed to enforce in other courts the same claims they brought before this Court, the PDVH Shares would be devalued to pay PDVSA's and the Republic's debts, which is

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Procedures Order, D.I. 481 (the "**Sale Procedures Order**"), the July 27 Order, D.I. 646, or the Injunction Motion and accompanying brief, D.I. 1248-1249.

exactly the purpose of this proceeding.  Put another way, they seek a ruling that PDVH and PDVSA are one in the same and, thus, that the PDVH Shares in this Court's possession have no distinct existence. The Alter Ego Claimants studiously avoid addressing the ultimate result they seek and their reason for pursuing the Alter Ego Actions, but it is plainly to circumvent this Court and to try to secure a better recovery on the same claims from the same assets than this Court would provide them. The risk that the assets bidders are seeking to acquire could be diminished by the Alter Ego Claimants' judgments as well as by other copycat actions is impeding the sale process, and the recommended bid is thus conditioned on eliminating this uncertainty. *See* D.I. 1325-1. As the Special Master explained in the Injunction Motion, this is precisely the type of situation where an injunction is justified under the All Writs Act, the first-filed rule, and the *Princess Lida* doctrine. Indeed, the Third Circuit has recognized that an injunction is particularly appropriate "when a federal court is entertaining complex litigation" like this case and parties are "seeking to obtain through the back door what they were barred from receiving through the front." *In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 300, 306 (3d Cir. 2004) (internal quotation marks omitted).

In an effort to squarely address the questions posed by the Court in its September 11, 2024, Order on the Injunction Motion (D.I. 1259), the Special Master responds to each in turn, addressing the Alter Ego Claimants' arguments on these issues along the way as relevant. The Special Master concludes by addressing the Alter Ego Claimants' other, meritless objections.

## ARGUMENT

I. **The Court's questions confirm that an injunction is within the Court's authority and should be granted.**

A. **Why isn't the relief sought by the Injunction Motion more appropriately obtained from the New York and Texas courts where the Alter Ego Claimants' suits are pending?**

Granting the relief sought in the Injunction Motion is necessary to preserve the integrity of

this Court's sale process, to protect creditors who followed this Court's Sale Procedures Order and have priority over the Alter Ego Claimants, and to ensure that the bidders for and the eventual purchaser of the PDVH Shares are protected from collateral attacks on the assets they are seeking to purchase. This Court is in the best position to protect its own proceedings, and is therefore the most appropriate forum for seeking an injunction. It is this Court—and only this Court—that should determine how the value of PDVH and its subsidiaries is distributed to PDVSA's and the Republic's creditors, free from collateral challenges to this Court's priority scheme.

Pursuant to the All Writs Act, the Third Circuit has approved a court's use of its own power to enjoin litigants from pursuing other proceedings where there was "justifiable fear in the District Court . . . that the plaintiffs were seeking to obtain through the back door what they were barred from receiving through the front," because, without an injunction from the lead court, these proceedings would "render [a court-ordered] agreement (and the Court's jurisdiction) nugatory." *Diet Drugs*, 369 F.3d at 300, 306.[2] Pursuant to the first-filed doctrine, courts have similarly recognized that "it is no longer up to the second-filed court to resolve the question of whether both should be allowed to proceed," because allowing the second-filed action to proceed would "create a dangerous precedent" by "effectively encourag[ing]" other parties to follow the circumventer's lead by filing copycat cases, and thereby undermining the first-filed action. *In re Checking Acct. Overdraft Litig.*, 859 F. Supp. 2d 1313, 1325 (S.D. Fla. 2012). And, under the *Princess Lida* doctrine, as this Court has already exercised control over the relevant property, it should act to protect and preserve that authority.[3]

---

[2] The Alter Ego Claimants imply that the All Writs Act cannot apply to protect a federal court's authority unless parties are directly targeting the same *res* or explicitly seeking to overturn a specific order. However, they fail to cite any authority for this broad proposition. *See* Opp'n at 15.
[3] "The use of the writ of injunction, by federal courts first acquiring jurisdiction ov[er] the parties or the subject-matter of a suit, for the purpose of protecting and preserving that jurisdiction . . . is

