# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Case No. 1:17-mc-00151-LPS |

## THE BOLIVARIAN REPUBLIC OF VENEZUELA AND PDVSA'S REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR A SHORT PAUSE IN THE SALE PROCESS

OF COUNSEL:

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Suite 500 E
Washington, D.C. 20001
(202) 220-1100
Donald.Verrilli@mto.com
Elaine.Goldenberg@mto.com
Ginger.Anders@mto.com

George M. Garvey
Adeel Mohammadi
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com
Adeel.Mohammadi@mto.com

A. Thompson Bayliss (#4379)
Christopher Fitzpatrick Cannataro (#6621)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE  19807
(302) 778-1000
bayliss@abramsbayliss.com
cannataro@abramsbayliss.com

*Attorneys for the Bolivarian Republic of Venezuela*

| | |
|---|---|
| OF COUNSEL:<br><br>Joseph D. Pizzurro<br>Kevin A. Meehan<br>Juan O. Perla<br>CURTIS, MALLET-PREVOST, COLT & MOSLE LLP<br>101 Park Avenue<br>New York, NY 10178<br>(212) 696-6000<br>jpizzurro@curtis.com<br>kmeehan@curtis.com<br>jperla@curtis.com | Samuel Taylor Hirzel, II (#4415)<br>Brendan Patrick McDonnell (#7086)<br>HEYMAN ENERIO GATTUSO & HIRZEL LLP<br>300 Delaware Avenue, Suite 200<br>Wilmington, DE 19801<br>(302) 472-7300<br>shirzel@hegh.law<br><br>*Attorneys for Petróleos de Venezuela, S.A.* |

**TABLE OF CONTENTS**

<b><u>Page(s)</u></b>

ARGUMENT ...................................................................................................................................1

    I.    Recent Developments, Including the Statements of the Special Master and Creditors, Confirm That an Effective Sale Process Cannot Move Forward Now. ...................................................................................................................1

    II.    The Results of the Venezuelan Election Present an Opportunity for the Legitimate Government to Finally Negotiate an Equitable Resolution of Claims. ................................................................................................................3

    III.    The Republic and PDVSA Are Not Seeking a Stay of Indefinite Duration. ............6

CONCLUSION ................................................................................................................................8

## TABLE OF AUTHORITIES

**Page(s)**

**STATE CASES**

*Manichaean Capital LLC v Exela Techs., Inc.*,
    251 A.3d 694 (Del. Ch. 2021)..................................................................................................2

The Bolivarian Republic of Venezuela (the "Republic") and Petróleos de Venezuela, S.A. ("PDVSA") submit this reply in further support of their motion for a few months' pause in the sale process. The opposition briefs — filed by the Special Master and the handful of creditors who stand to benefit from a fire sale of the PDVH shares — provide no persuasive reason to refuse the pause requested by the Republic and PDVSA. The recently filed briefs in fact highlight why the need for a pause is compelling, and its cost to any party is minimal.

Contrary to the rhetoric of some of the opposition statements, the Republic and PDVSA are not "recalcitrant debtors," ones who are able but not willing to pay. Quite the opposite, they have consistently declared their intention to resolve their debts with all creditors, once they regain control on the ground in Venezuela and therefore have the ability to arrange such a resolution. Now, with the next four months presenting the best opportunity to date for that to happen, and with factors entirely unrelated to the efforts of the Venezuela Parties having caused the Special Master to repeatedly postpone his recommendation — and now recommends an SPA that would not bind the putative buyer unless and until the Alter Ego Claims are disposed of by an order "satisfactory to the Buyer in its sole discretion"[1]— there is little to lose, and much to gain, by seeing whether that opportunity can be realized.

## ARGUMENT

I. **Recent Developments, Including the Statements of the Special Master and Creditors, Confirm That an Effective Sale Process Cannot Move Forward Now.**

The Court need not take the word of the Republic and PDVSA that the Alter Ego Claims stand in the way of a sale: the Special Master and creditors have confirmed it. For example, ConocoPhillips argues that the "mere prospect" of an Alter Ego Claim proceeding outside this Court "could render the PDVH shares unsaleable." D.I. 1278, at 2. After echoing the arguments

---

[1] Notice of Special Master Recommendation (D.I. 1325), Ex. A, section 7.2(e), at p. 79.

the Venezuela Parties have made in this Court against the efforts of Crystallex and other creditors to enforce judgments against the Republic by selling the assets of PDVSA,[2] ConocoPhillips states that "a successful reverse veil-piercing action would stop this proceeding in its tracks." *Id.* at 11.

