THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., ) <br> ) <br> *Plaintiff*, ) <br> ) No. 1:17-mc-00151-LPS <br> v. ) <br> ) **PUBLIC VERSION OF D.I. 1309** <br> BOLIVARIAN REPUBLIC OF VENEZUELA, ) <br> ) <br> *Defendant*. ) <br> ) <br> _____ ) | |

**PDVH AND CITGO'S OBJECTION TO THE SPECIAL MASTER'S
MATERIAL MODIFICATION OF THE SALE PROCEDURES ORDER**

PDV Holding, Inc. ("PDVH"), and CITGO Petroleum Corporation ("CITGO") respectfully object, pursuant to Paragraph 10 of the Court's Sale Process Order ("SPO") (D.I. 481),[1] to the Special Master's apparent attempt to unilaterally modify the SPO.

**Preliminary Statement**

1. The Special Master is due to submit a recommendation to the Court on or about September 26, 2024, as to whether he recommends a winning bidder in these proceedings. D.I. 1283. As the Court is aware, CITGO and PDVH have objected to the design and implementation of the sale process, and they are extremely disappointed with the anticipated outcome: a recommended bid that is grossly inadequate and billions of dollars below the fair market value of PDVH. CITGO and PDVH maintain and reserve all objections they have made to date and all those that may arise once the Special Master submits his recommendation; at the appropriate time—namely twenty-one days after submission of the Special Master's recommendation (D.I.

---

[1] Capitalized terms not otherwise defined herein have the meanings given them in the SPO and its Bidding Procedures.

1283)—CITGO and PDVH will present their objections to the design, implementation, and outcome of the sale process to the Court. The instant objection in no way waives any prior or future objections CITGO and PDVH have or may have. Instead, CITGO and PDVH submit the instant objection to a very specific problem associated with the Special Master's anticipated recommendation and/or filing on or about September 26, 2024, namely that it appears he may submit an *executed* stock purchase agreement ("SPA") with a bidder. CITGO and PDVH object to submission of a signed SPA and request that the Court prohibit the Special Master from executing such an agreement. First, the SPO does not permit the Special Master to *execute* an agreement prior to court approval. Instead, the SPO requires that the Special Master submit a "proposed definitive agreement," which is subject to objections from interested parties and review by the Court before it can be executed. Executing an SPA now would thus be a material modification of the SPO to which PDVH and CITGO object, pursuant to Paragraph 10 of the SPO. Second, OFAC sanctions prohibit generating interests in blocked property, which a contract would purport to do. To the extent an executed agreement would have any legal effect without court approval (and it would not), it would violate OFAC sanctions in the absence of a specific license. Third, the Special Master has advised the Court that bidders are unwilling to agree to purchase the shares of PDVH unless the Court enters an injunction the Special Master has sought against other creditors of the Republic and Venezuela (D.I. 1248), which will be heard by this Court next Tuesday, October 1 (D.I. 1259). It would not make sense to sign an SPA days before the Court may resolve what the Special Master has described as a material condition of the bidder to closing a sale—namely, resolution of the Special Master's Motion to Enjoin the Alter Ego Claimants (D.I. 1248).[2]

---

[2] CITGO and PDVH assume that, over the past days, there have been intense negotiations between the Special Master and potential bidder regarding the terms of the draft SPA. CITGO and PDVH sent comments and objections to the draft SPA on September 13, 2024 (supplemented on September 19, 2024), but received no feedback on those comments

**Background**

2.     The Special Master is in the process of negotiating an SPA with a bidder ahead of the deadline to submit a Notice of Final Recommendation to the Court.[3] *See* D.I. 1282 ("[T]he Special Master and his Advisors have continued to engage in robust negotiations with a bidder."). This bidder might be identified as the "Successful Bidder" as contemplated in the SPO. In recent days, as the deadline for the Special Master's Notice of Final Recommendation approaches on September 26, 2024, D.I. 1283, the Special Master's advisors suggested to counsel for CITGO and PDVH that they intend to execute the SPA on or before that date if possible. After learning of those intentions, PDVSA and the Republic promptly advised the Special Master that the SPO does not permit him to execute any agreement with a bidder before submitting that agreement to the Court for review and approval. Exhibit 1 at 2. Rather, the SPO directs the Special Master to submit only a "proposed definitive agreement" to the Court. Exhibit 1 at 2. PDVSA and the Republic further advised the Special Master that the SPO contemplates an opportunity for interested parties to object and/or resolve any issues they identify in the proposed agreement. Exhibit 1 at 2. CITGO and PDVH similarly and promptly advised the Special Master that they object to any effort by the Special Master to file an executed SPA with the Court on or about September 26, 2024, explaining that executing an agreement before CITGO and PDVH's comments and objections to the draft SPA

---

or other developments regarding the SPA for more than ten days. CITGO and PDVH expected to be kept informed of such developments and actively consulted as the SPA evolved. D.I. 481 ¶ 42 ("The Special Master shall consult with the Sale Process Parties periodically and as appropriate in implementing the Sale Procedures."). At 6:35pm ET on September 24, 2024, the Special Master's advisors sent a revised draft SPA and additional documents, and asked for a call the following day to exhaustively review and resolve numerous outstanding issues. PDVH and CITGO have not yet had an opportunity to review these materials. PDVH and CITGO are filing a supplemental objection regarding the Special Master's lack of adequate consultation and responsiveness to PDVH and CITGO's proposals regarding the draft SPA. Due to restrictions on the draft SPA's circulation, that filing will be shared with a smaller subset of Sale Process Parties than this objection.

