# Exhibit 5

# Public Version of D.I. 1311-5

EimerStahl LLP

224 South Michigan Avenue
Suite 1100
Chicago, Illinois 60604
Tel 312 660 7600  Fax 312 692 1718

Nathan P. Eimer

(312) 660-7601
neimer@eimerstahl.com

September 13, 2024

**Confidential**

<u>*Via Email*</u>

Mr. Robert Pincus
Special Master
108 Rockford Grove Lane
Wilmington, DE 19806
rbpincus@gmail.com

> Re: *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-151-LPS

Dear Special Master Pincus:

 I write on behalf of PDV Holding, Inc. ("PDV Holding") and CITGO Petroleum Corp. ("CITGO") (collectively, the "Companies") to address fundamental problems with the current draft of the Stock Purchase Agreement ("SPA"). In the Companies' view, rather than executing the SPA, you should submit the SPA to the Court for approval, and to OFAC for requisite licensing, once you and the Buyer have reached an agreement in principle. Doing so would avoid premature execution and fulfillment of an unlicensed and unauthorized SPA without unnecessary delay or downside—the Court must approve the ultimate transaction in any event. D.I. 481 ("Bidding Procedures") ¶ 2 (setting "a hearing to consider approval of any Sale Transaction"); *id.* ¶ 14 ("For the avoidance of doubt, subject to approval of any Sale Transaction by the Court, the Special Master shall have authority to select a Qualified Bid as the Successful Bid").

 ***First,*** as drafted, the SPA impermissibly contemplates execution and at least partial fulfillment before issuance of requisite specific OFAC licenses. The U.S. Government has made clear, however, that you cannot execute a sale without OFAC issuing additional specific licenses. In its April 7, 2023 letter to you, the Department of Justice (the "DOJ") affirmed the Court's understanding that "a specific license will be required to execute a sale." D.I. 553-1 at 2 (quoting *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-151-LPS, 2022 WL 611586, at *15 (D. Del. Mar. 2, 2022), *certification granted, judgment modified*, No. 17-mc-151-LPS, 2022 WL 1404702 (D. Del. May 4, 2022)). The DOJ further explained that "before providing a license for the disposition of blocked property, the United States Government will require due diligence about the identity of a potential purchaser and will



September 13, 2024
Page 2

consider relevant details of the proposed transaction" and noted that it would be "premature" to issue such a license or "express a definitive view on the issuance" of that license prior to identifying the details of the purchaser and the transaction. *Id.* On May 1, 2023, OFAC echoed the DOJ's policy in its update to FAQ 1123. OFAC FAQ No. 1123, *available at* https://ofac.treasury.gov/faqs/topic/1581 ("[A]n additional license will be required before any sale is executed."). U.S. sanctions also prohibit the execution of a contingent agreement transferring blocked property without a license. Contingent contracts are identified as "property" under the Venezuela Sanctions Regulations, 31 CFR § 591.309, rendering a contingent contract to transfer blocked property prohibited without a license. *See id.* at § 591.310. OFAC has previously taken enforcement actions against entities for entering into contingent contracts without a license. *See, e.g.*, *OFAC Issues a Finding of Violation to Aero Sky Aircraft Maintenance, Inc. for Violations of the Global Terrorism Sanctions Regulations*, OFAC (Dec. 12, 2019), https://ofac.treasury.gov/media/25886/download?inline ("The execution of a contract or contingent contract by a person subject to OFAC's jurisdiction with a person whose property and property interests are blocked is prohibited, unless authorized by OFAC or exempt by law.").

The U.S. Government's position is clear: no agreement may be executed prior to the receipt of a specific OFAC license. However, the current SPA contemplates exactly that. Notably, Section 6.16 does not require a license to be sought by the potential buyer until "fifteen (15) days after the Execution Date." Similarly, Section 6.25 contemplates executing the SPA prior to PDV Holding obtaining, or even applying for, a specific license authorizing the distribution of the Specified Subsidiaries. While the Sales Order allows for certain prefatory steps to the consummation of a transaction, such as marketing and bidding processes, the execution of the SPA moves beyond an *antecedent* step to the consummation of a transaction and instead *is consummation* of a transaction. Thus, the SPA plainly violates OFAC's licensing requirements. And to the extent you believe execution of the SPA is authorized because the agreement is contingent upon Court approval (notwithstanding the authority discussed above), then the obligations and covenants thereunder are merely contingent and cannot be fulfilled until OFAC has issued a license.

**Second,** the SPA could be read to oblige you to take actions well beyond the scope of your authority under the Sale Procedures Order and that should not be taken, if at all, until after entry by the Court of a Sale Order codifying appropriate and lawful obligations. As you know, the Companies declined to be parties to the SPA and have not agreed to be bound by any of its provisions. After the Companies informed you that they would not agree to be bound by provisions of the SPA purporting to impose obligations or covenants on them, you revised the SPA to provide that any such obligations or covenants were obligations of or covenants by the Special Master to cause PDVH, CITGO, and/or their subsidiaries and affiliates to take or refrain from taking specified actions, even though you do not have the power to do so. Under Section 6.22 of the SPA, for example, you would agree to "cause" PDV Holding and its subsidiaries to "terminate, sever or assign" certain contracts it has with PDVSA or an Affiliate thereof. Similarly, Section 6.25 contemplates you "caus[ing]" PDV



September 13, 2024
Page 3

Holding to "authorize, declare and effect a distribution of the Equity Interests" of certain Specified Subsidiaries to PDVSA, or to usurp the authority of the Board of PDV Holding under Delaware law to decide whether a dividend of this magnitude is appropriate, or even lawful. *See* 8 Del. C. § 170(a). 8 Del. C. §§ 170(a), 174(a).

We are aware of no basis under federal or Delaware law that would allow a court overseeing a judgment execution sale to alter the private contracts and corporate structure of PDV Holding and its subsidiaries without the consent of these entities and the contract counterparties, to usurp the authority of the Board of PDV Holding under Delaware law to declare a dividend, *see* 8 Del. C. § 170(a). 8 Del. C. §§ 170(a), 174(a), or to foist these Specified Subsidiaries with their liabilities onto PDVSA without its agreement or consent. Regardless of how the Court might rule on such questions, however, you certainly do not have the authority under Federal Rule of Civil Procedure 53 to cause the Companies or their affiliates to take any action, at least before entry of the Sale Order. Nor does the Sale Procedures Order provide you with such authority. Indeed, the SPO provides that "the Special Master shall work with PDVH and CITGO, as applicable, to negotiate such change, modification, amendment, consent, or waiver" to contracts of PDVH, CITGO, or their subsidiaries, and, without cooperation or consent, "shall not proceed absent further order from the Court." Bidding Procedures, ¶ 39. Again, the Companies and their affiliates do not agree to be bound by, and do not consider themselves bound by, any of the provisions of the SPA.[1]

\*\*\*\*\*

For the reasons outlined above, the Companies respectfully request that you revise the SPA and refrain from executing it until issuance of authorizing licenses from OFAC and approval from the Court.

Respectfully submitted,

Nathan P. Eimer

cc:   Ray Schrock
      Eoghan Keenan
      Alexander Welch
      Chase Bentley

---

[1] For the avoidance of doubt, the fact that PDVH and CITGO commented on or objected to particular provisions of the SPA should not be construed as approving of the SPA as a whole or as implying their agreement to be bound by the provisions on which they commented or to which they objected or by any provisions on which they did not comment or to which they did not object.

Chicago • Madison • Silicon Valley