IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., ) <br> ) <br> *Plaintiff*, ) <br> ) No. 1:17-mc-00151-LPS <br> v. ) <br> ) <br> BOLIVARIAN REPUBLIC OF VENEZUELA, ) <br> ) <br> *Defendant*. ) <br> ) <br> _____ ) | |

**PDVH AND CITGO'S MEMORANDUM IN SUPPORT OF
REDACTIONS TO PREVIOUSLY SEALED OBJECTIONS**

The Court has directed the unsealing of PDV Holding, Inc. ("PDVH") and CITGO Petroleum Corporation's ("CITGO") briefing and related exhibits in support of their Objection to the Special Master's Material Modification of the Sale Procedures Order (D.I. 1309 & D.I. 1319) and Supplemental Objection to the Special Master's Material Modification of the Sale Procedures Order (D.I. 1311)—unless a party files a redacted version of any such documents and a memorandum explaining the "legal and factual basis for any proposed redactions." D.I. 1322. PDVH and CITGO have filed public versions of these documents with certain redactions and hereby explain the legal and factual basis for their proposed redactions. Specifically, the disclosure schedules attached to the interim draft Stock Purchase Agreement ("SPA") contain highly sensitive, confidential business and information provided by PDVH and CITGO, which information was designated as "Confidential" under the Special Master Confidentiality Order (D.I. 291). The Special Master supports the redactions proposed by PDVH and CITGO.

**Background**

On September 24, 2024, PDVH and CITGO objected to the Special Master's intention to execute a proposed stock purchase agreement ("SPA") as part of his recommendation of a winning bidder. D.I. 1309 (objection), D.I. 1311 (supplemental objection, identifying objections to specific terms of draft proposed SPA); D.I. 1319 (Sept. 26 reply brief). The Court denied PDVH and CITGO's objections on September 26, 2024, expressly indicating that objections to terms of a proposed SPA could be presented to the Court as part of any objections briefing filed in response to a final recommendation by the Special Master. D.I. 1321.

All documents associated with PDVH and CITGO's filings were submitted under seal, pursuant to PDVH and CITGO's obligations under the Confidentiality Order governing this case. D.I. 291 ¶ 8. In particular, PDVH and CITGO's filings referred to terms of interim drafts of the SPA ultimately filed (in redacted form) at D.I. 1325-1. The Special Master had designated all drafts of the SPA as "confidential" information under the Confidentiality Order, which prohibits PDVH and CITGO from disclosing, summarizing, describing, or characterizing such material to anyone other than Sale Process Parties. D.I. 291 ¶ 4. On October 3, 2024, however, counsel for the Special Master informed counsel for PDVH and CITGO that the Special Master is withdrawing the confidentiality designation as to the interim drafts.

Separately, one exhibit—D.I. 1311-3—is a copy of the SPA's draft disclosure schedules, which—in addition to being "confidential" under the Confidentiality Order—also contains highly sensitive, confidential business and financial information regarding PDVH and/or CITGO. The Special Master and CITGO and PDVH mutually agreed in July 2024 that the Special Master would not seek to file the disclosure schedules publicly, including alongside the Special Master's

2

recommendation of a winning bidder. The Special Master continues to support the sealing of the schedules.

PDVH and CITGO have filed public versions of D.I. 1309, 1311, 1319, and their associated exhibits, with D.I. 1311-3, the disclosure schedules, redacted in its entirety.

## Legal Standard

While the public has a presumptive right to access documents filed in court, that presumption is overcome where the interest in redacting such material "outweighs" the public's interest in having access to it. *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019). The party seeking to maintain documents under seal must demonstrate that the material "is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* at 672. The Third Circuit requires specific identification of the harm that would be caused by disclosure on a document-by-document basis. *Id.* at 672–73; *accord Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 507 (D. Del. 2012) (requiring party seeking to seal to demonstrate "good cause" for redactions or sealing, namely that "disclosure will work a clearly defined and serious injury"). "[S]ources of business information that might harm a litigant's competitive standing" constitute the type of judicial records that can warrant sealing. *Avandia*, 925 F.3d at 679. And, where a court gives assurances of confidentiality to a party regarding certain material during the conduct of litigation, such party's reliance on such assurances is "sufficient to outweigh the public's common law right of access." *Id.* at 676 (citing *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 222 (3d Cir. 2011)). The Confidentiality Order governing these proceedings likewise permits sealing confidential information for "good cause." D.I. 291 ¶ 9.

