## **EXHIBIT A**

womblebonddickinson.com



**WOMBLE BOND DICKINSON**

September 25, 2024

The Honorable Leonard P. Stark
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801

Womble Bond Dickinson (US) LLP

1313 North Market Street
Suite 1200
Wilmington, DE 19801

t:  302.252.4320
f:  302.252.4330

Kevin J. Mangan
Partner
Direct Dial: 302.252.4361
Direct Fax: 302-661-7729
E-mail: Kevin.Mangan@wbd-us.com

**Re:** *Crystallex International Corp. v. Bolivarian Republic of Venezuela,* **Case No. 17-mc-151**

Dear Judge Stark:

We represent Gold Reserve Inc. ("Gold Reserve") in these proceedings.  Gold Reserve is both an Additional Judgment Creditor and a Potential Bidder.

Yesterday, Gold Reserve filed with the other five members of the "Six Creditors" group its opposition to Venezuela's and PDVSA's Motion for a Short Pause in the Sale Process (the "Venezuela Stay Motion") (D.I. 1272).  The purpose of this letter is to bring to the Court's attention two additional issues implicated by the Venezuela Stay Motion and the Court's September 20 and 25 Oral Orders (D.I. 1283, 1313).

In the past two months, the Sale Process has been extended three times at the Special Master's request, the Venezuela Stay Motion remains pending, and the date for execution of the SPA appears to have been extended per today's oral order (D.I. 1313).  Gold Reserve has not been given access to the sealed objections filed by CITGO Holding and PDVH (D.I. 1309), but if a further extension of the Sale Process dates has been (or will be) requested, or if the two issues identified herein are not addressed in the forthcoming Sale Motion, then Gold Reserve respectfully requests that the Court set an expedited briefing schedule to resolve these issues.  This, in Gold Reserve's view, would assist in achieving a value-maximizing Sale Transaction.

This letter is filed under seal because it discloses Confidential Information under the Non-Disclosure Agreement entered into between Gold Reserve and the Special Master.

Counsel for Gold Reserve conferred with counsel for the Special Master before submitting this letter and the Special Master's position is as follows:  (1) the Special Master consents to Gold Reserve's request to file this letter under seal; but (2) the Special Master does not consent, at this time, to Gold Reserve's request that the Court set an expedited briefing schedule.

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

**1. The Special Master Has Not Yet Disclosed the Procedures for the Topping Period**

A critical element in achieving the value-maximizing Sale Transaction that is the objective of the Sale Process is the existence of a viable "Topping Period," i.e., the period of time in which Potential Bidders may submit Superior Proposals ("Topping Bids") after the Special Master files the Notice of Successful Bid ("Sale Motion").

The existence of a viable Topping Period is critical to the Sale Process for several reasons. First, the Special Master has been engaged in exclusive negotiations with one bidder for the past seven weeks, since August 7, 2024. During this period, no other person has been able to submit bids or have substantive discussions with the Special Master. As such, the value of the bid in the forthcoming Sale Motion has not yet been tested by competitive bidding and will not be able to be tested, and thus confirmed to be the maximum value bid, until a viable Topping Period occurs.

Second, relatedly, a viable Topping Period will help insulate the Sale Process from any value objections lodged by the Venezuela Parties or Additional Judgment Creditors whose judgments are not satisfied by the value of the Recommended Bid.

Third, a viable Topping Period is of particular importance to Gold Reserve. As the Court may be aware, Gold Reserve submitted a Qualified Bid by the June 11, 2024 deadline, and subsequently was informed by the Special Master that its bid had the highest value. However, on the back of the then-existing July 31, 2024 Sale Motion deadline, the Special Master directed Gold Reserve to abandon its bid and, by July 10, 2024, join with the bid submitted by either CVR Energy or Elliot Investment Management LP ("Elliot"). Gold Reserve was reticent to do this but was assured by the Special Master that its interests would be protected by the Topping Period, including Gold Reserve's ability to participate in the same by submitting its own Topping Bid.[1]

Gold Reserve thus joined with CVR Energy by the Special Master's July 10, 2024 deadline. During the course of the ensuring negotiations, the Special Master represented to CVR Energy that its combined bid with Gold Reserve had the highest value. However, on July 29, 2024, the Special Master declared an "impasse" and on or about August 7, 2024, ceased negotiations with CVR Energy altogether. That same day, the Special Master informed Gold Reserve that he had entered into an exclusivity agreement with another, unidentified bidder ("Bidder X").

Since then, while the Special Master has confirmed to Gold Reserve that there will be a "viable" Topping Period, the Special Master has refused to disclose what the procedures for the Topping Period will be.[2] Instead, the Special Master has stated that such disclosure is prevented by his exclusivity agreement with Bidder X, and will only be made public when the Sale Motion is filed. This non-disclosure has effectively prevented Gold Reserve from preparing a Topping Bid in advance of the Sale Motion being filed.

---

[1] Gold Reserve (and CVR Energy) have reserved their rights with respect to any claims or objections related to their prior bids.

[2] For example, the Special Master has not disclosed the timing for submitting a Topping Bid, the required contents for any such bid, whether the Topping Period procedures will purport to include a termination fee that is materially higher than the $100 million termination fee included in the Bid Draft SPA and/or a superior bid threshold (no such term was included in the Bid Draft SPA).

## 2. The Special Master Has Restricted Access to the Data Room to Bidder X

Robust, competitive Topping Bids also cannot be prepared without access to the due diligence materials in the Data Room.  The Data Room has been open to all Potential Bidders since it was created in late 2023.  However, in consequence of the exclusivity agreement that the Special Master apparently entered into with Bidder X, the Special Master closed the Data Room to all other persons.  The inability to access the Data Room has prevented Gold Reserve (and others) from being able to prepare Topping Bids in advance of the filing of the Sale Motion.

*****

In Gold Reserve's view, the Topping Period procedures should have already been made known, and the Data Room opened, to all Potential Bidders so that adequate time existed to prepare Topping Bids before the Sale Motion was filed.  The Special Master did not agree, and Gold Reserve has reserved its rights on these issues.

In the event the Sale Motion is filed on or about September 26, 2024, as is now scheduled, Gold Reserve will take up any issue with the Topping Period procedures, including Data Room access, once such procedures are made public in the Sale Motion.  However, if a further extension of the Sale Process is requested by the Special Master, or if the Topping Period procedures, including Data Room access, are not disclosed in the Sale Motion, Gold Reserve respectfully requests that the Court set an expedited briefing schedule to resolve the two issues identified herein, i.e.:

> (1) whether the Special Master should, at present, disclose the Topping Period procedures to all Potential Bidders; and

> (2) whether the Special Master should, at present, reopen the Data Room to all Potential Bidders.

We appreciate the Court's consideration of this request.

Respectfully,

**Womble Bond Dickinson (US) LLP**

*/s/ Kevin J. Mangan*
Kevin J. Mangan (Del. Bar No. 3810)

Matthew H. Kirtland (admitted *pro hac vice*)
**NORTON ROSE FULBRIGHT US LLP**
799 9th Street NW, Suite 1000
Washington, DC 20001
Telephone: 202-662-0200
matthew.kirtland@nortonrosefulbright.com

cc: Counsel to Special Master