# EXHIBIT B-4

**Exhibit B-4**

**AP Judgment Creditors**

The following is submitted on behalf of the following Additional Judgment Creditors: Gold Reserve, Rusoro, Tidewater, Red Tree, Contrarian, and Valores Mundiales (the "**Alternative Proposal or 'AP' Judgment Creditors**")).[1] The AP Judgment Creditors collectively hold circa $4.1 billion in attached judgments, which represents over 50% of the first 19 attached judgments in the priority order set by the Court.

The AP Judgment Creditors, following the meet-and-confer with the Special Master, review of the Special Master's proposed schedule, extensive consultations, including with the Sale Process Parties (including the Venezuela Parties) and other Additional Judgment Creditors, are of the view that the process and scheduling modifications set forth below will improve substantially improve the Sale Process.

General Observations on Status of Sale Process

The AP Judgment Creditors are concerned about the state of the Sale Process and the extent to which it will achieve its core objective: a value-maximizing transaction that results in the satisfaction of the maximum number of attached judgments. To be clear, the AP Judgment Creditors do not believe that the bid submitted by Elliott Management Inc./Amber Energy (the "**Elliott bid**") satisfies this objective, and believe further that this bid is deficient in many key respects. Among other things, it appears that the bid's headline price will be subject to material reductions based on pre-distribution deductions; that the escrows will result in years-long delays in the distribution of proceeds to the attached judgment creditors; and that it improperly modifies the existing priority order by allowing one or more judgement creditors to obtain payment (through a purchase price deduction) ahead of all others, including even Crystallex.

General Observations on Timing

In the schedule recommended by the Special Master and adopted by the Court as of May 2024, there was to be a relatively short period of time in between submission of Final Bids on June 11, 2024, and the Sale Hearing on July 15, 2024. During this period: the Special Master was to have selected a winning bid; topping bids were to have been submitted; a final recommended winning bid was to have been selected; objections were to have been submitted; and the Sale Hearing was to have been held. While this schedule may have been ambitious, what was supposed to have taken four (4) weeks has now stretched to more than nine (9) months.

There have been various reasons for this substantial extension of the schedule, but one of the primary reasons is that the Data Room was not completed by the June 11, 2024 Final Bid deadline, including finalization of the critical Citgo SPA schedules. Now, this problem has been solved. As such, the more expedited time periods of the prior schedule should be able to be achieved, and the

---

[1] Red Tree and Contrarian join the AP Judgment Creditors in all respects with the sole exception that Red Tree and Contrarian believe more time – specifically, 60 days – is needed for the topping period.

AP Judgment Creditors have proposed their schedule accordingly.

Response to the Special Master's Proposed Position

The AP Judgment Creditors respectfully disagree with the Special Master's proposed position in several key respects.[2]

First, the AP Judgment Creditors do not agree with the Special Master's proposal to file a Bid Protection Motion in respect of an Elliott bid that was, and is, subject to near-unanimous opposition.[3] The time and expense required to litigate this motion will not be an efficient use of the parties' and the Court's resources, particularly given that: (a) the bid is still highly contingent, being conditioned on at least two future events – the Court granting the pending Injunction Motion and the Court granting the Bid Protection Motion; (b) the bid has not yet actually been recommended to the Court; (c) the terms of the bid are not yet finalized, with key documents still apparently subject to negotiation; and (d) not all of the bid terms will be made available to all parties-in-interest, per the Special Master's proposal that key documents should remain redacted even after an "unredacted" copy of the Elliott bid SPA is filed.

However, in the event the Special Master proceeds with the Bid Protection Motion, the AP Judgment Creditors will oppose it, and their further position is as follows:

- the litigation of this motion should not further delay the Sale Process – the alternative schedule proposed by the AP Judgment Creditors avoids such delay;

- the AP Judgment Creditors agree with Crystallex's request for a 21-day response period;

- the AP Judgment Creditors request that any legal fees and expenses incurred by the Special Master in litigating this motion be segregated and charged to Elliott, given that the motion is being filed to protect and advance Elliott's interests rather than those of the attached judgment creditors.

