# EXHIBIT B-5

## Exhibit B-5

## CITGO, PDVH, and PDVSA

CITGO and PDVH (the "CITGO Parties") are in the unique position of knowing the full impact of the deductions and holdbacks from the Proposed Buyer's headline price, because the CITGO Parties possess proprietary and highly confidential information regarding the CITGO Parties' business to which no other Sale Process Party or Attached Judgment Creditor has access. Explaining the impact of the proposed holdbacks and deductions does not require reference to or disclosure of specific highly confidential information, but because the unredacted SPA and exhibits have not yet been disclosed to any party other than the Sale Process Parties, the Special Master, and the Proposed Buyer, the CITGO Parties and PDVSA are submitting their portion of the Joint Status Report under seal, with a redacted version available to everyone other than the Special Master, Crystallex and ConocoPhillips.

**Preliminary Statement of the CITGO Parties and PDVSA**

The CITGO Parties and PDVSA agree that a status conference should be held before the Court establishes a schedule for further proceedings, including for the Special Master's proposed "bidder protection motion." It is now clear that the process as it stands is fundamentally broken and that the unanimous or near-unanimous opposition to the terminally deficient proposed SPA requires the Court, the Special Master, and the Parties to rethink how to move forward. The Special Master's continued efforts to advantage the Proposed Buyer do not aid in that endeavor. The status conference should be held sometime after November 6, 2024, when briefing concludes on the Special Master's injunction motion, rather than October 25, 2024 as proposed by the Special Master, so that the Court can hold a hearing on both matters on the same day.

***The Special Master's Motion to Provide a Termination Fee for the Non-Final Proposed SPA Should Not Be Considered at this Time.*** Under the guise of responding to the seven questions the Court put to the parties in this case, the Special Master has made clear that he has completely surrendered his independence and is acting as a mere envoy for the proposed purchaser. Though he denies having assumed any obligations to the Proposed Buyer, Amber Energy (a weeks-old shell corporation with no assets and no committed financing), he has granted the Proposed Buyer a lengthy and unjustified "exclusivity period" over the objection of all the Sale Process Parties, surrendered to the most outrageous of terms in his proposed, non-final and non-binding "agreement", and concealed from the Attached Judgment Creditors and the Republic critical terms of that agreement. Now, he is proposing— over the objections of all or nearly all of the creditors and the CITGO Parties, the Republic, and PDVSA—to give the Proposed Buyer a [REMAINDER FILED UNDER SEAL] termination fee before it even has finalized the SPA escrow documents and while the Proposed Buyer retains the right to walk away and pocket that fee if the Court denies the Special Master's injunction motion. The Special Master describes this arrangement as a "customary bid protection" that is "analogous to the Stalking Horse Bid Protections set forth in the SPO." But the Proposed Buyer is not a stalking horse bidder, and the protections go far beyond

what is "customary" or reasonable here. As a threshold matter, therefore, the CITGO Parties and PDVSA join the creditors in objecting to the terms of the proposed SPA and oppose any effort on the part of the Special Master to advance that non-agreement, though consideration or adoption of so-called "bidder protections," any further exclusivity, artificially restricting access to the data room to legitimate potential bidders, or otherwise.

***The Proposed Termination Fee Is Unreasonable, Particularly Given that the Non-Final SPA Could Never Be Approved.*** It is clear that the proposed SPA suffers from fatal flaws in substance and in form, and because of these flaws could never be approved. Nevertheless, and inexplicably, the Special Master now seeks the extraordinary relief of locking in a windfall for Elliott Investment Management, the New York City hedge fund behind the Proposed Buyer before material terms of their proposed SPA have even been negotiated, let alone finalized and disclosed to the Sale Process Parties, the Attached Judgment Creditors, and the Court. If approved by the Court, these so-called "bidder protections" [REMAINDER FILED UNDER SEAL].

Such a windfall would be untenable even if the proposed SPA stood a chance of receiving approval. But given the proposed SPA's irremediable flaws, there is no reason even to brief the question of bidder protections at this time (much less to grant them).

The Court heard about some of the proposed SPA's flaws at the October 1 hearing from judgment creditors, including Crystallex and ConocoPhillips. The discussion at that hearing only scratched the surface. Indeed, the Special Master has agreed to a deal that not only would not see any creditors compensated potentially for years after the Proposed Buyer assumes possession of the shares (if ever); it also would leave the vast majority of Attached Judgment Holders out of the money.

