# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
———
(302) 658-9200
(302) 658-3989 FAX

Alexandra M. Cumings
(302) 351-9248
(302) 425-4670 FAX
acumings@morrisnichols.com

November 1, 2024

**VIA EFILING**

The Honorable Leonard P. Stark
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, D.C. 20439

    Re:    *Crystallex International Corp. v. Bolivarian Republic of Venezuela*,
            D. Del. C.A. No. 1:17-mc-00151-LPS

Dear Judge Stark:

    I write to provide the joint position of the Venezuela Parties (the Bolivarian Republic of Venezuela (the "Republic"), Petróleos de Venezuela, S.A. ("PDVSA"), PDV Holding, Inc. ("PDVH"), and CITGO Petroleum Corporation ("CITGO")) on the Special Master's October 18, 2024 letter, D.I. 1374, to the Court in response to the Court's Order of October 2, 2024 directing the Special Master to (a) submit a revised proposed order for the Court to consider in connection with the Special Master's request for an injunction against the Alter Ego Claimants (the "Injunction Motion") and (b) advise the Court of "his position on whether (and, if so, how, by what mechanism, and on what schedule) to conduct proceedings regarding a determination as to whether PDVH is the alter ego PDVSA." D.I. 1340.

    The Venezuela Parties object to the Special Master's request in his letter and in Paragraph 8 of his revised proposed order that the Court "conduct proceedings to determine whether PDVH and/or any of its subsidiaries are alter egos of PDVSA and/or the Republic." D.I. 1374 at 2; *see* D.I. 1374-1, ¶ 8. That request is fundamentally misguided for several independent reasons.

    ***First,*** it is unnecessary for the Court to conduct such proceedings. The Special Master's letter does not contend that the Court needs to adjudicate the alter ego issue to resolve the Injunction Motion. *See* D.I. 1374; *see also* Special Master's Reply at 13, D.I. 1327 ("As for the merits, the relevant question should be whether the Special Master has shown a genuine risk of interference with this Court's sale process—which he has. Whether the underlying Alter Ego

The Honorable Leonard P. Stark
November 1, 2024
Page 2

Actions themselves have merit (they do not) need not be resolved for this Court to grant the injunction."). The only reason he is requesting such proceedings is because the current Proposed Bidder, a group of unidentified affiliates of the hedge fund manager Elliott Investment Management, acting through a shell company called Amber Energy, claims to be concerned about the supposed disruptive potential for alter ego liability. But, as was clear from the October 1 hearing and subsequent filings, Amber's bid is universally or near-universally opposed by creditors and the Sale Process Parties, and its plan not to pay any proceeds to attachment holders for years, if ever, while it takes possession of the shares, is legally untenable—and that plan would not become any more viable if the Court adopts the Special Master's proposal, since Amber also wants protection against future claims by other Republic or PDVSA creditors not bound by the injunction.[1] Moreover, there are other bidders willing to put in a bid for the PDVH shares without the alter ego protections, because they correctly view the Alter Ego Actions as meritless. *See*, *e.g.*, D.I. 1373-5 at 5. Rather than needlessly complicating the current proceedings in furtherance of Amber's futile bid, this Court should direct the Special Master to address the shortcomings in the Sale Process, as several creditors and the Venezuela Parties have requested. *See* D.I. 1373, 1373-2, 1373-4, 1373-5, 1373-6, 1373-7.

**Second,** the alter ego proceedings requested by the Special Master are necessarily contingent on the Injunction Motion being granted and upheld on appeal, which will lead to both delay and uncertainty. The Special Master's proposal is predicated on the Court's entry of a valid injunction against not only the Alter Ego Claimants (defined as Girard Street Investment Holdings, LLC ("Girard Street"), several G&A Strategic Investments vehicles ("G&A Strategic"), and Gramercy Distressed Opportunity Fund LLC ("Gramercy"), *see* D.I. 1248 at 1 n.1; D.I. 1249 at 1 & n.1), but now also "all claimants or writ holders who have filed an Attached Judgment Statement in these proceedings." D.I. 1374-1, ¶ 7. After all, that is the only way to force those potential alter ego claimants to litigate such claims in this Court.

