

**Potter Anderson & Corroon LLP**
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801-6108
302.984.6000
potteranderson.com

Myron T. Steele
Senior Counsel
msteele@potteranderson.com
Direct 302.984.6030

November 6, 2024

**BY HAND DELIVERY & CMECF**

The Honorable Leonard P. Stark
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801-3570

RE:    *Crystallex International Corporation v. Bolivarian Republic of Venezuela*, D. Del. C.A. No. 1:17-mc-00151-LPS; Reply to the Submissions by ConocoPhillips, Crystallex, Siemens, the Venezuela Parties, and the Alter Ego Claimants in Response to the Special Master's Letter Concerning the Alter Ego Claims and Revised Proposed Order (D.I. 1374, 1374-1)[1]

Dear Judge Stark:

We write on behalf of Special Master, Robert B. Pincus,[2] to reply to the submissions by ConocoPhillips, Crystallex, Siemens, the Venezuela Parties, and the Alter Ego Claimants in response to the Special Master's October 18, 2024 letter submitting a revised proposed order, and advising the Court of the Special Master's position on whether (and, if so, how, by what mechanism, and on what schedule) to conduct proceedings regarding a determination as to whether PDVH is the

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* (D.I. 481) (the "**Sale Procedures Order**") or the *Special Master's Motion to Enjoin the Alter Ego Claimants from Enforcing Claims Against the Republic or PDVSA by Collecting from PDVH or Its Subsidiaries in Other Forums* (D.I. 1248) (the "**Injunction Motion**").

[2] The Special Master has filed a status report contemporaneously herewith, describing the status of his negotiations with Amber Energy and an alternative transaction structure proposed by Amber Energy in response to the Special Master's request. *See* D.I. 1414.

The Honorable Leonard P. Stark
November 6, 2024
Page 2

alter ego of PDVSA [D.I. 1374 and D.I. 1374-1].[3]

As previously explained, the Special Master's revised proposed order and recommendation for addressing the alter ego issue in this Court (i) seek to prevent harm to this Court's sale process caused by existing or potential alter ego claims that attempt to impose the liabilities of the Republic and PDVSA on PDVH and its subsidiaries, and (ii) promote a streamlined process to fairly and efficiently address the merits of the alter ego issue in connection with the sale of the PDVH Shares. In short, the Special Master's proposal would give all interested parties a full and fair opportunity to present their case, while also protecting the sale process that is the product of years of legal proceedings before the Court.

The alter ego actions create uncertainty about what, if anything, the successful bidder for the PDVH Shares would receive from the ongoing judicial sale process. Throughout the Special Master's marketing effort, bidders have been seeking to purchase the shares of PDVH because they represent ownership of the entirety of the CITGO business operations. Bidders have been focused on how that sale can be made "free and clear" of judgment creditors' claims against the Republic and PDVSA. In the midst of the sale process, the Alter Ego Claimants have asserted claims against PDVH itself (or against PDVH's subsidiaries), which would effectively render the PDVH Shares worthless.[4] This uncertainty makes it more difficult, if not impossible, to maximize value for judgment creditors through the judicial sale in this Court.

It is fundamental that if creditors of the Republic and PDVSA could hold PDVH and/or any of its subsidiaries, such as CITGO Holding, Inc. or CITGO Petroleum, liable for the Republic's and PDVSA's debts, the entire purpose of establishing priority with respect to the attached PDVH Shares would be undermined. Indeed, if the Alter Ego Claimants are allowed to use other courts to end run the enforcement efforts already brought before this Court, they will have leapfrogged the very order of priority that the Court established and published to provide fairness to all creditors attempting to enforce their judgments against the Republic's and PDVSA's stake in CITGO. In addition, such an outcome would simply start a new priority line in another forum, together with a new sale process, rendering the entire existing process undertaken by the Court to date pointless.

The need for an injunction is also underscored by the recent events in Girard Street's alter ego litigation in the District Court for the Southern District of New York. The court in that action

---

[3] *See* D.I.s 1395 (response from ConocoPhillips), 1397 (response from Crystallex), 1403 (response from Siemens), D.I. 1407 (response from the Venezuela Parties), 1406 (response from the Alter Ego Claimants).

