womblebonddickinson.com



November 8, 2024

The Honorable Leonard P. Stark
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801

Womble Bond Dickinson (US) LLP

1313 North Market Street
Suite 1200
Wilmington, DE 19801

t:  302.252.4320
f:  302.252.4330

Kevin J. Mangan
Partner
Direct Dial: 302.252.4361
Direct Fax: 302.661.7729
E-mail: Kevin.Mangan@wbd-us.com

**Re:**   *Crystallex International Corp. v. Bolivarian Republic of Venezuela,* **Case No. 17-mc-151**

Dear Judge Stark:

We represent Additional Judgment Creditor Gold Reserve Inc. ("Gold Reserve").

Having reviewed the Special Master's November 6, 2024 status report [D.I. 1414], and the attached "alternative transaction structure" from Amber Energy Inc./Elliott Management L.P. ("Elliott"), Gold Reserve confirms that it continues to stand ready to submit a bid that is materially superior to the Elliott bid(s), and confirms that this bid can be submitted in short order after the data room is re-opened.

For the avoidance of doubt, this Gold Reserve superior bid is not the result of the Special Master disclosing the provisional terms of the Elliott bid(s) and Gold Reserve then deciding to "improve its prior offer." Rather, the terms of Gold Reserve's bid are, and always have been, materially superior to the Elliott bid in every material category – including on price, speed and certainty. This can be seen in the attached chart, which provides a summary comparison of key terms of the Elliott bid,[1] the prior bid that Gold Reserve submitted in partnership with CVR Energy, Inc.,[2] and Gold Reserve's initial standalone bid.

Gold Reserve has effectively been blocked from submitting a new bid because the Special Master has, since August 7, 2024, refused to hold any substantive discussions with Gold Reserve regarding its bid or the bidding process and instead closed the data room to all bidders other than Elliott. The Special Master's stated reason for these actions is that he is contractually bound by an "exclusivity agreement" with Elliott. In Gold Reserve's view, this extended period of exclusivity and data room closure is, at minimum, not contemplated in the Sales Process Order. Certainly, it has not resulted in

---

[1] Gold Reserve's understanding of the Elliott bid terms is based on the partially unredacted copies of the September 24, 2026 draft Elliott SPA that were filed on the docket. Gold Reserve does not yet have access to the fully unredacted copy of the draft Elliott SPA, and therefore reserves it right to make further comment upon receipt of the fully unredacted SPA.

[2] Gold Reserve is filing the specific terms of the prior CVR/Gold Reserve bid under seal.

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

a value-maximizing Sales Transaction on an efficient timescale. This is confirmed by the fact that Elliott, after three months of exclusivity, has now reduced its headline price by $2.0 billion.

In respect of the Elliott headline price, Gold Reserve notes that several parties who have seen unredacted copies of the Elliott SPA have represented to the Court that the actual Elliott price – whether the initial $7.3 billion or the alternative circa $5.3 billion – is materially lower than what has been represented because of certain as-yet unquantified "purchase price adjustments." *See*, *e.g.*, D.I. 1373 at 4 ("All this to say nothing of the fact that the numerous contingencies and deductions baked into the SPA potentially provide for zero distributions to the Attached Judgment Creditors—the very parties who are supposed to be the beneficiaries of the sales process.") (Statement of CITGO Parties and PDVSA) (emphasis added).  These purchase price adjustments are replicated in the alternative Elliot bid terms.  *See* D.I. 1414-1 at 6-7 ("Except as otherwise described in this Term Sheet, the payments to be made by the Buyer upon the closing of the Alternative Transaction shall be as set forth in the Signed SPA, including with respect to the adjustment escrow holdback and other purchase price adjustments.") (emphasis added).

In Gold Reserve's view, having a full understanding of the magnitude of these downward purchase price adjustments is critical to understanding the actual terms of the Elliott bid(s), and Gold Reserve respectfully suggests that the Special Master should immediately disclose such information as is necessary to give the Court and the parties this full understanding.

                                                Respectfully submitted,

                                                **Womble Bond Dickinson (US) LLP**

                                                */s/ Kevin J. Mangan*
                                                Kevin J. Mangan

cc: Counsel of Record (via ECF)

