# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>      Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>      Defendant. | Case No. 17-mc-151-LPS |
| OI EUROPEAN GROUP B.V.,<br><br>      Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>      Defendant. | Case No. 19-mc-290-LPS |
| NORTHROP GRUMMAN SHIP SYSTEMS, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>THE MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA,<br><br>      Defendant. | Case No. 20-mc-257-LPS |
| ACL1 INVESTMENTS LTD., et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>      Defendant. | Case No. 21-mc-46-LPS |

| | |
|---|---|
| RUSORO MINING LIMITED,<br><br>    Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Case No. 21-mc-481-LPS |
| GOLD RESERVE, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Case No. 22-mc-453-LPS |
| VALORES MUNDIALES, S.L. and CONSORCIO ANDINO, S.L.,<br><br>    Plaintiffs,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Case No. 23-mc-298-LPS |
| TIDEWATER INVESTMENT SRL AND TIDEWATER CARIBE S.A.,<br><br>    Plaintiffs,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Case No. 22-mc-79-LPS |

## SEVEN CREDITORS' OPENING POSITION ON THE COURT'S INCLINATIONS

OI European Group B.V. ("OIEG"); Northrop Grumman Ship Systems, Inc., f/k/a Ingalls Shipbuilding, Inc., and now known as Huntington Ingalls Incorporated ("Huntington Ingalls"); ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd. (together, "ACL"); Rusoro Mining Limited; Gold Reserve Inc.; Tidewater Investment SRL and Tidewater Caribe S.A. (together, "Tidewater"), and Valores Mundiales, S.L. and Consorcio Andino, S.L. (together "Valores") (collectively, the "Seven Creditors")[1] hereby submit this opening position on the Court's Order of November 20, 2024 (D.I. 1433) (the "Inclinations Order").[2]

### RESPONSE

The Seven Creditors set forth below their positions on the Court's Inclinations regarding the Litigation and the Sale Process:

I. Litigation

The Seven Creditors generally agree with the Court's Inclinations in connection with the Litigation, with a few additional observations and suggestions on process.

    *A. Resolution of Injunction Motion*

The Seven Creditors recognize that the Court is presently inclined to deny the Injunction Motion and is not "inclined to undertake to resolve, in the context of the *Crystallex* Action," the

---

[1] Each of the Seven Creditors holds a writ of attachment on the PDVH Shares and each has been declared an Additional Judgment Creditor by this Court and holds an Attached Judgment (in accordance with, and each term as defined in, the *Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* (D.I. 481) (the "Sale Procedures Order")). References to the docket index ("D.I.") are to the *Crystallex* docket, Misc. No. 17-151-LPS.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Inclinations Order or the Sale Procedures Order.

alter ego claims. *See* Inclinations Order at p. 5-6. However, the Seven Creditors respectfully submit that the Court's resolution of these claims would not be "unnecessary or unwarranted." *See id*. at p. 5.

*First*, the Court notes that "Amber Energy has proposed an Alternative Transaction Term Sheet . . . which may be an indication that even Amber Energy is prepared to modify its bid rather than withdraw it, in the absence of the requested injunction." *Id*. The Seven Creditors note, however, that the Alternative Transaction Term Sheet expressly conditions the closing of the transaction by Amber Energy on the Injunction Motion being granted and affirmed on appeal. *See* D.I. 1414 Ex. A. at p. 3. While the Court is correct in recognizing that a prior Gold Reserve bid contained "[n]o similar conditions," *see* Inclinations Order at p. 5, the Seven Creditors nonetheless believe that the Alter Ego Claims should (and can) be resolved as quickly as possible to remove any uncertainty from the bid environment.

