IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>Defendant. | Case No. 17-mc-151-LPS |

**RED TREE INVESTMENTS, LLC'S POSITION STATEMENT
IN RESPONSE TO THE COURT'S INCLINATIONS**

Red Tree Investments, LLC ("Red Tree") submits the following opening position statement in response to the Court's November 20, 2024 Order (the "Inclinations Order"). D.I. 1433.

**Preliminary Statement**

Red Tree has a direct stake both in litigation over PDVH alter ego claims and in the bidding process for the PDVH shares. That is because Red Tree has previously bid for the PDVH shares and is preparing another bid with other Additional Judgment Creditors and third-party financing sources. Both Red Tree's prior bid and the bid in process contain superior terms to the proposed Amber Energy transactions, including a superior base price; few, if any, contractual purchase price reductions; lower barriers to close; cash payments instead of potentially worthless trust certificates; no contingencies based on the alter ego claims; and a potential resolution of claims by the holders of the 8.5% 2020 bonds. Red Tree respectfully offers the following context to help illustrate the best path forward at the December 13 conference.

As Red Tree previously explained, both Amber Energy bids violate the Sale Procedure Order because they improperly allow the buyer to credit bid junior creditors' Attached Judgments

without paying off senior creditors in full.  *See* D.I. 1373-4 at 2-3 (Red Tree's prior statement explaining this issue).  Red Tree has first-hand knowledge of this point.  Red Tree previously joint bid with Koch Minerals SrL and Koch Nitrogen International SrL to purchase the PDVH shares. However, the Koch parties terminated their participation in the bid on August 17, 2024, after entering into a sale transaction with Amber Energy.  The Sale Purchase Agreement seeks a purchase price reduction for "Assumed Claims" purchased by Amber Energy also on that date. D.I. 1347-1 at 124 (redacted Amber Energy SPA).

That purchase price reduction creates a legal defect in the Amber Energy bid, at least at the $7.2 billion asserted level.  The proposed Amber Energy SPA credits the value of the Assumed Claims against the amount paid for the PDVH shares, even though the Koch parties' claims are too low in the priority waterfall to be paid off by Amber Energy.  *See id.* at 125.  Both Amber Energy proposals thus effectively credit bid the Koch claims by using them as part of the total consideration, implicating the Sale Procedure Order's rule that credit bids must pay off all senior creditors.  *See* D.I. 481 (SPO) ¶ 26, D.I. 472-1 (bidding procedures) at 8 § ii(d).

The Amber Energy bid cannot be approved in its current form.  The Court thus should refrain from structuring either the bidding process or the litigation around the Amber Energy bids. Instead, the Court should allow bidders to immediately move towards presenting bids that will maximize value for all creditors in compliance with Delaware law and the Sale Procedure Order. With that goal in mind, Red Tree respectfully offers the following reactions to the Court's "inclinations" in its November 20 order.

## Inclinations Regarding the Litigation

Inclination 4A:  The Injunction Motion.  While the Court is inclined to deny the Injunction Motion, Inclination Order at 5, Red Tree notes that a prompt merits ruling on the PDVH alter ego

2

claims would still be valuable to the sales process. To be sure, Red Tree is willing to proceed with a bid without a channeling injunction for the alter ego claims of the sort proposed by the Special Master. However, a resolution of the alter ego claims would help provide clarity to Additional Judgment Creditors and third-party financing sources that are weighing whether to invest in PDVH. Such clarity would be valuable even if a merits ruling would not fully preclude future alter ego claimants.

Moreover, this Court is uniquely well suited to resolve the alter ego claims. It has overseen years of litigation about whether the same or similar facts as those now raised by the alter ego claimants supported piercing PDVSA's corporate veil. The Court thus has an advantage over other forums in efficiently resolving whether to pierce the corporate veil of PDVH, PDVSA's wholly owned subsidiary. And since this Court is overseeing the PDVH sales process, this Court is, by definition, best suited to understand how a potential alter ego ruling could impact that sales process.[1] Having that information is critical to resolving the alter ego claims on their merits. Reverse veil-piercing under Delaware law requires a broad equitable inquiry into how piercing the veil would affect public policy, creditors, and third parties. *See Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 715 (Del. Ch. 2021); *see Girard Street Investment Holdings LLC v. Petroleos de Venezuela, S.A.*, No. 24 Civ. 4448, D.I. 51 at 18-22 (S.D.N.Y. Oct. 16, 2024) (arguments by PDVH as to how those factors apply here). A resolution of PDVH's alter ego claims by the Court overseeing the PDVH sale would be both more efficient and less likely to interfere with the sale process.

---

[1] This concern is not hypothetical. As ConocoPhillips noted recently, the order denying Red Tree's motion to intervene in the *Girard Street* alter-ego action appears to have misunderstood (1) the likelihood that the amount of money distributed to Additional Judgment Creditors is far less than the topline bid amount and (2) the relationship between Amber Energy's initial bid and the final outcome of the Alter Ego Claims. *See* D.I. 1395 at 2.

Accordingly, if the Court is not inclined to grant the Injunction Motion, Red Tree respectfully suggests that the Court consider any appropriate procedural vehicle to resolve PDVH's alter ego theory. Such vehicles may include, but need not be limited to, the ConocoPhillips declaratory judgment action already pending before the Court. *See ConocoPhillips Petrozuata B.V. v. Girard Street Inv. Holdings LLC*, No. 24-1140 (D. Del.).

