# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Case No. 1:17-mc-00151-LPS |

## CONOCOPHILLIPS' OPENING BRIEF IN RESPONSE TO THE COURT'S INCLINATIONS

*Of Counsel*:

Michael S. Kim
Marcus J. Green
Josef M. Klazen
Lydia L. Halpern
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200
michael.kim@kobrekim.com
marcus.green@kobrekim.com
jef.klazen@kobrekim.com
lydia.halpern@kobrekim.com

Richard G. Mason
Amy R. Wolf
Michael H. Cassel
WACHTELL, LIPTON, ROSEN
 & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1000
RGMason@wlrk.com
ARWolf@wlrk.com
MHCassel@wlrk.com

Dated: November 26, 2024

ROSS ARONSTAM & MORITZ LLP

Garrett B. Moritz (Bar No. 5646)
Elizabeth M. Taylor (Bar No. 6468)
1313 North Market Street, Suite 1001
Wilmington, Delaware 19801
(302) 576-1600
gmoritz@ramllp.com
etaylor@ramllp.com

*Attorneys for Phillips Petroleum Company Venezuela Limited, ConocoPhillips Petrozuata B.V., ConocoPhillips Gulf of Paria B.V., and ConocoPhillips Hamaca B.V.*

## **TABLE OF CONTENTS**

**Page**

THE INJUNCTION MOTION ................................................................................................1

BIDDER PROTECTIONS AND PROCESS .........................................................................2

CONCLUSION........................................................................................................................5

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Cogent, Inc. S'holder Litig.*,
　7 A.3d 487 (Del. Ch. 2010)..................................................................................................3

*In re Pennaco Energy, Inc. S'holders Litig.*,
　787 A.2d 691 (Del. Ch. 2001)..............................................................................................3

ConocoPhillips respectfully submits this brief in response to the Court's Order entered on November 20, 2024 (D.I. 1433) in which the Sale Process Parties, among others, were invited to file their positions on the Court's Inclinations.

## THE INJUNCTION MOTION

The Court has indicated that it will likely deny the Injunction Motion. ConocoPhillips respectfully urges the Court to reconsider its tentative decision for the following reasons:

*First*, it appears that the Court may not have been provided with sufficient information about the alternative Amber Energy bid. While it is correct that Amber Energy was prepared to eliminate the escrow to cover potential alter ego liability in exchange for a $2 billion purchase price reduction, that proposal was conditioned on the Court's entering an injunction with the precise terms contained in the proposed order filed by the Special Master (D.I. 1414). Thus, Amber Energy's willingness to modify its bid did not evidence that the injunction is unnecessary.[1]

*Second*, ConocoPhillips believes that the Court was not provided with information about the impact of the alter ego risk on the ability to obtain external financing sources to fund bids. While certain bidders have indicated that they may be willing to take the risk of the potential for alter ego liability, it is not clear that any external financing can be obtained given that risk. A lack of available third-party financing would have a chilling effect on the quantity and quality of the bidding.

While ConocoPhillips is of the view, as are many others, that claims to pierce the corporate veil between PDVSA and PDVH are both factually and legally weak in these circumstances, the filing of the alter ego claims has still been highly detrimental to the sale process. And although

---

[1] Further, the "enterprise value" figure of more than $7 billion provided by the Special Master and Amber Energy already required substantial downward adjustments in order to be translated into an amount distributable to creditors before the $2 billion reduction.

the Additional Judgment Creditors cannot be shielded from the impact on the value of the PDVH shares of *actual* liabilities of PDVH or CITGO, the alter ego claims are of an entirely different nature.  The Court's decision to authorize Crystallex to attach the PDVH shares on account of its claim against Venezuela already accomplished the goal of making substantially all of Venezuela's assets in the United States available to pay Venezuela's creditors.  That goal having been achieved, no additional value exists that would be obtained by veil piercing further down the PDVH corporate structure.  Rather, claims that PDVH is the alter ego of PDVSA can only potentially reorder the priority of who receives that value.  The Gramercy parties are no more creditors of PDVH than Crystallex, ConocoPhillips, or any other Additional Judgment Creditors.  So the Gramercy parties, having litigated and lost a challenge to the Court's priority order, are attempting to enforce their claims against PDVSA or the Republic (at one level lower in the corporate structure than other creditors have done) for the sole purpose of evading the effect of this Court's priority order.  ConocoPhillips respectfully submits that the circumstances and the nature of the claims clearly demonstrate that Gramercy's portrayal of its alter ego cases as ordinary actions to impose liability on PDVH is a thinly veiled disguise for a direct challenge to the sale process in this Court.

## BIDDER PROTECTIONS AND PROCESS

ConocoPhillips agrees with the Court's inclination that bidder protections should be decided upon and then be applicable to whichever bid is ultimately selected, rather than being the subject of further protracted negotiations between bidders and the Special Master.

