# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

---

CRYSTALLEX INTERNATIONAL CORP., )
)
       Plaintiff, )
)
v. )   Misc. No. 17-151-LPS
)
BOLIVARIAN REPUBLIC OF VENEZUELA, )
)
       Defendant. )

---

## SPECIAL MASTER'S OPENING POSITION IN RESPONSE TO COURT'S NOVEMBER 20, 2024 ORDER

OF COUNSEL:

Matthew S. Barr (*pro hac vice* admission pending)
David Lender (Admitted *pro hac vice*)
Chase A. Bentley (Admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Matt.Barr@weil.com
David.Lender@weil.com
Chase.Bentley@weil.com

Dated: November 26, 2024

Myron T. Steele (#00002)
Matthew F. Davis (#4696)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
msteele@potteranderson.com
mdavis@potteranderson.com
bpalapura@potteranderson.com

*Counsel for Special Master Robert B. Pincus*

Robert B. Pincus, in his capacity as special master for the United States District Court for the District of Delaware (the "**Special Master**") in the above-captioned case, respectfully submits his opening brief in response to the Court's Order entered on November 20, 2024 (D.I. 1433) (the "**Inclinations Order**").[1]

## PRELIMINARY STATEMENT

Since the beginning of this process, the Special Master has been focused on executing an expeditious and value-maximizing transaction for the sale of the PDVH Shares. In submitting the *Notice of Special Master's Recommendation* [D.I. 1325] on September 27, 2024, and setting forth the selection of Amber Energy Inc. ("**Amber Energy**") as the Successful Bidder, the Special Master was acting to further these goals.

Notwithstanding the Special Master's efforts, it has become evident in the time since submission of the Amber Energy bid that parties-in-interest, and most importantly Crystallex and ConocoPhillips as Sale Process Parties, do not support the transaction on the proposed terms. Even after an attempt to reduce the conditionality of its bid, Amber Energy has yet to garner any public support beyond the Special Master. Now, in the wake of the Court's assessments previewed in the Inclinations Order, it is clear to the Special Master that the current framework of the sale process needs to be revisited. Indeed, it is manifest that the Court, the Sale Process Parties, and other interested parties seek additional certainty that the sale process will be resolved expeditiously and

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* [D.I. 481] (the "**Sale Procedures Order**") or the Inclinations Order, as applicable.

clarity regarding the amount and timing of funds to be delivered to Additional Judgment Creditors, while encouraging a competitive process.

The Special Master submits that, based on the current circumstances, the best way to accomplish these goals is to cast aside the concept of a stalking horse bidder and bidder protections entirely, and proceed instead with a streamlined sale process. The proposed process described herein will provide qualified participants with sufficient opportunity to access a data room, formulate competitive bids, and participate in an auction process and ultimately place the Special Master in a position to submit his Final Recommendation regarding the Successful Bid and a Sale Hearing on a definitive timeline.

The Special Master recognizes this is a significant pivot from the process pursued to date, but the current absence of a viable bid without material conditionality related to the Alter Ego Actions (as defined in D.I. 1249), coupled with the Court's inclinations with respect to the same, lead the Special Master to recommend a different course.[2] The revised process proposed below is designed to address many of the Court's inclinations and drive towards a streamlined and expeditious conclusion to what has been an already extensively marketed sale process. Under this new framework, the sale process would continue in parallel with the Litigation, avoiding further delay. *See* Inclinations Order ¶ 5. Indeed, the data room could be opened almost immediately after the scheduled December 13, 2024 status conference, providing potential bidders with an opportunity to formulate competitive bids for the PDVH Shares. *See id*. The new proposed process also contemplates a final date by which the Special Master will be required to make a Final Recommendation, a definitive schedule for objections to (or responses in support of) the Final

---

[2] For the avoidance of doubt, to the extent the facts and circumstances related to currently available bids change in the lead-up to the December 13, 2023 status conference, the Special Master reserves the right to change his recommendation to the Court.

2

Recommendation, and a Sale Hearing at which the Court can consider the Final Recommendation and "make a decision as to whether to accept or reject it." *Id.*

Accordingly, the Special Master requests the Court take into consideration the Special Master's proposal, as set forth in more detail below, and proceed with an open auction process.

## SPECIAL MASTER'S OPENING POSITION

**I.  Special Master's Opening Position with Respect to Litigation.**

The Special Master respectfully states the following with respect to the Court's inclinations related to the Litigation (*see* Inclinations Order ¶ 4):

a. *Alter Ego Injunction.* As set forth in the prior briefing and the accompanying declaration of Ray Strong, the Special Master moved for an injunction against the Alter Ego Actions because "bidders have expressed concern about the risk of the Alter Ego Claimants and other creditors circumventing this Court's process," and those actions "pose a threat to the Special Master's ability to advance the Sale Transaction with a willing bidder." D.I. 1249 at 6; *see also* Strong Decl., D.I. 1250 ¶ 4 ("[B]idders have indicated that the prices they are willing to pay for the PDVH Shares, and their willingness to execute a sale transaction, are based on the understanding that the successful bidder will obtain the PDVH Shares free and clear of claims and encumbrances from PDVSA's judgment creditors."). Further, contrary to Gold Reserve's repeated contentions (*see* D.I. 1373, Ex. B-4; D.I. 1419), to date, the Special Master has not received a viable bid that did not also require the Alter Ego Actions to be addressed in some fashion.[3] As a

