IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 17-151-LPS |
| ACL1 INVESTMENTS LTD., et al., <br><br> Plaintiffs, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Misc. No. 21-46-LPS |

**ANSWERING BRIEF OF ACL1
INVESTMENTS LTD., ACL2 INVESTMENTS LTD., AND LDO (CAYMAN)
XVIII LTD. PURSUANT TO NOVEMBER 20 ORDER AND INCLINATIONS**

Pursuant to paragraph 3 of the Court's Order and Inclinations of November 20, 2024 (D.I. 1433),[1] Additional Judgment Creditors ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd. (together, "ACL") respectfully submit this answering brief to recommend that, if the Special Master pursues the sale process he proposed on November 26, 2024, the Special Master should be required to seek stapled financing.

---

[1] "D.I." refers to docket index numbers in *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, Misc. No. 17-151-LPS. Capitalized terms not defined herein have the meanings ascribed to them in the Sale Procedures Order (D.I. 481).

{02072513;v1 }

**What stapled financing is.** ACL submits this answering brief solely on the narrow issue of stapled financing. Stapled financing is "a proposal from a third party lender to fund a particular deal put together by an investment banker, so-called because the term sheet can be 'stapled' to the investment banker's proposal to be sent to potential bidders. The purpose is to demonstrate to the bidder that financing is available to close the deal." *In re Red Mountain Mach. Co.*, 2012 WL 13397399, at *26 n.60 (Bankr. D. Ariz. Sept. 21, 2012).

In the context of this sale process, stapled financing would be a financing commitment available to any qualified bidder. The Special Master would solicit interest from, and negotiate terms with, third-party providers of financing. The Special Master would make the resulting financing available to any qualified bidder. Bidders would be permitted but not required to employ the resulting stapled financing in their bids.

**Why stapled financing is being proposed now.** Stapled financing would complement the "streamlined" process proposed by the Special Master on November 26. *See* D.I. 1445. Unlike the process previously pursued by the Special Master, the "streamlined" process would require bidders to use a form Stock Purchase Agreement and to participate in an auction. *Id.* at 6-7. And any bidder protections under the Special Master's proposal would be "general," not specific to a bidder. *Id.* at 5. Stapled financing, like these proposals, would simplify the process and level the playing field among potential bidders.

Recent information about the bidding process to date provides additional reasons to pursue stapled financing. Multiple creditors—Crystallex (D.I. 1438 at 2), Red Tree (D.I. 1440 at 1), and Gold Reserve (D.I. 1419 at 1)—have announced their intention to make credit bids. Credit bids would benefit from stapled financing, because stapled financing would ensure base capital on which willing credit bidders could build. Moreover, multiple parties have indicated that third-party

{02072513;v1 }                                          2

providers of financing are interested in the sale process. *E.g.*, D.I. 1440 at 1; D.I. 1442 at 1. ACL's own diligence confirms that significant third-party interest exists in providing capital.

**How stapled financing could help.** Soliciting stapled financing would create a competitive process confined to the financing itself. This process would enable the Special Master to negotiate favorable financing terms independent of the identity of any particular bidder or the terms of any particular bid. Importantly, favorable financing for bidders would maximize the value received in the sale, and therefore maximize the recovery by creditors.

Stapled financing, once obtained, could also foster competition among bidders in the sale process. With stapled financing available to all bidders, more bidders could participate without financing contingencies. Bidders would remain free to obtain their own financing and to advocate that their financing is superior to the stapled financing package. In all events, the amount of stapled financing would establish a publicly known floor for the baseline bid.

**How stapled financing should be chosen.** The Special Master should make available to potential sources of stapled financing any information that is available to potential bidders. The Special Master should file on the *Crystallex* docket a term sheet for his recommended stapled financing twenty-one (21) days after the Special Master opens the data room. Any interested party should have seven (7) days to object, after which the Special Master and any interested party would have three (3) business days to respond to objections. Permitting objections would ensure accountability. This schedule would allow bidders to include the stapled financing in their bids without affecting the schedule that the Special Master has proposed. *See* D.I. 1445, Ex. A.

*   *   *

If the Special Master pursues the sale process he proposed on November 26, the Special Master should be required to seek stapled financing.

Dated: December 3, 2024

*Of counsel*:

Joshua S. Bolian (*pro hac vice*)
Jared A. Hagler (*pro hac vice*)
Riley & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee 37203
(615) 320-3700
jbolian@rjfirm.com
jhagler@rjfirm.com

Respectfully submitted.

ASHBY & GEDDES

*/s/ F. Troupe Mickler IV*
_____
F. Troupe Mickler IV (#5361)
Marie M. Degnan (#5602)
Randall J. Teti (#6334)
500 Delaware Ave., 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
tmickler@ashbygeddes.com
mdegnan@ashbygeddes.com
rteti@ashbygeddes.com

*Attorneys for ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd.*