# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Misc. No. 17-151-LPS |
| | ) |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | ) |
| | ) |
| Defendant. | ) |

----------------------------------------------------------------

## SPECIAL MASTER'S OMNIBUS RESPONSE TO
## OPENING POSITIONS ON THE COURT'S NOVEMBER 20, 2024 ORDER

OF COUNSEL:

Matthew S. Barr (Admitted *pro hac vice*)
David Lender (Admitted *pro hac vice*)
Chase A. Bentley (Admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Matt.Barr@weil.com
David.Lender@weil.com
Chase.Bentley@weil.com

Dated: December 3, 2024

Myron T. Steele (#0002)
Matthew F. Davis (#4696)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
msteele@potteranderson.com
mdavis@potteranderson.com
bpalapura@potteranderson.com

*Counsel for Special Master Robert B. Pincus*

Robert B. Pincus, in his capacity as special master for the United States District Court for the District of Delaware (the "**Special Master**") in the above-captioned case, respectfully submits this omnibus response to the opening positions filed by Crystallex, ConocoPhillips, Red Tree, OI European Group B.V. ("**OIEG**"), the Seven Creditors, Amber Energy, and the 2020 Bond Entities on November 26, 2024.  [D.I. 1438–1444] (collectively, the "**Opening Positions**").[1]

## PRELIMINARY STATEMENT

The Special Master continues to believe that, under the existing circumstances of this sale process, the next steps should be a streamlined solicitation of bids followed by an auction.  The Opening Positions highlight the need to make that pivot.  To be clear, a streamlined auction process is not an abandonment of the process to date.  We are not starting over.  The Special Master has extensively and directly marketed the PDVH Shares to a comprehensive list of potential buyers, and the proposed remaining process is intended to update interested parties on CITGO's latest financial performance and allow for a sale of the PDVH Shares in an expeditious manner.  The Special Master does not believe the distraction and delay created by approval of bid protections and litigation over the selection of a formal stalking horse is worthwhile at this time absent a viable third-party bid without material alter ego conditionality that also has at least some support from the Sale Process Parties and the Additional Judgment Creditors.  To date, the Special Master still has yet to receive such an offer for the PDVH Shares but reserves the right to propose to the Court

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* [D.I. 481] (the "**Sale Procedures Order**") or the Court's Order entered on November 20, 2024 (D.I. 1433) (the "**Inclinations Order**"), as applicable.

a process that contemplates bid protections and selection of a stalking horse in the event the circumstances change and such pivot is in the best interests of the parties and the sale process.

Therefore, the Special Master proposes that the Court proceed with a streamlined auction process as set forth in his [Opening Brief] (D.I. 1445), as supplemented by the responses herein.

## SPECIAL MASTER'S OMNIBUS RESPONSE

### A.  Bidder Protections.

Crystallex was the only party to address the potential for an auction in its Opening Position. The other parties, understandably, focused on the mechanics of a process that includes bid protections, consistent with the Court's Inclinations Order. While the Special Master agrees with Crystallex that the auction option would "resolve the sale process in an expeditious manner" (D.I. 1438 at 6), the remainder of Crystallex's rendition of this path is an oversimplification of what a sale of the PDVH Shares entails. The sale of the shares of a holding company that owns a 3,600-employee enterprise operating one of North America's largest petroleum refinery businesses cannot be reduced to a proverbial "sale on the courthouse steps." In addition, several pending litigations that touch this process only further complicate that task and make clear that a sale of the PDVH Shares will require more than the procedures contemplated by Crystallex. Locking in a laundry list of non-negotiable terms and requiring bidders to focus only on price would do a disservice to the years invested by many parties in this process and would almost certainly reduce competition and the possibility that creditors other than Crystallex will be paid. The Sale Procedures Order did not contemplate such a simple "as is where is" sale, and the Special Master strongly recommends the Court does not adopt one now. *See* D.I. 481, ¶ 14 ("The Special Master shall have authority to select a Qualified Bid as the Successful Bid that provides for a transfer of PDVH Shares free and clear of any claims, encumbrances, and liabilities[.]"). As described below,

the Special Master does, however, believe that distribution of a process letter to potential bidders is warranted, just as he did in the first two rounds of the bidding process.

