# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

---

CRYSTALLEX INTERNATIONAL CORP., )
)
       Plaintiff, )
)
v. )   Misc. No. 17-151-LPS
)
BOLIVARIAN REPUBLIC OF VENEZUELA, )
)
       Defendant. )

---

## SPECIAL MASTER'S OMNIBUS REPLY TO
## OPENING POSITIONS ON THE COURT'S NOVEMBER 20, 2024 ORDER

OF COUNSEL:

Matthew S. Barr (Admitted *pro hac vice*)
David Lender (Admitted *pro hac vice*)
Chase A. Bentley (Admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Matt.Barr@weil.com
David.Lender@weil.com
Chase.Bentley@weil.com

Dated: December 6, 2024

Myron T. Steele (#0002)
Matthew F. Davis (#4696)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
msteele@potteranderson.com
mdavis@potteranderson.com
bpalapura@potteranderson.com

*Counsel for Special Master Robert B. Pincus*

Robert B. Pincus, in his capacity as special master for the United States District Court for the District of Delaware (the "**Special Master**") in the above-captioned case, respectfully submits this omnibus reply in support of the Special Master's Opening Position in Response to the Court's November 20, 2024 Order (the "**Opening Brief**") (D.I. 1445) in response to the Court's November 20, 2024 Order (D.I. 1433).[1]

## PRELIMINARY STATEMENT

Whether the Court ultimately proceeds with a stalking horse process or an auction, one thing is certain from the submissions to-date: nearly all of the interested parties desire a process that proceeds expeditiously and in a manner that encourages competitive bidding. Moreover, the majority of the parties agree on several significant terms, *inter alia*, that the data room should open as quickly as possible, definitive documentation should accompany any bid, and any Base Bid (as defined in D.I. 1445 at 7) or stalking horse designated by the Special Master is subject to Court approval. On points that lack consensus—the nature of bidder protections, material terms of the SPA, the framework for evaluating bids—the Special Master remains optimistic the parties can narrow the gap ahead of the December 13th status conference.

At this time, consistent with his prior submissions, the Special Master proposes the Court proceed with a streamlined auction process. However, multiple parties have indicated to the Special Master their preference for a stalking horse process, therefore, the Special Master will

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* (D.I. 481) (the "**Sale Procedures Order**") or the Court's Order entered on November 20, 2024 (D.I. 1433) (the "**Inclinations Order**"), as applicable.

continue to discuss all available options with parties in an effort to reach some consensus ahead of the December 13 status conference.

## SPECIAL MASTER'S OMNIBUS REPLY

### A. Response to Gold Reserve.

Gold Reserve complains of prior actions taken by the Special Master that were authorized by the Sale Procedures Order, are customary to transactions of this kind, and, if the shoe were on the other foot, would be actions that Gold Reserve would expect (and did expect) the Special Master to take with regard to its own bids. It is customary, for example, to grant exclusivity to a top bidder while in the process of completing diligence and finalizing the terms of the sale. *See* D.I. 1457 at 2; *Genuine Parts Company v. Essendant Inc.*, C.A. No. 2018-0730-JRS, 23 (Del. Ch. Sept. 9, 2019) (citing *In re IXC Commc'ns, Inc. v. Cincinnati Bell, Inc.*, 1999 WL 1009174, at *6 (Del. Ch. Oct. 27, 1999)). Gold Reserve sought the same protections in pursuit of its own joint bid with CVR. Moreover, it is customary to close a data room to all other bidders when the seller and potential purchaser have entered into exclusivity. *See id*. It strains credulity that Gold Reserve would not have required the closure of the data room if it were in the poll position.[2] And as Gold Reserve well knows, the form SPA for Round 2 was intended to be a starting point and not a rigid agreement with non-negotiable terms.[3] Virtually all Round 2 bidders materially marked up the form SPA with their own "bespoke" terms. Nothing in the Sale Procedures Order or Bidding Procedures prevented bidders from doing so. *See* Bidding Procedures at 8.

The Special Master's revised proposal does not "fail" to address or remedy issues with the current process for the following reasons:

---

[2] For the avoidance of doubt, contrary to Gold Reserve's assertions, the Special Master never anointed CVR/Gold Reserve as the "initial winning bidder." D.I. 1457 at 6.

[3] Indeed, the process letter issued ahead of the Round 2 deadline (D.I. 1145, Ex. A) included no requirement that bidders "only make light mark-ups" to the SPA. D.I. 1457 at 8.

    i. the Special Master's proposed 90-day period for access to the data room (i) was intended to provide potential bidders with sufficient time to get back up to speed (or in the case of potential new parties, to begin and complete their diligence) and (ii) lines-up with the expected release of CITGO's fiscal year-end financial results. The Special Master has, however, considered the parties' differing opinions on this subject and will confer with parties ahead of the December 13th status conference;[4]

    ii. the Special Master is not proposing that he have "unilateral authority" to select a base bid. *Id.* The Special Master is required to consult with the Sale Process Parties regarding the selection of a Base Bid (or stalking horse bid) and seek the Court's approval of the same. *See* Sale Procedures Order at 8, 20; *see also* Bidding Procedures at 7, 17. However, nothing in the Sale Procedures Order requires the Special Master to consult with every single Attached Judgment Holder at every step in the process—to do so would be inefficient and costly. *See generally id*; and

    iii. the Special Master's proposal to have a one-day auction is both customary and reasonable. It is, in fact, a process already contemplated and approved by this Court. *See* Bidding Procedures at 16–17. Moreover, a one-day auction (i) will incentivize competitive bidding and (ii) provides a sufficient amount of time for the Special Master to review bids and consult with the Sale Process Parties. *See* D.I. 1457 at 5–6. That being said, if parties desire more time in the process to coordinate updated financing, the Special Master is amenable to more time between the designation of the Base Bid and commencement of the Auction.

