# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

---

CRYSTALLEX INTERNATIONAL CORP., )
)
      Plaintiff, )
)
  v. ) Misc. No. 17-151-LPS
)
BOLIVARIAN REPUBLIC OF VENEZUELA, )
)
      Defendant. )

---

**SPECIAL MASTER'S OMNIBUS RESPONSE TO OBJECTIONS TO SPECIAL MASTER'S MONTHLY REPORT FOR THE PERIOD ENDED SEPTEMBER 30, 2024**

Robert B. Pincus, in his capacity as special master for the United States District Court for the District of Delaware in the above-captioned case (the "**Special Master**"),[1] respectfully submits this omnibus response to the objections to the Special Master's Monthly Report for the Period Ended September 30, 2024 (the "**September Report**") (D.I. 1430).[2]

Since his appointment in April 2021, the Special Master and his advisors have worked diligently to secure a value-maximizing sale of the PDVH Shares for the benefit of Crystallex, ConocoPhillips, and the Additional Judgment Creditors. As this Court recognized as far back as September 2021, the Special Master has been "given . . . an extraordinarily complex and difficult endeavor," which has only grown more complex and difficult with time. D.I. 337 at 2. In the face of the many challenges, complexities, and conflicting interests at play, the Special Master and his advisors have gone to great lengths to build consensus where possible, making themselves available at every turn to participate in innumerable meetings and calls with the parties so that all perspectives are heard. Moreover, the Special Master, with the assistance and counsel of his advisors, has always employed his expertise and best judgment in an effort to chart a path towards a sale that maximizes value for the judgment creditors.

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* (D.I. 481) (the "**Sale Procedures Order**").

[2] The following parties have either filed or joined objections to the Special Master's September Report: ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd. (D.I. 1475); Rusoro Mining Ltd. and Gold Reserve Inc. (D.I. 1477); Petróleos de Venezuela, S.A., and the Bolivarian Republic of Venezuela (D.I. 1478); Koch Minerals Sàrl and Koch Nitrogen International Sàrl, Northrop Grumman Ship Systems, Inc., f/k/a Ingalls Shipbuilding, Inc., and now known as Huntington Ingalls Incorporated, and Saint-Gobain Performance Plastics Europe; and Siemens Energy, Inc. (collectively, the "**Objectors**").

While the Special Master appreciates that the parties have expressed dissatisfaction with the Amber Energy transaction the Special Master negotiated and proposed (D.I. 1325), at the time of the negotiations (and still today), after consultation with the Sale Process Parties—including countless hours with Crystallex and Conoco—the Special Master viewed the Amber Energy transaction as the most value-maximizing offer available for the PDVH Shares. On that basis, the Special Master and his advisors reasonably expended time and energy working to negotiate a transaction with Amber Energy in a form designed to garner additional support from the parties. The lack of support expressed by the parties after the Amber Energy transaction was announced is not an indication, as certain Objectors have suggested, that the Special Master's fees were "primarily incurred for the benefit of Amber Energy[.]" D.I. 1477 at 2. Rather, the Special Master and his advisors dedicated extensive effort to constructing a transaction with Amber Energy to maximize potential distributions to holders of Attached Judgments notwithstanding the myriad complexities and contingent liabilities attendant to the proposed sale.[3] Differences of opinion aside, at this point, the Special Master is not proposing that the work he and his advisors did on the proposed Amber Energy transaction simply be "cast aside" as the Objectors assert. *See* D.I. 1477 at 4-5. On the contrary, the Special Master has proposed a streamlined auction process that will build off the work performed thus far and bring to a close—rather than restart—this sale. *See* D.I. 1445.[4]

---

[3] Of note, Amber Energy's proposed "Alternative Transaction", which removed a condition related to one of those contingent liabilities, also reduced the value available to the judgments creditors by $2 billion. *See* D.I. 1414.

[4] The Special Master believes that the Court's recent inclinations provide a path for a simplified sale with limits on briefing, which should enable the Special Master to narrow the scope of his work on outstanding issues and complete the process in an efficient and cost effective manner, subject to unforeseen disputes or circumstances.

Although the Special Master shares in the Objector's frustration that a sale has not yet been approved and consummated, the Court's assessment of the reasonableness of the Special Master's attorneys' fees must take into consideration "the extent of the [endeavor], the difficulty of many of the issues presented, the thoroughness of the master's services, . . . and his expertise in the area with which this case is concerned.'" *Am. Safety Table Co. v. Schreiber*, 415 F.2d 373, 379-80 (2d Cir. 1969) (citation omitted) (concluding that "the district court did not abuse its discretion in the amount of compensation allowed to the master," even where appellants argued the master "unnecessarily extend[ed] the length of the hearings"). The Sale Process has been an extensive and exceedingly difficult undertaking, the Special Master and his advisors have been thorough and diligent in their efforts, and the Special Master and his advisors have applied their considerable expertise to the task at hand in an effort to maximize value for the judgment creditors. Accordingly, the Objectors' complaints about the Special Master's fees are unfounded, and the Court should approve the Special Master's fees and expenses.

