

**Potter Anderson & Corroon LLP**
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801-6108
302.984.6000
potteranderson.com

Myron T. Steele
Senior Counsel
msteele@potteranderson.com
Direct 302.984.6030

December 23, 2024

**BY HAND DELIVERY & CM/ECF**

The Honorable Leonard P. Stark
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801-3570

      Re:   *Crystallex International Corp. v. Bolivarian Republic of Venezuela*,
             D. Del. C.A. No. 1:17-mc-00151-LPS

Dear Judge Stark:

Pursuant to the Court's December 16, 2024 *Oral Order* (D.I. 1505) (the "**December 16 Order**"), I write to submit this joint status report (this "**Joint Status Report**") on behalf of Special Master Robert B. Pincus (the "**Special Master**") in the above-referenced matter. Consistent with the Court's December 16 Order, the Special Master met and conferred with parties-in-interest, including the Venezuela Parties, Crystallex, and ConocoPhillips (collectively, the "**Sale Process Parties**" and, each a "**Sale Process Party**"), and other interested parties, including the Additional Judgment Creditors regarding the contents of this Joint Status Report.[1]

In accordance with the December 16 Order, the Special Master hereby submits open questions related to the Inclinations Order for the Court's consideration. The questions are organized according to the Court's own questions from the December 11, 2024 *Order* (D.I. 1493) to which they correspond. In addition to posing each of the following questions, the parties included recitations of the applicable positions where it was determined further detail would aid the Court in answering a given question. The Special Master attempted to compile a list of the outstanding issues with respect to the Court's questions in consultation with parties-in-interest and without re-

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* (D.I. 481) (the "**Sale Procedures Order**") or the Court's November 20, 2024 Order (D.I. 1433) (the "**Inclinations Order**").

briefing the issues or including arguments in favor of various positions. The Special Master understands that certain parties, including the Venezuela Parties, do not believe this report covers statements or arguments they want the Court to consider and may file letters separate from this Joint Status Report in order to make such arguments.

\*   \*   \*

1.  ***Should the Sale Process now proceed to selection of a Stalking Horse or to a Live Auction?***

    All parties joining this report agree the Special Master should solicit bids for a Stalking Horse.[2] The Court is asked to resolve the following questions regarding the details of that solicitation process:

    a.  Should the Special Master be *required* to select a Stalking Horse, subject to being permitted to petition the Court to relieve him of such requirement because he does not believe there exists a Stalking Horse bid worthy of full bid protections? Or, instead, should the Special Master have the *option* to select a Stalking Horse?

        i.  The Special Master does not believe that he should be required to select a Stalking Horse, but should have the *option* to recommend a Stalking Horse for approval by the Court. In the event the Special Master determines in good faith after consultation with the Sale Process Parties that no bid should be given general bid protections, he will recommend a base bid to serve as the floor of the subsequent round of bidding. After approval by the Court of the Stalking Horse or the base bid, as applicable, the Special Master proposes the sale process proceed to a "Topping Period" of 30 days during which potential bidders may submit final bids in accordance with the Sale Procedures Order and the Bidding Procedures. The Special Master proposes that, at the conclusion of the Topping Period, he should retain the discretion, in consultation with the Sale Process Parties, to proceed to a final recommendation or, in the event there are multiple competitive topping bids, proceed to a multi-day live auction to determine the best bid.

            A.  ConocoPhillips agrees with the Special Master's proposal.

    b.  If the Special Master does not recommend approval of a Stalking Horse, should the process proceed to a live auction with a base bid designated, or should the base bid be subject to a Topping Period (the same as would have occurred if a formal Stalking Horse was approved)? For the avoidance of doubt, the parties joining this report all agree that regardless of the Court's answer to this question, the Special Master should recommend a base bid in the event he does not recommend a formal Stalking Horse.

        i.  See above for the Special Master's position. The Special Master believes he should be able to retain the ability to propose a multi-day live auction, to be conducted at the conclusion of the Topping Period in the event there are

---

[2] As noted above, the Venezuela Parties do not join this report and will be providing their positions to the Court in a separate filing.

       multiple bidders with competitive bids and the Special Master, in consultation with the Sale Process Parties, determines that the sale process would benefit from allowing those bidders to proceed to a live auction. Conversely, if there is a clear winner at the end of the Topping Period, a live auction would serve no purpose.

    ii.    Crystallex proposes that if no Stalking Horse bid is selected, or if no bidder protections are approved, then the top bid should be treated as the base bid and the sale process should move to a live auction.

    iii.    Gold Reserve proposes that the specifics of how the Sale Process should proceed in the event the Special Master petitions the Court to relieve him of the requirement to select a Stalking Horse bid should be evaluated if/when that occurs, given that Gold Reserve believes that at least one viable Stalking Horse bid in fact will be submitted and therefore that this eventuality need not be planned for at present.

