# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., <br>     Plaintiff, <br>   v. <br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br>     Defendant. | Misc. No. 17-151-LPS |
| RED TREE INVESTMENTS, LLC, <br>     Plaintiff, <br>   v. <br> PETROLEOS DE VENEZUELA, S.A., and <br> PDVSA PETROLEOS, S.A., <br>     Defendants. | Misc. Nos. 22-68-LPS & 22-69-LPS |
| CONTRARIAN CAPITAL MANAGEMENT, L.L.C., et al., <br>     Plaintiffs, <br>   v. <br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br>     Defendant. | Misc. Nos. 21-18-LPS, 22-131-LPS, & 22-263-LPS |
| OI EUROPEAN GROUP B.V., <br>     Plaintiff, <br>   v. <br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br>     Defendant. | Misc. No. 19-290-LPS |
| ACL1 INVESTMENTS LTD., ACL2 INVESTMENTS LTD., and LDO (CAYMAN) XVIII LTD., <br>     Plaintiffs, <br>   v. <br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br>     Defendant. | Misc. No. 21-46-LPS |
| RUSORO MINING LIMITED, <br>     Plaintiff, <br>   v. <br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br>     Defendant. | Misc. No. 21-481-LPS |

| | |
|---|---|
| TIDEWATER INVESTMENT SRL and TIDEWATER CARIBE S.A., <br>     Plaintiffs, <br>     v. <br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br>     Defendant. | Misc. No. 19-79-LPS |
| PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED and CONOCOPHILLIPS PETROZUATA B.V., <br>     Plaintiffs, <br>     v. <br> PETROLEOS DE VENEZUELA, S.A., CORPOGUANIPA, S.A., and PDVSA PETROLEO, S.A., <br>     Defendants. | Misc. No. 19-342-LPS |
| NORTHROP GRUNMAN SHIP SYSTEMS, INC., <br>     Plaintiff, <br>     v. <br> THE MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA, <br>     Defendant. | Misc. No. 20-257-LPS |
| CONOCOPHILLIPS GULF PARIA B.V., <br>     Plaintiff, <br>     v. <br> CORPORACION VENEZOLANA DEL PETROLEO, S.A., and PETROLEOS DE VENEZUELA, S.A., <br>     Defendants. | Misc. No. 22-264-LPS |
| KOCH MINERALS SARL and KOCH NITROGEN INTERNATIONAL SARL, <br>     Plaintiffs, <br>     v. <br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br>     Defendant. | Misc. No. 22-156-LPS |
| GOLD RESERVE INC., <br>     Plaintiff, <br>     v. <br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br>     Defendant. | Misc. No. 22-453-LPS |

| | |
|---|---|
| SIEMENS ENERGY, INC.,<br>    Plaintiff,<br>    v.<br>PETROLEOS DE VENEZUELA, S.A.,<br>    Defendant. | Misc. No. 22-347-LPS |
| VALORES MUNDIALES, S.L. and<br>CONSORCIO ANDINO, S.L.,<br>    Plaintiffs,<br>    v.<br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br>    Defendant. | Misc. No. 23-298-LPS |
| CONOCOPHILLIPS PETROZUATA B.V.,<br>CONOCOPHILLIPS HAMACA B.V.,<br>CONOCOPHILLIPS GULF OF PARIA B.V.,<br>and CONOCOPHILLIPS COMPANY,<br>    Plaintiffs,<br>    v.<br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br>    Defendant. | Misc. No. 22-464-LPS |
| PHARO GAIA FUND LTD. and PHARO<br>MACRO FUND LTD.,<br>    Plaintiffs,<br>    v.<br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br>    Defendant. | Misc. No. 23-360-LPS |
| PHARO GAIA FUND LTD., PHARO MACRO<br>FUND LTD., and PHARO TRADING FUND,<br>LTD.,<br>    Plaintiffs,<br>    v.<br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br>    Defendant. | Misc. No. 23-361-LPS |
| RUDI LOVATI and ALESSANDRO<br>LUCIBELLO PIANI,<br>    Plaintiffs,<br>    v.<br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br>    Defendant. | Misc. No. 23-340-LPS |

