IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>               Plaintiff,<br><br>    v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>               Defendant. | C.A. No. 17-mc-151-LPS |

**CRYSTALLEX INTERNATIONAL CORPORATION'S
<u>OPENING BRIEF ON OPEN MATTERS REGARDING THE SALE PROCESS</u>**

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166
Tel:  (212) 351-4000
Fax:  (212) 351-4035

Miguel A. Estrada
Lucas C. Townsend
Adam M. Smith
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
Tel:  (202) 955-8500
Fax:  (202) 467-0539

Dated:  January 8, 2025

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Tel:  (302) 651-7700
Fax:  (302) 651-7701

*Attorneys for Plaintiff*

# INTRODUCTION

Crystallex submits this opening brief on the open matters regarding the Sale Process (the "Open Matters") identified in the Court's Oral Order, D.I. 1518.

Pursuant to the Court's Order, Crystallex has met and conferred with the Special Master and ConocoPhillips ("Conoco") in an effort to reduce the number of pages of briefing submitted to the Court concerning the Open Matters. Subject to and without waiving its right to respond to any changes in the Special Master's or Conoco's positions expressed in their opening briefs, Crystallex understands that the Special Master, Conoco, and Crystallex are largely in agreement concerning the Open Matters.

**I.** **"[T]he Special Master's proposal (D.I. [1510] at 7) that 'any Sale Process Party that views confidential bid information as part of the evaluation of Stalking Horse bids should be prohibited from participating as a bidder in subsequent rounds,' which the Venezuela Parties oppose for reasons including that 'Delaware law . . . gives the judgment debtor the right to bid at an execution sale' (D.I. [1512] at 2), seemingly (in their view) without limitation."**

Crystallex agrees with the Special Master that any concerns regarding this issue are moot in light of the Court's Order that "[a]ll bids submitted in the Stalking Horse stage of the Sale Process shall be made public once a Stalking Horse bid is selected," D.I. 1517, ¶ 23, and that the receipt of confidential Stalking Horse bid information by a Sale Process Party shall not preclude that Sale Process Party from "submitting a Qualified Bid or other superior proposal during the Topping Period," *id.* ¶ 22(d). Crystallex further agrees with the Special Master's understanding that the Court's Order applies with equal force to Crystallex and Conoco, such that they should not be restricted to making a Defensive Credit Bid and are instead permitted to make any type of bid in any bidding round in which they have not previously been provided confidential bid information specific to that bidding round.

II. **"[T]he Venezuela Parties' proposal that 'each of the Venezuela Parties is and shall be treated as a separate Sale Process Party for purposes of' the Sale Process, including specifically that 'the decision of one Venezuela Party as to whether to view or not view bids or to bid on the PDVH Shares shall not be imputed to any other Venezuela Party' (D.I. [1511]-2 at 5-6)."**

Crystallex likewise agrees with the Special Master that it is appropriate to treat the Venezuela Parties as separate Sale Process Parties for purposes of the Sale Process such that "the decision of one Venezuela Party as to whether to view or not view bids or to bid on the PDVH Shares shall not be imputed to any other Venezuela Party." D.I. 1511-2, at 5-6.

Crystallex's position on this Open Matter is limited to the treatment of the Venezuela Parties in their capacity as bidders, potential bidders, or (in the case of PDVH and, indirectly, CITGO Petroleum) the subject of the sale. Treating the Venezuela Parties as separate for these purposes does not in any way impact this Court's and the Third Circuit's determinations that PDVSA is an alter ego of Venezuela and that they shall be treated as the same entity for purposes of satisfying Crystallex's judgment in this sale process and in any related appeals.

III. **"[T]he Venezuela Parties' contention that Delaware law does not permit the Court to approve a sale of the PDVH Shares for less than half of 'fair market value' or for a price that 'will shock the conscience of the Court' (D.I. [1511] at 6)."**

Crystallex agrees with the Special Master that in this competitive and open-market sale process, the sale price of the successful bid will be the best evidence of the market value of the PDVH Shares. Crystallex further agrees with the Special Master that these proceedings have been well-publicized to potential purchasers, both by the Special Master through direct marketing of the PDVH Shares and by extensive press coverage of these proceedings. *See* D.I. 481, at 8 (Sale Procedures Order finding that "[t]he Marketing Process and Notice Procedures are appropriate and reasonably calculated to provide all interested parties with timely and proper notice" of the sale

2

process). Accordingly, the Venezuela Parties would have no basis to complain that the price offered by the successful bidder is too low under Delaware law because "there was lack of knowledge of the sale." *Girard Tr. Bank v. Castle Apartments, Inc.*, 379 A.2d 1144, 1146 (Del. Super. Ct. 1977).

