# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendants. | Misc. No. 17-151-LPS |

**SUBMISSION OF 2020 BONDHOLDERS IN RESPONSE TO BRIEFING OVER THE SPECIAL MASTER'S JANUARY 14, 2025 JOINT STATUS REPORT**

An ad hoc group of holders of a majority of PDVSA 2020 Bonds (the "Bondholders") respectfully make this submission in response to briefing (*see* D.I. 1535–45) concerning the Special Master's January 14, 2025 Joint Status Report (D.I. 1528), and in particular, the material terms of a Stock Purchase Agreement ("SPA") (*see* D.I. 1528-2).

Some parties have recently suggested that CITGO's assets—assets that effectively form part of the Bondholders' collateral given their security interest over 50.1% of CITGO Holding's shares—be used to pay judgment creditors of PDVSA as CITGO's indirect parent company. This is impermissible. Such payments would violate the Bondholders' contractual rights, wrongly erode their collateral, and result in protracted litigation challenging the sale process—which is certain to significantly delay any sale and very likely to succeed.

Specifically, in their comments on the Special Master's proposed material SPA terms, the Koch Parties proposed that bidders should be able to "utilize existing assets at or below CITGO level to satisfy some portion of Attached Judgments as part of the bid." (D.I. 1538-2 at 4.) The Special Master responded that he "does not believe that it is within his discretion to direct the utilization of cash/assets of CITGO or any of its subsidiaries prior to the closing of a sale transaction" but that a bidder would be free to utilize such cash or assets post-closing. (*See* D.I. 1545-2 at 3.) Crystallex did not object to the Koch Parties' proposal provided that any affected judgment creditor consents, but importantly realized that "the use of downstream assets must comply with any limitations and prohibitions in place at the time of such payment, including, for example, any debt covenants or similar restrictions." (D.I. 1542 at 7.)

The Koch Parties' proposal—and any proposal that contemplates using CITGO's assets in connection with any bid or the sale process—should be rejected. It would violate the Bondholders' rights under the Indenture and Pledge Agreement[1] for the 2020 Bonds.

As the Bondholders have previously explained (*see* D.I. 1375, 1441, 1469[2]), the Collateral securing their 2020 Bonds is comprised of a pledge from PDV Holding, Inc. ("PDVH") of 50.1% of the equity of CITGO Holding. The Pledge Agreement expressly prohibits any distributions on that Collateral from being made to PDVH, or any other entity, without the Bondholders' consent following an Event of Default, as defined in the Pledge Agreement. Specifically, the Pledge Agreement prohibits distributing "profits and other distributions" on the Collateral to PDVH following an Event of Default. (Pledge Agreement § 2.05(c).) Instead, the Pledge Agreement requires that, if an Event of Default has occurred and is continuing, "all profits and other distributions on the Securities [i.e., the Collateral shares of CITGO Holding] shall be paid directly to the Collateral Agent and retained by it as part of the Collateral." *Id*. It further requires that "[a]ll payments, proceeds, dividends, distributions, monies, compensation, property, assets, instruments or rights that are received by [PDVH] contrary to the provisions of this Section 2.05" be "held in trust for the benefit of the Collateral Agent for the benefit of the Secured Parties, . . . [and] forthwith paid over to the Collateral Agent." *Id.* § 2.05(f). These bargained-for commitments by PDVH are critical to protecting the Bondholders against the risk that the value of the Collateral is improperly diverted while it is securing PDVSA's obligations on the 2020 Bonds.

---

[1]   The Pledge Agreement is available at D.I. 1441-2.

[2]   In the interests of efficiency, the Bondholders have not repeated the contents of these prior submissions, but respectfully refer the Court to those submissions, which are hereby incorporated herein, for more detailed background information on the 2020 Bonds and the Bondholders' rights. Moreover, unless otherwise indicated, capitalized terms herein are used as defined in D.I. 1441.

That, however, is precisely what the Koch Parties are proposing by permitting buyers to "utilize existing assets at or below CITGO level to satisfy some portion of Attached Judgments as part of the bid." (D.I. 1538-2 at 4.) Those assets contribute to the value of the Collateral and cannot be diverted for the benefit of PDVH, a buyer, or any third-party without the consent of the Bondholders. Instead, the Indenture and Pledge Agreement mandate that the value of the Collateral be preserved. To the extent any bid contemplates the use of assets of CITGO Holding or its subsidiaries without ensuring that any distributions on the Collateral are made to the Collateral Agent as required by the Pledge Agreement, such bid will be vigorously challenged by the Bondholders.[3] This would inevitably result in protracted collateral litigation in the Southern District of New York (where litigation over the 2020 Bonds is already proceeding) that would delay, and almost certainly doom, any such bid—precisely the type of delay and uncertainty that should be avoided in the sale process. Indeed, any potential bid that contemplates the use of CITGO assets supporting the Collateral would wrongfully infringe on the jurisdiction of the Southern District of New York, which is overseeing litigation where the Bondholders' entitlement to the Collateral is squarely at issue. The Court should therefore categorically reject the Koch Parties' proposal.

Further, while the Court is not being asked to decide this point in connection with determining the material terms of an SPA, the Bondholders note that the Special Master is wrong in stating that "if a bidder desires to utilize [CITGO's] cash/assets after closing . . . the bidder is free to do so." (D.I. 1545-2 at 3.) The Bondholders' rights will continue following the closing of any bid, and as noted, those rights categorically prevent the upstreaming or other use of

---

[3] Allowing the dilution of the Collateral for the benefit of judgment creditors or other parties would also be inequitable. The Bondholders' interest in CITGO Holding is structurally senior to the claims of the judgment creditors in these proceedings, so this Court should not allow any transaction that impairs the Bondholders' structural seniority for the benefit of third-party bidders or junior creditors.

CITGO's assets in violation of the Pledge Agreement.  Moreover, the Pledge Agreement also authorizes the Collateral Agent, at the written direction of the Trustee, to direct PDVH "to vote the Securities representing the Pledged Shares [i.e., the Collateral]" (and obligates PDVH to vote the Securities as directed), and otherwise authorizes the Collateral Agent "to act with respect to the Collateral as outright owner thereof."  Pledge Agreement §§ 2.05(c), (d).  Far from having outright control over CITGO or CITGO Holding, any purchaser in this sale process will need to act consistent with these provisions of the Pledge Agreement.

Dated: New York, New York
January 23, 2025

Respectfully submitted,

|  |  |
|---|---|
| *s/ Daniel A. Mason* | OF COUNSEL: |
| Daniel A. Mason (#5206) | Jeffrey J. Recher |
| PAUL, WEISS, RIFKIND, | Paul A. Paterson |
|     WHARTON & GARRISON LLP | PAUL, WEISS, RIFKIND, |
| 1313 North Market St., Suite 806 |     WHARTON & GARRISON LLP |
| Wilmington, DE 19801 | 1285 Avenue of the Americas |
| Telephone: 302-655-4410 | New York, New York 10019-6064 |
| Facsimile: 302-655-4420 | Telephone: 212-373-3000 |
| Email: dmason@paulweiss.com | Facsimile: 212-757-3990 |
|  | Email: jrecher@paulweiss.com |
| *Counsel for 2020 Bondholders* | Email: ppaterson@paulweiss.com |