# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendants. | Misc. No. 17-151-LPS |

**OBJECTION OF 2020 BONDHOLDERS TO THE**
**DRAFT LONG-FORM STOCK PURCHASE AGREEMENT**

An ad hoc group of holders of a majority of PDVSA 2020 Bonds (the "Bondholders") respectfully submit this objection to the draft long-form Stock Purchase Agreement ("SPA") filed by the Special Master on February 10, 2025 (D.I. 1557-1). The draft SPA appears to contemplate potential bids that raise money secured by CITGO assets—assets that effectively form part of the Bondholders' collateral, through PDVH's pledge of 50.1% of the shares in CITGO Holding—in order to pay creditors of PDVSA. Although it is unclear whether any successful bid will ultimately propose this type of financing (and if so, in what manner), the Bondholders file this objection in order to reserve their rights and to make clear that they will challenge in the appropriate forum any such financing entered into without their consent. They respectfully suggest that the Court makes clear now that any bid incorporating such financing without the Bondholders' consent should at a minimum be strongly disfavored by the Special Master and the Court, given that it will inevitably delay the sale process and very likely be precluded.

Specifically, the draft SPA suggests that in order to fund bids for the PDVH Shares, potential bidders may raise financing ("Debt Financing") that is to be secured by CITGO assets after closing of a successful bid. Section 6.10 of the draft SPA, for instance, requires the Special Master to cause the "Acquired Companies" (defined to include CITGO entities) to, among other things, "facilitat[e] the pledging of collateral; provided that no pledge shall be effective until the Closing" and "assist[] in the preparation of definitive financing documents, including guarantee and collateral documents and customary closing certificates and other customary documents as reasonably necessary, in each case, not to be effective until the Closing." SPA §§ 5.7(a), 6.10(a); *id.* Annex A at A-1, A-4; *see also id.* § 5.7 (contemplating Debt Financing that could include debt of PDVH subsidiaries); *id.* § 6.9 (same).

As the Bondholders have previously explained, any bid financing that is secured by CITGO assets without their consent would violate their rights as set forth in the Indenture and Pledge Agreement.[1]  It would deplete the value of their Collateral—a pledge by PDVH of 50.1% of the equity of CITGO Holding—in order to pay creditors of CITGO's indirect parent, PDVSA. *See* D.I. 1375, 1441, 1469, 1553.[2]  The Pledge Agreement forbids this type of transaction.

Specifically, the Pledge Agreement prohibits distributing "profits and other distributions" on the Collateral following an Event of Default.  Pledge Agreement § 2.05(c). Instead, the Pledge Agreement requires that, during an Event of Default, "all profits and other distributions on the Securities [i.e., the Collateral shares of CITGO Holding] shall be paid directly to the Collateral Agent and retained by it as part of the Collateral." *Id*.  The Pledge Agreement further requires that "[a]ll payments, proceeds, dividends, distributions, monies, compensation, property, assets, instruments or rights that are received by [PDVH] contrary to the provisions of this Section 2.05" be "held in trust for the benefit of the Collateral Agent for the benefit of the Secured Parties, . . . [and] forthwith paid over to the Collateral Agent." *Id.* § 2.05(f).  Elsewhere, the Pledge Agreement also provides that the Collateral Agent has, for the benefit of the Bondholders, a first-priority security interest in all "dividends, cash, instruments, moneys, or other Properties representing a profit on, or a distribution or return of capital of, any of the Pledged Shares." *Id.* § 2.01(ii).

Accordingly, to the extent that any successful bid raises funds using CITGO's assets, those funds could not be distributed to PDVH (and then PDVSA and its creditors).  They

---

[1]  The Pledge Agreement is available at D.I. 1441-2.

