**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | No. 1:17-mc-00151-LPS |
| v. | ) | |
| | ) | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | ) | |
| | ) | |
| *Defendant.* | ) | |

**THE VENEZUELA PARTIES' JOINT OBJECTIONS TO THE SPECIAL MASTER'S
LONG-FORM STOCK PURCHASE AGREEMENT**

The Bolivarian Republic of Venezuela (the "Republic"), Petróleos de Venezuela, S.A. ("PDVSA"), PDV Holding, Inc. ("PDVH"), and CITGO Petroleum Corporation ("CITGO" and, together with the Republic, PDVSA, and PDVH, the "Venezuela Parties"), respectfully submit the following two objections to the long-form Stock Purchase Agreement ("SPA") that the Special Master deposited into the Virtual Data Room.[1]

**ARGUMENT**

I.    **Section 5.11 of the SPA Is Inconsistent with the Court's Statements Regarding Non-Cash Consideration**.

*First*, the Special Master added a term to the SPA that the Venezuela Parties believe is materially inconsistent with this Court's January 27, 2025 Order (the "January 27 Order") and that no party proposed in the recent briefing regarding material SPA terms, bidder protections, and bid evaluation criteria. Specifically, Section 5.11 of the SPA provides:

---

[1] As with the Venezuela Parties' other filings, nothing in this filing should be construed to imply the Venezuela Parties' consent to a forced sale under any circumstances. The Venezuela Parties preserve all rights and positions, including on appeal.

> The Buyer will not provide any consideration to any holder of an Attached Judgment (as defined in the Sale Procedures Order) at the Closing unless each other holder of an Attached Judgment senior to such holder (as set forth in the Priority Order (as defined below)) has either (i) received cash in full in satisfaction of its Attached Judgment or (ii) consented to receive non-cash consideration in satisfaction of its Attached Judgment.

D.I. 1557-1 at 44. In discussions between the Special Master and the Sale Process Parties, the Special Master's advisors explained that this provision was added to appease a senior Attached Judgment Creditor unhappy with language in the Court's January 27 Order regarding non-cash consideration, and further explained that this provision would (and was intended to) bar the Special Master from selecting or recommending any bid containing non-cash consideration without the consent of each creditor in the priority waterfall slated to receive such consideration.

In the January 27 Order, however, the Court stated that, while no creditor could be forced to accept non-cash consideration in exchange for part or all of its judgment, the Court "disagree[d] with and **REJECT[ED]** the Huntington Ingalls proposal that creditors that would receive non-cash consideration must *consent* to receipt of such non-cash consideration before the Special Master may make a Final Recommendation." D.I. 1554 at 25 (emphasis in original). The Court then stated that "[t]he Special Master has discretion to make a Final Recommendation of a Successful Bid that includes a component of non-cash consideration to which the proposed recipient of the non-cash consideration has not (or has not yet) consented," and that it "does not view non-consent by a creditor as necessarily compelling the Court to reject a Final Recommendation of a Successful Bid that includes non-cash consideration to a non-consenting creditor." *Id.* "Instead," the Court explained, it "understands that any creditor participating in the Sale Process will (if it does not receive cash in the full amount of its judgment), at the conclusion of this process, either (a) with its consent, receive non-cash consideration, in whole or in part; or

(b) retain its judgment and the opportunity to seek to enforce it against property other than the attached PDVH Shares." *Id.* at 25–26.

Accordingly, the Special Master has the discretion to recommend—and the Court has the discretion to accept—the highest or best bid even if that bid contains a mix of cash and non-cash consideration regardless of whether every creditor slated to receive non-cash consideration has (or has yet) consented. If a creditor chooses not to accept non-cash consideration, then it can take its judgment elsewhere, leaving more non-cash consideration remaining in the waterfall for lower-priority creditors.

Section 5.11 has—and, according to the Special Master's advisors was intended to have—the effect of preventing such an outcome, effectively rewriting the January 27 Order. For example:

- If Bid A, far and away the highest and best bid, contains enough cash to satisfy Creditors 1–5 and enough non-cash consideration to satisfy Creditors 6–8, then Creditors 7 and 8 would receive non-cash consideration only if Creditor 6 consents. If not, then Creditor 6's refusal would bar Creditors 7 and 8 from getting anything, since a more senior-priority creditor has neither "(i) received cash in full in satisfaction of its Attached Judgment [n]or (ii) consented to receive non-cash consideration in satisfaction of its Attached Judgment." D.I. 1557-1 at 44, § 5.11.

- If Bid A and Bid B both contain enough cash to satisfy Creditors 1–5, but Bid A also contains enough non-cash consideration to satisfy Creditors 6–8, but Creditor 6 does not consent, then the Special Master would treat the two bids as equal, even though Bid A's non-cash consideration might be acceptable to Creditors 7 and 8.

- If Bid A contains enough cash to satisfy Creditors 1–5 and enough non-cash consideration to satisfy Creditors 6–10, but Bid B, a cash-only bid, contains enough cash to satisfy

Creditors 1–6, then the Special Master could not as a practical matter recommend Bid A unless Creditor 6 consents in advance to receive non-cash consideration instead of cash, *even if* Creditors 7–10 all would consent. The alternative would be to recommend a bid that might have to be abandoned after recommendation if Creditor 6 were to continue to hold out.

