# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>　　　　Defendant. | Case No. 17-mc-151-LPS |

## OBJECTIONS BY GOLD RESERVE AND RUSORO TO DRAFT LONG-FORM STOCK PURCHASE AGREEMENT

Pursuant to the Court's December 31, 2024 Order (D.I. 1517), Additional Judgment Creditors and Plaintiffs Gold Reserve Inc. ("Gold Reserve") and Rusoro Mining Limited ("Rusoro") (collectively, the "Parties"),[1] respectfully submit the following objections to the draft long-form Stock Purchase Agreement (the "SPA") filed by the Special Master on February 10, 2025 (D.I. 1557-1).[2] In submitting these objections, the Parties reserve any proposed line edits to the SPA. Such line edits, per the Court's orders and the Special Master's revised Bidder Instructions, are to be submitted with the Stalking Horse bids due March 7, 2025.

---

[1] The Parties each holds a writ of attachment on the PDVH Shares and each has been declared an Additional Judgment Creditor by this Court and holds an Attached Judgment (in accordance with, and each term as defined in, the *Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* (D.I. 481) (the "Sale Procedures Order")). References to the docket index ("D.I.") are to the *Crystallex* docket, Misc. No. 17-151-LPS.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Procedures Order.

**Good Faith Deposit**.

Section 3.3 of the SPA includes the Special Master's proposed terms for the good faith deposits required in both the Stalking Horse bid and Final Recommended bid phase of the Sale Process. (D.I. 1557-1 at 15-16). As the Court observed in its January 27, 2025 Order, the Special Master did not include proposed terms regarding the deposit provision of the SPA until his reply brief on the SPA's material terms. (D.I. at 1554 at 15: "This proposal does not appear until the Special Master's January 23 reply."). As such, and contrary to the expectation stated in the Court's December 31, 2024 Order (D.I. 1517 at ¶ 6), the parties did not have the opportunity to litigate their position on these proposals until the present submissions.

The Parties' principal objection to the deposit provisions of the SPA is that they prohibit Credit Bidders from credit bidding their deposit, meaning using a portion of their Attached Judgment to fulfill the proposed deposit requirements. There is, the Parties respectfully submit, no proper basis for such a prohibition given the present circumstances and structure of the Sale Process.

First, under the SPO, Attachment Judgments are fully treated as cash for the purpose of bidding for, and paying for, the PDVH Shares. If an Attachment Judgment is treated as cash for this paramount objective of the Sale Process it should also be treated as cash for all purposes of the Sale Process, including the deposit.

Second, under the SPA terms proposed by the Special Master, a Credit Bidder has the option, at the end of the Sale Process, of using its Attached Judgment to substitute for its cash deposit. Section 3.3(b) of the draft SPA provides:

> *(b) if a Deposit Forfeiture Termination Event occurs, the Buyer and the Special Master shall promptly (and in any event within five (5) Business Days of such termination) deliver joint written instructions to the Escrow Agent directing the release the balance of the Escrow Account to the Paying Agent Account;*

2

> *[provided, that, in lieu of the foregoing, the Buyer may elect, in writing, within five (5) Business Days after such termination to forever waive, forfeit and discharge from its Specified Litigation Claim an amount equal to the Net Deposit Amount effective immediately upon such termination and the Buyer shall execute and deliver to the Special Master a Termination Release within two (2) Business Days after the Deposit Amount Release Date (as defined below), and in such case, within forty (40) Business Days after such election, pursuant to a written instruction to the Escrow Agent by the Special Master, the Net Deposit Amount shall be released by the Escrow Agent from the Escrow Account by wire transfer of immediately available funds to the account designated in writing by the Buyer (the date of such release, the "Deposit Amount Release Date");* provided, further, that any funds remaining in the Escrow Account after the Net Deposit Amount is released to the Buyer by the Escrow Agent pursuant to this Section 3.3(b) shall be, pursuant to a written instruction to the Escrow Agent by the Special Master, released by the Escrow Agent to the Paying Agent to disburse such funds pursuant to the terms of the Paying Agent Agreement;*]*[10] *[Note to Bidder: Bracketed language to be included for credit bidders]* and

(D.I. 1557-1 at 16 (emphasis added)). This means that in the event it transpires that a Credit Bidder would lose their $50 million deposit (a "Deposit Forfeiture Termination Event"), the Credit Bidder has the option to substitute $50 million of their Attached Judgment for their deposit, release and forfeit that amount of their Attached Judgment, and thus get back their $50 million cash deposit. Given that a Credit Bider is permitted to use its Attached Judgment to serve as its deposit at the back-end of the Sale Process, there is no substantive reason why a Credit Bidder should not simply be allowed to use its Attached Judgment at the outset, for the deposit requirements of the Stalking Horse phase and Topping Period phase. This, of course, can be conditioned on a Credit Bidder providing the Special Master the above-referenced Termination Release.

