IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---

CRYSTALLEX INTERNATIONAL CORP., :
:
    Plaintiff, :
:
v. :   Misc. No. 17-151-LPS
:
BOLIVARIAN REPUBLIC OF VENEZUELA, :
:
    Defendant. :

---

## MEMORANDUM ORDER

At Wilmington this **24th** day of **February, 2025**:

Having reviewed the latest series of briefs (*see* D.I. 1558-64, 1566, 1568-70), relating to objections to the long-form Stock Purchase Agreement ("SPA")[1] circulated by the Special Master on February 10, 2025 (D.I. 1557-1),

**IT IS HEREBY ORDERED** that:

1.  The objection of the 2020 Bondholders (D.I. 1558) is, by their own account and based on the Special Master's representations (D.I. 1564 at 1), "resolved at least at this stage of the process" (D.I. 1568 at 1). The Court understands that the 2020 Bondholders "otherwise reserve all of their rights, and they intend to challenge any future bid that involves the upstreaming of any funds from CITGO to pay creditors of PDVSA." (D.I. 1568 at 1)

2.  Gold Reserve Inc. and Rusoro Mining Limited (together, the "Parties") (D.I. 1560) object to the SPA's prohibition of Credit Bidders credit bidding their good faith deposit. This

---

[1] Unless otherwise noted, capitalized terms have the meaning given to them in the Sales Procedure Order (D.I. 481) or the proposed SPA (D.I. 1557-1).

objection is **OVERRULED**. A cash deposit is an appropriate indicator of good faith and financial means for any bid, even a credit bid.

3. The Parties also object to the SPA's requirement that any bidder's deposit be made upon execution of a SPA by the bidder and the Special Master. (D.I. 1560 at 5) They propose that, instead, no deposit be due until the Court approves of an executed SPA. This objection is **SUSTAINED**. The Court agrees with the Parties that the Special Master does not need the deposit (as opposed to the promise of the deposit) to assess the credibility and financial worthiness of a bidder prior to Court approval of an executed SPA and that, prior to that time, "the SPA is not a binding document." (D.I. 1560 at 5; *see also* D.I. 1569 at 2 (Parties observing that bidder may be recommended as Stalking Horse prior to making deposit, suggesting "it cannot be the deposit itself that establishes the financial viability of a bidder, but rather the proof of being able to make the deposit") (internal quotation marks omitted)) The SPA shall be modified accordingly.

4. The Bolivarian Republic of Venezuela ("the Republic"), Petróleos de Venezuela, S.A. ("PDVSA"), PDV Holding, Inc. ("PDVH"), and CITGO Petroleum Corporation ("CITGO," and together with the Republic, PDVSA, and PDVH, the "Venezuela Parties") object to now-withdrawn language in the SPA relating to overbid minimums. (D.I. 1559 at 5) "[The] Special Master has agreed to add clarifying language to section 6.16(g)(i) of the SPA to resolve the objection." (D.I. 1564 at 4) "The Venezuela Parties agree with the Special Master's modification of Section 6.16(g)." (D.I. 1570 at 2) Accordingly, this objection is **DENIED AS MOOT**.

5. The Venezuela Parties also object to Section 5.11 of the SPA, which currently provides:

> The Buyer will not provide any consideration to any holder of an Attached Judgment (as defined in the Sale Procedures Order) at the Closing unless each other holder of an Attached Judgment senior to such holder (as set forth in the Priority Order (as defined below)) has either (i) received cash in full in satisfaction of its Attached Judgment or (ii) consented to receive non-cash consideration in satisfaction of its Attached Judgment.

2

Subject to resolution of any further objections that may be filed according to the schedule and page limits set out below, and further subject to negotiations the Special Master may engage in with Bidders (as Section 5.11 is not a non-negotiable term), this objection is **SUSTAINED IN PART**, to the extent that the SPA shall contain the following revised Section 5.11 (alterations to Special Master's proposal shown in ***bold italics***):

> The Buyer will not provide any consideration to any holder of an Attached Judgment (as defined in the Sale Procedures Order) at the Closing unless each other holder of an Attached Judgment senior to such holder (as set forth in the Priority Order (as defined below)) has either (i) received cash in full in satisfaction of its Attached Judgment, (ii) consented to receive non-cash consideration in satisfaction of its Attached Judgment, ***or (iii) consented to release its attachment (in which case it may, at its election, attempt to execute its judgment against other property besides the PDVH Shares). Nothing in this Section 5.11 precludes a Bidder from offering, as part of its Bid, non-cash consideration, including non-cash consideration to holders of Attached Judgments that are junior to holders of Attached Judgment who have, as of the time of the Bid, not provided consent consistent with (ii) or (iii) above. The Special Master, as part of his obligation to make a recommendation to the Court as to which of the Qualified Bids is highest or best, and in making a recommendation to the Court as to which Qualified Bid is the Successful Bid (as defined in the Sale Procedures Order), shall consider the value of non-cash consideration and the likelihood of obtaining consents consistent with this provision. As part of the Special Master's recommendation of a Successful Bid, he will advise the Court as to whether he received Qualified Bids including a component of non-cash consideration, what that non-cash consideration was and which creditors it would be offered to, and how he evaluated the non-cash component in reaching his recommendation.***

