

300 DELAWARE AVENUE • SUITE 200 • WILMINGTON, DELAWARE 19801
TEL: (302) 472.7300 • FAX: (302) 472.7320 • WWW.HEGH.LAW

DD:  (302) 472-7315
shirzel@hegh.law

March 12, 2025

**VIA ECF**
The Honorable Leonard P. Stark
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, D.C. 20439

Re:  **Crystallex International Corporation v. Bolivarian Republic of Venezuela (No. 17-mc-151-LPS)**

Dear Judge Stark:

Pursuant to this Court's Oral Order dated March 7, 2025, Petróleos de Venezuela, S.A. (PDVSA) respectfully submits this letter brief in support of its objection to the excessive fees submitted for approval in the Special Master's Monthly Report for the period of October 1, 2024 to December 31, 2024 (the "Monthly Report") [D.I. 1584].

At the time the Court appointed the Special Master in May 2021 it ordered that the "Special Master shall incur only such fees and expenses as may be reasonably necessary to fulfill his duties under this Order, or such other Orders as the Court may issue in this proceeding." D.I. 277 ¶ 15. That Order capped the Special Master's hourly rate at $950. It also set a cap or benchmark of $2 million for the fees and expenses to be incurred by the Special Master, his Counsel, and Advisors (referred collectively in this letter brief as the "Special Master") for initial work, subject to any subsequent order of this Court authorizing "additional funding as may be necessary." *Id.*

As the Special Master's fees rapidly surpassed the $2 million threshold, the Venezuela Parties persistently objected to the excessive fees as unjustified and unreasonable. *See, e.g.*, D.I. 327 at 3; D.I. 371 at 1; D.I. 380 at 1; D.I. 413; D.I. 427 at 1; D.I. 437; D.I. 450; D.I. 466; D.I. 477; D.I. 498; D.I. 528. At the March 30, 2023 hearing, this Court recognized that the Venezuela Parties have a standing objection to the Special Master's growing fees. *See* 8/30/2023 Tr. 81:12-25.

On November 15, 2024, after it had become apparent that the Amber Energy Bid would not generate any support, the Special Master issued a bill totaling $4,093,901.35 in fees and expenses for September 2024 alone. D.I. 1430. The Republic and PDVSA reaffirmed their standing objection to the Special Master's mounting fees and further objected specifically to the exorbitant fees of the Special Master's counsel (Weil) for September 2024. D.I. 1478. This objection noted that the September 2024 bill was particularly unreasonable given that these fees had culminated in what proved to be, as the Venezuela Parties had cautioned, an inherently flawed process that led



The Honorable Leonard P. Stark
March 6, 2025
Page 2

to the recommendation of a universally criticized, failed bid. *See* D.I. 1459 at 4; *see also* D.I. 1445 at 2 (Special Master advocating for a "significant pivot" in light of the "absence of a viable bid"). The Republic and PDVSA were joined by several Attached Judgment Creditors in objecting to the Special Master's rapidly growing fees. D.I. 1477; D.I. 1479; D.I. 1480; D.I. 1494; D.I. 1495; D.I. 1497.

This Court heard argument on the objections at a hearing on December 13, 2024, and issued an order on December 31, 2024 amending the billing procedures moving forward, stating: (i) "the Special Master shall share…a budget of the anticipated expenses and billing for the first, second, and third quarters of 2025"; (ii) "the Special Master shall evaluate, [] whether the number of time-keepers can be reduced and shall ensure that all time entries will be sufficiently detailed"; (iii) "the Special Master shall review the bills … for October, November, and December 2024 and shall determine whether" the Special Master, as well as his counsel and advisors can take "'voluntary write-offs or reductions' for any or all of those months (and…shall disclose and explain [any write-offs or reductions] to the Sale Process Parties and Additional Judgment Creditors)"; and (iv) "the Special Master shall inquire of each of his advisors, [if] they can still justify billing on an ongoing basis at the same non-discounted rates they have been charging for the first 44 months of their engagement with this case, and he shall factor any anticipated discounts into the budgets he submits in accordance with this Order." D.I. 1516.

The Special Master has now submitted bills for the period from October 1, 2024, to December 31, 2024, totaling $6,120,177.82. D.I. 1584. After nearly four years since his appointment, the Special Master has incurred almost $40 million in fees, mostly by Weil, with precious little to show for it other than a failed bid and a renewed process that is speeding towards failure again because of the Special Master's unwillingness to heed the Venezuela Parties' input, adopt more reasonable timelines for the sale and consider alternative proposals that are better suited for this exceptional situation.

