womblebonddickinson.com



March 25, 2025

The Honorable Leonard P. Stark
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801

**Re:**    ***Crystallex International Corp. v. Bolivarian Republic of Venezuela,* Case No. 17-mc-151**

Womble Bond Dickinson (US) LLP

1313 North Market Street
Suite 1200
Wilmington, DE 19801

t:  302.252.4320
f:  302.252.4330

Kevin J. Mangan
Partner
Direct Dial: 302-252-4361
Direct Fax: 302-661-7729
E-mail: Kevin.Mangan@wbd-us.com

Dear Judge Stark,

On behalf of Gold Reserve Inc., n/k/a Gold Reserve Ltd. ("Gold Reserve"), this replies to the letter submitted by Red Tree Investments, LLC ("Red Tree") (D.I. 1606) in response to Gold Reserve's emergency request (D.I. 1604).

With the benefit of the responses filed on March 24, 2025, including the helpful submissions made by bidder Vitol Inc. ("Vitol") (D.I. 1607), the Special Master (D.I. 1608), and Crystallex International Corporation ("Crystallex") (D.I. 1609), the issues before the Court appear to have narrowed to:

1.  Should the Special Master make public the NDA that prevented the public-filing of the Red Tree TSA in the first instance?

2.  Should the Special Master make public the Red Tree March 7 and March 12 bid letters?

3.  Has Red Tree met its burden to partially redact the TSA?

Before addressing each of these in turn, Gold Reserve makes the following comments regarding Red Tree's response:

- Red Tree incorrectly asserts that Gold Reserve's bid is "partially financed." (D.I. 1606 at 2-3). In fact, Gold Reserve's bid is fully financed, as confirmed by the corrective filing made by the Special Master on March 21, 2025, which attached Gold Reserve's March 12 amended bid letter rather than Gold Reserve's original March 7 documents. (D.I. 1603, 1603-1).

- Red Tree wrongly asserts that Gold Reserve should have met-and-conferred with Red Tree in advance of filing its emergency request. (D.I. 1606 at 1). As Gold Reserve stated, it met and conferred with the Special Master on this issue because it is the Special Master who was required by the December 31, 2024 Order to make public, and in fact did make public, "[a]ll bids submitted in the Stalking Horse stage of the Sale Process." (D.I. 1604 at 2). There thus was no reason to

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

meet and confer with Red Tree, particularly since the Special Master has now divulged that it is an unidentified "member of the Ad Hoc Group" of 2020 bondholders—not Red Tree—that prevented the Special Master from publicly disclosing the TSA. (D.I. 1608 at 2).

- Red Tree does not offer any credible response to the assertion that the failure to make public these critical components of Red Tree's bid violated the December 31, 2024 Order. Red Tree asserts that the only "authority" cited by Gold Reserve is the Order (D.I. 1606 at 2), but it is precisely this Order that controls all the mechanics of the Sale Process and required such disclosure. Further confirming the lack of merit in its position, Red Tree has now, in the face of the emergency request, withdrawn its request to seal the TSA in its entirety and instead filed on the public docket a partially redacted copy of the TSA. This shows that there was no real basis to withhold this document, and that, at minimum, Red Tree should have produced the redacted TSA in the first instance and not burdened the Court and the parties with an unjustified motion to seal the entire document.

- Red Tree's assertion that the TSA should not have been made public because "it is not a 'bid'" borders on the frivolous. (D.I. 1606 at 2). The TSA is heavily relied upon both by Red Tree in its bid letter (D.I. 1596-2 at 116, 117, 118, 120) and by the Special Master in the Recommendation. (D.I. 1596, ¶ 25). The Special Master publicly filed all other components of Red Tree's bid as exhibits to the Recommendation, and the Special Master clearly viewed the TSA as a component of Red Tree's bid—hence the request for permission to produce it with the Recommendation, which Red Tree "denied." (D.I. 1608 at 2). Finally, Crystallex has confirmed the same by stating that it received the TSA pursuant to the section of the December 31 Order that permits non-bidding Sale Process Parties to obtain "all bids." (D.I. 1609 at 1-2).

