IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | : | |
| Plaintiff, | : | |
| v. | : | Misc. No. 17-151-LPS |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | : | |
| Defendant. | : | |

## **MEMORANDUM ORDER**

At Wilmington this **26th** day of **March, 2025**:

Having reviewed the materials pertinent to the disputes addressed below, **IT IS HEREBY ORDERED** that:

Red Tree's Motion to Seal

Red Tree Investments, LLC's ("Red Tree") Motion for Leave to File Under Seal (D.I. 1601), which Red Tree narrowed in the course of briefing (*see* D.I. 1606), and which is at least partially opposed,[1] is **DENIED** to the extent that, no later than **1:00 p.m. tomorrow, March 27**, the Special Master[2] **SHALL** docket the Transaction Support Agreement ("TSA") with the only

---

[1] *See, e.g.*, D.I. 1604 (Gold Reserve opposing continued sealing of TSA); D.I. 1607 (Vitol Inc. joining in opposition); D.I. 1610 (Venezuela Parties opposing sealing request); *see also* D.I. 1609 at 2 ("Crystallex does not take a position on whether it is appropriate to partially redact the TSA . . . ."); D.I. 1615 at 1 ("ConocoPhillips takes no position regarding the motion to seal."); D.I. 1617 at 1 (Crystallex reiterating its non-position).

[2] Capitalized terms used in this Order and not otherwise defined have the meaning given to them in the Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale

remaining redactions being to the "personal contact information in the TSA's notice clause [and] the proposed direction and indemnity agreement," as those limited redactions do not appear to be opposed (D.I. 1613 at 1). By the same deadline, the Special Master **SHALL** docket the confidentiality agreement referenced in the papers, as Red Tree does not object to its production (nor does it appear that the Special Master or any other appearing entity objects). (*See* D.I. 1606 at 1 n.1 (Red Tree consenting to disclosure of confidentiality agreement); *see also* D.I. 1616 at 2 (Gold Reserve noting Special Master is "silent on this point"))

The Third Circuit recognizes a "strong presumption" in favor of public access to court filings, although the right of access to judicial records is not absolute. *In re Cendant Corp.*, 260 F.3d 183, 190 (3d Cir. 2001). The Court may seal documents upon motion "when justice so requires," but only if the moving party (here, Red Tree) has demonstrated that its "interest in secrecy outweighs the presumption" of access. *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 221-22 (3d Cir. 2011) (internal quotation marks omitted). To succeed, a party must show that "disclosure will work a clearly defined and serious injury." *Cendant Corp.*, 260 F.3d at 194.

Red Tree has not demonstrated that justice favors (much less requires) the sealing it seeks, nor has it shown it has an interest in secrecy that comes close to outweighing the presumption of public access. Red Tree aims to redact from the publicly-available version of the TSA "the terms of a proposed exchange for the 2020 Notes." (D.I. 1606 at 1) Under some circumstances the Court may, as Red Tree observes, seal a document "reveal[ing] . . . parties' confidential negotiating strategies and views on the proper valuation" of property such as the 2020 PDVSA Bonds. (D.I. 1601 at 2) Here, however, Red Tree relies on the TSA – including its

---

Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters (D.I. 481) (the "Sale Procedures Order").

2

economic terms – as a material component of a bid it voluntarily injected into a public auction process imbued with litigation. In this context, neither Red Tree nor the other parties to the TSA could have had any reasonable expectation that the Court would give weight to the TSA (as Red Tree hopes the Court will do) ***and yet*** keep its terms secret. This is especially true given the Court's repeated orders emphasizing that "[a]ll bids submitted in the Stalking Horse stage of the Sale Process shall be made public once a Stalking Horse bid is selected." (D.I. 1517 at 6; *see also* D.I. 1554 at 2 (reiterating same)) This is quite unlike a situation in which the parties "would not have entered into the [agreement] but for the Court's assurance of confidentiality." *LEAP Sys.*, 638 F.3d at 222.

While, arguably, the TSA is not part of Red Tree's "bid," the TSA constitutes a highly material component of the substance of that bid, as is evident from the emphasis the Special Master places on the TSA in recommending that the Court approve Red Tree as the Stalking Horse Bidder. As the Special Master explains in his recommendation:

> [Red Tree] entered into a transaction support agreement (the "**TSA**"), with an ad hoc group (the "**2020 Bondholders AHG**") . . . [which] provides for a consensual exchange of the PDVSA 2020 Bonds for a combination of debt at CPC [CITGO Petroleum Corporation], secured notes at CITGO holding pursuant to a marketing process, and secured convertible notes at AcquisitionCo . . . .
>
> [I]t is the Special Master's judgment that certainty of closing deserves particular (but not exclusive) importance. Therefore, while the Red Tree bid was the second highest Stalking Horse Bid submitted, rather than the highest, it was nonetheless the best bid submitted for purposes of selection of a stalking horse.
>
> ***An important factor in assessing the closing certainty of the Proposed Transaction was Red Tree's settlement with the PDVSA 2020 Bondholders*** . . . . [O]nly Red Tree secured a settlement with the PDVSA 2020 Bondholders to, among other things, consensually implement the financing at a level below CITGO Holding . . . . [A]ll bids submitted in the current round contain a level of risk to their ability to close, but the Proposed Transaction accomplished the best mitigation of that risk.

