# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>   Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>   Defendant. | Case No. 17-mc-151-LPS |
| RUSORO MINING LTD.,<br><br>   Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>   Defendant. | Case No. 21-mc-481-LPS |
| KOCH MINERALS SARL and KOCH NITROGEN INTERNATIONAL SARL,<br><br>   Plaintiffs,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>   Defendant. | Case No. 21-mc-156-LPS |
| GOLD RESERVE INC.,<br><br>   Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>   Defendant. | Case No. 22-mc-453-LPS |

### RUSORO'S OBJECTION TO SPECIAL MASTER'S RECOMMENDATION

Rusoro Mining Ltd. ("Rusoro") respectfully objects to the Notice of Special Master's Recommendation of Stalking Horse (D.I. 1596) (the "Recommendation"), and joins the objections filed by its bid consortium members Gold Reserve Inc., n/k/a Gold Reserve Ltd. ("Gold Reserve") and Koch Minerals SARL and Koch Nitrogen International SARL ("Koch").

The Special Master's stated rationale for not selecting the highest bid was that Red Tree/Contrarian (and other 2020 bondholders) have threatened to bring litigation to interfere with the Sale Transaction of any other bidder that relies upon debt-financing and, because Red Tree/Contrarian have entered into the Transaction Support Agreement ("TSA") that purportedly "settles" this litigation risk, their bid has a higher degree of "closing certainty." *See, e.g.,* D.I. 1596 ¶ 34. This rationale is invalid, for the reasons set forth below.

**The Court Excluded 2020 Litigation Risk from the SPA and Evaluation Criteria**

The Court has made clear—repeatedly—that **"[t]he SPA and Evaluation Criteria shall NOT include any requirement or condition with respect to the 2020 Bond Entities other than that bidders acknowledge"** the existence of their purported claims..[1] Contrary to this instruction, the Special Master elevated the 2020 litigation risk, and potential settlement of the same (which Red Tree/Contrarian effectively negotiated with themselves), to be the most critical factor in his evaluation.

To understand the gravity of this error, it is helpful to revisit **why** the Court excluded 2020 bondholder conditions/requirements from the SPA and Evaluation Criteria in its December 31, 2024 Order. As the Court will recall, conditionality related to the 2020 bonds was a critical feature

---

[1] (D.I. 1517, ¶ 28). The Court reiterated this in its Jan. 27, 2025 Order, D.I. 1554, at 23: "SPA Material Term 18: 2020 Bonds – Non-Negotiable…The Court has already determined that the SPA will not include any requirement or condition with respect to the 2020 Bond Entities other than certain acknowledgements (D.I. 1517 at 11-12) and sees no reason to modify this determination.").

1

of the failed Amber Energy bid, in which Amber Energy proposed to escrow over $2 billion of its purchase price to hedge against 2020 bondholder litigation risk and then "conditioned" payment of its entire purchase price on resolution of this litigation. This attracted widespread opposition and was one of the key reasons that the Special Master's recommendation of the Amber Energy bid was not approved.

To prevent this problem from reoccurring, the Court took extensive steps to ascertain how 2020 litigation risk should be dealt with by bidders and the Special Master in the present phase of the proceedings. After extensive briefing, the Court issued its initial "Inclinations" order, and therein both rejected the 2020 bondholders' request that the SPA should be required to "respect" their "rights,"[2] and stated its "strong" inclination that a bidder's proposed strategy for addressing the 2020 bondholders was to be given no weight by the Special Master when evaluating bids.[3]

The Court reiterated this inclination at the December 13 hearing,[4] and the 2020 bondholders themselves expressed general agreement with it.[5] Moreover, during the December 13 hearing, the Court had an extended colloquy with the Special Master's counsel on the precise issue now before the Court, *i.e.*, the weight, if any, that should be given to a bidder's potential settlement with the 2020 bondholders. Therein, the Court made clear its views on this issue: the

---

[2] (D.I. 1433 at 10) ("9. The Court is not inclined to grant the 2020 Bond Entities' request that it direct the Special Master "to negotiate a new SPA that respects the 2020 Bond Entities' rights.").

