# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) No. 1:17-mc-00151-LPS |
| v. | ) |
| | ) |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | ) **PUBLIC** |
| | ) |
| *Defendant*. | ) |

## THE VENEZUELA PARTIES' MOTION FOR A SHORT STAY OF THE SALE PROCESS

The Venezuela Parties[1] respectfully request that the Court pause the sale process for three months to allow time for the U.S. District Court for the Southern District of New York to issue a decision on the fully briefed issue of the validity of the 2020 Notes and accompanying pledge in *Petróleos de Venezuela S.A. v. MUFG Union Bank N.A.*, No. 19-cv-10023 (the "2020 Notes Litigation"). Recent developments in the sale process—in particular, the Special Master's sacrifice of $3.3 billion in value in the stalking horse round because of his fear of litigation from the 2020 Noteholders—demonstrate the need for a short stay to resolve substantial uncertainty that is impeding the sale process and threatening to divert billions of dollars in value from Attached Judgment Creditors. PDVH has simultaneously filed a motion to expedite the Southern District of New York Court's decision to reduce as much as possible any delay to the sale proceedings.

## NATURE AND STAGE OF THE PROCEEDINGS

In December 2024, the Venezuela Parties proposed a schedule for the current phase of the sale process that would both maintain momentum and provide sufficient time for the Southern District of New York Court to declare the invalidity of the 2020 Notes and accompanying Pledge Agreement under Venezuelan law and thereby preempt any justification for diverting potential sale proceeds to the 2020 Noteholders. *See* D.I. 1459 at 7, 12. That issue, the Venezuela Parties explained, would be fully briefed by March, positioning the parties for a decision that could provide substantially more certainty to bidders. *Id.* at 12. Throughout the entire pendency of this sale process, the Venezuela Parties also have consistently advised the Court that the Special Master's repeated attempts to require or encourage bidders to satisfy the 2020 Noteholders' claims risked chilling bids and/or improperly diverting sale proceeds away from the Attached Judgment

---

[1] As with the Venezuela Parties' other filings, nothing in this filing should be construed to imply the Venezuela Parties' consent to a forced sale under any circumstances. The Venezuela Parties preserve all rights and positions, including on appeal.

Creditors and argued that value would be better maximized by first allowing a resolution of PDVSA and PDVH's ongoing challenge to the validity of the 2020 Notes.[2]

The Special Master opposed the Venezuela Parties' proposed schedule, D.I. 1481, and while the Court ultimately adopted the current schedule in its December 31, 2024 order, D.I. 1517, it did order the Special Master and the bidders not to condition bids on resolution of the 2020 pledge, D.I. 1517 ¶ 28. In the months since that order, the Southern District of New York Court received final supplemental briefs on the application of Venezuelan law on March 18, 2025, as predicted. *MUFG Union Bank*, ECF No. 320 at 10. The issue will likely be set for argument in short order with a decision to follow.

On February 14, 2025, the Special Master nevertheless recommended that the stalking horse bid deadline proceed as scheduled. *See* D.I. 1565. Bidders submitted their proposed stalking horse bids on March 7, 2025. D.I. 1596 ¶ 5. The Special Master subsequently sought, and was granted, three extensions of time to continue negotiating with the bidders, *see* D.I. 1590; D.I. 1591; D.I. 1595, ultimately submitting his recommendation to the Court on March 21, 2025. *See* D.I. 1596.

---

[2] *See, e.g.*, D.I. 561 at 13-15 (arguing that uncertainty posed by the (then-pending) appeal in the 2020 Notes Litigation counseled in favor of not yet launching the sale process); D.I. 561-1 ¶ 25 (R. Weisenburger recommending awaiting resolution of 2020 litigation); D.I. 1144 at ¶ 16 (arguing that the Special Master's then-proposed modifications to the bidding procedures regarding the treatment of the 2020 Noteholders would "discourage bidders and suggest that any bid should be deeply discounted to give great weight to the CITGO Holding Pledge despite its highly questionable validity"); *see also* D.I. 1144 at ¶ 9 (advocating for a pause in the sale process because "uncertainties related to the PDVSA 2020 Notes litigation threatened to impede the sale process"); D.I. 1459 at 11-12 (advocating schedule accounting for the resolution of the 2020 Notes Litigation); D.I. 1459-1 (CITGO's proposed sale process schedule); D.I. 1476 at 4 (same). Following the December 13, 2024 hearing, PDVH and CITGO proposed a compromise schedule that would have provided more time for developments in the 2020 Notes Litigation than advocated for by the Special Master or certain other parties. D.I. 1511-1 (PDVH and CITGO); *see* D.I. 1510 (Special Master).

**LEGAL STANDARD**

This Court has "broad inherent power to manage its own affairs so as to achieve the orderly and expeditious disposition of cases." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2024 WL 325133, at *2 (D. Del. Jan. 29, 2024) (cleaned up). "[T]his discretion also allows [the Court] to consider the relative prejudice to the parties who are before [the Court] that might arise from granting or denying the requested relief and also gives [the Court] the authority to consider the impact, if any, of [its] rulings on the ongoing sale process." *Id.* at *3. As relevant here, the Court's broad discretion "includes the authority to modify [its] prior orders," including existing sale process deadlines. *Id.* at *2.

