IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | C.A. No. 17-mc-151-LPS |

**CRYSTALLEX INTERNATIONAL CORPORATION'S RESPONSE TO OBJECTIONS TO NOTICE OF SPECIAL MASTER'S RECOMMENDATION OF STALKING HORSE**

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
Zachary Kady
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166
Tel:  (212) 351-4000
Fax:  (212) 351-4035

Miguel A. Estrada
Lucas C. Townsend
Adam M. Smith
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
Tel:  (202) 955-8500
Fax:  (202) 467-0539

Dated:  April 3, 2025

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Tel:  (302) 651-7700
Fax:  (302) 651-7701

*Attorneys for Plaintiff*

Pursuant to the Court's Order, D.I. 1626, Crystallex respectfully submits this Response to the Objections filed by Rusoro Mining Limited ("Rusoro"), D.I. 1635, Gold Reserve Inc. ("Gold Reserve"), D.I. 1636, Koch Minerals SARL and Koch Nitrogen International SARL (collectively, "Koch"), D.I. 1638,[1] and the Venezuela Parties, D.I. 1639, concerning the Special Master's Notice of Recommendation ("Recommendation") of the bid submitted by Red Tree Investments, LLC ("Red Tree"), D.I. 1599, 1599-1, 1599-2, 1627.[2]

The Special Master correctly recommended Red Tree as the Stalking Horse because of the "combination of value and the certainty of the Proposed Transaction" contemplated in Red Tree's bid, D.I. 1599, ¶ 6, and because naming Red Tree as the Stalking Horse will "lead to a robust topping period and potentially elicit better bids for the PDVH Shares," whether from Red Tree or from another bidder, *id.* ¶ 7. As Gold Reserve accepts, "the purpose of a stalking horse bid is to 'establish a competitive floor or minimum bid,' for future bidding." D.I. 1636 at 6 (quoting *In re AE Liquidation, Inc.*, 866 F.3d 515, 519 n.3 (3d Cir. 2017)). The Red Tree bid does exactly that, in no small part because it is highly certain to close, which is a signal to other interested bidders that they must either participate in the Topping Period or else lose out on the opportunity to acquire PDVH through this Court's sale process. On the other hand, a bid that carries substantial closing risk could encourage potential competitors to bide their time and hope the sale falls through. It would also materially chill bidding by effectively eliminating bidders who cannot top the headline

---

[1] Though they each filed separate objections, Gold Reserve, Rusoro, and Koch are each part of a single consortium (the "Consortium") that submitted a combined bid (the "Gold Reserve Bid") that the Special Master declined to recommend as the Stalking Horse bid. *See* D.I. 1602-1 at 2.

[2] U.S. Bank N.A. ("U.S. Bank"), as trustee and collateral agent for the PDVSA 2020 Bonds, also filed a reservation of rights because, "[a]t this time, the Trustee and the Collateral Agent have not received or accepted a direction with respect to the [Red Tree] TSA or the Stalking Horse Agreement." D.I. 1637 at 2.

figure of the Gold Reserve Bid without taking on even more risk that could prevent the sale from closing.  And a process that results in multiple bids that are all subject to significant closing risks threatens to once again derail this Court's sale process and ultimately diminish the value obtained in exchange for the PDVH shares.  The Special Master was right to select as the Stalking Horse the highest-value bid that is the most likely to close, rather than to elevate an uncertain bid whose headline value would chill interest from serious bidders.

