# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>            Plaintiff,<br><br>     v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>            Defendant. | Case No. 1:17-mc-00151-LPS |

**CONOCOPHILLIPS' RESPONSE TO OBJECTIONS TO
<u>SPECIAL MASTER'S RECOMMENDATION OF STALKING HORSE</u>**

Sale Process Parties Phillips Petroleum Company Venezuela Limited, ConocoPhillips Petrozuata B.V., ConocoPhillips Gulf of Paria B.V., and ConocoPhillips Hamaca B.V. (Plaintiffs in Cases No. 19-mc-00342-LPS, No. 22-mc-00264-LPS, and No. 22-mc-00464-LPS) ("ConocoPhillips") respectfully submit this response to the objections filed in response to the *Special Master's Recommendation of Stalking Horse* (D.I. 1599):

## STATEMENT

ConocoPhillips has participated as a Sale Process Party throughout the Special Master's efforts to market and sell the PDVH shares and is pleased that the most recent round of bidding resulted in multiple potentially actionable bids. ConocoPhillips is comfortable that this portion of the process was conducted professionally and in good faith, with the goal of obtaining the most value for the greatest number of Additional Judgment Creditors.

ConocoPhillips also believes that the Special Master's selection of the proposed stalking horse bidder resulted from considerable thought and that it was a reasonable exercise of his discretion. His decision to accord significant weight to the certainty of closing is, in ConocoPhillips' view, appropriate and in accordance with his obligations. It is also consistent with the feedback provided by *all* Sale Process Parties during the consultation process.

The objections that have been filed to the Special Master's recommendation make essentially two arguments. *First*, the objectors assert that the selection of the Red Tree bid violates this Court's ruling that there could be no requirement or condition with respect to the 2020 bonds. *Second*, they assert that the Special Master's selection of a bid which is approximately $3 billion lower than the Gold Reserve Consortium's bid violates his duty to maximize value, as well as the Delaware law requirement that the asset be sold to the highest bidder. The objections are not

frivolous, but ConocoPhillips believes that they should not persuade the Court to disapprove the Special Master's recommendation.

***Is the Special Master's recommendation inconsistent with the Court's prior rulings?*** The objectors criticize the Special Master for taking into consideration the likelihood of a bidder being able to close in the face of the 2020 bondholder litigation. They assert that this consideration was prohibited by the Court. ConocoPhillips does not read the Court's Orders as supporting the objectors' position.

First, the Court's Memorandum Order Regarding Sale Process and Litigation says, "The SPA and Evaluation Criteria shall NOT include any requirement or condition with respect to the 2020 Bond Entities… ." (D.I. 1517 at 7.) This obviously does not exclude any consideration related to the 2020 bondholders, and the Evaluation Criteria approved by the Court contain an express reference to the 2020 bondholder litigation regarding the certainty of closing, which the objectors appear to ignore. Evaluation Criteria Number 2, "Certainty of Closing," authorizes the Special Master to evaluate "the certainty of closing associated with a given bidder and likelihood its applicable bid will successfully proceed to closing," and states that it "will be conducted with the following non-exhaustive list of considerations in mind: … b. Conditionality related to pending or future litigation (including with respect to the 2020 Bonds and the Alter Ego Claims) … ." (D.I. 1528-3 §2.b.)

The Court did preclude both bidders and the Special Master from making the closing under the SPA *conditional on a resolution* of the 2020 bondholder litigation. But, contrary to the objections, the Special Master was not precluded from taking the litigation into account in evaluating the likelihood that any particular bid would close. The Special Master's prioritizing of certainty did not impose a requirement that bidders reach a settlement with the 2020 bondholders;

2

there was more than one way that a bid could have avoided the uncertainty caused by the 2020 bondholder litigation. A resolution of that litigation would be irrelevant if a bidder either made a straight cash bid or did not propose to finance its bid with a structure that is reliant on the assets of CITGO Petroleum. The relevance of the litigation thus resulted from the bidders' decisions to use financing structures that the 2020 bondholders have already indicated they will oppose.[1]

In ConocoPhillips' view, the Special Master properly considered the certainty of closing to be an important criterion. No matter how large a bid might be, it will not get creditors paid if it cannot close. Indeed, although one objector has accused ConocoPhillips of being indifferent to the size of the bids because of its third-in-priority position, the choice of certainty actually cost ConocoPhillips payment on its second judgment, which is eighth in priority, which would be paid by the Gold Reserve bid but not by Red Tree's bid in its current form.

