IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:17-mc-00151-LPS |
| | ) | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**CITGO PETROLEUM CORPORATION AND PDV HOLDING, INC.'S
<u>MOTION TO COMPEL</u>**

CITGO Petroleum Corporation and PDV Holding, Inc. (together, the "CITGO Parties"), respectfully file this motion pursuant to Federal Rule of Civil Procedure 37(a)(1) to compel the Special Master to produce documents and communications related to his consideration of alternative procedures to the procedures that he recommended to the Court. In meet and confers, the Special Master's counsel said that he did "consider[] alternatives to the [current sale process]" ultimately recommended but rejected them. Ex. A at 1 (email correspondence from counsel for the Special Master to counsel for the CITGO Parties). Yet, the Special Master has objected to producing these documents and communications, and the parties have been unable to resolve those objections. These documents are relevant to the adequacy of the process recommended and employed by the Special Master, the adequacy of any recommended bid, and the likelihood that, if inadequate value is obtained from this round of the process, a better result could be obtained if the sale were run again, issues the Court likely will have to decide at the July 22–24, 2025 sale hearing. *See* Memorandum Order Regarding Sale Process and Litigation, D.I. 1517 ¶ 29 ("Any party may obtain limited discovery that is relevant to whether the Court should approve the bid the

1

Special Master recommends to the Court as his Final Recommendation and is proportional to the needs of the case."). This request is limited, and its scope is amply justified given the value at stake.

## NATURE AND STAGE OF PROCEEDINGS

The CITGO Parties first served draft discovery requests on the Special Master on August 9, 2024 in anticipation of a sale hearing. *See* Ex. B. The CITGO Parties' goal was to allow ample time for meeting and conferring and for the Special Master to collect, review, and produce documents in advance of depositions and the sale hearing, which, at the time, was set for November 19, 2024. *See* D.I. 1242. The CITGO Parties formally served a similar set of final discovery requests on the Special Master on October 16, 2024, Ex. C, and the Special Master responded to those requests on November 15, 2024, Ex. D. Thereafter, the CITGO Parties and the Special Master engaged in multiple meet and confers to discuss the requests and the production process, and also agreed to a confidentiality agreement that would govern further document productions. That confidentiality agreement was entered by the Court on February 5, 2025. D.I. 1555; D.I. 1556.

On December 31, 2024, the Court issued an order addressing discovery, among other things. The Court ordered that:

> The Special Master and any parties seeking discovery or from whom discovery is sought should meet and confer as soon as reasonably practicable and attempt to agree on a schedule for written discovery and document production. The Special Master and all parties from whom discovery is sought should produce responsive documents sufficiently in advance of scheduled depositions to allow for time to use such documents at the deposition. ***Responsive documents should be produced on a rolling basis as soon as they are available.***

D.I. 1517 ¶ 29 (emphasis added). Based on this order, the CITGO Parties and the Special Master engaged in multiple meet and confers throughout January and February 2025 regarding the need for document productions. The Special Master made a production of documents on February 7, 2025 and a small supplemental production on March 24, 2025 consisting of documents that were

2

initially withheld as privileged but on further review were not. The request at issue in this motion is Request No. 4 in the draft requests for production served on August 9, 2024 and the final requests for production served on October 16, 2024. In his November 15, 2024 responses, the Special Master did not object to Request No. 4 but in later communications, the Special Master changed his mind and took the position that Request No. 4 was not relevant because "Judge Stark has already chosen a process for selling the PDVH Shares." Ex. A at 1.

## LEGAL STANDARD

"On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Although the scope of discovery is "not unlimited," it is nevertheless "unquestionably broad." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "For purposes of discovery, relevancy is broadly construed." *Inventio AG v. ThyssenKrupp Elevator Am. Corp.*, 662 F. Supp. 2d 375, 380 (D. Del. 2009). Proportionality is based, in part, on "the amount in controversy." Fed. R. Civ. P. 26(b)(1); *United States v. Fed'n of Physicians & Dentists, Inc.*, 63 F. Supp. 2d 475, 478 (D. Del. 1999).

## ARGUMENT

Request No. 4 seeks "[a]ll documents and communications related to Your consideration of alternatives to the process for the sale of the PDVH stock recommended by the Special Master and ordered by the Court, including without limitation a public listing or offering of PDVH stock." Ex. D at 10.

Delaware law requires that a court-ordered sale of property achieve at least 50 percent of the property's fair market value. *Burge v. Fid. Bond & Mortg. Co.*, 648 A.2d 414, 419 (Del. 1994). "If the fair market value of the property is over twice the sales price, the price is considered to be

3

grossly inadequate, shocking 'the conscience of the court,' and justifying the setting aside of the sale." *Id.* (quoting 2 Victor B. Woolley, *Practice in Civil Actions in Delaware*, § 1121 (1906)). In addition, flaws or irregularities in the sale process are a basis for setting aside a sale. *Id*. ("Fraud, mistake, accident, impropriety, misconduct, surprise or irregularity in the sale process will support judicial invalidation of the sale.").

