# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | ) |
| *Plaintiff*, | ) ) |
| v. | ) No. 1:17-mc-00151-LPS ) ) |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | ) ) |
| *Defendant*. | ) |

# THE VENEZUELA PARTIES' RESPONSES TO QUESTIONS
# POSED BY THE COURT'S APRIL 5, 2025 ORDER

The Venezuela Parties respectfully submit the following responses to the questions posed by the Court in its April 5, 2025 Order (D.I. 1668).[1]

1. **If the Court were to direct the Special Master to place no weight on the increased certainty of closing he associates with the TSA component of Red Tree's bid, would that alter his recommendation?**

If not for the weight he improperly placed on the TSA, the Special Master would have altered his recommendation because he would have had no basis for selecting Red Tree's bid—which was not the highest bid, does not maximize value for anyone but the 2020 Bondholders, and may not even maximize certainty of closing. *See* D.I. 1654 at 1–4.

2. **The Special Master's recommendation appears to imply that the increased certainty of closing he associates with the TSA component of Red Tree's bid is valued at $3.382 billion (i.e., $7.081 billion minus $3.699 billion equals $3.382 billion) is this correct?**

The Court is correct that the Special Master's recommendation implies that he values the increased certainty of closing purportedly associated with the TSA at $3.382 billion, if not more. However, the Special Master did not provide any rationale or analysis to support such an estimate, and in fact claimed that such an estimate would be "arbitrary." D.I. 1660 at 4.

3. **The Special Master is reserving the right to weigh the Evaluation Criteria differently in the Topping Period, and while a different approach makes it possible that a non-recommended Stalking Horse Bid may be recommended as the Final Bid, is such differential application consistent with the intent of a Topping Period, because it leaves bidders without clarity as to what they need to do to "top" the Stalking Horse Bid?**

The Special Master's suggestion that he *may* weigh the Evaluation Criteria differently in the Stalking Horse Round and in the Topping Period, D.I. 1596 ¶¶ 33, 35; D.I. 1660 at 3–4, is not consistent with facilitating robust, competitive bidding. Instead, the criteria should be the same at

---

[1] As with the Venezuela Parties' other filings, nothing in this filing should be construed to imply the Venezuela Parties' consent to a forced sale under any circumstances. The Venezuela Parties preserve all rights and positions, including on appeal.

both stages, and they should be the right criteria, namely, the maximization of value. Otherwise, no bidder will have any idea as to what it needs to bid to beat the Red Tree bid.

4. **Why did the Special Master not recommend the Red Tree bid as a Base Bid instead of a Stalking Horse Bid?**

The Special Master did not explain in his recommendation why he did not recommend the Red Tree bid as a Base Bid instead of a Stalking Horse Bid. Given that its bid was extraordinarily low, it does not make sense to offer even modified Stalking Horse Bidder protections.

5. **If the Court accepts the recommendation, should it expect Gold Reserve to renew its same bid during the Topping Period but also expect the Special Master to again reject it?**

The Venezuela Parties do not know if Gold Reserve would renew its same bid during the Topping Period. The Venezuela Parties also do not know if the Special Master would be expected to again reject Gold Reserve's bid if it is renewed on the same terms, because neither the Venezuela Parties nor anyone else (including bidders) know what criteria the Special Master will use to evaluate topping bids. That is in part why the Special Master should apply the same criteria and seek to maximize value at both stages of the process. If Gold Reserve were to renew the same bid in the Topping Period, and if the Special Master were to accept it, then the Special Master's selection of Red Tree would have completely frustrated the purpose of the Topping Period, which should be to incentivize higher bids than were submitted in the Stalking Horse Round.

6. **There appears to be a dispute as to whether the 2020 Bondholders can, legally and practically, reach a settlement with any bidder other than the Red Tree consortium. How does the Court resolve such dispute?**

The Court should resolve this dispute by (1) rejecting Red Tree as the Stalking Horse or Base Bidder, (2) directing the Special Master to give no weight to any settlement that a bidder has or may reach with the 2020 Bondholders when evaluating bids, and (3) reaffirming its prior orders that "the SPA and Evaluation Criteria shall NOT include any requirement or condition with respect

2

to the 2020 Bond Entities other than" to acknowledge their purported pledge as was done by Gold Reserve.  D.I. 1517 ¶ 28.

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | */s/ Alexandra M. Cumings* |
| OF COUNSEL: | Susan W. Waesco (#4476) |
| Nathan P. Eimer | Alexandra M. Cumings (#6146) |
| Lisa S. Meyer | Kirk Andersen (#7156) |
| Daniel D. Birk | 1201 North Market Street |
| Gregory M. Schweizer | Wilmington, DE 19801 |
| Hannah Bucher | (302) 658-9200 |
| EIMER STAHL LLP | SWaesco@morrisnichols.com |
| 224 South Michigan Avenue | ACumings@morrisnichols.com |
| Suite 1100 | KAndersen@morrisnichols.com |
| Chicago, IL 60604 |  |
| (312) 660-7600 | *Attorneys for PDV Holding, Inc. and* |
| NEimer@eimerstahl.com | *CITGO Petroleum Corporation* |
| LMeyer@eimerstahl.com |  |
| DBirk@eimerstahl.com |  |
| GSchweizer@eimerstahl.com |  |
| HBucher@eimerstahl.com |  |
|  | HEYMAN ENERIO GATTUSO & HIRZEL LLP |
|  | */s/ Brendan Patrick McDonnell* |
| OF COUNSEL: | Samuel Taylor Hirzel, II (#4415) |
| Joseph D. Pizzurro | Brendan Patrick McDonnell (#7086) |
| Kevin A. Meehan | 300 Delaware Avenue, Suite 200 |
| Juan O. Perla | Wilmington, DE 19801 |
| David V. Holmes | (302) 472-7300 |
| CURTIS, MALLET-PREVOST, COLT | shirzel@hegh.law |
| & MOSLE LLP | bmcdonnell@hegh.law |
| 101 Park Avenue New York, NY 10178 |  |
| (212) 696-6000 | *Attorneys for Petróleos de Venezuela, S.A.* |
| jpizzurro@curtis.com |  |
| kmeehan@curtis.com |  |
| jperla@curtis.com |  |
| dholmes@curtis.com |  |

3

| | |
|---|---|
| OF COUNSEL:<br>Donald B. Verrilli, Jr.<br>Elaine J. Goldenberg<br>Ginger D. Anders<br>MUNGER, TOLLES & OLSON LLP<br>601 Massachusetts Avenue NW<br>Suite 500 E<br>Washington, D.C. 20001<br>(202) 220-1100<br>Donald.Verrilli@mto.com<br>Elaine.Goldenberg@mto.com<br>Ginger.Anders@mto.com<br><br>George M. Garvey<br>Adeel Mohammadi<br>MUNGER, TOLLES & OLSON LLP<br>350 South Grand Avenue, 50th Floor<br>Los Angeles, CA 90071<br>(213) 683-9100<br>George.Garvey@mto.com<br>Adeel.Mohammadi@mto.com<br><br>April 9, 2025 | ABRAMS & BAYLISS LLP<br><br>*/s/ Christopher Fitzpatrick Cannataro*<br>A. Thompson Bayliss (#4379)<br>Christopher Fitzpatrick Cannataro (#6621)<br>20 Montchanin Road, Suite 200<br>Wilmington, DE 19807<br>(302) 778-1000<br>bayliss@abramsbayliss.com<br>cannataro@abramsbayliss.com<br><br>*Attorneys for Bolivarian Republic of Venezuela* |

4