IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Misc. No. 17-151-LPS |
| ) | |
| BOLIVARIAN REPUBLIC OF ) | |
| VENEZUELA, ) | |
| ) | |
| Defendant. ) | |

**SPECIAL MASTER'S RESPONSE IN OPPOSITION TO CITGO PETROLEUM CORPORATION AND PDV HOLDING, INC.'S MOTION TO COMPEL**

Robert B. Pincus, in his capacity as special master (the "**Special Master**") in the above-captioned case, respectfully submits this response in opposition to the motion to compel (D.I. 1663, the "**Motion**") filed by CITGO Petroleum Corporation and PDV Holding, Inc. (together, the "**CITGO Parties**").[1]

## INTRODUCTION

On December 31, 2024, "having carefully considered the best way for the . . . Sale Process to proceed," the Court issued an order outlining the procedures the Court and the parties would follow with the Sales Process moving forward. D.I. 1517 at 1. The Court also ordered that "[a]ny party may obtain limited discovery that is relevant to whether the Court should approve the bid the Special Master recommends to the Court as his Final Recommendation and is proportional to the needs of the case." *Id.* ¶ 29.

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Procedures Order, D.I. 481 (the "**Sale Procedures Order**") or the December 31, 2024 Order, D.I. 1517.

Following that Order, the Special Master met and conferred with the CITGO Parties (as well as with the Sales Process Parties and Additional Judgment Creditors) to discuss the appropriate scope and timing for discovery. Since then, the Special Master has produced on a rolling basis, more than 2,500 documents responsive to CITGO's discovery requests including documents relating to his evaluation of the PDVH Shares, antitrust concerns expressed by potential bidders, his communications with the U.S. Government, the effects of the energy transition, the need for OFAC approval, the alter ego cases filed against PDVH, and the effects of the design of the sale process on the value that may be received for the PDVH Shares.[2]

The Special Master's counsel are currently reviewing documents generated in connection with the Special Master's recommendation of a Stalking Horse and anticipate making a production of these documents within the next week. The Special Master plans to make additional productions following the Topping Period and his Final Recommendation.

Despite the Special Master's prior robust productions and ongoing efforts to collect (once the documents are generated), review, and produce additional documents relevant to whether the Court should approve the Special Master's Final Recommendation, the CITGO Parties burden the Court with a motion to compel documents related to an issue the Court already decided. Specifically, the CITGO Parties move to compel the Special Master to produce documents and communications related to his consideration of alternatives to the sale process ordered by the Court. Mot. at 3.

But that discovery is plainly not relevant to whether the Court should approve the Special Master's Final Recommendation. As the lengthy docket illustrates, after numerous rounds of

---

[2] The Special Master also produced a detailed categorical privilege log in connection with those productions.

proposals and objections, and hundreds of pages of briefing, the Court selected a process for selling the PDVH Shares two and a half years ago, and then further refined that process a few months ago. *See* Sale Procedures Order; D.I. 1517; D.I. 1554. The extent to which the Special Master, at some time in the past, may have contemplated some other process to sell the PDVH Shares is not germane to the limited issue that will be before the Court at the July hearing. The Court—not the Special Master—decided how the sale process will be conducted. And the Special Master's past subjective views on whether or not to recommend alternatives to the existing process have no bearing on whether the Court should approve the bid the Special Master ultimately recommends at the end of the process the Court already selected.

Nor would the burden of having the Special Master identify and produce these documents—at the expense of all of the other parties—be proportional to the needs of the case. Indeed, any communications on this topic—to the extent any exist—would most likely be between the Special Master and his advisors and would almost certainly be privileged.

The Court should deny the CITGO Parties' motion to compel.

## ARGUMENT

"A party moving to compel discovery bears the initial burden of proving the relevance of the requested information." *Kerwin v. Cage Fury Fighting Championships*, 2015 WL 5092976, at *1 (E.D. Pa. Aug. 28, 2015) (citation omitted). Relevance is "not without limitation, as '[t]he probative value of the information requested should be balanced against the costs and burdens imposed upon the producing party.'" *Re: XPRT Ventures, LLC v. eBay, Inc.*, 2011 WL 13142141, at *4 (D. Del. June 15, 2011) (citation omitted). The Court has already defined the relevant scope of discovery in these proceedings. As noted above, the Court's December 31, 2024 Order provides that "[a]ny party may obtain ***limited*** discovery that is ***relevant*** to whether the Court should approve the bid the Special Master recommends to the Court as his Final Recommendation and is

3

*proportional* to the needs of the case." D.I. 1517 ¶ 29 (emphasis added).  The request at issue does not comport with the Court's direction.

*First*, it is the Court, not the Special Master, that determined how the sale process will be conducted.  The sale process is set forth in the Sale Procedures Order, which this Court entered following a year-and-a-half-long collaborative process in which the Special Master, the judgment creditors, the Venezuela Parties, and other interested parties provided extensive input on the design and process for the sale of the PDVH Shares.  *See* Sale Procedures Order.  The Sale Procedures Order went through six rounds of revisions, *see* D.I. 302, 341-1, 391-1, 411-1, 451-1, 472-1, and two rounds of objections, *see* D.I. 316, 317, 319, 456, 457, before it was ultimately ordered by the Court.  Moreover, over the last several months, the Court sought additional input from all parties on the structure and design of the sale process.  *See, e.g.*, D.I. 1433; D.I. 1493.  The parties filed hundreds of pages of briefing expressing their views on how the sale process should be carried out moving forward, culminating in detailed orders setting forth additional sale procedures.  *See* D.I. 1517, 1554.  Accordingly, discovery aimed at rehashing the Court's selection of sale procedures has no bearing on whether the Court should approve the bid the Special Master recommends as his Final Recommendation.

