# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>　　　　Defendant. | Case No. 17-mc-151-LPS |
| RUSORO MINING LTD.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>　　　　Defendant. | Case No. 21-mc-481-LPS |
| KOCH MINERALS SARL and KOCH NITROGEN INTERNATIONAL SARL,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>　　　　Defendant. | Case No. 21-mc-156-LPS |
| GOLD RESERVE INC.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>　　　　Defendant. | Case No. 22-mc-453-LPS |

**KOCH'S ANSWERING BRIEF ON QUESTIONS IN APRIL 5, 2025 ORAL ORDER**

Koch Minerals SARL and Koch Nitrogen International SARL ("Koch") respectfully submit this response in respect of the April 5, 2025 Oral Order and joins the response briefs of their Consortium members Gold Reserve and Rusoro.[1]

I. **The Special Master's Recommendation Benefits Only the 2020 Bondholders and Harms the Attached Judgment Creditors**

Throughout this sale process, the Court has been consistent and clear in setting, as its singular purpose, the maximization of sale proceeds for the benefit of the parties with valid attached judgment liens against the shares of PDVH.[2] However, the Special Master's responses to the Court's questions suggest that he has instead taken a path that leads away from this outcome. By establishing a settlement with the 2020 Bondholders as the de facto determinative factor in his evaluation of bids, trumping even a $3.382 billion price premium, the Special Master has recommended a bid that would indeed lead to a competitive auction and bidding process – not for the shares of PDVH, but for a settlement with the 2020 Bondholders, and to the detriment of the AJCs. This ignores both the Court's direction and the clear Evaluation Criteria.

The rationale underpinning the Special Master's proposed selection of the Stalking Horse Bid, rather than increasing competition and value for the PDVH Shares, would place ***all*** value to the AJCs at risk by incenting bidder actions that would maximize value of a settlement with the 2020 Bondholders. The Court should reject the Recommendation, thereby precluding the 2020 Bondholders from taking control of the sale process. Such direction would ensure the ability of the sale process to achieve its core objective of maximizing value to the AJCs.

---

[1] Capitalized terms used herein shall have the same meaning as used in the Consortium members' prior briefing on their objections to the Recommendation.

[2] *See, e.g.*, (D.I. 481, at ¶¶ D, H, 33, 36) (the goal of the Sale Process is to "ensure a value maximizing sale process" that "result[s] in the highest offer in connection with any Sale Transaction at least sufficient to satisfy the Attached Judgments").

1

     **A.    This Purpose to Maximize Value to the AJCs – not the 2020 Bondholders – is Why the Court Refused to Make a Settlement with the 2020 Bondholders Part of the Evaluation Criteria**

The Special Master's prioritization of the 2020 Bondholders runs counter to the Court's explicit directive that "[t]he SPA and Evaluation Criteria shall NOT include any requirement or condition with respect to the 2020 Bond Entities other than that bidders acknowledge" the existence of their purported claims. (D.I. 1517 ¶ 28) (emphasis original).[3]  This direction followed the Court's rejection of the Amber Energy bid, where it held decisively that no such "conditioning" or "requirement" should be included in the present SPA and Evaluation Criteria:

> *28. The SPA and Evaluation Criteria shall NOT include any requirement or condition with respect to the 2020 Bond Entities other than that bidders acknowledge that the 2020 Bond Entities purport to have a pledge of 50.1% of the equity of CITGO Holding, Inc., which is disputed by the Venezuela Parties and is subject to active litigation.*

(D.I. 1517, at ¶ 28).  Despite this language, Red Tree/Contrarian made their purported settlement of this litigation, effectively negotiated with themselves, a critical component of their bid.  In turn, by his own admission, the Special Master not only considered it as a factor, but viewed the 2020 Bond Entities' recoveries as the *deciding factor* in his evaluation.  In his Response, the Special Master tells the Court that he "anticipates that he would recommend that the Court select the Gold Reserve Bid as a Base Bid if the Court were to direct the Special Master to place no weight on the increased closing certainty associated with the TSA."  (D.I. 1679 at p. 1).  Without such direction, he asserts a willingness to select the Gold Reserve bid as the Final Recommended Bid, if it would be improved through, in substance, a settlement with the 2020 Bondholders. (*Id*. at p. 6).

The Red Tree Bid is engineered to address a risk that Red Tree itself created – i.e., the

---

[3] *See also* Dec. 13, 2024 Hrg. Tr. 193:1-2 (The Court: "[W]ith respect to the 2020's . . . bidders would have to acknowledge their existence and nothing else."); D.I. 1554 at 23 ("The Court has already determined that the SPA will not include any requirement or condition with respect to the 2020 Bond Entities other than certain acknowledgements").

