# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP.,<br><br>　　Plaintiff,<br><br>　　v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>　　Defendant. | Misc. No. 17-151-LPS |

**REPLY OF 2020 BONDHOLDERS TO THE APRIL 11, 2025 SUBMISSIONS**

The 2020 Bondholders respectfully submit this response to the April 11, 2025 submissions concerning the Court's April 5, 2025 Order. (D.I. 1668):

*First*, although Gold Reserve baldly asserts that its bid is consistent with the Pledge Agreement (D.I. 1696 at 3), it concededly proposes to borrow against CITGO's assets and upstream the proceeds to PDVSA creditors, impairing CITGO's assets and directly violating the Pledge Agreement's prohibition on the distribution of "profits and other distributions" on the Collateral following an Event of Default. (*See* D.I. 1677 at 4-6.) No party—including Gold Reserve—has ever explained how such upstreaming would not violate the Pledge Agreement. Contrary to Gold Reserve's assertion (D.I. 1696 at 3), this Court's January 17, 2025 Order did not purport to resolve whether particular financing structures comport with the Pledge Agreement. Instead, the January 17 Order *overruled* Koch's objection seeking "maximum flexibility" for bidders to "utilize CITGO assets when restructuring debts." (D.I. 1554 at 15-16) The 2020 Bondholders respectfully submit that the Court's general statement in the January 17 Order that bidders may utilize CITGO's assets post-closing (*see id.*) did not—as Gold Reserve suggests—license or authorize bidders to utilize CITGO's assets post-closing unlawfully or in violation of pre-existing rights and obligations.

*Second*, contrary to Rusoro's claims, the 2020 Bondholders have never issued an "ultimatum" that their claims be resolved as part of the Sale Process. (D.I. 1690 at 2-3.) As Rusoro points out, the 2020 Bondholders made that clear at the December 13, 2024 hearing. While bidders are not required to obtain the 2020 Bondholders' consent, the 2020 Bondholders have been equally clear that they will vigorously protect their rights against consummation of a bid—like the Gold Reserve bid—that would violate the Pledge Agreement and strip the value of

their Collateral, absent the 2020 Bondholders' consent.[1]  Indeed, the Court has acknowledged that the 2020 Bondholders "intend to challenge any future bid that involves the upstreaming of any funds from CITGO to pay creditors of PDVSA." (D.I. 1571 at 1.)  As many parties have pointed out, bidders can structure bids that do not implicate the 2020 Bondholders' rights *at all*, such as by paying cash or by borrowing against PDVH's (rather than CITGO's) assets.  Yet Gold Reserve deliberately chose a different path.

*Third*, while Gold Reserve argues that bids should not be conditioned on the 2020 Bondholders litigation and that its bid is not (D.I. 1696 at 1, 4), it fails to address its own financing commitments reportedly containing closing contingencies related to that litigation.

*Fourth*, Gold Reserve incorrectly claims that the 2020 Bondholder's ability to protect their rights requires the resolution of litigation in the Southern District of New York. (D.I. 1696 at 2.)  Gold Reserve is wrong.  No final judgment is required for the 2020 Bondholders to take action to prevent the consummation of a transaction that would violate their rights and impair the value of their Collateral.  (*See* D.I. 1661 at 3; D.I. 1677 at 3.)  The 2020 Bondholders' rights are not subject to a stay, and no party has asserted otherwise.

*Finally*, Koch inexplicably continues to misrepresent the TSA by suggesting that if Red Tree is selected as the Stalking Horse, the 2020 Bondholders can only negotiate an alternative transaction with financial terms equal to or better than the TSA.  (D.I. 1695 at 3.)  As repeatedly explained, that restriction does not apply unless and until Red Tree is selected as the Successful (i.e., final) Bidder by the Special Master.  (D.I. 1677 at 1-2.)

---

[1] Rusuro quotes a purported "ultimatum . . . demanding" a settlement but omits, among other things, that the language it cites applied to "objectionable financing structure[s]." (*See* D.I. 1690 at 2-3; D.I. 1677 at 6.)

2

Dated: Wilmington, Delaware
April 12, 2025

Respectfully submitted,

/s/Daniel A. Mason
Daniel A. Mason (#5206)
Sabrina M. Hendershot (#6286)
PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP
1313 North Market St., Suite 806
Wilmington, DE 19801
Telephone: 302-655-4410
Facsimile: 302-655-4420
Email: dmason@paulweiss.com
Email: shendershot@paulweiss.com

*Counsel for the 2020 Bondholders*

OF COUNSEL:

Jeffrey J. Recher
Paul A. Paterson
Tyler B. Myers
PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: 212-373-3000
Facsimile: 212-757-3990
Email: jrecher@paulweiss.com
Email: ppaterson@paulweiss.com
Email: tmyers@paulweiss.com