# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION, <br><br>    Plaintiff, <br><br>v. <br><br>BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br>    Defendant. | Case No. 17-mc-151-LPS |
| RUSORO MINING LTD., <br><br>    Plaintiff, <br><br>v. <br><br>BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br>    Defendant. | Case No. 21-mc-481-LPS |
| KOCH MINERALS SARL and KOCH NITROGEN INTERNATIONAL SARL, <br><br>    Plaintiffs, <br><br>v. <br><br>BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br>    Defendant. | Case No. 22-mc-156-LPS |
| GOLD RESERVE INC., <br><br>    Plaintiff, <br><br>v. <br><br>BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br>    Defendant. | Case No. 22-mc-453-LPS |

## GOLD RESERVE'S REPLY REGARDING APRIL 5, 2025 ORAL ORDER

Gold Reserve respectfully submits this reply in respect of the Court's April 5, 2025 Oral Order and joins the reply briefs submitted by its bidding Consortium members Koch and Rusoro.

**1.   The Special Master, Not Gold Reserve, Set the Publication Rules for the Bid Papers**

Contrary to the unfounded accusations running though the briefs of Red Tree and the 2020 Bondholders, Gold Reserve did not determine what parts of its bid were filed publicly. *See, e. g.*, D. I. 1693 at 2 (2020 Bondholders) ("…Gold Reserve has refused to even disclose the financing arrangements underpinning its bid"). Those rules, as Red Tree well knows, were set by the Special Master, and they provide that only the financing papers of the recommended bidder would be filed. If Red Tree wants to amend those rules, it should request that relief from the Special Master and, if necessary, the Court, as Gold Reserve did when Red Tree improperly filed its TSA under seal.

**2.   Gold Reserve's Financing Structure Does Not Violate the Purported Pledge**

Contrary to the false premise of almost all the arguments made by Red Tree and its supporters, Gold Reserve's financing structure <u>does not</u> violate the purported Pledge held by the 2020 Bondholders. This is explained in Gold Reserve's response (D.I. 1696 at 4), and it is not disputed by the Special Master.[1]

**3.   The Assertion that Gold Reserve Has Not Attempted to Settle with the 2020 Bondholders is False**

The 2020 Bondholders make a material misrepresentation to the Court when they assert that Gold Reserve has never "contact[ed] the 2020 Bondholders to attempt to reach a settlement." (D. I. 1693 at 2). In fact, as the 2020 Bondholders know, Gold Reserve has repeatedly

---

[1] (D.I. 1596 at 13 (Recommendation): "For the avoidance of doubt, selection of Red Tree as the Stalking Horse, in part based on the existence of a settlement with the PDVSA 2020 Bondholders, shall by no means be interpreted as an admission by the Special Master that the financing structures in the other bids violate, or are likely to violate, the CITGO Holding Pledge.").

1

communicated with them in an attempt to reach a settlement, as did multiple other parties, and all such efforts were futile. Why? Because the 2020 Bondholders <u>will not</u> engage in actual settlement discussions with any party (other than themselves, i.e., Red Tree/Contrarian) until that party is designated by the Court as the lead bidder. The Special Master and all parties who have knowledge of the prior, failed discussions with the 2020 Bondholders know this is true, and also know that designating a 2020 bondholder like Red Tree/Contrarian as the stalking horse bidder will only exacerbate this critical problem.

4.  **It Is Wrong to Assert That There is a "Binary" Risk to the Consortium's Closing**

Another mistaken premise of the Red Tree position is that the 2020 Bondholders litigation creates a "binary" risk to the Consortium's closing. *See, e.g.*, D.I. 1692 at 3. This is self-serving, both its inaccuracy and oversimplification. In fact, the actual risk presented by the 2020 Bondholders litigation to the Sale Process, in addition to being so speculative as to defy reliable quantification, as the Special Master has stated, is so multi-faceted and compound that, even if it could be reliably quantified (which it cannot) it could never outweigh the $3.382 billion premium of the Consortium's bid.[2]

---

[2] This risk, properly understood, includes at least the following variables and risks: (1) the probability that if approved at the Sale Hearing, the Consortium is unable to negotiate a settlement with the 2020 Bondholders prior to Closing; (2) the probability that the 2020 Bondholders actually are able to exercise their rights under the Pledge, which probability itself is subject to at least three material risks: (a) the Pledge being invalidated, either by the SDNY, the Second Circuit or the SCT (any one of these is a distinct possibility given that the 2020 Bondholders have already had one prior judgment reversed by the Second Circuit); (b) OFAC keeping in place the stay of the 2020 Bondholders' ability to exercise the Pledge (which is highly likely given that this stay has been in place for 5+ years, since November 2019, and has no signs of being lifted); and (c) the SDNY independently staying the 2020 Bondholders (which also is a distinct possibility given that his what the SDNY did during the prior appeal); (3) the probability of each of these events occurring prior to the Consortium's closing, which could be as early as December 31, 2025; (4) the probability of the court finding that the Consortium bid violates the Pledge, which Gold Reserve previously explained it does not. The probability of these variables, each of which is highly uncertain, would be multiplied by each other and thus results in an exceptionally low probability that the 2020 Bondholders litigation presents any material risk to the Consortium's ability to close on the Sale Transaction.

Dated: April 12, 2025

Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/ Kevin J. Mangan*
Kevin J. Mangan (#3810)
Matthew P. Ward (#4471)
Stephanie S. Riley (#5803)
1313 N. Market St., Suite 1200
Wilmington, DE 19801
Telephone: 302-252-4320
Kevin. mangan@wbd-us. com
Matthew. ward@wbd-us. com
Stephanie. riley@wbd-us. com

**NORTON ROSE FULBRIGHT US LLP**
Matthew H. Kirtland (*pro hac vice*)
799 9th Street NW, Suite 1000
Washington, DC 20001
Telephone: 202-662-0200
Matthew. kirtland@nortonrosefulbright. com

- and -

Katherine G. Connolly (*pro hac vice*)
One Embarcadero Center, Suite 1050
San Francisco, CA 94101
Telephone: 628-231-6816
Katie. connolly@nortonrosefulbright. com

- and -

Taylor J. LeMay (*pro hac vice*)
1550 Lamar Street, Suite 2000
Houston, TX 77010
Telephone: 713-651-5151
Taylor. lemay@nortonrosefulbright. com

*Attorneys for Gold Reserve Inc. n/k/a Gold Reserve Ltd.*

3