# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>      Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>      Defendant. | Case No. 17-mc-151-LPS |
| RUSORO MINING LTD.,<br><br>      Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>      Defendant. | Case No. 21-mc-481-LPS |
| KOCH MINERALS SARL and KOCH NITROGEN INTERNATIONAL SARL,<br><br>      Plaintiffs,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>      Defendant. | Case No. 22-mc-156-LPS |
| GOLD RESERVE INC.,<br><br>      Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>      Defendant. | Case No. 22-mc-453-LPS |

## KOCH'S REPLY BRIEF ON QUESTIONS IN APRIL 5, 2025 ORAL ORDER

Koch Minerals SARL and Koch Nitrogen International SARL ("Koch") respectfully submit this response in respect of the April 5, 2025 Oral Order and join the reply briefs of their Consortium members Gold Reserve and Rusoro.

**I.    The Recommendation Forces Bidders to Settle With the 2020 Bondholders to Compete During the Topping Period**

The parties supporting the Red Tree Bid all agree that the Special Master's focus is no longer on the fundamental objective of achieving the highest price for the PDVH Shares; it is solely on minimizing the sale's exposure to the risk of a successful attack by the 2020 Bondholders (controlled by Red Tree and its cohort). These self-interested parties argue that mitigating this exposure is worth at least $3.382 billion even though (1) the loss in value is to the detriment of the AJCs, and (2) has been no assessment of the actual degree of incremental closing risk inherent to such exposure to the 2020 Bondholders. The Special Master's resulting lack of guidance on what is required to compete during the 2020 Bondholders Topping Period comes as no surprise, even after instruction by this Court that this is not "the intent of a Topping Period, because it leaves bidders without clarity as to what they need to do to 'top' the Stalking Horse Bid." (D.I. 1668).

The only practical path to a winning topping bid is exclusively through a "whatever it costs" pursuit of an alternative settlement with the 2020 Bondholders, deemed to be "economically superior" to the non-arm's length terms of the TSA that Red Tree effectively negotiated with itself. (D.I. 1688; D.I. 1693). Now, not only is Red Tree the recommended Stalking Horse (and beneficiary of bid protections), it is also the holder, via Contrarian, of 14% of the 2020 Bonds at issue in the SDNY litigation. The Special Master consequently has placed Red Tree in a position to purchase the PDVH Shares at a discounted price more than $3.382 billion *below* the current highest bid, while favorably resolving (to the detriment of the AJCs) Red Tree's disputed bond claims to mitigate any risk *to the 2020 Bondholders* associated with the SDNY litigation. (D.I.

1

1656 at 5). Delaware law requires that the sale proceeds go to the AJCs – not the 2020 Bondholders who support the Red Tree TSA. This windfall is a powerful incentive for Red Tree to defend the Special Master's Recommendation and block any alternative settlement.[1]

## II.     Red Tree Will Frustrate Any Attempts to Pursue an Alternative Transaction

The TSA does not and cannot happen without Red Tree's support. The 2020 Bondholders state that a two-thirds majority is necessary to enter into the TSA. As of March 21, 2025, just 65.7% of the bondholders joined the TSA. (D.I. 1596, n.5). Red Tree holds 14% of the 2020 bonds, comprising 21% of those bondholders who support the TSA, and approximately 42% of the group needed to block any alternative settlement with the 2020 Bondholders. Unless Red Tree casts its support behind the TSA or some other "economically superior" alternative agreement proposed by a competing bidder, the chances that there will be another resolution on behalf of the 2020 Bondholders are slim and, as stated in our previous Response, is likely to require a significant premium to the Bondholders and further discount to the AJC's.

Given the current circumstances, expecting another bidder to reach an alternative settlement with the 2020 Bondholders is neither practical nor reasonable. Red Tree cannot be expected to act against its own financial interests. Recusing themselves from settlement discussions with other bidders to be both expected and irrelevant. This is why negotiating a new settlement is futile. The Court should cast aside the Special Master's flawed approach, and refocus the balance of this sale process on maximizing value to the Attached Judgment Creditors.

---

[1] Red Tree's design to obtain Citgo at a steep discount to its value may be highlighted most clearly by the fact that they object so strenuously to a bid (the Gold Reserve bid) that would pay their claims in full in cash closing, when Red Tree's own bid would not deliver any cash proceeds to Red Tree at closing.

Dated: April 12, 2025

Respectfully submitted,

| **WOMBLE BOND DICKINSON (US) LLP** | **STINSON LLP** |
|---|---|
| By: */s/ Kevin J. Mangan* <br> Kevin J. Mangan (#3810) <br> Matthew P. Ward (#4471) <br> Stephanie S. Riley (#5803) <br> 1313 N. Market St., Suite 1200 <br> Wilmington, DE 19801 <br> Telephone: 302-252-4320 <br> Kevin.mangan@wbd-us.com <br> Matthew.ward@wbd-us.com <br> Stephanie.riley@wbd-us.com | Nicholas J. Zluticky (MO # 61203) <br> (*pro hac* pending) <br> 1201 Walnut, Suite 2900 <br> Kansas City, MO 64106 <br> Telephone: 816-691-3278 <br> nicholas.zluticky@stinson.com |