# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) No. 1:17-mc-00151-LPS ) ) |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | ) ) |
| *Defendant*. | ) |

**THE VENEZUELA PARTIES' MOTION REQUESTING**
**ADJOURNMENT OF THE JULY 22, 2025 SALE HEARING**

The Venezuela Parties[1] respectfully request entry of an order adjourning the Sale Hearing scheduled for July 22, 2025 until the week of September 2, 2025 or such dates thereafter that are convenient for the Court. The requested adjournment is necessary to provide the Special Master with sufficient time to select a recommended Successful Bid and for the parties to conduct adequate and orderly discovery, briefing, and preparations for the Sale Hearing.

## NATURE AND STAGE OF THE PROCEEDINGS

On December 31, 2024, this Court issued a Memorandum Order Regarding Sale Process and Litigation ("December 31 Order") setting out a schedule for the remainder of the Sale Process and setting a Sale Hearing to begin on July 22, 2025. D.I. 1517 at 9. Under that schedule, Stalking Horse Bids were due March 7, 2025; the Special Master was to file notice of his selection of a Stalking Horse Bid or Base Bid by March 14; a 30-day Topping Period was to begin by March 28; and the Special Master was to submit his Final Recommendation or ask the Court to schedule a multi-day live auction by May 16 (18 days after the close of the Topping Period and 67 days before the start of the Sale Hearing). *Id.* at 8–9.[2]

On March 14, 2025, the Special Master requested—and the Court granted—an extension of time to recommend a Stalking Horse Bid or Base Bid until March 17. D.I. 1590. At the Special Master's request, the Court again extended this deadline to March 20, D.I. 1591, and then to March

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* (D.I. 481) (the "Sale Procedures Order"). Nothing in this filing should be construed to imply consent to a forced sale. The Venezuela Parties preserve all rights and positions, including on appeal.

[2] In briefing before issuance of the December 31 Order, CITGO and PDVH asked the Court to "provide a reasonable discovery period of 60 days before objections briefing" and contended that "[i]t would be difficult, if not impossible, for document production, depositions, and briefing to occur in only 21 days." D.I. 1459 at 14.

1

21, D.I. 1595. The Court temporarily stayed briefing of objections to the Stalking Horse Bid while it adjudicated Stalking Horse Bidder Red Tree Investment LLC's ("Red Tree") motion to seal and Gold Reserve Inc.'s ("Gold Reserve") objections to the disclosures provided in support of the Special Master's recommendation, see D.I. 1605, then set a schedule for objections briefing that concluded on April 4. D.I. 1626. On April 5, the Court set a hearing on the Stalking Horse Bid objections for April 17 and requested additional briefing. D.I. 1668.

On April 21, the Court issued an Order ("April 21 Order") adopting the Special Master's Stalking Horse Recommendation, overruling objections to that Recommendation, and ordering the Special Master to submit a proposed order setting the beginning and ending dates for the Topping Period and deadlines for discovery and objections briefing leading up to the July 22 hearing. D.I. 1741 at 1–2. Under the Special Master's proposed revised schedule, which the Court adopted, the Topping Period was to begin on April 28 and conclude on May 28, one month later than originally scheduled in the December 31 Order, and the Special Master was to submit his Final Recommendation on June 11 (14 days after the end of the Topping Period and 41 days before the Sale Hearing, rather than the 67 days originally scheduled). D.I. 1745 at 2; see D.I. 1744-1 (Special Master's Proposed Form of Order).

On May 23, the Venezuela Parties filed a motion to extend the Topping Period by at least 21 days in light of the decision of the United States District Court for the Southern District of New York granting summary judgment in favor of PDVH and PDVSA on claims by PDVSA creditors Girard Street and G&A Strategic Investments seeking to hold PDVH liable for PDVSA's debts to them on an alter ego theory. See D.I. 1757. Stalking Horse Bidder Red Tree ultimately took no position on the motion, but "respectfully suggest[ed] that," if the Topping Period were extended, then "the Court [should] adjourn[] the Sale Hearing" accordingly. D.I. 1774 at 1. Red Tree

2

contended that "[a]n extension of the Topping Period should not come at the expense of the winning bidder's ability to prepare for and respond to objections to its bid" and that an adjournment of the Sale Hearing would "ensure the winning bidder is not prejudiced by the extension" of the Topping Period. *Id.* Separately, in responding to Red Tree's motion for entry of a discovery schedule, *see* D.I. 1756, the Special Master stated that, "in light of the Venezuela Parties' pending Motion to Extend the Topping Period and related filings, the specific dates in the Red Tree Motion may need to be adjusted if the Topping Period is extended, and based on any changes to the rest of the case schedule." D.I. 1772 at 2.

