IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>             Plaintiff,<br><br>     v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>             Defendant. | C.A. No. 17-mc-151-LPS |

**CRYSTALLEX INTERNATIONAL CORPORATION'S RESPONSE TO
THE VENEZUELA PARTIES' MOTION REQUESTING
<u>ADJOURNMENT OF THE JULY 22, 2025 SALE HEARING</u>**

| | |
|---|---|
| OF COUNSEL:<br><br>Robert L. Weigel<br>Jason W. Myatt<br>Rahim Moloo<br>Zachary Kady<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York 10166<br>Tel: (212) 351-4000<br>Fax: (212) 351-4035<br><br>Miguel A. Estrada<br>Lucas C. Townsend<br>Adam M. Smith<br>GIBSON, DUNN & CRUTCHER LLP<br>1700 M Street, N.W.<br>Washington, D.C. 20036<br>Tel: (202) 955-8500<br>Fax: (202) 467-0539<br><br>Dated: June 5, 2025 | Raymond J. DiCamillo (#3188)<br>Jeffrey L. Moyer (#3309)<br>Travis S. Hunter (#5350)<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware 19801<br>Tel: (302) 651-7700<br>Fax: (302) 651-7701<br><br>*Attorneys for Plaintiff* |

Pursuant to the Court's Order, D.I. 1783, Crystallex respectfully submits this Response to the Venezuela Parties' Motion Requesting Adjournment of the July 22, 2025 Sale Hearing (D.I. 1782).

The Venezuela Parties—for which no amount of diligence in the solicitation of bids for the PDVH Shares will ever suffice given that they object to a "forced sale," D.I. 1782, at 1 n.1—request what they again characterize as a "modest adjournment" of the Sale Hearing to enable them to engage in extensive discovery designed to support their inevitable argument that whatever value this Sale Process yields will be inadequate. D.I. 1782, at 8. The Venezuela Parties have consistently sought to delay this Court's Sale Process, and they regularly portray their attempts to do so as reasonable and modest when they are anything but. *See* D.I. 1273, at 1 (motion for "a short pause" in the Sale Process); D.I. 1642, at 1 (motion for "a short stay" of the Sale Process).

Indeed, a request to adjourn the Sale Hearing was previously raised *barely a week ago* in the course of expedited briefing on the Venezuela Parties' motion to extend the Topping Period and Red Tree's motion for a discovery schedule, and this Court has necessarily already rejected it. As the Venezuela Parties note (at 2), Red Tree asked the Court to "adjourn the Sale Hearing and related deadlines by a time equal to the length of the Topping Period extension." D.I. 1774, at 1. Crystallex, in contrast, asked this Court to make any adjustments to the remainder of the Sale Process with "a goal of maintaining the July 22 Sale Hearing date previously ordered by this Court," D.I. 1773, at 2, and took no position on Red Tree's motion for a discovery schedule on the condition that "such discovery and any related briefing will not delay the sale hearing scheduled for July 22, 2025," D.I. 1775, at 1. This Court necessarily rejected any request to adjourn the Sale Hearing when it granted the Venezuela Parties' motion to extend the Topping Period, adjusted

1

dates and deadlines for the remainder of the Sale Process, yet *maintained* the July 22, 2025 Sale Hearing date.  D.I. 1779.

That ruling should have been a hint to all interested parties that they should work to complete the "limited discovery" that this Court has indicated will be permitted in advance of that date, not an invitation to devise increasingly complex discovery plans that are not consistent with the nature of this judicial sale and use those party-driven plans as the occasion to rejigger the long-settled schedule—to have the tail of discovery wag the dog of the Sale Hearing.  D.I. 1517, at 8.  In fact, back in January, this Court informed the Venezuela Parties that they "should be using all reasonable efforts *now*, and continuously going forward, to gather the evidence necessary to attempt to make such a showing" and that the Court "will be strongly disinclined to grant any extension or modification to the governing schedule … to accommodate discovery or other evidence-gathering efforts that could have been pursued sooner."  D.I. 1554, at 3-4.

Nevertheless, the Venezuela Parties—who by their own admission have been conducting discovery of the Special Master since 2024, D.I. 1663, at 2, and who have been receiving productions on a rolling basis, D.I. 1691, at 2—object (at 3) that this Court has set a schedule in which there are only 21 days between the deadline for the Special Master's Final Recommendation and the conclusion of the discovery period.  *See* D.I. 1779.  But that is entirely in keeping with this Court's order that "[a]ny party may obtain *limited* discovery" that "is proportional to the needs of the case."  D.I. 1517, at 8 (emphasis added).  The Venezuela Parties' contention that additional time is needed rests on their apparent expectation to engage in full-blown case discovery that "far exceeds what this Court authorized" and is not "reasonable for a judicial sale."  D.I. 1775, at 1.  For example, the Venezuela Parties claim that there will be a large "number of witnesses who may need to be deposed" and a large "number of parties that may wish to depose those witnesses," D.I.

2

1782, at 7, even though this Court ordered that "[a]ny declarant or hearing witness shall be subject to a *single* deposition," D.I. 1517, at 8 (emphasis added). The detailed evidentiary hearing the Venezuela Parties are envisioning—involving countless exhibits, witnesses, "expert reports," and "video clips," D.I. 1782, at 7-8—is inconsistent with this Court's holding that "all Delaware law requires is a 'noticed auction of the PDVH shares.'" D.I. 469, at 2; *see Deibler v. Atl. Props. Grp., Inc.*, 652 A.2d 553, 557 (Del. 1995) (requiring only that "a reasonable process be employed to give notice to the public of the sale so that a reasonable price, *considering the forced sale nature of the transaction*, might be obtained" (emphasis added)).

