# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| BOLIVARIAN REPUBLIC OF VENEZUELA, Defendant. | ) No. 1:17-mc-00151-LPS<br>)<br>)<br>)<br>)<br>) |

## FOLLOW-UP QUESTIONNAIRE (No.2) ADDRESSED TO SPECIAL MASTER ROBERT PINCUS REGARDING PDVSA WORKERS' CLAIMS IN CITGO SALE PROCESS (CASE NO. 17-MC-151-LPS)

I respectfully request expedited attention to this matter not yet responded by the Special Master, which by the subject questions described below we deem them of the utmost importance, in order to get proper fairness and equity on behalf of these proceedings.

As a U.S. citizen, former employee of Petróleos de Venezuela, S.A. (PDVSA), member of **PetroAmigos de Venezuela**, and recognized interested party with an Entry of Appearance in the Citgo sale process (Case No. 17-mc-151-LPS), I respectfully submit this follow-up questionnaire concerning the court-ordered auction of PDV Holding, Inc. (PDVH) shares to satisfy $21.3 billion in claims against Venezuela and PDVSA. This follows my unanswered questionnaire of early May 2025 and my Motion for Relief and Intervention, filed May 27, 2025, seeking recognition of workers' damages (unpaid wages and pensions), creditor status, intervention under FRCP 24, and a stay or transfer to a Foreign Claims Settlement Commission (FCSC). The recent extension of the topping period to June 20, 2025, ongoing creditor objections (e.g., Vitol, Rusoro, Gold Reserve), and the lack of response to my prior inquiries necessitate this urgent follow-up, given deadlines for your Final Recommendation (June 27, 2025), objections (July 3, 2025), and the Sale Hearing (July 22, 2025).

My damages, stemming from PDVSA's commercial activities and mismanagement, are actionable under FSIA (28 U.S.C. § 1605(a)(2), (a)(3); *Simon v. Republic of Hungary*, 812 F.3d 127 (D.C. Cir. 2016)), with PDVSA as Venezuela's alter ego (*Crystallex Int'l Corp. v. Venezuela*, 333 F. Supp. 3d 380 (D. Del. 2018)). The sale's $21.3 billion oversubscription against Citgo's $11-13 billion value, exemplified by Red Tree Investments' $3.699 billion bid, risks excluding workers' claims absent equitable consideration (*In re Garlock Sealing Techs., LLC*, 504 B.R. 71 (Bankr. W.D.N.C. 2014)). This questionnaire seeks to ensure procedural fairness and statutory compliance, as requested in my May 14 2025 submission, and to support my motion's goals.

## QUESTIONNAIRE:

1. Given the topping period's extension to June 20, 2025, and my unanswered May 14 2025 questionnaire, will the Special Master recommend recognizing PDVSA workers' damages, including unpaid wages and pensions, as valid creditor claims in the Citgo sale, actionable under FSIA (*Simon v. Republic of Hungary*, 812 F.3d 127) and attachable to PDVH shares (*Crystallex*, 333 F. Supp. 3d 380)? [May 14 2025, Q2]

2. How will the Special Master's June 27, 2025, recommendation address the equitable exclusion of PDVSA workers' humanitarian claims (e.g., pensions critical to livelihoods), and would reserving funds or transferring claims to an FCSC, as proposed in my motion and supported by precedent (*Dames & Moore v. Regan*, 453 U.S. 654 (1981)), ensure fairness amidst the $21.3 billion oversubscription (*In re Garlock*, 504 B.R. 71)? [May 14 2025, Q3, Q4]

3. Will the sale proceeds distribution follow a "first-come, first-served" methodology, as implied by current creditor priorities (*Crystallex*), or an equitable distribution accounting for workers'

claims, particularly given creditor objections (e.g., Vitol, Rusoro) and the topping period's extension? [May 14 2025, Q6]

4. Considering Citgo's $1.2-2.0 billion annual EBITDA and the 2023 congressional FCSC proposal, would the Special Master recommend establishing a DOJ settlement commission to satisfy creditors and workers' claims without selling Citgo, mitigating risks to national security and stakeholder legitimacy, as requested in my motion? [May 14 2025, Q7a]

5. Would the Special Master support allowing PDVSA workers to file claims without immediate judgments, as unsecured claims are accepted in bankruptcy courts, to ensure equitable inclusion in the sale proceeds before the July 22, 2025, Sale Hearing? [May 14 2025, Q7b]

6. How will parallel lawsuits (e.g., Gramercy, Siemens) and OFAC requirements, unresolved as of June 2025, impact the consideration of workers' claims in your June 27, 2025, recommendation, and would a stay, as supported by judicial discretion (*Landis v. North American Co.*, 299 U.S. 248 (1936)), allow litigation of these claims? [May 2025, Q5, reframed]

**Request for Response**: I respectfully request a response by **June 23, 2025**, to ensure my claims are addressed before your Final Recommendation on June 27, 2025, and to inform my participation in the objection phase (July 3, 2025) and Sale Hearing (July 22, 2025). Your diligence under FRCP 53(f) is critical to preventing irreparable harm to PDVSA workers' claims, which risk exclusion from the sale's proceeds, as highlighted by ongoing creditor objections and public scrutiny (e.g., social media posts criticizing low bids).

Thank you for your attention. I am available to provide documentation (e.g., worker's records, media coverage as contained in the motion for relief and intervention already filed, see D.I.

1771) or discuss further. Please direct your response to my contact information above, with copies to the parties listed below.

Respectfully submitted,

*/s/ Leroy Garrett*
Dr. Leroy A. Garrett
Interested Party with Entry of Appearance
Pro Se Attorney
Member of Petroamigos de Venezuela (ONG)
6725 S Fry Road Ste. 700-338
Katy Texas 77494
Tel.: (832) 652-7912
E-Mail: lry_garrett@yahoo.com