# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | ) |
| *Plaintiff*, | ) ) ) No. 1:17-mc-00151-LPS |
| v. | ) ) |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | ) ) |
| *Defendant*. | ) |

## THE VENEZUELA PARTIES' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER SETTING DEADLINES FOR BRIEFING AND DISCOVERY

Pursuant to Federal Rule of Civil Procedure 54(b), the Venezuela Parties respectfully move for reconsideration of the Court's June 11, 2025 Order Setting Deadlines for Briefing and Discovery ("Scheduling Order") (D.I. 1799).[1] The schedule adopted in the Court's Scheduling Order on the morning of June 11, 2025 was initially proposed by the Special Master at 4:55 p.m. on June 10 in his Proposed Deadlines for Briefing and Discovery (the "Proposed Schedule") (D.I. 1798). There is good cause for reconsideration because the parties did not have an opportunity to object to the Special Master's Proposed Schedule before the Court adopted it. The Proposed Schedule ignored the concerns of potential objectors expressed during the parties' meet and confer in favor of the Special Master's own interests for briefing in support of his eventual recommendation, and added a provision for a sur-reply brief by supporters of the Recommended Bid, which is not contemplated by any of the Court's prior orders or authorized under the Local Rules. The Special Master did not propose this sur-reply in the required meet and confer, and the parties (or at least the Venezuela Parties) had no notice of his intention to add a sur-reply before the Proposed Schedule was filed.

There also is good cause for reconsideration because the Proposed Schedule is both illogical and unfair. Under the Special Master's Proposed Schedule (as adopted in the Scheduling Order), parties must now submit their opening objections briefs on July 9, 2025. This is a mere seven days after the Special Master submits his Final Recommendation on July 2, 2025 (three days of which fall over the July 4 weekend) and almost two weeks before the deadline for producing documents related to the Topping Period (which the Special Master proposes need not be produced

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to such terms in the SPO (D.I. 481). Nothing in this filing should be construed to imply consent to a forced sale. The Venezuela Parties preserve all rights and positions, including on appeal.

1

until July 22) or conducting any depositions. D.I. 1799 at 1–2.[2] This makes no sense. The Venezuela Parties therefore respectfully request that the Court reconsider its Scheduling Order and enter the Alternative Schedule attached as Exhibit A (with proposed modifications marked in redline). In the alternative, the Venezuela Parties request that the Court modify the Scheduling Order as proposed below so that it is fairer to objecting parties.

## NATURE AND STAGE OF PROCEEDINGS

On June 6, 2025, the Court issued an order adjourning the sale hearing to August 18, 2025 (the "June 6 Order"). D.I. 1793. In the June 6 Order, the Court further ordered the Special Master to meet and confer with the parties, and then submit to the Court by June 10, 2025, a proposed schedule to govern the remainder of the sale process. *Id.* The Special Master submitted his Proposed Schedule on June 10, D.I. 1798, and the Court entered that schedule on June 11, D.I. 1799.

## LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) provides that an interlocutory order "may be revised at any time before the entry of a judgment." Fed. R. Civ. P. 54(b). Consistent with this Rule, "a district court ordinarily has the power to modify or rescind its orders at any point prior to final judgment in a civil case." *Dietz v. Bouldin*, 579 U.S. 40, 46 (2016) (citing Rule 54(b)); *see also State Nat'l Ins. Co. v. Cnty. of Camden*, 824 F.3d 399, 406 (3d Cir. 2016) ("[T]he District Court has the inherent power to reconsider prior interlocutory orders."). Courts in the Third Circuit have held that "a movant 'must … establish good cause for why the court should visit its prior [interlocutory] decision,' and a court 'may permit reconsideration [of an interlocutory order] whenever consonant with justice to do so.'" *Price v. United States*, Civ. A. No. 22-1493-GBW, 2023 WL

---

[2] As the Venezuela Parties previously have noted, *see* D.I. 1782 at 7, the Special Master has refused to produce Topping Period documents until after he makes his Final Recommendation, and several other parties likewise are objecting to the production of responsive documents before that date.

