# PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1313 North Market Street, Suite 806
Wilmington, DE 19801
+1 302 655 4410

**Daniel Mason**
**Direct Dial:** +1 302 655 4425
**Email:** dmason@paulweiss.com

New York
Brussels
Hong Kong
London
Los Angeles
San Francisco
Tokyo
Toronto
Washington, D.C.

June 24, 2025

The Honorable Leonard P. Stark
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801

   Re: *Crystallex International Corp.* v. *Bolivarian Republic of Venezuela*,
      Case No. 17-mc-151 (D. Del.)

Dear Judge Stark:

  We write on behalf of an ad hoc group of holders of a majority of PDVSA 2020 Bonds (the "2020 Bondholders") in response to Gold Reserve's June 23, 2025 letter requesting an "order inviting OFAC to clarify and/or confirm whether it intends to continue to suspend GL-5 beyond the expected Closing of the Sale Transaction." (D.I. 1816). While the 2020 Bondholders do not object should the Court believe it appropriate to solicit OFAC's views, we write to respond to certain incorrect or misleading statements in Gold Reserve's letter.

  *First*, Gold Reserve wrongly asserts that OFAC's issuance of General License ("GL") No. 5S "substantially reduces, if not eliminates, the purported 'risk' presented by the 2020 Bondholders and therefore the rationale for ascribing value to a settlement with the 2020 Bondholders." (D.I. 1816 at 2). Neither GL-5S nor any other aspect of the existing sanctions regime prohibits or limits in any way the 2020 Bondholders from pursuing all available remedies to protect their rights under the Indenture and Pledge Agreement, including through injunction proceedings or to determine the appropriate governance at CITGO Holding or CITGO Petroleum. In fact, OFAC has issued clear guidance expressly permitting such activity:

> A specific license from OFAC is not required to initiate or continue U.S. legal proceedings against a person designated or blocked pursuant to the Venezuela Sanctions Regulations, 31 CFR part 591 (VSR), or for a U.S. court, or its personnel, to hear such a case. Similarly, creditors may file for writs of

attachment without the need for OFAC authorization for matters involving property blocked pursuant to the VSR.[1]

Moreover, OFAC has expressly stated that it "***will not take enforcement action against any person for taking steps to preserve the ability to enforce bondholder rights to the CITGO shares serving as collateral for the PdVSA 2020 8.5 percent bond***."[2]

Accordingly, there is no impediment to the 2020 Bondholders' ability to pursue litigation—or to obtain an injunction—to protect their rights to the Collateral. Indeed, the 2020 Bondholders have been engaged in litigation involving PDVSA for years in the Southern District of New York with respect to the 2020 Bondholders' rights, and no one has—or could—suggest that this activity ran afoul of the existing sanctions regime. As the 2020 Bondholders have repeatedly made clear, should the Special Master recommend a transaction that would violate their rights—including any transaction that sought to lever up CITGO Petroleum while sending value to structurally junior creditors to evade the 2020 Bondholders' lien—such a transaction would be subject to litigation and would be exceedingly unlikely to close. (*See, e.g.*, D.I. 1441 at 16; 1469 at 2; 1553 at 3; 1558 at 3–4; 1568 at 2; 1699 at 1–2).

*Second*, Gold Reserve contends—based solely on the six-month extension associated with GL-5S and its issuance "thirteen days" in advance of when GL-5R was set to go into effect—that OFAC has given a "definitive indication" that it intends to suspend GL-5 through an expected closing on PDVH shares and "definitive proof" that OFAC supposedly does not intend to permit the 2020 Bondholders to exercise remedies. This wild, unfounded speculation is based on a misleading characterization of the facts. Contrary to Gold Reserve's claims that the six-month extension of GL-5S departs from OFAC's "usual three-month extension," there is nothing unusual about the timing of the extension. Gold Reserve ignores that this is the second six-month extension (GL-5F), and OFAC has also issued a one-year extension (GL-5I) and three four-month extensions (GL-5O, GL-5Q, and GL-5R).[3] Thus, OFAC's latest five and a half-month extension, issued thirteen days before GL-5R was set to go into effect, is neither an outlier nor an anomaly, and Gold Reserve's suggestion to the contrary is baseless speculation.

---

[1] OFAC, Venezuela Sanctions FAQ 808, https://ofac.treasury.gov/faqs/808.

[2] OFAC, Venezuela Sanctions FAQ 1124, https://ofac.treasury.gov/faqs/1124 (emphasis added).

[3] Nor is the timing of GL-5S's issuance noteworthy. OFAC issued at least three prior licenses even further in advance of the prior license's effective date: GL-5H (41 days in advance); GL-5F (27 days in advance); and GL-5E (14 days in advance).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP                                                                 3

*Finally*, Gold Reserve's position rests on an entirely unsupported (and baseless) view that OFAC intends to favor one group of creditors over another by prohibiting the 2020 Bondholders from exercising their rights over the pledge of 50.1% of CITGO Holding, while at the same time permitting a bidder to purchase the PDVH shares through the Sale Process. To the contrary, OFAC has repeatedly made clear that it does not intend to favor certain creditors over others, and there is no reason to believe OFAC would not authorize a sale of the shares of PDVH while at the same time preventing the 2020 Bondholders from exercising their rights under the Indenture and Pledge Agreement, including by foreclosing on the Collateral. Indeed, OFAC has expressly represented that it is "committed to fair and equivalent treatment of potential creditors."[4] This is reinforced by the fact that OFAC issued FAQ 1123 (authorizing creditors to participate in the judicially-directed sale of PDVH, subject to the winner obtaining an OFAC license) and FAQ 1124 (making clear that the 2020 Bondholders may take actions to protect their collateral and that any final settlement of the 2020 claims would require an OFAC license) on the same day, illustrating that OFAC does not intend to disadvantage PDVSA 2020 bondholders relative to other creditors, but rather to let U.S. courts determine the priority of creditor claims, while ensuring that OFAC has the power to approve any ultimate transfer of Citgo.

Accordingly, given the clear record contradicting Gold Reserve's position, the 2020 Bondholders do not believe it is necessary to seek further guidance from OFAC, but the 2020 Bondholders have no objection should the Court believe it appropriate to solicit OFAC's views.

Sincerely,

/s/ Daniel Mason
Daniel Mason (#5206)

cc: All Counsel of Record

---

[4]   OFAC, Venezuela Sanctions FAQ 1124, https://ofac.treasury.gov/faqs/1124.