# LANDIS RATH & COBB LLP
### A LIMITED LIABILITY PARTNERSHIP
### ATTORNEYS AT LAW

919 MARKET STREET, SUITE 1800
P.O. BOX 2087
WILMINGTON, DELAWARE 19899
www.lrclaw.com

Jennifer L. Cree
Direct Dial: (302) 467-4437
Email: cree@lrclaw.com

Telephone: (302) 467-4400
Facsimile: (302) 467-4450

June 25, 2025

The Honorable Leonard P. Stark
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801

Re: *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17 Misc. 151

Dear Judge Stark:

We represent Red Tree Investments, LLC. We respectfully write in response to Gold Reserve's emergency letter motion seeking an order inviting OFAC to "clarify and/or confirm" its plans for General License 5 (GL-5) regarding the rights of the 2020 Bondholders. D.I. 1816 (Mot.).

Respectfully, the Court should deny Gold Reserve's motion because there is no emergency. As Gold Reserve describes, OFAC issued the latest version of GL-5 five days ago, on Friday, June 20. *See* U.S. Dep't of Treasury, "General License No. 5S," http://bit.ly/4lqa82m. However, Gold Reserve did not seek relief from this Court until June 24. *See* Mot. at 1. Gold Reserve's motion appears to be an attempt to pressure the Special Master to choose its bid – as indicated by the press release Gold Reserve filed regarding its emergency letter motion. *See* Gold Reserve, Inc., "Gold Reserve Announces Filing of Emergency Request in CITGO Sale Process Regarding OFAC Issuance of General License 5S," http://bit.ly/44bOk3d (June 24, 2025). That is not a legitimate reason for the Court to ask a coordinate branch of government to submit its policy views on an "emergency," 3-day basis. *See* Mot. at 3.

Moreover, the latest version of GL-5 does not show that OFAC has, in any way, changed its position. As Gold Reserve describes, OFAC has rolled over General License 5 no fewer than nineteen times during this litigation. Mot. at 1. Each time, OFAC has pushed off the time in which the 2020 Bondholders may enforce their rights to foreclose on 50.1% of the CITGO Holding shares by a few months. *See id.* That OFAC has done so yet again is hardly proof, as Gold Reserve suggests, of a "definitive 'indication' . . . that OFAC intends to continue to suspend GL-5 beyond the date of the expected closing of the sale of the PDVH shares." *See id.* (quoting D.I. 1741 at 7). Nor is it necessarily noteworthy, as Gold Reserve claims, that the latest

*The Honorable Leonard P. Stark*
*June 25, 2025*
*Page 2*

iteration of GL-5 is for six months, not three.  *See id.*  As Gold Reserve concedes, some of the most recent versions of GL-5 extended the moratorium for longer periods than three months.  *See, e.g.*, U.S. Dep't of Treasury, "General License No. 5-R," http://bit.ly/44uligB (Mar. 6, 2025) (four months).

Most importantly, GL-5 does not address the most serious risk that the 2020 Bondholders' claims pose to the closing of bids, like Gold Reserve's, which rely on borrowing money from CITGO's subsidiaries.  By its terms, GL-5 only regulates "transactions related to, the provision of financing for, and other dealings in the Petróleos de Venezuela, S.A. 2020 8.5 Percent Bond."  General License 5-S, *supra*.  It does not, in any way, restrict the 2020 Bondholders from seeking injunctive relief against Gold Reserve or its financing counterparties if they seek to consummate a transaction for the PDVH shares that violates the 2020 Bondholders' rights under the relevant indenture and pledge agreement.

In fact, OFAC has made clear that it will ***not*** prevent the 2020 Bondholders from seeking injunctive relief to preserve their collateral rights.  For example, in FAQ No. 1124 – issued more than two years ago – OFAC has stated that it "will not take enforcement action against any person for taking steps to preserve the ability to enforce bondholder rights to the CITGO shares serving as collateral for the PdVSA 2020 8.5 percent bond."  U.S. Dep't of Treasury, "Venezuela Sanctions Regulations FAQ No. 1124," http://bit.ly/44uob0V (May 1, 2023).  Moreover, in FAQ No. 1123 addressing the PDVH share sale, OFAC has stated that it is "committed to fair and equivalent treatment of potential creditors."  U.S. Dep't of Treasury, "Venezuela Sanctions Regulations FAQ No. 1123," http://bit.ly/4n7JOLQ (May 1, 2023).  These FAQs foreclose any argument that OFAC intends to give one set of Venezuelan creditors (*i.e.*, additional judgment creditors like Gold Reserve) an unfair advantage over another set (*i.e.*, the 2020 Bondholders) by selectively allowing only some creditors to enforce their rights under applicable law.

As a result, seeking clarification from OFAC appears unnecessary.  OFAC has already made clear that the 2020 Bondholders may seek judicial relief to protect their rights against competing creditors such as Gold Reserve.  However, if the Court does seek OFAC's input on the topic proposed by Gold Reserve, Red Tree respectfully requests that the Court also seek OFAC's input on the following issues: (1) whether the suspension of GL-5 implies that OFAC would continue those suspensions, or deny any special licensing application, if another party sought to infringe the 2020 Bondholders' putative rights, including without limitation in connection with the PDVH share sale; and (2) what, if any, remedies the 2020 Bondholders are entitled to seek under relevant sanctions regulations and FAQ No. 1124 beyond injunctive relief, such as proxy voting the CITGO Holding shares.

Respectfully submitted,

*/s/ Jennifer L. Cree*

Jennifer L. Cree

JLC/lmr
cc: All counsel of record (*via* ECF)