# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
———
(302) 658-9200
(302) 658-3989 FAX

Alexandra M. Cumings
(302) 351-9248
(302) 425-4670 FAX
acumings@morrisnichols.com

June 26, 2025

**VIA EFILING**

The Honorable Leonard P. Stark
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, D.C. 20439

      Re:    *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, C.A. No. 1:17-mc-00151-LPS

Dear Judge Stark:

      We write on behalf of PDV Holding, Inc. ("PDVH") to briefly address the misrepresentations made in the June 24, 2025 letter submitted to this Court on behalf of an ad hoc group of holders of a majority of PDVSA 2020 Bonds (the "2020 Bondholders"). As discussed below, that letter misrepresents the 2020 Bondholders' rights and seeks to leverage the litigation in the Southern District of New York to their advantage in this proceeding. This Court should reject the 2020 Bondholders' attempt to improperly influence the selection of a winning bid by threatening to seek an injunction. But even if this Court entertains such a threat, the obviously appropriate means by which to address it is by awaiting the resolution of the 2020 Bonds Litigation, *Petróleos de Venezuela, S.A. v. MUFG Union Bank*, *N.A. et al.*, No. 1:19-cv-10023 (S.D.N.Y.).

      *First*, no one disputes that the 2020 Bonds Litigation will resolve the question as to the validity of the purported Pledge of 50.1% of the shares of CITGO Holding, Inc. ("CITGOH"), a putative senior lien. The summary judgment motions in the Southern District of New York, which is the relevant court of jurisdiction over the 2020 Bonds Litigation, are now fully briefed. It would be improper to allow the Bondholders to influence or distort these proceedings given that their claims are not just suspended by operation of the U.S. sanctions regime, but are also poised for a merits determination in a case that has been pending for more than a half decade.

      *Second*, the only beneficiaries of the uncertainty created by the absence of a decision on the merits in the 2020 Bonds Litigation are the 2020 Bondholders, who do not hold any judgment

The Honorable Leonard P. Stark
June 26, 2025
Page 2

(and are not creditors) before this Court. The Bondholders have repeatedly threatened to seek relief, including injunctive relief, to prevent the selection of any bid that does not pay them in full. *See, e.g.*, *MUFG Union Bank*, No. 1:19-cv-10023, D.I. 253, 321.

The 2020 Bondholders' efforts before this Court are also in line with their actions in other jurisdictions—all plainly designed to extract payment from the disputed Pledge in disregard of pending proceedings. Just as they do not want a Sale Process that does not bend to their exclusive financial interests, the 2020 Bondholders do not want a decision in the 2020 Bonds Litigation. This is made clear by their opposition to PDVH's recent request that the Southern District of New York expedite decision in that case. *MUFG Union Bank*, No. 1:19-cv-10023, D.I. 377. While the Court, the Special Master, the Sale Process creditors, and PDVSA and its subsidiaries stand to benefit from clarity from a decision, the 2020 Bondholders alone benefit from ambiguity—because they want to maintain their claim that they and they alone must be paid first, and fully, before any secured judgment creditors in the Sale Process (and despite the fact that the 2020 Bondholders do not have any judgment in their favor).

*Third*, the 2020 Bondholders' letter misleadingly suggests that their purported rights under the Pledge warrants injunctive relief in these proceedings. D.I. 1820 at 2. Putting aside that *the 2020 Bondholders do not hold any valid lien*, their assertion again misrepresents the narrow nature of the anti-upstreaming provisions in the Pledge. *See MUFG Union Bank*, No. 1:19-cv-10023, D.I. 40-4 at 11-12. That provision, if enforceable, would place limitations on the manner in which CITGOH is permitted to issue dividends as "profits" or "other distribution[s] on" the pledged CITGOH shares. The Bondholders have never established, whether in briefing before this Court or in any decision by any court of competent jurisdiction, that (under the applicable legal standards) this provision could form the basis of injunctive relief to generally prohibit any transfers of value from CITGOH, let alone from PDVH or CITGO Petroleum, Inc.

*Fourth*, the Bondholders argue that U.S. sanctions authorize them to enforce their alleged rights under the Pledge Agreement by obtaining an injunction against the Sale Process. D.I. 1820 at 1-2; *see also* D.I. 1824 at 2. Putting aside that such a suit would be premised on the transfer of rights over equity in CITGOH shares—in clear violation of Executive Order 13835[1]—the Bondholders argue that a suit for injunctive relief is nonetheless allowed under the terms of General License 5 and OFAC's non-enforcement policy, as well as other FAQs. But those arguments are also easily dismissed. As an initial matter, General License 5 is an *authorization*, not a restriction, and is not currently in effect. In turn, the argument that General License 5 does not *restrict* the Bondholders' ability to bring an enforcement action, *e.g.*, D.I. 1824 at 2, makes little sense.

In addition, OFAC's non-enforcement policy detailed in OFAC FAQ No. 1124 and other policy statements does not cover the enforcement of transfers of pledged equity interests. OFAC's

---

[1] E.O. 13835 (May 21, 2018), https://ofac.treasury.gov/media/5511/download?inline (barring any transfer of equity interests in CITGOH); 31 CFR § 591.310 (defining restricted transfers under the U.S. sanctions regime against Venezuela).

The Honorable Leonard P. Stark
June 26, 2025
Page 3

non-enforcement policy covers only "steps to *preserve* the ability to enforce bondholder rights," OFAC FAQ No. 1124, https://ofac.treasury.gov/faqs/1124 (emphasis added); it does not cover *actual enforcement* of those alleged rights or transfers of pledged equity interests. Indeed, if it did, the repeated suspensions of General License 5 would be meaningless. This is also true with respect to FAQ No. 808, cited by the Bondholders. D.I. 1820 at 1-2. FAQ 808 discusses the initiation of suits against blocked entities under E.O. 13850 and 13884, it says nothing about the transfer of equity interests, and the enforcement of that transfer, under E.O. 13835. What is more, even if these policy statements did cover the Bondholders' proposed injunction (which they do not), the transfer of rights over the equity in CITGOH would be barred by binding regulations. Transfers in violation of the sanctions are deemed "null and void" as a matter of law under 31 CFR § 591.202, and barred even in the context of judicial processes under 31 CFR § 591.407. Under the holdings of this court, the policy statements included within responses to FAQs do not, and cannot, change that. D.I. 443 (holding that OFAC "cannot use interpretive guidance to expand the scope of an unambiguous regulation and thereby 'create de facto a new regulation'") (citing *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)).

        Respectfully,

        */s/ Alexandra M. Cumings*

        Alexandra Cumings (#6146)

cc: All Counsel of Record