# PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1313 North Market Street, Suite 806
Wilmington, DE 19801
+1 302 655 4410

**Daniel Mason**
**Direct Dial:** +1 302 655 4425
**Email:** dmason@paulweiss.com

New York
Brussels
Hong Kong
London
Los Angeles
San Francisco
Tokyo
Toronto
Washington, D.C.

June 30, 2025

The Honorable Leonard P. Stark
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801

  Re:  *Crystallex International Corp.* v. *Bolivarian Republic of Venezuela*,
     Case No. 17-mc-151 (D. Del.)

Dear Judge Stark:

  We write on behalf of an ad hoc group of holders of a majority of PDVSA 2020 Bonds (the "2020 Bondholders") in response to the June 26, 2025 letters of PDV Holding, Inc. ("PDVH"), D.I. 1825., and the Bolivarian Republic of Venezuela, D.I. 1827.

  The 2020 Bondholders reject the baseless suggestions in PDVH's and the Republic's letters that they are attempting to "improperly influence the selection of a winning bid by threatening to seek an injunction." D.I. 1825 at 1. The issues which PDVH complains somehow "improperly influence" the Special Master were injected by *Gold Reserve*, not the 2020 Bondholders. D.I. 1816. In their response, the 2020 Bondholders, among other things, simply reiterated the same position that they have consistently expressed in these proceedings and to the Special Master: while the 2020 Bondholders have no objection to any proposed or actual sale transaction that does not violate or undermine their rights as structurally senior creditors, they will vigorously challenge any transaction for PDVH shares that would improperly diminish their rights to the collateral under the Pledge Agreement through injunction or other proceedings.[1] Indeed, the letters from PDVH and the Republic seem designed to try to influence the proceedings by yet again urging that the Court await

---

[1] *See, e.g.*, D.I. 1469 at 2 ("The 2020 Bond Entities will vigorously resist any effort to impair their rights for the benefit of the structurally junior Attached Judgment Creditors or otherwise"); D.I. 1553 at 3; D.I. 1558 at 3–4; D.I. 1661 at 1–2; D.I. 1699 at 1–2.

the resolution of the SDNY Litigation—a request that PDVH has made numerous times in the past.[2]

The arguments raised by PDVH and the Republic are meritless:

*First*, PDVH's claim that the "Bondholders have repeatedly threatened to seek relief . . . to prevent the selection of any bid that does not pay them in full" is demonstrably false. To the contrary, the 2020 Bondholders have repeatedly made clear that they have no interest in the winning bid so long as it does not interfere with or violate the 2020 Bondholders' rights, including their pledge of 50.1% of the stock of CITGO Holding.  D.I. 1677 at 3; D.I. 1699 at 2–3.  Bidders of course are free to structure transactions in ways that do not implicate 2020 Bondholders' rights.  Bidders are equally free to seek a resolution with the 2020 Bondholders so that they may effect a transaction that would otherwise face, absent a settlement, a significant risk of failing to close.  Contrary to PDVH's assertion, the 2020 Bondholders have never taken the position that "they and they alone must be paid first, and fully, before any secured judgment creditors in the Sale Process."  The 2020 Bondholders instead seek only to preserve their preexisting rights.  Indeed, at the December 13, 2024 hearing, with the Venezuelan parties present, the Special Master "agree[d]" that "the material SPA terms . . . should not [impair] the 2020's rights."  Tr. of Dec. 13, 2024 Status Conf. at 126; *see also* D.I. 1564 at 1–2 ("The Special Master does not intend to take any action, or for that matter recommend any bid, that would breach an existing contract of PDVH or any of its subsidiaries.").  No exception was made to this representation, nor did the Venezuelan parties reserve any right with respect thereto.

