# EXHIBIT A

**EVERCORE**

**Confidential Pursuant to Confidentiality Agreement**

April 28, 2025

Participant:

On behalf of Robert B. Pincus in his capacity as Special Master (the "Special Master") for the United States District Court for the District of Delaware (the "Court") in the matter of *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, D. Del. C.A. No. 1:17-mc-00151-LPS (the "Crystallex Case"), we would like to thank you for your consideration of a potential acquisition of all, or a portion, of the shares of PDV Holding, Inc. ("PDVH"). PDVH is 100% owned by Petróleos de Venezuela, S.A. ("PDVSA"), a Venezuelan corporation that is 100% owned by the Bolivarian Republic of Venezuela. CITGO Petroleum Corporation ("CITGO Petroleum") is a direct, wholly owned subsidiary of CITGO Holding, Inc. ("CITGO Holding" and, together with CITGO Petroleum, "CITGO") which in turn is 100% owned by PDVH. Evercore is assisting the Special Master in the implementation of a court-mandated sale of an amount of the shares of PDVH sufficient to satisfy Attached Judgments (as defined in the Sale Procedures Order (as defined below)) (the "Proposed Transaction").

Pursuant to the Court's *Memorandum Order Regarding Sale Process and Litigation* dated December 31, 2024 [D.I. 1517] (the "December Order"), on March 21, 2025, the Special Master submitted his *Notice of Special Master's Recommendation of Stalking Horse* [D.I. 1596] recommending Red Tree Investments, LLC, an affiliate of Contrarian Capital Management, LLC, as the stalking horse ("Red Tree" or the "Stalking Horse") for the Proposed Transaction, pursuant to the terms and conditions set forth in the Stock Purchase Agreement, dated as of March 21, 2025, by and among the Stalking Horse, the Special Master and, solely with respect to the sections specified in the preamble to the Stock Purchase Agreement, Red Tree Investments, LLC (the "Stalking Horse Agreement" and, the Proposed Transaction contemplated thereby, the "Stalking Horse Transaction"). In its *Order*, dated April 21, 2025 [D.I. 1741] (the "April Order"), the Court approved the Special Master's recommendation and designated Red Tree as the Stalking Horse. Further in its *Order Regarding Schedule for the Remainder of the Marketing Process* [D.I. 1745], dated April 25, 2025, the Court approved the commencement of a 30-day topping period that extends from April 28, 2025 until May 28, 2025 (the "Topping Period"). During the Topping Period interested parties are invited to submit a proposal for the Proposed Transaction superior to the Stalking Horse Transaction.

This letter is being furnished to those persons who have indicated their interest in, or who the Special Master has previously contacted in relation to, the Special Master's marketing process. To determine the Special Master's interest in pursuing the Proposed Transaction with you, we invite you to submit a final written, definitive and binding proposal with respect to the Proposed Transaction (your "Topping Proposal"). If the Special Master deems your Topping Proposal to be superior to the Stalking Horse Transaction (which determination will be made in accordance with the evaluation criteria set forth in the January Order (as defined below) and the additional guidance provided by the Court in the April Order), you may be contacted regarding the process to execute a definitive agreement.

This letter, and the procedures and timetable included herein, are confidential and are subject to the terms of the Confidentiality Agreement that you entered into with the Special Master (the "Confidentiality Agreement") in connection with the Proposed Transaction, the terms of which are not modified or varied by this letter. Unless otherwise defined herein, all capitalized terms used shall have their meaning set forth in the Confidentiality Agreement or the *Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* [D.I. 481] (as

Page 2

amended, modified, or supplemented after the date hereof, the "Sale Procedures Order") filed in the Crystallex Case, as context may require.

