IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>                Plaintiff,<br><br>   v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>                Defendant. | C.A. No. 17-mc-151-LPS |

**CRYSTALLEX INTERNATIONAL CORPORATION'S**
**NOTICE OF OBJECTION TO SPECIAL MASTER'S FINAL RECOMMENDATION**

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
Zachary Kady
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166
Tel:  (212) 351-4000
Fax:  (212) 351-4035

Miguel A. Estrada
Lucas C. Townsend
Adam M. Smith
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
Tel:  (202) 955-8500
Fax:  (202) 467-0539

Dated:  July 7, 2025

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Tel:  (302) 651-7700
Fax:  (302) 651-7701

*Attorneys for Plaintiff*

Pursuant to this Court's Briefing and Discovery Schedule, D.I. 1809, Crystallex respectfully submits this notice of objection to the Special Master's Final Recommendation, D.I. 1841.[1]

Crystallex continues to object to the Special Master's Final Recommendation to adopt the bid submitted by the Gold Reserve Consortium[2] because (as the Special Master recognizes) the bid did nothing to solve the certainty-of-closing problems identified at the Stalking Horse stage and, importantly, the Stock Purchase Agreement ("**SPA**") and supporting materials do not sufficiently account for this key failing by providing clear and prompt termination rights. In addition, the bid's supporting documents exceed the bounds of Delaware law and disregard the purpose of this Court's Sale Process. Specifically, SPA agreed between the Special Master and the Gold Reserve Consortium contains inappropriate contingencies, including that: (i) its financing continues to be contingent on the Gold Reserve Consortium's ability to close over the objection of the 2020 Bondholders; (ii) it offers an inadequate plan for dealing with adverse antitrust and regulatory contingencies; and (iii) it is conditioned upon the entry of an overbroad, bankruptcy-style Sale Order.[3]

**First**, the financing to close the transaction contemplated by the SPA continues to be contingent on the Gold Reserve Consortium's ability to merge a special purpose investment vehicle with Citgo Petroleum that could be derailed by the 2020 Bondholders. The Special Master

---

[1] The Special Master also filed a redacted copy of his Notice of Final Recommendation at D.I. 1837.

[2] The Gold Reserve Consortium consists of Gold Reserve Ltd., f/k/a Gold Reserve Inc. ("**Gold Reserve**"), Rusoro Mining Ltd. ("**Rusoro**"), Koch Minerals Sarl ("**KM**"), and Koch Nitrogen International Sarl ("**KNI**," and together with KM, "**Koch**"). *See, e.g.*, D.I. 1841-1 at Exhibit H, p. 2.

[3] The SPA is formally agreed to by the Special Master and Dalinar Energy Corporation ("**Dalinar**"), a wholly owned subsidiary of Gold Reserve.

1

confirms in his Final Recommendation that the proposed sale will be financed by a $4.5 billion bridge loan to Adolin Holdings, Inc., a subsidiary of Dalinar, which will, after an initial equity distribution to Attached Judgment Creditors, be merged with CITGO Petroleum Corporation. D.I. 1841, ¶ 72. Citgo Petroleum Corporation will then be "the new borrower on the acquisition financing incurred in connection with the Proposed Sale Transaction." *Id*. This proposed structure presents an unacceptable risk to closing. As explained during the Stalking Horse phase of this Sale Process, the 2020 Bondholders claim, among other things, to have a right to enjoin any such mergers on the basis that they impair the value of the 2020 Bondholders' claimed lien on 50.1% of the shares of CITGO Holding or violate the pledge agreement underlying the 2020 Bonds. *See* D.I. 1658 at 2.

Should the 2020 Bondholders prevail on the merits of their claim or obtain an injunction prohibiting the merger required to finance the Gold Reserve Consortium's proposed transaction, they could derail or unreasonably delay closing and thus the satisfaction of the Attached Judgment Creditors, as this Court has already found. *See* D.I. 1741 at 4 ("[A] successful bid in the Sale Process must, in one way or another, address the litigation risk posed by the 2020 Bondholders, as this risk (however great or small it may be) impacts the assessment of certainty of closing."). If the 2020 Bondholders were to obtain such an injunction or succeed on the merits, they could effectively block the merger contemplated by Gold Reserve's financing plans, and thus deprive the bid of its financing. That is why this Court has already cautioned that a successful bid should "address[] the possible impact of the 2020 Bondholders' rights—whatever they may be (in reality or potentiality)—on the certainty of closing, even if such bid does not eliminate that risk, provided that such bid meaningfully addresses (and neither ignores nor dismisses as if non-existent) that

2

risk." *Id.* The Gold Reserve Consortium's bid fails to do so and instead simply wishes the risks posed by the 2020 Bondholder litigation away.

At present, the only protection against the risk posed by the 2020 Bondholders in the Gold Reserve SPA is a non-specific right for the Special Master to terminate the SPA if the Gold Reserve Consortium fails to abide by its covenant to maintain financing for its bid or obtain alternative financing within a 45-day cure period. *See* D.I. 1841-1 at Exhibit B, Cl. 6.9 (obligating the buyer, among other things, to maintain financing and satisfy conditions to obtaining such financing); *id.*, Cl. 8.1(f) (permitting Special Master to terminate the SPA for breach of representations, warranties or covenants that would result in a failure to close and that are not cured within 45 calendar days or by the "Outside Date," whichever is sooner). But such a general term creates a risk of protracted litigation about whether it has been triggered, and whether the Special Master is in fact entitled to terminate the SPA upon the occurrence of certain events in the 2020 Bondholder litigation. That could delay the closing of the contemplated sale by months or years, further prejudicing the Attached Judgment Creditors by increasing the costs of this Sale Process and potentially degrading the value of the PDVH Shares in the interim, and further delaying the just satisfaction of creditors' judgments. There is no need to abide such an unnecessary risk here. The potential outcomes in the 2020 Bondholder litigation that could delay or derail the Gold Reserve Consortium's financing are well known to all parties and should be accounted for explicitly in the SPA.

