# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendants. | Misc. No. 17-151-LPS |

## 2020 BONDHOLDERS' NOTICE OF OBJECTION TO
## THE SPECIAL MASTER'S FINAL RECOMMENDATION

An ad hoc group of holders of a majority of PDVSA 2020 Bonds (the "2020 Bondholders")[1] submit this Notice of Objection to the Special Master's Final Recommendation (D.I. 1837) and accompanying Proposed Sale Order (D.I. 1837, Ex. A), Stock Purchase Agreement (D.I. 1837, Ex. B), and Related Documents (D.I. 1837, Exs. C-H).[2]

Determining the 2020 Bondholders' rights under the Indenture, Pledge Agreement and other documents governing the PDVSA 2020 Bonds is not before the Court in this action, which was brought by Crystallex, and later joined by other unsecured judgment creditors of PDVSA, in order to seek judicial sale of the PDVH shares. The Trustee and the Collateral Agent, at the direction of the 2020 Bondholders, have been engaged in litigation for more than five years before Judge Katherine P. Failla in the United States District Court for the Southern District of New York, where the scope of the 2020 Bondholders' rights under the Indenture, Pledge Agreement and related documents are squarely at issue and where, unlike here, the 2020 Bondholders and Venezuela Parties have had the opportunity to develop the factual and legal record necessary for a determination of the 2020 Bondholders' rights under those documents.

On June 26, the Trustee and the Collateral Agent—at the direction of the 2020 Bondholders—sought a conference before Judge Failla to address potential injunction proceedings

---

[1] The PDVSA 2020 Bonds were issued under an Indenture, dated as of October 28, 2016 (the "Indenture"), under which U.S. Bank National Association serves as the trustee (solely in its capacity as successor indenture trustee (the "Trustee")) and GLAS Americas LLC serves as collateral agent (solely in its capacity as collateral agent (the "Collateral Agent")) under a Pledge and Security Agreement, dated as of October 28, 2016 (the "Pledge Agreement"). The 2020 Bondholders understand that the Trustee and the Collateral Agent are filing joinders to this Notice of Objection.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters*, D.I. 481 (the "Sale Procedures Order").

in that court in light of the possibility that the Special Master would recommend a bid that would violate or impair the 2020 Bondholders' rights. *Petróleos de Venezuela S.A.* v. *MUFG Union Bank, N.A.*, Case No. 1:19-cv-10023-KPF, D.I. 380 (S.D.N.Y.). With the Special Master's recommendation of the Gold Reserve Consortium bid—which seeks to lever up CITGO Petroleum in order to send billions of dollars of value to structurally junior creditors through a transaction purposefully designed to evade the lien under the Pledge Agreement securing the rights of the 2020 Bondholders—the 2020 Bondholders intend to further direct the Trustee and the Collateral Agent to seek an injunction to protect their rights in the Southern District of New York and elsewhere if necessary. *See MUFG Union Bank*, D.I. 384. In response to the Trustee and Collateral Agent's June 26 letter, Judge Failla has scheduled a conference for July 10. *MUFG Union Bank*, D.I. 383.[3]

Notwithstanding that the 2020 Bondholders' rights are not before this Court and notwithstanding the Court's acknowledgement to the Special Master that it "understand[s] that [it] cannot intentionally take actions to interfere with or deprive [the 2020 Bondholders] of whatever rights they have," D.I. 1840-1 at 49:5-8, the Special Master nonetheless has proposed a Sale Order that appears designed to interfere with the 2020 Bondholders' ability to protect their rights. Various provisions of the Proposed Sale Order provide for injunctions, exculpations, and

---

[3] The 2020 Bondholders have consistently taken the position in these proceedings that any determinations of their rights under the Indenture, Pledge Agreement or other documents governing the PDVSA 2020 Bonds should be decided in the Southern District of New York. *See, e.g.*, D.I. 1558 at 3-4 ("Any litigation over whether the use of CITGO assets to finance a bid violates the Indenture and Pledge Agreement would also be subject to the jurisdiction of the United States District Court for the Southern District of New York; indeed, litigation elsewhere would improperly interfere with that Court's active and ongoing consideration of the Bondholders' rights under these very documents."); *see also* D.I. 1568 at 2; D.I. 1563 at 3. In fact, this Court has recognized that the scope of the 2020 Bondholders' rights are "not in [its] litigation," and that the 2020 Bondholders are "litigating [their rights] in another court." D.I. 1840-1 at 48:7-16.

