**ABRAMS & BAYLISS LLP**
20 Montchanin Road, Suite 200
Wilmington, DE 19807
Main: 302-778-1000
Fax: 302-778-1001

Christopher Fitzpatrick Cannataro

Direct Dial Number
302-778-9367
Cannataro@AbramsBayliss.com

June 25, 2025

**VIA ELECTRONIC FILING**
The Honorable Leonard P. Stark
U.S. Court of Appeals for the Federal Circuit
717 Madison Place NW
Washington, D.C. 20439

PUBLIC VERSION FILED
JULY 9, 2025

Re: *Crystallex International Corporation v. Bolivarian Republic of Venezuela*, C.A. No. No. 17-mc-151-LPS (D. Del.)

Dear Judge Stark:

I write on behalf of the Republic, and am joined by counsel for PDVSA, to add a few points to the letter of last night from counsel for CITGO and PDVH, and in response to Gold Reserve's emergency letter request (D.I. 1816). As Gold Reserve's letter intimates, and as the Venezuela Parties warned when they opposed the selection of Red Tree as stalking horse bidder, the sale process has devolved into a contest to determine which bidder would do a better job at satisfying the 2020 Bondholders—who are not parties to this proceeding, do not hold an Attached Judgment (or any judgment), and do not even have a valid claim. The mismanagement of the topping period has distorted incentives and threatens to destroy value, making it near certain that, even if one or more of the bidders increases its bid in the next few days, no bid will offer enough value to deserve the Special Master's recommendation or the Court's approval.

The Special Master's representatives have attempted to justify the weight they place on satisfying the 2020 Bondholders by erroneously claiming that such arrangements promote certainty, as if that were the primary goal of the sale process. But that misguided emphasis has led only to new uncertainties and other complications, for example (without limitation):

- By insisting that bidders satisfy the 2020 Bondholders to win in the topping period, the Special Master is destroying and diverting value, in violation of the command of 8. *Del. C.* § 324 that only such shares be sold "as shall be sufficient to satisfy the debt, or demand" for which the shares were attached. An order approving a sale on the terms sought by the Special Master would be *ultra vires* under Delaware law. *See* April 17, 2025 Hearing Tr. 229.

The Honorable Leonard P. Stark
June 25, 2025
Page 2

- The Special Master's insistence that bidders propose a deal with the 2020 Bondholders has also granted the 2020 Bondholders extraordinary leverage and has allowed them to highjack the sale process to their benefit and to the detriment of Attached Judgment Creditors and PDVSA. *See* April 17, 2025 Hearing Tr. 228-29. Indeed, the Transaction Support Agreement ("TSA") that accompanied Red Tree's stalking horse bid would pay the 2020 Bondholders more than the entire principal amount of their claims—despite the hotly contested nature of the 2020 Bondholders' claims. D.I. 1627-1, at 40. And instead of providing for a release of the 2020 Bondholders' claims, the TSA would merely transfer the claims to a post-sale CITGO entity, presumably to enable that entity (under new ownership) to continue to assert those claims against PDVSA. *Id.*; *see also* D.I. 1596-2 at 35 & n.3. This is unacceptable.

Thus, not only has the Special Master's preference for an agreement with the 2020 Bondholders improperly depressed the amounts bid; it has not even served his intended objective of increasing certainty.[1]

As always, counsel for the Republic and PDVSA are available should the Court have any questions.

Respectfully,

*/s/ Christopher Fitzpatrick Cannataro*

Christopher Fitzpatrick Cannataro (#6621)

CFC/

---

[1] In an effort to mitigate the damage caused by the Special Master's insistence on an agreement with the 2020 Bondholders, and without waiving any objection to that approach, PDVSA advised the Special Master's counsel that, in the event that the winning bid includes a TSA or similar agreement and PDVSA prevails in the 2020 Bondholders litigation, any money allocated to the 2020 Bondholders under that agreement would be directly attributable to the value of the PDVH shares and therefore should be treated as proceeds from the sale of the shares for the benefit of junior Attached Judgment Creditors. *See* Ex. A (Letter from PDVSA's Counsel to the Special Master's Counsel dated June 23, 2025).

# EXHIBIT A

REDACTED IN ITS ENTIRETY