# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>    Plaintiff,<br><br> v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Case No. 1:17-mc-00151-LPS |

## CONOCOPHILLIPS' LIMITED OBJECTION TO SPECIAL MASTER'S FINAL RECOMMENDATION

Sale Process Parties Phillips Petroleum Company Venezuela Limited, ConocoPhillips Petrozuata B.V., ConocoPhillips Gulf of Paria B.V., and ConocoPhillips Hamaca B.V. (Plaintiffs in Cases No. 19-mc-00342-LPS, No. 22-mc-00264-LPS, and No. 22-mc-00464-LPS) ("ConocoPhillips") respectfully submit this limited objection to the Special Master's Final Recommendation (D.I. 1837):

## LIMITED OBJECTION

Overall, ConocoPhillips believes that the Special Master's Final Recommendation should be approved as a reasonable exercise of his discretion.

This limited objection raises one issue as to which there may be insufficient clarity in the Stock Purchase Agreement ("SPA"): What happens if an injunction or other order, judgment or decree is issued with respect to the purported rights of the PDVSA 2020 Bondholders, including in the pending New York litigation (*Petroleos De Venezuela S.A. et al* v. *MUFG Union Bank, N.A.*, No. 19-cv-10023 (S.D.N.Y.)), that makes Gold Reserve's financing structure impracticable? ConocoPhillips interprets the SPA provisions, described below, to say that this would amount to a breach of the SPA, and Gold Reserve would then have forty-five (45) days after entry of any such order in favor of the 2020s to secure alternative financing, failing which the Special Master may ask the Court's permission to terminate the SPA. However, this interpretation of the SPA is dependent on parsing several interrelated provisions, and ConocoPhillips believes that the issue is sufficiently important that it should be abundantly clear in conjunction with the Court's approval of any sale what the correct procedure and consequences will be in such an event.

The SPA provides that the Special Master may (subject to court approval) terminate the Agreement "if there shall have been a breach by the Buyer of any of its representations, warranties, covenants or agreements contained in this Agreement, which breach would result in the failure to

satisfy one or more of the conditions set forth in Section 7.3(a) or Section 7.3(b), and in any such case such breach shall be incapable of being cured or, if capable of being cured, shall not have been cured prior to the earlier of (i) forty-five (45) calendar days after providing written notice of such breach to the Buyer and (ii) the Outside Date." SPA § 7.3(f) (D.I. 1837-1 at 118).  One of those conditions is that Gold Reserve must "satisfy on a timely basis (or obtain a waiver of) all conditions applicable to the Buyer contained in the Debt Financing Commitments and Equity Financing Commitments" and otherwise maintain the Debt Commitments Letters in effect.  SPA § 6.9(b).

The Debt Commitment Letters, in turn, require that "[t]here shall not be in effect any Law or Order by a Governmental Body (as defined in and as interpreted in accordance with Section 7.1(a) of the Acquisition Agreement) of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the Transactions." D.I. 1837-1 at 506.  The entry of an injunction or other order, judgment or decree validating or otherwise enforcing the purported rights of the PDVSA 2020 Bondholders could, in ConocoPhillips' view, cause the Closing Date representations regarding the Debt Financing to not be satisfied (SPA § 5.7), resulting in a potential termination event under Section 7.3.  However, there have been indications that various parties may interpret these provisions differently, and ConocoPhillips believes the Court should provide clarity for all parties.

Gold Reserve and all other bidders are well aware of the potential impact of an adverse ruling with respect to the 2020 Bonds and can reasonably anticipate that changes in the current landscape, in which the validity of the Bonds is still undecided, will impact their bid.  By supporting the Special Master's Final Recommendation, ConocoPhillips, which is the third-most-senior creditor, does not oppose the Special Master's decision to value the ability to pay more

creditors over closing certainty. But if the uncertainty created by the 2020 Bondholder Litigation and the potential risks for the proposed financing structure were *actually to come to fruition* in the form of an order that effectively blocks or renders impracticable Gold Reserve's proposed financing, Gold Reserve should not be able to maintain exclusivity on what would then amount to a non-actionable bid. Nor should the Special Master and judgment creditors be required to litigate with Gold Reserve as to whether it can require them to wait until the Outside Date to see if Gold Reserve can cure the situation. Particularly because Gold Reserve's acquisition vehicle is a shell entity with minimal assets, the shell entity's promise to close the transaction in the absence of the financing is hollow — without the financing there is no prospect of actually closing the transaction. Thus, a change in the status quo with respect to the 2020 Bondholders' currently contested pledge should clearly trigger the Special Master's ability to terminate, subject to Gold Reserve's 45-day opportunity to cure.

Additionally, ConocoPhillips concurs in Crystallex's position in Point III of its Objection that the releases provided in the Sale Order should be limited to claims and liens against the purchased asset, the PDVH Shares. ConocoPhillips further respectfully reserves the right to interpose additional objections in the event that discovery reveals issues of significance of which it did not have prior knowledge.

## CONCLUSION

For the reasons set forth above, although ConocoPhillips otherwise supports the Final Recommendation, it requests that the Court enter an order clarifying that in the event Gold Reserve's proposed financing structure becomes impracticable due to developments involving the 2020 Bondholders, this process will pivot to seeking an alternate transaction unless Gold Reserve is able to secure alternate financing within the 45-day cure period.

<div style="display:flex">
<div>

*Of Counsel*:

Michael S. Kim
Marcus J. Green
Josef M. Klazen
Lydia L. Halpern
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200
michael.kim@kobrekim.com
marcus.green@kobrekim.com
jef.klazen@kobrekim.com
lydia.halpern@kobrekim.com

Richard G. Mason
Amy R. Wolf
Michael H. Cassel
WACHTELL, LIPTON, ROSEN
 & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1000
RGMason@wlrk.com
ARWolf@wlrk.com
MHCassel@wlrk.com

Dated: July 24, 2025

</div>
<div>

Respectfully submitted,

ROSS ARONSTAM & MORITZ LLP

*/s/ Garrett B. Moritz*
Garrett B. Moritz (Bar No. 5646)
Elizabeth M. Taylor (Bar No. 6468)
1313 North Market Street, Suite 1001
Wilmington, Delaware 19801
(302) 576-1600
gmoritz@ramllp.com
etaylor@ramllp.com

*Attorneys for Phillips Petroleum Company Venezuela Limited, ConocoPhillips Petrozuata B.V., ConocoPhillips Gulf of Paria B.V., and ConocoPhillips Hamaca B.V.*

</div>
</div>