Exhibit 4

**EXHIBIT C**

**LETTER OF VENEZUELA PARTIES**



**Eimer Stahl LLP**
**224 South Michigan Avenue, Suite 1100**
**Chicago, Illinois 60604**
**Tel 312 660 7600   Fax 312 692 1718**

August 4, 2022

**<u>VIA ELECTRONIC MAIL</u>**

Mr. Robert Pincus
Special Master
108 Rockford Grove Lane
Wilmington, DE 19806

Re:     ***Crystallex International Corporation v. Bolivarian Republic of Venezuela et al.,***
        **C.A. No. 17-mc-151-LPS**

Dear Special Master Pincus:

        We write on behalf of PDV Holding, Inc. ("PDV Holding") and CITGO Petroleum Corp.
("CITGO") (collectively, the "Companies") in response to recent requests made by counsel to
owners or holders of the Petróleos de Venezuela, S.A. ("PDVSA") 8.50% Senior Secured Notes
due 2020 (the "2020 Bondholders").  More specifically, we understand that counsel to the 2020
Bondholders has requested to participate in any future sale process in the above-referenced matter,
and that the Special Master is contemplating permitting them to do so.  The Companies have
numerous objections and concerns regarding this potential arrangement.  Finally, the Companies
also include in this letter one objection to the revised proposed sale procedure.

I.      **The Special Master Has No Jurisdiction to Assist the 2020 Bondholders in**
        **Settling, Resolving, or Otherwise Transacting Regarding Their Purported**
        **Claims.**

        The Special Master may not engage in settling or otherwise resolving the 2020
Bondholders' claim because he lacks jurisdiction to do so.  In short, the Special Master has no
authority to settle, resolve, transact in, or otherwise affect *any* property other than the attached
shares of PDVH.  And he also has no authority to do anything with regard to the only property that
the 2020 Bondholders are concerned with – the CITGO Holding stock of PDVH that has not been
attached by anyone and is not at issue in this case.   These facts preclude the Special Master from
taking on any role in disposing of the 2020 Bondholders' alleged[1] claim.

        The Special Master's jurisdiction to act cannot exceed that of the court that appointed him.
D.I. 469 at 5. The U.S. District Court for the District of Delaware (the "Court") retained the Special
Master for the purpose of designing and implementing a sale of the PDVH shares.  The Court's
jurisdiction over the PDVH shares is premised solely on its finding that PDVSA was the alter ego
of the Republic in August 2018 and that Crystallex established jurisdiction under exceptions to the

---

[1] Whether the Bondholders have any claim at all remains in dispute before the U.S. Court of Appeals for the Second
Circuit.



Eimer Stahl LLP
224 South Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Tel 312 660 7600   Fax 312 692 1718

FSIA *as to that particular property*, thus enabling the Court to issue an attachment on PDVSA's shares of PDVH.  *E.g.*, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 424 (D. Del. 2018) (explaining that the writ of attachment is directed "to specifically-identified property, here the shares of PDVH").

The fact that the Court has jurisdiction over the shares of PDVH <u>does not</u> give it jurisdiction over PDVH's property or the property of any subsidiary of PDVH.  PDVH's property does not belong to PDVSA.  *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary; and, it follows with even greater force, the parent does not own or have legal title to the subsidiaries of the subsidiary."); *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 687 (Del. Ch. 1959) ("A creditor of the parent corporation may not, in the absence of fraud, disregard the separate existence of a subsidiary corporation and look directly to specific assets of a subsidiary for satisfaction of his claim against the parent.").  Nor can the Court—or the Special Master—assert control over PDVH's property by virtue of the Court's finding that PDVSA was—in August 2018—the alter ego of Venezuela for jurisdiction and immunity purposes.  That finding extends only to PDVSA, not to any of its subsidiaries.  *See In re The Heritage Org., L.L.C.*, 413 B.R. 438, 514 (Bankr. N.D. Tex. 2009) ("[T]he Delaware [alter ego] test must be applied to, and satisfied at, each level or layer of ownership applicable within the multi-faceted entity structure."); *accord In re HH Liquidation, LC*, 590 B.R. 211, 273 (Bankr. D. Del. 2018); *Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 729 (Del. Super. Ct. 1996) (observing that, where sister corporations were alleged alter egos, plaintiff had to pierce the veils between the sisters' shared parent and each sister separately, so as to account for the entirety of the corporate family tree).

