UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>      Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>      Defendant. | Case No. 17-mc-151-LPS |
| RUSORO MINING LTD.,<br><br>      Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>      Defendant. | Case No. 21-mc-481-LPS |
| KOCH MINERALS SARL and KOCH NITROGEN INTERNATIONAL SARL,<br><br>      Plaintiffs,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>      Defendant. | Case No. 21-mc-156-LPS |
| GOLD RESERVE INC.,<br><br>      Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>      Defendant. | Case No. 22-mc-453-LPS |

1

# RUSORO'S RESPONSE TO OBJECTIONS
# TO THE SPECIAL MASTER'S FINAL RECOMMENDATION

Rusoro Mining Ltd. ("Rusoro") respectfully submits this Response to the Objections to the Special Master's Final Recommendation filed by the following: Red Tree Investments, LLC ("Red Tree") (D.I. 1942); the Ad Hoc Group of Holders of a Majority of the PDVSA 2020 Bonds (the "2020 Bondholders") (D.I. 1943); GLAS Americas LLC, in its capacity as collateral agent for the 2020 Bondholders (the "Collateral Agent") (D.I. 1944), and U.S. Bank National Association, in its capacity as successor indenture trustee to MUFG Union Bank, N.A. (the "Trustee") (D.I. 1947), both joining the 2020 Bondholders' Objections; Phillips Petroleum Company Venezuela Limited, ConocoPhillips Petrozuata B.V., ConocoPhillips Gulf of Paria B.V., and ConocoPhillips Hamaca B.V. (collectively, "ConocoPhillips") (D.I. 1945); ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd. (together, "ACL") (D.I. 1946); the Bolivarian Republic of Venezuela (the "Republic"), Petróleos de Venezuela, S.A. ("PDVSA"), PDV Holding, Inc. ("PDVH"), and CITGO Petroleum Corporation ("CITGO Petroleum," and together with the Republic, PDVSA, and PDVH, the "Venezuela Parties") (D.I. 1948); Crystallex International Corporation ("Crystallex") (D.I. 1949); and OI European Group B.V. ("OIEG") (D.I. 1950).

Rusoro joins, and incorporates herein, the response briefs filed by its bidding consortium members Gold Reserve Ltd., f/k/a Gold Reserve Inc., ("Gold Reserve") and Koch Minerals Sàrl ("KM") and Koch Nitrogen International Sàrl ("KNI," and together with KM, "Koch"). Collectively, Rusoro, Gold Reserve, and Koch are referred to herein as the Consortium.

I. **THE COURT'S FINDING THAT FEDERAL COMMON LAW, NOT DELAWARE LAW, GOVERNS THE ALTER EGO FINDING IS PRECLUSIVE**

The Venezuela Parties assert—as they have throughout these proceedings—that the writs of attachment issued to creditors of the Republic in this case are invalid because (a) the Federal

2

Rules of Civil Procedure and the FSIA require this Court to apply Delaware law to execution proceedings, and (b) the parties (such as Rusoro) whose writs are based on a finding that the Republic and PDVSA are alter egos failed, under Delaware law, to establish that the Republic and PDVSA are alter egos. ("VPs' Obj.") at 30 & n.30. This argument fails for two independent reasons, as set forth fully below.

**First**, the Venezuela Parties' argument that the writs are "invalid" for failing to satisfy Delaware law is barred under black-letter principles of preclusion. VPs' Obj. at 31. The Venezuela Parties first made this argument in response to Crystallex's initial application for a writ of attachment *fieri facias*, and both this Court and the Court of Appeals rejected it. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 417 (D. Del. 2018) ("***Crystallex I***"); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 132, 152 (3d Cir. 2019) ("***Crystallex II***"). Specifically, this Court found that the applicable standard to apply in determining whether the Republic and PDVSA were alter egos was provided by the Supreme Court in *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("***Bancec***"), and applying *Bancec*, this Court found, by a preponderance of the evidence, that the PDVH shares "may be attached (and executed on) as property of Venezuela's alter ego." *Crystallex I*, at 396, 405, 417. This ruling is preclusive in this Court and there is no basis for the Court to reconsider it again.

