UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP. x | |
| Plaintiff x | |
| v. x | Case No. 17 - 151 - LPS |
| BOLIVARIAN REPUBLIC OF VENEZUELA x | |
| Defendant x | |

**BLACK LION CAPITAL ADVISORS REPLY TO CRYSTALLEX'S RESPONSE TO VENEZUELA PARTIES OBJECTIONS**



**Albemarle Capital**

**THIRD ALBEMARLE EXPERT REPORT**
**REPLY TO CRYSTALLEX'S RESPONSE TO VENEZUELA PARTIES OBJECTIONS**

**Crystallex's Response to Venezuela Parties Objections**

In Crystallex's Response to Objections to the Special Master's Recommendation, Crystallex argues that the Objections of the Venezuela Parties—Petroleos de Venezuela S.A. ("PDVSA"), PDV Holding Inc. ("PDVH"), CITGO Petroleum Corporation ("CITGO") and the Bolivarian Republic of Venezuela ("the Republic")—should be rejected.

Crystallex pointed out that the Venezuela Parties:
"have consistently sought to prolong and delay the process and made no secret of their goal of impeding any sale, now renew many of the same objections that this Court has already rejected during years of litigation. They also trumpet their oft-made claim that the PDVH shares are worth fantastical amounts—while never pointing to any actual company or individual remotely willing to pay so much— and again claim that some other process might have produced better outcomes.

But the Venezuela Parties sat on their hands for years when they had the chance to sell PDVH to raise the cash needed to satisfy Crystallex's (and other creditors') judgments. It should go without saying that a judgment debtor whose decade's-long recalcitrance has led to a forced judicial sale of its assets is poorly situated to complain that the sale has not yielded the price it believes the asset could have fetched in a voluntary deal under optimal conditions.

This process has proven that there is no market for the attached shares at the price the Venezuela Parties claim they are worth. Because the Venezuelan parties do not seriously claim they have been denied the procedural protections they are entitled to—nor could they—the Court should once again reject their objections to the sale."

**Albemarle Capital's Experience**

While advising the Interim Government of Venezuela and Interim President Juan Guaido in 2021, the experience of Albemarle Capital and its President Edwin Wells with PDVSA and Horacio Medina, Chairman and President of the *Ad Hoc* Administrative Board of PDVSA, and CITGO and Carlos Jorda, CITGO's Chief Executive Officer and President,

1

## Albemarle Capital

demonstrates the accuracy of Crystallex's complaint about the Venezuela Parties "sitting on their hands" when they had the opportunity "to raise the cash needed to satisfy Crystallex's (and other creditors') judgments."

In mid-2017 Venezuela and PDVSA had total unpaid judgment debt obligations to Crystallex and ConocoPhillips of approximately $2.0+ billion. The Third US Circuit Court of Appeals had ruled that those two creditors could enforce PDVSA's judgment debt obligations against PDVSA's assets in the US, including the stock of PDVSA subsidiary PDVH, the corporate parent of CITGO Holding Inc. ("Holding") and CITGO.

In mid-May 2021, US Judge Leonard Stark was preparing to hire former Skadden Arps partner Robert Pincus to structure and carry out a judicial foreclosure sale of PDVH shares to generate the $2.0+ billion needed to satisfy PDVSA's judgment debt obligations to Crystallex and ConocoPhillips.

CITGO executive management alleged that financial covenants in outstanding debt securities of PDVSA, Holding and CITGO prevented CITGO from using cash generated by its refining operations or from stock or asset sales to satisfy PDVSA's unpaid judgment debt obligations to Crystallex and ConocoPhillips.

