womblebonddickinson.com



Womble Bond Dickinson (US) LLP

1313 North Market Street
Suite 1200
Wilmington, DE 19801

t:  302.252.4320
f:  302.252.4330

August 13, 2025

The Honorable Leonard P. Stark
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801

Kevin J. Mangan
Partner
Direct Dial: 302-252-4361
Direct Fax: 302-661-7729
E-mail: Kevin.Mangan@wbd-us.com

Re:   *Crystallex International Corp. v. Bolivarian Republic of Venezuela,* **Case No. 17-mc-151**

Dear Judge Stark,

On behalf of our client, Gold Reserve, this responds to the letter submitted earlier this evening by the Special Master. (D.I. 2047).  As noted therein, Gold Reserve does object to an adjournment of the Sale Hearing in the present circumstances.  Much of the support for Gold Reserve's position is set out in the letter it filed earlier today (D.I. 2032) but, given the significance of this issue, and the potential substantial financial harm it could cause, Gold Reserve believes a brief further response is merited.

1.   This potential disruption of the final Sale Hearing date in the Court's carefully constructed schedule has apparently been generated by a single new development – the submission of a revised bid by Amber Energy on August 8, 2025.  However, this bid does not, under any circumstances, justify adjourning the Sale Hearing given that it can never constitute the "Superior Proposal" required for the Special Master to propose terminating Dalinar Energy's existing SPA.[1]

2.   This is because, under the clear and unambiguous terms of this Court's prior Orders governing the Sale Process, as incorporated into the SPA, a "Superior Proposal" can only arise from an "Unsolicited Competing Proposal" and, in turn, an "Unsolicited Competing Proposal" during the present "No Shop Period" must satisfy "***an overbid minimum above the Purchase Price***" of the Final Recommended Bid.[2]  The amount of this overbid minimum is $50 million plus an

---

[1] In its June 6, 2025 Order granting in part the Venezuela Parties' Motion Requesting an Adjournment of the July 22, 2025 Sale Hearing date, the Court registered "its strong disinclination to grant any further extension of the schedule."  (D.I. 1793).

[2] Section 6.16(f)(ii) of the SPA provides that, if the Special Master determines that a "Competing Proposal" is "a higher or better bid," it may be selected as a "Superior Proposal." However, in defining "Competing Proposal," Section 6.16(f)(i) of the SPA provides that an "Unsolicited Competing Proposal received during the No-Shop Period, such as here, must satisfy ***an overbid minimum above the Purchase Price*** (less the Debt Payoff Amount) equal to or in excess of (A) the Expense Reimbursement Amount pursuant to Section 8.3(c),

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

2.     expense reimbursement up to $30 million. In violation of this requirement, the Amber Energy bid purchase price ($5.859 billion per Red Tree's prior letter) is ***1.523 billion less*** than the $7.382 billion purchase price of the Dalinar Energy bid.

3.     While the Court granted the Special Master discretion to ***lower*** or ***raise*** this mandatory overbid minimum, it did not approve—nor does the SPA provide—that it may be ***eliminated*** altogether. No version of the overbid minimum, including the original proposal from the Special Master, D.I. 1528-1 at 3, suggested that it was optional or could be lowered to zero. The Court also did not approve, and no party has ever suggested, that the overbid minimum could be converted into a ***negative amount***, as the Amber Energy bid would do, such that an unsolicited bid during the No-Shop Period can be ***lower*** than the Purchase Price of the Final Recommended Bid.

4.     For these reasons, the Amber Energy bid is non-actionable and should not, properly speaking, even be the subject of discussion by the Special Master given that such discussions are only permitted in respect of an "Unsolicited Competing Proposal" (SPA § 6.16(c)), which in turn must include the above-referenced "overbid minimum above the Purchase Price" of the Dalinar Energy bid (SPA § 6.16(f)(i)).

