IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | C.A. No. 17-mc-151-LPS |

**CRYSTALLEX INTERNATIONAL CORPORATION'S
COMMENTS ON THE COURT'S "INCLINATIONS" REGARDING SALE HEARING**

OF COUNSEL:

Robert L. Weigel
Jason W. Myatt
Rahim Moloo
Zachary Kady
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

Miguel A. Estrada
Lucas C. Townsend
Adam M. Smith
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
Fax: (202) 467-0539

Dated: August 16, 2025

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Travis S. Hunter (#5350)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
Fax: (302) 651-7701

*Attorneys for Plaintiff*

i

**INTRODUCTION**

Crystallex reluctantly assented to the Special Master's proposal to adjourn the Sale Hearing because it was clear that any hearing held on August 18 would devolve into a dispute about a bid that was not yet before this Court and procedural disputes about the evidentiary submissions various Objecting Parties requested to make at the Sale Hearing.  *See* D.I. 2025 (Red Tree requesting to call two expert witnesses to address a potential bid from Amber Energy); D.I. 2032 (Gold Reserve objecting to Red Tree's requests).  A short adjournment to the Sale Hearing—however unfortunate—therefore appeared unavoidable.  To avoid further delay, however, Crystallex submits that the Sale Hearing should be rescheduled for the earliest possible date, briefing and discovery leading up to the Sale Hearing should be limited in both time and scope, and clarifications should be made to avoid similar issues arising in advance of the rescheduled Sale Hearing.  Crystallex thus agrees with the Court's "inclinations" and addresses each of them below, along with proposed further clarifications intended to avoid further delay in the final resolution of this long-running dispute.

**I.   The Special Master Should Determine Whether To Recommend A Superior Proposal By August 25**

For two reasons, an August 25 deadline is necessary to avoid further delay about which this Court has rightly expressed concern.  *See, e.g.*, D.I. 1793 (this Court expressing "its strong disinclination to grant any further extension of the schedule"); D.I. 2056 (this Court "reluctantly" continuing the August Sale Hearing).  *First*, recent events confirm that bidders are incentivized to act only in response to clear deadlines, and an August 25 deadline for the Special Master's determination of whether to recommend a Superior Proposal sends a clear signal that bidders must finalize their bids expeditiously or risk losing out on the opportunity to be named a Superior Proposal.  *Second*, if the Special Master elects to name a Superior Proposal to the Gold Reserve

1

Consortium's bid, that decision may lead to disputes that should be resolved in advance of the Sale Hearing. An expedited decision by the Special Master is therefore critical to avoiding further delay.

For the avoidance of doubt, it is far from clear that Gold Reserve's objection to the Special Master naming a Superior Proposal is correct. The Gold Reserve Consortium SPA is not a binding contract until it is approved by this Court, and Gold Reserve's arguments under the SPA fail for this reason alone. D.I. 1841-1, Exhibit B, § 6.16(a) ("This Agreement is subject to approval by the Court"); D.I. 1571, ¶ 3 (this Court agreeing with Gold Reserve and others that "the SPA is not a binding document"). Moreover, Gold Reserve's submission that a Superior Proposal designation is only proper where a bid offers a higher implied price for the PDVH Shares is directly undercut by the SPA's provisions allowing the Special Master, "in his sole discretion," to raise or lower the Subsequent Overbid Minimum and to designate a bid a Superior Proposal when it is *either* "higher *or* better" than the Gold Reserve Consortium's bid. D.I. 1841-1, Exhibit B, §§ 6.16(f)(i)-(ii) (emphasis added); *see also* D.I. 1554, at 14 (ordering that the Special Master must retain discretion to lower the overbid minimum because "the evaluation criteria include criteria other than price"). In any event, theoretical disputes on this issue are not yet ripe, and may never materialize if the Special Master declines to name a Superior Proposal.

Nevertheless, to avoid a repeat of the events that caused the latest adjournment of the Sale Hearing, the Court should clarify that while the August 25 deadline to select a Superior Proposal does not foreclose the submission of any later bid, it is the end of the Special Master's review period. Any bid submitted after that deadline should therefore be filed on the docket, in final form, and rely on an SPA that does not materially deviate from an SPA already approved by the Special Master. This will allow parties to address any such bids at the Sale Hearing to the extent

2

appropriate. Crystallex respectfully submits that the above clarifications will put all parties on notice that the Sale Hearing will proceed on the scheduled date and that developments in the Sale Process, including further interest in the PDVH Shares, are not grounds for delay.

## II. The Special Master Should Propose An Amended Schedule For Briefing And Discovery (If Any) By August 29

Crystallex agrees with the Court's inclination that the Special Master should propose an amended briefing and discovery schedule no later than August 29. However, any additional briefing should be strictly limited to objections to arguments supporting or objecting to any bid or bidder and/or any determination by the Special Master to name any such bid a Superior Proposal to the Gold Reserve Consortium's. Discovery (if any) should likewise be restricted to new issues or witnesses made relevant by any new bid or determination by the Special Master.

