# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) No. 1:17-mc-00151-LPS |
| v. | ) |
| | ) |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | ) |
| | ) |
| *Defendant*. | ) |

## THE VENEZUELA PARTIES' RESPONSE TO THE COURT'S INCLINATIONS REGARDING NEXT STEPS

The Venezuela Parties respectfully submit the following response to the Court's five enumerated inclinations regarding next steps in these proceedings. D.I. 2056 ¶ 5 (i)-(v).

*Inclinations (i) and (ii)*. The Venezuela Parties agree with the Court's inclination (i) that the Special Master should be required to determine by August 25 whether he has received a "Superior Proposal," as defined in the Dalinar SPA. However, the VPs do not believe it would be feasible to require the Special Master to submit a proposed schedule by August 29 (inclination (ii)). If the Special Master concludes on August 25 that he has received a Superior Proposal, then Dalinar will have until August 28 to match or exceed such proposal before the Special Master may terminate the SPA. D.I. 1837-1 at 112 (providing Dalinar with three days to match or exceed a Superior Proposal). In that scenario, assuming there is no further exchange of revised bids among Dalinar and the other bidder, August 29 (the start of Labor Day weekend) would be the soonest the Special Master could make a decision about which bid to recommend and file an updated

recommendation to advise all potential hearing participants of his decision and explain his reasoning.[1] The contents of that recommendation will likely affect participants' positions on the schedule necessary to accomplish any discovery and/or briefing. Therefore, the Special Master cannot reasonably begin conferring with hearing participants on a proposed schedule until Tuesday, September 2.

For the avoidance of doubt, as is clear from the Court's orders, the Venezuela Parties maintain the position that, even after the Special Master assesses whether he has, to date, received a Superior Proposal and issues any updated recommendation, an unsolicited competing proposal still may be submitted and considered at any time until entry of a Sale Order.[2]  *E.g.*, D.I. 1552-1 at 2–3; D.I. 1951-1 at 39.

*Inclination (iii)*. For the reasons described above, it would not be feasible to start the Sale Hearing on September 15. It is unlikely that the Special Master will be able to finish conferring with participants and submit a schedule until September 5, which would not leave enough time for any necessary briefing or limited discovery and hearing preparations (even assuming there are no disputes about the schedule).

In addition to its infeasibility, the Venezuela Parties do not believe September 15 is an appropriate start date because the Sale Hearing should take place after the impending ruling is issued in the 2020 Bondholder Litigation.[3] As the Court is aware, Judge Failla has indicated she

---

[1] Regardless of whether the Special Master determines he has received a Superior Proposal, the Court should direct him to file an updated recommendation to explain his basis for (1) selecting a different recommended bidder, (2) selecting an updated Dalinar Bid, (3) rejecting the unsolicited bid and adhering to his original recommendation, or (4) recommending no winner.

[2] The Special Master continues to be incorrect an SPA can only be terminated up until the Sale Hearing itself. *See* D.I. 2006 at 39.

[3] In all events, the VPs encourage selection of a firm date—not a floating date that is keyed off a decision from Judge Failla. A firm date is necessary for scheduling witness availability and for accomplishing hearing logistics (flights, hotels, personnel, etc.).

2

expects to rule in the next six weeks—by September 30. D.I. 2056 at 3 n.1. That ruling could have significant effects on bidding behavior, the topics addressed at a Sale Hearing, and the Court's ultimate conclusion.

