womblebonddickinson.com



Womble Bond Dickinson (US) LLP

1313 North Market Street
Suite 1200
Wilmington, DE 19801

t: 302.252.4320
f: 302.252.4330

August 21, 2025

The Honorable Leonard P. Stark
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801

Kevin J. Mangan
Partner
Direct Dial: 302-252-4361
Direct Fax: 302-661-7729
E-mail: Kevin.Mangan@wbd-us.com

Re: *Crystallex International Corp. v. Bolivarian Republic of Venezuela,* Case No. 17-mc-151

Dear Judge Stark,

On behalf of our client, Gold Reserve, we write to the Court to explain the basis for the two-track alternative schedule proposed by Gold Reserve that is attached as Exhibit B to the Special Master's filing.

At the conclusion of the Monday, August 18 hearing, it was made apparent that there now are two scenarios for the remainder of the Sale Process. The first, Scenario A, is where the Special Master does not change his Final Recommendation on August 29, 2025 and the Sale Hearing concerns the Dalinar Energy bid that has been extensively litigated these past 1.5 months. In that event, the Special Master's proposed schedule is tight but workable.

The second, Scenario B, is where the Special Master decides to make a different Final Recommendation. Under this scenario, the Special Master's proposed schedule is impossible. This only became apparent once Gold Reserve put pen to paper per the Court's direction at the end of the August 18 hearing and with the Court's revised directions in hand.

Critically, under Scenario B, neither Gold Reserve nor any other Attached Judgment Creditor (to Gold Reserve's knowledge) will have seen the hypothetical new bid, its supporting materials, or the new Final Recommendation until August 29, because they will not be made available until the different Final Recommendation is filed on the docket that day. This will leave only two weeks for objecting parties to complete all the necessary tasks leading to the September 15 Sale Hearing. These tasks include:

- review/analysis of the new bid, its supporting materials, and the new Final Recommendation;
- preparation of objections to the new bid;
- briefing on these objections;
- designation of fact /expert witnesses in support of and in objection to the new bid;

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

- depositions (including of new witnesses, such as the new witness that a new recommended bidder will put forward, and of existing witnesses that seek to testify at the Sale Hearing regarding the new bid);
- document discovery relevant to the new bid;
- designation of exhibits (and objections to the same); and
- preparation for the Sale Hearing.

All of these tasks cannot, consistent with due process, be completed in two weeks, and this shortened time period would materially prejudice the parties who will be objecting to the hypothetical, as-yet unseen new bid in Scenario B.

This is confirmed by a quick review of the Special Master's proposed schedule. As can be seen, deposition notices do not issue until Wednesday, September 3 and substantial completion of document production does not occur until Friday, September 5. This is aggressive under Scenario A, however, under Scenario B, September 5 is the same day that an objecting party's substantive objection brief is due. It is impossible for an objecting party to effectively obtain, review, analyze and work into their substantive brief discovery materials that are not even produced until the day the brief is due. Likewise, the proposed schedule has responses to objection briefs due one business day before the Sale Hearing commences (on Friday, September 12), and eliminates entirely an objecting party's right to file a reply brief. The filing of replies has been included in all prior briefing schedules for objections ordered by the Court, and indeed in the existing schedule there were sur-replies. There is no good cause for eliminating the crucial reply briefs, particularly in the context of a brand new bid.

Eliminating full briefing on objections also would contravene the spirit of the Court's direction in its January 27, 2025 Order, where it assured the parties that there would be extensive briefing in advance of any Sale Hearing:

> *Sixth, the Court assures all involved in the Sale Process and the Litigation that whatever recommendation the Special Master makes to the Court will be subjected to full and adequate judicial scrutiny – including at and around the multi-day Sale Hearing in July and the extensive briefing likely to precede it – regardless of the price associated with any Successful Bid and the Sale Process that produces it.*

(D.I. 1554 at 5).

Further confirming that two weeks is an insufficient period of time to complete all these tasks in respect of a new bid, the parties had more than triple this amount of time—six-and-a-half (6.5) weeks—to complete the same tasks in respect of the existing Final Recommendation, between the July 2, 2025 Final Recommendation date and the August 18, 2025 Sale Hearing. Depositions, document discovery, and briefing all took place in parallel during this period and it was very tight, with two headline depositions—of the Special Master's witness, Mr. William Hiltz, and Gold Reserve's witness, Mr. Paul Rivett—having to occur after the August 1 discovery cut-off.

