## Exhibit A

**Transcript of August 11, 2025 *Ex Parte* Meeting of the Court and the Special Master**

Page 1

1   IN THE UNITED STATES DISTRICT COURT
    FOR THE DISTRICT OF DELAWARE
2   Misc. No. 17-151-LPS
    -----------------------------------x
3   CRYSTALLEX INTERNATIONAL CORP,
4           Plaintiff,
5
6       - against -
7
8   BOLIVARIAN REPUBLIC OF VENEZUELA,
9           Defendant.
    -----------------------------------x
10                Conference Call
11                August 11, 2025
                  2:30 p.m.
12
13
14      EX PARTE MEETING
15
16
17  B e f o r e:
18      HON. LEONARD P. STARK
19
20
21
22
23
24
25

Page 2

```
 1    A P P E A R A N C E S :
 2    WEIL GOTSHAL & MANGES LLP
      767 Fifth Avenue
 3    New York, New York 10153
              Attorneys for Special Master
 4            Robert B. Pincus
      BY:     CHASE A. BENTLEY, ESQ.
 5             chase.bentley@weil.com
              MATT BARR, ESQ.
 6             matt.barr@weil.com
              JARED FRIEDMANN, ESQ.
 7             jared.friedmann@weil.com
 8
      POTTER ANDERSON & CORROON LLP
 9    Hercules Plaza
      1313 North Market Street
10    6th Floor
      P.O. Box 951
11    Wilmington, Delaware 19801
              Attorneys for Special Master
12            Robert B. Pincus
      BY:     MALISA C. DANG, ESQ.
13             mdang@potteranderson.com
14
15
16
17    ALSO PRESENT:
18      ROBERT B. PINCUS, Special Master
19      WILLIAM HILTZ, Evercore
20      RAY STRONG, Evercore
21      DAVID YING, Evercore
22      MICHAEL ESPOSITO, Clerk for Judge Stark
23
24
25
```

Page 3

```
 1              MR. BENTLEY:  Okay.  Why don't
 2      we get started and I will start by
 3      making sure a few people are on the
 4      call.  I think, I won't go through
 5      necessarily everybody from the Weil and
 6      Evercore teams that are on the call, I
 7      think for the court reporter from
 8      Veritext, I will note the people that
 9      may talk.  It will likely just be me
10      and the Special Master, Bob Pincus, but
11      just to be sure, I'm also joined by
12      Matt Barr and Jared Friedmann from
13      Weil, on the Evercore side we should
14      have one or more of Will Hiltz, David
15      Ying and Ray Strong, and Bob Pincus,
16      Bob, if you could just confirm that
17      you're on the call, I just want to make
18      sure.
19              MR. PINCUS:  I'm on the call.
20      Thank you.
21              MR. BENTLEY:  Great.  Judge
22      Stark, do you have Michael Esposito,
23      your clerk, with you?  Michael, are you
24      on the line?
25              THE COURT:  Mike, are you
```

Veritext Legal Solutions

212-267-6868         www.veritext.com         516-608-2400

Page 4

1      there?

2              MR. ESPOSITO:  I'm here, yeah.

3              MR. BENTLEY:  Great.  I'm

4      sorry, I should also say that we have

5      Malisa Dang from Potter Anderson, our

6      local counsel, on the line as well.

7              So why don't we get started

8      since we are the ones that requested

9      the meeting.  I will start by giving,

10     Judge, a very brief high-level overview

11     of the unsolicited bid that came in

12     late on Friday night and then we can

13     move into, you know, what the Special

14     Master is requesting at least on

15     today's ex parte conference.

16             So, first, the bid, this bidder

17     is our Bidder A -- sorry, I'm getting a

18     little background noise.  I don't know

19     if somebody is outside or something.  I

20     apologize.

21             THE COURT:  If everyone can put

22     themselves on mute.  I will do that as

23     well.

24             MR. BENTLEY:  Sorry, where I

25     started was the bidder that submitted

Page 5

1          the unsolicited proposal on Friday
2          night is a bidder that's been involved
3          in the process throughout and submitted
4          a topping bid, and during the topping
5          round I believe we denoted them as
6          Bidder A.
7                Bidder A, at the time they
8          submitted their topping bid on June
9          18th, I believe their recommendation,
10         we categorized it as a nonconforming
11         bid because that bid at that time
12         contemplated or was conditioned on
13         receiving, you know, executed sign-off
14         from both the 2020s for the 2020s TSA
15         and also one or more additional
16         judgment creditors.  They ultimately
17         did not, you know, get those deals
18         executed during the topping period or
19         the few days following the expiration
20         of the topping period, and it seems as
21         though they just got those consents and
22         those agreements as of Friday.
23                So they have submitted that
24         updated bid and it seems as though
25         based on the letter that they have sent

Page 6

1    to us and the documentation that they

2    have sent to us that they surpassed the

3    headline price in terms of what they

4    were aiming to achieve during the

5    topping period, they have since

6    surpassed that.

7         Just to put some numbers on it,

8    their bid has a deal with the 2020s, as

9    I mentioned, where they are proposing

10   to pay the 2020s a mix of consideration

11   that is valued at 2.125 billion, and

12   then in terms of distribution of

13   consideration to the holders of

14   attached judgment, it is a mix of cash

15   and noncash that would satisfy

16   approximately 5.9 billion in judgments.

17        Again, some of those judgments

18   are receiving, or, excuse me, judgment

19   holders are receiving noncash

20   consideration.  It appears as though

21   all of those receiving noncash

22   consideration have executed some form

23   of letter agreement with Bidder A

24   documenting the fact that they would

25   discharge their claim in exchange for

Page 7

1    the noncash consideration.
2         Just to be clear, and as is the
3    case I think with the Gold Reserve
4    Dalinar bid that has been recommended
5    and with other bids during the topping
6    period, many times when a claimant is
7    agreeing to discharge its judgment in
8    favor of receiving noncash
9    consideration it is not necessarily
10   that it is a one-to-one exchange of
11   consideration.  Oftentimes they are
12   taking cents on the dollar to discharge
13   the claim.
14        So with this updated
15   unsolicited bid coming in at 5.9, that
16   puts it approximately 1.48 billion or
17   1.49 billion below the Dalinar bid.
18   Just to talk in terms of like the
19   waterfall itself, if you recall the
20   Dalinar bid paid all the way through
21   Siemens in the judgment waterfall.
22   This unsolicited bid from Bidder A
23   would pay through Koch.  So the
24   difference that we are talking about is
25   the roughly 1.49 billion that is made

Page 8

```
 1        up of the Gold Reserve claim and the
 2        Siemens claim.
 3              I will pause there because I
 4        think that is probably the most
 5        important part or at least the
 6        economics of the proposed bid.
 7        Obviously there is a lot to dig in on
 8        documentation if we are given the
 9        authority to do so.  But I will pause
10        there in case, your Honor, you have any
11        questions on the economics of the bid
12        or understanding what the structure is
13        vis-a-vis Bidder A and Dalinar.
14              THE COURT:  Thank you.  I think
15        I understand it.  Unfortunately I'm
16        having a little bit of trouble with my
17        phone, so a little bit dropped out.
18        Importantly, the 5.9 billion cash, I
19        heard that once.  Did you say that
20        twice?
21              MR. BENTLEY:  So the 5.9
22        billion is a mix of cash and noncash,
23        but what I was saying is the 5.9 just
24        reflects the amount of judgments that
25        would receive distributions from this
```

```
 1        Bidder A unsolicited proposal.  So some
 2        of those judgment creditors will
 3        receive noncash consideration.
 4              THE COURT:  Okay.  I was just
 5        trying to figure out if something
 6        important dropped out when you were
 7        first describing what Bidder A said.  I
 8        heard you say that they had reached a
 9        deal with the 2020s and a value at
10        2.125 billion I think.  If you
11        mentioned the cash component could
12        equal up to the 5.9, if you mentioned
13        in that context, I didn't hear it.  I'm
14        just trying to figure out if I missed
15        anything.
16              MR. BENTLEY:  No, no, I didn't
17        mention it.  From the Special Master's
18        view, as long as the noncash is
19        consented to, then the noncash is just
20        as good as cash as long as it is
21        discharging the claim and it is on a
22        consensual basis.
23              THE COURT:  Good.  Then I don't
24        think, if I missed a word here or
25        there, I don't think I missed anything
```

Page 10

```
 1        substantive.  Just to say it back to
 2        you, you got this unsolicited bid
 3        Friday, it is Bidder A, that you have
 4        dealt with before, and it would involve
 5        a resolution with the 2020s but it ends
 6        up approximately 1 and a half billion
 7        dollars less in total compensation, and
 8        then the point that you ended on, and I
 9        guess this may be a question, it would
10        pay through in the waterfall all of the
11        same parties that the current Dalinar
12        offer does except not Gold Reserve and
13        Siemens and any other member of the
14        Dalinar consortium, do I have that
15        correct?
16             MR. BENTLEY:  Up until the last
17        point, yes.  So it does propose to pay
18        certain members of the Dalinar
19        consortium.  Just to rehash, the
20        Dalinar consortium is comprised of the
21        Gold Reserve, Rusoro, Koch, and
22        Siemens.  This bid -- and maybe I
23        should reiterate those in the order of
24        their priority in the waterfall.  So
25        the Gold Reserve consortium, or the
```

```
                                      Page 11
 1          Dalinar consortium, is comprised of,
 2          starting at the most senior, Rusoro,
 3          Koch, Gold Reserve, and Siemens.  This
 4          unsolicited Bidder A proposal does have
 5          deals struck with Rusoro and Koch.  It
 6          does not have deals struck to our
 7          knowledge with Gold Reserve and/or
 8          Siemens.
 9                 THE COURT:  Got it, okay.
10          Thank you for that.  I think I'm caught
11          up.  You go ahead.
12                 MR. BENTLEY:  Okay.  So we
13          wanted to request this ex parte meeting
14          just in the interest of time because we
15          have the sale hearing starting on
16          Monday and wanted to be able to talk
17          through live with you any questions or
18          reactions you might have on our request
19          to engage with this bidder.  I'm happy
20          to go into, you know, what we are
21          hoping to get out of the engagement
22          with the bidder, next steps, any of
23          that, whatever would be most helpful
24          for you.
25                 THE COURT:  Yeah.  I will be
```

Page 12

```
 1        fine with just a brief overview of
 2        that.  But the request at the end of
 3        the day is can you engage with them and
 4        presumably they would want access to
 5        the data room; is that right?
 6                MR. BENTLEY:  Presumably.  I
 7        mean, they have not asked for it yet.
 8        They didn't ask for it in submission of
 9        their bid, or, sorry, their unsolicited
10        proposal, but I would expect that as
11        soon as we start talking with them they
12        are going to want to understand any
13        additional information that has been
14        uploaded to the data room, including
15        the financial forecasts and performance
16        and whatnot.  So similar to the last
17        unsolicited proposal, yes, I would
18        suggest that while we're on the phone,
19        that is going to be a part of our
20        request now.
21                THE COURT:  And do you propose,
22        and remind me what the sale procedure
23        order would require, do you propose to
24        let the sale process parties and the
25        Dalinar consortium know about this?
```

Page 13

1          MR. BENTLEY:  We already have.

2     So we have provided the sale process

3     parties with the bid letter, unredacted

4     bid letter that we received on Friday

5     night, and we notified Dalinar pursuant

6     to the SPA that we had received an

7     unsolicited proposal.  In the event

8     after engaging with the bidders, if

9     your Honor approves that, if ultimately

10    the Special Master determines that this

11    was a superior proposal to the Dalinar

12    transaction, Dalinar, we would have to

13    provide notice to Dalinar and then

14    Dalinar would have the opportunity to

15    match this proposal.  So before we can

16    officially terminate the Dalinar SPA,

17    we would have to go through those

18    steps.

19          THE COURT:  And does the sale

20    procedure order give Dalinar in that

21    circumstance a certain amount of time

22    to top it or match it?

23          MR. BENTLEY:  Yes, it is in

24    their SPA.  I cannot recall exactly off

25    the top of my head, but I think it is

Page 14

```
 1        something in the range of two or three
 2        days.  I know that it is a very short
 3        period of time.  It is prescribed in
 4        their SPA.
 5             THE COURT:  Okay, understood.
 6        Yeah, why don't you just give me the
 7        brief overview as to what you
 8        anticipate would happen and then just
 9        make it as concrete as you can what you
10        are asking me for.
11             MR. BENTLEY:  Sure.  So I think
12        that what we would seek to engage with
13        the bidder on is the terms and
14        conditions proposed in their SPA.  In
15        their bid letter that we received they
16        referred to a prior iteration of the
17        SPA markup that they submitted to us,
18        so I think that we've got some work to
19        do on that in terms of getting back to
20        the issues with them and trying to get
21        an updated SPA in the event that we
22        felt there was or the Special Master
23        thought that there was a viable path to
24        this becoming a superior proposal.
25             We need to understand better
```

1      the terms and conditions related to

2      their TSA with the 2020s and then also

3      we would like to understand whether the

4      bidder has engaged with any other

5      additional judgment creditors beyond

6      what is reflected in the waterfall in

7      their letter.  More specifically, I

8      think we're interested in understanding

9      whether they have engaged with Gold

10     Reserve and/or Siemens to offer them

11     any consideration, just, you know,

12     being conscious of the fact that the

13     existing recommended bid does pay Gold

14     Reserve and Siemens something.

15            So those are I think, based on

16     an initial review of the documentation

17     that we received, those are the areas

18     that we will be focused on.  I think

19     that we are very conscious of the

20     timeline with the sale hearing proposed

21     to be starting on Monday and so we

22     would, as soon as we get off the phone

23     with you, if we have authority to

24     engage with the bidder, we will go do

25     that and try to work to a spot as soon

Page 16

```
 1        as possible, you know, in the next
 2        couple of days, work to a spot as to
 3        whether the Special Master thinks that
 4        it still makes sense to start the sale
 5        hearing on Monday or if he would be
 6        recommending to your Honor that it be
 7        adjourned, including, for example, to
 8        let Bidder A engage with Gold Reserve
 9        and Siemens, if they haven't, or if we
10        still need time to better understand
11        their bid, any number of factors that
12        we discuss with them.
13            I think that we still have yet
14        to talk to the sale process parties
15        about this bid.  We have sent the bid
16        letter to them, but I expect that we
17        are going to have a phone call with
18        them tonight and I wouldn't be
19        surprised -- we wouldn't be surprised
20        if some or all of the sale process
21        parties propose adjourning the sale
22        hearing to let this play out, the
23        duration of which I don't think that we
24        can really say with any specificity
25        now, and, again, the Special Master,
```

Page 17

```
 1        together with his advisors, will be
 2        talking around the clock over the next
 3        day or two with the goal of coming back
 4        to the Court and also to the parties if
 5        we believe we are in a situation where
 6        it would be value maximizing to
 7        postpone the sale hearing at all.
 8              THE COURT:  That is helpful to
 9        understand.  If I'm not mistaken, the
10        status report about what the hearing
11        might look like is due today; is that
12        correct?
13              MR. BENTLEY:  Yes, that's
14        correct.  And we have been engaging
15        with the sale process parties and the
16        initial judgment creditors as well as
17        the 2020s over the last several days
18        and we are proposing to still be on
19        track to file that this afternoon.  I
20        don't think that that agenda that we
21        lay out there will necessarily be
22        impacted even if you are ultimately to
23        recommend an adjournment of the sale
24        hearing.  It may be if the Special
25        Master were to change his
```

Page 18

1       recommendation, the witness list and

2       other matters might change slightly,

3       but for the most part I think that the

4       agenda that we will be laying out in

5       the status report later today should

6       still remain in place.

7               THE COURT:  And I take it

8       unless and until you ask for something

9       further than what you are asking for

10      today, your view would be to let the

11      briefing, the last two rounds of

12      briefing just continue along the track

13      it is on, which I think is to be

14      completed by Saturday?

15              MR. BENTLEY:  Correct, yes.  As

16      of today, as we are speaking to you

17      now, we don't have any reason, any

18      concrete reason to request that the

19      timing, whether the briefing or

20      commencement of the sale hearing,

21      change at all.  Our goal is to come to

22      a more developed view on that vis-a-vis

23      this unsolicited bid in the next couple

24      of days because we want to make sure,

25      you know, a lot of people are traveling

Page 19

1      and preparing and a lot of time and
2      money being incurred to start the
3      hearing on the 18th, and so we just
4      want to be respectful of everybody's
5      time.
6              THE COURT:  Okay. Anything else
7      you want to add before I would say to
8      you put to me as direct a request as
9      you can so I can approve it or not?
10             MR. BENTLEY:  Yes, okay.
11     Nothing else that we would like to add.
12             So the simplified request was
13     the Special Master would like authority
14     from the Court to engage with Bidder A
15     with respect to its unsolicited
16     proposal submitted on this past Friday.
17     It would also like authority to regrant
18     or reopen access to the data room to
19     Bidder A.
20             THE COURT:  Okay.  I do grant
21     you, technically the Special Master, I
22     grant the authority to do as you
23     requested, to engage with Bidder A in
24     connection with the unsolicited offer
25     submitted on Friday and, if necessary,

Page 20

```
 1        that would include the authority to
 2        reopen the data room subject to all the
 3        conditions, the confidentiality and all
 4        that you have been proceeding
 5        consistently through all this time.
 6               I would also -- and, I mean, I
 7        don't think I need to make any more
 8        record of the reasoning.  I think you
 9        have set it out and it is consistent
10        with our ongoing efforts to pursue a
11        value maximizing transaction.
12               I would say my recollection is
13        we have a call I think scheduled for
14        Wednesday which is intended to discuss
15        whatever I see in the status report
16        later today and nail down the
17        proceedings of the sale hearing for
18        Monday.  I recognize it is a fluid
19        situation.  You know how to reach out
20        to me through Michael.  Don't hesitate
21        anytime day or night to try to reach
22        us.  We will be as responsive as we can
23        be.
24               But my current intent would be,
25        especially if we don't hear anything
```

Page 21

```
 1        further from you, is we will go forward
 2        Wednesday, but it would be helpful
 3        unless there is some reason not to do
 4        so, i.e. confidentiality of some sort
 5        that I'm not thinking of off the top of
 6        my head, it would be helpful if you are
 7        prepared no later than that call to
 8        give an update, because, as you say,
 9        about this situation we are discussing,
10        because people are spending money and
11        making plans, and I'm not saying that I
12        wouldn't let the uncertainty play out
13        through as late as Monday, as to
14        whether or not we are having a hearing
15        Monday, but if you have a sense on
16        Wednesday as to whether you think
17        Monday is still the best time to get
18        together or not, I and others will be
19        interested in having your view on that.
20        Understood?
21             MR. BENTLEY:  Yes, completely
22        understood.  Thank you for the color.
23             THE COURT:  Sure.
24             MR. PINCUS:  Thank you very
25        much, your Honor.
```

Page 22

1              THE COURT:  Anything else from

2        anybody?  Okay, obviously you will have

3        the transcript made and kept

4        confidential like we have done in the

5        past, and we're here if you need us.

6              MR. BENTLEY:  Great.  Thank you

7        very much.

8              THE COURT:  Good luck.  Thanks

9        everybody.

10              (Time noted:  2:54 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 23

1              C E R T I F I C A T I O N

2

3

4

5     I, TODD DeSIMONE, a Registered

6  Professional Reporter and a Notary Public,

7  do hereby certify that the foregoing is a

8  true and accurate transcription of my

9  stenographic notes.

10      I further certify that I am not

11  employed by nor related to any party to

12  this action.

