# EXHIBIT 4

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BOLIVARIAN REPUBLIC OF VENEZUELA, ) <br> ) <br> Defendant. ) <br> ) <br> _____ ) | Case No. 1:17-mc-00151-LPS |

**SIXTH SUPPLEMENTAL DECLARATION OF RANDALL J. WEISENBURGER**

I, Randall J. Weisenburger, pursuant to Section 1746 of Title 28 of the United States Code, declare as follows:

1. I submitted declarations in the above-captioned matter on August 25, 2021 (D.I. 354-1), September 10, 2021 (D.I. 355-1), December 17, 2021 (D.I. 423-1), April 11, 2022 (D.I. 457-1), and May 23, 2023 (D.I. 561-1), in support of the Venezuela Parties'[1] objections to the Special Master's (then) proposed procedures for the sale of shares of stock of PDVH and recommendation to initiate the sale procedures. I also submitted a declaration on July 7, 2025 (D.I. 1951-2, Exhibit 1) in support of the Venezuela Parties' objections to the Special Master's Final Recommendation that the Court approve the bid submitted by Dalinar Energy Corporation ("Dalinar") to acquire the PDVH shares for approximately $7.382 billion (the "Dalinar Bid"). D.I. 1837. My previous opinions remain unchanged.

2. I have been asked by CITGO and PDVH to consider the Special Master's Updated Final Recommendation that the Court allow him to terminate the Dalinar SPA and instead approve an Unsolicited Competing Proposal by Amber Merger Sub LLC ("Amber") to acquire the PDVH shares for approximately $5.892 billion (the "Amber Bid"). D.I. 2123. In connection with this assignment, I have reviewed additional materials produced in relation to the sale process and in this litigation. *See* Exhibit 1.

3. In his Updated Final Recommendation, the Special Master states that he decided to recommend the $5.892 billion Amber Bid over the $7.382 billion Dalinar Bid, and even over an improved bid submitted by Dalinar valued at approximately $7.9 billion because the Amber Bid includes a purported settlement with the 2020 Bondholders and thus, in the Special Master's view, has greater closing certainty than the Dalinar Bid. *See* D.I. 2123 ¶¶ 15–16.

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to them in D.I. 481 and as used in my first declaration (D.I. 354-1).

4.      I continue to believe that the Dalinar Bid is inadequate considering the valuations for the PDVH shares conducted by the Special Master's financial advisor and CITGO and PDVH's valuation expert. D.I. 1951-2, Exhibit 1 ¶¶ 3, 95. (And, given that the Amber Bid is lower than the Dalinar Bid, my opinion that the sale process designed and implemented by the Special Master has failed to maximize value and has resulted in a grossly inadequate Recommended Bid, *id.* ¶¶ 21–89, remains unchanged.) I also continue to believe that value could be better maximized by utilizing an alternative process, such as a leveraged recapitalization combined with a public offering, and that more value could be obtained for the PDVH shares if the Special Master and the Court were to wait to sell the shares until after a decision in the SDNY on the validity of the PDVSA 2020 Bonds, particularly now that, as I understand it, Judge Failla has stated her intent to issue a decision by the end of September 2025. All of that said, it is my opinion that the Special Master has not provided a commercially reasonable justification for recommending the Amber Bid over the Dalinar Bid.

5.      No rational seller, such as a sophisticated private equity firm or the management of a sophisticated public or private corporation, would accept a recommendation from its agent to select a bid that is $2 billion (or even $200 million) below the highest bid submitted by a credible bidder for an asset like the PDVH shares without first conducting a comprehensive analysis of the relative closing risk presented by the bids and finding an extremely compelling reason to sacrifice such a significant amount of value.[2] I have not seen—in the Special Master's Updated Final

---

[2] I understand that Amber also offered a sealed amount of additional consideration to Gold Reserve "to extinguish $500 million of Attached Judgments" held by junior Attached Judgment Creditors. D.I. 2123 ¶ 7; [SEALED] D.I. 2125-1, Exhibit G-1 at 1. Because the Special Master represents that the next creditor in the priority line, Gold Reserve, has refused Amber's settlement offer, I have not included the proposal as part of the consideration. Even if the additional $500 million were included in the Amber Bid, however, it would not alter my opinions, given that the Amber Bid still would be more than one billion dollars below the Dalinar Bid. *See* D.I. 2123 ¶ 15.

Recommendation, in any of his prior recommendations, in any of the declarations submitted by William O. Hiltz, or elsewhere—the Special Master or his Advisors provide such an analysis.

6. For a rational seller to accept the Amber Bid over the Dalinar Bid, the seller would have to conclude that the risk of the Dalinar transaction not closing is sufficiently high to justify giving up $2 billion in consideration that otherwise would go to stakeholders (here, Attached Judgment Creditors and the Republic and PDVSA in the form of debt reduction). To be clear, this closing risk is not the same as simply the risk that the 2020 Bondholders will succeed on their underlying claims. As I understand it, a decision by the SDNY Court that the PDVSA 2020 Bonds are valid would not necessarily prevent Dalinar from closing. Instead, all of the following also must occur: (1) the 2020 Bondholders would have to be able to block Dalinar's current financing arrangements (by obtaining an injunction or a non-stayed judgment *and* an OFAC license to exercise their rights under the CITGO Holding Pledge); (2) Dalinar would have to be unable to secure alternative financing; and (3) Dalinar would have to be unable to reach and finance an agreement with the 2020 Bondholders to release the CITGO Holding Pledge, notwithstanding that Dalinar has obtained commitments for an asset-based revolving credit facility ("ABL Facility") and support for $1.8 billion in preferred equity financing under a "highly confident letter" from J.P. Morgan, one of the world's leading financial institutions. D.I. 2123 ¶ 17.

