# PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1313 North Market Street, Suite 806
Wilmington, DE 19801
+1 302 655 4410

**Daniel Mason**
**Direct Dial:** +1 302 655 4425
**Email:** dmason@paulweiss.com

New York
Brussels
Hong Kong
London
Los Angeles
San Francisco
Tokyo
Toronto
Washington, D.C.

September 9, 2025

The Honorable Leonard P. Stark
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801

Re:   *Crystallex International Corp.* v. *Bolivarian Republic of Venezuela*, 17-mc-151

Dear Judge Stark:

We write on behalf of the ad hoc group of holders of a majority of PDVSA 2020 Bonds (the "2020 Bondholders") in response to yesterday's letters from Gold Reserve and the Venezuela Parties (collectively, "Movants") requesting that the Court compel the 2020 Bondholders to appear for a 30(b)(6) deposition.  *See* D.I. 2194, 2196.  Such a deposition is unnecessary, duplicative, overly burdensome, and inconsistent with the Court's orders strictly limiting discovery given the expedited nature of this litigation.

As Gold Reserve itself previously emphasized when refusing to provide *any* discovery to the 2020 Bondholders—including discovery on many of the same topics it is now pursuing—there is an "extremely narrow scope of discovery contemplated by the Court's prior orders."  *See* Ex. A at 3.  For example, at a December 13, 2024 hearing, the Court discussed the limited need for discovery and the apparent agreement of the parties—including Movants—that "there's not that much discovery that needs to be taken."  D.I. 1507 at 39:6-11.  The Court then issued an order allowing only "limited discovery that is relevant to whether the Court should approve the bid the Special Master recommends to the Court as his Final Recommendation and is proportional to the needs of the case."  D.I. 1517 ¶ 29.  The Court has since reiterated "that discovery shall be minimal" and "limited," not "expanded or extensive."  D.I. 1793; *see also* D.I. 2110 at 2, 5.  These Court-imposed restrictions were—and continue to be—essential given the highly expedited nature of this proceeding.

Against that backdrop, the Movants have purported to serve coordinated 30(b)(6) deposition notices requiring the 2020 Bondholders to prepare a witness on a dozen different topics, none of which is remotely necessary for the sale hearing, let alone "limited" or "minimal."  Each Movant's first topic—which the Movants highlighted during a meet-and-confer as being of central importance—involves the Transaction Support Agreement (TSA) between the 2020 Bondholders and Amber Energy.  Many of the other topics also seek communications about the TSA.  *See, e.g.*, Topic Nos. 8-10.  But the TSA is a comprehensive agreement that has been publicly disclosed,

D.I. 2123-1, Ex. F, and its terms speak for themselves. Indeed, when the 2020 Bondholders similarly sought discovery concerning Gold Reserve's bid documents and sale order, Gold Reserve responded that "[a]s the Court has previously ruled, parties are not entitled to the 'evolution of' a bid, 'particularly as the earlier [documents] were superseded by [the] final bid …, which is public.' (D.I. 1625)." *See, e.g.*, Ex. A at 7. Nor is there any relevance to the testimony of a fact witness as to the meaning of the TSA's terms; indeed, any such views are likely to be overwhelmingly privileged.

Both Movants also seek information regarding the "[e]valuation of the PDVSA 2020 Bondholders' claims in the pending S.D.N.Y. litigation." *See* Topic No. 6. That information, too, is either reflected in the voluminous record of the New York litigation, which is publicly available (with very few exceptions), or obviously privileged. And again, this serves no purpose. The sales hearing is not a mini-trial on the New York litigation. Nor is there any probative value to fact testimony on the legal issues being litigated before Judge Failla. Judge Failla is the only one deciding the claims in that case, and she reiterated just this morning that she intends to issue a decision by the end of September. *PDVSA* v. *MUFG Union Bank, N.A.*, No. 19-cv-10023-KPF (S.D.N.Y.), D.I. 396.

The Movants further seek information about "[t]he economic or commercial relationship, if any, between the PDVSA 2020 Bondholders and the Special Master and/or his lead advisors (the law firm of Weil, Gotshal & Manges and Evercore)." Topic No. 7. This is a baseless fishing expedition apparently designed to try to identify a conflict that infected the Special Master's work—despite the fact that Movants provide no indication that any such conflict exists based on the extensive discovery they already have. And this request also exemplifies the burdensome nature of the Movants' demands. Preparing a witness to testify about every relationship between a major law firm and investment bank and even one global financial institution would be extremely difficult. There are nearly a dozen large financial institutions comprising the 2020 Bondholders. Other purported deposition topics (*e.g.*, Topic No. 7) present similar problems.

