womblebonddickinson.com



Womble Bond Dickinson (US) LLP

1313 North Market Street
Suite 1200
Wilmington, DE 19801

t: 302.252.4320
f: 302.252.4330

September 10, 2025

The Honorable Leonard P. Stark
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801

Kevin J. Mangan
Partner
Direct Dial: 302-252-4361
Direct Fax: 302-661-7729
E-mail: Kevin.Mangan@wbd-us.com

**Re:** *Crystallex International Corp. v. Bolivarian Republic of Venezuela,* **Case No. 17-mc-151**

Dear Judge Stark,

Gold Reserve responds to the Letter Motion to Compel filed by Amber Energy, Inc., the wholly owned subsidiary of Elliott Investment Management ("Elliott/Amber") (D.I. 2208). Elliott/Amber seek to compel production in response to the following four requests:

> 6. *All unredacted Documents constituting Your Final Bid as well as all agreements, arrangements, or understandings related to Your Final Bid. For the avoidance of doubt, this includes, without limitation, the Highly Confident Letter and all such final unredacted agreements, arrangements, or understandings with any Attached Judgment Creditors.*
>
> 7. *All unredacted Documents constituting Your Attempted Match Bid as well as all agreements, arrangements, or understandings related to Your Final Bid, including, without limitation, the Highly Confident Letter. For the avoidance of doubt, this includes, without limitation, the Highly Confident Letter and all such final unredacted agreements, arrangements, or understandings with any Attached Judgment Creditors.*
>
> 8. *All Documents and Communications with Attached Judgment Creditors concerning Your Final Bid or Your Attempted Match Bid. For the avoidance of doubt, this includes any agreements, arrangements, understandings, or offers made to Koch Minerals SÀRL, Koch Nitrogen International SÀRL, Rusoro Mining Ltd., Siemens Energy, Inc., Valores Mundiales, S.L., Consorcio Andino, S.L., Contrarian Capital Management, L.L.C., and/or any other more junior Attached Judgment Creditors.*
>
> 9. *All Documents and Communications regarding the PDVSA 2020 Bondholders with (i) JPMorgan Chase, (ii) Toronto Dominion, and/or (iii) Sumitomo Bank.*

There are several reasons, all of which Gold Reserve articulated in its Responses and Objections and during the meet and confers (Exhibit B to Elliott/Amber's Letter Motion), why Elliott/Amber's

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

requests violate the Court's orders. At its core, the problem with the discovery requests Elliott/Amber seek to compel is that they are about the Dalinar bid that was recommended by the Special Master on July 2 (referred to by Elliott/Amber as the "Final Bid"). The Final Bid was the subject of extensive discovery from July 2 to circa August 8[1] and has been the subject of four rounds of briefs involving more than 10 different parties in the Topping Period alone – in addition to being briefed in substance during the Stalking Horse Phase. All of the reasons that Elliott/Amber list to justify its requests have been extensively tread: the Final Bid is (1) likely to close, (2) in strict conformance with the governing procedures and (3) the better bid that satisfies that most attached judgments. Elliott/Amber have provided no justification for needing such broad ranging discovery about topics already subject to discovery and briefing.

First, the Court's August 22, 2025, Scheduling Order "strictly limit[s]" any further discovery "to issues directly relating to a change to the Special Master's Final Recommendation or his decision not to change his Final Recommendation[.]" (D.I. 2110 at 1). Elliott/Amber have blatantly ignored this limitation and either explicitly requested documents related to Gold Reserve's "Final Bid" or, in the case of Request No. 9, not included any time restriction thereby also encompassing the Stalking Horse Phase. Elliott/Amber makes no attempt to limit these requests as they are wholly unrelated to changes to the Special Master's Final Recommendation. Given that the parties had 11 calendar days to engage in discovery between the Updated Final Recommendation on Friday, August 29 and the close of discovery on Tuesday, September 9, there simply was not enough time to re-tread ground that has already been extensively covered in prior discovery and briefing. Elliott/Amber is therefore, at a minimum, limited to requesting documents related to the changes that were made to the Final Bid when Gold Reserve submitted what Elliott/Amber refer to as the "Attempted Match Bid" on August 27, 2025.

Second, even once Elliott/Amber's requests are limited to the changes between the "Final Bid" and the "Attempted Match Bid" as well as the corresponding period,[2] Elliott/Amber's requests are improper. Request Nos. 8 and 9 asks for "All Documents and Communications", which are defined respectively to be "construed to the fullest extent under applicable law . . . without limitation, the original and all copies and translations of any information in any written, recorded, electronic, or graphic form" and "any transmittal of information in any form and of any kind including any electronic, oral, or written transmission." Such requests are overbroad in normal discovery when parties have months to review and produce documents. Here, Elliott/Amber served its requests on September 3, two days before the September 5 "substantial completion" date and 6 days before the end of discovery. The cost and expense associated with discovery must be reasonable and proportionate. There is simply not enough time or enough resources to conduct the broad discovery that Elliott/Amber requests especially when Gold Reserve is conducting depositions, engaging in extensive briefing and preparing for the Sale Hearing at the same time.

Third, the definitions and instructions are overly broad, unduly burdensome and seek irrelevant information. For example, "Attempted Match Bid" is defined to include "(ii) any additional

---

[1] Indeed, discovery requests like these were made by various parties at that time: *e.g.*, 2020 Bondholders: "All Documents and Communications Concerning the 2020 Bonds, the 2020 Bondholders. . ."; Red Tree: "Complete, unredacted copies of all Your bid materials, including Your Final Bid materials."

