womblebonddickinson.com



September 13, 2025

The Honorable Leonard P. Stark
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801

Womble Bond Dickinson (US) LLP

1313 North Market Street
Suite 1200
Wilmington, DE 19801

t:  302.252.4320
f:  302.252.4330

**Re:** *Crystallex International Corp. v. Bolivarian Republic of Venezuela,* **Case No. 17-mc-151**

Kevin J. Mangan
Partner
Direct Dial: 302-252-4361
Direct Fax: 302-661-7729
E-mail: Kevin.Mangan@wbd-us.com

Dear Judge Stark,

On behalf of our client, Gold Reserve, we write regarding Elliott's letter asking that the Court order the agreements attached to that letter be lowered from Highly Confidential, as Gold Reserve has designated them, to Confidential. (D.I. 2255). Respectfully, the Court should reject this baseless request.

The agreements that Gold Reserve has produced are, in fact, highly confidential. These agreements disclose the confidential terms that Gold Reserve negotiated with the four other Additional Judgment Creditors whose judgments are part of Gold Reserve's credit bid.  These terms are "of such a nature that a risk of competitive injury would be created if" they "were disclosed to persons other than" outside counsel, because they constitute "sensitive financial or business information." (D.I. 1555-1). And, in fact, the entirety of the agreements meets that definition. Gold Reserve explained at the September 10, 2025 Status Conference how disclosure of these agreements would cause it competitive harm, particularly in the Sale Process. *See* Sept. 10 Hr'g Tr., 60:12-24.

To be sure, if disclosed to other bidders, these agreements would give those bidders a competitive advantage over Gold Reserve in future rounds of bidding (which is, unfortunately, a distinct possibility depending on the outcome of the SDNY litigation). Allowing Gold Reserve's confidential inter-party negotiated terms to become common knowledge to the parties most deeply involved in this Sale Process would only permit actual and potential bidders—that is, Gold Reserve's competitors—to attack the Dalinar Energy consortium. This would aid efforts to suppress the value of the transaction and obtain the Shares at a discount. This is particularly true for a party like Elliott, who as laid out in Gold Reserve's Reply in support of its Motion to Strike, has intentionally avoided competitive tension that would result in a higher-priced bid. *See, e.g.*, (D.I. 2239 at 2). Maintaining the highly confidential designation of Gold Reserve's confidential, competitive information would further the Court's goal of facilitating a value-maximizing transaction.

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

Elliott's request should also be rejected because they have stated no reason why Gold Reserve's sensitive business information should be stripped of its designation. Elliott proceeds down a slippery slope—first, at the September 10, 2025 Status Conference, their argument was that the Court has a "right to see" these documents to adjudicate this dispute and that the agreements (*id.* at 40:21-22) and that the agreements were "shrouded in darkness." (D.I. 2208 at 4). Now even that is apparently insufficient, and "all participants at the hearing" must have "the same access" to Gold Reserve's sensitive and competitive business information. But they have provided no valid basis for this request. The 'shroud' has been lifted and the agreements have been disclosed, so that Elliott can make whatever arguments it wants concerning these documents, but Elliott cannot identify what information in Gold Reserve's sensitive business agreements is so important that they must be available to each and every party in the Sale Process, much less how this would be of any import to the arguments and issues before the Court.

Contrary to Section 11 of the Confidentiality Agreement (D.I. 1555-1), Elliott has not approached Gold Reserve to identify with what pieces of the highly confidential material it seeks to use, nor has it proposed ways to redact the materials. The Court also expressed that, if a party wants to use another party's confidential information, "it's incumbent upon" the introducing party to notify the party whose information they wish to disclose that they will do so, and then bring it to the Court's attention "ideally no later than the beginning of the examination, so if need be, we can tailor specifically how we're going to handle it at that time." Sept. 10 Hr'g Tr. 20:7-18. Elliott has taken no such steps, including in the letter it filed yesterday.

Further, there is nothing stopping Elliott from using the agreements—or any materials designated as Highly Confidential or Confidential under the confidentiality agreement—to prepare for or at the Sale Hearing. Complying with the confidentiality agreement is not a burden, as Elliott claims. Elliot argues that this designation means they cannot "effectively use them in Court." (D.I. 2255 at 1). But the Court has already laid out, in detail, how to use such documents:

> *I would think for most, if not all, purposes, if someone wants to direct mine and the witness's attention to the confidential information, you could do that by saying I ask you to turn to page whatever and I direct your attention to the third paragraph. Read it to yourself, don't say it in open court because that information is under seal. Are you able to give a response to my question without disclosing those specifics? And if you can't, then we will have to figure out a way to segregate a limited portion of the testimony or the examination where I will have to ask the court security officers to close the courtroom and it may be necessary to ask people to leave the courtroom.*

Sept. 10 Hr'g Tr. at 21:4-23. Further, this process would apply to both Confidential *and* Highly Confidential material. Lowering the confidentiality designation to Confidential, as Elliott now requests, would not change this process, nor permit the agreements to be introduced publicly in open court. As such, Elliott's motion should be seen for what it is—an attempt to improperly disclose Gold Reserve's highly confidential information for the purpose of causing competitive harm.

Confirming that there is no valid basis for this request, Elliott has labelled certain of its still redacted bid materials as "Highly Confidential." Gold Reserve accordingly respectfully requests that the Court deny Elliott's request.

        Respectfully submitted,

        **Womble Bond Dickinson (US) LLP**

        */s/ Kevin J. Mangan*
        Kevin J. Mangan

        Matthew H. Kirtland (admitted *pro hac vice*)
        **Norton Rose Fulbright US LLP**
        799 9th Street NW, Suite 1000
        Washington, DC 20001
        Telephone: 202-662-0200
        matthew.kirtland@nortonrosefulbright.com

cc: Counsel of Record (via ECF)