**Exhibit A**
**Unredacted Amber Bid Letter**

*Confidential*

August 22, 2025

**VIA EMAIL**

Evercore
909 Fannin, Suite 1800
Houston, Texas 77010
Attention: Ray Strong; William Hiltz
Email: ray.strong@evercore.com; hiltz@evercore.com

with a copy to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attention: Matt Barr; Eoghan P. Keenan; Chase Bentley
Email: matt.barr@weil.com; eoghan.keenan@weil.com; chase.bentley@weil.com

Dear Messrs. Strong and Hiltz:

On behalf of Elliott Investment Management L.P. (collectively with its affiliates, "***Elliott***," "***we***" or "***us***"), we submit this proposal (this "***Proposal***") for the acquisition of 100% of the outstanding shares (the "***Shares***") of PDV Holding, Inc. ("***PDVH***" and together with its subsidiaries, the "***Company***"), upon the terms and subject to the conditions set forth herein (the "***Proposed Transaction***").[1] Except as supplemented and/or modified by this Proposal, the terms of our prior proposal, submitted on August 8, 2025 (the "***August 8 Proposal***") are incorporated in their entirety herein by reference.

Our Proposal continues to address the Court's priorities by both maximizing value for the Attached Judgment Creditors and Venezuela through negotiated settlements with Rusoro Mining and Koch that would extinguish $5,859,223,200 of Attached Judgments (through Koch) assuming a 12/31/2025 Closing as illustrated on Annex 1 and providing certainty of closing by securing a settlement with holders (the "***2020 Noteholders***") of more than 75% of the outstanding PDVSA 2020 bonds (the "***2020 Notes***"), thereby removing the uncertainty of those claims and ensuring a clear path to completion.

In addition, we are prepared to offer incremental value in the form of $75,000,000 in cash which may be used (x) to extinguish at least $500,000,000 of the Attached Judgment of Gold Reserve Ltd. or, if Gold Reserve Ltd. declines such consideration, then (y) to extinguish some or all of the Attached Judgments of other Claimholders as determined by the Special Master in consultation with the Buyer or as otherwise determined by the Court.

When the $105,000,000 of break fees payable to Attached Judgement Creditors (Red Tree and Gold Reserve Ltd.) is included, our Proposal provides total value of $9,424,200,000.

---

[1] Unless otherwise defined herein, all capitalized terms used shall have the meanings ascribed to them in the *Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* [D.I. 481] (as amended, restated, supplemented or otherwise modified from time to time, the "***Sale Procedures Order***") filed in the matter of *Crystallex International Corp. v. Bolivarian Republic of Venezuela*, D. Del. C.A. No. 1:17-mc-00151-LPS.

4932-3878-9985 v4

August 22, 2025
Page 2

**Proposal**

The principal terms of the Proposal are set forth below:

    A.    <u>Proposed Transaction Structure</u>. We affirm our proposed transaction structure from the August 8 Proposal, pursuant to which Amber MSub LLC, a wholly owned subsidiary of Amber Energy Inc., would acquire 100% of the equity interests of PDVH under a mutually acceptable definitive purchase agreement.

    B.    <u>Stock Purchase Agreement</u>.

Attached to this Proposal as <u>Exhibit A-1</u> is a Word version of a draft Stock Purchase Agreement (the "**Proposed SPA**") providing for the acquisition of all of the Shares, with modifications to the draft submitted on June 18, 2025 (the "**June 18 SPA**"). Attached as <u>Exhibit A-2</u> is a PDF redline marked to show our proposed changes to the June 18 SPA, and attached as <u>Exhibit A-3</u> is a PDF redline marked to show our proposed changes against the stock purchase agreement entered into between the Special Master and Dalinar Energy Corporation, dated June 25, 2025 (the "**Dalinar SPA**").

