**Benesch**

John C. Gentile
1313 North Market Street, Suite 1201
Wilmington, Delaware 19801-6101
Direct Dial:  302.442.7071
Fax:  302.442.7012
jgentile@beneschlaw.com

October 7, 2025

<u>Via CM/ECF</u>
The Honorable Leonard P. Stark
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801

Re: **Crystallex International Corp. v. Bolivarian Republic of Venezuela, Case No. 17-mc-151**

Dear Judge Stark:

Blue Water Venture Partners, LLC ("Blue Water")[1], respectfully submits this letter pursuant to the Court's *Oral Order* dated September 30, 2025 [D.I. 2350] (the "Oral Order") with respect to its *Motion Requesting Approval of the Court to Consider Unsolicited Bid* [D.I. 2277] (the "Motion") and its letter dated September 29, 2025 [D.I. 2349] (the "Letter") filed in the above-captioned case. The Motion requests the Court to authorize and direct the Special Master to consider Blue Water's bid [D.I. 2277] (the "Bid") and engage with Blue Water about the Bid. Blue Water submitted the Letter because no parties filed a response to its Motion by the deadline under Local Rule 7.1.2 (b), Fed. R. Civ. P. 6(a), and CM/ECF Procedures (b).

Following the Court's Oral Order, Petróleos de Venezuela, S.A., PDV Holding, Inc., and CITGO Petroleum Corporation all filed their support of the Motion. [D.I. 2356]. Robert Pincus, in his capacity as special master (the "Special Master") [D.I. 2352], Crystallex International Corporation ("Crystallex") [D.I. 2353], and ConocoPhillips Petrozuata B.V. [D.I. 2354] (together, the "Objecting Parties") were the only objections. The Objecting Parties largely limited their arguments to noting that the Blue Water Bid was not yet sufficiently developed. And each allowed that a further "advance[d]" Blue Water Bid could be appropriate for the Special Master's consideration. *See, e.g.,* [D.I. 2352], p. 3 (Special Master: "If … Blue Water is able to sufficiently

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Sixth Revised Proposed Order (A) Establishing Sale and Bidding Procedures, (B) Approving Special Master's Report and Recommendation Regarding Proposed Sale Procedures Order, (C) Affirming Retention of Evercore as Investment Banker by Special Master and (D) Regarding Related Matters* [D.I. 481] (the "Sale Procedures Order") or the Motion D.I. 2277 (as applicable).

advance its bid prior to entry of a sale order on the currently contemplated schedule, the Special Master would be happy to consider it…").

Blue Water filed the Motion as a procedural necessity pursuant to the Court's *Scheduling Order* [D.I. 2110] to engage productively with the Special Master and, as part of this engagement, access key information that would enable Blue Water to secure the Bid funders' commitments. On September 15, 2025, the Court directed the Special Master to collaborate with Blue Water to provide access under a confidentiality agreement (the "NDA") to the Virtual Data Room. Sale Hr'g. Tr. 34:5-36:2 (September 15, 2025). With this access and Blue Water's continued efforts to finalize Bid financing, Blue Water has progressed significantly towards achieving the committed Bid funding. Blue Water is now in final stages of negotiation of commitments with equity and debt financing providers (the "Funding Commitments") that will allow it to fund the $10 billion cash Bid as contemplated in the Bid.

In light of this progress and for all the reasons set forth in the Motion, the Court should allow the Special Master to continue constructively communicating with Blue Water about the Bid and its development. Blue Water is mindful of the Objecting Parties' concerns, and has met and conferred with the Special Master's counsel regarding the Motion and the Letter. Blue Water's intention is to continue working towards finalizing Funding Commitments and thus proposes the Court keep the Motion open. Upon achieving the Funding Commitments, Blue Water intends to meet and confer with the Objecting Parties towards providing the Court with a stipulated order granting the Motion. Should such a stipulated order not be possible, Blue Water would respectfully request that the Court then rule on the Motion. When finalized, the Bid would provide more cash consideration than the Amber Bid does or the Gold Reserve Bid would. [D.I. 2277 at 6]. Based on the progress made and the superiority of the Bid's projected consideration, keeping the Motion open, as Blue Water proposes, can only benefit the parties-in-interest and would help Blue Water to advance further its Bid.

The Objecting Parties identified no legitimate prejudice or harm to continuing the relief the Court has granted thus far and keeping the Motion open. Crystallex's purported concern that the Bid could increase the "fees that compensate the Special Master and his advisers" is a red herring. [D.I. 2353]. Instead, the significant amounts of additional cash to be paid by the Bid more than justifies a relatively modest incurrence of additional fees by the Special Master, now (and it is anticipated that the lion's share of any additional fees would in any event only be incurred upon presentation of the Funding Commitments). In light of the level of spending to date and the relatively modest fees such an action would likely incur, the benefits to all Attached Judgment holders from the Special Master's review and engagement with Blue Water and its Bid would be fully justified. Indeed, the Special Master has *not* indicated that conferring with Blue Water and evaluating its Bid would be comparably expensive nor implicate a cost that would harm the sale process or prejudice the sale parties.

In addition, Blue Water's Bid is not contingent on a successful special purpose acquisition ("SPAC") transaction as the Special Master asserts. [D.I. 2352]. The Bid provides that $10 billion in cash will be made available to pay the PDVH Bondholders and Attached Judgment Creditors, regardless of whether an option to receive distributions in shares becomes available. Of course, Blue Water does anticipate being able to offer the PDVH Bondholders and Attached Judgment

Creditors, as appropriate, the option to receive their recovery in cash and / or shares in the SPAC, subject to regulatory requirements and shareholder approval. [D.I. 2277 at 8]. But even if Blue Water ultimately cannot provide this option, the cash available for creditor payment remains at $10 billion under the Bid. That amount of consideration would still prevail in a fair process of Bid comparison.

In conclusion, Blue Water respectfully requests that the Court continue the limited relief granted at the Sale Hearing and otherwise keep open the Motion until Blue Water communicates to the Objecting Parties that the Bid funding has been committed and Blue Water is able to present an agreed order to the Court, or Blue Water informs the Court that the Funding Commitments are in place. In fact, each of the Objecting Parties acknowledged that Blue Water's Bid *would be* worth consideration prior to the entry of a sale order should the Bid be sufficiently advanced. Denying Blue Water's Motion now would prematurely inhibit Blue Water's ability to develop and set forth a stronger Bid, for the benefit of all creditors.

We appreciate the Court's attention to this matter and remain available should the Court have any questions or require additional information.

          Respectfully submitted,

          **BENESCH, FRIEDLANDER,**
            **COPLAN & ARONOFF LLP**

          */s/ John C. Gentile*
          John C. Gentile (#6159)

          *-and-*

          **LOEB & LOEB LLP**

          William M. Hawkins (*pro hac vice*)
          901 New York Avenue, NW
          Suite 300 E
          Washington, DC 20001
          Telephone: (202) 618-5020
          whawkins@loeb.com

          Alexis Zobeideh (p*ro hac vice*)
          345 Park Avenue
          New York, NY 10154
          Telephone: (212) 407-4000
          Facsimile: (212) 407-4990
          azobeideh@loeb.com

cc:    All Counsel of Record (via CM/ECF)