# Exhibit A

**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
Phone: +1 212 310 8000
Fax: +1 212 310 8007

**Jared R. Friedmann**
+1 212 310 8828
jared.friedmann@weil.com

**HIGHLY CONFIDENTIAL PURSUANT TO D.I. 1555**
BY E-MAIL

October 3, 2025

George M. Garvey, Esq.
Munger Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
*George.Garvey@mto.com*

Juan O. Perla, Esq.
Curtis Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178
*jperla@curtis.com*

Nathan P. Eimer
Eimer Stahl LLP
224 South Michigan Avenue, Suite 1100
Chicago, Illinois 60604
*Neimer@eimerstahl.com*

Matthew H. Kirtland, Esq.
Norton Rose Fulbright US LLP
799 9th Street NW, Suite 1000
Washington, DC 20001
*Matthew.Kirtland@nortonrosefulbright.com*

Re: *Crystallex International Corporation v. Bolivarian Republic of Venezuela* (No. 17-MC-151-LPS) – Weil Engagements Discovery

Counsel:

This Letter provides Weil's responsive information to Section 1.c of the Second Joint Status Report (D.I. 2327). Below we describe the steps Weil has taken to conduct a reasonable, good faith search for and to produce responsive information in respect of (1) Weil's March 24, 2025 engagement chart disclosures; (2) Weil's September 12, 2025 engagement chart disclosures; and (3) the additional discovery sought by Gold Reserve and the Venezuela Parties on September 16, 2025.[1] We also noted any categories of discovery sought by Gold Reserve and the Venezuela Parties for which after a reasonable, good faith search, we did not identify any responsive documents.

### I.  March 24, 2025 Disclosure of Weil's Engagements

Weil worked with its internal conflicts team to conduct a reasonable, good faith search for and to produce non-privileged information about its engagements with bidders in response to Request 14 of CITGO

---

[1] All terms not specifically defined in this letter shall have the meanings ascribed to them in the Second Joint Status Report (D.I. 2327) and Corrected Third Joint Status Report (D.I. 2345).

October 3, 2025  
Page 2

**Weil, Gotshal & Manges LLP**

Petroleum Corporation and PDV Holding, Inc.'s First Set of Requests for Production to the Special Master and the Special Master's Advisors.

Weil's March 24, 2025 disclosure chart was generated from its conflicts team's search of Weil's internal client database for all clients matching the core business name of each bidder that participated in rounds 1 and 2 of the CITGO/PDVH sale process. This search captured entities identified as Weil clients on or after April 13, 2021 (i.e., the date the Special Master was appointed). After determining the relevant universe of clients, Weil's conflicts team searched Weil's internal matter database for all engagements logged under each unique client number on or after April 13, 2021.

Weil attorneys reviewed this material, collected a list of the engagements with start and end dates as determined by the date the engagement was opened and the date of the last documented work entry, and disclosed the engagements to the requesting parties on March 24, 2025. In the interest of full transparency, this disclosure also included engagements where bidders were listed in Weil's system as "related" to an ad hoc group client represented by Weil during the relevant time period.

## II.  September 12, 2025 Disclosure of Weil's Engagements

Weil worked with its conflicts and billing teams to conduct a reasonable, good faith search for and to produce non-privileged information pursuant to the Court's September 10, 2025 Order.

To determine Weil's relationship with any bidders or known affiliates of bidders involved in the sale process through September 12, 2025, Weil's conflicts team re-ran each entity's core business name through Weil's internal client database. This search captured all entities identified as Weil clients, including any known affiliates of bidders, on or after January 1, 2021.

After determining the relevant universe of clients, Weil's conflicts team searched Weil's internal matter database for all matters logged under each unique client number on or after January 1, 2021. Weil's conflicts team then collected a list of these engagements with (1) start and end dates as determined by the date the engagement was opened and the date of the last documented work entry; and (2) documented matter descriptions for each engagement. Weil's billing team then searched Weil's internal financial records to determine the total amount of fees collected attributable to these engagements during the relevant period.

Weil attorneys reviewed this material, revised the engagement descriptions to remove client confidences, and disclosed all engagements as ordered on September 12, 2025.

