# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347
(302) 658-9200

ALEXANDRA M. CUMINGS
(302) 351-9248
ACUMINGS@MORRISNICHOLS.COM

November 4, 2025

**SUBMITTED VIA E-FILE**
The Honorable Leonard P. Stark
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, D.C. 20439

Re:  *Crystallex International Corp. v. Bolivarian Republic of Venezuela*,
D. Del. No. 1:17-mc-00151-LPS

Dear Judge Stark:

In their October 24 letter, the VPs showed that the "bidder" identified in Elliott's bid letters was Elliott Investment Management L.P. "collectively with its *affiliates*." *See* D.I. 2490-1 at 6. Accordingly, even under a narrow reading of PDVH and CITGO's discovery requests, the SM team failed to provide a complete or accurate answer, and they likewise inaccurately described the purported basis for this failure at the disqualification hearing. *Id.* at 2–4. The SM team's only attempt to rebut the substance of the VPs' supplemental authority is unfounded speculation in a footnote that "it cannot be the case that a reference to 'affiliates' in the definition of 'Elliott' in its June 2024 bid letter suggests that Elliott meant every one of its affiliates were jointly participating in the bid together with Elliott Investment Management L.P." D.I. 2512 at 2 n.1. But the language in Elliott's bid letters is unmistakable. *See, e.g.*, D.I. 2490-1 at 6 ("*We* are pleased to submit this confidential letter to you setting forth the terms of a definitive proposal (this 'Proposal') on behalf of Elliott Investment Management L.P. (*collectively with its affiliates*, 'Elliott,' 'we' or 'us') pursuant to which *Elliott* would acquire 100% of the outstanding shares of PDV Holding, Inc.").[1]

The SM team protests that its failure to provide an accurate disclosure should be blamed on PDVH and CITGO for not "rais[ing] an issue with the Special Master's vagueness objection" to their document request. D.I. 2512 at 2. That objection, however, was only general boilerplate. D.I. 2512-1 at 9–23 (prefacing 13 of 20 requests with identically-worded statement that the SM team "object[s] to this Request as overbroad, unduly burdensome, vague, and disproportionate to the needs of [the case]" before agreeing to produce responsive documents). The SM team did not object that the term "bidder" was vague or state that they were confused about whether it applied to Elliott affiliates. *See LG. Philips LCD Co., Ltd. v. Tatung Co.*, 2005 WL 8170100, at *16 (D. Del. Aug. 16, 2005) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." (citation omitted)); *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 187 F.R.D. 528, 530 (E.D. Pa. 1999) ("The party asserting the objections must show specifically how each interrogatory is . . . vague."). Nor could they, because there was nothing vague about the term "bidder," either in general

---

[1] *See also id.* at 7 ("*We* have delivered a fully conforming proposal consistent with the amended second round bid instruction letter."); *id.* at 9 (stating that "*we* are offering USD $6,950,000,000 in cash for the Acquired Interests"); D.I. 2123-1 at 836 (similar); *id.* at 844 (similar). Moreover, the funding for the bid coming from "Elliott" is in fact being provided by affiliates, not by Elliott Investment Management L.P. *See* D.I. 2490-1 at 9; *id.* at 24.

The Honorable Leonard P. Stark
November 4, 2025
Page 2

or as applied to the Elliott bid letters. The SM team also confirmed in November 2024, in response to a request for clarification from CITGO and PDVH, that it would "not withhold responsive, non-privileged documents based on [the] 'generalized' objections" asserted in their responses. Ex. A at 1.

The SM team now asserts that they read the request as limited to bidders "specifically identified in the bid letters," D.I. 2512 at 1, but Elliott "affiliates" were specifically identified in the bid letters. If the SM team now is arguing that it read the request as limited to bidders named *individually*, *id.*, such a claim is preposterous. The request sought engagements with "*any* bidder." D.I. 2512-1 at 19. The responses and objections to the request also had no such limiting language; they promised "a list of names of *any bidder* the Special Master or his advisors have performed work for." *Id*. Neither did the March Disclosure itself: "Please find attached a *complete list* of professional engagements in which the Special Master, Evercore, or Weil performed work *for any bidder participating* in Rounds 1 or 2 of the sale process." D.I. 2470-1 at 43. The response on September 4, 2025, to counsel's request for an updated list was similarly unequivocal: "We can report that neither Weil nor Evercore has had any engagements with *any of the bidders that have participated* since the start of the stalking horse period." *Id.* at 41–42.

The suggestion that it was too burdensome to identify the affiliates represented by Weil because Elliott's "entire business is dedicated to ownership of the securities of other companies," D.I. 2512 at 2, also is not credible. Again, the SM asserted only a generalized, boilerplate burden objection; he did not assert a specific objection that it would be unduly burdensome to search for such affiliates. Moreover, these engagements were not for a portfolio company with no apparent Elliott connection. They were for Elliott Advisors (UK), a name that would surely have come up in any professional firm's conflicts database in a search for "Elliott." And it is plain from Mr. Saferstein's and Mr. Turkel's emails that Weil's senior management was acutely aware (and protective) of its Elliott relationship.[2] Weil had no problem producing the information in two days when ordered to do so by the Court. *See* Sept. 10, 2025 Tr. 91:11–16.

A fundamental point should not be overlooked amid the recent letters' focus on the SM's false and misleading discovery responses: it was not the VPs' obligation to ferret out conflicts; it was the SM team's obligation to investigate and disclose them, proactively and on the record, independent of the discovery requests. 28 U.S.C. § 455(a), (c); Fed. R. Civ. P. 53(a)(2), (b)(3). In March, the SM disclosed only a single, long-closed, 4-week engagement with Elliott—**and did not disclose even that to the Republic or PDVSA**. D.I. 2392 at 10. That is a far cry from the extraordinary information regarding the ever-deepening conflicts concealed (apparently deliberately) until forced out of the SM's team in September. Nor can there be an accusation of untimeliness when the advisors concealed the information necessary for any party to ascertain the depth of the conflict. Even under Weil's engagement letter (which the SM and Weil also did not disclose, and which does not satisfy Section 455 and Rule 53, D.I. 2468 at 6–8), it was **Weil's** obligation to set up an ethical screen. It admits it failed to do so, D.I. 2450-1 at 5, a failure that enabled Mr. Schrock's dual representation and Mr. Saferstein's interference in the sale process, none of which was disclosed.

---

[2] *See* D.I. 2454 at 12 (quoting Mr. Saferstein's intercession in the process in response to a complaint from Elliott because "I hate for them [*i.e.*, Elliott] to not want to work with us.").

The Honorable Leonard P. Stark
November 4, 2025
Page 3

                                                       Respectfully,

                                                       */s/ Alexandra M. Cumings*

                                                       Alexandra M. Cumings (#6146)

cc:  All Counsel of Record