# EXHIBIT A

**Transcript**

1

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

GOLD RESERVE LTD.          :
                           :
              Plaintiff,   :
                           :
        v                  : C. A. No.
                           : 2025-1292-LWW
RUSORO MINING LTD.         :
                           :
              Defendant.   :


- - -


Chancery Court Chambers
Leonard L. Williams Justice Center
500 North King Street
Wilmington, Delaware
Thursday, November 13, 2025
9:15 a.m.


- - -


BEFORE: HON. LORI W. WILL, Vice Chancellor


- - -


TELEPHONIC ORAL ARGUMENT AND RULING OF THE COURT ON
PLAINTIFF'S MOTION FOR EXPEDITED PROCEEDINGS


**CHANCERY COURT REPORTERS**
**500 N. King Street, Ste 11400, Wilmington, DE**
**(302) 255-0526**

2

```
 1  APPEARANCES:

 2       KEVIN J. MANGAN, ESQ.
         Womble Bond Dickinson (US) LLP
 3             -and-
         MICHAEL J. BOWE, ESQ.
 4       of the New York Bar
         Brithem LLP
 5
         R. CRAIG MARTIN, ESQ.
 6       CALEB G. JOHNSON, ESQ.
         DLA Piper LLP (US)
 7             -and-
         JAMES E. BERGER, ESQ.
 8       CHARLENE SUN, ESQ.
         of the New York Bar
 9       DLA Piper LLP (US)
           for Defendant
10

11                      - - -

12

13

14

15

16

17

18

19

20

21

22

23

24
```

**CHANCERY COURT REPORTERS**
**500 N. King Street, Ste 11400, Wilmington, DE**
**(302) 255-0526**

3

1                THE COURT:  Good morning.  This is

2  Vice Chancellor Will on the line.

3                ATTORNEY MANGAN:  Good morning, Your

4  Honor.  Kevin Mangan from Womble Bond Dickinson on

5  behalf of the plaintiff, Gold Reserve Ltd.  With me

6  this morning is my co-counsel, who has been admitted

7  *pro hac vice*, Michael Bowe from the --

8                THE COURT:  I'm sorry.  Someone is

9  talking.  Anyone who is not speaking to the Court

10  right now should mute their lines, please.

11                I'm sorry, Mr. Mangan.  Go ahead.

12                ATTORNEY MANGAN:  Again, Mr. Bowe and

13  myself on behalf of the plaintiff.

14                And, Your Honor, just so you know, I

15  organized this call, and I believe there's some other

16  folks listening in other than Mr. Martin and his team

17  from DLA.

18                THE COURT:  That's fine.  Thank you

19  very much.

20                Who do we have on the line for the

21  defendant?

22                ATTORNEY MARTIN:  Good morning, Vice

23  Chancellor Will.  This is Craig Martin of DLA Piper

24  LLP.  I have with me in our Delaware office Mr. Caleb

4

1  Johnson.  I also have on the phone line Mr. James

2  Berger and Ms. Charlene Sun from our New York office,

3  who we moved *pro hac*.  I will be handling the

4  arguments this morning before the Court.

5               THE COURT:  Thank you very much.

6               Is there anyone else who wishes to

7  make an appearance?

8                    (No response.)

9               THE COURT:  Counsel, thank you for

10  making the time and thank you for putting in your

11  papers so expeditiously.  When I initially reviewed

12  the motion to expedite, I got a sense that you were

13  looking for some sort of an injunction hearing by

14  November 30, so I wanted to hear this motion as

15  quickly as I possibly could.

16               I've gone over your papers very

17  carefully.  I have a firm grasp on the situation.  I

18  would like to have a better understanding of where

19  things currently stand in the district court, but I'll

20  be happy to hear any presentations that you'd like to

21  make today.  And counsel for the plaintiff can go

22  first.

23               ATTORNEY BOWE:  Thank you, Vice

24  Chancellor Will.  This is Michael Bowe from Brithem

5

1  LLP from Gold Reserve.  Thank you for giving us some

2  time this morning.

3          Your Honor, we made this motion

4  because I think we correctly, but not brilliantly,

5  assumed part of Rusoro's opposition would be that they

6  didn't do it.  That will require some factual record

7  for Your Honor to consider.  And we thought, under the

8  circumstances, we would move to expedite the

9  scheduling of that discovery so Your Honor would have

10 an opportunity to hear it.  We think it needs to be

11 heard in January, Your Honor.  And we think that

12 provides enough time to do the discovery and the

13 briefing.

