# Morris, Nichols, Arsht & Tunnell LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

———

(302) 658-3989 FAX

ALEXANDRA M. CUMINGS
(302) 351-9248
(302) 425-4670 FAX
acumings@morrisnichols.com

November 17, 2025

**SUBMITTED VIA E-FILE**

The Honorable Leonard P. Stark
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, D.C. 20439

    Re:   *Crystallex International Corp. v. Bolivarian Republic of Venezuela*,
            D. Del. No. 1:17-mc-00151-LPS

Dear Judge Stark:

    I write to respond to the Special Master and Amber's joint November 14, 2025 letter (1) advising the Court of the filing of a Third Revised Proposed Sale Order and First Amendment to the Stock Purchase Agreement and (2) addressing the Court's remarks regarding the timing of its anticipated ruling on the objections to the Amber bid. D.I. 2530. The joint letter states that "if the Court enters a Sale Order deviating from the [PSO], the financing parties or the PDVSA 2020 Bondholders may assert that their consent to any changes made by the Court is required" and that "the PDVSA 2020 Bondholders may, after December 1, 2025, attempt to terminate the TSA to avoid or reduce the approximately $735 million (plus interest) discount that was negotiated before the decision in their favor." *Id.* at 3.

    These assertions are a transparent and inappropriate attempt to influence the Court's consideration of the Venezuela Parties' objections to the form of the PSO and SPA by threatening that the sale may not close if the Court does not approve the PSO and SPA exactly as proposed— including with the plainly unauthorized and unconstitutional injunctions that the Special Master and Amber ask the Court to impose on the parties and, in some cases, the entire world. Any issues associated with the December 1 "deadline" are problems of Amber's own making. Importantly, there is no hint that the provisions giving rise to the Venezuela Parties' objections are being insisted on by the 2020s or Amber's counterparties or that any changes to the challenged provisions could adversely affect the 2020s or financing counterparties such that they would or even could have a reasonable basis to withhold any consent rights they might have. *See* D.I. 2123-1, Ex. F § 2.2(b) (memorializing 2020 Bondholders' "[c]onsent [r]ight" over the Definitive Documents, defined in *id.*, § 1.1 as "the requirement for the Required Consenting 2020 Noteholders to approve the

The Honorable Leonard P. Stark
November 17, 2025
Page 2

Definitive Documents . . . in their *reasonable* discretion" (emphasis added)); *id.* at Ex. E-7, 769–70 (memorializing the financing parties' consent rights, which are limited to changes that are "adverse to the Commitment Parties" and providing that consent is "not to be unreasonably withheld, delayed, or conditioned"); *Hilco Capital, LP v. Fed. Ins. Co.*, 978 A.2d 174, 181 (Del. 2009) (explaining that, where contractual consent right is subject to a reasonableness standard, party must have "had a reasonable basis to withhold consent"). If the Special Master and Amber are arguing that the limited changes to the PSO and SPA proposed by the Venezuela Parties really could imperil Amber's financing commitments or the TSA, then one would have to seriously question the Special Master's representation that Amber's bid "has a high degree of closing certainty," D.I. 2123 at 16. *Cf.* Hr'g Tr. (Sept. 18, 2025) at 1397:16–1398:7 (The Court: "If [the Dalinar bid] is on such shaky ground that a ministerial act . . . could irreparably lead you all to be gone, shouldn't that raise concerns once I reach the merits question?").

      This is not the first time the Special Master and Amber have used supposed rights and deadlines manufactured by Amber to try to force the Court to act in its favor and to the detriment of other parties. At the Sale Hearing, they claimed that, if the Court did not allow the Special Master to terminate his agreement with Dalinar and authorize entry into an SPA with Amber by a (obscurely explained) deadline, Amber's financing parties might back out. Hr'g Tr. (Sept. 15, 2025) at 164:6–16; 166:3–8; 368:6–21. The Special Master and Amber then used the Court's "ministerial" action designed to prevent this outcome to argue that the termination of the SPA made Dalinar's bid non-viable. *See e.g.*, D.I. 2489 at 14. The Court should rule on the Venezuela Parties' objections on the merits and without being influenced by the Special Master and Amber's undue pressure.

Respectfully,

*/s/ Alexandra M. Cumings*

Alexandra M. Cumings (#6146)