womblebonddickinson.com



Womble Bond Dickinson (US) LLP

1313 North Market Street
Suite 1200
Wilmington, DE 19801

t:  302.252.4320
f:  302.252.4330

December 18, 2025

The Honorable Leonard P. Stark
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801

Kevin J. Mangan
Partner
Direct Dial: 302-252-4361
Direct Fax: 302-661-7729
E-mail: Kevin.Mangan@wbd-us.com

Re:   *Crystallex International Corp. v. Bolivarian Republic of Venezuela,* Case No. 17-mc-151

Dear Judge Stark,

Pursuant to the Court's order (D.I. 2574), the following is Gold Reserve's reply in support of its renewed request that Elliott Investment Management, L.P./Amber Merger Sub LLC (collectively, "Elliott/Amber") be required to file notice on the public docket informing the Court and parties of any approval or denial of any regulatory applications upon which its bid is based.

In its response, Elliott/Amber now states that it has no objection to Gold Reserve's request to the extent that it applies to notice of regulatory ***approvals***. (D.I. 2583 at 2: "Amber … has no objection to an order that merely memorializes this commitment."). As such, this component of the requested relief should be ordered.

However, Elliott/Amber has now made it clear that it wants to keep secret, and not provide public notice, of any regulatory ***denials***. Elliott/Amber sets out various rationale for this position, none of which has any merit whatsoever.  First, Elliott/Amber asserts that Gold Reserve is not a "party" to Elliott/Amber's "deal" to purchase the PDVH shares and therefore has no right to this type of information, full stop.  (*Id.* at 2). That is plainly wrong. The sale of the PDVH shares is not a private "deal" between Elliott/Amber and the Special Master under a cloak of commercial confidentiality but rather a "public sale" of attached property being conducted under Delaware statute, Del. Code Title 8, § 324, by the Court and in full view and scrutiny of the public and all Attached Judgment Creditors, of which Gold Reserve is one. Gold Reserve, as well as the public, therefore, does have a right to this information.

Second, Elliott/Amber suggests that Gold Reserve has some improper motive in requesting notice of regulatory denials, asserting that this is "undoubtedly driven by [Gold Reserve's] desire to somehow upend the Amber transaction." (*Id.* at 3). This makes no sense. Elliott/Amber's ability to obtain regulatory approvals for its proposed purchase of the PDVH shares is a condition precedent to its ability to close on its proposed purchase.  And, the likelihood of Elliott/Amber obtaining such

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

regulatory approvals was one of the stated criteria upon which the Special Master made his updated recommendation the Elliott/Amber bid. (D.I. 2123 at 14). If one of Elliott/Amber's regulatory applications is now denied, and it therefore cannot close on its proposed purchase of the PDVH shares, that new information would be vital to the Sale Process, both to the issues before the Third Circuit in the pending appeals as well as to all Attached Judgment Creditors' potential ability to recover on their judgments. Such vital information cannot be kept secret.

Third, Elliott/Amber attempts to justify its refusal to disclose this information with the rather arrogant statement that that the "Court has already determined that Amber's bid delivers the most value and certainty of closing to writholders and is the highest bid for the PDVH shares" and that this "is the end of the matter." (*Id.* at 3). But, if Elliott/Amber in fact cannot close because of a regulatory denial then its bid will deliver *zero value* to the writholders because there will be no closing.

Fourth, Elliott/Amber asserts that Gold Reserve and all other parties should have to wait around, in the dark, until the new September 26, 2026 outside date for Elliott/Amber's proposed closing (which date can be extended with the Special Master's consent), and only at that late date will the Sale Process be revisited because of Elliott/Amber's inability to close. (*Id.*) This too makes no sense. If there in fact is a legal impediment to Elliott/Amber's ability to close because of a regulatory denial then the Court, the Third Circuit, all interested parties, including Gold Reserve, the Sale Process Parties, and all Attached Judgment Creditors, are entitled to immediate notice of that information – without a delay until September 2026 (or later). And, the actions that would be taken in response to such notice would not constitute "manufactur[ing] a dispute," as Elliott/Amber wrongly put it (*id.*), but rather Gold Reserve asserting its legal rights in consequence of new information showing that one of the central assertions upon which Elliott and the Special Master relied in order to displace the Gold Reserve bid – the supposed greater closing certainty of the Elliott/Amber bid – turning out to be wrong.

Finally, Elliott/Amber contends that a regulatory denial would not spell the end of the viability of its bid, and that there are various steps that it *might* take to mitigate such a denial. (*Id.* at 4). However, potential mitigation may or may not be available depending on the nature of the regulatory denial and, more importantly, the operative point is that Gold Reserve and the public are entitled to the basic facts here. If the nature of the regulatory denial is one that actually can be mitigated, and Elliott/Amber intends to engage in such mitigation, then it can say so when it files the requisite notice. However, if the opposite is true and mitigation is not available, e.g., in the event of an OFAC denial, or if Elliott chooses not to mitigate – and thus exercises its effective right to walk away from its "deal" to purchase the PDVH shares by sacrificing its $50 million deposit – then that too should be immediately and publicly disclosed.

For these reasons, Gold Reserve reiterates that good cause does exist for the Court to enter the full relief it has requested.

Respectfully submitted,

**Womble Bond Dickinson (US) LLP**

*/s/ Kevin J. Mangan*
Kevin J. Mangan

        Matthew H. Kirtland (admitted *pro hac vice*)
**Norton Rose Fulbright US LLP**
799 9th Street NW, Suite 1000
Washington, DC 20001
Telephone: 202-662-0200
matthew.kirtland@nortonrosefulbright.com

Michael J. Bowe (*pro hac vice*)
**BRITHEM LLP**
565 5th Avenue
New York, New York 10017
Telephone: (646) 653-9378
mbowe@brithem.com

cc: Counsel of Record (via ECF)