IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Case No. 17-mc-151-LPS <br><br> **REDACTED VERSION** |

# EXHIBIT C

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| GOLD RESERVE LTD., <br><br> Plaintiff, <br><br> v. <br><br> RUSORO MINING LTD., <br><br> Defendant. | C.A. No. 2025-1292-LWW <br><br> PUBLIC VERSION <br> Filed November 19, 2025 |

## DEFENDANT RUSORO MINING LTD.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED PROCEEDINGS

Defendant Rusoro Mining Ltd., ("Rusoro") hereby submits its Response In Opposition To Plaintiff Gold Reserve Ltd.'s ("Gold Reserve") Motion For Expedited Proceedings (the "Motion").

### PRELIMINARY STATEMENT

Gold Reserve's Motion seeks to undermine the jurisdiction of the U.S. District Court for the District of Delaware ("District Court"), and to do so by enjoining Rusoro from honoring its obligations in connection with a bid recommended by the Special Master appointed by the District Court to implement a sale ("Sale Process") being conducted by the District Court to pay multiple creditors of Venezuela and Petroleo de Venezuela ("PDVSA"). Gold Reserve has participated

1

actively in the Sale Process since October 2022. For months, it has been known by all parties involved in that Sale Process (including Gold Reserve) that the District Court intended to issue a Sale Order affirming Amber as the final bidder. That Sale Order, if issued, would not result in the satisfaction of Gold Reserve's judgment.

Despite its awareness of this timing since (at least) mid-September, Gold Reserve never made the allegations in its Complaint before the District Court, despite the fact that the District Court conducted a four-day bench trial on the Sale Process in September and conducted a follow up hearing in October. Instead, it waited until **November 7, 2025** to run into this Court, which until last Friday was a stranger to lengthy and complex Sale Process that the District Court has been carefully managing, in a clear attempt to blow up the Sale Process and stop the District Court from ruling in a manner unfavorable to Gold Reserve. Indeed, the record demonstrates that this tactic is just the latest in a series of desperate attempts by Gold Reserve to prevent the District Court from issuing a decision in the Sale Process that is unfavorable to Gold Reserve. Upon the Special Master's recommendation of Amber's bid as the Final Bid, Gold Reserve vehemently objected, arguing that the bid of its wholly-owned subsidiary, Dalinar Energy ("Dalinar") should have been chosen instead. See Ex. C, Gold Reserve's Objections to the Special Master's Updated Final Recommendation. Gold Reserve then sought to attack the entire Sale Process, making an eleventh-hour allegation that the Special

2

Master—who had been managing the Sale Process for four years—was conflicted and should be disqualified. (Compl. ¶65 n.4.) It also moved to disqualify the District Court judge. *Id.* On October 28, 2025 Gold Reserve filed a mandamus petition in the United States Court of Appeals for the Third Circuit ("Third Circuit") seeking to force the District Court to more quickly decide its motions for disqualification. *Id.* To date, the Third Circuit has not taken any action on that petition.

It is obvious that Gold Reserve's Motion, and its desire to expedite this Court's consideration of that motion, are intended to derail the District Court proceedings in any manner possible, and at any cost. The Motion seeks to prohibit Rusoro from taking any steps to effectuate the closing of Amber's bid, and thus would prevent the sale. It is obvious that Gold Reserve's intention is to interfere with Judge Stark's adjudication of the District Court Proceedings.

Gold Reserve's attempt to collaterally undermine the District Court's jurisdiction through this Court must be rejected for reasons that will be more fully fleshed out in Rusoro's response to the Motion. Given the extraordinary (and Rusoro submits, wholly improper) nature of the relief being sought by Gold Reserve, the complexity of the history of this matter, and the devastating impact that the injunction sought by Gold Reserve will have upon the Sale Process and the interests of at least a dozen other parties, this Court should deny the motion to expedite. Having been aware of the timing of the District Court's Sale Process for months and

3

having failed to raise its current allegations during the District Court proceedings, Gold Reserve has deprived itself of the right to claim any "emergency" or force the Court and Rusoro into a frantic schedule for briefing, argument and discovery (if permitted).

