# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., Plaintiff, | ) ) ) |
| v. | ) ) |
| BOLIVARIAN REPUBLIC OF VENEZUELA, Defendant. | ) No. 1:17-mc-00151-LPS ) ) ) ) ) |

# EMERGENCY MOTION FOR RELIEF FROM SALE ORDER PURSUANT TO FED. R. CIV. P. 60(b)(6)

January 12, 2026

Movant Dr. Leroy A. Garrett, pro se representative of the QSF for ~23,000 Petroleum Holocaust victims, moves for relief from the November 2025 Sale Order under Rule 60(b)(6).

Movant incorporates his notices filed January 3 and 7, 2026 (D.I. 2609, and 2612 respectively).

Extraordinary circumstances post-dating the Order include:

- U.S. capture of Nicolás Maduro (Jan 3, 2026) and his arraignment on narco-terrorism charges.
- Delcy Rodríguez sworn in as interim president.
- President Trump's statements that the U.S. is temporarily "running" Venezuela and direct U.S. control over proceeds from 30–50 million barrels of transferred oil.

These events fundamentally alter Venezuelan sovereign representation, moot prior ad hoc/PDVSA party objections, eliminate retaliation risk, and place petroleum assets under U.S. influence—warranting equitable prioritization of documented human rights victims (FOIA genocide/narco classifications).

1

**Relief Requested**

1. Modify the Sale Order to create a humanitarian reserve for the QSF (~$395 million or equitable share) from Citgo proceeds and/or new oil revenues.

2. Stay closing pending resolution and OFAC review.

3. Disregard or strike prior positions of obsolete Venezuelan parties.

**Respectfully submitted, in the interest of justice..,**

*[signature]*

Dr. Leroy A. Garrett
Interested Party with Entry of Appearance
Pro Se Attorney
on Behalf of Proposed Class Representatives
6725 S Fry Road Ste. 700-338. Katy Texas 77494

**Certificate of Service**: Served via ECF/mail.

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., Plaintiff, | )<br>)<br>) |
| v. | )<br>) No. 1:17-mc-00151-LPS |
| BOLIVARIAN REPUBLIC OF VENEZUELA, Defendant. | )<br>)<br>)<br>)<br>) |

## NOTICE OF PENDING MOTION TO REINSTATE THIRD CIRCUIT APPEAL AND CHANGED CIRCUMSTANCES

January 3, 2026

Movant Leroy A. Garrett, pro se, respectfully notifies the Court of the following:

1. Creditors have docketed the Third Circuit's December 30, 2025 administrative dismissal of Appeal No. 25-3323 (D.I. 2605).

2. On the same day (December 30, 2025), Movant filed a Motion to Reinstate the Appeal and to Proceed In Forma Pauperis in the Third Circuit (Documents 28-1 and 28-2), highlighting administrative inconsistencies (unilateral docketing without prior fee demand) and documented indigence. The appeal remains pending reinstatement, preserving appellate review of Movant's unrebutted equitable claims.

3. On January 3, 2026, Nicolás Maduro was captured by U.S. forces, ending the regime responsible for the 2002–2003 political purge. This eliminates regime retaliation risk and removes any remaining justification for excluding the 23,000 victims from reparations.

These developments constitute changed circumstances warranting immediate consideration of a limited Qualified Settlement Fund reserve (D.I. 2561 and supplement) to ensure clean title for the purchaser and prevent successor-liability litigation risk.

1

Movant requests an indicative ruling or brief status conference.

Respectfully submitted,

*/s/ Leroy A. Garrett*

Dr. Leroy A. Garrett
Interested Party with Entry of Appearance
Pro Se Attorney
6725 S Fry Road Ste. 700-338. Katy Texas 77494

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., Plaintiff, | ) ) ) |
| v. | ) ) No. 1:17-mc-00151-LPS |
| BOLIVARIAN REPUBLIC OF VENEZUELA, Defendant. | ) ) ) ) ) |

## EMERGENCY NOTICE OF CHANGED CIRCUMSTANCES AND SUPPLEMENTAL REQUEST FOR LIMITED QSF RESERVE

January 6, 2026

Dear Judge Stark:

Movant Leroy A. Garrett, pro se, respectfully notifies the Court of profound changed circumstances warranting immediate consideration of a limited Qualified Settlement Fund (QSF) reserve (D.I. 2561 and prior supplements).

