

womblebonddickinson.com

Womble Bond Dickinson (US) LLP

1313 North Market Street
Suite 1200
Wilmington, DE 19801

t:  302.252.4320
f:  302.252.4330

January 20, 2026

The Honorable Leonard P. Stark
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801

Kevin J. Mangan
Partner
Direct Dial: 302-252-4361
Direct Fax: 302-661-7729
E-mail: Kevin.Mangan@wbd-us.com

**Re:** *Crystallex International Corp. v. Bolivarian Republic of Venezuela,* **Case No. 17-mc-151**

Dear Judge Stark,

Per the Court's January 14, 2026 oral order (D.I. 2617), Gold Reserve submits this letter brief in support of its objections to the Special Master's monthly report for the period ending November 30, 2025 (D.I. 2606). As noted (D.I. 2615), Gold Reserve objects to the Special Master's proposal that Gold Reserve and the Venezuela Parties pay in equal shares the over $3 million in legal fees and expenses that the Special Master incurred in connection with the disqualification motions.

**<u>The Special Master's proposal.</u>**

The Special Master proposes, on the recommendation of Crystallex and ConcocoPhillips, that Gold Reserve and the Venezuela Parties should "bear the Transaction Expenses incurred in connection with" Gold Reserve's and the Venezuela Parties' respective disqualification motions (D.I. 2389, D.I. 2384). (D.I. 2606 at 3). The Special Master states that he incurred $3,105,356.61 in fees and expenses in connection with the motions. *Id.*

Crystallex and ConocoPhillips did not discuss this issue in advance with Gold Reserve, and the Court's 51-page opinion denying the disqualification motions (D.I. 2526) is now on appeal.

The stated basis for the Special Master's proposal is his "discretion to seek from the Court authorization to reallocate payment of any Transaction Expenses if the circumstance requires" as provided in the SPO. *Id.* (citing (D.I. 481, ¶ 47)). The SPO states, in relevant part:

> the Special Master shall have the discretion to seek from the Court authorization to reallocate payment of any Transaction Expenses if the circumstances require (*e.g.*, if any single Sale Process Party generates an inordinate number of disputes or if a Sale Process Party's position in a dispute is found to be unreasonable) . . .

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

(D.I. 481, ¶ 47). To support this proposal, the Special Master asserts that the Court held that the motions "'lack merit;'" the Venezuela Parties allegedly have sought to disqualify the Special Master four times (a point which they dispute); and the "Transaction Expenses incurred by the Special Master in responding to the Disqualification Proceedings were entirely caused by the Venezuela Parties and Gold Reserve." (D.I. 2606 at 3) (quoting *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. MC 17-151-LPS, 2025 WL 3170803, at *7 (D. Del. Nov. 13, 2025)). The Special Master also asserts that the motions are "frivolous claims." *Id.* None of these assertions has merit.

**The Special Master's proposal does not satisfy the SPO standard.**

There are two examples given in the SPO for when fee re-allocation is appropriate; the Special Master's proposal satisfies neither. This alone compels rejection of the Special Master's proposal.[1]

First, the Special Master does not attempt to assert, nor could he, that Gold Reserve has "generate[d] an inordinate number of disputes" in the sale process. To the contrary, Gold Reserve has participated in good faith throughout the sale process, raising disputes selectively when the facts and circumstances so justified, and combining with other parties to try to make the sale process as efficient as possible. *See, e.g.*, (D.I. 1477, 1497, 1409 (joint briefing with Rusoro); D.I. 1523 (joint briefing with Red Tree, Valores, and Tidewater)). Further, Gold Reserve submitted the highest bid at each phase of the sale process, and incurred substantial expense to do so, including incurring the tens of millions of dollars in financial commitment fees and legal fees necessary to formulate and submit the July 2, 2025 Final Recommended Bid. *See, e.g.*, (Sale Hr'g Tr., 938:7–939:10, 940:15-18) (P. Rivett). Furthermore, since becoming an attached judgment creditor, Gold Reserve has without fail paid its per capita share of the Special Master's substantial monthly fees and expenses, including most recently making a payment of $429,913.15 on January 8, 2026 for the Special Master's invoice for August 2025. This is not the conduct of a party that deserves to be penalized for raising a serious issue such as was presented in the disqualification motions simply because the Court did not grant the motion.