Proceeding in each of the courts currently hearing the Alter Ego Actions would "siphon the time and energy of the Court[s]," "waste judicial resources," and further delay the sale process, a process where "time delayed is time lost." *U.S. v. Int'l Bhd. of Teamsters*, 728 F. Supp. 1032, 1048 (S.D.N.Y.), *aff'd*, 907 F.2d 277 (2d Cir. 1990); *see also United States v. Int'l Bhd. of Teamsters*, 907 F.2d 277, 281 (2d Cir. 1990) ("Motions under Section 1404(a) are thus an inadequate alternative to the injunction issued by the district court."). Those courts have not spent years overseeing a sale process, and thus, they lack this Court's deep understanding of the complexities of the sale process and the potential impact of the Alter Ego Actions on the sale process and other creditors. Moreover, it would be inefficient and impractical to seek relief in three different cases in front of three different judges in multiple jurisdictions. Doing so would risk inconsistent rulings from those courts and even more uncertainty—results that the All Writs Act, first-filed rule, and *Princess Lida* doctrine all seek to prevent.

**B.     What efforts, if any, has the Special Master and/or any Sale Process Party made, or intended to make, to advise the New York and Texas courts of this Court's proceedings and the impact those proceedings may have on these?**

The Special Master notified the New York and Texas courts presiding over the Alter Ego Actions of the Injunction Motion. A notice with copies of those communications was filed on this Court's docket. D.I. 1302-1302-3.

**C.     On what basis did bidders for the PDVH Shares come to "expect[] to purchase those shares free and clear of claims or encumbrances from judgment creditors of PDVSA?" (D.I. 1249 at 4).**

This Court's Sale Procedures Order provides for "the valid transfer . . . of good and marketable title to the PDVH Shares to the Successful Bidder *free and clear of all claims,*

---

[a] familiar and long established practice." *Looney v. E. Tex. Ry. Co.*, 247 U.S. 214, 221 (1918); *see also Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 467-68 (1939) (enjoining litigants from prosecuting action in another court).

*encumbrances, and liabilities*." D.I. 481 ¶ 14 (emphasis added). Specifically, consummation of a Sale Transaction "may constitute a full and complete general assignment, conveyance, and transfer of *all* of PDVSA's or any other person's right, title, and interest in the PDVH Shares." *Id.* Bidders thus have good reason to expect a sale of the PDVH Shares unencumbered by claims against its former parents, PDVSA and the Republic.

The Sale Procedures Order is consistent with the longstanding tradition of judicial sales. Courts sitting in equity may, under proper circumstances, order the sale of property free and clear of all encumbrances. *See Miners' Bank of Wilkes-Barre v. Acker*, 66 F.2d 850, 853 (3d Cir. 1933) ("A court of equity under proper circumstances has power to order a receiver to sell property free and clear of all [e]ncumbrances, and to deny the mortgagee the right to foreclose his mortgage."); *Broadway Tr. Co. v. Dill*, 17 F.2d 486, 486 (3d Cir. 1927) (similar). Courts often order that a judicial sale be completed free and clear of all encumbrances where such a sale will attract buyers and ensure the best price for the assets to maximize creditor recoveries. *See, e.g.*, *Dill*, 17 F.2d at 486. Bidders in this sale process have been unwilling to submit bids to acquire shares of a company that could become encumbered by claims against PDVSA and the Republic, which could total *over $20 billion*. *See* Inj. Mot. at 10; Strong Decl., D.I. 1250 ¶ 4. The recommended bidder has accordingly insisted on expansive protection from the Alter Ego Claimants as a condition precedent to closing and, further, as a condition to release of the sale proceeds. *See* D.I. 1325-1.