The Special Master's sale recommendation itself confirms that no sale can occur while the Alter Ego Claims are pending.  He is not proposing to lock in a sale with a bidder who accepts the uncertainty associated with the Alter Ego Claims.  Instead, he is proposing a sale where the bidder is obligated to close only if the Alter Ego Claims have been disposed of.  Such a heads-I-win, tails-you-lose SPA is in nobody's interest, other than the interest of the bidder in foreclosing competition.

There is little reason to share the Special Master's optimism that his motion to enjoin the Alter Ego Plaintiffs will make the problem go away soon after the October 1 hearing — regardless of whether the motion is granted or denied.  *First*, the Court may deny his motion.  As the Special Master reports, if the Alter Ego Claims are permitted to proceed in New York or Texas, they "will not be resolved, or be close to resolved, on the merits by January 2025." D.I. 1308 at 8.  *Second*, no matter who prevails on the injunction motion, the losing side is almost certain to pursue an immediate appeal.  *Third*, granting the injunction motion may result in more litigation here before an SPA could become effective.  For example, ConocoPhillips proposes that if the Court grants the Special Master's requested injunction, "the [Alter Ego Plaintiffs], or any other litigant, should be free to pursue a reverse veil piercing-theory, but they should have to do so in this Court."  D.I.

---

[2]   *See, e.g., Supplemental Brief of the Bolivarian Republic of Venezuela, Tidewater Investment SRL v. Bolivarian Republic of Venezuela*, Case No. 19-mc-79 (D. Del. July 21, 2023), D.I. 53, at 7 (the "well-established policy of respecting corporate formalities . . . is especially strong where, as here, a creditor attempts 'reverse veil-piercing,' reaching the assets of a subsidiary to satisfy the debt of the parent" (citing *Manichaean Capital LLC v Exela Techs., Inc.*, 251 A.3d 694, 711 (Del. Ch. 2021))).

1278, at 3. The Republic and PDVSA take no position on that proposal, but even its prospect portends tying up any SPA for months.

Thus, with or without the pause the Republic and PDVSA seek, there is little doubt that litigation with the Alter Ego Claimants will prevent a sale from being consummated for months, and will prevent a sale from being consummated at all if the Alter Ego Plaintiffs prevail. All that the approval of a sale order under these circumstances would accomplish would be to lock out other potential buyers, lock in an SPA negotiated under the worst possible circumstances, and foreclose the possibility of a better outcome for the Republic, PDVSA, and their creditors alike. This remains true whether the better outcome ultimately consists of a global restructuring after the legitimate government gains control of the assets in Venezuela, or a sale negotiated for closer to fair value after the uncertainties associated with the Alter Ego Claims go away.

## II. The Results of the Venezuelan Election Present an Opportunity for the Legitimate Government to Finally Negotiate an Equitable Resolution of Claims.

The Special Master and objecting creditors ignore a central fact: that this is a moment of profound opportunity for Venezuela. Their election of opposition candidate Edmundo González Urrutia presents what may be Venezuela's best opportunity to escape the rule of dictator Nicolás Maduro, who has usurped Venezuela's assets and left the legitimate government unable to reach a resolution of Venezuela's outstanding obligations. To be clear: the legitimate government of the Republic is *not* in control of the overwhelming majority of Venezuela's numerous assets — including the world's largest crude oil reserves — and is therefore *not* in a position to be able to satisfy outstanding judgments rendered against the Republic. This political moment finally presents the opportunity for the legitimate government to regain control and negotiate an equitable restructuring solution that would serve all parties' interests. A transition would not merely be a change in ruling party; it would be the difference between a dictator (Mr. Maduro) continuing to

3

usurp a country's vast resources and practically dooming any attempt to resolve claims with creditors on the one hand, and its legitimate government finally gaining access to those resources to be able to reach an equitable resolution of claims on the other.

In a mocking tone, Crystallex inappropriately chides President-elect González for having been driven into exile in Spain. D.I. 1304, at 1-2, 14-15. Crystallex omits the fact that Mr. González was driven into exile following the killing of dozens and arrest of thousands of opposition leaders and protestors following the July 28 election — and the issuance of a "politically motivated arrest warrant" against Mr. González himself.[3] Crystallex improperly relies on a letter Mr. González was forced to sign under duress and which he repudiated as "absolutely null" and the product of "very intense hours of coercion, blackmail and pressure" from officials in the Maduro regime.[4] Far from electing to "throw in the towel" as Crystallex would have the Court believe, D.I. 1304, at 15, Mr. González vowed that he would "continue our fight to achieve our freedom and the restoration of Venezuela's democracy," and opposition leader Maria Corina Machado assured Venezuelans that Mr. González "would be back on Jan. 10 for a swearing-in ceremony marking the start of the next presidential term."[5] Just yesterday, 30 other nations joined the United States' demand "to restore democratic institutions peacefully in accordance with Venezuelan law, as well as the will of the people as expressed through their votes on July 28."[6]