[3] The Special Master has described his upcoming filing as a "Notice of Final Recommendation." *E.g.*, D.I. 1282. The SPO does not use this term, but rather uses the term "Notice of Successful Bidder" to describe filing "with the Court a notice containing information about the Successful Bidder with the proposed definitive agreement attached thereto" SPO ¶ 12. PDVH and CITGO presume that the Notice of Final Recommendation and the Notice of Successful Bidder are synonymous.

3

had been resolved and before obtaining court approval would be contrary to the provisions of the SPO. Exhibit 2 at 1–2. CITGO and PDVH had separately advised the Special Master that an OFAC license would be required before executing an SPA. Exhibit 3.

3.  CITGO and PDVH's September 22 letter also explained that it would be ill-advised for the Special Master to sign an agreement with a bidder which the Special Master himself has indicated is unwilling to close a transaction unless the Court grants the Special Master's pending Motion to Enjoin Alter Ego Cases (D.I. 1248). Exhibit 2 at 2. The Court is due to hear oral argument on the injunction motion on October 1, 2024, days after the Special Master may submit an executed SPA. *See* D.I. 1259 ¶ 3.

4.  To preserve their rights under the SPO, PDVSA and the Republic, as well as CITGO and PDVH, promptly asked the Special Master to clarify whether he intends to execute an SPA with the likely Successful Bidder and further submit that executed SPA to the Court on or about September 26, 2024. Exhibit 1 at 2 (requesting a response "immediately"); Exhibit 2 at 3 (requesting response by 12:00 pm on September 24, 2024, and indicating that CITGO and PDVH were contemplating presenting the Court with an objection). In response, CITGO and PDVH received confirmation that the Special Master does intend to execute the SPA if possible. Accordingly, CITGO and PDVH now object to this material modification of the SPO.

## Argument

5.  Paragraph 10 of the SPO entitles the Special Master to make modifications to the SPO that are "not materially inconsistent with the Bidding Procedures and [the SPO]," subject to the right of the Sale Process Parties to present to the Court an objection to any such modification. D.I. 481 ¶ 10.

6. Elsewhere, the SPO provides that, as part of submission of a Notice of Successful Bidder, the Special Master will submit a "*proposed* definitive agreement" with the recommended Successful Bidder. SPO ¶ 12 (emphasis added). The Sale Process Parties—and any other interested entity—have a right to object to the Notice of Successful Bidder, including any recommendation by the Special Master that the Court confirm a winner and any documentation provided in support of such recommendation. *See* SPO ¶¶ 12–13, 16, 19; *see also* D.I. 1283 (setting deadlines for objections to the Notice of Final Recommendation). This process unequivocally contemplates that objections to the "proposed definitive agreement" may be presented to the Court.

7. Executing an SPA prior to court approval of the proposed contract (and the recommendation of a winning bidder more broadly) is therefore "materially inconsistent with" the SPO's directive that the Special Master submit a "*proposed* definitive agreement."

8. PDVH and CITGO object to such modification for three reasons.

9. *First*, The SPO does not permit the Special Master to make *any* unilateral, *material* modifications to the SPO or bidding procedures. In fact, even immaterial changes are subject to an opportunity for the PDVH and CITGO to object. SPO ¶ 10. The SPO therefore does not allow the Special Master to unilaterally decide to dispense with the directive to file a "proposed definitive agreement" alongside his final recommendation and to, instead, execute such an agreement before the Court has an opportunity to review it and resolve any objections to the agreement's terms. For that reason alone, no SPA should be signed.

10. Moreover, even if such a material modification were authorized, it is contrary to the SPO's assurance that all interested parties will have a full opportunity to object to all facets of the final recommendation—including to the "proposed definitive agreement." That assurance derives from Delaware law, which subjects any forced sale of stock under 8 Del. C. § 324 to court

approval, including an opportunity for interested parties to object. The Court should not permit the Special Master to depart from the SPO or Delaware law in this manner.

11. PDVH and CITGO may well object to the terms of any SPA—signed or unsigned—as part of their brief objecting to the outcome of the sale process (due, per D.I. 1283, twenty-one days after the submission of a Notice of Final Recommendation). It is contrary to the SPO and Delaware law, however, for them to be objecting to a fait accompli rather than a proposal for the Court to review as part of its overall assessment of the outcome of the Special Master's process.