## Argument

**I. D.I. 1311-3 Should Be Sealed Because It Contains Confidential Business and Financial Information of CITGO and PDVH and Because CITGO and PDVH Provided These Materials to the Court and Special Master in Reliance on Assurances that They Would Remain Confidential.**

Good cause exists for maintaining the disclosure schedules (D.I. 1311-3) under seal, namely: (1) release of the confidential business information contained in the document threatens to harm CITGO (and the Special Master and bidder) and the disclosure schedules were properly filed under seal pursuant to the Special Master Confidentiality Order, and (2) the disclosure schedules were a necessary part of the Special Master's negotiations with bidders, which the Special Master assured CITGO would not be made public.

*First*, the disclosure schedules are "sources of business information that might harm a litigant's competitive standing" if made public. The Third Circuit has affirmed sealing judicial records in this context. *Avandia*, 925 F.3d at 679. Here, the draft disclosure schedules (158 pages in total) contain, *inter alia*, information about CITGO and PDVH's business, financial, and legal affairs, including, for example, information about commercial contracts, legal exposure, and nonpublic financial statements. Such information would—if made public—threaten to harm CITGO (and, if the sale process is consummated, the winning bidder) by providing confidential, competitively-sensitive information to CITGO's competitors.

At the time they provided the information contained in the disclosures to the Special Master, PDVH and CITGO designated the information Confidential pursuant to the governing Confidentiality Order. D.I. 291. That order provides that "[a]ny Party or ConocoPhillips may designate any documents or information as 'Confidential Information' if such party in good faith believes that such documents or information contain non-public, confidential, proprietary, or commercially sensitive information that requires the protections provided in this Order." *Id.* ¶ 1.

The non-public business information described above unquestionably meets this standard. The Confidentiality Order already contains a finding that "[t]here is good cause to provide confidential treatment" to such information and to require its filing under seal, subject to review by the Court. *Id.* ¶¶ 8–9.

*Second*, CITGO and PDVH provided the information in the disclosure schedules to the Special Master after being assured that it would remain confidential and because it was a necessary component of his negotiations with bidders. The Third Circuit has affirmed sealing documents in a similar posture: where parties to a settlement agreement obtained assurances from a court that the terms of a settlement would remain under seal, and where the parties "would not have entered into the settlement agreements but for the court's assurance of confidentiality," it was proper for a court to deny a request by a third party to unseal portions of a transcript that discussed settlement terms. *Avandia*, 925 F.3d at 675–76 (discussing *LEAP Sys.*, 638 F.3d at 221–2).

Similarly here, the Special Master assured CITGO and PDVH in July that he would never seek to file the disclosure schedules publicly, and such disclosures were *necessary* for the Special Master to negotiate an SPA with the recommended winning bidder. In particular, in July 2024, in response to a question from CITGO's counsel about the confidentiality of the disclosure schedules, the Special Master's counsel confirmed that they had "no expectation that the disclosure schedules will be made public"—by the Special Master or by a bidder. Moreover, no serious potential buyer could assess their willingness to purchase the PDVH shares without the disclosures. CITGO and PDVH relied on the Special Master's assurance of confidentiality when exchanging revisions to the disclosure schedules and when submitting the document as a sealed exhibit to this Court.

Releasing this competitively sensitive information to the public in such circumstance is wholly inappropriate.[1]

Competitive harm, necessity for judicial functions, and reliance on a judicial officer's assurances of confidentiality are all bases under Third Circuit precedent to maintain the disclosure schedules under seal. *Avandia*, 924 F.3d at 672–73, 676. The Court should grant PDVH and CITGO's motion on those bases alone.