Second, with respect to Question #5, the AP Judgment Creditors do not agree with the Special Master's refusal to reopen the Data Room until the Topping Period begins or his proposal to impose a new pre-condition to accessing the Data Room. Both of these proposals are a form of

---

[2] With respect to Question #1, the AP Judgment Creditors take no position on what legal obligations the Special Master actually has assumed in respect of the Elliott bid, given that this is an issue for the Special Master. However, the AP Judgment Creditors do observe that the Special Master has consistently *acted* as if it is legally bound, including in particular the Special Master repeatedly relying on its stated exclusivity "agreement" with Elliott to *inter alia* refuse to re-open the Data Room since August 2024, refuse to disclose the Topping Period procedures, and refuse to disclose the unredacted Elliott SPA.

[3] With respect to Question #3, the AP Judgment Creditors' position is that a fully unredacted version of the Elliott Bid SPA should already have been provided to the parties but, at the latest, it should be provided by October 28, 2024, the date proposed by the AP Judgment Creditors for re-opening the Data Room.

improper bidder protection for the Elliott bid, will chill further bidding, and run contrary to achieving a value-maximizing Sale Transaction.

As to first point, the Data Room should be reopened immediately so that existing bidders can refresh their diligence (and potential new bidders can conduct diligence). Doing this will accelerate the remainder of the Sale Process. In contrast, keeping the Data Room closed until the start of the Topping Period will cause substantial additional delays, as potential additional bidders will not be able to conduct diligence until the Topping Period commences. The Data Room should be reopened now, in order to prevent that delay from occurring.

As to the second point, from its creation in late 2023 until August 7, 2024, when the Special Master entered into its exclusivity "agreement" with Elliott, the Data Room was open to all Potential Bidders who executed a form NDA. Now, however, the Special Master is proposing that access be restricted to parties that "submit a Competing Proposal to the Special Master that the Special Master determines in good faith constitutes or could reasonably be expected to lead to a Superior Proposal (each as defined in SPA Section 6.17(f))." There is no basis for such a pre-condition and, in addition to creating only more complications and delay, it would fundamentally restrict the ability of potential bidders to prepare competing proposals, given that access to information in the Data Room is precisely what is required to prepare a competing proposal in the first place.

Third, with request to Question #4, the AP Judgment Creditors do not agree that the Topping Period procedures, including the termination fee, should remain an item to be negotiated by a putative bidder. Instead, these key deal terms should be level-set and made uniform by the Court, at present, for all potential bidders.

There are two reasons for this. First, there is an obvious and fundamental conflict of interest between the interests of a putative bidder – who is incentivized to have the highest possible termination fee – and the interests of the Sale Process Parties and Additional Judgment Creditors – who are incentivized to have the lowest reasonable termination fee so as to incentivize topping bids and therefore achieve a value-maximizing Sale Transaction.

Second, to have the termination fee and topping period procedures continue to be a point of negotiation for a putative bidder would perpetuate the process inefficiencies that are now being experienced, i.e., the substantial procedural delays and uncertainties caused by the Special Master's proposed Bid Protection Motion.

These problems can all be solved, and the Sale Process materially improved and expedited, if the Court determines now what the topping period procedures and termination fee will be, and makes those terms equally applicable to all bidders. With these terms level-set, bidders can make economic decisions regarding their own bid terms knowing what the rules of the road are going to be, for all parties and at all times, thus eliminating the need for negotiation and further satellite litigation concerning these critical terms.

This solution can be obtained through the filing of a Topping Period Procedures motion, the timing for which can run shorter than the Special Master's proposed schedule for the Bid Protection Motion, and thus cause no additional delay.