The Special Master's representation to this Court that the proposed SPA would be for "up to $7.286 billion" was entirely illusory, if not misleading. *See* Oct. 1, 2024 H'rg Tr. at 8:10–12. There is no prospect of that transaction yielding anything close to $7.286 billion. Hidden throughout the SPA are material contingencies and deductions that will drastically reduce the value of the bid:

- 2020s Escrow: First, and most obviously, it appears that $2.5 billion of the headline price has been earmarked for an escrow to pay liabilities to or a settlement with the 2020 PDVSA Bondholders.[6]
- [FILED UNDER SEAL]
- Hidden Price Cuts: Third, the proposed SPA includes further deductions and holdbacks from the headline price. [REMAINDER FILED UNDER SEAL]
- [FILED UNDER SEAL]

---

[6] PDVSA and PDVH do not agree with the 2020 Noteholders' characterization of their rights under the governing documents, including the Indenture and the Pledge Agreement, the validity of those documents, and the statements regarding the PDVSA v. MUFG litigation.

After all these adjustments and the deduction of fees and costs, there could be as little as $[FILED UNDER SEAL] left for attachment holders, and even that will be placed in another proposed escrow to resolve "asserted and unasserted" alter ego claims against PDVH. It is unclear how much, if any, of that money will be left for payment to Attached Judgment Holders when those "asserted and unasserted" alter ego claims will be resolved, thus allowing for distribution of that escrow to the creditors. [REMAINDER FILED UNDER SEAL].

Despite the illusory and insufficient purchase price presented in the proposed SPA, the Special Master also has agreed, over the objections of the CITGO Parties, the Republic, PDVSA, and some or all of the creditors, "in his discretion," to continue to negotiate exclusively with Amber and to restrict the ability of potential topping bidders to access the data room, and has proposed an unreasonably short schedule that discourages competitive bidding and benefits no one but Amber. Moreover, the Special Master's claim that it was "customary" to grant exclusivity to a single bidder without locking in a price or financing, and without even a firm commitment to buy, is fanciful.

The CITGO Parties and PDVSA also object to the Special Master's characterization of his efforts to date as having achieved a "value-maximizing transaction" and describing the sales process as having "positive momentum." Neither statement is true. Every aspect of the Special Master's proposal is aimed at protecting Amber and at inhibiting the generation of a purchase price that adequately reflects the true value of the PDVH shares, which is more than twice the headline purchase price in the proposed SPA. As counsel for PDVH and CITGO told the Court in the Status Hearing on October 1, 2024, the fair market value of the PDVH shares today is likely closer to $17 billion. *See* Oct. 1, 2024 Hr'g Tr. at 52:19 – 53:20. [REMAINDER FILED UNDER SEAL]

It is now clear that the Special Master's process has failed to date. To ensure a robust bidding process that avoids previous missteps, the CITGO Parties and PDVSA submit that the Virtual Data Room should be re-opened to any interested qualified bidder immediately, and those bidders should be given an opportunity to develop new bids or refresh existing bid for the PDVH shares, as described below.

**Additional Opening Statement of the Bolivarian Republic of Venezuela**

The Republic joins in the statement and responses of the CITGO Parties and PDVSA in this report—to the extent it has been able to see them. However, the Special Master's continued insistence that the Republic not be permitted to see redacted portions of the SPA has put the CITGO Parties and PDVSA in the awkward position of excluding from the view of the Republic the portions of their Opening Statement that discuss redacted information. The Special Master's insistence that material information continue to be withheld from the Republic infringes on the Republic's rights to a fair proceeding, and imposes on the Court, its staff, and all parties the needless burden of dealing with redacted and sealed documents.

To the extend the Republic understands the Special Master's rationale, it appears to be that because the Republic has reserved the right to propose an alternative transaction, it should not be given

material information concerning Amber Energy's bid. If this rationale ever had any justification, that justification vanished long ago. The Special Master has promised to make the unredacted SPA public in the near future, and his insistence on keeping portions of it from the Republic in the meantime serves no purpose other than to hamstring the Republic's efforts to coordinate with PDVSA, the CITGO Parties, and the other Sale Process Parties. The Republic urges the Court to order the Special Master to provide an unredacted SPA to the Republic forthwith.