If the Court does enter an injunction, however, there is likely to be an immediate appeal and a request for a stay. And there is, at the very least, a significant prospect that the Third Circuit would stay and/or reverse such an injunction. On top of the serious questions that the Alter Ego Claimants have raised about the propriety of the injunction, the additional creditors that the Special Master has sought to newly enjoin would have an even more fundamental objection. As Crystallex has already explained, the Injunction Motion "relates solely to cases filed by Gramercy, G&A Strategic, and Girard Street" and thus "provides no occasion for the Court broadly to enjoin at this time 'all claimants or writ holders who have filed an Attached Judgment Statement.'" D.I. 1397 at 2. To extend the requested injunction beyond the Alter Ego Claimants without a revised motion, notice, and an opportunity to be heard likely would run afoul of Due Process. *See*, *e.g.*, *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022) ("In the context of Rule 65(a)(1)'s notice requirement[,] before a preliminary injunction can issue, the rule 'implies a hearing in which

---

[1] The Republic and PDVSA's total claimed liabilities could include many billions of dollars more than the judgments held by creditors who have not submitted attached judgment statements. For example, the Venezuela Parties are aware of at least $3.3 billion in judgments entered against the Republic or PDVSA in favor of creditors who have not submitted an Attached Judgment Statement, and of pending actions by creditors who never submitted an Attached Judgment Statement seeking at least an additional $4.9 billion.

The Honorable Leonard P. Stark
November 1, 2024
Page 3

the defendant is given a fair opportunity to oppose the application and to prepare for such opposition.'" (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 432 n.7 (1974))).

***Third,*** the Special Master's proposal would be counterproductive and would only serve to complicate, rather than streamline, resolution of the Alter Ego Actions. PDVH and PDVSA have been litigating the Alter Ego Actions since June, and PDVH's motions to dismiss the amended complaints in *Girard Street* and *Gramercy* for failure to state a claim will be fully briefed before the end of November. Based on the positions taken by the Special Master, Crystallex, and Conoco that the alter ego claims are without merit, one would expect PDVH's motions to dismiss to be successful, thus providing the very relief the Special Master is seeking.

By contrast, if the Court were to accept the Special Master's invitation to order every writ holder or claimant who has submitted an Attached Judgment Statement to file an action in this District by a certain date or be forever barred from asserting such a claim,[2] it is possible, perhaps even probable, that all or most of these parties will file their own actions. As Crystallex notes, the order "would only encourage the filing of more alter-ego claims, even if just to 'protect the right' to assert such claims—however unmeritorious they may be." D.I. 1397 at 2.

The proceedings proposed by the Special Master also would pose multiple complex jurisdictional and other threshold issues that would have to be resolved. To name just a few:

- The Court's ancillary jurisdiction to enforce its judgments does not provide the Court with a bankruptcy-like power to adjudicate separate freestanding alter ego lawsuits, including by some claimants who do not themselves yet have enforceable judgments. A separate basis for jurisdiction will have to be established in each case, *see Peacock v. Thomas*, 516 U.S. 349, 357 (1996); *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 310 (3d Cir. 2006), and depending on which parties are named in the other lawsuits and the theories advanced in each complaint, there may or may not be federal jurisdiction.

    o For example, in the *Siemens Energy* action, the plaintiff (Siemens) and defendant (PDVH) are both citizens of Delaware and thus are not diverse. Original Pet., ¶¶ 4–5, *Siemens Energy, Inc. v PDV Holding, Inc.*, No. 24-BC11B-0010, Oct. 4, 2024, (Harris Cnty. Dist. Ct.). The complaint also seeks to proceed entirely under Texas law, apparently without raising any federal questions under the well-pleaded complaint rule. *See id.* ¶¶ 19–28.

    o For their part, Girard Street and G&A Strategic do not yet have judgments against PDVSA. The Southern District of New York vacated their default judgments holding PDVSA liable on the note agreements, and Girard Street amended its complaint to consolidate its judgment-enforcement claims against PDVH with the underlying suit against PDVSA. It goes without saying that neither Girard Street nor G&A Strategic can register and enforce in this District judgments they do not

---

[2] The Special Master's proposed bar date of November 13, 2024 no longer seems feasible.