[4] Girard Street goes even further, explicitly seeking to obtain possession of PDVH's primary asset, the shares of CITGO Holding. Girard Street seeks a turnover order that would bring the CITGO Holding shares within the jurisdiction of the Southern District of New York. Girard Street asserts that it "is entitled to possession of PDVH's shares of Citgo Holding, to the extent of the money damages awarded in the Default Judgment, plus interest thereon." *See* Compl., *Girard St. Inv. Holdings LLC v. PDV Holding, Inc.*, No. 24-cv-4448 (S.D.N.Y. June 10, 2024), D.I. 1 ¶ 149; *see also* D.I. 1249 at 7.

The Honorable Leonard P. Stark
November 6, 2024
Page 3

denied a motion to intervene by an Additional Judgment Creditor (Red Tree) on the basis that the alter ego action would not "interfere" with the sale process, and Red Tree's interest would "not be impaired" given the up to $7.3 billion purchase price. *See Girard St. Inv. Holdings LLC v. PDV Holding, Inc.*, No. 24-cv-4448, 2024 WL 4556124, at *2 (S.D.N.Y. Oct. 23, 2024). But, as just described, the additional alter ego claims asserted against PDVH and/or its subsidiaries threaten to render the PDVH Shares worthless. Thus, unless those claims are enjoined and resolved by this Court, a sale of the PDVH Shares may not go forward at all, let alone a sale that will result in a purchase price that provides an opportunity for Red Tree and other Additional Judgment Creditors to recover.[5] Moreover, as we previously clarified, the up to $7.3 billion figure referenced by the court in *Girard Street* "reflects both the equity and debt of CITGO and for the avoidance of doubt does not mean that over 7 billion [dollars] of cash proceeds would necessarily [be] available [for] distribution [to] holders of attached judgments." Oct. 1, 2024 Hearing Tr. at 8; *see also Notice of Special Master's Recommendation* (D.I. 1325), at 2.[6] It is therefore not the correct figure for evaluating which Additional Judgment Creditors will share in the waterfall of sale proceeds. It is possible that, depending on the outcome of these very alter ego litigations, as well as the ongoing PDVSA 2020 bondholders litigation, and the purchase price adjustments (each of which could move the price meaningfully), many judgment creditors will not be entitled to a distribution from sale proceeds who otherwise would be based purely on a headline purchase price. To avoid any misimpression, based on these potential adjustments, including the impact of the litigations, there is a strong likelihood the purchase price will be lower than this headline number after adjustments, potentially by billions of dollars.[7] In all circumstances, however, the value to be obtained in the sale process will be significantly lower if the buyer is forced to accept potential liability for claims against the Republic and PDVSA.

**Revised Proposed Order**

Setting aside the Alter Ego Claimants' objections to the Special Master's revised proposed order, which, as anticipated, largely reiterated their prior objections to the Injunction Motion, the only other objection to the revised proposed order was from parties concerned about the scope of the

---

[5] Under the proposed stock purchase agreement, the cash purchase price paid by the buyer at closing will be deposited into escrow accounts, the release of which is subject to multiple conditions related to resolution of the alter ego litigations and the 2020 bondholders litigation. D.I. 1325, at 2.

[6] That topline number is also subject to holdbacks and adjustments that may substantially reduce the ultimate purchase price paid by the proposed buyer. *See* D.I. 1325, at 2.

[7] This does not change the fact that the proposed sale transaction represents the highest and best value on the table today. The full terms of the bid will be public upon the filing of a bidder protections motion. The reason for not making all terms public now is that it would make Amber Energy, or any potential purchaser, effectively a "naked" stalking horse with no protections and without the Special Master having even sought protections. The Special Master does not believe that process would maximize value as it is not reasonable to expect any purchaser to agree to invest time and energy proposing a bid only to be used by others without any protections.