| Key Terms | Elliott Bid (9/24/24 redacted draft SPA) | CVR/Gold Reserve Bid (7/26/24 draft SPA) | Gold Reserve Bid (as of 6/27/24) |
|---|---|---|---|
| Price | Circa **$7.3 billion** Enterprise Value, with Closing Consideration subject to reduction by material as-yet unquantified downward "purchase price adjustments" – see Note 1 – and no payment to Judgment Creditors until Elliott decides, in exercise of its discretion, that Alter Ego Release and PDVSA 2020 escrow conditions are satisfied. | [redacted] | Circa **$8.8 billion Enterprise Value**. See Note 3. No similar purchase price adjustments or onerous conditions on payment to Judgment Creditors. |
| Working Capital / Cash Build Pre-Closing | Working Capital changed from an EV deal with Target Net Working Capital at Closing to Lock Box structure with post-Dec 31, 2024 cash flow going to Elliott. | [redacted] | No similar onerous conditions. Instead, Working Capital adjustment based on the draft target posted by Special Master to Data Room. |
| Treatment of PDVSA 2020 Equity Pledge | As condition to Closing, Equity Pledge "must be released or there shall be a final, non-appealable Order determining that the sole recourse of the 2020 Bondholders is to recover from the 2020s Escrow Account." This could delay Closing to 2026/2027. | [redacted] | Acquire PDVH shares subject to 2020s pledge, with creation of escrow up to $1.9 billion for 2020 Equity Pledge claims. |
| Treatment of "Gramercy Alter Ego Claim" | Purchase price funds can be used to satisfy alter ego claims.<br><br>Closing conditioned on *inter alia* two conditions being met: (1) final non-appealable order dismissing alter ego claims; and (2) no court ruling "unfavorable" to Elliott or any Citgo company on any such claim. See Note 5. This too could delay Closing to 2026/2027.<br><br>Right to terminate if Injunction Motion denied or modified "in a manner adverse to [Elliott] or the holders of Attached Judgments." | [redacted] | No similar conditions. |
| Outside Closing Date | Circa April 23, 2026 [12 months from Trust Structure Effective Date (Oct 25, 2025) plus up to 180 days]. | [redacted] | Initial Outside Date of Dec 31, 2024; extended to June 30, 2025 if regulatory approvals not obtained. |
| Guarantee | No definite parent guarantee. See Note 6. | [redacted] | Definite parent guarantee. |
| Termination Fee | 5% of stated Enterprise Value = circa $365 million. | [redacted] | $100 million. |

**NOTE 1**

According to public filings by parties that have reviewed unredacted SPA, Elliott's stated $7.3 billion Enterprise Value is "deceptive" because it does not account for substantial pre-Escrow deductions that could exceed $1+ billion, thus bringing the true purchase price substantially lower.

Int the redacted Elliott SPA, "Closing Consideration" means the Lock Box Consideration Amount, minus Estimated Leakage Amount, minus Estimated Transaction Expenses, minus Expense Reserve Holdback Amount, minus Adjustment Escrow Amount, minus Advanced Transaction Expenses Amount, minus Assumed Claims Amount, plus FCF Adjustment, and minus any adjustment to the Closing Consideration pursuant to Section 6.21(d).

"FCF Adjustment" means amount equal to the sum of: (i) Closing Date Working Capital minus Effective Date Working Capital; minus (ii) Closing Date Debt minus Lock Box Debt; plus (iii) Closing Date Inventory Value minus Lock Box Inventory Value; plus (iv) Closing Date Cash minus Lock Box Cash; provided, that if the sum of clauses (i)-(iv) is greater than or equal to zero ($0), then the FCF Adjustment shall be zero ($0). The FCF Adjustment shall not include any amounts to the extent included in Leakage Amount.

Target Inventory will be approximately 35,000,000 bbls, broken out by inventory type/refinery based on input from the Company.

**NOTE 2**

[REDACTED]

**NOTE 3**

Under Gold Reserve bid, the price term is comprised of $1.14 billion credit bid, $5.74 billion cash and up to $1.9 billion in escrow for 2020 claims. Under Gold Reserve bid, "Closing Consideration" means the Enterprise Value minus the Credit Bid Amount plus Estimated Cash, plus Estimated Working Capital Adjustment, minus Adjustment Escrow Amount, minus Deposit Amount, minus Estimated Debt, minus Transaction Expenses, minus the Expense Reserve Holdback Amount.

**NOTE 4**

[REDACTED]

**NOTE 5**

Elliott closing is conditioned on, among other things:

(1) "That there is no Order or decision on the merits (including a ruling on summary judgment or a decision after trial) by a court of competent jurisdiction that is unfavorable to the Buyer or any Acquired Company, in a case by any potential creditor of the Bolivarian Republic of Venezuela or PDVSA that seeks to impose liability or seeks any remedy against the Buyer, the Company, or any of their assets on the basis that the Company or any of its direct or indirect subsidiaries is the

alter ego of the Republic or PDVSA, or on any similar veil-piercing, successor or similar legal or equitable or other doctrine), or otherwise seeks relief that is in conflict with the provisions of the Sale Order regarding such purported liabilities and related matters; and

(2) "The Injunction Motion shall have been granted by an Order that is satisfactory to the Buyer in its sole discretion, and shall be in full force and effect; and has not been modified in a manner adverse to the Buyer or the holders of Attached Judgments, other than the parties sought to be enjoined in the Injunction Motion."

**NOTE 6**

"From and after the Execution Date until the Trust Structure Effective Date or earlier termination of this Agreement, the Buyer shall attempt to negotiate and finalize (each in a form acceptable to the Buyer in its sole discretion): (x) the limited guaranties in favor of the Special Master, to be executed by each Equity Financing Source, guaranteeing such Equity Financing Source's pro rata share of the Buyer's obligations to pay the Reverse Termination Fee; (y) the equity commitment letters to be executed by each Equity Financing Source; and (z) the Debt Commitment Letter to be executed by the Debt Financing Sources."