*Second*, while the Seven Creditors do not dispute that the Alter Ego Claims "may be dismissed or otherwise found to lack merit by" the courts where they are currently pending, *see* Inclinations Order at pp. 5-6, they respectfully submit that *this* Court is uniquely positioned to have the most in-depth understanding of both the legal framework of an alter ego relationship involving Venezuela *and* how such claims should be addressed in the context of the ongoing sale process. Accordingly, in the view of the Seven Creditors, it is this Court that should resolve the merits of the Alter Ego Claims and/or determine, whether in this action or in the pending *Conoco* action referenced in the Court's Inclinations, how the Alter Ego Claims should impact the Sale Process.[3] The earliest pending action on the Alter Ego Claims – OIEG's in Case No. 19-cv-290 – remains

---

[3] *ConocoPhillips Petrozuata B.V. v. Girard Street Inv. Holdings LLC*, C.A. No. 24-1140 (D. Del. Oct. 14. 2024).

4

pending before *this* Court. While OIEG does not currently intend to pursue these claims, it is *this* Court where the Alter Ego Claims were effectively first filed, and thus it is reasonable for this Court to address them, particularly given that disgruntled creditors have attempted to sidestep this Court to instead pursue them in other districts where courts lack this Court's lengthy history with all the relevant (or irrelevant) facts. In sum, while the Seven Creditors are confident in the ability of the other courts to address the Alter Ego Claims, they suggest that it is inescapably obvious that the other creditors filed their cases in other districts in order to avoid this Court's jurisdiction. The Seven Creditors submit that such gamesmanship should not be tolerated as this Court and the Special Master seek to achieve a value-maximizing transaction.

*Third*, and finally, while it is correct that "claims materially identical to the Alter Ego Claims were filed and have been pending throughout the Sale Process and were disclosed to potential bidders," *see* Inclinations Order at p. 6, those claims (by Rusoro and OIEG) were filed *before* the Sale Procedures Order was entered. Rusoro has since voluntarily dismissed its claim, and OIEG acknowledges and anticipates that its claims will likely become moot once this Court enters an order approving the sale of the PDVH Shares (and once that sale order is affirmed and the sale has closed with distributions to judgment creditors). In any event, as stated, OIEG is not pursuing those claims and has not done so since the Sale Procedures Order was entered. In contrast, the only Alter Ego Claims being *actively* pursued at this time have been filed by creditors who previously sought, and continue to seek, redress from this Court, but who appear to have made a strategic decision to disrupt the existing sale process based on a view that that process is unlikely to result in their achieving a recovery.

5

The Seven Creditors understand the Court's hesitance to grant the Injunction Motion. However, the Seven Creditors maintain that *this* Court is best positioned to address the Alter Ego Claims and to do so in the context of the sale process.

### B. Bidder Protections and Topping Period Procedures

The Seven Creditors agree that bidder protections should be made uniform for all bidders and be established in advance of the Special Master's Final Recommendation. *See* Inclinations Order at pp. 6-7. While the Seven Creditors generally agree with the Court's listed items to be included and/or addressed in any upcoming bidder protections motion, the Seven Creditors do anticipate that parties may have different views on the specifics of the requested bidder protections. Thus, at this time, the Seven Creditors merely note that the generic bidder protection motion to be filed by the Special Master should allow the parties sufficient time to respond before the deadline for the submission of Stalking Horse Bids, as contemplated by the Proposed Schedule attached as **Exhibit A**. The Seven Creditors also believe that all parties would benefit by a requirement that the Special Master meet and confer with the Sale Process Parties and the Additional Judgment Creditors prior to filing the bidder protection motion.

### C. Special Master Final and Updated Final Recommendations

The Seven Creditors would like to confirm that bidder protections should only be afforded to a Stalking Horse Bid after it is both designated as such by the Special Master *and* approved by the Court, after any objections are resolved. This appears to be the Court's inclination (*see* Inclinations Order at p. 5 ("(iii) thereafter, require the Special Master to identify the best-available bid (before and then again after a Topping Period), make a recommendation as to whether the Court should approve the best-available bid, **and resolve objections to that recommendation.**"))

6

(emphasis added), but because it is a critical issue in the process, the Seven Creditors did want to confirm this point.