Inclination 4B: Bidder Protections. Red Tree agrees that the Court should not grant bidder protections to either Amber Energy bid. Because both of those bids suffer from fatal legal defects, *see* pp. 1-2, *supra*, protracted litigation over granting Amber Energy bidder protections – including, potentially, a nine-figure termination fee – would waste the Court and the parties' time and resources. Any such motion should be summarily denied.

Instead, Red Tree respectfully submits that the Court consider bidder protections that would apply to whichever bid the Special Master selects after a new round of bidding. Red Tree further agrees that any such protection should be conditioned upon public filing of definitive documentation of the offer with only redactions necessary to protect confidential business information of PDVH and its subsidiaries. Red Tree also respectfully requests that, before bidder protections attach to any bid selected by the Special Master, Additional Judgment Creditors and Sales Process Parties be given an opportunity to raise threshold objections. In particular, no bidder protections should be granted to bids that, like the Amber Energy proposals, do not comply with the Sale Procedure Order. Moreover, no bid protections should be granted to bids that, like the Amber Energy proposals, contain terms designed to deter topping bids. Specifically, the Court should direct the Special Master to neither agree to nor enforce any bid that includes a "no shop;" requires the Special Master to shut down the data room available to other bidders; or requires the Special Master to immediately turn over any competing bids to the stalking horse. Such bid

4

protections only impair competing bids and are antithetical to the goal of maximizing value for creditors. Further, if the Court is inclined to entertain a bidder protection motion for either Amber Energy bid, Red Tree respectfully requests the right to take limited discovery into that bid to assess its compliance with the Sale Procedure Order and Delaware law.

Inclination 4C:  Process and Timing.  Red Tree agrees that the time to substantively object to or support the Special Master's recommendation should follow the Topping Period.  Further, Red Tree agrees that the sale process should therefore proceed directly to a renewed bidding period of sufficient length to give competing bidders a meaningful opportunity to participate.  However, consistent with the Court's Inclination 6, Red Tree respectfully suggests providing interested parties with an opportunity to submit input on non-price terms that any bid should contain.  Red Tree joins in the Seven Creditors' proposed schedule for the bidding process and litigation going forward.

## Inclinations Regarding the Sale Process

Inclination 5:  Process and Timing.  Red Tree agrees with the Court's inclination to continue the sale process in parallel with the litigation and to (i) require the Special Master to file the SPA and associated documents immediately, with minimal redactions; (ii) require the Special Master to reopen the data room as soon as possible; (iii) set a date for a Final Recommendation, which should be accompanied by public, final versions of necessary documentation; (iv) soon thereafter initiate a topping period and, at an appropriate point, bidder protections for a viable bid; (v) set a date by which the Special Master would be required to make an Updated Final Recommendation following the topping period; (vi) set a schedule for briefing objections (and support) for the Updated Final Recommendation; and (vii) schedule a Sale Hearing.

Inclination 6:  Bidding Framework.  Red Tree agrees that further clarity on the non-price terms for a bid would be productive.  Red Tree requests an opportunity to participate in any such submissions the Court invites on non-price terms.  Among other issues, Red Tree contemplates that any winning bid should, at a minimum, (1) comply with the Sale Procedure Order's requirement that any bid involving a credit bid of an Attached Judgment must pay off all senior liens in full,  D.I. 481 (SPO) ¶26; D.I. 472-1 (bidding procedures) at 8 §ii(d); and (2) consistent with the Special Master's past practice, require an affirmative statement as to how that bid proposes to deal with the 2020 8.5% bonds.

Inclination 7:  Information Accompanying Recommendations.  Red Tree agrees that the Special Master should include with his Final Recommendation and Updated Final Recommendation (i) an estimate of the total amount Additional Judgment Creditors would receive and (ii) an estimate of adjustments to the headline purchase price and of a waterfall indicating the amounts that would be received by Additional Judgment Creditors.

 Moreover, there is no reason to wait until a Final Recommendation for such waterfall estimates.  A great deal of uncertainty and unnecessary litigation has already been created by the refusal of Amber Energy and the Special Master to disclose any waterfalls for either Amber Energy bid.  Only after repeated objections did the Special Master admit that the (first version of) the Amber Energy bid could well provide Additional Judgment Creditors with "billions of dollars" less than the bid's headline "enterprise value."  D.I. 1415 at 3.  To avoid such needless litigation, and to improve transparency, Red Tree respectfully submits that Amber Energy should be required to disclose a payment waterfall for both bids (if they are still outstanding).  Further, any new bidder for the PDVH shares should be required to submit such a waterfall at the time it submits its bid.

6

Inclination 8:  Modifications to SPO.  Red Tree takes no position on whether the Court should make modifications to the Sale Procedure Order.

Inclination 9:  2020 Bond Entities' Rights.  Red Tree takes no position on whether the Court should grant the 2020 Bond Entities' request for a renegotiated SPA.

Dated:   November 26, 2024

|  |  |
|---|---|
|  | /s/ *Jennifer L. Cree* |
| Steven F. Molo (*pro hac vice*) | Rebecca Butcher (#3816) |
| Justin M. Ellis (*pro hac vice*) | Jennifer L. Cree (#5919) |
| Mark W. Kelley (*pro hac vice*) | LANDIS RATH & COBB LLP |
| MOLOLAMKEN LLP | 919 Market Street, Suite 1800 |
| 430 Park Avenue, 6th Floor | Wilmington, DE  19899 |
| New York, NY  10022 | Tel.: (302) 467-4400 |
| Tel.: (212) 607-8170 | butcher@lrclaw.com |
| smolo@mololamken.com | cree@lrclaw.com |
| jellis@mololamken.com |  |
| mkelley@mololamken.com |  |

*Counsel for Red Tree Investments, LLC*