ConocoPhillips has the following views with respect to certain components of those protections:

- *Termination Fee and Topping Period*:  ConocoPhillips believes that a conventional topping fee of 3% would be appropriate in order to ensure the participation of all

potential bidders, and that it should be calculated based on the amount that will be distributed to creditors. *See In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 503 (Del. Ch. 2010) ("A termination fee of 3% is generally reasonable."); *In re Pennaco Energy, Inc. S'holders Litig.*, 787 A.2d 691, 702 (Del. Ch. 2001) (describing a 3% termination fee as "a termination fee at the more traditional level"). ConocoPhillips has already shared its concerns and suggestions with the Special Master about the other circumstances under which a termination fee could be payable in the current Amber Energy SPA, and would respectfully prefer to comment in its reply on any proposals contained in other submissions to the Court. The topping period should be of sufficient length to ensure a fair and robust process, but given how much time has already passed and the level of publicity the sale process has garnered, it need not be unduly long.

- *Special Master Representations*: The Bidding Procedures currently require bidders to acknowledge that the Special Master, his Advisors, PDVH and CITGO made no representations, covenants or warranties as to the accuracy of the information made available to the bidder, and also require the bidder to state that it has relied solely on its own investigation. Inasmuch as the Special Master is not in a position to vouch for the accuracy of information that can come only from CITGO, and CITGO is an involuntary participant in a forced judicial sale, these provisions were included for good reason. On the other hand, it appears that at least some bidders are reluctant to engage in such a substantial transaction without any of the standard protections provided in purchase agreements. Inasmuch as PDVH is subject to jurisdiction in this Court, ConocoPhillips believes it can be required to ensure that

3

CITGO complies with interim operating covenants to provide bidders with comfort that CITGO will operate its business in the ordinary course during the period between the selection of the winning bid and the closing of the sale. Since the principal recourse for violation of the covenants would be to seek the Court's intervention, they should be limited in number and critical to the ordinary operation of the business. The negotiation should reflect the input of CITGO management and should result in achievable covenants. In addition, an appropriate Material Adverse Change clause would provide another layer of protection to reasonably protect a bidder during the period between its selection and closing.

- *Determination of Best Bid*: The best bid should be determined by the amount payable to creditors at closing of the transaction that the Special Master believes is most likely to be executable. Executability would include the Special Master's assessment of the likelihood of obtaining regulatory and OFAC approvals in a timely manner, as well as the conditionality of any financing. If the price payable to creditors at closing is subject to conditions, such as escrowed amounts, the bid should be appropriately discounted both to reflect the risk that creditors will never receive those amounts, as well as that they will lose the time value of their distribution.

- *Length of Time Winning Bid Must be Held Open*: One of the issues that has arisen in the sale process is that the time between when a bid is approved and when it is able to close could be quite long. Among other things, OFAC approval could be a protracted process, appeals are likely, and a stay of the closing of the sale could be issued by any of three courts -- this Court, the Third Circuit, or the Supreme Court.

Some bidders may be willing to close after receiving OFAC and regulatory approval so long as there is no stay, while others may not. Bidders should be required to be transparent about the length of time they are prepared to hold their bids open, including their financing commitments, so that the likelihood that a bid will ultimately close can be taken into account in assessing the bids.

## CONCLUSION

ConocoPhillips respectfully requests that the Court reconsider its tentative decision on the Injunction Motion, and otherwise agrees with the Court's inclination that bidder protections should be determined by the Court rather than through further negotiations.

|  | Respectfully submitted, |
|---|---|
|  | ROSS ARONSTAM & MORITZ LLP |
|  | */s/ Garrett B. Moritz* |
| *Of Counsel*: | Garrett B. Moritz (Bar No. 5646) |
|  | Elizabeth M. Taylor (Bar No. 6468) |
| Michael S. Kim | 1313 North Market Street, Suite 1001 |
| Marcus J. Green | Wilmington, Delaware 19801 |
| Josef M. Klazen | (302) 576-1600 |
| Lydia L. Halpern | gmoritz@ramllp.com |
| KOBRE & KIM LLP | etaylor@ramllp.com |
| 800 Third Avenue |  |
| New York, New York 10022 | *Attorneys for Phillips Petroleum Company* |
| (212) 488-1200 | *Venezuela Limited, ConocoPhillips* |
| michael.kim@kobrekim.com | *Petrozuata B.V., ConocoPhillips Gulf of* |
| marcus.green@kobrekim.com | *Paria B.V., and ConocoPhillips Hamaca B.V.* |
| jef.klazen@kobrekim.com |  |
| lydia.halpern@kobrekim.com |  |

5

Richard G. Mason
Amy R. Wolf
Michael H. Cassel
WACHTELL, LIPTON, ROSEN
 & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1000
RGMason@wlrk.com
ARWolf@wlrk.com
MHCassel@wlrk.com

Dated: November 26, 2024