---

[3] Although Gold Reserve characterizes the CVR bid as "demonstrably superior to the Elliott bid in every material category" (*see* D.I. 1373, Ex. B-4), including a lack of alter ego conditionality (*see* D.I. 1419 (sealed)), the CVR bid in fact contained a mechanic for addressing the alter ego claims in a manner the Special Master and his advisors viewed as not feasible at the time (which view has only become more cemented following entry of the Court's Inclinations Order). And, both the CVR and Gold Reserve bids were critically flawed because of a high degree of financing uncertainty. With respect to Gold Reserve in particular, that uncertainty caused the Special Master to not view its bid as viable.

3

result, the Special Master has no superior bid that he can pivot to without reopening the process to bidders (including CVR and Gold Reserve).

In that vein, the Special Master wishes to address the Court's statement that "even Amber Energy is prepared to modify its bid rather than withdraw it, in the absence of the requested injunction." Inclinations Order ¶ 4.A. As the Special Master understands Amber Energy's Alternative Transaction Term Sheet, its alternative bid still requires the Court to grant the Special Master's Injunction Motion to "enjoin all claimants or writ holders" who filed an Attached Judgment Statement or are Attached Judgment Creditors. *See* D.I. 1414 (Ex. A at 3). While the alternative Amber Energy transaction does not contain closing conditions or post-closing unwind mechanics related to an alter ego decision on the merits, it nevertheless is still conditioned upon approval of the Injunction Motion.

For those reasons, the Special Master's concerns regarding the impact of the Alter Ego Actions on the value of the PDVH Shares obtained through the sale process remain. The Special Master rests on the briefing previously submitted in support of the Injunction Motion.

b. *Bidder Protections*. In light of the current circumstances, the Special Master does not believe pursuit of general bid protections would be a productive use of time or resources at this juncture. The Court made clear it is not inclined to grant the Injunction Motion or to decide any alter ego claims. *See* Inclinations Order ¶ 4. Further, the Special Master is not aware of any third party (*i.e.*, not a holder of an Attached Judgment) willing to submit a bid for the PDVH Shares without material conditionality related to pending alter ego cases. In addition to the original Amber Energy transaction embodied in the SPA filed on September 27, 2024 and the alternative transaction described above, all other third party bids pending at the conclusion of the second round of bidding also contained material conditionality regarding alter ego liability.

The challenges created by the current absence of third parties, or other viable bidders, willing to acquire the PDVH Shares without any alter ego conditionality are only compounded by the lack of public support from any parties-in-interest for either of the proposed Amber Energy transactions, both of which attempted to create structural solutions for the alter ego issues. Therefore, faced with a process that is unlikely to draw participation by parties other than credit bidders who are already incentivized to participate to protect their Attached Judgments, the Special Master recommends proceeding with a streamlined process free of bidder protections and as outlined in paragraph II.c. below. In the event those circumstances change, the Special Master reserves the right to pivot and recommend pursuit of general bid protections or other procedures intended to maximize the value of the PDVH Shares.

      c. *Special Master's Final Recommendation*. The Special Master agrees with the Court's inclination that objections to his recommendation should be heard only after the Final Recommendation is submitted (*see id*. at ¶ 4.C), though as part of the single-step streamlined process described below.

**II.**      **Special Master's Opening Position with Respect to Sale Process.**

The Special Master respectfully states the following with respect to the Court's inclinations related to the Sale Process (*see id*. at ¶ 5–7):

      a. *Access to SPA*. Following entry of the Inclinations Order, the Special Master prepared a version of the SPA with only those minimal redactions necessary to protect the confidential business information of PDVH and its subsidiaries or Amber Energy and its affiliates. The Special Master coordinated with PDVH/CITGO and Amber Energy on those redactions, and, contemporaneously herewith, filed the minimally-redacted SPA on the docket as directed by the Court. As further ordered by the Court, the Special Master is working with the necessary parties-

in-interest to ensure the Republic is served with unredacted versions of applicable prior filings made under seal.

  b. *Virtual Data Room*. The Special Master agrees with the Court's inclination that the data room be reopened as soon as practicable. *See* Inclinations Order ¶ 5. The illustrative date on which the Special Master proposes to reopen the data room as part of the streamlined process below reflects the earliest practicable date by which the Special Master could coordinate necessary updates to data room documents with CITGO, as well as execute or update NDAs with potential bidders to the extent necessary, and thereafter open the data room.

  c. *Proposed Structure for Remainder of Sale Process*. For the reasons set forth herein, and based on the current circumstances, the Special Master proposes foregoing the pursuit of general bid protections and avoid the attendant litigation and delay. Instead, the Special Master proposes a re-launch of the sale process in a streamlined manner immediately following the December 13, 2024 status conference.