### B. Process and Timing.

The Opening Positions filed by Red Tree and the Seven Creditors underscore why the Special Master supports pivoting to a streamlined auction process. The process they have proposed would create a drawn-out process with numerous opportunities for parties to object and delay confirmation of a sale. The Seven Creditors, joined by Red Tree, propose giving parties not one, but three, opportunities to object to the Special Master's recommendation and this process. *See* D.I. 1439 at 6-7, Ex. A; D.I. 1440 at 5. They propose a process that would involve objections to general bid protections, selection of a stalking horse, *and* the Special Master's ultimate recommendation of a Successful Bid. *Id.* This is not what the Court proposed in the Inclinations Order. *See* D.I. 1433 ¶ 4.C; D.I. 1438 at 10. The briefing schedule proposed by the Seven Creditors would have the parties-in-interest writing briefs nonstop for the next six months, which would be an incredibly inefficient use of time and resources, including for the Court. Further, the cadence of the briefing proposed has several other flaws, including that it contemplates the collection of stalking horse bids before the general bid protections are even determined. D.I 1439, Ex. A. Any realistic timeline that includes three separate briefing periods, as well as separate periods to solicit stalking horse and topping bids, would last significantly longer than the six months contemplated by the Seven Creditors. In addition to dragging out a process that has already been ongoing for some time, the Seven Creditors' proposal would risk chilling bidding interest due to the still-pending bid protections at the time of bid submission, as well as the prospect of facing extended litigation with parties that wanted themselves to be picked as the stalking horse.

3

Suffice to say, at this time, while the Special Master does not see the need for general bid protections under the existing circumstances, he strongly recommends against the protracted and wasteful three-stage briefing process proposed by the Seven Creditors and Red Tree.[2]

### C. Material Bid Terms.

With respect to setting material terms in advance of the next round of bidding, the Special Master interprets the Inclinations Order in the same way as Crystallex (see D.I. 1438 at 8)—that is, the instant briefing is not intended to result in a list of terms to be approved by the Court. Therefore, the Special Master does not respond here to each of the suggested "material terms" in the Opening Positions and proposes that he maintain the ability to exercise discretion afforded in the Sale Procedures Order in preparing a process letter for the next round of bidding.

While the Special Master appreciates the parties' input on the types of terms to be included on the list and will certainly take those suggestions into consideration when preparing a process letter for potential bidders, he does not see this topic as something to be litigated and briefed by the parties. Instead, like prior process letters (D.I. 1144, 1145, 1153–1156, and 1159), the Special Master proposes that he will, in his discretion and in compliance with the Sale Procedures Order and other orders of the Court, lay out for potential bidders the material terms and assumptions to be considered in connection with the submission of a bid. However, the Special Master, like the Seven Creditors (*see* D.I. 1439 at 8), cautions the Court against the requirement of overly prescriptive pre-ordained terms, which may reduce a bidder's ability to offer a competitive price.

---

[2] The Special Master must also briefly address Red Tree's mischaracterizations of the Amber Energy bids (which, according to Amber Energy, are now moot in any event, *see* D.I. 1444 at 5). Red Tree incorrectly attacks the "effective" credit bid of the Koch claim as being a violation of the Sale Procedures Order. D.I. 1440 at 1-2. The proposed transaction only gave Amber Energy credit for the "Assumed Claim" in the event all senior Attached Judgments were satisfied, as required by the Sale Procedures Order. Separately, Red Tree claims the Amber Energy bids violate Delaware law, but does so without any explanation.

4

Further, as described above, material bid terms should be limited in scope and should serve as a bidder's guide to how the Special Master will evaluate bids, rather than a rigid set of requirements. Terms should be sufficient to guide potential bidders in submitting their most competitive bid, but not so burdensome as to chill bidding or discourage bids. Whether a particular term is ultimately addressed in the Special Master's process letter, it should be clear at this point in the sale process that certain conditions can, and will, adversely affect the Special Master's assessment of a given bid.

One category of transaction terms the Special Master believes it should address at this stage is the 2020 Bonds. The Special Master does not believe that any of the terms proposed by the 2020 Bond Entities in their Opening Position at D.I. 1441 should be included. That is not to say the Special Master encourages or will select a bid that intentionally violates the Indenture or the Pledge Agreement, but rather the Special Master acknowledges that 2020 Bonds are a complicated issue and believes he should not foreclose any possible means of addressing that contingent liability at this point.[3] Moreover, the Special Master will refrain from addressing the 2020 Bond Entities' recitation of the facts of their own litigation and wishes to clarify that any statement herein or therein is without prejudice to any position the Special Master, or the new owner of PDVH, as applicable, may take in the future with respect to the validity of the 2020 Bonds or any rights of the 2020 Bondholders.

D. **Bid Evaluation Framework.**

Specifically enumerating a framework of criterion by which the Special Master and the Court should evaluate which bid is highest or best is a precarious line to walk, and one the Special

---

[3] To be clear, the Special Master also believes the 2020 Bond Entities mischaracterize the transactions contemplated by the Amber Energy bid and the actions that a new owner of PDVH may take despite the pending 2020 Bonds litigation.