---

[4] The Special Master agrees with the parties that the data room should be opened as quickly as possible and is working with CITGO.

3

The Special Master's revised proposal does not create "substantial problems" for the following reasons:

    i.    the Special Master's selection of a Base Bid or stalking horse is subject to Court approval. Sale Procedures Order ¶ 20; Bidding Procedures at 7. Court approval of bidder protections does not, however, require extensive briefing. *see* D.I. 1455 at 3;

    ii.    the elimination of standard bidder protections is not fatal to the process. *Id*. at 4. As an initial matter, the Special Master is authorized to offer (or eliminate) bidder protections in his discretion, so this process never *required* them to begin with. Sale Procedures Order at 8, 20; Bidder Protections at 7. And while the Special Master is supportive of the concept of general bidder protections, for reasons previously stated, the Special Master will continue to engage with parties ahead of the status conference on the role of bidder protections, if any, in the process;

    iii.    the Special Master reiterates his view that parties should have flexibility in fashioning their bids rather than mandating a rigid list of SPA terms (D.I. 1457 at 8; D.I. 1454 at 7), but again, certainty will be a significant factor in evaluating bids. *See* D.I. 1455 at 4–5; and

    iv.    whether Gold Reserve's bid was "materially superior" to that of Amber Energy (it was not) is moot. *Id*. at 9. Neither its initial bid nor its bid with CVR is before the Special Master. In fact, the Special Master has heard nothing from CVR regarding its continued interest in the sale process.

    **B.**    **Response to CITGO.**

Despite devoting much of their brief to baseless attacks on the Special Master and his advisors, CITGO and PDVH do not actually object to the Special Master's proposed process. Rather, like most of the other parties, CITGO and PDVH tacitly acknowledge that, based on the circumstances present today, a streamlined solicitation of bids followed by a live auction is the

best path forward in these proceedings. *Id*. Needless to say, CITGO and PDVH's critiques of the Special Master and his advisors are based on numerous mischaracterizations of the record.[5] In the face of many challenges and complexities, the Special Master and his advisors have worked tirelessly—in close collaboration with the Sale Process Parties (despite CITGO's allegations), the Additional Judgment Creditors, potential bidders, and the Court—to fulfill the Special Master's mandate of carrying out a value-maximizing sale of the PDVH Shares for the benefit of the judgment creditors.

CITGO and PDVH's only real objection to the Special Master's proposal is that they believe "the Court should modify the Special Master's proposed schedule" to make it much more longer. D.I. 1459 at 5. But the Special Master's proposed schedule for a streamlined auction process reflects the reality that he is not abandoning the process that has already occurred or proposing to start over at square one. Rather, the Special Master has already extensively marketed the PDVH Shares to a comprehensive group of prospective buyers, as well as the general public, and his proposed process will build on the groundwork the Special Master and Sale Process Parties have already laid. Adding additional time to the schedule will needlessly delay resolution of the Sale Process.

For the foregoing reasons, the Special Master again requests that the Court consider the implementation of the streamlined process set forth in the Special Master's Opening Brief and on the terms set forth herein.

---

[5] For example, CITGO and PDVH claim they have been "warning" the Special Master about the alter ego claims for "well over a year," D.I. 1459 at 4, but the claims they brought to the Special Master's attention were those of OI European Group B.V.—which have not been litigated "since the Sale Procedures Order was entered"—and those of Rusoro Mining Limited—which have been "voluntarily dismissed," D.I. 1443 at 5.

|  |  |
|---|---|
| | Respectfully submitted, |
| | POTTER ANDERSON & CORROON LLP |
| OF COUNSEL: | |
| | */s/ Myron T. Steele* |
| Matthew S. Barr (Admitted *pro hac vice*) | Myron T. Steele (#0002) |
| David Lender (Admitted *pro hac vice*) | Matthew F. Davis (#4696) |
| Chase A. Bentley (Admitted *pro hac vice*) | Bindu A. Palapura (#5370) |
| WEIL, GOTSHAL & MANGES LLP | Hercules Plaza, 6th Floor |
| 767 Fifth Avenue | 1313 North Market Street |
| New York, New York 10153 | P.O. Box 951 |
| Telephone: (212) 310-8000 | Wilmington, DE 19801 |
| Facsimile: (212) 310-8007 | Telephone: (302) 984-6000 |
| Matt.Barr@weil.com | Facsimile: (302) 658-1192 |
| David.Lender@weil.com | msteele@potteranderson.com |
| Chase.Bentley@weil.com | mdavis@potteranderson.com |
| | bpalapura@potteranderson.com |
| Dated: December 6, 2024 | |
| | *Counsel for Special Master Robert B. Pincus* |