In contesting the September Report, the Objectors make a few points that require correction or clarification:

*First*, the Objectors assert that the Special Master's fees are excessive because they have surpassed "[t]he original fee cap" of "$2 million." *See* D.I. 1477 at 6; D.I. 1478 at 1-3. But the Court's order appointing the Special Master expressly stated that the $2 million cap was only intended to cover "the fees and expenses of the Special Master, Counsel, and Advisors in connection with *submitting to the Court the Proposed Sales Procedures Order*."[5] D.I. 277 ¶ 15 (emphasis added). That cap was never meant to limit the fees the Special Master would incur

---

[5] The Special Master made his initial submission of the Proposed Sale Procedures Order on August 9, 2021. D.I. 302.

following the Court's entry of the Sale Procedures Order on October 4, 2022. *See* D.I. 481. In fact, the Sale Procedures Order specifically stated the Sale Process Parties and Additional Judgment Creditors would reimburse the Special Master for fees and expenses incurred in implementing the Sale Procedures Order, without reference to any cap or benchmark. D.I. 481 ¶ 15.

It is also worth noting that the Sale Process Parties and Additional Judgment Creditors "shall be reimbursed for any paid Transaction Expenses," including the Special Master's attorneys' fees, D.I. 481 ¶ 29, "out of the first proceeds of any sale of the shares of PDVH, notwithstanding any claim or attachment by any creditor of any of the Venezuela Parties," D.I. 277 ¶ 16. The judgment creditors were not forced to participate in this sale process. They each did so voluntarily with the understanding they would be required to pay the Special Master's fees and expenses on a temporary basis (i.e., until they are reimbursed from sale proceeds), in order to have a seat at the table in this sale process.

*Second*, PDVSA and the Republic argue that Weil's fees are unreasonable because some Weil attorneys' rates are "significantly above the $950/hour benchmark set by this Court for the Special Master." D.I. 1478 at 3. The Court has never indicated Weil's fees must be limited to some arbitrary cap or benchmark. While the Court's order appointing the Special Master set his compensation "at his usual rate of $950 per hour," the Court ordered that "[t]he fees of any Counsel or Advisors retained to assist the Special Master in carrying out his duties shall be calculated based on the *rates charged by such Counsel or Advisor to other clients of their firms*." D.I. 277 ¶¶ 14, 17 (emphasis added). The fees Weil submitted in the September Report (and all other monthly reports) reflect the standard rates Weil charges other clients.

4

*Third*, ACL asks this Court to significantly reduce the Special Master's attorneys' fees due to purportedly "vague time entries" and meetings that were supposedly "attended by more attorneys than was reasonable." D.I. 1475 at 1. The Special Master respectfully disagrees with both premises for the requested fee reduction. But more importantly, ACL brought this issue to the Court without making any effort to seek clarification from the Special Master and his advisors as to the work that was captured by these purportedly vague time entries or the reasons for the staffing of the meetings in question. Had ACL done so, the Special Master and his advisors would have worked with ACL to provide clarification and avoid burdening the Court with this dispute.

*Finally*, the Objectors ask the Court to reduce the Special Master's invoice by the amount of the fees of his former counsel, Messrs. Ray Schrock and Alex Welch, because they "have withdrawn from this case" in connection with their departure from Weil. *See* D.I. 1477 at 6; D.I. 1478 at 3-4. The fact that two attorneys have moved to another firm is not a basis for writing off the time they devoted to this matter months prior to their departure. The Special Master, however, agrees that the Sale Process Parties and Additional Judgment Creditors should not shoulder the costs of transitioning work from Messrs. Schrock and Welch to other attorneys at Weil. Therefore, the Special Master will not be seeking payment for any time that Messrs. Schrock and Welch spent transitioning work or for Matt Barr, who joined the team in their place, to get up to speed.

For these reasons, the Special Master respectfully requests that the Court (1) approve the monthly fees and expenses incurred by the Special Master and his advisors contained in the September Report and (2) deny any requests to alter or replace the existing mechanism for the Special Master's recovery of Transaction Expenses.

5

| | |
|---|---|
| OF COUNSEL:<br><br>Matthew S. Barr (Admitted *pro hac vice*)<br>David Lender (Admitted *pro hac vice*)<br>Jared R. Friedmann (Admitted *pro hac vice*)<br>Chase A. Bentley (Admitted *pro hac vice*)<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>Telephone: (212) 310-8000<br>Facsimile: (212) 310-8007<br>Matt.Barr@weil.com<br>David.Lender@weil.com<br>Jared.Friedmann@weil.com<br>Chase.Bentley@weil.com<br><br>Dated: December 10, 2024 | Respectfully submitted,<br>POTTER ANDERSON & CORROON LLP<br><br>*/s/ Myron T. Steele*<br>Myron T. Steele (#0002)<br>Matthew F. Davis (#4696)<br>Bindu A. Palapura (#5370)<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>P.O. Box 951<br>Wilmington, DE 19801<br>Telephone: (302) 984-6000<br>Facsimile: (302) 658-1192<br>msteele@potteranderson.com<br>mdavis@potteranderson.com<br>bpalapura@potteranderson.com<br><br>*Counsel for Special Master Robert B. Pincus* |