2. ***Should the Court expect that the Sale Process will now involve new bidders and should additional marketing be conducted?***

All parties joining this report agree that there should be additional marketing. The Special Master will meet and confer with the Sale Process Parties to determine the identity and appropriate scope of outreach to potential bidders. Accordingly, the Special Master does not believe this issue requires resolution by the Court.

    a.    Crystallex has no objection to new bidders or additional marketing, provided that any additional marketing does not delay the sale. Accordingly, any party, including the Venezuela Parties, that has a specific proposal for outreach to potential bidders should submit those proposals to the Special Master by a date certain, and in no event later than December 27, 2024. The introduction of new bidders is not, on its own, a reason to extend the sale process timeline, as proposed by the Special Master at Exhibit A. Extensions of the sale process timeline should be disfavored, and the Special Master should be required to seek leave from the Court to extend the sale process timeline. Any such request to adopt the Special Master's or PDVH/CITGO's proposed "extended timeline" or "long track" should provide a detailed explanation as to why the participation of a particular new bidder (or bidders) requires such an extension and should be ruled on without briefing from the parties, which would only further delay the sale process. In any event, current Sale Process Parties or Additional Judgment Creditors should not be considered "new" bidders for purposes of potential outreach or for the purposes of considering any potential extension of the sale process timeline.

3. ***Should Bidder Protections, a model Stock Purchase Agreement ("SPA") with certain non-negotiable material terms, and evaluation criteria (for selecting a Stalking Horse Bid/Base Bid and Successful Bid) be established, if necessary by motion practice, and on what schedule?***

    a.    How should the Special Master and the parties go about submitting the following matters to the Court: (i) content of general bid protections available to any Stalking

3

Horse approved by the Court; (ii) material terms of a stock purchase agreement ("SPA") or a long-form draft SPA, and whether those terms or sections of that draft will be non-negotiable; and (iii) evaluation criteria for Stalking Horse and final bids.

    i. The Special Master proposes that he meet and confer with the Sale Process Parties and the Additional Judgment Creditors as soon as possible and submit a joint status report addressing the following topics and noting where the parties have reached a consensus or otherwise reporting dissenting opinions: (i) content of general bid protections available to any Stalking Horse approved by the Court; (ii) material terms of an SPA (but not an actual draft long-form SPA) noting which terms are non-negotiable and which are strongly favored; and (iii) evaluation criteria for Stalking Horse and final bids. The Special Master separately proposes that he consult with the Sale Process Parties *after* the Court approves the topics reflected in the joint status report, and then draft a long-form SPA which implements the material SPA terms approved by the Court. Such long-form draft SPA would then be deposited into the data room for all potential bidders.[3] In the event any of the Sale Process Parties believes the Special Master is not properly implementing the material SPA terms approved by the Court into the long-form draft SPA, such Sale Process Party may seek intervention by the Court to resolve any discrepancies.

        A. ConocoPhillips agrees with the Special Master's proposal.

    ii. Crystallex proposes that general bidder protections, a model SPA (not just a list of material SPA terms) with certain non-negotiable terms, and evaluation criteria for selecting a Stalking Horse bid, base bid, and/or Successful Bid should be established in advance. No separate meet and confer on a proposed list of material SPA terms is necessary at the outset of this process. Rather the Special Master and Sale Process Parties can (and should) move directly to drafting a model SPA. In drafting the SPA, the Special Master should consider only the views submitted to the Court by the Sale Process Parties and Additional Judgment Creditors, and not the views of entities participating solely as bidders. Moreover, the Special Master should be permitted to discount the views of creditors who are announced bidders if he believes that accepting their comments would bias the process in their favor as opposed to other potential bidders. In the alternative, if motion practice on material terms is ordered in advance of drafting a model SPA (and Crystallex submits that it should not be), it should be completed on an expedited basis and be limited to submissions from the Special Master, the Sale Process Parties, and the Additional

---

[3] For the avoidance of doubt, under the Special Master's proposal, only the material SPA terms list, and not the long-form bid draft of the SPA will be subject to formal Court approval. Any final SPA associated with a Stalking Horse bid or final bid recommended by the Special Master, however, will be subject to approval by the Court.