| | |
|---|---|
| GRAMERCY DISTRESSED OPPORTUNITY FUND LLC, )<br>Plaintiff, )<br>v. )<br>BOLIVARIAN REPUBLIC OF VENEZUELA, )<br>Defendant. ) | Misc. Nos. 23-378-LPS & 23-379-LPS |
| SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE, )<br>Plaintiff, )<br>v. )<br>BOLIVARIAN REPUBLIC OF VENEZUELA, )<br>Defendant. ) | Misc. No. 23-397-LPS |
| ALTANA CREDIT OPPORTUNITIES FUND SPC, ALTANA CREDIT OPPORTUNITIES FUND 1 SP, and ALTANA FUNDS LTD. CAYMAN, )<br>Plaintiffs, )<br>v. )<br>BOLIVARIAN REPUBLIC OF VENEZUELA, )<br>Defendant. ) | Misc. No. 23-608-LPS |
| CONOCOPHILLIPS PETROZUATA B.V., CONOCOPHILLIPS GULF OF PARIA B.V., PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED, and CONOCOPHILLIPS HAMACA B.V., )<br>Plaintiffs, )<br>v. )<br>GIRARD STREET INVESTMENT HOLDINGS LLC, G&A STRATEGIC INVESTMENTS I LLC G&A STRATEGIC INVESTMENTS II LLC, G&A STRATEGIC INVESTMENTS III LLC, G&A STRATEGIC INVESTMENTS IV LLC, G&A STRATEGIC INVESTMENTS V LLC, G&A STRATEGIC INVESTMENTS VI LLC, G&A STRATEGIC INVESTMENTS VII LLC, GRAMERCY DISTRESSED OPPORTUNITY FUND, LLC, SIEMENS ENERGY, INC., THE BOLIVARIAN REPUBLIC OF VENEZUELA, PETROLEOS DE VENEZUELA, S.A., and PDV HOLDING, INC., )<br>Defendants. ) | Misc. No. 24-1140-LPS |

**MEMORANDUM ORDER REGARDING SALE PROCESS AND LITIGATION**

Having reviewed the Special Master's joint status report of December 23, 2024 (Misc. No. 17-151 D.I. 1510)[1] ("Report"), representing the views of the Special Master as well as judgment creditors Crystallex and ConocoPhillips and other Additional Judgment Creditors, and having also reviewed the separate submissions of the Venezuela Parties (D.I. 1511, 1512), and having carefully considered the best way for the Litigation and the Sale Process to proceed (*see, e.g.*, D.I. 1433 (Order and Inclinations); D.I. 1493 (setting out questions and further inclinations regarding Sale Process); D.I. 1507 (Transcript of Dec. 13, 2024 Hrg.),

**IT IS HEREBY ORDERED** that:

1. There shall be additional marketing, to include outreach by Evercore Inc. ("Evercore") to all parties who previously received a "teaser" or other marketing materials, a good-faith review and evaluation by Evercore as to whether other parties that might be interested in participating in the Sale Process should be contacted, and any other actions the Special Master (aided by his Advisors) deem to be practical, prudent, and timely. The marketing period shall begin as soon as the Special Master is able, if he has not done so yet, and shall be completed by **January 17, 2025** (unless the Special Master and Sale Process Parties agree to extend it and such extension can be accomplished without delaying any other date or deadline in this Order).

2. The Data Room has been reopened and shall remain open until further Order of the Court. CITGO shall, consistent with the commitment it has given to the Special Master, update the Data Room as promptly as practicable on an ongoing basis. (*See* D.I. 1511 at 7)

---

[1] All references to the docket index ("D.I.") are to the Crystallex docket, Misc No. 17-mc-151, unless otherwise noted.

1

3. The Special Master shall meet and confer with the Sale Process Parties and Additional Judgment Creditors and then, no later than **January 14,** submit to the Court a Joint Status Report ("JSR") attaching: (a) the proposed Bidder Protections that will be made available to any Stalking Horse approved by the Court; (b) a list of the material terms of a Stock Purchase Agreement ("SPA"), noting which terms are non-negotiable and which are strongly favored; and (c) Evaluation Criteria for Stalking Horse Bids, Base Bids, and Successful Bids.

4. Following the Special Master's submission of the JSR in accordance with paragraph 3 above, any Sale Process Party or Additional Judgment Creditor may, by **January 17**, file objections to any portion of it or any attachment to it, not to exceed ten (10) pages, to which the Special Master must and any Sale Process Party or Additional Judgment Creditor may, by **January 21**, file a response not to exceed ten (10) pages, to which the objecting party may, by **January 23**, file a reply not to exceed five (5) pages.

5. After the Court rules on all objections described in paragraph 4 above, which the Court will endeavor to do by January 27, 2025, the Special Master shall (a) promptly deposit in the Data Room copies of the Court-approved Bidder Protections, SPA material terms, and Evaluation Criteria, and (b) meet and confer with the Sale Process Parties and, within 14 days of the Court's ruling, deposit in the Data Room a long-form SPA consistent with the Court-approved material terms.