Crystallex also agrees with the Special Master that Delaware's 50-percent of fair market value standard has no application here. Delaware law is clear that the "shocks the conscience" standard, which developed in the context of sheriff sales of real property, "*does not preclude acceptance of a lesser figure* if warranted under the particular conditions." *Id.* (emphasis added). As one of the cases the Venezuela Parties cite states, "[t]he cases which have applied the 50% standard in general have involved moderately priced [real] properties," emphasizing that "the magnitude of price and limitations upon the available usage of property are significant in that they materially affect the availability of buyers." *Id.* Thus, a 50-percent "standard which may apply to property of moderate price or property whose available usage attracts *widespread buying interest*, as in the case of residential property, may be unrealistic in the case of property whose price is great or usefulness is limited." *Id.* (emphasis added).

This is not a proceeding to sell a moderately priced piece of residential property that will attract "widespread buying interest" from the general public. *Girard Tr. Bank*, 379 A.2d at 1146. It is a proceeding to sell the PDVH Shares, which represent ownership of "one of the largest oil companies on the planet" and may well be worth billions of dollars. *Petróleos de Venezuela, S.A. v. PDV Holding, Inc.*, 306 A.3d 572, 590 (Del. Ch. 2023). The nature and value of the PDVH Shares necessarily and significantly limits the pool of potential purchasers willing and able to buy the PDVH Shares.

Further, there are potential limitations on a purchaser's ability to close on the sale of the PDVH Shares that could further reduce both the number of potential bidders as well as the price bidders are willing to pay.  For example, to close on the sale of the PDVH Shares, any successful bidder will have to first obtain a license from OFAC, a process that could be both laborious and time consuming.  D.I. 443, at 34; *see* D.I. 553-1, at 3 (noting that "the United States Government will require due diligence about the identity of a potential purchaser and will consider relevant details of the proposed transaction").  The significant value of the PDVH Shares and the timing risks associated with acquiring them in this judicial sale indicate that the pool of potential purchasers is far more limited than in an ordinary auction of a piece of real property, rendering the 50-percent standard inapplicable here.

Should the Venezuela Parties attempt to object to the recommended sale transaction on the ground that "a higher bid was likely," *Girard Tr. Bank*, 379 A.2d at 1146, it is worth noting that there is nothing preventing them from identifying such a bidder now and encouraging it to participate in this Court's sale process.  Moreover, to the extent the Venezuela Parties may view the successful bid as too low, the Venezuela Parties could simply pay what they "owe[] and avoid the sales process altogether." D.I. 234, at 37.  There is no basis to reject a transaction simply because the Venezuela Parties believe the PDVH Shares should have received a price that no interested party was willing to pay.  Under the particular circumstances of this case, the price offered by the successful bidder will be the best indication of the PDVH Shares' true market value in the context of a forced sale.  *See BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 538 (1994) (explaining that "'fair market value' presumes market conditions that, by definition, simply do not obtain in the context of a forced sale").

4

**IV.  "[T]he Venezuela Parties' suggestion the Special Master include in the Data Room the answers to all questions previously submitted by bidders, which they claim the Special Master opposes (D.I. [1511] at 7)."**

Crystallex is not privy to the materials that are the subject of this dispute between the Special Master and the Venezuela Parties and is thus unable to fully address this Open Issue at this time.  Crystallex's general view is that, consistent with the Delaware Supreme Court's decision in *Deibler v. Atlantic Properties Group, Inc.*, 652 A.2d 553, 557-58 (Del. 1995), the Venezuela Parties should be permitted to make any information that they believe relevant to the sale of the PDVH Shares available to prospective bidders.  Accordingly, Crystallex agrees with the Special Master's proposal that, if bidders submit questions that have been previously posed in prior rounds, there is no reason CITGO cannot repost in the data room (and refresh as necessary) its previously researched answers and data in response to such questions.  Similarly, if the Venezuela Parties wish to proactively prepare memoranda or similar documents addressing issues of potential relevance to bidders, as informed by the initial sale process, they should be permitted to do so, provided such work does not further delay the sale of the PDVH Shares.

| | |
|---|---|
| OF COUNSEL:<br><br>Robert L. Weigel<br>Jason W. Myatt<br>Rahim Moloo<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York  10166<br>(212) 351-4000<br><br>Miguel A. Estrada<br>Lucas C. Townsend<br>Adam M. Smith<br>GIBSON, DUNN & CRUTCHER LLP<br>1700 M Street, N.W.<br>Washington, D.C.  20036<br>Tel:  (202) 955-8500<br>Fax:  (202) 467-0539<br><br><br>Dated:  January 8, 2025 | */s/ Travis S. Hunter*<br>Raymond J. DiCamillo (#3188)<br>Jeffrey L. Moyer (#3309)<br>Travis S. Hunter (#5350)<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware  19801<br>(302) 651-7700<br>dicamillo@rlf.com<br>moyer@rlf.com<br>hunter@rlf.com<br><br>*Attorneys for Plaintiff* |