[2]  In the interests of efficiency, the Bondholders have not repeated in full the contents of these prior submissions, but respectfully refer the Court to those submissions for more detailed background information on the 2020 Bonds and the Bondholders' rights.  Unless otherwise indicated, capitalized terms herein are used as defined in D.I. 1441.

would instead need to be paid to the Collateral Agent for the benefit of the secured parties under the Pledge Agreement, and deposited into a collateral account maintained by the Trustee for such purpose, as provided for in Section 5.04 of the Pledge Agreement.  The Collateral Agent would also have a security interest over those funds.  There is, of course, an obvious and equitable reason for this:  any other result would allow CITGO's assets to be severely depleted by being levered up with debt in order to make distributions to CITGO's parent entities and their creditors.  This would unfairly jeopardize the Bondholders' bargained-for collateral position and their ability to recover their structurally-senior debts.

The Special Master's counsel has previously represented to the Court that the Special Master "agree[s]" that "the material SPA terms . . . should not [impair] the 2020s' rights."  Tr. of Dec. 13, 2024 Status Conf. at 126.  The Bondholders agree and merely seek to hold the Special Master to that representation and to ensure that their rights are respected.

The Bondholders recognize that this concern may be moot:  the structure of any successful bid is not yet known, and such a bid may not raise financing against CITGO's assets at all, or it may do so in a manner acceptable to the Bondholders.  However, the Bondholders make this objection in order to clarify that they intend to vigorously object to any bid that contemplates improperly raising financing against CITGO assets in derogation of their rights.

As this Court is aware, the scope of the Bondholders' rights under the Indenture and Pledge Agreement is directly at issue in ongoing litigation in the Southern District of New York, which has been pending for more than five years and in which summary judgment briefing will shortly be completed.  The Indenture and Pledge Agreement are also subject to New York law.  *See, e.g.*, Pledge Agreement § 3.01(d).  Any litigation over whether the use of CITGO assets to finance a bid violates the Indenture and Pledge Agreement would also be subject to the

3

jurisdiction of the United States District Court for the Southern District of New York; indeed, litigation elsewhere would improperly interfere with that Court's active and ongoing consideration of the Bondholders' rights under these very documents.[3]

Litigation over these issues would inevitably result in material delays to the sale process, and in all likelihood, would prevent the closing of any bid financed using CITGO assets without the Bondholders' consent. Accordingly, although the Bondholders' rights would ultimately need to be adjudicated in the Southern District of New York, in order to avoid delays and uncertainties for the sale process, this Court should consider making clear now that any bid that raises financing secured by CITGO assets without the Bondholders' consent should at a minimum be strongly disfavored by both the Special Master and the Court.

---

[3] When the Special Master previously proposed an arrangement in which the Bondholders' collateral would be substituted for an escrow account as part of a sale, he recognized the need to litigate their rights in the ongoing Southern District of New York litigation, stating that the relevant parties would need to intervene in that case to "take such actions as deemed necessary by the Special Master and the Buyer [with respect to the Bondholders], including to assert an interpleader claim seeking to deposit the 2020s Escrow Amount into the registry of the court, and seek the release of the CITGO Holding Pledge." D.I. 1325-1, Term Sheet at 3; see also D.I. 1454 at 7 (Crystallex agreeing that "resolving the 2020 Bondholders' claims is outside the scope of these proceedings").

Dated: Wilmington, Delaware
February 12, 2025

Respectfully submitted,

| | |
|---|---|
| /s/ Daniel A. Mason | OF COUNSEL: |
| Daniel A. Mason (#5206) | Jeffrey J. Recher |
| PAUL, WEISS, RIFKIND, | Paul A. Paterson |
|    WHARTON & GARRISON LLP | PAUL, WEISS, RIFKIND, |
| 1313 North Market St., Suite 806 |    WHARTON & GARRISON LLP |
| Wilmington, DE 19801 | 1285 Avenue of the Americas |
| Telephone: 302-655-4410 | New York, New York 10019-6064 |
| Facsimile: 302-655-4420 | Telephone: 212-373-3000 |
| Email: dmason@paulweiss.com | Facsimile: 212-757-3990 |
| | Email: jrecher@paulweiss.com |
| *Counsel for the Bondholders* | Email: ppaterson@paulweiss.com |