The Special Master's advisors informed the Venezuela Parties that they believed the language in the January 27 Order was unclear when read together with this Court's prior order setting the priority for the distribution of proceeds. *See* D.I. 1102. But there is no inconsistency between the January 27 Order and the Priority Order. The Priority Order merely sets the order in which whatever proceeds that are available are distributed to creditors, "in the event the sale proceeds are not sufficient to pay 100% of all judgments that are made part of the sale." D.I. 646 at 19. Neither it, the SPO, nor Delaware law gives any creditor a veto right over the bid that the Special Master recommends or the Court accepts. *See* D.I. 1554 at 25 ("As the Koch Parties put it, 'if creditors' consent were required at the front end of the submission process, prior to the Special Master's evaluation of bids, those creditors would have a premature veto that could potentially function as a means to achieve the very exclusivity which the Special Master and the Court have thus far denied.'" (citing D.I. 1547 at 4)). Instead, the creditor simply may "*comment* on the bid." *Id.* And while a creditor cannot be "compel[led] … to accept non-cash consideration," once it chooses not to accept non-cash consideration in satisfaction of its judgment, it is out of the waterfall, and its recourse is "to seek to enforce it against property other than the attached PDVH Shares," not to bar distributions to lower-priority, consenting creditors. *See* D.I. 1554 at 25–26.

## II.    Section 6.16(g) of the SPA Is Inconsistent with the Court's Statements and Prior Filings Regarding the Overbid Minimum.

*Second*, in its January 27 Order, the Court stated that Gold Reserve and Rusoro's proposal for a higher threshold ($50 million) for the overbid minimum was "adopted in part." *See* D.I. 1554 at 14 (emphasis omitted) (explaining that the proposal was adopted "subject to the Special Master retaining discretion to lower or raise the overbid minimum throughout the process"); *see also* D.I. 1539-1 at 3; D.I. 1550 at 2–3.  In their relevant filings, Gold Reserve and Rusoro specified that this $50 million threshold would apply to bids "in the Non-Solicitation Period" (i.e., bids *following* the Topping Period). D.I. 1539-1 at 3. Section 6.16(g) of the SPA, however, states that there is an initial overbid minimum of $25 million with respect to any "Competing Proposal" and that the $50 million overbid minimum applies to "any increase in such Competing Proposal." D.I. 1557-1 at 70–71, § 6.16(g)(i). This provision suggests that, in some circumstances, a Competing Proposal that is received *during* the Topping Period might be subject to a $50 million overbid minimum.  To avoid ambiguity, this provision should be revised to make clear that, consistent with the January 27 Order, the $50 million overbid minimum applies only to Competing Proposals that are received during the No-Shop Period (i.e., after the Topping Period).

### CONCLUSION

For the foregoing reasons, the Venezuela Parties respectfully request that the Court strike Section 5.11 from the SPA and revise section 6.16(g) to clarify that the $50 million overbid minimum applies only to Competing Proposals that are receiving during the No-Shop Period.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Nathan P. Eimer
Lisa S. Meyer
Daniel D. Birk
Gregory M. Schweizer
Hannah Bucher
EIMER STAHL LLP
224 South Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com
DBirk@eimerstahl.com
GSchweizer@eimerstahl.com
HBucher@eimerstahl.com

*/s/ Alexandra M. Cumings*
Susan W. Waesco (#4476)
Alexandra M. Cumings (#6146)
Kirk Andersen (#7156)
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
SWaesco@morrisnichols.com
ACumings@morrisnichols.com
KAndersen@morrisnichols.com

*Attorneys for PDV Holding, Inc. and CITGO Petroleum Corporation*


HEYMAN ENERIO GATTUSO & HIRZEL LLP

OF COUNSEL:

Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
David V. Holmes
CURTIS, MALLET-PREVOST, COLT
& MOSLE LLP
101 Park Avenue New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
kmeehan@curtis.com
jperla@curtis.com
dholmes@curtis.com

*/s/ Brendan Patrick McDonnell*
Samuel Taylor Hirzel, II (#4415)
Brendan Patrick McDonnell (#7086)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law
bmcdonnell@hehg.law

*Attorneys for Petróleos de Venezuela, S.A.*


OF COUNSEL:

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW

ABRAMS & BAYLISS LLP

*/s/  Christopher Fitzpatrick Cannataro*
A. Thompson Bayliss (#4379)
Christopher Fitzpatrick Cannataro (#6621)
20 Montchanin Road, Suite 200

Suite 500 E
Washington, D.C. 20001
(202) 220-1100
Donald.Verrilli@mto.com
Elaine.Goldenberg@mto.com
Ginger.Anders@mto.com

George M. Garvey
Adeel Mohammadi
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com
Adeel.Mohammadi@mto.com

February 12, 2025

Wilmington, DE 19807
(302) 778-1000
bayliss@abramsbayliss.com
cannataro@abramsbayliss.com

*Attorneys for Bolivarian Republic of Venezuela*