Third, Credit Bidders, unlike non-credit bidders, already have sufficient "skin in the game" and thus do not need to put down a temporary cash deposit in order to demonstrate their commitment to the Sale Process. Each party who could be a Credit Bidder is by definition an Additional Judgment Creditor and therefore has obtained an underlying judgment against the Republic of Venezuela and/or PDVSA and has been attempting to enforce and execute on such

judgement for several years. In Gold Reserve's case and Rusoro's case, their judgments exceed $1 billion in present value and their enforcement efforts have been ongoing for more than a decade. In the course of these efforts, Gold Reserve and Rusoro have each incurred substantial time and expense, including but not limited to the substantial amounts that each has advanced to the Special Master and his advisors on a per capita basis since being named an Additional Judgment Creditor more than a year ago, to cover the fees and expenses of the Special Master and his advisors. As such, any Credit Bidder will have already demonstrated its substantial monetary investment in, and commitment to, the Sale Process, and is fully incentivized to act proactively and in good faith both to obtain the final Sale Order for a value-maximizing Sale Transaction and close on that transaction. In these circumstances, the Parties submit that Credit Bidders should not be required to make a further, temporary cash deposit, and instead should be permitted to use their Attached Judgments for this purpose.

<u>Fourth</u>, in the prior round of "Final Bidding," that commenced on June 11, 2024, the Special Master waived the requirement that bidders submit deposits along with their bids. Given this, the Parties submit that a Credit Bidder should be able to use their Attached Judgment to credit bid the deposit requirements for, at minimum, the Stalking Horse phase of the Sale Process. Under the current design of the Sale Process, the Stalking Horse bids are designed to be value-maximizing but also are subject to a robust and competitive Topping Period. As such, the deposit associated with the Stalking Horse bids may be temporary, and there will not be a final, binding deal until the Court approves the final, recommended bid at the Sale Hearing, after hearing all objections thereto. Given this, and given the above, credit bidders should at minimum, be able to use their Attached Judgment to credit bid the deposit requirements for a Stalking Horse bid.

**Court Approval, Not Special Master Recommendation, Should Trigger The Deposit Requirements**. In the draft SPA, the Special Master has proposed that it is entry into the draft SPA, both at the Stalking Horse bid phase and in the Final Recommendation bid phase, which triggers the deposit requirements. The Parties' position is that the trigger for the deposit requirements should instead be Court approval. This is consistent with the position taken in the Parties' prior submissions regarding the primacy of the Court's authority in the Sale Process (*See* D.I. 1539-1 at Rows 1, 3, 4), and it is consistent with the point that has been reiterated on multiple occasions by the Court, i.e., that the SPA is not a binding document until approved by the Court.

Dated:  February 12, 2025

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

By:  <u>/s/ Kevin J. Mangan</u>
Kevin J. Mangan (#3810)
Matthew P. Ward (#4471)
Stephanie S. Riley (#5803)
1313 N. Market St., Suite 1200
Wilmington, DE 19801
Telephone: 302-252-4320
Kevin.mangan@wbd-us.com
Matthew.ward@wbd-us.com
Stephanie.riley@wbd-us.com

NORTON ROSE FULBRIGHT US LLP
Matthew H. Kirtland (*pro hac vice*)
799 9th Street NW, Suite 1000
Washington, DC 20001
Telephone: 202-662-0200
Matthew.kirtland@nortonrosefulbright.com

- and -

Katherine G. Connolly (*pro hac vice*)
1 Embarcadero Center, Suite 1050

San Francisco, CA 94111
Telephone: 628-231-6816
Katie.connolly@nortonrosefulbright.com

*Attorneys for Gold Reserve Inc.*

DLA Piper LLP (US)

By: *R. Craig Martin*
R. Craig Martin (#005032)
1201 North Market Street
Suite 2100
Wilmington, DE 19801
Telephone: 302-468-5655
Fax: 302-778-7834
craig.martin@us.dlapiper.com

- and -

James E. Berger (*pro hac vice*)
Charlene C. Sun (*pro hac vice*)
Joshua S. Wan (*pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212-335-4715
Fax: 212-884-8715
James.berger@us.dlapiper.com
Charlene.sun@us.dlapiper.com
Joshua.wan@us.dlapiper.com

*Attorneys for Rusoro Mining Limited*