The Court agrees with the Venezuela Parties that, subject to any future determination of the Court – which may be based on citation of pertinent, binding legal authority and/or evaluation of a specific proposed bid – there is at present no "categorical bar against [the Special Master] recommending and/or [the Court] approving a bid that contains non-cash consideration [even] in the event a creditor objects." (D.I. 1570 at 1)

3

Given that (i) the revised Section 5.11 set out above is the Court's creation, to which no parties or the Special Master have had an opportunity to respond; (ii) it is unclear whether any dispute with respect to Section 5.11 is ripe, *compare, e.g.*, D.I. 1562 at 1 (Conoco Phillips arguing "[t]he Venezuela Parties' objection is premature") *and* D.I. 1564 at 4 (Special Master arguing "issue is not yet ripe") *with* D.I. 1570 at 2 (Venezuela Parties: "Bidders also need clarification on this point so that they can prepare their bids with a full understanding of the implications of any non-cash consideration they may offer."); (iii) it is unclear whether resolution of any dispute with respect to Section 5.11 is necessary and/or would be helpful to promoting the goal of value maximization, as the Court does not wish to deter bids that may include significant non-cash components as such a bid may, conceivably, be the best bid received consistent with the Evaluation Criteria; and (iv) no party cited any legal authority whatsoever for its competing assertions with respect to whether (a) the Court has authority to require a senior creditor to relinquish its attachment on the PDVH Shares should that creditor not consent to accept non-cash consideration, requiring it to attempt to execute its judgment against property other than the PDVH Shares, or (b) whether, alternatively, the Court lacks such authority and must, instead, risk allowing any non-consenting senior creditor to prevent junior creditors from accepting non-cash consideration should they wish to relinquish their attachments in exchange for such consideration,[2] **IT IS FURTHER ORDERED** that:

---

[2] *Compare, e.g.*, D.I. 1559 at 3-4 (Venezuela Parties: "If a creditor chooses not to accept non-cash consideration, then it can take its judgment elsewhere, leaving more non-cash consideration remaining in the waterfall for lower-priority creditors. . . . [O]nce it [i.e., a more senior Attached Judgment Creditor] chooses not to accept non-cash consideration in satisfaction of its judgment, it is out of the waterfall.") *with* D.I. 1563 at 3 (Crystallex: "Generally, unless senior creditors being 'skipped' are paid in cash (or other consideration they consent to receive) by the bidder or the junior creditors receiving noncash consideration, then the unsatisfied senior creditors' liens remain in place notwithstanding the transfer.") *and* D.I. 1561 at 2-5 (OIEG: "A junior creditor cannot

4

  A. The Special Master, Sale Process Parties, Additional Judgment Creditors, and any other interested entity may object to revised Section 5.11, according to the schedule and limitations set out below:

    (1) objections, not to exceed five pages (double-spaced), due no later than February 26;

    (2) responses, not to exceed three pages (double-spaced), due no later than February 27; and

    (3) replies, not to exceed two pages (double-spaced), due no later than February 28.

  B. Failure to object in accordance with (A) above will not be deemed a waiver of the right to object to, or to otherwise argue in connection with, a recommended Stalking Horse, Successful Bid, or other bid, for or against the Special Master's evaluation of non-cash consideration associated with any bid by any Qualified Bidder.

February 24, 2025
Wilmington, Delaware

            HONORABLE LEONARD P. STARK
            UNITED STATES DISTRICT COURT

---

recover from the sale unless all senior creditors have been satisfied in full or otherwise consent. . . . [A] *senior* creditor must be satisfied in full before a *junior* creditor can recover from the sale process. . . . Nowhere did the Court indicate, nor could it under Delaware law, that a senior creditor could be forced to accept *less* than full repayment of its judgment before a junior creditor could recover.") *and* D.I. 1564 at 2 (Special Master arguing Court's rulings "should not be interpreted to permit payment of proceeds to a junior creditor where such distribution would leap-frog a more senior claimant in the priority waterfall").

5