PDVSA thus objects to the entry of an order approving wholesale the fees incurred by the Special Master in his latest Monthly Report. In light of the Venezuela Parties' prior objections, joined by several Attached Judgment Creditors, a "one-time voluntary write off of 10% of [Weil's] fees" is not nearly enough given the exorbitant fees Weil has already incurred so far. This one-time write off would barely cover the fees incurred by former Weil partners Ray Schrock and Alex Welch during those months in which they were transitioning off of the Special Master's team.[1]

According to the Special Master's summary, this Monthly Report includes time spent on the failed Amber Energy Bid and Amber's "alternative transaction," which the Venezuela Parties had previously noted was futile and wasteful from the outset.[2] D.I. 1584 at 2; D.I. 1478 at 3 n.1;

---

[1] It bears noting that the Special Master had already agreed not to charge for transitioning work from Messrs. Schrock and Welch to other members of the Special Master's team. D.I. 1489 at 5.

[2] PDVSA reiterates that the Special Master, including his Counsel and Advisors, should not be compensated for any



The Honorable Leonard P. Stark
March 6, 2025
Page 3

D.I. 1496 at 2 n.2. While the Special Master has attempted to recast the failed bid as an experience that would inform the remainder of the sale process [D.I. 1489 at 2], the Sale Process Parties, and ultimately PDVSA and the Attached Judgment Creditor last in line to recover from any sale, are left carrying the cost for the Special Master's inefficiencies. *See* D.I. 1584 at 2-4.

In addition, the Special Master failed to follow the letter and spirit of this Court's December 31, 2024 Order regarding the new procedures governing bills. *See* D.I. 1584 at 6. The Court's Order was clear in its application to all bills issued after that Order, as indicated by the direction to the Special Master to scrutinize the bills that comprised this latest Monthly Report. While the Special Master provided a short explanation regarding the write off, he did not describe efforts to reduce the number of timekeepers and to ensure that all time entries were sufficiently detailed. On average across the three months of the report, Weil still billed for around 43 timekeepers every month, not including between 8 and 16 timekeepers who were supposedly written off for billing under 3.0 hours in a given month. Moreover, of the remaining timekeepers, around 31 are billing well above the $950/hour benchmark set by this Court.

The Special Master also admits that he has not asked his advisors to justify billing at non-discounted rates. While Weil claimed to have "real-world clients" that pay these rates [D.I. 1507 at 230:18 – 231:4], the Special Master is not dealing with ordinary clients, but rather should be acting as an arm of the Court in the public interest. D.I. 277 ¶ 20. Given the $950/hour benchmark set in this Court's order appointing the Special Master, and this Court's direction that discounted rates may be appropriate, the Special Master should have insisted on discounted rates to be applied retroactively to further reduce the excessive $6.12 million bill, or negotiated a more substantial write-off for those months.

Lastly, this bill is particularly alarming given that it is far from clear that the Special Master has designed a new process that can yield an adequate sale under Delaware law. This concern is only exacerbated by the Special Master's estimated budget of about $7,285,000 for the first quarter of 2025. At this rate, the Special Master's bills could increase by another $22 million by the end of the third quarter of this year. The Special Master's mounting fees must be curtailed as he is on track to exceed $60 million by the end of the third quarter of this year without any assurances that the process will result in a successful sale under applicable law.

For these reasons, this Court should not approve wholesale the fees in the Special Master's Monthly Report for the period of October 1, 2024 to December 31, 2024. D.I. 1584.

---

time spent negotiating the "alternative transaction" proposed by Amber, which apparently occurred after the Special Master had already submitted the Amber bid as the supposedly "Successful Bid" and after it was clear that any deal contingent on resolving the pending alter ego claims against PDVH would not garner any support among the Sale Process Parties or Attached Judgment Creditors. *See* D.I. 1414.



The Honorable Leonard P. Stark
March 6, 2025
Page 4

                                         Respectfully submitted,

                                         */s/ Samuel T. Hirzel, II*

                                         Samuel T. Hirzel, II (# 4415)
                                         *Counsel for Petróleos de Venezuela, S.A.*

STH/cmw
cc:    All Counsel of Record (via e-filing)