- Red Tree's attempt to excuse the non-publication of the TSA with the assertion that not all of Gold Reserve's bid information was made public by the Special Master is particularly improper. (D.I. 1606 at 2). As Red Tree knows, the Special Master issued instructions to all bidders on March 7, 2025 with the specifics on the extent to which the Special Master would make public all bid materials. While these instructions were marked "Confidential" by the Special Master and therefore are not appended here, Gold Reserve is duty-bound to make three observations concerning these instructions: (1) the Special Master made clear that it would publicly file all documentation filed by all bidders; (2) except that only the debt- and equity-commitment letters of the recommended bidder would be filed; and (3) that only "minimal redactions" would be permitted in the publicly filed documents other than the "bidder-identifying information" referenced in the December 31, 2024 Order. It is precisely because of these decisions made by the Special Master that not all of Gold Reserve's bid materials were publicly filed by the Special Master, and this in no way provides any justification to Red Tree to withhold from the public record its entire TSA (as it originally proposed) or the wholesale redactions of its key economic terms (as it now proposes).

**1. There Is No Objection to Gold Reserve's Request for Disclosure of the NDA That Prevented the Public Filing of the TSA In the First Instance.**

The Special Master's response is silent on this point and Red Tree affirmatively states that it "does not object to production of the relevant confidentiality agreement." (D.I. 1606, n. 1). As such, this

document—the NDA between the Special Master and an unidentified "member of the Ad Hoc Group" of 2020 bondholders entered into in 2024 (D.I. 1608 at 2)—should be made public.

**2. There is No Objection to Gold Reserve's Request for Disclosure of Red Tree's March 7 and March 12 Bid Letters.**

Neither the Special Master nor Red Tree have objected to public disclosure of the March 7 and 12 bid letters. The Special Master states only that he does not consider the bid letters "to be pertinent to the final Red Tree bid," and Red Tree echoes the same point. However, as stated in Gold Reserve's request, these documents will show the evolution of Red Tree's bid—from March 7 to March 12 to March 20—and thus the basis on which the Special Master evaluated the Red Tree bid and then recommended the final version of the same. Further, all of Red Tree's bid letters were submitted on the express understanding that they would be made public once the Recommendation was made, so there can be no claim of confidentiality as to such documents.

**3. Red Tree Has Not Met Its Burden for its Proposed Partial Redactions of the TSA.**

Although Red Tree has withdrawn its request to seal the TSA in its entirety, it has maintained its request to redact certain critical economic terms and provisions in the TSA and its attachments. Gold Reserve saw these proposed redactions for the first time in the document that Red Tree filed yesterday (D.I. 1606-1) and therefore did not have the opportunity to respond until now. In Gold Reserve's respectful submission, Red Tree has not met its burden to justify such redactions and therefore the TSA should be made public in its entirety.

In *LEAP Sys., Inc. v. MoneyTrax, Inc*., 638 F.3d 216, 221-22 (3d Cir. 2011), cited by Red Tree, the Third Circuit stated that there is a "strong presumption in favor of public accessibility" and noted that the "'burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption.'" (quoting *In re Cendant Corp.*, 260 F.3d 183, 190 (3d Cir. 2001)). Measured against this standard, Red Tree's vague and unevidenced assertions as to "confidential negotiating strategies and views on proper valuation of the 2020 notes" are insufficient (D.I. 1601 at 2), particularly given the critical nature of the TSA and its component terms to the Special Master's Recommendation. In this respect, Gold Reserve makes the following further observations:

- Gold Reserve asserted in its request that the TSA is the "single-most critical component of the Red Tree bid" (D.I. 1604 at 2), and neither the Special Master nor Red Tree has contested this.

- The Special Master did not join or support Red Tree's request for sealing the TSA, either in part or in whole.

- Gold Reserve agrees with Vitol that Red Tree's proposed redactions are for "critical economic terms and provisions of the relevant term sheets," the redaction of which would prevent a bidder from determining "how to improve its bid or whether there even is a path to putting forward an improved bid" during the Topping Period. (D.I. 1607, n. 2).

- Expanding on this point, the terms which Red Tree has redacted are essential to evaluating the conditionality of the TSA, and thus Red Tree's purported settlement with the 2020 bondholders.