(D.I. 1599 at 9-10, 12-14) (bold italicized emphasis added).

The Court anticipates that its evaluation of any objections to the Special Master's recommendation of Red Tree as the Stalking Horse Bidder will, likewise, require consideration of the TSA. From this reality it follows that the objectors must have access to the unredacted TSA in order to have a full and fair opportunity to be heard. In sum, the Court is not persuaded by Red Tree's repeated assertion that the "TSA's economic terms have no connection to whether the Court should approve or reject the Special Master's choice of Stalking Horse." (D.I. 1613 at 5; D.I. 1601 at 3; *see also* D.I. 1606 at 2)

Relatedly, and as importantly, the likelihood that the Topping Period will achieve its goal of promoting a vigorous competition among bidders would seem to be greatly reduced by not making the terms of the TSA available to other bidders. Vitol Inc. ("Vitol"), a competing bidder, points out that "other bidders are materially disadvantaged from improving their respective bids during the topping period," because not having access to the terms of the TSA means bidders are "currently unable to determine how to improve [their] bid or whether there even is a path to putting forward an improved bid." (D.I. 1607 at 1-2 & n.2; *see also* D.I. 1610 at 6-7 (Venezuela Parties: "Fundamentally, a bid cannot serve as a stalking horse when potential topping bids are not explicitly told what they have to beat. . . .  [I]t would be difficult – if not impossible – for a competing bidder to participate in the topping period without a full understanding of the economics of the proposed transaction or, if they so choose, to attempt to reach a similar or better arrangement with the 2020 Bondholders.")) The Court agrees with Gold Reserve: "What cannot be proper . . . is for Red Tree to be selected as the recommended stalking horse and then to have other bidders and Attached Judgment Holders not able to immediately see all the components of its bid, particularly the most critical components." (D.I. 1604 at 3)

Additionally, it is unclear from the record whose confidential information Red Tree is even seeking to protect.[3] This further undermines Red Tree's effort to come within the narrow exception to public availability of materials submitted to a court in connection with a request for judicial action.

In addition to the TSA, Gold Reserve seeks access to earlier (March 7 and 12) versions of Red Tree's March 20, 2025 bid letter. (*See, e.g.*, D.I. 1616 at 3) This request is **DENIED**. The Court is not persuaded that Gold Reserve or the public is entitled to "the evolution of Red Tree's bid" (*id.*), particularly as the earlier letters were superseded by Red Tree's final bid letter, which is public (*see* D.I. 1606 at 2; D.I. 1608 at 2). The Court accepts the Special Master's representation that the earlier letters are not "pertinent to the final Red Tree bid." (D.I. 1608 at 2)

Finally, the Court is not required to, and does not, take a position today on any substantive criticisms of the Special Master's recommendation of Red Tree as the Stalking Horse Bidder, or the criticisms leveled by or at the Venezuela Parties in the briefing.

Venezuela Parties' Objections to Special Master Bill

PDVSA's objection (D.I. 1587) to the Special Master's bills for the period October 1, 2024 through December 31, 2024 (D.I. 1584-1) is **OVERRULED**. (*See also* D.I. 1589, 1592) The Special Master has complied with both the letter and the spirit of the Court's December 31, 2024 Order. (D.I. 1516) He explains that, for instance, he "sent the Sale Process

---

[3] The Special Master indicates that he is prevented from making the TSA public by the terms of a non-disclosure agreement he executed in 2024 with an unidentified "Member" of what is now the Ad Hoc Group of 2020 PDVSA Bondholders, who are parties to the TSA. (*See* D.I. 1608 at 2; *see also* D.I. 1616 at 4 n.3)

5

Parties an anticipated budget for the first quarter of 2025," "reduced the number of timekeepers and took steps to ensure that time entries are sufficiently detailed," "asked Weil to take a voluntary 10% write-off" for the last quarter of 2024, "which the firm agreed to do," and "determined after consultation with his advisors that discounted rates were not justified under the circumstances."  (D.I. 1592 at 2)  Nor has PDVSA identified any particular time entries that it contends reflect work that was unnecessary or inappropriate under the (extraordinarily complicated and highly litigious) circumstances.

Additional Matters

The teleconference scheduled for tomorrow, March 27, is **CANCELLED**.

All entities that have filed documents under seal are reminded of their obligations to file redacted versions, along with supporting memoranda justifying the proposed redactions, in a timely manner.

_____
March 26, 2025                                                         HONORABLE LEONARD P. STARK
Wilmington, Delaware                                                UNITED STATES DISTRICT COURT