[3] (D.I. 1493 at 8, emphasis added) ("6. <u>What weight, if any. should the Special Master give to bidders' plans with respect to the 2020 Bond Entities</u>? . . . b. The Court is **strongly inclined** to agree with those who urge the Court to require, with respect to the 2020 Bond Entities, **nothing more** from bidders other than that *they acknowledge their existence*.; *see also* D.I. 1554 at 23 ("The Court has already determined that the SPA will not include any requirement or condition with respect to the 2020 Bond Entities other than certain acknowledgements.").

[4] (D.I. 1507 (Dec. 13, 2024 Hrg. Tr.) at 193:1-2) ("The Court: "[W]ith respect to the 2020's . . . bidders would have to acknowledge their existence and nothing else.").

[5] (*Id.* at 94:13-14) (Mr. Hurwitz, counsel for ad hoc group of 2020 note holders: "Your Honor, we generally agree with the Court's inclination as set forth in the inclination order.").

Special Master did not "need to know anything further about [a bidder's] view" of the 2020 bondholder litigation, including "**whether they have a settlement or not**."[6]

After the December 13 hearing, in the briefing leading up to the December 31, 2024 Order, all parties – the Special Master, the Sales Process Parties, the Attached Judgement Creditors ("AJCs") and the Venezuela Parties – were aligned with the Court on this point: no weight should be given by the Special Master to "bidders' plans" with respect to the 2020 bondholders and, instead, the only mention of the 2020 bondholders should be of the existence of their purported pledge. *See* (D.I. 1510 at 8); (D.I. 1511 at 5). It was on the basis of these submissions, the Court's previously stated Inclinations, and the parties' representations at the December 13 hearing, that the Court excluded the 2020 bondholders, and their litigation risk, from the Sale Process:

> *28. The SPA and Evaluation Criteria shall NOT include any requirement or condition with respect to the 2020 Bond Entities other than that bidders acknowledge that the 2020 Bond Entities purport to have a pledge of 50.1% of the equity of CITGO Holding, Inc., which is disputed by the Venezuela Parties and is subject to active litigation. (D.I. 1510 at 8; D.I. 1511 at 5).*

As a result of this ruling, the 2020 bondholder litigation risk (as well other litigation risks), and their potential attendant consequences, were <u>not</u> included in the Court-approved Evaluation Criteria or the model SPA. Rather, as the Court ruled, bidders were required to factor such risks into the pricing of their bids. The Court's instructions were carefully observed in the bid submitted by the Gold Reserve Consortium:

- Its proposed Stock Purchase Agreement ("SPA") does not include any condition or requirement regarding the 2020 bondholders or their litigation, and it contains the requisite acknowledgement of the existence of the 2020 bonds and the purported pledge.

- No purchase price adjustments, lock box, "leakage" or similar constructs are included.

---

[6] (*Id.* at 65:20-21).

- No portion of the $7.081 billion net purchase price is payable to an escrow or trust, whether in respect of the 2020 bondholders, the Gramercy alter ego claims or otherwise.

- No "earn out" or deferred purchase price concepts is included.

- Its SPA does not include any requirements, and is not subject to any closing condition precedent, related to the 2020 bonds or the alter ego claims.