**ARGUMENT**

The Venezuela Parties recognize that the Court has denied previous requests to adjust the sale process schedule to accommodate resolution of the 2020 Notes Litigation, *see e.g.*, D.I. 643 at 9; D.I. 1517, but they respectfully urge that the circumstances have changed, and not just because a decision on the 2020 Notes' and accompanying pledge's validity is expected soon. As the Court is aware, the 2020 Noteholders filed a series of pre-emptive objections signaling that they would seek to enjoin any recommended bid that includes financing from or secured by CITGO Holding's or CITGO's assets. *See* D.I. 1553 at 4-5; D.I. 1558 at 3, 4-5; D.I. 1568 at 3. Apparently because of these meritless threats, the Special Master recently rejected a bid for more than $7 billion by Bidder A in favor of a $3.699 billion bid by Red Tree, which purported to have reached an agreement with the 2020 Noteholders (of which its own parent Contrarian is a major holder) to release their claimed lien on over 50.1% of PDVH's shares of stock in CITGO Holding, Inc. The Special Master's decision put a $3.3 billion price tag on potentially eliminating a pledge that the Southern District of New York Court may soon decide is worthless and is at most worth far less than the

3

$3.3 billion that would otherwise go to Attached Judgment Creditors (while reducing PDVSA's or the Republic's indebtedness by that same amount) under Bidder A's bid.

The Special Master's decision also encourages bidders in the topping period to seek to divert billions of dollars of value to the 2020 Noteholders to satisfy the Special Master's insistence on eliminating the pledge. Red Tree's settlement, for example, would pay more than $2 billion of consideration to the 2020 Noteholders, D.I 1627-1 at 40 (the exact consideration cannot be determined from the available documents, but the Noteholders are receiving $2 billion in notes, a monthly ticking fee, and 7% of the equity of the acquiring company). Moreover, once the Transaction Support Agreement ("TSA")'s exclusivity provisions become operative, the settlement agreement would prohibit the 2020 Noteholders from agreeing to any competing settlement with another bidder unless it is on the same or better financial terms than those to which Red Tree (the subsidiary of a major holder of 2020 Notes) agreed, with the decision as to whether an alternative proposal satisfies this inherently subjective standard presumably being made—or at least significantly influenced—by a conflicted party that is on both sides of the transactions contemplated by the settlement agreement embodied in the TSA, D.I. 1627-1 at 15, § 3.2(c).

This Court previously was assured by the Special Master's and Evercore's representations that "[p]otential bidders will be fully capable of valuing the PDVH [s]hares and CITGO operations agnostic to capital structure, including whether claims held by the PDVSA Noteholders or other judgment creditors will need to be satisfied by the [s]ale [t]ransaction proceeds." D.I. 643 at 10 (cleaned up); *id.* at 11 ("The Court is further persuaded by the Special Master's insistence that the ongoing 2020 Noteholders' litigation will be no impediment to his efforts.").

Recent developments make clear, however, that the Special Master's and Evercore's assurances have not borne out, and the uncertainty surrounding the 2020 Noteholders' claims is

4

directly impeding the Special Master's efforts and threatens to yield a grossly inadequate and unfair result.³ Indeed, Red Tree's proposed purchase price is a mere fraction of the fair market value of the PDVH Shares and would leave well more than three-quarters of attached judgments unsatisfied, and even Bidder A's $7 billion bid (which is still well below the shares' fair market value) would satisfy only roughly a third of attached judgments. *See* 1140-1 (Final Determination of Attached Judgments); D.I. 1102 (Final Priority Order). Continuing with the current sale process schedule risks ending with the recommendation of a bid that is so grossly inadequate that it cannot possibly be upheld under Delaware law. *See Burge v. Fid. Bond & Mortg. Co.*, 648 A.2d 414, 419 (Del. 1994).

Fortunately, there is still time for a course correction. This Court can, and should, "postpone the sale" when "the time selected, or other circumstances, will be likely to produce great sacrifice of the property." *Blossom v. Milwaukee & C.R. Co.*, 70 U.S. 196, 209 (1865). This Court has recognized that if external factors, including the 2020 Notes Litigation, "actually materialize[d]" to "chill[]" bids, it could be appropriate to "adjourn the Auction and/or the Sale Hearing." D.I. 643 at 10 (quoting D.I. 481 ¶ 9) (quotation marks omitted). To that end, the Venezuela Parties propose extending the beginning of the topping period to June 27, 2025. The remainder of the sale process schedule would be similarly extended according to the same 90-day interval. The Venezuela Parties' proposed schedule is attached, in full, as Exhibit A.

This modest extension of the sale process schedule could substantially mitigate the uncertainty upon which the Special Master is fixated by providing time for the Southern District

---

³ To be clear, the Venezuela Parties maintain that the 2020 Noteholders' claims, as well as their threat to try to block any sale that involves raising financing at the CITGO or CITGO Holding level, lack merit and therefore do not warrant any substantial reduction in the purchase price offered by a rational bidder or any consideration by the Special Master.