The objections to the Special Master's Recommendation ignore the fact that concerns about the 2020 Bondholders' ability to interfere with closing arise from the Gold Reserve Bid's financing structure, not from any abstract preference for a bid that contains a settlement with the 2020 Bondholders.  Specifically, for payments to be released to satisfy any of the Attached Judgments, the Gold Reserve Bid requires its newly created acquisition vehicle to be merged with CITGO Petroleum, i.e. below the CITGO Holding level.  D.I. 1599, ¶ 34.  But if the 2020 Bondholders prevail in their litigation and take control of 50.1% of CITGO Holding before that contemplated merger takes place, the merger could be blocked.[3]  The Gold Reserve Bid contains no plan to deal with that risk, nor to pay any of the Attached Judgments if it comes to pass.  While Gold Reserve may yet develop such a plan, without one it is not a viable Stalking Horse, and recommending it would have discouraged bidders attempting to satisfy as many Attached Judgments as possible without placing those payments at risk of closing conditions beyond this Court's control.

I. **The Red Tree Bid Should Be Confirmed As The Stalking Horse**

Crystallex joins the Special Master's Recommendation that the Red Tree bid be approved as the Stalking Horse.  The Red Tree bid is highly certain to close, as it is backed by financing

---

[3] It is also plausible that the 2020 Bondholders might obtain injunctions preventing mergers that they claim would impact the value of their lien on 50.1% of the shares of CITGO Holding, and the Gold Reserve Bid likewise contains no plan to account for this risk.

2

from JPMorgan Chase and Wells Fargo, subject only to "customary closing conditions" with any risk that the 2020 Bondholders would try to interfere with the disbursement of those funds to satisfy the Attached Judgment Creditors negated by Red Tree's proposed settlement with the 2020 Bondholders. *Id.* ¶¶ 25, 27, 41(d). Moreover, Red Tree agreed to reduce its termination fee to cover only actual and documented expenses, subject to a cap of $75 million, if the Stalking Horse Agreement is terminated prior to the Special Master's final recommendation. *Id.* ¶ 30.

The headline value of the Red Tree bid was the second highest of all bids received by the Special Master, but it is not subject to the closing risks tied to the Gold Reserve Bid (the only nominally higher bid), which are discussed in more detail below. Selecting Red Tree as the Stalking Horse is therefore consistent with the Court's "'objective … to achieve the highest, most robust Stalking Horse Bid possible from a bidder that intends to close on the purchase of the PDVH Shares.'" D.I. 1554, at 13 (quoting Gold Reserve and Rusoro, D.I. 1550 at 1-2).

At the moment, Red Tree is the only bidder whose bid is not subject to potential interference from competing claimants but still satisfies at least $3 billion in Attached Judgments, with the potential to satisfy additional Attached Judgments through non-cash consideration deals that remain to be negotiated. *See* D.I. 1599, ¶¶ 24, 39. Crystallex therefore supports the Special Master's Recommendation that the Red Tree bid be confirmed as the Stalking Horse.

**II. The Gold Reserve Bid Can Be Improved During The Topping Period, But It Is Not An Appropriate Alternative At This Stage**

The Gold Reserve Bid is not an appropriate Stalking Horse (or base bid) because it is not reasonably certain to close. The reason is simple: the Gold Reserve Bid relies on a loan to an acquisition vehicle that will be released and paid to Attached Judgment Creditors only when that vehicle is merged with CITGO Petroleum, thus placing the debt used to finance the transaction below PDVH, the company whose shares are being sold. *See id.* ¶ 34. Because the 2020

3

Bondholders claim to have a lien on 50.1% of the shares of CITGO Holding, CITGO Petroleum's parent, they could, if they prevail in litigation or obtain an injunction, prevent the merger between CITGO Petroleum and the acquisition vehicle that is at the heart of the Gold Reserve Bid. In that scenario, the purported $7.081 billion value of the Gold Reserve Bid is irrelevant as the deal would not close, and no Attached Judgment Creditors would be paid. It would be unacceptable for this Court, the Special Master, and the Sale Process Parties to spend several more months, and millions more dollars, working towards a proposed sale that satisfies no one.