***Must the bid with the higher face value purchase price be selected?*** Each of the objectors makes the obvious point that a higher purchase price is preferable to a lower purchase price. All else being equal, that is correct, but it is also obvious that a purchase price, no matter how large, is only as good as its likelihood of closing. The Special Master assessed the conditionality of the bids and concluded that the Transaction Support Agreement included with the Red Tree bid creates greater certainty that such bid will close, making it the better bid to serve as the Stalking Horse.

Rusoro asserts that the Gold Reserve Consortium's bid is unconditional – that it has commitments from some of the world's largest banks and has agreed to close regardless of the status of the 2020 bondholder litigation. (D.I. 1635 at 3.) But as a practical matter, the bid in its

---

[1] ConocoPhillips does not intend hereby to concede that these financing structures with respect to CITGO Petroleum do violate the rights of the 2020 bondholders under the pledge of the CITGO Holding shares, which does not appear to be the case from the face of the documents.

current form *is* conditional because, as ConocoPhillips understands it, it is dependent on financing that requires the buyer to have access to the value of CITGO Petroleum, which the 2020 bondholders assert violates their pledge of the CITGO Holding shares. Further, Dalinar Energy, the Consortium's intended acquisition vehicle, is a shell company which does not appear today to have any source of capital to fund the bid in the scenario where they do not have access to the financing. ConocoPhillips therefore understands the Special Master's rationale to select *as a stalking horse* a bid that addresses closing risk with respect to the 2020 bondholders over a bid with a financing structure that will likely be subject to challenge.

Nonetheless, as the Special Master indicates, the stalking horse recommendation is not determinative of what the Special Master will ultimately recommend, and also does not limit the Court's discretion to select another bid. ConocoPhillips recognizes that the ultimate question of whether a higher, but more uncertain, bid is superior to a lower, but less conditional, bid is a difficult one that may ultimately have to be resolved by the Court. For present purposes, however, the question is whether the Special Master has made a reasonable stalking horse recommendation based on the facts and circumstances as they appear today. ConocoPhillips hopes that during the topping period, all bidders will consider whether they can modify their bids to remove conditionality so that the winning bid is both the highest and the best bid.

## CONCLUSION

WHEREFORE ConocoPhillips respectfully requests that the Court approve the Special Master's recommendation of the stalking horse bidder.

|  |  |
|---|---|
| | Respectfully submitted, |
| | ROSS ARONSTAM & MORITZ LLP |
| *Of Counsel*: | */s/ Garrett B. Moritz* |
| | Garrett B. Moritz (Bar No. 5646) |
| Michael S. Kim | Elizabeth M. Taylor (Bar No. 6468) |
| Marcus J. Green | 1313 North Market Street, Suite 1001 |
| Josef M. Klazen | Wilmington, Delaware 19801 |
| Lydia L. Halpern | (302) 576-1600 |
| KOBRE & KIM LLP | gmoritz@ramllp.com |
| 800 Third Avenue | etaylor@ramllp.com |
| New York, New York 10022 | |
| (212) 488-1200 | *Attorneys for Phillips Petroleum Company* |
| michael.kim@kobrekim.com | *Venezuela Limited, ConocoPhillips* |
| marcus.green@kobrekim.com | *Petrozuata B.V., ConocoPhillips Gulf of* |
| jef.klazen@kobrekim.com | *Paria B.V., and ConocoPhillips Hamaca B.V.* |
| lydia.halpern@kobrekim.com | |

Richard G. Mason
Amy R. Wolf
Michael H. Cassel
WACHTELL, LIPTON, ROSEN
 & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1000
RGMason@wlrk.com
ARWolf@wlrk.com
MHCassel@wlrk.com

Dated: April 3, 2025