The procedures that the Special Master has employed can hardly be said thus far to have been a success. No bid submitted in the first stage of the process (i.e., before the Special Master's "pivot" to proposed new rounds of bidding late last year) would have yielded adequate value, and the now-defunct "preliminary" recommend bid from Amber Energy was at a grossly inadequate price, was riddled with contingencies, and after deductions and holdbacks would have provided only a fraction of its headline price to the Attached Judgment Creditors. *See* D.I. 1446-1 at 134–42 (Unredacted Stock Purchase Agreement of Amber Energy, Inc.); D.I. 1373-6 at 3–4 (CITGO, PDVH, and PDVSA) ("the proposed SPA suffers from fatal flaws in substance and in form, and because of these flaws could never be approved"); D.I. 1373-2 at 2–3 (Crystallex) (describing the proposed transaction as "likely to be opposed nearly unanimously by the creditors and by the debtors"); D.I. 1373-5 at 2 (AP Creditors) (describing the "Elliott bid" as "deficient in many key respects"); D.I. 1445 at 6 (Special Master) (acknowledging "the lack of public support from any parties-in-interest for either of the proposed Amber Energy transactions"). Now, the Special Master has recommended as the stalking horse bid a bid that would satisfy only $3.699 billion in Attached Judgments, with a not-yet-accepted proposal to provide some non-cash consideration to unspecified junior creditors. *See* D.I. 1596. By any serious estimate, that is a fraction of fair market value of the PDVH shares. While it remains to be seen whether any topping bid will provide greater value and whether and if so what the Special Master will recommend as a final successful bid, it

4

seems reasonable to anticipate significant disputed issues in the sale hearing related to both the value of the PDVH shares and the adequacy of the sale process, with billions of dollars in value at stake.

Because the adequacy of the process and the value it produces are at the heart of the Court's determination whether to approve a sale, whether different procedures might have produced a higher valuation is relevant. Indeed, the Special Master or others are likely to argue that, even if the value achieved is inadequate, they believe it unlikely that a better result could be obtained if the sale were conducted again. *See, e.g.*, D.I. 1527 at 3 (Special Master arguing that "the Court has given the Special Master the ability to walk away from a bid if he believes that the price is too low or that another bidder might make a superior offer in a subsequent marketing process"); *id.* at 4 (contending that "it is usually only appropriate to set aside a judicial sale under the 50% test where there has been evidence either (1) that a higher bid was likely to be made at a subsequent sale or (2) that there was lack of knowledge of the sale or confusion at the sale" (internal quotation marks omitted)). Whether different procedures could achieve a better outcome would be relevant to evaluating such an argument.

The Special Master agreed to produce documents in response to Request No. 4 in his November 15, 2024 responses to the CITGO Parties' discovery requests. Ex. D at 11. Later, the Special Master reversed course and objected to this request on the ground that "the Court has already resolved the disputes about how the sale process should be structured. Thus, the Special Master's previous consideration of alternatives to the current sale process have no bearing on whether a sale that is a product of that process will be confirmed." Ex. A at 6. But the Court's resolution of disputes over whether to employ the recommended procedures merely allowed the process to begin. It did not imply that the implementation or result of those procedures would be

5

adequate or exclude the possibility that different procedures might produce a better result. As noted above, these issues are likely to be argued at the Sale Hearing.

The Special Master has also asserted boilerplate objections based on burden and privilege. The burden objection is devoid of any detail as to the volume of documents or time required for review, yet counsel's email asserting the objection admits that the Special Master's "document review team" has already identified "documents that are responsive to RFP 4." Ex. A at 1. The privilege objection is likewise meritless—movants, of course, are not seeking production of any privileged documents.

## CONCLUSION

For the foregoing reasons, respectfully request that the Court grant the CITGO Parties' motion to compel and order the Special Master to produce documents responsive to RFP 4.

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | /s/ Alexandra M. Cumings |
| OF COUNSEL: | Susan W. Waesco (#4476) |
| Nathan P. Eimer | Alexandra M. Cumings (#6146) |
| Lisa S. Meyer | Kirk Andersen (#7156) |
| Daniel D. Birk | 1201 North Market Street |
| Gregory M. Schweizer | Wilmington, DE 19801 |
| Hannah Bucher | (302) 658-9200 |
| EIMER STAHL LLP | SWaesco@morrisnichols.com |
| 224 South Michigan Avenue | ACumings@morrisnichols.com |
| Suite 1100 | KAndersen@morrisnichols.com |
| Chicago, IL 60604 |  |
| (312) 660-7600 | *Attorneys for PDV Holding, Inc. and* |
| NEimer@eimerstahl.com | *CITGO Petroleum Corporation* |
| LMeyer@eimerstahl.com |  |
| DBirk@eimerstahl.com |  |
| GSchweizer@eimerstahl.com |  |
| HBucher@eimerstahl.com |  |

April 4, 2025