*Second*, the Special Master's subjective views and opinions on alternatives to the sale process the Court selected are not relevant to the approval of a recommended bid.  Should the CITGO Parties wish to argue that the final bid recommended by the Special Master represents "inadequate value," they are free to argue that "a better result could be obtained if the sale were run again" using a different procedure. Mot. at 1.  The CITGO Parties will have the opportunity to present their own views and opinions about whether and why a different procedure would be likely to produce a different result.  But the Special Master's past consideration of alternatives that

4

were neither recommended by the Special Master nor ordered by the Court is of no moment to any issue presently before the Court.

The CITGO Parties argue that "whether different procedures might have produced a higher valuation is relevant" because "the adequacy of the process and the value it produces are at the heart of the Court's determination whether to approve a sale." Mot. at 5. But the Court has "endeavored for years to formulate and implement a process that will result in a Successful Bid that is value-maximizing and also reflective of the fair market value of the PDVH Shares." D.I. 1554 at 4. Accordingly, the Court has explained that, "while not dispositive, '[t]he price that results from the Marketing Process will be the best evidence that exists of the fair market value of the PDVH Shares taking into account the benefits and risks associated with this unique asset.'" *Id.* (alteration in original) (quoting D.I. 1522 at 5). Moreover, the Court noted that "to the extent the Venezuela Parties may view the successful bid as too low, the Venezuela Parties could simply pay what they owe[] and avoid the sale process altogether." *Id.* at 5 (alteration in original) (quoting D.I. 1521 at 4). Within that context, the Special Master's subjective consideration of "alternatives to the process for the sale of the PDVH stock recommended by the Special Master and ordered by the Court," D.I. 1663-4 ¶ 4, has no bearing on "whether the Court should approve the bid the Special Master recommends to the Court as his Final Recommendation," D.I. 1517 ¶ 29.

*Finally*, requiring the Special Master to collect and produce documents regarding his subjective consideration of "alternatives to the process for the sale of the PDVH stock" would not be proportional to the needs of this case. Although these documents were likely captured by the broad search terms the Special Master agreed to last Fall (the Special Master's counsel collected wide-ranging documents for what was anticipated to be an extremely condensed discovery period in connection with the preliminary recommendation of Amber Energy Inc. as the Successful

5

Bidder), it will be difficult for the Special Master to now isolate documents responsive to this request. At the time, although the Special Master did not see the relevance of the request, the Special Master agreed to collect and, at the appropriate time, produce documents responsive to this request in an effort to avoid discovery disputes and streamline the discovery process. But the situation has changed significantly since then. To now locate the documents responsive to this request, the Special Master's counsel would have to undertake another time consuming and expensive round of review.

Furthermore, because the Special Master's discussions about how to structure the sale process would have included his legal advisors, it is likely that most, if not all, of the responsive documents either involve legal advice that is protected by the attorney-client privilege or constitute work product that was prepared in anticipation of litigation. *See Kickflip, Inc. v. Facebook, Inc.*, 2016 WL 5929003, at *7 (D. Del. Sept. 14, 2016) (documents that "reflect mental impressions and opinions of the attorneys involved" contain "opinion work product"); *Rohm & Haas Co. v. Brotech Corp.*, 815 F. Supp. 793, 797 (D. Del. 1993) ("Drafts often contain information and communications relating to the subject matter of the document, including, for example, proposed material to be included, suggested additions and deletions, and comments on the contents, all of which are intended to be considered confidential between attorney and client and not intended for public disclosure."), *aff'd*, 19 F.3d 41 (Fed. Cir. 1994). Requiring the Special Master to search for and produce documents responsive to this request, would therefore mean that his counsel would have to spend considerable time and effort—at the parties' expense—locating documents that would mostly be withheld on the basis of privilege and then preparing a privilege log. That effort would not be proportional to the needs of this case.

## CONCLUSION

For the foregoing reasons, the Special Master respectfully requests that the Court deny the CITGO Parties' motion to compel.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | POTTER ANDERSON & CORROON LLP |
| OF COUNSEL: |  |
|  | By: */s/ Myron T. Steele* |
| Matthew S. Barr (Admitted *pro hac vice*) | Myron T. Steele (#0002) |
| David Lender (Admitted *pro hac vice*) | Matthew F. Davis (#4696) |
| Jared R. Friedmann (Admitted *pro hac vice*) | Bindu A. Palapura (#5370) |
| Chase A. Bentley (Admitted *pro hac vice*) | Hercules Plaza, 6th Floor |
| WEIL, GOTSHAL & MANGES LLP | 1313 North Market Street |
| 767 Fifth Avenue | P.O. Box 951 |
| New York, New York 10153 | Wilmington, DE 19801 |
| Telephone: (212) 310-8000 | Telephone: (302) 984-6000 |
| Facsimile: (212) 310-8007 | Facsimile: (302) 658-1192 |
| Matt.Barr@weil.com | msteele@potteranderson.com |
| David.Lender@weil.com | mdavis@potteranderson.com |
| Jared.Friedmann@weil.com | bpalapura@potteranderson.com |
| Chase.Bentley@weil.com |  |
|  | *Counsel for Special Master Robert B. Pincus* |
| Dated: April 11, 2025 |  |
| 12170817 / 21202.00001 |  |