2

threat to bring litigation to interfere with a Sale Transaction by any other debt-financed bidder. On the back of this risk, Red Tree has formulated a proposal that would strip $3.382 billion in value from the AJCs (and the Venezuela Parties) for the benefit of parties that <u>do not</u> have attached judgments in these proceedings or even a final judgment in their own proceedings.[4]

## II. The Special Master's Recommendation Cedes Control of the Sale Process to the 2020 Bondholders, the Only Parties who Stand to Benefit from the Topping Period

If the Court accepts the Special Master's Recommendation, then his role during the Topping Period would be substantially diminished. The only parties with whom any bidder will negotiate will be the 2020 Bondholders, who now assert they "may still negotiate an Alternative Transaction as long as 'such Alternative Transaction provides for financial terms and conditions on par with or more favorable to the 2020 Notes than the financial terms' in the TSA." (D.I. 1675, at p. 6 n.4).[5] And the Special Master has now clearly elevated the settlement with the 2020 Bondholders to the single most important factor in the Evaluation Criteria.

With his Recommendation, the Special Master has in effect directed each and every bidder to cease all effort to increase its bid and focus all efforts on maximizing value to the 2020 Bondholders to obtain their consent to pursue an Alternative Transaction. The Special Master has no role in that process. If the Red Tree Bid is selected as the Stalking Horse Bid, bidders will have only two choices: (1) drop out of the bidding process; or (2) negotiate a settlement with the 2020 Bondholders. This will create a 30-day mad dash to make the best possible deal to the 2020 Bondholders to win their approval.

---

[4] The Special Master's Recommendation would consequently give a substantial windfall to the 2020 Bondholders in the event that they lose in the SDNY Litigation, with no mechanism for the AJCs or the Venezuela Parties to recover this lost value.

[5] In reality, any bidder's efforts to negotiate a purported "Alternative Transaction" would likely be a fool's errand, as Red Tree/Contrarian's chokehold on the 2020 Bondholders control group would make it incredibly unlikely for that group to support any bid other than the Red Tree Bid.

*First*, this means that any incremental value created during the 2020 Bondholders Topping Period will provide no benefit to the AJCs. The amount of the bids will not increase, and may reasonably be expected to decrease to become a source of value for more competitive settlement offers to the 2020 Bondholders. The only increase (if any) will be to the amount the 2020 Bondholders receive to settle their un-litigated, contingent, disputed claims that have not been reduced to judgment and has not attached to the PDVH Shares. *Second*, this means there will be no options for the Special Master to consider. Because the 2020 Bondholders can terminate the TSA if they agree to a settlement with an alternative bidder, any bidder that reaches the best settlement with the 2020 Bondholder will assume sole possession of the advantaged position the Special Master has now admitted is his most important criterion – a settlement with the 2020 Bondholders – despite any decrement in the PDVH Shares purchase price (at least up to $3.383 billion).

Thus, the Court's approval of the Red Tree Bid as the Stalking Horse Bid would effectively mean directing the Special Master to stand down during the 2020 Bondholders Topping Period, let the 2020 Bondholders complete their negotiations with the bidders, and then wait for the 2020 Bondholders to tell the Special Master which bidder obtained their vote.

The Court should not permit this violation of its prior orders and the irreparable harm it does to the AJCs, the only proper beneficiaries of this process. For these reasons, and the reasons set forth in the Consortium's prior briefs, Koch respectfully requests that the Court reject the Special Master's Recommendation.

Dated: April 11, 2025

Respectfully submitted,

| **WOMBLE BOND DICKINSON (US) LLP** | **STINSON LLP** |
|---|---|
| By: _/s/ Kevin J. Mangan_<br>Kevin J. Mangan (#3810)<br>Matthew P. Ward (#4471)<br>Stephanie S. Riley (#5803)<br>1313 N. Market St., Suite 1200<br>Wilmington, DE 19801<br>Telephone: 302-252-4320<br>Kevin.mangan@wbd-us.com<br>Matthew.ward@wbd-us.com<br>Stephanie.riley@wbd-us.com | Nicholas J. Zluticky (MO # 61203)<br>(*pro hac* granted)<br>1201 Walnut, Suite 2900<br>Kansas City, MO 64106<br>Telephone:  816-691-3278<br>nicholas.zluticky@stinson.com |