On May 30, the Court issued an Order (the "May 30 Order") granting the Venezuela Parties motion, extending the Topping Period to June 18, and setting a new schedule for the remainder of the Sale Process, D.I. 1779, but again did not adjust the hearing date. Under the May 30 Order, the Special Master is to submit his Final Recommendation on June 27, which is nine days after the end of the Topping Period and 25 days before the Sale Hearing, which remains scheduled for July 22. *Id.* at 2. Also on May 30, the Court issued an Oral Order directing the Special Master to "meet and confer with the relevant parties and file a proposed discovery schedule accounting for the recent 21-day extension of the Topping Period." D.I. 1780. The parties conferred between June 2 and June 3, and the Special Master filed a proposed discovery schedule on June 3. D.I. 1781. Under the proposed discovery schedule, the parties would have just 21 days (from the date of the Special Master's final recommendation to the close of the discovery period) to serve discovery, produce documents responsive to the discovery requests, review those documents, meet and confer regarding any objections to discovery, prepare objections briefs and expert reports, notice depositions, and take depositions to prepare for the Sale Hearing. *See id.* at 1–3. Objections are

3

due before much of the discovery is conducted, and briefing on objections will be complete before the conclusion of discovery. *See id.*

## LEGAL STANDARD

This Court has "broad inherent power to manage its own affairs so as to achieve the orderly and expeditious disposition of cases." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2024 WL 325133, at *2 (D. Del. Jan. 29, 2024) (cleaned up). "[T]his discretion also allows [the Court] to consider the relative prejudice to the parties who are before [the Court] that might arise from granting or denying the requested relief and also gives [the Court] the authority to consider the impact, if any, of [its] rulings on the ongoing sale process." *Id.* at *3. As relevant here, the Court's broad discretion "includes the authority to modify [its] prior orders," including existing hearing dates and sale process deadlines. *Id.* at *2.

## ARGUMENT

The Venezuela Parties have been working and will continue to work diligently and in good faith to conduct necessary discovery, prepare for the hearing, and meet the case and discovery deadlines set by the Court, including in the May 30 Order. The Venezuela Parties also understand the Court's effort to bring this long-running process to an end. But the Venezuela Parties respectfully submit that an adjournment of the Sale Hearing is warranted considering the repeated extensions of the bidding process that have left the period for post-Final Recommendation discovery and hearing preparation much shorter than the Court originally ordered. During and after the June 2 meet and confer, several relevant parties, in addition to the Venezuela Parties, expressed concerns that the current schedule does not allow enough time between the end of the Topping Period and the Special Master's Final Recommendation or for the parties to complete discovery, properly brief any objections, and prepare for the sale hearing.

4

The December 31 Order originally provided the Special Master with 18 days between the end of the Topping Period and the submission of his Final Recommendation. D.I. 1517 at 8–9. This period is crucial for maximizing value, as it gives the Special Master time to continue to go back and forth between bidders seeking to improve bids submitted at the end of the Topping Period and to generate competitive tension. *See* D.I. 1554 at 12–13. The December 31 Order also gave the parties 67 days between the recommendation and the hearing date, which allowed for time to take discovery from the Special Master, the recommended Successful Bidder (whose identity cannot be known until the recommendation date), and others *before* objections are due, brief objections, and prepare for a multi-day evidentiary hearing. D.I. 1517 at 9.