There can be little dispute that the sale of the PDVH Shares is among the most public—and most extensively litigated—judicial sales in American history. The Court has "endeavored for years to formulate and implement a process" that will result in a value-maximizing judicial execution sale of the PDVH Shares. D.I. 1554, at 4. This Sale Process has been "extremely well-publicized, both by the Special Master himself through direct marketing, as well as the notices he has published and through the vast press coverage the proceedings and the Marketing Process have received." D.I. 1522, at 4. Under these circumstances, "[t]he price that results from the Marketing Process will be the best evidence that exists of the fair market value of the PDVH Shares." D.I. 1554, at 4. The notion that massive amounts of discovery are necessary to evaluate this Court's process is absurd. No amount of discovery or additional delay will render any evidence submitted on the PDVH Shares' value more credible than what the universe of bidders who had every opportunity to bid on the shares at arm's length were willing to pay for them.

This Court's Sale Process "provides the Venezuela Parties far more than what they are entitled to under Delaware law," and this Court should not indulge the Venezuela Parties' requests that "the Special Master [and] this Court" "jump through hoops created by" a "highly-recalcitrant

3

judgment debtor" keen on avoiding its obligations. D.I. 469, at 2; D.I. 234, at 37. There is no basis to adjourn the Sale Hearing for the purpose of permitting the Venezuela Parties to engage in extensive discovery that is transparently designed to second-guess the value to be obtained in this judicial-execution sale, whatever it might prove to be. To the extent the Venezuela Parties are dissatisfied with the value to be obtained in this "forced sale," D.I. 1782, at 1 n.1, the Venezuela Parties have had "every opportunity to pay [their] legitimate, Court-recognized debt[s]" and "[e]ven today" could pay what they owe and "avoid the sales process altogether." D.I. 234, at 37. Yet they have refused to do so and instead have raised "every conceivable challenge to this Court's approach" as part of "their ongoing efforts to prevent the Court from carrying out its judicial responsibilities." D.I. 1180, at 13.[1]

Indeed, this motion is simply the most recent installment in the Venezuela Parties' long-running campaign to obstruct and delay these judgment-enforcement proceedings. They have sought to quash Crystallex's writ of attachment on the ground that Crystallex had not seized a share certificate that they later admitted was "lost, stolen, or destroyed." D.I. 179; D.I. 645. They have repeatedly asked to delay this Sale Process until various future benchmarks of their own devising occur, such as the issuance of a specific OFAC license authorizing this Sale Process, D.I. 561, at 6-7, the resolution of the 2020 Bondholders' litigation, *id.* at 11; D.I. 1273, at 11-12; D.I.

---

[1] The Venezuela Parties also complain that maintaining the current Sale Hearing date requires the parties to engage in a relatively compressed schedule for briefing objections to the Special Master's Final Recommendation. D.I. 1782, at 6. But, as has become clear in this litigation, the parties in this proceeding are fully capable of briefing complex issues on expedited timelines. When the Venezuela Parties recently filed a motion to extend the Topping Period by 21 days, the parties and the Special Master filed responses within 72 hours, and the Venezuela Parties filed their reply 7 hours thereafter, all of which occurred during a holiday weekend. D.I. 1757-1768. The Special Master filed a further response the next day, and other parties filed their responses to that submission the day after. D.I. 1770-1777. There is no reason the parties cannot brief objections to the Special Master's Final Recommendation on a much more extended timeline. *See* D.I. 1779.

4

1642, the resolution of the Gramercy Parties' alter-ego litigation, D.I. 1273, at 9-11, or the moment when an opposition candidate to the Maduro regime—who has fled Venezuela in exile to Spain—"assumes the presidency" and "renegotiate[s] Venezuela's debt," *id.* at 2.  And they have moved to disqualify the Special Master or his financial advisors on three separate occasions.  D.I. 354; D.I. 509; D.I. 1138.  Each of these attempts to undermine this Court's sale process was unsuccessful, and the Venezuela Parties' latest attempt should meet a similar fate.

*     *     *

Over four years ago, this Court stated:  "Each day that Crystallex does not recover on its judgment is arguably something of an affront to the United States judicial system.  Those days must soon come to an end."  D.I. 234, at 38.  The current Sale Hearing date has been calendared since December 31, 2024, D.I. 1517, at 5, and all interested parties in these proceedings—the Special Master, the Sale Process Parties, Additional Judgment Creditors, and prospective bidders—have been (or should have been) preparing for a hearing on that date.  The time has come for the Sale Hearing to proceed, and any further delay will only prejudice Crystallex and other creditors who have waited more than a decade for justice.

The Venezuela Parties' motion to adjourn the Sale Hearing should be denied.

|  |  |
|---|---|
| OF COUNSEL: | _/s/ Travis S. Hunter_ |
|  | Raymond J. DiCamillo (#3188) |
| Robert L. Weigel | Jeffrey L. Moyer (#3309) |
| Jason W. Myatt | Travis S. Hunter (#5350) |
| Rahim Moloo | RICHARDS, LAYTON & FINGER, P.A. |
| Zachary Kady | One Rodney Square |
| GIBSON, DUNN & CRUTCHER LLP | 920 North King Street |
| 200 Park Avenue | Wilmington, Delaware  19801 |
| New York, New York  10166 | (302) 651-7700 |
| (212) 351-4000 | dicamillo@rlf.com |
|  | moyer@rlf.com |
| Miguel A. Estrada | hunter@rlf.com |
| Lucas C. Townsend |  |
| Adam M. Smith | _Attorneys for Plaintiff_ |
| GIBSON, DUNN & CRUTCHER LLP |  |
| 1700 M Street, N.W. |  |
| Washington, D.C.  20036 |  |
| Tel:  (202) 955-8500 |  |
| Fax:  (202) 467-0539 |  |

Dated: June 5, 2025