2

8370107 at *2 (D. Del. Dec. 4, 2023) (quoting *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016)).

## ARGUMENT

### I. There Is Good Cause for Reconsideration.

There is good cause for reconsideration because the parties did not have time to object to the Proposed Schedule before the Court adopted it. The Special Master filed the Proposed Schedule at 4:55 p.m. on June 10, five minutes before the close of business at the Court. Overnight, the Venezuela Parties prepared objections to the Proposed Schedule, which they were planning to file the morning of June 11. Before they could file their objections, however, the Court adopted the Proposed Schedule at 9:06 a.m., six minutes after the opening of business. Neither the Venezuela Parties nor any other party was given an opportunity to object to the Proposed Schedule. It is consonant with justice to allow affected parties to be heard before the Court decides matters that—as here—impact their ability to prepare and present their case on the merits.

The history of the meet and confer process also demonstrates that there is good cause for reconsideration, as there is reason to doubt that the Proposed Schedule reflects the Special Master's "best efforts" to accommodate parties' concerns, *see* D.I. 1798 at 1 n.2. The Special Master circulated an initial proposed schedule on the morning of June 9, and the parties met and conferred on that schedule later that same day, during which the Venezuela Parties and others expressed their concerns with the initial proposal and offered the framework for an alternative approach. The crux of the concerns was that the initial proposed schedule provided for objections briefing to begin and end well before discovery concluded. The alternative proposed on the call was to require objecting parties to file a notice of objections and the anticipated grounds therefor shortly after the Special Master filed his Final Recommendation on July 2, followed by discovery, after which objections briefs, response briefs, and replies would be due.

3

Late on June 9, the Special Master sent a revised draft of a schedule, which only exacerbated concerns. Contrary to the discussion on the meet and confer, the revised proposal still required objecting parties to file their objections briefs before discovery, and in fact shortened the time for the filing of objections briefs by two days, from July 11 to July 9. But the revision also contained significant modifications that deviated from his initial proposed schedule *and* from what the parties discussed during the meet and confer that day. In particular, it extended the time for supporting parties to file response briefs from July 25 to August 1, *after* discovery had concluded. The next morning, several parties expressed their concerns, and an alternative was again circulated, which was supported by Gold Reserve, Koch, Rusoro, and the Venezuela Parties. The Special Master nevertheless filed the Proposed Schedule on June 10, without first notifying the concerned parties that he was not going to adopt their alternative or make any modifications to address their concerns.

Still worse, the as-filed Proposed Schedule contained material modifications from the June 9 evening draft, which were never shared with the Venezuela Parties (or, to their knowledge, any other parties). Apparently realizing that his briefing schedule would require objecting parties to present any objections or evidence uncovered during discovery for the first time in their reply briefs, the Special Master added a new deadline for sur-replies by parties supporting the Recommended Bid (again, a concept he did not raise with interested parties, or at least with the Venezuela Parties, before filing) and pushing the dates that followed the sur-reply deadline by one day to accommodate the change. He did not add a provision for sur-sur-replies, meaning that now the Special Master and his supporters will have the last word in briefing. The extraordinary unfairness of both the process and the result provides further good cause for reconsideration.

## II. The Court Should Reconsider its Scheduling Order and Allow Parties to Submit Limited Briefing Regarding the Special Master's Proposed Schedule.