*Second*, PDVH wrongly asserts that the 2020 Bondholders seek "injunctive relief in these proceedings."  Not so.  Again, the 2020 Bondholders have repeatedly made clear that their rights under the Pledge Agreement are properly before the Southern District of New York, *see, e.g.*, D.I. 1558 at 3–4 ("Any litigation over whether the use of CITGO assets to finance a bid violates the Indenture and Pledge Agreement would also be subject to the jurisdiction of the United States District Court for the Southern District of New York; indeed, litigation elsewhere would improperly interfere with that Court's active and ongoing consideration of the Bondholders' rights under these very documents."); D.I. 1568 (same)— a position with which PDVH appears to agree in its letter.  Contrary to PDVH's claims, the 2020 Bondholders welcome an opinion on the pending summary judgment motions before the Southern District of New York as soon as that court is in a position to issue one.  The 2020 Bondholders' opposition to the PDVSA Parties' request for expedition did not seek delay, and acknowledged that the court will "issue a decision on the schedule it feels appropriate."  SDNY Litigation, D.I. 277 at 3.  The 2020 Bondholders objected to the PDVSA Parties'

---

[2] *See, e.g.*, D.I. 561 (seeking to delay launch of Sales Process until after final resolution of the then-pending appeals in the SDNY Litigation); D.I. 1144 (similar); D.I. 1645 (moving to stay proceedings pending resolution of SDNY Litigation).

tactical maneuvering in simultaneously requesting expedition in the SDNY Litigation and a delay in the Sales Process before this Court. As the Southern District of New York has since made clear, it intends to "issue its opinion in due course." SDNY Litigation, D.I. 378.

*Third*, as the 2020 Bondholders have previously explained, PDVH's suggestion that the pending summary judgment motions in the SDNY Litigation must be resolved before the 2020 Bondholders can obtain injunctive relief is backwards. The SDNY Litigation involves a challenge brought by the PDVSA Parties to the enforceability of the Indenture and Pledge Agreement. Those agreements, and the 2020 Bondholders' rights under those agreements—remain in place today and will remain in place unless the PDVSA Parties prevail in the SDNY Litigation. The PDVSA Parties already lost on summary judgment once, and the Southern District of New York rejected in those prior proceedings certain of the same arguments that the PDVSA Parties continue to advance in their pending summary judgment motion.

*Finally*, the Court should reject PDVH's unfounded contention that OFAC sanctions prevent the 2020 Bondholders from obtaining an injunction. As set forth in the 2020 Bondholders' June 24, 2025 letter, OFAC has issued clear guidance that it "will not take enforcement action against any person for taking steps to preserve the ability to enforce bondholder rights to the CITGO shares serving as collateral for the PdVSA 2020 8.5 percent bond."[3] PDVH's argument that injunction proceedings, seeking to maintain the status quo as against a change in ownership over PDVH or CITGO Holding, would somehow effect a "transfer of rights over equity in CITGOH shares" or the "transfer of equity interests" makes no sense and represents a deeply confused reading of the relevant U.S. sanctions. In any event, even insofar as the existing sanctions regime might limit foreclosure on the Collateral (as opposed to the 2020 Bondholders' ability to protect their rights through litigation), as soon as ownership of PDVH transfers to a successful bidder, sanctions will no longer apply, and the 2020 Bondholders can direct immediate foreclosure on the Collateral and take control of CITGO Holding.

Moreover, the pledge of 50.1% of CITGO Holding stock to the Trustee and Collateral Agent occurred in October 2016, pursuant to the Pledge Agreement, and thus predated any relevant sanctions. As part of that grant, PDVH transferred 50.1% of CITGO Holding stock to the Trustee and Collateral Agent, who have held such stock since that time and continue to hold it for the benefit of the 2020 Bondholders "and their respective successors and assigns and no other Person." Any injunction would thus merely enforce the 2020 Bondholders' contractual rights under the Pledge Agreement, not effect a transfer of rights, which already occurred in 2016.

---

[3] OFAC, Venezuela Sanctions FAQ 808, https://ofac.treasury.gov/faqs/808.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP 4

                                                                      Respectfully submitted,

                                                                      _/s/ Daniel Mason_
                                                                      Daniel Mason (#5206)

cc:  All Counsel of Record