**I.    TOPPING PROPOSAL**

Please submit your Topping Proposal in writing to Evercore **at any time during the Topping Period** and in any event no later than 5:00 PM (Central Time) on May 28, 2025, via email in care of:

| Evercore | Attention: | Ray Strong | William Hiltz |
|---|---|---|---|
| | | Senior Managing Director | Senior Managing Director |
| | Office: | (713) 427-5146 | (212)857-3154 |
| | Cell: | (347) 549-2043 | (917) 992-3093 |
| | Email: | ray.strong@evercore.com | hiltz@evercore.com |

With a copy to:

| Weil, Gotshal & Manges LLP | Attention: | Matthew S. Barr |
| | | Eoghan P. Keenan |
| | | Chase A. Bentley |
| | Email: | matt.barr@weil.com |
| | | eoghan.keenan@weil.com |
| | | chase.bentley@weil.com |

Your Topping Proposal should include, at a minimum, the following information:

A. **Proposed Transaction Structure.** Confirm that your Topping Proposal is for all, or a portion, of the shares of PDVH in accordance with the terms of the Sale Procedures Order and subject to the qualifications referenced below. Your Topping Proposal will be evaluated based on the evaluation criteria approved by the Court in the *Memorandum Order* dated January 27, 2025 [D.I. 1554] (the "January Order") and the additional guidance provided by the Court in the April Order. If your Topping Proposal is for a portion of the shares of PDVH, please indicate (i) the percentage of shares of PDVH proposed to be acquired and (ii) any minority shareholder rights, minority protections, or other desired terms related to minority ownership not inconsistent with the January Order and the assumptions and notes below, and any proposed documentation related thereto.

Your Topping Proposal should utilize the following key assumptions and notes with respect to structuring the Proposed Transaction:

i. Purchase Price and Adjustments: The purchase price in your Topping Proposal will be a fixed dollar amount for the shares of PDVH (*i.e.*, no enterprise value calculation), typical of a public company M&A transaction. No purchase price adjustments will be accepted. No "lock box," "leakage" or similar constructs will be accepted. Bidders will receive protection through the interim operating covenants under which PDVH/CITGO will be operated in the ordinary course of business.

ii. Escrow: The Special Master will attribute no value to any portion of the purchase price being payable to an escrow unless holders of the applicable Attached Judgments consent to receive the escrow amount.

iii. "Earn-Out" Payment or Deferred Purchase Price: The Special Master will attribute no value to any "earn-out" or deferred purchase price concepts unless

EVERCORE

       iv.    PDVSA 2020 Bonds Share Pledge: Your Proposed SPA (as defined below) cannot include any trust/escrow constructs or similar revisions impacting certainty of funds payable to holders of Attached Judgments in relation to the notes issued pursuant to that certain Indenture, dated October 27, 2016 (the "Indenture"), by and among PDVSA, as issuer, PDVSA Petróleos, S.A., as guarantor, MUFG Union Bank, N.A., as trustee, GLAS Americas LLC, as collateral agent, Law Debenture Trust Company of New York, as registrar, transfer agent and principal agent, and Banque Internationale À Luxembourg, Société Anonyme, as Luxembourg paying agent, whereby PDVSA issued 8.50% senior secured notes due in 2020 with an aggregate principal amount of $3,367,529,000 (the "PDVSA 2020 Notes"), of which an aggregate principal amount of $1,683,764,500 remains outstanding, purportedly secured by a pledge of the equity of CITGO Holding (the "CITGO Equity Pledge"). The PDVSA 2020 Notes and the CITGO Equity Pledge are currently the subject of litigation in the matter of *Petróleos de Venezuela, S.A., PDVSA Petróleos, S.A., and PDV Holding, Inc., v. MUFG Union Bank, N.A. and GLAS Americas LLC*, Civ. Nos. 20-3858, 20-4127 (the "2020 Notes Litigation"). Your Proposed SPA cannot contain any closing conditionality related to the PDVSA 2020 Notes and your Topping Proposal should take into consideration the Court's additional guidance in the April Order related to such matters.

       v.    Alter Ego Claims: Your Proposed SPA cannot include any stand-alone closing conditions relating to Alter Ego claims. Your Proposed SPA should not include trust/escrow constructs or purchase price alterations relating to Alter Ego claims unless expressly agreed to by the affected holder of Attached Judgment.