Crystallex respectfully submits that any SPA approved by this Court that relies for financing on the assets of PDVH's subsidiaries to fund payments to the Attached Judgment Creditors in this action, and which does not contain a settlement with the 2020 Bondholders (or an alternative source of funds) should permit prompt termination of the agreement if, prior to closing, the 2020 Bondholders obtain a ruling—whether a preliminary injunction or otherwise—that

renders the contemplated financing infeasible and the bidder fails to cure the infeasibility by promptly providing alternative sources of financing—and in no event to exceed 30 days. Crystallex objects to the Special Master's Final Recommendation because it does not contain clear and express termination rights that would specifically permit a prompt termination of the SPA and restart of this Court's Sale Process or reversion to the next-highest bid in the event the 2020 Bondholders successfully interfere with the Gold Reserve Consortium's bid and proposed transaction.

**Second**, the issuance of securities in Dalinar to Koch presents a potential regulatory risk to closing if the Federal Trade Commission, Department of Justice, or other government agency deems that Koch's participation as a shareholder in Dalinar violates the antitrust laws of the United States. The Gold Reserve Consortium recognizes this risk but makes insufficient commitments to address it. *See* D.I. 1841-1 at Exhibit H, p. 2. Specifically, the Gold Reserve Consortium submitted with its bid a "Commitment to Take Certain Regulatory Efforts" that (i) any participant in the Gold Reserve Consortium will respond to any request received from such agency of the United States; (ii) any non-cash consideration issued to Koch will consist of non-voting shares, to the extent permissible by law; (iii) any party whose participation in Dalinar is subject to scrutiny by the United States will maintain protocols to prevent the elimination of competition between itself, each of its affiliates, and Dalinar; and (iv) such party shall not elect or designate for election to the board of directors of Dalinar any individual that serves as a director or officer of a Competing Affiliate.[4] However, these commitments may not be sufficient to secure regulatory approval,

---

[4] The commitment letter defines a Competing Affiliate as "a competitor of the assets that are the subject of this investment by Dalinar Energy such that the elimination of competition by agreement between such affiliate and Dalinar Energy would constitute a violation of any of the antitrust laws of the United States." D.I. 1841-1 at Exhibit H, p. 2.

4

particularly if Koch insists on appointing directors to the Dalinar board. To properly address this risk, the SPA should specifically require the Gold Reserve Consortium and each of its members to take specific actions required by regulatory authorities including (if needed) relinquishing board seats or proposing an alternative investment vehicle through which Koch or any other member of the Gold Reserve Consortium will invest in Dalinar. Crystallex objects to the Special Master's Final Recommendation because it does not contain such explicit terms requiring appropriate responses to known regulatory risks that remain a threat to closing the sale contemplated in the SPA and thus to the satisfaction of Crystallex's and other Attached Judgment Creditors' judgments.

**Third**, the scope of the Gold Reserve Consortium's Proposed Sale Order far exceeds what is appropriate in the context of an execution sale under Delaware law. To give one example, the Proposed Sale Order contains an overly broad release of claims by Attached Judgment Holders. *See* D.I. 1841-1 at Exhibit A, ¶ 15. While it is appropriate for the PDVH Shares to be sold free and clear of all liens and claims that stem from or relate to the shares' prior status as the property of Venezuela and PDVSA, it is not appropriate for PDVH to secure through this judicial sale a release on all potential claims against PDVH *qua* PDVH. The sweeping proposed Sale Order may be suitable for a bankruptcy sale but it is far too broad a release for this judicial sale under 8 *Del. C.* § 324. If the Gold Reserve Consortium's bid is contingent on such a broad release or any other form of bankruptcy-style release, the Gold Reserve Consortium may have inappropriately valued the asset they intend to acquire. Crystallex therefore objects to the Special Master's Final Recommendation to the extent the Proposed Sale Order would release such claims against PDVH for its own conduct or is otherwise inconsistent with the terms of this Court's Sale Process Order.

Crystallex reserves the right to expand upon or retract the objections contained in this initial notice in its forthcoming memorandum in support of objections, to be filed on July 23, 2025, per this Court's Briefing and Discovery Order, D.I. 1809.

| | |
|---|---|
| OF COUNSEL:<br><br>Robert L. Weigel<br>Jason W. Myatt<br>Rahim Moloo<br>Zachary Kady<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York  10166<br>(212) 351-4000<br><br>Miguel A. Estrada<br>Lucas C. Townsend<br>Adam M. Smith<br>GIBSON, DUNN & CRUTCHER LLP<br>1700 M Street, N.W.<br>Washington, D.C.  20036<br>Tel:  (202) 955-8500<br>Fax:  (202) 467-0539<br><br>Dated: July 7, 2025 | /s/ Travis S. Hunter<br>Raymond J. DiCamillo (#3188)<br>Jeffrey L. Moyer (#3309)<br>Travis S. Hunter (#5350)<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware  19801<br>(302) 651-7700<br>dicamillo@rlf.com<br>moyer@rlf.com<br>hunter@rlf.com<br><br>*Attorneys for Plaintiff* |