2

nonconsensual releases all seeking to prohibit the Trustee, the Collateral Agent, and the 2020 Bondholders from litigating the scope of their rights under the documents governing the PDVSA 2020 Bonds while the value of their rights is judicially taken from them. These provisions go far beyond selling PDVSA's rights to the equity of PDVH.

For example, the Proposed Sale Order provides that "[a]ll Persons and entities are prohibited and enjoined from taking any action that adversely affects, interferes with, is likely to frustrate or is in any way inconsistent with the ability of the Special Master or his Advisors and agents to transfer the PDVH Shares to Buyer in accordance with the Transaction Documents." Proposed Sale Order ¶ 6. It also would impermissibly require "PDVH, CITGO and each of their direct and indirect subsidiaries, representatives, employees, agents, designees, successors, or assigns . . . to comply with all obligations and covenants contained in the Stock Purchase Agreement and Transaction Documents" irrespective of the 2020 Bondholders' rights. *Id.*

Further, the Proposed Sale Order states that parties who do not successfully object before this Court "consent to the relief granted [] in respect of the Sale Transaction and the Transaction Documents for all purposes." Proposed Sale Order ¶ 2. It further purports to protect the Gold Reserve Consortium and related parties from a wide array of claims, and asserts this Court's jurisdiction over broad categories of potential claims, including all causes of action that "arose or arise from, in whole or in part, the Special Master Order, the Sale Procedures Order, the Bidding Procedures, [the Proposed Sale Order], any other orders of this Court in this Action, or any cause of action related to the Sale Transaction." Proposed Sale Order ¶¶ 6, 13 25. But it is improper for the Proposed Sale Order to purport to restrict the Trustee, the Collateral Agent, and the 2020 Bondholders from bringing claims against those who infringe upon their rights, including,

3

for example, tortious interference claims against Gold Reserve, Koch, and Rusoro, as well as the Financing Parties.

Accordingly, the 2020 Bondholders object to the Special Master's Final Recommendation (i) on the grounds that the Stock Purchase Agreement, Proposed Sale Order, and Related Documents purport to impermissibly restrict the Trustee, the Collateral Agent, and the 2020 Bondholders from enforcing or protecting their rights under the Indenture, Pledge Agreement and related documents, or from bringing claims against third parties arising as a result of the Sale; (ii) to the extent the Stock Purchase Agreement, Proposed Sale Order, and Related Documents violate, or require persons or entities to violate, applicable law, including fiduciary duty, fraudulent transfer, prohibitions on illegal dividends, and other similar legal requirements, or purport to relieve persons or entities for such legal violations; and (iii) to the extent the Stock Purchase Agreement, Proposed Sale Order, and Related Documents purport to impose requirements on CITGO Holding or CITGO Petroleum that are inconsistent with the rights of the Trustee, the Collateral Agent, and the 2020 Bondholders.  The 2020 Bondholders further object on the ground that the Special Master conducted a deficient process in which he failed to generate highest and best bids by instead encouraging bids that contemplate transactions that have no meaningful prospect of closing.  As previously stated, and to be clear, the 2020 Bondholders have no objection to any transaction that does not violate their rights under the Indenture, the Pledge Agreement, and related documents, or to any Sale Order that does not authorize, direct or immunize any party to violate such rights.

The 2020 Bondholders reserve the right to object on additional grounds, and to raise additional arguments, not raised above, including but not limited to those informed by discovery.

Dated: Wilmington, Delaware
July 7, 2025

Respectfully submitted,

| | |
|---|---|
| <u>/s/ Daniel A. Mason (#5206)</u> | OF COUNSEL: |
| Daniel A. Mason (#5206) | Jeffrey J. Recher |
| PAUL, WEISS, RIFKIND, | Paul A. Paterson |
|     WHARTON & GARRISON LLP | Tyler B. Myers |
| 1313 North Market St., Suite 806 | PAUL, WEISS, RIFKIND, |
| Wilmington, DE 19801 |     WHARTON & GARRISON LLP |
| Telephone: 302-655-4410 | 1285 Avenue of the Americas |
| Facsimile: 302-655-4420 | New York, New York 10019-6064 |
| Email: dmason@paulweiss.com | Telephone: 212-373-3000 |
| | Facsimile: 212-757-3990 |
| *Counsel for the 2020 Bondholders* | Email: jrecher@paulweiss.com |
| | Email: ppaterson@paulweiss.com |
| | Email: tmyers@paulweiss.com |