Thus, the Special Master does not have jurisdiction over—or the power to sell, restructure, finance, or negotiate regarding—PDVH's assets, liens, or liabilities, or over the assets, liens, or liabilities of PDVH's subsidiaries or affiliates.  This is, after all, not a restructuring.  Indeed, even the unique powers afforded to a bankruptcy trustee—authority *not* enjoyed by the Special Master in this judgment execution proceeding—do not extend as far as the Special Master is contemplating here.  Section 363 of the Bankruptcy Code permits a trustee to enter transactions on behalf of a debtor—but does not permit entry of transactions on behalf of a debtor company's subsidiaries.  *Cf. In re El Paso Refinery, L.P.*, 257 B.R. 809, 814 (Bankr. W.D. Tex. 2000) (describing potential bankruptcy-trustee transaction that was unable to obtain "free and clear" protection under Section 363(f) because it pertained to the debtor's subsidiary, which was not itself in bankruptcy, posing a "serious jurisdictional impasse").  Accordingly, the Special Master lacks any authority to take action regarding, facilitate settlement regarding, attempt to sell, or otherwise deal with the Bondholders' purported lien over the *unattached* CITGO Holding stock—this would amount to involvement in a pledge of the CITGO Holding stock, which is itself an *asset of PDVH* that is outside of his jurisdictional ambit.  Indeed, involvement by the Special Master in the commercial relations and property of PDVH may amount to tortious interference with PDVH's commercial relations.



Eimer Stahl LLP
224 South Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Tel 312 660 7600   Fax 312 692 1718

## II.    Assisting the 2020 Bondholders in Disposing of the Collateral Pledged as Part of Their Bonds Would Violate an Order of the U.S. District Court for the Southern District of New York.

The Companies further object to any request by the 2020 Bondholders to participate in these proceedings for the purpose of marketing, and eventually selling, the "collateral" pledged as part of the PDVSA 2020 Bonds.  Any attempt to sell that supposed collateral "or otherwise to exercise any rights, remedies, or privileges purportedly arising from a default or Event of Default under the [2020 Notes] Pledge Agreement" is in clear violation of an existing stay issued by the Southern District of New York in *Petróleos de Venezuela, S.A., et al. v. MUFG Union Bank, N.A., et al.*, Case No. 1:10-cv-10023-KPF, and is well outside the jurisdiction of this Court.  It would be inefficient, counterproductive, and wasteful to force the parties to undertake separate motions practice in the Sothern District of New York to enforce the plain terms of the stay.

As background, an appeal filed in part by PDV Holding in *PDVSA v. MUFG Union Bank*, No. 20-3858, is currently pending before the Second Circuit.  That appeal seeks to reverse Judge Katherine Polk Failla's December 1, 2020 grant of summary judgment, finding that the 2020 Bonds, Indenture, and Pledge Agreement were valid and enforceable and that, as a result, the 2020 Bondholders can access PDVH's 50.1% share of CITGO Holding, Inc. ("CITGO Holding") equity pledged as collateral within the Pledge Agreement.  While that appeal is pending, Judge Failla has issued a broad stay preventing any action to enforce the judgment pertaining to the collateral, ordering in part that:

> Defendants MUFG Union Bank, N.A. and GLAS Americas LLC, any owners or holders of the 2020 Notes or beneficial interests therein, and any other parties claiming an interest in the 2020 Notes or a security interest in the Pledged Shares, **shall not attempt to enforce the Pledge Agreement or otherwise to exercise any rights, remedies, or privileges purportedly arising from a default or Event of Default under the Pledge Agreement, including by attempting to sell the collateral securing the 2020 Notes[.]**

*Petróleos de Venezuela, S.A., PDVSA Petróleo, S.A., and PDV Holding, Inc. v. MUFG Union Bank, N.A. and GLAS Americas LLC,* Case No. 19-cv-10023, ECF 241 at 7 (S.D.N.Y. 2019) (emphasis added) (attached hereto as Exhibit A).  That stay remains in effect "unless and until the final disposition of the Plaintiffs' appeal before the Second Circuit; or until it is superseded by another order of this Court or a higher court."  *Id*.

As a result, any "attempt" by 2020 Bondholders to exercise "any rights" to the pledged collateral in CITGO Holding shares—including any attempt "*to sell the collateral*"—would violate Judge Failla's stay.  *Id*. Our understanding of the 2020 Bondholders' request to the Special Master is that they seek to participate in the proposed sale process to do just that: to negotiate a single sale, wherein the Bondholders' potential interest in the pledged CITGO Holding stock would be included alongside any sale of PDV Holding equity.  This is a plain "attempt" to exercise a "right" arising from the "[e]vent of Default under the Pledge Agreement"—indeed, it is on its

3



**Eimer Stahl LLP**
224 South Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Tel 312 660 7600   Fax 312 692 1718

face an "attempt[] … to sell the collateral securing the 2020 Notes." *Id*.  In turn, any efforts by this Court to include the 2020 Bondholders in the proposed sale process would enable a clear violation of an order from a sister court.