**Second**, the Venezuela Parties' argument that Delaware law governs the alter ego issue is wrong on the merits. It is well-settled that Rule 69's application of forum state law to govern execution proceedings is limited to state procedural law, not substantive law, and that the Supreme Court's decision in *Bancec*—not state law—must be applied to determine whether a foreign

3

sovereign instrumentality's judicial independence may be disregarded in a garnishment/execution context.

### A. The Venezuela Parties' Argument is Barred by Collateral Estoppel

Collateral estoppel, or issue preclusion, applies where "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001). Each of these elements here is clearly satisfied.

This identical issue was (1) previously adjudicated by this Court and affirmed by the Third Circuit and (2) actually litigated by the Venezuela Parties. From August 2017 through July 2019, PDVSA litigated the merits of this issue before this Court and the Third Circuit, urging the Court to apply Delaware law to the question of PDVSA's lack of independence from the Republic and arguing under that law that "alter ego liability applies only . . . where the corporate form is abused to perpetrate a fraud." D.I. 26 at 16-17. The Venezuela Parties argued that because Crystallex could not demonstrate fraud, as required under Delaware law, the Court could not find that PDVSA was an alter ego of the Republic and that the shares of PDV Holding ("PDVH") could not be attached in aid of the judgment. *Id*., at 2, 24, 16-17. This Court squarely rejected these arguments and decided this issue in Crystallex's favor, granting Crystallex's application for a writ of attachment and holding that "**it is federal law, not state law, that applies**" to determine whether PDVSA is the alter ego of Venezuela. *Crystallex I*, at 396 n.13 (emphasis supplied). On appeal, the Third Circuit affirmed, holding that "under federal common law first recognized by the Supreme Court in [*Bancec*], a judgment creditor of a foreign sovereign may look to the sovereign's instrumentality for satisfaction when it is 'so extensively controlled by its owner that a relationship

4

of principal and agent is created.'" *Crystallex II*, at 132, 145 (citing *Bancec*, 462 U.S. at 629). On remand from the Third Circuit in 2021, this Court determined – as it should now – that PDVSA's argument was collaterally estopped, holding squarely that "[b]ecause PDVSA's Delaware law challenges to the validity of the writ are barred by the doctrine of collateral estoppel, the Court will not substantively address them." D.I. 234, at 21.

The remaining two factors of the collateral estoppel test are clearly satisfied: (3) this Court's determination that *Bancec*, not Delaware law, applied was necessary to the decision of whether to issue the writs of attachment, and (4) there can be no question that the Venezuela Parties were fully represented in the prior actions. The plain fact is PDVSA raised this issue before this Court and lost. It then appealed to the Third Circuit and lost again. This Court need not revisit the merits or disturb its well-affirmed determination that federal common law governs the question of whether PDVSA is the alter ego of Venezuela. As the Third Circuit observed, this Court's issuance of the writs of attachment "amounted to a final judgment…leaving the District Court nothing left to do but execute." *Crystallex II*, at 136. Thus, collateral estoppel precludes the Venezuela Parties from challenging the writs of attachment under Delaware law because the Venezuela Parties have actually litigated that issue, this Court has fully adjudicated that issue, the determination was necessary to grant the writ of attachment, and Venezuela was adequately represented by counsel throughout.

### B.  The Venezuela Parties' Delaware Law Argument Fails on the Merits

Even if the Delaware law argument were still available for the Venezuela Parties to make —it is not—that argument lacks merit. It is clear that federal common law—not Delaware law— governs the relationship between PDVSA and Venezuela.  As a preliminary matter, the presumption of separateness between a sovereign and its agencies or instrumentalities, has its roots

5

in "international law and federal common law" as well as in the legislative history of the FSIA. *Bancec*, 462 U.S. at 628-29. When Congress enacted the FSIA it expressly recognized "the importance of developing a uniform body of law" concerning the amenability of a foreign sovereign to suit in United States courts. H. R. Rep. No. 94-1487, at 32, 1976 U.S.C.C.A.N. 6604. Indeed, the Supreme Court recognized the need for this even before the FSIA was adopted. Specifically, in *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 425 (1964), the Supreme Court declined to apply New York's act of state doctrine in a diversity action between a U.S. national and an instrumentality of a foreign state, holding that matters bearing on the nation's foreign relations "should not be left to divergent and perhaps parochial state interpretations."