Highly concerned about what could happen to CITGO, Wells wrote CITGO CEO Carlos Jorda on Monday, May 17, 2021 warning him that:

> "PDV Holding and the CITGO entities are now facing very serious risks as a result of the planned judicial foreclosure auction sale in Delaware of PDVSA shares in PDVH—including a very real risk of a takeover by Venezuela creditors and/or their transferees that will be facilitated by such a foreclosure auction sale, with the high likelihood that will be followed by a break-up of CITGO's refining and infrastructure assets and employee work force.
>
> The only way to save PDV Holding and CITGO, at this very late point, is for the *ad hoc* PDVSA Administrative Board, under Horacio's leadership, and CITGO, under your leadership, to work closely together to see that the $2.0+ billion needed to satisfy Venezuela's remaining debt obligations to Crystallex and ConocoPhillips are raised before any foreclosure sale of PDVH shares is started.

## Albemarle Capital

Judge Stark has made it clear that he will call off the sale of the PDVH shares in PDV Holding if PDVSA pays Crystallex and ConocoPhillips what it owes them.

We have developed a highly confidential and proprietary Funding Plan to raise the $2.0 billion needed to pay Crystallex and ConocoPhillips from major institutional investors that we know and have worked with previously that has valuable advantages for CITGO that I would like to discuss with you later today or tomorrow." Wells requested a teleconference with Carlos Jorda and, if Horacio Medina would also be there, with him, too.

Wells also warned CITGO CEO Jorda that, for reasons Wells explained in detail, "there is a high likelihood that by bidding their creditor claims in the foreclosure auction sale of PDV Holding shares—unless PDVSA raises the $2.0+ billion to pay off Crystallex and ConocoPhillips—that will give Crystallex and ConocoPhillips, together, more than 50% of PDVSA's shares of PDV Holding."

In response to Wells' request for a call with Jorda and Horacio Medina, Jorda responded on Tuesday, May 18, 2021 that he:

"will review and discuss with Mr. Medina and my team. We have our shareholder's meeting tomorrow for Q1 results and many pending issues. I will try to see when we can have a conference call with you and discuss what your proposal would look like."

On Wednesday, May 19, Jorda wrote Wells that he:

"will try to arrange for a conference call on Friday as Horacio is not available earlier than that" and if he is unavailable, I will call you."

Wells responded:

"Friday works fine for me...I am sure that we could make more progress if both of you are available then.

Our objective, not surprisingly, is to work, closely, cooperatively, and confidentially with both the Ad Hoc PDVSA Administrative Board and CITGO's executive management to help save Venezuela's 'Crown Jewel.'"

**Albemarle Capital**

Wells also sent Jorda an email on Wednesday, May 19, with:

> "the attached Highly Confidential Outline about some of the benefits for CITGO, as well as investors, of Albemarle's proposed funding plan to raise $2.0+ billion needed to save PDV Holding and CITGO by paying Crystallex and ConocoPhillips the remaining amount of Venezuela's judgment debt obligations to them and having the PDVH shares held by the US District Court in Delaware released." * * *

As the attached Outline that was sent to Jorda pointed out:

> A) a major Wall Street law firm had confirmed that Albemarle's Funding Plan could be implemented successfully without breaching any of the covenants in the outstanding debt of PDVSA, Holding or CITGO; and

> B) a senior officer of a major US investment firm that Wells had worked with previously had already confirmed it would invest at least $1 billion under Albemarle's structure with an experienced borrower that had high quality assets—which was a description that fit CITGO.

> Having learned that both PDVSA *ad hoc* Board Chairman and President Horacio Medina and CITGO CEO Carlos Jorda would be together at CITGO's offices during the day on Thursday in Houston, Wells repeated his request for a short call with both of them to discuss Albemarle's proposal to raise the $2.0+ billion "needed to save PDV Holding and CITGO from a creditors' takeover and/or related matters, so you can consider exploring our proposal further."

> The call did not take place until Friday. Horacio Medina was not present and, therefore, did not participate. Instead, CITGO Chief Operating Officer Edgar Rincon, CITGO Vice President – Law Jack Lynch and CITGO Chief Financial Officer John Zuklic listened to the call, during which CITGO CEO Jorda expressed no conclusion.