5.     The prospect being advanced to the Court, thus, is that the mere existence of a ***non-actionable underbid*** is threatening to derail the Sale Hearing that has been scheduled for more than two (2) months and the Court's consideration of the Final Recommended Bid that resulted from a full Topping Period, extensive negotiations with the Special Master, service of objections, discovery and full pre-hearing briefing. This, in Gold Reserve's view, is untenable.

6.     That this non-actionable underbid was submitted by an entity – Amber Energy – that has sat by until this veritable last hour, bearing none of the substantial expenses of the Sale Process that Gold Reserve and the other attached judgment creditors have borne, and whose prior, failed bid resulted in a six-month procedural quagmire and complete reset of the Sale Process in the December 31, 2024 Order, makes this even more untenable.

7.     Gold Reserve's position is not based on a technical, procedural point but rather because the mandatory bidder protections provided for in the Court's Orders and the SPA were fully litigated and are fundamental to the proper operation of the Sale Process and the Court's paramount goal of obtaining a value-maximizing Sale Transaction.

8.     Gold Reserve also could suffer substantial financial harm if its Final Recommended bid were permitted to be displaced by this underbid. This harm includes but is not limited to: (1) Gold Reserve potentially recovering nothing on its circa $1.3 billion Attached Judgment despite it being the high bidder and it scrupulously observing all of the Court's and the Special Master's bidding procedures; (2) Gold Reserve potentially losing the tens of millions of dollars of fees it incurred to obtain the fully-executed debt commitment letters that the Court and Special Master required as a condition of submitting a final, actionable bid at the end of the Topping Period; (3) Gold Reserve losing the value of the tens of millions of dollars of legal fees and expenses it incurred since December 31, 2024, in reliance upon the bidder protections in the

---

if applicable, plus (B) $50,000,000 ((A) and (B), collectively, the "<u>Subsequent Overbid Minimum</u>"); provided, further, that the Special Master may, in his sole discretion, lower or raise the Subsequent Overbid Minimum for any Competing Proposal." (bold emphasis added).

    Court's Orders and SPA being observed during this final, No-Shop Period of the Sale Process; and (4) Gold Reserve potentially losing the substantial regulatory fees it has incurred in performing its obligations under the SPA, including the $2.39 million filing fee it was required to pay to the FTC to submit the HSR application that the SPA required by August 1, 2025.

### Relief Requested

9. Gold Reserve's position that an "Unsolicited Competing Proposal" must include an "overbid minimum above the Purchase Price" of the Final Recommended Dalinar Energy bid is based on the clear and unambiguous terms of the Court's Orders and the terms of the SPA. However, if the Court requires further briefing on this issue, Gold Reserve suggests that it be scheduled forthwith. This issue is the entire basis upon which the present adjournment has been requested and until it is resolved, further disruption and chaos in the Sale Process will result.

10. Gold Reserve also respectfully requests that the Court refrain from deciding whether to adjourn the Sale Hearing until it receives the parties' further status report due tomorrow (August 14) at 4 pm ET, and holds the status conference scheduled for 10 am August 15, 2025. Gold Reserve is sensitive to the efficiencies of changing travel plans but this issue is of such critical importance, both to Gold Reserve and this long-running Sale Process, that oral presentations at the August 15, 2025 status conference should, in Gold Reserve's view, be of assistance to the Court. And, no real prejudice would result to any party by the Court deciding this adjournment question on August 15 rather than August 14, particularly given that until earlier today all parties were prepared to commence the Sale Hearing on August 18, as scheduled.

Gold Reserve appreciates the Court's consideration of its position.

    Respectfully submitted,

    **Womble Bond Dickinson (US) LLP**

    */s/ Kevin J. Mangan*
    Kevin J. Mangan

    Matthew H. Kirtland (admitted *pro hac vice*)
    **Norton Rose Fulbright US LLP**
    799 9th Street NW, Suite 1000
    Washington, DC 20001
    Telephone: 202-662-0200
    matthew.kirtland@nortonrosefulbright.com

cc: Counsel of Record (via ECF)