Indeed, the Court has already received hundreds of pages of briefing on, *inter alia*, the propriety of the Sale Process, the Court's authority to approve a final sale under Delaware law, the appropriate methodology to value PDVH, and the irrelevance of academic methods of valuation. For the most part, that briefing focused on factual and legal questions that could have been addressed without any of the overbroad discovery taken by the Objecting Parties and Gold Reserve over the past two months, as confirmed by the paucity of arguments that turn on evidence uncovered in document discovery or through depositions. Accordingly, any amended schedule proposed by the Special Master and adopted by this Court should, in Crystallex's view, include strict page limits on briefing and limit briefing only to genuinely novel issues arising out of new bids available to the Court or other events occurring after August 8, 2025. To ensure discovery is appropriately "limited" as this Court previously ordered it should be, D.I. 1517, ¶ 29, requests for documents must take into account the limited time available before the Sale Hearing, depositions

should be limited to no more than four hours each, and all discovery should be confined to a period of no more than two weeks.

**III.     The Sale Hearing Should Be Scheduled For September 15–18**

As discussed above, Crystallex's assent to adjourn the August 18 Sale Hearing has always been predicated on its insistence that the Sale Hearing should be rescheduled as soon as reasonably possible to accommodate recent developments in the Sale Process. This Court has long recognized that it must balance repeated requests for extensions against the strong interests of Crystallex and other creditors in having their judgments satisfied, as well as the Court's interest in promoting judicial economy and enforcing the judgments of United States courts. Only a minimal delay of less than one month—to September 2025—accomplishes these objectives.

The Venezuela Parties will request a hearing in October, after the Southern District of New York is expected to rule on the 2020 Bondholders' claims, but that is not a relevant consideration. *See* D.I. 2056, ¶ 3 ("The Court is ***not*** continuing next week's Sale Hearing ***because*** it needs or wants the SDNY decision before making its own judgment about the matters pending here.") (emphasis in original). Moreover, experience shows that a delay to October would only lead to requests for further delay to account for the decision in the 2020 Bondholders' litigation and potentially even appeals from that dispute, regardless of how the district court rules. *See, e.g.*, D.I. 1757 (Venezuela Parties moving on May 23 to extend the Topping Period after obtaining a favorable result in the Alter Ego Cases in the SDNY); D.I. 1782 (Venezuela Parties moving on June 3 to adjourn the Sale Hearing previously scheduled for July 22). The Venezuela Parties' inevitable demand for delay is meritless, and this Court has previously denied prior attempts at delay for this same reason. D.I. 1647 (denying the Venezuela Parties' motion (D.I. 1642) to stay the Sale Hearing "to await potential rulings from other courts or for any other reason suggested in the motion").

4

### IV. Parties Should Request Time To Be Heard At The Hearing In Advance

Again, recent history confirms the Court's inclination is correct. In advance of the now-adjourned August Sale Hearing, the Objecting Parties and competing bidders proposed to spend the majority of the hearing examining witnesses, including peripheral witnesses whose testimony was likely to be irrelevant to the issues in dispute and unhelpful to the Court's decision whether to approve a winning bidder and which bid should be selected. *See* D.I. 2017. Ordering entities wishing to participate to request "a specific, total number of hours," and briefly explain the nature of each witness's expected testimony and its relevance to the case will allow the Court to impose appropriate limits on unnecessary testimony in advance of the Sale Hearing, ensuring that the hearing is properly focused on the issues most relevant to the Court's decision.

### V. Post-Hearing Submissions Should Be Expedited

In its August 14 Order, the Court indicated that it is inclined to order the parties to "provide a schedule and page limits for expedited post-hearing briefing and submission of proposed findings of fact." D.I. 2056, ¶ 5. Again, Crystallex agrees and further submits that any such post-hearing briefing schedule should be limited in both time and scope, with the aim of completing all briefing within one month of the close of the Sale Hearing.[1] Crystallex reserves its rights to address the details of a post-hearing briefing schedule following the August 18 Hearing before this Court, and to account for developments in the Sale Process through the Sale Hearing.

### VI. Conclusion

For the foregoing reasons, Crystallex agrees with the Court's inclinations, which would appropriately limit any further delay in these proceedings.

---

[1] Crystallex acknowledges that several religious and public holidays fall in the months of September and October. Any post-hearing briefing schedule should account for such holidays.

5

| | |
|---|---|
| OF COUNSEL:<br><br>Robert L. Weigel<br>Jason W. Myatt<br>Rahim Moloo<br>Zachary Kady<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York  10166<br>(212) 351-4000<br><br>Miguel A. Estrada<br>Lucas C. Townsend<br>Adam M. Smith<br>GIBSON, DUNN & CRUTCHER LLP<br>1700 M Street, N.W.<br>Washington, D.C.  20036<br>Tel:  (202) 955-8500<br>Fax:  (202) 467-0539<br><br><br>Dated: August 16, 2025 | */s/ Travis S. Hunter*<br>Raymond J. DiCamillo (#3188)<br>Jeffrey L. Moyer (#3309)<br>Travis S. Hunter (#5350)<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware  19801<br>(302) 651-7700<br>dicamillo@rlf.com<br>moyer@rlf.com<br>hunter@rlf.com<br><br>*Attorneys for Plaintiff* |