Based on the contours of the recent unsolicited proposal, as described by Red Tree in its public filing (D.I. 2025), it is clear that at least one potential competing bidder is still diverting billions of dollars of value from Attached Judgment Creditors to resolve the supposed risk posed by the 2020 Bondholders. The Special Master not only has allowed bidders to do so (D.I. 1144 ¶¶ 1–2 (describing the Special Master's Round 2 bidding instructions)), but has actively encouraged it (D.I. 1596 ¶ 34 (recommending Red Tree as stalking horse bidder based on settlement with bondholders, despite fewer proceeds to AJCs than Dalinar's bid); D.I. 1948-6 (Eimer Ex. 48 showing the Special Master's advisors urging Gold Reserve to settle with Bondholders during topping period without pushing for any attendant increase in price)). Indeed, he seems to be continuing to encourage the diversion of value to the 2020 Bondholders by giving serious consideration to an unsolicited bid that apparently would pay fewer Attached Judgment Creditors than the already grossly inadequate Dalinar Bid (D.I. 2025).

It is also clear based on the contours of the new competing proposal that, without the distortion caused by the Special Master's undue emphasis on a 2020 Bondholder settlement, there are bidders who could pay more than Dalinar if Judge Failla were to determine that the purported lien held by the 2020 Bondholders is invalid. In particular, to the extent the competing bidder has negotiated a settlement agreement with the Bondholders (presumably of a similar scale (~$2 billion) to the one negotiated in Red Tree's now-inoperative TSA) (D.I. 2025; D.I. 1627-1 at 39 (Red Tree TSA)), it could shift that equity value to Attached Judgment Creditors if it no longer views the Bondholders' purported claims as a serious risk. Likewise, Dalinar has obtained a highly confident

3

letter to support $1.8 billion in additional financing for a potential settlement with the Bondholders (D.I. 1837-1 at 566, 576), which it could shift to its bid to compete, in the event the unsolicited bidder transferred its settlement funds to the Attached Judgment Creditors.

Scheduling the hearing to take place after Judge Failla issues her decision would provide time for potential bidders to submit new bids that would provide more value to Attached Judgment Creditors and even potentially result in a robust round of competition among bidders competing on price, as they should have done all along. *Cf.* D.I. 1840-1 at 49:14–50:21 (the Court explaining that "it is certainly a detriment to any deal if it's one that allows for the scenario whereby the 2020s walk away with a lot of money that they may not even be entitled to in the litigation that they are involved in"). Holding the hearing after Judge Failla's decision also would allow the Court, the Special Master, and the hearing participants to take new bids into account at the hearing. Doing it the other way round could require additional proceedings or even render the entire hearing a waste.[4]

Even apart from the possibility of facilitating new, higher bids, it would be more efficient to hold the hearing after Judge Failla rules. As the Court notes, "[a] substantial portion of the pending objections relate to the 2020 Bondholders and their pending litigation in the Southern District of New York." (D.I. 2056 ¶ 3.) If the hearing is held before Judge Failla's decision issues, the Court and the participants will spend the hearing discussing what might happen depending on what that decision is, and that decision may contain implications that cannot be foreseen. By

---

[4] If the Special Master were correct that, contrary to the VP's argument (D.I. 1951-1 at 39), a signed SPA cannot be terminated once the Sale Hearing begins, rather than once a Sale Order is entered, D.I. 2006 at 39, then it would be even more important to schedule the hearing after Judge Failla issues her decision. While the Court can reject the recommended bid and allow a superior post-hearing proposal regardless of what the Special Master has purported to agree to, it would significantly complicate the Court's ability to consider new bids if the Special Master were unable to negotiate with bidders regarding the terms of their bids and SPA.

4

contrast, if the hearing is held after her decision issues, then the discussion can focus on what the decision actually says and its actual implications.

In all events, the VPs note that their sale process expert, Mr. Weisenburger, is unavailable September 16–20, and they respectfully request that the Court, the Special Master, and the other hearing participants allow for him to testify on September 15 if the hearing is scheduled for that week.