Furthermore, this 6.5 week time frame benefitted from the fact that much of the information regarding the Dalinar Energy bid had been in the public domain since being disclosed in the Stalking Horse phase in March 2025. Here, in contrast, none of the hypothetical Scenario B bid materials will have

been seen by Gold Reserve or any other objecting party before August 29, and therefore no parties will have had this three month head start except for the Special Master and the hypothetical new bidder. That will only exacerbate the prejudice to any objecting party like Gold Reserve.

As another point of comparison, the briefing schedule for objections during the Stalking Horse phase was 3.5 weeks—from the March 21, 2025 Stalking Horse Recommendation filing date to the April 17, 2025 hearing —and that period included no discovery. The objections that Gold Reserve and other parties would be making under Scenario B are substantially more significant than those made in the Stalking Horse phase (by virtue of this being the final phase of Sale Hearing) and the period for such briefing therefore should exceed, or at least be equal to, this 3.5 week period.

The Court stated at the August 18 hearing that all discovery and briefing going forward must be strictly limited to differences in the Special Master's forthcoming August 19 Final Recommendation. Under Scenario A, those differences will be limited and the schedule will work. Under Scenario B, those differences will be substantial—since this would be an entirely new bid—and the schedule therefore will be impossible, particularly given that a Scenario B bid will raise a host of new, complex concerns regarding valuation, certainty, and process issues.

The Court previously adjourned the July 22, 2025 Sale Hearing date (D.I. 1793) because the 24-day period between the Final Recommendation and the Sale Hearing, as Red Tree described it, was "very compressed[.]" (D.I. 1784). The Court relied on the Special Master's reasoning that such a short time frame left "no room for error" and caused concern "that the 'schedule creates a meaningful risk ... of substantial prejudice to one or more parties.'" (D.I. 1787 at 2) (citing the Venezuela Parties' Motion to Adjourn the July 22, 2025 Sale Hearing (D.I. 1782 at 7)). Here, under Scenario B, the schedule put forward by the Special Master would present the same problems and meaningful risk of substantial prejudice to objecting parties. As the "short delay" from that prior adjournment was found to not prejudice any party, the alternative schedule that Gold Reserve now proposes for Scenario B also would cause no party any harm—particularly when weighed against the prejudice it would cause objecting parties. *Id.* This is confirmed by *inter alia* the fact that a similar schedule was the Special Master's initial recommendation in the recent briefing (D.I. 2092).

Gold Reserve accordingly submits that two schedules are needed: one for Scenario A (as proposed by the Special Master) and one for Scenario B (as proposed by Gold Reserve). The Scenario B schedule is attached as Exhibit B to the Special Master's filing (and hereto for convenience), with the differences marked in yellow highlight. This schedule includes the minimum period of time required for completion of new discovery, new expert reports, and the necessary briefing of objections—two weeks for opening briefs, two weeks for response briefs, and one week for reply briefs—all running concurrently with the completion of the limited discovery ordered by the Court on a compressed timescale.

Under Gold Reserve's proposed Scenario B schedule, the September 15-18 hearing dates ordered by the Court would still be used (1) for argument on pending motions and (2) for witness testimony that is common to both scenarios. This is the "hybrid scenario" referenced by the Court at the August 18 hearing, where much work can be accomplished on the September dates. The key difference is that the substantive objections to the Scenario B bid would be heard at the second set of hearing dates reserved by the Court—October 20 and 21.

3

In addition to the alternative schedule, the 10 page limitation on additional briefing proposed by the Special Master only would work under Scenario A. If a new bid is recommended on August 29, the page limits set by the Local Rules should apply (20 pages for opening and answering briefs, and 10 pages for reply briefs).

Again, Gold Reserve regrets that the foregoing points could not have been brought to the Court's attention at the August 18 hearing but they only manifested for Gold Reserve: (1) with the Court's revised inclinations in hand, as announced by the Court at the end of the hearing; and (2) after Gold Reserve put pen to paper to prepare its position on the proposed schedule.

          Respectfully submitted,

          **Womble Bond Dickinson (US) LLP**

          */s/ Kevin J. Mangan*
          Kevin J. Mangan

          Matthew H. Kirtland (admitted *pro hac vice*)
          **Norton Rose Fulbright US LLP**
          799 9th Street NW, Suite 1000
          Washington, DC 20001
          Telephone: 202-662-0200
          matthew.kirtland@nortonrosefulbright.com

cc: Counsel of Record (via ECF)