13

14

15

16

17         TODD DeSIMONE, RPR

18

19

20

21

22

23

24

25

[& - bidders]

| & | |
|---|---|
| **&**   2:2,8 | |

| 1 |
|---|
| **1**   10:6 |
| **1.48**   7:16 |
| **1.49**   7:17,25 |
| **10153**   2:3 |
| **11**   1:11 |
| **1313**   2:9 |
| **17-151**   1:2 |
| **18th**   5:9 19:3 |
| **19801**   2:11 |

| 2 |
|---|
| **2.125**   6:11 9:10 |
| **2020s**   5:14,14 |
|   6:8,10 9:9 10:5 |
|   15:2 17:17 |
| **2025**   1:11 |
| **2:30**   1:11 |
| **2:54**   22:10 |

| 3 |
|---|
| **3879**   23:16 |

| 5 |
|---|
| **5.9**   6:16 7:15 |
|   8:18,21,23 |
|   9:12 |

| 6 |
|---|
| **6th**   2:10 |

| 7 |
|---|
| **767**   2:2 |

| 9 |
|---|
| **951**   2:10 |

| a |
|---|
| **able**   11:16 |
| **access**   12:4 |
|   19:18 |
| **accurate**   23:8 |
| **achieve**   6:4 |
| **action**   23:12 |
| **add**   19:7,11 |
| **additional**   5:15 |
|   12:13 15:5 |
| **adjourned**   16:7 |
| **adjourning**   16:21 |
| **adjournment**   17:23 |
| **advisors**   17:1 |
| **afternoon**   17:19 |
| **agenda**   17:20 |
|   18:4 |
| **agreeing**   7:7 |
| **agreement**   6:23 |
| **agreements**   5:22 |
| **ahead**   11:11 |
| **aiming**   6:4 |
| **amount**   8:24 |
|   13:21 |

**anderson**   2:8 4:5
**anticipate**   14:8
**anybody**   22:2
**anytime**   20:21
**apologize**   4:20
**appears**   6:20
**approve**   19:9
**approves**   13:9
**approximately**   6:16 7:16 10:6
**areas**   15:17
**asked**   12:7
**asking**   14:10 18:9
**attached**   6:14
**attorneys**   2:3 2:11
**august**   1:11
**authority**   8:9 15:23 19:13,17 19:22 20:1
**avenue**   2:2

| b |
|---|
| **b**   1:17 2:4,12 |
|   2:18 |
| **back**   10:1 |
|   14:19 17:3 |
| **background**   4:18 |
| **barr**   2:5 3:12 |
| **based**   5:25 |
|   15:15 |

**basis**   9:22
**becoming**   14:24
**believe**   5:5,9 17:5
**bentley**   2:4 3:1 3:21 4:3,24 8:21 9:16 10:16 11:12 12:6 13:1,23 14:11 17:13 18:15 19:10 21:21 22:6
**best**   21:17
**better**   14:25 16:10
**beyond**   15:5
**bid**   4:11,16 5:4 5:8,11,11,24 6:8 7:4,15,17 7:20,22 8:6,11 10:2,22 12:9 13:3,4 14:15 15:13 16:11,15 16:15 18:23
**bidder**   4:16,17 4:25 5:2,6,7 6:23 7:22 8:13 9:1,7 10:3 11:4 11:19,22 14:13 15:4,24 16:8 19:14,19,23
**bidders**   13:8

**bids** 7:5
**billion** 6:11,16
   7:16,17,25
   8:18,22 9:10
   10:6
**bit** 8:16,17
**bob** 3:10,15,16
**bolivarian** 1:8
**box** 2:10
**brief** 4:10 12:1
   14:7
**briefing** 18:11
   18:12,19

**c**

**c** 2:1,12 23:1,1
**call** 1:10 3:4,6
   3:17,19 16:17
   20:13 21:7
**case** 7:3 8:10
**cash** 6:14 8:18
   8:22 9:11,20
**categorized**
   5:10
**caught** 11:10
**cents** 7:12
**certain** 10:18
   13:21
**certify** 23:7,10
**change** 17:25
   18:2,21
**chase** 2:4
**chase.bentley**
   2:5

**circumstance**
   13:21
**claim** 6:25 7:13
   8:1,2 9:21
**claimant** 7:6
**clear** 7:2
**clerk** 2:22 3:23
**clock** 17:2
**color** 21:22
**come** 18:21
**coming** 7:15
   17:3
**commencem...**
   18:20
**compensation**
   10:7
**completed**
   18:14
**completely**
   21:21
**component**
   9:11
**comprised**
   10:20 11:1
**concrete** 14:9
   18:18
**conditioned**
   5:12
**conditions**
   14:14 15:1
   20:3
**conference**
   1:10 4:15

**confidential**
   22:4
**confidentiality**
   20:3 21:4
**confirm** 3:16
**connection**
   19:24
**conscious**
   15:12,19
**consensual**
   9:22
**consented** 9:19
**consents** 5:21
**consideration**
   6:10,13,20,22
   7:1,9,11 9:3
   15:11
**consistent** 20:9
**consistently**
   20:5
**consortium**
   10:14,19,20,25
   11:1 12:25
**contemplated**
   5:12
**context** 9:13
**continue** 18:12
**corp** 1:3
**correct** 10:15
   17:12,14 18:15
**corroon** 2:8
**counsel** 4:6
**couple** 16:2
   18:23

**court** 1:1 3:7
   3:25 4:21 8:14
   9:4,23 11:9,25
   12:21 13:19
   14:5 17:4,8
   18:7 19:6,14
   19:20 21:23
   22:1,8
**creditors** 5:16
   9:2 15:5 17:16
**crystallex** 1:3
**current** 10:11
   20:24

**d**

**dalinar** 7:4,17
   7:20 8:13
   10:11,14,18,20
   11:1 12:25
   13:5,11,12,13
   13:14,16,20
**dang** 2:12 4:5
**data** 12:5,14
   19:18 20:2
**david** 2:21 3:14
**day** 12:3 17:3
   20:21
**days** 5:19 14:2
   16:2 17:17
   18:24
**deal** 6:8 9:9
**deals** 5:17 11:5
   11:6

**[dealt - good]**                                                                    Page 3

| | | | |
|---|---|---|---|
| **dealt** 10:4 | **dropped** 8:17 9:6 | **everybody** 3:5 22:9 | **focused** 15:18 |
| **defendant** 1:9 | **due** 17:11 | **everybody's** 19:4 | **following** 5:19 |
| **delaware** 1:1 2:11 | **duration** 16:23 | **ex** 1:14 4:15 11:13 | **forecasts** 12:15 |
| **denoted** 5:5 | **e** | **exactly** 13:24 | **foregoing** 23:7 |
| **describing** 9:7 | **e** 1:17,17 2:1,1 23:1 | **example** 16:7 | **form** 6:22 |
| **desimone** 23:5 23:17 | **economics** 8:6 8:11 | **except** 10:12 | **forward** 21:1 |
| **determines** 13:10 | **efforts** 20:10 | **exchange** 6:25 7:10 | **friday** 4:12 5:1 5:22 10:3 13:4 19:16,25 |
| **developed** 18:22 | **employed** 23:11 | **excuse** 6:18 | **friedmann** 2:6 3:12 |
| **difference** 7:24 | **ended** 10:8 | **executed** 5:13 5:18 6:22 | **further** 18:9 21:1 23:10 |
| **dig** 8:7 | **ends** 10:5 | **existing** 15:13 | **g** |
| **direct** 19:8 | **engage** 11:19 12:3 14:12 15:24 16:8 19:14,23 | **expect** 12:10 16:16 | **getting** 4:17 14:19 |
| **discharge** 6:25 7:7,12 | **engaged** 15:4,9 | **expiration** 5:19 | **give** 13:20 14:6 21:8 |
| **discharging** 9:21 | **engagement** 11:21 | **f** | **given** 8:8 |
| **discuss** 16:12 20:14 | **engaging** 13:8 17:14 | **f** 1:17 23:1 | **giving** 4:9 |
| **discussing** 21:9 | **equal** 9:12 | **fact** 6:24 15:12 | **go** 3:4 11:11,20 13:17 15:24 21:1 |
| **distribution** 6:12 | **especially** 20:25 | **factors** 16:11 | **goal** 17:3 18:21 |
| **distributions** 8:25 | **esposito** 2:22 3:22 4:2 | **favor** 7:8 | **going** 12:12,19 16:17 |
| **district** 1:1,1 | **esq** 2:4,5,6,12 | **felt** 14:22 | **gold** 7:3 8:1 10:12,21,25 11:3,7 15:9,13 16:8 |
| **documentation** 6:1 8:8 15:16 | **event** 13:7 14:21 | **fifth** 2:2 | **good** 9:20,23 22:8 |
| **documenting** 6:24 | **evercore** 2:19 2:20,21 3:6,13 | **figure** 9:5,14 | |
| **dollar** 7:12 | | **file** 17:19 | |
| **dollars** 10:7 | | **financial** 12:15 | |
| | | **fine** 12:1 | |
| | | **first** 4:16 9:7 | |
| | | **floor** 2:10 | |
| | | **fluid** 20:18 | |

**gotshal** 2:2
**grant** 19:20,22
**great** 3:21 4:3
  22:6
**guess** 10:9

**h**

**half** 10:6
**happen** 14:8
**happy** 11:19
**head** 13:25
  21:6
**headline** 6:3
**hear** 9:13 20:25
**heard** 8:19 9:8
**hearing** 11:15
  15:20 16:5,22
  17:7,10,24
  18:20 19:3
  20:17 21:14
**helpful** 11:23
  17:8 21:2,6
**hercules** 2:9
**hesitate** 20:20
**high** 4:10
**hiltz** 2:19 3:14
**holders** 6:13,19
**hon** 1:18
**honor** 8:10
  13:9 16:6
  21:25
**hoping** 11:21

**i**

**i.e.** 21:4
**impacted** 17:22
**important** 8:5
  9:6
**importantly**
  8:18
**include** 20:1
**including** 12:14
  16:7
**incurred** 19:2
**information**
  12:13
**initial** 15:16
  17:16
**intended** 20:14
**intent** 20:24
**interest** 11:14
**interested** 15:8
  21:19
**international**
  1:3
**involve** 10:4
**involved** 5:2
**issues** 14:20
**iteration** 14:16

**j**

**jared** 2:6 3:12
**jared.friedma...**
  2:7
**joined** 3:11
**judge** 2:22 3:21
  4:10

**judgment** 5:16
  6:14,18 7:7,21
  9:2 15:5 17:16
**judgments** 6:16
  6:17 8:24
**june** 5:8

**k**

**kept** 22:3
**know** 4:13,18
  5:13,17 11:20
  12:25 14:2
  15:11 16:1
  18:25 20:19
**knowledge**
  11:7
**koch** 7:23
  10:21 11:3,5

**l**

**late** 4:12 21:13
**lay** 17:21
**laying** 18:4
**leonard** 1:18
**letter** 5:25 6:23
  13:3,4 14:15
  15:7 16:16
**level** 4:10
**likely** 3:9
**line** 3:24 4:6
**list** 18:1
**little** 4:18 8:16
  8:17
**live** 11:17

**llp** 2:2,8
**local** 4:6
**long** 9:18,20
**look** 17:11
**lot** 8:7 18:25
  19:1
**lps** 1:2
**luck** 22:8

**m**

**made** 7:25 22:3
**make** 3:17 14:9
  18:24 20:7
**makes** 16:4
**making** 3:3
  21:11
**malisa** 2:12 4:5
**manges** 2:2
**market** 2:9
**markup** 14:17
**master** 2:3,11
  2:18 3:10 4:14
  13:10 14:22
  16:3,25 17:25
  19:13,21
**master's** 9:17
**match** 13:15,22
**matt** 2:5 3:12
**matt.barr** 2:6
**matters** 18:2
**maximizing**
  17:6 20:11
**mdang** 2:13

[mean - procedure]                                                                           Page 5

**mean**  12:7 20:6
**meeting**  1:14
  4:9 11:13
**member**  10:13
**members**  10:18
**mention**  9:17
**mentioned**  6:9
  9:11,12
**michael**  2:22
  3:22,23 20:20
**mike**  3:25
**misc**  1:2
**missed**  9:14,24
  9:25
**mistaken**  17:9
**mix**  6:10,14
  8:22
**monday**  11:16
  15:21 16:5
  20:18 21:13,15
  21:17
**money**  19:2
  21:10
**move**  4:13
**mute**  4:22

**n**

**n**  2:1 23:1
**nail**  20:16
**necessarily**  3:5
  7:9 17:21
**necessary**
  19:25

**need**  14:25
  16:10 20:7
  22:5
**new**  2:3,3
**night**  4:12 5:2
  13:5 20:21
**noise**  4:18
**noncash**  6:15
  6:19,21 7:1,8
  8:22 9:3,18,19
**nonconforming**
  5:10
**north**  2:9
**notary**  23:6
**note**  3:8
**noted**  22:10
**notes**  23:9
**notice**  13:13
**notified**  13:5
**number**  16:11
**numbers**  6:7

**o**

**o**  1:17 23:1
**obviously**  8:7
  22:2
**offer**  10:12
  15:10 19:24
**officially**  13:16
**oftentimes**  7:11
**okay**  3:1 9:4
  11:9,12 14:5
  19:6,10,20
  22:2

**once**  8:19
**ones**  4:8
**ongoing**  20:10
**opportunity**
  13:14
**order**  10:23
  12:23 13:20
**outside**  4:19
**overview**  4:10
  12:1 14:7

**p**

**p**  1:18 2:1,1
**p.m.**  1:11 22:10
**p.o.**  2:10
**paid**  7:20
**part**  8:5 12:19
  18:3
**parte**  1:14 4:15
  11:13
**parties**  10:11
  12:24 13:3
  16:14,21 17:4
  17:15
**party**  23:11
**past**  19:16 22:5
**path**  14:23
**pause**  8:3,9
**pay**  6:10 7:23
  10:10,17 15:13
**people**  3:3,8
  18:25 21:10
**performance**
  12:15

**period**  5:18,20
  6:5 7:6 14:3
**phone**  8:17
  12:18 15:22
  16:17
**pincus**  2:4,12
  2:18 3:10,15
  3:19 21:24
**place**  18:6
**plaintiff**  1:4
**plans**  21:11
**play**  16:22
  21:12
**plaza**  2:9
**point**  10:8,17
**possible**  16:1
**postpone**  17:7
**potter**  2:8 4:5
**potteranderso...**
  2:13
**prepared**  21:7
**preparing**  19:1
**prescribed**
  14:3
**present**  2:17
**presumably**
  12:4,6
**price**  6:3
**prior**  14:16
**priority**  10:24
**probably**  8:4
**procedure**
  12:22 13:20

| proceeding | r | reflected 15:6 | review 15:16 |
|---|---|---|---|

**proceeding**
  20:4
**proceedings**
  20:17
**process** 5:3
  12:24 13:2
  16:14,20 17:15
**professional**
  23:6
**proposal** 5:1
  9:1 11:4 12:10
  12:17 13:7,11
  13:15 14:24
  19:16
**propose** 10:17
  12:21,23 16:21
**proposed** 8:6
  14:14 15:20
**proposing** 6:9
  17:18
**provide** 13:13
**provided** 13:2
**public** 23:6
**pursuant** 13:5
**pursue** 20:10
**put** 4:21 6:7
  19:8
**puts** 7:16

**q**

**question** 10:9
**questions** 8:11
  11:17

**r**

**r** 1:17 2:1 23:1
**range** 14:1
**ray** 2:20 3:15
**reach** 20:19,21
**reached** 9:8
**reactions** 11:18
**really** 16:24
**reason** 18:17
  18:18 21:3
**reasoning** 20:8
**recall** 7:19
  13:24
**receive** 8:25 9:3
**received** 13:4,6
  14:15 15:17
**receiving** 5:13
  6:18,19,21 7:8
**recognize**
  20:18
**recollection**
  20:12
**recommend**
  17:23
**recommendat...**
  5:9 18:1
**recommended**
  7:4 15:13
**recommending**
  16:6
**record** 20:8
**referred** 14:16

**reflected** 15:6
**reflects** 8:24
**registered** 23:5
**regrant** 19:17
**rehash** 10:19
**reiterate** 10:23
**related** 15:1
  23:11
**remain** 18:6
**remind** 12:22
**reopen** 19:18
  20:2
**report** 17:10
  18:5 20:15
**reporter** 3:7
  23:6
**republic** 1:8
**request** 11:13
  11:18 12:2,20
  18:18 19:8,12
**requested** 4:8
  19:23
**requesting** 4:14
**require** 12:23
**reserve** 7:3 8:1
  10:12,21,25
  11:3,7 15:10
  15:14 16:8
**resolution** 10:5
**respect** 19:15
**respectful** 19:4
**responsive**
  20:22

**review** 15:16
**right** 12:5
**robert** 2:4,12
  2:18
**room** 12:5,14
  19:18 20:2
**roughly** 7:25
**round** 5:5
**rounds** 18:11
**rpr** 23:17
**rusoro** 10:21
  11:2,5

**s**

**s** 2:1
**sale** 11:15
  12:22,24 13:2
  13:19 15:20
  16:4,14,20,21
  17:7,15,23
  18:20 20:17
**satisfy** 6:15
**saturday** 18:14
**saying** 8:23
  21:11
**scheduled**
  20:13
**see** 20:15
**seek** 14:12
**seems** 5:20,24
**senior** 11:2
**sense** 16:4
  21:15

**[sent - transcript]**                                                      Page 7

| | | | |
|---|---|---|---|
| **sent** 5:25 6:2 16:15 | **specificity** 16:24 | **suggest** 12:18 | 16:13,23 17:20 18:3,13 20:7,8 20:13 21:16 |
| **set** 20:9 | **spending** 21:10 | **superior** 13:11 14:24 | **thinking** 21:5 |
| **several** 17:17 | **spot** 15:25 16:2 | **sure** 3:3,11,18 14:11 18:24 21:23 | **thinks** 16:3 |
| **short** 14:2 | **stark** 1:18 2:22 3:22 | | **thought** 14:23 |
| **side** 3:13 | **start** 3:2 4:9 12:11 16:4 19:2 | **surpassed** 6:2,6 | **three** 14:1 |
| **siemens** 7:21 8:2 10:13,22 11:3,8 15:10 15:14 16:9 | **started** 3:2 4:7 4:25 | **surprised** 16:19,19 | **time** 5:7,11 11:14 13:21 14:3 16:10 19:1,5 20:5 21:17 22:10 |
| **sign** 5:13 | **starting** 11:2 11:15 15:21 | **t** | **timeline** 15:20 |
| **signature** 23:16 | **states** 1:1 | **t** 23:1,1 | **times** 7:6 |
| **similar** 12:16 | **status** 17:10 18:5 20:15 | **take** 18:7 | **timing** 18:19 |
| **simplified** 19:12 | **stenographic** 23:9 | **talk** 3:9 7:18 11:16 16:14 | **today** 17:11 18:5,10,16 20:16 |
| **situation** 17:5 20:19 21:9 | **steps** 11:22 13:18 | **talking** 7:24 12:11 17:2 | **today's** 4:15 |
| **slightly** 18:2 | **street** 2:9 | **teams** 3:6 | **todd** 23:5,17 |
| **somebody** 4:19 | **strong** 2:20 3:15 | **technically** 19:21 | **together** 17:1 21:18 |
| **soon** 12:11 15:22,25 | **struck** 11:5,6 | **terminate** 13:16 | **tonight** 16:18 |
| **sorry** 4:4,17,24 12:9 | **structure** 8:12 | **terms** 6:3,12 7:18 14:13,19 15:1 | **top** 13:22,25 21:5 |
| **sort** 21:4 | **subject** 20:2 | **thank** 3:20 8:14 11:10 21:22,24 22:6 | **topping** 5:4,4,8 5:18,20 6:5 7:5 |
| **spa** 13:6,16,24 14:4,14,17,21 | **submission** 12:8 | **thanks** 22:8 | **total** 10:7 |
| **speaking** 18:16 | **submitted** 4:25 5:3,8,23 14:17 19:16,25 | **think** 3:4,7 7:3 8:4,14 9:10,24 9:25 11:10 13:25 14:11,18 15:8,15,18 | **track** 17:19 18:12 |
| **special** 2:3,11 2:18 3:10 4:13 9:17 13:10 14:22 16:3,25 17:24 19:13,21 | **substantive** 10:1 | | **transaction** 13:12 20:11 |
| **specifically** 15:7 | | | **transcript** 22:3 |

[transcription - york]                                    Page 8

**transcription**
  23:8
**traveling**  18:25
**trouble**  8:16
**true**  23:8
**try**  15:25 20:21
**trying**  9:5,14
  14:20
**tsa**  5:14 15:2
**twice**  8:20
**two**  14:1 17:3
  18:11

**u**

**ultimately**  5:16
  13:9 17:22
**uncertainty**
  21:12
**understand**
  8:15 12:12
  14:25 15:3
  16:10 17:9
**understanding**
  8:12 15:8
**understood**
  14:5 21:20,22
**unfortunately**
  8:15
**united**  1:1
**unredacted**
  13:3
**unsolicited**
  4:11 5:1 7:15
  7:22 9:1 10:2

11:4 12:9,17
13:7 18:23
19:15,24
**update**  21:8
**updated**  5:24
  7:14 14:21
**uploaded**  12:14

**v**

**value**  9:9 17:6
  20:11
**valued**  6:11
**venezuela**  1:8
**veritext**  3:8
**viable**  14:23
**view**  9:18 18:10
  18:22 21:19
**vis**  8:13,13
  18:22,22

**w**

**want**  3:17 12:4
  12:12 18:24
  19:4,7
**wanted**  11:13
  11:16
**waterfall**  7:19
  7:21 10:10,24
  15:6
**way**  7:20
**we've**  14:18
**wednesday**
  20:14 21:2,16
**weil**  2:2 3:5,13

**weil.com**  2:5,6
  2:7
**whatnot**  12:16
**william**  2:19
**wilmington**
  2:11
**witness**  18:1
**word**  9:24
**work**  14:18
  15:25 16:2

**x**

**x**  1:2,9

**y**

**yeah**  4:2 11:25
  14:6
**ying**  2:21 3:15
**york**  2:3,3

**<u>Exhibit B</u>**

**Transcript of August 13, 2025 *Ex Parte* Meeting of the Court and the Special Master**

HIGHLY CONFIDENTIAL

Page 1

1           IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF DELAWARE

3    _____

4    CRYSTALLEX INTERNATIONAL CORP.,

5           Plaintiff,

6       v.                              Misc. No.