7. A rigorous analysis of the likelihood of all of these events occurring would be required to properly evaluate these multiple factors and justify a recommendation to weigh certainty so much more highly over price. As far as I have seen, however, the Special Master and his Advisors have not provided any analysis of the likelihood of any of these events occurring to justify his recommendation, let alone a rigorous one. Instead, they have offered only the unsubstantiated conclusion that "the Special Master, in consultation with his Advisors, determined

that the certainty of closing associated with the Amber Sale Transaction was much higher than that presented by the Dalinar Sale Transaction since it could close regardless of the outcome of the PDVSA 2020 Bondholder litigation." D.I. 2124 ¶ 22 (Decl. of William O. Hiltz in Support of the Special Master's Updated Final Recommendation). Again, without such an analysis, no rational seller would accept the substantially lower Amber Bid over the Dalinar Bid.[3]

8.   The Special Master also states that he did not afford "any material weight" to Dalinar's ABL Facility and highly confident letter. D.I. 2123 ¶ 17. This decision, however, also is not supported by a commercially reasonable analysis. In my experience, the weight to be given to ABL Facilities and highly confident financing letters depends on multiple factors and must be analyzed on a case-by-case basis. A highly confident letter from J.P. Morgan, for example, generally would be viewed as quite credible given J.P. Morgan's strong track record and the reputational effects that would accompany a failure to secure the proposed financing. In my experience, J.P. Morgan would be unlikely to issue a highly confident letter without having conducted a thorough evaluation of the proposed transaction and the likelihood that it could place the proposed securities in the market. Accordingly, it is unreasonable to afford *no* material weight to Dalinar's proposed solution without first evaluating the credibility of the proposed financing and the factors that might affect the financing sources from delivering and estimating the probability that the financing ultimately could be secured in the amounts needed. The Special Master and his Advisors have not provided any such analysis.

---

[3] Amber's decision to agree to a settlement with the 2020 Bondholders of $2.125 billion, *see* D.I. 2123 ¶ 9, does not necessarily reflect Amber's evaluation of the likelihood that the bonds will be found to be valid. Amber presumably does not care whether the money it is paying goes to Attached Judgment Creditors or to the 2020 Bondholders. And without a settlement, Amber would have to bid at least $7.382 billion (the amount of the Dalinar bid) plus whatever overbid minimum the Special Master might require. As such, the settlement is costing it at most only $600 million more than it otherwise would have paid (i.e., $5.892 plus $2.125, or $8.017).

4

9. The Special Master opines in his Updated Final Recommendation that it is possible that "the actual availability of a specific amount of ABL proceeds at closing" could be lower based on CITGO's "liquidity and asset borrowing base" at the time of closing. D.I. 2123 ¶ 17. But he does not provide any analysis of the likelihood that Dalinar might be unable to draw the full amount under the ABL Facility's terms. And his only analysis with respect to the preferred equity financing is to state that it is not committed. *See id.* ¶ 17; *see also* D.I. 1837 at 27 n.15 (Original Final Recommendation) ("The Special Master did not afford the JP Morgan HCL material weight given the Bid Requirement for bidders to have committed financing. However, the Proposed Sale Transaction is not conditioned on Dalinar obtaining the Additional Potential Equity Financing.").

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on September 3, 2025, at Greenwich, Connecticut.

_____
Randall J. Weisenburger

# Exhibit 1

### Randall J. Weisenburger Sixth Supplemental Declaration Reliance Materials

| Reference | Document |
|---|---|
| D.I. 1951-2 | Eimer Decl. Exhibit 1 (Supporting Ex. 2 – Randall J. Weisenburger Fifth Supplemental Declaration Reliance Materials) |
| D.I. 2003 | Supplemental Declaration of William O. Hiltz in Support of the Special Master's Final Recommendation |
| D.I. 2003-1 – D.I. 2003-7 | Exhibits A–O in Support of Supplemental Declaration of William O. Hiltz [Sealed] |
| D.I. 2004 | Corrected Second Supplemental Declaration of William O. Hiltz in Support of the Special Master's Final Recommendation |
| D.I. 2004-1 – D.I. 2004-8 | Exhibits A–O in Support of Corrected Second Supplemental Declaration of William O. Hiltz [Sealed] |
| D.I. 2123 | Special Master's Updated Final Recommendation |
| D.I. 2123-1 | Special Master's Annex A and Exhibits A–G |
| D.I. 2124 | Declaration of William O. Hiltz in Support of the Special Master's Updated Final Recommendation |
| D.I. 2125 | Special Master's Updated Final Recommendation [Sealed] |
| D.I. 2125-1 | Special Master's Annex A and Exhibits A–G [Sealed] |
| D.I. 2127 | Notice of Filing of Certain Bid Materials Received by the Special Master [Sealed] |
| D.I. 2127 | Special Master's Exhibits A–B [Sealed] |
| D.I. 2135 | Gold Reserve Notice of Competing Objection and Disclosure of Bid Materials |
| D.I. 2135-1 – D.I. 2135-5 | Gold Reserve Exhibits A–E |