For these and other reasons, the discovery sought by the Movants is in no way necessary, and preparing a witness to testify on behalf of many of the world's largest financial institutions about these topics would be exceptionally burdensome (if even possible). Movants' requests should also be independently denied for a multitude of other reasons:

*First*, the requested discovery is duplicative. To the extent that either Movant has questions about the TSA, they can ask Amber's representative, who is being deposed today. Both Movants have also previously deposed Mr. Xiao Song, a managing director and portfolio manager at Contrarian, one of the largest 2020 Bondholders. Indeed, both Movants asked questions about the 2020 Bondholders at that deposition. *See, e.g.*, Tr. of Jul. 29, 2025 Dep. of Xiao Song at 48:24-50:14, 212:6-213:5, 222:12-223:22. And to the extent the Special Master's relationships with other parties were a legitimate discovery topic—they are not—Movants could have asked the Special Master's representatives during their depositions. Likewise, to the extent the Movants seek to "assess the Special Master's recommendation," D.I. 2196 at 1, including the risks posed to competing bids by the 2020 Bonds, such discovery should be sought from the Special Master.

*Second*, consistent with the strictly limited nature of discovery, this Court's orders only contemplate discovery being provided by the "party … whose bid is selected as the final recommendation" and a "Competing Objector" who "object[s] to the updated Final Recommendation on the basis that its bid should have been selected as the final recommended bid by the Special Master." D.I. 1809 at 2 & n.2. The 2020 Bondholders are neither. Movants attempt to characterize the 2020 Bondholders as the "party … whose bid is selected" because they had an agreement with that party (Amber Energy), D.I. 2196 at 3, but that does not render the 2020 Bondholders as the selected bidder any more than the execution of financing agreements renders all of Gold Reserve's proposed financing parties bidders.

*Third*, and similarly, the Court has only permitted depositions of "[a]ny declarant or hearing witness." D.I. 1517 at 8. Indeed, the Court recently reinforced this restriction by ordering that "[a]ny party or interested entity that wishes to call a witness at the Sale Hearing who has not previously been deposed *shall make that witness available for a deposition prior to the close of discovery*." D.I. 2110 ¶ 4 (emphasis added). The 2020 Bondholders do not intend to call a corporate representative (or, indeed, any witness) at the sale hearing, and therefore need not make any such witness available for a deposition. The best response the Venezuela Parties can muster is that counsel for the 2020 Bondholders may speak at the Sale Hearing, but that does not amount to calling a witness. D.I. 2196 at 3. Gold Reserve, for its part, circularly argues that no party has identified a 2020 Bondholder as a witness because "the 2020 Bondholders have refused to identify any witness that could be called." D.I. 2194 at 2.

*Finally*, the deposition notices overlap with sweeping document requests that Gold Reserve belatedly served on September 3, **two days** before the court-imposed deadline for substantial completion of document production (despite the Movants knowing since August 12 that the 2020 Bondholders signed a TSA with Amber). The 2020 Bondholders have met-and-conferred to try to identify whether the requests could be satisfied with information that is much more limited and realistic in the time available. At a meet-and-confer just hours before Movants' letters were filed, after Gold Reserve emphasized the supposed need for the 2020 Bondholders' identities—which is also emphasized heavily in Gold Reserve's letter to the Court—counsel for the 2020 Bondholders responded that they would consider providing that information. Notwithstanding that Gold Reserve unilaterally wrote to the Court demanding a deposition before the 2020 Bondholders could even respond, they will today provide Movants with a list of the institutions that are part of the 2020 Bondholder group. It would be far more efficient (especially given the numerous institutions that are part of the group) for any other discrete information that Gold Reserve legitimately requires—although we believe there is none—to be provided in a similar format, not a deposition.

Accordingly, the 2020 Bondholders respectfully request that the Court deny Movants' requests to compel them to produce a witness for a 30(b)(6) deposition.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP 4

                                                                 Respectfully submitted,

                                                                 */s/ Daniel A. Mason*
                                                                 Daniel A. Mason (#5206)

cc:  All Counsel of Record