[2] In the broadest interpretation, this period runs from August 12, 2025 (the date of Red Tree's letter to the Court) to August 27, 2025 (the date Gold Reserve submitted its "Attempted Match Bid").

2

agreements or documents, whether or not submitted to the Special Master, necessary to complete the closing of the transaction proposed in the "Attempted Match Bid." In another example, "You," "Yours," "Dalinar" and "Gold Reserve" is defined as including all of their "employees, departments, commissions, representatives, agents, attorneys, assigns, predecessors, affiliates, third-party experts, service providers, and any other entities, instrumentalities, or Persons acting or purporting to act on its behalf." The instructions, like the definitions, state that they should be construed "in the broadest manner consistent with the Federal Rules of Civil Procedure, the Local Rules, and this Court's Orders." Further, Instruction No. 5 is unduly burdensome given the limited scope of discovery and the compressed schedule.

Finally, Elliott/Amber's description in its letter motion of the documents it is requesting is in no way related to the actual requests that it has propounded. Elliott/Amber refer to "the withheld agreements" (D.I. 2208 at 2) but its document requests are so broad that it is not clear what agreements it is referring to. The argument that Gold Reserve has not produced its bids materials and somehow violated Section 324 through a lack of "symmetry" is wrong. Gold Reserve's bid materials have been filed on the public docket four times: during the Stalking Horse phase on March 21 (D.I. 1603), when it was recommended on July 2 (D.I. 1837-1), when the Special Master filed the Updated Recommended Bid on August 29 (D.I. 2126), and when Gold Reserve disclosed additional bid materials on September 2 (D.I. 2135). No motions to compel were filed during the discovery period and there were no arguments in the "Final Bid" objections briefing regarding any alleged failure by Gold Reserve to disclose its bid materials. Elliott/Amber's argument is meritless.[3] To the extent Elliott/Amber are referring to the agreements that were part of the Final Bid (*i.e.*, the Consortium Agreement and agreements relating to the judgments of Koch, Rusoro and/or Siemens),[4] those agreements were subject to the prior round of discovery and briefing. The time for this discovery has passed.[5]

In this respect, Gold Reserve notes that Elliott/Amber could have participated in the prior discovery period. It has been involved in this litigation since at least early 2024. Indeed, it submitted a bid during the Topping Period. If it wished to take discovery about Gold Reserve's Final Bid it had an opportunity to do so in July and August. To accommodate Elliott/Amber, Gold Reserve did agree and has produced documents that it produced in discovery when it was the Final Recommended Bidder.

The only potential agreement that falls within the Court's order that discovery be "strictly limited" "to issues directly relating to a change to the Special Master's Final Recommendation," is the agreement relating to the Valores Judgment. However, Elliott/Amber cannot provide a single reason in its four-page letter motion why this specific agreement might be relevant. As stated in Gold Reserve's objections to the Updated Recommended Bid (D.I. 2183 at 8), the Bidding Procedures only require a credit bidder provide proof that an Attached Judgment will be satisfied at closing. (D.I. 480-1; D.I.

---

[3] Elliott/Amber incorrectly argues that Gold Reserve has not produced its "Highly Confident" letter. In fact, that letter was part of its publicly disclosed bid documents on July 2. (D.I. 1837-1 at 547-552).

[4] Any argument that the TSA is equivalent to the agreements by judgment creditors to accept non-cash consideration fails on its face.

[5] Elliott/Amber makes a number of unsubstantiated and speculative statements that ultimately are irrelevant to the Court's consideration of these issues, *e.g.*, its insinuation that somehow the Consortium Agreement including a confidentiality clause converts it into a "gag order." Confidentiality provisions are a hallmark of the Sale Process; confirming this, Elliott/Amber just designated the entire transcript of its deposition of its designated witness at the Sale Hearing Highly Confidential. Regardless, as noted above, the Consortium Agreement is not the proper subject of the current discovery period, given that it is not relevant to the Special Master's decision to change his recommendation.

481) The Bidder Equity Commitment Letter that is part of the "Attempted Match Bid" is this proof, and it confirms that the full amount of the Valores Judgment ($720 million) can be included in the purchase price of the Dalinar Energy bid. This is the modus operandi by which Dalinar Energy included the Attached Judgments of Rusoro, Koch and Siemens Energy Inc. in the Successful Bid that the Special Master previously approved and recommended to the Court. Further, as Gold Reserve noted during its meet-and-confer, the irrelevant agreement is subject to a confidentiality agreement that, in light of the lack of relevance, makes production unduly burdensome.

In short, Gold Reserve has already agreed (a) to produce the documents it produced during discovery previously which related to its "Final Bid" and (b) to search for only to "conduct[] a limited search" for "communications with Attached Judgment Creditors regarding its 'Attempted Match Bid' that post-date August 8, 2025, and [to] produce responsive documents, if any are located and to the extent that such materials relate 'to a change to the Special Master's Final Recommendation[.]'" It has therefore complied with its obligation to produce relevant requested documents that fall within the Court-ordered limitation. Elliott/Amber's request to compel Gold Reserve to produce "the remaining documents responsive to Requests 6–9 no later than 5 p.m. on September 10, 2025" should be denied.

                                              Respectfully submitted,

                                              **Womble Bond Dickinson (US) LLP**

                                              */s/ Kevin J. Mangan*
                                              Kevin J. Mangan

                                              Matthew H. Kirtland (admitted *pro hac vice*)
                                              **Norton Rose Fulbright US LLP**
                                              799 9th Street NW, Suite 1000
                                              Washington, DC 20001
                                              Telephone: 202-662-0200
                                              matthew.kirtland@nortonrosefulbright.com

cc: Counsel of Record (via ECF