Attached to this Proposal as <u>Exhibit B-1</u> and <u>Exhibit B-2</u> are Word versions of the proposed Company Disclosure Schedules and Buyer Disclosure Schedules, respectively, to accompany the Proposed SPA. Attached as <u>Exhibit B-3</u> is a PDF redline showing our changes to the Company Disclosure Schedules against the draft submitted on June 18, 2025, <u>Exhibit B-4</u> is a PDF redline showing our changes to the Company Disclosure Schedules against the form delivered in connection with the Dalinar SPA, and <u>Exhibit B-5</u> is a PDF redline showing our changes to the Buyer Disclosure Schedules against the draft submitted on June 18, 2025.

Attached to this Proposal as <u>Exhibit C-1</u> is a Word version of the draft Escrow Agreement and attached as <u>Exhibit C-2</u> is a PDF redline showing our changes against the form delivered in connection with the Dalinar SPA. Attached as <u>Exhibit C-3</u> is a Word version of the draft Paying Agent Agreement and attached as <u>Exhibit C-4</u> is a PDF redline showing our changes against the form delivered in connection with the Dalinar SPA. Attached as <u>Exhibit C-5</u> is a Word version of the draft Closing Release and attached as <u>Exhibit C-6</u> is a PDF redline showing our changes against the form delivered in connection with the Dalinar SPA.

    C.    <u>Identity of Purchaser</u>. Amber is controlled by Elliott, which has sufficient financial wherewithal to consummate timely the Proposed Transaction on the terms included herein, and is prepared to move forward on that basis.

    D.    <u>Purchase Price</u>.

We have increased our purchase price for the Shares from $5,959,200,000 as set forth in our August 8 Proposal to $6,459,200,000 (representing an additional $500,000,000 of writ extinguishment), with a portion in cash and a portion in non-cash to Koch and Rusoro, with distributions to Attached Judgment Creditors made in accordance with the Court's priority waterfall. In addition, our Proposal includes a settlement with holders of more than 75% of the outstanding 2020 Notes, which provides meaningful closing certainty. As we noted on the record at the August 12, 2025 status conference, Amber will extinguish all 2020 Notes it receives in connection with the settlement, providing additional extinguishment of claims against PDVSA. Attached to this Proposal as <u>Exhibits D-1</u> through <u>D-3</u> are fully executed settlement agreements with Koch, Rusoro and the 2020 Noteholders, respectively.

August 22, 2025
Page 3

E.   Sources of Financing.

We affirm, consistent with our August 8 Proposal, that we have fully committed financing commitments from well-known asset managers, including Elliott. The Proposed Transaction and related fees and expenses will be financed by (i) $3,775,000,000 of funded 1L debt from third-party financing sources, (ii) up to $2,850,000,000 of additional capital from Elliott and other third-party financing sources, (iii) negotiated settlements to extinguish the Attached Judgments of Rusoro Mining ($1,553,000,000) and Koch ($468,000,000), (iv) $25,000,000 cash equity investment by Elliott and (v) an assumed $2,046,000,000 of closing balance sheet cash. Such sources of financing are further described in detail below:

- **1L Debt Commitment Letter**. Attached to this Proposal as Exhibit E is a lender-executed debt commitment letter evidencing commitments of up to $3,775,000,000 in funded 1L debt financing. To protect against a potential cash shortfall, we affirm the flexible structure described in our August 8 Proposal, which provides additional availability under its asset-based lending facility and equity and debt financing commitments.

- **ABL Commitment Letter**. Attached to this Proposal as Exhibit F is a lender-executed debt commitment letter providing for a $2,000,000,000 asset-based revolving facility for working capital and liquidity, which is expected to be undrawn but may be drawn up to $500,000,000, if required, at Closing.

- **Financing Commitment Letter**. Attached to this Proposal as Exhibit G is a lender-executed financing commitment letter with Elliott and third-party co-investors for $2,850,000,000, which includes a fully committed accordion feature to fund an incremental $570,000,000, if required, at Closing.

- **Equity Commitment Letter**. Attached to this Proposal as Exhibit H is an Elliott-executed equity commitment letter for $25,000,000.