This chart differed from Weil's March 24, 2025 disclosure in the following ways:

1. it included engagements with known affiliates of bidders;

2. it disclosed additional details about each engagement;

3. it captured any engagements between January 1, 2021 and April 13, 2021, and also any new engagements opened after March 2025;

October 3, 2025  
Page 3

Weil, Gotshal & Manges LLP

4. it disclosed two additional engagements that had been inadvertently excluded; and

5. it corrected an error in Weil's March disclosure by changing ▮▮▮▮▮▮▮▮▮▮

This chart also clarified the limited, indirect nature of various engagements listed in the March 24, 2025 disclosure—namely Weil's representations of ad hoc groups of creditors that included bidders in the CITGO/PDVH sale process. In a footnote to the September 12, 2025 disclosure, Weil provided aggregate fee information for these ad hoc group engagements and the names of bidders included in those groups.[2]

### III. Additional Disclosure of Weil's Engagements Pursuant to the Second and Third Joint Status Reports

   a. *Engagements data regarding Weil's engagements with Elliott, Bidders, and Listed 2020 Bondholders*

       i. Basic engagements data and fees collected

Weil worked with its conflicts team, including Weil's General Counsel and Chief Ethics and Compliance Officer, and billing team to conduct a reasonable, good faith search for and to produce non-privileged information pursuant to categories 1-7 of Section I.a of the Second Joint Status Report and categories 1-3 of Section II.A of the Corrected Third Joint Status Report.

Weil's conflicts team engaged in the same processes described above with respect to the September 12, 2025 disclosure to determine which bidders and Listed 2020 Bondholders, including their respective known affiliates, were Weil clients on or after January 1, 2021 ("**Clients**").[3]

Weil's conflicts team then engaged in the same process described above to collect information relating to each engagement for these Clients during the relevant time period, as well as collecting the names of all Weil attorneys who billed to engagements for Clients[4] and all Weil attorneys who billed to Weil's representation of the Special Master.

---

[2] This footnote also disclosed the existence of an engagement for an ad hoc group where ▮▮▮▮▮▮▮▮▮▮ "may be an Additional Client," according to the report from Weil's internal conflicts team. Weil disclosed this engagement in the interest of full transparency and consistency, although Weil does not believe it has represented ▮▮▮▮▮▮▮▮▮▮ in any capacity for this matter.

[3] As part of a further compromise offer by Weil after the Corrected Third Joint Status Report was submitted, Weil conducted a reasonable, good faith search for and produced information relating to Weil's representation of any ad hoc group clients that included Listed 2020 Bondholders using the same process described above.

[4] As part of a further compromise offer by Weil after the Corrected Third Joint Status Report was submitted, Weil conducted a reasonable, good faith search for and produced the names of all Weil partners that billed to engagements with Listed 2020 Bondholders using the same processes described above.

October 3, 2025  
Page 4

**Weil, Gotshal & Manges LLP**

Weil's billing team then engaged in the same process described above to determine (1) the total annual fees collected from each Client, including their respective known affiliates, during the relevant time period; and (2) total quarterly fees collected from each Elliott Client during the relevant time period.

Weil attorneys reviewed this material, revised the engagement descriptions to remove client confidences, and disclosed the engagements data.[5]

        ii. <u>Contingent fee arrangements or estimated fee ranges for Client engagements that produced no recorded fees/revenue</u>

Weil has been working with its billing team to conduct a reasonable, good faith search for and to produce non-privileged information pursuant to Section I.a.8 of the Second Joint Status Report and Section II.A.4 of the Corrected Third Joint Status Report.

In these Joint Status Reports, Weil agreed to conduct a reasonable, good faith search for and to produce non-privileged information relating to currently open engagements with Elliott, Listed 2020 Bondholders, and their known affiliates that produced no recorded fees/revenue. Later, on Wednesday, October 1, 2025, Weil offered to conduct the same reasonable, good faith search for and to produce non-privileged information relating to open *and* closed engagements resulting in zero recorded fees/revenue for *all* Clients, including bidders and their known affiliates. Weil did not receive a response from Gold Reserve or the Venezuela Parties regarding this compromise proposal. However, in the interest of transparency and full disclosure, Weil is producing this information.

Weil has been working with its Director of Revenue Operations to determine which Client engagements produced zero recorded fees/revenue and to conduct outreach to the relationship partner for these Clients as needed. Weil's Director of Revenue Operations has been collecting responsive fee information regarding these engagements via phone and email.

As of the date of this Letter, Weil has collected responsive fee information regarding these engagements with Elliott, Listed 2020 Bondholders, and their known affiliates. Weil has reviewed this material, revised the documented responses to remove client confidences, and disclosed this fee information. Weil is working expeditiously to collect the remaining responsive fee information regarding these engagements with bidders and their known affiliates and expects to produce it early next week.

        iii. <u>Anticipated future fees from Elliott and Listed 2020 Bondholders</u>

Weil worked with its billing team to conduct a reasonable, good faith search for and to produce non-privileged information pursuant to Section I.a.9 of the Second Joint Status Report and Section II.A.5 of the Corrected Third Joint Status Report.