14          Frankly, we expected we'd have at

15 least a disputed schedule coming into Your Honor's

16 hearing, but Rusoro's position is that they won't even

17 discuss a schedule until Judge Stark weighs in, in

18 their words.

19          The fact is clear, though, Your Honor,

20 because this is a dispute between two foreign

21 corporations, the federal district court simply

22 doesn't have any jurisdiction, which is why the

23 parties agreed in the agreement that this court would

24 be the proper forum for dispute.  I suspect that's why

6

1 Rusoro has not actually made a formal application to

2 Judge Stark.  They did ask for a phone conference when

3 this was filed, but he hasn't acted on that.

4 So, Your Honor, we request that Your

5 Honor simply direct Rusoro to meet and confer on a

6 proposed schedule to complete discovery and briefing

7 in anticipation of a January hearing.  We would like

8 it by mid-January, Your Honor, subject to Your Honor's

9 schedule.

10 And in terms of where the case stands

11 in the federal court, Judge Stark, on November 2,

12 issued a scheduling order where he said he would rule

13 on the merits of the forced sale by the 30th of

14 November.  So that's what we expect.  And then I think

15 we are all in relative agreement that there will be

16 some period of time -- assuming Amber were to prevail,

17 there would be some period of time in which it would

18 take for them to close that transaction.

19 The Special Master recently indicated

20 to the Third Circuit that it would take -- I believe

21 it said at least -- it would take months.  We take

22 "months" to mean more than one.  But it starts with

23 two, which is why we are asking for the hearing in

24 January.  But it is subject to certain factors outside

7

1  the parties' control, including U.S. government

2  agencies that have to permit the transaction to close

3  and whatnot.

4          I won't go into too much detail, Your

5  Honor, but it is possible that it closes -- the

6  parties obviously were trying to close as soon as

7  possible.  So that's why we asked for expedited

8  consideration, so we can get what is relatively

9  limited discovery.  Because, Your Honor, the period

10 we're talking about is -- we're not talking about

11 years.  We're talking about weeks, maybe two months, a

12 two-month period involving a very limited number of

13 people.  So we think the discovery can be done

14 expeditiously.  And we're prepared to sort of work on

15 a schedule with Rusoro to get that done so Your Honor

16 can hear it with an opportunity to provide relief, if

17 Your Honor so decides.

18         THE COURT:  Thank you very much.  So

19 you don't have a definitive sense of when Judge Stark

20 is going to rule, either on the request for a

21 teleconference or on the approval of the sale?  You

22 think it could be November 30?

23         ATTORNEY BOWE:  He issued an order on

24 November 2 indicating that he would rule on the merits

CHANCERY COURT REPORTERS
500 N. King Street, Ste 11400, Wilmington, DE
(302) 255-0526

8

1 by November 30.  Obviously, he doesn't need to, but I

2 believe he will.  And we expect that he will rule by

3 that time.

4            THE COURT:  Let's say, hypothetically,

5 he rejected the sale.  What would you need from me at

6 that point?

7            ATTORNEY BOWE:  That's a great

8 question, Your Honor, which is part of the reason why

9 we have waited until we think this issue was ripe for

10 Your Honor.  It would depend, I guess, on what he

11 said.  If Judge Stark rejects the Amber bid, he could

12 do various other things.  But if there was no final

13 sale order approved, I don't think there would be

14 anything for Your Honor to do.  Presumably, what would

15 then happen is he would have to restart the forced

16 sale process in some form.

17            THE COURT:  Thank you.  That's

18 helpful.

19            I'm glad to hear from counsel for the

20 defendant next.

21            ATTORNEY MARTIN:  Thank you, Your

22 Honor.  May it please the Court, this is Craig Martin,

23 appearing on behalf of Rusoro Mining Limited.

24            I think it's quite clear that Your

9

1  Honor has picked up on the fact that we submit this

2  action as a collateral attack on a pending federal

3  proceeding and that we think Gold Reserve has agreed

4  with what it perceives will be the eventual outcome

5  there.

6              One thing to update you on is, I think

7  one minute before we started this hearing, Judge Stark

8  did issue a ruling denying a motion to disqualify the

9  Special Master and himself.  I have not had the chance

10  to read it, but we're certainly happy to share that

11  with the Court by letter immediately after this

12  hearing if you would like to see it.  So I do believe

13  that Judge Stark will likely rule by November 30, as

14  he said he would.  He's obviously a very busy

15  appellate court judge now, but has been gracious

16  enough to keep this case in Delaware, and he comes

17  back to deal with these matters here in town.