## STATEMENT OF FACTS

Gold Reserve and Rusoro are creditors of the Bolivarian Republic of Venezuela. Gold Reserve and Rusoro have been engaged, since 2022 and 2021, respectively along with 28 other creditors, in a court-supervised sale of the shares of PDV Holding, Inc. ("PDVH") overseen by the U.S. District Court for the District of Delaware ("District Court") since 2017. On April 13, 2021, the District Court appointed a Special Master to design and facilitate a value-maximizing sale process ("Sale Process") to sell the PDVH Shares and satisfy as many creditors as possible with the proceeds of such sale.

[redacted]

4

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███

████████████████████████████████████ Rusoro engaged with alternative bidders, including Amber, to submit an alternative competitive bid for the PDVH Shares. Gold Reserve alleges (based on hearsay and without any documentary evidence) ████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████ Gold Reserve also alleges that Rusoro ████████████████████

██████████████████████████████████████████████

████████████████████████████

The Sale Process has spanned eight years and five months, has involved 28 creditors, numerous appeals, 21 hearings, and millions of pages of briefing. The Sale Hearing occurred over the course of September 15-18 and October 20-21 of this year. At the September hearing, counsel for Amber stated in open court that the financing for its bid was contingent upon the entry of a sale order approving Amber's bid as the Final Bid on or before December 1, 2025. Ex. B, September 18, 2025 Hearing Transcript ("Tr."), at 1368:7-17; 1624:5-9. Gold Reserve was among the

5

██████████████████████████████████████████████

parties objecting to the Amber bid. Gold Reserve argued at the hearing, and in pre-hearing briefing, that Dalinar's bid was superior to the Amber bid and should have been chosen. *See* Ex. C. Gold Reserve also sought to attack the Sale Process itself, making an eleventh-hour allegation that the Special Master—who had been managing the Sale Process for four years—was conflicted and should be disqualified. (Compl. ¶65 n.4.) It also moved to disqualify the District Court judge, who has presided over the Sale Process since its inception. *Id.*

On November 7, 2025, Gold Reserve filed this action, the Motion and Motion to Expedite. Gold Reserve did not notify the District Court that it was asking this Court to enjoin the closing of the Amber Bid. Counsel for Rusoro and Amber, through letters dated November 8 and 10, did notify the District Court of this proceeding, but because Gold Reserve filed its pleadings under seal, could not describe the substantive allegations made by Gold Reserve. While sealing its pleadings, Gold Reserve simultaneously saw fit to immediately publicize its filing of this action through a press release issued on November 10, 2025. Ex. E, Gold Reserve's Press Release. Rusoro reserved its right to seek injunctive relief from the District Court to stay this proceeding, which is indisputably an attempt by Gold Reserve to directly interfere with the District Court's jurisdiction and November 30 ruling. Counsel for Rusoro notified Gold Reserve's counsel of its intention to promptly seek such relief from the District Court and asked whether Gold Reserve

6

would consent to a five-day stay of this Court's proceedings pending Rusoro's filing of that motion. Ex. D, Email from Kevin Mangan to Craig Martin, November 10, 2025. Gold Reserve refused. (*Id.*)