On January 3, 2026, Nicolás Maduro Moros was captured by U.S. forces pursuant to the 2020 sealed superseding indictment in the Southern District of New York (S4 11 Cr. 205 (AKH)), charging him and co-conspirators with narco-terrorism, corruption of Venezuelan institutions, and using state power to facilitate cocaine trafficking into the United States over 25 years.

This indictment explicitly frames Maduro as the architect of a criminal enterprise that abused public office and corrupted once-legitimate institutions — including the 2002–2003 political purge of PDVSA workers, part of the same systematic repression to consolidate power.

The capture ends the regime responsible for the purge and eliminates retaliation risk against victims receiving reparations.

FILED
JAN 07 2026
US DISTRICT COURT
DISTRICT OF DELAWARE

The PDVSA Ad Hoc board — a U.S.-government-licensed entity created to protect Venezuelan assets from the indicted narco-regime — can no longer justify opposing reparations. Continued obstruction now contravenes its mandate and betrays the Venezuelan people it was licensed to serve.

A modest QSF reserve (1–5% of proceeds) is the only equitable path to true clean title for the purchaser, eliminating successor-liability risk and aligning with U.S. policy following the regime's collapse.

Movant requests an immediate indicative ruling or status conference.

Respectfully submitted,

Dr. Leroy A. Garrett
Venezuelan Petroleum Holocaust
Pro Se Attorney
6725 S Fry Road Ste. 700-338. Katy Texas 77494

cc: All counsel of record (via ECF)
Enclosures: SDNY Indictment S4 11 Cr. 205 (AKH)

*The* WHITE HOUSE

PRESIDENTIAL ACTIONS

SAFEGUARDING VENEZUELAN OIL REVENUE FOR THE GOOD OF
THE AMERICAN AND VENEZUELAN PEOPLE

Executive Orders

January 9, 2026

By the authority vested in me as President by the Constitution and the laws of the United States of America, including the International Emergency Economic Powers Act (50 U.S.C. 1701 *et seq.*) (IEEPA), the National Emergencies Act (50 U.S.C. 1601 *et seq.*) (NEA), and section 301 of title 3, United States Code, it is hereby ordered:

Section 1. Findings. As Chief Executive and Commander in Chief, I find that the threat of attachment or the imposition of other judicial process against the Foreign Government Deposit Funds, as defined in section 2 of this order, will materially harm the national security and foreign policy of the United States.

Specifically, the attachment or the imposition of other judicial process against the Foreign Government Deposit Funds will substantially interfere with our critical efforts to ensure

economic and political stability in Venezuela. The failure of these critical efforts would jeopardize major foreign policy objectives of the United States, including: ending the dangerous influx of illegal immigrants and the flood of illicit narcotics, which has resulted in the death of countless thousands of American citizens; protecting American interests against malign actors such as Iran and Hezbollah; and bringing peace, prosperity, and stability to the Venezuelan people and to the Western Hemisphere more generally.

Accordingly, the preservation of the Foreign Government Deposit Funds is of the utmost importance to the United States. I therefore find that the possibility of attachment or the imposition of judicial process against the Foreign Government Deposit Funds constitutes an unusual and extraordinary threat to the national security and foreign policy of the United States, which has its source in whole or substantial part outside the United States, and I hereby declare a national emergency to deal with that threat.

Sec. 2. Definition. For the purposes of this order, "Foreign Government Deposit Funds" means funds paid to or held by the United States Government in designated United States Department of the Treasury accounts or funds on behalf of the Government of Venezuela or its agencies or instrumentalities, including the Central Bank of Venezuela and Petroleos de Venezuela, S.A., that are derived from either the sale of natural resources from, or the sale of diluents to, the Government of Venezuela or its agencies or instrumentalities.

Sec. 3. Preservation of Foreign Government Deposit Funds. (a) Unless licensed or otherwise authorized pursuant to this order, any attachment, judgment, decree, lien, execution, garnishment, or other judicial process is prohibited, and shall be deemed null and void, with respect to the Foreign Government Deposit Funds.

(b) No Foreign Government Deposit Funds may be transferred, paid, exported, withdrawn, or otherwise dealt in, except to the extent provided by regulations, orders, directives, or licenses

that may be issued pursuant to this order, and notwithstanding any contract entered into or any license or permit granted prior to the effective date of this order.

(c)  This order and actions taken pursuant to this order shall apply notwithstanding any previously issued Executive Order, and any action taken pursuant to such an order, to the extent such order or action blocks, regulates, or otherwise affects the Foreign Government Deposit Funds.  This order and actions taken pursuant to this order shall supersede any previously issued Executive Order, and any action taken pursuant to such an order, to the extent such order or action blocks, regulates, or otherwise affects the Foreign Government Deposit Funds.