Second, while the Court found that Gold Reserve's disqualification motion "lack[ed] merit" (*Crystallex Int'l Corp.*, No. MC 17-151-LPS, 2025 WL 3170803, at *7), it did not find that Gold

---

[1] The Special Master provides no other bases upon which the Court could effectively shift the fees of the prevailing party on to the losing party in violation of the "American Rule" that prohibits such fee shifting. *See, e.g.*, *Chambers v. NASCO*, Inc., 501 U.S. 32, 45 (1991). While there may be exceptions for sanctions or where a party acts in bad faith, the Special Master has not argued and the Court has not determined that any such exception should apply here (nor could it, as there would be no basis for such arguments). *Id.*; *see In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 181 (3d Cir. 2002) (explaining that while a court may assess attorney's fees under its own inherent power upon a finding of bad faith, such "powers must be exercised with restraint and caution" and "should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists" (internal quotations omitted)). Delaware also follows the American Rule, "absent express statutory language to the contrary" or "bad faith conduct" such as "unnecessarily prolonged or delayed litigation, falsified records or knowingly assert[ing] frivolous claims." *State ex rel. Rogers v. Bancorp Bank*, 307 A.3d 360, 385 (Del. Super. Ct.), *aff'd sub nom. Bancorp Bank, N.A. v. Rogers*, 310 A.3d 428 (Del. 2023).

Reserve's motion or its position was "unreasonable"—the standard in the SPO.[2] Nor would any such finding be justified. The undisputed evidence shows that the Special Master's two key Advisors that have been running the Sale Process—the law firm of Weil, Gotshal and the investment banking firm Evercore—do in fact represent and/or have professional relationships with Eliott Management, the bidder that they selected to purchase the PDVH shares at a price $2 billion lower than Gold Reserve's Final Recommended bid, and that the extent of these relationships and the $170 million in fees paid to both Advisors by Elliott Management over the past four (4) years was only discovered in September 2025. *See, e.g.*, (D.I. 2389). Bringing a disqualification motion on this basis—when the applicable standard requires only the appearance of impropriety not an actual conflict—is not unreasonable.

Further, the Court did not find that the disqualification motions were "frivolous," as the Special Master baldly asserts. In this respect, it is notable that in their joint response to Gold Reserve's and the Venezuela Parties' motions to disqualify, Crystallex and ConocoPhillips claimed that "the purported bases for these accusations of bias are frivolous." (D.I. 2480 at 1). The Court, however, did not make any such finding in its order denying the motions.

**The Special Master and his Advisors bear some responsibility for these expenses and fees.**

In addition to not meeting the applicable SPO standard, the Special Master is incorrect when he asserts that these $3,105,356.61 in fees and expenses were "entirely caused" by Gold Reserve and the Venezuela Parties. At minimum, the failure of the Special Master and his Advisors to previously disclose the extent of their relationship with Elliott Management contributed to the genesis of this issue and thus at least in part caused these additional Transaction Expenses to be incurred.

As the Court's opinion denying the disqualification motions lays out, it was not until the September 9, 2025 deposition of Michael Turkel, Assistant General Counsel of Elliott Management, that the factual bases on which the motions were premised were disclosed. *Crystallex Int'l Corp.*, No. MC 17-151-LPS, 2025 WL 3170803, at *2. Gold Reserve sought emergency relief based on Mr. Turkel's testimony the following day, *id.*, and the Court ordered the Special Master's counsel to respond to discovery requests and engage in conferrals with both Gold Reserve and the Venezuela Parties. *Id.* In responding to the motions and arguing at the October 20, 2025 oral argument, neither Crystallex, nor ConocoPhillips, nor the Special Master requested a fee shift or attempted to reserve any right to seek one. See id.; (D.I. 2442); (D.I. 2510).

Had Weil and Evercore disclosed this information earlier, the disqualification motions may not have been required at all and all parties could have saved a substantial amount of the time and fees required to address this issue.

---

[2] *See Nova Chems. Corp. (Can.) v. Dow Chem. Co.*, No. 13-1601, 2015 U.S. Dist. LEXIS 132383, at *11 (D. Del. Sep. 30, 2015) (Stark, J.) (rejecting a request for fees and expenses under 28 U.S.C. § 1927 and the Court's inherent authority where a suit was found to "lack[] merit," but was not pursued "in an effort to be unreasonable and vexatious" nor "in bad faith").

**There is no precedent for the Special Master's proposal, and the Court's prior rejection of the fee allocation objections arising from Elliott's first, failed bid confirms that it should be denied.**

Granting the Special Master's proposal would run contrary to the history of this case—where no party before has been penalized for bringing a motion that was denied and, moreover, where the Court has rejected similar requests that had as much, if not more, justification as exists here.

In December 2024, as the Court will recall, it rejected a similar request from multiple parties that asked the Court to reduce the Special Master's fees by an amount that represented a portion of the total value of the work performed solely for Elliott Management's benefit in relation to its initial failed bid. *See* (D.I. 1507 at 237:4-240:2). Although Gold Reserve argued that much of this work had been performed solely for Elliott Management's benefit (*see* D.I. 1477 at 2-5), the Court did not accept that argument, and instead noted that the process is "just inherently expensive." (D.I. 1507 at 238:20-23). The Court also noted that "you all want to be heard and you want the special master to consider your positions and that just can't be done cheaply." *Id.* In consequence, Gold Reserve was required to pay an equal share of the substantial expenses incurred by the Special Master in connection with the first, failed attempt to sell the PDVH Shares to Elliott. These costs included circa 2,483.90 hours of attorney time, at a cost of $3,568,390.50. *See* (D.I. 1477 at 2-5, D.I. 1430-1 at 8).