In their Opposition, the Alter Ego Claimants rely on the "basic tenet of corporate law that changes in ownership of a corporation's shares 'do[] not affect the corporation's liability for its past actions.'" Opp'n at 22 (alteration in original) (citation omitted). That may be true, but it has no relevance here. The Special Master does not seek to "extinguish claims against the underlying business," Opp'n at 23, only to prevent the Alter Ego Claimants from enforcing claims against the

seller of the business (PDVSA and the Republic) by collecting from the assets that are subject to the sale process. Allowing the Alter Ego Claimants to run to a different court to do so would undermine the protections this Court has guaranteed prospective purchasers and the fundamental protections that attend judicial sales, which is precisely why an injunction is needed.

> **D.** **The Injunction Motion seems to request of the Court something akin to an "automatic stay" that might be issued from a Bankruptcy Court. Is this what the Special Master is seeking and, if so, are there any precedents for a non-bankruptcy court to grant such relief?**

The narrow relief the Special Master seeks is distinct from the automatic stay and well within this Court's authority to grant. The Special Master seeks to enjoin the Alter Ego Claimants' efforts "to enforce judgments against PDVSA or the Republic by recovering from PDVH, its subsidiaries, or their assets in the Alter Ego Actions." Inj. Mot. at 20.[4] The Special Master is not requesting that the Alter Ego Claimants be enjoined from enforcing their judgments entirely. Under the proposed injunction, the Alter Ego Claimants would be free to enforce their judgments against other assets of PDVSA or the Republic, so long as they refrain *from attempting to recover from PDVH, its assets, or its subsidiaries*. The Special Master is merely requesting that the Alter Ego Claimants not seek "through the back door what they were barred from receiving through the front." *Diet Drugs*, 369 F.3d at 300. This relief is necessary to protect this Court's sale process and is consistent with the court's longstanding authority to protect its jurisdiction under the All Writs Act, first-filed rule, and *Princess Lida* doctrine. *See* Inj. Mot. at 11-20 (collecting non-bankruptcy cases awarding similar relief). Further, the Special Master is not seeking to enjoin all current and future litigation against PDVH and its subsidiaries deriving from CITGO's ordinary-course operations. This relief is narrowly tailored to judgment creditors seeking to jump the line set by

---

[4] Contrary to the Alter Ego Claimants' argument (Opp'n at 34), the proposed injunction is not vague at all and clearly seeks only this narrowly tailored, specific relief.

this Court and to enforce their claims against the parent by collecting from its subsidiary.

This limited relief is distinct from the automatic, universal relief afforded by the Bankruptcy Code's automatic stay.[5] But to the extent an analogy to bankruptcy is relevant, the relief the Special Master seeks is analogous to a bankruptcy court's power to enjoin litigants who interfere with its jurisdiction, which originates from precisely the same equitable powers the Special Master invokes. Indeed, a bankruptcy court's jurisdiction over the estate, now enforced through various provisions of the Bankruptcy Code, is "an application of the well-recognized rule that, when a court of competent jurisdiction takes possession of property through its officers, this withdraws the property from the jurisdiction of all other courts," and "the court originally acquiring jurisdiction is competent to hear and determine all questions respecting title, possession, and control of the property." *Isaacs v. Hobbs Tie & Timber Co.*, 282 U.S. 734, 737-38 (1931) (citations omitted). This power is "not peculiar to courts of bankruptcy, but applicable to all courts." *Murphy v. John Hofman Co*., 211 U.S. 562, 568-69 (1909).

E.   **If the Court determines that the Sale Process is an *in rem* or *quasi in rem* action, is the application of the *Princess Lida* doctrine "compulsory?" *See Dailey v. Nat'l Hockey League,* 987 F.2d 172, 176 (3d Cir. 1993).**

The Third Circuit has held that, if *Princess Lida* applies, abstention is "compulsory, 'not discretionary.'" *Dailey*, 987 F.2d at 176-77. It "is a 'mechanical rule' which requires that the court in which the second suit is brought yield its jurisdiction if the requisite 'property' showing is made." *Id.* Abstention is thus required under *Princess Lida* if "both actions, in part, involve the 'administration and restoration of corpus' and are not 'merely an adjudication of [a party's] right