---

[3] *Joint Statement on the Situation in Venezuela*, United States Department of State (Sept. 26, 2024), https://www.state.gov/joint-statement-on-the-situation-in-venezuela/; *see Venezuela: Brutal Crackdown on Protestors, Voters*, Human Rights Watch (Sept. 4, 2024), https://www.hrw.org/news/2024/09/04/venezuela-brutal-crackdown-protesters-voters.

[4] Julie Turkewitz & Genevieve Glatsky, *Venezuela's Opposition Leader Says He Was Forced to Recognize Maduro*, N.Y. Times (Sept. 19, 2024), https://www.nytimes.com/2024/09/19/world/americas/venezuela-letter-edmundo-gonzalez.html.

[5] Jorge Rueda *et al.*, *Opposition presidential candidate González flees Venezuela for asylum in Spain*, Associated Press (Sept. 8, 2024), https://apnews.com/article/venezuela-opposition-candidate-gonzalez-asylum-spain-749131a560dd9d762e04e201e43b9495.

[6] *Joint Statement on the Situation in Venezuela*.

4

The "millions of Venezuelans who continue to risk their lives and well-being"[7] to restore their democracy deserve better than Crystallex's dismissiveness.

At this critical moment for Venezuela's democracy, the Special Master and others allege that the Republic's motion is merely a "delay tactic." D.I. 1308, at 7 (capitalization removed). That is not how the more than 12 million Venezuelans who voted — and bravely voted in overwhelming numbers to oust Mr. Maduro — would characterize the recent political developments underlying the Republic's motion. That election was not a "delay tactic"; it was an expression of the will of the Venezuelan people who have now elected a leader who intends to negotiate an equitable resolution of creditor claims against the Republic. President-elect González's commitment to an equitable restructuring of claims against Venezuela follows the consistent position of the legitimate government of the Republic, which has repeatedly stated that it is "committed to a process for global restructuring of Venezuela's debt obligations." D.I. 188, at 1; *see also* Opening Brief of the Bolivarian Republic of Venezuela, *OI European Group, B.V. v. Bolivarian Republic of Venezuela*, Nos. 23-1647 & 23-1781 (3d Cir. May 17, 2023), D.I. 17, at 31 ("[B]oth the Interim Government and PDVSA intended to put in place a coordinated and orderly process for resolving legacy claims by creditors of the Republic and PDVSA." (internal quotation marks omitted)); Memorandum from Off. of the Special Att'y Gen. of the Bolivarian Republic of Venez., Guidelines for the Renegotiation of the Chávez/Maduro Era Legacy Public External Debt (July 1, 2019), docketed at D.I. 72-1, *Contrarian Capital Management v. Bolivarian Republic of Venezuela*, Case No. 19-cv-11018 (AT) (S.D.N.Y. Aug. 10, 2020).

The interests of Venezuela's democracy and its creditors coincide — or should coincide — in supporting the transition of power from Mr. Maduro to President-elect González. A short

---

[7]  *Id.*

pause in the sale process can facilitate both the restoration of democracy, and the global debt restructuring to which Venezuela's democratic forces are committed. Of course, there is no guarantee that the efforts of Venezuela's President-elect and other supporters of democracy, encouraged by the United States, will succeed. But the chance of restoration of democratic government in Venezuela is worth a few months' pause, especially since the Alter Ego Claims and other matters stand in the way of any quick consummation of a sale in any event.

By contrast, allowing the sale process to continue under these circumstances would affirmatively jeopardize the ability of the Republic to negotiate an equitable resolution of creditor claims. It is no surprise that the sale process itself has become highly politicized in Venezuela, with the Maduro regime continuing to use the sale process to attack the opposition and bolster his own illegitimate claim to the presidency.[8] *See also* D.I. No. 212-1, at 4 (U.S. Special Representative for Venezuela stating that the forced sale of CITGO would represent "a great political victory for the Maduro regime"). Thus, contrary to the Special Master's suggestion that pushing forward with the sale would not prevent the legitimate government of Venezuela from pursuing a global resolution, *see* D.I. 1308, at 2, continuing with the sale process would undermine the transition to democracy in Venezuela and ultimately the resolution of the Republic's and PDVSA's debts.