12. *Second*, absent an OFAC license, executing an agreement with a bidder to purchase the shares of PDVH violates OFAC sanctions. As the Court is aware, the PDVH shares are blocked property, and contingent contracts are considered "property" under the Venezuela Sanctions Regulations. 31 CFR § 591.309. To the extent the execution of the SPA would thus give rise to any property interest (whether "present, future, or contingent," *id.*) without a license, it would violate federal law and be "null and void." *See* 31 CFR § 591.202(a); 31 CFR § 591.310.[4] No agreement may be executed prior to receipt of an OFAC license. PDVH and CITGO had previously advised the Special Master of this problem. Exhibit 3.

13. *Third*, it would be patently unreasonable for the Special Master to execute an SPA with a bidder that the Special Master and Evercore have averred is conditioning closing on this Court granting the Special Master's Motion to Enjoin Alter Ego Cases (D.I. 1248). The Special

---

[4] OFAC has previously taken enforcement actions against entities for entering into contingent contracts without a license. *See, e.g.*, *OFAC Issues a Finding of Violation to Aero Sky Aircraft Maintenance, Inc. for Violations of the Global Terrorism Sanctions Regulations*, OFAC (Dec. 12, 2019), https://ofac.treasury.gov/media/25886/download?inline ("The execution of a contract or contingent contract by a person subject to OFAC's jurisdiction with a person whose property and property interests are blocked is prohibited, unless authorized by OFAC or exempt by law."). Nor does OFAC's non-enforcement policy permit executing and an SPA, contingent or otherwise. *See* OFAC FAQ 1125 (noting General License 42 does not authorize "entry into" any negotiated agreement, "contingent or otherwise"); OFAC FAQ No. 1123 (noting that OFAC will not enforce sanctions against those participating in the process laid out in the SPO, citing General License 42 and OFAC FAQ 1125, but making clear "an additional license will be required before any sale is executed").

6

Master and Evercore have explained to the Court that bidders—including, presumably, the bidder the Special Master is negotiating an SPA with—are potentially unwilling to consummate a purchase the shares of PDVH unless this Court addresses the Alter Ego Cases. *E.g.*, D.I. 1249 at 6 (indicating that, absent an injunction, concerns regarding the Alter Ego Cases "pose a threat to the Special Master's *ability to advance the Sale Transaction with a willing bidder*") (emphasis added); *id.* at 2 (Special Master advising the Court that the Alter Ego Cases "threaten[] to undermine the sale process," "create a cloud of uncertainty over the PDVH Shares and thereby threaten to inhibit the Special Master's ability to close a value-maximizing sale transaction"); D.I. 1250 ¶ 6 (Evercore stating that the Alter Ego Cases are "interfering with the sale process and the Special Master's ability to effectively execute a sale transaction"); D.I. 1258 at 1–2. In light of this "cloud of uncertainty" impeding the willingness of any bidder to follow through with a purchase of the PDVH shares, it makes no sense to sign an SPA and announce a "winning bidder" *days* before the Court hears argument on the Special Master's proposed resolution of this issue. Moreover, mistakenly signing an SPA that is later withdrawn or terminated because the Court decided to not issue the injunction will cause great damage to CITGO, as its employees, suppliers, and others will mistakenly believe that control of CITGO will change when in fact no change will occur.

*   *   *

14. For the foregoing reasons, PDVH and CITGO object to the Special Master executing an SPA prior to court approval, as a material modification to the SPO. The Court should order the Special Master to refrain from executing an SPA unless and until it has been—at least—approved by this Court (after resolving objections to its terms by PDVH, CITGO, and any other interested entities). The Court should further order the Special Master to refrain from executing an

SPA until the Court resolves the Special Master's pending motion (D.I. 1248) and until OFAC grants authority to enter a contract creating interests in blocked property.

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | */s/ Alexandra M. Cumings* |
| OF COUNSEL: | Kenneth J. Nachbar (#2067) |
|  | Alexandra M. Cumings (#6146) |
| Nathan P. Eimer | Susan W. Waesco (#4476) |
| Lisa S. Meyer | Kirk Andersen (#7156) |
| Daniel D. Birk | 1201 North Market Street |
| Gregory M. Schweizer | Wilmington, DE 19801 |
| Hannah Bucher | (302) 658-9200 |
| EIMER STAHL LLP | KNachbar@mnat.com |
| 224 South Michigan Avenue | ACumings@mnat.com |
| Suite 1100 | SWaesco@morrisnichols.com |
| Chicago, IL 60604 | KAndersen@morrisnichols.com |
| (312) 660-7600 |  |
| NEimer@eimerstahl.com | *Attorneys for PDV Holding, Inc. and* |
| LMeyer@eimerstahl.com | *CITGO Petroleum Corporation* |
| DBirk@eimerstahl.com |  |
| GSchweizer@eimerstahl.com |  |
| HBucher@eimerstahl.com |  |

September 24, 2024