Additionally, the public's interest in the disclosure schedules is effectively nonexistent. PDVH and CITGO only submitted the disclosure schedules to the Court as part of its supplemental objection (D.I. 1311) to provide full context of a chronology of events. In particular, PDVH and CITGO's objection was, in part, related to what PDVH and CITGO argue was inadequate communication between CITGO, PDVH, and the Special Master during the SPA negotiation process; in explaining the history of communications between CITGO, PDVH, and the Special Master, PDVH and CITGO concluded it was important to advise the Court of *all* recent exchanges—including both a September 13 draft SPA with recommended changes by PDVH and CITGO (D.I. 1311-2) and a September 19 draft of the disclosure schedules (D.I. 1311-3). The draft disclosure schedules were provided to the Court as evidence of the timing of correspondence between the Special Master, CITGO, and PDVH; their *contents* were not discussed in the briefing or otherwise relevant to resolution of PDVH and CITGO's supplemental objection. The instant

---

[1] Indeed, CITGO and PDVH were, in fact, *obligated* by two court orders to cooperate with any requests by the Special Master for information supplied in the disclosure schedules. *E.g.*, D.I. 481 ¶ 34; D.I. 277 ¶ 19. And as the Special Master's counsel has recognized, CITGO and PDVH have worked constructively with the Special Master in an effort to try to maximize the value of the sale process (despite CITGO and PDVH's objections to the process itself). *E.g.*, D.I. 1311-1 at 21:11–20. Such factors further counsel against disregarding CITGO and PDVH's reliance on the Special Master's assurance of confidentiality.

motion explains all the public needs to know about the document for purposes of understanding its relevance to PDVH and CITGO's supplemental objection.[2]

Finally, the disclosure schedules submitted (D.I. 1311-3) were a non-final draft containing proposed changes—not a final document. Providing this document to the public would only threaten to cause confusion, which is hardly necessary, as the Court has already *denied* PDVH and CITGO's objection to the Special Master executing an SPA. D.I. 1321. If the disclosure schedules are attached to a future objection to a final recommendation by the Special Master, the Court can reassess at that time whether the public's presumptive access to court-filed documents supersedes CITGO's interest in protecting its sensitive information and reliance on the Special Master's assurances that he would never seek to file the disclosure schedules publicly.

## Conclusion

PDVH and CITGO respectfully request that the Court approve the continued sealing of D.I. 1311-3. The Special Master supports PDVH and CITGO's request.

---

[2] Given the Special Master's previous acknowledgment to CITGO and PDVH that the disclosure schedules need not be made public as part of his recommendation to the Court, publicizing this document is not—and will never be—necessary to assessing any recommendation of a winning bidder that the Special Master may submit.

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  |  |
|  | */s/ Alexandra M. Cumings* |
| OF COUNSEL: | Kenneth J. Nachbar (#2067) |
| Nathan P. Eimer | Alexandra M. Cumings (#6146) |
| Lisa S. Meyer | Susan W. Waesco (#4476) |
| Daniel D. Birk | Kirk Andersen (#7156) |
| Gregory M. Schweizer | 1201 North Market Street |
| Hannah Bucher | Wilmington, DE 19801 |
| EIMER STAHL LLP | (302) 658-9200 |
| 224 South Michigan Avenue | KNachbar@mnat.com |
| Suite 1100 | ACumings@mnat.com |
| Chicago, IL 60604 | SWaesco@morrisnichols.com |
| (312) 660-7600 | KAndersen@morrisnichols.com |
| NEimer@eimerstahl.com |  |
| LMeyer@eimerstahl.com | *Attorneys for PDV Holding, Inc. and* |
| DBirk@eimerstahl.com | *CITGO Petroleum Corporation* |
| GSchweizer@eimerstahl.com |  |
| HBucher@eimerstahl.com |  |

October 3, 2024