Fourth, the AP Judgment Creditors do not agree that the Elliott bid can be the stalking horse bid,

as has effectively been proposed by the Special Master.  The Elliott bid is non-viable, for all the reasons stated by multiple parties, including Crystallex and Conoco.  Instead of proceeding further with it, the Sale Process should be reformed so that a viable bid can serve as the stalking horse.  This is consistent with the existing framework of the Sales Procedure Order and requires only that (a) the Data Room be re-opened at present; (b) thereafter, in a reasonable period of time, parties submit competitive bids to the Court and Special Master; and (c) a new stalking horse bid be selected by the Court.  After a viable stalking horse bid is in place, the Topping Period and Objection Periods can run pursuant to the procedures ordered by the Court on the Topping Period Procedures motion.

With respect to Question #6, all this can be done, and the Sale Hearing held, in a period of time that is equal to or less than that proposed by the Special Master. Attached hereto is the alternative timeline proposed by the AP Judgment Creditors to achieve this result, with material changes to the Special Master's proposed timeline highlighted.

In addition, and as importantly, a viable stalking horse, whether in the form of a Gold Reserve bid or a bid submitted by another party, is likely to obtain the support, rather than the opposition, of a substantial number of the Sale Process Parties and Additional Judgment Creditors.  At minimum, a superior stalking horse bid will reduce objections from some or all the parties, thus streamlining the Objection Period and contributing to a far more certain and durable Sale Order.

The AP Judgment Creditors are not proposing this procedural solution based on idle speculation that viable, superior stalking horse bids will be submitted.  Gold Reserve, for one, is committed to making such a bid within a short period of time – within a few weeks – after it again obtains access to the Data Room, and it is our understanding that additional parties are also interested in submitting bids.

The following paragraph is submitted only by Gold Reserve:  While the Special Master has not yet provided potential bidders with an unredacted copy of the final draft Elliott SPA, based on the unredacted drafts that were filed on October 6, Gold Reserve can confirm that its prior bid, made with CVR Energy Inc. ("**CVR**") in July-August 2024, was, and remains, demonstrably superior to the Elliott bid in every material category, including on Price, Escrows, Termination Fee, Interim Period Control Covenants, and Outside Closing Date.  The Gold Reserve/CVR bid and its associated draft SPA were substantially advanced as of early August 2024 – needing at that time only a few additional weeks to be finalized after receiving access to the now-completed CITGO schedules.  As such, assuming the Data Room is re-opened immediately, there should be no impediment to finalizing the terms of a materially superior Gold Reserve bid in short order.[4]

---

[4] Rusoro, Tidewater, Red Tree, Contrarian, and Valores Mundiales express no opinion on the Gold Reserve bid.

| **Proposed Timeline of AP Judgment Creditors** | |
|---|---|
| Proposed Status Conference | October 25, 2024 |
| Special Master re-opens Data Room to persons who execute form NDA | October 28, 2024 |
| Special Master files the Bidder Protection Motion (including unredacted SPA); Parties file Topping Procedures Motion | November 1, 2024 |
| Response Deadline to Topping Procedures Motion (7 days) | November 8, 2024 |
| Reply Deadline on Topping Procedures Motion (3 business days); Hearing if necessary to be scheduled by the Court | November 13, 2024 |
| Objection deadline for Bidder Protection Motion (21 days) | November 22, 2024 |
| Stalking Horse Bids Submitted (28 days after Data Room re-opened) | November 25, 2024 |
| Reply deadline for Bidder Protection Motion (7 days) | November 29, 2024 |
| Hearing on Bidder Protection Motion | December 9, 2024 |
| Stalking Horse Bid Selected (21 days after Stalking Horse Bids submitted) | December 16, 2024 |
| Topping Period (30 days)[5] | December 16, 2024 to January 15, 2025 |
| Special Master files Final Recommendation | January 22, 2025 |
| Objection deadline for Final Recommendation (21 days) | February 12, 2025 |
| Special Master's reply deadline for Final Recommendation (14 days) | February 26, 2025 |
| Parties' deadline to file reply in support of objections to Final Recommendation (3 business days) | March 3, 2025 |
| Commencement of Tentative Sale Hearing | March 17, 2025 |

---

[5] As noted above, Red Tree and Contrarian propose a 60 day Topping Period.