- yet have. Moreover, the note agreements on which Girard Street and G&A Strategic are suing contain exclusive jurisdiction and venue clauses in New York. Consol. Am. Compl., Ex. 1 at 8 (D.I. 47-2), *Girard St. Inv. Holdings LLC v. Petroleos de Venezuela S.A.*, Case No. 23-cv-10772-JSR (S.D.N.Y. Sept. 30, 2024); Compl., Ex. 1 at 46 (D.I. 1-1), *G&A Strategic Invs. I LLC v. Petroleos de Venezuela S.A* (S.D.N.Y. Dec. 11, 2023). Those forum selection clauses are "prima facie valid" and must be enforced by courts. *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 71 (2024); *see also Atl. Marine Constr. Co. v. U.S. Dist. Ct. for Western Dist. of Texas*, 571 U.S. 49, 64 (2013) (explaining that "forum-selection clauses should control except in unusual cases").

- For each complaint that is filed, the plaintiff will have to serve all defendants with process (as an aside, neither the Alter Ego Claimants nor ConocoPhillips currently names as defendants CITGO, CITGO Holding, Inc., or any of the other PDVH direct and indirect subsidiaries as to which the Special Master seeks an alter ego determination). If, as with the *ConocoPhillips* action,[3] the Republic and PDVSA are named as defendants, then the FSIA requires that they be served in accordance with the methods prescribed in 28 U.S.C. § 1608. *See Republic of Sudan v. Harrison*, 587 U.S. 1, 19 (2019); *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100 (2d Cir. 2017) ("*Mobil*"). ConocoPhillips has not yet served the Republic or PDVSA. 28 U.S.C. § 1330(b) makes service of process in accordance with the procedures set forth in Section 1608 an explicit requirement of "[p]ersonal jurisdiction over a foreign state." Unless and until the Republic and PDVSA are served in accordance with the FSIA, any order or judgment entered in these actions would be void and unenforceable. *See Mobil*, 863 F.3d at 124–25.

- If the Republic and PDVSA are named and served, the plaintiff also will have to identify an exception to their sovereign immunity from suit. Foreign states are presumptively immune from the jurisdiction of U.S. courts under the FSIA in every new action and for every new claim brought against them unless one of the FSIA's enumerated exceptions to immunity is established. *See* 28 U.S.C. § 1604; *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). In the *ConocoPhillips* action, ConocoPhillips has not alleged—much less established—that any of the FSIA's exceptions to immunity confer jurisdiction, which could pose an insuperable barrier. *See Butler v. Sukhoi Co.*, 579 F.3d 1307, 1314 (11th Cir. 2009) (district court erred in denying motion to dismiss declaratory judgment action based on sovereign immunity from suit under the FSIA). With respect to OIEG's DUFTA and alter ego liability action,[4] this Court already dismissed Crystallex's DUFTA claims against PDVSA for lack of subject matter jurisdiction under the FSIA. *See Crystallex Int'l Corp. v. Petróleos de Venezuela, S.A.*, 251 F. Supp. 3d 758, 763, 771 (D. Del. 2017).

- Actions against foreign sovereigns are also governed by the FSIA's venue statute, 28 U.S.C. § 1391(f). Again using the *ConocoPhillips* action as an example, ConocoPhillips

---

[3] *ConocoPhillips Petrozuata B.V. v. Girard St. Inv. Holdings, LLC*, No. 1:24-cv-001140-LPS (D. Del. filed Oct. 14, 2024) ("*ConocoPhillips*").

[4] *OI European Group B.V. v. Bolivarian Republic of Venezuela*, No. 19 cv-00290 LPS (D. Del. Feb. 11, 2022).

The Honorable Leonard P. Stark
November 1, 2024
Page 5

> does not identify any basis under Section 1391(f) for bringing its declaratory judgment action in this district, and this Court has repeatedly held that this district is not the proper venue in other plenary actions against the Republic and PDVSA. *See Crystallex Int'l Corp. v. PDV Holding, Inc.*, No. 15-cv-1082-LPS, 2019 WL 6785504, at *10 (D. Del. Dec. 12, 2019); *see also* Order (D.I. 69), *Ostrider Limited v. PDVSA Petróleo S.A.*, No. 23-1405-LPS (D. Del. June 26, 2024); Order (D.I. 31), *Banco San Juan Internacional Inc. v. Petroleos de Venezuela S.A.*, No. 23-1263-LPS (D. Del. Apr. 4, 2023).