The Honorable Leonard P. Stark
November 6, 2024
Page 4

revised proposed order. Specifically, both the Venezuela Parties and Crystallex argue that "[t]he motion before the Court relates solely to cases filed by Gramercy, G&A Strategic, and Girard Street" and does not justify the relief against all who filed Attached Judgment Statements as provided in the revised proposed order. D.I.s 1397 at 2, 1407 at 2.[8] Not so. The Injunction Motion specifically asked this Court to grant "any related relief the Court deems appropriate to prevent further attempts to circumvent this Court's proceedings." D.I. 1249 at 20.

The scope of relief requested in the revised proposed order is necessary and appropriate to permit this Court's sale process to achieve a value-maximizing sale of the PDVH Shares. With the actions recently brought by Siemens and ConocoPhillips, there are now five different actions on the same question proceeding concurrently before five different judges. *See Siemens Energy, Inc. v. PDV Holding, Inc.*, No. 24-BC11B-0010 (Tex. Bus. Ct. Oct. 4, 2024); *ConocoPhillips Petrozuata B.V. v. Girard St. Inv. Holdings LLC*, 1:24-cv-01140-LPS (D. Del. Oct. 14, 2024). How many other creditors will file parallel actions is not yet known, and there is a significant risk of confusion and inconsistent verdicts that could completely undermine this Court's sale process by courts that are less familiar with the details of the sale process or the expected recoveries to creditors, as well as how these actions would threaten the *res* before this Court. *See, e.g.*, *Girard St. Inv. Holdings LLC v. PDV Holding, Inc.*, No. 24-cv-04448-JSR, 2024 WL 4556124, at *2 (S.D.N.Y. Oct. 23, 2024) (denying Red Tree's motion to intervene and finding that there is "no evidence that the instant action . . . would impair Red Tree's ability to recover" from this Court's sale of PDVH Shares, despite the possibility that Red Tree may not be entitled to a distribution from sale proceeds on account of its claim if the Alter Ego Claimants prevail). As noted above, the revised proposed order would eliminate the risk of inconsistent findings, while giving all claimants their day in court and protecting the integrity of this Court's sale process.

**Schedule for Resolving the Alter Ego Actions**

Following the hearing on the Injunction Motion, the Court asked the Special Master to advise the Court of the Special Master's "position on whether (and, if so, how, by what mechanism, and on what schedule) to conduct proceedings regarding a determination as to whether PDVH is the alter ego of PDVSA," and then gave the other parties in interest an opportunity to provide their reactions and concerns with the schedule proposed by the Special Master. *See* D.I. 1340. Some parties argued that the schedule was too long, while others argued that it was too ambitious. *See, e.g.*, D.I.s 1395 at 3, 1397 at 2-3, 1403 at 2, 1406 at 17-18, 1407 at 6-7. And some parties asserted that discovery was unnecessary to resolve the alter ego issues, while others noted a need for discovery in advance of motion practice. *See, e.g.*, D.I.s 1395 at 2, 1397 at 3, 1406 at 10, 1407 at 7.

The Special Master has taken into consideration all of the detailed concerns and suggestions submitted by interested parties, and proposes the following:

---

[8] The Alter Ego Claimants also argue that applying the relief to all who filed Attached Judgment Statements is "inappropriate," although for different reasons. D.I. 1406 at 15. Their suggestion that it would be more appropriate to extend the injunction to those who did *not* participate in this Court's process seems contradictory to their other arguments.

The Honorable Leonard P. Stark
November 6, 2024
Page 5

- Consistent with the revised proposed order, all claimants can bring any alter ego or reverse veil-piecing claims in this Court by November 13, 2024 for an adjudication on the merits.

- Parties not requiring discovery can immediately proceed with motion practice, including continuing with any schedules previously set by other courts.

- Parties requiring discovery should proceed with discovery immediately, notwithstanding any motions to dismiss.

- The Court should adopt briefing schedules that provide that any hearing on the merits will be held prior to, or at the latest in tandem with, the hearing for approval of the proposed transaction.

The Special Master thanks the Court for its consideration of this matter.

Respectfully submitted,

*/s/ Myron T. Steele*

Myron T. Steele

On Behalf of Robert B. Pincus, Special Master for the United States District Court for the District of Delaware

MTS:rms/11863707

cc:   Clerk of Court (via hand delivery)
      Counsel of Record (via CM/ECF)