In terms of resolving the objections to the recommended Stalking Horse Bid, the Seven Creditors generally agree that the period for parties to *substantively* object to (or support) the Special Master's recommendation should follow the Topping Period and the Updated Final Recommendation.  *See* Inclinations Order at p. 7.  However, the Seven Creditors agree it would be beneficial to include a brief period for parties to comment on/object to the Special Master's designation of a Stalking Horse Bid (and Final Recommendation) – specifically, the point at which a bidder would be entitled to receive the bidder protections and be designated as the Stalking Horse Bidder. Such objections would not include substantive objections to (or support for) the sale or sale process overall but would enable the parties to raise with the Court any issues related to the bidder (and bid) selected to receive the bidder protections.

II. <u>Sale Process</u>

The Seven Creditors generally agree with the Court's Inclination regarding the Sale Process and provide the following response, consistent with the Proposed Schedule attached hereto.

*First*, the Seven Creditors agree that the Sale Process should proceed in parallel with the Litigation.  *See* Inclinations Order at pp. 7-8.  Specifically, the Seven Creditors agree that: (i) the data room should be opened as soon as practicable, to any legitimate potential bidder(s) that have signed non-disclosure agreements; (ii) a date should be set by which the Special Master will be required to designate a Stalking Horse Bid, which should designate a singular bid,[4] and that prior

---

[4] The Seven Creditors agree with the Court's Inclinations that "it is unfair to potential bidders participating in a Topping Period to have to figure out how to top two (or more) versions of the bid the Special Master selects as best-available." *See* Inclinations Order at p. 8 n.8.

7

to such bid being approved by the Court and thus it being converted into the initial Final Recommendation and being granted bidder protections, parties should have the opportunity to object to (or support) this designation; (iii) the designated Stalking Horse Bid should be accompanied by an SPA that is publicly filed with minimal redactions; (iv) a date should be set by which the Special Master will be required to make an Updated Final Recommendation, which should occur after the Topping Period has expired; (v) a briefing schedule should be established for any objections to the Updated Final Recommendation; and (vi) a date for the Sale Hearing should be set. The Seven Creditors have proposed dates for each of these events in the Proposed Schedule.

*Second*, the Seven Creditors agree that the Court should provide "further elaboration on the framework by which the Special Master will evaluate which bid is the best-available." *See* Inclinations Order at p. 9. The Seven Creditors submit that the paramount criterion should remain the consideration to be received by holders of Attached Judgments. *See id.* at p. 6 ("[T]he Court's obligation is to market [the PDVH] Shares in a manner designed to maximize their true value."); Sale Procedures Order at p. 6 (Sale Procedures were "designed to . . . result in the highest offer").

*Third*, the Seven Creditors agree that the sale process could benefit from "a list of material terms that any successful bidder must agree to." *See* Inclinations Order at p. 9. However, an extensive list of such terms could conflict with the overarching goal of maximizing value, as bidders may perceive a trade-off between price and other favorable terms. Nonetheless, there is at least one term to which all bidders should agree: Distributions to the holders of Attached Judgments (in accordance with this Court's priority order) should not be subject to an escrow for, or contingent on resolution of, the Alter Ego Claims. While the PDVSA 2020 Bondholders' claims are for a relatively knowable sum and have been in litigation for years, the Alter Ego Claims lack

8

a clear damages ceiling and have not been addressed on their merits by any of the courts in which they are pending.  Thus, an escrow or contingency related to the Alter Ego Claims could effectively bar recovery by holders of Attached Judgments for an indefinite period, which the Seven Creditors (and likely other judgment creditors) consider unacceptable.  As this Court itself noted, the "day[s] that Crystallex does not recover on its judgment . . . must soon come to an end."  Opinion (D.I. 234) at p. 38.  The only viable approach is for "bidders [to] simply price their view of the risk associated with [the Alter Ego Claims] when formulating their bids."  Memorandum Order (D.I. 643) at p. 10 (quotation marks omitted).  That said, the Seven Creditors maintain that *this* Court is best positioned to address the Alter Ego Claims and to do so in the context of the sale process which may also help facilitate bids (and bid structures) that can be supported by the judgment creditors.