  In advance of opening the data room, the Special Master will (i) coordinate with CITGO to update any necessary disclosure in the data room, including with respect to CITGO's recent financial performance,[4] and (ii) execute or otherwise amend, as necessary, any NDAs with potential bidders already involved in the sale process or any other parties wishing to participate as potential bidders, in the Special Master's discretion. Concurrently with opening the data room, the Special Master will make available to potential bidders through the data room: (i) a form of SPA, which all bidders must use as a base for any proposed revisions in connection with

---

[4] The Special Master understands CITGO's Q3 2024 financial reporting will be available on or about December 5, 2024.

6

submission of bids, and (ii) a process letter setting forth any material terms and assumptions that all potential bidders must consider in submission of bids.

After opening the data room, potential bidders would have ninety (90) days to submit their final bids to the Special Master. Thereafter, the Special Master would notify the potential bidders of their status as Qualified Bidders (as defined in the Bidding Procedures approved by the Sale Procedures Order, as amended if necessary) and designate a baseline bid (the "**Base Bid**") from that group of Qualified Bidders to set the floor for bidding at an auction to be held shortly thereafter. During the auction, Qualified Bidders would have the opportunity to top the Base Bid subject to an overbid amount and other applicable terms in accordance with the Bidding Procedures. While the Special Master does not believe full customary bid protections are appropriate in this streamlined process, an expense reimbursement for the Base Bid would be reasonable under the circumstances and would incentivize potential bidders to submit their best bid prior to the auction. For the avoidance of doubt, under the proposed streamlined process, the Base Bid would not be entitled to any termination fee or topping fee if it is not selected as the Successful Bid after the auction (only expense reimbursement).

After conclusion of the auction, the Special Master proposes to submit his Final Recommendation of the Successful Bid, after which the parties-in-interest would be provided sufficient opportunity to object or otherwise respond to the Special Master's recommendation of the proposed transaction embodied in Successful Bid.

The Special Master submits that the streamlined sale process could progress on the illustrative timeline attached hereto as Exhibit A, subject to the Court's availability and approval.

d. *Additional Sale Process Matters*. The Special Master agrees with the Court's inclination that the Special Master's Final Recommendation should set forth a projection of the

7

distributions to the creditors and an estimate of any purchase price adjustments attendant to the Successful Bid (*see* Inclinations Order ¶ 7), just as the Special Master previewed he intended to disclose in connection with seeking any bid protection for Amber Energy. The Special Master further agrees with the Court that, to the extent the Special Master wishes to amend or supplement the evaluation framework provided in the existing Sale Procedures Order and Bidding Procedures, he will do so in such form or manner as directed by the Court. *See id*. at ¶ 6.

## **CONCLUSION**

For these reasons, the Special Master requests that, under the current circumstances, the Court consider the implementation of the remaining sale process steps in the form recommended herein.

|  |  |
|---|---|
| | Respectfully submitted,<br>POTTER ANDERSON & CORROON LLP |
| OF COUNSEL: | |
| | */s/ Myron T. Steele* |
| Matthew S. Barr (*pro hac vice* admission pending) | Myron T. Steele (#00002) |
| | Matthew F. Davis (#4696) |
| David Lender (Admitted *pro hac vice*) | Bindu A. Palapura (#5370) |
| Chase A. Bentley (Admitted *pro hac vice*) | Hercules Plaza, 6th Floor |
| WEIL, GOTSHAL & MANGES LLP | 1313 North Market Street |
| 767 Fifth Avenue | P.O. Box 951 |
| New York, New York 10153 | Wilmington, DE 19801 |
| Telephone: (212) 310-8000 | Telephone: (302) 984-6000 |
| Facsimile: (212) 310-8007 | Facsimile: (302) 658-1192 |
| Matt.Barr@weil.com | msteele@potteranderson.com |
| David.Lender@weil.com | mdavis@potteranderson.com |
| Chase.Bentley@weil.com | bpalapura@potteranderson.com |
| | |
| Dated: November 26, 2024 | *Counsel for Special Master Robert B. Pincus* |

Exhibit A

| *Key Event* | *Deadline* | *Illustrative Date* |
|---|---|---|
| Special Master Opens Data Room | ("**Launch**") | December 18, 2024 |
| Final Bids Due | Launch + 90 days | March 18, 2025 |
| Deadline for Special Master to Notify Bidders of Status as Qualified Bidder | Launch + 97 days | March 25, 2025 |
| Deadline for Special Master to Designate Base Bid | Launch + 104 days | April 1, 2025 |
| Auction | Launch + 106 days | April 3, 2025 |
| Special Master Selects Successful Bid and Files Final Recommendation | Launch + 110 days, subject to extension of Auction | April 7, 2025 |
| Deadline for objections to Special Master's Final Recommendation | Launch + 131 days *(21 days after Final Recommendation)* | April 28, 2025 |
| Deadline for Special Master's Reply to Objections | Launch + 145 days *(14 days after Objections to Final Recommendation)* | May 12, 2025 |
| Deadline for Parties' Replies in Support of Objections | Launch + 148 days *(3 Business Days after Special Master's Reply to Objections)* | May 15, 2025 |
| Commencement of Sale Hearing | Launch + 161 days | May 28, 2025 |