5

Master does not recommend pursuing with any rigidity. The Special Master generally agrees with the concept proposed by ConocoPhillips that the Successful Bid should be determined by a combination of price and "executability" (or certainty). *See* D.I. 1442 at 4. But both price and certainty involve numerous variables and complexities that are not easy to reduce into a simple list of evaluation criterion. Price may not be a simple dollar amount in cash, but instead could be comprised of equity securities, debt, earnouts, warrants, or a number of other forms of consideration. Certainty can include regulatory approval, litigation conditionality, financial wherewithal, deal structure financing certainty, and many other terms that affect the ability of the bidder to execute on the proposed transaction. There also may be a tradeoff between the two, so that there should be no "paramount criterion" as proposed by the Seven Creditors. D.I. 1439 at 8. Holding "consideration to be received by holders of Attached Judgments" above all other terms may very well result in a high-dollar Successful Bid that falls apart between signing and closing because the bidder could not deliver on its financing package, leaving all parties with a broken process. *See* D.I. 1445 at 3, n. 3.

For those reasons, the Special Master recommends against enumerating an evaluation framework with much detail or specificity. Bidders should be encouraged to submit what they believe is the best bid for consideration. However, to be sure, the Special Master's goal in selling the PDVH Shares is to maximize the distributable value to the holders of Attached Judgments through a transaction that will deliver the consideration in a reasonable timeframe.

    **E.**    **Information to Accompany Recommendation.**

The Special Master agrees with the Opening Positions in that the Special Master's Final Recommendation should include (i) a waterfall of projected payments to creditors and (ii) an estimate of any adjustments to the headline purchase prices. *See* 1438 at 13–14, D.I. 1439 at 9,

D.I. 1440 at 6.  The Special Master is likewise supportive of the requirement that bidders provide the same information as part of their bids.  *See* D.I. 1440 at 6.  However, contrary to the Opening Positions, the Special Master believes that only the terms of the Successful Bid (or if there is a Stalking Horse, then also the Stalking Horse Bid) should be publicly disclosed.  Bids submitted by other bidders should remain confidential and filed with the Court under seal and served on the Sale Process Parties, as contemplated by the Sale Procedures Order.  Sale Procedures Order ¶ 13.  Any further mandatory disclosure would only serve to dissuade third parties from participating in the bidding process.

For the avoidance of doubt, the Special Master supported and previewed this same type of disclosure in connection with the Amber Energy bid.  *See* Oct. 1 Hr'g Tr. at 8 ("There are going to be adjustments to that [$7.286 billion] number and that will all be clear when we file unredacted copies of the [SPA].").[4]

### F. Other Sale Process Matters.

In addition to the responses above, the Special Master wishes to make clear, for the record, that he agrees with (i) the need for a good faith deposit, including for credit bidders (D.I. 1438 at 11) and (ii) the requirement and disclosure of final definitive documentation (*id*. at 12–13).

## CONCLUSION

For the foregoing reasons, the Special Master requests that the Court consider the implementation of the streamlined process set forth in the Special Master's Opening Brief and on the terms set forth herein.

---

[4] As discussed above, neither Amber Energy bid remains available today, so the Special Master does not intend to disclose the applicable waterfall analysis for that bid unless ordered to do so by the Court.

7

|  |  |
|---|---|
| | Respectfully submitted, |
| | POTTER ANDERSON & CORROON LLP |
| OF COUNSEL: | |
| | */s/ Myron T. Steele* |
| Matthew S. Barr (Admitted *pro hac vice*) | Myron T. Steele (#0002) |
| David Lender (Admitted *pro hac vice*) | Matthew F. Davis (#4696) |
| Chase A. Bentley (Admitted *pro hac vice*) | Bindu A. Palapura (#5370) |
| WEIL, GOTSHAL & MANGES LLP | Hercules Plaza, 6th Floor |
| 767 Fifth Avenue | 1313 North Market Street |
| New York, New York 10153 | P.O. Box 951 |
| Telephone: (212) 310-8000 | Wilmington, DE 19801 |
| Facsimile: (212) 310-8007 | Telephone: (302) 984-6000 |
| Matt.Barr@weil.com | Facsimile: (302) 658-1192 |
| David.Lender@weil.com | msteele@potteranderson.com |
| Chase.Bentley@weil.com | mdavis@potteranderson.com |
| | bpalapura@potteranderson.com |
| Dated: December 3, 2024 | |
| | *Counsel for Special Master Robert B. Pincus* |