        Judgment Creditors.  Entities involved solely as potential bidders should not participate in the process.  The applicability of bidder protections to any bid should be briefed on an expedited timetable once a bidder likely to be entitled to those protections is selected (and before such protections go into effect).

    iii.    Certain of the Additional Judgment Creditors believe that it would be beneficial to all parties for the Special Master to distribute a long-form SPA draft before the meet and confer takes place with all parties (and before the joint status report is filed).

    iv.    Gold Reserve agrees with the other Additional Judgment Creditors referenced in (iii) and, consistent with the Court's previously-stated inclination (D.I. 1493 at 4), proposes that a long-form SPA should be prepared and agreed-upon, after the Court resolves any objections (to be briefed on an expedited schedule), while the data room is open and in advance of the deadline for the submission of bids.  The long-form SPA should include, or be accompanied by, the Special Master's proposal for standardized bidder protections.  To effect this, Gold Reserve proposes that the following steps should be taken:  (i) the Special Master should prepare and circulate a draft long-form SPA and standard bidder protections to the Sales Process Parties and Additional Judgment Creditors; (ii) such parties should be required to review and comment within a short, reasonable period of time (e.g., 7 days), (iii) the parties should thereafter meet-and-confer with the Special Master in good faith to attempt to resolve any disagreements; (iv) the Special Master should, as a result of this meet-and-confer, revise the draft SPA as he sees fit and submit the same for Court approval; and (v) any unresolved objections to the revised SPA should be resolved by the Court on an expedited schedule.  In Gold Reserve's proposed calendar (attached hereto as <u>Exhibit B</u>), the motion for form SPA/standardized bidder protection approval could be filed by the Special Master within 30 days of the data room being re-opened, i.e., by January 17, 2025, with any unresolved objections to the same heard and decided by the Court by mid-February 2025.

    v.    The 2020 Bondholders take no position on the Special Master's proposal except that they (and the Trustee and the Collateral Agent for the 2020 Bonds if so directed) should be given the opportunity to participate in any meet and confer process and to submit objections to any proposed model SPA or list of material terms that may impair their interests.

b. Should parties other than the Special Master and Sale Process Parties be included in the drafting of the full bid draft of the SPA or just the material terms list?

    i.    In the event that the Court approves the preparation of a material terms list, rather than proceeding directly to the model SPA, the parties joining this report all agree that the Additional Judgment Creditors should be included in the drafting of the material terms list, but diverge on how to address the full SPA draft.

5

    A. The Special Master proposes that parties other than the Special Master and Sale Process Parties not be included in the drafting of the full bid draft of the SPA and that the draft SPA itself not be subject to Court approval. ConocoPhillips agrees with the Special Master's proposal.

    B. Crystallex proposes the Special Master proceed directly to drafting of the form SPA and skip the separate step of negotiating an agreed material terms list, with the SPA to include input from all of the Sale Process Parties and Additional Judgment Creditors, culminating in a bid draft of the SPA that would be approved by the Court to the extent necessary to resolve any disputes as to the appropriate terms.

    C. Certain Additional Judgment Creditors proposed that they have the same access and rights as Sale Process Parties and be included in the drafting of the full bid draft of the SPA and/or the material SPA terms list, as applicable.

    D. Gold Reserve's position is that there is no need to draft the material SPA terms list and, in respect of the model SPA, that it can be drafted in the first instance by the Special Master, using the previous model SPA as the starting point.

    E. The 2020 Bondholders submit that they should be involved in the identification of the material SPA terms and be able to comment on the draft form SPA prior to it being submitted to the Court.