6. On the same date he deposits the long-form SPA in the Data Room, the Special Master shall file the same long-form SPA on the Court's docket. Should there be any objection to the long-form SPA (and it is the Court's expectation that all or at least nearly all objections to the SPA will be litigated in connection with the list of material terms, as contemplated in paragraphs 3-5 above), such objections shall be briefed as follows: (a) objections of no more than five (5)

2

pages due within two (2) business days; (b) responses of no more than five (5) pages due within two (2) business days; (c) replies of no more than two (2) pages due within one (1) business day.

7. The Special Master shall, as soon as practicable after the Court approves the Bidder Protections, material SPA terms, and Evaluation Criteria, meet and confer with the Sale Process Parties, to draft proposed amendments to the Sale Procedures Order ("SPO") (D.I. 481) or Bidding Procedures, and thereafter shall file a motion for approval of those amendments. (*See* D.I. 1511 at 7)

8. Should there be any objection to motion for approval of amendments to the SPO described in paragraph 7, such objections shall be briefed as follows: (a) objections of no more than five (5) pages due within two (2) business days of the motion for amendment; (b) responses of no more than five (5) pages due within two (2) business days; (c) replies of no more than two (2) pages due within one (1) business day.

9. No later than **February 14**, the Special Master shall file on the docket (a) a notice as to whether any new potential bidders have executed a non-disclosure agreement and (b) if and only if any new bidders have done so, whether (and if so by how much) the Special Master seeks to extend any portion of the schedule set out in this Order. Should there be any objection to the Special Master's position on these points, such objections shall be briefed as follows: (a) objections of no more than five (5) pages due within two (2) business days; (b) responses of no more than five (5) pages due within two (2) business days; (c) replies of no more than two (2) pages due within one (1) business day. Absent further order of the Court, the dates and deadlines set forth in this Order shall govern the Sale Process.

10. The Special Master shall solicit bids for a Stalking Horse, who, upon Court approval, would obtain the benefit of Bidder Protections and who will be required to execute the

SPA, and purchase the PDVH Shares, unless the Stalking Horse Bid is topped or the Court orders otherwise. The Special Master shall prefer a Stalking Horse Bid to a Base Bid, which, unlike the Stalking Horse Bid, would not obtain the benefit of Bidder Protections (and would receive no more than reimbursement of reasonable expenses). However, the Special Master has discretion to recommend a Base Bid rather than a Stalking Horse Bid if, but only if, in his expert good faith judgment, reached after consultation with the Sale Process Parties *and* Additional Judgment Creditors, he believes he has received no bid worthy of being given general Bidder Protections.

11. Stalking Horse Bids shall be due by no later than **March 7, 2025**.

12. The Special Master's selection of a Stalking Horse Bid or Base Bid shall be filed with the Court no later than **March 14, 2025**.

13. Should there be any objection to the Special Master's selection pursuant to paragraph 12, such objections shall be briefed as follows: (a) objections of no more than five (5) pages due within two (2) business days; (b) responses of no more than five (5) pages due within two (2) business days; (c) replies of no more than two (2) pages due within one (1) business day.

14. After the Court rules on all objections to the Special Master's recommendation described in paragraph 12 above, which the Court will endeavor to do by March 28, or if no timely objection is received, a Topping Period of 30 days shall commence, during which bidders may submit bids, in response to which the Special Master will negotiate and take all appropriate actions to obtain the best bid for the PDVH Shares.

15. Throughout the Topping Period, the Special Master shall consult with the Sale Process Parties (other than a bidding Sale Process Party) regarding the solicitation and evaluation of Topping Bids, the designation of Qualified Bids, and negotiations with bidders.

16. At the conclusion of the Topping Period, the Special Master shall, after consultation with the Sale Process Parties, (a) make a Final Recommendation (i.e., identification of the best bid after application of the (to be determined) Evaluation Criteria and a recommendation as to whether or not the Court should approve that best bid) to the Court, or, alternatively, (b) shall request that the Court schedule a multi-day live auction.

17. Regardless of the Special Master's determination pursuant to paragraph 16 above, in all events the Special Master shall submit his Final Recommendation no later than **May 16**.

18. Objections to the Special Master's Final Recommendation shall be filed no later than **May 23**.

19. The Discovery Period shall conclude no later than **May 30**.

20. All briefing of objections to the Special Master's Final Recommendation shall be completed no later than **June 20**.