This is because the redacted terms will show the difference between the Public Exchange referenced in the TSA and the Private Exchange (which is redacted and is apparently to be negotiated behind closed doors between Red Tree and the Consenting 2020 Noteholders, well after the deadline to submit a Stalking Horse Bid), including what consideration Red Tree has agreed to provide to the Consenting 2020 Noteholders in exchange for their agreement to cause the Collateral Release. Absent this information, it is not possible for Gold Reserve, or any party, to evaluate the supposed "certainty of closing" of Red Tree's proposed bid since Red Tree has made the completion of the Transaction a condition precedent to closing on the Sale Transaction for the purchase of the PDVH Shares. Given that this supposed "certainty of closing" is the reason why the Special Master recommended the Red Tree bid, it is critical that Gold Reserve, and all other parties, see all information going to this issue.[1]

Moreover, the reason that the Third Circuit affirmed the sealing of the agreements in *Leap Systems* was that the district court "specifically found that LEAP would not have entered into the settlements [the documents at issue] *but for* the Court's assurance of confidentiality" ahead of time. *Id.* at 222 (emphasis in original). That is exactly the opposite of the situation here, where all parties—including Red Tree and the 2020 bondholders—knew that all components of the winning bid would be made public when the Special Master made his recommendation.[2]

Even taking Red Tree's vague assertions at face value, it has made no showing of commercial sensitivity.[3] In comparison, in *Littlejohn v. BIC Corp.*, 851 F.2d 673, 685 (3d Cir. 1988), also cited by Red Tree, the Third Circuit rejected evidence that disclosure of the alleged confidential business information "would work a clearly defined and serious injury to its interests," particularly having an "adverse effect on its disposable lighter sales by competitive use of the information and a potential loss in its capital stock value." Instead, in affirming the disclosure of the documents in question, the Third Circuit noted that losing stock value or preventing management embarrassment alone are not sufficient to overcome a presumption of public access. *Id.*

---

[1] Understanding the difference in terms between the Public Exchange and the Private Exchange is also important for understanding the certainty of the Red Tree bid. Specifically, if the non-consenting 2020 bondholders are treated differently than the consenting 2020 bondholders, then there is an argument that the TSA is an improper attempt by the consenting 2020 bondholders to achieve superior treatment rather than the ratable treatment required under the Indenture. Such a structure has been held to be unlawful. *See*, *e.g.*, *In re Serta Simmons Bedding, L.L.C.*, 125 F.4th 555, 580-84 (5th Cir. Dec. 31, 2024).

[2] Red Tree's proposed redactions also fail under the balancing test established by the Third Circuit, which weighs any interest in maintaining information as confidential against the public's interest in seeing the documents, including a First Amendment right. *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 673 (3d Cir. 2019) (applying a two-prong test "to assess whether the right of access" attaches to any specific document: (1) the experience prong asks "whether the place and process have historically been open to the press"; and (2) the logic prong evaluates "whether public access plays a significant positive role in the functioning of the particular process in question" (internal quotations omitted)).

[3] It appears that Red Tree is making its application on behalf of an unidentified third party as it is not clear what "confidential negotiating strategies" Red Tree would be protecting as to itself, or why it would need to protect the "proper valuation of the 2020 notes". Indeed, it is not clear that the information at issue is Red Tree's alleged confidential information.

Finally, while Red Tree makes the revealing assertion in is Motion to Seal that the redacted economic terms of the TSA should "not be relevant either to the Court's decision whether to approve or reject the Special Master's recommendation" because the Court "has previously held that the Evaluation Criteria the Special Master would apply to select a Stalking Horse Bid 'shall NOT include any requirement or condition with respect to the 2020 Bond Entities' other than an acknowledgment of their claims. D.I. 1517 at 7-8" (D.I. 1601 at 3), the fact of the matter is that the Special Master expressly relied upon the TSA in recommending the Red Tree bid and it therefore is not for Red Tree to pick and choose which terms of the TSA are and are not relevant to competing bidders like Gold Reserve (and Vitol) or other potential objecting parties.  This is therefore not like *Contour*, where the non-public financing data, pricing terms, and customer lists were not relevant to the substance of the parties' dispute (*Contour Data Sols., LLC v. Gridforce Energy Mgmt. LLC*, No. CV 20-3241, 2024 WL 3994375, at *3 (E.D. Pa. Aug. 29, 2024)), or like *Mosaid* where the financial provisions of certain licenses were not disputed by the parties (*Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 510 (D. Del. 2012)).  Instead, because the TSA was so critical to the Special Masters' Recommendation, its full, unredacted terms must be publicly evaluated by the parties and the Court in determining whether to accept or reject the Recommendation.

Respectfully submitted,

**Womble Bond Dickinson (US) LLP**

*/s/ Kevin J. Mangan*
Kevin J. Mangan (#3810)

Matthew H. Kirtland (admitted *pro hac vice*)
**Norton Rose Fulbright US LLP**
799 9th Street NW, Suite 1000
Washington, DC 20001
Telephone: 202-662-0200
matthew.kirtland@nortonrosefulbright.com

cc: Counsel of Record (via ECF)