As such, and as the Court required, the Gold Reserve Consortium bid accepted the risk of the outcome of the 2020 bondholder litigation. This encompasses an obligation to close on its proposed Sale Transaction – which would deliver a $7.081 billion net purchase price to the Sale Process Parties and AJCs – **regardless of the outcome of the 2020 bondholder litigation**. The Consortium's acceptance of this risk stands squarely at odds with the Red Tree/Contrarian bid, which goes even further than the Amber Energy bid in its efforts to hedge this risk, *i.e.*, by transferring over $3 billion in value to the 2020 bondholders (which, as noted, includes Red Tree/Contrarian) and away from the AJCs for whom the Sale Process has been designed. Indeed, whereas the Court directed the Special Master – who is responsible for securing a "value maximizing transaction" for the AJCs – not to consider the 2020 bondholders in its evaluation of the bids, the Special Master has chosen a bid that delivers approximately half the value of the PDVH shares to persons that are not before the Court and whose SDNY claims remain highly contingent and unresolved.

By prioritizing the 2020 bondholders and their litigation risk, the Recommendation plainly runs afoul of the Court's clear instructions. Indeed, it is clear that the Special Master made 2020 bondholder risk the fundamental differentiating factor in his Recommendation.[7] In so doing, the

---

[7] (D.I. 1596 ¶ 34: "An important factor in assessing the closing certainty of the Proposed Transaction was Red Tree's settlement with the PDVSA 2020 Bondholders."; (*Id.*, ¶ 40) ("The Special Master believes the Proposed Transaction offers the highest degree of certainty of closing in comparison to the other three (3)

Special Master improperly re-injected into this process the exact issue that the Court (and all the parties) took pains to exclude.

If the Special Master (or Red Tree/Contrarian) wanted to impose this condition on the Sale Process, they should have requested it, in the extensive briefing before the December 13 hearing, in advance of the December 31 order, or on the terms and conditions of the model SPA and Evaluation Criteria. They did not. To the contrary, the model SPA proposed by the Special Master and approved by the Court contains numerous provisions and conditions regarding debt-financing,[8] but nowhere is it stated (or implied) that a settlement with the 2020 bondholders is **the** paramount condition/requirement of a debt-financed bid, as the Special Master now has made it.

It is, of course, not lost on Rusoro (and the other members of the Gold Reserve Consortium) members that the transaction under consideration is a complex one that involves many factors, and it respects the Special Master and his advisors. But, the Court's rulings have made two things clear: (i) the sale of the PDVH shares must be undertaken in a manner that maximizes value for the creditors before this Court, and (ii) bidders for the PDVH shares must bear the risk of any collateral litigation that could affect the value of those shares. The Red Tree/Contrarian bid – and the Recommendation that it be designated the stalking horse bid – are irreconcilable with those twin mandates, as they collectively transfer several billion dollars of value away from the AJCs in order to hedge a highly contingent risk. As a result, Rusoro (and the other members of the Gold Reserve Consortium) respectfully submit that the Recommendation should be rejected, and that the Gold Reserve Consortium bid should be selected as the stalking horse.

---

proposed Stalking Horse Bids received. This certainty is in part due to the proposed settlement with the PDVSA 2020 Bondholders.").

[8] *See, e.g.,* D.I. 1557-1 (Long-Form SPA) at Section 6.9 ("The Buyer's Obligations in Respect of Debt Financing) and Section 6.10 ("Company Obligations in Respect of Debt Financing").

Dated: March 31, 2025

Respectfully submitted,

| | |
|---|---|
| **DLA Piper LLP (US)**<br><br>By: _/s/ R. Craig Martin_<br>R. Craig Martin (#005032)<br>1201 North Market Street<br>Suite 2100<br>Wilmington, DE 19801<br>Telephone: 302-468-5655<br>Fax: 302-778-7834<br>craig.martin@us.dlapiper.com<br><br> - and -<br><br>James E. Berger (*pro hac vice*)<br>Charlene C. Sun (*pro hac vice*)<br>Joshua S. Wan (*pro hac vice*)<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Telephone: 212-335-4715<br>Fax: 212-884-8715<br>James.berger@us.dlapiper.com<br>Charlene.sun@us.dlapiper.com<br>Joshua.wan@us.dlapiper.com<br><br>*Attorneys for Rusoro Mining Ltd.* | |