5

of New York Court to rule on the fully briefed question of the validity of the Notes and pledge under Venezuelan law before the topping period concludes.[4] Moreover, ███████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████ and other bidders should be willing to bid far more for the PDVH Shares without the cloud of a potential foreclosure on the 2020 Noteholders' pledge. If the sale process is not stayed at this point, the difference in value would be borne by Attached Judgment Creditors and inure to the benefit of either the 2020 Noteholders including Contrarian/Red Tree (if the Red Tree bid is selected) or another bidder, such as Bidder A, which would receive a windfall from having bought the company at a steep discount and then receiving its full value in the event the pledge is ultimately invalidated. Every dollar taken from Attached Judgment Creditors in this manner also represents a dollar taken from PDVSA and/or the Republic, in the form of indebtedness that should have been satisfied, but was not, due to the failure to maximize value.

The Venezuela Parties understand the Court's desire to bring this action to a close, and they recognize that the Court is not "marketing [the] PDVH [s]hares free and clear of whatever claims, encumbrances, and liabilities, are, have been, or may be attached to any asset or subsidiary of PDVH." D.I. 1515 at 20. But this Court, the Sale Process Parties, and the Special Master have invested years and tens of millions of dollars in attempting to realize the goal of maximizing the

---

[4] The requested stay also would have the added benefit of providing time for Judge Rakoff to rule on pending motions for summary judgment in the PDVH Alter Ego Actions filed by Girard Street and G&A Strategic Investments, further reducing uncertainty.

value of the PDVH shares. Advancing that goal and preventing the loss of more than $3 billion in value should more than make up for adding a mere three months to the schedule.

## CONCLUSION

The Venezuela Parties respectfully request that the Court modify the sale process schedule as proposed in Exhibit A.

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | */s/ Alexandra M. Cumings* |
| OF COUNSEL: | Susan W. Waesco (#4476) |
| Nathan P. Eimer | Alexandra M. Cumings (#6146) |
| Lisa S. Meyer | Kirk Andersen (#7156) |
| Daniel D. Birk | 1201 North Market Street |
| Gregory M. Schweizer | Wilmington, DE 19801 |
| Hannah Bucher | (302) 658-9200 |
| EIMER STAHL LLP | SWaesco@morrisnichols.com |
| 224 South Michigan Avenue | ACumings@morrisnichols.com |
| Suite 1100 | KAndersen@morrisnichols.com |
| Chicago, IL 60604 |  |
| (312) 660-7600 | *Attorneys for PDV Holding, Inc. and* |
| NEimer@eimerstahl.com | *CITGO Petroleum Corporation* |
| LMeyer@eimerstahl.com |  |
| DBirk@eimerstahl.com |  |
| GSchweizer@eimerstahl.com |  |
| HBucher@eimerstahl.com |  |

|  |  |
|---|---|
|  | HEYMAN ENERIO GATTUSO & HIRZEL LLP |
|  | */s/ Brendan Patrick McDonnell* |
| OF COUNSEL: | Samuel Taylor Hirzel, II (#4415) |
| Joseph D. Pizzurro | Brendan Patrick McDonnell (#7086) |
| Kevin A. Meehan | 300 Delaware Avenue, Suite 200 |
| Juan O. Perla | Wilmington, DE 19801 |
| David V. Holmes | (302) 472-7300 |
| CURTIS, MALLET-PREVOST, COLT | shirzel@hegh.law |
| & MOSLE LLP | bmcdonnell@hegh.law |
| 101 Park Avenue New York, NY 10178 |  |
| (212) 696-6000 |  |
| jpizzurro@curtis.com |  |
| kmeehan@curtis.com |  |
| jperla@curtis.com | *Attorneys for Petróleos de Venezuela, S.A.* |
| dholmes@curtis.com |  |

7

| | |
|---|---|
| OF COUNSEL:<br>Donald B. Verrilli, Jr.<br>Elaine J. Goldenberg<br>Ginger D. Anders<br>MUNGER, TOLLES & OLSON LLP<br>601 Massachusetts Avenue NW<br>Suite 500 E<br>Washington, D.C. 20001<br>(202) 220-1100<br>Donald.Verrilli@mto.com<br>Elaine.Goldenberg@mto.com<br>Ginger.Anders@mto.com<br><br>George M. Garvey<br>Adeel Mohammadi<br>MUNGER, TOLLES & OLSON LLP<br>350 South Grand Avenue, 50th Floor<br>Los Angeles, CA 90071<br>(213) 683-9100<br>George.Garvey@mto.com<br>Adeel.Mohammadi@mto.com<br><br>March 31, 2025 | ABRAMS & BAYLISS LLP<br><br>/s/  *Christopher Fitzpatrick Cannataro*<br>A. Thompson Bayliss (#4379)<br>Christopher Fitzpatrick Cannataro (#6621)<br>20 Montchanin Road, Suite 200<br>Wilmington, DE 19807<br>(302) 778-1000<br>bayliss@abramsbayliss.com<br>cannataro@abramsbayliss.com<br><br>*Attorneys for Bolivarian Republic of Venezuela* |