The Consortium and Venezuela Parties repeat *ad nauseam* the Court's instruction that "[t]he SPA and Evaluation Criteria shall NOT include any requirement or condition with respect to the 2020 Bond Entities other than that bidders acknowledge that the 2020 Bond Entities purport to have a pledge of 50.1% of the equity of CITGO Holding, Inc." D.I. 1517, ¶ 28; *see also* D.I. 1639 at 3. Rusoro also argues that it is nowhere "stated (or implied) that a settlement with the 2020 bondholders is **the** paramount condition/requirement of a debt-financed bid, as the Special Master now has made it." D.I. 1635 at 5 (emphasis in original). But the Special Master has not included any such condition. Rather, as explained above, the Gold Reserve Bid itself is effectively conditioned on the nonoccurrence of an adverse outcome in the 2020 Bondholder litigation.

To be sure, the Consortium is not unique in having relied on financing that requires a loan to be placed at a level below PDVH. D.I. 1599, ¶ 34 ("[T]hree bids, including the Proposed Transaction, contemplate a financing structure with obligors at or below [CITGO Petroleum Corporation]."). But "only Red Tree secured a settlement with the PDVSA 2020 Bondholders" that negates their ability to block that transaction and disrupt the sale. *Id.*

For this reason, the Court should not accord any weight to the Consortium's argument that their "proposed Stock Purchase Agreement does not include any condition or requirement

4

regarding the 2020 bondholders or their litigation." D.I. 1635, at 4. The Consortium's exclusive focus on the terms of their SPA is telling. To state the obvious, an SPA with an "obligation to close on [the] proposed Sale Transaction," *id.* at 5, is only as valuable as the financing behind it. The Consortium's failure to discuss the contingencies behind its financing is deliberate, as that financing is subject to completing a merger that could be blocked by the 2020 Bondholders if they take control of 50.1% of CITGO Holding. It is therefore not true that the Gold Reserve Bid "would deliver a $7.081 billion net purchase price to the Sale Process Parties and AJCs [] regardless of the outcome of the 2020 bondholder litigation." *Id.* (emphasis omitted). And it is far from improper for the Special Master to take into account closing risk created by the structure of the bid, whether it is explicit in an SPA or introduced through the backdoor of the bidder's financing.

Unlike Red Tree, the Consortium has no documented plan ensuring the funds are released and paid to the Attached Judgment Creditors if the 2020 Bondholders obtain control of CITGO Holding (or an injunction) before the sale closes. Crystallex understands the Consortium intends to find a solution if that problem arises. While Crystallex has no reason to doubt the Consortium's sincerity, a plan to find a solution later is no plan at all, and it is a far cry from "bear[ing] the risk of any collateral litigation that could affect the value of [the PDVH] shares," which the Consortium accepts is one of the two key guiding principles made clear by this Court's prior rulings. *Id.* at 6.

### III. Conclusion

For the foregoing reasons, and for the reasons identified in the Special Master's Recommendation, D.I. 1599, Crystallex respectfully submits that the Court should confirm the Red Tree bid as the Stalking Horse and proceed to a Topping Period in which bidders—including the Consortium—are encouraged to submit bids that further maximize the value of the PDVH Shares without compromising certainty of closing.

5

| | |
|---|---|
| OF COUNSEL:<br><br>Robert L. Weigel<br>Jason W. Myatt<br>Rahim Moloo<br>Zachary Kady<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York  10166<br>(212) 351-4000<br><br>Miguel A. Estrada<br>Lucas C. Townsend<br>Adam M. Smith<br>GIBSON, DUNN & CRUTCHER LLP<br>1700 M Street, N.W.<br>Washington, D.C.  20036<br>Tel:  (202) 955-8500<br>Fax:  (202) 467-0539<br><br><br>Dated: April 3, 2025 | */s/ Travis S. Hunter*<br>Raymond J. DiCamillo (#3188)<br>Jeffrey L. Moyer (#3309)<br>Travis S. Hunter (#5350)<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware  19801<br>(302) 651-7700<br>dicamillo@rlf.com<br>moyer@rlf.com<br>hunter@rlf.com<br><br>*Attorneys for Plaintiff* |