The required extensions to the Stalking Horse Period and the time needed to adjudicate the Stalking Horse Recommendation ate into the time originally allotted for discovery and hearing preparation, leaving only 14 days for the Special Master to make his recommendation and only 41 days between the recommendation and the hearing. The extension of the Topping Period, while helpful in facilitating new bids, further eroded the Special Master's time between the close of the topping period and the submission of the Final Recommendation to only 9 days, and the time between the recommendation and the hearing to a mere 25 days from the original 67 days. That leaves the Special Master with much less time to seek to maximize the sale price, which is especially important now that new bidders have appeared who may not be able to submit even initial bids until the end of the Topping Period and the time required to properly prepare for the hearing.

The compressed schedule also means objectors will have to file objections before document productions are substantially complete and before depositions can occur. As a result, new grounds for objections may arise after opening or even reply briefs are filed and will have to

5

be asserted for the first time at the hearing or in a filing for which there is now no provision. To be clear, in keeping with the Court's prior orders, the CITGO Parties long ago served discovery requests on the Special Master and other parties, and they have diligently sought responses and document productions from those parties. But that process is ongoing because several parties have asserted objections to the CITGO Parties' requests that have required meet and confers and supplementary productions, including on the ground that whether they should be required to produce documents depends on which bid is recommended as the Successful Bid. Moreover, under his proposed schedule, the Special Master does not intend to produce documents from the Topping Period until after he has filed his Final Recommendation and potentially not until as late as July 11 or later. (He describes the July 11 deadline as a "target" deadline given the possibility that he will not have enough time "to collect, review, and produce documents created through June 27" in that time frame (D.I. 1781 at 2, n.4)).[3] And the identity of the winning bidder, the terms of the proposed bid, and whether any competing bidders object will influence what parties seek discovery and what discovery they seek and are allowed to seek in support of their objections or responses.

The compressed schedule is imposing extraordinary and unnecessary pressures on the parties. For example, the parties now have:

- Only six days after submission of the Final Recommendation to draft objections briefs, which again they must do *before* they've received much if not most discovery;

- Only eight days (over the July 4 holiday weekend) to draft responses;

- Only four days after the meet and confer deadline to substantially complete the production of documents in response to discovery requests served after the Final Recommendation (assuming any disputes can be resolved without Court intervention—if not, there will be even less time);

---

[3] The Special Master's conviction that only a "target," not a deadline, can be set, including for his own discovery responses, demonstrates that the Special Master recognizes that the current schedule is impracticable.

6

- Only four days after the production deadline to conduct depositions; and

- Only four days between the end of discovery and the start of the hearing.

This schedule creates a meaningful risk (as Red Tree previously has contended, *see* D.I. 1774 at 1) of substantial prejudice to one or more parties. For instance:

- Parties may not be able to review or even receive document productions and incorporate relevant documents into their briefs, depositions, and/or expert reports;

- Parties may be unable to conduct or complete depositions in the four-day window contemplated in the Special Master's proposed discovery schedule given the number of witnesses who may need to be deposed and the number of parties that may wish to depose those witnesses;

- Neither the parties' counsel nor the witnesses may have enough time to review their deposition transcripts for accuracy before the hearing;

- Parties will not be able to make follow-up requests for documents revealed to be necessary by initial productions or other developments;

- Parties may not have enough time to adequately prepare their witnesses for cross examination;

- Given that, under the current schedule, discovery will continue after briefing concludes, parties may appear at the hearing with evidence and issues that have never been raised, addressed, or interrogated and to which other parties may not have an adequate opportunity to respond; and

- Parties may miss production deadlines, fail to produce responsive documents, or produce them after deadlines for noticing depositions or making other filings have passed.

In all events, under the current schedule, the discovery period and hearing are highly likely to be more disordered and less helpful than they otherwise could be (or would have been under the originally ordered schedule). For example:

- The ability of the parties to resolve discovery disputes among themselves will be diminished because there will be no time for meet and confers and internal deliberations;

- Parties may have to take discovery disputes to the Court for resolution on an emergency basis;

7

- Assuming that there will be multiple parties who will want to participate and put on witnesses at the sale hearing, their ability to coordinate with each other to eliminate redundant exhibits and prepare a joint exhibit list will be impossible—ultimately complicating and undermining the utility of the hearing;

- Similarly, parties will be unable to prepare deposition designations and video clips for use at the hearing, which could lead to further delays and inefficiencies at the hearing; and

- The many parties involved in this action will have difficulty coordinating an organized schedule for presentations at the hearing.