When the Court granted the Venezuela Parties' Adjournment Motion (D.I. 1782), the Court explained that it was doing so because it was persuaded by "the reasons set out by the Special Master" in his response to the Adjournment Motion. D.I. 1793 (citing D.I. 1787 at 2). In that response, the Special Master told the Court that his primary concern was maintaining an "orderly and efficient process leading up to the Sale Hearing." D.I. 1787 at 2. The Special Master also stated that his "preference" would be to "reduce parties' concerns about the process itself," and he urged the Court to give "deference . . . to the views of the anticipated litigants that will be most impacted by the schedule." *Id.* Now, for no discernable reason, the Special Master has cast the views of the "anticipated litigants" to the side and presented the Court with a Proposed Schedule that serves only to exacerbate their concerns and upend the orderly and efficient process that he previously supported.[3]

Indeed, the Scheduling Order, if it stands, will force objecting parties to submit their opening briefs without the benefit of discovery. The whole point of discovery, however, is to produce information that can be used in the parties' submissions. But under the Scheduling Order, an objecting party will not be able to introduce substantial discovery materials into the record until it files its *10-page* reply brief on August 8, 2025, *id.* at 3, which would essentially transform its reply into an opening brief.[4]

---

[3] Crystallex and ConocoPhillips' views regarding the Proposed Schedule should be given little weight by the Court. Based on their prior statements, D.I. 1786 (Crystallex); D.I. 1788 (ConocoPhillips), it does not appear that they intend to take any discovery, nor is it likely that any discovery will be taken of them.

[4] If the Court declines to reconsider its Scheduling Order, the Venezuela Parties request an enlargement of the previously agreed-upon page limits for briefing, *see* D.I. 1745 at 3, as 10 pages will be woefully insufficient for an objecting party to both reply to the responding parties' briefs *and* raise the issues learned about for the first time in discovery. Therefore, the Venezuela Parties ask

5

By contrast, the Scheduling Order unfairly gives the Special Master and any other responding parties *twenty-three* days from opening objections briefing and the benefit of full discovery before their response briefs are due (on August 1, after discovery closes). Neither the Special Master nor any of the parties who supported the Special Master's Proposed Schedule—not coincidentally, Crystallex, ConocoPhillips, and Stalking Horse Bidder Red Tree—offered any coherent reason for this disparity, which seems designed solely to limit the ability of parties to meaningfully object to the Recommended Bid and to unfairly advantage parties planning to support the bid. During the meet and confer process, Red Tree contended that it cannot know what discovery it should request from objecting parties or understand the proper scope of relevant discovery until it can see full objections briefs. But this is not how civil litigation works. Discovery is conducted *before* summary judgment motions are filed. At most, Red Tree needs only to know which parties intend to object and the general contours of the intended objections. The Alternative Schedule accomplishes this by requiring any party that intends to object to file a "Notice of Objection to the Special Master's Final Recommendation" that sets out—briefly—the bases for their forthcoming objections (as known at that time).

### III. In the Alternative, the Court Should Modify the Scheduling Order to Create a Fairer Schedule for All Parties.

If the Court declines to enter the Alternative Schedule, the Court should nevertheless modify its Scheduling Order in three ways to make it less one-sided.

*First,* the Court should modify the document production deadlines in the Scheduling Order to create a deadline of July 15 for pre-Recommendation requests and July 18 for post-Recommendation requests. The current deadline of July 22 for both pre- and post-Recommendation requests,

---

that, if the Court declines to reconsider the Scheduling Order, it grant objectors at least 25 pages to cover all this ground in their reply briefing.

D.I. 1799 at 2–3, leaves parties little time to review documents and prepare for depositions given that discovery closes on July 31. *See* D.I. 1517 ¶ 29 (stating that documents should be produced "sufficiently in advance of scheduled depositions to allow for time to use such documents at the deposition"). July 22 is particularly egregious for pre-Recommendation requests, for which the parties can and should have been expeditiously attempting to produce responsive documents "on a rolling basis as soon as they are available," as the Court previously has ordered. *Id*.