**B.**    **Stock Purchase Agreement.** A draft Stock Purchase Agreement (the "Proposed SPA") that provides for the acquisition of all, or a portion, of the shares of PDVH, together with a redline marked to show your proposed changes to the Stalking Horse Agreement, which will be posted to the data room (including your proposed changes and accompanying redlines for all exhibits and schedules to the Stalking Horse Agreement, which will be posted to the data room). Please provide such comments in Microsoft Word format and include both a clean Word version as well as a PDF comparison to the Stalking Horse Agreement. Do not submit an issues list or other summary comments instead. The Proposed SPA you submit should include all of your requested changes to the Stalking Horse Agreement and should include specific, in-line edits and not conceptual, non-specific or footnoted comments. The Proposed SPA you submit should not include revisions to any non-negotiable terms (pursuant to the January Order) and should take into consideration the material terms for a Stock Purchase Agreement adopted by the Court in the January Order. Please note that the Special Master will consider the extent of any comments in your Proposed SPA in selecting a counterparty with which to proceed; however, the Special Master acknowledges that certain mechanical updates to remove or revise terms applicable only to the Stalking Horse and the Stalking Horse Transaction, which terms are not applicable after the conclusion of the Topping Period or to the applicable bidder, may be appropriate for inclusion in the Proposed SPA.

**C.**    **Identity of Purchaser or Counterparty.** A statement identifying the legal name, jurisdiction and type of organization/entity form of each entity that will act as purchaser or counterparty in the Proposed Transaction, including the identity of any controlling person(s), principal equity holders, whether current or anticipated, and each other entity

        that will be otherwise participating in your Topping Proposal (if applicable), as well as a summary of such organization/entities' history, primary business and sufficient information to demonstrate that such organization/entity has the financial wherewithal to timely consummate the Proposed Transaction.

D. **Purchase Price and Principal Economic Terms.** A statement setting forth (i) the purchase price you assign to the shares of PDVH, (ii) the amount and a detailed analysis of any non-cash components of the purchase price, including without limitation, a credit bid, stock and/or the assumption of liabilities, and the value of such components, any assumptions related thereto, reasonable back-up documentation to support such value, and, if applicable, evidence of the consent of a holder of an Attached Judgment that it has agreed to receive such non-cash component in satisfaction of its Attached Judgment, (iii) disclosure of any related transactions to be pursued or effectuated by you in connection with the Proposed Transaction, (iv) your projection of the amounts that would be received by the holders of Attached Judgments under your Topping Proposal, including the form of consideration to satisfy such amounts (*i.e.*, a projected "waterfall" to holders of Attached Judgments), and (v) your analysis of if and how the purchase price you assign to the shares of PDVH in your Topping Proposal satisfies the Overbid Minimum (as defined in the Stalking Horse Agreement) requirement (*i.e.*, that the purchase price you assign to the shares of PDVH exceeds (i) the purchase price payable by the Stalking Horse pursuant to the Stalking Horse Agreement, plus (ii) the Termination Fee payable to the Stalking Horse[1], plus (iii) $25,000,000).[2]