What is more, for reasons explained in more detail in Section I of this letter, such a sale would require the disposition of claims and property outside of this Court's jurisdiction.  Indeed, the question of whether the 2020 Bondholders retain *any* rights to a 50.1% share of CITGO Holding—and thus whether there is any interest to include in a sale—is unresolved and squarely before the Second Circuit.  Because neither the 2020 Bondholders' claims nor CITGO Holding are before the Court here, this Court has no jurisdiction to arrange for, supervise, or compel the sale of the collateral or otherwise adjudicate the issues that govern access to that collateral.

### III.    Inclusion of the 2020 Bondholders in Discussions with OFAC Will Complicate These Proceedings.

The proposal to include the 2020 Bondholders in discussions with OFAC surrounding the PSPO also is a recipe for further complication and delay.  The 2020 Bondholders are seeking entirely different relief from OFAC than any of the parties in the case here, and any effort to market or sell their collateral (apart from being barred by the stay) would require OFAC to amend its current suspension of General License 5.  If and only if the stay is lifted and the suspension of General License 5 is ended would the Bondholders have any legally enforceable rights to their so-called "collateral."  OFAC's process relating to General License 5 is separate and distinct from its process respecting Crystallex's license application, and involves different parties, corporate entities, and policy considerations.  Importing those considerations into the Special Master's engagement with OFAC will increase the number of participants at any eventual meeting, increase the number and complexity of licensing considerations before OFAC, and trigger a far lengthier and more cumbersome interagency review process.  In sum, adding the 2020 Bondholders to the Special Master's engagements with OFAC will significantly complicate the issues to be resolved, with no discernible benefit to any of the parties here.

*         *         *

Overall, the Companies strongly object to any further attempts by the 2020 Bondholders to insert themselves and their potential interests into the proposed sale process.  Any efforts by the Special Master that would exceed his jurisdictional authority may require motion practice.  Any further efforts by the Bondholders in this regard may also necessitate filing for relief in the Southern District of New York, seeking to enforce the plain terms of the stay—which we continue to believe would be inefficient, counterproductive, and wasteful—as well as additional motions practice in this Court related to any future actions attempting to adjudicate or otherwise give effect to the Bondholders' claims to the collateral.



Eimer Stahl LLP
224 South Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Tel 312 660 7600   Fax 312 692 1718

### IV.    Paragraph 40 of the Revised PSPO Requires Revision to Comport with the Court's July Order and Crystallex's Position

Finally, Paragraph 40 of the Fifth Revised Proposed Sale Procedures Order is inconsistent with the July 27 Order and unduly restricts CITGO's and PDVH's ability to communicate with potential bidders. The Fourth Revised Proposed Sale Procedures Order required all Sale Process Parties except the Republic and PDVSA to obtain written permission or court authorization before communicating with potential bidders and required PDVSA and the Republic to provide notice to the Special Master regarding such communications. D.I. 451-1 ¶ 39. The Venezuela Parties objected that they should be able to "communicat[e] with bidders without preapproval" and that "CITGO and PDVH should be permitted to communicate with Potential Bidders" on the same terms as the Republic and PDVSA. D.I. 457 at 6, 8. Crystallex agreed, proposing that CITGO and PDVH be required to provide the Special Master with "advance notice" before contacting potential bidders and ensure that "any information provided to potential bidders … be made available to the Special Master and all other potential bidders." D.I. 459 at 8. The Court sustained the Venezuela Parties' objection and "direct[ed] the Special Master to work with the Sale Process Parties to include language in the forthcoming version of the Order to accomplish this goal." D.I. 467 at 7. The Special Master has not lifted any restrictions on PDVH's and CITGO's ability to communicate with potential bidders—instead, through clause (c) in Paragraph 40, the Special Master has reiterated that CITGO and PDVH must obtain written preapproval to communicate with Potential Bidders while PDVSA and the Republic do not. Consistent with the July 27 Order and Crystallex's proposal, the Special Master should revise Paragraph 40 so that PDVH and CITGO are, like the Republic and PDVSA, able to communicate with potential bidders as long as they provide notice to the Special Master, but without requiring written preapproval.