Rule 69 neither dictates nor justifies a departure from these well-established principles. At the most basic level, it is well understood that Rule 69 does not "require application of state law to execution proceedings." VPs' Obj., at 30. Instead, Rule 69(a)(1) provides only that the law of the forum state shall govern the **procedure** in proceedings in aid of execution – it does not reach substantive legal questions. *See Weinstein v. Islamic Republic of Iran*, 831 F.3d 470, 480 n.18 (D.C. Cir. 2016), abrogated on other grounds, *Rubin*, 583 U.S. 202 (Rule 69 "incorporates only local procedure"). Well before the Supreme Court's ruling in *Rubin*, the Ninth Circuit held that the "identity . . . of a foreign state" under *Bancec* "is a matter of substantive law[,] . . . 'as opposed to procedural law,'" *Meadows v. Dominican Republic*, 817 F.2d 517, 524 (9th Cir. 1987). Therefore, Rule 69(a) does not govern the question of whether PDVSA is the alter ego of Venezuela, *Bancec* does.

In sum, the Courts of Appeals for the Second, Third, Fifth, and Ninth Circuits have all ruled that *Bancec* is binding federal common law governing the question of juridical independence under the FSIA, and that the presumption of separateness should be overcome "with reference to federal

6

law, not foreign law or state law." *Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 264 (5th Cir. 2016); *see also Bank of N.Y. v. Yugoimport*, 745 F.3d 599, 613 (2d Cir. 2014); *Crystallex II*, at 132, 145; *Doe v. Holy See*, 557 F.3d 1066, 1077 (9th Cir. 2009); *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 448 (D.C. Cir. 1990).

In *Bancec*, the Supreme Court determined the presumption of separateness may be overcome (1) "where a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created, we have held that one may be held liable for the actions of the other," and "[i]n addition," (2) where adhering to "the broader equitable principle" of corporate separateness "would work fraud or injustice." *Bancec*, 462 U.S. at 628-29. This two-factor test is disjunctive, in that the presumption of separateness may be rebutted under either factor, not both, an interpretation with which PDVSA agrees. *Crystallex I*, at 396-97; Transcript of Aug. 3, 2018 Hr'g (D.I. 74) ("Aug. Tr.") at 50-52.

To satisfy the extensive control prong, a creditor must establish that the sovereign state exercises "significant and repeated control over the instrumentality's day-to-day operations." *EM Ltd. v. Banco Cent. De La República Argentina*, 800 F.3d at 78, 91 (2d Cir. 2015). Under this standard, the Court properly found that Venezuela exerts control over PDVSA's day-to-day business operations,[1] appoints its Board of Directors,[2] and exerts political pressure on PDVSA's employees at all levels.[3] Venezuela also dictates the amount of oil in production,[4] the countries to which PDVSA must sell oil,[5] and at what price.[6]

---

[1] *See e.g.*, D.I. 3-1 at 11–12; D.I. 7 (Declaration of Dr. Roberto Rigobon, dated Aug. 14, 2017) ¶¶ 7–14; D.I. 8 (Declaration of Jose Ignacio Hernandez, dated Aug. 13, 2017) ¶¶ 18 *et seq*.
[2] *See* D.I. 3-1 at 9–10; D.I. 4 Exs. 13, 19, 21, 24; D.I. 8 ¶¶ 28, 31.
[3] D.I. 3-1 at 11, 14–15, 17–19; D.I. 4 Exs. 3, 21, 33, 34, 38, 63–65; D.I. 7 ¶¶ 11 n.6, 27–28; D.I. 8 ¶¶ 21, 36, 41.
[4] D.I. 3-1 at 12; D.I. 4 Ex. 40; D.I. 7 ¶¶ 29, 38–40.
[5] D.I. 4 Exs. 49–53; D.I. 7 ¶¶ 9, 34–37; D.I. 8 ¶ 50; D.I. 7 ¶¶ 9, 37.
[6] D.I. 7 ¶ 31–37; *see also*, D.I. 3-1 at 12, 15–16, 20–21; D.I. 4 Exs. 50–53, 72–74, 77.