> Having heard nothing from Jorda by the following Tuesday morning, May 25, Albemarle President Wells wrote Jorda:

> "You had a very helpful idea during our call Friday that could simplify this greatly, **suggesting the possibility of talking with a third party.**

4

**Albemarle Capital**

As I mentioned in the short Outline and during our call:

1) A well-known major Wall Street law firm [Milbank Tweed] has already reviewed our structure in detail and can confirm that our structure is consistent with—and does not breach—the restrictive covenants in the CITGO, CITGO Holding or PDVSA 2020 Senior Secured Notes; and

2) I have spoken with a major investment firm that...I know and have worked with previously, and the officer in charge of this area has confirmed that they would be very interested in investing at least $1 billion under our structure for a $2 billion transaction with an experienced borrower involving high quality assets, which are criteria that fit this situation.

The most useful third party, for both of our purposes, should be one of the senior partners at the major Wall Street law firm [Milbank Tweed] which has already reviewed—and knows—our structure and has checked it against the CITGO, CITGO Holding and PDVSA covenants, as stated in the Offering Memoranda for those Note issuances.

They also know well the major investment firm that told me it would lead a $2.0+ billion financing under our structure if they could have at least $1 billion of the deal, and can confirm that firm clearly has the funds and could easily do that kind of deal.

I called one of the senior partners at the Wall Street law firm—which John [Zuklic] and Jack [Lynch] both should recognize—and they could participate in a call at Noon or 1 PM New York time (11 AM Houston time) on this Thursday. All we would need for them to confirm is that our structure works and that the major investment firm has the funds and could easily do that kind of deal. That call could be covered by a very simple confidentiality agreement that I can send you later today.

Please give me a call about this. We can provide the $2+ billion that is needed to save CITGO and PDV Holding and would like to help."

At 8:01 PM New York time (7:01 PM Houston time) that same day, Tuesday, May 25, 2021 Carlos Jorda replied to Wells' suggestion by email "I will discuss internally and get back to you."

## Albemarle Capital

Since that date, more than 4 years and 2 months ago, Wells has heard nothing further from Jorda or "his team."

On June 28, 2021, Wells wrote Alejandro Plaz, the former McKinsey & Co. Senior Partner who was Interim President Guaido's Chief of Staff in the United States, and alerted him to the problem making "the PDV Holding – CITGO situation...more desperate than ever before."

Wells told Alejandro that Albemarle had "an effective financial solution" which could prevent the foreclosure sale auction Special Master Pincus would carry out to generate $2.0 - $2.25 billion, the amount needed to satisfy Venezuela's remaining judgment debt obligations to Crystallex and ConocoPhillips, and warned Alejandro that could take place "only if we are authorized to start work on it now, and only if CITGO would cooperate and provide the information needed for investors."

> Wells said "We have still been unable to get the attention of Horacio Medina, Chairman and President of the Ad Hoc PDVSA Board, despite your repeated efforts to contact Horacio about the need for him to talk with us so we can explain these matters to him."
>
> Wells told Alejandro that "We are ready to begin work with Horacio and CITGO management now. We have the Senior Partner who is Global Chairman of the Corporate Finance Group at a major Wall Street firm and the Senior Partner who is Head of the Infrastructure Finance Team at that firm standing by to confirm to Horacio and, if necessary, you and Interim President Guaido, that our financing structure and does not breach any of the loan covenants in the outstanding PDVSA, CITGO Holding or CITGO Petroleum Senior Notes.
>
> Those two Senior Partners at that major Wall Street law firm [Milbank Tweed] also know the large investment firm which told us it will lead a $2.0 - $2.25 billion financing, using our transaction structure, if we will make available at least $1.0 billion of that deal for that firm to invest in.
>
> They also can confirm that investment firm has the funds to make investments of $2.0 billion or more per transaction and can easily do the kind of deal that we are proposing."