*Inclinations (iv) and (v)*. The Venezuela Parties agree that participants should have the opportunity to submit post-hearing briefing and proposed findings of fact. However, the Venezuela Parties believe that, instead of requiring participants to submit separate requests for examination and argument time, the hearing structure and the allotment of time should build upon the substantial effort already expended by the Special Master, the Sale Process Parties, and the Attached Judgment Creditors in the creation of the Special Master's August 11 proposed hearing schedule. D.I. 2017.[5] While some modifications may be necessary depending on the Special Master's August 25 recommendation, the Special Master and the other hearing participants can again confer and come to a broad consensus on any such modifications, in addition to any need for limited additional discovery, streamlined briefing, or other developments leading up to the hearing. Regardless, it would be premature to propose specific allotments of time and submission deadlines now, given that the status of the Special Master's recommendation and the date of the Sale Hearing remain unclear. These issues can be presented by the Special Master in a status report once there is more clarity about how these proceedings will unfold.

---

[5] The VPs join the Special Master and nearly all parties in the view that opening statements will be unnecessary. D.I. 2017.

|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
| OF COUNSEL: | /s/ Susan W. Waesco<br>Susan W. Waesco (#4476)<br>Alexandra M. Cumings (#6146) |
| Nathan P. Eimer | Phillip Reytan (#7255) |
| Daniel D. Birk | 1201 North Market Street |
| Gregory M. Schweizer | Wilmington, DE 19801 |
| Hannah M. Bucher | (302) 658-9200 |
| Alec Solotorovsky | SWaesco@morrisnichols.com |
| EIMER STAHL LLP | ACumings@morrisnichols.com |
| 224 South Michigan Avenue | PReytan@morrisnichols.com |
| Suite 1100 |  |
| Chicago, IL 60604 | *Attorneys for PDV Holding, Inc. and* |
| (312) 660-7600 | *CITGO Petroleum Corporation* |
| NEimer@eimerstahl.com |  |
| DBirk@eimerstahl.com |  |
| GSchweizer@eimerstahl.com |  |
| HBucher@eimerstahl.com |  |
| ASolotorovsky@eimerstahl.com |  |
|  | HEYMAN ENERIO GATTUSO & HIRZEL LLP |
|  | /s/ Brendan Patrick McDonnell |
| OF COUNSEL: | Samuel Taylor Hirzel, II (#4415)<br>Brendan Patrick McDonnell (#7086) |
| Joseph D. Pizzurro | 300 Delaware Avenue, Suite 200 |
| Kevin A. Meehan | Wilmington, DE 19801 |
| Juan O. Perla | (302) 472-7300 |
| David V. Holmes | shirzel@hegh.law |
| CURTIS, MALLET-PREVOST, COLT & MOSLE LLP | bmcdonnell@hehg.law |
| 101 Park Avenue New York, NY 10178 |  |
| (212) 696-6000 | *Attorneys for Petróleos de Venezuela, S.A.* |
| jpizzurro@curtis.com |  |
| kmeehan@curtis.com |  |
| jperla@curtis.com |  |
| dholmes@curtis.com |  |

6

|  |  |
|---|---|
| OF COUNSEL: | ABRAMS & BAYLISS LLP |
| | |
| Donald B. Verrilli, Jr.<br>Elaine J. Goldenberg<br>Ginger D. Anders<br>MUNGER, TOLLES & OLSON LLP<br>601 Massachusetts Avenue NW<br>Suite 500 E<br>Washington, D.C. 20001<br>(202) 220-1100<br>Donald.Verrilli@mto.com<br>Elaine.Goldenberg@mto.com<br>Ginger.Anders@mto.com | /s/ *Christopher Fitzpatrick Cannataro*<br>A. Thompson Bayliss (#4379)<br>Christopher Fitzpatrick Cannataro (#6621)<br>20 Montchanin Road, Suite 200<br>Wilmington, DE 19807<br>(302) 778-1000<br>bayliss@abramsbayliss.com<br>cannataro@abramsbayliss.com<br><br>*Attorneys for Bolivarian Republic of Venezuela* |

George M. Garvey
Adeel Mohammadi
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com
Adeel.Mohammadi@mto.com

August 16, 2025