7    BOLIVARIAN REPUBLIC OF              17-151-LPS

8    VENEZUELA,

9           Defendant.

10   _____

11              TELEPHONIC EX PARTE CONFERENCE

12   DATE:          Wednesday, August 13, 2025

13   TIME:          1:49 p.m.

14   BEFORE:        Honorable Leonard P. Stark

15   LOCATION:      Weil, Gotshal & Manges, LLP

16                  767 Fifth Avenue

17                  New York, NY 10153

18   REPORTED BY:  Logan Thoreau

19   JOB NO.:      7543760

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 2

1                    A P P E A R A N C E S

2     ON BEHALF OF SPEICAL MASTER ROBERT PINCUS:

3          MALISA DANG, ESQUIRE

4          Potter, Anderson & Corroon LLP

5          1313 North Market Street

6          Wilmington, DE 19801

7          mdang@potteranderson.com

8          (302) 984-6000

9

10    ON BEHALF OF SPECIAL MASTER ROBERT PINCUS:

11         CHASE BENTLEY, ESQUIRE

12         JARED R. FRIEDMANN, ESQUIRE

13         MATTHEW BARR, ESQUIRE

14         EOGHAN KEENAN, ESQUIRE

15         ANDREW CLARKE, ESQUIRE

16         Weil, Gotshal & Manges, LLP

17         767 Fifth Avenue

18         New York, NY 10153

19         chase.bentley@weil.com

20         (212) 310-8607

21

22    ALSO PRESENT:

23         Michael Esposito, Judge Stark's Clerk

24         Robert Pincus, Special Master

25         Will Hiltz, Evercore

HIGHLY CONFIDENTIAL

                                              **Page 3**

1              **A P P E A R A N C E S (Cont'd)**

2   **ALSO PRESENT:**

3        **Ray Strong, Evercore**

4        **David Ying, Evercore**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 4

1                          E X H I B I T S

2    NO.              DESCRIPTION                    ID/EVD

3                        (None marked.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

                                                    Page 5

1                      P R O C E E D I N G S
2                 THE REPORTER:  We're on the record at
3        1:49.
4                 MR. BENTLEY:  Great.  Thank you.
5                 Your Honor, we'd like to start -- I'll
6        give you a high-level preview of the topics that we'd
7        like to cover.  For the most part, there's just three
8        of them.  The first and the most time pressing, I'll
9        say, is the status conference adjournment, which we
10       previewed for you overnight.  And we filed a letter on
11       the docket this morning requesting that today's status
12       conference be postponed.  And we saw that you also
13       entered an order confirming that and directing us to
14       file an updated status report on next steps by
15       tomorrow.
16                So we have been talking with the sale
17       process parties.  We've been talking with the bidders.
18       We've been talking with all other additional judgment
19       creditors trying to coalesce around next steps.  In
20       part, that's resulted in this request for an ex parte
21       meeting with you to preview what we view as the
22       options for the next steps.  So after we have this ex
23       parte meeting and after getting Your Honor's guidance
24       on next steps with respect to both the status
25       conference and to the sale hearing, we will go meet

HIGHLY CONFIDENTIAL

Page 6

1    and confer with parties and submit that status report

2    tomorrow.

3                    You'll note in the letter that we filed

4    this morning, one of the reasons why we requested the

5    adjournment was because of Red Tree's letter that they

6    filed last night.  I'm sorry, I don't have the docket

7    number handy.  But I know that we had referenced it in

8    our letter.  In Red Tree's letter responding on top of

9    the status report regarding the status conference,

10   they noted that a bid had come in from Amber Energy.

11   And they also noted the value of that bid.

12                   The last time we talked with Your

13   Honor, we told you that an unsolicited bid came in.

14   We didn't tell you who had submitted it, and we told

15   you, generally speaking, what the value was and the

16   fact that they're -- that they had a deal with the

17   2020s.  We can confirm that it is Amber Energy that

18   submitted that bid.  We had not made a public

19   disclosure about that because the Special Master is

20   evaluating whether that transaction would be deemed to

21   be superior to the existing recommended Dalinar

22   transaction.

23                   The intention was to file that redacted

24   version of that bid in short order with a decision.

25   However, I should note that the decision as to whether

HIGHLY CONFIDENTIAL

Page 7

1    it's a superior proposal has not been made -- has not

2    been made yet, I should say.  So the Red Tree letter,

3    I think in our view, threatened to convert the status

4    conference from what is a -- or what was supposed to

5    be mostly a procedural status conference to discuss

6    the agenda and the schedule for the hearing, you know,

7    when experts and witnesses were going to be -- were

8    going to have direct and cross and then, also whether

9    and how much of the opening and closing arguments we

10   would have.  And because this issue was put at play in

11   the Red Tree letter, in our view, the status

12   conference was likely to turn into a finger-pointing

13   exercise and a discussion of a bid that had not yet

14   been made public and, unfortunately, probably would

15   have gotten sidetracked.

16             So I think a couple things just to say

17   about Red Tree's disclosure of the information.  The

18   Special Master did not tell Red Tree that Amber Energy

19   had submitted a bid or had said what the value of the

20   bid was or any other terms about that bid.  We had

21   only divulged that to the sale process parties, and we

22   had told Dalinar as the existing recommended bidder

23   that an unsolicited competing proposal had come in.

24   And we know that Dalinar knew that it was Amber Energy

25   because we had encouraged Amber Energy to reach out to

HIGHLY CONFIDENTIAL

Page 8

1    Dalinar, to Gold Reserve, and also to Siemens to

2    discuss potentially folding them into the Amber Energy

3    bid.

4                So we don't know who provided the

5    information to Red Tree.  It could have been Amber

6    Energy itself.  It could have been any of the sale

7    process parties.  It could have been Gold Reserve.  I

8    don't think that now we are levying any kind of

9    opinion on who we think it is, just the mere fact that

10   we didn't provide that information to Red Tree.  So we

11   don't want it to be inferred or suggested that Red

12   Tree breached some sort of confidentiality obligation

13   they had with the Special Master.  That's not possible

14   because we never talked about the Amber Energy bid

15   with them.

16               So notwithstanding that Red Tree didn't

17   breach the confidentiality obligations to the special

18   master, the fact that the bid was out there and

19   somebody must have breached some confidentiality

20   obligations or otherwise consented to the bid going

21   public happened.  And it happened in a manner that,

22   you know, we were not anticipating.  I think that

23   we've tried to be measured in the way that we provide

24   information to the public and do so, you know, with a

25   message attached to it.  Whereas the disclosure here

HIGHLY CONFIDENTIAL

Page 9

1    was, you know, was done, you know, outside of the

2    process, I'll say.

3                    So given all of that, we think that it

4    was best to postpone or adjourn the status conference.

5    And we recognize that obviously the status conference

6    will have to, you know, by definition it'll have to be

7    put back on at some point when the schedule for the

8    hearing and the commencement of the hearing -- or I

9    should say the commencement date of the hearing is

10   decided.  And that's the, you know, the last topic

11   that we want to talk about today.

12                   So I'll pause there and if you don't

13   have any questions, I think that's all we were going

14   to say about the status conference itself.  And if no

15   questions, then I'll move on to the next topic.

16                   THE COURT:  A couple things.  First,

17   you may have seen in the order I did reschedule a

18   status conference for Friday morning.  So as of now,

19   your status report is due tomorrow and then any

20   responses tomorrow night.  And status conference for

21   Friday, obviously subject to whatever developments or

22   further orders may come.  But as of now, that's on the

23   calendar.

24                   And second, and maybe you will come

25   back to this, but I'm not at all inquiring at this

HIGHLY CONFIDENTIAL

Page 10

```
 1   point whether the Special Master is likely to deem the
 2   Amber bid to be a superior bid.  But I am curious
 3   about any estimate as to the timing as to which the
 4   decision may be forthcoming as to whether or not it is
 5   a superior bid.  Is there anything you want to say
 6   about that?
 7               MR. BENTLEY:  Yes.  I think that that
 8   will be answered in the third topic I wanted to cover,
 9   which is the options on the hearing schedule.  So if
10   you don't mind, then I'll cover it there.
11               THE COURT:  That's fine.  That was all
12   I had for now.
13               MR. BENTLEY:  Great.  And apologies on
14   the first point.  Yes.  I should have acknowledged
15   that we did see that you rescheduled for the status
16   conference for Friday.  That slipped my mind when I
17   was reciting the facts.
18               THE COURT:  I'm sure there's a lot of
19   moving parts on your end.  No problem.
20               MR. BENTLEY:  Yes.  Don't have the
21   time -- or I should say didn't have the time to
22   prepare for this ex parte meeting as I usually do.
23   You know, we've been on phone calls around the clock
24   with the dozen or so parties.
25               Okay.  So the next topic that I want to
```

HIGHLY CONFIDENTIAL

Page 11

1    cover is setting the stage a bit for the bids on the
2    table.  And just so that you understand kind of the
3    predicate for when we talk about the next topic, which
4    is -- or I should say the last topic, which is the
5    hearing schedule.  And I think that laying out the
6    bids that we have in front of us now will help to put
7    all of that in context.
8                    So first, we, of course, have the
9    recommended Dalinar transaction.  As a reminder, that
10   transaction proposes to deliver approximately $7.38
11   billion to judgment creditors in the form of cash and
12   non-cash consideration.  It is similar to the Dalinar
13   stalking horse bid, meaning both -- or I should say
14   neither of those proposed transactions contemplate a
15   settlement with the PDVSA 2020 bond holders.  And so
16   that transaction was recommended, I believe, on July
17   2nd.  And that's what we've been conducting briefing
18   related to, depositions related to, and parties have
19   put forth, you know, their experts both in support and
20   against that transaction.
21                   And then the second bid, I will say --
22   we'll go to the Amber Energy bid next because I think
23   that one has become the topic du jour, you know, given
24   the Red Tree letter last night and given our ex parte
25   earlier this week.  So Amber Energy did submit a bid

HIGHLY CONFIDENTIAL

Page 12

 1    during the stalking horse round and during the topping
 2    bid round.
 3                    If you recall, in the final
 4    recommendation, we described the collective bids as
 5    there being only Dalinar and Red Tree as conforming,
 6    and the others as non-conforming.  We can confirm
 7    that, you know, two of the bidders that we have in
 8    play today that have submitted updated bids, that the
 9    unsolicited competing proposals are Bidder A and
10    Bidder B from the topping round.  So that means that
11    Amber Energy submitted what we deemed to be a
12    non-conforming bid during the topping round.
13                    They were denoted as Bidder A during
14    the topping round.  The reason that they were
15    non-conforming at the time was because their
16    transaction relied upon a settlement with the 2020
17    bond holders, which at the time of submission of their
18    topping bid, they did not have.  Today, you know, as
19    we described to you on Monday when we were requesting
20    your authority to engage with Bidder A, they do have
21    that executed settlement agreement with -- or I should
22    say, support agreement with the 2020 bond holders.
23                    And also, since submitting their
24    topping bid -- which I'll remind you that the topping
25    bid was $25 million above the Red Tree stalking horse

HIGHLY CONFIDENTIAL

Page 13

```
 1    bid.  Since then, they have incorporated agreements
 2    from the next -- I think there's -- unless it's you,
 3    Judge Stark.  If it's somebody else that has the
 4    ambulance in the background, I'd ask you to go on
 5    mute.
 6                    THE COURT:  Yeah.  I think it's here in
 7    D.C.
 8                    MR. BENTLEY:  Okay.  Well, that's okay
 9    then.
10                    THE COURT:  Yeah.  Hopefully it'll
11    pass.
12                    MR. BENTLEY:  We'll let it whine on.  I
13    work in New York City, so you know, it's the
14    equivalent of birds out in the country.
15                    So I'll pick up where I left off.  The
16    Amber Energy bid, you know, as compared to the bid
17    that they submitted in the topping round, the topping
18    round is $25 million above the Red Tree stalking horse
19    bid.  They now have secured agreements from the next
20    three creditors in line, which are Rusoro, Conoco,
21    which has their small 48 to $50 million claim, and
22    then Koch.
23                    So that means that Amber Energy has
24    executed support agreements from those three parties
25    to the extent that they're receiving non-cash
```

HIGHLY CONFIDENTIAL

Page 14

1    consideration.  I'm trying to recall off the top of my

2    head, but the Conoco claim in the middle there may

3    actually just be getting cash.  So there may not be an

4    executed agreement with them.  So that brings the

5    Amber Energy bid to, you know, approximately 5.8 or

6    $5.9 billion in proceeds delivered to the -- excuse

7    me, to the waterfall creditors, to the attached

8    judgment creditors.

9                    And also, at a settlement with the

10    2020s that contemplates paying the 2020s the

11    equivalent of $2.1 billion or so.  And one other term

12    that will become relevant later in the conversation

13    that I'll say about the Amber Energy settlement with

14    the 2020s is that in the event the Special Master

15    recommended the Amber Energy transaction to the court

16    as a superior proposal and as what is effectively a

17    replacement final recommendation, there is a term in

18    their settlement agreement, their support agreement

19    with the 2020s that requires the 2020s -- or the 2020s

20    agree to go and seek a stay of the New York action.

21                    So they essentially would, you know,

22    file a motion in front of Judge Failla in New York and

23    request that she not enter a decision on a summary

24    judgment, which she has said in that July 10th status

25    conference that she anticipates issuing in September

HIGHLY CONFIDENTIAL

Page 15

```
 1    or by the end of September.  Now, obviously, depending
 2    on the timing of the hearing, depending on, you know,
 3    a number of other factors, you know, responses to that
 4    motion that the 2020s file, et cetera, that Judge
 5    Failla may or may not grant that motion to stay the
 6    New York action.  But, you know, I think that's just
 7    an important data point.  And again, we'll come back
 8    to that when we talk about the hearing schedule.
 9                   And then the third bid that we have in
10    front of us is the June 30th unsolicited competing bid
11    from Bidder B, which on July 1st we received your
12    authority to engage with Bidder B with respect to that
13    June 30th bid.  The June 30th bid -- we also filed a
14    notice, I should say, and made that bid public, you
15    know, with applicable redactions, I believe it was
16    last week, in connection with filing our reply brief.
17                   What we've learned in over the course
18    of the last week is that Bidder B's proposal has
19    changed a bit since they submitted their letter on
20    June 30th.  Their June 30th letter contemplated
21    roughly 8.5 billion dollars of value delivered in cash
22    and non-cash to the judgment creditors.  And it also
23    contemplated an undisclosed settlement with the 2020s.
24                   What we've learned since then is Bidder
25    B is essentially on the doorstep of submitting an
```

HIGHLY CONFIDENTIAL

Page 16

1    updated bid, and it would be virtually identical to

2    the Amber Energy bid.  So again, that's 5.8, $5.9

3    billion of cash and non-cash value distributed to the

4    bond -- or sorry, not the bond holders, to the

5    judgment creditors.  So that's 5.8, $5.9 billion of

6    judgment claims that are discharged by receiving

7    consideration, some settlement with the 2020s.

8                   So for all intents and purposes, the

9    economics of the Bidder A and Bidder B, Amber Energy

10   and Bidder B -- I would tell you the name of Bidder B,

11   but I actually don't think that that's been disclosed

12   yet, so we won't say it.  So those two are, on

13   economic terms, virtually identical.  Now, Bidder B

14   still has yet to submit that updated bid letter,

15   which, you know, they've told us is supposed to be

16   coming, you know, ideally today, maybe tomorrow.

17                   And the other thing about both of those

18   parties is that they have not submitted executed

19   commitment letters to the extent that their bid needs

20   them.  For example, Bidder B, I don't think,

21   contemplates financing.  They're paying cash, so they

22   wouldn't need a commitment letter.  The Amber Energy

23   bid would need a commitment letter.  They've told us

24   that they're ready to deliver those, you know, in the

25   event we're going to execute an SPA with them.  That

HIGHLY CONFIDENTIAL

Page 17

1    is okay.  And that is, you know, from what we can

2    recall, compliant with all the bid procedures.

3                    And the other point that is similar

4    between the two of them is that we would still need to

5    finalize a stock purchase agreement with each of those

6    two bidders, Amber Energy and Bidder B.  So again, for

7    all intents and purposes, those are virtually

8    identical bids.

9                    Those are the three bids on the table.

10   I'm happy to answer any questions about the summary of

11   the bids, but I just wanted to provide that as some

12   context for, you know, our next topic, which is

13   talking about the scheduling of the sale hearing and

14   what we view as the options for scheduling.

15                    THE COURT:  Right.  The only question I

16   have at this point with respect to Bidder B, if I

17   understand it correctly, the bid that you believe is

18   on the table or imminently on the table from them is

19   at least arguably less valuable than the one that they

20   had suggested in June 30th?  Or at least has a

21   different mix of cash and non-cash consideration.  Is

22   that fair?

23                    MR. BENTLEY:  Yeah.  It is definitely

24   less valuable.  So they had contemplated 8.5

25   billion -- in their June 30th letter, they

HIGHLY CONFIDENTIAL

Page 18

1  contemplated 8.5 billion, give or take to judgment

2  creditors.  They are now talking about 5.8 to 5.9.

3  The difference being that right now Bidder B's bid

4  that we are expecting to come in today or tomorrow

5  would pay up to and including Koch in the waterfall.

6  Same thing for the Amber Energy proposal that we have

7  already received, the one that we received on August

8  8th.  The June 30th Bidder B proposal, I think, it

9  contemplated paying through contrarian, which is, you

10  know, multiple judgment creditors beyond Koch.

11                  THE COURT:  Okay.

12                  MR. BENTLEY:  And I think importantly,

13  you know, for comparison purposes to the existing

14  recommended bid of Dalinar, Dalinar pays through

15  Siemens.  So in the waterfall, once you get to Koch,

16  the next two judgment creditors are first, Gold

17  Reserve and then, Siemens.

18                  And I think that, you know, in going

19  back and forth with all of the bidders, you know,

20  encouraging Amber Energy and Bidder B to increase

21  their proposals even further than the August 8th Amber

22  Energy proposal and even further than what we have

23  been told is coming in from Bidder B, we've encouraged

24  them to engage with Gold Reserve, with Siemens, and,

25  you know, even beyond if they have the ability to do

HIGHLY CONFIDENTIAL

Page 19

1    so.

2                    From our understanding and from talking

3    to those judgment creditors, some of the conversations

4    have happened over the last few days.  From what we

5    can tell from talking both with -- Siemens, I think,

6    we've had less conversations with, obviously, because

7    they're not a bidder themselves.  We've talked more

8    with Dalinar, with Gold Reserve.  From what we can

9    tell, the conversations with Gold Reserve have not

10   really gone anywhere for a couple of reasons.  One

11   being the competing bidders.