F.   Expiration. This Proposal will automatically expire if it has not been confirmed by the Special Master as a "Superior Proposal" under the terms of the sale process by 5:00 p.m., EST on the date that is ten (10) business days from the date hereof, and subject in all events to the Amber and the Special Master reaching mutual agreement on the form of the Sale Order.

G.   Purchaser Approvals. We have received all approvals required to make this Proposal subject to finalization of the definitive documents, which we expect could be completed in short order given our minimal proposed edits to the Stock Purchase Agreement.

H.   Contacts. The primary contact on behalf of the Purchaser is Ross Green, who is available by telephone at (212) 478-2672 or by email at rgreen@elliottmgmt.com.

Additionally, please feel free to contact Dan Fisher at Akin by telephone at (212) 872-7450 or by email at dfisher@akingump.com with any questions relating to this Proposal.

I.   Special Master Consent. We hereby consent for Robert B. Pincus, in his capacity as Special Master for the Court (the "*Special Master*"), in his sole discretion, to share information with U.S. Government regulators, including the U.S. Department of the Treasury's Office of Foreign Assets Control, as well as the Sale Process Parties, subject to the limitations of bidding Sale Process Parties to receive bid information (as outlined in the December Order), pertaining to this Proposal; provided, that the Special

August 22, 2025
Page 4

Master seeks confidential treatment for information pertaining to this Proposal shared with the U.S. Government regulators; provided, further, that the Special Master advises Elliott if the Special Master is notified by a U.S. Government regulator of a request for information pertaining to this Proposal pursuant to the Freedom of Information Act, 5 U.S.C. § 552.

    J.    Cooperation. We (i) agree that our advisors will coordinate in good faith with the Special Master's advisors to discuss and explain our regulatory and other consent analysis, strategy and timeline for securing all such approvals and consents as soon as reasonably practicable and (ii) agree to cooperate with the Special Master to provide pertinent factual information regarding our ownership and operations reasonably required to respond to, or otherwise analyze issues arising with respect to, U.S. sanctions laws and regulations, the Committee on Foreign Investment in the United States, any applicable antitrust laws and other relevant regulatory requirements or requests, subject to attorney-client privilege and similar rights, in each case subject to the terms of a Purchase Agreement.

    K.    No Entitlement to Reimbursement. We acknowledge that submission of this Proposal alone does not entitle us to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement.

    L.    No Liability. We agree that (i) in no circumstance shall the Special Master or his advisors be personally or otherwise liable for any amounts or obligations owed to us, (ii) the Special Master and his advisors are acting as an arm of the Court and are entitled to judicial immunity in the performance of their duties and (iii) PDVH, CITGO, and their respective officers, directors and advisors will have no liability or obligation to us or our affiliates, except and only to the extent it is expressly provided for in the Stock Purchase Agreement if, as and when executed.

    M.    Representations and Warranties. We hereby represent and warrant as follows:

    (i)    We recognize and acknowledge that the Special Master, his advisors, PDVH, CITGO, and their respective representatives make no representations, covenants, or warranties (or any other promise) as to the accuracy or completeness of any information provided in the data room or otherwise made available by the Special Master and his advisors in connection with the bid process, except as otherwise provided in the Stock Purchase Agreement;

    (ii)    Other than with respect to our reliance on the representations and warranties provided in the Stock Purchase Agreement if, as, and when executed, we have relied solely upon our own independent review, investigation, and/or inspection of any relevant documents regarding the assets to be purchased and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding PDVH and its subsidiaries or the completeness of any information made available in connection therewith;

    (iii)    We have not engaged in any collusion with respect to the submission of our Proposal; and

    (iv)    All proof of financial ability to consummate the Proposed Transaction in a timely manner and other information we have submitted to the Special Master as of the date of this Proposal are true and correct in all material respects.

    N.    Expenses. Except as may be provided in definitive written agreements, each of the Purchaser, on the one hand, and the judgment creditors of the Company, on the other, will be responsible


August 22, 2025
Page 5

for their own fees and expenses arising out of or in connection with the Proposed Transaction, including those of our and their respective accountants, bankers, counsel, and other advisors.