---

[5] The chart produced at SM0265947 disclosing Weil's engagements with bidders and known affiliates of bidders disclosed one additional engagement with ▮▮▮▮▮ that was inadvertently excluded from Weil's September 12, 2025 disclosure chart.

October 3, 2025  
Page 5

**Weil, Gotshal & Manges LLP**

Weil's Director of Revenue Operations informed Weil that its finance team does not, in the ordinary course, formulate annual business plans or budgets on a client-by-client basis. Accordingly, no annual firm business plans or budgets exist showing the amount of fees Weil anticipated receiving from Elliott, a known affiliate of Elliott, a Listed 2020 Bondholder, or a known affiliate of a Listed 2020 Bondholder.

    b. *Documents regarding alleged conflicts*

Weil worked with its conflicts team, including Weil's Chief Ethics and Compliance Officer, to conduct a reasonable, good faith search for and to produce non-privileged information pursuant to Section I.b of the Second Joint Status Report and Section 2.B of the Third Joint Status Report.

The Weil conflicts team's review of Weil's internal conflicts databases determined that (1) no ethical screens exist in connection with Weil's representation of the Special Master; (2) no Clients signed conflicts waivers specific to Weil's representation of the Special Master; and (3) a standard conflicts search for "Robert Pincus" and "CITGO" produced no adverse prior or current Weil engagements for any Clients.

    c. *Disclosures by Weil or Evercore to the Court or the Special Master concerning their engagements with Relevant Entities*

On behalf of itself and Evercore, Weil worked with core attorneys representing the Special Master to conduct a reasonable, good faith search for and to produce non-privileged information pursuant to Section I.d of the Second Joint Status Report and Section II.C of the Corrected Third Joint Status Report.

Weil attorneys representing the Special Master confirmed that, upon information and belief, neither Weil nor Evercore made written disclosures to the Court or the Special Master concerning their engagements with Elliott, other bidders, Listed 2020 Bondholders, or their respective known affiliates. Weil also confirmed with the Special Master that he did not receive any written communications from Weil or Evercore concerning engagements with Elliott, other bidders, Listed 2020 Bondholders, or their respective known affiliates.

On behalf of itself and Evercore, Weil manually reviewed all docketed, sealed transcripts of *ex parte* conferences in the above-referenced case to conduct a reasonable, good faith search for and to produce non-privileged information pursuant to Section II.C of the Corrected Third Joint Status Report.

Weil attorneys reviewed these thirteen (13) transcripts using the following search terms: "Elliott," "conflict," "engagement," "work," and "client." Consistent with the understanding of core Weil attorneys representing the Special Master, no relevant discussions were identified in the *ex parte* conference transcripts.

    d. *Communications-related discovery*

Weil worked with its litigation support team to conduct a reasonable, good faith search for and to produce non-privileged communications pursuant to Section I.e of the Second Joint Status Report.

October 3, 2025  
Page 6

**Weil, Gotshal & Manges LLP**

After implementing a document hold, Weil developed a search protocol designed to uncover responsive communications, which Weil shared with Gold Reserve and the Venezuela Parties in advance of its production.

Weil implemented this protocol by (1) identifying partners likely to have responsive information; (2) collecting and documenting responses from all Weil partners regarding such communications; (3) interviewing any partners who were not certain whether they had any responsive communications; and (4) conducting forensic searches of the emails of any partner who had or was not certain whether they had responsive communications. Weil's litigation support team conducted these searches in accordance with the protocol and collected a universe of potentially responsive communications.

Weil attorneys then reviewed these communications and, where responsive, produced them to Gold Reserve and the Venezuela Parties.

*   *   *

Nothing contained in this letter or the documents and information produced by Weil is intended to or should be construed as a waiver of any of Weil's rights, remedies, or objections to Gold Reserve's or the Venezuela Parties' disclosure requests, all of which are fully reserved. The inadvertent inclusion of any privileged document within the accompanying production does not constitute a waiver of any privilege or protection from disclosure.

Sincerely,

*/s/ Jared R. Friedmann*

Jared R. Friedmann

cc: Jason C. Rubinstein, Esq., Counsel for Evercore  
Joseph L. Christensen, Esq., Counsel for Evercore  
Myron T. Steele, Esq., Counsel for the Special Master