18              So I think, obviously, our position is

19  based on we do believe the federal court has

20  jurisdiction over the sale process; has been

21  exercising that jurisdiction for several years,

22  including appointing a special master; entering orders

23  governing the sale process, including a provision that

24  provides that any disputes related to the sale

10

1  process, bids, and other issues in the sale should be

2  decided by the federal court.  And so we think that

3  it's quite an extensive request for this court to

4  enter an injunction that, according to paragraph 27 of

5  the verified complaint, seeks to prevent the sale from

6  moving forward.

7           Turning to the issue at hand, which is

8  expedition.  I will briefly touch on the fact that we

9  don't believe the claim asserts a colorable claim,

10 that they have failed to show imminent or irreparable

11 harm -- imminent irreparable harm, and that they

12 waited too long to bring this based on their own

13 factual allegations.

14          Just to finish touching on the federal

15 court jurisdictional issues, we did write to Judge

16 Stark.  There's been an exchange of letters in front

17 of him.  We brought this -- the filing of this

18 complaint to the Court's attention by letter

19 immediately when we received it.  We received it last

20 Friday at, I think, around 5:00 p.m.  And then Gold

21 Reserve provided some responses and we had some

22 exchanged letters, each of which suggested that we

23 should have a telephonic status conference to advise

24 the Court of what's happening and seek his views.

11

1          It's obviously for that reason that we

2    requested that this matter be deferred for a week so

3    that we could solicit Judge Stark's views.  And I

4    think, as you'll see on Attachment B to the reply, I

5    am not refusing to discuss a scheduling conference.  I

6    merely stated that I would like to know whether Judge

7    Stark thinks he should exercise jurisdiction and deal

8    with the issues.  And I suggested in that email that

9    if Judge Stark felt we should go forward before you,

10   we would be more than happy to meet and confer over a

11   schedule.

12          So turning to the substance of the

13   colorable claim.  I think the key thing is what the

14   verified complaint, the preliminary injunction, and

15   the motion do not mention.  There's great discussion

16   over an under seal consortium agreement.  And there

17   are two points worth noting on that, the first of

18   which is that the agreement, by its terms, permits

19   Rusoro to participate in and support other bids, with

20   the only exception that they can't themselves bid for

21   the shares.  So, in essence, we view that what they

22   are saying this for is exactly what they contractually

23   agreed to.

24          The other point there is that the

12

1 Dalinar bid it's called -- that's the subsidiary that

2 Gold Reserve established to be able to bid in this

3 process -- was publicly filed on the docket on July 2

4 and indicates the exact consideration that was going

5 to be paid under that bid to Rusoro.

6               So it's plain that the parties to the

7 bidding procedures were able to assess the facts and

8 circumstances that allegedly under the complaint

9 note -- the complaint says that we disclosed in

10 August and September.

11              Turning to the imminent irreparable

12 harm.  You know, their basic theory is that they've

13 lost the unique opportunity to acquire the Citgo

14 assets.  I think, as is plain from the complaint,

15 which -- and maybe not.  So maybe it's helpful to just

16 understand a little bit about what's happened in the

17 district court, Your Honor.

18              There are basically 27 judgment

19 creditors that have asserted various claims, procedure

20 of their assets before various worldwide tribunals by

21 the Venezuelan government.  Those turned into largely

22 arbitration awards, which were then filed on various

23 federal court dockets to permit enforcement of those

24 judgments by attaching Venezuela's assets under and in

13

1  accordance with the Foreign Sovereign Immunities Act,

2  which is a federal statute that addresses the federal

3  court's jurisdiction over foreign sovereigns.

4          In that proceeding, Judge Stark

5  conducted a very careful process by which all of those

6  writs of attachment were permitted conditionally to

7  attach.  And he then had a process where all 27 of us

8  stood in line and presented those judgments to a

9  marshal, who timestamped them so that there would be a

10  priority waterfall in the sale process.  He then

11  imposed a set of bidding procedures not unlike bidding

12  procedures that are used in bankruptcy sale processes

13  when there is a competitive auction for an asset of an

14  insolvent entity and conducted a multi-day evidentiary

15  hearing, where several witnesses testified, and then

16  conducted closing arguments over a couple of days.

17          So during the course of those

18  proceedings, and alluded to on the phone today, is a

19  reference to regulatory approvals, one of which is the

20  Office of Foreign Assets Control, called "OFAC," which

21  has had in place prohibitions against transacting with

22  Venezuela that are relevant to the proceedings that

23  have been presented to Judge Stark.