## ARGUMENT

A. **Plaintiff's Complaint Does Not Merit The Expedited Proceedings It Seeks And It Has Not Stated A Colorable Claim.**

Expedition is the exception, not the rule. *See Greenfield v. Caporella*, 1986 WL 13977, at *2 (Del. Ch. Dec. 3, 1986) ("This Court does not set matters for an expedited hearing or permit expedited discovery unless there is a showing of good cause why that is necessary."). "[T]he plaintiff has the burden of persuading the Court that good cause exists to justify imposing on the defendants and the public the extra (and sometimes substantial) costs of" expedited proceedings. *Ehlen v. Conceptus, Inc.*, 2013 WL 2285577, at *2 (Del. Ch. May 24, 2013) (*quoting In re 3Com S'holders Litig.*, 2009 WL 5173804, at *1 (Del. Ch. Dec. 18, 2009)). Expedition should not be granted unless "the plaintiff has articulated a sufficiently colorable claim and shown a sufficient possibility of a threatened irreparable injury." *In re TriQuint Semiconductor, Inc. S'holders Litig.*, 2014 WL 2700964, at *2 (Del. Ch. June 13, 2014). Plaintiff has not done so.

Gold Reserve, at bottom, alleges that Rusoro improperly disclosed Confidential Information to another bidder, which allowed that bidder to gain an

7

advantage in formulating a competing bid. Putting aside for the moment the veracity of this allegation (and Rusoro reserves the right to refute these unsubstantiated allegations with actual evidence), the default remedy for a breach of contract is damages. *Kerrigan v. Alderman Auto. Ser., Inc.*, 1980 WL 272828, at *2 (Del. Ch. Aug. 18, 1980) ("Ordinarily a party aggrieved by a claimed breach of contract has an adequate remedy at law in the form of an action for damages[.]").



8

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████

### B. Plaintiff Has Not Demonstrated Imminent, Irreparable Harm.

To demonstrate irreparable harm, Plaintiffs must establish that, absent expedition, they will suffer "immediate, discernible harm for which there is no adequate remedy at law." *Sonet v. Plum Creek Timber Co.*, 1998 WL 749445, at *2 (Del. Ch. Sept. 23, 1998) (citation omitted). Expedited proceedings should not be allowed if "the injury to Plaintiff is merely speculative or if the injury can be fully compensated after a full trial on the merits[.]" *Id.*; *see also Platinum Partners*, 2014 WL 6606474 at *2 (denying expedition for lack of "concrete support" for irreparable harm).

Gold Reserve has not alleged—let along demonstrated—that it would be irreparably harmed if this Court does not rule on the Motion by November 30. ███

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ But Gold Reserve does not explain what additional harm will befall it in the event that the Amber transaction proceeds. Gold Reserve, today, **does not have a viable alternative bid**. Gold Reserve had lost its financing to

9

support the Dalinar bid (Ex. F at 12), and there is no evidence that the financing has been reinstated. Amber's bid is the only viable bid before the District Court today. The entry of a Sale Order approving Amber as the winning bidder would therefore simply maintain the status quo. Gold Reserve's Motion, on the other hand, seeks to **destroy** the status quo by obstructing the closing ability of the only bid available to satisfy the judgments of numerous other creditors. This is not what preliminary injunctions are for.

Finally, even if Judge Stark issues the sale order on November 30, 2025, Gold Reserve still cannot demonstrate any irreparable harm suffered as a result of that sale order because Gold Reserve would have the right to an appeal and seek a stay of the proceedings pending appeal. This would properly leave the decision concerning the timing of the process that have been so carefully managed and supervised by the District Court to the District Court itself (or the Third Circuit).

Even if Gold Reserve was arguing that it would be irreparably harmed if its preliminary injunction motion was not decided by November 30, 2025–which it is not–it would be impossible for this Court to adjudicate Gold Reserve's Motion by that date due to Gold Reserve's own excessive and ulterior discovery intentions. Gold Reserve has pronounced that it intends to conduct documentary discovery and take depositions ▌

10

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Even on an expedited schedule, the Parties would have to schedule depositions of deponents who are across the United States, Canada, and London, take the depositions, and then brief the preliminary injunction motion. That is not realistic.