Sec. 4. <u>Additional Presidential Findings and Determinations</u>.  I hereby determine and find that:

(a) Ownership.  The Foreign Government Deposit Funds constitute property of the Government of Venezuela and do not constitute the property of any private party, including judgment creditors of Venezuela or its agencies or instrumentalities, or commercial actors that transacted or are transacting business with Venezuela or its agencies or instrumentalities.

(b) Custodial Nature of United States Possession.  The United States Government will hold the Foreign Government Deposit Funds solely in a custodial and governmental capacity, and not as a market participant.

(c) Absence of Commercial Use in the United States.  The Foreign Government Deposit Funds:

(i)  have not been, and shall not be, used for any commercial activity in the United States; and

(ii)  shall be held pending sovereign disposition for public, governmental, or diplomatic purposes determined by the Secretary of State, on behalf of the Government of Venezuela.

(d) Governmental Purpose. The retention and administration of the Foreign Government Deposit Funds serve public sovereign purposes, including compliance with international obligations, the performance of government functions, and the maintenance of diplomatic and foreign policy objectives.

(e) No Waiver of Immunity. Neither the placement of the Foreign Government Deposit Funds in a United States Department of the Treasury deposit account nor any related arrangement or activity constitutes an express or implied waiver of sovereign immunity from any attachment, judgment, decree, lien, execution, garnishment, or other judicial process, or consent to the jurisdiction of any court for purposes of enforcing private claims against such funds.

(f) International Comity and Foreign Relations. Any attachment, judgment, decree, lien, execution, garnishment, or other judicial process against the Foreign Government Deposit Funds would interfere with the conduct of the foreign relations of the United States and undermine principles of international comity.

Sec. 5. <u>Treatment of Foreign Government Deposit Funds</u>. (a) In holding the Foreign Government Deposit Funds, the Secretary of the Treasury shall:

(i)   designate such funds in a manner that clearly reflects their status as sovereign property of the Government of Venezuela held in custody by the United States, and not as the property of the United States;

(ii)  comply with instructions regarding disbursements or transfers of the Foreign Government Deposit Funds as may be determined by the Secretary of State, and not permit such funds to be used for any other purpose; and

(iii) consult, as appropriate, with the Secretary of State, the Attorney General, and the Secretary of Energy.

(b)  The Secretary of the Treasury and the Attorney General are authorized and directed to assert, in any judicial or administrative proceeding, the sovereign immunity of the Foreign Government Deposit Funds consistent with this order and applicable law.

Sec. 6.  Administration.  (a)  The Secretary of the Treasury, in consultation with the Secretary of State, the Attorney General, and the Secretary of Energy, is authorized to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to the President by IEEPA as may be necessary to carry out the purposes of this order.  The Secretary of the Treasury may, consistent with applicable law, redelegate any of these functions within the Department of the Treasury.  The head of each executive department and agency (agency) of the United States Government shall take all appropriate measures within the agency's authority to implement this order.

(b)  The Secretary of the Treasury, in consultation with the Secretary of State, is hereby authorized to submit recurring and final reports to the Congress on the national emergency declared in this order, consistent with section 401(c) of the NEA (50 U.S.C. 1641(c)) and section 204(c) of IEEPA (50 U.S.C. 1703(c)).

Sec. 7.  General Provisions.  (a)  Nothing in this order shall be construed to impair or otherwise affect:

(i)  the authority granted by law to an executive department or agency, or the head thereof; or

(ii)  the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b)  This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c)  This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its

departments, agencies, or entities, its officers, employees, or agents, or any other person.

(d) The costs for publication of this order shall be borne by the Department of the Treasury.

DONALD J. TRUMP

THE WHITE HOUSE,

January 9, 2026.




GET THE FACTS →



Subscribe to The White House newsletter

Your email                                                                                    SIGN UP

Text POTUS to 45470 to receive updates

| | |
|---|---|
| NEWS | ADMINISTRATION |
| WIRE | GALLERY |
| ISSUES | VIDEO LIBRARY |
| CONTACT | AMERICA 250 |
| VISIT | FOUNDING FATHERS |
| EOP | THE SIGNERS |

THE WHITE HOUSE

1600 Pennsylvania Ave NW
Washington, DC 20500

WH.GOV

Copyright

Privacy