These fees were incurred in September 2024 in connection with the Special Master's recommendation of Elliott Management's initial failed bid on September 27, 2024, which came after a nearly two-month period of exclusivity where the Special Master was focused entirely on Elliott Management. *See* (D.I. 1325 at 1, D.I. 1837 ¶ 32; *see also* D.I. 1838, Hiltz Decl., ¶ 14). The September 2024 fees were incurred primarily for considering the Elliott/Amber bid. *See* (D.I. 1430-1 at 3, 8). The proposed transaction that came from this expensive and extensive period of exclusivity was objected to by nearly every party to this action, including the Sale Process Parties and certain Additional Judgment Creditors, including Gold Reserve. *See, e.g.*, (D.I. 1337; D.I. 1373-2; D.I. 1373-4; D.I. 1373-5; D.I. 1373-6; D.I. 1373-7; D.I. 1417; D.I. 1418; D.I. 1419). This resulted in this Elliott/Amber bid dying on the vine, and the Sale Process having to effectively re-start per the rules set by the Court in its December 31, 2024 Order. *See* (D.I. 2553, ¶ 123).

If Gold Reserve, the Sale Process Parties, and the other Additional Judgment Creditors were required to bear the Transaction Expenses of Elliott's first failed bid in equal portion, Gold Reserve and the Venezuela Parties should not, in fairness, be required to unilaterally bear the costs of the disqualification motions. These motions were brought in good faith based on the September 2025 disclosures by Elliott and the discovery produced by the Special Master. Litigating these issues was part and parcel of this Sale Process—like all prior issues—and with no party previously having been forced to bear the costs of an unsuccessful effort or denied motion, that precedent should not be changed now.

**The amount of the Special Master's claimed fees and expenses further confirms that the disqualification motions were not unreasonable.**

The Special Master is claiming $3,105,356.61 in fees related to the disqualification motions. (D.I. 2606 at 9). This figure reflects 1,865.27 attorney hours, incurred by twenty-two (22) attorneys and five (5) non-attorney timekeepers, running from September 10, 2025 to November 26, 2025. *See generally*

4

(D.I. 2606). While it is questionable whether this small army of attorneys was necessary to deal with a single set of motions, it is certain that this number of attorneys and this amount of billable hours would not have been required had the disqualification motions been frivolous.

Weil's billing records further show that they spent approximately 381 hours drafting the 20-page response to the disqualification motions, at a cost of at least $632,088.50. *See* (D.I. 2606). This involved billing by at least six partners, two counsel, eight associates, and four non-attorney timekeepers. *Id.* For the October 20, 2025 hearing, Weil spent around 190 hours. *Id.* This hearing lasted less than four hours and all parties opposing the motions (being the Special Master, Elliott, Crystallex, and ConocoPhillips) had only 90 minutes to present their arguments. *See* (D.I. 2466). The 190 hours that Weil incurred are split between seven partners, two counsels, eight associates, and a paralegal. *See* (D.I. 2606). The total bill for the oral argument came to at least $325,662.50.

It is notable that Weil incurred nearly as much responding to the disqualification motions as it incurred in September 2024 in negotiating Amber Energy's initial failed bid and the Special Master's first failed recommendation of that bid. *See* (D.I. 1477). That is, Weil spent as much time conducting its core function of (attempting) to sell the PDVH Shares as it did responding to discovery; drafting a single 20-page brief responding to the disqualification motions (D.I. 2443); preparing for oral argument that ultimately lasted approximately four hours (*see* D.I. 2466); and handling activities related to the then-nascent appeals process (including filing only nine substantive pages in relation to the mandamus petition. *See In re: Gold Reserve Ltd*, No. 25-3091 (3d Cir. 2025) (D.I. 9, D.I. 15, D.I. 32).

The Special Master cannot have it both ways. He cannot contend on one hand that such an extraordinary amount of fees and expenses were reasonable and thus properly charged to the Attached Judgment Creditors and, on the other hand, claim that the motions which necessitated these fees and expenses were frivolous. Put bluntly, a law firm does not incur more than $3.1 million in fees and more than 1,800 hours of attorney time to respond to a frivolous motion – it only does this when the motion has sufficient merit to justify such a vigorous and comprehensive response.

**Conclusion**

For the foregoing reasons, Gold Reserve objects to the Special Master's requested proposal and respectfully requests that it be denied.

Respectfully submitted,

**Womble Bond Dickinson (US) LLP**

*/s/ Kevin J. Mangan*
Kevin J. Mangan

Matthew H. Kirtland (admitted *pro hac vice*)
**Norton Rose Fulbright US LLP**
799 9th Street NW, Suite 1000
Washington, DC 20001
Telephone: 202-662-0200

matthew.kirtland@nortonrosefulbright.com

cc: Counsel of Record (via ECF)