---

[5] The automatic stay pursuant to section 362 of the Bankruptcy Code that applies to claims against debtors-in-possession is automatically triggered by the filing of a bankruptcy petition, and operates to stay "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate" which includes "all legal or equitable interests of the debtor in property." *In re Denby-Peterson*, 941 F.3d 115, 122 (3d Cir. 2019) (citations omitted).

or . . . interest' nor 'strictly in personam.'" *Id.* at 176. While *Princess Lida* is typically invoked in the second-filed case as a basis to dismiss for lack of jurisdiction, it also provides a basis to enjoin litigants from pursuing a claim in another court. *See Princess Lida*, 305 U.S. at 467-68.

The Alter Ego Claimants' efforts to avoid the application of the *Princess Lida* doctrine—and its more fundamental motivating principle, that there is a heightened need to restrict end-runs around the Court's jurisdiction in the context of *in rem* proceedings—come up short. Opp'n at 16-19. The Alter Ego Claimants emphasize that their claims are *in personam* rather than *in rem*. But Girard Street expressly seeks a turnover order to assert control over PDVH's assets, Inj. Mot. at 20; and all of the Alter Ego Claimants seek to subvert the very existence of PDVH (the *res* under this Court's jurisdiction) and to allow all claimants against PDVSA or the Republic to collect directly from PDVH's assets. In fact, the Alter Ego Claimants acknowledge that the relief they seek—a finding that "PDVH is an alter ego of PDVSA"—would "consolidate PDVH's estate into PDVSA's." Opp'n at 25. And they concede that, were they to succeed in proving their claims, jurisdiction over the PDVH Shares would extend "over the subsidiary's assets." *Id.* at 24 & n.12.

*Princess Lida* applies if "the relief sought requires that the second court exercise control over the property in dispute and such property is already under the control of the first court." *Dailey*, 987 F.2d at 176. The Court should not "exalt form over necessity" and should recognize that the "gravamen" of the Alter Ego Actions is to subvert this Court's jurisdiction over the PDVH Shares. *Chapman v. Deutsche Bank Nat'l Tr. Co.*, 651 F3d 1039, 1044 (9th Cir. 2011) (citation omitted). Even if the application of *Princess Lida* is not compulsory here, the doctrine at least serves to reinforce the basis for an injunction under the All Writs Act and first-filed rule. *Admin. Comm. of Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan v. Varco*, 2002 WL 47159, at *3-4 (N.D. Ill. Jan. 14, 2002) (granting injunction made pursuant to, among others, the All Writs Act

and *Princess Lida* doctrine).

> **F.    In evaluating the Injunction Motion, to what extent should the Court consider, and what weight should the Court give to, the fact that the Alter Ego Claimants previously participated in this Court's process and failed to obtain the relief they sought?**

While an injunction should still be entered even had the Alter Ego Claimants not participated in this Court's process, their participation makes this an easier case. The Alter Ego Claimants' decision to appear in this Court and then, after realizing they were unlikely to secure the relief they wanted, attempt to seek that relief elsewhere serves to confirm their intentional efforts to subvert this Court's orders. These facts align with other cases where Courts have applied the All Writs Act to prevent precisely this sort of forum shopping and circumvention. *See* Inj. Mot. at 13 (describing *Phillips Beverage Co. v. Belvedere, S.A.*, 204 F.3d 805, 805-06 (8th Cir. 2000)).

The Alter Ego Claimants' appearance in this Court, moreover, supports the application of the first-filed rule, which allows courts to enjoin the "subsequent prosecution of 'similar cases . . . in different federal district courts.'" *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990). Under the first-filed rule, the federal court "which first has possession of the subject *must* decide it." *Id.* (emphasis added). It is undisputed that this Court first "ha[d] possession" of the issue of the sale of the PDVH Shares to satisfy outstanding judgments from creditors of the Republic and PDVSA. And it is also undisputed that all three Alter Ego Claimants appeared before this Court in an effort to have their judgments be part of the waterfall of creditors that would recover from the sale of the PDVH Shares. Therefore, this Court was the first court in possession of the subject—creditors' recovery of claims against the Republic and PDVSA through the sale of the PDVH Shares—and it must be the court that decides these creditors' recovery from the proceeds of the Sale Transaction.