### III. The Republic and PDVSA Are Not Seeking a Stay of Indefinite Duration.

The relief the Republic and PDVSA seek is not an "indefinite hiatus" of "months or even years." D.I. 1308, at 4. It is a definite and circumscribed four-month pause in the sale process —

---

[8] *See, e.g.*, Kleybergel Gonzalez, *Maduro: TSJ en el exilio ayudó a robar los activos en el extranjero*, Últimas Noticias (Sept. 2, 2024), https://ultimasnoticias.com.ve/noticias/politica/maduro-tsj-en-el-exilio-ayudo-a-robar-los-activos-en-el-extranjero/; Werther Sandoval, *Citgo y el triunfo de Maduro*, Últimas Noticias (Aug. 4, 2024), https://ultimasnoticias.com.ve/noticias/pais-petroleo/citgo-y-el-triunfo-de-maduro/.

a process which the Special Master has himself postponed by a similar duration[9] — through January 2025, when the new presidential term in Venezuela is scheduled to commence. At that point, the question of whether Mr. Maduro will cede power to Mr. González will likely be substantially settled. And at that point, the parties are also likely to know whether the Special Master's effort to enjoin the Alter Ego Claimants has been successful. Either of these developments is likely to reveal whether a value-maximizing sale can occur, or even better, a global resolution of the Republic's and PDVSA's debts.

When the Special Master complains that, unlike Sri Lanka, the Republic has not already commenced restructuring negotiations with creditors and the International Monetary Fund, the Special Master overlooks the fact that Sri Lanka's negotiations followed a regime change in Sri Lanka.[10] Similarly, the prospect of the legitimate democratic government finally gaining control in Venezuela in January presents an opportunity for the Republic to do what the Maduro dictatorship had prevented: to work out a global resolution of its debts. By January, the parties will know whether the regime change that Venezuela's voters overwhelmingly demandeded, and the United States endorsed, will have brought the nation's domestic assets under the Republic's control and enabled it to negotiate. If more time is needed to complete a restructuring and is requested at that time, the Court will be in a position in January to assess whether the prospects

---

[9]  The Sale Hearing was tentatively set for July 15, 2024. D.I. 643, at 11. The Special Master then moved to postpone the Sale Hearing until September 19, 2024, D.I. 1201, which the Court granted, D.I. 1213. The Special Master then sought to postpone the Sale Hearing until October 15, 2024, D.I. 1232, at 4; the Court granted that motion and set the Sale Hearing for October 30, 2024, D.I. 1234. The Special Master again then sought to postpone the Sale Hearing until November 7, 2024, D.I. 1241, at 4, and the Court granted that motion, setting the Sale Hearing for November 19, 2024. Most recently, the Special Master sought another postponement of the Sale Hearing until December 3, 2024, D.I. 1282, which the Court denied in relevant part, D.I. 1283.

[10]  *See* Reuters, *Sri Lanka's economic crisis and debt restructuring efforts* (Apr. 16, 2024), https://www.reuters.com/markets/asia/sri-lankas-economic-crisis-debt-restructuring-efforts-2024-04-16/.

7

for a successful restructuring are sufficient to justify a continued pause, or whether a sale can and should take place. And if the Court believes it would be useful to have status conferences on a regular cadence between now and then, to assess whether the prospects have changed, the Republic and PDVSA would of course support that procedure.

## **CONCLUSION**

For the foregoing reasons, the Republic and PDVSA respectfully request that the Court exercise its discretion to grant a prudential four-month pause to the sale process deadlines, through January 2025, when the new presidential term in Venezuela will commence.

Dated: September 27, 2024

OF COUNSEL:

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Suite 500 E
Washington, D.C. 20001
(202) 220-1100
Donald.Verrilli@mto.com
Elaine.Goldenberg@mto.com
Ginger.Anders@mto.com

George M. Garvey
Adeel Mohammadi
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com
Adeel.Mohammadi@mto.com

Respectfully submitted,

*/s/ Christopher Fitzpatrick Cannataro*
A. Thompson Bayliss (#4379)
Christopher Fitzpatrick Cannataro (#6621)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807
(302) 778-1000
bayliss@abramsbayliss.com
cannataro@abramsbayliss.com

*Attorneys for Bolivarian Republic of Venezuela*

8

OF COUNSEL:

Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST, COLT
& MOSLE LLP
101 Park Avenue New York,
NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com

/s/     Brendan Patrick McDonnell
Samuel Taylor Hirzel, II (#4415)
Brendan Patrick McDonnell (#7086)
HEYMAN ENERIO GATTUSO & HIRZEL LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law

*Attorneys for Petróleos de Venezuela, S.A.*