- Moreover, attempts by plaintiffs to avoid the FSIA thicket by simply not naming the Republic and PDVSA as defendants in actions seeking to hold that the Republic and PDVSA are alter egos of a PDVSA subsidiary, or vice versa, would create their own problems. For example, proceeding with an action that implicates the rights and interests of a foreign state in the absence of that state itself constitutes a denial of sovereign immunity. *See Philippines v. Pimentel*, 553 U.S. 851, 865 (2008) ("The District Court and the Court of Appeals failed to give full effect to sovereign immunity when they held the action could proceed without the Republic and the Commission."). Any judgment rendered in violation of the Republic's and PDVSA's sovereign immunity thus would be void and unenforceable.

- The *ConocoPhillips* action, which seeks a declaration that reverse veil-piercing is not available to the Alter Ego Claimants because they have an adequate alternative remedy at law, *see ConocoPhillips* Compl. (D.I. 1) ¶¶ 70–71, faces additional jurisdictional and related problems:

    o For example, in enacting the Declaratory Judgment Act, "Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950). "To decide whether federal jurisdiction exists to entertain a claim for declaratory relief, courts follow *Skelly Oil*'s approach to conceptually realign the declaratory judgment parties and claims and analyze them as they would appear in a coercive suit." *Leopard Marine & Trading, Ltd. v. Easy Street Ltd.*, 896 F.3d 174, 182 (2d Cir. 2018) (internal quotation marks omitted). ConocoPhillips alleges that the Court has jurisdiction over its declaratory judgment claim that reverse veil-piercing against PDVH is not available (Count I) because it is the flipside of a coercive action that could be brought by the Alter Ego Claimants attempting to reverse-pierce PDVH's corporate veil. *ConocoPhillips* Compl. (D.I. 1) ¶ 18. But that is incorrect: Such an action would be brought against *PDVH*, not against ConocoPhillips, and ConocoPhillips does not explain why the Court would have jurisdiction over a hypothetical action by the Alter Ego Claimants against ConocoPhillips. Moreover, as noted above, it is unclear whether the Alter Ego Claimants would even have jurisdiction to bring their claims against PDVH in this Court in the first place.

The Honorable Leonard P. Stark
November 1, 2024
Page 6

- o As another example, ConocoPhillips' "alternative" claim in Count II does not present a case or controversy under Article III of the Constitution. Count II seeks the issuance of writs of attachment against PDVH's shares in CITGO Holding "in favor of each of the Additional Judgment Creditors in the same order of priority already established by this Court in the Sale Process," but only if ConocoPhillips loses on Count I *and* "[i]f the elements for reverse veil-piercing are otherwise shown to justify imposing liability on PDVH and the Republic." *See id.* ¶ 76. Yet, ConocoPhillips contends that reverse veil-piercing is not available against PDVH, and the Venezuela Parties agree. Moreover, Count I seeks only a determination that reverse veil-piercing is foreclosed because the Alter Ego Claimants have an adequate alternative remedy at law. It does not seek to determine "whether the elements for reverse veil-piercing otherwise justify imposing liability on PDVH for the debts of PDVSA and the Republic." Such a determination would have to come in the separately pending Alter Ego Actions, or in some other suit. And, even if these contingencies were to come to pass, it is not clear how ConocoPhillips can seek the grant of writs of attachment to all Additional Judgment Creditors in a particular priority order, without the participation of those creditors or a finding that Count II can proceed as a class action.

All these questions, and more, will have to be briefed and decided in connection with each of the perhaps two dozen actions that the Special Master's proposal could invite.

**Fourth,** if the Court does decide to adjudicate the alter ego issues, then the Venezuela Parties object to the Special Master's timeline, which is both legally and practically untenable.