*Finally*, the Seven Creditors agree that the Special Master should "accompany his Final Recommendation and Updated Final Recommendation with (i) a projection of the amount that would be received by the Judgment Creditors under the identified best-available bid . . . and (ii) an estimate he has prepared on the impact of any adjustments on the headline purchase price and potential distributions to creditors in the current waterfall if such adjustments are a feature of the identified best available bid."  *See* Inclinations Order at p. 10.  Additionally, the Seven Creditors believe that the foregoing information and proposed documentation for *all* binding bids under consideration for the Final Recommendation and/or Updated Final Recommendation should at least be provided to the Sale Process Parties and Additional Judgment Creditors and filed under seal.  Such documentation, projections, and estimates should not be limited to the binding bids the Special Master selects to advance.

9

Dated: November 26, 2024

| | |
|---|---|
| **MORGAN, LEWIS & BOCKIUS LLP**<br><br>By: /s/ Jody C. Barillare<br>Jody C. Barillare (#5107)<br>1201 N. Market St., Suite 2201<br>Wilmington, DE 19801<br>Telephone: 302-574-3000<br>Facsimile: 302-574-3001<br>jody.barillare@morganlewis.com<br><br> - and -<br><br>Jonathan Albano (*pro hac vice*)<br>Christopher L. Carter (*pro hac vice*)<br>One Federal Street<br>Boston MA 02110<br>Telephone: 617-341-7700<br>Facsimile: 617-341-7701<br>jonathan.albano@morganlewis.com<br>christopher.carter@morganlewis.com<br><br>**SEQUOR LAW, P.A.**<br>Edward H. Davis, Jr. (*pro hac vice*)<br>Fernando J. Menendez (*pro hac vice*)<br>1111 Brickell Ave., Suite 1250<br>Miami, FL 33131<br>Telephone: 305-372-8282<br>Facsimile: 305-372-8202<br>edavis@sequorlaw.com<br>fmenendez@sequorlaw.com<br><br>*Attorneys for OI European Group B.V.* | **PACHULSKI STANG ZIEHL & JONES, LLP**<br><br>By: /s/ Peter J. Keane<br>Laura Davis Jones (#2436)<br>Peter J. Keane (#5503)<br>919 North Market Street, Suite 1600<br>P.O. Box 8705<br>Wilmington, DE 19899-8705<br>Telephone: 302-652-4100<br>ljones@pszjlaw.com<br>pkeane@pszjlaw.com<br><br>**ALSTON & BIRD LLP**<br>Alexander A. Yanos (*pro hac vice*)<br>Robert Poole (*pro hac vice*)<br>90 Park Avenue, 15th Floor<br>New York, NY 10016-1387<br>Telephone: 212-210-9400<br>alex.yanos@alston.com<br>robert.poole@alston.com<br><br>*Attorneys for Northrop Grumman Ship Systems, Inc., f/k/a Ingalls Shipbuilding, Inc. and now known as Huntington Ingalls Incorporated* |
| **ASHBY & GEDDES**<br><br>By: /s/ F. Troupe Mickler IV<br>F. Troupe Mickler IV (#5361)<br>Marie M. Degnan (#5602)<br>Randall J. Teti (#6334)<br>500 Delaware Ave., 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>Telephone: 302-654-1888<br>tmickler@ashbygeddes.com | **DLA Piper LLP (US)**<br><br>By: /s/ Craig Martin<br>R. Craig Martin (#005032)<br>1201 North Market Street<br>Suite 2100<br>Wilmington, DE 19801<br>Telephone: 302-468-5655<br>Fax: 302-778-7834<br>craig.martin@us.dlapiper.com |