**4.** *Should the Court permit all Sale Process Parties "to submit a bid in the auction" or as part of a Stalking Horse process, "as a matter of right, regardless of whether they submitted a bid to become a qualified bidder or whether they viewed the other bids submitted during the selection process," as PDVH and CITGO request? (D.I. 1459 at 10)*

    a. Should all Sale Process Parties be permitted to submit a bid in any round of the process as a matter of right, regardless of whether they are a Qualified Bidder (and thus submitted a bid in the Stalking Horse round) or viewed other confidential bid materials previously submitted?

        i. The Special Master proposes the following: (A) Crystallex and ConocoPhillips are permitted to submit a bid in any round of the process, regardless of whether they submitted a bid in the first round or viewed confidential bid materials as a consultation party, so long as such bid in a subsequent round is a Defensive Credit Bid;[4] and (B) the Venezuela Parties

---

[4] "**Defensive Credit Bid**" means, with respect to Crystallex and ConocoPhillips, in the event the available Stalking Horse bids do not pay in-full a given Sale Process Party's first priority judgment, a credit bid submitted by such Sale Process Party that proposes to satisfy such first judgment but does not satisfy any junior Attached Judgments held by the Sale Process Party or any Additional Judgment Creditor. For the avoidance of doubt, an agreement by Crystallex or ConocoPhillips to have any of their judgments paid in non-cash consideration by a bidder or to

are always permitted to satisfy any judgments in full prior to consummation of a transaction (*see* Sale Procedures Order ¶ 29) so they should likewise be permitted to offer an alternative to a sale of the PDVH Shares at any time regardless of whether they have received confidential bid information.[5] Otherwise, any Sale Process Party that views confidential bid information as part of the evaluation of Stalking Horse bids should be prohibited from participating as a bidder in subsequent rounds. For the avoidance of doubt, the Special Master agrees that any party—whether a third party, Sale Process Party, or Additional Judgment Creditor—that has not received confidential bid information, should be permitted to participate in the Topping Period regardless of whether they submitted a Stalking Horse bid. If, however, the sale process proceeds to a live auction, any party interested in participating as a bidder in such auction must be deemed a Qualified Bidder (and the Special Master proposes that the Sale Process Parties be deemed Qualified Bidders consistent with clauses (A) and (B) above).[6]

    A. Crystallex and ConocoPhillips agree with the Special Master's proposal.

  ii. Certain holders of Attached Judgments propose that a credit bid may be submitted during any round of the sale process.

5. *What, if any, guidance does Delaware law provide as to how to evaluate bids comprised of not only cash but also "equity securities, debt, earnouts, warrants, [and/]or a number of other forms of consideration?" (D.I. 1455 at 6)*

No outstanding questions remain for the Court to address at this time. All parties joining this report agree that Delaware law permits the use of non-cash consideration and propose that (a) non-cash consideration, including contingent cash consideration, can be used as currency in the auction only on consent of the Sale Process Party or Additional Judgment Creditor proposed to receive it, (b) non-cash consideration, including contingent cash consideration, can be offered only according to the priority waterfall and in compliance with the Sale Procedures Order, (c) a recipient of non-cash consideration, including contingent cash consideration, cannot be paid more than the amount of its claim, and (d) the specifics of any

---

otherwise agree to the satisfaction of their judgments as part of an enhanced bid offered by an existing bidder in any Topping Period or auction shall not be considered a bid and therefore shall not be prohibited by the Special Master's proposal.

[5] The Special Master and the Sale Process Parties shall work in good faith to propose any modifications to the Sale Procedures Order necessary to implement the proposal in the foregoing clauses (A) and (B).

[6] In the event the Court determines all Stalking Horse and final bids be filed on the public docket, the Special Master proposes that any Sale Process Party be permitted to submit a bid in any round as a matter of right, regardless of whether they viewed confidential bid materials as a consultation party.

such non-cash consideration should be evaluated in the first instance by the Special Master and addressed in his Stalking Horse recommendation, if any, and his final recommendation, with interested parties able to comment on the specifics of any such non-cash consideration during the applicable period for objections.