21. A Sale Hearing will be held in Wilmington, Delaware on some or all of **July 22, 23, and 24, 2025**.

22. With respect to submission of bids, the following provisions shall apply:

   a. Crystallex and ConocoPhillips, as Sale Process Parties, shall be permitted to submit a Defensive Credit Bid (as that term is defined in D.I. 1510 at 6 n.4) in any round of the Sale Process, regardless of whether they submitted a bid in the first round or viewed confidential bid materials as a consultation party. Crystallex and ConocoPhillips, like any party or entity, may also submit any type of bid in the first round.

   b. The Venezuela Parties, consistent with the SPO and Delaware law, shall always be permitted to satisfy any judgments in full prior to consummation of a sale,

5

and they are likewise permitted to offer an alternative to the sale of the PDVH Shares at any time regardless of whether they have received confidential bid information.

c. Any party that has NOT received confidential bid information shall be permitted to participate in the Topping Period regardless of whether it submitted a proposed Stalking Horse Bid.

d. Upon a Sale Process Party's receipt of a copy of any Stalking Horse Bid, such Sale Process Party shall thereafter be precluded from submitting a Stalking Horse Bid but shall NOT be precluded from submitting a Qualified Bid or other superior proposal during the Topping Period.

e. By separate order, the Court is ordering additional briefing on related issues and may impose additional limitations on whether bids may be submitted after the first round by parties that have (a) reviewed non-public information relating to bids and/or (b) consulted with the Special Master with respect to non-public information relating to bids.

23. All bids submitted in the Stalking Horse stage of the Sale Process shall be made public once a Stalking Horse bid is selected and all bids at each stage of the process shall be made available to non-bidding Sale Process Parties and non-bidding Additional Judgment Creditors (provided they have made themselves subject to a non-disclosure agreement), on a confidential basis, in a timely manner. The Special Master may redact any bidder-identifying information from the publicly-filed materials (but not from the materials to be shared with the non-bidding Sale Process Parties and non-bidding Additional Judgment Creditors).

24. The Special Master is NOT required to obtain "stapled financing" but shall inform prospective bidders, who ask him in writing to do so, of possible sources of financing known by

him to have expressed a written interest in providing such financing for a purchase of the PDVH Shares.

25. The Special Master shall meet and confer on a regular basis with all Sale Process Parties, including the Venezuela Parties. Additionally, the Special Master shall seek input from the Attached Judgment Creditors and other interested entities, including the 2020 Bondholders, "on all significant matters" (Report at 11).

26. The Special Master is further encouraged, but not required, to meet and confer *jointly* with all Sale Process Parties and to aim "to work transparently and collaboratively with them in a sincere attempt to develop consensus positions." (D.I. 1511 at 7) The Court anticipates that the more transparent and collaborative the Sale Process becomes as it proceeds the more likely the Court will be able to adhere to its goal (shared by most if not all participants in the Sale Process) of completing the Sale Process according to the schedule set out below. Any extensions that are required due to a failure by the Special Master to meaningfully meet and confer consistent with the obligations set out by the Court may provide a meritorious basis for objections to future billing submissions made by the Special Master on behalf of himself or his advisors.

27. The Court agrees with the Special Master (and, it appears, all Sale Process Parties and Additional Judgment Creditors) that Delaware law permits the use of non-cash consideration in the context of a sale such as the one the Court is overseeing. (*See also* D.I. 1511 at 4-5) The conditions on "use of non-cash consideration" set out in the Report (D.I. 1510) at pages 7-8 are **ADOPTED**.

28. The SPA and Evaluation Criteria shall NOT include any requirement or condition with respect to the 2020 Bond Entities other than that bidders acknowledge that the 2020 Bond

Entities purport to have a pledge of 50.1% of the equity of CITGO Holding, Inc., which is disputed by the Venezuela Parties and is subject to active litigation. (*See* D.I. 1510 at 8; D.I. 1511 at 5)

29. Any party may obtain limited discovery that is relevant to whether the Court should approve the bid the Special Master recommends to the Court as his Final Recommendation and is proportional to the needs of the case. The Special Master and any parties seeking discovery or from whom discovery is sought should meet and confer as soon as reasonably practicable and attempt to agree on a schedule for written discovery and document production. The Special Master and all parties from whom discovery is sought should produce responsive documents sufficiently in advance of scheduled depositions to allow for time to use such documents at the deposition. Responsive documents should be produced on a rolling basis as soon as they are available. Any declarant or hearing witness shall be subject to a single deposition before the close of the Discovery Period.

Wilmington, Delaware  
December 31, 2024

_____  
HONORABLE LEONARD P. STARK  
UNITED STATES DISTRICT COURT