While, again, the Venezuela Parties understand the desire of creditors, bidders, and the Court to conclude the Sale Process, the above discussion makes clear that a modest adjournment is necessary. Nor is there any emergency or external deadline precluding an adjournment to allow for a more workable and less precarious schedule to prepare for a hearing that will adjudicate a matter involving billions of dollars. If the Sale Hearing were adjourned until the week of September 2, the Special Master could be given more time between the end of the Topping Period and the submission of a Final Recommendation, for instance until July 3 (15 days), leaving 61 days between the recommendation and the hearing. That is not excessively long, allows for substantial discovery to be completed before objections are due, and in fact is less than the 67 days originally allotted under the December 31 Order.

## CONCLUSION

The Venezuela Parties respectfully request that the Court adjourn the Sale Hearing until the week of September 2, 2025 or such dates thereafter as are convenient for the Court.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Alexandra M. Cumings*

| | |
|---|---|
| OF COUNSEL: | Susan W. Waesco (#4476) |
| Nathan P. Eimer | Alexandra M. Cumings (#6146) |
| Lisa S. Meyer | 1201 North Market Street |
| Daniel D. Birk | Wilmington, DE 19801 |

8

| | |
|---|---|
| Gregory M. Schweizer<br>Hannah Bucher<br>EIMER STAHL LLP<br>224 South Michigan Avenue<br>Suite 1100<br>Chicago, IL 60604<br>(312) 660-7600<br>NEimer@eimerstahl.com<br>LMeyer@eimerstahl.com<br>DBirk@eimerstahl.com<br>GSchweizer@eimerstahl.com<br>HBucher@eimerstahl.com | (302) 658-9200<br>SWaesco@morrisnichols.com<br>ACumings@morrisnichols.com<br><br>*Attorneys for PDV Holding, Inc. and CITGO Petroleum Corporation* |

| | |
|---|---|
| | HEYMAN ENERIO GATTUSO & HIRZEL LLP<br><br>*/s/ Brendan Patrick McDonnell*<br>Samuel Taylor Hirzel, II (#4415) |
| OF COUNSEL:<br>Joseph D. Pizzurro<br>Kevin A. Meehan<br>Juan O. Perla<br>David V. Holmes<br>CURTIS, MALLET-PREVOST, COLT & MOSLE LLP<br>101 Park Avenue New York, NY 10178<br>(212) 696-6000<br>jpizzurro@curtis.com<br>kmeehan@curtis.com<br>jperla@curtis.com<br>dholmes@curtis.com | Brendan Patrick McDonnell (#7086)<br>300 Delaware Avenue, Suite 200<br>Wilmington, DE 19801<br>(302) 472-7300<br>shirzel@hegh.law<br>bmcdonnell@hehg.law<br><br><br><br>*Attorneys for Petróleos de Venezuela, S.A.* |

| | |
|---|---|
| OF COUNSEL:<br>Donald B. Verrilli, Jr.<br>Elaine J. Goldenberg<br>Ginger D. Anders<br>MUNGER, TOLLES & OLSON LLP<br>601 Massachusetts Avenue NW<br>Suite 500 E<br>Washington, D.C. 20001<br>(202) 220-1100<br>Donald.Verrilli@mto.com<br>Elaine.Goldenberg@mto.com<br>Ginger.Anders@mto.com | ABRAMS & BAYLISS LLP<br><br>*/s/ Christopher Fitzpatrick Cannataro*<br>A. Thompson Bayliss (#4379)<br>Christopher Fitzpatrick Cannataro (#6621)<br>20 Montchanin Road, Suite 200<br>Wilmington, DE 19807<br>(302) 778-1000<br>bayliss@abramsbayliss.com<br>cannataro@abramsbayliss.com<br><br>*Attorneys for Bolivarian Republic of Venezuela* |

9

George M. Garvey
Adeel Mohammadi
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com
Adeel.Mohammadi@mto.com

June 3, 2025