**Second**, objections briefs should be due July 22 rather than July 9, with a corresponding modification to the deadlines for response and reply briefs to August 6 and August 13, respectively. That would allow objecting parties to have four days after the document production deadline (assuming the Court adopted the earlier deadlines proposed above) to review and incorporate relevant documents into their objections briefs, while still giving responding parties 15 days to prepare their response briefs. There is no reasonable justification for giving responding parties twenty-three days to respond and objecting parties only seven days (again, over the July 4 weekend) to prepare their opening briefs, and without even the benefit of documents. Moreover, reply briefs should be at least 20 pages (preferably 25) to account for the need to both respond to the responsive briefs and present evidence that post-dates the opening briefs.

**Third**, the Special Master should be required to submit any supporting witness statements that he intends to use in support of his Final Recommendation on July 2 so that objecting parties will be able to review and respond to those statements in their opening expert reports, if necessary.

## CONCLUSION

The Venezuela Parties respectfully request that the Court reconsider its Scheduling Order and enter the Alternative Schedule. In the alternative, the Venezuela Parties respectfully request that the Court modify the Scheduling Order as proposed herein.

7

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | |
|  | /s/ Alexandra M. Cumings |
| OF COUNSEL: | Susan W. Waesco (#4476) |
|  | Alexandra M. Cumings (#6146) |
| Nathan P. Eimer | 1201 North Market Street |
| Lisa S. Meyer | Wilmington, DE 19801 |
| Daniel D. Birk | (302) 658-9200 |
| Gregory M. Schweizer | SWaesco@morrisnichols.com |
| Hannah Bucher | ACumings@morrisnichols.com |
| EIMER STAHL LLP | |
| 224 South Michigan Avenue | *Attorneys for PDV Holding, Inc. and* |
| Suite 1100 | *CITGO Petroleum Corporation* |
| Chicago, IL 60604 | |
| (312) 660-7600 | |
| NEimer@eimerstahl.com | |
| LMeyer@eimerstahl.com | |
| DBirk@eimerstahl.com | |
| GSchweizer@eimerstahl.com | |
| HBucher@eimerstahl.com | |
|  | |
|  | HEYMAN ENERIO GATTUSO & HIRZEL LLP |
|  | |
|  | /s/ Brendan Patrick McDonnell |
| OF COUNSEL: | Samuel Taylor Hirzel, II (#4415) |
|  | Brendan Patrick McDonnell (#7086) |
| Joseph D. Pizzurro | 300 Delaware Avenue, Suite 200 |
| Kevin A. Meehan | Wilmington, DE 19801 |
| Juan O. Perla | (302) 472-7300 |
| David V. Holmes | shirzel@hegh.law |
| CURTIS, MALLET-PREVOST, COLT & MOSLE LLP | bmcdonnell@hehg.law |
| 101 Park Avenue New York, NY 10178 | |
| (212) 696-6000 | |
| jpizzurro@curtis.com | *Attorneys for Petróleos de Venezuela, S.A.* |
| kmeehan@curtis.com | |
| jperla@curtis.com | |
| dholmes@curtis.com | |

8

| | |
|---|---|
| | ABRAMS & BAYLISS LLP |
| OF COUNSEL: | /s/ *Christopher Fitzpatrick Cannataro* |
| | A. Thompson Bayliss (#4379) |
| Donald B. Verrilli, Jr. | Christopher Fitzpatrick Cannataro (#6621) |
| Elaine J. Goldenberg | 20 Montchanin Road, Suite 200 |
| Ginger D. Anders | Wilmington, DE 19807 |
| MUNGER, TOLLES & OLSON LLP | (302) 778-1000 |
| 601 Massachusetts Avenue NW | bayliss@abramsbayliss.com |
| Suite 500 E | cannataro@abramsbayliss.com |
| Washington, D.C. 20001 | |
| (202) 220-1100 | *Attorneys for Bolivarian Republic of Venezuela* |
| Donald.Verrilli@mto.com | |
| Elaine.Goldenberg@mto.com | |
| Ginger.Anders@mto.com | |

George M. Garvey
Adeel Mohammadi
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com
Adeel.Mohammadi@mto.com

June 12, 2025