E. **Sources of Financing; Commitment Letters.** A detailed description of the sources of funds that you intend to use to finance the Proposed Transaction. All sources of financing must be free of contingencies other than the closing conditions outlined in the Proposed SPA. Certainty of financing is critical and will factor into the Special Master's decision. Please provide copies of the financing commitments and other similar documentation, as applicable, from all financing sources, such that your Topping Proposal clearly and affirmatively demonstrates that it is not subject to any financing condition, and your Topping Proposal must include an express statement to such effect. As outlined in the Special Master's guidance distributed to the interested parties on March 3, 2025, *as a minimum requirement*, you must provide: (i) all financing commitment letters *in final form* at the time of submission of your Topping Proposal, (ii) debt commitment letters and third party (*i.e.*, non-bidder) equity commitment letters *executed by third party financing sources* by the end of the Topping Period, which debt commitment letters and third party equity commitment letters must be countersigned by you (and applicable parties other than the third party financing source) at the latest by the time of execution of the Definitive SPA (defined below), which shall occur immediately prior to the Special Master's filing of his Final Recommendation, and (iii) bidder equity commitment letters *fully executed* (*i.e.*, executed by all relevant parties thereto) at the latest by the time of execution of the

---

[1] Pursuant to the Stalking Horse Agreement, Termination Fee means "(i) the amount, not to exceed $75,000,000 in the aggregate, of actual and documented out-of-pocket expenses incurred by the Buyer and its Affiliates in connection with the negotiation and execution of this Agreement and the other Transaction Documents and the consummation of the Transactions (provided that the Buyer shall provide written confirmation of the amount of such expenses) in the event such fee becomes payable on or prior to the Final Recommendation Date or (ii) in the event such fee becomes payable after the Final Recommendation Date, an amount equal to $112,000,000; provided, however that, if this Agreement is amended to include the satisfaction of additional Attached Judgments junior to the Record Holder, the Termination Fee pursuant to this clause (ii) shall be automatically increased to an amount equal to three percent (3%) of the aggregate value of Attached Judgments that would be satisfied, whether in cash or agreed non-cash consideration (without giving effect to escrowed funds, earn-outs or similarly contingent consideration) at the Closing if the Closing were to occur on the date of the applicable termination of this Agreement, but in no event shall the Termination Fee exceed $150,000,000."

[2] For the avoidance of doubt, pursuant to the January Order, the Special Master may, in his sole discretion, lower or raise the Overbid Minimum.

Definitive SPA.[3] If the Special Master does not recommend you as the Successful Bidder in his Final Recommendation, then you do not need to submit signature pages executed by any parties other than the third party financing sources already delivered by the end of the Topping Period, as required above.

F. **Credit Bid (if applicable).** If you hold an Attached Judgment, you may seek to submit a credit bid (a "Credit Bid") for the shares of PDVH as outlined in the Sale Procedures Order. If you are submitting a Credit Bid, please state as such, and confirm that such Credit Bid will (i) provide sufficient cash consideration to pay in full all Transaction Expenses, (ii) provide sufficient cash (or subject to item (iii) below, non-cash consideration) to satisfy in full any obligations secured by a senior lien on the shares of PDVH (which, for the purposes of this section F, shall not include the CITGO Equity Pledge), and (iii) if applicable, evidence of the consent of a holder of such senior lien obligation that it has agreed to receive non-cash consideration. For avoidance of doubt, the requirements set forth in paragraph A.iv. of this letter shall apply to any Credit Bid proposal.

G. **Good Faith Deposit.** Evidence of your financial ability to make a cash deposit (in the amount set forth in the Sale Procedures Order), which will be deposited by the Successful Bidder on the date of entry of the sale order by the Court for the Proposed Transaction.

H. **Purchaser Approvals.** Evidence of corporate or other organizational authorization and approval from your board of directors (or comparable governing body) or otherwise with respect to the submission, execution and delivery of your Topping Proposal (including the execution of the Proposed SPA), participation in any auction and closing of the Proposed Transaction contemplated by the Proposed SPA in accordance with its terms and the terms of the Sale Procedures Order (including the Bidding Procedures contained therein), and an indication of any anticipated need, timeline and plan to obtain any further equity holder, board, organizational, partnership, investment committee or other approval, including governmental, regulatory and other third-party approvals, consents, notifications, waivers or other similar actions that you anticipate will be required to execute the definitive Stock Purchase Agreement (the "Definitive SPA"). Please also include a statement or evidence that (i) you will make in a timely manner (a) all filings and disclosures necessary to comply with the regulations of the Department of Treasury's Office of Foreign Assets Control ("OFAC"), (b) all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, and any other antitrust laws, as applicable, and pay the fees associated with such filings and (c) all necessary filings in connection with any review by the Committee on Foreign Investment in the United States (CFIUS), if applicable and (ii) your Topping Proposal is reasonably likely to be consummated, after taking into consideration antitrust and any other regulatory matters, your prior experience and any other relevant considerations, if selected as the Successful Bid, within a timeframe acceptable to the Special Master.