Respectfully Submitted,

/s/ Nathan P. Eimer
Eimer Stahl LLP
224 S. Michigan Ave, Suite 1100
Chicago, IL 60604
neimer@eimerstahl.com

/s/ Michael Gottlieb
Willkie Farr & Gallagher LLP
1875 K Street, NW
Washington, DC 20006
mgottlieb@willkie.com

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETROLEOS DE VENEZUELA S.A.; PDVSA
PETROLEO S.A.; and PDV HOLDING, INC.,

               Plaintiffs,

               -v.-

MUFG UNION BANK, N.A. and GLAS
AMERICAS LLC,

               Defendants.

19 Civ. 10023 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

On December 11, 2020, Plaintiff PDV Holding, Inc. ("PDVH") filed a
motion for a partial stay of the execution of enforcement of the Court's
December 1, 2020 Final Judgment (the "Final Judgment" (Dkt. #229)) during
the pendency of PDVH's appeal (Dkt. #233). Defendants submitted their
opposition to PDVH's motion on December 18, 2020 (Dkt. #237, 238), and
PDVH submitted its reply on December 22, 2020 (Dkt. #239). For the reasons
set forth in the remainder of this Order, PDVH's motion is granted.[1]

The Court has carefully considered the parties' submissions on this
issue. And the Court sympathizes with Defendants' position that the Indenture
and Pledge Agreement contemplate an immediate nonjudicial foreclosure and
eventual sale of the Collateral in case of an Event of Default. However, it is for
this very reason that the Court thinks it necessary to grant PDVH the relief to

---

[1]     Unless otherwise defined herein, capitalized terms shall have the meanings assigned to
them in this Court's Opinion and Order dated October 16, 2020. (Dkt. #215).

which it is entitled under Rule 62(b) of the Federal Rules of Civil Procedure. Defendants have made clear their intent to exercise this remedy if sanctions are lifted during the pendency of PDVH's appeal,[2] which would effectively moot the appeal. While the Court maintains the positions set forth in its October 16, 2020 Opinion and Order on the issues presented by the parties' cross-motions for summary judgment (Dkt. #215), it agrees with PDVH that a partial stay is warranted to allow PDVH the opportunity to pursue its appeal.

PDVH has requested a stay of the Court's judgment authorizing the sale of its majority stake in CITGO (the "Pledged Shares") on the grounds that such relief is warranted under Rule 62(b) of the Federal Rules of Civil Procedure, and in the alternative, that it is entitled to a partial stay pursuant to Rule 62(f) of the Federal Rules of Civil Procedure. The Court agrees with Defendants that Rule 62(f) does not provide PDVH with grounds to seek a partial stay under the requirements set forth in *Fed. Deposit Ins. Corp.* v. *Ann-High Assocs.*, No. 97-6095, 1997 WL 1877195, at *4 (2d Cir. 1997) (per curiam), in particular, the requirement that PDVH establish that state law entitles it to appeal without a bond. In its briefing, PDVH cites to New York law creating a right to a stay where "the judgment or order directs the assignment or delivery of personal property, and the property is placed in the custody of an officer designated by the court." N.Y. C.P.L.R. 5519(a)(4). The scope of such a stay "is restricted to

---

[2]     The Court acknowledges the Trustee and Collateral Agent's letter of December 23, 2020, informing the Court of OFAC's issuance of General License 5F. (Dkt. #240). The Court understands that General License 5F continues to restrict Defendants' ability to take action with respect to the Pledged Shares through July 21, 2021.

the executory directions of the judgment or order appealed from which command a person to do an act, and [] the stay does not extend to matters which are not commanded but which are the sequelae of granting or denying relief." *Pokoik* v. *Dep't of Health Servs.*, 641 N.Y.S.2d 881, 884 (2d Dep't 1996) (per curiam). The provisions of the Final Judgment that PDVH seeks to stay "contain no direction that a party perform an act," are "not executory," and accordingly, are not stayed pursuant to N.Y. C.P.L.R. 5519(a)(4). *Id.*