## II. THIS COURT HAS SUBJECT MATTER JURISDICTION TO ENFORCE A JUDGMENT AGAINST A SOVEREIGN AND ITS ALTER EGO INSTRUMENTALITY UNDER *BANCEC*

Both this Court and the Third Circuit have already held that this Court has ancillary jurisdiction to enforce a judgment against Venezuela by attaching and executing on assets nominally owned by Venezuela's instrumentality, PDVSA, because PDVSA is an extensively-controlled alter ego of Venezuela under *Bancec*. As with its Rule 69 argument, PDVSA asks this Court to revisit its (and the Third Circuit's) prior rulings on this issue because (1) the Second Circuit's holding in *Peterson v. Bank Markazi* disagreed with the Third Circuit's application of *Bancec* in *Crystallex II* to hold that ancillary jurisdiction extends to enforcement proceedings against a sovereign's instrumentality that was not party to the underlying merits action and (2) because the Supreme Court has not yet ruled on this issue. VPs' Obj. at 32; *Peterson v. Bank Markazi*, 121 F.4th 983, 1000 n.6 (2d Cir. 2024). Like the Venezuela Parties' Rule 69 arguments, these arguments are precluded. Beyond that, the Court's prior ruling was correct.

### A. The Venezuela Parties' Objections to Ancillary Jurisdiction are Precluded

Applying the same collateral estoppel factors as above, (1) this identical issue was previously adjudicated by this Court and the Third Circuit in *Crystallex I* and *II* and (2) actually litigated by the same Parties who now request it be revisited. Specifically, PDVSA argued that under *Peacock v. Thomas*, 516 U.S. 353 (1996), this Court could not exercise ancillary jurisdiction over this action because it would amount to "shift[ing] liability for payment of an existing judgment to a third party that is not otherwise liable on the judgment." *Crystallex II*, at 138-39. This Court and the Third Circuit disagreed, holding that in an FSIA attachment case, the judgment holder "may reach the assets of the foreign judgment debtor by satisfying the *Bancec* factors" and that *Bancec* "applied to extend a district court's jurisdiction over a foreign sovereign to reach an

8

extensively controlled instrumentality." *Crystallex II*, at 138-39. The previous determination was (3) necessary to the decision on ancillary jurisdiction and (4) the Venezuela Parties were fully represented in the prior actions. Thus, the Venezuela Parties are collaterally estopped from challenging the Third Circuit's ruling on ancillary jurisdiction. This determination by the Third Circuit is also binding. *Id*. at 139.[7]

### B. The Venezuela Parties' Arguments Fail on the Merits

It is well-settled that where a party establishes that an exception to the FSIA applies to support jurisdiction over an action that results in a final judgment, that party need not establish a separate exception or an independent basis for jurisdiction in connection with the execution of that judgment, because the jurisdictional basis underlying the action that rendered the final judgment "carries over to the post-judgment enforcement proceeding in a manner akin to the ordinary operation of a district court's enforcement jurisdiction over post-judgment proceedings." *Crystallex II*, at 137; *see also First City, Texas Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 53-54 (2d Cir. 2002). Put simply, under well-established principles governing judgment enforcement under the FSIA, the proceedings in this Court through which PDVSA was held to be an alter ego of the Republic are a "continuation of" the respective recognition actions before the D.C District Court, not separate actions requiring an independent basis for jurisdiction. *Crystallex II*, at 138.