**Albemarle Capital**

Wells told Alejandro "our financial solution can prevent the looming disaster" that PDVH and CITGO were then facing. Wells said that he and his partner Rolando Hermoso "have advised Horacio Medina, Chairman and President of PDVSA's Ad Hoc Administrative Board and CITGO CEO Carlos Jorda several times that we have an effective solution that can save PDV Holding and CITGO from Crystallex and ConocoPhillips ("COP"). * * *

Despite your multiple efforts with Horacio—and our own repeated emails requesting an opportunity to talk with Horacio at any time convenient for him—Horacio never gave us the opportunity to do so....

We also contacted Carlos, whom I first met in 1997 when Rollie and I worked on the Petrozuata financing for PDVSA, and also tried to get his attention, along with the attention of Horacio, the week of May 17 – 21, when Horacio and other members of the *Ad Hoc* PDVSA Board met with Carlos and CITGO management.

Despite copying Horacio on all of our emails to Carlos that *week* explaining the benefits of our transaction structure, Horacio never acknowledged *any* of our emails. And despite Calos informing us during the teleconference on May 21 that Rollie and I had with Carlos and his executive management team that he had notified Horacio of the time of that call, but that Horacio was not on the phone during our call—we heard nothing further from Horacio.

As for Carlos, he showed *no interest* in learning about our ability to raise the $2.0 - $2.25 billion needed to save CITGO from being taken over by Crystallex and COP or their transferees—not even when I wrote him Tuesday, May 25, that I had arranged for Carlos, his team and Horacio, to talk on Thursday May 27 directly with the two Senior Partners at the major Wall Street law firm [Milbank Tweed]....

Carlos merely emailed me back after 8 PM on May 25 that he would "discuss internally and get back to you."

Since that time—more than a month ago—Rollie and I have heard *nothing at all* from Carlos. Nor have Rollie and I heard anything at all from Horacio about our offer to arrange for him to talk with the two Senior Partners...* * *

**Albemarle Capital**

It is <u>urgent</u> that Interim President Juan Guaido be informed as soon as possible over the next few days of the drastic consequences that will follow the failure to raise the $2.0 - $2.25 billion needed to pay Crystallex and COP *before* the PDVH sale process proceeds beyond the point that it can be halted. *   *   *   *

Without the attention and support of Interim President Guaido—the <u>only</u> person whose authority Horacio respects and whose directions and recommendations Horacio will follow—Venezuela is <u>certain to lose</u>...its majority share ownership and control over PDV Holding and control over CITGO assets and operations.

This is a needless disaster that can still be prevented, but only if Interim President Guaido is informed about these matters over the next few days and acts now to talk with Horacio and make the needed recommendations to him this week, if at all possible."

Despite Alejandro explaining to Interim President Guaido "the drastic consequences that will follow the failure to raise the $2.0 - $2.25 billion needed to pay Crystallex and COP <u>before</u> the PDVH sale process proceeds beyond the point that it can be halted," Guaido failed to direct Horacio Medina, Chairman and President of the *Ad Hoc* PDVSA Board, or Carlos Jorda, CITGO's CEO, to confirm the effectiveness of Albemarle's Funding Plan by talking with the two Senior Partners of Milbank Tweed who were knowledgeable about it, and raise the $2.0 - $2.25 billion needed to satisfy Venezuela's judgment debt obligations to Crystallex and ConocoPhillips.

As a result, Judge Stark did not "call off the sale of the PDVH shares in PDV Holding." More than a dozen additional entities whose assets were expropriated by Venezuela obtained arbitration awards which were converted into judgments by US Courts against Venezuela.

Juan Guaido was removed as Interim President of Venezuela in January 2023. As a result of the Venezuela Parties "sitting on their hands" from 2017 through at least 2021, the PDVH Sale Process is now on the verge of ending, with the Court hearing to determine the new owner(s) of PDVH currently scheduled to begin on August 18.

_____
Edwin Wells
President, Albemarle Capital
August 12, 2025

8