12                   So Bidder B and Amber Energy are

13   hesitant to provide certain confidential or sensitive

14   information about their bids with Gold Reserve,

15   because Gold Reserve is sponsoring its own bid.  And

16   so they're competing with each other.  And then, on

17   the other hand, the conversations have not been

18   productive to date because Gold Reserve, as you likely

19   saw in the letter they filed on Monday morning, is

20   taking the position that either they get paid in full

21   in cash on their $1.2 billion claim or, you know, they

22   just win with their transaction.

23                   So they really are not engaging as far

24   as we can tell with the other bidders on taking

25   non-cash consideration or taking some kind of a

Page 20

1    discount to the face value of their claim.  And for

2    whatever it may be worth, our understanding is that

3    the judgment creditors right before them, Rusoro and

4    Koch, and also the judgment creditor right after them,

5    Siemens, have all taken substantial discounts to the

6    face value of their claim.  We don't know exactly what

7    that value is, but we know that they've negotiated

8    with the relevant bidders, Dalinar included, in

9    Dalinar's bid, to take those discounts to the face

10    value.

11            So right now, Gold Reserve is taking

12    the position that they're not -- they're sort of

13    refusing to engage on anything but pure cash paid at

14    par.  So I think that's probably the lay of the land

15    of the bids.

16            THE COURT:  Okay.  And yeah.  Before

17    you move on, I'll just note, you may or may not have

18    seen it given everything you're doing, but Michael

19    handed me a four-page, single-space letter that Gold

20    Reserve filed sometime since my order continuing the

21    status call to Friday.  So it's consistent with the

22    posture that you've just outlined from them.

23            MR. BENTLEY:  Yeah.  I have not read

24    it.  They sent us an email telling us that, you know,

25    Red Tree has backed them into a corner, and now they

HIGHLY CONFIDENTIAL

Page 21

1   have to send this -- submit this letter.  But I guess

2   I'm not surprised that they ended up filing it.  And

3   then, it says what it says.  But I personally have not

4   read it.

5                THE COURT:  Got it.  Okay.  I didn't

6   have any other questions about the bids.  Thank you

7   for summarizing them for me.

8                MR. BENTLEY:  Okay.  So next we will go

9   through what we view as, you know, first the

10  practical, you know, reality of the current schedule,

11  which would be a sale hearing commencing this upcoming

12  Monday, August 18th.  And then, we'll go into what we

13  view as the options because, not to bury the lead, but

14  we think that given the updated bids and the

15  information that has come out and the positions that

16  parties are taking with respect to those bids and with

17  respect to the process, we do not see how commencing

18  the sale hearing on Monday would work practically.

19                And the reason being all of the

20  briefing to date and all of the depositions and the

21  expert testimony put forth to date has been focused on

22  the Special Master's final recommendation from July

23  2nd, which is comparing a Red Tree bid that was

24  approximately $3.8 billion in value to the judgment

25  creditors plus a $2 billion settlement with the 2020s.

HIGHLY CONFIDENTIAL

Page 22

```
 1   So comparing that to the $7.38 billion Dalinar
 2   transaction.
 3                 And what we have heard from parties,
 4   and I'm sure you saw exemplified in the Red Tree
 5   letter that was filed last night, parties are
 6   insisting on additional witnesses.  I'm not sure that
 7   anybody has filed a letter that has suggested
 8   additional briefing yet, but we know that that's been
 9   communicated to us through numerous calls that we've
10   been having and emails we've been having with parties
11   over the last few days.  And also, suggestions of
12   additional depositions, for example, of the special
13   master's witness, Mr. Hiltz, and asking about
14   comparing the Dalinar transaction now to the Amber
15   Energy transaction instead of to the Red Tree
16   transaction.
17                 So all that is to say that we believe
18   that parties would be objecting to moving forward with
19   the hearing on Monday.  We certainly understand those
20   positions given the change in facts that have
21   happened.  And it's unfortunate that these unsolicited
22   competing proposals came in so close to the hearing,
23   but that is technically permitted pursuant to the
24   Dalinar SPA and pursuant to Your Honor's prior orders
25   from earlier this year regarding the evaluation
```

HIGHLY CONFIDENTIAL

Page 23

1    criteria and bid protections and process.

2                    You know, we tried to avoid this last

3    minute, you know, sidetracking with bids.  But I think

4    that at least the good thing that came of it was that

5    two of the bidders -- or I guess, technically one of

6    the bidders so far and potentially one more bidder,

7    that substantially increase the value of their bids,

8    you know, by $2 billion plus.  So that is good.

9                    But the situation that it leaves us

10   with is that we think that conducting the hearing and

11   not permitting the additional briefing depositions and

12   proffers of experts could potentially create issues,

13   with the hearing and with treatment of the hearing.

14                    So I'll pause there before I go into

15   what we view as the two primary options for

16   rescheduling the hearing and ask if you have any

17   questions.

18                    THE COURT:  No.  I'd like to hear what

19   you see as the options.

20                    MR. BENTLEY:  Okay.  So generally

21   speaking -- and just to frame the two options at a

22   high level, we think that Option A, we'll call it, is

23   having a hearing that is delayed essentially a few

24   weeks.  So we're having a hearing in earlier,

25   mid-September.  And importantly, we think that would

HIGHLY CONFIDENTIAL

Page 24

1   likely be before any decision from New York -- from

2   Judge Failla on the 2020s litigation.  And then,

3   Option B would be delaying until after a decision

4   comes in from Judge Failla on the 2020s litigation,

5   which again, Judge Failla indicated at that July 10th

6   conference that the decision would be forthcoming

7   sometime in September.

8                   So maybe it would help if I lay out in

9   a little bit more detail how we see the mechanics

10  working in both option A and Option B.  Again, Option

11  A is the earlier mid-September hearing, we'll call it

12  the pre-2020s New York ruling option.  In that

13  scenario, we would be telling bidders, both Dalinar,

14  Amber Energy, and Bidder B, that to the extent they

15  have revisions to their bids submitted to date, they

16  need to make those revisions by a date certain in

17  August.

18                  We've been talking about dates with the

19  sale process parties, but just didn't have enough time

20  to settle on something to propose to Your Honor.  But

21  we are thinking that it is probably something in the

22  neighborhood of one of the next couple of Fridays.  So

23  August 22nd or 29th.  And just to be clear, this is

24  not a re-opening of the topping period.  The topping

25  period, the Special Master was permitted to solicit

HIGHLY CONFIDENTIAL

Page 25

```
 1   bids.  This is not a re-solicitation of bids.
 2                The status quo that we have right now
 3   is we have a recommended bid, and we have two
 4   submitters of unsolicited competing proposals that we
 5   have received authority from Your Honor to engage
 6   with.  And so we would not be going out broadly and
 7   asking for everybody to send an updated bid.  This is
 8   not another round.  It is merely giving an end date to
 9   the three parties that we're engaged with today.
10                And we think that the end date is
11   important because without the end date, we could find
12   ourselves in a similar situation where one or more of
13   the parties just hold dry powder until the day before
14   the sale hearing and, you know, lob in another updated
15   bid to try and, you know, make a last-ditch effort at
16   winning.  And we think that without this end date,
17   it'll be tough to drive parties to give their best and
18   final that is truly a best bid, meaning they're best
19   bid with their best foot forward.
20                So again, tell bidders they have to
21   submit those final bids by a date certain in August.
22   The Special Master would then determine if he is
23   sticking with the existing recommended Dalinar
24   transaction or pursuant to the Dalinar SPA has deemed
25   that one of the other bids submitted is a "superior
```

HIGHLY CONFIDENTIAL

Page 26

1    proposal" under the Dalinar SPA, in which case Dalinar

2    I think would have three business days to match that.

3    And immediately after that match period, you either

4    have the answer that the competing bidder is the

5    superior proposal or Dalinar has matched it.  And then

6    the Special Master immediately files the updated

7    recommendation.

8                    The recommendation, we don't anticipate

9    being the same, you know, 20-to-30-plus-page

10   recommendation that we did last time.  A lot of the

11   case law predicates are the same regardless of which

12   of these bids we are submitting.  So we expect it to

13   be a relatively short notice, but providing enough

14   information as to why the Special Master is making

15   this decision so that the parties can respond.  And we

16   would expect a very truncated briefing period, a very

17   truncated period for any necessary depositions to

18   follow immediately after that recommendation.

19                   And again, that would be setting this

20   up for a sale hearing in early-to-mid-September.  One

21   thing that I would note about the calendar for this

22   Option A -- and I guess it comes into play with Option

23   B as well, is there are a number of Jewish holidays

24   that I believe begin on or around September 22nd and

25   continue through mid-October.  You know, we think that

HIGHLY CONFIDENTIAL

Page 27

1   that this Option A schedule will be able to play out
2   and a sale hearing will be able to occur before those
3   holidays kick in on September 22nd.  I just wanted to
4   make sure that that was on your radar.
5             THE COURT:  Thank you for that.  Let me
6   just ask you before we get to Option B.  If we will
7   end up with something looking like Option A, how much
8   time would the Special Master anticipate building in
9   to make his determination after the last and final
10  date?  And I'll just throw out there Option C of
11  sticking with Monday is still on the table as of now,
12  from my perspective.  So I remain interested in if
13  we're going forward on Monday, how soon the special
14  master thinks he can make a determination as to
15  whether he has a superior proposal in hand at the
16  moment.
17            MR. BENTLEY:  So we haven't discussed
18  with specificity with Bob as to how long he would need
19  to make that determination.  I believe in the past
20  we've made the determination in as quick as 48 hours.
21  A lot of that is because we need to actually execute
22  an SPA if Bob is going to decide that one of the other
23  bids is superior to the Dalinar transaction.
24            Now, what we've told parties is that
25  they should be essentially apples to apples with the

HIGHLY CONFIDENTIAL

Page 28

1    Dalinar SPA.  We should not be going backwards and

2    going back to mark-ups submitted early in the topping

3    period because that would not be productive, and we

4    don't have time.  So we do think that we could turn

5    this around very quickly.

6              Again, we could sort of be working in

7    parallel while parties are working on submitting their

8    bids to prepare an updated notice.  I think that if

9    the notice is going to say that Dalinar remains, then

10   it would be a very short notice -- sorry, Dalinar

11   remains the recommended transaction, it would be a

12   very short notice.  And if it's a different party

13   that's a superior proposal, then it's a -- I would

14   say, a moderately short notice.

15             And your question on, you know, how

16   that is implicated with -- or plays with Option C,

17   which is to keep the hearing as is.  If Bob, for

18   example, were to decide today that one of these bids

19   is a superior proposal -- first of all, I don't think

20   that he could decide that Bidder B is a superior

21   proposal because they still have yet to submit their

22   bid.  We've just heard from them and from others that

23   it is coming soon.

24             So if you were to determine that Amber

25   Energy is a superior proposal today, Dalinar under

HIGHLY CONFIDENTIAL

Page 29

```
 1    their SPA would have three business days to match it.
 2    So that I think already brings us to Monday and you
 3    know, that has the effect that it does.  But again,
 4    Your Honor heard me go through what we think the
 5    practical implications are just from hearing from
 6    other parties regarding briefing and testimony and
 7    discovery, et cetera.
 8                    THE COURT:  Okay.  I think I follow.
 9    All right.  Do you want to -- I don't know if you had
10    more to say about Option A or if you're ready to move
11    on to Option B?
12                    MR. BENTLEY:  No.  I don't.  I will go
13    through the mechanics of Option B and then, you know,
14    we're happy to answer any questions you have about the
15    scenarios, their mechanics, the pluses, and minuses,
16    et cetera.  So on Option B, the way that we view the
17    mechanics would be there's no change in the
18    recommendation as of today.  So as of today, Dalinar
19    is the final recommended bid.  We would not change
20    that recommendation.  And instead, the next steps
21    would be adjournment of the sale hearing until a date
22    to be determined after the 2020s New York decision.
23                    Now, just for illustrative purposes,
24    let's say the decision comes in on September 30th
25    because Judge Failla said that it will be in by the
```

HIGHLY CONFIDENTIAL

Page 30

1    end of September.  What we would anticipate is once

2    that decision comes in, bidders -- again, the existing

3    bidders, because we're not having a topping period.

4    Bidders would have a short period of time to revise

5    their bids to reflect the implication of the 2020s

6    decision.

7                    Now, I think that the revising of those

8    bids looks a little bit different than it would for

9    Option A, which is essentially giving bidders the next

10   week to sort it out.  The reason being is depending on

11   the 2020s decision, the bidders might have to get

12   updated commitment letters from their financing

13   sources just purely because by effect of the decision,

14   the capital structure of CITGO could change.

15                   So nevertheless, we still think that

16   bidders could pull together those revised bids

17   quickly.  We would like to be able to go and -- you

18   know, if Your Honor is ultimately going to tell us

19   that you prefer Option B, I think that the process

20   would be we would go and figure out what the parties,

21   including with bidders, how long they would need to

22   get their refreshed financing.  We hope and expect

23   that it is something in the neighborhood of a couple

24   weeks.  So by for example, the second week in October,

25   you would have revised final bids that, you know,

HIGHLY CONFIDENTIAL

Page 31

 1    cannot move.

 2              And thereafter, again, quickly, the

 3    Special Master will make a determination as to what is

 4    the best and final bid and submit a recommendation on

 5    that.  We, again, would have a very truncated set of

 6    briefing and a very truncated, if necessary,

 7    deposition and discovery schedule.  And that should

 8    tee us up for a hearing in mid-October.  Although, I

 9    am checking my email from the Special Master.  I think

10    that -- just to put it on your radar, the Jewish

11    holidays go through October 15th.

12              So that would probably line up anyway

13    just with, you know, revision of the bids, submission

14    of the recommendation, short briefing.  You're

15    essentially looking at a hearing that could start, you

16    know, the week of October 20th or 27th.

17              And again, importantly, the primary

18    distinction, I guess, I would say from a procedural

19    standpoint is that this hearing would occur after what

20    we understand is going to be a New York ruling in the

21    2020s litigation during September.

22              THE COURT:  Okay.  I think I

23    understand.  Is there anything else you wanted to say?

24              MR. BENTLEY:  No.  I think that's an

25    overview of the mechanics and what we, over the last

HIGHLY CONFIDENTIAL

Page 32

```
 1   24 hours of a series of furious and consistent calls
 2   with many parties, have narrowed down as the likely
 3   options.  But of course, the Special Master is willing
 4   to proceed on any basis that Your Honor would like us
 5   to, whether that's option A, B, or C.  We will get it
 6   done one way or another.
 7                THE COURT:  Right.  I appreciate that,
 8   of course, very much.  I am not prepared at this
 9   precise moment to give you any guidance on A versus B
10   versus C.  And we can just call C everything else
11   other than A or B to include going forward on Monday.
12   But perhaps there's some other options as well.  I
13   would say as of now you've got the deadline of four
14   o'clock, which I think was the deadline you had
15   proposed in your letter maybe of this morning, if I
16   recall correctly.
17                MR. BENTLEY:  Yes.
18                THE COURT:  And as you always have, the
19   more widely you can confer and represent in that 4
20   p.m. status report what the views are of anybody who
21   would be interested in A versus B versus C, the
22   better.  But I have also, you know, given an
23   opportunity for anyone to weigh in themselves four
24   hours later.  At this point, though I recognize it's
25   very fluid situation, it may very well be that I don't
```

HIGHLY CONFIDENTIAL

Page 33

1    make a decision on the next steps until after seeing

2    what I get tomorrow from you and from anyone else.

3              I may very well wait until I -- you

4    know, we have the discussion that I referred to

5    earlier scheduled for Friday.  That said we really are

6    as available as you need us to be.  I won't

7    necessarily say through the night necessarily, but,

8    you know, till very late tonight and early tomorrow

9    morning if there are developments or you want to take

10   another run at -- to the extent you're asking me to

11   decide on this call, and I'm not hearing that you are.

12   But to the extent you are and I'm not giving you a

13   decision, if you want to have a discussion again later

14   that you really, in order to do your work, need to

15   know at least whether Monday's on or off or something

16   to that effect, you know, I'm available.  We can have

17   a further discussion.

18              It's also possible that we will reach

19   out to you and say we want to have a discussion even

20   if you haven't asked for one.  But if neither of those

21   things happen, then obviously you'll proceed according

22   to the order, and we will get your position tomorrow.

23   And as far as I'm certain, your position could include

24   here's a couple of options and the Special Master is

25   indifferent.  Or here's a couple of options and the

HIGHLY CONFIDENTIAL

Page 34

1    Special Master prefers whatever.  So right at this

2    very moment, I'm not deciding on the next steps.  Any

3    reaction or questions about that?

4                    MR. BENTLEY:  Yeah.  My only reaction

5    is just to let you know that when we last talked with

6    the sale process parties, which was this morning, you

7    know, there were two focuses I could tell from their

8    perspective.  One was are we having a hearing on

9    Monday or not?  And two was which of these divergent

10   paths does everybody think is the better one, meaning

11   Option A or Option B?  I think that the consensus was

12   that nobody thought that we should be going forward on

13   Monday.

14                   However, we are happy to confer again

15   with the sale process parties immediately coming out

16   of this ex parte call with you right now.  And we can

17   confirm by email that it is or is not the case that

18   everybody thinks that they would like to know whether

19   Monday is going to be -- there's going to be a sale

20   hearing or not.

21                   And then, on the latter point, I think

22   that we can address the latter point, you know, if

23   it's A or B or something other than a Monday hearing,

24   I think that we're happy to meet and confer, you know,

25   with everybody and propose in the status report due by

HIGHLY CONFIDENTIAL

Page 35

1   4 p.m. tomorrow.  But we will endeavor to file it
2   before then because I think we're just conscious of
3   everybody's time.  So I don't know if that changes
4   Your Honor's position or what you're prepared to say
5   now with respect to Monday or something else, but
6   we're happy to do whatever you would like.
7              THE COURT:  Sure, yeah.  Well, let me
8   say a few more things first I was also thinking.  You
9   know, 4 p.m. is the deadline, but particularly if
10  there were consensus at least on Monday -- and it
11  sounds like you sensed that there is, but I'm not
12  prepared yet to say, because I really have to think it
13  through, that if I got a letter even tonight that said
14  absolutely everybody in the world agrees we don't want
15  to come to Wilmington Monday, that I wouldn't
16  potentially make you all come to Wilmington Monday
17  anyway.
18              But that would certainly -- that would
19  be an unprecedented thing for everyone here to agree,
20  and I would have to consider that very seriously.  So
21  I'm not trying to deter you from that.  But I just,
22  you know, I'm not making a decision, particularly as I
23  don't think I have that representation.  It sounds
24  like you think maybe everyone would agree don't go
25  forward Monday.  Although, actually it's now -- this

HIGHLY CONFIDENTIAL

Page 36

1    is the dangers of thinking out loud.  The letter from
2    Gold Reserve I think says -- yeah.  "Does not require
3    any adjournment from the sale hearing."  So you may
4    get an objection.  From at least them.
5                    MR. BENTLEY:  Yeah.  What I would say
6    is I think that we have consensus from the sale
7    process parties, which is Crystallex, Conoco, and
8    Venezuela as to not going forward on Monday.  I would
9    imagine that virtually all other additional judgment
10   creditors other than Gold Reserve would say that they
11   also agree that Monday doesn't make sense.
12                   And if we put it to Gold Reserve, I
13   think the way that we would have to frame it for them
14   is we're going forward on -- the option is to go
15   forward on Monday, whether it is with recommending you
16   or it is with recommending a different bidder.  They
17   may change their tune on that because that would mean
18   that they wouldn't have the ability to brief anything
19   on the other bid and would not have the ability to
20   depose anybody on the other bid.
21                   So, you know, we're happy to have the
22   broad meet and confer just to check those boxes.  I
23   don't mean it -- you know, I don't mean it in the
24   sense of, you know, we have to go through the motions.
25   I mean, so that we actually do get input from

HIGHLY CONFIDENTIAL

Page 37

1    everybody and including Gold Reserve and put it to

2    them in the way that I just framed it.

3                    THE COURT:  Well, let me just, you

4    know -- and maybe Bob wants to speak to this or it's

5    fine if you want to think about it.  But if any part

6    of me is inclined to move forward perhaps as early as

7    next week, seems to me he is going to have to make a

8    decision as to whether or not he has a superior bid in

9    his hands.  I don't want to eat up all the time he

10   might need to make that decision by me not knowing

11   what the -- setting out what the schedule is.