We respectfully request that this Proposal be considered a "Superior Proposal" under the terms of the sale process and are ready, willing and able to engage immediately to finalize documentation.

This confidential Proposal is not intended to be legally binding and is for discussion purposes only. This Proposal is subject to, among other things, the negotiation and execution of mutually satisfactory definitive agreements containing provisions customary for this type of transaction, regulatory approvals, and satisfactory completion of our due diligence.

This letter shall be governed by the substantive laws (and not the laws of conflict) of the State of Delaware. Any action, suit, litigation, claim, cause of action, arbitration, or other proceeding of any kind whatsoever against any other entity in any way, whether at law or in equity, whether in contract or in tort or otherwise, involving, arising out of, or relating to this letter or this Proposal, will be subject to the exclusive jurisdiction of the Court, or, if the Court does not have subject matter jurisdiction, such other courts of the State of Delaware or of the United States sitting within the State of Delaware and any appellate court from any thereof.

\* \* \* \* \*

      Thank you for the opportunity to present this Proposal. We remain enthusiastic about this opportunity and are prepared to move expeditiously to execute the Stock Purchase Agreement and consummate the Proposed Transaction. If you have any questions concerning this Proposal, please do not hesitate to contact any of the persons listed in Paragraph H above.

Very truly yours,

ELLIOTT INVESTMENT MANAGEMENT L.P.

By: _____
Name:   Elliot Greenberg
Title:   Vice President

Annex 1

Sources and Uses

| Transaction Sources: | |
|---|---|
| (+) New 1L Debt | $3,775 |
| (+) New Money Convertible Notes | 2,850 |
| (+) Cash on Balance Sheet at Close | 2,046 |
| (+) Rusoro Mining Commitment | 1,553 |
| (+) Koch Commitment | 468 |
| (+) Gold Reserve Claim Extinguishment | 500 |
| (+) Funded Equity | 25 |
| (-) Elimination[(1)] | (475) |
| **Total Sources** | **$10,742** |

| Transaction Uses: | |
|---|---|
| (+) Est. Court Fees, Writ Extinguishment & 2020s Settlement | $8,584 |
| (+) Existing Debt Paydown | 1,155 |
| (+) Projected Starting Cash | 500 |
| (+) Transaction Fees and Breakage | 398 |
| (+) Topping Fee | 105 |
| **Total Uses** | **$10,742** |

(1) Reflects double-count due to cash used to partially satisfy writholder claims.

| Sources of Liquidity at Close: | Commit. | Avail. |
|---|---|---|
| (+) Undrawn ABL | $2,000 | $500 |
| (+) New Money Convertible Notes | 3,420 | 570 |
| **Total Sources of Liquidity at Close** | **$5,420** | **$1,070** |

Illustrative Writ Extinguishment:

| Writ Holder Summary | Writ | Cumulative Writ | Extinguished Writ $ | % |
|---|---|---|---|---|
| Court Fees & Expenses (Estimated) | $100 | $100 | $100 | 100% |
| Crystallex | 1,015 | 1,115 | 1,015 | 100% |
| Tidewater | 80 | 1,194 | 80 | 100% |
| ConocoPhillips (Petroz. / Hama.) | 1,410 | 2,604 | 1,410 | 100% |
| OIEG & HII (Pari Passu) | 818 | 3,422 | 818 | 100% |
| ACL1 Investments | 119 | 3,541 | 119 | 100% |
| Red Tree Investments | 348 | 3,890 | 348 | 100% |
| Rusoro Mining | 1,553 | 5,443 | 1,553 | 100% |
| ConocoPhillips (Corocoro) | 48 | 5,491 | 48 | 100% |
| Koch | 468 | 5,959 | 468 | 100% |
| Gold Reserve | 1,210 | 7,169 | 500 | 41% |
| Siemens | 236 | 7,405 | 0 | 0% |
| Consorcio Andino | 701 | 8,106 | 0 | 0% |
| Contrarian | 396 | 8,502 | 0 | 0% |
| ConocoPhillips (ICSID) | 11,310 | 19,812 | 0 | 0% |