24          There are a group of bondholders that

14

1  had alleged that they had a lien on the stock that's

2  being sold.  That litigation was before Judge Failla

3  in the Southern District of New York.  And I believe

4  it was on the last day of trial that Judge Failla

5  issued a 94-page opinion that said those bondholders

6  did, in fact, have rights to some of the collateral

7  that was being sold here.  And the Amber bid, unlike

8  the Dalinar bid, sought to address that risk.  And

9  that was one of the reasons stated in the Special

10  Master's recommendation to Judge Stark for accepting

11  that bid.

12          So all of those things that need to

13  happen to close, as you've heard today, can't be

14  stated.  Gold Reserve does not know when the closing

15  will occur.  And like you, we thought they were

16  initially seeking an injunctive relief hearing before

17  November 30.  And we found out in our meet-and-confer

18  on, I think it was -- I'm losing track of the days --

19  I think it was Tuesday morning that they were, in

20  fact, not seeking a hearing until mid-January, which

21  is what they have stated in their reply.

22          But I think it's important to

23  appreciate that there is no showing of imminent

24  irreparable harm.  The verification -- I don't know if

15

1  Your Honor has had the chance to look at it.  It's one

2  that I find to be unusual, where the verifying witness

3  states that he only can verify the facts in which he

4  specifically participated but does not verify certain

5  other facts.  So I think the verified complaint lends

6  more towards legal argument than it does factual

7  allegations on which this Court could base a motion to

8  expedite decision or a preliminary injunction

9  decision.

10              Finally, we have submitted that under

11  the doctrine of laches, Gold Reserve simply has waited

12  too long or has made a tactical forum selection clause

13  to create a sense of urgency and says that they want

14  to take over -- I think I counted about ten different

15  depositions and do limited document discovery.

16              I think it's appropriate for Your

17  Honor to know that there has already been depositions

18  and discovery in connection with the sale process.

19  There are confidentiality orders, where all of the

20  various participants in the sale process were allowed

21  to see certain nonpublic information.  And that would

22  have included both Rusoro and Gold Reserve.

23              But I think on the laches point, the

24  verified complaint itself indicates that there are

16

1  facts that have occurred going as far back as June on

2  which the claims in this matter are based and which

3  could have anywhere along the way led to this action

4  having been filed earlier.

5          Complaint paragraphs 44 through 47

6  talks about ceasing negotiations in late June.  There

7  was no injunction filed then; no complaint to the

8  federal court.

9          The complaint at paragraph 49, the

10  July 2 Dalinar bid was filed publicly on the docket.

11  As I have noted, that stated what Dalinar was paying

12  to various parties in the waterfall.  And the Special

13  Master made a recommendation at that time that also

14  related those details.  No injunction filed; no

15  complaint to the federal court.

16          Complaint paragraphs 57 through 62,

17  the Special Master's recommendation on August 29 is

18  alleged to be the ultimate and key breach of an

19  agreement and that they were told by the Special

20  Master in advance of that August 29 announcement that

21  the events they allege breached the agreement had

22  occurred in August.  Again, no injunction filed; no

23  complaint to the federal court.

24          They state numerous times throughout

17

1  their complaint that the facts supporting the action

2  were "confirmed on the record at the district court's

3  September 2025 evidentiary hearing," among other

4  places in the complaint, paragraph 8.  No injunction

5  filed; no complaint made to the federal court.

6             They say in complaint paragraph 15

7  that on the last day of the hearing in the federal

8  court, Rusoro participated in actions that underlie

9  this complaint.  Again, no injunction.  Rusoro did not

10  allege a breach at that time.

11             In fact, Your Honor, Rusoro, in the

12  federal proceedings, repeatedly stated that they were

13  observing their obligations under the various

14  agreements and they conducted themselves specifically

15  and quite carefully.  And there was even a colloquy

16  between the two bidding parties, Judge Stark, and

17  counsel for both Rusoro and other participants in the

18  consortium regarding the ability of Rusoro to take

19  certain positions or make certain arguments in court.

20  And it was stated to Judge Stark that Rusoro would

21  remain silent and neutral to ensure that it complied

22  with its obligations and agreements under the very

23  consortium agreement that forms the basis of the

24  complaint pending before Your Honor.

18

1             Finally, complaint paragraph 54,

2 there's an allegation that the CEO was informed on

3 October 1 of the breaches alleged in this complaint,

4 which is important because closing arguments in

5 federal court did not occur until October 21.  During

6 this period, Gold Reserve was preparing a motion to

7 disqualify Judge Stark and indeed filed that motion,

8 but they did not file an injunction, and they made no

9 complaint to the federal court about that alleged

10 allegation.