Gold Reserve must resolve the two incompatible narratives that comprise its case: either it requires this Court to issue an expedited decision on its preliminary injunction motion by November 30th, or it needs documentary discovery ▓▓▓ ▓ depositions to assemble the facts on which to credibly make that motion. However, both cannot be true. If Gold Reserve truly believes it will be irreparably harmed absent a ruling by November 30, 2025, it should bring its Motion now and proceed on the evidence it has brought forward. If Gold Reserve requires hammer and tong discovery to shore up its paper-thin claims, there is no cause to expedite these proceedings.

### C.  Gold Reserve Has Improperly Delayed Its Request For Relief.

Even if Gold Reserve had presented some risk of harm, it waited too long before shopping its claim before this Court. *See In re Gen. Motors (Hughes) S'holders Litig.*, 2003 WL 26474920, at *2 (Del. Ch. Oct. 2, 2003) (denying motion to expedite and set a preliminary injunction schedule due to plaintiffs' delay); *see also BMEF San Diego, L.L.C. v. Gray E. Vill. San Diego L.L.C.*, 2014 WL 4923722, at *1 (Del. Ch. Sept. 30, 2014) ("imposition of the burdens of expedited proceedings

11

upon the [d]efendants and the Court cannot be reconciled with [p]laintiffs' failure to proceed with alacrity."); *Mark Prods., Ltd. v. Stuffit of Long Island*, 2002 WL 244861, at *1 (Del. Ch. Feb. 4, 2002) (refusing to schedule expedited hearing because plaintiff delayed in seeking a hearing and lacked "sufficiently imminent or irreparable injury").

The "evidence" Gold Reserve relies upon in its Motion is based upon allegations of conduct that occurred several months ago; Gold Reserve concedes it was aware of this conduct as of September 15, 2025. During the District Court's September sale hearing, Gold Reserve alleges that Amber's witness testified that Rusoro disclosed the terms of the Consortium Agreement to Amber, who used that information to negotiate a more favorable deal for Rusoro. (Compl. ¶53.) ███
███
███
███
███

If Gold Reserve believed these acts justified injunctive relief, it should have either raised these issues before the District Court (which it never did) or brought its Motion in September. Gold Reserve delayed in filing its Motion and waited until the eleventh hour to seek relief. Gold Reserve should not now request that these

proceedings be placed in an expedited posture to accommodate its own dilatory tactics.

The only reason Gold Reserve brings its Motion now is because it is clear that it has lost. The Consortium is dead. Gold Reserve does not have a viable bid to purchase the PDVH Shares and its financing commitments have been rescinded. This is a transparent, last-ditch attempt to impede the sale process that Judge Stark has diligently presided over for eight years. Now that it is clear Gold Reserve cannot achieve ███████████████████ it is intent on imploding the entire sale process and destroying the best opportunity that all the other creditors have to see their judgments paid. Preliminary injunctions are designed to preserve the status quo. Gold Reserve is attempting to destroy the status quo. This Court should not countenance such conduct.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion for Expedited Proceedings.

| | |
|---|---|
| DATED: November 11, 2025 | **DLA PIPER LLP (US)** |
| **OF COUNSEL** | */s/ R. Craig Martin*<br>R. Craig Martin (I.D. No. 5032)<br>Caleb G. Johnson (I.D. No. 6500)<br>1201 North Market Street, Suite 2100<br>Wilmington, DE 19801<br>(302) 468-5700<br>(302) 394-2341 (Fax)<br>craig.martin@us.dlapiper.com<br>caleb.johnson@us.dlapiper.com |
| James E. Berger<br>Charlene Sun<br>Alice A. Gyamfi<br>**DLA PIPER LLP (US)**<br>1251 Avenue of the Americas<br>New York, NY 10020-1104<br>james.berger@us.dlapiper.com<br>charlene.sun@us.dlapiper.com<br>alice.gyamfi@us.dlapiper.com | *Attorneys for Defendant*<br>*Rusoro Mining Ltd.* |

**WORDS: 2,946 of 3,000**

14