The Alter Ego Claimants' attempts to avoid the first-filed rule are unavailing. Opp'n at 26-

27. They misstate the rule as applying only where there is perfect identity between the parties and scope of the two cases. Opp'n at 26. But "Third Circuit precedent … does not specifically require the exact identity of the parties," and "applie[s] the first-to-file rule for cases involving the same issues." *Time Warner Cable, Inc. v. GPNE Corp.*, 497 F. Supp. 2d 584, 589 (D. Del. 2007) (citing *Univ. of Pa.*, 850 F.2d at 971). In any event, contrary to their assertions, all three Alter Ego Claimants appeared in this Court and sought to have their judgments enforced as part of this sale process. Inj. Mot. at 6-10. G&A Strategic and Girard Street misleadingly argue that they never "sought (or qualified for) affirmative relief in these proceedings." Opp'n at 21. But they sought relief by filing Attached Judgement Statements with this Court. D.I. 656, 672, 675; *see also* D.I. 481 ¶ 32 ("any holder . . . of a judgment *seeking to be an Attached Judgment* shall deliver to the Special Master . . . a statement indicating the amount such creditor contends remains outstanding") (emphasis added). The mere fact that G&A and Girard Street failed to complete the additional steps necessary to become Additional Judgment Creditors does not mean they never sought any relief. And all three Alter Ego Actions ultimately come down to the same issue presented here: namely, the priority and amount of recovery due to judgment creditors of PDVSA and the Republic from PDVH and its assets. The cases involve the same parties and same issues.

The Alter Ego Claimants also cite the fact that this "Court has never decided whether PDVH is PDVSA's alter ego" as a reason to allow their gambit. Opp'n at 20. But this is precisely because the Alter Ego Claimants *never* asserted those claims in this Court, despite having ample opportunity to do so. Indeed, the Alter Ego Claimants still do not seek permission from this Court to adjudicate those claims here. This is likely because the Alter Ego Claimants' scheme hinges on them pursuing their claims *outside* of this Court's sale process and priority scheme, in a blatant attempt to benefit only themselves at the expense of this Court's sale process and the other creditors

who have participated in it.

At bottom, the Alter Ego Claimants appeal to this Court's discretion, arguing that "even if the suits were sufficiently similar," the first-filed rule is "discretionary, not obligatory." Opp'n at 27. But while district courts have "discretion" to refuse to apply the rule "given appropriate circumstances justifying departure," the rule "counsel[s] trial judges to exercise their discretion by enjoining the subsequent prosecution of 'similar cases.[']" *Univ. of Pa.*, 850 F.2d at 971-72. There is no good reason to depart from the rule here given the Alter Ego Claimants' blatant efforts to circumvent this Court's proceedings by seeking to enforce the same judgments by the same claimants against the same assets in another forum.

## II.     The Alter Ego Claimants' other arguments are also meritless.

### A.     Standing is not an issue.

The Alter Ego Claimants dispute the Special Master's standing. Opp'n at 13-15. The Alter Ego claimants, however, do not dispute the standing of Crystallex or ConocoPhillips, who join in the Special Master's request for relief, *see* D.I. 1277, 1278, which renders the Special Master's standing beside the point. *See Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) ("[W]hen there are multiple plaintiffs" only "[a]t least one plaintiff must have standing to seek each form of relief requested.").

In any event, the Special Master has standing and authority to seek an injunction. The Special Master is an "arm of th[is] Court," D.I. 277 ¶ 20, and seeks injunctive relief in order to fulfill his Court-ordered mandate to "devise a plan for the sale of shares of PDVH as necessary to satisfy the outstanding judgment[s] . . . while maximizing the sale price." *Id.* ¶ 2. The Alter Ego Claimants reference cases concerning the impartiality of judicial officers in an effort to argue that the Special Master is improperly "protecting the interests of certain judgment creditors at all costs." Opp'n at 14. But the purpose of the Injunction Motion is not to protect particular creditors; rather,

it is to protect the integrity of the Court-ordered sale process and this Court's jurisdiction. Article III does not require this Court to stand by while its proceedings are undermined.