As an initial matter, the Special Master's proposal does not consider the need to satisfy the FSIA's jurisdictional and procedural requirements in any action, such as the *ConocoPhillips* action, in which the Republic and PDVSA are named as defendants. The FSIA affords the Republic and PDVSA 60 days from the date of service to respond to the complaint. *See* 28 U.S.C. § 1608(d). The Republic and PDVSA then must be afforded the opportunity to fully litigate their immunity defenses under the FSIA before they can be compelled to respond to the merits. As the Supreme Court has repeatedly admonished, foreign sovereign immunity under the FSIA is a threshold issue that must be conclusively adjudicated through an interlocutory appeal at the outset of any action against a foreign state before a court may proceed to the merits of such an action. *See Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 174, 185 (2017); *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493–94 (1983). Even an order directing a foreign state to brief its immunity defenses concurrently with the merits of the underlying action constitutes an impermissible and immediately appealable denial of a foreign state's immunity under the FSIA. *See Process & Indus. Devs. v. Fed. Republic of Nigeria*, 962 F.3d 576, 579 (D.C. Cir. 2020); *see also Butler*, 579 F.3d at 1311 ("Inasmuch as the order on appeal required appellants to answer the complaint and called for discovery, it denied them immunity from suit under the FSIA."). Nor can the Court simply adjudicate the actions before the Republic and PDVSA are served, in light of *Pimentel*.

The Honorable Leonard P. Stark
November 1, 2024
Page 7

The Special Master's proposal to effectively litigate the actions as an expedited summary proceeding thus is improper. The FSIA provides a comprehensive statutory scheme that governs all aspects of litigation against foreign states. *See Mobil*, 863 F.3d at 104 (citing *Verlinden B.V.*, 461 U.S. at 488). "[T]he FSIA's comprehensive statutory scheme … makes no provision for summary procedures in any instance. … Indeed, nowhere in the FSIA did Congress provide an expedited procedure to enter a federal judgment against a foreign sovereign in *any* circumstance." *Id.* at 116.

Even apart from sovereign immunity and procedural issues under the FSIA, the Special Master's proposal to invent arbitration-style procedures for briefing and adjudicating the merits without reference to the Federal Rules of Civil Procedure is improper and misguided. Instead, the first step after sovereign immunity issues have been fully resolved on appeal should be for the Court to resolve motions to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6). The Venezuela Parties agree with Crystallex and ConocoPhillips that the Alter Ego Actions are meritless and fail to state a claim upon which relief can be granted. Only if the Court denies those motions should the cases move forward. At that point, there may need to be limited discovery, including expert discovery, as the Venezuela Parties would have the right to present expert and fact witnesses on such matters as corporate structure, corporate accounting, solvency, Venezuelan law, and other matters to respond to allegations made in the Alter Ego Claimants' complaints.

The Venezuela Parties agree with Crystallex and ConocoPhillips that any plaintiff seeking fact discovery should be required to present to the Court a proposal and explanation for why it needs the discovery it seeks. In the *Girard Street* action alone, Girard Street is attempting to take wide-ranging and outrageous discovery, including serving PDVH with ninety document requests and serving over two dozen third-party subpoenas (so far). Based on these requests, the Venezuela Parties anticipate that, if CITGO, as well as PDVH's other direct and indirect subsidiaries, are required to respond to such requests in any consolidated proceedings here, they would have to sift through millions—perhaps tens of millions—of documents. The Venezuela Parties also expect the Alter Ego Claimants to seek to take a large number of fact depositions. The Special Master's 60-day discovery proposal would be unrealistic even if discovery is limited, but if expansive discovery of the sort requested by the Alter Ego Claimants were allowed, a much longer period would be required. The exact discovery schedule should be set once the Court rules on the scope of allowable discovery.

Once discovery is complete, the Venezuela Parties intend to move for summary judgment under Federal Rule of Civil Procedure 56. If their motions for summary judgment are denied, then the Venezuela Parties request at least two months for trial preparation and request that the Court set aside at least a week to conduct the trial.

Accordingly, the Venezuela Parties object to the Special Master's request that the Court "conduct proceedings to determine whether PDVH and/or any of its subsidiaries are alter egos of PDVSA and/or the Republic." The Court should instead direct the Special Master to address the shortcomings in the Sale Process.

The Honorable Leonard P. Stark
November 1, 2024
Page 8

        Respectfully,

        */s/ Alexandra Cumings*

        Alexandra Cumings (#6146)