| | |
|---|---|
| mdegnan@ashbygeddes.com<br>rteti@ashbygeddes.com<br><br>**RILEY & JACOBSON, PLC**<br>Joshua S. Bolian (*pro hac vice*)<br>Jared A. Hagler (*pro hac vice*)<br>1906 West End Avenue<br>Nashville, Tennessee 37203<br>Telephone: 615-320-3700<br>jbolian@rjfirm.com<br>jhagler@rjfirm.com<br><br>*Attorneys for ACL1 Investments Ltd., ACL2 Investments Ltd. and LDO (Cayman) XVIII Ltd.* | - and -<br><br>James E. Berger (*pro hac vice*)<br>Charlene C. Sun (*pro hac vice*)<br>Joshua S. Wan (*pro hac vice*)<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Telephone: 212-335-4715<br>Fax: 212-884-8715<br>James.berger@us.dlapiper.com<br>Charlene.sun@us.dlapiper.com<br>Joshua.wan@us.dlapiper.com<br><br>*Attorneys for Rusoro Mining Limited* |
| **WOMBLE BOND DICKINSON (US) LLP**<br><br>By: */s/ Kevin J. Mangan*<br>Kevin J. Mangan (#3810)<br>Matthew P. Ward (#4471)<br>Stephanie S. Riley (#5803)<br>1313 N. Market St., Suite 1200<br>Wilmington, DE 19801<br>Telephone: 302-252-4320<br>Kevin.mangan@wbd-us.com<br>Matthew.ward@wbd-us.com<br>Stephanie.riley@wbd-us.com<br><br>**NORTON ROSE FULBRIGHT US LLP**<br>Matthew H. Kirtland (*pro hac vice*)<br>799 9th Street NW, Suite 1000<br>Washington, DC 20001<br>Telephone: 202-662-0200<br>Matthew.kirtland@nortonrosefulbright.com<br><br>- and -<br><br>Katherine G. Connolly (*pro hac vice*)<br>555 California Street, Suite 3300<br>San Francisco, CA 94101<br>Telephone: 628-231-6816<br>Katie.connolly@nortonrosefulbright.com<br><br>*Attorneys for Gold Reserve Inc.* | **AKERMAN LLP**<br><br>By: */s/ Andrew S. Dupre*<br>Andrew S. Dupre (#4621)<br>Brian R. Lemon (#4730)<br>222 Delaware Avenue, St. 1710<br>Wilmington, DE 19801<br>Telephone: 302-596-9200<br>andrew.dupre@akerman.com<br>brian.lemon@akerman.com<br><br>-and<br><br>**COVINGTON & BURLING LLP**<br>Miguel López Forastier (*pro hac vice*)<br>Mark D. Herman (*pro hac vice*)<br>One CityCenter<br>850 Tenth St., NW<br>Washington, D.C. 20001<br>Telephone: 202-662-5185<br>mlopezforastier@cov.com<br>mherman@cov.com<br><br>*Attorneys for (i) Tidewater Investment SRL and Tidewater Caribe S.A. and (ii) Valores Mundiales, S.L. and Consorcio Andino, S.L.* |

**EXHIBIT A**

| PROPOSED SCHEDULE ||
|---|---|
| Status Conference | December 13, 2024 |
| Special Master re-opens Data Room to persons who execute form NDA | December [16], 2025 ("D") |
| Special Master files the bidder protection motion | D + 7 days – [12/23] ("BP") |
| Objection deadline for bidder protection motion | BP + 21 days – [1/13] |
| Reply deadline for bidder protection motion | BP + 28 days – [1/20] |
| Stalking Horse Bids Submitted | BP + 28 days[5] – [1/20] ("SHB") |
| Special Master designates proposed Stalking Horse Bid (which, along with other bids received, will be filed on the docket in unredacted form and include waterfall and recovery projections) | SHB + 14 days – [2/3] |
| Objection deadline re Stalking Horse Bid designation | SHB + 21 days – [2/10] |
| Response deadline re Stalking Horse Bid designation | SHB + 28 days – [2/17] |
| Reply deadline re Stalking Horse Bid designation | SHB + 32 days – [2/21] |
| Stalking Horse Bid selected/approved as Special Master Final Recommendation | [Subject to Court Availability] ("SH") |
| Topping Period | SH + 30 |
| Special Master Updated Final Recommendation | Seven days after Topping Period ends ("UFR") |
| Objection deadline re Updated Final Recommendation | UFR + 21 days |
| Response deadline re Updated Final Recommendation | UFR + 35 days |
| Reply deadline re Updated Final Recommendation | UFR + 40 days |
| Commencement of Sale Hearing | [late May 2025] |

---

[5] Gold Reserve's position is that the period for submitting new stalking horse bids after the data room is re-opened should be extended from 28 days to 42 days given the likely intervention of the year-end holidays.