6. *What weight, if any, should the Special Master give to bidders' plans with respect to the 2020 Bond Entities?*

   The Special Master, Crystallex, ConocoPhillips, and the Additional Judgment Creditors agree that there should be no requirement that the SPA address the 2020 Bond Entities other than acknowledging the 2020 Bond Entities purport to have a pledge of 50.1% of the equity of CITGO Holding, Inc., which is disputed by the Venezuela Parties and is subject to active litigation.

   The 2020 Bondholders submit that no bids should be permitted that impair their claims.

7. *Should an opportunity for discovery be built into the period for briefing objections to whatever recommendation the Special Master makes at the end of the process (i.e., the recommendation that will be the subject of the Sale Hearing)? (See, e.g., D.I. 1459 at 11) If so, how much discovery should be permitted and what, if anything, can be done in advance of the objections period to reduce the time needed for discovery?*

   a. Both of the Court's questions related to discovery currently remain outstanding.
      i. The Special Master's proposed schedule (attached hereto as <u>Exhibit A</u>) recommend that any discovery and depositions, to the extent necessary, be conducted within the twenty-one (21) day period for objections following the Special Master's designation of a Successful Bid and the submission of his Final Recommendation, and that any discovery close on day 14 of that period. The Special Master reserves the right to object to any discovery served on the Special Master, the appropriateness of which will depend on what transpires over the coming months.
      ii. Crystallex proposes that no discovery is necessary.
      iii. Certain of the Additional Judgment Creditors agree with Crystallex, but also suggest that such an outcome will be more likely if the Special Master is required to meet and confer with the Additional Judgment Creditors and seek court approval for any bid protections, evaluation criteria, and for the selection and/or recommendation of a Stalking Horse Bidder (or base bid).
      iv. Gold Reserve agrees with (iii) and further is of the view that, at present, the need for any such discovery is not established and therefore no provision in the schedule need be made for it. In the event this changes, and discovery is in fact required, the issue can then be taken up and resolved, as appropriate, in the specific circumstances as exist at the time.

8. *Should the Court approve the Special Master's proposal that only the terms of the Stalking Horse Bid and the Successful Bid be made public, while "[b]ids submitted by other bidders*

8

*should remain confidential and filed with the Court under seal and served on the Sale Process Parties, as contemplated by the Sale Procedures Order?" (D.I. 1455 at 7)*

The issue posed by the Court remains outstanding.

   a. The Special Master believes that only the proposed Stalking Horse bid (or base bid) and Successful Bid be filed publicly on the docket. Consistent with the Sale Procedures Order, all other bids should be filed under seal with the Court and served on the Sale Process Parties unless a Sale Process Party has elected to not receive confidential bid materials because it is participating as a bidder itself. In the event the Court decides that all bids, whether successful or not, should be filed on the public docket, the Special Master should be permitted to redact any bidder identifying information from the publicly-filed materials.
      i. ConocoPhillips agrees with the Special Master's position.
   b. Crystallex proposes that all bids should be made public, or at least made available to all interested parties on a confidential basis once the Special Master recommends a bid to be a Stalking Horse bid or base bid, as applicable.
   c. Gold Reserve's position is that the material terms of all bids should be public, not confidential.
   d. The 2020 Bondholders submit that the bidder for any approved Stalking Horse bid or base bid or any recommended Successful Bid should be required to disclose the terms of any financing arrangements, including whether any assets of PDVH or its direct or indirect subsidiaries are pledged or in any way committed to secure such financing.

9. *Should the Court adopt ACL's proposal regarding "stapled financing?" (E.g., D.I. 1453)*

The issue posed by the Court remains outstanding.

   a. The Special Master proposes that he not be required to obtain "stapled financing" but will inform prospective bidders who ask the Special Master in writing to identify possible sources of financing known by him to have expressed a written interest in providing such financing for a purchase of the PDVH Shares.
      i. Crystallex and ConocoPhillips agree with the Special Master.
   b. ACL continues to support its position articulated in its briefing related to the Inclinations Order.