I. **Due Diligence Requirements.** Your Topping Proposal should not be subject to any remaining due diligence, unless otherwise permitted by the Special Master in his sole discretion.

J. **Advisors.** A list of the financial, accounting, legal, industry consultants and other advisors that you have retained or plan to retain in connection with the Proposed Transaction.

---

[3] Requirement does not apply to the Stalking Horse Bidder to the extent such items have already been provided to the Special Master.

- K. **Contacts.** A list of persons (including e-mail addresses and phone numbers) who should be contacted with respect to any questions regarding your Topping Proposal.

- L. **Special Master Consent.** Your consent for the Special Master, in his discretion, to share information with U.S. Government regulators, including OFAC, as well as the Sale Process Parties and Additional Judgment Creditors, subject to the limitations of bidding Sale Process Parties or Additional Judgment Creditors to receive bid information (as outlined in the December Order), pertaining to you or your Topping Proposal. For the avoidance of doubt, nothing herein will limit the Special Master's right to disclose information pertaining to you or your Topping Proposal as otherwise permitted or required by the Court or by the Sale Procedures Order.

- M. **Cooperation.** A statement that (i) you agree that your advisors will coordinate in good faith with the Special Master's advisors to discuss and explain your regulatory and other consent analysis, strategy and timeline for securing all such approvals and consents as soon as reasonably practicable and (ii) you agree to cooperate with the Special Master to provide pertinent factual information regarding your ownership and operations reasonably required to respond to, or otherwise analyze issues arising with respect to, U.S. sanctions laws and regulations, CFIUS, any applicable antitrust laws and other relevant regulatory requirements or requests.

- N. **No Entitlement to Reimbursement.** A statement that your Topping Proposal does not entitle you to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement (other than in the case of the Stalking Horse pursuant to the Stalking Horse Agreement); provided, however, the Definitive SPA will include an expense reimbursement for a Successful Bidder as provided in the January Order.

- O. **No Liability.** A statement that you agree that (i) in no circumstance shall the Special Master or his advisors be personally or otherwise liable for any amounts or obligations owed to you, (ii) the Special Master and his advisors are acting as an arm of the Court and are entitled to judicial immunity in the performance of their duties and (iii) PDVH, CITGO and their respective officers, directors and advisors will have no liability or obligation to you or your affiliates in connection with the execution of the Definitive SPA.

- P. **Representations and Warranties.** The following representations and warranties, pursuant to the Bidding Procedures set out in the Sale Procedures Order:

    i.  a statement that you recognize and acknowledge that the Special Master, his advisors, PDVH, CITGO, and their respective representatives make no representations, covenants or warranties (or any other promise) as to the accuracy or completeness of any information provided in the data room or otherwise made available by the Special Master and his advisors in connection with the bid process;

    ii. a statement that, other than with respect to your reliance on the representations and warranties provided in the Definitive SPA if, as and when executed, you have relied solely upon your own independent review, investigation, and/or inspection of any relevant documents regarding the assets to be purchased and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding PDVH and its subsidiaries or the completeness of any information made available in connection therewith;

   iii. a statement that you have not engaged in any collusion with respect to the submission of your Topping Proposal; and

   iv. a statement that all proof of financial ability to consummate the Proposed Transaction in a timely manner and other information you submit is true and correct.