However, PDVH has established that it is entitled to a partial stay pursuant to Rule 62(b) of the Federal Rules of Civil Procedure. Rule 62(b) provides that "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b). The Pledge Agreement suffices to satisfy the "other security" requirement of Rule 62(b), as it assures that the Pledged Shares will be maintained in their current form for the duration of the appeal. The Court agrees with *Deutsche Bank National Trust Co.* v. *Cornish*, 759 F. App'x 503, 509 (7th Cir. 2019), in which decision the Seventh Circuit observed that Rule 62(b) made "explicit the opportunity to post security in a form other than a bond." There, the Court determined that given the "explicit flexibility" in Rule 62(b), "continuing an existing security interest in the property that a lender required as a condition of the loan should provide adequate security in most cases" where the "property is cared for and protected." *Id.* at 509-10. Here, the Pledged Shares similarly provide the Defendants with adequate security. Having considered the factors set forth by the Second Circuit in *In re Nassau County Strip Search*, 783 F.3d 414, 417-18

3

(2d Cir. 2015) (per curiam),[3] the Court's view is that no additional security is

necessary. *See generally In re Bakery & Confectionary Union & Indus. Int'l*

*Pension Fund Pension Plan*, No. 11 Civ. 1471 (VB), 2013 WL 12444540, at *2

(S.D.N.Y. Jan. 29, 2013) (determining that a bond was "unnecessary" where the

movant's assets were held in trust, most of the movant's assets were "invested

in readily marketable securities," and the beneficiaries "who would receive

payments if the judgment is affirmed will be paid within thirty to ninety days

thereafter").[4]

Moreover, the Court may exercise its equitable powers to stay

proceedings to protect the status quo during the pendency of PDVH's appeal.

*See Nken* v. *Holder*, 556 U.S. 418, 421 (2009) ("[I]t 'has always been held, …

that as part of its traditional equipment for the administration of justice a

---

[3]  While Rule 62 was amended in 2018, courts continue to rely on the *Nassau County* factors in determining whether to waive the bond or other security requirements of Rule 62(b).  *See, e.g., Xerox Corp.* v. *JCTB Inc.*, No. 18 Civ. 6154 (MAT), 2019 WL 6000997, at *3 (W.D.N.Y. Nov. 14, 2019).

[4]  Defendants argue that Rule 62(b) does not apply here because it is limited to money judgments rather than declaratory judgments.  (*See* Dkt. #237 at 9-11).  Defendants also characterize PDVH's application as seeking injunctive relief, and argue that Rule 62(b) does not apply on that basis as well.  (*Id.* at 12-17).  With respect to the former argument, the Court agrees with PDVH that the Final Judgment is, in effect, monetary, inasmuch as it awards Defendants monetary damages amounting to approximately $1.924 billion.  (Final Judgment at 2).  And as to Defendants' argument that PDVH is seeking an injunction, the Court does not understand PDVH to have requested that the Court enjoin the Trustee and Collateral Agent from exercising contractual rights that exist independent of the Final Judgment, as the rights at issue are dependent on the Final Judgment's determination as to the validity of the Pledge Agreement.  Rather, the Court understands PDVH to have requested to stay those provisions of the Final Judgment authorizing the Trustee and Collateral Agent to take conduct that would alter the status quo — such application falls within the bounds of Rule 62(b).  *See Nken* v. *Holder*, 556 U.S. 418, 428-29 (2009) (observing that while "in a general sense, every order of a court which commands or forbids is an injunction," a stay "operates upon the judicial proceeding itself … either by halting or postponing some portion of the proceeding, or by temporarily divesting an order of enforceability" (citations, quotation marks and alterations omitted)).

4

federal court can stay the enforcement of a judgment pending the outcome of an appeal.'" (quoting *Scripps-Howard Radio, Inc.* v. *Fed. Commc'ns Comm'n*, 316 U.S. 4, 9-10 (1942))).[5]

Therefore, having considered PDVH's motion to issue a partial stay of execution of the Final Judgment pending final resolution of Plaintiffs' appeal by the United States Court of Appeals for the Second Circuit, this Court hereby ORDERS that:

1.   PDVH's motion is GRANTED;

2.   From the date hereof through the issuance of a mandate by the United States Court of Appeals for the Second Circuit resolving Plaintiffs' appeal, execution of the Court's Final Judgment is STAYED with respect to all portions of the Final Judgment pertaining to the Pledge Agreement, including but not limited to:

     a.   The grant of judgment in favor of Defendants and Counterclaim Plaintiffs the Trustee and the Collateral Agent