---

[7] That the Second Circuit has "disagreed" with the Third Circuit's analysis in *Crystallex II* is of no moment, given that this Court sits in the Third Circuit and that its ruling was made **in this case**. *See In re Penn State Clothing Corp.*, 205 B.R. 62, 64 (Bkrtcy. E.D.Pa.,1997) ("this court does not have the luxury of ignoring the precedent established by the Third Circuit Court of Appeals"). Notably, however, the Second Circuit distinguished this case from the one before it, observing that in *Crystallex I*, "the plaintiffs brought their post-judgment proceeding against the foreign sovereign itself while seeking to attach assets belonging to the sovereign's instrumentality. Unlike in this case, the district court had no need to exercise jurisdiction over a claim against the instrumentality." *Peterson*, at 1000 n.6; *see also Petersen Energía Inversora S.A.U. v. Argentine Republic & YPF S.A.*, No. 15 Civ. 02739, Dkt. 694 (finding "*Peterson* did not concern subject matter jurisdiction with respect to [judgment debtors or non-sovereign non-parties]"). That is an important distinction that the Venezuela Parties fail to address, for the reasons set forth in the following section.

9

This conclusion is consistent with the decision rendered by this Court in *Crystallex I*. In *Crystallex I*, the Venezuela Parties argued that because Crystallex was seeking to impose primary liability upon PDVSA to pay the judgment owed by Venezuela, Crystallex was, in essence, suing PDVSA, and under *Peacock*, this Court required an independent basis for subject matter jurisdiction over PDVSA – ancillary jurisdiction was insufficient. This Court rejected that argument. *Crystallex I*, at 390. The Venezuela Parties now rely on the Second Circuit's holding in *Peterson*, which addressed the *Peacock* ancillary jurisdiction framework (albeit, as discussed below, in a different construct), in an attempt to change the outcome.

The Venezuela Parties' argument is meritless. In the first instance, *Peterson* involved an execution pursuant to 22 U.S.C. § 8772, which Congress specifically enacted to make certain assets available to plaintiffs holding terrorism judgments against Iran. *Peterson*, 121 F.4th at 990. In fact, Congress was so committed to making funds available for these victims that it strengthened Section 8772 by amending it to name the particular assets garnished through the *Peterson* line of cases as being subject to execution and attachment to satisfy these terrorism plaintiffs' judgments. *See* Pub. L. No. 116-92, 133 Stat. 1198 (2019) ("a blocked asset…[identified and the subject of the proceedings in **Peterson** *et al. v. Islamic Republic of Iran et al.*, Case No. 10 Civ. 4518, or **Peterson** *et al. v. Islamic Republic of Iran et al.*, Case No. 13 Civ. 9195 (LAP), the case before us on appeal]… shall be subject to execution or attachment…to satisfy any judgment…awarded against Iran for damages" as a result of terrorist activity). *Peterson* rested on a completely different legal framework that, critically, did not involve or require any litigation over the *Bancec* factors. It is materially distinguishable for that reason alone.

More fundamentally, however, the Second Circuit's ruling in *Peterson* is not inconsistent with this Court's previous jurisdictional rulings. In *Peterson*, the Second Circuit considered the

extent to which *Peacock* cabined a court's ancillary jurisdiction in connection with the execution of assets in the possession of parties other than the judgment debtor. The Second Circuit recognized – as this Court did in *Crystallex I* – that ancillary jurisdiction extends to garnishment and attachment actions against third party custodians of a judgment debtor's assets, but held that ancillary jurisdiction could not extend to a subsequent lawsuit to impose primary liability onto a third party to pay a judgment for which it was not already liable. *Peterson*, 121 F.4th at 999; *Peacock*, 516 U.S. at 357. This analysis is consistent with jurisprudence in the First, Fifth, and Ninth Circuits holding that once an instrumentality of a sovereign has been deemed an alter ego, the instrumentality and the sovereign are "treated as one entity for jurisdictional purposes." *Transfield ER Cape Ltd. v. Lndus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009). As the First Circuit noted in *U.S.I Props. Corp. v. M.D. Constr. Co.*:

> Where the postjudgment claim is simply a mode of execution designed to reach property of the judgment debtor in the hands of a third party, federal courts have often exercised enforcement jurisdiction.... Where the state procedural enforcement mechanisms incorporated by Rule 69(a) allow the court to reach assets of the judgment debtor in the hands of third parties in a continuation of the same action, such as garnishment or attachment, federal enforcement jurisdiction is clear."