12                    Is that a potential issue that, you

13   know, maybe I need to be forced to make a decision on

14   the schedule or maybe he can tell me how long he needs

15   to decide if what he has now is a superior bid or not.

16                    MR. BENTLEY:  So Bob -- maybe if I

17   could, Your Honor, just ask a clarifying question to

18   make sure I understand it.  And maybe Bob already

19   understands it.  But your question is if you take

20   until Friday at the currently scheduled status

21   conference to decide whether we're going forward on

22   Monday with a sale hearing or not, the intervening

23   time, so today, tomorrow, and Friday morning, is that

24   enough time for Bob to decide whether he's going to

25   continue recommending Gold Reserve or he is going to

HIGHLY CONFIDENTIAL

Page 38

1    switch and recommend a superior proposal?

2                    And the other thing I would just note,

3    you know, before I can let Bob answer for himself.

4    But the other thing I would note is just to remind

5    what I mentioned earlier that Dalinar has a

6    three-business-day right to match if Bob were to

7    determine that there's a superior proposal.  So I

8    think that essentially would require in order to

9    proceed early next week, we'll say, that Bob makes a

10   decision today.  So if Bob were to make a decision

11   today, then Dalinar would have until the end of the

12   day, end of the business day on Monday to decide

13   whether to match.

14                    THE COURT:  Right.  No.  I get that.

15   And definitely what you just set out is part of my

16   question, but I guess just -- I won't characterize.  I

17   don't know if this is more broadly or more concretely.

18   If I stick to the orders that are in place right now,

19   then it seems to me the Special Master, while there's

20   no deadline that I'm aware of about how quickly he has

21   to decide if he has a superior proposal or superior

22   bid, we're on track to have a big hearing on Monday

23   about the bid that he recommended.

24                    And so I would think he would need to

25   make a decision before that hearing at some point.

HIGHLY CONFIDENTIAL

Page 39

```
 1    And so if I'm just going to, in this context take my
 2    time, and have a hearing on Friday about whether to
 3    have a hearing on Monday; then I just guess I don't
 4    know what thoughts, if any, he has as is that the same
 5    time in which he should be doing the work to figure
 6    out if -- and I don't mean to suggest you're not
 7    working hard.  Please don't misunderstand me.  Just,
 8    you know, is he in parallel doing that same work, or
 9    is he waiting for me to decide whether we're going
10    forward Monday?  I don't want to wait for him and he
11    wait for me at the same time, and then neither of
12    us --
13                    MR. BENTLEY:  Understood.
14                    MR. PINCUS:  Understood.  Yeah.  And
15    let me answer this, Chase.
16                    Your Honor, we have these bids.  They
17    do not include definitive SPAs.  The devil is in the
18    detail.  So without understanding exactly what the
19    terms of those agreements are, you can't even really
20    start the discussion because there's negotiation
21    there, too.  If we don't like things that are in
22    agreements, we need to negotiate with the parties.
23                    So I would tell you as a practical
24    matter, if you really want a competitive situation,
25    it's going to take a while, which in my view is going
```

HIGHLY CONFIDENTIAL

Page 40

1    to be, you know, certainly a week or two at the

2    earliest if you want us to go through --

3                    THE COURT:  Right.  So if I follow that

4    correctly -- and I appreciate all that, it's not

5    possible to make a full assessment as to whether a

6    superior bid has been received in less than one to two

7    weeks, which by default would mean the Special Master

8    would have to adhere to his current recommendation, if

9    I follow correctly, if I don't provide that amount of

10   time?

11                   MR. PINCUS:  Yeah.  That is correct.

12   And otherwise, you know, if I could even possibly

13   change my recommendation between now and then, you'd

14   be having a hearing on a deal that, you know, has

15   been, you know, topped, potentially.  So I don't see

16   how next week is possible unless you want us just to

17   stick with Gold Reserve and, you know, let people say

18   whatever they say at the hearing.

19                   THE COURT:  Right.  Okay.  That is

20   helpful.  Let me just throw this out because it

21   occurred to me.  I'm sure it's occurred to you all.

22   But if under either Option A or B, and potentially

23   some Option Cs, if time is being built in, should I

24   even consider -- does such a person exist?  Should I

25   consider trying to find a mediator?  You know, I know

HIGHLY CONFIDENTIAL

Page 41

```
 1    you guys have tried to do this in the past, but you're
 2    in the middle of everything.
 3                    I am just struck by what you said
 4    earlier about, you know, Gold Reserve, they may
 5    be -- you know, they're not incentivized to negotiate.
 6    Is it even worth me entertaining the possibility of
 7    trying to find someone new to bring into this that
 8    could potentially facilitate conversations over the
 9    next few weeks if we are going to delay?
10                    MR. BENTLEY:  So, Bob, I'm happy to let
11    you give your reaction or I can start.
12                    MR. PINCUS:  Yeah.  Look, just
13    generally, I'm not sure a mediator is helpful.  We
14    need to have the full positions of these parties
15    before we can even negotiate with them.  I don't think
16    a mediator gets you Gold Reserve moving to a new deal
17    or taking a new deal.  I think the pressure of having
18    the competitive bid that we're going to accept is the
19    only way you get there.  That's my position.
20                    And, Chase, I'll let you finish.
21                    MR. BENTLEY:  Yeah.  My view is that,
22    you know, I think that the history of this situation
23    that we find ourselves in is so long and complicated
24    that the time that it would take for somebody -- you
25    know, even a professional mediator who is, you know,
```

HIGHLY CONFIDENTIAL

Page 42

1   skilled in getting up to speed on these situations.

2   It would probably take them just a couple weeks or

3   more to get up to speed on it, in which time we're

4   probably dragging past the proposed Option A.

5                 So the mediator I think in my mind is

6   probably only realistic if we are in one of the longer

7   scenarios where everybody is waiting for a 2020s

8   decision to come down.  So if the inclination is to

9   stick with one of the faster timelines, I think that

10  practically speaking, it'll be very difficult for a

11  mediator to get up to speed and then to, you know,

12  also make any progress with Gold Reserve.

13                And likewise, as Bob said, you know,

14  the real leverage here, or the real incentive I should

15  say, for Gold Reserve to come to the table and, you

16  know, to negotiate in good faith is when they realize

17  that we are not going forward on Monday.  And instead,

18  there is a real competing proposal out here that the

19  Special Master is considering, and that the court has

20  provided the additional couple weeks of runway for.

21                You know, and from our engagement with

22  Gold Reserve to date, they're taking the view that

23  certainty no longer matters.  And really all that can

24  be considered is the headline price that's delivered

25  to the judgment creditors.  And I think that the only

HIGHLY CONFIDENTIAL

Page 43

1    way to deliver the message that that is not true is

2    that there's this additional, I don't know, whatever

3    you want to call it, two, three, four weeks for a sale

4    hearing to happen in early to mid-September.  And in

5    that time, and frankly, you know, in less time than

6    that, there's the chance that the Special Master

7    changes his recommendation and deems one of these bids

8    to be superior to the Dalinar bid.

9                    THE COURT:  Okay.  I guess one other

10   thing, if you have any thoughts you're prepared to

11   share, my recollection of what Judge Failla said was

12   she intended to decide by no later than September

13   30th.  I believe she had a large criminal trial that

14   was starting right after the call that she had.  And

15   from press reports, I understand that trial ended

16   maybe about a week ago.  And while I did have an ex

17   parte conversation with her, I know nothing more than

18   what I'm telling you.

19                    You know, judges sometimes say I'll get

20   it by September 30th, and maybe it happens sooner than

21   that.  It seems to me at least a possibility if we

22   learn nothing further that perhaps if the special

23   master deemed one of these other bids to be superior

24   in part based on the 2020s, but at the same time

25   before my hearing, Judge Failla makes a ruling, the

HIGHLY CONFIDENTIAL

Page 44

1    2020s may or may not look more or less important.  I

2    guess, I don't know if this is a question or not, but

3    that at least is something that should be thought

4    about.

5              MR. BENTLEY:  Yes.  It's actually a

6    scenario that we've thought a lot about.  Just to play

7    it back in terms of some of the mechanics that we

8    proposed or illustrative mechanics, I guess I'll say

9    for Option A, I think we had set out that there would

10   be revised bids, you know, in either the third or

11   fourth week of August and then a recommendation from

12   the Special Master immediately thereafter.

13             There are two options, essentially.

14   Either the Special Master sticks with Dalinar, which

15   does not have a 2020s transaction, and we are kind of

16   in the position that we have been in all along, which

17   is a recommended bid that doesn't have a 2020s

18   transaction.  And we don't know when the 2020s

19   decision is coming.  And so there's been briefing

20   about termination rights and whatnot.  But the

21   scenarios and the possible implications of that

22   decision, you know, are what they always have been.

23             The bonds could be valid.  The bonds

24   could be not valid.  And on the valid side, you know,

25   there are also multiple iterations of a decision that

HIGHLY CONFIDENTIAL

Page 45

1    the bonds are valid.  Either they can enforce

2    immediately or they are subject to a stay, whether

3    from the New York Court itself or from OFAC.  And

4    then, you know, there's also the complication of the

5    2020s seeking a preliminary junction if they succeed

6    in New York.

7                   So I think that all of those scenarios

8    are the same that we're facing today.  If the

9    recommendation under Option A is to stick with

10   Dalinar.  If the recommendation under Option A is

11   that -- we'll just say Amber Energy for an example.

12   If Amber Energy is the superior proposal, as I

13   previewed earlier the settlement, the support

14   agreement that they have with the 2020s contemplates

15   the 2020s going to Judge Failla and seeking a stay of

16   that action, which would -- if she grants it, the

17   effect would be that she wouldn't enter her order.

18                   Now, it may be too late, for example,

19   even if, you know, bids are due August 22nd and we

20   submit a recommendation a couple days later.  And

21   then, you know, you're on just to use a concrete date

22   as an illustration, you're looking at let's say August

23   26th, the 2020s move to stay.  But Judge Failla says,

24   you know, "I was planning on issuing my order today,

25   and here you go.  Here it is."  And she dockets it.

HIGHLY CONFIDENTIAL

Page 46

1                  That does not change that the
2       recommended bid was one with the 2020s deal.  That
3       doesn't change that there is briefing concurrently
4       going on with respect to that Amber Energy deal with
5       the transaction with the 2020s deal.  Amber Energy
6       would continue to be bound to support the 2020s.  But
7       I think that the scenario that you are flagging and
8       are, you know, potentially concerned about is a
9       decision that the 2020s are not valid.  And here we
10      are, we've recommended a transaction that has a deal
11      with the 2020s that pays them, you know, roughly $2
12      billion.  Notwithstanding the fact that after that
13      settlement was struck, the bonds have been deemed
14      invalid.
15                  Now, according to the settlement, a
16      decision by SDNY does not change that Amber Energy is
17      bound to that TSA.  And absent the Special Master
18      being able to negotiate a termination right in the SPA
19      with Amber Energy, the Special Master, by virtue of
20      that decision in New York, would not directly be able
21      to terminate the Amber Energy SPA just because he no
22      longer thinks it is a good deal.  However, that SPA
23      with Amber Energy is not enforceable until the court
24      so orders and approves it.
25                  Now, that's not to say that Bob likes

HIGHLY CONFIDENTIAL

Page 47

1    to go around breaching purchase agreements that he

2    signs.  I just say it as an illustration that, you

3    know, this is a litigation where, you know, parties

4    are going to have different views.  And we would

5    expect that if we're in that scenario where Bob has

6    recommended something like the Amber Energy

7    transaction, and before Your Honor enters an order

8    approving that transaction, there's a 2020s decision

9    that says the 2020s are not valid, I think that

10   everybody involved in this process is eyes wide open

11   that there's a substantial risk that Your Honor does

12   not approve the transaction.

13              So in our mind that is always a risk

14   that has been on the table.  The timeline, I think,

15   just becomes a little more crystallized now just

16   because of the way that the topping period and

17   subsequent bids have played out.  And obviously, when

18   Bob signed the Dalinar SPA on June 25th and submitted

19   his recommendation on July 2nd, we had no idea that

20   the 2020s decision from Judge Failla was imminent by

21   September.  That status conference wasn't until July

22   10th.

23              So I think that's how we view those

24   scenarios.  There are nuances and iterations that kind

25   of shoot off of each of those.  And happy to answer

HIGHLY CONFIDENTIAL

Page 48

1    questions, but suffice it to say we've spent a lot of

2    time thinking about the different options.

3                    THE COURT:  Great.  Yeah.  I'm glad and

4    not surprised that you have.  Thank you for that.  I

5    think my only further thoughts subject to anything

6    else you might want to ask me or discuss, it seems

7    that it may be worthwhile if you all focus, you know,

8    as soon as I let you go, on if there is consensus on

9    let's not have an evidentiary hearing on Monday,

10   Tuesday, and/or Wednesday of next week.

11                   You know, perhaps, you know, if you're

12   in a position to report something like that, you know,

13   even later today, I could potentially be in a position

14   where, you know, I could at least make clear we don't

15   need all the witnesses and potentially we don't need

16   all the lawyers even to be sticking to their travel

17   plans to get to Wilmington.

18                   What I mean to say, concretely, is even

19   if you don't get consensus or don't even know the

20   positions of everybody on the next steps, full stop,

21   Option A versus B versus C, if we can pull out this

22   piece of, "Okay.  What about Monday?"  You know, and I

23   was in a position to know everybody's position, "Okay.

24   What about Monday though, at least?"  Are we all in

25   agreement that we don't want to have an evidentiary

HIGHLY CONFIDENTIAL

Page 49

1    hearing on Monday about Gold Reserve?  Well then, you

2    know, perhaps I could get you an answer on that piece

3    of the schedule fairly quickly.  But as always, you

4    know, you use your best judgment as to what to do.

5    But that's a thought.

6                    MR. BENTLEY:  Yeah.  I don't want to

7    get ahead of Bob.  I think that my initial reaction is

8    that the parties would appreciate that clarity for

9    Monday.  And we can certainly go ahead and I think

10   that everybody is waiting for an update from us.  So

11   I'm sure they're standing by and ready to get on a

12   phone call as soon as we request it.

13                   My question for you, Your Honor, is

14   whether you would like us to send you an email that

15   says this is what the outcome was of that call, or if

16   you would like us to file a letter that says this is

17   the outcome of that call.

18                   THE COURT:  I think if it's not going

19   to slow you down very much, it's best to have things

20   in the formal record as much as possible.  So, I mean,

21   there's good reason for why we're now having our

22   second ex parte call this week, and you'll make the

23   appropriate record that this has occurred.  And I'm

24   comfortable that I have every interested party's

25   consent to this.  And I cannot think of any way I

HIGHLY CONFIDENTIAL

Page 50

1    could possibly manage my role as a neutral judicial
2    decision maker in this complex case without having
3    access occasionally as needed to these ex parte calls.
4                    All that said, it's unusual as you as a
5    litigator know.  And so if it's not going to slow you
6    down much to write a short letter, put it in the
7    docket, make it public, that is preferable to the
8    email.
9                    MR. BENTLEY:  I'm sure that is not any
10   burden at all.  We can pull together a letter quickly
11   and file it on the docket.  And also, Michael and I,
12   exchanged emails this morning about the notice of ex
13   parte.  Our intention is to file the notice this
14   afternoon and just combine and make reference to both
15   the ex parte on Monday and today's ex parte.  And of
16   course, when we get on the phone with parties this
17   afternoon to talk about Monday, we'll note that we had
18   another ex parte today.
19                    THE COURT:  Of course.  That all sounds
20   great.  And I reiterate, as I said in an email to you
21   and I think said on this call, we, Michael and I, are
22   available.  So I'm not saying you can't use email and
23   certainly if you need to reach us with any urgency in
24   not normal business hours, you're going to have to use
25   email or text or call, and we'll be as responsive as

HIGHLY CONFIDENTIAL

Page 51

1    we can be.  And anything else from your end at this

2    point with me?

3                    MR. BENTLEY:  No.  No.  And I think

4    that we should assume that there's virtually no way

5    that we will be able to get a letter or even an email

6    prior to business hours concluding today.  So I think

7    what we'll do is we'll plan on filing the letter.  And

8    then, once the letter hits the docket to make sure

9    that, Your Honor, you see that it hit the docket, we

10   can send it by email to you so that you have it on

11   your court email on your phone.  And you can see the

12   outcome of the meet and confer.

13                   THE COURT:  That's an excellent idea.

14   I probably should have made clear in my email, even

15   though I have access to my email, I don't get

16   automatic notice as I think you do when something is

17   filed in a case.  So for better or worse, I see at

18   midnight every night a collection of everything that

19   was filed in all my cases.  And much more often than

20   not, I'm up at midnight to look at that email.  But it

21   means, I don't know what happened at five o'clock or

22   at eight o'clock until midnight.

23                   So yeah.  If you file something after

24   five o'clock but before midnight sending me an email

25   and copying me on it will make sure that Michael and I

HIGHLY CONFIDENTIAL

                                                    **Page 52**

1    both see it.  So thank you for that.

2                    MR. BENTLEY:  Yes.  Will do.

3                    THE COURT:  Okay.  All right.  Well, if

4    that's it, thank you as always.  And good luck going

5    forward.

6                    MR. BENTLEY:  Thank you very much.

7    Appreciate it.  Thank you.

8                    THE COURT:  Okay.  Take care, everyone.

9    Bye.

10                    THE REPORTER:  Off the record at 3:04

11   p.m.

12                    (Whereupon, at 3:04 p.m., the

13                    proceeding was concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 53

1                    CERTIFICATE

2              I, LOGAN THOREAU, the officer before whom

3      the foregoing proceedings were taken, do hereby

4      certify that any witness(es) in the foregoing

5      proceedings, prior to testifying, were duly sworn;

6      that the proceedings were recorded by me and

7      thereafter reduced to typewriting by a qualified

8      transcriptionist; that said digital audio recording of

9      said proceedings are a true and accurate record to the

10     best of my knowledge, skills, and ability; that I am

11     neither counsel for, related to, nor employed by any

12     of the parties to the action in which this was taken;

13     and, further, that I am not a relative or employee of

14     any counsel or attorney employed by the parties

15     hereto, nor financially or otherwise interested in the

16     outcome of this action.

17

18

19

20             LOGAN THOREAU

21             LOGAN THOREAU

22             Notary Public in and for the

23                       State of New York

24

25

HIGHLY CONFIDENTIAL

Page 54

CERTIFICATE OF TRANSCRIBER

1

2          I, EMILY LEVY, do hereby certify that this

3   transcript was prepared from the digital audio

4   recording of the foregoing proceeding, that said

5   transcript is a true and accurate record of the

6   proceedings to the best of my knowledge, skills, and

7   ability; that I am neither counsel for, related to,

8   nor employed by any of the parties to the action in

9   which this was taken; and, further, that I am not a

10  relative or employee of any counsel or attorney

11  employed by the parties hereto, nor financially or

12  otherwise interested in the outcome of this action.