11             So in conclusion, Your Honor, we

12 respectfully submit that expedition here is not

13 warranted.  That's the relief before Your Honor.  I

14 think you can deny it, and that you should.  The

15 agreement permits Rusoro to support other actions,

16 which is the core allegation of what they did wrong.

17 Gold Reserve agreed to that and now shouldn't be

18 allowed to seek expedited relief on the very text of

19 the agreement.

20             The pleadings show that the bids --

21 complex federal proceedings that invoke the rights and

22 interests of a number of different judgment creditors,

23 a sovereign nation, and other parties in interest in

24 the federal court.  The alleged harms are speculative,

19

1   and Gold Reserve delayed bringing them to the

2   attention of any court.  And there's no basis to grant

3   their request for urgency.

4                And finally -- I don't know if it's

5   more important or not.  Obviously, we're in front of

6   Your Honor in the Delaware court proceeding.  But I do

7   believe that comity concerns and federal

8   jurisdictional issues do compel caution here.  I know

9   Your Honor has written on these issues before and is

10  quite familiar with the case law regarding the ability

11  of a state court to enjoin proceedings in front of a

12  federal court.  And I think paragraph 27 is a moment

13  of candor from Gold Reserve, where they say what they

14  are really seeking here is to halt the sale process.

15               So for those reasons, I think the

16  motion to expedite should be denied.  I think we at

17  Rusoro will then be given time to (a) seek Judge

18  Stark's guidance.  You know, we've had this before us

19  for, I think, three or four business days, so we're

20  still evaluating rights.  And then depending on what

21  Judge Stark indicates and does, we can then answer or

22  otherwise respond to the complaint in accordance with

23  the regular guidelines and move this matter forward on

24  a regular schedule and not have to have Your Honor set

**CHANCERY COURT REPORTERS**
**500 N. King Street, Ste 11400, Wilmington, DE**
**(302) 255-0526**

20

1  aside other pending, important matters that are not

2  expedited so that you can address this issue, which

3  Judge Stark, highly competent judicial figure in the

4  United States, has been dealing with for quite some

5  time and I suspect would be able to going forward.

6         So unless Your Honor has any further

7  questions, those are the submissions I would like for

8  the Court to consider today in support of our

9  arguments.

10        THE COURT:  Thank you, Mr. Martin.  No

11 questions for you.

12        Mr. Bowe, would you like a brief

13 rebuttal opportunity?

14        ATTORNEY BOWE:  I would, Your Honor,

15 briefly.

16        Your Honor, there is a bit of a

17 tension in their argument.  We agree that caution and

18 prudence was necessary here.  And the fact of the

19 matter is, we did everything we could within the

20 parameters of the district court case to avoid the

21 harm that we now have to come in front of Your Honor

22 to deal with.  And it was only within really the last

23 two weeks where that harm really ripened and the

24 immediacy ripened when the Judge indicated he would

21

1  rule by November 30.

2              I think you heard counsel talk about

3  the relief or the harm being speculative.  Your Honor

4  asked, well, if he doesn't rule -- if he rejects the

5  bid on the 30th, is there anything for me to do?

6  Purely if we had brought such a motion and a claim in

7  July, August, September, those questions would have

8  been much harder for us to answer.  So the fact is, we

9  brought this case and we seek this relief when we

10 thought it was ripe to do so.

11             There was a lot counsel talked about

12 which goes to the merits.  We disagree obviously with

13 much of it or, really, most of it.  For example, the

14 things he highlighted, that they had the right to

15 participate in other bids.  This case is not about

16 that.  The case is about the fact that they have a

17 right to participate in those bids with certain

18 significant restrictions that the parties agreed were

19 important enough to require injunctive relief if they

20 violated them.  That is why we are here.

21             The issue of collateral attack is

22 simply not true.  The fact of the matter is, this is

23 the only forum in which we can raise this issue

24 because it is between two foreign citizens.  And Judge

22

1  Stark simply doesn't have the jurisdiction for us to

2  bring this case and seek this relief there, which is

3  why the parties contractually agreed to have this

4  court hear it.

5              And as Your Honor is aware, there is

6  very well-established jurisprudence in the United

7  States.  We all learn it, I think, in our first year

8  of law school.  There's the All Writs Act, the

9  Anti-Injunction Act.  And this is a situation where

10  that really does come into play.  Yes, there is a

11  dispute that is relevant to the outcome ultimately of

12  the case that Judge Stark has in front of him.  But

13  that dispute is a purely state court dispute and it

14  needs to be decided there independently.