### B.     This Court can enforce an injunction against Girard Street.

The Alter Ego Claimants contend that the Court does not have personal jurisdiction over Girard Street. Opp'n at 27-28. But "a party is deemed to have consented to personal jurisdiction if the party actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum," *In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236 (3d Cir. 1994), or "seeks affirmative relief," *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443 (3d Cir. 1999). Girard Street proactively sought to become a holder of an Attached Judgment, filing both an Attached Judgment Statement, D.I. 672, and a Summary of Completed Steps, D.I. 760, filings that had no other purpose but to seek affirmative relief from this Court. *See supra* at 10. Notably, Girard Street nowhere disclaimed the Court's personal jurisdiction over it. Having subjected itself to this Court's jurisdiction in the hopes of relief, Girard Street cannot now shield itself from this Court's authority in an attempt to seek conflicting relief elsewhere. And even if personal jurisdiction is lacking, this Court could still enjoin Girard Street as it is in "active concert or participation" with the other Alter Ego Claimants in an effort to thwart this Court's sale process. Fed. R. Civ. P. 65(d)(2)(C).[6]

### C.     The traditional injunction factors (if relevant) support an injunction.

The Alter Ego Claimants go on at length about the Special Master's purported failure to satisfy the traditional injunction factors. Opp'n at 29-34. But, as the Special Master argued, it is not settled that the injunction factors need to be satisfied in order for the Court to enjoin the Alter

---

[6] "Jurisdiction over persons who knowingly violate a court's injunctive order, even those without any other contact with the forum, is 'necessary to the proper enforcement and supervision of a court's injunctive authority and offends no precept of due process.'" *SEC v. Homa*, 514 F.3d 661, 675 (7th Cir. 2008) (quoting *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985)).

Ego Actions under the All Writs Act. *See* Inj. Mot. at 14 n.3; *U.S. v. N.Y. Tel. Co.*, 434 U.S. 159, 171-77 (1977) (issuing a writ under the All Writs Act without applying the traditional injunction factors); *In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir. 1985) (issuing injunction under All Writs Act without applying traditional injunction factors as "[i]njunctions issued under the authority of the All-Writs Act stem from very different concerns than those motivating preliminary injunctions governed by" Federal Rule of Civil Procedure 65).

Even if the Court evaluates the permanent injunction factors, the Special Master explained why they are all satisfied. *See* Inj. Mot. at 14-15. Without an injunction, the parties are likely to suffer irreparable harm, as the Alter Ego Actions will continue to impair the Special Master's ability to achieve a value-maximizing sale and maximize recoveries for the judgment creditors, wasting years of time and resources that the parties and the Court have expended and continue to expend to participate in the sale process. There is no adequate remedy at law for the harm that the Alter Ego Actions are causing to the sale process: If the Alter Ego Actions preclude a value-maximizing sale, there will be no way to recover the foregone value for the benefit of the judgment creditors. Further, the balance of equities supports an injunction because the Alter Ego Claimants had the opportunity to—and did—attempt to seek recovery via this Court's sale process, but did not comply with all necessary steps and chose not to assert any alter ego claims before this Court. Instead, they are attempting an end run around this Court's process. An injunction also serves the public interest as it would ensure the enforcement of this Court's orders and set a precedent for protecting similar judicial sale processes in the future. As for the merits, the relevant question should be whether the Special Master has shown a genuine risk of interference with this Court's sale process—which he has. Whether the underlying Alter Ego Actions themselves have merit (they do not) need not be resolved for this Court to grant the injunction.