10. *When should the Sale Hearing be held and can all participants in the Sale Process be expected to negotiate all dates leading to the Sale Hearing once the Court puts the hearing on its calendar?*

The issue posed by the Court remains outstanding.

   a. The proposed timelines of the Special Master and Gold Reserve are attached hereto as Exhibit A and B, respectively.
   b. As the result of ongoing consultation with the parties in interest, potential bidders,

      and financing sources, the Special Master has revised his proposed timeline. For ease of reference, the Special Master's proposed timelines recited at the status conference, as well as the revised timeline, are attached hereto as Exhibit A.

   c. Red Tree has no objections to the 90-day bidding period the Special Master initially proposed in Special Master's Opening Position in Response to Court's November 20, 2024 Order (D.I. 1445), but it does, however, object to the Special Master's timeline proposed in Exhibit A.

   d. Certain of the Additional Judgment Creditors additionally believe that: (i) the Special Master's "Extended Timeline" should be implemented (instead of starting with the "Standard Timeline" and pivoting if need be); and (ii) there should be a meet and confer and objection period (for at least the Additional Judgment Creditors) built in for both (a) the bid protections, SPA material terms, evaluation criteria and SPO modifications, and (b) the recommendation of a Stalking Horse (or base bid).

**11.** *How soon should the data room be reopened?*

This issue was resolved by the December 16 Order. The Special Master opened the data room on December 18, 2024 and granted access to any party with an active confidentiality agreement executed with the Special Master with a term of sufficient length. The Special Master will continue to grant access to additional parties as appropriate, in consultation with the Sale Process Parties.

The Special Master and has obtained CITGO's commitment to updating the data room as promptly as practicable on an ongoing basis.

**12.** *How quickly can all participants meet and confer with the Special Master to agree upon, or succinctly brief objections to, any necessary modifications to the Sale Procedure Order to implement the way forward the Court settles on?*

   a. By what process should the Special Master propose any modifications to the Sale Procedure Order?

      i. The Special Master proposes that he consult with the Sale Process Parties as soon as practicable after the Court approves any bidder protections, material SPA terms, and bid evaluation criteria, and thereafter file a joint status report, attached to which is a proposed amended Sale Procedures Order. The joint status report will note if the Special Master and Sale Process Parties are all in agreement as to the terms of the modified Sale Procedures Order or if there remains any dissenting opinion. All other parties will have an opportunity to respond to the proposed modifications.

         A. Crystallex and ConocoPhillips agree with the Special Master's position.

      ii. Certain of the Additional Judgment Creditors believe that they should all be included in the meet and confer process (or at least be provided with drafts of the proposed modifications) prior to the joint status report being filed.

13. *Should the Court direct the Special Master to modify his approach to meeting and conferring?*

    The Special Master agrees to meet on a regular basis with the Venezuela Parties. However, the following questions remain regarding any requirements for the Special Master to meet and confer with other parties:

    a. Should each of the Additional Judgment Creditors be named a Sale Process Party or otherwise be entitled to all rights and subject to all obligations of the existing Sale Process Parties?

    b. Should the Special Master be required to meet and confer, or otherwise consult, with the Additional Judgment Creditors in any formal capacity (even if the Additional Judgment Creditors are not named as Sale Process Parties)?

        i. The Special Master does not believe he should be required to meet and confer with all Additional Judgment Creditors with respect to every issue, but the Special Master agrees to seek input from the Additional Judgment Creditors on all significant matters.

        ii. OIEG and Gold Reserve propose that, because non-cash or contingent consideration should be considered by the Special Master, but only with the consent of the relevant claimholders, it is important for Additional Judgment Creditors to be involved in the bid evaluation process so that their consent (as applicable) can be obtained by bidders during the bidding process.

            A. As indicated above, all parties joining this report agree that non-cash consideration may not be imposed on any holder of an Attached Judgment.

14. *Should the Court sustain or overrule (in whole or in part) the pending objections to the Special Master's September 2024 billing?*

    The Court overruled the various objections to the Special Master's September Fee Report by its Oral Order dated December 16, 2024 (D.I. 1505). The Special Master filed a letter proposing certain revisions to go-forward billing procedures on December 18, 2024 (D.I. 1506), addressing the specific matters requested by the Court at the Status Conference.

15. *What other issues, if any, should be addressed at the status conference?*

    None.

Respectfully,

*/s/ Myron T. Steele*

Myron T. Steele (#0002)

*Counsel for Special Master Robert B. Pincus*

cc: All Counsel (via CM/ECF)

Case 1:17-mc-00151-LPS   Document 1510   Filed 12/23/24   Page 12 of 12 PageID #: 35022