 **Q.** **Bidding Procedures.** A statement that you agree to be bound by the terms and conditions of the Bidding Procedures set out in the Sale Procedures Order.

## II. CONDITIONAL SELECTION OF PROSPECTIVE PURCHASER

Based upon, among other things, an analysis of the purchase price and other terms presented in your Topping Proposal, the Special Master, in his sole and absolute discretion, may elect to further pursue the Proposed Transaction with you and execute a Definitive SPA.

As outlined in the December Order, after the end of the Topping Period and by June 11, 2025, the Special Master is expected to file with the Court his final recommendation identifying the best bid made during the Topping Period and requesting the Court's approval of such bid. Alternatively, and at any time prior to submission of his final recommendation, the Special Master may request that the Court schedule a multi-day live auction to determine the Successful Bidder. Please note that as outlined in the January Order, during the five-business-day period following the end of the Topping Period, the Special Master has the discretion to request revised bids both from the bidders submitting Topping Proposals and from the Stalking Horse.

Please note that the existence and terms of this letter and any related communications and/or information provided in connection therewith are subject to your Confidentiality Agreement with the Special Master and should be treated accordingly.

## III. ALL RIGHTS RESERVED

All communications, inquiries and requests for information relating to the Proposed Transaction, including any materials in connection therewith, should be directed to Evercore. **Neither you nor your employees, representatives, agents, affiliates, partners, co-venturers or other related parties are permitted to contact the Special Master, PDVSA, PDVH, CITGO or its subsidiaries, or any of their direct or indirect affiliates, directors, managers, officers, employees, suppliers, vendors, customers, financiers, counterparties, partners, co-venturers or regulators, either directly or indirectly, in relation to any matter set forth in this letter or in relation to the Proposed Transaction.**

This letter does not constitute an offer to sell PDVH or its assets. You acknowledge and agree that the Special Master has the right, in his sole and absolute discretion, to reject any and all proposals regarding any Proposed Transaction and to negotiate with one or more parties simultaneously and terminate discussions and negotiations of any Proposed Transaction with any one or more parties at any time, for any reason or for no reason; that the procedures which the Special Master may employ in the pursuit of any Proposed Transaction, if any such pursuit is undertaken, are within his sole and absolute discretion; that any such procedures are subject to change at any time for any reason or for no reason and with or without prior notice; that determinations of compliance or noncompliance with such procedures will be solely and completely judged by the Special Master, and the sole remedy for any objection to such procedures, the application thereof or any judgment exercised by the Special Master with respect thereto will be withdrawal, without further recourse, from participation in further discussions with respect to the Proposed Transaction. No agreement or understanding regarding a Proposed Transaction shall be deemed to exist unless and until the Definitive SPA regarding the Proposed Transaction has been executed and delivered by the parties thereto, and no prospective purchaser shall have any claim based upon any legal

Page 8

theory in connection with a Proposed Transaction unless and until the parties shall have entered into, executed and delivered the Definitive SPA.

**By submitting your Topping Proposal, you acknowledge that you have reviewed this letter and that you agree without reservation to all terms, restrictions and conditions contained herein.**

We encourage you to contact the following individuals with any questions regarding your Topping Proposal or any other matter set forth in this letter:

|  |  |
|---|---|
| Ray Strong | William Hiltz |
| Senior Managing Director | Senior Managing Director |
| Office: (713) 427-5146 | Office: (212) 857-3154 |
| Cell: (347) 549-2043 | Cell: (917) 992-3093 |
| ray.strong@evercore.com | hiltz@evercore.com |

The Special Master and Evercore appreciate your interest in this process and look forward to working with you with respect to the Proposed Transaction.