---

[5]   Application of this power to stay an order is guided by a "well-established" four-factor test. *In re A2P SMS Antitrust Litig.*, No. 12 Civ. 2656 (AJN), 2014 WL 4247744, at *2 (S.D.N.Y. Aug. 27, 2014). The factors include: "[i] whether the stay applicant has made a strong showing that he is likely to succeed on the merits; [ii] whether the applicant will be irreparably injured absent a stay; [iii] whether issuance of the stay will substantially injure the other parties interested in the proceeding; and [iv] where the public interest lies." *Id.* (citing *Nken*, 556 U.S. at 434). While PDVH and Defendants have not submitted briefing on the application of this test to the instant matter, given PDVH's representations as to the potential consequences of the execution of the Final Judgment on PDVH and the CITGO Entities, not to mention the potential collateral political consequences (*see* Dkt. #237 at 7-8), the Court easily concludes that PDVH has established irreparable injury, one of the most "critical" factors in this analysis. *Nken*, 556 U.S. at 434; *see also Crystallex Int'l Corp.* v. *PDV Holding Inc.*, No. 15 Civ. 1082 (LPS), 2019 WL 67785504, at *3 (D. Del. Dec. 12, 2019) (granting application for a stay where the Court was "persuaded that the Republic and PDVSA could be irreparably injured in the absence of a stay, yet a stay will not substantially injure the other parties ... interested in the proceeding").

on the Third and Fifth Counterclaims asserted by the
Trustee and Collateral Agent in Defendants' Answer and
Counterclaims (Dkt. #40);

b.  The order, judgment, decree, and declaration that (i) the
Pledge Agreement is "valid and enforceable;" (ii) the "Trustee
and Collateral Agent are permitted to exercise the remedies
for default set forth" in the Pledge Agreement; (iii) "the
Trustee is entitled to direct the Collateral Agent to sell the
collateral securing the 2020 Notes;" and (iv) "the Collateral
Agent is entitled to so sell;" and

c.  The statement that nothing in the Final Judgment shall
preclude the Trustee or the Collateral Agent from
(i) "recovering any amounts in addition to the foregoing
amounts that may be due or may become due" under the
Pledge Agreement; or (ii) enforcing the Pledge Agreement or
"seeking to remedy any subsequent or continuing breaches"
of the Pledge Agreement.

3.  PDVH is not required to post a bond or additional security;

4.  During the Stay Period, Defendants, including their officers,
agents, servants, employees, and attorneys, and those persons in
active concert or participation with them who receive actual notice
of this Order by personal service or otherwise, including any
owners or holders of the 2020 Notes or beneficial interests therein,

6

and any other parties claiming an interest in the 2020 Notes or a security interest in the Pledged Shares, shall not take any action to execute on or enforce the portions of the Final Judgment that are so stayed;

5. Defendants MUFG Union Bank, N.A. and GLAS Americas LLC, any owners or holders of the 2020 Notes or beneficial interests therein, and any other parties claiming an interest in the 2020 Notes or a security interest in the Pledged Shares, shall not attempt to enforce the Pledge Agreement or otherwise to exercise any rights, remedies, or privileges purportedly arising from a default or Event of Default under the Pledge Agreement, including by attempting to sell the collateral securing the 2020 Notes; and

6. This Court's Order shall remain in effect unless and until the final disposition of the Plaintiffs' appeal before the Second Circuit; or until it is superseded by another order of this Court or a higher court.

SO ORDERED.

Dated:  December 29, 2020
        New York, New York

_____
    KATHERINE POLK FAILLA
    United States District Judge

7

# Exhibit 5

Filed Under Seal Pursuant to D.I. 1887

# Exhibit 6

Filed Under Seal Pursuant to D.I. 1887

# Exhibit 7

Filed Under Seal Pursuant to D.I. 1887

# Exhibit 8

Filed Under Seal Pursuant to D.I. 1887

# Exhibit 9

Filed Under Seal Pursuant to D.I. 1887

# Exhibit 10

Filed Under Seal Pursuant to D.I. 1887

# Exhibit 11

Filed Under Seal Pursuant to D.I. 1887

# Exhibit 12

Filed Under Seal Pursuant to D.I. 1887

# Exhibit 13

Filed Under Seal Pursuant to D.I. 1887

# Exhibit 14

Filed Under Seal Pursuant to D.I. 1887

# Exhibit 15

Filed Under Seal Pursuant to D.I. 1887

# Exhibit 16

Filed Under Seal Pursuant to D.I. 1887

# Exhibit 17

Filed Under Seal Pursuant to D.I. 1887

# Exhibit 18

Filed Under Seal Pursuant to D.I. 1887

# Exhibit 19

Filed Under Seal Pursuant to D.I. 1887

# Exhibit 20

Filed Under Seal Pursuant to D.I. 1887