230 F.3d 489, 496 (1st Cir. 2000). *See also Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 654 (5th Cir. 2002) (alter egos "are considered to be one and the same under the law"); *Crystallex II*, 932 F.3d at 139; *Thomas, Head & Greisen Emps. Tr. v. Buster*, 95 F.3d 1449, 1454 & n.7 (9th Cir. 1996) (where a judgment creditor "is not attempting to establish the [third party's] liability for the original judgment…*Peacock* [is] inapposite").

      This Court, in *Crystallex I*, examined carefully the distinction between garnishment under *Bancec* – *i.e.*, execution of property of the sovereign judgment debtor that is nominally held by the sovereign's alter ego instrumentality – and the imputation of an *in personam* liability to a third

11

party, noting that the former does not require an independent basis of jurisdiction, while the latter does. *Crystallex I*, 333 F. Supp.3d at 392 (citations omitted). Specifically, this Court found that "[u]nlike the situation presented in *Peacock*, this case is not a 'subsequent lawsuit' to 'impose an obligation to pay,'" but instead an ancillary proceeding arising out of the original action to recognize and enforce the arbitration award by attaching and executing property "nominally belonging to PDVSA" but "truly belonging to Venezuela." *Id.* The Third Circuit, in *Crystallex II*, affirmed, noting that the Supreme Court's holding in *Rubin v. Islamic Rep. of Iran*, 583 U.S. 202, 211, 138 S. Ct. 816, 823 (2018) supported its conclusion that post-judgment garnishment actions focused on assets in the possession of a sovereign's alter ego under *Bancec* do not require an independent basis of jurisdiction, and noting further that Venezuela's argument that *Peacock* precludes such garnishment proceedings "misfires." *Crystallex II*, 932 F.3d 126, 138-39 (2019), *cert. denied*, 140 S. Ct. 2762 (2020).

Simply put, neither Crystallex nor the Additional Judgment Creditors sought to hold PDVSA primarily liable for the judgment; they sought merely to attach the shares of PDVH, which, by virtue of Venezuela's extensive domination of PDVSA, "truly belong[] to Venezuela." *Crystallex I*, at 392. That being the case, this is not a separate or subsequent lawsuit – but rather an extension of the lawsuit that resulted in the entry of judgment against Venezuela. As a result, *Peacock* does not apply and ancillary jurisdiction is proper. *See also Gambone v. Lite Rock Drywall*, 288 Fed. App'x 9, 12 (3d Cir. 2008) (alter ego proceedings to impute primary liability on a third party require an independent basis of jurisdiction, but garnishment proceedings against assets already subject to garnishment do not).

### III. CONCLUSION

For the foregoing reasons, Rusoro respectfully submits that the Objections to the Special Master's Final Recommendation should be dismissed.

Dated: August 7, 2025

Respectfully submitted,

| | |
|---|---|
| **DLA Piper LLP (US)**<br><br>By: /s/ R. Craig Martin<br>R. Craig Martin (#005032)<br>1201 North Market Street<br>Suite 2100<br>Wilmington, DE 19801<br>Telephone: 302-468-5655<br>Fax: 302-778-7834<br>craig.martin@us.dlapiper.com<br><br> - and -<br><br>James E. Berger (*pro hac vice*)<br>Charlene C. Sun (*pro hac vice*)<br>Joshua S. Wan (*pro hac vice*)<br>Alice A. Gyamfi (*pro hac vice* pending)<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Telephone: 212-335-4715<br>Fax: 212-884-8715<br>James.berger@us.dlapiper.com<br>Charlene.sun@us.dlapiper.com<br>Joshua.wan@us.dlapiper.com<br>Alice.gyamfi@us.dlapiper.com<br><br>*Attorneys for Rusoro Mining Ltd.* | |