13

14

15

16          *Emily Levy*

17          EMILY LEVY

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

**[& - agreements]**                                            Page 1

| & | | | |
|---|---|---|---|
| **&**  1:15 2:4,16 | 45:5,14,15,23 46:2,5,6,9,11 47:8,9,20 | **5** | **accurate**  53:9 54:5 |

**&**  1:15 2:4,16

**1**

**1.2**  19:21
**10153**  1:17 2:18
**10th**  14:24 24:5 47:22
**13**  1:12
**1313**  2:5
**15th**  31:11
**17-151**  1:7
**18th**  21:12
**19801**  2:6
**1:49**  1:13 5:3
**1st**  15:11

**2**

**2**  21:25 23:8 46:11
**2.1**  14:11
**20**  26:9
**2020**  11:15 12:16,22
**2020s**  6:17 14:10,10,14,19 14:19,19 15:4 15:23 16:7 21:25 24:2,4 24:12 29:22 30:5,11 31:21 42:7 43:24 44:1,15,17,18

45:5,14,15,23
46:2,5,6,9,11
47:8,9,20
**2025**  1:12
**20th**  31:16
**212**  2:20
**22nd**  24:23 26:24 27:3 45:19
**24**  32:1
**25**  12:25 13:18
**25th**  47:18
**26th**  45:23
**27138**  53:20
**27th**  31:16
**29th**  24:23
**2nd**  11:17 21:23 47:19

**3**

**3.8**  21:24
**30**  26:9
**302**  2:8
**30589**  54:16
**30th**  15:10,13 15:13,20,20 17:20,25 18:8 29:24 43:13,20
**310-8607**  2:20

**4**

**4**  32:19 35:1,9
**48**  13:21 27:20

**5**

**5.8**  14:5 16:2,5 18:2
**5.9**  14:6 16:2,5
**5.9.**  18:2
**50**  13:21

**7**

**7.38**  11:10 22:1
**7543760**  1:19
**767**  1:16 2:17

**8**

**8.5**  15:21 17:24 18:1
**8th**  18:8,21

**9**

**984-6000**  2:8

**a**

**ability**  18:25 36:18,19 53:10 54:7
**able**  27:1,2 30:17 46:18,20 51:5
**above**  12:25 13:18
**absent**  46:17
**absolutely**  35:14
**accept**  41:18
**access**  50:3 51:15

**accurate**  53:9 54:5
**acknowledged**  10:14
**action**  14:20 15:6 45:16 53:12,16 54:8 54:12
**actually**  14:3 16:11 27:21 35:25 36:25 44:5
**additional**  5:18 22:6,8,12 23:11 36:9 42:20 43:2
**address**  34:22
**adhere**  40:8
**adjourn**  9:4
**adjournment**  5:9 6:5 29:21 36:3
**afternoon**  50:14,17
**agenda**  7:6
**ago**  43:16
**agree**  14:20 35:19,24 36:11
**agreement**  12:21,22 14:4 14:18,18 17:5 45:14 48:25
**agreements**  13:1,19,24

HIGHLY CONFIDENTIAL

**[agreements - bid]**                                                      Page 2

39:19,22 47:1
**agrees** 35:14
**ahead** 49:7,9
**amber** 6:10,17
7:18,24,25 8:2
8:5,14 10:2
11:22,25 12:11
13:16,23 14:5
14:13,15 16:2
16:9,22 17:6
18:6,20,21
19:12 22:14
24:14 28:24
45:11,12 46:4
46:5,16,19,21
46:23 47:6
**ambulance**
13:4
**amount** 40:9
**anderson** 2:4
**andrew** 2:15
**answer** 17:10
26:4 29:14
38:3 39:15
47:25 49:2
**answered** 10:8
**anticipate** 26:8
27:8 30:1
**anticipates**
14:25
**anticipating**
8:22
**anybody** 22:7
32:20 36:20

**anyway** 31:12
35:17
**apologies** 10:13
**apples** 27:25,25
**applicable**
15:15
**appreciate** 32:7
40:4 49:8 52:7
**appropriate**
49:23
**approve** 47:12
**approves** 46:24
**approving** 47:8
**approximately**
11:10 14:5
21:24
**arguably** 17:19
**arguments** 7:9
**asked** 33:20
**asking** 22:13
25:7 33:10
**assessment**
40:5
**assume** 51:4
**attached** 8:25
14:7
**attorney** 53:14
54:10
**audio** 53:8 54:3
**august** 1:12
18:7,21 21:12
24:17,23 25:21
44:11 45:19,22

**authority** 12:20
15:12 25:5
**automatic**
51:16
**available** 33:6
33:16 50:22
**avenue** 1:16
2:17
**avoid** 23:2
**aware** 38:20

**b**

**b** 4:1 12:10
15:11,12,25
16:9,10,10,13
16:20 17:6,16
18:8,20,23
19:12 24:3,10
24:14 26:23
27:6 28:20
29:11,13,16
30:19 32:5,9
32:11,21 34:11
34:23 40:22
48:21
**b's** 15:18 18:3
**back** 9:7,25
15:7 18:19
28:2 44:7
**backed** 20:25
**background**
13:4
**backwards**
28:1

**barr** 2:13
**based** 43:24
**basis** 32:4
**behalf** 2:2,10
**believe** 11:16
15:15 17:17
22:17 26:24
27:19 43:13
**bentley** 2:11
5:4 10:7,13,20
13:8,12 17:23
18:12 20:23
21:8 23:20
27:17 29:12
31:24 32:17
34:4 36:5
37:16 39:13
41:10,21 44:5
49:6 50:9 51:3
52:2,6
**best** 9:4 25:17
25:18,18,19
31:4 49:4,19
53:10 54:6
**better** 32:22
34:10 51:17
**beyond** 18:10
18:25
**bid** 6:10,11,13
6:18,24 7:13
7:19,20,20 8:3
8:14,18,20
10:2,2,5 11:13
11:21,22,25

HIGHLY CONFIDENTIAL

12:2,12,18,24
12:25 13:1,16
13:16,19 14:5
15:9,10,13,13
15:14 16:1,2
16:14,19,23
17:2,17 18:3
18:14 19:15
20:9 21:23
23:1 25:3,7,15
25:18,19 28:22
29:19 31:4
36:19,20 37:8
37:15 38:22,23
40:6 41:18
43:8 44:17
46:2
**bidder** 7:22
12:9,10,13,20
15:11,12,18,24
16:9,9,10,10,13
16:20 17:6,16
18:3,8,20,23
19:7,12 23:6
24:14 26:4
28:20 36:16
**bidders** 5:17
12:7 17:6
18:19 19:11,24
20:8 23:5,6
24:13 25:20
30:2,3,4,9,11
30:16,21

**bids** 11:1,6
12:4,8 17:8,9
17:11 19:14
20:15 21:6,14
21:16 23:3,7
24:15 25:1,1
25:21,25 26:12
27:23 28:8,18
30:5,8,16,25
31:13 39:16
43:7,23 44:10
45:19 47:17
**big** 38:22
**billion** 11:11
14:6,11 15:21
16:3,5 17:25
18:1 19:21
21:24,25 22:1
23:8 46:12
**birds** 13:14
**bit** 11:1 15:19
24:9 30:8
**bob** 27:18,22
28:17 37:4,16
37:18,24 38:3
38:6,9,10
41:10 42:13
46:25 47:5,18
49:7
**bolivarian** 1:7
**bond** 11:15
12:17,22 16:4
16:4

**bonds** 44:23,23
45:1 46:13
**bound** 46:6,17
**boxes** 36:22
**breach** 8:17
**breached** 8:12
8:19
**breaching** 47:1
**brief** 15:16
36:18
**briefing** 11:17
21:20 22:8
23:11 26:16
29:6 31:6,14
44:19 46:3
**bring** 41:7
**brings** 14:4
29:2
**broad** 36:22
**broadly** 25:6
38:17
**building** 27:8
**built** 40:23
**burden** 50:10
**bury** 21:13
**business** 26:2
29:1 38:6,12
50:24 51:6
**bye** 52:9

**c**

**c** 2:1 3:1 5:1
27:10 28:16
32:5,10,10,21

48:21
**calendar** 9:23
26:21
**call** 20:21
23:22 24:11
32:10 33:11
34:16 43:3,14
49:12,15,17,22
50:21,25
**calls** 10:23 22:9
32:1 50:3
**capital** 30:14
**care** 52:8
**case** 26:1,11
34:17 50:2
51:17
**cases** 51:19
**cash** 11:11,12
13:25 14:3
15:21,22 16:3
16:3,21 17:21
17:21 19:21,25
20:13
**certain** 19:13
24:16 25:21
33:23
**certainly** 22:19
35:18 40:1
49:9 50:23
**certainty** 42:23
**certificate** 53:1
54:1
**certify** 53:4
54:2

HIGHLY CONFIDENTIAL

**[cetera - consistent]**                                                    Page 4

**cetera** 15:4
    29:7,16
**chance** 43:6
**change** 22:20
    29:17,19 30:14
    36:17 40:13
    46:1,3,16
**changed** 15:19
**changes** 35:3
    43:7
**characterize**
    38:16
**chase** 2:11
    39:15 41:20
**chase.bentley**
    2:19
**check** 36:22
**checking** 31:9
**citgo** 30:14
**city** 13:13
**claim** 13:21
    14:2 19:21
    20:1,6
**claims** 16:6
**clarifying**
    37:17
**clarity** 49:8
**clarke** 2:15
**clear** 24:23
    48:14 51:14
**clerk** 2:23
**clock** 10:23
**close** 22:22

**closing** 7:9
**coalesce** 5:19
**collection**
    51:18
**collective** 12:4
**combine** 50:14
**come** 6:10 7:23
    9:22,24 15:7
    18:4 21:15
    35:15,16 42:8
    42:15
**comes** 24:4
    26:22 29:24
    30:2
**comfortable**
    49:24
**coming** 16:16
    18:23 28:23
    34:15 44:19
**commencem...**
    9:8,9
**commencing**
    21:11,17
**commitment**
    16:19,22,23
    30:12
**communicated**
    22:9
**compared**
    13:16
**comparing**
    21:23 22:1,14
**comparison**
    18:13

**competing** 7:23
    12:9 15:10
    19:11,16 22:22
    25:4 26:4
    42:18
**competitive**
    39:24 41:18
**complex** 50:2
**compliant** 17:2
**complicated**
    41:23
**complication**
    45:4
**concerned** 46:8
**concluded**
    52:13
**concluding**
    51:6
**concrete** 45:21
**concretely**
    38:17 48:18
**concurrently**
    46:3
**conducting**
    11:17 23:10
**confer** 6:1
    32:19 34:14,24
    36:22 51:12
**conference**
    1:11 5:9,12,25
    6:9 7:4,5,12
    9:4,5,14,18,20
    10:16 14:25
    24:6 37:21

    47:21
**confidential**
    19:13
**confidentiality**
    8:12,17,19
**confirm** 6:17
    12:6 34:17
**confirming**
    5:13
**conforming**
    12:5,6,12,15
**connection**
    15:16
**conoco** 13:20
    14:2 36:7
**conscious** 35:2
**consensus**
    34:11 35:10
    36:6 48:8,19
**consent** 49:25
**consented** 8:20
**consider** 35:20
    40:24,25
**consideration**
    11:12 14:1
    16:7 17:21
    19:25
**considered**
    42:24
**considering**
    42:19
**consistent**
    20:21 32:1

HIGHLY CONFIDENTIAL

**[cont'd - decision]**                                                    Page 5

| | | | |
|---|---|---|---|
| **cont'd** 3:1 | **couple** 7:16 | **criminal** 43:13 | 24:15,16 25:8 |
| **contemplate** 11:14 | 9:16 19:10 | **criteria** 23:1 | 25:10,11,16,21 |
| **contemplated** | 24:22 30:23 | **cross** 7:8 | 27:10 29:21 |
| 15:20,23 17:24 | 33:24,25 42:2 | **crystallex** 1:4 | 42:22 45:21 |
| 18:1,9 | 42:20 45:20 | 36:7 | **dates** 24:18 |
| **contemplates** | **course** 11:8 | **crystallized** | **david** 3:4 |
| 14:10 16:21 | 15:17 32:3,8 | 47:15 | **day** 25:13 38:6 |
| 45:14 | 50:16,19 | **cs** 40:23 | 38:12,12 |
| **context** 11:7 | **court** 1:1 9:16 | **curious** 10:2 | **days** 19:4 22:11 |
| 17:12 39:1 | 10:11,18 13:6 | **current** 21:10 | 26:2 29:1 |
| **continue** 26:25 | 13:10 14:15 | 40:8 | 45:20 |
| 37:25 46:6 | 17:15 18:11 | **currently** 37:20 | **de** 2:6 |
| **continuing** | 20:16 21:5 | | **deadline** 32:13 |
| 20:20 | 23:18 27:5 | **d** | 32:14 35:9 |
| **contrarian** | 29:8 31:22 | | 38:20 |
| 18:9 | 32:7,18 35:7 | **d** 5:1 | **deal** 6:16 40:14 |
| **conversation** | 37:3 38:14 | **d.c.** 13:7 | 41:16,17 46:2 |
| 14:12 43:17 | 40:3,19 42:19 | **dalinar** 6:21 | 46:4,5,10,22 |
| **conversations** | 43:9 45:3 | 7:22,24 8:1 | **decide** 27:22 |
| 19:3,6,9,17 | 46:23 48:3 | 11:9,12 12:5 | 28:18,20 33:11 |
| 41:8 | 49:18 50:19 | 18:14,14 19:8 | 37:15,21,24 |
| **convert** 7:3 | 51:11,13 52:3 | 20:8 22:1,14 | 38:12,21 39:9 |
| **copying** 51:25 | 52:8 | 22:24 24:13 | 43:12 |
| **corner** 20:25 | **cover** 5:7 10:8 | 25:23,24 26:1 | **decided** 9:10 |
| **corp** 1:4 | 10:10 11:1 | 26:1,5 27:23 | **deciding** 34:2 |
| **correct** 40:11 | **create** 23:12 | 28:1,9,10,25 | **decision** 6:24 |
| **correctly** 17:17 | **creditor** 20:4 | 29:18 38:5,11 | 6:25 10:4 |
| 32:16 40:4,9 | **creditors** 5:19 | 43:8 44:14 | 14:23 24:1,3,6 |
| **corroon** 2:4 | 11:11 13:20 | 45:10 47:18 | 26:15 29:22,24 |
| **counsel** 53:11 | 14:7,8 15:22 | **dalinar's** 20:9 | 30:2,6,11,13 |
| 53:14 54:7,10 | 16:5 18:2,10 | **dang** 2:3 | 33:1,13 35:22 |
| **country** 13:14 | 18:16 19:3 | **dangers** 36:1 | 37:8,10,13 |
| | 20:3 21:25 | **data** 15:7 | 38:10,10,25 |
| | 36:10 42:25 | **date** 1:12 9:9 | 42:8 44:19,22 |
| | | 19:18 21:20,21 | |

HIGHLY CONFIDENTIAL

**[decision - emails]**                                                        Page 6

| | | | |
|---|---|---|---|
| 44:25 46:9,16 46:20 47:8,20 50:2 | **description** 4:2 **detail** 24:9 39:18 | **discovery** 29:7 31:7 **discuss** 7:5 8:2 | **e** |
| **deem** 10:1 | **deter** 35:21 | 48:6 | **e** 2:1,1 3:1,1 4:1 5:1,1 |
| **deemed** 6:20 12:11 25:24 43:23 46:13 | **determination** 27:9,14,19,20 31:3 | **discussed** 27:17 **discussion** 7:13 33:4,13,17,19 | **earlier** 11:25 22:25 23:24 24:11 33:5 38:5 41:4 |
| **deems** 43:7 | **determine** 25:22 28:24 | 39:20 | 45:13 |
| **default** 40:7 | 38:7 | **distinction** 31:18 | **earliest** 40:2 |
| **defendant** 1:9 | **determined** | **distributed** | **early** 26:20 28:2 33:8 37:6 |
| **definitely** 17:23 38:15 | 29:22 | 16:3 | 38:9 43:4 |
| **definition** 9:6 | **developments** 9:21 33:9 | **district** 1:1,2 **ditch** 25:15 | **eat** 37:9 |
| **definitive** 39:17 | **devil** 39:17 | **divergent** 34:9 | **economic** 16:13 |
| **delaware** 1:2 | **difference** 18:3 | **divulged** 7:21 | **economics** 16:9 |
| **delay** 41:9 | **different** 17:21 28:12 30:8 | **docket** 5:11 6:6 50:7,11 51:8,9 | **effect** 29:3 30:13 33:16 45:17 |
| **delayed** 23:23 | 36:16 47:4 | **dockets** 45:25 | **effectively** |
| **delaying** 24:3 | 48:2 | **doing** 20:18 | 14:16 |
| **deliver** 11:10 16:24 43:1 | **difficult** 42:10 | 39:5,8 | **effort** 25:15 |
| **delivered** 14:6 15:21 42:24 | **digital** 53:8 54:3 | **dollars** 15:21 **doorstep** 15:25 | **eight** 51:22 **either** 19:20 |
| **denoted** 12:13 | **direct** 7:8 | **dozen** 10:24 | 26:3 40:22 44:10,14 45:1 |
| **depending** 15:1 15:2 30:10 | **directing** 5:13 **directly** 46:20 | **dragging** 42:4 **drive** 25:17 | **email** 20:24 31:9 34:17 |
| **depose** 36:20 | **discharged** | **dry** 25:13 | 49:14 50:8,20 |
| **deposition** 31:7 | 16:6 | **du** 11:23 | 50:22,25 51:5 |
| **depositions** 11:18 21:20 22:12 23:11 26:17 | **disclosed** 16:11 **disclosure** 6:19 7:17 8:25 | **due** 9:19 34:25 45:19 **duly** 53:5 | 51:10,11,14,15 51:20,24 **emails** 22:10 50:12 |
| **described** 12:4 12:19 | **discount** 20:1 **discounts** 20:5 20:9 | | |

HIGHLY CONFIDENTIAL

**[emily - file]**

Page 7

emily 54:2,17
employed
  53:11,14 54:8
  54:11
employee 53:13
  54:10
encouraged
  7:25 18:23
encouraging
  18:20
endeavor 35:1
ended 21:2
  43:15
energy 6:10,17
  7:18,24,25 8:2
  8:6,14 11:22
  11:25 12:11
  13:16,23 14:5
  14:13,15 16:2
  16:9,22 17:6
  18:6,20,22
  19:12 22:15
  24:14 28:25
  45:11,12 46:4
  46:5,16,19,21
  46:23 47:6
enforce 45:1
enforceable
  46:23
engage 12:20
  15:12 18:24
  20:13 25:5
engaged 25:9

engagement
  42:21
engaging 19:23
enter 14:23
  45:17
entered 5:13
enters 47:7
entertaining
  41:6
eoghan 2:14
equivalent
  13:14 14:11
es 53:4
esposito 2:23
esquire 2:3,11
  2:12,13,14,15
essentially
  14:21 15:25
  23:23 27:25
  30:9 31:15
  38:8 44:13
estimate 10:3
et 15:4 29:7,16
evaluating 6:20
evaluation
  22:25
evd 4:2
event 14:14
  16:25
evercore 2:25
  3:3,4
everybody 25:7
  34:10,18,25
  35:14 37:1

42:7 47:10
  48:20 49:10
everybody's
  35:3 48:23
evidentiary
  48:9,25
ex 1:11 5:20,22
  10:22 11:24
  34:16 43:16
  49:22 50:3,12
  50:15,15,18
exactly 20:6
  39:18
example 16:20
  22:12 28:18
  30:24 45:11,18
excellent 51:13
exchanged
  50:12
excuse 14:6
execute 16:25
  27:21
executed 12:21
  13:24 14:4
  16:18
exemplified
  22:4
exercise 7:13
exist 40:24
existing 6:21
  7:22 18:13
  25:23 30:2
expect 26:12,16
  30:22 47:5

expecting 18:4
expert 21:21
experts 7:7
  11:19 23:12
extent 13:25
  16:19 24:14
  33:10,12
eyes 47:10

**f**

face 20:1,6,9
facilitate 41:8
facing 45:8
fact 6:16 8:9,18
  46:12
factors 15:3
facts 10:17
  22:20
failla 14:22
  15:5 24:2,4,5
  29:25 43:11,25
  45:15,23 47:20
fair 17:22
fairly 49:3
faith 42:16
far 19:23 23:6
  33:23
faster 42:9
fifth 1:16 2:17
figure 30:20
  39:5
file 5:14 6:23
  14:22 15:4
  35:1 49:16

HIGHLY CONFIDENTIAL

[file - guess]                                                                                       Page 8

50:11,13 51:23
**filed**   5:10 6:3,6
   15:13 19:19
   20:20 22:5,7
   51:17,19
**files**   26:6
**filing**   15:16
   21:2 51:7
**final**   12:3 14:17
   21:22 25:18,21
   27:9 29:19
   30:25 31:4
**finalize**   17:5
**financially**
   53:15 54:11
**financing**   16:21
   30:12,22
**find**   25:11
   40:25 41:7,23
**fine**   10:11 37:5
**finger**   7:12
**finish**   41:20
**first**   5:8 9:16
   10:14 11:8
   18:16 21:9
   28:19 35:8
**five**   51:21,24
**flagging**   46:7
**fluid**   32:25
**focus**   48:7
**focused**   21:21
**focuses**   34:7
**folding**   8:2