15              And frankly, Judge, there's nothing

16  extraordinary about that generally or, in particular,

17  in this situation.  Judge Stark has done an amazing

18  amount of work trying to get what is a Delaware forced

19  sale to the finish line.  We agree with that.  But,

20  Your Honor, regardless of what he does on November 30,

21  whether it actually gets over the finish line is

22  subject to dozens of issues that are completely

23  outside his control, some of which counsel has talked

24  about in calling our request for relief "speculative."

23

1  The biggest ones, for example, Your Honor, are OFAC,

2  U.S. government sanctions licensing agency.  It has to

3  pass on all of this.

4              In addition, he can approve that bid,

5  but it is subject -- we briefed this extensively -- it

6  is subject to all sorts of closing requirements and

7  financings.  It's subject to whether or not all the

8  parties, including Rusoro, would ultimately sort of

9  proceed with it.  There are many, many factors here

10  outside the scope of what Judge Stark is doing which

11  will impact whether, at the end of the day, if he

12  approves the Amber bid, it ever happened.  This is

13  just another one of them.  And the fact of the matter

14  is, we brought this prudently when we had a ripe case

15  to bring to Your Honor at a time when it needed to be

16  brought.  And it is a dispute that can only be heard

17  before Your Honor.

18              So there was much in that presentation

19  about the merits.  Your Honor will have to weigh in on

20  all of that.  But the fact is, we're entitled to seek

21  this relief from Your Honor.  The parties agreed to

22  that.  The parties agreed that if the breaches that we

23  allege occurred, that there would be no sufficient

24  monetary remedy and that injunctive relief would be

24

1  appropriate.

2              So we're before Your Honor asking to

3  be heard on that.  In order for Your Honor to be heard

4  on that -- in order for Your Honor to hear that, there

5  will be -- you'll need a record.  I think counsel's

6  presentation made that absolutely clear.  And it needs

7  to be heard sometime in January.  And so there is time

8  to get that record to Your Honor in place so you can

9  consider it in January.  We need to start that

10 schedule now.

11             They mentioned ten depos.  There may

12 be ten depos, Your Honor, but they are not full-day

13 depos.  You know, we're talking about depositions of

14 people to find out what communications they had in the

15 course of a two-month period.  These aren't -- many of

16 these could be two-hour, three-hour depositions, maybe

17 less.

18             So we think it can all be done in time

19 for Your Honor to consider it.  All of the arguments

20 that were made can actually be briefed to Your Honor

21 with whatever record supports them.  Right now you

22 have lawyers talking to you.  And then Your Honor can

23 consider that with due process.

24             And so that's what we are requesting,

25

1  Your Honor, that we -- that Rusoro -- that you set a

2  date sometime in January for this hearing and that we

3  be directed to work on a schedule and bring to Your

4  Honor whatever disputes we have on that promptly.

5          THE COURT:  Thank you, Mr. Bowe.  I

6  appreciate the presentation.

7          Well, Counsel, thank you both very

8  much for your presentations this morning.  And thank

9  you to your whole teams for your papers, especially

10  getting them in so expeditiously and so thoroughly.  I

11  can give you a ruling now, if you'll mute you're

12  lines, please, and then I'm happy to answer any

13  questions that you have at the end.

14          By way of brief background, this case

15  is brought by plaintiff Gold Reserve Ltd., which is a

16  Bermuda entity, against defendant Rusoro Mining Ltd.,

17  which is a British Columbia entity.  Both parties are

18  judgment creditors of Venezuela that participated in a

19  bidding process for the shares of PDV Holding, Inc.,

20  or "PDVH," which is a Venezuelan-owned company, in an

21  auction supervised by the United States District Court

22  for the District of Delaware.

23          According to the complaint, the

24  defendant entered into a consortium agreement

**CHANCERY COURT REPORTERS**
**500 N. King Street, Ste 11400, Wilmington, DE**
**(302) 255-0526**

26

1  regarding a proposed transaction to purchase PDVH

2  shares with the plaintiff, but it allegedly breached

3  the confidentiality and support obligations of the

4  agreement by disclosing its terms and its

5  participation to solicit offers from competing

6  bidders.  It also allegedly misrepresented the

7  confidential terms of the agreement to the

8  court-appointed special master evaluating the

9  competing bids.