**D.      No discovery is necessary.**

Despite the Alter Ego Claimants' last-ditch effort to avoid an injunction by raising the possibility of discovery, Opp'n at 34-35, no discovery is needed. Indeed, the Alter Ego Claimants do not even identify what additional discovery the Court needs to resolve the motion—there is none. The Court could grant the injunction on the papers given the Alter Ego Claimants' blatant efforts to circumvent this Court's proceedings; and any relevant evidence needed to resolve the motion is contained in the Declaration of Raymond Strong, III. Mr. Strong will testify at the hearing on October 1, 2024, where the Alter Ego Claimants will have the opportunity to cross-examine him. Far from resting on "hearsay statements," Opp'n at 34-35, Mr. Strong's declaration reflects his own first-hand knowledge of the sale process, to which he will testify at the hearing and which more than suffices to justify the injunction.

**E.      Other unrelated suits provide no basis to deny the Injunction Motion.**

Finally, the Alter Ego Claimants repeatedly try to liken their gambit to the "over one-hundred actions pending in state and federal courts against PDVH and its subsidiaries," Opp'n at 1, arguing that it is an "irreconcilable conundrum as to why the Special Master did not seek a similar injunction with regard to other claims," *id.* at 15.

This argument does not pass the smell test. There are no other parties like the Alter Ego Claimants. Only the Alter Ego Claimants are judgment creditors of PDVSA and the Republic who tried to participate in this Court's sale process, were dissatisfied with the result, and, through their lawsuits, are actively attempting to circumvent this Court's process by proceeding against PDVH in another forum. As the Alter Ego Claimants admit, the other Additional Judgment Creditors who filed even remotely analogous actions have all agreed to stay or dismiss those actions in recognition of the fact that their claims are part and parcel of the sale process. *Id.* at 11. And—as the Alter Ego Claimants further concede—the PDVSA 2020 Bondholders are distinctly situated

because their notes are allegedly secured with a direct pledge of the CITGO Holding equity owned by PDVH. *Id.* at 6. The remainder of the actions the Alter Ego Claimants cite are plainly distinguishable. They are ordinary-course claims against Citgo Petroleum Company (*i.e.*, not claims against PDVSA or the Republic) involving, *e.g.*, personal injury or asbestos, *see* D.I. 1307-1 at 2-7, that are plainly not covered by the Special Master's requested injunction. These other suits have not interfered with the sale process in the same way that the Alter Ego Actions have, and their resolution is not a condition precedent to a value-maximizing sale, as the Alter Ego Actions are.

It is only the Alter Ego Claimants who are seeking to subvert this Court's process by seeking relief elsewhere that they could not secure in this Court. At least for now. But if the Alter Ego Claimants' gambit is successful, it is likely that other judgment creditors will file copycat suits to seek favorable treatment on their own claims on the same basis. *E.g.*, D.I. 1278 at 4. This will create a race to collect of the sort this Court's process was specifically designed to avoid. It will expose bidders to potential liability for *all* of the Republic and PDVSA's judgment debt—totaling over $20 billion—effectively guaranteeing that the PDVH Shares cannot be sold. As plainly demonstrated in the proposed sale transaction, D.I. 1325-1, failure to enjoin the Alter Ego Actions will unwind this Court's entire sale process and priority scheme, and it will set destructive precedent in this case and beyond.

## CONCLUSION

For the reasons set forth above, the Special Master respectfully requests that the Court grant the Injunction Motion.

OF COUNSEL:

Ray C. Schrock (Admitted *pro hac vice*)
David Lender (Admitted *pro hac vice*)
Alexander W. Welch (Admitted *pro hac vice*)
Chase A. Bentley (Admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray.Schrock@weil.com
David.Lender@weil.com
Alexander.Welch@weil.com
Chase.Bentley@weil.com

Dated: September 27, 2024
11766933

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

*/s/ Myron T. Steele*

Myron T. Steele (#00002)
Matthew F. Davis (#4696)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
msteele@potteranderson.com
mdavis@potteranderson.com
bpalapura@potteranderson.com

*Counsel for Special Master Robert B. Pincus*