Sincerely,


Ray Strong
Senior Managing Director
Evercore on behalf of the Special Master

# EXHIBIT B

# Crystallex v. Venezuela – Topping Bid Summary

## Attached Judgment Consideration – As of June 25, 2025  ($ in millions)

- Summary of topping bids received by the Special Master by Revised Topping Period Deadline
- Attached Judgment considerations inclusive of post judgment interest as of June 25, 2025

|  | Conforming ||||||| Non-Conforming[1] |||||||
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | Gold Reserve ||| Red Tree[2] ||| Black Lion ||| Bidder A ||| Bidder B[2] |||
|  | Cash | Non-Cash | Total | Cash | Non-Cash | Total | Cash | Non-Cash | Total | Cash | Non-Cash | Total | Cash | Non-Cash | Total |
| *Attached Judgment Consideration* | | | | | | | | | | | | | | | |
| Crystallex | $1,009 | $-- | $1,009 | $1,009 | $-- | $1,009 | $1,009 | $-- | $1,009 | $1,009 | $-- | $1,009 | $1,009 | $-- | $1,009 |
| Tidewater | 78 | -- | 78 | 78 | -- | 78 | 78 | -- | 78 | 78 | -- | 78 | 78 | -- | 78 |
| ConocoPhillips | 1,378 | -- | 1,378 | 1,378 | -- | 1,378 | 1,378 | -- | 1,378 | 1,378 | -- | 1,378 | 1,378 | -- | 1,378 |
| OIEG | 671 | -- | 671 | 671 | -- | 671 | 671 | -- | 671 | 671 | -- | 671 | 671 | -- | 671 |
| Northrop Grumman | 139 | -- | 139 | -- | 139 | 139 | 139 | -- | 139 | 139 | -- | 139 | 139 | -- | 139 |
| ACL | 119 | -- | 119 | 119 | -- | 119 | 119 | -- | 119 | 119 | -- | 119 | 119 | -- | 119 |
| Red Tree | 325 | -- | 325 | -- | 325 | 325 | 325 | -- | 325 | 325 | -- | 325 | 325 | -- | 325 |
| Rusoro | -- | 1,537 | 1,537 | -- | -- | -- | 1,537 | -- | 1,537 | 25 | -- | 25 | -- | -- | -- |
| ConocoPhillips | 48 | -- | 48 | -- | -- | -- | 48 | -- | 48 | -- | -- | -- | -- | -- | -- |
| Koch | -- | 466 | 466 | -- | -- | -- | 466 | -- | 466 | -- | -- | -- | -- | -- | -- |
| Gold Reserve | -- | 1,177 | 1,177 | -- | -- | -- | 1,177 | -- | 1,177 | -- | -- | -- | -- | -- | -- |
| Siemens | -- | 218 | 218 | -- | -- | -- | 218 | -- | 218 | -- | -- | -- | -- | -- | -- |
| Consorcio | -- | -- | -- | -- | -- | -- | 684 | -- | 684 | -- | -- | -- | -- | -- | -- |
| Contrarian | -- | -- | -- | -- | -- | -- | 150 | -- | 150 | -- | -- | -- | -- | -- | -- |
| **Total Attached Judgment Consideration** | **$3,767** | **$3,398** | **$7,166** | **$3,255** | **$464** | **$3,719** | **$8,000** | **$--** | **$8,000** | **$3,744** | **$--** | **$3,744** | **$3,719** | **$--** | **$3,719** |
| Proposed PDVSA 2020s Settlement | -- | -- | -- | -- | 2,000 | 2,000 | -- | -- | -- | 2,000 | -- | 2,000 | 1,000 | 1,000 | 2,000 |
| **Total Consideration Offered** | **$3,767** | **$3,398** | **$7,166** | **$3,255** | **$2,464** | **$5,719** | **$8,000** | **$--** | **$8,000** | **$5,744** | **$--** | **$5,744** | **$4,719** | **$1,000** | **$5,719** |

1. Non-Conforming bids did not meet the Bid Requirements for the reasons set forth in the Recommendation
2. Summary of bid does not include non-cash consideration proposed but not consented to by applicable holders of Attached Judgments