**follow**   26:18
   29:8 40:3,9
**foot**   25:19
**forced**   37:13
**foregoing**   53:3
   53:4 54:4
**form**   11:11
**formal**   49:20
**forth**   11:19
   18:19 21:21
**forthcoming**
   10:4 24:6
**forward**   22:18
   25:19 27:13
   32:11 34:12
   35:25 36:8,14
   36:15 37:6,21
   39:10 42:17
   52:5
**four**   20:19
   32:13,23 43:3
**fourth**   44:11
**frame**   23:21
   36:13
**framed**   37:2
**frankly**   43:5
**friday**   9:18,21
   10:16 20:21
   33:5 37:20,23
   39:2
**fridays**   24:22
**friedmann**   2:12
**front**   11:6
   14:22 15:10

**full**   19:20 40:5
   41:14 48:20
**furious**   32:1
**further**   9:22
   18:21,22 33:17
   43:22 48:5
   53:13 54:9

**g**

**g**   5:1
**generally**   6:15
   23:20 41:13
**getting**   5:23
   14:3 42:1
**give**   5:6 18:1
   25:17 32:9
   41:11
**given**   9:3 11:23
   11:24 20:18
   21:14 22:20
   32:22
**giving**   25:8
   30:9 33:12
**glad**   48:3
**go**   5:25 11:22
   13:4 14:20
   21:8,12 23:14
   29:4,12 30:17
   30:20 31:11
   35:24 36:14,24
   40:2 45:25
   47:1 48:8 49:9
**going**   7:7,8
   8:20 9:13

16:25 18:18
25:6 27:13,22
28:1,2,9 30:18
31:20 32:11
34:12,19,19
36:8,14 37:7
37:21,24,25
39:1,9,25,25
41:9,18 42:17
45:15 46:4
47:4 49:18
50:5,24 52:4
**gold**   8:1,7
   18:16,24 19:8
   19:9,14,15,18
   20:11,19 36:2
   36:10,12 37:1
   37:25 40:17
   41:4,16 42:12
   42:15,22 49:1
**good**   23:4,8
   42:16 46:22
   49:21 52:4
**gotshal**   1:15
   2:16
**gotten**   7:15
**grant**   15:5
**grants**   45:16
**great**   5:4 10:13
   48:3 50:20
**guess**   21:1 23:5
   26:22 31:18
   38:16 39:3
   43:9 44:2,8

HIGHLY CONFIDENTIAL

**[guidance - intended]**                                        Page 9

**guidance**  5:23
    32:9
**guys**  41:1

**h**

**h**  4:1
**hand**  19:17
    27:15
**handed**  20:19
**hands**  37:9
**handy**  6:7
**happen**  33:21
    43:4
**happened**  8:21
    8:21 19:4
    22:21 51:21
**happens**  43:20
**happy**  17:10
    29:14 34:14,24
    35:6 36:21
    41:10 47:25
**hard**  39:7
**head**  14:2
**headline**  42:24
**hear**  23:18
**heard**  22:3
    28:22 29:4
**hearing**  5:25
    7:6 9:8,8,9
    10:9 11:5 15:2
    15:8 17:13
    21:11,18 22:19
    22:22 23:10,13
    23:13,16,23,24

24:11 25:14
26:20 27:2
28:17 29:5,21
31:8,15,19
33:11 34:8,20
34:23 36:3
37:22 38:22,25
39:2,3 40:14
40:18 43:4,25
48:9 49:1
**help**  11:6 24:8
**helpful**  40:20
    41:13
**hereto**  53:15
    54:11
**hesitant**  19:13
**high**  5:6 23:22
**hiltz**  2:25 22:13
**history**  41:22
**hit**  51:9
**hits**  51:8
**hold**  25:13
**holders**  11:15
    12:17,22 16:4
**holidays**  26:23
    27:3 31:11
**honor**  5:5 6:13
    24:20 25:5
    29:4 30:18
    32:4 37:17
    39:16 47:7,11
    49:13 51:9
**honor's**  5:23
    22:24 35:4

**honorable**  1:14
**hope**  30:22
**hopefully**  13:10
**horse**  11:13
    12:1,25 13:18
**hours**  27:20
    32:1,24 50:24
    51:6

**i**

**idea**  47:19
    51:13
**ideally**  16:16
**identical**  16:1
    16:13 17:8
**illustration**
    45:22 47:2
**illustrative**
    29:23 44:8
**imagine**  36:9
**immediately**
    26:3,6,18
    34:15 44:12
    45:2
**imminent**
    47:20
**imminently**
    17:18
**implicated**
    28:16
**implication**
    30:5
**implications**
    29:5 44:21

**important**  15:7
    25:11 44:1
**importantly**
    18:12 23:25
    31:17
**incentive**  42:14
**incentivized**
    41:5
**inclination**
    42:8
**inclined**  37:6
**include**  32:11
    33:23 39:17
**included**  20:8
**including**  18:5
    30:21 37:1
**incorporated**
    13:1
**increase**  18:20
    23:7
**indicated**  24:5
**indifferent**
    33:25
**inferred**  8:11
**information**
    7:17 8:5,10,24
    19:14 21:15
    26:14
**initial**  49:7
**input**  36:25
**inquiring**  9:25
**insisting**  22:6
**intended**  43:12

HIGHLY CONFIDENTIAL

**[intention - leverage]**                                                    Page 10

| | | | |
|---|---|---|---|
| **intention**   6:23<br>  50:13<br>**intents**   16:8<br>  17:7<br>**interested**<br>  27:12 32:21<br>  49:24 53:15<br>  54:12<br>**international**<br>  1:4<br>**intervening**<br>  37:22<br>**invalid**   46:14<br>**involved**   47:10<br>**issue**   7:10<br>  37:12<br>**issues**   23:12<br>**issuing**   14:25<br>  45:24<br>**it'll**   9:6 13:10<br>  25:17 42:10<br>**iterations**<br>  44:25 47:24 | 45:23 47:20<br>**judges**   43:19<br>**judgment**   5:18<br>  11:11 14:8,24<br>  15:22 16:5,6<br>  18:1,10,16<br>  19:3 20:3,4<br>  21:24 36:9<br>  42:25 49:4<br>**judicial**   50:1<br>**july**   11:16<br>  14:24 15:11<br>  21:22 24:5<br>  47:19,21<br>**junction**   45:5<br>**june**   15:10,13<br>  15:13,20,20<br>  17:20,25 18:8<br>  47:18 | 15:2,3,6,15<br>16:15,16,24<br>17:1,12 18:10<br>18:13,18,19,25<br>19:21 20:6,7<br>20:24 21:9,10<br>22:8 23:2,3,8<br>25:14,15 26:9<br>26:25 28:15<br>29:3,9,13<br>30:18,25 31:13<br>31:16 32:22<br>33:4,8,15,16<br>34:5,7,18,22,24<br>35:3,9,22<br>36:21,23,24<br>37:4,13 38:3<br>38:17 39:4,8<br>40:1,12,14,15<br>40:17,25,25<br>41:4,5,22,25,25<br>42:11,13,16,21<br>43:2,5,17,19<br>44:2,10,18,22<br>44:24 45:4,19<br>45:21,24 46:8<br>46:11 47:3,3<br>48:7,11,11,12<br>48:14,19,22,23<br>49:2,4 50:5<br>51:21 | **koch**   13:22<br>  18:5,10,15<br>  20:4 |
| | **k** | | **l** |
| **j** | **keenan**   2:14<br>**keep**   28:17<br>**kick**   27:3<br>**kind**   8:8 11:2<br>  19:25 44:15<br>  47:24<br>**knew**   7:24<br>**know**   6:7 7:6<br>  7:24 8:4,22,24<br>  9:1,1,6,10<br>  10:23 11:19,23<br>  12:7,18 13:13<br>  13:16 14:5,21 | **knowing**   37:10<br>**knowledge**<br>  53:10 54:6 | **land**   20:14<br>**large**   43:13<br>**late**   33:8 45:18<br>**law**   26:11<br>**lawyers**   48:16<br>**lay**   20:14 24:8<br>**laying**   11:5<br>**lead**   21:13<br>**learn**   43:22<br>**learned**   15:17<br>  15:24<br>**leaves**   23:9<br>**left**   13:15<br>**leonard**   1:14<br>**letter**   5:10 6:3<br>  6:5,8,8 7:2,11<br>  11:24 15:19,20<br>  16:14,22,23<br>  17:25 19:19<br>  20:19 21:1<br>  22:5,7 32:15<br>  35:13 36:1<br>  49:16 50:6,10<br>  51:5,7,8<br>**letters**   16:19<br>  30:12<br>**level**   5:6 23:22<br>**leverage**   42:14 |
| **jared**   2:12<br>**jewish**   26:23<br>  31:10<br>**job**   1:19<br>**jour**   11:23<br>**judge**   2:23 13:3<br>  14:22 15:4<br>  24:2,4,5 29:25<br>  43:11,25 45:15 | | | |

HIGHLY CONFIDENTIAL

**[levy - monday]**                                                      Page 11

**levy**  54:2,17
**levying**  8:8
**likely**  7:12 10:1
  19:18 24:1
  32:2
**likes**  46:25
**likewise**  42:13
**line**  13:20
  31:12
**litigation**  24:2
  24:4 31:21
  47:3
**litigator**  50:5
**little**  24:9 30:8
  47:15
**llp**  1:15 2:4,16
**lob**  25:14
**location**  1:15
**logan**  1:18 53:2
  53:21
**long**  27:18
  30:21 37:14
  41:23
**longer**  42:6,23
  46:22
**look**  41:12 44:1
  51:20
**looking**  27:7
  31:15 45:22
**looks**  30:8
**lot**  10:18 26:10
  27:21 44:6
  48:1

**loud**  36:1
**lps**  1:7
**luck**  52:4

**m**

**made**  6:18 7:1
  7:2,14 15:14
  27:20 51:14
**make**  24:16
  25:15 27:4,9
  27:14,19 31:3
  33:1 35:16
  36:11 37:7,10
  37:13,18 38:10
  38:25 40:5
  42:12 48:14
  49:22 50:7,14
  51:8,25
**maker**  50:2
**makes**  38:9
  43:25
**making**  26:14
  35:22
**malisa**  2:3
**manage**  50:1
**manges**  1:15
  2:16
**manner**  8:21
**mark**  28:2
**marked**  4:3
**market**  2:5
**master**  2:2,10
  2:24 6:19 7:18
  8:13,18 10:1

14:14 24:25
25:22 26:6,14
27:8,14 31:3,9
32:3 33:24
34:1 38:19
40:7 42:19
43:6,23 44:12
44:14 46:17,19
**master's**  21:22
  22:13
**match**  26:2,3
  29:1 38:6,13
**matched**  26:5
**matter**  39:24
**matters**  42:23
**matthew**  2:13
**mdang**  2:7
**mean**  36:17,23
  36:23,25 39:6
  40:7 48:18
  49:20
**meaning**  11:13
  25:18 34:10
**means**  12:10
  13:23 51:21
**measured**  8:23
**mechanics**  24:9
  29:13,15,17
  31:25 44:7,8
**mediator**  40:25
  41:13,16,25
  42:5,11
**meet**  5:25
  34:24 36:22

51:12
**meeting**  5:21
  5:23 10:22
**mentioned**  38:5
**mere**  8:9
**merely**  25:8
**message**  8:25
  43:1
**michael**  2:23
  20:18 50:11,21
  51:25
**mid**  23:25
  24:11 26:20,25
  31:8 43:4
**middle**  14:2
  41:2
**midnight**  51:18
  51:20,22,24
**million**  12:25
  13:18,21
**mind**  10:10,16
  42:5 47:13
**minuses**  29:15
**minute**  23:3
**misc**  1:6
**misunderstand**
  39:7
**mix**  17:21
**moderately**
  28:14
**moment**  27:16
  32:9 34:2
**monday**  12:19
  19:19 21:12,18

HIGHLY CONFIDENTIAL

[monday - opinion]                                          Page 12

| | | | |
|---|---|---|---|
| 22:19 27:11,13 | **name** 16:10 | 29:22 31:20 | **objecting** 22:18 |
| 29:2 32:11 | **narrowed** 32:2 | 41:7,16,17 | **objection** 36:4 |
| 34:9,13,19,23 | **necessarily** | 45:3,6 46:20 | **obligation** 8:12 |
| 35:5,10,15,16 | 33:7,7 | 53:23 | **obligations** |
| 35:25 36:8,11 | **necessary** | **night** 6:6 9:20 | 8:17,20 |
| 36:15 37:22 | 26:17 31:6 | 11:24 22:5 | **obviously** 9:5 |
| 38:12,22 39:3 | **need** 16:22,23 | 33:7 51:18 | 9:21 15:1 19:6 |
| 39:10 42:17 | 17:4 24:16 | **non** 11:12 12:6 | 33:21 47:17 |
| 48:9,22,24 | 27:18,21 30:21 | 12:12,15 13:25 | **occasionally** |
| 49:1,9 50:15 | 33:6,14 37:10 | 15:22 16:3 | 50:3 |
| 50:17 | 37:13 38:24 | 17:21 19:25 | **occur** 27:2 |
| **monday's** | 39:22 41:14 | **normal** 50:24 | 31:19 |
| 33:15 | 48:15,15 50:23 | **north** 2:5 | **occurred** 40:21 |
| **morning** 5:11 | **needed** 50:3 | **notary** 53:22 | 40:21 49:23 |
| 6:4 9:18 19:19 | **needs** 16:19 | **note** 6:3,25 | **october** 26:25 |
| 32:15 33:9 | 37:14 | 20:17 26:21 | 30:24 31:8,11 |
| 34:6 37:23 | **negotiate** 39:22 | 38:2,4 50:17 | 31:16 |
| 50:12 | 41:5,15 42:16 | **noted** 6:10,11 | **ofac** 45:3 |
| **motion** 14:22 | 46:18 | **notice** 15:14 | **officer** 53:2 |
| 15:4,5 | **negotiated** 20:7 | 26:13 28:8,9 | **okay** 10:25 |
| **motions** 36:24 | **negotiation** | 28:10,12,14 | 13:8,8 17:1 |
| **move** 9:15 | 39:20 | 50:12,13 51:16 | 18:11 20:16 |
| 20:17 29:10 | **neighborhood** | **notwithstandi...** | 21:5,8 23:20 |
| 31:1 37:6 | 24:22 30:23 | 8:16 46:12 | 29:8 31:22 |
| 45:23 | **neither** 11:14 | **nuances** 47:24 | 40:19 43:9 |
| **moving** 10:19 | 33:20 39:11 | **number** 6:7 | 48:22,23 52:3 |
| 22:18 41:16 | 53:11 54:7 | 15:3 26:23 | 52:8 |
| **multiple** 18:10 | **neutral** 50:1 | **numerous** 22:9 | **once** 18:15 30:1 |
| 44:25 | **never** 8:14 | **ny** 1:17 2:18 | 51:8 |
| **mute** 13:5 | **nevertheless** | | **open** 47:10 |
| | 30:15 | **o** | **opening** 7:9 |
| **n** | **new** 1:17 2:18 | | 24:24 |
| **n** 2:1 3:1 5:1 | 13:13 14:20,22 | **o** 5:1 | **opinion** 8:9 |
| | 15:6 24:1,12 | **o'clock** 32:14 | |
| | | 51:21,22,24 | |

HIGHLY CONFIDENTIAL

[opportunity - position]                                    Page 13

**opportunity**
32:23
**option** 23:22
24:3,10,10,10
24:12 26:22,22
27:1,6,7,10
28:16 29:10,11
29:13,16 30:9
30:19 32:5
34:11,11 36:14
40:22,23 42:4
44:9 45:9,10
48:21
**options** 5:22
10:9 17:14
21:13 23:15,19
23:21 32:3,12
33:24,25 44:13
48:2
**order** 5:13 6:24
9:17 20:20
33:14,22 38:8
45:17,24 47:7
**orders** 9:22
22:24 38:18
46:24
**outcome** 49:15
49:17 51:12
53:16 54:12
**outlined** 20:22
**outside** 9:1
**overnight** 5:10
**overview** 31:25

**own** 19:15

**p**

**p** 1:14 2:1,1 3:1
3:1 5:1
**p.m.** 1:13 32:20
35:1,9 52:11
52:12
**page** 20:19
26:9
**paid** 19:20
20:13
**par** 20:14
**parallel** 28:7
39:8
**part** 5:7,20
37:5 38:15
43:24
**parte** 1:11 5:20
5:23 10:22
11:24 34:16
43:17 49:22
50:3,13,15,15
50:18
**particularly**
35:9,22
**parties** 5:17 6:1
7:21 8:7 10:24
11:18 13:24
16:18 21:16
22:3,5,10,18
24:19 25:9,13
25:17 26:15
27:24 28:7

29:6 30:20
32:2 34:6,15
36:7 39:22
41:14 47:3
49:8 50:16
53:12,14 54:8
54:11
**parts** 10:19
**party** 28:12
**party's** 49:24
**pass** 13:11
**past** 27:19 41:1
42:4
**paths** 34:10
**pause** 9:12
23:14
**pay** 18:5
**paying** 14:10
16:21 18:9
**pays** 18:14
46:11
**pdvsa** 11:15
**people** 40:17
**period** 24:24,25
26:3,16,17
28:3 30:3,4
47:16
**permitted**
22:23 24:25
**permitting**
23:11
**person** 40:24
**personally** 21:3

**perspective**
27:12 34:8
**phone** 10:23
49:12 50:16
51:11
**pick** 13:15
**piece** 48:22
49:2
**pincus** 2:2,10
2:24 39:14
40:11 41:12
**place** 38:18
**plaintiff** 1:5
**plan** 51:7
**planning** 45:24
**plans** 48:17
**play** 7:10 12:8
26:22 27:1
44:6
**played** 47:17
**plays** 28:16
**please** 39:7
**plus** 21:25 23:8
26:9
**pluses** 29:15
**point** 9:7 10:1
10:14 15:7
17:3,16 32:24
34:21,22 38:25
51:2
**pointing** 7:12
**position** 19:20
20:12 33:22,23
35:4 41:19

HIGHLY CONFIDENTIAL

**[position - question]**                                                    Page 14

44:16 48:12,13
48:23,23
**positions** 21:15
22:20 41:14
48:20
**possibility** 41:6
43:21
**possible** 8:13
33:18 40:5,16
44:21 49:20
**possibly** 40:12
50:1
**postpone** 9:4
**postponed** 5:12
**posture** 20:22
**potential** 37:12
**potentially** 8:2
23:6,12 35:16
40:15,22 41:8
46:8 48:13,15
**potter** 2:4
**potterandersо...**
2:7
**powder** 25:13
**practical** 21:10
29:5 39:23
**practically**
21:18 42:10
**pre** 24:12
**precise** 32:9
**predicate** 11:3
**predicates**
26:11

**prefer** 30:19
**preferable** 50:7
**prefers** 34:1
**preliminary**
45:5
**prepare** 10:22
28:8
**prepared** 32:8
35:4,12 43:10
54:3
**present** 2:22
3:2
**press** 43:15
**pressing** 5:8
**pressure** 41:17
**preview** 5:6,21
**previewed** 5:10
45:13
**price** 42:24
**primary** 23:15
31:17
**prior** 22:24
51:6 53:5
**probably** 7:14
20:14 24:21
31:12 42:2,4,6
51:14
**problem** 10:19
**procedural** 7:5
31:18
**procedures**
17:2
**proceed** 32:4
33:21 38:9

**proceeding**
52:13 54:4
**proceedings**
53:3,5,6,9 54:6
**proceeds** 14:6
**process** 5:17
7:21 8:7 9:2
21:17 23:1
24:19 30:19
34:6,15 36:7
47:10
**productive**
19:18 28:3
**professional**
41:25
**proffers** 23:12
**progress** 42:12
**proposal** 7:1,23
14:16 15:18
18:6,8,22 26:1
26:5 27:15
28:13,19,21,25
38:1,7,21
42:18 45:12
**proposals** 12:9
18:21 22:22
25:4
**propose** 24:20
34:25
**proposed** 11:14
32:15 42:4
44:8
**proposes** 11:10

**protections**
23:1
**provide** 8:10,23
17:11 19:13
40:9
**provided** 8:4
42:20
**providing**
26:13
**public** 6:18
7:14 8:21,24
15:14 50:7
53:22
**pull** 30:16
48:21 50:10
**purchase** 17:5
47:1
**pure** 20:13
**purely** 30:13
**purposes** 16:8
17:7 18:13
29:23
**pursuant** 22:23
22:24 25:24
**put** 7:10 9:7
11:6,19 21:21
31:10 36:12
37:1 50:6