10              More specifically, Gold Reserve

11  alleges that Rusoro worked with hedge fund Elliott

12  Investment Management L.P., through its affiliate

13  Amber Energy Inc., to form a competing bid using the

14  wrongfully shared confidential information.  Gold

15  Reserve was initially selected as the winning bidder

16  of the auction.  The Special Master later selected

17  Amber's bid as the winning bid for the PDVH shares,

18  despite its lower purchase price.

19              The district court, in particular

20  Judge Stark, is currently slated to confirm the Amber

21  bid as the winning bid, allegedly, by November 30.

22  And according to Gold Reserve, the sale process will

23  begin to close thereafter, subject to certain

24  regulatory approvals.

27

1          On November 7, the plaintiff filed a

2    six-count complaint in this court against Rusoro,

3    alleging multiple claims in contract and tort.  Gold

4    Reserve wishes to pursue an expedited preliminary

5    injunction hearing sometime in January, which, if

6    granted, would enjoin Rusoro from participating in or

7    effectuating the sale of the PDVH shares to Amber.

8          Gold Reserve's motion to expedite,

9    which is the only motion before me today, requests

10   expedited discovery to determine the scope of Rusoro's

11   alleged improper use of confidential information and

12   to set a prompt preliminary injunction hearing.

13   Rusoro, of course, opposes the motion.

14          In terms of the standard that I must

15   apply, the court will expedite proceedings in its

16   discretion where the movant shows (1) that it has a

17   colorable claim, and (2) that there is a risk of

18   imminent irreparable harm absent expedition.  "[T]he

19   plaintiff has the burden of persuading the Court that

20   good cause exists to 'justify imposing on the

21   defendants and the public the extra (and sometimes

22   substantial) costs of [] expedited [proceedings].'"

23   There I'm quoting from *Ehlen v. Conceptus, Inc.*,

24   2013 WL 2285577, at page *1 from the Court of Chancery

28

1 in 2013.

2          In my ruling this morning, I am going

3 to focus on the irreparable harm element, which is the

4 most critical element in assessing whether expedited

5 proceedings are appropriate.

6          Irreparable harm is that which is

7 imminent and nonspeculative.  The harm must be one

8 "for which there is no adequate remedy at law."  See

9 *Sonet v. Plum Creek Timber Co.*, 1998 WL 749445, at

10 page *2 from the Court of Chancery in 1998.

11          The irreparable harm complained of by

12 Gold Reserve is the loss of an asset opportunity if

13 the Amber bid is accepted by the district court and of

14 course the transaction closes.  But after considering

15 the papers and hearing argument, I view that as

16 insufficient to meet the irreparable harm element for

17 several interrelated reasons.

18          First of all, the harm complained of

19 is speculative.  The ultimate injury is contingent on

20 the actions of the district court, which has yet to

21 rule on the request to confirm the Amber bid as the

22 winning bid for the PDVH shares.  Gold Reserve asserts

23 that the ruling is imminent and expected by

24 November 30.  But since that ruling has not yet

29

1  occurred, the injury is an uncertain one.  I don't

2  know how Judge Stark will rule.  And if he doesn't

3  approve the sale order, there would be nothing for me

4  to enjoin, and the sale process would restart.

5            There are also necessary regulatory

6  approvals that would have to take place for the sale

7  to close.  I don't know how that process will unfold.

8            Second, there is a remedy at law.  If

9  the sale order issues, Gold Reserve could appeal.  It

10  could seek a stay of the sale order pending appeal.

11  It could move for reconsideration.  These are all

12  remedies fully available to it, if needed, before the

13  district court that's been presiding over this case

14  for some time or from the Third Circuit.  And even

15  assuming that Rusoro's actions led to the termination

16  of Gold Reserve's stock purchase agreement with the

17  Special Master and its financing for the bid, that

18  harm is also not irreparable.  The court with control

19  over the sale process could address the alleged

20  misconduct.

21            Now, Gold Reserve argues otherwise

22  because this court has jurisdiction over the breach of

23  contract action between two foreign entities while the

24  district court does not.  The consortium agreement

**CHANCERY COURT REPORTERS**
**500 N. King Street, Ste 11400, Wilmington, DE**
**(302) 255-0526**

30

1  designated this court as the exclusive forum to

2  resolve disputes.  And that's true.  But the district

3  court retains broad authority over the sale process

4  itself, the district court can grant the functional

5  relief Gold Reserve seeks preventing the sale from

6  closing, and the district court has the inherent

7  authority to police its own court-supervised auction

8  and ensure its integrity.