  Weil

1

# Crystallex v. Venezuela – Topping Bid Summary

## Attached Judgment Consideration – As of June 30, 2026  ($ in millions)

- Summary of topping bids received by the Special Master by Revised Topping Period Deadline
- Attached Judgment considerations inclusive of post judgment interest as of June 30, 2026

|  | Conforming ||||||| Non-Conforming[1] |||||||||
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | Gold Reserve ||| Red Tree[2] ||| Black Lion ||| Bidder A ||| Bidder B[2] |||
|  | Cash | Non-Cash | Total | Cash | Non-Cash | Total | Cash | Non-Cash | Total | Cash | Non-Cash | Total | Cash | Non-Cash | Total |
| *Attached Judgment Consideration* | | | | | | | | | | | | | | | |
| Crystallex | $1,020 | $-- | $1,020 | $1,020 | $-- | $1,020 | $1,020 | $-- | $1,020 | $1,020 | $-- | $1,020 | $1,020 | $-- | $1,020 |
| Tidewater | 81 | -- | 81 | 81 | -- | 81 | 81 | -- | 81 | 81 | -- | 81 | 81 | -- | 81 |
| ConocoPhillips | 1,412 | -- | 1,412 | 1,412 | -- | 1,412 | 1,412 | -- | 1,412 | 1,412 | -- | 1,412 | 1,412 | -- | 1,412 |
| OIEG | 687 | -- | 687 | 687 | -- | 687 | 687 | -- | 687 | 687 | -- | 687 | 687 | -- | 687 |
| Northrop Grumman | 139 | -- | 139 | -- | 139 | 139 | 139 | -- | 139 | 139 | -- | 139 | 139 | -- | 139 |
| ACL | 119 | -- | 119 | 119 | -- | 119 | 119 | -- | 119 | 119 | -- | 119 | 119 | -- | 119 |
| Red Tree | 347 | -- | 347 | -- | 347 | 347 | 347 | -- | 347 | 347 | -- | 347 | 347 | -- | 347 |
| Rusoro | -- | 1,569 | 1,569 | -- | -- | -- | 1,569 | -- | 1,569 | 25 | -- | 25 | -- | -- | -- |
| ConocoPhillips | 48 | -- | 48 | -- | -- | -- | 48 | -- | 48 | -- | -- | -- | -- | -- | -- |
| Koch | -- | 471 | 471 | -- | -- | -- | 471 | -- | 471 | -- | -- | -- | -- | -- | -- |
| Gold Reserve | -- | 1,256 | 1,256 | -- | -- | -- | 1,256 | -- | 1,256 | -- | -- | -- | -- | -- | -- |
| Siemens | -- | 233 | 233 | -- | -- | -- | 233 | -- | 233 | -- | -- | -- | -- | -- | -- |
| Consorcio | -- | -- | -- | -- | -- | -- | 618 | -- | 618 | -- | -- | -- | -- | -- | -- |
| Contrarian | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| **Total Attached Judgment Consideration** | **$3,854** | **$3,528** | **$7,382** | **$3,319** | **$487** | **$3,806** | **$8,000** | **$--** | **$8,000** | **$3,831** | **$--** | **$3,831** | **$3,806** | **$--** | **$3,806** |
| Proposed PDVSA 2020s Settlement | -- | -- | -- | -- | 2,000 | 2,000 | -- | -- | -- | 2,000 | -- | 2,000 | 1,000 | 1,000 | 2,000 |
| **Total Consideration Offered** | **$3,854** | **$3,528** | **$7,382** | **$3,319** | **$2,487** | **$5,806** | **$8,000** | **$--** | **$8,000** | **$5,831** | **$--** | **$5,831** | **$4,806** | **$1,000** | **$5,806** |

1. Non-Conforming bids did not meet the Bid Requirements for the reasons set forth in the Recommendation
2. Summary of bid does not include non-cash consideration proposed but not consented to by applicable holders of Attached Judgments