**q**

**qualified** 53:7
**question** 17:15
28:15 37:17,19
38:16 44:2

HIGHLY CONFIDENTIAL

**[question - require]**                                    Page 15

49:13
**questions**  9:13
9:15 17:10
21:6 23:17
29:14 34:3
48:1
**quick**  27:20
**quickly**  28:5
30:17 31:2
38:20 49:3
50:10
**quo**  25:2

**r**

**r**  2:1,12 3:1 5:1
**radar**  27:4
31:10
**ray**  3:3
**reach**  7:25
33:18 50:23
**reaction**  34:3,4
41:11 49:7
**read**  20:23 21:4
**ready**  16:24
29:10 49:11
**real**  42:14,14
42:18
**realistic**  42:6
**reality**  21:10
**realize**  42:16
**really**  19:10,23
33:5,14 35:12
39:19,24 42:23

**reason**  12:14
21:19 30:10
49:21
**reasons**  6:4
19:10
**recall**  12:3 14:1
17:2 32:16
**received**  15:11
18:7,7 25:5
40:6
**receiving**  13:25
16:6
**reciting**  10:17
**recognize**  9:5
32:24
**recollection**
43:11
**recommend**
38:1
**recommendat...**
12:4 14:17
21:22 26:7,8
26:10,18 29:18
29:20 31:4,14
40:8,13 43:7
44:11 45:9,10
45:20 47:19
**recommended**
6:21 7:22 11:9
11:16 14:15
18:14 25:3,23
28:11 29:19
38:23 44:17
46:2,10 47:6

**recommending**
36:15,16 37:25
**record**  5:2
49:20,23 52:10
53:9 54:5
**recorded**  53:6
**recording**  53:8
54:4
**red**  6:5,8 7:2,11
7:17,18 8:5,10
8:11,16 11:24
12:5,25 13:18
20:25 21:23
22:4,15
**redacted**  6:23
**redactions**
15:15
**reduced**  53:7
**reference**  50:14
**referenced**  6:7
**referred**  33:4
**reflect**  30:5
**refreshed**
30:22
**refusing**  20:13
**regarding**  6:9
22:25 29:6
**regardless**
26:11
**reiterate**  50:20
**related**  11:18
11:18 53:11
54:7

**relative**  53:13
54:10
**relatively**  26:13
**relevant**  14:12
20:8
**relied**  12:16
**remain**  27:12
**remains**  28:9
28:11
**remind**  12:24
38:4
**reminder**  11:9
**replacement**
14:17
**reply**  15:16
**report**  5:14 6:1
6:9 9:19 32:20
34:25 48:12
**reported**  1:18
**reporter**  5:2
52:10
**reports**  43:15
**represent**
32:19
**representation**
35:23
**republic**  1:7
**request**  5:20
14:23 49:12
**requested**  6:4
**requesting**  5:11
12:19
**require**  36:2
38:8

HIGHLY CONFIDENTIAL

**[requires - short]**                                                                 Page 16

| | | | |
|---|---|---|---|
| **requires** 14:19 | **right** 17:15 | **saw** 5:12 19:19 | 48:6 |
| **reschedule** | 18:3 20:3,4,11 | 22:4 | **seen** 9:17 20:18 |
| 9:17 | 25:2 29:9 32:7 | **saying** 50:22 | **send** 21:1 25:7 |
| **rescheduled** | 34:1,16 38:6 | **says** 21:3,3 | 49:14 51:10 |
| 10:15 | 38:14,18 40:3 | 36:2 45:23 | **sending** 51:24 |
| **rescheduling** | 40:19 43:14 | 47:9 49:15,16 | **sense** 36:11,24 |
| 23:16 | 46:18 52:3 | **scenario** 24:13 | **sensed** 35:11 |
| **reserve** 8:1,7 | **rights** 44:20 | 44:6 46:7 47:5 | **sensitive** 19:13 |
| 18:17,24 19:8 | **risk** 47:11,13 | **scenarios** 29:15 | **sent** 20:24 |
| 19:9,14,15,18 | **robert** 2:2,10 | 42:7 44:21 | **september** |
| 20:11,20 36:2 | 2:24 | 45:7 47:24 | 14:25 15:1 |
| 36:10,12 37:1 | **role** 50:1 | **schedule** 7:6 | 23:25 24:7,11 |
| 37:25 40:17 | **roughly** 15:21 | 9:7 10:9 11:5 | 26:20,24 27:3 |
| 41:4,16 42:12 | 46:11 | 15:8 21:10 | 29:24 30:1 |
| 42:15,22 49:1 | **round** 12:1,2 | 27:1 31:7 | 31:21 43:4,12 |
| **respect** 5:24 | 12:10,12,14 | 37:11,14 49:3 | 43:20 47:21 |
| 15:12 17:16 | 13:17,18 25:8 | **scheduled** 33:5 | **series** 32:1 |
| 21:16,17 35:5 | **ruling** 24:12 | 37:20 | **seriously** 35:20 |
| 46:4 | 31:20 43:25 | **scheduling** | **set** 31:5 38:15 |
| **respond** 26:15 | **run** 33:10 | 17:13,14 | 44:9 |
| **responding** 6:8 | **runway** 42:20 | **sdny** 46:16 | **setting** 11:1 |
| **responses** 9:20 | **rusoro** 13:20 | **second** 9:24 | 26:19 37:11 |
| 15:3 | 20:3 | 11:21 30:24 | **settle** 24:20 |
| **responsive** | | 49:22 | **settlement** |
| 50:25 | **s** | **secured** 13:19 | 11:15 12:16,21 |
| **resulted** 5:20 | **s** 2:1 3:1 4:1 5:1 | **see** 10:15 21:17 | 14:9,13,18 |
| **revise** 30:4 | **sale** 5:16,25 | 23:19 24:9 | 15:23 16:7 |
| **revised** 30:16 | 7:21 8:6 17:13 | 40:15 51:9,11 | 21:25 45:13 |
| 30:25 44:10 | 21:11,18 24:19 | 51:17 52:1 | 46:13,15 |
| **revising** 30:7 | 25:14 26:20 | **seeing** 33:1 | **share** 43:11 |
| **revision** 31:13 | 27:2 29:21 | **seek** 14:20 | **shoot** 47:25 |
| **revisions** 24:15 | 34:6,15,19 | **seeking** 45:5,15 | **short** 6:24 |
| 24:16 | 36:3,6 37:22 | **seems** 37:7 | 26:13 28:10,12 |
| | 43:3 | 38:19 43:21 | 28:14 30:4 |

HIGHLY CONFIDENTIAL

**[short - substantial]**                                               Page 17

| | | | |
|---|---|---|---|
| 31:14 50:6 | **sooner**  43:20 | **speical**  2:2 | **sticking**  25:23 |
| **side**  44:24 | **sorry**  6:6 16:4 | **spent**  48:1 | 27:11 48:16 |
| **sidetracked** | 28:10 | **sponsoring** | **sticks**  44:14 |
| 7:15 | **sort**  8:12 20:12 | 19:15 | **stock**  17:5 |
| **sidetracking** | 28:6 30:10 | **stage**  11:1 | **stop**  48:20 |
| 23:3 | **sounds**  35:11 | **stalking**  11:13 | **street**  2:5 |
| **siemens**  8:1 | 35:23 50:19 | 12:1,25 13:18 | **strong**  3:3 |
| 18:15,17,24 | **sources**  30:13 | **standing**  49:11 | **struck**  41:3 |
| 19:5 20:5 | **spa**  16:25 22:24 | **standpoint** | 46:13 |
| **signature**  53:20 | 25:24 26:1 | 31:19 | **structure**  30:14 |
| 54:16 | 27:22 28:1 | **stark**  1:14 13:3 | **subject**  9:21 |
| **signed**  47:18 | 29:1 46:18,21 | **stark's**  2:23 | 45:2 48:5 |
| **signs**  47:2 | 46:22 47:18 | **start**  5:5 31:15 | **submission** |
| **similar**  11:12 | **space**  20:19 | 39:20 41:11 | 12:17 31:13 |
| 17:3 25:12 | **spas**  39:17 | **starting**  43:14 | **submit**  6:1 |
| **single**  20:19 | **speak**  37:4 | **state**  53:23 | 11:25 16:14 |
| **situation**  23:9 | **speaking**  6:15 | **states**  1:1 | 21:1 25:21 |
| 25:12 32:25 | 23:21 42:10 | **status**  5:9,11,14 | 28:21 31:4 |
| 39:24 41:22 | **special**  2:10,24 | 5:24 6:1,9,9 | 45:20 |
| **situations**  42:1 | 6:19 7:18 8:13 | 7:3,5,11 9:4,5 | **submitted**  6:14 |
| **skilled**  42:1 | 8:17 10:1 | 9:14,18,19,20 | 6:18 7:19 12:8 |
| **skills**  53:10 | 14:14 21:22 | 10:15 14:24 | 12:11 13:17 |
| 54:6 | 22:12 24:25 | 20:21 25:2 | 15:19 16:18 |
| **slipped**  10:16 | 25:22 26:6,14 | 32:20 34:25 | 24:15 25:25 |
| **slow**  49:19 50:5 | 27:8,13 31:3,9 | 37:20 47:21 | 28:2 47:18 |
| **small**  13:21 | 32:3 33:24 | **stay**  14:20 15:5 | **submitters** |
| **solicit**  24:25 | 34:1 38:19 | 45:2,15,23 | 25:4 |
| **solicitation** | 40:7 42:19 | **steps**  5:14,19 | **submitting** |
| 25:1 | 43:6,22 44:12 | 5:22,24 29:20 | 12:23 15:25 |
| **somebody**  8:19 | 44:14 46:17,19 | 33:1 34:2 | 26:12 28:7 |
| 13:3 41:24 | **specificity** | 48:20 | **subsequent** |
| **soon**  27:13 | 27:18 | **stick**  38:18 | 47:17 |
| 28:23 48:8 | **speed**  42:1,3,11 | 40:17 42:9 | **substantial** |
| 49:12 | | 45:9 | 20:5 47:11 |

HIGHLY CONFIDENTIAL

**[substantially - throw]**                                                   Page 18

| | | | |
|---|---|---|---|
| **substantially** 23:7 | **switch** 38:1 | **term** 14:11,17 | 30:7,15,19 |
| **succeed** 45:5 | **sworn** 53:5 | **terminate** 46:21 | 31:9,22,24 |
| **suffice** 48:1 | **t** | **termination** 44:20 46:18 | 32:14 34:10,11 |
| **suggest** 39:6 | **t** 4:1 | **terms** 7:20 16:13 39:19 44:7 | 34:21,24 35:2 |
| **suggested** 8:11 17:20 22:7 | **table** 11:2 17:9 17:18,18 27:11 42:15 47:14 | **testifying** 53:5 | 35:12,23,24 |
| **suggestions** 22:11 | **take** 18:1 20:9 33:9 37:19 39:1,25 41:24 42:2 52:8 | **testimony** 21:21 29:6 | 36:2,6,13 37:5 |
| **summarizing** 21:7 | **taken** 20:5 53:3 53:12 54:9 | **text** 50:25 | 38:8,24 41:15 |
| **summary** 14:23 17:10 | **talk** 9:11 11:3 15:8 50:17 | **thank** 5:4 21:6 27:5 48:4 52:1 52:4,6,7 | 41:17,22 42:5 42:9,25 44:9 |
| **superior** 6:21 7:1 10:2,5 14:16 25:25 26:5 27:15,23 28:13,19,20,25 37:8,15 38:1,7 38:21,21 40:6 43:8,23 45:12 | **talked** 6:12 8:14 19:7 34:5 | **thing** 16:17 18:6 23:4 26:21 35:19 38:2,4 43:10 | 45:7 46:7 47:9 47:14,23 48:5 49:7,9,18,25 50:21 51:3,6 51:16 |
| **support** 11:19 12:22 13:24 14:18 45:13 46:6 | **talking** 5:16,17 5:18 17:13 18:2 19:2,5 24:18 | **things** 7:16 9:16 33:21 35:8 39:21 49:19 | **thinking** 24:21 35:8 36:1 48:2 |
| **supposed** 7:4 16:15 | **technically** 22:23 23:5 | **think** 7:3,16 8:8,9,22 9:3,13 10:7 11:5,22 13:2,6 15:6 16:11,20 18:8 18:12,18 19:5 20:14 21:14 23:3,10,22,25 25:10,16 26:2 26:25 28:4,8 28:19 29:2,4,8 | **thinks** 27:14 34:18 46:22 |
| **sure** 10:18 22:4 22:6 27:4 35:7 37:18 40:21 41:13 49:11 50:9 51:8,25 | **tee** 31:8 | | **third** 10:8 15:9 44:10 |
| **surprised** 21:2 48:4 | **telephonic** 1:11 | | **thoreau** 1:18 53:2,21 |
| | **tell** 6:14 7:18 16:10 19:5,9 19:24 25:20 30:18 34:7 37:14 39:23 | | **thought** 34:12 44:3,6 49:5 |
| | **telling** 20:24 24:13 43:18 | | **thoughts** 39:4 43:10 48:5 |
| | | | **threatened** 7:3 |
| | | | **three** 5:7 13:20 13:24 17:9 25:9 26:2 29:1 38:6 43:3 |
| | | | **throw** 27:10 40:20 |

HIGHLY CONFIDENTIAL

**[till - unsolicited]**

Page 19

| | | | |
|---|---|---|---|
| **till**  33:8 | 37:23 | **transcriptionist** | 44:13 |
| **time**  1:13 5:8 | **tonight**  33:8 | 53:8 | **typewriting** |
| 6:12 10:21,21 | 35:13 | **travel**  48:16 | 53:7 |
| 12:15,17 24:19 | **top**  6:8 14:1 | **treatment** | **u** |
| 26:10 27:8 | **topic**  9:10,15 | 23:13 | **ultimately** |
| 28:4 30:4 35:3 | 10:8,25 11:3,4 | **tree**  7:2,11,18 | 30:18 |
| 37:9,23,24 | 11:23 17:12 | 8:5,10,12,16 | **under**  26:1 |
| 39:2,5,11 | **topics**  5:6 | 11:24 12:5,25 | 28:25 40:22 |
| 40:10,23 41:24 | **topped**  40:15 | 13:18 20:25 | 45:9,10 |
| 42:3 43:5,5,24 | **topping**  12:1 | 21:23 22:4,15 | **understand** |
| 48:2 | 12:10,12,14,18 | **tree's**  6:5,8 | 11:2 17:17 |
| **timeline**  47:14 | 12:24,24 13:17 | 7:17 | 22:19 31:20,23 |
| **timelines**  42:9 | 13:17 24:24,24 | **trial**  43:13,15 | 37:18 43:15 |
| **timing**  10:3 | 28:2 30:3 | **tried**  8:23 23:2 | **understanding** |
| 15:2 | 47:16 | 41:1 | 19:2 20:2 |
| **today**  9:11 12:8 | **tough**  25:17 | **true**  43:1 53:9 | 39:18 |
| 12:18 16:16 | **track**  38:22 | 54:5 | **understands** |
| 18:4 25:9 | **transaction** | **truly**  25:18 | 37:19 |
| 28:18,25 29:18 | 6:20,22 11:9 | **truncated** | **understood** |
| 29:18 37:23 | 11:10,16,20 | 26:16,17 31:5 | 39:13,14 |
| 38:10,11 45:8 | 12:16 14:15 | 31:6 | **undisclosed** |
| 45:24 48:13 | 19:22 22:2,14 | **try**  25:15 | 15:23 |
| 50:18 51:6 | 22:15,16 25:24 | **trying**  5:19 | **unfortunate** |
| **today's**  5:11 | 27:23 28:11 | 14:1 35:21 | 22:21 |
| 50:15 | 44:15,18 46:5 | 40:25 41:7 | **unfortunately** |
| **together**  30:16 | 46:10 47:7,8 | **tsa**  46:17 | 7:14 |
| 50:10 | 47:12 | **tuesday**  48:10 | **united**  1:1 |
| **told**  6:13,14 | **transactions** | **tune**  36:17 | **unprecedented** |
| 7:22 16:15,23 | 11:14 | **turn**  7:12 28:4 | 35:19 |
| 18:23 27:24 | **transcriber** | **two**  12:7 16:12 | **unsolicited** |
| **tomorrow**  5:15 | 54:1 | 17:4,6 18:16 | 6:13 7:23 12:9 |
| 6:2 9:19,20 | **transcript**  54:3 | 23:5,15,21 | 15:10 22:21 |
| 16:16 18:4 | 54:5 | 25:3 34:7,9 | 25:4 |
| 33:2,8,22 35:1 | | 40:1,6 43:3 | |

HIGHLY CONFIDENTIAL

**[unusual - york]**                                                                                    Page 20

| | | | |
|---|---|---|---|
| **unusual** 50:4 | **view** 5:21 7:3 | 43:1 47:16 | **win** 19:22 |
| **upcoming** | 7:11 17:14 | 49:25 51:4 | **winning** 25:16 |
| 21:11 | 21:9,13 23:15 | **we've** 5:17,18 | **witness** 22:13 |
| **update** 49:10 | 29:16 39:25 | 8:23 10:23 | 53:4 |
| **updated** 5:14 | 41:21 42:22 | 11:17 15:17,24 | **witnesses** 7:7 |
| 12:8 16:1,14 | 47:23 | 18:23 19:6,7 | 22:6 48:15 |
| 21:14 25:7,14 | **views** 32:20 | 22:9,10 24:18 | **work** 13:13 |
| 26:6 28:8 | 47:4 | 27:20,24 28:22 | 21:18 33:14 |
| 30:12 | **virtually** 16:1 | 44:6 46:10 | 39:5,8 |
| **ups** 28:2 | 16:13 17:7 | 48:1 | **working** 24:10 |
| **urgency** 50:23 | 36:9 51:4 | **wednesday** | 28:6,7 39:7 |
| **use** 45:21 49:4 | **virtue** 46:19 | 1:12 48:10 | **world** 35:14 |
| 50:22,24 | **w** | **week** 11:25 | **worse** 51:17 |
| **usually** 10:22 | **wait** 33:3 39:10 | 15:16,18 30:10 | **worth** 20:2 |
| **v** | 39:11 | 30:24 31:16 | 41:6 |
| **v** 1:6 | **waiting** 39:9 | 37:7 38:9 40:1 | **worthwhile** |
| **valid** 44:23,24 | 42:7 49:10 | 40:16 43:16 | 48:7 |
| 44:24 45:1 | **want** 8:11 9:11 | 44:11 48:10 | **write** 50:6 |
| 46:9 47:9 | 10:5,25 29:9 | 49:22 | **x** |
| **valuable** 17:19 | 33:9,13,19 | **weeks** 23:24 | **x** 4:1 |
| 17:24 | 35:14 37:5,9 | 30:24 40:7 | **y** |
| **value** 6:11,15 | 39:10,24 40:2 | 41:9 42:2,20 | **yeah** 13:6,10 |
| 7:19 15:21 | 40:16 43:3 | 43:3 | 17:23 20:16,23 |
| 16:3 20:1,6,7 | 48:6,25 49:6 | **weigh** 32:23 | 34:4 35:7 36:2 |
| 20:10 21:24 | **wanted** 10:8 | **weil** 1:15 2:16 | 36:5 39:14 |
| 23:7 | 17:11 27:3 | **weil.com** 2:19 | 40:11 41:12,21 |
| **venezuela** 1:8 | 31:23 | **whatnot** 44:20 | 48:3 49:6 |
| 36:8 | **wants** 37:4 | **whine** 13:12 | 51:23 |
| **version** 6:24 | **waterfall** 14:7 | **wide** 47:10 | **year** 22:25 |
| **versus** 32:9,10 | 18:5,15 | **widely** 32:19 | **ying** 3:4 |
| 32:21,21 48:21 | **way** 8:23 29:16 | **willing** 32:3 | **york** 1:17 2:18 |
| 48:21 | 32:6 36:13 | **wilmington** 2:6 | 13:13 14:20,22 |
| | 37:2 41:19 | 35:15,16 48:17 | 15:6 24:1,12 |