9            If the district court concluded that

10 Rusoro's alleged misuse of confidential information or

11 misrepresentations tainted the bidding process, it

12 could reject the Amber bid.  That would cure the lost

13 opportunity that the plaintiff here complains of.  But

14 to press forward with an injunction hearing while the

15 sale is pending before Judge Stark also creates a

16 comity problem.  I am essentially being asked to

17 interfere with the integrity of a multiyear federal

18 court-supervised sale process which involves the

19 disposition of an asset already under the federal

20 court's authority.  An injunction prohibiting Rusoro

21 from participating in the closing would be to inject

22 myself into the federal court's management of that

23 process.

24            Finally, and relatedly, I would be

31

1  hesitant to expedite this case ahead of the district

2  court given the timeline.  Gold Reserve acknowledges

3  that it was aware of the key allegations being

4  Rusoro's purported disclosure of confidential terms

5  and seeking of a more favorable deal with Amber as of

6  the September 2025 sale hearing.  But despite this

7  awareness for nearly two months, Gold Reserve waited

8  until November 7 to file this case, which is just

9  weeks before the district court's expected ruling.  I

10 view this delay as another reason to deny the motion.

11              So for all of these reasons, I am

12 inclined, in the exercise of my discretion over my

13 docket, to let the federal court matter play out so

14 that the court with direct control over the assets and

15 the sale process can proceed without interference from

16 this court, and this court can hear the breach of

17 contract suit in the ordinary course in a way that

18 respects the district court's jurisdiction over that

19 sale process.  But if Judge Stark does indicate to the

20 parties that he thinks this case in the Court of

21 Chancery ought to go forward first, you should let me

22 know.  We can get back on the line for a scheduling

23 conference and take it up in due course.  But for now,

24 the motion to expedite is denied.

1           I will enter an order to that effect

2   shortly.  But let me stop there and ask if there are

3   any questions for me?

4           ATTORNEY BOWE:  Your Honor, Mike Bowe.

5   In terms of the motion itself, when could we get that

6   heard?

7           THE COURT:  Get what heard?

8           ATTORNEY BOWE:  The motion for

9   preliminary injunction.

10          THE COURT:  I'm sorry, that wasn't

11  clear.  I think that you need to confer with the other

12  side.  Perhaps get on the line with Judge Stark, if he

13  entertains the request for a teleconference.  And then

14  you can let me know if you've been able to reach an

15  agreement on a schedule.  You can submit proposed

16  scheduling orders to me, let's say, in a week.  And if

17  you can't agree on a schedule with Rusoro's counsel,

18  then you can file competing scheduling orders, and

19  I'll pick one.  But I am not granting expedited

20  discovery at this point in time.

21          ATTORNEY BOWE:  Thank you very much,

22  Your Honor.

23          THE COURT:  Thank you.

24          Mr. Martin, anything further?

---

**CHANCERY COURT REPORTERS**
**500 N. King Street, Ste 11400, Wilmington, DE**
**(302) 255-0526**

33

1          ATTORNEY MARTIN:  Nothing further from

2  us, other than to acknowledge the Court for its hard

3  work and its staff for making all this happen so

4  quickly and for you paying so much attention to it and

5  giving us such a clear ruling.

6          THE COURT:  Thank you.  I appreciate

7  that.  And thank you all again for getting in your

8  papers so expeditiously.

9          I will look for a proposed schedule

10  from you in roughly a week.  Like I said, if anything

11  develops in the federal court and we need to get back

12  on the line for a scheduling conference, I'll be

13  available to do that right away.  But thank you again

14  for your time.

15          We are adjourned.

16       (Proceedings concluded at 9:58 a.m.)

17

18                 - - -

19

20

21

22

23

24

**CHANCERY COURT REPORTERS**
**500 N. King Street, Ste 11400, Wilmington, DE**
**(302) 255-0526**

34

<u>CERTIFICATE</u>

        I, DENNEL NIEZGODA, Official Court Reporter for the Court of Chancery of the State of Delaware, Registered Merit Reporter, Certified Realtime Reporter, do hereby certify that the foregoing pages numbered 3 through 33 contain a true and correct transcription of the proceedings as stenographically reported by me at the hearing in the above cause before the Vice Chancellor of the State of Delaware, on the date therein indicated, except for the rulings at pages 25 through 33, which were revised by the Vice Chancellor.

        IN WITNESS WHEREOF I have hereunto set my hand at Wilmington, this 14th day of November, 2025.


           /s/ Dennel Niezgoda
           ---------------------------
              Dennel Niezgoda
           Official Court Reporter
           Registered Merit Reporter
          Certified Realtime Reporter